**BLEICHMAR FONTI & AULD LLP**
Lesley E. Weaver (Cal. Bar No.191305)
555 12th Street, Suite 1600
Oakland, CA 94607
Tel.: (415) 445-4003
Fax: (415) 445-4020
*lweaver@bfalaw.com*

**SIMMONS HANLY CONROY LLC**
Jason 'Jay' Barnes (admitted *pro hac vice*)
112 Madison Avenue, 7th Floor
New York, NY 10016
Tel.: (212) 784-6400
Fax: (212) 213-5949
*jaybarnes@simmonsfirm.com*

**COTCHETT, PITRE & McCARTHY, LLP**
Nanci E. Nishimura (SBN 152621)
840 Malcolm Road, Ste. 200
Burlingame, CA 94010
Tel.: (650) 697-6000
Fax: (650) 697-0577
*nnishimura@cpmlegal.com*

**DICELLO LEVITT GUTZLER LLC**
David A. Straite (admitted *pro hac vice*)
One Grand Central Place
60 E. 42nd Street, Suite 2400
New York, NY 10165
Tel.: (646) 993-1000
*dstraite@dicellolevitt.com*

**PRITZKER LEVINE LLP**
Elizabeth C. Pritzker (Cal. Bar. No. 146267)
1900 Powell Street, Suite 450
Emeryville, CA 94608
Tel.: (415) 692-0772
Fax: (415) 366-6110
*ecp@pritzkerlevine.com*

**BOTTINI & BOTTINI INC**
Francis A. Bottini, Jr. (SBN 175783)
7817 Ivanhoe Avenue, Suite 102
La Jolla, California 92037
Telephone: (858) 914-2001
Facsimile: (858) 914-2002
*fbottini@bottinilaw.com*

*Counsel for Consolidated Plaintiffs*
*Additional counsel listed on signature page*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN JOSE DIVISION

| | |
|---|---|
| BENJAMIN HEWITT and KIMBERLEY WOODRUFF, *on behalf of themselves and all others similarly situated*,<br><br>Plaintiffs,<br><br>V.<br><br>GOOGLE LLC,<br><br>Defendant.<br><br>This document relates to:<br><br>All Actions | Case No. 5:21-cv-02155-LHK<br><br>CLASS ACTION<br><br>**CONSOLIDATED PLAINTIFFS' NOTICE OF JOINT MOTION; JOINT MOTION FOR APPOINTMENT OF INTERIM LEAD COUNSEL; AND MEMORANDUM IN SUPPORT**<br><br>**FED. R. CIV. P. 23(g)**<br><br>Judge: Hon. Lucy H. Koh<br>Courtroom: Courtroom 8 – 4th Floor<br>Hearing Date: August 5, 2021<br>Hearing Time: 1:30 p.m. |

MEAGHAN DELAHUNTY, MEGHAN CORNELIUS, and JOHN KEVRANIAN, *on behalf of themselves and all others similarly situated*,

Plaintiffs,

v.

GOOGLE LLC,

Defendant.

Consolidated Case No. 5:21-cv-03360-LHK

CLASS ACTION

SALVATORE TORONTO, *on behalf of himself and all others similarly situated*,

Plaintiffs,

v.

GOOGLE LLC,

Defendant.

Consolidated Case No. 5:21-cv-03725-LHK

CLASS ACTION

## <u>NOTICE OF JOINT MOTION</u>

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on August 5, 2021, or as soon thereafter as this matter may be heard, before the Honorable Lucy H. Koh of the United States District Court, Northern District of California, Courtroom 8, 280 South 1st Street 4th Floor, San Jose, CA 95113, Plaintiffs in the consolidated cases *Hewitt, et al. v. Google LLC*, No. 5:21-cv-02155-LHK (N.D. Cal., filed Mar. 26, 2021) (*Hewitt*), *Delahunty et al. v. Google LLC*, No. 5:21-cv-03360-LHK (N.D. Cal., filed May 5, 2021) (*Delahunty*), and *Toronto v. Google LLC*, No. 5:21-cv-03725-LHK (N.D. Cal., filed May 18, 2021) (*Toronto*), will and hereby move for an order appointing the following as interim lead counsel:

- Elizabeth C. Pritzker of Pritzker Levine LLP – Chair Lead/Liaison;
- Lesley E. Weaver of Bleichmar Fonti & Auld LLP;
- Jason "Jay" Barnes of Simmons Hanly Conroy LLC;
- David A. Straite of DiCello Levitt Gutzler LLC;
- Nanci Nishimura of Cotchett, Pitre & McCarthy, LLP; and
- Francis A. Bottini, Jr., of Bottini & Bottini, Inc.

(together, "Interim Lead Counsel"). This motion supersedes the Joint Motion to Consolidate Cases and to Appoint Cotchett, Pitre & McCarthy, LLP, and Bottini & Bottini, Inc. as Interim Co-Lead Counsel, Dkt. No. 67, which is withdrawn.

This motion is brought under Federal Rule of Civil Procedure ("Rule") 23(g). Interim Lead Counsel satisfy all of the criteria under Rule 23(g). They include the first counsel, private or regulatory, to file a privacy class litigation challenging Google's Real Time Bidding ("RTB") practices, based on extensive expert analysis – work that regulators from around the country have acknowledged as ground-breaking.[1] As a team and individually, Interim Lead Counsels'

---

[1] Indeed, five days after *Hewitt* was filed, one state senator in Oklahoma used the complaint as a demonstrative as he lobbied for more stringent privacy laws.

knowledge and experience in prosecuting cutting-edge, complex lawsuits, including leading privacy class actions against some of the largest technology and data collection firms in the country has already served the class well. Their research and pleading practices set the standard adopted by many experienced privacy litigators, including developing causes of action that show that existing law can provide significant redress for abuse of consumers' data and information.

Interim Lead Counsel have already demonstrated, in this case: (1) their willingness and ability to commit to a time-consuming process; (2) the ability to work cooperatively with one another and with others; (3) the efficient and strategic execution of a litigation plan that benefits and protects class members; and (4) access to more than sufficient resources to prosecute this litigation, in a timely manner, to resolution.

With their expertise and collaborative efficiencies in mind, Interim Lead Counsel propose a specialized leadership structure in the form of a Plaintiffs' Executive Committee, to be chaired by Elizabeth C. Pritzker of Pritzker Levine, and additionally comprised of Lesley E. Weaver of Bleichmar Fonti & Auld, Jay Barnes of Simmons Hanly Conroy, David A. Straite of DiCello Levitt Gutzler, Nanci Nishimura of Cotchett, Pitre & McCarthy, LLP, and Francis A. Bottini, Jr., of Bottini & Bottini, Inc. Interim Lead Counsel intend to organize the prosecution of the case into distinct tasks, with each counsel bearing specific responsibilities, to promote efficiency and avoid duplicative effort. Ms. Pritzker, in her role as Chair, will call regular meetings of the Committee, be responsible for responsible for assigning and overseeing work assignments to Committee members and their firms, and review all time and billing records to ensure compliance with strict billing protocols. This team and the well-resourced firms that stand behind them have extensive experience working with regulators in investigating privacy matters such as this and in resolving cases worth billions of dollars.

