October 19, 2021

Magistrate Virginia K. DeMarchi
San Jose Courthouse, Courtroom 2-5th Floor
280 South 1st Street, San Jose, CA 95113

Re: Joint Discovery Dispute - *In re Google RTB Consumer Privacy Litig.*, 21-cv-02155

Dear Magistrate Judge DeMarchi:

Plaintiffs and Google LLC ("Google") submit this joint letter brief regarding the entry of a Stipulated Order re: Discovery of Electronically Stored Information ("ESI"). Having met and conferred several times, including most recently on October 8, the parties have identified specific disputes ripe for the Court's consideration.

Exhibit 1 and Appendix A is a draft ESI Protocol that the Parties respectfully request be entered, reflecting the agreed and disputed terms:

- The agreed terms appear in **black** text.

- Plaintiffs' compromise proposals appear in blue text (Plaintiffs had originally proposed several additional terms but removed them from Exhibit 1 for clarity).

- Google's proposals appear in red text (except in Section 8(b), in which the red text reflects only Google's prior compromise proposal and not a proposal that Google requests the Court to adopt now, except in the alternative).

## I.   PLAINTIFF'S POSITION

***Section 4, General Provisions*:**  Section 4(a) requires a producing party to not redact documents for relevance because doing makes the document harder to understand.  "A party should not take it upon him, her or itself to decide unilaterally what context is necessary for the non-redacted part disclosed, and what might be useless to the case." *Evon v. Law Offices of Sidney Mickell*, 2010 WL 455476, at *2 n.1 (E.D. Cal. 2010); *see also In re State Street Bank & Trust Co. Fixed Income Funds Inv. Litig.*, 2009 WL 1026013, at *1 (S.D.N.Y.2009).

Section 4 (b) confirms that a party must produce known relevant documents even if they don't contain search terms. "The [] Rules obligate a party to produce known, relevant and reasonably accessible material that on its face is likely to be responsive to discovery requests."  *Waymo LLC v. Uber Techs., Inc.*, No. 3:17-CV-00939, 2017 WL 6501798, at *11 (N.D. Cal. Dec. 15, 2017). Proposing to blindly run search terms, and to not require the parties to produce known relevant documents is inconsistent with the Federal Rules.

October 19, 2021
Page Two

**Section 6(a), preservation period**: Plaintiffs request that Google's ESI preservation obligation extend back to January 1, 2014. This is the same date governing preservation in the related action brought by the Texas AG-led multistate action and it would be logical and efficient to use the same date here. Google argues for a narrower range on the grounds that the Texas AG action is primarily an antitrust action, not a privacy action. But the purpose of the action is not the point. If Google is already preserving documents in another case (regardless of purpose), Plaintiffs' proposed date range does not add to any pre-existing preservation burdens. Google is thus arguing, in effect, for the right to exclude known relevant documents dated in 2014 and 2015 from production here even though they are already being preserved.

**Section 6(b), data sources excluded from preservation**: The parties have pre-negotiated two categories of data sources that need not be preserved (even if they contain relevant ESI) because of expected undue burdens or cost (backup systems, or legacy systems that cannot be accessed). Google originally proposed to include event logs, but has agreed to remove that provision and instead separately negotiate a preservation plan for the logs. Plaintiffs now understand that Section 6(b) as currently worded reflects the parties' mutual understanding that event log preservation duties remain in place unless and until the parties negotiate a narrower preservation plan and/or the Court grants a protective order.

**Section 7, ESI disclosures**: Plaintiffs' proposed Section 7 should not be controversial. It codifies best practices and promotes transparency, and accords with the Court's ESI Guidelines. *See* N.D. Cal. ESI Guidelines, No. 1.02 ("The Court emphasizes the particular importance of cooperative *exchanges of information* at the earliest possible stage of discovery, including during the parties' Fed. R. Civ. P. 26(f) conference.") (emphasis supplied). Google's wish to keep Plaintiffs in the dark also virtually guarantees future disputes. *In re MacBook Keyboard Litig.*, No. 5:18-cv-02813-EJD-VKD, Order at 2, Dkt. No. 95 (N.D. Cal. Feb. 26, 2019) ("This dispute illustrates the critical need for parties to discuss the details of collection, review, and production of ESI early in the case.").

Google's objections to Section 7 have no merit because all six of these provisions are included in the Court's ESI Checklist, but with efficiency-enhancing clarifying language. This approach (duty to disclose with language clarifying the ESI Checklist) was adopted in *In re Apple Inc. Device Performance Litigation* with the help of a special discovery master, the Hon. Rebecca Westerfield (Ret.). *See* 5:18-MD-2827-EJD, ESI Protocol Nov. 16, 2018, Dkt. 240 (N.D. Cal.). The ESI Protocol, contrary to Google's assertion, was entered into the case at the outset, prior to Apple's production of documents other than documents already produced by Apple to regulators.

A description of custodians (7a) is covered by ESI Checklist I, ESI Guideline 2.02(a). A description of all systems that house relevant data (7b) is covered by ESI Checklist III. The parties' preservation methods and identification of document retention policies (7c,d) by disclosing "interdiction of any document destruction program" is covered by ESI Checklist I. Listing relevant ESI that Google may no longer have (7e), is covered by ESI Checklist I and ESI Guidelines 2.01(e).

October 19, 2021
Page Three

Finally, the disclosure of inaccessible data (7f) is covered by ESI Checklist I and ESI Guideline 2.01(e). Google's claims to the unreasonableness of Plaintiffs' proposals is undercut by the fact that they are all covered by this district's ESI Guidelines and ESI Checklist.

**Section 8, Search Methodologies**: Plaintiffs propose sensible language to govern the sequencing and timing of search term negotiations including the duty to provide "hit reports" and exemplars of irrelevant documents associated with proposed terms. Plaintiffs' proposal provides that the producing party proposes to use ESI Search Terms, it discloses which terms to intends to use, and who the relevant custodians should be. The parties then confer and the requesting party has the opportunity to propose additional terms or custodians. If any terms are disputed, hit counts are used to inform discussions of burdens or relevance and can help the parties reach compromise efficiently. Plaintiffs only ask for hit counts for the terms that are objected to by the producing party, not all terms. The caps of search terms and custodians are arbitrary, and in any event, are too small for the size and complexity of this case. Plaintiffs' proposal is consistent with protocols previously approved by courts in this District. *See In re Juul Labs, Inc., Marketing, Sales Practices, & Prods. Liab. Litig.*, Case No. 3:19-md-02913-WHO, Order re Discovery ¶ 6, Dkt. No. 323 (N.D. Cal. Dec. 17, 2019); *Apple Device Performance Litig.*, ESI Protocol ¶ VII.

Plaintiffs' proposed language appropriately addresses "the need for careful thought, quality control, testing, and cooperation with opposing counsel" necessary to successfully "design[] search terms or 'keywords' to be used to produce emails or other [ESI]." *See William A. Gross Constr. Assocs., Inc. v. Am. Mfrs. Mut. Ins. Co.*, 256 F.R.D. 134, 136 (S.D.N.Y. 2009); *accord, Finisar Corp. v. Nistica, Inc.*, No. 13-cv-03345-BLF (JSC), 2014 WL 12887160, at *1 (N.D. Cal. Dec. 12, 2014) ("The Court expects that if a party insists that a search term results in too many hits, the party will have run the search and will be able to provide the opposing party with the number of hits and specific examples of irrelevant documents captured by the search."); *see also Lawson v. Love's Travel Stops & Country Stores, Inc.*, No. 1:17-CV-1266, 2019 WL 7102450, at *5 (M.D. Pa. Dec. 23, 2019) ("the failure to engage in a collaborative search and sampling strategy can often yield discovery dysfunction.").

Google's objections to the search methodologies should be rejected because all of the disclosures requested by Plaintiffs are already in the Northern District of California's ESI Guidelines and ESI Checklist. For example, providing a list of custodial and noncustodial sources (iii) is covered by ESI Guidelines 2.01(e); ESI Checklist III. Moreover, hit reports (8iv, vii (a-c) are covered by ESI Guideline 2.02(c) and ESI Checklist V. Quality control methods, such as describing the nature and type of irrelevant documents hit upon (8(vii)(d) & viii)) is covered by ESI Checklist V. Plaintiffs do not, as Google contends, require a review of "all" such documents (8 ix). A general oral description during a collaborative phone call can suffice.

