**QUINN EMANUEL URQUHART & SULLIVAN, LLP**

Andrew H. Schapiro (admitted *pro hac vice*)
andrewschapiro@quinnemanuel.com
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606
Telephone: (312) 705-7400
Facsimile: (312) 705-7401

Josef Ansorge (admitted *pro hac vice*)
josefansorge@quinnemanuel.com
1300 I Street NW, Suite 900
Washington D.C., 20005
Telephone: (202) 538-8000
Facsimile: (202) 538-8100

Stephen A. Broome (CA Bar No. 314605)
stephenbroome@quinnemanuel.com
Viola Trebicka (CA Bar No. 269526)
violatrebicka@quinnemanuel.com
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Jonathan Tse (CA Bar No. 305468)
jonathantse@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, CA 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

Jomaire Crawford (admitted *pro hac vice*)
jomairecrawford@quinnemanuel.com
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100

Thao Thai (CA Bar No. 324672)
thaothai@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

*Counsel for Defendant Google LLC*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

| | |
|---|---|
| PATRICK CALHOUN, *et al*., on behalf of themselves and all others similarly situated,<br>    Plaintiffs,<br><br>v.<br><br>GOOGLE LLC,<br>    Defendant. | Case No. 5:20-cv-5146-LHK-SVK<br><br>**GOOGLE'S NOTICE OF MOTION AND MOTION FOR A PROTECTIVE ORDER**<br><br>Referral: Hon. Susan van Keulen, USMJ<br>Hearing Date: March 3, 2021<br>Hearing Time: 9:30 a.m. |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

Please take notice that, on March 3, 2021 at 9:30 a.m., the undersigned will appear remotely before the Honorable Susan Van Keulen, the United States Magistrate Judge of the District Court for the Northern District of California at the San Jose Courthouse, and shall then present Defendant Google LLC's Motion for a Protective Order (the "Motion") seeking an order that Google need not suspend its standard retention periods applicable to all data logs that reflect event-level data of any Chrome user in the United States.

This Motion is made pursuant to Federal Rule of Civil Procedure 26 and the Court's February 10, 2021 Order Setting Briefing Schedule and Discovery Hearing. *See* Dkt. No. 104. The Motion is based on this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, the Declaration of Viola Trebicka and exhibits attached thereto, the Declaration of Andre Golueke, the Declaration of Eric Gonzales, the pleadings and other papers on file in this action, any oral argument, and any other evidence that the Court may consider in hearing this Motion.

DATED: February 17, 2021         QUINN EMANUEL URQUHART &
                                 SULLIVAN, LLP


                                 By  */s/ Andrew H. Schapiro*
                                     Andrew H. Schapiro
                                     Attorney for Defendant Google

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**
**UNREDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

**TABLE OF CONTENTS**

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ................................................................1

I. INTRODUCTION ................................................................................................................1

II. FACTUAL BACKGROUND ..............................................................................................2

    A. During the ESI Protocol Discussions, Google Disclosed to Plaintiffs That It Will Not Suspend the Retention Policies Related to Logs ...........................2

    B. Information About the Disputed Logs ........................................................3

    C. The Regular Retention Periods of the Disputed Logs .................................4

III. ARGUMENT .......................................................................................................................5

    A. Suspending the Regular Retention Policies on the Logs Would Cause an Enormous and Unprecedented Burden ...................................................5

    B. Producing the Disputed Logs Is Not Feasible ..............................................7

    C. The Burden of Preserving or Producing the Logs Clearly Outweighs any "Utility" the Logs May Have to Plaintiffs' Claims ....................................9

IV. CONCLUSION ..................................................................................................................10

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY
UNREDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

# TABLE OF AUTHORITIES

**Page**

## Cases

*Beluga Shipping GmbH & Co. KS BELUGA FANTASTIC v. Suzlon Energy Ltd.*,
      2010 WL 3749279 (N.D. Cal. Sept. 23, 2010) .................................................................. 8

*FTC v. DirecTV, Inc.*,
      2016 WL 7386133 (N.D. Cal. Dec. 21, 2016) ............................................................... 5, 9

*Gilead Scis., Inc. v. Merck & Co, Inc.*,
      2016 WL 146574 (N.D. Cal. Jan. 13, 2016) .................................................................... 9

