1   COOLEY LLP                                COOLEY LLP
    MICHAEL G. RHODES (SBN 116127)            ROBBY L.R. SALDAÑA (*pro hac vice*)
2   (rhodesmg@cooley.com)                     (rsaldana@cooley.com)
    JEFFREY M. GUTKIN (SBN 216083)            1299 Pennsylvania Avenue, NW
3   (jgutkin@cooley.com)                      Suite 700
    KYLE WONG (SBN 224021)                    Washington, DC 20004-2400
4   (kwong@cooley.com)                        Telephone:    +1 202 776 2109
    KELSEY R. SPECTOR (SBN 321488)            Facsimile:    +1 202 842 7899
5   (kspector@cooley.com)
    COLIN S. SCOTT (SBN 318555)
6   (cscott@cooley.com)
    3 Embarcadero Center, 20th floor
7   San Francisco, CA 94111-4004
    Telephone:    +1 415 693 2000
8   Facsimile:    +1 415 693 2222

9   Attorneys for Defendant
    GOOGLE LLC

10

11

12

13                      UNITED STATES DISTRICT COURT

14                    NORTHERN DISTRICT OF CALIFORNIA

15                           SAN JOSE DIVISION

16

17  In re Google RTB Consumer Privacy          Master File No. 5:21-cv-02155-LHK
    Litigation,
18                                              **GOOGLE LLC'S REPLY IN SUPPORT
                                                OF MOTION TO DISMISS
19                                              PLAINTIFFS' CONSOLIDATED
    This Document Relates to:  *all actions*,   CLASS ACTION COMPLAINT**
20

21

22

23

24

25

26

27

28

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

GOOGLE'S REPLY ISO
MOTION TO DISMISS
CASE NO. 5:21-CV-02155-LHK

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ................................................................................................... 1

II.    ARGUMENT .......................................................................................................... 1

A.     Plaintiffs Lack Standing. ............................................................................. 1

B.     Plaintiffs Fail to State a Breach of Contract Claim. ................................... 4

1.     The Linked Informational Webpage Is Not a Part of the Contract. ........... 4

2.     Plaintiffs Have Not Plausibly Alleged a Breach of the Privacy Policy. ........................................................................................... 5

a.     Plaintiffs Fail to Allege Whether They Opted Out of Targeted Ads. ........................................................................ 5

b.     Google's Personal Information Definition Defeats Plaintiffs' Claim. .......................................................................... 5

c.     The CCPA Definition of "Personal Information" Does Not Control. .................................................................................. 7

C.     Plaintiffs Fail to State a Claim for Breach of the Implied Covenant. ......... 7

D.     Plaintiffs Have Not Shown Invasion of Privacy or Intrusion Upon Seclusion. .................................................................................................... 8

1.     Plaintiffs have not established their data was shared. ................................. 8

2.     Plaintiffs fail to plead a reasonable expectation of privacy. ...................... 8

3.     Plaintiffs have not alleged any highly offensive conduct. ......................... 10

E.     Plaintiffs Have Not Stated a Claim for Publication of Private Facts. ......... 10

F.     Plaintiffs Have Not Stated a Claim for Breach of Confidence. .................. 11

G.     Plaintiffs' WTA Claim Fails. ....................................................................... 12

1.     Plaintiffs Do Not Allege Interception of Any "Contents." ........................ 12

2.     Any Disclosure Occurred with Publishers' Consent. ................................. 14

H.     Plaintiffs' CIPA Claims Are Limited to California. .................................... 15

III.   CONCLUSION ....................................................................................................... 15

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. C.L. Union v. Clapper*,
  785 F.3d 787 (2d Cir. 2015)................................................................................................ 2

*Balboa Ins. Co. v. Trans Global Equities*,
  218 Cal. App. 3d 1327 (1990)............................................................................................ 12

*Berkla v. Corel Corp.*,
  302 F.3d 909 (9th Cir. 2002).............................................................................................. 12

*Birdsong v. Apple, Inc.*,
  590 F.3d 955 (9th Cir. 2009)................................................................................................ 3

*Brown v. Google LLC*,
  525 F. Supp. 3d 1049 (N.D. Cal. 2021) ...................................................................... 8, 9, 10

*Calhoun v. Google LLC*,
  526 F. Supp. 3d 605 (N.D. Cal. 2021) ......................................................................... *passim*

*Daly v. Viacom, Inc.*,
  238 F. Supp. 2d 1118 (N.D. Cal. 2002) .............................................................................. 11

*Daniels v. Alphabet Inc.*,
  2021 WL 1222166 (N.D. Cal. Mar. 31, 2021)...................................................................... 7

*In re Facebook, Inc., Consumer Privacy User Profile Litig.*,
  402 F. Supp. 3d 767 (N.D. Cal. 2019) ...................................................................... 4, 10, 14

*In re Facebook, Inc. Internet Tracking Litig.*,
  956 F.3d 589 (9th Cir. 2020)....................................................................................... *passim*

*Garcia v. Enter. Holdings, Inc.*,
  78 F. Supp. 3d 1125 (N.D. Cal. 2015) ................................................................................ 15

*Gonzales v. Uber Tech., Inc.*,
  305 F. Supp. 3d 1078 (N.D. Cal. 2018) .............................................................................. 13

*In re Google Assistant Privacy Litig.*,
  457 F. Supp. 3d 797 (N.D. Cal. 2020) .................................................................................. 8

*In re Google Inc.*,
  2013 WL 5423918 (N.D. Cal. Sept. 26, 2013) (Koh, J.) .................................................... 14

*In re Google Inc. Cookie Placement Consumer Privacy Litig.*,
  806 F.3d 125 (3d Cir. 2015)............................................................................................. 3, 8

*Hill v. Nat'l Collegiate Athletic Ass'n*,
　7 Cal. 4th 1 (1994) ................................................................................................ 10

*Integrated Storage Consulting Servs., Inc. v. NetApp, Inc.*,
　2013 WL 3974537 (N.D. Cal. July 31, 2013) ......................................................... 7

*In re iPhone App. Litig.*,
　2011 WL 4403963 (N.D. Cal. Sept. 20, 2011) .................................................... 3, 8

*In re iPhone App. Litig.*,
　844 F. Supp. 2d. 1040 (N.D. Cal. 2012) ............................................................. 3, 4

