**PRITZKER LEVINE LLP**
Elizabeth C. Pritzker (Cal. Bar No. 146267)
Bethany Caracuzzo (Cal. Bar No. 190687)
Jonathan K. Levine (Cal Bar No. 220289)
Caroline C. Corbitt (Cal Bar No. 305492)
1900 Powell Street, Suite 450
Emeryville, CA 94608
Tel.: (415) 692-0772
Fax: (415) 366-6110
*ecp@pritzkerlevine.com*
*jkl@pritzkerlevine.com*
*bc@pritzkerlevine.com*
*ccc@pritzkerlevine.com*

*Interim Class Counsel for Plaintiffs*

*Additional counsel listed on signature page*

**COOLEY LLP**
MICHAEL G. RHODES (SBN 116127)
(rhodesmg@cooley.com)
JEFFREY M. GUTKIN (SBN 216083)
(jgutkin@cooley.com)
KYLE WONG (SBN 224021)
kwong@cooley.com
KELSEY R. SPECTOR (SBN 321488)
(kspector@cooley.com)
COLIN S. SCOTT (SBN 318555)
(cscott@cooley.com)
101 California Street, 5th Floor
San Francisco, California  94111-5800
Telephone:    (415) 693 2000
Facsimile:    (415) 693 2222

ROBBY L.R. SALDAÑA (*pro hac vice*)
(rsaldana@cooley.com)
1299 Pennsylvania Avenue, NW
Suite 700
Washington, DC 20004-2400
Telephone:    +1 202 776 2109
Facsimile:    +1 202 842 7899


*Attorneys for Defendant*
*GOOGLE LLC*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN JOSE DIVISION

*In re Google RTB Consumer Privacy Litigation*

This Document Relates To:

All Actions

Case No. 5:21-cv-02155-LHK-VKD

**[PROPOSED] STIPULATED ORDER RE: DISCOVERY OF ELECTRONICALLY STORED INFORMATION**

**REFERRAL**: Hon. Virginia K. DeMarchi

**1.     PURPOSE**

This Order will govern discovery of electronically stored information ("ESI") in this case as a supplement to the Federal Rules of Civil Procedure, this Court's Guidelines for the Discovery of Electronically Stored Information, and any other applicable orders and rules. As used in this Order, the term "Party" refers to both Google, Inc. ("Google") and the Plaintiffs in this consolidated case (collectively "Parties").

**2.     COOPERATION**

This Stipulated Order will govern the conduct of discovery of hard copy and electronically stored information ("ESI") as a supplement to the Federal Rules of Civil Procedure, this Court's Guidelines for the Discovery of Electronically Stored Information, and any other applicable orders and rules.

The parties are aware of the importance the Court places on cooperation and commit to cooperate in good faith throughout the matter consistent with this Court's Guidelines for the Discovery of ESI.

**3.     PROPORTIONALITY**

Parties are expected to use reasonable, good faith and proportional efforts to preserve, collect, search, review and produce relevant information consistent with Fed. R. Civ. P. 26(b)(1). This includes cooperation in identifying an appropriate scope of discovery, including number of custodians, identification of relevant subject matter, time periods for discovery and other parameters to guide discovery, including preservation and production.

**4.     LIAISON**

a)     The parties have identified liaisons to each other who are and will be knowledgeable about and responsible for discussing their respective ESI. Each e-discovery liaison will be, or have access to those who are, knowledgeable about the technical aspects of e-discovery, including the location, nature, accessibility, format, collection, search methodologies, and production of ESI in this matter. The parties will rely on the liaisons, as needed, to confer about ESI and to help resolve disputes without court intervention.

b)     Google appoints Robby Saldaña, Esq. as its e-discovery liaison.

{PROPOSED} STIPULATED ORDER RE
DISCOVERY OF ESI
CASE NO. 5:21-CV-02155-LHK

1    c)    Plaintiffs appoint Anne Davis, Esq. as their e-discovery liaison.

