February 1, 2022

Magistrate Virginia K. DeMarchi
San Jose Courthouse, Courtroom 2-5th Floor
280 South 1st Street, San Jose, CA 95113

      Re: *In re Google RTB Consumer Privacy Litigation*, 5:21-cv-02155-YGR-VKD
      Joint Discovery Dispute – Re. Google's Responses & Objections to Plaintiffs' First Set of Requests for Production of Documents

Dear Magistrate Judge DeMarchi:

Plaintiffs and Google LLC ("Google") submit this joint letter brief regarding disputes pertaining to Google's Responses and Objections to Plaintiffs' First Set of Requests for Production of Documents (RFPs). Having met and conferred several times since the RFPs were deemed served on May 4, 2021, the parties have identified disputes for the Court's consideration. **Exhibit 1** reflects the disputed RFPs and Google's objections.[1]

I.    **PLAINTIFFS' POSITION**

Plaintiffs and Google have conferred for **seven months**. Each disputed RFP targets relevant information, the production of which is proportional to the needs of this action. The Court has "[b]road discretion" to compel relevant discovery. *Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002). "[T]he party opposing discovery bears the burden of showing that discovery should not be allowed, and of clarifying, explaining, and supporting its objections with competent evidence." *Lofton v. Verizon Wireless (VAW) LLC*, 308 F.R.D. 276, 281 (N.D. Cal. 2015). Google cannot meet its burden.

**RFP 1** (as narrowed) seeks documents concerning internal investigations into the allegations of the Complaint. Google objected on overbreadth grounds. Non-privileged investigatory documents are directly relevant to Plaintiffs' claims regarding Google RTB, how it functions, its impact on consumers, damages, and any purported defense of Account Holder "consent." *See Scherer v. FCA*

---

[1] Plaintiffs requested and Google agreed to address Plaintiffs' dispute over CIDs issued by the Texas AG in a separate joint letter brief, filed concurrently.

February 1, 2022: Page 2

*US, LLC*, 538 F. Supp. 1002, 1006-07 (S.D. Cal. 2021) (ordering production of company's investigatory files where relevant, necessary and proportional). The parties discussed search terms to target only relevant internal communications, e.g., "In re Google RTB" or [Plaintiff Names], but Google stands on its objections.

**RFP 2** seeks documents generated by Google in response to external criticism, including considerations to modify RTB-related conduct. Google improperly proposes to limit RFP 2 only to analyses of what Google describes as "*realized and material*" changes to RTB. The federal rules "broadly interpret relevancy, such that each party has the right to discovery of 'any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" *LivePerson, Inc. v. [24]7 AI, Inc.*, No. 317CV01268JSTKAW, 2018 WL 1225760, at *1 (N.D. Cal. Mar. 9, 2018) (citing FRCP 26(b)(1)). Having essentially conceded these documents are relevant, Google should not be permitted to be the sole arbiter of what it deems fit to produce.

**RFPs 3 and 4** seek documents and testimony already produced by Google to regulators prosecuting Google for violations of consumer rights, including specifically RTB, Google's handling of Account Holder data, and Google's purported defenses based on "consent." Plaintiffs don't demand production of all previously produced documents, but instead seek production of the Civil Investigation Demands (CIDs, or their equivalent) to help guide the parties (and the Court) to the relevant requests. Specifically, Plaintiffs request the CIDs issued in *State of Arizona ex rel. Mark Brnovich, Attorney General v. Google LLC*, No. CV 2020-006219 (Ariz. Superior Ct. 2020) ("*Brnovich*"), and the CID-equivalents issued in *Aus. Comp. & Consumer Comm'n v. Google LLC*, No. NSD816/2020 (Fed. Ct. of Australia 2020), and Google's responses to same. **Both matters contain allegations overlapping those here.** *Brnovich* concerns Google's deceptive collection of consumers' geolocation data: this action similarly alleges that Google wrongfully collects and discloses geolocation (and other) data to third-parties through RTB. (CCC ¶¶ 234-244). The *Australian* action alleges Google misled Account Holders regarding Privacy Policy changes and didn't obtain consent to Google's combining or associating personal information with activity on third party websites through an interface containing the same promise at issue here: Google "do[es] not sell your personal information to anyone." Ninth Circuit courts **generally permit discovery** from one case to be used in another where that litigation is relevant to the issues. "'Allowing the fruits of one litigation to facilitate preparation in other cases advances the interests of judicial economy by avoiding the wasteful duplication of discovery.'" *Madrid v. CertainTeed, LLC*, 2021 WL 3367253, at *2 (W.D. Wash. Aug. 3, 2021) (quoting *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1131 (9th Cir. 2003)). Relevance is met: there is sufficient overlap in facts, parties and issues between the Arizona and Australian matters, and the present litigation. *Foltz*, at 1132.

