February 1, 2022

Magistrate Virginia K. DeMarchi
San Jose Courthouse, Courtroom 2-5th Floor
280 South 1st Street, San Jose, CA 95113

      Re:    *In re Google RTB Consumer Privacy Litigation*, 21-cv-02155
              Joint Discovery Dispute – Plaintiffs' Requests for Production of Relevant
              Documents Produced in Regulatory Proceedings

Dear Magistrate Judge DeMarchi:

Plaintiffs and Google LLC ("Google") submit this joint letter brief regarding disputes pertaining to Plaintiffs' request for documents produced to the Texas Attorney General ("TX AG") that are related to the allegations in Plaintiffs' complaint, which arise under Requests for Production ("RFP") Nos. 3 and 4.

## I. STATEMENT OF DISPUTE REQUIRING RESOLUTION

With respect to the TX AG dispute under RFP Nos. 3 and 4, the Parties agreed that Google would produce the Civil Investigative Demands ("CIDs") issued to Google in a TX AG regulatory action for priority review and production. Plaintiffs identified a subset of the CIDs for which they sought responses. The Parties reached impasse when Google offered to produce responses to only certain CID requests. **Exhibit 1** reflects RFP Nos. 3 and 4 and related Objections. **Exhibit 2** reflects Plaintiffs' subset (highlighted) of CIDs for which they seek production of responses.

## II. PLAINTIFF'S POSITION

The TX AG is leading a multi-state prosecution of Google for "deceptively using individuals' personal information to engage in targeted digital advertising." *State of Texas, et al. v. Google LLC*, 1:21-cv-6841-PKC (SDNY), Third Amended Complaint dated Jan. 14, 2022, ¶ 2. In this case, Plaintiffs' RFPs 3 and 4 seek documents and testimony provided by Google to any regulatory or government proceeding relating to relevant matters such as data privacy, Real Time Bidding (RTB), and Google's handling of Account Holder data. Through various meet and confers, Plaintiffs agreed to prioritize Google's review and production of documents in the TX AG action. Google objected to producing all related documents; to inform discussions of a possible compromise, Google produced the underlying TX AG CIDs. Plaintiffs then identified a narrow subset of CIDs, specifically selecting 48 for responses and production out of roughly 485 requests.[1]

---

[1] From Plaintiffs' initial subset (*see* Highlighted CIDS in Exhibit 2), Plaintiffs further narrowed their request to 48 CIDs, those being: from the September 9, 2019 CID, interrogatory numbers 26, 27, and 31, and RFP numbers 21-24, 50-51, 54-57, 69-72, 81-82, 93, 94, 98-101, 104; and, from

February 1, 2022: Page 2

Notwithstanding this narrowing, Google refused Plaintiffs' proposal, making a counteroffer that would effectively produce responsive information related to only ***one*** RFP and ***one*** interrogatory.[2] For the remainder, Google broadly asserted the requests are "cloned discovery," refusing to engage on the individual identified CIDs. This is a dismissive response to a legitimate request.[3] This Circuit "strongly favors" access to prior discovery materials when doing so advances judicial economy. *Madrid v. CertainTeed, LLC*, 2021 WL 3367253, at *2 (W.D. Wash. Aug. 3, 2021) (quoting *Foltz v. State Farm Mut. Auto. Ins. Co*., 331 F.3d 1122, 1131 (9th Cir. 2003)). "Allowing the fruits of one litigation to facilitate preparation in other cases advances the interests of judicial economy by avoiding the wasteful duplication of discovery.'" *Id*. (quoting *Foltz,* 331 F.3d at 1131). Plaintiffs previously argued, and Judge Koh found persuasive, the TX AG "action includes privacy allegations and the specific discovery requested relates directly to the issues in this case – including how the RTB system operates." Dkt. 83 at 9. While, as Google notes, TX AG's antitrust theories of harm differ, it cannot be denied that the economic impact of Google's RTB auction and competitive motives bear on financial harm and punitive damages here. Further, reproduction of these documents creates no undue burden for Google. *See, e.g. Munoz*, 2013 WL 634388 at *6 (rejecting burden argument where "[d]efendants [] have the option to limit their burden by producing the smaller subset of documents requested by Plaintiffs"); *Rosales v. El Rancho Farms,* 2011 WL 2433352, at *2 (E.D. Cal. 2011) ("The documents have been gathered, and are ready for production, which undermines the assertion that the request was overly burdensome").

