# REDACTED VERSION OF EXHIBIT A

1          UNITED STATES DISTRICT COURT

2          NORTHERN DISTRICT OF CALIFORNIA

3          SAN JOSE DIVISION          COPY

4

5    PATRICK CALHOUN, ELAINE CRESPO,   )   C-20-05146 LHK
     HADIYAH JACKSON, AND CLAUDIA      )
6    KINDLER, ON BEHALF OF             )   SAN JOSE, CALIFORNIA
     THEMSELVES AND ALL OTHERS         )
7    SIMILARLY SITUATED,               )   MARCH 5, 2021
                                       )
8                   PLAINTIFFS,        )   PAGES 1-58
                                       )
9            VS.                       )   **SEALED PROCEEDINGS**
                                       )
10   GOOGLE LLC,                       )
                                       )
11                  DEFENDANT.         )
     _____  )

12

13

14          TRANSCRIPT OF SEALED ZOOM PROCEEDINGS
           BEFORE THE HONORABLE SUSAN VAN KEULEN
15            UNITED STATES MAGISTRATE JUDGE

16

17   A P P E A R A N C E S:

18   FOR THE PLAINTIFFS:     SIMMONS HANLY CONROY LLC
                             BY:  JASON "JAY" BARNES
19                           112 MADISON AVENUE, 7TH FLOOR
                             NEW YORK, NEW YORK  10016
20

21          APPEARANCES CONTINUED ON NEXT PAGE

22

23   OFFICIAL COURT REPORTER:     LEE-ANNE SHORTRIDGE, CSR, CRR
                                  CERTIFICATE NUMBER 9595
24

25          PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
           TRANSCRIPT PRODUCED WITH COMPUTER

1

2      APPEARANCES (CONTINUED)

3

4      FOR THE PLAINTIFFS:        KAPLAN FOX & KILSHEIMER LLP
                                  BY:  DAVID A. STRAITE
5                                 850 THIRD AVENUE
                                  NEW YORK, NEW YORK  10022
6

7                                 BLEICHMAR FONTI & AULD LLP
                                  BY:  LESLEY WEAVER
8                                 555 12TH STREET, SUITE 1600
                                  OAKLAND, CALIFORNIA  94607
9

10     FOR THE DEFENDANT:         QUINN EMANUEL URQUHART & SULLIVAN
                                  BY:  ANDREW H. SCHAPIRO
11                                191 N. WACKER DRIVE, SUITE 2700
                                  CHICAGO, ILLINOIS  60606
12

13                                BY:  STEPHEN A. BROOME
                                       VIOLA TREBICKA
14                                865 S. FIGUEROA STREET, 10TH FLOOR
                                  LOS ANGELES, CALIFORNIA  90017
15

16

17

18

19

20

21

22

23

24

25

```
 1      SAN JOSE, CALIFORNIA                    MARCH 5, 2021

 2                        P R O C E E D I N G S

 3          (SEALED ZOOM PROCEEDINGS CONVENED AT 9:33 A.M.)

 4              THE CLERK:  PLEASE COME TO ORDER, THE HONORABLE

 5      SUSAN VAN KEULEN PRESIDING.

 6              THE COURT:  GOOD MORNING.  GOOD MORNING, EVERYONE.

 7      WE ARE ON TODAY FOR A SPECIALLY SET HEARING.

 8          I'LL HAVE MS. FANTHORPE CALL THE MATTER AND THEN I'LL MAKE

 9      IT CLEAR ON THE RECORD THAT IT IS SEALED AFTER I GET EVERYONE'S

10      APPEARANCES.

11              THE CLERK:  THANK YOU, YOUR HONOR.

12          CALLING CASE 20-CV-5146, CALHOUN, ET AL, VERSUS GOOGLE,

13      LLC.

14          COUNSEL, PLEASE IDENTIFY YOURSELVES FOR THE RECORD,

15      BEGINNING WITH PLAINTIFF.

16              MS. WEAVER:  GOOD MORNING, YOUR HONOR.

17          LESLEY WEAVER OF BLEICHMAR, FONTI & AULD ON BEHALF OF

18      PLAINTIFFS.

19          AND MY CO-COUNSEL CAN INTRODUCE THEMSELVES AS WELL.

20              THE COURT:  MS. WEAVER, GOOD MORNING.

21              MS. WEAVER:  GOOD MORNING.

22              MR. BARNES:  GOOD MORNING, YOUR HONOR.

23          JAY BARNES WITH SIMMONS, HANLY, CONROY ON BEHALF OF THE

24      PLAINTIFFS.

25              THE COURT:  MR. BARNES, GOOD MORNING.
```

```
 1              MR. STRAITE:  AND GOOD MORNING, YOUR HONOR.

 2         THIS IS DAVID STRAITE FROM KAPLAN, FOX & KILSHEIMER LLP,

 3    ALSO FOR PLAINTIFFS.

 4              THE COURT:  MR. STRAITE, GOOD MORNING.

 5         AND FROM DEFENDANTS TODAY.

 6              MS. TREBICKA:  GOOD MORNING, YOUR HONOR.

 7         THIS IS VIOLA TREBICKA WITH QUINN, EMANUEL ON BEHALF OF

 8    GOOGLE.

 9              THE COURT:  GOOD MORNING, MS. TREBICKA.

10              MR. SCHAPIRO:  I'M ANDREW SCHAPIRO, ALSO ON BEHALF OF

11    GOOGLE, ALSO FROM QUINN, EMANUEL.

12              THE COURT:  MR. SCHAPIRO, GOOD MORNING.

13              MR. BROOME:  GOOD MORNING, YOUR HONOR.

14         STEPHEN BROOME ALSO ON BEHALF OF GOOGLE FROM QUINN,

15    EMANUEL.

16              THE COURT:  MR. BROOME, GOOD MORNING.

17              MR. ANSORGE:  GOOD MORNING, YOUR HONOR.

18         I'M JOSEPH ANSORGE, ALSO ON BEHALF OF GOOGLE, AND ALSO

19    FROM QUINN, EMANUEL.

20              THE COURT:  MR. ANSORGE, GOOD MORNING.

21         ALL RIGHT.  I THINK THAT'S EVERYBODY WHO'S ON THE SCREEN,

22    SO LET ME JUST CHECK OUR WAITING ROOM.

23         EXCELLENT.  OKAY.  THE HEARING TODAY IS SEALED PURSUANT TO

24    A MOTION BY GOOGLE TO SEAL THE PROCEEDINGS DUE TO THE TECHNICAL

25    AND PROPRIETARY NATURE OF THE INFORMATION THAT WE MAY BE
```

