March 1, 2022

Magistrate Virginia K. DeMarchi
San Jose Courthouse, Courtroom 2-5th Floor
280 South 1st Street, San Jose, CA 95113

      Re:    *In re Google RTB Consumer Privacy Litigation*, 21-cv-02155
               Joint Discovery Dispute – Google's Search Terms, Custodians, and Non-Custodial Sources

Dear Magistrate Judge DeMarchi:

Plaintiffs and Defendant Google LLC ("Google") submit this joint letter brief regarding Plaintiffs' proposed search terms and custodians, and Google's identification of non-custodial sources. The parties have met and conferred several times, including on February 17, 2022, but have been unable to resolve these specific disputes.

**Exhibit A - B** are lists of the disputed search terms and custodians prepared by Plaintiffs. Google objects to Plaintiffs' Exhibits. **Exhibit C** contains Google's disclosed non-custodial sources, as of February 17, 2022. **Exhibits D - E** are lists of the agreed and disputed search terms and custodians prepared by Google. Plaintiffs object to Google's Exhibits.

**I.     PLAINTIFFS' POSITION**

Plaintiffs seek transparency on search terms, custodians, and non-custodial sources likely to have relevant information. Google ***refuses*** to follow established practice of providing deduplicated (uninflated) "hit reports" showing the number of unique hits for each term, or total number of documents returned by terms,[1] despite Google providing these in two related cases, *Brown* and *Calhoun* – a necessary step for meaningful discussion on what terms are effective.[2] Google ***also refuses*** to discuss (or test) specific terms or custodians. Google's non-custodial disclosures are deficient and opaque.

---

[1] *See* ESI Protocol, ¶6(b) (Dkt. 125); 11/2/21 Hrg. Tr., pp. 45-46; *Finisar v. Nistica*, 13-CV-03345-BLF (JSC), 2014 WL 12887160, *3 (N.D. Cal. Dec. 12, 2014); *Apple, Inc. v. Samsung Elecs. Co.*, 12-CV-0630-LHK PSG, 2013 WL 1942163, *3 (N.D. Cal. May 9, 2013) ("selecting search terms and data custodians should be a matter of cooperation and transparency…")..

[2] *Markson v. CRST Int'l, Inc.*, EDCV171261FMOSPX, 2019 WL 7905896, *2 (C.D. Cal. Dec. 16, 2019) (ordering defendant to run deduplicated hit reports); *Calhoun v. Google*, 4:20-cv-05146-YGR, Dkt. 251-1.

This case concerns Google's sale, sharing, and monetization of Plaintiffs' personal information via the real-time bidding ("RTB") online ad auction process. To understand what is shared, Plaintiffs need to understand that data flow, including what information is collected from users; how Google categorizes/uses it; how it informs the auction process; Google's agreements with RTB participants; the auctions themselves; and how Google is compensated. Plaintiffs crafted terms to yield relevant documents on these issues.

A.   **Google *Refuses* to Run The Following Relevant Terms:**

| No. | Term | Relevant/Proportional |
|---|---|---|
| 33, 64 | ■ | ■ |
| 33 | ■ | ■ |
| 40 | Hewitt OR Delahunty OR Toronto/15 Google | These terms seek nonprivileged documents concerning the Named Plaintiffs or information collected from or shared about them through RTB (or otherwise). |
| 43, 45-50 | WAA*; WAAs; "Web & App Activity"; "web/2 app activity"; Web/App; web history; sWAA; W&AA; my history | "Web & App Activity," or "WAA," is part Google's consent defense. Google may claim that individual WAA device settings evidence users' consent to the sale of their data through RTB – and demands Plaintiffs' WAA settings while refusing to use these terms for its own ESI. *Cf.* Dkt. 142, RFPs 1, 17, 23. ***Plaintiffs will remove WAA if*** Google agrees not to raise a consent defense that the Web & App Activity toggle, or any messages sent in relation to it, granted Google permission to apply users' PI to craft personalized ads used in RTB auctions. |
| 5 | Zwieback/ZWBK/ Zweiback | Personal data shared in RTB is linked to identifiers/ cookies that associate that data with users, which Google uses to create profiles to inform the placement of ads via RTB. "Zwieback" is one such identifier. |

B.   **Terms Google *Refuses* To Test With Hit Reports**

**Exhibit A** reflects search strings over which the parties differ on terms within strings or delimiters. These disputes may be resolved if Google provides ***deduplicated*** unique hit counts to asses

relevancy, proportionality, and burden. Google ignores its representation to be cooperative,[3] saying it won't do anything the ESI Protocol doesn't *specifically* require.

