March 15, 2022

Magistrate Judge Virginia K. DeMarchi
San Jose Courthouse, Courtroom 2, 5th Floor
280 South 1st Street, San Jose, CA 95113

**Re:**  *In re Google RTB Consumer Privacy Litig.*, **21-cv-02155-YGR (VKD) (N.D. Cal.)**
Joint Discovery Dispute — Google's Responses & Objections to Plaintiffs' Third Set of Requests for Production of Documents

Dear Magistrate Judge DeMarchi:

Plaintiffs and Defendant Google LLC ("Google") submit this joint letter brief regarding disputes pertaining to Google's Responses and Objections to Plaintiffs' Third Set of Requests for Production of Documents ("RFPs"). Having met and conferred several times, including on February 15, 2022, and February 24, 2022, the parties have identified disputes for the Court's consideration. **Exhibit 1** reflects the disputed RFPs and Google's objections.

**I.    PLAINTIFFS' POSITION**

Each disputed RFP targets relevant information, the production of which is proportional to the needs of this action. Google "bears the burden of showing that discovery should not be allowed, and of clarifying, explaining, and supporting its objections with competent evidence." *Lofton v. Verizon Wireless (VAW) LLC*, 308 F.R.D. 276, 281 (N.D. Cal. 2015). Google cannot meet its burden. Indeed, Google has interposed the same boilerplate, unsubstantiated objections to most of these RFPs and refused to produce even rudimentary documents directly relevant to Plaintiffs' allegations. Indeed, of the 15 RFPs in this Set, Google has refused to produce any responsive documents to all but a part of one request.

**RFP 43** seeks written discovery served on Google in *Brown* and *Calhoun* ("Related Cases"). Production of the discovery requests presents little burden, is an efficient way to streamline discovery, permits Plaintiffs and the Court to evaluate Google's objections to RFP 44 based on relevance, and focuses the parties' attention on relevant discovery. Indeed, Your Honor has previously observed that such an approach is "a useful process." *See* 2/8/22 Tr. at 22:2–10.

**RFP 44** seeks targeted discovery and testimony produced by Google in the Related Cases. Plaintiffs narrowed this to: (1) information related to RTB, (2) the sharing of Account Holders' information, and (3) promises Google makes to Account Holders regarding the use, sharing, or sale of their information — the gravamen of Plaintiffs' complaint.

The requested documents are relevant. While the Related Cases allege different legal

March 15, 2022
Page 2

theories, the factual allegations overlap in many ways — including as to the monetization of some of **the exact same promises not to share or sell Account Holders' personal information**. *Compare* Dkt. No. 92 at ¶¶279–293, with *Brown*, Dkt. No. 136-1 at ¶¶113–138, *and Calhoun*, Dkt. No. 163 at ¶¶244–261. Despite Plaintiffs' proposal to tailor RFP 44 to specific discovery categories **at issue in this case**, Google *blankety refuses to even search for responsive documents*, or to run targeted search strings against the document productions in the Related Cases.

There is no merit to Google's objection that RFPs 43 and 44 amount to "cloned" discovery. The Ninth Circuit "strongly favors access to discovery materials to meet the needs of parties engaged in collateral litigation." *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1131 (9th Cir. 2003). "Allowing the fruits of one litigation to facilitate preparation in other cases advances the interests of judicial economy by avoiding the wasteful duplication of discovery." *Id.*

Finally, Plaintiffs note that RFPs 43 and 44 relate to a broader open dispute regarding "cross-use" of relevant discovery. Judge Van Keulen previously ordered limited cross-use in the Related Cases. *See Brown*, Dkt. No. 243; *Calhoun*, Dkt. No. 263. In addition, she ordered the parties *to this action* to "participate in meet and confer efforts regarding the potential for a cross-use agreement *as between all three actions*." Dkt. No. 29. Plaintiffs intend to raise the broader issue of cross-use between the Related Cases before Judge Gonzalez Rogers given that the cross-use issues involve *three different cases* which are currently before *two different Magistrate Judges*. Your Honor may wish to refrain from ruling on these RFPs until the cross-use issue is resolved. Plaintiffs reserve all rights to pursue this discovery.

