Elizabeth C. Pritzker (Cal. Bar No. 146267)
Jonathan K. Levine (Cal Bar No. 220289)
Bethany Caracuzzo (Cal Bar No. 190687)
**PRITZKER LEVINE LLP**
1900 Powell Street, Suite 450
Emeryville, CA 94608
Tel.: (415) 692-0772
Fax: (415) 366-6110
*ecp@pritzkerlevine.com*
*jkl@pritzkerlevine.com*
*bc@pritzkerlevine.com*

*Interim Class Counsel*

[Additional Counsel Appear on Signature Page]

**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

| | |
|---|---|
| *IN RE GOOGLE RTB CONSUMER PRIVACY LITIGATION*<br><br>This document applies to all actions. | **CASE NO. 4:21-CV-02155-YGR-VKD**<br><br>**DECLARATION OF ELIZABETH C. PRITZKER IN SUPPORT OF PLAINTIFFS' MOTION FOR RELIEF FROM APRIL 25, 2022 NONDISPOSITIVE ORDER OF MAGISTRATE JUDGE (DKT. 184)**<br><br>**Fed. R. Civ. P. 72(a)**<br>**Civil L.R. 72-2** |

I, Elizabeth C. Pritzker, declare and state as follows:

1. I am an attorney duly admitted to practice before this court and a partner of Pritzker Levine LLP, one of law firms representing plaintiffs in this matter. On August 3, 2021, I was appointed to serve as Interim Class Counsel for plaintiffs. (Dkt. 77). I submit this declaration in support of plaintiffs' motion under Fed. R. Civ. P. 72(a), 28 U.S.C. § 636(b)(1)(A) and Civil L.R. 72-3 for partial relief from the non-dispositive <u>Order Re: February 1, 2022 Discovery Dispute Re: Plaintiffs' Document Requests to Google</u>, issued by Magistrate Judge DeMarchi on April 25, 2022, and filed in the case docket at Dkt. 184 ("Order"). I have personal knowledge of the facts stated herein and, if called upon to do so, could and would testify competently thereto.

2. Attached as **Exhibit A** hereto for the court's convenience is a true and correct copy of the Order. Plaintiffs' motion is directed to paragraphs 11.B.5. and II.B.7 of that Order, which denied discovery sought by plaintiffs in Requests for Production ("RFPs") originally served on defendant Google LLC ("Google") in May 2021. The specific RFPs for which plaintiffs seek an order of this court vacating the Magistrate's Order and compelling Google to produce highly relevant, responsive documents are as follows:

(i) Plaintiffs' RFP 22(i), (j) and (q)(i), seeking of production of internal Google documents of certain technical details regarding the use and operation of the Google advertising auction process known as Real-Time-Bidding or "RTB," around which this class litigation is centered; and

(ii) Plaintiffs RFP 30, seeking documents regarding Google's analysis and decision-making in drafting policies, materials or disclosures made to Account Holders or RTB participants regarding Google's collection, storage, use and sale of user information, and Google's engagement in targeted advertising and RTB, including those policies and disclosures attached to Plaintiffs' Complaint.

3. Google served objections responses to this discovery set in June 2021, but did not produce responsive documents. The parties met and conferred with respect to this (and other discovery) for approximately seven months. Unable to resolve certain disputes, the parties submitted a letter brief to Judge DeMarchi on February 1, 2022. *See* Dkt. 141. Attached as **Exhibit B** is a

1

copy of that brief, which was jointly prepared and submitted by the parties in accordance with Magistrate DeMarchi's standing order for discovery briefing (with argument limited to 1500 words per side). Consistent with that standing order, **Exhibit B** includes as its own attachment excerpted portions of Google's responses and objections to the disputed matters discussed in the brief, including plaintiffs' RFP 22 and RFP 30, the two requests that are the subject of this motion.

4. As the court will note from its review of **Exhibit B**, the parties' arguments with respect to their dispute over RFP 22 and RFP 30 were limited to issues of relevance.

