Elizabeth C. Pritzker (Cal. Bar No. 146267)
Jonathan K. Levine (Cal Bar No. 220289)
Bethany Caracuzzo (Cal Bar No. 190687)
**PRITZKER LEVINE LLP**
1900 Powell Street, Suite 450
Emeryville, CA 94608
Tel.: (415) 692-0772
Fax: (415) 366-6110
*ecp@pritzkerlevine.com*
*jkl@pritzkerlevine.com*
*bc@pritzkerlevine.com*

*Interim Class Counsel*

[Additional Counsel Appear on Signature Page]

**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

| | |
|---|---|
| *IN RE GOOGLE RTB CONSUMER PRIVACY LITIGATION* <br><br> *This document applies to all actions.* | **CASE NO. 4:21-CV-02155-YGR-VKD** <br><br> **[PROPOSED] ORDER GRANTING PLAINTIFFS' MOTION FOR RELIEF FROM APRIL 25, 2022 NONDISPOSITIVE ORDER OF MAGISTRATE JUDGE (DKT. 184)** <br><br> **Fed. R. Civ. P. 72(a)** <br> **Civil L.R. 72-2** |

1    Currently pending before the Court is plaintiffs' motion pursuant to Fed. R. Civ. P. 72(a) and Civil L.R. 72-2 for partial relief from a discovery order issued by Magistrate Judge Virginia K. DeMarchi.  *See* Dkt. No. 184 (Order).  Having considered the motion, the relief requested by that motion, and the briefing submitted in conjunction therewith, as well as all other evidence of record, the Court hereby GRANTS plaintiffs' motion.

## I.   PROCEDURAL AND FACTUAL BACKGROUND

This is a class action proceeding in which plaintiffs premise several theories of liability on the allegation that Google expressly promises class members/Account Holders that: "We [at Google] don't share information that personally identifies you with advertisers" and "never use…sensitive information like race, religion or sexual orientation, to personalize ads" to class members.  Google routinely breaks these promises, plaintiffs alleged, through its Google Real Time Bidding ("RTB") advertising scheme, in which Google collects and stores personal information about class members, associates that information with other inferred information Google maintains about their race, religion, sexual orientation, etc., and then shares that information with third parties, including advertisers that seek to target class members with personalized advertising. *See* Consolidated Class Action Complaint ("CCAC") (Dkt. 94) at ¶¶ 1-30; 96, 98, 100, 120, 125, 134. The CCAC includes graphics at ¶¶ 13, 133, 172, 184, and 190 that depict how personal information (including the user's unique Google ID, IP address, cookie-matching identifiers, user-agent (or operating system) identifier, and device identifier) flows into and through RTB – from collection, storage, association with other Google-held personal data, transmission to third parties in Bid Requests, and return transmissions in response to those Requests. It also contains specific allegations about what personal information ("PI") is collected from class members, how such data is collected, maintained, and associated with other highly personal information within Google, and then shared or sold to third parties through RTB. *Id.*, at ¶¶ 6-22, 113-190, 194-249.

Plaintiffs served initial requests for production of documents ("RFPs") in May 2021. Google responded in July 2021, but produced no documents. The parties conferred for seven months before raising arguments on disputed issues in a 1500-word per side letter brief filed on February 1, 2022. Judge DeMarchi, the discovery magistrate assigned to this matter, held a

1

PROPOSED ORDER PLAINTIFFS' MOTION FOR RELIEF FROM NONDISPOSITIVE
ORDER OF MAGISTRATE JUDGE                                           Case No. 4:21-cv-02155-YGR-VKD

...

hearing and issued the Order on April 25, 2022.

Plaintiffs' motion focuses on two rulings that they claim substantially prejudice plaintiffs' ability to prosecute this action for the class. Specifically, plaintiffs challenge paragraphs II.B.5 and II.B.7 of the Order (Dkt. 184), which denied:

> (1) Plaintiffs' RFP 22 (i), (j) and (q)(i), seeking production of internal Google documents of certain technical details regarding the use and operation of the Google advertising auction process known as Real-Time-Bidding or "RTB," around which this class litigation is centered; and

> (2) Plaintiffs RFP 30, seeking documents regarding Google's analysis and decision-making in drafting policies, materials or disclosures made to Account Holders or RTB participants regarding Google's collection, storage, use and sale of user information, and Google's engagement in targeted advertising and RTB, including those policies and disclosures attached to plaintiffs' CCAC.

