Elizabeth C. Pritzker (Cal. Bar No. 146267)
Jonathan K. Levine (Cal. Bar No. 220289)
Bethany Caracuzzo (Cal. Bar No. 190687)
**PRITZKER LEVINE LLP**
1900 Powell Street, Suite 450
Emeryville, CA 94608
Tel.: (415) 692-0772
Fax: (415) 366-6110
*ecp@pritzkerlevine.com*
*jkl@pritzkerlevine.com*
*bc@pritzkerlevine.com*

*Interim Class Counsel*

[Additional Counsel Appear on Signature Page]

**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

| | |
|---|---|
| *IN RE GOOGLE RTB CONSUMER PRIVACY LITIGATION*<br><br>*This document applies to all actions.* | **CASE NO. 4:21-CV-02155-YGR**<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION TO ALLOW LIMITED USE OF DISCOVERY FROM RELATED ACTION**<br><br>Judge: Hon. Yvonne Gonzalez Rogers<br>Date:  June 28, 2022<br>Time:  2:00 p.m.<br>Courtroom:  1, Fourth Floor |

**NOTICE OF MOTION AND MOTION**

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on June 28, 2022, at 2 p.m., in Courtroom 1, 4th Floor, of this Court, located at 1301 Clay Street, Oakland, California, plaintiffs will and hereby do move the Court for an Order allowing plaintiffs to use in this proceeding certain relevant discovery and information produced by defendant Google LLC in the related *Calhoun v. Google* action, No. 20-cv-5146-YGR, that is also pending before this Court.

This Motion is made pursuant to Dkt. No. 29 (discovery order), Fed. R. Civ. P. 1 and 26, the Northern District Guidelines for Discovery of ESI and for Professional Conduct, and this Court's inherent authority, to permit plaintiffs to use certain relevant discovery and information produced in *Calhoun*. This motion does not seek the production of *all* related discovery from the related action, and it would place the burden on plaintiffs, not Google, to identify and obtain what they seek. Specifically, plaintiffs seek permission from the Court for plaintiffs' counsel in *Calhoun,* who are also counsel in this case, to share documents and information they know relevant to this action with their co-counsel in this action for the purposes of making discovery more efficient, less contentious, less expensive, and less burdensome for all.

Plaintiffs have met and conferred with Google in an effort to reach an agreement on this issue. Plaintiffs proposed to first provide Google with the identification of the relevant discovery and information from *Calhoun* that plaintiffs allege is relevant here, and offered Google the opportunity to object to some or all of that discovery and information on relevance grounds. However, Google objects to *any* use of any confidential discovery or information from *Calhoun* in this action. Plaintiffs bring this motion before this Court because it implicates protective orders and discovery in three actions pending before this Court overseen by two different Magistrate Judges. Thus, neither Magistrate Judge has the authority to provide the full relief plaintiffs seek here.

Plaintiffs' Motion is based upon this Notice, the accompanying Memorandum of Points and Authorities, the Declarations of Jonathan K. Levine ("Levine Decl.") and Lesley E. Weaver ("Weaver Decl."), the orders, pleadings, and files in this action, and such other matters as may be presented at or before the hearing.

## MEMORANDUM OF POINTS AND AUTHORITIES

I. INTRODUCTION

Pursuant to Dkt. No. 29 (discovery order), Fed. R. Civ. P. 1 and 26, the Northern District Guidelines for Discovery of ESI and for Professional Conduct, and this Court's inherent authority, plaintiffs seek a practical and efficient solution to discovery in this matter that will allow discovery to conclude more quickly, less expensively, with fewer disputes, and with no burden on or prejudice to Google. As plaintiffs noted in their recently filed motion to amend the case schedule (Dkt. No. 178), obtaining necessary discovery from Google has been contentious and slow. Google has objected to virtually all of plaintiffs' written discovery, portions of the ESI protocol, many of plaintiffs' proposed custodians and search terms, portions of the protective order, most of the topics in the 30(b)(6) deposition of Google that plaintiffs recently noticed, and the sharing of any relevant discovery and information between this action and *Calhoun*. Google has also been less than forthcoming in its affirmative ESI obligations, refusing for a long while to identify custodians or provide search terms or hit count reports. The parties have had dozens of endless, and fruitless, meet and confer meetings (meetings that take weeks to schedule and months to conclude) and no fewer than seven discovery motions to date, and, despite all of that, much of the discovery plaintiffs need to prove their claims remains unproduced by Google.

