**PRITZKER LEVINE LLP**
Elizabeth C. Pritzker (SBN 146267)
Jonathan K. Levine (SBN 220289)
Bethany Caracuzzo (SBN 190687)
1900 Powell Street, Ste. 450
Oakland, California 94602
Telephone: (415) 692-0772
Facsimile: (415) 366-6110
*ecp@pritzkerlevine.com*
*jkl@pritzkerlevine.com*
*bc@pritzkerlevine.com*

*Interim Class Counsel for Plaintiffs*

[Additional Counsel Listed on Signature Page]

# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# OAKLAND DIVISION

| | |
|---|---|
| *IN RE GOOGLE RTB CONSUMER PRIVACY LITIGATION*<br><br>*This document applies to all actions.* | Case No. 4:21-cv-02155-YGR (VKD)<br><br>**PLAINTIFFS' FURTHER STATUS REPORT RE: PLAINTIFFS' RFP NOS. 46–49, 51, AND 54–56**<br><br>Judge: Hon. Virginia K. DeMarchi<br>Date: May 31, 2022<br>Time: 10:00 a.m.<br>Courtroom: Courtroom 2, 5th Floor |

Pursuant to the Court's April 29, 2022 *Order re: March 15, 2022 Discovery Dispute re: Plaintiffs' Document Requests to Google* (Dkt. No. 189) and May 16, 2022 *Order re: Further Status Reports and Discovery Conference, If Needed* (Dkt. No. 202), Plaintiffs respectfully submit this further status report to apprise the Court of the parties' meet-and-confer discussions regarding Plaintiffs' Requests for Production of Documents ("RFP") Nos. 46–49, 51, and 54–56.

Consistent with the Court's orders and standing rules, Plaintiffs have endeavored to work with Google on submitting a joint status report on this discovery dispute, but Google refused, thus necessitating the parties to file separate status reports.

## I.   Background of the Discovery Dispute

The present discovery dispute relates to Plaintiffs' efforts to obtain discovery of information that will allow them to calculate or estimate the value of Account Holder information that Google shares with third parties through Google's Real-Time Bidding ("RTB"). Despite the underlying discovery requests being served on January 10, 2022, and despite the Court's April 29, 2022 order holding that Plaintiffs "may obtain discovery of information that will allow them to calculate or estimate the value of account holder information that Google allegedly shared with third parties without their permission via the RTB process" (Dkt. No. 189 at 5:2–4) and ordering the parties to "confer further regarding what information, if any, Google can provide that will permit plaintiffs to calculate or estimate their alleged damages" (*id.* at 5:11–12), Google has refused to comply with the Court's directive and, to-date, has not provided Plaintiffs with the categories of information contemplated by Dkt. No. 189. Further Court intervention, thus, is necessary so that Plaintiffs can obtain basic discovery relating to Plaintiffs' damages and Google's unjust enrichment.

## II.   Plaintiffs Engage in Extensive Meet-and-Confer Efforts but Google Refuses to Provide *Any* Relevant Information as Contemplated by the Court's Order

Following the entry of the Court's order on April 29, 2022, Plaintiffs expeditiously reached out to Google on **May 4, 2022**, to set up a further meet-and-confer. Thereafter, the parties met and conferred on **May 10, 2022**. The meet-and-confer was unproductive because Google was unprepared to proceed along the 3-step framework set forth in the Court's order. For example, with regard to Step 1, Google refused to identify to Plaintiffs all "items of personal or sensitive

information shared with third parties in the RTB process." *See* Dkt. No. 189 at 5:12–14. Instead, Google insisted that Plaintiffs identify the categories of personal or sensitive information that they allege is shared through RTB, even though Google is in a much-better position to know what categories of information are shared through the RTB. Google also directed Plaintiffs to public documents previously produced by Google that purportedly identify information that is being shared through RTB, but would not commit to representing that this is the *entire universe* of information shared through RTB or whether any additional categories of information are being shared.

