**BLEICHMAR FONTI & AULD LLP**
Lesley Weaver (Cal. Bar No.191305)
Angelica M. Ornelas (Cal. Bar No. 285929)
Joshua D. Samra (Cal. Bar No. 313050)
555 12th Street, Suite 1600
Oakland, CA 94607
Tel.: (415) 445-4003
Fax: (415) 445-4020
*lweaver@bfalaw.com*

**DICELLO LEVITT GUTZLER**
David A. Straite (admitted pro hac vice)
One Grand Central Place
60 East 42nd Street, Suite 2400
New York, New York 10165
Tel.: (646) 933-1000
*dstraite@dicellolevitt.com*

Amy E. Keller (admitted pro hac vice)
Ten North Dearborn Street, 6th Fl.
Chicago, Illinois 60602
Tel.: (312) 214-7900
*Akeller@dicellolevitt.com*

**SIMMONS HANLY CONROY LLC**
Jason 'Jay' Barnes (admitted *pro hac vice*)
Mitchell M. Breit (admitted *pro hac vice*)
An Truong (admitted *pro hac vice*)
112 Madison Avenue, 7th Floor
New York, NY 10016
Tel.: (212) 784-6400
Fax: (212) 213-5949
*jaybarnes@simmonsfirm.com*

*Counsel for Plaintiffs*

**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
Andrew H. Schapiro (admitted *pro hac vice*)
*andrewschapiro@quinnemanuel.com*
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606
Tel: (312) 705-7400
Fax: (312) 705-7401

Stephen A. Broome (CA Bar No. 314605)
*stephenbroome@quinnemanuel.com*
Viola Trebicka (CA Bar No. 269526)
*violatrebicka@quinnemanuel.com*
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
Tel: (213) 443-3000
Fax: (213) 443-3100

*Counsel for Defendant; additional counsel listed in signature blocks below*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN JOSE DIVISION

PATRICK CALHOUN, *et al*., on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

GOOGLE LLC,

Defendant.

Case No. 5:20-cv-5146-LHK-SVK

**JOINT SUBMISSION PURSUANT TO DKT. 220-1 RE: ESI SEARCH TERMS AND CUSTODIANS**

Hon. Susan van Keulen, USMJ

June 25, 2021

**Submitted via ECF**

Magistrate Judge Susan van Keulen
San Jose Courthouse
Courtroom 6 - 4th Floor
280 South 1st Street
San Jose, CA 95113

Re: **Joint Submission re: ESI Search Terms and Custodians**
*Calhoun v. Google LLC*, Case No. 5:20-cv-5146, Dkt. No. 220-1, Disputes 1.6

Dear Magistrate Judge van Keulen:

Pursuant to Your Honor's Order dated June 8, 2021 in *Calhoun, et al. v. Google LLC* (Dkt. No. 220-1, Dispute 1.6), the parties jointly submit this statement containing a joint summary of the evolution of ESI search terms and custodians in this case and the parties' respective proposals as to how to manage the addition of custodians and search terms going forward.

