LATHAM & WATKINS LLP
Elizabeth L. Deeley (CA Bar No. 230798)
*elizabeth.deeley@lw.com*
Melanie M. Blunschi (CA Bar No. 234264)
*melanie.blunschi@lw.com*
Nicole C. Valco (CA Bar No. 258506)
*nicole.valco@lw.com*
505 Montgomery Street, Suite 2000
San Francisco, CA 94111-6538
Telephone: +1.415.391.0600

Andrew B. Clubok (*pro hac vice*)
*andrew.clubok@lw.com*
Susan E. Engel (*pro hac vice*)
*susan.engel@lw.com*
555 Eleventh Street, N.W., Suite 1000
Washington, D.C. 20004-1304
Telephone: +1.202.637.2200

*Attorneys for Defendant Meta Platforms, Inc.*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| DZ RESERVE and CAIN MAXWELL (d/b/a MAX MARTIALIS), individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>META PLATFORMS, INC.,<br><br>Defendant. | Case No. 3:18-cv-04978 JD<br><br>**META PLATFORMS, INC.'S REPLY IN SUPPORT OF ITS MOTION TO EXCLUDE THE EXPERT REPORT AND TESTIMONY OF BRUCE MCFARLANE AND PORTIONS OF THE EXPERT REPORT AND TESTIMONY OF DR. TIMOTHY ROUGHGARDEN**<br><br>Date: June 23, 2022<br>Time: 10:00 a.m.<br>Court: Courtroom 11, 19th Floor<br>Hon. James Donato |

REDACTED VERSION

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

META PLATFORM, INC.'S REPLY ISO MOT. TO EXCL.
B. MCFARLANE, AND T. ROUGHGARDEN
CASE NO. 3:18-CV-04978 JD

# TABLE OF CONTENTS

Page

I. INTRODUCTION ........ 1

II. MCFARLANE'S OPINION SHOULD BE EXCLUDED FOR ALL PURPOSES ........ 2

III. ROUGHGARDEN'S 8.9% PRICE PREMIUM OPINION SHOULD BE EXCLUDED BECAUSE IT HAS NO "INDEPENDENT BASIS" ........ 3

A. Roughgarden's 8.9% Price Premium Calculation Depends On McFarlane ........ 3

B. Roughgarden Has No "Independent Basis" For The Key Input To His 8.9% Price Premium Calculation ........ 5

1. Plaintiffs' Counsel's "Assumption" Is Not An "Independent Basis" For Roughgarden's Opinion ........ 5

2. The Chrzan Email Cannot Provide An "Independent Basis" For Roughgarden's Price Premium Opinion, Nor Can Plaintiffs Substitute "Any Other Number" Without Evidentiary Support ........ 7

IV. CONCLUSION ........ 10

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

i

META'S REPLY ISO MOT. TO EXCLUDE
B. MCFARLANE, T. ROUGHGARDEN
CASE NO. 3:18-CV-04978 JD

## TABLE OF AUTHORITIES

Page(s)

### CASES

*In re Actiq Sales & Mktg. Practices Litig.*,
No. 07–4492, 2014 WL 3572932 (E.D. Pa. July 21, 2014) .......... 6

*Avago Tech. Gen. IP PTE, Ltd. v. Elan Microelecs. Corp.*,
No. C 04-05385, 2008 WL 11338278 (N.D. Cal. Apr. 23, 2008) .......... 6

*Bally v. State Farm Life Ins. Co.*,
335 F.R.D. 288 (N.D. Cal. 2020) .......... 6

*Bergen v. F/V St. Patrick*,
816 F.2d 1345 (9th Cir. 1987) .......... 6

*Caldwell v. City of San Francisco*,
No. 12-cv-01892-DMR, 2021 WL 1391464 (N.D. Cal. Apr. 13, 2021) .......... 6

*In re Capacitators Antitrust Litig.*,
No. 14-cv-03264-JD, 2020 WL 870927 (N.D. Cal. Feb. 21, 2020) .......... 6

*Carrillo-Gonzalez v. I.N.S.*,
353 F.3d 1077 (9th Cir. 2003) .......... 7

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
No. C-07-5944 JST, 2017 WL 10434367 (N.D. Cal. Jan. 23, 2017) .......... 6, 8

