**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

July 29, 2022

Magistrate Virginia K. DeMarchi
Courtroom 2 – 5th Floor
San Jose Courthouse
280 South 1st Street
San Jose, CA 95113

      Re:   *In re Google RTB Consumer Privacy Litigation*, No. 4:21-cv-02155-YGR-VKD

Dear Magistrate Judge DeMarchi:

Plaintiffs and Defendant Google LLC ("Google") (collectively, the "Parties") submit this joint letter brief regarding a dispute as to Plaintiffs' Request for Production ("RFP") Nos. 12–13, and 41–42. The Parties conferred, most recently on July 21, 2022, and have reached impasse on these RFPs. Attached as **Exhibit A** is a true and correct copy of the disputed RFPs, and Google's responses and objections to same.

## I. PLAINTIFFS' POSITION

Pursuant to the procedure set forth in Judge Gonzalez Rogers' June 24, 2022 Order (Dkt. 242), Plaintiffs concurrently submit the **Declaration of Lesley E. Weaver** "to present discovery from the Calhoun action under seal to Judge DeMarchi for the purposes of demonstrating (i) the need for discovery in this action or (ii) that the defendant has misrepresented the nature or existence of certain information to Judge DeMarchi." The Weaver Declaration was shared with Google ahead of this filing, in hope that Google would consider the information and resolve the dispute without court intervention. For over a year now, Plaintiffs have tried through exhaustive meet and confer efforts to obtain critical data in Google's possession regarding the Named Plaintiffs ("Named Plaintiff Data"). As Plaintiffs have explained repeatedly, this data is central to Plaintiffs' case and needed for class certification. Yet Google has stonewalled and ultimately refuses to produce. The Court should require Google to produce the Named Plaintiff Data immediately and issue sanctions for this extraordinary delay.

### A. The Named Plaintiff Data Is Directly Relevant

Over a year ago, Plaintiffs served RFPs seeking data regarding each of the Named Plaintiffs targeted to their allegations. Using Google's own documents, Plaintiffs focused on limited data sources and categories which Google can readily access, retrieve and produce. This data is critical to proving liability and damages, showing that Google's practices are common across the Named Plaintiffs and proposed class, demonstrating that each Plaintiff is typical and adequate, and establishing other elements of Plaintiffs' class certification motion due September 22, 2022.

### B. Google's Production of a Single Curated Log Lacks Good Faith

Google refuses to produce the Named Plaintiff Data from the narrow set of data sources Plaintiffs identify, asserting it need only produce excerpts from *a single unidentified* log and that the other *identified* logs are irrelevant. Google's refusal lacks a good faith basis. Google should be candid: it claims to have produced 15,000 "records," but its production is a **single** excerpted document with 15,000 lines – and **excludes** clearly relevant data. Google's referenced future

production of 200,000 "records" will be similarly limited, deficient, and a small production in terms of total document(s).[1]

Moreover, even for that single log, Google will only produce **a self-selected subset of fields**. At the same time, it refuses to offer any explanation of the only file it has produced – an Excel spreadsheet vaguely titled "data" – or how Google selected which fields it produced or withheld from that log. With the substantial completion deadline having passed, this conduct is severely prejudicing Plaintiffs' case.

Plaintiffs **know** this single spreadsheet omits existing important data related to, among other things, Google Account Identifiers, timestamps for recorded communications, identification of the winning ad, and identification of the winning bid amount. Additionally, some of the fields in this curated document are "null" sets—it is unclear whether Google destroyed this missing information or strategically excluded it.

### C. Each Requested Category of Data is Relevant and Can Be Readily Produced

This is not a storage and collection issue. Google long ago conceded to this Court that the Named Plaintiff Data sought by these RFPs is relevant to claims and defenses in this case: "*information that's particular to the named plaintiffs ... is relevant* to [] questions of … harm, do they have standing [and other issues]." Feb. 8, 2022 Hr'g Tr. 66:13–67:15. Production of these clearly relevant data causes no undue burden, either. Plaintiffs **know** where the data resides and that Google can readily locate and produce it, as was done in *Calhoun*.

