**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

August 15, 2022

Magistrate Virginia K. DeMarchi
Courtroom 2 – 5th Floor
San Jose Courthouse
280 South 1st Street
San Jose, CA 95113

Re:    *In re Google RTB Consumer Privacy Litigation*, No. 4:21-cv-02155-YGR-VKD

Dear Magistrate Judge DeMarchi:

Plaintiffs and Defendant Google LLC ("Google") (together, the "Parties") submit this joint letter brief regarding the dispute related to Google's production of damages discovery (Dkts. 189, 217). The Parties have conferred, most recently on August 2, 2022, and have reached an impasse as outlined below.

Attached as **<u>Exhibit A</u>** are disputed document requests and Google's responses and objections thereto. Exhibit A is in two parts, as the Parties are unable to agree upon the specific requests at issue. The second part of Exhibit A contains two RFPs that Google contends are not framed by this dispute. Plaintiffs disagree.

## I.    PLAINTIFFS' POSITION

On April 29, 2022, the Court ruled that Plaintiffs "may obtain discovery of information that will allow them to calculate or estimate the value of account holder information that Google allegedly shared with third parties without their permission via the RTB process." Dkt. 189 at 5:2–4. Contrary to Google's suggestion, the Court did ***not*** "deny" or "quash" Plaintiffs' motion to compel as to damages discovery, but rather directed the Parties to "confer further regarding what information, if any, Google can provide that will permit plaintiffs to calculate or estimate their alleged damages." *Id.* at 5:11–12.

Despite these instructions, and Plaintiffs' extensive efforts, Google refuses to meet and confer in good faith and, instead, has used every discussion, status report, and hearing to compartmentalize requests, misrepresent the nature and existence of documents sought, and not commit to search for or produce documents. As a result, with seven months passing since the requests were propounded and with the class-certification deadline fast approaching (September 26), Google's ongoing refusal to produce records fundamental to Plaintiffs' case is a highly-prejudicial abuse of the discovery process, necessitating this motion.

The documents that Plaintiffs requested, and Plaintiffs' experts require, indisputably exist, are squarely tethered to Plaintiffs' allegations, and are necessary for Plaintiffs' experts to demonstrate Class-wide impact and calculate Plaintiffs' and Class damages.[1] They consist of six categories:

---

[1] Contrary to Google's assertions, Plaintiffs did not "abruptly broaden[]" the dispute at the last moment. Plaintiffs have consistently requested these documents, including in their May 12, 2022 and August 1, 2022 letters.

(1)    Annual revenue derived from RTB in the U.S. (RFPs 34(b)–(c), 46, 47);

(2)    Costs attributable to RTB in the U.S. (RFPs 34(c), 47, 51);

(3)    Reports, analyses, or studies showing the impact on revenues of disabling third-party cookies and other user identifiers, and back-up data used or referenced in such reports, analyses, or studies (RFPs 47, 48, 51);

(4)    Logs showing the revenue Google derived from the RTB ads it served on the Named Plaintiffs (this includes "backend" and "revenue" logs) (RFPs 41(a), (d), (e), 47, 55, 56);

(5)    The number of Google Account Holders in the U.S. during the Class Period (RFPs 55, 56); and

(6)    Documents related to Google's "Screenwise" program (RFPs 48, 49, 54).

### A.    Revenue Received by Google Through Unauthorized Sale of Personal Information

The Court affirmed the relevance of RTB revenues in Dkt. 287 and "encourage[d] Google to revisit its relevance objections." Dkt. 287 at 4-5.

Accordingly, Categories (1) and (2) seek revenues and offsetting costs attributable to RTB in the U.S. Google's RTB revenues are clearly relevant to any damages model, including one based on unjust enrichment. Google obviously tracks revenues it derives from the RTB ad auction process—and it has not claimed that it does not. Indeed, as this Court has already recognized, Plaintiffs don't really need information regarding the value of each discrete item of information that is shared through RTB. *See* May 31, 2022 Hr'g Tr. at 29:8–20. Rather, what Plaintiffs need to establish their damages is "***how much is paid for the ad***":

> You apply whatever analysis that you've alleged in your complaint, 40 percent versus 60 percent. You apply that and there's your damages.
>
> That's your theory of damages. You wouldn't need any of this other information...

