**QUINN EMANUEL URQUHART & SULLIVAN, LLP**

Andrew H. Schapiro (admitted *pro hac vice*)
andrewschapiro@quinnemanuel.com
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606
Telephone: (312) 705-7400
Facsimile: (312) 705-7401

Josef Ansorge (admitted *pro hac vice*)
josefansorge@quinnemanuel.com
1300 I Street NW, Suite 900
Washington D.C., 20005
Telephone: (202) 538-8000
Facsimile: (202) 538-8100

Stephen A. Broome (CA Bar No. 314605)
stephenbroome@quinnemanuel.com
Viola Trebicka (CA Bar No. 269526)
violatrebicka@quinnemanuel.com
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Jonathan Tse (CA Bar No. 305468)
jonathantse@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, CA 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

Jomaire Crawford (admitted *pro hac vice*)
jomairecrawford@quinnemanuel.com
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100

*Attorneys for Defendant Google LLC*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| PATRICK CALHOUN et al., on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>GOOGLE LLC,<br><br>Defendant. | Case No. 5:20-cv-05146-LHK-SVK<br><br>**GOOGLE'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFFS' MOTION TO SUBSTITUTE PLAINTIFFS**<br><br>Hearing Date: January 6, 2022<br>Time: 1:30 pm<br>Location: Courtroom 8<br>Judge: Hon. Lucy H. Koh |

# TABLE OF CONTENTS

**Page**

INTRODUCTION ..................................................................................................................... 1

BACKGROUND ....................................................................................................................... 3

    A.    Plaintiffs' Addition and Dismissal of Named Plaintiffs ........................................... 3

    B.    Discovery of Plaintiffs to Date ................................................................................ 4

    C.    The Timing of Plaintiffs' Motion ............................................................................ 5

ARGUMENT ............................................................................................................................. 7

I.    THE COURT SHOULD DENY PLAINTIFFS' REQUEST TO ADD NEW PARTIES ..... 8

    A.    Plaintiffs Fail to Show Good Cause for Adding New Plaintiffs .............................. 8

    B.    Plaintiffs Unduly Delayed Seeking to Add New Plaintiffs .................................... 10

    C.    The Addition of New Plaintiffs Would Prejudice Google ..................................... 12

CONCLUSION ........................................................................................................................ 14

# TABLE OF AUTHORITIES

**Page**

### Cases

*Almeida v. Google, Inc.*,
  No. C-08-02088 RMW, 2009 WL 3809808 (N.D. Cal. Nov. 13, 2009) .......................... 9, 10

*Bradley v. T-Mobile US, Inc.*,
  No. 17-CV-07232-BLF, 2019 WL 2358972 (N.D. Cal. June 4, 2019) ................................ 9

*Chinitz v. Intero Real Est. Servs.*,
  No. 18-CV-05623-BLF, 2021 WL 1753786 (N.D. Cal. May 4, 2021) ................................ 9

*Chodos v. W. Publ'g Co.*,
  292 F.3d 992 (9th Cir. 2002) .......................................................................................... 11

*Coleman v. Quaker Oats Co.*,
  232 F.3d 1271 (9th Cir. 2000) .......................................................................................... 8

*Davis v. Pinterest, Inc.*,
  2020 WL 6342936 (N.D. Cal. Oct. 29, 2020) ................................................................. 12

*Gilliam v. Addicts Rehab. Ctr. Fund*,
  No. 05 CIV. 3452, 2006 WL 1049352 (S.D.N.Y. Apr. 19, 2006) ...................................... 10

*Haley v. Tchrs. Ins. & Annuity Ass'n of Am.*,
  337 F.R.D. 462 (S.D.N.Y. 2020) ...................................................................................... 9

*Harris v. Vector Mktg. Corp.*,
  2009 WL 3710696 (N.D. Cal. Nov. 4, 2009) .............................................................. 12, 13

*In re Flash Memory Antitrust Litig.*,
  2010 WL 2332081 (N.D. Cal. June 9, 2010) .................................................................. 12

*In re Outlaw Lab'y, LP Litig.*,
  2020 WL 434477 (S.D. Cal. Jan. 28, 2020) .................................................................... 13

*In re W. States Wholesale Nat. Gas Antitrust Litig.*,
  715 F.3d 716 (9th Cir. 2013) ........................................................................................ 3, 8

*Jackson v. Bank of Hawaii*,
  902 F.2d 1385 (9th Cir. 1990) ..................................................................................... 8, 12

*Johnson v. Mammoth Recreations, Inc.*,
  975 F.2d 604 (9th Cir. 1992) ................................................................................... 3, 7, 10

*Lidie v. State of California*,
  478 F.2d 552 (9th Cir. 1973) .......................................................................................... 13

*Lockheed Martin Corp. v. Network Sols., Inc.*,
  194 F.3d 980 (9th Cir. 1999) .......................................................................................... 12

-ii-    Case No. 5:20-cv-05146-LHK-SVK
GOOGLE'S OPPOSITION TO MOTION TO SUBSTITUTE PLAINTIFFS

*Mendoza v. Nordstrom, Inc.*,
    865 F.3d 1261 (9th Cir. 2017) ................................................................................................ 7

*Osakan v. Apple Am. Grp.*,
    2010 WL 1838701 (N.D. Cal. May 5, 2010) ........................................................................ 13

*Phillips v. Ford Motor Co.*,
    435 F.3d 785 (7th Cir. 2006) ................................................................................................ 10

