```
 1                    UNITED STATES DISTRICT COURT

 2                   NORTHERN DISTRICT OF CALIFORNIA

 3                          SAN JOSE DIVISION

 4

 5                                  )  C-21-02155 YGR
           IN RE GOOGLE RTB CONSUMER )
 6         PRIVACY LITIGATION,       )  SAN JOSE, CALIFORNIA
                                     )
 7                                   )  AUGUST 30, 2022
                                     )
 8         _____  )  PAGES 1-93

 9

10                    TRANSCRIPT OF PROCEEDINGS
            BEFORE THE HONORABLE VIRGINIA K. DEMARCHI
11                UNITED STATES MAGISTRATE JUDGE

12

13         A P P E A R A N C E S:

14         FOR THE PLAINTIFFS:    PRITZKER LEVINE LLP
                                  BY:  ELIZABETH C. PRITZKER
15                                     BETHANY CARACUZZO
                                  1900 POWELL STREET, SUITE 450
16                                EMERYVILLE, CALIFORNIA  94608

17                                BLEICHMAR FONTI & AULD LLP
                                  BY:  LESLEY E. WEAVER
18                                555 12TH STREET, SUITE 1600
                                  OAKLAND, CALIFORNIA  94607
19

20         FOR THE DEFENDANT:     COOLEY LLP
                                  BY:  JEFFREY M. GUTKIN
21                                     AARTI REDDY
                                  3 EMBARCADERO CENTER, 20TH FLOOR
22                                SAN FRANCISCO, CALIFORNIA  94111

23         OFFICIAL COURT REPORTER:    LEE-ANNE SHORTRIDGE, CSR, CRR
                                       CERTIFICATE NUMBER 9595
24

25              PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
                   TRANSCRIPT PRODUCED WITH COMPUTER
```

```
1      SAN JOSE, CALIFORNIA                      AUGUST 30, 2022

2                       P R O C E E D I N G S

3          (COURT CONVENED AT 10:03 A.M.)

4              THE COURT:  GOOD MORNING.  PLEASE BE SEATED.

5              MS. PRITZKER:  GOOD MORNING.

6              MS. REDDY:  GOOD MORNING, YOUR HONOR.

7              THE CLERK:  CALLING CASE 21-CV-2155, IN RE: GOOGLE

8      RTB CONSUMER PRIVACY LITIGATION, ON FOR DISCOVERY HEARING AND

9      MOTION TO STRIKE.

10         IF THE PARTIES WOULD STATE THEIR APPEARANCES, BEGINNING

11     WITH PLAINTIFFS' COUNSEL.

12         PLEASE COME UP TO THE PODIUM.

13         THANK YOU.

14             MS. PRITZKER:  GOOD MORNING, YOUR HONOR.

15     ELIZABETH PRITZKER, PRITZKER LEVINE, FOR THE PLAINTIFFS.

16             THE COURT:  GOOD MORNING.

17             MS. WEAVER:  GOOD MORNING, YOUR HONOR.

18     LESLEY WEAVER, BLEICHMAR FONTI & AULD, FOR PLAINTIFFS.

19             THE COURT:  GOOD MORNING.

20             MS. CARACUZZO:  GOOD MORNING, YOUR HONOR.

21     BETHANY CARACUZZO OF PRITZKER LEVINE FOR PLAINTIFFS.

22             THE COURT:  OKAY.  GOOD MORNING.

23             MS. REDDY:  GOOD MORNING, YOUR HONOR.

24     AARTI REDDY FROM COOLEY LLP FOR DEFENDANT GOOGLE LLC.

25             THE COURT:  GOOD MORNING.
```

1             MR. GUTKIN:  GOOD MORNING, YOUR HONOR.

2        JEFF GUTKIN FROM COOLEY, ALSO FOR GOOGLE.

3             THE COURT:  ALL RIGHT.  GOOD MORNING.

4        SO YOU ALL MAY BE SEATED.

5        WE DO HAVE, UNFORTUNATELY, A TECHNOLOGICAL PROBLEM WITH

6   THE MICROPHONES ON THE PLAINTIFF'S SIDE OF THE ROOM, WHICH I

7   DID NOT DISCOVER UNTIL AFTER OUR VERY LONG HEARING LAST WEEK.

8             SO WHAT I'M GOING TO INVITE PLAINTIFFS TO DO IS TO COME UP

9   TO THE PODIUM TO PRESENT YOUR SIDE OF THE ARGUMENT.  YOU KNOW,

10  WE USUALLY GO BACK AND FORTH, SO I'M GOING TO INVITE THE

11  PLAINTIFFS TO JUST STAY UP HERE, BECAUSE WE -- EVEN THOUGH, AS

12  YOU CAN SEE, WE HAVE TRANSCRIPTION, THE COURT REPORTER OFTEN

13  FINDS A RECORDING HELPFUL.  SO FOR HER BENEFIT, I AM TRYING TO

14  MAKE A GOOD RECORDING OF THIS AS WELL.

15            DEFENDANTS, I'M HAPPY TO HAVE YOU SEATED AT COUNSEL TABLE.

16  YOUR MICROPHONE IS WORKING WELL, SO I WOULD JUST ASK THAT YOU

17  SPEAK INTO THE MICROPHONE.

18            BUT UNTIL WE GET THIS PROBLEM FIXED, THAT'S HOW I HOPE TO

19  PROCEED.

20            ANY QUESTIONS ABOUT THAT FROM PLAINTIFFS' SIDE?  I'M SORRY

21  TO MAKE YOU COME UP, BUT I THINK THAT WILL BE THE MOST

22  EFFECTIVE FIX FOR NOW.

23        OKAY?

24            MS. PRITZKER:  THAT'S FINE, YOUR HONOR.

25            THE COURT:  OKAY, GOOD.

1          I ALSO INTEND TO CONDUCT THIS HEARING IN PUBLIC, NOT UNDER

2     SEAL, BECAUSE I DON'T EXPECT IT WILL BE NECESSARY TO DISCUSS

3     THE CONTENTS OF ANY INFORMATION A PARTY HAS DESIGNATED

4     CONFIDENTIAL.

5          MOST OF THE JOINT DISCOVERY DISPUTE SUBMISSION IS NOT

6     UNDER SEAL, AND TO THE EXTENT THERE IS SOME NEED TO RESORT TO

7     CONFIDENTIAL INFORMATION, FOR EXAMPLE, INFORMATION PRODUCED IN

8     THE CALHOUN MATTER, AS YOU KNOW FROM OUR PROCEEDINGS LAST WEEK,

9     I WILL INSIST THAT THE PARTIES TALK ABOUT THAT MATERIAL FIRST.

10          SO IF YOU FEEL THAT IT IS ABSOLUTELY NECESSARY TO

11     REFERENCE SOMETHING THAT IS NOT PUBLIC, PLEASE ALERT ME TO THAT

12     BEFORE YOU JUST SAY IT SO THAT -- EVEN THOUGH THERE'S NO ONE IN

13     THE COURTROOM TODAY, I WOULD LIKE TO BE CAREFUL ABOUT THAT, AND

14     IF WE DO NEED TO HEAR SOMETHING THAT'S UNDER SEAL, THEN WE CAN

15     AT LEAST ACCOUNT FOR THAT IN THE PROCEEDINGS.

16          ALL RIGHT.  SO THAT'S HOW I'D LIKE TO PROCEED.

17               MS. PRITZKER:  VERY WELL.

18               THE COURT:  SO THIS DISPUTE IS DOCKET NUMBER 291.

19     IT'S A DISPUTE REGARDING DAMAGES RELATED DISCOVERY.

20          AND LET ME JUST ASK, HAS THERE BEEN ANY NARROWING OF THE

21     DISPUTE SINCE IT WAS FILED ON AUGUST 15TH?

22          LET ME ASK THE PLAINTIFFS FIRST.

23               MS. PRITZKER:  GOOD MORNING, YOUR HONOR.  THANK YOU.

24          ELIZABETH PRITZKER FOR THE PLAINTIFFS.

25          CONSISTENT WITH YOUR DIRECTION AT LAST WEEK'S HEARING, WE

1    DID PROVIDE GOOGLE WITH SOME MEET AND CONFER CORRESPONDENCE.

2    WE DID THAT ON THURSDAY, AUGUST 25.  IT DID INCLUDE -- THERE

3    WAS A -- AGAIN, PURSUANT TO YOUR NEW PROTOCOL, THERE WAS A

4    SEPARATE SUBMISSION FROM CALHOUN COUNSEL THAT WAS INTENDED AS

5    AN AID TO GOOGLE'S COUNSEL AS TO WHERE INFORMATION MIGHT BE

6    LOCATED, HOW IT COULD BE OBTAINED EASILY, AND WHERE IT EXISTS,

7    ESSENTIALLY.

8         GOOGLE HAS INDICATED LAST NIGHT THAT IT HASN'T REVIEWED

9    THAT CORRESPONDENCE.  IT'S -- YOU KNOW, WHICH IS --

10             THE COURT:  SO THEY'RE --

11             MS. PRITZKER:  IT'S SORT OF A CONTINUING PATTERN IN

12    THIS CASE.

13             THE COURT:  IT'S NOT NARROWED.  MY QUESTION IS JUST

14    WHETHER IT WAS NARROWED.

15             MS. PRITZKER:  IT'S NOT BEEN NARROWED --

16             THE COURT:  OKAY.

17             MS. PRITZKER:  -- TO MY KNOWLEDGE, UNLESS GOOGLE

18    COUNSEL HAS SOMETHING TO THE CONTRARY TODAY.

19        WE CERTAINLY ENDEAVORED TO TRY AND NARROW IT, BUT WE'RE

20    NOT THERE.

21             THE COURT:  ALL RIGHT.

22             MS. CARACUZZO:  YOUR HONOR, IF I MIGHT,

23    BETHANY CARACUZZO ON BEHALF OF PLAINTIFFS.

24        THE AUGUST 15TH LETTER, SUBMISSION, WAS ALREADY A

25    NARROWING OF THE DISPUTES THAT HAD OCCURRED FROM YOUR PRIOR

1      HEARING FROM THIS BACK IN MARCH AND MAY.

2              THE COURT:  OKAY, GREAT.  SO YOU DON'T HAVE TO JUMP

3      UP AND DOWN, AS LONG AS YOU DON'T BLOCK MY VIEW OF DEFENDANTS,

4      IF YOU ALL WANTED TO STAY UP HERE -- I'M SORRY THAT MAKES YOU

5      STAND, BUT I DON'T WANT TO CREATE SOME AWKWARDNESS.  I KNOW YOU

6      HAVE ALL KINDS OF BINDERS AND EVERYTHING, BUT I'M TRYING TO

7      ALLOW YOU TO STAY IN ONE PLACE IF YOU WOULD LIKE.

8          OKAY.  SO THE PARTIES HAVE ORGANIZED THIS DISPUTE INTO SIX

9      CATEGORIES, THAT'S HELPFUL, AND I WOULD JUST LIKE TO GO THROUGH

10     THEM, AND I AM RELYING ON THE FRAMING IN THE LETTER THAT I

11     RECEIVED.

12         SO WHAT I UNDERSTAND ABOUT THE FIRST CATEGORY OF DISPUTE,

13     WHICH IS A REQUEST BY THE PLAINTIFFS FOR ANNUAL REVENUE DERIVED

14     FROM RTB IN THE UNITED STATES, THAT THE ISSUE HERE -- AND I'M

15     TRYING TO CUT TO THE CHASE -- IS THAT THERE HAS NOT BEEN ANY

16     INFORMATION, ANY USEFUL FINANCIAL INFORMATION THAT PLAINTIFFS

17     BELIEVE THEY'VE RECEIVED SO FAR FROM GOOGLE, AND SO THEY ARE

18     LOOKING FOR THIS REVENUE INFORMATION AS A BASIS FOR THEIR

19     DAMAGES ANALYSIS.

20             IS THAT A FAIR SUMMARY?

21             MS. PRITZKER:  YES, THAT'S A FAIR SUMMARY.

22             THE COURT:  OKAY.

23             MS. PRITZKER:  WE DO THINK IT'S IMPORTANT TO OUR

24     ANALYSIS UNDER AT LEAST A COUPLE OF DAMAGE THEORIES THAT ARE

25     TIED TO OUR THEORY OF LIABILITY IN THIS CASE.

1    BUT, YES, THAT'S A FAIR SUMMARY, YOUR HONOR.

2    THE COURT:  OKAY.  AND I DON'T BELIEVE THAT I HAVE

3    ALREADY DECIDED THAT THIS INFORMATION IS RELEVANT.  THAT WAS A

4    CHARACTERIZATION IN THE LETTER.  I'M TRYING TO BE VERY CAREFUL

5    IN MY ORDER ABOUT WHAT I'M ACTUALLY DECIDING, AND I RECOGNIZE

6    THAT THAT ARGUMENT HAS BEEN MADE, BUT I HAVE NOT DECIDED IT IS

7    RELEVANT.

8    I UNDERSTAND GOOGLE'S POSITION IS THAT A REQUEST FOR

9    ANNUAL REVENUE FROM RTB IS OVERBROAD BECAUSE IT'S OVERINCLUSIVE

10    AS A MEASURE OF DAMAGES FOR UNJUST ENRICHMENT.

11    IS THAT FAIR TO SAY?

12    MS. REDDY:  YES, YOUR HONOR, THAT IS OUR POSITION.

13    I WILL NOTE THAT WE HAVE, FOR THE LAST SEVERAL MONTHS,

14    BEEN FOCUSSED ON YOUR HONOR'S ORDERS WITH RESPECT TO

15    PLAINTIFFS' DAMAGES RELATED DISCOVERY AS SET FORTH IN ECF

16    NUMBERS 189 AND 217.

17    FROM OUR PERSPECTIVE, THESE REQUESTS HAVE ALREADY BEEN

18    LITIGATED AND THE COURT HAS REALLY TAKEN THE TIME TO TRY AND

19    NARROW PLAINTIFFS' OVERBROAD DAMAGES RELATED REQUESTS AND

20    IDENTIFIED A VERY SPECIFIC PROCESS THAT THE PARTIES WERE TO

21    FOLLOW SO THAT PLAINTIFFS COULD OBTAIN THE DAMAGES RELATED

22    DISCOVERY THAT THEY SEEK IN A MANNER THAT IS PROPORTIONAL TO

23    THE NEEDS OF THE CASE, INCLUDING DIRECTING THE PARTIES TO MEET

24    AND CONFER AS TO THE SPECIFIC DATA SIGNALS THAT PLAINTIFFS

25    CONTEND REVEAL PERSONAL OR SENSITIVE INFORMATION, AND DIRECTING

1      GOOGLE TO LOOK FOR DOCUMENTS THAT POTENTIALLY QUANTIFY THE

2      REVENUE IMPACT OF THOSE DATA SIGNALS AS THEY ARE SHARED THROUGH

3      RTB.

4              THE COURT:  AND HAS GOOGLE IDENTIFIED ANY, ANY

5      INFORMATION THAT REVEALS SOME VALUE ATTRIBUTED TO THOSE DATA

6      SIGNALS?

7              MS. REDDY:  SO, YOUR HONOR, WE'VE DONE TWO THINGS.

8      WE'VE ALREADY APPLIED SEARCH TERMS THROUGH OUR CUSTODIAL

9      PROCESS TO LOOK FOR DOCUMENTS RELATED TO THE VALUATION OR

10     THE -- ASSESSING THE REVENUE IMPACT OF PARTICULAR DATA SIGNALS

11     SHARED THROUGH RTB, INCLUDING TERMS SUCH AS "REVENUE" WITHIN

12     SOME NUMBER OF "VERTICAL" OR "COOKIES" OR "BISCOTTI" OR OTHER

13     IDENTIFIERS.

14         AND IN ADDITION TO THAT, WE HAVE COMMITTED TO CONDUCT A

15     FURTHER SEARCH FOR DOCUMENTS THROUGH A TARGETED COLLECTION.

16             THE COURT:  HAVE YOU FOUND ANYTHING YET?

17             MS. REDDY:  WELL, WE'RE NEGOTIATING WITH PLAINTIFFS

18     ON DIFFERENT DATA SIGNALS, SO WE HAVE SORT OF A DIFFERENCE OF

19     OPINION WITH PLAINTIFF ON THE DATA SIGNALS WE SHOULD BE

20     FOCUSSED ON.

21         WE'VE IDENTIFIED 13 DATA SIGNALS THAT WE CONTEND WE'RE

22     WILLING TO LOOK FOR THAT PLAINTIFFS CONTEND CONVEY PERSONAL OR

23     SENSITIVE INFORMATION AND THAT ARE USER SPECIFIC.

24             THE COURT:  UM-HUM.

25             MS. REDDY:  THE ISSUE HERE IS THAT PLAINTIFFS DON'T

1    APPEAR TO BE INTERESTED IN FOLLOWING THE PROCESS THAT'S LAID

2    OUT.

3              THE COURT:  ALL RIGHT.  HERE'S --

4              MS. PRITZKER:  THAT'S ALSO A SEPARATE ISSUE.

5              THE COURT:  LET ME --

6              MS. PRITZKER:  THAT'S NOT THE ARGUMENT.

7              THE COURT:  JUST A MOMENT.

8              MS. PRITZKER:  YES, YOUR HONOR.

9              THE COURT:  HANG ON.

10              MS. PRITZKER:  SORRY.

11              THE COURT:  WHEN I ISSUED MY EARLIER ORDER -- AND I

12    DID GO BACK AND READ DOCKETS 189 AND 217, SO I UNDERSTOOD AT

13    THAT TIME THAT THE PARTIES WERE IN AGREEMENT ABOUT WHAT THE

14    ITEMS OF PERSONAL INFORMATION WERE THAT WERE SHARED VIA RTB.

15        I HAVE NOW COME TO UNDERSTAND THERE IS NOT AGREEMENT ON

16    THAT POINT.

17              MS. PRITZKER:  THERE IS SUBSTANTIAL OVERLAP.

18              THE COURT:  JUST A MINUTE, PLEASE.

19              MS. PRITZKER:  I JUST WANT TO MAKE THAT CLEAR.

20              THE COURT:  OKAY.  THERE'S NOT AGREEMENT ON THE

21    POINT, AND IT'S LIKELY THERE WILL BE SOME LITIGATION ON THE

22    MERITS, AND SO THAT'S FINE.

23        AND IT'S NOT SOMETHING THAT I CAN NECESSARILY RESOLVE.

24        SO HERE'S MY CURRENT THOUGHT, AND I'M HAPPY TO HEAR FROM

25    YOU IN MORE DETAIL ABOUT IT, BUT, YOU KNOW, I WAS PREPARED TO

1    ORDER THE DEFENDANT TO PRODUCE VALUATIONS OR ESTIMATES OF

2    VALUATIONS OR SOME KIND OF FINANCIAL INFORMATION THAT WAS MORE

3    SPECIFIC TO THE INFORMATION THAT'S SHARED IN RTB, EVEN IF IT

4    WASN'T A PERFECT MATCH, IF IT WAS OVERLAPPING SOME SUBSET, THAT

5    KIND OF THING, IF THERE WAS ANYTHING.

6        IF THERE ISN'T ANYTHING -- AND SO FAR I HAVEN'T HEARD THAT

7    THERE IS ANYTHING, ONLY THAT IT'S BEING LOOKED FOR, AND THE

8    DISPUTE -- THE LAST DISPUTE I HAD WAS IN LATE APRIL OF 2022, I

9    THINK, IT WAS DOCKET 189 -- THEN WE'RE IN A POSITION WHERE THE

10   PLAINTIFFS NEED TO PROCEED WITH THEIR CLASS CERTIFICATION

11   MOTION AT SOME POINT, I THINK RIGHT NOW IT'S STILL SEPTEMBER,

12   AND THERE'S NO DATA TO RELY ON.

13       SO IT MAY BE THAT THE DEFENDANT WILL BE ABLE TO ARGUE TO

14   JUDGE GONZALEZ ROGERS THAT PLAINTIFFS' THEORY OF DAMAGES,

15   RESTITUTION, UNJUST ENRICHMENT, WHATEVER, IS ENTIRELY

16   UNRELIABLE, BUT THAT'S A LEGAL ARGUMENT THAT YOU WOULD MAKE

17   WHEN YOU GET THERE.

18       AND DISCOVERY IS DIFFERENT.

19       AND SO I -- I AM FEELING CONSTRAINED BY THE CIRCUMSTANCES

20   TO CONCLUDE THAT IT -- FOR LACK OF ANYTHING ELSE, THAT GOOGLE

21   MUST PRODUCE THE ANNUAL REVENUE FOR RTB IN THE U.S. DURING THE

22   RELEVANT PERIOD.

23       I MEAN, I DON'T SEE ANY ARGUMENT THAT IT'S -- I AGREE IT'S

24   OVERINCLUSIVE AS A MEASURE OF DAMAGES.  I THINK THE PLAINTIFFS

25   WOULD AGREE.  THEY'RE NOT SAYING THAT ALL OF THE REVENUE IS

```
 1      NECESSARILY -- MAYBE THEY WILL BE.  BUT IT WOULD BE MAYBE A

 2      REMARKABLE ARGUMENT TO SAY LITERALLY ALL REVENUE IS

 3      ATTRIBUTABLE TO THE SHARING OF THE INFORMATION WITHOUT ANY

 4      APPORTIONMENT FOR THE VALUE OF THE AD OR POSSIBLY MANY OTHER

 5      THINGS.

 6            BUT WE HAVE TO HAVE SOMETHING TO START WITH.

 7            MS. REDDY:  UNDERSTOOD, YOUR HONOR.

 8            AND FROM OUR PERSPECTIVE, THERE ACTUALLY ARE DOCUMENTS

 9      THAT PLAINTIFFS WOULD CONTEND ARE RELEVANT TO THEIR DAMAGES

10      THEORY THAT FALL WITHIN THE SCOPE OF YOUR HONOR'S ORDERS AT

11      ECF 189 AND 217, AND IN THE MEET AND CONFER CORRESPONDENCE THAT

12      MS. PRITZKER JUST REFERENCED THAT WE RECEIVED AFTER HOURS ON

13      THURSDAY EVENING, PLAINTIFFS CITE A NUMBER OF DOCUMENTS, ABOUT

14      EIGHT DOCUMENTS, THAT THEY CONTEND ACTUALLY ASSESS THE REVENUE

15      IMPACT OF PARTICULAR DATA SIGNALS.

16            THE COURT:  UM-HUM.

17            MS. REDDY:  IN FACT, ONE OF THE CATEGORIES THAT YOUR

18      HONOR HAS BEEN FACED WITH RESOLVING TODAY, THE THIRD CATEGORY,

19      INVOLVES QUANTIFICATION OF THE VALUE OF COOKIES AND OTHER USER

20      IDENTIFIERS.

21            SO THESE ARE DOCUMENTS THAT PLAINTIFFS HAVE ALREADY

22      OBTAINED THROUGH OUR CUSTODIAL PRODUCTION.

23            THE ONLY QUESTION IS, WHAT ARE THE ADDITIONAL DATA SIGNALS

24      THAT WILL BE THE FOCUS OF OUR TARGETED COLLECTION TO ROUND OUT

25      WHAT WE'VE ALREADY PRODUCED?
```

