UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

IN RE GOOGLE RTB CONSUMER PRIVACY LITIGATION

Case No. 21-cv-02155-YGR (VKD)

**ORDER RE AUGUST 15, 2022 DISCOVERY DISPUTE RE DAMAGES-RELATED DISCOVERY**

Re: Dkt. Nos. 291, 298

United States District Court
Northern District of California

Plaintiffs and defendant Google LLC ("Google") ask the Court to resolve their dispute concerning Google's production of six categories of damages-related documents. Dkt. No. 291. The Court held a hearing on this dispute on August 30, 2022. Dkt. No. 325.

As explained below, the Court orders Google to produce documents responsive to some categories but not others, and as to some requests, the Court directs the parties to confer further. Additionally, the Court grants Google's motion to strike (Dkt. No. 298), but without prejudice to plaintiffs' submission of *Calhoun* discovery material pursuant to the Court's direction below.

## I. BACKGROUND

Plaintiffs say that for purposes of this dispute they seek six categories of documents, which collectively are responsive to RFPs 34(b)-(c), 41(a), (d), and (e), 46-49, 51, and 54-56. Dkt. No. 291 at 2. The six categories are:

1. Annual revenue derived from RTB in the U.S. (RFPs 34(b)–(c), 46, 47);
2. Costs attributable to RTB in the U.S. (RFPs 34(c), 47, 51);
3. Reports, analyses, or studies showing the impact on revenues of disabling third-party cookies and other user identifiers, and back-up data used or referenced in such reports, analyses, or studies (RFPs 47, 48, 51);

United States District Court
Northern District of California

4. Logs showing the revenue Google derived from the RTB ads it served on the Named Plaintiffs (this includes "backend" and "revenue" logs) (RFPs 41(a), (d), (e), 47, 55, 56);

5. The number of Google Account Holders in the U.S. during the Class Period (RFPs 55, 56); and

6. Documents related to Google's "Screenwise" program (RFPs 48, 49, 54).

*Id.* Plaintiffs complain that Google refuses to confer in good faith about these matters. *Id.* at 1. In addition to the joint discovery dispute submission, plaintiffs filed a separate declaration of counsel and several exhibits comprising discovery material obtained in the *Calhoun* action.[1] Dkt. No. 293.

Google objects that plaintiffs are attempting to re-litigate matters the Court resolved in earlier discovery orders at Dkt. Nos. 189 and 217, and that plaintiffs refuse to comply with the Court's directions regarding further steps the parties should take to resolve their disputes as to these same document requests. Dkt. No. 291 at 4-6. In addition, Google argues that most of the documents plaintiffs seek are not relevant to a claim or defense. *Id.* at 6-7. Google moves to strike plaintiffs' declaration of counsel and the attached *Calhoun*-related exhibits. Dkt. No. 298.

## II. DISCUSSION

The Court first addresses Google's argument that plaintiffs should not be permitted to re-litigate matters the Court has already decided in earlier discovery orders, and then considers the merits of the parties' disputes as to each of the six categories, as appropriate.

### A. Prior Discovery Orders

On March 15, 2022, the parties filed a discovery dispute letter that included discussion of many of the same requests for production at issue in the current submission. *See* Dkt. No. 171 at 3-4, 5-6. The Court issued an order on April 29, 2022 regarding this dispute. Dkt. No. 189. As to RFPs 46-49, 51, and 54-56, which are also at issue here, the Court ordered that "Google need not produce documents responsive to [these] RFPs at this time." *Id.* at 1. The Court explained its decision as follows:

> Plaintiffs may obtain discovery of information that will

[1] *Calhoun v. Google*, No. 20-cv-5146.

United States District Court
Northern District of California

> allow them to calculate or estimate the value of account holder information that Google allegedly shared with third parties without permission via the RTB process. However, RFPs 46-49, 51, and 54-56 are not limited to that objective, and plaintiffs provide an insufficient justification for the scope of these requests. With respect to RFPs 48, 49, and 54, plaintiffs do not explain how programs purportedly designed to pay Google users to share their web browsing history will reveal information relevant to the calculation of plaintiffs' damages in this case. With respect to RFPs 46, 47, 51, 55, and 56, it is not clear whether the documents plaintiffs seek concern valuations of some or all of the same information that Google allegedly shares with third parties via the RTB process.

