October 18, 2022

Magistrate Virginia K. DeMarchi
Courtroom 2 – 5th Floor
San Jose Courthouse
280 South 1st Street
San Jose, CA 95113

Re:   *In re Google RTB Consumer Privacy Litig.*, No. 4:21-cv-02155-YGR-VKD

Dear Magistrate Judge DeMarchi,

Plaintiffs and Defendant Google LLC ("Google") submit this joint letter brief regarding Google's Responses and Objections ("R&O") to Plaintiffs' Fifth Set of Requests for Production of Documents, attached hereto as Exhibit A. The Parties met and conferred, most recently on October 7, 2022, and are at an impasse regarding Requests 91-97 and 99-102 (the "RFPs").

I.   **PLAINTIFFS' POSITION**

The RFPs seek basic information regarding how Google RTB functions and, in particular, the rules governing Google's automated selection of data to be transmitted to RTB participants; *i.e.*, sold and/or shared. This information goes to the crux of Plaintiffs' claims that Google RTB uses and sells Account Holder information. Given the astronomical quantity of data that pass through the Google RTB system on a daily basis, this is the most economical way of getting at how RTB works and what data is selected for use and transmission.

Google admits that these requests are relevant; but refuses to produce any documents in response to RFPs 91-96 and 101. Google's primary objection, that the requests are "duplicative" of other requests, lacks merit. Google has not previously produced documents responsive to these RFPs which seek specific information regarding RTB's automated data selection process. During the meet and confers, Plaintiffs asked Google to provide Bates numbers of any responsive documents. After taking a week to consider this request, Google did not provide any Bates numbers. Documents produced to date include generalized schematics of the RTB system or externally facing documents, for example, for developers to interface with the auction. Conspicuously lacking are documents showing the automated internal functioning of the RTB system.

Google's objection that these requests impermissibly seek information regarding its "maintenance" and "storage" of user data (R&O 91-94) is also wrong. These requests seek information regarding the automated decision-making function of the RTB system that uses and selects Account Holder data for delivery. The RFPs define "Decision-Making Process" as "*any system, including, but not limited to, any software, program, application, algorithm, or artificial intelligence (or any collection of the same) that operates to programmatically select data that is distributed in a Google RTB auction*." The limited set of rules governing this automated decision-making process defines the constant flow of data through the RTB system and should be produced.

Notably, in response to RFPs 97-100, Google has no objection to producing information concerning the criteria used by RTB to filter or restrict the data used in bid requests. However, that response omits the criteria used to select data that is not filtered or restricted which are the basis of Plaintiffs' claims—in other words, Google is cherry-picking categories of responsive documents that may aid in its defense and excluding categories of responsive documents that go to the heart of Plaintiffs' claims. That is an abuse of the discovery process. The Court should reject Google's attempt to limit the scope of RFP 97, (which seeks "*the criteria used when selecting Data to be distributed to Google RTB Participants*"), in this way.

RFP 95 seeks "*Documents sufficient to show the various data sources within Google from which Data is selected for distribution by the Decision-Making Process which selects Data to be distributed to Google RTB Participants in a Bid Request.*" Pointing to Dkt. 184, Google argues that this Court already determined that this information is not relevant. That is not correct. The referenced portion of Dkt. 184 only held that "discovery of Google's *analysis and decision-making regarding what it tells others about collection and storage* of user information is not relevant to the claims and defenses in this case . . . ." *Id.* at 7-8 (emphasis added). That is a different issue. Contrary to Google's assertion, in that same Order, this Court specifically recognized that: "The claims and defenses in this case may require discovery of . . . what information about account holders' is collected by Google and potentially available to third parties through the RTB auction process. . . ." *Id.* at 4. That is precisely what Plaintiffs seek here. Information about the specific data sources accessed is an integral and necessary piece of the RTB puzzle; without it, it is not possible to understand how Google RTB selects the Account Holder information it distributes to third parties.

