# EXHIBIT A

# (REDACTED VERSON OF DOCUMENT SOUGHT TO BE FILED UNDER SEAL)

November 21, 2022

Magistrate Virginia K. DeMarchi
Courtroom 2 – 5th Floor
San Jose Courthouse
280 South 1st Street
San Jose, CA 95113

      Re:    *In re Google RTB Consumer Privacy Litigation*, No. 4:21-cv-02155-YGR-VKD

Dear Magistrate Judge DeMarchi:

      Plaintiffs and Defendant Google LLC ("Google") (together, the "Parties") submit this joint letter brief to address a dispute regarding Google's production of Named Plaintiff Data ("NPD") from ▇▇▇▇▇ logs. A separate statement addressing the use of *Calhoun* discovery materials, pursuant to Dkt. 313, is being concurrently filed. Having met and conferred multiple times, including most recently on November 8, 2022, the Parties have reached an impasse as outlined below.

I.    **PLAINTIFFS' POSITION**

    A.    <u>Background</u>

      Plaintiffs seek to compel production of data related to just *eight* Named Plaintiffs, from *six* logs ▇▇▇▇▇▇▇) reflecting relevant transactional data (the "▇▇▇▇ Data") establishing the "who, what, when, where, how, and for how much" Google shared and sold Account Holder ("AH") information. The *six* ▇▇▇▇▇▇▇ logs (and their ▇▇▇▇ equivalents)[1] are identified in the chart below (the "At-Issue" logs) with illustrative examples provided in the *Calhoun* discovery materials brief filed concurrently:

| Log Name | Retention Period (Days) | Relevant Data |
|---|---|---|
| ▇▇▇▇▇▇▇▇ | ▇ | ▇▇▇▇▇▇▇ |
| ▇▇▇▇▇▇▇▇ | ▇ | ▇▇▇▇▇▇▇ |

---

[1] ▇▇▇▇▇▇ logs have ▇▇▇▇▇▇▇▇▇ equivalents. ▇▇▇▇ ogs can be searched by GAIA identifier; ▇▇▇▇▇ logs by Biscotti-identifier. Google maps Biscotti-identifier to GAIA, demonstrating that ▇▇▇▇▇▇ data is associated with a specific AH such that Google doesn't produce data that does not belong to a Named Plaintiff.

November 21, 2022
Page 2

| Log Name | Retention Period (Days) | Relevant Data |
|---|---|---|
| ██████████ | █ | ██████████ |
| ██████████ | █ | ██████████ |
| ██████████ | █ | ██████████ |
| ██████████ | ██ | ██████████ |

As illustrated by the exemplars produced in *Calhoun* and submitted concurrently, these logs contain unique and highly relevant information regarding Google's sale and sharing of NPD through RTB.[2]

In response to Plaintiffs' limited proposal, Google insists that it will only produce:

1. a scrubbed "sample" of ███ NPD limited to a small subset of *fields* selected by Google without informing Plaintiffs what is omitted or why;

2. ███ NPD for a small slice of *time*, without substantiating any burden for producing the complete set; and

3. data from *two* ███ Sawmill logs (the ███ and ███ logs) and their ███ equivalents.

But Google's proposal withholds evidence key to establishing liability and the "nature and volume" of the data at issue. Moreover, during months of meet and confers, Google was unable to even provide the list of fields it intended to produce, and outright refused to identify the fields it intended to cull and the documentation that explain the contents of each field. Instead, Google seeks unilateral authority to cherry-pick the ███ production. Such tactics should be rejected.

---

[2] Google insists that production from the ███ log is adequate. As has been repeatedly briefed to the Court, this log is insufficient to show what is shared or sold through RTB. Google's documents show this. *See, e.g.*, GOOG-HEWT-00295978 (explaining that the system for RTB "bidders to observe bidding activity" or "a past segment" of RTB activity relies on a pipeline extracting data from logs at issue on this motion, including ███ ███ and ███); *see also* concurrently filed *Calhoun* information brief.

Further, Google cannot demonstrate undue burden to support its limited production. Data from all but one of the At-Issue logs has already been searched and preserved via a "pipeline" and the remaining data is in a single log that requires a single search.

