# EXHIBIT A

1      UNITED STATES DISTRICT COURT

2     NORTHERN DISTRICT OF CALIFORNIA

3 Before The Honorable Yvonne Gonzalez Rogers, Judge

4

5 In re:         )
              )
6 GOOGLE RTB CONSUMER     )
 PRIVACY LITIGATION,      )  No. C 21-02155-YGR
7             )
 _____)
8            )
 PATRICK CALHOUN, et al.,    )
9             )
     Plaintiffs,    )  No. C 20-05146-YGR
10            )
   vs.         )
11            )
 GOOGLE, LLC,        )
12            )
     Defendant.     )
13 _____)

14         Oakland, California
         Wednesday, June 1, 2022
15

16  TRANSCRIPT OF PROCEEDINGS OF THE OFFICIAL ELECTRONIC SOUND
     RECORDING 11:27 - 12:04 = 37 MINUTES

17 APPEARANCES:

18 For Plaintiffs:
         Bleichmar Fonti & Auld LLP
19         555 12th Street, Suite 1600
         Oakland, California 94607
20        BY:  LESLEY ELIZABETH WEAVER, ESQ.

21 For Plaintiff re: Google RTB:
         Pritzker Levine LLP
22         1900 Powell Street, Suite 450
         Emeryville, California 94608
23        BY:  JONATHAN K. LEVINE, ESQ.

24
      (APPEARANCES CONTINUED ON NEXT PAGE)
25

2

```
1   APPEARANCES:  (Cont'd.)

2   For Defendant re: Google RTB:
                          Cooley LLP
3                         3 Embarcadero Center
                          Floor 20
4                         San Francisco, California
                          94111
5                 BY:  JEFFREY MICHAEL GUTKIN, ESQ.

6   For Defendant Google, LLC:
                          Quinn Emanuel Urquhart &
7                           Sullivan, LLP
                          51 Madison Avenue, 22nd Floor
8                         New York, New York 10010
                  BY:  JOMAIRE CRAWFORD, ESQ.
9
                          Quinn Emanuel Urquhart &
10                          Sullivan, LLP
                          191 North Wacker Drive
11                        Suite 2700
                          Chicago, Illinois 60606
12                BY:  ANDREW H. SCHAPIRO, ESQ.

13
    Transcribed by:       Echo Reporting, Inc.
14                        Contracted Court Reporter/
                          Transcriber
15                        echoreporting@yahoo.com

16

17

18

19

20

21

22

23

24

25
```

3

1  <u>Wednesday, June 1, 2022</u>                                      <u>11:27 a.m.</u>

2                          P-R-O-C-E-E-D-I-N-G-S

3                              --oOo--

4          THE CLERK:  Calling civil case first,

5  21-02155-YGR, In re Google RTB Consumer Privacy Litigation.

6      Counsel, starting with the plaintiff, please state your

7  appearance.

8          MR. LEVINE (via Zoom):  Good morning, your Honor.

9  Jonathan Levine, Pritzker Levine, on behalf of plaintiffs in

10 Google RTB.

11         THE COURT:  Okay.  Good morning, Mr. Levine.

12         MS. WEAVER (via Zoom):  Good morning, your Honor.

13 Lesley Weaver of Bleichmar Fonti, also on behalf of the

14 plaintiffs in RTB.

15         THE COURT:  Okay.  Good morning.

16         MR. GUTKIN (via Zoom):  Good morning, your Honor.

17 Jeff Gutkin from the Cooley firm appearing on behalf of the

18 defendant Google LLC in the RTB action.

19         THE COURT:  Okay.  And what office are you in, Mr.

20 Gutkin?

21         MR. GUTKIN:  The San Francisco office.

22         THE COURT:  And, Ms. Crawford, where are you?

23     Mr. Schapiro, are you the next case?

24     Okay.  Let's go ahead and call the other case.

25         MR. SCHAPIRO (via Zoom):  I don't know if it's the

4

1 next case.  It's the -- we're here for Calhoun.

