```
 1                  UNITED STATES DISTRICT COURT
                  NORTHERN DISTRICT OF CALIFORNIA
 2                       OAKLAND DIVISION


 3


 4                                    )  C-21-02155 YGR
         IN RE GOOGLE RTB CONSUMER    )
 5       PRIVACY LITIGATION,          )  SAN JOSE, CALIFORNIA
                                      )
 6                                    )  JANUARY 31, 2023
                                      )
 7       _____)  PAGES 1-57


 8


 9                  TRANSCRIPT OF PROCEEDINGS
            BEFORE THE HONORABLE VIRGINIA K. DEMARCHI
10              UNITED STATES MAGISTRATE JUDGE


11       A P P E A R A N C E S:


12       FOR THE PLAINTIFFS:    PRITZKER LEVINE LLP
                                BY:  JONATHAN K. LEVINE
13                              1900 POWELL STREET, SUITE 450
                                EMERYVILLE, CALIFORNIA  94608
14
                                BLEICHMAR FONTI & AULD LLP
15                              BY:  JOSHUA D. SAMRA
                                     ANNE K. DAVIS
16                              555 12TH STREET, SUITE 1600
                                OAKLAND, CALIFORNIA  94607
17
                                SIMONS HANLY CONROY LLP
18                              BY:  JASON "JAY" BARNES
                                112 MADISON AVENUE, 7TH FLOOR
19                              NEW YORK, NEW YORK  10016

20       FOR THE DEFENDANT:     COOLEY LLP
                                BY:  WHITTY SOMVICHIAN
21                                   JEFFREY M. GUTKIN
                                3 EMBARCADERO CENTER, 20TH FLOOR
22                              SAN FRANCISCO, CALIFORNIA  94111

23       OFFICIAL COURT REPORTER:    LEE-ANNE SHORTRIDGE, CSR, CRR
                                     CERTIFICATE NUMBER 9595
24


25             PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
                  TRANSCRIPT PRODUCED WITH COMPUTER
```

```
 1        SAN JOSE, CALIFORNIA                    JANUARY 31, 2023

 2                       P R O C E E D I N G S

 3          (COURT CONVENED AT 10:41 A.M.)

 4              THE CLERK:  CALLING CASE 21-CV-2155, IN RE: GOOGLE

 5      RTB CONSUMER PRIVACY LITIGATION, ON FOR MOTION TO COMPEL

 6      HEARING, DISCOVERY MATTERS.

 7              PLEASE BEGIN YOUR APPEARANCES FOR THE RECORD.  THANK YOU.

 8              MR. LEVINE:  GOOD MORNING, YOUR HONOR.

 9          JONATHAN LEVINE, PRITZKER LEVINE, FOR THE PLAINTIFFS.  I

10      HAVE WITH ME JOSH SAMRA FROM BLEICHMAR FONTI, ANNE DAVIS FROM

11      BLEICHMAR FONTI, AND JAY BARNES FROM SIMONS HANLY CONROY.

12              MR. SAMRA IS GOING TO BE ARGUING THE PRIVILEGE MOTION, AND

13      I'M GOING TO BE PRIMARILY ADDRESSING ANY DISCUSSION ON THE

14      CLARIFICATION ISSUE.  IF IT GOES INTO ISSUES THAT WERE FROM THE

15      SEALED HEARING LAST TIME, MR. BARNES MAY BE CHIMING IN AS WELL.

16              THE COURT:  OKAY.  ALL RIGHT.  THANK YOU VERY MUCH.

17              MR. SOMVICHIAN:  GOOD MORNING, YOUR HONOR.

18          WHITTY SOMVICHIAN WITH COOLEY, AND I'LL BE ADDRESSING THE

19      MOTION TO COMPEL AND THE PRIVILEGE LOG ISSUES TODAY.

20              THE COURT:  OKAY.  THANK YOU.

21              MR. GUTKIN:  JEFF GUTKIN, YOUR HONOR, ALSO FROM

22      COOLEY, AND I'LL BE ADDRESSING THE MOTION FOR CLARIFICATION.

23              THE COURT:  OKAY, GREAT.  THANK YOU.

24          AND AS YOU ALL KNOW, YOU CAN ARGUE FROM A SEATED POSITION

25      AT THE TABLE.  JUST MAKE SURE THE MICROPHONE IS IN FRONT OF YOU
```

1      WHEN YOU'RE SPEAKING.

2            I'M GOING TO DEAL WITH THE MOTION TO COMPEL ISSUE FIRST.

3            SO THIS MOTION -- AND I WILL ALSO DEAL WITH THE

4      CLARIFICATION ISSUE AT THE END, BUT FOR THE PURPOSES OF THE

5      MOTION TO COMPEL, I'M GOING TO VIEW IT AS HAVING TWO PARTS.

6      THE FIRST IS ADDRESSING THE MERITS OF THE PRIVILEGE CLAIM AT

7      ISSUE; AND THEN WE WILL BE DISCUSSING FURTHER PROCEEDINGS THAT

8      MAY OR MAY NOT BE NECESSARY TO ADDRESS THE REST OF THE PARTIES'

9      DISPUTES ABOUT THE PRIVILEGE LOG.

10            SO THAT'S WHAT I PLAN TO DO.

11            SO FOR PURPOSES OF THE MOTION, THERE WERE TEN DOCUMENTS AT

12      ISSUE IN THE INITIAL MOTION.  I UNDERSTAND ONE IS NO LONGER IN

13      DISPUTE.  THAT'S THE ONE THAT'S LOGGED AT DOCKET 1 -- SORRY --

14      DOCUMENT NUMBER 1095.

15            I'VE REVIEWED THE BRIEFING AND THE DOCUMENTS SUBMITTED BY

16      GOOGLE IN CAMERA, AND I THOUGHT I WOULD START BY SHARING MY

17      IMPRESSIONS SO THAT THE PARTIES CAN FOCUS THEIR ARGUMENTS.

18            I'M GOING TO REFER TO THESE DOCUMENTS BY NUMBER.

19            MR. SOMVICHIAN:  EXCUSE ME, YOUR HONOR.  WE WOULD

20      MAKE A REQUEST TO SEAL THE COURTROOM.

21            THE COURT:  YES.  OKAY, I'LL ADDRESS THAT.

22            I DON'T THINK THERE WILL BE ANY NEED TO SEAL THE COURTROOM

23      FOR PURPOSES OF HOW WE'RE GOING TO CONDUCT THE HEARING.

24            IN THE FUTURE, IF A PARTY HAS A REQUEST TO SEAL THE

25      COURTROOM FOR SOME REASON -- AND SOMETIMES IT'S OBVIOUS, BUT

1    SOMETIMES IT'S NOT -- YOU NEED TO MAKE THE REQUEST ON THE

2    RECORD IN ADVANCE, BECAUSE JUST DOING IT BY EMAIL THE DAY

3    BEFORE IS NOT REALLY GOOD PRACTICE.  IT'S DISRUPTIVE OF THE

4    COURT'S ABILITY TO CONDUCT THE OTHER MATTERS I HAVE ON MY

5    CALENDAR, AND IT'S ALSO DISRUPTIVE TO MEMBERS OF THE PUBLIC WHO

6    ARE PLANNING TO BE HERE, OR NOT.

7        SO JUST FOR FUTURE REFERENCE, JUST CONFER WITH EACH OTHER

8    AND FILE SOMETHING SOONER RATHER THAN LATER IF YOU NEED

9    SOMETHING TO BE UNDER SEAL.

10       I DON'T THINK WE NEED THE COURTROOM TO BE SEALED FOR HOW

11   WE'RE GOING TO CONDUCT OURSELVES HERE.  IF ANY PARTY FEELS THAT

12   THEY ARE GOING TO HAVE TO DISCLOSE SOMETHING IN ORDER TO ANSWER

13   A QUESTION OR ARGUE A POINT, LET ME KNOW AND I WILL CONSIDER IT

14   AT THE TIME.  BUT I REALLY DON'T THINK THAT'LL BE NECESSARY.

15   OKAY?

16           MR. SOMVICHIAN:  UNDERSTOOD, YOUR HONOR.  THANK YOU.

17           THE COURT:  OKAY.  WHERE WAS I?

18       ALL RIGHT.  SO LET ME SHARE MY IMPRESSIONS HAVING REVIEWED

19   DOCUMENTS IN CAMERA, AND I'M REFERRING TO THE DOCUMENTS BY

20   THEIR DOCKET -- DOCUMENT NUMBER ON THE LOG.

21       THERE ARE FOUR DOCUMENTS, 285, 1231, 1262, AND 3265, THAT

22   I'VE REVIEWED IN CAMERA AND FOR WHICH I THINK THE PRIVILEGE

23   CLAIM IS PROPER ON THE FACE OF THE DOCUMENT AND IS CONSISTENT

24   WITH HOW THAT DOCUMENT HAS BEEN LOGGED.

25       I'M NOT PERSUADED THAT THE FACT OF CIRCULATING THE

1    DOCUMENT TO A DISTRIBUTION LIST, OR DISTRIBUTION LISTS, THAT IS

2    LIMITED TO EMPLOYEES OF THE COMPANY, REGARDLESS OF THE SIZE OF

3    THE LIST OR REGARDLESS OF WHETHER GOOGLE CAN PRECISELY DEFINE

4    EXACTLY WHO WAS ON THAT LIST AT THE TIME THE DOCUMENT WAS

5    CIRCULATED, UNDERMINES THE PRIVILEGE CLAIM.

6        SO AS TO THOSE FOUR, I'M PREPARED TO FIND THAT THE

7    PRIVILEGE CLAIM SHOULD BE SUSTAINED.

8        THERE ARE FIVE DOCUMENTS THAT ARE MORE DIFFICULT.  THESE

9    ARE THE ONES LISTED ON THE LOG AT NUMBER 4, 41, 660, 2813, AND

10   9955.

