# EXHIBIT A

## (REDACTED VERSION OF DOCUMENT SOUGHT TO BE FILED UNDER SEAL)

```
 1                    UNITED STATES DISTRICT COURT

 2                   NORTHERN DISTRICT OF CALIFORNIA

 3                         OAKLAND DIVISION

 4

 5                                    )  C-21-02155 YGR
      IN RE GOOGLE RTB CONSUMER       )
 6    PRIVACY LITIGATION,             )  SAN JOSE, CALIFORNIA
                                      )
 7                                    )  NOVEMBER 1, 2022
                                      )
 8    _____  )  PAGES 1-54

 9

10                    TRANSCRIPT OF PROCEEDINGS
           BEFORE THE HONORABLE VIRGINIA K. DEMARCHI
11                UNITED STATES MAGISTRATE JUDGE

12

13    A P P E A R A N C E S:

14    FOR THE PLAINTIFFS:    COTCHETT, PITRE & MCCARTHY LLP
                             BY:  BRIAN DANITZ
15                                ANDREW F. KIRTLEY
                             840 MALCOLM ROAD, SUITE 200
16                           BURLINGAME, CA 94010

17                           PRITZKER LEVINE LLP
                             BY:  JONATHAN K. LEVINE
18                           1900 POWELL STREET, SUITE 450
                             EMERYVILLE, CALIFORNIA  94608
19

20    FOR THE DEFENDANT:     COOLEY LLP
                             BY:  WHITTY SOMVICHIAN
21                           3 EMBARCADERO CENTER, 20TH FLOOR
                             SAN FRANCISCO, CALIFORNIA  94111
22

23    OFFICIAL COURT REPORTER:    LEE-ANNE SHORTRIDGE, CSR, CRR
                                  CERTIFICATE NUMBER 9595
24

25           PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
                 TRANSCRIPT PRODUCED WITH COMPUTER
```

```
 1      SAN JOSE, CALIFORNIA                    NOVEMBER 1, 2022

 2                     P R O C E E D I N G S

 3          (COURT CONVENED AT 11:40 A.M.)

 4              THE CLERK:  CALLING CASE 21-CV-2155, IN RE GOOGLE RTB

 5      CONSUMER PRIVACY LITIGATION, ON FOR DISCOVERY HEARING.

 6              MR. DANITZ:  GOOD MORNING, YOUR HONOR.

 7          BRIAN DANITZ OF COTCHETT, PITRE & MCCARTHY FOR THE

 8      PLAINTIFFS.

 9              THE COURT:  GOOD MORNING.

10              MR. LEVINE:  GOOD MORNING, YOUR HONOR.

11          JON LEVINE, PRITZKER LEVINE, FOR THE PLAINTIFFS.

12              THE COURT:  GOOD MORNING.

13              MR. KIRTLEY:  GOOD MORNING, YOUR HONOR.

14          ANDREW KIRTLEY, ALSO OF COTCHETT, PITRE & MCCARTHY FOR THE

15      PLAINTIFFS.

16              THE COURT:  GOOD MORNING.  IF YOU ALL WOULD PLEASE

17      MOVE THE MICROPHONES CLOSE TO YOU.

18          WILL THREE PEOPLE BE TALKING FROM THE PLAINTIFFS' SIDE, OR

19      WHO --

20              MR. DANITZ:  YOUR HONOR, IT'LL BE PRIMARILY MYSELF.

21              THE COURT:  ALL RIGHT.  FINE.

22          FOR THE DEFENSE?

23              MR. SOMVICHIAN:  GOOD MORNING, YOUR HONOR.

24          WHITTY SOMVICHIAN WITH COOLEY REPRESENTING GOOGLE TODAY.

25              THE COURT:  OKAY.  GOOD MORNING.
```

1        THIS MATTER IS ON FOR A DISCOVERY DISPUTE HEARING

2   REGARDING GOOGLE'S RESPONSES TO PLAINTIFFS' REQUESTS FOR

3   PRODUCTION, AND ACCORDING TO MY NOTES, THE RFP'S AT ISSUE ARE

4   91 THROUGH 97, AND 99 THROUGH 102.

5        I DO HAVE SOME QUESTIONS FOR THE PARTIES BASED ON WHAT

6   I'VE READ IN THE JOINT SUBMISSION.

7        AND I JUST WANTED TO CONFIRM -- I'LL START WITH THE

8   PLAINTIFFS, BECAUSE I DON'T HAVE THE DEFINITIONS.  YOU -- I

9   APPRECIATE THE SORT OF STREAMLINED PRESENTATION OF THE

10  OBJECTIONS AND THE REQUESTS, BUT I INFER FROM THE PAPERS THAT

11  "DECISION-MAKING PROCESS" IS A DEFINED TERM, AND WHEN THE RFP'S

12  USE OR YOU TALK ABOUT AN "AUTOMATED DATA SELECTION PROCESS,"

13  THOSE ARE THE SAME THINGS.  IS THAT CORRECT?

14        MR. DANITZ:  YES, YOUR HONOR.

15        AND WE PROVIDED THE DEFINITION OF "DECISION-MAKING

16  PROCESS" IN OUR PAPERS.

17        THE COURT:  YES, I SAW THAT.  I JUST WANTED TO MAKE

18   SURE THAT WHEN THE PARTIES ARE TALKING ABOUT THE "AUTOMATED

19   DATA SELECTION PROCESS," THAT WAS THE "DECISION-MAKING

20   PROCESS," IT'S THE SAME THING.

21        MR. DANITZ:  YES, YOUR HONOR.  IT'S TRUE, WE COME AT

22   IT FROM DIFFERENT ANGLES BECAUSE WE NEED THIS INFORMATION.

23        THE COURT:  OKAY.  AND THAT "DECISION-MAKING PROCESS"

24   IS DEFINED AS ANY SYSTEM THAT OPERATES TO -- AND I'M

25   PARAPHRASING -- PROGRAMATICALLY SELECT DATA THAT IS DISTRIBUTED

```
1        IN A GOOGLE RTB AUCTION.

2            SO MY UNDERSTANDING IS WHAT YOU'RE MEANING THERE IS

3    DISTRIBUTED TO THIRD PARTIES.  WE'VE EARLIER HAD SOME DEBATE

4    ABOUT DISTRIBUTED WITHIN GOOGLE, BUT YOU'RE MEANING TO DEFINE

5    THIS AS DISTRIBUTED TO THIRD PARTIES THROUGH THE GOOGLE RTB

6    AUCTION.

7            IS THAT A CORRECT UNDERSTANDING?

8            MR. DANITZ:  YES, THAT'S FAIR, YOUR HONOR.

9            THE COURT:  OKAY, GREAT.

10       ALL RIGHT.  SO WHEN I LOOKED AT THE REQUESTS FOR

11   PRODUCTION, IT SEEMED TO ME THAT 91 THROUGH 93 AND 97 WERE VERY

12   SIMILAR.  THEY'RE VERY SIMILAR REQUESTS, AND THEY WERE PRETTY

13   MUCH ALL ABOUT HOW IS DATA SELECTED TO BE DISTRIBUTED.

14           MR. DANITZ:  CORRECT, YOUR HONOR.

15           THE COURT:  AND THERE'S DIFFERENT SORT OF WAYS OF

16   GETTING AT THAT QUESTION, AND I WANTED TO MAKE SURE I WASN'T

17   MISSING SOMETHING THERE.

18           MR. DANITZ:  YOUR HONOR, WE ARE LASER FOCUSSED ON

19   THIS, ON THIS CATEGORY OF INFORMATION, AND WE'RE JUST TRYING TO

20   MAKE SURE WE GET IT.

21       SO, YES, I WOULD SAY THAT THEY ARE JUST DIFFERENT WAYS OF

22   PHRASING IT --

23           THE COURT:  UM-HUM.

24           MR. DANITZ:  -- SO THAT WE MAKE SURE WE GET THIS

25   INFORMATION.
```

```
1              THE COURT:  OKAY.  AND THEN WHEN I LOOKED AT SOME OF

2      THE OTHER REQUESTS, AND SPECIFICALLY 94 AND 95, THOSE SEEMED TO

3      ME TO BE A LITTLE BIT DIFFERENT.  IT WAS LESS CLEAR TO ME WHY

4      THE INFORMATION SOUGHT BY THESE TWO REQUESTS WAS RELEVANT TO

5      YOUR CLAIM.

6              SO REQUEST FOR PRODUCTION 94 IS -- AND AGAIN, I'M

7      PARAPHRASING THIS A LITTLE BIT -- DOCUMENTS SUFFICIENT TO SHOW

8      THE DATA INPUTS INTO THE DECISION-MAKING PROCESS, AND REQUEST

9      FOR PRODUCTION 95 IS DOCUMENTS SUFFICIENT TO SHOW THE VARIOUS

10     DATA SOURCES WITHIN GOOGLE FROM WHICH DATA IS SELECTED FOR

11     DISTRIBUTION BY THE DECISION-MAKING PROCESS.

12             SO WHAT I'M WONDERING IS, GIVEN THAT YOU HAVE RFP'S 91

13     THROUGH 93 AND 97 WHICH ARE, AS YOU SAY, LASER FOCUSSED ON HOW

14     YOU SELECTED THIS DISTRIBUTION, WHY YOU NEED DOCUMENTS

15     SUFFICIENT TO SHOW DATA INPUTS AND DATA SOURCES WHICH ARE

16     CAPTURED IN 94 AND 95.

17             MR. DANITZ:  THANK YOU, YOUR HONOR.

18             THERE ARE A COUPLE OF REASONS FOR THAT.  THE FIRST IS IT'S

19     THE OTHER PART OF THE PUZZLE, RIGHT?

20             IF YOU THINK OF THOSE CLAWS AT A CARNIVAL THAT GO IN AND

21     GRAB SOMETHING AND PULL IT OUT, YOU KNOW, THIS IS A MACHINE AND

22     IT GOES IN AND GRABS INFORMATION FROM DIFFERENT SOURCES.

23             IF YOU DON'T KNOW WHAT THE SOURCE IS, WHAT THE DATA INPUT

24     IS TO THE CLAW, YOU DON'T KNOW WHAT THE PRIZE IS.  YOU DON'T

25     KNOW WHAT'S COMING OUT.  YOU JUST KNOW THAT SOME PROCESS WENT
```

1    SOMEWHERE AND GOT SOMETHING.

2        SO WE NEED TO SEE THE DATA INPUT.  WE NEED TO SEE THE DATA

3    COMING INTO THAT THAT'S ABOUT TO BE SENT OUT.

4        THE COURT:  OKAY.  I'M NOT SURE THAT THAT IS -- I

5    MEAN, I SAW THAT ARGUMENT IN YOUR BRIEF, OR IN YOUR PART OF THE

6    JOINT LETTER WHICH SAYS INFORMATION ABOUT SPECIFIC DATA SOURCES

7    IS INTEGRAL AND A NECESSARY PART OF THE PUZZLE AND, WITHOUT IT,

8    YOU CAN'T UNDERSTAND HOW GOOGLE RTB SELECTS THE ACCOUNT HOLDER

9    INFORMATION IT DISTRIBUTES TO THIRD PARTIES.

10        BUT IT SEEMS TO ME THAT IF YOU HAVE THE INFORMATION THAT

11    YOU'RE ASKING FOR IN RESPONSE TO REQUEST FOR PRODUCTION 91

12    THROUGH 93, FOR EXAMPLE, THAT YOU HAVE WHAT INFORMATION IS

13    SELECTED FOR DISTRIBUTION TO THIRD PARTIES.

14        I DON'T SEE HOW IT WOULD BE A MYSTERY WHAT INFORMATION IS

15    ACTUALLY SELECTED AND DISTRIBUTED TO THIRD PARTIES.

16        MR. DANITZ:  YOUR HONOR, IT COULD SAY GO TO BOX X,

17    AND WE DON'T KNOW WHAT BOX X IS.  SO WE WOULD LIKE TO KNOW,

18    WHAT IS THAT DATA INPUT?

19        IT'S ALSO QUITE POSSIBLE THAT THIS PROCESS, WHICH HAPPENS,

20    YOU KNOW, IN THE BLINK OF AN EYE WITHOUT ANY HUMAN

21    INTERVENTION, USES DATA IN A WAY THAT AFFECTS THE

22    DECISION-MAKING PROCESS, RIGHT, AND THOSE DATA INPUTS, YOU

23    KNOW, ARE RELEVANT TO UNDERSTANDING HOW IT WORKS.

24        FOR EXAMPLE, THERE MAY BE DIFFERENT CUSTOMERS -- WE KNOW

25    THERE ARE DIFFERENT CUSTOMERS WITH SPECIAL RELATIONSHIPS, WITH

```
 1      CONTRACTS.  YOU KNOW, THESE MAY BE -- YOU KNOW, THAT FACT,

 2      BASED ON THE URL, RIGHT, COULD DIVERT THE MACHINE INTO A NEW --

 3      A DIFFERENT SELECTION PROCESS.

 4          I MEAN, WE DON'T HAVE -- THIS IS ALL INFORMATION THAT'S

 5      EXCLUSIVELY IN GOOGLE'S POSSESSION.  WE DON'T KNOW WHAT THE

 6      PROCESS IS --

 7              THE COURT:  I UNDERSTAND THAT.

 8              MR. DANITZ:  -- A YEAR AND A HALF INTO THIS

 9      DISCOVERY.

10              THE COURT:  OKAY.  WHAT YOU NEED TO KNOW, AND I'M

11      AGREEING WITH YOU, YOU NEED TO KNOW WHAT INFORMATION IS

12      SELECTED FOR DISTRIBUTION TO THIRD PARTIES.  OKAY.  SO WE DON'T

13      NEED TO DEBATE THAT.  I AGREE WITH YOU.

14          WHAT I DON'T UNDERSTAND IS HOW HAVING THE DATA INPUT --

15      I'M NOT EVEN SURE I KNOW WHAT DATA INPUTS ARE -- OR THE DATA

16      SOURCES, HOW ADDITIONAL INFORMATION ABOUT THAT IS AT ALL

17      RELEVANT TO YOUR CLAIMS.

18              MR. DANITZ:  OUR CONCERN IS THAT WE GET A, A SHELL OF

19      A DESCRIPTION OF A -- THIS IS ALL VERY TECHNICAL, AS YOUR HONOR

20      KNOWS.  THIS IS A VERY TECHNICAL CASE.

21          AND THE CONCERN IS THAT WE GET A TECHNICAL SHELL WITHOUT

22      ANY SUBSTANCE, RIGHT?  WE WANT TO KNOW, WHAT IS THE INFORMATION

23      THAT'S BEING GRABBED?

24              THE COURT:  SO LET ME ASK THE QUESTION FROM A

25      DIFFERENT ANGLE.  SO GOOGLE SAYS IN ITS PAPERS -- WELL, YOU
```

