REDACTED

February 28, 2023

Magistrate Virginia K. DeMarchi
San Jose Courthouse, Courtroom 2-5th Floor
280 South 1st Street, San Jose, CA 95113

Re: *In re Google RTB Consumer Privacy Litigation*, No. 21-cv-02155-YGR-VKD
Joint Discovery Dispute – Time Sampling

Dear Magistrate Judge DeMarchi:

Plaintiffs and Defendant Google LLC ("Google") (together, the "Parties") submit this joint letter brief pursuant to the Court's December 16, 2022 Order (the "Dec. Order"), which directed the Parties to meet and confer regarding the appropriate periods to time-sample for Google's production of Named Plaintiff Data ("NPD") and to submit any remaining disputes on this issue to the Court. *See* Dkt. 382 at 7. The Parties conferred on January 12, 2023 and February 9, 2023, and have reached impasse on the issues outlined below.

## I. Plaintiffs' Position

### A. Google's Proposed Time Sampling Is Unjustifiably Narrow And Limited

The complaint alleges a 7-year class period, starting back in March 2016. Compl., Dkt. 92. Even though discovery of account holder data presently is limited to just some fields for only eight individuals,[1] Google proposes that even this very modest discovery should be limited to just a six week sample, all from 2021 and 2022. This proposed sample is a mere 1.6 percent of the class period and entirely ignores the first five years in that period. It is facially unreasonable, purposefully designed to avoid producing data harmful to Google, intentionally devised to avoid Google having to acknowledge that it did not maintain relevant evidence, wholly unrepresentative, and not a proper "sample" at all.

Google agrees, since it refuses to stipulate that its proposed six-week sample is representative of the entire class period for class certification purposes. Google cannot have it both ways. If its proposed sample is not representative and it intends to oppose class certification based on data from this sample, then it must produce a representative sample from the entire class period so plaintiffs will have the evidence to rebut Google's attack on class certification.

Worse, Google presents its time sample as a *fait accompli* (not a compromise), and seeks to impose it on plaintiffs without any discussion or input. Instead of cooperatively agreeing upon a set of sample weeks, or a process by which each party could select a set of sample weeks, which is what the discovery rules require, Google unilaterally chose its weeks without any explanation, and then refused in the meet and confers to consider *any* additional weeks beyond its chosen six, even though the Court ordered Google to do just that. *See* Dkt. 382 at 6-7.

To fill the obvious gaps in Google's proposal, plaintiffs propose a modest additional 11

---

[1] Plaintiffs focus now on discovery for the class certification motion, which is narrower than the discovery plaintiffs need for trial. Plaintiffs object and will be the prejudiced if the Court imposes any time period limitations on the production of NPD for trial purposes.

weeks of sampling, which are set forth below, along with Google's proposals (in bold):

- October 20-27, 2017
- December 18-25, 2017
- July 23-30, 2019
- September 5-12, 2020
- January 12-19, 2021
- **July 21-31, 2021**
- **September 30 - October 7, 2021**
- **December 31, 2021 - January 7, 2022**
- January 10-17, 2022
- March 14-21, 2022
- **March 30 - April 6, 2022**
- April 15-22, 2022
- May 13-20, 2022
- June 2-9, 2022
- **July 3-11, 2022**
- **September 30 - October 7, 2022**
- October 10-17, 2022

Plaintiffs' proposal is proportional and not unduly burdensome.[2] To be clear, plaintiffs do not presently seek all information for the entire class period, but merely 11 additional weeks, spread across six years, to include a more representative sample. Plaintiffs' proposal increases the sample to a modest 4.7 percent of the class period, spread over additional years. Because plaintiffs' proposal is far more representative and proportional to the needs of the case, the Court should order Google to produce sampling for plaintiffs' proposed additional 11 weeks in addition to the six weeks Google unilaterally selected.

