COOLEY LLP
MICHAEL G. RHODES (SBN 116127)
(rhodesmg@cooley.com)
WHITTY SOMVICHIAN (SBN 194463)
(wsomvichian@cooley.com)
KELSEY R. SPECTOR (SBN 321488)
(kspector@cooley.com)
REECE TREVOR (SBN 316685)
(rtrevor@cooley.com)
ANUPAM DHILLON (SBN 324746)
(adhillon@cooley.com)
3 Embarcadero Center, 20th floor
San Francisco, CA 94111-4004
Telephone: +1 415 693 2000
Facsimile: +1 415 693 2222

COOLEY LLP
ROBBY L.R. SALDAÑA (DC No. 1034981)
(rsaldana@cooley.com)
(*Admitted pro hac vice*)
KHARY J. ANDERSON (DC No. 1671197)
(kjanderson@cooley.com)
(*Admitted pro hac vice*)
1299 Pennsylvania Avenue, NW, Suite 700
Washington, DC 20004-2400
Telephone: +1 202 842 7800
Facsimile: +1 202 842 7899

Attorneys for Defendant
GOOGLE LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| In re Google RTB Consumer Privacy Litigation,<br><br>This Document Relates to: *all actions* | Master File No. 4:21-cv-02155-YGR-VKD<br><br>**GOOGLE LLC's OPPOSITION TO PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR CONTEMPT AND SANCTIONS FOR VIOLATIONS OF AUG. 26, 2022 AND DEC. 16, 2022 DISCOVERY ORDERS [DKT. NOS. 314, 382]**<br><br>Hearing Date: April 4, 2023[1]<br>Time: 10:00 a.m.<br>Judge: Hon. Virginia K. DeMarchi<br><br>**REDACTED VERSION OF DOCUMENT SOUGHT TO BE FILED UNDER SEAL** |

---

[1] Currently pending before the Court is the Parties' stipulated request to reschedule the hearing on Plaintiffs' motion from April 4, 2023 to April 11, 2023 (ECF No. 446).

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

GOOGLE'S OPP TO PLTS' MTN FOR CONTEMPT & SANCTIONS
FOR VIOLATION OF 8/26/22 & 12/16/22 DISCOVERY ORDERS
CASE NO. 4:21-CV-02155-YGR-VKD

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ............................................................................................................. 1
II. BACKGROUND ............................................................................................................... 2
    A. The Court's August 26 Order only required production of data that is both "specific to" a named Plaintiff and "shared with" RTB participants. ..................... 2
    B. The available verticals data is neither specific to a named Plaintiff nor shared with RTB participants. ................................................................................. 2
    C. The December 16 Order addressed verticals data for the first time and again focused on data specific to the named Plaintiffs and shared with RTB participants. .............................................................................................................. 3
    D. Google has been transparent to Plaintiffs about the scope of this production. ............................................................................................................... 5
    E. Plaintiffs' current demands for additional data. ..................................................... 6
III. STANDARD ...................................................................................................................... 7
IV. ARGUMENT ..................................................................................................................... 8
    A. Plaintiffs' Motion is a bad faith attempt to circumvent the Court's rules for discovery motions. .................................................................................................. 8
    B. Plaintiffs' complaint about Google's time sampling of verticals data is frivolous and duplicative of a pending dispute before the Court. ........................... 9
    C. Plaintiffs are not entitled to the additional data fields they seek .......................... 10
    D. Plaintiffs can readily link verticals data with other named Plaintiff data, and their accusations that Google manipulated this data are false. ....................... 12
    E. Plaintiffs' demand for sanctions is baseless. ........................................................ 12
V. CONCLUSION ................................................................................................................ 13

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

-i-

GOOGLE'S OPP TO PLT' MTN FOR CONTEMPT & SANCTIONS
FOR VIOLATION OF 8/26/22 & 12/16/22 DISCOVERY ORDERS
CASE NO. 4:21-CV-02155-YGR-VKD

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Brighton Collectibles, Inc. v. RK Texas Leather Mfg.*,
　No. 10-CV-GPD (WVG), 2013 WL 4715210 (S.D. Cal. Sept. 3, 2013) ................................. 7

*Etienne v. Kaiser Found. Hosp.*,
　No. C11-02324 LB, 2012 U.S. Dist. LEXIS 91600 (N.D. Cal. July 2, 2012) ................. 7, 9, 13

*F.T.C. v. Affordable Media*,
　179 F.3d 1228 (9th Cir. 1999) ........................................................................................... 7

*Goodyear Tire & Rubber Co. v. Haeger*,
　581 U.S. 101 (2017) ...................................................................................................... 7, 8

