Elizabeth C. Pritzker (Cal. Bar No. 146267)
Jonathan K. Levine (Cal. Bar No. 220289)
Bethany Caracuzzo (Cal. Bar No. 190687)
Caroline Corbitt (Cal Bar No. 305492)
**PRITZKER LEVINE LLP**
1900 Powell Street, Suite 450
Emeryville, CA 94608
Tel.: (415) 692-0772
Fax: (415) 366-6110
*ecp@pritzkerlevine.com*
*jkl@pritzkerlevine.com*
*bc@pritzkerlevine.com*
*ccc@pritzkerlevine.com*

*Interim Class Counsel*

[Additional Counsel on Signature Page]

**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

| | |
|---|---|
| *In re Google RTB Consumer Privacy Litigation*, <br><br> This document applies to: *all actions.* | Case No. 4:21-cv-02155-YGR-VKD <br><br> **REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR CONTEMPT AND SANCTIONS FOR VIOLATIONS OF AUG. 26, 2022 AND DEC. 16, 2022 DISCOVERY ORDERS [DKT. NOS. 314, 382]** <br><br> Judge: Hon. Virginia K. DeMarchi <br> Date:  April 11, 2023 <br> Time:  10:00 a.m. <br> Courtroom: 2, Fifth Floor |

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

## I. INTRODUCTION

Google made a grossly incomplete and late production of verticals information, thus clearly violating two discovery orders issued by the Court and necessitating the filing of plaintiffs' motion for contempt and sanctions. In its opposition, Google offers three arguments in defense of its discovery misconduct. First, according to Google, plaintiffs should have submitted a joint letter brief rather than a sanctions motion. Second, Google maintains that it need not comply with the Court's directives because, as it readily admits, it failed to preserve relevant verticals information. Third, Google claims that its production was in a proper form and that the information plaintiffs identified to be missing is not responsive to the Court's orders. Google's arguments are misleading and its opposition is meritless, providing no basis to deny plaintiffs' motion in any respect.

Plaintiffs' motion is not a "tactic" designed to circumvent the Court's discovery dispute process, as Google claims. It is a well-founded and well-supported motion, in compliance with the Federal Rules, the Court's standing order, and Civil L.R. 37-4, seeking redress for Google's willful and knowing failure to produce relevant verticals information that Google has been ordered to produce—*twice*. The parties do not have a "discovery dispute" appropriate for submission as a joint letter brief, because the Court has already ruled in plaintiffs' favor (twice) on all of the issues raised in the motion. Nor is Google's unexplained failure to preserve relevant verticals information a permissible justification for its plainly inadequate production. To the contrary, this raises serious preservation violations on Google's part, deficiencies that will need to be addressed by the Court. As to the manner and content of Google's tardy production, despite Google's misstatements, it was not produced in the ordinary course of business as required by the Federal Rules, and it is missing plainly relevant and responsive data fields. Google should be held in contempt and appropriate sanctions should be imposed against Google for its discovery misconduct.

## II. ARGUMENT

### A. Contempt Sanctions Against Google Are Warranted

Contempt sanctions against Google are appropriate because of Google's ongoing and willful failure to comply with the Court's orders for timely and complete production of verticals data for the class period. Google is subject to two Court orders (the Aug. 26 Order (Dkt. 314) and

the Dec. 16 Order (Dkt. 382)) directing production of verticals data, which requirement was further confirmed in a third order (Dkt. 420) denying Google's motion for "clarification" of the required scope of the verticals production. *See Harmon v. City of Santa Clara*, 323 F.R.D. 617, 626 (N.D. Cal. 2018) (citing *F.T.C. v. Affordable Media*, 179 F.3d 1228, 1239 (9th Cir. 1999) (To hold a party in contempt, a court must find by clear and convincing evidence that the party violated a specific and definite order and that it had sufficient notice of its terms and the fact that it would be sanctioned if it did not comply.)).

