**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

March 27, 2023

**Via ECF**

Magistrate Virginia K. DeMarchi
Courtroom 2 – 5th Floor
San Jose Courthouse
280 South 1st Street
San Jose, CA 95113

Re:   *In re Google RTB Consumer Privacy Litig.*, **No. 4:21-cv-02155-YGR-VKD (N.D. Cal.)**
Joint Discovery Letter Brief – Production of Hyperlinked Documents

Dear Magistrate Judge DeMarchi:

Plaintiffs and Defendant Google LLC ("Google") (together, the "Parties") submit this joint letter brief regarding production of certain hyperlinked documents. The Parties conferred on Tuesday, March 14, 2023, and have reached impasse on the issue, as discussed below.

I.   **PLAINTIFFS' POSITION**

Following depositions of Glenn Berntson, Stan Belov, and Haskell Garon about the use and accessibility of hyperlinked documents in parent documents they authored or received, plaintiffs identified 338 specific hyperlinks from 51 parent documents.[1] Berntson Tr. at 82:2-20, 83:3-84:3, 277:9-278:12; Belov Tr. at 44:20-45:16, 46:25-47:14, 158:15-20, 291:9-292:18; Garon Tr. at 36:4-37:19, 43:10-18, 111:7-15, 113:3-21. The 51 parent documents represent just 0.09 percent of Google's entire production of 55,886 documents. Plaintiffs asked Google to identify any produced or withheld hyperlinks and produce those not yet produced. After a month, Google responded that it would produce only 15 of the hyperlinked documents (later increased to 20) and refused to identify any produced or withheld hyperlinked documents. Because relevancy and responsiveness are clear, and the production burden is virtually non-existent given the numbers at issue, the Court should compel identification by Bates Number of any previously produced or withheld (for privilege) hyperlinked documents and prompt production of any still at-issue hyperlinked documents.

**Google Employees Commonly Use Hyperlinks to Provide Additional Detail or Context**

Google employees use the Google suite of document and communications programs (among other Google systems and programs), including Google Docs, Sheets, Slides, and Gmail, which allow for real-time collaboration and sharing via hyperlinks to documents retained on Google's central repositories—a source of documents which Google should have already searched. Day-to-day, Google employees commonly share documents by hyperlinking rather than attaching documents to email communications or reproducing relevant information within a document. *See*

---

[1] Of the 51 documents, 44 are exhibits to the Berntson, Belov, and Garon depositions, while seven come from their custodial files. As Google refused to jointly submit the list of at-issue hyperlinks, Plaintiffs concurrently seek leave to submit the list.

March 27, 2023
Page 2

Garon Tr. at 37:12-13 ("I frequently hyperlink documents as part of my work at Google, yes."). A hyperlink *may* show the filename or location of the document, or be embedded in other text such that the filename is obscured. Because of this routine practice, documents and emails often contain numerous hyperlinks to other Google documents and systems, which can only be accessed through the hyperlink. The hyperlinked documents are often necessary to the interpretation of the parent document, providing additional detail or context on the subject of the document or email. Without active links or metadata reflecting the connection between the linked documents and documents through which the link was shared, plaintiffs cannot fully evaluate the contents of the parent document, or the linked-to documents.

Further, without appropriate metadata or Google's identification by Bates Number, plaintiffs don't know whether a linked-to document is missing, withheld, or produced. Google refuses to provide this information, although it might narrow the dispute.[2]

**The At-Issue Hyperlinked Documents Are Highly Relevant**

It is clear that the at-issue hyperlinks lead to documents that are highly relevant, responsive to discovery requests, and should have been produced in their own right. They are embedded in highly relevant documents, from key deponents, each of whom testified regarding the ready accessibility of hyperlinked documents (one simply has to click on the linked-to document). Berntson Tr. at 82:2-20; Belov Tr. at 44:20-45:16, 46:25-47:14, 291:9-292:18; Garon Tr. at 36:4-37:19, 43:10-18. Plaintiffs don't request all hyperlinks in all documents or all hyperlinks in all deposition exhibits. Rather, plaintiffs request a subset of some hyperlinks in 51 documents from custodial files of three key deponents. Plaintiffs carefully reviewed each hyperlink and selected only those that, based on the link and/or the context provided by the parent documents, appear most relevant. A few illustrative examples:

