April 3, 2023

<u>Via ECF</u>

**Magistrate Judge Virginia K. DeMarchi**
San Jose Courthouse
Courtroom 2 – 5th Floor
280 South 1st Street
San Jose, CA 95113

Re:   *In re Google RTB Consumer Privacy Litig.*, **No. 4:21-cv-02155-YGR-VKD (N.D. Cal.)**
      Joint Letter Brief re: Production of Dashboards and Source Code Changes

Dear Magistrate Judge DeMarchi:

Plaintiffs and Defendant Google LLC ("Google") submit this joint letter brief regarding plaintiffs' request that Google produce (i) information about and exemplars of certain "dashboards" used by several Google employees in connection with their RTB-related work, and (ii) information about Google's source code search tool and a summary version of all source code changes during the relevant time period pertaining to RTB bid request and bid response fields. The parties conferred on March 14, 2023, and have reached impasse on the issues, as discussed below.

**I.   PLAINTIFFS' POSITION**

   **A.   Google Must Produce Information About and Exemplars of Certain RTB-Related Dashboards**

Google employees Glenn Berntson, Stan Belov, and Haskell Garon all testified about various dashboards they created or used at Google on a regular basis in connection with their RTB-related work. Berntson Tr. at 91, 137, 206, 212, 253, 263-65, 268, 278; Belov Tr. at 20, 27-28, 56, 70, 76, 114-116, 140, 143, 242, 244; Garon Tr. at 145-146.[1] As evidenced by this testimony, dashboards are tools created by Google employees and used regularly within Google, in real time, to locate, track, gather, and present information on a given subject in an easy-to-access and easy-to-read manner. For example, Berntson testified that the ▮▮▮▮ dashboard tracks ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ for RTB for the United States. Berntson Tr. at 263-265. This testimony is supported by numerous Google documents discussing the creation, use, and importance of the dashboards in Google's day-to-day RTB business. *See, e.g.*, GOOG-HEWT-00012745 at p. 57 ("▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮."); GOOG-HEWT-00301269 ("▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮."); GOOG-HEWT-00246928, p. 10 (referring to the ▮▮▮▮ dashboard–

---

[1] Plaintiffs will provide the deposition transcripts upon request.

*In re Google RTB Consumer Privacy Litig.*
April 3, 2023

"███████████████████ [AdManager[2]] ███████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████.").[3] Google has not produced the output from these dashboards.

Following the depositions, on February 3, 2023, plaintiffs identified █ dashboards relevant to the case based on how they were described by the deponents and in certain Google documents. In an effort to reach agreement on a targeted production of RTB-related information from these dashboards, plaintiffs proposed an incremental process, asking Google to produce limited documents explaining each dashboard (if such exist) and screenshots for each so that plaintiffs could evaluate whether to seek a further substantive production of RTB information for any particular dashboard. In addition to the revenue-focused ██████ and ██████ dashboards, the other requested dashboards address: Google's monitoring of ████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
██████. Each of these dashboards contain relevant and discoverable information that has not been adequately covered by Google's production to-date, and it does not appear that Google searched these sources for production. Google refuses to produce *anything* from these dashboards, ignoring that **Google employees testified** that these dashboards contain RTB-specific information and are easily searchable with a tool.

These █ dashboards are the most efficient and easily accessed sources of relevant ESI containing key aspects of Google's internal monitoring of RTB and use of RTB by third parties.[4] Google's categorical refusal to provide ***any*** information about them is based on its ongoing insistence that discovery is limited only to information disclosed to third parties, and in reliance on orders issued prior to depositions and the court's knowledge of the testimony and documents that highlighted the dashboards' relevance and importance. This is unreasonable and contrary to Google's discovery obligations under Fed. R. Civ. P. 26 and 30, the Northern District ESI

---

[2] AdManager is a platform that allows large publishers to manage, in a centralized place, their sales through ad exchanges including RTB.

[3] The ██████ dashboard, ████████████████████████████████

██████████████████████████████████ GOOG-HEWT-00023894. ██████
██████████████████████████████████████████████████████." GOOG-HEWT-0003900.

[4] These dashboards and the source code changes are responsive to the subsections of RFP 22(q)(ii)-(iv) to which Google agreed to produce responsive documents. ECF Nos. 184, 352; *see also* ECF No. 326 (re. RFPs 99, 100). Contrary to Google's assertion, below, plaintiffs' targeted, noncumulative request for information about these highly relevant data sources has ***not*** been the subject of prior motions or discovery orders.

