UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

IN RE GOOGLE RTB CONSUMER
PRIVACY LITIGATION

Case No.  21-cv-02155-YGR   (VKD)

**ORDER RE PLAINTIFFS' MOTION
FOR CONTEMPT AND SANCTIONS**

Re: Dkt. No. 431

Plaintiffs move for an order finding defendant Google LLC ("Google") in contempt and imposing evidentiary and monetary sanctions against Google for failure to comply with the Court's prior discovery orders (Dkt. Nos. 314, 382).  Dkt. No. 431.  Google opposes the motion. Dkt. No. 448.  The Court held a hearing on the motion on April 11, 2023.  Dkt. No. 478.  The motion is denied.

## I.     BACKGROUND

Plaintiffs' motion focuses on two passages from the Court's prior orders dated August 26, 2022 and December 16, 2022:

> The Court expects Google to produce documents sufficient to show, for each named plaintiff, what information specific to that plaintiff was shared with an RTB participant and the details of such sharing. If Google discloses information that allows an RTB participant to identify an account holder based on information the *participant* may have about that account holder, Google must produce records showing the disclosure of that information as well.  Otherwise, plaintiffs have not shown they are entitled to discovery of all information Google maintains about an account holder solely based on Google's internal linking of information with an account holder.

Dkt. No. 314 at 4-5.

> Plaintiffs say that Google's production must include documents sufficient to show both the explicit sharing of verticals associated

with the named plaintiffs and any implicit sharing that facilitates ad targeting.  The Court agrees.  Google must produce documents sufficient to show for each named plaintiff the "verticals" data fields it shared with RTB participants during the class period.  In addition, Google must produce documents sufficient to show for each named plaintiff the information, if any, that it provided to RTB participants that would permit those participants to infer information about the account holder based on verticals linked with the account holder.

Dkt. No. 382 at 5.

Plaintiffs claim that Google violated the Court's order in three respects.  First, plaintiffs say that Google's production of named plaintiffs data responsive to these orders did not include three data fields—user_lists, content_labels, and app_category_fatcat_id —that are within the scope of the Court's prior orders.  Dkt. No. 431 at 5.  Second, plaintiffs say that Google improperly limited its responsive production to a selectively time-sampled period of six weeks, which was not representative of the class period.  *Id.* at 4.  Third, plaintiffs say that Google "intentionally stripped out" data fields that would identify the named plaintiffs whose data they produced, making it difficult for plaintiffs to know which data is associated with a particular named plaintiff and to match later productions with earlier productions.  *Id.* at 5.

Google responds that plaintiffs' motion should be denied because it seeks the production of information that is outside the scope of the Court's prior orders.  In addition, Google says that plaintiffs' motion disguises an effort by plaintiffs to evade the Court's expedited discovery dispute resolution procedures.  Dkt. No. 448 at 1.  Google argues that no sanctions are warranted in any event, as it has attempted to comply with the Court's orders in good faith, and even sought clarification of one of the orders.  *Id.* at 2.

## II.    LEGAL STANDARD

A court has authority to sanction litigants for discovery misconduct under both the Federal Rules of Civil Procedure and the court's inherent power to prevent abusive litigation practices. *See Leon v. IDX Sys. Corp.*, 464 F.3d 951, 958 (9th Cir. 2006); *True Health Chiropractic Inc. v. McKesson Corp.*, 2015 WL 5341592, at *6 (N.D. Cal. Sept. 12, 2015).  When a party violates a discovery order, Rule 37(b)(2)(A) authorizes a variety of sanctions, including "prohibiting the disobedient party from supporting or opposing designated claims or defenses," "striking pleadings," "dismissing the action," or "treating as contempt of court the failure to obey [an] order

. . . ." Fed. R. Civ. P. 37(b)(2)(A). "[O]n the menu of sanctions that a court may select from in applying Rule 37, preclusion of evidence is among the most severe." *True Health Chiropractic*, 2015 WL 5341592, at *6 (citing *Network Appliance, Inc. v. Bluearc Corp.*, No. C 03–5665 MHP, 2005 WL 1513099, at *3 (N.D. Cal. June 27, 2005) *aff'd*, 205 Fed. Appx. 835 (Fed. Cir. 2006)). Courts apply a five-factor test in the context of exclusionary sanctions to analyze "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the party seeking sanctions; (4) the public policy favoring disposition of cases on their merits; [and] (5) the availability of less drastic sanctions." *See, e.g.*, *Connecticut Gen. Life Ins. Co. v. New Images of Beverly Hills*, 482 F.3d 1091, 1096 (9th Cir. 2007).

