# Exhibit 6

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 1

1          UNITED STATES DISTRICT COURT

2          NORTHERN DISTRICT OF CALIFORNIA

3               SAN JOSE DIVISION

4                  --oOo--

5

6   IN RE GOOGLE RTB CONSUMER      Case No.

7   PRIVACY LITIGATION             5:21-CV-02155-LHK-VKD

8   _____/

9

10

11

12

13      HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

14

15

16

17     VIDEO-RECORDED DEPOSITION OF TERRY DIGGS

18               REDDING, CALIFORNIA

19             FRIDAY, APRIL 14, 2023

20

21

22

23   Reported by:

24   Anrae Wimberley, CSR No. 7778

25   Job No.  5823194

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 2

1                UNITED STATES DISTRICT COURT

2               NORTHERN DISTRICT OF CALIFORNIA

3                     SAN JOSE DIVISION

4                        --oOo--

5

6     IN RE GOOGLE RTB CONSUMER      Case No.

7     PRIVACY LITIGATION             5:21-CV-02155-LHK-VKD

8     _____/

9

10

11

12        HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

13

14

15

16

17            Transcript of video-recorded deposition

18     of TERRY DIGGS, taken at The Sheraton Hotel -

19     Sundial Bridge, 820 Sundial Bridge, Redding,

20     California 96001, beginning at 9:05 a.m. and ending

21     at 2:58 p.m. on Friday, April 14, 2023, before Anrae

22     Wimberley, Certified Shorthand Reporter No. 7778.

23

24

25

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 3

```
 1      APPEARANCES:

 2      For the Plaintiffs and the Proposed Class:

 3              DICELLO LEVITT LLP

 4              BY:  DAVID A. STRAITE, ESQ.

 5                   JAMES ULWICK, ESQ.

 6              485 Lexington Avenue, Suite 1001

 7              New York, New York 10017

 8              (646) 933-1000

 9              dstraite@dicellolevitt.com

10              julwick@dicellolevitt.com

11

12      For Defendant Google, Inc.:

13              COOLEY LLP

14              BY:  REECE TREVOR, ESQ.

15              Three Embarcadero Center, 20th Floor

16              San Francisco, California 94111

17              (415) 693-2247

18              rtrevor@cooley.com

19

20      Also present:

21              DAN BRUUN, Videographer

22              VERITEXT LEGAL SOLUTIONS

23                      --oOo--

24

25
```

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 4

```
 1                        I N D E X
 2     EXAMINATION BY:                              PAGE
 3     MR. TREVOR                                      7
 4     MR. STRAITE                                   213
 5
 6                       --oOo--
 7
 8                     E X H I B I T S
 9     EXHIBIT            DESCRIPTION               PAGE
10     Exhibit 1   Document entitled "Google         75
                   Subscriber Information"; no
11                 Bates numbers, 10 pages
12     Exhibit 2   Document entitled "Exhibit        83
                   A Redacted (Publicly Filed)
13                 Version" of the
                   Consolidated Class Action
14                 Complaint; 140 pages
15     Exhibit 3   Chrome web browser history;      147
                   Bates stamped
16                 GOOG-HEWT-00455626 through
                   627
17
       Exhibit 4   Chrome search history;           151
18                 Bates stamped
                   GOOG-HEWT-00455628
19
       Exhibit 5   Los Angeles Times Privacy        153
20                 Policy; 24 pages
21     Exhibit 6   Web page screenshot              171
                   entitled "Justice in all
22                 its Dimensions"; 2 pages
23     Exhibit 7   Web page screenshot              174
                   entitled "Privacy Policy";
24                 3 pages
25
```

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 5

1                    E X H I B I T S  (Cont'd)

2      EXHIBIT            DESCRIPTION                    PAGE

3      Exhibit 8    Exhibit 5 to the              181

                    consolidated class action

4                   complaint; 5 pages

5      Exhibit 9    Exhibit 20 to the             189

                    consolidated complaint; 34

6                   pages

7      Exhibit 10   Document entitled "Reset       207

                    advertising ID"; Bates

8                   stamped

                    PLFS_RTB_DIGGS_00259681

9                          --oOo--

10     QUESTIONS WITNESS INSTRUCTED NOT TO ANSWER:   ^

11                      PAGE    LINE

12                      116      1

13                      118      13

14                      185      7

15                      185      15

16                      --oOo--

17

18

19

20

21

22

23

24

25

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 6

1                FRIDAY, APRIL 14, 2023;

2                 REDDING, CALIFORNIA;

3                    9:05 A.M.

4                     - - -

5        THE VIDEOGRAPHER:  Good morning.  We are on the

6    record at 9:05 a.m. on April 14th, 2023.

