# **Exhibit 7**

1          UNITED STATES DISTRICT COURT

2          NORTHERN DISTRICT OF CALIFORNIA

3               SAN JOSE DIVISION

4                  --oOo--

5

6  IN RE GOOGLE RTB CONSUMER     Case No.

7  PRIVACY LITIGATION            4:21-CV-02155-LHK-VKD

8  _____/

9

10

11

12

13      HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

14

15

16

17      VIDEO-RECORDED DEPOSITION OF RETHENA GREEN

18            SAN FRANCISCO, CALIFORNIA

19           THURSDAY, APRIL 20, 2023

20

21

22

23  Reported by:

24  Anrae Wimberley, CSR No. 7778

25  Job No. CS5819744

Page 2

1                 UNITED STATES DISTRICT COURT

2                NORTHERN DISTRICT OF CALIFORNIA

3                     SAN JOSE DIVISION

4                         --oOo--

5

6    IN RE GOOGLE RTB CONSUMER      Case No.

7    PRIVACY LITIGATION             4:21-CV-02155-LHK-VKD

8    _____/

9

10

11

12       HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

13

14

15

16

17            Transcript of video-recorded deposition

18   of RETHENA GREEN, taken at Cooley, LLP, Three

19   Embarcadero Center, 20th Floor, San Francisco,

20   California 94111, and also via Zoom videoconference,

21   beginning at 9:15 a.m. and ending at 3:02 p.m. on

22   Thursday, April 20, 2023, before Anrae Wimberley,

23   Certified Shorthand Reporter No. 7778.

24

25

```
                                                    Page 3

 1    APPEARANCES:

 2    For the Plaintiffs and the Proposed Class:

 3              DICELLO LEVITT LLP

 4              BY:  JAMES ULWICK, ESQ.

 5                   DAVID A. STRAITE, ESQ. (VIA ZOOM)

 6              10 North Dearborn Street, Sixth Floor

 7              Chicago, Illinois 60602

 8              (312) 214-7900

 9              julwick@dicellolevitt.com

10              dstraite@dicellolevitt.com

11

12    For Defendant Google, Inc.:

13              COOLEY, LLP

14              BY:  KELSEY R. SPECTOR, ESQ.

15              Three Embarcadero Center, 20th Floor

16              San Francisco, California 94111

17              (415) 693-2000

18              kspector@cooley.com

19

20    Also present:

21              TED HOPPE, Videographer

22              VERITEXT LEGAL SOLUTIONS

23                      --oOo--

24

25
```

Page 4

```
 1                    I N D E X
 2   EXAMINATION BY:                         PAGE
 3   MS. SPECTOR                                7
 4   MR. ULWICK                               236
 5
 6                    --oOo--
 7
 8               E X H I B I T S
 9   EXHIBIT          DESCRIPTION            PAGE
10   Exhibit 1    Google LLC's Notice of        9
                  Deposition of Rethena
11                Green; 2 pages
12   Exhibit 2    LinkedIn profile of Rethena   30
                  K Green; 1 page
13
     Exhibit 3    Consolidated Class Action    107
14                Complaint; 139 pages
15   Exhibit 4    Document entitled "Exhibit   146
                  20"; 34 pages
16
     Exhibit 5    Screenshot; Bates stamped    154
17                PLFS RTB GREEN 00017323
18   Exhibit 6    Zoomed-in screenshot of      154
                  Exhibit 5; 1 page
19
     Exhibit 7    E-mail dated November 22,    165
20                2021; Bates stamped
                  PLFS_RTB_GREEN_00016896
21
     Exhibit 8    Screenshot; 3 pages          173
22
     Exhibit 9    Screenshot; 3 pages          174
23
     Exhibit 10   Privacy Policy from          180
24                Fidelity.com; 17 pages
25   Exhibit 11   Chrome my activity; 3 pages  185
```

Page 5

|  | E X H I B I T S  (Cont'd) | |
| 1 | | |
| 2 | EXHIBIT | DESCRIPTION | PAGE |
| 3 | Exhibit 12 | Navy Federal Online Privacy Policy; 3 pages | 189 |
| 4 | | |
| 5 | Exhibit 13 | Screenshot from Galaxy phone; Bates PLFS_RTB_GREEN_00017320 | 197 |
| 6 | | |
| 7 | Exhibit 14 | Screenshot from laptop computer; Bates stamped PLFS_RTB_GREEN_00017341 | 199 |
| 8 | | |
| 9 | Exhibit 15 | Screenshot from laptop computer; Bates stamped PLFS_RTB_GREEN_00017345 | 200 |
| 10 | | |
| 11 | Exhibit 16 | Screenshot from computer; Bates stamped PLFS_RTB_GREEN_00017335 | 202 |
| 12 | | |
| 13 | Exhibit 17 | Screenshot from computer; Bates stamped PLFS_RTB_GREEN_00017336 | 204 |
| 14 | | |
| 15 | Exhibit 18 | Screenshot from Galaxy phone; Bates stamped PLFS_RTB_GREEN_00017329 | 210 |
| 16 | | |
| 17 | Exhibit 19 | Document entitled "Exhibit 4, Google Terms of Service"; 19 pages | 213 |
| 18 | | |
| 19 | Exhibit 20 | E-mail from Google to ███████@gmail.com; 2 pages | 215 |
| 20 | | |
| 21 | Exhibit 21 | Document entitled "Exhibit 22, Personalized Advertising"; 8 pages | 217 |
| 22 | | |
| 23 | Exhibit 22 | Document entitled "How Google uses information from sites or apps that use our services; 2 pages | 233 |
| 24 | | |
| 25 | | --oOo-- | |

```
                                               Page 6
 1              THURSDAY, APRIL 20, 2023;

 2              SAN FRANCISCO, CALIFORNIA;

 3                   9:15 A.M.

 4                     - - -

 5      THE VIDEOGRAPHER:  Good morning.  We are going

 6   on the record.  The time now is 9:15 on April 20th,

 7   2023.

 8              This is Media Unit 1 in the video

 9   deposition of Rethena Green in regards to Google RTB

10   Consumer Privacy Litigation, Case No. 4:21-cv-02155

11   and Case No. 5:21-cv-02155.

12              This video deposition is taking place at

13   Three Embarcadero Center in San Francisco.

14              My name is Ted Hoppe and I represent

15   Veritext and I'm the videographer.

16              Counsel, could you please voice identify

17   yourselves for the record?

18      MS. SPECTOR:  Kelsey Spector on behalf of

19   Defendant Google.

20      MR. ULWICK:  James Ulwick on behalf of the

21   plaintiffs.

22      MR. STRAITE:  David Straite on behalf of

23   plaintiffs.

24                   RETHENA GREEN,

25    sworn in personally as a witness by the Certified
```

1    A.    Uh-hum.

2    Q.    Great.

3    A.    Yes.

4    Q.    Yeah, yeah, yeah.  No, good job.  Great.

5         So moving a bit away from your educational

6    background, I want to understand whether or not

7    you've been involved in any litigations previously.

8         So have you been involved as a party in

9    another litigation other than this current case?

10    A.    I have not been involved in any litigation

11    other than this case.

12    Q.    Okay.  Okay.  And -- so let's move to this

13    case then.

14         Did you have prior relationships with any

15    of your current counsel?

16    A.    No.

17    Q.    No.  Okay.

18         And -- so how did you find out about this

19    case?

