# **Exhibit 9**

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 1

1   UNITED STATES DISTRICT COURT

2   NORTHERN DISTRICT OF CALIFORNIA

3   SAN JOSE DIVISION

4   ------------------------------------------ x

5   IN RE GOOGLE RTB CONSUMER PRIVACY LITIGATION.

6   No. 4:21-CV-02155-YGR-VKD

7   ------------------------------------------ x

8

9               Park Ridge Marriott

                300 Brae Boulevard

10              Park Ridge, New Jersey

11              March 30, 2023

                10:07 a.m.

12

13   **HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY**

14

15          VIDEOTAPED DEPOSITION OF SALVATORE

16   TORONTO, taken pursuant to Notice, held at the

17   above time and place, before Fran Insley, a

18   Notary Public of the States of New York and New

19   Jersey.

20

21

22

23    Job No. CS5823122

24

25

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 2

```
 1    A P P E A R A N C E S:
 2          DICELLO LEVITT LLP
 3                Attorneys for Plaintiffs and
                  Proposed Class
 4
                  485 Lexington Avenue, 10th floor
 5                New York, New York  10165
 6          BY:   DAVID A. STRAITE, ESQ.
                  DStraite@dicellolevitt.com
 7
 8          BOTTINI & BOTTINI
 9                Attorneys for Plaintiff,
                  ALBERT Y. CHANG
10
                  7817 Ivanhoe Avenue, Suite 102
11                LaJolla, California 92037
12          BY:   YURY A. KOLESNIKOV, ESQ.
                  Phone: (858)914-2001
13                ykolesnikov@bottinilaw.com
14
15          COOLEY LLP
16                Attorneys for Defendant
17                Three Embarcadero Center
                  22nd floor
18                San Francisco, California 94111
19          BY:   KHARY ANDERSON, ESQ.
                  kanderson@cooley.com
20
21    ALSO PRESENT:
22          HOWARD BRODSKY, Videographer
23
24                xxxxx
25
```

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
                                        Page 3
 1   -------------- I N D E X -----------------
 2   WITNESS                EXAMINATION BY      PAGE
 3   SALVATORE TORONTO  MR. ANDERSON           7
 4
 5   -------------E X H I B I T S----------------
 6   TORONTO        DESCRIPTION                 PAGE
 7   Exhibit 1  Notice                            7
 8   Exhibit 2  TORONTO_15700                     18
 9   Exhibit 3  TORONTO_16260                     26
10   Exhibit 4  TORONTO_14924                     27
11   Exhibit 5  TORONTO_17053                     31
12   Exhibit 6  Consolidated Complaint           61
13   Exhibit 7  GOO-HEWT-455615                  113
14   Exhibit 8  Terms of Service                 59
15   Exhibit 9  TORONTO_19645                     59
16   Exhibit 10  Printout of web page            63
17   Exhibit 11  2/4/21 privacy policy          180
18   Exhibit 12  Google advertising page        201
19   Exhibit 13  Google "We do not sell your    213
20               information to anyone"
21   Exhibit 14  Website "Data Practices and    218
22               Transparencies"
23   Exhibit 15  New York Times editorial       219
24   Exhibit 16  GOOGLE-058445                  222
25   Exhibit 17  TORONTO_20580                  231
```

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 4

```
 1                        EXHIBITS

 2    TORONTO       DESCRIPTION                PAGE

 3    Exhibit 18   GOOGLE-456453               241

 4    Exhibit 19   Printout www.newsnow.com    250

 5    Exhibit 20   Printout privacy statement  261

 6    Exhibit 21   TORONTO_20608               268

 7    Exhibit 22   TORONTO_20607               271

 8    Exhibit 23   TORONTO_20606               273

 9    Exhibit 24   TORONTO_20588               274

10    Exhibit 25   Screenshot "Do Not Track    277

11                 Requests"

12                 (Exhibits produced.)

