# **<u>Exhibit 11</u>**

Page 1

1                UNITED STATES DISTRICT COURT

              NORTHERN DISTRICT OF CALIFORNIA

2                      OAKLAND DIVISION

3

4    In re:  Google RTB Consumer )

             Privacy Litigation  )

5                                )

                                 )

6                                )4:21-CV-02155-YGR-VKD

                                 )

7                                )

                                 )

8                                )

9         DEPOSITION OF KIMBERLEY WOODRUFF, produced, sworn

10   and examined on May 4, 2023, between the hours of nine

11   o'clock in the forenoon and five o'clock in the

12   afternoon of that day, at the Courtyard by Marriott,

13   610 Bolivar Street, Jefferson City, Missouri 65101,

14   before Jeanne M. Pedrotty, a Certified Court Reporter

15   (MO) and Certified Shorthand Reporter (IL), in a

16   certain cause now pending in the United States

17   District Court, Northern District of California,

18   Oakland Division, in re:  Google RTB Privacy

19   Litigation; on behalf of the Defendant.

20

21

22

23

24

25      Job No. CS5895022

1          I N D E X   O F   E X A M I N A T I O N
2                                                    Page
3          Questions By Mr. Wong. . . . . . . . 5
           Questions by Mr. Barnes. . . . . . 181
4
5             I N D E X   O F   E X H I B I T S
6          Exhibit 1 (complaint). . . . . . . . 37
           Exhibit 2 (Facebook account). . . . .92
7          Exhibit 3 (amended complaint). . . . 112
           Exhibit 4 (e-mail). . . . . . . . . .114
8          Exhibit 5 (e-mail). . . . . . . . . .116
           Exhibit 6 (Google document). . . . . 118
9          Exhibit 7 (privacy policy). . . . . .121
           Exhibit 8 (Google document). . . . . 128
10         Exhibit 9 (Google settings). . . . . 130
           Exhibit 10 (screenshot). . . . . . . 133
11         Exhibit 11 (e-mail). . . . . . . . . 137
           Exhibit 12 (screenshot). . . . . . . 139
12         Exhibit 13 (screenshot). . . . . . . 148
           Exhibit 14 (screenshot). . . . . . . 150
13         Exhibit 15 (screenshot). . . . . . . 151
           Exhibit 16 (screenshot). . . . . . . 154
14         Exhibit 17 (screenshot). . . . . . . 156
           Exhibit 18 (screenshot). . . . . . . 159
15         Exhibit 19 (screenshot). . . . . . . 159
           Exhibit 20 (screenshot). . . . . . . 160
16         Exhibit 21 (Jefferson Bank webpage). 162
           Exhibit 22 (Staples privacy policy). 164
17
18         (All exhibits are attached to the
    transcript.)
19
20
21
22
23
24
25

```
 1              A P P E A R A N C E S
 2
              For the Plaintiffs:
 3
                  Jay Barnes
 4                Jenny Paulson
                  Simmons Hanly Conroy
 5                1 Court Street
                  Alton, IL  62002
 6
 7            For the Defendant:
 8                Kyle Wong
                  Cooley LLP
 9                3 Embarcadero Center
                  San Francisco, CA  94111
10
11
12
              Also present: Tim Perry, videographer
13
14
15
16    Court Reporter:
      Jeanne M. Pedrotty, CCR/CSR
17    Missouri CCR #618
      Illinois CSR #084-003893
18    Veritext Legal Solutions
      701 Market Street
19    St. Louis, Missouri 63101
      (314) 230-7260
20    Www.veritext.com
21
22
23
24
25
```

1      IT IS HEREBY STIPULATED AND AGREED by and between

2    counsel for the Plaintiffs and counsel for the

3    Defendant that this deposition may be taken in

4    shorthand by Jeanne M. Pedrotty, CCR/CSR, a Certified

5    Court Reporter and Certified Shorthand Reporter, and

6    afterwards transcribed into typewriting; and the

7    signature of the witness is expressly reserved.

8                  *     *     *     *     *

9            VIDEOGRAPHER:   Good morning.  We are on

10   the record at 9:47 on May 4th, 2023.  This is Media

11   Unit 1 of the video recorded deposition of Kimberley

12   Woodruff taken by counsel for Defendant in the matter

13   of Google RTB Consumer Privacy Litigation filed in the

14   US District Court for Northern District of California,

15   Case No. 4:21-CV-02155.  This deposition is being held

16   at the Courtyard by Marriott at 610 Bolivar Street in

17   Jefferson City, Missouri.

18            My name is Tim Perry, certified legal video

19   specialist.  Our court reporter is Jeanne Pedrotty and

20   we are with Veritext Legal Solutions.  Counsel, will

21   you please identify yourselves for the record?

