Elizabeth C. Pritzker (Cal. Bar No. 146267)
Jonathan K. Levine (Cal. Bar No. 220289)
Bethany Caracuzzo (Cal. Bar No. 190687)
Caroline Corbitt (Cal Bar No. 305492)
**PRITZKER LEVINE LLP**
1900 Powell Street, Suite 450
Emeryville, CA 94608
Tel.: (415) 692-0772
Fax: (415) 366-6110
*ecp@pritzkerlevine.com*
*jkl@pritzkerlevine.com*
*bc@pritzkerlevine.com*
*ccc@pritzkerlevine.com*

*Interim Class Counsel*

[Additional Counsel Appear on Signature Page]

**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

| | |
|---|---|
| *IN RE GOOGLE RTB CONSUMER PRIVACY LITIGATION* | **CASE NO. 4:21-CV-02155-YGR-VKD** |
| *This document applies to all actions.* | **PLAINTIFFS' MOTION FOR RELIEF FROM JULY 10, 2023 NON-DISPOSITIVE PRETRIAL ORDER OF MAGISTRATE JUDGE (DKT. 543)**<br><br>Fed. R. Civ. P. 72(a)<br>Civil L.R. 72-2 |

## I. RELIEF REQUESTED

Pursuant to Fed. Rule Civ. P. 72(a), 28 U.S.C. § 636(b)(1)(A), and Civil L.R. 72-2, plaintiffs move for partial relief from the non-dispositive order issued by Magistrate Judge DeMarchi on July 10, 2023 at Dkt. 543 ("Order"). Specifically, plaintiffs seek relief from the portion of the Order denying plaintiffs' motion to compel Google to produce named plaintiff data from two bid request data fields that categorize the contents of the website being viewed (content labels) or app being used (app categories) by the named plaintiffs. These two fields relate to the named plaintiffs because they describe and categorize what is being viewed by each plaintiff while browsing or using an app and were in fact transmitted by Google to bid participants in Google RTB auctions for about half of the class period. Nonetheless, as set forth below, the Order denying their production includes opinions that are clearly erroneous and contrary to law, ignores serious potential spoliation issues, and is prejudicial to plaintiffs – both because it prevents discovery on issues directly relevant to the merits and allows Google to avoid potential spoliation sanctions for not maintaining relevant evidence during the pendency of this action. Plaintiffs respectfully request that these erroneous opinions be stricken and the Court either compel Google to produce the two relevant bid request fields or remand to Judge DeMarchi with curative instructions.

## II. STANDARD OF REVIEW

"The district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a). On a non-dispositive order, the district court may set aside a magistrate's factual determinations as clearly erroneous if it is left with a "conviction that a mistake has been committed." *In re PFA Ins. Mktg. Litig.*, 2021 WL 5991681, at *1 (N.D. Cal. Nov. 4, 2021) (quoting *Perry v. Schwarzenegger*, 268 F.R.D. 344, 348 (N.D. Cal. 2010)). A decision is contrary to law if it applies an incorrect legal standard or fails to consider an element of that standard.[1] *Hubbs v. Big Lots Stores, Inc.*, 2019 WL 12536541, at *1 (C.D. Cal. July 1, 2019). Courts review a magistrate's determination of relevance "with an eye toward the broad standard of relevance in the discovery context." *Id.*

---

[1] Courts review mixed questions of law and fact *de novo*. *Ingram v. Pac. Gas & Elec. Co.*, 2013 WL 6174487, at *2 (N.D. Cal. Nov. 22, 2013).

### III. RELEVANT BACKGROUND

On June 5, 2023, plaintiffs moved to compel Google to produce three "bid request" fields. *See* Dkts. 536-3 (under seal), 537 (public filing). Bid requests are information that Google shares with RTB participants in soliciting bids for ad placements on websites and mobile applications being viewed or used by Google account holders, including the named plaintiffs. The three bid request fields at issue in the June 5 motion pertain to (1) user lists, (2) content labels, and (3) app categories.[2] Content labels include categories that characterize what the named plaintiff is looking at on a web page and allow RTB participants to infer information about the named plaintiff based on the bid requests that the RTB participants receive. Order at 2–3. App categories are similar to content labels but apply to mobile apps being used by the named plaintiffs instead of web pages being viewed. *Id.* at 4. It is **undisputed** that Google specifically included content labels and app categories in bid requests sent to RTB participants from at least the start of the class period, June 2016 through February 2020, representing about half of the entire class period. *Id.* at 3–4.

For the approximately four-year period Google admits it included the two fields in RTB bid requests (June 2016-February 2020), the Order denies plaintiffs' motion on two grounds. First, Judge DeMarchi was not persuaded that the fields are within the scope of relevant discovery, stating that it was not clear that the fields "contained any information RTB participants could or did use to infer information about the account holders who visited the website [or used the application]." Order at 3, 4. Second, Judge DeMarchi denies the motion because, according to Google, there is nothing to produce because the data from prior to March 2020 "no longer exists." *Id.* at 3–5. As discussed below, both conclusions are clearly erroneous. They also are contrary to the Court's prior discovery rulings and relevant law, are based on speculation, and misstate the record.

