# EXHIBIT A

# (REDACTED VERSION OF DOCUMENT SOUGHT TO BE FILED UNDER SEAL)

Elizabeth C. Pritzker (Cal. Bar No. 146267)
Jonathan K. Levine (Cal. Bar No. 220289)
Bethany Caracuzzo (Cal. Bar No. 190687)
Caroline Corbitt (Cal. Bar. No. 305492)
**PRITZKER LEVINE LLP**
1900 Powell Street, Suite 450
Emeryville, CA 94608
Tel.: (415) 692-0772
Fax: (415) 366-6110
*ecp@pritzkerlevine.com*
*jkl@pritzkerlevine.com*
*bc@pritzkerlevine.com*
*ccc@pritzkerlevine.com*

*Interim Class Counsel*

[Additional Counsel Appear on Signature Page]

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### OAKLAND DIVISION

| | |
|---|---|
| *IN RE GOOGLE RTB CONSUMER PRIVACY LITIGATION* | **Case No. 4:21-cv-02155 YGR (VKD)** |
| This document applies to all actions. | **PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION AND APPOINTMENT OF CLASS REPRESENTATIVES AND CLASS COUNSEL; AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| | Judge:     Hon. Yvonne Gonzalez Rogers |
| | Date:      TBD |
| | Time:      TBD |
| | Courtroom: 1, 4th Floor |

**UNREDACTED VERSION FILED CONDITIONALLY UNDER SEAL**

TABLE OF CONTENTS

NOTICE OF MOTION AND MOTION ................................................................. ..vii

STATEMENT OF ISSUES TO BE DECIDED ........................................................ ix

MEMORANDUM OF POINTS AND AUTHORITIES ........................................... 1

    I.  INTRODUCTION ........................................................................................ 1

    II.  BACKGROUND .......................................................................................... 4

    III.  LEGAL STANDARD ................................................................................. 8

    IV.  ARGUMENT ............................................................................................. 9

        A.  All 23(a) Requirements are Satisfied ................................................. 9

            1.  Numerosity ................................................................................. 9

            2.  Commonality ............................................................................... 9

            3.  Typicality ................................................................................... 9

            4.  Adequacy .................................................................................. 10

        B.  Common Issues Predominate Under Rule 23(b) ............................... 10

            1.  California Law Applies to All Claims ...................................... 10

            2.  Common Issues Predominate as to the Breach of Contract Claim......... 11

                a.  Google's Form Contract is Common, Classwide Evidence ................................................. 11

                b.  Whether Google's Conduct Breached the Contract is Susceptible to Common, Classwide Proof ................................ 13

            3.  Common Issues Predominate for Plaintiff's Other Claims ................... 16

                a.  Breach of Confidence Claim .................................................... 16

                b.  The CIPA Claim ....................................................................... 17

                      i.  Lack of Consent is a Common Question ..................... 17

                      ii. The CIPA Claim is Subject to Common Proof ............. 18

                c.  Invasion of Privacy and Intrusion Upon Seclusion Claims....... 19

1

2      i. Whether a "Reasonable" Expectation of Privacy
          Exists is a Common, Class-wide Issue .......................... 20

3      ii. The "Highly Offensive" Element is Judged By a
4          "Reasonable Person" Standard ...................................... 20

5      d, Publication of Private Facts Claim ............................................ 21

6      i. "Public Disclosure" is Subject to Common
7          Evidence ........................................................................ 21

8      ii. The Information is Not of "Legitimate Public
          Concern" ........................................................................ 22
9

10   C. Common Issues Predominate Regarding the Relief Plaintiffs Seek ................ 22

11      1. Common Issues Predominate as to Disgorgement of Profits ................ 22

12      2. Common Issues Predominate Based on Market Pricing Damages ........ 23

13      3. Common Issues Predominate as to Punitive Damages ........................ 23

14      4. Common Issues Predominate as to Statutory Damages ........................ 23

15
     D. Plaintiffs' Methods for Fairly Distributing Monetary Relief to
16      Class Members ................................................................................... 24

17   E. A Class Action is Superior to Individual Adjudications .................................... 24

18   F. Rule 23(b)(2) Certification is Warranted for Injunctive Relief .......................... 25

19   V. CONCLUSION ....................................................................................................... 25
20

21

22

23

24

25

26

27

28

PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

1

## TABLE OF AUTHORITIES

2

### <u>CASES</u>

3

4    *Alkayali v Hoed,* 2018 WL 3425980 (S.D. Cal. 2018)........................................................ 22

5    *Amchem Products v. Windsor*, 521 U.S. 591 (1997)........................................................ 24

6    *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455 (2013) ........................................ 8, 9

7    *Bakery v. Aubry,* 216 Cal. App. 3d 1259 (1989) ........................................................ 11

8    *Balboa Ins. Co. v. Trans Global Equities*, 218 Cal. App. 3d 1327 (1990) ................................... 16

9    *Berkla v. Corel Corp.*, 302 F.3d 909 (9th Cir. 2002) ........................................................ 16

10   *Brown v. Google, LLC 2022* WL 17961497 *(N.D. Cal. Dec. 12, 2022)* ................................... 10, 12

11   *Dunkin v. Boskey*, 82 Cal. App. 4th 171 (2000) ........................................................ 22

12   *DZ Rsrv. v. Meta Platforms, Inc.*, 2022 WL 912890, (N.D. Cal. Mar. 29, 2022)......................... 25

13   *Ellis v. Costco Corp. III*, 285 F.R.D. 492 (N.D. Cal. 2012)................................................. 23

14   *Flores-Mendez v. Zoosk, Inc.,* 2021 WL 308543 (N.D. Cal. Jan. 30, 2021)................................. 16

15   *Hernandez v. Lopez,* 180 Cal. App. 4th 932\ (2009 ........................................................ 22

16   *Hill v. NCAA*, 7 Cal. 4th 1 (1994) ........................................................ 20, 21

17   *In re. Facebook Biometric Information Privacy Litig.*, 326 F.R.D. 535 (N.D. Cal. 2018)............18

18   *In re Facebook, Inc., Consumer Privacy User Profile Litig.*, 402 F. Supp. 3d 767
         (N.D. Cal. 2019)……………………………………………………………………..11, 12, 21

19   *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589\ (9th Cir. 2020) ............. 12, 19, 20, 22

20   *In re Google Assistant Privacy Litigation*, 546 F. Supp. 3d 945 (N.D. Cal. 2021) ....................... 22

21   *In re Nickelodeon Cons. Priv. Litig.*, 827 F.3d 262\ (3d Cir. 2016) ............................................. 20

22   *In re Yahoo Mail Litig.*, 308 F.R.D. 577 (May 26, 2015) ........................................................ 19, 25

23   *Krzesniak v. Cendant Corp.*, No. 05-05156, 2007 WL 1795703 (N.D. Cal. June 20, 2007 ............ 9

24   *Marchand v. Northrop Grumman*, 2017 WL 2633132 (N.D. Cal. Jun 19, 2017).......................... 11

25   *Ojala v. Bohlin*, 178 Cal. App. 2d 292 (1960) ........................................................ 17

26   *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651 (9th Cir.
         2022)........................................................................................ 4, 8, 25

27   *Opperman v. Path, Inc.*, 2016 WL 3844326 (N.D. Cal. July 15, 2016) ........................................ 20

28   *Patel v. Facebook*, Inc ........................................................ 23

*Raffin v. Medicredit, Inc.*, 2017 WL 131745 (C.D. Cal. Jan. 3, 2017.............................................. 23

*Riley v. California*, 573 U.S. 373 (2014) ................................................................................ 16

*Rodriguez v. Hayes*, 591 F.3d 1105 (9th Cir. 2010).................................................................. 25

*Roley v. Google LLC*, No. 18-CV-07537-BLF, 2020 WL 8675968 (N.D. Cal. July 20, 2020....... 13

*Ruiz Torres v. Mercer Canyons*, 835 F.3d 1125 (9th Cir. 2016) ............................................... 24

*San Jose Options, Inc*., 2014 WL 4380045 ............................................................................. 16

*Sateriale v. RJ Reynolds Tobacco Co.*, No. 2:09-CV-08394-CAS, 2014 WL 7338877 (C.D. Cal. Dec. 19, 2014).......................................................................................................... 12, 13

*Shaw v. Regents of Univ. of California*, 58 Cal. App. 4th 44 (1997 .......................................... 11

*Shulman v. Grp. W. Prods., Inc.*, 18 Cal. 4th 200 (1998) ........................................................ 21

*Six (6) Mexican Workers*, 904 F.2d 1301 (9th Cir. 1990)......................................................... 24

*Stasi v. Inmediata Health Grp.*, 501 F. Supp. 3d 898, (S.D. Cal. 2020) .................................... 16

*Staton v. Boeing Co.*, 327 F. 3d 938 (9th Cir. 2003)................................................................ 10

*Stockwell v. City and Cty of San Francisco*, 749 F.3d 1107 (9th Cir. 2014) ................................ 8

*Tsao v. Desert Palace, Inc.*, 698 F.3d 1128 (9th Cir. 2012) .................................................... 18

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) .............................................................. 9

*Ward v. United Airlines, Inc.*, 2021 WL 534364 (N.D. Cal. Feb. 12, 2021) ................................ 25

*Williams v. Apple, Inc.*, No. 19-cv-04700-LHK, 2021 WL 2186223 (N.D. Cal. May 28, 2021 .................................................................................................................................. 12

