# EXHIBIT B

# (REDACTED VERSION OF DOCUMENT SOUGHT TO BE FILED UNDER SEAL)

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# OAKLAND DIVISION

| | |
|---|---|
| *IN RE GOOGLE RTB CONSUMER PRIVACY LITIGATION* | Case No. 4:21-CV-02155 YGR (VKD) |
| *This document applies to all actions.* | **[PROPOSED] ORDER GRANTING PLAINTIFFS' MOTION FOR CLASS CERTIFICATION AND APPOINTMENT OF CLASS REPRESENTATIVES AND CLASS COUNSEL** |

**UNREDACTED VERSION SUBMITTED CONDITIONALLY UNDER SEAL**

Plaintiffs Christopher Valencia, John Kevranian, Terry Diggs, Kimberley Woodruff, Rethena Green, Salvatore Toronto, and Tara Williams move the Court under Federal Rule of Civil Procedure 23 for an Order (i) certifying this action as a class action, (ii) appointing plaintiffs as representatives of the class, and (iii) appointing Elizabeth Pritzker of Pritzker Levine LLP, Lesley Weaver of Bleichmar Fonti & Auld LLP, Jay Barnes of Simmons Hanly Conroy LLC, David Straite of DiCello Levitt LLP, Nanci Nishimura of Cotchett Pitre & McCarthy, LLP, and Yury A. Kolesnikov of Bottini & Bottini, Inc. as class counsel, with Ms. Pritzker to serve as lead class counsel.

Upon consideration of all papers filed in support of and in opposition to plaintiffs' motion, the parties' oral arguments at the hearing on the motion, and good cause appearing, **IT IS HEREBY ORDERED** that plaintiffs' motion is **GRANTED** as follows.

Plaintiffs seek to certify a nationwide class defined as follows:

> All individual Google account holders subject to a Google United States Terms of Service whose personal information was sold or shared by Google in its Real Time Bidding auctions after June 28, 2016.

Plaintiffs move for certification of the following legal claims, all arising under California law: (i) breach of contract, (ii) breach of confidence, (iii) invasion of privacy, (iv) intrusion upon seclusion, (v) publication of private facts, and (vi) for violations of the California Information Privacy Act ("CIPA"), Cal. Penal Code § 630 *et seq*.[1]

## LEGAL STANDARD

A class action is "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013). "Before

---

[1] Plaintiffs' Consolidated Class Action Complaint ("CCAC") asserts 12 claims. ECF 92. Judge Koh, previously assigned to this case, directed the parties to select eight of these claims to be litigated through trial. *See* ECF 83 at 1. The parties filed a joint statement identifying those eight claims, with plaintiffs reserving all rights as to the other four claims. *See* ECF 91 at 2. Plaintiffs' motion seeks certification of six of these eight claims. The claims that remain in abeyance are for violations of the California Unfair Competition Law (Cal. Bus. & Prof. Code § 17200 *et seq*.), California Constitutional Invasion of Privacy, Electronic Communications Privacy Act (18 U.S.C. § 2511 *et seq*.), and the Video Privacy Protection Act (18 U.S.C. § 2710 *et seq*.). The Court previously dismissed without prejudice plaintiffs' claims for breach of the implied covenant of good faith and fair dealing, and granted leave to move to amend this claim, following discovery, as appropriate. *See* MTD Order (ECF 233) at 10-11.

certifying a class, the trial court must conduct a rigorous analysis to determine whether the party seeking certification has met the prerequisites of Rule 23." *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 588 (9th Cir. 2012) (internal quotation marks omitted).

The party moving for certification first must show that the four requirements of Rule 23(a) are met. Specifically, Rule 23(a) requires a showing that: (1) the class is so numerous that joinder of all members is impracticable; (2) common questions of law or fact as to the class exist; (3) the claims or defenses of the representative parties are typical of those of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). Further, the party seeking class certification must satisfy the requirements of one of the subsections of Rule 23(b). *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 664–65 (9th Cir. April 8, 2022), cert. denied sub nom, *StarKist Co. v. Olean Wholesale Grocery Coop., Inc., On Behalf of Itself & All Others Similarly Situated*, 214 L. Ed. 2d 233, 143 S. Ct. 424 (2022) ("*Olean*"). Certification under Rule 23(b)(3) is appropriate if "the questions of law or fact common to the class members predominate over any questions affecting only individual members," and "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Rule 23(b)(2) permits certification of a class when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."

