1                    UNITED STATES DISTRICT COURT

2                   NORTHERN DISTRICT OF CALIFORNIA

3    Before The Honorable Virginia K. DeMarchi, Magistrate Judge

4

5    IN RE: GOOGLE RTB CONSUMER    )  No. C 21-02155-YGR
     PRIVACY LITIGATION            )
6    _____)

7                                  San Jose, California
                                    Tuesday, August 22, 2023
8

9     TRANSCRIPT OF PROCEEDINGS OF THE OFFICIAL ELECTRONIC SOUND
                RECORDING 10:05 - 11:11 = 66 MINUTES
10

     APPEARANCES:
11

     For Plaintiff:
12
                                   Bleichmar Fonti & Auld, LLP
13                                 1330 Broadway, Suite 630
                                   Oakland, California 94612
                              BY:  LESLEY E. WEAVER, ESQ.
14
                                   Pritzker Levine, LLP
15                                 1900 Powell Street, Suite 450
                                   Emeryville, California 94608
16                            BY:  BETHANY CARACUZZO, ESQ.

17   For Defendant:
                                   Cooley, LLP
18                                 3 Embarcadero Center
                                   20th Floor
19                                 San Francisco, California
                                    94111
20                            BY:  AARTI G. REDDY, ESQ.
                              BY:  ANUPAM SINGH DHILLON, ESQ.
21
     Transcribed by:               Echo Reporting, Inc.
22                                 Contracted Court Reporter/
                                   Transcriber
23                                 echoreporting@yahoo.com

24

25

2

1   <u>Tuesday, August 22, 2023</u>                    <u>10:05 a.m.</u>

2                   P-R-O-C-E-E-D-I-N-G-S

3                       --oOo--

4           THE CLERK:  Okay.  First case, 21CV02155, In Re

5   Google RTB Consumer Policy -- or Privacy Litigation.

6       Please state your name starting with Plaintiffs first.

7           MS. WEAVER:  Good morning, your Honor.  Lesley

8   Weaver on behalf of the Plaintiffs.

9           THE COURT:  Good morning.

10          MS. CARACUZZO:  Good morning, your Honor.  Bethany

11  Caracuzzo on behalf of Plaintiffs.

12          THE COURT:  Good morning.

13          MS. REDDY:  Good morning, your Honor.  Aarti Reddy

14  from the Cooley Law Firm, on behalf of Defendant Google,

15  LLC.

16          THE COURT:  Good morning.

17          MR. DHILLON:  Good morning, your Honor.  Anu

18  Dhillon of Cooley, also on behalf of Google.

19          THE COURT:  Good morning.

20      This matter is set for a hearing on a discovery

21  dispute, the one at Docket 554, and this concerns the

22  Plaintiffs' request for additional depositions of Google in

23  excess of the 10-deposition limit.

24      I have a couple of questions for both sides.  Let me

25  start with the Plaintiffs.  So, the -- the Rule, 30(a)(2),

3

1  requires that I consider the question of whether the

2  depositions that are being requested in excess of the 10-

3  deposition limit are essentially, you know, relevant and

4  proportional to the needs of the case in light of what

5  you've already done by way of deposition or -- or noticed

6  depositions.  And I'm finding that a little -- that

7  determination a little bit difficult to make here when I

8  don't have any information about what depositions you've

9  already taken or have noticed.

10      The joint discovery dispute letter -- well, Google's

11  side of it refers to two depositions, Mr. Belloff (phonetic)

12  and another person, but the -- the Plaintiffs' side doesn't

13  tell me what information you already have or have already

14  noticed.  I just happen to know what your 30(b)(6) notice

15  topics are because I have another discovery dispute with

16  that notice.  But, other than that, I don't -- I can't

17  really make this determination.

18      So, I wonder if you could just start by, you know,

19  addressing that issue, which is pretty fundamental.

20          MS. WEAVER:  Yes, your Honor.  Thank you.  Lesley

21  Weaver on behalf of the Plaintiffs.  So, the topics that we

22  seek to discuss -- let me frame this, your Honor, by saying

23  the depositions we're seeking really are somewhere a hybrid

24  between a 30(b)(6) and a 30(b)(1).  We are seeking these

25  depositions in response to discovery that Google first

4

1  provided in April on topics that we have not covered before

2  with other Plaintiffs.  The topics -- so, we propounded

3  interrogatories that sought from Google the number of U.S.

4  account holders targeted in the auction while their IP

5  address was in the United States, the revenues earned by

6  such activity, number three, the number of RTB bid requests

7  associated with -- with each named Plaintiff between 2016

8  and 2022, and the total number of successful auctions

9  conducted related to the named Plaintiffs.

10       We would have submitted the interrogatory responses to

11  your Honor.  Google has taken the position in this case that

12  we cannot do that unless the request is about depositions

13  here.  So, we could submit that if that would help your

14  Honor.

15            THE COURT:  No.  I mean those are summarized in

16  your letter.

17            MS. WEAVER:  Okay.

18            THE COURT:  Okay.  So --

19            MS. WEAVER:  And, so --

20            THE COURT:  Go ahead.

21            MS. WEAVER:  -- the -- Google identified five

22  people in response who have never been identified before.

23  We got three names of people with substantive knowledge in

24  2021, and in August of 2022, Google amended and added three

25  more names, and we sought to immediately depose them.  And,

5

1  obviously, I don't -- it's squarely within the scope of the

2  case, the number of U.S. account holders affected, the

3  revenues, the number of bid requests, and the total number

4  of successful auctions.

5      Google itself did not identify anybody we've deposed as

6  having knowledge on those topics in their initial

7  disclosures.  And, also, in connection with the

8  interrogatories, they didn't identify anybody we'd

9  previously deposed.  They identify --

10             THE COURT:  So --

11             MS. WEAVER:  -- these new people.

12             THE COURT:  -- let me make sure I understand the

13  -- I see the summary of the interrogatories that essentially

14  give you numbers, right?

15             MS. WEAVER:  Yeah.

16             THE COURT:  That's what I understand those to have

17  been seeking.  And then you said they disclosed people with

18  substantive knowledge.  Is that in response to a different

19  interrogatory and substantive knowledge about what?

20             MS. WEAVER:  In their initial disclosures, your

21  Honor, what they did, the first one was June 22nd, 2021.

22             THE COURT:  Um-hmm.

23             MS. WEAVER:  And they identified Natish Carrula

24  (phonetic) as having information about the functionality of

25  Google Realtime Bidding protocol.  They identified Glen

1  Brutson (phonetic) as the functionality of Realtime Bidding

2  and the nature of data shared with third parties.  They

3  identified Haskell Garren (phonetic) as Google's policies

4  and program guidelines.  None of that overlaps.

5      Then in August --

6          THE COURT:  Hang on.  Hang on.

7          MS. WEAVER:  Yes.

8          THE COURT:  Let me just -- I was really asking for

9  clarification of your remark about identifying people in

10  response to an interrogatory with substantive knowledge.

11  Did you mean amending initial disclosures?  Is that what you

12  meant?

13          MS. WEAVER:  I apologize.  Just to clarify, I

14  thought you were referring to the previous -- what they --

15  these individuals who we seek to depose are identified in

16  the interrogatory responses themselves by Google as having

17  provided information in the preparation of the responses.

18          THE COURT:  Okay.  So, that's -- that's a little

19  bit different.  So -- so, we have the initial disclosures

20  which identify seven witnesses now, the amended -- current

21  amended initial disclosures.  You've noticed those people's

22  deposition or you've taken those people's deposition?

23          MS. WEAVER:  Yes.

24          THE COURT:  Those are among the 10.  Okay.  And

25  now we have this -- these additional folks here.  So, thank

7

1  you for clarifying.

2      The five people whose names appear in the joint

3  discovery letter brief are people who were identified by

4  Google as having provided information that allowed them to

5  answer the interrogatory, which, like I said, sounds like

6  accounting.

