# EXHIBIT A

## REDACTED VERSION OF DOCUMENT SOUGHT TO BE FILED UNDER SEAL

1          UNITED STATES DISTRICT COURT

2         NORTHERN DISTRICT OF CALIFORNIA

3  Before The Honorable Virginia K. DeMarchi, Magistrate Judge

4

5  In re:                     )
                              )
6  GOOGLE RTB CONSUMER        )   No. C 21-02155-YGR
   PRIVACY LITIGATION,        )
7                             )
   _____)
8
                              San Jose, California
9                             Tuesday, May 16, 2023

10  <u>TRANSCRIPT OF PROCEEDINGS OF THE OFFICIAL ELECTRONIC SOUND
          RECORDING 10:48 - 12:15 = 1 HOUR and 27 MINUTES</u>

11

12  <u>APPEARANCES</u>:

13  For Plaintiffs:
                              Bleichmar Fonti & Auld, LLP
14                            555 12th Street
                              Suite 1600
15                            Oakland, California 94607
                         BY:  ANNE K. DAVIS, ESQ.
16
                              Pritzker Levine, LLP
17                            1900 Powell Street
                              Suite 450
18                            Emeryville, California 94608
                         BY:  JONATHAN K. LEVINE, ESQ.
19                       BY:  BETHANY CARACUZZO, ESQ.

20  For Defendant Google:
                              Cooley, LLP
21                            3 Embarcadero Center
                              20th Floor
22                            San Francisco, California
                               94111
23                       BY:  WHITTY SOMVICHIAN, ESQ.
                         BY:  MAURICE TREVOR, ESQ.
24

25

2

1   Transcribed by:              Echo Reporting, Inc.
                                  Contracted Court Reporter/
2                                 Transcriber
                                  echoreporting@yahoo.com
3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

3

1   <u>Tuesday, May 16, 2023</u>                    <u>10:48 a.m.</u>

2                    P-R-O-C-E-E-D-I-N-G-S

3                         --oOo--

4       (Call to order of the Court.)

5          THE CLERK:  Calling case 21-CV-02155, In Re Google

6   RTB Consumer Privacy Litigation, on for discovery hearing.

7       If the parties could state their appearances, beginning

8   with Plaintiffs.

9          MR. LEVINE:  Good morning, your Honor.  Jonathan

10  Levine, Pritzker Levine, on behalf of the Plaintiffs.

11         THE COURT:  Good morning.

12         MS. DAVIS:  Anne Davis, Bleichmar Fonti and Auld,

13  on behalf of the Plaintiffs.

14         THE COURT:  Good morning.

15         MS. CARACUZZO:  Good morning, your Honor.  Bethany

16  Caracuzzo, Pritzker Levine, on behalf of the Plaintiffs.

17         THE COURT:  Okay.  Good morning.  And you all may

18  sit down, of course.

19         MR. SOMVICHIAN:  Good morning, your Honor.  Whitty

20  Somvichian with Cooley, representing Google today.

21         THE COURT:  Good morning.

22         MR. TREVOR:  Good morning, your Honor.  Reece

23  Trevor, also for Google.

24         THE COURT:  Okay.  Good morning.

25      I see you have few microphones on the tables, but

4

1  please make sure you're speaking into a microphone, and

2  identify yourself, if you would, please, when you're

3  addressing the Court.

4      This dispute concerns the account identifiers that were

5  part of the subject of my April 14th, 2022, order at Docket

6  487, and I understand there is some concern about what I

7  ordered, whether it's inconsistent with something else I

8  ordered, and whether this information is needed or not

9  needed for the purpose for which I ordered it.

10      So I'd like to hear from both sides on this point, and

11  let me start with the Plaintiffs.  Who will be speaking?

12          MR. LEVINE:  Thank you, your Honor.  I'll be

13  speaking on this issue.

14          THE COURT:  Okay.

15          MR. LEVINE:  If the Court wants to hear about the

16  source code change dispute, which we also briefed last week,

17  Ms. Davis will address it.  We didn't think so, but we just

18  wanted to --

19          THE COURT:  Nobody wanted a hearing on that one,

20  and I was like, "Yay."

21          MR. LEVINE:  I think we said we didn't want a

22  hearing on this, either, but here we are.

23          THE COURT:  Well, all right.  This one I thought

24  you needed to be heard, or I needed to hear from you.  So,

25  sorry to summon you all here, but yes, thank you.

5

1     Please go ahead, Mr. Levine.

2          MR. LEVINE:  All right.  Thank you, your Honor.

3 So there's two sort of related issues, and they go hand in

4 hand.  One is the two identifiers.  So I think we narrowed

5 it down last time to three specific account identifiers,

6 which were the GAIA ID and the Biscotti ID, which is also

7 called the "Google user ID," and joining keys, and the Court

8 ordered those to be produced.

9     We explained why we needed those keys for the purposes

10 of our case, to prove class cert merits, and why it was

11 necessary to produce them to link all the information up,

12 and to tie the information that goes out to the bidders in

13 the bid requests back to the Google accounts, and those

14 three IDs are the link between the bid requests and the

15 Google account holders, and we need that information.  It's

16 the core, the crucial information that is the link between

17 what goes to bid requests and what's in the Google accounts,

18 and we need that to be able to link the two, and we know

19 that information exists.  The Court ordered it to be

20 produced.

21     Now, so question one is simply, what is the Google user

22 ID?  We call it the "Biscotti ID."  Google says it's

23 something else.  We're talking about the same -- different

24 versions of the same thing, and I think we can --

25          THE COURT:  Well, I'm wondering if that matters.

6

1  All right?  So I've been just trying to use the term "Google

2  ID," "Google user ID," and then this category which I'm not

3  even sure what it is, but "joining keys," I imagine, is

4  things that correlate those things.

5            MR. LEVINE:  Correct.

6            THE COURT:  So, if there really is -- I continue

7  to get the sense that the parties are talking about apples

8  and oranges when they speak to me about this issue.  So does

9  it matter whether we say "Google user ID" or "Biscotti ID"?

10 You say there might be different versions of the same thing.

11 Can you elaborate on that?

12           MR. LEVINE:  Yes.  The only reason it matters --

13 so what -- and I think we can talk freely, because everyone

14 in the courtroom is -- with Google -- is on this case.

15           THE COURT:  I mean, I'm not sure that anything is

16 under seal, but, if there's some concerned, then -- well, I

17 would like for you to talk freely, and if we can handle this

18 by -- if there is something that's confidential, we can deal

19 with it at the transcript level.

20           MR. LEVINE:  That's fine.

21           THE COURT:  Okay.  All right.

22           MR. LEVINE:  The --

23           THE COURT:  And Google agrees with that?  I know

24 you nodded your head, Mr. Somvichian.

25           MR. SOMVICHIAN:  That's fine, your Honor, since we

7

1    don't have any other members of the public here.

2            THE COURT:  Okay.  Thank you.

3            MR. LEVINE:  So the Google user ID, which we call

4    "Biscotti" and which is internally at Google, as we

5    understand it, called "Biscotti," there's ███ versions of

6    it.  There is the ██████████ Biscotti Google ID, which

7    is one number, and then, ████████████████████

8    ███████████████████████████████████

9    ████████████████████████████████████

10   ██████████████ and I think we quoted Mr. Bernsen's

11   testimony in the paper.  ██████████████████████

12   Biscotti ID.

13          Where it matters is, only the ███████ Biscotti ID is

14   what we think is logged.  They don't -- so Google -- when

15   Google says, "We don't" -- so the Court ordered Google to

16   produce the Google user ID.  What they told us is "We don't

17   have it.  We don't log it, so we can't produce anything."

18   And that's because Google is looking ████████████████

19   ████████████████ and not the Biscotti ID, ████████████

20   ██████████████████████ So that's the first

21   problem.

22          THE COURT:  And can I pause you there --

23          MR. LEVINE:  Yes.

24          THE COURT:  -- just so I understand that, that

25   point?  So, if the ██████████████████████ Google

8

1  user ID is a ████████████████████████

2  ████████████████████████████████████████

3  ██████████████████████████  Is that how it

4  works?

5         MR. LEVINE:  That's what Mr. Bernsen testified to,

6  yes.

7         THE COURT:  Okay.  And does the bidder know

8  anything -- by virtue of that communication of ████

9  ████████████████████████████████████

10 ████████████████████████████████████████

11 ████████████

12        MR. LEVINE:  Well, the bidder is getting lots of

13 other information, so it's a collection of information, but

14 the bidder certainly understands -- I mean, it's no secret,

15 this is in their public protocol -- that the bidder

16 understands they are getting ████████████████████

17 that's a Google ID.  It's not a secret.  It's called a

18 "Google user ID."

19        THE COURT:  Right.  I know that it's a Google

20 user, but do they -- here's where I'm going at.  I thought

21 the Google user ID was device-specific, so that a single

22 user might have multiple Google user IDs associated with him

23 or her, an account holder, that are device-specific.

24        MR. LEVINE:  It is device-specific.  It is

25 device-specific.

9

1          THE COURT:  Okay.  So, then, does the bid RTB

2   participant understand that they are getting a

3   device-specific number that is in turn associated with a

4   particular user, or are you suggesting that that

5   device-specific number, in the milieu of all the other

6   information that either the RTB participant already has,

7   maybe, about that device or otherwise, or gets in the

8   communication from Google, allows that person -- allows the

9   RTB participant to identify a particular account holder?

10          MR. LEVINE:  It's a combination.

11          THE COURT:  Okay.

12          MR. LEVINE:  They could get -- I mean, there's

13   cookie matching.

14          THE COURT:  Right.

15          MR. LEVINE:  There's match tables.  There's user

16   lists.  So there is -- and they could match up to --

17          THE COURT:  The Google --

18          MR. LEVINE:  -- through that Google user ID.

19          THE COURT:  That Google user ID can be used in

20   cookie matching?

21          MR. LEVINE:  Yes.  Yes.  It is used for cookie

22   matching.

23          THE COURT:  Okay.  But am I right?  It's

24   device-specific?

25          MR. LEVINE:  It is device-specific.

10

1        THE COURT:  Okay.  And the ████████████, also

2   device-specific?

3        MR. LEVINE:  Yes.

4        THE COURT:  Okay.  So, when Google says, "We can't

5   produce anything because we don't log it," what they're

6   talking about are those individuals, and what we said in our

7   papers is what we've always been asking for is the Biscotti

8   ID. █████████████████████████████████████

9   ███████████, which is Mr. Bernsen's testimony.

10       THE COURT:  Okay.  And the ████████ is what you're

11  calling "Biscotti"?

12       MR. LEVINE:  It's Biscotti.

13       THE COURT:  Okay.

14       MR. LEVINE:  So that's the -- that's dealing with

15  the Biscotti dispute.  The joining keys, I think your Honor

16  has it right.  There are references to joining keys.  It is

17  an internal mechanism by which Google is able to link up

18  these different IDs so that they can internally put them all

19  together, which we know they do.

