COOLEY LLP
MICHAEL G. RHODES (SBN 116127)
(rhodesmg@cooley.com)
WHITTY SOMVICHIAN (SBN 194463)
(wsomvichian@cooley.com)
AARTI REDDY (SBN 274889)
(areddy@cooley.com)
KYLE C. WONG (SBN 224021)
(kwong@cooley.com)
REECE TREVOR (SBN 316685)
(rtrevor@cooley.com)
ANUPAM DHILLON (SBN 324746)
(adhillon@cooley.com)
LIZ SANCHEZ SANTIAGO (333789)
(lsanchezsantiago@cooley.com)
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111-4004
Telephone:    +1 415 693 2000
Facsimile:    +1 415 693 2222

COOLEY LLP
ROBBY L.R. SALDAÑA (DC No. 1034981)
(rsaldana@cooley.com)
(*Admitted pro hac vice*)
KHARY J. ANDERSON (DC No. 1671197)
(kjanderson@cooley.com)
(*Admitted pro hac vice*)
1299 Pennsylvania Avenue, NW, Suite 700
Washington, DC 20004-2400
Telephone:    +1 202 842 7800
Facsimile:    +1 202 842 7899

Attorneys for Defendant
GOOGLE LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| In re Google RTB Consumer Privacy Litigation,<br><br><br>This Document Relates to: *all actions* | Master File No. 4:21-cv-02155-YGR-VKD<br><br>**GOOGLE LLC'S *DAUBERT* MOTION TO EXCLUDE PLAINTIFFS' EXPERT NEIL RICHARDS**<br><br>Judge:       Hon. Yvonne Gonzalez Rogers<br>Courtroom: 1, 4th Floor<br>Date:        TBD<br>Time:        TBD |

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

GOOGLE'S *DAUBERT* MOTION
TO EXCLUDE NEIL RICHARDS
CASE NO. 4:21-CV-02155-YGR-VKD

1

**NOTICE OF MOTION AND MOTION**

2

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

3

PLEASE TAKE NOTICE, on the same date and time that Plaintiffs' pending motion for

4

class certification will come for hearing, or as soon thereafter as this Motion may be heard in the

5

above-entitled Court, before the Honorable Yvonne Gonzalez Rogers of the United States District

6

Court, Northern District of California at the Oakland Courthouse, Courtroom 1 – 4th Floor, 1301

7

Clay Street, Oakland, CA 94612, Defendant Google LLC ("Google") will and hereby does move

8

the Court to exclude the opinions of Plaintiffs' expert Neil Richards.  Google's Motion is made

9

pursuant to Federal Rule of Evidence 702, Civil Local Rule 7, and *Daubert v. Merrell Dow*

10

*Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) ("*Daubert*").  Google's Motion is based on this Notice

11

of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Declaration

12

of Whitty Somvichian in support of Google's Opposition to Plaintiffs' Motion for Class

13

Certification and accompanying exhibits, all matters of which the Court may take judicial notice,

14

all pleadings and papers on file in this action, and other written or oral argument that Google may

15

present to the Court.

16

**ISSUE TO BE DECIDED**

17

Whether Professor Neil Richards' opinions, including those regarding whether "common

18

evidence" exists regarding the expectations of consumers in this case, should be excluded under

19

Federal Rule of Evidence 702 and the standards articulated in *Daubert*.

20

**RELIEF REQUESTED**

21

Google requests that the Court exclude all opinions offered by law professor Neil Richards

22

as set forth in his July 14, 2023 expert report and in his August 24, 2023 deposition testimony.

23

24

Dated: September 29, 2023                    COOLEY LLP

25

26

By: */s/ Kyle C. Wong*
             Kyle C. Wong

27

28

Attorney for Defendant
GOOGLE LLC

Cooley LLP
Attorneys at Law
San Francisco

2

**Google's *Daubert* Motion
to Exclude Neil Richards
Case No. 4:21-cv-02155-YGR-VKD**

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

2

## I.    INTRODUCTION

3       In support of their class certification motion, Plaintiffs offer the purported expert opinions

4   of Professor Neil Richards ("Prof. Richards") regarding Google account holders' expectations of

5   privacy and related issues.  The Court should exclude the Expert Class Certification Report of

6   Professor Neil Richards Report (the "Richards Report" or "Report")[1] as it suffers from a number

7   of fatal and incurable flaws.

8       ***First***, the Richards Report provides legal conclusions that usurp the role of the Court in

9   determining whether Plaintiffs have met the requirements of Rule 23.  For instance, Prof. Richards

10  repeatedly opines that a number of the key questions in this case can be resolved from "common

11  evidence," including whether Google account holders had a "common (false) expectation"

12  regarding their ability to control information transmitted through Real-Time Bidding ("RTB").  But

13  whether evidence in the record is sufficient to meet Rule 23(b)(3)'s predominance requirement of

14  "common proof" is not for Prof. Richards or any other expert to determine.

15      ***Second***, Prof. Richards holds himself out only as an expert in privacy law and legal history,

16  and he is entirely unqualified to assess the expectations of actual consumers.  His claimed expertise

17  rests on the mistaken premise that his academic research on abstract aspects of privacy law

18  somehow qualifies him to opine on how real consumers understand Google's disclosures or how

19  they form actual expectations as to certain data sharing practices.  As in *Brown v. Google*, the so-

20  called privacy expert offered in this case is not qualified to opine about consumer expectations.

21      ***Third***, the Richards Report is not grounded in any reliable methodology.  For instance, his

22  opinions about "consumer expectations" and "societal norms" rest entirely on circular reasoning or

23  his own say-so.  Prof. Richards claims without a single citation that he can measure consumer

24  expectations by using the "reasonable expectation of privacy" standard in Fourth Amendment

25  jurisprudence.  Similarly, he asserts that he can identify "societal norms" held by Google's account

26  holders, not by actually researching any such account holder's actual views through a qualitative

27  interview or quantitative survey, but instead by assessing whether a belief is "generally accepted".

28

---

[1] The Richards Report was filed with Plaintiffs' Motion for Class Certification.  (ECF No. 546-7.)

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

3

GOOGLE'S *DAUBERT* MOTION
TO EXCLUDE NEIL RICHARDS
CASE NO. 4:21-CV-02155-YGR-VKD

General acceptance, in turn, means "commonly understood to be accepted."  And, he further testified, determining when something is "commonly understood to be accepted," requires "expertise grounded in judgment," which is simply his own experience in the field.

**Fourth**, Prof. Richards' opinions do not fit the case.  They rest on a standard of privacy rights that is detached from the law and facts of this case, claiming that knowledge of, or consent to, the challenged conduct is "irrelevant" to his opinions.  But, case law makes clear that Plaintiffs' claims turn on not just whether every class member had a "reasonable expectation of privacy" but whether they can *maintain* that expectation in light of disclosures they read or agreements they made.  Because the Report does not take into consideration the real possibility of knowledge and consent, the opinions espoused therein do not fit the case and must be excluded.

**Finally**, the Richards Report gratuitously summarizes documents produced by Google during discovery in this case, without providing any expertise or technical gloss on them, and then proceeds to make conclusions about Google's state of mind, including what the Company intended to convey to consumers.  Courts, including this one, have excluded such opinions as improper.

For the reasons stated below, this Court should exclude the Richards Report.