The makeup of the proposed Executive Committee also furthers Interim Lead Counsels' commitment to diversity and inclusion in the law. It reflects racial diversity, includes three women

---

https://www.dropbox.com/sh/kavi6rwiu0knp6s/AAAXIABrKUZsWE8xqpRTWz4Va?dl=0&preview=MediaAvailability.mp4, Collin Walke Media Availability (Apr. 1, 2021)

law firm partners, and three law firm partners who self-identify as LBGTQ+.

This Motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities, the Declarations of Elizabeth C. Pritzker, Lesley E. Weaver, Jay Barnes, David Straite, Nanci Nishimura, and Francis A. Bottini, Jr., and any additional argument and evidence the Court may consider at the hearing.

# <u>TABLE OF CONTENTS</u>

STATEMENT OF ISSUES TO BE DECIDED ........................................................................ 1

MEMORANDUM OF POINTS AND AUTHORITIES ........................................................ 1

    I.      INTRODUCTION ............................................................................................... 1

    II.     FACTUAL AND PROCEDURAL BACKGROUND ....................................... 2

         A.    The Allegations ............................................................................. 2

         B.    Procedural Background ................................................................. 3

    III.    ARGUMENT ...................................................................................................... 5

         A.    Legal Standard .............................................................................. 5

         B.    Interim Counsel Should Be Appointed to Lead the Consolidated Cases 5

             1.    Interim Counsel Have Worked to Advance the Cases ................ 6

             2.    Interim Counsel Have the Class Action Experience and Knowledge of Privacy Law – And Work Together for Efficient Results ........................................................................................ 6

                    a.    Elizabeth Pritzker of Pritzker Levine LLP ...................... 7

                    b.    Lesley Weaver of Bleichmar Fonti & Auld LLP ........... 9

                    c.    Jay Barnes of Simmons Hanly Conroy LLC ................ 11

                    d.    David Straite of DiCello Levitt Gutzler LLC ............... 12

                    e.    Nanci Nishimura of Cotchett Pitre & McCarthy LLP ... 14

                    f.    Francis Bottini, Jr., of Bottini & Bottini, Inc. .............. 15

             3.    Interim Counsel Regularly Take Cases to Trial ....................... 16

             4.    Interim Counsel Will Commit Ample Resources to Prosecute the Cases Efficiently .................................................................... 16

             5.    Interim Counsel Are Committed to Diversity and Inclusion .... 17

             6.    Interim Counsel Have the Ability to Work Cooperatively With Others ...................................................................................... 17

    IV.    CONCLUSION ............................................................................................... 18

# TABLE OF AUTHORITIES

Cases

*Azpeitia v. Tesoro Ref. & Mktg. Co. LLC*, No. 17-CV-00123-JST, 2017 WL 4071368 (N.D. Cal. Sept. 14, 2017))................................................................................................5, 17

*Brigiotta's Farmland Produce & Garden Ctr., Inc. v. United Potato Growers of Idaho, Inc.*, No. 4:10-CV-307-BLW, 2010 WL 3928544 (D. Idaho Oct. 4, 2010). ...........................................17

*In re Lenovo Adware Litig.*, No. 15-md-02624, 2015 WL 10890657 (N.D. Cal. July 27, 2015)...5

*In re Stubhub Refund Litigation*, 20-md-02951-HSG, 2020 WL 8669823 (N.D. Cal. Nov. 18, 2020).....................................................................................................................17

*Levitte v. Google, Inc.*, Nos. C 08-03369 et al., 2009 WL 482252 (N.D. Cal. Feb. 25, 2009). ......5

*Nat'l Collegiate Athletic Ass'n v. Alston*, __ U.S. __, 141 S. Ct. 2141 (June 21, 2021)................7

*Parkinson v. Hyundai Motor Am.*, 2006 WL 2289801 (C.D. Cal. Aug. 7, 2006).........................5

Statutes

Rule 23(g).....................................................................................................1, 2, 5, 17

Secondary Sources

Manual for Complex Litig., § 21.11 (4th ed. 2004) ......................................................5

**STATEMENT OF ISSUES TO BE DECIDED**

1.    Should the Court appoint, as interim class counsel pursuant to Rule 23(g), a uniquely diverse, experienced and well-qualified Plaintiffs' Executive Committee to be chaired by Elizabeth C. Pritzker of Pritzker Levine LLP, and additionally comprised of Lesley E. Weaver of Bleichmar Fonti & Auld LLP, Jay Barnes of Simmons Hanly & Conroy LLC, David A. Straite of DiCello Levitt Gutzler LLP, Nanci Nishimura of Cotchett Pitre & McCarthy, LLP, and Francis Bottini, Jr. of Bottini & Bottini, Inc.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    INTRODUCTION**

This motion is unopposed. Motivated by their desire to cooperatively prosecute these actions for the benefit of the Plaintiff classes without delay, counsel in each of the consolidated cases have come together to propose a leadership plan that draws upon their backgrounds, knowledge and expertise leading privacy class actions and complex litigation. It is the right team, comprised of some of the leading data privacy lawyers in the country. It is also the right structure, drawing on the resources of several prominent firms necessary to prosecute a case of this magnitude, while including important efficiency measures to stay nimble. And it recognizes the importance of diversity, including a leadership team that is half women and half LGBTQ+, possibly a first in a data privacy class action.

To that end, Plaintiffs in each of the consolidated cases propose an interim leadership structure in the form of a Plaintiffs' Executive Committee – a working committee of experienced class action counsel[2] that will make effective use of the collaborative litigation successes they have employed in similar complex class actions.

The designated lead attorneys[3] who will populate the Plaintiffs' Executive Committee – Ms. Pritzker of Pritzker Levine (as Chair); Ms. Weaver of Bleichmar Fonti & Auld; Mr. Barnes of

---

[2] A similar structure, an interim Plaintiffs' Executive Committee led by one attorney chair, was ordered by Judge Breyer and successfully deployed in *In Re Volkswagen "Clean Diesel" Marketing, Sales Practices, and Products Liability Litigation*, 3:15-md-02672-CRB, Dkt. No. 1084.

[3] Plaintiffs' Steering Committee is referred to herein, collectively, as Interim Lead Counsel.

Simmons Hanly Conroy, Mr. Straite of DiCello Levitt & Gutzler, Ms. Nishimura of Cotchett, Pitre & McCarthy, and Mr. Bottini, Jr., of Bottini & Bottini – consist of trailblazers in the field of complex class actions and data privacy litigation, having successfully litigated the types of privacy and data claims asserted these cases. They amply satisfy Rule 23(g)'s mandate of being the "best able to represent the interests of the class" here. They also represent a commitment to diversity and inclusion in the practice of law. The proposed Executive Committee reflects this commitment by including lead attorneys that are racially and otherwise diverse. Three of the six designated lead attorneys are women, and three are LGBTQ+ lawyers.