**Section 11(d), Privileged/Redacted Documents:** Section 11(d) allows the parties to resolve privilege disputes by disclosing information on the context of the communication so as to avoid Court intervention. Additionally, it states that a party may not redact a document for relevance,

October 19, 2021
Page Four

which is in accordance with Rule 34 and federal case law. *Kellman v. Whole Foods Market, Ca. Inc.,* No. 17-CV-06584-LB, 2021 WL 4476779, at *2 (N.D. Cal. Sept. 30, 2021) See also: *Perez v. Wells Fargo Bank, N.A.*, No. 17CV00454MMCEDL, 2019 WL 289831, at *1 (N.D. Cal. Jan. 8, 2019) ("relevancy redactions are ill advised").

***Appendix A***: Plaintiffs request the metadata field "Linked Items." Google employees use hyperlinks extensively in their correspondence, but Google isn't required to produce these documents. Producing the documents without the hyperlink items identified is akin to throwing the documents in the air, and producing them as they land, and, in no specific order, or worse, not producing the linked items at all. This is contrary to Rule 34, which requires a party produce documents as they are maintained as business records. Further, if Google is not able to provide a bates number for hyperlinked items, we request that Google provide hyperlinked documents which Plaintiffs reasonably request. Other requested metadata fields are extremely common. File Path shows how a custodian set up her inbox with folders, and organizational context. Finally, Plaintiffs contend the Google Office drive information is easily producible, and will assist Plaintiffs to understand who is a Google Docs author, and who had access to review and edit a document.

A more detailed agreed upon ESI Protocol will cause less, not more discovery disputes.

## II.   GOOGLE'S POSITION

An ESI protocol should be a mutually beneficial agreement to increase efficiency and avoid conflicts. While Plaintiffs try to pass their proposals off as sensible and commonplace, they are a radical departure from the norms of this Court. With zero justification, Plaintiffs try to replace Google's judgment about responding to discovery with laborious and expensive obligations that apply automatically (in a case with vastly asymmetrical discovery burdens). Plaintiffs propose more extreme versions of the ESI protocol from the related *Calhoun* action, (20-cv-05146 ("*Calhoun*"), ECF No. 96), seeking to further weaponize these requirements, without a single identified discovery deficiency or actual dispute so far. Before the pleadings have even been tested, Google has complied with its obligations, producing over 48,000 pages of documents Plaintiffs prioritized. Ironically, Plaintiffs responded to 20 of Google's first 25 RFPs (served on June 8) only by offering to confer and have produced ***nothing*** for those requests. The microscopic level of compelled pre-discovery oversight Plaintiffs demand is unjustifiable. Below Google addresses Plaintiffs' most egregious proposals.

### A.   Search Methodologies and Disclosures

The Court should adopt the black text in Section 8 which hews closely to Section 5 of this district's model ESI order. This requires conferring and permits input, with each side still managing its discovery in the first instance. Should disputes arise, this Court will have facts and context for the particular disagreement before it and the specifics of any burden argument (including hit counts if relevant to the Court's analysis).

4

October 19, 2021
Page Five

Plaintiffs claim that their proposed Sections 7 and 8(b) merely "codif[y] best practices and promote transparency." Not so. They automatically compel pre-conferring on essentially everything and violate the principle that, absent a demonstrated deficiency, parties answer discovery based on their own judgment. *See* The Sedona Principles (Second Edition): Best Practices Recommendations & Principles for Addressing Electronic Document Production, Principle 6 ("Responding parties are best situated to evaluate the procedures, methodologies, and technologies appropriate for preserving and producing their own [ESI]."); *In re Viagra (Sildenafil Citrate) Products Liability Litig.*, 2016 WL 7336411 (N.D. Cal. 2016) (responding party is "best situated to decide how to search for and produce ESI responsive to discovery requests."); *Uschold v. Carriage Services, Inc.*, 2019 WL 8298261, at *4 (N.D. Cal. 2019) ("Generally, 'discovery on discovery' is disfavored and a party seeking it "must show a specific deficiency in the other party's production"); *NuVasive, Inc. v. Alphatec Holdings, Inc.*, 2019 WL 4934477 (S.D. Cal. 2019) (declining to impose requestor's search terms or custodians); *Jensen v. BMW of North America, LLC*, 328 F.R.D. 557, 566 (S.D. Cal. 2019); *Freedman v. Weatherford Int'l Ltd.*, 2014 WL 4547039, at *2 (S.D.N.Y. Sept. 12, 2014) ("requests for such 'meta-discovery' should be closely scrutinized in light of the danger of extending the already costly and time-consuming discovery process ad infinitum."). *Inter alia*, in Section 8, Plaintiffs seek to force Google to:

- Provide detailed hit reports for each search Plaintiffs propose, ***without limits*** (iv, vii (a-c));
- Describe "the nature and type of ***irrelevant*** documents" and a ***"random sample" of responsive documents*** hitting ***every*** search term Plaintiffs demand, seemingly requiring a review of all such documents no matter how numerous (vii(d), viii);
- Produce a list of custodial ***and non-custodial*** sources and confer over every additional source Plaintiffs request (iii), then describe with particularity why each disputed data source is unlikely to have relevant ESI, with ***Google bearing the burden*** (ix);
- And ***the process is never finished***, as Plaintiffs can just demand more searches (xiii).

None of the cases cited by Plaintiffs actually adopted their extreme set of proposals and, in fact, Judge Corley in *Finisar Corp. v. Nistica, Inc.*, entered the Northern District's Model Patent Order. And while *Juul Labs* permitted the suggestion of search terms, it did not condone Plaintiffs' other extreme related proposals.

Plaintiffs' Section 7 also imposes invasive and unnecessary pre-disclosure of meta-discovery that parties rarely explore. Upon receiving RFPs, Google immediately has to:

- provide, for every potential custodian, a description of what they do (or did) for Google, their dates of employment and a description of all the devices and systems they used (a);
- describe all the systems housing any potentially relevant data, including for third parties (b)

October 19, 2021
Page Six

- locate and immediately provide a list of all related document retention policies and preservation steps, without any showing that there is a preservation issue (c-d);
- list relevant ESI that Google may no longer have (e); and
- describe the contents of ESI that is inaccessible and why it cannot be retrieved (f).

Again, this is mandatory, unjustified, and burdensome discovery-on-discovery, which will undoubtedly halt discovery to sort through Plaintiffs' convoluted requirements.

Plaintiffs identify no Court accepting their proposals *in toto* and they go far beyond your Honor's normal practices. (*E.g.*, *Jigger, et al. v. Hirenami, Inc.*, 20-cv-00862, ECF No. 23; *Simpson Strong-Tie Co. v. Mitek Inc.*, 20-cv-06957, ECF No. 56; *Handloser v. HCL Tech. LTD., et al.*, 19-cv-1242, ECF No. 60.) While Plaintiffs point to *In re Apple Inc. Device Performance Litigation*, those disclosures were ordered well into the case, after Plaintiffs showed discovery had stalled, and occurred once, rather than with every set of requests. Indeed, much more reasonable ESI protocols are regularly entered. *E.g.*, *In re: Google Location History Litig.*, 18-cv-05062, ECF No. 101.

Plaintiffs' provisions even go beyond the ESI protocol in *Calhoun* (ECF No. 96, Section 6(b)(i)), where less-onerous requirements have engendered a protracted, series of disputes that have lasted the better half of a year. Google's *Calhoun* counsel have spent well over a hundred hours on conferring, related correspondence, and briefing regarding search terms, data sources, and custodians. In spite (or perhaps because) of the ESI protocol, many of these disputes have gone to the Court, which has been forced to issue numerous discovery decisions. (*See, e.g.*, ECF Nos. 192, 241, and 287.) Far from promoting efficiency, certain provisions in the *Calhoun* ESI protocol have **caused** a series of meta-discovery disputes.