*Lord Abbett Mun. Income Fund, Inc. v. Asami*,
      2014 WL 5477639 (N.D. Cal. Oct. 29, 2014) .................................................................. 5

*Mintz v. Mark Bartelstein & Assocs., Inc.*,
      885 F. Supp. 2d 987 (C.D. Cal. 2012) ............................................................................. 8

*Suzlon Energy Ltd. v. Microsoft Corp*,
      671 F.3d 728 (9th Cir. 2011) ........................................................................................... 8

*Theofel v. Farey-Jones*,
      359 F.3d 1066 (9th Cir. 2004) ......................................................................................... 8

*Viacom Int'l Inc. v. Youtube Inc.*,
      253 F.R.D. 256 (S.D.N.Y. 2008) ..................................................................................... 8

## Rules

Fed. R. Civ. P. 26(b)(1) ............................................................................................................. 5

Fed. R. Civ. P. 37(e) .............................................................................................................. 5, 9

N.D. Cal. Guideline 1.03 .......................................................................................................... 5

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY
UNREDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    INTRODUCTION**

This dispute centers on whether Rule 26 requires Google to suspend its regular data log retention policies related to the activity of millions of Internet users, just because they may reflect some web browsing activity by putative class members (Chrome users in the United States who did not enable Chrome's "sync" feature). Practically speaking, suspending these policies—even if possible—would mean that Google would have to store an estimated ▓▓▓▓▓▓▓ of additional data **every 30 days.** This vast amount of data would require the addition of the equivalent of ▓▓▓▓ laptops (supercharged with 1 terabyte storage) to Google's server space every month simply to account for the small chance that Plaintiffs *may* use a miniscule fraction of that data in litigation.

The proportionality requirement in Rule 26 protects against Plaintiff's unreasonable and burdensome demands. This would be an unprecedented preservation effort that would require inordinate engineering and storage resources and cost ▓▓▓▓▓▓▓. Even the process of suspending the retention period would require a long, complex, and unprecedented effort that would entail ▓▓▓▓ of work by teams of engineers. The excessive burden alone is sufficient to deny the request.

Google's commitments to its users' privacy make suspending the regular retention periods for the logs even more onerous. The preservation demand sweeps in the data of *millions* of non-class member users who do not use Chrome, live outside the United States, or otherwise fall outside of the putative class definition. In fact, Plaintiffs have refused to produce to Google any non-Chrome data relating to their Internet activity, claiming that producing such information would invade their privacy. It is ironic that they demand that Google preserve event-level data for millions of users who, unlike Plaintiffs, did not choose to participate in litigation and to undertake the discovery obligations that come with it.

The blunderbuss preservation demand is even less warranted given that the production of any of this information is improbable. The Stored Communications Act ("SCA") forbids Google's production of communications stored in its servers without user consent. Nor is it feasible to produce such a massive amount of highly-regulated and sensitive data related to the browsing of millions of

-1-    Case No. 5:20-cv-5146-LHK-SVK
GOOGLE'S NOTICE OF MOTION FOR A PROTECTIVE ORDER

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY
UNREDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

1   users, including non-class members, to a set of class counsel who currently represent only four
2   people.

3   The enormous burden Plaintiffs seek to impose is clear. In contrast, Plaintiffs have failed to
4   establish the relevance of the data they demand preserved, much less how they would use it in this
5   litigation. Plaintiffs allege that Google improperly collected data when Plaintiffs used Google's
6   Chrome browser to visit websites that use Google's Analytics and Ad Manager services (the
7   "Services"). Dkt. No. 1. As detailed in Google's Motion to Dismiss (heard by Judge Koh on
8   February 18), Google's Privacy Policy disclosed the precise data collection at issue. *See* Dkt. No.
9   57. Plaintiffs cannot credibly dispute that; rather, they allege Google's Chrome Privacy Notice led
10  them to believe they could prevent such data collection simply by *not* enabling a particular browser
11  feature—Chrome's "sync." All of Plaintiffs' claims thus turn on the narrow question of whether
12  their alleged interpretation of the Chrome Privacy Notice is reasonable.