*Jewel v. Nat'l Sec. Agency*,
　673 F.3d 902 (9th Cir. 2011) ................................................................................. 2

*Maloney v. Scottsdale Ins. Co.*,
　256 F. App'x 29 (9th Cir. 2007) ........................................................................... 11

*Obama v. Klayman*,
　800 F.3d 559 (D.C. Cir. 2015) .............................................................................. 2

*Pemberton v. Nationstar Mortg. LLC*,
　331 F. Supp. 3d 1018 (S.D. Cal. 2018) .................................................................. 6

*In re Pharmatrak, Inc.*,
　329 F.3d 9 (1st Cir. 2003) ............................................................................. 14, 15

*Prouty v. Gores Tech. Grp.*,
　121 Cal. App. 4th 1225 (2004) .............................................................................. 7

*Racine & Laramie, Ltd. v. Cal. Dep't of Parks & Recreation*,
　11 Cal. App. 4th 1026 (1992) ................................................................................ 8

*Rodriguez v. Hatton*,
　2017 WL 931876 (E.D. Cal. Mar. 9, 2017) .......................................................... 13

*Spokeo, Inc. v. Robins*,
　578 U.S. 330 (2016) .............................................................................................. 2

*Tele-Count Eng'rs, Inc. v. Pac. Tel. & Tel. Co.*,
　168 Cal. App. 3d 455 (1985) ............................................................................... 12

*Tietsworth v. Sears*,
　720 F. Supp. 2d 1123 (N.D. Cal. 2010) ..................................................... 5, 9, 15

*Troyk v. Farmers Grp., Inc.*,
　171 Cal. App. 4th 1305 (2009) .............................................................................. 4

*U.S. Med. Instruments, Inc. v. CFS N. Am., Inc.*,
　2013 WL 6055387 (S.D. Cal. Nov. 13, 2013) ...................................................... 11

*In re Yahoo Mail Litig.*,
   7 F. Supp. 3d 1016 (N.D. Cal. 2014) (Koh, J.) ...................................................................... 14

*In re Zoom Video Communications Inc. Privacy Litig.*,
   525 F. Supp. 3d 1017 (N.D. Cal. 2021) ........................................................................... 3, 8, 9

*In re Zynga Priv. Litig.*,
   750 F.3d 1098 (9th Cir. 2014)........................................................................................ 12, 13

**Statutes**

18 U.S.C. § 2510(8) ...................................................................................................................... 12

Cal. Penal Code § 631(a) .............................................................................................................. 15

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## I.    INTRODUCTION

Plaintiffs' opposition brief ("Opposition") cannot undo the fundamental defects in the Consolidated Class Action Complaint ("CAC").  Putting Plaintiffs' rhetoric aside, their arguments: ignore their failure to plead the most basic and crucial facts about the named Plaintiffs, overstate the supposed ubiquity of ads served through Google's real-time bidding auction ("RTB") in contradiction of the CAC, ignore the critical terms of the relevant contracts, ignore Google's clear and public disclosures about its use of Account Holders' data for ad targeting, and demonstrably mischaracterize the data that Google shares with RTB bidders.  When the facts alleged in the CAC are separated from Plaintiffs' bluster, they cannot sustain any of Plaintiffs' causes of action.

Moreover, Plaintiffs' opposition brief is consistently wrong on the law.  As only a few examples, Plaintiffs claim they can establish standing by simply alleging a widespread practice that may have affected them, but in all their cited authorities, the plaintiffs alleged individualized facts about their own actions that permitted an inference of standing.  No such facts about the named Plaintiffs appear in the CAC.  Plaintiffs argue their implied covenant claim is not duplicative of their breach of contract claim, but then assert that "Google broke express promises" that Plaintiffs also claim are contractual.  Plaintiffs claim they had a reasonable expectation of privacy in the data Google allegedly shared through RTB but cite cases in which the defendant intentionally thwarted affirmative steps the plaintiffs allegedly took to protect their privacy.  No remotely similar facts are alleged here.  As to the Wiretap Act, Plaintiffs allege that intercepted "contents" are broadly construed, but they ignore Google's authorities holding that the very type of intercepted contents specifically alleged here (GET and POST requests) do not qualify as contents under the statute.

In short, the Opposition is factually and legally untenable.  The CAC should be dismissed.

## II.    ARGUMENT

### A.    Plaintiffs Lack Standing.

In their Opposition, Plaintiffs all but admit that they have not alleged facts showing they suffered a personal injury as a result of Google RTB.  Google argued that the CAC contains none of the key facts about Plaintiffs' own use of the internet and Plaintiffs responded by citing

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

GOOGLE'S REPLY ISO
MOTION TO DISMISS
CASE NO. 5:21-CV-02155-LHK

boilerplate allegations about their use of various Internet browsers and relying on generic references to "other facts." (Opp. at 3.) Plaintiffs nowhere deny that the CAC is bereft of allegations about how often they used the internet, how their browsers and devices were configured, or even whether they saw online ads. Without these basic building blocks, Plaintiffs' allegations are inadequate.

Plaintiffs first attempt to recast the CAC as a challenge to a "ubiquitous" practice of mass data transmission to deflect from their paucity of particularized allegations. Strikingly, Plaintiffs ignore Google's discussion of their allegation that ***nearly half of online ad auctions are through a non-Google platform***. (*See* CAC ¶ 129; MTD at 2.) Their silence here undermines their assertions that the Court can simply assume standing. *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (plaintiffs bear the burden to establish standing by alleging actual, particularized harm).