2  **5.    PRESERVATION**

3    The parties have discussed their preservation obligations and needs and agree that

4  preservation of potentially relevant ESI will be reasonable and proportionate. To reduce the costs

5  and burdens of preservation and to ensure proper ESI is preserved, the parties agree that:

6    a)    Only ESI created or received between March 26, 2016 and the present will be

7  preserved. The parties reserve the right to meet and confer in good faith if a party believes that

8  certain relevant documents may exist outside of the date range;

9    b)    These data sources are not reasonably accessible because of undue burden or cost

10  pursuant to Fed. R. Civ. P. 26(b)(2)(B) and ESI from these sources will be preserved but not

11  searched, reviewed, or produced nothing in this paragraph modifies a producing party's obligation

12  to preserve or produce relevant ESI under Fed. R. Civ. P. 26:

13    1.  backup systems and/or tapes used for disaster recovery; and

14    2.  systems no longer in use that cannot be accessed;

15    c)    As soon as practicable or within 14 days of the court entering the ESI Protocol, at

16  the latest, the parties agree to meet and confer regarding additional types or sources of ESI that

17  need not be preserved, searched or collected;

18    d)    In addition to the agreements above, the parties agree to meet and confer regarding

19  other data that (a) could contain relevant information but (b) under the proportionality factors,

20  should not be preserved.

21  **6.    SEARCH METHODOLOGIES AND PROTOCOL**

22    a)    The parties agree that before completing the collection and review of custodial

23  documents in response to a Fed. R. Civ. P. 34 request, they will meet and confer about methods to

24  search ESI in order to identify ESI that is subject to production in discovery and filter out ESI that

25  is not subject to discovery.

26    b)    **Search Methodology for Custodial Sources of ESI:**  The parties recognize that a

27  variety of search tools and methodologies, including but not limited to technology assisted review

28  ("TAR") tools, exist.  A party using TAR to exclude documents from review for production will

{PROPOSED} STIPULATED ORDER RE
DISCOVERY OF ESI
CASE NO. 5:21-CV-02155-LHK

inform the other party.  If requested, the parties will meet and confer to discuss the process and validation steps.

c) **Custodial and Non-Custodial Document Sources and Search Terms.**  The Party responding to requests for the production of documents (the "Responding Party") shall share with the Party that served the requests (the "Requesting Party") the custodial and non-custodial sources and third-party sources (under the Responding Party's control), the Responding Party intends to search for responsive documents (to the extent such sources have been identified at the time of the exchange through reasonable diligence).  The Responding Party will provide the job title, dates of employment (if reasonably accessible following diligent inquiry and search), and a brief description of job responsibilities of the individual custodians it proposes to search and a general description of the expected content of the non-custodial sources.  If the Responding Party intends to use electronic search terms to locate the documents it will review for possible production from a larger set of documents (e.g., custodial email files, custodial or non-custodial electronic document sets, etc.), the Responding Party will share those search terms with the Requesting Party.  The Responding Party will use its reasonable judgment about what sources and search terms are appropriate to locate the documents it will produce in response to the Requesting Party's document requests, as required by the Federal Rules.  The Requesting Party may, at its option and in a reasonably timely manner following the Responding Party's corresponding disclosure, propose additional individual custodians, non-custodial sources, or search terms for inclusion in the Responding Party's searches, which the Requesting Party reasonably and in good faith contends are necessary and proportional.  The Responding Party will also agree to engage in reasonable meet and confer regarding its proposed search terms and the additional search terms or sources proposed by the Requesting Party.  The Responding Party will consider such additions in good faith, being guided by relevance, burden, and proportionality considerations.  For search terms proposed by the Requesting Party that remain the subject of a good faith dispute following meet and confer, the Parties agree to use search term hit lists or hit count reports, where they are reasonably available and reasonable in scope, to guide the conversations of burden.

If necessary, the Parties may bring disputes that they cannot cooperatively resolve to this Court for resolution, consistent with the requirements of this Court's standing order.  The Parties shall make all reasonable attempts to resolve their disputes without Court intervention and are discouraged from bringing numerous or factually unsubstantiated disputes to the Court.  Nothing in this paragraph will be interpreted to prevent the Responding Party from commencing its review of documents for production while the Parties negotiate over potential additional custodians, search terms, or non-custodial sources of responsive information.