**RFPs 7 – 11** seek documents about and compiled for interviews and testimony given by Google representatives, including CEO Sundar Pichai, about practices alleged in Plaintiffs' Complaint. Google **refuses to provide documents responsive to RFPs 7 and 8**, which encompass interviews, depositions or testimony to governmental entities or court proceedings relating to data privacy, RTB, or factual matters alleged in the Complaint (including Congressional testimony by its Chief

February 1, 2022: Page 3

Privacy Officer, Senior Privacy Counsel and CEO, and statements about RTB in response to Congressional inquiries). Google **insists on limiting RFP 9** – which seeks documents compiled in preparation for such interview or testimony – and refuses to search for or produce anything beyond communications about Google Account Holder data or data derived from Google Account data shared with third parties utilizing RTB. **And, Google refuses to produce documents responsive to RFPs 10 and 11**, which seek documents pertaining to CEO Pichai's 2018 NYT Op-Ed statement that "Google will never sell any personal information to third parties." (CCC ¶¶ 97, 110, Ex. 25). Google's objections are improper. Evidence regarding prior testimony and statements on core factual issues, and information relied upon or rejected in making such statements, are relevant; appropriate to evaluate as against other evidence; and act as a source of admissions. FRE 801(d)(1), (2).

**RFP 22's** subparts seek information central to Plaintiffs' case: the technical details of RTB, including how and where RTB bid requests and information used in bid requests are tracked and stored (i and j); the information used in RTB bid requests; how winners are selected (q(i)); what Google shares with the winner (q(ii)); and information the winner conveys to Google or that Google is able to access (q(iii)). Regarding (i) and (j), information about Google's collection and storage is relevant to identification of class members and calculation of damages. The parties are discussing preservation obligations necessary to identify Google Account holders subject to the activity in question – and damages for those individuals. Google's systems of collection and storage of personal information that also flow through RTB are relevant to these issues. As to q(i), (ii), and (iii), Google **refuses** to produce information regarding the "factors, analyses, considerations, and methodologies" for selecting the winning bid and "what the winning bidder is able to do with that information" it receives associated with the bid. These documents go to the market exchange between Google and RTB participants. Similarly, q(iii) is relevant to liability and damages. Documents that may show Google knows a certain bidder is selling the information to someone else, or using the information to build its own user profiles, are also relevant and should be ordered produced.

**RFP 28** seeks information **Google concedes is relevant**: non-privileged drafts of its Terms of Service and Privacy Policies, disclosures to Google Account Holders, and RTB "verticals," and related communications. Google's only objection is that certain items may "likely" be privileged and, under Rule 26's proportionality admonition, it shouldn't have to identify responsive, but claimed privileged items. **Rule 26 undermines Google's objection.** "The proportionality factor is not 'intended to permit the opposing party to refuse discovery simply by making a boilerplate objection that it is not proportional.'" *Jacobs v. Wal-Mart Stores, Inc.*, No. 3:17-CV-05988-RJB, 2018 WL 4583878 at *1 (W.D. Wash. Sept. 25, 2018) (citing Cmt. to 2015 Amend. to FRCP 26(b)(1)). The Court instead considers "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." FRCP 26(b)(1). **Each factor favors production**.