In a joint CMCS submitted September 1, 2021, the parties notified Judge Koh that they had not yet reached a compromise, noting that "if an impasse is reached, [the parties] will raise the issue with Magistrate Judge DeMarchi." Dkt. 82 at 9. On September 2, 2021, Judge Koh ordered as follows:

> In their JCMS, the parties state that they have met and conferred regarding documents Google has previously produced to the Texas Attorney General in response to Civil Investigative Demands. JCMS at 9. ***Google shall produce the Texas Attorney General documents within 30 days***.

---

the June 22, 2020 CID, interrogatory numbers 4, 13(b), and 64, and RFP numbers 11, 13-16, 19, 20(f), 23, 28, 46-48, 79, 105-108, 120.

[2] As to the remaining CID requests in Google's proposal, Google admitted there was no substantive response as it was currently standing on its objections. Should those CIDs ever be answered in the future, Google would produce that response.

[3] To the extent Google argues the requests are overbroad, disproportionate to the needs of the case, or unduly burdensome, it must substantiate those claims; a conclusory assertion of "cloned" discovery is not sufficient. *See, e.g. Munoz v. PHH Corp.*, 013 WL 634388, at *5 (E.D. Cal. 2013) (concluding that defendants "have not met their burden of showing that producing documents that have already been produced a third party is unduly burdensome"); FRCP 26(c) (party seeking protective order must show "good cause").

February 1, 2022: Page 3

Dkt. 83 at 1-2 (emphasis added). Following this order, Google took the unreasonable position that Judge Koh had sanctioned its facially insufficient proposal. Plaintiffs disagreed. On September 13, 2021, the parties jointly requested clarification of Judge Koh's order. Dkt. 90. Plaintiffs noted that Google's interpretation of Judge Koh's order would result in production of **just *one* September CID interrogatory and *one* June CID RFP**. *Id.* at 3. Google, in turn, argued that the TX AG action, as an antitrust action, was not relevant. The Court has not ruled on this pending request.

Plaintiffs now seek relief in this forum. As noted, in a compromise proposal, Plaintiffs identified a prioritized list of 48 Texas AG document requests for early production, identifying, for relevance purposes, the corresponding RFPs in this Action for each Request. *See.* Ex. 2. For example, the September TX AG CID Req. 69 seeks "Documents sufficient to show the types of Behavioral Data…collected or can collect when a user views an AMP Page."[4] This overlaps with Plaintiffs' RFP 13, and falls squarely within the allegations of this case regarding Google's collection and disclosure of behavioral data. *See, e.g.* Dkt. 92, ¶¶ 1-17. Similarly, September TX AG CID Req. 81 seeks "Documents sufficient to show the extent to which any third party analytics vendor is permitted or given access to Behavioral Data with respect to AMP Pages." This overlaps with Plaintiffs' RFP 25, and goes to the allegations in this case regarding Google's analysis and disclosure of such data. *See, e.g., id.* ¶¶ 1-17. **Google seeks to exclude these documents solely on the basis that AMP is not RTB. But this distinction is misplaced**.[5] That Google collects behavioral data from mobile sites does not mean it is irrelevant to RTB. **All requests relating to the data sold or shared in RTB are related to privacy—and are at core of this case.** Plaintiffs allege Google collects behavioral data to formulate bid requests. Excluding such documents may block Plaintiffs from connecting the verticals used in the auction. This is a perfect example of how thinly Google intends to parse its production.