1    DISCUSSING.

2        I WANT TO MAKE IT CLEAR THAT OBVIOUSLY THE PREFERENCE OF

3    THE COURT, AND OF COURSE THE MANDATE, IS THAT THESE PROCEEDINGS

4    BE PUBLIC.

5        I HAVE ALLOWED TODAY'S PROCEEDING TO BE SEALED BECAUSE I,

6    FOR ONE, HAVE A LOT OF QUESTIONS, AS I'M SURE OTHERS DO AS

7    WELL, AND I WANT US TO BE ABLE TO HAVE A FULL AND FRANK

8    DISCUSSION OF THE ISSUES AND THE RELEVANT FACTS.

9        THIS IS BY NO MEANS AN INDICATOR THAT FUTURE DISCOVERY

10    PROCEEDINGS WILL BE SEALED, AND I WILL TAKE EACH OF THOSE ON A

11    CASE-BY-CASE BASIS.

12        ALL RIGHT.  WITH THAT IN MIND, SO LET'S SEE.  WHO HAS THE

13    MIC TODAY FOR PLAINTIFFS?  IS THAT YOU, MS. WEAVER?  DID I HEAR

14    YOU SAY THAT?

15            MS. WEAVER:  YES.  YES.

16            THE COURT:  ALL RIGHT.

17        AND MS. TREBICKA, IT'S YOU FOR DEFENDANT?

18            MS. TREBICKA:  YES, YOUR HONOR.  AND MY PARTNER,

19    MR. SCHAPIRO, MAY ALSO JUMP IN AT TIMES, ESPECIALLY IF WE GET

20    TO QUESTION 5.

21            THE COURT:  OKAY.  EXCELLENT.

22            MS. WEAVER:  AND SIMILARLY, YOUR HONOR, MR. BARNES

23    MAY JUMP IN ON SOME OF THE MORE TECHNICAL QUESTIONS.

24            THE COURT:  ALL RIGHT.  I'M SURE COUNSEL WILL

25    IDENTIFY THEMSELVES AND ASK TO BE HEARD AT THE APPROPRIATE

 1    TIME, AND I -- AND I APPRECIATE THAT.  THANK YOU.  IT HELPS ME

 2    KEEP TRACK OF WHO'S WHO.

 3         I ISSUED AN ORDER A COUPLE OF DAYS AGO BECAUSE I WANTED TO

 4    GIVE THE PARTIES SOME GUIDANCE.

 5         I WENT THROUGH, OBVIOUSLY, THE INITIAL DISCOVERY DISPUTE,

 6    I WENT THROUGH THE SUBSEQUENT MATERIALS, INCLUDING THE

 7    DECLARATIONS THAT WERE PROVIDED FOLLOWING THAT, AND I THOUGHT

 8    IT WOULD BE HELPFUL TO GIVE THE PARTIES SOME GUIDANCE AT LEAST

 9    WHERE I WANT TO START THE DISCUSSION, AND I KNOW THERE ARE

10    OTHER ISSUES, BUT I THINK THAT THIS IS WHERE WE NEED TO FOCUS,

11    AT LEAST TO GET US UNDERWAY.

12         FIRST, I WILL AGAIN REMIND THE PARTIES, BECAUSE MY

13    PREVIOUS ADMONITIONS PERHAPS WERE NOT FULLY APPRECIATED, THIS

14    IS NOT A SPOLIATION HEARING.  IF PLAINTIFF WANTS TO PURSUE A

15    SPOLIATION CLAIM AND BELIEVES THEY HAVE APPROPRIATE GROUNDS FOR

16    THAT, THAT'S FINE.  MY -- THIS IS WITHOUT PREJUDICE TO ANY

17    FUTURE DISCUSSIONS REGARDING SPOLIATION.  BUT THAT IS NOT THE

18    ISSUE BEFORE US TODAY.

19         ACCORDINGLY, I DO NOT WANT TO HEAR COMMENTS ABOUT

20    DESTRUCTION OF EVIDENCE, AND I DO NOT WANT A REHASH OF THE MEET

21    AND CONFER BETWEEN THE PARTIES AROUND THE DATABASE,

22    PRESERVATION OF DATABASE ISSUES.

23         I UNDERSTAND THESE ARE TOP OF MIND ON BOTH SIDES.  WE'LL

24    SET THOSE ASIDE FOR TODAY.

25         SECOND THEN, AS I INDICATED, WHAT I WANT TO START WITH IS

SEALED PROCEEDINGS

1    SOME INFORMATION FROM GOOGLE WITH REGARDS TO THE DATA LOGS THAT

2    ARE AT ISSUE, AND I UNDERSTAND THAT EVEN THE SCOPE OF WHICH

3    LOGS MIGHT BE AT ISSUE MAY ALSO BE IN DISPUTE, BUT THESE ARE

4    THE LOGS THAT ARE -- THIS IS THE LONGEST LIST OF LOGS THAT WAS

5    IDENTIFIED IN THE PAPERS.

6        SO THAT'S WHERE WE WILL START, AND THEN WE'LL MOVE THROUGH

7    THE OTHER QUESTIONS.

8        AND AS I SAY, OTHER ISSUES THAT PERTAIN TO THIS, WE CAN

9    GET TO THOSE.  BUT LET'S START HERE.

10        SO WITH THAT SAID, MS. TREBICKA, I THINK I SHOULD START

11    WITH YOU AND INFORMATION AROUND THE FOUR DATA LOGS, THE MY

12    ACTIVITY, ANALYTICS, DISPLAY AD, AND SYNC TRAFFIC.

13        MS. TREBICKA:  YES, YOUR HONOR.  I'D LIKE TO START --

14    I'LL ADDRESS EACH CATEGORY OF LOGS IN TURN, AND I'LL START WITH

15    THE GOOGLE ANALYTICS LOGS.

16        DEPENDING ON THE USER'S BROWSER, MODE, AND SETTINGS AND

17    OTHER PARAMETERS THAT MAY BE APPLIED BY THE WEBSITES USING THE

18    GOOGLE ANALYTICS PRODUCT, THESE LOGS GENERALLY RECORD THE

19    FOLLOWING DATA POINTS:  ████████████████████████

20    ████████████████████████████████████████████████

21    ████████████

22        NOW, FOR THE GOOGLE ANALYTICS LOGS, THERE MAY BE

23    ADDITIONAL INFORMATION RECORDED, FOR EXAMPLE, ██████████████

24    ██████████████

25        THE X-CLIENT-DATA HEADER, WHICH IS ALSO A TERM THAT YOUR

1    HONOR HAS SEEN IN BRIEFING, ██████████████

2    ██████    SO IF A USER VISITS A WEBSITE THAT ONLY USES THE

3    GOOGLE ANALYTICS SERVICES, ████████████████

4    ████████████

5              THE COURT:  I'M SORRY, THE WHAT HEADER?

6              MS. TREBICKA:  THE X-CLIENT-DATA HEADER.  AND IT'S

7    SPELLED X DASH CLIENT DASH DATA HEADER.

8              THE COURT:  OKAY.

9              MS. TREBICKA:  GOOGLE ANALYTICS COLLECTS THIS

10   INFORMATION ON BEHALF OF THE WEBSITES BECAUSE GOOGLE ANALYTICS

11   IS A SERVICE THAT OFFERS WEBSITES A MEANS TO TRACK AND REPORT

12   TRAFFIC ON THEIR SITES.

13        SO, FOR EXAMPLE, GOOGLE ANALYTICS, BY COLLECTING THESE

14   DATA POINTS, CAN PROVIDE WEBSITES WITH DATA ON WHICH OF THEIR

15   PAGES ARE MOST VISITED SO THAT THE WEBSITES CAN UNDERSTAND WHAT

16   PRODUCTS, SERVICES ARE MORE POPULAR ON THEIR SITES, AND THAT'S

17   THE DATA THAT I -- THE DATA THAT I OUTLINED ABOVE IS RECEIVED

18   FOR THAT PURPOSE.

19        NOW, MOVING ON TO GOOGLE AD MANAGER --

20             THE COURT:  SO BEFORE WE LEAVE THAT, DOES GOOGLE

21   ANALYTICS, ████████████████████

22   ██████████████████████████

23             MS. TREBICKA:  CORRECT, YOUR HONOR.  ████████████

24   ████████████████

25             THE COURT:  OKAY.

SEALED PROCEEDINGS

```
1          MS. TREBICKA:  THE GOOGLE AD MANAGER, SEPARATE

2    PRODUCT, IT'S AN AD EXCHANGE.  SO A WEBSITE WILL USE GOOGLE AD

3    MANAGER TO SELL ADVERTISING SPACE, AND ALSO DISPLAY THE

4    ADVERTISING ON ITS WEBSITE.

5          TO ACCOMPLISH THIS, GOOGLE AD MANAGER NEEDS TO OBTAIN

6    CERTAIN DATA POINTS AS WELL FROM THE WEBSITE VISITOR.  SO, FOR

7    EXAMPLE, ███████████████████████  IT CANNOT DISPLAY

8    AN AD TO THE BROWSER.

9          SIMILAR TO GOOGLE ANALYTICS, DEPENDING ON THE USER'S

10   BROWSER, MODE, SETTINGS AND OTHER PARAMETERS THAT MAY BE

11   EMPLOYED BY THE WEBSITES THAT EMPLOY GOOGLE AD MANAGER, THE

12   LOGS AT ISSUE WILL GENERALLY RECORD THE FOLLOWING DATA POINTS:

13   ████████████████████████████████████

14   ███████████████████████████

15        ALSO ████████████████████████

16   ██████████████████████████████████████

17   ████████████████████████

18        THERE MAY BE ADDITIONAL INFORMATION IN THESE LOGS, FOR

19   EXAMPLE, ██████████████████████████████

20   ███████████████████  ET CETERA.

21        BUT AS FAR AS THE CATEGORIES THAT ARE MOST AT ISSUE HERE

22   BECAUSE THEY ARE THE CATEGORIES THAT PLAINTIFFS ALLEGE WERE

23   COLLECTED, THAT COVERS IT, THE CATEGORIES THAT I MENTIONED.

24        MOVING ON TO THE MY ACTIVITY -- GO AHEAD.

25          THE COURT:  SO BEFORE WE LEAVE AD MANAGER, AGAIN,
```

1    THAT'S A SERVICE THAT IS USED BY THIRD PARTY WEBSITES?

2              MS. TREBICKA:  CORRECT.

3              THE COURT:  ALL RIGHT.

4              MS. TREBICKA:  MOVING ON TO THE MY ACTIVITY LOGS,

5    THESE LOGS ███████████████████████████████████████████████

6    ████████████████████████████████████████     ████████████

7    ██████████████████████ THE USER INTERFACE THAT SHOWS TO AN

8    INDIVIDUAL THEIR ACTIVITY ON THE THIRD PARTY SITES WHEN THEY'RE

9    LOGGED IN AND WHEN THEY HAVE ENABLED THE APPROPRIATE SETTING

10   FOR THAT ACTIVITY TO BE RECORDED, ████████████████████████

11   ███████████████████

12             THE COURT:  I'M SORRY, SAY THAT AGAIN.  IT ALLOWS

13   THE --

14             MS. TREBICKA:  AN INDIVIDUAL --

15             THE COURT:  -- INDIVIDUAL USER TO SEE, TO TRACK THEIR

16   ACTIVITY ON WEBSITES?

17             MS. TREBICKA:  TO SEE -- CORRECT, TO SEE THEIR

18   ACTIVITY ON THIRD PARTY WEBSITES THAT THEY VISITED WHILE THEY

19   WERE LOGGED INTO A GOOGLE ACCOUNT, AND ALSO WHEN THEY HAD

20   ENABLED THE SETTING IN THEIR GOOGLE ACCOUNT ███████████████

21   ██████████████████████████████████████████████████████████

22   THEY CAN GO TO MY ACTIVITY, SEE THE PRECISE URL, URL'S VISITED

23   FROM THAT INTERFACE WITH GOOGLE.

24        AND THE LOGS --

25             THE COURT:  ████████████████████████████████████

1    ████████

2        MS. TREBICKA:    ██████████████████████

3    ████████

4    AND THE GENERAL CATEGORIES COLLECTED ARE ███████████

5    ██████████████████████████████████████████

6    ███████████████████████████████████████

7    ██████.

8        AS I MENTIONED, ████████████████████████

9    █████████████████████   ███████████████

10       THE COURT:    ████████████████████████████

11   ██████

12       MS. TREBICKA:    ██████████████████████████

13   ██████   ████████████████████████████

14   MOVING ON TO THE SYNC TRAFFIC LOGS, CHROME SYNC IS A TOOL

15   THAT IS AVAILABLE IN THE CHROME BROWSER, AND THE PURPOSE OF IT

16   IS TO SYNC DATA ACROSS A USER'S DEVICES.

17   THE SYNC TRAFFIC LOGS ARE ██████████████████████

18   ████████████████████████████████████

19   NOW, THE PRECISE DATA THAT IS IDENTIFIED IN THESE SYNC

20   TRAFFIC LOGS, AGAIN, WILL DEPEND ON USER SETTINGS.  ONCE THE

21   USER ENABLES SYNC, THERE ARE A HOST OF ADDITIONAL CATEGORIES

22   THAT THE USER CAN EITHER ENABLE OR DISABLE SYNC ON.  AND IN

23   PARTICULAR, I WILL TELL YOU, YOUR HONOR, WHAT THOSE CATEGORIES

24   ARE:  APPS; BOOKMARKS; EXTENSIONS; HISTORY; SETTINGS; THEMES;

25   OPEN TABS; PASSWORDS; ADDRESSES; PHONE NUMBERS; AS WELL AS

1      PAYMENT METHODS.

2             IMPORTANT FOR THE DISCUSSION IS THAT THE CHROME SYNC

3      TRAFFIC LOGS █████████████████████████████

4      ███████████████████████████████████████████

5      ██████████████████████████████████████████

6      ██████████████████████████████

7             THE COURT:  I'M SORRY.  SAY THAT AGAIN.

8             MS. TREBICKA:  YES.  SO THE CHROME SYNC TRAFFIC LOGS

9      ████████████████████████████   ██████████

10     █████████████████████████

11         ██   ██████████████████████████████

12     ██████████████████████████████████████

13     ███████████████████████████████████████████

14     ███████████████████████████████████████████

15     ██████████████████████████████████

16            THE COURT:  ALL RIGHT.

17         GOING BACK TO THE MY ACTIVITY LOG, IS THAT CONTROLLED BY

18     THE INDIVIDUAL USER?

19            MS. TREBICKA:  THE LOG -- GO AHEAD, YOUR HONOR.

20            THE COURT:  NO.  YEAH, THE MY ACTIVITY LOG, WHO SETS

21     THOSE SETTINGS?

22            MS. TREBICKA:  ███████████████   ████████████

23     ██████████████████

24         ████████████████████████   ██████████████

25     ████████████████████████████

1        GOOGLE PROVIDES USERS THE ABILITY TO DELETE CERTAIN OF

2   THEIR HISTORY, BROWSING HISTORY, FROM THIS INTERFACE ON THEIR

3   MY ACTIVITY ACCOUNT.  SO IF I GO IN AND SEE THAT I VISITED

4   BED BATH & BEYOND AND I'D LIKE TO REMOVE THAT, I CAN DELETE IT

5   FROM MY ACCOUNT, THE MY ACTIVITY INTERFACE THAT I SEE, AND THEN

6   ████████████████████████████████████████████████████████

7   ████████████████████████████████████████████████████████

8   ████████████████████████████████████████

9        THE COURT:  OKAY.

10      AND THEN IN THE --

11           MS. TREBICKA:  CAN I --

12           THE COURT:  YES, PLEASE.

13           MS. TREBICKA:  CAN I JUST CONTROL -- OR RATHER

14   CLARIFY ONE MORE THING?

15   ████████████████████████████████████████████████

16   ████████████████████████████████████████████████████████

17   ██████████████████████████████████

18           THE COURT:  ARE WE STILL IN THE -- TALKING ABOUT THE

19   MY ACTIVITY LOG?

20           MS. TREBICKA:  CORRECT, YOUR HONOR, JUST TO

21   SUPPLEMENT THAT RESPONSE.

22           THE COURT:  OKAY.  SAY THAT AGAIN --

23           MS. TREBICKA:  SO THE USER --

24           THE COURT:  -- WHAT YOU WANTED TO ADD.

25           MS. TREBICKA:  OKAY.  ████████████████████████

SEALED PROCEEDINGS

1 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

2 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

3 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

4 ▮▮▮▮▮▮▮▮

5 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

6 ▮▮▮▮▮▮

7          THE COURT:  OKAY.  GOT IT.  THANK YOU.

8          MS. TREBICKA:  CAN I MAKE ONE MORE POINT, YOUR HONOR,

9 ABOUT THE TRAFFIC LOGS --

10          THE COURT:  OF COURSE.

11          MS. TREBICKA:  -- JUST TO COMPLETE AT LEAST THE

12 OVERVIEW ON THOSE?

13          THE GOOGLE -- ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

14 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

15 ▮▮▮▮▮▮▮  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

16 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

17 ▮▮▮▮▮▮▮▮▮▮

18          AND, OF COURSE, THE COMPLAINT AT ISSUE ALLEGES A CLASS OF

19 USERS WHO HAVE NOT ENABLED SYNC AND, ▮▮▮▮▮▮▮▮▮▮▮

20 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

21          THE COURT:  OKAY.  ALL RIGHT.  THAT'S VERY HELPFUL.

22 THANK YOU.

23          I THINK THAT, AT LEAST FOR OUR INITIAL DISCUSSION

24 PURPOSES, THAT PROVIDES SOME HELPFUL INSIGHT AND BACKGROUND.

25          LET'S TURN TO QUESTION 3, WHICH IS NOT STRICTLY A QUESTION

1    FOR GOOGLE, BUT SINCE I HAVE MS. TREBICKA GOING, LET'S START

2    THERE WITH REGARDS TO OTHER SOURCES FOR THE DATA, AND I'M

3    LOOKING AT THE COMPLAINT AND THE KIND OF DATA THAT THE

4    PLAINTIFFS HAVE IDENTIFIED WAS TRANSFERRED.

5        OTHER SOURCES THAT YOU'RE AWARE OF OTHER THAN THESE

6    TRAFFIC LOGS?  OR I SHOULD SAY THESE DATA LOGS.

7            MS. TREBICKA:  THE LOGS.

8        YOUR HONOR, THE SCREENSHOTS THAT PLAINTIFFS HAVE INCLUDED

9    IN THEIR COMPLAINT SHOW THE FACT OF THE TRANSFER AND THE

10   CONTENT.  IT'S TRANSPARENT.

11       AND WE DON'T DISPUTE THAT THE TRANSFER HAPPENS IN A WAY

12   THAT IS DEMONSTRATED BY USING EVEN THE SIMPLE DEBUGGING TOOLS,

13   THE FIDDLER TOOL, AS PLAINTIFF TELL YOU.

14       BUT TO THE EXTENT THAT ANYTHING IN ADDITION TO THAT IS

15   NEEDED, THE LOGS THAT RELATE TO THESE PARTICULAR PLAINTIFFS'

16   ACTIVITY THAT GOOGLE HAS PRESERVED -- AND WE'RE WILLING TO --

17   WE HAVE PUT UP AS A COMPROMISE, A PRODUCTION OF WHICH WE HAD

18   PUT UP AS A COMPROMISE, WILL ALSO SHOW THE PRECISE INFORMATION

19   ON THE FACT OF TRANSFER AND THE CONTENT OF SUCH TRANSFERS.

20       AND, YOUR HONOR, THERE'S PERHAPS MORE THAT WE CAN, WITH --

21   IF FACED WITH DISCOVERY REQUESTS, WRITTEN DISCOVERY REQUESTS

22   THAT SEEK ADDITIONAL SOURCES, WE CAN, I'M SURE, GO BACK AND

23   FIGURE OUT IF THOSE KINDS OF SOURCES EXIST AND WHAT THEY COULD

24   LOOK LIKE.

25       WE HAVE STARTED TO DO SOME OF THAT WORK, BUT IT'S -- NO

1    WRITTEN DISCOVERY RELATED TO THE FACT OF TRANSFER OR CONTENT OF

2    TRANSFER HAS YET BEEN SERVED, AND THEREFORE, WE'RE SORT OF AT

3    THE INCEPTION OF THAT, OF THAT INVESTIGATION.

4         THE COURT:  ALL RIGHT.  HANG ON JUST A SECOND.  I

5    WANT TO BE SURE MY NOTES ARE KEEPING UP WITH THE DISCUSSION

6    TODAY.

7         (PAUSE IN PROCEEDINGS.)