There also are seven terms (Nos. 66-72) Plaintiffs proposed to run over targeted custodians after Google refused to create terms to capture information sought by certain RFPs. Google calls some "irrelevant," displaying (perhaps purposefully) a lack of knowledge about its own systems. For example, Google AdMob is the mobile program through which Google advertises to users. ([What is AdMob - Google AdMob](#)). A search for web history, or "myhistory," w/15 of Admob will identify documents on whether Google advertises to mobile users based on browsing history.

***Plaintiffs haven't been dilatory***: Google would not engage in early, transparent discussions (and still refuses transparency). Plaintiffs made detailed search-term proposals when Google would not.

### C.     Google *Refuses* to Test Custodians Likely to Possess Relevant Information

Plaintiffs propose adding 23 custodians (**Exhibit B**) whose responsibilities are relevant to RTB and the parties' claims and defenses. This is based on analysis of Google documents, an employee list (GOOG-HEWT-00001115), and public information. A summary of the relevance of these individuals is below.[4] For 18 individuals in part two of **Exhibit B**, Google's production suggests they possess relevant information.

Google *refuses* to assess Plaintiffs' proposals, e.g., with hit counts or other explanation; instead, offering only conclusory statements that custodians weren't assigned "solely" to RTB, reported to/have overlapping duties with others, or are "apex" employees—all baseless arguments against custodial document-collection. Google's conclusory assertions are improper; deduplicated hit counts may reveal custodians' unique knowledge and relevance. *Vasudevan Software, Inc. v. Microstrategy Inc.*, 2012 WL 5637611, *6 (N.D. Cal. Nov. 15, 2012) (granting additional custodians); *Shenwick v. Twitter, Inc.*, 2018 WL 833085, *1 (N.D. Cal. Feb. 7, 2018) (ordering inclusion of CEO's files). Targeted ads are Google's biggest revenue source; its development and operation of RTB, and decision-making around user privacy and consents applicable to RTB, likely involves dozens of employees.

Plaintiffs seek two elements of relief: 1) that the individuals listed below, who are directly involved with RTB, be added as custodians; 2) for the remaining 18, Google produce additional descriptions of their roles/work so the parties can have meaningful discussion on these potential custodians.[5]

---

[3] *Compare* 11/2/21 Hrg Tr. pp.45-46 (Google's promises re: transparency).

[4] Due to page constraints, and Google's refusal to allow more robust explanations in **Exhibit B**, Plaintiffs offer this overview here. Contrary to Google's assertion below, **Exhibit B** properly contains *facts*, not argument.

[5] Judge van Keulen approved 42 custodians in *Brown and Calhoun.* Those cases focus solely on *one* Google service – Chrome. Here, data collected from *all* of Google's services are implicated.

| Proposed Custodian | Basis: |
|---|---|
| 1: Bellack | ■■■ |
| 2: Bender | ■■■ |
| 3: Bigler | ■■■ Cited in: Google's First-Price Auction Switch Is Making Header Bidding Partners Win More – AdExchanger |
| 4: Eisinger | ■■■ |
| 5: Enright | ■■■ |
| 6: Fair | ■■■ Familiar with changing privacy controls over time that Google tells users they can deploy to control data flow.[6] |
| 7: Falcon | ■■■ |
| 8: Graham | ■■■ |
| 9: Hanneman | ■■■ |
| 10: Heft-Luthy | ■■■ |
| 11: Jun | ■■■ |
| 12: Khanna | ■■■ |
| 13: LaSala | ■■■ |
| 14: Liu | ■■■ |