**RFP 45** seeks documents relating to user complaints related to how RTB operates, the sharing or sale of information through RTB, and resulting ads displayed, and any action taken in response. These documents go to the heart of Plaintiffs' allegations that Google improperly sells or shares users' information and, thus, are quintessentially relevant.

Google has only agreed to produce user complaints "about the alleged sharing of personal or sensitive user information with third parties *utilizing Google RTB*." The italicized delimiter is inappropriate because it's unlikely that any user affected by improper sharing of information that may have complained to Google would know that the improper sharing *was made through RTB*. Rather, Google should search for and produce all documents related to user complaints ***about the sharing or sale of personal or sensitive information with third parties***. *See* 2/8/22 Tr. at 51 ("What I'm contemplating is dissemination or sale of … personal information to third parties, ***whether it's through RTB or otherwise*** … ."); *id.* at 53–54 ("But I do mean to encompass sale or dissemination to third parties, ***even if RTB is not mentioned***."). Your Honor was very explicit that relevant discovery here is not limited nor must it be tethered specifically to RTB. Google misdirects to the extent it argues otherwise in this briefing.

Google should also produce documents relating to user complaints regarding the *resulting* ads displayed, as well as any action taken by Google in response to user complaints.

March 15, 2022
Page 3

**RFP 50** seeks documents sufficient to establish the economic value paid to Google in exchange for receiving *Named Plaintiffs'* information for purposes of targeted advertising. This is directly relevant to Plaintiffs' allegations that Google improperly sold their information through RTB and was unjustly enriched. This request is not overbroad or unduly burdensome because it only asks for documents "sufficient to establish the economic value" paid to Google in exchange for Plaintiffs' information. To the extent Google is arguing that this information is too "disaggregated" (which Plaintiffs dispute), Plaintiffs request to examine the raw data.

**RFPs 46–49, 51–52, and 54–56** seek documents relating to various valuations of Account Holders' information or discrete categories of such information by Google or third parties, including consideration (monetary or otherwise) that Google has paid in the past to obtain such or similar information from users or third parties. These documents are directly relevant to Plaintiffs' allegations that Google was unjustly enriched as a result of selling or sharing users' personal information and to calculating and establishing Plaintiffs' damages.

These RFPs are sufficiently tethered to Plaintiffs' allegations. Plaintiffs allege that Google improperly sells vast amounts of personal information through RTB, including IP addresses, geo-location data, browsing history, and verticals. ¶¶13–17, 200–259. Plaintiffs further allege that Google was unjustly enriched as a result. ¶¶279–293. Consequently, any valuations that Google has conducted on the value of this information *or similar information in other contexts* is relevant to establishing the value of the information shared through RTB. *See Uniloc USA, Inc. v. Apple Inc.*, 2020 U.S. Dist. LEXIS 137077, at **7–9 (N.D. Cal. July 30, 2020) (DeMarchi, M.J.) (finding documents reflecting the value assigned by the responding party or third parties to other patents, as well as documents reflecting any position taken by the responding party with respect to damages for any of those patents, to be relevant to valuing the patent-in-suit).

For example, one category of information that Google shares as part of Bidstream Data is browsing history. ¶¶203, 257–258, 391, 407. In the past, Google paid users to track their browsing history through the "Screenwise Trends" program. ¶290. The amounts that Google is willing to pay users through Screenwise, Cross Media Panel (the successor to Screenwise), or similar programs designed to compensate users for ability to monitor their activity are relevant (even if they do not involve RTB) because that would establish the value of this information to Account Holders. *See Brown*, Dkt. No. 363, at **5, 25–26 (discussing Screenwise and observing that "because Google previously has paid individuals for browsing histories, it is plausible that, had Plaintiffs been aware of Google's data collection, they would have demanded payment for their data"). It also goes to the amount by which Google was unjustly enriched in improperly selling this information and damages. These are precisely the documents that RFPs 48, 49, and 54 seek.