## **THE DISPUTED RFPs SEEK RELEVANT DISCOVERY ON CENTRAL ISSUES**

5. The central allegation of Plaintiffs' Consolidated Class Action Complaint ("CCAC") is that Google explicitly promises class members/Account Holders that: "We [at Google] don't share information that personally identifies you with advertisers" and "never use…sensitive information like race, religion or sexual orientation, to personalize ads" to class members. Google routinely breaks these promises through its Real Time Bidding ("RTB") advertising scheme, in which Google collects and stores personal information ("PI") about class members, associates that information with other inferred information Google maintains about their race, religion, sexual orientation, etc., and then shares that information with third parties, including advertisers that seek to target class members with personalized advertising. *See* CCAC (Dkt. 94) at ¶¶ 1-30; 96, 98, 100, 120, 125, 134.

6. RTB is best described as a programmatic protocol used to implement online behavioral advertising. The RTB protocol defines how the demand-side (advertisers looking to buy ad inventory, and their intermediary demand-side platforms or DSPs) and supply side (publishers looking to sell ad inventory and their intermediary supply-side platforms or SSPs) buy and sell ad inventory at the ad exchange (AdX) marketplace using an auction. The millisecond algorithmic exchange works like this: When a class member/Account Holder visits a publisher web page that implements RTB, the web-browser sends an ad request to the SSP with information about the ad slot such as its size, media, type, etc. The SSP then sends this ad request to the AdX where the ad slot is sold at an auction. The AdX sends Bid Requests to participating DSPs, each of which then places a bid on behalf of its affiliated advertiser(s). The AdX collects the bids from participating

DSPs to determine the winning bid. The winning DSP then gets to place its ad in the ad slot on the publisher's web page.

7. As the CCAC alleges, Google implements Google RTB in two ways: IAB's Open RTB and Google's proprietary Authorized Buyers RTB. Both implementations utilize online behavioral advertising, i.e., ads personalized to users based on their "behaviors" that are inferred from their browsing history or other online activity or app usage.[1] The Google RTB process begins when a class member Account Holder logs into a web browser to view content (such as a *New York Times* article) or search the web. *See* CCAC ¶ 134. That activity or page visit generates a "cookie" which is sent from the class member Account Holder's web browser to the SSP. As the CCAC alleges, if the SSP is AdMob, which is owned by Google, AdMob matches the cookie to the class member's personal information stored by Google. Google RTB creates a Bid Request – containing user and device identifiers (user name, cookies, native device identifiers), location (longitude/latitude from GPS or inferred from an IP address) and segments or "verticals" (e.g., demographic information such as age and gender, interests such as weight lost or smoking cessation, purchase intent such as bail bonds or hair loss treatment, and inferred data that may include or assign to the Account Holder characteristics such as health, religion, race, ethnicity, nationality, and sexuality) – and the content that is the subject of the Account Holder's web activity. *See id.*, ¶¶ 135 – 141. This Bid Request is then sent to DSP participants of the Google RTB. All Google RTB participants, in turn, can view, collect, and use the information in the Bid Request to decide whether and in what amount they will pay to deliver an ad to the Account Holder in question. Bids are submitted and the highest bidder wins the right to place its ad (or its client's ad) on page the Account Holder is viewing. *See ibid.*

8. <u>Discovery Responsive to RFP 22(j), (j)</u>: To understand (and ultimately prove) how class members' personal information ("PI") is targeted in the RTB process, including based on information that is sensitive, it is essential that Plaintiffs and their experts have discovery that will show where and how class member data is collected, curated, and stored, in addition where and how

---

[1] These RTB schema are more specifically detailed in the CCAC, for example, at ¶¶ 118 -150.