## II.   DISCUSSION

### A.  Legal Standard

When a district court reviews a magistrate judge's order, it generally "may not simply substitute its judgment for that of the [magistrate]." *Hoa v. Cate*, No. C-12-2078 EMC, 2013 WL 3730249, at *1 (N.D. Cal. July 15, 2013) (citing *Grimes v. City & County of San Francisco*, 951 F.2d 236, 241 (9th Cir.1991)). A magistrate order on non-dispositive matters such as discovery may be set aside where the district court finds the order is contrary the law. *Id*. Orders by the Magistrate that result in "actual and substantial prejudice to the complaining litigant" (*Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002)), or deny discovery that would enable plaintiffs to substantiate class allegations or show that the requirements of Fed. R. Civ. P. 23 for class certification may be satisfied (*Vallabharpurapu v. Burger King Corp.*, 276 F.R.D. 611, 615 (N.D. Cal. 2011)), meet this legal standard for district court reversal.

### B.  Contrary to Law

Plaintiffs contend that paragraph II.B.5 of the Order denies plaintiffs relevant discovery under three subparts of RFP 22, specifically: subpart (i), "[t]he location and manner in which Google

stores [RTB] Bid Requests"; subpart (j), "[t]he location and manner in which Google stores user information that is used or may be used in a Bid Request"; and subpart q(i), "[d]ocuments related to the winning bid in Google Real Time Bidding as referenced, described or identified in the Complaint, including … [t]he factors, analyses, considerations, and methodologies for selecting the winning bid."  The Order holds that this discovery is not "relevant to any issue in the case" or to "any claim or defense," and that Google "need not produce" documents responsive to any of these requests.  Dkt. 184 at ¶ 5.  Plaintiffs argue this is clear error, and substantially prejudices plaintiffs by denying them relevant discovery on central claims and defenses.

Plaintiffs have met their burden to demonstrate substantial prejudice.  RFP 22 closely tracks the allegations of the CCAC, seeking documents that reveal the "location and manner in which Google stores user information that is used or may be used in a Bid Request" (RFP 22(j)), as well as the "location and manner in which" Google "stores Bid Requests" (RFP 22(i)).  These requests fall squarely within Rule 26(b)'s mandate that discovery include "the existence, description, nature, custody, condition and location of any documents" relevant to a party's claim or defense. *See* Adv. Com. Note (2015 Amendments to Rule 26) (historical language deleted because "Discovery of such matters is so deeply entrenched in practice that it is no longer necessary to clutter the long text of Rule 26 with these examples.").

Documents that will show the "location and manner" in which Google collects, stores, enhances and transmits, for purposes of Google RTB, the private information ("PI") of putative class member Account Holders satisfy the "very broad" standard of relevancy applied by Northern District of California courts. *See Tria Beauty, Inc. v. Radiancy, Inc.*, No. C-10-05030, 2011 WL 13152740, *1 (N.D. Cal. Sept. 23, 2011).  Plaintiffs contend that documents responsive to RFP 22(i) will allow them to trace how class member PI comes in to the RTB system, how and where it is stored, the mechanism by which Google associates such data with other inferred personal data (such as race), and the who, what, when, where, how, and for how much Google transmits this user data to third-parties and advertisers – precisely as Google does for its own internal purposes and for purposes of meeting Google's own discovery obligations in this litigation.  All of this is relevant to plaintiffs' claims that the class member data Google collects, maintains and transmits via RTB is

3

1  "personal information" – a common legal element of plaintiffs' claims. *See* CCAC at ¶¶ 87, 91, 93,
2  95-6, 99-100, 106, 201, 266, 297, 343, 359, 363, 354, 380. This discovery also will be useful to
3  determine the precise information Google disclosed to specific RTB bidders for specific
4  communications of the Named Plaintiffs. And, as plaintiffs allege (e.g., CCAC at ¶9-10), Google's
5  unique ability to draw upon multiple sources of personal information it has collected and stored has
6  enabled Google to charge premium prices and to corner the RTB market – these sources are
7  intimately tied to Plaintiffs' theory of damages.