There is an easy and simple solution to this problem that will not prejudice Google or burden it with any additional discovery obligations. To the contrary, it will reduce Google's discovery obligations and burden in this case and reduce the time spent by counsel on meet and confers and motion practice. This will also reduce the burden on an already over-taxed Court. The solution is to allow plaintiffs to use certain relevant discovery and information already produced in *Calhoun*, by allowing Plaintiffs to identify to Google relevant discovery and information from *Calhoun*, and providing Google an opportunity for Google to object on relevance grounds to some or all of that discovery.

This solution makes sense. Much of the underlying discovery about Google's universal privacy and consent policies, how Google collects and stores named plaintiff data, and how Google uses that information in the real-time bidding ("RTB") auctions, is common across both cases.

Significant resources, including judicial resources, have already been expended in *Calhoun* to understand, locate and produce this discovery, including the expensive retention of a Special Master. There is no need to duplicate these efforts in this action, particularly where Judge Koh contemplated these efficiencies by appointing certain counsel in *Calhoun* as co-counsel in this litigation. Dkt No. 77 (order appointing counsel). These lawyers thus already have access to and the knowledge obtained from the *Calhoun* discovery that can, if allowed, be used to streamline and focus discovery here, to the benefit of the parties and the Court. Rather than have Google search for and produce the relevant discovery plaintiffs need here, plaintiffs will do so themselves, after first informing Google which discovery from *Calhoun* they intend to use here.

Google objects to this practical and efficient solution to the discovery problem in this case, and that should tell the Court everything it needs to know about the vexatious approach to discovery that Google has taken in this case, an approach that has already made discovery here unnecessarily slow, expensive, and contentious. This is not what the Federal Rules and Local Guidelines contemplate and it should not be tolerated by the Court. For the reasons set forth below and in the accompanying Levine and Weaver Declarations, this motion should be granted and use of relevant discovery and information from *Calhoun* should be allowed here, subject to the limitations plaintiffs have proposed.

**II.     RELEVANT BACKGROUND**

This case was filed in March 2021 and, as this Court has recognized, generally involves allegations of Google's sale of class members' personal information through the RTB process without their knowledge or consent. Dkt. No. 92 (complaint). Discovery commenced in May 2021 and has, over the past year, been contentious and slow. To date Google has only produced less than 55,000 documents and not one deposition has taken place. *See* Levine Decl., ¶¶ 2-3. While Plaintiffs are certainly seeking discovery about Google's sale of class members' personal information in the RTB auction process, a good portion of the discovery sought here relates to what personal information Google collects about class members, how named plaintiffs' data can be retrieved in this action, and Google's disclosures regarding its data collection and uses, including discovery Google will invoke to support its affirmative defense on consent. *Id.*, ¶ 4. This only makes sense, because Google can

only sell what it has, and in order to understand how the RTB process works, one needs to also understand what Google has collected about the class and how it is maintained. *See* Declaration of Elizabeth C. Pritzker in Support of Plaintiffs' Motion for Relief from Magistrate's Order ("Pritzker Decl."), Dkt. No. 196-4, ¶¶ 5-10.

To date, Google has produced only 51,175 documents (422,178 pages), and the slow pace of discovery has necessitated the recent request to extend the pretrial schedule and trial date. Levine Decl., ¶ 3. Google is the third largest technology company in the world, this case involves at least eight different legal claims, a nationwide class numbering in the millions, and a six-year discovery period. Yet Google has produced about half as many documents so far as the ten or so individual named plaintiffs. *Id*. Plaintiffs' efforts to take a 30(b)(6) deposition of Google on a number of topics that would shed light on what is missing from Google's document production have been similarly stymied. *See* Weaver Decl., ¶¶ 2-6.