In response, Plaintiffs identified specific paragraphs in the operative complaint that discuss discrete categories of information shared through RTB that Plaintiffs allege amount to personal or sensitive information under California law. Plaintiffs also agreed to review the public documents referenced by Google to identify additional categories of personal or sensitive information that is being shared with third parties through RTB.

With these initial categories of information in mind, Plaintiffs sought to discuss Steps 2 and 3 of the Court's order — "whether Google assigns or estimates the value of some or all of those items of information for purposes of RTB" and, if not, "whether it does so for any other purpose and whether any of those other purposes are comparable to the purpose served by the RTB auction service." *See* Dkt. No. 189 at 5:14–18. Google's counsel, however, was unprepared to discuss these topics on May 10. As a result, the parties agreed to schedule a further meet-and-confer call, and Plaintiffs specifically requested that Google come prepared to discuss Steps 2 and 3.

On **May 12, 2022**, Plaintiffs sent a follow-up letter to Google identifying categories of personal or sensitive information shared through RTB. These categories include, among other things, "Google ID," "IP Address," "identifiers/information that facilitates cookie matching," "cookies," "location information," "Publisher ID," "any information that conveys the content of a user's internet communication, including but not limited to the URL where the advertisement will be placed," "device ID," "gender," "verticals, segments, and other information that convey a user's inferred interests or relate to sensitive categories of information like race, religion, health, sexual orientation," "user-agent information," and "device information (make, model, physical dimensions." Plaintiffs also included a highlighted version of one of the public "protocols"

3

referenced by Google, highlighting examples of personal or sensitive information being shared through RTB. Plaintiffs also reiterated their request that Google identify any additional categories of information shared with third parties through RTB and respond to Step 2 of the Court's order.

The parties held a further meet-and-confer on **May 20, 2022**. Once again, Google was unprepared to discuss what information, if any, it can provide in response to Steps 2 and 3 of the Court's April 29, 2022 order, even for the categories of personal or sensitive information identified by Plaintiffs during the May 10 meet-and-confer and/or in the May 12 letter. Instead, Google devoted most of the time to nitpicking Plaintiffs' identified categories, even though it has previously committed to not withholding documents "solely on the basis that Google does not believe that the identified information is personal or sensitive information." See Dkt. No. 201 at 3:5–10.

Most egregiously, Google refused to tell Plaintiffs whether it maintains records regarding what monetary amount the winner of an RTB auction pays for the information obtained through RTB, even though this goes directly to Plaintiffs' allegations of unjust enrichment and damages and, thus, is squarely within the Court's directive that "Plaintiffs may obtain discovery of information that will allow them to calculate or estimate the value of account holder information that Google allegedly shared with third parties without their permission via the RTB process." See Dkt. No. 189 at 5:2–4; *see also id.* at 5:11–12 ("The Court directs the parties to confer further regarding what information, if any, Google can provide that will permit plaintiffs to calculate or estimate their alleged damages."); *id.* at 5:18–19 ("The parties should discuss any other matters that will facilitate resolution of this dispute."). Google also refused to answer any questions regarding its "Screenwise Trends" program, through which Google pays users to track their browsing history (*see* CCAC ¶ 290), even though this information goes directly to Step 3 of the Court's order, requiring the parties to discuss whether Google "assigns or estimates the value" of some or all of the identified items of information "for any other purpose and whether any of those other purposes are comparable to the purpose served by the RTB auction service." See Dkt. No. 189 at 5:14–18.

Ultimately, for nearly four weeks, with the exception of pointing Plaintiffs to public documents relating to information shared through RTB, Google has refused to provide ***any*** information to Plaintiffs "that will allow them to calculate or estimate the value of account holder

information that Google allegedly shared with third parties without their permission via the RTB process" (*see* Dkt. No. 189 at 5:2–4) and has refused to provide *any* information "that will permit plaintiffs to calculate or estimate their alleged damages" (*see id.* at 5:11–12).