**JOINT STATEMENT:**

- January 7, 2021: The Court entered the ESI Protocol. (Dkt. No. 96.)
- January 20, 2021: Pursuant to Section 6, Google proposed 18 custodians and 14 search strings.
- February 3, 2021: Pursuant to Section 6, Plaintiffs proposed modifications to Google's search terms (the "February 3 counterproposal") and also provided a list of 79 "persons of interest."
- February 17, 2021:  Deadline for "hit reports (to include unique hits and hits with families) on any terms the responding party disputes." (Dkt. No 96 ¶ 6(b)(ii).)
- February 18, 2021: Google identified specific syntax issues with more than half of the search strings in Plaintiffs' February 3 counterproposal and provided detailed suggestions on a term-by-term basis for how these issues can be fixed (e.g., by eliminating wildcards within quotations and replacing other wildcard terms like <us*> with complete words like <use>, <using> and <uses>). Google also objected to the counterproposal as unduly burdensome but could not dispute individual search terms given the uncertainty as to the actual terms Plaintiffs sought.
- March 30, 2021: Plaintiffs propose engaging a "Special Discovery Master" to deal with the "volume and technical complexity of our pending disputes."
- April 12, 2021: Google again requested that Plaintiffs respond to Google's request to resolve the wildcard issues and provided its own potential solutions on same.
- April 14, 2021: Plaintiffs requested information regarding Google's document processing system and for a knowledgeable person to meet with Plaintiffs' ESI vendor.
- April 20, 2021: The parties raised a dispute with the Court regarding (i) the syntax issues, (ii) hit reports, (iii) Plaintiffs' request for a meeting between the parties' respective ESI vendors, (iv) Plaintiffs' "persons of interest" list, and (v) Plaintiffs' request that Google search the documents of directors and officers. (Dkt. No. 164.)
- April 30, 2021: The Court ordered that (i) a syntax person and ESI liaison from each side discuss how to correct these issues and (ii) the parties must provide a status report by May 6, including a timeline for Plaintiffs' corrected requests and Google's hit reports. (Dkt. No. 173-1.) The Court indicated it was "inclined to allow as few as 30 and as many as 50 custodians." (*Id.*)
- May 2-4, 2021: Google provided more information about the 79 "persons of interest," and the parties met and conferred. Plaintiffs identified eleven "priority custodians" from their list of 79.
- May 5, 2021: Google provided hit counts for the terms without syntax issues. The parties conferred with technical ESI vendors from each side in attendance.
- May 6, 2021: The parties informed the Court of their outstanding disputes with respect to the correction of syntax errors, among other issues. (Dkt. No. 173.) Google supplemented the hit counts provided on May 5, 2021 with unique hit counts. The parties did not provide a timeline for "Plaintiffs to provide corrected requests." (*See* Dkt. Nos. 173-1.)
- May 7-13, 2021: Google agreed to add four custodians. The Court allowed three additional custodians and ordered the parties to meet and confer to discuss search terms for the new custodians. (Dkt. Nos. 187, 192-1.)
- May 18, 2021: The parties met and conferred to discuss search terms for both the original custodians and the newly added custodians. The parties disagreed on whether Plaintiffs or Google should first propose search terms for the newly-added custodians.
- May 20, 2021: Plaintiffs proposed: (1) expedited production of (a) ESI locatable without search terms and (b) documents retrieved by the search terms Google proposed on January 20, 2021 (or alternatively production of full custodial files), and (3) a special master to facilitate expedited agreement on search terms or technology-assisted review.
- May 24, 2021: The parties met and conferred, with Plaintiffs' ESI consultant in attendance.

- May 26, 2021: The parties raised a dispute with the Court over the search terms for newly added custodians, including those Google is searching in response to RFP No. 8B, and indicated that they were hopeful further progress could be reported at the next hearing regarding their two remaining search term disputes. (Dkt. No. 206.)
- June 2, 2021: Google proposed further syntax corrections and requested that Plaintiffs provide written explanations as to the relevance of 18 of their proposed terms (e.g., <Jid> and <*Gid>).
- June 4, 2021: Plaintiffs accepted the proposed corrections and made additional corrections. Plaintiffs also reiterated their proposal from May 20.
- June 8, 2021: Plaintiffs requested hit reports for the corrected terms, a meet and confer to discuss Google's relevance objections, and a list of proposed terms for newly added custodians.
- June 17, 2021: Google identified a final set of suggested corrections, accepted ten additional terms from the February 3 list, and restated its objection to 27 other terms on burden grounds.
- June 21, 2021: The parties met and conferred to discuss a protocol for search terms and custodians; the parties will reconvene on June 28 to discuss Google's relevance objections.

**PLAINTIFFS' STATEMENT:**

    **1.**    **Introduction:**  The theoretical efficiencies gained from using ESI Search Terms go unrealized if parties spend more effort fighting over the search terms than just reviewing the documents. Such a situation has evolved here. Despite the entry of a thoroughly negotiated ESI protocol on January 7, 2021 (Dkt. No. 96), and despite Google's lament that Plaintiffs' ESI Search Terms hit on 6.5 million documents across 20 or so custodians, Google has only produced 17,010 documents to date while the search term disputes remain unresolved. Worse, 15,106 of these documents are iterations of publicly available policies and contracts. ***Almost a year after Plaintiffs served RFP Set No. 1 last August, Google has produced fewer than 2,000 internal documents.*** Google thus complains that Plaintiffs ask for too much while simultaneously produces nothing.