*Cholakyan v. Mercedes-Benz, USA, LLC*,
281 F.R.D. 534 (C.D. Cal. 2012) .......... 8

*City of Pomona v. SQM N. Am. Corp.*,
750 F.3d 1036 (9th Cir. 2014) .......... 10

*Dorn v. Burlington N. Santa Fe. R. Co.*,
397 F.3d 1183 (9th Cir. 2005) .......... 6

*Elliott v. Google Inc.*,
45 F. Supp. 3d 1156 (D. Ariz. 2014) .......... 8

*Enplas Display Device Corp. v. Seoul Semiconductor Co. Ltd.*,
No. 13-cv-05038-NC, 2015 WL 9303980 (N.D. Cal. Dec. 22, 2015) .......... 6

*Gen. Elec. Co. v. Joiner*,
522 U.S. 136 (1997) .......... 9, 10

*Guidroz-Brault v. Mo. Pac. R. Co.*,
254 F.3d 825 (9th Cir. 2001) .......... 6

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

ii

META'S REPLY ISO MOT. TO EXCLUDE
B. MCFARLANE, T. ROUGHGARDEN
CASE NO. 3:18-CV-04978 JD

*Luke v. Family Care & Urgent Med. Clinics*,
323 F. App'x 496 (9th Cir. 2009) ....................10

*McGlinchy v. Shell Chem. Co.*,
845 F.2d 802 (9th Cir. 1988) ....................6

*McIntosh v. Monsanto Co.*,
462 F. Supp. 2d 1025 (E.D. Mo. 2006)....................6

*Monroe v. Zimmer U.S. Inc.*,
766 F. Supp. 2d 1012 (E.D. Cal. 2011)....................7

*In re MyFord Touch Consumer Litig.*,
291 F. Supp. 3d 936 (N.D. Cal. 2018) ....................9

*In re Namvar*,
No. CV 13-02664 GAF JCGX, 2014 WL 5810367 (C.D. Cal. Nov. 6, 2014)....................10

*Newkirk v. Conagra Foods, Inc.*,
438 F. App'x 607 (9th Cir. 2011) ....................10

*Razo v. Timec Co., Inc.*,
No. 15-cv-03414-MEJ, 2016 WL 6576625 (N.D. Cal. Nov. 7, 2016) ....................7

*Villalpando v. Exel Direct Inc.*,
No. 12-cv-04137-JCS, 2016 WL 1598663 (N.D. Cal. Apr. 21, 2016) ....................6

**RULES**

Fed. R. Civ. P. 26....................8, 10

Fed. R. Civ. P. 37....................8, 10

Fed. R. Evid. 702 ....................2, 6

## I. INTRODUCTION

Meta filed the instant Motion to exclude at any stage of this case (a) the report and testimony of Bruce McFarlane and (b) the portions of the report and testimony from Timothy Roughgarden that rely on McFarlane, specifically Roughgarden's opinion that advertisers would have paid 8.9% less if Meta had not provided Potential Reach estimates at all. After Meta filed this Motion, the Court granted Meta's motion to exclude McFarlane and Roughgarden at the class certification stage. Dkt. 388 ("Class Cert. Order") at 14. The Court excluded McFarlane's report and testimony in its entirety, and any portion of Roughgarden's opinions drawn from McFarlane's work "unless an independent basis for it is demonstrated," which the Court declined to address on the record before it. *Id.* Plaintiffs admit that the Court's decision bars consideration of McFarlane's report or testimony, but contend that Roughgarden's report and testimony should still be considered, and they ask the Court to rely on it in opposition to Meta's Motion for Summary Judgment—meaning that Plaintiffs' assertion that the Class Cert. Order "makes the present Motion moot," Dkt. 392 ("Opp.") at 1, is wrong.