#### 1. Contract Formation and the Contents of Google's Promises

Plaintiffs seek information related to Named Plaintiffs' sign-up for Google Accounts, including evidence of Google allegedly obtaining consent from Named Plaintiffs. This so-called "consent bump" promised "Google does not sell your personal information" immediately above a prominent blue "I AGREE" button. *Calhoun* Dkt. 395 at 7; *Calhoun* Dkt. 395-1 at 16. These records are obviously relevant to the breach of contract claim and Google's consent defense. Again, Plaintiffs **know** Google keeps detailed records of account sign-up and setting information, and can readily produce that data here. Weaver Decl. at ¶¶ 5–7; *see also Calhoun* Dkt. 395 at 6–12, citing Exhibits 3-39, 51 (purported evidence of account holder visiting consent-specific page). Yet Google refuses to produce this information.

#### 2. When, Where, What, How, to Whom, for How Much

"The nature and volume of the collected information" (Dkt. 233 at 12)—which Google is withholding from production—is important to establishing reasonable expectations of privacy, as well as highly offensive behavior – required elements of Plaintiffs' privacy claims. *Id*. Google's contention that it need only produce excerpted "examples" from *one source* is designed to prevent Plaintiffs from rebutting Google's defense that the information exchanged in RTB is not *personal* information. Google is purposefully withholding evidence that Google's internal systems *link* the information that Google sends through RTB *with* the Named Plaintiff's Google account. This

---

[1] Plaintiffs never agreed that Google's obligation to produce responsive documents was limited to identifiers provided by Plaintiffs, and Google has repeatedly moved the ball with what it is demanding from Plaintiffs before providing Plaintiffs' own information to them. In any event, Plaintiffs have provided additional identifiers that are critical to this case and Google has refused to produce the data associated with those identifiers.

linkage renders information disclosed through RTB *personal* information. *See* Cal. Civ. Code § 1798.140 (personal information is information that can be "reasonably linked" to a person or household). Google should not be permitted to cherry-pick excerpts of a single log to hide the complete picture of its linking activity.

███████████████████████████████████

*Calhoun* Dkt. 482-10 at 4, 50. The Court confirmed the relevance of auction sales: Plaintiffs "need" to know "how much is paid for the ad" for damages. May 31, 2022 Hr'g Tr. 29–30. *Calhoun* documents show there is no burden to producing this information, yet Google refuses to produce this needed data. Weaver Decl. ¶ 28.

### 3. Device and Account Settings

The Court confirmed device and account settings are "**absolutely relevant** to know how the devices were set up and what the individual plaintiffs were attempting to control about access to their information." Feb. 8, 2022 Hr'g Tr. 103:11–14; Dkts. 185, 190. At great expense, Plaintiffs have extracted and expeditiously produced such settings to Google, even though Google already has a more complete and readily accessible record of these settings.[2] Google should produce all device and setting information for the Named Plaintiffs.

### 4. Web Browsing Histories

Google told the Court that Plaintiffs' web-browsing histories are relevant, specifically to "issues like standing damages, [and] adequacy of representation." Dkts. 185, 190; Feb. 8, 2022 Hr'g Tr. 89:16–90:15. And Google can readily produce the Named Plaintiffs' browsing histories. *See Calhoun* Dkt. 395-1 at 45, citing Exhibits 40–50. Google refuses to do so here.