*Id.* at 28:10–30:9; 45:1–15 (emphasis added).

Google makes no showing as to why aggregate revenues are not relevant or would be unduly burdensome. If anything, producing documents relating to aggregate revenues would be ***less burdensome*** than going line-by-line to determine whether Google assigns value to a specific item of personal information shared through RTB. As for "costs," Plaintiffs are not seeking costs associated *with operating RTB*, but rather costs, if any, that Google intends to argue *should be offset from revenues* to calculate unjust enrichment, such as consideration that Google pays to others to receive data that is subsequently shared through RTB (RFP 51).

As to category (3), documents produced to-date show that **Google investigated the revenue impact when certain user identifying information was removed from bid requests**. *See* GOOG-HEWT-00283761 (referencing a Google study showing ██████████████ ███████████████████████████████████████████████. Reports and underlying data concerning these experiments are needed by Plaintiffs' experts to calculate the portion of revenues attributable to personal information.

August 15, 2022
Page 3

As for category (4), Google should produce the RTB revenue data that is specific to the ten Named Plaintiffs. Google has asserted, wrongly, that information received in the RTB auction on an individual Account Holder basis does not exist. *See* May 31, 2022 Hr'g Tr. at 40:8–18, 45:20–46:14. But publicly-available information produced in the related *Calhoun* case indicates otherwise. *See Calhoun*, Dkt. 495 at 49–53 (Shafiq Rebuttal Report) ("Google maintains numerous backend logs that contain revenue information keyed to specific users").[2]

Plaintiffs understand these transaction/revenue logs exist and that for each bid request they track: the Account Holders' personal information provided to bidders, the winning bid, and, crucially, **the amount paid to Google by the winning bidder (*i.e.*, Google's revenues)**. These documents are relevant, will be relied upon by Plaintiffs' experts to show "how much is paid for the ad" and how the percentages should be apportioned, and are critical to establishing damages and typicality for the upcoming class-certification motion. Transactional logs containing actual sales information are a typical starting point in any class damages analysis. So too here.

Category (5), the number of Google Account Holders, is a critical input for Plaintiffs' experts to calculate Class-wide damages by extrapolation as well as *pro rata* apportionment.

## B.    Reasonable Royalty Value for Personal Information—Google Screenwise

Category (6) seeks documents related to Google's Screenwise program. At the last hearing, Google represented, inaccurately, that Screenwise is irrelevant. May 31, 2022 Hr'g Tr. at 40:22–41:9. Based on this representation, the Court was reluctant to order the production of Screenwise-related documents. *Id.* at 41:10–12. However, these documents are relevant and will be used by Plaintiffs' experts to calculate a reasonable royalty measure of damages.

Publicly-available documents from *Calhoun* show that Screenwise is a program through which Google pays users for their online data, ***including browsing history attached to identifiers***. *See Calhoun*, Dkt. 486 at 6–7 ("Google pays participants for Screenwise tracking through Chrome"). This royalty payment is a component of Plaintiffs' damages model. Just as in *Calhoun*, to assess damages, Plaintiffs' damages expert would "look[] to applicable market prices." *See id.* at 10. In this regard, "***Screenwise as a damages model is a perfect fit for 'benefit-of-the-bargain' damages***" because it "establishes that Google has set 'the "market rate" and "fair market value" of collecting browsing history information with the same identifiers at-issue in this case' at '\$20 per month.'" *Id.* at 10, 19 (emphasis added); *see also id.* at 23 ("Evidence produced by Google demonstrates that Google Screenwise is a near perfect match to assess the fair market value of the personal information Chrome sent from class members' devices to Google's servers without authorization.").