*Rao v. Apple Inc.*,
    No. 5:18-CV-02813-EJD, 2020 WL 3616317 (N.D. Cal. July 2, 2020) ............................... 9

*Reichert v. Keefe Commissary Network, L.L.C.*,
    331 F.R.D. 541 (W.D. Wash. 2019) ................................................................................ 9, 10

*Rice-Sherman v. Big Heart Pet Brands, Inc.*,
    No. 19-CV-03613-WHO, 2020 WL 5893444 (N.D. Cal. Oct. 5, 2020) ............................... 9

*Roling v. E*Trade Sec. LLC*,
    279 F.R.D. 522 (N.D. Cal. 2012) ......................................................................................... 13

*Sloan v. Gen. Motors LLC*,
    No. 16-CV-07244-EMC, 2019 WL 2775631 (N.D. Cal. July 2, 2019) ............................... 9

*Sonoma Cnty. Ass'n of Retired Employees v. Sonoma Cnty.*,
    708 F.3d 1109 (9th Cir. 2013) ............................................................................................. 13

*Velazquez v. GMAC Mortg. Corp.*,
    2009 WL 2959838 (C.D. Cal. Sept. 10, 2009) .................................................................... 13

**Statutes**

Fed. R. Civ. P. 15(a)(2) ................................................................................................................ 12

Fed. R. Civ. P. 16(b)(4) ............................................................................................................ 1, 7

**INTRODUCTION**

The Court's scheduling order provides that the deadline to add or substitute new parties is "30 days after the Court's order on motion to dismiss." Dkt. 83 ("December 2020 Case Management Order"); *see also* Dkt. 144 at 2 ("March 2021 Case Management Order"). That deadline elapsed on April 16, 2021. Plaintiffs' present Motion to modify the deadline—filed over a year into the case and nearly five months after the deadline—so that they can add two new plaintiffs requires that they demonstrate, *inter alia*, "good cause." Fed. R. Civ. P. 16(b)(4). The Motion offers no legitimate cause and should therefore be denied.

First, Plaintiffs assert that they are merely seeking to "substitute" two new plaintiffs for the three plaintiffs who have withdrawn. Mot. 3:2. Plaintiffs filed this case with four. They added six in April and dismissed one in May, leaving them with nine. Even with the recent withdrawal of three, there are still six, and Plaintiffs offer no explanation as to why they need two more given the proposed addition purportedly "does not add new theories or substantive facts." Mot. 7:4-5. Moreover, contrary to Plaintiffs' representations in the Motion, on August 30, when Google asked Plaintiffs the reason for adding new plaintiffs, they represented that the substitution was *not* a one-for-one substitution and that the new plaintiffs "would be coming in the absence of any drops." Crawford Decl. ¶ 18. Plaintiffs refused to provide further explanation. If there is a substantive reason for adding new plaintiffs at this late stage, Plaintiffs must disclose it so that the Court can evaluate whether it constitutes "good cause," and whether it would prejudice Google. If there is no substantive reason, the addition is unnecessary and does not warrant the burden and delay it will cause.

Second, Plaintiffs assert that the Motion is "a response to discovery, including discovery rulings and deposition tactics that were not known until well after the April 16, 2021 deadline had passed." Mot. 6:6-8. This is a ruse. Plaintiffs were all aware of the discovery topics at issue since November 17, 2020, when Google included them in its discovery requests. And ***none of the three withdrawing plaintiffs have been deposed***, so they were not subject to the purportedly offensive "tactics." Indeed, Plaintiffs' assertion that three plaintiffs asked to withdraw "[a]fter ***counsel*** learned how Google intended to conduct depositions," Mot. 6:9-10 (emphasis added), carefully avoids stating that any of the withdrawing ***plaintiffs*** learned of these issues and sought to withdraw because of them.

To the contrary, Google understands that one of the withdrawing plaintiffs—Hadiyah Jackson, who Plaintiffs assert withdrew "prior to being deposed," *id.* at 6:11-12—declined to participate in discovery because of a family emergency that arose just minutes before Ms. Jackson's deposition was set to begin on June 10, 2021, while all counsel and the court reporter were waiting to begin the deposition.[1]

Perhaps Plaintiffs seek to add to their ranks because all the existing Plaintiffs (and the withdrawing plaintiffs) have confirmed in depositions or interrogatory responses or both that they ***never reviewed*** the alleged "promises" in the Chrome Privacy Notice on which their claims are based, and upon which the Court relied in denying Google's motion to dismiss.[2] *See, e.g.*, Crawford Decl. ¶ 7, Exhibits A, B, C. Or perhaps they seek to add plaintiffs who, unlike some existing Plaintiffs, did not continue using Chrome without sync enabled until recently, fully aware of Google's allegedly "highly offensive" conduct. But whatever their "cause" for seeking to add new plaintiffs at this late stage in the case, Plaintiffs were required to disclose it so the Court could evaluate whether it is a "good cause" that satisfies Rule 16. Their failure to do so requires that their Motion be denied.

---

[1] Google clearly has no concern with a plaintiff withdrawing due to a family emergency or personal issues. But, Google is greatly concerned with Plaintiffs' suggestion that Ms. Jackson withdrew because of Google's purported "deposition tactics," particularly given that Ms. Jackson ultimately was not deposed.