1          THE COURT:  SO LET ME JUST ASK A MORE BASIC QUESTION

2     ABOUT -- WE'VE BEEN TALKING ABOUT RELEVANCE, AND CERTAINLY

3     THAT'S AN IMPORTANT CRITERIA FOR DISCOVERY.

4          BUT IS IT ACTUALLY BURDENSOME FOR GOOGLE TO PRODUCE THE

5     REVENUE -- IT'S ONLY ANNUAL REVENUE, NOT QUARTERLY, NOT

6     MONTHLY.  I SEE A REQUEST FOR ANNUAL REVENUE DERIVED FROM RTB

7     IN THE UNITED STATES.  IS THAT A BURDENSOME THING TO PRODUCE?

8          MS. REDDY:  WELL, YOUR HONOR, WE'RE IN THE PROCESS --

9     AGAIN, THIS IS AN ISSUE THAT REALLY HASN'T BEEN TAKEN UP BY THE

10    PARTIES UNTIL THE BRIEFING.

11         SO JUST TO TAKE A STEP BACK ON REVENUE IN PARTICULAR, THIS

12    RELATES TO REQUEST FOR PRODUCTION NUMBER 34, WHICH WAS IN THE

13    FIRST SET OF REQUESTS FOR PRODUCTION, AND GOOGLE ENDEAVORED TO

14    SEARCH FOR DOCUMENTS RESPONSIVE TO THIS REQUEST BY APPLYING

15    SEARCH TERMS TO ITS CUSTODIAL PRODUCTION SO THAT IT COULD

16    FIND --

17         THE COURT:  FOR REVENUE?

18         MS. REDDY:  FOR REVENUE RELATED INFORMATION.

19         THE COURT:  WHY WOULD YOU APPLY SEARCH TERMS TO A

20    CUSTODIAL PRODUCTION FOR SOMETHING LIKE REVENUE?  DON'T YOU

21    JUST GO TO THE RELEVANT FINANCIAL OFFICER IN THE COMPANY AND

22    SAY, GIVE ME THE REVENUE FOR RTB?

23         WHAT IS -- WHY ARE WE -- THIS IS THE PROBLEM I'VE HAD MANY

24    TIMES IN THIS CASE, WHICH IS THERE ARE SOME THINGS THAT ARE

25    AMENABLE TO SEARCH TERMS AND OTHER THINGS THAT JUST AREN'T.

1        YOU JUST NEED TO FIND THE RIGHT DATA SOURCE AND QUERY IT.

2            SO HOW -- HOW IS THIS NOT AN EXAMPLE OF THAT?

3                MS. REDDY:  UNDERSTOOD, YOUR HONOR, AND WHEN

4    PLAINTIFFS RE-RAISED THE ISSUE MORE RECENTLY AND TOOK THE

5    POSITION THAT OUR CUSTODIAL PRODUCTION WAS DEFICIENT IN THIS

6    REGARD, WE TOOK STEPS TO LOOK FOR DOCUMENTS VIA A TARGETED

7    COLLECTION TO IDENTIFY GROSS REVENUE AND COSTS AS THEY'RE

8    MAINTAINED IN THE ORDINARY COURSE OF BUSINESS FOR AUTHORIZED

9    BUYERS AND OPEN BIDDERS, WHICH ARE THE THIRD PARTY PARTICIPANTS

10   IN RTB.

11       WE AGREE WITH YOUR HONOR THAT GROSS REVENUE IS OVERBROAD,

12   SO WE'RE LOOKING FOR WAYS TO PRODUCE REVENUE AS TO THIRD

13   PARTIES SPECIFICALLY.

14       WE JUST HAVEN'T COMPLETED THAT PROCESS BECAUSE, AGAIN,

15   THIS IS SOMETHING THAT PLAINTIFFS ONLY RE-RAISED IN THE CONTEXT

16   OF THE MOTION TO COMPEL THAT WAS FILED RECENTLY.

17               THE COURT:  ISN'T RTB ONLY THIRD PARTIES?  SO WHY

18   WOULD THAT QUALIFIER BE RELEVANT?

19               MS. REDDY:  BECAUSE RTB IS NOT ONLY THIRD PARTIES.

20   RTB ALSO INCLUDES GOOGLE ENTITIES THAT PARTICIPATE IN THE

21   AUCTION, WHICH ARE VERY CLEARLY NOT ENCOMPASSED BY THE

22   ALLEGATIONS IN PLAINTIFFS' COMPLAINT.

23               THE COURT:  OKAY.  WELL, THEN THAT MAY BE A POINT FOR

24   THE PARTIES TO TALK ABOUT FURTHER.

25           BUT I AM INCLINED TO ORDER PRODUCTION OF REVENUE RELATED

1    TO RTB.  MAYBE IT NEEDS TO BE SLICED MORE FINELY, OR MAYBE YOU

2    CAN HAVE SOME, SOME FURTHER DEBATE ABOUT THAT.

3        BUT LET ME HEAR FROM THE PLAINTIFFS ON THIS POINT,

4    INCLUDING THE CONCERNS THAT HAVE BEEN EXPRESSED BY GOOGLE ABOUT

5    IT'S TOO BROAD, EVEN IF IT'S ANNUAL REVENUE DERIVED FROM RTB IN

6    THE UNITED STATES.  IT NEEDS TO BE MORE NARROWLY TAILORED, AND

7    THERE ARE FORTHCOMING BETTER SOURCES OF INFORMATION.

8        MS. PRITZKER:  I GUESS TWO POINTS.

9        YOUR HONOR, WE DO NEED THE ACTUAL REVENUES AND WE DO NEED

10   THE GROSS REVENUE INFORMATION BECAUSE IT'S A STARTING POINT OF

11   ANY DAMAGES ANALYSIS.

12       THE COURT:  THE GROSS REVENUE OF WHAT?  OF ALL RTB?

13   OR RTB INVOLVING NON-GOOGLE THIRD PARTIES?

14       MS. PRITZKER:  WE'LL TAKE BOTH, FRANKLY.

15       THE COURT:  I KNOW YOU'LL TAKE EVERYTHING.  BUT WHAT

16   WOULD BE RELEVANT TO YOUR CLAIM?

17       MS. PRITZKER:  THE REASON WHY -- I MEAN, BOTH ARE

18   RELEVANT BECAUSE THEY'RE RELEVANT TO OUR DAMAGES ANALYSIS, AND

19   TO THE EXTENT THAT GOOGLE IS GOING TO HAVE A CRITICISM OF OUR

20   DAMAGES ANALYSIS BECAUSE WE'RE LOOKING AT THE WRONG DATA POINT,

21   WE NEED THE DATA POINT THAT THEY'RE RELYING ON, TOO.

22       SO WE NEED BOTH.  WE NEED BOTH THE GROSS REVENUES, AND WE

23   NEED WHATEVER IT IS THAT THEY'RE TALKING ABOUT WHICH THEY'RE

24   SEARCHING FOR, WHICH APPARENTLY ISN'T PREPARED IN THE ORDINARY

25   COURSE OF BUSINESS.

1          THE COURT:  NO, NO.  WHAT I'M ASKING YOU IS FROM A

2     RELEVANCE PERSPECTIVE FOR YOUR CLAIMS, WHY WOULD IT BE RELEVANT

3     FOR THE PLAINTIFFS TO KNOW THE ANNUAL REVENUE GOOGLE RECEIVES

4     VIA THE RTB AUCTION FROM PEOPLE WHO ARE NOT THIRD PARTIES?

5          MS. PRITZKER:  WELL, GROSS REVENUES RELATED TO THE

6     WRONGDOING ARE EXACTLY THE STARTING POINT OF ANY DAMAGES

7     ANALYSIS.

8          THE COURT:  OKAY.  BUT THE WRONGDOING IS SHARING

9     INFORMATION TO THIRD PARTIES VIA RTB.

10          MS. PRITZKER:  WELL, BUT GOOGLE ALSO SHARES THAT

11     INFORMATION AS AN RTB PARTICIPANT WITH THE AD BUYERS THAT BUY

12     IT THROUGH GOOGLE.

13        SO IT'S A FALSE DISTINCTION, YOUR HONOR.  THE INFORMATION

14     IS STILL BEING SHARED WITH THIRD PARTIES THROUGH THE RTB

15     AUCTION.

16          THE COURT:  OKAY.  I MEAN, THAT SEEMS TO ME LIKE THE

17     RELEVANT LIMITER.  IF GOOGLE IS SHARING IT WITH ITSELF, THAT'S

18     NOT PART OF THIS CASE.

19          MS. PRITZKER:  IT'S NOT JUST SHARING IT WITH ITSELF.

20          THE COURT:  OKAY.  BUT THE RELEVANT UNIVERSE OF

21     REVENUE WOULD SEEM TO ME WOULD HAVE TO BE CABINED BY WHAT'S

22     GOING OUTSIDE OF GOOGLE.

23          MS. PRITZKER:  BUT --

24          THE COURT:  IS THAT NOT YOUR CLAIM?

25          MS. PRITZKER:  I THINK WE'VE GOT TO BE CAREFUL ABOUT

1      OUR TERMINOLOGY HERE.

2              THE COURT:  I AM TRYING TO BE.

3              MS. PRITZKER:  I MEAN, GOOGLE WANTS TO SAY THAT TO

4      THE EXTENT THAT THEY ARE A PARTICIPANT IN THE AUCTION, AND

5      THEY'RE USING THE INFORMATION TO SELL ADS TO THE FOLKS THAT IT

6      SELLS ADS TO AND SHARES THAT INFORMATION WITH ADS IN ITS OWN

7      EXCHANGE, THAT THAT SHOULD BE EXCLUDED.

8          IT SHOULDN'T BECAUSE THEY'RE STILL SHARING WITH THEIR

9      THIRD PARTIES WHO ARE PART OF THEIR OWN ADVERTISING CAMPAIGN.

10         SO THERE ISN'T -- THERE ISN'T ANYTHING LIKE WHAT THEY'RE

11     DESCRIBING WHERE IT JUST GOES TO GOOGLE, AT LEAST THROUGH RTB,

12     AND IT DOESN'T GO ANYWHERE ELSE.

13             THE COURT:  ALL RIGHT.

14             MS. PRITZKER:  IT ALWAYS GOES TO A THIRD PARTY.  AS

15     YOU POINTED OUT, THAT'S THE POINT OF THE RTB AUCTION.  THAT'S

16     THE POINT OF THE PROCESS.

17             THE COURT:  OKAY.

18             MS. WEAVER:  AND I WOULD JUST ADD THAT GOOGLE

19     SERVICES MAY BE PARTICIPANTS IN THESE AUCTION PROCESSES, SO

20     GOOGLE'S REVENUE TO GOOGLE ITSELF WOULD ALSO, A, BE RELEVANT AS

21     A POINT OF COMPARISON IN ANY EXPERT DAMAGES WE WANT TO KNOW;

22     BUT, B, MS. PRITZKER IS CORRECT, WE'RE NOT TALKING ABOUT AN RTB

23     PROCESS WHERE ALL THIRD PARTIES ARE EXCLUDED AND GOOGLE IS

24     SELLING IT TO ITSELF.  THAT DOESN'T MAKE SENSE.  THAT'S NOT HOW

25     THE AUCTION WORKS.

```
 1              THE COURT:  OKAY.  ALL RIGHT.

 2         LET ME HEAR FROM GOOGLE JUST IN RESPONSE ON THAT ISSUE

 3    ABOUT THIS, BECAUSE I UNDERSTOOD MS. REDDY TO BE SORT OF

 4    DESCRIBING SOME POSSIBLE SUBSET OF WHAT THE PLAINTIFFS ARE

 5    DOING.

 6              MR. GUTKIN:  WELL, YOUR HONOR, JUST TO RESPOND

 7     BRIEFLY, THIS WOULD BE A RADICAL CHANGE IN THE COURSE OF THE

 8     CASE THAT IS NOT CONSISTENT WITH THE COMPLAINT.

 9              GOOGLE'S OWN SERVICES THAT PARTICIPATE IN THE AD EXCHANGE

10    DOES NOT RESULT IN THE SHARING OF THE -- YOUR HONOR, AS WE'VE

11    BEEN DISCUSSING AT KIND OF EVERY HEARING WE HAVE, THESE BID

12    REQUESTS, OR WHAT THEY CALL IN THE COMPLAINT THE BID STREAM

13    DATA THAT'S PROVIDED TO THE THIRD PARTIES THAT PARTICIPATE IN

14    THE AD EXCHANGE, IT'S TWO CATEGORIES OF CUSTOMERS CALLED

15    AUTHORIZED BUYERS AND OPEN BIDDING PARTNERS.  THE DISCOVERY HAS

16    BEEN FOCUSSED ON THAT IN EVERY POSSIBLE RESPECT.

17              NOW PLAINTIFFS ARE SAYING, OH, WELL, IT'S ALSO RELEVANT

18    FOR US TO GET THE REVENUE FOR INTERNAL GOOGLE AD SERVICES JUST

19    BECAUSE THEY COMPETE IN THE AD EXCHANGE, AND THAT'S -- THAT'S

20    CLEARLY NOT CORRECT AND WOULD BE -- IT'S A CLEARLY

21    INAPPROPRIATE EXPANSION OF THE SCOPE OF THE CASE THAT'S NOT

22    CONSISTENT WITH THE ALLEGATIONS AND NOT CONSISTENT WITH THE

23    COURSE OF DISCOVERY TO DATE.

24              THE COURT:  YEAH, I WILL SAY, IT IS A LITTLE BIT OF A

25     SURPRISE TO ME TO HEAR THAT NOW.
```

1          MS. PRITZKER:  IT'S NOT AN EXPANSION, YOUR HONOR.

2     WE -- MAYBE WE HAVE A FACTUAL DISPUTE ABOUT WHAT GOOGLE IS

3     DOING AS A PARTICIPANT IN THE AUCTION.

4          BUT IT IS, IN FACT, SHARING THE INFORMATION WITH ITS OWN

5     AD BUYERS AS PART OF ITS --

6          THE COURT:  WHEN YOU SAY "ITS OWN AD BUYERS," WHAT

7     ARE YOU REFERRING TO?

8          MS. PRITZKER:  WELL, GOOGLE OPERATES AS A PARTICIPANT

9     IN THE EXCHANGE AND IT PROVIDES THAT INFORMATION TO A WHOLE SET

10    OF THIRD PARTIES THAT WANT TO PLACE ADS ON GOOGLE OR -- ON A

11    GOOGLE SITE OR OTHERWISE.

12          MS. WEAVER:  IF I MAY, FROM PARAGRAPH 168 OF THE

13    COMPLAINT, IT SAYS, "NEITHER GOOGLE NOR FACEBOOK DENY THE

14    EXISTENCE OF THE DEAL," AND THEN IT SAYS, "GOOGLE'S RESPONSE

15    HINTED THAT ITS DEAL WITH FACEBOOK WAS NOT UNIQUE, STATING THAT

16    IT IS JUST 'ONE OF OVER 25 PARTNERS PARTICIPATING IN OPEN

17    BIDDING' INSIDE THE GOOGLE AD EXCHANGE."

18          IT IS FALSE TO SAY THAT THERE ARE NO THIRD PARTIES

19    PARTICIPATING IN OPEN BIDDING.  FACEBOOK DOES IT, AND HERE

20    GOOGLE WAS ADMITTING -- THAT'S JUST ONE EXAMPLE, YOUR HONOR.  I

21    CAN FIND OTHER EXAMPLES.

22          THE COURT:  WELL, IF THE INFORMATION GOES TO FACEBOOK

23    AND FACEBOOK PAYS FOR IT, FACEBOOK IS A THIRD PARTY.

24          MS. PRITZKER:  CORRECT.

25          MR. GUTKIN:  YOUR HONOR, MS. WEAVER APPEARS TO HAVE

1    MISUNDERSTOOD WHAT I SAID.

2        THERE ARE TWO CATEGORIES OF THIRD PARTIES THAT PARTICIPATE

3    IN THE AD EXCHANGE:  AUTHORIZED BUYERS AND OPEN BIDDING

4    PARTNERS.  FACEBOOK IS AN OPEN BIDDING PARTNER.  WE AREN'T

5    CONTENDING THAT FACEBOOK IS A THIRD PARTY.

6        WHAT THEY ARE TALKING ABOUT IS GOOGLE SERVICES, INTERNAL

7    GOOGLE SERVICES THAT PARTICIPATE IN THE AD EXCHANGE.

8            THE COURT:  OKAY.

9            MS. PRITZKER:  I DON'T THINK THERE'S A DISTINCTION

10   THERE, YOUR HONOR.

11           THE COURT:  OKAY.

12           MS. PRITZKER:  AND IF THERE IS, WE CAN FIGHT IT OUT

13   WHEN WE GET THE MATERIALS.

14           THE COURT:  LET ME JUST ASK -- GO BACK TO THE

15   QUESTION I WAS ASKING BEFORE, WHICH IS ABOUT BURDEN.

16       I HAVEN'T HEARD ANYTHING YET THAT CAUSES ME TO THINK IT

17   WOULD BE BURDENSOME FOR GOOGLE TO PRODUCE THE ANNUAL REVENUE.

18       IS THERE SOME REASON WHY I WOULD BE MISTAKEN IF I

19   CONCLUDED THAT?

20           MS. REDDY:  NO, YOUR HONOR.

21       WE'RE JUST TRYING TO LOCATE THE DATA AS IT'S MAINTAINED IN

22   THE ORDINARY COURSE, AND SPECIFIC TO AUTHORIZED BUYERS AND OPEN

23   BIDDING PARTNERS, WHICH ARE THE THIRD PARTY ENTITIES THAT

24   PARTICIPATED IN THE AUCTION.

25           THE COURT:  OKAY.  THEN I THINK I'M -- I'M GOING TO

1    ORDER THAT THE ANNUAL REVENUE BE PRODUCED AT THIS STAGE BECAUSE

2    YOU ALL ARE TOO FAR ALONG IN THE PROCESS TO NOT HAVE ANY USEFUL

3    FINANCIAL INFORMATION AVAILABLE YET, AND IT DOESN'T SEEM LIKE,

4    DESPITE EVERYONE'S EFFORTS TO SEARCH FOR THINGS -- AND I

5    REALIZE THIS DISPUTE HAS KIND OF MATRICULATED OVER TIME, WE

6    STILL DON'T HAVE ANYTHING, AND IT SEEMS LIKE IF THERE IS

7    SOMETHING, AND SOME OF THESE OTHER CATEGORIES ADDRESS THAT, IT

8    WILL BE PARTIAL.

9         AND SO I CAN SEE AN ARGUMENT FROM THE PLAINTIFFS WHY IT

10    WOULD BE IMPORTANT TO HAVE THIS, EVEN IF IT IS OVERINCLUSIVE,

11    AS A MEASURE OF DAMAGES.

12         MS. REDDY:  ONE THING I WANTED TO CLARIFY, YOUR

13    HONOR, PLAINTIFFS HAVE ASKED FOR THIS INFORMATION IN THE

14    CONTEXT OF U.S. REVENUE AND THAT'S WHAT WE'RE SEARCHING FOR

15    BECAUSE THIS IS A U.S. BASED PUTATIVE CLASS, SO WE WEREN'T

16    LOOKING FOR GLOBAL REVENUE.

17         THE COURT:  NO, I UNDERSTAND.  THAT'S WHAT -- I'M

18    LOOKING AT THE REQUEST, AND THE REQUEST IS ANNUAL REVENUE

19    DERIVED FROM RTB REVENUE IN THE UNITED STATES.  SO THAT'S WHAT

20    I UNDERSTAND.

21         SO MOVING TO THE SECOND CATEGORY, WHICH ARE COSTS

22    ATTRIBUTABLE TO RTB IN THE UNITED STATES, I AM A LITTLE PUZZLED

23    BY THIS ONE BECAUSE I UNDERSTAND THE PLAINTIFFS TO SAY THEY'RE

24    NOT INTERESTED IN OPERATING COSTS, WHAT THE PLAINTIFFS WANT ARE

25    COSTS THAT SHOULD BE OFFSET OR THAT GOOGLE CONTENDS OUGHT TO BE

1    OFFSET AGAINST REVENUES TO CALCULATE UNJUST ENRICHMENT.

2         HAVE I GOT THAT CORRECT?

3              MS. PRITZKER:  YOU DO.

4              THE COURT:  OKAY.

5              MS. PRITZKER:  SO, AGAIN, ONE PIECE OF INFORMATION

6    THAT EXPERTS TYPICALLY LOOK AT IN CALCULATING DAMAGES FROM

7    REVENUE IS COSTS INCURRED TO GENERATE THE REVENUE STREAM IN THE

8    FIRST PLACE.  THIS IS KIND OF LIKE A COST OF GOODS SOLD

9    ANALYSIS.

10             THE COURT:  UM-HUM.

11             MS. PRITZKER:  AND TYPICALLY THESE ARE -- YOU KNOW,

12   DEFENDANTS WILL ARGUE THAT THOSE COSTS SHOULD BE OFFSET AS TO

13   ANY REVENUE THAT CAN BE CALCULATED FOR DAMAGES PURPOSES.

14        WE DID ASK GOOGLE TO PRODUCE DOCUMENTS ABOUT OFFSETTING

15   COSTS ATTRIBUTED TO RTB IN OUR REQUEST FOR PRODUCTION OF

16   DOCUMENTS.

17        GOOGLE STATES IN THE JOINT LETTER BRIEF AT PAGE 6 -- THIS

18   IS DOCKET 290-3 AT PAGE 6 -- THAT IT HAS NO RESPONSIVE

19   DOCUMENTS OR DISCOVERY ON THIS ISSUE.

20        THAT'S FINE.  THAT'S OKAY.

21        BUT IF GOOGLE DOES NOT POSSESS OR INTEND TO PROVIDE

22   DISCOVERY ON COSTS ATTRIBUTED TO RTB, THEN PLAINTIFFS ARE

23   ENTITLED TO A RECITATION ON THE RECORD HERE AND IN WRITING THAT

24   GOOGLE IS GOING TO WAIVE ANY CLAIM THAT PLAINTIFFS ARE ENTITLED

25   TO -- THAT -- ANY CLAIM THAT COSTS ATTRIBUTABLE TO RTB ARE AN

```
1    OFFSET TO DAMAGES IN THIS CASE.

2              THE COURT:  ALL RIGHT.  SO --

3              MS. PRITZKER:  YOU KNOW, WE --

4              THE COURT:  OKAY.

5              MS. PRITZKER:  WE EITHER NEED THE DISCOVERY OR WE

6    NEED AN AFFIRMATION THAT THEY'RE NOT GOING TO ASSERT THAT.

7              THE COURT:  SO THIS IS A DISCOVERY HEARING.  WE HAD

8    THIS SAME ISSUE COME UP WITH RESPECT TO RFP 53.  GOOGLE SAID IT

9    DIDN'T HAVE RESPONSIVE DOCUMENTS, SO THERE'S NOTHING TO

10   PRODUCE, AND I REQUIRED THEM TO AMEND THEIR STATEMENT IF IT

11   WASN'T CLEAR TO SAY THAT.

12        SO, I MEAN, IF THERE ARE NO RESPONSIVE DOCUMENTS, THERE

13   ARE NO RESPONSIVE DOCUMENTS.

14        WHAT IS -- WHAT IS GOOGLE'S POSITION ON THIS QUESTION?

15             MS. REDDY:  YES, AND I THINK THIS IS -- I THINK A

16   LITTLE BIT OF THIS IS THE PARTIES TALKING PAST EACH OTHER.

17        RFP 53, WHICH WE DID SUPPLEMENT OUR RESPONSE TO PURSUANT

18   TO THE COURT'S ORDER AT ECF 189, REQUESTED ALL COSTS RELATING

19   TO GOOGLE'S GRANTING, ACCESS SHARING, OR SENDING USER DATA OR

20   DERIVATIVE INFORMATION THROUGH RTB.

21        GOOGLE DOES NOT MAINTAIN SUCH INFORMATION IN THE ORDINARY

22   COURSE.  WE'VE INVESTIGATED THAT AND SUPPLEMENTED OUR RESPONSE

23   ACCORDINGLY.

24        WHAT I UNDERSTAND PLAINTIFFS TO BE REQUESTING NOW IS,

25   PURSUANT TO RFP 34, THE NET REVENUES OR OVERALL COSTS
```

1    ASSOCIATED WITH OPERATING RTB.

2         WE ARE LOOKING FOR THOSE DOCUMENTS AND WE'LL PRODUCE THEM

3    AS THEY'RE MAINTAINED IN THE ORDINARY COURSE.

4         BUT THAT IS DIFFERENT THAN WHAT THEY'VE REQUESTED AT

5    RFP 53.  THE PLAINTIFFS' DEMANDS IN THIS REGARD HAVE BEEN A

6    LITTLE BIT OF A MOVING TARGET, SO WE ARE LOOKING FOR THOSE

7    DOCUMENTS AND TRYING TO PRODUCE THEM VIA A TARGETED COLLECTION.

8         THE COURT:  WELL, I APPRECIATE YOU CLARIFYING THAT,

9    BUT THE RESPONSE IN YOUR PORTION OF THE JOINT LETTER SAYS, AS

10   TO COSTS, PLAINTIFFS PREVIOUSLY SERVED RFP 53.

11        GOOGLE RESPONDED IT DOESN'T HAVE RESPONSIVE DOCUMENTS,

12   PLAINTIFFS ARE RELITIGATING THIS DISPUTE AS WELL.

13        SO I WAS LED TO BELIEVE THAT YOU FELT IT WAS THE SAME

14   QUESTION.

15        SO IF IT'S NOT THE SAME QUESTION, THEN YOU SHOULD PRODUCE

16   THE INFORMATION.

17        AND, AGAIN, IT SHOULDN'T BE A QUESTION OF SEARCH TERMS.

18   IT SHOULD BE A QUESTION OF GETTING TO THE RIGHT PERSON WHO

19   KNOWS WHAT THE COSTS ARE AND FIGURING OUT HOW TO GENERATE THAT

20   FROM THE FINANCIAL ACCOUNTING SYSTEM.

21        IT SEEMS PRETTY STRAIGHTFORWARD.

22        MS. REDDY:  UNDERSTOOD, YOUR HONOR, AND I THINK THIS

23   IS AN ISSUE -- WE DIDN'T -- WE HAD PREVIOUSLY BEEN FOCUSSED ON

24   THE THIRD SET OF RFP'S AND IMPLEMENTING YOUR HONOR'S ORDERS ON

25   ECF 189 AND 217, AND WE DIDN'T LEARN UNTIL THE DAY OF FILING

 1      THAT PLAINTIFFS WERE ALSO SEEKING FURTHER RESPONSES TO OUR

 2      FIRST SET OF REQUESTS FOR PRODUCTION.

 3          SO WE WEREN'T EVEN LOOKING AT RFP 34 WHEN WE DRAFTED THE

 4      JOINT LETTER, SO, AGAIN, THE PARTIES WERE TALKING PAST EACH

 5      OTHER.

 6              THE COURT:  I SEE.  OKAY.  BUT NOW THAT YOU KNOW

 7      THERE'S NO ISSUE -- I MEAN, I KNOW YOU DON'T THINK THAT

 8      PRODUCING REVENUES OR NET REVENUES, WHICH ARE GROSS REVENUES

 9      MINUS COSTS, IS THE APPROPRIATE COURSE OF ACTION FOR DAMAGES

10      DISCOVERY, BUT GIVEN THAT I THINK I'M GOING TO CONCLUDE

11      OTHERWISE, NO OBJECTION TO PRODUCING THE COSTS THAT WOULD GET

12      YOU TO THE NET REVENUES?

13              MS. REDDY:  THAT'S CORRECT, YOUR HONOR.

14              THE COURT:  OKAY.  THAT ONE SEEMS PRETTY

15      STRAIGHTFORWARD THEN.

16          OKAY.  I WOULD LIKE TO TURN NOW TO CATEGORY 3, WHICH IS

17      DESCRIBED AS REPORTS, ANALYSES, OR STUDIES SHOWING THE IMPACT

18      ON REVENUES OF DISABLING THIRD PARTY COOKIES AND OTHER USER

19      IDENTIFIERS, AND BACKUP DATA USED OR REFERENCED IN SUCH

20      REPORTS, ANALYSES, OR STUDIES, AND REQUESTS FOR PRODUCTION 47,

21      48, AND 51 ARE THE ONES THAT ARE REFERENCED IN THE LETTER.