*Id.* at 5. The Court ordered the parties to confer further as follows:

> The Court directs the parties to confer further regarding what information, if any, Google can provide that will permit plaintiffs to calculate or estimate their alleged damages. The parties should first endeavor to identify items of personal or sensitive information shared with third parties in the RTB process. Then, the parties should discuss whether Google assigns or estimates the value of some or all of those items of information for purposes of RTB. If Google does not assign or estimate value of those items of information for purposes of RTB, then the parties should discuss whether it does so for any other purpose and whether any of those other purposes are comparable to the purpose served by the RTB auction service. The parties should discuss any other matters that will facilitate resolution of this dispute. The parties must file a status report no later than May 13, 2022 advising the Court of the status of this dispute.

*Id.* After the parties jointly submitted an interim report, the Court asked for a further status report by May 27, 2022. Dkt. No. 202.

On May 27, 2022, the Court received separate status reports from plaintiffs and Google, as the parties apparently could not agree on the contents of a status report to be filed jointly. Dkt. Nos. 210, 212. Each side blamed the other for their collective inability to resolve their disputes or to engage in productive discussions.

On May 31, 2022, the Court held a hearing that included further discussion of RFPs 46-49, 51, and 54-56. In an effort to promote resolution of the parties' disputes as to these requests, the Court ordered them to confer further and provided specific guidance regarding how those discussions should proceed and the form in which the Court expected to receive the parties' positions if any disputes remained. *See* Dkt. No. 217. Google says that it attempted to comply with this guidance but that plaintiffs refused to do so, a point that plaintiffs do not dispute. *See*

Dkt. No. 291 at 4-5. Meanwhile, Google has not yet completed its production of responsive documents. *See id.* at 6.

Google is not correct to the extent it suggests the Court's prior orders finally resolved *all* matters concerning RFPs 46-49, 51, and 54-56; rather, the Court rejected plaintiffs' earlier efforts to obtain broad discovery that was not limited to "information that will allow them to calculate or estimate the value of account holder information that Google allegedly shared with third parties without permission via the RTB process." *See* Dkt. No. 189 at 5. The Court directed the parties to confer further about these matters. *See id.*; Dkt. No. 217. That said, the Court is not sympathetic to plaintiffs' complaints about delay and prejudice. *See* Dkt. No. 291 at 1. While Google has objected to most of plaintiffs' document requests and generally resisted discovery, plaintiffs have repeatedly undermined their cause by serving and insisting upon overbroad discovery requests and by failing to explain how the discovery they seek is relevant to a claim or defense and proportional to the needs of the case.

In these circumstances, the Court will consider the merits of the parties' current discovery dispute as it has been presented in the joint submission, taking into account the decisions the Court has already made about some aspects of these requests.

**B. Damages-Related Documents**

**1. Annual revenue derived from RTB in the U.S.**

Citing RFPs 34(b)-(c), 46, and 47, plaintiffs argue that Google should be required to produce documents sufficient to show the annual revenue Google receives from RTB in the United States.[2] Dkt. No. 291 at 2. Google argues that it should not be required to produce its RTB revenue because it is simply not plausible that the revenue Google receives for placement of an ad through an RTB auction is equivalent to the value of the personal information it allegedly shares

[2] Plaintiffs claim, incorrectly, that the Court has already concluded that this information is relevant. Dkt. No. 291 at 2 (citing hearing transcript at Dkt. No. 227 at 28:10-30:9; 45:1-15 and citing Dkt. No. 287 at 4-5 regarding RTB revenue specific to named plaintiffs whose information was shared through RTB). It should be apparent to experienced counsel that when a judge acknowledges a party's argument or theory of damages in a hearing, or encourages parties to reconsider their respective positions in a different context, this does not mean that the party has obtained a ruling in its favor.

with third parties in such an auction. *Id.* at 6.

The Court agrees with Google that RTB revenue is not a plausible measure of plaintiffs' damages or Google's unjust enrichment, as revenue necessarily captures value associated with the ad itself and perhaps with other items of value besides plaintiffs' personal information. However, the Court understands that Google has not yet identified and produced another data source that more accurately captures the value likely to be associated with the sharing of account holder personal information through RTB, although Google represents that efforts are underway to identify and produce such information. In these circumstances, information about the revenue derived from RTB may inform the parties' respective damages analyses, even if revenue is not a reliable measure of damages.