RFP 96 seeks "*Documents sufficient to show the architecture of the software program(s) which comprise the Decision Making Process by which Data is selected to be sent to Google RTB Participants in a Bid Request.*" Google objects to the extent RFP 96 seeks "source code, algorithms, or other highly confidential and sensitive" documents and argues the information is "proprietary." However, the Stipulated Protective Order's "Highly Confidential—Attorneys Eyes Only" designation for "extremely sensitive" information provides adequate protection. *See* Dkt. No. 59 at ¶2.8; *see also Autodesk, Inc. v. ZWCAD Software Co. Ltd.*, 2015 WL 2454003, at \*2 (N.D. Cal., 2015) (protective order adequate); *Calendar Research LLC v. StubHub, Inc.*, 2017 WL 10378338, at \*11 (C.D. Cal. 2017) (same). Google has made no showing in support of its suggestion that the information may be a trade secret, and in any event, where, as here, the requesting party is not a competitor, "with a stipulated protective order in place, there is virtually no risk that defendants' 'secrets' will be disclosed." *Trevino v. ACB Am., Inc.,* 232 F.R.D. 612, 617 (N.D. Cal. 2006). Additionally, because this RFP only seeks documents "sufficient to show," Google has discretion as to how best to provide the requested information.

Google also attempts to limit the scope of its response to RFP 99, which seeks "*All Documents and Communications Concerning any restrictions used to exclude Data distributed to Google RTB Participants in a Bid Request . . . .*" During the meet and confer, Plaintiffs offered to narrow the request for "All" documents to a limited set of custodians and shared repositories. Google declined. Instead, Google will agree to produce only a minimal set of documents "sufficient to show the filters or restrictions" and refuses to produce any responsive communications. That is insufficient. The extent to which Google restricts the flow of personal

information sent through the RTB system goes to the heart of this case. At trial, the nature, scope and effectiveness of these filters will be the subject of substantial testimony which will certainly extend beyond the mere fact of a particular restriction's existence. Google cannot arbitrarily limit its search for and production of responsive documents in this way.[1]

RFP 102 seeks "*Documents sufficient to Identify the Employees who are (or were) primarily responsible for designing the Decision-Making Process by which Data is selected to be distributed to Google RTB Participants in a Bid Request*." Google objects that the RFP is duplicative of Interrogatory No. 4. However, Google's list of 6 individuals in response to Interrogatory No. 4's broad request for "all officers, employees and agents responsible for the development, creation, and management of Google RTB" is clearly deficient and RFP 102 makes a different and much more specific request: the identity of those "*primarily responsible for designing the Decision-Making Process*." Plaintiffs are entitled to know who these witnesses are.[2] *Cf.*, *Jones v. McElroy*, 2016 WL 8730730, at *5 (E.D. Cal. 2016) (compelling RFA response where "plaintiff's request [was] more specific than" prior admission). Google's reference to a spreadsheet that lists some programmers also fails to identify any of those who were "*primarily responsible for designing the Decision-Making Process*."

RFP 100 seeks "*Documents sufficient to show how user opt-out signals and/or user consent signals impact the Google RTB Decision-Making Process*" and lists seven examples of signals. In its response, Google agreed to produce documents concerning "*opt-out signals*" but did not agree to produce documents concerning "*consent signals*" and did not address any of the signals identified in the RFP. During the meet and confer Google indicated that it probably would produce responsive documents; but refused to amend its response or to otherwise commit to that production in writing. Google should produce all responsive documents and, in this instance and in all future meet and confers, Google should be required to put its agreement to amend a response in writing.

The Court should compel production of documents responsive to RFPs 91-97 and 99-102.

## II.   GOOGLE'S POSITION

Plaintiffs' demands involve documents that Google has already searched for and produced in response to prior requests. Plaintiffs also seek categories of documents the Court already ruled are irrelevant. Plaintiffs' demand that Google revisit requests it has already addressed is unjustified. Moreover their continued insistence on relitigating issues this Court has already resolved is wasteful and improper.

---

[1] RFP 99 also seeks documents concerning *"restrictions that were discussed or proposed but not implemented."* Plaintiffs withdraw this as a separate request. However, to the extent such discussions appear in otherwise responsive documents, they should be produced.

[2] Plaintiffs offered to accept a written answer instead of documents. Google declined the offer.

**RFPs 91-94, 97 and 101 are Fully Duplicative of RFP 22**

RFPs 91-94, 97 and 101 each seek information regarding Google's "Decision-Making Process" for the selection of data to be "distributed in a Google RTB auction." This information is wholly duplicative of what was already addressed in RFP 22 in Plaintiffs' First Set of Requests for Production, which broadly requested "[d]ocuments and communications regarding Google's use, disclosure, or sale of Account Holder information through Google Real Time Bidding," including documents related to:

- "How Google Real Time Bidding functioned and functions";
- "How Bid Requests are constructed";
- "The factors, analyses, or other considerations used by Google to determine what information should be included within a Bid Request"; and
- "How responsive bids are constructed, received and accepted."