**B.    The ▮▮▮▮ Data Is Highly Relevant and Production Is Proportional to the Needs of the Case**

As illustrated by the *Calhoun* discovery materials and brief, the ▮▮▮▮ Data contains highly relevant and unique information core to the claims and defenses in this action, and to issues on class certification. Given the high relevance, and Plaintiffs' limited ask, the request is proportional to the needs of the case and poses no undue burden.

**1.    Pipeline Data.**

Plaintiffs understand that Google preserved NPD from the At-Issue logs (and others) in April 2021. In the *Calhoun* action, this data is called "pipeline" data. Though rendering the data readable required engineering work, Google produced *Calhoun* "non-publisher" pipeline data (no publisher notice required) within ***five*** days of the Court's order. *See Calhoun*, Dkt. 871-3 (public redacted version), Order on Motion for Sanctions for Google's Discovery Misconduct, Findings of Fact ¶ 116. For "publisher data," Google "inexplicably delayed for almost three months in producing the ["publisher"] Data for which pro forma publisher notice was required." *Id.*, FOF ¶ 116; *id.*, Conclusions of Law ¶ 13. Once ordered, Google produced publisher data within ***fourteen*** days and was later sanctioned for its delay. Dkt. 871-3, FOF ¶ 116. Plaintiffs ask that Google be ordered to produce the RTB-pipeline data on a similar timeline. Plaintiffs understand the ▮▮▮▮ ▮▮▮▮ log is the only log with ▮▮▮▮ Data pre-dating the creation of the RTB-NPD pipeline and would require separate searching.

**2.    Non-Pipeline Data.**

There is no undue burden to conduct an additional search of the ▮▮▮▮ log to produce data that pre-dates the data pipeline. By way of comparison, Google produced from dozens of non-pipeline data sources in *Calhoun*. Here, Plaintiffs seek an order compelling Google to promptly search and produce from the ▮▮▮▮ log the NPD that pre-dates the May 2021 establishment of the data.

**C.    Google's Proposal to Produce Is Unsupported by Law or Fact**

There is no dispute that ▮▮▮▮ Data is relevant and relates specifically to Named Plaintiffs. Nonetheless, Google contends that it should be permitted to scrub the data it does not want to produce. But Google refuses to explain which fields it will delete, instead using an undisclosed criteria, and altering the log from the form in which it is kept in the ordinary course. In the context of database information, it is imperative that fields be disclosed: "[w]hen reviewing the relevance of data fields, parties need to carefully examine the relationship between relevant data fields and other fields (or rows, or columns, or tables), [as] this relationship can make otherwise irrelevant data relevant because of its link or connection to relevant information." *The Sedona Conference Database Principles Addressing the Preservation and Production of Databases and Database Information in Civil Litigation*, 15 Sedona Conf. J. 171, 203, Comment

November 21, 2022
Page 4

1.B. (2014). Moreover, "in some circumstances it may be easier, less expensive, and less burdensome to produce a larger slice of the database content or even the entire database." *Id.* at 204, Comment 1.F. This principle is applicable here because, from *Calhoun*, Plaintiffs understand that pipeline data is actually easier to produce as a complete data set rather than manipulating it by field. Google's data scrubbing lacks transparency and requires an extra step before production; thus, creating production burdens.

Google also proposes a time-limited sample of ▮▮▮ Data. As this Court has found, "the nature and volume of the collected information is also important" to Plaintiffs' invasion of privacy and intrusion upon seclusion claims, and whether the conduct is highly offensive. Dkt. 233 at 11–12. By sampling and imposing arbitrary time-limits, Google deprives Plaintiffs of relevant evidence to demonstrate the full "nature and volume" of Google's conduct. Plaintiffs are not aware of any breach of contract case where a defendant was permitted to "sample" the evidence of breach in its possession for the Plaintiff or Named Plaintiffs in a class action.[3]

Further, Google provides no evidence to support its claimed undue burden. While Google now asserts that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮" (*see, infra*), this statement is not supported by any factual evidence or specificity as to the nature of work and reasons for delay. In any event, *Calhoun* demonstrated that the burdens are not prohibitive (*see, supra*). Pipeline logs are already part of Google's litigation hold that Google has already searched and preserved, and *Calhoun* shows that it can be produced without undue burden. For non-pipeline data, *Calhoun* demonstrated that Google could search the log and produce the data without undue burden or delay. Even if one were to credit Google's claimed "months of work," it is Google's delay, not Plaintiffs, that creates a time crunch. The data pipelines were created in April 2021. Had Google begun the necessary work of extracting the pipeline data in a timely manner, the data would already be available.