2          THE COURT:  Okay.  So let's call that one.

3          THE CLERK:  And calling civil case 20-05146-YGR,

4 Calhoun versus Google LLC.

5      Please state your appearance.

6          MS. WEAVER (via Zoom):  Good morning, your Honor.

7 Lesley Weaver of Bleichmar Fonti, also for the plaintiffs in

8 Calhoun.

9      And I will note for the record that Mr. Jay Barnes is

10 available for elevation if you have questions that he might

11 be able to assist in responding to, and he's also counsel in

12 both cases, RTB and Calhoun.

13          THE COURT:  Okay.  But Mr. Levine, you're not in

14 Calhoun; you're just in RTB?

15          MR. LEVINE:  That's correct, your Honor.

16          THE COURT:  Okay.  And defense counsel then in

17 Calhoun?

18          MR. SCHAPIRO:  Hello.  I'm Andrew Schapiro from

19 Quinn Emanuel -- I'm in our Chicago office -- representing

20 Google.

21          THE COURT:  Okay.

22          MS. CRAWFORD (via Zoom):  Good morning, your

23 Honor.  Jomaire Crawford from Quinn Emanuel Urquhart and

24 Sullivan, also representing Google, LLC in the Calhoun

25 action.

5

1        THE COURT:  And which office are you in?

2        MS. CRAWFORD:  Quinn Emanuel's New York office.

3        THE CLERK:  And sorry to interrupt, but I see a

4   Douglas Brush has his hand up as an attendee.

5      Does he need to be promoted here?  Oh, he just put his

6   hand down.  Never mind.

7        MS. WEAVER:  Mr. Brush is the special master in

8   Calhoun, just for the Court's edification if the Court did

9   not know.

10       THE COURT:  Okay.  I saw that name.

11     All right.  The reason that I asked my courtroom deputy

12  to get you on the line, so to speak, is because there are

13  lots of moving parts in your cases and perhaps you all don't

14  know, but the Court is currently in a worse judicial

15  emergency than the Eastern District of California right now.

16     For those of you in California, you understand what

17  that means.  Given our weighted averages, we've not ever

18  been in years higher than the Eastern District.  We are down

19  four judges, beginning with the judge who had this case,

20  Judge Koh, and we have one replacement.  The next one won't

21  be here for a while, but -- that's a little help on the way.

22  And the other two have not even been nominated.

23     We need you to basically help us do our jobs, and that

24  means that we are going to do as much as we can to

25  streamline your disputes.

6

1     I can't have you filing motions that -- when there are
2  more efficient ways to take care of things.  And if that
3  means that I have to periodically get on a conference with
4  you, so be it.
5     So what I'm showing -- and I've granted just a couple
6  of administrative motions myself today as I worked on your
7  docket.  But I've got a motion for relief from Judge
8  DeMarchi's order that Mr. Levine doesn't even address the
9  standard.  I mean it's -- the standard is pretty high.
10     I also have a motion to allow limited use of discovery
11  where I have co-counsel in a related case.  I don't know if
12  there's going to be an objection.  The objection is due
13  today.  I think I saw an email that said that there was
14  going to be an objection.
15     Is there an objection?
16          MR. GUTKIN:  Yes, your Honor.  This is Jeff --
17          THE COURT:  Why?  What is the objection?
18          MR. GUTKIN:  Well, first, your Honor, this issue
19  has already been decided by Judge DeMarchi.
20     And, frankly, your Honor, the reason we need to file a
21  written opposition, which I understood to be due on June
22  7th, under the normal scheduling for such motions, is
23  because there is a bit of a lack of information being
24  provided to your Honor regarding the past history in this
25  case.

7

1          Judge DeMarchi has actually already heard a motion

2 to have both the discovery requests and the discovery

3 responses from the Calhoun matter turned over in this case.

4 Judge DeMarchi denied -- sorry.  Google originally refused

5 to produce that information.  We had a letter brief.  We

6 had --

7          THE COURT:  Give me a docket number.

8          MR. GUTKIN:  The docket number is 189.  And the

9 two --

10          THE COURT:  Hold on.

11          MR. GUTKIN:  Yes, your Honor.

12          THE COURT:  While I'm pulling it up, is that true,

13 Mr. Levine?

14          MR. LEVINE:  The requests and responses were the

15 subject of a motion before Judge DeMarchi --

16          THE COURT:  I'm having a hard time hearing you.

17          MR. LEVINE:  I'm sorry, your Honor.  There was a

18 fire engine driving by.