11       SO FOR THE MOST PART, THE PRIVILEGE CLAIM AS TO THESE

12   DOCUMENTS IS NOT CLEARLY PROPER FROM THE FACE OF THE DOCUMENT

13   ITSELF OR FROM THE LOG.  THERE IS MINIMAL EXPLANATION IN THE

14   BRIEF FROM GOOGLE ABOUT IT, AND THERE'S NO SUPPORTING

15   DECLARATION, SO THERE'S REALLY NO WAY FOR ME TO CONCLUDE THAT

16   THESE DOCUMENTS ARE, IN FACT, PRIVILEGED.

17       AND SO I'M INCLINED TO NOT SUSTAIN THE PRIVILEGE CLAIM AS

18   TO THOSE DOCUMENTS, WITH THE EXCEPTION OF MAYBE, YOU KNOW,

19   THERE'S A STRAY REFERENCE IN ONE OR TWO OF THESE THAT COULD BE

20   LEGITIMATELY CLAIMED AS A REFERENCE TO SOME SORT OF PRIVILEGED

21   COMMUNICATION.

22       SO THAT'S HOW I'M VIEWING THE DOCUMENTS BASED ON THE

23   BRIEFING, AND I HOPE THAT'S HELPFUL FOR YOU IN FOCUSSING YOUR

24   ARGUMENTS.

25       AS I SAID, I'LL HEAR FIRST FROM THE PLAINTIFFS AND THEN

1      I'LL HEAR FROM GOOGLE.

2           MR. SAMRA?

3                MR. SAMRA:  THANK YOU, YOUR HONOR, AND I APPRECIATE

4      YOU GIVING YOUR THOUGHTS.  THAT IS VERY HELPFUL TO UNDERSTAND

5      WHERE THE COURT IS AT.

6           FIRSTLY, I DO WANT TO REITERATE THAT THESE ARE

7      REPRESENTATIVE SAMPLES, AND BASED OFF OF, YOU KNOW, WHERE WE'RE

8      AT JUST GOING INTO THE BRIEFING, GOOGLE HAD REVISED AND

9      NARROWED ITS CLAIM OVER 50 PERCENT OF THE REPRESENTATIVE

10     SAMPLE.

11               THE COURT:  LET ME JUST PAUSE YOU THERE.

12          I WILL UNDERTAKE CONSIDERATION OF THOSE MATTERS WHEN WE

13     TALK ABOUT FURTHER PROCEEDINGS AT THE END, SO IF YOU COULD JUST

14     SKIP THAT PART.  I UNDERSTAND YOUR POINT.  YOU'RE UPSET THAT

15     THERE HAVE BEEN SO MANY REVISIONS AND WITHDRAWALS AND WHATEVER.

16     I GET THAT.  WE'LL ATTEND TO THAT IN A MOMENT.

17          SO LET'S FOCUS ON THE MERITS FIRST FOR THESE EIGHTEEN, OR

18     TEN, OR NINE.  I GUESS WE'RE DOWN TO NINE.

19               MR. SAMRA:  ABSOLUTELY, YOUR HONOR.

20          AND WITH RESPECT TO THESE NINE, I THINK YOUR HONOR HAS HIT

21     THE NAIL ON THE HEAD THAT THERE ARE A SIGNIFICANT AMOUNT OF

22     THESE DOCUMENTS THAT HAVE NO INDICATION OF PRIVILEGE AND THAT

23     THEY ARE LOGGED AS PRIVILEGED AS RELATING TO LEGAL ADVICE, BUT

24     REALLY, WHEN YOU LOOK AT THEM -- AND YOUR HONOR HAS HAD THE

25     BENEFIT OF REVIEWING THEM IN CAMERA -- THERE'S NO INDICIA THAT

1    SHOWS IT'S RELATING TO SEEKING OR OBTAINING LEGAL ADVICE, WHICH

2    IS THE STANDARD.

3        AND JUST BECAUSE IN-HOUSE COUNSEL IS COPIED ON THESE

4    DOCUMENTS, IT DOES NOT MEAN THAT THEY'RE PRIVILEGED PER SE.  IN

5    FACT, THAT INVITES HEIGHTENED SCRUTINY.

6        AND WHAT WE'RE SEEING IS THAT GOOGLE IS NOT APPLYING THAT

7    HEIGHTENED SCRUTINY IN MAKING ITS PRIVILEGE SCREEN.

8        WITH RESPECT TO THE FOUR DOCUMENTS, I DO WANT TO ADDRESS

9    THE FOUR DOCUMENTS THAT YOUR HONOR FIRST MENTIONED AS BEING

10   PROPERLY PRIVILEGED.

11       I DO WANT TO ADDRESS THE DISTRIBUTION LIST ISSUE.

12           THE COURT:  UM-HUM.

13           MR. SAMRA:  I DO THINK THAT COURTS HAVE ROUTINELY

14   FOUND, WHERE A WITHHOLDING PARTY CANNOT IDENTIFY THE ACTUAL

15   RECIPIENTS OF THE COMMUNICATION AT THE TIME IT WAS SENT, THEN

16   THEY CANNOT CLAIM PRIVILEGE OVER IT, AND THAT IS BECAUSE THEY

17   CANNOT SHOW THAT THE RECIPIENTS NEEDED TO KNOW THE INFORMATION

18   TO OBTAIN OR SEEK LEGAL ADVICE.

19           THE COURT:  UM-HUM.  THAT -- I UNDERSTAND THAT

20   PROPOSITION, BUT I DON'T THINK IT'S REALLY APPLICABLE HERE OR

21   PRACTICALLY MAKES SENSE HERE WHERE YOU HAVE DOCUMENTS THAT ARE

22   VERY OLD, THERE'S A HUGE VOLUME, AND IT'S A MASSIVE COMPANY.

23       SO THE -- YOU KNOW, THE GUIDANCE THAT I CITED IN MY

24   PREVIOUS ORDER ABOUT -- FROM THE ADVISORY COMMITTEE NOTES ARE

25   INFORMING MY THINKING ON THIS POINT.

 1          AND MY PRINCIPAL CONCERN IS TO BE CERTAIN, OR HAVE AT

 2     LEAST SOME KIND OF BASIS TO BE ABLE TO MAKE A DETERMINATION

 3     THAT WHATEVER THESE LISTS WERE, THEY WERE INTERNAL ONLY.  THEY

 4     WERE NOT PUBLIC, THEY DIDN'T INCLUDE A BUNCH OF OTHER PEOPLE

 5     WHO MIGHT, YOU KNOW, GET THEM BY WAY OF FORWARDING.

 6          THAT'S THE PRINCIPAL CONCERN, AND THEN I'M FOCUSSED ON THE

 7     CONTENT OF WHAT THE DOCUMENT IS, BECAUSE AS A PRACTICAL MATTER,

 8     WHILE YOUR OBSERVATIONS ABOUT THE LAW ARE CORRECT, THOSE THINGS

 9     ARISE IN CONTEXTS WHERE WE DON'T HAVE THIS KIND OF CIRCUMSTANCE

10     WITH EMAIL AND HOW IT GETS USED AS A PRACTICAL MATTER WITHIN A

11     COMPANY.

12          THAT'S MY IMPRESSION OVERALL OF HOW THE CASE LAW GOES.

13          MR. SAMRA:  I UNDERSTAND, AND I DO JUST WANT TO MAKE

14     TWO POINTS:  THAT, FIRST, IT IS GOOGLE'S BURDEN TO ESTABLISH

15     THESE DOCUMENTS ARE PRIVILEGED.

16          THE COURT:  UM-HUM.

17          MR. SAMRA:  AND THAT GOOGLE DOESN'T HAVE THE RECORDS,

18     IT DIDN'T MAINTAIN THE RECORDS OF PEOPLE WHO RECEIVED THESE

19     COMMUNICATIONS.

20          WELL, THAT'S GOOGLE'S PROBLEM, RIGHT?

21          THE COURT:  SO YOU'RE SUGGESTING THAT UNLESS A

22     COMPANY MAINTAINS A DATE SPECIFIC RECORD OF WHO IS ON A

23     DISTRIBUTION LIST AT ANY GIVEN TIME, THAT IF THAT DISTRIBUTION

24     LIST IS COPIED WITH A PRIVILEGED COMMUNICATION FROM A LAWYER,

25     THE PRIVILEGE IS WAIVED?

1    MR. SAMRA:  I THINK -- I'M SORRY, YOUR HONOR.  I

2  DIDN'T QUITE FOLLOW THE SECOND PART OF THAT.

3    THE COURT:  A COMPANY WOULD HAVE TO KEEP A RECORD ON

4  EVERY SINGLE DATE OF WHO WAS -- WHO ARE THE MEMBERS OF A

5  DISTRIBUTION LIST INTERNAL TO THE COMPANY SO THAT LATER, IF

6  CHALLENGED DOWN THE ROAD, IT COULD SAY, ON THIS DATE, IT HAD

7  THESE MEMBERS; ON THIS DATE, IT HAD THESE OTHER MEMBERS.

8    YOU'D HAVE TO KEEP THAT KIND OF RECORD LEST YOU WAIVE YOUR

9  PRIVILEGE BY SOME DAY NOT BEING ABLE TO RECONSTRUCT THAT LIST

10  AT THAT PRECISE TIME.

11    MR. SAMRA:  RIGHT.

12    I DON'T THINK THEY NECESSARILY HAVE TO SHOW IT AT THE

13  PRECISE TIME.

14    BUT WE'RE TALKING ABOUT COMMUNICATIONS THAT WERE SENT OVER

15  THREE AND A HALF YEARS AGO, AND THE FACT IS WE HAVE NO

16  INFORMATION ABOUT HOW THE MEMBERSHIP CHANGED OR WHETHER THE

17  PURPOSE OF THESE MEMBERSHIP LISTS CHANGED SINCE THEY WERE USED.

18    THE COURT:  BUT YOU DO HAVE INFORMATION ABOUT WHAT

19  THE PURPOSE OF THE MEMBERSHIP LIST WAS, WHAT IT -- WHAT

20  DEPARTMENT IT WAS FOR, WHAT IT WAS ABOUT, WHO THE MEMBERS --

21  YOU KNOW, WHY ARE THOSE MEMBERS ON THAT LIST.  I MEAN, YOU HAVE

22  SOME INFORMATION.

23    MR. SAMRA:  WE DO HAVE SOME LIMITED INFORMATION THAT

24  GOOGLE HAS PROVIDED PURSUANT TO YOUR HONOR'S PREVIOUS ORDER.

25    THE COURT:  OKAY.  AND DOES THAT INFORMATION GIVE YOU

```
1     ANY CAUSE TO THINK THAT THE INFORMATION WAS DISCLOSED OUTSIDE

2     THE COMPANY?

3              MR. SAMRA:  NO, YOUR HONOR.  GOOGLE HAS CONFIRMED

4     THAT THESE LISTS INCLUDE INTERNAL MEMBERS ONLY.

5         I THINK THE CONCERN IS THAT THEY WERE SO WIDELY

6     DISTRIBUTED.  SOME OF THEM PRESENTLY INCLUDE HUNDREDS OF

7     RECIPIENTS, AND IF YOU ADD THEM UP TOGETHER, IT'S WELL OVER 300

8     RECIPIENTS FOR SOME OF THESE COMMUNICATIONS, AND GOOGLE HAS NOT

9     MADE A SUFFICIENT SHOWING THAT EVERY MEMBER OF THESE

10    COMMUNICATIONS NEEDED TO KNOW THEM AT THE TIME OF THE

11    COMMUNICATION IN ORDER TO SEEK OR OBTAIN LEGAL ADVICE.

12             THE COURT:  AND YOU THINK THAT'S THE STANDARD IS THAT

13    A COMPANY SHOULD BE ABLE TO RECONSTRUCT, THREE AND A HALF YEARS

14    LATER, THAT EVERY SINGLE MEMBER OF THAT LIST HAD A NEED TO

15    KNOW?

16             MR. SAMRA:  I THINK IF YOU -- IF GOOGLE COULD PROVIDE

17    INFORMATION ABOUT WHETHER THIS MEMBERSHIP LIST CHANGED AND HOW,

18    THAT WOULD GO A LONG WAY.

19        I'M TRYING TO BE PRACTICAL AS WELL, YOUR HONOR.  I

20    UNDERSTAND THAT IT IS AWHILE AGO AND GOOGLE -- WE ARE WHERE WE

21    ARE, RIGHT, AND GOOGLE DIDN'T MAINTAIN THESE.

22        BUT, YOU KNOW, I DO THINK THAT IS THE STANDARD AND THAT

23    COURTS HAVE SAID, WHERE YOU CAN, IDENTIFY THE RECIPIENTS AND

24    THEY ARE NOT PRIVILEGED.

25             THE COURT:  WHAT DO YOU THINK IS YOUR BEST CASE THAT
```

1    MOST CLOSELY MATCHES THIS SCENARIO?

2         MR. SAMRA:  I THINK IT WOULD BE THE CHRIMAR -- EXCUSE

3    ME A MOMENT -- EXCUSE ME.

4         I THINK IT WOULD BE IN RE: EXAMINATION OF PRIVILEGE, WHICH

5    IS OUT OF THE WESTERN DISTRICT OF WASHINGTON.

6         THE COURT:  OKAY.

7         MR. SAMRA:  AND, YOU KNOW, THE SPECIAL MASTER

8    THERE -- OR I'M SORRY.  THE MAGISTRATE JUDGE THERE FOUND THAT

9    THE WITHHOLDING PARTY'S GENERAL EXPLANATION THAT A WIDE

10   MEMBERSHIP TEAM NEEDED TO KNOW THE INFORMATION JUST WASN'T

11   SUFFICIENT BECAUSE IT WAS A GENERAL CURSORY EXPLANATION OVER

12   WHY THIS DISTRIBUTION LIST NEEDED TO KNOW THE PURPORTEDLY

13   PRIVILEGED INFORMATION.

14        THE COURT:  OKAY.  ALL RIGHT.  THANK YOU.

15        ALL RIGHT.  GO AHEAD.  ANYTHING ELSE YOU'D LIKE TO ARGUE

16   ON THE MERITS?

17        MR. SAMRA:  I THINK WITH RESPECT TO SOME OF THESE

18   ENTRIES, THERE IS SOME GENERAL INFORMATION PROVIDED, SUCH AS

19   THE DOCUMENTS RELATED TO PRIVACY ISSUES.

20        AGAIN, YOUR HONOR HAS HAD THE BENEFIT OF REVIEWING THESE

21   DOCUMENTS IN CAMERA, BUT I DO -- AND I THINK THAT WILL COME UP

22   LATER REGARDING HOW TO PROCEED.

23        BUT I DO WANT TO FLAG THAT, YOU KNOW, AS THE PARTY

24   OBTAINING THE PRIVILEGE LOG, SOMETHING LIKE PRIVACY ISSUES IS

25   JUST A GENERAL STATEMENT.  THERE'S NO WAY TO UNDERSTAND WHETHER

```
 1        OR NOT THAT ACTUALLY RELATES TO BUSINESS OR LEGAL ADVICE.

 2             AND IN SOME OF THESE INSTANCES, LIKE IF YOU LOOK AT

 3        ENTRY 285, WHICH YOUR HONOR HAS INDICATED YOU BELIEVE IS

 4        PROPERLY PRIVILEGED, THAT WAS INDICATED AS SOMETHING THAT WAS

 5        RELATING TO PRIVACY ISSUES, AND WE HAD NO UNDERSTANDING OF WHAT

 6        IT RELATED TO.

 7             BUT UPON BRIEFING THIS ISSUE, WE UNDERSTOOD MORE

 8        INFORMATION ABOUT IT BECAUSE GOOGLE PROVIDED THAT.

 9                  THE COURT:  RIGHT.

10                  MR. SAMRA:  AND SO I THINK THAT THAT KIND OF GETS TO

11         THE CRUX OF, LIKE, MAYBE OUR CHALLENGES WOULD BE ABLE TO BE

12         RESOLVED IF WE DID HAVE MORE INFORMATION ABOUT SOME OF THESE

13         LOGGED DOCUMENTS.

14             BUT WE HAVEN'T HAD THAT AND IT'S TAKEN BRIEFING AND YOUR

15         HONOR'S ORDER TO GET THAT FAR.

16                  THE COURT:  RIGHT.  OKAY.

17             ANYTHING ELSE ON THE MERITS ISSUE?

18                  MR. SAMRA:  NO, YOUR HONOR.

19                  THE COURT:  OKAY.  THANK YOU.

20             SO LET ME HEAR FROM GOOGLE ON THE QUESTION OF THE MERITS.

21                  MR. SOMVICHIAN:  THANK YOU, YOUR HONOR.

22             VERY BRIEFLY ON THE DISTRIBUTION LIST ISSUE, WE AGREE,

23         THERE'S NO BASIS FOR THE ARGUMENT THAT MERELY TRANSMITTING

24         DOCUMENTS TO A DISTRIBUTION LIST CAN SOMEHOW UNDERMINE THE

25         PRIVILEGE SIMPLY BECAUSE OF THE FACT THAT THERE'S NOT
```

1          HISTORICAL TRACKING OF THE SPECIFIC INDIVIDUALS ON THE LIST.

2              GOOGLE CAN'T RECREATE PARTICULAR SNAPSHOTS IN TIME AS TO

3      WHO WAS ON THE DISTRIBUTION LIST.

4              WE'VE GIVEN THEM THE INFORMATION THAT IS AVAILABLE FOR

5      THESE DOCUMENTS.  WE'VE GIVEN THEM THE MEMBERSHIP THAT IS

6      RECORDED.

7                  THE COURT:  UM-HUM.

8                  MR. SOMVICHIAN:  WE'VE ALSO GIVEN THEM A DESCRIPTION

9      OF THE USAGE OF THE MAILING LIST TO INDICATE GENERALLY WHAT

10     BUSINESS TEAMS ARE INVOLVED SO THAT THEY CAN EVALUATE WHAT THE

11     AUDIENCE AND DISTRIBUTION IS.

12                 THE COURT:  UM-HUM.  BUT I THINK ONE OF THE POINTS

13     THAT MR. SAMRA IS MAKING, AND THAT THE PLAINTIFFS MAKE IN THEIR

14     PAPERS, IS THAT THESE DISTRIBUTION LISTS ARE SO LARGE, THEY

15     HAVE SO MANY MEMBERS THAT IT UNDERMINES THE NOTION THAT THE

16     COMMUNICATION IS TRULY PRIVILEGED BECAUSE, OF COURSE, THE

17     PRIVILEGED COMMUNICATION WOULD BE KEPT IN CONFIDENCE AND SUCH

18     WIDE DISTRIBUTION UNDERMINES THAT INTEREST.

19             AND SO ISN'T GOOGLE BEING A LITTLE, YOU KNOW, LOOSE ABOUT

20     THIS AND IT SHOULDN'T BE CONSIDERED PRIVILEGED UNLESS YOU CAN

21     REALLY MAKE THE CASE THAT ALL OF THESE PEOPLE WERE WITHIN SOME

22     CONE OF SILENCE AND NEEDED TO KNOW THIS INFORMATION?

23                 MR. SOMVICHIAN:  WELL, YOUR HONOR, WITH A COMPANY THE

24     SIZE OF GOOGLE AND THE SIZE OF THE TEAMS INVOLVED, EVEN FOR

25     DISCRETE BUSINESS TOPICS, IT'S NOT A SURPRISE, AND SHOULDN'T BE

```
 1        A SURPRISE, THAT THERE ARE TENS OR DOZENS OF PEOPLE ON A

 2        PARTICULAR DISTRIBUTION LIST FOR SOMETHING AS SPECIFIC AS, YOU

 3        KNOW, VIDEO ADS.  THERE ARE MANY PEOPLE ON THAT DISTRIBUTION

 4        LIST, BUT THEY ARE ON THE DISTRIBUTION LIST FOR A SPECIFIC

 5        BUSINESS REASON.

 6             AND THE FACT THAT THOSE INDIVIDUALS ALL HAVE A NEED TO

 7        KNOW LEGAL ADVICE THAT'S BEING DISTRIBUTED TO INFORM THEIR WORK

 8        DOESN'T UNDERMINE THE PRIVILEGE.

 9               THE COURT:  SO THAT'S THE KIND OF INFORMATION I WOULD

10        HAVE EXPECTED TO SEE IN THE SUPPORTING DECLARATION.

11             SO WHILE I'M TELLING YOU MY INITIAL IMPRESSION OF HOW THIS

12        SHOULD GO IS THAT YOU'RE CORRECT THAT THESE FOUR DOCUMENTS ARE

13        PRIVILEGED AND I AM RELUCTANT TO FIND THAT HAVING THEM BE

14        DISTRIBUTED VIA A DISTRIBUTION LIST WITH SO MANY MEMBERS ON IT

15        DOES NOT UNDERMINE THE PRIVILEGE, OR DOES NOT MAKE IT -- HAVE

16        IT BE WAIVED IN SOME WAY, I WAS KIND OF SURPRISED TO NOT SEE A

17        DECLARATION SAYING WHAT YOU JUST DESCRIBED.  THAT'S NORMALLY

18        WHAT YOU NEED TO DO TO -- WHEN A PRIVILEGE CLAIM IS CHALLENGED,

19        THE PRIVILEGE HOLDER HAS THE BURDEN TO ESTABLISH THE PRIVILEGE,

20        AND YOU CAN'T JUST SAY, BUT IT'S NOT INCONSISTENT WITH THE LAW

21        TO CLAIM THIS.  YOU ACTUALLY HAVE TO DO SOMETHING, TO TELL ME

22        WHY IT IS CONSISTENT WITH THE LAW.

23             SO I -- YOU KNOW, I'VE GIVEN YOU MY INITIAL IMPRESSIONS

24        AND YOU'RE AHEAD ON THIS ONE, BUT NEVERTHELESS, I WAS A LITTLE

25        BIT CONCERNED ABOUT THAT.  WHY WAS THERE NO DECLARATION
```