1    ACKNOWLEDGE, I THINK, IN YOUR PAPERS THAT THERE HAS BEEN

2    INFORMATION PRODUCED, BUT IT'S ALL EXTERNALLY FACING, SO IT'S

3    INFORMATION THAT WOULD BE AVAILABLE TO THIRD PARTY, THIRD PARTY

4    PARTICIPANTS, THIRD PARTY APP DEVELOPERS, SOMETHING LIKE THAT,

5    ABOUT WHAT INFORMATION IS PROVIDED.

6        SO WHAT I'M -- WHAT I'M WONDERING IS -- I GET THE "HOW,"

7    LIKE, YOU WANT TO KNOW HOW IT'S SELECTED.

8        BUT DON'T YOU ALREADY KNOW THE "IT"?  I'VE DONE LOTS OF

9    THESE HEARINGS AND WE'VE SPENT A LOT OF TIME WHERE I'VE MADE IT

10   REALLY CLEAR THAT THE PLAINTIFFS ARE ENTITLED TO KNOW THE "IT,"

11   WHAT IT IS THAT THIRD PARTIES GET.

12       AND --

13           MR. DANITZ:  THE ANSWER IS NO, YOUR HONOR.

14           THE COURT:  SO YOU'RE SAYING THAT YOU CURRENTLY DON'T

15   HAVE -- I WAS TOLD, IN A PRIOR DISPUTE, THAT THERE WAS A LIST

16   THAT ITEMIZED THE KINDS OF INFORMATION THAT IS DISCLOSED.

17       ARE YOU TELLING ME RIGHT NOW THAT YOU DON'T HAVE THAT FROM

18   THE DEFENDANT?

19           MR. DANITZ:  NO.  THERE'S A LIST THAT'S PUBLIC FACING

20   THAT SHOWS THE KIND OF INFORMATION THAT'S GENERALLY DISCLOSED.

21       WE WANT TO UNDERSTAND WHAT REALLY HAPPENS, WHAT IS THE

22   DESIGN OF THIS THING, RIGHT?  AND WHAT INFORMATION IS SELECTED

23   TO GO OUT, INCLUDING IF THERE ARE PARTICULAR CUSTOMERS WITH

24   SPECIAL RELATIONSHIPS WHICH, AS YOU -- TO QUOTE YOUR HONOR FROM

25   EARLIER TODAY, COULD BE AN EXCEPTION THAT SWALLOWS THE RULE,

1     FOR EXAMPLE, FROM ████, FROM A VERY LARGE PLAYER, THEY

2     HAVE SPECIAL ARRANGEMENTS RELATED TO SHARING OF INFORMATION,

3     THAT WOULD BE IN THESE INSTRUCTIONS, AND DIFFERENT CATEGORIES

4     OF INFORMATION THAN THE PUBLIC FACING DOCUMENT WE RECEIVED.

5          ALL I KNOW IS THAT THIS HAPPENS -- THERE'S A NIAGARA FALLS

6     OF DATA EVERY DAY, EVERY SECOND, AND THAT PUBLIC FACING LIST

7     MAY BE THE BE ALL AND END ALL OF IT.

8          BUT WE WANT TO REALLY SEE HOW THIS HAPPENS AND WHAT

9     INFORMATION IS SELECTED.

10         WE DON'T BELIEVE -- WE HAVEN'T SEEN THE INSIDES OF THIS

11    MACHINE.  WE HAVEN'T SEEN WHAT THEY ACTUALLY DO.  RIGHT?  WE

12    SHOULD BE ABLE TO SEE THE PICTURE --

13              THE COURT:  SO ARE YOU SUSPICIOUS --

14              MR. DANITZ:  WE HAVE A DUTY TO THE CLASS TO

15    UNDERSTAND THIS PROCESS.

16              THE COURT:  ARE YOU -- JUST A MOMENT.

17              MR. DANITZ:  WE'RE NOT JUST TAKING A SPREADSHEET --

18              THE COURT:  ARE YOU SUSPICIOUS THAT THE INFORMATION

19    THAT GOOGLE HAS PROVIDED IS INACCURATE?  DO YOU HAVE SOME

20    REASON TO THINK THAT THIS CHART OR SPREADSHEET --

21              MR. DANITZ:  YES, YOUR HONOR.

22              THE COURT:  -- DOES NOT ACCURATELY REPRESENT?

23              MR. DANITZ:  YES, YOUR HONOR.  THERE ARE CONTRACTS

24    WITH -- SPECIAL ARRANGEMENTS WITH BIG PLAYERS, SUCH AS

25    ████, THAT PROVIDE FOR SHARING OF PERSONAL INFORMATION

1    THAT'S DIFFERENT THAN NORMAL RTB RECIPIENTS.

2              THE COURT:  UM-HUM.

3              MR. DANITZ:  BUT THERE IS ALSO, AT THE SAME TIME, THE

4    FACT THAT NO INTERNAL INFORMATION ABOUT HOW THIS INTERNALLY

5    WORKS IS BEING PROVIDED.  IT IS A BLACK BOX.  IT SHOULD NOT BE.

6              THE COURT:  SO THE -- THE CONTRACTS WITH THIRD

7    PARTIES SOUNDS VERY FAMILIAR.  I FEEL LIKE THIS HAS COME UP

8    BEFORE AS WELL, BUT I DON'T HAVE THOSE PAPERS BEFORE ME RIGHT

9    NOW.

10        HOW WOULD YOU DESCRIBE THE DATA INPUT AND DATA SOURCES

11   INFORMATION THAT YOU'RE AFTER?  IT LOOKED LIKE THAT MIGHT BE A

12   PARTIALLY DEFINED TERM AND I DID NOT HAVE THAT.

13             MR. DANITZ:  YOUR HONOR, IT'S EXCLUSIVELY IN GOOGLE'S

14   POSSESSION, CUSTODY, AND CONTROL.

15        AND I THINK THE CALHOUN CONTINGENT OF OUR CASE, THEY MAY

16   KNOW MORE THAN I DO.  I AM NOT PART OF THAT CONTINGENT.

17             THE COURT:  OKAY.

18             MR. DANITZ:  AND, YOU KNOW, THE KINDS OF BURDENS THAT

19   WE'VE HAD TO BEAR IN THIS CASE TO UNDERSTAND, WITHOUT ANY

20   PRODUCTION FROM THEM, ABOUT DATABASES AND -- YOU KNOW, IT'S

21   UNBELIEVABLE.

22             THE COURT:  OKAY.

23             MR. DANITZ:  THEY NEED TO PRODUCE THIS, THIS

24   INFORMATION SO WE CAN UNDERSTAND HOW THIS WORKS.

25             THE COURT:  OKAY.  LET ME ASK ABOUT NUMBER 96,

1    RFP 96, WHICH IS THE REQUEST THAT SAYS, WHY DO YOU NEED TO

2    KNOW -- OR REQUEST THAT SAYS "THE ARCHITECTURE OF THE SOFTWARE

3    PROGRAM WHICH COMPRISE THE DECISION-MAKING PROCESS BY WHICH

4    DATA IS SELECTED" FOR DISTRIBUTION.  THAT'S WHAT THAT RFP IS

5    DIRECTED TOWARDS.

6         SO IF YOU'RE ASKING FOR INFORMATION ABOUT HOW DATA IS

7    SELECTED FOR DISTRIBUTION, WHY WOULD YOU ALSO NEED TO KNOW THE

8    ARCHITECTURE?

9         AND BY "ARCHITECTURE," I UNDERSTAND THAT TO BE A BROADLY

10   ENCOMPASSING TERM THAT COULD INCLUDE SOURCE CODE, IT COULD

11   INCLUDE SOMETHING HIGHER LEVEL THAN SOURCE CODE.

12        BUT YOU'RE ASKING FOR THE ARCHITECTURE OF THE SOFTWARE.

13   THAT'S GETTING EVEN MORE ATTENUATED FROM WHAT'S AT ISSUE IN

14   YOUR CASE.

15             MR. DANITZ:  WELL, YOUR HONOR, WE'RE TRYING TO

16   UNDERSTAND, FROM BOTH A GATING, A MORE GRANULAR GATING

17   PERSPECTIVE OF THOSE DECISIONS --

18             THE COURT:  UM-HUM.

19             MR. DANITZ:  -- YOU KNOW, HOW THOSE DECISIONS ARE

20   MADE BY THIS PROCESS, TO A BIGGER PICTURE TO SEE HOW THE

21   OVERALL PROCESS WORKS.

22        THAT'S WHY WE CHOSE THE WORD "ARCHITECTURE."

23        WHETHER -- EXACTLY WHAT KIND OF INFORMATION IS PRODUCED

24   WOULD BE UP TO GOOGLE.  THIS IS SUFFICIENT TO SHOW, RIGHT?

25             THE COURT:  BUT WHY DO YOU NEED ARCHITECTURE LEVEL

```
 1      DETAIL IS REALLY MY QUESTION?
 2              MR. DANITZ:  WE'RE JUST TRYING TO UNDERSTAND HOW THIS
 3      MACHINE WORKS.  THAT'S REALLY IT.
 4          AND IF WE JUST GET A FEW LITTLE PIECES HERE AND THERE OF
 5      DECISION MAKING, WITHOUT SEEING HOW THE PIECES FIT TOGETHER,
 6      THE ARCHITECTURE WOULD BE LIKE A BLUEPRINT TO SHOW US -- TO
 7      SHOW US, HOW DO THE PIECES FIT TOGETHER?
 8              THE COURT:  OKAY.  LET ME ASK ABOUT REQUEST NUMBER
 9      99.  THIS ONE ASKS FOR ALL DOCUMENTATION -- SORRY -- ALL
10      DOCUMENTS AND COMMUNICATIONS CONCERNING RESTRICTIONS TO EXCLUDE
11      DATA --
12              MR. DANITZ:  YES.
13              THE COURT:  -- FROM DISTRIBUTION.  AGAIN, I'M
14      PARAPHRASING.
15          SO AS I UNDERSTAND IT, THE PLAINTIFFS HAVE PROPOSED TO
16      LIMIT THIS REQUEST TO A SET OF SPECIFIC CUSTODIANS AND SHARED
17      REPOSITORIES.  THAT'S PART OF THE DISCUSSION BETWEEN THE
18      PARTIES, AND GOOGLE HAS NOT AGREED TO THAT.
19          SO COULD YOU JUST SHARE WITH ME HOW THE APPLICATION OF
20      FILTERS OR DESCRIPTIONS BEARS ON YOUR THEORY OF THE CASE?  I
21      WANT TO GET AN UNDERSTANDING OF HOW, HOW THIS -- WHY THIS IS
22      IMPORTANT FOR YOUR CLAIMS.
23              MR. DANITZ:  YES, YOUR HONOR.
24          SO THERE ARE -- MUCH OF GOOGLE'S DISCOVERY FOR PLAINTIFFS
25      HAS BEEN TOWARDS SETTINGS, VARIOUS RESTRICTIONS THAT COULD BE
```

```
1     PUT IN PLACE, AND NO DOUBT THAT SHOULD THIS GO FORWARD TO

2     SUMMARY JUDGMENT, SHOULD THIS GO FORWARD TO TRIAL, THE ISSUES

3     WILL BE RAISED BY GOOGLE THAT THEY BLOCK PERSONAL INFORMATION,

4     OR CERTAIN CATEGORIES OF INFORMATION, WHEN NO CONSENT IS GIVEN

5     OR WHEN CONSENT IS WITHDRAWN.

6          THE COURT:  SO THESE ARE FILTERS OR RESTRICTIONS THAT

7     ARE IMPLEMENTED AS A RESULT OF SOME ACTION OR INACTION, OPT IN,

8     CONSENT, OR NOT CONSENT, OF A USER.

9          MR. DANITZ:  OF A USER, OR OF A LOG.

10         THE COURT:  SO THE LOG REQUIRES -- I GOT IT.  SO

11    THOSE ARE WHAT THE FILTERS AND RESTRICTIONS ARE ABOUT.

12         MR. DANITZ:  AND CLEARLY THAT WILL BE AT ISSUE IN

13    THIS CASE.

14         THE COURT:  OKAY.  ALL RIGHT.

15       SO I UNDERSTAND FROM LOOKING AT THE DOCUMENT REQUEST THAT

16    GOOGLE HAS AGREED TO PRODUCE INFORMATION CALLED FOR BY REQUEST

17    FOR PRODUCTION 98, AND THOSE ARE DOCUMENTS SUFFICIENT TO

18    SHOW -- LET ME GET IT HERE -- DOCUMENTS SUFFICIENT TO SHOW ANY

19    FILTERS OR RESTRICTIONS USED TO EXCLUDE DATA FROM THE SET OF

20    DATA DISTRIBUTED TO THE GOOGLE RTB PARTICIPANTS IN BID

21    REQUESTS.

22       SO THEY SAID, YES, WE'LL GIVE YOU THAT.

23         MR. DANITZ:  YOUR HONOR, DID YOU SAY RFP 98?

24         THE COURT:  YES.

25         MR. DANITZ:  RIGHT.  WELL, GOOGLE -- WHAT I HAVE IN
```

```
 1        FRONT OF ME IS SUFFICIENT -- GOOGLE HAS AGREED TO PRODUCE

 2        DOCUMENTS SUFFICIENT TO SHOW THE FILTERS OR RESTRICTIONS --

 3                  THE COURT:  YEAH, OKAY.  SO LET ME FINISH MY

 4        QUESTION, WHICH IS, IF YOU HAVE THAT INFORMATION, WHAT MORE ARE

 5        YOU ASKING FOR VIA 99?  WHAT'S THE DELTA?

 6                  MR. DANITZ:  WELL, WE'D LIKE TO HAVE SOME SUBSTANTIVE

 7        DISCUSSION REGARDING THE FILTERS AND RESTRICTIONS SO WE CAN

 8        UNDERSTAND WHAT THEY ARE, NOT JUST FILTER ███.  THAT'S -- THAT

 9        WOULD BE SUFFICIENT TO SHOW THE FILTER OR RESTRICTION.

10            YOUR HONOR, DEFENDANTS, WITH DUE RESPECT, HAVE PARSED

11        THESE DISCOVERY REQUESTS EXTREMELY FINELY, LOOKING VERY CLOSELY

12        AT YOUR HONOR'S ORDERS AND VERY CLOSELY AT THE WORDING OF THE

13        REQUESTS IN THEIR RESPONSES, NOT FULSOMELY PRODUCING DOCUMENTS

14        BECAUSE THEY HAVE NOTHING TO HIDE, NOT PROVIDING US WITH --

15                  THE COURT:  OKAY.

16                  MR. DANITZ:  -- 55,000 DOCUMENTS A YEAR AND A HALF

17        LATER.

18                  THE COURT:  I'M SORRY, MR. DANITZ, THIS IS NOT

19        HELPFUL.  THIS IS NOT HELPFUL.

20                  MR. DANITZ:  YOUR HONOR --

21                  THE COURT:  I'M REALLY TRYING TO UNDERSTAND WHAT THE

22        DIFFERENCE --

23                  MR. DANITZ:  YOUR HONOR, WHEN THEY SAY --

24                  THE COURT:  PLEASE DON'T INTERRUPT.

25            I'M TRYING TO UNDERSTAND WHAT THE DIFFERENCE IS, AND WHAT
```