**B. Google's Proposed Time Sampling Is Asserted in Bad Faith And For Improper Reasons**

Google's proposed time sample also should be rejected because it is asserted in bad faith and for improper reasons. Google produced information in a manner that obscures whether or not the production contains "sensitive" information pertaining to the named plaintiffs. This self-selection by Google, without any input by or disclosure to plaintiffs beforehand, is improper. *See*

[2] Google complains that it has already produced four million "records." But these "records" actually are data fields contained in just a few excel documents. Google fails to show how plaintiffs' request for representative sampling is remotely burdensome and disproportional given Google's size, the paucity of Google's production to date, the fact that Google proceeded unilaterally without talking with plaintiffs (as required), and how large the class is and damages are. *See Craig Coley v. Ventura Cnty*., 2020 WL 8414040, at *5 (C.D. Cal. June 8, 2020) (party cannot make a "conclusory assertion of lack of proportionality . . . untethered to any evidentiary showing of burden or other factor. . . ."); *Alvarado-Herrera v. Acuity*, 2022 WL 18108429, at *2 (D. Nev. Nov. 8, 2022) (assertion of undue burden cannot be "premised on conclusory statements by counsel rather than an evidentiary showing.").

*In re Facebook,* 2023 WL 1871107, at *24–25 (N.D. Cal. Feb. 9, 2023) ("it [is] not for [defendant] to unilaterally decide the scope and extent of discovery"). Plaintiffs reasonably believe that the additional date ranges proposed, including those near in time to those selected by Google, are reasonably likely to show the sale of "sensitive" information pertaining to the named plaintiffs—while Google's self-selected periods may not.

In addition, in communications with plaintiffs and filings with the Court, Google has been clear that, absent a court order requiring otherwise, it intends to produce time-sampled NPD from only one data source, [REDACTED]. Google wants to limit NPD to the [REDACTED], if possible, not because [REDACTED] represents the best source of NPD with the most complete data set and the longest retention period. Google knows that [REDACTED] not the best source of NPD because it is missing key data plaintiffs need for class certification and the merits and has only been retained for the most recent few years of the class period. Rather than admit this, which would expose Google's bad faith and improper litigation tactics, Google attempts to cover over its failings by making a time sample proposal that includes only the period for which Google has maintained some [REDACTED] data. This is, of course, improper. *See In re Facebook,* 2023 WL 1871107, at *24–25 (N.D. Cal. Feb. 9, 2023) (defendant cannot unilaterally limit its production of NPD to one "difficult and obscure" source).

There are, in fact, several better sources for NPD. These other sources span a longer time period and contain better, more complete NPD in one location.[3] Google does not want to be compelled to search and produce from these other logs for one simple reason: they undermine arguments Google is likely going to make in opposition to class certification. [REDACTED]

An order requiring Google to produce NPD from a truly representative sample of the class period accomplishes two things. First, it will require Google to produce NPD from other logs (identified in footnote 4) that are more complete and better sources of NPD than the [REDACTED] from which Google seeks to limit its production of NPD. Second, it will force Google to admit that it has not complied with its retention obligations, thus entitling plaintiffs to appropriate sanctions and inferences unless Google can produce the NPD from another source.[4] Since other sources not

---

[3] These other data sources include [REDACTED]

[4] Google's proposal fails to include any period before July 2021, implying that it does not have NPD before then, even though that data should have been preserved. Plaintiffs sent Google letters in March 2021 (when the complaint was filed), and in June and September 2021, instructing Google to preserve data that encompasses the NPD. In May 2021, plaintiffs served RFP 42 seeking the NPD. Google told the Court that it took action to preserve evidence relevant to this case. Dkts. 69, 82. Google told the Court at a February 8, 2022 hearing: "We have been preserving information from [the NP], from their accounts." Tr. at 125:25-126:25. In letters, Google has represented that it was "working to preserve the data associated with Plaintiffs' accounts" (Oct. 11, 2021), that "Google has been preserving log data related to the operation of its real-time bidding exchange" (Oct. 13, 2021), and that it was preserving "a truly enormous volume of log data" and "massive

only exist, but are in fact ***the best source*** of evidence for NPD, and should have disclosed to plaintiffs early in the case and then searched by Google, requiring Google to produce NPD data for additional time periods and from additional logs will solve many of the problems plaintiffs have with Google's incomplete and inadequate production to date.

For all of the foregoing reasons, Google should be ordered to produce NPD from all time periods plaintiffs have proposed and to search for and produce NPD from all data sources identified in footnote 4 above.