*Koninklijke Philips N.V. v. Elec-Tech Int'l Co.*,
　No. 14-cv-02737-BLF, 2015 WL 6449399 (N.D. Cal. Oct. 26, 2015) ..................................... 7

*Persian Gulf Inc. v. BP W. Coast Prod. LLC*,
　No. 18-cv-1374-DMS-AGS, 2020 WL 1028483 (S.D. Cal. Mar. 2, 2020) ............................. 7

*True Health Chiropractic Inc. v. McKesson Corp.*,
　2015 WL 5341592 (N.D. Cal. Sept. 12, 2015) ................................................................ 7, 13

**Other Authorities**

Fed. R. Civ. P. 37 ................................................................................................................ 7

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

-ii-

GOOGLE'S OPP TO PLTs' MTN FOR CONTEMPT & SANCTIONS
FOR VIOLATION OF 8/26/22 & 12/16/22 DISCOVERY ORDERS
CASE NO. 4:21-CV-02155-YGR-VKD

## I. INTRODUCTION

Plaintiffs' Motion for Contempt and Sanctions for Violations of Aug. 26, 2022 and Dec. 16, 2022 Discovery Orders ("Motion") should be denied in its entirety because it seeks production of data that goes far beyond the scope of the Court's prior orders and demands sanctions based on nothing more than baseless accusations. In fact, Plaintiffs' Motion appears designed to circumvent this Court's rules requiring discovery disputes to be resolved only through a joint letter brief process following an adequate meet and confer. Plaintiffs have repeatedly tried to avoid this requirement because they prefer to file unilateral, fully-noticed motions on discovery issues, but the Court has rejected these tactics each time. ECF No. 357 (admonishing Plaintiffs for filing a noticed motion for discovery compliance accompanied by a request to shorten time); ECF No. 413 (denying motion for leave to file a noticed motion in place of a joint letter brief and instructing that the required meet and confer process is not "a box-checking exercise"). The present Motion is Plaintiffs' latest effort to avoid the Court's meet-and-confer and joint-letter-brief requirements—this time by tacking on a meritless sanctions demand to what is otherwise a standard discovery dispute that should be resolved through the Court's normal process. The Court should deny the Motion for this reason alone.

On the merits of Plaintiffs' discovery demands, as explained below, the Court should reject Plaintiffs' requests for additional data because Google's productions are more than adequate and the additional data fields that Plaintiffs seek are either unavailable for production and/or exceed the scope of the Court's prior orders. As one example, Plaintiffs demand production of a specific data field ("content_labels") that is *not* specific to individual users, is *not* shared with RTB bid participants, is *not* used to target ads, and has no relevance to this case.

Even if the Court finds that additional productions are warranted, Plaintiffs have not met the high bar for showing that any sanctions are appropriate. Google has produced over ▬ data records for the named Plaintiffs, encompassing approximately ▬ data fields compiled from multiple sources at great effort and expense. Where Google objected to Plaintiffs' demands for additional data, it did so in good faith based on reasonable interpretations of the Court's orders, and Google even sought formal clarification in an effort to ensure that it fully complied with the Court's

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

GOOGLE'S OPP TO PLTS' MTN FOR CONTEMPT & SANCTIONS
FOR VIOLATION OF 8/26/22 & 12/16/22 DISCOVERY ORDERS
CASE NO. 4:21-CV-02155-YGR-VKD

1

expectations regarding production of verticals data. These are not the sorts of circumstances that can merit sanctions, and Plaintiffs' efforts to paint a false narrative of obstruction are premised on a host of misrepresentations, as detailed below. For all these reasons, Google respectfully requests that the Court deny Plaintiffs' Motion in its entirety.

## II. BACKGROUND

### A. The Court's August 26 Order only required production of data that is both "specific to" a named Plaintiff and "shared with" RTB participants.

The parties' disputes over the production of data date back to summer 2022. In its August 26, 2022 Order, the Court rejected Plaintiffs' broad request for all information that Google "links" with the named Plaintiffs and held that Plaintiffs are entitled only to "documents sufficient to show, for each named Plaintiff, what information *specific to that plaintiff was shared* with an RTB participant and the details of such sharing." ECF No. 314 at 4 ("August 26 Order") (emphasis added). The August 26 Order makes no mention of verticals, user lists, or categorization of apps because those issues were not addressed in the parties' July 29, 2022 joint letter brief[2] or at the August 23, 2022 hearing on the dispute. *Id.*; *see also* ECF No. 269; August 23, 2022 Hearing Transcript ("Aug. 23, 2022 Hr'g Tr.").