The Court's Aug. 26 Order directed Google "to produce documents sufficient to show, for each named plaintiff, what information specific to that plaintiff was shared with an RTB participant and the details of such sharing," and noted that, "[i]f Google discloses information that allows an RTB *participant* to identify and account holder based on information the *participant* may have about that account holder, Google must produce records showing the disclosure of that information as well." Dkt. 314 at 4–5 (emphasis in original). The Aug. 26 Order clearly encompassed the missing verticals data that is the subject of this sanctions motion—a fact that the Court confirmed in issuing its second, Dec. 16 Order concerning named plaintiff data. *See* Dkt. 382. There, the Court stated that "Google has failed to comply with the Court's August 26 order in one important respect" and ordered Google to produce "documents sufficient to show both the explicit sharing of verticals associated with the named plaintiffs and any implicit sharing that facilitates ad targeting." *Id*. at 4–5. That is, by January 31, 2023, "Google must produce documents sufficient to show for each named plaintiff the 'verticals' data fields it shared with RTB participants during the class period. In addition, Google must produce documents sufficient to show for each named plaintiff the information, if any, that it provided RTB participants that would permit those participants to infer information about the account holder based on verticals linked with the account holder." *Id*. at 5.

There was no ambiguity in the Court's two orders—a fact that the Court subsequently confirmed in denying Google's motion for clarification concerning the required scope of its verticals production in a third order issued on February 1, 2023. *See* Dkt. 420. Together, these orders put Google on notice that it could be sanctioned if it did not make a complete production.

*See Harmon*, 323 F.R.D. 617, 626 (N.D. Cal. 2018). Despite clear direction from the Court in multiple orders, Google did not produce verticals information until February 9, 2023—a production that was both inexcusably late and woefully incomplete. While Google's conduct was plainly willful and knowing, contempt sanctions would still be warranted even if the Google somehow acted in good faith under the circumstances here. *See In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d 693, 695 (9th Cir. 1993) ("The contempt need not be willful, and there is no good faith exception to the requirement of obedience to a court order." (internal quotation omitted)).

Contrary to Google's arguments, this is not an ordinary discovery dispute under the Court's joint letter brief process. The parties submitted disputes encompassing Google's failure to produce verticals data to the Court twice—and each time, the Court ordered Google to produce the verticals information now sought once again by plaintiffs. *See* Dkts. 314, 382. It is Google, not plaintiffs, that attempts an end run around this Court's orders by attempting to manufacture a "discovery dispute," when in fact Google has blatantly violated multiple Court orders by not producing information already ordered to be produced. This backdrop cannot be controverted, since this Court has already held that Google failed to comply with the Aug. 26 Order when it failed to produce verticals information for the named plaintiffs. *See* Dkt. 382 at 4–5.

In an effort to forestall this very motion from having to be filed, plaintiffs sent Google a letter concerning its failure to produce the majority of the fields that are now at issue in this motion on December 28, 2022 (not on January 13, 2023, as Google contends). Plaintiffs sent this letter over a month in advance of Google's court-ordered deadline for the production of verticals information, and sent a follow up letter on January 13, 2023, to make clear to Google the scope of the verticals information that is subject to the Court's Aug. 26 and Dec. 16 Orders. While the parties agreed to submit other disputes concerning bid requests, bid responses, and time sampling to the Court through the joint letter brief process (now pending as Dkts. 428-30, 433-34), there was nothing to further meet and confer about concerning Google's obligation to comply with the Court's Aug. 26 and Dec. 16 Orders to make a full verticals production; the Court had already ordered Google to produce "documents sufficient to show both the explicit sharing of verticals

associated with the named plaintiffs and any implicit sharing that facilitates ad targeting." Dkt. 382 at 5. To the extent that Google claims any genuine confusion about whether it was required "to produce any vertical information used 'to curate bid requests' that is not linked with an account holder and is instead linked or associated with only the website where an ad opportunity occurred," the Court has already definitively resolved the issue when it denied Google's motion for clarification. *See* Dkt. 408 at 2; Dkt. 420.

### B. Google's Verticals Production Is Facially Incomplete

Google's production of verticals information is facially incomplete. Google takes the illogical position that production of **just six weeks** of data for named plaintiffs, sampled from only one year of the class period (mid-2021 to mid-2022), fully complies with the Court's orders. But this position directly contravenes the express directives issued by the Court. Google was ordered to produce documents sufficient to show, for each named plaintiff, the "verticals" data fields **_shared with RTB participants during the class period_**, as well as documents sufficient to show any information that Google provided to RTB participants "that would permit those participants to infer information about the account holder based on verticals linked with the account holder." *Id*. at 5 (emphasis added). The Court has never held that Google's proposed sample of just six weeks at the tail end of the class period for named plaintiff data is adequate. Indeed, in December the Court noted that "[f]or data sources that do not require notice to ad customers, the Court is not persuaded that production of named plaintiff data **_for the entire class period_** would impose an undue burden." Dkt. 382 at 5 (emphasis added).