**GOOG-HEWT-001338866:** Plaintiffs identified certain hyperlinks within Belov document "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮" as highly relevant, readily retrievable documents that Google should have produced. Ex. 39, Belov Dep. These are described as "Key Documents" for the working group, such as:



- ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, *id.* at 886;
- ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, *id.*;
- ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, *id.*;
- ▮▮▮▮▮▮▮▮▮▮▮, *id.*;
- ▮▮▮▮▮▮▮▮▮▮▮▮▮▮, *id.*;
- ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, *id.* at 891.

---

[2] On the eve of filing, approximately seven weeks after Plaintiffs' request, Google offered to identify produced and withheld hyperlinks, but did not agree to produce documents. As this late offer doesn't resolve the dispute, Plaintiffs seek relief from the Court.

March 27, 2023
Page 3

Belov testified that to find a hyperlinked document today, he would "perhaps click on that link in that document bringing this document, or enter this shortcut link into a browser address bar in a Google device." Belov Tr. at 45:12-16.

**GOOG-HEWT-00259486:** This example comes from Berntson's files. *See* Ex. 15, Berntson Dep. Plaintiffs asked Google to produce (or confirm production) of the document hyperlinked ▮▮▮▮▮▮▮▮▮▮ described in the document as reflecting "ballpark estimates on how much RTB $ revenue this ['opening up NPA inventory'] would bring …" *Id.* The document goes on to discuss experiments with "dropping identifiers from the callout" that reflect a "▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮," with another requested hyperlink that appears to link to those experiments: ▮▮▮▮▮▮▮▮▮▮. *Id.* at 487.

As to hyperlinked documents, plaintiffs asked Berntson whether he "could follow the link and produce those documents if asked to do so?" Berntson responded, simply, "Yes." Berntson Tr. at 82:5-20.

**GOOG-HEWT-00309437:** From Garon's files, plaintiffs identified hyperlinks in a September 12, 2019 email thread with the subject "Re: Per field Privacy audit." Garon says "▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮." The underlined portions reflect the hyperlinked documents. *See* Ex. 7, Garon Tr. at 437. This example illustrates the difficulty that arises when a hyperlink is embedded within banal text such as "here." Only Google can verify whether such hyperlinks have been produced, but it has refused to do so.

When asked how he would retrieve the hyperlinked document today, Garon said "I think that if I had this document and if that underline leads to a link, I would try to click on the link." Garon Tr. at 43:10-18.

Google's exemplars (▮▮▮▮▮▮▮▮▮▮) and the attendant parent documents *support plaintiffs*, not Google. The ▮▮▮ and ▮▮▮ hyperlinks (Berntson Ex. 4, GOOG-HEWT-00129747), appear in ▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮." ▮▮▮ relates to "▮▮▮▮▮▮." ▮▮▮ leads to a "▮▮▮▮," a "▮▮▮▮." ▮▮▮ from Belov Ex. 20 (GOOG-HEWT-00129431), which is ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮" And ▮▮▮ is one of the hyperlinked "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ From the context of the documents, it is clear the hyperlinks pertain to highly relevant topics such as ▮▮▮▮▮▮▮▮▮▮.



**Plaintiffs' Request is Reasonable and Proportionate**

Plaintiffs have again asked for a targeted production of a limited number of highly relevant documents associated with RTB custodians that should have been identified in the course of a proper search for documents and data and long-ago produced. Again, Google has refused plaintiffs' reasonable and targeted request, and plaintiffs have been forced to seek the Court's intervention.