*In re Google RTB Consumer Privacy Litig.*
April 3, 2023

Guidelines, the Northern District ESI Checklist for 26(f) Conference, and the Stipulated Protective Order in this case (ECF No. 125). It is, unfortunately, consistent with how Google has treated its disclosure and discovery obligations since the outset, as evidenced by its paltry production to-date. From the inception of discovery, and in violation of these rules, guidelines, and orders, Google has consistently refused to disclose or discuss anything about the location and likely sources of relevant ESI, including as here, a limited set of dashboards used Google witnesses testified are regularly used to run and operate its RTB business.[5]

Google should be compelled to produce documents sufficient to describe each dashboard and screenshots of each dashboard to identify all fields available in each. This would likely be, at most, a production of approximately 50 documents. The parties can then discuss from which of these dashboards what RTB-information should be produced and in what form. Because depositions of Google witnesses are ongoing, plaintiffs request that they be produced within one week of the Court's order.

### B. Google Must Produce Information about Certain RTB-Related Source Code Changes



Berntson and Belov testified that Google's source code is the place to look ▌ The witnesses confirmed that the source code ▌. For example, Belov testified, and deposition exhibits confirmed, that the source code can be ▌. Belov Tr. at 180-181 ("▌"); Belov Ex. 41 at GOOG-HEWT-00184525-526 (Two examples are "▌" and "▌."). In light of this evidence, on February 3, plaintiffs asked Google to produce documents explaining the use of the source code ▌, as well as a summary of ▌ source code for any bid fields and bid requests, produced in the same manner as appears in Belov Ex. 41 (▌). Google declined to investigate plaintiffs'

---

[5] This is not the first case in this district in which Google has engaged in discovery misconduct. Google has been sanctioned for discovery misconduct and violation of discovery orders in at least three other pending cases: *In re Google Play Store Antitrust Litigation*, 21-md-02981-JD (N.D. Cal.), ECF No. 469 (March 28, 2023) (sanctioning Google for intentionally subverting the discovery process); *Calhoun v. Google*, 20-cv-05146-YGR (N.D. Cal.), ECF No. 871-3 (Sept. 19, 2022) (sanctioning Google for discovery misconduct); *Brown v. Google*, 20-cv-03664-YGR (N.D. Cal.), ECF No. 593-3 (May 31, 2022) (sanctioning Google for discovery misconduct). The common thread in these sanctions orders is Google concealing relevant information until forced to reveal it by court order.

*In re Google RTB Consumer Privacy Litig.*
April 3, 2023

request, limiting its inquiry to a different "███████" tool, and has otherwise refused to produce this information.

The two Google employees most involved in the day-to-day operation of RTB have both testified that ████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████. This evidence bears directly on common practices and is probative of Google's knowledge of improper practices. Plaintiffs simply seek production of documents sufficient to explain the use of ████████████) and a summary output of all ████████████████████████████ during the class period, which Belov testified ██ ████████████████████████████. *See, supra.* Given the narrowly focused information sought by plaintiffs, Google can hardly claim that exemplifying this tool and producing the dashboard outputs *pertaining to RTB* would be burdensome or disproportionate to the needs of the case.

**II.    GOOGLE'S POSITION**

      **A.    Plaintiffs' Demand for "Dashboards" Discovery Should Be Rejected.**

Plaintiffs' demand for documents explaining "the structure, features, and functionality" of █ so-called "dashboards" and exemplars should be rejected for multiple reasons.[6]

***First***, Plaintiffs do not identify specific discovery requests seeking the "dashboards," or provide any basis for their assertion that any production would be "at most" 50 documents. Instead, they refer in passing to Rule 26 and various ESI standards, without citing any authority suggesting that these generalized standards require a company to produce documents about and create exemplars of internal tools and all fields in them.  Plaintiffs also suggest Google has refused "to disclose or discuss" ESI sources, but Google disclosed over a year ago its non-custodial sources, which the Court approved over Plaintiffs' objections and demands for additional information.  (ECF No. 188 at 4:9–18.)