To obtain a contempt order as a discovery sanction, the moving party must prove by clear and convincing evidence that a court order provided "unequivocal notice" that certain discovery must be produced. *Etienne v. Kaiser Found. Hosp.*, No. C11-02324 LB, 2012 U.S. Dist. LEXIS 91600, at *3 (N.D. Cal. July 2, 2012) (citing *Unigard Sec. Ins. Co. v. Lakewood Eng'g & Mfg. Corp.*, 982 F.2d 363, 368 (9th Cir. 1992)); *see also F.T.C. v. Affordable Media*, 179 F.3d 1228, 1239 (9th Cir. 1999) (discussing clear and convincing evidence standard); *Koninklijke Philips N.V. v. Elec-Tech Int'l Co.*, No. 14-cv-02737-BLF, 2015 WL 6449399, at *2 (N.D. Cal. Oct. 26, 2015) ("[C]ontempt requires the existence of a specific and definite court order."). A finding of contempt is improper where the violation was "based on a good faith and reasonable interpretation of the [order]." *See In re TFT-LCD (Flat Panel) Antitrust Litig.*, 289 F.R.D. 548, 553 (N.D. Cal. 2013).

Sanctions are also available under Rule 16(f)(l), which provides that a "court may issue any just orders . . . if a party or its counsel . . . fails to obey a scheduling or other pretrial order." Fed. R. Civ. P. 16(f)(l)(C). Rule 16 is "broadly remedial and its purpose is to encourage forceful judicial management." *Cato v. Fresno City*, 234 F.3d 1276, 1276 (9th Cir. 2000) (citation omitted). A court may order sanctions under Rule 16 for violation of an order where "[d]isregard of the order would undermine the court's ability to control its docket, disrupt the agreed-upon course of the litigation, and reward the indolent and the cavalier." *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 610 (9th Cir. 1992).

3

1    Additionally, "discovery misconduct may be punished under the court's 'inherent powers'

2    to manage its affairs." *Guifu Li v. A Perfect Day Franchise, Inc.*, 281 F.R.D. 373, 396 (N.D. Cal.

3    2012) (quoting *Unigard Sec. Ins. Co.*, 982 F.2d at 368).  Sanctions under a court's inherent

4    authority are analyzed using the same test as those under Rule 37.  *Leon v. IDX Sys. Corp.*, 464

5    F.3d 951, 958 (9th Cir. 2006).

6    **III.    DISCUSSION**

7        **A.    Whether the Three Disputed Data Fields Are Within the Scope of the Court's Prior Orders**

8        Plaintiffs' principal argument is that the user_lists, content_labels, and

9    app_category_fatcat_id data fields are clearly within the scope of the Court's prior orders and

10   Google should have produced them.  Google points out that the Court's orders did not specifically

11   identify these data fields for production, and the parties did not brief these particular data fields in

12   the discovery dispute submissions that preceded the orders.[1]

13       In their briefing on the present motion, plaintiffs explain that the user_lists field includes

14   signals that show when a named plaintiff sent a previous communication on a specific topic or

15   action, and that assignment of a user to a user list is reflected in that user's profile, which is shared

16   with RTB participants.  Dkt. No. 431 at 5; Dkt. No. 457 at 7.  Google responds that the user_lists

17   field was removed from bid requests in 2018 and Google no longer has records from this data field

18   to produce.  Dkt. No. 448 at 10.  Moreover, Google explains that it neither creates nor shares any

19   user lists; rather, an *RTB participant* could create and populate these lists, which Google

20   maintained internally.  The lists could be used to "pre-filter" the bid requests that the participant

21   wished to receive.  *Id.* at 10; Dkt. No. 447-3 ¶ 5.  Google explains that it did not and does not

22   consider the user lists field a "vertical" or other user-specific information shared through RTB and

23   reasonably did not believe this field was within the scope of the Court's prior orders.  Dkt. No.

24   448 at 10-11.

---

[1] Plaintiffs did refer to several "user_lists" fields in Dkt. No. 367 at 2 (the *Calhoun* submission).
In the same submission, Google took the position that such fields related to different ad products,
not RTB.  *Id.* at 4.  The Court ultimately concluded that plaintiffs had not adequately supported
their demands for these and other data fields.  *See* Dkt. No. 382 at 3-4.

United States District Court
Northern District of California

Similarly, plaintiffs explain that the content_labels field includes categories that describe the content of the publisher's web page being visited by a user and that this field is also used to target or filter bid requests.  Dkt. No. 431 at 5.  Plaintiffs argue that "any information in the possession of Google reflecting websites visited by specific account holders constitutes data that could allow RTB participants to infer information about those account holders."  Dkt. No. 457 at 7-8.  Google responds that content labels describe websites and are not user-specific information. Dkt. No. 448 at 11.  Unlike user lists, content labels allow an RTB participant to "pre-filter" categories of websites (not users) for which the participant does *not* want to receive bid requests. *Id.* at 11; Dkt. No. 447-3 ¶¶ 6-7.[2]  Google explains that it does not consider the content_labels field a "vertical" or other user-specific information shared through RTB and reasonably did not believe this field was within the scope of the Court's prior orders.  Dkt. No. 448 at 11.