7               This is Media Unit No. 1 of the

8    video-recorded deposition of Terry Diggs in the

9    matter of In Re:  Google RTB Consumer Privacy

10   Litigation.

11              My name is Dan Bruun, and I'm the

12   videographer from the firm Veritext Legal Solutions.

13   The court reporter is Anrae Wimberley from the firm

14   Veritext Legal Solutions.

15              Would counsel please introduce themselves

16   and state their affiliations for the record.

17       MR. TREVOR:  Good morning, everyone.

18              Reece Trevor from Cooley LLP for Google.

19       MR. STRAITE:  Good morning.

20              David Straite from the DiCello Levitt for

21   plaintiff Terry Diggs.

22       MR. ULWICK:  Good morning.

23              James Ulwick, also from DiCello Levitt,

24   also here for plaintiff Terry Diggs.

25       THE VIDEOGRAPHER:  And would the court reporter

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 27

1        Q.    Would you say you're more concerned or

2    less concerned or about the same concerned as most

3    people with sharing personal information?

4        MR. STRAITE:  Objection; literally calls for

5    speculation.

6        THE WITNESS:  I'm concerned -- more concerned

7    about it.

8    BY MR. TREVOR:

9        Q.    You mentioned a moment ago that you have

10    concerns about sharing your personal information,

11    and I want to ask you some questions about that.

12            What does the term "personal information"

13    mean in the way you just used it?

14        A.    Anything that has to do with me.

15        Q.    And you also testified that you're

16    concerned about sharing your personal information.

17            When you say, "sharing," what do you mean?

18        A.    I don't want other people seeing my

19    personal information.

20        Q.    Do you take any measures when you're using

21    the Internet to stop other people from seeing your

22    personal information?

23        MR. STRAITE:  Objection; vague.

24        THE WITNESS:  What kind of measures?

25    BY MR. TREVOR:

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 44

 1          MR. STRAITE:  Objection; vague.

 2          THE WITNESS:  No.

 3     BY MR. TREVOR:

 4          Q.   Ms. Diggs, are you familiar with the term

 5     "personalized advertising"?

 6          A.   No.

 7          Q.   You've never heard that term before?

 8          A.   No.

 9          Q.   Do you have any understanding of what it

10     might mean?

11          MR. STRAITE:  Objection; actually calls for

12     speculation.

13          THE WITNESS:  I don't know.

14     BY MR. TREVOR:

15          Q.   You mentioned earlier, Ms. Diggs, that you

16     have an account with Google.

17          A.   Yes.

18          Q.   How many accounts do you have?

19          A.   What do you mean?

20          Q.   Sorry.  How many Google accounts do you

21     have?

22          A.   One.

23          Q.   One.

24               What's the user name associated with that

25     account?

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 65

1    smartphones?

2        A.    No.

3        Q.    You've never lent your phone to a friend

4    or a coworker for a moment?

5        MR. STRAITE:    Objection; asked and answered.

6        THE WITNESS:    No.    My friends have their own

7    phones.

8    BY MR. TREVOR:

9        Q.    Ms. Diggs, do you own a computer?

10       A.    No.

11       Q.    Have you ever owned a computer?

12       MR. STRAITE:    Objection; vague.

13       THE WITNESS:    Yes.

14   BY MR. TREVOR:

15       Q.    What was the last computer you owned?

16       A.    An Acer touch screen.

17       Q.    Do you recall if that was a laptop

18   computer or a desktop?

19       A.    It was a desktop.

20       Q.    And when did you last have that Acer

21   computer?

22       A.    It's been about nine years.

23       Q.    What did you typically use that Acer

24   computer for?

25       MR. STRAITE:    Objection; vague.

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 74

1    don't use it?

2           A.    Yeah.   It's in my Bible case.

3           Q.    So we've talked about your Acer computer

4    that you had nine years ago.  We've talked about

5    your Android phones, your iPhone XS and your iPhone

6    14.

7                 Are there any other electronic devices

8    that you've used to access the Internet?

9           MR. STRAITE:   Objection; calls for speculation.

10   Objection; vague.

11          THE WITNESS:   Not that I know of, no.

12   BY MR. TREVOR:

13          Q.    Do you recall in the last 10 years owning

14   any other electronic devices?

15          A.    No.

16          Q.    Do you know if anyone has ever used your

17   Google account on any other electronic devices?

18          A.    Not that I know of.

19          Q.    Do you have any reason to believe that

20   someone might have used your Google account on any

21   other electronic devices?

22          A.    No.

23          Q.    Okay.

24          MR. TREVOR:   I'll ask the court reporter to

25   mark this as Exhibit 1, please.