20    A.    I was surfing the web, I was on the

21    website, and I just happened to see it and it

22    sounded interesting, and I just clicked on it to see

23    what it was about.

24    Q.    Great.

25         And when you say you "happened to see it,"

1   what was it that you saw?

2          A.    I seen about a case that -- about --

3   against Google, and it sounded interesting to me, so

4   I just clicked to see what it was about.

5          Q.    Was it an online advertisement?

6          A.    It was an online advertisement.

7          Q.    Okay.  And where did you see this ad?

8          A.    On Facebook.

9          Q.    Okay.  And when you clicked the ad,

10  what -- after you clicked the ad and learned a

11  little bit more about this case, what did you do

12  next?

13         A.    I entered my information.

14         Q.    Okay.  And were you then contacted by

15  attorneys?

16         A.    I was contacted by an attorney.

17         Q.    Okay.  And you don't -- we can talk about

18  this, but you don't have to tell me what they said,

19  but who contacted you first?

20         A.    James Ulwick.

21         Q.    Okay.  And were you seeking legal advice

22  at the time that James reached out to you?

23         A.    I was seeking information on what I had

24  read on the Facebook post.

25         Q.    Okay.  And what further information were

1    you seeking?

2        A.    I wanted to hear about the case that they

3    were trying to, I guess, to have against Google.

4        Q.    Okay.  And what specifically did you want

5    to know?

6        A.    I just wanted to know what it was about.

7        Q.    Okay.  And what do you understand -- what

8    did you understand at the time the case to be about?

9        A.    I understood that the case was that Google

10   was selling my personal information -- selling

11   personal information to third parties.

12       Q.    Okay.  And how?

13       A.    Well, I asked questions and the attorney

14   explained what they had found out.

15       Q.    Okay.  So let's talk a little bit about

16   your engagement with counsel.

17            Are you compensating your counsel in any

18   way?

19       A.    No.

20       Q.    Okay.  Do you expect to be compensated?

21       A.    No.

22       Q.    Okay.  And let's talk a little bit about

23   your preparation for this deposition.

24            Did you meet with any attorneys?

25       A.    Yes.

Page 19

1          Q.    With whom?

2          A.    I met with James Ulwick and David Straite.

3          Q.    Okay.  For how long?

4          A.    I'm not sure what you mean, how long.

5          Q.    Like a few hours, a couple days?

6          A.    A few hours --

7          Q.    Okay.

8          A.    -- a few days.

9          Q.    When?

10         A.    I met with -- I met with them about three

11    days ago --

12         Q.    Okay.

13         A.    -- about -- for a few hours.

14         Q.    Great.

15               And did you review any documents that

16    refreshed your recollection?

17         A.    Yes.

18         Q.    Which ones?

19         A.    I reviewed the complaint.

20         Q.    Okay.

21         A.    And I reviewed the deposition for me.

22               That's all I can remember at the moment.

23         Q.    Okay.  Great.

24               And did you communicate with anyone other

25    than your attorneys about this deposition?

Page 20

1        A.   No.
2        Q.   Okay.   No other plaintiffs?
3        A.   No.
4        Q.   Anyone else?
5        A.   No.
6        Q.   Okay.  Great.
7             And you understand that your attorneys
8    have produced some documents to us that you provided
9    to them; is that correct?
10        A.   Yes.
11        Q.   Okay.  And what did you do to search for
12    these documents?
13        A.   What did I do to search for the documents?
14        Q.   Yes.
15        A.   I don't believe I -- well, they asked
16    for --
17        MR. ULWICK:  Well, I'm going to caution you not
18    to divulge the contents of any communications
19    between yourself and your attorneys.
20    BY MS. SPECTOR:
21        Q.   So let me rephrase the question then.
22             Where did you search for documents, on
23    your cell phone, on your computer?
24        A.   I searched for documents on my cell --
25        Q.   Okay.

1      A.    -- and my computer.

2      Q.    Anywhere else?

3      A.    No.

4      Q.    Okay.  In your e-mails?

5      A.    Well, that's on my cell --

6      Q.    Okay.

7      A.    -- yeah.

8      Q.    Okay.  In your Gmail account?

9      A.    Yes.

10          MR. ULWICK:  Objection; foundation.

11     BY MS. SPECTOR:

12     Q.    Okay.  And multiple -- strike that.

13          Did you search -- strike that.

14          I understand you have multiple Gmail

15     accounts; is that correct?

16     A.    Yes.

17     Q.    Did you search for documents in each of

18     those accounts?

19     A.    I searched for documents in my -- yes, in

20     my Gmail accounts.

21     Q.    Okay.  Great.

22          Moving on, I want to understand a little

23     bit about how you surf the Internet.  You said

24     earlier you surf the Internet.

25          So generally, how often do you say you use

1    your views towards online privacy.

2         How concerned would you say you are about

3    personal privacy while you're using the Internet?

4        MR. ULWICK:  Objection; vague.

5        THE WITNESS:  I'm concerned about my privacy

6    online.

7    BY MS. SPECTOR:

8        Q.   Okay.  Why?

9        A.   Because I don't want everyone to know my

10   information -- my private information.

11       Q.   Okay.  When you say, "private

12   information," what do you mean?

13       A.   Well, anything that's about me.

14       Q.   Your name?

15       A.   My name.

16       Q.   Your date of birth?

17       A.   My date of birth.

18       Q.   The city in which you live?

19       A.   That's -- yes, that would be included in

20   my private information.

21       Q.   What else would be included in your

22   private information?

23       A.   My gender, my age.

24       Q.   Anything else?

25       A.   Everything about me.

1      Q.   Is there anything about you that would not

2   be private?

3      MR. ULWICK:  Objection; calls for a legal

4   conclusion.

5      THE WITNESS:  No.  Everything about me should

6   be private.  It's private to me.

7   BY MS. SPECTOR:

8      Q.   What about facts that you post on

9   Facebook, do you think, for example, a picture that

10  you posted on Facebook, do you think that's private?

11     A.   It is because I just post to my friends.

12     Q.   Okay.  Do you have research -- have you --

13  strike that.

14          Have you ever researched any ways to

15  protect your privacy online?

16     A.   No.

17     Q.   Why not?

18     A.   I didn't really think I needed to.

19     Q.   Have you -- strike that.

20          Why not?

21     A.   I didn't think I needed to.

22     Q.   Okay.  Have you researched any ways to

23  protect your privacy after joining this lawsuit?

24     A.   No.

25     Q.   And why not?

1          A.   I don't think I needed to.  I don't

2   think -- I don't think I needed to research how to

3   protect my privacy because no one should have my

4   information.

5          Q.   But aren't you alleging that Google is

6   sharing your information?

7          A.   Yes.

8          Q.   Have you done any research to try to find

9   ways to stop Google from allegedly sharing your

10  information?

11         A.   Yes, I did.

12         Q.   Okay.  And what research did you do?

13         A.   I didn't -- oh, I'm sorry, I didn't

14  understand your question.

15         Q.   Oh, I was saying --

16         A.   Say it again?

17         Q.   So I was saying, I understand that you're

18  alleging that Google is sharing your information; is

19  that right?

20         A.   Yes.

21         Q.   Okay.  And since you joined this suit and

22  made those allegations, have you done any research

23  to find ways from Google -- to prevent Google from

24  allegedly sharing your information?

25         A.   No, I haven't done any research how to

1    stop Google from sharing my information.