13

14

15

16

17

18

19

20

21

22

23

24

25
```

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 5

1              THE VIDEOGRAPHER:  Good morning.
2       Here begins the video recorded virtual
3       remote deposition of Salvatore Toronto
4       appearing from this location at Marriott
5       Park Ridge, 300 Brae Boulevard, Park
6       Ridge, New Jersey 07656.
7              This deposition is taken by the
8       defendant In Re Google RTB Consumer
9       Privacy Litigation, case number
10      21-CV-02155-YGR in the United States
11      District Court, Northern District of
12      California.
13             Today is Thursday, March 30, 2023.
14      The time is approximately 10:07 a.m.
15      eastern daylight time.
16             My name is Howard Brodsky and I am
17      the legal video specialist in association
18      with Veritext Legal Solutions with offices
19      located in San Francisco, California.
20             The court reporter is Fran Insley in
21      association with Veritext.
22             Will counsel please state their
23      appearances for the record.
24             MR. KOLESNIKOV:  Good morning.  Yury
25      Kolesnikov from Bottini & Bottini on

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 40

1  We had nonlegal conversations, not many,

2  because we are both very busy parents.

3       Q.    Were any of those nonlegal

4  conversations with Mr. Bottini concerning any

5  of the facts alleged in the case in the Google

6  RTB case?

7            MR. KOLESNIKOV:  Again, same

8       objection.

9       A.    No.  This is very -- you are asking

10 a question and my response is or my reaction to

11 it is I'm going to be having to get into

12 privileged -- confidential information.

13           MR. KOLESNIKOV:  I will instruct you

14      not to answer the question.

15      Q.    Prior to filing the -- strike that.

16      Do you understand that you are a

17 named plaintiff in the Google RTB case?

18      A.    Yes, yes.

19      Q.    And prior to filing your lawsuit,

20 did you review any of the filings, such as the

21 Complaint?

22      A.    Yes.

23      Q.    Did you review -- without divulging

24 attorney/client communications, did you review

25 those with Mr. Frank Bottini?

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 41

1      A.     Yes.

2      Q.     Did you review those with other

3  attorneys at his firm?

4      A.     Maybe.

5      Q.     Did you review those filings with

6  any other attorneys at any other firm?

7             MR. KOLESNIKOV:  Objection.  Vague.

8      A.     I don't recall so.

9      Q.     For your work as a named plaintiff

10 in the Google RTB case, do you have any

11 agreement whether you will be compensated?

12             MR. KOLESNIKOV:  Objection.

13     Q.     For your work as a named plaintiff

14 in the Google RTB case?

15     A.     No, no agreement.

16     Q.     Do you have any expectation to be

17 compensated in the Google RTB case?

18             MR. KOLESNIKOV:  Same objection.

19     A.     No.

20     Q.     Do you have any expectation for your

21 attorneys in the Google RTB case to be

22 compensated?

23             MR. KOLESNIKOV:  Same objection.

24     A.     I never thought about it.

25     Q.     Do you have a formal agreement with

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 52

1    lawsuit in the Google case in 2021?

2            MR. KOLESNIKOV:  Objection.  Assumes

3        facts not in evidence.

4        A.    Yes, I have recall on that.

5        Q.    Do you recall that you were -- you

6    are a named plaintiff in the Google case?

7        A.    Yes.

8        Q.    Do you recall that your Google case

9    was consolidated with other Google cases?

10       A.    Yes.

11       Q.    Do you recall that those other

12   Google cases were consolidated in around the

13   summer of 2021?

14       A.    I recall that they were

15   consolidated, but I didn't know the exact year.

16       Q.    Do you recall that in your Complaint

17   you make allegations about RTB?

18       A.    Yes.

19       Q.    Do you recall that in your Complaint

20   you make allegations about Google's RTB?

21       A.    Yes.

22       Q.    Is it your testimony that you had

23   never -- strike that.

24            Is it your testimony that you were

25   not aware of Google RTB prior to the filing of

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 57

1      A.    Well, I listened to the radio news
2   and I occasionally will see TV television news.
3   So those are possibilities that I may have seen
4   or heard a news story.
5      Q.    What information related to this
6   case do you think you may have seen on radio --
7   you may have heard on radio news?
8      A.    I don't recall any specifics.
9      Q.    What about generally?
10     A.    Well, I hear the news, the daily
11  news, and then I forget a few days later.  So I
12  don't know, but that's how it is for me.
13  That's how I know what is going on, process it
14  and then move on.
15     Q.    Is any of this information that you
16  were processing related to the allegations in
17  your Complaint?
18     A.    Way back a few years ago when I was
19  in contact, initial contact regarding Google
20  with my attorneys probably.
21     Q.    To be clear, when you say your
22  attorneys, are you referencing Mr. Frank
23  Bottini?
24     A.    Frank and his staff.
25     Q.    And I believe you said that you

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 58

1   approached Frank about this case; is that

2   correct?

3        A.    I seem to recall that I was really

4   bothered by my privacy being compromised and my

5   personal information being sold on the web

6   throughout the world.

7        Q.    Without disclosing attorney/client

8   communications, when you approached Mr. Bottini

9   did you have any concerns related to RTB?

10              MR. KOLESNIKOV:   Objection.  Asked

11        and answered.

12        A.    Well, I had concerns, but I didn't

13   use the term RTB.  You are using that right now

14   shorthand to describe a long group of words,

15   descriptive words, but that was the crux or a

16   good description for a good part of the

17   conversations I had with my attorneys, Frank

18   and his staff.  My attorneys/Frank and his

19   staff.

20        Q.    If we say -- if I use the term

21   Bottini firm, would you understand I'm speaking

22   about Frank and his staff?

23        A.    That's what I understand.  That's

24   whenever I use the word attorneys, it's Frank

25   and his staff.

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 62

1      Q.    Do you recognize that document?

2      A.    I recognize Exhibit A and I guess

3  it's what I had before me previously.

4      Q.    For the record, Exhibit A is a

5  public version of a redacted copy of the

6  Complaint.

7            MR. KOLESNIKOV:  You might want to

8       turn to the next page.  Is Exhibit A part

9       of the document?

10            MR. ANDERSON:  It's from a motion to

11       sue.

12            MR. KOLESNIKOV:  I think that's the

13       first page you are referring to.

14            MR. ANDERSON:  It should be ECF

15       number.

16            MR. KOLESNIKOV:  This is the first

17       page he was referring to.

18      Q.    For your reference, Mr. Toronto, it

19  would be page 2 of 140.  That's what I meant

20  when I said first page in the top right.

21      A.    Okay, I got that.

22      Q.    Have you seen this document before

23  or a version of this document before?

24      A.    Yes.

25      Q.    Do you see -- do you recall that

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 63

1    this case was brought as a class action?

2        A.    Yes.

3        Q.    When I say class action, do you

4    understand that I mean a class action lawsuit?

5        A.    Yes.

6        Q.    What is your understanding of a

7    class action?

8        A.    I'm a member of a group of similarly

9    situated plaintiffs.

10           MR. KOLESNIKOV:  Mr. Toronto, do you

11       need a second to fix your glasses?

12       A.    I have a spot that is clouding my

13    vision.

14           MR. ANDERSON:  We can go off the

15       record.

16           THE VIDEOGRAPHER:  The time is

17       11:40.  We are off the record.

18           (Brief recess taken.)

19           THE VIDEOGRAPHER:  The time is

20       11:41.  We are on the record.

21    BY MR. ANDERSON:

22       Q.    What is your basis of understanding

23    what a class action is?

24       A.    I understand it as a group of people

25    similarly situated filing a lawsuit together.

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 64

1          Q.     How did you get that understanding?

2          A.     Well, just over the years being

3     involved with the law and listening and

4     watching the news.

5          Q.     What does similarly situated mean to

6     you?

7          A.     A group of people with the same

8     legal interests and taking the same legal

9     action, using the same attorney, law firm.

10         Q.     What does it mean to be a plaintiff

11    in a class action lawsuit to you?

12         A.     To me I'm -- the plaintiff is the

13    lead person bringing the lawsuit against the

14    defendant.

15         Q.     Does the plaintiff -- strike that.

16                Is it your opinion that the

17    plaintiff is similarly situated to the other

18    members in the class action, the other

19    plaintiffs in the class action?

20                MR. KOLESNIKOV:  Objection.  Vague.

21    Calls for legal conclusion.

22         A.     The plaintiff he has to act for the

23    other people besides himself.  He's got those

24    responsibilities, plaintiff responsibilities.

25         Q.     What is your understanding of the

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 65

1    other plaintiffs' responsibilities?

2        A.    We have to equally represent the

3    other members with you and you have to do

4    whatever is necessary to help the judge and

5    help the other people involved in the case help

6    the case progress, provide information,

7    evidence, et cetera.

8        Q.    What do you mean by equally

9    represent?

10        A.    Well, I just can't act for my own

11    interests.  I have to do whatever I can for the

12    interests of the other plaintiffs.

13        Q.    Do those interests have to be equal?

14            MR. KOLESNIKOV:  Objection.  Vague.

15        A.    I have to give the best information

16    I can for everybody and not favor anybody, any

17    other one plaintiff or more plaintiffs over

18    against others.  They all have to get my equal

19    efforts.

20        Q.    Does a named plaintiff represent

21    other plaintiffs who don't have the same equal

22    interest?

23        A.    Well --

24            MR. KOLESNIKOV:  Objection.  Calls

25    for legal conclusion.

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 66

1    A.    I'm not -- I don't think I'm

2   qualified to go real deep into the obligations

3   and responsibilities, theoretical and otherwise

4   of plaintiffs.  We are getting a little deep,

5   at least -- and I'm just wondering if I should

6   be answering the question.

7    Q.    But do you understand that as a

8   named plaintiff you have to abide by those

9   obligations and responsibilities?

10              MR. KOLESNIKOV:  Objection.  Asked

11        and answered.

12    A.    I know I have obligations and number