22            MR. WONG:  Kyle Wong from Cooley LLP on

23   behalf of Defendants.

24            MR. BARNES:  Jay Barnes from Simmons Hanly

25   Conroy on behalf of Ms. Woodruff and the punitive

1    which you were talking to Mr. Barnes you hadn't read

2    Google's definition; is that correct?

3         A.    Correct.

4         Q.    So when you were talking to him and you

5    felt that it was, quote/unquote, wrong for Google to

6    share personal information, what did you mean by

7    personal information?

8              MR. BARNES:  Objection to the extent it

9    calls for expert opinion, legal conclusion and that

10   your answer would reveal content of privileged

11   communications with counsel.

12             THE WITNESS:  I would consider personal

13   information -- at that time I considered it to be

14   anything that was personally linked to me.

15        Q.   (By Mr. Wong)  What do you mean by

16   personally linked to you?

17        A.    For example, my name, my e-mail address,

18   the address that identifies my computer.

19        Q.    Anything else that you can think of?

20        A.    As pertains to that conversation at that

21   time, that is what I had in my head.

22        Q.    And has that definition changed over time?

23   I'm sorry, strike that.  Has that definition changed

24   since that time?

25             MR. BARNES:  Objection; vague.  Calls for a

1   legal conclusion, expert opinion, and to the extent it

2   reveals content of privileged communications.

3                THE WITNESS:  Can you repeat your question,

4   please?

5            Q.   (By Mr. Wong)  Has that definition changed

6   since that time?

7            A.   It has expounded -- expanded.

8            Q.   And what has it expanded to include?

9            A.   Personal information is also anything that

10  identifies me.  Anything that can be attached to

11  something else that can identify me.

12           Q.   Can you give me an example?

13           A.   My address, my phone number, my search

14  history, what I look at, what apps I use.  That's all

15  personal to me.

16           Q.   When you say, "search history", what do you

17  mean?

18           A.   What I mean by search history is what I

19  look at on the internet.

20           Q.   How do you browse the internet?

21                MR. BARNES:  Objection; vague.

22                THE WITNESS:  Through Google, Chrome,

23  usually those are the main two.

24           Q.   (By Mr. Wong)  When you say, "Google", what

25  do you mean?

1          Q.   I'm sorry.  Just so I can make sure, do you

2     ever use your iPhone currently to surf the web?

3               MR. BARNES:  Objection; vague.

4               THE WITNESS:  To my best recollection, no.

5     I just use it -- no, they use it.

6          Q.   (By Mr. Wong)  But you do still use it for

7     applications that are on the phone?

8          A.   For one app, yes.

9          Q.   And what is that app?

10         A.   Spades.

11         Q.   Is that the card game?

12         A.   Yes.

13         Q.   Do you review filings in this case before

14    they are filed?

15              MR. BARNES:  Objection; vague.

16              THE WITNESS:  No.

17         Q.   (By Mr. Wong)  Do you review filings after

18    they have been filed?

19              MR. BARNES:  Objection; vague as to the

20    term, "filings".  It calls for a legal conclusion as

21    to the term, "filings".

22              THE WITNESS:  Can you clarify what you mean

23    by "filings"?

24         Q.   (By Mr. Wong)  Have you seen the complaint

25    in this case?

1          A.    I have.

2          Q.    Have you seen any briefs with respect to

3     motion to dismiss?

4          A.    Yes.

5          Q.    Do you know if you saw those before they

6     were filed in court?

7               MR. BARNES:  Objection; compound; vague.

8               THE WITNESS:  I don't believe so.

9          Q.    (By Mr. Wong)  Did you collect any

10    documents in relation to this litigation?

11         A.    Did I personally collect documents?

12         Q.    Yes.

13         A.    No.

14         Q.    Did you give over your phone or your laptop

15    to someone affiliated with Mr. Barnes for that

16    purpose; to your knowledge?

17         A.    Yes.

18         Q.    And how about your e-mails, did you search

19    your e-mails for any documents relevant to this case?