### IV. ARGUMENT

Plaintiffs move for relief from the portions of the Order denying their motion to compel Google to produce named plaintiff data from two bid request fields on the grounds that the Order

---

[2] As plaintiffs do not challenge the Court's ruling with respect to the user list field, this motion will address only the two fields remaining in dispute, content labels and app categories.

commits clear error and is contrary to law. *See* Order at 3–4. Plaintiffs move on two bases: (1) the Order's speculative and incorrect conclusion that the two fields are not within the scope of relevant discovery as defined by the Court in prior rulings; and (2) the Order's blind acceptance of Google's statement that there is nothing to produce as a basis for denying the motion, even though Google had a business practice *and* was under a legal obligation to maintain at least some of the responsive data for at least some portion of the time period at issue.

### A. The Order Is Contrary to Prior Orders on the Scope of Relevant Discovery

Plaintiffs explained the relevance of both fields at issue within the constraints of the 1,500 words permitted by the letter brief process.[3] *See* Dkt. 536-3 at 1-4. Evidence is relevant if (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence. FED. R. EVID. 401. It is relevant to plaintiffs' preparation for trial that they receive information pertaining to the fields that Google *in fact shared* with RTB participants relating to the named plaintiffs in sending bid requests for a large part of the class period. *See* Dkt. 563-3. The Order's application of the applicable relevancy standards is not only contrary to law but also contrary to the Court's own prior rulings defining the scope of relevant discovery in this action. This was a clearly prejudicial error.

The Court previously held that records pertaining to information disclosed or sold to third parties as part of the RTB auction process, and "the records Google maintains about the Named Plaintiffs that identifies (1) the information Google associates with them, including their demographic characteristics, their location, their electronic communications, their devices and device settings, and their web browsing history; (2) the information about them that Google shares with third-party RTB participants; and (3) the revenue Google obtains when it shares their information in the RTB process," are "within the scope of relevant discovery" in this action. Dkt. 184 at 6–7; *reaffirmed in* Dkt. 287 at 3 ("the Court has already ordered Google to identify all of the account holder information that is disclosed or sold to third parties as part of the RTB process"). Content labels and app categories are plainly within the scope of these Orders (Dkts. 184, 287).

---

[3] The joint letter brief process also precludes submission of any evidence or other supporting documents, such as declarations or exhibits.

1  Google does not deny that it expressly disclosed these two fields to third parties during at least
2  half of the class period. Dkt. 536-3, at 6. Nor can it deny that these fields represent information
3  shared in RTB.

4        These two fields are also within the scope of two other orders by the Court. *See* Dkts. 314
5  at 4-5; 382 at 4–5. In Dkt. 314, the Court ordered Google to "produce documents sufficient to
6  show, for each named plaintiff, what information specific to that plaintiff was shared with an RTB
7  participant and the details of such sharing. If Google discloses information that allows an RTB
8  participant to identify an account holder based on information the *participant* may have about that
9  account holder, Google must produce records showing the disclosure of that information as well."
10  Dkt. 314 at 4 (emphasis in original). In Dkt. 382, the Court ordered Google to "produce documents
11  sufficient to show for each named plaintiff the 'verticals' data fields it shared with RTB
12  participants during the class period. In addition, Google must produce documents sufficient to
13  show for each named plaintiff the information, if any, that it provided to RTB participants that
14  would permit those participants to infer information about the account holder based on verticals
15  linked with the account holder." Dkt. 382 at 5. Content labels and app categories are plainly within
16  the scope of these two Orders. These fields constitute information specific to the named plaintiffs
17  and their communications that were shared by Google in RTB auctions, as well as information
18  provided to RTB participants that would permit those participants to infer information about the
19  named plaintiffs based on the categorization of what websites and apps were being viewed.

20        Finally, the Court also erred when it concluded that it is not clear from the joint letter brief
21  that the two fields "contained any information RTB participants could or did use to infer
22  information about the account holders who visited the website [or used the application]." Order at
23  3, 4. First, plaintiffs did provide this information in the brief. *See* Dkt. 536-3 at 1–4. Second, the
24  Judge DeMarchi merely speculates about what RTB participants could or did do with the
25  information provided in the two fields, and this speculation provides no basis for the Court's ruling.
26  Indeed, the facts reveal this speculative conclusion is wrong. Google does not deny that these two
27  fields are contextual information, *i.e.*, information that provides context about what a named
28  plaintiff is looking at, which means context from which an RTB participant can infer things about

the named plaintiff. Therefore, it was clear error for Judge DeMarchi to conclude that these two fields are not within the scope of relevant discovery.