*Zaklit v. Nationstart Mortg. LLC*, 2017 WL 3147901 (C.D. Cal. July 24, 2017).......................... 24

## **STATUTES**

CAL. CIV. CODE § 1781.40(v)(1) ............................................................................................. 14

CAL. CIV. CODE § 1798.140 ............................................................................................. 3, 6, 15

CAL. PEN. CODE § 631 ............................................................................................... vii, 18, 19

CAL. PENAL CODE § 637.2(a) ............................................................................................... 23

FED. R. CIV. P. § 23……….........................................................................................*passim*

# <u>OTHER AUTHORITIES</u>

Newberg on Class Actions § 3.24 (5th ed.)................................................................... 13, 24

Restatement (Second) of Contracts § 211(2) ...................................................................... 12

PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

1

<u>**NOTICE OF MOTION AND MOTION**</u>

2

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

3    **PLEASE TAKE NOTICE** that, on a date and time to be determined,[1] in Courtroom 1, 4th

4    Floor, of this Court, located at 1301 Clay Street, Oakland, California 94612, plaintiffs Christopher

5    Valencia, John Kevranian, Terry Diggs, Kimberley Woodruff, Rethena Green, Salvatore Toronto,

6    and Tara Williams will and hereby do move the Court for an Order (i) certifying this action as a class

7    action, (ii) appointing plaintiffs as representatives of the class, and (iii) appointing Elizabeth Pritzker

8    of Pritzker Levine LLP, Lesley Weaver of Bleichmar Fonti & Auld LLP, Jay Barnes of Simmons

9    Hanly Conroy LLC, David Straite of DiCello Levitt LLP, Nanci Nishimura of Cotchett Pitre &

10   McCarthy, LLP, and Yury A. Kolesnikov of Bottini & Bottini, Inc. as class counsel, with Ms. Pritzker

11   to serve as lead class counsel.

12    Plaintiffs seek to certify a class consisting of all individual Google account holders subject to

13   a Google United States Terms of Service whose personal information was sold or shared by Google

14   in its Real Time Bidding ("RTB") auctions after June 28, 2016 (the "Class"). Plaintiffs seek

15   certification of the following claims, all arising under California law: (i) breach of contract, (ii)

16   breach of confidence, (iii) invasion of privacy, (iv) intrusion upon seclusion, (v) publication of private

17   facts, and (vi) for violations of the California Information Privacy Act ("CIPA"), CAL PEN. CODE

18   § 631.[2]

19    This Motion is made pursuant to Rule 23 of the Federal Rules of Civil Procedure, on the

20   grounds that:

21

22   _____

23   [1] *See* ECF 530, 534.
[2] Plaintiffs' Consolidated Class Action Complaint ("CCAC") asserts 12 individual and class claims.

24   ECF 92. After the CCAC was filed, Judge Koh directed the parties to select eight claims to be litigated
     through trial. *See* ECF 83 at 1. The parties filed a joint statement identifying the eight claims, with

25   plaintiffs reserving all rights (*see* ECF 91 at 2), including the six claims for which plaintiffs now seek
     certification The claims that remain in abeyance are for violations of the California Unfair

26   Competition Law; California Constitutional Invasion of Privacy; violations of the Electronic
     Communications Privacy Act; and violations of the Video Privacy Protection Act. The Court

27   previously dismissed without prejudice plaintiffs' claims for breach of the implied covenant of good
     faith and fair dealing, but granted leave to move to amend this claim, following discovery, as

28   appropriate. *See* MTD Order (ECF 233) at 10-11.

(a)     Joinder of all class members is impracticable because the Class consists of millions of similarly situated Google U.S. account holders whose personal information was improperly sold and shared by Google;

(b)     Google's common contract and promises and the uniform conduct of its RTB auctions with respect to all class members present core questions of law and fact common to the Class;

(c)     Plaintiffs' claims are typical of the claims of the Class;

(d)     Plaintiffs and their attorneys have fairly and adequately protected the interests of the Class and will continue to do so;

(e)     The questions of law and fact that are common to the Class overwhelmingly predominate over any individualized issues that might exist; and,

(f)     A class action is superior to any other method of adjudicating plaintiffs' claims against Google.

Plaintiffs' Motion is based upon this Notice, the accompanying Memorandum of Points and Authorities, the Declarations of Elizabeth C. Pritzker ("Pritzker Decl.") and Bethany Caracuzzo ("Caracuzzo Decl.") in support of class certification and all exhibits thereto, any reply memorandum plaintiffs may file, the orders, pleadings, and files in this action, and such other matters as may be presented at or before the hearing.

**STATEMENT OF ISSUES TO BE DECIDED**

I.     Should the Court certify the Class and class claims under Rule 23 of the Federal Rules of Civil Procedure?

II.     Should the Court appoint plaintiffs Christopher Valencia, John Kevranian, Terry Diggs, Kimberley Woodruff, Rethena Green, Salvatore Toronto, and Tara Williams as representatives of the Class?

III.    Should the Court appoint the Elizabeth Pritzker of Pritzker Levine LLP, Lesley Weaver of Bleichmar Fonti & Auld LLP, Jay Barnes of Simmons Hanly Conroy LLC, David Straite of DiCello Levitt LLP, Nanci Nishimura of Cotchett Pitre & McCarthy LLP, and Yury A. Kolesnikov of Bottini & Bottini Inc. as class counsel, with Ms. Pritzker to serve as lead class counsel?

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

The Court has upheld the legal sufficiency of the claims in this case. The question for the Court to decide on this motion is whether, on the limited discovery to date, plaintiffs have satisfied Rule 23 of the Federal Rules of Civil Procedure ("Rule 23"). Because plaintiffs demonstrate that their class allegations satisfy each requirement under that Rule, the Court should certify the Class. Rule 23(a) is easily met here. The action is brought on behalf of Google account holders in the United States—tens of millions of them—to whom Google consistently, and unequivocally, makes a core promise in its Terms of Service ("ToS") and Privacy Policies:

**We don't sell users' personal information.**[3]

Google has restated this core promise —, and the related promise that it does not sell or share personal information with anyone outside of Google — in its ToS, Privacy Policies, and its Google account holder agreements since at least 2016:

**What is still the same?**

- Google does not sell your personal information to anyone.[4]

\*\*\*

We will share personal information with companies, organizations or individuals outside of Google **when we have your consent to do so. We require opt-in consent for the sharing of any sensitive personal information**.[5]

\*\*\*

**Never sell our users' personal information to anyone**… [i]t's important to clarify that **our users' personal information is simply not for sale**.[6]

---

[3] Google's <u>Privacy & Terms – Technologies and Principles - Privacy Principles</u>, published on Google's website and incorporated in its Privacy Policy since September 10, 2015. Caracuzzo Decl. ¶¶ 2-7, Ex. 34. The cited promises were made by Google throughout the class period. *Id*. ¶¶ 2, 6-7, 9, 12-15, 17, 20, 23-25, 29-30.

[4] Google's "<u>Consent Bump</u>" issued to U.S. account holders on June 28, 2016. *Id*. ¶¶ 21-22, Ex. 42.

[5] <u>Google Privacy Policy</u>, published on Google's website since June 28, 2016. *Id*. ¶¶ 19, 23-24, Exs. 35, 36, 40 (bold italics added).

[6] Google's <u>Safety Center – Our Privacy & Security Principles</u>, published on Google's website and incorporated into its Privacy Policy and ToS since September 10, 2018. *Id*. ¶¶ 8-12, Ex. 37.

\*\*\*

We do not share personal information with companies, organizations and individuals outside of Google unless one of the following circumstances applies:  With your consent . . . With domain administrators . . . For external processing . . .  For legal reasons . . . .[7]

\*\*\*

We don't show you personalized ads based on sensitive categories like race, religion, sexual orientation, or health.  We don't share information that personally identifies you with advertisers unless you ask us to.[8]

\*\*\*

Google does not sell your personal information.[9]

\*\*\*

We don't sell your personal information to anyone.[10]

\*\*\*

[W]e never sell your personal information to anyone.[11]

\*\*\*

Advertisers do not pay us for personal information.[12]

***Google does not keep its promises***. Instead, billions of times every day, throughout the class period, Google sells and shares U.S. account holders' personal information to third-party advertisers, independent ad exchanges, social media websites (such as Facebook and Twitter), and other participants around the world in Google's "real time bidding" advertising auctions ("Google RTB").

Google RTB is a fully automated process that works as follows. First, there is Google source code that facilities data sharing through RTB and which is present on millions of websites and apps. When a Google account holder (the "user") visits any of these websites or apps, that source code commands the user's device and browser to report an impression (what the user is viewing), and information about the user and her computer—including unique identifiers associated with the user,

---

[7] Google Privacy Policy (6/28/16). Caracuzzo Decl. ¶¶ 19, 27, Ex. 35.

[8] Google Privacy Policy (5/25/18). *Id.* ¶¶ 19, 29, Ex. 36.

[9] Google Privacy Policy (3/31/20). *Id.* ¶ 17, Ex. 40.

[10] Google's "How Our Business Works" page, incorporated into Google's ToS, from March 31, 2020, to the present. *Id.* ¶¶ 13-16, Exs. 38, 39, 41.