While the Court's class certification analysis must be rigorous and may overlap with the merits of the Plaintiffs' underlying claims, the mere fact that a party moves for class certification is not a "license to engage in free-ranging merits inquiries." *Stockwell v. City and County of San Francisco*, 749 F.3d 1107, 1111-12 (9th Cir. 2014) (quoting *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 466 (2013)). Instead, "[m]erits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Id.* The overall goal of Rule 23 is "to select the method best suited to adjudication of the controversy fairly and efficiently." *Amgen*, 568 U.S. at 460 (cleaned up). Class treatment is appropriate when plaintiffs will use a common method to resolve the issues central to the claims in one stroke. *Olean*, 31 F.4th at 663

# ANALYSIS

Plaintiffs are individuals residing in the United States who created a Google account to access Google's products and who, since June 28, 2016, have used their web browsers or mobile apps to view information and media online. *See* CCAC, ECF 92, ¶¶ 39-40, 45-46, 49-50, 53-58, 65-66, 70; Declaration of Elizabeth C. Pritzker ("Pritzker Decl."), ECF __, ¶¶ 13-18, Exs. 6-11. All plaintiffs and class members are subject to Google's U.S. Terms of Service ("ToS"). CCAC ¶¶ 71-72; Declaration of Bethany Caracuzzo ("Caracuzzo Decl."), ECF __, ¶¶ 31-37.

Google's ToS contain two relevant provisions: First, that California law governs the contract. Caracuzzo Decl. ¶¶ 35, 37, Exs. 39, 41. Second, since at least September 10, 2015, Google has represented that "We don't sell users' personal information," "Never sell our users' personal information to anyone," "[O]ur users' personal information is simply not for sale," and "We don't sell your personal information to anyone."[2] Like the ToS, Google's Privacy Policies have, throughout the class period, promised account holders that "we don't sell your personal information to anyone," "we don't share information that personally identifies you with advertisers," and "we don't use topics or show personalized ads based on sensitive categories like race, religion, sexual orientation, or health." *See* Caracuzzo Decl. ¶¶ 3-12, 17-20, 23-24, 26-30, Exs. 35, 36, 40.

Plaintiffs allege that in violation of these explicit promises, Google routinely and uniformly shares, offers for sale, and sells account holders' personal information billions of times a day to hundreds of entities around the world through Google's proprietary Real Time Bidding auctions ("Google RTB"). *See* Pritzker Decl., Ex. 12; *see also* expert report of Prof. Neil Richards ("Richards Rep."), Pritzker Decl., Ex. 5 at ¶¶ 111-113.

The scope and functioning of Google RTB are described more fully in the expert reports of Prof. Zubair Shafiq Ph.D. ("Shafiq Rep.") and Prof. Christopher Wilson, Ph.D. ("Wilson Rep."). Pritzker Decl., Exs. 1 and 2, respectively. Generally speaking, Google owns and operates Google RTB to serve targeted display advertising on web-browsers and apps through which it observes,

---

[2] *See* Google's "Privacy & Terms, Technologies and Principles" (from 9/10/15 onward); "Safety Center – Our Privacy and Security Principles" (from 9/20/18 to present); and "How Our Business Works" (from 2/22/20 to present). Caracuzzo Decl. ¶¶ 2-16, Exs. 34, 37, 38.

collects, and analyzes real-time data about account holders when they are using the internet. Wilson Rep. ¶¶ 18, 24. As an account holder uses her browser or app, that use is tracked, accompanied by cookies and other identifiers sent from the account holder's browser or app to Google. *Id.* ¶ 24. Google RTB then sends bid requests to RTB participants with the account holder's data — including her Google User ID and other personal identifiers, IP address, device identifiers, geolocation data, the specific content the user has requested and been shown when she is on a web-browser or, if on a handheld device, a smartphone app. *Id.*; Shafiq Rep. ¶¶ 21, 41-42.

RTB participants may respond to the bid request with monetary bids for the right to place a targeted ad based on the account holder's data, or they may simply "lurk" in the auction to acquire information about the account holder for future use. Wilson Rep. ¶ 24. The winning bidder gets to place an ad on the specific account holder's browser or personal device, or assign that right to another, or resell and republish the account holder's personal information obtained in the bid to other entities or databases. *Id.* The entire RTB auction process takes less than a hundred milliseconds. *Id.* ¶ 26; Shafiq Rep. ¶ 19. Google RTB is invisible and undisclosed to account holders. Richards Rep. ¶¶ 7, 91, 119, 128-131, 135. Because it is undisclosed, there is no mechanism for account holders to consent (or decline to consent) to Google sharing with or selling to third parties their information in RTB. *Id.* ¶ 137.