7      Google says these are people who compiled information

8  at the direction of counsel.  So, that's why I was trying to

9  get a little bit of clarification from you about the nature

10 of their information.  Google's --

11          MS. WEAVER:  Understood.

12          THE COURT:  -- half of the discovery dispute

13 letter describes their roles or their knowledge or their

14 significance for the case in rather limited terms.  So, I

15 would like to understand from Plaintiff's position -- oh,

16 and I should add that the other -- the other thing I'm

17 trying to put together is it sounds like a lot of what --

18 and I'm leaving aside the declarations for a moment.  So,

19 let's just focus on these five.  But it sounds like a lot of

20 what the Plaintiff's concern has to do with is this ability

21 to make an evidentiary showing if necessary about the

22 admissibility of this information.  You cite Judge Gonzalez

23 Rogers, sponsoring witness requirement, which we'll get to

24 that in a moment.  But I'm trying to understand why you need

25 these people, because taking a deposition of five witnesses

8

 1   who supply -- who essentially like counted things for

 2   counsel doesn't seem like a good use of deposition time.

 3        So, can you just really drill down on why you think

 4   these are the people you need to take depositions of?

 5            MS. WEAVER:  Yes, your Honor.  So, this has been a

 6   very targeted exercise by the Plaintiffs to get answers to

 7   those four concrete questions, and Google -- and it has been

 8   the subject of many meet and confers and differing responses

 9   with differing approaches to the responses.

10        Google prepared and attached two Excel spreadsheets to

11   one of these interrogatory responses plainly created for

12   this litigation by counsel.  And, so, we want to understand

13   the evidentiary bases not only for admissibility purposes,

14   to know that it actually comes from Google data and Google

15   sources and revenue records, for example, but also to make

16   sure that we're on the same page.  And let me be specific.

17        One of the more confusing aspects is how does Google

18   count U.S. account holders.  How are they targeting in the

19   auction.  Are they looking at where the IP address is

20   located at the time the request is sent or received?  Are

21   they looking at the nationality of the Google account holder

22   at the time the request is sent or received?

23        So, there have been a series of questions where when we

24   initially propounded the interrogatory -- let's just stay

25   with that topic for a moment, although there are four.  The

1  U.S. -- the Google account holders who were at issue in this

2  case, we've had a number of meet and confers trying to

3  understand what they're saying and our experts are going to

4  say, and I would expect as well that Google may come in

5  either at class cert and argue we've been over-inclusive or

6  on summary judgment and say we've been over-inclusive,

7  either with regard to the number of account holders, the

8  number of revenues, the number of auctions, the number of

9  bid requests.

10      With the bucket that relates to the named Plaintiffs,

11  probably Google will say these aren't representative.  The

12  numbers of auctions and the numbers of times of bid requests

13  relating to them are not representative.  And we have

14  attempted to craft with your Honor's guidance targeted

15  discovery so we don't have to get discovery of everything.

16  And, so, we need to understand what are the inputs to their

17  response.  It can't just be that a lawyer comes in and says,

18  Here's the answer.  I wrote it.  Then they've identified

19  people.

20      And what we have found is that going back and forth on

21  correspondence has both been inefficient -- it took us six

22  weeks to join this issue before your Honor -- and it's not

23  exact, because if we exchange letters talking about what is

24  this and what is that, it's also not evidence.  And, so, we

25  want to go in and just ask a witness where did this come

10

1  from, where did you get it, how did it happen?  And, like I

2  said, we're planning to be targeted.  We don't see these as

3  full blown 30(b)(1)'s.  There were six people they identify

4  being involved in the rogs.  We only picked five of them.

5  We would do them in a targeted fashion, and the real

6  problem, as is the problem with the declarants, is that our

7  reply on class cert is due November 17th.  So, now, we'll

8  only have six weeks, and I would anticipate, your Honor,

9  that we would have to wait to see who they put in as

10  declarants for their class cert opposition, and then you

11  could see if there's overlap between these five we seek and

12  any declarant that they put in.

13            THE COURT:  Um-hmm.

14            MS. WEAVER:  What we don't want them to do is have

15  them, say, Well, you deposed Stan Belloff, but then he puts

16  in something on this topic that they never identified him

17  for.

18            THE COURT:  Um-hmm.

19            MS. WEAVER:  So --

20            THE COURT:  Okay.  So, let's just focus on your

21  example of the account number account holders.

22            MS. WEAVER:  Great.

23            THE COURT:  It seems to me that that overlaps with

24  your topic three --

25            MS. WEAVER:  I agree with that, your Honor.

11

1          THE COURT:  -- for the 30(b)(6).

2          MS. WEAVER:  That is the --

3          THE COURT:  So --

4          MS. WEAVER:  -- one thing that we noticed in

5  preparing here.

6          THE COURT:  Okay.

7          MS. WEAVER:  And the issue there is the same here.

8  We agreed to accept a written response, but we would want to

9  be able to take a deposition to understand the source of

10 that -- where the information comes from, so that we can

11 test that it's actual Google evidence and how it was

12 collected over the class period, so that we can both present

13 an affirmative case about this is an accurate representation

14 and defend any argument that Google might make that we have

15 the number wrong.

16          THE COURT:  Okay.  But just -- just focusing on

17 this topic three for a moment, wouldn't it be sufficient if

18 whomever Google designates for topic three addresses those

19 questions?  I mean --

20          MS. WEAVER:  Yes.

21          THE COURT:  -- in other words, it may or may not

22 be Aaron Powers, but whoever it is would need to address

23 those questions.

24          MS. WEAVER:  I need to look, your Honor, to make

25 sure that there's -- really quickly, just give me a moment

12

1  to make sure that there's exact overlap because topic three

2  is a little broader.  It's how -- what Google account holder

3  information flows through RTB and how it's collected.

4           THE COURT:  No.

5           MS. WEAVER:  Oh, I'm so sorry.

6           THE COURT:  Topic three is the number of personal

7  Google accounts in the United States active during the

8  relevant time period and the methodology by which the number

9  is determined or calculated.

10          MS. WEAVER:  Yeah.  I agree, your Honor.

11          THE COURT:  So, that --

12          MS. WEAVER:  I do think that --

13          THE COURT:  -- seems like --

14          MS. WEAVER:  -- there's overlap there.

15          THE COURT:  -- completely coextensive.  Okay.  So

16  -- so, there's that.  And we're, again, just focusing on

17  these people who provide information in support of an

18  interrogatory answer.  I don't know if there's overlap

19  between any of the other four and your depo notice, but it

20  did strike me as a little bit inconsistent with the guidance

21  in Rule 30(a)(2) that you have two people for each topic.

22  When I'm supposed to police whether the additional

23  depositions will be cumulative or duplicative, it seems sort

24  of like self-evident that they're duplicative, that there's

25  nothing distinguishing these -- you know, Mr. Herbstman

13

 1  (phonetic) from Mr. Cornacky (phonetic) or Mr. Koeller

 2  (phonetic) from Ms. Fiteshans (phonetic).

 3          MS. WEAVER:  I understand the point, your Honor.

 4  I don't believe any of the other topics do overlap.

 5          THE COURT:  Okay.

 6          MS. WEAVER:  I did also notice in preparing for

 7  today's hearing that topic three did.

 8          THE COURT:  Um-hmm.

 9          MS. WEAVER:  What I would say is, again, there is

10  a reason that Google did not previously identify them, and

11  there's a reason that Google identified them both for some

12  of these topics.  I do believe that they have different

13  experience, and what I -- what would be really unfortunate

14  and will prejudice the Plaintiffs is if we -- you told us to

15  pick one and we depose that person and that person is void

16  of knowledge on one of these topics and says, Oh, I only

17  have participated in X, and then we don't get to depose the

18  other person.