20       THE COURT:  So, in other words, if we have an

21  account holder who has a Google ID, which I think you call

22  the "GAIA ID" -- are those the same thing?

23       MR. LEVINE:  The GAIA ID is the Google account

24  holder ID.

25       THE COURT:  Okay.  I think I called that the

11

1 "Google ID" in the order.  Anyway, that, the joining key

2 allows internally for Google to hook up the ████ Google

3 user ID, the Biscotti ID for a given device, with the Google

4 account holder's ID?

5          MR. LEVINE:  That's our understanding of at least

6 some of the joining keys.  There may be other joining keys,

7 but that's our understanding.

8          THE COURT:  But the ones that you want, or the one

9 that you want, is the one that links the Google user ID, or

10 the Biscotti ID, to the Google account holder?

11          MR. LEVINE:  Correct.

12          THE COURT:  That's what you're after?

13          MR. LEVINE:  Correct, your Honor.

14          THE COURT:  Okay.

15          MR. LEVINE:  Now, so the other issue is -- so

16 that's sort of the issue of sort of, definitionally, what is

17 it we think we're looking for, and the second issue is,

18 where is the -- was the issue we raised about ordinary

19 course of business, and the way -- the manner in which

20 Google was producing this information was creating

21 evidentiary problems.

22     I mean, you know, the federal rules don't allow a party

23 to make up things in response to discovery.  We're supposed

24 to get discovery as it's kept in the ordinary -- that's Rule

25 34.  Documents and discovery need to be produced as

12

1  maintained in the ordinary course of business.

2      Google has been insistent throughout this litigation in

3  primarily trying to produce discovery from what are called

4  the "███████," ██████████████████.  The ███████████

5  ████ do not contain this information.  So what they've been

6  doing is -- what we're getting, even notwithstanding your

7  last order, is what we affectionately call internally the

8  "Frankenlog," which is an assemblage of pieces taken from

9  data sources that we don't know what -- they won't tell us

10 what the data sources are.

11     They simply say, "Well, we're primarily going to the

12 ████████ but, to the extent stuff isn't in the █████████

13 we're going to pull them from here, we're going to pull them

14 from there, and then stuff doesn't exist.  We're going to

15 put it all together in here."  That's not evidence.

16         THE COURT:  Well, I mean, that was -- well, let me

17 pause you there, because that was elaborated on in some of

18 my prior orders, and some of the disputes that you all

19 shared with me.  There are different databases from which

20 information was produced.  Google represented that

21 explicitly to me, and, presumably, to you all, since it came

22 up in a joint letter.

23     So that's one thing, and then, secondly, the federal

24 rules do actually allow for discovery to be produced -- you

25 can number it and label it according to your request for

13

1   production, if you want.  So I understand Google to be

2   saying, "We're not going to object that it's not

3   evidentiarily valid," but what -- so my principal concern --

4   I'm not saying I don't care about these issues, the

5   evidentiary issues.

6        I think they can be addressed in a way that just -- I

7   mean, Google just can't object to the fact that this comes

8   from a relevant source, that is, Google, but what I think is

9   my principal concern was allowing the Plaintiff to be able

10  to understand the data that it receives, and associate

11  things that should be associated with a particular account

12  holder easily, without undue burden.  That was what my

13  concern was.

14        MR. LEVINE:  The elements of our claim, the

15  elements of proof of our case, go to the -- directly to the

16  issue of "Is it capable of being reasonably associated?"

17  This isn't just "We need to put data together for some other

18  purpose."  The element of the claim is -- whether this is

19  personal information or not turns, in part, on whether it's

20  capable of being reasonably associated.

21        Google is scrambling these eggs specifically so, on

22  class certing of the merits, they can get up and say,

23  "Plaintiffs lose, because this information is not capable of

24  being reasonably associated, and look at all the steps we

25  had to go to, and look at all the data sources we had to go

14

1  to to find this information and give it to the Plaintiffs."

2      So it's not a matter of whether they'll object to it

3  being introduced.  It's, they're creating a defense that

4  doesn't really exist in this case, and the reason it doesn't

5  exist is there are actually logs in which all of this

6  information is contained in the ordinary course of business

7  at Google, and Google has been adamantly refusing to produce

8  those logs, or to look for those logs, for two years, and

9  the way to resolve this is to order them to produce this

10 information from those logs, and then we, hopefully, will

11 not be here ever again on this issue.

12         THE COURT:  All right.  I am not going to reopen

13 all of my orders on these issues about logs that we had

14 before, but I --

15         MR. LEVINE:  That is -- yes.

16         THE COURT:  Here's what I understand, is the

17 thesis that the Plaintiffs have.  So, when the question

18 comes up of what makes something personal information of a

19 user or an account holder, which has been raised a number of

20 times before me, what I understand the Plaintiff to be

21 saying is that you believe that the sort of inherent

22 relationship between that information, you know, a

23 particular item of information and an account holder, makes

24 the information the personal information of the account

25 holder.

1    Google disputes that, but the key, in my mind, is

2    whether there is disclosure of personal information.  That's

3    a debate I am not going to resolve.  That's going to be

4    resolved by somebody else.  So I am very interested in

5    making sure that you have the discovery that you need in

6    order for you to make your argument, even if it's something

7    that Google doesn't agree with.

8        The problem that has been throughout this case -- and I

9    went back and looked at the orders that were all cited to

10   me -- is that the arguments about this point, from a

11   discovery perspective, have not been well developed in the

12   briefing, and I even made those remarks a couple of times.

13       So the challenge that you have is that you all are

14   explaining to me for the first time today the difference

15   between "Well, the ███████████ is what's called this,

16   and it's logged, and ███████████████████ is what's

17   called this other number, and this is not -- this is

18   logged."  The difference between what's logged and what's

19   not logged, this is the first time I'm hearing it.

20       So, when Google -- I'm going to get to Google in a

21   moment -- says, "Well, you ordered one thing, and then you

22   ordered the opposite thing the next day, you know, two hours

23   later," it's because you haven't explained to me what it is

24   that you mean by these different terms.  So that's why I

25   wanted to have the hearing, because I got this sense, as I

16

1  frequently do in this case, that the parties are talking

2  past each other, that there's information that you both

3  know, that you're not sharing with me, that doesn't show up

4  in the papers, that I only learn when I have these hearings.

5      So I appreciate you walking through that information,

6  and I'm going to give Google an opportunity to explain its

7  view, but I did think, when I was -- when I decided the

8  question of Google user ID in the order that's at Docket

9  285, that I was deciding to order something if it was

10 logged, and if it wasn't logged, I wasn't ordering it,

11 because how could I?  So now I understand that what you want

12 is something that's not actually literally sent to an RTB

13 participant in a bid request.  You want the thing that that

14 thing that's sent to an RTB participant ███████████████████

15 ███████████████████████, right?

16          MR. LEVINE:  Yes.  I mean --

17          THE COURT:  That's what you want?

18          MR. LEVINE:  Yes.  It's considered -- within

19 Google, it's considered the same ID.  So it is literally

20 sent.  It's just an ████████████████ of it.  I mean, if you

21 look at Doctor Bernsen's testimony, he's pretty clear.  He's

22 like, "Yes, it's just the Biscotti."  I mean, that's what he

23 says, "It's just the Biscotti."

24          THE COURT:  Right.

25          MR. LEVINE:  So, within Google, it's the same

1  thing.

2        THE COURT:  Right.

3        MR. LEVINE:  ████████████████████

4  ████████████████████████████████████

5        THE COURT:  Okay.  But nobody explained that to

6  me --

7        MR. LEVINE:  And part of the --

8        THE COURT:  -- before.

9        MR. LEVINE:  It's part of the -- and part of the

10  problem -- these are very technical, complicated issues, and

11  it's --

12        THE COURT:  I understand it.

13        MR. LEVINE:  -- hard to get them down in 1,500

14  words.

15        THE COURT:  Well, you know, we've had many

16  hearings, many sessions, and I think you can write those

17  things, just like what you said.  You can write those

18  things.  Maybe you can leave out some of the other things

19  that you say, and you'll have plenty of space for those

20  things.  So, again, just an observation.

21     I really am trying to get it right in terms of what

22  needs to be produced, but we are not revisiting the entirety

23  of the -- now I even forget what they were called, these --

24  all these gazillion other databases.  We're not revisiting

25  that whole thing again.  I'm just focusing on the account

18

1  identifiers right now.

2       MR. LEVINE:  But the account identifiers only

3  exist on those other databases.  That's the problem.

4       THE COURT:  Well, but this whole dispute about

5  what was sent and what wasn't sent is not a dispute in and

6  of itself.  It relates to other things that I was ordering

7  be produced.  So it's not as if we're talking about these

8  account identifiers in a vacuum.  There is an underlying

9  collection of information that was responsive either to an

10 order or a request for production that I ordered be

11 produced.

12      So I'm not sure -- part of the problem is, often I get

13 these disputes and they are completely untethered to any

14 request for production, and so then I look at my order, and

15 my order is, you know, talking about things that used to be

16 related to a request for production, but it's the order

17 based on that dispute, and then it kind of, you know,

18 evolves from there, but it's often very difficult for me to

19 understand, like, what is the "it" that you're after?

20      MR. LEVINE:  So --

21      THE COURT:  And the answer can't be "Everything

22 that's relevant."  That's not the answer.  So this is the

23 frustration that I often have, is that there is information

24 that Google maintains about account holders that is never

25 shared.  Then there is information Google maintains about

19

1  account holders that is shared.

2      Then there's information that Google maintains related

3  to account holders that, if it is shared, it allows the RTB

4  participant to infer things based on information the RTB

5  participant has about the account holder.  There's a whole

6  cookie-matching thing.  I get that.  I get that that is a

7  legitimate area of discovery, but it's not everything in

8  every database everywhere.  So that's the challenge that we

9  have here.

10      MR. LEVINE:  But, if we don't get the Google GAIA

11  ID, the Biscotti ID, and the joining keys from the ██████

12  ████, the ████████████████████ -- or they've also

13  been referred to as "████████████████ -- we cannot prove

14  our case.  We cannot prove the linkage between what is

15  disclosed -- we can't be any clearer.  We need this

16  information, and we need it from the ███████.  It's the

17  only place in which all of this information, in the ordinary

18  course of business, exists, as far as we know, at Google.

19      That's the only -- they can't keep doing what they're

20  trying to do, which is to sort of piece it together here and

21  piece it together there, and say some of it doesn't exist,

22  or "Well, we looked for the GAIA IDs only, based upon the

23  information the named Plaintiffs provided."  They have this

24  information.  They have the Biscotti IDs.  They have the

25  GAIA IDs.  It's all in these logs.  They don't want to

20

1  produce these logs because it tends to prove our case.