## II.    BACKGROUND

### A.    Professor Neil Richards

Prof. Richards, a barred attorney, is currently a law professor at Washington University. (Richards Rpt. ¶ 11.)  He purports to be an expert in the fields of legal history and privacy law. (Richards Depo Tr.[2] at 42:19–22 ("as relevant to this case, my expertise is as a historian and -- and scholar of privacy and data protection").)  Notably, Prof. Richards does not claim that he is an expert in consumer behavior, marketing, or a similar field focusing on the quantitative or qualitative measurement or study of consumers or their actual behavior or expectations.

To formulate his opinions here, Prof. Richards did not conduct any interviews with putative class members or speak to named Plaintiffs.  (*See generally* Richards Rpt., App. B.)  Indeed, he conceded during deposition that he has never conducted a focus group on the expectations of

---

[2] The deposition transcript of Neil Richards ("Richards Depo Tr.") is attached as Exhibit 11 to the Declaration of Whitty Somvichian ("Somvichian Declaration"), filed concurrently with Google's Opposition to Plaintiffs' Motion for Class Certification.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

4

GOOGLE'S *DAUBERT* MOTION
TO EXCLUDE NEIL RICHARDS
CASE NO. 4:21-CV-02155-YGR-VKD

consumers in any formal setting, (Richards Depo Tr. at 48:15–17), that he has never conducted a quantitative or qualitative survey assessing consumer behavior, (*id.* at 48:18–21), and that, in any event, he is not qualified to perform either at an expert level, (*see id.* at 48:22–49:14, 50:16–20). Instead, as explained below, he based his opinions on his decades of "experience" in the legal and privacy fields, but did not articulate a scientific or other accepted methodology in formulating his opinions.

### B.     The Richards Report

In his Report, Prof. Richards offers a number of opinions regarding Google's disclosures and the purported expectations of Google account holders.  But, his Report is unusual in that many of his opinions (*see, e.g.*, Richards Rpt. ¶¶ 6, 7, 100, 118, 129, 136) are framed not as factual assertions based on certain evidence he reviewed but instead as legal conclusions that "there is ***common evidence*** from which a jury may conclude that something is the case."  (Richards Depo Tr. at 128:4–7 (emphasis added), 126:19–23 ("My testimony is that there is ***common evidence*** from which a jury may conclude that is the case." (emphasis added)).)  In his own words, "common evidence" means "evidence of factual matters . . . that ***runs through the class*** . . . as I understand it, that a certain proposition may be true or not."  (*Id.* at 130:22–131:2 (emphasis added).)  A fact is therefore "common" if "it is shared by a significant portion" of the class.  (*Id.* at 131:3–7.)

1.     *Opinion 1: Google's disclosures reflect societal privacy norms*.[3]

Prof. Richards opines that Google's disclosures in the Terms of Service and Privacy Policies "reflect a societal understanding that privacy is a fundamental right and an important societal norm in the U.S."  (Richards Rpt. ¶ 3; *id.* ¶¶ 75–79, 84–85, 87, 89.)[4]  Underpinning Opinion 1 are two key assertions.  First, Prof. Richards equates the concepts of "consumer expectations" and "societal norms" to the "reasonable expectation of privacy" standard set forth in the Supreme Court's seminal decision of *Katz v. United States* because "the test for whether privacy rights exist or have been

---

[3] Each Opinion includes all statements and cited paragraphs in each sub-section setting forth Prof. Richards' main opinions.

[4] Prof. Richards hedges his opinion here, noting that if the Court were to find this opinion goes to an "ultimate question," he would then "restrict [this] opinion to the fact that there is common evidence" that Google's disclosures reflect societal norms.  (Richards Depo Tr. at 130:17–20.)

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

5

GOOGLE'S *DAUBERT* MOTION
TO EXCLUDE NEIL RICHARDS
CASE NO. 4:21-CV-02155-YGR-VKD

invaded often rests on threshold questions about whether a reasonable person would have expected something to be private and under her control . . . ." (Richards Rpt. ¶ 29; *see* Richards Depo Tr. at 116:23–117:4 (explaining that the reasonable expectation of privacy standard has permeated ordinary consumers based on "observ[ation] both in [his] work and in [his] living in our society . . . .").) He does not cite to any specific authority for his claim that consumer expectations or societal norms are, in fact, interchangeable with a "reasonable expectation of privacy" as defined in law.

Second, when asked how he determined whether a "societal norm" exists as to specific conduct, he stated at deposition that "the standard for measuring" the existence of a societal norm turns on whether it is "generally accepted." (Richards Depo Tr. at 96:4–11.) When asked to define "generally accepted," he responded circularly: it means "commonly understood to be accepted." (*Id.* at 97:16–19.) Prof. Richards was then asked what makes a norm "commonly understood to be accepted," to which he responded, it "requires an exercise of judgment grounded in expertise." (*Id.* at 98:6–12; *see id.* at 105:18–24 (explaining this is a "qualitative exercise in assessment").) And when asked how he applied his "judgment grounded in expertise" in this case, he fell back on his "close to a quarter of a century . . . study, erudition, and expertise in these areas," drawing on "countless number of things that [he] read and conversations that [he] had . . . ." (*Id.* at 99:21–100:6; *see also id.* at 44:21–25 (citing "countless conversations" with individuals from "all walks of life" regarding privacy "over the past 20 years"), 87:15–19 (similar), 123:11–14 (similar).) These unidentified conversations that Prof. Richards had are not cited in his expert report. (*See* Richards Rpt., App. B.) Nor does he identify any other objective set of criteria that allows him to define "societal norms" in the circular manner he did.

## 2. *Opinion 2: Google RTB violates societal privacy norms*.

In Opinion 2, Prof. Richards opines that there is "common evidence" that Google RTB, including "the scope and quantity of information about and/or associated with individual U.S. Google account holders" transmitted to RTB participants, is "at extreme odds with fundamental privacy rights and societal privacy norms in the U.S." (Richards Rpt. ¶¶ 4, 100; *id.* ¶ 118 (opining "there are common, objective facts (including Google's violations of its promises, the continued and expansive nature of Google RTB, etc.) from which a jury or trier of fact may conclude that

Cooley LLP
Attorneys at Law
San Francisco

Google's *Daubert* Motion
to Exclude Neil Richards
Case No. 4:21-cv-02155-YGR-VKD

Google RTB violates societal privacy norms"); *see id.* ¶¶ 91, 93–99, 103–105, 107, 110, 113–117.)

Prof. Richards' opinion is based on the scope of information allegedly shared through RTB. (*See* Richards Rpt. ¶¶ 113, 117.)  But, he relies solely on other sources for the veracity and scope of the alleged "common evidence" and what it shows, including the expert report of Dr. Zubair Shafiq.  When Prof. Richards was asked at deposition to explain how RTB participants can "assemble detailed profiles" about users—a claim critical to his underlying opinion that RTB violates societal privacy norms—he responded, "I am not a technical expert" and that he was "not going to answer technical questions because they're beyond [his] expertise."  (Richards Depo Tr. at 164:10–165:1.)[5]  He stated that he would need to revise his report if Dr. Shafiq's analysis proved to contain "substantial[]" inaccuracies.  (*Id.* at 146:11–15.)

At deposition, Prof. Richards broadened the scope of Opinion 2.  While his Report repeatedly states that his Opinion here is only about whether "common evidence" exists (*see, e.g.*, ¶¶ 90, 100, 110, 118), he stated at his deposition that "it remains my opinion that Google promises that it will – does not, will not, never share or sell personal information with third parties, and that it violates that promise millions of times a day," (Richards Depo Tr. at 214:9–16; *id.* at 178:20–23 ("Google makes promises about not sharing personal information with third parties and then shares vast amounts of personal information with third parties in violation of that promise.").)