Interim Lead Counsel have the knowledge, resources, commitment, and track record to vigorously prosecute these cases to final resolution. Interim appointment should be granted.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    The Allegations

As an Internet industry Goliath, Google dominates the digital search market, owning and operating many of the most popular Internet search engines and applications. In doing so, Google presents a public façade that it is committed to the protection of user privacy. Among its many and varied privacy promises, Google maintains that that it will *never* sell a Google account holder's personal information, including sensitive personal information like race, religion, sexual orientation, and health, to third parties for purposes of advertising. Privately, however, Google breaks its privacy promises to account holders' countless times a day.

Google does so through an automated system, the real time bidding (RTB) system, which allows Google to disclose an account holder's personal information – the target of the ad – in a Bid Request in order to solicit bids from hundreds of thousands of participants. Based on the data within the Bid Request, participants decide whether and how much to bid, and the winning bidder pays Google for the right to place a digital ad, in real time, on the webpage displayed on the target's device. Given its innate purpose, i.e. facilitating *targeted* advertising, the value of a Bid Request is enhanced the more detailed and identifiable the information disclosed. That is, information which permits more accuracy in targeting a particular individual, whether it be location, age, gender, sexual orientation, religion, or other background, interests, and inferences, increases the value of the Bid

Request because a bidder can better match the ad to the target. Well aware of this monetary gain, Google leverages its various Internet services to harvest account holder information, augmenting its ability to provide a rich and highly personalized set of Bid Request data to an unprecedented degree. This includes data that identifies individual account holders, their devices, and their locations; the specific content of their Internet communications; and even highly personal information about their race, religion, sexual orientation, and health. The fact that Google reveals and sells consumer personal information in the bidding process was not widely known until this lawsuit was filed. Indeed, Google denies it.

Google's collection, creation and use of massive data sets to profile account holders and to disclose and sell that information for advertising purposes is illegal and in violation of its express promises and representations to account holders. The breadth of Google's privacy violations is staggering. As its name suggests, Google RTB occurs in real time—from the moment a target engages with a website, to the Bid Request disclosure, to bidding, sale and the display of the digital ad—the process takes place in fewer than 100 milliseconds. And it occurs virtually every time an account holder is on the Internet. Interim Lead Counsel engaged multiple experts and consultants, Professor Christo Wilson, who identified 1.3 million separate publishers participating in Google's ad systems. Barnes Decl., ¶ 9; *Hewitt* Compl., ¶ 160. Each of those publishers is a potential recipient of Bid Request data through Google RTB, including the personal information Google tells account holders it will not share.

## B.    Procedural Background

The *Hewitt* Plaintiffs filed the first RTB class action against Google on March 26, 2021. *See Hewitt,* Dkt No. 1. The filing was the result of intensive work by counsel, including independent investigation and expert analysis—in order to fully vet, review and develop accurate and viable legal claims against Google. *See* Weaver Decl., ¶¶ 2-4; Barnes Decl., ¶¶ 8-11. On May 10, 2021, the *Delahunty* Plaintiffs filed their complaint. Plaintiff *Toronto* filed his complaint a week later, on May 18, 2021. *See Delahunty*, Dkt. No. 1; *Toronto*, Dkt. No. 1.

*Hewitt*, *Delahunty* and *Toronto* all allege Google's RTB practices give rise to substantially similarly causes of action. These include claims for breach of contract; breach of the implied

covenant of good faith and fair dealing; violations of the California Unfair Competition Law; and numerous privacy-based claims, including, violations of Art. I, § 1 of the California State Constitution (invasion of privacy), intrusion upon seclusion, publication of private information, breach of confidence, violations of the California Invasion of Privacy Act; violations of the Electronic Communications Privacy Act ("ECPA") for unauthorized interception, use, and disclosure, violations of ECPA Wiretap Act for unauthorized disclosure of electronic communications, violations of ECPA Stored Communications Act for unauthorized disclosure of electronic communications, and violations of the Video Privacy Protection Act. *See Hewitt*, ¶¶ 243-420; *Delahunty*, ¶¶ 125-205; *Toronto*, ¶¶ 125-199.

*Hewitt*, *Delahunty* and *Toronto* all assert claims on behalf of similarly proposed classes, described as: "all persons residing in the United States with a Google Account who used the Internet on or after Google began using RTB in a manner that disclosed Account Holders' personal information." *See Hewitt*, ¶ 233; *Delahunty*, ¶ 117; *Toronto*, ¶ 108.

On June 24, 2021, the Court entered an order: (1) relating and consolidating *Hewitt*, *Delahunty* and *Toronto*; (2) directing that a consolidated amended complaint be filed by August 27, 2021; (3) setting an initial Case Management Conference in the consolidated actions for September 8, 2021; and (4) ordering any Plaintiffs' counsel interested in submitting an application for interim lead counsel to file such application by July 16, 2021. *Hewitt*, Dkt. No. 69.

Consistent with the Court's June 24, 2021 Order, after meeting and conferring extensively on the leadership question, Interim Lead Counsel now submit this joint, unopposed motion for appointment of an active, interim Plaintiffs' Executive Committee, comprised of a member of each Plaintiff firm. Specifically, the proposed Committee would be comprised of Ms. Pritzker of Pritzker Levine (as Chair); Ms. Weaver of Bleichmar Fonti & Auld; Mr. Barnes of Simmons Hanly & Conroy, Mr. Straite of DiCello Levitt & Gutzler, Ms. Nishimura of Cotchett, Pitre & McCarthy, and Francis Bottini, Jr., of Bottini & Bottini.

# III.    ARGUMENT

## A.    Legal Standard

Federal Rule of Civil Procedure 23(g) authorizes courts to "designate interim counsel to act on behalf of a putative class before determining whether to certify the actions as a class action." Fed. R. Civ. P. 23(g)(3); *see also Levitte v. Google, Inc.*, Nos. C 08-03369 et al., 2009 WL 482252, at *2 (N.D. Cal. Feb. 25, 2009). "[D]esignation of interim counsel clarifies responsibility for protecting the interests of the class during precertification activities, such as making and responding to motions, conducting any necessary discovery, coordinating for class certification, and negotiating settlement." Manual for Complex Litig., § 21.11 (4th ed. 2004) (cited by Judge Tigar in *Azpeitia v. Tesoro Ref. & Mktg. Co. LLC*, No. 17-CV-00123-JST, 2017 WL 4071368 (N.D. Cal. Sept. 14, 2017)).

Rule 23(g)(1)(A) requires that courts consider four key factors in appointing class counsel: "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." The Court looks to those factors in designating interim class counsel as well. *See Parkinson v. Hyundai Motor Am.*, 2006 WL 2289801, at *2 (C.D. Cal. Aug. 7, 2006) ("Rule 23(g) provides criteria to consider when appointing class counsel, without distinguishing interim counsel. Presumably, the same factors apply[.]"); *In re Lenovo Adware Litig.*, No. 15-md-02624, 2015 WL 10890657, at *1 n.1 (N.D. Cal. July 27, 2015) ("[T]he factors in [Rule 23(g)(1)(A)] are those a court must consider in appointing lead counsel, rather than interim lead counsel. However, courts have held that these same factors apply in . . . the selection of interim lead counsel."). The Court may also consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B).