Plaintiffs also claim they are merely following the Court's Rule 26(f) checklist for conferring, but that document only suggests possible topics and expressly states that the usefulness of particular topics and the appropriate timing will vary. The Parties concluded their two-session 26(f) conference and discussion of the checklist **in May**. Plaintiffs cannot now force Google to reopen or reverse that process.

Plaintiffs' Sections 7 and 8 are a manifest overreach. The Court should order only the black text in Section 8, or, in the alternative, order Google's prior Section 8 compromise offer in the red text.

## B.    Preservation Dates

March 26, 2016, a year before the longest statute of limitations at issue, is a reasonable cut off for ESI. Plaintiffs' insistence on January 1, 2014 is facially excessive and unsubstantiated, particularly when balanced against relevance and proportionality concerns. *Hall v. Marriott International, Inc.*, 2021 WL 1906464 (S.D.Cal. 2021). Plaintiffs' argument that the Texas

October 19, 2021
Page Seven

Attorney General used this date for an unrelated ***antitrust investigation***, with a very different scope for preservation, is irrelevant.[1]

### C.   Other Disputed Provisions

Given the irremediable flaws with Plaintiffs' Section 8, their Section 4 is unnecessary surplusage. Section 11(e) pre-imposes requirements exceeding the Federal Rules, again without any pending dispute or context to evaluate whether it is needed.

### D.   Appendix A

The black metadata specification in Appendix A largely matches *Calhoun*.

Plaintiffs' demand for "Linked Items" is the subject of a separate, ongoing meet and confer, and is not properly before this Court.  Google addresses it briefly, however, due to the impossible burden plaintiffs' proposal would create (Google will submit declarations, if needed).  Documents hyperlinked within a responsive document are not attachments.  *See, e.g., Nichols v. Noom Inc.*, 2021 WL 948646, at *4 (S.D.N.Y. Mar. 10, 2021) ("[T]he Court does not agree that a hyperlinked document is an attachment . . . [as] the hyperlinked document/information . . . may not be necessary."); *Shenwick v. Twitter*, 16-cv-05314, ECF No. 192.  Google has no automated means to collect a linked document, which, unlike an attachment, is not maintained within the file and could be stored anywhere. Moreover, this largely overlapping group of lawyers already lost this issue in *Calhoun*.  Rejecting Plaintiffs' demand for just one set of hyperlinked documents, Judge Van Keulen would not "order a mass production of hyperlinks, because it would be beyond the scope and not proportional to the needs of the cases." (*Calhoun*, ECF Nos. 206, 220-1 (allowing 40 hyperlinks from over 900 requested).)  Plaintiffs claim they need this field because Google employees "use hyperlinks extensively" – ignoring that responsive hyperlinks would be separately collected by targeted and custodial searches.  A metadata specification is simply no place to sneak in this unworkable requirement.

Appendix A also contains numerous other needless and burdensome fields including several related to Google Drive, that are irrelevant and/or that Google cannot reasonably provide in an automated manner.

---

[1] As to log preservation, Google has been preserving an impossibly voluminous and disproportionate set of logs.  Google will move for a protective order if Plaintiffs do not agree to its recent proposal for alleviating that unsustainable burden.

October 19, 2021
Page Eight

## III.   NECESSITY OF A HEARING

### A.   Plaintiffs' Position

Plaintiffs request an oral hearing if the Court would find it to be useful.

### B.   Google's Position

Given the importance of the issues at stake and the burden that Plaintiffs' ESI protocol would create, Google respectfully requests a hearing if the Court is considering adopting any of Plaintiffs' proposed blue text.  Due to space limitations Google has not been able to adequately address every issue with Plaintiffs' numerous proposals, and Google respectfully requests the opportunity to be fully heard.

## IV.   COMPLIANCE WITH MEET AND CONFER REQUIREMENT

In compliance with the Court's meet and confer requirements, on October 8, 2021, the Parties held their lead counsel meet and confer. On Plaintiffs' side Elizabeth C. Pritzker, Davide A. Straite, and Karin Swope attended, among others. On Google's side Jeff Gutkin, Kyle Wong, and Colin Scott attended.  Michael Rhodes was in trial at the time of the conference and could not attend.

Dated: October 19, 2021                  COOLEY LLP
                                         MICHAEL G. RHODES
                                         JEFFREY M. GUTKIN
                                         ROBBY L.R. SALDAÑA
                                         KELSEY R. SPECTOR
                                         COLIN S. SCOTT


                                         By: */s/ Jeffrey M. Gutkin*
                                              Jeffrey M. Gutkin

                                         Attorneys for Defendant
                                         GOOGLE LLC

October 19, 2021
Page Nine

Dated: October 19, 2021

PRITZKER LEVINE LLP

By: */s/ Elizabeth C. Pritzker*
ELIZABETH C. PRITZKER (SBN 146267)
1900 Powell Street, Suite 450
Emeryville, CA 94608
Tel.: (415) 692-0772
Fax: (415) 366-6110
ecp@pritzkerlevine.com


Dated: October 19, 2021

DiCELLO LEVITT GUTZLER LLC

By: */s/ David A. Straite*
DAVID A. STRAITE (admitted pro hac vice)
One Grand Central Place
60 East 42nd Street, Suite 2400
New York, NY 10165
Tel.: (646) 933-1000
dstraite@dicellolevitt.com


Dated: October 19, 2021

BLEICHMAR FONTI & AULD LLP

By: */s/ Anne K. Davis*
ANNE K. DAVIS (SBN 267909)
555 12th Street, Suite 1600
Oakland, CA 94607
Tel.: (415) 445-4003
Fax: (415) 445-4020
adavis@bfalaw.com

October 19, 2021
Page Ten

Dated: October 19, 2021

COTCHETT, PITRE & McCARTHY LLP

By: */s/ Karin B. Swope*
KARIN B. SWOPE (admitted pro hac vice)
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Tel.: (650) 697-6000
Fax: (650) 697-0577
kswope@cpmlegal.com

*Counsel for Plaintiffs and the Proposed Class*

October 19, 2021
Page Eleven

## ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1(i)(3)

I, Jeffrey M. Gutkin, attest that concurrence in the filing of this document has been obtained from the other signatories. I declare under penalty of perjury that the foregoing is true and correct.

Executed this 19th day of October, 2021, at Oakland, California.

*/s/ Jeffrey M. Gutkin*

Jeffrey M. Gutkin

# EXHIBIT 1

**PRITZKER LEVINE LLP**
Elizabeth C. Pritzker (Cal. Bar No. 146267)
Bethany Caracuzzo (Cal. Bar No. 190687)
Jonathan K. Levine (Cal Bar No. 220289)
Caroline C. Corbitt (Cal Bar No. 305492)
1900 Powell Street, Suite 450
Emeryville, CA 94608
Tel.: (415) 692-0772
Fax: (415) 366-6110
*ecp@pritzkerlevine.com*
*jkl@pritzkerlevine.com*
*bc@pritzkerlevine.com*
*ccc@pritzkerlevine.com*

*Interim Class Counsel for Plaintiffs*

*Additional counsel listed on signature page*

**COOLEY LLP**
MICHAEL G. RHODES (SBN 116127)
(rhodesmg@cooley.com)
JEFFREY M. GUTKIN (SBN 216083)
(jgutkin@cooley.com)
KELSEY R. SPECTOR (SBN 321488)
(kspector@cooley.com)
COLIN S. SCOTT (SBN 318555)
(cscott@cooley.com)
101 California Street, 5th Floor
San Francisco, California  94111-5800
Telephone:     (415) 693 2000
Facsimile:       (415) 693 2222

*Attorneys for Defendant*
*GOOGLE LLC*

### UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF CALIFORNIA
### SAN JOSE DIVISION

| | |
|---|---|
| *In re Google RTB Consumer Privacy Litigation* | Case No. 5:21-cv-02155-LHK-VKD |
| | **[PROPOSED] STIPULATED ORDER RE: DISCOVERY OF ELECTRONICALLY STORED INFORMATION** |
| This Document Relates To: | **Referral**: Hon. Virginia DeMarchi |
| All Actions | |

Text is **BLACK** is agreed by both sides.