13  Plaintiffs acknowledge there is no chance they will need the enormous data volumes they
14  demand be preserved. Instead, Plaintiffs speculate that they *might* need some small portion of it, and
15  therefore Google needs to preserve all of it until they figure out what miniscule part of this data they
16  may need and may be entitled to receive under the SCA. But Google need not preserve the entire
17  beach in case Plaintiffs later decide that they could use a few grains of sand. That is entirely
18  disproportionate and in violation of the Federal Rules' proportionality principles.

19  **II.     FACTUAL BACKGROUND**

20         A.    During the ESI Protocol Discussions, Google Disclosed to Plaintiffs That It Will
21              Not Suspend the Retention Policies Related to Logs

22  In October 2020, counsel met and conferred multiple times regarding the ESI Protocol.
23  Trebicka Decl. ¶ 3. Google asked Plaintiffs to agree to a preservation exemption for "system, server,
24  and network logs" on the basis that these logs were extremely large and preservation was not
25  proportional to the needs of a case where the key dispute is one of interpretation of disclosures. *Id.*
26  at ¶ 4. The Northern District of California Guidelines for the Discovery of Electronically Stored
27  Information specifically require the parties to find agreement on the preservation, collection, search,
28  review, and production of ESI by applying the proportionality standard set forth in Rule 26(b)(1).

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**
**UNREDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

Guideline 1.03 (Discovery Proportionality). Despite this clear requirement, Plaintiffs disagreed, claiming there was insufficient time to fully discuss this issue before the deadline to submit a joint ESI Protocol. Trebicka Decl. ¶ 4. Therefore, the parties agreed to defer agreement on preservation of the Disputed Logs to the discussion of the ESI Checklist on January 20, 2021. *Id.*

At the January 20 and 21, 2021 meet-and-confers on the ESI Checklist, Plaintiffs again rejected Google's position that it need not preserve the Disputed Logs; Plaintiffs sent a letter claiming "spoliation" immediately after the January 21 meet and confer session. *Id.* at ¶¶ 6-7. Three days later, Plaintiffs also served a Rule 30(b)(6) deposition notice. *Id.* at ¶ 8. Google responded with a letter providing additional information on the logs and their retention periods, the burden associated with retaining them, and why preservation was not proportional to the needs of the case. *Id.* at ¶ 9. Google also served objections to the Rule 30(b)(6) notice, but agreed to provide (and has since produced) retention policies related to the Disputed Logs. *Id.* at ¶ 11. Instead of attempting to find a reasonable compromise, Plaintiffs accused Google of "spoliation." *Id.* at ¶ 10. Google moved for a protective order in a joint letter. Dkt. No. 102. On February 10, this Court ordered a full briefing to address "the relevance and proportionality of retention and production of the disputed logs." Dkt. 104.

### B.     Information About the Disputed Logs

Plaintiffs' preservation demand implicates certain My Activity, Analytics, and Display Ad logs. Golueke Decl. ¶ 3. My Activity logs include data related to user visits to web pages that use Google's Analytics or Ad Manager services and that are linked to a user's Google Account. *Id*. Analytics logs include data Google receives through, and stores on behalf of, Google Analytics customers when a user visits the customers' web pages. *Id*. Display Ad logs include data Google receives when a user visits a site that uses Google's advertising services. *Id*. All Disputed Logs store information about user website visits. *Id*.

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**
**UNREDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

The Disputed Logs are massive and housed in complex infrastructures. *Id.* at ¶¶ 7-8. The data is in a format known as protocol buffer records. *Id.* at ¶¶ 4, 7. A protocol buffer is a means of serializing structured data such that, through the use of special generated source code, it can be written and read to and from a variety of data streams using a variety of coding languages. *Id.* at ¶ 4.

The Disputed Logs record ████ of entries a day. *Id.* at ¶ 7. Google estimates that suspending preservation of these logs—even if possible to do safely, without jeopardizing the data or Google's systems—would result in a need to store an additional ████████ of data ████ ████████ *Id.* at ¶ 10. Google estimates that the implicated Display Ad logs are ████ ████████ and more than ████████████ *Id*. Just one of the Analytics logs implicated by Plaintiffs' preservation demand is ████████████ a separate Analytics log consists of more than ████████████. *Id*. Plaintiffs' demand that Google preserve *all* data in the logs implicates many multiples of these amounts.

████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ Therefore, although Plaintiffs bring claims on behalf of all users in the United States who did not enable sync, their preservation request sweeps in a plethora of event-level data for millions of individuals who are not putative class members.