Plaintiffs' reliance on widespread dragnet surveillance cases (Opp. at 4), is also unavailing. The complaints in those cases alleged specific facts showing collection of the plaintiffs' own information through the mass collection of call metadata and internet traffic from providers whose services they used. *See Jewel v. Nat'l Sec. Agency*, 673 F.3d 902, 905–06 (9th Cir. 2011) (focusing on "allegations as they pertain to [the named plaintiff]" and noting plaintiff alleged "she was specifically affected because AT&T, in collaboration with [NSA], diverted all of her internet traffic" into identified "[s]ecure [r]ooms" across the country); *Am. C.L. Union v. Clapper*, 785 F.3d 787, 801 (2d Cir. 2015) (finding standing where plaintiffs made a specific showing that their "call records [we]re indeed among those collected as part of the telephone metadata program"). But here, Plaintiffs fail to plead factual allegations showing ***their information*** was shared by Google through its RTB auction; their allegations are analogous to plaintiffs in the dragnet cases alleging their data was collected simply because they talk on the phone or use the internet. (*See* MTD at 7–8, 10.) Plaintiffs' authorities are, thus, distinguishable.[1]

---

[1] Plaintiffs misread *Obama v. Klayman*, 800 F.3d 559 (D.C. Cir. 2015). There, two judges on the panel found that the ***plaintiffs failed to show standing*** when they did not allege facts sufficient to show they were subject to the allegedly widespread practices they challenged. *See id.* at 205–08 (Williams, J. concurring) (concluding allegations that plaintiffs used Verizon Wireless and the government collected *en masse* Verizon Business Network communications were insufficient but remanding for consideration of whether jurisdictional discovery was appropriate); *id.* at 209–10 (Sentelle, J. dissenting) (reasoning plaintiffs failed to establish standing and dismissal was appropriate). Plaintiffs cite the opinion of the one judge on that panel who found the contrary. (*See* Opp. at 4 (citing *Klayman*, 800 F.3d at 203 (Brown, J. concurring)).)

Plaintiffs also cite cases in which plaintiffs alleged a privacy harm from the alleged surreptitious collection of their information. (*See* Opp. at 3–4 (citing *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589 (9th Cir. 2020) ("*Facebook Internet Tracking*"), and *In re Google Inc. Cookie Placement Consumer Privacy Litig.*, 806 F.3d 125 (3d Cir. 2015) ("*Google Cookie*")).) But the plaintiffs in these cases pled ***individualized facts*** demonstrating they personally suffered a privacy injury. In *Google Cookie*, the plaintiffs pled "highly specific allegations that the defendants . . . implanted tracking cookies on their *personal* computers" by "deceitful override of the plaintiffs' cookies blockers" and "surreptitiously exploiting, loopholes in both the Safari cookie blocker and the Internet Explorer cookie blocker." *See* 806 F.3d at 132, 134, 153 (emphasis in original). In *Facebook Internet Tracking*, the heart of the dispute was that plaintiffs alleged they ***affirmatively logged out*** of their Facebook accounts to prevent Facebook's collection of their information during web-browsing and Facebook collected it anyway. *See, e.g.*, 956 F.3d at 596, 602. Here, Plaintiffs allege nothing about their own actions or device or browser settings, including whether they used Google's Ad Settings to opt out of targeted ads, as Google repeatedly disclosed they could.[2] (*See* MTD at 7.) Thus, the standing rulings in those decisions are inapposite.

Finally, Plaintiffs' fail to distinguish Google's cases. (Opp. at 5.) Like *In re Zoom Video Communications Inc. Privacy Litigation*, 525 F. Supp. 3d 1017 (N.D. Cal. 2021), Plaintiffs cannot show injury from the challenged conduct (and thus standing) without first alleging basic facts showing exposure to the conduct. *Id.* at 1036–38; (*see also* MTD at 7). Plaintiffs have not done so and thus cannot sidestep the authorities holding it is insufficient to allege only harm to other class members. (*See* MTD at 8); *see also Birdsong v. Apple, Inc.*, 590 F.3d 955, 960–61 & n.4 (9th Cir. 2009). While Plaintiffs focus on *In re iPhone App. Litigation*, 844 F. Supp. 2d. 1040 (N.D. Cal. 2012) (Opp. at 5), they ignore the earlier holding that plaintiffs cannot make generalized allegations about the defendant's data practices and must allege specific facts showing ***they personally*** were subject to the challenged practices to show "an actual injury to *themselves*." *In re iPhone App. Litig.*, 2011 WL 4403963, at *4–5 (N.D. Cal. Sept. 20, 2011) (emphasis added); (*see*

---

[2] *See also infra* II.D.2.b (explaining how Plaintiffs' attempt to imply that opting out of personalized ads would not have prevented the challenged conduct relies on misreading the Privacy Policy).

*also* MTD at 8).  The later decision in that case does not save the CAC because the plaintiffs there did not simply add allegations about their personal information; they also added allegations necessary to establish a personal injury, including "the specific iDevices used" and "which apps they downloaded that accessed or tracked their personal information."  *iPhone App. Litig.*, 844 F. Supp. 2d at 1054–55.  The Court cannot excuse Plaintiffs from doing the same here.

For all these reasons, the Opposition fails to explain how the CAC establishes standing

**B.      Plaintiffs Fail to State a Breach of Contract Claim.**

**1.      The Linked Informational Webpage Is Not a Part of the Contract.**

The March 31, 2020 ToS does not incorporate the *How Our Business Works* webpage that states Google does not sell personal information.  (MTD at 9–10.)  Plaintiffs recognize that a mere hyperlink is not enough for incorporation, (Opp. at 7), but that is all the ToS does with the webpage.  (CAC Ex. 4.)  Unlike the document in *In re Facebook, Inc., Consumer Privacy User Profile Litigation*, 402 F. Supp. 3d 767, 791 (N.D. Cal. 2019), the ToS does not call attention to the webpage through multiple textual references.  *See Troyk v. Farmers Grp., Inc*., 171 Cal. App. 4th 1305, 1331 (2009) (incorporation requires a "clear and unequivocal" reference "called to the attention of the other party").  Unlike in *Calhoun v. Google LLC*, 526 F. Supp. 3d 605, 633 (N.D. Cal. 2021), the webpage does not contain terms of use applicable to a specific service.  It is merely informational, without any contractual commitments from users.  *See Facebook Internet Tracking*, 956 F.3d 589 at 611 (Facebook's 2011 Data Use Policy "merely provides information—not commitments—regarding Facebook's use of information" and was not contractual because "the document does not require the user to make any commitment"); (*see* CAC Ex. 5).