d)      Each party will use its best efforts to filter out common system files and application executable files by using a commercially reasonable hash identification process. Hash values that may be filtered out during this process are located in the National Software Reference Library ("NSRL") NIST hash set list. Additional culling of file types based on file header information may include: Application Package File, Batch Files, Binary Disc Image, C++ File Formats, Configuration File, Compiled Dynamic Link Library, Compiled Executable Files, Hypertext Cascading Stylesheet, Macintosh Resource Fork Files, Package Manager Files, Program Installers, Python Script Files, Shell Script Files, System or Temporary Files, Thumbnail Cache Files, Troff Files, TrueType Font Files, Windows Cabinet File, Windows Command Files, Windows File Shortcut, Windows Help Files, Windows Metafiles and Enhanced Metafiles, Windows Spool Files, Windows System File.

e)      **De-duplication**.  The Parties will make reasonable efforts to de-duplicate ESI documents globally through MD5 Hash or SourceHash and enter all unique names in the DE-DUPED CUSTODIAN metadata field prior to production. The Parties will meet and confer about whether additional methods of de-duplication across various sets of documents will reduce both Parties' burden to review and produce data. Notwithstanding the foregoing, attachments to emails shall not be eliminated from the parent email because they are duplicative of a document or email attachment elsewhere in the production.

f)      **Email Threading.**   A party may de-duplicate responsive ESI across Custodians through MD5 hash or SourceHash. Emails in an email thread that are collected and de-duplicated shall be produced individually as separate documents. The parties agree that email threading may

be employed for production of email threads with redactions. The parties retain the right to request production of earlier-in-thread versions of any last-in-thread, redacted documents that are produced.

**7.      PRODUCTION FORMATS**

a)      Appendix A sets forth technical specifications that the parties propose to govern the form of production of documents in this litigation, absent agreement by the parties or order by the Court.

b)      Among other things, the proposed technical specifications incorporate the directive of Fed. R. Civ. P. 34(b)(2)(E)(iii) and provide that a party need not produce ESI in more than one form, unless otherwise agreed to in limited circumstances (as contemplated in the technical specifications).

c)      The parties agree to produce Documents in file formats as set forth in Appendix A. If particular Documents warrant a different format, the parties will cooperate to arrange for the mutually acceptable production of such Documents. The parties agree not to degrade the searchability of Documents as part of the Document production process. The parties agree to meet and confer in good faith to address any issues that may arise in this regard, and to seek judicial intervention only if their efforts to resolve the issues on an informal basis are unsuccessful.

d)      The parties also recognize that certain information to be produced in discovery may reside in proprietary systems and formats that may warrant production in an alternative format or require additional metadata or database fields not set forth in Appendix A. To the extent this possibility eventuates, the parties will meet and confer to reach agreement about a form of production that produces the information as kept in the usual course of business and will seek Court intervention only if necessary.

e)      Deduplication of ESI is expected and the parties have and will continue to meet and confer in good faith regarding the terms and conditions of deduplication; however, in any event, deduplication will only apply to exact duplicates (as determined by matching a document or document family's MD5 or SHA-1 hash values) in a given production, and is subject to the parties' good faith agreement to provide the requesting party with information about other custodians who

**[PROPOSED] STIPULATED ORDER RE
DISCOVERY OF ESI
CASE NO. 5:21-CV-02155-LHK**

possessed any specific ESI that would be available from that production but for the deduplication. This information must be provided in the "DE-DUPED CUSTODIANS" metadata field as particularized in Appendix A. The deduplication of email must not break apart families, and the full email header including the blind copy field (bcc) must be included when generating hash values.

f)      A party may de-duplicate responsive ESI across Custodians through MD5 hash or SourceHash. The parties retain the right to make reasonable requests for production of earlier-in-thread versions of any last-in-thread, redacted documents that are produced. A party may also de-duplicate email threads and attachments as follows: In an email thread, only the most evolved responsive email in a thread will be produced. Where an earlier-in-thread email has a responsive attachment not contained within the most evolved responsive email, the most evolved earlier-in-thread email containing the attachment will also be produced along with its attachment.

**8.     PHASING**

When a party propounds discovery requests pursuant to Fed. R. Civ. P. 34, the parties agree to meet and confer regarding the phasing of production of ESI, if appropriate, by prioritizing selected sources and/or custodians.