February 1, 2022: Page 4

**RFP 30** asks Google to produce "analyses and decision-making practices in drafting or finalizing any policy, material or disclosure made to [Google] Account Holders or RTB participants regarding Google's engagement in targeted advertising in or related to Google [RTB]." **Google concedes relevance,** but seeks to limit production to documents regarding the use by or sale to RTB Participants of US-user information. Google's proposed limitation carves out highly relevant documents regarding what Google told Account Holders or RTB participants regarding Google's *collection* and *storage* of Account Holder information, and **Google's** use or sale of Account Holder information and its engagement in targeted advertising relating to RTB. Google's representations regarding Account Holder data, targeted advertising, and RTB are squarely at issue here.

**RFP 33** (as narrowed) targets reporting on user engagement and RTB, and studies on the impact of privacy breaches on engagement, which is relevant to Plaintiffs' assertions that Google misrepresents that it "do[es] not sell your personal information to anyone," the impact that misrepresentation has on Account Holders' use of Google's services, and damages. Plaintiffs have proposed that an appropriate search methodology would target relevant documents, but Google stands on its objections.

**RFP 35** seeks documents related to Google's market share in digital advertising, and is the share derived from RTB – a highly relevant issue here. **This request seeks highly relevant information** about the ubiquity of Google's digital advertising presence – such that it is practically impossible for any American Internet user to avoid having their information collected by Google and used in Google RTB. Google's identification of targeted collections of documents responsive to other RFPs does not relieve it of its obligation with respect to *this* RFP.

## II.     GOOGLE'S POSITION

The disputed requests are overbroad, not proportional to this litigation, and seek vast amounts of privileged information. Plaintiffs' motion falls far short of "detail[ing] the basis for [its] contention that it is entitled to the requested discovery and show[ing]. . . how the proportionality and other requirements of [Rule 26] are satisfied." Local Civ. R. 37.2.

**RFP 1**.  Plaintiffs seek all documents and communications "related to this Action," *not* "Google's internal investigations related to the allegations" in the operative Complaint ("CAC"), as they claim.  Requests that seek all documents related to a case are overbroad.  *See Franklin Fueling Sys. v. Veeder-Root Co.*, 2009 WL 10691372, at *4 (E.D. Cal. Nov. 13, 2009) (discovery requests that "sweep in every allegation from the [] Complaint" are "inappropriate").  Plaintiffs' proposal to adopt the case caption and Plaintiffs' names as search terms is improper, as these terms will target tomes of privileged discussions and would require Google to review and log virtually every document concerning this case. *See CoStar Grp., Inc. v. Xceligent, Inc.*, 2017 WL 5957774, at *3 (W.D. Mo. Sept. 11, 2017) (request was "unduly burdensome" where it "target[ed] a large volume of attorney-client privileged material").

February 1, 2022: Page 5

**RFP 2**. Google has agreed to produce documents reflecting any material changes made to Google's Real-Time Bidding system ("RTB") prompted by external criticism or scrutiny related to the disclosure of user data. Plaintiffs also demand discovery pertaining to *immaterial* and *merely potential* changes to RTB. These subjects are overbroad and irrelevant, and Plaintiffs' only rebuttal is to incorrectly assert that Google has "essentially conceded" relevance (it has not). The gravamen of Plaintiffs' claims is that Google sells "personal and/or sensitive information" to third-party RTB participants, thus contravening its representations to account holders. CAC ¶¶ 20; 78-108. Plaintiffs did not, and could not, allege that Google injured account holders with never-launched product features. Indeed, the CAC does not reference *any* changes to RTB, potential or realized. Nevertheless, Plaintiffs seek every internal product debate and discussion – regardless of whether a change to the product was made or had any impact on third-party data sharing. Given that Google has designated 21 custodians, many of whom work principally on RTB, this RFP would sweep in vast amounts of irrelevant information.