Likewise, the requests identified by Google below (9/9/19 CID RFP Nos. 23, 24, 51, 62) directly relate to Plaintiffs' allegations that Google RTB not only engages in the unlawful sale of Account Holder information but also intentionally engages in conduct that would provide advantage to certain participants over others (e.g. Facebook), allowing these participants preference and access to bid request information that augments their existing user profiles. *See, e.g.* Dkt. 92, ¶¶ 164-179, 512. In the case of Facebook, it has been publicly revealed that Google and Facebook have such an agreement, code named "Jedi Blue." Thus, the CIDs highlighted by Google for challenge in fact relate to key claims made by Plaintiffs in this case.

Google's proposal excludes these and other highly on-point requests. There is simply no basis for Google's extreme and unilateral rejection of relevant information. Nor can a basis be inferred from

---

[4] As defined in the Texas AG CIDs, "AMP Page" refers to "a website designed and served as an accelerated mobile page."

[5] Notably, in its own pursuit of discovery, Google has taken a broad view that any website or application, mobile or otherwise, (and settings related thereto) on which a Plaintiff interacts with the Internet is a potential source of relevant data.

February 1, 2022: Page 4

Judge Koh's order. Plaintiffs respectfully request that Google be compelled to produce documents and responses to the narrow subset of TX AG CIDs identified by Plaintiffs.

Given the unique procedural posture of this dispute, Plaintiffs have briefed the TX AG CIDs separate from other discovery requests that arise under RFP Nos. 3 and 4. Specifically, Plaintiffs' discovery requests related to other regulatory actions, e.g., *Arizona v. Google.*, No. 2020-006219 (Super. Ct. Ariz. May 27, 2020) and *Australian Competition and Consumer Commission ("ACCC") v. Google LLC* (No 2) [2021] FCA 367, are addressed in their brief regarding Google's Responses and Objections to Plaintiffs' First Requests for Production of Documents.

### III.   GOOGLE'S POSITION

Plaintiffs seek vast amounts of cloned discovery produced in unrelated regulatory actions. Consistent with their modus operandi, Plaintiffs served facially overbroad requests for all documents concerning all governmental investigations globally, formal or informal, relating to anything to do with "data privacy, Real Time Bidding, or any matter alleged in the Complaint." In the related *Calhoun v. Google*, Judge Van Keulen rejected similar requests, from many of the same counsel, and only ordered Google to identify public investigations directly related to *Calhoun* and, if any were identified, for the parties to meet and confer "regarding production of CIDs or subpoenas." No. 20-cv-05146-LHK (ECF No. 220.) The parties have already done that here, and Google agreed to produce documents from the only relevant regulatory actions (in the UK) and also agreed to produce various documents that happened to touch on the relevant issues from the Texas Attorney General's unrelated antitrust investigation. Nonetheless, Plaintiffs demand much more.[6]

*Texas AG Antitrust Investigation*

In *Texas, et al v. Google LLC*, 4:20-cv-957 (E.D. Tex. Oct. 20, 2020), the Texas Attorney General filed an **antitrust lawsuit** and has served discovery requests on a wide variety of topics having nothing to do with this matter (the "TXAG Action"). *See*, *e.g.*, *id.* at ECF No. 77 at 1 ("Google sought to kill competition . . . [t]his litigation will establish that Google is guilty of such antitrust evils"). While the two actions both deal with aspects of Google's online advertising business, they are fundamentally focused on separate legal issues and facts. The TXAG Action is about purported anticompetitive behavior in the operations of Google's various advertising businesses, not the alleged disclosure of personal information to third-parties through RTB auctions.

Despite the TXAG Action's irrelevance, Plaintiffs originally demanded all the documents and discovery from the TXAG action. After extensive conferring, Google agreed to produce documents and responses for the only requests (18 in all) that were arguably related to the issues here and Google produced over ***4,000*** documents. Unsatisfied, Plaintiffs now seek documents

---

[6] Plaintiffs also seek cloned discovery from unrelated actions in Arizona and Australia. This brief focuses on the TXAG action because Plaintiffs refused to include the others here, even though they arise from the same requests.