8         THE COURT:  ALL RIGHT.  YOU ANTICIPATED, NOT

9    SURPRISINGLY, QUESTION 4, WHICH IS, HOW DOES THE PROPOSAL MADE

10   BY GOOGLE, WHICH I LOOKED AT AND OBVIOUSLY I'M PARTICULARLY

11   FOCUSSED ON GOOGLE'S PARAGRAPH 2, WHICH IS THE WEB BROWSING

12   DATA.  THE SUBSCRIBER INFORMATION, I WOULD ASSUME, IS AT

13   GOOGLE'S FINGERTIPS.

14        THE WEB BROWSING DATA, WHAT -- HOW DOES THAT RELATE TO THE

15   DATA THAT'S BEEN IDENTIFIED BY THE INDIVIDUALS AS HAVING BEEN

16   INAPPROPRIATELY TRANSFERRED?

17        MS. TREBICKA:  IT WILL INCLUDE SOME OF THOSE

18   CATEGORIES AT ISSUE.  ████████████████████████████████

19   ████████████████████████████████████████████

20   ████████████████████████████████████████████

21   ████████████████████████████████  ████████████

22   ████████████

23        PERHAPS THE -- SO THE MORE -- THE CATEGORY OF THE

24   COMPROMISE THAT WE'D LIKE TO FOCUS YOUR HONOR'S ATTENTION TO IS

25   3 --

```
 1          THE COURT:  UM-HUM.

 2          MS. TREBICKA:  --  ████████████████████████████████

 3    ██████████████████████████████████████████████████████

 4    ████████████████████████████████████████████████

 5       ████████████████████████████████████████████████████████

 6    ██████████████████████████████████████████████████████

 7    ██████████████████████████████████████████████

 8       ████████████████████████████████████████████████████

 9    ██████████████████████████████████████████████████████████

10    ████████████████████████████████████████████████████████

11    ██████████████████████████████████████████

12          THE COURT:  IS THAT THE AD MANAGER?

13          MS. TREBICKA:  CORRECT.

14       NOW, MR. CALHOUN -- I'D LIKE, JUST FOR COMPLETENESS, YOUR

15    HONOR, I'D LIKE TO POINT OUT THAT MR. CALHOUN IS DIFFERENTLY

16    SITUATED BECAUSE --

17          THE COURT:  OKAY.  SO BEFORE WE GET THERE -- THAT'S

18    AN IMPORTANT DISTINCTION AND I DO WANT TO GET THERE -- BUT I

19    WANT TO BE SURE I UNDERSTAND YOUR COMMENT WITH REGARDS TO

20    PARAGRAPH 3 OF THE GOOGLE PROPOSAL, WHICH IS THAT FOR USERS

21    THAT ARE LOGGED INTO A GOOGLE ACCOUNT -- SO YOU GO ONLINE, YOU

22    GO TO YOUR GOOGLE ACCOUNT AND THEN YOU START BROWSING, SHOPPING

23    AT BED BATH & BEYOND, HOME DEPOT, AMAZON, WHEREVER, WHEREVER

24    PEOPLE GO.  ██████████████████████████████████████████████

25    ████████████████████████████████████████████████████
```

SEALED PROCEEDINGS

1       MS. TREBICKA: ███████████████████████

2    ████████████████████████████████████████

3    █████████████████████████████████████████

4    ███████████████████████████████████████

5    ████████████████████

6       THE COURT:  UM-HUM.

7       MS. TREBICKA: ████████████████████████

8    █████████████  █████████████████████████████

9    █████████████

10      THE WAY THAT GOOGLE ANALYTICS WORKS IS THAT IT COLLECTS

11   DATA ON BEHALF OF EACH WEBSITE AND THE DATA THAT'S COLLECTED IS

12   ALSO STORED FOR -- ON BEHALF OF THE WEBSITE.  IT REALLY IS THE

13   WEBSITE'S DATA.

14          ████████████████████████████  ██████████████

15   ████████████████████████████████████████

16   ███████████████████████████████████

17   ████████████████████

18      SO WHAT WE DID INSTEAD, FOR PURPOSES OF THIS PRESERVATION

19   DISPUTE, █████████████████████████████████

20   █████████████████████████████████████████

21   █████████████████████████████████████████

22   ██████████████████████████████████

23      THE COURT:  OKAY.  SO THAT'S FROM THE ANALYTICS LOG?

24      MS. TREBICKA:  CORRECT.

25      THE COURT: █████████████████████████████



```
 1   ████████████████████████████████████████████████

 2   ███████████████████████████████████

 3            MS. TREBICKA:   ████████████

 4            THE COURT:  OKAY.  AND THEN AS FOR MR. -- SO -- WELL,

 5   LET'S FINISH THAT, PRESERVING.  TELL ME WHAT ELSE YOU'RE

 6   PRESERVING.

 7            MS. TREBICKA:   ████████████████████████████████

 8   ██████████████████████████████████████████████

 9   ██████████████████████████████████████████████

10   ████████████████████████████████████████████████████

11   ██████████████████████████████████████████████

12   ███████████████████████

13            THE COURT:  OKAY.  ALL RIGHT.  AND██████████████████

14   ███████████████████

15            MS. TREBICKA:   ██████████████████████████████

16   ████████████████████████████████████████

17            THE COURT:   ████████████████

18            MS. TREBICKA:   ████████████████████████████

19   █████████████████

20            THE COURT:  OKAY.

21       █████████████████████████████████████████████████

22   ████████████████████████████████   ████████████████

23   █████

24            MS. TREBICKA:   ████████████████████████  █

25   ████████████████████████████████████████████████
```



1    ████████████████████████████    ██████████████

2    ████████████████████████████████████

3    ████████████████    ██████████████████████████

4         THE COURT:  ████████████████████████████

5    ███████████████████████████  --

6         MS. TREBICKA:  ████████

7         THE COURT:  ██████████████████

8         MS. TREBICKA:  ████████

9         THE COURT:  ALL RIGHT.  ████████████████████

10   ████████████████████████

11        MS. TREBICKA:  ████████████████████

12   ██████████████████████████████

13   ████████████████████████████████████

14   ██████████████████████████████████

15   ████████

16        ████████████████████████████████  ██

17   ██████████████████████████████████████

18   ████  ██████████████████████████████

19   ████████████████████████████████████████

20   ████████

21        THE COURT:  ALL RIGHT.  ████████████████

22   ████████████████████████████████

23        MS. TREBICKA:  CORRECT.

24        THE COURT:  HOW FAR BACK?

25        MS. TREBICKA:  THAT I THINK -- WELL,  ████████████

1    ██████████████████████████████    ██████████████████

2    █████████████████    SO GOOGLE ALLOWS USERS TO SET RETENTION

3    PERIODS OF 3, 6, 18 MONTHS, ET CETERA.  SO IT WILL REALLY

4    DEPEND ON THE PARTICULAR CONTROLS THAT THE USER HAS SET, AND I

5    JUST DON'T -- I DON'T KNOW.  I DON'T HAVE IT AT MY FINGERTIPS

6    HOW FAR BACK THOSE GO FOR THESE USERS.

7              THE COURT:  OKAY.  AND WITH REGARDS TO SYNC TRAFFIC

8    LOGS?

9              MS. TREBICKA:  SO SYNC TRAFFIC LOGS, YOUR HONOR, ████

10   █████████████████████████████    OR THAT WE HAVE FOCUSSED

11   ON PRESERVING BECAUSE THEY ARE NOT RELEVANT HERE.

12       ████████████████████████████████████████████

13   ██████████████████████    THAT'S NOT SOMETHING WE HAVE

14   CURRENTLY FOCUSSED OUR EFFORTS ON.

15             THE COURT:  OKAY.  NOW, YOU WERE GOING TO DRAW A

16   DISTINCTION AS TO MR. CALHOUN.

17             MS. TREBICKA:  SO MR. CALHOUN IS DIFFERENTLY SITUATED

18   BECAUSE THE SCREENSHOTS TAKEN AND APPLIED IN THE COMPLAINT WERE

19   TAKEN WHILE HE WAS BROWSING WHILE HE WAS LOGGED OUT OF HIS

20   GOOGLE ACCOUNT.

21             THE COURT:  UM-HUM.

22             MS. TREBICKA:  SO THE COOKIE VALUE THAT PLAINTIFFS

23   PROVIDED US WITH FOR MR. CALHOUN, AND REPRESENTED THAT IT IS

24   MR. CALHOUN'S, WE HAVE -- WE DON'T VERIFY THAT, WE HAVE NO WAY

25   OF VERIFYING IT -- IS THE COOKIE VALUE THAT'S FOUND ON

1      MR. CALHOUN'S BROWSERS, OR BROWSER.

2          MY UNDERSTANDING IS ENGINEERS CALL THAT COOKIE IN THE WILD

3      BECAUSE THOSE VALUES ARE ENCRYPTED.

4          TO PRESERVE THE ASSOCIATED, THE DATA ASSOCIATED WITH

5      MR. CALHOUN WHILE HE WAS BROWSING WHILE NOT LOGGED OUT -- WHILE

6      LOGGED OUT, WE WOULD HAVE TO GO THROUGH ADDITIONAL STEPS BEYOND

7      SIMPLY COLLECTING INFORMATION THAT'S REASONABLY AVAILABLE.  ██

8      ████████████████████████████████████████████████████████

9      ████████████████████████████████████████████████████████

10     ██████

11          ███████████████████████████████████████████████████

12     █████████████████████████████████████████████  AND

13     THAT'S FOR PRIVACY CONCERNS, SECURITY CONCERNS, POLICIES, A LOT

14     OF COMPLIANCE CONCERNS WITH PRIVACY LAWS, AS WELL AS OTHER

15     REGULATIONS.

16          ████████████████████████████████████████████████████

17     ███████████  █████████████████████████  ███████████████████

18     ████████████████████████████████████████████████████

19          ████████████████████████████████████████████████████

20     ████████████████████████████████████████████████████████

21     ████████████████████████  --

22          THE COURT:  UM-HUM.

23          MS. TREBICKA:  ███████████  ███████████████████████████

24     ██████████

25          ████████████████████████████████████████████████████

SEALED PROCEEDINGS

1 ███████████████████████████████████████

2 ███████████████████████████████████

3 ████████

4           THE COURT:  OKAY.  ALL RIGHT.  SO THAT'S VERY

5 HELPFUL.  THANK YOU, MS. TREBICKA.

6       LET ME ASK YOU THIS QUESTION, WHICH I HOPE YOU OR SOMEONE

7 ON THE TEAM IS ABLE TO ANSWER, WHICH IS ████████████

8 ████████████████████████████████████

9 ██████████████████████████████████████

10 ████████████████████████████████████

11 ████████████

12       AND I --

13           MS. TREBICKA:  YEAH.

14           THE COURT:  MY QUESTION IS REALLY FOR ANY IDENTIFIED

15 PERIOD OF TIME -- AND MAYBE IT'S VERY LIMITED, MAYBE IT'S

16 LONGER, AND THAT'S REALLY MY QUESTION -- █████████████

17 ██████████████████████  ████████████████

18 ████████████████ --

19           MS. TREBICKA:  ████████████ --

20           THE COURT:  ████████

21           MS. TREBICKA:  ████████

22       MY UNDERSTANDING, YOUR HONOR, IS THAT ████████████

23 ████████████████████████

24     ██████████████████████████████

25 ██████████████████████████████

SEALED PROCEEDINGS

1    ██████████████████████████████████████████

2    ████████████████████████████████████████

3    ████████████

4         CAN I ALSO CLARIFY -- I'M BEING TOLD, YOUR HONOR, THAT I

5    MISSPOKE ON THE RECORD AND SAID THAT ██████████████████

6    ███████████████████████████████████████████ AND IF

7    I MISSPOKE, I APOLOGIZE.

8         ██████████████████████████████████████████

9    ████████████████████████████

10         THE COURT:  UM-HUM.

11         MS. TREBICKA:  YEAH.

12         THE COURT:  YOU MAY HAVE MISSPOKEN, BUT THAT WAS

13    CERTAINLY MY IMPRESSION, THAT ███████████████████████

14    ████████████████████████ AND I THINK THAT WAS ALSO

15    ADDRESSED IN THE PAPERS.  BUT THANK YOU FOR THE CLARIFICATION

16    FOR TODAY'S RECORD.

17         ALL RIGHT.  BEFORE WE TURN TO CATEGORY 5, LET ME TURN TO

18    PLAINTIFFS.  LET ME JUST FINISH A NOTE HERE.

19         (PAUSE IN PROCEEDINGS.)