---

[6] Greg Fair | googblogs.com

[7] ■■■

| | |
|---|---|
| 15: Maxcy | ██████████████████████ |
| 16: Micklitz | ██████████████████████ Cited in: https://safety.google/intl/ca_ca/stories/micklitz-fair/; When it comes to privacy, that users' needs are being recognized - Google Safety Center |
| 17: Monsees | ██████████████████████ [8] |
| 18: Pichai | ██████████████████████ (*see* his public statements that Google does not sell user data). Approved in *Calhoun/Brown*. |
| 19. Seli | ██████████████ |
| 20: Schulman | ██████████████████████ |
| 21: Twohill | ██████████████████████ |
| 22: Varian | ██████████████████████ |
| 23: Grateau | ██████████████████████ |

D. **Google *Refuses* to Provide Specifics on Non-Custodial ESI**

Google's statement **(Exhibit C)** provides only generic references to "internal repositories," a singular "drive", and "management systems." Google should be ordered to identify precise sources of information re. RTB where relevant information resides, such as shared folders used by work-groups (e.g. "██████"), drives, and chatrooms (██████ "[9]").

II. **GOOGLE'S POSITION**

A. **Search Terms**

Plaintiffs' demand that Google add or substantially expand *49* search strings, all subject to the April 21 substantial completion deadline, is unjustified and infeasible.

To begin, Plaintiffs delayed proposing search terms, prejudicing Google, violating the Court-ordered timeline (ECF 127), and imperiling compliance with the April deadline by refusing to begin proposing any new terms (apart from unworkable changes to Google's terms) until a month

---

[8] David Monsees Inventions, Patents and Patent Applications - Justia Patents Search

[9] Author, Inside AdWords: More Insights about Quality Score and the AdWords Auction - Google Best Practices (googleblog.com)

after the December 23 deadline, and kept adding, *even during this briefing process*. This alone warrants denial of Plaintiffs' motion.

Contrary to their claim that Google "refuses to assess Plaintiffs' proposals," Google repeatedly compromised and adopted dozens of terms Plaintiffs requested. *See* Ex. D, Terms A-CC (compromise terms bolded).[10]

Plaintiffs complain that Google did not provide deduplicated and unique hit reports for all disputed terms. First, Google *did* provide hit counts for 15 of Plaintiffs' terms. Those reports prove Plaintiffs' terms are overbroad: 3 terms returning about 1 million hits each and 5 returning between ~85,000 and ~340,000 each. Second, only Plaintiffs' proposed ESI protocol, *which the Court rejected*, required fully deduplicated and unique hit counts. (ECF 95 at 8(b)(iv).) The operative ESI protocol—which differs substantially from those in *Calhoun* and *Brown*—calls for hit reports for good faith burden disputes, when they "are reasonably available and reasonable in scope." ESI Protocol § 6(c). Deduplicated reports are not "reasonably available," and would pose significant burden as Google's tools do not deduplicate until documents are exported for review. Google's approach was the same in *Brown* and *Calhoun*. As Judge Van Keulen recognized in *Calhoun*: "deduping is obviously later in the process" and to expect otherwise "is [putting the] cart before the horse." July 8, 2021 Hrg. Tr. at 28:24-29:20. Finally, hit counts are uninformative, as Plaintiffs *also* demand 23 more custodians.

As to the 49 remaining disputed terms, Plaintiffs cannot meet their burden.

***Code Names.*** At Plaintiffs' request, Google incorporated numerous "code names" touching on RTB. *E.g.*, Ex. D at O-Z. Nevertheless, Plaintiffs demand code names that Google explained: (1) are generic parts of its ▓▓▓▓▓▓ ("▓▓▓▓▓▓"); (2) specifically exclude RTB (Google refused ▓▓▓▓▓▓ but accepted ▓▓▓▓▓▓"); or (3) are not utilized in RTB ("**Zwiebeck**"). *See* **Terms 8, 33, 5**. Plaintiffs also falsely claim that Google rejected the term ▓▓▓▓▓▓ which appears in 16 *accepted* terms.