Remaining RFPs seek equally relevant information, including: calculation of monetary value of Account Holders' information to Google, including revenue earned by bartering or selling access to user information (RFP 46); financial reports relating to the value of Account Holders' information, including average revenue per user (RFP 47); consideration Google paid to third parties to obtain consumer information (RFP 51); value of the data that Google receives in return

March 15, 2022
Page 4

for providing access to Account Holders' information (RFP 52); surveys regarding valuation of Account Holders' information (RPF 55); and documents provided to auditors to support estimates of fair value relating to Account Holders' information (RFP 56).  These documents are relevant because they can be used to value the information that Google improperly sells through RTB, to establish the amount by which Google was unjustly enriched, and to calculate damages.

**RFP 53** seeks documents relating to Google's costs incurred in selling Account Holders' information through RTB.  These are relevant because Google will likely argue that the costs of operating RTB must be offset from any amount by which Google was unjustly enriched.  Notably, Plaintiffs offered to withdraw this request if Google would stipulate that it will *not* argue that any costs of operating the RTB should be excluded from any amount that Google was unjustly enriched by.  Google refused to so stipulate, therefore confirming the relevance of the requested documents.

## II.   GOOGLE'S POSITION

In ruling on Plaintiffs' last motion to compel, the Court told Plaintiffs:

> I am not convinced . . . that anything having to do with data privacy – its collection, its storage, its dissemination – is relevant.  The claims in the case . . . have to do specifically with RTB being the vehicle by which . . . personal information of Google account holders is sold or otherwise disseminated.  And that's what I think should be the focus of your discovery.  2/8/22 Tr. at 21:12-19.

> I don't think that things that go beyond RTB are relevant.  *Id.* at 28:22-23.

Ignoring this guidance, Plaintiffs seek to compel Google's response to a slew of overbroad and duplicative discovery requests, almost all of which are wholly untethered to RTB.  Their Motion should fail.

**RFPs 43-44.**  These requests seek all discovery requests served in *Calhoun* and *Brown* and all documents produced by Google in those actions related to "data privacy, RTB, or any matter alleged in the Complaint." Plaintiffs' claims that these matters have "overlap[ping]" "factual allegations" are false, and unsupported by their citations.  Plaintiffs conflate statements made by Google in different contexts concerning the alleged ***collection*** of data from users in a particular Chrome browser state (at issue in *Calhoun* and *Brown*), with those concerning the alleged ***sharing and sale*** of data via RTB, an entirely different product (at issue here).   As Plaintiffs' lead counsel conceded, this case "challenge[s] a different practice, a different premise.  [I]t is . . . about dissemination and sale of private data as opposed to collection." 2/11/22 Tr. at 38:19-23.

Plaintiffs are just rehashing the cloned discovery dispute from the last hearing.  They refuse to focus on RTB and the issues in this case, and their serial requests for cloned discovery are improper.  *See, e.g.*, *Rodriguez v. Google*, No. 3:20-cv-04688-RS, Dkt. 85 at 1 (N.D. Cal. Feb. 8, 2021) (denying request for cloned discovery and noting that "Plaintiffs don't have a right to those

March 15, 2022
Page 5

irrelevant documents"); *Chen v. Ampco Sys. Parking*, 2009 WL 2496729, at *2 (S.D. Cal. Aug. 14, 2009) (similar).

Plaintiffs' demand that Google run all search terms here over the *Calhoun* and *Brown* productions would also nullify the ESI Protocol's agreed process for designating custodians and bring in countless irrelevant documents from scores of irrelevant custodians, forcing Google to sift through voluminous, useless information.

**RFP 45.** Next, Plaintiffs seek all complaints regarding RTB, including how RTB operates and "resulting ads displayed." Google has already agreed to produce complaints related to the alleged sharing of user information with third parties using Google's RTB, including responses thereto that are reasonably available. Further, Google has also applied search terms to identify all RTB product changes related to user data. *See* ECF No. 158-6, Search Terms 4, 12 (including various RTB terms w/25 of "decision" or approv* or step* or chang* or modif* or alter* or update* or improv* and various "user data" terms). This is all that is relevant.[1] Dissatisfied, Plaintiffs insist that Google produce various *other* complaints, including all those relating to any third-party advertisements, as well as to ads generally. This would encompass, for example, complaints about companies to which a user objects politically or environmentally. This is obviously overbroad.