it shared with third parties through the RTB auction, and for how much it is sold to the winning bidder. Google has argued that Plaintiffs' discovery should be limited only to output, i.e., to only what is "shared" with third parties in the RTB auction. *See, e.g.*, **Exhibit B** at 6. But, Plaintiffs and their experts must be permitted discovery of how class member Account Holder data flows "throughout the RTB eco-system[2]," including documents responsive to RFP 22(j) that reveal the "location and manner in which Google stores information that is used or may be used in a Bid Request." This discovery will allow Plaintiffs to show: (a) *what* PI Google in fact obtains from class members as they activate web activity – a common legal element of Plaintiffs' claims; (b) *where* and *how* such data is stored at Google; (c) the mechanism(s) by which Google enhances or associates such data with other stored or inferred personal data (such as age, ethnicity, race or sexual orientation); and (d) the *who, what, when, where, and how* Google transmits this user and enhanced data to third parties and advertisers that participate in Google RTB – and for *how much*.[3] This discovery is uniquely in Google's possession and, critically, is the very same information that Google relies upon for its RTB business and will look to in defending this litigation. For example, to provide discovery responsive to Plaintiffs' RFP 42, "information Google has collected, created and derived, and continues to collect, create, associate and deriving, regarding the [Named] Plaintiffs" – something Google still has yet to do in the year this discovery has been outstanding – in order to identify and produce ████████████████████████ in its internal documents and systems, Google claims it needs, ████████████████████████ ████████████████ for each Plaintiff, i.e., "████████████████

---

[2] *See* 2/8/22 Hrg. Trns. (Dkt. 151) at p. 130:11-20 (MS. TRUONG [for Plaintiffs]: "…*RTB does not operate in a vacuum. As we've alleged in our complaint, RTB exists in an ecosystem that includes RTB proper, which is the auction run by Google which sits at the intersection of, broadly speaking, a demand-side platform, which Google also participates in and a supply-side platform, which Google also participates in. And so at each of these intersecting systems, Google has a presence and an influence in the manner in which information flows through, is sold and is shared and disclosed.*")

[3] Google has repeatedly represented that it has preserved this information in its systems, including at the February 8, 2022 discovery conference before Judge DeMarchi at which Google's counsel stated: "*We [at Google] have been preserving information from the [the Named Plaintiffs[ from their accounts.*" 2/8/22 Hrg. Trns. at p. 126, ll.15-16.

4

PRITZKER DECL. ISO PLAINTIFFS' MOTION FOR RELIEF FROM NONDISPOSITIVE
ORDER OF MAGISTRATE JUDGE                                         Case No. 4:21-cv-02155-YGR-VKD

1. ████████████████████████████████
2. ████████████████████████████████

*See* April 4, 2022 Letter from J. Gutkin to E. Pritzker and others, at 2-3, a true and correct copy of which is attached hereto (under seal) as **Exhibit C**.[4] Plaintiffs require discovery responsive to RFP 22(i) on the "location and manner" in which Google stores and enhances class member Account Holder PI for much the same reason. While plaintiffs' experts can use tools to demonstrate for the court or to a jury how Google RTB generally works to collect class member PI, this discovery from Google will enable plaintiffs' experts to trace this information in and through Google's RTB eco-system - just as Google does.[5] If the Order is upheld, plaintiffs will be substantially prejudiced in obtaining discovery that is both critical and needed to prove up the merits of their claims. Indeed, as an example of the prejudice plaintiffs will suffer, just last Friday, May 6, 2022, Google objected to a Rule 36(b) deposition notice seeking authorized corporate testimony from a Google witness on these matters, stating, as one basis for its objection, that "Magistrate Judge DeMarchi has already ruled [certain matters] are outside the scope of discovery in this Action, including 'collection and storage' of data related to RTB" (citing *In Re Google RTB Consumer Privacy Litigation*, ECF No. 184 at 7 (N.D. Cal. April 25, 2022)). This discovery also will substantially aid plaintiffs in meeting their Rule 23 burden at class certification—the next critical stage of the litigation–by aiding plaintiffs and their experts in demonstrating, among other things, the common manner in which Google obtains, stores, uses, shares, sells, and profits from personal class member data for RTB purposes, the precise class member PI Google shares with third parties and advertisers, the common impact of Google's RTB practices on class members, and the digital identities of class members (for class notice purposes).

9. <u>Discovery Responsive to RFP 22(q)(i)</u>: Discovery related to the "winning [RTB] bid…, including … [t]he factors, analyses, considerations, and methodologies for selecting the

---

[4] Google has designated this letter "Highly Confidential – Attorneys' Eyes Only". Accordingly, plaintiffs submit it to the court conditionally under seal consistent with local rules and practice.