8        Such discovery also may be used to substantiate plaintiffs' class allegations or assist
9  plaintiffs in securing class treatment. Discovery showing where and how Google "collects and stores
10 user information that is or may be used in an RTB Bid Request" will assist plaintiffs in establishing,
11 *inter alia*, the common manner in which Google obtains, stores, uses, shares, sells, and profits from
12 personal class member data for RTB purposes, the common impact of Google's RTB practices on
13 class members, and the digital identities of class members (for class notice purposes). Google
14 forecasted in its Motion to Dismiss (Dkt. 93) that it intends to raise a consent defense, i.e., that any
15 information shared in RTB was authorized in the first instance. Thus, the issue of whether there was
16 authorized or unauthorized "taking" of information is squarely in play by Google's own defenses.

17       "Documents related to the winning [RTB] bid …, including … [t]he factors, analyses,
18 considerations, and methodologies for selecting the winning bid" (RFP 22(q)(i)) are equally
19 relevant. According to Plaintiffs Interim Class Counsel, each RTB Bid Request and winning bid is
20 recorded in "event logs", which act as receipts documenting: (1) what information Google collects
21 from (and associates with) class members and shares with third-parties,; (2) the identity of the
22 winning bidder; and (3) the amount(s) Google earns from winning bids. This will show the common
23 way in which Google obtains, stores, and uses class member PI, the common impact of Google's
24 RTB practices, class damages (the value Google has unjustly earned), and apportionment of such
25 damages. "[F]actors, analyses, considerations and methodologies for selecting the winning bid" may
26 show what or how much PI Google is willing to share, and what amount(s) RTB bidders offer or
27 pay. *See* Declaration of Elizabeth C. Pritzker (Dkt. __) at ¶¶ 8-9.  Plaintiffs have met their burden
28 to show that, in the absence of such discovery, they will face significant challenges showing the

information disclosed in RTB violates Google's promises to users that it will not sell or disclose class member PI to third parties – matters that are central to plaintiffs' legal claims. According to plaintiffs, it is imperative that they be able to trace not the just the fact of the collection, but ***how***, as well as the scope of it, to demonstrate the extent to which Google account holders' privacy has been invaded by these disclosures and in a uniform way through Google' practices.

With respect to RFP 30, the Order holds that Google must produce documents revealing its "analysis and decision-making regarding what it tells Account Holders and RTB participants about the use and sale of user information, Google's own engagement in targeted advertising, and the RTB process" but "***need not***" produce documents of the company's "analyses and decision-making regarding what it tells Account Holders and RTB participants about the collection and storage of user information," stating such discovery "is ***not relevant*** to the claims and defenses in this case." (Dkt. 184 at ¶ 7 (emphasis added)). Plaintiffs have met their burden to establish error (i.e., prejudice) stemming from this portion of the Order, as well. Google's analyses and decision-making about what it told (or did not tell) its Account Holders or RTB participants about the collection, storage and use of user information for RTB, or the potential financial impact that truthful disclosures about how Google was using, and sharing with third parties, PI shared through RTB, may be relevant to any "consent" defense Google may assert (what did Google know and when did it know it), and to monetary and punitive damages, among other things. *See* Pritzker Decl., ¶ 10; CCAC, ¶¶ 409, 416, 427 (specified litigated claims that include punitive and other damages).

### III.  CONCLUSION

Because the Court finds that the challenged portions of Judge DeMarchi's ruling (Dkt. 184) are contrary to law and would, if upheld, substantially prejudice plaintiffs in their ability to prosecute the case for the putative class, and potentially impair their ability to gather evidence that will aid them in sustaining their *prima facie* burden under Rule at the time of class certification, the Court GRANTS plaintiffs' motion for relief. Paragraphs II.B.5 and II.B.7 of Dkt. 184 of that Order are hereby vacated.

//

//

//

5

PROPOSED ORDER PLAINTIFFS' MOTION FOR RELIEF FROM NONDISPOSITIVE
ORDER OF MAGISTRATE JUDGE                                   Case No. 4:21-cv-02155-YGR-VKD

1 |      Google shall search for and produce all documents responsive to RFPs 22(i), (j) and (q)(i) and
2 | RFP 30 **within fifteen (15) days** of this Order.
3 |      **SO ORDERED**

_____
Hon. Yvonne Gonzalez Rogers
United States District Court Judge