Notably, this is neither the first case in which discovery from Google about its data collection activities has been sought, nor the first case in which Google has fought long and hard to keep that discovery from being produced. A month after this case was filed, it was related to two earlier-filed cases against Google, *Brown v. Google*, No. 20-cv-3664-YGR, and *Calhoun,* premised in part on the fact that the claims and underlying facts, as well as counsel, overlap. *See* Dkt. No. 11 (order relating cases). Around the same time, the parties in this case and in *Brown* and *Calhoun* were directed by Magistrate Judge Van Keulen to meet and confer regarding the potential for the cross-use of discovery among the three actions. Dkt. No. 29 (discovery order). *Brown* and *Calhoun* both generally involve Google's promises regarding the collection of personal information without customer knowledge or consent.[1] *See Brown*, Dkt. No. 136 (complaint), *Calhoun*, Dkt. No. 163 (complaint). Plaintiffs' counsel in *Calhoun* are Bleichmar Fonti & Auld LLP, Simmons Hanly Conroy LLC, and DiCello Levitt Gutzker LLC. These three firms are also on the Plaintiffs Executive Committee in this action and constitute three of the six firms representing plaintiffs here. Dkt. No. 77 (order appointing

---

[1] *Brown* and *Calhoun* have been related to one another and substantial coordination and cross-use of discovery in those two actions has occurred. *See Calhoun*, Dkt. No. 27 (order relating cases); No. 263 (order coordinating discovery); Weaver Decl., ¶¶ 7-8.

counsel).

*Brown* and *Calhoun* were filed about nine months before this case. As a result, discovery in those actions is substantially more advanced than in this action. By way of comparison to the 51,175 documents (422,178 pages) Google has produced in this action so far, in *Brown* and *Calhoun*, Google has produced ███████████████████████████ Weaver Decl., ¶ 8. Obtaining all of this discovery from Google in Calhoun (and *Brown*) has been fiercely litigated, necessitating more than 41 discovery motions efficiently resolved by Magistrate Judge Van Keulen, with a number of issues relating to the collection of class member data referred to a Special Master. Weaver Decl., ¶¶ 9. The Special Master has billed the parties in *Brown* and *Calhoun* more than ███████, amply demonstrating how contentious, expensive, and hard-fought discovery has been in those actions. *Id.*, ¶ 9.

As a result of the battles fought and discovery conducted in *Calhoun*, plaintiffs' counsel in that action now have a significant knowledge base about what personal information Google collects about class members and how that personal information is gathered, stored and valued by Google. Weaver Decl., ¶ 10. This is the same discovery that plaintiffs are seeking in this case. Pritzker Decl., ¶¶ 5-10; Weaver Decl., ¶ 11. Put another way, having fought the battles and reviewed the discovery produced, counsel in *Calhoun* (who are also counsel in this case) know which discovery in *Calhoun* is directly relevant to this action and which of it has or has not been produced already here.

Plaintiffs seek to efficiently use this hard-won knowledge, not to obtain some unfair advantage (after all, Google is the defendant in both actions and thus already has access to discovery in both actions), but rather to make discovery in this action faster, less expensive, less contentious, and less burdensome for Google and the Court, given the substantial overlap in discovery between this case and *Calhoun* and because there is no sound reason to require the parties here to have all of the same fights about the same discovery all over again before this Court. But, because almost all of the discovery (and information learned from that discovery) has been designated as confidential or highly confidential by Google, it cannot be used outside of *Calhoun* without either Google's consent or a

court order.[2] *See Calhoun*, Dkt. No. 56 (protective order).

Plaintiffs asked Google to consent to the use of the relevant confidential discovery and information from *Calhoun* in this action and explained during the meet and confer that they were not asking Google to do anything or to search for or produce any discovery from *Calhoun*. Levine Decl., ¶ 5. Rather, because certain plaintiffs' counsel in this case already have access to that discovery through their involvement in *Calhoun*, plaintiffs proposed to do the search themselves. *Id*. To protect Google, plaintiffs further proposed that any discovery or information they identified from *Calhoun* as relevant to RTB, but that has not been produced here, would be disclosed to Google and it would have an opportunity to object to its use in this action on the grounds that it was not relevant and, therefore, not admissible. *Id*. Google would be further protected by the protective order entered in this action (Dkt. No. 59), which is substantially similar to the *Calhoun* protective order. *See Calhoun*, Dkt. No. 56 (protective order).