On **May 25, 2022 at 10:12 p.m.** — essentially one business day before this status report was due, Google sent a two-page letter vaguely indicating that it would "conduct reasonable, targeted searches for documents estimating the value of [the following information] shared through RTB": "Google IDs, cookies, or identifiers, including any that facilitate cooking matching in RTB," "Truncated IP addresses," "Location information," "Webpage URLs where advertisements will be placed," "Verticals or segments," and "User-agent information."  Google, thus, is limiting the categories of information to these six, refusing to conduct any search into numerous other categories identified by Plaintiffs.  Google also stated that "[i]f Google is unable to locate such documents, it agrees to further confer with Plaintiffs, per the [April 29] Order, regarding whether Google assigns or estimates value for this information for other, comparable purposes."  Google did not provide a concrete timeframe for *when* it intends to provide Plaintiffs with any further information.

### III. The Court Should Require Google to Provide Further Information Contemplated by the Court's April 29, 2022 Order

#### A. Google Has Refused to Engage in a Transparent Discussion Necessary to "Identify Items of Personal or Sensitive Information Shared with Third Parties in the RTB Process" (Step 1)

Over the past month, as Plaintiffs attempted to meet and confer as contemplated by the Court's order, Google has steadfastly refused to cooperate and provide Plaintiffs with any relevant information necessary to "identify items of personal or sensitive information shared with third parties in the RTB process." *See* Dkt. No. 189 at 5:12–14.  Instead, Google simply pointed Plaintiffs to Google's public documents that were previously produced as identifying the types of information that is shared through RTB, but would not even confirm whether there are any other categories of information that are shared through RTB that are not listed in the public "protocols."

One reason for Plaintiffs' concern is that certain documents produced by Google suggest that there are other categories of information that are shared that are not listed in the public protocols.  As a result, to ensure that the parties can have a transparent conversation, the Court should order

Google to identify *all* of the categories of information that are shared through RTB, not just those that Google publicly discloses. The Court should also order Google to provide information contemplated by Steps 2 and 3 of the Court's April 29, 2022 order for each of the categories of information that Plaintiffs allege is personal or sensitive information, *not* just the categories of information that Google arbitrarily identified in its May 25, 2022 letter. *See* CAL. CIV. CODE § 1798.140(o)(1) (California law broadly defines "personal information" as "information that identifies, *relates to*, describes, *is reasonably capable of being associated with*, or could reasonably be linked, directly *or indirectly*, with a particular consumer or household") (emphases added).

Plaintiffs allege that through RTB, Google sells consumer personal information to hundreds of companies through millions of different apps and websites. CCAC ¶¶ 194–199. This personal information sold includes: (1) IP addresses, (2) Google ID, (3) "match data" through which Google knowingly helps recipients identify consumers, (4) User-Agent, (5) hyperlocal GPS coordinates, (6) browsing history via webpage URLs, which contain content of Internet communications, (7) consumer interest data, including interests in sensitive categories such as race, health, gender, and sexual orientation, (8) device and advertising IDs, and (9) more. *Id.* ¶¶ 13–15, 137, 140–148, 201–204. These categories amount to personal information, both as a matter of California law and as a matter of Google's contract, as Google previously has admitted. *See id.* ¶¶ 201–259; *see also Calhoun v. Google LLC*, 526 F. Supp. 3d 605, 622 (N.D. Cal. 2021) (personal information includes, among other things, "browsing history, search history, and information regarding a consumer's interaction with an internet website, application, or advertisement"). Indeed, in its own Privacy Policy, Google defines "personal information" to include "data that can be *reasonably linked* to [a name or e-mail address] by Google, such as *information we associate with your Google Account*." CCAC ¶ 87 (emphases added). Google associates IP addresses, User-Agents, device identifiers, geo-location, and browsing history with users' Google Accounts. *Id.* ¶¶ 216, 222, 229, 236. Even if it did not, the combination of data elements that Google discloses to RTB recipients is designed to allow recipients to identify users. *Id.* ¶¶ 163–184.