    As Your Honor correctly surmised, this is a dispute over process. Dkt No. 220-1, Dispute 1.6 ("it appears more direction from the Court . . . is needed"). But it can be easily fixed with two simple adjustments. First, the Court could make clear that the ESI Protocol is a Court order, not an optional guide. Second, the Court could make a few tweaks to Section 6 of the ESI Protocol.

    **2.**    **The ESI Protocol Is a Court Order, not an Optional Guide:**  On February 3, 2021, Plaintiffs proposed search terms. Pursuant to Section 6(b) of the ESI Protocol, Google had until February 17 to accept them, or to provide hit counts for any disputed term, to help guide the conferring process. Not surprisingly, Google disputed ***each and every one*** of Plaintiffs' proposed terms. But Google also refused to provide hit counts for any of the disputed terms (as required by the Protocol), which ***was*** surprising. Google viewed the ESI Protocol not so much as a Court order, but as an optional guide, and it was not until May 5, 2021, following this Court's explicit order, that Google finally produced the hit counts, allowing negotiations to begin on an informed basis. The parties could have saved almost three months if Google had respected the ESI Protocol as a Court Order. Plaintiffs therefore suggest that the Court emphasize this point.

    **3.**    **The ESI Protocol, Section 6, Should be Amended:**  Plaintiffs also request some minor modifications to Section 6 of the ESI Protocol to address certain ambiguities and differences in interpretation that have arisen. *See* **Exhibit A**. The important changes are explained here:

    ***First***, Plaintiffs amend Section 6(a) to clarify that the protocol for conferring over ESI Search Terms must be followed whenever any RFPs are served, not just the first batch served last August.

Remarkably, during the meet-and-confer process this week, Google took the position that the Search Term negotiation protocol should not apply to RFPs other than the first set.

**Second**, Plaintiffs amend Section 6(b) to clarify that the protocol governs non-custodial sources and custodians; allows for targeted searches where appropriate and not just Search Terms; and finally, clarifies the process for negotiating TAR as an alternative to Search Terms.

**Third**, Plaintiffs amend Section 6(b)(i) to conform to the changes in 6(a) (i.e., that the protocol applies equally to future RFPs, not just the initial set from last August).

**Fourth**, Plaintiffs amend Section 6(b)(ii) to clarify that the producing party must propose Search Terms whenever new custodians are agreed or ordered; currently, the protocol is silent on how to start negotiations when new custodians are added, which Google is using as an excuse to propose **_no_** Search Terms for the new custodians this Court added two months ago.[1]

**Sixth**, Plaintiffs amend Section 6(b)(iii) to clarify that if the producing party's system cannot handle certain wildcards or other common search term syntax (Google falsely calls them "syntax errors") the protocol requires that the parties have their experts meet within 5 business days to solve the "errors" and still meet the 14-day deadline to produce hit counts.

**Seventh**, Plaintiffs add new Section 6(b)(v) to clarify that if the producing party raises a "facial relevance" challenge to any term, that challenge cannot be an excuse to shut down the process. Google has the right raise relevance objections, but it should not relieve Google of the obligation to provide hit counts in the meantime. In the past Google has unfairly used "facial" challenges to just freeze compliance with other obligations, adding weeks of delay.

**Eighth**, Plaintiffs add new Section 6(b)(vi) to clarify that Google cannot demand that disputes be reduced to writing as a precondition for agreeing to confer over disputes. In the past, Google has held the meet-and-confer process hostage until Plaintiffs reduce certain positions to writing, whereas the more efficient route is to just get on a call and discuss the dispute.

**Ninth**, Plaintiffs add new Section 6(b)(viii) to clarify what should be common sense – that as Plaintiffs' understanding of the facts evolves, we may propose new Search Terms. Plaintiffs are willing to accept (and explicitly propose) sensible caps on how many times this may be done.

**4.      Plaintiffs' Response to Google's Position:**   Google's position below illustrates Plaintiffs' points well. Although the current ESI Protocol governs both <u>custodians</u> and <u>search terms</u>, there are currently no disputes regarding custodians – Google proposed an initial set; Plaintiffs proposed more; the parties presented their views to the Court, and the Court resolved the dispute approximately down the middle, each step as prescribed by the Protocol. The search term disputes, in contrast, have languished, either because Google refused to comply with the Protocol (in the case of the hit reports) or manufactured "ambiguities" to justify delay upon delay.