With McFarlane excluded, Roughgarden has no "independent basis" for his opinion that advertisers paid an 8.9% price premium because Meta provided Potential Reach estimates. Roughgarden's opinion hinges on McFarlane: to calculate his price premium, Roughgarden's auction simulation needs an input (or assumption) from *another expert* regarding how advertisers would change their budgets in a but-for world without the alleged misrepresentation. McFarlane's interpretation of an internal Meta document provided that crucial input for the 8.9% price premium. Specifically, McFarlane claimed that advertisers would have decreased their aggregate budgets by 8.5% (*i.e.*, collectively spent 8.5% less) if Meta had not provided Potential Reach estimates. Roughgarden then ran his auction simulation *assuming* that advertisers decreased their budgets by 8.5%, which generated the 8.9% price premium that he offers as his opinion. Both experts agree: McFarlane admitted that the interpretation of the document he offered in his report was "directly relevant to a crucial input in the calculation of the price premium: the change in advertisers' budgets that would have resulted had Facebook not provided its Potential Reach metric," Ex. 67 (Dkt. 385-32) ¶ 26, and Roughgarden admitted that [REDACTED]

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

META'S REPLY ISO MOT. TO EXCLUDE
B. MCFARLANE, T. ROUGHGARDEN
CASE NO. 3:18-CV-04978 JD

[REDACTED] [REDACTED], Ex. 129 at 88:14-21 (emphasis added).[1] Now that McFarlane has been excluded, Roughgarden has no basis to calculate his 8.9% price premium, and accordingly his price premium opinion should be excluded.

Recognizing this hole in Roughgarden's calculation, Plaintiffs attempt to concoct an "independent basis" for his opinion. Plaintiffs argue that Roughgarden did not rely on McFarlane at all; that Plaintiffs can substitute Roughgarden for McFarlane by having Roughgarden rely on the same underlying materials that McFarlane relied on, even though Roughgarden never reviewed those materials; and that the inputs to Roughgarden's auction simulation are only fungible "assumptions," the "reasonableness" of which "are matters of weight, not admissibility." Opp. at 3. None of Plaintiffs' arguments has merit. Roughgarden himself put it best when he admitted that he [REDACTED] [REDACTED]. Ex. 129 at 88:14-21. Finally, without an "independent basis" for Roughgarden's 8.9% price premium opinion, Plaintiffs ask for a mulligan: they claim that Roughgarden's opinion is "flexib[le]" and that Roughgarden can simply re-run his auction simulation "with any other number." Opp. at 3. But Roughgarden was not asked to consider and does not offer an opinion based on "any other number," and the Federal Rules plainly foreclose doing so now. Roughgarden's 8.9% price premium opinion should be excluded.

## II. MCFARLANE'S OPINION SHOULD BE EXCLUDED FOR ALL PURPOSES

For the reasons set forth in the Motion and recognized in the Court's Class Cert. Order—including that McFarlane "does not offer any specialized or scientific expertise, or anything beyond the typical knowledge and experience of a jury," Class Cert. Order at 14—McFarlane's report and testimony should be excluded for all purposes, including summary judgment and trial. Fed. R. Evid. 702. Plaintiffs do not dispute that McFarlane is excluded from this case. *See* Opp. at 1 (stating that the Class Cert. Order "makes the present Motion moot").

---

[1] Unless indicated, all "Ex." references are to exhibits to the concurrently filed Declaration of Melanie M. Blunschi in Support of Meta's Reply in Support of its Motion for Summary Judgment and Motions to Exclude. Previously filed exhibits are referred to by docket number.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

2

META'S REPLY ISO MOT. TO EXCLUDE
B. MCFARLANE, T. ROUGHGARDEN
CASE NO. 3:18-CV-04978 JD

## III. ROUGHGARDEN'S 8.9% PRICE PREMIUM OPINION SHOULD BE EXCLUDED BECAUSE IT HAS NO "INDEPENDENT BASIS"

In its Class Cert. Order, the Court excluded "any portion of Dr. Roughgarden's opinions that is drawn on Mr. McFarlane's work" unless Plaintiffs can demonstrate an "independent basis" for it. Class Cert. Order at 14. That ruling is fatal and warrants the complete exclusion of Roughgarden's 8.9% price premium because (1) Roughgarden's simulation depends on McFarlane for a necessary input, *i.e.*, the change in advertiser budgets if Potential Reach was removed, and (2) Roughgarden has no other independent basis for that input.

### A. Roughgarden's 8.9% Price Premium Calculation Depends On McFarlane

Roughgarden purports to calculate two price premiums through an auction simulation, which Plaintiffs' other experts use to calculate figures for two damages theories. The key input to Roughgarden's auction simulation is a change in advertiser budgets—and, importantly, Roughgarden relied on *other experts* to supply the budget change inputs for his simulations. There is no dispute that the 8.5% budget change is a necessary input for Roughgarden's 8.9% price premium, and that Roughgarden does not supply the 8.5% budget change assumption. Ex. 68 (Dkt. 385-33) ¶¶ 14, 18, 57-61. Roughgarden admitted it was "outside [his] assignment" to calculate the amount that advertisers would change their budgets, Ex. 129 at 156:8-20, and that [REDACTED] *Id.* at 88:14-21.