### 5. Evidence of Ads Shown to Plaintiffs

The Court found that ads shown to the Plaintiffs are relevant. Dkts. 185, 190. Google even argued *Plaintiffs* should preserve "every ad every day." Feb. 8, 2022 Hr'g Tr. 120:4–25. In response, the Court indicated that it "seems problematic" if Plaintiffs do not have evidence of the ads shown, and noted "if Google has a record of who got served what ad, great, that's helpful." *Id.* at 123:19–21. Plaintiffs reasonably believe that Google maintains records of every ad shown to *every a*ccount holder; there is no basis for refusing to produce these records for the Named Plaintiffs—yet Google refuses to do so.

### 6. Google's Consideration of Information as "Sensitive"

Plaintiffs' claims regarding Google's use of "sensitive" information for advertising **is not limited to the sharing or sale of information**. If Google internally deems certain kinds of account holder information "sensitive" that is used for advertising, it bears directly on Plaintiffs' claims; that information has been requested, is dispositive to liability and class certification, and must be produced immediately. *See* Weaver Decl. ¶ 24. Google concedes "whether or not [Plaintiffs] have seen ads based on … sensitive categories … [goes] to the heart of the matters at issue [to] test standing, adequacy, and alleged damages." Feb. 8, 2022 Hr'g Tr. 93:2–17. Relevance, therefore, is undisputed. Google can readily locate and produce such records—and should be ordered to do so immediately.

---

[2] Google's misstatements that Plaintiffs delayed providing it with such settings are inaccurate.

### 7. Cookie-Matching Data

Google provides RTB participants, via cookie-matching, with a key to identify exactly who certain account holders are, and cookie-matching can enable participants to link a user's personal information obtained from the RTB auction process with its own data about that user. CCAC, Dkt. 80, at ¶¶ 170–173, 181. As such, Google's data revealing cookie-matching about the Named Plaintiffs is unquestionably relevant.

## II. GOOGLE'S POSITION

Plaintiffs think the rules do not apply to them, and this brief is the latest example. They again violate the Court's standing order, including a 12-page declaration with 13 exhibits and a prohibited (and meritless) request for sanctions; they disregard Rule 26 and L.R. 37-2 by ignoring their requests for production ("Requests") and Google's responses to them ("Responses"); and they disregard the District Court's order regarding requests for cross-use of discovery from *Calhoun v. Google*.[3]

Having apparently just decided they want different discovery specific to the named Plaintiffs ("Named-Plaintiff Data") than what Google told them it would produce, Plaintiffs now seek to buy more time for their class certification motion. But Plaintiffs have no grounds to complain either about the Named-Plaintiff Data that Google has started producing or when Google is producing it. From the start, Google has been transparent about what it would produce (Named-Plaintiff Data shared with third parties through its Real-Time Bidding system ("RTB")) and what it needed from Plaintiffs to search for that data. Plaintiffs cannot blame Google now for their own inaction.

### A. Google is Producing the Data it Has Always Said it Would Produce.

In June 2021 Responses, Google made clear it would produce only Named-Plaintiff Data "if any, that Google's systems directly associate with the identifiers Plaintiffs have provided or will provide to Google, and was shared with third parties utilizing RTB, to the extent Google can reasonably identify such data as belonging to Plaintiffs." (Responses 13, 42.) Google reiterated this limitation repeatedly, including in letters in March and April 2022. Plaintiffs have always known Google's intentions, as proven by Plaintiffs' inability to identify a Response or other commitment in which Google said it would produce additional data.

Google's Responses were appropriate then and are now. None of the cited Requests (12-13 and 41-42) entitle Plaintiffs to the vast trove of information they now demand. Request 12 seeks a list of putative class members, and Request 41 is an impossibly burdensome demand for detailed data for *each individual* putative class member, much of which is unconnected to RTB. Google appropriately refused those Requests. (*See* Responses 12, 41); *e.g.*, *Oppenheimer Fund, Inc. v. Saunders*, 437 U.S. 340, 351 n.13 (1978) (pre-certification discovery should cover issues on which the "court must pass in deciding whether a suit should proceed as a class action under Rule 23"); *Tamimi v. SGS N. Am. Inc.*, 2020 WL 11273047, at *23 (C.D. Cal. May 26, 2020) (information specific to putative class members was "premature" and "not relevant to the class

---

[3] This is the third time Plaintiffs cite *Calhoun* discovery without any authorization. ECF 243, 253. The Court correctly rebuffed such efforts, ECF 246, and Google will move to strike again.

certification determination"); *Knutson v. Schwan's Home Serv., Inc.*, 2013 WL 3746118, at *4 (S.D. Cal. July 15, 2013) (denying list of and data on putative class members).