Indeed, in the related *Brown* case, Judge Koh previously ruled that the existence of Screenwise, and similar programs, "establish at least two cognizable theories of economic injury." *Brown v. Google LLC*, 2021 WL 6064009, at *15 (N.D. Cal. Dec. 22, 2021). So, too, here.

Contrary to Google's arguments, the Court did not previously "reject[]" Plaintiffs' motion in this regard. Instead, the Court merely observed that Plaintiffs did not submit sufficient basis for requesting these documents ***at that time***. With the benefit of the public filings in *Calhoun* (*see* Ms.

---

[2] Pursuant to Dkt. 242, Plaintiffs submit the supporting declaration of Lesley E. Weaver to show that such documents exist, notwithstanding Google's denial.

August 15, 2022
Page 4

Weaver's declaration) the Court should compel Google to produce documents relating to Screenwise, including what the program does and how much Google pays users.

### C. Google's Merits-Based Dispute as to What Amounts to "Personal Information" Is an Improper Basis to Withhold Discovery

Rather than produce responsive documents, as required, Google seeks to transform the discovery process into a merits-based argument about what is or isn't "personal information." However, this determination is **not** necessary for resolution of this dispute, and, instead, is **a key factual** issue that **cannot** be decided without the benefits of (1) a complete record (based on fulsome discovery); and (2) expert analysis. *See* May 31, 2022 Hr'g Tr. at 45:12–15 ("You'll have a debate about that, but I don't think that I can decide that right now. … I don't think I can decide that particular merits issue right now.").

### D. Requested Remedy

The Court should compel Google to produce the above six discrete categories of documents that are central to Plaintiffs' damages theories and will be relied upon by Plaintiffs' experts for the upcoming class certification motion.

## II. GOOGLE'S POSITION

Plaintiffs' latest motion seeks an indefensible do-over on the damages issues the Court decided months ago.  (Dkts. 189; 217 (the "Orders").)  Plaintiffs never appealed or timely sought reconsideration of these Orders, yet this motion seeks broad discovery the Court already denied, as if the Orders do not exist.

Until **last week**, the Parties were following the Orders and negotiating the data fields from Paragraph 140 of the Consolidated Amended Complaint ("Paragraph 140") that Plaintiffs contend are "personal or sensitive" information for which Google would search for valuation documents.  Nevertheless, Plaintiffs announced for the ***first time*** in the final meet and confer their refusal to complete that Court-ordered negotiation process and submit the Court-ordered chart, calling that effort "a worthless distraction."  Instead, Plaintiffs declared they would move for several much broader categories of damages-related discovery.  Plaintiffs falsely accuse Google of "stonewalling," but it is Plaintiffs' eleventh-hour change in tactics that have given Google whiplash.

Plaintiffs have a pattern of re-litigating settled disputes, moving for discovery untethered to their actual RFPs, and improperly citing irrelevant *Calhoun* discovery as a pretext for undoing this Court's prior rulings against them.  (*See* Dkts. 241; 251; 268.)  These wasteful tactics are on full display here and Google implores the Court not to reward them.

### A. Background

On April 29, the Court denied Plaintiffs' motion to compel concerning RFPs 46–49, 51, 54–56 ("Valuation RFPs"),[3] explaining that while "Plaintiffs may obtain discovery of information

---

[3] At the final conference, Google requested from Plaintiffs the full list of RFPs at issue. Plaintiffs did not disclose, nor did the Parties discuss, that Plaintiffs were also moving on RFPs 34 and 41.

August 15, 2022
Page 5

that will allow them to calculate or estimate the value of account holder information Google allegedly shares with third parties . . . via [] RTB," Plaintiffs' RFPs were "not limited to that objective, and plaintiffs provide[d] an insufficient justification for the scope of these requests." (Dkt. 189 at 5.) The Court ordered the Parties to confer about whether, for the purposes of RTB, Google estimates the value of any data it shares with third parties via RTB that Plaintiffs contend is personal or sensitive and, if not, to discuss "whether [Google] does so for any other purpose . . . comparable to the purpose served by the RTB auction service." (*Id.*)

The Parties later submitted status reports and the Court convened a hearing, where Plaintiffs asserted that Paragraph 140 was "certainly a jumping off point" for resolution of these RFPs. (5/31/22 Hr'g Tr. at 59:19.) The Court ordered the Parties to identify, first, the items listed there that could be considered account-holder specific and, second, that Plaintiffs contend contain personal or sensitive information for which Google would conduct reasonable searches. (Dkt. 217 at 1–2.) If disagreements remained, the Parties were to submit their respective positions "in the form of a chart." (*Id.* at 2.)