[2] Plaintiffs filed this case on the express basis of Google's alleged "promise" in the Chrome Privacy Notice that "they 'don't need to provide any personal information to use Chrome' and that 'the personal information that Chrome stores won't be sent to Google unless you choose to store that data in your Google Account by turning on sync.'"). FAC ¶ 2. In opposition to Google's motion to dismiss, Plaintiffs argued that Google's consent arguments should be rejected because "consent is a fact-intensive inquiry … especially in a case like this which relies on a ***direct misrepresentation*** [in the Chrome Privacy Notice] as opposed to only an omission theory." Dkt. 67 at 2 (emphasis added). At the pleadings stage, the Court held that Google could not establish Plaintiffs' express consent to the data collection at issue—which is described in Google's Privacy Policy (which all the existing Plaintiffs consented to when they signed up for their Google Accounts) and elsewhere—because "the ***Chrome Privacy Notice*** makes specific representations that could suggest to a reasonable user that Google would not engage in the alleged data collection." Dkt. 142 at 14; *see also id.* at 15 ("Based on these disclosures [in the Chrome Privacy Notice], a reasonable user could have concluded that he or she did not need to provide any personal information to use Chrome without Sync.") (emphasis added). Discovery has now confirmed, however, that there are no such "reasonable users" among the Plaintiffs. Crawford Decl. ¶ 7, Exs A-C. Not one of the Plaintiffs recalls reading the Chrome Privacy Notice prior to being contacted by counsel. Nor do any of the Plaintiffs recall reviewing Google's Terms of Service or Privacy Policy, or any other Google statement.

The Motion should also be denied because Plaintiffs failed to exercise due diligence in timely seeking relief. The resulting prejudice to Google is dispositive under both Rule 16 and Rule 15. *See Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992) ("If that party was not diligent [in bringing a Rule 16 motion], the inquiry should end [and the motion should be denied]."); *In re W. States Wholesale Nat. Gas Antitrust Litig.*, 715 F.3d 716, 738 (9th Cir. 2013) (under Rule 15, leave to amend is "not to be granted automatically," and may be denied where, as here, there is undue delay and prejudice to the opposing party). The record is clear that Plaintiffs waited for months after the deadline to seek to add new plaintiffs, and several weeks more to file the Motion. Plaintiffs' Proposed Second Amended Complaint provides Google with next to no information about the two new plaintiffs who seek to join the case on the eve of class certification briefing.[3] The parties and the Court have already spent many hundreds of hours on discovery (and disputes) relating to the existing and former Plaintiffs. Adding two new plaintiffs so late in the case will force Google to retrace many of its steps—returning to the same data stores with new queries and potentially investigating new defenses that are unique to the proposed plaintiffs. The additional burden associated with that effort is not warranted at this juncture.

Six named plaintiffs is enough. The Court should deny Plaintiffs' motion.

## BACKGROUND

### A.     Plaintiffs' Addition and Dismissal of Named Plaintiffs

Plaintiffs filed their original Complaint on July 27, 2020, describing this lawsuit as a "nationwide data privacy class action brought by and on behalf of Google Chrome users who chose not to 'Sync' their browsers with their Google accounts while browsing the web." Dkt. 1, ¶ 1. All of Plaintiffs' claims are based on Google's alleged "express[] promises [to] Chrome users" in Google's Chrome Privacy Notice that Chrome users "'don't need to provide any personal information to use Chrome' and that '[t]he personal information that Chrome stores won't be sent to Google unless you choose to store that data in your Google Account by turning on sync.'" *Id.* ¶ 2. The original Complaint

---

[3] Although not alleged in the proposed Second Amended Complaint, Plaintiffs' counsel has since represented that the new plaintiffs, like the existing and former plaintiffs, are Google account-holders. Crawford Decl. ¶ 26.

identified four named plaintiffs: Patrick Calhoun, Elaine Crespo, Hadiyah Jackson, and Claudia Kindler. *Id.* ¶¶ 20-23.

From the outset, the Court's scheduling order has provided that the deadline to add or substitute parties would be "30 days after the Court's order on motion to dismiss." Dkt. 83 ("December 2020 Case Management Order"); *see also* Dkt. 144 ("March 2021 Case Management Order"). On March 17, 2021, the Court issued its Order on Google's Motion to Dismiss. Dkt. 142. On April 16, 2021, Plaintiffs filed a First Amended Complaint adding six new plaintiffs: Leroy Randolph, Cornice Wilson, Rodney Johnson, Michael Henry, Nicholas Genova, and José María de Guzmán. Dkt. 162, ¶¶ 20-30. On May 14, 2021, Plaintiffs voluntarily dismissed Plaintiff Genova, and on August 23, 2021, the parties filed a joint stipulation of dismissal of Plaintiffs de Guzmán, Jackson, and Randolph. Dkt. 193, 285. As a result, there currently are six named Plaintiffs.

Plaintiffs now seek to add two new plaintiffs: Jason Stone and Zachary Green. Dkt. 302, Ex. A, ¶¶ 22-23, 25-26. Though styled as a "motion to substitute" parties, the Motion requires relief from the Court's December 2020 Scheduling Order and the April 16, 2021 deadline to amend the complaint and add parties.