22          SO THE PLAINTIFFS REFER TO A GOOGLE STUDY THAT

23      INVESTIGATED THE REVENUE IMPACT OF REMOVING CERTAIN USER

24      INFORMATION FROM THE BID REQUEST, AND I UNDERSTAND GOOGLE TO

25      SAY THAT IT IS SEARCHING FOR THIS KIND OF INFORMATION.

1          IS THERE ANY OBJECTION TO PRODUCING IT FROM GOOGLE'S

2     PERSPECTIVE?

3          MS. REDDY:  YOUR HONOR, FROM OUR PERSPECTIVE, WE HAVE

4     TRIED TO COMPLY WITH THE COURT'S PROCESS, AGAIN, AS SET FORTH

5     IN 189 AND 217.

6          WE'VE PROPOSED 13 DIFFERENT DATA SIGNALS THAT WE'RE

7     WILLING TO CONDUCT AN INVESTIGATION FOR TO SEARCH FOR DOCUMENTS

8     CONSISTENT WITH THE COURT'S ORDER, AND COOKIES AND GOOGLE ID'S

9     AND OTHER USER IDENTIFIERS ARE AMONG THE LIST THAT WE'VE

10    DISCLOSED TO PLAINTIFFS.

11         THE COURT:  ALL RIGHT.

12         MS. REDDY:  SO WE'RE IN AGREEMENT THAT WE'RE WILLING

13    TO CONDUCT AN INVESTIGATION CONSISTENT WITH YOUR HONOR'S ORDER.

14         OUR CONCERN IS, YOU KNOW, ONE, WE'RE NOT SURE WHY

15    PLAINTIFFS RAISED THIS ISSUE BECAUSE WE'VE ALREADY MADE THIS

16    COMMITMENT IN WRITING IN ADVANCE OF THE JOINT LETTER BRIEFING

17    PROCESS.

18         BUT OUR CONCERN IS THE WAY THAT THEY'VE PHRASED THIS

19    PARTICULAR REQUEST IN THE CONTEXT OF THE JOINT LETTER SUGGESTS

20    THEY'RE NOT WILLING TO LIMIT THIS TO INFORMATION THAT DISCUSSES

21    OR POTENTIALLY QUANTIFIES THE REVENUE IMPACT OF THESE DATA

22    SIGNALS WITHIN THE CONTEXT OF RTB.

23         AND THAT VERY CLEARLY SHOULD BE THE PARTIES' STARTING

24    POINT, WE THINK, PURSUANT TO THE COURT'S PRIOR ORDERS.

25         SO WE'RE LOOKING FOR THOSE DOCUMENTS IN THE CONTEXT OF

1    RTB.

2              THE COURT:  OKAY.  BEFORE I GET TO PLAINTIFFS, WHAT I

3    THINK I ORDERED -- AND I HAVE IT RIGHT HERE -- IS THAT, YES, IT

4    WOULD BE A PRIORITY TO IDENTIFY ANY KIND OF VALUATION OR

5    CALCULATION OR ESTIMATE ASSOCIATED WITH RTB IN PARTICULAR.

6         BUT IF GOOGLE DOESN'T ASSIGN VALUE OR ESTIMATE VALUE FOR

7    SOME GIVEN ITEM OF INFORMATION FOR PURPOSES OF RTB, THEN YOU

8    LOOK TO SOME OTHER COMPARABLE SOURCE, AND MAYBE THAT'S WHAT

9    YOU'RE SUGGESTING IS THAT YOU HAVE BEEN PRIORITIZING YOUR

10   SEARCH.

11        BUT, AGAIN, THIS ORDER WAS ISSUED IN APRIL, AND I

12   UNDERSTAND THE PARTIES HAVE BEEN TRYING TO CONFER AND IMPLEMENT

13   IT, AND MAYBE NO ONE IS IN AGREEMENT ON HOW TO IMPLEMENT IT.

14        BUT I DON'T KNOW IF THE DISPUTE BETWEEN THE PARTIES IS THE

15   FOCUS ON RTB, YOU THINK IT SHOULD BE BROADER, OR IT'S THE

16   UNDERLYING NATURE OF THE INFORMATION.

17        SO LET ME ASK THE PLAINTIFFS, WHAT DO YOU THINK IS IN

18   DISPUTE ON THIS POINT?

19              MS. CARACUZZO:  WELL, YOUR HONOR -- AGAIN, THIS IS

20   BETHANY CARACUZZO ON BEHALF OF PLAINTIFFS -- REALLY WHAT ENDS

21   UP HAPPENING IN OUR MEET AND CONFER SESSIONS IS WE DON'T --

22   GOOGLE DOESN'T WANT TO REALLY ENGAGE IN A DIALOGUE AS TO THE

23   SUBSTANCE OF THESE ISSUES.

24        SO THESE, THESE TYPE OF STUDIES DO EXIST.  I KNOW BACK AT

25   A DISCOVERY HEARING THAT I HAD BEFORE YOU VIA ZOOM, YOU HAD

```
1        SAID, YOU KNOW, ENGINEERS DON'T REALLY COMMUNICATE AND

2        CORRESPOND WITH EACH OTHER.

3             WELL, I'VE NOW BEEN IN THE DOCUMENTS, YOUR HONOR, AND THEY

4        DO.  AND WE HAVE GIVEN THEM EXAMPLES, AND THEY ARE AWARE OF

5        WHERE WHAT GOOGLE DOES IS THEY HYPERLINK DOCUMENTS AND THEY

6        TALK ABOUT STUDIES THAT THEY HAVE UNDERTAKEN TO SEE THE IMPACT

7        OF REVENUE IF THEY WERE TO REMOVE CERTAIN INFORMATION, SIGNALS,

8        COOKIES, OR WHATEVER FROM WHAT'S PASSED THROUGH RTB.

9             AND THEY TALK ABOUT THEM -- YOU KNOW, THESE ARE

10       CONFIDENTIAL DOCUMENTS.

11                 THE COURT:  RIGHT.  OKAY.

12                 MS. CARACUZZO:  I DON'T KNOW WHAT YOU WANT ME TO

13       QUOTE FROM HERE.

14                 THE COURT:  HANG ON.

15                 MS. CARACUZZO:  BUT THEY DO EXIST AND THEY KNOW THEY

16       EXIST AND WE DON'T HAVE THEM.

17                 THE COURT:  OKAY.  MY QUESTION WAS, WHAT IS THE

18       INFORMATION THAT YOU THINK IS IN DISPUTE?  AND IF I UNDERSTAND

19       YOUR ANSWER, WHAT YOU SAY IS THAT YOU HAVE IDENTIFIED A NUMBER

20       OF STUDIES, OR THINGS THAT YOU WOULD CALL STUDIES OR REPORTS OR

21       INVESTIGATIONS, THAT YOU THINK ARE RESPONSIVE TO THESE REQUESTS

22       OUGHT TO BE PRODUCED, AND GOOGLE DOESN'T WANT TO TALK TO YOU

23       ABOUT THEM.

24             IS THAT THE DISPUTE?

25                 MS. PRITZKER:  NOT ENTIRELY.
```

```
1              MS. CARACUZZO:  IT BACKS UP EVEN BEFORE THAT.  GOOGLE

2     DOESN'T REALLY WANT TO TALK ABOUT ANY OF IT AT ALL, AND THEN WE

3     HAVE SINCE IDENTIFIED SPECIFIC EXAMPLES.

4              THE COURT:  OKAY.  SO HERE'S WHAT I'M TRYING TO DO,

5     SINCE THIS IS A DISCOVERY DISPUTE, IS I'M TRYING TO FIGURE OUT

6     IF THERE ARE RESPONSIVE DOCUMENTS THAT SHOULD BE PRODUCED, AND

7     I ALREADY HAVE IN MIND THE KINDS OF THINGS FROM MY PRIOR ORDER

8     THAT ARE RESPONSIVE AND THAT ARE POTENTIAL CANDIDATES FOR

9     PRODUCTION.

10         IF THIS IS A SITUATION WHERE YOU HAVE SOME INFORMATION YOU

11    WOULD LIKE TO SUGGEST THAT GOOGLE CONSIDER, THEN WE NEED TO

12    HAVE YOU DO THAT.

13             MS. CARACUZZO:  WE DID.

14             THE COURT:  NO, WE NEED TO HAVE YOU DO THAT PER MY

15    ORDER, AND NOBODY HAS DONE THAT FOR THIS DISPUTE YET.

16             MS. PRITZKER:  WE DID, BUT THAT --

17             THE COURT:  ALL RIGHT.  YOU CAN'T DO IT THE NIGHT

18    BEFORE THE HEARING.

19             MS. PRITZKER:  WE DID IT ON THURSDAY.

20             THE COURT:  WE JUST -- WE CAN'T HAVE -- I SET FORWARD

21    A WHOLE PROCESS ABOUT HOW --

22             MS. PRITZKER:  WE AGREE.

23             THE COURT:  -- THIS IS SUPPOSED TO HAPPEN.

24             MS. PRITZKER:  WE AGREE.

25             THE COURT:  SO I APPRECIATE THE EFFICIENCY, BUT
```

1    YOU'RE GOING TO HAVE TO FOLLOW MY PROCESS OR ELSE THIS WILL BE

2    COMPLETELY A MESS.

3         ONE OF THE THINGS THAT I DON'T KNOW IF IT IS A DISPUTE OR

4    NOT, BUT IS THIS A REQUEST FOR -- WHAT IS IT? -- UNDERLYING

5    DATA.  I'M NOT SURE WHAT THAT IS.  THERE'S NO RFP THAT ASKS FOR

6    UNDERLYING DATA THAT HAS BEEN CITED TO ME.

7         IS IT SUFFICIENT IF YOU GET THE REPORTS OR ANALYSES OR

8    INVESTIGATIONS, OR IS WHAT YOU'RE TRYING TO DO IS GET ALL OF

9    THE RAW DATA BEHIND EVERY SINGLE REPORT, ANALYSIS, OR

10   INVESTIGATION?

11        I MEAN, I JUST -- I DON'T UNDERSTAND THE SCOPE OF THE

12   DISPUTE.

13            MS. WEAVER:  SO THE SCOPE OF THIS DISPUTE IS GOOGLE'S

14   ENTIRE BUSINESS MODEL, FOCUSSING ON RTB, IS ABOUT MONETIZING

15   USER DATA AND SELLING INFORMATION AND SELLING ADS.

16        AND A CRITICAL COMPONENT FOR THEM TO COMPLY WITH PRIVACY

17   REGULATIONS IN THE UNITED STATES IS TO ANALYZE WHETHER THEY ARE

18   ACTUALLY REVEALING PERSONAL INFORMATION.  THAT'S THE HEART OF

19   THIS CASE.

20        AND THEY DO -- THEY ARE CONSTANTLY DOING STUDIES AND

21   ANALYSES, AND IT'S TIED TO REVENUE IMPACT.

22        AND SO -- AND JUST AS TO PROCESS, YOUR HONOR, WE HAVE

23   IDENTIFIED, WITH TWO OPPOSING COUNSEL -- PLEASE HEAR ME OUT,

24   YOUR HONOR.

25            THE COURT:  DO YOU WANT DATA?  OR JUST THE REPORTS?

1              MS. WEAVER:  BOTH.

2              THE COURT:  CAN YOU JUST ANSWER THAT QUESTION?

3              MS. WEAVER:  WE NEED THE DATA AND THE REPORTS.

4         AND, PLEASE, YOUR HONOR --

5              THE COURT:  WHERE IS THE RFP --

6              MS. WEAVER:  I JUST WANT TO BE ABLE TO SAY THIS FOR

7    THE RECORD.

8              THE COURT:  YOU CAN SAY IT, BUT ANSWER MY QUESTION

9    FIRST.  WHAT RFP ASKS FOR DATA?  BECAUSE YOU DON'T JUST GET TO

10   ASK FOR STUFF IN A VACUUM.  TELL ME THE RFP THAT ASK FOR THE

11   UNDERLYING DATA.

12             MS. WEAVER:  WE LIST THEM IN THE JOINT LETTER, 47,

13   48, AND 51.

14             THE COURT:  OKAY.

15             MS. WEAVER:  BUT, YOUR HONOR, WHAT I NEED TO SAY TO

16   THE COURT IS THAT WE FOLLOWED YOUR PROCESS FROM LAST THURSDAY.

17   WE SENT THEM A LETTER THE NEXT DAY AND WE GOT NO RESPONSE.

18             THE COURT:  THEY HAVE TIME.

19             MS. WEAVER:  UNTIL LAST NIGHT --

20             THE COURT:  I GAVE THEM TIME.

21             MS. WEAVER:  YOUR HONOR, I JUST --

22             THE COURT:  I DON'T WANT TO HEAR -- LOOK, I DON'T

23   WANT TO HEAR ABOUT WHAT YOU DID ON THURSDAY.

24        I WANT AN ANSWER TO MY QUESTION ABOUT WHAT THIS PARTICULAR

25   CATEGORY IS ABOUT, WHY YOU NEED IT, AND THEN I'M GOING TO

1    FIGURE OUT WHAT TO DO.

2    I DON'T WANT TO HEAR ABOUT HOW YOU CAN'T GET ALONG WITH

3    GOOGLE, THEY'RE NOT BEHAVING PROPERLY.

4    SO FORGIVE ME FOR GETTING EXERCISED, BUT THIS IS NOT

5    HELPFUL.  YOU NEED TO HELP ME HELP YOU IF YOU WANT SOMETHING,

6    AND THIS IS NOT HELPFUL, AND I'M TELLING YOU THAT.

7    AND I AM NOT GOING TO ORDER DISCOVERY IN A VACUUM.  YOU

8    ASK A REQUEST, AND THEN WE DEAL WITH IT.

9    SO I'M LOOKING AT YOUR DOCUMENT REQUESTS.  47 ASKS FOR

10   DOCUMENTS SUFFICIENT TO ESTABLISH THE MONETARY OR RETAIL VALUE.

11   OKAY?

12   SO THAT ONE DOESN'T SEEM TO ASK FOR UNDERLYING DATA.

13   48 IS ALL DOCUMENTS RELATING TO GOOGLE'S ASSESSMENT OF THE

14   MONETARY OR RETAIL VALUE OF THE ACCOUNT HOLDER'S INFORMATION TO

15   ACCOUNT HOLDERS AS DISTINCT FROM THE VALUE TO GOOGLE.

16   THAT DOESN'T SEEM TO BE IT, EITHER.

17   AND 51 IS DOCUMENTS SUFFICIENT TO ESTABLISH CONSIDERATION,

18   MONETARY OR OTHERWISE, GOOGLE PAID TO ANY OTHER ENTITY FOR

19   INFORMATION RELATING TO SPECIFIC CUSTOMERS.

20   SO THAT'S NOT IT, EITHER.

21   MS. PRITZKER:  IT ACTUALLY IS, YOUR HONOR.

22   AND I AM TRYING TO BE HELPFUL, AND I DO WANT TO TRY AND

23   GUIDE THE COURT.

24   CERTAINLY THE RFP DEALING WITH, YOU KNOW, ASSESSMENT OF

25   VALUE TO ACCOUNT HOLDERS -- AND THE LAST ONE YOU RECITED, 51,

```
1    THE POINT IS HERE, AND I THINK WE HAVE AN AGREED PROCESS, THAT

2    WE'RE TRYING TO GET AT STUDIES AND ANALYSES THAT GOOGLE HAS

3    UNDERTAKEN WITH RESPECT TO SPECIFIC DATA ITEMS THAT ARE PASSED

4    THROUGH RTB AND THEIR REVENUE IMPACT.  OKAY?

5              THE COURT:  REVENUE IMPACT TO GOOGLE?

6              MS. PRITZKER:  TO GOOGLE, YEAH.

7              THE COURT:  THAT'S FINE.  NOT TO THE ACCOUNT HOLDERS,

8    BUT TO GOOGLE.

9              MS. PRITZKER:  WELL, IT'S TO ACCOUNT -- YES, THE

10   REVENUE IMPACT TO GOOGLE --

11             THE COURT:  OKAY, GREAT.

12             MS. PRITZKER:  -- AS A MEASURE OF UNJUST ENRICHMENT.

13        AND AS TO THE SPECIFIC DATA CATEGORIES, I THINK WE HAVE

14   AGREEMENT.

15             THE COURT:  GREAT.

16             MS. PRITZKER:  THEY SAY 13.  THERE ARE FIVE

17   ADDITIONAL ONES THAT ARE REVEALED IN THESE STUDIES THAT WE

18   WOULD LIKE, WHICH ARE URL, DETECTED LANGUAGE, DETECTED

19   VERTICALS, DETECTED CONTENT LABEL, AND USER VERTICALS, ALL OF

20   WHICH ARE IDENTIFIED IN THESE REVENUE STUDIES AS DATA ITEMS

21   THAT GOOGLE HAS ANALYZED AND ITS REVENUE IMPACT WITH RESPECT TO

22   REVENUE THAT GOOGLE EARNS FROM RTB.

23             MR. GUTKIN:  AND, MS. PRITZKER, COULD YOU JUST REPEAT

24   THAT LIST OF FIVE?

25             MS. PRITZKER:  URL, DETECTED LANGUAGE, DETECTED
```

1        VERTICALS, DETECTED CONTENT LABEL, AND USER VERTICALS.

2            AND FOR -- YOU KNOW, THESE ARE THE DATA THAT ARE OUTLINED

3    IN THE DOCUMENT THAT WE SENT TO GOOGLE IN OUR MEET AND CONFER

4    LETTER.

5            THE COURT:  OKAY.

6            MS. PRITZKER:  I WANT TO ANSWER ONE MORE QUESTION,

7    BECAUSE YOU ASKED IT.

8            THE COURT:  UM-HUM.

9            MS. PRITZKER:  I'M TRYING TO REMEMBER WHAT IT IS.

10        OH, UNDERLYING DATA.

11            THE COURT:  YEP.

12            MS. PRITZKER:  SO WHEN WE'RE LOOKING FOR UNDERLYING

13    DATA, WHAT WE'RE LOOKING FOR AND WHAT OUR EXPERTS NEED ARE THE

14    DATA THAT GOOGLE RELIED UPON FOR PURPOSES OF THESE STUDIES AND

15    ANALYSES.  WHAT DID IT RUN?  YOU KNOW, WHAT ARE THESE

16    CONCLUSIONS BASED ON SO THAT OUR, OUR EXPERTS CAN ANALYZE THAT,

17    PERHAPS RUN SIMILAR STUDIES AND ANALYSIS, UNDERSTANDING WHAT

18    GOOGLE DID.

19        BUT THAT'S WHAT WE'RE TALKING ABOUT.  WHEN WE SAY

20    UNDERLYING DATA, WE'RE TALKING ABOUT THE DATA UNDERLYING THOSE

21    STUDIES.

22            THE COURT:  I KNOW WHAT UNDERLYING DATA IS, AND

23    THAT'S WHAT CONCERNED ME, BECAUSE YOU HAVE THE REPORTS, AND THE

24    REPORTS SAY WHATEVER THEY SAY, AND THEY POSSIBLY SUMMARIZE WHAT

25    THE PERSON DOING THE ANALYSIS LOOKED AT AND HOW THEY DID IT.

```
1             AND WHEN I HEAR UNDERLYING DATA, IT SOUNDS TO ME LIKE YOU

2      WANT ALL THE RAW DATA THAT GOOGLE RAN.

3             IF THAT'S NOT THE CASE -- SO -- AND THAT'S NOT ASKED FOR,

4      OKAY.  SO THAT'S WHY I'M TRYING TO BE FOCUSSED ON WHAT YOUR

5      REQUESTS ARE.

6             MS. PRITZKER:  IT IS ASKED FOR.  I MEAN, IN ORDER TO

7      EVALUATE THE ASSESSMENTS THAT THEY'VE MADE, YOU NEED TO

8      UNDERSTAND HOW -- WHAT --

9             THE COURT:  I UNDERSTAND.

10            MS. PRITZKER:  -- HOW THEY UNDERTOOK THE EXPERIMENT.

11            THE COURT:  I UNDERSTAND WHY YOU WANT IT.

12            MS. PRITZKER:  OKAY.

13            THE COURT:  IT'S NOT IN YOUR RFP.

14            MS. PRITZKER:  I BEG TO DIFFER, YOUR HONOR.

15            THE COURT:  SO HERE'S WHAT WE'RE GOING TO DO.

16            MS. PRITZKER:  I THINK THOSE RFP'S CLEARLY --

17            THE COURT:  I'M GOING TO LET GOOGLE ANSWER MY

18     QUESTION ABOUT WHY NOT, WHY NOT THESE STUDIES, AND WHAT I HAVE

19     IN MIND IS IF THERE ARE STUDIES THAT ARE RELEVANT, YOU PRODUCE

20     THEM.

21            IF PLAINTIFFS SAY, WE CANNOT UNDERSTAND HOW THIS

22     CONCLUSION WAS REACHED, WE DON'T UNDERSTAND, WE CAN'T TELL IF

23     IT'S RELEVANT TO OUR SITUATION, WE CAN'T TELL IF IT'S

24     COMPARABLE, WE NEED MORE DATA, WE NEED THE UNDERLYING DATA, I

25     WILL HEAR YOU OUT IF THEY DON'T AGREE AND I WILL LET YOU HAVE
```

```
1        IT IF IT REALLY MAKES SENSE.

2             BUT I JUST -- YOU KNOW -- LET'S HEAR FROM GOOGLE ON WHY

3        NOT THESE REPORTS.  I MEAN, IT SEEMS LIKE A PRETTY REASONABLE

4        ARGUMENT THAT IF IT'S TIED TO SOME SPECIFIC INFORMATION THAT IS

5        SHARED IN RTB, AND THERE'S BEEN AN ASSESSMENT, AND THEY CAN

6        POINT YOU TO THE DOCUMENTS, WHY NOT?

7             MS. REDDY:  YOUR HONOR, WE HAVE AGREED IN OUR -- AS

8        SET FORTH IN OUR MOTION, WE'VE IDENTIFIED 13 DIFFERENT DATA

9        SIGNALS WHERE GOOGLE WILL AGREE TO CONDUCT A REASONABLE

10       INVESTIGATION TO PRODUCE FURTHER DOCUMENTS VIA TARGETED

11       COLLECTION TO LOOK FOR STUDIES ASSESSING THE REVENUE IMPACT OF

12       THOSE 13 DATA SIGNALS.

13            THE ISSUE IS PLAINTIFFS DID NOT APPEAR TO WANT TO

14       PARTICIPATE IN THAT PROCESS, AND WE HAD A DISPUTE OVER THE

15       DIFFERENT KINDS OF DATA SIGNALS.

16            SO WE'RE WILLING TO CONDUCT THAT INVESTIGATION.  WE DON'T

17       SEE A REASON TO GO BEYOND RTB BECAUSE PLAINTIFFS HAVE ALREADY

18       INDICATED THAT THEY FOUND DOCUMENTS IN OUR CUSTODIAL PRODUCTION

19       RELATED TO RTB.  WE'RE JUST GOING TO PERFORM AN ADDITIONAL

20       TARGETED COLLECTION TO FIND THOSE DOCUMENTS.

21            THE COURT:  OKAY.  BUT HERE'S THE PROBLEM:  I HEAR

22       THE PLAINTIFFS SAYING THEY ALREADY HAVE IDENTIFIED SOME

23       PARTICULAR DOCUMENTS THAT THEY WANT, WHETHER IT'S -- I'M NOT

24       SURE IF IT'S FROM THE PRODUCTION IN THIS CASE OR FROM THE

25       PRODUCTION --
```

```
 1              MS. PRITZKER:  FROM THE PRODUCTION IN THIS CASE, YOUR
 2     HONOR.
 3              THE COURT:  OKAY.  SO WHY DON'T -- IF IT'S
 4     HYPERLINKED AND THEY DON'T HAVE THE DOCUMENT AT THE
 5     HYPERLINK -- I ASSUME THAT'S WHAT YOU'RE SAYING IS YOU DON'T
 6     HAVE THE HYPERLINKED DOCUMENT -- WHY NOT PRODUCE THE
 7     HYPERLINKED DOCUMENT?
 8              MS. REDDY:  WE ARE UNDERTAKING AN EFFORT TO FIND
 9     THOSE HYPERLINKED DOCUMENTS AND PRODUCE THEM.  THAT PROCESS
10     JUST TAKES TIME.  WE ONLY RECEIVED THEIR MEET AND CONFER LETTER
11     AT 8:00 P.M. ON THURSDAY.
12          I WILL SAY THAT PLAINTIFFS HAVE DONE THIS IN THE PAST
13     WHERE THEY SENT US A DOCUMENT SET --
14              THE COURT:  I DON'T WANT TO HEAR ABOUT THIS.
15              MS. REDDY:  BUT WE HAVE AGREED TO PRODUCE THESE
16     DOCUMENTS IN THE PAST.
17              THE COURT:  OKAY.
18              MS. REDDY:  SO WE WANT TO DO THAT IN THE ORDINARY
19     COURSE OF DISCOVERY AND WE'RE WILLING TO DO THAT.
20              THE COURT:  HERE'S WHAT I THINK NEEDS TO HAPPEN, AND
21     I WILL WRITE IT DOWN SO NOBODY HAS TO QUOTE THE TRANSCRIPT:  I
22     THINK WHAT NEEDS TO HAPPEN HERE IS YOU CAN DO YOUR TARGETED
23     SEARCH AS YOU'VE AGREED USING THE 13 TERMS, MAYBE IT'S 18 TERMS
24     WITH THE ADDITIONAL FIVE, I DON'T KNOW.  I DON'T HAVE ENOUGH
25     INFORMATION TO KNOW, AND IT'S NOT BRIEFED TO ME RIGHT NOW, BUT
```