Accordingly, the Court orders Google to produce documents sufficient to show the revenue it receives on an annual basis from RTB auctions in the United States for the relevant period.

**2. Costs attributable to RTB in the U.S.**

Citing RFPs 34(c), 47, and 51, plaintiffs argue that Google should be required to produce documents sufficient to show any costs Google contends should be "offset from revenues to calculate unjust enrichment, such as consideration that Google pays to others to receive data that is subsequently shared through RTB." Dkt. No. 291 at 2 (emphasis omitted). Google points out that plaintiffs previously served RFP 53, seeking the same information, and that the Court definitively resolved that dispute. *Id.* at 6.

Google is correct that plaintiffs' present demand is the same as the one they pressed in an earlier discovery dispute regarding RFP 53. *See* Dkt. No. 171 at 4. The Court resolved that dispute by ordering Google to amend its answer to RFP 53 to make clear that it does not have any documents responsive to RFP 53. Dkt. No. 189 at 5-6. Plaintiffs do not contend that they have evidence Google is withholding documents within the scope of this category.

Accordingly, if Google does not have any documents showing the costs it contends should be "offset from revenues to calculate unjust enrichment" that have not yet been produced, then the Court agrees that there is no relief to order. If Google does have such documents, it must produce them.

**3. Impact on revenues of disabling third-party cookies, user identifiers**

Citing documents that have already been produced in this action, plaintiffs contend that "Google investigated the revenue impact when certain user identifying information was removed from bid requests." Dkt. No. 291 at 2. Plaintiffs argue that "[r]eports and underlying data concerning these experiments are needed by Plaintiffs' experts to calculate the portion of revenues attributable to personal information." *Id.* Plaintiffs claim these documents are responsive to RFPs 47, 48, and 51. *Id.* Google responds that it is "already searching for such documents." *Id.* at 6 (referencing sec. II.B.a. of Google's portion of the joint submission).

Despite this apparent agreement, the parties' arguments at the hearing reflect that plaintiffs seek a broader scope of production than Google plans to make. Plaintiffs seem to want Google to produce all documents, including the raw data, that reflect any assessment Google has made regarding how disabling a third-party cookie or user identifier in any context may impact Google's revenues. Google seems to want to limit its production to studies assessing the revenue impact of disabling a certain set of data signals in RTB and without the raw data. Dkt. No. 325 at 24:16-42:20.

The Court resolves this dispute as follows: Google must produce all reports, analyses, and studies showing the impact on Google's RTB revenues of disabling third-party cookies and other user identifiers.

Google need not produce the "underlying data" for these reports, analyses, and studies, as none of the document requests on which plaintiffs rely call for production of this information, and the Court is not persuaded that production of "underlying data" is proportional to the needs of the case.

Google also need not produce reports, analyses, and studies showing the impact on Google's revenues of disabling third-party cookies and other user identifiers with respect to other, non-RTB products or services. Plaintiffs' portion of the joint submission, which specifically references studies relating to "bid requests," does not discuss or support their demand for discovery about other Google products and services.

United States District Court
Northern District of California

**4. Revenue derived from RTB ads served on named plaintiffs**

Citing RFPs 41(a), (d), (e), 47, 55, and 56, plaintiffs argue that Google should be required to produce transaction-specific logs showing, for each named plaintiff, the personal information provided to RTB participants, the winning bid, and the amount Google received from the winning bidder. Dkt. No. 291 at 3. At the hearing, plaintiffs claim to have identified twelve logs from materials produced in the *Calhoun* action that contain the information they seek. Dkt. No. 325 at 50:14-15. Google objects that to the extent plaintiffs demand production of all "back-end" logs, the Court has already denied their prior efforts to obtain such discovery. Dkt. No. 291 at 6. Google further objects that "event-level data reflecting the total auction revenue for every user is vastly overbroad, and not relevant to quantifying the value of data shared with third parties." *Id.* (emphasis omitted). Finally, Google objects that to the extent plaintiffs seek to limit their demand to transaction-level information associated with the named plaintiffs, no RFPs seek that information and, in any event, "individual ad revenue is not tied to the value of personal or sensitive information alleged shared with third parties via RTB." *Id.* at 6-7.