Because RFPs 91-94, 97 and 101 are redundant of RFP 22, Plaintiffs' current demands should be rejected as unduly burdensome and disproportionate. *See Swanson v. ALZA Corp.*, 2013 WL 5538908, at *5 (N.D. Cal. Oct. 7, 2013) (rejecting demand for additional searches "because they [we]re likely to result in duplicative documents, thereby rendering any benefit outweighed by the burden of production."); *Vietnam Veterans of Am. v. C.I.A.*, 2011 WL 5600515, at *2 (N.D. Cal. Nov. 17, 2011) (denying motion to compel where "Plaintiffs have not demonstrated that there is potentially relevant discovery responsive to their document requests which Defendants have not or will not produce . . . .").

Google agreed to produce, and has produced, "responsive, non-privileged documents sufficient to show" the above categories of information with respect to third-party RTB participants. The Parties conferred extensively about the search terms, custodians, and non-custodial sources to be included in this process, and they briefed their disputes. (*See, e.g.*, ECF Nos. 157, 188.) Google then searched for responsive documents in the manner agreed by the Parties and ordered by the Court, including by running searches specifically designed to identify documents regarding the selection of data shared in the RTB process. The custodians searched in this process included the current/former lead decisionmakers for the RTB team, the current/former lead engineers, and lead product managers. Google also produced documents from non-custodial sources. In short, Google has already conducted a reasonably diligent search and production that encompasses the subjects of RFPs 91-94, 97 and 101.

Further, Plaintiffs offer no valid basis to compel Google to take additional, redundant efforts to respond to these RFPs. For example, Plaintiffs claim that Google produced only "generalized schematics of the RTB system or externally facing documents." This complaint is baseless. The searches to which the Parties agreed, and which Google has implemented, were in no way limited to those categories. Plaintiffs' mere speculation that Google may have additional responsive documents cannot justify the burden of its duplicative requests. *See Swanson*, 2013 WL 5538908, at *3 ("[A] party's suspicion that all responsive documents have not been produced, without more, is generally insufficient to warrant an order compelling production.")

Additionally, Plaintiffs' demand that Google provide Bates numbers of documents responsive to specific RFPs is an improper attempt to convert their RFPs into contention interrogatories and also violates FRCP 34, which expressly permits parties *not* to "organize and label" documents "to correspond to the categories in the request." *See Rutherford v. Paloverde Health Care Dist.*, 2014 U.S. Dist. LEXIS 197183, at *11-13 (C.D. Cal. Apr. 25, 2014) (applying FRCP 34 and denying a motion seeking to compel a party "to identify by Bates number which documents are responsive to [particular] requests"). Plaintiffs cite no contrary authority to support the obligation they seek to impose on Google.

Regarding RFP 97, Plaintiffs claim Google is cherry-picking what it deems discoverable because (1) Google agreed to produce "documents sufficient to show the filters or restrictions that Google actually uses to exclude user-specific data from bid requests to third parties via RTB" but (2) objected to the redundant request for documents showing "the criteria used when selecting Data to be distributed to Google RTB Participants." Again, Google already searched for and produced documents sufficient to show this latter category, and it appropriately limited its response to non-redundant categories of documents.

**RFPs 95, 96, and 99 Seek Documents Irrelevant to Plaintiffs' Claims**

RFP 95 seeks discovery on "various data sources within Google from which Data is selected." This is a blatant attempt to obtain discovery the Court has repeatedly found to be irrelevant. (*See* ECF No. 184 at 7-8 ("Google need not produce responsive documents relating to such collection and storage."); June 7, 2022 Tr. at 22.12-17 ("I don't think figuring out where everything is stored and how it gets there, how it's collected in the first place is relevant.").) Plaintiffs' attempt to relitigate this issue is improper, and Plaintiffs should be directed to cease continued efforts to circumvent the Court's prior rulings.