As set forth above, Plaintiffs request that the Court should compel Google to (a) produce in full the pipeline NPD from the At-Issue logs and their ▮▮▮▮▮▮ equivalents, identified above; and (b) search and produce NPD (including NPD that pre-dates the filing of the Complaint) from the ▮▮▮▮▮▮▮▮▮▮ log.

## II.   GOOGLE'S POSITION

Plaintiffs again seek extraordinarily overbroad discovery that far exceeds the Court's August 26, 2022 order on named-Plaintiff data (ECF No. 314) ("August 26 Order"), without regard to relevancy, proportionality, or burden on Google. Their demands are unnecessary, as Google is already producing the "who, what, when, where, how, and for how much" Plaintiffs purport to seek. Since the August 26 Order, Google has worked diligently to produce Plaintiffs' sign-up information, consent-related data, settings, over ▮▮▮ "My Activity" records (including web-

---

[3] None of Google's cases deal with breach of contract, and are otherwise distinguishable. In *Tinnin*, the Court had the benefit of a declaration from defendant's director of payroll who explained the specific burdens associated with manual record retrieve, whereas here Google presents no evidence to support its claims of burdens and the discovery process in *Calhoun* demonstrates the contrary. In *Soto*, Plaintiffs sought production of all putative class member payroll records, whereas here Plaintiffs seek only information with respect to the eight Named Plaintiffs. In *Quintana*, the Court noted that sampling was appropriate for class-wide evidence, not individual plaintiffs.

November 21, 2022
Page 5

browsing history), and over ▇▇▇ log records responsive to the "Linking account information," "Ads shown," and "Cookie-matching" sections of that Order.[4] After a short contractually-required notice period expires in early December, Google will produce more than ▇▇▇ additional log records. These productions comply with the Court's directive and give Plaintiffs all the named-Plaintiff data they could possibly need. Plaintiffs' attempt to obtain every byte of internal data for any and all ad events, including data unrelated to Google's Real-Time Bidding system ("RTB"), is not proportional or reasonable.

### A. Sampled Log Data is Proportional.

The August 26 Order did not require Google to produce all data in all logs Plaintiffs demand. Instead, the Court instructed Google to produce "documents sufficient to show, for each named plaintiff, what information specific to that plaintiff was shared with an RTB participant and the details of such sharing." August 26 Order at 4. Further, while the Court ordered Google to produce data regarding RTB ads shown to Plaintiffs, the Court ordered the Parties to meet and confer regarding what data could be produced without undue burden. *Id.* at 7.

The Parties had those discussions, and Google made numerous compromises and has begun producing fields responsive to the Court's order from six different time periods and five log sources.[5] These records encompass the information Google was ordered to produce. When the notice period expires, Google's productions, in total, will provide Plaintiffs with data from almost ▇▇▇ log records, which is the principal log recording the information transmitted through RTB; over ▇▇▇ other records from ▇▇▇" logs that show the details of the alleged sharing, RTB ads presented to Plaintiffs, and the payments Google received for those ads; and additional, unsampled data regarding cookie matching from yet another data source. These records, with the rest of Google's production, suffice to show what data was shared for the named Plaintiffs through RTB.[6]

### 1. Producing fields responsive to the Court's order is appropriate.

Because database discovery is burdensome, "[a]bsent a specific showing of need, a requesting party is entitled only to database fields that contain relevant information, and give context to such information, and not to the entire database in which the information resides or the underlying database application or database engine." The Sedona Conference, *The Sedona*

---

[4] Any accusation of delay is unfounded. Google has repeatedly conferred with Plaintiffs and investigated their questions. Simultaneously, Google prepared the data it agreed to produce so there was no delay in production.

[5] Google responds to the technical aspects of Plaintiffs' additional in the separate brief on *Calhoun* materials. But Plaintiffs' assertion that "Google maps each Biscotti-identifier to the Google account" is false. ▇▇▇

[6] Google used the same search methodology for each named Plaintiff. Plaintiff Williams's data requires customer notice and will be produced in early December. For Plaintiff Suwol, the methodology did not locate records, which Google is investigating.