19      The requests themselves and Google's written responses

20 were the subject of a prior discovery motion.  Lesley may

21 want to chime in on this as well.

22          THE COURT:  Ms. Weaver you mean?

23          MR. LEVINE:  I'm sorry.

24          THE COURT:  Ms. Weaver?

25          MR. LEVINE:  Ms. Weaver.  I apologize.

8

1        THE COURT:  So, Ms. Weaver, is that right?  So
2   you've already made the request.  Judge DeMarchi has already
3   ruled on it and now I have a motion on the exact same issue?
4        MS. WEAVER:  I don't believe it's the exact same
5   issue at all, your Honor.  And I think there are
6   overwhelming deficiencies, given what's happened --
7        THE COURT:  I don't disagree there might not be.
8   That wasn't my question.
9        My question is whether these things were asked for and
10  they went to Judge DeMarchi, and Judge DeMarchi ruled on
11  them.
12        MS. WEAVER:  The answer, your Honor, is that a
13  limited set of what we are seeking in the use was sought
14  from Judge DeMarchi.
15        MR. GUTKIN:  Your Honor --
16        THE COURT:  Then why -- it is entirely
17  inappropriate then for you to then file some extra motion on
18  issues that were litigated with Judge DeMarchi.
19        How can you justify that, even if it's more efficient?
20        MS. WEAVER:  We -- I understand what you're
21  saying, your Honor.  We advised Judge DeMarchi that we would
22  be filing this motion because Judge DeMarchi could not offer
23  the relief we are seeking from you.
24        We are seeking relief from the protective order in
25  Calhoun to be able to use information and documents in the

9

1  Real-time Bidding matter.  Judge DeMarchi is not the

2  magistrate judge in that case.  Judge van Keulen is.

3      So it is not correct or accurate to say that we sought

4  this relief in front of Judge DeMarchi because she could not

5  grant it.

6          THE COURT:  All right.  So the order number again,

7  Mr. Gutkin?

8          MR. GUTKIN:  It's 189, and it's the requests --

9  RFPs 43 and --

10          THE COURT:  That's her order?

11          MR. GUTKIN:  Yes, your Honor.

12          THE COURT:  Hold on.

13      That's a letter.  That's not her order.

14          MR. GUTKIN:  I'm not sure, your Honor, but --

15          THE COURT:  It says "Joint discovery letter."  It

16  doesn't say "Order."

17      I'm looking for the order.

18          MR. GUTKIN:  So I'm looking at a document that's

19  titled document 189, filed on April 29, 2022 that's titled

20  "Order re March 15 discovery dispute."

21          THE COURT:  Hold on.  I thought it was supposed to

22  be looking in the Calhoun case.

23          MR. GUTKIN:  Oh, I apologize, your Honor.  This is

24  in the Google RTB action.

25          THE COURT:  All right.  I now have it.  What page?

10

 1         MR. GUTKIN:  This is resolved on page two and
 2  going on to the top of three.
 3      The discovery request --
 4         THE COURT:  Hold on.  I need to read it.
 5         MR. GUTKIN:  Yes, your Honor.  I apologize.
 6         THE COURT:  So she says, "Plaintiffs may be
 7  correct that some of the documents and information Google
 8  has produced and will produce in the related action is also
 9  relevant and responsive to discovery requests in this case."
10      So she said that there is in fact some overlap, right?
11  That's how I read it.  "However, the overlap between this
12  action and the related cases is not so extensive as to
13  justify the wholesale review of this action of the discovery
14  provided by Google in the related action, and the Court will
15  not require Google to undertake that."  Right?
16         MR. LEVINE:  That's right, your Honor.
17         THE COURT:  That's where we are.  Everybody
18  understands that, right?
19         MR. LEVINE:  That's correct, your Honor.
20         THE COURT:  So what is the issue with Ms. Weaver,
21  who is counsel in Calhoun, to also be able to more narrowly
22  tailor discovery for purposes of RTB, since she's got that
23  information anyway?
24         MR. GUTKIN:  Your Honor, the order was already
25  addressing a request for more tailored discovery.

11

1    Request number 43 was just a request for the document

2 and interrogatory requests in the Calhoun action.

3    44 was a request for just the documents, information

4 and testimony relating to data privacy, real-time bidding or

5 any other matter alleged in the RTB complaint.