1    SUBMITTED?

2            MR. SOMVICHIAN:  YOUR HONOR, WE DID PROVIDE THE

3    INFORMATION WITH DESCRIPTIONS OF ALL OF THE DISTRIBUTION LISTS

4    TO COUNSEL.

5            THE COURT:  RIGHT.

6            MR. SOMVICHIAN:  SO THEY DID HAVE THAT.

7            THE COURT:  OKAY.  FAIR ENOUGH.  YOU DID DO THAT.

8        BUT I DIDN'T HAVE A -- I DON'T HAVE AN EXPLANATION FROM

9    THE PERSON KNOWLEDGEABLE ABOUT THE DISTRIBUTION LIST IN THE

10   FORM OF A DECLARATION THAT SAYS, IF IT'S CHALLENGED, THIS IS

11   WHAT THIS DISTRIBUTION LIST CONSISTS OF, AND THIS IS WHY THESE

12   PEOPLE NEED TO KNOW THIS INFORMATION.

13       IT'S NOT -- MAYBE IT'S SELF-EVIDENT TO GOOGLE.  IT'S NOT

14   NECESSARILY SELF-EVIDENT TO THE COURT THAT ALL OF THESE PEOPLE

15   NEED TO HAVE THIS INFORMATION.

16       DO YOU SEE WHAT I'M SAYING?

17       SO IT WAS A CONCERN.  I'M SHARING WITH YOU, I'M TROUBLED

18   THAT I DON'T HAVE THAT.

19           MR. SOMVICHIAN:  UNDERSTOOD, YOUR HONOR.

20           THE COURT:  OKAY.

21           MR. SOMVICHIAN:  THE ONLY OTHER POINT I WOULD MAKE

22   ABOUT THAT IS THE DOCUMENTS ON THEIR FACE SHOW, FOR EXAMPLE,

23   PEOPLE BEING ADDED TO A THREAD FOR SPECIFIC REASONS, TO HELP

24   ASSIST IN THE COLLECTION OF INFORMATION OR THEIR EVALUATION OF

25   AN ISSUE --

```
 1                 THE COURT:  UM-HUM.

 2                 MR. SOMVICHIAN:  -- IN CONNECTION WITH LEGAL ADVICE

 3          BEING REQUESTED AND CONVEYED.

 4             SO YOU CAN SEE, ON THE FACE OF THE DOCUMENT AND THE FLOW

 5          OF HOW THE EMAIL CHAINS PROGRESSED, THAT PARTICULAR PEOPLE ARE

 6          BEING ADDED FOR A PARTICULAR NEED.

 7             SO I WOULD POINT THAT OUT AS WELL.

 8                 THE COURT:  AND WE'RE STILL TALKING ABOUT THE FOUR

 9          DOCUMENTS?

10                 MR. SOMVICHIAN:  YES.

11                 THE COURT:  OKAY.

12                 MR. SOMVICHIAN:  YES.

13             AND WITH RESPECT TO THE OTHER DOCUMENTS THAT YOU'VE NOTED,

14          ONE HOUSEKEEPING MATTER.  YOU REFERRED TO 9955.

15                 THE COURT:  YES.

16                 MR. SOMVICHIAN:  I BELIEVE THE CHALLENGE TO THAT HAS

17          BEEN WITHDRAWN PER THE PLAINTIFFS' REPLY BRIEF ON PAGE 13.

18                 THE COURT:  LET ME LOOK.

19             OH, AND THIS IS THE ONE THAT'S -- SO HERE IS MY

20          DIFFICULTY:  THIS IS THE ONE THAT IS WORK PRODUCT.  THERE'S A

21          WORK PRODUCT CLAIM.

22                 MR. SAMRA:  YES, YOUR HONOR.

23                 THE COURT:  OKAY.

24                 MR. SAMRA:  THERE'S AN ATTORNEY-CLIENT AND WORK

25          PRODUCT CLAIM HERE.
```

```
1              THE COURT:  OKAY.  SO WHAT IS THE CURRENT STATUS OF
2     9955 FROM THE PLAINTIFFS' PERSPECTIVE?  I THOUGHT THAT IT WAS
3     JUST THE OBJECTION ABOUT WORK PRODUCT.
4              MR. SAMRA:  THAT'S RIGHT, YOUR HONOR, AND THAT'S
5     BECAUSE WE RECEIVED MORE INFORMATION ABOUT THE REGULATORY
6     INVESTIGATION AT ISSUE HERE, WHICH WE DIDN'T RECEIVE UNTIL
7     GOOGLE'S RESPONSE.
8          AND, AGAIN, THERE ARE HUNDREDS OF DOCUMENTS JUST LIKE THIS
9     ON ITS PRIVILEGE LOG.
10             THE COURT:  SO IS THIS DOCUMENT BEING REDACTED OR
11    WITHHELD IN ITS ENTIRETY?
12             MR. SOMVICHIAN:  THIS WAS WITHHELD.
13             THE COURT:  OKAY.  WELL, IF THERE'S NO DISPUTE ABOUT
14    9955, THEN I WON'T KEEP IT IN THE MIX.  SO LET'S TAKE THAT ONE
15    OUT.
16         SO THEN WE HAVE FOUR DOCUMENTS --
17             MR. SOMVICHIAN:  YES.
18             THE COURT:  -- 4, 41, 660, AND 2813.  AND LET ME PUT
19    A LITTLE BIT OF A FINE POINT ON THIS.
20             MR. SOMVICHIAN:  YES.
21             THE COURT:  LET'S JUST TAKE DOCUMENT 4, FOR EXAMPLE.
22             MR. SOMVICHIAN:  OKAY.
23             THE COURT:  THERE'S NO EXPLANATION OF WHAT THE NATURE
24    OF THIS DOCUMENT IS, WHAT ITS PURPOSE IS.  THIS DOCUMENT IN
25    PARTICULAR HAS BLACK TEXT IN BOLD, THEN GREY TEXT, THEN TEXT IN
```

```
 1        A BOX.  THERE'S NO EXPLANATION ABOUT WHO WROTE WHAT, A LAWYER
 2   WROTE THIS TEXT, SOMEBODY ELSE WROTE THIS OTHER TEXT.
 3        I DON'T KNOW IF THE DOCUMENT WAS SENT TO A LAWYER FOR
 4   REVIEW, WHETHER IT WAS PREPARED WITH THE INTENT TO SEND IT TO A
 5   LAWYER FOR REVIEW.  THERE IS ZERO INFORMATION IN THE BRIEFING
 6   FROM GOOGLE ON THIS.  THERE IS -- THERE IS EXACTLY ONE SENTENCE
 7   DESCRIBING THIS DOCUMENT IN YOUR BRIEFING APART FROM THE
 8   PRIVILEGE LOG.
 9        SO IT'S NOT ENOUGH TO SAY, WELL, THE PRIVILEGE LOG IS
10   ENOUGH ON ITS FACE FOR A PRIMA FACIE CASE.
11        WE'RE BEYOND THE PRIMA FACIE CASE.  THIS DOCUMENT IS BEING
12   CHALLENGED AS NOT PRIVILEGED, AND IT -- AND WHEN I TURN TO THE
13   PRIVILEGE HOLDER TO FIGURE OUT WHETHER IT'S PRIVILEGED AND I
14   HAVE NO INFORMATION, I JUST DON'T SEE HOW I CAN RULE IN YOUR
15   FAVOR ON THAT.
16             MR. SOMVICHIAN:  YOUR HONOR, LET ME ADDRESS 4 AND 41
17   TOGETHER.
18             THE COURT:  OKAY.  YEAH, IT DOES HAVE THE SAME ISSUE
19   AS 41 DOES.
20             MR. SOMVICHIAN:  SO THESE ARE DOCUMENTS, THEY'RE BOTH
21   LABELED PRIVACY DESIGN DOCUMENTS.
22             THE COURT:  I SEE THAT.
23             MR. SOMVICHIAN:  THESE ARE GENERATED IN CONNECTION
24   WITH THE PROCESS BY WHICH A PRODUCT TEAM SEEKS INPUT FROM
25   PRIVATE COUNSEL AND THE PRIVACY WORKING GROUP WITH RESPECT TO
```

1    CERTAIN PRODUCT FEATURES.

2        SO BY -- THE PROCESS IN WHICH THESE ARE GENERATED INVOLVES

3    COUNSEL, AND YOU CAN SEE THAT IN 41.  THERE'S PRODUCT COUNSEL

4    LISTED, SUNNI YUEN.  YOU CAN SEE THAT ON THE FACE OF THE

5    DOCUMENT.

6        THE COURT:  YEAH, LISTED AS ASSIGNED TO IT, RIGHT,

7    ASSIGNED TO THE PROJECT.  IT'S NOT TO, IT'S NOT FROM, IT'S JUST

8    ASSIGNED.  RIGHT?  I CAN SEE THAT FROM THE FACE OF THE

9    DOCUMENT.

10       MR. SOMVICHIAN:  CORRECT.  AND THE CONTENT OF THE

11   DOCUMENT, YOU CAN SEE, YOUR HONOR, INVOLVES PRIVACY ISSUES, AND

12   THERE ARE REFERENCES TO PRIVACY IMPLICATIONS OF CERTAIN

13   PRODUCTS IN THE MIDDLE OF THE PAGE.

14       THE COURT:  BUT NO INDICATION ABOUT LEGAL ADVICE.  I

15   MEAN, THERE'S ALL KINDS -- THIS WHOLE CASE IS ABOUT PRIVACY AND

16   IT'S ALL BEING DISCUSSED IN THE OPEN.  IT DOESN'T MAKE IT

17   NECESSARILY LEGAL ADVICE.

18       SO THIS -- CAN YOU TALK ABOUT NUMBER 4, JUST DOCKET

19   NUMBER 4 FOR A MOMENT?

20       MR. SOMVICHIAN:  YES, YOUR HONOR.

21       THE COURT:  CAN YOU ANSWER MY QUESTION ABOUT THE

22   BLACK TEXT, THE GREY TEXT, AND THE TEXT IN THE BOX?  WHO DID

23   WHAT?  IS THERE A LAWYER COMMUNICATION SOMEWHERE IN HERE?  OR

24   IS THIS JUST PART OF THE FORM?

25       MR. SOMVICHIAN:  THE -- THIS IS A FORM COMPLETED BY

1    THE PRODUCT TEAM TO PROVIDE INFORMATION FOR PRODUCT COUNSEL AND

2    THE PRIVACY WORKING GROUP TO REVIEW.

3            THE COURT:  ALL RIGHT.  SO WHERE IS THAT IN YOUR

4    PAPERS, THAT EXPLANATION THAT THIS IS A DOCUMENT THAT IS THE

5    VEHICLE BY WHICH THE PRODUCT DESIGN TEAM COMMUNICATES WITH

6    COUNSEL ABOUT A PROJECT AND PRIVACY ISSUES RELATED TO IT?

7    LIKE, WHERE IS THAT?  DID I MISS IT?

8            MR. SOMVICHIAN:  WE ADDRESS THAT AT PAGE 9 OF OUR

9    BRIEF, YOUR HONOR.

10           THE COURT:  ALL RIGHT.  THIS IS THE ONE SENTENCE.

11      OKAY.  SO THAT'S IT.  THAT'S NOT REALLY PARTICULARLY

12   HELPFUL.

13           MR. SOMVICHIAN:  CAN I ADDRESS -- CAN I ADDRESS 660,

14   YOUR HONOR?

15           THE COURT:  YES, PLEASE.

16           MR. SOMVICHIAN:  THERE WAS A CONFUSION ON 660.  WE

17   HAD TO RESUBMIT IT.

18           THE COURT:  I HAVE THE RESUBMISSION.  SO I'M GLAD YOU

19   RESUBMITTED IT BECAUSE IT DOESN'T MATCH THE LOG AND I WAS A

20   LITTLE WORRIED.  SO NOW IT MATCHES THE LOG, SO THAT'S HELPFUL.

21           MR. SOMVICHIAN:  AND APOLOGIES FOR THE CONFUSION

22   THERE, YOUR HONOR.

23           THE COURT:  THAT'S OKAY.

24           MR. SOMVICHIAN:  SO IF YOU LOOK ON 660, AGAIN, WE

25   BELIEVE THE PRIVILEGE IS APPARENT IN THE DOCUMENT UPON REVIEW.

```
 1        YOU CAN SEE THERE'S A TABLE WITH NUMBERED ROWS.

 2            THE COURT:  YES, I SEE THAT.

 3            MR. SOMVICHIAN:  SO ROW 5 REFERS TO A NEED TO

 4    EVALUATE CERTAIN ISSUES --

 5            THE COURT:  RIGHT.

 6            MR. SOMVICHIAN:  -- INCLUDING GETTING INPUT FROM

 7    LEGAL.

 8            THE COURT:  WELL, OKAY.  I'M NOT SURE THAT THAT'S --

 9    SO THAT CHARACTERIZATION IS AN EXAMPLE OF SOMETHING THAT'S NOT

10    SELF-EVIDENT TO THE COURT BECAUSE THE ACTUAL TEXT, WHICH I'M

11    NOT GOING TO READ OUT LOUD, COULD REFER TO WHETHER SOMETHING

12    THAT'S WRITTEN IN THE LEGAL SECTION ON GOOGLE'S WEBSITE

13    ADEQUATELY ADDRESSES THE ISSUE.

14        AGAIN, I HAVE ONE SENTENCE IN THE BRIEF, NO DECLARATION

15    ABOUT THIS DOCUMENT, WHAT ITS PURPOSE IS, WHAT THAT REFERENCE

16    MEANS, NOTHING ABOUT IT.

17        SO THERE'S A PASSING REFERENCE THAT INCLUDES THE WORD

18    "LEGAL," AND THAT'S IT.  YOU KNOW, AND THE FACT THAT THERE

19    IS -- THAT THERE IS REFERENCE TO COMPLIANCE WITH THINGS DOESN'T

20    MAKE IT LEGAL ADVICE, OR INFORMATION SEEKING LEGAL ADVICE, OR

21    INFORMATION MEMORIALIZING LEGAL ADVICE.

22        THAT'S JUST WAY TOO BROAD A CONCEPT TO APPLY TO SAY IT'S

23    SELF-EVIDENT FROM THE FACE OF THE DOCUMENT.  I AM TELLING YOU,

24    IT WAS NOT SELF-EVIDENT TO ME FROM THE FACE OF THE DOCUMENT

25    THAT THIS ENTIRE DOCUMENT IS PRIVILEGED.
```