1    YOU WANT, BETWEEN 99 AND 98.

2        SO YOU STARTED BY SAYING SOMETHING I THOUGHT WAS HELPFUL,

3    WHICH IS, WE WANT TO HAVE SOME EXPLANATION FOR WHAT THESE

4    FILTERS OR RESTRICTIONS ARE.

5        IS THAT WHAT YOU'RE LOOKING FOR?

6        MR. DANITZ:  YOUR HONOR, WE -- FOR 98, WE WOULD LIKE

7    TO HAVE AN UNDERSTANDING -- YES, WE ARE ASKING FOR -- WE WANT

8    TO UNDERSTAND WHAT THESE FILTERS OR RESTRICTIONS ARE.

9        THEN WE WANT TO UNDERSTAND SUBSTANTIVE DISCUSSION,

10   COMMUNICATIONS.  WE'RE WILLING TO LIMIT IT TO CERTAIN

11   CUSTODIANS REGARDING THOSE FILTERS AND HOW THEY'VE CHANGED OVER

12   TIME BECAUSE THERE IS A -- THERE IS A CLASS PERIOD HERE, RIGHT,

13   AND THERE HAS BEEN A SERIOUS CHANGE IN POLICIES OVER TIME.

14       WE NEED TO UNDERSTAND HOW THIS HAS CHANGED, BECAUSE IT

15   COULD AFFECT OUR CLASS, AND IT COULD CREATE SUBCLASSES.  WE

16   NEED TO UNDERSTAND THAT.

17       THE COURT:  OKAY.  SO THIS IS YOUR WAY OF GETTING AT

18   HOW HAS THIS POLICY CHANGED OVER TIME, OR HOW HAS THE

19   IMPLEMENTATION OF FILTERS AND RESTRICTIONS CHANGED OVER TIME

20   DURING THE CLASS PERIOD?

21       MR. DANITZ:  THAT IS -- THAT WOULD BE ONE VERY

22   SIGNIFICANT PIECE OF IT, YES.

23       THE COURT:  OKAY.  BECAUSE, YOU KNOW, GOOGLE'S

24   ARGUMENT IS YOU'RE ASKING FOR ALL DOCUMENTS AND COMMUNICATIONS.

25   YOU WANT EMAILS ABOUT FILTERS AND RESTRICTIONS.

1      THEY POINT OUT THAT YOU GUYS HAVE ALREADY BEEN THROUGH THE

2  WHOLE EXERCISE OF SEARCH TERMS, CUSTODIANS, THIS WHOLE

3  NEGOTIATION THAT TOOK MONTHS AND MONTHS AND MONTHS, AND NOW DO

4  IT OVER, DO IT AGAIN, DO IT DIFFERENTLY.

5      AND IT MAY BE WARRANTED TO HAVE ADDITIONAL SEARCHES.  I'M

6  NOT FORECLOSING THAT.

7      BUT WHAT I'M TRYING TO UNDERSTAND IS, WHAT DO YOU NEED,

8  AND IS IT WORTH THAT EFFORT?

9      SO I DON'T GET THAT FROM THE PAPERS, AND THIS IS THE

10  OPPORTUNITY FOR YOU TO SHARE WITH ME, FROM THESE CUSTODIANS,

11  BECAUSE WE'VE LEARNED IN DISCOVERY THAT THESE ARE THE KEY

12  PEOPLE, OR THESE REPOSITORIES ARE THE ONES THAT ARE GOING TO

13  HAVE THE INFORMATION.

14      MR. DANITZ:  OKAY.

15      THE COURT:  SO I JUST -- YOU CAN'T JUST SAY, WE DON'T

16  HAVE ANYTHING, OR IT'S NOT ENOUGH AND, THEREFORE, THEY SHOULD

17  JUST DO ALL DOCUMENTS AND COMMUNICATIONS.

18      MR. DANITZ:  THANK YOU, YOUR HONOR.

19      WE CAN'T REALLY SPEAK TO THE REPOSITORIES BECAUSE WE DON'T

20  KNOW ALL THEIR REPOSITORIES.  WE'VE NOT BEEN ALLOWED TO TAKE

21  DISCOVERY ON THE SOURCES OF GOOGLE INFORMATION, SO WE DON'T

22  HAVE THAT INFORMATION.  WE DO NOT HAVE IT.  WE WOULD LIKE TO

23  HAVE IT.  WE DON'T HAVE IT.  SO WE DON'T KNOW THE REPOSITORIES.

24      THAT, AGAIN, IS EXCLUSIVELY IN GOOGLE'S POSSESSION,

25  CUSTODY, AND CONTROL.  THEY HAVE A DUTY TO GO TO THE RELEVANT

1    REPOSITORIES AND PRODUCE THE DOCUMENTS THAT WERE REQUESTED.

2         IN TERMS OF THE CUSTODIANS, AGAIN, GOOGLE SHOULD KNOW

3    WHICH CUSTODIANS WOULD HAVE THIS INFORMATION.

4         THE REASON THIS IS SO IMPORTANT NOW IS BECAUSE GOOGLE HAS

5    ALMOST EXCLUSIVELY FOCUSSED ITS DISCOVERY ON THESE ISSUES, ON

6    THESE SETTINGS, ON THESE FILTERS.  RIGHT?

7              THE COURT:  WHAT DO YOU MEAN BY THAT?

8              MR. DANITZ:  THE DEFENSE --

9              THE COURT:  I'M SORRY.  WHAT DO YOU MEAN BY THAT?

10             MR. DANITZ:  THAT IS THE DEFENSE.

11             THE COURT:  YOU MEAN THEY FOCUSSED THE DISCOVERY OF

12   YOUR CLIENTS?

13             MR. DANITZ:  YES.

14             THE COURT:  OKAY.

15             MR. DANITZ:  THAT IS THE DEFENSE THAT THEY WILL

16   RAISE.  THEY ARE GOING TO SAY NO CLASS CERT BECAUSE PEOPLE HAVE

17   DIFFERENT SETTINGS.  THEY'RE GOING TO SAY, YOU KNOW, WE ACTED

18   REASONABLY BECAUSE PEOPLE CAN CHANGE THESE SETTINGS.  RIGHT?

19        SO WE WANT TO UNDERSTAND, OVER TIME, WHAT HAS HAPPENED

20   WITH THESE SETTINGS, WITH THESE FILTERS, AND, YOU KNOW, WHAT

21   HAS BEEN THE SUBSTANCE OF THESE CHANGES, WHAT'S DRIVEN THESE

22   CHANGES?

23        SO, YOU KNOW, WE DON'T WANT TO BE IN A 56(D) POSITION, YOU

24   KNOW, A FEW MONTHS DOWN THE LINE.  WE WANT TO HAVE THAT

25   INFORMATION.

1          THE COURT:  YEAH.  SO THE DIFFICULTY I HAVE, AND IT'S

2     NOT UNIQUE TO THIS DISPUTE, IS THAT THE REQUEST IS ALL

3     DOCUMENTS AND COMMUNICATIONS --

4          MR. DANITZ:  YOUR HONOR --

5          THE COURT:  -- RELATING TO FILTERS AND RESTRICTIONS.

6     LIKE, THAT'S NOT GOING TO HAPPEN.

7          MR. DANITZ:  WELL, YOUR HONOR, WE'RE NOT ASKING FOR

8     THAT REALLY.  BUT "SUFFICIENT TO SHOW" HAS NOT YIELDED -- IT'S

9     YIELDED 55,000 DOCUMENTS IN A YEAR AND A HALF, WHICH IS A

10    RIDICULOUSLY SMALL AMOUNT OF DOCUMENTS IN THIS CASE.

11         THE COURT:  WELL, DO YOU WANT ME TO REWRITE IT FOR

12    YOU?

13         MR. DANITZ:  NO.

14         THE COURT:  THE WHOLE POINT --

15         MR. DANITZ:  WE NEGOTIATED WITH GOOGLE ON THIS.

16         THE COURT:  BUT YOU HAVEN'T.  SO YOU COME TO ME WITH

17    A REQUEST THAT YOU SAY -- THAT YOU, I THINK, WOULD ACKNOWLEDGE

18    IS OVERLY BROAD.  IT SAYS, "ALL DOCUMENTS AND COMMUNICATIONS

19    CONCERNING ANY RESTRICTIONS USED TO EXCLUDE DATA FROM THE SET

20    OF DATA DISTRIBUTED TO GOOGLE RTB PARTICIPANTS IN A BID

21    REQUEST."

22         LIKE, EVERY EMAIL THAT MENTIONS A RESTRICTION OR A FILTER?

23    NO.

24         SO THEN I EXPECT THE PARTIES TO MEET AND CONFER.  AND

25    GOOGLE'S RESPONSE IS, WE'VE ALREADY DEVELOPED SEARCH TERMS AND

1    IDENTIFIED CUSTODIANS TO FIND THIS KIND OF INFORMATION.  WE

2    SHOULDN'T HAVE TO DO IT AGAIN.

3         YOU DISAGREE.

4         I CAN'T GRANT THIS BROAD REQUEST BECAUSE THAT IS

5    RIDICULOUSLY BROAD.

6              MR. DANITZ:  ALL RIGHT.

7              THE COURT:  WHAT DO I DO?  GIVE ME SOMETHING THAT I

8    CAN LATCH ON TO THAT SAYS, THIS IS WHAT I WAS EXPLORING.

9              WHAT MORE DO YOU NEED?  IF YOU WANT COMMUNICATIONS THAT

10   SAY, OR DOCUMENTS THAT SAY HOW THIS HAS BEEN IMPLEMENTED AND

11   CHANGED OVER TIME, THAT'S ONE THING.

12        TELL ME WHAT YOU NEED.

13             MR. DANITZ:  YOUR HONOR, WHAT -- THE WAY YOU JUST

14   EXPRESSED IT, AND COMMUNICATIONS, REGARDING HOW THIS, HOW THIS

15   HAS CHANGED OVER TIME, THAT IS A VERY SUCCINCT EXPRESSION OF

16   WHAT WE'RE LOOKING FOR.

17        AND WE DON'T NEED YOU TO CROSS GOOGLE.  WE'RE WILLING TO

18   TALK ABOUT A LIMITED SET OF THE RELEVANT CUSTODIANS.

19             THE COURT:  IT'S JUST -- I'M SORRY TO GET AGGRAVATED,

20   BUT WHEN I SEE REPEATEDLY EXTRAORDINARILY BROAD REQUESTS -- AND

21   MOST OF THESE WERE NOT.  YOU KNOW, GOOD FOR YOU.  DOCUMENTS

22   SUFFICIENT TO SHOW, THAT'S GREAT.

23        BUT, YOU KNOW, IT LEAVES ME WITHOUT THE ABILITY TO HELP

24   YOU.  YOU KNOW, I'M TRYING TO HELP THE PARTIES RESOLVE THIS

25   DISPUTE BY MAKING A SENSIBLE DECISION.

1          BUT WHEN YOU SAY, I WANT THE UNIVERSE, I CAN'T -- I CAN'T

2     HELP YOU.

3          MR. DANITZ:  YOUR HONOR, THE WAY YOU EXPRESSED IT

4     JUST NOW WAS PERFECTLY SUCCINCT.

5          AND WE HAVE -- AS WE STATED IN THE MEET AND CONFER, WE

6     NEVER EXPECTED ALL.  WE WANT TO LIMIT IT TO A SMALL SET OF

7     CUSTODIANS AND CENTRAL REPOSITORIES.

8          WE WERE TOLD NO, AND THAT'S WHY WE'RE HERE.

9          IF YOUR HONOR IS GOING TO HOLD US TO THE EXPRESSION OF THE

10    INITIAL REQUEST, I GUESS WE'LL HAVE TO RE-ISSUE IT IN A MORE

11    NARROW FASHION.

12          THE COURT:  I JUST NEED A PROPOSAL AS TO WHAT

13    YOU'RE -- WHAT YOU WOULD FIND ACCEPTABLE.  JUST SAYING THIS

14    BROAD REQUEST WITH A NARROW SET OF CUSTODIANS, WE DON'T KNOW

15    WHO, WE DON'T KNOW WHERE, THAT DOESN'T HELP ME.

16          MR. DANITZ:  THE DOCUMENT -- I CAN IMPROVISE, IF I

17    MAY.

18          THE COURT:  LET ME GET THE OTHER SIDE OF THIS

19    DISPUTE.  WE'LL COME BACK TO THIS ONE.  AND MAYBE THAT'S AN

20    APPROPRIATE THING FOR YOU ALL TO CONFER ON FURTHER, BUT I'D

21    LIKE TO HEAR MORE ABOUT WHAT'S AT STAKE BEFORE I HAVE YOU

22    IMPROVISE.

23          MR. DANITZ:  THANK YOU, YOUR HONOR.

24          THE COURT:  THERE ARE THREE MORE REQUESTS THAT SEEM

25    TO BE AT ISSUE.

```
 1            REQUEST FOR PRODUCTION 100, IT SEEMS TO ME THERE'S NOT

 2     REALLY A DISPUTE HERE.  THAT REQUEST ASKS FOR "DOCUMENTS

 3     SUFFICIENT TO SHOW HOW USER OPT-OUT SIGNALS AND/OR USER CONSENT

 4     SIGNALS IMPACT THE DECISION-MAKING PROCESS."

 5            GOOGLE SAYS, WE'RE NOT DISTINGUISHING BETWEEN OPT-OUT

 6     SIGNALS AND USER CONSENT SIGNALS AND IT WILL PRODUCE RESPONSIVE

 7     DOCUMENTS RELATED TO SPECIFIC SIGNALS IN THE EXAMPLES THAT ARE

 8     GIVEN IN THE REQUEST.

 9            SO IF I PUT IN MY ORDER THAT, ARE YOU SATISFIED?

10              MR. DANITZ:  YOUR HONOR, THERE'S -- I SUPPOSE

11      THERE'S -- AS YOU CAN IMAGINE, YOUR HONOR, AS THE COURT MIGHT

12       IMAGINE, THERE'S BEEN A LITTLE BIT OF TENSION IN MEET AND

13       CONFERS, AND PART OF THAT ARISES FROM THE FACT THAT GOOGLE

14       NEVER JUST SAYS, YES, WE WILL PRODUCE RESPONSIVE DOCUMENTS

15       AFTER CONDUCTING A REASONABLE SEARCH.

16            GOOGLE INSTEAD REWORDS THE REQUEST, PICKS CERTAIN LANGUAGE

17      OUT OF THE REQUESTS, AND SAYS THAT THEY'LL PRODUCE THAT.

18      RIGHT?

19            SO THE ACTUAL REQUEST IN THE RECORD, WHICH, YOU KNOW, ENDS

20      UP BEING, YOU KNOW, ONLY CHOOSING THE WORD "OPT-OUT SIGNALS,"

21      AND THEN IN THE MEET AND CONFER, THEY SAY, WELL, YOU KNOW,

22      WE'LL PROBABLY ALSO DO CONSENT SIGNALS, AND THEN THERE'S SEVEN

23      IDENTIFIED SIGNALS THAT ARE PUT HERE THAT WE -- YOU KNOW, THAT

24      WE'VE CONFERRED WITH OUR EXPERTS AND AGREE THAT THEY'RE NARROW,

25      AND WE'D LIKE TO CONFIRM WITH GOOGLE THAT THESE WILL BE
```