## II. Google's Position

Plaintiffs' demand for additional named Plaintiff data from additional time periods disregards principles of proportionality, violates this Court's standing order requiring good faith negotiations and reasonable compromises, and should be rejected. Google has already produced over ***four million*** records responsive to Plaintiffs' requests from its [REDACTED] log, the principal log that reflects information transmitted through RTB. When Plaintiffs complained this production was inadequate because it did not span all available data in the [REDACTED] and consisted of samples from certain time periods, the Court ruled that a sampling approach was appropriate. Specifically, the Court ruled that Google could produce "a sample of information to satisfy its obligations" pertaining to the named Plaintiff data, provided the sample is "representative." ECF No. 383 ("December 16 Order") at 5-6. As Google has explained to Plaintiffs, the records it produced span six week-long samples spaced roughly evenly throughout the time period for which Google possesses this data, making the records "representative" of the overall data available from these logs. They are, as the Court ordered, "documents sufficient to show, for each named plaintiff, what information specific to that plaintiff was shared with an RTB participant and the details of such sharing." ECF No. 314 at 4. Plaintiffs, however, insist that Google must compile and produce data from eleven additional separate periods of Plaintiffs' own choosing. This unjustified demand disregards the Court's prior orders and would impose unreasonable and disproportionate burdens on Google.

***First,*** Plaintiffs' demand should be rejected because they refused to engage in the good faith meet and confer negotiations this Court requires. While Google believes that its production already fully complies with the Court's directive to produce "representative" data samples, it nonetheless offered to consider producing additional data from additional time periods covered by [REDACTED], and invited Plaintiffs to make a reasonable proposal when the Parties met and conferred on this topic.[5] Plaintiffs rejected Google's compromise, refused to make any proposal, and made clear they would accept nothing short of their initial demands. Plaintiffs should not be rewarded for tactics that have unnecessarily burdened the Court with disputes that should be resolved without judicial intervention.

***Second,*** Plaintiffs' demands are not intended to generate a sample that is "representative" but one that is cherry-picked and ***un***representative of the available data as a whole. Indeed,

---

data set", but if at some point Google was unable to retain the data, it would seek relief from the Court. (Dec. 20, 2021, April 1, 2022).

[5] Plaintiffs assert that Google "refused in the meet and confer process to consider *any* additional weeks beyond its chosen six." This is false and Plaintiffs' misrepresentations are improper.

Plaintiffs have identified no particular defects in Google's sample that they claim make it unrepresentative. Nor do they ever articulate what features in their proposed sample set make it more representative, as opposed to simply larger. Instead—although they omit this fact from their briefing—Plaintiffs explained in meet and confer discussions that they identified specific time periods based on specific events they identified in their browsing activity. The details of Plaintiffs' demand make clear this selection was not intended to achieve a "representative" sample but one tailored for their strategic benefit. While Plaintiffs' principal complaint is that Google's production is "all in 2021 and 2022," they propose to add a single week in 2019, nothing at all in 2018, and two weeks in close proximity to one another in 2017, while also adding seven more weeks in the 2021-2022 time period that they otherwise complain about. This is the opposite of the Court's order that the Parties "ensure that the sample is representative." December 18 Order at 6. In effect, Plaintiffs seek to circumvent the Court's ruling that they are entitled only to a "representative" sample by cherry-picking additional samples that are skewed in ways they hope to be advantageous.

***Third***, Plaintiffs' proposal would needlessly and disproportionately multiply Google's discovery burdens. The six weeks of data that Google has already produced spans over ***four million*** records, an ample quantity for Plaintiffs to make whatever arguments they please about Google's alleged transmission of data. Plaintiffs have provided no adequate basis to force Google to go through the process of producing additional samples of double the amount of data already produced—including by providing contractually-required notice to numerous entities, a task that the Court has recognized as burdensome for Google. December 18 Order at 5-6. Moreover, Plaintiffs' chosen data samples include a number of weeks that predate April 2021, when Google began preserving [REDACTED] in response to Plaintiffs' filing this action. Because Plaintiffs have done nothing to show that Google's [REDACTED] sample—or an additional sample including some reasonable number of additional weeks from [REDACTED]—is unrepresentative, Plaintiffs' demand is disproportionately burdensome and inappropriate.