### B. The available verticals data is neither specific to a named Plaintiff nor shared with RTB participants.

Following the August 26 Order, Google made a voluminous production of named Plaintiff data. *See, e.g.*, ECF No. 365 at 4. That production did not include data regarding verticals because the available verticals data is neither specific to the named Plaintiffs nor shared with RTB participants. As Google has previously explained, the ▆▆▆▆▆▆▆▆ field that was previously shared through RTB was associated with websites, *not users*, and was deprecated in or around February 2020 and has not been included in bid requests since that time. ECF No. 382 at 4; *see also id.* at 4, n.4 (acknowledging "that the ▆▆▆▆▆▆▆▆ field refers to the web site the account holder happened to be visiting at the time of the auction . . . and does not refer to categorization of

---

[2] Plaintiffs claim in the Motion that they "moved to compel … various categories of data, which included verticals information directly and indirectly relating to the named plaintiffs," Mot. at 2, but this is false—the July 29, 2022 joint letter brief contains no mention of verticals. *See* ECF. No. 269.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

2

GOOGLE'S OPP TO PLTS' MTN FOR CONTEMPT & SANCTIONS
FOR VIOLATION OF 8/26/22 & 12/16/22 DISCOVERY ORDERS
CASE NO. 4:21-CV-02155-YGR-VKD

1  the account holder herself"). As Google has also explained to the Court and to Plaintiffs, data about
2  this ▇▇▇▇▇ field cannot be produced for the named Plaintiffs from any available data
3  source due to the fact that it was deprecated over three years ago. January 31, 2023 Hearing
4  Transcript ("Jan. 31, 2023 Hr'g Tr.") at 43:25-44:3; *see also* Declaration of Whitty Somvichian
5  ("Somvichian Decl."), Ex. C at 1. To elaborate, following the December 6, 2022 hearing that led
6  to the December 16 Order, Google searched the data it had earlier preserved from the specific log
7  that Plaintiffs had requested and determined that the ▇▇▇▇▇ field was not available in
8  a form that could be linked to the named Plaintiffs. Somvichian Decl., Ex. E 1. As Google
9  explained to Plaintiffs, Google preserved data in this log for the named Plaintiffs upon determining
10 the relevance of the log and after receiving Plaintiffs' emails to enable the preservation. While this
11 preserved data predates the filing of the lawsuit, it does not reach back to before March 2020 when
12 the ▇▇▇▇▇ field was included in bid requests. *Id.*
13     Currently, following the deprecation of the ▇▇▇▇▇ field from bid requests, RTB
14 participants can target their ads to be shown on websites associated with certain verticals, but these
15 vertical categories are, again, *not* specific to a user and are *no longer* shared with RTB participants.
16 *See, e.g.*, Jan. 31, 2023 Hr'g Tr. at 39:5-13, 39:17-20; Somvichian Decl. at Ex. C at 1-2. To
17 illustrate, ▇▇▇▇▇
18 ▇▇▇▇▇
19 ▇▇▇▇▇
20 ▇▇▇▇▇ *See* Declaration of Stanislav
21 Belov ("Belov Decl.") ¶ 4. For these reasons, Google's internal data on website verticals does not
22 fall within the scope of the Court's August 26 Order.

23     **C.   The December 16 Order addressed verticals data for the first time and again
24          focused on data specific to the named Plaintiffs and shared with RTB
             participants.**

25     Following the August 26 Order, Plaintiffs moved to compel again on various named-
26 Plaintiff data issues, this time demanding broad production from a number of ▇▇▇▇▇ logs. ECF
27 Nos. 365, 367. In connection with these demands, Plaintiffs pointed in part to various "verticals"
28 fields, which they contended "represent categories associated with [account holders] and their

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

3

GOOGLE'S OPP TO PLTS' MTN FOR CONTEMPT & SANCTIONS
FOR VIOLATION OF 8/26/22 & 12/16/22 DISCOVERY ORDERS
CASE NO. 4:21-CV-02155-YGR-VKD

communications." ECF No. 367 at 1.  In its December 16, 2022 Order, the Court required Google to produce certain data regarding verticals, if available, but again limited any production to data that is "shared with" RTB participants and is "linked with" the named Plaintiffs.  Specifically, the Court ordered Google to produce, if available, (1) "documents sufficient to show for each named plaintiff the 'verticals' data fields it *shared with RTB participants* during the class period," and (2) "documents sufficient to show for each named plaintiff the information, if any, that it *provided to RTB participants* that would permit those participants to infer information about the account holder based on *verticals linked with the account holder*." ECF No. 382 ("December 16 Order") at 5 (emphasis added).  In the same order, the Court considered Google's production of data for specific time samples and generally agreed that a sampling approach was appropriate but ordered the parties to confer regarding the specific time samples chosen.  *Id.* at 6.  Nothing in the December 16 Order suggested that verticals data must be produced for a broader range of time samples than the rest of Google's named-Plaintiff data productions.  *Id.*