Moreover, it is self-evident that Google's production could not possibly be a sufficient sampling of verticals information: ***Google admits that its verticals production consists entirely of information that post-dates February 2020, when Google stopped including verticals in bid requests***. *See* Opp'n at 2. Therefore, Google's production does not adequately show the verticals data fields shared with RTB participants during the class period, because it dates entirely from a time period during which Google maintains that it had ceased sharing verticals with RTB participants. For the same reason, Google's production cannot possibly sufficiently show information sent by Google RTB participants that may have allowed them to infer information

about the account holder based on verticals information during the class period.

Incredibly, Google tries to present its now apparently admitted failure to preserve relevant verticals information for named plaintiffs in this litigation as a legitimate justification for its deficient production. *See* Opp'n at 10 ("the user_lists field was removed from bid requests in 2018, and Google no longer has information from this data field that it can produce for the named Plaintiffs"), *id.* at 11 ("the content_labels field was removed from bid requests in February 2020, and Google no longer has information that it can produce from this data field for the named Plaintiffs"), and *id.* at 11 ("the specific data field Plaintiffs identify (app_category_fatcat_ids) was deprecated from bid requests in February 2020, and Google no longer has information that it can produce from this data field for the named Plaintiffs").

The Court should reject this misguided effort by Google. It is now clear that Google resisted the production of verticals information for so long, despite plaintiffs' many requests and the Court's clear directives, because Google apparently already knew (despite opposite prior representations to plaintiffs and this Court[1]) that the data at issue had not been preserved and did not want to disclose its spoliation of relevant evidence to the Court or to plaintiffs. Google is notably silent about where it searched for verticals information, when it searched, and how that search was conducted. It is conspicuously silent about when the verticals information that did exist was destroyed. Plaintiffs have repeatedly asked Google for these details (all of which Google and its counsel were required to provide at the outset of discovery), but Google has steadfastly refused to provide any meaningful responses. Google's continued refusal to explain to plaintiffs and the Court the details about where information was searched for, when and how the search was conducted, and when the verticals data was destroyed, leaves the Court with only one option: to

---

[1] *See* Joint CMS and Rule 26(f) Report, Dkt. 68 (June 23, 2021), at 6 ("The Parties [jointly] represent that they have taken reasonable and proportionate steps to preserve evidence relevant to this litigation."). Google further stated on the record at a February 8, 2022, hearing that "*We have been preserving information from [the NP], from their accounts*." Tr. at 125:25–126:25. And in correspondence with plaintiffs, Google represented that it was "███████████████████████████████████" (Oct. 11, 2021), "███████████████████████████████████" (Oct. 13, 2021), and it was preserving ███████████████████████████████████. (Dec. 20, 2021, April 1, 2022).

1  hold Google in contempt and impose evidentiary and monetary sanctions for its misconduct.

2      Ignoring its own public documents, Google also argues that the data fields that are the
3  subject of this motion—user_lists, content_labels, and app_category_fatcat_ids—are not
4  "verticals," and thus do not fall within the scope of the Court's orders.[2] In making this argument,
5  Google offers the same faulty logic that Judge Chhabria recently rejected in *In re Facebook, Inc.*
6  *Consumer Priv. User Profile Litig.* There, Facebook argued that plaintiffs had to accept its
7  representations about the information Facebook had shared with third parties—even though the
8  precise information Facebook shared with other companies was a dispute at the heart of the case:

> The central allegation in this case is that Facebook shared the plaintiffs' private information with other companies. But ***Facebook insisted that: (1) it need not disclose to the plaintiffs what information it had collected about them unless it had shared that information with third parties; and (2) the plaintiffs were required to take at face value Facebook's assertions about what information it had shared. Merely reciting this argument shows how ridiculous it is***, but Facebook and Gibson Dunn repeated it over, and over, and over again—despite the presiding magistrate judge telling them many times that it made no sense.

2023 WL 1871107, at *1 (N.D. Cal. Feb. 9, 2023) (emphasis added). Here, Google similarly offers the absurd argument that plaintiffs are required to accept at face value what information is and is not a "vertical," or would allow RTB participants to infer information about the account holder based on verticals linked with the account holder.