Plaintiffs' request is consistent with this Court's November 2021 order that plaintiffs make reasonable, proportionate requests, and in line with how other courts address hyperlink production, including as to Google. In *United States of America v. Google LLC*, Judge Mehta recently ordered Google to produce 200 additional linked-to documents. It is notable that in that action, unlike here, Google had already agreed to search for linked documents and provide metadata permitting the government to connect such documents to their linked parents. *See id.*, No. 1:20-cv-03010-APM (D.D.C.), Dkt. 361 at 8-9 (6/16/2022 Joint Status Report, describing process to produce hyperlinked documents). In *Shenwick v. Twitter, Inc.*, 2018 WL 5735176, at *1 (N.D. Cal. Sept. 17, 2018), the Court ordered production of up to 200 hyperlinks of plaintiffs' choosing, noting that "Plaintiffs have a right to determine if an electronic message refers to a document, then Plaintiffs should be able to access that document." Likewise, the Central District recently ordered that "[d]ocuments referenced in hyperlinks from all productions – existing and future – must be produced together with the source document containing the hyperlinks so that the association between parent document and hyperlinked document is maintained." *Stitch Editing LTD. v. TikTok, Inc.*, 2022 WL 17363054 (C.D. Cal. Aug. 31, 2022).

Given the clear relevance and low burden of producing the at-issue hyperlinked documents—as Berntson, Belov, and Garon explained—Google should be ordered to identify previously produced or withheld (for privilege) hyperlinked documents and promptly produce any still at-issue hyperlinked documents.

## II. GOOGLE'S POSITION[3]

The Court should deny Plaintiffs' demand that Google produce underlying materials from 338 hyperlinks from Google's produced documents because the demand is unsupported, overbroad, and unreasonable. In a good faith effort at compromise, Google has offered to (1) investigate each of these links and identify any linked documents that were previously produced or logged on Google's privilege log, and (2) to meet and confer as needed to resolve any remaining dispute after Google completes this process. Plaintiffs rejected this proposal and continue to demand all materials available at all 338 hyperlinks.[4] Google's proposal is a reasonable

---

[3] Plaintiffs have submitted an Exhibit Google believes is not permitted under the Court's standing order. Google proposed that the Parties jointly ask the Court if it wants to review a list of the disputed hyperlinks, but Plaintiffs refused to make this joint inquiry and proceeded unilaterally to submit the Exhibit.

[4] Google also previously offered to collect and review the materials from 20 hyperlinks on Plaintiffs' list (of their choosing) and to produce any relevant and non-privileged documents, if available. Plaintiffs also did not agree to this compromise.

March 27, 2023
Page 5

compromise and Plaintiffs' demands are premature and should be rejected.

    **A.**    <u>**Plaintiffs' Demand is an Unreasonable Request That Violates the Court's November 2021 Order.**</u>

Nearly 17 months ago, this Court rejected Plaintiffs' requests for sweeping production of hyperlinks and metadata for hyperlinks in documents produced by Google. In the Parties' October 19, 2021 discovery letter brief, Plaintiffs demanded that Google produce all metadata related to hyperlinked materials in Google's document production or, in the alternative "provide hyperlinked documents which Plaintiffs reasonably request." (Dkt. No. 95.) On November 2, 2021, the Court heard the Parties' proposals regarding production of hyperlinks and explained that "it can't be everything because it really is going to be this huge volume." (Nov. 2, 2021 Hr'g Tr. at 68:10-15.) Instead, the Court allowed Plaintiffs to make only limited requests for hyperlinks as follows: "The parties should consider *reasonable* requests for production of hyperlinked documents on a *case-by-case basis*. Such requests should not be made as a matter of routine." (Dkt. No. 116 ("November 2021 Order") at 5:11–12 (emphasis added).) Plaintiffs did not appeal the Court's Order, which now has been in place for well over a year.

Plaintiffs have not met their burden to show that their present demand relating to 338 hyperlinks is a "reasonable request" consistent with the settled limitations in the November 2021 Order. *See Williams v. Condensed Curriculum Int'l*, 2021 WL 5069946, at *4 (N.D. Cal. Nov. 2, 2021) (placing burden on requesting party to show relevance of requested documents and rejecting request because the plaintiff did not meet its burden in its portion of a joint letter brief); *see Nichols v. Noom Inc.*, 2021 WL 948646, at *4 (S.D.N.Y. Mar. 11, 2021) (denying production of all 700 requested hyperlinks because it was "entirely speculative how many underlying hyperlinked documents are relevant and material to this case.").