***Second***, Plaintiffs' demands are inconsistent with the discovery this Court has permitted. In prior disputes involving Google's internal systems, the Court prohibited discovery unrelated to this case's central issue—the alleged unauthorized disclosure of user information to third-parties in RTB.  (ECF No. 184 at 4:15–16.)  In its April 2022 Order, this Court explained it "is not persuaded that ***the location and manner*** in which Google stores Bid Requests or the user information that is used or may be used in a Bid Request is relevant to any issue in the case, and Google need not produce these documents."  (*Id*. at 7:3–5 (emphasis added).)   The Court also rejected discovery into the technical details of Google's RTB-related systems.  (ECF No. 352 at 6:12–13 ("The Court is skeptical that discovery of the architecture-level details of Google's software is relevant and proportional to the needs of the case" and declining to compel further production on RFP targeted at "the architecture of the software programs" related to data "to be sent to Google RTB participants").  And the Court has rejected discovery into "non-RTB products or services."  (ECF No. 326 at 6:23–25.)

---

[6] Plaintiffs incorrectly state there are ██ disputed "dashboards" because Plaintiffs miscount ████████ and ████████████████ as separate "dashboards."

*In re Google RTB Consumer Privacy Litig.*
April 3, 2023

    Ignoring these Orders, Plaintiffs demand discovery on internal Google "dashboards," systems, and databases that are unrelated to the alleged disclosure of user information to third parties, not specific to RTB, and farther removed from the issues in this case than the systems for which the Court already denied discovery:



- ▇▇▇. (Berntson Tr. at 206:3–17.)

- ▇▇▇ (Berntson Tr. at 91:1–9.)

- ▇▇▇
(Belov Tr. at 140:7–10.)

- ▇▇▇. (Berntson Tr. at 137:9–17.)

- ▇▇▇ (*Id.* at 268:2–16.)

***Third***, Plaintiffs' demands contravene other orders limiting specific categories of discovery:



- ▇▇▇: The Court's September 6, 2022 order limiting RTB revenue discovery forecloses Plaintiffs' demand for discovery into ▇▇▇ (ECF No. 326 at 5:11–12.) The Court limited production of RTB revenue-related discovery to "documents sufficient to show the revenue it receives on an annual basis from RTB auctions in the United States for the relevant period." (*Id.*)  Google produced this information in October 2022. (ECF No. 356-1 ¶ 4.) Plaintiffs demand additional documents about ▇▇▇ (Berntson Tr. 263:23–265:15.) Plaintiffs do not explain why discovery into Google's "dashboards" for viewing revenue metrics is relevant, nor is this discovery proportionate to the needs of this case given Google's production of RTB revenue data.

- ▇▇▇. Plaintiffs' request for discovery into ▇▇▇ also contravenes the September 6, 2022 Order limiting discovery regarding experiments to "reports, analyses, and studies showing the impact on Google's RTB revenues of disabling third-party cookies and other user identifiers." (ECF No. 326 at 6:16–18.) The Court determined that "Google need not produce the 'underlying data' for these reports, analyses, and studies, as none of the document requests on which plaintiffs rely call for production of this information, and the Court is not persuaded that production of 'underlying data' is proportional to the needs of the case." (*Id.* at 6:19–22.) Plaintiffs ignore this Order by seeking experiments-related discovery beyond "reports, analyses, and studies." Indeed, Plaintiffs' demand for documents

Page 5 of 6

about Google's ▓▓▓▓ is even farther afield than their request for the underlying experiments data that this Court already rejected. Moreover, because ▓▓ is not specific to RTB, Plaintiffs' demand contravenes the Court's Order that Google need not produce information concerning "non-RTB products or services." (ECF No. 326 at 6:23–25.)

*Fourth*, Plaintiffs' demands for RTB-related items is cumulative of discovery already provided and disproportional to the needs of the case.

- ▓▓▓▓ **& Related Tools:** Plaintiffs demand excessive information regarding ▓▓▓▓ [8] ▓▓▓▓ (collectively ▓▓▓▓). Google has provided sufficient discovery about ▓▓▓▓. After Plaintiffs demanded to inspect ▓▓▓▓, Google confirmed that it does not give RTB participants access to user information beyond what is shown in the RTB protos and other discovery already produced. Google pointed Plaintiffs to materials explaining the information accessible through ▓▓▓▓ and produced exemplars of relevant parts of ▓▓▓▓. Plaintiffs have never explained why this production is deficient.