Finally, plaintiffs say that the app_category_fatcat_id field provides information about the "app equivalent of verticals for URLs including in RTB bid requests."  Dkt. No. 431 at 5.  At the hearing, plaintiffs explained further that this data field concerns bid requests for in-app advertising.  Dkt. No. 478.  Google explains that the app_category_fatcat_id field was removed from bid requests in February 2020, and Google no longer has records from this data field to produce.  Dkt. No. 448 at 11.  Moreover, it explains that this field contains information categorizing applications in the Google Play Store and the Apple App Store, but does not contain any information specific to a user.  *Id.* at 11.  Google argues that it does not consider the app_category_fatcat_id field a "vertical" or other user-specific information shared through RTB and reasonably did not believe this field was within the scope of the Court's prior orders.  *Id.*

Having considered the parties' briefing and the arguments at the hearing, the Court agrees with Google that neither of the Court's prior orders clearly requires Google to produce these three data fields.  While these data fields may contain information relevant to a claim or defense and may be responsive to a document request—an issue the Court does not address here—Google did not clearly disobey a Court order to produce them.  Sanctions would be particularly inappropriate

---

[2] The parties disagree about whether the content labels are still used for ad targeting or pre-filtering.

United States District Court
Northern District of California

1   here given that Google attempted to seek clarification of the Court's prior orders (an effort

2   plaintiffs vigorously resisted), and the Court denied Google's request for clarification.  Dkt. No.

3   316 (request for clarification); Dkt. No. 320 (Google's opposition to request); Dkt. No. 321

4   (order).

5         **B.**     **Whether Google Improperly Limited Its Production to Sampled Data**

6          Plaintiffs argue that the Court's December 16, 2022 order required Google to produce

7   verticals information shared with RTB participants during the class period, which spans seven

8   years beginning in March 2016.  Plaintiffs claim that Google violated the Court's order when it

9   produced only sampled data for six, week-long periods in 2021 and 2022, omitting data from

10   earlier in the class period.  Dkt. No. 431 at 4.

11          The parties have separately briefed, and the Court has separately addressed, the question of

12   whether and how Google's production of named plaintiffs data may be sampled in preparation for

13   briefing on class certification.  *See* Dkt. Nos. 429, 483.  To the extent plaintiffs construe the

14   Court's December 16, 2022 order as requiring Google to produce *unsampled* data for the entire

15   class period for "verticals" information, plaintiffs misunderstand the Court's prior order.  Rather,

16   that order made clear that the relevant time period included the class period, but directed the

17   parties to confer further regarding how data that requires Google to provide advance notice before

18   production should be sampled.  Dkt. No. 282 at 5-6.

19          The Court has just now resolved the parties "sampling" dispute.  Accordingly, Google's

20   February 9, 2023 production did not violate any sampling/no sampling directive in the Court's

21   December 16, 2022 order.

22         **C.**     **Whether Google Improperly Omitted Identifying Information**

23          Plaintiffs argue that Google deliberately omitted from its production the Google Account

24   ID and Google User ID data fields, and the "joining keys" that link the two, so as to make it

25   difficult for plaintiffs to match up Google's most recent production with its earlier productions of

26   named plaintiffs data.  Dkt. No. 431 at 5-6.  Google responds that it produced the named plaintiffs

27   data using a unique query ID field that allows plaintiffs to match prior productions with other

28   productions that come from the ███████.  Dkt. No. 448 at 12.  Google also points out that

United States District Court
Northern District of California

United States District Court
Northern District of California

1  nothing in the Court's prior orders requires Google to use plaintiffs' preferred method or data

2  fields for correlating these document productions.  *Id.*

3       The Court agrees with Google that its prior orders did not specify how Google should

4  produce data so that earlier productions can easily be matched with later productions.  However, to

5  the extent Google's productions from multiple different data sources *cannot* be easily matched up

6  based on the query ID, as plaintiffs contend in their reply, Google's reliance solely on the query

7  ID needlessly burdens plaintiffs.

8       Accordingly, while Google's most recent data productions did not violate any directive in

9  the Court's prior orders, Google must take care that all of its productions of named plaintiffs data

10  can be easily correlated, and it must include the fields necessary to accomplish that result.  During

11  the hearing, Google acknowledged that it could include the Google Account ID, Google User ID,

12  and "joining keys" without undue burden, and the Court expects that it will do so, including

13  remedying its prior productions that omit this information.

## IV.     CONCLUSION

15       For the reasons explained above, the Court denies plaintiffs' motion for an order of

16  contempt and for evidentiary and monetary sanctions against Google.

17       **IT IS SO ORDERED.**

18  Dated: April 14, 2023

20  *Virginia K. DeMarchi*

21  VIRGINIA K. DEMARCHI
    United States Magistrate Judge