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 78

1       where it says, "Account Recovery."

2                Do you see that?

3       A.   Yes.

4       Q.   Do you see where it says, "Recovery

5       e-Mail"?

6       A.   Yes.

7       Q.   And then it says,

8       ██████████@gmail.com."

9                Have you ever had an e-mail account

10      ██████████@gmail.com?

11      A.   I think I did.

12      Q.   Do you know when you had that e-mail

13      account?

14      A.   Years ago.

15      Q.   Have you ever used that e-mail account?

16      A.   I don't recall.  It's been a long time.

17      Q.   So I asked you earlier if you had any

18      e-mail accounts other than

19      ██████████@gmail.com.  I think you said, "No,"

20      at that time.

21               Does this refresh your recollection as to

22      whether you have other Gmail accounts?

23      A.   Yes, I remember having this one.

24      Q.   Do you know why you created two Gmail

25      accounts?

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 85

1    representatives if you guys approve them to be

2    representatives, I guess.

3        Q.    And when you say people who are going to

4    be representatives, representatives of what do you

5    mean?

6        A.    Anybody that had a Google account that is

7    involved in the case, the class action suit.

8        Q.    And do you understand yourself to be

9    involved in this case?

10       A.    Yes.

11       Q.    In what capacity are you involved in this

12   case?

13       MR. STRAITE:    Objection; calls for a legal

14   conclusion.

15       THE WITNESS:    I'm trying to be a

16   representative.

17   BY MR. TREVOR:

18       Q.    And is it your understanding that you are

19   a party to a lawsuit against Google?

20       A.    Yes.

21       Q.    Could you please tell me in your own words

22   why you're suing Google?

23       A.    Because it is -- it's a breach of my

24   privacy and because, from my understanding, that

25   Google has sold my information for profit, or

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 86

1    shared.

2        Q.    When you say, "it's a breach of my

3    privacy," what do you mean by "it"?

4        A.    Well, I know that in the thing that pops

5    up with Google, it states that they will collect my

6    information but that they will not share my

7    information.

8        Q.    You said, "the thing that pops up with

9    Google."

10             What do you mean by that?

11       A.    The agreement.

12       Q.    Do you know which agreement you're

13   referring to?

14       A.    Just the one that you have to agree to

15   when you make a Google account.

16       Q.    So it's your understanding that you agree

17   to something with Google when you created your

18   account?

19       MR. STRAITE:  Objection; calls for legal

20   conclusion.

21       THE WITNESS:  Yeah, I'm not exactly sure.  It's

22   just the thing you have to say I agree.

23   BY MR. TREVOR:

24       Q.    And do you remember if you did say I

25   agree?

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 87

1      A.    Yes.

2      Q.    Yes, you did say I agree?

3      A.    Yes.

4      Q.    You also said a moment ago that Google has

5    sold or shared your information.

6            What information are you referring to?

7      A.    My personal information.

8      Q.    And earlier this morning, I asked you what

9    you meant by "personal information."

10           Do you remember that?

11     A.    Yes.

12     Q.    Do you remember how you defined "personal

13   information" this morning?

14     A.    Anything that's about me.

15     Q.    And is that what you believe Google has

16   breached that agreement to you by sharing?

17     A.    Yes.

18     Q.    When you say, "anything about you," what

19   specific pieces of information are about you that

20   you think Google could share?

21     MR. STRAITE:  Objection; calls for expert

22   testimony.

23     THE WITNESS:  I'm not sure.  That's why I hired

24   these guys.

25   BY MR. TREVOR:

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 98

1          THE WITNESS:  I don't know.

2     BY MR. TREVOR:

3          Q.    What are some pieces of information about

4     you -- and I'm not asking for specifics but just

5     categories of information -- that you consider

6     particularly sensitive?

7          MR. STRAITE:  Same objections.

8          THE WITNESS:  Where I live, things I like to

9     do.

10     BY MR. TREVOR:

11          Q.    Anything else?

12          A.    I'm not sure.

13          MR. TREVOR:  Ms. Diggs, do you want to take a

14     break now?

15          THE WITNESS:  Yes, please.

16          MR. TREVOR:  Okay.  Let's go off the record,

17     Counsel.

18          MR. STRAITE:  That's fine.

19          THE VIDEOGRAPHER:  Okay.  We're off the record

20     at 10:58 a.m.

21               (Recess taken.)

22          THE VIDEOGRAPHER:  Okay.  We're back on the

23     record at 11:14 a.m.

24     BY MR. TREVOR:

25          Q.    Ms. Diggs, before we broke, you mentioned

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 99

1   that you considered two pieces of personal

2   information especially sensitive, and I believe

3   those were your location and things you like to do.