2        Q.    Why not?

3        A.    Because I filed suit to kind of just stop

4    Google from sharing my information.

5        Q.    Okay.  So we'll talk about this suit in a

6    little bit.  But let's go back to your general

7    privacy habits.

8              Have you ever talked with your family

9    about online privacy issues?

10        MR. ULWICK:  Objection; vague.

11        THE WITNESS:  Yes, I have.

12    BY MS. SPECTOR:

13        Q.    About what?

14        A.    How to make a strong password is basically

15    the only thing I might have probably discussed with

16    a family member.

17        Q.    Okay.  And who did you talk to about

18    passwords?

19        MR. ULWICK:  Objection; vague.

20        THE WITNESS:  My daughter.

21    BY MS. SPECTOR:

22        Q.    Okay.  Have you talked to your daughter

23    about any other online privacy concerns?

24        A.    No.

25        Q.    Your mom?

```
 1        A.    No.

 2        Q.    Your grandma?

 3        A.    No.

 4        Q.    Okay.  Would you say you're more or less

 5    concerned than most people about your online

 6    privacy?

 7        MR. ULWICK:  Objection; vague.  Objection;

 8    literally calls for speculation.

 9        THE WITNESS:  I believe I'm concerned.  I

10    believe I'm concerned just as much as everyone else.

11    BY MS. SPECTOR:

12        Q.    Okay.  And why do you think that?

13        A.    Because I believe that everybody should be

14    concerned about their private information.

15        Q.    And why should they be concerned about

16    their private information online?

17        MR. ULWICK:  Objection; calls for speculation.

18        THE WITNESS:  Because it's about you.  It's

19    your information, and everyone shouldn't know

20    everything about you or be able to find that

21    information easily online.

22    BY MS. SPECTOR:

23        Q.    And do you think that people can find

24    information about you easily online?

25        A.    Not really, I just think that if it's
```

Page 47

1  given to a third party, then the third party knows,

2  you know, how to get -- has that information.

3          I don't think that it's easy for a person

4  like me to get that information.

5      Q.   Okay.  And do you take any steps to try to

6  protect your privacy online?

7      MR. ULWICK:  Objection; vague.

8      THE WITNESS:  I just try to have a strong

9  password.  I don't know very much on how to do

10  anything else.

11  BY MS. SPECTOR:

12     Q.   Is your Facebook private?

13     A.   My Facebook is private.

14     Q.   Is your Instagram private?

15     A.   My Instagram is private.

16     Q.   Okay.  Do you review privacy settings on

17  your social media accounts regularly?

18     MR. ULWICK:  Objection; vague.

19     THE WITNESS:  No.

20  BY MS. SPECTOR:

21     Q.   Okay.  Have you ever reviewed your privacy

22  settings in your Facebook, for example?

23     MR. ULWICK:  Objection; vague.

24     THE WITNESS:  I don't know what you mean by the

25  "privacy settings."

Page 55

1        Q.   Have you visited them in the past?

2        MR. ULWICK:   Same objections.

3        THE WITNESS:   Probably.

4   BY MS. SPECTOR:

5        Q.   Okay.   Do you remember which specific

6   sites?

7        A.   I can't recall which specific sites.

8        Q.   Okay.   Nickelodeon?

9        A.   Maybe, but I can't recall which sites.

10       Q.   Okay.   Okay.

11            So let's talk really quickly about

12   where -- what devices you use to browse the

13   Internet.

14            Do you browse the Internet from your cell

15   phone?

16       A.   Yes.

17       Q.   Okay.   From a computer?

18       A.   Yes.

19       Q.   Okay.   A personal computer?

20       A.   Yes.

21       Q.   Okay.   A work computer?

22       A.   No.

23       Q.   Okay.   Do you have a work cell phone?

24       A.   No.

25       Q.   Okay.   So are there any other devices

Page 56

1    other than your personal cell phone and personal

2    computer that you use to browse the Internet?

3         A.    No.

4         Q.    Okay.  And what web browsers do you use on

5    your cell phone?

6         A.    I use Google Chrome.

7         Q.    Okay.  Any others?

8         A.    No.

9         Q.    Okay.  What about on your personal

10   computer?

11        A.    No.  I use Google Chrome on my personal

12   computer.

13        Q.    And no other web browsers on your personal

14   computer?

15        A.    No.

16        Q.    Okay.  Have you ever tried any other web

17   browsers?

18        MR. ULWICK:  Objection; vague.

19        THE WITNESS:  I probably have.  I can't recall

20   if -- what or when.

21   BY MS. SPECTOR:

22        Q.    Okay.  Have you ever used Firefox?

23        A.    I recall using Firefox before.

24        Q.    Okay.  Where did you use that?

25        A.    Probably on the personal computer.

1      Q.    Like what sites, do you know?

2      A.    I've seen them on Facebook.

3      Q.    Okay.

4      A.    I've seen them on Instagram.  I have seen

5  them on CNN.

6      Q.    Okay.  Have you ever seen them on any

7  health-related sites?

8      A.    I can't really recall.

9      Q.    Okay.

10      A.    I can't specifically recall any

11  health-related sites.

12      Q.    Okay.  So let's take a break from ads and

13  let's talk about your Google accounts.

14            I understand you have three Google

15  accounts; is that correct?

16      A.    Yes.

17      Q.    Okay.  And what are they?

18      A.    You want the addresses?

19      Q.    Yes.

20      A.    Okay.

21            Well, the first one, one of them is

22  ██████████████.

23      Q.    Yeah.

24      A.    And then there's one that is ███████████.

25      Q.    Okay.

1    A.    And then there's one that's ███████████.

2    Q.    Okay.  And do you have any other Google

3  accounts?

4    A.    No.

5    Q.    Okay.  Do you use these accounts for

6  different purposes?

7    A.    I do.

8    Q.    Why -- or explain, please.

9    A.    I have one that I use daily, I would say,

10 that I just get most of my e-mails in.

11    Q.    Which one is that?

12    A.    That would be ████████.

13    Q.    Okay.  And let's talk about ████████ for

14 now.

15          Do you stay logged into ████████ --

16    MR. ULWICK:  Objection; vague.

17 BY MS. SPECTOR:

18    Q.    -- on your Chrome browser?  Sorry.

19    MR. ULWICK:  Objection; vague.  Objection;

20 calls for expert testimony.

21    THE WITNESS:  When you say, "logged in," like

22 on my phone, can I just pull it up?

23 BY MS. SPECTOR:

24    Q.    Yeah.

25    A.    Yes.

1          MR. ULWICK:  Objection; vague.

2          THE WITNESS:  Have I ever stopped using a

3     product that I started?

4     BY MS. SPECTOR:

5          Q.    Yeah.

6          A.    I can't recall anything that I've

7     stopped --

8          Q.    Okay.

9          A.    -- after I've started.

10         Q.    Okay.  Are there any other Google products

11    that you use that I haven't mentioned today?

12         A.    I can't think of any other that -- no.

13         Q.    Okay.  So let's talk about your devices a

14    little bit.  I said we'd circle back to that.

15              So I understand you have a computer; is

16    that right?

17         A.    Yes.

18         Q.    Okay.  What kind of computer do you own?

19         A.    I believe it's a Dell computer.  I believe

20    so.

21         Q.    Is it a laptop?

22         A.    It's a laptop.

23         Q.    Okay.  How long have you had the computer?

24         A.    It's been a few years.

25         Q.    Okay.  And we've talked a little bit about

1    this in different questions, but can you just

2    explain to me generally how you use your computer?