13   one is the truth, tell the truth and then, you

14   know, help the court as much as possible and

15   make sure that I don't request or act in a way

16   that -- where I'm favoring myself as opposed to

17   plaintiff, fellow plaintiffs, yeah.

18    Q.    In what way would you -- strike

19   that.

20              How would you favor yourself as

21   opposed to fellow plaintiffs?

22              MR. KOLESNIKOV:  Objection.  Vague.

23        Misstates testimony.

24    A.    I'm sorry, but I wouldn't know how.

25   I mean I just normally think of responding to a

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 67

1    question and telling the truth and making sure

2    that I am not leaving anybody out, making sure

3    that I'm not favoring myself, forgetting about

4    other people and responsibilities to other

5    people.

6         Q.    And returning to the case caption,

7    which I believe is on page 2 of 140 of the

8    document in front of you?

9         A.    Okay, I'm on that page.

10        Q.    And it says, "Mr. Howett on behalf

11   of themselves and others similarly situated."

12   What is your understanding of quote, unquote,

13   "on behalf of?"

14             MR. KOLESNIKOV:  Objection.  Vague.

15   Calls for a legal conclusion.

16        A.    My understanding is that he's like

17   the lead plaintiff and he's acting for us and

18   with us.

19        Q.    Do you understand that you are also

20   a lead plaintiff?

21        A.    Yes.

22        Q.    Is it your testimony that as lead

23   plaintiff you are also acting for the class --

24   excuse me -- strike that.

25             Is it your testimony that as a lead

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 68

1    plaintiff you are also acting for fellow
2    plaintiffs?
3           MR. KOLESNIKOV:  Objection.  Asked
4       and answered.
5       A.    I think yes applies.
6       Q.    What do you mean by acting for
7    fellow plaintiffs?
8           MR. KOLESNIKOV:  Objection.  Asked
9       and answered five times now.  You can
10      answer.
11      Q.    Actually, I'll rephrase.  Other than
12   abiding by your responsibilities and telling
13   the truth and other things you mentioned, is
14   there anything else you mean by acting for
15   fellow plaintiffs?
16      A.    No.
17      Q.    What are you trying to achieve for
18   your fellow plaintiffs in this lawsuit?
19          MR. KOLESNIKOV:  Objection.  Vague.
20      A.    Technically the Complaint states it
21   and my attorneys set that out when I was
22   seeking.  Did I answer your question?
23      Q.    I think so.  It also says the
24   caption -- in the case caption right there at
25   the bottom of the page, also says "All others

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 69

1    similarly situated." What makes someone,

2    quote/unquote, in your opinion what makes

3    someone similarly situated to you?

4             MR. KOLESNIKOV:  Objection.  Asked

5        and answered.

6        A.    If they have the same -- if they

7    have the same -- I feel I was injured and my

8    privacy has been violated, my rights.  They are

9    called privacy rights, et cetera, related

10   rights were violated.

11            My information was disseminated

12   internationally and sold by Google and there

13   were other people that had the same situation

14   and so I'm acting to protect, bring the court

15   in to protect and correct the situation that

16   I'm in and all those people that are in the

17   same situation as me.

18       Q.    Do you believe that you represent

19   anyone whose privacy has not been violated?

20            MR. KOLESNIKOV:  Objection.  Vague.

21       Calls for a legal conclusion.

22       A.    I don't know.

23       Q.    Do you believe you represent anyone

24   whose -- any plaintiffs whose personal

25   information was not sold?

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 73

1    Q.    So in paragraph 30 you say that you
2   bring this class action on behalf of people
3   whose information was sold by Google without
4   their authorization, is that -- did I sum that
5   up correctly?

6    A.    Yes.

7    Q.    You say authorization is clear and
8   it means what it says; is that correct?   Is
9   that your testimony?

10   A.    Yep.

11   Q.    So would you agree that if
12  someone -- actually, if Google -- excuse me --
13  strike that.

14          Would you agree that if an
15  individual did authorize their sale or
16  disclosure of information, then they would not
17  be part of this class action?

18          MR. KOLESNIKOV:   Objection.
19      Improper hypothetical.   Calls for legal
20      conclusion.   Calls for expert testimony.

21   A.    It's a hypothetical.   It doesn't
22  apply to my situation because I didn't give
23  authorization and you're saying if somebody
24  gave authorization.   I don't know if that would
25  apply, if that situation would apply to this

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 74

1    case now.

2           My case -- I brought my case because

3    I didn't authorize.  I didn't know Google was

4    doing this until I found out and I know I

5    didn't authorize it.  I never would have agreed

6    to it initially.  So I don't think I can give

7    an answer other than the information that I am

8    giving you now, what I just said right now in

9    the last few seconds.

10       Q.    So I understand that you believe I'm

11   asking a hypothetical, but I just ask that you

12   would answer the hypothetical, but I'll reask

13   the question.

14          MR. KOLESNIKOV:  Is there a

15       question?

16          MR. ANDERSON:  No, I'm thinking.

17       A.    Okay.

18       Q.    If someone did authorize their

19   information being disclosed by Google, then

20   would you agree that they don't fall within

21   this class action; they are not part of this

22   class action?

23          MR. KOLESNIKOV:  Same objection.

24       Improper hypothetical.  Calls for legal

25       conclusion.  Calls for expert testimony.

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 75

1      You can answer if you understand.

2      A.    As a layman, if I were a layman, if

3  I were a layman, not a retired attorney, not

4  having the experience that I had even before I

5  was an attorney, just by being aware, I would

6  say if they gave permission and authorization

7  to Google, then they shouldn't be in here under

8  those circumstances.

9      Q.    Are you aware of any way that

10  someone could authorize -- excuse me, strike

11  that.  Are you aware that -- strike that.

12          Are you aware that anyone could give

13  permission and authorization to Google to

14  disclose their information?

15          MR. KOLESNIKOV:  Objection.  Assumes

16      facts not in evidence.  Calls for expert

17      testimony.

18      A.    Well, you know, Google could --

19  theoretically Google could say well, there was

20  implicit, somebody gave us implicit

21  authorization.  But the word authorization in

22  my mind means, you know, clear, written

23  approval.

24      Q.    What is your basis of that

25  understanding of the word authorization as you

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

1    understand paragraph 30?

2              MR. KOLESNIKOV:   Objection.   Calls

3        for a legal conclusion.   Improper legal

4        contention question.   You can answer.

5        A.    I am just reading to formulate my

6    answer.   I think that's a normal standard use

7    of the word authorization.   So it would be the

8    standard interpretation, standard definition

9    about the word authorization.

10       Q.    What is the basis of your belief

11   that that is the standard definition of the

12   word authorization?

13             MR. KOLESNIKOV:   Same objection.

14       Improper legal contention question.

15       A.    You know I'm trying hard to

16   understand, balance my responsibilities of not

17   disclosing, not getting involved in what I

18   shouldn't be involved in talking about and

19   trying to be respectful and reply to your

20   request, your question and comply with all the

21   rules that make it mandatory for me to answer

22   your question.   I'm trying, but I'm not sure I

23   understand the question.

24       Q.    What if I reask it this way.

25   Outside of conversation, outside of

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 77

1    communications with your lawyers, do you have

2    an understanding of what the word authorization

3    means?

4        A.    My understanding of the word

5    authorization is that there is someone has

6    clearly granted permission, authorized the

7    discussion or conveyance of certain objects or

8    conversation and I always think of

9    authorization has got to be in writing because

10   if it's not in writing, it's just not -- how

11   can it be clear?  How can it be enforceable?

12       Q.    When you say in writing, is it the

13   person -- strike that.

14            When you say in writing, what do you

15   mean by that?

16       A.    Well, authorization.  I would like

17   to see some evidence, what do you mean and

18   who's authorizing it?  I just --

19       Q.    Would you consider that someone

20   authorized a practice if they chose to -- if

21   they knew about it, but chose to not object to

22   it?

23            MR. KOLESNIKOV:  Objection.  Vague.

24   Calls for a legal conclusion.

25       A.    I would not assume an authorization

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 78

1    just because somebody doesn't object because

2    like, for instance, in this case you may not,

3    you meaning in person, the potential person who

4    wants to use Google may object to Google's

5    practices, et cetera, but in principle, but

6    they may not take the time to write out an

7    objection or try and contact the president of

8    Google or go through all of the effort

9    necessary to object and so -- yes, it's

10   possible to -- it is a very complicated -- very

11   complicated with much to say and I'm not sure

12   if I answered the question.

13        Q.    If a person receives a writing --

14   strike that.

15            If Google discloses the alleged

16   practices in writing and a person continues to

17   use Google services, would you consider that to

18   be an authorization?

19            MR. KOLESNIKOV:  Objection.  Assumes

20        facts not in evidence.  Improper

21        hypothetical.  Calls for a legal

22        conclusion.

23        A.    No, I don't think that would be

24   authorization.

25        Q.    If Google discloses the practices in

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 83

1          for itself.

2          A.     I have to read this again.

3          Q.     Take your time.

4          A.     (Witness reading document).

5                 I don't know.  I am not certain --

6     am not certain what my lawyers meant in

7     paragraph 57 and I'm not certain on how to

8     answer your question.

9          Q.     Paragraph 57 also says you use the

10    Edge web browser; is that accurate?

11                MR. KOLESNIKOV:  Objection.

12         A.     I'm sorry?

13                MR. KOLESNIKOV:  No, go ahead.  My

14         fault.

15         A.     Probably.  I use a browser and I

16    think I use the Edge browser.

17         Q.     What is the -- to your knowledge,

18    what is the Edge web browser?

19                MR. KOLESNIKOV:  Objection.  Vague.

20         A.     I have a basic desktop computer and