20         A.    No.  May I ask a question for clarity?

21               MR. BARNES:  Well, objection; vague.

22    Mr. Wong, do you mean by, "searching," she manually

23    searched them or --

24               MR. WONG:  Yes.

25               MR. BARNES: -- as with your previous

1    question, there were others that used electronic means
2    to search them?
3                    MR. WONG:  Yes.
4                    MR. BARNES:  You just mean the manual
5    search?
6                    MR. WONG:  Did she manual search?  Yes.
7                    THE WITNESS:  No.
8            Q.   (By Mr. Wong)  Did you turn over the
9    ability to access your e-mails to a third party so
10   that they could search your e-mails for this case?
11           A.   Yes.
12           Q.   What did you do -- I don't want to know the
13   substance of the discussions, but did you meet with
14   anyone to prepare for this deposition?
15           A.   Yes.
16           Q.   And who were those people?
17           A.   I met with my attorney, Jay Barnes, I met
18   with another attorney -- another attorney by the name
19   of Ann Tran.  And there were other attorneys who maybe
20   observed, I can't remember their names.
21           Q.   Do you know how many?
22           A.   One that I can recall.
23           Q.   And is your understanding that they are all
24   affiliated as attorneys for the plaintiffs in this
25   case?

1    A.    Yes.

2    Q.    And how many times did you meet with any of

3    your attorneys in preparation for this deposition?

4    A.    Does that include gathering information

5    from my devices?

6    Q.    No.  Just actually preparing for the

7    deposition.

8    A.    Okay.

9    Q.    For the expressed purpose of talking about

10   what would happen and going over questions, et cetera?

11            MR. BARNES:  And you're doing a very good

12   job and he is doing a very good job not asking the

13   questions in a way that would cause you to reveal

14   the --

15            THE WITNESS:  Yes.

16            MR. BARNES:  -- but and so, I just want

17   to -- I feel like I need to say something because I

18   haven't objected enough yet, Kyle.  So let's do a

19   clean record.  He is just talking about the number of

20   times -- go ahead and ask the question again.  Sorry.

21    Q.    (By Mr. Wong)  Where is that question?  How

22   many times did you meet with any of your attorneys in

23   preparation for this deposition?

24    A.    To my best recollection, five to seven.

25    Q.    And was that all over the past month?

1        A.    No.

2        Q.    Do you know what the timeframe was for

3    those meetings?

4              MR. BARNES:  Objection; vague as to

5    "timeframe."

6              THE WITNESS:  Within the last three months.

7        Q.    (By Mr. Wong)  And for approximately how

8    long did you actually meet with your lawyers; if you

9    can estimate?

10       A.    On average, 45 minutes to an hour.

11       Q.    Without telling me the documents that you

12   reviewed, did you review any documents during your

13   preparation for this deposition?

14       A.    Yes.

15             MR. WONG:  And Jay, did all of those doc --

16   are all of those documents either produced in this

17   litigation or public?

18             MR. BARNES:  Yes.

19       Q.    (By Mr. Wong)  Have you discussed this

20   deposition with anyone other than your lawyers?

21       A.    No.

22       Q.    Do you know any of the other named

23   plaintiffs in this action?

24       A.    I do not.

25       Q.    Have you ever met them or spoken with them?

```
 1          A.   I have not.
 2          Q.   What do you understand the term "class
 3   action" to mean?
 4               MR. BARNES:  Objection to the extent it
 5   calls for a legal conclusion.  You may answer.
 6               THE WITNESS:  To my understanding a class
 7   action is when a group of people are represented by
 8   lawyers to bring a case against someone who they feel
 9   has done them wrong.
10          Q.   (By Mr. Wong)  And do you understand that
11   this litigation is a class action lawsuit?
12          A.   I do.
13          Q.   And do you understand that you're a named
14   plaintiff in this lawsuit?
15          A.   I do.
16          Q.   What does that term mean to you?
17               MR. BARNES:  Objection; calls for a legal
18   conclusion.  You may answer.
19               THE WITNESS:  That means to me that I am
20   bringing -- I'm one of the ones bringing the lawsuit.
21               MR. BARNES:  Kyle, for what it's worth, not
22   withstanding our short break, I think we've been going
23   about an hour.  I don't know where you are in this
24   line of questioning.  I'm just putting it on your
25   radar.
```

1                  THE WITNESS:  Okay.

2                  MR. BARNES:  Ms. Shah, please mute.  Thank

3     you.