### B. The Order Is Based on Misstatements of the Record

The Order also errs in failing to require Google to produce the two fields simply because Google told the Court that the data for the period in which the fields were included in bid requests "no longer exists." Order at 3–4. This case was filed in March 2021, and Google has admitted in correspondence to plaintiffs' counsel that it maintains RTB logs—including this data—***for at least 540 days*** as a general business practice. That means the data for these two fields should exist for at least the 540-day period preceding the filing of the case—*i.e.*, back to **September 2019**. Google was under a legal obligation to maintain this data for at least the September 2019 through February 2020 period during which the two fields were still being shared in RTB bid requests. If, as Google asserts, the data files "no longer exist," this is potential basis for a spoliation motion and adverse jury instruction, not a get-out-of-jail-free ruling. It was error for the Court to prematurely absolve Google of any potential spoliation finding and highly prejudicial to plaintiffs for the same reason.

### C. The Order Is Contrary to Law and Commits Clear Error

The Order is contrary to law in its misapplication of the relevancy standard and commits clear error in its determination that the two bid request fields lack relevance. The Order's relevancy determination should therefore be overturned. *See Hubbs*, 2019 WL 12536541, at *8. The Order also errs by improperly absolving Google of potential spoliation findings by accepting Google's representation that the fields "no longer exist" when Google was in fact under a business and legal obligation to maintain the relevant data for at least some of the discovery period.

## V. CONCLUSION

Plaintiffs will be substantially prejudiced if the challenged portions of the Order stand. This discovery is necessary to their preparation for trial. The Court should vacate the erroneous rulings, and direct Google to promptly produce the two bid request fields at issue for the period in which those fields were included in RTB bid requests. If the data "no longer exists" despite Google's legal obligation to preserve it, that is not a reason to deny plaintiffs' motion. The data is relevant and should be ordered produced so that plaintiffs have a record for any potential spoliation remedy.

| | |
|---|---|
| DATED: July 24, 2023 | Respectfully submitted, |
| | **PRITZKER LEVINE LLP** |
| | By: */s/ Elizabeth C. Pritzker* |
| | Elizabeth C. Pritzker (Cal. Bar No.146267)<br>Jonathan K. Levine (Cal. Bar No. 220289)<br>Bethany Caracuzzo (Cal. Bar No. 190687)<br>Caroline Corbitt (Cal Bar No. 305492)<br>1900 Powell Street, Ste. 450<br>Oakland, CA 94602<br>Tel.: (415) 692-0772<br>Fax: (415) 366-6110<br>*ecp@pritzkerlevine.com*<br>*jkl@pritzkerlevine.com*<br>*bc@pritzkerlevine.com*<br>*ccc@pritzkerlevine.com* |
| | *Interim Class Counsel* |
| | **BLEICHMAR FONTI & AULD LLP**<br>Lesley Weaver (Cal. Bar No.191305)<br>Anne K. Davis (Cal. Bar No. 267909)<br>Joshua D. Samra (Cal. Bar No. 313050)<br>555 12th Street, Suite 1600<br>Oakland, CA 94607<br>Tel.: (415) 445-4003<br>Fax: (415) 445-4020<br>*lweaver@bfalaw.com*<br>*adavis@bfalaw.com*<br>*jsamra@bfalaw.com* |
| | **SIMMONS HANLY CONROY LLC**<br>Jason 'Jay' Barnes (admitted *pro hac vice*)<br>An Truong (admitted *pro hac vice*)<br>Jenny Paulson (admitted *pro hac vice*)<br>112 Madison Avenue, 7th Floor<br>New York, NY 10016<br>Tel.: (212) 784-6400<br>Fax: (212) 213-5949<br>*jaybarnes@simmonsfirm.com*<br>*atruong@simmonsfirm.com*<br>*jpaulson@simmonsfirm.com* |
| | **DICELLO LEVITT GUTZLER LLC**<br>David A. Straite (admitted *pro hac vice*)<br>485 Lexington Avenue, Suite 1001<br>New York, NY 10017 |

Tel: (646) 993-1000
Fax: (212) 213-5949
*dstraite@dicellolevitt.com*

James Ulwick (admitted *pro hac vice*)
Ten North Dearborn Street, Sixth Floor
Chicago, IL 60602
Tel.: (312) 214-7900
*julwick@dicellolevitt.com*

**COTCHETT PITRE & McCARTHY, LLP**
Nanci E. Nishimura (Cal. Bar No. 152621)
Brian Danitz (Cal Bar. No. 247403)
Karin B. Swope (admitted *pro hac vice*)
840 Malcolm Road
Burlingame, CA 94010
Tel.: (650) 697-6000
*nnishimura@cpmlegal.com*
*bdanitz@cpmlegal.com*
*kswope@cpmlegal.com*

**BOTTINI & BOTTINI, INC.**
Francis A. Bottini, Jr. (Cal. Bar No. 175783)
Yury A. Kolesnikov (Cal. Bar No. 271173)
7817 Ivanhoe Ave., Ste. 102
La Jolla, CA 92037
Tel.: (858) 914-2001
Fax: (858) 914-2002
*fbottini@bottinilaw.com*
*ykolesnikov@bottinilaw.com*

*Counsel for Plaintiffs and the Proposed Class*