[11] *Id.*

[12] *Id.*

the device's IP address, the URL of the website or app name being viewed, and the make/model of the user's browser or mobile device—to Google for processing through the Google RTB system. Through no action of the user, Google RTB then packages that impression into a "bid request," which is the standardized way that Google solicits bids from hundreds of potential buyers around the world seeking the opportunity to place an ad ("RTB participants"). Each bid request uniformly includes (1) information that Google associates with a user's Google account; (2) information that is reasonably capable of identifying the user to RTB participants, including a Google User ID and other information that uniquely identifies the user or their device; and (3) content and contextual information that places the user and their communication into specific ad targeting categories, including categories that Google publicly admits are "sensitive." As plaintiffs' experts show, the sharing of this information is a uniform process for all account holders. The RTB participants can then bid for the opportunity to have a targeted ad delivered to the user based on the information sent out in the bid request.

*Numerosity is easily satisfied, and plaintiffs are typical and adequate.* Plaintiffs are typical of other class members and are adequate representatives. The data produced to date for the plaintiffs, and the expert reports of Prof. Zubair Shafiq Ph.D. ("Shafiq Rep.") and Prof. Christopher Wilson, Ph.D. ("Wilson Rep."), Pritzker Decl., Exs. 1-2, demonstrate typicality: plaintiffs' personal information was repeatedly shared with and sold to Google RTB participants despite Google's uniform promise that "Google will never sell any personal information to third parties." Plaintiffs' adequacy is demonstrated by their involvement in prosecuting the class claims thus far.

*There are common questions of fact and issues of law.* Google uniformly adopts California law in its contracts with its U.S. account holders. And common evidence will show that every Google RTB bid request during the Class Period contains the same dozens of categories of user data for sale in the RTB auctions. Whether the core items of such data that Google *concedes* are transmitted with each bid request are "personal information" under Google's contract, defined as "information … that can be reasonably linked to [name or email address] by Google, such as information we [*i.e.*, Google] associate[s] with your Google Account," and under California law, *i.e.*, "information that identifies, relates, to, describes, is reasonably capable of being associated with, or could reasonably be linked, directly or indirectly, with a particular consumer or household" (CAL. CIV. CODE § 1798.140(o)(1)),

is a common question and is subject to common proof and law that is uniform for plaintiffs and all class members.

*The requirements of Rule 23(b) are satisfied.* As for Rule 23(b)(3), Google earns billions in revenues each year by sharing the personal information at issue in this case in RTB auctions, as described in the expert reports of Prof. Robert Zeithammer, Ph.D. ("Zeithammer Rep.") and Greg J. Regan, CPA/CFF, CFE ("Regan Rep."), Pritzker Decl., Exs. 3, 4. Relying on Google's own internal documents, computation of class-wide damages stemming from Google's improper conduct can be done on a common basis by academically accepted, industry standard econometric studies and quantitative analysis. Class members who have suffered damages can be readily identified by common evidence in the form of Google's own data. Shafiq Rep. ¶¶ 90-91. And common questions of law and fact predominate over any individual issues. *See Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 663, 665–67 (9th Cir. 2022), *cert. denied sub nom, StarKist Co. v. Olean Wholesale Grocery Coop., Inc.*, 143 S. Ct. 424 (2022) ("*Olean*"). Class treatment is appropriate because plaintiffs will use a common method to resolve the issues central to the claims in one stroke. *Id.* at 663. Given the uniform contract, law, and conduct, the predominance of common questions, and the size of the Class, a class action is far superior to any other method of adjudicating plaintiffs' claims against Google.

Rule 23(b)(2) also is satisfied. As discussed *infra*, Google "has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Rule 23(b)(2).

## II.   BACKGROUND

The Court's description of the background of this dispute in its motion to dismiss order (ECF 233) is well supported by the evidence adduced to date. Plaintiffs are individuals residing in the United States who created a Google account to access Google's products and who, since June 28, 2016, have used their web browsers or apps to view information and media online. *See* CCAC, ECF 92, at ¶¶ 39-40, 45-46, 49-50, 53-58, 65-66, 70; Pritzker Decl. ¶¶ 16-22, Exs. 6-11. All plaintiffs and Class members are subject to Google's U.S. ToS. CCAC ¶¶ 71-72; Caracuzzo Decl. ¶¶ 31-37. Google's ToS contain two relevant provisions: First, that California law governs the contract.

Caracuzzo Decl. ¶¶ 35, 37, Exs. 39, 41. Second, since at least September 10, 2015, Google has represented that "We don't sell users' personal information", Never sell our users' personal information to anyone", "[O]ur users' personal information is simply not for sale" and "We don't sell your personal information to anyone."[13]

Like the ToS, Google's Privacy Policies have, throughout the class period, promised account holders that "we don't sell your personal information to anyone," "we don't share information that personally identifies you with advertisers," and "we don't use topics or show personalized ads based on sensitive categories like race, religion, sexual orientation, or health." *See* Caracuzzo Decl. ¶¶ 3-12, 17-20, 23-24, 26-30, Exs. 35, 36, 40.

In violation of these explicit promises, Google shares, offers for sale, and sells account holders' personal information **billions of times a day** to **hundreds of entities** around the world — ranging from advertisers, publishers, hedge funds, governments, and big data companies like Meta, Amazon, Yahoo, and LinkedIn — through Google's proprietary RTB auctions. *See* Pritzker Decl., Ex. 12; *see also* expert report of Prof. Neil Richards ("Richards Rep."), Pritzker Decl., Ex. 5 at ¶¶ 111-113. The scope and functioning of Google RTB are described more fully in the accompanying Wilson and Shafiq Reports. Generally speaking, Google owns and operates a platform to serve targeted display advertising on web-browsers and apps through which it surreptitiously observes, collects, and analyzes real-time data about account holders when they are using the internet. Wilson Rep. ¶¶ 18, 24. As an account holder uses her browser or app, that use is tracked, accompanied by cookies and other identifiers sent from the account holder's browser or app to Google. *Id.* ¶ 24. Google RTB then sends bid requests to RTB participants with the account holder's data — including her Google User ID and other personal identifiers, IP address, device identifiers, geolocation data, the specific content the user has requested and been shown when she is on a web-browser or, if on a handheld device, a smartphone app. *Id.*; Shafiq Rep. ¶¶ 21, 41-42.

RTB participants may respond to the bid request with monetary bids for the right to place a targeted ad based on the account holder's data, or they may simply "lurk" in the auction to acquire

---

[13] *See* Google's "Privacy & Terms, Technologies and Principles" (from 9/10/15 onward); "Safety Center – Our Privacy and Security Principles" (from 9/20/18 to present); and "How Our Business Works" (from 2/22/20 to present). Caracuzzo Decl. ¶¶ 2-16, Exs. 34, 37, 38.

information about the account holder for future use. Wilson Rep. ¶ 24. The winning bidder gets to place an ad on the specific account holder's browser or personal device, or assign that right to another, or resell and republish the account holder's personal information obtained in the bid to other entities or databases. *Id*. The entire RTB auction process takes less than a hundred milliseconds (it takes 300 milliseconds to blink an eye); hence, the name "real time" bidding. *Id*. ¶ 26; Shafiq Rep. ¶ 19. Google RTB is invisible and undisclosed to account holders.[14]

There is substantial common evidence that the account holder data that Google sells and offers for sale through Google RTB, in breach of its promises, is "personal information" under both Google's Privacy Policy and California law. Google's Privacy Policy tracks and is broader than California law. Under Google's definition, "personal information" includes "information that you provide to us which personally identifies you, such as your name, email address, or billing information, ***or other data that can be reasonably linked to such information by Google, such as information we associate with your Google Account.***" Caracuzzo Decl. ¶¶ 19, 29, Ex. 36. The Privacy Policy describes information "Google "associate[s]with…Google Account[s]" to include:

> . . . unique identifiers, browser type and settings, device type and settings, operating system, mobile network information, including carrier name and application version number. We also collect information about the interaction of your apps, browsers, and devices with our services, including IP address, crash reports, system activity, and the date, time and referrer URL of your request.

*Id*. at 2. The document hyperlinked at "unique identifiers" defines a unique identifier as "a string of characters that can be used to uniquely identify a browser, app or device" which includes cookies, advertising IDs, and other unique device identifiers." *Id*. at 27. Common evidence will show that Google associates these and other unique identifiers and sensitive information that Google routinely places in RTB bid requests and offers for sale and sells[15] to hundreds of participants outside of Google

---

[14] Richards Rep. ¶¶ 7, 91, 119, 128-131, 135. Because it is undisclosed, there is no mechanism for account holders to consent (or decline to consent) to Google sharing with or selling to third parties their personal information in RTB. *Id*. ¶ 137.

[15] California law, which applies here, defines a sale of personal information as "selling, renting, releasing, disclosing, disseminating, making available, transferring, or otherwise communicating…by electronic or other means, a consumer's personal information by the business to another business or third party for monetary or other valuable consideration." Cal. Civ. Code § 1798.140(t)(1).

in the Google RTB auctions. Shafiq Rep. ¶¶ 35-89, 96-98. Plaintiffs' expert's analysis of Google's data produced in this action reveals that, when a Google account holder is involved, Google can associate the information shared with RTB participants with a specific Google account holder ███

███████████████████. *Id*. ¶¶ 35-36. In short, the evidence produced by Google shows that the information it shares is *always* and thus commonly associated with the user's Google account.