Plaintiffs have come forward with common evidence from which a trier of fact could conclude that the uniform account holder data that Google routinely sells and offers for sale through Google RTB is "personal information" under Google's Privacy Policy and California law, and thus a breach of Google's promises to all of its U.S. account holders. Under Google's definition, "personal information" includes "information that you provide to us which personally identifies you, such as your name, email address, or billing information, or other data that can be reasonably linked to such information by Google, such as information we associate with your Google Account." Caracuzzo Decl. ¶¶ 19, 29, Ex. 36. The Privacy Policy describes information "Google "associate[s]with…Google Account[s]" to include:

> . . . [unique identifiers](unique identifiers), browser type and settings, device type and settings, operating system, mobile network information, including carrier name and application version number. We also collect information about the interaction of your apps, browsers, and devices with our

services, including IP address, crash reports, system activity, and the date, time and referrer URL of your request.

*Id.* at 2. The document hyperlinked at "unique identifiers" defines a unique identifier as "a string of characters that can be used to uniquely identify a browser, app or device" which includes cookies, advertising IDs, and other unique device identifiers." *Id.* at 27.

Plaintiffs have submitted common evidence from which a trier of fact may conclude that Google associates these and other unique identifiers and sensitive information that Google routinely places in RTB bid requests and offers for sale and sells[3] to hundreds of participants outside of Google in the Google RTB auctions. Shafiq Rep. ¶¶ 25-89, 96-98. According to plaintiffs' expert, when a Google account holder is involved, Google can associate the information shared with RTB participants with a specific Google account holder all of the time. *Id.* ¶¶ 35-36. RTB participants are also able to associate the information shared by Google in RTB bid requests with specific Google account holders, according to another expert. Wilson Rep. ¶¶ 50-79.

Plaintiffs have also submitted common evidence showing that the experiences of the seven plaintiffs are uniform and typical of the proposed class. To date, Google has produced a limited set of named plaintiff data for eight sampled weeks of the class period. This data shows that plaintiffs' personal information was sent to hundreds of RTB participants around the world almost ▉ times during those eight weeks. Shafiq Rep. ¶¶ 35-36. More than ▉ of these bid requests involve sensitive information being viewed by the plaintiffs, such as websites involving health matters, political views, and precise geolocation. *Id.* ¶¶ 35, 40.

Notably, for class certification purposes, all of the ▉ bid requests include at least ▉ common data fields, including: the ▉

▉

▉. *Id.* ¶¶ 41-42 The claims for which plaintiffs seek class certification focus on these common fields. Considering the volume and

---

[3] California law defines a sale of personal information as "selling, renting, releasing, disclosing, disseminating, making available, transferring, or otherwise communicating…by electronic or other means, a consumer's personal information by the business to another business or third party for monetary or other valuable consideration." Cal. Civ. Code § 1798.140(t)(1).

uniformity of the sampled plaintiff bid data, and the Court's requirement that Google's production of sampled plaintiff data be representative of the entire class period and for the class as a whole (*see* ECF 382, 483), the Court finds for the purposes of this motion that the data submitted by plaintiffs in support of their motion is representative of the class and class period, and presents common evidence from which a trier of fact could conclude that all Google U.S. account holders since June 28, 2016 have similarly had the same categories of personal information shared through Google RTB.

With respect to membership in the class, plaintiffs have submitted common evidence showing that Google maintains records of when each account holder created a Google account and that Google RTB affects all or virtually all Google U.S. account holders. Shafiq Rep. ¶¶ 90-91; Wilson Rep. ¶¶ 15, 80-100, 124. Plaintiffs have also shown that there is no setting or control available whereby Google users can completely stop their information from being shared through Google RTB. Richards Rep. ¶ 137; Wilson Rep. ¶¶ 101-123. Plaintiffs can thus show that there is a common method to establish Class membership and provide class notice.