19      So, what I can --

20          THE COURT:  Okay.

21          MS. WEAVER:  -- tell your Honor is that we will be

22  very targeted, and we have been very targeted.  Google even

23  admits this, that they noticed that we took a four-hour

24  deposition.  I myself personally in the other Google matter

25  took depositions that lasted an hour or two hours.  Like I

14

1  said, these are not full blown 30(b)(1)'s, but Google put
2  these people at issue, and by saying that they participated,
3  Google put them at issue by not identifying them previously.
4  I don't know why they didn't identify them previously.  I
5  don't know why their other deponents couldn't have provided
6  the information, but that's not what they did, and we didn't
7  get this information for three of them until June.  So, we
8  have been trying to be as quick as possible and get it to
9  the Court, but I honestly believe, your Honor, that the
10  quickest thing is to let us go depose these people now.
11           THE COURT:  Um-hmm.
12           MS. WEAVER:  It will -- it will -- because,
13  otherwise, we may have to come back to the Court and say,
14  Oh, we deposed this one person and they didn't know
15  anything, and then we're going to have -- and there's not
16  time.
17           THE COURT:  What if you did it as a 30(b)(6) topic
18  like you did -- like we were speaking of topic three
19  overlapping entirely with the subject matter for Mr. Powers.
20           MS. WEAVER:  Well, I think we'd have to renotice,
21  and the topic would be -- I actually see it as a distinction
22  of -- if you wanted to make them corporate representatives
23  on the topics in the interrogatories, I think probably that
24  would be okay.
25           THE COURT:  I mean --

1        MS. WEAVER:  If they're speaking on behalf of the

2  company.  What I don't want is you have to -- you're telling

3  us that we have to go issue a new 30(b)(6) topic.

4        THE COURT:  No.  What I'm trying to address is

5  your concern that you've identified two people because, one,

6  you don't know who has what information, and it's hard for

7  you to tell because they're not your witnesses.  If you put

8  the onus on Google to identify a witness with knowledge of,

9  you know, the number of bid requests and bid requests

10  associated with each named Plaintiff, then that single

11  person has to prepare themselves.

12     I just -- I'm trying to problem solve here for the

13  parties.  Maybe Google doesn't want to do that, but I'm just

14  trying to think of a way to make this more straightforward,

15  particularly since you -- you've identified people who --

16  one of the lives in London or England or something.  So, you

17  know, there's some burden associated with it that's not

18  addressed.  Maybe you're contemplating doing this by Zoom,

19  and maybe that's not a problem.  I don't know, but -- but

20  just trying to problem solve here.

21     So, would that be satisfactory?  I mean, you're --

22  you're identifying or asking to take these folks'

23  depositions solely because Google has put their name in the

24  interrogatory response, but you just need the information.

25  It's not something unique to these individuals, correct?

16

1      MS. WEAVER:  Well, I believe in general that's
2 true.  I said it's somewhat of a hybrid because some of
3 these people are coming up for the first time.  I am
4 familiar with a couple of them.

5      THE COURT:  Um-hmm.

6      MS. WEAVER:  But -- and I do know that they have a
7 depth of knowledge.  So, there might be a little bit.  But
8 what I could say, your Honor, and I want to be clear so I
9 understand what the proposal would be, is if you were
10 suggesting that today the Court or in short order the Court
11 says these 30(b)(6) notices on the topics of the -- the
12 responses provided by Google to interrogatories 11, 12, 13,
13 and 14, that probably will work for us, you know, with a
14 little bit of latitude around we want to be able to
15 discover, you know, what these people's roles and things
16 like that and all of -- but that might actually work for us.
17 What I don't want is it would be unfortunate if the Court
18 were saying go write a new 30(b)(6) deposition notice.

19      THE COURT:  No, I'm not -- I'm not asking you to
20 start over, but what --

21      MS. WEAVER:  Yeah.

22      THE COURT:  -- what's totally missing from the
23 joint discovery letter is anything about these people in
24 particular part from their identification as the witnesses
25 or the people who provided information in response to an

17

1  interrogatory.  So, there's no description of them in your

2  half of the letter.  There's a description in Google's half

3  of the letter that suggests they're of limited importance to

4  the case.

5      So, that's what I'm trying to understand is you don't

6  necessarily need these unique humans.  You need somebody who

7  can provide the information.

8              MS. WEAVER:  Right.

9              THE COURT:  Okay.

10             MS. WEAVER:  That's -- that's fair, your Honor.  I

11 mean, to the extent that Google identified them and used

12 them to prepare these substantive or -- responses on key

13 topics, you know, that is why we're interested in them.

14             THE COURT:  I see.  No, I understand.

15             MS. WEAVER:  Yeah.

16             THE COURT:  Okay.  Now, the -- I have a few more

17 questions, and --

18             MS. WEAVER:  Yes.

19             THE COURT:  So, you know, Google complains that in

20 the conferences that preceded this letter, there was no

21 discussion of the depositions of Mr. Koeller, Ms. Fiteshans,

22 and Mr. Powers, and there's no response to that in the

23 Plaintiff's half of the joint letter.

24     So, did you confer --

25             MS. WEAVER:  Yes.

1          THE COURT:  -- with Google about those?

2          MS. WEAVER:  Yes.  Their specific names were not

3   used because in some of the conferences they hadn't yet been

4   identified I understand to be the case.  But what has been

5   very clear in four different exhaustive meet and confer

6   sessions is that the Plaintiffs were seeking production of

7   the witnesses who prepared the responses to the

8   interrogatories for deposition, and it was very clear they

9   discussed the actual interrogatory numbers.

10       It may be -- and having not been in those conferences

11  myself, your Honor, that the names of the people were not

12  identified, but it is very clear what we have been seeking.

13         THE COURT:  Google says that you did not ask to

14  depose any witness who assisted Google in preparing any

15  discovery responses.  I'm looking at page five.

16         MS. WEAVER:  Your Honor, I just -- I just -- we

17  dispute that, your Honor.

18         THE COURT:  Okay.  All right.  Let me turn to the

19  issue of declarants.  So, you know, on its face, it seems

20  reasonable to me that if you have someone who submits a

21  declaration in support of an opposition to class

22  certification whom you haven't had an opportunity to depose

23  before, that it would be reasonable, I mean, depending on

24  what the person is saying -- it could be something utterly

25  trivial, but assuming it's a declaration in support of

19

1   opposition for class cert, I would imagine that would be an

2   appropriate person to depose.  And, you know, I'm not sure

3   where the dispute between the parties lie.  I guess I'll

4   find out from Google, but it seems like one of the things

5   they're concerned about is that you shouldn't get to

6   redepose someone you've already deposed on the same subject

7   matter and that what you're asking the Court to do is just

8   to write you a blank check about that and that what you

9   ought to be doing is waiting and seeing what your -- what

10  the declarations are and then making a case.

11       Now, I know you're concerned about timing, but at the

12  very least, I can provide guidance about what I expect here,

13  and my expectation is that if someone puts in a declaration

14  and it's substantive and it relates to Google's position on

15  class cert and you haven't deposed that person, you should

16  get to depose that person.  I mean, that seems pretty not

17  controversial.

18            So, what do you think that the dispute is about?

19            MS. WEAVER:  It's a fair point, your Honor.  We

20  agree that we should be able to depose a declarant who

21  hasn't been deposed on a topic before.  The reason we are

22  before you is, if you'll notice, Google didn't even

23  substantively oppose the request to depose a declarant.

24  They just are stuck on the 10-deposition limit, and because

25  those would go above the limits, we are trying to be

20

 1  proactive ahead of time and say to the Court, because we
 2  won't have enough time, we're going to get their opposition
 3  on September 29th.  Our reply is due November 17th.  And
 4  given that it took nine weeks to get an actual meet and
 5  confer completed on the 30(b)(6) and six weeks for this,
 6  we're very concerned we would be, you know, in the middle of
 7  trying to oppose and get our experts up to speed in what
 8  they need to prepare, we wouldn't have enough time.  So, I
 9  -- I think it's helpful to get the Court's guidance on the
10  concept of whether or not we would want declarants.
11       The thing I would say is, I mean, Google probably knows
12  today who their declarants are going to be.  It's late
13  August.  So, I would -- I would think that we could cut to
14  the chase.  And, as I said at the outset, if the declarant
15  is the same person as one of these five, then, you know, it
16  probably makes sense to wait or take the depositions now if
17  they can tell us.  But, you know, I think the issue is -- I
18  agree with the overlap.  I agree with the substance.  The
19  question is how do we efficiently handle this.
20            THE COURT:  Okay.  Well, I'm looking at Google's
21  part of the joint submission, section E, and it's -- the
22  concern seems to be that you're asking prospectively for
23  authorization to take additional depositions of any
24  declarant's Google reviews in support of its class cert
25  opposition, irrespective of whether those witnesses were

21

1  known to them and have already been deposed.