2       THE COURT:  I don't have my prior order where I

3  dealt with the parties' -- I don't have in front of me my

4  prior order where I dealt with the parties' dispute about

5  the different databases.  I know this came up.  I know there

6  was some information produced from some of these ████████

7  ████, and not from others.  I resolved that dispute.

8      Again, we're kind of getting far afield from what we're

9  trying to deal with today.  I appreciate the context, but I

10 don't know what to tell you if the problem is that you

11 failed to explain to me why you need the information from

12 the particular database in the first place.

13      MR. LEVINE:  I think we've been trying to explain

14 that for two years, your Honor.

15      THE COURT:  Okay.  Yes.

16      MR. LEVINE:  With due respect, we have.

17      THE COURT:  Okay.  But have you seen my orders

18 where I say that -- there's a request that says -- or

19 there's an argument in a paper that says, "This is

20 relevant," and it's completely unsupported or untethered.

21 It's completely conclusory.

22      Then I have these hearings, and I invite you to explain

23 to me, and sometimes, for the first time in a hearing, I

24 actually get an explanation.  This is the dilemma that I've

25 had.  So, you know, I am trying to make sure that you have

21

1  the information that you need in order to do class cert.

2  There's only so much I can do with the information that you

3  all present.

4           MR. LEVINE:  Well, your Honor, we --

5           THE COURT:  So let me shift to Google.

6           MR. LEVINE:  Okay.

7           THE COURT:  I'll come back to you, but let me hear

8  from Google about -- and let's try to focus it down a little

9  bit now.

10      Now, Mr. Somvichian, the source of the ambiguity is the

11  colloquy that you and I had, at least that's how I interpret

12  it, and this was at the hearing that we had concerning the

13  order that issued at Docket 487, and I think you're telling

14  me I misunderstood your remark about producing the Google

15  user ID and the joining keys, and I'm not really sure I did.

16      I asked you a very specific question.  I asked, "Could

17  you not have included in the fields that you were producing

18  as internal web site verticals data the Google account ID

19  and Google user ID and any joining keys?"  And you answered,

20  "We could have.  We could have included additional fields."

21  And the discussion went on from there.

22      I certainly understood you to say on behalf of Google

23  that it could be done, and so that's what I ordered, but

24  what I understand now is that maybe you were answering a

25  different question than what I was asking, and I didn't

22

1 catch it at the time.

2      So that dismays me somewhat, but, as I said to the

3 Plaintiff, my goal is to make sure the information that they

4 have they can reasonably use, without a lot of shenanigans

5 and a lot of jumping through hoops, and I don't understand

6 why the information can't be produced.  So let me put it to

7 you.  Why can't it be produced?  And the "it" being the

8 Google user ID that they're calling "Biscotti."

9           MR. SOMVICHIAN:  So, your Honor, I think, to be

10 clear, when we had this exchange last time -- and I

11 apologize for any disconnect we might have had, but I tried

12 to be clear that I was setting aside this issue of joining

13 keys, because I didn't know what they were referring to,

14 specifically.

15      With respect to the identifiers, I did say we would

16 look into what identifiers were available to be produced.

17 We have produced the account ID.  That's the guide.  We can

18 at least agree on that, and that has been produced.  That's

19 a non-issue.

20      So the only question, then, is what are the other

21 identifiers that can be produced?  The Google user ID, which

22 is the ████████████████████ that goes out in the

23 bid request, that's ████████████ that goes out in the

24 bid request.  Biscotti is not sent with the bid request.  So

25 the Google user ID, which we have previously discussed --

23

1  we've litigated in that context, as the data that's

2  initially sent in the bid request -- we've confirmed that

3  multiple times, your Honor.  That is not included in the bid

4  request.

5          THE COURT:  Because you don't keep track of it.

6          MR. SOMVICHIAN:  It's not logged.  It cannot be

7  produced, and there's --

8          THE COURT:  Okay.  But let me pause you on that

9  point.  So the Google user ID is the ███████████ of

10  the Biscotti ID, right?

11          MR. SOMVICHIAN:  There's a complication.  Can I

12  give --

13          THE COURT:  Okay.  What's the complication?

14          MR. SOMVICHIAN:  So there is a Biscotti.  It is

15  not associated with a device.  It's a cookie value

16  associated with an instance of a browser.  Okay.

17          THE COURT:  Okay.  Wait a minute.  How is it not

18  associated with a device?

19          MR. SOMVICHIAN:  There may be other device IDs

20  associated with a particular phone, say.  But a Biscotti is

21  a cookie, and it's --

22          THE COURT:  Okay.  Well, maybe I got it wrong,

23  but, in my order, I wrote that:

24              "Google doesn't dispute that the bid

25              requests sent to an RTB participant

24

1             include the Google user ID associated

2             with the specific device."

3     Was I wrong about that, characterizing it that way,

4  that you didn't dispute that?

5             MR. SOMVICHIAN:  It's not unique to a device, your

6  Honor.  It's unique to an instance of a browser.

7             THE COURT:  Okay.

8             MR. SOMVICHIAN:  But it is a unique pseudonymous

9  identifier associated with a browser.  What goes out in the

10 bid request, again, is called the "Google user ID." ▮▮▮

11 ▮▮▮▮▮▮▮▮▮▮▮ the Biscotti, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

12 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

13 ▮▮▮▮▮▮▮▮     What is maintained internally at Google is

14 either the ▮▮▮▮ Biscotti value, ▮▮▮▮▮▮▮▮ Biscotti value, ▮▮

15 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

16 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

17     The reason that the Biscotti (sic), even as it's

18 maintained internally at Google, as either the ▮▮▮▮▮▮▮▮

19 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

20 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

21 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮

22 so that the Biscotti, which is intended to be a pseudonymous

23 identifier, cannot then be linked to the account

24 information.

25             THE COURT:  Okay.  So let's pause there for a

25

1 moment.

2          MR. SOMVICHIAN:  Yes.

3          THE COURT:  Let's talk about the Biscotti ID, so

4 the one that's not sent to the bid request -- or the RTB

5 participant in a bid request -- and is that specific to an

6 instance of a browser, or is that more fundamental?  What is

7 it related to, the Biscotti ID?

8          MR. SOMVICHIAN:  Yes.  It's a unique identifier

9 associated with an instance of a browser.

10          THE COURT:  The Biscotti ID?

11          MR. SOMVICHIAN:  Yes.

12          THE COURT:  Okay.

13          MR. SOMVICHIAN:  So, if somebody clears their

14 cookies from their browser, that Biscotti no longer exists.

15          THE COURT:  Okay.  So the Biscotti is

16 maintained -- so let's say I'm logged in and then I log out,

17 so I've closed my browser.  When I open my browser again,

18 new Biscotti?

19          MR. SOMVICHIAN:  No.

20          THE COURT:  Okay.  So it's not an instance of a

21 browser in the kind of open and close browser, is it?

22          MR. SOMVICHIAN:  Yes.  The opening and closing --

23          THE COURT:  Doesn't matter.

24          MR. SOMVICHIAN:  -- or new tabs -- right.

25          THE COURT:  Doesn't matter.  It's only if I clear

26

1 my cookies?

2          MR. SOMVICHIAN:  Yes.

3          THE COURT:  But if I add a cookie, new Biscotti

4 ID?

5          MR. SOMVICHIAN:  If you did what, your Honor?

6          THE COURT:  Add a cookie, go somewhere else, a

7 cookie gets added.  New Biscotti ID?

8          MR. SOMVICHIAN:  If you're still using that

9 browser, it's still the same Biscotti value.

10          THE COURT:  No.  Okay.  And that is associated, in

11 turn, with a particular account holder?

12          MR. SOMVICHIAN:  No.  That's precisely what it's

13 not.  So the Biscotti is intended to be, again, a

14 pseudonymous identifier that can be used to correlate with

15 activity when somebody is signed out.  So, in the example

16 that you gave --

17          THE COURT:  When somebody is signed out, but

18 Google doesn't know -- has no way of knowing who that

19 somebody is, because it's not linked to an account holder?

20          MR. SOMVICHIAN:  No.  The data is maintained

21 specifically to prevent that.

22          THE COURT:  Within Google?

23          MR. SOMVICHIAN:  Yes.  So, if you're signed out of

24 your account, there is a Biscotti associated with that

25 activity.  Whenever a user is signed in to their account, so

27

1  that there are records associated with a GAIA ID, any

2  Biscotti value associated with that activity is █████

3  ███████████████████████████ so that the two cannot be

4  associated with one another.

5      So there's a GAIA ID linked to an account, and all the

6  other information that's available in somebody's account,

7  and then there's a pseudonymous identifier, which is the

8  Biscotti value, and the two can't be connected to each other

9  ███████████████████████.

10          THE COURT:  So, if I said, "I want you to produce

11  the Biscotti ID associated with named Plaintiff account

12  holder with this Google ID," you're just telling me you

13  can't do it because you don't know?

14          MR. SOMVICHIAN:  If all they gave us was their

15  account information, we cannot trace it to the actual

16  Biscotti.

17          THE COURT:  So how would you be able to trace it

18  to the Biscotti?

19          MR. SOMVICHIAN:  They --

20          THE COURT:  What would you need?

21          MR. SOMVICHIAN:  They provided us some Biscotti

22  values from their own browsers.  They had their technical

23  experts help their Plaintiffs, gave us some Biscotti IDs,

24  and from that, we were able to search records and produce

25  data that could be identified.

28

1          THE COURT:  And you've already done that?

2          MR. SOMVICHIAN:  Yes.

3          THE COURT:  Okay.

4          MR. SOMVICHIAN:  And those records, again, cannot

5 be associated with the GAIA.  Flip it around, if all we have

6 is their account information, we can tie that to a GAIA.  We

7 can use that to search for data, but that will not have an

8 actual Biscotti value.  It will only have this ███████

9 value, which is a meaningless string of numbers that doesn't

10 tie to the Biscotti identifier.

11          THE COURT:  Well, ████████████████████

12 ████████████████████████████    ████████████████

13 ████████████

14          MR. SOMVICHIAN:  So now we're talking about these

15 ████████ keys that we were talking about.

16          THE COURT:  Is that what the joining keys are?

17 ████████████████

18          MR. SOMVICHIAN:  ██████████████████

19 ████████████████████████████████████████████

20 ████████████████████

21          THE COURT:  Right.

22          MR. SOMVICHIAN:  That's this ████████ your Honor,

23 that we use, that we provided, that was ████████

24 ████████████    They're using this name of a

25 joinability key, which is really just a ████████████████

1 ██████████████████████████████████████

2 ████████████████████████ Biscotti value.