### 3. *Opinion 3: Societal privacy norms require disclosures of Google RTB.*

Prof. Richards opines that societal privacy norms require, "at a minimum, informative disclosures about what information is collected about or associated with U.S. Google account holders and offered for sale to Google RTB auction participants."  (Richards Rpt. ¶ 5; *id.* ¶¶ 120–125, 128.)  In support of this opinion, Prof. Richards relies on his analysis of privacy law at the federal level and in California, including some law review articles he authored.  (*Id.* nn.166–172.)  Prof. Richards does not provide any other additional bases for his opinion regarding disclosures,

---

[5]  He provided similar answers when asked to explain other assumptions regarding RTB's functionality that he relies on to reach his opinions.  (*See, e.g.*, Richards Depo Tr. at 143:21–22 ("That's a technical question, and I will defer to the technical experts on that."), 144:6–10 ("But, again, all questions relating to the technical operation of RTB and particularly to the computer science and data science of RTB are outside my expertise and certainly outside the scope of my report."), 163:13–14 ("That is a technical question, and I defer to the technical experts.").)

Cooley LLP
Attorneys at Law
San Francisco

7

Google's *Daubert* Motion
to Exclude Neil Richards
Case No. 4:21-cv-02155-YGR-VKD

aside from general legal articles and principles set forth in case law.  Nor does he cite to any conversations with putative class members as a basis for his opinions.

4. *Opinion 4: Common evidence exists that Google account holders have a "common (false) expectation" of privacy*.

Opinion 4 focuses on "common evidence" purportedly demonstrating that Google's disclosures throughout the relevant period "give rise to a common (false) expectation that Google does not offer for sale or sell information about or associated with U.S. account holders" to RTB participants.  (Richards Rpt. ¶ 6.)  This part of the Richards Report, Section VIII, contains only two paragraphs, incorporating other sections.  (*Id.* ¶¶ 130–131.)  Essentially, Prof. Richards opines that common evidence could show that (1) a "common (false) expectation" is created because Google's disclosures reflect societal norms that personal information will not be shared without consent (*see* Section V of the Richards Report) and (2) RTB violates those norms daily (*see* Section VI of the Richards Report).  Again, he did not actually conduct any quantitative or qualitative research into the actual expectations of consumers or Google account holders here—his opinions on consumer behavior do not take into account a single consumer's views (other than his own).

5. *Opinion 5: Common evidence exists that Google knowingly fails to disclose RTB and provide a mechanism to consent*.

Finally, Prof. Richards opines that "there is common evidence" showing that "Google fails to disclose" RTB to Google account holders "or offer any mechanism to consent to Google's sharing or selling information about or associated with them to" RTB participants.  (Richards Rpt. ¶ 7; *see id.* ¶ 129 (arguing there is "a common core set of evidence – Google's Terms of Service, Privacy Policies, and related notices – from which a jury or trier of fact could conclude that Google's lack of disclosure regarding its Google RTB practices violates prevailing, historical societal privacy norms").)  Further, Prof. Richards cites documents that were produced by Google in discovery, regarding internal market research, to opine that there are "common, objective facts" showing that "Google understands that its privacy notices do not comport with its U.S. account holders' expectations of privacy."  (*Id.* ¶ 126.)  For example, he cites a document produced by Google showing that 4% of users "disable" personalized ads, which he claims is a "small percentage" and suggesting that Google's representations regarding the "promise to put its users in

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

8

GOOGLE'S *DAUBERT* MOTION
TO EXCLUDE NEIL RICHARDS
CASE NO. 4:21-CV-02155-YGR-VKD

control" of their data is false. (*Id.* ¶¶ 136, 136(c).)  Yet, he does "not" know the percentages of opt-out for other ad platforms and whether this percentage is meaningfully different from any other platforms.  (Richards Depo Tr. at 187:7–10.)  Finally, Prof. Richards suggests that Google should offer users "a box to check that says even though Google says it doesn't sell or share my data, I am affirmatively checking this box to say that notwithstanding that promise, I consent to Google doing so." (Richards Rpt.  ¶ 137; *but see* Richards Depo Tr. at 203:21–204:1 ("Q. And are you aware of ways that you can disable some or all of that sharing? [objection omitted] The WITNESS: That is a technical question.  And I would defer to technical experts on that.").)

During deposition, Prof. Richards added to his opinions regarding consent.  In addition to opining that there was no mechanism to consent, Prof. Richards testified that it ultimately was "irrelevant" whether "any individual account holder knew of the alleged conduct by Google and – and consented to the conduct."  (Richards Depo. Tr. at 177:4–8.)  He was asked, "[w]hat if someone knew [RTB] was happening and didn't care? . . . are you saying that that person's expectations of privacy have been violated?"  (*Id.* at 176:8–15.)  Prof. Richards responded, "[i]t's my opinion that there is common evidence that a jury could conclude that *all members of the class[]*" had "their reasonable expectation of privacy" violated.  (*Id.* at 176:16–25 (emphasis added).)  Thus, Prof. Richards testified that it is impossible for RTB to have been consistent with a single putative class member's reasonable expectation of privacy.

## III.   LEGAL STANDARD

Under the Federal Rules, expert testimony is admissible so long as the witness is qualified, and his or her opinion is relevant and reliable.  Fed. R. Civ. P. 702.  It is well established that the Court's gate-keeping role under *Daubert* applies to expert testimony offered at class certification. *See Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 982 (9th Cir. 2011) (holding that the same evaluation of the expert's opinion that takes place before trial also applies at the class certification stage).  The party offering the expert has the burden to demonstrate the expert's admissibility.  Fed. R. Civ. P. 702, Advisory Committee Notes, 2000 Amendments.

At class certification, a district court must assess the reliability of expert testimony in light of its "rigorous analysis" of "commonality" and the evidence in the case.  *See Grodzitsky v. Am.*

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

9

GOOGLE'S *DAUBERT* MOTION
TO EXCLUDE NEIL RICHARDS
CASE NO. 4:21-CV-02155-YGR-VKD

*Honda Motor Co.*, 957 F.3d 979, 985–86 (9th Cir. 2020).  This Court "has discretion to determine reasonable measures of reliability."  *BP Prods. N. Am., Inc. v. Grand Petroleum, Inc.*, 2021 WL 4482138, at *1 (N.D. Cal. Sept. 30, 2021) (Gonzalez Rogers, J.).

## IV.   ARGUMENT

### A.   Prof. Richards' Opinions Embracing Legal Issues Should Be Excluded (Opinions 2, 4–5).

It is axiomatic that "[e]xperts may not opine on matters of law for the court."  *LD v. United Behav. Health*, 2023 WL 2806323, at *3 (N.D. Cal. Mar. 31, 2023) (Gonzalez Rogers, J.) (internal quotation marks and citation omitted); *see* Fed. R. Civ. P. 704, Advisory Committee Notes, 1972 Proposed Rules ("[O]pinions which would merely tell the [trier of fact] what result to reach" are properly excluded.).  An expert thus cannot offer opinions, for instance, on the proper application of the legal standards the court must use to decide a motion for class certification or on ultimate questions of law.  But the Richard Report does precisely this, opining: (1) that there exists "common evidence" in this case as to certain facts (Opinions 2 and 4–5); and (2) that Google made specific promises to its U.S. account holders that it violated through RTB (Opinions 4–5).  These opinions are improper and inadmissible.  *See, e.g.*, *BP Prods.*, 2021 WL 4482138, at *1 (explaining that exclusion is proper where an expert offers legal opinions, which "usurp the role of the judge and jury"); *Jimenez v. City of Chi.*, 732 F.3d 710, 721 (7th Cir. 2013) ("It is the role of the judge, not an expert witness, to instruct the jury on the applicable principles of law, and it is the role of the jury to apply those principles of law to the facts in evidence.").