## B.    Interim Counsel Should Be Appointed to Lead the Consolidated Cases

As provided below, each Rule 23(g) factor supports appointment of Interim Counsel to serve as interim lead counsel for the plaintiff classes in these consolidated cases.

### 1. Interim Counsel Have Worked to Advance the Cases

Interim Counsel have all devoted substantial resources—both in time and money—to investigating the allegations of the consolidated cases, including extensive investigation and review of Google's various policies and actions related to privacy, data collection, and Google RTB. Interim Counsel also reviewed regulatory investigations related to digital advertising, real time-bidding, and Google's practices in particular, analyzed relevant studies and research papers related to the misconduct alleged, and consulted experts with special knowledge in the field who provided essential technical support. *See* Weaver Decl., ¶¶ 2-4; Barnes Decl., ¶¶ 8-10; Pritzker Decl., ¶ 3; Straite Decl., ¶¶ 19-21; Nishimura Decl., ¶ 1; Bottini Decl., ¶ 2. These thorough and detailed pre-filing investigations led to the development of detailed factual and legal claims asserted against Google regarding its unlawful disclosure and sale of Google Account Holder information through Google RTB for purposes of digital advertising.

Interim Counsel all have done extensive work identifying, investigating, and prosecuting the potential claims alleged in the consolidated cases, and have vetted more than 300 potential plaintiffs for inclusion in case. They have done so independently and as a team. Weaver Decl., ¶¶ 2-4, 30-32; Barnes Decl., ¶¶ 8-10, 23-26; Straite Decl., ¶¶ 18-21; Pritzker Decl., ¶¶ 2-4; Nishimura Decl., ¶ 1. These factors weigh strongly in favor of their appointment to an interim Plaintiffs' Executive Committee led by one lead attorney (Ms. Pritzker) as chair. *See Azpeitia* 2017 WL 4071368, at *3 (appointing firm that performed extensive work identifying and investigating potential claims as interim lead counsel, and other firms representing Plaintiffs to an informal litigation committee "with the hours expended litigating the action to be distributed evenly between the firms.").

### 2. Interim Counsel Have the Class Action Experience and Knowledge of Privacy Law – And Work Together for Efficient Results

Interim Counsel bring unparalleled experience handling complex class actions and extensive knowledge and experience litigating privacy class actions. Each Interim Counsel has capably served lead roles in other complex cases and privacy class actions throughout the country, and achieved significant relief for class members through settlement and trial.

Interim Counsel proposed to serve on the interim Plaintiffs' Executive Committee are:

### a.    Elizabeth Pritzker of Pritzker Levine LLP

Interim Counsel propose that Elizabeth Pritzker, managing partner of the Pritzker Levine law firm since its founding in 2013, serve as Chair of the interim Plaintiffs' Executive Committee.

Ms. Pritzker practices exclusively in the areas of litigation, trial and client counseling. She has prosecuted cases against monopolists, price-fixing cartels, Big Tech, major manufacturers, pharmaceutical companies and the NCAA.

Ms. Pritzker is frequently appointed by courts to lead major complex cases. Most recently, she was appointed to serve as Co-Lead Counsel in *In Re EpiPen (Epinephrine Injection, USP) Marketing, Sales Practices and Antitrust Litigation*, MDL No. 2785-DDC (D. Kan.), an antitrust MDL pending before Judge Daniel Crabtree alleging unlawful monopolization, deceptive trade practices, and antitrust violations in the marketing and sale of the EpiPen automatic injection device; and as Liaison Counsel for the Consumer Class in *In Re Google Play Store Antitrust Litigation*, MDL No. 2981-JD (N.D. Cal.), an antitrust MDL pending before Judge James Donato alleging that Google unlawfully limiting competition by forcing Android users to use the Google Play app store and levying a supra-competitive fee on app store purchases. Ms. Pritzker also serves as Additional Class Counsel in *In re NCAA Grant-in-Aid Cap Antitrust Litigation*, in which a trial verdict on behalf of a nationwide class of college athletes challenging NCAA-imposed caps on athletic scholarships has recently been unanimously upheld by the U.S. Supreme Court. *Nat'l Collegiate Athletic Ass'n v. Alston*, __ U.S. __, 141 S. Ct. 2141 (June 21, 2021). Pritzker Decl., ¶ 6, and Ex. A thereto.

Ms. Pritzker's leadership roles extend to privacy and high-tech cases. She served as court-appointed Co-Lead Counsel in: *In re Lenovo Adware Litig*., MDL No. 2624-HSG (N.D. Cal), a multi-district consumer class action alleging spyware-related privacy intrusion, California consumer protection and damages claims; as Trial Counsel in *ITyX Solutions, AG v. Kodak Alaris Inc.*, No. 16-cv-10250-ADB (D. Mass.), an international business dispute involving artificial intelligence technologies that resulted in a favorable, multimillion jury verdict for her client; as Liaison Counsel in *In re TFT-LCD (Flat Panel) Antitrust Litig*., MDL No. 1827-SI (N.D. Cal.), an MDL alleging price-fixing by manufacturers of LCD products and panels, resulting in $473 million in direct

purchaser plaintiff class recoveries; and as a member of the Plaintiffs' Executive Committee in *In re Lithium Ion Rechargeable Batteries Antitrust Litigation*, MDL No. 2420-YGR (N.D. Cal.), a multi-district antitrust class action, and in *In re Adobe Systems, Inc. Privacy Litigation,* No. 13–CV–05226–LHK, a nationwide class action on behalf of users of Adobe software products whose personal private information or property was compromised as a result of allegedly substandard security practices at Adobe that lead to a massive data and security breach in September 2013. Pritzker Decl., ¶ 7, and Ex. A thereto.

Ms. Pritzker is the immediate Past Chair of the Executive Committee of Antitrust, Unfair Competition and Privacy Section of the California Lawyers Association. During her tenure on the Executive Committee, she served as Editor-in-Chief of the Section's *Competition* Journal where she edited and published numerous articles on privacy law. Mr. Pritzker also authored "*Making the Intangible Concrete: Litigating Intangible Harms in a Post-Spokeo World*," *Competition*, Vol. 26, No. 1 (Spring 2017), an article analyzing privacy-based standing decisions in the federal courts. Pritzker Decl., ¶ 9.

Ms. Pritzker has been recognized by her peers as a Northern California "Super Lawyer" for more than a decade. She has been named to list of the Northern California "Top 100 Lawyers", and repeatedly appeared on the Northern California "Top 50 Women Lawyers" list. *Id*., ¶ 10.

Ms. Pritzker has served the legal community in many volunteer endeavors. She currently serves as a Lawyer Representative to the Ninth Circuit Conference Executive Committee. She previously served as a Lawyer Representative to the United States District Court for the Northern District of California; on the Board of Governors of Consumer Attorneys of California (CAOC); and as a board member of the Legal Aid Society of San Mateo County and Bay Area Lawyers for Individual Freedom (BALIF), respectively. *Id*., ¶ 12.