Underlined text in **RED** is a proposed addition by Google (apart from Section 8(b)).

Underlined text in **BLUE** is a proposed addition by Plaintiffs.

1.     **PURPOSE**

   This Order will govern discovery of electronically stored information ("ESI") in this case as a supplement to the Federal Rules of Civil Procedure, this Court's Guidelines for the Discovery of Electronically Stored Information, and any other applicable orders and rules. As used in this Order, the term "Party" refers to both Google, Inc. ("Google") and the Plaintiffs in this consolidated case (collectively "Parties").

**2.    COOPERATION**

This Stipulated Order will govern the conduct of discovery of hard copy and electronically stored information ("ESI") as a supplement to the Federal Rules of Civil Procedure, this Court's Guidelines for the Discovery of Electronically Stored Information, and any other applicable orders and rules.

The parties are aware of the importance the Court places on cooperation and commit to cooperate in good faith throughout the matter consistent with this Court's Guidelines for the Discovery of ESI.

**3.    PROPORTIONALITY**

Parties are expected to use reasonable, good faith and proportional efforts to preserve, collect, search, review and produce relevant information consistent with Fed. R. Civ. P. 26(b)(1). This includes cooperation in identifying an appropriate scope of discovery, including number of custodians, identification of relevant subject matter, time periods for discovery and other parameters to guide discovery, including preservation and production, as contemplated by Sections 5(c) and 6(a) of this Order.

**4.    GENERAL PROVISIONS**

(a)    The Parties recognize that even though a document contains one or more of the search terms identified in accordance with the procedures listed below, such document may not be responsive to any document request. In such cases, the Responding Party is not required to produce such documents. However, if a document contains one or more of the search terms in accordance with the procedures listed below, and part but not all of the document is responsive to any document, the entire document will be produced and will not be redacted for relevance or responsiveness.

(b)    The Parties recognize that they are obligated to produce relevant and responsive, non-privileged documents of which they are aware regardless of whether such documents contain any of the Agreed Upon or additional search terms.

**[PROPOSED] STIPULATED ORDER RE DISCOVERY OF ESI**
**CASE NO. 5:21-CV-02155-LHK**

1  **5.    LIAISON**

2       a)    The parties have identified liaisons to each other who are and will be knowledgeable

3  about and responsible for discussing their respective ESI. Each e-discovery liaison will be, or have

4  access to those who are, knowledgeable about the technical aspects of e-discovery, including the

5  location, nature, accessibility, format, collection, search methodologies, and production of ESI in

6  this matter. The parties will rely on the liaisons, as needed, to confer about ESI and to help resolve

7  disputes without court intervention.

8       b)    Google appoints Robby Saldaña, Esq. as its e-discovery liaison.

9       c)    Plaintiffs appoint Anne Davis, Esq. as their e-discovery liaison.

10  **6.    PRESERVATION**

11       The parties have discussed their preservation obligations and needs and agree that

12  preservation of potentially relevant ESI will be reasonable and proportionate. To reduce the costs

13  and burdens of preservation and to ensure proper ESI is preserved, the parties agree that:

14       a)    Only ESI created or received between [January 1, 2014] [March 26, 2016] and the

15  present will be preserved. The parties reserve the right to meet and confer in good faith if a party

16  believes that certain relevant documents may exist outside of the date range;

17       b)    These data sources are not reasonably accessible because of undue burden or cost

18  pursuant to Fed. R. Civ. P. 26(b)(2)(B) and ESI from these sources will be preserved but not

19  searched, reviewed, or produced nothing in this paragraph modifies a producing party's obligation

20  to preserve or produce relevant ESI under Fed. R. Civ. P. 26:

21            1.  backup systems and/or tapes used for disaster recovery; and

22            2.  systems no longer in use that cannot be accessed;

23       c)    Within 14 days of the court entering the ESI Protocol, the parties agree to meet and

24  confer regarding additional types or sources of ESI that need not be preserved, searched or

25  collected;

26       d)    In addition to the agreements above, the parties agree to notify and meet and confer

27  regarding other data that (a) could contain relevant information but (b) under the proportionality

28  factors, should not be preserved.

**7.    ESI DISCLOSURES**

Within 14 days of the service of any Responses and Objections to Request for Production of Documents, the Parties shall exchange in writing the information listed in items (a) through (f) below. The Parties should base their respective responses on their knowledge and understanding as of the date of the response, and each Party agrees to amend or supplement its responses in a timely manner, throughout the course of discovery, if it learns that in some material respect its response is incomplete or incorrect:

   a.   A list of custodians (including current employees, former employees and any other individuals) likely to have relevant information, including job title and a brief description of job responsibilities for each individual, dates of employment, and a general description of the devices and/or storage systems on which the custodian's ESI is located;

   b.   A general description of any systems for electronic communications and ESI storage, including custodial, non-custodial, or third party sources, that likely house potentially relevant data;

   c.   A general description or, at the Party's option, a copy of the Party's operative document retention policies, throughout the relevant time period, pertaining to any electronic communications and or/ESI storage system(s) that likely house potentially relevant data;

   d.   A description of the steps the Party has taken to preserve likely relevant ESI;

   e.   A description of any potentially relevant ESI that the Party is aware of having been lost or destroyed, and description of the circumstances of such loss or destruction;

   f.   A description of any likely relevant ESI that the Party contends is inaccessible or only of limited accessibility and, hence, not producible by that Party without undue burden and/or expense, including:

      (i)   The general nature of such information (e.g., correspondence, presentation, report, financial planning, budget, etc.);

4

**[PROPOSED] STIPULATED ORDER RE
DISCOVERY OF ESI**
CASE No. 5:21-CV-02155-LHK

1        (ii)    The reason(s) why the information is considered inaccessible or bears only

2            limited accessibility.

3    **8.    SEARCH METHODOLOGIES AND PROTOCOL**

4        a)    The parties agree that before completing the collection and review of custodial

5    documents in response to a Fed. R. Civ. P. 34 request, they will meet and confer about methods to

6    search ESI in order to identify ESI that is subject to production in discovery and filter out ESI that

7    is not subject to discovery.  Agreement on a search methodology does not relieve a Party of its

8    obligations under the Federal Rules of Civil Procedure to conduct a reasonable search and produce

9    all relevant and responsive documents of which it is aware.

10        b)    **Search Methodology for Custodial** and Non-Custodial **Sources of ESI:**  The

11    parties recognize that a variety of search tools and methodologies, including but not limited to

12    technology assisted review ("TAR") tools, exist.  A party using TAR to exclude documents from

13    review for production will inform the other party.  If requested, the parties will meet and confer to

14    discuss the process and validation steps.

15        As used above, the term "meet and confer" shall encompass, at a minimum, the following

16    with regard to search term and custodial negotiations and shall provide a model for any other

17    negotiations regarding search processes:

18    |Google's Proposal|:

19        i.    Within 30 days of the service of any response for any Fed. R. Civ. P. 34 request for

20            which the responding party agrees to produce custodial documents, the responding

21            party shall propose custodians and initial search terms.  The responding party will

22            use its reasonable judgment about what custodians and search terms are appropriate

23            to locate the documents to be produced in response to the requesting party's Rule

24            34 requests.  The requesting party shall respond to the producing party's proposed

25            custodians and search terms per the parameters set forth in subsections (ii) and (iii)

26            below within 14 days, and the parties shall negotiate differences in good faith.  The

27            parties will apply this provision reasonably and in good faith (e.g., a party will not

28            separately serve multiple sets of Rule 34 requests, nor serve multiple requests

**Commented [A1]:** This red text is the compromise proposal Google previously offered.  Google is not requesting the Court to adopt this red text in Section 8(b), except in the alternative.  Google requests that only the black text in 8(b) be adopted.

1                covering the same subject matter, for the purpose of padding the number of

2                custodians and/or search terms).