### C. The Regular Retention Periods of the Disputed Logs

The retention periods for each of the Disputed Logs are carefully calibrated to align with Google's legal obligations, contractual obligations, as well as its disclosures to users. Google has produced to Plaintiffs public statements and disclosures related to retention of this data, as well as Google's current internal anti-fingerprinting policy, User Data Access Policy, User Data Retention and Deletion Policy, User Data Retention and Deletion Guidelines, and Scrubbing Policies for Log Data. Trebicka Decl. ¶ 12.

████████████████████████████████████████████████████████ user controls. Golueke Decl. ¶ 6. At their "My Activity" page, users can set auto-deletion periods (3 months, 18 months, 36

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**
**UNREDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

months, or opt for no auto-deletion). *See* Trebicka Decl. ¶ 13; Ex. 4. They can also review and delete individual entries of the data Google received when that user visited a website that used Google services. *See id.* at ¶ 14; Ex. 5. ███████████████████████████████████████ ███████████████████████████████████████████████████████████ Ironically, Plaintiffs' expansive preservation demand would prevent Google from complying with millions of users' personal retention and deletion preferences. In addition, Google Analytics customers are in control of what data is sent to Google Analytics, including data stored in logs. *Id.*

### III.    ARGUMENT

Discovery must be "proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). "This district recognizes that the proportionality principle applies to the duty to preserve potential sources of evidence." *Lord Abbett Mun. Income Fund, Inc. v. Asami*, 2014 WL 5477639, at *3 (N.D. Cal. Oct. 29, 2014) (cost of $500 per month to store computers outweighed the likely benefit of maintaining the computers); *see also* N.D. Cal. Guideline 1.03; Fed. R. Civ. P. 37(e) Adv. Comm. Notes (2015) ("[P]erfection in preserving all relevant electronically stored information is often impossible.").

A party need not preserve data beyond what is truly "needed . . . to prosecute th[e] case." *FTC v. DirecTV, Inc.*, 2016 WL 7386133, at *5 (N.D. Cal. Dec. 21, 2016) (no prejudice where although preservation was not perfect, it was sufficient for stated need). Plaintiffs' demand that Google preserve every data log reflecting any event-level data of any Chrome user that visited a website that uses the Services eviscerates the basic principle of proportionality.

#### A.    Suspending the Regular Retention Policies on the Logs Would Cause an Enormous and Unprecedented Burden

Even if feasible, suspending the regular retention periods for the Disputed Logs would take Google ████ of engineering effort and ████████ to accomplish. Safely hosting the resulting, ever-increasing amounts of data would be an immense engineering burden and monetary cost.

The Disputed Logs are enormous, recording ████████████ Golueke Decl. ¶ 7. The implicated Display Ad logs alone consist of ████████ of data, and continue to record more than

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**
**UNREDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

1  ▮▮▮▮▮▮▮▮▮▮ *Id*. at ¶ 10. It is easy to lose sight of the immensity of this volume of data. For context, the average size of an email is 75 Kilobytes. This would amount to more than ▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Focusing on individual logs does not make the size any less burdensome. Just one of the Analytics logs implicated by Plaintiffs' preservation demand is ▮ ▮▮▮▮▮▮▮▮▮. *Id*. The size of that single Analytics log for one day is the equivalent of ▮ ▮▮▮▮▮▮▮ These volumes make safe storage a sizable engineering challenge.

Moreover, suspending the retention period on any of the Disputed Logs is no simple task. *Id*. at ¶ 8. It would require a long, complex, and unprecedented effort entailing ▮▮▮▮ of work by engineers teams at great expense to accomplish it safely. *Id*. at ¶¶ 8-9 That is not surprising given that the infrastructures that house these logs have been built over years to comply with Google's many regulatory, legal, and contractual obligations. *Id*. at ¶ 8. Further, managing this volume of data for the indefinite duration of the litigation would involve a large burden in engineering work and storage costs—which would continue to increase throughout the life of the case. *Id*. at ¶ 10.