Plaintiffs argue that, because Google seeks judicial notice of pages hyperlinked in the ToS for this motion (Dkt. No. 93-1, Saldaña Decl. Exs. B–E), the Court must find that the ToS contractually incorporates the *How Our Business Works* webpage.  (Opp. at 7.)  Not so.  Google seeks notice of hyperlinked Ad Settings pages because **the CAC incorporates them**; Plaintiffs cannot ignore portions of the set of documents on which they rely.  The rules for judicial notice in

1    motions do not make these pages or any document merely hyperlinked contractually binding.[3]

2                    **2.      Plaintiffs Have Not Plausibly Alleged a Breach of the Privacy Policy.**

3            Plaintiffs fail to state a breach of contract claim under the Privacy Policy when it was

4    contractual.  Plaintiffs concede that the contract consisted of the ToS and Privacy Policy before

5    March 31, 2020, at which point the ToS excluded the Policy.[4]  (Opp. at 6; CAC Exs. 2–4, 6–15.)

6                    **a.      Plaintiffs Fail to Allege Whether They Opted Out of Targeted Ads.**

7            Plaintiffs allege that personal information is shared to allow RTB participants to target ads

8    in breach of a purported promise not to share personal information.  (CAC ¶¶ 1, 6, 116, 134, 344.)

9    Yet, the Privacy Policy disclosed that users could use Ad Settings to "choose whether your personal

10   information is used to make ads more relevant to you." (CAC Ex. 15 at 8, Ex. 13 at 8.)  No Plaintiff

11   alleges anything about their use of these settings.  Instead, they dismiss them as "irrelevant,"

12   asserting that a reasonable Account Holder understands Ad Settings to concern Google's "internal

13   use" of data and that any information shared externally would not include personal information "as

14   defined by California law." (Opp. at 8.)  The CAC does not allege this.  These assertions are also

15   wrong.   The Policy explains that Ad Settings allows an Account Holder to "[m]anage your

16   preferences about the ads shown to you on Google and *on sites and apps that partner with Google*

17   *to show ads*." (CAC Ex. 15 at 8 (emphasis added).)  The Policy defines "partner with Google" and

18   states that "[t]here are over 2 million non-Google websites and apps that partner with Google." (*Id.*

19   at 24.)  Thus, Ad Settings do not solely concern internal use of data.  Moreover, as explained *infra*

20   II.B.2.c, the Policy does not apply California's definition of personal information.

21                   **b.      Google's Personal Information Definition Defeats Plaintiffs' Claim.**

22           "California contract law treats a defined contract term according to the definition set forth

---

[3] Attempting to evade Google's argument that the only purported promise not to "sell" personal information that the CAC alleges is in a non-contractual webpage added on March 31, 2020, Plaintiffs now argue that, before March 31, 2020, the Privacy Policy's statements about sharing personal information "contained within it" a promise not to sell that information. (Opp. at 6.)  The CAC, which repeatedly differentiates sharing from selling, does not allege this, and Plaintiffs cannot conflate the terms now.  "[T]he complaint may not be amended by briefs in opposition to a motion to dismiss." *Tietsworth v. Sears*, 720 F. Supp. 2d 1123, 1145 (N.D. Cal. 2010).

[4] Plaintiffs assert that Google relies on the Privacy Policy while also arguing that the Policy is not part of the contract. (Opp. at 9.)  Plaintiffs are demonstrably wrong.  As to breach of contract, Google relies on a version of the Policy in effect ***before*** March 31, 2020.  (MTD at 11–13 (citing CAC Ex. 15).)  As to other claims, non-contractual disclosures are also relevant.

1    in the contract." *Pemberton v. Nationstar Mortg. LLC*, 331 F. Supp. 3d 1018, 1038 (S.D. Cal.

2    2018) (emphasis omitted).   As explained, (MTD at 11–12), the Privacy Policy defines personal

3    information as ***information that a user provides***, such as name, email address, or billing

4    information.   (CAC ¶ 87, Ex. 15 at 28.)   The Policy differentiates that type of data from the

5    ***information that Google collects***, such as unique identifiers, browser type, device type, IP address,

6    and location information.  (*Id*. Ex. 15 at 2–4.)  Plaintiffs argue that Google "writes out the broader

7    category of 'other data' which can be 'reasonably linked to *such information*' such as name, email

8    address or billing information."  (Opp. at 8.)  Plaintiffs misunderstand.  Google's argument is that

9    grammar requires the "other data" clause to be limited to the "information that you provide to us

10   which personally identifies you." (MTD at 11–12.)  The Policy discusses such data separately from

11   the routine information that Google collects.  (*Id*. at 12.)  Plaintiffs never point to any specific

12   allegation that Google can reasonably link the information allegedly shared in RTB with their name,

13   email address, or billing information.  None of their cited "specific allegations" assert that Google

14   can reasonably link Account Holders' IP address, user-agent, device ids, or geo-location with their

15   name, email address, or billing information.  (*See* CAC ¶¶ 213, 222, 230, 236.)  Plaintiffs further

16   complain that, under Google's reading, the Policy's definition excludes the data shared in RTB and

17   amounts to only a promise not to share personally identify***ing*** information.  (Opp. at 9.)  This

18   confusing distinction appears nowhere in the CAC and does not cure Plaintiffs' pleading failure.

19          Plaintiffs' other arguments are meritless.  First, Google did not "admit" in *Calhoun* that ***the***

20   ***data allegedly shared through RTB*** is personal information under the Privacy Policy and

21   California law.  (Opp. at 8.)  In *Calhoun*, counsel merely did not "contest" "for the purposes at least

22   of this argument, or this motion" that IP addresses linked to user agents, unique cookie identifiers,

23   unique browser identifiers and browsing history fell within the Policy's definition of personal

24   information.  (*See Calhoun*, Tr. of Feb. 18, 2021 Hr'g at 51:24–52:1, 52:19, ECF No. 114.)

25   Plaintiffs also fail to mention that, shortly after that exchange, Google's counsel further explained

26   that "the Google Privacy Policy describes [] information that does not necessarily personally

27   identify you," *i.e.*, "I.P. address plus user agent, cookies, that sort of thing," but that "if that is sent

28   to Google's servers and stored along with information that personally identifies you . . . Google

1    will treat that information as personal information because it is . . . linked to information that

2    personally identifies you." (*Id.* at 53:3-13.)  This purported admission does not even match the data

3    allegedly shared in RTB, as Plaintiffs identify different types of data at issue here, with a ***truncated***

4    IP address.  *Compare Calhoun*, 526 F. Supp. 3d at 613, *with* CAC ¶ 201; (MTD at 6, 16).  Thus,

5    no purported admission in *Calhoun* even encompasses the data here.  Second, Plaintiffs assert that

6    the data an RTB recipient receives "is enough for the recipient" to identify the Account Holder.