**9.     DOCUMENTS PROTECTED FROM DISCOVERY / PRIVILEGE LOGS**

(a)     Communications involving outside counsel and Designated House Counsel, as defined by the Stipulated Protective Order in this matter (ECF No. 59), that post-date the filing of the complaint need not be placed on a privilege log. Communications may be identified on a privilege log by category, rather than individually, if appropriate.

(b)     Nothing in this Agreement shall be interpreted to require disclosure of irrelevant information or relevant information protected by the attorney-client privilege, work-product doctrine, or any other applicable privilege or immunity; provided, however, that no redactions shall be made based on the basis of relevance as a matter of course except as outlined in Section 11 of the Appendix. The parties do not waive any objections to the production, discoverability, admissibility, or confidentiality of documents and ESI.

**[PROPOSED] STIPULATED ORDER RE DISCOVERY OF ESI**
**CASE NO. 5:21-CV-02155-LHK**

(c)     Where a document is withheld from production entirely or in part by redaction because of attorney client privilege or work product, the producing Party will produce a privilege log in an Excel file allowing text searching and organization of data. The privilege log must identify the date, author, and recipient(s) (where such information is electronically extractable from the relevant document), as well as the production number of each redacted document or a privilege log entry number for each withheld document, and state the basis for withholding or redacting the document. A producing Party will attempt to produce a separate privilege log for each production within 60 days after the production of documents for which a privilege is asserted, where reasonably possible.

(d) A Producing Party may, in limited situations, redact irrelevant information from a document it produces that is: (i) highly personal, non-public, information concerning a Party, Party employee, or other individual customer or third party or (ii) likely to cause economic harm or significant competitive disadvantage to the Producing Party relating to: (a) unannounced products or (b) competitively sensitive and highly confidential business or strategic plans unrelated to the disputed issues in this action.  In such circumstances, in the transmittal letter accompanying the production, the Producing Party shall identify by bates number any document in which a relevancy redaction is made. The Parties agree that the rights granted by this provision shall be used only when called for, and each Party reserves the right to challenge such redactions.

**10.    MODIFICATION**

This Stipulated Order may be modified by a Stipulated Order of the parties or by the Court for good cause shown. Any such modified Stipulated Order will be titled sequentially as follows, "First Modified Stipulated Order re: Discovery of Electronically Stored Information for Standard Litigation," and each modified Stipulated Order will supersede the previous Stipulated Order.

**APPENDIX A**
**PRODUCTION FORMAT AND METADATA**

1. **Production Components.** Productions shall include, single page TIFFs, Text Files, an ASCII delimited metadata file (.dat format) and an image load file (.opt format as specified in paragraph 2 below) that can be loaded into commercially acceptable production software (e.g., Relativity).

2. **Image Load File** shall contain the following comma-delimited fields:  BEGBATES, VOLUME, IMAGE FILE PATH, DOCUMENT BREAK, FOLDER BREAK, BOX BREAK, PAGE COUNT.

3. **Metadata Fields and Metadata File.**[1] Each of the metadata and coding fields set forth below that can be extracted shall be produced for each document. The parties are not obligated to populate manually any of the fields below if such fields cannot be extracted from a document, with the exception of the following: BEGBATES, ENDBATES, BEGATTACH, ENDATTACH, and CUSTODIAN.  The metadata file shall be delimited according to the following characters:
   - Delimiter = ¶ (ASCII:020)
   - Text-Qualifier = þ (ASCII:254)
   - New Line = ® (ASCII:174)
   - Multi-value delimiter - ; (ASCII Code 059)

| Field Name | Field Description |
|---|---|
| BEGBATES | Beginning Bates number as stamped on the production image |
| ENDBATES | Ending Bates number as stamped on the production image |
| BEGATTACH | First production Bates number of the first document in a family |
| ENDATTACH | Last production Bates number of the last document in a family |
| | |
| CUSTODIAN | Includes the Individual (Custodian) from whom the documents originated. |
| HASH | MD5 Hash Value |
| ATTACHNAME | The file name(s) of the attachment(s) to a parent document (s). Separated by a semicolon. |

---

[1] The parties reserve the right to request that additional metadata fields as discovery progresses.