**RFPs 3-4**. Plaintiffs seek the CIDs that were served in two other investigations that are wholly irrelevant here. In *Arizona v. Google*., No. 2020-006219 (Super. Ct. Ariz. May 27, 2020), the Arizona AG alleged that Google tracked the *location history* of Android phone and Google app users *after they had turned off* a location history setting. *Id.* ¶¶ 22-55. In *Australian Competition and Consumer Commission ("ACCC") v. Google LLC*, NSD 816/2020, the ACCC claimed that Google misled consumers about the type of information Google's own ad services could access. *Id.* ¶¶26-32. Tellingly, neither of these complaints mention Google's RTB or allege that Google illegally transmits user information to *third parties*. Further, it is not enough for Plaintiffs to show "overlapping allegations," as they incorrectly contend exist here. Plaintiffs "must demonstrate the relevance of the protected discovery to the collateral proceedings and its general discoverability therein." *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1131 (9th Cir. 2003). Plaintiffs do not clear this hurdle.

**RFPs 7-9**. Plaintiffs seek every document related to any "interview" or any deposition or testimony in any litigation or regulatory proceeding concerning "data privacy, [RTB] or any other matter alleged in the [132-page] Complaint." This request does not relate to "core factual issues," as most of these interviews merely address general data privacy issues and Google's collection or use of user data across all products – topics far too general to underlie valid discovery requests. *See Shenwick v. Twitter, Inc.*, 2018 WL 833085, at *3 (N.D. Cal. Feb. 2, 2018) (requests that sought all documents concerning user engagement were overbroad in action concerning one engagement metric). Further, Requests 8-9 are especially improper because they target vast swaths of privileged information – i.e., all communications concerning any deposition or witness interview on data privacy.

February 1, 2022: Page 6

**RFPs 10-11**.  The Court should deny Plaintiffs' request to compel production of all documents relating to a 2019 *New York Times* Opinion Editorial authored by Google's CEO Sundar Pichai, and all documents "relied on, referenced, or otherwise compiled for review" in relation to the same. The OpEd offers a general discussion of user privacy issues and does not even ***mention*** Google's RTB.  Not every document concerning Google's public statements on user privacy are relevant to Plaintiffs' claims. *Shenwick*, 2018 WL 833085, at *3.  Further, plaintiffs "may elect to obtain ESI from a custodian who is a senior executive" only with "a factual basis to believe that such senior executive has relevant information.  *See Alta Devices, Inc. v. LG Elecs., Inc.*, 2019 WL 8757255, at *1 (N.D. Cal. Feb. 20, 2019) (DeMarchi, J.).  That Mr. Pichai wrote an editorial on privacy is not sufficient.

**RFPs 22(i)-(j) and 30**.  Plaintiffs demand documents concerning: (1) "[t]he location and manner in which Google ***stores*** Bid Requests" (Request 22(i)(j)), and (2) "Google's analysis and decision-making practices in the drafting of any policy, material, or disclosure . . . regarding Google's ***collection, storage,*** use and sale of user information, Google's engagement in targeted advertising, and Google RTB."  (Request 30).  Google is producing policies, analyses of, or decision-making, concerning the alleged sale of user data to third-party RTB participants or their permitted use of such information (10/27/21 Ltr. from J. Gutkin at 2, 3.)  This is all that is relevant.  Plaintiffs again incorrectly claim Google conceded relevance.  Not so.  In fact, ***Plaintiffs conceded irrelevance,*** stating previously that "this case relates ***to Google's disclosure of*** information in its own possession ***rather than the unauthorized taking of*** Plaintiffs' information." (ECF No. 82 at 7.)  Documents concerning the collection of user information ***are*** irrelevant because Plaintiffs never alleged that Google improperly collected anything from users.  Likewise, none of Plaintiffs' claims turn on how user information or bid requests ***are stored***.  The technical details regarding storage are not necessary to identify class members, as Plaintiffs incorrectly contend.  And, while the CAC makes a few allegations about the storage of Account Holder information in the Chrome browser, (ECF No. 92, CAC ¶¶ 489–491), these allegations relate to Count 11, which is not being litigated. (*See* ECF. No. 91.)

**RFP 22.**  As to RFP 22(q)(ii)-(iii), Google offered to produce documents (if any), showing what data the winning bidder is given access to or conveys to Google by virtue of winning the auction. Plaintiffs do not (and could not) articulate why this is insufficient. As to 22(q)(i), Google's "factors, analyses, considerations, and methodologies" for selecting the ***winning*** bid is not relevant, given that Plaintiffs allege the same data is shared with all RTB participants, whether they win the auction or not.  CAC ¶ 7.