February 1, 2022: Page 5

related to their almost 50 "prioritized list" including many that are patently overbroad and unrelated to the allegations at hand. These include:

- "Produce Documents that relate to any complaint made by any DSP or Ad Network regarding competition within AdX." (RFP No. 22, 9/9/2019 CID).
- "Produce Documents that relate to any complaint made by an Ad Exchange or SSP regarding Your closing of an AdX Auction at a price lower than the reserve price." (RFP No. 24).
- "Produce Documents that relate to any instance in which any T-50 Advertiser or any Ad Exchange complained that they wanted to or intended to bid on any Ad Impression, but was unable to do so based on how an Ad Exchange was ranked in DFP with Exchange Bidding enabled." (RFP No. 51).
- "Produce Documents that … compare Your ability to collect and monetize data across multiple devices and technologies with that of any competitor." (RFP No. 57).

Due to space constraints, Google cannot discuss every request, but those Google rejected seek documents unrelated to RTB or user data allegedly disclosed to third parties through RTB.

That Google has produced documents in a separate governmental investigation does not entitle Plaintiffs to them. *Wilmington Tr. Co. v. Boeing Co.*, 2020 WL 4125106, at *2 (W.D. Wash. July, 20, 2020) (rejecting cloned discovery requests as "neither narrow, nor carefully tailored"). Plaintiffs bear the burden of proving that their requested discovery is relevant, and Courts in this District routinely refuse to compel discovery requests that simply seek the re-production of documents produced in another matter. *See e.g.*, *Rodriguez v. Google*, No. 3:20-cv-04688-RS, Dkt. 85 at 1 (N.D. Cal. Feb. 8, 2021); *Clean Diesel Marketing, Sales Practices, and Prods. Liab. Litig.*, 2017 WL 4680242, at *1, 2 (N.D. Cal. Oct. 18, 2017) (holding that the efficiencies gained by a defendant "open[ing] up [its] document repositories for the opposing side to rifle through" do not justify "expand[ing] the scope of discovery beyond that allowed by the Federal Rules"); *Chen v. Ampco Sys. Parking*, 2009 WL 2496729, at *2 (S.D. Cal. Aug. 14, 2009) (denying motion to compel documents from proceeding involving "different and broader claims"). Plaintiffs should seek the relevant discovery in this action and cannot short circuit that process by simply claiming another matter is relevant. Forcing Google to re-review and produce voluminous discovery responses served in irrelevant investigations is inherently burdensome and not proportional. Google's counsel here, of course, has to review everything produced in this action. Moreover, since Google cannot simply segregate the TXAG production for Plaintiffs' "prioritized" list, Google would need to re-review most, if not all the documents produced to locate documents responsive to these specific RFPs. This level of added burden and expense is unjustifiable.

Indeed, even Plaintiffs' authorities do not support their position. *Foltz*, the only binding authority on this Court, dealt with collateral litigation, and far from blessing blanket cloned discovery, the Ninth Circuit cautioned that a "collateral litigant must demonstrate the relevance of the protected

February 1, 2022: Page 6

discovery to the collateral proceedings and its general discoverability therein" and that this "relevance hinges on the degree of overlap in facts, parties, and issues between the suit covered by the protective order and the collateral proceedings." *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1132 (9th Cir. 2003). *Rosales v. El Rancho Farms,* which Plaintiffs claim shows that there is no burden to Google here, has nothing to do with cloned discovery and instead dealt with documents that counsel had already represented were collected in response to discovery requests in that matter and did not require a further review. 2011 WL 2433352, at *2 (E.D. Cal. Jun. 13, 2011). That is not the case here, as just discussed. And lastly *Munoz* is highly distinguishable. There, the regulatory agency was "investigating the same alleged wrongful conduct as is alleged by Plaintiffs … based on identical allegations." *Munoz v. PHH Corp.*, 2013 WL 684388, at *4 (E.D. Cal. Feb. 22, 2013). As discussed, the same cannot be said for the TXAG action, and Google is already producing the documents from investigations that actually overlap with the claims here.