20         THE COURT:  ALL RIGHT.  OKAY.  MS. WEAVER, THAT IS A

21    LOT OF INFORMATION, AT LEAST IT IS NEW TO ME, AND I DON'T KNOW

22    HOW MUCH DISCUSSION AROUND THIS ISSUE HAS GONE ON PREVIOUSLY

23    BETWEEN THE PARTIES.

24         AND I WILL GIVE GOOGLE AN OPPORTUNITY TO SPEAK TO THE

25    BURDEN POINT, ALTHOUGH I THINK THAT THAT WAS ADDRESSED IN THE

1    PAPERS.

2        SO I GUESS ONE -- A GOOD PLACE TO START WITH PLAINTIFFS IS

3    OBVIOUSLY THIS DATA, THERE ARE DATA POINTS AVAILABLE THROUGH

4    OTHER MEANS OTHER THAN THE USE OF THE LOGS, AND I -- OBVIOUSLY,

5    I MEAN, I DO SEE THAT IN THE COMPLAINT.

6        SO WHAT -- WHAT IS IT THAT THE LOGS WOULD ADD FROM

7    PLAINTIFFS' UNDERSTANDING, GIVEN THAT I APPRECIATE THERE HASN'T

8    BEEN DISCOVERY, DISCOVERY INTO THE LOGS.  BUT IN LIGHT OF THE

9    INFORMATION IMPARTED TODAY, AND OBVIOUSLY THE HISTORY OF THE

10   DISCUSSION BETWEEN THE PARTIES, WHY ISN'T WHAT THE PLAINTIFFS

11   HAVE BEEN ABLE TO ALREADY DEMONSTRATE, WHY WOULDN'T THAT BE

12   SUFFICIENT?

13       MS. WEAVER:  FIRST OF ALL, THANK YOU FOR ENTERTAINING

14    ARGUMENT ON THESE ISSUES TODAY, YOUR HONOR.

15       I THINK WHERE YOUR HONOR ENDED OFF THERE IS ONE WAY TO

16   START.  YOU KNOW, I HAD A LAW SCHOOL PROFESSOR NAMED

17   SAUL LEVMORE WHO TAUGHT ME THE CONCEPT OF LOOKING WHERE THE

18   LIGHT IS.  IF YOU DROP YOUR CAR KEYS AT NIGHT AND YOU GET OUT

19   WITH YOUR FLASHLIGHT AND YOU'RE ONLY LOOKING WHERE THE

20   FLASHLIGHT LIGHT IS, YOU MIGHT NOT FIND YOUR CAR KEYS.

21       AND THE QUESTION HERE IS -- LET'S BACK UP -- WHERE IS

22   UNSYNCED DATA MAINTAINED?  THAT IS THE QUESTION, AND WE DON'T

23   HAVE ANSWERS FROM GOOGLE SAYING, UNSYNCED DATA -- SO TO

24   UNDERSTAND WHAT IS IN THESE LOGS, WE NEED TO KNOW THE DATA

25   FIELDS THAT ARE COLLECTED IN THE LOGS, AND THAT IS WHY WE ASKED

1     FOR DATA DICTIONARIES WHICH IDENTIFY FIELDS AND SAY THIS IS

2     WHAT THIS LOG CONTAINS.

3          AND WE'VE HAD -- AND BY THE WAY, YOUR HONOR, IF IT'S

4     HELPFUL TO YOU, THE COMPLAINT IDENTIFIES THE KINDS OF DATA

5     WE'RE TALKING ABOUT.  THE X-CLIENT-DATA HEADERS ARE DESCRIBED

6     AT PARAGRAPH 69.

7          AND IF YOU'D LIKE, YOUR HONOR, WHEN WE GET TO MR. BARNES'

8     PART, WHICH IS BEYOND MY REPERTOIRE, WE CAN ACTUALLY LOOK AT

9     SOME OF THE FIELD REVIEW, AND FRANKLY, I FOUND IT VERY

10    ILLUMINATING, WHEN WE WERE RUNNING THE TESTS, TO IDENTIFY SO

11    YOU CAN SEE THE CODE ACTUALLY COMES OUT OF THE COMPUTER SAYING

12    X-CLIENT IDENTIFIER, AND THEN THAT WOULD BE TRACKED IN THESE

13    LOGS.

14         SO YOUR QUESTION IS, WHY ISN'T WHAT THEY'RE PROPOSING GOOD

15    ENOUGH?

16         AND THE FIRST IS, WE DON'T UNDERSTAND HOW TO IDENTIFY

17    EXACTLY WHAT YOU ASKED, WHAT IS THE UNSYNCED DATA?

18         THEY'RE SAYING --

19              THE COURT:  WELL, MY QUESTION WAS A LITTLE BIT

20    DIFFERENT.

21              MS. WEAVER:  OKAY.

22              THE COURT:  MY QUESTION TO YOU IS LITTLE BIT

23    DIFFERENT.  MY QUESTION TO YOU IS, WHY ISN'T -- THE PLAINTIFFS

24    HAVE DEMONSTRATED THAT THEY CAN CAPTURE THE FACT OF TRANSFER,

25    THE FACT AND CONTENT OF TRANSFER.  SO -- WHICH IS THE ESSENCE

1       OF THE COMPLAINT.

2           SO WHY ISN'T THAT ENOUGH, THE TOOL THAT PLAINTIFFS USED,

3       OR SOME OTHER TOOLS, TO CAPTURE SUFFICIENT DATA TO SUPPORT THE

4       PLAINTIFFS' CLAIMS?  YOU KNOW, WHY -- WHY DO YOU NEED THESE --

5       WHY DO YOU NEED THE LOGS?

6               MS. WEAVER:  RIGHT.  WE NEED TO UNDERSTAND ON A

7       CLASS-WIDE BASIS WHAT UNSYNCED DATA GOOGLE TOOK, AND WHAT WE

8       HAVE ARE JUST EXAMPLES OF FOUR PEOPLE AT ONE POINT IN TIME ON

9       SPECIFIC WEBSITES.

10          GOOGLE'S ENTIRE SYSTEM IS TO PROCESS ALL THE DATA THAT IS

11      COMING IN FOR ALL OF OUR CLASS MEMBERS DURING OUR CLASS PERIOD.

12          SO WE'RE ONLY GETTING ONE LITTLE SNIPPET OF TIME, AND

13      THEY'LL SAY, "OH, WELL, MS. KINDLER WAS ONLY ON THIS WEBSITE,

14      SO YOUR CASE WOULD BE LIMITED TO THAT BECAUSE THAT'S THE ONLY

15      EVIDENCE THAT YOU HAVE."

16          AND IN FACT, WE DO BELIEVE THAT, THAT SOME OF THE

17      REPRESENTATIONS HERE SHOULD BE TESTED BY DISCOVERY, YOUR HONOR,

18      BECAUSE, FOR EXAMPLE, YOU KNOW, AT PAGE 4 OF THEIR REPLY,

19      GOOGLE WROTE, "GOOGLE'S DISCOVERY MANAGER MADE CLEAR IN HIS

20      SWORN DECLARATION THAT IT WOULD TAKE ████████TO CREATE NEW

21      SCRIPTS TO ATTEMPT TO PARSE OUT THE DATA ████████████

22      ████████████████████████████."