***Facially Overbroad Terms.*** Many of Plaintiffs' terms are clearly not proportional. (*See* Terms 6, 10, 12, 16, 17, 18, 37, 38, 39, 44, 53, 54, 56, 60, 62). **Term 10** hits nearly *one million* documents and returns all documents with variations of "**RTB**" w/35 of "**question***" or "**issue***" or "**worry.**" *See also* **Term 17** (similar; generating ~1M hits). Likewise, **Term 37** (originally over 1.3 million hits), yields all documents with variations of "**RTB**" w/35 of various general and unrelated Google terms, like "**Youtube**" and "**Google.com.**" "[I]ndiscriminate terms" sweeping in voluminous irrelevant information are improper. *See TVIIM, LLC v. McAfee, Inc.*, 2014 WL 5280966, at *2 (N.D. Cal. Oct. 15, 2014).

***Terms Pertaining to Pending Disputes or Irrelevant Terms.*** **Term 40** lists the case names and relates to the still-pending disputed RFP 1. **Terms 43, 45-47, 49**, and **61**, are variations of "**WAA**," the acronym for an account setting in the AZAG action, before the Court in the still-pending disputed RFPs 3-4. Moreover, that Google asks for Plaintiffs' own account settings, including

---

[10] **Exhibit D** mirrors **Exhibit A** but includes the parties' agreed terms. **Exhibit E** removes improper argument from **Exhibit B** and includes the parties' agreed custodians.

6

WAA, which may impact whether they were affected by Google's alleged conduct, does not establish that *every internal document mentioning WAA* is relevant.

Plaintiffs also propose other irrelevant terms, such as **"user data controls" (51)** or **"activity controls" (52)**. *See* Terms 42, 48, 50-52, 60. Further, most of these terms are copied from Plaintiffs' proposal in the unrelated case *Rodriguez v. Google*, and were *rejected there as "overbroad."* (45, 50, 51, 52, 53, 57, 60). No. 3:20-cv-04688-RS (AGT), ECF No. 208 (N.D. Cal. Jan. 20, 2022) ("ECF 208").

***Connectors.*** Plaintiffs insist on connectors "w/35" or "w/50." *E.g.*, Terms 2-6, 7, 11-16, 41. As the *Rodriguez* Court recognized: "[t]he '/50' connector would lead to an overbroad search, so Google should use the '/15' connector instead." ECF No. 208 at n. 4. Google has already expanded many terms from "w/15" to "w/25." That is sufficient.

***Terms First Demanded During Briefing.*** Plaintiffs' demand for 8 new terms (66-72) *after* the final M&C and two months after the deadline is egregiously untimely. Several terms are also facially absurd, including **Terms 66** ("RTB" as standalone term), and **72** ("UX" w/30 "sell" or "Research").

### B.     Custodians

Google has designated 21 custodians, including 8 requested by Plaintiffs. Dissatisfied, Plaintiffs seek to double that list.

Google is best positioned to identify relevant custodians. (*See* Principle 6, Sedona Conference). Accordingly, Google investigated and identified 13 individuals most likely to have relevant documents. This included: ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

A requesting party must "explain how information from additional custodians would not be duplicative, and more importantly, how it would be proportionate." *Nevro Corp v. Bos. Sci. Corp.*, 2017 WL 2687806, at *3 (N.D. Cal. June 22, 2017). Further, the ESI protocol requires that Plaintiffs "reasonably and in good faith" contend the requested custodians are "necessary and proportional." (ESI Protocol, § 6(c)), ECF 125. Disregarding this, Plaintiffs insisted on adding 51 more custodians without providing a substantive basis. Nevertheless, Google reviewed the entire list and designated eight additional custodians, ████████████████████████████████████████████████████████████████████████████████████████

After months of demanding 40+ more custodians, Plaintiffs changed tacks for the first time *in their draft letter*, requesting that Google add 23 custodians and "produce additional descriptions of their roles and work" for another 18. Google had offered to individually discuss each custodian

7

during the final M&C, and Plaintiffs *declined* to continue after covering *12 of 43* individuals. Plaintiffs cannot now demand Google provide information they previously refused to hear.