**RFPs 46-49, 51 and 54-56.** Plaintiffs propound eight duplicative Requests that seek ***all conceivable documents*** relating to "the monetary value" of "Account Holder Information." Again, these RFPs are overbroad and unrelated to RTB. Plaintiffs' claim that they only seek valuations of "personal information [sold] through RTB" and "similar information in other contexts" is demonstrably untrue. Plaintiffs seek ***all*** documents related to ***all*** valuations of ***all*** Account Holder Information ***in any context***. *E.g.*, RFP 46 ("All Documents reflecting estimates or other calculations of the monetary value of Account Holders' Information to Google"). That Plaintiffs refuse to narrow even one of these requests is fatal to their motion. *See Mora v. Comcast Corp.*, 2018 WL 1409292, at *2 (N.D. Cal. Mar. 21, 2018) (holding that defendant "need not respond" to overbroad requests where plaintiff did "not provide any basis for the Court to narrow").

As Google has explained, "all" Account holder data could be used in innumerable irrelevant ways—to optimize video suggestions on YouTube; traffic information on Waze; or home automation settings on Nest Thermostats (all Google products). This information is plainly irrelevant, and Plaintiffs' lone authority is not to the contrary. *Cf. Uniloc USA, Inc. v. Apple Inc.*, 2020 U.S. Dist. LEXIS 137077, at **7–9 (N.D. Cal. July 30, 2020) (DeMarchi, M.J.) (holding that documents reflecting the value of a patent portfolio were relevant to establishing the value of disputed patent ***within that portfolio***).

---

[1] Citing discussion pertaining solely to the disputed OpEd from Google's CEO, (2/8/22 Tr. at 51), Plaintiffs falsely assert that the Court endorsed discovery into all data sharing, with no connection to RTB. That never happened.

March 15, 2022
Page 6

RFPs 48, 49, 54 seek documents concerning the details of two random consumer market research programs (Screenwise Trends and Cross Media Panel), which lack even a tenuous connection to RTB or this case. Plaintiffs' citation to *Brown*'s motion to dismiss ruling is unavailing. There, the Court found allegations users were paid for providing their ***entire web browsing history*** were relevant to standing. *Brown*, Dkt. No. 363, at *26. This in no way makes these programs relevant to damages for the alleged ***disclosure*** of ***specific and much narrower user data*** through RTB. The Complaint here only alleges that the "URL for the webpage where the ad will be placed" is shared through RTB, ***not*** users' wholesale web browsing history (which, of course, is not). Consolidated Amended Complaint ¶ 14.[2]

Lastly, these Requests are duplicative of RFPs 34 and 22, for which Google has agreed to produce documents showing the financial performance of RTB and RTB's payment structure. ***At Plaintiffs' request***, Google crafted and applied search terms to capture documents showing the value of user information, using the terms actually related to RTB. *See* ECF No. 158-6, Search Term K (("profile" OR "profiles" OR "vertical" OR "verticals" OR "segment" OR "segments") /15 (value* OR valuation OR revenue* OR dollar* OR earning* OR profit* OR mone*)).

**RFP 50.** Plaintiffs seek documents establishing the economic value paid to Google in exchange for Named Plaintiffs' information for every single individual targeted ad. Google disputes that it sells Plaintiffs' information. "[T]he court cannot order a party to produce documents that do not exist." *See Lee v. Lee*, 2021 WL 430696, at *4 (C.D. Cal. Jan. 27, 2021). Moreover, the information Plaintiffs request cannot be estimated in any manner that Google can devise or Plaintiffs can suggest. The economic value of "each Named Plaintiff's information" is plainly not the amount paid for every individual ad transaction, as that assumes the value paid is for the allegedly shared user information, and not the ad placement. Lastly, this RFP is again redundant of Google's commitment to produce documents related to the financial performance of RTB and how Google is paid through RTB (RFPs 34, 22).