[5] Getting this discovery directly from Google allows plaintiffs to properly authenticate and lay admissibility foundations for the documents and data using Google witnesses or by stipulation.

winning bid" (RFP 22(q)(i)) is equally relevant. Each RTB Bid Request and winning bid is recorded in "event logs", which essentially act as "receipts" documenting: (1) what information Google collects from (and associates with) class members and shares with third parties; (2) the identity of the winning bidder; and (3) the amount(s) Google earns from winning bids. Google necessarily has to (and in fact does) maintain logs about RTB auctions on its marketplace in the ordinary course of business for billing and analysis purposes. These logs, some of which have been described in documents only recently produced by Google, would at a minimum need to store the winning bid and bidder information to charge the DSP advertiser and pay the publisher, store other bidding information (including non-winning bids) for auditing purposes, and store class member Account Holder PI (e.g., identifiers, segments or verticals) included in the bid request for post-hoc analysis. Such discovery is relevant to show the common way in which Google obtains, stores, and uses class member PI, the common impact of Google's RTB practices, class damages (i.e., the value Google has unjustly earned as a result of its wrongful practices), and apportionment of such damages. Plaintiffs anticipate that additional event logs, described in part in documents produced by Google only in February and March 2022 after this dispute was briefed to Judge DeMarchi[6], such as ███████████████████████████████████████████████████████████████████████ ██████████████████████████████████," also will contain relevant RTB information about ads that may have been shown to class member Account Holders. The "factors, analyses, considerations and methodologies for selecting the winning bid" are relevant to plaintiffs' claims as well, as documents reflecting such may be used to show what or how much PI Google is willing to share, and what amount(s) RTB bidders offer or pay for such information.

10. <u>Discovery responsive to RFP 30</u>: Judge DeMarchi's Order (Dkt. 184) prejudices plaintiffs by denying them documents responsive to RFP 30, specifically, the company's "analyses and decision-making regarding what it tells Account Holders and RTB participants about the collection and storage of user information." Plaintiffs reasonably believe such discovery will aid them in proving their case and addressing Google's asserted defenses. Google's analyses and

---

[6] The documents include GOOG-HEWT-0025978, GOOG-HEWT-00182869, GOOG-HEWT-00183057 which were first produced by Google on February 26 and March 25, 2022.

6

PRITZKER DECL. ISO PLAINTIFFS' MOTION FOR RELIEF FROM NONDISPOSITIVE
ORDER OF MAGISTRATE JUDGE                         Case No. 4:21-cv-02155-YGR-VKD

decision-making about what it told (or did not tell) its Account Holders or RTB participants about the collection, storage and use of user information for RTB, or the potential financial impact that truthful disclosures about how Google was using, and sharing with third parties, PI shared through RTB, is relevant to address any "consent" defense Google may assert (what did Google know and when did it know it), and to assist plaintiffs in formulating monetary and punitive damages.

**THE COURT MAY WISH TO SCHEDULE A SCIENCE PRESENTATION**

11. Plaintiffs realize the technical aspects of the Google RTB schema are complex. While the standing order used by Judge DeMarchi does not allow for detailed explanation of these issues in briefing, plaintiffs sought to highlight some of these complexities during the February 8, 2022 hearing on these disputed discovery items.

12. To aid the efficient resolution of discovery and other matters going forward, plaintiffs respectfully suggest the court consider scheduling, at a date and time convenient to the court, a one-hour "science presentation" where the parties' respective experts can provide to the court more illuminative technical information about Google RTB, how it functions, what information is collected, transmitted and shared with third parties (and how), and where common evidence relevant to the claims and defenses at issue may be stored in Google's systems.

I declare under penalty of perjury under the laws of the United States and the State of California that the foregoing is true and correct to the best of my knowledge. This declaration was executed in Emeryville, California.

DATED: May 9, 2022               By: /s/ Elizabeth C. Pritzker
                                      Elizabeth C. Pritzker