Google categorically rejected this proposal. Levine Decl., ¶ 6. And, in doing so, it took the position that the *Calhoun* plaintiffs could not use or disclose **anything** they had learned in *Calhoun*, no matter how general or non-specific. For example, according to Google, plaintiffs' counsel cannot inform the Court, even in general terms, that there are custodians who produced relevant discovery in *Calhoun* that Google now claims have no relevant documents in this case, even if those custodians are not named. Similarly, in a hearing before Magistrate Judge DeMarchi on March 8, 2022, ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ Weaver Decl., ¶¶ 13-14. Thus, in Google's view, Google's representations to the Court can only be challenged based on public knowledge. Nor can plaintiffs' counsel in *Calhoun* share their knowledge with their co-counsel in

---

[2] To be clear, to date, plaintiffs' counsel in *Calhoun* have been careful not to share confidential discovery obtained and information learned in *Calhoun* with their co-counsel in this case, and Google has never suggested otherwise. Weaver Decl., ¶ 15. This very Motion seeks permission to do so.

this case who are seeking the very same discovery that was sought and eventually produced in *Calhoun*. According to Google, even plaintiffs' document requests in *Calhoun* cannot be disclosed.

This perverse outcome - where *Calhoun* counsel must hide their knowledge from co-counsel, where discovery battles must be fought again over the same discovery, where Google has knowledge of all information and discovery from both cases, but the Court and Plaintiffs must be kept in the dark about relevant discovery that is known to exist but has not been produced, where plaintiffs' interim lead counsel in *RTB* is not permitted to know about Google's misrepresentations as to the existence of certain discovery or relevance of proposed custodians, and where discovery is purposefully made slower, more expensive and more inefficient - is what plaintiffs seek to rectify through this motion.

## III.    ARGUMENT

This motion to allow the use of certain relevant and targeted discovery and information from *Calhoun* does not come out of the blue. Indeed, the order to allow cross-use came from Magistrate Judge Van Keulen, who was originally designated to oversee discovery in all three of the related actions (*RTB*, *Calhoun* and *Brown*). *See* Dkt. No. 29 (discovery order) ("the Parties are directed to participate in meet and confer efforts regarding the potential for a cross-use agreement as between all three actions."). Magistrate Judge Van Keulen understood that a cross-use agreement made sense because the three actions were related, some discovery would be common, two of the actions shared overlapping counsel, and the cases were then on a similar schedule. Cross-use was not coordinated then, because at the time of that order, depositions were not imminent in this action as they were in *Brown* and *Calhoun*.

Allowing use of *Calhoun* discovery, if relevant and given the safeguards proposed by plaintiffs, does make sense here, because it will lessen Google's burden, make discovery faster and less expensive, avoid the duplication and expense of all of the hard work done in *Calhoun*, reduce the time spent on meet and confers, and reduce the burden on the Court from the seemingly endless string of discovery motions filed in this action. This motion thus is fully consistent (and Google's opposition is inconsistent) with Fed. R. Civ. P. 1 and 26 and with the Northern District Guidelines for Professional Conduct and for Discovery of ESI, all of which focus on making litigation and discovery faster, less expensive, less burdensome, and more cooperative.

Fed. R. Civ. P. 1 instructs that the Federal Rules, including those pertaining to discovery, are to be "employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 26 provides for a broad scope of discovery taking into account a number of factors, including, among others, the parties' relative access to information, the importance of the discovery sought, and whether the burden and expense of the proposed discovery outweighs its likely benefit. Here, allowing limited use of relevant discovery from *Calhoun* in the manner proposed by plaintiffs will plainly further the goals of Rule 1 and easily fits within the scope of permissible discovery contemplated by Rule 26. As explained in the Pritzker Declaration (Dkt. No. 196-4), the discovery sought from *Calhoun* that has not been produced here is important for plaintiffs' case, solely within Google's control unless its use is allowed, and there is no burden or expense to Google in allowing relevant *Calhoun* discovery to be used because plaintiffs will do the work to locate the relevant materials, not Google.

The Northern District Guidelines for Professional Conduct instruct that counsel "should conduct discovery in a manner designed to ensure the timely, efficient, cost effective and just resolution of a dispute." Guideline 9 (Discovery). Allowing use of relevant *Calhoun* discovery here in the manner that plaintiffs have proposed will allow counsel to "conduct discovery in a manner designed to ensure the timely, efficient, cost effective and just resolution" of this case, for the reasons discussed above. For the same reasons, Google's strategy of making discovery slow, inefficient, expensive and duplicative is contrary to the express instruction of Guideline 9.