Thus, there is no merit to Google's blanket refusal to search for responsive documents relating to the following additional categories of information shared through RTB: (1) Publisher

ID, (2) Device ID, (3) device information (make, model, physical dimensions), and (4) any other information that conveys the content of a user's internet communications and browsing history. Indeed, a "Device ID" by itself is "personal information" under California law. *See* CAL. CIV. CODE § 1798.140(o)(1)(A) ("personal information" includes "unique personal identifier"); *id.* § 1798.140(x) ("unique personal identifier" means "a persistent identifier that can be used to recognize a consumer, a family, or a device that is linked to a consumer or family, over time and across different services, **including, but not limited to, a device identifier**") (emphasis added).

Moreover, although Google argues that some of these categories *by themselves* may not be sufficient to identify a user, discovery of them in totality bears directly on the issue. The complaint expressly alleges that *the combination* of data elements that Google discloses to RTB recipients is designed to allow recipients to identify users. *See, e.g.*, CCAC ¶¶ 163–184. This fact was recently underscored by the California Attorney General in a published opinion interpreting a provision of the California Consumer Privacy Act. *See* 2022 Cal. Op. Att'y Gen. No. 20-303, 2022 CAL. AG LEXIS 8, at *12 (Mar. 10, 2022) ("Examples drawn from academic papers in 2018 show that **seemingly innocuous data points, when combined with other data points across masses of data, may be exploited to deduce startlingly personal characteristics**.") (emphasis added).

Given the broad standard for relevancy, the Court should require Google to provide the information contemplated by Steps 2 and 3 of the April 29, 2022 order for all of the categories of personal or sensitive information identified by Plaintiffs.

> B. **Google Has Refused to Engage in Any Discussion as to "Whether Google Assigns or Estimates the Value of Some or All of [the Identified Items of Personal or Sensitive Information] for Purposes of RTB" (Step 2)**

Disregarding the Court's directive, Google has refused to engage in *any* discussion regarding Step 2, **even with regard to the categories of information as to which Google has agreed to search for responsive documents**. Over the past four weeks, Plaintiffs repeatedly asked Google what information it can provide as to "whether Google assigns or estimates the value of some or all of [the identified items of personal or sensitive information] for purposes of RTB." *See* Dkt. No. 189 at 5:14–15. Google has provided *zero* information in response. It was only on May 25, 2022, at 10:12 p.m. — essentially one business day before this status report was due, that Google finally, but

cryptically, agreed to "conduct reasonable searches for documents that reflect Google's assignment or estimation of value, for the purposes of RTB, of certain data that Plaintiffs contend constitute the 'personal' or 'sensitive' information of Account Holders." This is not sufficient.

The Court's April 29, 2022 order specifically contemplates *a discussion* between the parties with regard to whether Google assigns or estimates the value of the subject information shared through RTB — not a unilateral search by Google for a truncated sliver of documents. Notably, based on the parties' meet-and-confer discussions to date, it appears that Google intends to take a very narrow view of what documents it should look for. For example, it appears that Google intends to search only for documents that analyze value assigned to a specific discrete category, without even looking for or intending to produce documents that assign a bulk value to the information that Plaintiffs allege is being shared through RTB, even though such information would be probative — and, thus, relevant — to unjust enrichment and calculation of damages.

The Court ordered that "Plaintiffs may obtain discovery of information that will allow them to calculate or estimate the value of *account holder information* that Google allegedly shared with third parties without permission via the RTB process." Dkt. No. 189 at 5:2–4 (emphasis added). Plaintiffs' damages include "unjust enrichment damages in the form of restitution measure[d] by either unearned profits or a reasonable royalty value." CCAC ¶ 371; *id.* ¶¶ 30, 352, 398, 409, 416, 427. The best measures for these damages are (1) how much Google gets paid for the data in question (relevant to Step 2); and (2) how much Google pays consumers for the same or similar data (relevant to Step 3). Google, however, refuses to disclose whether any of these documents exist.