---

[1] This is perhaps the most shocking breakdown of process. The Court not only added new custodians, but also rejected Google's proposal to use an artificially limited set of ten Search Terms. Dkt. No. 220-1, Dispute 1.6. Google's reaction? **_Propose no Search Terms_** (not even the original ten!), because the ESI Protocol does not explicitly tell them to do anything. This has to stop.

Case No. 5:20-cv-5146-LHK-SVK

JOINT SUBMISSION PURSUANT TO DKT. 220-1 RE: ESI SEARCH TERMS AND CUSTODIANS

1   The solution is to resolve the ambiguities in the ESI Protocol to make it functional again. Google's proposal instead is to accept the deficiencies and impose arbitrary caps and limits that will incentivize more obstruction. Thus, while Plaintiffs agree with Google's idea below that there should be a fixed deadline to complete negotiations over alleged "syntax errors" (a concept which is also included in Plaintiffs' proposed amended Section 6), Google's other proposals fall short:

   Syntax Errors: the ESI Protocol should include a duty to confer with each side's ESI experts whenever a party alleges syntax errors. Google's proposal has always been to force Plaintiffs to guess, or as one Court put it, "go fish,"[2] and Google's proposal does not address it.

   Hit Caps: Google also proposes to arbitrarily limit the number of "hits" (without clarifying whether multiple "hits" in the same or duplicate documents are counted once or many times), ignoring that the parties already negotiated a method to evaluate burdens: the hit reports. Often (as here) hit reports will illuminate that one or two search terms are responsible for the bulk of the burdens, and the reports are a smarter way to guide negotiations rather than an arbitrary hit cap.

   End Dates: Google proposes a hard date after which no further search terms or custodians may be proposed. Fixed dates are premature at this point and easily incorporated into the "good cause" standard which the Court has already included in the protocol.

**GOOGLE'S STATEMENT:**

   The parties agree that the process outlined in Section 6 of the ESI Protocol is not working. Each side offers dueling exhibits that lay out how this process can be rescued, but those visions differ drastically. In stark contrast to the *Brown* action, Plaintiffs have used the Protocol as a sword and shield—demanding that Google comply with downstream provisions (e.g., providing hit counts and summarizing non-responsive documents) while blatantly refusing to correct basic yet threshold issues in their sole control (i.e., syntax errors). That is no way to conduct discovery.

   Google has held up its end of the bargain: it proposed search terms and custodians as the Protocol requires. For its part, Plaintiffs took those terms and categorically replaced most "AND" connectors with "OR"—transforming Google's tailored and reasonable proposal into a facially unreasonable one: crafting 16,000+ discrete searches that (unsurprisingly) yielded 6.5 million hits. Plaintiffs then failed to negotiate those terms (and have neither revised nor withdrawn a *single one* despite receiving hit reports back in May). Among other scorched-earth tactics, Plaintiffs insist on indiscriminate terms like <priva*>, <spy*>, <track*>, and <monitor*> even after this Court struck narrower terms in *Brown* as too broad. The Protocol need not expressly prohibit these types of practices; the unproductive nature of such tactics are obvious on their face.

   Compounding matters, easy-to-fix syntax issues were cured only after a *four-month delay*, and only after *Google* suggested revisions guessing at what Plaintiffs intended (e.g., <us*> could mean use, using, or used, but also user, username, usage, usual, useful, usable, and usability). But Google should not have to speculate as to the discovery Plaintiffs seek. Now the parties must trim these hits, yet Plaintiffs offer no path for doing so. Meanwhile—nearly a year into this case—and despite

---

[2] *See Moore v. Publicis Groupe*, 287 F.R.D. 182, 183, 190-91 (S.D.N.Y. 2012), *adopted sub nom. Moore v. Publicis Groupe SA*, 2012 WL 1446534 (S.D.N.Y. Apr. 26, 2012) ("[T]he way lawyers choose keywords is the equivalent of the child's game of 'Go Fish.' The requesting party guesses which keywords might produce evidence to support its case without having much, if any, knowledge of the responding party's 'cards' (*i.e.*, the terminology used by the responding party's custodians). Indeed, the responding party's counsel often does not know what is in its own client's 'cards.'").

receiving thousands of pages of discovery, Plaintiffs have not propounded new RFPs. Google remains ready to review documents, only to be hamstrung by a lack of cooperation.