In the case of his 8.9% price premium, Roughgarden's calculation hinges on a budget input assumption that comes from McFarlane. Specifically, Roughgarden's 8.9% price premium calculation worked as follows: first, McFarlane interpreted an internal Meta document to claim that advertisers would have decreased their aggregate budgets by 8.5% without Potential Reach. Dkt. 385-32 ¶¶ 19, 26; Ex. 40 (Dkt. 385-15) at 143:11-144:22. Next, at Plaintiffs' counsel's instruction, Roughgarden fed the 8.5% budget decrease assumption (which Plaintiffs improperly characterize as an 8.5% decrease in demand based on the removal of Potential Reach estimates) into his auction simulation to calculate an 8.9% price premium. Dkt. 385-33 ¶¶ 14, 18. Finally, McFarlane used the 8.9% price premium to calculate a damages figure. Dkt. 385-32 ¶¶ 27-30.

The only source of the 8.5% budget change input is McFarlane. McFarlane claimed that

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

3

META'S REPLY ISO MOT. TO EXCLUDE
B. MCFARLANE, T. ROUGHGARDEN
CASE NO. 3:18-CV-04978 JD

eliminating Potential Reach estimates would cause advertisers to decrease their Meta ad budgets by an aggregate of 8-9% based on his "observation" about a single document (the "Chrzan Email," discussed *infra*). *See* Mot. at 11-13. McFarlane admitted that he is the source of the budget input for Roughgarden's simulation: in his report, McFarlane stated that his observation about the Chrzan Email is "directly relevant to a ***crucial input in the calculation of the price premium***: the change in advertisers' budgets that would have resulted had Facebook not provided its Potential Reach metric," and explained that this change in advertiser budgets "can be used to estimate a corresponding change in price" because Roughgarden "has quantified the change in price for Facebook ads that would have resulted from a specified decrease in advertisers' budgets." Dkt. 385-32 ¶ 26 (emphasis added). McFarlane also admitted at his deposition that Roughgarden "takes the midpoint, 8.5 percent of the 8 to 9 percent revenue impact" as an input, that ***Roughgarden "derived that because I [McFarlane] said the revenue impact is somewhere between 8 and 9 percent,"*** and the actual input to Roughgarden's calculation, the 8.5%, is "[b]ased on my [McFarlane's] 8 to 9 percent, yes." Dkt. 385-15 at 143:11-144:22 (emphasis added); *see also id.* at 66:6-15. McFarlane also admitted that "you can't get to [Roughgarden's opinion about] the 8.9 percent unless you accept, you know, what I've relied upon from the Chrzan email." *Id.* at 210:21-211:8; *see also id.* at 211:9-16 (Q: "And that 8 to 9 percent becomes the 8.5 percent budget reduction; right? . . . A: Yes, which becomes the 8.9 percent price premium. You are correct.").

In an attempt to insulate Roughgarden, Plaintiffs' counsel stepped in McFarlane's shoes and communicated McFarlane's interpretation to Roughgarden as an input. Specifically, Plaintiffs' counsel instructed Roughgarden to assume for purposes of his simulation that without Potential Reach, advertiser budgets would fall by 8.5%. Dkt. 385-33 ¶ 14 ("*Second*, I have been ***instructed by counsel*** to assume that removing the Potential Reach metric would cause an 8.5% decrease in aggregate advertiser budgets for Facebook Advertisements." (emphasis added)). But the only "factual" support underlying that assumption was McFarlane—namely, McFarlane's interpretation of the Chrzan Email—regardless of how it was communicated to Roughgarden. Ex. 129 at 87:20-23 (Roughgarden [REDACTED] [REDACTED]; Ex. 42 (Dkt. 385-17) at 160:13-22 (when asked about the

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

4

META'S REPLY ISO MOT. TO EXCLUDE
B. MCFARLANE, T. ROUGHGARDEN
CASE NO. 3:18-CV-04978 JD

"source of the 8.5 percent assumption," Roughgarden testified that he would need to "review Dr. Tadelis' report" where "he discussed what he called the McFarlane's [sic] damages theory"). In fact, Roughgarden testified that he had never seen the Chrzan Email prior to his deposition. Dkt. 385-17 at 159:14-160:4 ("I cannot recall seeing this specific document" prior to writing his report); 160:5-12 ("I really don't know whether or not this document's the basis for the change in demand assumption I was asked to carry out."); 161:4-14 (not offering an opinion regarding its use to support the 8.5% assumption).