That leaves Requests 13 and 42, for which, over a year ago, Google committed to producing only Named-Plaintiff Data "directly associate[d] with the identifiers Plaintiffs have provided" that "was shared with third parties utilizing RTB." That Response was clear, and Google is producing the fields of data in its log of RTB events that also appear in bid requests sent to third-party RTB participants. Google has already produced a 15,000-record sample from July 2021 and July 2022 and will soon produce another 200,000 records, after complying with its customer-notice requirement.

Plaintiffs' *modus operandi* is now familiar: serve overbroad discovery for all data under the sun that Google allegedly collects and stores; refuse any reasonable compromise; and relitigate the same issues over again. Requests 13 and 42 are more of the same, seeking information that is not connected to RTB, like communication history, Chrome Sync history, and vague categories like "derived," "appended," and "embedded" data. This Court has called Plaintiffs' discovery "ridiculously" overbroad and told Plaintiffs to focus on what is shared through RTB. 6/7/22 Tr. at 16:1-16, 22:12-1; *see, e.g.*, 2/8/22 Tr. at 21:12-19; ECF 184 at 7-8 ("Google need not produce responsive documents relating to such collection and storage."). Plaintiffs refuse to listen.

### B. Plaintiffs Are Not Entitled to the Data They Now Seek.

In addition to relying impermissibly on *Calhoun* materials to falsely claim there is no burden to Google,[4] Plaintiffs overstate the relevance of the wide-ranging categories of data discussed in their letter, several of which are thinly-veiled attempts to re-litigate settled disputes. Regarding consent issues, Google will produce Named-Plaintiff Data concerning the basis of its consent defense, which Plaintiffs only requested with specificity in their fourth set of document requests, to which Google is responding today. Apart from that, however, even the small fraction of Named-Plaintiff Data Plaintiffs demanded that they discuss in this brief is overbroad and improper.

<u>Linkage and Auction Sales (2):</u>  Plaintiffs contend again that how Google internally stores and links information is relevant. Their latest justification—they need all conceivable data to determine what is "personal information"—ignores burden and the many, more efficient ways to conduct such discovery. Similarly, Plaintiffs' request for "auction sales" data is duplicative of the ongoing Court-ordered negotiation (and likely motion practice) for damages-related discovery, in which Plaintiffs have adopted a scorched-earth approach, claiming everything in bid requests is "personal information."

<u>Device/Account Settings (3):</u> Plaintiffs are best positioned to produce information regarding device and account settings and have already been directed to do so. ECF 190. Plaintiffs do not explain why Google should produce duplicative information (no matter how burdensome it is for Google).

---

[4] Discovery in *Calhoun* was very different and did not entail compiling Named-Plaintiff Data shared through RTB.

Web Browsing History (4): Google does not share web browsing history through RTB; it shares only the URL of the specific ad opportunity. 2/8/22 Tr. at 98-99; *Calhoun*, ECF 711-5 ¶ 4 ("███████████████████████████████████."). Plaintiffs' improper citation to *Calhoun* discovery does not show otherwise. That citation discusses Web & App Activity, on which the Court correctly denied discovery. *Calhoun*, ECF 395-1 at 45; ECF 187-1 at 18.

Ads Shown (5): Searching Google's logs for every ad shown to every named Plaintiff would be highly burdensome, time consuming, and not proportional.