Since then, the Parties have attempted to narrow their disputes. Even ***the day before*** the Parties' final meet and confer, Plaintiffs wrote that they "intend[ed] to follow Judge DeMarchi's order" requiring the Parties to submit the prescribed chart. (E. Pritzker Letter, 8/1/22.) Inexplicably, Plaintiffs reversed course the next day, said they would submit no chart, and initiated this motion.

## B.    Argument

### a.    The Court Should Not Entertain the Motion.

From the outset, Plaintiffs represented that this case focuses on the "dissemination and sale of private data as opposed to collection." (2/11/22 Hr'g Tr. at 38:19–23.) This Court has limited Plaintiffs' Valuation RFPs to discovery needed "to calculate or estimate the value of account holder information that Google allegedly ***shared with third parties*** without permission via the RTB process." (Dkt. 189 at 5 (emphasis added); *see also* 5/31/22 Hr'g Tr. 18:6–11 ("I am persuaded by Google's argument that the case was about disclosure.").)

Consistent with that ruling, and without conceding that these elements of a bid request qualify as personal or sensitive information, Google is searching for documents quantifying the value of information of the following fields identified in Paragraph 140.

- Truncated IP addresses [2];
- Special Treatment [3];
- Google IDs, cookies, or identifiers, including any that facilitate cookie matching in RTB [4-7, 45];
- User-agent information [8, 10];
- FLoC [9]; and

Google does not address those RFPs here, as they were first disclosed to Google on August 12 and their inclusion in this joint letter violates the Court's standing order.

August 15, 2022
Page 6

- Location information [12-14].

Plaintiffs responded to this compromise offer by abandoning this process altogether. Plaintiffs' entire Motion thus ignores the process mandated in the Orders and the Court should deny it on this basis alone.

### b. Plaintiffs' Arguments Are Meritless.

If the Court considers the substance of Plaintiffs' Motion, it fails on its merits, as an attempt to reverse Plaintiffs' prior discovery losses.

*Revenue and Costs of RTB (1-2)*. This discovery is overbroad. As Google argued previously (and this Court agreed), the entire value of the ad is ***not*** equivalent to the value of the personal or sensitive information allegedly shared with third parties. (5/31/22 Hr'g Tr. at 44–45.) This Court already limited discovery to information that will "allow [Plaintiffs] to calculate or estimate the value of account holder information" Google allegedly shares with third parties via RTB. (Dkt. 189 at 5.) That is what Google is investigating, and Plaintiffs' selective quotation of hearing transcripts ignores the actual ruling.[4] While Plaintiffs cite a single internal Google document to argue that this information may be relevant when coupled with other discovery if Google does not quantify the value of specific data, this is purely hypothetical and no basis to compel such overbroad discovery.

As to costs, Plaintiffs previously served RFP 53, requesting documents sufficient to show "all costs" related to Google's granting access, sharing, or sending user data or derivative information through RTB. Google responded that it does not have responsive documents. (*Id.* at 5–6.) Plaintiffs are relitigating this dispute as well.

*The Effect on Revenues of Disabling Cookies or Other Identifiers (3).* As discussed above, Google is already searching for such documents. *Supra* II.B.a.