### B.   Discovery of Plaintiffs to Date

Discovery commenced in September 2020. During the course of discovery, Google has spent many hundreds of hours of attorney and employee time responding to Plaintiffs' requests for preservation and production of data associated with their accounts and web-browsing activity. Crawford Decl. ¶ 3. Google has also spent a significant amount of time preparing for and taking the depositions of the named Plaintiffs. *Id.* ¶ 2. Google first requested depositions of the named plaintiffs in March 2021—Plaintiffs did not offer dates until June. Google then invested a significant amount of time preparing for the deposition of Plaintiff Jackson, which was scheduled for June 10, 2021, but despite the attendance of lawyers from both sides and a court reporter, Ms. Jackson did not appear at the deposition due to a family emergency. *Id.* ¶ 2. Google finally began taking depositions of the named plaintiffs in July and has since deposed Plaintiffs Calhoun, Kindler, Crespo, and Henry. *Id.* ¶ 2. Plaintiffs Wilson and Johnson are scheduled to be deposed in October, well before Google's opposition to Plaintiffs' class certification motion is due.

In discovery, Plaintiffs requested that Google produce, *inter alia*, the data stored in their My Activity pages (Plaintiffs provided Stored Communications Act consents for Google to do so). Google produced the data requested. My Activity is a feature available to Google Account holders that, *inter alia*, allows an account holder to review the web browsing data that is stored in her account—assuming the account holder consented to storing that data in her account. All Google Account holders that have this feature enabled—including all Plaintiffs—can view the data at any time by visiting www.myactivity.google.com. Google has sought discovery regarding Plaintiffs' awareness and use of the My Activity feature from the outset, *e.g.,* in Google's Interrogatory Nos. 1 and 2, served on November 17, 2020. Crawford Decl. ¶ 6.

A Google Account holder's review of her My Activity page would place her on notice of the fact that, regardless of whether she enabled Chrome's Sync feature (or even used Chrome at all, as opposed to another browser), Google receives data when users visit websites that use Google's third-party web services, like Analytics and Ad Manager. Accordingly, in depositions, Google asked Calhoun and Kindler whether they had ever reviewed their My Activity pages and showed them exhibits of the activity data that would have been visible to them had they done so, and which data Google had produced at Plaintiffs' request.[4] *See Id.* ¶¶ 4-5. This plainly was not a "deposition tactic" (Mot. at 6:7) intended to deter Plaintiffs from continuing to pursue their claims. It was an efficient and obvious way to disprove Plaintiffs' allegations—including that Google's receipt of data that is clearly visible in their My Activity pages is "surreptitious," and that Plaintiffs could not have known that Google was receiving the data even though they had not enabled Chrome's Sync feature.

### C.     The Timing of Plaintiffs' Motion

The deadline to add new plaintiffs was April 16, 2021. *See* Dkt. 83, 142. Plaintiffs did not inform Google that they would seek to dismiss Plaintiffs de Guzmán, Jackson, and Randolph, and add an unspecified number of new plaintiffs, until July 28, 2021. Crawford Decl. ¶ 9. Google responded the following day—Thursday, July 29, 2021—requesting that Plaintiffs provide good cause for adding new plaintiffs so late in the case. *Id.* ¶ 11. Plaintiffs refused, claiming their reasoning is protected work

---

[4] Plaintiffs suggest that Calhoun was asked about "his sensitive searches for medication concerning a medical condition." Mot. 2:12-13. He was not. Crawford Decl. ¶ 5.

product and "litigation strategy." *Id.* ¶ 12. On August 2, 2021, Google confirmed that it would agree to stipulate to the dismissal of Plaintiffs de Guzmán, Jackson, and Randolph, but that it would not agree to add new parties if Plaintiffs failed to provide good cause consistent with Rule 16(b). *Id.* ¶ 13.

On August 4, 2021, Plaintiffs provided Google a draft stipulation for dismissal of Plaintiffs de Guzmán, Jackson, and Randolph. *Id.* ¶ 14. However, Google heard nothing further from Plaintiffs on the issue of adding *new* plaintiffs for weeks, until Plaintiffs sent a letter on August 17, 2021 requesting a meet and confer to discuss various topics. *Id.* ¶¶ 14-15. Notably, although Plaintiffs now claim the need to "substitute" plaintiffs arose in connection with Google's so-called deposition and discovery "tactics," Plaintiffs elected not to raise this issue in the parties' August 3, 2021 joint submission concerning the status of "discovery disputes." *See* Dkt. 253.

When the parties met and conferred on August 18, 2021, Plaintiffs *again* requested that Google stipulate to the addition of new (unidentified) plaintiffs, and Google *again* requested that Plaintiffs provide "good cause," explaining that they would have to do so anyway in a motion to the Court in order to satisfy Rule 16. Plaintiffs *again* refused to provide any reason for their proposed amendment. *Id.* ¶ 18.

During the August 18, 2021 meet and confer, Plaintiffs' counsel represented that the new plaintiffs were not intended to be a one-for-one replacement for the named Plaintiffs they sought to dismiss, and that the request to add new plaintiffs was unrelated to the request to dismiss existing Plaintiffs, as the new plaintiffs "would be coming in the absence of any drops." *Id.* ¶¶ 17-18. Plaintiffs' counsel provided no answer when asked why the new plaintiffs were not added before the April 16, 2021 deadline for adding new parties (when Plaintiffs amended to add *six new plaintiffs* to the case). *Id.* ¶ 18; Dkt. 144.

On August 19, Plaintiffs sent Google a letter noting that the parties "appear to be at impasse" and that, based on the meet and confer, they understood (correctly) that "Google would oppose" Plaintiffs' request. Crawford Decl. ¶ 19.