1    MAYBE YOU ALL CAN COMPROMISE ON THAT AND WORK IT OUT OR ACCEPT

2    THE PLAINTIFFS' REPRESENTATION THAT THIS IS IMPORTANT.

3         YOU CAN DO THE TARGETED SEARCH.  BUT IF THE PLAINTIFFS

4    SAY, LOOK, HERE'S A PARTICULAR DOCUMENT THAT WE SEE IN A

5    PRODUCTION THAT'S HYPERLINKED, WE WANT THAT ONE, THEN I DON'T

6    SEE ANY REASON WHY YOU SHOULDN'T RUN SEARCH TERMS TO FIND IT,

7    AND I DON'T UNDERSTAND YOU TO BE SUGGESTING THAT.

8         BUT IT SEEMS LIKE THAT'S A VERY EFFICIENT PROCESS TO BE

9    ABLE TO SAY, THIS IS THE PARTICULAR DOCUMENT THAT WE WANT.

10        AND MAYBE THERE'S SOME DISPUTE ABOUT IT.  BUT, AGAIN, I AM

11   SKEPTICAL OF THE ARGUMENT THAT UNLESS IT'S LIMITED TO RTB, IT

12   DOESN'T COUNT, BECAUSE IF IT'S THE SAME OR SUFFICIENTLY -- AND

13   WE'RE GOING TO GET TO THIS IN A MOMENT ON ONE OF THE OTHER

14   CATEGORIES -- IF IT'S SUFFICIENTLY SIMILAR, I CAN SEE UTILITY

15   FROM A DAMAGES PERSPECTIVE IN USING THAT ANALYSIS.

16        YOU WOULD BE FREE TO ARGUE IT'S NOT SUFFICIENTLY SIMILAR

17   OR IT'S DISTORTED IN SOME WAY, IT'S NOT A USEFUL ITEM FOR

18   DAMAGES.  YOU WOULD BE ABSOLUTELY FREE TO ARGUE THAT

19   INFORMATION.

20        BUT AS FAR AS DISCOVERY GOES, IT SOUNDS LIKE IT'S WITHIN

21   THE ZONE OF RELEVANT AND RESPONSIVE INFORMATION.

22        THAT'S HOW I INTEND TO RESOLVE THIS DISPUTE.

23        NOW, THE UNDERLYING DATA, ONCE YOU SEE THE REPORTS, YOU

24   MAY HAVE TABULATIONS IN THERE THAT ARE EXACTLY WHAT YOU NEED

25   AND YOU DON'T NEED ANYTHING ELSE, OR YOU MAY NEED SOMETHING

1    ELSE, AND I WILL HEAR FROM YOU ABOUT THAT.  IF THERE IS A

2    DISPUTE AND GOOGLE REFUSES TO GIVE IT TO YOU, IF YOU SAY, WE

3    CAN'T MAKE HEADS OR TAILS OF THIS WITHOUT THAT, I WILL HEAR

4    THAT.

5         BUT IN TERMS OF ORDERING ACROSS THE BOARD ALL UNDERLYING

6    DATA FOR EVERY AB TEST THEY'VE EVER DONE ABOUT RESPONSIVE --

7    INFORMATION YOU THINK IS RESPONSIVE AND WHETHER IT'S INCLUDED

8    OR NOT INCLUDED, I'M NOT SURE THAT'S PROPORTIONAL.

9         MS. WEAVER:  YOUR HONOR ACTUALLY IS EXACTLY RIGHT.

10   WE ARE TALKING ABOUT AB TESTING, AND WE DON'T KNOW, BECAUSE WE

11   DON'T HAVE THE DOCUMENTS, ABOUT OTHER RTB STUDIES THEY MAY HAVE

12   DONE.

13        SO WE CAN IDENTIFY IN WHAT THESE INTERNAL WIKIS ARE ABOUT

14   HOW THE PROCESS WORK, BUT WE ALSO WANT GOOGLE TO HAND OVER --

15   THIS IS THE CORNERSTONE OF THE ECONOMIC DAMAGES ARGUMENT IN

16   BROWN IS THEY CALCULATED, OH, THERE WAS A REVENUE IMPACT TO

17   MAKING THIS CHANGE, AND WE SUSPECT THAT THERE WILL BE THE SAME

18   THING HERE IN REAL TIME BIDDING.  WE CALCULATED AN AB TEST, THE

19   REVENUE IMPACT IF WE STOP SHARING THIS KIND OF PERSONAL

20   INFORMATION IN THE AUCTION.

21        THAT'S WHAT WE NEED TO KNOW.

22        THE COURT:  AND I HEARD THEM SAY THAT'S WHAT THEY'RE

23   LOOKING FOR.

24        IS THAT NOT THE CASE?

25        MR. GUTKIN:  YES, YOUR HONOR.

```
1          I MEAN, THE ONLY POINT I WOULD MAKE IS, SO WE WILL LOOK

2     FOR THE STUDIES THAT THEY -- WE WILL LOOK AT THE STUDIES THAT

3     THEY JUST IDENTIFIED TO US.  OBVIOUSLY THOSE STUDIES SHOW THAT

4     WE HAVE BEEN PRODUCING THESE MATERIALS, BUT WE'LL LOOK AT THE

5     UNDERLYING HYPERLINKED DOCUMENTS.

6          I'M JUST A LITTLE CONCERNED THAT PLAINTIFFS COULD RUN WITH

7     THIS ISSUE ABOUT WHETHER IT'S LIMITED TO RTB OR NOT TO SAY WE

8     NEED TO SEARCH THE UNIVERSE.

9          AND WE'RE FINDING THESE MATERIALS -- THESE ARE IN OUR

10    PRODUCTION.  THEY MUST HAVE BEEN IN THE FILES OF OUR RTB

11    CUSTODIANS.  WE ARE FINDING THIS WITHIN THE UNIVERSE OF RTB,

12    WHICH WAS STEP ONE OF YOUR HONOR'S PRIOR ORDER.

13         AND I JUST WANT TO MAKE SURE THAT WE'RE NOT GOING TO BE,

14    YOU KNOW, SUBJECT TO A BOIL THE OCEAN APPROACH FROM PLAINTIFFS

15    BECAUSE I FEAR THAT'S WHAT THEY MAY -- HOW THEY MAY INTERPRET

16    ANY LEEWAY OUTSIDE OF RTB THAT THEY CAN'T DEMONSTRATE

17    SPECIFICALLY IS NECESSARY.

18              THE COURT:  I MEAN, I'M NOT CHANGING MY ORDER AT

19    DOCKET 189, SO IT IS WHAT IT IS.

20         IF THERE IS INSUFFICIENT INFORMATION IN THE CONTEXT OF

21    RTB, THEN YOU'RE GOING TO ABSOLUTELY HAVE TO LOOK OTHER PLACES.

22              MR. GUTKIN:  YES, UNDERSTOOD, YOUR HONOR.

23              THE COURT:  BUT YOU'RE NOT LIMITED JUST TO THE

24    MATERIALS THAT PLAINTIFFS HAVE IDENTIFIED IN THE

25    CORRESPONDENCE.  YOU'RE GOING TO BE SEARCHING FOR THESE
```

```
 1        IDENTIFIERS OR TERMS, WHATEVER THE INDICIA OF THESE INFORMATION

 2        ITEMS THAT ARE BEING SHARED, YOU'RE GOING TO BE SEARCHING FOR

 3        THAT AND LOOKING FOR THIS KIND OF, IF WE CHANGE THIS, WHAT

 4        HAPPENS TO THE REVENUE KINDS OF STUDIES.  I THINK THAT'S CALLED

 5        AB TESTING.

 6             AND SO I HOPE THAT YOUR SEARCH IS BROAD ENOUGH TO

 7        ENCOMPASS THAT KIND OF MATERIAL.

 8                 MR. GUTKIN:  ABSOLUTELY, AND THAT'S BEEN OUR INTENT

 9        SINCE WHAT WE SET FORTH IN THE PAPERS THAT WE WERE GOING TO

10        LOOK FOR THIS.

11             THE RUBBER MAY HIT THE ROAD, YOUR HONOR, WHERE WE REACH

12        THE QUESTION OF, WELL, WAS THIS INSUFFICIENT?

13                 THE COURT:  ALL RIGHT.

14                 MR. GUTKIN:  SO THEREFORE, DO YOU HAVE TO SEARCH THE

15        WHOLE COMPANY?

16                 THE COURT:  WELL, YOU CAN COME BACK TO ME IF THAT

17        BECOMES THE ISSUE --

18                 MR. GUTKIN:  THANK YOU, YOUR HONOR.

19                 THE COURT:  -- IN DISPUTE.

20             BUT HOW LONG IS IT GOING TO TAKE YOU TO DO WHAT I THINK IS

21        THE ZONE OF AGREEMENT RIGHT NOW?

22                 MR. GUTKIN:  WELL, THE PROCESS IS ALREADY UNDERWAY.

23             BUT WE HESITATED TO DO IT WHEN WE COULDN'T GET AGREEMENT

24        ON WHAT WE WERE LOOKING FOR AMONG THE TESTS, SO I -- YOU KNOW,

25        CERTAINLY WE'LL NEED SEVERAL WEEKS, YOUR HONOR, AT A MINIMUM.
```

1      I MEAN, WE'LL -- WE WILL UNDERTAKE IT AS QUICKLY AS WE CAN.

2      WHETHER IT'LL TAKE, YOU KNOW, THREE WEEKS, A MONTH, IT'S HARD

3      FOR ME TO SAY SITTING HERE.

4            THE COURT:  OKAY.  WELL, I MEAN, I THINK THAT'S ALL

5      THE MORE SUPPORT FOR WHAT I INDICATED IN MY ORDER AND MY

6      RECOMMENDATION ABOUT EXTENDING THE SCHEDULE, BECAUSE I DO THINK

7      THIS IS PRETTY IMPORTANT TO THE PLAINTIFFS' DAMAGES CASE.  EVEN

8      IF YOU FEEL THAT IT'S ULTIMATELY NOT GOING TO BE SUCCESSFUL, I

9      THINK THEY HAVE A RIGHT TO DISCOVER THIS BEFORE THEY PRESENT

10     THEIR INFORMATION TO JUDGE GONZALEZ ROGERS.

11         SO I DON'T HAVE A BASIS TO ORDER IT TO BE DONE IN ANY

12     PARTICULAR TIMEFRAME, BUT I THINK THAT -- WELL, YOU'RE WORKING

13     ON IT, YOU SHOULD CONTINUE WORKING ON IT, AND I HOPE THE

14     PARTIES WILL CONFER ABOUT PRODUCTION ON AN ONGOING BASIS AND

15     THAT KIND OF THING.

16           MR. GUTKIN:  THANK YOU, YOUR HONOR.

17           MS. PRITZKER:  OBVIOUSLY A PRODUCTION DEADLINE WOULD

18     BE HELPFUL.

19           THE COURT:  I JUST --

20           MS. PRITZKER:  I HEAR YOU.  I'M NOT GOING TO ARGUE.

21           THE COURT:  I DON'T HAVE THE INFORMATION TO KNOW

22     ABOUT IT.

23           MS. PRITZKER:  THIS IS WHAT WE'RE RUNNING UP AGAINST

24     AGAIN AND AGAIN.

25           BUT I UNDERSTAND.  A FIRM PRODUCTION DEADLINE WOULD BE

1        HELPFUL, BUT I UNDERSTAND THE COURT'S ORDER.

2              THE COURT:  OUR FIRM PRODUCTION DEADLINE OF

3        SUBSTANTIAL COMPLETION HAS COME AND GONE, SO --

4              MS. PRITZKER:  CORRECT.

5              THE COURT:  YES, I MEAN, I -- YOU KNOW, I THINK THAT

6        WHEN THE PLAINTIFF -- OR WHEN GOOGLE HAS AN ESTIMATE OF THE

7        VOLUME OF MATERIAL THAT'S HIT ON THE SEARCH TERMS AND THE LIST

8        OF DOCUMENTS THAT THE PLAINTIFFS HAVE SUGGESTED, YOU SHOULD BE

9        ABLE TO PROVIDE AN ESTIMATE OF WHEN YOU CAN PRODUCE THE

10       MATERIAL AND HOW MUCH -- YOU KNOW, IF YOU HAVE TO REVIEW A

11       LARGE QUANTITY, IT'LL MAKE A DIFFERENCE.

12             BUT YOU CAN JUST PROVIDE -- IT'S A COURTESY TO PROVIDE AN

13       ESTIMATE OF WHEN YOU THINK IT'LL BE DONE.

14             MR. GUTKIN:  YES.  AND I JUST NOTE THAT WE'RE NOT

15       GOING ABOUT THIS WITH SEARCH TERMS.  ALL THE DOCUMENTS THAT

16       THEY'VE IDENTIFIED THAT THEY CLAIM ARE IN THIS CATEGORY SO FAR

17       WOULD HAVE BEEN FOUND WITH SEARCH TERMS, BUT THIS IS --

18             THE COURT:  TARGETED.

19             MR. GUTKIN:  EXACTLY.

20             THE COURT:  OKAY.  I UNDERSTAND.  THANK YOU.

21             ALL RIGHT.  THE NEXT CATEGORY IS CATEGORY 4.  THESE ARE

22       LOGS SHOWING THE REVENUE THAT GOOGLE DERIVED FROM THE RTB ADS

23       IT SERVED ON THE NAMED PLAINTIFFS, INCLUDING BACKEND AND

24       REVENUE LOGS, AND THERE'S A NUMBER OF REQUESTS FOR PRODUCTION

25       THAT ARE CITED IN SUPPORT OF THAT.

1    WHAT I UNDERSTAND IS THAT THE PLAINTIFFS WANT THE PERSONAL

2    INFORMATION THAT WAS PROVIDED TO THE RTB PARTICIPANTS, THE

3    WINNING BID, AND THE AMOUNT PAID TO GOOGLE FOR THE WINNING BID,

4    AND THAT'S -- THAT'S WHAT YOU'RE LOOKING FOR IN THIS FOURTH

5    CATEGORY.

6        IS THAT CORRECT?

7        MS. WEAVER:  YOUR HONOR, YES, THAT IS CORRECT.

8    I THINK IT'S NOT ENTIRELY COMPLETE.

9        THE COURT:  OKAY.

10        MS. WEAVER:  I DO THINK WE REALLY HAVE TRIED TO

11    IDENTIFY SPECIFIC LOGS THAT WE WANT.

12        GOOGLE HAS NOT MET AND CONFERRED WITH US.  I'VE NEVER HAD

13    A PARTY REFUSE TO MEET AND CONFER.

14        BUT WE CAN IDENTIFY VERY SPECIFICALLY, AND HAVE

15    IDENTIFIED, THE LOGS THAT WE WANT, AND I CAN JUST SAY, THERE

16    ARE MULTIPLE -- HUNDREDS OF FIELDS THAT HAVE THE REVENUE DATA

17    THAT WE'RE LOOKING FOR IN THEM.

18        AND WHAT WE WOULD PROPOSE IS THAT WE SEND THE LIST OF THE

19    LOGS THAT WE WANT, WHICH WE HAVE DONE -- WE CAN DO IT AGAIN IF

20    YOUR HONOR WANTS US TO DO IT AGAIN -- AND TELL GOOGLE THE LOGS

21    THAT WE WANT AND HAVE THEM SEARCH THEM.

22        THE COURT:  SO I WAS LOOKING AT YOUR REQUESTS FOR

23    PRODUCTION 41A, D, AND E, WHICH SEEM TO BE THE MOST SPECIFIC

24    DESCRIPTION.  47, 55, AND 56 SEEM TO BE A LITTLE BIT MORE

25    ATTENUATED.  BUT 41A, D, AND E, AT LEAST ON THE MONETARY SIDE,

```
 1          SEEM TO BE PRETTY PRECISE ABOUT -- SUBSTITUTE ACCOUNT HOLDER,

 2     FOR ACCOUNT HOLDER THE NAMED PLAINTIFFS, BECAUSE I THINK YOU'RE

 3     FOCUSSED ON NAMED PLAINTIFFS HERE.

 4          THAT SEEMS TO BE A VERY SPECIFIC DESCRIPTION ON THE

 5     MONETARY SIDE.  IS THAT A FAIR --

 6               MS. WEAVER:  I THINK THAT'S RIGHT, YOUR HONOR.  I'M

 7     JUST LOOKING AT IT RIGHT NOW, SO I MIGHT JUST WANT TO PUT AN

 8     ASTERISK ON IT.  BUT I THINK YOU'RE CORRECT THERE.

 9               THE COURT:  OKAY.  AND WHAT YOU'RE SAYING IS THAT THE

10     PLAINTIFFS HAVE IDENTIFIED LOGS FROM SOME OTHER LITIGATION, THE

11     CALHOUN LITIGATION, THAT IT BELIEVES CONTAINS THIS INFORMATION.

12               MS. WEAVER:  YES.

13               THE COURT:  OKAY.  SO NOW I UNDERSTAND GOOGLE'S

14     ARGUMENT IS THAT THIS REQUEST IS OVERBROAD, ESSENTIALLY FOR THE

15     SAME REASONS THAT WE WERE DISCUSSING FOR CATEGORY NUMBER 1, IS

16     REVENUE IS TOO BROAD A BRUSH FOR PURPOSES OF DAMAGES.

17          IS THAT THE CASE?  DO WE NEED TO ALL -- YOU CAN -- YOU CAN

18     COME UP IF YOU WANT.

19               MS. PRITZKER:  COME ON UP.

20               MS. WEAVER:  HE'S TRYING TO LOOK AT OUR NOTES.

21          (LAUGHTER.)

22               MR. GUTKIN:  SORRY ABOUT THAT.

23          NO, YOUR HONOR, I JUST -- MAYBE I'M OLD SCHOOL, BUT I'M

24     USED TO ADDRESSING THE COURT FROM STANDING.

25               THE COURT:  OKAY.
```

1          MR. GUTKIN:  SO THERE IS THIS FIRST ARGUMENT THAT IN

2     TERMS OF RELEVANCE, THIS IS SOMETHING THAT WE DISCUSSED AT

3     LENGTH IN THE MAY HEARING WHERE MS. WEAVER REPEATEDLY SAID, WE

4     WANT ALL OF THE INFORMATION ABOUT THE AMOUNT PAID FOR EVERY AD,

5     AND I THINK I REFERENCED TO YOU THIS DISCUSSION OF, YOU KNOW,

6     NEWSPAPER ADS OR TELEVISION ADS WHERE THERE ARE ADS PURCHASED

7     ALL THE TIME WITH NO INFORMATION ABOUT THE PERSON WHO'S GOING

8     TO SEE THEM AND SO YOU CAN'T ATTRIBUTE, OF COURSE, THE FULL

9     VALUE.

10          AND I UNDERSTAND THAT YOUR HONOR HAS CONSIDERED THAT.

11          BUT THIS IS ALSO A MATTER OF THE GRANULARITY OF THIS

12     INFORMATION.  I MEAN, TO TRY -- FOR US TO BE REQUIRED TO PULL

13     TOGETHER ALL -- THE AMOUNT PAID FOR EVERY AD THAT EVERY NAMED

14     PLAINTIFF HAS SEEN, IT'S NOT PROPORTIONAL, AND THAT KIND OF

15     GRANULAR LEVEL DATA IS -- IT'S NOT RELEVANT.

16          THE COURT:  BUT IT'S EVERY AD THAT'S BEEN SEEN

17     THROUGH RTB.

18          MR. GUTKIN:  WELL, IT --

19          THE COURT:  NOT JUST EVERY AD EVER.  BUT IT'S --

20     IT'S -- IT WOULD BE -- AS I UNDERSTAND THE PLAINTIFFS' THESIS,

21     IT IS THAT IF THE NAMED PLAINTIFFS' INFORMATION WAS SHARED

22     THROUGH RTB AND THEY SAW AN AD AS A RESULT OF THAT, THEN THE

23     REVENUE ASSOCIATED WITH THAT TRANSACTION, FOR LACK OF A BETTER

24     WORD, IS WHAT THEY'RE AFTER.

25          MR. GUTKIN:  YES.  BUT IT'S EXTRAORDINARILY GRANULAR

```
1     INFORMATION, YOUR HONOR.  I MEAN, IT MAY BE MULTIPLE ADS A DAY.

2     I MEAN --

3               THE COURT:  OKAY.

4               MR. GUTKIN:  IT'S NOT PROPORTIONAL.

5          IF I COULD TALK ABOUT THE BURDEN?

6          MS. WEAVER IS REFERRING TO SOME CALHOUN LOGS, BUT THERE'S

7     KIND OF CORRELATIONS THAT YOU WOULD HAVE TO DO ACROSS MULTIPLE

8     LOGS TO TRY TO DETERMINE THE AMOUNT THAT GOOGLE IS PAID FOR

9     PARTICULAR ADS BECAUSE THERE ARE ALL KINDS OF SCENARIOS WHERE

10    THERE MAY BE AN RTB AUCTION AND, FOR EXAMPLE, NO PAYABLE AD

11    IMPRESSION OCCURS.

12         THAT CAN HAPPEN, FOR EXAMPLE, IF THE WEBSITE IS PAYING ON

13    A PER CLICK BASIS, SO THERE'S AN IMPRESSION SERVED, BUT THERE'S

14    NO CLICK AND THERE'S NO PAYABLE EVENT.  SO THAT'S ONE KIND OF

15    CORRELATION YOU HAVE TO DO.

16              THE COURT:  UM-HUM.

17              MR. GUTKIN:  THERE'S ALSO, AS YOUR HONOR MAY KNOW

18    FROM OTHER MATTERS, THIS CONCEPT OF AD SPAM WHERE OCCASIONALLY

19    IT'S DETECTED THAT THE CLICK ON THE AD IS NOT REAL AT SOME DOWN

20    STAGE PLACE IN THE PROCESS.

21              THE COURT:  UM-HUM.

22              MR. GUTKIN:  AND THEREFORE, THERE'S NOT A -- THE

23    EVENT THAT LOOKS LIKE IT MIGHT BE PAYABLE IN ONE SET OF LOGS

24    THAT HAVE BEEN CORRELATED TOGETHER IT TURNED OUT LATER WAS NOT.

25              THE COURT:  OKAY.
```