In connection with the parties' earlier dispute regarding named plaintiffs' data, the Court ordered as follows:

> The Court expects Google to produce documents sufficient to show, for each named plaintiff, what information specific to that plaintiff was shared with an RTB participant and the details of such sharing. If Google discloses information that allows an RTB participant to identify an account holder based on information the *participant* may have about that account holder, Google must produce records showing the disclosure of that information as well. Otherwise, plaintiffs have not shown they are entitled to discovery of all information Google maintains about an account holder solely based on Google's internal linking of information with an account holder.
>
> Regarding the sources of relevant information, plaintiffs claim that Google maintains records by account holder and by auction reflecting what information was disclosed to RTB participants, and they refer to information available in the *Calhoun* action. The parties should discuss the bases for plaintiffs' claim regarding the records available from Google, including, if appropriate, using the procedures set forth in Dkt. No. 313. Any remaining dispute regarding this topic may be submitted to the Court for decision.

Dkt. No. 314 at 4-5 (internal citation omitted). The Court will not revisit that order in the context

United States District Court
Northern District of California

of plaintiffs' present demand for production of named plaintiffs' "personal information provided to bidders." *See* Dkt. No. 291 at 3.

With respect to plaintiffs' demand for documents sufficient to show, for each named plaintiff, the U.S. revenues Google received for ads displayed to the named plaintiff as a result of an RTB auction, the Court agrees that Google should produce this information for the reasons explained above with respect to the first of the six categories in dispute. The question is whether Google should be required to produce *transaction-level* revenue information for each named plaintiff. If transaction-level U.S. revenue associated with RTB for each named plaintiff can be extracted from a log or logs without undue burden, the Court will require Google to produce it. If plaintiffs believe that discovery obtained in *Calhoun* supports their contention that the information can be extracted without undue burden, and if Google disagrees, the parties must confer further using the procedures set forth in Dkt. No. 313, and may submit any remaining dispute on this point to the Court for decision.

**5. Number of Google account holders in the U.S. during class period**

Citing RFPs 55 and 56, plaintiffs assert, without elaboration, that "the number of Google Account Holders, is a critical input for Plaintiffs' experts to calculate Class-wide damages by extrapolation as well as *pro rata* apportionment." Dkt. No. 291 at 3. Google objects that plaintiffs "have not propounded an RFP requesting this information and it is overbroad because it is not even limited to Google Account Holders who were subject to an RTB callout." *Id.* at 7.

The Court agrees with Google. RFP 55 asks for "[d]ocuments related to surveys performed or commissioned by Google regarding valuation of Account Holder information," and RFP 56 asks for "all Documents provided to Your auditors to support estimates of fair value relating to Account Holders' Information." Dkt. No. 291-1. Neither RFP asks Google to produce documents sufficient to show the number of Google account holders in the United States during the class period.[3] Moreover, even if those requests did encompass such information, plaintiffs do

[3] Plaintiffs attempted to argue during the hearing that other document requests not cited in their submission call for the number of account holders. Dkt. No. 325 at 57:4-15. This argument is improper. The Court's expedited discovery procedures require the parties to confer about their dispute in advance, attempt to resolve it, and describe their positions in writing *before* filing their

United States District Court
Northern District of California

not explain why they need the total number of all U.S. account holders, rather than the number of U.S. account holders whose personal information was shared with third parties participating in an RTB auction during the class period.

For these reasons, the Court denies plaintiffs' request for an order requiring Google to produce documents sufficient to show the total number of Google account holders in the U.S. during the class period.

**6. Documents related to Google's "Screenwise" program**

Citing RFPs 48, 49, and 54, plaintiffs argue that the Court should order Google to produce documents related to Google's Screenwise program. Plaintiffs say that "Screenwise is a program through which Google pays users for their online data, including browsing history attached to identifiers." Dkt. No. 291 at 3 (emphasis omitted). They argue that the amount Google pays users for this information is evidence of the "market rate" for the same information shared with third parties through RTB. *Id.* Plaintiffs say that, regardless of the outcome of this discovery dispute, their experts are prepared to use publicly available information they have already obtained about the Screenwise program to calculate damages. *Id.* It is not clear what additional information, if any, plaintiffs require from Google in order to calculate damages. However, during the hearing, plaintiffs limited their demand to the 94 documents relating to the Screenwise program that Google has already produced in the *Calhoun* action, noting that such a request would minimize Google's burden with respect to this category of documents. Dkt. No. 325 at 72:13-14, 88:1-2.