RFP 96 seeks "documents sufficient to show the architecture" of Google's proprietary "software program(s)" used in certain aspects of RTB. Plaintiffs cannot show, as they must, that this highly sensitive information is necessary to resolving their claims. *See In re Apple and AT & TM Antitrust Litig.*, 2010 WL 1240295, at *2 (N.D. Cal. Mar. 26, 2010) (to obtain discovery of computer code, which is a trade secret, "plaintiffs have the burden to establish that it is both relevant and necessary"). The existence of a protective order does not alleviate Plaintiffs' burden on this issue. Here, unlike in the cases Plaintiffs cite involving claims where source code was directly at issue, Plaintiffs do not need access to Google's software "architecture" to understand how data is transmitted through RTB. Also unlike those cases, the protective order in this case does not contain provisions specifically protecting source code.

In response to RFP 99, Google agreed to produce documents sufficient to show "the filters or restrictions that Google actually uses to exclude user-specific data from bid requests to third parties via RTB . . . ." This proposed production will show "[t]he extent to which Google restricts the flow of personal information" through RTB, which is the information Plaintiffs claim to seek. Plaintiffs nonetheless complain that this response is insufficient, and they demand that Google produce "[a]ll Documents and Communications" on the subject matters described in the RFP. Even if the information sought went "to the heart of this case" (it does not), Plaintiffs cannot justify

- 5 -

their incredibly overbroad request, which is the sort courts have repeatedly rejected as unduly burdensome. *See, e.g.*, *Nakashima v. Canon Sols. Am., Inc.*, 2016 WL 11745087, at *4–5 (C.D. Cal. Oct. 26, 2016) (finding requests seeking "all" or "any" documents or seeking documents "without limitation," were "unduly burdensome" and limiting production to documents "sufficient to show").

### Google Has Already Agreed to Produce the Documents Plaintiffs Seek with RFP 100

RFP 100 seeks "[d]ocuments sufficient to show how user opt-out signals and/or user consent signals impact the Google RTB Decision-Making Process . . . ." Google has agreed to produce documents sufficient to show "how the data shared with third party bid request recipients via RTB is impacted when a user opts out of certain signals." Google explained during the Parties' meet and confer that it did not distinguish between "opt-out signals" and "user consent signals" (which Plaintiffs themselves treat interchangeably) in its search for responsive documents. It also confirmed that it would produce documents related to the specific signals identified in Plaintiffs' request to the extent they impact "the data shared with third party bid request recipients via RTB." Plaintiffs do not explain how Google's proposed production is deficient. Google is not required to amend its response, which already makes clear that Google will produce responsive documents.

### RFP 102 is Duplicative of RFP 19 and Interrogatory No. 4

RFP 102 seeks information on employees responsible for designing the process by which data is selected for distribution to RTB participants. This is duplicative of RFP 19 and Interrogatory No. 4. Google has already produced "responsive, non-privileged documents sufficient to identify Google personnel with current responsibilities relating to the strategic decision-making regarding the operation of RTB, including the data that is shared with third parties" in response to RFP 19. Further, Google has already identified, in response to Interrogatory No. 4, "the identity and roles of Google personnel with current responsibilities relating to … the data that is allegedly shared with any third-party bid request recipient." Plaintiffs do not explain how these responses are deficient. Moreover, Plaintiffs conceded in the Parties' meet and confer that RFP 102 seeks a duplicative subset of previously requested documents. Google has already produced the documents Plaintiffs seek, and any further collection or production of documents in response to RFP 102 is unwarranted. *See Swanson*, 2013 WL 5538908, at *5.

### III.   NECESSITY OF A HEARING

#### A.   Plaintiffs' Position

Plaintiffs request a hearing as the documents at issue are central to the claims and defenses in this case.

#### B.   Google's Position

Google believes the Court would benefit from a hearing on this dispute.

### IV. DISCOVERY CUT-OFFS

The fact discovery cut-off is July 14, 2023, and the close of expert discovery is October 13, 2023.

### V. COMPLIANCE WITH MEET-AND-CONFER REQUIREMENT

In compliance with the Court's meet-and-confer requirements, the Parties met and conferred several times via e-mail and Zoom. The final lead counsel meet and confer was held on October 7, 2022, via Zoom. On Plaintiffs' side, Elizabeth C. Pritzker, Brian Danitz, Karin Swope and An Truong attended. On Google's side, Whitty Somvichian and Laura Elliott attended.