November 21, 2022
Page 6

*Conference Database Principles Addressing the Preservation and Production of Databases and Database Information in Civil Litigation*, 15 Sedona Conf. J. 171, 176 (2014). Despite this, Plaintiffs demand every field in the extremely voluminous logs Google has agreed to produce. But these logs contain ▇▇▇ of fields,[7] a vast number of which are not relevant to this litigation or responsive to the Court's order. For example, the logs in dispute contain irrelevant and in some cases sensitive information about:  This is the tip of the iceberg, as these logs contain countless other data points never shared with third-party RTB participants.

Google long ago provided descriptions of the fields it intended to produce, offered to provide Plaintiffs the finalized list of field names, and now has started producing this data, field names included. Nonetheless, Plaintiffs refused Google's offers to meet and confer about specific, additional fields Plaintiffs claimed to need. Plaintiffs maintained that Google had to turn over *every field in every log in dispute* and no limits of any kind were appropriate. Plaintiffs are uninterested in compromise and want to make this process as onerous for Google as possible. Their demands should be rejected. *See Elgindy v. Aga Serv. Co.*, 2021 WL 5083761, at *4 (N.D. Cal. Nov. 2, 2021) ("general ruminations about what might be revealed" are insufficient for plaintiffs "to carry their burden to establish relevancy and proportionality").

2. **Producing samples is reasonable given the burden imposed by Plaintiffs' proposal.**

Courts routinely permit parties to produce samples of data where producing the entirety of that data would prove too burdensome. *E.g.*, *Tinnin v. Sutter Valley Med. Found.*, 2021 WL 1315435, at *4 (E.D. Cal. Apr. 7, 2021) (rejecting plaintiffs' attempt to obtain complete data set where that data would require "significant manual labor to retrieve, format, process, and manage" and ordering defendant to produce a sample instead); *Soto v. Castlerock Farming & Transp., Inc.*, 282 F.R.D. 492, 503 (E.D. Cal. 2012) (collecting cases where courts have ordered "a 'sampling' of records" in order "[t]o relieve the burden on a party"); *cf. Quintana v. Claire's Boutiques, Inc.*, 2014 WL 234219, at *2 (N.D. Cal. Jan. 21, 2014) ("In the specific context of class action discovery, sampling advances the goal of proportionality advanced under Fed. R. Civ. P. 26(b)(3)(c)(iii)."). Plaintiffs can make whatever arguments they choose about the "nature and volume" of information at issue based on the ▇▇▇ of data points Google is giving to them.

Requiring Google to produce all named-Plaintiff data from the logs in dispute would impose a disproportionate burden. Specifically, as explained in more detail below, it would require substantial engineering time to compile and verify the data and substantial and expensive attorney time to give contractual notice to likely thousands of publisher customers, whose sensitive commercial information is also contained in these logs, and to respond to their inquiries. Plaintiffs offer no good reason why they need more than the ▇▇▇ records and ▇▇▇ of other

---

[7] For example, recent entries in one of the logs Google is producing had ▇▇▇ populated data fields.

November 21, 2022
Page 7

logs records to litigate this case.

### B. Plaintiffs Are Not Entitled to the Data in the Other Logs They Seek.

As they invariably do, Plaintiffs indiscriminately point to *Calhoun* data that relate to Google's ads business writ large, not just RTB, and insist that Google produce that information here. Plaintiffs have identified 8 additional logs, beyond those Google is already producing, contained in Google's "█████" database. But, as Google demonstrates in the accompanying brief on *Calhoun* material, the information in these additional logs often has nothing to do with RTB, is not shared with third parties, and/or is duplicative of the data Google has produced and is producing.