6    So they had already sought this narrow discovery before

7 Judge DeMarchi, which she denied.  The plaintiffs not only

8 did not even mention the existence of this ruling in their

9 motion to your Honor, they also did not appeal Judge

10 DeMarchi's order.  The deadline for appeal has now passed.

11    So they --

12        THE COURT:  Mr. Gutkin --

13        MR. GUTKIN:  -- are basically --

14        THE COURT:  Mr. Gutkin, you have yet to answer my

15 question.

16        MR. GUTKIN:  Yes, so --

17        THE COURT:  You have yet to answer my question.

18 Are you going to answer it or not?

19        MR. GUTKIN:  Yes, your Honor.

20    Delving into the discovery in the Calhoun matter

21 threatens to effectively undo all of the discovery work that

22 we have been doing before Judge DeMarchi in this matter.

23    So, for example, we had a litigated dispute about the

24 appropriate custodians for this matter where counsel and RTB

25 sought to have Google add approximately 40 custodians to

12

1  Google's custodian list.

2      Judge DeMarchi heard that dispute after briefing and

3  oral argument and ruled that only two should be added.  Some

4  of these custodians would be the same ones that they would

5  now be seeking to obtain discovery from through this cross

6  use.  So this effectively undermines, if not completely

7  undoes all of the work that Judge DeMarchi has done.

8      So your Honor was discussing the congestion of the

9  court system.  We're in serious peril here if we embark on

10  this process that plaintiffs have laid out of actually

11  vastly increasing the amount of discovery disputes in our

12  case and also --

13          THE COURT:  Well, you have not even produced very

14  much.  Fifty thousand documents, that's nothing.  So a vast

15  increase over virtually nothing is not that much.

16          MR. GUTKIN:  Well, your Honor, we have been

17  producing according to our discovery responses and

18  consistent with Judge DeMarchi's rulings on the many

19  discovery disputes, as I think plaintiffs mentioned in their

20  opening motion, which again we would like to oppose in

21  writing.

22      But there have been seven or so discovery hearings

23  resolved already this year.  These are getting resolved

24  overwhelmingly in favor of Google because plaintiffs are

25  seeking overbroad discovery.

13

1   But the thing that I would say, your Honor, is this is

2   going to be extraordinarily inefficient because it's going

3   to basically undo what Judge DeMarchi has been doing to

4   appropriately limit discovery to the narrow subject at issue

5   in this case, which is what information Google allegedly

6   shares with third parties through one particular advertising

7   product.

8   And the plaintiffs are trying to bring in an entire

9   universe of materials from Calhoun. And, your Honor, there

10  are other problems with the process that they propose that I

11  frankly don't even understand how it would work.

12  So, for example --

13       THE COURT:  Well, let suggest something, and you

14  tell me what the problem is with it.  And that is, for me to

15  provide Ms. Weaver with the authority to use her knowledge

16  about Calhoun to craft, under seal, requests for additional

17  discovery, narrowly tailored, and then serve them on you.

18  And if there are issues, those then get litigated.  But

19  it seems to me, given that she has that information, she

20  should be able to narrowly tailor things specific to this

21  case.

22       MR. GUTKIN:  Respectfully, your Honor, Ms. Weaver

23  and her co-counsel's information that they have from another

24  action is a problem of their own creation.  They have a

25  protective order --

14

1          THE COURT:  Perhaps.  That's not my question.  It
2  is the circumstance and reality of the situation.
3      What is the problem with that approach?
4          MR. GUTKIN:  So the first problem with that
5  approach is that there is a significant information
6  asymmetry between my team at Cooley, representing Google,
7  and Ms. Weaver.
8      So if, for example, Ms. Weaver says we would like the
9  following list of 600 documents produced and the following
10 deposition testimony, my team does not -- has not reviewed,
11 with trivially minor exceptions, anything from the document
12 production in Calhoun nor any of their depositions.
13     And Ms. Weaver would presumably be providing me with
14 requests for the information that they consider helpful to
15 their case, and I would be at a loss to find the other
16 discovery --
17         THE COURT:  How could you be at a loss?  You have
18 a client.
19         MR. GUTKIN:  Because it would be a massive
20 undertaking that we have not yet begun, to try to pull
21 together all of the discovery that I would need in order to
22 have all of the --
23         THE COURT:  Mr. Gutkin --
24         MR. GUTKIN:  Yes, your Honor.
25         THE COURT:  -- is your client and Mr. Schapiro --

15

1  who is the lead, Mr. Schapiro or Ms. Crawford?