1          MR. SOMVICHIAN:  UNDERSTOOD, YOUR HONOR.

2      I WOULD JUST POINT OUT TWO OTHER ASPECTS OF THIS.  IN THE

3  BACKGROUND SECTION ON THE FIRST PAGE, IT DOES GIVE THE CONTEXT

4  FOR THE ENTIRETY OF THE DOCUMENT, THAT IT'S PREPARED IN

5  PREPARATION FOR IMPLEMENTATION OF GDPR.

6          THE COURT:  YES, OKAY.

7          MR. SOMVICHIAN:  IN ADDITION TO THE ROW THAT I

8  POINTED OUT TO YOU JUST NOW IN ROW 5, WHICH I CONSTRUE AS AN

9  INTENT TO GET LEGAL INPUT ON AN ISSUE, THERE'S ALSO A REFERENCE

10  IN 7 ON A NEED TO RESOLVE AN ISSUE REGARDING GDPR ENFORCEMENT.

11          THE COURT:  SO ALL THOSE THINGS MAY BE TRUE, BUT THEY

12  DON'T NECESSARILY MAKE IT FIT WITHIN THE DEFINITION OF A

13  PRIVILEGED COMMUNICATION.

14      YOU -- PEOPLE WHO ARE NOT SEEKING OR RECEIVING THE ADVICE

15  OF COUNSEL OR MEMORIALIZING THE ADVICE OF COUNSEL CAN TALK

16  ABOUT THESE THINGS, AND I JUST -- I HAVE NOTHING TO GO ON THAT

17  PERSUADES ME THAT THIS DOCUMENT IS PRIVILEGED.

18      AND THAT'S, THAT'S REALLY THE DIFFICULTY I HAVE WITH THE

19  WHOLE -- THIS IS WHY I, I ASKED FOR BRIEFING AND HAD THIS BE

20  DONE AS A MOTION, A REGULARLY NOTICED MOTION, NOT MY EXPEDITED

21  DISCOVERY PROCEDURE, BECAUSE I FELT THAT THE PARTIES NEEDED

22  MORE SPACE AND MORE OF, LIKE, THE TRADITIONAL OPPORTUNITY TO

23  PRESENT INFORMATION TO THE COURT THAT YOU DON'T GET IN THE

24  EXPEDITED DISCOVERY PROCEDURE, AND I JUST DIDN'T GET IT FROM

25  GOOGLE'S SIDE.  I WAS JUST, FRANKLY, MYSTIFIED.

```
 1            SO I'M SORRY TO BE SO -- I DON'T KNOW WHAT TO SAY --

 2    AGGRESSIVE ABOUT THIS ISSUE, BUT IT WAS REALLY CONCERNING TO ME

 3    BECAUSE I FELT LIKE I JUST DIDN'T HAVE THE TOOLS TO SAY, OH,

 4    YEAH, THAT'S -- SURE.

 5            I DON'T HAVE THE TOOLS TO ASSESS IT, EVEN IF I HAD IN

 6    CAMERA REVIEW.  MAYBE YOU'RE ATTRIBUTING TOO MUCH KNOWLEDGE AND

 7    INFORMATION TO THE COURT ABOUT YOUR BUSINESS, BUT I JUST DIDN'T

 8    HAVE THE TOOLS TO DECIDE THIS.

 9            COULD WE MOVE ON TO 2813 AND SEE IF THERE'S ANY, ANYTHING

10    DIFFERENT ABOUT THIS DOCUMENT?

11            MR. SOMVICHIAN:  YOUR HONOR, FOR CONTEXT, YOUR HONOR,

12    THIS IS AN EMAIL THAT'S GENERATED WHEN COMMENTS ARE ADDED TO,

13    TO A DOCUMENT.

14            THE COURT:  UM-HUM, RIGHT.  OKAY.

15            MR. SOMVICHIAN:  THE UNDERLYING DOCUMENT WAS ALSO

16    DETERMINED TO BE PRIVILEGED.

17            BUT THIS EMAIL REFLECTING COMMENTS AGAIN REFERS TO CERTAIN

18    ASPECTS OF GDPR ENFORCEMENT, SO IT'S SIMILAR IN BASIS TO WHAT

19    WE JUST TALKED ABOUT.

20            THE COURT:  SO LET ME ASK A QUESTION.  YOU SAID THE

21    UNDERLYING DOCUMENT IS PRIVILEGED.  THAT WAS ACTUALLY ONE OF MY

22    QUESTIONS.  IS THERE ANY DISPUTE ABOUT THAT?  I MEAN, IS THE

23    UNDERLYING DOCUMENT ALSO LOGGED AND IS THAT A DISPUTED

24    DOCUMENT?

25            MR. SOMVICHIAN:  I BELIEVE IT WAS LOGGED, YOUR HONOR.
```

1            THE COURT:  OKAY.  BUT IS THERE A DISPUTE ABOUT IT?

2    DOES ANYONE KNOW?

3            MR. SOMVICHIAN:  I DON'T KNOW.  IT MIGHT HAVE BEEN ON

4    THE LIST.  THERE'S A 50/50 CHANCE BECAUSE THEY'RE CONTESTING

5    ABOUT HALF OF THE LOG.

6            THE COURT:  RIGHT.  BECAUSE WHAT I WAS WONDERING IS

7    I -- YOU KNOW, THE COMMENTS, AGAIN, NOT SELF-EVIDENT FROM THE

8    FACE OF THE COMMENTS THAT IT -- THAT THE UNDERLYING -- THAT

9    THEY'RE PRIVILEGED.

10        BUT IF THE UNDERLYING DOCUMENT IS PRIVILEGED, THAT WOULD

11   MAKE A DIFFERENCE IN HOW YOU UNDERSTAND THE COMMENTS, BECAUSE

12   IF COMMENTS ARE ON A DOCUMENT THAT IS ITSELF PRIVILEGED, WELL,

13   THAT MIGHT BE SOMETHING.

14        BUT I HAVE TO SAY, THIS ONE CAUSED ME ADDITIONAL CONCERN,

15   WHICH IS THE LOG IDENTIFIES ONE LAWYER AND ONE DOCUMENT

16   RECIPIENT.  THAT LAWYER'S NAME DOESN'T APPEAR ANYWHERE IN THIS

17   DOCUMENT, 2813, AS FAR AS I CAN TELL, AND THERE ARE AT LEAST

18   FOUR OTHER NAMES THAT APPEAR IN THE DOCUMENT THAT AREN'T ON THE

19   LOG, AND THERE'S TEXT THAT SEEMS TO BE ASSOCIATED WITH THOSE

20   OTHER PEOPLE.

21        AND SO JUST USE OF THE TERM "GDPR ENFORCEMENT" DOESN'T

22   REALLY HELP ME MAKE THE DETERMINATION THAT THE DOCUMENT IS

23   PRIVILEGED.  AND AS I SAID, THERE'S NO INFORMATION ABOUT WHAT

24   THE UNDERLYING DOCUMENT IS ABOUT, AND THERE'S NO SUPPORTING

25   DECLARATION, SO HOW AM I SUPPOSED TO MAKE THIS DETERMINATION

1    ABOUT WHETHER IT'S PRIVILEGED OR NOT?

2         MR. SOMVICHIAN:  YOUR HONOR, THE NAME OF THE COUNSEL

3    ASSOCIATED WITH THIS DOCUMENT WAS DERIVED FROM THE UNDERLYING

4    DOCUMENT.

5         THE COURT:  OKAY.  ON THIS ONE I'M GOING TO LET YOU

6    SUBMIT THE UNDERLYING DOCUMENT SO I CAN MAKE AN ASSESSMENT,

7    BECAUSE EVERYBODY SEEMS TO AGREE THAT IT'S A SORT OF AUTOMATED

8    COMMENT ON AN UNDERLYING DOCUMENT, AND IT MAY BE THAT IT WILL

9    BE ALL CLEAR TO ME ONCE I HAVE THE UNDERLYING DOCUMENT.  SO

10   SEND ME THE UNDERLYING DOCUMENT.

11        BUT OTHERWISE I CAN'T TELL.  I JUST CAN'T TELL.  IT'S NOT

12   SELF-EVIDENT ON THE FACE OF IT AND THERE'S NOT A LOT OF

13   DISCUSSION ANYWHERE ABOUT IT.

14        MR. SOMVICHIAN:  UNDERSTOOD.  WE'LL GET YOU THAT

15   DOCUMENT, YOUR HONOR.

16        THE COURT:  OKAY.  AND WHY WEREN'T THE OTHER FOUR

17   NAMES INCLUDED ON THE LOG?

18        MR. SOMVICHIAN:  THE INDIVIDUALS COMMENTING?

19        THE COURT:  YEAH.  IS IT BECAUSE IT DOESN'T SHOW UP

20   IN THE "TO" OR "FROM" FIELD?  I THINK THAT THIS WAS PART OF THE

21   ESI ARGUMENT, THE ESI ORDER SAID IF IT'S AUTOMATICALLY

22   GENERATED.

23        MR. SOMVICHIAN:  BECAUSE THIS NOTIFICATION EMAIL WENT

24   TO ONE INDIVIDUAL.

25        THE COURT:  GOT IT.  OKAY.  THAT'S WHAT I INFERRED.

```
 1            OKAY.  ALL RIGHT.  WELL, I THINK I'LL NEED THE UNDERLYING

 2      DOCUMENT IN ORDER TO RESOLVE THAT ONE.

 3                  MR. SAMRA:  YOUR HONOR, I DO WANT TO --

 4                  THE COURT:  IT'S NOT YOUR TURN YET.

 5                  MR. SAMRA:  SORRY.

 6                  THE COURT:  LET ME SEE IF MR. SOMVICHIAN IS DONE.  I

 7      DON'T WANT TO CUT HIM OFF IF HE HAS MORE TO ARGUE ABOUT THE

 8      MERITS.

 9                  MR. SOMVICHIAN:  NOT ON THESE SPECIFIC DOCUMENTS,

10      YOUR HONOR.

11                  THE COURT:  ALL RIGHT.

12        MR. SAMRA?

13                  MR. SAMRA:  WELL, A COUPLE THINGS TO THAT POINT, AND

14      THEN I DO WANT TO CLARIFY OUR POSITION ON ENTRY 9955.

15                  THE COURT:  OKAY.

16                  MR. SAMRA:  SO I THINK THE, THE ISSUE THAT'S COMING

17      OUT HERE IS EXACTLY RIGHT.  WE'VE IDENTIFIED THESE CHALLENGES

18      TO GOOGLE ON SEPTEMBER 2ND.

19                  THE COURT:  I DON'T WANT TO HEAR ABOUT THE HISTORY.

20      PLEASE DON'T -- TALK TO ME ABOUT THE MERITS NOW.  WE'RE GOING

21      TO TALK ABOUT FURTHER PROCEEDINGS IN A MOMENT.  I DO NOT WANT

22      TO HAVE A REHASH ABOUT HOW BAD YOU THINK GOOGLE HAS BEEN.

23      THAT'S REALLY NOT HELPFUL.

24                  MR. SAMRA:  OKAY.  SO I THINK WITH RESPECT TO THESE

25      DOCUMENTS, I DO WANT TO ADDRESS THAT.
```

1    ON THAT LAST DOCUMENT, WE AREN'T ABLE TO TELL WHAT --

2    WHETHER OR NOT THE UNDERLYING DOCUMENT WAS WITHHELD BECAUSE WE

3    DON'T HAVE INFORMATION SUFFICIENT TO IDENTIFY IT.  LIKE, WE

4    DON'T HAVE THE SUBJECT LINE INFORMATION THAT WOULD ALLOW US TO

5    SEE WHAT WAS -- WHETHER IT WAS WITHHELD, LOGGED, AND WHETHER

6    THIS IS A SPINOFF OF THAT.

7    SO --

8              THE COURT:  I'M SORRY.  YOU'RE TALKING ABOUT 9955?

9              MR. SAMRA:  NO, I'M TALKING ABOUT -- EXCUSE ME, YOUR

10   HONOR.

11             THE COURT:  OH, YOU'RE TALKING ABOUT 2813?

12             MR. SAMRA:  YES.

13             THE COURT:  GOT IT.

14             MR. SAMRA:  AND QUICKLY, YOUR HONOR, WITH RESPECT TO

15   9955, OUR POSITION IS THAT WE HAVE WITHDRAWN OUR WORK PRODUCT

16   CHALLENGE WITH RESPECT TO THE PORTIONS OF THE DOCUMENT, IF ANY,

17   THAT RELATE TO THE DPC AND -- EXCUSE ME -- THE REGULATORY

18   INVESTIGATION.

19       BUT WITH RESPECT TO THE ATTORNEY-CLIENT PRIVILEGE AND WORK

20   PRODUCT CLAIMS OVER THE REMAINING -- THE REMAINDER OF THE

21   DOCUMENT, WE ARE CONTINUING TO CHALLENGE THAT.

22             THE COURT:  THE COPY THAT I HAVE -- THIS IS A

23   QUESTION FOR GOOGLE -- HAS HIGHLIGHTING IN IT.  WHAT IS THE

24   SIGNIFICANCE OF THE HIGHLIGHTING?

25             MR. SOMVICHIAN:  IT WASN'T ADDED IN THE PRODUCTION

```
1        PROCESS, YOUR HONOR.

2                THE COURT:  IT'S JUST -- IT'S PART OF THE DOCUMENT?

3                MR. SOMVICHIAN:  YES.

4                THE COURT:  OH, OKAY.  ALL RIGHT.  SO JUST GIVE ME A

5        MOMENT.

6            (PAUSE IN PROCEEDINGS.)

7                THE COURT:  ALL RIGHT.  WELL, BUT LET ME JUST TELL

8        YOU, IN LIGHT OF YOUR COMMENTS ABOUT THE AGREEMENT THAT YOU

9        HAVE, IT WOULD ENCOMPASS THE ENTIRE DOCUMENT.

10               MR. SAMRA:  UNDERSTOOD.

11               THE COURT:  SO I THINK 9955 IS RESOLVED BASED ON WHAT

12       YOU'VE ALREADY SAID ON BEHALF OF THE PLAINTIFFS.  YOU CONCEDE

13       IT IS APPROPRIATE.

14           YOU UNDERSTOOD WHAT INVESTIGATION THEY WERE REFERRING TO.

15       I DID NOT.  GOOD FOR YOU.  I'M GLAD THE PARTIES RESOLVED THAT

16       ISSUE WITHOUT MY NEED FOR INTERVENTION THERE.

17           OKAY.  ANYTHING ELSE ON THE MERITS?

18           AND THEN WE'LL GET TO THE FURTHER PROCEEDINGS QUESTION.

19               MR. SAMRA:  NO, YOUR HONOR.

20               THE COURT:  OKAY.  THANK YOU.

21           ALL RIGHT.  I HAVE CONCERNS ABOUT OVERDESIGNATION BY

22       GOOGLE, AND THESE ARE THE SAME CONCERNS THAT I FLAGGED IN MY

23       FIRST ORDER AUTHORIZING THE BRIEFING ON THE MERITS OF THESE

24       WHAT TURNED OUT TO BE TEN DOCUMENTS.

25               SO, YOU KNOW, IT'S NOT JUST THE FACT THAT GOOGLE HAS MADE
```