1    AMONGST -- THAT THESE FALL IN WITHIN THE CATEGORY OF OPT-OUT

2    SIGNALS THAT THEY'RE AGREEING TO, BECAUSE THAT'S THE ONLY THING

3    THEY'RE AGREEING TO IS OPT-OUT SIGNALS.

4         THE COURT:  OKAY.  IF I PUT IN MY ORDER, "GOOGLE

5    SHALL PRODUCE DOCUMENTS SUFFICIENT TO SHOW HOW USER OPT-OUT

6    SIGNALS AND/OR USER CONSENT SIGNALS IMPACT THE DECISION-MAKING

7    PROCESS, INCLUDING RESPONSIVE DOCUMENTS THAT INCLUDE THE

8    SPECIFIC EXAMPLES IN THE RFP," IF I PUT THAT IN MY ORDER, IS

9    THAT SUFFICIENT?

10        MR. DANITZ:  THAT WOULD BE SO WONDERFUL.

11        THE COURT:  OKAY.  I'M NOT SAYING I WILL, BUT THAT'S

12   HOW I INTERPRET WHAT GOOGLE SAYS THEY WILL DO, AND THAT'S HOW

13   I'M READING THE JOINT STATEMENT -- I WILL LET MR. SOMVICHIAN

14   TELL ME IF I'M READING IT INCORRECTLY -- BUT IT SOUNDS TO ME

15   LIKE THERE'S NO DISPUTE HERE ON THIS ONE, AND I HOPE THAT'S THE

16   CASE.

17        MR. DANITZ:  YOUR HONOR, IF GOOGLE HAD BEEN WILLING

18   TO SEND AN EMAIL CONFIRMING THAT, WE WOULD NOT HAVE BEEN HERE

19   WITH THIS ISSUE.

20        THE COURT:  THE WHOLE POINT OF THE JOINT DISCOVERY

21   DISPUTE PROCESS IS FOR REAL DISPUTES TO GET CRYSTALLIZED AND

22   AGREEMENTS TO BE MADE, AND NOT TO HAVE THE COURT ACT AS, LIKE,

23   A NURSEMAID FOR THIS KIND OF THING.

24        SO MAYBE THERE IS A LEGITIMATE DISPUTE HERE AND I'M

25   MISINTERPRETING GOOGLE'S POSITION, BUT THIS IS ONE WHERE I

```
 1        WOULD NOT HAVE EXPECTED TO HAVE TO DEAL WITH IT.  OKAY?

 2              MR. DANITZ:  YOUR HONOR, THIS IS A DISPUTE THAT

 3        SHIFTED AS WE ENDED UP HERE.

 4              THE COURT:  FINE.  THAT'S FINE.  IF BY THE TIME YOU

 5        GET TO THE SUBMISSION OF THE PAPER, EVEN BY THE TIME IF YOU GET

 6        TO THE HEARING, IF YOU ALL HAVE RESOLVED A DISPUTE, LET ME KNOW

 7        AND I WON'T SPEND ANY MORE TIME ON IT.

 8        YOU CAN -- THAT'S WHY, WHEN YOU DO THESE JOINT

 9        SUBMISSIONS, YOU NEED TO TAKE INTO ACCOUNT EACH OTHER'S SIDES.

10        SO IT'S NOT THE KIND OF THING WHERE IT'S JUST A JOINT, YOU

11        KNOW, MOTION AND OPPOSITION, YOU KNOW, AS IF I'M JUST REQUIRING

12        PEOPLE TO, YOU KNOW, DRAFT THEIR THINGS INDEPENDENTLY AND SMUSH

13        THEM TOGETHER IN A JOINT FILING.

14        THAT'S NOT HOW IT'S SUPPOSED TO WORK.  YOU'RE SUPPOSED TO

15        TALK ABOUT IT, SEE IF YOU CAN REACH AN AGREEMENT, A COMPROMISE,

16        A DIFFERENT UNDERSTANDING OF WHAT EACH SIDE NEEDS OR OBJECTS

17        TO, AND THEN ONLY BRING THE MATTER TO ME IF YOU REALLY CAN'T

18        RESOLVE THE DISPUTE.

19              MR. DANITZ:  YOUR HONOR --

20              THE COURT:  SO IT'S FINE IF THINGS CHANGE.

21              MR. DANITZ:  WOULDN'T IT BE HELPFUL IF THE PARTIES,

22        BOTH PARTIES, COMMITTED TO PUTTING THESE AGREEMENTS IN WRITING

23        SO THAT --

24              THE COURT:  OKAY.  I'M NOT -- YEAH.  I HAVE RESISTED,

25        IN THIS CASE, MICROMANAGING HOW YOU ALL DEAL WITH YOUR DISPUTE
```