***Fourth***, the Court should reject Plaintiffs' attempt to convert the narrow issue of time sampling into a rehash of broader issues the Court already rejected regarding Google's production of data from [REDACTED]. In its December 16 Order, the Court already addressed Plaintiffs' complaint "that Google has chosen to produce data principally from the [REDACTED] log, but neglected other sources that contain unique data about information Google shares with RTB participants." December 16 Order at 2. Based on the [REDACTED] purported inadequacy, Plaintiffs demanded additional data productions from [REDACTED], even though they could not dispute Google's "representation that the [REDACTED] data logs contain thousands of fields, the vast majority of which are not relevant to this litigation." *Id.* at 4. The Court thus rejected Plaintiffs' claim of "the alleged superiority of the [REDACTED] as a source of responsive information" and denied their demand that Google expand its production to broadly cover these logs. *Id.* Despite that ruling,[6] Plaintiffs are yet again complaining about Google's production from the [REDACTED] and demanding that Google produce responsive data from three additional logs—all of which were among the [REDACTED] logs the Court already addressed in its December 16 Order. The Court should not entertain this repeated relitigation of issues it has already resolved, which is

[6] Plaintiffs did not appeal this order. *See* Fed. R. Civ. P. 72(a); Civ. L.R. 72-2.

a waste of this Court's time and judicial resources.[7] Further, requiring Google to attempt to find data from other sources beyond the [REDACTED] log is highly unlikely to generate more representative samples because [REDACTED]

Even if the Court reaches Plaintiffs' arguments that Google must expand its data productions to include the three identified [REDACTED] logs, it should reject them out of hand as unsupported conjecture. Plaintiffs offer nothing beyond attorney argument for their bald assertion that "the [REDACTED] is actually the worst source of NPD because it is missing key data plaintiffs need for class certification." This blanket assertion merely restates the complaint Plaintiffs made before about the [REDACTED], and it is simply false. [REDACTED]



For all of these reasons, the Court should recognize that Google's production of the [REDACTED] sample is sufficient and representative, and reject Plaintiffs' unfounded attempt to extract additional information of their choosing and from additional sources.

## III. Necessity of a Hearing

### A. Plaintiffs' Position

Production of Named Plaintiff Data and whether it will be representative to class claims is critical to Plaintiffs' case. Plaintiffs request a hearing and further request, for this and any other hearing scheduled between now and April 4, 2023, that the hearing be conducted remotely via Zoom, to accommodate plaintiffs' counsel who is unable to attend in person proceedings during this time due to physical injuries.

---

[7] Plaintiffs' citation to *In re Facebook, Inc. Consumer Privacy User Profile Litigation* is ironic, since that case faulted a party for maintaining discovery positions despite the court's "repeated rejection of [its] argument"–just as Plaintiffs do here by insisting they are entitled to [REDACTED] log data even after the Court ruled they are not. 2023 WL 1871107, at *23 (N.D. Cal. Feb. 9, 2023). That Google disagrees with Plaintiffs' demand for particular time periods as unrepresentative is hardly "unilaterally decid[ing] the scope and extent of discovery," *id.*; it is a good-faith dispute that the Court specifically envisioned might arise between the Parties.

[8] Google told Plaintiffs in October ***of 2021*** that "[t]he actual information about a given ad impression that Google sends to bidders participating in RTB (the 'bid request') is stored in only one log—[REDACTED]"

**B. Google's Position**

Unless the Court would benefit from a hearing, Google does not believe a hearing on these issues is necessary, especially because Plaintiffs are seeking to relitigate disputes this Court has already resolved.

## IV. Discovery Cut-Offs

The Parties' deadline to substantially complete their production of documents in advance of class certification passed on July 11, 2022. The fact discovery cut-off is November 10, 2023, and the close of expert discovery is February 9, 2024. Dkt. 391. Plaintiffs' deadline for filing a motion for class certification is May 23, 2023. *Id.*

## V. Compliance With Meet And Confer Requirement

In compliance with the Court's meet and confer requirements, the Parties met and conferred several times via Zoom. The final lead counsel meet and confer was held on February 9, 2023, via Zoom. Elizabeth C. Pritzker, Jay Barnes, Anne Davis, An Truong and Jenny Paulson attended for plaintiffs. Whitty Somvichian and Kelsey Spector, among others, attended for Google.