Given the limitations stated in the December 16 Order, Google did not believe—and still does not believe—that the available internal website verticals data is responsive.  As described above, the available verticals data is *internal* to Google, is *not shared* with RTB participants, and is associated with *websites, not individuals*.  *Supra* II.B.  Nonetheless, on January 13, 2023, Plaintiffs wrote to Google demanding that it produce ▇ categories of fields in response to the December 16 Order, claiming that these fields represented "verticals" even though the majority of these fields do not reference verticals at all.  Somvichian Decl., Ex. B at 1-2.

Out of an abundance of caution and given Plaintiffs' contrary interpretation, Google moved for clarification of the December 16 Order.  *See* ECF No. 408.  At the hearing on that request, the Court confirmed it was not altering the focus of the December 16 Order, which addressed only verticals "linked with the account holder." ECF No. 382 at 5.  When Plaintiffs attempted to bring up other data fields they had demanded in their January 13 letter, for example "user lists," the Court directed the parties "to focus on the verticals issue." Jan. 31, 2023 Hr'g Tr. at 49:6-7.  The Court also confirmed that the December 16 Order applied to "verticals associated with the user . . . not verticals associated with the website." Jan. 31, 2023 Tr. at 54:10-22.  Because the Court viewed

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

4

GOOGLE'S OPP TO PLTS' MTN FOR CONTEMPT & SANCTIONS
FOR VIOLATION OF 8/26/22 & 12/16/22 DISCOVERY ORDERS
CASE NO. 4:21-CV-02155-YGR-VKD

this part of its Order to be "clear," *id.* at 54:21-55:1, it ultimately denied Google's motion for clarification on February 1, 2023, ECF No. 420.

Following this order, Plaintiffs threatened further motion practice if Google did not produce the available internal website verticals data that is *not shared* and is *not associated with users*. Ultimately, Google decided to produce that data for the named Plaintiffs in an effort to avoid further dispute.[3] But to be clear, Google does not believe this data is within the scope of the December 16 Order because it is internal to Google, is not shared with RTB participants, and is not associated with specific users. In producing the data, Google made clear to Plaintiffs that it is not waiving its objection that this data exceeds the scope of the Court's Order and is otherwise irrelevant. Somvichian Decl., Ex. D at 1. Following the hearing on Google's motion for clarification and Google's February 9, 2023 letter explaining its data production, Plaintiffs did not re-raise any issues regarding the additional fields identified in their January 13, 2023 letter, other than in passing at a meet and confer that led to recent joint letter briefs (ECF Nos. 429, 430, and 434). Somvichian Decl. ¶ 3.

**D.   Google has been transparent to Plaintiffs about the scope of this production.**

Throughout these events, Google has been transparent with Plaintiffs regarding its interpretation of the December 16 Order and its production:

- On January 31, 2023, Google wrote to Plaintiffs to reiterate that the ▮▮▮▮ ▮▮▮▮ field at issue in the December 16 Order was deprecated in or around February 2020 and, therefore, was not available for production. Somvichian Decl., Ex. C at 1. Additionally, in a February 10, 2023 letter, Google further explained to Plaintiffs why the data was unavailable despite Google's preservation efforts. Somvichian Decl., Ex. E at 1-2.

- Following the hearing on Google's motion for clarification, after Plaintiffs demanded immediate production of Google's internal website verticals data, Google

---

[3] Plaintiffs complain that Google did not make this production on January 31, 2023 (the date initially set for the production of verticals data), but Google made clear to Plaintiffs that it needed to wait for the Court to rule on its motion for clarification and to review the hearing transcript in order to resolve its position on producing the available verticals data. Somvichian Decl., Ex. C.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

5

GOOGLE'S OPP TO PLTS' MTN FOR CONTEMPT & SANCTIONS
FOR VIOLATION OF 8/26/22 & 12/16/22 DISCOVERY ORDERS
CASE NO. 4:21-CV-02155-YGR-VKD

- responded that it had a different understanding of the Court's statements and needed time to receive and review the transcript from the hearing before it committed to producing any such verticals data. Somvichian Decl., Ex. C & ¶ 4.

- After reviewing the transcript, on February 9, 2023, Google wrote to Plaintiffs explaining that while it did not believe that its internal website verticals data is encompassed by the Court's orders, it would produce such information to avoid further disputes. *Id.*, Ex. D. In that same letter, Google identified the specific fields it would be producing, the specific sources from which it pulled those fields, and what those fields represent. *Id.*

- When Plaintiffs asked about whether other data sources would contain additional information, Google explained that they would not. *Id.*, Ex. F.