    Plaintiffs emphatically reject Google's position that, because Google claims it does not internally define a particular field as a "vertical," it is not required to produce that field under the Court's orders. As alleged in the complaint, verticals consist of information derived from users' browsing history (*i.e.*, the specific, detailed URLs shared through RTB) used to facilitate targeted advertising by identifying a named plaintiff as falling within particular categories (*e.g.*, categories

---

[2] Google's public documents confirm that information contained in the content label and app category fields is functionally equivalent to Google's verticals fields. For example, content label no. 125 "Religious" is functionally similar to vertical no. 59 "Religion & Belief." *Compare* https://storage.googleapis.com/adx-rtb-dictionaries/content-labels.txt at Row 125 *and* https://developers.google.com/authorized-buyers/rtb/downloads/publisher-verticals at Row 59. Similarly, app category no. 60569 "Women's Interest" is functionally similar to vertical no. 325 "Women's Interests." *Compare* https://web.archive.org/web/20160430203134/https://developers .google. com/adwords/api/docs/appendix/mobileappcategories.csv at Row 120 *and* https://developers.google.com/authorized-buyers/rtb/downloads/publisher-verticals at Row 325.

based on medical issues, race, religion, ethnicity), *either directly or indirectly*. *See, e.g.*, Dkt. 1, ¶¶ 106–109; Dkt. 92, ¶¶ 141–144. Indeed, the Court's Dec. 16 Order is not limited to information that Google itself views as verticals information: the Court directed Google to produce documents showing both the explicit sharing of verticals associated with the named plaintiffs and any implicit sharing that facilitates ad targeting. *See* Dkt. 382 at 4–5; *see also* Dkt. 314 at 4:23–27 (directing the production of information sufficient to show what is shared through Google RTB).

Plaintiffs address the specific fields at issue in their motion in turn:

**user_lists.** Google says user_lists are not verticals because "Google does not itself generate and share user lists; RTB bid participants create these lists themselves based on their own information about certain users." Opp'n at 10. But Google employee and declarant Stan Belov admits that Google itself populates user lists if requested to do so by bid participants. *See* Belov Decl., ¶ 5. Plaintiffs understand that user_lists include signals that will show when a named plaintiff sent a previous communication on a specific topic or action, and user_lists are included as part of the "user profiles" that are shared through RTB bid requests and also are available to RTB participants for pretargeting (what Google calls "userListTargeting"). Mot. at 5. Because pretargeting is itself a form of targeting that allows RTB participants to structure ad campaigns targeting specific user lists (or verticals, content labels or app categories), this field falls squarely within information that Google "provided RTB participants that would permit those participants to infer information about the account holder based on verticals linked with the account holder."

**content_labels.** Google states that "the information in the content_labels field was associated with websites, not individual account holders." Opp'n at 11. The Court has already rejected Google's attempt to draw a distinction between "vertical information used 'to curate bid requests' that is not linked with an account holder and is instead linked or associated with only the website where an ad opportunity occurred" in denying Google's motion for clarification. *See* Dkt. 408 at 2; *see also* Dkt. 420. The distinction Google attempts to draw between verticals information linked with an account holder and verticals information linked with the website visited by the account holder where the ad opportunity occurred, is nonsensical: any information in the possession of Google reflecting websites visited by specific account holders constitutes data that

could allow RTB participants to infer information about those account holders, and thus falls within the scope of the Court's orders. For example, if Google shares information with RTB participants showing that an account holder visited and/or was shown an ad on a website concerning a particular sensitive health issue, that information could allow RTB participants to themselves categorize that account holder as falling within a particular health vertical—*whether or not Google itself has placed the account holder into such a vertical*. Without the account holder's action, there is no data to share.

Google maintains that "RTB participants can only use the content labels data to pre-filter the categories of websites for which they do ***not*** want to receive bid requests," Opp'n at 11, but content labels are in actuality categories assigned by Google based on the content of the publisher's page visited by the named plaintiff (and Google still uses content_labels for both pretargeting and bidding in RTB auctions). Mot. at 5.

**App_categories.** Google argues it should not be required to produce these categories because they "are used generally to categorize apps in the Google Play Store and in the Apple App Store." Opp'n at 11. But, app categories "are the app equivalent of verticals for URLs included in RTB bid requests," and are thus verticals linked with account holders. Mot. at 5. App categories are also used for pretargeting (what Google calls "mobileAppCategoryTargeting"). Plaintiffs should be afforded the opportunity to test their theory about the significance of app_categories.

The above fields fall within the Court's orders regarding verticals information. Each reflect information shared through RTB that directly or indirectly allows RTB participants to derive information regarding a named plaintiffs' browsing history and to target advertising based on that information. Plaintiffs should not be required to "take at face value [Google's] assertions about what information it . . . shared." *Facebook Consumer Priv.*, 2023 WL 1871107, at *1. Google will have every opportunity to attempt to refute plaintiffs' position that these fields relate to verticals.