First, Plaintiffs make the conclusory claim that they need all of the requested hyperlinks in order to understand the documents in which they appear. But Plaintiffs concede that the majority of the documents in which the hyperlinks appear were already introduced as deposition exhibits. Plaintiffs had no difficulty asking Google witnesses about these documents and the subjects referenced therein, even without access to the hyperlinks. (*See e.g.*, Belov Tr. 42:6-53:10) (examination and testimony regarding GOOG-HEWT-00184524 containing certain of the requested hyperlinks); Berntson Tr. 273:22-83:10 (same regarding GOOG-HEWT-00259486); Garon Tr. 51:11-52:22 (same regarding GOOG-HEWT-00147390).) These examinations undermine Plaintiffs' claim that the requested hyperlinks are needed to understand, and examine witnesses about, the documents in which the hyperlinks appear. Moreover, Plaintiffs' rationale for demanding hyperlinks is untenable under the Court's Order because it would lead to continual requests for production of hyperlinks with no clear end point. If it were enough for Plaintiffs to simply assert that a document with hyperlinks cannot be fully understood without access to all the materials hyperlinked therein, nothing would stop Plaintiffs from demanding successive rounds of production for each set of documents produced with hyperlinks. This is inconsistent with the November 2021 Order in which the Court refused to require blanket production of all hyperlinks and limited Plaintiffs to "reasonable requests" made on a "case by case" basis. (November 2021 Order at 5:11–12; Nov. 2, 2021 Hr'g Tr. at 68:10-15.)

      Second, Plaintiffs speculate that the hyperlinked materials must be relevant because the 338 hyperlinks appear in documents from "key custodians." But that fact actually reinforces the overbreadth of Plaintiffs' demands. If the hyperlinked materials were within the files of the 23 agreed custodians in this case and hit on the agreed and court-approved search terms, they would likely have already been reviewed by Google for potential production. As noted above, Google has offered to investigate each of the requested hyperlinks and identify the linked documents that were already reviewed and either produced to Plaintiffs or logged on Google's privilege log. This is a reasonable compromise that will allow Plaintiffs to assess whether any dispute remains. For any remaining linked documents, the fact that they were *not* encompassed in the production or logging process suggests they are unlikely to be relevant and underscores why Plaintiffs' current demand for *all* 338 requested hyperlinks is overbroad and improper.

      Third and relatedly, Plaintiffs point to a small handful of examples of hyperlinks that they say appear to be relevant from the context in which they appear in a document, but these isolated examples do not meet Plaintiffs' burden. Notably, at least 200 of the hyperlinks that Plaintiffs request have link descriptions that do not reference RTB or Authorized Buyers at all, calling into question Plaintiffs' blanket claims of relevance. Moreover, Plaintiffs are well aware from depositions that some of the requested hyperlinks will not yield the information they seek, but they continue to demand them nonetheless. (*See, e.g.,* Garon Tr. 113:3-21 (explaining that certain links in GOOG-HEWT-00075127 do not lead to documents but rather internal tools to track "bugs, tickets or requests to track work"); Berntson Tr. 277:9-278:5 (confirming that the hyperlink cited in GOOG-HEWT-00259486 leads to an internal tool for viewing only the status of an experiment and no other information); 83:3-84:3 (confirming that hyperlinks in GOOG-HEWT-00129747 may not be accessible if the underlying document no longer exists).)[5] Plaintiffs' inclusion of these hyperlinks in this dispute underscores the overbreadth of their demands. *See Noom*, 2021 WL 948646, at *4 ("[p]arties should not demand forms of production . . . for which they have no practical use or that do not materially aid in the discovery process.")