  Plaintiffs also demand discovery on the ▓▓▓▓ . (Belov Tr. 20:19–25 (stating that ▓▓▓▓; *id.* at 27:19–23 (explaining that ▓▓▓▓); *id.* at 70:11–21 (explaining that ▓▓▓▓). Google has already confirmed what user information is accessible through ▓▓▓▓ and ▓▓▓▓ are not relevant to Plaintiffs' claims.

- ▓▓▓▓: Plaintiffs' request for discovery into ▓▓▓▓ is cumulative and disproportional to the needs of the case. Google has already produced hundreds of documents regarding ▓▓▓▓ and Plaintiffs have deposed multiple witnesses about ▓▓▓▓. (Berntson Tr. 209:10–25; 211:1–212:4; 232:11–21; 253:18–25; Belov Tr. 241:9–242:19; 243:19–244:6.) Additional discovery regarding the "dashboard" is at best cumulative. *See Swanson.*, 2013 WL 5538908, at *5. Moreover, much like the Court's conclusion that discovery into the "underlying data" for Google experiments is not proportional to the needs of the case, (ECF No. 326 at 6:19–22), discovery into the underlying "dashboard" is not proportional here.

---

[7] ▓▓▓▓ is not a "dashboard," but rather refers to ▓▓▓▓.
[8] ▓▓▓▓.

*In re Google RTB Consumer Privacy Litig.*
April 3, 2023

  **B. Plaintiffs' Source Code Demand Is Overbroad, Unduly Burdensome, and Unripe.**

  Plaintiffs' source code demand is also vastly overbroad and unduly burdensome. Plaintiffs insist on source code changes for all bid request and bid response fields, including fields Plaintiffs have never contended are "personal information" and fields that have nothing to do with a user but rather information about the ad to be displayed or other irrelevant matters. Given the breadth and burden of this demand, Google asked Plaintiffs to agree, before Google investigates potential alternative sources, to a narrowed set of relevant bid request fields to be negotiated by the Parties. Plaintiffs rejected this compromise and refused to confer in good faith on appropriate limitations, rendering this source code dispute unripe. *See* Standing Order § 4 (instructing the parties to "attempt in good faith to resolve the [discovery] dispute by agreement").

  Plaintiffs' demand for a log of all changes to source code for all bid request and bid response fields also misconstrues deposition testimony. Plaintiffs conflate Mr. Belov's testimony about Ex. 41 and a tool linked to an internal Google system called ▇▇▇▇▇ with Mr. Belov's separate testimony concerning ▇▇▇▇▇▇▇. (*Contrast* Belov. Tr. at 180:13–182:3 (discussing ▇▇▇▇▇▇▇), *with id.* at 296:14–304:23 (discussing Ex. 41 and ▇▇▇▇▇▇). Google investigated ▇▇▇▇▇▇▇—the one source Plaintiffs identified before briefing—and confirmed that the tool cannot produce the log Plaintiffs demand. (Belov Ex. 41 at GOOG-HEWT-00184525–526.)

**III. NECESSITY OF A HEARING**

  **A. Plaintiffs' Position**

  Plaintiffs request a hearing at the Court's earliest opportunity. Production of the information sought in this letter brief is critical to plaintiffs' case and likely to lead to the discovery of significant additional relevant evidence.

  **B. Google's Position**

  Google does not believe a hearing on this matter is necessary.

**IV. DISCOVERY CUT-OFFS**

  The Parties' deadline to substantially complete their production of documents in advance of class certification passed on July 11, 2022. The fact discovery cut-off is November 10, 2023, the close of expert discovery is February 9, 2024, and plaintiffs' motion for class certification is due May 23, 2023. *See* ECF No. 391.

**V. COMPLIANCE WITH MEET AND CONFER REQUIREMENT**

  In compliance with the Court's meet and confer requirements, the parties met and conferred several times via Zoom. The final lead counsel meet and confer was held on March 14, 2023, via Zoom. On plaintiffs' side, Jonathan Levine, Anne Davis, An Truong, Caroline Corbitt, and Jenny Paulson attended. On Google's side, Whitty Somvichian and Robby L.R. Saldaña attended.