4           Do you remember that?

5       MR. STRAITE:  Objection; misstates earlier

6   testimony.

7       THE WITNESS:  Yeah, there was more than that.

8   BY MR. TREVOR:

9       Q.   What other pieces of personal information

10  do you consider especially sensitive, if any?

11      A.   Anything that pertains to me.  I mean, you

12  can find out who I am through sharing my

13  information, and like we already talked, my old job,

14  it's not -- I don't like my information shared.

15      Q.   Are there any categories of personal

16  information about you that you don't consider to be

17  especially sensitive?

18      MR. STRAITE:  Objection; vague.

19      THE WITNESS:  I don't think that -- it doesn't

20  really matter what I think is sensitive, none of my

21  information should be shared.

22  BY MR. TREVOR:

23      Q.   I understand, and I appreciate that

24  perspective.

25          But I am asking if there are other

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 116

 1          I'm curious why you decided in particular

 2     to retain Mr. Ulwick as your lawyer as opposed to

 3     another lawyer.

 4          MR. STRAITE:  At this point, I'm going to

 5     caution to the witness that you do not need to

 6     reveal why you chose your counsel.

 7          MR. TREVOR:  And, Counsel, are you instructing

 8     the witness not to answer the question?

 9          MR. STRAITE:  I am, as phrased.

10     BY MR. TREVOR:

11          Q.   Ms. Diggs, are you going to take your

12     counsel's advice?

13          A.   Absolutely.

14          Q.   Did you do any research about Mr. Ulwick

15     or DiCello Levitt?

16          A.   Absolutely.

17          Q.   What research did you do?

18          A.   Sorry.

19          MR. STRAITE:  That's okay.  We're proud of the

20     firm.

21          THE WITNESS:  Well, of course, with the same

22     thing as somebody I don't know, so I wanted to see,

23     you know, if he was who he said he was, what the

24     firm was all about, so I looked into it.

25     BY MR. TREVOR:

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 117

1     Q.   How did you look into it?

2     A.   I went on and Googled the firm and looked

3  at the people on there and just read about it.

4     Q.   And when you say you looked at the firm on

5  Google, do you mean you went to the firm's website?

6     A.   Yes.

7     Q.   Did you talk to anyone else at the firm?

8     A.   No.

9     Q.   Did you speak to anybody else about

10  DiCello Levitt?

11     A.   No.

12     Q.   What have you done to prepare for today's

13  deposition, Ms. Diggs?

14     A.   I met with James and David twice; well,

15  once over the Internet with James, and then reviewed

16  documents and then we met in person yesterday.

17     Q.   About how long did those meetings last?

18     MR. STRAITE:  Objection; vague.

19     THE WITNESS:  A few hours.

20  BY MR. TREVOR:

21     Q.   Each of the two meetings lasted a few

22  hours?

23     A.   Oh, a little longer maybe, three hours.

24     Q.   So in total, you met with your counsel for

25  about six hours in preparation for today's meeting?

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 122

1        MR. STRAITE:  Objection; calls for a legal

2    conclusion.

3        THE WITNESS:  I don't believe my role is any

4    different than anybody else's.

5    BY MR. TREVOR:

6        Q.   So you believe your role in this case is

7    the same as anyone else who was affected by the

8    practices you're alleging by Google?

9            (Reporter seeks clarification.)

10       MR. STRAITE:  I objected, calls for a legal

11   conclusion.

12       THE WITNESS:  Yes.

13   BY MR. TREVOR:

14       Q.   We looked earlier at the text that says,

15   "all others similarly situated."

16           Do you see that?

17       A.   Where is it?

18       Q.   It's in the same line as Benjamin Hewitt,

19   immediately below that.

20       A.   Okay.

21       Q.   What's your understanding of what

22   "similarly situated" means?

23       A.   My understanding is that the people that

24   are in -- the plaintiffs for this are people that

25   have been injured by their information being shared

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 123

1    without their knowledge.

2        Q.   Do you know if there are any other

3    plaintiffs in this lawsuit?

4        A.   Yes.

5        Q.   Do you know how many?

6        A.   No.

7        Q.   Do you know who they are?

8        A.   I don't know any of them personally.

9        Q.   Do you know any of their names?

10       A.   Yes.  There's these people here

11   (indicating) and on the back, or wherever it is,

12   there's seven of us, I believe, all together that

13   are possible representatives.

14       Q.   Have you ever spoken to any of those seven

15   people -- or six other people?

16       A.   No.

17       Q.   Do you know if there were previously other

18   people who sought to be class representatives in

19   this case?