3         A.    I don't use it very often.  I have used it

4    in the past.  I just don't really use it very often.

5              So not necessarily surfing the web.  I

6    might have used it for work to watch a video or

7    something, I believe.  I believe that might be why I

8    used it.  But I don't use it very often.

9         Q.    Okay.  Do you ever use it to surf the web?

10        A.    I have used it to surf the web.  I just

11   primarily don't use that -- use it to surf the web.

12        Q.    Okay.  Are there certain circumstances

13   when you would use your computer instead of your

14   phone to surf the web?

15        A.    I can't think of . . . I can't think of a

16   moment where it was -- differentiate why I would use

17   the -- I can't -- I probably have, but I can't think

18   of why I would use it, you know, one or the other

19   specifically.

20        Q.    Got it.

21              And you do check your e-mails sometimes on

22   your computer; is that right?

23        A.    I have checked my e-mails on my computer.

24        Q.    Okay.  In what circumstances would you

25   check your e-mail on your computer instead of your

1    phone?

2        A.    If I happen to be on it at the moment,

3    then I would check the e-mail because I'm there.

4    Basically, yeah.

5        Q.    Does anyone else in your family use this

6    computer?

7        MR. ULWICK:  Objection; vague.

8        THE WITNESS:  My son has used it before.

9    BY MS. SPECTOR:

10       Q.    Okay.  What has he used it for, do you

11   know?

12       MR. ULWICK:  Objection; calls for speculation.

13       THE WITNESS:  Probably to watch videos.

14   BY MS. SPECTOR:

15       Q.    Okay.  And which son is this?

16       A.    This would be the youngest son.

17       Q.    The youngest son.  Okay.

18            And do you remember when he used the

19   computer?

20       A.    I want to say about three months ago

21   about.  I want to say about three months ago.

22       Q.    Okay.  And does he have a Google account?

23       A.    Yes.

24       Q.    Okay.  Do you know if he logged into his

25   Google account on your computer?

1    A.    I don't know.

2    Q.    Okay.  Has anyone else used the computer?

3    A.    It would just be the son.

4    Q.    Okay.  Does your daughter have her own

5  computer?

6    A.    Yes, she has her own computer.

7    Q.    Okay.  What about your mom?

8    A.    My mom does not have a computer.

9    Q.    Okay.  And she doesn't use computers?

10    A.    She doesn't use computers.

11    Q.    Okay.  I'm guessing, same for your

12  grandma?

13    A.    Yes, grandma doesn't use a computer.

14    Q.    Okay.  I expected as much.

15          Okay.  So let's talk about your phone a

16  little bit.

17          Is your phone a smartphone?

18    A.    Yes.

19    Q.    Okay.  And what kind of phone is it, do

20  you know?

21    A.    A Samsung Galaxy.

22    Q.    Okay.  Do you know if it uses the Android

23  operating system?

24    A.    Yes.

25    Q.    Okay.  How long have you had this phone?

1      A.    Well, I have a new phone now.

2      Q.    Oh, okay.   When did you get this phone?

3      A.    I want to say three weeks --

4      Q.    Okay.

5      A.    -- two -- two to three -- about three

6   weeks, I'd say.

7      Q.    Okay.   And why did you get a new phone?

8      A.    I got a new phone because my son needed --

9   his phone was broken and he needed a new phone, so I

10   gave him my old phone.

11      Q.    Okay.   Got it.

12            And when you gave your son your old phone,

13   did you log out of all of your apps?   Did you log

14   out of your Google account?

15      A.    Yes.

16      Q.    Okay.   What did you do to make sure of

17   that?

18      A.    I set it to a factory reset.

19      Q.    Great.

20            And before you had -- sorry, is it a

21   Samsung Galaxy?

22      A.    Um-hum.

23      Q.    Okay.   What phone did you have before the

24   Samsung Galaxy?

25      A.    Before the one that I --

Page 98

1    Q.    Have now.

2    A.    I had a Samsung Galaxy.

3    Q.    Oh, so you've had two Samsung Galaxies?

4    A.    Yes.

5    Q.    Okay.  And -- so for the Samsung Galaxy

6    that you gave to your son, how long did you have it

7    before you gave it to him?

8    A.    I've had it several years.  I'm not sure

9    of the time.  More than two years.

10    Q.    Okay.  And that Samsung Galaxy also ran on

11    the Android operating system; is that right?

12    A.    Yes.

13    Q.    Okay.  Have you ever had an iPhone?

14    A.    No.

15    Q.    Okay.  So, again, we've talked about this

16    kind of in passing with other questions, but can you

17    just tell me generally how you use your smartphone?

18    MR. ULWICK:  Objection; vague.

19    THE WITNESS:  I go to social media.  I check my

20    banking apps.  I check my e-mails.  I might look up

21    things.

22    BY MS. SPECTOR:

23    Q.    Surf the Internet?

24    A.    Surf the Internet.

25    Q.    Okay.  Let's talk about the apps that you

1    exhibit.  I think this is Exhibit 3.

2              (Deposition Exhibit 3 was marked.)

3    BY MS. SPECTOR:

4         Q.   Do you recognize this document?

5         A.   Yes.

6         Q.   What do you understand it to be?

7         A.   This is, I guess -- it says, "Consolidated

8    Class Action Complaint."  But I have seen this

9    document.

10        Q.   Okay.  Do you understand that this is the

11   complaint that is currently operative in this case?

12        A.   Yes.

13        Q.   Okay.

14             And did you review this document before it

15   was filed with the court?

16        A.   Yes, I reviewed this document.

17        Q.   Okay.  And you don't have to tell me the

18   substance of any comments you gave, but did you

19   provide any comments or ask any questions before it

20   was filed?

21        A.   I talked to my -- I talked to my attorney.

22        Q.   Before it was filed with the court?

23        A.   No, but I talked to my attorney about

24   this.

25        Q.   When?

1          A.    I'm not sure.  What do you mean, before --

2          Q.    So I'm just asking, did you review and

3    provide comments or talk to your attorney about this

4    document before it was filed with the court or

5    after?

6          A.    After it was filed with the court.

7          Q.    Okay.

8                So you didn't review it before it was

9    filed?

10         A.    I can't recall when I reviewed it.  I'm

11   sorry.

12         Q.    That's okay.

13               And you understand that you're named as

14   the plaintiff in this case; is that correct?

15         A.    Yes.

16         Q.    Okay.  And what does that mean to you?

17         A.    I'm not sure.  What do you mean what does

18   it mean to me?  Do I have a complaint?

19         Q.    Yes.

20         A.    Yes, I do.

21         Q.    Okay.  And what do you understand your

22   role is as a named plaintiff in this case?

23         A.    My role is --

24         Q.    Yes.

25         A.    -- I guess to represent those that can't

1  be here, the hundreds of millions of people that

2  can't be here --

3      Q.    Okay.

4      A.    -- I guess I'm representing them.

5      Q.    Okay.  So before we get into this very

6  long document, can you tell me --

7      A.    Yes.

8      Q.    -- can you tell me in your own words why

9  you're suing Google?

10      A.    Well, I'm suing Google because they're

11  selling my personal information, and they're

12  disclosing my personal information to third parties.

13      Q.    Okay.  And when you say, "personal

14  information," what do you mean?

15      A.    Personal information, everything about me.

16  Everything that Google knows about me, information

17  they got about me, they are selling it and exposing

18  it to third parties.