21    it allows me to do internet searches, but I

22    can't be certain as to which service or product

23    within my Hewlett Packard desktop computer is

24    doing the browsing with me -- for me.

25         Q.     To your knowledge, have you used any

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 84

1   other web browsers?

2       A.      The name Edge rings a bell.   I may

3   have used someone else, but not within the last

4   five, six or seven years.

5       Q.      Have you ever used the Chrome web

6   browser?

7               MR. KOLESNIKOV:   Objection.   Calls

8       for speculation.

9       A.      I have seen Google Chrome on my

10  screen because I have Gmail and I have seen the

11  logo and references to Google and I think

12  that's something that I don't request.

13      Q.      Paragraph 57 also says that your --

14  that you use -- strike that.

15              Paragraph 57 also says that you

16  visited "websites from which Google sold and

17  shared account holder information without

18  authorization."   Do you see that?

19              It should be the second and third

20  lines of paragraph 57, so lines 8 and 9 on the

21  page.

22              MR. KOLESNIKOV:   Was there a

23      question?

24              MR. ANDERSON:   I just want to make

25      sure he's at the same spot with me.

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 85

1       A.    I'm reading that again.  (Witness

2  reading document.)

3            Okay, I read it again.

4       Q.    Do you recall which websites you

5  visited where -- strike that.

6            Do you recall which websites you

7  visited from which Google shared and sold your

8  information?

9            MR. KOLESNIKOV:  Objection.  Calls

10      for expert testimony.

11      A.    No.

12      Q.    Just one more paragraph before we

13  break.  In paragraph 58, do you see that, the

14  next paragraph down?

15      A.    Yes.

16      Q.    Are these factual allegations --

17  strike that.

18            Do you believe these factual

19  allegations to be accurate?

20            MR. KOLESNIKOV:  Objection.  Calls

21      for a legal conclusion.

22      A.    I have to read that.

23      Q.    Please take your time.

24      A.    (Witness reading document).

25            MR. KOLESNIKOV:  Just for the

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 86

1          record, objection.  Calls for legal

2          conclusion.  Calls for expert testimony

3          and the document speaks for itself.

4          A.    Okay, I'm done reading it.

5          Q.    Are the factual -- do you believe

6     the factual allegations in that paragraph are

7     accurate?

8               MR. KOLESNIKOV:  Same objections.

9          A.    I tend to think they are accurate.

10         Q.    Given our conversation earlier, is

11    your basis -- do you think they are accurate

12    because of your conversations with your

13    lawyers?

14         A.    I tend to think they are accurate

15    based upon my initial feeling and thoughts upon

16    reading them and now that I'm sitting back and

17    thinking about it, this is a product from my

18    lawyers.  I trust them and I know how hard they

19    work and I'm sure that it's true and accurate.

20    This is a product of theirs.

21         Q.    So to be clear, do you have any

22    reason to think that the allegations in this

23    paragraph are accurate that are not related --

24    that did not come from your lawyers?

25               MR. KOLESNIKOV:  Objection.  Asked

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 88

1          MR. KOLESNIKOV:  Same objection.

2      A.    I think what I said a minute ago

3   applies and that was when I first read that I

4   had an opinion on it and I felt comfortable

5   that it's accurate and truthful and then, of

6   course, I know that it was prepared by the

7   people that I have known for years and I

8   trusted for years.

9      Q.    When you first read that, looking at

10  the first sentence of paragraph 58, when you

11  first read that Google has sold and shared your

12  personal information through Google RTB, I

13  think you said you had an opinion that it was

14  accurate?

15     A.    I think paragraph 58 is accurate.

16     Q.    What personal information do you

17  believe was sold and shared through Google RTB?

18          MR. KOLESNIKOV:  Objection.  Calls

19     for a legal conclusion.

20     A.    My search, all of my search habits,

21  actions, et cetera, because if I search for a

22  new tire, it seems like within hours there were

23  ads for tires, from tire companies, for various

24  tires.  How could they have possibly learned

25  that without Google disclosing my -- what my

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 89

1    search was previously?  That happened many,
2    many times.
3        Q.    Is there any other information that
4    you consider to be personal information other
5    than your search habits or search history?
6            MR. KOLESNIKOV:  Objection.  Calls
7        for a legal conclusion.
8        A.    Yes.
9        Q.    And what are other information --
10   what is other information that you consider to
11   be personal information?
12           MR. KOLESNIKOV:  Same objection.
13       A.    Because they operate my desktop
14   computer, they know everything, my age, my
15   financial capacity, et cetera, much, much
16   personal information and my God, it's just
17   scary when I think about that information just
18   being in somebody else's hands and being
19   disseminated worldwide.
20       Q.    So, I believe you said search
21   habits, age, financial information.  Can you
22   think of anything else that you would consider
23   to be personal information?
24           MR. KOLESNIKOV:  Same objection.
25       Calls for a legal conclusion.

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

1        Q.     Yep.

2        A.     So you want me to read this side?

3        Q.     The second column, if anything jumps

4   out to you as personal information?

5        A.     The second column on the right or

6   second column down here?

7        Q.     The one to the right of the numbers.

8   If you're looking at it says "IP address,

9   Special Treatment, Google ID" and it continues

10  downward.

11             Is there anything in this chart that

12  you consider to be personal information?

13       A.     Well, which -- there is a lot of

14  text here, which -- what am I to read?

15       Q.     Let's try it this way.

16             MR. KOLESNIKOV:  Tell him which

17       column you are referring to.

18       Q.     Let's try it this way.  Do you see

19  the top it says IP address?

20       A.     The top left IP.  It says IP

21  address.

22       Q.     Do you consider that to be personal

23  information?

24             MR. KOLESNIKOV:  Objection.  Calls

25       for legal conclusion.  Calls for expert

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 95

1          testimony.

2          A.      Well, yes, that identifier -- I

3     don't really want everybody to know my IP

4     address.

5          Q.      What about your ZIP Code?

6                  MR. KOLESNIKOV:  Same objection.

7          Q.      Do you -- my apologies.  Strike

8     that.

9                  Would you consider your ZIP Code to

10    be personal information?

11                 MR. KOLESNIKOV:  Same objection.

12         A.      Yes.

13         Q.      Why do you think your ZIP Code is

14    personal information?

15         A.      Well, because that bit with a few

16    other bits, all of a sudden I have risks, I

17    have costs, I have lack of privacy, et cetera.

18         Q.      Did you say you have bits, B-I-T-S?

19         A.      It's a bit of information.  You put

20    a bunch of bits of information together, all of

21    a sudden somebody has a clear picture of your

22    private information, of your address, where you

23    are, what you are buying, what you are reading,

24    et cetera.

25         Q.      What pieces, or excuse me -- strike

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 96

1    that.

2            What bits of information in your ZIP

3    Code would allow someone to have a clear

4    picture of your address?

5            MR. KOLESNIKOV:   Objection.   Vague.

6        Calls for expert testimony.   Asked and

7        answered.

8        A.    It's just another bit of information

9    that goes -- which can then be combined with

10   other bits of information which will be

11   conveying what I consider confidential,

12   personal and private.

13       Q.    So is it your testimony that ZIP

14   Code by itself is not personal or private

15   information?

16       A.    Well, in certain situations that

17   could be private, personal.

18       Q.    What are those certain situations?

19           MR. KOLESNIKOV:   Objection.

20       Improper hypothetical.   You can answer.

21       A.    If somebody is looking to identify

22   the information that is attached to that or

23   related to that ZIP Code, they just got their

24   confirmation.   I just think it's wise that as

25   little personal information, private

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 97

1    information should be seen by the people -- by

2    other people, other than the people around me

3    that I want to see it.

4        Q.    To your own personal knowledge, how

5    could someone confirm your information that is

6    attached to your ZIP Code?

7                MR. KOLESNIKOV:    Objection.    Vague.

8        A.    I feel that all the bits of

9    information in any situation can have value

10   singularly, each one, because they can complete

11   a clear picture, a global picture with all the

12   other bits of information.    So I value all the

13   bits.

14       Q.    So I understand, I think I

15   understand what you are saying, but just

16   focusing on ZIP Code by itself, how could

17   someone identify you based off your ZIP Code

18   just by itself?

19               MR. KOLESNIKOV:    Objection.

20       Improper hypothetical.    Calls for expert

21       testimony.

22       A.    Well, in some ways I looking at it

23   they can't identify me, but in other ways,

24   one -- when they see ZIP Code and they see --

25   they have other information that would match

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 98

1    that ZIP Code and would complete the picture

2    for them.

3         Q.    So --

4         A.    So I can see your point that by

5    itself a ZIP Code is not important, not

6    identified.  It can't identify or disclose

7    anything valuable.

8              In some situations that is probably

9    true, but there may be other situations where

10   it could be the last piece of a puzzle that

11   needs a complete total picture.

12        Q.    So is it your testimony that

13   something is only -- strike that.

14             Is it your testimony that something

15   can be personal information only if it's a

16   piece of a puzzle that is needed to complete a

17   total picture?

18             MR. KOLESNIKOV:  Objection.

19        Misstates prior testimony.  Calls for

20        expert testimony.  Calls for a legal

21        conclusion.

22        A.    Maybe in certain situations.

23        Q.    Can you have any -- strike that.

24             Is there something -- strike that.

25             Can something be personal

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 104