4                  MR. WONG:  Okay.  Sorry.  Now I'm lost --

5                  MR. BARNES:  You were on Paragraph 30 on

6     Page 10.

7                  MR. WONG:  No, Ms. Woodruff asked if I

8     could --

9                  MR. BARNES:  -- repeat the question and I

10    gave the soliloquy about reviewing the document, which

11    was --

12         Q.   (By Mr. Wong)  Here we go.  So if someone

13    authorized the practices complained of, do you agree

14    they are not part of this group?

15                  MR. BARNES:  Same objection.

16                  THE WITNESS:  In my opinion, if they

17    knowingly authorized --

18         Q.   (By Mr. Wong)  -- then they are not part of

19    the group?

20         A.   Correct.

21         Q.   When you say, "knowingly", what do you

22    mean?

23         A.   If they gave their permission.

24         Q.   And what is the ways that you think someone

25    gives their permission in this way?

1          MR. BARNES:  Objection to the extent it

2    calls for a legal conclusion.

3          THE WITNESS:  I don't know.

4     Q.   (By Mr. Wong)  You don't know what you mean

5    by that?

6     A.   In my mind, if someone asked me a direct

7    question:  Can I sell or share your personal

8    information?  And I said, yes, that would be giving my

9    permission.

10     Q.   And if that ask was put into a written

11    agreement to which someone agreed, would you say then

12    that they had also given their permission?

13          MR. BARNES:  Objection; calls for a legal

14    conclusion.  Assumes facts not in evidence.

15          THE WITNESS:  As pertains to this lawsuit?

16     Q.   (By Mr. Wong)  Yes.

17     A.   As pertains to this lawsuit, Google

18    promised not to share or sell personal information, so

19    I don't know why they would ask permission to do so

20    when they promised that they wouldn't.

21     Q.   Where did Google promise not to sell or

22    share personal information?

23     A.   I read it in this complaint.

24     Q.   Before you became a class -- or before you

25    became a named plaintiff, had you read the statements

1          A.    What is it?

2          Q.    Uh-huh.

3          A.    A dispensary.

4          Q.    For?  Sorry, is it a dispensary for like --

5     is it a pharmacy or is it like marijuana?  I don't

6     know.

7          A.    It's a medical use and recreational use

8     dispensary.

9          Q.    I didn't know Missouri had legalized that.

10    Sorry, California did it 20 years ago, so I just

11    like -- I'm always like everywhere else I think you

12    guys haven't done it.  Sorry, that's why I had to ask.

13    Do you know about Christian books, do you know if you

14    have an account or maybe were a guest?

15         A.    I don't remember.

16         Q.    If you turn to Page 38, Paragraph 137.

17              MR. BARNES:  Again, to the extent questions

18    are asked about this paragraph in this document,

19    please feel free to review the document and paragraph

20    surrounding it to the extent you feel necessary.

21         Q.    (By Mr. Wong)  Did you review this

22    paragraph, including the chart, before the complaint

23    was filed?

24         A.    No.

25         Q.    What is your understanding of what this

1    chart says?

2              MR. BARNES:  Objection; calls for expert

3    opinion.

4              THE WITNESS:  I don't know what this chart

5    says exactly.  In my mind it says something that is

6    requested in RTB.

7         Q.   (By Mr. Wong)  And what is RTB?

8         A.   Real-time bidding.

9         Q.   What does that mean to you?

10        A.   That means that in the present time if I'm

11   on the internet, say for example, I go to a particular

12   website, in that time that I'm on that website that

13   Google is not only collecting my information for their

14   own use, but at the same time based on where I am,

15   they are also selling and sharing my information to

16   other companies without my permission.

17        Q.   And can you tell me which field in this

18   chart you believe are private and personal information

19   that you believe that Google promised it would not

20   sell to other companies?

21             MR. BARNES:  Objection; calls for expert

22   opinion; calls for a legal conclusion.

23             THE WITNESS:  I can't tell what Google

24   considers what on this chart.

25        Q.   (By Mr. Wong)  Well, I was asking what you

1      A.    Okay.  Yes.

2      Q.    Are you alleging that you personally

3  received any ads based on the categories that we just

4  looked at?

5      A.    I didn't realize we were -- this case was

6  about advertising, I thought it was about Google

7  selling my personal information in RTB.

8      Q.    So do you believe that you have received

9  any ads based on the categories that we just reviewed?