Common evidence also shows that Google maintains records of when each account holder created a Google account and that Google RTB affects all or virtually all Google U.S. account holders. Shafiq Rep. ¶¶ 90-91; Wilson Rep. ¶¶ 15, 80-100, 124. Notably, there is no setting or control available whereby Google users can completely stop their information from being shared through RTB. Richards Rep. ¶ 137; Wilson Rep. ¶¶ 101-123.[16] Thus, there is a common method and common evidence to establish Class membership.

Like all members of the proposed class, plaintiffs' personal information was offered for sale and sold in RTB auctions during the class period. Indeed, the limited data Google has produced to date shows that for just the eight-week sampled period allowed by the Court, plaintiffs' personal information was sent to hundreds of RTB participants around the world almost ███████ times. Shafiq Rep. ¶¶ 35-36. More than ██████ of these bid requests involve sensitive information being viewed by the plaintiffs, such as websites involving health matters, political views, and precise geolocation. *Id*. ¶¶ 35, 40. All of the ███████ bid requests include at least █ common data fields, including: the ███████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████. *Id*. ¶¶ 41-42. The claims here focus on the common fields. Given the volume and uniformity of the sampled plaintiff bid data, and the Court's requirement that Google's production of sampled plaintiff data be representative of the entire class period and for the

---

[16] Google may wrongly contend that some settings can affect the personal information that is shared through RTB. However, regardless of the setting, there is always a core amount of personal information shared with RTB participants. Wilson Rep. ¶ 101. Moreover, even if effective, Google's own records show that the number of class members who changed these settings is truly de-minimis. *Id*. ¶ 103; Pritzker Decl., Ex. 13. Each RTB transaction is logged by Google; if any user successfully availed herself of these settings each-and-every time she went online over a seven-year period and for every device and browser and app used, she would not appear in Google's RTB-related logs, and therefore not be a member of the class. *See* Shafiq Rep. ¶¶ 92-95.

class as a whole (*see* ECF 382, 483), the Court can conclude for the purposes of this motion that all Google U.S. account holders since June 28, 2016 have similarly had significant amounts of the same categories of personal information shared through Google RTB.

Plaintiffs seek to certify the following class for whom Google breached its contractual promise not to share or sell its account holders' personal information to anyone outside of Google:

> All individual Google account holders subject to a Google United States Terms of Service whose personal information was sold or shared by Google in its Real Time Bidding auctions after June 28, 2016.

All legal claims in plaintiffs' complaint involve these common factual issues regarding Google's promises, conduct, and resulting harm, all of which can be answered using common evidence "in one stroke." *Olean*, 31 F.4th at 663. These "aggregating, enabling issues" predominate because they are "more prevalent or important" than any "individual issues." *Id.* at 664.

## III.    LEGAL STANDARD

Rule 23(a) requires that: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect class. A party seeking class certification need only satisfy the requirements of one subsection of Rule 23(b). *Olean*, 31 F.4th at 664-65. Certification under Rule 23(b)(3) is appropriate if "the questions of law or fact common to the class members predominate over any questions affecting only individual members," and "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Rule 23(b)(2) permits certification when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."

While the court's class certification analysis must be rigorous and may overlap with the merits, the mere fact that a party moves for class certification is not a "license to engage in free-ranging merits inquiries." *Stockwell v. City and Cty of San Francisco*, 749 F.3d 1107, 1111-12 (9th Cir. 2014) (quoting *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 466 (2013)). Instead, "[m]erits questions may be considered to the extent—but only to the extent—that they are

relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Id.* The overall goal of Rule 23 is "to select the method best suited to adjudication of the controversy fairly and efficiently." *Amgen*, 568 U.S. at 460 (cleaned up).

## IV.    ARGUMENT

### A.    All 23(a) Requirements are Satisfied

**1.    Numerosity.** Numerosity requires a class so numerous that joinder of all members individually would be impracticable. Rule 23(a)(1). "Although there is no exact number, some courts have held that numerosity may be presumed when the class comprises forty or more members." *See Krzesniak v. Cendant Corp.*, 2007 WL 1795703, at *7 (N.D. Cal. June 20, 2007). While Google has not yet identified the number of unique Google U.S. account holders, Google has confirmed that there are about 1.4 billion U.S. accounts potentially at issue. *See* Pritzker Decl., Ex. 13. There are at a minimum tens of millions of potential class members here.

**2.    Commonality.** Commonality requires "questions of law or fact common to the class." Rule 23(a)(2). A common question is one of "such nature that it is capable of class-wide resolution— which means that the determination of its truth or falsity will resolve an issue that is central to the validity of each of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). "[F]or purposes of Rule 23(a)(2)[,] even a single common question will do." *Id.* at 359 (quotations and brackets omitted). Here, common issues include whether: (1) Google promised not to share or sell Class members' personal or sensitive information to third parties; (2) Google offered for sale and/or sold Class members' personal or sensitive information to RTB participants in Google RTB auctions; and (3) Google's conduct contravenes societal norms and is highly offensive to a reasonable person. Here, Google's standardized contracts and uniform actions are evidence capable of answering these common questions. *See* Caracuzzo Decl. ¶¶ 31-37, Exs. 35, 39, 41; Wilson Rep. ¶¶ 32-42; Shafiq Rep. ¶¶ 35-42; Richards Rep. ¶¶ 75-118. Also, whether the █ or more items of Class member data Google uniformly transmits in RTB bid requests are "personal information" under Google's contracts and California law is a common question. Commonality is met.

**3.    Typicality.** "The typicality requirement looks to whether the claims of the class representatives [are] typical of those of the class, and [is] satisfied when each class member's claim

arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Brown v. Google, LLC,* 2022 WL 17961497, at *16 (N.D. Cal. Dec. 12, 2022*)*. It is a "permissive" standard and its focus "should be on the defendant's conduct and plaintiff's legal theory, not the injury caused to the plaintiff." *Simpson v. Fireman's Fund Ins. Co.*, 231 F.R.D. 391, 396 (N.D. Cal. 2005). Here, each plaintiff and the Class is subject to a common U.S. Google ToS and Privacy Policy, and their claims and injuries all arise from a common wrong based on Google's broken promises and systematic sharing and sale of their personal information in Google RTB. *See* Caracuzzo Decl. ¶¶ 31-37; Pritzker Decl. ¶¶ 19-22, Exs. 6-11; Shafiq Rep. ¶¶ 35-42.

**4.    Adequacy.** Plaintiffs and their counsel meet Rule 23(a)(4)'s requirement that they "will fairly and adequately protect the interests of the class."  This inquiry considers whether plaintiffs and their counsel have any conflicts of interest with other class members, and whether plaintiffs and their counsel will prosecute the action vigorously on behalf of the class. *Staton v. Boeing Co.*, 327 F. 3d 938, 957 (9th Cir. 2003). Furthermore, analysis under Rule 23(g), which is part of the Rule 23(a)(4) adequacy analysis (*see Victorino v. FCA US LLC*, 322 F.R.D. 403, 406 (S.D. Cal. 2017)), and as supported by the Pritzker Declaration and exhibits, shows adequacy is met. Proposed Class Counsel (a) have done substantial work "identifying or investigating potential claims" (*see* Pritzker Decl. ¶ 28), (b) have, as their resumes demonstrate, experience and substantial success in complex litigation and class actions, including privacy rights litigation (*see id.* ¶¶ 26-34), (c) possess "knowledge of the applicable law" (*see ibid.*), and (d) have substantial resources that they are able to "commit to representing the class" (*see id.* ¶ 27).  *See* Rule 23(g)(1)(A)(i)–(iv).

**B.    Common Issues Predominate Under Rule 23(b)** [17]

**1.    California Law Applies to All Claims**

Google's ToS uniformly provided that California law commonly applies to all claims.

---

[17] In accordance with Rule 23(c)(4), Ninth Circuit courts permits issue certification in the absence of a finding that common issues predominate over individual issues with respect to the action as a whole. *See Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996) ("Even if the common questions do not predominate over the individual questions so that class certification of the entire action is warranted, Rule 23 authorizes the district court in appropriate cases to isolate the common issues under Rule 23(c)(4) and proceed with class treatment of these particular issues."). Plaintiffs seek class certification under Rule 23(c)(4), as appropriate.

Caruzzo Decl. ¶¶ 31-37, Exs. 39, 41 ("California law will govern all disputes arising out of or relating to these terms…or any related services.").

### 2.    Common Issues Predominate as to the Breach of Contract Claim

There is a common contractual promise to class members—that Google will not share or sell their personal information to anyone outside of Google—and common, class-wide proof that Google breaches this promise when it shares and sells such information in Google RTB.

### a.    Google's Form Contract is Common, Classwide Evidence

Whether Google promised class members that it would not share or sell their personal or sensitive information is answerable with common proof—Google's Terms of Service, Privacy Policy, and incorporated notices—amounting to a common form contract.

To create a Google account, all class members must agree to Google's ToS. Caruzzo Decl., ¶¶ 31-37, Exs. 39, 41. Since March 31, 2020, the ToS hyperlinks and incorporates Google's prominently-displayed "How Our Business Works" page, which expressly states that Google "never sells[s] your personal information to anyone." *Id*., Ex. 38; *see also* MTD Order (ECF 233) at 3, 8.[18] Google also states:

> Advertisers do not pay us for personal information, such as your name or email, and we never share that information with advertisers, unless you ask us to. We also never use your emails, documents, photos, or sensitive information like race, religion, or sexual orientation, to personalize ads to you.