A.  **The Requirements of Rule 23(a) Have Been Met**

**Numerosity**. Numerosity requires a class so numerous that joinder of all members individually would be impracticable. Rule 23(a)(1). "Although there is no exact number, some courts have held that numerosity may be presumed when the class comprises forty or more members." *See Krzesniak v. Cendant Corp.*, No. 05-05156, 2007 WL 1795703, at *7 (N.D. Cal. June 20, 2007). While Google has not yet identified the number of unique Google U.S. account holders, it acknowledges that there are about 1.4 billion U.S. accounts potentially at issue. *See* Pritzker Decl., Ex. 13. Numerosity is met here.

**Commonality**. Commonality requires "questions of law or fact common to the class." Rule 23(a)(2). A common question is one of "such nature that it is capable of class-wide resolution—which means that the determination of its truth or falsity will resolve an issue that is central to the validity of each of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). "[F]or purposes of Rule 23(a)(2)[,] even a single common question will do." *Id.* at 359 (quotations and brackets omitted). Here, common issues include whether: (1) Google promised not to share or sell class members' personal or sensitive information with or to third parties; (2) Google offered for sale

and/or sold class members' personal or sensitive information in Google RTB auctions; and (3) Google's conduct contravenes societal norms and is highly offensive to a reasonable person. Here, Google's standardized contracts and uniform actions are evidence capable of answering these common questions. Commonality is met.

**Typicality.** "The typicality requirement looks to whether the claims of the class representatives [are] typical of those of the class, and [is] satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. 2010) (citation omitted). It is a "permissive" standard and its focus "should be on the defendant's conduct and plaintiff's legal theory, not the injury caused to the plaintiff." *Simpson v. Fireman's Fund Ins. Co.*, 231 F.R.D. 391, 396 (N.D. Cal. 2005). Here, plaintiffs are typical of the class because all are subject to a common U.S. Google ToS and Privacy Policy, and all of the claims and injuries arise from a common wrong based on Google's broken promises and systematic and uniform sharing and sale of personal information in Google RTB. Typicality is met.

**Adequacy.** Plaintiffs and their counsel meet Rule 23(a)(4)'s requirement that they "will fairly and adequately protect the interests of the class." This inquiry considers whether plaintiffs and their counsel have any conflicts of interest with other class members, and whether plaintiffs and their counsel will prosecute the action vigorously on behalf of the class. *Staton v. Boeing Co.*, 327 F. 3d 938, 957 (9th Cir. 2003). Plaintiffs have no conflicts of interest, are similarly situated with class members, have participated in the litigation to date, and are reasonably knowledgeable about the case. Pritzker Decl., ¶¶ 16-21. Proposed class counsel similarly (a) have done substantial work "identifying or investigating potential claims," (b) have experience and substantial success in complex litigation and class actions, including privacy rights litigation, (c) possess "knowledge of the applicable law," and (d) have substantial resources that they are able to "commit to representing the class." *Id.*, ¶¶ 26-34, 27. *See* Rule 23(g)(1)(A)(i)–(iv). Adequacy is met.

**B.    The Requirements of Rule 23(b)(3) Have Been Met**

**Predominance**. Plaintiffs have also shown that common issues predominate, as is required under Rule 23(b). All six legal claims involve a common choice of California law and common

factual issues regarding Google's promises, conduct, and resulting harm, all of which can be answered using common evidence "in one stroke." *Olean*, 31 F.4th at 663. These "aggregating, enabling issues" predominate because they are "more prevalent or important" than any "individual issues." *Id.* at 664.

### 1. California Law Applies to All Claims

California law commonly applies to all claims. Google's ToS uniformly provided that California law commonly applies to all claims. Caracuzzo Decl. ¶¶ 31-37, Exs. 39, 41.

### 2. Common Issues Predominate as to the Breach of Contract Claim

As previously stated, plaintiffs present evidence that there is a common contractual promise to class members—that Google will not share or sell their personal information to anyone outside of Google—and common, class-wide proof that Google breaches this promise when it shares and sells such information in Google RTB. The question of whether Google promised class members that it would not share or sell their personal or sensitive information is answerable with common proof— Google's Terms of Service, Privacy Policy, and incorporated notices—amounting to a common form contract. This is the precise type and form of commitment that courts look to in assessing whether there is common contract to which Google and class members are bound. *See In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 610 (9th Cir. 2020) ("*Facebook Tracking*") (contract must "outline shared commitments to which users must abide"). Whether or not agreeing to these terms constitutes consent (or lack of consent) to Google's practice of disclosing users' personal information to RTB participants in the Google RTB auctions is also subject to common proof.