2      So, that's the concern that I see, and they say it's

3  premature for me to resolve the issue because they haven't

4  actually submitted any declarations.

5      So, are you trying to make sure you get two bites at

6  the apple for someone you've already deposed?

7          MS. WEAVER:  No, your Honor.  And what I would say

8  is, unfortunately, I've seen this before.  We had new

9  declarants come in in other -- the related case, and we were

10 scrambling to take those depositions at the same time that

11 we were trying to oppose or, you know, prepare a reply for

12 class cert, and we just don't want to have it here.  This

13 schedule is much tighter.  And, again, I hear that.

14     We don't want -- we don't need two bites of the apple.

15 We like the testimony that we got.  We just are trying to

16 prevent what we just -- this has been demonstrated for you

17 here.  We didn't have these names of these people until

18 April and June of this year as somebody that Google was

19 relying on for the heart of the case, and we don't want it

20 to happen with declarants as well.

21         THE COURT:  Um-hmm.  Okay.  So, lastly, I just

22 wanted to touch on this issue that there seems to be some

23 disagreement about how Judge Gonzalez Rogers handles trial

24 evidence, and you may be talking past each other.  I'm not

25 familiar with any particular rule that she has that if

22

1 evidence is stipulated to regarding admissibility it,

2 nevertheless, requires someone to actually lay an

3 evidentiary foundation.

4      I wonder if what you mean is that if evidence is

5 stipulated to with respect to admissibility, there,

6 nevertheless, has to be a human who talks about it, not sets

7 a foundation for its admissibility, but you can't just hand

8 a pile of admitted evidence to the jury with nobody

9 remarking on it.  I suspect that's what it is, but I don't

10 know.  So, and I appreciate that that's not the issue that's

11 driving exclusively your demand, but it's featured

12 prominently in the letter, and I'm a little suspicious that

13 that's -- that as an evidentiary matter that's actually her

14 practice.  So, can you enlighten me?

15           MS. WEAVER:  Yes, your Honor.  And I would say

16 that Ms. Caracuzzo has been in trial in front of Judge

17 Gonzalez Rogers and knows -- she and her partners know

18 intimately, and that is partly why this is featured and it

19 came -- and also came up in our other case, that Judge

20 Gonzalez Rogers has very specific requirements about how to

21 get evidence admitted.  I think it's just pulling the thread

22 here that what was given in response to these

23 interrogatories are spreadsheets obviously -- and admittedly

24 prepared by lawyers, and we need to have an evidentiary

25 thread here, where did these numbers come from, where did

23

1  they -- like meeting -- are these --

2          THE COURT:  Okay.

3          MS. WEAVER:  Yeah.  You understand that.

4          THE COURT:  I understand that -- that point.

5          MS. WEAVER:  Yes.

6          THE COURT:  But I'm talking again about if the

7  parties stipulate to admissibility of evidence at trial,

8  let's say the spreadsheet, whatever it is, is it still your

9  understanding that Judge Gonzalez Rogers will not accept

10 that stipulation and will say, No, I need someone who will

11 testify to the evidentiary foundation for this exhibit,

12 regardless of the fact that the parties stipulate to its

13 admissibility?

14          MS. WEAVER:  Yes, your Honor.  And let me be very

15 specific.  I had -- in the parallel Calhoun case, we had a

16 dispute over revenue documents, and we specifically tried to

17 stipulate with opposing counsel to their admissibility, and

18 Judge Van Kuelen conferred with Judge Gonzalez Rogers and

19 rejected our stipulation and said evidentiary matters will

20 be dealt with and maybe you'll get a deposition at that time

21 on that topic.

22      So, I think if we're deposing these people about the

23 substance of where the evidence came from, we could easily

24 cover it, and it's the most efficient way to get evidence

25 now.

24

1          THE COURT:  Okay.

2          MS. WEAVER:  That's what I would submit, but she

3   did reject the stipulation, your Honor.

4          THE COURT:  Right.  Well, that's a little bit

5   beyond what I can really assess and determine here.  So, I'm

6   not -- I'm not entirely sure I -- I know that we're talking

7   about the same thing, but thank you for clarifying.

8      Is there anything else you'd like to share with me on

9   -- in support of the request for additional depos?

10          MS. WEAVER:  Not at this time, your Honor.

11          THE COURT:  Okay.  Thank you.

12      Now I'll hear from Google.  Let me just say that this

13   is generally the kind of case where I think it's likely that

14   a party would exceed the 10-deposition limit.  I agree that

15   unlimited depositions is not the way to go here, especially

16   in this case.  But, you know, if a witness has verified an

17   interrogatory response or has been identified as the person

18   who supplied the information underlying the interrogatory

19   response, you know, that -- it seems plausible that that

20   person would have relevant and responsive information.

21      So, could you, again, starting with just the five folks

22   that are identified as being relevant for that purpose,

23   meaning supplying information in support of an interrogatory

24   answer, could you just address the -- the arguments that I

25   had with Plaintiff's counsel about why that -- those should

25

1 | or should not take place?

2 |          MS. REDDY:  Thank you, your Honor.  So, our

3 | position -- this is Aarti Reddy for the Defendant.  Our

4 | position is that Plaintiffs have not made a showing of

5 | particularized need to take the depositions of these five

6 | individuals.

7 |     Ms. Weaver has stated that we disclosed these

8 | individuals in response to interrogatories.  Plaintiffs

9 | propounded interrogatories where they identified specific

10 | documents or data and asked Google to identify all persons

11 | who assisted in the creation of that data, which is how we

12 | came up with these five names.  They are the only five names

13 | that we've disclosed in interrogatory responses, and

14 | Plaintiffs are seeking to depose all of them.

15 |     As your Honor noted, we do not believe that they have

16 | made a showing of particularized need to conduct any of

17 | these depositions.  These individuals simply supplied a

18 | number that we used in interrogatory responses.  None of

19 | them are on the RTB team.  None of them are listed on the

20 | initial disclosures.  None are custodians.

21 |     If you'll recall, your Honor, we exhaustively litigated

22 | the issue of appropriate -- appropriate custodians in this

23 | case.  There are 23 custodians.  None of these individuals

24 | were even considered because they don't work on RTB.  Their

25 | substantive knowledge of the case is extremely limited.  It

26

1  is limited to conversations they've had with counsel and

2  work that they've performed directly at the direction of

3  counsel.

4          THE COURT:  Um-hmm.

5          MS. REDDY:  And, so, we do not believe that these

6  individuals have relevant substantive information to

7  provide.  To the extent that Plaintiffs have questions about

8  these particular documents, there are avenues for them to

9  explore those questions or get responses about the -- the

10  information that they seek.

11      So, with respect to Fiteshans, Koeller, and Powers,

12  respectfully, Ms. Weaver was not in attendance at the meet

13  and confers that took place on these depositions.  I was.

14  Those three individuals were never raised.  The only two

15  individuals the parties ever discussed were Herbstman and

16  Cornacky.  We did not discuss Plaintiff's request, which we

17  saw for the first time in their joint letter brief, to

18  depose any individual who assisted in the preparation of

19  discovery responses.

20      So, this was a complete surprise to us, your Honor.  We

21  had no opportunity prior to Plaintiffs bringing this motion

22  to meaningfully confer with them about the questions they

23  have about the information that these individuals supplied

24  in these interrogatory responses.

25      To -- as to --

1        THE COURT:  Can I pause you there?  So, do you

2   agree that topic three completely overlaps with the stated

3   reason for the Plaintiffs or why they would like Mr. Powers'

4   deposition?

5        MS. REDDY:  Yes, we agree, which is why we were

6   surprised to see the request to depose Mr. Powers in an

7   individual capacity, because we've separately been

8   discussing topic three and negotiating the various topics in

9   connection with our negotiation over the 30(b)(6) notice.