3      THE COURT:  So you're telling me a joinability key

4 is different from a joining key?  Nobody talked to me about

5 a joinability key, if I'm not mistaken, last time.

6      MR. SOMVICHIAN:  When we were here last time, we

7 were talking about joining keys in the context of -- if you

8 recall, we produced certain data.  Then we produced the

9 verticals data.  They said they couldn't match them up, they

10 couldn't join them.

11      THE COURT:  Right.

12      MR. SOMVICHIAN:  That's the context in which we

13 were talking about a joining key, and we've solved those

14 issues, your Honor.  There's no further dispute here that

15 they can't piece together the different pieces of data that

16 we've produced and correlate them to one another.

17   We've fully addressed that issue.  It was, we believe,

18 fully addressed by the production of the ████████  We've

19 now also included the GAIA ID, where available.  We've

20 included names, so that there's no ambiguity as to what

21 record is associated with which Plaintiff.  And so the

22 purpose for which all of this was previously discussed has

23 already been fully solved.

24      THE COURT:  Yes.

25      MR. SOMVICHIAN:  So we're getting really far

30

1 afield here from any discovery request.  They've never asked

2 for the ██ internal Biscotti.

3          THE COURT:  Well, they have asked for the Google

4 user ID, because I wrote a whole order on that.  I didn't

5 know what I was talking about, apparently, because nobody

6 told me there was the ████████████ which is called a

7 "Google user ID," and then there's the Biscotti thing, which

8 is something else, but related.

9     So that's the problem, is I did not appreciate the

10 nuance or distinction that you all are talking about right

11 now.  For whatever reason, my order did not account for that

12 detail, and so, when I was ordering what I was ordering, I

13 didn't know there were two different things.  Let me just

14 put it out there that way.  I did not appreciate there were

15 two different things, or two different kinds of things.

16          But what do we do about that?  Right?  So, if I ask you

17 the question, "Can you produce the Biscotti ID associated

18 with whatever other named Plaintiff data production you've

19 already made?," which I have already ordered and I'm not

20 revisiting, why can't you do that?  Because you can't

21 connect it up, is that what you're telling me?  There's no

22 way to connect it to the data that you've already produced?

23          MR. SOMVICHIAN:  We can only do it for the records

24 that were found based on the Biscottis that they provided.

25 For those Biscottis that they gave us, we identified certain

31

1  data, and we've produced it.

2          THE COURT:  Okay.  Let me just take -- can I just

3  ask just a quick question for the Plaintiff?  For the

4  Biscotti IDs that you did identify, how did you identify

5  them?

6          MR. LEVINE:  They came from our named Plaintiff,

7  from the data -- our clients were able to pull their own

8  data from Google.  I mean, we gave it to Google, and we

9  identified Biscottis that showed up there in their data.

10          THE COURT:  And you've done that for all of the

11  named Plaintiffs?

12          MR. LEVINE:  Yes.

13          THE COURT:  Okay.  But have you -- so here's where

14  I'm driving to.  If you've already produced the information

15  associated with the Biscotti IDs based on the named

16  Plaintiff data the Plaintiff has provided, what are we

17  talking about that hasn't been produced?

18          MR. SOMVICHIAN:  Are you asking --

19          MR. LEVINE:  I'm not sure who you're looking at.

20          THE COURT:  I'm just wondering -- yes.  I'll ask

21  Google that question, their understanding, and then I'll

22  come back to you, Mr. Levine, and find out what your answer

23  is.

24          MR. SOMVICHIAN:  Okay.  So, your Honor, what we're

25  talking about now is the larger set of -- that there are

32

1 more records that we were able to identify by using their

2 account information.  So they gave us some Biscottis.

3 Biscottis don't live very long.  They can be deleted.

4 Cookies can be cleared.

5      So what we were able to find we've produced, but the

6 bulk of the data records that we were able to find were

7 based on the account information they gave us.  So they gave

8 us their Google account information.  We tie that to a GAIA,

9 and then we can search using that GAIA for records

10 associated with browsing activity when they're signed in to

11 their account.  We've produced millions of records like

12 that.  For those records, there is no raw Biscotti

13 associated with those records, by design.

14           THE COURT:  Okay.  That's what I'm trying to

15 understand.  But we're still only talking about named

16 Plaintiff data, right?

17           MR. SOMVICHIAN:  Correct.

18           THE COURT:  Okay.

19           MR. SOMVICHIAN:  And so, for those records, again,

20 they're signed in.  They're able to provide their account

21 information.  We're able to search using the GAIA.  We've

22 produced that information, millions of rows of data.

23           THE COURT:  And when you've done that, in that

24 cache of information that you've produced, have you also

25 included the Google ID that is associated with that data, so

33

1  that they can match it up?

2          MR. SOMVICHIAN:  It doesn't exist, your Honor.

3          THE COURT:  You can't do that association?  Even

4  if you have the Biscotti ID, you can't then say, "Okay.  Now

5  I know it goes to that Google ID"?

6          MR. SOMVICHIAN:  No.  So that record that -- any

7  record that we can find based on GAIA for somebody who was

8  signed in a the of that browsing activity is not associated

9  with the actual Biscotti value, by design.

10          THE COURT:  And the same goes the other way?

11          MR. SOMVICHIAN:  Yes.

12          THE COURT:  If you have the Biscotti value, you

13  can't get to the Google user ID --

14          MR. SOMVICHIAN:  Correct.

15          THE COURT:  -- the GAIA ID --

16          MR. SOMVICHIAN:  That's correct, your Honor.

17          THE COURT:  -- for that instance of the browser

18  when that person was signed in?  I thought you could.

19          MR. SOMVICHIAN:  What we do have is the ████████

20  ████████  Biscotti value.

21          THE COURT:  Okay.

22          MR. SOMVICHIAN:  So, to be clear, for at least

23  some of the records that we produced, that we found using

24  the GAIA increments, there could then be an ████████

25  ████████  Biscotti value, and these joinability keys that

34

1  they're talking about are the keys that could potentially be
2  used ████████████████ but, again, that linkage is not
3  done by design, by policy, and these ██████████████
4  because they are not used for that purpose, ██████████
5  ███████████████████ and for all the time sample
6  periods that they've asked for, the ███████████ no
7  longer exist.
8           THE COURT:  And that's what you're calling
9  "joinability," "joinability" as opposed to "joining"?
10          MR. SOMVICHIAN:  They are called "Biscotti
11  joinability keys" in some contexts.  I'm just calling them a
12  "██████████ for today because that's how I think about
13  them.
14          THE COURT:  Right.  That's fine.  And I just
15  wanted to --
16          MR. SOMVICHIAN:  Yes.
17          THE COURT:  Okay.
18          MR. SOMVICHIAN:  So, to be clear, your Honor, this
19  dispute really -- there's a practical endpoint to this,
20  which is that there's actually no data to ██████ here.  The
21  time sample periods that they've asked for, the most recent
22  one, is a date -- is a week in October 2022.  The ████████
23  keys, because they are not used to ██████this value, ████
24  █████████████████████████████████████████████████████
25  ████████████████████████████████████████

1 ██.  So there's nothing to ████.

2     So, even if we grabbed these internally ███████

3 values, added them to the rows of data that we're finding

4 based on their GAIA, there's no key that's associated with

5 that ███████████   So now it's just a meaningless set of

6 numbers that you can't convert back to the original

7 Biscotti, and, again, that's by design, because these things

8 are meant not to be --

9         THE COURT:  I think I understand that point.  I

10 cut you off, though, when I was exploring what you were

11 meaning.  Is there something -- I believe you said there was

12 another part that you wanted to share with me about this, or

13 something else that you wanted to share with me about this

14 question of the significance of this data field, this

15 Biscotti data field, and whether it should be produced,

16 because you heard the Plaintiff say, you know, "Google's

17 production has caused us difficulty in being able to present

18 our case, because the manner in which the information has

19 been produced doesn't allow us to present to the Court" --

20 this is my words -- "present to the Court the associations

21 that actually exist between these different pieces of data,

22 so that we have difficulty making our case that this is

23 personal information of a user."

24     They ought to be able to present that argument.  Even

25 if you think they're wrong, they ought to be able to present

36

1  it fully.  Okay?  So I'd really like to understand your

2  response to that concern.

3          MR. SOMVICHIAN:  Well, your Honor, remember where

4  this all started, your order back in August of last year.

5  The premise was "Produce information about the named

6  Plaintiffs that is shared with RTB participants."  Okay?

7      The internal Biscotti ████████████████████████████

8  ████████████████████████████  These joining keys are not

9  shared.  They're not needed for them to understand and work

10 with the data in terms of joining up different data sets and

11 different productions, so we're kind of past the purpose for

12 which this was all discussed previously.  So they're asking,

13 your Honor, for something different.  It's not related to a

14 specific request or specific aspect of any prior order, and

15 we're really far afield from any of the prior requests or

16 orders that led us here today.

17         THE COURT:  I understand that point, and, you

18 know, I just went through kind of the three categories of

19 information that I thought were at issue when I was talking

20 to Mr. Levine, which is stuff that's maintained internally,

21 stuff that's explicitly shared, stuff that allows an

22 inference by the RTB participant.

23         MR. SOMVICHIAN:  And --

24         THE COURT:  That's how I'm thinking of it in the

25 three buckets, and the last two were things that I thought

37

 1  were fair game for discovery.

 2          MR. SOMVICHIAN:  Yes, your Honor.

 3          THE COURT:  So I want to make sure that you have

 4  really fully produced on those dimensions.

 5          MR. SOMVICHIAN:  We have, but the ███ internal

 6  Biscotti, ██████████████████████████████████████████

 7  don't go to any of those aspects, and I pointed out, your

 8  Honor, what you clarified in your August 26 order, ECF

 9  314 -- I'm quoting at page five:

10          "Plaintiffs have not shown they are

11          entitled to discovery of all information

12          Google maintains about an account holder

13          solely based on Google's internal

14          linking of information with an account

15          holder."

16      So that's the premise that we've been working from.

17          THE COURT:  Right.

18          MR. SOMVICHIAN:  Now we're dealing with not actual

19  internal linking, but this hypothetical linking that they

20  want to try to demonstrate.  They want to be able to say

21  that "Well, these ██████████████████████████████████████

22  ███████, and, theoretically, if some Google employee

23  violated internal policy and were able to access these keys,

24  █████████████████████████████, they could potentially do

25  this linking.  That doesn't happen."

38

1    So we're even further afield from any theory of

2  relevance here when the premise that we've been working from

3  is that actual internal linking is not within the scope of

4  discovery, and now they're asking for hypothetical or

5  speculative potential for linking, which is the only thing

6  that these ████████████ could go to, but, in any case,

7  your Honor, again, ██████████████████████████

8  ████████████████████ they don't even exist for any of

9  the data records that they've asked for.