### 1.   *Prof. Richards' opinions that there is "common evidence" usurps the Court's role in adjudicating Plaintiffs' motion for class certification and are therefore inadmissible.*

In connection with the pending motion for class certification, the Court must assess, among other things, whether "common evidence" exists to adjudicate Plaintiffs' claims on a class-wide basis.  *See, e.g.*, *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 666 (9th Cir. 2022) (en banc) (to prevail on class certification, "plaintiffs must establish that essential elements of the cause of action . . . are capable of being established through a common body of evidence, applicable to the whole class" (internal quotation marks and citation omitted)).

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

GOOGLE'S *DAUBERT* MOTION
TO EXCLUDE NEIL RICHARDS
CASE NO. 4:21-CV-02155-YGR-VKD

(*See* Plaintiffs' Motion for Class Certification ("Class Cert. Motion") at 4:10 ("common evidence" is required to certify a class action).)  An expert thus may not opine on the existence (or dearth) of "common evidence" as to the class; such determination is reserved to the Court alone.  For example, in *Weidman v. Ford Motor Company*, the court properly excluded expert opinion that "common evidence" did not exist as to whether a product defect in product liability class action applied to all class members.  2022 WL 17730732, at *4 (E.D. Mich. Dec. 16, 2022).  In that case, the expert stated the vehicles "do not share a common component design or manufacturing process" and that the defect was not subject to "common evidence." *Id.* at *1.  From this testimony, the court rejected defendant's argument that the expert was not opining on an ultimate legal issue, explaining: "Ford conflates expert opinions that may support a legal conclusion, which are generally permissible so long as they are reliable (e.g., whether the Class Vehicles' brake master cylinders have different designs), with opinions that are themselves legal conclusions, and thus inadmissible (e.g., whether the evidence Plaintiffs will use to prove their claims is common to class members)." *Id.* at *5.

Courts in this District and nationwide have similarly excluded testimony from experts who offered opinions on whether elements of Rule 23 were met.  In *United Behavior Health*, for instance, this Court struck the testimony of a law professor who "analyze[d] the class certification issues" including that the common evidence standard in Rule 23(b)(3) was satisfied, which was "based on the facts before the Court." 2023 WL 2806323, at *3 (internal quotation marks omitted). These statements, "which are unambiguously legal opinions, are outside of the province of expert testimony permitted" and barred by Rule 702. *Id.* ("While Professor Lahav may be a distinguished law professor, the Court rejects plaintiffs' thinly disguised attempt to submit what is essentially an amicus brief as an expert report."); *also see, e.g.*, *Fitzhenry-Russell v. Keurig Dr. Pepper Inc.*, 2018 WL 10472794, at *3 (N.D. Cal. Sept. 25, 2018) (excluding expert opinion, holding "whether an individualized inquiry is necessary to the extent that the class cannot be certified is a legal conclusion"); *Wyatt B. v. Kate Brown*, 2022 WL 3445767, at *9 (D. Or. Aug. 17, 2022) (excluding expert opinion regarding "systemwide deficiencies" in the foster care system, which were explicitly couched in "commonality" terms); *Littler v. Ohio Ass'n of Pub. Sch. Emps.*, 2020 WL 1861646, at *5 (S.D. Ohio Apr. 14, 2020) (excluding expert's opinions regarding "common" questions: "While

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

11

GOOGLE'S *DAUBERT* MOTION
TO EXCLUDE NEIL RICHARDS
CASE NO. 4:21-CV-02155-YGR-VKD

these words have lay usages, they have legal meaning in the class certification context, and [the expert's] report makes clear that he inappropriately uses these words in their legal sense to draw legal conclusions.").

As in the above cited cases, Prof. Richards repeatedly and improperly opines that there is "common evidence" from which the trier of fact could conclude that, among other things: (1) RTB violates societal privacy norms; (2) account holders falsely expect their personal information will not be shared through RTB; (3) Google fails to disclose RTB to account holders; and (4) Google fails to provide any mechanism for account holders to consent to RTB. (*See supra*, Sections II.B.2, II.B.4–5.) Indeed, Prof. Richards refers to "common evidence" or some iteration of the term (*e.g.*, "common, objective facts," "common body of evidence," "common core set of evidence," etc.) ***no fewer than*** 18 times in his report. (Richards Rpt. ¶¶ 6–7, 74, 93, 100, 103, 110, 113, 118, 126, 129, 131–134, 136; *see also id.* pp. 38, 56 (referring to "common evidence" or "common proof" in section headers).) A trained lawyer, Prof. Richards defined "common evidence" as evidence "that runs throughout the class," meaning "it is shared by a significant portion" of the class. (Richards Depo Tr. at 130:22–131:7.) At their core, Opinions 2 and 4–5 are nothing more than repackaged, inadmissible legal argument on whether "common evidence" exists under Rule 23:

- Opinion 2: that there is "common, objective facts (including Google's violations of its promises, the continued and expansive nature of Google RTB, etc.) from which a jury or trier of fact may conclude that Google RTB violates societal privacy norms," (Richards Rpt. ¶ 118; *id.* ¶¶ 4, 91, 93–100, 103–105, 107, 110, 113–117);

- Opinion 4: that there is "common evidence" that Google's disclosures "give rise to a common (false) expectation that Google does not offer for sale or sell information" related to account holders, (*id.* ¶¶ 6, 130–131); and

- Opinion 5: that there is "common evidence that Google fails to disclose its Google RTB auction" and that it does not "offer any mechanism to consent to Google's sharing or selling," (*id.* ¶¶ 7, 126, 129, 136–137).[6]

These Opinions must be excluded to avoid usurping this Court's role in determining whether Plaintiffs have established predominance under Rule 23(b)(3). *See Weidman*, 2022 WL

---

[6] Relatedly, Prof. Richards is also not an expert in class action certification in federal court, and thus does not even have the qualifications to make these improper legal opinions. (*See* Richards Depo Tr. at 42:19–22 (limiting expertise to legal history and privacy law).)

Cooley LLP
Attorneys at Law
San Francisco

12

Google's *Daubert* Motion
to Exclude Neil Richards
Case No. 4:21-cv-02155-YGR-VKD

17730732, at *4 (excluding opinion whether a case was subject to "entirely common evidence"); *United Behav. Health*, 2023 WL 2806323, at *3 (same).

2.  <u>*The Court should exclude Prof. Richards' opinions (a) interpreting Google's disclosures and (b) concluding RTB failed to comply with them*</u>.

Prof. Richards also offers improper opinions regarding Google's alleged "promises" to account holders and that Google "violated" those "promises."  As part of this analysis, Prof. Richards explains that the key "promise" Google made was not to sell or share class members' "personal information," which he defines to encompass a host of data that he believes is transmitted through RTB.  (*See* Richards Rpt. ¶¶ 86–87.)  But, "personal information" is a defined contractual term at the heart of this case.  (*See* Class Cert. Mot. at 15 (arguing the data transmitted through RTB "is 'personal information' under both Google's Privacy Policy and California law").)  Courts regularly exclude experts, like Prof. Richards, who "opine on the meaning and import of disputed terms" in breach of contract cases.  *See, e.g.*, *Bona Fide Conglomerate, Inc. v. SourceAmerica*, 2019 WL 1369007, at *3 (S.D. Cal. Mar. 26, 2019).