Ms. Pritzker, a self-identified LGBTQ+ attorney, has a demonstrated commitment to diversity and inclusion in the legal profession, and to mentorship of diverse attorneys in particular. She founded Pritzker Levine, a majority women law firm, in part, to provide a leadership model for women and diverse attorneys committed to practicing in and leading complex litigation and MDLs. Since 2016, she has served as a contributing practitioner/author to the James F. Humphreys Complex

Litigation Center George Washington Law School's <u>Guidelines and Best Practices for Judges Appointing Lawyers to Leadership Positions in MDL and Class Action Litigation</u> (last published on Sept. 24, 2020). And, in 2020, in her role as Chair of the Antitrust, Unfair Competition and Privacy Section of the California Lawyers Association, Ms. Pritzker conceived, developed and fundraised for a Diversity & Inclusion Fellowship that will provide training, mentorship, and career opportunities for students from underrepresented groups in the practice of complex litigation matters, including antitrust, unfair competition, privacy and intellectual property law. The Section selected its inaugural fellowship recipient in March 2021. *Id.*, ¶ 13.

Additional information regarding Pritzker Levine and the qualifications of Ms. Pritzker is attached as Exhibit A to the Pritzker Declaration.

**b.    Lesley Weaver of Bleichmar Fonti & Auld LLP**

Lesley Weaver leads Bleichmar Fonti & Auld LLP's ("BFA") Antitrust and Consumer litigation department, and heads BFA's Oakland, California office. BFA is a law firm based in New York City with offices in Oakland, California; Toronto, Ontario; and White Plains, New York. The firm has recovered more than $16 billion for its clients since its founding in 2014.

Ms. Weaver brings over twenty years of law practice dedicated to litigating significant cases protecting consumers, including public entities from harmful, fraudulent conduct. In 2018 she was named a California Lawyer of the Year for her work in the *In re Volkswagen "Clean Diesel" Marketing, Sales Practices, and Products Liability Litigation*, No. 15-md-02672-CRB (N.D. Cal.), in which she both litigated and participated in settlement discussions resulting in the first tranche $10 billion settlement, liaising with the California Attorney General's office.[4] The same year she

---

[4] Ms. Weaver has also been appointed to lead roles in other significant matters, including *In re Chrysler-Dodge-Jeep EcoDiesel Marketing, Sales Practices, and Products Liability Litigation*, No. 3:17-md-02777-EMC (N.D. Cal.) (plaintiffs' steering committee; worked closely with technical experts, achieved final approval of a settlement for $307.5 million in cash, in addition to extended warranties worth more than $120 million); *In re Inductors Antitrust Litigation*, No. 18-cv-00198-EJD (N.D. Cal.) (Interim Co-Lead Counsel; represents a class of small businesses that directly purchased a key electronic component of electronic circuits found in smart phones, laptops, and computers, from largely foreign manufacturers); *In re ZF-TRW Airbag Control Units Products Liability Litigation*, No. 19-ml-02905 (C.D. Cal.) (plaintiffs' steering committee; case concerns over 12 million cars sold with allegedly defective airbag control units). Weaver Decl., ¶ 17.

was named a Plaintiffs' Trailblazer by the National Law Journal and she was invited to join the ABA's Fellows of the American Bar. In 2021, she was named to The National Trial Lawyers list of the Top 100 Civil Plaintiff Trial Lawyers and has been named a "Super Lawyer" for many years running. Weaver Decl., ¶ 20, and Ex. A thereto. In 2020, Ms. Weaver testified before the House Financial Services Committee on behalf of the National Black Farmers Association regarding a potential bank merger that, as proposed, would have profound negative effects on the ability of black farmers to obtain financing to buy seed. Her pro bono economic analysis and testimony secured specific relief for her clients. *Id.*, ¶ 21.

Significantly for this case, Ms. Weaver also has deep experience with privacy litigation (as distinct from data breach or cyber security). She has tried to a jury one of only a handful of privacy class actions in this country. In October 2014, Ms. Weaver delivered the opening and closing arguments in an internet privacy case against a Chinese-owned, California-based internet site. Plaintiffs recovered 100% of economic damages and won a $15 million punitive damages jury verdict, as well as significant injunctive relief. *Id.*, ¶ 12. At the time of that trial, many focus groups still reflected that consumers wrestled with the concept of privacy on the internet. Ms. Weaver convinced the jury otherwise.

Ms. Weaver is currently acting as Co-Lead Counsel in two other significant privacy cases, and in that role has spoken with and liaised with state and eternal litigators to engage in public policy discussions about what protections and disclosures are necessary and appropriate. Those cases include *In re Facebook, Inc. Consumer Privacy User Profile Litigation*, No. 18-md-02843-VC (N.D. Cal.) (co-lead counsel; consolidated action arising out the Cambridge Analytica scandal alleging that Facebook violated consumer fraud and privacy laws by enabling millions of third parties to access to Facebook users' private content and information without users' knowledge or consent); *Calhoun v. Google LLC*, No. 5:20-cv-05146-LHK (N.D. Cal.).

Ms. Weaver is an active member of the Sedona Conference Working Groups 6 and 11, and serves on the drafting committee for the Sedona Conference Data Privacy Primer on Biometrics. Ms. Weaver is also co-author of the George Washington Law School's Inclusivity and Excellence: Guidelines and Best Practices for Judges Appointing Lawyers to Leadership Positions in MDL and

Class Action Litigation, a recurring participant in panels at the Duke Law Conference and the Practicing Law Institute. She is regularly invited to speak on privacy-related topics, including the Sedona Conference, is a recurring participant in the "Masters of Litigation" conference taught at West Virginia Law School, and has spoken at the Northern District of California Judicial Conference. She is an acting Lawyer Representative for the Northern District of California and an active member of the Executive Committees of both the CyberSecurity and Privacy committee and Securities committee for the Bar Association of San Francisco. *Id.* In addition to her legal volunteer work, Ms. Weaver spent two decades in leadership roles of many of the nation's leading LGBTQ+ advocacy groups, including serving as an eight year national chair for the National Center for Lesbian Rights; Co-Chair of Bay Area Lawyers for Individual Freedom (with both State Sen. Scott Wiener and Former City Supervisor Dave Campos); Co-Chair of the San Francisco Community Center; and in leadership roles in Equality California, the International Lesbian Gay Human Rights Association and Frameline, the country's largest LGBTQ+ film festival. Additional information regarding the qualifications of Ms. Weaver and BFA is attached as Exhibit A to the Weaver Declaration.

### c.     Jay Barnes of Simmons Hanly Conroy LLC

Simmons Hanly Conroy ("SHC") is a national litigation firm with offices in Illinois, Missouri, New York, and California. Since its founding in 1999, SHC has recovered over $4 billion in verdicts and settlements for its clients, including a recent jury verdict of $1 billion. Barnes Decl., ¶ 18. In the class action field, SHC members have served as class counsel or co-counsel on a number of cases, and currently serve as co-lead counsel in the national opioid litigation, *In re: National Prescription Opiate Litigation,* MDL 2804 (N.D. Ohio).