3       ii.    If proportionate to the needs of the case, as contemplated by Fed. R. Civ. P. 26(b)(1),

4                the requesting party may identify up to five (5) additional custodians beyond those

5                proposed by the responding party, most likely to have discoverable information

6                responsive to the relevant set of requests in their possession, custody or control.[1]

7                The parties may jointly agree to modify this limit without the Court's leave.  In

8                accordance with Magistrate Judge DeMarchi's Civil Standing Order, unless the

9                parties agree otherwise, the Court shall consider contested requests for additional

10              custodians, upon a showing of substantial need based on the relevance of the terms

11              and the burden imposed on the producing party.  Regardless of the foregoing, all

12              named Plaintiffs shall be custodians for the production of relevant documents.

13      iii.   The requesting party may propose a list of no more than ten (10) additional

14              individual terms or term combinations with a conjunctive connector (e.g., "house

15              and (sale or sold)" or "house w/10 of sale") that are each no more than five terms in

16              length to be used in this action (irrespective of any other terms the producing party

17              may employ to locate documents for potential use in the action).  The search terms

18              shall be tailored to particular issues relevant to the claims and defenses at issue in

19              this action.  Indiscriminate terms, such as the producing party's company name or

20              its product name, are inappropriate unless combined with narrowing search criteria

21              that sufficiently reduce the risk of an unduly burdensome document review process.

22              The producing party will utilize the requesting party's additional terms absent the

23              imposition of a substantial undue burden.  The parties may jointly agree to modify

24              this limit without the Court's leave.  In accordance with Magistrate Judge

25              DeMarchi's Civil Standing Order, unless the parties agree otherwise, the Court shall

26              consider contested requests for additional search terms, upon a substantial showing

27

28    [1] This does not impose any burden on the producing party to separately identify individuals who could be potential custodians beyond the requirements of the Federal Rules of Civil Procedure.

[PROPOSED] STIPULATED ORDER RE
DISCOVERY OF ESI
CASE NO. 5:21-CV-02155-LHK

1          of need based on the relevance of the terms and the burden imposed on the producing

2          party.

3   [Plaintiffs' Proposal]:

4       i.    Within 14 days of the service of a Response or Objection to a Request for Production

5          of documents, the parties shall meet and confer about methods to search ESI

6          (including appropriate custodial and non-custodial sources to be searched) in order

7          to identify ESI that is subject to production in discovery and filter out ESI that is not

8          subject to discovery. The parties will aim to establish search methodologies with the

9          goal of limiting the scope of review for production, minimizing the need for motion

10         practice, and facilitating production in accordance with the deadlines set by the

11         Court or agreed upon by the parties.

12      ii.   If a producing Party intends to use search terms to expand or limit the number of

13         documents collected, the producing Party shall first confer in good faith with the

14         requesting Party to determine the mutually agreeable search terms before using any

15         search terms.

16     iii.   Prior to implementing search terms, the producing Party must provide a list of

17         proposed search terms, custodial sources and non-custodial sources to the requesting

18         Party and within 14 days the Parties will meet and confer regarding any additional

19         terms or sources proposed by the requesting Party.

20     iv.   If the producing Party contends that terms proposed by the requesting Party would

21         recall an excessive number of documents, the producing Party will provide a search

22         term hit list or hit report after global de-duplication, prior to the meet-and-confer

23         deadline above. The list or report should include the number of documents that hit

24         on each term, the number of unique documents that hit on each term (documents

25         that hit on a particular term and no other term on the list), and the total number of

26         documents that would be returned by using the proposed search term list (including

27         families).

28

**[PROPOSED] STIPULATED ORDER RE DISCOVERY OF ESI**
**CASE NO. 5:21-CV-02155-LHK**

v. Additional Terms or Sources: If the Requesting Party objects to the sufficiency of the Responding Party's proposed search terms or ESI sources, the Requesting Party may propose modifications to the Responding Party's terms or sources, or a list of additional terms or sources.

vi. Application of Agreed Terms: Each Responding Party will proceed with the application of: (i) its own proposed search terms and (ii) the search terms from the Requesting Party's proposed search term list to which the Responding Party does not object ("Agreed Terms"). The results of these searches will then be reviewed for responsiveness and privilege, and for necessary redactions.

vii. Disputed Search Terms or Sources: To the extent that a Responding Party believes that any of the remaining search terms (the "Disputed Terms") or sources ("Disputed Sources") proposed by a Requesting Party are unreasonably overbroad and/or will result in the identification of disproportionate numbers of irrelevant documents, the Responding Party will produce a hit report within 14 days of receipt of the requested party's proposed search terms that contains the following information:

   a. the aggregate hits for each of the Disputed Terms (i.e. the number of documents returned by a search term), including on a "by custodian" level;

   b. the number of hits for each term including family members;

   c. the number of unique hits for each of the Disputed Terms (the number of documents which contain the particular search term, but no other), including on a "by custodian" level; and

   d. a general description of the nature and type of irrelevant documents that the search term is returning.

viii. With respect to any search term for which the Responding Party believes there exists a modification that will reduce the number of irrelevant documents returned by the search term, the Responding Party will meet and confer with the Requesting Party to discuss in good faith any such modification. For any terms that a Responding

8

[PROPOSED] STIPULATED ORDER RE
DISCOVERY OF ESI
CASE NO. 5:21-CV-02155-LHK

1      Party believes are burdensome, overly broad, and/or objectionable and for which

2      there does not appear to be any modification that would resolve such issues, the

3      Responding Party will meet and confer with the Requesting Party to discuss in good

4      faith its objections to such search terms. As part of that process, the Responding

5      Party will, upon request, provide the Requesting Party with the quantitative

6      information discussed above and a random sample of non-privileged responsive

7      documents returned by the disputed search terms.

8    ix.   With respect to any Disputed Source, the Responding Party shall have the burden to

9       articulate with particularity why any Disputed Source is not likely to have relevant

10      ESI or alternatively would be unduly burdensome to search.

11    x.   If the responding party asserts that syntax or other technical issues prevent the

12       application of any of the proposed terms, the parties shall, within five business days,

13      make technical experts available to confer and resolve the syntax or technical issues.

14      The responding party still must thereafter comply with the requirement in this

15      subsection to produce hit reports within 14 days of receipt of the requesting party's

16      proposed terms (as revised).

17    xi.   If the responding party claims facial irrelevance with respect to any proposed term,

18       such objection shall not excuse the obligation to comply with other provisions of

19      this protocol, within the time required.  Instead, the responding party may raise the

20      objection during the meet-and-confer process and as outlined below.

21    xii.   The parties are not required to reduce disputes to writing as a precondition to

22       conferring regarding search terms or custodians, as required by this Order, by the

23      Federal Rules of Civil Procedure, by the Northern District of California's Civil

24      Local Rules, or for any other reason.

25    xiii.   Additional Terms for Good Cause. Once a search term list is finalized (either though

26       agreement of the parties or Order of the Magistrate Judge) and all iterative searches

27      for a custodian are complete, the Requesting Party may propose additional search

28      terms for good cause.

**[PROPOSED] STIPULATED ORDER RE**
**DISCOVERY OF ESI**
CASE NO. 5:21-CV-02155-LHK

xiv.   Presentation to the Court:  If, after engaging in the process described above, the Parties cannot reach agreement about search terms or other aspects of this Search Protocol, the Parties agree to submit a joint discovery letter to the Court explaining their respective positions on areas of disagreement.

c)   Each party will use its best efforts to filter out common system files and application executable files by using a commercially reasonable hash identification process. Hash values that may be filtered out during this process are located in the National Software Reference Library ("NSRL") NIST hash set list. Additional culling of file types based on file header information may include: Application Package File, Batch Files, Binary Disc Image, C++ File Formats, Configuration File, Compiled Dynamic Link Library, Compiled Executable Files, Hypertext Cascading Stylesheet, Macintosh Resource Fork Files, Package Manager Files, Program Installers, Python Script Files, Shell Script Files, System or Temporary Files, Thumbnail Cache Files, Troff Files, TrueType Font Files, Windows Cabinet File, Windows Command Files, Windows File Shortcut, Windows Help Files, Windows Metafiles and Enhanced Metafiles, Windows Spool Files, Windows System File.

d)   **De-duplication**.   The Parties will make reasonable efforts to de-duplicate ESI documents globally through MD5 Hash or SourceHash and enter all unique names in the DE-DUPED CUSTODIAN metadata field prior to production. The Parties will meet and confer about whether additional methods of de-duplication across various sets of documents will reduce both Parties' burden to review and produce data. Notwithstanding the foregoing, attachments to emails shall not be eliminated from the parent email because they are duplicative of a document or email attachment elsewhere in the production.

e)   **Email Threading.**   A party may de-duplicate responsive ESI across Custodians through MD5 hash or SourceHash. Emails in an email thread that are collected and de-duplicated shall be produced individually as separate documents. The parties agree that email threading may be employed for production of email threads with redactions. The parties retain the right to request production of earlier-in-thread versions of any last-in-thread, redacted documents that are produced.