In addition to the direct costs, there are intangible burdens that come with the indiscriminate preservation of data associated with millions of users. Google's procedures and processes are designed to comply with a complex array of applicable data privacy laws and regulations. Google's retention periods and data privacy policies are carefully crafted to abide by Google's legal obligations under laws in various jurisdictions in which it operates, including EU General Data Protection Regulation 2016/679, the California Consumer Privacy Act (CCPA), and Lei Geral de Proteção de Dados (LGPD). Trebicka Decl. ¶ 15; Ex. 6. The retention policies at issue here reflect the requirements in these laws and regulations. In particular, these laws require that if data is retained for legal process purposes, it may not include data beyond what is strictly necessary to the litigation. *See, e.g.*, GDPR Art. 17 ("Right to Erasure") ¶ 3 (preceding paragraphs requiring erasure of user data "shall not apply to the extent that processing is ***necessary*** . . . for the establishment, exercise or defence of legal claims") (emphasis added); Cal. Civ. Code § 1798.105 ("A business or a service provider shall not be required to comply with a consumer's request to delete the consumer's personal information if it is ***necessary*** for the business or service provider to maintain the consumer's personal information in order to . . . [c]omply with a legal obligation.") (emphasis added). Even if

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**
**UNREDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

retaining records of the millions of putative class members was necessary and proportionate in this case—it is not—it is certainly not legitimate to retain the data for millions of users who are *not* putative class members.

Beyond its compliance obligations, Google constantly strives to implement strong privacy protections that reflect additional guidance of regulatory authorities. Suspending the ability of all U.S.-based users to control the data associated with their accounts would prevent Google from abiding by its representations to users, and is inconsistent with Plaintiffs' ostensible goal of preserving users' privacy and control over their data. Similarly, Google maintains and processes data it receives through Google Analytics on behalf of the websites that use Google Analytics. Those websites, just like Google users, have the ability to set retention periods and delete data. Suspending the ability of all Analytics customers to delete data that Google stores on Analytics customers' behalf would be likewise unreasonable and burdensome. Indeed, in many cases, it would cause Google's customers (websites) to breach their promises to their *own* users.

B.   Producing the Disputed Logs Is Not Feasible

There is no point in preserving data that cannot be produced. Here, the size of the logs and Google's obligations to users and customers make production of even a fraction of the Disputed Logs extremely burdensome. In fact, the production volume potentially required is without precedent. Epiq, one of the world's largest eDiscovery vendors, has a global daily processing capacity of about 15 Terabytes, processes about 70 Terabytes per month, and has "dozens" of Petabytes of global data capacity. Golueke Decl. ¶ 3. This is ▇▇▇▇▇▇▇▇▇▇ than the Disputed Logs' size—▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ In its 30-year history as a leading global provider of discovery services, Epiq has never processed or produced data at the Exabyte scale. *Id.* at ¶ 4. Doing so would create an unprecedented economic burden. *Id*.

Beyond burden, there are two additional reasons why a production of the Disputed Logs (or a fraction thereof) is unfeasible.

*First*, the Disputed Logs contain data Google stores on its own servers. The Stored Communications Act ("SCA") forbids Google from producing data associated with a Google Account (all ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ without the consent

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**
**UNREDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

of the users. *See* 18 U.S.C. §§ 2701-11. Similarly, none of the Analytics logs can be produced without the consent of each Analytics customer (thousands of websites) on whose behalf Google records data. *See id.* Courts have consistently found that it is "illegal for an entity that provides an electronic communication service to the public to produce the contents of its stored communications"—even in response to a subpoena or document request. *Suzlon Energy Ltd. v. Microsoft Corp*, 671 F.3d 726, 728 (9th Cir. 2011); *see also Theofel v. Farey-Jones*, 359 F.3d 1066, 1071-72 (9th Cir. 2004) (characterizing subpoena issued by attorneys to email provider for email of litigants as "patently unlawful" because it sought production of email without consent); *Beluga Shipping GmbH & Co. KS BELUGA FANTASTIC v. Suzlon Energy Ltd.*, 2010 WL 3749279, at *4 (N.D. Cal. Sept. 23, 2010) (denying discovery sought pursuant to 28 U.S.C. § 1782 because "the ECPA prohibits Google from disclosing the contents of those email accounts until it receives consents [sic] from the email account holders"); *Viacom Int'l Inc. v. Youtube Inc.*, 253 F.R.D. 256, 264 (S.D.N.Y. 2008) (SCA prohibits disclosure of information pursuant to a civil subpoena because the Act "contains no exception for disclosure of such communications pursuant to civil discovery requests"); *Mintz v. Mark Bartelstein & Assocs., Inc.*, 885 F. Supp. 2d 987, 993-94 (C.D. Cal. 2012) (SCA prohibits ECS provider from disclosing the content of communications pursuant to a subpoena).