7    (Opp. at 9.)  This is irrelevant because the Policy's definition focuses on what Google can link, not

8    third parties.  (CAC Ex. 15 at 28.)  Thus, the Court should reject Plaintiffs' other arguments.

9                    **c.    The CCPA Definition of "Personal Information" Does Not Control.**

10    Contrary to Plaintiffs' view, (Opp. at 9), it is not "settled" that the contract incorporates the

11    CCPA's definition of personal information.  Plaintiffs offer no response at all to Google's point

12    that the ToS could not possibly have incorporated the definition prior to the CCPA's January 1,

13    2020 effective date.  As for the three months thereafter when the Privacy Policy was contractual,

14    the Policy's specific provision defining personal information controls over the ToS's general choice

15    of law provision.  *See Prouty v. Gores Tech. Grp.*, 121 Cal. App. 4th 1225, 1235 (2004); (MTD at 13).

16    The definition is distinct from the Policy's separate section concerning the CCPA.  (CAC Ex. 15 at

17    15, 28.)  The CCPA section discusses how Google handles "your information ***as described in this***

18    ***policy***." (CAC Ex. 15 at 15 (emphasis added.)  Thus, Google's definition of "personal information"

19    in the Privacy Policy should govern, and Google respectfully disagrees with *Calhoun* on this point.

20                    **C.    Plaintiffs Fail to State a Claim for Breach of the Implied Covenant.**

21    "A breach of the implied covenant of good faith and fair dealing involves something ***beyond***

22    ***the breach of the contractual duty*** itself."  *Daniels v. Alphabet Inc*., 2021 WL 1222166, at *9 (N.D.

23    Cal. Mar. 31, 2021) (emphasis added; citation omitted).  Plaintiffs contend that their claim "goes

24    beyond Google's breach of contract" because "Google broke express promises . . . that it would not

25    sell or share Account Holders' PI."  (Opp. at 10.)  But this contention proves Google's argument

26    that Plaintiffs' claim impermissibly duplicates their breach of contract claim.  (MTD at 14); *see*

27    *Integrated Storage Consulting Servs., Inc. v. NetApp, Inc.*, 2013 WL 3974537, at *8 (N.D. Cal. July

28    31, 2013) (dismissing implied covenant claim because plaintiff "merely allege[d] that by breaching

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

those contracts, Defendant also breached the implied covenant of good faith and fair dealing"). Plaintiffs further assert that they have pled a "bad faith act," *i.e.*, a "failure to inform" Account Holders of Google's "conduct in RTB." (Opp. at 10–11; CAC ¶ 368.) But Plaintiffs again identify no contractual term imposing this duty. They cannot use the implied covenant to "create obligations not contemplated in the contract." *Racine & Laramie, Ltd. v. Cal. Dep't of Parks & Recreation*, 11 Cal. App. 4th 1026, 1031–32 (1992). Because Plaintiffs impermissibly seek to either duplicate the contract claim or to impose a new, extra-contractual obligation on Google, this claim fails.

### D.   Plaintiffs Have Not Shown Invasion of Privacy or Intrusion Upon Seclusion.

#### 1.   Plaintiffs have not established their data was shared.

Plaintiffs cannot dispute their failure to establish exposure to the challenged conduct. Their only allegations about their online conduct concern which browsers they used, not whether they saw targeted ads or opted out of personalized ads. *See supra* II.A. Rote allegations that they "used" the Internet and various browsers are insufficient to show they were subject to the challenged practice. *See Zoom*, 525 F. Supp. 3d at 1036 ("Merely using a device or app repeatedly is insufficient to plead an invasion of privacy under California law."); *see also In re Google Assistant Privacy Litig.*, 457 F. Supp. 3d 797, 828–30 (N.D. Cal. 2020) (collecting cases); *iPhone App. Litig.*, 2011 WL 4403963, at *4. Plaintiffs try to distinguish *Zoom* by arguing that they need not plead additional facts to show they were subject to the challenged practices. (*See* Opp. at 5, 12 n. 6.) But the CAC does not allege facts sufficient to show exposure to, much less any privacy injury stemming from, the challenged practices. *See supra* II.A; *see also infra* II.D.2 (the vague reference in CAC ¶ 176 does not show personal information is shared through RTB even if users opt out).

#### 2.   Plaintiffs fail to plead a reasonable expectation of privacy.

Plaintiffs largely rely on *Facebook Internet Tracking* to argue they have a reasonable expectation of privacy, (*see* Opp. at 11–13), but that case does not control here. As in *Brown v. Google LLC*, 525 F. Supp. 3d 1049 (N.D. Cal. 2021) and *Calhoun*, (MTD at 18–19), the plaintiffs in *Facebook Internet Tracking* alleged they had acted affirmatively to log out and prevent the collection of their information, but Facebook thwarted this. *See Facebook Internet Tracking*, 956 F.3d at 596. The alleged collection after users logged out was key to the Court's holding. *See id.*

1   at 601–05; *see also Google Cookie*, 806 F.3d at 130 (defendants allegedly circumvented cookie

2   blockers).  Here, Plaintiffs had the means to opt out of personalized ads and to "choose whether

3   [their] personal information is used to make ads more relevant to [them]," (CAC Ex. 15 at 8), but

4   the CAC is silent on whether Plaintiffs did so or on how doing so would affect the challenged

5   conduct.  (MTD at 7–8, 14.)  Plaintiffs now suggest that opting out of personalized ads would not

6   prevent the challenged conduct, but they cite only a vague allegation about cookie matching, which

7   Plaintiffs allege allows recipients to match cookies *after* data is shared in RTB.  (Opp. at 13 (citing

8   CAC ¶ 176).)  That allegation says nothing about Plaintiffs opting out of personalized ads or

9   whether opting out would have prevented the allegedly improper sharing.  *Tietsworth*, 720 F. Supp.

10  2d at 1145 (arguments first made in an opposition brief cannot amend pleading).