| Field Name | Field Description |
|---|---|
| EMAIL SUBJECT | Subject line of email |
| TITLE | Any value populated in the Title field of the document properties |
| DATESENT | Date and time email was sent (format: MM/DD/YYYY HH:MM) |
| DATERECEIVED | Date Received & Time (format:  MM/DD/YYYY HH:MM) |
| TO | All recipients that were included on the "To" line of message |
| FROM | The name and email address of the sender of message |
| CC | All recipients that were included on the "CC" line of the message |
| BCC | All recipients that were included on the "BCC" line of message |
| OWNER | Any value populated in the Owner field of the document properties |
| ITEM TYPE | Identifies whether the file is an email, attachment to the email or loose edoc |
| TITLE | Any value populated in the Title field of the document properties |
| AUTHOR | Any value populated in the Author field of the document properties |
| CONFIDENTIALITY | Identifies the confidential designation as applied in accordance with protective order on file in this Action |
| DRIVEAUTHOR | Google Drive document "Owner" |
| PAGECOUNT | The number of pages of the Document, excluding the pages of documents in the same family |
| FILENAME | Original file name |
| FILEPATH | Original file path to the file or e-mailbox folder structure |
| FILEEXTENSION | Indicates file extension of source native file (e.g., .msg, .doc, .xls, etc.) |

| Field Name | Field Description |
|---|---|
| MESSAGE ID | The Unique Identifier assigned by a program to a Message/Communication |
| PRODUCTION VOLUME | Name of the production volume |
| DATEMOD | Date an electronic document was last modified (format: MM/DD/YYYY) (Edoc or attachment) |
| DATECREATED | Date the document was created (format: MM/DD/YYYY) (Edoc or attachment) |
| NATIVELINK | Native File Link (Native Files only) |
| TEXTLINK | Link to text files |
| REDACTION FLAG | When document contains redactions, field will be populated "Yes" |
| DE-DUPED CUSTODIANS | All Individual(s) whose documents de-duplicated out (De-Duped Custodian) through exact match HASH value. |
| DUPLICATE FILEPATH | Folder locations of documents by held by other custodians whose copy of the document was not produced based on exact match HASH value de-duplication. Folder names shall be delimited by semicolons and include originating custodian name. |
| DUPLICATE MAILFOLDERS | Original file names of e-mail duplicates within the PST/OST; separated by semicolons. |
| DUPLICATE FILENAMES | Original file names of the unproduced deduplicated documents. Multiple values separated by semicolons. |

4. **Processing.** ESI items shall be processed in a manner that preserves the source native file and all of the above-referenced metadata without modification, including their existing time, date and time-zone metadata consistent with the requirements provided in this Order. ESI items shall be produced with all of the metadata and coding fields set forth above.

a) Time Zone. ESI items shall be processed so as to preserve and display the date/time shown in the Document. ESI items shall be processed to reflect the date and time standardized to a single time zone for all productions by a party, that time zone shall be Universal Coordinated Time (UTC), and shall be consistent across each party's productions. The parties understand and acknowledge that such standardization affects only metadata values and does not affect, among other things, dates and times

that are hardcoded text within a file. Dates and times that are hard-coded text within a file (for example, in an e-mail thread, dates and times of earlier messages that were converted to body text when subsequently replied to or forwarded; and in any file type, dates and times that are typed as such by users) will be produced in accordance with the formats set forth in this Protocol.

b) Hidden Content. ESI items shall be processed in a manner that preserves hidden columns or rows, hidden text or worksheets, speaker notes, tracked changes, comments, and other rich data (including, but not limited to strikethrough text, etc.) as displayed in the Document to the extent reasonably and technically possible.

5. **Email Families.** Parent-child relationships (the association between an attachment and its parent email, which are referred to as "families") that have been maintained in the ordinary course of business must be preserved. The Producing Party will make reasonable efforts to produce responsive families together unless one or more members of the family are privileged, and in that case, the family will be Bates numbered with a placeholder for the withheld privileged document and the removed document will be logged on the Privilege Log.