**RFP 28**. Plaintiffs seek all documents related to Google's Terms of Use, various Help Center Pages, and Privacy Policies, including drafts and discussions regarding drafts. Google has agreed to produce earlier versions of these documents and non-privileged drafts, if any exist.  (10/27/21

February 1, 2022: Page 7

and 11/19/21 Ltrs. from J. Gutkin). Dissatisfied, Plaintiffs insist on production of ***all*** documents "discussing, analyzing, or memorializing iterative drafts." ***Any*** discussion of ***any*** revision of ***any*** term in these policies is overbroad. Further, most of these materials are likely to be privileged, and review and logging of them would be unjustifiably burdensome.

***RFP 33***. Plaintiffs seek documents establishing user engagement on all "Google's services" on a monthly basis, and studies concerning the impact of privacy breaches on user engagement. This RFP is overbroad and is hardly "equivalent" to the distribution of user data through RTB, as the request concerns ***all*** of "Google's services," rather than Google's RTB. *Hawkins v. Kroger Co.*, 2019 WL 4416132, at *16 (S.D. Cal. Sep. 16, 2019) (plaintiff's requests were overbroad "as they are not limited to the products at issue").

Further, monthly engagement of RTB is duplicative of other discovery Google agreed to produce, including documents showing the frequency and numerosity of RTB auctions. (10/27/21 Ltr from J. Gutkin at 2). To the extent Plaintiffs seek to quantify their alleged harm, Google agreed to produce documents showing the monetary value of the alleged conduct (Request 34) and RTB's payment structures (Request 22). Finally, producing "user engagement" data even just for RTB on a monthly basis is impracticable, as Google does not tabulate Monthly Active Users for RTB, and has no way of reliably estimating this metric.

***RFP 35***. Plaintiffs seek documents concerning Google's market share for ***all*** digital advertising even though this case solely concerns one product – Google's RTB. While Plaintiffs contend that this discovery is necessary to show "the ubiquity" of Google's digital advertising, ***all*** of Google's digital advertising is not at issue here. Relevant to this request, Google has already produced a list of publisher side accounts eligible to participate in RTB (information Plaintiffs requested to show the reach of the RTB), and agreed to produce metrics reflecting the frequency and numerosity of RTB auctions (10/27/21 Ltr from J. Gutkin at 2).

### III.    NECESSITY OF A HEARING

#### A.    Plaintiffs' Position

Plaintiffs respectfully request a hearing on these disputed items of discovery. Discovery deadlines are fast approaching, and resolution of these issue will have implications for other discovery matters.

#### B.    Google's Position

Google respectfully requests the Court convene a hearing to resolve these issues.

February 1, 2022: Page 8

### IV. DISCOVERY CUT-OFF DATES FOR FACT AND EXPERT DISCOVERY

| Fact Discovery Cut-Off | December 15, 2022 |
| --- | --- |
| Close of Expert Discovery | March 2, 2023 |

### V. COMPLIANCE WITH MEET AND CONFER REQUIREMENT

In compliance with the Court's meet and confer requirements, the parties met and conferred several times via Zoom. The final lead counsel meet and confer was held on January 18, 2022, also via Zoom. On Plaintiffs' side Elizabeth C. Pritzker, Bethany Caracuzzo, Lesley. E. Weaver, Anne K. Davis, Jay Barnes, An Truong, David Straite, and Karin Swope attended, among others. On Google's side Jeff Gutkin, Aarti Reddy, and Kelsey Spector attended, among others.