Plaintiffs' identification of Requests 68 and 81 as their best examples of relevance, only proves ***Google's*** point. Both of these Requests deal with documents related to what information Google and third parties can **collect from "Accelerated Mobile Pages,"** not what information ***Google discloses to third-party participants through RTB***. Accelerated Mobile Pages are an approach to faster ad loading (https://developers.google.com/amp). Simultaneously, Plaintiffs take the position in their opposition to Google's letter brief (in the last exchanged draft), that this case "has nothing to do with data collected from the devices." And even if any TXAG Request overlaps with discovery Plaintiffs have already propounded, this too weighs against disclosure, since the parties are already negotiating search terms and custodians that will provide Plaintiffs with all the discovery to which they are actually entitled.

### *Judge Koh's Prior Order Regarding the Texas AG Documents*

Lastly, Plaintiffs' attempt to compel production based on an order following a Joint Case Management Statement from last year (the "Joint Statement") is meritless. In the Joint Statement, the parties explained that they had disagreements regarding the TXAG Action documents and that they would "continue to meet and confer regarding these issues and, if an impasse is reached, will raise the issue with Magistrate Judge DeMarchi." (ECF No. 82 at 9.) Google also explained that it anticipated it would begin producing a subset of the agreed TXAG documents within two weeks. On September 2, 2021, the Court issued a Case Management Order stating that "Google shall produce the Texas Attorney General documents within 30 days." (ECF No. 83 at 2.) The parties' interpretation of this order differed and resulted in the filing of a Joint Request for Clarification on September 13, 2021 (ECF No. 90), which remains pending.

As the Joint Statement had referenced when Google would begin producing certain TXAG documents, Google understood the order to impose a deadline for completing that production, which Google met. Plaintiffs' contention that the order halted the meet and confer process and compelled production of all the disputed documents is baseless. Not only had the parties said that meet and confer was ongoing, but the Court did not even have the actual requests, much less any

February 1, 2022: Page 7

discussion of their relevance, before it. Plaintiffs misleadingly argue that "Judge Koh found persuasive" the relevance of the TXAG Action by quoting from *their own* characterization of the issue in the Joint Statement. Judge Koh made no such ruling. Plaintiffs' attempt to declare victory in a dispute that both parties told the Court they were in the process of resolving is unavailing

### IV. NECESSITY OF A HEARING

#### A. Plaintiffs' Position

Plaintiffs believe that a hearing on this dispute would be useful. Discovery deadlines are fast approaching, and resolution of these issue will have implications for other discovery matters (including other regulatory matters that the Parties have become aware of). The requests were served in April 2021, responses in June 2021, and meet and confers as early as July 2021.

#### B. Google's Position

Google respectfully requests the Court convene a hearing to resolve these issues.

### V. DISCOVERY CUT-OFF DATES FOR FACT AND EXPERT DISCOVERY

| Fact Discovery Cut-Off | December 15, 2022 |
| Close of Expert Discovery | March 2, 2023 |

### VI. COMPLIANCE WITH MEET AND CONFER REQUIREMENT

In compliance with the Court's meet and confer requirements, the parties met and conferred several times via Zoom. The final lead counsel meet and confer was held on January 18, 2022,also via Zoom. On Plaintiffs' side Elizabeth C. Pritzker, Bethany Caracuzzo, Lesley. E. Weaver, Anne K. Davis, Jay Barnes, An Truong, David Straite, and Karin Swope attended, among others. On Google's side Jeff Gutkin, Aarti Reddy, and Kelsey Spector attended, among others.

February 1, 2022: Page 8

**PRITZKER LEVINE LLP**

By: */s/ Elizabeth C. Pritzker*
Elizabeth C. Pritzker (Cal. Bar. No. 146267)
Johnathan K. Levine (Cal. Bar. No. 220289)
Caroline C. Corbitt (Cal. Bar. No. 305492)
1900 Powell Street, Suite 450
Emeryville, CA 4608
Tel.: (415) 692-0772
Fax: (415) 366-6110
ecp@pritzkerlevine.com
jkl@pritzkerlevine.com
ccc@pritzkerlevine.com