23          WELL, YOU WERE JUST TOLD THAT ████████████████

24      ████████████

25          AND WE ALSO KNOW THAT OF COURSE THEY CAN ████████████



1    ███████████████  ██████████████████████████████

2    ████████████████████████████

3        SO IF NOTHING ELSE, ████████████████████████████

4    ████████████████████████████████

5        SO THE CLAIM ALSO THAT, ████████████████████████████

6    ████████████  WAS ALSO BELIED BY WHAT WE LEARNED -- YES, WE DID

7    JUST LEARN A LOT OF NEW INFORMATION IN THE HEARING, INCLUDING

8    THAT ████████████████████████████████████████

9    ████████████

10       IT WOULD HAVE BEEN VERY CONSTRUCTIVE TO GIVE US THAT DATA

11   SO WE COULD LOOK AT IT AND SEE IT.  INSTEAD OF RELYING ON

12   REPRESENTATIONS OF WHAT'S CONTAINED IN IT, OUR EXPERTS CAN LOOK

13   AT IT AND SAY, OKAY, WE UNDERSTAND THIS IS CAPTURED OR THIS IS

14   NOT CAPTURED.

15       THERE'S THAT.

16       SECOND, THE GOOGLE -- THE COOKIES AND IDENTIFIERS AT ISSUE

17   IN ████████████████████████  WHICH IS A PRETTY CUMBERSOME

18   MOUTHFUL, YOUR HONOR, WE THINK IT MEANS ████████████████

19   ████████████████████████████████████████ █

20   ████████████████████████████████████

21       WHAT WE THINK -- AND AGAIN, THIS IS ALL CONJECTURE AND NOT

22   EVIDENCE -- WHAT WE THINK THAT MEANS IS THAT ████████████████

23   ████████████████████████████████████

24   ████████████████████████████████████████

25   ████████████████████████  THAT IS WHAT'S EXCLUDED FROM

SEALED PROCEEDINGS

1    THEIR OFFER, SO THAT IS A SIGNIFICANT PORTION.

2         AND NOW IF YOUR HONOR IS INTERESTED, I THINK MR. BARNES

3    HAS BEEN JONESING TO RESPOND TO SOME OF THE MORE SPECIFIC

4    QUESTIONS ABOUT WHAT IT IS THAT WOULD BE EXCLUDED FROM GOOGLE'S

5    OFFER AT DOCKET 102.

6              THE COURT:  ALL RIGHT.  THANK YOU, MS. WEAVER.

7              MR. BARNES:  THANK YOU, YOUR HONOR.  CAN YOU HEAR ME

8    OKAY?

9              THE COURT:  I CAN.  THANK YOU.

10             MR. BARNES:  OKAY.  JAY BARNES ON BEHALF OF THE

11   PLAINTIFFS.

12        I'D LIKE TO TALK ABOUT YOUR QUESTIONS 2, 3, AND 4 ABOUT

13   WHAT WE BELIEVE WE KNOW FROM OUR INVESTIGATION.

14             THE COURT:  UM-HUM.

15             MR. BARNES:  AND I'D LIKE TO START WITH THE SYNC

16   LOGS, AND THIS IS SOMETHING THAT IS ACTUALLY FAIRLY NEW.  WE

17   TRIED TO SET SOMETHING UP TO WALK YOU THROUGH ONE OF THESE

18   FIDDLER FILES THIS MORNING, BUT UNFORTUNATELY, OUR TECHNOLOGY

19   FAILED AND I WAS AFRAID OF CRASHING THE WHOLE HEARING FOR

20   EVERYONE, SO WE BACKED AWAY FROM IT.

21        WE'VE BEEN TOLD THAT THERE IS NO SIGNAL FOR SYNCED

22   TRAFFIC, SO WHAT WE DID IS WE DID A TEST.  WHAT HAPPENS WHEN

23   YOU USE CHROME AND YOU CLICK THE BUTTON TO SYNC, AND THEN WHAT

24   HAPPENS WHEN YOU CLICK THE BUTTON TO UNSYNC?

25             AND HERE ARE SOME THINGS THAT WE DISCOVERED, YOUR HONOR.

1    FIRST IS AS SOON AS YOU CLICK THE BUTTON TO SYNC IN THE

2    BROWSER, THERE IS A DATA TRANSMISSION THAT SENDS A SLEW OF DATA

3    TO A SERVER AT CLIENTSFOR.GOOGLE.COM.

4         AND THEN IMMEDIATELY AFTER THAT TRANSMISSION GOES OUT WHEN

5    YOU'RE SIGNING IN, ANOTHER -- A NUMBER OF OTHER TRANSMISSIONS

6    GO OUT TO EVERY OTHER, WE THINK EVERY OTHER GOOGLE ACCOUNT TYPE

7    SERVICE THAT SIGNS YOU INTO ALL OF THOSE SERVICES AT THE SAME

8    TIME.

9              THE COURT:  OKAY.  BUT THE CLASS HERE IS UNSYNCED,

10   SO --

11             MR. BARNES:  CORRECT.  SO LET ME --

12             THE COURT:  GO AHEAD.

13             MR. BARNES:  RIGHT.

14        SO WHAT HAPPENS WHEN YOU UNSYNC IS A TRANSMISSION FROM THE

15   BROWSER GOES TO THAT SAME CLIENTSFOR.GOOGLE.COM, AND THE

16   SPECIFIC COMMAND THAT GOES OUT IS A POST COMMAND, IT'S POST

17   CHROME-SYNC/COMMAND.  AND THAT IS THE -- THAT IS THE SPECIFIC

18   SIGNAL THAT THE CHROME BROWSER SENDS TO GOOGLE TO TURN SYNC ON

19   AND OFF.

20        NOW, WHY IS THAT RELEVANT?  BECAUSE THAT TELLS US WHEN

21   PEOPLE UNSYNC.  THAT IDENTIFIES PEOPLE WHO ARE IN THE CLASS,

22   BECAUSE JUST BECAUSE YOU'VE SYNCED ONE TIME DOESN'T MEAN YOU'RE

23   SYNCING ALL OF THE TIME.

24        SO IF YOU'VE UNSYNCED, IF YOU'RE IN AN UNSYNCED STATE,

25   YOU'RE IN OUR CLASS, AND THAT'S IN THE SYNC LOGS THAT ARE

1    RELEVANT.

2          THE NEXT THING THAT HAPPENS, THOUGH, YOUR HONOR, THERE ARE

3    SOME OTHER INTERESTING THINGS --

4          THE COURT:  EXCUSE ME, MR. BARNES.

5     IT'S IN THE SYNC LOG ONLY IF YOU CLICKED SYNC IN THE FIRST

6    INSTANCE?

7          MR. BARNES:  RIGHT.  AND THEN WHEN YOU CLICK UNSYNC,

8    IT'S IN THE SYNC LOG THAT YOU'VE CLICKED UNSYNC.

9          THE COURT:  BUT ONLY IF YOU CLICKED SYNC FIRST?

10         MR. BARNES:  CORRECT.  BUT --

11         THE COURT:  ALL RIGHT.

12         MR. BARNES:  CORRECT.  BUT ONCE A PERSON CLICKED

13   UNSYNC, IF GOOGLE TRACKS THEIR NEXT COMMUNICATION, THAT NEXT

14   COMMUNICATION IS IN THE CLASS BECAUSE THAT IS AN UNSYNCED

15   COMMUNICATION THAT GOOGLE IS -- THAT CHROME IS TRANSMITTING TO

16   GOOGLE WITHOUT AUTHORIZATION BECAUSE THAT USER HAS CLICKED TO

17   UNSYNC.

18         THE COURT:  UM-HUM.

19         MR. BARNES:  AND SO THERE IS SOME VALIDITY TO SAY,

20   LOOK, YOU DON'T NEED ALL THE SYNCED DATA, ALL THE PARTICULAR

21   CONTENT IN SYNC.

22     BUT THAT UNSYNC CLICK IS VERY IMPORTANT, YOUR HONOR.

23     AND IT'S NOT JUST THAT THAT COULD BE TAKEN FROM THAT

24   CLIENTSFOR.GOOGLE.COM SERVER, WHICH HAS NEVER BEEN DISCLOSED TO

25   US.  WE HAD TO DISCOVER THIS ON OUR OWN THROUGH TESTING.

1       WHEN DO YOU THAT, IT CREATES WHAT WE BELIEVE TO BE A SUPER

2   USER AGENT.

3       NOW, WHAT DO I MEAN BY THAT?  IF YOU LOOK IN THE COMPLAINT

4   AT PARAGRAPH 157, THERE'S A USER AGENT, AND THIS WILL TELL YOU

5   THE BROWSER, THE PARTICULAR VERSION OF THE BROWSER IN USE.  SO

6   AT 157, IT'S 84.0.4147.9.

7       WHEN YOU SYNC, GOOGLE CREATES A NEW USER AGENT IDENTIFIER

8   THAT IS A 34 STRING DIGIT OF NUMBERS THAT GETS SENT TO GOOGLE

9   THAT WE BELIEVE WOULD BE ATTACHED TO THE ACCOUNT.

10       AND IT MAY BE POSSIBLE TO TAKE THAT SYNCED DATA AND TO SAY

11   TO GOOGLE, OKAY, WHO ARE THE USERS FOR WHOM THERE HAS NEVER

12   BEEN A SUPER USER AGENT CREATED?

13       THE NEXT THING THAT YOU FIND IN THE SYNC LOGS IS THAT

14   THERE'S AN AUTHORIZATION TOKEN ATTACHED TO THE BROWSER.  THAT'S

15   ANOTHER QUESTION WE WOULD HAVE IS, CAN GOOGLE DISTINGUISH

16   UNSYNCED BY WHO HAS HAD THIS TOKEN OR NOT?

17       AND THEN THERE'S A FOURTH THING THAT -- THERE'S -- THE

18   NEXT THING --

19       THE COURT:  SO LET ME -- MR. BARNES, I -- THAT'S

20   INTERESTING AND HELPFUL.

21       WHY CAN'T PLAINTIFFS POSE THOSE INTERROGATORIES TO

22   DEFENDANT?

23       MR. BARNES:  WE CAN POSE INTERROGATORIES TO

24   DEFENDANT, YOUR HONOR.

25       BUT THE -- THOSE SYNC LOGS ARE NOT BEING RETAINED IN A

1     MANNER SO -- WE'VE BEEN TOLD THEY LAST FOR ████ AND SO WE

2     WANT TO KNOW AS SOON AS POSSIBLE, WE WANTED THE 30(B)(6)

3     DEPOSITION, WE DIDN'T WANT TO WAIT THE TIME PERIOD FOR THE

4     INTERROGATORIES SO THAT WE CAN GET SOME ANSWERS --

5               MS. WEAVER:  IF I MAY?

6               MR. BARNES:  GO AHEAD.

7               MS. WEAVER:  IF I MAY, YOUR HONOR?

8          FOR EXAMPLE, WE DID PROPOUND THIS EXACT INTERROGATORY THAT

9     WAS -- YOUR HONOR ASKED THE EXACT SAME QUESTION WE ASKED, CAN

10    YOU IDENTIFY WHO IS SYNCED AND WHO IS NOT SYNCED?

11         AND GOOGLE'S RESPONSE WAS, "GOOGLE DOES MAINTAIN

12    INFORMATION IN THE ORDINARY COURSE OF BUSINESS THAT CAN BE USED

13    TO SHOW SYNCED TRAFFIC."

14         AND THEN WE WANT TO KNOW, WELL, WHAT IS SYNCED TRAFFIC?

15    IS THAT CONTENT?  OR DOES IT CONTAIN THE SIGNALS THAT

16    MR. BARNES IS TALKING ABOUT?

17         THIS IS A VERY COMPLEX ISSUE THAT REQUIRES A CONVERSATION.

18    IF WE GET INTERROGATORY RESPONSES BACK QUARRELLING ABOUT

19    DEFINITIONS, THAT'S JUST NOT EFFICIENT.

20         AND THERE IS A REASON, YOU KNOW, THAT WE'RE ASKING FOR

21    EXPEDITED DISCOVERY.  GOOGLE ONLY PRODUCED ████ OF

22    DOCUMENTS TO US ON THESE ISSUES, BUT ONE OF THEM ████

23    ████████████████████████████████████

24    ████████  ████████████████

25    ██████

1        WE NEED TO UNDERSTAND ███████████████ AND TAKE

2    STEPS QUICKLY SO WE CAN PRESERVE THE DATA THAT NOW EXISTS

3    RELATING NOT JUST TO OUR EXISTING PLAINTIFFS, BUT THE NEW

4    PLAINTIFFS WE'RE GOING TO NAME.

5        WE NEGOTIATED WITH GOOGLE AND THEY AGREED THAT WE WOULD

6    HAVE 30 DAYS AFTER THE RULING ON THE MOTION TO DISMISS TO BRING

7    IN NEW PLAINTIFFS.  RIGHT NOW, THEIR DATA IS NOT BEING

8    PRESERVED, AND WE DIDN'T REALIZE THIS.

9        SO --

10            THE COURT:  ALL RIGHT.  LET ME INTERRUPT YOU THERE,

11    MS. WEAVER.

12            MS. WEAVER:  SURE.

13            THE COURT:  THANK YOU.  LET ME RETURN TO MR. BARNES.

14            MS. WEAVER:  OKAY.

15            THE COURT:  WHICH, MR. BARNES, YOU WERE ADDRESSING

16    QUESTIONS 2, 3, AND 4, AND I APPRECIATE -- I APPRECIATE THAT.

17    SO I'M NOT QUITE SURE WHERE WE WERE IN THAT DISCUSSION, BECAUSE

18    YOU WERE TALKING -- TRYING TO MAKE YOUR CASE FOR THE SYNCED

19    DATA LOG TO THE EXTENT IT SHOWS WHAT HAPPENS WHEN SOMETHING IS

20    UNSYNCED.

21            MR. BARNES:  YES, YOUR HONOR.

22            THE COURT:  I APPRECIATE THAT, SO GO AHEAD.

23            MR. BARNES:  I HAVE ONE MORE POINT ABOUT THE SYNC

24    TRAFFIC LOG, YOUR HONOR, AND IT BRINGS IN ANOTHER LOG THAT WE

25    DON'T THINK GOOGLE HAS BROUGHT TO THE COURT'S ATTENTION.

1        WHEN -- AFTER THAT SIGNAL FOR THE LOGOUT, THE SYNC LOGOUT

2   GOES TO CLIENTSFOR.GOOGLE.COM, THERE'S IMMEDIATELY THEREAFTER ███

3   ████████████████████████████████████████████████

4        SO THE FIRST ONE STARTS WITH -- IT GOES TO A DOMAIN CALLED

5   ACCOUNTS.GOOGLE.COM, AND THE GET REQUEST THERE IS GET/LOGOUT.

6        WHEN THAT HAPPENS, ALL OF THE ███████████████████████████

7   ARE SENT TO THE ACCOUNTS.GOOGLE.COM.  THE X-CLIENT-DATA HEADER

8   IS SENT.

9        AND WE JUST DISCOVERED THIS WEEK, THIS IS THE FIRST TIME

10  I'VE SEEN THIS, THERE'S SOMETHING CALLED THE

11  X-CHROME-ID--CONSISTENCY REQUEST DATA HEADER THAT IS SENT TO

12  THE ACCOUNTS.GOOGLE.COM PAGE THAT APPEARS TO INSTRUCT

13  ACCOUNTS.GOOGLE.COM ███████████████████████████████

14       AND I MAY BE WRONG -- OBVIOUSLY, YOU KNOW, WE'RE TRYING TO

15  INVESTIGATE THIS WITHOUT ANY DISCOVERY -- BUT IT APPEARS --

16  THIS IS THE ONLY TIME I THINK I'VE EVER SEEN THIS

17  X-CHROME-ID-CONSISTENCY REQUEST IS WHEN I WAS LOOKING IN