Worse yet, even after Plaintiffs' partial retreat, they still seek to add *23 more* custodians—making *44* total—whose documents would be subject to the April deadline. Plaintiffs' belated explanations of relevance, first sent to Google on February 11, only highlight the flaws in their list:

***Duplicative***. Bigler, Jun, Seli, and LaSala are all duplicative  While Plaintiffs speculate, without support,

***No Connection to RTB***. This Court observed that "the focus of discovery" should be RTB, "being the vehicle by which . . . personal information of Google account holders is sold or disseminated" as opposed to "anything having to do with data privacy." 2/8/22 Tr. at 21:12-19. Plaintiffs nevertheless seek a slate of individuals

***Very senior employees.*** Plaintiffs

Plaintiffs do not refute these facts but contend that Google can only prove irrelevance by testing each proposed custodian with "hit counts." That is not the law, neither of Plaintiffs' cited cases supports that position,[11] and this Court has already rejected this requirement in Plaintiffs' proposed ESI protocol. ECF 95 at 8(b)(vii). Pointing to the number of custodians in *Calhoun* and *Brown* also does not help Plaintiffs. This Court has already recognized that this case is focused on only one product—RTB (2/8/22 Tr. at 21:7-19) and is more limited than those actions.

### C. Non-Custodial Sources

The ESI Protocol provides that parties shall "share . . . non-custodial sources" by providing "a general description of the expected content of the non-custodial sources." (ESI Protocol § 6(c).) Google served a detailed disclosure identifying 23 categories of documents Google expected to produce from non-custodial sources. Despite making no parallel disclosure, Plaintiffs claimed this description was deficient. Google then twice revised its disclosure to (1) describe each non-custodial source (*e.g.*, a named data log, internal repositories of certain documents), and (2) supplement with more detail, including disclosing the name of the only third-party product among its sources (Workday) and confirming that the remaining sources are internal, created by Google engineers. Plaintiffs are entitled to nothing more.

---

[11] *Vasudevan Software, Inc.*, 2012 WL 5637611, at *6 (designating single custodian; no mention of hit counts); *Shenwick*, 2018 WL 833085, at *1 (same).

### III. NECESSITY OF A HEARING

### A. Plaintiffs' Position:

Because of the importance of the issues, which can only be discussed with brevity here, and their connection to the parties' ability to meet substantial production deadlines, Plaintiffs respectfully request that the Court schedule a hearing on these disputes on any convenient date other than March 14 or 15, 2022.

### B. Google's Position

Google respectfully requests the Court convene a hearing to resolve these issues.

### IV. DISCOVERY CUT-OFF DATES FOR FACT AND EXPERT DISCOVERY

| | |
|---|---|
| Parties to substantially complete production of documents | April 21, 2022 |
| Fact Discovery Cut-Off | December 15, 2022 |
| Close of Expert Discovery | March 2, 2023 |

### V. COMPLIANCE WITH MEET AND CONFER REQUIREMENT

The Parties met and conferred via Zoom on January 7, January 19, February 2, and February 14, and held their final lead counsel meet and confer on February 17. On Plaintiffs' side Elizabeth C. Pritzker, Karin Swope, Bethany Caracuzzo, and David Straite attended. On Google's side Jeff Gutkin, Aarti Reddy, and Colin Scott attended, among others.