**RFP 52.** Plaintiffs seek documents showing: (1) "the value of any data that Google received or receives" for sharing Account Holders' Information in any context, and (2) calculation of revenue impact arising out of any changes to ad personalization settings or "cookies or other identifiers." This RFP is compound, virtually unintelligible, and vastly overbroad. On its face, it appears to request documents showing the value of ***any*** data that Google receives from ***any*** source given access to Account Holder information. This RFP is not limited to user information allegedly shared with RTB participants, and because it seeks documents "sufficient to establish the value of ***any data*** Google received," it effectively seeks data or documents for ***each and every individual transaction.*** This is unjustifiable.

The remainder of this RFP is duplicative of prior discovery and Google is already applying search terms related to the value of cookie blockers and related technologies. *See* Search Term E

---

[2] RFPs 55 and 56 are similarly irrelevant in their call for all auditor documents and surveys related to the undifferentiated value of all imaginable user information.

(including the terms "identif* OR cookie* OR GAIA OR biscotti" /5 (block*)) OR "startpage") /25 ( financ* OR revenue* OR profit* OR money OR earning*)).

*RFP 53.* Plaintiffs seek documents establishing the costs Google associates with the purported dissemination of Account Holder's information through RTB. Even assuming Plaintiffs' allegations are true, which Google disputes, these documents would not exist because there is no way to segregate such costs from other operational costs associated with RTB. This alone is dispositive. *See Lee*, 2021 WL 430696, at *4. While Plaintiffs contend this information is necessary to offset any unjust enrichment award, the RFP is irrelevant to that exercise. That is because it seeks only those costs associated with the alleged transmission of user data, not all costs associated with operating RTB. *Bob Barker Co., Inc. v. Ferguson Safety Prods., Inc.*, 2006 WL 648674, at *3 (N.D. Cal. 2006) (RFPs went "far beyond matters directly related to net worth or profits").

### III. NECESSITY OF A HEARING

#### A. Plaintiffs' Position

Plaintiffs respectfully request a hearing on these disputed items of discovery. Discovery deadlines are fast approaching, and resolution of these issue will have implications for other discovery matters.

#### B. Google's Position

Google believes Plaintiffs' requests are facially overbroad and improper. Given Plaintiffs' uniform refusal to narrow them, the Court should deny Plaintiffs' motion to compel in its entirety and a hearing is not needed to make that determination.

### IV. DISCOVERY CUT-OFF DATES FOR FACT AND EXPERT DISCOVERY

| Fact Discovery Cut-Off | December 15, 2022 |
|---|---|
| Close of Expert Discovery | March 2, 2023 |

### V. COMPLIANCE WITH THE MEET-AND-CONFER REQUIREMENT

The parties met and conferred several times via Zoom. The final meet-and confer was held on February 24, 2022, via Zoom. On Plaintiffs' side, Elizabeth C. Pritzker, Brian Danitz, Yury A. Kolesnikov, David Straite, Karin Swope, James Ulwick, and Kaiyi A. Xie attended, among others. On Google's side, Jeff Gutkin and Aarti Reddy attended, among others.

March 15, 2022
Page 8

**PRITZKER LEVINE LLP**

By: */s/ Elizabeth C. Pritzker*
Elizabeth C. Pritzker (Cal. Bar. No. 146267)
Johnathan K. Levine (Cal. Bar. No. 220289)
Caroline C. Corbitt (Cal. Bar. No. 305492)
1900 Powell Street, Suite 450
Emeryville, CA 94608
Tel.: (415) 692-0772
Fax: (415) 366-6110
ecp@pritzkerlevine.com
jkl@pritzkerlevine.com
ccc@pritzkerlevine.com