The Northern District Guidelines for Discovery of ESI similarly instruct counsel to cooperate with one another on ESI issues and have a stated goal of limiting the cost, burden and time spent by the parties on ESI issues. *See* Guidelines 1.01 (Purpose) and 1.02 (Cooperation). Guideline 2.02 (Rule 26(f) Meet and Confer) also instructs the parties to discuss "[o]pportunities to reduce costs and increase efficiency and speed . . ." Again, allowing limited use of the *Calhoun* discovery here fulfills all of these goals in the ESI Guidelines by limiting the cost and time spent by the parties to identify relevant ESI, locate it and produce it, and will certainly reduce or eliminate Google's ESI discovery burden. Use of relevant *Calhoun* discovery will also increase efficiency and speed and allow this

PLAINTIFFS' MOTION TO ALLOW LIMITED USE OF DISCOVERY FROM RELATED ACTION

case to proceed without further discovery delays. Google's opposition to such use, even though it will reduce its ESI burden significantly, is contrary to the ESI Guidelines.

Finally, allowing use of relevant *Calhoun* discovery is well within this Court's inherent authority to manage the cases before it. Because this Court is assigned all three of the actions, it has the authority to modify the *Calhoun* protective order to allow plaintiffs here to use confidential relevant documents and information from *Calhoun* in this action, subject to any limitations the Court finds appropriate, including all of the limitations plaintiffs themselves have proposed, as well as the protections afforded Google under the *RTB* protective order already entered in the action.

## IV. CONCLUSION

For all of the foregoing reasons, plaintiffs respectfully request that they be permitted to use in this proceeding certain relevant discovery and information produced by Google in *Calhoun*, subject to first providing Google with notice and an opportunity to object.

DATED: May 24, 2022                              Respectfully submitted,

**PRITZKER LEVINE LLP**

By:  /s/ Jonathan K. Levine

Elizabeth C. Pritzker (Cal. Bar No.146267)
Jonathan K. Levine (Cal. Bar No. 220289)
Bethany Caracuzzo (Cal. Bar No. 190687)
1900 Powell Street, Ste. 450
Oakland, CA 94602
Tel.: (415) 692-0772
Fax: (415) 366-6110
*ecp@pritzkerlevine.com*
*jkl@pritzkerlevine.com*
*bc@pritzkerlevine.com*

*Interim Class Counsel*

**BLEICHMAR FONTI & AULD LLP**
Lesley Weaver (Cal. Bar No.191305)
Anne K. Davis (Cal. Bar No. 267909)
Joshua D. Samra (Cal. Bar No. 313050)
555 12th Street, Suite 1600
Oakland, CA 94607
Tel.: (415) 445-4003
Fax: (415) 445-4020

|   |   |
|---|---|
| 1 | lweaver@bfalaw.com |
|   | adavis@bfalaw.com |
| 2 | jsamra@bfalaw.com |

**SIMONS HANLY CONROY LLC**
Jason 'Jay' Barnes (admitted *pro hac vice*)
An Truong (admitted *pro hac vice*)
112 Madison Avenue, 7th Floor
New York, NY 10016
Tel.: (212) 784-6400
Fax: (212) 213-5949
*jaybarnes@simmonsfirm.com*
*atruong@simmonsfirm.com*

**DICELLO LEVITT GUTZLER LLC**
David A. Straite (admitted *pro hac vice*)
One Grand Central Place
60 E. 42nd Street, Suite 2400
Tel.: (212) 784-6400
Fax: (212) 213-5949
New York, NY 10165
Tel: (646) 993-1000
*dstraite@dicellolevitt.com*

**COTCHETT PITRE & MCCARTHY, LLP**
Nancy E. Nishimura (Cal. Bar No. 152621)
Brian Danitz (Cal Bar. No. 247403)
Karin B. Swope (admitted *pro hac vice*)
840 Malcolm Road
Burlingame, CA 94010
Tel.: (650) 697-6000
*nnishimura@cpmlegal.com*
*bdanitz@cpmlegal.com*
*kswope@cpmlegal.com*

**BOTTINI & BOTTINI, INC.**
Frances A. Bottini, Jr. (Cal. Bar No. 175783)
Yury A. Kolesnikov (Cal. Bar. No. 271173)
7817 Ivanhoe Ave., Ste. 102
La Jolla, CA 92037
Tel.: (858) 914-2001
*fbottini@bottinilaw.com*
*ykolesnikov@bottinilaw.com*

*Plaintiffs' Executive Committee*