For example, the best source of information to determine "unearned profits" is from actual RTB sales data. As a result, at the May 20 meet-and-confer, Plaintiffs requested Google to identify whether it records sales information associated with specific auctions. Google refused to answer the question, even though it goes directly to what the Court ordered the parties to discuss — "what information, if any, Google can provide that will permit plaintiffs to calculate or estimate their alleged damages." *See* Dkt. No. 189 at 5:11–12. What's more, Plaintiffs reasonably believe that such information *does exist* and that it is recorded and logged for billing purposes — and that access to such information will provide the best evidence of the value for the personal information at issue.

Indeed, public filings from the related *Calhoun* action demonstrate that relevant information does exist. For example, in *Calhoun*, "Google [] identified at least ▉ logs **that contain specific revenue and ads information keyed to specific user identifiers**." *See Calhoun v. Google LLC*, 4:20-cv-05146-YGR-SVK, Dkt. No. 484–5, at ¶ 179 (Feb. 16, 2022) (expert report of Professor Zubair Shafiq) (emphasis added). In addition, plaintiffs in *Calhoun* "have been told that there are additional logs with revenue information." *See id.* at ¶ 180; *see also id.* at ¶¶ 185–187 (opining that Google can use backend logs to write a program to implement a formula to calculate revenue or revenue proportions on a per-user basis and to calculate unjust enrichment). These are just a few examples of documents or information that fall squarely within Step 2 of the Court's April 29, 2022 order, but which Google has refused to discuss and disclose in this case.

For all the foregoing reasons, the Court should order Google to share this and similar information with Plaintiffs, which is necessary to "permit plaintiffs to calculate or estimate their alleged damages." *See* Dkt. No. 189 at 5:11–12. This would include, at a minimum, a requirement that Google disclose to Plaintiffs **whether Google records sales information associated with specific auctions, such as the price paid by the winning bidder**. If Google does record such information, the Court should order Google to produce responsive documents to Plaintiffs, including identification of all fields contained in such logs that are effectively receipts for RTB sales. Plaintiffs and their experts can work with such data to devise methodologies relevant to rebut likely class certification arguments from Google and to demonstrate the value received by Google during the Class Period in exchange for the information shared with third parties through RTB.

### C. Google Refuses to Discuss Whether Google Assigns or Estimates Value for Account Holders' Information "for Any Other Purpose" (Step 3)

Google has also steadfastly refused to engage in any discussion with regard to Step 3 of the Court's April 29, 2022 order. While this discussion may be premature until after Google has complied with its obligations under Step 2, Plaintiffs note that, at the very least, information relating to Google's "Screenwise Trends" program is relevant and should be produced.

Notably, the best source of information for "reasonable royalty value" — which is one measure of Plaintiffs' damages (*see, e.g.*, CCAC ¶ 371) — would be discovery about what Google

9

pays consumers for the same or similar data. For example, if Google maintained a program through which it paid consumers for the right to obtain their browsing history, the price paid for the right to obtain the browsing history would be the best measure for how Google assessed how much value a consumer would place on the data at issue. During the meet-and-confers, however, Google refused to answer questions regarding the existence of such a program.

The "unjust enrichment" section of Plaintiffs' complaint specifically identifies "Screenwise" as *a relevant market* in which consumers can sell their personal information. *Id.* ¶ 290. Thus, to the extent Screenwise involves payments for the right to track app usage or browsing communications, it is directly relevant to Plaintiffs' damages and, in fact, will serve as one of the primary bases for such a calculation. *See, e.g., Calhoun*, 4:20-cv-05146-YGR-SVK, Dkt. 484-4, at ¶ 27 (Feb. 16, 2022) (expert rebuttal report of Russell W. Magnum III, Ph.D.) (opining that "[d]irect evidence [of value of personal information at issue] includes what Google itself has paid for users' browsing history and other personal information … directly through Screenwise …").