To comply with the schedule (which Plaintiffs vigorously opposed extending) and ensure burdens are proportional, seven things must happen, as set forth below.  Google submits its Proposed Order and **Exhibit B**, which redlines Section 6. Google requests that this be entered as the operative protocol governing current and future custodians and search term negotiations, which will put the parties back on track towards completing discovery in the remaining time left.

*1. Gaps in the Current Process*.  The Protocol is silent on certain nuances that have hampered the resolution of search terms.  For example, the Protocol lacks (i) a deadline for Plaintiffs to correct syntax errors or revise terms due to burden, and (ii) a process to address relevance concerns when Plaintiffs demand terms that appear facially irrelevant (e.g., <Gjid>, <Tid>, <*Gid>).  These are gating issues. As but one example, Google cannot evaluate types of non-responsiveness documents pulled in by burdensome terms until it knows *why* Plaintiffs proposed terms like <Gjid>, <Tid>, <*Gid> in the first place.  Because revisions are needed to make these basic points, Google's redline does so.  *See generally* Ex. B, § 6(d)(ii)(b).  Plaintiffs' competing proposals are too cumbersome in some respects and inadequate in others: for example, mandating that ESI "experts" meet for every syntax error is unnecessary and wasteful.  The last Court-ordered meet and confer addressed such errors; the logic for Google's ECA database will not change. Google agrees, however, that a method to efficiently resolve these errors is required.  *See* Ex. B, §  6(d)(i)(a).

*2. Process for Resolving February Search Terms*.  These terms have been negotiated in spurts and starts.  To  move the parties forward, Google proposes that the parties negotiate (or the Court impose) a limit on the hits Google must review.  *See* Ex. B, § 6(c)(ii).  This ensures Plaintiffs control their own fate as to the type of documents they seek, but also that Google not be forced to review the burdensome, disproportionate universe of 6.5 million hits.  A fair number of hits to review at this juncture is 350,000, similar to the document hits in *Brown* for 17 substantial completion custodians. The *Brown* and *Calhoun* cases are related and involve similar issues; *Calhoun* is not entitled to stonewall negotiations and insist Google review 18 times the number of hits it would get had they engaged in reasonable negotiations. If the Court orders this cap, Plaintiffs will have more freedom to craft terms of their choosing without second-guessing by Google or the Court.

*3. Deadline to Add New Custodians*.  Adherence to the schedule necessitates that requests for new custodians be made three months before fact discovery closes. *See* Ex. B, § 6(b). This will afford the parties the required time to address such requests, including to meet and confer over Plaintiffs' good cause arguments and  brief any disputes (which Google proposes the parties do by October 2). *Id*. Google then has to collect ESI, run search terms, review and produce documents; and Plaintiffs have to review them, notice depositions, and take depositions—all by December 2.

*4. The "Good Cause" Standard for New Custodians.* Section 6(b)(ii) and Dkt. 173-1 require Plaintiffs to show good cause for *all* new custodians. Plaintiffs cannot continue to burden-shift by naming dozens of individuals without making *any* good cause showing, particularly after receiving 50,000 pages of discovery, taking two depositions, and receiving the transcript for one more.

*5. Cap on the Number of Custodians.* This Court advised that 30 to 50 custodians may be appropriate. *See* Dkt. 173-1. There are currently 42, including the (i) original 18; (ii) the 4 Google agreed to in May; (iii) the 3 ordered by the Court (Dkt. No. 192-1); and (iv) the 17 officers and directors for RFP 8B. This universe of 42 is comprehensive in scope, and leaves little reason for expansion.  However,

in view of the good cause standard, a hard cap of 50 (including officers and directors) is reasonable. Discovery in *Brown* has shown the significant overlap between custodians across RFPs, so this limit should apply to current and future RFPs (as Google identified custodians who would have relevant, non-duplicative ESI pertinent to Plaintiffs' allegations in their entirety).

***6. Search Terms Related to Plaintiffs' First Set of RFPs.*** No additional terms are appropriate or warranted for these RFPs, served *ten months ago*. The period for proposing terms has expired and there is no good cause to add new terms more than four months later. Moreover, the parties still have a dispute over the millions of hits Plaintiffs seek. Google has made numerous compromises to accommodate their delayed resolution of search terms, including by adding 16 more terms *sua sponte*. Adding even more now would be extremely prejudicial. For the new custodians without search terms, Google will apply the original terms it disclosed in January.  *See* Ex. B, § 6(c)(iii).