**B. Roughgarden Has No "Independent Basis" For The Key Input To His 8.9% Price Premium Calculation**

Plaintiffs argue that—notwithstanding McFarlane's exclusion—Roughgarden has an "independent basis" for his 8.9% price premium opinion, but that is simply false: (1) Plaintiffs never identify any independent basis for Roughgarden's calculation, and the record shows that the only remaining support for his 8.9% price premium is ***Plaintiffs' counsel***; and (2) Plaintiffs cannot repurpose Roughgarden's opinions at trial to establish a new independent basis for his opinion.

1. <u>Plaintiffs' Counsel's "Assumption" Is Not An "Independent Basis" For Roughgarden's Opinion</u>

Plaintiffs argue that Roughgarden did not rely on McFarlane. Not so. First, Plaintiffs argue that Roughgarden did not rely on McFarlane because "Roughgarden's Report never mentions McFarlane or his opinions." Opp. at 1. But that simply begs the question: what is the basis for Roughgarden's opinion? Roughgarden admitted that [REDACTED] [REDACTED], Ex. 129 at 88:14-21, and Plaintiffs do not even attempt to argue that he does—and, tellingly, Plaintiffs never identify the "true" source of the input. The reason is that ***Plaintiffs' counsel*** provided the input to Roughgarden. *See supra* Section II.A. And while counsel's assumption was supported by McFarlane at the time it was made, now that McFarlane has been excluded that leaves ***Plaintiffs' counsel as the sole support*** for Roughgarden's price premium calculation.

That alone is sufficient to exclude Roughgarden's opinion as not based on sufficient facts

or data in the record.[2] *See* Fed. R. Evid. 702(b); *see also Caldwell v. City of San Francisco*, No. 12-cv-01892-DMR, 2021 WL 1391464, at *6 (N.D. Cal. Apr. 13, 2021) (excluding expert testimony of future earnings in certain fields where the record did not offer a sufficient basis for the expert's assumption that the plaintiff could have started full time work in those fields); *Guidroz-Brault v. Mo. Pac. R. Co.*, 254 F.3d 825, 830 (9th Cir. 2001) (affirming exclusion of expert opinion because it rested on an assumption that "finds no support in the . . . evidence in the record"); *McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 807 (9th Cir. 1988) (affirming exclusion of expert's study which "rests on unsupported assumptions," and "speculation" that "has no basis in the record"); *Enplas Display Device Corp. v. Seoul Semiconductor Co. Ltd.*, No. 13-cv-05038-NC, 2015 WL 9303980, at *4 (N.D. Cal. Dec. 22, 2015) (excluding expert's assumption that certain lenses were infringing the plaintiff's patent without any basis for the assumption). Plaintiffs' attempt to backdoor McFarlane's unreliable opinions in through Roughgarden is improper and should be rejected, as Roughgarden cannot "simply repeat[] the unreliable opinion of another expert" (McFarlane) that has now been excluded. *In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. C-07-5944 JST, 2017 WL 10434367, at *2 (N.D. Cal. Jan. 23, 2017) (rejecting defendant's attempt to "structure their expert evidence such that [one expert] can lob unreliable opinions at [the other party], avoid attack by disavowing reliance on those opinions, and then inject