"Sensitive" Information (6): Plaintiffs now contend that a stray allegation entitles them to discovery into how Google "uses" allegedly "sensitive" information ***in any context***. The Court already denied this discovery when quashing similar topics noticed in Plaintiffs' 30(b)(6) deposition. ECF 231.

Cookie Matching (7): While Plaintiffs contend Named-Plaintiff Data regarding "cookie-matching" is "key" to their claims, they never specifically raised this data until late June 2022 and served three Requests concerning cookie-matching earlier this week.

      **C.     Any Delay is of Plaintiffs' Own Making.**

Tellingly, despite Plaintiffs' proven eagerness to bring motions, Plaintiffs did not challenge these Google Responses, including Responses 13 and 42, until today, despite the February 1, 2022 agreed-upon deadline. ECF 127, 141. Plaintiffs cannot sit on their hands and then claim prejudice.

Moreover, early on, the Parties agreed to follow the *Calhoun* SCA-consent process, in which Plaintiffs sent Google consents from their accounts to ensure that Google had consent to produce Named-Plaintiff Data. ECF 185 at 6 (ordering Plaintiffs to complete this process by May 2, 2022).[5] Plaintiffs' compliance took ages. Plaintiffs submitted numerous, invalid consents and failed to submit others at all. Google kept raising these problems, including in writing in October and November 2021 and January and March 2022, and before the Court in February 2022, ECF 142 at 4 n.4. Nevertheless, Plaintiffs did not claim to have completed their consents until March 2022. That was untrue, as Google explained in April. Plaintiffs continued submitting consents through May 24 (past the Court-ordered deadline).

Importantly, Google repeatedly told Plaintiffs they needed to complete their consents before Google undertook the challenging and time-intensive search for Named-Plaintiff Data. Plaintiffs knew this, as Google reiterated it when they conferred and in a January 2022 letter, stating "Google is willing to provide the information requested by [Request 42], subject to its objections and responses, after Plaintiffs provide these consents."[6] Plaintiffs cannot feign surprise

---

[5] The SCA-consent process is no formality, as Plaintiffs' mistakes illustrate. Plaintiffs repeatedly claimed Plaintiff Woodruff owned ██████████████████████ but later recanted. Plaintiffs also claimed P.W. is well-under 13 and needed Google's help unlocking his account so he could submit his consent. When Google noted the account was registered as an adult account, Plaintiffs never followed up.

[6] Google inadvertently referenced Request "41," rather than 42, due to a typo in Plaintiffs' prior letter, which mistakenly referred to Request 42 as Request 41.

that Google was not performing piecemeal searches as consents trickled in.

Since Plaintiffs first represented (inaccurately) that they finished submitting consents, Google has worked diligently to locate and produce the Named-Plaintiff Data. This effort has required meetings with engineers nearly every week for *months*, manual analysis of the codebase, the development and adjustment of custom scripts, and substantial time to query voluminous records. Google's efforts have now borne fruit, and Plaintiffs have no grounds to complain about Google's timing.

### III. NECESSITY OF A HEARING

#### A. Plaintiffs' Position

Plaintiffs request a hearing at the Court's earliest opportunity. Production of Named Plaintiff data is critical to Plaintiffs' case as well as to the District Court's class certification and case schedule, and will inform other discovery guideposts including expert discovery.

#### B. Google's Position

Google believes the Court would benefit from a hearing on this dispute.

### IV. DISCOVERY CUT-OFFS

The Parties' deadline to substantially complete their production of documents in advance of class certification passed on July 11, 2022. The fact discovery cut-off is March 24, 2023, and the close of expert discovery is June 30, 2023.