*Backend Logs Containing Specific Revenue Information (4)*. Plaintiffs contend they need "back-end" logs, but do not explain their supposed relevance. This is Plaintiffs' ***fifth*** attempt to re-litigate this issue: first addressed in the Parties' dispute regarding collection and storage of data (*see* Dkt. 184 at 7 (denying discovery on storage)); reraised in the denied cross-use discovery motion, (*Calhoun*, Dkt. 692-2 at 4); reraised in the 30(b)(6) deposition dispute (denying discovery on collection and storage); and then in the pending supplemental briefing on collection and storage, (Dkts. 240-3; 248). In any case, the event-level data reflecting the total auction revenue for every user is vastly overbroad, and not relevant to quantifying the value of data ***shared with third parties***. Even a tiny fraction of this data would be utterly disproportionate.

*Named Plaintiff Data Associated with Revenue (5)*. This issue is already the subject of a pending Motion, (Dkt. 268-3 at 2–3), is not tethered to any of the Valuation RFPs, and is not relevant or

---

[4] Contrary to Plaintiffs' characterization, Google's response to RFP 50 only stated it had no documents measuring the "economic value . . . of the user information for the named plaintiffs that allegedly was shared with third parties…" (Dkt. 189 at 4.)

proportional because again, individual ad revenue is not tied to the value of personal or sensitive information allegedly shared with third parties via RTB.

_Total Number of Google Account Holders in the US (6)_.  Plaintiffs have not propounded an RFP requesting this information and it is overbroad because it is not even limited to Google Account Holders who were subject to an RTB callout.  The request is also premature as Plaintiffs' purported effort to "extrapolate" damages relates to merits discovery.

_Screenwise Trends Data (7)_.    This is an unjustifiable, untimely motion for reconsideration. Plaintiffs sought documents concerning Screenwise in response to RFPs 49 and 54, even while conceding it "do[es] not involve RTB."  (Dkt. 171 at 3.)  Plaintiffs repeat those arguments here, impermissibly relying on public _Calhoun_ documents they could have cited before.    This "evidence" is also valueless.  Plaintiffs cite disputed facts in their own expert reports and counsel's brief opposing a _Daubert_ motion.  (_See Calhoun_, Dkts. 482-8; 482-10; 485-2.)  And even those one-sided documents do not support their claim that the "same identifiers" are at issue here and Screenwise—to the contrary, their "evidence" discusses supposed similarities between **_Google Chrome_** and Screenwise. (_Calhoun_, Dkt. 482-8 at 32 (Mangum Rebuttal Rpt. ¶ 82).)

Screenwise is not relevant here.  It is a consumer research project that collects **_browsing history_** related to a broad set of products, and, as Google has explained, whatever value Google places on such data for its own purposes is not probative of the value RTB bid request recipients would place on the different data they received.  Moreover, browsing history is not shared through RTB. (_Calhoun_, Dkt. 711-5 ¶ 4 ███████████████████████████)

## III.    NECESSITY OF A HEARING

### A.    Plaintiffs' Position

Plaintiffs request a hearing. Production of damages discovery is critical to Plaintiffs' case and will inform other discovery guideposts, including expert discovery and future motions.

### B.    Google's Position

Google believes that the Court can resolve this dispute without a hearing because these issues have previously been litigated and because the papers thoroughly discuss the issues for the Court's consideration.

## IV.    DISCOVERY CUT-OFFS

The Parties' deadline to substantially complete their production of documents in advance of class certification passed on July 11, 2022. The fact discovery cut-off is March 24, 2023, and the close of expert discovery is June 30, 2023.

## V.    COMPLIANCE WITH MEET AND CONFER REQUIREMENT

In compliance with the Court's meet and confer requirements, the parties met and conferred

August 15, 2022
Page 8

several times via email and Zoom. The final lead counsel meet and confer was held on August 2, 2022, via Zoom. On Plaintiffs' side, Elizabeth C. Pritzker, Jay Barnes, Yury Kolesnikov, Karin Swope, and Brian Danitz attended. On Google's side, Jeff Gutkin and Aarti Reddy attended.