Nevertheless, Plaintiffs raised this issue yet again during an August 20, 2021 meet and confer. *Id.* ¶ 20. Plaintiffs again refused to provide any cause at all—much less "good cause"—in response to Google's request, so Google reiterated its opposition to adding new plaintiffs. *Id.* ¶ 21.

1    On August 23, 2021, Google again confirmed that it would agree to stipulate to the dismissal of Plaintiffs de Guzmán, Jackson, and Randolph. On the subject of Plaintiffs' request to add new parties, Google again reiterated that it could not agree in light of Plaintiffs' continued refusal (since July 29) to provide any cause for the request. The parties filed the joint stipulation regarding voluntary dismissal of Plaintiffs de Guzmán, Jackson, and Randolph on the same day. Dkt. 285. On August 24, Plaintiffs sent a letter confirming Plaintiffs' understanding that Google will not consent to the addition and therefore Plaintiffs "will file [their] motion shortly." Crawford Decl., ¶ 23.

Google then heard nothing from Plaintiffs for nine days, when *counsel for Google* reached out to Plaintiffs on September 2, 2021, to inquire as to whether Plaintiffs would be filing a motion to add the new plaintiffs. *Id.* ¶ 24. Plaintiffs responded and confirmed that Plaintiffs would be filing a motion and offered to stipulate to a three-day extension if Plaintiffs were to file the following day, Friday, September 3, 2021. *Id.* ¶ 24. Google responded that it was "indifferent" as to whether Plaintiffs filed the Motion on the Friday before Labor Day, with a three-day extension to respond, or the following Tuesday, but Google reiterated its position that Plaintiffs' request to add new plaintiffs was untimely. *Id.* ¶ 24.

On Tuesday, September 7, Plaintiffs contacted the Court to request a motion hearing date and received the Court's response the same day. *Id.* ¶ 25. Plaintiffs again delayed, and did not file their motion until Friday, September 10. Dkt. 303.

## ARGUMENT

Rule 21 provides that the Court "may at any time, on just terms, add or drop a party." But "a district court's discretion to permit substitutions or additions of parties is not a requirement that it do so." *Mendoza v. Nordstrom, Inc.*, 865 F.3d 1261, 1266 (9th Cir. 2017) (affirming dismissal and holding district court was not obligated to permit substitution). Moreover, if adding a party would require a change to the case schedule, Rule 16(b) applies. *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 607-609 (9th Cir. 1992) (affirming denial of motion to amend where plaintiff failed to establish "good cause" for modifying the scheduling order). Under Rule 16, a scheduling order "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). A showing of "good cause … primarily considers the diligence of the party seeking the amendment." *Johnson*, 975

F.2d at 609-610. "If that party was not diligent, the inquiry should end." *Id*. And prejudice to the defendant, though not required, supplies an additional reason for denying a motion to amend. *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1295 (9th Cir. 2000).

Separately, Rule 15(a)(2) provides that leave to amend a complaint should be freely given "when justice so requires." However, leave to amend is "not to be granted automatically." *In re W. States Wholesale Nat. Gas Antitrust Litig.*, 715 F.3d 716, 738 (9th Cir. 2013) (finding district court did not abuse its discretion in denying motion for leave to amend). In assessing whether to grant leave, courts consider: "(1) bad faith, (2) undue delay, (3) prejudice to the opposing party, (4) futility of amendment; and (5) whether plaintiff has previously amended his complaint." *Id*. "Prejudice to the opposing party is the most important factor." *Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1387 (9th Cir. 1990) (affirming denial of motion for leave to amend complaint).

## I. THE COURT SHOULD DENY PLAINTIFFS' REQUEST TO ADD NEW PARTIES

### A. Plaintiffs Fail to Show Good Cause for Adding New Plaintiffs

Plaintiffs' Motion should be denied because they fail to satisfy Rule 16(b)'s requirement that they show "good cause" for adjusting the case schedule to add new plaintiffs so late in the case.

The only "cause" Plaintiffs offer is that they purportedly are seeking to "substitute" the new plaintiffs for the recently dismissed plaintiffs. But that is not an explanation of any cause, let alone good cause. It is just a truistic description of their request. And in any event, it is directly contrary to what Plaintiffs represented during the parties' meet and confers, in which Plaintiffs stated that the request to add new plaintiffs is unrelated to the request to dismiss plaintiffs, and that the new plaintiffs were not intended to be a one-for-one replacement for the dismissed plaintiffs. Crawford Decl. ¶¶ 17-18. Plaintiffs refused to explain what the new plaintiffs would add, but Google is concerned that Plaintiffs seek to add plaintiffs on the eve of class certification so that the new plaintiffs may attempt to seek to represent a yet-to-be-identified subclass that the existing Plaintiffs could not represent, or would otherwise inject new facts and evidence into the case *during* the class certification briefing process, thereby prejudicing Google and likely delaying the case.

Moreover, even accepting at face value Plaintiffs' assertion that they are merely seeking to expand their numbers from six to eight, and not to "add new theories or substantive facts," Mot. 7:4-5,

the question remains: Why is the burden and delay associated with adding new parties so late in the case warranted? In other words, what do the proposed new plaintiffs add or contribute to the case that the six existing Plaintiffs do not? The Motion is tellingly silent on this issue.