1          MR. GUTKIN:  SO THERE'S QUITE A SUBSTANTIAL BURDEN,

2    AS THERE IS WITH ALL OF THE NAMED PLAINTIFF DISCOVERY, TO TRY

3    TO GET EVERYTHING.

4          AND IT'S -- AND IT'S, IN OUR VIEW, NOT PROPORTIONAL, THIS

5    LEVEL OF GRANULARITY AND BURDEN, TO TRY TO GET THE PRICE PAID

6    FOR EVERY INDIVIDUAL ADVERTISEMENT.

7          THE COURT:  AND IS THE GRANULARITY THAT YOU'RE

8    CONCERNED ABOUT HAVING TO DISTINGUISH AMONG THESE DIFFERENT

9    EVENTS?  OR -- AND MAYBE THIS IS A QUESTION FOR THE PLAINTIFFS.

10   PERHAPS THEY DON'T NEED IT AT THAT LEVEL OF GRANULARITY.  MAYBE

11   THEY JUST NEED THE TOTAL ASSOCIATED WITH A PARTICULAR -- I'LL

12   ASK THEM THAT QUESTION.

13         BUT IS THE GRANULARITY HAVING TO DISTINGUISH IF IT WAS AD

14   SPAM OR IF IT WAS PAID BY CLICK OR THOSE KINDS OF THINGS?  IS

15   THAT THE PROBLEM?

16         MR. GUTKIN:  YES, AND JUST THE SHEER VOLUME.  I MEAN,

17   THE -- THE DATA LOGS ARE VERY SUBSTANTIAL.  TO HAVE TO SEARCH

18   THROUGH THEM FOR HUGE PERIODS OF TIME, YOU KNOW, WHICH

19   PLAINTIFFS ARE CONTENDING, ET CETERA, TO HAVE TO KIND OF

20   PROCESS ALL THAT DATA, THEN TAKE ONE SET OF DATA, COMPARE IT

21   AGAINST ANOTHER LOG FOR ANOTHER LARGE PERIOD OF TIME, IT'S --

22         THE COURT:  BUT THESE ARE --

23         MS. WEAVER:  YOUR HONOR, MAY I --

24         THE COURT:  JUST A MOMENT.

25         MS. WEAVER:  OKAY.

1          THE COURT:  BUT THESE LOGS ARE KEYED TO SOMETHING

2    THAT UNIQUELY IDENTIFIES A PARTICULAR NAMED PLAINTIFF, SO IT'S

3    NOT AS IF SOMEBODY HAS TO MANUALLY LOOK THROUGH A LOG.

4          YOU SEARCH FOR WHATEVER THE RELEVANT IDENTIFIER IS, YOU

5    ISOLATE THOSE LINE ITEMS IN THE LOG, AND THEN MAYBE YOU DO HAVE

6    TO DO SOME FURTHER PROCESSING.  BUT IT'S NOT AS IF SOMEBODY HAS

7    TO SIT THERE AND READ THESE THINGS.

8          MR. GUTKIN:  NO, IT'S CLEARLY NOT A MANUAL PROCESS,

9    YOUR HONOR.

10          AND I'M CONFIDENT THAT MS. WEAVER IS GOING TO SAY THIS IS

11    EASY TO DO.  IN THE CALHOUN CASE, THEY FOUND IT VERY TRIVIAL

12    AND EASY TO DO.

13          BUT IT'S NOT THE CASE FROM MY EXPERIENCE, AND IT'S NOT THE

14    CASE FROM THE DISCUSSIONS THAT I'VE HAD WITH MY CLIENT THAT YOU

15    CAN JUST RUN A SEARCH OVER AN INDEFINITELY LONG PERIOD OF TIME.

16    THE SEARCH HAS TO BE RUN ON A VERY LARGE LOG --

17          THE COURT:  UM-HUM.

18          MR. GUTKIN:  -- DEPENDING ON EXACTLY WHICH LOG AND

19    WHICH DATA SOURCE WE'RE TALKING ABOUT --

20          THE COURT:  UM-HUM.

21          MR. GUTKIN:  -- AND THEN TO HAVE TO TAKE ALL OF THAT

22    FOR THE WHOLE PERIOD OF TIME, NOT ANY KIND OF SAMPLE, BUT

23    LITERALLY TRY TO FIND EVERY SINGLE INSTANCE OF AN RTB AD BEING

24    SHOWN OVER A LONG PERIOD OF TIME.

25          THE COURT:  AND WILL YOU REMIND ME, WHAT IS THE

1    PERIOD OF TIME THAT YOU ALL ARE USING IN THIS CASE?

2             MR. GUTKIN:  WELL, PLAINTIFFS -- THE PERIOD OF TIME

3    THAT YOUR HONOR ORDERED WAS ONE YEAR BEFORE THE STATUTE OF

4    LIMITATIONS, SO IT WOULD BE UNTIL MARCH OF 2016.

5             THE COURT:  OKAY.

6             MR. GUTKIN:  I'M NOT REPRESENTING THAT -- YOU KNOW,

7    OBVIOUSLY LOGS DON'T GO BACK INFINITELY FAR IN TIME.

8             THE COURT:  ALL RIGHT.  THANK YOU.

9         ALL RIGHT.  MS. WEAVER.

10            MS. WEAVER:  YES.  SO A COUPLE OF POINTS HERE.

11        FIRST, IT WOULD HAVE BEEN HELPFUL IF THE PARTIES HAD BEEN

12   ABLE TO DISCUSS THIS, BECAUSE OUR EXPERT CAN TALK TO THEIR

13   EXPERT ABOUT HOW TO SEARCH IF THERE WERE A BURDEN BECAUSE AT

14   THIS POINT WE'RE VERY EXPERIENCED WITH IT.

15        TWO, YOUR HONOR IS RIGHT, THESE ARE SEARCHABLE BY

16   BISCOTTI, I.D.'S USED TO TRACK PEOPLE, WHETHER THEY'RE SIGNED

17   IN OR NOT.

18            THE COURT:  UM-HUM.

19            MS. WEAVER:  THAT'S EASY.

20        THREE, YES, IN CALHOUN, TWO THINGS HAPPENED.  NOT ONLY DID

21   GOOGLE PRODUCE MULTIPLE -- ALL OF THIS DATA FROM LOGS IN FIVE

22   DAYS WHEN THEY WERE FINALLY ORDERED TO DO IT FOR THE NINE NAMED

23   PLAINTIFFS IN CALHOUN -- OR AM I GETTING IT BACKWARDS?  IS IT

24   SIX HERE AND NINE THERE?  I CAN'T RECALL.

25            MR. GUTKIN:  IT'S NINE.

```
1              MS. WEAVER:  SORRY.

2         THEY COULD DO IT.

3         FOUR, THERE WAS ALSO A PRESERVATION ORDER THAT HAS BEEN

4    ENTERED IN THAT CASE THAT COVERS ALL OF THESE ISSUES.

5         FIVE, WE LEARNED A LOT ABOUT JOINABILITY -- THIS WAS NOT

6    MY EXPERTISE BEFORE -- BUT COLUMNS AND FIELDS CAN BE EXTRACTED

7    TO CREATE WHAT'S CALLED A SUPER LOG.  THAT'S ONE THING.

8         ALL WE'RE ASKING THEM TO DO HERE IS SEARCH THESE LOGS, AND

9    WE'VE GIVEN -- AND I THINK IT WAS EXHIBIT 11 TO LAST WEEK'S

10   SUBMISSION THAT GOOGLE COULD HAVE DISCUSSED WITH ME.  IT HAS AN

11   ACTUAL DROP DOWN QUERY FOR WAYS TO SEARCH.  IT'S JUST AN

12   EXAMPLE.

13        BUT WE KNOW THAT, THAT THESE LOGS CAN BE IDENTIFIED.

14        THE SIXTH POINT IS WE'VE IDENTIFIED 12 LOGS FOR NINE

15   PEOPLE.

16             THE COURT:  UM-HUM.

17             MS. WEAVER:  THIS IS GOOGLE'S BUSINESS.  THEY MATCH

18   DATA TO INDIVIDUALS USING THESE IDENTIFIERS AS PART OF THEIR

19   BUSINESS MODEL, AND PROVING UP THE REVENUE THAT THEY GOT FOR

20   EACH TRANSACTION IS HOW IT MAKES MONEY.

21             THE COURT:  BUT DO YOU NEED IT AT THE -- JUST TO KIND

22   OF DOVETAIL WITH THE QUESTION I ASKED MR. GUTKIN, DO YOU NEED

23   IT AT THE TRANSACTION LEVEL?

24        IN OTHER WORDS, DO YOU NEED TO DISTINGUISH DIFFERENT TYPES

25   OF REVENUE?  IS THAT IMPORTANT FOR YOUR CASE, OR COULD YOU HAVE
```