Google objects that plaintiffs' present demand for documents about the Screenwise program is "an unjustifiable, untimely motion for reconsideration" of the Court's prior order. Dkt. No. 291. at 7. Google further objects that the documents are not relevant. It describes the Screenwise program as "a consumer research project that collects browsing history related to a broad set of products," and that "whatever value Google places on such data for its own purposes is not probative of the value RTB bid request recipients would place on the different data they

---

joint submission with the Court. Plaintiffs did not identify any other document requests to Google in support of their demand for this information, even though Google expressly objected to production on the ground that plaintiffs had not served a document request asking for this information.

received." Dkt. No. 291 at 7.

As to Google's initial objection, Google is correct that the Court earlier found that "plaintiffs do not explain how programs purportedly designed to pay Google users to share their web browsing history will reveal information relevant to the calculation of plaintiffs' damages in this case." Dkt. No. 189 at 5. However, the Court directed the parties to confer further about RFPs 48, 49, and 54 and did not completely foreclose any future discussion about the Screenwise program. Therefore, the Court will consider whether documents related to the Screenwise program are relevant to plaintiffs' damages and, if so, whether plaintiffs should be allowed to rely on the Screenwise documents produced in *Calhoun*.

The parties agree that in exchange for allowing Google to track their browsing history, users participating in the Screenwise program are paid a fee. Google uses the information gleaned from the browsing history to develop its own products and services. According to plaintiffs, this development includes features having to do with advertising. Dkt. No. 325 at 86:4-12. Conversely, the parties appear to agree that Google does *not* disclose similarly comprehensive browsing history to third party participants in an RTB auction. Rather, Google says that the URL for the web page where an ad will be placed is disclosed to such participants—*i.e.* a browsing history consisting of the single web page that an account holder visits. The winning bidder pays Google.

The circumstances in which Google pays users a fee for participating in the Screenwise program differ significantly from the circumstances underlying plaintiffs' claims. The Court is skeptical of plaintiffs' thesis that the Screenwise program establishes a "market rate" for the value of information shared through RTB for several reasons: (i) the information shared is different, (ii) there are different "market" participants, (iii) the information is shared for different purposes, and (iv) payments are made for different purposes. However, there appears to be no dispute that some "browsing history" is shared with third parties in an RTB auction, and therefore, there is some overlap in the kinds of information that is potentially valued by the participants in Screenwise and in RTB. It is possible plaintiffs may be able to construct a reliable damages model using, at least in part, information from the Screenwise program. At the very least, the Court is not prepared to

conclude that discovery relating to the Screenwise program is wholly irrelevant.

As plaintiffs have limited their demand to 94 documents relating to Screenwise produced in the *Calhoun* action, the Court is inclined to allow plaintiffs to use those documents in this action without requiring Google to search for or produce any other Screenwise documents. However, because the Court did not expect Google to review the *Calhoun* material in advance of this order, if Google objects to the use of some of the *Calhoun* Screenwise documents in this action, the Court will require the parties to confer using the procedures set forth in Dkt. No. 313 before requiring Google to produce any objected-to Screenwise documents. The parties may submit any remaining dispute on this point to the Court for decision.

**C. Weaver Declaration and *Calhoun*-Related Exhibits**

Without seeking leave in advance, plaintiffs filed a separate declaration of counsel that included additional argument and attached or cited many documents from discovery obtained in the *Calhoun* action, contrary to the expedited procedures this Court has established for the resolution of discovery disputes. Dkt. No. 293. The Court has since established a procedure that must be used if plaintiffs believe materials that are subject to the protective order in *Calhoun* bear on a discovery dispute. *See* Dkt. No. 313.

Accordingly, the Court strikes plaintiffs' separate submission for failure to comply with the Court's discovery procedures, without prejudice to plaintiffs' submission of *Calhoun* discovery material pursuant to the Court's direction above and in compliance with Dkt. No. 313.

**IT IS SO ORDERED.**

Dated: September 6, 2022

Virginia K. DeMarchi

VIRGINIA K. DEMARCHI
United States Magistrate Judge

United States District Court
Northern District of California