**PRITZKER LEVINE LLP**

By: */s/ Elizabeth C. Pritzker*
Elizabeth C. Pritzker (SBN 146267)
Jonathan K. Levine (SBN. 220289)
Bethany Caracuzzo (SBN 190687)
1900 Powell Street, Suite 450
Emeryville, CA 4608
Tel.: (415) 692-0772
Fax: (415) 366-6110
ecp@pritzkerlevine.com
jkl@pritzkerlevine.com
bc@pritzkerlevine.com

**COTCHETT, PITRE & McCARTHY LLP**

By: */s/ Brian Danitz*
Joseph W. Cotchett (SBN 36324)
Nanci E. Nishimura (SBN 152621)
Brian Danitz (SBN 247403)
Karin B. Swope (admitted *pro hac vice*)
840 Malcolm Road
Burlingame, CA 94010
Tel.: (650) 697-6000
Fax: (650) 697-0577
nnishimura@cpmlegal.com
bdanitz@cpmlegal.com
kswope@cpmlegal.com

**BLEICHMAR FONTI & AULD LLP**

By: */s/ Lesley Weaver*
Lesley Weaver (SBN 191305)
Matthew Melamed (SBN 260272)

**COOLEY LLP**

By: */s/ Jeffrey M. Gutkin*
Michael G. Rhodes
Jeffrey M. Gutkin
Aarti G. Reddy
Whitty Somvichian
Laura M. Elliott
Kelsey R. Spector
Colin S. Scott
3 Embarcadero Center, 20th floor
San Francisco, CA 94111-4004
Tel.: 415-693-2000
Fax: 415-693-2222
rhodesmg@cooley.com
jgutkin@cooley.com
areddy@cooley.com
wsomvichian@cooley.com
lelliott@cooley.com
kspector@cooley.com
cscott@cooley.com

Robby L.R. Saldaña
1299 Pennsylvania Avenue NW
Suite 700
Washington, DC 20004-2400
Tel.: 202-776-2109
Fax: 202-842-7899
rsaldana@cooley.com

*Attorneys for Defendant GOOGLE LLC*

Anne K. Davis (SBN 267909)
Joshua D. Samra (SBN 313050)
555 12th Street, Suite 1600
Oakland, CA 94607
Tel.: (415) 445-4003
Fax: (415) 445-4020
lweaver@bfalaw.com
mmelamed@bfaw.com
adavis@bfalaw.com
jsamra@bfalaw.com

**SIMMONS HANLY CONROY LLC**

By: /s/ *Jay Barnes*
Jason 'Jay' Barnes (admitted *pro hac vice*)
An Truong (admitted *pro hac vice*)
Eric Johnson (*pro hac vice* to be sought)
112 Madison Avenue, 7th Floor
New York, NY 10016
Tel.: (212) 784-6400
Fax: (212) 213-5949
jaybarnes@simmonsfirm.com
atruong@simmonsfirm.com
ejohnson@simmonsfirm.com

**DICELLO LEVITT GUTZLER LLC**

By: /s/ *David Straite*
David A. Straite (admitted *pro hac vice*)
One Grand Central Place
60 E. 42nd Street, Suite 2400
New York, NY 10165
Tel.: (646) 993-1000
dstraite@dicellolevitt.com

Amy E. Keller (admitted *pro hac vice*)
James A. Ulwick (admitted *pro hac vice*)
Ten North Dearborn Street, Sixth Floor
Chicago, IL 60602
Tel.: (312) 214-7900
akeller@dicellolevitt.com
julwick@dicellolevitt.com

**BOTTINI & BOTTINI, INC.**

By: */s/ Francis A. Bottini, Jr.*
Francis A. Bottini, Jr. (SBN 175783)
Albert Y. Chang (SBN 296065)
Anne Beste (SBN 326881)
Yury A. Kolesnikov (SBN 271173)
Nicholaus Woltering (SBN 337193)
7817 Ivanhoe Avenue, Suite 102
La Jolla, CA 92037
Tel.: (858) 914-2001
Fax: (858) 914-2002
fbottini@bottinilaw.com
achang@bottinilaw.com
abeste@bottinilaw.com
ykolesnikov@bottinilaw.com
nwoltering@bottinilaw.com

*Attorneys for Plaintiffs*

## ATTESTATION OF E-FILED SIGNATURE

    I, Brian Danitz, am the ECF user whose identification and password are being used to file this JOINT LETTER BRIEF. Pursuant to Civil Local Rule 5-1(i)(3), I hereby attest that all other signatories to this document concurred in its filing.

                                                   */s/ Brian Danitz*
                                                  BRIAN DANITZ