Plaintiffs also dramatically understate the burden of their demands. Google's engineers estimate that it would require a significant percentage of the time of █████ engineers over, approximately, the █████████ to query, collect, verify the integrity of, and output the data Plaintiffs demand. Plaintiffs' proposal would also impose the added burden and expense of giving notice of production to, and dealing with responses from, even more Google customers. Google cannot simply repeat what it did for *Calhoun* because some of its data collection processes have since changed to reduce system and resource strain from such data collections and to ensure data integrity. Additionally, Google never produced all available █████████ data in *Calhoun*, as Plaintiffs demand here. Instead, Google produced time-sliced samples, as it proposes to do here with other logs. Further, Plaintiffs argue that productions from "pipeline" data in *Calhoun* was simple, but they mischaracterize Google's Herculean efforts in *Calhoun*, which involved writing ██████ of lines of scripts, and misunderstand the state of data here. While Google has segregated ██████, named-Plaintiff data for five of the six logs Plaintiffs requested, as Plaintiffs know, for ████████ data, Google—at great expense and consumption of limited resources—has preserved a massive amount of data from the ███ log. But that ███ data is no push-button "pipeline," as Plaintiffs assert. Thus, Plaintiffs' response to Google's burden objections is no response at all.

## III. NECESSITY OF A HEARING

### A. Plaintiffs' Position

Given the importance of Named Plaintiff Data to key issues of liability and class certification, Plaintiffs request a hearing on this discovery request.

### B. Google's Position

Google respectfully requests the Court convene a hearing to resolve these issues.

## IV. DISCOVERY CUT-OFFS

The fact discovery cut-off is July 14, 2023, and the close of expert discovery is October 13, 2023.

## V. COMPLIANCE WITH MEET AND CONFER REQUIREMENT

November 21, 2022
Page 8

The Parties met and conferred several times via email and Zoom. The final lead counsel meet and confer was held on November 8, 2022, via Zoom. On Plaintiffs' side, Jay Barnes, Anne Davis, David Straite, and Elizabeth Pritzker attended. On Google's side, Jeff Gutkin and Kelsey Spector attended.

Dated: November 21, 2022

**BLEICHMAR FONTI & AULD LLP**

By: */s/ Anne K. Davis*
Lesley E. Weaver (SBN 191305)
Anne K. Davis (SBN 267909)
Joshua D. Samra (SBN 313050)
555 12th Street, Suite 1600
Oakland, CA 94607
Tel.: (415) 445-4003
Fax: (415) 445-4020
*lweaver@bfalaw.com*
*adavis@bfalaw.com*
*jsamra@bfalaw.com*

Dated: November 21, 2022

**SIMMONS HANLY CONROY LLC**

By: */s/ Jay Barnes*
Jason 'Jay' Barnes (admitted *pro hac vice*)
An Truong (admitted *pro hac vice*)
Jennifer Paulson (admitted *pro hac vice*)
112 Madison Avenue, 7th Floor
New York, NY 10016
Tel.: (212) 784-6400
Fax: (212) 213-5949
*jaybarnes@simmonsfirm.com*
*atruong@simmonsfirm.com*
*jpaulson@simmonsfirm.com*

Dated: November 21, 2022

**DiCELLO LEVITT LLC**

By: */s/ David A. Straite*
David A. Straite (admitted *pro hac vice*)
485 Lexington Avenue, Suite 1001
New York, NY 10017
Tel.: (646) 933-1000
*dstraite@dicellolevitt.com*

*Counsel for Plaintiffs in RTB and Calhoun*

November 21, 2022
Page 9

Dated: November 21, 2022 **COOLEY LLP**

By: */s/ Jeffrey M. Gutkin*
Michael G. Rhodes
Jeffrey M. Gutkin
Whitty Somvichian
Aarti G. Reddy
Laura M. Elliott
Kelsey R. Spector
Anupam S. Dhillon
3 Embarcadero Center, 20th floor
San Francisco, CA 94111-4004
Tel.: 415-693-2000
Fax: 415-693-2222
rhodesmg@cooley.com
jgutkin@cooley.com
wsomvichian@cooley.com
lelliott@cooley.com
kspector@cooley.com
adhillon@cooley.com
cscott@cooley.com

Robby L.R. Saldaña
1299 Pennsylvania Avenue NW, Suite 700
Washington, DC 20004-2400
Tel.: 202-776-2109
Fax: 202-842-7899
rsaldana@cooley.com

Attorneys for Defendant
GOOGLE LLC

November 21, 2022
Page 10

## ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1(h)(3)

I, Anne K. Davis, attest that concurrence in the filing of this document has been obtained from the other signatories. I declare under penalty of perjury that the foregoing is true and correct.

Executed this 21st of November, 2022, at Pacifica, California.

*/s/ Anne K. Davis*
Anne K. Davis