2          MR. SCHAPIRO:  I guess I'm the lead overall.  Ms.

3  Crawford might be the lead for some issues in this hearing.

4          THE COURT:  All right.  So who is your client

5  contact at Google, and is it the same person as Mr. Gutkin's

6  contact?

7          MR. SCHAPIRO:  That I don't even know.  We're

8  working with -- Matthew Gubiotti is our main contact.

9      Jeff -- excuse me, Mr. Gutkin, who is your main

10 contact?

11         MR. GUTKIN:  It is not the same contact.  My

12 contact's name is Danielle Pierre.

13         THE COURT:  And where are they located?

14         MR. SCHAPIRO:  People are working remotely now.

15 They're in Northern California.  Mr. Gubiotti is in Northern

16 California.

17         MR. GUTKIN:  Ms. Pierre as well.

18         THE COURT:  And I take it that Google has a legal

19 department and that they're both working for the same legal

20 department?

21         MR. GUTKIN:  Yes.

22         MR. SCHAPIRO:  I'm sure, yes, your Honor.

23         THE COURT:  Yeah.  So it's not as if they can't

24 talk to each other, right?

25         MR. GUTKIN:  Yes, your Honor.  That's absolutely

16

1  correct.

2      Your Honor, if I may make another point.

3          THE COURT:  Go ahead.

4          MR. GUTKIN:  The parties are nearing a newly

5  agreed substantial completion deadline for document

6  production and have just recently stipulated to your Honor

7  that we would enter into a new schedule where the

8  substantial completion of document production target is July

9  11th.  And plaintiffs would be filing their motion for class

10 certification at the end of September.  That was a

11 stipulation filed I believe last week before your honor.

12     Embarking on this new process is going to, in my

13 opinion, make that schedule absolutely infeasible.

14     And, your Honor, the plaintiffs in this case have been

15 saying to me since last summer that they think there should

16 be cross use.

17     I have always responded, with one narrow exception

18 where we agreed to give them --

19          THE COURT:  That there should be what?

20          MR. GUTKIN:  I'm sorry, cross use of discovery

21 between the Calhoun action and this action.

22     I have always responded that we did not think that

23 cross use was appropriate and we would oppose that.  I can't

24 tell you how many calls I've had where they've said, "Well,

25 then we're going to bring a motion to the Court to obtain

17

1    cross use." And they did not do that, your Honor, until

2    now.

3         And to put a finer point on it, they did not do that

4    until Judge DeMarchi expended all of the effort involved in

5    resolving our many discovery disputes, which are highly

6    relevant to this cross use request and which this cross use

7    request threatens to seriously undermine, if not nullify,

8    many of her rulings and force her to start again.

9         So if they say "We would like the documents produced in

10   the Calhoun action from Custodian X," and Judge DeMarchi has

11   already ruled, based upon the letter briefing and additional

12   briefing that we did related for our custodian disputes,

13   that Custodian X is not appropriate for inclusion in this

14   case, we will just be going back and re-litigating with

15   Judge DeMarchi again the very issues she resolved.

16        And there was no reason --

17             THE COURT: Response? I need a response.

18             MS. WEAVER: Thank you, your Honor. Lesley Weaver

19   on behalf of the plaintiffs.

20        We are well aware -- I personally am well aware of

21   relevant evidence in Calhoun that has been denied us in

22   Real-time Bidding.

23        And when I have tried to present argument that, for

24   example, a particular deponent who I just deposed talked

25   about the Real-time Bidding auction, Mr. Gutkin said, "He

18

1  can't talk about that.  That's confidential."

2      We have been trying to work within the system.  We're

3  keenly aware of how busy the Court is.  We had to bring the

4  appeal and this cross use motion because our backs are

5  against the wall.

6      The only way we can make this deadline now at this

7  point, we think, is if we get access to the targeted

8  discovery.  And the appeal is focused on denying us

9  discovery that is critical for us to show the jury what's

10 being collected and then sold.