1    CHANGES TO ITS PRIVILEGE CLAIMS WITH RESPECT TO SOME OF THE

2    DOCUMENTS THAT WERE INITIALLY AT ISSUE.

3        SO THAT'S FINE.  I'M GLAD YOU DID THAT, AND IT'S A SMALL

4    SAMPLE SIZE, SO I'M NOT GOING TO SAY, OH, THERE'S 50 PERCENT OF

5    THEM GOT CHANGED SO, THEREFORE, THAT'S A HUGE PROBLEM.

6        THE PROBLEM IS THAT GOOGLE HAS A PRIVILEGE LOG THAT HAS

7    10,500 ENTRIES AND HAS PRODUCED FEWER THAN 5600 DOCUMENTS AS

8    FAR AS I CAN TELL, AND GIVEN THE CAREFUL REVIEW THAT GOOGLE

9    UNDERTOOK OF THE 18 DOCUMENTS THAT WERE FLAGGED FOR PURPOSES OF

10   THIS PROCEEDING AND MADE SOME CHANGES, I WOULD BE VERY

11   INTERESTED TO KNOW IF GOOGLE HAS TAKEN A SECOND LOOK AT ANY OF

12   THE OTHER DOCUMENTS ON THE LOG, EITHER BY CATEGORY OR RANDOM

13   SAMPLE OR SOMETHING.  HAS GOOGLE UNDERTAKEN ANY FURTHER EFFORT

14   TO ASSESS ITS PRIVILEGE CLAIMS?

15        MR. SOMVICHIAN:  NOT SINCE THE PREPARATION OF THE

16   PRIVILEGE LOG, YOUR HONOR.

17        THE COURT:  OKAY.

18        MR. SOMVICHIAN:  THERE WAS A PROCESS THAT LED TO THE

19   PRIVILEGE LOG THAT INVOLVED MULTIPLE LAYERS OF REVIEW, BUT NOT

20   SINCE THEN.

21        THE COURT:  OKAY.  I THINK THAT MIGHT BE IN ORDER, AT

22   LEAST SOME, SOME EFFORT AT REASSESSING SOME CATEGORIES OF

23   DOCUMENTS ON THE LOG.

24        I HAD A QUESTION FOR THE PLAINTIFFS ABOUT THIS CHART THAT

25   APPEARS IN THE REPLY.  LET ME FIND IT.

```
1              (PAUSE IN PROCEEDINGS.)

2              MR. SAMRA:  I THINK IT MIGHT BE AT PAGE 2, YOUR

3      HONOR.

4              THE COURT:  THAT MIGHT BE IT.  YES.  OKAY.

5              MR. SOMVICHIAN:  YOUR HONOR, CAN I CLARIFY ONE POINT

6      ON WHAT WE'VE DONE?

7              THE COURT:  YES, SURE.

8              MR. SOMVICHIAN:  SO WE -- WE HAVE GATHERED

9      DISTRIBUTION LIST INFORMATION MORE BROADLY THAN JUST THE 18.

10             THE COURT:  OKAY.

11             MR. SOMVICHIAN:  AND WE HAVE COLLECTED THAT.  WE'RE

12     PREPARED TO PROVIDE IT TO PLAINTIFFS.  WE'D INDICATED THAT TO

13     THEM IN SOME PRIOR CORRESPONDENCE.

14         SO THAT IS STILL OUR INTENT, TO PROVIDE THAT IN FURTHER

15     CONTEXT TO THAT ISSUE.

16             THE COURT:  OKAY.  THAT'S HELPFUL.

17         BUT I WAS MAINLY FOCUSSED ON WHETHER THERE'S BEEN ANY

18     EFFORT TO REASSESS SOME SUBSET OF YOUR PRIVILEGE LOG TO SEE IF

19     SOME OF THE DETERMINATIONS YOU MADE TO WITHDRAW A PRIVILEGE

20     CLAIM OR TO NARROW THE SCOPE OF A PRIVILEGE CLAIM THAT YOU MADE

21     WITH RESPECT TO THE SAMPLE THAT WE'RE DEALING WITH, WHETHER YOU

22     MIGHT HAVE DONE THAT.  AND I TAKE IT THE ANSWER IS NO.

23             MR. SOMVICHIAN:  NOT OTHER THAN ONE-OFF DOCUMENTS,

24     YOUR HONOR.

25             THE COURT:  OKAY.  ALL RIGHT.
```

1          SO FOCUSSING ON THIS CHART THAT APPEARS AT PAGES 2 AND 3

2     OF THE REPLY BRIEF, THE CATEGORIES THAT SEEM TO ME TO MAYBE BE

3     THE MOST CHALLENGING FOR THE COURT TO MAKE AN ASSESSMENT BASED

4     ON THE LOG AND, FRANKLY, FOR PLAINTIFFS TO MAKE AN ASSESSMENT

5     BASED ON THE LOG ARE THE CATEGORIES WHERE THERE IS NO ATTORNEY

6     IDENTIFIED IN THE COMMUNICATION OR WHERE -- AND THAT COULD

7     EITHER BE BECAUSE THE LOG DOESN'T IDENTIFY AN ATTORNEY OR WHERE

8     THE "TO" AND "FROM," IF IT'S AN EMAIL, DON'T REFLECT THAT THERE

9     WAS ANY ATTORNEY INVOLVED.

10          AND THIS WILL SOUND FAMILIAR TO YOU BECAUSE I BELIEVE

11    JUDGE VAN KEULEN HAD SIMILAR CONCERNS IN THE BROWN AND CALHOUN

12    MATTERS ABOUT THESE CATEGORIES OF DOCUMENTS.

13          THOSE SEEM TO ME TO BE VERY CHALLENGING TO MAKE A

14    PRIVILEGE DETERMINATION ON FOR THE COURT, LIKE I SAID, AND ALSO

15    FOR THE PLAINTIFFS.

16          THE QUESTION FOR THE PLAINTIFFS IS, IN THIS CHART, THERE

17    ARE DOCUMENT COUNTS IN THE RIGHT-HAND COLUMN.

18               MR. SAMRA:  YES, YOUR HONOR.

19               THE COURT:  I ASSUME THAT THOSE -- WELL, THOSE

20    DOCUMENT COUNTS MUST BE OVERLAPPING WITH EACH OTHER IN SOME

21    RESPECT.

22          SO WHERE I'M GOING WITH THIS IS I THINK SOME REASSESSMENT

23    IS IN ORDER, AND I'M TRYING TO FIGURE OUT WHAT SUBSET OF THE

24    5,000 WHATEVER NUMBER THAT HAVE BEEN CHALLENGED BY THE

25    PLAINTIFFS I SHOULD ASK GOOGLE TO RE-REVIEW, AND I'M TRYING TO

```
 1    PICK THE ONES THAT ARE MOST LIKELY TO HAVE PROBLEMS OR TO BE
 2    DIFFICULT, AND I'M TRYING TO FIGURE OUT A REASONABLE NUMBER OF
 3    THOSE TO HAVE RE-REVIEWED.
 4         SO IF I LOOKED AT THESE TWO CATEGORIES I TALKED ABOUT, SO
 5    THE ONE CORRESPONDING TO WITHDRAWN NUMBER 4835 AND THE ONE
 6    CORRESPONDING TO NARROWED 10217, IS THERE, LIKE, A GRAND TOTAL
 7    OF 2763?  OR WOULD I HAVE TO ADD 2763 TO 702?
 8              MR. SAMRA:  NO, YOUR HONOR.  THEY ARE OVERLAPPING.
 9         SO IF YOU LOOK AT THAT FIRST CATEGORY, THAT'S THE TOTAL
10    NUMBER BECAUSE WE'VE CHALLENGED -- ALL OF OUR CHALLENGES ARE --
11    INCLUDE A CHALLENGE BASED OFF OF INSUFFICIENT INFORMATION.
12              THE COURT:  OKAY.  BUT AS BETWEEN THE TWO CATEGORIES
13    I DESCRIBED?
14              MR. SAMRA:  WHICH WAS 4835 AND 10 --
15              THE COURT:  10217.  IS 702 A SUBSET OF 2763?  OR
16    WOULD I ADD THAT TOGETHER?  OR SOMETHING IN THE MIDDLE?
17              MR. SAMRA:  THAT -- THOSE ARE SEPARATE BECAUSE THOSE
18    ARE INSTANCES -- SO THE FIRST IS AN INSTANCE WHERE, IN THE
19    "TO," "FROM," AND IN THE PRIVILEGED DESCRIPTION FIELD, THERE IS
20    NO ATTORNEY IDENTIFIED.
21              THE COURT:  UM-HUM.
22              MR. SAMRA:  AND THEN IN THE SECOND CATEGORY, IT'S
23    WHERE THERE'S NO ATTORNEY IDENTIFIED IN THE "TO/FROM" FIELD,
24    BUT THAT ATTORNEY IS IDENTIFIED IN THE PRIVILEGED DESCRIPTION.
25              THE COURT:  GOT IT.  OKAY.
```

```
 1           ALL RIGHT.  SO MY THOUGHT, BEING SOMEWHAT ARBITRARY ABOUT
 2      THIS, IS TO HAVE GOOGLE RE-REVIEW 1,000 DOCUMENTS.  THIS IS NOT
 3      HARD.  1,000 PRIVILEGE LOG DOCUMENTS, THE DOCUMENTS HAVE TO
 4      FALL WITHIN I'M GOING TO CALL IT THE 4835 CATEGORY OR THE 10217
 5      CATEGORY, BUT OTHERWISE I'LL LET PLAINTIFFS SELECT THE 1,000
 6      DOCUMENTS FROM WITHIN THOSE TWO CATEGORIES.
 7           YOU HAVE TO TELL GOOGLE SPECIFICALLY WHAT THE LOG NUMBERS
 8      ARE SO THAT THERE'S NO CONFUSION AND NO -- AND YOU HAVE TO --
 9      AND DON'T JUST PICK YOUR FAVORITE ONES FROM OTHER CATEGORIES.
10      THEY HAVE TO BE WITHIN THESE CATEGORIES WHERE THERE'S AN
11      ATTORNEY KIND OF MISSING FROM THE DESCRIPTION.  OKAY?
12              MR. SAMRA:  ABSOLUTELY, YOUR HONOR.  WE CAN DO THAT
13       PROMPTLY.  WE HAVE THESE SELECTED ALREADY AND CAN IDENTIFY
14       THOSE.
15           I DO WANT TO POINT OUT THAT CATEGORY, I GUESS WE WOULD
16      CALL IT 660, WHERE THESE DOCUMENTS ARE WITHHELD IN THEIR
17      ENTIRETY IS ANOTHER, FRANKLY, TROUBLING CATEGORY.
18              THE COURT:  YEAH.  I GET IT THAT YOU HAVE OTHER
19       PROBLEMS.  THIS IS -- WE MAY DO IT IN STAGES, JUST LIKE
20       JUDGE VAN KEULEN DID, BUT I WANT TO SEE WHAT HAPPENS, BECAUSE
21       WE JUST HAD A VERY SMALL SAMPLE SIZE THAT WE LOOKED AT BEFORE
22       IN CONNECTION WITH THE BRIEFING.  I BET THOSE WERE SOME OF YOUR
23       FAVORITE LOG ENTRIES, AND SO IT MAY BE NOT REALLY
24       REPRESENTATIVE OF -- AND IT MAY NOT BE INDICATIVE THAT THERE'S
25       ACTUALLY A BIG PROBLEM.  I WANT TO SEE.
```