1    RESOLUTION BECAUSE YOU'RE ALL VERY ACCOMPLISHED LAWYERS WHO ARE

2    VERY EXPERIENCED.  I DON'T FEEL LIKE IT'S NECESSARY FOR ME TO

3    DO THAT.

4         I DO HAVE ANOTHER CASE WHERE THE PARTIES RECORD EACH

5    OTHER'S CONVERSATIONS, OKAY?  AND THEY'RE PAYING FOR A COURT

6    REPORTER TO DO THAT.

7         PLEASE, DON'T -- I DIDN'T ORDER IT.  THEY JUST COULDN'T

8    GET PAST THEIR DIFFICULTIES.

9         I DON'T THINK IT'S NECESSARY, AND I THINK YOU ALL DON'T

10   NEED THAT KIND OF CONSTRAINT ON YOUR PROFESSIONAL OBLIGATIONS

11   TO ACTUALLY FULFILL THEM.

12        BUT I DIGRESS.

13        I WOULD REALLY LIKE TO GET THROUGH THIS HEARING SO WE CAN

14   ALL MOVE ON WITH OUR MORNING.

15        LET ME ASK ABOUT THE LAST TWO REQUESTS BEFORE I GET TO

16   GOOGLE.

17            MR. DANITZ:  YES, YOUR HONOR.

18            THE COURT:  REQUEST FOR PRODUCTION 101, ALL DEVELOPER

19   DOCUMENTS.

20        THE PLAINTIFFS ACKNOWLEDGE THAT GOOGLE HAS PRODUCED THESE

21   EXTERNALLY FACING DOCUMENTS THAT INCLUDE, FOR EXAMPLE, FOR

22   DEVELOPERS TO INTERFACE WITH THE RTB AUCTION.

23        WHAT I WOULD LIKE TO UNDERSTAND IS, WHY DO YOU NEED

24   DEVELOPER DOCUMENTS THAT EXPLAIN THE STRUCTURE OF BID REQUESTS

25   AND HOW TO INTERPRET EACH PIECE OF DATA?  THAT LEVEL OF DETAIL

1    IS THE KIND OF DETAIL THAT ONE MIGHT EXPECT IF IT WERE A PATENT

2    CASE OR A TRADE SECRET CASE WHERE THE ACTUAL DETAILS OF

3    IMPLEMENTATION WERE REALLY IMPORTANT.

4        I JUST DIDN'T SEE THE NEED FOR THAT KIND OF -- THAT LEVEL

5    OF DETAIL FOR A CASE LIKE THIS.

6            MR. DANITZ:  WELL, YOUR HONOR, OUR EXPECTATION WOULD

7    BE THAT THIS WOULD BE KEPT IN ONE CENTRAL REPOSITORY, THAT THIS

8    WOULD BE A FINITE NUMBER OF DOCUMENTS THAT WOULD BE -- THAT

9    WOULD HELP OUR EXPERTS UNDERSTAND THE OUTWARD FACING OUTPUTS OF

10   THE GOOGLE RTB SYSTEM AND HOW TO INTERFACE WITH GOOGLE RTB.

11       IT WAS REQUESTED BY OUR EXPERTS AND WE WANTED TO PROVIDE

12   THEM WITH THAT INFORMATION.

13       WE HAVEN'T HEARD ANYTHING ABOUT BURDEN HERE.  IT DOESN'T

14   SEEM LIKE IT WOULD BE BURDENSOME.

15       SO --

16           THE COURT:  THE BURDEN THAT IS DESCRIBED IS THE ONE

17   OF, YOU KNOW, YOU'RE ASKING FOR SOMETHING THAT'S CONSIDERED

18   SENSITIVE INFORMATION OF GOOGLE, THE KIND OF DETAIL --

19   DEVELOPER DOCUMENTS ARE KIND OF DETAILED DOCUMENTS, UNLESS

20   YOU'RE ONLY -- MAYBE I'M MISINTERPRETING YOUR REQUEST AND YOU

21   ONLY WANT THINGS THAT ARE EXTERNALLY FACING.

22       AND IF THAT'S THE CASE, I THOUGHT THAT YOU HAD ALREADY

23   INDICATED YOU HAD THOSE KINDS OF EXTERNALLY FACING DOCUMENTS.

24       BUT IF YOU'RE ASKING FOR INTERNAL DOCUMENTS THAT SHOW

25   EXACTLY HOW GOOGLE DOES WHAT IT DOES IN A SOFTWARE DEVELOPMENT

1    LEVEL OF DETAIL, SAME KIND OF QUESTION I ASKED ABOUT THE

2    ARCHITECTURE LEVEL OF DETAIL --

3                MR. DANITZ:  I SEE.

4                THE COURT:  -- I DIDN'T UNDERSTAND WHY THAT WAS

5    NECESSARY.

6                MR. DANITZ:  YES, I UNDERSTAND THE QUESTION.

7        YES, SO WE'RE NOT LOOKING FOR GOOGLE'S INTERNAL

8    DEVELOPMENT DOCUMENTS IN THIS REQUEST.  WE'RE LOOKING FOR

9    DOCUMENTS GIVEN TO GOOGLE RTB PARTICIPANTS.

10                THE COURT:  I SEE.  OKAY.  SO THESE WOULD BE

11    DOCUMENTS SHARED WITH THIRD PARTIES?

12                MR. DANITZ:  RIGHT.

13                THE COURT:  OKAY.

14                MR. DANITZ:  FOR INTERFACING WITH RTB.

15                THE COURT:  OKAY.  AND YOU SAY THAT YOU ALREADY HAVE

16    THESE?

17                MR. DANITZ:  WE HAVE SOME OF THEM.

18                THE COURT:  SO WHAT ARE YOU MISSING?

19                MR. DANITZ:  WE DON'T KNOW WHAT WE'RE MISSING.

20                THE COURT:  OKAY.  SO DO YOU HAVE -- ARE THERE ANY

21    GAPS THAT YOUR EXPERT HAS IDENTIFIED?

22                MR. DANITZ:  NO.

23                THE COURT:  OKAY.

24                MR. DANITZ:  NO PARTICULAR GAPS.

25                THE COURT:  OKAY.

1          MR. DANITZ:  AND IF -- IF GOOGLE HAS PRODUCED ALL OF

2     IT, THEN THAT SHOULD BE THE END OF IT.

3          IF NOT, THERE'S MORE TO PRODUCE.

4          THE COURT:  OKAY.  LAST ONE IS REQUEST FOR PRODUCTION

5     102, DOCUMENTS SUFFICIENT TO IDENTIFY THE EMPLOYEES WHO ARE OR

6     WERE PRIMARILY RESPONSIBLE FOR DESIGNING THE DECISION-MAKING

7     PROCESS.

8          SO I THOUGHT IT WAS HELPFUL THAT THE PLAINTIFFS OFFERED TO

9     ACCEPT A WRITTEN ANSWER.

10         IS -- IS THERE ANY PARTICULAR NUMBER OF FOLKS YOU'RE

11    EXPECTING TO HAVE IDENTIFIED?  I UNDERSTAND THERE'S A BIG LIST

12    THAT ALREADY EXISTS AND GOOGLE SAYS THESE FOLKS ARE A SUBSET OF

13    THEM.

14         MR. DANITZ:  I'M NOT SURE THAT'S EXACTLY WHAT THEY'RE

15    SAYING.  THERE IS A, A NOT SO BIG LIST OF CURRENT PROGRAMMERS.

16         THE COURT:  OKAY.

17         MR. DANITZ:  THAT'S NOT THE SAME AS THE DESIGNERS OF

18    THE SYSTEM.

19         THE COURT:  SO CAN YOU TELL FROM THE LIST OF CURRENT

20    PROGRAMMERS WHO THE DESIGNERS, CURRENT DESIGNERS ARE?

21         MR. DANITZ:  I HAVE NO IDEA.

22         THE COURT:  YOU CAN'T TELL?

23         MR. DANITZ:  THEY'RE PROGRAMMERS.  MAYBE NONE OF

24    THEM.

25         THE COURT:  I'M TOLD THAT THERE'S A DESCRIPTION GIVEN

```
 1        OF EACH PERSON'S ROLE.

 2               MR. DANITZ:  SOFTWARE DESIGN.

 3               THE COURT:  SO IT'S NOT SPECIFIC TO THE DECISION

 4        MAKING?

 5               MR. DANITZ:  SOFTWARE ENGINEER.

 6               THE COURT:  OKAY.  ONE OF THE OBJECTIONS THAT GOOGLE

 7        HAS MADE THAT CUTS ACROSS MANY, IF NOT ALL, OF THESE REQUESTS

 8        IS THAT THEY SHOULDN'T HAVE TO PRODUCE SEARCH TERMS AND

 9        CUSTODIANS.

10           THE WAY I READ MOST OF THE REQUESTS, THE ONES THAT ARE

11        DOCUMENTS SUFFICIENT TO SHOW, WOULDN'T REQUIRE THAT KIND OF

12        EFFORT.  THEY WOULD REQUIRE GOOGLE TO IDENTIFY THE RELEVANT

13        PEOPLE WITHIN THE ORGANIZATION WHO HAVE KNOWLEDGE OF THE

14        SUBJECT MATTER AND SAY, ARE THERE DOCUMENTS THAT SHOW THIS AND

15        WHERE DO THEY LIVE AND LET'S GO GET THEM IF WE DON'T HAVE THEM

16        ALREADY.

17           IT'S THAT KIND OF TARGETED INQUIRY.  IT'S NOT A SEARCH

18        YOUR EMAIL KIND OF OPERATION.

19           IS THAT HOW YOU ARE INTENDING THESE REQUESTS TO BE

20        UNDERSTOOD?

21               MR. DANITZ:  100 PERCENT, AND THAT'S WHAT WE

22        COMMUNICATED DURING THE MEET AND CONFER.

23               THE COURT:  OKAY.  SO THAT'S HELPFUL TO KNOW.

24           IT SOUNDS LIKE ONE OF THEM MIGHT REQUIRE THIS ESI SEARCH,

25        BUT WE'RE --
```

```
1              MR. DANITZ:  COMMUNICATIONS.

2              THE COURT:  WE'RE IMPROVISING A RESPONSE THAT WILL

3       NARROW THAT, AT LEAST THAT'S THE PATH WE'RE HEADING ON.

4          OKAY.  THOSE ARE MY QUESTIONS FOR THE PLAINTIFF.

5          I'M GOING TO NOW TURN TO GOOGLE.  I'M GOING TO LET YOU

6       RESPOND TO WHATEVER YOU WANT TO RESPOND TO, BUT I'M GOING TO

7       ASK MY QUESTIONS FIRST IF YOU DON'T MIND.

8              MR. SOMVICHIAN:  SURE.

9              THE COURT:  THERE ARE SEVERAL REQUESTS FOR WHICH

10      GOOGLE SAYS THESE RFP'S ARE DUPLICATIVE OF MATERIALS WE'VE

11      ALREADY PRODUCED OR BEEN REQUESTED TO PRODUCE AND WE'VE ALREADY

12      RESPONDED TO THOSE PRIOR REQUESTS.

13          IF THAT'S THE CASE, CAN'T GOOGLE JUST SAY, ALL RESPONSIVE

14      DOCUMENTS HAVE ALREADY BEEN PRODUCED, AS OPPOSED TO SAYING,

15      WE'RE NOT GOING TO PRODUCE ANYTHING?

16             MR. SOMVICHIAN:  WE CAN CERTAINLY CERTIFY -- AND I'VE

17      REPRESENTED TO COUNSEL THAT WE'VE COMPLIED WITH ALL THE STEPS

18      THAT WERE DISCUSSED, AGREED TO, AND RULED ON BY YOUR HONOR WITH

19      RESPECT TO PRIOR RFP'S, INCLUDING RFP 22, WHICH SUBSUMES REALLY

20      ALL OF THE REQUESTS THAT WE'RE TALKING ABOUT TODAY, YOUR HONOR.

21          SO JUST TO GIVE YOU A SENSE OF THE OVERLAP, WE TALKED

22      ABOUT THE DECISION-MAKING PROCESS, THE DEFINED TERM THAT IS THE

23      CRUX OF MOST OF THE RFP'S HERE.

24          WELL, IN RFP 22, WHAT THEY ALREADY ASKED FOR AND WHAT

25      GOOGLE ALREADY COMMITTED TO PRODUCE PURSUANT TO THIS PROCESS WE
```

1    AGREED ON WAS 22A, HOW GOOGLE REALTIME BIDDING FUNCTIONED AND

2    FUNCTIONS; 22B, HOW BID REQUESTS ARE CONSTRUCTED; 22E, ALL

3    VARIATIONS, ELEMENTS, OR COMPONENTS OF USER INFORMATION THAT

4    MAY BE PART OF A BID REQUEST; 22G, THE FACTORS, ANALYSES, OR

5    OTHER CONSIDERATIONS USED BY GOOGLE TO DETERMINE WHAT

6    INFORMATION SHOULD BE INCLUDED WITHIN A BID REQUEST; AND THERE

7    ARE OTHERS.

8         SO IF YOU TAKE THE TOTALITY OF WHAT THEY ALREADY ASKED FOR

9    AND WHAT WE ALREADY COMMITTED TO PRODUCE IN THE SEARCH TERM

10   CUSTODIAN, NON-CUSTODIAL SOURCES THAT WE AGREED ON, THEY REALLY

11   SUBSUME EVERYTHING THAT WE'RE TALKING ABOUT HERE.

12         THE COURT:  OKAY.  BUT I THINK THAT'S THE PROBLEM IS

13    THAT THE PLAINTIFFS SAY THE DOCUMENTS THAT HAVE BEEN PRODUCED

14    AS A RESULT OF THAT PRIOR EFFORT -- AND LET'S JUST FOCUS ON THE

15    ESI PRODUCTION -- ARE NOT RESPONSIVE BECAUSE THEY DON'T

16    DISCLOSE ALL OF THE RELEVANT DETAILS.

17         SO WHATEVER THAT PROCESS WAS, IT DIDN'T ACTUALLY PRODUCE

18   SUFFICIENTLY COMPLETE INFORMATION.

19         AND IT'S MORE THAN JUST A SUSPICION.  I SAW THE CASE LAW

20   YOU CITED THAT SAID YOU CAN'T JUST SORT OF SAY, WE THINK

21   THERE'S SOMETHING OUT THERE AND WE DON'T KNOW.

22         THEY SAY, GOOGLE HASN'T BEEN ABLE TO IDENTIFY ANY EXAMPLES

23   IN ITS EXISTING PRODUCTION OF DOCUMENTS THAT ACTUALLY SHOW THE

24   INFORMATION THAT WE THINK WE NEED TO KNOW.

25         AND WHILE I TAKE YOUR POINT THAT YOU DON'T HAVE TO CURATE

1   YOUR PRODUCTION AND ITEMIZE IT AND SAY WHICH BATES NUMBERS GO

2   TO WHICH DOCUMENT REQUESTS, I WOULD EXPECT YOU TO AT LEAST BE

3   ABLE TO ARTICULATE, HERE'S THE KEY DOCUMENT THAT DESCRIBES HOW

4   THIS DATA SELECTION WORKS, BECAUSE IT'S GOT TO BE -- I DOUBT

5   THAT THIS INFORMATION IS IN AN EMAIL.  I JUST THINK THAT'S A

6   RIDICULOUS WAY -- AND I'VE MADE THIS POINT BEFORE -- TO FIND

7   DOCUMENTS LIKE THIS IS TO DO AN EMAIL SEARCH.

8        THERE'S GOING TO BE SOMETHING THAT LIVES IN A FILE THAT

9   PEOPLE CAN REFER TO, I DON'T KNOW WHAT FORM IT TAKES, MAYBE IT

10  CHANGES OVER TIME, BUT THERE'S GOING TO BE SOMETHING THAT

11  REFLECTS WHAT THE PROCESS IS, AND I WOULD EXPECT A MORE

12  TARGETED APPROACH TO IDENTIFYING THAT KIND OF INFORMATION.

13       SO WHEN I SAW -- SO THAT WAS MY INITIAL REACTION TO THE

14  ASSERTION THAT WE SHOULDN'T HAVE TO GO THROUGH THIS AGAIN

15  BECAUSE WE'VE ALREADY DONE THE ESI CUSTODIAN SEARCH.

16       AND I'M NOT SURE, YOU KNOW, WHERE THE PROCESS MIGHT HAVE

17  BROKEN DOWN IN YOUR DISCUSSIONS WITH EACH OTHER, BUT I DON'T

18  HAVE A RESPONSE RIGHT NOW TO THE ASSERTION THAT THE PRODUCTION

19  DOESN'T CONTAIN THE INFORMATION THAT THEY'RE LOOKING FOR.

20       MR. SOMVICHIAN:  YOUR HONOR, I ASSURED MR. DANITZ,

21  WHEN HE TOLD ME, WHAT WE'VE SEEN ARE SCHEMATICS AND WE DON'T

22  SEE OTHER RESPONSIVE INFORMATION, WE DIDN'T FOCUS OR LIMIT THE

23  PROCESS ON SCHEMATICS.  THE PROCESS WASN'T LIMITED JUST TO

24  CUSTODIANS.  THERE WERE NON-CUSTODIAL SOURCES INCLUDED.

25       AND THEY WERE NOT LIMITED TO EXTERNAL FACING DOCUMENTS.

1     THERE ARE MANY INTERNAL TECHNICAL DOCUMENTS.  THERE ARE

2     CATEGORIES.  FOR EXAMPLE, THERE ARE DESIGN DOCUMENTS --

3              THE COURT:  OKAY.

4              MR. SOMVICHIAN:  -- WHICH ARE DOCUMENTS PREPARED BY

5     INTERNAL TEAMS TO DOCUMENT CERTAIN ASPECTS OF THE PROCESS AND

6     CHANGES THAT THEY'RE CONTEMPLATING.

7         THEY'RE NOT JUST SCHEMATICS.  THEY HAVE DESCRIPTIONS OF

8     THE PROPOSED CHANGES.  THEY HAVE AN OVERVIEW SECTION AND A

9     DISCUSSION SECTION.

10             THE COURT:  UM-HUM.

11             MR. SOMVICHIAN:  SO THERE'S SOME NARRATIVE

12    EXPLANATION.

13        SO THESE DESIGN DOCUMENTS ARE, ARE NOT THESE, YOU KNOW,

14    EXTERNAL DOCUMENTS THAT THEY'RE SAYING THEY'VE ONLY SEEN.

15        THERE ARE CHANGE LOGS.

16             THE COURT:  OKAY.

17             MR. SOMVICHIAN:  THERE ARE CHANGE LOGS THAT DESCRIBE,

18    AT A DETAILED, TECHNICAL LEVEL, THE CHANGES BEING PROPOSED TO

19    THE SYSTEM.

20        AND, AGAIN, THOSE AREN'T EXTERNAL.  THEY'RE PURELY

21    INTERNAL DOCUMENTS THAT ARE TECHNICAL IN NATURE THAT GO TO THE

22    VARIOUS ISSUES THAT WE'RE TALKING ABOUT.

23             THE COURT:  SO WHEN YOU WERE HAVING THIS DISCUSSION

24    BEFORE YOU ALL FILED THE JOINT SUBMISSION AND THE PLAINTIFFS

25    SAID, HEY, WE CAN'T FIND ANY, DID YOU POINT OUT ANY OF THE --

```
1    ANY EXAMPLES OF THE KINDS OF THINGS YOU'RE TELLING ME ABOUT

2    RIGHT NOW?

3              MR. SOMVICHIAN:  WE DESCRIBED EXAMPLES.

4         WHAT WE DECLINED TO DO, YOUR HONOR, WAS TO POINT TO

5    SPECIFIC BATES NUMBERS OF DOCUMENTS TO CURATE OUR PRODUCTION IN

6    THE WAY THAT YOU SAID.

7              THE COURT:  AN EXAMPLE WITH A BATES NUMBER, IS THAT

8    SOMETHING THAT YOU COULD DO TO SATISFY MR. DANITZ AND HIS TEAM

9    THAT IT ACTUALLY EXISTS?  IF I WERE TO ORDER SUCH A FURTHER

10   DISCUSSION -- AND I DON'T MEAN EVERYTHING, JUST HERE'S AN

11   EXAMPLE OF A DESIGN -- COULD YOU DO THAT?

12        BECAUSE RIGHT NOW I JUST -- I HAVE THEM SAYING THE

13   DOCUMENTS DON'T EXIST IN THE PRODUCTION AND YOU SAYING THEY DO,

14   AND I HAVE NO WAY TO DECIDE.

15             MR. SOMVICHIAN:  IF YOU WANT US TO PROVIDE --

16             THE COURT:  WELL, I JUST -- I'M TRYING TO FIND SOME

17   WAY TO FIGURE THIS OUT, BECAUSE THESE ARE THE KINDS OF

18   INFORMATION -- AT LEAST -- NOT ALL OF THESE REQUESTS

19   NECESSARILY, BUT CERTAINLY IF I WERE TO SAY 91 THROUGH 93, HOW

20   WAS THE INFORMATION SELECTED?  THIS IS THE KIND OF INFORMATION

21   I WOULD EXPECT YOU TO PRODUCE:  SOMETHING THAT IDENTIFIES HOW

22   THE INFORMATION -- NOT HOW IT'S STORED, NOT HOW IT'S

23   MAINTAINED, NOT HOW IT'S COLLECTED, BUT HOW IS IT SELECTED FOR

24   DISTRIBUTION TO RTB PARTICIPANTS.

25        THAT'S THE KIND OF THING THAT I THINK IS FAIR GAME.
```