Respectfully submitted,

Dated: February 28, 2023

PRITZKER LEVINE LLP

By: */s/ Elizabeth C. Pritzker*

ELIZABETH C. PRITZKER (SBN 146267)
JONATHAN K. LEVINE (Cal. Bar No. 220289)
BETHANY CARACUZZO (Cal. Bar No. 190687)
CAROLINE CORBITT (Cal Bar No. 305492)
1900 Powell Street, Suite 450
Emeryville, CA 94608
Tel.: (415) 692-0772
Fax: (415) 366-6110
ecp@pritzkerlevine.com

*Interim Class Counsel*

Dated: February 28, 2023

BLEICHMAR FONTI & AULD LLP

By: */s/ Anne K. Davis*

LESLEY E. WEAVER (SBN 191305)
ANNE K. DAVIS (Cal. Bar No. 267909)
JOSHUA D. SAMRA (SBN 313050)
555 12th Street, Suite 1600
Oakland, CA 94607
Tel.: (415) 445-4003

Fax: (415) 445-4020
lweaver@bfalaw.com
jsamra@bfalaw.com

Dated: February 28, 2023

SIMMONS HANLY CONROY LLC

By: */s/ Jay Barnes*
JASON 'JAY' BARNES (admitted *pro hac vice*)
AN TRUONG (admitted pro hac vice)
112 Madison Avenue, 7th Floor
New York, NY 10016
Tel.: (212) 784-6400
Fax: (212) 213-5949
jaybarnes@simmonsfirm.com

Dated: February 28, 2023

DiCELLO LEVITT LLC

By: */s/ David A. Straite*
DAVID A. STRAITE (admitted pro hac vice)
485 Lexington Avenue, Suite 1001
New York, NY 10017
Tel.: (646) 933-1000
dstraite@dicellolevitt.com

Dated: February 28, 2023

COTCHETT, PITRE & McCARTHY LLP

By: */s/ Nanci E. Nishimura*
NANCI E. NISHIMURA (SBN 152621)
BRIAN DANITZ (SBN 247403)
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Tel.: (650) 697-6000
Fax: (650) 697-0577
nnishimura@cpmlegal.com
bdanitz@cpmlegal.com

Dated: February 28, 2023

BOTTINI & BOTTINI, INC.

By: */s/ Yury A. Kolesnikov*
FRANCIS A. BOTTINI, JR. (SBN 175783)
YURY A. KOLESNIKOV (SBN 271173)
7817 Ivanhoe Avenue, Suite 102
La Jolla, CA 92037
Tel.: (858) 914-2001
Fax: (858) 914-2002
fbottini@bottinilaw.com

ykolesnikov@bottinilaw.com

*Counsel for Plaintiffs and the Proposed Class*

Dated: February 28, 2023

COOLEY LLP

*/s/ Whitty Somvichian*

Michael G. Rhodes
Whitty Somvichian
Kelsey R. Spector
Reece Trevor
Anupam S. Dhillon
3 Embarcadero Center, 20th floor
San Francisco, CA 94111-4004
Tel.: 415-693-2000
Fax: 415-693-2222
rhodesmg@cooley.com
wsomvichian@cooley.com
kspector@cooley.com
rtrevor@coole.ycom
adhillon@cooley.com

Robby L.R. Saldaña
Khary J. Anderson
1299 Pennsylvania Avenue NW, Suite 700
Washington, DC 20004-2400
Tel.: 202-776-7800
Fax: 202-842-7899
rsaldana@cooley.com
kjanderson@cooley.com

Attorneys for Defendant
GOOGLE LLC

**ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1(h)(3)**

I, Elizabeth C. Pritzker, attest that concurrence in the filing of this document has been obtained from the other signatories. I declare under penalty of perjury that the foregoing is true and correct.

Executed this 28th of February, 2023, at Emeryville, California.

*/s/ Elizabeth C. Pritzker*
Elizabeth C. Pritzker