- Similarly, when Plaintiffs asked about the lack of an identifier for each named Plaintiff in the production of internal website verticals data, Google explained that the prior productions of named Plaintiff data can be linked with the verticals data through a basic query. *Id.*

E.  **Plaintiffs' current demands for additional data.**

Plaintiffs now resurface their demands for three specific data fields referenced in their January 13 letter—user_lists, content_labels, and "app categories"—claiming these three fields are "verticals" data that should have been produced in response to the December 16 Order. None of these data fields, however, were addressed in the parties' meet and confer discussions leading up to the December 16 Order, and the December 16 order makes no mention of these specific fields or even the general topic of user lists or app categories. Notably, Plaintiffs had moved for "'user list' information" *in addition to* verticals information in the briefing that led to the December 16 Order, *see* ECF No. 367 at 2, but the Court did *not* include "user list" information in the portion of that Order requiring Google to supplement its production, ECF No. 382 at 4-5. In short, at best, these are unripe issues and, at worst, attempts to relitigate issues that Plaintiffs have already lost. Further, as further discussed below, these specific data fields are not the functional equivalents of the "verticals" that the Court previously considered and/or are unavailable for production.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

6

GOOGLE'S OPP TO PLTS' MTN FOR CONTEMPT & SANCTIONS
FOR VIOLATION OF 8/26/22 & 12/16/22 DISCOVERY ORDERS
CASE NO. 4:21-CV-02155-YGR-VKD

### III. STANDARD

To obtain a contempt order as a discovery sanction, Plaintiffs must prove by clear and convincing evidence that one of this Court's orders gave Google "*unequivocal* notice" that certain documents were to be produced. *Etienne v. Kaiser Found. Hosp.*, No. C11-02324 LB, 2012 U.S. Dist. LEXIS 91600, at *3 (N.D. Cal. July 2, 2012) (emphasis added); *see also F.T.C. v. Affordable Media*, 179 F.3d 1228, 1239 (9th Cir. 1999) (discussing clear and convincing evidence standard); *Koninklijke Philips N.V. v. Elec-Tech Int'l Co.*, No. 14-cv-02737-BLF, 2015 WL 6449399, at *2 (N.D. Cal. Oct. 26, 2015) ("[C]ontempt requires the existence of a specific and definite court order."). It is well established that contempt is not warranted if there is evidence that the nonmoving party acted in good faith and with a reasonable interpretation of the court's order; a "close call" will not support a contempt finding. *Persian Gulf Inc. v. BP W. Coast Prod. LLC*, No. 18-cv-1374-DMS-AGS, 2020 WL 1028483, at *2 (S.D. Cal. Mar. 2, 2020).

Plaintiffs' demands for evidentiary sanctions must clear an even higher bar. "[O]n the menu of sanctions that a court may select from in applying Rule 37, preclusion of evidence is among the most severe." *True Health Chiropractic Inc. v. McKesson Corp.*, 2015 WL 5341592, at *6 (N.D. Cal. Sept. 12, 2015). Accordingly, courts agree that such sanctions should only be reserved for "discovery abuse that is so extreme and prejudicial that no lesser remedy will cure the harm." *Brighton Collectibles, Inc. v. RK Texas Leather Mfg.*, No. 10-CV-GPD (WVG), 2013 WL 4715210, at *1 (S.D. Cal. Sept. 3, 2013). As such, courts apply a five-factor test in the context of exclusionary sanctions to analyze "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the party seeking sanctions; (4) the public policy favoring disposition of cases on their merits; [and] (5) the availability of less drastic sanctions." *True Health Chiropractic*, 2015 WL 5341592, at *6. Courts find these types of sanctions "generally improper absent undue prejudice to the opposing side." *Id*.

Finally, Plaintiffs' request for monetary sanctions must fail unless they can demonstrate, through a "but-for analysis," that attorneys' fees for a particular litigation task "would not have paid but for the misconduct." *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 109 (2017). Even if granted, such relief would be limited to reimbursement for the reasonable expenses incurred

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

7

GOOGLE'S OPP TO PLTS' MTN FOR CONTEMPT & SANCTIONS
FOR VIOLATION OF 8/26/22 & 12/16/22 DISCOVERY ORDERS
CASE NO. 4:21-CV-02155-YGR-VKD

in preparing the Motion. *Id*. (granting only those fees "incurred by Plaintiffs in filing the Sanctions Motion" and rejecting request for Special Master fees).