**C.    Google Stripped Identifiers from Its Production**

Google asserts that it produced data "as it is stored in Google's ordinary course of business, with a unique ████ for every record." Opp'n at 12. But this representation is at best misleading, and at worst patently false. Google admits that its production includes data from the

1  ████████████████████████. When it produced this data to plaintiffs, Google excluded key
2  fields from the log production, including removal of the following fields: the Google Account ID,
3  the Google User ID, and any joining keys that linked the two, such as the Biscotti Joinability Key.
4  *See* Mot. at 5. But ████████████████████████████████████████████████████████
5  ████████████████████████████████████████████████████████████████████████████
6  ████████████████████████████████████████████████████████████████████████████
7  ██████  *See* Dkt. 366 at Ex. 1 at pp. 47–48 (████████████████████████████████);
8  Declaration of Lesley E. Weaver, Ex. 1 (excerpt of Dkt. 366 and explaining *Calhoun* information).

9       Even without the benefit of the *Calhoun* exemplars, Google has withheld key identifiers
10 from its production. Google could not have matched ████████ for the verticals data produced
11 to particular named plaintiffs without at least some of the above identifiers. Whether the verticals
12 data can now be correlated back to each named plaintiff using the ████████ provided by Google
13 is beside the point. Plaintiffs are entitled to a production that reflects any identifier fields that could
14 allow Google and/or RTB participants to associate account holders with particular verticals—as
15 occurs in the ordinary course of Google's business. *See Zysman v. Zanett Inc.*, No. C-13-02813
16 YGR (DMR), 2014 WL 1320805, at *2 (N.D. Cal. Mar. 31, 2014) ("A party who chooses to
17 produce documents as they are ordinarily maintained must do just that—produce the documents
18 organized as they are maintained in the ordinary course of producing party's business, with at least
19 some modicum of information regarding how they are ordinarily kept in order to allow the
20 requesting party to make meaningful use of the documents." (internal citation omitted)).

21      Google should have produced Google Account ID, the Google User ID, derivations of
22 them, and any joining keys that linked the two with the verticals and/or named plaintiff data that
23 it has produced, but did not. This is sanctionable and warrants a contempt order against Google.

24      **D.**    **Evidentiary and Monetary Sanctions Against Google Are Warranted**

25      Google's opposition alludes to the fact that its failure to comply with two Court orders is
26 based on a failure to properly preserve relevant evidence. If this is true, then far from being a
27 justification for non-compliance, the failure to preserve is an additional basis for sanctions. If
28 Google has failed to preserve named plaintiff data, then the Court should impose evidentiary

1  sanctions on Google, in addition to holding Google in contempt. Google argues that plaintiffs have
2  not explained how its misconduct has "affected their ability to obtain additional discovery or make
3  arguments in [their] motions." Opp'n at 13. Nothing could be further from the truth.

4  Plaintiffs have repeatedly emphasized the importance and the urgency of obtaining
5  discovery sufficient to show data shared through RTB (including but not limited to verticals
6  information) to prove up their case, and have made clear their interest in obtaining verticals data
7  from the outset of this action. Now, two months before plaintiffs' class certification motion is due,
8  Google has finally (but reluctantly and only in response to a Court order) admitted that it did not
9  preserve sufficient verticals information for named plaintiffs.[3] Evidentiary sanctions are warranted
10 under these circumstances. *See In Guifu Li v. A Perfect Day Franchise, Inc.*, 2011 WL 3895118,
11 at *3 (N.D. Cal. Aug. 29, 2011) (imposing evidentiary sanctions to remedy prejudice of
12 "information withheld from Plaintiffs [that] could very well bear on whether or not Plaintiffs are
13 able to establish commonality of issues across the putative class"); *Clear-View Tech., Inc., v.
14 Rasnick*, 2015 WL 2251005 at *7–8 (evidentiary and monetary sanctions warranted given
15 defendants' protracted and needless delays that frustrated discovery process).

16 Monetary sanctions also should be imposed if the Court concludes that Google has engaged
17 in contempt and sanctionable discovery abuse. *See* Fed. R. Civ. P. 37(b)(2)(C). Plaintiffs will
18 provide support for monetary sanctions if the Court concludes that Google has engaged in
19 contempt and sanctionable discovery abuse.