      Lastly, Plaintiffs' complaints about the lack of metadata for the hyperlinks merely rehash an issue the Court already considered and rejected in its November 2021 Order. The Court need not entertain Plaintiffs' attempt to relitigate prior disputes.

      **B.**      **Google's Compromise is Reasonable and Consistent with this District's Rulings.**

      Despite Plaintiffs' failure to meet their burden of proof, Google has offered a good faith compromise that reasonably accommodates Plaintiffs' purported needs. As noted, Google has agreed to investigate each of the requested hyperlinks and to identify any linked documents that were already produced (by Bates number) or determined to be privileged (by privilege log entry number). Upon completion of that process, the Parties can then confer further to determine the

---

[5] In other instances, Plaintiffs asked in the depositions only passing questions about the requested hyperlinks, undermining their claims of relevance. (Garon Tr. 77:12-78:10 (asking only whether witness recognized hyperlinks in GOOG-HEWT-00309437); Belov Tr. 280:5-284:20 (asking only whether hyperlinks in GOOG-HEWT-001338866 had been produced).)

March 27, 2023
Page 7

extent of any remaining dispute.[6]

Plaintiffs' refusal of this compromise and their insistence that Google produce all materials available at the 338 requested hyperlinks is not only out of step with the November 2021 Order but also with guidance from multiple courts that have considered similar requests for production of hyperlinks. In the *Calhoun* case, for example, Judge Van Keulen rejected a mass production of all hyperlinks requested by Plaintiffs and ordered production of only 40 of the 900 requested hyperlinks. *Calhoun v. Google*, No. 20-cv-05146, ECF Nos. 206 (N.D. Cal. May 26, 2021), 220-1 (N.D. Cal. Jun. 8, 2021). Judge Van Keulen is not alone. Recent decisions, also cited by Plaintiffs, make clear that blanket requests for hyperlinks are disfavored. *Schenwick v. Twitter, Inc.*, 2018 WL 5735176, at *1 (N.D. Cal. Sept. 17, 2018) (rejecting demand for all hyperlinks requested); *U.S., et al., v. Google LLC*, No. 1:20-cv-03010-APM, Minute Order (June 17, 2022) (same). Google's proposal is consistent with this prevailing approach and provides a reasonable compromise as to the at-issue hyperlinks. Plaintiffs' demands for more should be rejected for all the reasons discussed above.

### III.   NECESSITY OF A HEARING

#### A.   Plaintiffs' Position

Plaintiffs request a hearing on these critical disputes.

#### B.   Google's Position

Google does not believe a hearing on this matter is necessary because the Court's Order is unambiguous and the Court may resolve this dispute on the arguments above.

### IV.   DISCOVERY CUT-OFFS

The Parties' deadline to substantially complete their production of documents in advance of class certification passed on July 11, 2022. The fact discovery cut-off is November 10, 2023, the close of expert discovery is February 9, 2024, and plaintiffs' motion for class certification is due May 23, 2023. *See* Dkt. 391.

### V.   COMPLIANCE WITH MEET AND CONFER REQUIREMENT

In compliance with the Court's meet and confer requirements, the parties met and conferred several times via Zoom. The final lead counsel meet and confer was held on March 14, 2023, via Zoom. On Plaintiffs' side, Jonathan Levine, Anne Davis, An Truong, Caroline Corbitt, and Jenny Paulson attended. On Google's side, Whitty Somvichian and Robby L.R. Saldaña attended.

---

[6] To be clear, Google reserves all rights to object to any future demand for hyperlinks that Plaintiffs might make, and believes it was improper under the November 2021 Order for Plaintiffs to insist that Google determine whether linked documents were previously reviewed and produced, without first making a "case by case" showing of potential relevance.