*In re Google RTB Consumer Privacy Litig.*
April 3, 2023

Dated: April 3, 2023                    **PRITZKER LEVINE LLP**

By: */s/ Elizabeth C. Pritzker*
Elizabeth C. Pritzker (SBN 146267)
Jonathan K. Levine (SBN 220289)
Bethany Caracuzzo (SBN 190687)
Caroline Corbitt (SBN 305492)
1900 Powell Street, Suite 450
Emeryville, CA 94608
Tel.: (415) 692-0772
Fax: (415) 366-6110
ecp@pritzkerlevine.com
jkl@pritzkerlevine.com
bc@pritzkerlevine.com
ccc@pritzkerlevine.com

*Interim Class Counsel*

Dated: April 3, 2023                    **BLEICHMAR FONTI & AULD LLP**
Lesley E. Weaver (SBN 191305)
Anne K. Davis (SBN 267909)
Joshua D. Samra (SBN 313050)
555 12th Street, Suite 1600
Oakland, CA 94607
Tel.: (415) 445-4003
Fax: (415) 445-4020
lweaver@bfalaw.com
adavis@bfalaw.com
jsamra@bfalaw.com

Dated: April 3, 2023                    **SIMMONS HANLY CONROY LLC**
Jason 'Jay' Barnes (admitted *pro hac vice*)
An Truong (admitted *pro hac vice*)
Jennifer Paulson (admitted *pro hac vice*)
112 Madison Avenue, 7th Floor
New York, NY 10016
Tel.: (212) 784-6400
Fax: (212) 213-5949
jaybarnes@simmonsfirm.com
atruong@simmonsfirm.com
jpaulson@simmonsfirm.com

Dated: April 3, 2023                    **DiCELLO LEVITT LLC**
David A. Straite (admitted *pro hac vice*)

*In re Google RTB Consumer Privacy Litig.*
April 3, 2023

|  |  |
|---|---|
|  | 485 Lexington Avenue, Suite 1001<br>New York, NY 10017<br>Tel.: (646) 933-1000<br>dstraite@dicellolevitt.com |
|  | James Ulwick (admitted *pro hac vice*)<br>Ten North Dearborn Street, Sixth Floor<br>Chicago, IL 60602<br>Tel.: (312) 214-7900<br>julwick@dicellolevitt.com |
| Dated: April 3, 2023 | **COTCHETT, PITRE & McCARTHY LLP**<br>Nanci E. Nishimura (SBN 152621)<br>Brian Danitz (SBN 247403)<br>Karin B. Swope (admitted *pro hac vice*)<br>840 Malcolm Road, Suite 200<br>Burlingame, CA 94010<br>Tel.: (650) 697-6000<br>Fax: (650) 697-0577<br>nnishimura@cpmlegal.com<br>bdanitz@cpmlegal.com<br>kswope@cpmlegal.com |
| Dated: April 3, 2023 | **BOTTINI & BOTTINI, INC.**<br>Francis A. Bottini, Jr. (SBN 175783)<br>Yury A. Kolesnikov (SBN 271173)<br>7817 Ivanhoe Avenue, Suite 102<br>La Jolla, CA 92037<br>Tel.: (858) 914-2001<br>Fax: (858) 914-2002<br>fbottini@bottinilaw.com<br>ykolesnikov@bottinilaw.com<br><br>***Counsel for Plaintiffs and the Proposed Class*** |
| Dated: April 3, 2023 | **COOLEY LLP**<br><br>By: */s/ Whitty Somvichian*<br>Michael G. Rhodes<br>Whitty Somvichian<br>Laura M. Elliott<br>Kelsey R. Spector<br>Reece Trevor<br>Anupam S. Dhillon<br>3 Embarcadero Center, 20th floor |

*In re Google RTB Consumer Privacy Litig.*
April 3, 2023

>San Francisco, CA 94111-4004
>Tel.: 415-693-2000
>Fax: 415-693-2222
>rhodesmg@cooley.com
>wsomvichian@cooley.com
>lelliott@cooley.com
>kspector@cooley.com
>rtrevor@cooley.com
>adhillon@cooley.com
>
>Robby L.R. Saldaña
>Khary J. Anderson
>1299 Pennsylvania Avenue NW, Suite 700
>Washington, DC 20004-2400
>Tel.: 202-776-2109
>Fax: 202-842-7899
>rsaldana@cooley.com
>kjanderson@cooley.com
>
>Attorneys for Defendant
>GOOGLE LLC

## ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1(i)(3)

I, Bethany Caracuzzo, attest that concurrence in the filing of this document has been obtained from the other signatories. I declare under penalty of perjury that the foregoing is true and correct. Executed this 3rd day of April, 2023, at Emeryville, California.

>/s/ *Bethany Caracuzzo*