20       A.   I have no idea.

21       Q.   Do you know who Benjamin Hewitt is?

22       A.   I believe it's -- oh, I don't know.  No.

23       Q.   You mentioned a moment ago the names at

24   the top of this document here on the front page of

25   Exhibit 2, and those are six names in bolded text.

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 126

1    Q.    Ms. Diggs, what do you aim to accomplish
2    through this lawsuit?
3    MR. STRAITE:    Objection; vague.
4    THE WITNESS:    Well, I would like them to stop
5    sharing information without people's consent.    And
6    if not, at least have a consent form so that they
7    can agree or not.    And I also feel like, since they
8    put my information out and received money for it,
9    that I should be compensated for some of that.
10   BY MR. TREVOR:
11   Q.    You mentioned earlier that -- or a moment
12   ago a consent form.
13   Would you be comfortable with the actions
14   you're alleging if there were such a consent form
15   that allowed you to say yes or no?
16   A.    Yes.    Then it would be my choice.
17   Q.    So if you were choosing to share this kind
18   of data with Google and have Google share it with
19   other people, you would be okay with it?
20   MR. STRAITE:    Objection; calls for speculation.
21   Objection; vague, incomplete hypothetical.
22   THE WITNESS:    I don't even understand that.
23   BY MR. TREVOR:
24   Q.    You mentioned that you were hoping to
25   recover monetary compensation through this case.

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 127

1          How much money are you hoping to recover?

2          MR. STRAITE:  Objection; calls for expert

3    testimony.

4          THE WITNESS:  I have no idea.

5    BY MR. TREVOR:

6          Q.   Have you incurred any out-of-pocket losses

7    as a result of the conduct by Google that you're

8    challenging?

9          MR. STRAITE:  Objection; vague, calls for

10   expert testimony.

11         THE WITNESS:  No, not that I know of.

12   BY MR. TREVOR:

13         Q.   Do you think that other Google users are

14   also entitled to any money from this lawsuit?

15         MR. STRAITE:  Objection; calls for expert

16   testimony, calls for a legal conclusion, calls for

17   speculation.

18         THE WITNESS:  Yes, if a judge finds so.

19   BY MR. TREVOR:

20         Q.   Do you think that every Google user should

21   get the same amount of money as you?

22         MR. STRAITE:  Objection; vague and all prior

23   objections as well.

24         THE WITNESS:  I feel like I'm no different than

25   they are.

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 130

1          A.   If theirs was shared -- I mean, that's not

2     for me to decide.  That's the same thing you just

3     asked me kind of in a different way.  That's up to a

4     judge decide.

5          Q.   I understand, and I'm actually asking you

6     a slightly different question.

7               I'm asking, based on the sharing that you

8     allege of your own data, do you think anyone else

9     should get any money for your data being shared, not

10    their data?

11         MR. STRAITE:  Objection; calls for a legal

12    conclusion, calls for expert testimony.

13         THE WITNESS:  I don't -- yeah, that's not up to

14    me.  I don't know.

15    BY MR. TREVOR:

16         Q.   Do you want any money for anyone else's

17    personal information that's not yours being shared?

18         A.   No.

19         Q.   Would you want any money for your

20    granddaughter's personal information being shared?

21         A.   I mean, if a judge said so, I mean, yeah.

22              But I don't know what -- I don't know

23    anything about that, the rulings of that, and that's

24    up to experts and I don't know thinking about that.

25         Q.   If it were possible for you to do

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 131

1   something to stop Google from sharing the

2   information that you allege, would you do it?

3           MR. STRAITE:  Objection; vague, calls for

4   expert testimony.

5           THE WITNESS:  If I could.

6   BY MR. TREVOR:

7           Q.   So if you were capable of just pressing a

8   button and getting Google to not share personal data

9   about you, would you do that?

10          A.   Yes, if there was such a button, but

11  there's not.

12          Q.   What's the basis for your belief there's

13  not?

14          A.   There's not a button on my phone that says

15  Google cannot share my information.

16          Q.   Are you familiar with the concept of

17  "private browsing"?

18          A.   No.

19          Q.   Have you ever heard of "incognito mode"?

20          A.   No.

21          Q.   Are you aware of any steps that you can

22  take to prevent a web browser from collecting

23  personal information about you?

24          MR. STRAITE:  Objection; vague.

25          THE WITNESS:  I don't know.

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 132

1    BY MR. TREVOR:

2         Q.   Have you ever done any research to

3    ascertain whether there are any methods to prevent a

4    web browser from collecting information about you?

5         MR. STRAITE:   Same objection.

6         THE WITNESS:   I don't know.

7    BY MR. TREVOR:

8         Q.   You don't know if you've ever done any

9    research?