19      Q.    And what specific pieces of information do

20  you think -- strike that.

21          What specific pieces of personal

22  information do you believe Google is disclosing or

23  selling?

24      A.    Okay.  So it's everything that kind of --

25  I believe, everything that they can use to identify

1    me.

2          So everything.  Everything that they have

3    on me, I believe that Google is exposing to other

4    people, other companies.

5          Q.    Can you give me some -- oh, sorry.

6          Can you give me some examples?

7          A.    Some examples?

8          MR. ULWICK:  Counsel, I'm going to object based

9    on Rifkind v. Superior Court because this is an

10   improper contention question.

11   BY MS. SPECTOR:

12         Q.    You can answer.

13         A.    So they are -- examples of the information

14   that they have -- that they exposed on me?

15         Q.    Yes.

16         A.    Okay.  My IP address, I believe they

17   exposed my address in conjunction of everything

18   else.  My age, the fact that I'm a woman, all the

19   information.

20         Q.    So when you say, "address," do you mean

21   your residential address?

22         MR. ULWICK:  Same objections.  Objection; calls

23   for expert testimony.

24         THE WITNESS:  I guess, yes.

25   BY MS. SPECTOR:

1       Q.    Okay.   Do you think they exposed your

2   e-mail address?

3       MR. ULWICK:  Objection; calls for expert

4   testimony.

5       THE WITNESS:  I believe that they have.

6   BY MS. SPECTOR:

7       Q.   Okay.   What about your name?

8       MR. ULWICK:  Same objections.

9       THE WITNESS:  I believe in conjunction with

10  everything that my name can be found out.

11  BY MS. SPECTOR:

12      Q.    Why?

13      A.    Because it's a lot of information.   It's

14  so much that I believe that, you know, if you put it

15  all together, they can know that, hey, this is

16  Rethena.

17      Q.    Do you think that Google has shared your

18  name itself?

19      MR. ULWICK:  Objection; calls for expert

20  testimony.

21      THE WITNESS:  I don't know.

22  BY MS. SPECTOR:

23      Q.    Okay.   Do you think that Google is sharing

24  your web browsing history?

25      MR. ULWICK:  Same objections.

1         THE WITNESS:   I believe so.

2    BY MS. SPECTOR:

3         Q.    Why?

4         MR. ULWICK:  Same objection.

5         THE WITNESS:  I just believe that they're

6    sharing everything of me.  Just the things that I

7    see, the ads that I see, I think that they are

8    sharing my information.

9    BY MS. SPECTOR:

10        Q.   So what about the ads that you see makes

11   you think that Google is sharing everything that it

12   has on you?

13        MR. ULWICK:  Objection; calls for expert

14   testimony, vague.

15        THE WITNESS:  Okay.  So just repeat it just

16   once again for me, please.  Sorry.

17   BY MS. SPECTOR:

18        Q.   Yeah.

19             So what about the ads that you have seen

20   makes you think that Google is sharing all of the

21   personal information that it has about you?

22        MR. ULWICK:  Same objections.

23        THE WITNESS:  Some of the ads are specifically

24   catered to me.  They're just specific to me,

25   something that I think that they might think that

Page 119

1  BY MS. SPECTOR:

2         Q.    Yes.

3         A.    I don't know how they're doing it.  I

4  don't know how they're -- you know, they're doing

5  it.  I'm not savvy in that way as far as computers

6  or the Internet or any of those things, but I know

7  that they're selling it and giving it to third

8  parties.

9         Q.    Okay.  Are you familiar with real-time

10  bidding, or RTB?

11         MR. ULWICK:  Objection; vague.

12         THE WITNESS:  I've heard of real-time bidding.

13  BY MS. SPECTOR:

14         Q.    And what do you understand it to be?

15         A.    What I understand it to be is that Google

16  is selling my personal information to the highest

17  bidder so that they can advertise to me

18  specifically.

19         Q.    Okay.  And who do you think is bidding?

20         MR. ULWICK:  Objection; calls for expert

21  testimony, calls for speculation.

22         THE WITNESS:  I don't know.

23  BY MS. SPECTOR:

24         Q.    Okay.  Do you believe that Google is

25  sharing your personal information without your

1    consent?

2         MR. ULWICK:  Objection; calls for a legal

3    conclusion.

4         THE WITNESS:  Yes, I believe they're sharing my

5    information without my consent.

6    BY MS. SPECTOR:

7         Q.   Okay.  So let's take a step back and talk

8    a little bit more about what you understand

9    "personal information" to be.

10             Do you consider any specific pieces of

11    your personal information to be particularly

12    sensitive?

13        A.   No, it's all sensitive.

14        Q.   Is any information more sensitive than

15    others?

16        A.   No, it's all sensitive equally to me.

17        Q.   Okay.  Would you say your IP address is as

18    sensitive as your birth date?

19        A.   Yes.

20        Q.   Okay.  Do you consider cookies to be

21    personal information?

22        A.   I'm not really even sure of what cookies

23    are.  Yeah, I believe -- yeah, I've heard of

24    cookies, I kind of got an idea, but I'm not really

25    sure what cookies do.

1    Q.   Okay.  So you don't know if it is personal

2  information?

3    A.   It's still -- I believe it's personal

4  information, but I don't -- I can't say if it's more

5  than any other because I'm not really sure what

6  cookies do.

7    Q.   Okay.  So why do you say cookies are

8  personal information?

9    A.   I'm not really sure what they do, so I

10  can't say one way or another that it's personal

11  information or not.

12    Q.   Okay.  Would you say that your general

13  location in Nevada is as sensitive as your name?

14    A.   It's all sensitive to me.  Yeah, my

15  location is sensitive to me.

16    Q.   Okay.  Have you ever seen an ad online

17  that was targeted to information that you think is

18  sensitive?

19    MR. ULWICK:  Objection; vague.

20    MS. SPECTOR:  Strike that.  Let me strike that

21  actually.

22  BY MS. SPECTOR:

23    Q.   Have you ever seen an ad online that you

24  believed was about sensitive information?

25    MR. ULWICK:  Objection; vague.  Objection;

Page 122

1    calls for speculation.

2         THE WITNESS:  If you can kind of rephrase it

3    differently or whatever.  You said an ad that was

4    specific to sensitive information?

5    BY MS. SPECTOR:

6         Q.    Yeah.

7         A.    I don't understand -- I don't kind of

8    understand.  If you can --

9         Q.    So you're saying that certain personal

10   information is sensitive; right?

11        A.    Um-hum.

12        MR. ULWICK:  Objection; misstates the prior

13   testimony.

14   BY MS. SPECTOR:

15        Q.    Have you ever seen an ad online about that

16   sensitive information?

17        MR. ULWICK:  Objection; vague.  Objection;

18   calls for speculation.

19        THE WITNESS:  I can't really say yes or no

20   because I'm not sure what you're saying.  An ad

21   saying is this your information or do you think that

22   your information is sensitive?

23   BY MS. SPECTOR:

24        Q.    No.  Let me try again.

25        A.    Yeah, yeah.

1      Q.    Let's try again.  Let's try again.

2            Have you ever seen an online ad about --

3    targeted to information that you think is sensitive

4    and personal to you?

5         MR. ULWICK:  Objection; vague.  Objection;

6    calls for speculation.