```
 1            MR. KOLESNIKOV:  Same objection.
 2       A.    No, I can't specifically -- I can't
 3  recall the specifics and details at this point
 4  a couple of years later, you know, three years
 5  later.
 6       Q.    For the ads that you -- scratch
 7  that.
 8            I believe you just said you may have
 9  seen some sensitive ads within the last few
10  days; is that correct?
11            MR. KOLESNIKOV:  Objection.  Vague.
12       A.    I think there were some ads five or
13  six days ago that I was surprised and took note
14  of them.  It bothered me.
15       Q.    What surprised you about those ads?
16       A.    Well, it was -- the one that I had
17  just done some searching on for, regarding a
18  sports training product device, a product
19  relative to the sports training device, all of
20  a sudden, a few hours later or the next day,
21  when I go and check my e-mail, the ads popped
22  up.
23       Q.    Which e-mail did the ads pop up?
24       A.    As I was going through my e-mail or
25  something I saw ads on the right-hand side.
```

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 105

1    Q.    In which e-mail address are you
2  referring to?
3    A.    When I went to my Gmail account to
4  check my morning mail, I noticed that holy cow,
5  these tires, I'm being barraged now and I did a
6  search the day before for tires for a sports
7  device.
8    Q.    So I just want to make sure I
9  follow.
10          When you say tires, are the tires
11 related to the sports training device or are
12 these two separate --
13    A.    Replacement tires to allow somebody
14 to build something.  You buy many parts and you
15 put it all together to build something.  So I
16 was looking for tires, components, one of the
17 components to build something.
18    Q.    You were looking for tires for the
19 sports training device or was the search
20 related to the sports training device separate?
21    A.    I was just checking my -- previously
22 I was looking for tires and the next day I was
23 checking my e-mail in the morning and I noticed
24 ads offering other manufacturers' sports
25 training tires and I had never in a couple of

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

1    years been looking for tires for any devices.

2        Q.    To be clear and I just want to make

3    sure, we are on the same page here, you are not

4    talking about car tires; are you talking about

5    tires for the sports training device?

6        A.    They call them replacement tires for

7    like lawn mowers, golf carts, wheelbarrows,

8    utility carts, replacement tires for all those

9    types of human powered products.

10       Q.    I follow you now.  So when you say

11   you also saw ads for your sports training

12   device, that was another example of an ad you

13   saw based off your search history, is that what

14   your -- I'm just trying to understand the

15   search history related to the ads?

16           MR. KOLESNIKOV:   Objection.

17       Misstates prior testimony.  Asked and

18       answered.  Go ahead.

19       A.    I previously was searching for tires

20   to buy, replacement tires to buy for a sports

21   training device, I was trying to build and then

22   the next day, which was a few days ago, I, in

23   searching for, not searching for, reading,

24   being on the page that had my Gmail there were

25   ads to the right.

 1  those icons and then another minute, two
 2  minutes later my screen will be ready for me to
 3  go right to my Gmail or have the Gmail right
 4  there.
 5       Q.    If it makes you feel any better, the
 6  newer computers are still pretty slow.
 7       A.    It doesn't matter to me.  I'm not in
 8  business.
 9       Q.    Were you checking your Gmail account
10  every morning prior to filing this lawsuit?
11       A.    Most likely.
12       Q.    Have you continued to check your
13  Gmail account every morning since the filing of
14  the lawsuit?
15       A.    Yeah, I try to.
16       Q.    I think you mentioned earlier that
17  you use the web browser that comes on your
18  desktop computer?
19       A.    Yes.
20       Q.    Is that the web browser that you use
21  to check your Gmail account?
22       A.    Yes.
23       Q.    Do you know if that browser is the
24  Edge web browser?
25       A.    I think it is.  I have seen Edge

Page 132

1  a Google search so you don't have to receive

2  these other costs as you mentioned?

3            MR. KOLESNIKOV:  Again, objection.

4      Calls for speculation.  Assumes facts not

5      in evidence.

6      A.    Well, to answer your question, I

7  wouldn't pay because I don't think they could

8  protect the privacy.  I don't think it's

9  possible for any one organization on the planet

10 to protect the privacy.  So I don't want to

11 pay.  If somebody says they want to protect it

12 and they want to charge me, I'm not going to

13 pay it.

14            I will talk with a lot of experts,

15 attorneys, and maybe I'll make a decision that

16 maybe I could go for it, I can do it.

17     Q.    What is the basis of your

18 understanding that an organization cannot

19 protect privacy?

20     A.    Well, I didn't realize what was

21 going on with Google until I realized it and

22 they are not protecting my privacy.  I hate to

23 say it.  Don't take it personal young man, but

24 they are not protecting my privacy, my privacy

25 rights and there are costs that I'm bearing and

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 133

1   other costs that I'm probably not bearing, not

2   paying for not in terms of money but in terms

3   of risks.  That's why I say that.

4               MR. KOLESNIKOV:  Is this a good time

5       to break or do you have more questions?

6               MR. ANDERSON:  I just have one more

7       set of questions on this topic.

8               MR. KOLESNIKOV:  You good to go a

9       couple of minutes?

10              THE WITNESS:  I'm fine.

11      Q.    So I think earlier when you were

12  talking about protecting privacy, you were

13  saying that you consider your search history to

14  be something that was private information?

15      A.    Yes.

16      Q.    And do you believe -- do you believe

17  it to be personal information?

18              MR. KOLESNIKOV:  Objection.  Calls

19      for a legal conclusion.

20      A.    Yes.

21      Q.    Do you believe your Google search

22  history to be the type of information where

23  that Google isn't protecting?

24              MR. KOLESNIKOV:  Same objection and

25      calls for expert testimony.

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 134

1        A.      It's not being protected.

2        Q.      When you say it's not being

3    protected, are you referring to your Google

4    search history?

5        A.      Yes, that's what we are talking

6    about, right?

7        Q.      Yes.

8        A.      Nothing in addition, right.

9        Q.      We are talking about your Google

10   search history.  You believe that it's

11   impossible for a company like Google to protect

12   your search history; is that right?

13       A.      Maybe not a hundred percent

14   impossible, but very difficult.  I shouldn't

15   use the word impossible, but it's very

16   difficult.

17       Q.      That's because you believe that

18   Google has sold your search history to show you

19   advertisements; is that correct?

20               MR. KOLESNIKOV:  Objection.  Vague

21       and misstates prior testimony.

22       A.      For maybe other reasons too.

23   Definitely for other reasons I would imagine.

24   Definitely for other reasons, not just the

25   sale, their selling of the information.

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 135

1      Q.    You believe that Google is selling
2   your search history through RTB; is that
3   correct?
4              MR. KOLESNIKOV:   Objection.  Calls
5       for expert testimony.
6      A.    That's what appears to be happening
7   to me.
8      Q.    What appears to be happening to you
9   is the basis of your lawsuit; is that correct?
10      A.    The basis for the lawsuit is set out
11   in the lawsuit and I believe that's part of it.
12      Q.    So you would agree with me that you
13   believe that Google cannot protect your search
14   history through the RTB program; is that
15   correct?
16              MR. KOLESNIKOV:   Objection.
17       Misstates testimony.  Calls for expert
18       testimony.
19      A.    I can't quite agree to the precise
20   wording of your statement.  Maybe if you worded
21   it a little bit differently, a different way, I
22   can agree with some of the spirit of it.
23      Q.    But you would agree that you have
24   alleged that Google is selling your personal
25   information through RTB; is that right?

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 136

1      A.    Well, I know I alleged what I
2   alleged in the lawsuit and I stand behind that.
3   I allege that because I had attorneys that
4   helped me make sure that everything is true and
5   correct.
6            MR. KOLESNIKOV:  Is it a good point
7        to break?  We've gone another five minutes
8        already.
9            MR. ANDERSON:  One more minute.
10       Q.    Are you okay?
11       A.    Yes.
12       Q.    If you were to learn that Google
13   does not share your search history through RTB,
14   how does that change your allegations?
15            MR. KOLESNIKOV:  Objection.  Assumes
16        facts not in evidence.  Calls for expert
17        testimony.  Calls for a legal conclusion.
18        Calls for speculation.
19       Q.    You can answer.
20       A.    Well, in that world where you are
21   saying that we are assuming Google is not doing
22   what my attorneys and I seem to think they are
23   doing, if they are not doing it, well that
24   would be a great world to live in.
25       Q.    This is a good breaking point for

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 137

1    me.

2              THE VIDEOGRAPHER:   The time is 2:18.

3        We are off the record.

4              (Brief recess taken.)

5              THE VIDEOGRAPHER:   The time is 2:36.

6        We are on the record.

7    BY MR. ANDERSON:

8        Q.    So I think we can hopefully speed

9    through these next set of questions.  When you

10   use the internet, do you use the internet to

11   read the news?

12       A.    Usually.

13       Q.    And to check your e-mail?

14       A.    Yes.

15       Q.    Do you use the internet for any

16   other purpose?

17              MR. KOLESNIKOV:  Objection.  Vague.

18       A.    Certain searches.

19       Q.    And so when you say searches, do you

20   mean Google searches?

21       A.    You know I have Google.  I think

22   Google is the search means on my desktop

23   computer, yes.

24       Q.    When you are using the internet --

25   scratch that.

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 138

1          When you are browsing the internet,

2    do you ever click on the advertisements that

3    you see?

4          A.    Actually I am not sure if I browse.

5    So you are saying when I browse, but not to be

6    argumentative --

7          Q.    I'm happy to phrase.

8          A.    I number one check my e-mails

9    dutifully.  I check the world news real quick.

10   I check sports and then I may on some days have

11   to find a service provider or find out about a

12   product whereby who to buy a product from or if

13   on a rare occasion I hear a new term or new

14   concept, new idea or an event, I'll find out

15   about it.  I'll go to the top bar and put in

16   the descriptive words I can get the

17   information.  That's the extent of my -- I'm

18   not a geek.  That fits my needs.

19         Q.    When you are using the internet to

20   look up world news, have you seen -- do you

21   recall seeing advertisements?

22         A.    That's one of the times I feel that

23   I get the most advertisements from, doing that.

24         Q.    Do you ever click on these

25   advertisements?

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 149

1    not need to know more about cookies.  That I
2    just needed to know that cookies were a
3    technical term, with a catchy name and they are
4    part of the computer, part of the computing
5    process, et cetera and I felt it was not
6    necessary.
7              I wanted to make sure I knew,
8    understood what I had to know and I just felt
9    that that would be going into the weeds a
10   little bit.  It's not necessary.
11        Q.    Why do you feel that you could make
12   claims about Google's use of cookies if you
13   only understood that it was a technical term?
14             MR. KOLESNIKOV:  Same objection.
15        Misstates testimony.  Calls for a legal
16        conclusion.