10      A.    Again, I mean, this is talking about

11  targeted advertising and I thought we were talking

12  about real-time bidding.

13      Q.    Okay.  Aside from that issue, do you -- can

14  you think of any advertisements that you have received

15  that relate to these issues that may be information

16  linked to your Google account that Google, you allege,

17  sold to third parties?

18          MR. BARNES:  Objection; compound; vague.  I

19  make that objection, Mr. Wong, because I'm not sure

20  what the question was.  You can answer.

21      Q.    (By Mr. Wong)  Do you have an answer?

22          MR. BARNES:  Ms. Woodruff, I think we're --

23          THE WITNESS:  I'm sorry, I didn't

24  realize -- I thought you said, asked and answered, and

25  I don't know what else to say, I mean, I answered it.

1              MR. BARNES:  Objection; vague; calls for a

2      legal conclusion.

3              THE WITNESS:  All I know is that I did not

4      give Google permission to share or sell any of my

5      information in RTB and something is going on to where

6      I feel like my information is being shared because I'm

7      getting advertisements and things from places,

8      websites, companies that I've never visited.

9          Q.   (By Mr. Wong)  So if you visited the

10     website, then it doesn't -- that doesn't -- that's not

11     problematic for you.  So if you visit Nike.com and you

12     see an ad for Nike later, that's okay?

13             MR. BARNES:  Objection.

14             THE WITNESS:  It is less troublesome.

15         Q.   (By Mr. Wong)  So for you, in this specific

16     example of the shoe, do you think Google is prohibited

17     from showing shoe ads based on activity on Google that

18     you did related to shoes?

19             MR. BARNES:  Objection; vague; compound;

20     calls for a legal conclusion.

21             THE WITNESS:  If it has anything to do with

22     Google selling or sharing my information in real-time

23     bidding without my permission, no, I don't think it's

24     right.

25         Q.   (By Mr. Wong)  And is looking at Nike.com

1   going for an hour, so we can take a short break if we

2   want, and then --

3                 MR. BARNES:  Yeah, because I was --

4                 MR. WONG:  We'll do a five-minute break,

5   and then break for lunch at like 12:30 or 12:45.

6                 MR. BARNES:  Does that work for you?

7                 THE WITNESS:  Uh-huh.  Can we take a

8   seven-minute break?

9                 MR. WONG:  That's fine.  We can take a

10  eight minute.

11                MR. BARNES:  Let's take a seven-minute

12  break, and then --

13                VIDEOGRAPHER:  We're off the record at

14  11:51.

15                (Whereupon, a short break was taken.)

16                VIDEOGRAPHER:  We're back on the record.

17  This is Media Unit No. 4, the time is 12:08.

18        Q.    (By Mr. Wong)  Ms. Woodruff, do you have a

19  Google account?

20        A.    I do.

21        Q.    Do you remember when you created it?

22        A.    Not exactly.

23        Q.    Can you give me a ballpark time?

24        A.    Seven years ago.

25        Q.    And do you have more than one Google

1  account?

2         A.    I do.

3         Q.    How many do you have total?

4         A.    Two, I believe.

5         Q.    And so let's go to the first one.  So you

6  believe that you created that one about seven years

7  ago?

8         A.    I think so.

9         Q.    And do you recall what your Gmail address

10 is associated with that account?

11        A.    ████████████@gmail.com.

12        Q.    And then when did you create the second

13 account?

14        A.    Probably not soon after that.  I don't know

15 exactly.

16        Q.    And what is the Gmail address associated

17 with that account?

18        A.    ██████████@gmail.com.

19        Q.    Is there a reason you created two separate

20 accounts?

21        A.    They were at two -- so I believe at the

22 time I did the ██████████ was when I -- after I

23 left Missouri Faith Voices and I used it -- yeah, my

24 personal account.  And the other one was because I had

25 a Faith Voices account and I set that up as a personal

1           THE WITNESS:  I think this statement is

2    partially true.

3           Q.   (By Mr. Wong)  What do you think is true

4    about it?

5           A.   I think that there are some things in here

6    that personally identify who a person is.

7           Q.   And what would those be?

8           A.   I think that you are identified by your

9    name, your e-mail address, your billing information. I

10   think that is true, but it is partial.

11          Q.   So you think there is additional

12   information that this definition does not capture?