Caruzzo Decl., Ex. 38.

Google's Privacy Policy also applies to all class members; The Privacy Policy makes express promises to class members regarding the protection of their personal information. *See* Introduction, *supra*; Caruzzo Decl. ¶¶ 19, 23-30, Exs. 35, 36, 40. The Privacy Policy also states that Google "collects information to provide better services to all of our users. . . like which ads you'll find most

---

[18] "California law makes it quite easy to incorporate a document by reference." *See In re Facebook, Inc., Consumer Privacy User Profile Litig*., 402 F. Supp. 3d 767, 791 (N.D. Cal. 2019) ("*Facebook Consumer Priv.*"). The "contract need not recite that it 'incorporates' another document, so long as it 'guide[s] the reader to the incorporated document.'" *Shaw v. Regents of Univ. of California*, 58 Cal. App. 4th 44, 54 (1997) (quoting *Bakery v. Aubry,* 216 Cal. App. 3d 1259, 1264 (1989)); *accord Marchand v. Northrop Grumman*, 2017 WL 2633132, at *5 (N.D. Cal. Jun 19, 2017) (If a contract "directed" the parties to a document the document is part of the contract); *see also* Caruzzo Decl. ¶¶ 13-15, 30.

Case No. 4:21-cv-02155 YGR-VKD

PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

useful," and describes the information Google collects to include:

> . . .[U]nique identifiers, browser type and setting, device type and settings, operating system, mobile network information including carrier name and phone number, and application version number. We also collect information about the interaction of your apps, browsers and devices with our services, including IP address, crash reports, system activity, and the date, time and referrer URL of your request.

*Id*., Ex. 36, at 2. The Privacy Policy commonly defines Class member "[p]ersonal information" as

> information that you provide to us which personally identifies you, such as your name, email address, or billing information, or other data that can be reasonably liked to such information by Google, such as information we associate with your Google Account.

*Id.* at 26.

Google's ToS, Privacy Policy, and incorporated notices provide a common commitment to class members that Google does not share or sell their personal information to anyone outside of Google. This is the precise type and form of commitment that courts look to in assessing whether there is common contract to which Google and class members are bound. *See In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 610 (9th Cir. 2020) ("*Facebook Tracking*")(contract must "outline shared commitments to which users must abide").

Whether or not agreeing to these terms constitutes consent (or lack of consent) to Google's practice of disclosing users' personal information to RTB participants in the Google RTB auctions is subject to common proof. There is also classwide, objective proof of contract formation from the perspective of a reasonable user. *Sateriale v. RJ Reynolds Tobacco Co.*, 2014 WL 7338877, at *9 (C.D. Cal. Dec. 19, 2014). "[C]ourts in construing and applying a standardized contract seek to effectuate the reasonable expectations of the average member of the public who accepts it." *Williams v. Apple, Inc.*, 338 F.R.D. 629, 638 (N.D. Cal. May 28, 2021) (quoting Restatement (Second) of Contracts § 211(2)); *accord Brown v. Google LLC*, 2021 WL 6064009, at *8 (N.D. Cal. Dec. 22, 2021) (Google's "contract language must be assessed objectively, from the perspective of a reasonable [Google] user." (quoting *Facebook Consumer Priv.*, 402 F. Supp. 3d at 801). [19]

---

[19] In *Facebook Consumer Priv.*, 402 F. Supp. 3d at 789, the Court explained that the test for consent "is one of contract interpretation governed by California law," which "requires the Court to pretend that users actually read [the Defendant's] contractual language before clicking their acceptance, even though we all know virtually none of them did" and that requires the contract to "be assessed objectively, from the perspective of a reasonable" consumer.

Claims that arise from "form contracts" are "particularly appropriate for class treatment." Newberg on Class Actions § 3.24 (5th ed.). So too here. The common evidence for class members as a whole is Google's own contract language. Whether Google's ToS, Privacy Polices and incorporated notices constitute a unilateral contract, and whether class members accepted Google's commitment – its affirmative promise to not share or sell their personal information with or to third parties –"will be determined by reference to objective criteria and therefore these elements are susceptible to common proof" on a classwide basis. *Roley v. Google LLC*, 2020 WL 8675968, at *10 (N.D. Cal. July 20, 2020) (citing *Sateriale*, 2014 WL 7338877, at *9)).

### b.    Whether Google's Conduct Breached the Contract is Susceptible to Common, Classwide Proof

Whether Google breached its commitment not to sell or share class members' personal information is also susceptible to common proof. This common proof includes Google's internal documents and protocols, internal Google RTB data, the testimony of Google's witnesses, and expert testimony concerning the ubiquity of Google RTB and its common impact on the Class.

Google RTB is a highly-automated computer process, the details of which are discussed above and explained more fully in the accompanying Wilson and Shafiq Reports, both of whom are experts in the field of data security, computer science, and internet privacy. The RTB auction process is well-documented in Google's RTB records and commonly works as follows:

(1) A class member visits a website or opens an app where Google RTB related source code is present, creating an impression.

(2) The Google RTB source code sends the user's impression (what the class member is looking at) to Google RTB. The impression includes a common set of information about the class member and their device, including unique identifiers associated with the class member (such as the Google User ID, device IDs, hosted match data [20], and IP address [truncated]); browsing history (such as the website being visited, the URL, and the name of the app being used); location (such as country, postal code and hyperlocal [longitude and latitude], and the make and model of the class member's web browser or mobile device and its screen size and particulars.

(3) For Google account holders, Google associates the information collected with the

---

[20] Hosted match data reflects cookie-matching sold by Google in RTB auctions. Wilson Rep. ¶¶ 43-46; Shafiq Rep., ¶23.

user's Google account.

(4) Google RTB packages the identifiers and other information that it associates with each user's Google account into a "bid request," which is the standardized way that Google solicits bids from hundreds of RTB participants around the world seeking the opportunity to place an ad or simply lurking in the auctions to gather free data about Google account holders and their internet activities. The bid requests uniformly include (i) information that Google associates with a class member's Google account; (ii) information that uniquely identifies the class member to RTB participants, including a Google User ID and other information that uniquely identifies the class member and their device; and (iii) communications content and contextual information that places the class member and their communication into specific ad targeting categories, including categories that Google publicly admits are "sensitive."

(5) Google RTB sends the bid requests to RTB participants (including "Ad Tech" companies that further disseminate the bid request data to other third parties) that may choose to bid on this impression by submitting a common form of "bid response" to Google RTB.

(6) Google RTB selects the winning (highest) bidder, which can deliver a targeted advertisement to the specific class member, and collects revenue from the buyer.

Wilson Rep. ¶ 24; Shafiq Rep. ¶¶ 17-22.

The common question for the trier of fact is whether, contrary to Google's contractual commitment to class members, Google RTB transmits "personal information" to third parties under Google's contract and California law.. Plaintiffs will present common evidence to demonstrate the breach. As plaintiffs' experts explain, there is common evidence to show a jury that the account holder data Google actually and uniformly transmits to third parties in Google RTB auctions (1) is information that can be reasonably linked to each account holder and is, in fact, associated by Google with each user's Google account (qualifying as "personal information" under Google's contract); and (2)  contains enough information and sufficient specificity to "identify, relate to, describe [or that] is reasonably capable of being associated with, or could reasonably be linked, directly or indirectly, with a particular consumer or household" under California law. Cal. Civ. Code § 1781.40(v)(1). Although Google has not produced data on a class-wide basis, the data Google has produced so far for the plaintiffs (data that was required to be representative of the Class as a whole) was analyzed by plaintiffs' experts using established scientific methodologies and, together with Google's own records, provides common evidence for a jury to conclude that class member data uniformly

transmitted to third parties in the Google RTB auctions includes, at a minimum:

(a) "<u>unique identifiers</u>": a "persistent identifier that can be used to recognize a consumer, a family or a device that is linked to a consumer or family, over time and across services," including "a device identifier; an Internet Protocol address; cookies, beacons, pixel tags, mobile ad identifiers...; customer number; unique pseudonym, or user alias; telephone numbers, or other forms of persistent or probabilistic identifiers that can be used to identify a particular consumer or device that is linked to a consumer or family".[21];

(b) "<u>browsing history</u>. . . information regarding a consumer's interaction with an internet website application or advertisement," such as the domain name, app, web page, or URL the class member is currently viewing[22];

(c) "[g]eolocation data" including postal code/longitude and latitude coordinates[23]; and

(d) "[i]nferences drawn from any of the information identified [in the law] to create a profile about a consumer reflecting the consumer's preferences, characteristics, ... predisposition, behavior, attitudes, intelligence, abilities, and aptitudes", such as hosted match data, user lists, age, gender, and sensitive categories or verticals[24]

Google RTB participants understand that these data fields in the bid requests can be and are reasonably associated with a particular consumer or household, which is why a consumer using her browser to search for a mattress for her son will see advertisements for mattresses pop up—across all her devices—for weeks.[25]

Google may argue that non-personalized-ads ("NPA"), do-not-track (DNT), or similar settings may be available on individual devices and that the existence of these capabilities make certification impossible. Not so. **<u>First</u>**, as a factual matter, Google's own records show that only about ▮ percent of class members ever invoked these types of settings during the class period—even on a one-time basis. *See* Pritzker Decl., Ex. 13. That means approximately ▮ percent of class members *never* invoked them. **<u>Second</u>**, to be clear, this is *not* a case about whether class members were or were