Claims that arise from "form contracts" are "particularly appropriate for class treatment." Newberg on Class Actions § 3.24 (5th ed.). Here, the common evidence for class members as a whole is Google's own contract language. Whether Google's ToS, Privacy Polices and incorporated notices constitute a unilateral contract, and whether class members accepted Google's commitment – its affirmative promise to not share or sell their personal information with or to third parties – "will be determined by reference to objective criteria and therefore these elements are susceptible to common proof" on a classwide basis. *Roley v. Google LLC*, No. 18-CV-07537-BLF, 2020 WL 8675968, at *10 (N.D. Cal. July 20, 2020) (citing *Sateriale*, 2014 WL 7338877, at *9)).

The question of whether Google breached its commitment not to sell or share class members' personal information is also susceptible to common proof. This common proof includes Google's internal documents and protocols, internal Google RTB data, the testimony of Google's witnesses, and expert testimony concerning the ubiquity of Google RTB and its common impact on the Class.

### 3. Common Issues Predominate for Plaintiffs' Other Claims

Plaintiffs' five other class claims also turn on Google's uniform promise that it doesn't share or sell class members' personal information and common evidence of Google's uniform conduct in Google RTB auctions, further supporting class treatment under Rule 23(b)(3).

#### a. Breach of Confidence Claim

California's tort for breach of confidence has four elements: (1) the plaintiff conveyed confidential and novel information to the defendant; (2) the defendant had knowledge that the information was being disclosed in confidence; (3) there was an understanding between the defendant and the plaintiff that the confidence be maintained; and (4) there was a use in violation of the understanding." *Berkla v. Corel Corp.*, 302 F.3d 909, 917 (9th Cir. 2002) (citation omitted).

There is common proof in the record that Google collects and shares with RTB participants class members' personal information. This includes the contents of class members' internet communications and information about their activities and interests. Such information is "confidential." MTD Order (ECF 233) at 15:2-6. Because the categories of user data transmitted to RTB participants in Google RTB auctions are standardized, but reveal information that is specific to or reasonably associated with each account holder, plaintiffs will also be able to show a jury through common evidence that "the combination and totality of various different categories of [class members' personal information] makes such disclosure novel." MTD Order (ECF 233) at 15:6-10 (citing CCAC ¶ 419); *see San Jose Options, Inc.* v. *Yeh*, 2014 WL 4380045 at *5-6 (N.D. Cal. Sep. 4, 2014) (information was confidential and novel when "taken as a whole, viewing the forest instead of a single individual email"); *Balboa Ins. Co. v. Trans Global Equities*, 218 Cal. App. 3d 1327, 1334, 1343-46 (1990).

Plaintiffs have common evidence that Google knew class members were disclosing their information in confidence, and that there was a reasonable common understanding that Google would

maintain that confidence. Any contrary argument by Google "is belied by the express language of Google's policies," MTD Order (ECF 233) at 15:11-15, which are set forth both as contractual promises and representations that it would never sell or share users' personal information to any third party, including advertisers. *Cf. Ojala v. Bohlin*, 178 Cal. App. 2d 292, 300 (1960) (information was conveyed in confidence where defendant gave "assurance … that he would not use the [information] for his own benefit"). As the record shows, Google's representations include its many unequivocal statements made on its website, in the national media, and in sworn Congressional testimony that Google will not only never share personal information that "personally identifies" users, but also that Google will never "sell," "share," or "reveal" users' personal information to any third party. *See, e.g.*, CCAC, Exs. 23 at 1, Ex. 24 at 1-4, Ex. 25 at 1; *see also* Google's ToS and Privacy Policies, Caracuzzo Decl., Exs. 34-42.