10       THE COURT:  Okay.  So -- so, I had made a

11  suggestion that perhaps this whole problem could be solved

12  by having Google provide a 30(b)(6) witness who could answer

13  questions that the Plaintiff says they're most interested

14  in, meaning mainly, how did you come up with this count for

15  a count -- the count of U.S. account holders who are within

16  the class?  I don't know what the revenue spreadsheet says,

17  but how -- how did you come up with that number essentially,

18  and why not provide a 30(b)(6) witness for those topics

19  mirroring essentially the topic three for the subject matter

20  for Mr. Powers?

21       MS. REDDY:  Your Honor, we would be open to that.

22  I think our concern is -- and this is an issue that is being

23  raised in the 30(b)(6) dispute that is briefed before your

24  Honor.

25       THE COURT:  Um-hmm.

1        MS. REDDY:  Plaintiffs have time and again
2   attempted to ask questions about the source and the
3   collection and storage of information, and the Court has
4   repeatedly held that that is outside the proper bounds of
5   discovery.  And, so, we are concerned particularly with some
6   of these witnesses, Fiteshans, Koeller, Herbstman and
7   Cornacky that Plaintiffs are going to turn this into a
8   deposition of discovery on discovery and ask for Google's
9   storage and the source of -- of different information.  We
10  do not believe that's appropriately within the scope of
11  discovery.  We've litigated this issue on the prior 30(b)(6)
12  topic that the Court resolved last year, and with respect to
13  the cross-use motion and with respect to various other
14  motions.  And, so, we are --
15        THE COURT:  All right.
16        MS. REDDY:  -- concerned --
17        THE COURT:  Okay.  But -- I'm sorry to interrupt
18  you, but topic three, I have your dispute in front of me on
19  -- on the 30(b)(6) depo topic.  I'm not hearing argument on
20  it, but I observe that topic three is not among the matters
21  about which you disagree.
22        So, what I have in mind is not doing what you describe
23  but allowing Plaintiffs to take a deposition of some
24  knowledgeable witness.  So, if the people who supplied or
25  compiled, in Google's terms, the information that was

29

1  provided in response to these interrogatories but they know

2  nothing, the you could designate a witness or witnesses who

3  could answer the questions that Ms. Weaver has described

4  she's interested in learning the information, how did -- how

5  did you come up with this number?  Not going back all the

6  way to the origin of where does the -- the data, the private

7  data come from and how is it stored or any of that, but how

8  did you come up with the answers in the interrogatory?  How

9  was the spreadsheet prepared?  What is the source of the

10  information?  Those seem to me to be legitimate questions to

11  ask about a summary document, especially if they're trying

12  to test the methodology by which it was prepared.

13      So, I just don't see -- I appreciate Google's concern.

14  I'm not revisiting any of my prior orders on that, and

15  Plaintiff should know that, but it does seem like a

16  legitimate question to explore, and why not just put up a

17  30(b)(6) witness?

18          MS. REDDY:  We would -- we would be -- I think

19  there is overlap with topic three, as your Honor noted, and

20  I think we would be open to designating a 30(b)(6) deponent

21  to testify as to how the information in these spreadsheets

22  was compiled and what the information means.

23      With respect to the source of the data, we don't

24  believe that Plaintiffs have made a showing.  We don't -- we

25  don't understand why that information would necessarily be

30

1  relevant to the jury's interpretation of that data.

2          THE COURT:  Well, you have produced underlying

3  information that would identify the account holders, have

4  you not?

5          MS. REDDY:  Yes.

6          THE COURT:  Okay.  And you've produced underlying

7  information that would identify -- or that would be the

8  source of information for the number of bid requests and

9  winning bid requests.

10     I mean, we have all of these disputes about data logs.

11  So, why couldn't a witness just say it came from that data

12  log?  I mean, that's the level of information that I

13  understand the Plaintiffs are after.  We took this data log.

14  We ran this calculation.  We filtered for this.  We filtered

15  for that, and this is the number we got.  And then, if they

16  don't like that number, they have the underlying data

17  already because you've produced the data log, and they can

18  -- they can fight it out as part of the class cert

19  proceeding.  That's what I understand them to be after.

20          MS. REDDY:  So, our -- our concern is they want

21  detailed information about Google's data logs and data

22  storage systems.

23          THE COURT:  Well, I don't see that in here, and I

24  don't know what that means.  I want -- if what you're saying

25  is you -- you fear that the Plaintiffs are going to examine

1  a witness about how the log works, stuff like that, I'm not

2  really entirely sure what -- what the concern is.  But I

3  don't see that in their part of the joint letter.  And if

4  they went down that road and you felt a protective order was

5  necessary because Plaintiffs overstepped the bounds of my

6  prior orders, then you could -- you could do it -- what the

7  Rules allow you to do with respect to any deposition on that

8  point.

9       MS. REDDY:  Understood, your Honor.  And I would

10  just like to note that we offered Plaintiffs a compromised

11  proposal at least with respect to Herbstman and Cornacky,

12  again, the only two witnesses that we discussed prior to

13  this motion.  We offered to provide Plaintiffs verified

14  written responses to questions that Plaintiffs had about the

15  source of the information that we used to produce data for

16  interrogatories 13 and 14 and to produce any Plaintiff data

17  and the preservation of those sources.

18       We believe that a written response would actually be

19  more appropriate because a deposition on these issues is

20  inherently going to involve very difficult issues related to

21  privilege.  As I noted, these individuals only perform work

22  at the direction of counsel.  Their only knowledge of this

23  case is related to discussions they had with counsel.  So,

24  we would prefer to provide written responses, and we don't

25  understand why that -- that proposal is insufficient for

32

1  Plaintiff's need.

2          THE COURT:  Okay.  So, I -- I appreciate that

3  point.  I still think a 30(b)(6) designee accomplishes what

4  you need to accomplish, and that seems to me to be the most

5  reasonable course here.  And that eliminates the problem of,

6  Well, I have to take two different people's depositions.  I

7  don't know who knows what.

8      I mean, you can't -- you can't insulate from discovery

9  the -- the, you know, underlying information about how some

10 number was gotten just because counsel said go get the

11 number.  And I'm not sure that's the scope of your

12 objection.  I don't really have that in front of me to

13 decide.

14     But, you know, any time you -- you do something like

15 this, you prepare a summary or direct the client to prepare

16 a summary or you prepare a witness for a deposition as a

17 corporate representative, there's always some tension with

18 work product and attorney-client privilege.  These are

19 normal things to navigate and can be navigated by Plaintiffs

20 appropriately framing the question to not invade attorney-

21 client privilege or the work product doctrine and just

22 asking for the facts.  Where does this information come

23 from?  How is it calculate?  And those seem to me to be very

24 basic questions and, you know, I -- I will be sensitive to

25 questions of overreaching and exceeding the scope of what

33

1  I've ordered previously as being sort of not relevant, but I

2  -- you know, I'm troubled by the fact that there's a

3  disagreement about what you all conferred about.

4       I had another case where the parties record their

5  conversations because they come into court and tell me this

6  was said, this was not said.  Anyway, I don't want to get

7  there.  But I -- you know, I have cautioned the parties and

8  particularly the Plaintiffs before about submitting disputes

9  to me where there has not been a conference on the issues

10  raised in the letter.  I've done that on depositions before,

11  and I don't like to see that kind of dispute.  So, I'm going

12  to just warn you all again, but right now I'm focusing on

13  problem solving.  And at least to my mind, a 30(b)(6)

14  deposition addressing these issues is the best way to go.

15  That allows Google to identify the person who's most

16  knowledgeable about that issue and can speak of -- and maybe

17  it's these folks.  Maybe it's someone else -- who can talk

18  about what the basis is for the calculation.

19       And I think it's focused on calculation, right?  How

20  did you get this number?

21            MS. WEAVER:  Yes, your Honor.

22            THE COURT:  And not anything else.  So, okay.  But

23  -- and I'm sorry.  I cut you off.  You were arguing other --

24  other matters, and I wanted to probe this 30(b)(6) as a

25  possibility.  So, let me -- let me apologize for

34

1  interrupting and allow you to continue the argument.