10          THE COURT:  All right.  Thank you, Mr. Somvichian.

11          Let me turn back to Mr. Levine, and I'd like to

12  give you an opportunity to respond, but I'm particularly

13  interested in this, I guess I'll call it a practical point,

14  which is Mr. Somvichian says, "We can't actually produce

15  this information, because it doesn't exist in the form that

16  you say you need and is responsive."  So can you address

17  that one, amongst the other things you'd like to respond to?

18          MR. LEVINE:  Yes.  That's not true.  I mean, I

19  just be any clearer than that.  The ████████ include all of

20  this information.  That's why we've been seeking them for

21  the last two years.  All of this -- what Mr. Somvichian is

22  talking about, and what Google keeps back to, the ████████

23  is the ████████ don't include this information.  So that

24  allows them, when -- they say, "Well, it's not there.  It's

25  not there.  It's not there."

39

1          Now, if they spoliated it, that's a separate issue, and

2    we'll get to that when we finally get to spoliation, which

3    isn't today, again, but we know it's not in the ████ █.

4    That's why we've been asking for the ███████████████

5    ███████████████████ for the last year and a half,

6    and why Google is insisting on not searching or producing

7    them.  All of this information that Mr. Somvichian just said

8    does not exist exists together, linked in the ████████

9          THE COURT:  Okay.  Let me just pause you there.

10   What about the ████████

11         MR. SOMVICHIAN:  That's not correct, your Honor.

12   They put in two examples of that, or referred to it in their

13   letter brief.  Those examples actually show what we're

14   describing to you.  Where there's a GAIA, there is an

15   ████████████████████████ of the Biscotti.

16   The two, in a raw form, don't exist together, and with

17   respect to production from the --

18         THE COURT:  Wait, wait.  What is that?  If they're

19   in this log together, how can they not exist together?

20         MR. SOMVICHIAN:  ████████████████████

21   ██████████████████ GAIA ██████████████████████

22   ███████████████████ of Biscotti, not the two

23   actual values.

24         THE COURT:  Right.  Let's say you produce that.

25         MR. SOMVICHIAN:  We are going to that log for the

40

1  time samples that they've asked for.

2         THE COURT:  But let's say you produced the GAIA ID

3  and this ▮▮▮▮▮▮▮ that you think is totally unusable.

4  Let's say you produce that to the Plaintiff, and they can't

5  do anything with it, because ▮▮▮▮▮▮▮▮▮.  I mean, so

6  then you can argue that point to Judge Gonzalez Rogers, and

7  they can argue whatever they want to argue about it, but you

8  can tell her it doesn't mean anything, because they don't

9  connect.  Why not just produce it to them and make your

10  respective arguments?

11         MR. SOMVICHIAN:  But what would the point of that

12  be, your Honor, when they're --

13         THE COURT:  To give them an opportunity to make

14  their argument, and have you make your counter-argument, and

15  Judge Gonzalez would decide.

16         MR. SOMVICHIAN:  I would go to -- the premise that

17  we've been working from is that it has to tie to some actual

18  request that they've made --

19         THE COURT:  Well, I mean, that is --

20         MR. SOMVICHIAN:  -- and is not shared in the

21  Biscotti value or ▮▮▮▮▮▮▮▮ Biscotti value.  It

22  does exist.  It could potentially be identified.  But it's

23  not something that they've asked for, and it's not something

24  that comes within the scope of your orders, given the

25  categories, what we've identified, because they are never

41

1   sent to the participants.  It doesn't show the details of

2   that sharing.

3           THE COURT:  Yes.  I mean, I am with you when you

4   say it's not within the scope of my order and I never

5   ordered it.  That's true, and there's also not a document

6   request for it.  That is also true, and that's a fundamental

7   problem with how this case has been litigated, but I really

8   am trying to get to the nub of things, and what I'm asking

9   very directly is for the named Plaintiff data.

10      If you're already producing the Google ID, the GAIA ID,

11  and you produce this ███████████, also, that goes with

12  it, for whatever the named Plaintiff data set is, wouldn't

13  that allow you to make whatever argument you want to make to

14  the Court, and allow the Plaintiff to make whatever argument

15  they want to make to the Court about the significance of

16  that data field, as opposed to not having anything about

17  which to make that argument?

18      Like, is there some -- because, before, I was

19  understanding you to say, "We can't actually produce the

20  Biscotti ID, ████████████████.  We can't produce that,

21  because there's no way to link it up," but you do have

22  something that associates this ██████████████ of it,

23  right?  And maybe you no longer have the joinability key or

24  the ████████ key, but you have the value in a field,

25  right?

42

1    So doesn't this help make your argument that these

2  things are deliberately, by design, disassociated so they

3  can't be linked up?  Isn't that a powerful argument for

4  saying it's not personal information that's shared?

5        MR. SOMVICHIAN:  And our witnesses have explained

6  that, and there are other documents that bear on that, your

7  Honor.

8        THE COURT:  Okay.  But in terms of production of

9  the data field, what if you just produced it?

10       MR. SOMVICHIAN:  Your Honor, if you ordered it, we

11 would produce it, and make all the arguments you're

12 referring to.  I go back to the point that it's not covered

13 by a document request or an existing order.

14       THE COURT:  Yes, which is why it hasn't been

15 produced so far, I suspect.

16     But let me turn back to Mr. Levine, because it is

17 true -- when I go back and look at all the orders that you

18 all cited me in your letter, I have to track it through.  I

19 ordered documents sufficient to show X, and sufficient to

20 show Y, and I looked at what requests you had cited to me,

21 and then everything was based on "Well, you ordered this,"

22 and then you were fighting over the interpretation of my

23 words, which are my words, not what somebody put in a

24 document request.  So, you know, we end up here,

25 unfortunately, after a circuitous path, but I would like to

43

1 understand, if you did get the information that Mr.

2 Somvichian says is available, this ████████ is that

3 sufficient?

4        MR. LEVINE:  If we get the GAIA ID, the Biscotti

5 ID, any joining information they have from the ██████ in

6 the form in which they're maintained in those logs, not some

7 Excel spreadsheet, but in the form in which they're

8 maintained in the ordinary course of business, that

9 certainly gets us -- I mean, it would be good if all of the

10 other information, which also, by the way, exists in these

11 ██████ together -- everything they produced is in the

12 ██████

13     So the simplest way to get a complete business record

14 production of everything that they've been ordered to

15 produce to date for the named Plaintiffs is to order them to

16 just produce it from the ██████ and I will push back on

17 the notion that we didn't serve document requests on this.

18 These are the very first document requests we served in the

19 case --

20        THE COURT:  Okay.  So tell me what --

21        MR. LEVINE:  -- and I will push -- I don't have

22 them in front of me, but they are -- we asked for the named

23 Plaintiff data, all data associated with a named Plaintiff.

24        THE COURT:  Right, right.  But that's the problem,

25 is you did the kitchen sink approach, "all data associated

44

1  with the named Plaintiffs."

2          MR. LEVINE:  Document request number 42.  Thank

3  you.

4          THE COURT:  Okay.  So, 42 is in one of my orders.

5          MR. LEVINE:  And I will push back on the notion

6  that your Honor didn't order them to produce information

7  which should have been produced from the ████ ███    They

8  were required to produce in the ordinary course of business.

9  You shouldn't have to say that in an order.  If the stuff

10 only exists there, then they have to produce it.

11         THE COURT:  Let's go back to my original question,

12 which is where I'm really trying to drill down, which is,

13 Mr. Somvichian says Biscotti ID, ██████████████████████

14 doesn't exist.  Biscotti ID ████████████████████████████████

15 does exist.  If you got production that had the GAIA ID and

16 the Biscotti ███████████████████████ whatever that's

17 called, which is what they say is available, is that going

18 to be the kind of information you need to make the argument

19 that you want?

20         MR. LEVINE:  I think so.

21         THE COURT:  Okay.

22         MR. LEVINE:  If I refer your Honor to the -- there

23 was a March 1 letter brief on bid request fields.  I will

24 get you the Bates number for it.  I believe it's --

25         THE COURT:  No, just give a docket number.  That's

45

1  all I need.

2          MR. LEVINE:  Yes.

3          THE COURT:  But it's March 1 of 2023, and it's the

4  letter brief?

5          MR. LEVINE:  On bid request fields, and let me

6  just see.  Hang on.  Hang on.  Hang on.  I'm sorry.  I think

7  it's 434.  Four thirty-four.

8          THE COURT:  Okay.  Yes. I have it right in front

9  of me, and it's my order at Docket 485, some of which I

10 filed under seal, deals with the bid -- I'm very familiar.

11 I have that order in front of me.

12         MR. LEVINE:  Okay.  So I was referring to,

13 actually, the joint letter brief, if I could, your Honor.

14         THE COURT:  Okay.  Got it.

15         MR. LEVINE:  And footnote five identifies, I

16 think, ███████████ that we identified that we said were

17 the proper source for this particular information, in

18 particular, on the Google user ID and the GAIA ID, the

19 linkage.  Those are the logs that, if they are searched and

20 produced as maintained in the ordinary course of business,

21 will give us -- and they may have the ████████, because

22 some of them are Biscotti-keyed equivalent logs.

23     So those may have the -- we don't know.  We haven't

24 seen them.  But they will have the Biscotti, and they may be

25 the ██████ Biscotti, ███████████ Biscotti.  We

46

1 don't know, but that's --

2       THE COURT:  And this is footnote five in Docket

3 434?

4       MR. LEVINE:  Yes, your Honor.

5       THE COURT:  Okay.  So I have my order in front of

6 me, and what I said about it -- I don't have your letter in

7 front of me, but I have -- in the discussion section that

8 begins on page three, I say:

9           "Google is correct that the Court's

10          August 26, 2022, order requires Google

11          to disclose data sufficient to show the

12          information specific to the named

13          Plaintiffs that Google disclosed to RTB

14          participants."

15     The order does not require Google to disclose

16 information it maintains internally but does not disclose to

17 RTB participants, and it does not require Google to disclose

18 information it may share for purposes other than RTB, and

19 I'm not going to say out loud what the other -- I now have

20 in front of me the name of the category of the logs, but you

21 were relying exclusively on my order and what I ordered.

22     So, when I wrote this order, which is the resolution of

23 the dispute at Docket 434, that's what I was going off of.

24 I just -- you know, I'm trying to do the best I can with the

25 information the parties provide, but I don't have these logs

47

1  in front of me.

2      I would be interested to know Google's response if

3  there other logs that contain ███████████ of the

4  Biscotti ID that allow you to make the association of named

5  Plaintiffs' data, because simply because you've chosen to do

6  your production from something else, if you have the data

7  available and can get it from some other source, then you

8  have an obligation to investigate that, but I just -- you

9  know, that's where we are at this point.