In addition to opining that Google makes specific promises, Prof. Richards opines that Google violates those promises as well.  (Richards Rpt. ¶¶ 118 (referring to "Google's violations of its promises"), 136 ("Google's promises to put its users in control with respect to Google RTB data are false"); *see* Richards Depo Tr. at 214:9–16 (explaining that "it remains [his] opinion" that Google "violates" its promises not to share or sell personal information with third parties "millions of times a day").)  These opinions are legal conclusions going to the heart of Plaintiffs' breach of contract claim, in addition to other claims, and should be excluded.  *See N. Wind Constr. Servs., LLC v. Campos EPC, LLC*, 2023 WL 4628176, at *5 n.7 (D. Idaho July 18, 2023) (explaining that where the expert's opinion ultimately "means breach of contract, it would be an improper conclusion of law"); *see also BP Prods.*, 2021 WL 4482138, at *1 ("it is for the jury to determine whether Defendants' statements in fact were misleading" (citation omitted)).

The Court should ignore any attempt by Plaintiffs to cloak Prof. Richards' legal conclusions under the guise of expert opinion.  While maintaining during deposition that he is "not offering any legal conclusions that go to the ultimate questions of law, or facts for that matter, in [his] report,"

(Richards Depo Tr. at 215:12–14), portions of the Richards Report, and other parts of his deposition testimony, bely the claim that he is not opining on Google's alleged "violation" of its "promises," (*See, e.g.*, Richards Rpt. ¶ 118 (referring to "Google's violations of its promises")).[7]

**B.      Prof. Richards Is Not Qualified to Opine on Consumer Expectations and His Opinions Lack Any Reliable Methodology Among Consumer Researchers**

When it comes to qualitative expert opinions, the Ninth Circuit has explained that courts should pay particular attention to his or her qualifications and methodology: specifically, "whether the expert's experience supports the expert's conclusions" and "whether the expert's reasoning is circular, speculative, or otherwise flawed," including if the "reasoning is adequately explained." *United States v. Holguin*, 51 F.4th 841, 855 (9th Cir. 2022).  When scrutinized under this standard, the Richards Report suffers from several fatal flaws discussed below.

1.      *Prof. Richards is not qualified to opine about consumers*.

An expert must be "qualified . . . by knowledge, skill, experience, training, or education . . . ." Fed. R. Evid. 702.  This means that "an expert must be qualified in the field they will testify about."  *Jack v. Borg-Warner Morse TEC LLC*, 2018 WL 3819027, at *18 (W.D. Wash. Aug. 10, 2018); *see also Lewert v. Boiron, Inc.*, 212 F. Supp. 3d 917, 924 (C.D. Cal. 2016) (requiring courts to consider "whether the expert is qualified to present the opinion offered").

This Court has recently confronted a situation in which a purported expert offered opinions on consumer behavior and expectations with respect to the collection of data from users of Google's Chrome browser in a privacy class action.  In *Brown v. Google*, this Court excluded plaintiffs' expert, a "security technologist" with significant privacy experience, from opining "about the purported expectations and understandings of 'reasonable users.'"  2022 WL 17961497, at *9–11 (N.D. Cal. Dec. 12, 2022).  "While experts are allowed to opine as to a reasonable consumer's expectation, such opinion must be rooted in the expert's relevant expertise."  *Id.* at *11.  In finding

---

[7] Indeed, Prof. Richards' expert opinion regarding the meaning of "personal information" in Google's Privacy Policy is copied verbatim in Plaintiffs' class certification motion, without citing to the Richards Report: "The Privacy Policy describes information 'Google 'associate[s] with . . . Google Account[s]' to include . . . unique identifiers."  (*See* Class Cert Mot. at 6; *id.* ("The document hyperlinked at 'unique identifiers' defines a unique identifiers as 'a string of characters that can be used to uniquely identify a browser, app or device' which includes cookies, advertising IDs, and other unique device identifiers.").)

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

14

GOOGLE'S *DAUBERT* MOTION
TO EXCLUDE NEIL RICHARDS
CASE NO. 4:21-CV-02155-YGR-VKD

that plaintiffs' expert was not qualified, Your Honor explained that even though he was able to opine "generally about relevant privacy issues, he does not have specialized expertise in opining about the purported understandings and expectations of consumers specifically" and it was improper for him to "merely impute his own opinions to those of a reasonable consumer." *Id.* (explaining expert was hired to assess Google's disclosures in light of a "purported 'industry standard'" for privacy policies).

The similarities with *Brown* are notable and controlling. As in *Brown*, Plaintiffs offer an expert unqualified to opine on consumer behavior expectations. (*See* Opinions 2, 4–5.) Prof. Richards has no relevant expertise or experience in measuring or analyzing consumer behavior, understandings, or expectations. His degrees are in political science, law, and legal history, (Richards Rpt. ¶ 12), not in marketing or any similar field. He explicitly limited his expertise to privacy law and legal history. (Richards Depo Tr. at 42:19–22.) And he readily admitted that he is not qualified to run focus groups or large surveys to assess consumer expectations. When asked directly what expertise he had regarding the expectations of consumers, (*id.* at 44:1–2), he claimed that he is "one of the leading privacy experts in the . . . world," (*id.* at 44:4–7), and that he has "read a tremendous amount" and attended "more conferences than [he] can count" regarding privacy, (*id.* at 44:16–20). But, when pressed on his experience with consumers specifically, Prof. Richards cited his past writings on privacy law, describing them as "consumer privacy issues." (*Id.* at 45:17–20.) As with *Brown*, an expert who does not have formal training in assessing consumer expectations or behavior is not qualified to opine on such issues, notwithstanding any expertise in privacy generally. Thus, being a law professor who has studied the legal history of privacy, just like a security expert who deals with general privacy issues, is not a sufficient basis to qualify as an expert to opine about actual consumer expectations under Rule 702 and *Daubert*.

Moreover, as in *Brown*, Prof. Richards simply substitutes the expectations of consumers with his own "*personal* view," which renders his testimony inadmissible. *See Brown*, 2022 WL 17961497, at *11. Indeed, courts routinely exclude experts who are unqualified to opine on consumer behavior and expectations, as is the case here with Prof. Richards. *See, e.g.*, *McCrary v. Elations Co. LLC*, 2014 WL 12589137, at *11 (C.D. Cal. Dec. 2, 2014) (excluding economists'

Cooley LLP
Attorneys at Law
San Francisco

15

Google's *Daubert* Motion
to Exclude Neil Richards
Case No. 4:21-cv-02155-YGR-VKD

opinions regarding consumer awareness and marketing practices); *Lucido v. Nestle Purina Petcare Co.*, 217 F. Supp. 3d 1098, 1106 (N.D. Cal. 2016) (excluding veterinarian's opinions regarding the decisions of consumers to purchase dog food). The Court should exclude these opinions because they are not the product of an expert who is qualified to opine on consumer expectations.

2.    *Prof. Richards' opinions regarding consumers are not reliable*.