Mr. Barnes has been litigating Internet privacy cases for more than a decade. He has served as lead counsel or in leadership for more than a dozen consumer privacy cases involving the types of browser technologies at issue here. These cases include landmark opinions from the Third and Ninth Circuits. See *In re: Google Cookie Placement Consumer Privacy Litig.*, 806 F.3d 125 (3d Cir. 2015); *In re Nickelodeon Consumer Privacy Litig.*, 827 F.3d 262 (3d Cir. 2016); and *In re Facebook Internet Tracking Litig.*, 956 F.3d 589 (9th Cir. 2020). They also include District and state court

cases that set important precedents in this evolving field of law, sch as *Calhoun v. Google, LLC*, No. 5:20-cv-05146-LHK (N.D. Cal.); *Doe v. Partners, et. al.*, No. 1984-CV- 01651 (Suffolk County, Massachusetts 2019); *Doe v. Medstar, Inc*., No. 24-C-20-000591 (Baltimore City, Maryland 2019); *Doe v. Virginia Mason,* No. 19-2-26674-1 SE (Kings County, Washington). In *Calhoun*, this Court recognized Mr. Barnes and opposing counsel at oral argument for his "very, very helpful answers, insights, and guidance" in this area where "the law is developing" and "challenging" such that it presents "really complicated and subtle and nuanced issues." Barnes Decl., ¶ 26.

Mr. Barnes also has extensive experience in consumer product class action litigation. Representative cases in those traditional consumer practice areas include *Fernandez v. Atkins Nutritionals, Inc*., No. 3:2017-cv-01628 (S.D. Cal) and *Bailey v. RiteAid*, No. 4:18-cv-06926 (N.D. Cal.). In addition, Barnes has extensive experience leading public investigations. From 2011 and 2018, Mr. Barnes served as a state representative in Missouri, earning a bipartisan reputation as "principled," "stubborn," professional, and able to bring diverse interests together in hot-button legislative investigations. *See* Barnes Decl., ¶¶ 31, n. 4. As the Kansas City Star wrote, "Rep. Jay Barnes and other members of the committee he led deserve special credit for handling this difficult task with complete professionalism … Missourians owe a debt to Barnes, and all the members of the Greitens committee, for their hard work, seriousness of purpose, transparency, and bipartisan approach." *Id.*, ¶ 33.

### d.    David Straite of DiCello Levitt Gutzler LLC

David Straite is one of the few IAPP-Certified Information Privacy Professionals in the plaintiffs' bar,[5] and a recognized national leader in the field. Mr. Straite is the nation's leading voice for the recognition of property rights in personal data, a 10-year effort culminating in the Ninth Circuit's landmark April 2020 decision in *In re: Facebook Internet Tracking Litigation*, and the Northern District of California's March 2021 decision in *Calhoun v. Google*, both of which he

---

[5] The International Association of Privacy Professionals (IAPP) is accredited by the American Bar Association to certify lawyers in the specialty area of Privacy Law.

1  argued. Mr. Straite also successfully argued for the extra-territorial application of the Computer

2  Fraud and Abuse Act in 2019 in *In re: Apple Device Performance Litigation*, and filed the first-ever

3  data privacy class action under seal to address a dangerous website vulnerability under Court

4  supervision in *Rodriguez v. Universal Prop. & Cas. Ins. Co*. He was also on the appellate teams in

5  *In re: Google Cookie Placement Consumer Privacy Liti*gation and *In re: Horizon Data Breach*

6  *Litigation*, both in the Third Circuit, successfully clarifying the law of Article III standing in data

7  privacy cases. David has been recognized as a "pioneer" in the field by Judge James Ware, former

8  Chief Judge of the Northern District of California. Straite Decl., ¶ 27.

9      In May 2021, Mr. Straite joined DiCello Levitt Gutzler, one of the top data privacy and class

10  action firms in the country. A few months ago, *Law360* named DiCello Levitt as one of only five

11  Cybersecurity / Data Privacy Practice Groups of the Year, a list that included Cooley LLP, who

12  represents Google in this case.[6] Straite Decl., ¶ 9(b). On the same date, *Law360* also named DiCello

13  Levitt as one of seven Class Action Practice Groups of the Year.[7] *Id*., ¶ 9(a). On January 20, 2020,

14  the *National Law Journal* named DiCello Levitt "Law Firm of the Year – Privacy / Data Breach"

15  beating out five other finalists.[8] *Id*., ¶ 9(c).

16      The firm's Cybersecurity and Data Privacy Practice was founded by Adam Levitt, one of

17  the original pioneers of Internet privacy law, leading the class in *In re: DoubleClick, Inc. Privacy*

18  *Litigation* more than 20 years ago, and successfully arguing *In re: Pharmatrak, Inc. Privacy*

19  *Litigation* in the First Circuit. Today, the department is chaired by Amy Keller, co-lead counsel in

20  the *Marriott*, *Equifax* and *Blackbaud* data breach MDLs, and just named one of only 11 Elite

21  Women of the Plaintiff Bar by the *National Law Journal* (and she was the only woman named two

22  years in a row). Straite Decl., ¶ 26. Mr. Levitt and Ms. Keller will be invaluable resources to Mr.

23  Straite and this team.

24  _____

25  [6] The five firms were DiCello Levitt; Cooley; Edelson; Latham & Watkins; and Robbins Geller.
   https://www.law360.com/articles/1327476.

26  [7] The seven firms were DiCello Levitt; Cohen Milstein; Covington & Burling; Edelson; Hagens
   Berman; and Kirkland & Ellis. *Id*., ¶ 9(a).

27

28  [8] The six finalists were DiCello Levitt; Berger Montague; Girard Sharp; Lieff Cabraser; Motley
   Rice; and Stueve Siegel. *Id*., ¶ 9(c).

1    Mr. Straite is also an adjunct professor at Yeshiva University's Sy Syms School of Business,

2   teaching Business Law and Ethics every fall semester since 2015. Mr. Straite is also a self-identified

3   LGBTQ+ attorney, serving on his firm's Diversity and Inclusion Committee, and is a member of

4   the Diversity in Privacy Section of the IAPP, and a member of the Lesbian, Gay, Bisexual,

5   Transgender and Queer Rights Committee of the New York City Bar Association.

6    Additional information regarding DiCello Levitt and the qualifications of Mr. Straite is

7   attached as Exhibit A to the Straite Declaration.