[PROPOSED] STIPULATED ORDER RE
DISCOVERY OF ESI
CASE NO. 5:21-CV-02155-LHK

**9.     PRODUCTION FORMATS**

a)      Appendix A sets forth technical specifications that the parties propose to govern the form of production of documents in this litigation, absent agreement by the parties or order by the Court.

b)      Among other things, the proposed technical specifications incorporate the directive of Fed. R. Civ. P. 34(b)(2)(E)(iii) and provide that a party need not produce ESI in more than one form, unless otherwise agreed to in limited circumstances (as contemplated in the technical specifications).

c)      The parties agree to produce Documents in file formats as set forth in Appendix A. If particular Documents warrant a different format, the parties will cooperate to arrange for the mutually acceptable production of such Documents. The parties agree not to degrade the searchability of Documents as part of the Document production process. The parties agree to meet and confer in good faith to address any issues that may arise in this regard, and to seek judicial intervention only if their efforts to resolve the issues on an informal basis are unsuccessful.

d)      The parties also recognize that certain information to be produced in discovery may reside in proprietary systems and formats that may warrant production in an alternative format or require additional metadata or database fields not set forth in Appendix A. To the extent this possibility eventuates, the parties will meet and confer to reach agreement about a form of production that produces the information as kept in the usual course of business and will seek Court intervention only if necessary.

e)      Deduplication of ESI is expected and the parties have and will continue to meet and confer in good faith regarding the terms and conditions of deduplication; however, in any event, deduplication will only apply to exact duplicates (as determined by matching a document or document family's MD5 or SHA-1 hash values) in a given production, and is subject to the parties' good faith agreement to provide the requesting party with information about other custodians who possessed any specific ESI that would be available from that production but for the deduplication. This information must be provided in the "DE-DUPED CUSTODIANS" metadata field as particularized in Appendix A. The deduplication of email must not break apart families, and the

11

1    full email header including the blind copy field (bcc) must be included when generating hash

2    values.

3          f)      A party may de-duplicate responsive ESI across Custodians through MD5 hash or

4    SourceHash. The parties retain the right to make reasonable requests for production of earlier-in-

5    thread versions of any last-in-thread, redacted documents that are produced. A party may also de-

6    duplicate email threads and attachments as follows: In an email thread, only the most evolved

7    responsive email in a thread will be produced. Where an earlier-in-thread email has a responsive

8    attachment not contained within the most evolved responsive email, the most evolved earlier-in-

9    thread email containing the attachment will also be produced along with its attachment.

10   **10.    PHASING**

11         When a party propounds discovery requests pursuant to Fed. R. Civ. P. 34, the parties agree

12   to meet and confer regarding the phasing of production of ESI, if appropriate, by prioritizing

13   selected sources and/or custodians.

14   **11.    DOCUMENTS PROTECTED FROM DISCOVERY / PRIVILEGE LOGS**

15         (a)     Communications involving outside counsel and Designated House Counsel, as

16   defined by the Stipulated Protective Order in this matter (ECF No. 59), that post-date the filing of

17   the complaint need not be placed on a privilege log. Communications may be identified on a

18   privilege log by category, rather than individually, if appropriate.

19         (b)     Nothing in this Agreement shall be interpreted to require disclosure of irrelevant

20   information or relevant information protected by the attorney-client privilege, work-product

21   doctrine, or any other applicable privilege or immunity; provided, however, that no redactions shall

22   be made based on the basis of relevance as a matter of course except as outlined in Section 11 of

23   the Appendix. The parties do not waive any objections to the production, discoverability,

24   admissibility, or confidentiality of documents and ESI.

25         (c)     Where a document is withheld from production entirely or in part by redaction

26   because of attorney client privilege or work product, the producing Party will produce a privilege

27   log in an Excel file allowing text searching and organization of data. The privilege log must identify

28   the date, author, and recipient(s) (where such information is electronically extractable from the

12

1  relevant document), as well as the production number of each redacted document or a privilege log

2  entry number for each withheld document, and state the basis for withholding or redacting the

3  document. A producing Party will attempt to produce a separate privilege log for each production

4  within 60 days after the production of documents for which a privilege is asserted, where reasonably

5  possible.

6       (d)   Upon reasonable request, the Producing Party agrees to provide additional

7  information supporting the claim of privilege if it is not clear from the face of the redacted

8  document. A party may not redact any document based upon any objection related to the relevance

9  or responsiveness of a document.

10  **12.**    **MODIFICATION**

11       This Stipulated Order may be modified by a Stipulated Order of the parties or by the Court

12  for good cause shown. Any such modified Stipulated Order will be titled sequentially as follows,

13  "First Modified Stipulated Order re: Discovery of Electronically Stored Information for Standard

14  Litigation," and each modified Stipulated Order will supersede the previous Stipulated Order.

15  **IT IS SO STIPULATED, THROUGH COUNSEL OF RECORD.**

16

17    Dated: October ___, 2021

18

19  **PRITZKER LEVINE LLP**           **COOLEY LLP**

20  By:   /s/ *draft*              By:   /s/ *draft*
   Elizabeth C. Pritzker (Cal. Bar. No. 146267)    MICHAEL G. RHODES (SBN 116127)

21  Johnathan K. Levine (Cal. Bar. No. 220289)    (rhodesmg@cooley.com)
   Caroline C. Corbitt (Cal. Bar. No. 305492)     JEFFREY M. GUTKIN (SBN 216083)

22  1900 Powell Street, Suite 450            (jgutkin@cooley.com)
   Emeryville, CA 4608               KELSEY R. SPECTOR (SBN 321488)

23  Tel.: (415) 692-0772                (kspector@cooley.com)
   Fax: (415) 366-6110               COLIN S. SCOTT (SBN 318555)

24  ecp@pritzkerlevine.com            (cscott@cooley.com)
   jkl@pritzkerlevine.com            101 California Street, 5th Floor

25  ccc@pritzkerlevine.com           San Francisco, CA 94111-5800
                            Tel: (415) 693-2000

26  **BLEICHMAR FONTI & AULD LLP**     Fax: (415) 693-2222

27  By:   /s/ *draft*
   Lesley Weaver (Cal. Bar No.191305)     *Counsel for Defendant GOOGLE LLC*

28  Matthew Melamed (Cal. Bar No. 260272)
   Anne K. Davis (Cal. Bar No. 267909)

13              **[PROPOSED] STIPULATED ORDER RE**
                       **DISCOVERY OF ESI**
               **CASE NO. 5:21-CV-02155-LHK**

1
Angelica M. Ornelas (Cal. Bar No. 285929)
Joshua D. Samra (Cal. Bar No. 313050)
2
555 12th Street, Suite 1600
Oakland, CA 94607
3
Tel.: (415) 445-4003
Fax: (415) 445-4020
4
lweaver@bfalaw.com
mmelamed@bfalaw.com
5
adavis@bfalaw.com
aornelas@bfalaw.com
6
jsamra@bfalaw.com