*Second*, producing such sensitive and highly-regulated data *en masse* is truly unprecedented—for good reason. At issue here is a massive amount of event-level data generated by the activity of **millions** of users. Google is under a legal obligation to guard the security and integrity of this data, and it goes to great lengths to do so. That Google has strict protocols, policies, and procedures surrounding the handling of such data proves the point. Access to the data is limited to a "need to know" basis. Golueke Decl. at ¶ 4 ▬▬▬▬▬▬▬ ▬▬▬ Google has built the policies, teams, and expertise to correctly handle this sensitive data with integrity and safeguard it from unauthorized access or exfiltration. *Id*. at ¶ 8. Requiring Google to hand over this data to plaintiffs' counsel currently representing just four users so that they can test for themselves Google's sworn attestations is not reasonable.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY
UNREDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

C.   The Burden of Preserving or Producing the Logs Clearly Outweighs any "Utility" the Logs May Have to Plaintiffs' Claims

A party need not preserve data beyond what is truly "needed . . . to prosecute th[e] case." *DirecTV, Inc.*, 2016 WL 7386133, at *5. Plaintiffs' claims all turn on a simple question: Did Google represent to Chrome users that its Ad Manager and Analytics Services would *not* collect data about users' website visits if they did not enable "sync" and simply used Chrome in its default "basic browser" mode? Plaintiffs have yet to show why an indiscriminate preservation of data by millions of users is necessary to the resolution of their claims. They cannot.

Instead, Plaintiffs start out with an ***assumption*** that these logs are relevant, and ask that Google justify why they are not. That turns the relevance burden on its head. That the Disputed Logs record data about Chrome users who browsed while not enabling "sync" on their browser—among millions of other Internet users—does not mean that this data is relevant, necessary, or proportional to the needs of the litigation.

Plaintiffs claim Google needs to preserve ▮▮▮▮ of information, to the tune of ▮▮▮▮ ▮▮▮▮ and contrary to the privacy interests of millions of users, while they explore the Disputed Logs and attempt to articulate a relevance ground. But that is not what the Rules require. Even for relevant information, the federal rules recognize "perfection in preserving all relevant electronically stored information is often impossible." Fed. R. Civ. P. 37(e) Adv. Comm. Notes (2015). The analysis is one of proportionality: "[A] party seeking discovery of relevant, non-privileged information must show, before anything else, that the discovery sought is proportional to the needs of the case." *Gilead Scis., Inc. v. Merck & Co, Inc.*, 2016 WL 146574, at *1-2 (N.D. Cal. Jan. 13, 2016) (denying requested discovery "given the cost and potential delay introduced by the requested production").

The colossal effort and cost involved are grossly disproportionate to the needs of a case involving interpretation of Google's disclosures. Indeed, given the massive size and overbreadth of the Disputed Logs, it defies reason to believe that Plaintiffs will spend the resources necessary to download, host, process, review, and actually use in this litigation even a fraction of this data.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY
UNREDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

## IV. CONCLUSION

For these reasons, Google respectfully asks that the Court grant its Motion.

DATED: February 17, 2021

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By  /s/ Andrew H. Schapiro
Andrew H. Schapiro (admitted pro hac vice)
andrewschapiro@quinnemanuel.com
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606
Telephone: (312) 705-7400
Facsimile: (312) 705-7401

Stephen A. Broome (CA Bar No. 314605)
sb@quinnemanuel.com
Viola Trebicka (CA Bar No. 269526)
violatrebicka@quinnemanuel.com
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Jomaire Crawford (admitted pro hac vice)
jomairecrawford@quinnemanuel.com
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100

Josef Ansorge (admitted pro hac vice)
josefansorge@quinnemanuel.com
1300 I Street NW, Suite 900
Washington D.C., 20005
Telephone: (202) 538-8000
Facsimile: (202) 538-8100

Jonathan Tse (CA Bar No. 305468)
jonathantse@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, CA 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**
**UNREDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

Thao Thai (CA Bar No. 324672)
thaothai@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

*Attorneys for Defendant Google LLC*