11         Equally meritless, Plaintiffs attack a strawman based on a statement in *Facebook Internet*

12  *Tracking* that it is "not relevant at the pleading stage" whether "users could have taken additional

13  measures to prevent cookies," 956 F.3d at 605.  (*See* Opp. at 13.)  Google is not arguing that

14  Plaintiffs must allege additional steps they took to prevent targeted ads but rather that they must

15  allege facts sufficient to show they were subject to an unlawful practice in the first place.  (*See*

16  MTD at 14); *see also Zoom Video Commc'ns*, 525 F. Supp. 3d at 1036–38.   Plaintiffs draw an

17  analogy between the information at issue in *Brown*, *Calhoun*, and *Facebook Internet Tracking*,

18  which the defendants allegedly collected despite the plaintiffs' affirmative steps to prevent such

19  collection, and the information allegedly shared here to provide personalized ads.  These cases

20  cannot show that Plaintiffs had a reasonable expectation of privacy when they do not allege any

21  affirmative act to prevent the alleged sharing.  As the CAC's exhibits show, Google disclosed that

22  "personal information" would be used for personalized ads and users had the ability to opt out.[5]

23         For similar reasons, Plaintiffs' attempt to distinguish the cases holding that individuals do

24  not have reasonable expectations of privacy in the kinds of data allegedly shared through RTB fails

25  because those cases pre-date *Facebook Internet Tracking*.  (*See* Opp. at 13 n.7.)  Plaintiffs' attempt

26  to distinguish these cases by arguing the defendants in those cases disclosed the relevant practices

---

[5] Plaintiffs attach as exhibits three public pages and cite four others, all of which describe in detail what information is shared through RTB.  (*See* CAC ¶ 135 and Exs. 26, 27, 28.)  These documents contradict Plaintiffs' assertion that Google did not disclose the challenged conduct.

1    (*see id.*) ignores that Google also disclosed the conduct here.  (*See* MTD at 15–16.)

2        **3.    Plaintiffs have not alleged any highly offensive conduct.**

3        Plaintiffs rely almost exclusively on *Facebook Internet Tracking*, *Brown*, and *Calhoun* to

4    assert they have alleged highly offensive conduct, but they do not explain how.  As Google has

5    explained, these cases concern alleged data collection where the user took affirmative steps to stop

6    collection.  *E.g.*, *Facebook Internet Tracking*, 956 F.3d at 606.  Conversely, here, Plaintiffs cannot

7    deny that Google disclosed the challenged conduct and that they had the means to opt out, but do

8    not allege whether they did.  Alleged statements by individuals and entities who are not parties to

9    this case (*see* Opp. at 14) do not permit Plaintiffs to spin "surreptitious" conduct out of whole cloth.

10       **E.    Plaintiffs Have Not Stated a Claim for Publication of Private Facts.**

11       Plaintiffs fail to show the publication of their private facts through Google RTB.

12   "[A]ctionable disclosure [must] be widely published and ***not confined to a few persons or limited***

13   ***circumstances***."  *Hill v. Nat'l Collegiate Athletic Ass'n*, 7 Cal. 4th 1, 27 (1994) (emphasis added);

14   (*see also* MTD at 19).  There is no actionable ***publication*** by Google because RTB involves a

15   limited group for the limited purpose of automated auctions of ad opportunities.  (*See* MTD at 19.)

16       Plaintiffs contradict themselves in attempting to establish a publication here.  Plaintiffs

17   argue that "data is disclosed and sold to potentially hundreds of thousands of participants, if not

18   millions," citing to various portions of the CAC.  (Opp. at 15.)  But Plaintiffs conflate the large

19   numbers of website publishers that merely ***display*** RTB ads with the much smaller numbers of RTB

20   advertisers with which Plaintiffs claim Google improperly shared their personal information.  (*See*

21   Opp. at 15 (citing CAC ¶¶ 113, 129, 192–199).)  In fact, the paragraphs cited by Plaintiffs are either

22   silent on the number of RTB advertisers, (CAC ¶¶ 113, 129), or say that millions of ***publishers***

23   participate in RTB, but only hundreds of ***advertisers*** do.  (*Id.* ¶¶ 192–199; *see also id.* ¶¶ 133–134

24   (describing how bid stream data is sent to advertisers—not publishers).)  Beyond this one section

25   in which Plaintiffs grasp to show widespread sharing, Plaintiffs repeatedly assert that information

26   is only shared with "hundreds" of RTB participants.  (Opp. at 7, 18, 24.)  This disclosure to a limited

27   number of participants in limited circumstances is not "publication," especially when the disclosure

28   is for the purpose of computer analysis of ad opportunities (a point to which Plaintiffs give no

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1  response).  *Hill*, 7 Cal. 4th at 27; *see also In re Facebook, Inc.*, 402 F. Supp. 3d at 796 (noting the

2  difference between widespread disclosure to individuals and use of information in computer

3  analysis).  Plaintiffs' further attempt to rely on sensationalist allegations about third-party conduct

4  (Opp. at 15, CAC ¶¶ 27–28, 238–240) is unpersuasive because those allegations do not concern

5  conduct **by Google** and are not specifically linked to ***information shared via Google's RTB***.

6        Plaintiffs rely on their invasion of privacy and intrusion upon seclusion arguments to argue

7  that they have pled the remaining elements, but those other claims cannot help because Google

8  disclosed, and users had the ability to opt out of, personalized ads.  *See supra* II.D; (*see also* MTD

9  at 20).  Plaintiffs' only specific argument concerns the claim's private-facts element.  (*See* Opp. at

10  15.)  Yet, Plaintiffs do not explain why activity concededly disclosed to websites, including RTB

11  publishers, is private.  *See Daly v. Viacom, Inc.*, 238 F. Supp. 2d 1118, 1124–25 (N.D. Cal. 2002).

12  They implausibly suggest that information like verticals and the websites they visit is not known

13  (Opp. at 15), but the website publishers know—a point that Plaintiffs do not and cannot contest.

14        **F.**      **Plaintiffs Have Not Stated a Claim for Breach of Confidence.**

15        Plaintiffs attempt to salvage their breach of confidence claim by asserting that, although

16  they allege a breach of contract claim premised on the same promises, they may assert this claim

17  in the alternative.  (Opp. at 16.)  Plaintiffs, however, have not alleged the claim in the alternative.