6. **Hard Copy Documents.** Documents that exist only in hard copy format shall be scanned and produced as TIFFs. Unless excepted below, documents that exist as ESI shall be converted and produced as TIFFs. Unless excepted below, single page Group IV TIFFs should be provided, at least 300 dots per inch (dpi) for all documents. Each TIFF image shall be named according to a unique corresponding Bates number associated with the document. Each image shall be branded according to the Bates number and the agreed upon confidentiality designation. Original document orientation should be maintained (i.e., portrait to portrait and landscape to landscape). TIFFs shall show all text and images that would be visible to a user of the hard copy documents. Hard copy documents shall be produced with an accompanying metadata load file as forth above.

a) Unitization of Paper Documents: Paper documents should be logically unitized for production. Therefore, when scanning or producing paper documents, documents should be scanned as they as they are kept in the regular course of business, distinct documents shall not be merged into a single file or database record, and distinct documents shall not be split into multiple files or database records. The parties will make their best efforts to unitize documents correctly.

b) File/Binder Structures (Parent-Child Unitization): Where multiple documents were organized into groups, such as folders, clipped bundles and binders, each distinct document shall be unitized, but maintained together in a parent-child relationship. The parties will make their best efforts to unitize parent-child groups correctly.

    c) <u>Identification</u>: Where a document or a document group – such as folder, clipped bundle, or binder – has an identification spine, "Post-It Note" or any other label, the information on the label shall be scanned and produced as the first page of the document or grouping.

    d) <u>Custodian Identification</u>: The parties will utilize best efforts to ensure that paper records for a particular custodian, which are included in a single production, are produced in consecutive Bates stamp order.

7. **Text Files.** A single multi-page text file shall be provided for each document, and the filename should match its respective TIFF filename. A commercially acceptable technology for optical character recognition "OCR" shall be used for all scanned, hard copy documents. When possible, the text of native files should be extracted directly from the native file. Text files will not contain the redacted portions of the documents and OCR text files will be substituted instead of extracted text files for redacted documents. All documents shall be produced with a link in the TextLink field.

8. **Image Load Files / Data Load Files.** Each TIFF in a production must be referenced in the corresponding image load file. The total number of documents referenced in a production's data load file should match the total number of designated document breaks in the Image Load file(s) in the production. The total number of pages referenced in a production's image load file should match the total number of TIFF files in the production. The total number of documents in a production should match the total number of records in the data load file.

9. **Bates Numbering.** All documents must be endorsed with sequential Bates numbers on the lower right-hand corner of all images, with any claimed confidentiality status as per the Parties' Stipulated Protective Order (the "Stipulated Protective Order") in the lower left-hand corner. The Bates Numbering and the confidentiality status will be applied in a manner that does not obliterate, conceal, obscure, or interfere with any information from the source document. Each document should be assigned a Bates number that must always: (1) be unique across the entire document production; (2) maintain a constant length of eight numeric digits (including 0-padding) across the entire production; (3) contain only alphanumeric characters, no special characters or embedded spaces; and (4) be sequential within a given document.

10. **Confidentiality Designation.** Responsive documents in TIFF format will be stamped with the appropriate confidentiality designations in accordance with the Protective Order in this matter. Each responsive document produced in native format will have its confidentiality designation identified in the filename of the native file.

11. **Redaction of Information.** If documents are produced containing redacted information,

**[PROPOSED] STIPULATED ORDER RE**
**DISCOVERY OF ESI**
**CASE NO. 5:21-CV-02155-LHK**

an electronic copy of the original, unredacted data shall be securely preserved in such a manner so as to preserve without modification, alteration or addition the content of such data including any metadata therein. Nothing in this paragraph abridges a producing party's right and/or obligation to redact sensitive personal information that is not relevant to the case, including, but not limited to, sensitive health information, social security numbers, bank information, dates of birth, etc. If any documents are redacted as outlined above, the producing party shall produce a log identifying all documents with such redactions (by bates number) and the basis for redaction (e.g., sensitive health information, etc.; confidential new product or service; or by agreement).

12. **Color.**  The parties agree to produce Documents in black and white but the Parties shall meet and confer in good faith if the Receiving Party seeks the color production of certain Documents.

13. **Native Files.** The following types of files shall be produced in native format unless a file is being produced in redacted form:

   a. all media files whether audio or video, and
   b. spreadsheets (e.g. MS Excel or .csv files, Google Sheets, or an acceptable equivalent for Google Sheets).