February 1, 2022: Page 9

**PRITZKER LEVINE LLP**

By: */s/ Elizabeth C. Pritzker*
Elizabeth C. Pritzker (Cal. Bar. No. 146267)
Johnathan K. Levine (Cal. Bar. No. 220289)
Caroline C. Corbitt (Cal. Bar. No. 305492)
1900 Powell Street, Suite 450
Emeryville, CA 4608
Tel.: (415) 692-0772
Fax: (415) 366-6110
ecp@pritzkerlevine.com
jkl@pritzkerlevine.com
ccc@pritzkerlevine.com

**BLEICHMAR FONTI & AULD LLP**

By: */s/ Lesley Weaver*
Lesley Weaver (Cal. Bar No.191305)
Anne K. Davis (Cal. Bar No. 267909)
Joshua D. Samra (Cal. Bar No. 313050)
555 12th Street, Suite 1600
Oakland, CA 94607
Tel.: (415) 445-4003
Fax: (415) 445-4020
lweaver@bfalaw.com
adavis@bfalaw.com
jsamra@bfalaw.com

**SIMMONS HANLY CONROY LLC**

By: */s/ Jay Barnes*
Jason 'Jay' Barnes (admitted *pro hac vice*)
An Truong (admitted *pro hac vice*)
Eric Johnson (*pro hac vice* to be sought)
112 Madison Avenue, 7th Floor
New York, NY 10016
Tel.: (212) 784-6400
Fax: (212) 213-5949
mbreit@simmonsfirm.com
jaybarnes@simmonsfirm.com
atruong@simmonsfirm.com
ejohnson@simmonsfirm.com

**DICELLO LEVITT GUTZLER LLC**

By: */s/ David Straite*
David A. Straite (admitted *pro hac vice*)

February 1, 2022: Page 10

One Grand Central Place
60 E. 42nd Street, Suite 2400
New York, NY 10165
Tel.: (646) 993-1000
*dstraite@dicellolevitt.com*

Amy E. Keller (admitted *pro hac vice*)
James A. Ulwick (admitted *pro hac vice*)
Ten North Dearborn Street
Sixth Floor
Chicago, IL 60602
Tel.: (312) 214-7900
*akeller@dicellolevitt.com*
*julwick@dicellolevitt.com*

**BOTTINI & BOTTINI, INC.**

By: */s/ Francis A. Bottini, Jr.*
Francis A. Bottini, Jr. (SBN 175783)
Albert Y. Chang (SBN 296065)
Anne Beste (SBN 326881)
Yury A. Kolesnikov (SBN 271173)
Nicholaus Woltering (SBN 337193)
7817 Ivanhoe Avenue, Suite 102
La Jolla, CA  92037
Telephone:  (858) 914-2001
Facsimile:   (858) 914-2002
fbottini@bottinilaw.com
achang@bottinilaw.com
abeste@bottinilaw.com
ykolesnikov@bottinilaw.com
nwoltering@bottinilaw.com


**COTCHETT, PITRE & McCARTHY LLP**

By: */s/ Nanci E. Nishimura*
Nanci E. Nishimura (Cal. Bar No. 152621)
Brian Danitz (Cal. Bar. No. 247403)
Karin B. Swope (admitted *pro hac vice*)
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Tel.: (650) 697-6000
Fax: (650) 697-0577

February 1, 2022: Page 11

*nnishimura@cpmlegal.com*
*bdanitz@cpmlegal.com*
*kswope@cpmlegal.com*

February 1, 2022: Page 12

Dated: February 1, 2022                               COOLEY LLP


By: */s/ Jeffrey M. Gutkin*
    Michael G. Rhodes
    Jeffrey M. Gutkin
    Aarti G. Reddy
    Kyle C. Wong
    Kelsey R. Spector
    Colin S. Scott
    3 Embarcadero Center, 20th floor
    San Francisco, CA  94111-4004
    Tel.:  415-693-2000
    Fax:  415-693-2222
    rhodesmg@cooley.com
    jgutkin@cooley.com
    kspector@cooley.com
    cscott@cooley.com

    Robby L.R. Saldaña
    1299 Pennsylvania Avenue NW
    Suite 700
    Washington, DC   20004-2400
    Tel.:  202-776-2109
    Fax:  202-842-7899
    rsaldana@cooley.com

Attorneys for Defendant
GOOGLE LLC

February 1, 2022: Page 13

### ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1(i)(3)

I, Elizabeth C. Pritzker, attest that concurrence in the filing of this document has been obtained from the other signatories. I declare under penalty of perjury that the foregoing is true and correct. Executed this 1st day of February, 2022, at Emeryville, California.

/s/ *Elizabeth C. Pritzker*
Elizabeth C. Pritzker