**BLEICHMAR FONTI & AULD LLP**

By: */s/ Lesley Weaver*
Lesley Weaver (Cal. Bar No.191305)
Anne K. Davis (Cal. Bar No. 267909)
Joshua D. Samra (Cal. Bar No. 313050)
555 12th Street, Suite 1600
Oakland, CA 94607
Tel.: (415) 445-4003
Fax: (415) 445-4020
lweaver@bfalaw.com
adavis@bfalaw.com
jsamra@bfalaw.com

**SIMMONS HANLY CONROY LLC**

By: */s/ Jay Barnes*
Jason 'Jay' Barnes (admitted *pro hac vice*)
An Truong (admitted *pro hac vice*)
Eric Johnson (*pro hac vice* to be sought)
112 Madison Avenue, 7th Floor New York, NY 10016
Tel.: (212) 784-6400
Fax: (212) 213-5949
mbreit@simmonsfirm.com
jaybarnes@simmonsfirm.com
atruong@simmonsfirm.com
ejohnson@simmonsfirm.com

**DICELLO LEVITT GUTZLER LLC**

By: */s/ David Straite*
David A. Straite (admitted *pro hac vice*)
One Grand Central Place

February 1, 2022: Page 9

60 E. 42nd Street, Suite 2400
New York, NY 10165
Tel.: (646) 993-1000
*dstraite@dicellolevitt.com*

Amy E. Keller (admitted *pro hac vice*)
James A. Ulwick (admitted *pro hac vice*)
Ten North Dearborn Street
Sixth Floor
Chicago, IL 60602
Tel.: (312) 214-7900
*akeller@dicellolevitt.com*
*julwick@dicellolevitt.com*

**BOTTINI & BOTTINI, INC.**

By:  */s/ Francis A. Bottini, Jr.*
Francis A. Bottini, Jr. (SBN 175783)
Albert Y. Chang (SBN 296065)
Anne Beste (SBN 326881)
Yury A. Kolesnikov (SBN 271173)
Nicholaus Woltering (SBN 337193)
7817 Ivanhoe Avenue, Suite 102
La Jolla, CA  92037
Telephone:  (858) 914-2001
Facsimile:   (858) 914-2002
fbottini@bottinilaw.com
achang@bottinilaw.com
abeste@bottinilaw.com
ykolesnikov@bottinilaw.com
nwoltering@bottinilaw.com


**COTCHETT, PITRE & McCARTHY LLP**

By:  */s/ Nanci E. Nishimura*
Nanci E. Nishimura (Cal. Bar No. 152621)
Brian Danitz (Cal. Bar. No. 247403)
Karin B. Swope (admitted *pro hac vice*)
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Tel.: (650) 697-6000
Fax: (650) 697-0577
*nnishimura@cpmlegal.com*

February 1, 2022: Page 10

*bdanitz@cpmlegal.com*
*kswope@cpmlegal.com*

February 1, 2022: Page 11

Dated: February 1, 2022                                   COOLEY LLP


By: */s/ Jeffrey M. Gutkin*
    Michael G. Rhodes
    Jeffrey M. Gutkin
    Aarti G. Reddy
    Kyle C. Wong
    Kelsey R. Spector
    Colin S. Scott
    3 Embarcadero Center, 20th floor
    San Francisco, CA  94111-4004
    Tel.:  415-693-2000
    Fax:  415-693-2222
    rhodesmg@cooley.com
    jgutkin@cooley.com
    kspector@cooley.com
    cscott@cooley.com

    Robby L.R. Saldaña
    1299 Pennsylvania Avenue NW
    Suite 700
    Washington, DC   20004-2400
    Tel.:  202-776-2109
    Fax:  202-842-7899
    rsaldana@cooley.com

Attorneys for Defendant
GOOGLE LLC

February 1, 2022: Page 12

## ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1(i)(3)

I, Elizabeth C. Pritzker, attest that concurrence in the filing of this document has been obtained from the other signatories. I declare under penalty of perjury that the foregoing is true and correct. Executed this 1st day of February, 2022, at Emeryville, California.

/s/ *Elizabeth C. Pritzker*
Elizabeth C. Pritzker