18  PARTICULAR AT A -- AT LOGGING OUT OF SYNC.

19       AND SO THAT BRINGS THE QUESTION -- THAT BEGS THE QUESTION

20  OF, OKAY, MAYBE THE ACCOUNTS.GOOGLE.COM LOGS ARE ALSO RELEVANT.

21       AND EARLIER -- EARLIER IN OUR DISCUSSIONS WITH GOOGLE,

22  GOOGLE MENTIONED SOMETHING CALLED IDENTITY LOGS.  THEY'VE BEEN

23  DROPPED FROM DISCUSSIONS.  WE WERE NEVER REALLY TOLD WHAT THEY

24  WERE.  SO THEY THOUGHT THEY WERE RELEVANT, AND NOW THEY'VE

25  DISAPPEARED FROM DISCUSSION.

1          AND THEN WE'VE GOT -- WE JUST DISCOVERED THIS WEEK THAT

2     WHEN YOU LOG OUT OF SYNC, IT SENDS THIS TRANSMITTAL TO

3     ACCOUNTS.GOOGLE.COM.

4          AND ALL OF THIS, YOUR HONOR, IS AFTER WE WERE TOLD THAT

5     THERE IS NO SIGNAL SENT TO GOOGLE WHEN A USER SYNCHS OR

6     UNSYNCED -- UNSYNCHS.

7               THE COURT:  ALL RIGHT.

8               MR. BARNES:  SO YOU UNDERSTAND OUR -- SO THAT'S ON

9     SYNC TRAFFIC.  IF YOUR HONOR HAS ANY FURTHER QUESTIONS ABOUT

10    SYNC TRAFFIC, I'D BE HAPPY TO ANSWER THEM.

11         BUT OTHERWISE I CAN MOVE ON TO MY ACTIVITY.

12              THE COURT:  WELL, I THINK -- I THINK THE POINT IS

13    MADE.  I UNDERSTAND, YOU'RE TRYING TO DEMONSTRATE THE

14    INFORMATION THAT IS TRANSFERRED AND THAT YOU BELIEVE WOULD BE

15    CAPTURED IN THESE LOGS.

16         LET ME -- LET ME JUST TAKE US UP TO 50,000 FEET FOR A

17    MOMENT, WHICH IS LOOKING AT THE COMPLAINT AT THE ISSUES

18    IDENTIFIED BY THE PLAINTIFF IN PARAGRAPH 262, OKAY, COMMON

19    QUESTIONS OF LAW AND FACT.  THERE ARE SUBCATEGORIES A THROUGH

20    K, AND SUBCATEGORY A IS WHETHER CHROME SHARES PERSONAL

21    INFORMATION WITH GOOGLE WHEN USERS ARE NOT SYNCED TO THEIR

22    ACCOUNTS, AND B IS WHETHER CHROME USERS CAN USE THE SERVICE

23    WITHOUT PROVIDING PERSONAL INFORMATION TO CHROME.

24         AND THOSE TWO, A AND B, OUT OF A THROUGH K, ARE THE TWO

25    THAT APPEAR TO ME MAY IMPLICATE THE LOGS, WHEREAS THE REMAINING

1    CATEGORIES, WHICH RELATE TO WHETHER OR NOT GOOGLE HAD

2    AUTHORIZATION, WHETHER OR NOT THERE WAS DISCLOSURE, WHICH

3    REALLY GOES TO THE DISCLOSURES AND TERMS OF USE AND PRIVACY

4    POLICIES, ALL SPEAK TO ISSUES THAT ARE -- THAT DO NOT RELATE TO

5    THE LOGS.

6          AND THEN THERE ARE, OF COURSE, SOME SPECIFIC LEGAL

7    QUESTIONS THAT START AT SUBCATEGORY G WITH REGARDS TO VIOLATION

8    OF SPECIFIC STATUTES.

9          AND FINALLY, DOWN AT J IS WHETHER OR NOT PERSONAL

10   INFORMATION IMPROPERLY COLLECTED FROM THE UNSYNCED USERS HAS

11   ECONOMIC VALUE, THAT IS FOR THE ECONOMISTS, AND TO BE SURE,

12   YOU'LL WANT DISCOVERY AROUND HOW GOOGLE MONETIZES THE

13   INFORMATION AT ISSUE, AND SAME WITH K, WHETHER GOOGLE UNJUSTLY

14   PROFITED.

15         SO -- BUT, AGAIN, I DON'T SEE THOSE AS RELATING TO THE

16   DATA IN THE LOGS.  TO BE SURE, THERE -- I MEAN, I GUESS -- I'M

17   NOT EVEN SURE -- I'M NOT AT ALL SURE THAT THE LOGS WOULD

18   IDENTIFY CLASS MEMBERS.  IT WOULD CERTAINLY IDENTIFY -- IT

19   COULD IDENTIFY INSTANCES WHERE SOMEONE IS LOGGED IN, ███████

20   ███████ IS LOGGED IN AND THAT IS UNSYNCED AND DATA IS BEING

21   TRANSFERRED, WHICH, YOU KNOW, IN VERY GENERAL TERMS MAY QUALIFY

22   AS A MEMBER OF THE CLASS AND BE A VIOLATION OF -- A VIOLATION

23   AS ALLEGED IN THE COMPLAINT.

24         BUT THIS ISN'T A CASE AND THIS ISN'T A CLASS WHERE YOU'RE

25   GOING TO HAVE A LIST OF HERE ARE 500 CLASS MEMBERS OR 500,000

1    CLASS MEMBERS.  YOU NEED SOME WAY, AS IS OFTEN THE CASE IN

2    THESE VERY LARGE CONSUMER CASES, TO IDENTIFY AND QUANTIFY THE

3    CLASS.

4         BUT, YOU KNOW, IT'S NOT -- THE INFORMATION IN THE LOGS,

5    AGAIN, PERHAPS THEORETICALLY COULD HELP YOU DO THAT, BUT THERE

6    ARE OBVIOUSLY MANY OTHER TOOLS AND APPROACHES THAT ARE USED IN

7    THESE CASES ALL THE TIME.

8         SO I AM MINDFUL OF PLAINTIFFS' OBJECTIVES AND, OF COURSE,

9    MINDFUL OF THIS IS DISCOVERY.  BUT, AGAIN, I'M -- I AM NOT --

10   IT'S NOT YET CLEAR, AND I THINK THERE DOES NEED TO BE DISCOVERY

11   ON THIS ISSUE AND THIS IS WHERE WE'RE GOING TO TURN THIS

12   DISCUSSION, BUT, YOU KNOW, IT'S NOT YET CLEAR THAT A WHOLESALE

13   PRESERVATION OF THESE LOGS IS NECESSARY IN THIS CASE.  AND BY

14   "NECESSARY," I'M LOOKING AT RELEVANCE AND I'M LOOKING, OF

15   COURSE, VERY KEENLY AT PROPORTIONALITY.

16        NOW, THAT'S A VERY FACT-SPECIFIC DISCUSSION THAT I DON'T

17   THINK THERE'S YET ENOUGH FACTS ON THE TABLE TO MAKE A

18   CONCLUSION.

19        BUT THAT IS MY CONCERN IS THAT THERE IS TREMENDOUS DATA AT

20   ISSUE IN THESE LOGS.  BUT AT THE END OF THE DAY, WHAT OF THAT

21   DATA DOES -- DO PLAINTIFFS NEED, WOULD PLAINTIFFS REALLY USE

22   WHEN WE'RE LOOKING AT HOW THE CASE REALLY COMES TOGETHER?

23             MS. WEAVER:  YES.

24             THE COURT:  MS. WEAVER, I'M SURE YOU'D LIKE TO TALK

25   ABOUT THAT, AND WE'LL DO THAT, AND THEN I WANT TO TURN US TO

1    THE PROPOSED 30(B)(6) DEPOSITION.

2           MR. BARNES:  YOUR HONOR, IF I --

3           THE COURT:  YES, MR. BARNES.

4           MR. BARNES:  THERE'S ONE MORE PART ABOUT THE LOGS I

5    WOULD LIKE TO SAY --

6           THE COURT:  OKAY.

7           MR. BARNES:  -- BECAUSE THERE'S SOMETHING THAT GOES

8    TO PARAGRAPHS -- TO YOUR QUESTIONS ON 3 OR 4 ABOUT OUR CLASS

9    REPRESENTATIVES THAT'S VERY IMPORTANT.

10          THE COURT:  OKAY.

11          MR. BARNES:  MS. TREBICKA TALKED ABOUT THE MY

12   ACTIVITY LOGS -- AND I'M LOOKING FOR MY NOTES HERE -- SHE SAID

13   THAT ███████████████████████████████████████████

14   ███████████████████████████████████

15       YOU CAN ACTUALLY GO TO MYACTIVITY.GOOGLE.COM TO GET ACCESS

16   TO THOSE LOGS, AND OUR TESTING SHOWS ██████████████████

17   ████████████████

18       THERE ARE THREE CATEGORIES OF DATA IN THOSE LOGS.  THE

19   FIRST IS SYNC, SYNCED TRAFFIC GOES TO THOSE LOGS; THE SECOND IS

20   THAT TRAFFIC AT A GOOGLE PROPERTY WHILE YOU WERE LOGGED IN GOES

21   TO THOSE LOGS, SUCH AS GOOGLE.COM OR YOUTUBE; AND THE THIRD

22   CATEGORY IS TRAFFIC EMANATING FROM THAT GOOGLE PROPERTY WHILE

23   YOU'RE SIGNED INTO AN ACCOUNT.

24       SO IF YOU DO A SEARCH ON GOOGLE AND CLICK A LINK IN THE

25   SEARCH RESULTS TO GO TO AN ARTICLE, THE FACT THAT YOU CLICKED

```
 1    ON THAT LINK, I BELIEVE, WE BELIEVE WOULD BE INCLUDED IN MY

 2    ACTIVITY.

 3           HOWEVER, IF -- FOR EXAMPLE, NONE OF THE ALLEGATIONS IN THE

 4    COMPLAINT, WE DON'T BELIEVE ANY OF THEM WOULD APPEAR IN THE MY

 5    ACTIVITY LOG, SYNCED, UNSYNCED, SIGNED IN, UNSIGNED IN, BECAUSE

 6    THEY DIDN'T EMANATE FROM A GOOGLE PROPERTY.

 7           SO THAT'S ONE BIG DISAGREEMENT WE HAVE ABOUT -- AND IT

 8    RELATES TO IF YOU WANT TO GO INTO WHETHER IT'S SUFFICIENT FOR

 9    THESE CLASS REPRESENTATIVES.

10           THE OTHER THING I'D LIKE TO POINT OUT IS JUST TO CLARIFY

11    WHAT IT MEANS TO BE SIGNED INTO A GOOGLE ACCOUNT.

12                THE COURT:  UM-HUM.

13                MR. BARNES:  SYNC IS SOMETHING DIFFERENT THAN SIGNED

14    INTO A GOOGLE ACCOUNT.

15                THE COURT:  RIGHT.

16                MR. BARNES:  SO TYPICALLY YOUR HONOR --

17                THE COURT:  YOU CAN BE SIGNED IN, BUT UNSYNCED.

18                MR. BARNES:  CORRECT.  CORRECT.

19           AND YOUR HONOR SPOKE OF A SITUATION WHERE YOU GO TO GOOGLE

20    AND YOU SIGN INTO ALL OF YOUR ACCOUNTS.  TYPICALLY THE

21    SITUATION IS SOMEONE GOES TO GMAIL AND THEN LEAVES GMAIL, BUT

22    DOES NOT FORMALLY LOG OFF OF GMAIL AFTER THEY'VE LEFT, AND THAT

23    LEAVES THEM SIGNED INTO A GOOGLE ACCOUNT EVEN THOUGH THEY'RE

24    NOT ACTUALLY AT A GOOGLE PROPERTY ANYMORE DOING ANYTHING

25    DIRECTLY WITH GOOGLE.
```

SEALED PROCEEDINGS

```
 1                    THE COURT:  UM-HUM.

 2                    MR. BARNES:  OKAY.  I JUST WANTED TO CLARIFY THAT,

 3          AND THANK YOU FOR INDULGING ME TO SPEAK ABOUT THE MY ACTIVITY

 4          LOGS.

 5                    THE COURT:  NO, I APPRECIATE IT.  THANK YOU.

 6              AND I -- I KNOW I PERHAPS FORESHORTENED YOUR PRESENTATION,

 7          BUT I WANT US TO MOVE CONSTRUCTIVELY TO NEXT STEPS.

 8                    MS. WEAVER:  YOUR HONOR, MAY I BE HEARD ON

 9          PROPORTIONALITY REALLY QUICKLY?

10                    THE COURT:  JUST A MOMENT, MS. WEAVER.

11                    MS. WEAVER:  OKAY.

12                    THE COURT:  LET ME JUST --

13                  (PAUSE IN PROCEEDINGS.)

14                    THE COURT:  ALL RIGHT.  THANK YOU.

15              I'M NOT REALLY GOING TO HAVE A SUBSTANTIVE DISCUSSION AT

16          THE MOMENT ON PROPORTIONALITY BECAUSE, AS I SAID, IT'S A HUGE

17          QUESTION, AND I'LL GIVE BOTH SIDES AN OPPORTUNITY TO ADDRESS

18          BURDEN AND PROPORTIONALITY.  THAT WAS VERY MUCH THE FOCUS IN

19          THE PAPERS AND I -- I'M NOT IGNORING THE, THE GORILLA IN THE

20          ROOM.  WE'RE GOING TO TURN TO THAT.

21              BUT LET'S -- LET'S TURN TO DISCOVERY.  LET'S TURN TO NEXT

22          STEPS BECAUSE I THINK THAT I KNOW -- I OBVIOUSLY HAD A LOT OF

23          QUESTIONS COMING INTO THIS, AND STILL HAVE A NUMBER OF

24          QUESTIONS.

25              I THINK THAT GOOGLE HAS MADE AN ARGUMENT OF BURDENSOMENESS
```

```
1    AND LACK OF PROPORTIONALITY, OF PRESERVATION OF THESE LOGS TO

2    THE ISSUES IN THIS COMPLAINT.

3          PLAINTIFF HAS DISPUTED THOSE, I THINK, TO THE BEST OF

4    THEIR ABILITY.

5          BUT GOOGLE, HAVING MADE THAT ARGUMENT, I THINK PLAINTIFF

6    IS ENTITLED TO TEST IT AND THAT'S WHY I AM CONSIDERING MOVING

7    FORWARD WITH A 30(B)(6) DEPOSITION.

8          SO MS. WEAVER, CAN WE FOCUS -- LET US FOCUS ON DISCOVERY

9    GOING FORWARD AND WE WILL CIRCLE BACK ON THE ISSUES THAT I

10   THINK HAVE BEEN ADDRESSED IN THE PAPERS ON BURDENSOMENESS AND

11   PROPORTIONALITY.

12          MS. WEAVER:  OUTSTANDING, YOUR HONOR.  THANK YOU.

13          DISCOVERY IS WHERE WE WANT TO BE.  THAT'S WHERE WE'RE

14   HEADED, AND WE UNDERSTAND WHAT YOU'RE TRYING TO DO HERE, WHICH

15   IS TO CRAFT SOLUTIONS.

16          SO WE'RE REALLY ONLY ASKING FOR THREE THINGS:  NARROW

17   DOCUMENT PRODUCTIONS, THE DATA DICTIONARIES -- THESE WERE

18   IDENTIFIED IN PARAGRAPH 7 OF DR. COWAN'S REPORT -- DATA

19   DICTIONARIES, DATABASE ARCHITECTURE DOCUMENTATION, TECHNICAL

20   DOCUMENTATION SO THAT WE CAN UNDERSTAND WHAT FIELDS ARE IN THE

21   LOGS, FOR EXAMPLE, DO SYNC LOGS REFLECT SYNCING ACTIVITY, ET

22   CETERA, HOW DOES THE DATA FLOW IN AND OUT OF THEM.

23          AND THEN, TWO, SAMPLING.  WE SEEK SAMPLING FROM THESE LOGS

24   AT -- OVER DIFFERENT POINTS IN TIME SO WE CAN SEE THE DATA THAT

25   IS COLLECTED.
```