**PRITZKER LEVINE LLP**

By: */s/ Elizabeth C. Pritzker*
Elizabeth C. Pritzker (Cal. Bar. No. 146267)
Jonathan K. Levine (Cal. Bar. No. 220289)
Bethany Caracuzzo (Cal. Bar. No. 190687)
1900 Powell Street, Suite 450
Emeryville, CA 4608
Tel.: (415) 692-0772
Fax: (415) 366-6110
ecp@pritzkerlevine.com
jkl@pritzkerlevine.com
bc@pritzkerlevine.com

9

**BLEICHMAR FONTI & AULD LLP**

By: */s/ Lesley Weaver*
Lesley Weaver (Cal. Bar No.191305)
Matthew Melamed (Cal. Bar No. 260272)
Anne K. Davis (Cal. Bar No. 267909)
Joshua D. Samra (Cal. Bar No. 313050)
555 12th Street, Suite 1600
Oakland, CA 94607
Tel.: (415) 445-4003
Fax: (415) 445-4020
lweaver@bfalaw.com
mmelamed@bfaw.com
adavis@bfalaw.com
jsamra@bfalaw.com

**SIMMONS HANLY CONROY LLC**

By: */s/ Jay Barnes*
Jason 'Jay' Barnes (admitted *pro hac vice*)
An Truong (admitted *pro hac vice*)
Eric Johnson (*pro hac vice* to be sought)
112 Madison Avenue, 7th Floor New York, NY 10016
Tel.: (212) 784-6400
Fax: (212) 213-5949
jaybarnes@simmonsfirm.com
atruong@simmonsfirm.com
ejohnson@simmonsfirm.com

**DICELLO LEVITT GUTZLER LLC**

By:  */s/ David Straite*
David A. Straite (admitted *pro hac vice*)
One Grand Central Place
60 E. 42nd Street, Suite 2400
New York, NY 10165
Tel.: (646) 993-1000
dstraite@dicellolevitt.com

Amy E. Keller (admitted *pro hac vice*)
James A. Ulwick (admitted *pro hac vice*)
Ten North Dearborn Street
Sixth Floor
Chicago, IL 60602
Tel.: (312) 214-7900
akeller@dicellolevitt.com
julwick@dicellolevitt.com


**BOTTINI & BOTTINI, INC.**

By: */s/ Francis A. Bottini, Jr.*
Francis A. Bottini, Jr. (SBN 175783)
Albert Y. Chang (SBN 296065)
Anne Beste (SBN 326881)
Yury A. Kolesnikov (SBN 271173)
Nicholaus Woltering (SBN 337193)
7817 Ivanhoe Avenue, Suite 102
La Jolla, CA  92037
Tel.:  (858) 914-2001
Fax:   (858) 914-2002
fbottini@bottinilaw.com
achang@bottinilaw.com
abeste@bottinilaw.com
ykolesnikov@bottinilaw.com
nwoltering@bottinilaw.com

**COTCHETT, PITRE & McCARTHY LLP**

By: */s/ Nanci E. Nishimura*
Nanci E. Nishimura (Cal. Bar No. 152621)
Brian Danitz (Cal. Bar. No. 247403)
Karin B. Swope (admitted *pro hac vice*)
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Tel.: (650) 697-6000
Fax: (650) 697-0577
nnishimura@cpmlegal.com
bdanitz@cpmlegal.com
kswope@cpmlegal.com

*Attorneys for Plaintiffs*

COOLEY LLP

By: <u>*/s/ Jeffrey M. Gutkin*</u>
Michael G. Rhodes
Jeffrey M. Gutkin
Aarti G. Reddy
Kyle C. Wong
Kelsey R. Spector
Colin S. Scott
3 Embarcadero Center, 20th floor
San Francisco, CA  94111-4004
Tel.:  415-693-2000
Fax:  415-693-2222
rhodesmg@cooley.com
jgutkin@cooley.com
areddy@cooley.com
kwong@cooley.com
kspector@cooley.com
cscott@cooley.com

Robby L.R. Saldaña
1299 Pennsylvania Avenue NW
Suite 700
Washington, DC   20004-2400
Tel.:  202-776-2109
Fax:  202-842-7899
rsaldana@cooley.com

***Attorneys for Defendant GOOGLE LLC***

**ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1(i)(3)**

I, Elizabeth C. Pritzker, attest that concurrence in the filing of this document has been obtained from the other signatories. I declare under penalty of perjury that the foregoing is true and correct. Executed this 1st day of March, 2022, at Emeryville, California.

/s/ *Elizabeth C. Pritzker*
Elizabeth C. Pritzker