**BLEICHMAR FONTI & AULD LLP**

By: */s/ Lesley Weaver*
Lesley Weaver (Cal. Bar No.191305)
Anne K. Davis (Cal. Bar No. 267909)
Joshua D. Samra (Cal. Bar No. 313050)
555 12th Street, Suite 1600
Oakland, CA 94607
Tel.: (415) 445-4003
Fax: (415) 445-4020
lweaver@bfalaw.com
adavis@bfalaw.com
jsamra@bfalaw.com

**SIMMONS HANLY CONROY LLC**

By: */s/ Jay Barnes*
Jason 'Jay' Barnes (admitted *pro hac vice*)
An Truong (admitted *pro hac vice*)
Eric Johnson (*pro hac vice* to be sought)
112 Madison Avenue, 7th Floor
New York, NY 10016
Tel.: (212) 784-6400
Fax: (212) 213-5949
jaybarnes@simmonsfirm.com
atruong@simmonsfirm.com
ejohnson@simmonsfirm.com

**DICELLO LEVITT GUTZLER LLC**

By: */s/ David Straite*
David A. Straite (admitted *pro hac vice*)
One Grand Central Place

March 15, 2022
Page 9

60 E. 42nd Street, Suite 2400
New York, NY 10165
Tel.: (646) 993-1000
dstraite@dicellolevitt.com

Amy E. Keller (admitted *pro hac vice*)
James A. Ulwick (admitted *pro hac vice*)
Ten North Dearborn Street
Sixth Floor
Chicago, IL 60602
Tel.: (312) 214-7900
akeller@dicellolevitt.com
julwick@dicellolevitt.com

**BOTTINI & BOTTINI, INC.**

By: */s/ Francis A. Bottini, Jr.*
Francis A. Bottini, Jr. (SBN 175783)
Albert Y. Chang (SBN 296065)
Anne Beste (SBN 326881)
Yury A. Kolesnikov (SBN 271173)
Nicholaus Woltering (SBN 337193)
7817 Ivanhoe Avenue, Suite 102
La Jolla, CA 92037
Tel.: (858) 914-2001
Fax: (858) 914-2002
fbottini@bottinilaw.com
achang@bottinilaw.com
abeste@bottinilaw.com
ykolesnikov@bottinilaw.com
nwoltering@bottinilaw.com

**COTCHETT, PITRE & McCARTHY LLP**

By: */s/ Nanci E. Nishimura*
Nanci E. Nishimura (Cal. Bar No. 152621)
Brian Danitz (Cal. Bar. No. 247403)
Karin B. Swope (admitted *pro hac vice*)
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Tel.: (650) 697-6000
Fax: (650) 697-0577
nnishimura@cpmlegal.com
bdanitz@cpmlegal.com

March 15, 2022
Page 10

kswope@cpmlegal.com

Dated:   March 15, 2022	COOLEY LLP

By: */s/ Jeffrey M. Gutkin*
   Michael G. Rhodes
   Jeffrey M. Gutkin
   Whitty Somvichian
   Aarti G. Reddy
   Kyle C. Wong
   Kelsey R. Spector
   Colin S. Scott
   Anupam Dhillon
   3 Embarcadero Center, 20th floor
   San Francisco, CA  94111-4004
   Tel.:  415-693-2000
   Fax:  415-693-2222
   rhodesmg@cooley.com
   jgutkin@cooley.com
   wsomvichian@cooley.com
   areddy@cooley.com
   kspector@cooley.com
   cscott@cooley.com
   adhillon@cooley.com

   Robby L.R. Saldaña
   1299 Pennsylvania Avenue NW
   Suite 700
   Washington, DC   20004-2400
   Tel.:  202-776-2109
   Fax:  202-842-7899
   rsaldana@cooley.com

Attorneys for Defendant
GOOGLE LLC

March 15, 2022
Page 11

## ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1(i)(3)

      I, Anne K. Davis, attest that concurrence in the filing of this document has been obtained from the other signatories. I declare under penalty of perjury that the foregoing is true and correct. Executed this 15th day of March 2022, at Pacifica, California.


                                      /s/ *Anne K. Davis*
                                      Anne K. Davis