In sum, evidence relating to what Google has been willing to pay users in the past for the same or similar information (such as Screenwise or any similar program) is relevant and probative of the value of the information shared through RTB and is responsive to Step 3 of the Court's April 29, 2022 order, such that Google should be ordered to produce these documents.

DATED: May 27, 2022                                             Respectfully submitted,

**PRITZKER LEVINE LLP**
Elizabeth C. Pritzker (SBN 146267)
Jonathan K. Levine (SBN 220289)
Bethany Caracuzzo (SBN 190687)

           /s/ Jonathan K. Levine
                Jonathan K. Levine

1900 Powell Street, Ste. 450
Oakland, CA 94602
Tel.: (415) 692-0772
Fax: (415) 366-6110
ecp@pritzkerlevine.com
jkl@pritzkerlevine.com
bc@pritzkerlevine.com

*Interim Class Counsel for Plaintiffs*

|   |   |
|---|---|
| 1 |  |
| 2 | **BOTTINI & BOTTINI, INC.**<br>Frances A. Bottini, Jr. (SBN 175783) |
| 3 | Yury A. Kolesnikov (SBN 271173) |
| 4 | _____/s/ Yury A. Kolesnikov_____<br>Yury A. Kolesnikov |
| 5 |  |
| 6 | 7817 Ivanhoe Ave., Ste. 102<br>La Jolla, CA  92037 |
| 7 | Tel.: (858) 914-2001<br>Fax: (858) 914-2002 |
| 8 | *fbottini@bottinilaw.com*<br>*ykolesnikov@bottinilaw.com* |
| 9 |  |
| 10 | **BLEICHMAR FONTI & AULD LLP**<br>Lesley Weaver (SBN 191305) |
| 11 | Anne K. Davis (SBN 267909)<br>Joshua D. Samra (SBN 313050) |
| 12 | 555 12th Street, Suite 1600<br>Oakland, CA 94607 |
| 13 | Tel.: (415) 445-4003<br>Fax: (415) 445-4020 |
| 14 | *lweaver@bfalaw.com* |
| 15 | *adavis@bfalaw.com*<br>*jsamra@bfalaw.com* |
| 16 |  |
| 17 | **SIMMONS HANLY CONROY LLC**<br>Jason 'Jay' Barnes (admitted *pro hac vice*) |
| 18 | An Truong (admitted *pro hac vice*)<br>112 Madison Avenue, 7th Floor |
| 19 | New York, NY 10016<br>Tel.: (212) 784-6400 |
| 20 | Fax: (212) 213-5949 |
| 21 | *jaybarnes@simmonsfirm.com*<br>*atruong@simmonsfirm.com* |
| 22 |  |
| 23 | **DICELLO LEVITT GUTZLER LLC**<br>David A. Straite (admitted *pro hac vice*) |
| 24 | One Grand Central Place<br>60 E. 42nd Street, Suite 2400 |
| 25 | Tel.: (212) 784-6400<br>Fax: (212) 213-5949 |
| 26 | New York, NY 10165<br>Tel: (646) 993-1000 |
| 27 | *dstraite@dicellolevitt.com* |
| 28 | **COTCHETT PITRE & MCCARTHY, LLP** |

11

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Nancy E. Nishimura (SBN 152621)
Brian Danitz (SBN 247403)
Karin B. Swope (admitted *pro hac vice*)
840 Malcolm Road
Burlingame, CA 94010
Tel.: (650) 697-6000
*nnishimura@cpmlegal.com*
*bdanitz@cpmlegal.com*
*kswope@cpmlegal.com*

*Plaintiffs' Executive Committee*