***7. Search Terms and Custodians Related to Plaintiffs' Future RFPs***. For reasons stated *supra*, the schedule requires a deadline for proposing terms and custodians for future RFPs of three months before fact discovery closes. The Protocol is silent on this, and thus Google's redline offers sensible deadlines keyed to service of its responses and objections, *see* Ex. B, §§ 6(b), 6(d)(ii)—*not* the RFPs (without regard for the responses, as Plaintiffs inappropriately propose). The Court should also reject their attempt to catapult discovery backwards by restarting the clock on ESI discussions—a process the parties completed for *all Google ESI sources* back in January.

**Response to Plaintiffs' Statement:**  In the interest of efficiency, Google responds above to the most problematic and unworkable of Plaintiffs' proposals; however, there are many other reasons why such proposals are inefficient, counterintuitive, and unfairly one-sided.  Google welcomes the opportunity to submit further briefing on these areas, if the Court would find that helpful.

1

2

DATED: June 25, 2021

3

**BLEICHMAR FONTI & AULD LLP**

**QUINN EMANUEL URQUHART & SULLIVAN, LLP**

4

5

By:      */s/ Lesley Weaver*
Lesley Weaver (Cal. Bar No. 191305)
Angelica M. Ornelas (Cal. Bar No. 285929)
Joshua D. Samra (Cal. Bar No. 313050)
555 12th Street, Suite 1600
Oakland, CA 94607
Tel.: (415) 445-4003
Fax: (415) 445-4020
lweaver@bfalaw.com
aornelas@bfalaw.com
jsamra@bfalaw.com

By: */s/ Andrew H. Schapiro*
Andrew H. Schapiro (admitted pro hac vice)
andrewschapiro@quinnemanuel.com
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606
Telephone: (312) 705-7400
Facsimile: (312) 705-7401

6

7

8

9

Stephen A. Broome (CA Bar No. 314605)
sb@quinnemanuel.com
Viola Trebicka (CA Bar No. 269526)
violatrebicka@quinnemanuel.com
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

10

**KAPLAN FOX & KILSHEIMER LLP**

11

12

By:      */s/ David A. Straite*
David A. Straite (admitted *pro hac vice*)
Aaron L. Schwartz (admitted *pro hac vice*)
850 Third Avenue
New York, NY 10022
Telephone: (212) 687-1980
Facsimile: (212) 687-7714
dstraite@kaplanfox.com

13

14

Jomaire Crawford (admitted pro hac vice)
jomairecrawford@quinnemanuel.com
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100

15

16

17

Laurence D. King (State Bar No. 206423)
Mario Choi (State Bar No. 243409)
1999 Harrison Street, Suite 1560
Oakland, CA 94612
Tel.:      (415) 772-4700
Fax:      (415) 772-4707
lking@kaplanfox.com

18

Josef Ansorge (admitted pro hac vice)
josefansorge@quinnemanuel.com
Carly Spilly (admitted pro hac vice)
carlspilly@quinnemanuel.com
1300 I Street NW, Suite 900
Washington D.C., 20005
Telephone: (202) 538-8000
Facsimile: (202) 538-8100

19

20

21

**SIMMONS HANLY CONROY LLC**

22

By:      */s/ Jay Barnes*
Jason 'Jay' Barnes (admitted *pro hac vice*)
Mitchell M. Breit (admitted *pro hac vice*)
An Truong (admitted *pro hac vice*)
112 Madison Avenue, 7th Floor
New York, NY 10016
Tel.: (212) 784-6400
Fax: (212) 213-5949
mbreit@simmonsfirm.com
jaybarnes@simmonsfirm.com

23

Jonathan Tse (CA Bar No. 305468)
jonathantse@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, CA 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

24

25

26

27

*Attorneys for Defendant Google LLC*

28

*Counsel for Plaintiffs*

8

1

2
## ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1(i)(3)

3
I am the ECF user whose ID and password are being used to file this Joint Discovery

4
Statement. Pursuant to Civil L.R. 5-1(i)(3), I hereby attest that each of the signatories identified above

5
has concurred in the filing of this document.

6

7
Dated: June 25, 2021                                    By_____*Andrew H. Schapiro*_____

8
                                                           Andrew H. Schapiro
                                                           *Counsel on behalf of Defendant Google LLC*
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28