---

[2] The cases Plaintiffs cite without explanation in footnote 1 of their Opposition are inapposite because none involves a situation where, as here, an expert's key assumption lacks evidentiary support. *See Dorn v. Burlington N. Santa Fe. R. Co.*, 397 F.3d 1183, 1196 (9th Cir. 2005) (holding that the district court improperly weighed credibility of expert testimony in battle of the experts); *Bergen v. F/V St. Patrick*, 816 F.2d 1345, 1352 (9th Cir. 1987) (explaining that criticisms regarding expert's assumption based on hearsay evidence went to weight); *Bally v. State Farm Life Ins. Co.*, 335 F.R.D. 288, 298-99 (N.D. Cal. 2020) (declining to exclude expert analyzed why certain assumptions he used were reasonable); *In re Capacitators Antitrust Litig.*, No. 14-cv-03264-JD, 2020 WL 870927, at *2 (N.D. Cal. Feb. 21, 2020) (involving challenge to whether expert's model accounted for all variables); *Villalpando v. Exel Direct Inc.*, No. 12-cv-04137-JCS, 2016 WL 1598663, at *19 (N.D. Cal. Apr. 21, 2016) (holding challenges to expert's assumptions went to weight where there was no showing methodology was unreliable or "lacking any factual basis"); *In re Actiq Sales & Mktg. Practices Litig.*, No. 07-4492, 2014 WL 3572932, at *13 (E.D. Pa. July 21, 2014) (declining to exclude expert whose assumption was based on evidence that the expert analyzed and averred supported the assumption); *Avago Tech. Gen. IP PTE, Ltd. v. Elan Microelecs. Corp.*, No. C 04-05385, 2008 WL 11338278, at *2 (N.D. Cal. Apr. 23, 2008) (holding criticisms regarding expert's assumption relying on unverified data went to weight); *McIntosh v. Monsanto Co.*, 462 F. Supp. 2d 1025, 1033 (E.D. Mo. 2006) (holding criticisms regarding antitrust expert's opinions based on defendant's internal documents, sales, and prices went to weight).

those opinions under the guise of a different expert").

This is also fatal at summary judgment, as Plaintiffs cannot fill the hole left by McFarlane's exclusion with an assumption from counsel at all (much less one that is based on excluded evidence). *See, e.g.*, *Carrillo-Gonzalez v. I.N.S.*, 353 F.3d 1077, 1079 (9th Cir. 2003) (explaining that statements and arguments by counsel are not evidence); *Razo v. Timec Co., Inc.*, No. 15-cv-03414-MEJ, 2016 WL 6576625, at *10 (N.D. Cal. Nov. 7, 2016) (granting summary judgment because "Plaintiff's counsel's representation and/or interpretations of these documents are not sufficient to create a genuine issue of fact"); *Monroe v. Zimmer U.S. Inc.*, 766 F. Supp. 2d 1012, 1034 (E.D. Cal. 2011) (no genuine issue of material fact because "[t]he court cannot accept counsel's interpretation of the medical literature").

Second, Plaintiffs attempt to use their own convoluted damages model as a defense, arguing that Meta "has it backwards" because "McFarlane relied on Roughgarden (rather than Roughgarden relying on McFarlane)." Opp. at 2. As explained, McFarlane and Roughgarden both rely on each other: (1) McFarlane interprets a document to come up with a change in advertiser budgets if Potential Reach were removed, (2) Roughgarden uses that budget change as an input to calculate a price premium, and (3) McFarlane uses Roughgarden's price premium to calculate classwide damages. *See supra* Section II.A. In arguing that Meta "has it backwards," Opp. at 2, Plaintiffs focus solely on the last step—McFarlane's use of Roughgarden's price premium to calculate damages—and ignore Roughgarden's reliance on McFarlane for the budget input, which is the key issue here. Because the only source of the budget input for Roughgarden's calculation was McFarlane, and that link was severed by the Court's exclusion of McFarlane, Roughgarden has no "independent basis" for his 8.9% price premium calculation.

2. The Chrzan Email Cannot Provide An "Independent Basis" For Roughgarden's Price Premium Opinion, Nor Can Plaintiffs Substitute "Any Other Number" Without Evidentiary Support

Plaintiffs also argue that Roughgarden can separately calculate his 8.9% price premium based on the Chrzan Email or "any other number" that Plaintiffs and Roughgarden may come up with at trial. Opp. at 2-3. Plaintiffs misstate the record and the law.

*First*, Roughgarden never reviewed or relied upon the Chrzan Email, and thus it plainly

did not provide an "independent basis" of support for his opinion. *See* Dkt. 385-17 at 159:14-160:4 ("I cannot recall seeing this specific document" prior to writing his report); 160:5-12 ("I really don't know whether or not this document's the basis for the change in demand assumption I was asked to carry out."); Dkt. 385-33 at Ex. 2 ("Materials Relied Upon" does not include Chrzan Email). Indeed, Plaintiffs' argument is *not* about the work Roughgarden actually did or whether there *currently is* "an independent basis" supporting Roughgarden's price premium calculation, Class Cert. Order at 14, but whether they can find *new* support for Roughgarden's opinion at trial. Plaintiffs' attempt to rewrite Roughgarden's opinion now—almost 1.5 years after he served his report—would violate Rule 26(a)(2)(B), and should not be allowed. Fed. R. Civ. P. 37(c)(1).