### V. COMPLIANCE WITH MEET AND CONFER REQUIREMENT

In compliance with the Court's meet and confer requirements, the parties met and conferred several times via email and Zoom. The final lead counsel meet and confer was held on July 21, 2022, via Zoom. On Plaintiffs' side, Elizabeth C. Pritzker, Jay Barnes, Karin Swope, David Straite and Jonathan Levine attended. On Google's side, Jeff Gutkin and Aarti Reddy attended.

| | |
|---|---|
| Dated: July 29, 2022 | PRITZKER LEVINE LLP<br><br>By: */s/ Elizabeth C. Pritzker*<br>ELIZABETH C. PRITZKER (SBN 146267)<br>1900 Powell Street, Suite 450<br>Emeryville, CA 94608<br>Tel.: (415) 692-0772<br>Fax: (415) 366-6110<br>ecp@pritzkerlevine.com<br>Interim Class Counsel |
| Dated: July 29, 2022 | DiCELLO LEVITT GUTZLER LLC<br><br>By: */s/ David A. Straite*<br>DAVID A. STRAITE (admitted pro hac vice)<br>One Grand Central Place<br>60 East 42nd Street, Suite 2400<br>New York, NY 10165<br>Tel.: (646) 933-1000<br>dstraite@dicellolevitt.com |
| Dated: July 29, 2022 | BLEICHMAR FONTI & AULD LLP<br><br>By: */s/ Lesley E. Weaver*<br>LESLEY E. WEAVER (SBN 191305)<br>555 12th Street, Suite 1600<br>Oakland, CA 94607<br>Tel.: (415) 445-4003<br>Fax: (415) 445-4020<br>lweaver@bfalaw.com |
| Dated: July 29, 2022 | COTCHETT, PITRE & McCARTHY LLP<br><br>By: */s/ Nanci E. Nishimura*<br>NANCI E. NISHIMURA (SBN 152621)<br>BRIAN DANITZ (SBN 247403)<br>840 Malcolm Road, Suite 200<br>Burlingame, CA 94010<br>Tel.: (650) 697-6000<br>Fax: (650) 697-0577<br>nnishimura@cpmlegal.com<br>bdanitz@cpmlegal.com |

| | |
|---|---|
| Dated: July 29, 2022 | BOTTINI & BOTTINI, INC.<br><br>By: */s/ Francis A. Bottini, Jr.*<br>FRANCIS A. BOTTINI, JR. (SBN 175783)<br>YURY A. KOLESNIKOV (SBN 271173)<br>7817 Ivanhoe Avenue, Suite 102<br>La Jolla, CA 92037<br>Tel.: (858) 914-2001<br>Fax: (858) 914-2002<br>fbottini@bottinilaw.com<br>ykolesnikov@bottinilaw.com<br><br>***Counsel for Plaintiffs and the Proposed Class*** |
| Dated: July 29, 2022 | COOLEY LLP<br><br>By: */s/ Jeffrey M. Gutkin*<br>Michael G. Rhodes<br>Jeffrey M. Gutkin<br>Whitty Somvichian<br>Aarti G. Reddy<br>Kyle C. Wong<br>Kelsey R. Spector<br>Anupam S. Dhillon<br>3 Embarcadero Center, 20th floor<br>San Francisco, CA 94111-4004<br>Tel.: 415-693-2000<br>Fax: 415-693-2222<br>rhodesmg@cooley.com<br>jgutkin@cooley.com<br>kspector@cooley.com<br>adhillon@cooley.com<br>cscott@cooley.com<br><br>Robby L.R. Saldaña<br>1299 Pennsylvania Avenue NW<br>Suite 700<br>Washington, DC 20004-2400<br>Tel.: 202-776-2109<br>Fax: 202-842-7899<br>rsaldana@cooley.com<br><br>Attorneys for Defendant<br>GOOGLE LLC |

## ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1(h)(3)

I, Lesley E. Weaver, attest that concurrence in the filing of this document has been obtained from the other signatories. I declare under penalty of perjury that the foregoing is true and correct.

Executed this 29th day of July, 2022, at Oakland, California.

*/s/ Lesley E. Weaver*
Lesley E. Weaver