Dated: August 15, 2022                    PRITZKER LEVINE LLP

                                          By: */s/ Elizabeth C. Pritzker*
                                          ELIZABETH C. PRITZKER (SBN 146267)
                                          1900 Powell Street, Suite 450
                                          Emeryville, CA 94608
                                          Tel.: (415) 692-0772
                                          Fax: (415) 366-6110
                                          ecp@pritzkerlevine.com

                                          *Interim Class Counsel*

Dated: August 15, 2022                    BLEICHMAR FONTI & AULD LLP

                                          By: */s/ Lesley E. Weaver*
                                          LESLEY E. WEAVER (SBN 191305)
                                          555 12th Street, Suite 1600
                                          Oakland, CA 94607
                                          Tel.: (415) 445-4003
                                          Fax: (415) 445-4020
                                          lweaver@bfalaw.com

Dated: August 15, 2022                    SIMMONS HANLY CONROY LLC

                                          By: */s/ Jay Barnes*
                                          Jason 'Jay' Barnes (admitted *pro hac vice*)
                                          112 Madison Avenue, 7th Floor
                                          New York, NY 10016
                                          Tel.: (212) 784-6400
                                          Fax: (212) 213-5949
                                          jaybarnes@simmonsfirm.com

Dated: August 15, 2022                    DiCELLO LEVITT GUTZLER LLC

                                          By: */s/ David A. Straite*
                                          DAVID A. STRAITE (admitted pro hac vice)
                                          One Grand Central Place
                                          60 East 42nd Street, Suite 2400
                                          New York, NY 10165
                                          Tel.: (646) 933-1000
                                          dstraite@dicellolevitt.com

Dated: August 15, 2022                COTCHETT, PITRE & McCARTHY LLP

                                      By: */s/ Nanci E. Nishimura*
                                      NANCI E. NISHIMURA (SBN 152621)
                                      BRIAN DANITZ (SBN 247403)
                                      840 Malcolm Road, Suite 200
                                      Burlingame, CA 94010
                                      Tel.: (650) 697-6000
                                      Fax: (650) 697-0577
                                      nnishimura@cpmlegal.com
                                      bdanitz@cpmlegal.com


Dated: August 15, 2022                BOTTINI & BOTTINI, INC.

                                      By: */s/ Yury A. Kolesnikov*
                                      FRANCIS A. BOTTINI, JR. (SBN 175783)
                                      YURY A. KOLESNIKOV (SBN 271173)
                                      7817 Ivanhoe Avenue, Suite 102
                                      La Jolla, CA 92037
                                      Tel.: (858) 914-2001
                                      Fax: (858) 914-2002
                                      fbottini@bottinilaw.com
                                      ykolesnikov@bottinilaw.com

                                      ***Counsel for Plaintiffs and the Proposed Class***


Dated: August 15, 2022                COOLEY LLP

                                      By: */s/ Jeffrey M. Gutkin*
                                      Michael G. Rhodes
                                      Jeffrey M. Gutkin
                                      Whitty Somvichian
                                      Aarti G. Reddy
                                      Kyle C. Wong
                                      Kelsey R. Spector
                                      Anupam S. Dhillon
                                      3 Embarcadero Center, 20th floor
                                      San Francisco, CA 94111-4004
                                      Tel.: 415-693-2000
                                      Fax: 415-693-2222
                                      rhodesmg@cooley.com
                                      jgutkin@cooley.com
                                      kspector@cooley.com
                                      adhillon@cooley.com
                                      cscott@cooley.com

August 15, 2022
Page 11

Robby L.R. Saldaña
1299 Pennsylvania Avenue NW, Suite 700
Washington, DC 20004-2400
Tel.: 202-776-2109
Fax: 202-842-7899
rsaldana@cooley.com

Attorneys for Defendant
GOOGLE LLC

August 15, 2022
Page 12

## <u>ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1(h)(3)</u>

I, Lesley E. Weaver, attest that concurrence in the filing of this document has been obtained

from the other signatories. I declare under penalty of perjury that the foregoing is true and correct.

Executed this 15th day of August, 2022, at Traverse City, Michigan.

<u>/s/ Lesley E. Weaver</u>
Lesley E. Weaver