Plaintiffs do not argue, for example, that the six remaining plaintiffs are inadequate class representatives. This fact alone starkly distinguishes the cases they cite (Mot. 4:20-6:4). In each case, the court found that addition or substitution of class representatives was warranted based on identified deficiencies in the named plaintiffs' ability to adequately represent the interests of class members. *See, e.g.*, *Reichert v. Keefe Commissary Network, L.L.C.*, 331 F.R.D. 541, 551 (W.D. Wash. 2019) (finding named plaintiff who did not receive a cardholder agreement would not be able to adequately represent the interest of class members who had); *Almeida v. Google, Inc.*, No. C-08-02088 RMW, 2009 WL 3809808, at *2-3 (N.D. Cal. Nov. 13, 2009) (permitting substitution where original named plaintiff's standing was brought into question during the course of discovery); *Haley v. Tchrs. Ins. & Annuity Ass'n of Am.*, 337 F.R.D. 462, 477-78 (S.D.N.Y. 2020) (permitting addition of two new plaintiffs to address potential deficiencies in named plaintiff's ability to represent class); *Chinitz v. Intero Real Est. Servs.*, No. 18-CV-05623-BLF, 2021 WL 1753786, at *1 (N.D. Cal. May 4, 2021) (named plaintiff reached out to defendant directly, violating his fiduciary duty to absent class members); *Bradley v. T-Mobile US, Inc.*, No. 17-CV-07232-BLF, 2019 WL 2358972, at *2 (N.D. Cal. June 4, 2019) (lack of jurisdiction over named plaintiff). Here, Plaintiffs identify no inadequacies in their respective ability to represent the class, and therefore the cases they cite are inapposite.[5]

---

[5] The cases cited by Plaintiffs are incongruous for other reasons, as well. For example, in *Haley*, *Chinitz*, *Bradley*, *Sloan*, *Rice-Sherman*, and *Rao* the court found that, unlike here, there was no delay by the party making the request or prejudice to the non-moving party. *Haley*, 337 F.R.D. at 477-79 (plaintiff did not delay, waiting only two weeks to move and defendant "made no showing regarding how [additional] discovery will be more than *de minimis*"); *Chinitz*, 2021 WL 1753786, at *1 (plaintiff moved to amend "[a]s soon as" counsel realized the named plaintiff had violated his fiduciary duty and there was no prejudice to defendant in light of a modified case schedule); *Bradley*, 2019 WL 2358972, at *2-3 (finding plaintiffs did not unduly delay and prejudice to defendants was slight where they had ample time to move to dismiss and trial was two years away); *Sloan v. Gen. Motors LLC*, No. 16-CV-07244-EMC, 2019 WL 2775631, at *2 (N.D. Cal. July 2, 2019) (plaintiffs moved to amend by the deadline in the scheduling order); *Rice-Sherman v. Big Heart Pet Brands, Inc.*, No. 19-CV-03613-WHO, 2020 WL 5893444, at *3-4 (N.D. Cal. Oct. 5, 2020) (finding plaintiffs' delay did not amount to lack of diligence and no prejudice to defendant where fact discovery was extended by six months); *Rao v. Apple Inc.*, No. 5:18-CV-02813-EJD, 2020 WL 3616317, at *3 (N.D. Cal. July 2, 2020) (finding plaintiffs did not delay and no prejudice to defendant where there was

Because Plaintiffs have not shown "good cause" for adding the new plaintiffs so late in the case, the Motion should be denied.

### B.     Plaintiffs Unduly Delayed Seeking to Add New Plaintiffs

The Motion should also be denied because Plaintiffs did not act with diligence in seeking to add new plaintiffs, and therefore "the inquiry should end." *Johnson*, 975 F.2d at 609. To excuse their delay, Plaintiffs assert that the requested "substitution" is "a response to discovery, including discovery rulings and deposition tactics." Mot. 6:5-8. That assertion is baseless. The topics on which Google has sought discovery have been clear to Plaintiffs since Google served its requests on November 17, 2020, when Google served discovery related to, *inter alia*, Plaintiffs' My Activity pages. Crawford Decl. ¶ 6. Even if Google had not specifically identified My Activity as a topic of discovery from the outset—which it did—Plaintiffs could not possibly be surprised that Google would seek to depose them on the contents of their My Activity pages, since ***Plaintiffs requested that Google produce the contents of their My Activity pages***. Moreover, those pages reflect the very information that Google is alleged to have misappropriated, refuting Plaintiffs' allegation that Google's receipt of this data occurred "secretly." FAC ¶ 5. That Google would ask Plaintiffs in depositions whether they reviewed their My Activity pages—which would have placed them and other putative class members on notice of the alleged data collection—was obvious from the outset.

In addition, none of the Named Plaintiffs who *were* deposed by Google have sought to withdraw. Instead, three *other* Named Plaintiffs (de Guzmán, Jackson, and Randolph) withdrew, and their reasons for doing so are unknown to Google and the Court. Notably, Plaintiffs' counsel's declaration does not state that any of the plaintiffs sought to withdraw *because* of issues that arose in discovery. *See* Dkt. 303-1, Straite Decl. ¶ 8. Instead, the declaration carefully states that Mr. de

---

ample time to complete discovery before their briefing on class certification was due). Moreover, in *Gilliam*, the defendant did not oppose the addition of new plaintiffs, and in *Almeida* the defendant presented no argument regarding bad faith, undue delay, prejudice, or futility. *Gilliam v. Addicts Rehab. Ctr. Fund*, No. 05 CIV. 3452, 2006 WL 1049352, at *2 (S.D.N.Y. Apr. 19, 2006); *Almeida v. Google, Inc.*, No. C-08-02088 RMW, 2009 WL 3809808, at *2 (N.D. Cal. Nov. 13, 2009). And neither *Reichert* nor *Phillips* addressed factors such as delay or prejudice because the question was not presented. *Reichert*, 331 F.R.D. at 551 (conditioning class certification on addition of named plaintiffs after finding that circumstances warranted allowing plaintiff to amend the class definition); *Phillips v. Ford Motor Co.*, 435 F.3d 785, 786-88 (7th Cir. 2006) (considering the question of whether adding or substituting named plaintiffs "commences" a new suit).