1    THE AGGREGATE?

2              MS. WEAVER:  I THINK IT'S IMPORTANT FOR THE SIX

3    PEOPLE.  I THINK IT'S SIX.

4              MR. GUTKIN:  NINE.

5              MS. WEAVER:  NINE, OKAY.

6         AND JUDGE GONZALEZ ROGERS ASKED THIS IN OUR HEARING AT

7    CLASS CERT LAST WEEK.  CAN YOU IDENTIFY WITH GRANULARITY

8    EXACTLY WHO IS GETTING WHAT REVENUE?  AND WE SAID YES, LOOKING

9    AT THESE LOGS.

10        SO WE MIGHT NOT NEED GRANULARITY FOR THE ENTIRE CLASS.

11             BUT THE TRUTH IS I DON'T KNOW, FOR REAL TIME BIDDING, HOW

12   THEY'RE, NECESSARILY HOW THEY'RE ASSOCIATING -- WE THINK WE'RE

13   IDENTIFYING THESE LOGS, BUT I NEED TO SEE WHAT IT IS BEFORE I

14   CAN SAY WE DON'T NEED THE GRANULARITY AT EVERY LEVEL.

15             BECAUSE I DON'T KNOW, FOR EXAMPLE, IF THEY DID A REVENUE

16   IMPACT ANALYSIS ON A CERTAIN KIND OF PERSONAL INFORMATION THAT

17   THEY EXCLUDED, AND THEN LATER I CAN SAY, OH, THIS PLAINTIFF GOT

18   PAID -- YOU KNOW, GOOGLE WAS PAID FOR THIS PLAINTIFF SPECIFIC

19   KIND OF DATA.  LIKE, THAT MAY BE A STANDING ARGUMENT THAT THEY

20   WILL RAISE, CAN YOU SHOW --

21             THE COURT:  UM-HUM.

22             MS. WEAVER:  SO THAT'S WHAT WE'RE THINKING.

23        AND THE ONLY OTHER THOUGHT THAT I HAD ON THIS IS THAT

24   THERE HAS BEEN NO BURDEN SHOWING.  THERE HAS BEEN A BURDEN

25   ARGUMENT MADE.

1          BUT THE ACTUAL EVIDENCE THAT WE HAVE IS THAT THEY CAN DO

2     IT BECAUSE IT'S THEIR BUSINESS.

3          THE COURT:  UM-HUM.  YEAH.  WELL, AGAIN, THIS IS A

4     SITUATION WHERE YOU ALL REALLY NEED TO TALK TO EACH OTHER ABOUT

5     THE INFORMATION THAT MS. WEAVER HAS DEVELOPED IN THIS CASE AND

6     FROM THE CALHOUN MATTER AND HAVE A CONVERSATION ABOUT THAT.

7          I WOULD NOT ORDER THIS FOR ALL ACCOUNT HOLDERS, AT LEAST

8     NOT AT THIS STAGE.  BUT FOR THE NINE NAMED PLAINTIFFS, YOU

9     KNOW, IT MAY BE THAT IT'S NOT THAT BURDENSOME.  I DON'T KNOW.

10          I WILL HEAR FROM YOU AFTER YOU'VE HAD YOUR CONVERSATION

11     AND THEN YOU CAN PRESENT TO ME YOUR COMPETING VIEWS ON THAT

12     POINT IF YOU STILL HAVE COMPETING VIEWS.

13          AND I WOULD ENCOURAGE THE PARTIES TO DISCUSS THIS IN

14     TRANSACTION SPECIFIC ISSUES AS WELL.  THERE MAY BE MANY THINGS

15     THAT COULD BE EXCLUDED ONCE YOU ALL HAVE A CONVERSATION.  I'M

16     NOT --

17          GO AHEAD, MR. GUTKIN.

18          MR. GUTKIN:  I MEAN, I APPRECIATE THAT, YOUR HONOR,

19     AND WE UNDERSTAND -- WE RECEIVED YOUR ORDER ON FRIDAY REGARDING

20     OTHER KINDS OF NAMED PLAINTIFF DATA, AND I THINK IT'S --

21     MS. WEAVER AND I HAVE DIFFERENT UNDERSTANDINGS OF WHAT'S EASY

22     OR WHAT WAS ARGUABLY EASY TO DO IN CALHOUN.

23          AND SO WE DO HAVE TO KIND OF GET TO THE BOTTOM OF THOSE

24     FACTS, BUT THERE JUST HAS TO BE SOME PROPORTIONALITY, AND WHAT

25     WE CAN EXPLORE IS WHAT WOULD REALLY BE INVOLVED IN GETTING ALL

1    OF THE INFORMATION THAT THEY'RE ASKING ABOUT, WHAT WAS GOOGLE

2    ULTIMATELY PAID FOR EACH INDIVIDUAL AD SHOWN TO EACH OF NINE

3    PEOPLE OVER A VERY LONG PERIOD OF TIME.

4            THE COURT:  UM-HUM.

5            MR. GUTKIN:  AND IT SOUNDS LIKE WE'LL HAVE TO HAVE TO

6    THAT DEBATE, MAYBE WE CAN'T AGREE, OR MAYBE WE CAN AGREE ON

7    SOME CATEGORIES RELATED TO THE ORDER.

8        BUT, YOU KNOW, THIS CONCEPT OF SAMPLING TO HAVE THIS BE

9    PROPORTIONAL TO ME IS AN IMPORTANT ONE THAT I NEEDED TO RAISE.

10           THE COURT:  WELL, YOU KNOW, THERE MAY BE A PATH --

11   AND I'M NOT, I'M NOT ORDERING THIS, I AM REALLY SUGGESTING IT

12   AS A BASIS FOR DISCUSSION -- BUT, YOU KNOW, IF THERE IS SOME

13   SAMPLING APPROACH, PERHAPS THE PLAINTIFFS WOULD ACCEPT IT IF IT

14   WASN'T THEN GOING TO BE A BASIS FOR OPPOSING CERT BECAUSE IT

15   WAS MERELY A SAMPLE.

16       DO YOU SEE WHAT I MEAN?

17           MR. GUTKIN:  YES.

18           THE COURT:  SO THERE NEEDS TO BE SOME GIVE AND TAKE

19   IN YOUR DISCUSSION.  YOU MAY FIND, AFTER YOU HEAR MS. WEAVER

20   OUT, THAT THE METHODOLOGY USED IN THE OTHER MATTER CAN BE

21   APPLIED HERE, MAYBE CONSULT WITH YOUR CLIENT ABOUT THAT, AND

22   IT'S ACTUALLY VERY STRAIGHTFORWARD.

23       THERE'S PROBABLY SOME -- IT'S PROBABLY SOMEWHERE IN

24   BETWEEN THOSE THINGS.

25           BUT HAVE A CONVERSATION ABOUT THOSE MATTERS.  IT'S UP TO

1    YOU TO DO THAT, AT LEAST IN THE CONTEXT OF THIS

2    PRE-CERTIFICATION DISCOVERY.

3         BECAUSE AS FAR AS PROPORTIONALITY GOES, AS I SAID, I

4    WOULDN'T AT THIS STAGE ORDER THAT YOU DO THIS FOR EVERY SINGLE

5    POTENTIAL CLASS MEMBER.  THAT DOES SEEM DISPROPORTIONATE.

6         BUT FOR THE NINE NAMED PLAINTIFFS, I'M SKEPTICAL THAT

7    THERE CAN'T BE SOME PRODUCTION.

8              MR. GUTKIN:  I MEAN, OBVIOUSLY WE HAVE OUR RELEVANCE

9    OBJECTION --

10             THE COURT:  OF COURSE.

11             MR. GUTKIN:  -- WHICH YOU HEARD.

12             THE COURT:  YES, I DID HEAR THAT, AND I AM PUTTING

13   THAT IN SOMEWHAT THE SAME BUCKET AS THE FIRST CATEGORY WE

14   DISCUSSED.  I AM PERSUADED THAT THEY NEED IT IN ORDER TO MAKE

15   THEIR -- TO DESCRIBE THEIR THEORY TO THE COURT, AND THEN YOU'LL

16   BE ABLE TO CONTEST THAT.

17             MR. GUTKIN:  YEAH.  I MEAN, I UNDERSTAND, YOUR HONOR,

18   IN TERMS OF THE OVERALL REVENUE, WHERE YOUR HONOR IS.

19        BUT THE INDIVIDUAL AMOUNTS FOR EACH INDIVIDUAL AD, I DON'T

20   UNDERSTAND HOW THAT IS EVEN RELEVANT.

21             THE COURT:  YOU KNOW, IT -- I DON'T -- I'M NOT

22   ENTIRELY SURE, AND I'M NOT GOING TO SPEAK FOR THE PLAINTIFFS,

23   BUT IT MAY BE THAT UNDERSTANDING WHICH REVENUE COMES FROM WHICH

24   TYPE OF INTERACTION IS IMPORTANT, AND SO PERHAPS ANOTHER AREA

25   FOR THE PARTIES TO DISCUSS IS WHETHER DIFFERENT TYPES OF

1       REVENUE CAN BE AGGREGATED ON A PER PLAINTIFF BASIS.  AS OPPOSED

2       TO EACH INDIVIDUAL EVENT, MAYBE IT CAN BE ALL OF THESE KINDS

3       TOTAL THIS AMOUNT, ALL OF THESE KINDS TOTAL THIS OTHER AMOUNT.

4            IT'S UP TO YOU TO DISCUSS THAT, AND I'M NOT TRYING TO

5       DICTATE A RESULT.  OKAY?

6            YES?

7               MS. WEAVER:  JUST TO AUGMENT THAT POINT, YOUR HONOR,

8       I THINK YOU'RE RIGHT.  FOR EXAMPLE, WE'RE INTERESTED TO KNOW,

9       BUT WE DON'T BECAUSE WE'RE NOT GOOGLE, WHETHER CERTAIN KINDS OF

10      VERTICALS, LIKE THE SENSITIVE ONES, LIKE HEALTH ONES, HAVE A

11      HIGHER REVENUE PULL, OR DON'T.  WE'D LIKE TO KNOW THAT.  THAT'S

12      RELEVANT TO THE OFFENSIVE NATURE OF SOME OF THE PRIVACY CLAIMS,

13      ET CETERA.

14           THE OTHER THING I JUST WANT TO SAY IS WE HAVE ALWAYS BEEN

15      OPEN -- AND WE DON'T WANT EVERYTHING.  WE WANT TO GET WHAT WE

16      NEED TO PROVE THE CASE, AND WE HAVE THE LUXURY IN THIS CASE,

17      ODDLY, OF KNOWING SOME OF SPECIFICALLY WHAT WE WANT FROM

18      ANOTHER, SO WE'RE TRYING TO BE VERY, VERY TARGETED.

19           HOWEVER, WE DID HAVE THE UNFORTUNATE EXPERIENCE OF WHEN WE

20      DIDN'T RECEIVE FULL LOGS IN THE LAST CASE, THERE WERE SIGNALS

21      THAT SPECIFICALLY IDENTIFIED OUR CLASS THAT WERE NEVER

22      DISCLOSED, AND THAT HAS CAUSED A HUGE KERFUFFLE IN THE OTHER

23      CASE.

24           SO WE NEED AT LEAST FULL SETS OF ONE LOG SO THAT WE CAN

25      SEE THE FIELDS TO UNDERSTAND THEIR RELEVANCE, BECAUSE WHEN WE

1    DIDN'T GET THAT THE LAST TIME, THINGS WERE WITHHELD THAT CAUSED

2    A YEAR'S WORTH OF SPECIAL MASTER WORK AND OVER A MILLION

3    DOLLARS TRYING TO IDENTIFY THINGS THAT EXISTED.

4         SO THAT'S THE OTHER PIECE.

5             THE COURT:  ALL RIGHT.  WELL, AGAIN, I'M NOT IN A

6    POSITION TO GIVE YOU ANY KIND OF GUIDANCE ON THAT ISSUE AT THIS

7    POINT, BUT I DO ENCOURAGE YOU TO FOLLOW MY DIRECTION IN THE

8    PRIOR ORDER FROM LAST WEEK AND TALK ABOUT THESE MATERIALS TO

9    THE EXTENT THEY CAN INFORM YOUR DISCUSSION ON CATEGORY 4.

10        CATEGORY 5 --

11            MR. GUTKIN:  THANK YOU, YOUR HONOR.

12            THE COURT:  YEAH, OKAY.  AND YOU CAN STAY UP HERE IF

13   YOU WANT.  I DON'T MEAN TO -- OR MS. AARTI -- I'M SORRY --

14   MS. REDDY CAN COME UP HERE IF SHE WOULD PREFER.  I DON'T WANT

15   ANYONE TO FEEL LIKE THEY'RE SECOND CLASS CITIZENS HAVING TO SIT

16   DOWN AT DEFENSE TABLE.

17        SOME DAY I WILL GET TECHNOLOGY IMPROVED IN MY COURTROOM.

18        OKAY.  CATEGORY 5 IS THE NUMBER OF GOOGLE ACCOUNT HOLDERS

19   IN THE U.S. DURING THE CLASS PERIOD.

20        THE PLAINTIFFS SAY THAT THEY NEED THIS INFORMATION FOR

21   EXTRAPOLATION OF CLASS-WIDE DAMAGES AND FOR PRO RATA

22   APPORTIONMENT.

23        GOOGLE'S RESPONSE, AS I UNDERSTAND IT, IS THAT THERE'S NO

24   REQUEST FOR PRODUCTION THAT ASKS FOR THIS, ACTUALLY IT'S

25   PREMATURE, AND IT'S NOT LIMITED TO RTB.

1    SO LET ME HEAR FROM THE PLAINTIFFS ON WHY IT'S RELEVANT

2    AND PROPORTIONAL TO THE NEEDS OF THE CASE AND TIED TO A

3    DISCOVERY REQUEST.

4         MS. PRITZKER:  OKAY.  SO, FIRST, RFP'S 46 AND 47 SEEK

5    THIS INFORMATION.

6         LET ME TRY AGAIN.

7         THE COURT:  THIS INFORMATION.

8         MS. PRITZKER:  LET ME TRY AGAIN.

9         RFP'S 46 AND 47 REQUEST THIS INFORMATION.

10         THE COURT:  OKAY.  YOU ONLY CITE 55 AND 56 IN YOUR

11    PAPERS.

12         MS. PRITZKER:  I THINK WE CITE 46, 47, AND 56, BUT IF

13    WE HAVEN'T, I APOLOGIZE.

14         THE COURT:  YEAH.  PAGE 2, CATEGORY 5, 55 AND 56, SO

15    THOSE ARE THE ONES I LOOKED AT.  I WILL LOOK AT 46 AND 47.

16         OKAY.  I'M NOT REALLY SEEING IT, BUT --

17         MS. PRITZKER:  OKAY.

18         THE COURT:  AND THE NEXT QUESTION, WHY IS IT RELEVANT

19    TO A CLAIM OR DEFENSE TO HAVE THE NUMBER OF ACCOUNT HOLDERS AT

20    THIS STAGE?

21         MS. PRITZKER:  IT'S IMPORTANT TO ESTIMATE THE SIZE OF

22    THE CLASS FOR -- TO SATISFY OUR NUMEROSITY ELEMENT UNDER

23    RULE 23, BUT ALSO IT'S AN IMPORTANT INPUT INTO CLASS DAMAGES.

24         WE CAN USE THE AGGREGATE REVENUE DATA AND IMPACTS ON

25    REVENUE STUDIES THAT WE'VE IDENTIFIED EARLIER TODAY IN THE

1    BROWSING HISTORY FIELDS THAT ARE REMOVED FROM RTB, TOGETHER

2    WITH CLASS MEMBER DATA, THAT IS, THE NUMBER OF ACCOUNT HOLDERS

3    IN THE U.S., TO ESTIMATE A COMMON METHOD OF ALLOCATING THOSE

4    DAMAGES AMONG CLASS MEMBERS FOR PURPOSES OF CLASS

5    CERTIFICATION.

6              THE COURT:  IS THERE A DISPUTE ABOUT NUMEROSITY FOR

7    PURPOSES OF CLASS CERT?

8              MS. PRITZKER:  IT'S NOT JUST NUMEROSITY.  OBVIOUSLY

9    WE NEED TO, AS PART OF OUR DAMAGES, WE NEED PREDOMINANCE.  WE

10   HAVE TO BE ABLE TO SHOW THAT WE HAVE CLASS-WIDE PROOF AND A

11   METHOD TO ALLOCATE DAMAGES AMONG CLASS MEMBERS.

12             THE COURT:  RIGHT.  BUT WHY WOULD YOU NEED THE NUMBER

13   OF ALL GOOGLE ACCOUNT HOLDERS IN THE UNITED STATES FOR THAT?

14             MS. PRITZKER:  WELL, I MEAN, I GUESS WE COULD SUGGEST

15   TO THE COURT AT CLASS CERTIFICATION THAT WE HAVE A METHOD, BUT

16   WE DON'T KNOW, YOU KNOW, SORT OF WHAT EACH CLASS MEMBER MIGHT

17   BE ENTITLED TO BECAUSE WE DON'T KNOW THE TOTAL NUMBER OF CLASS

18   MEMBERS IN THE CLASS.

19        I MEAN, I GUESS WE COULD DO THAT.  I DON'T KNOW HOW THAT'S

20   HELPFUL TO JUDGE GONZALEZ ROGERS AT CLASS CERTIFICATION.

21             THE COURT:  WELL, BUT WHY ISN'T -- SO IF THERE'S NO

22   DISPUTE ABOUT NUMEROSITY AND THERE'S A VAST NUMBER OF CLASS

23   MEMBERS, YOU'RE NOT GOING -- SHE'S NOT GOING TO EXPECT -- MAYBE

24   YOU'RE TELLING ME SHE IS GOING TO EXPECT A CALCULATION OF WE

25   THINK THIS CASE IS WORTH X AMOUNT OF MONEY OVERALL.

1          IS THAT WHAT YOU'RE EXPECTING THAT YOUR SHOWING NEEDS TO

2     ENCOMPASS?

3               MS. PRITZKER:  I MEAN, ONE OF OUR ESTIMATES OF

4     DAMAGES MAY BE THAT THE CLASS HAS BEEN DAMAGED OVERALL IN X

5     AMOUNT AND THAT THAT CAN BE ALLOCATED AMONG CLASS MEMBERS --

6               THE COURT:  OKAY.

7               MS. PRITZKER:  -- YOU KNOW, ON A PRO RATA BASIS.

8          IT'S SORT OF AN EASY NUMBER TO PRODUCE.  I DON'T

9     UNDERSTAND WHY WE'RE EVEN ARGUING ABOUT IT.

10               THE COURT:  WELL, I THINK THE OTHER ARGUMENT IS THAT

11     IT'S NOT LIMITED TO PARTICIPANTS IN RTB.

12               MS. PRITZKER:  WELL, FIRST OF ALL, ALL ACCOUNT

13     HOLDERS ARE CLASS MEMBERS IN THIS CASE.

14               THE COURT:  WHETHER OR NOT THEIR INFORMATION WAS

15     SHARED OR NOT?

16               MS. PRITZKER:  WELL, I -- THERE ARE -- ALL ACCOUNT

17     MEMBERS ARE REQUIRED TO HAVE, YOU KNOW, A GMAIL ACCOUNT AND A

18     GOOGLE ID, AND I GUESS IF THERE IS EVIDENCE THAT THERE ARE

19     PHANTOM ACCOUNT HOLDERS WHO NEVER SIGN ON TO THE INTERNET AND

20     NEVER -- AND WHOSE INFORMATION WAS NEVER USED OR TRANSACTED IN

21     RTB, WE'D LIKE TO SEE THAT.

22          BUT FOR OUR PURPOSES -- FROM OUR PERSPECTIVE, IT'S THE

23     SAME NUMBER.  UNLESS THERE'S SOME CATEGORY OF PEOPLE OUT THERE,

24     WHICH WE ARE UNAWARE OF, WHO NEVER USE THE INTERNET, YOU KNOW,

25     THEY GET A GOOGLE ACCOUNT NUMBER BUT THEY NEVER LOG ON TO THE

1    INTERNET FOR SOME REASON, YOU KNOW, OR IT'S JUST SORT OF A

2    PHANTOM ACCOUNT THAT NEVER GENERATES ACTIVITY, INTERNET

3    BROWSING ACTIVITY.

4         THE WHOLE POINT OF RTB IS THAT IT TARGETS USERS USING

5    THEIR ACCOUNT HOLDER IDENTIFICATION INFORMATION, RIGHT?

6              THE COURT:  UM-HUM.

7              MS. PRITZKER:  SO HAVING AN UNDERSTANDING OF HOW MANY

8    THERE ARE, UNLESS FOR SOME REASON THERE IS A CATEGORY OF

9    DOCUMENTS GOOGLE IS AWARE OF, A CATEGORY OF PEOPLE THAT GOOGLE

10   IS AWARE OF THAT NEVER ACTIVATE THEIR GOOGLE ACCOUNT AND NEVER

11   SEARCH THE INTERNET, I SUSPECT THAT'S, YOU KNOW --

12             THE COURT:  OKAY.

13             MS. PRITZKER:  -- NOT THE CASE.

14             THE COURT:  LET ME HEAR FROM GOOGLE ON THIS ONE.

15        I UNDERSTAND THE OBJECTIONS THAT HAVE BEEN MADE IN YOUR

16   PAPERS, BUT WOULD YOU LIKE TO ARGUE IT?

17             MS. REDDY:  YES, YOUR HONOR.  THANK YOU.

18        SO FIRST OF ALL, WE DON'T AGREE THAT THIS RFP IS, OR AT

19   LEAST THE REQUEST AS ARTICULATED IN THEIR PAPERS IS NOT

20   OVERBROAD.

21        FROM OUR PERSPECTIVE, IT IS OVERBROAD BECAUSE THEY'RE

22   ASKING FOR ALL ACCOUNT HOLDERS.  IT NEEDS TO BE LIMITED AT THE

23   VERY LEAST TO ACCOUNT HOLDERS WHO WERE SUBJECT TO AN RTB

24   CALLOUT.

25        RESPECTFULLY MS. PRITZKER IS ASSUMING THAT THE RATIO IS

1    ONE TO ONE.  REALLY THIS CASE IS ABOUT RTB, IT'S ABOUT

2    INDIVIDUAL CLASS MEMBERS WHO PURPORTEDLY HAD THEIR INFORMATION

3    SHARED, PERSONAL OR SENSITIVE INFORMATION SHARED THROUGH RTB,

4    AND THAT REALLY IS THE NUMBER THAT IS RELEVANT, IF AT ALL.

5        BUT SEPARATELY, YOU KNOW, I HATE TO SOUND LIKE A BROKEN

6    RECORD, YOUR HONOR, BUT IT APPEARS THAT PLAINTIFFS ARE ASKING

7    FOR THIS INFORMATION IN A VACUUM.  WE WEREN'T ABLE TO IDENTIFY

8    A REQUEST FOR PRODUCTION THAT ACTUALLY SEEKS THIS INFORMATION.

9        TO THE EXTENT THAT MS. PRITZKER IS SAYING THAT 46 AND 47

10   REQUEST THIS INFORMATION, WE RESPECTFULLY DISAGREE.  THIS

11   RELATES TO ESTIMATES OR CALCULATIONS OF THE MONETARY VALUE OF

12   ACCOUNT HOLDERS' INFORMATION, NOT THE NUMBER OF GOOGLE ACCOUNT

13   HOLDERS WHO WERE SUBJECT TO AN RTB CALLOUT.

14       AS YOUR HONOR NOTED, WE ARE NOT CONTESTING NUMEROSITY, SO

15   IT'S NOT RELEVANT FOR THAT PURPOSE.

16       AND IT DOESN'T APPEAR TO BE RELEVANT FOR PREDOMINANCE AT

17   CLASS CERTIFICATION.  THIS IS NOT A PREDOMINANCE ISSUE.

18   PLAINTIFFS DON'T NEED TO ESTABLISH PRO RATA APPORTIONMENT IN

19   ORDER TO PRESENT A VIABLE DAMAGES MODEL TO THE COURT AT CLASS

20   CERTIFICATION.

21       IF THE CLASS IS CERTIFIED, THIS INFORMATION MAY BECOME

22   RELEVANT AT THE MERITS STAGE.

23       BUT PARTICULARLY SINCE PLAINTIFFS HAVE NOT IDENTIFIED A

24   REQUEST FOR PRODUCTION THAT IS SEEKING THIS INFORMATION, WE

25   DON'T SEE WHY IT WOULD NEED TO BE PRODUCED AT THIS STAGE.

1      THE COURT:  SO WHAT I UNDERSTAND YOU AS SAYING THAT

2  THE MATTERS ABOUT WHICH MS. PRITZKER SAID SHE NEEDS THIS

3  INFORMATION THAT ARE GOING TO BE PART OF THE CLASS CERT MOTION

4  ARE NOT GOING TO BE CONTESTED BY GOOGLE IN THAT PROCEEDING?

5      MS. REDDY:  WELL, TO THE EXTENT THAT THEY'RE SAYING

6  THAT IT'S RELEVANT TO NUMEROSITY, WE'RE NOT CONTESTING

7  NUMEROSITY AT CLASS CERTIFICATION, AND WE DON'T BELIEVE THAT

8  MS. PRITZKER OR PLAINTIFFS HAVE MADE A SHOWING THAT THIS IS

9  RELEVANT TO PRESENTING A VIABLE DAMAGES MODEL AT CLASS

10  CERTIFICATION.

11      THE COURT:  WELL, OKAY.  BUT IF YOU'RE GOING TO

12  CONTEST THAT AND THEY SAY THEY NEED THE INFORMATION IN ORDER TO

13  PRESENT THEIR DAMAGES MODEL, THEN DON'T WE HAVE A PROBLEM?

14      MS. REDDY:  WELL, THEY'VE NEVER ARTICULATED WHY THEY

15  NEED THIS INFORMATION IN ORDER TO PRESENT THEIR DAMAGES MODEL.

16  THEY DON'T NEED TO ESTABLISH HOW MUCH EACH CLASS MEMBER IS

17  GOING TO RECEIVE IN ORDER TO RECEIVE CLASS CERTIFICATION.

18      THEY JUST NEED TO ESTABLISH THAT THEY CAN PROVE DAMAGES ON

19  A CLASS-WIDE BASIS.

20      MS. PRITZKER:  THERE'S NO WAY TO --

21      THE COURT:  HOW HARD IS IT TO IDENTIFY THE NUMBER OF

22  ACCOUNT HOLDERS WHO ARE THE SUBJECT OF, I DON'T KNOW WHAT YOU

23  CALL IT, THE RTB CALLOUT DURING THE CLASS PERIOD IN THE

24  UNITED STATES?

25      MS. REDDY:  I DON'T UNDERSTAND IT TO BE PARTICULARLY

1      BURDENSOME, YOUR HONOR.

2            MR. GUTKIN:  WELL, IT -- OVER THE ENTIRE CLASS

3      PERIOD, I DON'T THINK THAT WOULD BE POSSIBLE TO DO.

4          BUT IT'S NOT -- YOUR HONOR, WE'RE NOT PREDOMINANTLY MAKING

5      A BURDEN ARGUMENT ON GETTING A COUNT.

6          BUT MS. PRITZKER'S EXPLANATIONS FOR HOW HAVING THIS

7      LITERAL NUMBER, WE KNOW THERE IS A NUMBER, BUT FOR HAVING THIS

8      LITERAL NUMBER RELATES TO ANY PREDOMINANCE ARGUMENT THAT

9      THEY'RE GOING TO MAKE, I HAVEN'T HEARD ANY EXPLANATION OF THE

10     RELEVANCE IN THAT RESPECT.

11           THE COURT:  I DON'T THINK THAT JUDGE GONZALEZ ROGERS,

12     OR JUDGE KOH BEFORE HER, BIFURCATED DISCOVERY BETWEEN CLASS

13     CERT AND OTHER ISSUES.

14         SO WHAT I'M JUST WONDERING HERE IS YOU ALL ARE FIGHTING

15     VERY HARD ABOUT THIS, ABOUT EVERYTHING, BUT ABOUT THIS ONE IN

16     PARTICULAR.  BUT IF IT'S NOT BURDENSOME AND YOU CAN AT LEAST

17     COME UP WITH SOME SORT OF ESTIMATE FOR SOME PERIOD OF TIME,

18     EVEN IF YOUR RECORDS DON'T GO BACK THAT FAR, WHY RESIST

19     PRODUCING THAT INFORMATION?

20         IF IT'S NOT RELEVANT FOR CLASS CERT, IT'S NOT RELEVANT FOR

21     CLASS CERT.

22         IF THEY GET PAST THE CLASS CERT STAGE, YOU WILL HAVE TO

23     PROVIDE IT.

24         SO I'M JUST TRYING TO UNDERSTAND SORT OF AS A PRACTICAL

25     MATTER WHY THIS IS -- YOU DON'T ALWAYS HAVE TO FIGHT ABOUT

```
 1        EVERYTHING, AND THIS IS NOT DIRECTED AT DEFENDANTS IN

 2        PARTICULAR, BUT JUST -- I'M JUST WONDERING, IS THERE AN EASY

 3        SOLUTION TO THIS PROBLEM?

 4              MR. GUTKIN:  WELL, YOUR HONOR -- AGAIN, YOUR HONOR,

 5        THERE'S NO REQUEST FOR IT.  I MEAN, MS. PRITZKER JUST

 6        IDENTIFIED THE REQUESTS THAT THEY ARE ASSERTING COVER THIS, AND

 7        THERE ISN'T ONE.

 8              THE COURT:  OKAY.

 9              MS. WEAVER:  IF I MAY, YOUR HONOR?

10        THIS WAS A NARROWING, SO WE MET AND CONFERRED AND WHEN WE

11        WERE TALKING ABOUT THAT RFP, WE NARROWED AND SAID, OKAY, JUST

12        GIVE US THE NUMBER OF GOOGLE ACCOUNT HOLDERS.

13        TWO, GOOGLE DID CHALLENGE CLASS CERT IN CALHOUN JUST LAST

14        WEEK SAYING THAT IT WAS UNMANAGEABLE BECAUSE YOU COULDN'T

15        APPORTION DAMAGES.

16        I DON'T HEAR THEM SAYING THAT THEY'RE WAIVING THAT

17        ARGUMENT HERE.

18              THE COURT:  BUT HOW DOES THIS HELP YOU WITH

19        APPORTIONMENT?

20              MS. WEAVER:  IT HELPS US IDENTIFY WHO, LIKE, THE

21        NUMBER OF PEOPLE THAT --

22              THE COURT:  YOU JUST HAVE A NUMBER.

23              MS. WEAVER:  YEAH.  AND SO WE -- THE DAMAGES MODEL,

24        OR ONE OF THEM -- AND WE'RE ABOUT TO TALK ABOUT SCREENWISE --

25        IS ONE MEASURE OF DAMAGES THAT WE AND BROWN EXPERTS USED IS
```

```
1     LOOK AT THE NUMBER OF USERS AND LOOK AT THE AVERAGE VALUE THAT

2     GOOGLE PAYS PEOPLE FOR SIMILAR INFORMATION, AND YOU MULTIPLY

3     IT.

4          AND I DON'T KNOW WHAT THEY MEAN BY WHO RECEIVES AN RTB

5     CALLOUT.  LIKE, THAT IS VAGUE.  WE'VE NEVER DISCUSSED IT.  I'M

6     VERY SKEPTICAL THAT THAT WOULD NOT EXCLUDE PEOPLE THAT WE

7     CONTEND ARE IN -- YOU KNOW, THERE ARE -- OUR CLASS MEMBERS ARE

8     DAMAGED BECAUSE THEIR ASSOCIATED DATA IS MADE AVAILABLE NOT

9     JUST THROUGH THE BID REQUEST, BUT BY PEOPLE LURKING IN THE

10    AUCTION WHO SEE WHAT'S GOING OUT AND WHO'S BEING TARGETED.

11              THE COURT:  I UNDERSTAND.

12              MS. WEAVER:  YEAH, YEAH.

13              THE COURT:  JUST PICK A NUMBER.  LIKE, LET'S SAY IT

14    WAS 50 MILLION PEOPLE.  I'M JUST PICKING A NUMBER.

15              MS. WEAVER:  YEAH.

16              THE COURT:  ALL YOU NEED TO SAY IS IT'S A REALLY

17    LARGE NUMBER AND DAMAGES WILL BE THAT REALLY LARGE NUMBER TIMES

18    WHATEVER OUR DAMAGES MODEL SAYS BASED ON THIS NAMED PLAINTIFF'S

19    DATA.

20         YOU'RE NOT ACTUALLY GETTING ANY INFORMATION ABOUT THESE

21    NON-NAMED PLAINTIFF CLASS MEMBERS THAT WILL ALLOW YOU TO DO ANY

22    APPORTIONMENT OTHER THAN SIMPLY MULTIPLYING TIMES THAT NUMBER.

23              MS. WEAVER:  WELL --

24              THE COURT:  SO THAT'S WHAT I'M REALLY STRUGGLING WITH

25    IS THAT THE PRO RATA APPORTIONMENT, IT'S JUST MATH.  YOU'RE
```

```
1     JUST SAYING TAKE THIS NUMBER THAT POPS OUT OF OUR DAMAGES

2     MODEL, OR RANGE OF NUMBERS, AND MULTIPLY IT BY THIS OTHER BIG

3     NUMBER AND THAT'S THE SCOPE OF OUR DAMAGES CASE.

4          SO --

5               MS. WEAVER:  YOU'RE RIGHT ABOUT THAT IF THIS WERE

6     ONLY CLASS CERT.

7          BUT AS YOU JUST SAID, I MEAN, WHEN AM I GOING TO GET THE

8     NUMBER THAT MY EXPERTS CAN USE SO I KNOW WHAT MY DAMAGES ARE?

9     AND SHOULDN'T WE KNOW, IN SOMETHING THIS SIMPLE, WHAT THE

10    DAMAGES ARE FOR THIS CASE RIGHT NOW TO EVEN UNDERSTAND ALL

11    THESE PROPORTIONALITY ARGUMENTS?

12         THIS IS NOT A HARD ONE.

13              THE COURT:  SO IT'S NOT A CLASS CERT ISSUE.

14              MS. WEAVER:  IT IS A CLASS CERT ISSUE, BECAUSE THEY

15    MAY CHALLENGE APPORTIONMENT, AS THEY DID --

16              THE COURT:  HOW DOES THAT HELP YOU WITH

17    APPORTIONMENT?

18              MS. WEAVER:  SO WE USED EXACT NUMBERS AND WE HAD OUR

19    DAMAGES EXPERT SAY, OKAY, HERE'S THE SCREENWISE VALUE, $20,

20    THAT'S CORROBORATED BY OTHERS, AND HERE ARE THE NUMBER OF CLASS

21    MEMBERS THAT WE HAVE, AND WE MULTIPLY IT, AND GOOGLE CAME BACK

22    AND SAID, OH, SOME OF THESE NUMBERS ARE WRONG AND YOUR EXPERT

23    IS TERRIBLE BECAUSE HE DOESN'T KNOW EXACTLY WHAT THE NUMBERS

24    ARE.

25              THE COURT:  MEANING THE NUMBER OF CLASS MEMBERS?
```

1          MS. WEAVER:  YEAH, YEAH.  YES, VARIOUS CALCULATIONS.

2     OH, THEY CAN'T IDENTIFY SPECIFICALLY WHO'S IN THEIR CLASS, THEY

3     DON'T KNOW -- YES, ALL OF THESE THINGS.

4          SO THEY'LL SAY THE SAME THING HERE.  HOW IS THIS A

5     RELIABLE MODEL IF THEY CAN'T PROVE THAT THEY KNOW EXACTLY WHO

6     IS A CLASS MEMBER?

7          THE COURT:  OKAY.  SO THAT'S A DIFFERENT --

8          MS. WEAVER:  AND THAT'S CLASS CERT.

9          THE COURT:  I THINK THAT'S A DIFFERENT ARGUMENT THAN

10    WHAT I UNDERSTOOD FROM YOUR PAPERS AND WHAT I UNDERSTOOD FROM

11    OUR EARLIER DISCUSSION, WHICH IS BEING ABLE TO IDENTIFY MEMBERS

12    OF THE CLASS, ARE THEY IDENTIFIABLE IS AN IMPORTANT PART OF

13    CLASS CERT, AND IF IT'S GOING TO BE AN ARGUMENT, THEN THERE

14    NEEDS TO BE SOME WAY TO IDENTIFY CLASS MEMBERS.

15         SO LET ME HEAR FROM GOOGLE ON THAT POINT.  WHY NOT -- AND

16    AGAIN, I'M NOT FOCUSSING ON WHETHER THERE'S ACTUALLY AN RFP

17    THAT ASKS FOR THIS, BUT JUST WHY ISN'T IT IMPORTANT TO BE ABLE

18    TO IDENTIFY THE CLASS MEMBERS, AND CAN YOU DO IT?

19         MR. GUTKIN:  WELL, IT'S -- THAT'S A TOTALLY DIFFERENT

20    QUESTION --

21         THE COURT:  IT IS.

22         MR. GUTKIN:  -- WITH RESPECT TO THE COUNT OF CLASS

23    MEMBERS, WHICH IS THE SUBJECT OF THIS DISCOVERY DISPUTE.

24         AND WHEN MS. WEAVER IS ARTICULATING THE, YOU KNOW,

25    APPORTIONMENT OR WHETHER THEY CAN DO PRO RATA OR NOT, OBVIOUSLY

1    YOU CAN HAVE THAT DISPUTE WITHOUT KNOWING IF THE NUMBER IS

2    50 MILLION VERSUS 45 VERSUS 40 MILLION.