11      Right now the case is limited to what's sold.  And what

12 we learned in Calhoun, we don't want to re-create the

13 special master process here.  The Court -- Judge van Keulen

14 was heroic.  She ruled on 40 discovery motions.

15      We can cut through that right now by just reaching an

16 agreement, if Google will be reasonable, about what can be

17 produced here, and we don't have to trouble Judge DeMarchi

18 or the Court again.  And it will not only resolve I think

19 big parts of the appeal but also some of the pending

20 discovery motions and the many we see coming down the road.

21      We don't want to fight.  We don't want this litigation

22 to go on the road that Brown and Calhoun went.

23      And I'll just note, your Honor, now in this request, we

24 aren't seeking Brown documents.  We aren't seeking the

25 documents in both cases.  We've limited it to Calhoun so

19

1  that I can be targeted.  And we will limit it even further

2  to the overlap in Real-time Bidding.

3          MR. GUTKIN:  May I respond, your Honor?

4          THE COURT:  You may.

5          MR. GUTKIN:  They --

6          THE COURT:  But let me -- no, hold on.  Let me

7  ask.

8      The underlying substantive request is not a Calhoun

9  litigation.  It's a substantive request.

10      I understand that you're trying to, you know, take a

11  more efficient road, but the substantive request was denied

12  as well?

13          MS. WEAVER:  The request for production of the

14  written discovery in Brown and Calhoun was denied as

15  overbroad in the order that you just read.

16      We are proposing something different here, which would

17  be, for example, access to the documents and the depositions

18  that were taken already with exhibits attached that will

19  allow us to cut through a lot of discovery and disputes

20  here.

21          MR. LEVINE:  Your Honor, if I can add just one

22  thing to what Ms. Weaver said.

23      The difference is, in the issue that was briefed to

24  Judge DeMarchi, we were asking Google to go do a search of

25  the Calhoun documents for specific topics relating to this

20

1  case, and that was denied.

2       What we're asking for here is for Google not to do

3  anything.  So we're not asking -- this request here is not

4  asking Google to do any work.

5       It is plaintiffs who will go do that work and do that

6  search and then inform Google of what it's found.  And

7  Google will then have an opportunity to say either it's not

8  relevant or it was never requested here or Judge DeMarchi

9  has already ruled you're not entitled to it.

10      So it is a different issue from what was briefed before

11  Judge DeMarchi, which was to compel Google to go do work

12  from the Calhoun case here.  We're not asking for that here.

13          MS. WEAVER:  And if I may, the cases are related

14  in subject matter areas that include consent, damages, how

15  we would identify the named plaintiff documents and data.

16  That is what we spent a year and a half with the special

17  master discussing.

18      And even though we have different plaintiffs in

19  Real-time Bidding, we know how to ask for what we need now

20  and we can actually -- and if we -- we can educate, Mr.

21  Gutkin as well.  We'll be showing him -- it will be much

22  more efficient than working through the clients.

23          THE COURT:  Mr. Brush, can we get you on the

24  platform.

25      He's the special master, right?

21

1          MS. WEAVER:  He's the special master in Calhoun,

2   your Honor, and he's had the narrow designation of helping

3   us produce named plaintiff data in Calhoun.

4       The rest of the discovery issues were handled by Judge

5   van Keulen.  And she maintained jurisdiction over all legal

6   matters.  His was more a fact focused, how the system

7   functioned.

8       (Pause.)

9          MR. BRUSH (via Zoom):  Hello, your Honor.  Can you

10  hear me now?

11         THE COURT:  I can hear you now.  Thank you.

12      Can you tell me in your work on this matter whether or

13  not you have come across documents relating to how the

14  real-time process works and is managed in terms of flow of

15  information?

16         MR. BRUSH:  Yes, your Honor.  Most of what we've

17  been doing has been to the extent of understanding the data

18  sources where potential plaintiff information could live,

19  use identifiers for them that are unique and pull out

20  corresponding data for the named plaintiffs.

21      So in that capacity, there had been efforts to

22  understand the data flows and where things live, but it's

23  more -- our focus and effort was to actually get to the

24  underlying data and pull it out, almost moving past the how

25  it got there but really where it is and how do we get it

22

1 back out.