1      AND I WANT TO -- SO WHAT I'M GOING TO DO IS ORDER

2   SOMETHING VERY SIMILAR TO WHAT JUDGE VAN KEULEN DID, WHICH IS

3   I'M GOING TO ASK FOR THE RE-REVIEW AND I'M GOING TO ASK FOR A

4   STATUS REPORT ABOUT WHAT WAS WITHDRAWN AND WHAT WASN'T AND

5   WHAT'S STILL DISPUTED.  NO BRIEFING ABOUT WHY IT'S DISPUTED,

6   JUST A STATUS REPORT WITH THE NUMBERS.

7      AND MY THOUGHT WAS THAT FOR 1,000 DOCUMENTS, IF I GAVE

8   GOOGLE -- YOU KNOW, IF YOU HAVE 14 DAYS FROM THE DATE THAT YOU

9   GET THE LIST OF LOG NUMBERS FROM THE PLAINTIFFS, THAT SHOULD BE

10  ENOUGH FOR SOMEONE TO RE-REVIEW THEM AND MAKE AN ASSESSMENT.

11      IS THAT GOING TO BE A PROBLEM FOR GOOGLE?

12          MR. SOMVICHIAN:  WE'LL MAKE IT HAPPEN, YOUR HONOR.

13          THE COURT:  OKAY.  ALL RIGHT.  SO 14 DAYS.  AND I'LL

14   SET OUT SOME CLEAR INSTRUCTIONS ABOUT HOW YOU ALL REPORT THAT

15   TO EACH OTHER AND TO ME, BUT THAT'S MY PLAN.

16      ALL RIGHT.  NOW, I CUT OFF MR. SAMRA ABOUT TALKING ABOUT

17   REPRESENTATIVE -- YOU KNOW, THE PROBLEMS WITH THE LOG IN

18   GENERAL AND THIS WHOLE THING.

19      I -- I'M REALLY NOT INTERESTED IN HAVING A DISCUSSION

20   ABOUT THE PAST.  I'M TRYING TO FIND A WAY TO MOVE FORWARD.

21      BUT IF THERE'S SOMETHING THAT YOU THINK SHOULD INFORM

22   THAT, NOW IS THE TIME TO TELL ME WHAT IT IS.

23          MR. SAMRA:  WELL, I DO THINK IT IS RESPONSIVE TO YOUR

24   HONOR'S PREVIOUS STATEMENT, WHICH WE DIDN'T PICK FAVORITES FOR

25   THE JOINT LETTER BRIEF.  FRANKLY, THE PRIVILEGE LOG IS SO BARE

1   BONES, IT -- THEY LOOK EXACTLY THE SAME, THESE ENTRIES.

2          THE COURT:  OKAY.  BUT THERE'S A REASON FOR THAT, AND

3   I TRIED TO MAKE THAT CLEAR IN MY PRIOR ORDER BY CITING TO THE

4   ADVISORY COMMITTEE NOTES.

5          WHEN YOU HAVE A VERY LARGE VOLUME DOCUMENT PRODUCTION AND

6   A LARGE VOLUME OF PRIVILEGED MATERIAL, POTENTIALLY PRIVILEGED

7   MATERIAL, IT MAY JUST BE NOT FEASIBLE TO GIVE THE KIND OF

8   DETAIL THAT YOU WOULD LIKE.

9          AND THE -- YOU KNOW, THE LAW IS PRETTY CLEAR ABOUT WHAT

10  HAS TO BE IN THERE IF IT'S AVAILABLE.

11         BUT THAT MAY NOT NECESSARILY ALWAYS MEET THE 26(B)(5)

12  INFORMATION THAT ALLOWS YOU TO MAKE A DETERMINATION.  I GET

13  THAT.  SO WE HAVE TO HAVE SOME OTHER PRACTICAL WAY TO DEAL WITH

14  THESE CHALLENGES.

15         SO YOU COULD CHALLENGE LITERALLY EVERYTHING BECAUSE YOU

16  DON'T LIKE THE LOG, THE ADEQUACY OF THE LOG, BUT THAT WOULDN'T

17  BE PRODUCTIVE.

18         MR. SAMRA:  WELL, BUT IT IS GOOGLE'S BURDEN TO

19  ESTABLISH A PRIMA FACIE SHOWING OF PRIVILEGE THOUGH.

20         THE COURT:  OKAY.  I'M NOT GOING TO DEBATE THIS ISSUE

21  AGAIN, RIGHT?  SO I UNDERSTAND THAT YOU DON'T THINK YOU HAVE

22  ENOUGH INFORMATION BASED ON THE LOG, AND I'M TRYING TO FIND A

23  WAY TO GET TO THE NUB OF THEM BY HAVING THEM REASSESS THEIR

24  PRIVILEGE ENTRIES.

25         NOW YOU'LL HAVE THE BENEFIT OF MY ORDER, YOU'LL HAVE THE

```
1    BENEFIT OF THE PRIOR ORDER I WROTE.  YOU HAVE MY CALL ON THESE

2    DOCUMENTS.

3         AND SO, YES, GOOGLE WILL NEED TO DO A BETTER JOB IN MAKING

4    ITS INITIAL CALL AND, IF WE HAVE A DISPUTE, IN BRIEFING THE

5    ISSUE.  OKAY?  THAT'S WHAT WE'RE GOING TO HAVE TO DO.

6         MR. SAMRA:  THANK YOU, YOUR HONOR.  I APPRECIATE THIS

7    PROCESS AND I APPRECIATE YOUR HONOR'S TIME IN DEALING WITH THIS

8    ISSUE.

9         THE COURT:  OKAY.

10         MR. SOMVICHIAN:  YOUR HONOR?

11         THE COURT:  YEAH, SORRY.

12         MR. SOMVICHIAN:  YOUR HONOR, I'M WORKING THROUGH THE

13    STEPS THAT WE'RE GOING TO NEED TO GO THROUGH TO DO THIS QC AND

14    MAKE SURE WE'RE DOING IT RIGHT.  CAN WE GET 21 DAYS TO FINISH

15    THAT PROCESS?

16         THE COURT:  SO WHAT ARE YOU IMAGINING THAT YOU HAVE

17    TO DO?

18         MR. SOMVICHIAN:  RE-REVIEW EVERYTHING THROUGH --

19    WHICH INVOLVES MULTIPLE TEAMS AND OUTSIDE COUNSEL REVIEW TO

20    MAKE SURE THAT WE'RE ALL COMFORTABLE WITH --

21         THE COURT:  OKAY.

22         MR. SOMVICHIAN:  -- ANY REVISIONS.

23         THE COURT:  OKAY.  SO YOU NEED 21 DAYS.  ALL RIGHT.

24    ANY OBJECTION?

25         MR. SAMRA:  YOUR HONOR, I KNOW YOU DON'T WANT TO HEAR
```

```
1    THE PAST, SO I'LL FOCUS ON THIS.  I DO THINK 1,000 DOCUMENTS IN

2    14 DAYS IS DOABLE.  YOU KNOW, IT CAN BE DONE BY A TEAM OF TEN

3    ATTORNEYS WITHIN A WEEK, I THINK, FAIRLY QUICKLY, AND THEN SENT

4    TO SUPERVISING ATTORNEYS AFTER THAT.

5          THE COURT:  I'M LOOKING FOR QUALITY.  THIS -- THIS IS

6    ABOUT, YOU KNOW, GOOGLE REALLY GIVING THIS ANOTHER LOOK AND

7    DOING A GOOD JOB WITH IT.  SO I'LL TAKE INTO ACCOUNT BOTH OF

8    YOUR PROPOSALS, 14 DAYS AND 21 DAYS.

9          MR. SAMRA:  YOUR HONOR, I DO WANT TO ADDRESS ONE

10   POINT, WHICH IS, DOES YOUR HONOR'S PROTOCOL CONTEMPLATE A

11   REVIEW OF THE DOCUMENTS THAT ARE GOING TO BE CONTINUING TO BE

12   IN DISPUTE?  IN OTHER WORDS, IS IT JUST TO SEE, YOU KNOW, WHAT

13   PERCENTAGE GOOGLE CHANGES ITS PRIVILEGE CLAIMS OVER?  OR ARE WE

14   GOING TO CONTINUE TO --

15         THE COURT:  TO BE ABLE TO FIGHT ABOUT IT?

16         MR. SAMRA:  EXACTLY.

17         THE COURT:  WELL, THIS IS A FIRST STEP.

18   I'M SORRY.  I SHOULD BE MORE CLEAR.  I WANT TO GET THIS

19   ASSESSMENT FIRST, AND THEN I'LL FIGURE OUT WHETHER I'M JUST

20   GOING TO ENTERTAIN SERIAL MOTIONS TO COMPEL OR WHETHER WE'RE

21   GOING TO DO SOMETHING ELSE.

22   SO LET ME, LET ME GET THE BENEFIT OF GOOGLE'S REASSESSMENT

23   AND THEN WE'LL GO FROM THERE.  OKAY?

24         MR. SAMRA:  OKAY.  THANK YOU, YOUR HONOR.

25         THE COURT:  ANYTHING ELSE FROM GOOGLE ON THIS POINT
```

1    BEFORE WE TURN TO THE CLARIFICATION QUESTION?

2                MR. SOMVICHIAN:  NO, YOUR HONOR.

3                THE COURT:  OKAY.

4        AND I WILL ISSUE AN ORDER SO YOU HAVE SOME CLEAR

5    INSTRUCTIONS ABOUT WHAT TO DO.

6        OKAY.  THE OTHER MATTER THAT WE NEED TO ADDRESS IS THE

7    QUESTION OF GOOGLE'S REQUEST FOR CLARIFICATION OF MY EARLIER

8    ORDER AT DOCKET NUMBER 382, AND I HAVE -- I HAVE BOTH THE

9    REQUEST AND THE RESPONSE TO THE REQUEST, AND I HAVE THE ORDER

10   IN FRONT OF ME AS WELL.  AND HONESTLY, I JUST DO NOT UNDERSTAND

11   WHAT IS UNCLEAR.

12       SO, MR. GUTKIN, I'M HOPING YOU CAN EXPLAIN TO ME WHAT IS

13   UNCLEAR.

14                MR. GUTKIN:  YES, YOUR HONOR, THANK YOU, AND I'LL TRY

15   TO KEEP THIS BRIEF.  I KNOW YOU HAVE ANOTHER MATTER TO HEAR

16   THIS MORNING.

17       GOOGLE FILED THE REQUEST TO MAKE SURE THAT THE PARTIES

18   WERE CLEAR ABOUT THE MEANING OF THE COURT'S ORDER, PARTICULARLY

19   AS IT RELATES TO VERTICALS LINKED TO ACCOUNT HOLDERS, AS

20   OPPOSED TO VERTICALS LINKED TO WEBSITES.

21       WE UNDERSTOOD CLEARLY THE FIRST PART OF YOUR HONOR'S ORDER

22   WHICH RELATED TO THE PREVIOUSLY SHARED DETECTED VERTICALS AND

23   THE NEED TO PRODUCE ANY DATA THAT WE HAVE RELATED TO THAT.

24       BUT THEN THE ORDER WENT ON TO SAY GOOGLE SHOULD PROVIDE --

25   PRODUCE INFORMATION PROVIDED TO RTB PARTICIPANTS THAT WOULD

 1    PERMIT THOSE PARTICIPANTS TO INFER INFORMATION ABOUT THE

 2    ACCOUNT HOLDER BASED ON -- AND THIS IS THE LANGUAGE WE NEED --

 3    WE WANTED TO MAKE SURE WE UNDERSTOOD -- VERTICALS LINKED WITH

 4    THE ACCOUNT HOLDER.

 5         AT THE PRIOR HEARING, MS. WEAVER AND I HAD A DISCUSSION

 6    ABOUT THE CURRENT USE OF INTERNAL VERTICAL INFORMATION THAT'S

 7    NO LONGER SHARED AS IT RELATES TO TARGETING, AND AS THE ORDER

 8    USED THE PHRASE "THE CURATING OF BID REQUESTS," THERE'S NO

 9    VERTICALS LINKED TO ACCOUNT HOLDERS THAT CAN BE USED FOR

10    TARGETING OR CURATING OF BID REQUESTS.

11         SO A PARTICIPANT IN THE RTB AUCTION CANNOT SAY, FOR

12    INSTANCE, I WANT TO TARGET THIS AD TOWARD PEOPLE WHO ARE IN THE

13    MARKET TO BUY RUNNING SHOES.

14         SO THOSE VERTICALS THAT ARE LINKED TO ACCOUNT HOLDERS

15    AREN'T USED IN THAT WAY IN RTB, WHICH IS WHAT CAUSED OUR

16    REQUEST FOR CLARIFICATION.

17         WE'D ALSO NOTED THAT YOUR FOOTNOTE 4 IN THE ORDER DREW

18    THAT DISTINCTION BETWEEN VERTICALS LINKED TO ACCOUNT HOLDERS

19    AND VERTICALS LINKED TO WEBSITES, WHICH WE THINK IS AN

20    IMPORTANT DISTINCTION.

21         SO, YOUR HONOR, AS WE WERE WORKING THROUGH THIS AND MAKING

22    SURE WE COMPLIED WITH THE ORDER, WE JUST WANTED TO MAKE SURE

23    THAT IT WAS CLEAR THAT THERE'S A DIFFERENCE BETWEEN VERTICALS

24    LINKED TO THE ACCOUNT HOLDER AND VERTICALS LINKED TO A WEBSITE,

25    AND THAT WAS WHY WE WANTED CLARIFICATION.

```
1              THE COURT:  OKAY.  SO THE -- I APPRECIATE THAT
2      EXPLANATION.  I'M NOT SURE I'M STILL CLEAR ON WHAT YOU WOULD DO
3      DIFFERENTLY DEPENDING ON HOW I ANSWER YOUR QUESTION.
4          SO WHAT WOULD BE A VERTICAL LINKED TO A WEBSITE AS OPPOSED
5      TO A VERTICAL LINKED TO AN ACCOUNT HOLDER?
6              MR. GUTKIN:  THAT WOULD BE AN INTERNAL RECORD AT
7      GOOGLE OF THE KIND THAT WOULD NOT BE SHARED SINCE THAT SERVICE
8      WAS DEPRECATED, BUT THAT WOULD SAY THIS WEBSITE IS ATHLETIC
9      GEAR, THIS WEBSITE IS RUNNING SHOES.  THAT'S A VERTICAL LINK TO
10     A WEBSITE.
11             THE COURT:  SO IT'S A VERTICAL THAT HAS INFORMATION
12     ABOUT A WEBSITE?
13             MR. GUTKIN:  THAT'S RIGHT.
14             THE COURT:  THAT CATEGORIZES THE WEBSITE AND NOT THE
15     PERSON WITH RESPECT TO THE WEBSITE?  OR THE PERSON WITH RESPECT
16     TO THE VERTICAL CATEGORY?  IS THAT WHAT YOU'RE SAYING?
17             MR. GUTKIN:  CORRECT.  IT DOESN'T -- THESE VERTICALS
18     DO NOT CATEGORIZE PEOPLE AT ALL.
19         BUT THEY ARE USED -- THEY CAN BE USED BY BIDDERS FOR
20     TARGETING TYPES OF WEBSITES.  THAT'S THE VERTICALS THAT ARE
21     LINKED TO WEBSITES.
22         AND WE -- AS YOUR HONOR'S ORDER DISCUSSED, THE VERTICALS
23     LINKED TO ACCOUNT HOLDERS, WE WANTED TO BE SURE WE WERE
24     COMPLYING WITH IT, AND THAT THE -- JUST VERTICALS THAT ARE
25     LINKED TO WEBSITES WERE NOT INCLUDED IN THAT.
```

1    THE COURT:  ONE OTHER CONCERN THAT PERMEATED OUR

2    PRIOR DISCUSSION WAS WHETHER GOOGLE DISCLOSES INFORMATION IN

3    THE CONTEXT OF AN RTB AUCTION THAT ALLOWS THE RTB PARTICIPANT

4    TO TAKE THAT INFORMATION AND MATCH IT TO OTHER INFORMATION THEY

5    MAY HAVE ABOUT AN ACCOUNT HOLDER.

6    SO EVEN IF THE SHARING IN THE FIRST INSTANCE IS NOT

7    EXPRESSLY LINKED, THERE IS AN ABILITY OF, THE PLAINTIFFS

8    ALLEGE, THE ABILITY OF THE RTB PARTICIPANT TO PERFORM THAT

9    LINKAGE ITSELF BASED ON INFORMATION THAT GOOGLE SHARES.

10    IS THAT PART OF THIS DISPUTE ABOUT WHAT MY ORDER MEANS?

11    IS THAT CONCERN AT ISSUE HERE?

12    MR. GUTKIN:  NO, YOUR HONOR, NOT FROM GOOGLE'S

13    PERSPECTIVE.

14    THE COURT:  OKAY.

15    MR. GUTKIN:  THAT'S NOT RELATED TO THE VERTICALS FOR

16    WEBSITES THAT CAN BE USED FOR TARGETING.  IT'S NOT RELATED TO

17    WHAT'S -- WHAT WE'RE DISPUTING IN COMPLIANCE WITH THAT ORDER.

18    THE COURT:  OKAY.  SO NOW LET ME HEAR FROM THE

19    PLAINTIFFS ABOUT WHAT, WHAT YOU THINK IS PROBLEMATIC ABOUT THE

20    REQUEST FOR CLARIFICATION AND HELP ME UNDERSTAND WHAT THE ISSUE

21    IS.

22    MR. LEVINE:  THANK YOU, YOUR HONOR.

23    I MEAN, IT'S PROBLEMATIC PROCEDURALLY.  IT'S PROBLEMATIC

24    SUBSTANTIVELY.  IT'S PROBLEMATIC BECAUSE IT'S TOO LITTLE TOO

25    LATE.

```
1              THE COURT:  LET'S FOCUS ON --

2              MR. LEVINE:  I MEAN, THE DEADLINE FOR COMPLIANCE IS

3      TODAY.

4              THE COURT:  LET'S FOCUS ON PROBLEMATIC SUBSTANTIVELY.

5      PLEASE HELP ME UNDERSTAND.  WHAT DO YOU THINK WOULD BE OMITTED

6      THAT I ORDERED IF I WERE TO SAY, YES, WHAT I MEANT WAS

7      VERTICALS LINKED TO AN ACCOUNT HOLDER FOR THAT ONE CLAUSE IN

8      THE ORDER, IT REALLY MEANS WHAT I SAID IT MEANS.

9          WHAT WOULD BE LEFT OUT THAT YOU THOUGHT I HAD ORDERED?

10             MR. LEVINE:  WELL, IF GOOGLE -- IF GOOGLE COMPLIED

11     WITH ITS DISCOVERY OBLIGATIONS AND DISCUSSED WITH US THE BROAD

12     SCOPE, THE BROAD SCOPE OF THE CATEGORIES OF INFORMATION THAT

13     WERE AVAILABLE AND THEN WE COULD HAVE A SIT DOWN DISCUSSION AS

14     TO WHAT THEY WANT TO EXCLUDE AND TELL US, WE WANT TO EXCLUDE

15     THESE THINGS AND HERE'S WHY, WE COULD HAVE A MEANINGFUL

16     CONVERSATION.

17         BUT THEY WON'T TELL US WHAT THEY'RE NOT GIVING US.

18             THE COURT:  SO YOU'RE TELLING ME YOU DON'T KNOW?

19             MR. LEVINE:  SO WE DON'T KNOW.  WE DON'T KNOW.

20         NOW, THE OTHER PROBLEM IS -- AND I THINK IT'S A SLEIGHT OF

21     HAND -- THE WHOLE CONTEXT OF THIS DISCUSSION IS THE NAMED

22     PLAINTIFFS' DATA AND THE BID REQUESTS FOR THE NAMED PLAINTIFFS.

23     THAT'S WHAT WE'RE -- THAT'S ALL WE'RE TALKING ABOUT.  WE HAVE

24     TO REMEMBER WHAT WE'RE TALKING ABOUT.

25             THE COURT:  UM-HUM.
```