1          AND IF YOU'RE SAYING PRINCIPALLY THAT INFORMATION HAS

2     ALREADY BEEN PRODUCED, WE SHOULDN'T HAVE TO GO REPRODUCE IT OR

3     RELOOK FOR IT OR RERUN SEARCH TERMS, GREAT.

4          BUT IF IT HASN'T ALREADY BEEN PRODUCED, I EXPECT IT TO BE

5     PRODUCED.

6          SO AM I CORRECT IN UNDERSTANDING YOUR ARGUMENT THAT YOU

7     FEEL IT HAS ALREADY BEEN PRODUCED?

8          MR. SOMVICHIAN:  WE'VE COMPLIED WITH ALL THE STEPS

9     THAT WERE AGREED TO ON THE RFP'S.

10          THE COURT:  THAT'S NOT THE SAME.

11          MR. SOMVICHIAN:  SO I CAN'T GUARANTEE THAT THERE ARE

12     DOCUMENTS THAT THEIR EXPERT WOULD LOOK AT AND AGREE, THIS GIVES

13     ME EVERYTHING I KNOW, BECAUSE WHEN WE AGREED TO PROVIDE

14     DOCUMENTS SUFFICIENT TO SHOW THESE CATEGORIES IN RFP 22, THAT'S

15     TO THE EXTENT THAT THOSE DOCUMENTS EXIST.

16          THE COURT:  RIGHT.  BUT YOU DIDN'T JUST RELY ON

17     RUNNING SEARCH TERMS.

18          MR. SOMVICHIAN:  CORRECT.

19          THE COURT:  OKAY.  THAT'S WHAT I'M TRYING TO GET AT,

20     BECAUSE IT SOUNDS LIKE YOU'RE SAYING, WE RAN SEARCH TERMS AND

21     WHATEVER CAME UP, CAME UP, WHICH IS AN APPROPRIATE WAY TO

22     HANDLE SOME KINDS OF DISCOVERY, BUT I'M WORRIED NOT THIS KIND.

23          SO -- BECAUSE I WOULD NOT EXPECT TO FIND THIS INFORMATION

24     IN RANDOM EMAILS.  SO --

25          MR. SOMVICHIAN:  I'M NOT -- I'M NOT RELYING JUST ON A

1        CUSTODIAL SEARCH, YOUR HONOR.  THAT WAS NOT THE PROCESS.

2              THE COURT:  OKAY.  I'LL GO BACK AND LOOK AT OUR

3        DISCUSSION.  IT'S RFP 22, RIGHT?

4              MR. SOMVICHIAN:  YES.

5              THE COURT:  BECAUSE I DO REMEMBER THIS COMING UP IN

6        PRIOR DISPUTES WHERE I THINK I MADE THE POINT THAT I THINK SOME

7        OF THESE DOCUMENTS CAN BE BEST FOUND BY GOING TO THE PEOPLE WHO

8        HAVE A REASON TO KNOW OF THEIR EXISTENCE.

9          SO IF YOU'RE SAYING THAT'S ALREADY BEEN DONE, THEN ALL

10      THOSE DOCUMENTS SHOULD ALREADY BE IN THE PRODUCTION, RIGHT?

11            MR. SOMVICHIAN:  WE'VE GONE TO THE PEOPLE WHO WOULD

12      KNOW THIS AREA, THE LEAD ENGINEERS, THE MORE DAY-TO-DAY

13      ENGINEERS WHO WOULD HAVE MORE DETAILED INFORMATION, WE WENT TO

14      THE SOURCES THAT WERE CONTEMPLATED IN YOUR PRIOR ORDER WITH

15      RESPECT TO NON-CUSTODIAL SOURCES.

16            THE COURT:  OKAY.

17            MR. SOMVICHIAN:  SO WE'VE GONE THROUGH THE PROCESS,

18      YOUR HONOR.

19          BUT, AGAIN, I -- MY CONCERN IS THAT WE POINT OUT SOME OF

20      THE DOCUMENTS AND WHAT WE HEAR BACK IS, WELL, OUR EXPERT SAYS

21      THIS ISN'T ENOUGH, WHEN --

22            THE COURT:  OKAY.

23            MR. SOMVICHIAN:  -- THE ONLY THING THAT WE CAN DO IS

24      GO TO THE PEOPLE AND THE SOURCES THAT WOULD CONTAIN -- THAT

25      WOULD HAVE RESPONSIVE INFORMATION.

1        I CAN'T GUARANTEE WHAT THE CONTENTS OF THAT ULTIMATE

2   PRODUCTION WILL BE OR WHETHER IT WILL SATISFY THEIR NEEDS FOR

3   THEIR EXPERT.

4            THE COURT:  OKAY.

5            MR. SOMVICHIAN:  THAT'S WHAT THE NEXT STEP IS FOR,

6   THE DEPOSITIONS.

7            THE COURT:  RIGHT.  SO HAVE THE PARTIES NOT HAD

8   DEPOSITIONS?  IS THAT WHERE YOU ARE RIGHT NOW, NO DEPOSITIONS?

9   ARE THEY CONTEMPLATED ANY TIME --

10           MR. DANITZ:  WE ARE TEEING UP POTENTIAL DEPOSITIONS.

11       BUT THIS WOULD BE BASIC INFORMATION THAT WE NEED FOR BOTH

12   CLASS CERT AND FOR --

13           THE COURT:  RIGHT, I UNDERSTAND THAT.

14       WHAT I'M TRYING TO FIGURE OUT IS WHAT IS THE BEST WAY TO

15   FIGURE OUT IF THERE IS SOMETHING MISSING OR NOT.

16           MR. DANITZ:  YOUR HONOR, THERE IS SOMETHING MISSING.

17           THE COURT:  BUT IT'S NOT ENOUGH TO SAY, IT'S MISSING

18   BECAUSE YOU HAVEN'T IDENTIFIED A BATES NUMBER.

19       SO THAT'S WHERE -- YOU KNOW, THAT'S WHERE I'M REALLY

20   TEMPTED TO HAVE YOU ALL -- IS THERE A PROBLEM?

21           MR. DANITZ:  IT'S FRUSTRATING, YOUR HONOR.  IT IS

22   FRUSTRATING.

23           THE COURT:  YOU KNOW WHAT?  I APPRECIATE THAT.  I'M

24   VERY FRUSTRATED BY THIS CASE.

25       BUT WHAT'S NOT ACCEPTABLE IS FOR YOU ALL NOT TO ACTUALLY

1    HAVE A CONVERSATION ABOUT THIS AND TO EXPECT ME TO JUST SAY,

2    YES, WHATEVER BROAD DISCOVERY REQUEST YOU HAVE, YOU CAN HAVE

3    WHATEVER IT IS.

4        THERE NEEDS TO BE SOME, SOME MORE PRECISION IN YOUR

5    DISCUSSIONS.

6        SO --

7            MR. DANITZ:  YOUR HONOR, WE HAD A FOUR MONTH

8    EXTENSION OF TIME FOR DISCOVERY.

9            THE COURT:  UM-HUM.

10            MR. DANITZ:  TWO OF THOSE MONTHS ARE GONE.

11        FURTHER DISCUSSION, WE -- WE ASKED FOR NAMED PLAINTIFF

12    DATA.  WE DON'T GET A DATE CERTAIN WHEN WE'RE GOING TO GET IT.

13    THINGS DRAG ON.

14        FURTHER DISCUSSION -- THESE ARE DIFFERENT REQUESTS.  THESE

15    ARE MUCH NARROWER REQUESTS.

16            THE COURT:  THEY ARE.  THEY ARE, I GRANT YOU.

17            MR. DANITZ:  THERE'S NO REASON THAT THEY CAN'T

18    PRODUCE THE DOCUMENTS.

19            THE COURT:  I TAKE IT -- MR. DANITZ, THE PROBLEM --

20            MR. DANITZ:  IF THEY PRODUCED THE DOCUMENT, WHY

21    DIDN'T THEY SAY THAT IN THEIR RESPONSE?

22            THE COURT:  THE PROBLEM IS MR. SOMVICHIAN IS TELLING

23    ME THAT THEY HAVE.

24            MR. DANITZ:  THEY HAVEN'T.

25            THE COURT:  SO I'M GOING TO TRY TO FIND A WAY TO GET

```
 1      TO THE BOTTOM OF THIS, BUT IT'S NOT HELPFUL, IT'S NOT HELPFUL

 2      TO HAVE --

 3                MR. DANITZ:  YOUR HONOR --

 4                THE COURT:  I'M GOING TO FINISH MY DISCUSSION WITH

 5      GOOGLE.

 6                MR. DANITZ:  IF I CAN JUST SPEAK --

 7                THE COURT:  NO.  NO.  WAIT.  YOU CAN HAVE YOUR TURN.

 8                MR. DANITZ:  SCATTERSHOT DOCUMENTS --

 9                THE COURT:  JUST A MINUTE.

10                MR. DANITZ:  -- ARE NOT RESPONDING TO THESE REQUESTS.

11                THE COURT:  FOR REQUEST FOR PRODUCTION NUMBER 97, I

12      DON'T ACTUALLY UNDERSTAND THE REDUNDANCY ARGUMENT THAT YOU'RE

13      MAKING.  IT DOESN'T SEEM TO ME THAT THAT'S REALLY REDUNDANT OF

14      ANYTHING, AND I DON'T SEE WHY YOU WOULDN'T JUST AGREE TO

15      PRODUCE THAT INFORMATION.

16                MR. SOMVICHIAN:  DOCUMENTS SUFFICIENT TO SHOW THE

17      CRITERIA USED WHEN SELECTING DATA.

18                THE COURT:  YES.

19                MR. SOMVICHIAN:  AGAIN, I GO TO RFP 22.  THAT WAS THE

20      CRUX OF 22, THE SELECTION OF DATA INCLUDED IN AN RTB BID

21      REQUEST.

22                THE COURT:  IS THERE A DISPUTE ABOUT REQUEST FOR

23      PRODUCTION 100?

24                MR. SOMVICHIAN:  NO, YOUR HONOR.

25           IN FACT, WE CONFERRED JUST BEFORE THE HEARING.  WE HAD
```

1    ALREADY STATED IN WRITING THAT WE'RE NOT DRAWING THIS

2    DISTINCTION THAT GAVE MR. DANITZ SOME CONCERN.

3        I OFFERED TO AMEND THE RESPONSE TO CLARIFY THAT SO THAT

4    HE'D HAVE TWO WRITINGS, AN AMENDED RFP RESPONSE, AND AS WELL AS

5    OUR POSITION IN THE LETTER BRIEF.

6        I DON'T THINK THERE'S ANY DISPUTE THERE.  WE'RE MOVING

7    FORWARD WITH THAT PROCESS.

8        THE COURT:  SO IF I PUT IN AN ORDER THE TEXT THAT I

9    DESCRIBED TO MR. DANITZ, YOU'D BE FINE WITH THAT?

10        MR. SOMVICHIAN:  YES.

11        THE COURT:  OKAY.  I ALSO DON'T SEE WHY THERE WOULD

12    BE ANY PROBLEM WITH REQUEST FOR PRODUCTION NUMBER 101.  YOUR

13    ONLY ARGUMENT ON THAT IS THAT IT'S DUPLICATIVE.  IS THAT

14    CORRECT?

15        MR. SOMVICHIAN:  YES, YOUR HONOR.  AND I DIDN'T HEAR

16    ANYTHING ABOUT ANY GAP OR OMISSION IN THE PRODUCTION.

17        I'D ALSO NOTE THAT THERE'S NO DISCUSSION ABOUT IT IN THE

18    LETTER BRIEF.

19        THE COURT:  YEAH, THERE ISN'T.  IT'S KIND OF LOOPED

20    IN WITH OTHER THINGS.

21        BUT WHY WOULDN'T A SOLUTION TO THIS PROBLEM BE TO REQUIRE

22    GOOGLE TO PUT UP AN ENGINEER, OR TWO OR THREE OR HOWEVER MANY

23    IT TAKES, AND ALLOW PLAINTIFFS TO JUST INQUIRE ABOUT THE NATURE

24    OF THE DOCUMENTS THAT ARE AVAILABLE?  WHY WOULDN'T THAT BE A

25    SOLUTION TO THIS PROBLEM?

```
 1          THEN YOU COULD EXPLORE -- THE PLAINTIFFS COULD EXPLORE

 2     WHAT KINDS OF THINGS ARE OR ARE NOT MISSING.

 3          MR. SOMVICHIAN:  THEY CAN CERTAINLY ASK THOSE

 4     QUESTIONS IN A DEPOSITION, YOUR HONOR.

 5          THE COURT:  SO, MR. DANITZ, WHY WOULDN'T THAT BE THE

 6     BEST PATH, FOR YOU TO HAVE AN OPPORTUNITY TO JUST EXPLORE THAT

 7     QUESTION WITH SOMEONE WHO'S KNOWLEDGEABLE?

 8          MR. DANITZ:  WELL, YOUR HONOR, WE VIEW THIS AS VERY

 9     BASIC INFORMATION THAT WE SHOULD NOT NEED TO DO A 30(B)(6) TO

10     GET TO WHERE THAT INFORMATION IS.

11          WE KNOW THAT THIS IS A MACHINE.  WE KNOW THAT IT MAKES

12     DECISIONS.  AND WE KNOW -- ALTHOUGH THERE ARE, THERE ARE

13     SCATTERSHOT DOCUMENTS THAT TOUCH UPON IT, THERE IS NO FULL

14     PICTURE, WHICH IS WHAT WE REQUEST HERE, OF HOW THIS THING

15     WORKS.  IT'S VERY BASIC INFORMATION.

16          SO THE IDEA THAT, THAT THEY HAVE ALREADY PRODUCED THAT, WE

17     WOULDN'T HAVE DONE THIS, THESE REQUESTS.  THERE'S NO WAY THAT

18     WE WOULD BOTHER THE COURT OR USE OUR LIMITED RESOURCES IF WE

19     DIDN'T NEED IT.

20          THE COURT:  I'M INVITING YOU TO TAKE A DEPOSITION OF

21     SOMEONE.  IT'S A FREEBIE TO EXPLORE WHAT DOCUMENTS ARE

22     AVAILABLE.

23          MR. DANITZ:  THAT WOULD BE GREAT, YOUR HONOR.

24          THE COURT:  DO YOU NOT WANT THAT?

25          MR. DANITZ:  WE -- WE'RE HAPPY TO DO THAT.
```