## IV. ARGUMENT

### A. Plaintiffs' Motion is a bad faith attempt to circumvent the Court's rules for discovery motions.

Plaintiffs are once again attempting an end run around this Court's process for raising discovery disputes. The Court's standing order requires in no uncertain terms that all discovery disputes must be presented in the form of a joint letter brief following a meaningful meet and confer process. *See* Standing Order for Civil Cases, Magistrate Judge Virginia K. Demarchi § 4. Despite repeated admonitions from this Court, Plaintiffs' current Motion is yet another attempt to avoid this requirement.

As a threshold matter, Plaintiffs have not meaningfully met and conferred with Google regarding the fields they now demand, which were raised by Plaintiffs in a January 13 letter and then not raised again until Plaintiffs filed this Motion. Any dispute regarding these fields should be resolved through the normal discovery procedures in this case: a meaningful (not pro-forma) attempt to meet and confer followed by a joint letter brief if necessary. But rather than follow the rules, Plaintiffs seek to circumvent this Court's requirements by tacking on a baseless sanctions demand to a discovery dispute that is not even yet ripe.

This behavior is nothing new and mirrors other tactics Plaintiffs have employed throughout this litigation. For example, instead of filing a joint letter brief, Plaintiffs previously filed a fully noticed motion to compel, accompanied by a request to shorten time. *See, e.g.*, ECF No. 357. In response, the Court noted it "[wa]s mystified by plaintiffs' approach to this dispute" and was "inclined to strike the noticed motion for failing to comply with the discovery dispute resolution procedures." *Id.* at 2. Plaintiffs also sought leave to file a fully noticed motion to raise discovery disputes stemming from the deposition of two Google employees, which the Court summarily denied. ECF No. 413 (denying request for leave to file noticed motion).[4] In short, the Court has

---

[4] Plaintiffs also initially indicated they would seek leave to file a noticed motion regarding the named-Plaintiff data disputes that have now been raised in three separate joint letter briefs over Google's objections, including the time-sampling dispute that Plaintiffs attempt to raise again here.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

8

GOOGLE'S OPP TO PLTS' MTN FOR CONTEMPT & SANCTIONS
FOR VIOLATION OF 8/26/22 & 12/16/22 DISCOVERY ORDERS
CASE NO. 4:21-CV-02155-YGR-VKD

consistently made it clear that Plaintiffs may not bring discovery disputes through a fully noticed motion, yet Plaintiffs continue to do so anyway, this time inserting a meritless sanctions demand as the excuse for ignoring the Court's standing order. The Court should not reward Plaintiffs' repeated attempts to play fast and loose with the rules. The present Motion is nothing more than a naked attempt to circumvent this Court's procedures, and it should be denied for that reason alone.

**B.   Plaintiffs' complaint about Google's time sampling of verticals data is frivolous and duplicative of a pending dispute before the Court.**

Plaintiffs' first purported basis for demanding sanctions is that Google "only produced verticals information for a sample of just six weeks," which they contend is "plainly unrepresentative." Mot. at 4-5. But that issue of time sampling is the very subject of a joint letter brief that the parties submitted just hours before Plaintiffs unilaterally filed the present Motion to demand sanctions on the same subject. *See* ECF No. 428-3. In that letter brief, Plaintiffs make the same argument they raise in the Motion—that Google failed to "produce a representative sample from the entire class period." *Id*. at 1. That joint letter brief remains pending before the Court, and it is frivolous for Plaintiffs to demand sanctions on the ground that Google produced "a sample of just six weeks," Mot. at 4, when the Court has not ruled on the issue and there is no present order requiring Google to go beyond the six-week sample of its data production. *See Etienne*, 2012 U.S. Dist. LEXIS 91600, at *4 (sanctions appropriate only where a party fails to comply with a discovery obligation for which it had "unequivocal notice").[5]

The only *current* order that addresses time sampling, the December 16 Order, explicitly authorized Google to produce named Plaintiff data using "some kind of [time] sampling," and directed the parties to confer about whether Google's samples are "representative." December 16 Order at 5-6. "If a dispute remains after the parties confer," the Court instructed, "they may submit that dispute to the Court for decision." *Id*. Google fully complied with the December 16 Order by conferring with Plaintiffs, including offering to consider producing data for additional time samples

---

Somvichian Decl., Ex. A at 3. But Plaintiffs did not do so after the Court denied their earlier motion for leave. *See* ECF No. 413.