20 **III.   CONCLUSION**

21 Plaintiffs respectfully ask the Court to hold Google in contempt for its failure to comply
22 with the Court's orders concerning verticals and information that could be associated with
23 verticals, and to impose additional evidentiary sanctions and monetary sanctions for Google's
24 failure to preserve the named plaintiff data at issue. Google also should be ordered to immediately
25 produce the verticals information as maintained in the ordinary course of business, with all
26 identifiers included.

---

[3] Google's duty to preserve information began when plaintiffs filed their action—if not before. *See In re Napster, Inc. Copyright Litig.*, 462 F. Supp. 2d 1060, 1067–68 (N.D. Cal. 2006) (duty to preserve runs from date party should have known evidence might be relevant to future litigation).

DATED: March 21, 2023

Respectfully submitted,

**PRITZKER LEVINE LLP**

By: */s/ Jonathan K. Levine*

Elizabeth C. Pritzker (Cal. Bar No. 146267)
Jonathan K. Levine (Cal. Bar No. 220289)
Bethany Caracuzzo (Cal. Bar No. 190687)
Caroline Corbitt (Cal Bar No. 305492)
1900 Powell Street, Ste. 450
Oakland, CA 94602
Tel.: (415) 692-0772
Fax: (415) 366-6110
ecp@pritzkerlevine.com
jkl@pritzkerlevine.com
bc@pritzkerlevine.com
ccc@pritzkerlevine.com

*Interim Class Counsel*

**BLEICHMAR FONTI & AULD LLP**
Lesley E. Weaver (Cal. Bar No. 191305)
Anne K. Davis (Cal. Bar No. 267909)
Joshua D. Samra (Cal. Bar No. 313050)
555 12th Street, Suite 1600
Oakland, CA 94607
Tel.: (415) 445-4003
Fax: (415) 445-4020
lweaver@bfalaw.com
adavis@bfalaw.com
jsamra@bfalaw.com

**SIMMONS HANLY CONROY LLC**
Jason 'Jay' Barnes (admitted *pro hac vice*)
An Truong (admitted *pro hac vice*)
Jenny Paulson (admitted *pro hac vice*)
112 Madison Avenue, 7th Floor
New York, NY 10016
Tel.: (212) 784-6400
Fax: (212) 213-5949
jaybarnes@simmonsfirm.com
atruong@simmonsfirm.com
jpaulson@simmonsfirm.com

**DICELLO LEVITT GUTZLER LLC**
David A. Straite (admitted *pro hac vice*)
485 Lexington Avenue, Suite 1001
Tel.: (212) 784-6400

|   |   |
|---|---|
| 1 | Fax: (212) 213-5949 |
| 2 | New York, NY 10017<br>Tel: (646) 993-1000 |
| 3 | dstraite@dicellolevitt.com |
| 4 | James Ulwick (admitted pro hac vice) |
| 5 | Ten North Dearborn Street, Sixth Floor<br>Chicago, IL 60602 |
| 6 | Tel.: (312) 214-7900<br>julwick@dicellolevitt.com |
| 7 |   |
| 8 | **COTCHETT PITRE &**<br>**MCCARTHY, LLP** |
| 9 | Nanci E. Nishimura (Cal. Bar No. 152621)<br>Brian Danitz (Cal Bar. No. 247403) |
| 10 | Karin B. Swope (admitted *pro hac vice*)<br>840 Malcolm Road |
| 11 | Burlingame, CA 94010<br>Tel.: (650) 697-6000 |
| 12 | nnishimura@cpmlegal.com |
| 13 | bdanitz@cpmlegal.com<br>kswope@cpmlegal.com |
| 14 | **BOTTINI & BOTTINI INC.** |
| 15 | Francis A. Bottini, Jr. (Cal. Bar No. 175783) |
| 16 | Yury A. Kolesnikov (Cal. Bar. No. 271173)<br>7817 Ivanhoe Ave., Ste. 102 |
| 17 | LA Jolla, CA 92037<br>Tel.: (848) 914-2001 |
| 18 | fbottini@bottinilaw.com<br>ykolesnikov@bottinilaw.com |
| 19 |   |
| 20 | *Counsel for Plaintiffs and the Proposed Class* |

**ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1(h)(3)**

I, Lesley E. Weaver, attest that concurrence in the filing of this document has been obtained from the signatory. I declare under penalty of perjury that the foregoing is true and correct.

Executed this 21st day of March, 2023, at Oakland, California.

*/s/ Lesley E. Weaver*
Lesley E. Weaver