| | |
|---|---|
| Dated: March 27, 2023 | **PRITZKER LEVINE LLP**<br><br>By: */s/ Elizabeth C. Pritzker*<br>Elizabeth C. Pritzker (SBN 146267)<br>Jonathan K. Levine (SBN 220289)<br>Bethany Caracuzzo (SBN 190687)<br>Caroline Corbitt (SBN 305492)<br>1900 Powell Street, Suite 450<br>Emeryville, CA 94608<br>Tel.: (415) 692-0772<br>Fax: (415) 366-6110<br>ecp@pritzkerlevine.com<br>jkl@pritzkerlevine.com<br>bc@pritzkerlevine.com<br>ccc@pritzkerlevine.com<br><br>*Interim Class Counsel* |
| Dated: March 27, 2023 | **BLEICHMAR FONTI & AULD LLP**<br><br>By: */s/ Anne K. Davis*<br>Lesley E. Weaver (SBN 191305)<br>Anne K. Davis (SBN 267909)<br>Joshua D. Samra (SBN 313050)<br>555 12th Street, Suite 1600<br>Oakland, CA 94607<br>Tel.: (415) 445-4003<br>Fax: (415) 445-4020<br>lweaver@bfalaw.com<br>adavis@bfalaw.com<br>jsamra@bfalaw.com<br><br>**SIMMONS HANLY CONROY LLC**<br>Jason 'Jay' Barnes (admitted *pro hac vice*)<br>An Truong (admitted *pro hac vice*)<br>Jennifer Paulson (admitted *pro hac vice*)<br>112 Madison Avenue, 7th Floor<br>New York, NY 10016<br>Tel.: (212) 784-6400<br>Fax: (212) 213-5949<br>jaybarnes@simmonsfirm.com<br>atruong@simmonsfirm.com<br>jpaulson@simmonsfirm.com<br><br>**DiCELLO LEVITT LLC**<br>David A. Straite (admitted *pro hac vice*) |

485 Lexington Avenue, Suite 1001
New York, NY 10017
Tel.: (646) 933-1000
dstraite@dicellolevitt.com

James Ulwick (admitted *pro hac vice*)
Ten North Dearborn Street, Sixth Floor
Chicago, IL 60602
Tel.: (312) 214-7900
julwick@dicellolevitt.com

**COTCHETT, PITRE & McCARTHY LLP**
Nanci E. Nishimura (SBN 152621)
Brian Danitz (SBN 247403)
Karin B. Swope (admitted *pro hac vice*)
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Tel.: (650) 697-6000
Fax: (650) 697-0577
nnishimura@cpmlegal.com
bdanitz@cpmlegal.com
kswope@cpmlegal.com

**BOTTINI & BOTTINI, INC.**
Francis A. Bottini, Jr. (SBN 175783)
Yury A. Kolesnikov (SBN 271173)
7817 Ivanhoe Avenue, Suite 102
La Jolla, CA 92037
Tel.: (858) 914-2001
Fax: (858) 914-2002
fbottini@bottinilaw.com
ykolesnikov@bottinilaw.com

*Counsel for Plaintiffs and the Proposed Class*

Dated: March 27, 2023

**COOLEY LLP**

*/s/ Whitty Somvichian*
Michael G. Rhodes
Whitty Somvichian
Kelsey R. Spector
Reece Trevor
Anupam S. Dhillon
3 Embarcadero Center, 20th floor
San Francisco, CA 94111-4004

March 27, 2023
Page 10

        Tel.: 415-693-2000
        Fax: 415-693-2222
        rhodesmg@cooley.com
        wsomvichian@cooley.com
        kspector@cooley.com
        rtrevor@cooley.com
        adhillon @cooley.com

        Robby L.R. Saldaña
        Khary J. Anderson
        1299 Pennsylvania Avenue NW, Suite 700
        Washington, DC 20004-2400
        Tel.: 202-776-2109
        Fax: 202-842-7899
        rsaldana@cooley.com
        kjanderson@cooley.com

        Attorneys for Defendant
        GOOGLE LLC

## ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1(h)(3)

I, Anne K. Davis, attest that concurrence in the filing of this document has been obtained from the other signatories. I declare under penalty of perjury that the foregoing is true and correct.

Executed this 27th of March, 2023, at Pacifica, California.

*/s/ Anne K. Davis*
Anne K. Davis