10        A.   Oh, I've done no research, no.

11        Q.   Why have you done no research?

12        A.   I didn't know that they did.

13        Q.   And is that the case even after you filed

14   this lawsuit?

15        A.   Well, after I found out that Google was

16   sharing my information, I hired lawyers.   And that

17   was the best way I could find to prevent it.

18        Q.   Did you do any research to see if there

19   were ways that you could stop this personal

20   information you believe was being shared from being

21   shared?

22        A.   No.

23        Q.   How about research to see if you could

24   stop personal information from being collected about

25   you in the first place?

1        MR. STRAITE:  Same objection; vague.

2        THE WITNESS:  I believe in the agreement they

3   state that they are going to collect personal

4   information, but they also state they're not going

5   to share it.

6   BY MR. TREVOR:

7        Q.   I understand.

8            Did you take any steps to see if you could

9   stop them from collecting that personal

10  information -- and by "them," I mean Google -- apart

11  from hiring your lawyers?

12       MR. STRAITE:  Objection; asked and answered.

13           And you have to -- your responses, Terry,

14  have to be audible.

15       THE WITNESS:  Okay.  I hired the lawyers.

16  BY MR. TREVOR:

17       Q.   Are you familiar, Ms. Diggs, with "ad

18  blockers"?

19       A.   No.

20       Q.   Never heard of "ad blockers" before?

21       A.   No.

22       Q.   Have you done any research into ad

23  blockers?

24       A.   No.

25       Q.   And that's the case even after you filed

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 162

1    they might receive additional information from about

2    you?

3            MR. STRAITE:  Same objections.

4            THE WITNESS:  I don't know.

5    BY MR. TREVOR:

6            Q.   Do you see where it says [as read]:

7    Marketers, partners, researchers, social networks,

8    data services companies and others?

9            A.   Yes.

10           Q.   Do you understand that these would be the

11   third parties that the L.A. Times is disclosing they

12   might receive information from you?

13           MR. STRAITE:  Same objections.

14           THE WITNESS:  That's what it says.

15   BY MR. TREVOR:

16           Q.   And would you object to the L.A. Times

17   receiving information about you from a third party?

18           A.   Well, it does say -- they do state in here

19   that they may share, so they're informing me that

20   they may share.  So then I agreed to it.

21           Q.   And that sounds like you're talking about

22   the L.A. Times sharing information with other

23   people.

24               Am I understanding that correctly?

25           A.   That's what it says, right.

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 163

1    Q.    So what about the L.A. Times getting
2    information about you from somebody else, would you
3    object to that?
4    A.    Not if I had read it and agreed to it.
5    Q.    Would you take a look, it's about three
6    pages after the page we were just looking at, at
7    heading 4.2, "Tailored advertising."
8         Let me know when you're there.
9    A.    Okay.
10   Q.    Let's take a look at the very first
11   paragraph there.  It says, "When you use the
12   Services, Los Angeles Times may serve you with ads
13   based on various factors."
14        Do you see that?
15   A.    Yes.
16   Q.    Do you understand what that means?
17   MR. STRAITE:  Objection; calls for a legal
18   conclusion, calls for expert testimony.
19   THE WITNESS:  Yeah, I don't really know what
20   they're meaning there.
21   BY MR. TREVOR:
22   Q.    Do you have any idea what it means for the
23   L.A. Times to serve you with ads?
24   MR. STRAITE:  Same objections.
25   THE WITNESS:  No.

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 179

1    to say to that because I have given them my

2    information myself.

3    BY MR. TREVOR:

4         Q.    And why does it matter that you've given

5    them your information yourself?

6         A.    Because I chose to give it to them.    I

7    chose to share my information with them.

8         Q.    And as a result of that, are you

9    comfortable with Google sharing that information

10   with them as well?

11        A.    No.

12        Q.    So are you seeking through this lawsuit to

13   recover any money for information that Google shared

14   with DiCello Levitt?

15        MR. STRAITE:    Same objections.

16        THE WITNESS:    If a judge decides that I should,

17   then yes.

18   BY MR. TREVOR:

19        Q.    Are you asking a judge to make that

20   decision?

21        MR. STRAITE:    Objections, same objections.

22        THE WITNESS:    My counsel is the people that

23   decide what's going on and who's -- you know,

24   between the judge and what they tell the judge.

25             I don't understand all this and don't

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 183

1      Q.   I'm asking, if these statements did affect

2   you, not if you had seen it, but in real life they

3   did affect your expectation about how Google would

4   handle your information?

5      A.   Yes.

6      Q.   But you testified a minute ago you had

7   never seen this document before; right?