7         THE WITNESS:  I'm sorry, I'm trying, but

8    I'm . . .

9            Okay.  Have I ever seen an ad that is

10   asking me to enter my personal information?

11   BY MS. SPECTOR:

12      Q.    No.

13      A.    I'm still -- I'm sorry.  I apologize.  I'm

14   sorry.

15      Q.    No, no, it's okay.  It's okay.

16            Let's take a step back.  Have you ever

17   seen an ad about religion, for example?

18      A.    Yes, yes.

19      Q.    Okay.  Do you consider that to be an ad

20   targeted to sensitive information?

21         MR. ULWICK:  Objection; calls for speculation.

22   Objection; vague.

23         THE WITNESS:  Well, an ad targeting -- coming

24   to me about religion?

25   BY MS. SPECTOR:

1    Q.   Yeah.

2    A.   It could be considered personal

3 information, what my religion is.   It could be.

4    Q.   Okay.   Do you think the ad was sensitive?

5    MR. ULWICK:   Objection; vague.

6    THE WITNESS:   My religion?

7 BY MS. SPECTOR:

8    Q.   Yeah.

9    A.   My religion is sensitive, yeah.   I'm

10 sorry.   My religion is sensitive to me, so if it's

11 targeted to me, I consider that to be -- it could be

12 sensitive.

13    Q.   Okay.   And where did you see an ad about

14 religion?

15    A.   I can't recall where I might have seen an

16 ad specific -- I can't recall where I might have

17 seen an ad.

18    Q.   Okay.   Have you ever seen ads about

19 politicians or political parties?

20    A.   Yes.

21    Q.   Okay.   Do you consider those to be

22 sensitive?

23    A.   If it's sensitive -- I'm just not kind of

24 understanding what you mean by "is it sensitive."

25           If there's an ad to a specific party,

1  because I've seen ads for all kinds of

2  politicians -- politics or politicians, so I can't

3  say that it's specific to me.

4      Q.   Let's take a break and then we can move

5  on.

6           So I want to go back to the complaint.  We

7  can talk about it a little bit now.

8           So this says, "Consolidated Class Action

9  Complaint" on the cover.

10          Do you see that?

11     A.   Yes.

12     Q.   What do you understand the -- strike that.

13          What do you understand a class action to

14  be?

15     A.   A class action to me is -- it would be

16  like a -- kind of like a lawsuit for the masses,

17  everyone that it might affect.

18     Q.   Okay.  And then moving just over to the

19  left, you see it says "Benjamin Hewitt, et al."

20          Do you understand that the "et al."

21  includes yourself?

22     A.   "Et al." would be, yeah, everyone.

23     Q.   Yeah, yeah.  All the named plaintiffs;

24  right?

25     A.   Yes.

1      Q.    Okay.   And then it says, "on behalf of

2    themselves and all others similarly situated."

3            Do you see that?

4      A.    Yes.

5      Q.    Okay.   And what do you understand it to

6    mean for others to be similarly situated to you and

7    the other named plaintiffs?

8      MR. ULWICK:   Objection; calls for a legal

9    conclusion, calls for expert testimony.

10     THE WITNESS:   It would mean anyone that's in

11   the similar situation as myself or any other

12   plaintiff.

13   BY MS. SPECTOR:

14     Q.    Do they have to have a Google account?

15     MR. ULWICK:  Same objections.

16     THE WITNESS:  I don't know.

17   BY MS. SPECTOR:

18     Q.    Are there any other criteria that they

19   would have to meet to be similarly situated to you?

20     MR. ULWICK:  Same objections --

21   BY MS. SPECTOR:

22     Q.    -- in this case.

23     MS. SPECTOR:   Sorry.

24     MR. ULWICK:  Same objections.

25     THE WITNESS:  You know what, I really can't

1  say.  I don't know.

2  BY MS. SPECTOR:

3      Q.    Okay.

4      A.    I don't know.

5      Q.    Okay.  Let's talk about the -- some

6  language just prior to that, it says, "on behalf

7  of."

8          Do you see that?

9      A.    Yes.

10     Q.    What do you understand your role to be in

11  acting on behalf of the other class members who are

12  similarly situated?

13     MR. ULWICK:  Objection; calls for a legal

14  conclusion.

15     THE WITNESS:  I would think "on behalf of" as

16  far as being a representative for others similarly

17  situated.

18  BY MS. SPECTOR:

19     Q.    And what do you understand your role is as

20  a class representative?

21     MR. ULWICK:  Objection; calls for a legal

22  conclusion.

23     THE WITNESS:  Just to represent, I guess,

24  millions of others or . . .

25  BY MS. SPECTOR:

1        Q.    What do you think -- sorry.  Finish,

2    please.

3        A.    Okay.

4            Just, like I said, a representative for

5    others that are not here or can't be here or may not

6    even know about this.

7        Q.    Okay.  And what are your responsibilities

8    as a representative?

9        MR. ULWICK:  Objection; calls for legal

10   conclusion.

11       THE WITNESS:  Just to represent -- just to

12   represent them, just to be a face.

13   BY MS. SPECTOR:

14       Q.    Okay.  So let's turn to paragraph 30.

15   It's on page 10 of the exhibit.

16       MR. ULWICK:  Counsel, is that page 10 at the

17   bottom numbers or page 10 at the top?

18       MS. SPECTOR:  Bottom -- bottom numbers.

19       MR. ULWICK:  Bottom numbers.

20       MS. SPECTOR:  Good question.

21   BY MS. SPECTOR:

22       Q.    And the first sentence, do you see where

23   it says, "Plaintiffs bring this class action on

24   behalf of themselves and all Google account holders

25   in the United States whose personal information was

1          So you're seeking to represent Google

2   account holders whose personal information was sold

3   or disclosed without authorization; is that right?

4       A.   Yes.

5       MR. ULWICK:  Objection; document speaks for

6   itself.

7             You can answer.

8       THE WITNESS:  Yes.

9   BY MS. SPECTOR:

10      Q.   Okay.  So if somebody authorized the

11  practices that you're challenging, would they be

12  part of this group that you're seeking to represent?

13      MR. ULWICK:  Objection; calls for a legal

14  conclusion, calls for expert testimony.

15      THE WITNESS:  If they authorized Google to sell

16  their information?

17  BY MS. SPECTOR:

18      Q.   Yes.

19      A.   Would they be part of the class -- you

20  know what, I don't know.  I don't know.  I'm really

21  not an expert in law, so I can't say.

22      Q.   Okay.  But without speaking to the law,

23  have you -- are you aware of any ways that a Google

24  account holder could authorize the conduct that

25  you're challenging?

1      MR. ULWICK:  Objection; calls for legal

2  conclusion, calls for expert testimony, calls for

3  speculation.

4      THE WITNESS:  So is there a way that a Google

5  account holder can authorize Google to sell their

6  information?

7  BY MS. SPECTOR:

8      Q.   Yes.

9      A.   I don't know of any way where Google --

10  about anyone that -- I don't know of any way that

11  they can authorize the selling of their information.

12      Q.   Okay.  What about if somebody knew about

13  the alleged practices, did not object and continued

14  to use Google Services, would that be authorization?

15      MR. ULWICK:  Same objections.

16      THE WITNESS:  If someone knows about the

17  practice and nothing changed their practice?

18          Okay.  So you're saying if someone knows

19  what that -- of Google's practice to sell

20  information to a third party and the person doesn't

21  change how they use Google, is that what you're

22  asking?