17        A.    Well, I would use my attorney's
18   response now that would be my response and I
19   think I more or less said in the previous
20   response that I was -- I think I -- I felt
21   comfortable enough with what Google was doing
22   and the damages it was doing to me and what
23   activity should be enjoined which I felt was
24   hurting similarly situated plaintiffs and I
25   felt that my taking this action and also the

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 150

1    fact that I had attorneys who were very
2    competent and they had experts who were very
3    competent and they all knew what cookies were
4    and I didn't think it was necessary for me to
5    find out the precise definition of cookies.
6        I just knew it was something vital,
7    something that was a concept for an apparatus
8    within the computer, in the computing world,
9    just one of the many bits of information that I
10    didn't need a precise definition of.
11        Q.    Do you feel like you are similarly
12    situated to plaintiffs who do have an
13    understanding of what cookies are?
14        MR. KOLESNIKOV:   Objection.   Vague.
15    Calls for a legal conclusion.
16        A.    Yes, because we are both being
17    harmed.   We both have damages.
18        Q.    Do you believe you are similarly
19    situated to plaintiffs who have -- scratch
20    that.
21        Do you believe you are similarly
22    situated to plaintiffs who have prevented the
23    use of cookies?
24        MR. KOLESNIKOV:   Same objection.
25    Assumes facts not in evidence.

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 151

1       A.    Do I believe I am --

2       Q.    I can break that down for you.

3       A.    Yeah, I can answer that question if

4  I fully understand it and I'm close to it, but

5  if you can repeat it, it will help me.

6       Q.    I'll break it up for you.  You said

7  like you felt like Google was hurting you and

8  similarly situated plaintiffs; is that correct?

9       A.    Yes.

10       Q.    And my question is, are you

11  similarly situated to plaintiffs who do not

12  allow Google to use their cookies?

13            MR. KOLESNIKOV:  Same objection.

14       Calls for a legal conclusion.  Assumes

15       facts not in evidence.

16       A.    If they are being hurt, you said

17  plaintiffs, so they are alleging they are being

18  hurt by Google's activity, if they are being

19  hurt, I know I am being hurt, I know I have

20  cause that I have damages and I want injunctive

21  relief.

22            So we are not -- we don't have a

23  mutually exclusive situation, those other

24  plaintiffs.  We have -- there is enough

25  commonality, common interests where I can

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 153

1    can -- if you rephrase it, I may be able to

2    construct an answer.  At some point I'm able to

3    keep it simple in my brain and give you a

4    simple answer.

5        Q.    We can move on.  Do you have an

6    understanding of what is an IP address?

7        A.    I know I have one, but I -- like

8    most addresses, I understand that the object

9    has to have an address.  So I have that basic

10   understanding, an IP address.  I call it my

11   computer's address.  In my mind I call it my

12   computer's address.

13       Q.    What is the basis of this basic

14   understanding?

15            MR. KOLESNIKOV:  Objection.  Vague.

16       A.    Well, I know all computers have an

17   IP address and I know that's an important

18   identifier.

19       Q.    How do you know that all computers

20   have an IP address?

21       A.    I found that out when I got my

22   computer and my kids helped me hook it up and

23   all that and I heard that term being used in

24   their conversation.

25       Q.    Would you consider an IP address to

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 154

1    be part of your personal information?

2              MR. KOLESNIKOV:   Objection.   Calls

3         for legal conclusion.

4         A.   You know I think it's something that

5    I should handle, you know, seriously.   I think

6    it's valuable information.   I wouldn't want it

7    out there.

8         Q.   By valuable information do you mean

9    personal information?

10        A.   Yes.

11        Q.   Do you understand that IP addresses

12   can be used to approximate local -- strike

13   that.

14              Do you've understand that IP

15   addresses can be used to approximate your

16   location?

17        A.   I wouldn't doubt it.

18        Q.   Would you consider approximate

19   location to be your personal information?

20              MR. KOLESNIKOV:   Objection.   Vague.

21        Called for a legal conclusion.

22        A.   Yes.

23        Q.   Why would you consider your

24   approximate location to be part of your

25   personal information?

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 155

1           MR. KOLESNIKOV:  Objection.  Calls
2       for legal conclusion.  Asked and answered.
3           A.    I think it's a matter of personal --
4       it's a personal matter.  I just consider
5       something that I want to -- don't want people
6       to have as long as they ask me.
7       Q.    Is there any aspect to location that
8   you would not consider to be personal location?
9           MR. KOLESNIKOV:  Objection.  Vague.
10      Q.    Strike that.  Is there any aspect to
11  location that you would not consider to be
12  personal information?
13      A.    I don't know how to answer that.  I
14  don't know how to answer it.
15      Q.    Do you understand in the Complaint
16  that you are making claims about Google's use
17  of IP information in RTB?
18          MR. KOLESNIKOV:  Objection.  The
19      Complaint speaks for itself.
20      A.    I think I understand that.
21      Q.    What specifically about Google's use
22  of IP address in RTB are you complaining about?
23          MR. KOLESNIKOV:  Same objection.
24      Also calls for expert testimony and
25      conclusion.

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 156

1      A.    I think it's -- I think my attorneys
2   know the answer to that better than I.  I think
3   based upon on what I'm learning here, I need
4   whatever relief we are asking for and that's
5   part of the relief that is needed.
6      Q.    I understand the relief you are
7   asking for, but today I want to know your
8   personal opinion and not your attorney's
9   opinion about what specifically are you
10  complaining about concerning Google's use of IP
11  address in RTB?
12         MR. KOLESNIKOV:  Same objection.
13      Asked and answered.  Calls for technical
14      opinion.  You can answer if you understand
15      the question.
16         THE WITNESS:  I can answer it?
17         MR. KOLESNIKOV:  Yes, you can answer
18      it.
19      A.    I think it's part and parcel to what
20  we are asking for, a relief that we are asking
21  for, the damages because what is being done is
22  my personal information is being sold and I
23  think part of that personal information is the
24  IP address.  In my mind they go hand in hand
25  and I don't want it sold.

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

1      Q.    You have this understanding from

2   your attorneys, correct?

3      A.    From them and from what I have been

4   able to process and learn on my own.

5      Q.    What have you been able to process

6   on your own?

7      A.    It got me to this point, but I can't

8   tell you everything I learned along the way

9   because it's --

10          MR. KOLESNIKOV:  Objection.  Vague.

11   What are you asking specifically?

12      Q.    Well, I believe you testified that

13   your personal information is being sold, right;

14   is that correct?

15      A.    Yes.

16      Q.    And that an aspect of that personal

17   information that is being sold is your IP

18   address, correct?

19      A.    I'm assuming my IP address is part

20   of that personal information being sold.

21      Q.    But you don't know that to be a

22   fact, do you?

23          MR. KOLESNIKOV:  Objection.  Calls

24       for expert testimony.

25      A.    No, because I'm not an expert in

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 167

1  have never reviewed a statement where Google is

2  saying we don't sell your personal information?

3          MR. KOLESNIKOV:  Same objection.

4      Misstates prior testimony.

5      A.    I don't recall seeing that specific

6  claim.

7      Q.    So you have no knowledge of whether

8  Google has ever said -- strike that.

9          You have no personal knowledge of

10  whether Google has promised to not sell your

11  personal information; is that correct?

12          MR. KOLESNIKOV:  Objection.  Vague.

13      A.    I was not aware that they were

14  selling my personal information until I became

15  aware of it.  I can't tell you when.  When that

16  awareness came to mind.

17      Q.    Prior to looking at this document

18  right now, were you aware that Google promised

19  to not sell your personal information?

20          MR. KOLESNIKOV:  Same objection.

21      Vague.

22      A.    Well, at some point I became aware

23  that Google was selling the information and I

24  was surprised.  I was assuming they were not

25  doing that.

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 168

1    Q.    I understand your allegations.  I'm

2    more so focused on what you believe Google has

3    said that it would and would not do.  And so my

4    question is, are you aware of any promises that

5    Google has made to not sell your personal

6    information prior to looking at this document

7    that is in front of you at the moment?

8              MR. KOLESNIKOV:  Objection.  Asked

9         and answered.

10    A.    I'm not aware of the wording and the

11    promise.  I'm not sure how to -- to say that I

12    was -- I hate to say it, but I was assuming

13    that Google is not going to be selling my

14    information.

15    Q.    What was the basis of that

16    assumption?

17    A.    Well, maybe a naive trust.  I

18    can't -- it's difficult for me to answer that

19    question.

20    Q.    Was your assumption based on any

21    statements that Google made to you?

22              MR. KOLESNIKOV:  Objection.  Vague.

23         Go ahead.

24    A.    It may have been, but I can't tell

25    you specifically.

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 175

1    philosophically what are the common interests

2    you have with plaintiffs who don't exit out of

3    advertisements?

4              MR. KOLESNIKOV:  Objection.  Asked

5         and answered.

6         A.    I think that we have a lot in common

7    and not the ads that we are getting.  It's that

8    our information is being taken and sold and

9    that's what I'm focused on and that's when I

10   think of my common interest with the

11   plaintiffs, fellow plaintiffs, that's what I'm

12   focused on and most concerned about, the fact

13   that our privacy is being violated and our

14   information is being sold by Google and that's

15   what I'm worried about.

16             And now we are talking about ads and

17   what my fellow plaintiffs are doing with ads,

18   whether they are Xing out ads or not.  I really

19   don't know how to answer that question, get

20   into that topic.  So with that said, maybe you

21   can rephrase and I'll try and answer the

22   question, okay?

23        Q.    I think you answered.  I do have a

24   follow-up.

25             Do you think that the ads that you

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 176

1    are getting have anything to do with the
2    information that you allege is being sold by
3    Google?
4             MR. KOLESNIKOV:  Objection.  Calls
5        for speculation.  Calls for expert
6        testimony.
7        A.    I don't know why I'm getting the
8    ads.  I don't know why -- I don't know all the
9    reasons why or maybe any of the reasons why I
10   get certain ads.  I don't know -- I don't look
11   at or see most of the ads I get, but if I -- I
12   got the ad for the tire.  Well, Google saw that
13   I was looking for tires and they sent me that
14   ad.  Thank you very much.
15            I don't know why generally I'm
16   getting all the ads and so I don't know if I
17   really can answer your question, but I'm going
18   to try and answer the question if you can
19   restate it with my -- given you heard this
20   information from me.  I want to try to answer
21   that question you asked, so if you can restate
22   it for me.
23       Q.    In your Complaint, are you alleging
24   that Google sells your personal information to
25   advertisers?

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 182