13          A.   Absolutely.

14          Q.   And which would be?

15          A.   So personal information would be anything

16   that is associate -- as far as this case is concerned,

17   would be anything that is associated with my Google

18   account.  It would be my name, my e-mail address,

19   billing information.  It also includes device

20   identification information.  It also includes any

21   identifiers that can be linked with anything that

22   could personally identify me.

23          Q.   So on Page 6 of this document, this is

24   one-third of the way down from the top of the page, it

25   says, "We use the information we collect to customize

1          MR. BARNES:  Objection; asked and answered;

2     calls for speculation and expert opinion; misleading

3     summary of prior testimony; assumes facts not in

4     evidence; misstates the nature of the complaint, and

5     an incomplete hypothetical.

6          THE WITNESS:  For me, I would not have

7     turned off anything that had to do with the ads

8     because Google said it would not share or sell my

9     personal information to other companies in RTB without

10    my permission.

11         MR. BARNES:  We're all just assuming.

12    Mr. Wong, that when you get a new folder out --

13         THE WITNESS:  When Mr. Wong pulls that

14    folder out it's time for a new exhibit.

15         MR. BARNES:  We have a Pavlovian response

16    going on here.

17          (Whereupon, Exhibit 10 was marked for

18    identification.)

19         Q.   (By Mr. Wong)  Exhibit 10 is a document

20    produced by Plaintiff, Bates No. PLFSRTBWoodruff00 --

21    a lot of zeros, 31.  Ms. Woodruff, do you recognize

22    this document?

23         A.   To me it looks like somebody took a

24    screenshot of when I was on the telephone.

25         Q.   This is a screenshot to our understanding,

1  a screenshot of your account setting with respect to

2  ad personalization.  Do you have any reason to believe

3  that is not correct?

4        A.   I just wondered what the telephone was up

5  there.  Okay.  Yes, that's correct.

6        Q.   And you see here that the ad

7  personalization is on; do you see that?

8        A.   I do.

9        Q.   And I just wanted to make sure you have

10  never previously set it to off; is that correct?

11        A.   I don't know why it was set to on.  If I

12  buy a new phone and set up a new account, to me it's

13  off until I want it on, so I wouldn't know to go turn

14  it off.

15        Q.   My question was whether or not, at any

16  prior point, you had turned it off?  And the answer

17  is, no, I take it?

18        A.   The answer is, no, I wouldn't know to turn

19  it off.

20        Q.   And are you comfortable keeping this

21  setting on?

22             MR. BARNES:   Objection -- excuse me,

23  objection; vague.

24             THE WITNESS:  For me this would not concern

25  me.  My concern is about Google sharing and/or selling

1    my personal information to other companies without my

2    permission.

3           Q.    (By Mr. Wong)   So do you understand that by

4    having this on, information in your Google account can

5    be used to show you more relevant ads including ads

6    purchased by third parties on non-Google websites; do

7    you understand that?

8               MR. BARNES:   Objection; vague; calls for

9    speculation; assumes facts not in evidence; misstates

10   the nature of the complaint.

11              THE WITNESS:   For me having this on is just

12   another indicator for me how Google tries to get

13   information without permission.   I did not turn that

14   on.

15          Q.    (By Mr. Wong)   My question is, though,

16   knowing what you know, you don't object then to this

17   setting being on?

18          A.    Knowing what I know, this setting has

19   nothing to do with the complaint.   The complaint has

20   to do with Google selling and sharing my personal

21   information to hundreds of companies in RTB without my

22   permission.

23          Q.    So if I'm correct and turning this off

24   would prevent Google from doing that, would you turn

25   it off?

Page 172

1    Privacy Policy?

2             MR. BARNES:  Hold on.  Let me -- objection;

3    calls for speculation; calls for a legal conclusion;

4    asked and answered.

5        Q.   (By Mr. Wong)  Do you remember the sign-in

6    -- do you remember the sign-in process you did to

7    create an account at Staples?

8        A.   No.

9        Q.   So you can't say then for certain that you

10   did not agree, as part of that process, that you

11   cannot remember whether or not you agreed to the

12   Privacy Policy provided by Staples here, correct?

13       A.   I don't remember.

14            MR. BARNES:  Objection; asked and answered.

15       Q.   (By Mr. Wong)  Do you believe you were

16   injured in some way by the conduct alleged in the

17   complaint?

18            MR. BARNES:  Are you done with this

19   document?

20            MR. WONG:  Yes.

21            THE WITNESS:  I do.

22       Q.   (By Mr. Wong)  And how so?

23       A.   I believe that it is a crime and extremely

24   invasive and offensive when someone does something

25   with your personal information that you did not give

1    them permission to do.