---

[21] CAL. CIV. CODE § 1798.140(a); Shafiq Rep. ¶ 42; Wilson Rep. ¶¶ 35-36.
[22] CAL. CIV. CODE § 1798.140(v)(1)(F); Shafiq Rep. ¶ 42; Wilson Rep. ¶¶ 35-36.
[23] CAL. CIV. CODE § 1798.140(v)(1)(G); Shafiq Rep. ¶ 42; Wilson Rep. ¶¶ 35-36.
[24] CAL. CIV. CODE § 1798.140(v)(1)(F); Shafiq Rep. ¶ 42; Wilson Rep. ¶¶ 35-36.
[25] *See* Kirsten Martin, PhD: *It's not their story to tell: why companies should respect our privacy* (TEDxChartlottesville, 2017) [video], http://tedxcharlottesville.com/archive/2017 (click on Kirsten Martin). Dr. Martin is the Director of Technology Ethics Center at the University of Notre Dame.

not shown personalized advertisements. Plaintiffs allege that Google shared or sold class members' personal information in the Google RTB auctions to third parties, despite Google's express promise that it would not do so. Here, there is common evidence to show a jury that class members' personal information was and is in fact shared or sold in the Google RTB auctions. Shafiq Rep. ¶¶ 35-36, 41-42; Wilson Rep. ¶¶ 32-37. Because common evidence will inform the Court's interpretation of Google's form contract, and because Google's alleged breach requires common proof, certification of plaintiffs' contract claim is warranted.

### 3.     Common Issues Predominate for Plaintiffs' Other Claims

Each of plaintiffs' claims turns on Google's uniform promise that it doesn't share or sell class members' personal information, further supporting class treatment.

### a.     Breach of Confidence Claim

California's tort for breach of confidence has four elements: (1) the plaintiff conveyed confidential and novel information to the defendant; (2) the defendant had knowledge that the information was being disclosed in confidence; (3) there was an understanding between the defendant and the plaintiff that the confidence be maintained; and (4) there was a use in violation of the understanding." *Berkla v. Corel Corp.*, 302 F.3d 909, 917 (9th Cir. 2002) (citation omitted).

First, as shown above (at §§ II and IV.B), there is common proof that Google collects and shares with RTB participants class members' personal information. This includes the contents of class members' internet communications and information about their activities and interests. Shafiq Rep. ¶¶ 35, 42. Such information is obviously "confidential." MTD Order (ECF 233) at 15:2-6.[26]

Because the categories of user data transmitted to RTB participants in Google RTB auctions are standardized but reveal information that is specific to or reasonably associated with each account holder, plaintiffs will also be able to show a jury through common evidence that "the combination and totality of various different categories of [class members' personal information] makes such disclosure novel." MTD Order (ECF 233) at 15:6-10 (citing CCAC ¶ 419); *see San Jose Options,*

---

[26] *Cf. Riley v. California*, 573 U.S. 373, 395-96 (2014) ("Internet search and browsing history" and "location information"); *Flores-Mendez v. Zoosk, Inc.,* 2021 WL 308543, at *4 (N.D. Cal. Jan. 30, 2021) ("sexual preference[]"); *Stasi v. Inmediata Health Grp.*, 501 F. Supp. 3d 898, 915 (S.D. Cal. 2020) (medical information).

*Inc.* v. *Yeh*, 2014 WL 4380045 at *5-6 (N.D. Cal. Sep. 4, 2014) (information was confidential and novel when "taken as a whole, viewing the forest instead of a single individual email"); *Balboa Ins. Co. v. Trans Global Equities*, 218 Cal. App. 3d 1327, 1343-46 (1990). Plaintiffs' theory is amply supported by evidence showing that common issues predominate with respect to the kinds of personal information that Google's systems routinely disclose to RTB participants, and the extent to which that personal information can be linked to or reasonably associated with individual class members, and thus inherently "novel." Shafiq Rep. ¶¶ 42-98; Wilson Rep. ¶¶ 32-79.

On the second and third elements, there is ample common evidence that Google knew class members were disclosing their information in confidence, and that there was a reasonable common understanding that Google would maintain that confidence. Richards Rep. ¶¶ 72-84, 130-131. Any contrary argument by Google "is belied by the express language of Google's policies," MTD Order (ECF 233) at 15:11-15, which are set forth both as contractual promises, *see above at IV.B.2.a*, and extracontractual representations that it would never sell or share users' personal information to any third party, including advertisers. *Cf. Ojala v. Bohlin*, 178 Cal. App. 2d 292, 300 (1960) (information was conveyed in confidence where defendant gave "assurance … that he would not use the [information] for his own benefit"). Google's extracontractual representations include its many unequivocal statements made on its website, in the national media, and in sworn Congressional testimony that Google will not only never share personal information that "personally identifies" users, but also that Google will never "sell," "share," or "reveal" users' personal information to any third party, full stop. *See, e.g.*, CCAC, Exs. 23 at 1, Ex. 24 at 1-4, Ex. 25 at 1; *see also* Google's ToS and Privacy Policies, Caracuzzo Decl., Exs. 35, 36, 49-41.

Google has also represented that it will not allow advertisers to target ads based on users' personal information related to health, sexuality, race, religious beliefs, and other sensitive categories (Caracuzzo Decl. ¶¶ 25-30), and that Google will otherwise keep users' personal information "protected and private." *Id*. Google made these statements uniformly to all class members. Finally, as discussed above at IV.B.2.b., whether the manner in which Google routinely conducts its RTB auctions resulted in class members' personal information being disclosed can be based on common proof. Plaintiffs' breach of confidence claim should be certified.

**b.    The CIPA Claim**

**i.    Lack of Consent is a Common Question**

Plaintiffs' claims under the California Information Privacy Act contain the common element (or defense) of lack of consent. *See* CAL. PEN. CODE § 631 (CIPA). "Consent 'can be explicit or implied, but any consent must be actual . . . . In order for consent to be actual, the disclosures must 'explicitly notify' users of the practice at issue." MTD Order (ECF 233) at 16; *accord Tsao v. Desert Palace, Inc*., 698 F.3d 1128, 1149 (9th Cir. 2012) (holding that claims of implied consent must be "actual" and "to be effective, ... must be ... to the particular conduct, or substantially the same conduct."). Here, plaintiffs will prove with common evidence—Google's uniform contract with class members, as discussed *above*—that Google uniformly and unequivocally promises that it "will not sell your personal information to anyone" and "do[es] not share personal information … outside of Google." Caracuzzo Decl., Exs. 34-42. *Nowhere* in its ToS or Privacy Policies does Google disclose that, contrary to this express promise, it *in fact* shares with and sells to hundreds of companies outside of Google class members' personal information in the Google RTB auctions, precisely as plaintiffs allege. *Id.*; Richards Rep. ¶¶ 90-118, 127-129, 137. Also commonly, there is no mechanism by which class members can overcome this promise—by either declaring that they do, or do not, consent to Google sharing their personal information with third parties in RTB. Richards Rep. ¶ 137.

There is thus common evidence to show a jury that Google uniformly fails to "explicitly notify" class members of "the practice at issue," and thus there is common class-wide evidence defeating the requirement of actual consent. MTD Order (ECF 233) at 16; *accord In re. Facebook Biometric Information Privacy Litig*., 326 F.R.D. 535, 545 (N.D. Cal. 2018) (certifying class where Facebook's facial recognition technology harvest biometric identifiers as contemplated under BIPA, and if so, "did Facebook give users prior notice of these practices and obtain their consent."), *aff'd*, 932 F.3d 1264 (9th Cir. 2019).

**ii.    The CIPA Claim is Subject to Common Proof**

To prevail on their CIPA claim, plaintiffs must show that Google (1) "aids, agrees with . . . or conspires with any other person or persons to unlawfully do, or permit or cause" those persons to (2) "willfully and without the consent of all parties to the communication, or in any unauthorized

manner" to (3) "read[], or attempt to read, or to learn the contents or meaning of any . . . communication;" (4) while the same is in transit or . . . is being sent from, or received at any place" (5) "within this state." CAL. PEN. CODE § 631. These CIPA elements are all subject to common proof.

**First**, proof that Google's RTB auctions pertain to "contents" of electronic communications is common to all class members. CIPA broadly defines "'content' as that which 'includes any information relating to the substance, purport, or meaning of the communication at issue.'" MTD Order (ECF 233) at 17:6-9. There is common proof that Google regularly allows RTB participants to "read" or "attempt to read' or "learn the contents or meaning of" class member communications as part of the Google RTB auction process. Shafiq Rep. ¶¶ 42; Richards Rep. ¶¶ 90-100.

**Second**, proof that Google's actions occurred while communications were "in transit" is also common to all class members. *See, e.g., In re Yahoo Mail Litig.*, 308 F.R.D. 577, 591 (May 26, 2015) ("*Yahoo Mail*") ("Whether Yahoo intercepts emails while those emails are in transit is capable of classwide resolution"). Here, Google RTB's re-directions occur in "real-time," while the communications between class members and publishers are still occurring. Wilson Rep. ¶ 26; Shafiq Rep. ¶ 19.