        **b.**    **The CIPA Claim**

Plaintiffs' claims under CIPA contain the common element of lack of consent. *See* Cal. Penal Code § 631. "Consent can be explicit or implied, but any consent must be actual . . . In order for consent to be actual, the disclosures must 'explicitly notify' users of the practice at issue." MTD Order (ECF 233) at 16; *accord Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1149 (9th Cir. 2012) (holding that claims of implied consent must be "actual" and "to be effective, . . . must be . . . to the particular conduct, or substantially the same conduct."). Here, plaintiffs have put forward common evidence demonstrating that Google does not disclose Google RTB to class members, that Google never seeks consent of class members to share and sell their data in Google RTB auctions, and that there is no mechanism by which class members can consent or decline to consent to Google sharing their personal information with third parties in Google RTB. There is thus common evidence to show a jury that Google uniformly fails to "explicitly notify" class members of "the practice at issue," and common evidence defeating the requirement of actual consent. MTD Order (ECF 233) at 16; *accord Facebook Biometric Privacy Litig.*, 326 F.R.D. 535, 545 (N.D. Cal. 2018), *aff'd*, 932 F.3d 1264 (9th Cir. 2019).

To prevail on their CIPA claim, plaintiffs must show that Google (1) "aids, agrees with . . . or conspires with any other person or persons to unlawfully do, or permit or cause" those persons to (2)

"willfully and without the consent of all parties to the communication, or in any unauthorized manner" to (3) "read[], or attempt to read, or to learn the contents or meaning of any . . . communication;" (4) while the same is in transit or . . . is being sent from, or received at any place" (5) "within this state." Cal. Penal Code § 631. The records here is that these CIPA elements are all subject to common proof.

Proof that Google's RTB auctions pertain to "contents" of electronic communications is common to all class members. CIPA broadly defines "'content' as that which 'includes any information relating to the substance, purport, or meaning of the communication at issue.'" MTD Order (ECF 233) at 17:6-9. Here, plaintiffs have common proof that Google allows RTB participants to "read" or "attempt to read' or "learn the contents or meaning of" class member communications as part of the Google RTB auction process. Proof that Google's actions occur while communications are "in transit" is also common. *See, e.g., In re Yahoo Mail Litig.*, 308 F.R.D. 577, 591 (May 26, 2015) ("*Yahoo Mail*") ("Whether Yahoo intercepts emails while those emails are in transit is capable of classwide resolution"). Here, plaintiffs' evidence shows that Google RTB's re-directions commonly occur in "real-time," while the communications between class members and publishers are still occurring. Finally, there is common proof that Google's actions occur within the State of California, in particular: (i) Google's venue and choice of law agreement with class members in the ToS, and (ii) Google's activities being directed and accomplished by employees in California, using servers located or under the control of California employees.

c. **Invasion of Privacy and Intrusion Upon Seclusion Claims**

For invasion of privacy and intrusion upon seclusion claims, courts consider whether (1) there exists a reasonable expectation of privacy, and (2) the intrusion was highly offensive." *Facebook Tracking*, 956 F.3d at 601. Both elements can be proven through common proof.

"A 'reasonable' expectation of privacy is an objective entitlement founded on broadly based and widely accepted community norms." *Hill v. NCAA*, 7 Cal. 4th 1, 37 (1994). Accordingly, whether class members had "reasonable expectations" of privacy is subject to common proof of broadly based and widely accepted community norms, not on their subjective expectations. *See, e.g., Opperman v. Path, Inc.*, 2016 WL 3844326, at *11 (N.D. Cal. July 15, 2016). In addition, insofar as a reasonable

expectation of privacy rises or falls on consent, the record here is that Google's express promises and its breaches of those promises are uniform for all class members and go directly to the issue of consent and reasonable expectations of privacy. Here, in light of Google's uniform promises that it would not share and sell class members' personal information, there is common classwide proof that class members uniformly had a reasonable expectation that Google would keep their information private in accordance with its promises. *See, e.g.*, *Facebook Tracking*, 956 F.3d at 602; *In re Nickelodeon Cons. Priv. Litig.*, 827 F.3d 262, 293–94 (3d Cir. 2016).

The element of "highly offensive" is judged on an objective "reasonable person" standard and must be "'sufficiently serious and unwarranted' as to constitute an 'egregious breach of social norms,'" which does not depend upon any individual plaintiffs' feelings about the conduct. *Facebook Tracking*, 956 F.3d at 606. This element is "essentially a 'policy' determination" as to whether the alleged conduct is "highly offensive' under the circumstances." *Opperman*, 2016 WL 3844326, at *11. The relevant factors include "the degree and setting of intrusion, and the intruder's motives and objective." *Id.* Critically, while "[t]hese determinations may require an examination of [Google's] motives, [] they will not require individualized determinations of class members' subjective experiences." *Id.* Given this standard, the question of whether Google's conduct was "highly offensive" is subject to common proof class wide. *Id*.