2          MS. REDDY:  So, just to continue my argument, your

3  Honor, I mean, we've noted this in our papers, that these

4  individuals have very limited knowledge of RTB.  They were

5  not disclosed in discovery because they only work that they

6  performed was really to provide these numbers in response to

7  an interrogatory, and the only reason they were disclosed is

8  because Plaintiffs asked for an identification of all

9  individuals that assisted Google in preparing these

10  discovery responses.

11          THE COURT:  Um-hmm.

12          MS. REDDY:  So, you know, with respect to

13  Fiteshans and Koeller, these individuals are on the finance

14  team.  They assisted in preparing a revenue spreadsheet, and

15  Plaintiffs have already had an opportunity to ask a lot of

16  questions about that revenue spreadsheet.  They've done so

17  through formal discovery, and Google fully responded to

18  their interrogatory on this point.

19      Plaintiffs haven't challenged Google's interrogatory

20  response as deficient.  They haven't mentioned in their

21  papers what it is they want to ask these witnesses about.

22  This hearing is the first time we're hearing Plaintiffs

23  articulate their justification for deposing these witnesses.

24  I understand your Honor wants to problem solve.  In a sense

25  we're flying blind here because we fully responded to an

1  interrogatory that Plaintiffs had about this revenue

2  spreadsheet.

3          THE COURT:  Yeah.  They want -- they want

4  deposition testimony to follow up on the interrogatory

5  answer.

6          MS. REDDY:  Right.

7          THE COURT:  I mean, that's what they want.  And I

8  appreciate the offer to, you know, say, Well, send us the

9  detailed questions and we'll provide verified responses.

10 That's fine.  But I appreciate the point also that that's

11 sort of a tedious process, and if you have a live witness

12 who can answer a question like topic three with respect to

13 these other items that have been the subject of your

14 interrogatory answers, that's a more efficient way to handle

15 it.

16    I don't know if this will overlap with any of the

17 declarations that Google plans to submit, and I'm not asking

18 you to disclose that.  I don't think that would be

19 appropriate.  But certainly that would -- if -- if that does

20 happen, then that would be an appropriate way to go as well

21 is to have whoever that declarant is also answer questions

22 about this -- this information.

23    So, you know, you're right that there has not been the

24 kind of particularized showing that would normally be

25 required, because there's -- there's been no discussion of

1  what's gone before.  I understand a little bit about why

2  there's no discussion of what's gone before in terms of

3  depositions, but if what you're saying is that the

4  spreadsheet was provided to Plaintiffs -- this is the

5  revenue spreadsheet -- they took the depositions of

6  witnesses who are knowledgeable about revenue and finance

7  issues and did not ask about it, that's something I would

8  want to know, because that would be a problem.

9       Is that what you're saying?

10          MS. REDDY:  Well, your Honor, they took the

11  depositions of individuals who would have been able to

12  answer questions about the spreadsheet.  They are not on the

13  revenue team.  So, I don't -- I -- I can't represent that

14  they would have been able to ask questions when I'm not sure

15  exactly what Plaintiffs would have asked.

16          THE COURT:  Right.

17          MS. REDDY:  But they would have been able to talk

18  about RTB revenue generally.

19          THE COURT:  But had the spreadsheet been provided

20  at the time those depositions occurred?

21          MS. REDDY:  I -- I'm not -- I'm not able to answer

22  that question at this point.

23          THE COURT:  So, I think that's a problem is --

24          MS. REDDY:  Yeah.

25          THE COURT:  -- to the extent it's new, then they

37

1 couldn't have asked about it.  So, okay.

2     From Google's perspective, I know --

3          MS. WEAVER:  And, your Honor, I could address

4 that.

5          THE COURT:  Just a minute.  I'm not done yet with

6 Google.

7          MS. WEAVER:  I apologize.

8          THE COURT:  From Google's perspective, I

9 understand at least part of the concern is that, you know,

10 this is sort of an unlimited ask, and certainly the extent

11 of a 30(b)(6) deposition, even though it only counts as one,

12 it impacts the Court's analysis about burden because the

13 more extensive that deposition is and the more ground it

14 covers, the less inclined I am to allow individual

15 depositions, at least to the extent they overlap in excess

16 of the 10-depo limit.

17     So -- so, I appreciate that point.  But, you know,

18 there are techniques that one can use to sort of cabin the

19 burden by limiting, you know, number of individuals, number

20 of hours, you know, that kind of thing.

21     So, you know, I think it would be -- I don't know if

22 you've discussed that with respect to the 30(b)(6), but as

23 to these matters, I think limits on the total number of

24 witnesses or limits on the total number of deposition hours

25 might be in order.

38

1    Have the parties discussed any of those measures for

2  cabining burden?

3         MS. REDDY:  I believe that Plaintiffs offered half

4  days for Herbstman and Cornacky, the two witnesses that we

5  discussed.

6         THE COURT:  Okay.  But that's the extent of the

7  discussion?

8         MS. REDDY:  That's the extent of the discussion.

9         THE COURT:  Okay.

10         MS. REDDY:  If, as Plaintiffs represent in their

11  papers, the deposition would truly be limited to the

12  interrogatory response at issue or the document at issue,

13  then we -- we think an hour, maybe two, would be more than

14  sufficient.

15         THE COURT:  Um-hmm.  All right.  Is there anything

16  else that -- oh, well, let me just ask about the

17  declarations.  You know, I -- I posed the question to the

18  Plaintiffs about how I understood your position, and they

19  indicated they were not trying to get a second bite at the

20  apple.  If they've already taken the deposition of a witness

21  whose declaration Google relies on, they're not going to ask

22  for a do over unless it's something new that they didn't

23  appreciate the witness had any knowledge about.  Okay.

24    So, you know, as a matter of principle, if and when

25  there are declarations submitted, does Google have any

39

objection to putting any new witnesses up for deposition?

MS. REDDY:  Not at this time, your Honor.  I -- we -- our position is that it is premature for Plaintiffs to be asking for depositions when we haven't identified the declarants ourselves.  We are in the process of preparing our opposition to The Plaintiffs' class certification motion.  We haven't finalized the list of declarants.  We certainly haven't finalized the content of --

THE COURT:  Sure.

MS. REDDY:  -- those declarations.  And, so, it's -- it's premature because we can't assess whether those depositions would be cumulative or unduly burdensome.  We will meet and confer with Plaintiffs in good faith as soon as we file our class certification opposition to schedule any depositions or discuss the depositions that may be appropriate for declarants that submit declarations in our opposition, but we're just not there yet, and we think seven weeks is more than enough time for the parties to work out this issue, for Plaintiffs to conduct the deposition and incorporate the testimony in their reply.

We're doing a similar process with respect to expert depositions.  We're taking six expert depositions between filing -- Plaintiffs filing their motion and our class certification opposition.  It's certainly -- certainly possible for us to do the same with fact witnesses.

1    THE COURT:  Okay.  I mean, you have my guidance,

2  which is if there is something in a declaration, if a

3  witness who has not been disclosed, who's not been deposed,

4  is testifying about substantive information in support of

5  the opposition, you ought to put that person up for a

6  deposition.  I'm just kind of signaling that's my guidance.

7    Now, you know, maybe there is -- there is some scenario

8  where there's been turnover in the organization and, you

9  know, the person submitting the declaration is covering

10  ground, exactly the same ground that's already been covered

11  by a witness who has been deposed, maybe something like that

12  would not be a situation where it would be appropriate for a

13  deposition.  But, you know, mostly the case law is on the

14  other side, where the Plaintiffs have a number of class

15  member declarations and the Defendant wants to depose all of

16  them or some sample of them or something like that, and

17  that's usually permitted, with good reason.

18    So, I'm just -- I'm just signaling to you that I would

19  expect the parties to be able to work this out.  And, you

20  know, I do appreciate the point that seven weeks can end up

21  being not very long if you've got a lot to do.  So, I would

22  really encourage you all to not have this linger.  But I

23  don't -- I mean, without knowing who the deponents are, what

24  their names are, what their roles are, I can't order it in

25  advance in that -- in the way that I think Plaintiffs want

41

1  me to.