10     So, Mr. Somvichian, if we look at footnote five in

11  Docket 434, a reference to those kinds of logs, are those

12  sources of information about the ████████ Biscotti ID

13  that could be used to satisfy Plaintiffs' request?

14         MR. SOMVICHIAN:  Your Honor, these are the same

15  **sawmill** logs that they asked for, and that request was

16  denied.  Wherever there is a GAIA ID, there will not be the

17  ████ actual Biscotti ID.

18         THE COURT:  Okay.

19         MR. SOMVICHIAN:  So some of these logs may have

20  the ████ Biscotti ID, but it won't tie to a GAIA, and there's

21  no way that we can find it.

22         THE COURT:  Well, that's the thing.  Is there a

23  way to hook it up?  Is there something that you all are

24  colloquially are referring to as "joining keys," not

25  joinability keys but joining keys, that allows you to hook

48

1  it up?

2          MR. SOMVICHIAN:  The only way that we can find

3  those records that are associated with the ███████

4  ███████████ Biscotti is if we got the Biscottis from the

5  Plaintiffs.  The other starting point, using their account

6  information, having the GAIA, will not get us there.

7          THE COURT:  Okay.  Well, when somebody tells me

8  that it's white, and the other person says it's black,

9  there's really no way I can decide that.

10          MR. SOMVICHIAN:  Well, but --

11          THE COURT:  Mr. Levine, I cut you off to address

12  this one question, you know, go down that path a little bit

13  with Mr. Somvichian, but I want you to finish your thoughts

14  on this point.

15          MR. LEVINE:  Sure.  Yes.  It's called "discovery,"

16  not "proof," and the purpose of discovery is to discover

17  things.  We're not -- the way, you know, it works is, we

18  don't have to get their say-so as to the way it works.

19  We're entitled to test their assertions as to what exists,

20  what doesn't exist.

21      We're allowed to have our experts take this data and

22  say, "You know what?  We can put it all back together," and

23  that's the purpose of discovery.  It's not proof of the

24  ultimate issue.  You know, we don't just get, like, one

25  little piece.  We're entitled to test these assertions, and

49

1  we're entitled to prove our case, and we have been saying

2  this.  We need this discovery to prove our case.  I can't

3  say it any more clearly.

4      It exists -- we think, and we have a good faith basis

5  to say, this discovery exists in these logs, and our experts

6  will be able to put it back together, and we need it for

7  class certification, and we need it for the merits, and that

8  is why Google won't produce it, and they need to be ordered

9  to produce it.  I can't be any clearer than that.

10             THE COURT:  But when you're saying "it," you're

11  talking beyond what I called this hearing on.  You're

12  talking beyond the Biscotti ID --

13             MR. LEVINE:  No, the --

14             THE COURT:  -- and the joining keys.  You're

15  talking about everything in these other logs.

16             MR. LEVINE:  No, no, no.  The Biscotti, the

17  GAIA -- those three pieces need to be produced from these

18  logs.  That's how the link occurs at Google.

19             THE COURT:  Okay.  But am I clear that you only

20  are interested in the Biscotti ID ██████████████████?

21             MR. LEVINE:  Well --

22             THE COURT:  That's the only thing that you want?

23             MR. LEVINE:  Or ████████  ████████

24  ████████  We'll take whatever information they have that

25  has -- you know, that's the Biscotti -- we'll take, and the

50

1  GAIA, and any joining information.

2          THE COURT:  Okay.

3          MR. LEVINE:  Now, as a -- yes.

4          THE COURT:  But does joining -- what do you mean

5  by "joining information"?

6          MR. LEVINE:  Well, we thought the joining -- what

7  we thought was joining information was information that

8  joins those two together.

9          THE COURT:  That's what I understood you to be

10 saying.

11         MR. LEVINE:  Now, Google has superior -- again,

12 Google -- you know, we see joinability keys and joining keys

13 referred to in Google documents.  Witnesses have talked

14 about it.  But that's our best understanding.

15         THE COURT:  Okay.

16         MR. LEVINE:  There are other joining keys, but one

17 of them, we think, is something that links -- puts that

18 together.

19         THE COURT:  Okay.  So let me just sort of throw

20 something out here.  So, now that I understand in much more

21 detail all the different flavors of what somebody might be

22 referring to with the words "Google user ID," if I were to

23 order that the Biscotti ID, ███████████████████████████

24 ███ Biscotti ID, not the individual Google user ID

25 ████████████████  that goes to the bid request recipient --

51

1  if I was to order that data field, Biscotti ID, █████████

2  ███████ produced for whatever named Plaintiff data has

3  already been produced, is that going to make sense to

4  anyone, meaning you have a set of data that's been produce,

5  with fields, and sampled by time period, and all of these

6  sort of parameters that we're already put around what the

7  disclosure is?  And if I say, "Add to that this additional

8  data field," with the Biscotti ID, from whatever source, how

9  would that happen?  How would that look?

10      Let me ask Google that question.  Just practically,

11  what would that look like?

12          MR. SOMVICHIAN:  It would be adding a field, if we

13  can -- assuming that we can identify it, that contains

14  essentially a meaningless number.

15          THE COURT:  Okay.  But just -- I don't want the

16  characterization.  Just like, mechanically, you would say,

17  "Okay.  We've pulled this data from these multiple sources,

18  some from the ██████ some from other places.  We're pulled

19  all this data, and now we're going to add to it this

20  additional data field from wherever it exists, associated

21  with the GAIA Id and all the other, you know, time-sampled

22  information or whatever."

23      So, even if you think it's meaningless, you could still

24  do it, right, and you would be reproducing the data set?  Is

25  that how it would work?  I'm really just talking very

52

1  mechanically.

2       MR. SOMVICHIAN:  Yes.  In terms of the mechanics,

3  for what we've previously produced, we would have to produce

4  that again, add in the field.  You know, I'm not aware, your

5  Honor, of some engineering issue that prevents that from

6  being done, but I also don't know for sure that it can be.

7       THE COURT:  Okay.  But at least -- I mean, I've

8  ordered things to be added, you know, different fields to be

9  added, over the course of the evolution of discovery, and

10 you've managed to comply with that or are in the process of

11 it.  I think, when I got this letter, you said you were

12 working on it.  I'd given you to the end of April.  It

13 wasn't quite done, right?

14      MR. SOMVICHIAN:  It was not, your Honor, and I can

15 assure you we've been contact with the engineering team

16 almost daily.

17      THE COURT:  You're still working on it?

18      MR. SOMVICHIAN:  Yes.

19      THE COURT:  Okay.  All right.  But, nevertheless,

20 mechanically, it can be done?

21      MR. SOMVICHIAN:  I believe so, but I'm not aware

22 of all the --

23      THE COURT:  All right.  All right.

24      MR. SOMVICHIAN:  -- practical difficulties that

25 might arise.

53

1      THE COURT:  I understand for now.  I'm not hold

2  that as definitive yes, but at least you're not telling me

3  there's some reason it can't be done right now.  You have to

4  investigate.  I get it.  Okay.

5      MR. SOMVICHIAN:  Correct.

6      THE COURT:  Now, let me go back to Mr. Levine.

7  So, if I were to order what I described, you'd get the

8  Biscotti ID field, ███████████████████, you know, ██████

9  █████████████ whatever exists, associated with the

10 named Plaintiffs' data that you already have, which should

11 also now, or will soon, have the Google ID field, the GAIA

12 ID field.  You get that in a reproduced data set.  Is that

13 what you want?

14      MR. LEVINE:  Well, the end output is -- the answer

15 is yes, as long as Google is not going to then go to Judge

16 Gonzalez Rogers later in the case and say, "Well, yes.  They

17 have all that data, but look how hard it was for us to pull

18 it all.  We had to pull it from multiple different places

19 and put it together, and that's not how it's maintained at

20 RTB, so you shouldn't take anything from the fact, and you

21 can't reasonably associate it, because that's not how it's

22 done at Google."

23      There is the problem, because that's what's coming

24 next, and the only way to solve that is to instruct Google

25 to reproduce all the data, which they're going to do anyway,

54

1 but from one single source.

2          THE COURT:  Why do you care so much about whether

3 it comes from a single source?

4          MR. LEVINE:  Because that's the element of our

5 case, is "reasonably linked."

6          THE COURT:  Okay.

7          MR. LEVINE:  The "reasonably linked" is the single

8 source.

9          THE COURT:  Okay.  But there have been multiple,

10 multiple databases that you have described to me in the

11 course of our production -- or our discovery disputes, and I

12 have never understood it as an element of your case that you

13 need it all to come from one, or else this is a problem for

14 your case.

15          MR. LEVINE:  Well, I think it's been an evolving

16 thing as they've been producing stuff, and where they've

17 been producing, and, frankly, we don't know most of the time

18 where they've been pulling stuff from, because they don't

19 really tell us.  So we just get these productions, and, you

20 know --

21          THE COURT:  Well, and I want make sure that I

22 don't step in, that there is someone on the Plaintiffs' team

23 that knows about all the various sources of information,

24 because that has been briefed to me.  So some of you don't

25 know that.

55

1          MR. LEVINE:  We have always been asking for
2   productions from the ██████████, because we know them to be
3   the best source of information for our case, always.  That's
4   been since the get-go.
5          THE COURT:  Well, it's been among many different
6   sources.  Let's just be clear, because I've read these
7   briefs, and there have been multiple different logs from
8   which the Plaintiffs have demanded production.  So this
9   theory that "It all has to come from one place or our case
10  fails" is a new one.  It's a new one for me.
11         MR. LEVINE:  I --
12         THE COURT:  But, be that as it may, I'm not going
13  to tell you or the Defendant how to argue about the facts.
14  You can do that on your own, and Judge Gonzalez Rogers can
15  give it whatever significance she wants to, but I would be
16  surprised if the case turned on the fact that there were
17  multiple different sources for data that got produced in
18  discovery, or that the association between data item A and
19  data item B was somehow too attenuated because there was a
20  different log from one came and the other.
21      I mean, you've got ████████████████ that links
22  the two together.  That's what I understand is the theory of
23  the defense, that it's deliberately, by design,
24  disassociated ████████████████████████.  Maybe that will
25  be the argument, maybe it won't, but it is what it is.