The Court should exclude Opinions 1–5 because they are not based on any reliable methodology. To satisfy the reliability standard under Federal Rule of Evidence 702, expert opinions must "identify [an] objective source" or "follow[] a scientific method embraced by at least some other experts in the field." *Cabrera v. Cordis Corp.*, 134 F.3d 1418, 1423 (9th Cir. 1998); *see Claar v. Burlington N. R. Co.*, 29 F.3d 499, 502 (9th Cir. 1994) (affirming exclusion of expert whose conclusions were not "based on scientific knowledge" or "scientific methods and procedures," but rather by "mere subjective beliefs or unsupported speculation"). As here, qualitative expert work may be excluded where the "expert's reasoning is circular, speculative, or otherwise flawed," including not "adequately explained." *See Holguin*, 51 F.4th at 855; *United States v. Vera*, 770 F.3d 1232, 1247–48 (9th Cir. 2014) (holding expert analysis was "circular" and grounded in "speculation" where his opinion that defendants used coded language common to drug smugglers was based on his pre-existing belief that they were drug smugglers).

Again, this Court's recent analysis in *Brown* controls. There, the expert offered conclusory opinions about the purported expectations and understandings of consumers. 2022 WL 17961497, at *9–11. When he was asked to explain his methodology, he responded that he authored "books on this stuff" and that security experts understand what an adequate disclosure looks like "and we know when it's met and when it's not met." *Id.* at *11. When asked about the industry standard, he testified "that the standard is not really an objective one but is instead one that is based on his personal opinion." *Id.* The Court also observed that "he had not 'queried any privacy and security expert' relating to whether Google's disclosures were adequate" and failed to "conduct[] any consumer surveys regarding these issues." *Id.* While not required, "a survey might have helped in this case given his lack of relevant expertise on the specific opinions at issue." *Id.* at *11 n.8. In finding that his opinions were inadmissible, the Court found them to be "based on nothing more

CooLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

16

GooGLE'S *DAUBERT* MOTION
TO EXCLUDE NEIL RICHARDS
CASE NO. 4:21-CV-02155-YGR-VKD

than his personal interpretation of the at-issue disclosures and Google documents and the idea that such interpretations are reasonable." *Id.* at \*11.

Here, Prof. Richards' opinions are unreliable for many of the same reasons articulated by this Court in *Brown*.  **First**, Richards conflates "consumer expectations" with the "reasonable expectation of privacy" under the Fourth Amendment jurisprudence.  (Richards Rpt. ¶ 29 (arguing the test to determine whether privacy rights have been violated "in both law and consumer expectations" is the "reasonable expectation of privacy" standard).)  But he does not cite any authority to support the novel assertion that the Supreme Court's "reasonable expectation of privacy" jurisprudence can be used to determine *consumer* expectations and behavior, aside from testifying that it is based on vague conversations with "ordinary consumers."  (Richards Depo Tr. at 116:23–117:4 (explaining that the reasonable expectation of privacy standard has permeated ordinary consumers based on "observ[ation] in [his] work and in [his] living in our society . . . .").)  In other words, Prof. Richards does not "identify [any] objective source" or "follow[] a scientific method embraced by at least some other experts in the field." *See Cabrera*, 134 F.3d at 1423.  Instead, his opinions are based on his own "subjective belief" and nebulous "experience" talking to unnamed individuals in unstructured settings in the real world over the past quarter century. *See Claar*, 29 F.3d at 502; *Open Text S.A. v. Box, Inc.*, 2015 WL 349197, at \*6 (N.D. Cal. Jan. 23, 2015); *see also Grodzitsky*, 957 F.3d at 985 (excluding an expert opinion on auto defect based on "just a real world driving around test").

**Second**, Prof. Richards then refers to these consumer expectations generally as "societal norms," a phrase appearing throughout his opinions.  (*See, e.g.*, Richards Rpt. ¶ 29 (equating "societal norms" with the reasonable expectation of privacy, which as noted above, is the test for whether privacy rights have been violated "in both law and consumer expectations").)  Again, he does not cite to any objective source to support this assertion.  Moreover, his definition of "societal norms" is circular.  He defined it as a "generally accepted" norm, which in turn means a norm that is "commonly understood to be accepted," which in turn requires "judgment grounded in expertise"—all of which ultimately gets reduced to Prof. Richards' subjective beliefs and

Cooley LLP
Attorneys at Law
San Francisco

17

Google's *Daubert* Motion
to Exclude Neil Richards
Case No. 4:21-cv-02155-YGR-VKD

"erudition" in privacy law.  (Richards Depo Tr. at 96:7–11, 97:16–19, 98:6–12, 99:24–25.)   As he explained, the "judgment grounded in expertise" that he used to prepare his report in this case was based on "countless" readings and conversations over two decades, conceding that "ultimately the determination" of defining societal norms is based on his *ipse dixit* "expertise."  (*Id.* at 98:6-12; 99:21–100:25; *see id.* at 44:21–25 (citing to general and vague conversations with individuals regarding privacy during the past 20 years as a basis for his opinions), 87:15–19 (same), 99:21–100:6 (same), 123:11–14 (same).)[8]   At bottom, Prof. Richards' opinions are based on his "experience" alone—"an abstraction not visible to the eyes of the Court, the jury, and opposing counsel, or testable in the crucible of cross-examination."  *Open Text*, 2015 WL 349197, at *6; *see GPNE Corp. v. Apple, Inc*., 2014 WL 1494247, at *6 (N.D. Cal. Apr. 16, 2014) ("Apple cannot cross-examine Mr. Dansky on his assertions, all of which fundamentally reduce to taking his opinion based on 30 years of experience for granted").

**Third**, it is equally telling what Prof. Richards did *not* do in trying to formulate his opinions in this case.  *See Grodzitsky*, 957 F.3d at 985–86 (explaining the expert "failed to cite industry standards, peer-reviewed literature, or even test a statistically significant number of regulators to opine on the probabilities that any given Honda Pilot regulator failed because of the alleged defect" (internal quotation marks omitted)); *see also Morrison Ent. Grp. Inc. v. Nintendo of Am., Inc.*, 56 F. App'x 782, 785 (9th Cir. 2003) (observing survey is not necessary, but "[t]he absence of such a survey is somewhat telling here, where there is an actual confusion survey in the record conducted by Nintendo showing that children in the target age-group are unlikely to confuse the two trademarks").   Indeed, in excluding an expert who offered opinions regarding consumer expectations in *Brown*, this Court similarly observed that the purported expert "had not 'queried any privacy and security expert' relating to whether Google's disclosures were adequate," and he also failed to "conduct[] any consumer surveys regarding these issues."  2022 WL 17961497, at

---

[8] Finally, Prof. Richards' circular reasoning conveniently led him to the conclusion that he made years ago: Google's business practices amount to modern-day surveillance and violate societal privacy norms.  *See, e.g.*, N. Richards, *Google has captured your mind*, Salon (Feb. 26, 2015), https://www.salon.com/2015/02/26/google_has_captured_your_mind/. (*See also* Richards Rpt. ¶¶ 105 (opining RTB "represents a level of surveillance that violates historical privacy norms—norms that Google itself represents that it follows"), 106 (similar), 94 (similar).)  This further shows the unreliability of his opinions.  *See Vera*, 770 F.3d at 1247–48.