8                    **e.    Nanci Nishimura of Cotchett Pitre & McCarthy LLP**

9    As a CPM Partner, Nanci E. Nishimura is one of the attorneys that leads the firm's complex

10   individual actions focusing on antitrust and business litigation. She has represented dozens of cities,

11   counties, and other public entities in large and complex individual actions coordinated with class

12   actions in courts across the country, as well as mediations, arbitrations, and community-based pro

13   bono work. For example, Ms. Nishimura was recently appointed to the Executive Committee in *In*

14   *re Google Play Consumer Antitrust Litigation*, No. 3:20-cv-05761-JG (N.D. Cal.), alleging that

15   Google engages in an array of anticompetitive conduct to maintain a monopoly in the Android app

16   distribution market and the Android app payment processing market. She is also the lead attorney

17   for the Individual Plaintiffs consolidated with class actions in the multidistrict litigation *In re LIBOR*

18   *Antitrust Litigation*, No. 17-2413, Master File No. 1:11-md-02262-NRB, representing more than a

19   dozen public entities, including the San Diego Association of Governments, The Regents of the

20   University of California, East Bay Municipal Utilities District, County of Sacramento. The

21   complaints allege that more than a dozen of the world's financial institutions reported their daily

22   interbank borrowing rates, which are used to set the global benchmark interest rates known as the

23   London Interbank Offered Rate (LIBOR), to the British Bankers Association, which manipulated

24   their reported borrowing rates to benefit their profits and credit ratings, and to the detriment of

25   transactions worldwide with interest rates set to LIBOR, from consumer loans to complex municipal

26   investment instruments. Ms. Nishimura has also served lead counsel in numerous other cases, as

27   detailed in her accompanying declaration, including: *Ambac Bond Insurance Litigation*, No. CJC-

28   08-004555 (JCCP 4555) (San Francisco County Super. Ct.), *In re Municipal Derivatives Antitrust*

*Litigation*, No. 1:08-md-01950-VM-GWG (S.D.N.Y.), *Anthony P. Miele III v. Franklin Resources, Inc.,* 3:15-cv-00199-LB. Nishimura Decl., ¶¶ 2-6.

Ms. Nishimura is also active in the legal and philanthropic community. Until 2021, she served for ten years as the Governor's appointee to the California Commission on Judicial Performance, a constitutionally independent body with jurisdiction to investigate and discipline judicial misconduct, and was the first woman non-judge to be elected chair for two terms. In 2019, the Governor appointed Ms. Nishimura to the California Uniform Law Commission, which works with the states and territories to study, draft and propose uniform laws. She is also a trustee and commissioner of the Asian Art Museum in San Francisco, and a trustee of the California Science Center Foundation. Nishimura Decl., ¶ 7. Additional information regarding Cotchett Pitre & McCarthy and the qualifications of Ms. Nishimura is attached as Exhibit 1 to the Nishimura Declaration.

**f.    Francis Bottini, Jr., of Bottini & Bottini, Inc.**

Francis Bottini has served as lead or co-lead counsel in consumer, securities, and antitrust cases which have recovered hundreds of millions of dollars for class members. *See* Bottini Decl., ¶¶ 5-9 and Ex. A thereto. Most recently, in 2020, Bottini served as co-lead counsel in *In re Alphabet Inc. Shareholder Derivative Litigation*, Lead Case No. 19CV341522 (Santa Clara County Super. Ct.), which resulted in a groundbreaking settlement, including Google's commitment to eliminate mandatory arbitration in cases alleging sexual harassment and discrimination; the establishment of a Diversity, Equity, & Inclusion Council including two members selected by Plaintiffs' counsel; and an agreement by Google to spend $310 million over ten years on workplace initiatives designed to eliminate sexual harassment and discrimination and initiatives that support diversity, equity, and inclusion. *Id.* Bottini also served as co-lead counsel in *In re Snap, Inc. Securities Cases*, JCCP No. 4960 (Los Angeles County Super. Ct.), in which the Court has granted preliminary approval of a settlement providing a $32.8 million recovery for shareholders who bought stock in Snap's IPO. Bottini Decl., ¶ 7. Bottini & Bottini is also currently serving as Lead or Co-Lead Counsel in a number of complex cases pending in the San Francisco Bay Area, including *In re Eventbrite, Inc. Sec. Litig.*, Lead Case No. 19CIV02798 (Cal. Super. Ct., Cnty. of San Mateo); and *Wolther v.*

*Maheshwari*, Lead Case No. 18CV329690 (Cal. Super. Ct., Cnty. of Santa Clara). Bottini Decl., ¶ 8.

Additional information regarding Bottini & Bottini and the qualifications of Mr. Bottini is attached as Exhibit A to the Bottini Declaration.

### 3.    Interim Counsel Regularly Take Cases to Trial

Interim Counsel all have extensive experience trying complex cases and are willing and able to take this litigation to trial, if necessary. *See* Pritzker Decl., ¶¶ 6-7; Weaver Decl., ¶¶ 12-17; Barnes Decl., ¶¶ 15-16; Straite Decl., ¶¶ 4-6; Nishimura Decl., ¶ 10-16; Bottini Decl. Ex. A. Additional information about Interim Counsel's trial experience can be found in their respective firm resumes.

### 4.    Interim Counsel Will Commit Ample Resources to Prosecute the Cases Efficiently

Interim Counsel have the resources needed to prosecute this action in the best interests of the proposed class. *See* Fed. R. Civ. P. 23(g)(1)(A)(iv). Together, the firms are ably staffed with attorneys and support, employing more than 200 lawyers in 22 offices across the United States.

Interim Counsel routinely advance the costs of litigation and are not using litigation funders for this case. They have repeatedly demonstrated the ability and willingness to dedicate substantial resources to pursuing class claims, and will do so again here.

At the same time, Interim Counsel are committed to litigating the case efficiently and economically, and they will use their experience and background in similar cases to streamline the litigation for the benefit of the plaintiff classes. Interim Counsel are well-versed in using case management strategies to efficiently focus litigation, including appropriate staffing of all litigation tasks to those lead attorneys and firm(s) best suited to the particular task(s) at hand, meetings of the Committee to ensure that assigned work tasks are being attended to, are well-executed, and are completed with efficiency, and implementation of strict time-keeping and expense billing protocols to ensure that all professional time associated with these cases is of the highest quality, and demonstrates efficiency, and effectiveness**,** in additional to exceptionalism. A proposed time and expense protocol, already entered in the related *Calhoun* case and that can be adapted here, is attached as Ex. B to the Pritzker Decl.

### 5.    Interim Counsel Are Committed to Diversity and Inclusion

While not a factor identified by Fed. R. Civ. P. 23(g), diversity among proposed leadership has and should be considered by the Court. *See, e.g. In re Stubhub Refund Litigation*, No. 20-md-02951-HSG, 2020 WL 8669823, at *1 (N.D. Cal. Nov. 18, 2020) (noting with approval co-lead counsel's "careful attention to creating a diverse team".)

Indeed, diversity in leadership will be better suited to represent the diverse class proposed in this case. Here, one-half of the attorneys proposed to lead the case are women. Additionally, the proposed Executive Committee includes Lesley Weaver, David Straite, and Elizabeth Pritzker (as Chair): all three are leaders in complex class actions and data privacy litigation, and all are members of the LGBTQi+ community. If appointed, it might be the first time that fully half a class action leadership team is LGBTQi+.