7
**SIMMONS HANLY CONROY LLC**

8
By:  ___/s/_ *draft*_____
Jason 'Jay' Barnes (admitted *pro hac vice*)
9
An Truong (admitted *pro hac vice*)
Eric Johnson (*pro hac vice* to be sought)
10
112 Madison Avenue, 7th Floor
New York, NY 10016
11
Tel.: (212) 784-6400
Fax: (212) 213-5949
12
mbreit@simmonsfirm.com
jaybarnes@simmonsfirm.com
13
atruong@simmonsfirm.com
ejohnson@simmonsfirm.com
14

15
**DICELLO LEVITT GUTZLER LLC**

16
By:  ___/s/_ *draft*_____
David A. Straite (admitted *pro hac vice*)
17
One Grand Central Place
60 E. 42nd Street, Suite 2400
18
New York, NY 10165
Tel.: (646) 993-1000
19
*dstraite@dicellolevitt.com*

20
Amy E. Keller (admitted *pro hac vice*)
James A. Ulwick (admitted *pro hac vice*)
21
Ten North Dearborn Street
Sixth Floor
22
Chicago, IL 60602
Tel.: (312) 214-7900
23
*akeller@dicellolevitt.com*
*julwick@dicellolevitt.com*
24

25
**BOTTINI & BOTTINI, INC.**

26
By:  ___/s/ *Francis A. Bottini, Jr.*_____
Francis A. Bottini, Jr. (SBN 175783)
27
Albert Y. Chang (SBN 296065)
Anne Beste (SBN 326881)
28
Yury A. Kolesnikov (SBN 271173)

14

[PROPOSED] STIPULATED ORDER RE
DISCOVERY OF ESI
CASE NO. 5:21-CV-02155-LHK

1  Nicholaus Woltering (SBN 337193)
2  7817 Ivanhoe Avenue, Suite 102
   La Jolla, CA  92037
3  Telephone:  (858) 914-2001
   Facsimile:   (858) 914-2002
4  fbottini@bottinilaw.com
   achang@bottinilaw.com
5  abeste@bottinilaw.com
   ykolesnikov@bottinilaw.com
6  nwoltering@bottinilaw.com

7

**COTCHETT, PITRE & McCARTHY LLP**

8

By: *//s// Nanci E. Nishimura*
9  Nanci E. Nishimura (Cal. Bar No. 152621)
   Brian Danitz (Cal. Bar. No. 247403)
10 Karin B. Swope (admitted *pro hac vice*)
   Noorjahan Rahman (Cal. Bar No. 330572)
11 840 Malcolm Road, Suite 200
   Burlingame, CA 94010
12 Tel.: (650) 697-6000
   Fax: (650) 697-0577
13 *nnishimura@cpmlegal.com*
   *bdanitz@cpmlegal.com*
14 *kswope@cpmlegal.com*
   *nrahman@cpmlegal.com*

15

16

17

18

19

20

21

22

23

24

25

26

27

28

15

[PROPOSED] STIPULATED ORDER RE
DISCOVERY OF ESI
Case No. 5:21-cv-02155-LHK

1

**FILER ATTESTATION**

2          I, _____, attest that concurrence in the filing of this document has

3   been obtained from the other signatories.  Executed on        , 2021, in _____, California.

4

5                                                        _/s/_____

6                                                        [Name]

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

16                              **[PROPOSED] STIPULATED ORDER RE**
                                **DISCOVERY OF ESI**
                                **CASE NO. 5:21-CV-02155-LHK**

# APPENDIX A

## APPENDIX A
## PRODUCTION FORMAT AND METADATA

1. **Production Components.** Productions shall include, single page TIFFs, Text Files, an ASCII delimited metadata file (.dat format) and an image load file (.opt format as specified in paragraph 2 below) that can be loaded into commercially acceptable production software (e.g., Relativity).

2. **Image Load File** shall contain the following comma-delimited fields:  BEGBATES, VOLUME, IMAGE FILE PATH, DOCUMENT BREAK, FOLDER BREAK, BOX BREAK, PAGE COUNT.

3. **Metadata Fields and Metadata File.**[1] Each of the metadata and coding fields set forth below that can be extracted shall be produced for each document. The parties are not obligated to populate manually any of the fields below if such fields cannot be extracted from a document, with the exception of the following: BEGBATES, ENDBATES, BEGATTACH, ENDATTACH, and CUSTODIAN.  The metadata file shall be delimited according to the following characters:
   - Delimiter = ¶ (ASCII:020)
   - Text-Qualifier = þ (ASCII:254)
   - New Line = ® (ASCII:174)
   - Multi-value delimiter - ; (ASCII Code 059)

| Field Name | Field Description |
|---|---|
| BEGBATES | Beginning Bates number as stamped on the production image |
| ENDBATES | Ending Bates number as stamped on the production image |
| BEGATTACH | First production Bates number of the first document in a family |
| ENDATTACH | Last production Bates number of the last document in a family |
|  |  |
| CUSTODIAN | Includes the Individual (Custodian) from whom the documents originated. |
| HASH | MD5 Hash Value |

---

[1] The parties reserve the right to request that additional metadata fields as discovery progresses.

| Field Name | Field Description |
|---|---|
| ATTACHNAME | The file name(s) of the attachment(s) to a parent document (s). Separated by a semicolon. |
| EMAIL SUBJECT | Subject line of email |
| TITLE | Any value populated in the Title field of the document properties |
| DATESENT | Date and time email was sent (format: MM/DD/YYYY HH:MM) |
| DATERECEIVED | Date Received & Time (format: MM/DD/YYYY HH:MM) |
| TO | All recipients that were included on the "To" line of message |
| FROM | The name and email address of the sender of message |
| CC | All recipients that were included on the "CC" line of the message |
| BCC | All recipients that were included on the "BCC" line of message |
| LABEL | All label values associated with a message |
| FOLDER | All folder values associated with a message |
| OWNER | Any value populated in the Owner field of the document properties |
| ITEM TYPE | Identifies whether the file is an email, attachment to the email or loose edoc |
| TITLE | Any value populated in the Title field of the document properties |
| AUTHOR | Any value populated in the Author field of the document properties |
| CONFIDENTIALITY | Identifies the confidential designation as applied in accordance with protective order on file in this Action |
| DRIVEAUTHOR | Google Drive document "Owner" |
| DRIVEVIEWERS | Users with access to view a Google Drive document |
| DRIVE COLLABORATORS | Users with access to edit a Google Drive document |

Case No. 5:20-cv-02155-LHK-VKD

[PROPOSED] STIPULATED ORDER RE: DISCOVERY OF ELECTRONICALLY STORED INFORMATION

| Field Name | Field Description |
|---|---|
| DRIVELABELS | Labels associated with Google Drive document |
| DRIVEFOLDERS | Folders associated with Google Drive document |
| PAGECOUNT | The number of pages of the Document, excluding the pages of documents in the same family |
| FILENAME | Original file name |
| FILEPATH | Original file path to the file or e-mailbox folder structure |
| FILEEXTENSION | Indicates file extension of source native file (e.g., .msg, .doc, .xls, etc.) |
| MESSAGE ID | The Unique Identifier assigned by a program to a Message/Communication |
| PRODUCTION VOLUME | Name of the production volume |
| DATEMOD | Date an electronic document was last modified (format: MM/DD/YYYY) (Edoc or attachment) |
| DATECREATED | Date the document was created (format: MM/DD/YYYY) (Edoc or attachment) |
| NATIVELINK | Native File Link (Native Files only) |
| TEXTLINK | Path to OCR or extracted text file<br>Link to text files |
| REDACTION FLAG | Identifies whether the file was redacted and the redaction type<br>When document contains redactions, field will be populated "Yes" |
| DE-DUPED CUSTODIANS | All Individual(s) whose documents de-duplicated out (De-Duped Custodian) through exact match HASH value. |
| DUPLICATE FILEPATH | Folder locations of documents by held by other custodians whose copy of the document was not produced based on exact match HASH value de-duplication. Folder names shall be delimited by semicolons and include originating custodian name. |
| DUPLICATE MAILFOLDERS | Original file names of e-mail duplicates within the PST/OST; separated by semicolons. |

| Field Name | Field Description |
|---|---|
| DUPLICATE FILENAMES | Original file names of the unproduced deduplicated documents. Multiple values separated by semicolons. |
| LINKED ITEMS | Bates No for Hyperlinked Items |

4. **Processing.** ESI items shall be processed in a manner that preserves the source native file and all of the above-referenced metadata without modification, including their existing time, date and time-zone metadata consistent with the requirements provided in this Order. ESI items shall be produced with all of the metadata and coding fields set forth above.

a) Time Zone. ESI items shall be processed so as to preserve and display the date/time shown in the Document. ESI items shall be processed to reflect the date and time standardized to a single time zone for all productions by a party, that time zone shall be Universal Coordinated Time (UTC), and shall be consistent across each party's productions. The parties understand and acknowledge that such standardization affects only metadata values and does not affect, among other things, dates and times that are hardcoded text within a file. Dates and times that are hard-coded text within a file (for example, in an e-mail thread, dates and times of earlier messages that were converted to body text when subsequently replied to or forwarded; and in any file type, dates and times that are typed as such by users) will be produced in accordance with the formats set forth in this Protocol.

b) Hidden Content. ESI items shall be processed in a manner that preserves hidden columns or rows, hidden text or worksheets, speaker notes, tracked changes, comments, and other rich data (including, but not limited to strikethrough text, etc.) as displayed in the Document to the extent reasonably and technically possible.