18  Indeed, the breach of confidence claim incorporates the breach of contract claim (CAC ¶ 417),

19  which rests on contentions that the documents cited in the CAC constituted a contract (*id.*¶¶ 340–

20  346).  When inconsistent allegations are not pled in the alternative but are "expressly incorporated

21  into each cause of action," courts dismiss the affected claim.  *Maloney v. Scottsdale Ins. Co.*, 256

22  F. App'x 29, 31 (9th Cir. 2007); *see also U.S. Med. Instruments, Inc. v. CFS N. Am., Inc.*, 2013 WL

23  6055387, at *9 (S.D. Cal. Nov. 13, 2013) (noting "allegations of a valid contract are inconsistent

24  with the claim for 'money had and received'" and dismissing that claim where it incorporated the

25  inconsistent allegations).  Plaintiffs also accuse Google of contradicting itself, (*see* Opp. at 16–17),

26  but any tension in Google's position stems from Plaintiffs' inartful pleading.  Google's position is

27  simple: to the extent the various statements and documents cited by Plaintiffs constitute a contract,

28

1  those same documents cannot support their breach of confidence claim.[6]  (*See* MTD at 20–21.)

2      On the merits, Plaintiffs fail to show that they have pled a breach of confidence.  Plaintiffs

3  assert that the totality of their personal information qualifies as "novel."  (Opp. at 18.)  That is

4  wrong and untethered to the caselaw.  While the breach of confidence doctrine is not coextensive

5  with trade secret and copyright law, it is similarly used to protect competitive business information.

6  *Balboa Ins. Co. v. Trans Global Equities*, 218 Cal. App. 3d 1327, 1344–45 (1990) (describing

7  breach of confidence as an "unfair competition theor[y]"); *Tele-Count Eng'rs, Inc. v. Pac. Tel. &*

8  *Tel. Co.*, 168 Cal. App. 3d 455, 462-63 (1985) (comparing copyright and trade secret doctrine to

9  breach of confidence doctrine).  Thus, what is novel is not the information allegedly at issue, but

10  rather Plaintiffs' bald attempt to expand a state law cause of action to encompass the "totality" of

11  personal information without a single court precedent doing so.  Plaintiffs assert that *Balboa* shows

12  combinations of stale information can be confidential, but that case concerned various ***business***

13  ***trade secrets***—not alleged personal information.  *See* 218 Cal. App. 3d at 1343–44.

14      Plaintiffs have also failed to show the separate elements under this cause of action that "the

15  defendant had knowledge that the information was being disclosed in confidence" and "there was

16  an understanding between [the parties] that the confidence be maintained."  *Berkla v. Corel Corp.*,

17  302 F.3d 909, 917 (9th Cir. 2002).  Plaintiffs cannot plead these elements because Google disclosed

18  and gave individuals the ability to opt out of personalized ads.  (*See* MTD at 21–22.)  Plaintiffs'

19  accusation that Google adds an element to this cause of action (Opp. at 19 n.14) is simply wrong

20  because Google's argument tracks the cause's elements.  Thus, the Court should dismiss this claim.

21      **G.**    **Plaintiffs' WTA Claim Fails.**

22      **1.**    **Plaintiffs Do Not Allege Interception of Any "Contents."**

23      Plaintiffs argue that the WTA applies because the statute defines "contents" broadly and

24  Google's developer documentation labels certain fields as "contents."  (Opp. at 20–21.)  This

25  misses the mark.  The "contents" of a communication under 18 U.S.C. § 2510(8) is limited to "the

26  intended message conveyed by the communication."  *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1106

---

[6] Plaintiffs' attempt to escape this principle by claiming they only rely on the same nucleus of operative facts (Opp. at 17) fails here because the breach of confidence and breach of contract claims are, in fact, predicated on the same "express promises."  (CAC ¶¶ 417, 420.)

1   (9th Cir. 2014) ("Congress intended the word 'contents' to mean a person's intended message to

2   another.").  The Opposition lists a litany of allegedly disclosed categories of content but GET and

3   POST requests are the only information that the CAC ***actually*** alleges is intercepted.  (CAC ¶

4   446(a) & (c).)  Plaintiffs do not explain how these qualify as "contents," because they

5   cannot.  (*Id.* ¶ 446(a) & (c).)  GET and POST requests are the very type of "record" information

6   that *Zynga* and *Gonzalez* found do not qualify as contents because "simply opening a webpage or

7   mobile application is not a communication with content."  *Gonzales v. Uber Tech., Inc.*, 305 F.

8   Supp. 3d 1078, 1086 (N.D. Cal. 2018).[7]  Strikingly, Plaintiffs do not address these cases.

9      While Plaintiffs argue that "some queried URLs qualify as content," (Opp. at 21), the CAC

10  only specifically alleges that Google disclosed "[t]he precise text of GET and POST requests,"

11  which *Zynga* teaches is insufficient.  750 F.3d at 1104, 1107; (CAC ¶ 446(a)).  As discussed,

12  Plaintiffs allege nothing about any webpage they visited that they contend displayed RTB ads,

13  much less the URLs of such pages.  Plaintiffs argue that no "court has ever ruled that

14  communications as detailed as those alleged here are not 'content.'"  (Opp. at 21.)  But what is

15  relevant here at the motion to dismiss stage is the converse, *i.e.*, that no court has held that the

16  automatically generated fields Plaintiffs allege are contents.

17     Plaintiffs try to save their WTA claim by arguing that Google's use of the word "contents"

18  to describe certain data allegedly used in RTB precludes Google from arguing that the WTA does

19  not apply.  But that "usage is irrelevant here[] because the operative phrase is statutorily defined."

20  *Rodriguez v. Hatton*, 2017 WL 931876, at *7 (E.D. Cal. Mar. 9, 2017) ("[C]ommon usage is

21  irrelevant here[] because the operative phrase is statutorily defined.").  What matters is whether the

22  data qualify as "contents" under that definition, not the label attached by a private party.

23     Moreover, Plaintiffs do not allege interception of this information.  Instead, they vaguely

24  plead it is somehow "redirect[ed] to other companies in the Google RTB process."  (CAC ¶ 449.)