   A file produced in native format shall be named for its assigned Bates number. A placeholder TIFF image (slipsheet) named for the Bates number shall be produced with the native file. The slipsheet will include the Bates number, any confidentiality designation and the language "Produced in Native Format." TIFF images need not be produced unless the files have been redacted, in which instance such files shall be produced in TIFF with OCR Text Files. If good cause exists to request production of files, other than those specifically set forth above, in native format, the party may request such production and provide an explanation of the need for native file review, which request shall not unreasonably be denied. Any native files that are produced shall be produced with a link in the NativeLink field, along with extracted text and applicable metadata fields set forth in Appendix A. If a file has been redacted, TIFF images and OCR text of the redacted document will suffice in lieu of a native file and extracted text.

14. **Tools for Native Redaction**. The Parties agree that they may use tools that allow for native redaction of spreadsheets where possible to avoid additional expense.

15. **Proprietary Files.** To the extent a response to discovery requires production of ESI accessible only through proprietary software, the parties should continue to preserve each version of such information.  The parties shall meet and confer to finalize the appropriate production format.

14

**[PROPOSED] STIPULATED ORDER RE DISCOVERY OF ESI CASE NO. 5:21-CV-02155-LHK**

1

2   16. **Database Records and Structured Data.**   To the extent that any party requests

3   information that is stored in a database, or database management system, or proprietary

    system, instant message service, or server logs, the Parties agree that such information

4   can be produced in Excel format. To the extent that Excel format forbids the proper review

    of the information, the Parties will meet and confer in good faith in an attempt to reach

5   agreement on the data to be produced and the form of the production.

6

7   17. **Manner of Production.** All productions must be made by secure file transfer to agreed-

    upon email addresses. In the event the producing party deems it is not practical to upload

8   a voluminous production (e.g., a production exceeding 20GB) to a secure file transfer site,

9   it shall be sent to the receiving party by overnight mail on external hard drives, readily

    accessible computer(s) or other electronic media ("Production Media").   Each piece of

10  Production Media shall identify a production number corresponding to the production

    volume (e.g., "VOL001," "VOL002"), as well as the volume of the material in that

11  production (e.g. "-001," "-002"). Each production shall be accompanied by a cover letter

12  that identifies: (1) the producing party's name; (2) the production date; (3) the Bates

    Number range of the materials contained on the Production Media; and (4) the set(s) of

13  requests for production for which the documents are being produced.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

{PROPOSED} STIPULATED ORDER RE
DISCOVERY OF ESI
CASE NO. 5:21-CV-02155-LHK

1   **IT IS SO STIPULATED, THROUGH COUNSEL OF RECORD.**

2

    Dated: December 6, 2021

3

4   **PRITZKER LEVINE LLP**                    **COOLEY LLP**

5   By:    /s/ Elizabeth C. Pritzker          By:    /s/ Colin S. Scott
    Elizabeth C. Pritzker (Cal. Bar. No. 146267)   MICHAEL G. RHODES (SBN 116127)
6   Johnathan K. Levine (Cal. Bar. No. 220289)     (rhodesmg@cooley.com)
    Caroline C. Corbitt (Cal. Bar. No. 305492)     JEFFREY M. GUTKIN (SBN 216083)
7   1900 Powell Street, Suite 450                  (jgutkin@cooley.com)
    Emeryville, CA 4608                            KELSEY R. SPECTOR (SBN 321488)
8   Tel.: (415) 692-0772                           (kspector@cooley.com)
    Fax: (415) 366-6110                            COLIN S. SCOTT (SBN 318555)
9   ecp@pritzkerlevine.com                         (cscott@cooley.com)
    jkl@pritzkerlevine.com                         101 California Street, 5th Floor
10  ccc@pritzkerlevine.com                         San Francisco, CA 94111-5800
                                                   Tel: (415) 693-2000
11  **BLEICHMAR FONTI & AULD LLP**                 Fax: (415) 693-2222