1          YOU ASKED, AND I THOUGHT IT WAS -- I HADN'T THOUGHT OF IT,

2     YOUR HONOR, BUT LOOKING AT PARAGRAPH 262 DOES HELP FOCUS THE

3     DISCUSSION.  ONE OF THE ISSUES IS, YOU CANNOT KNOW IF CONSENT

4     WAS VIOLATED IF YOU DON'T KNOW WHAT WAS TAKEN AT A VERY HIGH

5     LEVEL.  SO WE NEED SAMPLING SO IT'S NOT JUST MS. KINDLER WENT

6     TO ONE WEBSITE.  IT'S GOOGLE COLLECTS THIS KIND OF INFORMATION

7     FROM THE CLASS.

8          SO -- AND, FOR EXAMPLE, THE REASON FOR, YOU KNOW,

9     SNAPSHOTS IN TIME IS BECAUSE THESE ARE SNAPSHOTS.  YOU KNOW,

10    GOOGLE CHANGED ITS DISCLOSURES ON AUGUST 2020 SHORTLY AFTER OUR

11    COMPLAINT WAS FILED.  OUR EXPERT DESCRIBED THIS CHANGE -- WE

12    JUST FIGURED IT OUT -- IN A DECLARATION WE PUT BEFORE JUDGE KOH

13    A COUPLE OF DAYS AGO.  SO WE'D LIKE SAMPLES, YOU KNOW, THE DAY

14    OUR COMPLAINT WAS FILED AND THEN SHORTLY THEREAFTER TO SEE IF

15    THE DATA FLOW CHANGES.

16         THOSE SAMPLES WILL HELP US, I THINK, HAVE AN INTELLIGENT

17    AND EQUALLY INFORMED CONVERSATION WITH GOOGLE.

18         AND THEN AFTER WE RECEIVE THOSE DOCUMENTS, WE WOULD LIKE A

19    TARGETED DEPOSITION, AND I -- WE THOUGHT YOUR TOPICS WERE WELL

20    WITHIN BOUNDS, AND ONE OF THE THINGS WE'D LIKE TO EXPLORE, YOUR

21    HONOR, IS THAT AT 5B, YOU SAID GOOGLE'S CAPABILITY TO SEARCH

22    AND PULL REPORTS.

23         SO WE LEARNED TODAY ALREADY THAT ████████████████

24    ████████████████████████████  WE TALKED AT ONE POINT WITH

25    GOOGLE ABOUT A ██████████████████████████  ████████

1  ████████████  ██████████████████

2  ████████████████████████████████████  AND THIS IS

3  THE BEST SEARCH COMPANY IN THE WORLD.

4       SO IT WOULD SEEM TO US THAT WE SHOULD BE ABLE TO CRAFT

5  SOMETHING NARROW THAT SATISFIES WHAT THE CASE NEEDS AND DOESN'T

6  CAUSE GOOGLE TO HAVE TO PRESERVE, YOU KNOW, EVERYTHING THAT IT

7  IS COLLECTING EVERY DAY.

8       THAT'S NOT -- THAT'S SOMETHING THAT WE NEVER WANTED AND

9  NEVER EXPECTED.  WE JUST WANT TO BE ABLE TO PROVE OUR CASE,

10  YOUR HONOR.

11       THE COURT:  ALL RIGHT.  THANK YOU, MS. WEAVER.

12       I'D LIKE TO HEAR FROM GOOGLE WITH REGARDS TO THE SCOPE OF

13  THE DEPOSITION AS I'VE OUTLINED IT, AND A FOCUSSED PRODUCTION

14  OF DOCUMENTS.

15       I THINK I HAVE MR. COWAN'S DECLARATION HERE IN FRONT OF

16  ME, AND I WILL DIG THAT OUT IN A MOMENT.

17       BUT WHO'S RESPONDING FROM GOOGLE ON THIS ISSUE?

18       MS. TREBICKA:  I CAN START US OFF, YOUR HONOR, AND

19  I'M SURE MR. SCHAPIRO WILL JUMP IN AS WELL.

20       BUT WE DO THINK THAT A DEPOSITION AT THIS POINT, WHEN

21  THERE ARE SO MANY QUESTIONS THAT EVEN HAVE COME OUT AT THE

22  HEARING, IS PREMATURE.

23       WE SERVED THE ROG RESPONSES RELATED TO THE SYNCED DATA IN

24  SEPTEMBER, AND WE WANTED TO DISCUSS THAT WITH PLAINTIFFS, BUT

25  WE WERE TOLD, YOU KNOW, "WE REALLY NEED OUR EXPERTS TO DIG IN

1    AND WE WANT TO DEFER THAT DISCUSSION," WHICH WE THOUGHT WAS

2    REASONABLE.

3         BUT I THINK THERE NEEDS TO BE A DISCUSSION ABOUT -- REALLY

4    AT THE EXPERT LEVEL ABOUT WHAT OTHER DOCUMENTS THERE MAY BE,

5    WHAT ADDITIONAL WRITTEN DISCOVERY THERE MAY BE NEEDED BEFORE WE

6    GO TO A DEPOSITION.

7         A DEPOSITION WILL BE QUITE UNTETHERED TO THE REALITY, I'M

8    AFRAID, IF CERTAIN FACTUAL PARAMETERS ARE NOT DISCUSSED IN

9    ADVANCE.

10        SO, FOR EXAMPLE, IN THE BROWN CASE I THINK I MENTIONED

11   EARLIER, WHICH IS A RELATED CASE TO THIS, WE WERE ASKED IN

12   RFA'S WHETHER WE ADMITTED TO CERTAIN DATA BEING COLLECTED, AND

13   WE MADE -- WE MADE THE USUAL CAVEATS, BUT THAT'S SOMETHING THAT

14   WE RESPONDED TO.

15        SO THERE IS A PROCESS WHEREBY OTHER MORE EFFICIENT

16   DISCOVERY METHODS CAN BE EMPLOYED BEFORE WE GO TO A DEPOSITION

17   SO THAT WE CAN MAKE THAT DEPOSITION EFFICIENT, RELEVANT TO

18   PLAINTIFFS, AND NOT BURDENSOME AND NOT DUPLICATIVE OVER WHAT IT

19   MAY BE IF WE RUSH TO A DEPOSITION NOW AND THEN HAVE TO RE-DO

20   SOME OF IT AT A LATER -- OR PLAINTIFFS WILL WANT TO SEEK TO

21   RE-DO SOME OF IT AT A LATER POINT.

22        SO WE'RE FOCUSSED ON WRITTEN DISCOVERY, YOUR HONOR.

23        AND SPECIFICALLY TO THE POINTS IN DR. COWAN'S DECLARATION,

24   A WEEK AGO WHEN WE RECEIVED THE DECLARATION WAS THE FIRST TIME

25   THAT WE SAW THOSE REQUESTS.  AS I MENTIONED IN THE BEGINNING,

1    WE ARE INVESTIGATING TO SEE WHAT THERE MAY BE AS FAR AS DATA

2    DICTIONARIES, TABLES, ET CETERA.  WE JUST DON'T HAVE AN ANSWER

3    RIGHT NOW AND IT JUST NEEDS TO BE DONE IN THE REGULAR COURSE OF

4    DISCOVERY.

5         BUT IT'S ABSOLUTELY SOMETHING THAT, YOU KNOW, WE'RE

6    COMMITTED TO EXPLORING AND ARE NOT HIDING IN ANY, IN ANY WAY.

7    WE THINK IT'S A MORE EFFICIENT WAY TO GO ABOUT IT.

8         ONE POINT ON SAMPLING, YOUR HONOR, IT DOES RAISE -- A

9    RANDOM SAMPLE OF NON-CLASS -- OR OF NON-NAMED PLAINTIFFS DOES

10   RAISE HUGE PRIVACY CONCERNS FOR GOOGLE.  TO BE ABLE TO PRODUCE

11   THAT DATA TO PLAINTIFFS UNDER THE SCA, WE NEED USER CONSENT.

12   THAT IS HOW WE'VE DONE IT, THAT'S HOW IT'S ALWAYS DONE.

13        AND THEREFORE, IT'S SOMETHING THAT WE CERTAINLY ARE NOT

14   GOING TO DO UNLESS, YOU KNOW, WE'RE ORDERED.  AND EVEN SO, IT

15   HAS TO BE A VERY DETAILED CONVERSATION ABOUT WHAT IT IS THAT

16   GOOGLE IS BEING ASKED TO DO HERE.

17        AS FAR AS SAMPLES IN THE NARROW SENSE FOR JUST THE NAMED

18   PLAINTIFFS, THAT IS SOMETHING -- A COMPROMISE THAT IS ON THE

19   TABLE AND WE'RE HAPPY TO DISCUSS GOING THROUGH THAT PROCESS.

20        AND I WANT TO NOTE THAT EVEN WITH THE NAMED PLAINTIFF

21   DATA, WE WOULD NEED WRITTEN CONSENT FROM THEM.  WE WOULD NEED

22   TO JUMP THROUGH CERTAIN HOOPS SO THAT WE --

23             THE COURT:  YOU'LL PROBABLY GET THAT, THOUGH, DON'T

24   YOU THINK?

25             MS. TREBICKA:  YEAH, I THINK SO.

1          BUT IT WOULD NEED TO BE ORDERED BY THE COURT.  IT'S LIKE A

2     CONSENT DECREE THAT'S ORDERED BY THE COURT.  THERE'S A

3     PARTICULAR WAY IN WHICH WE NEED TO DO THIS TO COMPLY WITH THE

4     SCA.

5          YES, I AGREE, THE NAMED PLAINTIFFS ARE NOT GOING TO STAND

6     IN THE WAY, BUT WE WOULD NEED COURT INVOLVEMENT.

7          MR. SCHAPIRO:  AND, YOUR HONOR, I DON'T THINK I CAN

8     SAY ANY OF THIS ANY BETTER THAN MY COLLEAGUE, MS. TREBICKA, BUT

9     JUST PULLING THE CAMERA BACK A LITTLE BIT, IT MADE SENSE -- WE

10    FIND OURSELVES RUNNING IN TO YOU BECAUSE THERE WAS SORT OF A

11    FEELING THAT MAYBE THERE WAS SOMETHING THAT WAS AN EMERGENCY

12    HERE.

13         BUT I HOPE THAT AFTER THIS HEARING, YOU'LL AGREE WITH US

14    THAT WE'RE NOT IN AN EMERGENCY TYPE SITUATION, AND THAT'S -- SO

15    WE'RE ASKING THAT DISCOVERY PROCEED IN THE NORMAL COURSE.

16         I MEAN, AS MS. TREBICKA EXPLAINED, WE ARE PROVIDING LOGS

17    RELATED TO THE PLAINTIFFS' ACTIVITY.  THAT'S THE MOST RELEVANT

18    DATA.

19         WE'VE EXPLAINED THAT THERE ARE MANY DIRECT WAYS TO

20    DETERMINE WHAT THE LOGS COLLECT OR WHAT GOOGLE COLLECTS.  IT'S

21    HARDLY DISPUTED.

22         YOU KNOW, THE FACT OF THE TRANSFERS IS DOCUMENTED, AND

23    IF -- AS MS. TREBICKA POINTED OUT, IF THE CALHOUN PLAINTIFFS

24    HERE WILL SERVE US WITH AN RFA LIKE THE PLAINTIFFS IN BROWN

25    SAYING, DO YOU COLLECT THIS DATA, DO YOU COLLECT THAT DATA, I

1    THINK THEY'LL SEE THAT THIS IS ACTUALLY PRETTY SIMPLE AND

2    THERE'S NOT GOING TO BE MUCH DISPUTE ABOUT THAT.

3        AND THEN IF THEY BELIEVE THAT'S INADEQUATE, THEY CAN COME

4    BACK.  BUT THEY'VE ALREADY INCLUDED THAT EVIDENCE IN THEIR

5    COMPLAINT.

6        SO TO US, IT FEELS PREMATURE AND NOT EFFICIENT TO JUMP TO

7    A 30(B)(6) AT THIS POINT, AND PARTICULARLY, AS MS. TREBICKA

8    POINTED OUT, WHEN SOME OF THESE ALLEGATIONS, THE ONES FROM THE

9    EXPERT DECLARATION, ET CETERA, ARE THINGS THAT WE'RE HEARING

10   ABOUT FOR THE FIRST TIME NOW.

11       SO OUR -- OUR VIEW IS THAT ORDINARY DISCOVERY SHOULD

12   PROCEED FIRST AND THEN WE'LL SEE WHERE WE ARE.

13       THE COURT:  OKAY.  I APPRECIATE THAT, BUT I -- I

14   THINK THAT IT IS APPROPRIATE TO HAVE A FOCUSSED DEPOSITION,

15   PERHAPS PRECEDED BY, AGAIN, SOME FOCUSSED DOCUMENT PRODUCTION,

16   AND I WANT TO TURN TO THAT IN JUST A MOMENT, BECAUSE THE ISSUE

17   BEFORE THE COURT IS ONE OF PRESERVATION, OF DO DATA LOGS NEED

18   TO BE PRESERVED IN SOME FORM, IN SOME SCOPE, FOR SOME PERIOD OF

19   TIME?

20       AND I'M -- I'M VERY MINDFUL OF THE FACTS BEFORE THE COURT

21   FROM GOOGLE ON THE, THE CHALLENGES AROUND PRESERVATION AND

22   THAT -- AND THAT'S -- THAT MAY BE, YOU KNOW -- BUT, AGAIN, TO

23   MY POINT OF THAT PLAINTIFFS HAVE AN OPPORTUNITY, AND I BELIEVE

24   A RIGHT, TO TEST THOSE CHALLENGES, ALONG WITH, YOU KNOW,

25   WHAT -- AND CLOSELY INTERLEAVED IN ALL OF THIS ARE THE

1    QUESTIONS OF, WELL, WHAT DATA IS THERE AND DO PLAINTIFFS NEED

2    THAT?  IS THAT PROPORTIONAL?  IS IT APPROPRIATE?  ARE THERE

3    MORE EFFICIENT MEANS OF DISCOVERY TO GET TO THAT?

4        I THINK THAT PLAINTIFFS NEED SOME ADDITIONAL INFORMATION,

5    AND THEN THE PARTIES NEED A VERY ROBUST MEET AND CONFER OVER

6    DISCOVERY AND, YOU KNOW, HOW THIS CASE IS GOING TO BE

7    STRUCTURED.

8        AND, YOU KNOW, THERE MAY BE SOME COMMON GROUND ON FACTS

9    THAT CAN BE ESTABLISHED THROUGH RFA'S.  YOU KNOW, GOOGLE HAS

10   USED THAT TOOL IN OTHER CASES.  I HAVE SEEN THAT AND COUNSEL

11   HAS REFERENCED THAT.

12       BUT I CAN'T -- YOU KNOW, I CAN'T TELL YET AND I DON'T

13   THINK PLAINTIFFS YET HAVE ENOUGH INFORMATION.

14       SO I THINK THAT THE WAY TO PROCEED -- AND I -- A QUESTION

15   I HAVE FOR EITHER MS. TREBICKA OR MR. SCHAPIRO IS IN -- WITH

16   REGARDS TO THE INFORMATION IDENTIFIED IN PARAGRAPH 7 OF THE

17   COWAN DECLARATION WITH REGARDS TO DOCUMENTS, IS GOOGLE PREPARED

18   TO ADDRESS THOSE TO SAY THAT THAT IS AVAILABLE OR NOT AVAILABLE

19   FOR THE LOGS THAT WE'VE BEEN TALKING ABOUT HERE TODAY?

20        MS. TREBICKA:  YOUR HONOR, WE'RE -- THIS IS SOMETHING

21   THAT WE ARE INVESTIGATING AND I DO NOT HAVE AN ANSWER HERE

22   TODAY BECAUSE IT IS SOMETHING THAT WE WERE JUST FACED WITH

23   ABOUT A WEEK AGO.

24       BUT ABSOLUTELY WE'RE INVESTIGATING IT AND WE CAN PROVIDE

25   ANSWERS.

1            THE COURT:  OKAY.  I MEAN, DATA DICTIONARIES I THINK

2     ARE PRETTY SELF-EXPLANATORY.  DATA -- DATABASE ARCHITECTURE

3     DOCUMENTATION, PERHAPS LESS SO, ALTHOUGH THERE ARE SOME

4     SPECIFIC EXAMPLES.  AND THEN CATEGORY C, TECHNICAL

5     DOCUMENTATION IS PROBABLY TOO, TOO BROAD AND AN OVERALL

6     CATCH-ALL.

7            THIS IS NOT A BROAD DISCOVERY IMPLEMENTATION.  THIS IS,

8     AGAIN, VERY FOCUSSED ON INFORMATION ABOUT THESE SPECIFIC

9     DATABASES AS SET FORTH IN MY PROPOSED CATEGORIES FOR THE -- FOR

10    A 30(B)(6) DEPOSITION.

11           SO IT SOUNDS LIKE -- I THINK THAT SOME DOCUMENTATION TO

12    INFORM FOR THE DEPOSITION IS NOT GOING TO BE INAPPROPRIATE.

13    MAYBE PUT BETTER, SOME DOCUMENTATION WILL BE APPROPRIATE, AND I

14    THINK THAT, YOU KNOW, THE PARTIES NEED TO MEET AND CONFER AND

15    SEE IF YOU CAN COME TO AN AGREEMENT ON WHAT THAT IS.

16           I CAUTION THE PLAINTIFFS, THIS IS LIMITED.  THIS IS NOT

17    THE -- AGAIN, THIS IS NOT A BROAD SWATH OF DISCOVERY ON A WIDE

18    VARIETY OF ISSUES.  THIS IS REALLY FOCUSSED ON WHAT, WHAT WOULD

19    THE DATABASE -- WHAT COULD THE DATABASES TELL YOU THAT YOU

20    WOULD NEED AND YOU CAN'T GET FROM OTHER MORE ACCESSIBLE

21    SOURCES, INCLUDING MORE EFFICIENT DISCOVERY TOOLS, LIKE RFA'S.

22           JUST BECAUSE THE DATA EXISTS DOESN'T MEAN IT'S NECESSARILY

23    SUBJECT TO DISCOVERY UNDER RULE 26.

24           SO I THINK THAT WE PROBABLY NEED TO SET SOME CAREFUL

25    TIMELINES ON THE PARTIES MEETING AND CONFERRING, GETTING A

1    PRODUCTION OF DOCUMENTS, AND TURNING THEN TO A 30(B)(6)

2    DEPOSITION.

3         AND THEN IF YOU CAN COME TO AN AGREEMENT ON EXTRACTING

4    DATA FROM THE LOGS OR PRESERVATION OF CERTAIN PORTIONS OF THE

5    LOGS, GREAT.  AND IF YOU CANNOT, YOU WILL BE BACK BEFORE ME.

6         I'M ALSO MINDFUL THAT YOU ARE WAITING FOR AN ORDER FROM

7    JUDGE KOH ON YOUR MOTION TO DISMISS.  YOU KNOW, I WOULD EXPECT,

8    IN HER NORMAL COURSE, THAT YOU'LL HAVE THAT IN THE COMING

9    WEEKS, AND YOU CAN USE THIS TIME PRODUCTIVELY TO MEET AND

10   CONFER AND SET UP AND ADDRESS A LIMITED DOCUMENT PRODUCTION AND

11   PREPARE FOR A 30(B)(6) DEPOSITION.

12        MS. WEAVER:  YOUR HONOR, THANK YOU VERY MUCH.

13        AND MAY I ASK ALSO THAT GOOGLE PRODUCE TO US WHATEVER THEY

14   HAVE ON THE FOUR PLAINTIFFS?  THAT WOULD ALSO GREATLY ENHANCE

15   OUR ABILITY TO HAVE A CONVERSATION.

16        THE COURT:  WHEN YOU SAY "WHATEVER THEY HAVE," YOU

17   MEAN WHAT INFORMATION HAS BEEN PRESERVED AS PART OF THE GOOGLE

18   COMPROMISE?

19        MS. WEAVER:  RIGHT, EXACTLY.

20        THE COURT:  MS. TREBICKA, THAT SEEMS LIKE A

21   REASONABLE REQUEST.

22        MS. TREBICKA:  IN THE CONTEXT THAT WE'RE DISCUSSING

23   IT, YES, YOUR HONOR, WE WOULD BE WILLING TO PRODUCE THAT.

24        THE COURT:  YEAH.

25        MS. TREBICKA:  GIVEN THAT WE CAN ENTER INTO THE USUAL

SEALED PROCEEDINGS

1    CONSENT ORDER, ET CETERA.

2           THE COURT:  OF COURSE.

3           MS. WEAVER:  YOU WILL HAVE THE PERMISSION OF OUR

4    CLIENTS, VIOLA.

5           THE COURT:  MR. SCHAPIRO, DID YOU WANT TO BE HEARD ON

6    THAT?

7           MR. SCHAPIRO:  YOU COULD TELL.

8       I JUST WANTED TO MAKE SURE WE UNDERSTAND WHERE THINGS ARE

9    BEING LEFT.

10      SO, YOU KNOW, I HEARD YOU SAY THAT, YOU KNOW, AMONG THE

11   THINGS THAT WE SHOULD EXPLORE IS WHAT WOULD THESE DATABASES

12   TELL THE PLAINTIFFS THAT THEY COULDN'T GET FROM RFA'S, FOR

13   EXAMPLE, THAT WOULD BE SOMETHING THAT THEY MIGHT EXPLORE IN A

14   30(B)(6).