*Second*, even setting aside their expert disclosure obligations, Plaintiffs cannot simply swap out sources for Roughgarden and call it a day. If Roughgarden will rely on the Chrzan Email as showing how advertisers would change their budgets if Potential Reach estimates were removed (as Plaintiffs now claim), he must demonstrate a reliable basis for that opinion. *See In re Cathode Ray Tube (CRT) Antitrust Litig.*, 2017 WL 10434367, at *2 (excluding portions of expert report that relied on unreliable opinion of another expert regarding overcharge rates where the expert disclaimed having his own opinion regarding the amount of overcharges); *Elliott v. Google Inc.*, 45 F. Supp. 3d 1156, 1168 (D. Ariz. 2014) ("An expert who seeks to opine about the results of a survey that he or she did not personally conduct still must possess the requisite scientific background and familiarity with survey methodology."); *Cholakyan v. Mercedes-Benz*, *USA, LLC*, 281 F.R.D. 534, 547 (C.D. Cal. 2012) (excluding expert who "base[d] his conclusions on a single vehicle inspection that did not involve independent testing"). But he cannot: he admitted he never reviewed the Chrzan Email and did nothing to verify if the 8.5% budget reduction assumption was reasonable or reliable (*see* Section II.A), and he is not qualified to (and does not) offer an expert opinion whether removing Potential Reach estimates would impact advertiser budgets.

In any event, no expert—much less Roughgarden—could reliably use the Chrzan Email as Plaintiffs claim. The Chrzan Email does not state what Plaintiffs claim it does, and Roughgarden cannot make the logical leap necessary for it to be an input to his calculation. *See* Dkt. 391 at 21 (citing Pls.' Ex. 104); Dkt. 385-32 ¶ 26 (McFarlane's interpretation that Chrzan Email shows "the

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

8

META'S REPLY ISO MOT. TO EXCLUDE
B. MCFARLANE, T. ROUGHGARDEN
CASE NO. 3:18-CV-04978 JD

change in advertisers' budgets that would have resulted had Facebook not provided its Potential Reach metric"). Even under Plaintiffs' misreading,[3] the Chrzan Email only refers to the *absence* of reach estimates, not the impact of changing the description of Potential Reach from "people" to "accounts."[4] And, with McFarlane excluded, the only evidence about the Chrzan Email is undisputed, sworn testimony from one of the participants in the conversation, Meta's Josh Geller, who explained that McFarlane's interpretation—which Plaintiffs now try to hand off to Roughgarden—is entirely wrong: you cannot "extrapolate the 8-9% revenue impact Mr. Chrzan mentioned in this Task to what would happen if Facebook eliminated reach estimates" for Ads Manager. Ex. 62 (Dkt. 377-16) ¶ 8. Geller went on to explain that the Chrzan Email referred to an issue on Lightweight Interfaces (not Ads Manager), an advertising platform not at issue in this litigation and irrelevant to the certified class, and that interface was incorrectly showing reach estimates of zero (it had not removed reach estimates entirely or described them as estimates of "accounts"). *See id.* ¶¶ 4-5. Geller's undisputed testimony forecloses Roughgarden's reliance on the Chrzan Email. *See, e.g.*, *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 145-47 (1997) (holding that an expert could not rely on studies specifically contradicted by their authors); *In re MyFord Touch Consumer Litig.*, 291 F. Supp. 3d 936, 967 (N.D. Cal. 2018) (court may strike an expert if their "factual assumptions are 'indisputably wrong'" (citation omitted)).