Guzmán's personal *counsel* informed counsel for all Plaintiffs that Mr. de Guzmán wished to withdraw "after discussing" the prior depositions and discovery. *Id.* This sleight of hand does little to explain the precise reason for his withdrawal—let alone the need to "substitute" new plaintiffs in his stead. The declaration provides even less detail regarding Ms. Jackson and Mr. Randolph, merely stating that Mr. Straite was informed that they wished to withdraw during the week of July 19, 2021. *Id.* ¶ 9. The unstated conclusion that Plaintiffs suggest—that de Guzmán, Jackson, and Randolph decided to withdraw because Google asked *other Plaintiffs* about data reflected in their My Activity pages—strains credulity. Furthermore, even if true, neither of those should have been "new" facts to the plaintiffs. *See Chodos v. W. Publ'g Co.*, 292 F.3d 992, 1003 (9th Cir. 2002) (affirming denial of leave to amend where "'new' facts had been available to [plaintiff] even before the first amendment to his complaint").

Even assuming *arguendo* that the Motion is a response to discovery rulings and purported "deposition tactics," it cannot excuse Plaintiffs' undue delay. The only discovery ruling Plaintiffs identify is a Discovery Order dated April 30, 2021, and the first deposition that Plaintiffs identify—Ms. Kindler's—took place on July 5, 2021. Mot. 3 (citing Dkt. 173-1). Thus, by Plaintiffs' own admission, they delayed filing this motion for more than **four months** after the Court rendered the supposedly objectionable discovery ruling, and more than **two months** after they observed supposedly objectionable "deposition tactics."

Plaintiffs' conduct after first notifying Google of their desire to add new plaintiffs also demonstrates undue delay. Rather than raise this issue in the July 21, 2021 Case Management Statement (Dkt. 249), Plaintiffs waited a week to notify Google of their request to add parties. Google promptly asked Plaintiffs to provide the basis, if any, for seeking to add new plaintiffs on the cusp of class certification. Plaintiffs mischaracterize Google's request as one for "insight into counsel's legal strategies about why Plaintiffs requested to substitute new plaintiffs for those withdrawing" (Mot. 6:15-17), despite Google's repeated assurances that it sought only the same explanation for the request that Plaintiff would need to provide to the Court for consideration pursuant to Federal Rules 15 and 16. Plaintiffs refused to provide Google with any basis for adding new plaintiffs, and although Google was willing to engage in continued meet and confers, the record reflects that Google made its position

clear from the outset and consistently repeated that position in subsequent meet and confers: absent a showing of "good cause" for adding the new plaintiffs (*i.e.*, the same showing Plaintiffs would need to make to the Court), Google would not consent. Plaintiffs nevertheless delayed filing the Motion for almost *six more weeks*.

Plaintiffs must "justif[y] their delay in moving to file an amended complaint." *Jackson*, 902 F.2d at 1388. Delay is "relevant, especially when no reason is given for the delay." *Lockheed Martin Corp. v. Network Sols., Inc.*, 194 F.3d 980, 986 (9th Cir. 1999) (citation omitted) (affirming denial of motion for leave to amend complaint). Here, Plaintiffs have provided no reasonable explanation for the delay in seeking to add the new plaintiffs. It is "axiomatic" that Plaintiffs should have scrutinized the adequacy of their class representatives "at the inception of the litigation," not a year into the case. *In re Flash Memory Antitrust Litig.*, 2010 WL 2332081, at *17 (N.D. Cal. June 9, 2010) (denying motion to substitute class representatives).

Courts regularly find that delays in filing a motion for leave to amend a year (or even less) into the case weigh against leave to amend. *E.g.*, *Davis v. Pinterest, Inc.*, 2020 WL 6342936, at *2 (N.D. Cal. Oct. 29, 2020) (denying leave to amend where case "filed almost a year ago"); *Harris v. Vector Mktg. Corp.*, 2009 WL 3710696, at *2 (N.D. Cal. Nov. 4, 2009) (denying leave to amend where case "filed nearly one year ago"). Plaintiffs also delayed nearly six weeks between stating their intention to add new plaintiffs and actually filing the motion to do so (*see* Crawford Decl., ¶¶ 9-10, 25)—itself an "inexplicable" delay. *Jackson*, 902 F.2d at 1388 (finding months-long delay between stated "intent[] to file an amended complaint … [and] offering the[] amended complaint … inexplicable and unjustified"). This Court should do the same.

In sum, under either a Rule 16(b) or Rule 15 analysis, the Court should deny Plaintiffs' motion in light of their unjustified delay in seeking to add a second round of new plaintiffs.

### C. The Addition of New Plaintiffs Would Prejudice Google

Should the Court apply Rule 15 to Plaintiffs' motion, Plaintiffs' request to amend still fails. *See* Fed. R. Civ. P. 15(a)(2) (stating that a party may amend only with the opposing party's written consent or leave, which should freely be given when justice requires).