3            THE COURT:  UM-HUM.

4            MR. GUTKIN:  SO TO BE PROVIDING DISCOVERY THAT THEY

5    DIDN'T REQUEST, I DON'T SEE HOW THIS IS ANY KIND OF NARROWING

6    OF THE RFP'S AS SHE JUST CONTENDED.

7            THE COURT:  SO TO THE EXTENT THAT THEY ASK FOR ALL

8    MONETARY OR RETAIL VALUE OF ACCOUNT HOLDERS' INFORMATION, OR

9    SOMETHING LIKE THAT, AVERAGE REVENUE PER USER, IT WOULD REQUIRE

10   THE CALCULATION OF HOW MANY USERS ARE SUBJECT TO THIS AND HOW

11   MUCH REVENUE TOTAL.

12       SO, YOU KNOW, WHILE IT MAY BE AN INARTFUL APPROACH,

13   IT'S -- I CAN SEE HOW IT'S POTENTIALLY A NARROWING OF THAT

14   REQUEST.

15       AND IF THIS WERE SOMETHING THAT WERE SUPER HARD TO DO, I

16   MIGHT JUST BE -- I MIGHT JUST SAY, SORRY, JUST GO ASK A

17   SPECIFIC REQUEST AND WE CAN BE BACK HERE IN A COUPLE WEEKS.

18       I'M JUST WONDERING, AS A PRACTICAL MATTER, WHETHER THAT'S

19   REALLY IN EVERYBODY'S BEST INTERESTS.

20       ALL RIGHT.  WELL, I WILL DECIDE WHAT TO DO WITH

21   CATEGORY 5.

22       CATEGORY 6 IS DOCUMENTS RELATED TO GOOGLE'S SCREENWISE

23   PROGRAM.  SO IT'S CHARACTERIZED IN PLAINTIFFS' PORTION OF THE

24   JOINT SUBMISSION AS FOLLOWS:  "GOOGLE PAYS USERS FOR THEIR

25   ONLINE DATA, INCLUDING BROWSING HISTORY ATTACHED TO

1        IDENTIFIERS," AND THIS IS A COMPONENT OF PLAINTIFFS' DAMAGES

2        MODEL.

3            I'M NOT CLEAR IF GOOGLE AGREES WITH THAT CHARACTERIZATION

4        OF WHAT THE SCREENWISE PROGRAM IS.  IT MAY BE.

5            BUT I UNDERSTAND THAT GOOGLE'S ARGUMENT, AT LEAST IN PART,

6        IS THAT THE SCREENWISE PROGRAM IS NOT SPECIFIC TO RTB, THERE IS

7        NO OVERLAP BETWEEN WHAT SCREENWISE PAYS GOOGLE USERS FOR, AND

8        SO THERE'S NO BASIS FOR SAYING SCREENWISE AND ANY DATA

9        ASSOCIATED WITH IT, LIKE THE AMOUNT OF MONEY PAID TO GOOGLE

10       USERS, IS NOT RELEVANT TO ANY CLAIM OR DEFENSE.

11           THAT'S WHAT I UNDERSTAND THE DISPUTE TO BE ABOUT.

12           HAVE I GOT THAT RIGHT FROM THE PLAINTIFFS' PERSPECTIVE?

13               MS. WEAVER:  YOU DO, YOUR HONOR.

14               THE COURT:  FROM GOOGLE'S PERSPECTIVE, HAVE I GOT

15       THAT ARGUMENT RIGHT?

16               MS. REDDY:  YES, YOUR HONOR.

17               THE COURT:  OKAY.  SO HERE'S -- HERE'S MY -- I

18       REALIZE SCREENWISE HAS COME UP BEFORE, AND AS I INDICATED

19       BEFORE, MY APPROACH TO THIS PROBLEM WAS THAT IF GOOGLE ASSIGNS

20       OR ESTIMATES VALUE FOR SOME OR ALL OF THE SAME INFORMATION THAT

21       IS AT ISSUE IN THE RTB, THAT IS, EXCHANGED OR SHARED IN THE RTB

22       AUCTION AND THERE'S SOME VALUATION OF THAT SAME INFORMATION BY

23       THE COMPANY, THEN THAT MAY BE RELEVANT.

24           WHAT I AM TRYING TO UNDERSTAND FROM THE PARTIES'

25       SUBMISSION IS WHETHER THERE IS AN OVERLAP, MEANING IS THERE

 1     INFORMATION THAT'S SHARED -- OR THAT IS THE SUBJECT OF THE

 2     SCREENWISE PROGRAM THAT OVERLAPS WITH INFORMATION THAT IS

 3     ALLEGED TO BE SHARED IN RTB?

 4          AND THE ONLY THING THAT I GLEANED FROM THE PAPERS IS THAT

 5     THERE'S A DISPUTE ABOUT WHETHER BROWSING HISTORY, WHICH IT IS

 6     CLAIMED IS SOMETHING GOOGLE USERS ARE PAID FOR IN SCREENWISE,

 7     IS SHARED IN RTB, OR WHETHER IT'S MERELY PROVIDING A WEB PAGE

 8     URL FOR PLACEMENT OF AN AD.

 9          IS THAT THE DISPUTE?

10          MS. WEAVER:  I CAN ADDRESS THE DISPUTE ISSUE.  THAT

11     IS A DISPUTE.

12          THE COURT:  ABOUT THE OVERLAP?

13          MS. WEAVER:  AND THERE'S A DISPUTE WITHIN THE

14     DISPUTE.

15          THE COURT:  OKAY.  WELL, LET'S HANDLE THE FIRST ONE

16     FIRST.

17          MS. WEAVER:  THE FIRST QUESTION IS, ARE CATEGORIES OF

18     INFORMATION COLLECTED THROUGH SCREENWISE THAT GOOGLE PAYS FOR

19     THAT MAP EXACTLY TO THE DATA AT ISSUE, PERSONAL INFORMATION

20     CATEGORIES IN THIS CASE?

21          THE ANSWER IS UNEQUIVOCALLY YES.  EXHIBIT -- THE EXHIBITS

22     TO MY DECLARATION, WHICH WE COULD HAVE DISCUSSED, IDENTIFY THE

23     SPECIFIC CATEGORIES.  THEY TELL -- LIKE, THEY IDENTIFY GAIA ID,

24     BISCOTTI ID, ZWIEBACK, IDFA, FLOC.  IT IDENTIFIES SPECIFIC --

25          THE COURT:  SO IT'S MORE THAN WEB BROWSING HISTORY?

```
 1              MS. WEAVER:  IT IS THE WEB BROWSING HISTORY, AND THEN

 2       IT IS TIED TO THESE IDENTIFIERS.

 3              THE COURT:  OKAY.  I GET THE TYING.

 4          BUT WHAT IS THE CONTENT OF THE INFORMATION FOR WHICH

 5       PEOPLE ARE PAID IN BOTH PLACES?  IS IT WEB BROWSING HISTORY?

 6              MS. WEAVER:  YES.  SO THIS IS THE DISPUTE WITHIN THE

 7       DISPUTE.

 8              THE COURT:  OKAY.

 9              MS. WEAVER:  WE HAVE HEARD LEGAL ARGUMENTS IN THIS

10       CASE, AND IN OTHERS, THAT GOOGLE'S POSITION IS THAT BROWSING

11       HISTORY, WHEN THEY USE IT, IS VERY, VERY SPECIFICALLY DEFINED

12       IN A WAY THAT ENGINEERS DON'T USE IT, LAY PEOPLE DON'T

13       UNDERSTAND IT, AND IT'S NOT HOW GOOGLE ACTUALLY HANDLES IT

14       INTERNALLY.

15          IN LEGAL ARGUMENTS, GOOGLE HAS SAID, BROWSING HISTORY

16       MEANS EVERY SINGLE PIECE OF DATA ANYBODY EVER VISITED, AND THEN

17       THEY SAY, WELL, YOUR BROWSING HISTORY, YOUR HONOR, WAS NEVER

18       GIVEN IN THE AUCTION.

19              THE COURT:  UM-HUM.

20              MS. WEAVER:  WE ARE SAYING, NO, OF COURSE IT'S NOT

21       EVERYBODY'S ENTIRE HISTORY.  BUT IT IS THE URL'S AND THE

22       WEBSITES THAT THEY HAVE VISITED, OR SOME SUBSET, AND THAT IS

23       WHAT ACTUALLY HAPPENS.

24          SO IT'S NOT EVERYTHING ALL AT ONCE EVERY SINGLE TIME.  IT

25       IS SOME HISTORY OF WHERE PEOPLE HAVE BROWSED.
```

```
 1                    THE COURT:  OKAY.

 2                    MS. WEAVER:  AND SO I THINK THAT MAY BE ONE OF THE

 3      DISPUTES HERE.

 4                 IT IS UNEQUIVOCALLY TRUE AND SHOWN IN THESE DOCUMENTS THAT

 5      WE HAVE IDENTIFIED THAT BROWSING HISTORY IS EXACTLY WHAT GOOGLE

 6      WAS COLLECTING FOR THE VERY REASON OF ANALYZING IT AND USING IT

 7      FOR INTERNAL PURPOSES.  SO IT HAD VALUE TO GOOGLE TO PAY FOR

 8      IT.

 9                    AND LET ME JUST, ON THE RELEVANCE ISSUE --

10                    THE COURT:  THROUGH SCREENWISE, YOU MEAN?

11                    MS. WEAVER:  YEAH, THROUGH SCREENWISE.  AND THERE ARE

12      OTHER PROGRAMS, TOO.

13                 BUT FOR SCREENWISE, WE'VE JUST ASKED FOR ACCESS TO 94

14      DOCUMENTS THAT WERE ALREADY PRODUCED.

15                 SO, YOUR HONOR, THIS IS ANOTHER ONE WHERE WE'RE JUST,

16      LIKE, WHY ARE WE FIGHTING ABOUT THIS?  SCREENWISE WAS THE

17      CORNERSTONE OF ONE OF THE DAMAGES THEORIES USED IN BROWN AND IN

18      CALHOUN AND IT WILL BE HERE.

19                 YOU KNOW, THERE ARE PUBLIC DOCUMENTS THAT TELL US THAT

20      GOOGLE IS PAYING $20 PER PERSON TO COLLECT THIS KIND OF

21      INFORMATION.

22                 TO OPPOSE IT, THEN GOOGLE WANTS TO COME IN AND SAY, OH, IT

23      DOESN'T COLLECT THE SAME EXACT KIND OF INFORMATION THROUGH AN

24      ARGUMENT OF THEIR LAWYERS, BUT THEY WON'T GIVE US THE DOCUMENTS

25      SO THAT WE CAN CHALLENGE THAT.
```

1          THEY'RE RAISING THE DEFENSE THAT SCREENWISE IS NOT A GOOD

2     PROXY FOR USER VALUE, AND THEN THEY WON'T GIVE US THE DISCOVERY

3     TO TEST WHAT THEIR LAWYERS ARE SAYING.

4          THAT'S NOT RIGHT.

5          THE COURT:  OKAY.  SO LET ME HEAR FROM GOOGLE ON WHAT

6     YOU THINK THE DISPUTE IS ABOUT.

7          MS. REDDY:  YES, YOUR HONOR.

8          AND AS YOUR HONOR NOTED, THIS IS AN ISSUE THAT PLAINTIFFS

9     HAVE BEEN HEARD ON TWICE.  WE LITIGATED THIS ISSUE ON THE

10    PAPERS WITH RESPECT TO THE THIRD SET OF RFP'S LAST MARCH, AND

11    THEN PLAINTIFFS WERE HEARD ON THIS ISSUE AT THE MAY HEARING.

12    WE THINK THIS IS THE THIRD TIME THEY'RE ATTEMPTING TO LITIGATE

13    THIS ISSUE.

14         WE DO NOT BELIEVE THAT SCREENWISE IS AT ALL A GOOD

15    COMPARATOR FOR PLAINTIFFS' DAMAGES FOR PURPOSES OF RTB, AND

16    RESPECTFULLY, WE STRONGLY DISAGREE WITH MS. WEAVER'S

17    CHARACTERIZATIONS OF SCREENWISE, AND I CAN EXPLAIN TO YOUR

18    HONOR WHY.

19         I JUST WANT TO NOTE AT THE OUTSET THAT WE THINK THAT THIS

20    IS AN IMPROPER MOTION FOR RECONSIDERATION AND THAT THIS IS --

21    THIS IS NOT PROPERLY BEFORE THE COURT.

22         BUT SEPARATELY, YOUR HONOR, WE STRONGLY CONTEST THE

23    CHARACTERIZATION THAT MS. WEAVER MADE THAT GOOGLE SHARES

24    BROWSING HISTORY THROUGH RTB.  WE HAVE SUBMITTED A SWORN

25    DECLARATION FROM A GOOGLE ENGINEER CONTESTING THIS IN THE

1    CONTEXT OF THE CROSS USE MOTION.

2        THIS WAS AN ISSUE THAT PLAINTIFFS ATTEMPTED TO LITIGATE

3    BEFORE JUDGE GONZALEZ ROGERS IN THE CONTEXT OF THE CROSS USE

4    MOTION.

5        GOOGLE DOES NOT SHARE BROWSING HISTORY IN THE CONTEXT OF

6    RTB.

7        SCREENWISE IS A COMPLETELY DIFFERENT PROGRAM, YOUR HONOR.

8    IT INVOLVES PAYMENT TO PARTICIPANTS OF A FLAT FEE IN EXCHANGE

9    FOR TRACKING INTERNET USAGE ACROSS A VARIETY OF DIFFERENT

10   DEVICES, INCLUDING THEIR ROUTER, THEIR TELEVISION, VARIOUS

11   DEVICES, MANY OF WHICH ARE, AGAIN, NOT AT ISSUE HERE.

12       PLAINTIFFS ALREADY CONCEDED IN THEIR PRIOR MOTION, ECF 171

13   AT PAGE 3, THAT THIS PROGRAM IS NOT SPECIFIC TO RTB.

14       SO JUST FOLLOWING YOUR HONOR'S PRIOR ORDERS, THERE'S NO

15   NEED TO GET INTO SCREENWISE BECAUSE, AS PLAINTIFFS HAVE ALREADY

16   CONCEDED, WE'RE WORKING ON A PROCESS TO IDENTIFY DAMAGES

17   RELATED DISCOVERY WITHIN THE CONTEXT OF RTB.

18       BUT SETTING THOSE ISSUES ASIDE, SCREENWISE IS A VERY POOR

19   COMPARATOR FOR PLAINTIFFS' PURPORTED DAMAGES IN THIS CASE.

20   THAT PROGRAM INVOLVES COLLECTION OF VARIOUS KINDS OF DIVERGENT

21   USER DATA.

22       AND MS. WEAVER, RESPECTFULLY, IS TRYING TO CHARACTERIZE

23   ALL OF THIS USER DATA AS RELEVANT, BUT THE VAST MAJORITY OF IT

24   HAS NOTHING TO DO WITH RTB.

25       THIS CASE, AS YOUR HONOR HAS REPEATEDLY RECOGNIZED,

1    INVOLVES DISCLOSURE TO THIRD PARTIES OF SPECIFIC PERSONAL OR

2    SENSITIVE INFORMATION.  THAT INFORMATION IS REALLY NOT AT ISSUE

3    IN SCREENWISE.

4            THE COURT:  OKAY.  CAN I STOP YOU THERE FOR JUST A

5    SECOND, BECAUSE I WANT TO MAKE SURE I UNDERSTAND YOUR ARGUMENT.

6        SO THE ARGUMENT THE PLAINTIFFS ARE MAKING IS THAT AMONG

7    THE THINGS THAT PEOPLE ARE PAID FOR -- AND I'M USING THEIR

8    CHARACTERIZATION OF SCREENWISE -- IS THEIR WEB BROWSING

9    HISTORY, MEANING WHO CAN SEE WHERE THEY GO.

10       SO I DON'T WANT TO GET HUNG UP ON TERMINOLOGY, BUT I'M

11   GOING TO USE THE TERM "WEB BROWSING HISTORY" TO DESCRIBE THAT

12   FOR PURPOSES OF THIS HEARING.

13       SO GOOGLE CAN SEE WHERE THEY GO, AND THE PEOPLE WHO ARE

14   PARTICIPATING IN SCREENWISE ARE ALLOWING THAT TO HAPPEN.

15       OKAY.  SO THEN WHEN YOU SAY IT'S ALL VERY DIFFERENT IN

16   RTB, THERE'S NOT -- THERE'S NOT THE SAME KIND OF INFORMATION

17   SHARING IN RTB, I UNDERSTAND THAT NOT EVERYTHING IS THE SAME.

18       BUT WHAT I'M TRYING TO DRILL DOWN ON IS THERE'S BEEN AN

19   ALLEGATION THAT IN RTB, ACCOUNT HOLDERS' WEB BROWSING HISTORY,

20   MEANING WEBSITES THEY HAVE VISITED, IS SHARED WITH RTB

21   PARTICIPANTS.

22       SO EVEN IF IT'S NOT EVERYTHING IN THE SCREENWISE PROGRAM,

23   IS IT ANYTHING?

24           MS. REDDY:  THE ONLY CLOSE -- THE ONLY COMPARATOR,

25   YOUR HONOR, IS THE SPECIFIC URL OF THE AD OPPORTUNITY IN A

```
 1        PARTICULAR ADVERTISEMENT.

 2             IT IS NOT BROWSING HISTORY.  IT IS ONE URL.

 3             THAT IS VERY DIFFERENT FROM TRACKING EVERYTHING THAT A

 4     USER DOES AND ALL OF THE DIFFERENT PAGES THAT A USER VISITS IN

 5     THE CONTEXT OF THEIR DAILY INTERNET LIFE.

 6             THE COURT:  OKAY.

 7             MS. REDDY:  AND THAT IS WHAT SCREENWISE INVOLVES.

 8             THE COURT:  BUT INSTEAD OF -- OKAY.  SO JUST FOR

 9     MY -- SINCE I REALIZE I MAY NOT BE USING THE SAME TECHNOLOGY

10     THAT THE PARTIES -- OR TERMINOLOGY THAT THE PARTIES ARE USING,

11     IS IT A WEB BROWSING HISTORY OF ONE WEBSITE WHEN YOU SAY THE

12     SPECIFIC URL THAT IS FOR THE AD PLACEMENT?

13             SO MEANING YOU WOULDN'T BE HAVING THAT SPECIFIC URL FOR

14     PURPOSES OF AD PLACEMENT IN AN RTB AUCTION UNLESS A USER HAD

15     GONE TO THAT URL; RIGHT?

16             MS. REDDY:  IT'S JUST ONE WEBSITE, THAT IS CORRECT.

17             THE COURT:  SO IT'S THE WEB HISTORY OF ONE -- WEB

18     BROWSING HISTORY OF ONE WEBSITE?

19             MR. GUTKIN:  WELL, JUST TO KIND OF JUMP IN, YOUR

20     HONOR --

21             THE COURT:  UM-HUM.

22             MR. GUTKIN:  -- SO IF YOU IMAGINE A PARTICIPANT IN

23     THE RTB AUCTION, IF A PERSON VISITS A THOUSAND WEBSITES A DAY,

24     ONE PARTICIPANT IN THE RTB AUCTION MIGHT GET BID REQUESTS FOR

25     20 OF THOSE, OR SOME OTHER NUMBER.
```

1          BUT WE'RE TALKING ABOUT SCREENWISE MIGHT HAVE 10 OR 15

2    DIFFERENT ELEMENTS OF USER USAGE THAT ARE ALL INCLUDED AND

3    UNDER THAT PRICE THAT GOOGLE PAYS, ONE OF WHICH IS A COMPLETE

4    WEB BROWSING HISTORY AS I UNDERSTAND IT BASED ON THE PUBLIC

5    DOCUMENTS DESCRIBING SCREENWISE, AND THEN ONE RTB PARTICIPANT

6    MIGHT RECEIVE A SLIVER OF JUST HERE ARE AD OPPORTUNITIES.

7          AND IT'S ALSO IDENTIFIED COMPLETELY DIFFERENTLY WHERE

8    THEY'RE RECEIVING JUST FOR, LIKE, THE LIFE OF A COOKIE THIS

9    PSEUDONYMOUS USER 12345 HAS VISITED THIS WEBSITE AND THIS

10   WEBSITE, WHEREAS SCREENWISE IS JEFF GUTKIN, HERE'S HIS COMPLETE

11   WEB BROWSING HISTORY, PLUS MANY, MANY OTHER ELEMENTS OF USAGE.

12          THE COURT:  OKAY.

13          MR. GUTKIN:  AND TO SAY, LIKE, WE NEED TO PRODUCE

14   THIS PROGRAM AND ALL THE DOCUMENTS RELATED TO IT BECAUSE OF

15   THAT KIND OF OVERLAP IS NOT, NOT PROPER.

16          THE COURT:  WELL, ONE THING THAT I UNDERSTAND

17   PLAINTIFFS TO SAY IS THEY WANT 94 DOCUMENTS THAT ARE ALREADY

18   PRODUCED IN CALHOUN, SO AS -- SO IN TERMS OF THE LAST REMARK

19   YOU MADE, I DON'T UNDERSTAND THEM TO BE ASKING FOR ANYTHING

20   BEYOND THAT.

21          I DON'T KNOW WHAT THESE 94 DOCUMENTS ARE.  MAYBE THEY'RE

22   MASSIVE DATA DUMPS.  I DON'T KNOW.

23          BUT LET'S ASSUME THEY'RE NOT.  THEN I TAKE YOUR POINT THAT

24   THERE'S A BIG DIFFERENCE BETWEEN WHAT YOU DESCRIBE IS HAPPENING

25   IN THE RTB AUCTION AND WHAT SOMEONE IS BEING PAID FOR IF THEY

1    PARTICIPATE IN THE SCREENWISE PROGRAM.

2        BUT DOES GOOGLE HAVE ANYTHING THAT ASSIGNS VALUE OR ALLOWS

3    THE CALCULATION OR ESTIMATE OF VALUE FOR THE SPECIFIC BEHAVIOR

4    OR EVENTS THAT ARE HAPPENING WITH RESPECT TO VISITING WEBSITES

5    AND HAVING THAT INFORMATION SHARED IN RTB?  DO YOU HAVE THAT?

6    DO YOU HAVE SOMETHING THAT MAPS MORE CLOSELY THAN SCREENWISE?

7        MS. REDDY:  YES, YOUR HONOR, AND THAT'S WHAT WE'RE

8    ENDEAVORING TO LOOK FOR THROUGH CATEGORY 3 AND THE TARGETED

9    COLLECTIONS WE'RE DOING, AND PLAINTIFFS HAVE ALREADY IDENTIFIED

10   DOCUMENTS ALONG THOSE LINES FROM OUR CUSTODIAL PRODUCTION.

11       SO BECAUSE WE HAVE DOCUMENTS ALONG THESE LINES IN THE

12   CONTEXT OF RTB, WE DO NOT BELIEVE IT'S APPROPRIATE TO BE

13   LOOKING AT DAMAGES, POTENTIAL DAMAGES DISCOVERY IN WHOLLY

14   DIFFERENT CONTEXTS.

15       THE COURT:  SO I JUST -- I JUST WANT TO BE REALLY

16   CLEAR BECAUSE I DON'T WANT TO MISUNDERSTAND YOU.  WHEN YOU SAY

17   YOU'RE LOOKING FOR IT, DO YOU HAVE THE DOCUMENTS ALREADY?  DO

18   YOU HAVE SOMETHING THAT'S LIKE, OKAY, THIS IS MUCH BETTER, THIS

19   IS MUCH MORE NARROWLY TAILORED TO RTB THAN SCREENWISE IS, WE

20   SHOULDN'T HAVE TO PRODUCE ANYTHING RELATED TO SCREENWISE

21   BECAUSE WE HAVE THIS MORE SPECIFIC DOCUMENTATION?

22       MS. REDDY:  YES, YOUR HONOR, AND THOSE ARE THE

23   DOCUMENTS AMONG WHICH PLAINTIFFS HAVE ALREADY CITED IN THEIR

24   MEET AND CONFER LETTER THAT WE RECEIVED LAST THURSDAY THAT

25   WE'VE OBTAINED THROUGH THE SEARCH TERM AND CUSTODIAL PRODUCTION

```
 1          PROCESS.

 2                 THE COURT:  OKAY.  ALL RIGHT.  AND I CUT YOU OFF, SO

 3          I'LL LET YOU FINISH YOUR ARGUMENT.

 4                 MS. REDDY:  YES, JUST A FEW MORE POINTS, YOUR HONOR.

 5             THERE ARE LOTS OF REASONS WHY SCREENWISE IS NOT A GOOD

 6          COMPARATOR TO THE ISSUES IN THIS CASE.  IN PARTICULAR,

 7          SCREENWISE COLLECTS A WHOLE HOST OF INFORMATION THAT IS JUST

 8          NOT RELEVANT HERE.

 9             IN ADDITION TO BROWSING HISTORY, WHICH WE'VE ALREADY

10          DISCUSSED, IT INVOLVES BATTERY STATUS AND CHARGER USE, AMOUNT

11          OF FREE AND USED LOCAL STORAGE SPACE, INFORMATION ABOUT OTHER

12          DEVICES THAT A USER CONNECTS WITH, INFORMATION COLLECTED BY

13          MOTION, ENVIRONMENT, OR POSITION SENSORS ON THEIR DEVICES, AND

14          AGAIN, THIS RELATES TO VARIOUS DEVICES THAT ARE NOT EVEN AT

15          ISSUE HERE, INCLUDING TELEVISIONS AND ROUTERS.

16             NOT ONLY IS THIS DATA VERY DIFFERENT, YOUR HONOR, IT IS

17          COLLECTED BY GOOGLE FOR A WHOLLY DIFFERENT SET OF PURPOSES, AND

18          THE DOCUMENTS CITED IN MS. WEAVER'S DECLARATION EVEN ESTABLISH

19          THAT.

20             THIS IS FOR PRODUCT IMPROVEMENT AND FEATURE DEVELOPMENT

21          ACROSS A VARIETY OF DIFFERENT PRODUCTS THAT HAVE NOTHING TO DO

22          WITH RTB, INCLUDING YOUTUBE, GOOGLE SEARCH, GOOGLE ASSISTANT.

23             THE AMOUNT OF VALUE THAT GOOGLE PLACES FOR ITS OWN

24          INTERNAL PURPOSES ON DIFFERENT DATA THAT IT COLLECTS IN ORDER

25          TO DEVELOP ITS OWN PRODUCTS AND ITS OWN TOOLS IS NOT A GOOD
```

1    COMPARATOR FOR THE VALUE THAT THIRD PARTIES MAY ASCRIBE TO VERY

2    DIFFERENT DATA THAT THEY RECEIVE THROUGH RTB.

3                  THE COURT:  WHAT ABOUT THE UNJUST -- I'M SORRY.  WHAT

4    ABOUT THE UNJUST ENRICHMENT THEORY?  SO IT'S NOT JUST ABOUT

5    WHAT THE RTB PARTICIPANTS VALUE AND WHAT THEY'RE WILLING TO PAY

6    FOR, BUT GOOGLE'S UNJUST ENRICHMENT THEORY.

7           SO I'M JUST RESPONDING TO YOUR REMARK THAT IT'S NOT A GOOD

8    COMPARATOR BECAUSE SCREENWISE IS ABOUT HOW GOOGLE IS ASSESSING

9    THE UTILITY OF, YOU KNOW, VARIOUS INFORMATION THAT IT COLLECTS

10   AND USING IT TO IMPROVE ITS PRODUCTS AND IT HAS VALUE TO GOOGLE

11   FOR THAT PURPOSE, AND THAT'S VERY DIFFERENT, YOU EXPLAINED,

12   FROM RTB PARTICIPANTS VALUING SOME DIFFERENT SET OF DATA.

13          BUT THE PLAINTIFFS HAVE AN UNJUST ENRICHMENT THEORY WHERE

14   THEY SAY GOOGLE HAS BEEN UNJUSTLY ENRICHED BY SHARING

15   INFORMATION THROUGH RTB.

16          SO I JUST WANT TO MAKE SURE I UNDERSTAND YOUR POSITION ON

17   THE UNJUST ENRICHMENT.  IT'S NOT JUST THE VALUE TO THE RTB

18   PARTICIPANTS.  THEY'RE MAKING A CLAIM THAT IT'S VALUABLE TO

19   GOOGLE.

20                  MS. REDDY:  CORRECT.

21          BUT IT'S COMPLETELY DIFFERENT DATA THAT'S AT ISSUE, YOUR

22   HONOR, AND IT'S -- THE DATA TO RTB BID REQUEST RECIPIENTS IS

23   USED FOR A COMPLETELY DIFFERENT PURPOSE.  IT'S FOR AD

24   TARGETING.

25          WE'RE TALKING ABOUT SCREENWISE TRENDS IS REALLY ABOUT

1      USAGE AND BEHAVIOR WITH DIFFERENT TYPES OF DEVICES THAT CONNECT

2      TO THE INTERNET, AND THEY INVOLVE DIFFERENT PRODUCTS WITH

3      GOOGLE.

4           SO IT'S REALLY AN APPLES AND ORANGES COMPARISON.

5                THE COURT:  UM-HUM.

6                MR. GUTKIN:  AND IF I MIGHT JUST RESPOND ON THAT

7      ALSO?

8                MS. WEAVER:  IF I MAY --

9                THE COURT:  HANG ON.

10          GO AHEAD, MR. GUTKIN.

11               MR. GUTKIN:  RESPONDING ON THE UNJUST ENRICHMENT, MY

12     UNDERSTANDING OF THE UNJUST ENRICHMENT THEORY IS THAT GOOGLE

13     HAS BEEN UNJUSTLY ENRICHED BY BEING PAID FOR SHARING

14     INFORMATION WITH RTB PARTICIPANTS.

15               THE COURT:  OKAY.

16               MR. GUTKIN:  SO IT'S NOT AS THOUGH THERE'S A CLAIM

17     THAT WE WERE UNJUSTLY ENRICHED FOR INFORMATION THAT WE RECEIVED

18     THROUGH SCREENWISE WHICH INVOLVED SOME PAYMENTS TO USERS.

19               THE COURT:  I SEE.  THANK YOU FOR CLARIFYING THAT.

20          ALL RIGHT.  ALL RIGHT.  LET ME HEAR FROM MS. WEAVER ON

21     YOUR OBSERVATIONS.

22               MS. REDDY:  CAN I REBUT ONE ADDITIONAL POINT BY

23     MS. WEAVER?

24          ON THE 94 DOCUMENTS, WE THINK THAT THAT IS A GROSS

25     OVERSIMPLIFICATION OF THE DISCOVERY THAT IS ACTUALLY AT ISSUE

1    HERE.  FIRST OF ALL, THE BURDEN NEEDS TO BE ASSESSED, BUT ALSO

2    THE RELEVANCE, AND PLAINTIFFS HAVE NOT MADE A THRESHOLD SHOWING

3    OF RELEVANCE FROM OUR PERSPECTIVE.

4         BUT SECOND OF ALL, 94 DOCUMENTS IS OBVIOUSLY NOT WHAT WE

5    WOULD PRODUCE IF THE COURT WERE TO INTRODUCE ALL OF THIS

6    ADDITIONAL DAMAGES RELATED DISCOVERY.

7         THE 94 DOCUMENTS ARE THE DOCUMENTS THAT MS. WEAVER WANTS

8    TO DEMONSTRATE PLAINTIFFS' DAMAGES THEORY.

9         BUT FOR ALL OF THE REASONS THAT I'VE JUST ARTICULATED,

10   SCREENWISE IS NOT A GOOD COMPARATOR TO RTB AND WE WOULD NEED TO

11   REVIEW CALHOUN DOCUMENTS AND VARIOUS OTHER DOCUMENTS RELATED TO

12   SCREENWISE IN ORDER TO REBUT THEIR ASSERTIONS REGARDING

13   SCREENWISE AND DEVELOP A DEFENSE TO SHOW THAT THIS IS NOT AN

14   APPROPRIATE COMPARATOR FOR PLAINTIFFS' DAMAGES FOR PURPOSES OF

15   RTB.

16            THE COURT:  UM-HUM.  BUT YOU'VE ALREADY EXPLAINED

17   THAT TO ME, WHY IT IS.

18            MS. REDDY:  CORRECT, USING SOME -- USING PUBLICLY

19   AVAILABLE DOCUMENTS.

20        BUT THERE ARE LOTS OF INTERNAL DOCUMENTS THAT WE'RE AWARE

21   OF THAT COULD ALSO BE USED TO REBUT MS. WEAVER'S ASSERTIONS.

22            THE COURT:  OKAY.  SO, MS. WEAVER, I'LL LET YOU --

23   I'M VERY INTERESTED IN THE QUESTION OF WHETHER IT'S CLOSE

24   ENOUGH, RIGHT?

25            MS. WEAVER:  YES, THANK YOU.

```
 1              SO WE TOOK A 30(B)(6) ON THIS TOPIC, WE GAVE THE EXCERPTS

 2     TO COUNSEL IN THIS ROOM.  THE QUESTION --

 3              MR. GUTKIN:  I WANT TO JUST MAKE SURE WE'RE NOT GOING

 4     TO DISCUSS CALHOUN MATERIAL.

 5              THE COURT:  HANG ON.

 6       I'M SORRY.  YOU MEAN A 30(B)(6) DEPOSITION IN THE CALHOUN

 7     CASE, NOT IN THIS CASE?

 8              MS. WEAVER:  YES.

 9              THE COURT:  OKAY.

10              MS. WEAVER:  ON THE TOPIC OF SCREENWISE, AND THE

11     QUESTION WAS ASKED, WHAT DATA IS SENT?

12          AND THERE WAS AN ANSWER GIVEN THAT IS ON ALL FOURS WITH

13     WHAT I'M TELLING YOU, WHICH IS THAT IT IS THE URL'S THAT PEOPLE

14     VISIT.

15              AND THEN WHAT YOU'RE HEARING --

16              THE COURT:  I'M SORRY, IN SCREENWISE?

17              MS. WEAVER:  YES.

18              THE COURT:  IN THE URL'S THAT PEOPLE VISIT.

19          I DON'T THINK THERE'S A DISAGREEMENT BETWEEN THE PARTIES.

20          HERE'S WHAT I UNDERSTAND, AND I'LL LET YOU CONTINUE, BUT

21     WHAT I UNDERSTAND IS MR. GUTKIN AND HIS COLLEAGUE, MS. REDDY,

22     SAY IN SCREENWISE, GOOGLE IS FOLLOWING PEOPLE AROUND, SEEING

23     WHERE THEY GO, WHAT THEY DO, HOW THEY INTERACT ON THE WEB, HOW

24     THEY INTERACT WITH DIFFERENT GOOGLE SERVICES, WHAT DEVICES THEY

25     USE.  PEOPLE SAY, YEAH, SURE, LOOK AT MY BEHAVIOR FOR WHATEVER
```