2        MR. SCHAPIRO:  And, your Honor, may I say

3 something about Calhoun, just to be clear?  There's nothing

4 about Real-time Bidding in that case.

5        MS. WEAVER:  Well, I think that's disputed.  The

6 revenues that Google makes in the auction through the

7 Real-time Bidding auction are revenues that are reflected in

8 plaintiffs' logs that Mr. Brush helped us identify for the

9 named plaintiffs.

10     It's highly technical.  And re-creating this whole

11 process again in Real-time Bidding will be expensive,

12 costly, and there is no way it will happen before July 11.

13 We're still in process after the discovery cutoff in

14 Calhoun.

15     So that's one example of efficiencies.  If we searched

16 for the words "real-time bidding" in the document production

17 in Calhoun -- I have not done that because I have felt

18 proscribed -- I can tell you there will be many, many hits.

19 You know, there's a million documents there.  And we have

20 seen a lot of documents that relate exactly to what's at

21 issue here.

22     In addition, the consent question of the mechanisms by

23 which Google contends in Calhoun that it obtains consent

24 from users, those arguments will be similar if not

25 completely overlapping in this case.

23

1    So damages are the same.  Consent is the same.  The

2 procedures for identifying named plaintiffs' data will be

3 the same.  There's some other edges on the periphery.

4         MR. SCHAPIRO:  Your Honor, we're already in a very

5 high level of generality here.  You won't be surprised to

6 hear that in any privacy case, consent is an issue.  But if

7 the fact that consent is an issue in both privacy cases

8 means that the work that Magistrate Judge DeMarchi has done,

9 you know, essentially needs to all be revisited or that

10 there's going to be -- whether we call it cross use or

11 whatever we want to call it -- a dissolution of the

12 protective order here, that would be the case in any

13 protective order.

14    I'm sure Ms. Weaver and I are probably going to

15 disagree on this, but the overlap between the Real-time

16 Bidding case and in this case is minuscule.

17    I do believe -- I mean obviously, we're sort of

18 strangers to the RTB case here, but the magistrate judges in

19 this case who have dug into this with their sleeves rolled

20 up are those who are best situated to resolve this.  And --

21         THE COURT:  Well, the problem is that I don't have

22 a magistrate judge who knows both.  That's the problem.

23         MR. SCHAPIRO:  It may well be, your Honor, but as

24 I understand it, what was presented to Judge DeMarchi,

25 whether was precisely this question or a somewhat different

24

1  version of this question, was the question about --

2  essentially about overlap.  And Judge DeMarchi ruled on

3  that.

4      The plaintiffs in that case did not appeal.  There

5  would have been obviously a different standard of review if

6  they had.  And now here we are right before what I gather is

7  the close of discovery in that case and we're at the close

8  of discovery in Calhoun with this new proposal.

9      But, as I say --

10          THE COURT:  Well, it doesn't affect Calhoun,

11  right?

12          MR. GUTKIN:  Your Honor, if I could jump in with a

13  couple of points just to respond to what was just said.

14      The log -- Ms. Weaver is talking about the efficiencies

15  of bringing in Mr. Brush because he has been studying

16  various logs that have to do with the Calhoun action.

17      The Calhoun action is about data that Google collects

18  when a user in Chrome is in a certain state of their Chrome

19  browser.

20      The RTB action is about what data Google allegedly

21  shares with third parties through one particular product.

22  The log that tracks that data of what's shared with third

23  parties through one particular product, there is one central

24  log, and I do not believe it's at issue in any way in the

25  Calhoun action.  The log is called the "call-out proxy log,"

25

1  and I do not believe that will be a name that -- I don't

2  believe that's at issue before the special master process.

3      So we're not talking about overlapping sets of data.

4      And I want to emphasize again, the plaintiffs could

5  have brought this motion at the beginning of discovery last

6  year when they have continuously raised it with us.  And

7  instead they had Google expend all of the energy to have all

8  of this motion practice.

9      They had Judge DeMarchi expend all of the energy to

10 resolve all of these disputes.  And they did not come to

11 your Honor or Judge Koh at the time and say:  We need to

12 have this information in both cases, to get the right

13 discovery rulings.

14     THE COURT:  So why not?  Why not?  Why are we here

15 at the eleventh hour?