1          MR. LEVINE:  IT'S WHAT IS IN OR ASSOCIATED WITH THE

2    BID REQUESTS FOR OUR NAMED PLAINTIFFS.  A SAMPLE, WE'RE NOT

3    EVEN GETTING MORE, JUST A SAMPLE.

4          SO HOW CAN IT BE THAT IF A NAMED PLAINTIFF IS ON A WEBSITE

5    FOR RUNNING SHOES OR THE MAYO CLINIC, AND THERE'S A URL AND

6    THERE'S CONTEXTUAL INFORMATION ASSOCIATED WITH THAT BID

7    REQUEST, HOW DO WE NOT GET IT?

8          THE COURT:  NO, BUT I'VE ALREADY ORDERED THAT THAT BE

9    DISCLOSED.

10          MR. LEVINE:  BUT THAT'S WHAT THEY'RE TELLING YOU

11    THEY'RE NOT GOING TO -- THAT'S WHY THEY'RE SEEKING

12    RECONSIDERATION OF YOUR ORDER.  THEY DON'T WANT TO PRODUCE IT.

13          THE COURT:  NO, I DON'T THINK SO.

14          MR. LEVINE:  I THINK THAT'S --

15          THE COURT:  THAT'S NOT WHAT I -- WELL, IF THAT'S

16    WHERE WE ARE, THEN I'LL JUST -- THAT'S -- THAT'S NOT HELPING

17    ME.

18          IF YOU COULD RESPOND TO WHAT MR. GUTKIN JUST SAID ABOUT

19    THE DISTINCTION BETWEEN -- SO HE SAYS HE'S PRODUCING THE

20    DETECTED VERTICALS INFORMATION, RIGHT, THAT WE TALKED ABOUT

21    BEFORE, THAT'S BEEN DEPRECATED, BUT THAT HISTORIC INFORMATION.

22    YES?

23          MR. GUTKIN:  WELL, YES, WE UNDERSTAND THAT'S WITHIN

24    THE SCOPE OF THE COURT'S ORDER.

25          ACTUALLY WHEN WE DID THE INVESTIGATION FOLLOWING THE LAST

1    HEARING, WE DON'T HAVE DATA RELATED TO THAT FOR THE NAMED

2    PLAINTIFFS DUE TO THE FACT THAT IT WAS DEPRECATED IN FEBRUARY

3    OF 2020.

4            THE COURT:  OKAY.  SO -- BUT OTHERWISE WOULD BE

5    WITHIN THE SCOPE OF MY ORDER.

6            MR. GUTKIN:  YES, WE UNDERSTOOD THAT WAS WITHIN THE

7    SCOPE.

8            THE COURT:  OKAY.

9            MR. GUTKIN:  AND WE ARE PRODUCING -- MR. LEVINE

10    MENTIONED THE URL AND THAT, OF COURSE, HAS BEEN PRODUCED

11    ALREADY, THE URL OF THE WEBSITE.

12            THE COURT:  RIGHT.  SO THAT'S NOT -- I'M NOT UNDOING

13    THAT.  THAT'S STILL OUT THERE.

14            MR. GUTKIN:  RIGHT.

15            THE COURT:  SO I THINK WE REALLY ARE TALKING ABOUT,

16    FOR THIS PORTION OF THE ORDER, THE QUESTION OF VERTICALS

17    ASSOCIATED WITH THE ACCOUNT HOLDER.

18        AND IF THERE'S -- IT'S A DIRECT ASSOCIATION OR AN INDIRECT

19    ASSOCIATION, BUT IT HAS TO BE ASSOCIATED WITH THE ACCOUNT

20    HOLDER, NOT WITH A WEBSITE.

21        SO I DON'T SEE THAT AS ANY DIFFERENT FROM WHAT I ORDERED,

22    AND I'M JUST TRYING TO UNDERSTAND IF THERE IS A DIFFERENCE.

23            MR. LEVINE:  WELL, IF THERE WASN'T A DIFFERENCE, THEY

24    WOULDN'T BE ASKING FOR CLARIFICATION.  I MEAN, IT'S THAT

25    SIMPLE.  IF THERE WASN'T A DIFFERENCE, THEY WOULDN'T BE

1    ASKING --

2          THE COURT:  MAYBE I WROTE SOMETHING WITH SOME

3    AMBIGUITY.  IT'S ALWAYS POSSIBLE.  IF THERE'S SOMETHING THAT'S

4    AMBIGUOUS, I'M INVITING THE PARTIES TO TELL ME.

5          MR. LEVINE:  I'M GOING TO TURN IT OVER TO MR. BARNES

6    BECAUSE I THINK HE CAN PROVIDE THE ANSWER.

7       BUT THE SHORT ANSWER IS, IT'S THE WEBSITES THE NAMED

8    PLAINTIFFS WERE LOOKING AT.  I MEAN, IT'S THE INFORMATION

9    INFERRED FROM THE WEBSITES THEY WERE LOOKING AT.  IT'S STILL

10   ASSOCIATED WITH THE NAMED PLAINTIFFS.

11      BECAUSE OTHERWISE WHAT MR. GUTKIN JUST SAID IS WE'RE NOT

12   GOING TO GET ANYTHING IN RESPONSE TO THIS.  THAT'S WHAT --

13         THE COURT:  THAT'S NOT WHAT HE SAID.

14         MR. LEVINE:  I THINK THAT IS.

15      BUT HANG ON.

16         MR. BARNES:  SO, YOUR HONOR, IF I -- CAN I STAND UP

17   AND GET THIS MICROPHONE SO IT CAN REACH?

18      IF I MAY BE SPECIFIC?

19         THE COURT:  SURE.

20         THE CLERK:  PLEASE IDENTIFY YOURSELF FOR THE RECORD.

21         MR. BARNES:  I WILL.  OKAY, HERE WE GO.

22      JAY BARNES, SIMONS HANLY CONROY.

23         THE COURT:  OKAY.  THANK YOU.

24         MR. BARNES:  IF I COULD BE MORE SPECIFIC, AND I THINK

25   IT GOES TO A COMMENT YOU JUST MADE.  YOU TALKED ABOUT, AND I

1        THINK THE ORDER IS CLEAR, THAT EVEN IF THE SHARING IS NOT

2        EXPRESSLY LINKED, GOOGLE IS TO TURN OVER THAT WHICH PERMITS RTB

3        PARTICIPANTS TO DO THE LINKING THEMSELVES AND TO DO THIS.

4               AND THE -- WE WILL TELL YOU, WE HAVE DOCUMENTS OF THE TWO

5        MOST IMPORTANT ENGINEERS FROM REAL TIME BIDDING, MR. BURNSON --

6               THE COURT:  PLEASE DON'T SHARE ANYTHING IN THE PUBLIC

7        PROCEEDING THAT SHOULDN'T BE SHARED IN THE PUBLIC PROCEEDING.

8        JUST A WARNING.  I DON'T KNOW IF YOU'RE GOING TO DO IT.  JUST

9        BE CAREFUL.  IF YOU'RE TALKING ABOUT DOCUMENTS, LET'S JUST BE

10       CAREFUL.

11              MR. BARNES:  RIGHT.  I WILL TELL YOU THE GENERAL

12       THING IS THAT, JUST AS YOUR HONOR SAID, WHETHER GOOGLE

13       DEPRECATED THE VERTICALS OR NOT DOES NOT MATTER BECAUSE THE

14       FULL URL IS SHARED THROUGH RTB.

15              THE COURT:  RIGHT.  OKAY.

16              MR. BARNES:  OKAY.

17              THE COURT:  SO THEN -- AND YOU GET THAT.

18       RIGHT?

19              MR. GUTKIN:  YES.  WE'VE ALREADY PRODUCED THAT.

20              THE COURT:  OKAY.  SO THEN WHAT'S THE ISSUE?

21              MR. BARNES:  WELL, HOLD ON, BECAUSE YOUR HONOR, IN

22       THE PREVIOUS HEARING, YOUR HONOR INDICATED THAT THE COURT'S

23       UNDERSTANDING BASED ON WHAT GOOGLE SAID WAS THAT ONLY A

24       REDACTED FORM OF THE URL --

25              THE COURT:  BUT THEY HAD AGREED TO THEN PRODUCE THE

1    URL.

2              MR. BARNES:  IT'S IMPORTANT FOR THE COURT TO

3    UNDERSTAND IT'S THE FULL URL.

4              THE COURT:  OKAY.

5              MR. BARNES:  SO THE NEXT THING -- YOUR HONOR, I WOULD

6    JUST LIKE THE OPPORTUNITY TO MAKE A RECORD ABOUT WHAT IS

7    MISSING AND HAVE THE OPPORTUNITY TO EXPLAIN IT.  THIS IS A

8    COMPLICATED ISSUE.

9              THE COURT:  OKAY.  CAN I ASK YOU, THOUGH, ARE YOU

10   ABOUT TO TELL ME WHAT'S CONFUSING, OR WHAT I ORDERED THAT YOU

11   THINK IS -- LIKE, I REALLY -- I WANT TO FOCUS ON MY ORDER AND

12   WHAT IS CONFUSING ABOUT IT, OR IF NOT CONFUSING, WHAT YOU THINK

13   THEY'RE TRYING TO GET OUT OF.

14             MR. BARNES:  THERE'S NOTHING CONFUSING.

15        I'M ABOUT TO TELL YOU WHAT I THINK THEY'RE TRYING TO GET

16   OUT OF.

17             THE COURT:  OKAY.

18             MR. BARNES:  OKAY.  SO FIRST OF ALL, DETECTED

19   VERTICALS, THAT'S NOT -- THAT'S IN THE PUBLIC PROTO.

20             THE COURT:  THAT'S IN MY ORDER IN FOOTNOTE 4.

21             MR. BARNES:  RIGHT.  GOOGLE HAS REPRESENTED TO YOU

22   THAT DETECTED VERTICALS ARE NO LONGER USED.

23        WE HAVE AN EXISTING DOCUMENT FROM THEIR DEVELOPER

24   DOCUMENTATION ONLINE THAT SAYS SOMETHING CALLED TARGETING --

25   VERTICALS TARGETING REMAINS BEING USED IN RTB.

1          GOOGLE TOLD YOU THAT USER LISTS ARE NOT USED AND HAVE

2     NOTHING TO DO WITH RTB.

3          WE HAVE A PUBLIC DOCUMENT THAT SAYS THEY'RE STILL USED.

4          WE THINK THAT GOOGLE IS GOING TO EXCLUDE THOSE THINGS FROM

5     THAT WHICH IT PRODUCES.

6          SO WE HAVE TARGETING -- WE HAVE THE TARGETING VERTICALS,

7     WHICH IS IN THIS DOCUMENT.

8          THERE'S ANOTHER VERTICALS CATEGORY THAT GOOGLE TOLD YOU AT

9     THE LAST HEARING THAT HAD NOTHING TO DO WITH RTB.

10         WE VIGOROUSLY DISPUTE THAT, AND WE HAVE EVIDENCE TO

11    DISPUTE IT.  WE THINK THAT GOOGLE IS GOING -- WOULD EXCLUDE

12    THAT FROM ITS PRODUCTION.

13         I HAVE A SHEET OF PAPER I HAVE --

14              THE COURT:  WAIT.  SO --

15              MR. BARNES:  -- SO WE COULD WORK OFF THE SAME LIST.

16              THE COURT:  IS THIS A CATALOG OF ALL OF THE THINGS

17     THAT YOU THINK ARE MISSING FROM THE PRODUCTION, OR ARE WE

18     FOCUSSING AGAIN ON THIS QUESTION OF VERTICAL INFORMATION?

19              MR. BARNES:  WE ARE FOCUSSING ON VERTICALS.

20              THE COURT:  DO YOU -- SO IT'S A USER LIST OF

21     VERTICALS?

22              MR. BARNES:  USER LISTS I BELIEVE FITS WITHIN THIS

23     BECAUSE USER LISTS ARE THINGS FROM WHICH YOU CAN INFER THE

24     VERTICAL ASSOCIATED WITH A USER.

25              THE COURT:  OKAY.  SO LET ME JUST PAUSE THERE.

```
1          I DON'T REMEMBER IF I ORDERED ANYTHING ABOUT USER LISTS.

2    ARE USER LISTS ASSOCIATED WITH AN ACCOUNT HOLDER SHARED WITH

3    RTB PARTICIPANTS?

4          MR. GUTKIN:  SO USER LISTS ARE NOT VERTICALS, AND

5    THE -- I'M NOT SURE EXACTLY WHAT MR. BARNES IS REFERRING TO,

6    BUT YOU -- USER LISTS AREN'T USED IN ANY WAY ALSO TO TARGET

7    VERTICALS.

8          THE COURT:  NOT -- OKAY.  OKAY.  SO I'M REALLY -- I'M

9    REALLY JUST -- THIS IS NOT, LIKE, A REHASH OF OUR PRIOR

10   ARGUMENT.  I REALLY JUST WANT TO FOCUS ON THE VERTICALS ISSUE.

11         I UNDERSTAND YOU HAVE A COMPLETE LIST OF THINGS YOU DON'T

12   LIKE, BUT CAN WE FOCUS ON THE VERTICALS PART?

13         MR. GUTKIN:  YOUR HONOR, IF I MAY, WE RECEIVED A

14   LETTER IN THE MIDDLE OF THIS MONTH FROM PLAINTIFFS SAYING THEY

15   WANTED ALL KINDS OF THINGS THAT THEY SAID WERE VERTICALS AND

16   FIT UNDER THE SCOPE OF THIS ORDER.

17         WE STILL NEED TO TALK ABOUT THAT, AND MAYBE THERE WILL BE

18   DISPUTES RELATED TO THAT THAT WE HAVE TO BRING BACK TO YOU.

19         BUT THE SOLE QUESTION WE PRESENTED IN THE MOTION FOR

20   CLARIFICATION WAS, IS IT VERTICALS LINKED TO ACCOUNT HOLDERS OR

21   VERTICALS LINKED TO WEBSITES?  BECAUSE THOSE ARE DIFFERENT

22   THINGS.

23         THE COURT:  BUT WHY WOULD YOU THINK THAT'S AN

24   AMBIGUITY?  WHAT ABOUT MY ORDER MAKES YOU THINK THAT I ORDERED

25   WEBSITES?
```