1          THE CONCERN IS TIME, RIGHT?  THERE'S TWO MONTHS LEFT

2     BEFORE THE CUTOFF, RIGHT?

3          THE CLASS CERT DEADLINE IS JANUARY 24TH.

4          THIS IS VERY BASIC INFORMATION.  THEY SHOULD JUST PRODUCE

5     THIS INFORMATION, YOUR HONOR.

6          THE COURT:  OKAY.

7          MR. DANITZ:  IF THEY'VE ALREADY PRODUCED IT, THEY CAN

8     SAY SO IN AN AMENDED RESPONSE, WE'VE ALREADY PRODUCED ALL THIS

9     INFORMATION.

10          THE COURT:  ALL RIGHT.  SO YOU THINK THAT THIS

11    DISPUTE COULD BE RESOLVED BY, FOR EVERY DOCUMENT REQUEST THAT

12    GOOGLE SAYS THIS IS DUPLICATIVE OF RFP 22, OR SOME OTHER

13    REQUEST, IF THEY WOULD JUST AMEND THEIR RESPONSE TO SAY, AND

14    WE'VE COMPLETELY SATISFIED OUR OBLIGATION TO PRODUCE RESPONSIVE

15    DOCUMENTS VIA OUR PRIOR PRODUCTION, THAT WOULD SATISFY YOU ON

16    THIS REQUEST, ON THIS DISPUTE?

17          MR. DANITZ:  WELL, THAT WOULD BE -- THAT WOULD BE

18    IMPOSSIBLE FOR THEM TO SAY UNDER RULE 11.

19          THE COURT:  OKAY.  SO THIS IS WHY I'M ACTUALLY

20    PRESSING THE PARTIES ON THE DETAILS OF WHAT'S MISSING, BECAUSE

21    YOU HAVE AN INFORMED BELIEF THAT THERE IS INFORMATION MISSING,

22    AND THAT'S WHAT I'M TRYING TO GET AT.

23          SO HOW DO WE FIGURE OUT WHAT INFORMATION IS MISSING?

24    OKAY?  THAT'S, THAT'S REALLY WHAT I'VE BEEN TRYING TO DO TODAY

25    IS FIGURE OUT WHAT YOU NEED AND WHAT YOU DON'T HAVE AND HOW TO

1     GET IT.

2          SO JUST SAYING, WE DON'T BELIEVE IT'S COMPLETE, YOU KNOW,

3     ISN'T AS HELPFUL AS IT MIGHT BE.

4           MR. DANITZ:  IT'S NOT A BELIEF, YOUR HONOR.  IT'S

5     KNOWING THAT WE DO NOT HAVE A CLEAR UNDERSTANDING OF THE

6     INTERNAL WORKINGS OF THIS COMPLEX TECHNICAL SYSTEM BECAUSE THE

7     DOCUMENTS ARE NOT THERE.

8         I MEAN, IT'S --

9           MR. SOMVICHIAN:  THAT MAY BE, YOUR HONOR.  BUT WE

10    CAN'T CREATE DOCUMENTS TO, TO GIVE THEM THIS FULL PICTURE THAT

11    THEY'RE ENVISIONING.

12        WE CAN ONLY GO THROUGH THE PROCESS THAT WAS AGREED, AND WE

13    HAVE DONE THAT.

14         THE COURT:  UM-HUM.

15         MR. SOMVICHIAN:  I'M NOW HEARING AN ACKNOWLEDGMENT

16    THAT THERE ARE RESPONSIVE DOCUMENTS, BUT THERE ARE GAPS.  BUT

17    THAT IS INHERENT IN THE PROCESS, YOUR HONOR.

18         THE COURT:  SO HERE'S -- THERE'S A COUPLE THINGS WITH

19    THAT.  LET ME JUST FLESH OUT THE LAST REQUEST FOR PRODUCTION.

20    SO THIS IS 102.

21        I DON'T SEE WHY, TO RESOLVE THIS DISPUTE, GOOGLE WOULDN'T

22    JUST SAY, OKAY, OF THIS BIG LIST OF FOLKS THAT WE'VE ALREADY

23    DISCLOSED TO YOU, HERE ARE THE PEOPLE WHO ARE PRIMARILY

24    RESPONSIBLE FOR DESIGN, PAST AND PRESENT.

25        WHY NOT JUST DO THAT?  ISN'T THAT A STRAIGHTFORWARD WAY TO

1    RESOLVE THIS DISPUTE?

2        YES, IT SHOULD HAVE BEEN AN INTERROGATORY.  I DON'T KNOW,

3    ARE THE PLAINTIFFS OUT OF INTERROGATORIES, SO YOU DIDN'T WANT

4    TO GIVE THEM ONE?

5        THIS IS EASY.  WHY NOT JUST TELL THEM WHO'S PRIMARILY

6    RESPONSIBLE FOR THE DESIGN?

7            MR. SOMVICHIAN:  YOUR HONOR, WE GAVE THEM A LIST THAT

8    WAS TARGETED TO INCLUDE THAT.

9            THE COURT:  OKAY.  HOW DO THEY TELL FROM -- HOW MANY

10   PEOPLE ARE ON THAT LIST?

11           MR. SOMVICHIAN:  THE RESPONSIVE -- SO THERE ARE SIX

12   PEOPLE ON THE RESPONSE TO INTERROGATORY 4.

13           THE COURT:  AND THOSE ARE THE SIX PEOPLE WHO ARE

14   POTENTIALLY RESPONSIBLE FOR THE DESIGN?

15           MR. SOMVICHIAN:  I DON'T KNOW IF THEY ALL ARE, YOUR

16   HONOR.

17       BUT THE WAY THAT WE INTERPRETED THE INTERROGATORY THAT LED

18   TO THE SPECIFIC RESPONSE, AND AS NOTED IN HOW WE FRAMED THE

19   ANSWER, WAS WE INTERPRETED THEIR QUESTION AS ASKING FOR THE

20   IDENTITY AND ROLES OF GOOGLE PERSONNEL WITH CURRENT

21   RESPONSIBILITIES RELATED TO THE STRATEGIC DECISION MAKING

22   REGARDING THE RELEVANT OPERATIONS OF RTB, INCLUDING THE DATA

23   THAT IS ALLEGEDLY SHARED WITH ANY THIRD PARTY BID REQUEST

24   RECIPIENT.

25           THE COURT:  OKAY.  SO THAT'S A LITTLE BIT DIFFERENT.

44

1     THAT'S A LITTLE BROADER.  IT'S A LITTLE OFF.  LET'S JUST -- WHY

2     ISN'T IT A GOOD SOLUTION TO THE DISPUTE ABOUT REQUEST FOR

3     PRODUCTION 102 FOR GOOGLE TO JUST SAY, HERE ARE THE PEOPLE, AND

4     WE'RE DONE?  WHY RESIST THAT RESOLUTION?

5            MR. SOMVICHIAN:  WE CAN DO THAT.  WE CAN CLARIFY WITH

6     RESPECT TO THE INDIVIDUALS PREVIOUSLY IDENTIFIED.

7            THE COURT:  WHY DOES THAT MATTER?  WHY NOT JUST SAY,

8     HERE ARE THE PEOPLE?  JUST -- DO YOU WANT ME TO DIRECT THEM TO

9     SERVE AN INTERROGATORY WITH THAT PARTICULAR QUESTION BECAUSE

10    REALLY AN RFP IS NOT THE WAY TO DO IT, AND THEN HAVE YOU ANSWER

11    THAT?

12    I MEAN, IF YOU REALLY -- IF THERE'S SOME REASON WHY I

13    SHOULD DO THAT, I'D LIKE TO HEAR IT.

14    BUT OTHERWISE THE EASIEST RESOLUTION TO THIS PROBLEM IS TO

15    JUST ACCEPT PLAINTIFFS' PROPOSAL THAT THEY WILL ACCEPT A LIST

16    OF NAMES, INSTEAD OF DOCUMENTS, AND BE DONE WITH IT.  THERE'S

17    NO REASON TO CONCEAL THAT INFORMATION.  YOU'RE NOT TRYING TO

18    CONCEAL THE INFORMATION.  JUST TELL THEM.

19           MR. SOMVICHIAN:  WE'RE -- YOUR HONOR, THAT QUESTION

20    IS CERTAINLY FAIR GAME.

21    BUT I DON'T THINK IT'S UNREASONABLE TO, TO STAND ON THE

22    PROCEDURAL VEHICLES HERE.

23           THE COURT:  THAT'S WHAT I'M ASKING.  MAYBE IT'S NOT

24    UNREASONABLE.  BUT WHY DO YOU INSIST UPON IT?  IS THERE -- ARE

25    THEY OUT OF INTERROGATORIES AND THIS IS A PROBLEM?

 1          MR. SOMVICHIAN:  NO.

 2          THE COURT:  OKAY.  I JUST -- IT'S NOT THE KIND OF

 3   THING THAT ANYBODY SHOULD BE SPENDING THEIR CLIENT'S MONEY ON.

 4   I'M JUST BEING TOTALLY CANDID.  THERE ARE LOTS OF OTHER THINGS

 5   YOU CAN SPEND YOUR MONEY ON.  SOME OF THESE OTHER DISPUTES ARE

 6   HARDER.  NOT THIS ONE.

 7          MR. SOMVICHIAN:  YOUR HONOR, I'LL WORK OUT A PROCESS

 8   WITH MR. DANITZ TO GET THEM THAT INFORMATION.

 9          THE COURT:  OKAY.  AND I MAY HELP YOU WITH THAT.

10      ALL RIGHT.  THE THINGS THAT I THINK ARE THE MOST

11   CHALLENGING HERE ARE THE REQUESTS THAT ASK FOR GOOGLE TO

12   PRODUCE THINGS THAT IT HASN'T ALREADY PRODUCED AND CONCEDES IT

13   HASN'T ALREADY PRODUCED, WHICH IS ARCHITECTURE LEVEL DETAIL

14   ABOUT ITS SOFTWARE PROGRAM OR ANYTHING RESEMBLING SOURCE CODE

15   OR STUFF LIKE THAT.

16      I WILL ACKNOWLEDGE, AS I DID TO PLAINTIFFS, THAT I THINK

17   THOSE ARE DIFFERENT, THOSE REQUESTS ARE DIFFERENT, AND I'M NOT

18   CONFIDENT THAT THAT LEVEL OF DETAIL IS REQUIRED.

19      BUT IF IT'S THE CASE THAT THERE IS NO DOCUMENT AND THE

20   ONLY THING THAT YOU HAVE IS SOMETHING THAT'S, LIKE, MORE IN THE

21   WEEDS, MORE UNDER THE HOOD, MORE SENSITIVE THAT WOULD ALLOW THE

22   PLAINTIFFS TO UNDERSTAND HOW INFORMATION IS SELECTED FOR

23   DISTRIBUTION, THEN, YOU KNOW, THEY MAY HAVE A BETTER POINT

24   ABOUT SEEKING THAT KIND OF INFORMATION.

25      SO WHAT IS GOOGLE'S RESPONSE TO THAT OBSERVATION?  NOT

1    THAT YOU HAVE TO AGREE WITH IT, BUT JUST THAT THAT SEEMS TO ME

2    WHERE THE DISPUTE IS SORT OF SHAPING UP.

3            MR. SOMVICHIAN:  WELL, YOUR HONOR, WE DID NOT GO TO

4    SOURCE CODE, OBVIOUSLY.  THAT WAS NOT CONTEMPLATED.  IT'S NOT

5    PART OF THE PROTECTIVE ORDER.

6            BUT OTHERWISE WITH RESPECT TO THE NON-CUSTODIAL SOURCES

7    THAT WERE REFLECTED IN YOUR PRIOR ORDER, AND ALSO ANYTHING THAT

8    MIGHT HAVE BEEN REFLECTED IN THE CUSTODIAL COLLECTION,

9    INCLUDING DOCUMENTS, NOT JUST EMAILS, WE DIDN'T DRAW A LINE AT

10   THIS IS TOO TECHNICAL, WE'RE NOT GOING TO PRODUCE IT.

11           AND SO IF IT WAS IN THE PROCESS FROM BEFORE, JUST THE MERE

12   FACT THAT IT WAS MORE IN THE WEEDS WOULD NOT HAVE LED IT TO BE

13   OMITTED.

14           SO I -- I DON'T THINK A FURTHER PROCESS IS NEEDED.  I

15   DON'T THINK THAT THAT LEVEL OF INFORMATION IS PROPORTIONAL TO

16   THE NEEDS OF THE CASE.

17           IF DATA IS INCLUDED IN A BID REQUEST, THEY HAVE THAT

18   INFORMATION IN MANY WAYS.

19           THE DETAILED INNER WORKINGS OF HOW THE CODE INTERACTS AND

20   OPERATES AND DIFFERENT SYSTEMS INTERACT TO LEAD TO THAT RESULT,

21   I'M NOT SURE WHY THAT IS NEEDED FOR THEIR CASE.

22           BUT, AGAIN, IF THERE WAS INFORMATION AT THAT TECHNICAL

23   LEVEL OF DETAIL, WE DIDN'T OMIT IT.  BUT WE DIDN'T GO OUT

24   SEARCHING FOR SOMETHING AT THAT LEVEL OF GRANULARITY.

25           THE COURT:  OKAY.  SO WHAT LEVEL OF GRANULARITY DID

1  YOU LOOK FOR?

2          MR. SOMVICHIAN:  WE LOOKED FOR DOCUMENTS THAT

3  ADDRESSED THE OPERATION OF THE SYSTEM, THAT SHOWED HOW -- WITH

4  THE FOCUS BEING HOW DATA IS ULTIMATELY POPULATED IN AN RTB BID

5  REQUEST AND HOW THAT IS SELECTED, INCLUDED, AND DISTRIBUTED.

6          AGAIN, WE DIDN'T DRAW A LINE WITH RESPECT TO THE LEVEL OF

7  DETAIL.  IT WAS FOCUSSED ON THE SUBJECTS THAT WERE DESIGNED TO

8  BE RESPONSIVE TO THE CATEGORIES OF RFP 22 THAT WE ALL AGREED

9  WERE IN SCOPE.

10          THE COURT:  AND WHEN YOU TELL ME THAT YOU USED THE

11  PROCESS THAT WAS DEVELOPED CONTEMPORANEOUS WITH THAT RFP 22, DO

12  I HAVE A RECORD SOMEWHERE OF THAT PROCESS?  IN OTHER WORDS, DID

13  I ORDER IT OR DID YOU REPRESENT IT TO ME OR IS THERE SOMETHING

14  IN THE PAPERS SO THAT I WOULD KNOW AND PLAINTIFFS WOULD KNOW

15  WHAT PROCESS YOU USED?

16          MR. SOMVICHIAN:  YES, YOUR HONOR.

17          THE COURT:  AND I DON'T EXPECT YOU TO HAVE IT AT YOUR

18  FINGERTIPS, BUT IF YOU DO, I WOULD VERY MUCH APPRECIATE KNOWING

19  WHAT THE PROCESS WAS.

20          MR. SOMVICHIAN:  YOUR ORDER THAT CLARIFIED THE SCOPE

21  OF RFP 22 WAS DOCUMENT 184.

22          THE COURT:  OKAY.

23          MR. SOMVICHIAN:  YOUR PRIOR ORDER THAT RESOLVED THE