[5] Tellingly, Plaintiffs themselves cannot say what documents or time periods they think the Court previously ordered Google to produce, seeking an order that Google provide a "truly representative sample." Mot. at 10.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

9

GOOGLE'S OPP TO PLTS' MTN FOR CONTEMPT & SANCTIONS
FOR VIOLATION OF 8/26/22 & 12/16/22 DISCOVERY ORDERS
CASE NO. 4:21-CV-02155-YGR-VKD

1  from its ███████████████████  See ECF No. 428-3 at 4. When that meet and confer process
2  failed to yield a resolution, the parties filed a joint letter brief to resolve their dispute, just as the
3  Court instructed. Plaintiffs cannot short circuit that process and demand sanctions simply because
4  Google did not capitulate to their demands and asked the Court to address the dispute, as the
5  December 16 Order envisions. Indeed, the notion that Google should be sanctioned for failing to
6  make a data production whose scope remains in dispute before the Court is nonsensical.

7  To the extent Plaintiffs have any ripe dispute about Google's sampling as it pertains to
8  verticals data, that dispute is subsumed within the parties' pending briefing and should be addressed
9  as part of that ongoing process. To briefly reiterate Google's position on that issue, Plaintiffs'
10  demand for additional time samples is not proportional and not calculated to meet the Court's
11  requirement that time sampling be "representative"; as Plaintiffs admitted while conferring with
12  Google, they seek additional samples from specific periods that they believe will benefit their
13  theory of the case without regard to whether those periods are "representative." *See* ECF No. 428-
14  3 at 4. These same considerations apply to the verticals data and Plaintiffs' demands for additional
15  time samples should be addressed through the joint letter brief that is already pending before the
16  Court.

17  **C.   Plaintiffs are not entitled to the additional data fields they seek.**

18  As noted above, Plaintiffs have not complied with the Court's requirement for meeting and
19  conferring on the additional data fields they seek in the Motion, and the Court can reject their
20  demands for this reason alone. In any case, Plaintiffs fail to show that these data fields fall within
21  the December 16 Order on verticals or that production of this information is warranted.

22  <u>user_lists</u>: Plaintiffs equate data in the user_lists field with "'verticals' information" in their
23  Motion, but this conclusory assertion is simply wrong. Mot. at 5. As an initial matter, the user_lists
24  field was removed from bid requests in 2018, and Google no longer has information from this data
25  field that it can produce for the named Plaintiffs. Belov Decl. ¶ 3. More foundationally, user lists
26  are not "verticals" in any sense. Google does not itself generate and share user lists; RTB bid
27  participants create these lists themselves based on their own information about certain users. *Id.* ¶
28  5. Further, user lists were not linked to the now-deprecated ███████████████ field when this

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

10

GOOGLE'S OPP TO PLTS' MTN FOR CONTEMPT & SANCTIONS
FOR VIOLATION OF 8/26/22 & 12/16/22 DISCOVERY ORDERS
CASE NO. 4:21-CV-02155-YGR-VKD

field was included in bid requests, nor are they linked to the website verticals data that Google currently maintains for internal use. *Id.* ¶¶ 4-5. Notably, the Court's December 16 Order regarding verticals does not encompass data on user lists, even though Plaintiffs specifically demanded it. ECF No. 367 at 2. Plaintiffs cannot shoehorn their renewed demand for user_lists information into the Court's order on verticals, much less insist that Google be sanctioned for not producing data that the Court never ordered to be produced.

content_labels: Plaintiffs are also wrong that the content_labels field is responsive to the December 16 Order. Like the now-deprecated ▮▮▮▮▮ field discussed above, the content_labels field was removed from bid requests in February 2020, and Google no longer has information that it can produce from this data field for the named Plaintiffs. Belov Decl. ¶ 6. And like ▮▮▮▮▮ the information in the content_labels field was associated with websites, not individual account holders. *Id.* ¶ 7. Moreover, the content labels data is *not* used for ad targeting by RTB bid participants and is even further afield from any theory of relevance for that reason. *Id.* ¶ 7. RTB participants can only use the content labels data to pre-filter the categories of websites for which they do ***not*** want to receive bid requests. *Id.* RTB bid participants do not receive information on which specific websites were filtered out by this process from the bid requests they receive, much less any information about a user based on this feature. *Id.* Google should not be required to search for and produce internal data that is not shared with RTB participants, not specific to individual users, and not used for ad targeting.