8      A.   No, you said --

9      MR. STRAITE:  Objection.

10           Counsel, are you trying to confuse the

11   witness?

12      MR. TREVOR:  Not at all.

13      THE WITNESS:  But you are.

14   BY MR. TREVOR:

15      Q.   Did you rely on these statements in this

16   document here in deciding to use Google Services?

17      MR. STRAITE:  Objection; vague.

18      THE WITNESS:  No.

19   BY MR. TREVOR:

20      Q.   Did you see these statements at any point

21   before you decided to use Google Services?

22      MR. STRAITE:  Objection; vague.

23      THE WITNESS:  No.

24   BY MR. TREVOR:

25      Q.   Do you see the sentence that says, "We

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 184

1    don't sell your personal information to anyone"?

2        A.   Yes.

3        Q.   Do you believe this statement is false?

4        A.   Yes.

5        Q.   In what way do you believe that statement

6    is false?

7        MR. STRAITE:   Objection; calls for expert

8    testimony.

9        THE WITNESS:   The RTB.

10   BY MR. TREVOR:

11       Q.   What about the RTB?

12       A.   That's why this is false.   They're stating

13   that they don't do what they do.   Twice, in one

14   paragraph.

15       Q.   What's the basis for your belief that

16   Google, in fact, does what they do -- what they

17   claim not to do?

18       MR. STRAITE:   And, again, I caution the

19   witness, you do not have to reveal information that

20   you learned from your lawyers.

21       THE WITNESS:   Isn't this a Google document?

22   BY MR. TREVOR:

23       Q.   Is that your full response?   I just want

24   to wait --

25       A.   I'm asking you, yes, is this a Google

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 195

1    it may collect information about their activity on

2    third-party sites and apps that use Google Services?

3        A.   Yes.

4        Q.   And do you understand that Google tells

5    users that it may collect information about their

6    Chrome browsing history that users have synced with

7    their Google account?

8        A.   Yes.

9        Q.   And I'll just note for the record those

10   last two bullets I read appear on page 4 of 33.

11           Ms. Diggs, do you have any objection to

12   Google's collection of any of the data that we just

13   ran through?

14       A.   No.

15       Q.   Why not?

16       A.   Because they've already -- they already

17   said that they were going to collect it, and I

18   agreed to that.

19       Q.   Take a look, please, at page 6 of 33.

20           Do you see where the document says,

21   "Provide personalized services, including content

22   and ads"?

23       A.   Yes.

24       Q.   Have you ever reviewed this part of the

25   privacy policy before?

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 211

1    Objection; assumes facts not in evidence, calls for

2    speculation.

3         THE WITNESS:  I understand.

4    BY MR. TREVOR:

5         Q.   And you've chosen not to opt out of ads

6    personalization despite understanding that doing so

7    would cause Google to share information about you

8    for purposes of personalized advertising?

9         MR. STRAITE:  Objection; assumes facts not in

10   evidence, calls for expert testimony, calls for

11   speculation.

12        THE WITNESS:  Yeah, I don't know anything about

13   these buttons really.

14   BY MR. TREVOR:

15        Q.   Do you remember earlier in the day today,

16   I asked you if there was a button that you could

17   press that would cause Google to not share any

18   information about you?

19        A.   Um-hum.

20        Q.   Do you remember telling me that you would

21   press that button?

22        A.   Oh, yes, absolutely.

23        Q.   If this were such a button, would you

24   press it?

25        A.   Yes.  But it's not.

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 212

1      Q.    How do you know it's not?

2      A.    Because it says, "Opt out of Ads

3    Personalization," and it says that advertising ID to

4    build profiles or show you personalized ads.

5          I'm not objecting to personalized ads.

6    I'm objecting to selling personal information that

7    can also ID me, like where I go and look and things

8    like that.

9      Q.    Do you believe that . . . do you believe

10   that Google would still share information about you

11   if it were not showing you personalized ads?

12         MR. STRAITE:  Objection; calls for speculation,

13   calls for expert testimony.

14         THE WITNESS:  I have no idea.

15         MR. TREVOR:  Okay.  I think I'm all set.  If we

16   could just take a five-minute break and I'll review

17   my notes to make sure I don't have any further

18   questions and then call it a day.

19         THE WITNESS:  Okay.  Great.

20         MR. TREVOR:  Let's go off the record, please.

21         MR. STRAITE:  Off the record is fine.

22         THE VIDEOGRAPHER:  We are off the record at

23   2:46 p.m.

24              (Recess taken.)

25         THE VIDEOGRAPHER:  We are back on the record at

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 213

1    2:54 p.m.

2         MR. TREVOR:  Ms. Diggs, I have no further

3    questions for you today.