23  BY MS. SPECTOR:

24      Q.   Yes.

25      A.   That's not authorization.

Page 132

1      Q.    Why not?

2      MR. ULWICK:  Same objections.

3      THE WITNESS:  Because they didn't authorize for

4  them to sell their information.  That doesn't mean

5  that they have to change their behavior, you know.

6  They never authorized the information to be sold or

7  the way that Google practices.

8  BY MS. SPECTOR:

9      Q.    Go ahead.  Keep going.

10      A.    That doesn't mean that they have to change

11  their ways.  I'm thinking that they should be able

12  to continue how they are and Google should change

13  their practice because that's not what they

14  initially said they were going to do.

15      Q.    Where did they say they were going to do

16  something different?

17      MR. ULWICK:  Objection; calls for legal

18  conclusion --

19      THE WITNESS:  They never said --

20      MR. ULWICK:  That's fine.  Hold on.

21      MS. SPECTOR:  Hang on.

22      THE WITNESS:  I'm sorry.  I'm sorry.

23      MR. ULWICK:  Let me make my objections.  I know

24  you're eager, but that's my objections.

25          It's vague, calls for speculation, calls

1  for legal conclusion, calls for expert testimony.

2      THE WITNESS:  I don't remember Google ever

3  saying that they were going to sell any information.

4  I never seen them saying that they were going to

5  sell any information.  That's what I wanted to say.

6  BY MS. SPECTOR:

7      Q.   Okay.  Do you think if somebody knows

8  about these practices that they should stop using

9  Google?

10     MR. ULWICK:  Objection; calls for legal

11 conclusion, calls for expert testimony, calls for

12 speculation.

13     THE WITNESS:  I think that Google should stop

14 their actions.

15 BY MS. SPECTOR:

16     Q.   Even if these -- strike that.

17         So even if Google disclosed the practices

18 you're challenging and somebody knew about it, you

19 still think that that person should keep using

20 Google and Google instead should change?

21     MR. ULWICK:  Objection; misstates prior

22 testimony, calls for speculation, incomplete

23 hypothetical, calls for legal conclusion.

24     THE WITNESS:  I think that Google should stop

25 their practice of selling information.

1    you're trying to obtain in this lawsuit against

2    Google.

3              Are you seeking to recover any money from

4    Google in this lawsuit?

5        A.    I'm not -- I'm not sure what you mean by

6    "money."

7              I think that everyone should be

8    compensated.

9        Q.    That's what I mean.

10       A.    Oh, okay.   Yes.

11       Q.    So you think that yourself and the class

12   members should be compensated with money; is that

13   right?

14       A.    Yes.

15       Q.    Okay.   And why?

16   MR. ULWICK:   Objection; calls for legal

17   conclusion.

18       THE WITNESS:   Well, Google is making money off

19   of my private information that I did not -- that

20   they promised that they wouldn't share.   But they're

21   making money off of it.

22   BY MS. SPECTOR:

23       Q.    Where did they promise they wouldn't share

24   it?

25             MR. ULWICK:   Objection; calls for legal

1   conclusion, calls for expert testimony.

2        THE WITNESS:  In their terms of agreement.

3   BY MS. SPECTOR:

4        Q.   Okay.  And we can look at that in a little

5   bit.

6             How much money are you looking to recover?

7        MR. ULWICK:  Objection; calls for expert

8   testimony.

9        THE WITNESS:  I don't know.  I don't know.  I

10  don't know.

11  BY MS. SPECTOR:

12       Q.   Do you think that other Google users

13  should get the same amount of money as you?

14       MR. ULWICK:  Objection; calls for legal

15  conclusion, calls for expert testimony.

16       THE WITNESS:  Yes.

17  BY MS. SPECTOR:

18       Q.   Why?

19       MR. ULWICK:  The same objections.

20       THE WITNESS:  Because we're all suffering the

21  same amount -- same amount of things from -- you

22  know, violations from Google.

23  BY MS. SPECTOR:

24       Q.   Well, if someone had a Google account and

25  Google never sent any information about them through

1    the real-time bidding process, do you think they

2    should still get money from this lawsuit?

3         MR. ULWICK:  Objection; vague.  Objection;

4    incomplete hypothetical, calls for expert testimony

5    and legal conclusion.

6         THE WITNESS:  Well, I wouldn't know.  I

7    wouldn't know if the person didn't -- theirs didn't

8    go through the real-time bidding.  If they gave

9    their information to a third party and it -- then

10    yes, they should be a part of it.

11    BY MS. SPECTOR:

12         Q.   But if Google did not share their

13    information, should they get money?

14         MR. ULWICK:  Same objections.

15         THE WITNESS:  I can't tell what -- if Google

16    shared it or not.  You know, I can't say.  I can't

17    say.

18    BY MS. SPECTOR:

19         Q.   But if it didn't, would they still be

20    entitled to compensation?

21              (Reporter seeks clarification.)

22         MR. ULWICK:  Objection; asked and answered the

23    third time now.

24         THE WITNESS:  I don't know.  I would have to

25    leave it up to a judge or a jury.  I don't know.

Page 141

1    BY MS. SPECTOR:

2        Q.    Okay.   Are you seeking anything other than

3    money from Google in this suit?

4        MR. ULWICK:   Objection; calls for legal

5    conclusion.

6        THE WITNESS:   I just don't want Google to

7    continue with their actions.   I don't want them to

8    continue to share personal information.

9    BY MS. SPECTOR:

10       Q.    So you want Google to change its business

11   practices?

12       MR. ULWICK:   Same objections.

13       THE WITNESS:   I want Google to change its

14   business practices.

15   BY MS. SPECTOR:

16       Q.    Okay.   Do you believe you're at risk of

17   future harm or injury if Google does not change its

18   practices?

19       MR. ULWICK:   Objection; calls for legal

20   conclusion, calls for expert testimony, vague.

21       THE WITNESS:   I don't want my personal

22   information out there.   So it's harmful to me.

23   BY MS. SPECTOR:

24       Q.    Any other harm you're trying to prevent?

25       MR. ULWICK:   Same objections.

1        THE WITNESS:  I'm assuming that it personalizes

2   your ad personalization or preferences.

3   BY MS. SPECTOR:

4        Q.   So if this setting is on, do you still --

5   let me strike that.

6             Do you still object to Google using

7   information to personalize ads to you even though

8   this setting was turned on?

9        MR. ULWICK:  Objection; vague, calls for legal

10  conclusion and expert testimony.

11       THE WITNESS:  What I object to is Google giving

12  my information to a third party.

13             I did not say I object to them targeting

14  personal ads, I just object to them giving it to a

15  third party, my personal information.  I didn't say

16  anything about the personalization of ads.

17  BY MS. SPECTOR:

18       Q.   Do you understand that ad -- strike that.

19             Do you object to third parties

20  personalizing ads to you based on information

21  provided in RTB?

22       MR. ULWICK:  Same objections.

23       THE WITNESS:  I object to -- my whole thing is

24  that I don't want them to give it to third parties.

25  I don't want them to sell it or give it to third

Page 160

1  parties.  The personalization is part of it, but I

2  don't want my private information given to third

3  parties for them to even personalize an ad towards

4  me.

5  BY MS. SPECTOR:

6       Q.   So why is this setting on?

7       A.   I don't know why it's --

8       MR. ULWICK:  Objection -- let me get my

9  objection in.

10       THE WITNESS:  Sorry.

11       MR. ULWICK:  Objection; argumentative, calls

12  for expert testimony.