```
 1        Q.    And then it says, "Other data that
 2   could be reasonably linked to such information
 3   by Google."  Do you see that?
 4        A.    I see that.
 5        Q.    Do you recall earlier today when I
 6   asked you about what information do you
 7   consider to be personal information?
 8        A.    Yes.
 9        Q.    And you said you believed it was
10   search history?
11        A.    Yes.
12        Q.    And I believe you also said your
13   age?
14        A.    Yes.
15        Q.    And you also said certain financial
16   information?
17        A.    Yes.
18        Q.    Would you consider any of this
19   information that Google has here to be personal
20   information?
21             MR. KOLESNIKOV:  Objection.  Vague.
22   Calls for a legal conclusion.
23        A.    If the information is about me, yes.
24        Q.    Other than search history, age and
25   certain financial information, is there
```

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 197

1        Q.    Do you believe you are similarly
2    situated -- scratch that.
3              Earlier you said that you don't like
4    the idea of your IP address being in the public
5    domain.  Do you recall saying that?
6        A.    Yes.
7        Q.    Do you think you are similarly
8    situated to fellow plaintiffs who do like the
9    idea of their IP address being in the public
10   domain?
11             MR. KOLESNIKOV:  Objection.  Assumes
12        facts not in evidence.  Calls for a legal
13        conclusion.
14        A.    I don't know what they may or may
15   not believe, my similarly situated plaintiffs
16   on that particular point.  We have common
17   interests and we may have interests that are
18   not so common.
19        Q.    Just to make sure I understand you
20   correctly, you think that you have -- you still
21   have a common interest with fellow plaintiffs
22   who do like the idea of their IP address being
23   in the public domain?
24        A.    The question of whether they like --
25   the question of whether they don't mind their

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 198

1    IP address being in the public domain does not

2    create a conflict between us in any way.  We

3    can disagree on that.

4        Q.    So, I guess just what I'm just

5    trying to figure out is your understanding of

6    why that does not create a conflict?

7            MR. KOLESNIKOV:  I'm sorry, is there

8        a question there?

9        Q.    I'll rephrase.  Why do you think

10   that you can disagree with fellow plaintiffs on

11   whether you are okay with your IP address being

12   in the public domain?

13           MR. KOLESNIKOV:  Objection.  Vague.

14       A.    I haven't talked with the other

15   plaintiffs on this issue, so I can't opine.  I

16   cannot opine on this issue, this single issue.

17   I know we have a lot of issues in common,

18   positions, interests in common and so I -- if

19   you narrow the question down, I could probably,

20   you know, give you my opinion, give you a yes

21   or no on it.

22       Q.    Okay.  So let's narrow it and focus

23   it specifically on IP address.

24           You do understand that you are

25   seeking to represent a class of thousands of

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

1    users across the country, right?

2        A.    Yes.

3        Q.    Do you understand that?

4        A.    Yes.

5        Q.    You do understand that some of them

6    may be okay with their IP address being in the

7    public domain; do you understand that?

8        A.    Yes.

9        Q.    How would -- how could you represent

10   them -- strike that.

11           Earlier you used the word equally

12   represent.  How could you equally represent

13   them if you all have differing views on whether

14   it is okay for your IP address to be in the

15   public domain?

16           MR. KOLESNIKOV:  Objection.  Assumes

17       facts not in evidence.  Calls for a legal

18       conclusion.

19       A.    Most of us I feel -- most of us have

20   the overwhelming common interests as to what

21   the Complaint states and that this one minor --

22   excuse me, I'm calling it a minor insignificant

23   fact for me among the many, many concerns that

24   can go into the topic of having your personal

25   information visible worldwide, but so it could

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 200

1    be a significant, and it is for me, item that

2    of my IP address.  So, but I don't think it's

3    something that would prevent me from wanting to

4    equally share redress, damages and other relief

5    that a court would deem appropriate.

6         Q.    But I guess what I'm trying to

7    understand is how is someone who has no

8    objection to the use of the IP address, how are

9    they damaged in the same way you are?

10              MR. KOLESNIKOV:  Objection.  Asked

11         and answered.  Calls for a legal

12         conclusion.  Calls for expert testimony.

13         A.    In my opinion many or most or some

14    of the plaintiffs find it very important that

15    this -- their personal information not be sold

16    and if it's going to be sold, that they be

17    compensated and I would agree with, but that is

18    not contradictory to or affected by my belief

19    that I want my IT address -- is it IT or IP?

20         Q.    IP.

21         A.    IP address made public.  They may

22    deem that is okay if their IP address is made

23    public.  I just don't know how that would be on

24    every single concern, on every single issue on

25    this whole matter.

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 208

1          testimony.

2          A.    I don't think so.

3          Q.    Do you believe you've ever been

4     shown an advertisement based on your identity?

5                MR. KOLESNIKOV:   Same objection.

6          A.    Probably.

7          Q.    What is the basis of that belief?

8          A.    Well, my age, senior citizen.

9          Q.    What is the basis that you have been

10    shown advertisements based on your age?

11         A.    I seem to have received many

12    products that would be been targeted for senior

13    citizens.

14         Q.    What are the examples of those

15    products?

16         A.    Pain management and that's what

17    comes to mind right now.   There were others.

18         Q.    Do you recall which websites you

19    were visiting when you saw those pain

20    management ads?

21         A.    No, I --

22         Q.    Do you believe that you have ever

23    been shown an ad based off of your personal

24    beliefs?

25         A.    No.

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 209

1    Q.    Do you believe you've been shown an
2  ad based off of any of your sexual interests?
3         MR. KOLESNIKOV:   Objection.  Calls
4    for speculation.
5    A.    No.
6    Q.    What is the basis of your belief
7  that you were shown pain management ads because
8  of your age?
9    A.    You know, the older we get, the more
10  we need remedies and I think I may have done
11  some research.  That's the reason why now that
12  I think about it, a few months ago.
13   Q.    Do you think you were shown pain
14  management ads based on information that Google
15  shared through RTB?
16        MR. KOLESNIKOV:   Objection.  Calls
17   for speculation.
18   A.    My brain is too busy and too
19  stressed right now, but it seems to be
20  recalling that a few months ago I did a little
21  research for a product regarding -- a medical
22  product.  I can't even recall what it was for.
23  I think I wound up just calling my 87 year old
24  sister in California, but I did enough research
25  where I think I got some ads for pain relief.

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 210

1   That's right.  I wanted to read up on how to

2   spell and read up on an herb, turmeric.  I

3   called my sister.

4        Q.    Do you think you were shown this ad

5   because of information that was shared through

6   RTB?

7              MR. KOLESNIKOV:  Objection.  Asked

8        and answered.  Calls for speculation.

9        A.    Well now that we are here now, I was

10  suspecting that there is a connection and

11  now -- now that I heard the term RTB, yes.  So

12  that's right I think.

13       Q.    When you said research earlier, were

14  you referring to -- were you referring to

15  Google search?

16       A.    On my computer I just put turmeric

17  products and I got the ads for turmeric.

18       Q.    Do you recall where on your computer

19  you entered, you entered turmeric products?

20       A.    Upper left-hand corner.

21       Q.    Were you using a web browser at this

22  time?

23       A.    I really don't know what you call it

24  up there.  It's -- if I want to -- if I want to

25  get information on anything, that's where I do

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 217

1          MR. KOLESNIKOV:  Objection.  Asked

2      and answered.

3      A.    I hate to keep asking you to repeat

4  the question, but I want to be certain I

5  understand it.  Can you repeat it?  It was a

6  short question.  Can you repeat it, please?

7      Q.    Yes.  Do you see where Google says

8  "We might use data that includes your searches

9  and location?"

10     A.    Yes.

11     Q.    Do you have any objection to that?

12         MR. KOLESNIKOV:  Objection.  The

13     document speaks for itself.

14     A.    I think I said before I don't want

15  my personal information disseminated.  Maybe I

16  didn't use that word, but -- I -- I am not

17  happy with the fact that they are selling my

18  data, et cetera, as I said many times before.

19     Q.    According to this document, Google

20  uses that data without identifying you

21  personally to third parties.  Do you believe

22  that statement to be true?

23         MR. KOLESNIKOV:  Objection.  Assumes

24     facts not in evidence.  Calls for

25     speculation.

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 218

1      A.    Well, maybe at times they are not

2  identifying me, but other times they may be and

3  I think then they are because I'm getting

4  targeted ads.  So that's -- I'm concerned about

5  my personal data being disseminated worldwide.

6      Q.    Let's move on to the next document

7  to another exhibit from your Complaint.  I

8  think it's Toronto Exhibit 14.  It should be

9  already there in front of you.

10      A.    Yes, I see it.  I'm getting it in

11  place.

12           (Whereupon document was marked

13      Exhibit 14 for identification as of this

14      date.)

15      A.    Okay, got it in my hand.

16      Q.    Have you ever seen this document

17  before?

18      A.    I may have.

19      Q.    For the record, Toronto Exhibit 14

20  is a copy of a Google website entitled "Data

21  Practices & Transparencies."  It was Exhibit 24

22  to the Complaint.

23           We are going to turn your attention

24  to page 2, 2 in the bottom right.  Do you see

25  that?

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 230

1    that correct?  Is that your testimony?

2            A.    Yeah, you --

3                  MR. KOLESNIKOV:  Objection.  Vague.

4        Which statement are you referring to?

5            Q.    The ad personalization being turned

6    on.  Let's do it this way.

7                  Do you have an objection to Google

8    using your information to serving you ads?

9                  MR. KOLESNIKOV:  Objection.  Asked

10        and answered.

11            A.    Yes.

12            Q.    And you had this objection before

13    the filing of this lawsuit; is that correct?

14            A.    Yes.

15            Q.    But have you ever taken any steps to

16    limit that, Google's use of using your

17    information for serving you advertisements?

18            A.    I don't believe I did, until I

19    joined on this Complaint of course.

20            Q.    Right, and so after filing the

21    Complaint, have you taken any action to prevent

22    Google from using your information to make ads

23    useful to you?

24                  MR. KOLESNIKOV:  Objection.  Asked

25        and answered.

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 278

1      Q.    Have you ever visited your Edge

2  browser settings?

3      A.    I don't think so.

4      Q.    Have you ever visited any privacy