2         Q.    And again, when you mean personal

3    information was shared, you mean the information that

4    we've discussed previously, your name, your address?

5         A.    When I talk about --

6              MR. BARNES:  Hold on.  Hold on.  Objection;

7    vague; misstates the testimony.

8              MR. WONG:  That's not the question, but

9    that's fine.  Can I --

10             MR. BARNES:  Did you not get to -- did

11   you --

12             MR. WONG:  I paused because I was trying to

13   come up with what else I was trying to say.

14             (Multiple speakers talking at once.)

15             MR. BARNES:  She started answering, which

16   triggered the objection.  So we'll start from scratch.

17        Q.    (By Mr. Wong)  So when you're talking about

18   personal information, you're talking about your prior

19   answers about personal information, correct?

20        A.    Correct.

21        Q.    And can you identify what specific

22   information you believe was actually shared with third

23   party advertisers?

24        A.    I can tell you what my personal information

25   includes.

1          MR. BARNES:  Hold on -- objection; asked

2     and answered.  Let's pause a beat, let me state my

3     objections, and you can answer.

4          THE WITNESS:  Uh-huh.  I never saw an ad

5     for an orthopedic shoe before I purchased an

6     orthopedic shoe for my mom.

7          Q.   (By Mr. Wong)  Right, but you're saying,

8     though, that the information shared wasn't just the

9     fact of purchasing orthopedic shoes, it was your bank

10    account, and your e-mail address, and your name.  I'm

11    trying to understand how you would know that -- that

12    information was shared rather than just the fact that

13    you had purchased an orthopedic shoe.

14         MR. BARNES:  Objection; misstates the

15    testimony; asked and answered.

16         THE WITNESS:  All of that was done on my

17    laptop, how else would it get to me?  I didn't

18    purchase shoes from -- it was done on my laptop,

19    that's how I know.

20         Q.   (By Mr. Wong)  Okay.  Do you believe you're

21    at risk of future harm from Google's practices?

22         MR. BARNES:  Objection; vague.

23         THE WITNESS:  I believe there is a

24    possibility, yes.

25         Q.   (By Mr. Wong)  And what is that future

1    injury that you fear?

2            A.    I didn't say I feared anything.

3            Q.    What is the future injury that you believe

4    you are at risk of?

5            A.    I am not certain.

6            Q.    Is it related to the sharing of your

7    personal information with third parties?

8            A.    As far as Google is concerned, yes.

9            Q.    But you have not taken any steps since

10   filing the complaint to minimize the information or

11   eliminate the information that is shared by Google's

12   third parties; is that correct?

13           MR. BARNES:   Objection; asked and answered.

14           THE WITNESS:   Google promised not to do

15   that.

16           Q.    (By Mr. Wong)   Aside from what Google did

17   or did not promise, I'm asking whether or not you have

18   taken any affirmative steps to eliminate or minimize

19   the information that Google shares with third parties?

20           A.    Yes.

21           Q.    And what have you done?

22           A.    I'm a plaintiff in a lawsuit, a class

23   action suit against Google, hopefully to deter any of

24   this behavior in the future for myself or anyone else.

25           Q.    But that hasn't changed the fact that you

Page 179

1    are still searching the web, and browsing the web, and

2    that information is allegedly still being shared by

3    Google, correct?

4            A.    It is, yes.

5            Q.    So you haven't changed your browsing

6    habits, correct?

7            A.    I have not.

8                  MR. BARNES:  Objection; asked and answered.

9            Q.    (By Mr. Wong)  You have not changed your ad

10   personalization setting, correct?

11                 MR. BARNES:  Objection; asked and answered.

12                 THE WITNESS:  I don't know how.

13           Q.    (By Mr. Wong)  You have not changed your

14   browser settings?

15                 MR. BARNES:  Objection; asked and answered.

16                 THE WITNESS:  I don't -- no, I have not.

17           Q.    (By Mr. Wong)  Have you attempted to

18   quantify the amount of damages that you believe you

19   have suffered as a result of Google's conduct?

20                 MR. BARNES:  Objection; calls for expert

21   testimony.

22                 THE WITNESS:  I have not.

23           Q.    (By Mr. Wong)  Do you think everyone in the

24   proposed class should get the exact same amount of

25   compensation in this case?