Lastly, there is common proof that Google's actions occurred within the State of California, in particular: (i) Google's venue and choice of law agreement with class members in the ToS, and (ii) Google's activities were directed and accomplished by employees in California, using servers located or under the control of California employees.[27]

### c.     Invasion of Privacy and Intrusion Upon Seclusion Claims

For plaintiffs' invasion of privacy and intrusion upon seclusion claims, courts consider whether (1) there exists a reasonable expectation of privacy, and (2) the intrusion was highly offensive." *Facebook Tracking*, 956 F.3d at 601. Both elements can be established through common

---

[27] All Google RTB transactions in the United States run through two server locations, one in California and one in Virginia. *See* https://developers.google.com/authorized-buyers/rtb/peer-guide. Moreover, Google has waived any argument regarding location of the activity by failing to produce evidence showing otherwise. The Court directed Google to produce any proof that at least one Google RTB recipient or publisher received the communications at issue while they were not located in California. MTD Order (ECF 233) at 17:10-16. Google never produced any such proof. Pritzker Decl. ¶ 13.

proof.

### i.    Whether a "Reasonable" Expectation of Privacy Exists is a Common, Class-wide Issue

"A 'reasonable' expectation of privacy is an objective entitlement founded on broadly based and widely accepted community norms." *Hill v. NCAA*, 7 Cal. 4th 1, 37 (1994). Accordingly, whether class members had "reasonable expectations" of privacy is subject to common proof of broadly based and widely accepted community norms, not on their subjective expectations. *See, e.g.*, *Opperman v. Path, Inc.*, 2016 WL 3844326, at *11 (N.D. Cal. July 15, 2016) (certifying class for intrusion upon seclusion claim). In addition, insofar as a reasonable expectation of privacy rises or falls on consent, Google's express promises and its breaches of those promises are uniform for all class members and go directly to the issue of consent and reasonable expectations of privacy.

Here, in light of Google's uniform promises that it would not share and sell class members' personal information, class members uniformly had a reasonable expectation that Google would keep their information private in accordance with its promises. *See, e.g.*, *Facebook Tracking*, 956 F.3d at 602 ("Facebook set an expectation that logged-out user data would not be collected, but then collected it anyway."); *In re Nickelodeon Cons. Priv. Litig.*, 827 F.3d 262, 294 (3d Cir. 2016) (holding that a reasonable expectation of privacy existed when Nickelodeon promised users that it would not collect information from website users, but then did). Proof of these issues is common to the class (*see* Richards Rep. ¶¶ 75-118, 130-131) and will be based on common evidence in the form of common representative information that Google has produced in discovery.

### i.    The "Highly Offensive" Element is Judged By a "Reasonable Person" Standard

The element of "highly offensive" is judged on an objective "reasonable person" standard and must be "'sufficiently serious and unwarranted' as to constitute an 'egregious breach of social norms,'" which does not depend upon any individual plaintiffs' feelings about the conduct. *Facebook Tracking*, 956 F.3d at 606. This element is "essentially a 'policy' determination" as to whether the alleged conduct is "highly offensive" under the circumstances." *Opperman*, 2016 WL 3844326, at *11.  The relevant factors include "the degree and setting of intrusion, and the intruder's motives and objective." *Id.* Critically, while "[t]hese determinations may require an examination of [Google's]

motives, [] they will not require individualized determinations of class members' subjective experiences." *Id.* Given this standard, the question of whether Google's conduct was "highly offensive" is subject to common proof class wide. *Id*; *see* Richards Rep. ¶¶ 75-118.

### d.    Publication of Private Facts Claim

For the publication of private facts claim, plaintiffs must show "(1) public disclosure of (2) a private fact (3) which would be offensive and objectionable to the reasonable person and (4) which is not of legitimate public concern." *Shulman v. Grp. W. Prods., Inc.*, 18 Cal. 4th 200, 214 (1998) (citations omitted). Elements two and three mirror the elements of the other privacy claims and, for the same reasons discussed above, these elements are subject to common class-wide proof. In addition, on the issue of whether the information Google shares through RTB is "a private fact," the evidence demonstrates that the core allegations of plaintiffs' complaint are true for all class members. Shafiq Rep. ¶¶ 41-42. Thus, the evidence produced to date supports that the information shared through the RTB auctions is personal information under California law. "[P]arties generally maintain a reasonable expectation of privacy in their personal information." MTD Order (ECF 233) at 13:4-9.

### i.    "Public Disclosure" is Subject to Common Evidence

With respect to the first element, a plaintiff must show that the information is "widely published and not confined to a few persons or limited circumstances." *Hill*, 7 Cal. 4th at 27. This question will be answered with common evidence that Google shares class members' personal information through RTB with hundreds of RTB participants around the world based on information collected about those class members on millions of websites and apps. Shafiq Rep. ¶¶ 38-39; Pritzker Decl., Ex. 12. As this Court previously observed, the public disclosure element can be satisfied "[g]iven the large number of participants in the RTB bidding process." MTD Order (ECF 233) at 13:27-14:5; *see also Facebook Consumer Priv.*, 402 F. Supp. 3d at 796 ("[D]issemination of your private information to tens of thousands of individuals and companies is generally going to be equivalent to making that information 'public.'"). The scope and scale of Google's disclosures to third parties is further confirmed by plaintiffs' expert. Prof. Shafiq analyzed the representative data produced by Google showing the information Google shared with RTB participants about the plaintiffs. Shafiq Rep. ¶¶ 35-42. This analysis revealed that for just the seven plaintiffs and for just

an eight-week period, Google disclosed their personal information through Google RTB to at least ▮▮ different companies located in ▮▮ different countries almost ▮▮▮ times. *Id*.

### ii.    The Information is Not of "Legitimate Public Concern"

The disclosure of class members' personal information and web-browsing histories through Google's RTB system are not of "legitimate public concern." This element also can be satisfied by common evidence and common legal arguments.

### C.    Common Issues Predominate Regarding the Relief Plaintiffs Seek

California law recognizes disgorgement of profits resulting from unjust enrichment, even where an individual has not suffered a corresponding loss. *Facebook Tracking*, 956 F.3d at 600; *In re Google Assistant Privacy Litigation*, 546 F. Supp. 3d 945, 967-8 (N.D. Cal. 2021) (plaintiffs in privacy case properly pled entitlement to non-restitutionary disgorgement for breach of contract).[28]

### 1.    Common Issues Predominate as to Disgorgement of Profits

Disgorgement is a common issue subject to common proof. Plaintiffs' damages expert, Prof. Zeithammer, calculates classwide disgorgement based on Google's internal revenue analyses of Google RTB revenues attributable to the use of the class member personal information at issue here, and applies econometrics. Zeithammer Rep. ¶¶ 18-63. Google's internal revenue analyses, outside econometric studies, and Prof. Zeithammer's additional economic analyses provide convergent multi-method evidence that approximately 51.1% of Google's RTB revenues result from the improper sale of class members' personal information to RTB participants in Google RTB auctions. *Id.* ¶¶ 12-14, 81, 98. Plaintiffs' other damages expert, Greg Regan, applies Prof. Zeithammer's 51.1% allocation to Google's gross RTB revenues during the class period to determine what percentage of those revenues constitute profits subject to disgorgement under a class-wide unjust enrichment remedy. Regan Rep. ¶¶ 35-53. Mr. Regan, applying his accounting expertise to Google's internal revenue documents, calculates Google's unjust enrichment profits for each year of the class period on a class-

---

[28] *See also*, *Alkayali v Hoed*, 2018 WL 3425980, at* 3 (S.D. Cal. 2018) (*citing Hernandez v. Lopez*, 180 Cal. App. 4th 932, 939 (2009) (holding that "a plaintiff may seek compensation under an unjust enrichment theory. . .based on the pleaded contract of action for breach of contract"); *Dunkin v. Boskey*, 82 Cal. App. 4th 171, 198 (2000) (same); 1 Witkin, Summary 11th Contracts § 1050 (2018) ("Restitution may also be awarded in contract actions. . ..").

wide basis (totaling at least ▮▮▮▮▮). *Id*. ¶ 53.

### 2.    Common Issues Predominate Based on Market Pricing Damages

As an alternative classwide damages analysis, Prof. Zeithammer proposes a market price damages model using common evidence to determine the market value of class members' personal information shared with RTB participants. Zeithammer Rep. ¶¶ 15-17, 84-97. Based on his analysis, which includes a review and analysis of four vendors that pay consumers for their personal information, Prof. Zeithammer determines that the fair market value of class members' personal information is $38 per year (or $3.17 per month) for each class member. *Id*. ¶¶ 15-17, 93-97, 100. This is a common approach to market damages.

### 3.    Common Issues Predominate as to Punitive Damages

Because "the purpose of punitive damages is not to compensate the victim, but to punish and deter the defendant, . . . the focus of a punitive damages claim is not on the facts unique to each class member, but on the defendant's conduct toward the class as a whole." *Ellis v. Costco Corp. III*, 285 F.R.D. 492, 542-44 (N.D. Cal. 2012) (certifying Rule 23(b)(3) class including a claim for punitive damages). Here, plaintiffs claim that Google acted with the requisite intent on a class-wide basis and will rely on Google's internal documents and other common evidence to prove their entitlement to punitive damages at trial.