### d. Publication of Private Facts Claim

For the publication of private facts claim, plaintiffs must show "(1) public disclosure of (2) a private fact (3) which would be offensive and objectionable to the reasonable person and (4) which is not of legitimate public concern." *Shulman v. Grp. W. Prods., Inc.*, 18 Cal. 4th 200, 214 (1998) (citations omitted). Elements two and three mirror the elements of the other privacy claims and, for the same reasons discussed above, these elements are subject to common class-wide proof.

With respect to the first element, a plaintiff must show that the information is "widely published and not confined to a few persons or limited circumstances." *Hill*, 7 Cal. 4th at 27. Here, this question will be answered with common evidence that Google shares class members' personal information through Google RTB with hundreds of RTB participants around the world based on information collected about those class members on millions of websites and apps. As this Court

previously observed, the public disclosure element can be satisfied "[g]iven the large number of participants in the RTB bidding process." MTD Order (ECF 233) at 13:27-14:5; *see also In re Facebook, Inc., Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d 767, 796 (N.D. Cal. 2019). A jury may conclude from this common evidence and plaintiffs' common legal arguments that the disclosure of class members' personal information and web browsing histories through Google's RTB auctions are not of "legitimate public concern."

4. **Common Issues Predominate Regarding the Relief Plaintiffs Seek**

Plaintiffs seek disgorgement of profits under an unjust enrichment theory, compensatory damages, punitive damages, and, for the CIPA claim, statutory damages. To the extent plaintiffs prevail at trial and are entitled to any monetary award, all of these damage remedies are subject to common proof and class-wide resolution.

a. **Disgorgement of Profits**

California law recognizes disgorgement of profits resulting from unjust enrichment. *Facebook Tracking*, 956 F.3d at 600; *In re Google Assistant Privacy Litigation*, 546 F. Supp. 3d 945, 968 (N.D. Cal. 2021). Here, plaintiffs have met their burden to show that disgorgement is a common issue subject to common proof. Plaintiffs' damages expert, Prof. Robert Zeithammer, has calculated class-wide disgorgement based on Google's internal revenue analyses of Google RTB revenues attributable to the use of the class member personal information at issue here, and applies econometrics. Google's internal revenue analyses, outside econometric studies, and Prof. Zeithammer's additional economic analyses provide convergent multi-method evidence that approximately 51.1% of Google's RTB revenues result from the improper sale of class members' personal information to RTB participants in Google RTB auctions. Plaintiffs' other damages expert, Greg Regan, applies Prof. Zeithammer's 51.1% allocation to Google's gross RTB revenues during the class period to determine what percentage of those revenues constitute profits subject to disgorgement under a class-wide unjust enrichment remedy. Mr. Regan calculates Google's unjust enrichment profits for each year of the class period on a class-wide basis.

b. **Compensatory Market Pricing Damages**

As an alternative class-wide damages analysis, Prof. Zeithammer proposes a market price

damages model using common evidence to determine the market value of class members' personal information shared with RTB participants. Based on his analysis, which includes a review and analysis of four vendors that pay consumers for their personal information, Prof. Zeithammer determines that the fair market value of class members' personal information is $38 per year (or $3.17 per month) for each class member. This is a common approach to market damages.

### c.  Punitive Damages

Because "the purpose of punitive damages is not to compensate the victim, but to punish and deter the defendant, . . . the focus of a punitive damages claim is not on the facts unique to each class member, but on the defendant's conduct toward the class as a whole." *Ellis v. Costco Corp. III*, 285 F.R.D. 492, 542-44 (N.D. Cal. 2012) (certifying Rule 23(b)(3) class including a claim for punitive damages). Here, plaintiffs' claim is that Google acted with the requisite intent on a class-wide basis, and plaintiffs will rely on Google's internal documents and other common evidence to prove their entitlement to punitive damages at trial.

### d.  Statutory Damages (CIPA claim only)

CIPA provides for a statutory minimum judgment of $5,000 per violation or treble damages, whichever is greater. Cal. Pen. Code § 637.2(a). Such statutory damages calculations are common and certifiable. *Patel v. Facebook*, Inc., 932 F. 3d 1264, 1276-77 (9th Cir. 2019) ("Where neither the statutory language nor legislative history indicates that the legislature intended to place a cap on statutory damages, denying class certification on that basis would subvert legislative intent."); *see also Ruffin v. Medicredit, Inc.*, 2017 WL 131743, at *9 (C.D. Cal. Jan. 3, 2017).