2      So, I mean, is there anything you'd like to address the

3  Court on on that question of declarants and their

4  depositions?

5          MS. REDDY:  No, thank you, your Honor.

6          THE COURT:  Okay.  All right.

7      Ms. Weaver, was there something you wanted to add?

8          MS. WEAVER:  Yes, if I might, your Honor.  I

9  wanted to address your specific factual question about

10 whether or not we've had the opportunity to take depositions

11 relating to the responses to interrogatories 11, 12, 13, and

12 14.

13     13 and 14, the responses were provided to us in June.

14 And, so, we've not had the opportunity to depose anybody

15 relating to them.  I deposed George Levitt on April 13th,

16 who is a revenue person, and we received the responses to

17 the third set, 11 and 12, on April 10th.

18     When I deposed him, he was unable to speak broadly

19 about how revenues were generated or the spreadsheet.  And,

20 so, we haven't had an opportunity -- I think, just to

21 clarify, what we would hope is that we would be able to take

22 30(b)(6) depositions on the topic of the responses to

23 interrogatories 11, 12, 13, and 14 and also just the

24 evidentiary bases for those.  I think the way your Honor

25 articulated it was well put.  Like, if it's a -- if it's a

42

1   -- if it's a log, where the log comes from over the time

2   period, et cetera.  The concern would be, for example --

3           THE COURT:  No, not -- not whether it's a log.

4           MS. WEAVER:  Yes.

5           THE COURT:  Let me -- you know, I'm going to have

6   to ask you to submit the interrogatory answers because it's

7   too hard to do this in a vacuum.  But -- but, for example,

8   information detailing the number of bid requests and winning

9   bid requests associated with each named Plaintiff, what I

10  would expect is the witness would say, I got these numbers

11  from this data source using this methodology.  This is how I

12  calculated it or this is how it was calculated.  It doesn't

13  have to be the human who actually did it if it's a 30(b)(6)

14  designee, not, And where does that underlying data come

15  from?  And how is it generated?  And where is it stored, and

16  all of that stuff.  Okay.  That's the line that I'm --

17          MS. WEAVER:  Understood, your Honor.

18          THE COURT:  -- I'm concerned about.  And this

19  discovery dispute letter does not address -- does not

20  address in any detail sort of going beyond that.  I'm sorry

21  I'm not articulating the point very well, but if the real

22  dispute between the parties is the worry that Plaintiffs are

23  trying to use this as a wedge to get information that I've

24  said is really outside the scope of what's at issue in this

25  case, I don't appreciate that, especially when it's not

43

1    briefed.  Okay.  And I don't want to be in a position of

2    like making -- making a ruling that you just run with and

3    say, See, the Judge ordered it.  Okay.  Like, that's --

4    that's not -- that's not good.

5        So, I'm trying to just be very clear about what my

6    intention is.  I totally appreciate and credit that you want

7    to understand how Google got these numbers.  That's totally

8    legitimate, and that's what you should be allowed to do.

9    But when you say, And where does this log come from, you

10   know, I just --

11              MS. WEAVER:  Yeah.

12              THE COURT:  I worry that Google's fear is

13   accurate.

14              MS. WEAVER:  No, your Honor.  I apologize.

15              THE COURT:  Okay.

16              MS. WEAVER:  I misspoke.  Let me be very clear.

17   That is a red herring.

18              THE COURT:  Okay.

19              MS. WEAVER:  This is the example I want to give.

20              THE COURT:  Okay.  Good.

21              MS. WEAVER:  My damages expert comes in and -- and

22   forms an opinion about these are the revenues associated

23   with the -- the sales in the auction at issue in this case,

24   and their expert comes in and says, Oh, no.  That sweeps in

25   revenues from this other thing here, and we don't know that

44

1 because we don't know in the accounting books where the

2 information came from that the -- you know, this spreadsheet

3 that we have is -- that's what I mean to --

4          THE COURT:  Okay.

5          MS. WEAVER:  -- to convey.

6          THE COURT:  All right.  Let's say I decide to go

7 with the 30(b)(6) plan which, again, it was inspired by

8 topic three in the notice that -- which I understand is

9 still under dispute but, nevertheless, topic three is not

10 disputed.  Topic three is kind of my model for what -- what

11 might be accomplished with respect to these other categories

12 of information.

13     And, not having the interrogatories in front of me, I

14 can't suggest how it might be crafted, but could you use

15 topic three as a model for asking Google what you need with

16 respect to the matters that you summarized for Mr.

17 Herbstman, Mr Cornacky, Mr Koeller and Ms. Fiteshans?

18          MS. WEAVER:  Absolutely, and we would like to

19 submit it, if we could submit it to the Court quickly so

20 that we could get this resolved before we're working.

21          THE COURT:  Well, what I would like for you to do

22 is talk about it, and -- and I'm signaling very strongly

23 that this is the approach that I think addresses your

24 concerns but also addresses Google's concerns about burden,

25 not involvement, work product issues.  I mean, you can

45

1  educate a designee about the things that designee needs to
2  know and not have somebody have to travel from London to
3  take -- you know, to sit for a deposition and those kinds of
4  things.  So, I -- I have convinced myself this is the likely
5  solution to your problem, but I would like for you to see if
6  you can agree on such a topic.  Given that you're able to
7  agree on topic three, I was hoping that you could agree on a
8  topic that would cover these other things, and I would like
9  for you to do that and submit it to me.
10          MS. WEAVER:  If we could do that with a deadline,
11 your Honor, that would be helpful.
12          THE COURT:  Well, how long do you all think you
13 need to talk about this?
14          MS. WEAVER:  A week.
15          THE COURT:  How long will you need to draft
16 something?
17          MS. WEAVER:  We can send something out Tuesday --
18 by Thursday.
19          THE COURT:  Okay.  And then how long, Google,
20 would you need?
21          MS. REDDY:  We'd like a week to consider
22 Plaintiff's proposal and reach an agreement with them.
23          THE COURT:  Okay.  So, here's -- here's what I'm
24 going to do.  And the deadline for the opposition to class
25 cert is September 29th, is that right?

46

1          MS. REDDY:  That's correct, your Honor.

2          THE COURT:  I'm just looking at the calendar.

3      All right.  So, what I would like is for the parties to

4  do this.  On August 31st, which is a week from Thursday, I

5  would like for you to provide to me the proposed hopefully

6  agreed deposition topic that would cover Herbstman and

7  Cornacky and Koeller and Fiteshans, those -- those matters.

8  And I'd also like -- and if you don't agree, then your

9  respective proposals.  And I would also like to see the

10  interrogatory questions and answers that correspond to

11  these, and I'm ignoring Powers for right now because I view

12  that as resolved, but I'd like -- I'd like to have those

13  pieces of information.

14      I don't want additional briefing.  I just want to see

15  what the proposals are, and I'd like for you to confer

16  seriously about these things in advance and see if you can

17  come to an agreement.

18      Will that work?

19          MS. WEAVER:  Yes, your Honor.  With the exception

20  of Powers, we've agreed as to the topic.  But, because this

21  was pending, we didn't agree that it would -- we would get

22  to take a deposition.

23          THE COURT:  Well, no.  Okay.  So, let me -- let me

24  put it this way.  Topic three --

25          MS. WEAVER:  Yes.

1          THE COURT:  -- completely subsumes the stuff that

2  you want to ask Mr. Powers about.  That's my understanding.

3          MS. WEAVER:  Yes, but then we need a deposition,

4  because what we agreed was to just let written -- for topic

5  three where we're just doing it in writing, that was the

6  agreement.  So --

7          THE COURT:  Well, why isn't that -- okay.

8          MS. WEAVER:  It is in the 30(b)(6) papers, your

9  Honor, but -- we did agree to the topic.  What we would say

10  is we want --

11          THE COURT:  I see.  You're just doing it on -- oh,

12  okay.

13          MS. WEAVER:  It's because this was pending with

14  Powers, that was the overlap, and, so, we would like a

15  deposition for the same reasons that we need a deposition

16  for the others.

17          THE COURT:  Why is it always so complicated with

18  people?

19      (Pause.)