56

```
 1          MR. LEVINE:  Well, that's the exact argument
 2   Google made last Friday on summary judgment in the related
 3   Brown case, was that they had to put the information -- it's
 4   not reasonably associated, because they had to put the
 5   information together from multiple logs.  So that's exactly
 6   what we're foreseeing being the same argument here.
 7          THE COURT:  So, if the question is now "We think
 8   everything comes from the ████████ or could come from the
 9   ████████," this ██████████████████ --
10          MR. LEVINE:  ████████████.
11          THE COURT:  -- ████████████.
12          MR. LEVINE:  Yes.  There's ███ different logs.
13   Yes.
14          THE COURT:  Okay.  Now we're at ███.  That sounds
15   more like it.  So is it ████████████
16          MR. LEVINE:  Well, it's all -- it's referred to as
17   the "████████████████████  There are different versions of
18   them for different purposes, but there are ██████ that are
19   GAIA-keyed and ██████ that are Biscotti-keyed.
20          THE COURT:  Okay.  This is like -- I'm going to
21   acknowledge that this is far afield from our dispute today,
22   and far afield from any discovery request that I have in
23   front of me, or any discovery dispute that I have in front
24   of me.  So I'm just going to put -- I'm going to acknowledge
25   that, but I'm trying to sort of -- since you all are coming
```

57

1  towards the end of your period before class cert -- and I

2  know you've asked for an extension, but I don't know if the

3  judge has acted on that -- but, nevertheless, trying to sort

4  of help you all get to closure on this, and also so not to

5  see you again, if I don't need to.

6      You know, is there a way that Google can accommodate

7  the concern that the Plaintiff is expressing about this

8  defensive argument they anticipate you will make, by showing

9  them what's available from one source or another?  For

10  example, you produce a, you know, line of data for a named

11  Plaintiff from this ██████ that shows them what's

12  available there, and then they can make whatever argument

13  that they want, if you think that's not really the right

14  source.

15      Is there any possibility -- and I'm talking about this

16  in an informal meet-and-confer kind of a discussion.  Is

17  there any -- have you considered doing that?

18          MR. SOMVICHIAN:  Your Honor, we've produced over

19  4,000,000 lines of data.

20          THE COURT:  No, I know it's -- but from the P --

21  the one they really want is this ████████████████████

22  ████  That's the one they really, really want data from.

23          MR. SOMVICHIAN:  That actually has fewer fields,

24  as compared to the ██████ for purposes of showing what is

25  sent in a bid request.  We are going through that process

58

1  now.

2          THE COURT:  Yes.

3          MR. SOMVICHIAN:  We told them -- you recall, your

4  Honor, we had the dispute about time sampling.  You allowed

5  them to pick additional time periods.  They gave us that

6  list.  We told them when they gave us that list, "Okay.

7  Some of these, we need to go to a different data source, and

8  it's going to have fewer relevant data fields that match to

9  what is actually sent in the bid request, because the █████

10 ███ is the source for that information."

11     That's why it's called the █████████████ It's the

12 █████████ to what is actually sent in the bid request.

13 Now that we're going to a different log source, we've told

14 them we are doing that, but it's going to have fewer data

15 fields.

16         THE COURT:  Okay.  But I think what -- if I may

17 put it this way, I think what Mr. Levine wants is, he wants

18 to be able to say, "In one place, █████████████████████

19 █████████ we have these fields," to show the relationship,

20 to show that they're all associated.  So maybe it's

21 duplicative of what you've already produced.

22     I'm not telling you you have to redo your production,

23 because that's not where we are, but, as an example, could

24 you provide an example that says -- that shows, "This is

25 what's available from the ███████████████████ for

59

1 this named Plaintiff, for this time sample, compared to what

2 we've given you from the ███████████ for this named

3 Plaintiff, for this time sample"?  Is that something that

4 you could do to just address this concern?

5          MR. SOMVICHIAN:  The problem, your Honor, is that

6 the data that's available in these logs goes far beyond

7 what's at issue in this case.

8          THE COURT:  Yes, but you just told me it has fewer

9 data fields that are relevant.

10          MR. SOMVICHIAN:  With respect to what is relevant,

11 which is the data shared in a bid request.  So they are

12 going to get that data, whatever matches with a bid request.

13 We're going through that process now, your Honor, to comply

14 with their request for these additional time periods that

15 are not covered in ███.  They're only covered in other

16 sources.

17     We are doing that.  We told them that we would do that,

18 but this idea of giving them "Here's everything that's

19 available in the ██████████ now it's going dramatically

20 beyond the scope of what's in this case, beyond what's --

21 you recall these are not specific to RTB.

22          THE COURT:  Yes, I know.

23          MR. SOMVICHIAN:  That's one initial problem, and

24 the case is even narrower.  It has to do with information

25 shared with RTB participants.  So the scope of what is

60

1  relevant in these other laws will be addressed, but what we

2  cannot do is just give them a copy of a sample of every

3  field that's available, because now we're going far beyond

4  the scope of what's at issue in the case, your Honor.

5          MR. LEVINE:  We don't need a sample, and to be

6  clear, that wasn't the ask.  I mean, the Court has ordered

7  Google to produce certain fields that are very specific to

8  their requests and their responses, and there's a limited

9  set of those.

10          THE COURT:  But that's in my other order, right,

11  the other order that was addressing bid requests.

12          MR. LEVINE:  Right.  And there's a universe, and

13  whether or not the ███████ include other information for

14  other purposes, we're not seeking that.  We're seeking the

15  information in the ███████ that's used and is specific to

16  the RTB fields that are at issue in the case, and we know

17  you've limited them, and that's all we're asking for.

18          THE COURT:  But are you saying that what Google is

19  doing is producing those data fields only from this ██████

20  █████████, and not from the █████████ where they also exist?

21          MR. LEVINE:  Or by a different name in the ████

22  ███.

23          THE COURT:  Well, okay.

24          MR. LEVINE:  No, no.  But there are substantial --

25          THE COURT:  So what is the different -- okay.

*Echo Reporting, Inc.*

1        MR. LEVINE:  Google knows what the equivalent is.

2        THE COURT:  Okay.  All right.  So, again, I'm,

3  like, really trying to drill down on this.  It sounds like

4  one of the things that the Plaintiff might be -- I'm going

5  to use the word advisedly -- satisfied with is if it could

6  see the same data all together that I've already ordered

7  produced, that you're producing from the ████████████

8  ████████, in its incarnation, but sourced from the ██████

9  ████████████████████████, instead, or in addition.

10       Do you see what I'm -- so maybe it doesn't have the

11 same data field name, but it's the same data, and it comes

12 from that place, as opposed to the ███████████ place.

13 So do you understand what I'm proposing?  It's like, could

14 you produce for them not broader data, but same data, from

15 the ████████

16        MR. LEVINE:  And the Biscotti-keyed equivalent of

17 those logs.  Just to be clear, they're separate.

18        THE COURT:  Biscotti-keyed equivalent of those

19 logs.

20        MR. LEVINE:  Footnote five refers to them.

21        THE COURT:  Yes, yes, footnote five.  It's in the

22 footnote.  Okay.  Like, want me to highlight it's in a

23 footnote, not in the body?  Okay.  Anyway, okay.  So, same

24 question.

25        MR. SOMVICHIAN:  So is the idea for data that

62

1  we've already produced --

2          THE COURT:  Yes.

3          MR. SOMVICHIAN:  -- which primarily came from the

4  ████████

5          THE COURT:  Yes.

6          MR. SOMVICHIAN:  It did not exclusively come from

7  the ██████

8          THE COURT:  Got it.  Understand.

9          MR. SOMVICHIAN:  But where there is a redundant

10 field in that ██████████████████████

11         THE COURT:  Yes.  Let's call it "redundant," the

12 same -- I'm just going by what Mr. Levine has said.  There's

13 a corresponding field in the ████████  I'm not sure that's

14 the word he used, but it's the same data, but it's in the

15 ██████ so it might be called something different than in

16 the ██████

17    So I think what he's asking is, could we get that same

18 data from the ██████  And I don't know how many other

19 logs this encompasses, but let's just focus on the ████████

20 for now, so that we can see how all of that appears in that

21 log, and not this "Frankenstein" log that's the ████████

22 ████ and other places, which has been the comprehensive

23 as-ordered production.  I'm not disputing that I've ordered

24 that, okay, and you had to draw from different places.

25         MR. SOMVICHIAN:  Yes.  So, your Honor, to be

63

1 clear, they are already going to get that.  So, for the time

2 periods that are not covered by the ███████ we are going to

3 the ███████ to find the equivalents.

4          THE COURT:  I see.  So you will get an example.

5          MR. SOMVICHIAN:  So they will have that.

6          THE COURT:  Okay.  So, Mr. Levine, there's a part

7 I didn't quite appreciate.  You are going to get an example

8 of exactly what you're asking for.  You'll be able to see it

9 in this time sample.

10          MR. SOMVICHIAN:  What we'd like not to do, your

11 Honor, is for prior productions that were covered by the ███

12 ███ to produce a redundant copy of that and put the

13 engineering team through the --

14          THE COURT:  Yes.  No, I got that.  So let me just

15 ask.  You'll be able to see, it sounds like, an example,

16 maybe a couple of examples.  I don't know how many such time

17 slices --

18          MR. SOMVICHIAN:  Two.

19          THE COURT:  Two time slices that come exclusively

20 from the ███████ right?

21          MR. SOMVICHIAN:  There will be other pieces from

22 other logs, but primarily --

23          THE COURT:  From the ███████

24          MR. SOMVICHIAN:  -- because we can't go to ███.

25          THE COURT:  Okay.  So will that help you make the

64

1  argument that you'd like to make, then?

2         MR. LEVINE:  I don't think so.  I really don't.

3         THE COURT:  Why not?

4         MR. LEVINE:  Well, first of all, it's letting them

5  avoid a potential spoliation issue.

6         THE COURT:  Okay.  Don't tell me about spoliation.

7  You're telling me that you need data to make your case.

8         MR. LEVINE:  We do.

9         THE COURT:  So why isn't this exactly the data

10  that you've asked me for?

11         MR. LEVINE:  Because it's not in the form it's

12  maintained in the ordinary course of business at Google.

13         THE COURT:  Do you want to go and, like, look at

14  their database, like, in real time?  Is that what you want?

15         MR. LEVINE:  Well, we actually served a request to

16  do that, and they deny it, but -- they objected it.

17         THE COURT:  But, like, what -- but what is -- I

18  mean, forgive me, but, in any case that involves databases

19  of a gazillion bits of information, there is usually some

20  process by which the party who's seeking discovery gets a

21  subset of it, and not the whole enchilada.

22       So this case is no different.  You're getting a

23  relevant subset of the data.  So what is the problem with

24  getting that relevant subset of data from the ███████

25  which is exactly what you just asked me for?  You said you

65

 1   didn't want to go broader than the fields.

 2           MR. LEVINE:  All we're getting is one field from

 3   the ████ for some one period of time.  We're not

 4   getting -- I don't think we're getting a complete

 5   production.

 6           THE COURT:  That's not what I heard Mr. Somvichian

 7   saying.  For a time sample that is not covered by the ███

 8   ██, they are going principally to the ██████ for that

 9   sample, right?