Cooley LLP
Attorneys at Law
San Francisco

18

Google's *Daubert* Motion
to Exclude Neil Richards
Case No. 4:21-cv-02155-YGR-VKD

*11.  As noted above, Prof. Richards did  not conduct any interviews of putative class members before reaching his opinions in this case regarding consumer expectations, including verifying that the named Plaintiffs actually viewed the disclosures he claims give rise to a uniform false expectation of privacy.  (Richards Depo Tr. at 172:7–11 (stating "[he] was not aware" that "some of the named plaintiffs did not review the specific statements" cited in the Richards Report).)  *See, e.g.*, *Owens v. Auxilium Pharms., Inc.*, 895 F.3d 971, 972–73 (7th Cir. 2018) (excluding the opinion of a doctor who assumed plaintiff followed the directions for medical use of a product, when in fact the plaintiff did not).  Similarly, Prof. Richards steadfastly maintained that determining consumer expectation was a qualitative exercise, not a quantitative one, without ever providing literature among consumer researchers (*e.g.*, Journal of Consumer Research, etc.) that would endorse his approach.  (Richards Depo Tr. at 97:3–12 ("I'm not going to quantify it for you because my understanding in this -- in this context is that it is a qualitative appreciation.").)  What Prof. Richards failed to do further demonstrates that his opinions were not reliably formulated.  *See Brown*, 2022 WL 17961497, at *10–11 (criticizing expert's methodology used to opine about consumer expectations because he failed to consult any consumer researcher and did not conduct any survey, meaning his opinions were based on his "*personal* view" rather than that of a "*reasonable consumer*").

In sum, the methods that Prof. Richards used to reach his opinions in this case are not reliable.  As explained by Google's expert, Domonique Hanssens, "[i]t is not clear how such an approach could be scientifically replicated by any expert that is not Prof. Richards."  (*See, e.g.*, Google's Expert Report of Dominique Hanssens ("Hanssens Report") ¶ 73.)[9]  Not only did he fail to undertake methods used by reputable researchers who study consumer expectations, Prof. Richards also ignored literature he cited in his report showing that consumers expect that their information will be shared when browsing online.  (*See id.* ¶ 68 n.83 (listing techniques regularly used by consumer researchers, ranging from psychology to econometrics); ¶¶ 76–77 (discussing studies cited in the Richards Report showing a significant portion of users expect websites to collect their information and citing "ample evidence of people not bothering to protect information").)

[9] The Hanssens Report is attached as Exhibit 3 to the Somvichian Declaration.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

19

GOOGLE'S *DAUBERT* MOTION
TO EXCLUDE NEIL RICHARDS
CASE NO. 4:21-CV-02155-YGR-VKD

Because Prof. Richards failed to use any reliable methodology in reaching his opinions, the Court should exclude them.

### 3.   *Prof. Richards is not qualified to opine on how RTB works, including the amount and type of information allegedly transmitted*.

Finally, Prof. Richards is not qualified to opine on how RTB works, let alone opine that the data transmitted through RTB uniformly violates societal norms.  (*See* Opinion 2.)  Not only did he concede that he lacked any technical background or expertise during deposition, he then used it as a basis to flatly refuse answering a single question that attempted to test his understanding of certain assumptions that he relies on to ultimately opine that RTB violates societal norms.  (*See, e.g.*, Richards Depo Tr. at 164:10–165:1 (explaining he was "not going to answer technical questions because they're beyond [his] expertise").  Unsurprisingly, Prof. Richards admitted that he was unable to verify Dr. Shafiq's findings—and essentially has no way of knowing whether Dr. Shafiq's findings are correct.

While experts may rely on other's work, they must still offer some independent expertise or context surrounding that work.  *See, e.g.*, *LaCombe v. A-T-O, Inc.*, 679 F.2d 431, 435 n.5 (5th Cir. 1982) (explaining if opinions are based on the work of others, they must be combined with the expert's own professional knowledge and experience about that type of work).[10]  Experts must rely on facts and data, not just the subjective and ultimate conclusions of others.  *See, e.g.*, *Brown v. Burlington N. Santa Fe Ry. Co.*, 765 F.3d 765, 771–72 (7th Cir. 2014) ("Rule 703 requires the expert to rely on 'facts or data,' as opposed to subjective impressions.").  Given his inability to understand how RTB works and his refusal to answer questions about how RTB allegedly shares "personal information," his opinion that RTB violates societal norms is not based on his first-hand knowledge and is instead based on accepting Dr. Shafiq's work at face value, and should be excluded.  *See, e.g.*, *ZF Meritor, LLC v. Eaton Corp.*, 696 F.3d 254, 293 (3d Cir. 2012) (affirming exclusion of an expert witness where the expert did not "know the methodology used" to formulate the opinions prepared by someone else, "or the assumption on which" the opinions rested).

---

[10] With respect to Prof. Richards' review of Google's documents, he similarly failed to provide any relevant expertise in his gratuitous summaries of them. (*See supra*, Section IV.D.1.)

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

20

**GOOGLE'S *DAUBERT* MOTION
TO EXCLUDE NEIL RICHARDS
CASE NO. 4:21-CV-02155-YGR-VKD**

### C.     Prof. Richards' Irrelevant Opinions Do Not "Fit" This Case.

Expert opinions should be excluded if they do not "speak[] clearly and directly to an issue in dispute in the case . . . ." *Daubert v. Merrell Dow Pharms.*, Inc., 43 F.3d 1311, 1321 n.17 (9th Cir. 1995).  Expert testimony "fit[s]" the case if it "logically advances a material aspect of the proposing party's case."  *Id.* at 1315; *see also Senne v. Kan. City Royals Baseball Corp.*, 591 F. Supp. 3d 453, 479 (N.D. Cal. 2022) (explaining the fit requirement "is more stringent than the relevancy requirement of Rule 402 of the Federal Rules of Evidence, 'reflecting the special dangers inherent in scientific expert testimony'" (citation omitted)).

Plaintiffs must prove, *inter alia*, "a reasonable expectation of privacy" and/or *lack* of consent, or similar elements, for each of their claims that they seek to certify.  (*See, e.g.*, Class Cert. Mot. at 18 (consent as an element of the CIPA claim), 19 (reasonable expectation of privacy as an element of the intrusion claim).)  These standards are not purely objective and blind to context. *See, e.g., Hart v. TWC Prod. & Tech. LLC*, No. 20-cv-03842-JST, 2023 WL 3568078, at *9 (N.D. Cal. Mar. 30, 2023) (explaining "certain factors personal to an individual may affect whether that individual ***maintained*** a reasonable expectation of privacy" in light of disclosures they may have seen (emphasis added)).[11]  As this Court recently held, a class cannot be certified where issues of consent turn on "individual, and subjective, interactions of what certain class members knew, read, saw, or encountered" about the practices in dispute. *Brown*, 2022 WL 17961497, at *19.  Stated differently, courts cannot ignore individual factors that may affect an individual's reasonable expectation of privacy.  *See, e.g., Hart*, 2023 WL 3568078, at *11 (denying certification of privacy claims where "individualized factual inquiries" of class members' knowledge of defendant's data collection practices predominate); *In re Google Inc. Gmail Litig.*, 2014 WL 1102660, at *16 (N.D. Cal. Mar. 18, 2014) (denying certification of CIPA and other claims because they involved "an intensely factual question" to determine "whether the party whose communication was intercepted was on notice that the communication would be intercepted.").

A number of Prof. Richards' opinions should be excluded because they do not fit the needs

---

[11] Contrary to Plaintiffs' argument, (*see* Class Cert. Mot. at 20), "[e]ffective consent negates an intrusion upon seclusion claim" under California law.  *Snipes v. Wilkie*, 2019 WL 1283936, at *6 (N.D. Cal. Mar. 20, 2019).