### 6.    Interim Counsel Have the Ability to Work Cooperatively With Others

Interim Counsel have the ability and willingness to work cooperatively with other law firms, including other plaintiffs' lawyers that have filed (or may file) similar actions, and counsel for Google. Interim Counsel understand that professional and courteous relations amongst joint counsel, as well as between opposing counsel, are essential to the conduct and management of complex litigation such as this one. In fact, as evidenced by the present motion, Interim Counsel have already demonstrated a willingness to work cooperatively in litigating these cases.

The proposed leadership structure—an interim Plaintiffs' Executive Committee headed by a single chair—is ideally suited to the particular circumstances of these consolidated cases, which will require a team of dedicated lawyers with sufficient resources to pursue litigation against a sophisticated defendant, one who is arguably the largest data company in the world. *See* Pritzker Decl., ¶ 15. It is similar to Executive Committees that were approved in complex cases by the courts in this District (and elsewhere),[9] and will provide significant benefit to the plaintiff classes here.

---

[9] *See. e.g., Azpeitia* 2017 WL 4071368, at *3; *In Re Volkswagen "Clean Diesel" Marketing, Sales Practices, and Products Liability Litigation*, 3:15-md-02672-CRB, Dkt. No. 1084; *see also Brigiotta's Farmland Produce & Garden Ctr., Inc. v. United Potato Growers of Idaho, Inc.*, No. 4:10-CV-307-BLW, 2010 WL 3928544, at *3 (D. Idaho Oct. 4, 2010).

1  Interim Counsel are well established, reputable, and have demonstrated that they are capable of

2  working together collaboratively and efficiently, handling the challenges of this litigation and

3  committing the necessary resources to represent the plaintiff classes.

4  **IV.    CONCLUSION**

5          Plaintiffs respectfully request that the Court appoint Lesley E. Weaver, of Bleichmar Fonti

6  & Auld LLP, Jason "Jay" Barnes of Simmons Hanly Conroy LLC, David A. Straite of Dicello Levitt

7  Gutzler LLC, Nanci Nishimura of Cotchett, Pitre & McCarthy, and Francis Bottini, Jr., of Bottini

8  & Bottini, Inc., as Interim Lead Counsel that will serve together on a Plaintiffs' Executive

9  Committee, and with Interim Lead Counsel Elizabeth C. Pritzker of Pritzker Levine LLP as Chair.

10

11  DATED: July 16, 2021

12

13  **BLEICHMAR FONTI & AULD LLP**

14  By:    */s/ Lesley E. Weaver*
   Lesley E. Weaver (Cal. Bar No.191305)
15  Matthew S. Melamed (Cal. Bar No. 260272)
   Anne K. Davis (Cal. Bar No. 267909)
16  Angelica M. Ornelas (Cal. Bar No. 285929)
   Joshua D. Samra (Cal. Bar No. 313050)
17  555 12th Street, Suite 1600
   Oakland, CA 94607
18  Tel.: (415) 445-4003
   Fax: (415) 445-4020
19  *lweaver@bfalaw.com*
   *mmelamed@bfalaw.com*
20  *adavis@bfalaw.com*
   *aornelas@bfalaw.com*
21  *jsamra@bfalaw.com*

22  **SIMMONS HANLY CONROY LLC**

23  By:    */s/ Jay Barnes*
24  Mitchell M. Breit (*pro hac vice* to be sought)
   Jason 'Jay' Barnes (admitted *pro hac vice*)
25  An Truong (admitted *pro hac vice*)
   Eric Johnson (*pro hac vice* to be sought)
26  112 Madison Avenue, 7th Floor
   New York, NY 10016
27  Tel.: (212) 784-6400
   Fax: (212) 213-5949
28  *mbreit@simmonsfirm.com*

**PRITZKER LEVINE LLP**

By:    */s/ Elizabeth Pritzker*
Elizabeth C. Pritzker (Cal. Bar. No. 146267)
Johnathan K. Levine Cal. Bar. No. 220289)
Caroline C. Corbitt (Cal. Bar. No. 305492)
1900 Powell Street, Suite 450
Emeryville, CA 94608
Tel.: (415) 692-0772
Fax: (415) 366-6110
*ecp@pritzkerlevine.com*
*jkl@pritzkerlevine.com*
*ccc@pritzkerlevine.com*

**DICELLO LEVITT GUTZLER LLC**

By:    */s/ David Straite*
David A. Straite (admitted *pro hac vice*)
One Grand Central Place
60 East 42nd Street, Suite 2400
New York, NY 10165
Tel.: (646) 933-1000
*dstraite@dicellolevitt.com*

Amy E. Keller (admitted *pro hac vice*)
Ten North Dearborn Street
Sixth Floor
Chicago, IL 60602
Tel.: (312) 214-7900

Case No. 5:21-cv-2155-LHK-VKD
MOTION FOR APPOINTMENT OF INTERIM LEAD COUNSEL

1  *jaybarnes@simmonsfirm.com*                *akeller@dicellolevitt.com*
   *atruong@simmonsfirm.com*
2  *ejohnson@simmonsfirm.com*

3  *Counsel for Hewitt Plaintiffs*

4  **COTCHETT, PITRE & McCARTHY, LLP**

5  By:    */s/ Nanci E. Nishimura*
6  Nanci E. Nishimura (SBN 152621)
   *nnishimura@cpmlegal.com*
7  Brian Danitz (SBN 247403)
   *bdanitz@cpmlegal.com*
8  Noorjahan Rahman (SBN 330572)
   *nrahman@cpmlegal.com*
9  Bethany M. Hill (SBN 326358)
   *bhill@cpmlegal.com*
10 840 Malcolm Road, Ste. 200
   Burlingame, CA 94010
11 Tel.: (650) 697-6000
   Fax: (650) 697-0577
12
13 Karin B. Swope (admitted *pro hac vice*)
14 7511 Greenwood Avenue N., Suite 4057
   Seattle, WA 98103
15 Tel.: (206) 778-2123
   Fax: (650) 697-0577
16 *kswope@cpmlegal.com*
17
   *Counsel for Delahunty Plaintiffs*
18
19 **BOTTINI & BOTTINI INC**

20 By:    */s/ Francis A. Bottini, Jr.*
   Francis A. Bottini, Jr. (SBN 175783)
21 Anne B. Beste (SBN 326881)
   Albert Y. Chang (SBN 269065)
22 Yury A. Kolesnikov (SBN 271073)
   7817 Ivanhoe Avenue, Suite 102
23 La Jolla, California 92037
   Telephone: (858) 914-2001
24 Facsimile: (858) 914-2002
25 *fbottini@bottinilaw.com*
   *abeste@bottinilaw.com*
26 *achang@bottinilaw.com*
   *ykolesnikov@bottinilaw.com*
27
   *Counsel for Toronto Plaintiff*
28

1

**ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1(i)(3)**

2

      I, Lesley E. Weaver, attest that concurrence in the filing of this document has been obtained

3

from the other signatories. I declare under penalty of perjury that the foregoing is true and correct.

4

      Executed this 16th day of July, 2021, at Whitefish, Montana.

5

      By:    */s/ Lesley E. Weaver*

6

      Lesley E. Weaver

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28