5. **Email Families.** Parent-child relationships (the association between an attachment and its parent email, which are referred to as "families") that have been maintained in the ordinary course of business must be preserved. The Producing Party will make reasonable efforts to produce responsive families together unless one or more members of the family are privileged, and in that case, the family will be Bates numbered with a placeholder for the withheld privileged document and the removed document will be logged on the Privilege Log.

6. **Hard Copy Documents.** Documents that exist only in hard copy format shall be scanned and produced as TIFFs. Unless excepted below, documents that exist as ESI shall be converted and produced as TIFFs. Unless excepted below, single page Group IV TIFFs should be provided, at least 300 dots per inch (dpi) for all documents. Each TIFF image shall be named according to a unique corresponding Bates number associated with the document. Each image shall be branded according to the Bates number and the agreed upon confidentiality designation. Original document orientation should be maintained (i.e., portrait to portrait and landscape to landscape). TIFFs shall show all text and images that would be visible to a user of the hard copy documents. Hard copy documents shall be

produced with an accompanying metadata load file as forth above.

    a) <u>Unitization of Paper Documents</u>: Paper documents should be logically unitized for production. Therefore, when scanning or producing paper documents, documents should be scanned as they as they are kept in the regular course of business, distinct documents shall not be merged into a single file or database record, and distinct documents shall not be split into multiple files or database records. The parties will make their best efforts to unitize documents correctly.

    b) <u>File/Binder Structures (Parent-Child Unitization)</u>: Where multiple documents were organized into groups, such as folders, clipped bundles and binders, each distinct document shall be unitized, but maintained together in a parent-child relationship. The parties will make their best efforts to unitize parent-child groups correctly.

    c) <u>Identification</u>: Where a document or a document group – such as folder, clipped bundle, or binder – has an identification spine, "Post-It Note" or any other label, the information on the label shall be scanned and produced as the first page of the document or grouping.

    d) <u>Custodian Identification</u>: The parties will utilize best efforts to ensure that paper records for a particular custodian, which are included in a single production, are produced in consecutive Bates stamp order.

7. **Text Files.** A single multi-page text file shall be provided for each document, and the filename should match its respective TIFF filename. A commercially acceptable technology for optical character recognition "OCR" shall be used for all scanned, hard copy documents. When possible, the text of native files should be extracted directly from the native file. Text files will not contain the redacted portions of the documents and OCR text files will be substituted instead of extracted text files for redacted documents. All documents shall be produced with a link in the TextLink field.

8. **Image Load Files / Data Load Files.** Each TIFF in a production must be referenced in the corresponding image load file. The total number of documents referenced in a production's data load file should match the total number of designated document breaks in the Image Load file(s) in the production. The total number of pages referenced in a production's image load file should match the total number of TIFF files in the production. The total number of documents in a production should match the total number of records in the data load file.

9. **Bates Numbering.** All documents must be endorsed with sequential Bates numbers on the lower right-hand corner of all images, with any claimed confidentiality status as per the Parties' Stipulated Protective Order (the "Stipulated Protective Order") in the lower left-

hand corner. The Bates Numbering and the confidentiality status will be applied in a manner that does not obliterate, conceal, obscure, or interfere with any information from the source document. Each document should be assigned a Bates number that must always: (1) be unique across the entire document production; (2) maintain a constant length of eight numeric digits (including 0-padding) across the entire production; (3) contain only alphanumeric characters, no special characters or embedded spaces; and (4) be sequential within a given document.

10. **Confidentiality Designation.** Responsive documents in TIFF format will be stamped with the appropriate confidentiality designations in accordance with the Protective Order in this matter. Each responsive document produced in native format will have its confidentiality designation identified in the filename of the native file.

11. **Redaction of Information.** If documents are produced containing redacted information, an electronic copy of the original, unredacted data shall be securely preserved in such a manner so as to preserve without modification, alteration or addition the content of such data including any metadata therein. Nothing in this paragraph abridges a producing party's right and/or obligation to redact sensitive personal information that is not relevant to the case, including, but not limited to, sensitive health information, social security numbers, bank information, dates of birth, etc. If any documents are redacted as outlined above, the producing party shall produce a log identifying all documents with such redactions (by bates number) and the basis for redaction (e.g., sensitive health information, etc.; confidential new product or service; or by agreement).

12. **Color.** The parties agree to produce Documents in black and white but the Parties shall meet and confer in good faith if the Receiving Party seeks the color production of certain Documents.

13. **Native Files.** The following types of files shall be produced in native format unless a file is being produced in redacted form:

   a. all media files whether audio or video, and
   b. spreadsheets (e.g. MS Excel or .csv files, Google Sheets, or an acceptable equivalent for Google Sheets).
   c. Presentations (e.g. MS Powerpoint or Google Slides, or an acceptable equivalent for Google Slides)

   A file produced in native format shall be named for its assigned Bates number. A placeholder TIFF image (slipsheet) named for the Bates number shall be produced with the native file. The slipsheet will include the Bates number, any confidentiality designation and the language "Produced in Native Format." TIFF images need not be produced unless the files have been redacted, in which instance such files shall be

produced in TIFF with OCR Text Files. If good cause exists to request production of files, other than those specifically set forth above, in native format, the party may request such production and provide an explanation of the need for native file review, which request shall not unreasonably be denied. Any native files that are produced shall be produced with a link in the NativeLink field, along with extracted text and applicable metadata fields set forth in Appendix A. If a file has been redacted, TIFF images and OCR text of the redacted document will suffice in lieu of a native file and extracted text.

14. **Tools for Native Redaction**. The Parties agree that they may use tools that allow for native redaction of spreadsheets where possible to avoid additional expense.

15. **Proprietary Files.** To the extent a response to discovery requires production of ESI accessible only through proprietary software, the parties should continue to preserve each version of such information.  The parties shall meet and confer to finalize the appropriate production format.

16. **Database Records and Structured Data.**  To the extent that any party requests information that is stored in a database, or database management system, or proprietary system, instant message service, or server logs, the Parties agree that such information can be produced in Excel format. To the extent that Excel format forbids the proper review of the information, the Parties will meet and confer in good faith in an attempt to reach agreement on the data to be produced and the form of the production.

17. **Manner of Production.** All productions must be made by secure file transfer to agreed-upon email addresses. In the event the producing party deems it is not practical to upload a voluminous production (e.g., a production exceeding 20GB) to a secure file transfer site, it shall be sent to the receiving party by overnight mail on external hard drives, readily accessible computer(s) or other electronic media ("Production Media").  Each piece of Production Media shall identify a production number corresponding to the production volume (e.g., "VOL001," "VOL002"), as well as the volume of the material in that production (e.g. "-001," "-002"). Each production shall be accompanied by a cover letter that identifies: (1) the producing party's name; (2) the production date; (3) the Bates Number range of the materials contained on the Production Media; and (4) the set(s) of requests for production for which the documents are being produced.