25  Thus, Plaintiffs fail to meet a second and separate statutory requirement.  *See Gonzales*, 305 F.

26

27  [7] Plaintiffs argue that *Facebook Internet Tracking* cabined *Zynga* and this Court should disregard it.  (Opp. at 20.)  That is wrong.  *Facebook Internet Tracking* never addressed whether URLs are the contents of communication under the WTA because "those issues [were] not presented on

28  appeal."  *Facebook Internet Tracking*, 956 F.3d at 608.  The decision found only that Facebook could not claim the party exception to the WTA.  *Id.*  Thus, *Facebook Tracking* is inapposite.

1  Supp. 3d at 1086–87 (dismissing WTA claim for failure to allege interception).

2  **2.    Any Disclosure Occurred with Publishers' Consent.**

3  The consent of any one party to a communication "is a complete defense to a Wiretap Act

4  claim." *In re Yahoo Mail Litig*, 7 F. Supp. 3d 1016, 1026 (N.D. Cal. 2014) (Koh, J.).  Plaintiffs

5  concede that website publishers are the intended recipient of the alleged communications.  (Opp.

6  at 22–23.)  Similarly, Plaintiffs do not contest alleging that publishers must install Google's code

7  on their websites or utilize its software development kits in order to use RTB.  Plaintiffs' attempts

8  to minimize these dispositive concessions are meritless; publisher consent precludes WTA liability.

9  First, Plaintiffs argue that because Google required certain Google Account holders in this

10  action and *Calhoun* to follow certain procedures to obtain consent under the Stored

11  Communications Act before producing their information in civil discovery, Google must use the

12  same procedures to obtain valid consent under the WTA.  (Opp. at 22.)  This does not follow.

13  Consent is context dependent and may be express or implied. *In re Google Inc*., 2013 WL 5423918,

14  at *12 (N.D. Cal. Sept. 26, 2013) (Koh, J.) (finding that "consent is not an all-or-nothing

15  proposition" and that the scope of consent depends on the context).  That Google required—with

16  court approval—one means of express consent for civil discovery does not alter the jurisprudence

17  of consent under the WTA, nor preclude finding consent here.  "The critical question with respect

18  to implied consent is whether the parties whose communications were intercepted had adequate

19  notice of the interception[," *id.* at *12, not whether Google followed certain procedures before

20  preserving and producing information is civil discovery.  The CAC shows that publishers knew of

21  and authorized the process by which RTB ads were shown.  Nothing more is necessary.

22  Second, Plaintiffs repeatedly argue that publisher consent turns on Google's promise to

23  abide by its Privacy Policy and that, in allegedly breaking that promise, Google could not have

24  obtained valid consent.  (Opp. at 23.)  As discussed *supra* II.B, Plaintiffs fail to plead any breach

25  of the Privacy Policy.  Thus, this argument fails on its own terms and cannot preclude publisher

26  consent.  Moreover, Plaintiffs never pled in the CAC that publisher consent depended on Google's

27

28

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

14

1    adherence to the Privacy Policy as to users.[8]  *See Tietsworth*, 720 F. Supp. 2d at 1145.

2        Third, Plaintiffs rely on *In re Pharmatrak, Inc.*, 329 F.3d 9 (1st Cir. 2003), to argue that

3    "consent to interception can [not] be inferred from the mere purchase of a service, regardless of

4    circumstance." (Opp. at 23.)  Yet, *Pharmatrak* distinguished its holding from the scenario here

5    where the "very purpose [of the interception] was announced by [Defendants] publicly, as well as

6    being self-evident." *Pharmatrak*, 329 F.3d at 20.  The clients in *Pharmatrak* "insisted there be no

7    collection of personal data and the circumstances permit no reasonable inference that they did

8    consent." *Id.*  But here, publisher consent is self-evident.  Publishers configured their websites to

9    aid the alleged "interception" by allegedly installing Google's code to sell targeted ads that rely on

10   certain information.  (CAC ¶¶ 125, 127, 128.)  Publishers' consent defeats WTA liability.

11        **H.    Plaintiffs' CIPA Claims Are Limited to California.**

12        Plaintiffs attempt to save their CIPA claim by advancing the uncontroversial proposition

13   that CIPA applies to non-California residents.  (Opp. at 24.)[9]  Google did not contest that.  Plaintiffs

14   ignore, however, that their allegations do not show interception of the Non-California Plaintiffs'

15   communications while in transit or while being sent or received "within this state."  Cal. Penal

16   Code § 631(a).  Plaintiffs make no allegations about any RTB recipient or publisher's location in

17   or connection to California.  Plaintiffs cannot evade CIPA's statutory geographic requirement by

18   asking this Court to assume from mere allegations about the number of RTB recipients or publishers

19   that some unknown recipient or publisher in an unknown location allegedly intercepted each Non-

20   California Plaintiff's communications and is also located in California.  Because the Non-California

21   Plaintiffs fail to plead an essential element, the Court must dismiss their CIPA claims.

22   **III.    CONCLUSION**

23        For the foregoing reasons, the Court should dismiss that CAC for lack of standing or, in the

24   alternative, dismiss all of Plaintiffs' causes of action for failure to state a claim.

25   ─────────────────

26   [8] Regardless, the Privacy Policy explicitly disclosed the allegedly "surreptitious" conduct.  (*E.g.*, CAC Ex. 15 at 8, Ex. 13 at 8.)  This suffices to establish user consent.  *See Garcia v. Enter. Holdings, Inc.*, 78 F. Supp. 3d 1125, 1136 (N.D. Cal. 2015) ("The Privacy Policy expressly states that 'we may share your personal information with our . . . service provider' "); *In re Facebook, Inc.*, 402 F. Supp. 3d at 792–93  (terms "flagged for users the possibility that other people 'may share' their information 'with applications'").

27

28

[9] Plaintiffs concede that the CIPA claim falls without contents of communications.  (Opp. at 24.)

1

Dated: November 19, 2021

COOLEY LLP
MICHAEL G. RHODES
JEFFREY M. GUTKIN
KYLE WONG
ROBBY L.R. SALDAÑA
KELSEY R. SPECTOR
COLIN S. SCOTT

2

3

4

5

6

By: /s/ Jeffrey M. Gutkin

7

Jeffrey M. Gutkin

8

Attorneys for Defendant
GOOGLE LLC

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

16