12  By:    /s/ Lesley Weaver                    ROBBY L.R. SALDAÑA (*pro hac vice*)
13  Lesley Weaver (Cal. Bar No.191305)         (rsaldana@cooley.com)
    Matthew Melamed (Cal. Bar. No. 260272)     1299 Pennsylvania Avenue, NW
14  Anne K. Davis (Cal. Bar. No. 267909)       Suite 700
    Angelica M. Ornelas (Cal. Bar. No. 285929) Washington, DC 20004-2400
15  Joshua D. Samra (Cal. Bar. No. 313050)     Telephone:    +1 202 776 2109
    555 12th Street, Suite 1600                Facsimile:    +1 202 842 7899
16  Oakland, CA 94607
    Tel.: (415) 445-4003
17  Fax: (415) 445-4020                        *Counsel for Defendant GOOGLE LLC*
    lweaver@bfalaw.com
18  mmelamed@bfaw.com
    adavis@bfalaw.com
19  aornelas@bfalaw.com
    jsamra@bfalaw.com
20
    **SIMMONS HANLY CONROY LLC**
21
    By:    /s/Jay Barnes
22  Jason 'Jay' Barnes (admitted *pro hac vice*)
    An Truong (admitted *pro hac vice*)
23  Eric Johnson (*pro hac vice* to be sought)
    112 Madison Avenue, 7th Floor
24  New York, NY 10016
    Tel.: (212) 784-6400
25  Fax: (212) 213-5949
    mbreit@simmonsfirm.com
26  jaybarnes@simmonsfirm.com
    atruong@simmonsfirm.com
27  ejohnson@simmonsfirm.com

28

{PROPOSED} STIPULATED ORDER RE
DISCOVERY OF ESI
CASE NO. 5:21-CV-02155-LHK

1  **DICELLO LEVITT GUTZLER LLC**

2  By:     /s/ David A. Straite
   David A. Straite (admitted *pro hac vice*)
3  One Grand Central Place
   60 E. 42nd Street, Suite 2400
4  New York, NY 10165
   Tel.: (646) 993-1000
5  dstraite@dicellolevitt.com

6
   Amy E. Keller (admitted *pro hac vice*)
7  James A. Ulwick (admitted *pro hac vice*)
   Ten North Dearborn Street
8  Sixth Floor
   Chicago, IL 60602
9  Tel.: (312) 214-7900
   akeller@dicellolevitt.com
10 julwick@dicellolevitt.com

11 **BOTTINI & BOTTINI, INC.**

12 By:     /s/ Francis A. Bottini, Jr.
   Francis A. Bottini, Jr. (SBN 175783)
13 Albert Y. Chang (SBN 296065)
   Anne Beste (SBN 326881)
14 Yury A. Kolesnikov (SBN 271173)
   Nicholaus Woltering (SBN 337193)
15 7817 Ivanhoe Avenue, Suite 102
   La Jolla, CA  92037
16 Telephone:  (858) 914-2001
   Facsimile:   (858) 914-2002
17 fbottini@bottinilaw.com
   achang@bottinilaw.com
18 abeste@bottinilaw.com
   ykolesnikov@bottinilaw.com
19 nwoltering@bottinilaw.com

20

21 **COTCHETT, PITRE & McCARTHY LLP**

22 By:  /s/ Karin B. Swope
   Nanci E. Nishimura (Cal. Bar No. 152621)
23 Brian Danitz (Cal. Bar. No. 247403)
   Karin B. Swope (admitted *pro hac vice*)
24 Noorjahan Rahman (Cal. Bar No. 330572)
   840 Malcolm Road, Suite 200
25 Burlingame, CA 94010
   Tel.: (650) 697-6000
26 Fax: (650) 697-0577
   nnishimura@cpmlegal.com
27 bdanitz@cpmlegal.com
   kswope@cpmlegal.com
28 nrahman@cpmlegal.com

[PROPOSED] STIPULATED ORDER RE
DISCOVERY OF ESI
CASE NO. 5:21-CV-02155-LHK

1

**PURSUANT TO STIPULATION, IT IS SO ORDERED.**

2

3

Dated: _December 7, 2021_

4

HON. VIRGINIA K. DEMARCHI

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**[PROPOSED] STIPULATED ORDER RE
DISCOVERY OF ESI
Case No. 5:21-cv-02155-LHK**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### ATTESTATION OF E-FILED SIGNATURE

Pursuant to Local Rule 5-1(i)(3), I, Karin B. Swope, attest that the other signatories listed, and on whose behalf this filing is submitted, concur in the filing content and have authorized this filing.

*/s/ Karin B. Swope*

KARIN B. SWOPE

**[PROPOSED] STIPULATED ORDER RE DISCOVERY OF ESI**
**CASE NO. 5:21-CV-02155-LHK**