15      AND I GUESS I WOULD JUST RENEW MY REQUEST THAT WE DO THE

16   RFA'S FIRST BECAUSE THEN ONE CAN DETERMINE WHAT YOU LEARN FROM

17   THE RFA OR NOT, RATHER THAN SAYING, WELL, IS THERE SOMETHING

18   THAT I CAN LEARN FROM YOU THAT I WOULDN'T LEARN FROM AN RFA?

19           THE COURT:  I THINK IT'S FAIR IN THIS CASE -- AGAIN,

20   ON THIS NARROW TOPIC OF THE PARAMETERS OF THE DATABASES WHERE

21   WE'RE TRYING TO DETERMINE OBLIGATIONS TO PRESERVE AND/OR

22   WHETHER OR NOT THEY'RE ACCESSIBLE FOR EXTRACTION OF DATA -- I

23   THINK THAT, AGAIN, IN THE PARTIES' MEET AND CONFER, YOU CAN

24   CERTAINLY PROPOSE RFA'S TO THE PLAINTIFFS THAT DEFENDANT WOULD

25   COMMIT TO ANSWER, OR PLAINTIFF MAY HAVE SOME IN MIND.  I WOULD

SEALED PROCEEDINGS

1    EXPECT THAT TO BE PART OF THE CONVERSATION.

2        AGAIN, THIS ISSUE, THERE IS SOME IMMEDIACY TO IT.  IT'S A

3    VERY SMALL, FOCUSSED ISSUE.  IT'S JUST ABOUT THESE DATABASES

4    AND ACCESSIBILITY AND, YOU KNOW, WHAT IS HERE THAT IS NOT

5    AVAILABLE ANYWHERE ELSE THAT PLAINTIFFS NEED?

6        AND I THINK THAT SOME -- AN EARLY DEPOSITION ON THIS

7    SUBJECT -- SOME USEFUL DOCUMENTS THAT CAN INFORM THE DEPOSITION

8    AND AN EARLY DEPOSITION ON THIS NARROW TOPIC WILL -- SHOULD

9    ADDRESS THIS ISSUE.

10       AND IF THE PARTIES, IN THEIR MEET AND CONFER EFFORTS, CAN

11   AGREE ON OTHER DISCOVERY TOOLS AND OTHER MEANS AND BYPASS THIS

12   ISSUE ENTIRELY, THAT'S GOOD.

13       IF YOU THINK THERE IS A PATH, IF YOU SAID -- IF YOU COME

14   BACK AND SAY, "HERE ARE THE RFA'S WE HAVE PROPOSED THAT WE'LL

15   ANSWER," OR "HERE ARE OUR ANSWERS" SO THERE'S NOTHING EXTRA IN

16   THE, IN THE DATABASES AND PLAINTIFFS JUST WANT TO GET IN THERE

17   AND MUCK AROUND FOR THEIR CASE, YOU KNOW, I'VE HEARD THAT

18   ARGUMENT ONCE OR TWICE, THEN YOU CAN COME BACK TO ME WITH THAT

19   AND WE'LL -- WE WILL PROCEED CAREFULLY ON THIS, AGAIN, VERY

20   NARROW ISSUE.

21       MR. SCHAPIRO:  THANK YOU, JUDGE.

22       AND AT RISK OF WEARING OUT THE WELCOME, ONE LAST REQUEST

23   FOR GUIDANCE.

24       THE COURT:  UM-HUM.

25       MR. SCHAPIRO:  WE'VE WORKED WELL WITH THE PLAINTIFFS'

1    COUNSEL IN THIS CASE, AND I'M SURE THAT WILL CONTINUE, BUT I

2    HAD THIS COME UP IN ANOTHER CASE RECENTLY WITH A 30(B)(6) THAT

3    WAS SUPPOSED TO BE NARROW, BUT WHERE THERE WAS INEVITABLE

4    SUBSTANTIAL OVERLAP WITH THE MERITS ISSUES OF THE CASE, WHICH

5    IS TRUE HERE, TOO, BECAUSE -- I MEAN, AS YOU'VE HEARD EVEN

6    TODAY.

7         AND OF COURSE, AS YOU KNOW, ONE ORDINARILY CANNOT INSTRUCT

8    A 30(B)(6) WITNESS NOT TO ANSWER A QUESTION, EVEN IF IT'S

9    OUTSIDE THE SCOPE, IF IT IS SOMETHING THAT THAT WITNESS KNOWS

10   IN HIS OR HER PERSONAL CAPACITY, AND THEN THE WITNESS HAS TO

11   SAY, "WELL, THIS IS IN MY PERSONAL CAPACITY," AND ANYONE WE PUT

12   UP IS GOING TO HAVE A LOT OF UNDERLYING KNOWLEDGE ABOUT THE

13   MERITS AS WELL.

14        SO I GUESS I'M JUST LOOKING FOR WHATEVER GUIDANCE YOU

15   MIGHT HAVE, OR TO MAKE SURE WE ALL UNDERSTAND ON THE RECORD

16   THAT NARROW AND FOCUSSED MEANS NARROW AND FOCUSSED, EVEN IF THE

17   INDIVIDUAL MIGHT KNOW ALL SORTS OF THINGS FROM GOOGLE.

18        THE COURT:  I APPRECIATE THAT CONCERN, MR. SCHAPIRO.

19   OF COURSE IN THE ABSTRACT, IT'S VERY DIFFICULT TO DRAW THOSE

20   LINES, AND ALTHOUGH THERE ARE SOME QUESTIONS FOR -- THAT GO TO

21   THE NEED TO PRESERVE AND EXTRACT INFORMATION FROM THE DATABASES

22   AS OPPOSED TO MERITS OF THE CASE, THERE'S A LOT OF -- THERE ARE

23   UNDOUBTEDLY SOME GREY QUESTIONS IN BETWEEN THAT COULD GO TO

24   EITHER.

25        AND THIS IS WHERE OBVIOUSLY COUNSEL, I THINK, REALIZE IT'S

SEALED PROCEEDINGS

1    IN BOTH SIDES' BEST INTERESTS TO BE REASONABLE IN THOSE

2    ASSESSMENTS.

3        AND, YOU KNOW, IF YOU HAVE TO GET -- IF YOU HAVE TO COME

4    TO THE MAGISTRATE JUDGE FOR A DEPOSITION LIKE IN THE OLD DAYS

5    WHERE YOU'D SIT IN MY JURY ROOM, YOU KNOW, WE'LL FIGURE OUT A

6    WAY TO DO IT, TO DO IT BY ZOOM.

7        BUT I THINK THAT, AGAIN, WHAT I WANT THE PARTIES TO DO IS

8    TO MEET AND CONFER ON THE -- ON A FOCUSSED DOCUMENT PRODUCTION

9    THAT WOULD INFORM A DEPOSITION OF THE SCOPE THAT I HAVE

10    OUTLINED IN MY ORDER THAT PRECEDED THIS HEARING, AND I HAVEN'T

11    HEARD GOOGLE ADDRESS THOSE, THOSE CATEGORIES, SO IF YOU HAVE

12    ANY ISSUE WITH THOSE, NOW IS THE TIME.

13        AND FOR NOW, I'M GOING TO ORDER THAT A DOCUMENT PRODUCTION

14    AND DEPOSITION TAKE PLACE IN THE NEXT 30 DAYS, AND IF THE

15    PARTIES AGREE IN THEIR MEET AND CONFER EFFORTS AND THEY WANT

16    MORE TIME FOR THAT, THEN YOU CAN COME BACK.

17        MS. WEAVER:  AND, YOUR HONOR, ARE YOU ORDERING

18    DOCUMENT PRODUCTION BEFORE THE DEPOSITION?  THAT WOULD BE

19    HELPFUL FOR THE PLAINTIFFS.

20        THE COURT:  DOCUMENT PRODUCTION IN ADVANCE OF THE

21    DEPOSITION.  BUT I EXPECT COUNSEL TO MEET AND CONFER.

22        MS. WEAVER:  WE WILL.

23        THE COURT:  AND AS I SAY, I THINK THERE ARE SOME --

24    THERE'S SOME MERIT TO THE CATEGORIES IDENTIFIED IN THE COWAN

25    DECLARATION.  I THINK THAT IT GETS PRETTY BROAD PRETTY QUICKLY.

SEALED PROCEEDINGS

1          AND, AGAIN, THIS IS NOT A MERITS DISCOVERY PASS.  THIS IS

2     REALLY FOCUSSED ON THE DATABASES AND THE ISSUE OF PRESERVATION

3     AND ACCESSIBILITY FOR EXTRACTION OF INFORMATION.

4          MR. SCHAPIRO:  ALL RIGHT.

5          MS. WEAVER:  UNDERSTOOD, YOUR HONOR.  THANK YOU VERY

6     MUCH.

7          THE COURT:  I KNOW MR. SCHAPIRO WOULD LIKE TO KEEP

8     ARGUING.

9          MR. SCHAPIRO:  WELL, YOU DID SAY A MOMENT AGO IF WE

10    HAVE ANY THOUGHTS ABOUT THE SPECIFIC SUBTOPICS --

11         THE COURT:  I DID.

12         MR. SCHAPIRO:  -- OR THE TOPICS FOR THE 30(B)(6), SO

13    I WAS LOOKING BACK AT THOSE, AND I SEE ONE OF THEM IS GOOGLE'S

14    RETENTION PRACTICES AND PROTOCOLS OF THE SUBJECT LOGS --

15         THE COURT:  UM-HUM.

16         MR. SCHAPIRO:  -- AND THAT'S ONE WHERE I CERTAINLY

17    BELIEVE, WITH A SIMPLE INTERROGATORY, WE CAN GIVE A FULL AND

18    COMPLETE ANSWER AND NOT HAVE TO BOTHER WITH MAKING SURE WE

19    PREPARE A WITNESS BECAUSE THERE ARE MULTIPLE LOGS AND SERVICES

20    AT ISSUE HERE, AND THIS IS -- IT'S SIMPLER TO GO TO MULTIPLE

21    PEOPLE, GET --

22         THE COURT:  I THINK THAT'S A CONVERSATION YOU SHOULD

23    BE HAVING WITH PLAINTIFFS' COUNSEL AND THEY CAN PROBABLY GET

24    YOU AN INTERROG PRETTY QUICKLY AND THE PARTIES CAN AGREE, WITH

25    A RESPONSE BY DATE X, MAYBE THAT COMES OFF OF THE TOPICS.  IT'S

SEALED PROCEEDINGS

1    NOT A GOOD USE OF ANYONE'S TIME.

2        I GAVE CONSIDERATION TO SETTING A TIME LIMIT ON THIS

3    DEPOSITION, BUT I DON'T REALLY FEEL LIKE I HAVE ENOUGH

4    INFORMATION TO LIMIT IT ANY FURTHER THAN UNDER THE RULES.  YOU

5    KNOW, IT WOULD BE A SEVEN HOUR DEPOSITION.

6        OF COURSE NOW I RECOGNIZE I'VE CALLED IT A 30(B)(6).  SO,

7    AGAIN, I WILL LET THE PARTIES ADDRESS THAT THAT, AND IF YOU

8    NEED MY HELP IN THAT, YOU KNOW WHERE TO FIND ME.

9            MR. SCHAPIRO:  THANK YOU, JUDGE.

10            THE COURT:  OKAY.  NARROW PRODUCTION OF DOCUMENTS,

11    DEPOSITION, 30 DAYS, AND THAT WILL -- I WILL -- AGAIN, YOU NEED

12    TO BE MEETING AND CONFERRING ON THE ISSUES, AND IF THERE'S A

13    RESIDUAL DISPUTE OR STILL DISAGREEMENT, LET ME KNOW.  COME BACK

14    BEFORE ME AND WE'LL GO FROM THERE.

15            MS. WEAVER:  UNDERSTOOD, YOUR HONOR.  THANK YOU.

16            THE COURT:  ALL RIGHT.  ANYTHING ELSE TODAY FROM

17    PLAINTIFF?

18            MS. WEAVER:  NO, I DON'T THINK SO.

19        I'M LOOKING AT MY CO-COUNSEL.

20            THE COURT:  YES, I'M LOOKING AT ALL OF YOU.

21            MS. WEAVER:  I THINK WE'RE OKAY.  I THINK WE'RE OKAY.

22            MR. STRAITE:  LESLEY, YOU DID EXCELLENT.

23            THE COURT:  ANYTHING ELSE FROM DEFENDANT TODAY?

24            MS. TREBICKA:  NO, YOUR HONOR.

25            THE COURT:  ALL RIGHT.

SEALED PROCEEDINGS

1          MS. TREBICKA:  THANK YOU FOR YOUR TIME.

2          THE COURT:  THANK YOU.

3          MR. SCHAPIRO:  THANK YOU, YOUR HONOR.

4          THE COURT:  I APPRECIATE THE PREPARATION OF COUNSEL

5     ON BOTH SIDES.  THIS WAS VERY HELPFUL.  AND I'LL -- WE ARE

6     CONCLUDED FOR TODAY AND WE ARE ADJOURNED.  THANK YOU.

7          MR. SCHAPIRO:  THANK YOU, YOUR HONOR.

8          MS. TREBICKA:  THANK YOU, YOUR HONOR.

9          MS. WEAVER:  THANK YOU, YOUR HONOR.

10        (THE PROCEEDINGS WERE CONCLUDED AT 10:59 A.M.)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2

3                              CERTIFICATE OF REPORTER

4

5

6

7          I, THE UNDERSIGNED OFFICIAL COURT REPORTER OF THE UNITED

8     STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA,

9     280 SOUTH FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY

10    CERTIFY:

11         THAT THE FOREGOING TRANSCRIPT, CERTIFICATE INCLUSIVE, IS

12    A CORRECT TRANSCRIPT FROM THE RECORD OF ZOOM PROCEEDINGS IN THE

13    ABOVE-ENTITLED MATTER.

14

15

16

           LEE-ANNE SHORTRIDGE, CSR, CRR
17         CERTIFICATE NUMBER 9595

18         DATED:  MARCH 9, 2021

19

20

21

22

23

24

25