Without any witnesses to rebut Geller's testimony, Plaintiffs attempt to wave his testimony away by calling his declaration "client-prepared and lawyer-orchestrated 'facts,'" and claiming that the "reasonableness" of any reliance on the Chrzan Email is an issue of weight, not admissibility. Opp. at 2-3. Plaintiffs are wrong on both accounts. Plaintiffs cannot complain about Geller's declaration after they buried their heads in the sand and *never* bothered to depose Geller even though he was disclosed in Meta's initial disclosures in January 2019. Indeed,

---

[3] Plaintiffs incorrectly assert that Meta concedes that the Chrzan Email is admissible. Opp. at 2. There is no foundation for Plaintiffs' submission of the Chrzan Email, and Meta expects to challenge its admissibility at the appropriate time (*i.e.*, not through a *Daubert*).

[4] Roughgarden's price premium opinion does not capture this theory either. *See* 385-32 ¶ 14 (stating that his price premium is based on a but-for world "where Facebook does not provide the Potential Reach metric to advertisers").

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

9

META'S REPLY ISO MOT. TO EXCLUDE
B. MCFARLANE, T. ROUGHGARDEN
CASE NO. 3:18-CV-04978 JD

Plaintiffs chose not to ask a single fact witness about the Chrzan Email, which was produced nearly a year before the close of fact discovery. And contrary to Plaintiffs' assertion, the reliability of any reliance on the Chrzan Email is a question of *admissibility*: an expert is required "to justify a foundational assumption or refute contrary record evidence." *City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1049 (9th Cir. 2014) (citing *Joiner*, 552 U.S. at 146); *see also Newkirk v. Conagra Foods, Inc.*, 438 F. App'x 607, 609 (9th Cir. 2011) (expert cannot base opinions on unjustified foundational assumptions).[5]

Finally, Plaintiffs suggest that—if the McFarlane input fails—Roughgarden can re-do his simulation "with any other number" and come up with a new price premium, because his opinion is "flexib[le]." Opp. at 3. That is not the law. *See* Fed. R. Civ. P. 26(a)(2)(B)(i) (requiring disclosure of "all opinions the witness will express"); *see also Luke v. Family Care & Urgent Med. Clinics*, 323 F. App'x 496, 500 (9th Cir. 2009) (holding that party cannot "revise her disclosures in light of her opponent's challenges to the analysis and conclusions therein"); *In re Namvar*, No. CV 13-02664 GAF JCGX, 2014 WL 5810367, at *5 (C.D. Cal. Nov. 6, 2014) (holding that "changes in an expert's methodology or the addition or expansion of alternative methods considered by the expert in forming his opinions are necessarily material and significant"). Roughgarden's report does not disclose other budget changes for the use of "people" versus "accounts," much less a new price premium opinion, and he stated at his deposition that his report [REDACTED] Ex. 129 at 38:11-25. The Court should hold Roughgarden to that. *See* Fed. R. Civ. P. 37(c)(1).

## IV. CONCLUSION

For the foregoing reasons, the Court should continue to exclude the report and testimony of Bruce McFarlane and the portions of Timothy Roughgarden's report and testimony that rely on McFarlane's analysis, specifically Roughgarden's opinion that "an 8.5% decrease in advertiser budgets for Facebook Advertisements decreases prices for Facebook Advertisements by 8.9%."

---

[5] Plaintiffs' attempt to distinguish *Newkirk* and *Joiner* only backfires, *see* Opp. at 3, because the exclusion of McFarlane leaves "an analytical gap between the data" underlying Roughgarden's opinion "and the opinion offered." *Newkirk*, 438 F. App'x at 608 (quotations omitted).

Dated: April 29, 2022

LATHAM & WATKINS LLP

By: /s/ *Elizabeth L. Deeley*

Elizabeth L. Deeley (CA Bar No. 230798)
Melanie M. Blunschi (CA Bar No. 234264)
Nicole C. Valco (CA Bar No. 258506)
505 Montgomery Street, Suite 2000
San Francisco, CA 94111-6538
Telephone: +1.415.391.0600
*elizabeth.deeley@lw.com*
*melanie.blunschi@lw.com*
*nicole.valco@lw.com*

Andrew B. Clubok (*pro hac vice*)
Susan E. Engel (*pro hac vice*)
555 Eleventh Street, N.W., Suite 1000
Washington, D.C. 20004-1304
Telephone: +1.202.637.2200
*andrew.clubok@lw.com*
*susan.engel@lw.com*

*Attorneys for Defendant Meta Platforms, Inc.*

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

11

META'S REPLY ISO MOT. TO EXCLUDE
B. MCFARLANE, T. ROUGHGARDEN
CASE NO. 3:18-CV-04978 JD