Courts may decline to grant leave to amend under Rule 15 if there is strong evidence of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment, etc." *Sonoma Cnty. Ass'n of Retired Employees v. Sonoma Cnty.*, 708 F.3d 1109, 1117 (9th Cir. 2013) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). Plaintiffs' proposed addition of new plaintiffs at this stage would unfairly prejudice Google because it would cause substantial delay and require additional fact investigation and discovery.

"[U]nder Rule 15, prejudice is generally found where the amendment would cause substantial delay." *Harris*, 2009 WL 3710696, at *2. That rule applies with full force here. Adding new class representatives requires fresh discovery into their suitability as class representatives, adequacy, and typicality. *Osakan v. Apple Am. Grp.*, 2010 WL 1838701, at *5 (N.D. Cal. May 5, 2010) (finding prejudice because "[d]efendants would need to ascertain whether any of the four proposed plaintiffs are subject to unique defenses, which would bear upon the typicality requirement of Rule 23"). "Even if some class discovery is common to all the parties," where "new parties [must] undergo independent fact discovery," there is prejudice. *See In re Outlaw Lab'y, LP Litig.*, 2020 WL 434477, at *6 (S.D. Cal. Jan. 28, 2020) (denying motion to amend to add two parties).[6]

Even in relatively simple cases, discovery into new parties that raise unrelated facts and potential defenses takes months. *See Roling v. E*Trade Sec. LLC*, 279 F.R.D. 522, 525 (N.D. Cal. 2012) (motion to add new named plaintiff filed four months before opposition to class certification was due would be "unfairly prejudicial"). New parties must "undergo independent fact discovery," which will "likely delay the [close of] class discovery." *In re Outlaw Lab'y*, 2020 WL 434477, at *6.

The addition of new plaintiffs in this case, if permitted, would require Google to perform a substantial amount of additional investigation. Crawford Decl. ¶ 3. For example, according to

---

[6] Moreover, a putative class representative should not be permitted to dredge up substitutes each time a defendant uncovers fatal problems with the original representative's claims (*e.g.* the fact that none of the existing Plaintiffs actually reviewed the alleged "express promise" in the Chrome Privacy Notice on which their claims are based). *See Velazquez v. GMAC Mortg. Corp.*, 2009 WL 2959838, at *4 (C.D. Cal. Sept. 10, 2009) (courts should not "permit amendments that amount to a 'back-door attempt to begin the action anew' where, in all likelihood, 'the original plaintiffs were never qualified to represent the class'") (quoting *Lidie v. State of California*, 478 F.2d 552, 555 (9th Cir. 1973)).

1  Plaintiffs, the newly proposed plaintiffs are Google Account holders, and Google would therefore
2  have to investigate and pull the subscriber and My Activity data relating to the two new plaintiffs, for
3  each of their Google accounts, and perform burdensome searches of its logs infrastructure for the
4  proposed plaintiffs' identifiers. *Id*. The current plaintiffs have also provided in some instances cookie
5  values that include pseudonymous identifiers (that Google does not associate with specific users) to
6  locate data associated with their browsing activity; to the extent the newly proposed plaintiffs were to
7  provide such values Google would again have to undertake similarly burdensome searches of its logs
8  infrastructure for information. Additionally, to the extent the proposed plaintiffs are not similarly
9  situated to the current plaintiffs in any other relevant respect, their addition would require that Google
10 investigate new defenses that are unique to the proposed plaintiffs, and potentially require Google to
11 amend its Answer.

12  Google would also have to take the depositions of the new plaintiffs. Due to Plaintiffs' undue
13 delay in filing the Motion, the expected timing of a decision is not until after January 6, 2022,
14 meaning depositions of the proposed new plaintiffs would not occur until after the deadline for
15 Google's opposition to Plaintiffs' class certification brief, and potentially after the close of fact
16 discovery on January 21, 2022. This would thwart the Court's May 20, 2021 order that "[t]he parties
17 should conduct any expert discovery needed for class certification *before* the briefing on class
18 certification *just as the parties conduct fact discovery needed for class certification*." Dkt. 201
19 (emphasis added).

20  Because the adding the new plaintiffs so late in the case would cause delay and prejudice
21 Google, the Motion should be denied.

## **CONCLUSION**

23  Google respectfully requests that the Motion be denied.

25  DATED: September 24, 2021                    QUINN EMANUEL URQUHART & SULLIVAN, LLP

26                                              By  */s/ Andrew H. Schapiro*
27                                                  Andrew H. Schapiro (admitted pro hac vice)
                                                    andrewschapiro@quinnemanuel.com
28                                                  191 N. Wacker Drive, Suite 2700

Chicago, IL 60606
Telephone: (312) 705-7400
Facsimile: (312) 705-7401

Stephen A. Broome (CA Bar No. 314605)
sb@quinnemanuel.com
Viola Trebicka (CA Bar No. 269526)
violatrebicka@quinnemanuel.com
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Jomaire Crawford (admitted pro hac vice)
jomairecrawford@quinnemanuel.com
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100

Josef Ansorge (admitted pro hac vice)
josefansorge@quinnemanuel.com
1300 I Street NW, Suite 900
Washington D.C., 20005
Telephone: (202) 538-8000
Facsimile: (202) 538-8100

Jonathan Tse (CA Bar No. 305468)
jonathantse@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, CA 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

*Attorneys for Defendant Google LLC*