1        PURPOSE YOU'RE GOING TO DO IT FOR, IMPROVING PRODUCTS,

2        WHATEVER.

3             THEY SAY RTB IS WAY DIFFERENT.  THE ONLY OVERLAP IS THE

4        DISCRETE URL WHERE AN AD PLACEMENT IS GOING TO BE THAT A NAMED

5        PLAINTIFF OR MEMBER OF THE CLASS VISITS AND GETS SHOWN AN AD

6        THAT'S BID ON THROUGH THE RTB PROCESS.

7             DIFFERENT PURPOSE, DIFFERENT SCOPE, LOTS OF DIFFERENCES.

8             AND I CAN SEE THAT.  I CAN TOTALLY SEE THAT.

9             AND, YOU KNOW, PART OF ME, IN THINKING ABOUT THIS MATTER,

10       YOU KNOW, IF I -- IF WE LOOK AT THE SCREENWISE PROGRAM AS FOCUS

11       GROUP RESEARCH, WHICH IT REALLY IS, THEN THERE CAN BE A VERY

12       GOOD ARGUMENT MADE BY THE DEFENDANT THAT IT'S NOT A GOOD PROXY.

13            BUT IF IT WERE THE ONLY THING OUT THERE THAT GAVE YOU SOME

14       KIND OF PERSPECTIVE ON, FOR SOME DIFFERENT PURPOSE, SOME OF THE

15       SAME KIND OF INFORMATION IS VALUED IN THIS WAY, WELL, THEN

16       MAYBE, AND THEN YOU ALL CAN FIGHT ABOUT IT.

17            AND IT COULD BE THAT THE ARGUMENT IS SUCCESSFUL THAT IT'S

18       COMPLETELY APPLES TO ORANGES, TOTALLY UNRELIABLE AND NOT A GOOD

19       USE, YOUR DAMAGES EXPERT SHOULD BE EXCLUDED FROM TESTIFYING

20       ABOUT IT, WHATEVER.  I MEAN, WE COULD HAVE THAT ARGUMENT.

21            BUT WHAT I HEAR THE DEFENDANT SAYING IN ADDITION TO THAT

22       IS, WE HAVE BETTER INFORMATION THAT WE ARE -- WE HAVE GIVEN

23       YOU, OR IDENTIFIED FOR YOU, OR THAT YOU'VE IDENTIFIED FOR US.

24            SO WHY ARE YOU SO FOCUSSED -- IF THAT'S THE CASE, WHY ARE

25       YOU SO FOCUSSED ON SCREENWISE?

```
1              MS. WEAVER:  OKAY.  SO, PLEASE, I HEAR --

2              THE COURT:  THAT'S A LOT.

3              MS. WEAVER:  I HEAR WHAT YOU'RE SAYING.  I DON'T

4     AGREE.

5         SO WHAT YOU HAVE BEFORE YOU IS A FACTUAL DISPUTE WHERE

6     GOOGLE IS ARGUING FROM FACTS IT HAS NOT PRODUCED IN THIS CASE

7     AND CONTESTING OUR -- WE ARE GOING TO USE GOOGLE SCREENWISE AS

8     A PROXY USING PUBLIC DOCUMENTS THAT WE HAVE RIGHT NOW, AND THEN

9     I AM GOING TO ASK AT SOME POINT PROBABLY THAT, YOU KNOW,

10    DEPENDING WHERE WE ARE, IF THERE IS OTHER DISCOVERY DIRECTLY

11    DISCUSSING AND ANSWERING YOUR QUESTION, WHY WOULDN'T WE BE

12    LOOKING AT THAT?

13             THE COURT:  YES.

14             MS. WEAVER:  AND WHAT I'M TELLING YOU IS THAT WE

15    DON'T KNOW THAT THERE IS -- I HEARD MS. REDDY USE THE WORD

16    "IT," "WE ARE LOOKING FOR IT."  I DON'T KNOW WHAT THE "IT" IS.

17    THEY HAVEN'T IDENTIFIED ANYTHING THAT'S BETTER.

18        AND EVEN IF WE GOT THE "IT," A DAMAGES EXPERT IS GOING TO

19    GO LOOK AT MARKET PRICES AND SAY, HERE'S A MARKET PRICE AND

20    HERE'S A MARKET PRICE AND HERE'S A MARKET PRICE, AND I'M

21    LOOKING AT THEM AND THESE ARE ALL CROSS CHECKS.

22        AND THAT'S WHAT WE DID OUR OTHER CASE, BECAUSE IT'S NOT

23    JUST SCREENWISE.  THERE ARE PANELS THAT THEY'RE NOW RUNNING AS

24    WELL WHERE THEY'RE DOING THE SAME -- WHERE THEY'RE DOING THE AB

25    TESTING AND THEY'RE GETTING THE REVENUE VALUE, THEY'RE USING
```

1    PANELS TO DO THAT TESTING SOMETIMES NOW, AND THEY ARE PAYING

2    THOSE PEOPLE.

3             THE COURT:  UM-HUM.

4             MS. WEAVER:  SO IT IS OBVIOUSLY PLAINLY RELEVANT ON

5    ITS FACE WHAT GOOGLE IS PAYING USERS FOR THE DATA THAT THEY USE

6    FOR ADVERTISING.

7             AND LET ME SAY, YOU'RE RIGHT ABOUT SCREENWISE, AND THE

8    REASON THEY'RE DOING THE TESTING IS FOR AD REACH.  IT'S AD

9    REACH MEASUREMENT.

10            AND THAT'S OBVIOUSLY RELEVANT HERE TO WHAT IS HAPPENING IN

11   THE AUCTION BECAUSE WHAT'S HAPPENING IN THE AUCTION IS SELLING

12   ADS.

13            THE COURT:  SO RIGHT NOW YOU'RE PLANNING TO PROCEED

14   WITH YOUR DAMAGES MODEL BASED ON PUBLIC INFORMATION ABOUT

15   SCREENWISE.

16            MS. WEAVER:  YEAH.

17            THE COURT:  OKAY.  AND I'M NOT MAKING ANY RULINGS

18   ABOUT WHETHER YOU CAN OR CAN'T DO THAT FOR SURE.

19            MS. WEAVER:  RIGHT.

20            THE COURT:  SO RIGHT NOW ALL YOU'RE SEEKING, ALL

21   YOU'RE SEEKING IS THESE 94 DOCUMENTS THAT HAVE ALREADY BEEN

22   PRODUCED.

23            DO YOU NEED THOSE FOR CLASS CERT?

24            MS. WEAVER:  YEAH, AND THIS IS WHY.  I MEAN, LOOK,

25   ARE THEY GOING TO MAKE THE ARGUMENT THAT THEY'RE MAKING RIGHT

1    NOW THAT IT'S NOT RELEVANT?  THEY ARE.

2        IF THAT'S THE CASE, I WANT TO BE ABLE TO SHOW YOUR HONOR

3    OR JUDGE YGR DOCUMENTS THAT SAY ACTUALLY, NO, IT IS THE SAME,

4    AND WE CAN DO -- MAYBE OUR EXPERT DOES A BREAKOUT AND SAYS,

5    OKAY, SOME PROPORTION OF THIS IS ATTRIBUTED TO X, OR SOME

6    PROPORTION -- BUT I CAN'T DO IT WITHOUT THE EVIDENCE.  THEY

7    CAN'T MAKE ARGUMENTS FROM EVIDENCE AND THEN SAY WE DON'T GET

8    THE EVIDENCE.

9        THE COURT:  WHAT IS THE NATURE OF THE EVIDENCE THAT

10   YOU NEED?  IT SOUNDS TO ME LIKE YOU ALREADY KNOW WHAT

11   SCREENWISE IS AND DOES FROM PUBLIC SOURCES.

12       MS. WEAVER:  UH-HUH.

13       THE COURT:  SO WHAT IS THE INFORMATION THAT YOU DON'T

14   HAVE THAT YOU ACTUALLY NEED IN ORDER TO MAKE YOUR ARGUMENT OR

15   ANTICIPATE AN ARGUMENT THAT GOOGLE HAS?

16       AND I WANT YOU TO ANSWER THAT QUESTION WITHOUT REVEALING

17   THE CONTENT OF WHAT'S THE NATURE OF THE INFORMATION --

18       MS. WEAVER:  SURE.

19       THE COURT:  -- THAT YOU'RE LOOKING FOR.

20       MS. WEAVER:  THE AGREEMENTS, THE REVENUE -- SO THE

21   AGREEMENT THAT GOOGLE ENTERS INTO WITH SOMEBODY WHEN GOOGLE IS

22   PAYING THEM FOR THEIR DATA IN SCREENWISE; WHAT DATA IS ACTUALLY

23   COLLECTED; IF THEY'RE GOING TO MAKE AN ARGUMENT ABOUT IT'S NOT

24   THE SAME, I NEED TO KNOW HOW THEY'RE USING THAT DATA, WHAT

25   THEY'RE DOING WITH THE PROGRAM.

1      THESE ARE NOT VOLUMINOUS DOCUMENTS, BY THE WAY, TO ANSWER

2  THE QUESTION FROM YOUR HONOR.  IT'S PRETTY SIMPLE STUFF.

3      BUT LET ME JUST SAY, I THINK MS. REDDY IS RIGHT, THE 94

4  DOCUMENTS AREN'T REALLY EASY.  WE DO WANT DOCUMENTS RELATING TO

5  THE PANELS AS WELL, AND MAYBE THAT'S WHAT GOOGLE IS SAYING FOR

6  THE FIRST TIME TODAY IN THIS HEARING IT IS LOOKING FOR.

7      BUT WE STILL DON'T KNOW WHAT THE "IT" IS THAT THEY'RE

8  SAYING IS A BETTER PROXY.

9      I DO THINK, IF THEY'RE GOING TO MOUNT A CHALLENGE TO OUR

10  ASSESSMENTS OF USER VALUE BY SAYING WHAT GOOGLE IS PAYING OTHER

11  PANELISTS FOR THROUGH SCREENWISE OR THROUGH THEIR OTHER PANELS

12  IS NOT THE SAME AND SOMEHOW AN ECONOMIST SHOULD BE

13  DIFFERENTIATING ON OUR UNJUST ENRICHMENT CLAIM BETWEEN THEM,

14  THEN WE NEED DISCOVERY OF THAT DATA AND HOW IT'S USED AND

15  WHAT'S DIFFERENT BECAUSE WE'VE GOT TO BE ABLE TO RESPOND.

16      THE COURT:  BUT YOU ALREADY HAVE THE INFORMATION THAT

17  YOU -- YOU'VE ALREADY ARTICULATED AN AMOUNT THAT'S PAID.  YOU

18  SAY THAT'S PUBLIC, RIGHT, AN AMOUNT THAT'S PAID?

19      MS. WEAVER:  WE KNOW THAT IT'S $20 A PERSON.  I DON'T

20  KNOW WHAT GOOGLE HAS PAID USERS COLLECTIVELY OVER TIME.

21      THE COURT:  OKAY.  BUT WHY WOULD YOU NEED THAT?

22      MS. WEAVER:  BECAUSE IT'S -- IT GOES TO, I THINK,

23  WEIGHT, FOR EXAMPLE, LIKE THIS IS NOT INCONSEQUENTIAL, WE DID

24  THIS THING ONCE, IT'S NOT A GOOD MARKET VALUE, IT'S NOT A

25  PRICE, YOU KNOW, HOW LONG THE PROGRAM HAS BEEN GOING ON.

```
 1                THE COURT:  UM-HUM.

 2                MS. WEAVER:  ALL OF THOSE.

 3           AND SO, AGAIN, FOR SCREENWISE, I THINK WE'RE JUST SAYING,

 4      FOR NOW JUST GIVE US ACCESS TO THE 94, AND IF WE HAVE TO COME

 5      BACK TO YOUR HONOR AND SAY WE'RE MISSING SOME -- BUT I ALSO

 6      WANT TO BE CLEAR THAT WE ARE ALSO ASKING FOR THE SIMILAR KINDS

 7      OF INFORMATION ABOUT THESE PANELS THAT THEY DO FOR WHICH WE

 8      DON'T HAVE THE INFORMATION, WHICH IS --

 9                THE COURT:  RIGHT.  WELL, THAT'S NOT IN FRONT OF ME

10      RIGHT NOW, I DON'T THINK.  I MEAN, CATEGORY 6 IS DOCUMENTS

11      RELATED TO GOOGLE'S SCREENWISE PROGRAM.

12                MS. WEAVER:  OKAY.

13                THE COURT:  SO THAT'S WHAT I'M FOCUSSING ON.

14                MS. WEAVER:  OKAY.  THAT'S FINE.

15                THE COURT:  AND I DON'T --

16                MS. WEAVER:  LET ME JUST -- WELL, THE RFP'S

17      THEMSELVES REPRESENT THE PANELS.

18                THE COURT:  YES, BUT IT WAS REPRESENTED TO BE THIS

19      WAS THE NARROW DISPUTE.

20                MS. WEAVER:  I DON'T THINK IT COULD BE NARROWED.

21           THAT'S FINE, YOUR HONOR.

22                THE COURT:  OKAY.

23                MS. WEAVER:  YOU SEE THE POINT OF -- IF THAT'S THE

24      CASE AND IT'S THE 94 DOCUMENTS, I THINK THIS IS SOMETHING THAT

25      REALLY THE PARTIES SHOULD HAVE RESOLVED THROUGH NEGOTIATION.
```

```
1              THE COURT:  SO HERE'S A FINAL QUESTION FOR GOOGLE.

2         I'LL LET YOU RESPOND TO MS. WEAVER'S LAST COMMENTS AS

3    WELL, BUT I HEARD THEM SAY THEY'RE GOING TO BE PRESENTING THIS

4    AS A DAMAGES MODEL IN THE CLASS CERT MOTION.

5         IF YOU'RE GOING TO BE DEFENDING AGAINST THAT AND

6    CRITICIZING IT AND THERE ARE DOCUMENTS THAT HAVE NOT BEEN

7    PRODUCED THAT YOU'RE GOING TO RELY ON, SHOULDN'T THOSE BE

8    PRODUCED?

9              MR. GUTKIN:  WELL, YOUR HONOR, WE WOULDN'T RELY ON

10   ANY DOCUMENTS THAT ARE NOT PRODUCED.

11             THE COURT:  OKAY.

12             MR. GUTKIN:  BUT YOU'VE ASKED THE KEY QUESTION, WHICH

13   IS ABOUT THE DIFFERENCES BETWEEN THE VALUE OF WHAT'S GOING ON

14   WITH SCREENWISE AND WHAT'S AT ISSUE IN THIS CASE.

15        YOU CAN'T GET A MARKET PRICE FOR A TIRE OR FOR THE BOLTS

16   ON A TIRE BY LOOKING AT THE MARKET PRICES FOR CARS, ESPECIALLY

17   WHEN SCREENWISE IS -- THE VALUE HAS TO DO WITH ALL THE USES

18   THAT GOOGLE MIGHT MAKE INTERNALLY OF ALL OF THAT TOTALLY

19   DIFFERENT INFORMATION, AND RTB IS BEING SHARED WITH A DIFFERENT

20   GROUP OF PEOPLE -- RTB INFORMATION IS SHARED WITH A DIFFERENT

21   GROUP OF PEOPLE, DIFFERENT DATA FOR A DIFFERENT PURPOSE.

22        IT'S NOT GOING TO BE RELEVANT WHAT GOOGLE CAN DO WITH

23   SCREENWISE TO IMPROVE THE YOUTUBE PRODUCT, WHICH IS GOING TO BE

24   PART OF WHAT GOOGLE IS PAYING FOR, FOR HOW MUCH IT'S WORTH TO

25   RTB PARTICIPANTS.
```

1          AND JUST, AGAIN, IN THE 94 DOCUMENTS, WHAT WE'RE TALKING

2      ABOUT THERE WOULD BE BASICALLY THE CHERRY PICKED INFORMATION

3      THAT MS. -- THAT MS. WEAVER HAS DECIDED IS HELPFUL TO HER CASE.

4          BUT THEN, OF COURSE, WE WOULD -- IF THIS, IN OUR VIEW,

5      IRRELEVANT PROGRAM IS BROUGHT INTO THE SCOPE OF DISCOVERY, THEN

6      WE'RE GOING TO HAVE TO DEAL WITH IT.

7          BUT THE FACT THAT MS. WEAVER HAS USED SCREENWISE IN

8      ANOTHER ACTION THAT'S ACTUALLY ABOUT SOMETHING THAT'S MORE IN

9      LINE WITH SCREENWISE, DATA THAT GOOGLE COLLECTS AND THE VALUE

10     OF DATA THAT GOOGLE COLLECTS --

11              THE COURT:  UM-HUM.

12              MR. GUTKIN:  -- THE FACT THAT MS. WEAVER HAS A

13      DAMAGES MODEL BASED ON THAT IN A DIFFERENT CASE DOESN'T MAKE IT

14      RELEVANT HERE AND DOESN'T JUSTIFY BROADENING DISCOVERY HERE.

15          AND, AGAIN, WE HAVE TO KEEP RELITIGATING THIS FIGHT ABOUT

16      SCREENWISE WHICH, YOUR HONOR, WE HAD THOUGHT WAS RESOLVED.

17              THE COURT:  YEAH, I UNDERSTAND THAT POINT.

18          SO TWO THINGS:  I DIDN'T UNDERSTAND MS. WEAVER TO SAY THAT

19      SHE WAS CHERRY PICKING FROM CALHOUN, BUT THAT WHEN THE SEARCH

20      TERMS WERE RUN IN THAT PRODUCTION, WHAT GOOGLE HAD PRODUCED --

21      SO GOOGLE'S PRODUCTION -- HIT ON 94 DOCUMENTS.

22          SO THAT'S WHAT I UNDERSTOOD.  SHE CAN CORRECT ME IF I'M

23      WRONG.

24              MS. WEAVER:  THAT'S CORRECT.

25              THE COURT:  SO I'M NOT SURE ABOUT THE CHERRY PICKING

```
 1        POINT.

 2             BUT WHAT ABOUT THE OBSERVATION THAT THE PURPOSE OF

 3     SCREENWISE IS ACTUALLY NOT THAT DISSIMILAR?  IT'S FOR AD REACH

 4     PURPOSES?  I'M NOT EVEN SURE I KNOW WHAT "AD REACH" MEANS, SO

 5     SOMEONE CAN TELL ME.

 6             BUT IS THERE -- IS IT NOT A SIMILAR -- IS IT NOT A PURPOSE

 7     THAT IS ALIGNED WITH RTB?

 8               MS. REDDY:  IT'S NOT, YOUR HONOR, AND PUBLICLY

 9     AVAILABLE DOCUMENTS SHOW THAT THE PURPOSE OF SCREENWISE IS

10     FOR -- AND DOCUMENTS THAT MS. WEAVER HAS CITED THAT ARE

11     ATTACHED TO HER DECLARATION ESTABLISH THAT IT'S FOR PRODUCT

12     DEVELOPMENT AND FEATURE DEVELOPMENT IN VARIOUS OTHER PRODUCTS,

13     INCLUDING YOUTUBE AND GOOGLE ASSISTANT AND GOOGLE SEARCH.

14             IT'S NOT JUST AN ADVERTISING PRODUCT.

15             AND THAT'S NOTED, AGAIN, IN PUBLIC DOCUMENTS THAT

16     ESTABLISH THE DIFFERENT KINDS OF DATA ARE JUST WHOLLY DIVERGENT

17     FROM RTB, INCLUDING STORAGE AND BLUETOOTH CAPABILITY AND MOTION

18     SENSORS.

19             THESE ARE NOT COMPARABLE DATA SETS THAT WOULD HAVE

20     ANYTHING TO DO WITH AD TARGETING.

21               THE COURT:  UM-HUM.  OKAY.

22             WELL, I WILL THINK ABOUT THIS ONE.

23               MS. WEAVER:  IF I MAY, YOUR HONOR?

24             AGAIN, THE DEPOSITION EXCERPT JUST CONTRADICTS WHAT

25     MS. REDDY JUST SAID.  IT SAYS -- IT'S THE TESTIMONY OF A
```

1     30(B)(6) DEPONENT.

2              MR. GUTKIN:  IS THIS A DEPOSITION THAT'S MARKED

3     CONFIDENTIAL IN CALHOUN THAT YOU'RE REFERRING TO?

4              THE COURT:  SO WE MAY -- I MAY NEED TO HAVE YOU

5     CONFER AND I MAY BE ABLE TO DECIDE IT ON THE PAPERS.  I WILL

6     THINK ABOUT IT, BUT I DON'T THINK I NEED ANY MORE ARGUMENT.

7          OKAY.  SO I THINK THAT TAKES CARE OF ALL THE MATTERS THAT

8     ARE BRIEFED IN DOCKET 291, WHICH IS THE REDACTED VERSION OF

9     THIS DISPUTE, AND I HAVE EVERYTHING I NEED.

10         YOU WILL HAVE A TRANSCRIPT OF THIS PROCEEDING.

11         THANK YOU ALL VERY MUCH.  THIS MATTER IS CONCLUDED.

12              MR. GUTKIN:  THANK YOU, YOUR HONOR.

13              MS. WEAVER:  THANK YOU, YOUR HONOR.

14              MS. REDDY:  THANK YOU, YOUR HONOR.

15              MS. PRITZKER:  THANK YOU, YOUR HONOR.

16              THE CLERK:  COURT IS ADJOURNED.

17         (THE PROCEEDINGS WERE CONCLUDED AT 11:55 A.M.)

18

19

20

21

22

23

24

25

1

2

3                    CERTIFICATE OF REPORTER

4

5

6

7         I, THE UNDERSIGNED OFFICIAL COURT REPORTER OF THE UNITED

8    STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA,

9    280 SOUTH FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY

10   CERTIFY:

11        THAT THE FOREGOING TRANSCRIPT, CERTIFICATE INCLUSIVE, IS

12   A CORRECT TRANSCRIPT FROM THE RECORD OF PROCEEDINGS IN THE

13   ABOVE-ENTITLED MATTER.

14

15

16   _____

17   LEE-ANNE SHORTRIDGE, CSR, CRR
     CERTIFICATE NUMBER 9595

18        DATED:  SEPTEMBER 6, 2022

19

20

21

22

23

24

25