16     MS. WEAVER:  Your Honor, I can address that.

17     We did bring the motion that they have pointed to where

18 she said you don't get the discovery requests.  We've been

19 trying to play the game Google's way in this case with this

20 magistrate judge, and now it is June 1st and we have an

21 extended July 11th cutoff and we have 50,000 documents.

22     I am the one person in this hearing who knows what was

23 produced in both cases, and I can tell you as an officer of

24 the Court on my own integrity, there is significant overlap.

25 And if we search just for RTB it would be -- we would get

26

1  an -- and it will leapfrog this case.

2      Let me talk about efficiencies and depositions.  We

3  took a lot of depositions in this case, including of the

4  very person Mr. Gutkin said wasn't relevant.  And I hope I

5  have the Court's permission to be little specific here.

6      She discussed the Real-time Bidding auction process.

7  Getting that alone so that my team who I am working with, my

8  co-counsel can read the deposition transcript and understand

9  what's at issue will move us ahead, and maybe we can try to

10 meet the July 11th deadline.  They don't even have to

11 produce the documents --

12          THE COURT:  All right.  This is what I need.

13     I need a brief from you, not to exceed 12 pages, that

14 identifies with specificity what it is you think you know in

15 Calhoun and how it applies to RTB.  It shall be filed -- it

16 shall be filed under seal in Calhoun so that Mr. Levine does

17 not have access to it.  You shall serve Mr. Gutkin with that

18 brief.

19     Mr. Gutkin and/or Mr. Schapiro, I don't really care

20 who, can respond.

21     And then you can reply.

22     A response shall not exceed 12 pages.

23     I will confer with both of the magistrate judges once I

24 receive that document and the response to determine what

25 will happen.

27

1     When can you get the document on file?

2          MS. WEAVER:  It is -- by Monday, your Honor.

3          THE COURT:  All right.  When do the defendants

4  want to respond?  You have no more than a week to do it.

5  Twelve pages, that's all you get.  Do you want the full

6  week?

7          MR. GUTKIN:  Yes, your Honor.  Absolutely.  The

8  full -- I would love to get the -- the full week is fine.

9          THE COURT:  All right.  June 8th, June 15th.  Did

10  I say you get a reply?

11          MS. WEAVER:  Yes, you did.

12          THE COURT:  You can have until the 18th.  It's a

13  Saturday, but it's a long weekend.  We won't be in on

14  Monday.

15          MS. WEAVER:  We can handle that, your Honor.

16          THE COURT:  Six pages to reply.

17     I'll then be in touch.  And if that means I have to

18  revise deadlines, so be it.

19     What I'm not interested in is getting through this

20  whole case or losing months, only to then find out later

21  that Google has somehow withheld relevant information or has

22  somehow misled Judge DeMarchi and that I've got to open up

23  the whole thing again.

24     I'm not interested in that.

25     All right.  That's all I have.  Anything else you want?

28

1          MR. LEVINE:  Not for plaintiffs, your Honor.

2   Thank you very much.

3          THE COURT:  Mr. Gutkin?

4          MR. GUTKIN:  No, your Honor.  Thank you.

5          THE COURT:  Mr. Schapiro?

6          MR. SCHAPIRO:  Nothing, your Honor.

7          THE COURT:  Mr. Brush, thank you very much.

8          MR. BRUSH:  Thank you, your Honor.

9          THE COURT:  Ms. Weaver, Ms. Crawford, thank you.

10  I'll be in touch.  Thank you.

11         MS. WEAVER:  Thank you, your Honor.

12         MR. SCHAPIRO:  Thank you, your Honor.

13      (Proceedings adjourned at 12:04 p.m.)

14

15

16

17

18

19

20

21

22

23

24

25

29

<u>CERTIFICATE OF TRANSCRIBER</u>

    I certify that the foregoing is a true and correct transcript, to the best of my ability, of the above pages of the official electronic sound recording provided to me by the U.S. District Court, Northern District of California, of the proceedings taken on the date and time previously stated in the above matter.

    I further certify that I am neither counsel for, related to, nor employed by any of the parties to the action in which this hearing was taken; and, further, that I am not financially nor otherwise interested in the outcome of the action.

                    Echo Reporting, Inc., Transcriber

                      Thursday, June 2, 2022