1          MR. GUTKIN:  YOUR HONOR, ACTUALLY IT'S REALLY JUST

2     OUT OF AN ABUNDANCE OF CAUTION.  WE WANTED TO MAKE SURE THAT WE

3     WERE COMPLYING.

4          AND VERTICALS ASSOCIATED WITH ACCOUNT HOLDERS, WE'RE NOT

5     AWARE OF ANY WAY THAT ANY VERTICAL ASSOCIATED WITH AN ACCOUNT

6     HOLDER IS USED FOR TARGETING OR TO CURATE BIDS THAT ARE SENT.

7          IT'S DIFFERENT THAN VERTICALS THAT ARE LINKED WITH

8     WEBSITES.

9          SO THE MOTION FOR CLARIFICATION WAS TO MAKE SURE THAT WE

10    UNDERSTOOD THAT WHAT YOUR HONOR SAID IN FOOTNOTE 4 APPLIED TO

11    WHAT WE WERE BEING ORDERED TO PRODUCE.

12         THE COURT:  GOOGLE HAS VERTICALS ASSOCIATED WITH

13    WEBSITES THAT IT KEEPS INTERNALLY AND DOES NOT SHARE?  IS THAT

14    HOW I'M TO UNDERSTAND WHAT YOU'RE SAYING?

15         MR. GUTKIN:  THAT'S RIGHT.  GOOGLE HAS VERTICALS

16    ASSOCIATED WITH WEBSITES -- I'M JUST RUNNING THROUGH IN MY

17    MIND, YOUR HONOR --

18         THE COURT:  WHAT YOU CAN SHARE?

19         MR. SOMVICHIAN:  -- GIVEN THAT THIS IS A PUBLIC

20    HEARING, ABOUT WHAT I CAN SAY PUBLICLY.

21         THE COURT:  SURE.

22         MR. GUTKIN:  THAT USED TO BE SHARED IN BID REQUESTS

23    BUT THAT WERE DEPRECATED, VERTICALS THAT WERE ASSOCIATED WITH

24    WEBSITES, AND VERTICALS ASSOCIATED WITH WEBSITES CAN BE USED BY

25    PARTICIPANTS TO SAY, HERE'S THE TEN CATEGORIES OF WEBSITES

```
1    WHERE I'M WILLING TO SHOW MY ADS.  THAT'S, THAT'S THE

2    VERTICALS.

3              THE COURT:  AND THAT'S THE -- IS THAT THE DETECTED

4    VERTICAL?

5              MR. GUTKIN:  SO THE DETECTED VERTICAL WAS JUST THE

6    NAME THAT WAS USED FOR THE BID REQUEST FIELD WHILE THAT WAS

7    BEING USED.

8              THE COURT:  BUT IT'S --

9              MR. GUTKIN:  AND THE INTERNAL NAMES ARE DIFFERENT.

10             THE COURT:  OKAY.  ALL RIGHT.  SO LET'S FOCUS ON THE

11   VERTICALS.

12        WHAT IS -- WHAT DO YOU THINK IS THE TEXT IN THE -- SO I

13   APPRECIATE THAT I WROTE, LIKE, TWO PARAGRAPHS ABOUT DETECTED --

14   ABOUT THIS VERTICAL INFORMATION.

15        SO IS THERE SOME PART OF MY ORDER THAT YOU THINK IS MORE

16   EXPANSIVE THAN THE PART THAT GOOGLE IS FOCUSSING ON, OR REALLY

17   WHAT IS THE PROBLEM?

18             MR. BARNES:  I THINK WHAT GOOGLE JUST TOLD YOU IS

19   THEY'RE NOT GOING TO PRODUCE ANY INFORMATION TO US, AND LET ME

20   EXPLAIN WHY.

21        IN DEPOSITIONS THAT WE HAVE TAKEN ABOUT VERTICALS --

22             MR. GUTKIN:  AGAIN, PLEASE BE CAREFUL.

23             MR. BARNES:  I AM AWARE OF THE PUBLIC SETTING,

24   MR. GUTKIN.

25        IN DEPOSITIONS WE HAVE TAKEN ABOUT VERTICALS, FOR EXAMPLE,
```

```
 1    THE DETECTED VERTICALS WHICH WOULD BE IDENTIFIED IN THE PUBLIC

 2    PROTO, THEY CATEGORIZED THE CONTENT OF A URL.

 3         GOOGLE HAS TAKEN THE POSITION THAT EVEN WHEN THOSE TYPES

 4    OF VERTICALS WOULD BE SHARED IN ASSOCIATION WITH AN ACCOUNT

 5    HOLDER, THAT THAT'S ONLY CONTEXTUAL, IT'S ONLY RELATING TO THE

 6    WEBSITE.

 7         SO THAT'S THE FIRST PROBLEM.

 8              THE COURT:  OKAY.

 9              MR. BARNES:  THE SECOND PROBLEM, YOUR HONOR, IS THAT

10    YOU STATED EARLIER YOUR ORDER, YOU BELIEVED IT TO BE NOT JUST

11    WHAT IS EXPRESSLY SENT, BUT ALSO THE SORT OF INFORMATION THAT

12    CAN BE INFERRED FROM WHAT IS EXPRESSLY SENT.

13              THE COURT:  UM-HUM.

14              MR. BARNES:  SO, FOR EXAMPLE, THERE ARE -- AND THIS

15    IS PUBLICLY AVAILABLE BECAUSE YOU CAN SEE THAT THEY GO THROUGH

16    RTB, THE MAYO CLINIC HAS RTB ON IT.

17         ALMOST EVERY COMMUNICATION, WE BELIEVE, ON THE

18    MAYO CLINIC'S WEBSITE, NO MATTER HOW SENSITIVE THE MEDICAL

19    CONDITION, IS SHARED BY GOOGLE THROUGH RTB, CONNECTED TO THE

20    USER --

21              THE COURT:  SHARED WITH WHOM?  WITH THE RTB --

22              MR. BARNES:  SHARED WITH RTB PARTICIPANTS.  SO THEY

23    WILL SHARE, THAT URL.

24              THE COURT:  IS IT ASSOCIATED WITH THE PERSON VISITING

25    THE WEBSITE?
```

1            MR. BARNES:  IT IS ASSOCIATED WITH THE PERSON

2     VISITING THE WEBSITE.

3            THE COURT:  WHEN IT'S SHARED?  SO IN OTHER WORDS,

4     YOU'RE SAYING THAT WHEN IT'S SHARED, THE RTB PARTICIPANT CAN

5     SAY, OH, THIS PERSON WAS ON THIS WEBSITE?

6            MR. BARNES:  CORRECT.

7         IN OUR COMPLAINT, WE ATTACHED EXHIBIT 26 WHERE WE

8     HIGHLIGHTED SPECIFIC CATEGORIES OF INFORMATION --

9            THE COURT:  OKAY.  I'M NOT GOING BACK TO THAT.

10            MR. BARNES:  HOLD ON, YOUR HONOR, BECAUSE IT GOES

11     DIRECTLY TO THE POINT OF THE VERTICALS.

12            THE COURT:  NO, I GET THAT.  I DON'T THINK I'M

13     CHANGING ANYTHING.  I THINK MY ORDER IS ALREADY WHAT IT IS.

14         I MEAN, IF THAT'S TRUE, AND THE PARTIES DISPUTE THAT IT'S

15     TRUE, BUT IF IT'S TRUE THAT THERE IS INFORMATION THAT IS SHARED

16     WITH AN RTB PARTICIPANT THAT WOULD ALLOW THE RTB PARTICIPANT TO

17     INFER SOMETHING ABOUT THE ACCOUNT HOLDER, WHAT WEBSITE THEY'RE

18     VISITING, WHAT MEDICAL CONDITION THEY HAVE, WHATEVER IT IS,

19     THAT'S PART OF THE DISCLOSURE.  WHETHER YOU CALL IT A VERTICAL

20     OR NOT, THAT'S PART OF THE DISCLOSURE THAT I ORDERED FOR THE

21     NAMED PLAINTIFFS.

22         SO I'M NOT, YOU KNOW --

23            MR. BARNES:  THANK YOU, YOUR HONOR.

24            THE COURT:  AND IF YOU ALL DISPUTE WHETHER IT

25     ACTUALLY HAPPENS, THEN YOU'RE DOING THE RIGHT THING BY TAKING

1    YOUR DEPOSITION, AND IF THERE'S A PROBLEM, YOU CAN SUBMIT IT TO

2    ME AFTER THAT.

3         BUT I DON'T THINK IT CHANGES MY ORDER.  THAT'S NOT WHAT

4    THE PROBLEM IS BECAUSE MY ORDER IS PRETTY CLEAR.

5         SO IF IT'S LINKED DIRECTLY OR INDIRECTLY WITH AN ACCOUNT

6    HOLDER AND IT'S SHARED WITH AN RTB PARTICIPANT, IT GETS

7    PRODUCED, RIGHT?

8              MR. GUTKIN:  WELL, YOUR HONOR --

9              THE COURT:  WHY IS THAT NOT CORRECT?

10             MR. GUTKIN:  BECAUSE MR. BARNES, RESPECTFULLY, HAS

11   JUST SWEPT VERTICALS WHICH ARE NOT SHARED INTO A DISCUSSION OF

12   SOMETHING THAT IS ALREADY BEING PRODUCED.

13             THE COURT:  GREAT.  THEN THERE'S NO PROBLEM.

14             MR. GUTKIN:  WELL, I THINK THERE WILL BE, BECAUSE

15   HE'S GOING TO SAY, ON THE -- MAYBE THE ORDER ACTUALLY WILL MAKE

16   IT CLEAR.  OUR REQUEST WAS THAT IT'S CLEAR THAT WHAT WE'RE

17   TALKING ABOUT IS VERTICALS ASSOCIATED WITH THE USER.

18             THE COURT:  RIGHT.

19             MR. GUTKIN:  NOT VERTICALS ASSOCIATED WITH THE

20   WEBSITE.

21             THE COURT:  AND I'M NOT REVISITING ANY OTHER PART OF

22   MY ORDER WHERE I THINK THIS THING WAS PRETTY CONSISTENT.

23        SO I DON'T NEED ANYTHING MORE ON THIS.  I WILL ISSUE AN

24   ORDER IN RESPONSE TO THE REQUEST FOR CLARIFICATION, BUT I THINK

25   YOU'LL ALL BE NOT SURPRISED TO FIND OUT THAT I THINK I WAS

1    CLEAR.

2         SO, OKAY.  THAT'S IT FOR THIS PROCEEDING.

3         I WILL -- LET'S SEE.

4         GOING BACK -- I'M SORRY -- TO THE MERITS QUESTION, HOW

5    QUICKLY CAN GOOGLE GET ME THE UNDERLYING DOCUMENT THAT

6    CORRESPONDS TO LOG ENTRY 2813?

7              MR. SOMVICHIAN:  WE'LL GET IT TO YOU BY TOMORROW.

8              THE COURT:  OKAY.  YOU WANT TO SUBMIT THAT IN CAMERA

9    AS YOU DID BEFORE?

10             MR. SOMVICHIAN:  YES.

11             THE COURT:  VERY GOOD.  THANK YOU VERY MUCH.

12             MR. LEVINE:  YOUR HONOR, I KNOW WE'VE BEEN AWHILE,

13   AND THERE'S ONE MORE.  JUST ONE QUICK THING.

14        LOOKING AT THE TIMELINE AND HOW MUCH TIME WE HAVE LEFT

15   BEFORE OUR CLASS CERT MOTION IS DUE AGAIN, AND WE ARE REALLY

16   LOATHE TO GO BACK AND ASK FOR MORE TIME, BUT LOOKING AT HOW THE

17   PRIVILEGE LOG ISSUE IS GOING TO PLAY OUT AND UNDERSTANDING THAT

18   THERE'S PROBABLY 25 DIFFERENT DISCOVERY MOTIONS THAT ARE COMING

19   DOWN THE PIKE --

20             THE COURT:  OH, GOODY.

21             MR. LEVINE:  I KNOW.

22        WOULD THE COURT -- AND WE'VE DONE THIS IN OTHER CASES, BUT

23   I KNOW SOME JUDGES HAVE MONTHLY STATUS CONFERENCES WITH THE

24   PARTIES TO KEEP ON TRACK --

25             THE COURT:  DIDN'T I RULE ON THIS ALREADY?

```
1            MR. LEVINE:  I DON'T KNOW.  YOU MAY HAVE EARLIER.

2            THE COURT:  I THINK I MAY HAVE.

3        PERHAPS I'M CONFUSING YOU WITH MY OTHER FAVORITE CASE, BUT

4    I -- I DO THINK THAT REGULAR DISCUSSIONS MAY BE IN EVERYONE'S

5    INTERESTS.  I HAVE RELIED ON YOU TO MANAGE YOURSELVES

6    APPROPRIATELY.

7        WHAT I DON'T WANT TO DO IS HAVE -- I THINK I WAS ASKED,

8    YOU KNOW, IF I COULD HAVE, LIKE, SOME MASSIVE, FIVE-PART

9    REGULARLY NOTICED MOTION WITH FIVE DIFFERENT DISPUTES.

10       NO, I DON'T WANT TO GO DOWN THAT ROAD.

11       SO I KNOW YOU'RE ASKING FOR SOMETHING DIFFERENT.

12       I DON'T HAVE THE TIME TO HAVE YOU ALL IN -- MAYBE I DO IT

13   ANYWAY -- HAVE YOU ALL IN ON A MONTHLY BASIS ON A REGULAR

14   BASIS.  I MEAN, I'M IN TRIAL ALMOST THE WHOLE MONTH OF

15   FEBRUARY, SO I CAN'T MANAGE YOU THAT CLOSELY.

16       I REALLY NEED YOU ALL TO TAKE TO HEART THAT YOU HAVE TO

17   TALK TO EACH OTHER.  COOPERATE.  PLEASE TRY TO WORK OUT THE

18   THINGS THAT YOU CAN.  SOME THINGS JUST, THEY'RE NOT WORTH

19   FIGHTING ABOUT.

20       SO, I'M SORRY, I'M NOT GOING TO DISRUPT THE PRACTICE THAT

21   I HAVE BEEN ENGAGING IN.  I'M SORRY THAT YOU ALL ARE FEELING

22   UNDER THE GUN, BUT YOU'RE GOING TO HAVE TO COMPLY WITH MY

23   STANDING ORDER, AND I WILL TAKE THE DISPUTES AS THEY COME TO ME

24   AND TRY TO GET YOU RULINGS AS QUICKLY AS I CAN.

25       I'M NOT ALWAYS TAKING HEARINGS BECAUSE SOMETIMES IT'S MORE
```

1    EFFICIENT FOR ME TO DECIDE IT ON THE PAPERS.

2         PRIVILEGE IS A DIFFERENT ISSUE.  THAT REQUIRES OFTEN MORE

3    SUBSTANTIAL SUBMISSIONS.

4         MR. LEVINE:  THANK YOU.

5         AND COULD -- I KNOW THAT IT'S AN IN CAMERA SUBMISSION, BUT

6    COULD GOOGLE AT LEAST IDENTIFY THE NUMBER ON THE LOG OF THE

7    DOCUMENT THAT'S BEING SUBMITTED IN CAMERA?

8         THE COURT:  I THINK THAT'S FAIR.

9         MR. SOMVICHIAN:  WE'LL DO THAT.

10        THE COURT:  YEAH, YOU CAN LET THEM KNOW.

11        ALL RIGHT.  THANK YOU ALL VERY MUCH.  THIS MATTER IS

12    CONCLUDED.

13        MR. LEVINE:  THANK YOU, YOUR HONOR.

14        MR. SOMVICHIAN:  THANK YOU, YOUR HONOR.

15        (THE PROCEEDINGS WERE CONCLUDED AT 11:53 A.M.)

16

17

18

19

20

21

22

23

24

25

1

2

3                              CERTIFICATE OF REPORTER

4

5

6

7          I, THE UNDERSIGNED OFFICIAL COURT REPORTER OF THE UNITED

8     STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA,

9     280 SOUTH FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY

10    CERTIFY:

11         THAT THE FOREGOING TRANSCRIPT, CERTIFICATE INCLUSIVE, IS

12    A CORRECT TRANSCRIPT FROM THE RECORD OF PROCEEDINGS IN THE

13    ABOVE-ENTITLED MATTER.

14

15

16    _____
      LEE-ANNE SHORTRIDGE, CSR, CRR
17    CERTIFICATE NUMBER 9595

18              DATED:  FEBRUARY 6, 2023

19

20

21

22

23

24

25