24  PARTIES' DISPUTE OVER THE ESI REVIEW WAS DOCUMENT 187, AND THAT

25  DOCUMENT IDENTIFIED, OR RESOLVED THE SEARCH TERMS, THE

1      CUSTODIANS, AND ALSO THE NON-CUSTODIAL SOURCES.

2              THE COURT:  OKAY.  SO THAT'S WHAT I'M LOOKING FOR IS

3      THE DISCUSSION OF NON-CUSTODIAL -- I GUESS THE PARTIES HAVE

4      BEEN USING THE WORD "TARGETED" SEARCHES.  YOUR SIDE OF THE

5      TABLE HAS USED THAT IN PRIOR HEARINGS WHERE YOU'VE TOLD ME,

6      WE'VE DONE A TARGETED SEARCH GOING TO THE PEOPLE OR

7      REPOSITORIES THAT WE BELIEVE HAVE THE INFORMATION AND WE

8      HAVEN'T JUST RELIED ON SEARCH TERMS.

9          SO WHAT I'M LOOKING FOR IS SOMETHING THAT GIVES ME AN

10     UNDERSTANDING OF WHETHER THAT WAS DONE FOR THESE KINDS OF

11     RFP 22 DOCUMENTS.

12             MR. SOMVICHIAN:  YES.

13             THE COURT:  OKAY.  AND YOU'LL SAY THAT MY ORDERS

14     WOULD BE THE TOUCHSTONE FOR THAT?

15             MR. SOMVICHIAN:  YES, AND THE EXHIBITS REFLECT --

16             THE COURT:  OKAY.

17             MR. SOMVICHIAN:  -- THE DIFFERENT COMPONENTS OF THAT,

18     INCLUDING THE NON-CUSTODIAL SOURCES.

19             THE COURT:  OKAY.  I WILL GO BACK AND LOOK AT THOSE

20     ORDERS.

21         ALL RIGHT.  I HAVEN'T GIVEN YOU A FULSOME OPPORTUNITY TO

22     RESPOND TO WHAT THE PLAINTIFFS ARGUED, SO I WANT TO GIVE YOU

23     THE OPPORTUNITY.

24             MR. SOMVICHIAN:  YOUR HONOR, I THINK WE'VE TOUCHED ON

25     EVERYTHING.

1          THE COURT:  OKAY.

2          MR. SOMVICHIAN:  AGAIN, I -- ONE OF THE -- ONE OF THE

3     PROBLEMS HERE IS WHEN WE -- WHEN WE COMMIT TO PRODUCE DOCUMENTS

4     SUFFICIENT TO SHOW, WHICH WE DID IN RESPONSE TO RFP 22, THE END

5     RESULT OF THAT, I DON'T KNOW IF THEIR EXPERT IS GOING TO HAVE

6     SOME COMPLAINT ABOUT SOME GAP THAT THEY THINK IS IMPORTANT BUT

7     JUST WASN'T ADDRESSED BY SOME INTERNAL DOCUMENT.

8          SO I'M CONCERNED ABOUT THIS, THIS NOTION THAT WE HAVE TO

9     IDENTIFY A BUNCH OF RESPONSIVE DOCUMENTS TO THEM, BECAUSE

10    THAT'S NOT ULTIMATELY GOING TO SOLVE THE ISSUE.

11         WE CAN REPRESENT THAT WE COMPLIED WITH ALL OF THE STEPS

12    CONTEMPLATED IN THE ORDER.

13         I WILL NEVER BE ABLE TO GUARANTEE YOU OR GIVE YOU

14    ASSURANCE THAT THAT IS GOING TO BE SOMETHING THAT THEY VIEW AS

15    ADEQUATE TO BE SUFFICIENT TO SHOW ANY PARTICULAR SUBJECT

16    BECAUSE WE'RE GOING TO HAVE A DEBATE ABOUT THAT.

17         BUT WE COMPLIED WITH THE PROCESS, AND I DON'T THINK

18    THERE'S ANYTHING ELSE THAT SHOULD BE REQUIRED HERE WITH RESPECT

19    TO THE CATEGORIES THAT OVERLAP, AND I THINK YOU RECOGNIZED THAT

20    MOST OF THEM ARE DUPLICATIVE OF THE PRIOR RFP'S.

21         FOR THE OTHER ONES THAT YOU MENTIONED, WHICH WE ALSO VIEW

22    TO BE REDUNDANT, BUT THAT WE TALKED ABOUT SEPARATELY WITH

23    RESPECT TO 94, INPUTS, 95, SOURCES, AGAIN, THAT'S A LEVEL OF

24    INFORMATION THAT IS NOT RELEVANT OR PROPORTIONAL TO THE NEEDS

25    OF THE CASE, PARTICULARLY IN LIGHT OF EVERYTHING ELSE THAT

1    WE'RE GIVING THEM THAT SHOWS THEM HOW THE BID REQUESTS ARE

2    CONSTRUCTED, THE SELECTION PROCESS OF DATA.

3        WE'VE NOW COMMITTED TO INFORMATION ON HOW DATA IS FILTERED

4    OR EXCLUDED, AND IN THAT CONTEXT, YOU KNOW, GOING BACK TO THIS

5    DEBATE ABOUT WHAT ARE THE INPUTS THAT LEAD TO THAT, I DON'T

6    KNOW HOW THAT'S DISTINCT.

7        AND IF THEY'RE VIEWING IT AS, WELL, YOU NEED TO TELL US

8    WHAT THE SOURCES ARE, WHERE THAT DATA COMES FROM, WHERE IT'S

9    MAINTAINED, WHERE IT'S STORED, WHAT ELSE IS IN THERE, ALL THAT

10   IS OLD GROUND, YOUR HONOR, THAT YOU'VE ALREADY RESOLVED, AND

11   IT'S NOT WITHIN THE SCOPE.

12       THE COURT:  OKAY.  BUT I UNDERSTAND YOUR ARGUMENT TO

13   BE ALSO THAT GOOGLE WOULD HAVE NO OBJECTION IF THE PLAINTIFFS

14   WERE TO TAKE A DEPOSITION OF SOME APPROPRIATE ENGINEER AND SAY,

15   HOW IS IT -- THE OVERARCHING QUESTION BEING, HOW IS DATA

16   SELECTED FOR DISTRIBUTION TO THIRD PARTIES?

17       AND IF THEY HAVE A DOCUMENT THAT THEY THINK IS INCOMPLETE,

18   PUT THE DOCUMENT IN FRONT OF THAT PERSON AND SAY, EXPLAIN HOW

19   THIS PART WORKS, EXPLAIN HOW THAT PART WORKS.

20       THAT IS SOMETHING THAT YOU WOULD HAVE NO OBJECTION TO ON

21   BEHALF OF GOOGLE?

22       MR. SOMVICHIAN:  I WOULD ASSUME THAT'S HOW A

23   DEPOSITION WOULD PLAY OUT, YOUR HONOR.

24       THE COURT:  OKAY.  ALL RIGHT.

25       ANYTHING ELSE FROM GOOGLE'S SIDE?

1          MR. SOMVICHIAN:  VERY QUICKLY, JUST TO MAKE SURE I

2     COVER THE DIFFERENT MOVING PARTS HERE, ON 99 --

3          THE COURT:  YES.

4          MR. SOMVICHIAN:  -- AS YOU NOTED, WE'VE ALREADY

5     COMMITTED TO PROVIDE DOCUMENTS SUFFICIENT TO SHOW THESE

6     FILTERS.

7          AND THAT'S NOT JUST IDENTIFYING THEM BY NAME, AS

8     MR. DANITZ ALLUDED TO.  WHEN WE SAID DOCUMENTS SUFFICIENT TO

9     SHOW THE FILTERS, THAT'S TO SHOW HOW THEY WORK, HOW THEY

10    OPERATE, AND WE WOULDN'T LIMIT THAT TO TIME.

11          AND SO THE ONLY ADDITIONAL PIECE OF INFORMATION THAT I

12    HEARD THAT THEY THINK IS NEEDED IN RESPONSE TO 99 IS CHANGES

13    OVER TIME WITH RESPECT TO THOSE FILTERS.  SO IF THERE WERE

14    DIFFERENT FILTERS OVER TIME, WE'RE NOT EXCLUDING THAT FROM WHAT

15    OUR COMMITMENT IS WITH RESPECT TO 98.

16          SO 99 REALLY, THE ONLY THING LEFT IS EMAILS,

17    COMMUNICATIONS, CHATTER ABOUT THINGS, COMMUNICATIONS THAT

18    MIGHT, YOU KNOW, TANGENTIALLY TOUCH ON THE SUBJECT.

19          THE COURT:  UM-HUM.

20          MR. SOMVICHIAN:  THAT REALLY DOES GET TO A LEVEL OF

21    BURDEN THAT IS UNNECESSARY IN THIS CASE, YOUR HONOR.

22          SO WHAT WE'VE COMMITTED TO FOR 98 I THINK FULLY SATISFIES

23    ANY DISCOVERY NEED IN THIS CASE.

24          THE COURT:  ALL RIGHT.  WELL, IT MAY JUST BE

25    WORTHWHILE TO MAKE IT EXPLICIT THAT IT DOES ENCOMPASS CHANGES

1    OVER TIME.

2              MR. SOMVICHIAN:  AND, AGAIN, 100, I THINK WE'VE

3    TOUCHED ON THAT.  I DON'T THINK THERE'S A DISPUTE THERE.

4              THE COURT:  OKAY.  ALL RIGHT.

5         ANYTHING ELSE?

6              MR. SOMVICHIAN:  NO, YOUR HONOR.

7              THE COURT:  OKAY.  LET ME TURN BACK TO THE PLAINTIFFS

8    AND JUST ASK, I AM TOYING WITH THE IDEA OF SAYING, WHY DON'T

9    YOU GO TAKE A DEPOSITION, FIND OUT WHERE THE DOCUMENTS ARE THAT

10   YOU THINK EXIST THAT HAVE BEEN PRODUCED, AND THEN WE'LL GO FROM

11   THERE.

12        WOULD IT BE HELPFUL FOR ME TO ORDER, TO GIVE SOME TIME

13   CONSTRAINTS AROUND SUCH A DEPOSITION, OR WOULD YOU LIKE TO

14   DISCUSS THAT WITH GOOGLE FIRST?

15             MR. DANITZ:  WELL, YOUR HONOR, WE WOULD PREFER TO

16   SIMPLY GET THE DOCUMENTS THAT ARE REQUESTED HERE.  THEY ARE

17   BASIC.

18        IF THEY'VE ALREADY PRODUCED IT, THEY CAN AMEND THEIR

19   RESPONSE AND SAY THERE ARE NO MORE DOCUMENTS.

20        IT'S JUST NOT THE CASE.

21             THE COURT:  THAT'S NOT ACTUALLY THE QUESTION I'M

22   ASKING.  SO LET'S SAY --

23             MR. DANITZ:  YES, WE UNDERSTAND --

24             THE COURT:  LET'S SAY I ORDER THAT.  LET'S SAY I

25   ORDER THAT ALL OF THE DOCUMENTS THAT GOOGLE SAYS HAVE ALREADY

 1    BEEN PRODUCED, THOSE SHOULD BE PRODUCED FULLY RESPONSIVE TO

 2    THESE REQUESTS, AND GOOGLE IS, LIKE, DONE.

 3         YOU'RE STILL IN THE SAME POSITION, WHICH IS YOU THINK YOU

 4    DON'T HAVE THE DOCUMENTS OR YOU DON'T HAVE THE INFORMATION THAT

 5    YOU NEED TO PURSUE YOUR CLASS CERT MOTION.

 6         SO WHAT I'M ASKING YOU -- YOU SAID IT WOULD BE HELPFUL TO

 7    HAVE SOME KIND OF DEADLINES FOR THINGS TO HAPPEN.

 8         WOULD IT BE HELPFUL FOR ME TO SAY, IF THE PLAINTIFFS WISH

 9    TO TAKE THE DEPOSITION OF A KNOWLEDGEABLE ENGINEER ABOUT THE

10    SUBJECT MATTER OF THESE DISPUTED RFP'S, GOOGLE SHALL PRODUCE

11    SUCH A PERSON NO LATER THAN THIS DATE?

12         IS THAT HELPFUL?

13         MR. DANITZ:  YOUR HONOR, IT MAY SOUND HELPFUL, BUT WE

14    ARE UNDER DEADLINES HERE, AND I DON'T SEE IT AS PRACTICAL.

15         THE COURT:  OKAY.

16         MR. DANITZ:  WE HAVE TWO MONTHS, AND WE HAVE --

17    JANUARY 24TH IS THE CLASS CERT DEADLINE.

18         WE WOULD PREFER THAT THE COURT SET A DATE CERTAIN FOR

19    PRODUCTION OF THE DOCUMENTS.

20         IF WE HAVE NO CHOICE OTHER THAN TO TAKE A DEPOSITION OF A

21    30(B)(6), WITHOUT PREJUDICE TO OUR OTHER 30(B)(6) TOPICS, AND

22    NO CHOICE OTHER THAN THEN TO MOVE AGAIN AND TO BE BACK HERE

23    WHEN GOOGLE REFUSES AGAIN TO PRODUCE THESE DOCUMENTS, WE'LL BE

24    UP AGAINST ALL THESE DEADLINES, RIGHT?

25         BUT IF WE HAVE NO CHOICE, WE HAVE NO CHOICE.

1           THE COURT:  ALL RIGHT.

2       IS THERE ANYTHING ELSE YOU'D LIKE TO RESPOND TO BEFORE WE

3    CALL IT A DAY?

4           MR. DANITZ:  YOUR HONOR, PLAINTIFFS VERY MUCH

5    APPRECIATE THE COURT'S TIME AND ATTENTION TO THIS.  THANK YOU.

6           THE COURT:  OKAY.  YOU'RE VERY WELCOME.

7       ALL RIGHT.  THIS MATTER IS CONCLUDED.  I WILL ISSUE A

8    WRITTEN ORDER.

9           MR. SOMVICHIAN:  THANK YOU, YOUR HONOR.

10          THE CLERK:  COURT IS ADJOURNED.

11       (THE PROCEEDINGS WERE CONCLUDED AT 12:48 P.M.)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2

3                          CERTIFICATE OF REPORTER

4

5

6

7          I, THE UNDERSIGNED OFFICIAL COURT REPORTER OF THE UNITED

8     STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA,

9     280 SOUTH FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY

10    CERTIFY:

11         THAT THE FOREGOING TRANSCRIPT, CERTIFICATE INCLUSIVE, IS

12    A CORRECT TRANSCRIPT FROM THE RECORD OF PROCEEDINGS IN THE

13    ABOVE-ENTITLED MATTER.

14

15

16    _____
      LEE-ANNE SHORTRIDGE, CSR, CRR
17    CERTIFICATE NUMBER 9595

18             DATED:  NOVEMBER 4, 2022

19

20

21

22

23

24

25