App categories: Plaintiffs also fails to show that app categories are a form of "verticals" data that Google was required to produce under the December 16 Order. Like the ▮▮▮▮▮ and content labels fields, the specific data field Plaintiffs identify (app_category_fatcat_ids) was deprecated from bid requests in February 2020, and Google no longer has information that it can produce from this data field for the named Plaintiffs. *Id.* ¶ 8. More generally, information on the categorization of apps is not information specific to a user, nor are these categories created by Google specifically for use in RTB. *Id.* Instead, these categories are used generally to categorize apps in the Google Play Store and in the Apple App Store. *Id.*

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

11

GOOGLE'S OPP TO PLTS' MTN FOR CONTEMPT & SANCTIONS
FOR VIOLATION OF 8/26/22 & 12/16/22 DISCOVERY ORDERS
CASE NO. 4:21-CV-02155-YGR-VKD

Again, Google should not be required to produce data that is not specific to individual users, not shared with RTB bid participants, and falls beyond the scope of the December 16 Order.

### D. Plaintiffs can readily link verticals data with other named Plaintiff data, and their accusations that Google manipulated this data are false.

Finally, with no evidence at all, Plaintiffs claim that Google "intentionally stripped out the named plaintiff identifiers from the production and did not provide them to plaintiffs as part of the production" of verticals data. Mot. at 5. That is false. Google did not "strip" anything from this data, and Plaintiffs offer not a bit of evidence for their accusation that Google manipulated its production simply to inconvenience Plaintiffs. *See* Levine Decl. ¶ 19 (claiming with no explanation that "it is clear that Google had those links and intentionally did not provide them to plaintiffs as part of the production").

On the contrary, the data was produced as it is stored in Google's ordinary course of business, with a unique ▓▓▓▓ for every record. Somvichian Decl., Ex. F & ¶ 7. These same ▓▓▓▓ also appear in the bid requests corresponding to each named Plaintiff, which are included in Google's prior productions of data from the ▓▓▓▓. Somvichian Decl., Ex. F. As Google has previously informed Plaintiffs, associating the verticals data with the named-Plaintiff data from the ▓▓▓▓ is thus a straightforward matter of matching the unique ▓▓▓▓ in these two production sets. Somvichian Decl., Ex. F (informing Plaintiffs that they "can perform this matching using the ▓▓▓▓ Google provided in this log and the previously produced logs"). Google's counsel confirmed as much when its own internal personnel did so successfully. Somvichian Decl. ¶ 7. Notably, Plaintiffs nowhere claim in their Motion that they have been unable to match the verticals data with the named Plaintiffs identified in the ▓▓▓▓ productions. If anything, Plaintiffs' inclusion of this issue as a purported grounds for sanctions only underscores the blatant overreach of their Motion.

### E. Plaintiffs' demand for sanctions is baseless.

In light of the facts above, Plaintiffs come nowhere near meeting their burden to show that Google's conduct has been improper—much less sanctionable. Plaintiffs are demanding that Google produce specific materials either for the first time in the Motion or for a second time after

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

12

GOOGLE'S OPP TO PLTS' MTN FOR CONTEMPT & SANCTIONS
FOR VIOLATION OF 8/26/22 & 12/16/22 DISCOVERY ORDERS
CASE NO. 4:21-CV-02155-YGR-VKD

the Court rejected their prior request, which only underscores that there is no "unequivocal" court order whose violation could expose Google to contempt or monetary sanctions. *Etienne*, 2012 U.S. Dist. LEXIS 91600, at *3. On the contrary, a live dispute remains before the Court as to whether Google's time sampling of named Plaintiff data is sufficiently representative; nothing in the Court's December 16 Order suggests that Google must produce information related to user_lists, content_labels, and app categories; and Plaintiffs' insinuations that Google manipulated its data production are both unsupported and untrue.

Plaintiffs' request for evidentiary sanctions is weaker still. Plaintiffs have done nothing to explain how Google's alleged misconduct has "affected their ability to obtain additional discovery or make arguments in [their] motions." *True Health Chiropractic*, 2015 WL 5341592, at *6–7. If anything, Plaintiffs' decision to raise these discovery disputes in the guise of a sanctions motion has only delayed their resolution; Plaintiffs could and should have used the Court's expedited letter briefing process, and their insistence on using a noticed motion to circumvent the Court's standing order needlessly burdens both Google and the Court. The Court should reject this improper, unripe, and baseless Motion in full.

## V.  CONCLUSION

For these reasons, Google respectfully requests that the Court deny Plaintiffs' Motion.

Dated: March 14, 2023                                COOLEY LLP

                                                     By: /s/ *Whitty Somvichian*
                                                         Whitty Somvichian

                                                     Attorneys for Defendant
                                                     GOOGLE LLC

282767615

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

13   GOOGLE'S OPP TO PLTS' MTN FOR CONTEMPT & SANCTIONS
FOR VIOLATION OF 8/26/22 & 12/16/22 DISCOVERY ORDERS
CASE NO. 4:21-CV-02155-YGR-VKD