4              Thank you very much for spending the day

5    with us and answering the questions.  I appreciate

6    it.

7              We will reserve all rights to cease the

8    deposition, including to hold it open; but with

9    that, I have nothing further.

10        THE WITNESS:  Okay.

11        MR. STRAITE:  Okay.  We have a couple of

12   follow-up questions just to clarify some earlier

13   testimony.

14                  EXAMINATION

15   BY MR. STRAITE:

16        Q.   Ms. Diggs, earlier you recall being asked

17   what you did to prepare for the deposition, and you

18   said there were two sessions, three hours each,

19   which the math was six, and you clarified nine.

20              So just to clarify, how many sessions --

21   prep sessions did you have with James via Zoom, was

22   it one or two prep sessions?

23        A.   Two.

24        Q.   And then how many prep sessions in person

25   with James and myself?

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 214

1          A.    One.

2          Q.    So how many total prep sessions were

3     there?

4          A.    Three.

5          Q.    Thank you.

6                Do you recall being asked during the

7     testimony conversations you had before retaining

8     DiCello Levitt, and you recall questions about work

9     you did to prepare for this deposition, including

10    those three prep sessions.

11               Do you remember those questions?

12         A.    Yes.

13         Q.    To clarify what you did in between the

14    signing up for the case and then the prep for the

15    deposition, did you have conversations with James in

16    the intervening year and a half?

17         A.    Oh, yeah.  Several.

18         Q.    Sorry.  How many?

19         A.    At least five or six, I would say.

20         Q.    And were these always James reaching out

21    to you or did you also reach out to him to inquire

22    about the status of the case?

23         A.    Oh, no, I reached out to him as well.

24         Q.    Do you recall also being asked about

25    whether your role in this case would be the same as

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 215

1    any other plaintiff?

2          A.    Yes.

3          Q.    Did you mean the same as any other

4    plaintiff who is sitting here for depositions, or

5    did you mean the same as all the class members?

6          A.    All the class members.

7          Q.    And as your role as a lead plaintiff, your

8    role so far to date, understanding that the court

9    hasn't yet decided who will be a class

10   representative, let's go through what you've done

11   for this case.

12               You testified about the preparing for the

13   deposition; is that correct?

14         A.    Um-hum.

15         Q.    And you testified about reviewing the

16   draft complaint.

17               Do you recall that testimony?

18         A.    Yes.

19         Q.    Did you review the draft complaint before

20   it was filed?

21         A.    Yes.

22         Q.    And did you also review the judge's orders

23   in this case on -- judge's order on the motion

24   for -- the motion to dismiss?

25         A.    Yes, Judge Gonzalez, correct.  Before

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 216

1    marriage, I think it was Gonzalez.

2         Q.    And do you recall also allowing your

3    lawyers to look through your personal e-mails?

4         A.    Yes.

5         Q.    And do you recall allowing your lawyers to

6    image your two devices?

7         A.    Yes.

8         Q.    And you testified earlier that you also

9    mailed your iPhone to your lawyers recently?

10        A.    Twice I have mailed my phones.

11        Q.    That's what I wanted to clarify.

12        A.    Yes.

13        Q.    So the most recent, was that just for

14   evidence preservation or was that the imaging you

15   were talking about last year?

16        A.    No, that was -- the imaging was the phone

17   last year and then I sent this phone to you guys.

18        Q.    So the most recent phone you sent was just

19   for safekeeping?

20        A.    Yes.

21             MR. STRAITE:  Nothing further at this time.

22             MR. TREVOR:  Nothing more from me.

23             THE VIDEOGRAPHER:  Okay.  That concludes

24   today's videotaped deposition of Terry Diggs.  And

25   we are off the record at 2:58 p.m.

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 218

1              I, the undersigned, a Certified Shorthand

2      Reporter of the State of California, do hereby

3      certify:

4              That the foregoing proceedings were taken

5      before me at the time and place herein set forth;

6      that any witnesses in the foregoing proceedings,

7      prior to testifying, were administered an oath; that

8      a record of the proceedings was made by me using

9      machine shorthand which was thereafter transcribed

10     under my direction; that the foregoing transcript is

11     a true record of the testimony given.

12              Further, that if the foregoing pertains to

13     the original transcript of a deposition in a Federal

14     Case, before completion of the proceedings, review

15     of the transcript (X) was ( ) was not requested.

16              I further certify that I am neither

17     financially interested in the action nor a relative

18     or employee of any attorney of any party to this

19     action.

20              IN WITNESS WHEREOF, I have this date

21     subscribed my name.

22     Dated:  April 26, 2023

23

24

25              ANRAE WIMBERLEY, CSR No. 7778