13            You can answer now.

14       THE WITNESS:  Oh, I'm sorry.  I'm not -- I

15  don't know why it's on.

16  BY MS. SPECTOR:

17       Q.   Okay.  And you've never done any

18  investigation into this setting before today?

19       MR. ULWICK:  Objection; asked and answered.

20       THE WITNESS:  I have not done any investigation

21  about the setting.

22  BY MS. SPECTOR:

23       Q.   Okay.  Do you know if you've previously

24  set it to off, to turn off -- strike that.

25            Have you ever turned off the ad

1  personalization setting before, to your knowledge?

2      MR. ULWICK:  Objection; calls for speculation,

3  vague.

4      THE WITNESS:  I don't remember if I turned it

5  on or off.  It would had to have been -- I don't

6  know.  I don't know if I've turned it on or off.  I

7  don't remember doing any of it.

8  BY MS. SPECTOR:

9      Q.    Okay.  For any of your accounts; is that

10  correct?

11      MR. ULWICK:  Same objections.

12      THE WITNESS:  I'm sorry.

13          For any of my accounts.

14  BY MS. SPECTOR:

15      Q.    Do you think that people who have this

16  setting turned off are injured by the conduct

17  alleged in your complaint?

18      MR. ULWICK:  Objection; calls for a legal

19  conclusion, calls for expert testimony, speculation

20  as well.  I'm sorry.

21      THE WITNESS:  I don't think it matters if they

22  have it on or off.  Because Google is still giving

23  personal information to third parties.  So I don't

24  think it really matters if it's on or off, my

25  opinion, if they're still giving the information to

1   a third party to -- a third party to use.

2   BY MS. SPECTOR:

3       Q.   Do you know if Google is still giving

4   information through RTB to third parties if this

5   setting is turned off?

6       MR. ULWICK:  Objection; vague, calls for expert

7   testimony.

8       THE WITNESS:  I don't know.

9   BY MS. SPECTOR:

10       Q.   Okay.  Are you seeking to represent class

11   members who have this setting turned off?

12       MR. ULWICK:  Objection; vague, calls for

13   speculation, calls for a legal conclusion.

14       THE WITNESS:  I don't know.  I don't know

15   legally.  I don't know.  I would have to leave that

16   to a judge or a jury.  I don't know.

17   BY MS. SPECTOR:

18       Q.   Do you think that they're in the same

19   position as you if they have the setting turned off?

20       MR. ULWICK:  Same objections.

21       THE WITNESS:  I don't know.  I can't speculate

22   if -- I can't -- I don't know.

23   BY MS. SPECTOR:

24       Q.   Just give me one second.

25       THE WITNESS:  Can I get a paper towel?

1      A.   Right.

2      Q.   -- I'm not either.

3           Have you ever been curious about whether

4  settings like this could affect the conduct that

5  you're challenging in your complaint?

6      MR. ULWICK:  Objection; vague.

7      THE WITNESS:  I didn't think that any of these

8  settings would have anything to do with what I'm

9  suggesting in the lawsuit -- you know, in the class

10 action, because they said it was -- it's not about

11 them seeing my information, it's about selling it.

12          So I didn't even think about any of these

13 settings.  I didn't think about it afterwards

14 either, after I seen this.

15 BY MS. SPECTOR:

16     Q.   So let's just take a step back.

17          I understand you're objecting to Google

18 selling your personal information; is that correct?

19     A.   Yes.

20     Q.   Are you objecting to Google sharing your

21 personal information in RTB?

22     MR. ULWICK:  Objection; calls for a legal

23 conclusion.

24     THE WITNESS:  I am objecting to them selling

25 and sharing my information to a third party in the

1   RBT [sic].

2   BY MS. SPECTOR:

3         Q.    RTB.

4         A.    RTB.  Because they said they wouldn't,

5   so . . .

6         Q.    Okay.  And where did they say they

7   wouldn't?

8         A.    They said it -- in their terms and

9   agreements, they said that they wouldn't.

10        Q.    Do you remember any specific language

11  where they said that?

12        A.    It says -- I do remember -- I do remember

13  in bold statements, we will not sell your data.  I

14  do remember seeing that in bold letters.

15        Q.    Okay.  And did you -- strike that.

16              When did you see that

17  information -- strike that.

18              When did you see that language, do you

19  remember?

20        A.    I don't remember when I seen it --

21        Q.    Okay.

22        A.    -- but I do remember seeing it.

23        Q.    Do you remember -- strike that.

24              Did you -- strike that.

25              Do you remember seeing it when you signed

Page 237

1    attorney, James Ulwick, in this action.  I just have

2    a few questions to clarify a couple of elements of

3    your testimony today.

4            Today, Ms. Spector placed Exhibit 3, I

5    think, in front of you, which is the complaint and

6    that's this document.

7            Now, you testified today that you had not

8    seen this prior to filing; is that correct?

9        A.    Yes.

10       Q.    Okay.  And this is the complaint that was

11   actually filed with the court, and that's your

12   understanding; right?

13       A.    Yes.

14       Q.    Okay.  However, you were given the

15   opportunity to and then did actually review a draft

16   of the complaint prior to it being filed; is that

17   right?

18       A.    Yes.

19       Q.    And did you have an opportunity to discuss

20   with me and with David the content of the complaint

21   prior to us filing it?

22       A.    Yes.

23       Q.    Okay.  And then you also testified today

24   that you met with Mr. Straite and I to prepare for

25   your deposition once before today; is that right?

Page 238

1     A.   Yes, I did.

2     Q.   Okay.  Is it not also true that you had

3  two Zoom prep sessions, not meetings, but prep

4  sessions, with me and with David prior to today as

5  well?

6     A.   Yes, on Zoom.

7     Q.   Okay.  And could you give me an estimate

8  of about how many hours you spent all told over the

9  course of those three meetings preparing for today's

10  deposition?

11     A.   I'd say about nine hours --

12     Q.   Okay.

13     A.   -- yes.

14    MR. ULWICK:  No further questions.

15    MS. SPECTOR:  Great.  And just for the record,

16  thank you so much for traveling here.  Really

17  appreciate your time.

18    MR. ULWICK:  And thank you for the generosity.

19  You guys are always very gracious hosts and we

20  appreciate it.

21    MS. SPECTOR:  Yes.

22    THE VIDEOGRAPHER:  Okay.  Let me take you off

23  record.

24        Going off the record.  The time now is

25  3:02.

Page 240

1        I, the undersigned, a Certified Shorthand

2   Reporter of the State of California, do hereby

3   certify:

4        That the foregoing proceedings were taken

5   before me at the time and place herein set forth;

6   that any witnesses in the foregoing proceedings,

7   prior to testifying, were administered an oath; that

8   a record of the proceedings was made by me using

9   machine shorthand which was thereafter transcribed

10  under my direction; that the foregoing transcript is

11  a true record of the testimony given.

12       Further, that if the foregoing pertains to

13  the original transcript of a deposition in a Federal

14  Case, before completion of the proceedings, review

15  of the transcript ( ) was (X) was not requested.

16       I further certify that I am neither

17  financially interested in the action nor a relative

18  or employee of any attorney of any party to this

19  action.

20       IN WITNESS WHEREOF, I have this date

21  subscribed my name.

22  Dated:  May 2, 2023

23

24  _____

25       ANRAE WIMBERLEY, CSR No. 7778