5  settings for your Edge browser?

6      A.    I don't think so.

7      Q.    Have you ever investigated whether

8  there was any privacy settings for your Edge

9  browser?

10     A.    Probably not.

11     Q.    Do you think you have any common

12 interests to plaintiffs who have investigated

13 their settings related to the Edge browser?

14           MR. KOLESNIKOV:  Same objection as

15     before.

16     A.    Yes, I have common interests with

17 them.

18     Q.    I think earlier you may have

19 testified that you believe you have been

20 injured by Google's alleged conduct?

21     A.    Yes.

22     Q.    And how do you think you've been

23 injured?

24           MR. KOLESNIKOV:  Objection.  Asked

25     and answered.

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 279

1        A.    Shall I repeat?

2              MR. KOLESNIKOV:  You can answer

3        again, yes, please.

4        A.    As I said before, selling my data, I

5    don't know where it is going.  It could be

6    going to foreign countries, countries that are

7    possibly planning war against us.  Information

8    that is -- may cost me money.

9              They are not respecting my rights,

10   besides my privacy.  I got other rights that

11   are jeopardized and it's costing me money.

12       Q.    How is --

13       A.    And then they are turning around and

14   selling it, selling my information to boot,

15   besides having me at risk having my personal

16   sensitive information out of there all over the

17   world making me subject to all sorts of e-mails

18   and inquiries, not just sellers valuable

19   services, but putting me at risk.

20             So it's harming me, hurting me,

21   worrying me.  It made me so upset that I

22   actually got involved in this case and are

23   going all the way with it no matter how many

24   energy -- how much cost it is going to have.

25   They shouldn't be doing this to people.  It's

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

1    not just the unjust enrichment.  It's the risks
2    that they are presenting to us.
3         Q.    What is your basis for -- strike
4    that.
5              Why do you think Google's alleged
6    conduct is costing you money?
7         A.    Counselor, I'm 72.  I know what
8    costs me money and I know what doesn't.  That's
9    a long, long conversation.  We don't have time.
10   I don't want to expend the energy.
11        Q.    Mr. Toronto, unfortunately you are a
12   named plaintiff in this lawsuit and we have an
13   entitlement to this information, but if could
14   you briefly summarize why you think Google's
15   alleged conduct is costing you money?
16             MR. KOLESNIKOV:  Objection.  Asked
17        and answered.  You can answer him again.
18        A.    Sir, excellent suggestion.  I'm
19   going to briefly summarize.  I almost have so
20   much time and energy in a day and this causes
21   me great worry and it's draining on me.
22             The fact of knowing that my data is
23   being sold, knowing that there is also risks
24   and it's putting me in contact with people that
25   I should not be in contact with, all this

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 286

1        This concludes the video recorded

2        deposition of Salvatore Toronto taken by

3        the defendant on Thursday, March 30, 2023.

4        The time is 6:34 p.m. eastern daylight

5        time and we are going off the record.

6              (Time noted:  6:34 p.m.)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 288

1

2                    C E R T I F I C A T E

3             I, FRAN INSLEY, hereby certify that the

4    Deposition of SALVATORE TORONTO was held before

5    me on the 30th day of March, 2023; that said

6    witness was duly sworn before the commencement

7    of testimony; that the testimony was taken

8    stenographically by myself and then transcribed

9    by myself; that the party was represented by

10   counsel as appears herein;

11            That the within transcript is a true

12   record of the Deposition of said witness;

13            That I am not connected by blood or

14   marriage with any of the parties; that I am not

15   interested directly or indirectly in the

16   outcome of this matter; that I am not in the

17   employ of any of the counsel.

18            IN WITNESS WHEREOF, I have hereunto set

19   my hand this 14th day of April, 2023.

20

21

                      FRAN INSLEY

22

23

24

25

1    **PRITZKER LEVINE LLP**                    **SIMMONS HANLY CONROY LLC**
2    Elizabeth C. Pritzker (SBN 146267)          Jason 'Jay' Barnes (admitted *pro hac vice*)
     1900 Powell Street, Suite 450               112 Madison Avenue, 7th Floor
3    Emeryville, CA 94608                        New York, NY 10016
     Tel.: (415) 692-0772                        Tel.: (212) 784-6400
4    Fax: (415) 366-6110                         Fax: (212) 213-5949
     ecp@pritzkerlevine.com                      *jaybarnes@simmonsfirm.com*
5
     **BLEICHMAR FONTI & AULD LLP**             **COTCHETT, PITRE & McCARTHY, LLP**
6    Lesley Weaver (SBN 191305)                  Nanci E. Nishimura (SBN 152621)
     555 12th Street, Suite 1600                 840 Malcolm Road, Suite 200
7    Oakland, CA 94607                           Burlingame, CA 94010
     Tel.: (415) 445-4003                        Tel.: (650) 697-6000
8    Fax: (415) 445-4020                         Fax: (650) 697-0577
9    *lweaver@bfalaw.com*                        *nnishimura@cpmlegal.com*

10   **DICELLO LEVITT LLC**                      **BOTTINI & BOTTINI, INC.**
     David A. Straite (admitted *pro hac vice*)  Francis A. Bottini, Jr. (SBN 175783)
11   485 Lexington Ave., Suite 1001              7817 Ivanhoe Avenue, Suite 102
     New York, NY 10017                          La Jolla, CA 92037
12   Tel.: (646) 993-1000                        Tel.: (858) 914-2001
     Fax: (212) 213-5949                         Fax: (858) 914-2002
13   *dstraite@dicellolevitt.com*                *fbottini@bottinilaw.com*
14
15   *Counsel for Plaintiffs and the Proposed Class*

16                        **UNITED STATES DISTRICT COURT**
                       **NORTHERN DISTRICT OF CALIFORNIA**
17                            **SAN JOSE DIVISION**
18

19   In re Google RTB Consumer Privacy          Master File No. 21-cv-02155-YGR-VKD
     Litigation,
20                                               **SALVATORE TORONTO'S DEPOSITION**
                                                 **TRANSCRIPT ERRATA SHEET**
21   This Document Relates To:  *All Actions*
22
23

24        Deponent:            Salvatore Toronto

25        Deposition Date:     March 30, 2023

26

27        Return To:           Veritext Legal Solutions

28

| Page(s) and Line(s) | Correction/Change | Reason(s) |
|---|---|---|
| 14:19 | Change < have > to < had > | Typographical error |
| 15:24 | Change < did > to < done > | Typographical error |
| 21:2 | Change < past > to < trust > | Typographical error |
| 26:3 | Change < Yes, before.  Assuming it was > to < Yes.  Before, I was assuming it was > | Typographical error |
| 62:11 | Change < sue > to < seal > | Typographical error |
| 107:3 | Change < real news > to < world news > | Typographical error |
| 119:4–11 | Change < I just know that my youngest daughter and youngest son as previously stated told to you, maybe yesterday, they have access on their iPhones to get into my computer and they do that relative to their financial aid and whatever student activities that they need my permission or my information for.  So just the three of us would be on my computer. > to < I just know that my youngest daughter and youngest son have access on their iPhones to the same FAFSA e-mails that I receive, and they do that relative to their financial aid and whatever student activities that they need my permission or my information for.  So just the three of us would have access to that. > | Clarification / correction |
| 120:4 | Change < Yes > to < I don't know. > | Clarification / correction |
| 120:9 | Change < Sometimes when they are over. > to < Sometimes when they are over, they help me solve issues with my computer. > | Clarification / correction |
| 120:23–25 | Change < I only know when they are doing something for me or relative to me they may be doing that. > to < I only know when they are doing something for me or relative to me on my computer. > | Clarification / correction |

Salvatore Toronto's Deposition Transcript Errata Sheet

| 121:4 | Change < Maybe > to < I don't know > | Clarification / correction |
|---|---|---|
| 122:16 | Change < iPhone > to < iPhones > | Typographical error |
| 123:4–6 | Change < Anyone other than my kids, because my kids have used it. If they have used their iPhone to access it? > to < Are you asking if my kids have used their iPhones to access it? > | Clarification / correction |
| 123:14 | Change < iPhone > to < iPhones > | Typographical error |
| 123:15 | Change < desktop computer > to < desktop computers > | Typographical error |
| 123:20 | Change < as > to < with > | Typographical error |
| 123:24 – 124:2 | Change < They are just going to what I access from my computer because they have access to the same account at the FAFSA. > to < They just have the same access to what I have access to from my computer because they access the same account on the FAFSA site. > | Clarification / correction |
| 124:6–7 | Change < I have e-mails from them and I call them on the phone > to < I receive e-mails from them and I call my kids on the phone > | Clarification / correction |
| 124:8–9 | Change < I check it and they can see my FAFSA e-mail > to < Check it.  And they can see the FAFSA e-mail > | Typographical error |
| 124:18 | Change < on the computer > to < on my computer > | Typographical error / clarification |
| 125:12 | Change < computer > to < computers > | Typographical error |
| 125:13 | Change < iPhone > to < iPhones > | Typographical error |
| 125:16 | Change < get this to > to < get this related to > | Typographical error |
| 125:17 | Change < I got an FAFSA > to < I got an FAFSA e-mail > | Typographical error / clarification |

| 128:6–7 | Change < From time to time Google would know better than me. > to < From time to time.  Google would know better than me. > | Typographical error |
|---|---|---|
| 130:15 | Change < alternate Gmail > to < alternate e-mail > | Typographical error |
| 133:2 | Change < paying for not in terms > to < paying for in terms > | Typographical error |
| 140:5 | Change < the news comes on > to < the computer comes on > | Typographical error |
| 140:6 | Change < on their world news > to < on there called "world news" > | Typographical error |
| 173:22 | Change < don't to see > to < don't want to see > | Typographical error |
| 200:19 | Change < I want > to < I don't want > | Typographical error |
| 261:22–23 | Change < There is going to be an ongoing foundation. > to < This is going to be an ongoing objection to foundation. > | Typographical error |
| 279:18 | Change < sellers valuable > to < sellers of various > | Typographical error |

## ACKNOWLEDGEMENT OF DEPONENT

I, Salvatore Toronto, acknowledge that I have reviewed the transcript of my deposition testimony taken in this matter and hereby make the corrections identified in this Errata Sheet.  I request that the foregoing changes be entered upon the record for the reasons given and that the court reporter attach the present Errata Sheet to the original of the deposition transcript.

DATED:  May 15, 2023

_Sal Toronto_
SALVATORE TORONTO

1

## CERTIFICATE OF SERVICE

2    I, Yury A. Kolesnikov, certify that on May 15, 2023, I caused a true and correct copy of the

3    foregoing to be sent via electronic mail to the following:

4    **Veritext Legal Solutions**

5    cs-corp@veritext.com

6    **COOLEY LLP**

7    Michael G. Rhodes
Whitty Somvichian

8    Anu S. Dhillon
Kelsey R. Spector

9    Reece Trevor
Khary Anderson

10   3 Embarcadero Center, 20th Floor
San Francisco, CA 95111-4004

11   Tel: (415) 693-2000

12   rhodesmg@cooley.com
wsomvichian@cooley.com

13   adhillon@cooley.com
kspector@cooley.com

14   rtrevor@cooley.com
kjanderson@cooley.com

15

16   *Counsel for Defendant Google, LLC*

17                                        */s/ Yury A. Kolesnikov*

18                                        Yury A. Kolesnikov
                                          BOTTINI & BOTTINI, INC.

19

20

21

22

23

24

25

26

27

28

Case No. 5:21-cv-02155-LHK-VKD