1          MR. BARNES:  Objection; calls for

2    speculation; calls for a legal conclusion; and calls

3    for an expert opinion.

4          THE WITNESS:  In my opinion, I believe

5    everybody represented is entitled to some sort of

6    damages, but that's not up to me to determine.

7       Q.   (By Mr. Wong)  Why is it not up to you?

8       A.   I'm not the ruler in this case.

9       Q.   Who is?

10      A.   The judge.

11          MR. BARNES:  Objection; calls for a legal

12    conclusion; asking a lay witness who determines

13    damages is --

14          MR. WONG:  Well, we can make an argument

15    about what people should and shouldn't do.  She has a

16    lot of power as the plaintiff to do that.  I think if

17    we take a five-minute break, I think I'm done with my

18    questions.  But if I can look at my outline --

19          MR. BARNES:  Yeah.

20          VIDEOGRAPHER:  We're off the record at

21    3:57.

22          (Whereupon, a short break was taken.)

23          VIDEOGRAPHER:  We are back on the record.

24    This is Media Unit No. 8.  The time is 4:06.

25          MR. WONG:  I am done with direct.

Page 181

```
 1                        EXAMINATION
 2   QUESTIONS BY MR. BARNES:
 3        Q.    Thank you.  Ms. Woodruff, it's been a
 4   decently long day.  Do you recall earlier  -- by
 5   earlier I mean probably about six hours ago, Mr. Wong
 6   asked you a question about whether you had reviewed
 7   the complaint, and the motion to dismiss, and filings
 8   in this case before they were filed?
 9        A.    I did.
10        Q.    You do recall him asking that?
11        A.    I do recall.
12        Q.    And did you review the complaint before it
13   was filed in this case?
14        A.    Yes.
15        Q.    Did you review any motion to dismiss before
16   it was filed in this case?
17        A.    Yes -- Motion to dismiss, no.
18        Q.    Okay.  Sorry.  But complaint, yes?
19        A.    Complaint, yes.
20        Q.    And have you reviewed discovery filings in
21   this case?
22        A.    Yes.
23        Q.    Do you recall -- are you a lawyer?
24        A.    I am not.
25        Q.    Okay.  Prior to getting involved with this
```

Page 185

1    information..."  I don't know.

2              Q.   Okay.

3              A.   I thought I could read it, but it got

4    blurry again.  I'm sorry.

5              Q.   That's all right.  We're good.  Now it's

6    official.

7                   VIDEOGRAPHER:  We are off the video record

8    at 4:12.

9                   (WHEREIN, the deposition was concluded at

10   4:12.)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 186

1                    CERTIFICATE OF REPORTER
2     STATE OF MISSOURI  )
                         ) ss.
3     CITY OF ST. LOUIS  )
4     I, Jeanne M. Pedrotty, a Certified Court Reporter (MO)
5     and Certified Shorthand Reporter (IL), do hereby
6     certify that the witness whose testimony appears in
7     the foregoing deposition was duly sworn by me; that
8     the testimony of said witness was taken by me to the
9     best of my ability and thereafter reduced to
10    typewriting under my direction; that I am neither
11    counsel for, related to, nor employed by any of the
12    parties to the action in which this deposition was
13    taken, and further that I am not a relative or
14    employee of any attorney or counsel employed by the
15    parties thereto, nor financially or otherwise
16    interested in the outcome of the action.
17
18                    _Jeanne M. Pedrotty_
19                      Jeanne M. Pedrotty
20
21
22
23
24
25

Page 187

1    Jay Barnes Esq

2    jaybarnes@simmonsfirm.com

3                         May 18th, 2023

4    RE:     In Re: Google RTB Consumer Privacy Litigation v.

5         5/4/2023, Kimberley Woodruff (#5895022)

6         The above-referenced transcript is available for

7    review.

8         Within the applicable timeframe, the witness should

9    read the testimony to verify its accuracy. If there are

10   any changes, the witness should note those with the

11   reason, on the attached Errata Sheet.

12        The witness should sign the Acknowledgment of

13   Deponent and Errata and return to the deposing attorney.

14   Copies should be sent to all counsel, and to Veritext at

15   (erratas-cs@veritext.com).

16

17    Return completed errata within 30 days from

18   receipt of testimony.

19     If the witness fails to do so within the time

20   allotted, the transcript may be used as if signed.

21

22                  Yours,

23                  Veritext Legal Solutions

24

25