### 4.    Common Issues Predominate as to Statutory Damages

CIPA provides for a statutory minimum judgment of $5,000 per violation or treble damages, whichever is greater. Cal. Penal Code § 637.2(a). Such statutory damages calculations are common and certifiable. Plaintiffs' proposed class is large—likely containing hundreds of millions of class members—and, accordingly, any statutory damages for the class would also likely be substantial. But that is not a basis to refuse certification. For example, in *Patel v. Facebook*, Inc., the Ninth Circuit affirmed certification of a Rule 23(b)(3) class even though the plaintiffs likewise sought statutory damages. 932 F. 3d 1264, 1276-77 (9th Cir. 2019) ("Where neither the statutory language nor legislative history indicates that the legislature intended to place a cap on statutory damages, denying class certification on that basis would subvert legislative intent."); *see also Raffin v. Medicredit, Inc.*, 2017 WL 131745, at *9 (C.D. Cal. Jan. 3, 2017 (despite class action device, the California legislature

1   "evidently decided that [] damages of $5,000 per violation serve CIPA's purposes and are

2   proportional to the harm caused by CIPA violations") (alteration in original). The same is true here.

3   In any event, "concerns about excessive damages are better suited to a later stage of the litigation."

4   *Zaklit v. Nationstart Mortg. LLC*, 2017 WL 3147901, at *9 (C.D. Cal. July 24, 2017).

5           **D.      Plaintiffs' Methods for Fairly Distributing Monetary Relief to Class Members**

6           Plaintiffs' aggregate class-wide damages are calculable based on common proof and sound

7   methodologies. At the class certification stage, that "may be all that plaintiffs need prove." Newberg

8   on Class Actions § 12:2. This is because when "the only question is how to distribute damages, the

9   interests affected are not the defendant's but rather those of silent class members." *Six (6) Mexican*

10  *Workers*, 904 F.2d 1301, 1307 (9th Cir. 1990); *see also Ruiz Torres v. Mercer Canyons*, 835 F.3d

11  1125, 1140-41 (9th Cir. 2016) (while the partitioning of an aggregate damage award among class

12  members may lead to individual calculations, that would not defeat class certification).

13          Although Ninth Circuit law is clear that Google has no stake in how an aggregate award might

14  be distributed, plaintiffs nonetheless propose a plan to distribute damages, if awarded at trial, to class

15  members. Whether constituted as disgorgement of unjust enrichment profits or an award of

16  compensatory damages based on the market value of class members' personal information shared in

17  RTB auctions, Mr. Regan, in his report, proposes a method to fairly and equitably allocate any

18  aggregate damages award to all class members on a pro rata basis according to the number of months

19  each class member has maintained an active Google account during the class period. This calculation

20  is knowable because Google maintains records for all class members identifying when they first

21  signed up for a Google account in the United States. Regan Rep. ¶¶ 54-57, 62-65; Shafiq Rep. ¶¶ 90-

22  91.

23          **E.      A Class Action is Superior to Individual Adjudications**

24          Under Rule 23(b)(3)'s superiority prong, a class action here will achieve "economies of time,

25  effort, and expense" and promote "uniformity of decisions as to persons similarly situated." *Amchem*

26  *Products v. Windsor*, 521 U.S. 591, 615 (1997) (citation omitted). All of these economies will be

27  satisfied by class treatment and a single trial.[29] Liability will be established under one state forum's

28

---

[29] Plaintiffs' proposed trial plan is described in the Pritzker Decl. ¶¶ 35-41.

law, California, under Google's uniform contract with all class members The evidence to be presented to the jury will be the same for the individual plaintiffs as it is for the Class. Pritzker Decl. ¶¶ 35-41. As discussed, all of these claims involve common issues regarding Google's promises, conduct and resulting harm, all of which can be answered using common evidence "in one stroke." *Olean*, 31 F.4th at 663.

### F.    Rule 23(b)(2) Certification Is Warranted for Injunctive Relief

Plaintiffs also seek certification under Rule 23(b)(2) for plaintiffs' claims for injunctive and declaratory relief. Rule 23(b)(2) requires courts to look at whether class members seek uniform relief from a practice applicable to all of them. *Ward v. United Airlines, Inc.*, 2021 WL 534364, at *7 (N.D. Cal. Feb. 12, 2021) (quoting *Rodriguez v. Hayes*, 591 F.3d 1105, 1125 (9th Cir. 2010)). Plaintiffs seek injunctive relief that would require Google to either stop sharing and selling class members' personal information in Google RTB auctions in violation of Google's contracts and California law, or provide accurate notice to class members that Google will or intends to share and sell their personal information to third parties in Google RTB auctions and afford all class members a meaningful and knowing opportunity to opt out and refuse Google permission to share or sell their personal information through Google RTB auctions. Plaintiffs also seek the appointment of an independent third-party to verify that the injunctive relief has been implemented. Pritzker Decl. ¶ 44.

"Unlike Rule 23(b)(3), a plaintiff does not need to show predominance of common issues or superiority of class adjudication to certify a Rule 23(b)(2) class." *Yahoo Mail*, 308 F.R.D. at 598-99 (certifying a Rule 23(b)(2) class seeking injunctive relief requiring Yahoo to stop scanning incoming and outgoing emails while in transit); *see DZ Rsrv. v. Meta Platforms, Inc.*, 2022 WL 912890, at *9 (N.D. Cal. Mar. 29, 2022) (certifying an injunctive relief class requiring Meta (f/k/a Facebook) to correct or cease certain practices). Here, Google has continued to uniformly breach its commitment to class members that it "doesn't sell your personal information to anyone," and to unjustly profit from its ongoing misconduct. These common practices can be addressed through injunctive relief.

## V.    CONCLUSION

For all of the foregoing reasons, plaintiffs respectfully request that the Court certify the Class, appoint plaintiffs as representatives of the Class, and appoint class counsel.

DATED:  July 14, 2023                    Respectfully submitted,

                                         **PRITZKER LEVINE LLP**

                                         By: */s/ Elizabeth C. Pritzker*

                                         Elizabeth C. Pritzker (Cal. Bar No.146267)
                                         Jonathan K. Levine (Cal. Bar No. 220289)
                                         Bethany Caracuzzo (Cal. Bar No. 190687)
                                         Caroline Corbitt (Cal Bar No. 305492)
                                         1900 Powell Street, Ste. 450
                                         Emeryville, CA 94602
                                         Tel.: (415) 692-0772
                                         Fax: (415) 366-6110
                                         *ecp@pritzkerlevine.com*
                                         *jkl@pritzkerlevine.com*
                                         *bc@pritzkerlevine.com*
                                         *ccc@pritzkerlevine.com*

                                         *Interim Class Counsel*

                                         **BLEICHMAR FONTI & AULD LLP**
                                         Lesley Weaver (Cal. Bar No.191305)
                                         Anne K. Davis (Cal. Bar No. 267909)
                                         Joshua D. Samra (Cal. Bar No. 313050)
                                         1330 Broadway, Suite 630
                                         Oakland, CA 94612
                                         Tel.: (415) 445-4003
                                         Fax: (415) 445-4020
                                         *lweaver@bfalaw.com*
                                         *adavis@bfalaw.com*
                                         *jsamra@bfalaw.com*

                                         **SIMMONS HANLY CONROY LLC**
                                         Jason 'Jay' Barnes (admitted *pro hac vice*)
                                         An Truong (admitted *pro hac vice*)
                                         Jenny Paulson (admitted *pro hac vice*)
                                         112 Madison Avenue, 7th Floor
                                         New York, NY 10016
                                         Tel.: (212) 784-6400
                                         Fax: (212) 213-5949
                                         *jaybarnes@simmonsfirm.com*
                                         *atruong@simmonsfirm.com*
                                         *jpaulson@simmonsfirm.com*

                                         **DICELLO LEVITT LLP**
                                         David A. Straite (admitted *pro hac vice*)
                                         485 Lexington Avenue, Suite 1001
                                         New York, NY 10017

Tel.: (212) 784-6400
Fax: (212) 213-5949
Tel: (646) 993-1000
*dstraite@dicellolevitt.com*

James Ulwick (admitted pro hac vice)
Ten North Dearborn Street, Sixth Floor
Chicago, IL 60602
Tel.: (312) 214-7900
*julwick@dicellolevitt.com*


**COTCHETT PITRE &
MCCARTHY, LLP**
Nanci E. Nishimura (Cal. Bar No. 152621)
Brian Danitz (Cal Bar. No. 247403)
Karin B. Swope (admitted *pro hac vice*)
840 Malcolm Road
Burlingame, CA 94010
Tel.: (650) 697-6000
*nnishimura@cpmlegal.com*
*bdanitz@cpmlegal.com*
*kswope@cpmlegal.com*

**BOTTINI & BOTTINI, INC.**
Francis A. Bottini, Jr. (Cal. Bar No. 175783)
Yury A. Kolesnikov (Cal. Bar. No. 271173)
7817 Ivanhoe Ave., Ste. 102
La Jolla, CA 92037
Tel.: (858) 914-2001
*fbottini@bottinilaw.com*
*ykolesnikov@bottinilaw.com*

*Counsel for Plaintiffs and the Proposed Class*

## FILER ATTESTATION

I, Bethany Caracuzzo, attest that concurrence in the filing of this document has been obtained from the other signatories.   Executed on July 14,2023 in Emeryville, California.

*/s/ Bethany Caracuzzo*
Bethany Caracuzzo

## CERTIFICATE OF SERVICE

I hereby certify that on July 14, 2023, I electronically filed the foregoing document with the Clerk of the Court using the ECF system which sent notification of such filing to all counsel of record.

*/s/ Bethany Caracuzzo*
Bethany Caracuzzo