**Manageability.** Plaintiffs have demonstrated that a class would be manageable here, and have generally proposed a class trial plan that focuses on common evidence and one state's law (California), and an orderly presentation of evidence to the jury and the Court. Pritzker Decl. ¶¶ 35-45. Plaintiffs' aggregate class-wide damages are calculable based on common proof and sound methodologies. At the class certification stage, that "may be all that plaintiffs need prove." Newberg on Class Actions § 12:2. This is because when "the only question is how to distribute damages, the interests affected are not the defendant's but rather those of silent class members." *Six (6) Mexican Workers*, 904 F.2d 1301, 1307 (9th Cir. 1990); *see also Ruiz Torres v. Mercer Canyons*, 835 F.3d

1125, 1140-41 (9th Cir. 2016).

Although Ninth Circuit law is clear that Google has no stake in how an aggregate award might be distributed, plaintiffs have proposed a plan to identify class members and distribute damages, if awarded at trial, to those class members on a pro rata basis based on months of time with a Google account. This is possible here because Google maintains records for all class members identifying when they first signed up for a Google account in the United States.

**Superiority.** Under Rule 23(b)(3)'s superiority prong, a class action here will achieve "economies of time, effort, and expense" and promote "uniformity of decisions as to persons similarly situated." *Amchem Products v. Windsor*, 521 U.S. 591, 61 (1997) (citation omitted). All of these economies will be satisfied by class treatment and a single trial. Liability will be established under one state forum's law, California, and under Google's uniform contract with all class members. The evidence to be presented to the jury will be the same for the individual plaintiffs as it is for the class. All of these claims involve common issues regarding Google's promises, conduct and resulting harm, all of which can be answered using common evidence "in one stroke." *Olean*, 31 F.4th at 663.

**C.    The Requirements of Rule 23(b)(2) Have Been Met**

Plaintiffs also seek certification under Rule 23(b)(2) for plaintiffs' claims for injunctive and declaratory relief. Rule 23(b)(2) requires courts to look at whether class members seek uniform relief from a practice applicable to all of them. *Ward v. United Airlines, Inc.*, 2021 WL 534364, at *7 (N.D. Cal. Feb. 12, 2021) (quoting *Rodriguez v. Hayes*, 591 F.3d 1105, 1125 (9th Cir. 2010). Plaintiffs seek injunctive relief that would require Google to either stop sharing and selling class members' personal information in Google RTB auctions in violation of Google's contracts and California law, or provide accurate notice to class members that Google will or intends to share and sell their personal information to third parties in Google RTB auctions and afford all class members a meaningful and knowing opportunity to opt out and refuse Google permission to share or sell their personal information through Google RTB auctions.

"Unlike Rule 23(b)(3), a plaintiff does not need to show predominance of common issues or superiority of class adjudication to certify a Rule 23(b)(2) class." *Yahoo Mail Litig.*, 308 F.R.D. at 598-99 (certifying a Rule 23(b)(2) class seeking injunctive relief requiring Yahoo to stop scanning

incoming and outgoing emails while in transit); *see DZ Rsrv. v. Meta Platforms, Inc.*, 2022 WL 912890, at *9 (N.D. Cal. Mar. 29, 2022) (certifying an injunctive relief class requiring Meta (f/k/a Facebook) to correct or cease certain practices). Here, plaintiffs have and intend to present at trial common evidence that Google has continued to uniformly breach its commitment to class members that it "doesn't sell your personal information to anyone" and to unjustly profit from its ongoing misconduct. These common practices can be addressed through injunctive relief.

Therefore, **IT IS HEREBY ORDERED** that plaintiffs' motion for class certification is **GRANTED**. The Court certifies the class described above, appoints plaintiffs as representatives of the class, and appoints Elizabeth Pritzker, Lesley Weaver, Jay Barnes, David Straite, Nanci Nishimura, and Yury A. Kolesnikov as class counsel, with Ms. Pritzker to serve as lead class counsel. The parties are instructed to meet and confer within 14 days regarding a plan to formulate and disseminate notice to class members.

**IT IS SO ORDERED.**

Dated: _____, 2023

_____
Hon. Yvonne Gonzalez Rogers
United States District Court Judge