20          THE COURT:  Well, I'm not going to make Google do

21  both.  So, either there's written responses and no

22  deposition or a deposition and no written responses.

23          MS. REDDY:  Our preference on this one, your

24  Honor, would be to stick with the agreement we had on topic

25  three for a written response.  Plaintiffs have already asked

48

1  numerous questions about this information.  In the
2  interrogatory that we're going to be submitting to your
3  Honor, interrogatory number 12, again, they're not
4  challenging that interrogatory response is deficient in any
5  respect.  We think this is more than sufficient for them to
6  have the information.  We're agreeing to provide the number
7  of account holders and the meaning of the input how account
8  holders are calculated, what -- what the meaning of the term
9  "active" is for purposes of that topic.
10        So, there is going to be some narrative description of
11 the information that we're providing to Plaintiffs.
12             THE COURT:  When are you doing that?
13             MS. REDDY:  We haven't set a deadline for that,
14 your Honor.
15             THE COURT:  Because you're waiting until I resolve
16 all the other depo topics?
17             MS. REDDY:  Yes, and we've also been focused on
18 our class certification opposition.
19             THE COURT:  Um-hmm.
20             MS. REDDY:  So, you'll see this briefed in the
21 30(b)(6), your Honor.  But we're hoping to conduct the
22 30(b)(6) after we file our opposition.
23             THE COURT:  Yeah.  I mean, for many reasons, that
24 might make the most sense anyway because you'll have the
25 benefit of the declarations as well, and so you wouldn't be

49

 1  doing it serially.  That -- I think that timing makes sense.

 2  I know that's one of the issues you raised in the -- the

 3  other dispute which I haven't resolved yet, but as we're

 4  speaking, that -- that does make some sense, at least as tot

 5  topic three.

 6      Okay.  Well, that sort of begs the question about why

 7  -- if you're getting the written information that overlaps

 8  with what you wanted to take Mr. Powers' deposition on, why

 9  do you need both?  It just --

10          MS. WEAVER:  Because it's complex, your Honor.

11          THE COURT:  Um-hmm.  Okay.

12          MS. WEAVER:  Because it's really -- I mean, if we

13  have a letter campaign -- and this does prejudice us.  To

14  the extent Google comes in and says, Oh, you've miscounted

15  Google account holders, you are over inclusing (sic), you

16  have the case that used to be a lien issue, uninjured class

17  members, et cetera.  We really need to get into this number

18  right now and explore how they're counting who they are

19  counting and figure out our own affirmative burden too.

20          THE COURT:  Okay.  So, you agreed to the written

21  response to topic three in lieu of a deposition because you

22  thought you'd win on Mr. Powers' deposition?

23          MS. WEAVER:  We thought it was possible that the

24  Court might find it reasonable that we'd be able to take

25  declarations on these topics, yes.

50

1        THE COURT:  I -- you know, I see some -- as I said
2   before, I see some efficiency in terms of doing this by
3   deposition instead of written questions just so you avoid
4   the cycles.  I don't like to disrupt the things that the
5   parties have already agreed upon because it's so rare that
6   you agree upon things.  So, I will consider that issue, but
7   I'd still like to understand if -- I would like for you to
8   do this exercise of formulating a 30(b)(6) depo topic that
9   would describe what you need for this interrogatory
10  information and consult with Google about it, and Google can
11  address that and submit it to me by the 31st.
12      And that's, you know, on the assumption that you get
13  the proposal that you have to Google no later than Thursday.
14        MS. WEAVER:  We will.
15        THE COURT:  Okay.  So that they have enough time
16  to think about it, and I don't -- I just don't want a bunch
17  of more argument.  I just want the interrogatories and the
18  proposed depo topics.
19      And I will just do a short order saying that so that
20  you don't have to rely on this transcript, but that's -- and
21  I'll decide.  So, I'm telling you how I'm inclined to
22  resolve this, but I'll decide once I see your proposals.
23  I'll also think about this written question issue which is
24  also raised.
25        MS. REDDY:  Your Honor, should our written

51

1    submission address any limitations that the Court should

2    consider for these depositions?

3         THE COURT:  Limitations?  I mean, I -- you know, I

4    still think that one way that the parties can help

5    themselves is by, you know, agreeing to -- for a 30(b)(6), I

6    don't know how you're -- how you're planning to do it, but

7    typically it's, you know, the witness testifies -- if you

8    designate a witness for one topic, I would not expect that

9    to last seven hours.  Let me put it that way.  But it's very

10   difficult for me to micro manage that for you.  I think it's

11   worthwhile, particularly since Plaintiffs have said, We

12   don't need a lot of time, to say for this topic we would

13   expect the examination would take, you know, no more than

14   two hours or something, and for you to have a conversation

15   about that.  I think that's a great idea to do that.  And I

16   think that addresses some of the concerns about burden that

17   I would otherwise have.

18       So -- so, I don't know if that answers your question,

19   but, yes, that's a useful thing to discuss.  And if you want

20   to share that with me, great.

21         MS. REDDY:  Thank you, your Honor.

22         THE COURT:  Okay.  Ms. Weaver, was there something

23   else?

24         MS. WEAVER:  Thank you.  We can do that.  I did

25   want to address very briefly the declarant issue just from a

52

1 practical standpoint.  I understand what you're saying, and

2 it makes some sense.  But until we see the declarations, we

3 can't know for sure.

4          THE COURT:  Yeah.

5          MS. WEAVER:  I do think there could be cause for

6 concern if given the Court's statements, somebody who was

7 deposed previously all of a sudden appeared and put in a

8 declaration on a topic that we had no reason to know they

9 knew about.

10          THE COURT:  Yeah.  No, I understand that.

11          MS. WEAVER:  Yeah.  And the other question -- and

12 this is just something you might consider, your Honor,

13 because we're problem solving -- is if there's a procedural

14 mechanism so that shortly after we get the opposition we

15 could have a date to file so that we do not have six weeks

16 of I'm not available --

17          THE COURT:  Okay.  My standing order already

18 addresses that, and while I do expect people to extend

19 professional courtesies to each other, you should be able to

20 get before me really quickly.

21          MS. WEAVER:  Okay.

22          THE COURT:  And this is why I'm giving you

23 guidance also, because I -- you know, I have a lot of other

24 discovery disputes, including the people patiently waiting

25 in the back of the courtroom, but, you know, I'm giving you

53

1   guidance now so that you know what is likely to happen, so

2   if there's a real -- if you're able to really show me that

3   this witness -- you had no idea that subject matter was

4   within that witness's domain and here they pop up as a

5   declarant, I'm going to let the deposition happen, because

6   otherwise, you're going to get before Judge Gonzalez Rogers,

7   and she'll say, well, you know, how come -- how come this is

8   -- this declarant is here and I'm being told that Judge

9   DeMarchi wouldn't let anybody take a deposition?  I mean,

10  that's just not going to happen.  I'm not going to mess up

11  the class cert schedule.

12       But if it's a second bite at the apple for someone you

13  should have asked questions about because you knew full well

14  that was their role, well, then too bad.

15            MS. WEAVER:  Understood, your Honor.

16            THE COURT:  Okay.

17            MS. WEAVER:  Thank you.

18            THE COURT:  So, just use my standing order or

19  timing for things that are time sensitive, please.

20       Okay.  Thank you all very much.

21            MS. REDDY:  Thank you, your Honor.

22            MS. WEAVER:  Thank you, your Honor.

23            THE COURT:  I will issue a short order.

24       (Proceedings adjourned at 11:11 a.m.)

25

54

CERTIFICATE OF TRANSCRIBER


1          I certify that the foregoing is a true and correct

2   transcript, to the best of my ability, of the above pages of

3   the official electronic sound recording provided to me by

4   the U.S. District Court, Northern District of California, of

5   the proceedings taken on the date and time previously stated

6   in the above matter.

7          I further certify that I am neither counsel for,

8   related to, nor employed by any of the parties to the action

9   in which this hearing was taken; and, further, that I am not

10  financially nor otherwise interested in the outcome of the

11  action.


                 Echo Reporting, Inc., Transcriber

                       Thursday, August 24, 2023