10           MR. SOMVICHIAN:  That's correct, your Honor.  And

11   to be clear, I want to -- they have this expectation that

12   the ██████ has much more complete information.  It does

13   not.  We are going through that mapping process now to

14   determine exactly what is in the ██████ that corresponds

15   to what is sent in a bid request.  We are doing that for all

16   the fields that match, not just one.

17           THE COURT:  Yes.

18           MR. SOMVICHIAN:  So we are going through that

19   process, but, just to set expectations for what they're

20   going to get, it actually will be fewer fields than what is

21   available in the ████  But we're not limiting it, certainly,

22   to just one field.

23           THE COURT:  But you're going to get to see that in

24   all of its glory.  So is that --

25           MR. LEVINE:  With that understanding, reserving

66

1 all rights, obviously, but as long as we get the

2 Biscotti-keyed equivalents, and whatever else that has the

3 Biscotti, ███████████████ -- we understand they

4 ████████ -- and that GAIA all together in the same

5 place, as we understand it to be, then yes, that is a start

6 for at least one of these, you know, if it's for one time

7 period, I guess we'll take a look at it -- or two time

8 periods.

9          THE COURT:  And if you see that, and you're like,

10 "Whoa.  You know, the reason we need that for all of these

11 other time sample periods is because X," well, then, you'll

12 have an opportunity to explain that, and if you have to come

13 to me for it after talking with Google about it, you will

14 have to tell me, "Here's the request.  Here's the order.

15 Here's why what we got is not good enough."

16     You'll have to actually tell me that, and I'm just

17 going to say that again.  Leave out all the adjectives and

18 adverbs and other things that you often include,

19 respectively, both parties, in your papers, and just tell me

20 what you need, why it's relevant, why it's responsive, and

21 proportion to the needs of the case.  That's all I need to

22 know.  That's what I need to know.

23     So I think this -- I know that Google is, like, unhappy

24 with what I'm about to say, because they did not come in

25 here thinking that we were, like, revisiting things I've

1  already resolved, and they were right to be unhappy, because

2  what I was really trying to do was understand how I made a

3  mistake, if I did, in my order, because Google told me I

4  made a mistake in my order, and I've explored with you all

5  in great detail something that I did not understand before.

6      Thank you for explaining that, but I'm about to require

7  Google to do what I sort of laid out was my suggestion for

8  how we might resolve this dispute, sort of not just this

9  dispute, but sort of a bigger dispute, which is to produce

10  that data field, that Biscotti ID, █████████████

11  █████████████ that goes with the Google ID that is already

12  associated with the GAIA ID -- I'm going to say the wrong

13  thing again -- the GAIA ID that's already being associated

14  with the named Plaintiffs' data, the time sample of named

15  Plaintiffs' data.  And if I order that to happen for all of

16  the time samples, then I think you will at least be able to

17  see it all.

18      Now, the joining keys, I am mystified.  They exist or

19  they don't exist.  If they exist, you can produce them.

20          MR. SOMVICHIAN:  They don't exist for --

21          THE COURT:  They don't exist.

22          MR. SOMVICHIAN:  They don't exist for any time --

23          THE COURT:  Then they don't exist in --

24          MR. SOMVICHIAN:  They don't exist for any

25  █████████████ that they've requested.

68

1          THE COURT:  Okay.  So, if they don't exist, you

2    can't produce them, which is where I thought we were with

3    the Google user ID, and we were.  If the Google user ID

4    doesn't exist, you can't produce it.  So you haven't

5    violated my order.  I just am now refining my order to tell

6    you to do something different than what I ordered, and it is

7    different.

8          It is different because I didn't understand that there

9    were ███ different flavors, or maybe ███ different

10   flavors, of the same thing, Biscotti ID, ██████ Biscotti

11   ID.  RTB, you know, did request specific ██████ Biscotti

12   ID, the Google user ID, which isn't -- I mean, I get -- now

13   I get that.  Thank you.  But that's what I would like for

14   you to do.  I realize it may take longer, and that's not

15   your fault, if it takes longer, because I'm adding to what I

16   think you probably reasonably understood I was ordering.  So

17   do we need to talk about a schedule for this happening?  I

18   think it might be useful.

19          MR. LEVINE:  I think, your Honor, our last request

20   would be for you to put in a good word with Judge Gonzalez

21   Rogers about an extension, but you're right.  The

22   schedule -- that extension was premised upon when Google

23   thought it was going to complete its production.  If that's

24   changed now -- maybe it hasn't.

25          THE COURT:  Well, I think Mr. Somvichian has to

69

1  check.  That's what he told me.  I got it this time.  You

2  have to check, because --

3        MR. SOMVICHIAN:  That's right, your Honor.

4        THE COURT:  Yes.

5        MR. SOMVICHIAN:  I don't know what additional time

6  this will entail, so I can't commit to anything.

7        THE COURT:  Okay.  And I think that's fair,

8  because I kind of sprung it on you, right?  You know, I

9  mean, it evolved out of our discussion, but it's a new

10  thing.

11        MR. LEVINE:  We don't have a problem with that,

12  other than our brief is due next Tuesday.

13        THE COURT:  Yes.  No, I know, and, you know, I'm

14  very -- I'm loathe to disrupt Judge Gonzalez Rogers'

15  schedule, but, if she asked me, certainly I would tell her I

16  have just -- and I will put in my order, "I have ordered

17  anew that the parties do this or investigate this," but I

18  would like for you to report back to me, not in a massive

19  filing, but report back to me, on whether it is or is not

20  possible to do what I've suggested.  Right?  So I would like

21  a status report after you've talked to each other about this

22  ███████  Biscotti, ███████  Biscotti ID, that thing

23  being part of a reproduction of the named Plaintiffs' data,

24  which I think it has to be, right, a reproduction?

25        MR. LEVINE:  Yes.

70

```
1          THE COURT:  I mean, I don't know how else you
2   would do it mechanically.  Do you think that it doesn't need
3   to be a reproduction, Mr. Levine?
4          MR. LEVINE:  No, I think it does, and we don't
5   have a problem giving more time, as long as, you know, we
6   don't have to file our brief next week.
7          THE COURT:  Yes.  Yes, I know.
8          MR. LEVINE:  So --
9          THE COURT:  I mean, it's like we're at this --
10  okay.
11         MR. LEVINE:  If --
12         MR. SOMVICHIAN:  I mean, to be clear, I think we
13  could produce it, you know, with a way to link it together,
14  as we've done before, based on the ███████ but I don't
15  know if --
16         THE COURT:  Produce the what, the Biscotti ID,
17  ███████████?
18         MR. SOMVICHIAN:  The ███████████████ Biscotti,
19  to the extent it exists, but I don't know if that actually
20  is more time-consuming to generate.  I don't know.
21         THE COURT:  I see.  Okay.  I mean, I think the
22  Plaintiff would like -- because I now understand it's a
23  feature of their argument -- they would like to be able to
24  say, "This came from a source or a few sources, all in, you
25  know, this manner, not globbed together, not associated
```

71

1  merely with the ███████  I think they would like to be

2  able to say that, to the extent possible.

3      The thing I was concerned about in my order, the one

4  that we're debating right now, was making sure that the

5  Plaintiffs knew which named Plaintiff it went with, which

6  data goes with which data.  So you were right about that.

7  That was the objective, and that's why I thought I was

8  achieving that objective by ordering you to produce these

9  data fields.

10     Okay.  But now there is yet another reason to produce

11 this data field.  I think it would be best if it could all

12 be produced in a unified whole, as opposed to little bits

13 here and there, but I leave that up to you, once you figure

14 out how long things will take and you talk to each other.

15 But I would like to have you report back to me on what the

16 plan is in a week.  Is that okay?  Can we do it in a week?

17             MR. LEVINE:  Okay.

18             THE COURT:  I mean, this is really a question for

19 Google.

20             MR. SOMVICHIAN:  Can we do it next Wednesday, your

21 Honor?  That will give us -- that will give me an initial

22 cycle of interactions with the product engineering team.

23             THE COURT:  Okay.  So that would be the 24th of

24 May.  Yes, May 24th.  That's how long you need?  Okay.  And

25 I do expect you to tell the Plaintiff, you know, what the

72

1  situation is.  Okay?  I know you don't like talking to each

2  other, but I'm going to order you to talk to each other.

3  You find out information about what's possible and how it

4  could be done, you know, like, "This is the amount of effort

5  we need to go to do it this way versus this way."

6      Then have a discussion about what makes the most sense

7  from a proportionality standpoint, but also keeping in mind

8  what the Plaintiff is trying to show, for whatever benefit

9  it may give them, about how these things are in only a few

10 places, or the same place, or, you know, together in some

11 way.  I think it's fair if they want to make that argument,

12 that that's how the data exists in the ordinary course of

13 business.  If it does, okay.  They can make that argument.

14     MR. SOMVICHIAN:  I understand what you have in

15 mind, your Honor, and we'll have that discussion.

16     THE COURT:  Okay.  All right.  And now, you know,

17 I don't know that to tell you about your request for an

18 extension of time with Judge Gonzales Rogers, but you can

19 certainly tell her that I have ordered this for the

20 production, because it's true.

21     MR. LEVINE:  Maybe we'll agree on a further

22 communication to the Court.

23     THE COURT:  I mean, I think you -- yes, you made

24 it.  So I will try to issue an order either today or

25 tomorrow on this, you know, that just says, "I've ordered

73

1   the parties to confer about doing this further production,

2   and they're going to report back on May 24th."

3       That will be, basically, my order, about what the

4   "this" is, so that you have that, and then, in light of that

5   you could maybe request whatever relief you want from Judge

6   Gonzalez Rogers.  You don't have to wait for me, but that's

7   what my plan is in terms of the timing, okay, just so you

8   know.

9       Okay.  Anything else for today?

10          MR. LEVINE:  No.  Thank you, your Honor.  You're

11  very indulgent.

12          THE COURT:  Anything else from the Defendant for

13  today?

14          MR. SOMVICHIAN:  No, your Honor.  Thank you.

15          THE COURT:  Okay.  Thank you.  This matter is

16  concluded.

17          THE CLERK:  The matter is concluded.

18      (Proceedings adjourned at 12:15 p.m.)

19

20

21

22

23

24

25

74

CERTIFICATE OF TRANSCRIBER

1

2

3       I certify that the foregoing is a true and correct

4   transcript, to the best of my ability, of the above pages of

5   the official electronic sound recording provided to me by

6   the U.S. District Court, Northern District of California, of

7   the proceedings taken on the date and time previously stated

8   in the above matter.

9       I further certify that I am neither counsel for,

10  related to, nor employed by any of the parties to the action

11  in which this hearing was taken; and, further, that I am not

12  financially nor otherwise interested in the outcome of the

13  action.

14



15

16          Echo Reporting, Inc., Transcriber

17              Wednesday, May 17, 2023

18

19

20

21

22

23

24

25