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

21

GOOGLE'S *DAUBERT* MOTION
TO EXCLUDE NEIL RICHARDS
CASE NO. 4:21-CV-02155-YGR-VKD

1   of this case.  (*See* Opinions 4–5.)  He opined that the "reasonable expectation of privacy" for every

2   single putative class member was uniformly violated in this case—even those who may have had

3   notice of, or provided consent to, the conduct.  (Richards Depo Tr. at 177:4–8 ("Q.  It is immaterial

4   then whether or not any individual account holder knew of the alleged conduct by Google and --

5   and consented to the conduct?  A.  It's irrelevant.").)  When asked why it was irrelevant, Prof.

6   Richards retorted that he was not offering legal opinions on the reasonable expectation of privacy

7   or consent.  (Richards Depo Tr. at 181:21–23 ("If we are discussing consent in a legal sense, then

8   I am not offering a legal conclusion in my report.").)  Instead, he stated that he was opining "on

9   consent in terms of expectations of consent and practical ability and norms surrounding consent,

10   the pathologies of consent that I talk about in the article [introduced as an exhibit], means that

11   consent, in this situation, would be so far from knowing involuntary gold standard consent as to be

12   meaningless." (*Id.* at 181:23–182:5.)  In other words, Prof. Richards opines about the "reasonable

13   expectation of privacy" in an academic sense, not one grounded in the law.  According to him,

14   one's expectation of privacy is completely unaffected by disclosure, explicit consent, or implied

15   consent through continued use after knowledge.  (*See* Hanssens Rpt. ¶ 72 (listing several additional

16   factors likely to affect consumer expectations).)  While that may be the subject of a law review

17   article, it is not the standard that Plaintiffs must satisfy to prove their claims.  *See Brown*, 2022 WL

18   17961497, at *19.  His opinions are excludable on this basis alone.  *Id.*

19       Finally, Prof. Richards conceded that he would need to revise his report if Dr. Shafiq's

20   analysis proved to contain "substantial[]" inaccuracies.  (Richards Depo Tr. at 146:11–15.)  In light

21   of Google's showing as to the significant and critical flaws in Dr. Shafiq's report, (*see* Google's

22   Opposition to Class Cert. Mot. at 10–12), the Court should strike Opinion 2 in its entirety.

23   **D.    Prof. Richards Offers No Expertise In Summarizing Google Documents, and**
         **Instead Imputes Intent and Knowledge to Google.**

24   The Court should exclude Prof. Richards' summaries of Google documents.  (Richards Rpt.

25   ¶¶ 74, 126, 136; *see also id.* ¶ 131.)

26   1.    *Prof. Richards summarizes Google documents without providing any*
         *technical or expert gloss on them, and gratuitously interprets each of them.*

27

28   "An expert witness who is merely a party's lawyer's avatar contributes nothing useful to

Cooley LLP
ATTORNEYS AT LAW
SAN FRANCISCO

22

GOOGLE'S *DAUBERT* MOTION
TO EXCLUDE NEIL RICHARDS
CASE NO. 4:21-CV-02155-YGR-VKD

1   the decisional process." *Numatics, Inc. v. Balluff, Inc*., 66 F. Supp. 3d 934, 941 (E.D. Mich. 2014);

2   *see Edwards Lifesciences Corp. v. Meril Life Scis. Pvt. Ltd.*, 2022 WL 254348, at *10 (N.D. Cal.

3   Jan. 27, 2022) (excluding opinion that "'merely summarizes the record evidence and gratuitously

4   interprets it' with a conclusion that offers nothing more than what [plaintiff's] counsel could argue

5   to the jury in closing arguments" (citation omitted)); *DZ Rsrv. v. Meta Platforms, Inc*., 2022 WL

6   912890, at *9 (N.D. Cal. Mar. 29, 2022) (excluding report where the expert "offered nothing more

7   than his personal interpretation of documents and evidence").

8       In his report, Prof. Richards cites to documents that Google produced without offering any

9   additional context on them, let alone any expertise.  (*See* Richards Rpt. ¶¶ 74, 126, 136.)  For

10  example, while he claims that only a "small" percentage of account holders opt out of personalized

11  ads, (*id.* ¶ 136(c)), he does not explain what the percentages are for other platforms because, as he

12  testified, he does "not" know what those percentages are, (Richards Depo Tr. at 187:7–10).  Nor

13  does Prof. Richards explain whether the internal market research that Google conducted has any

14  relevance to the putative class or RTB specifically.  (*See* Hanssens Rpt. ¶ 78 (explaining the

15  irrelevance of these documents to Google RTB, including a study cautioning against extrapolating

16  to the entire U.S. population and another study citing statements from biased individuals).)  His

17  testimony in this regard "merely summarizes the record evidence and gratuitously interprets it."

18  *See Edwards Lifesciences*, 2022 WL 254348, at *10 (citation omitted).

19              2.    *Prof. Richards improperly opines about Google's state of mind*.

20      Additionally, expert opinions regarding a party's "state of mind [a]re improper" because

21  "[t]he jury is sufficiently capable of drawing its own inferences regarding intent, motive, or state

22  of mind from the evidence, and permitting expert testimony on this subject would be merely

23  substituting the expert's judgment for the jury's and would not be helpful to the jury."  *Snyder v.

24  Bank of Am., N.A.*, 2020 WL 6462400, at *2 (N.D. Cal. Nov. 3, 2020) (citation omitted); *see Lanard

25  Toys Ltd. v. Anker Play Prod., LLC*, 2020 WL 6873647, at *7 (C.D. Cal. Nov. 12, 2020) (excluding

26  "opinions and testimony related to Defendants' intent, motive, or state of mind").

27      Furthermore, the ultimate opinion Prof. Richards reaches based on his review of the

28  documents all go to Google's state of mind.  Specifically, he claims these documents show

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

23

GOOGLE'S *DAUBERT* MOTION
TO EXCLUDE NEIL RICHARDS
CASE NO. 4:21-CV-02155-YGR-VKD

"common" evidence that Google "understands" that its users value privacy, (Richards Rpt. ¶ 74), that Google "understands" its disclosures do not comport with societal norms, (*id.* ¶ 126), and that Google's intent to "put its users in control with respect to Google RTB data are false," (*id.* ¶ 136). (*See also* Richards Depo Tr. at 124:22–125:1 (stating he has "seen evidence that Google knows that Google's customers" value privacy).  Each of these opinions imputes Google's "intent, motive, or state of mind," *see Snyder*, 2020 WL 6462400, at *2, and must be excluded.  (*See also* Richards Rpt. ¶ 131 ("Google is all too well aware" of the expectation of privacy its users have).)  These opinions are similar to the ones offered by the privacy expert in *Brown*—such as, "Google counts on most people to access the Internet using" its services—which this Court found were improper opinions about Google's state of mind.  *See Brown*, 2022 WL 17961497, at * 12.  The Court should exclude Prof. Richards' opinions as well.

## V.    CONCLUSION

For the reasons stated above, Google respectfully requests to exclude the Richards Report in its entirety.

Dated: September 29, 2023                              COOLEY LLP


By: */s/ Kyle C. Wong*
         Kyle C. Wong

Attorney for Defendant
GOOGLE LLC

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

GOOGLE'S *DAUBERT* MOTION
TO EXCLUDE NEIL RICHARDS
CASE NO. 4:21-CV-02155-YGR-VKD