# EXHIBIT 10
# to Declaration of
# W. Somvichian

# (REDACTED VERSON OF DOCUMENT SOUGHT TO BE FILED UNDER SEAL)

Page 1

1                UNITED STATES DISTRICT COURT
2               NORTHERN DISTRICT OF CALIFORNIA
3                      OAKLAND DIVISION
4
5    In re Google RTB Consumer    )
     Privacy                      ) Case No.
6    Litigation,                  ) 4:21-cv-02155-YGR-VKD
                                  )
7                                 )
     This document applies to:    )
8    All actions                  )
     _____ )
9
10
11
12         VIDEO-RECORDED DEPOSITION OF GREG REGAN
13
14              Tuesday, September 5, 2023
15                San Francisco, California
16
17
18
19
20
21
22
23   Stenographically Reported By:
24   Hanna Kim, CLR, CSR No. 13083
25   Job No. 6056486

1  firm Veritext Legal Solutions.
2           I am not related to any party in this
3  action, nor am I financially interested in the
4  outcome.
5           If there are any objections to proceeding,
6  please state them at the time of your appearance.
7           Counsel and all present, including
8  remotely, will now state their appearances and
9  affiliations for the record beginning with the
10 noticing attorney.
11          MR. SALDAÑA:  My name is Robby Saldaña.
12 I'm with Cooley LLP.  I'm representing Google in
13 this matter.
14          MS. WEAVER:  Lesley Weaver with Bleichmar
15 Fonti & Auld on behalf of Plaintiff.
16          MR. SAMRA:  Josh Samra with Bleichmar
17 Fonti & Auld, also with Plaintiff.
18          MS. PRITZKER:  Elizabeth Pritzker with
19 Pritzker & Levine on behalf of the Plaintiffs.
20          MS. REDDY:  Aarti Reddy from the Cooley
21 law firm on behalf of Defendant, Google.
22          THE VIDEOGRAPHER:  And there is a Brian
23 Danitz joining as well.
24          Will the court reporter please swear in
25 the witness, and then counsel may proceed.

1           GREG REGAN,
2    having been duly administered an oath over,
3       was examined and testified as follows:
4
5                   EXAMINATION
6    BY MR. SALDAÑA:
7       Q.   Good morning, Mr. Regan.
8       A.   Good morning.
9       Q.   Today you are under an oath to tell the
10   truth.  This is the same oath that you would be
11   under if you were in court.  So even though we are
12   not in a formal court setting, the same oath
13   applies.
14           Do you understand?
15      A.   I do.
16      Q.   The court reporter is transcribing
17   everything that we say.  She cannot transcribe if we
18   are talking at the same time.  So please let me ask
19   my questions completely before you respond, and I
20   will do the same for your answers.
21           Do you understand?
22      A.   I do.
23      Q.   And because of the court reporter is
24   [verbatim] transcribing your answers, it is
25   important that you answer oral -- orally and

1      Q.   Doesn't this document say that ██████
2    ████████████████████████████████████████ --
   ████████████████████████████████
4      A.   That's what this document says.
5    █ ██████████████████████████████████████████
   ██████████████████████████████
7      A.   That's what this document says.
8      Q.   What would you understand ███████████
9    ████████████████████████████████████████████
   ██████████████████
11     A.   I'm also looking at the last sentence in
12   which the document states that █████████████
13   ████████████████████████████████████████████
14   ████████████████████████████   [As read]
15          So that's -- would be consistent with my
16   understanding of how Google assembled its
17   information in order to summarize RTB revenue
18   relevant to my analysis during the class period.
19     Q.   I don't think that addresses the question
20   that I asked, which wasn't about the last sentence
21   in that bullet.
22          The question is, what would you understand
23   ████████████████████████████████████████████
   █████████████████████████████
25     A.   The best thing to do would be to -- to ask

1        ████████████████████████████████  Based on
2   this document, let's assume that ████████████
3   ████████████████████████████████████████████
4   ████████████████████████████
5          In this hypothetical, isn't it possible
6   for Google to generate revenue without ████████
7   ████████████████████████████
8        A.   Hypothetically, to the extent that that
9   revenue is generated from a third-party customer.
10       Q.   So, yes, Google could still generate
11  revenue from an ad opportunity in this hypothetical
12  even if ████████████████ doesn't [verbatim]
13  purchase it?
14       A.   In the hypothetical, Google can generate
15  revenue -- there's -- from a customer other than ██
16  ████████████████
17       Q.   In -- in your report, you -- did -- did
18  you consider whether ████████████████████████████
19  ████████████████████████████████
20       A.   Based upon my familiarity with the
21  documents, including the fact that I -- I cited to
22  this document, well, my recollection is yes.
23       Q.   How did that figure into your opinions?
24       A.   It figured into my opinions in my
25  development of my understanding of what is the

1  relevant revenue stream at issue to identify for
2  purposes of my unjust enrichment calculation.
3      Q.   Can you clarify what you mean by "relevant
4  revenue stream" again?
5      A.   Yes.  My objective was to identify where
6  within Google's advertising revenue RTB revenue was
7  reported and how it was accumulated.
8      Q.   So the relevant revenue stream wouldn't be
9  revenue from GDN?
10     A.   The relevant revenue stream is RTB
11 revenue.
12     Q.   So, yes or no, does RTB revenue include
13 revenue from GDN?
14          MS. WEAVER:  Objection.  Vague.
15 Ambiguous.  Calls for speculation.
16 BY MR. SALDAÑA:
17     Q.   Do you know whether RTB revenue includes
18 revenue from GDN?
19          MS. WEAVER:  Objection.  Vague as to "RTB
20 revenue."
21          THE WITNESS:  I think what's important is
22 that my analysis is to present a methodology, a -- a
23 common methodology, to identify RTB revenue.  And
24 what I relied upon was the discovery process,
25 including, I think, the interrogatories, in which --

Page 72

1   shares information with third parties?
2        A.   I was connecting those two things.  And in
3   part, it was to express my under- -- recollection
4   that I -- that I don't know how much DV360 revenue
5   was generated during the period in how Google
6   internally treated it as a different category of
7   revenue.  That's...
8        Q.   What --
9        A.   -- what I was thinking.
10       Q.   Sorry, Mr. Regan.
11            Aren't Plaintiffs alleging that what's
12  improper in Google RTB is the selling or sharing of
13  information to third parties through Google RTB?
14       A.   Yes, that's my understanding.
15       Q.   If DV360 and GDN don't transmit data to
16  third parties, isn't that not at issue in this case?
17            MS. WEAVER:  Objection.
18            THE WITNESS:  That would be consistent
19  with my understanding.
20  BY MR. SALDAÑA:
21       Q.   Thank you, Mr. Regan.  You can set
22  Exhibit 2 to the side.  We'll turn back to
23  Exhibit 1, your report.
24            Turning to Paragraph 29, this is on page
25  10, do you see what's titled as "Figure 1"?

Page 80

1                Okay.
2        Q.   So you should -- if you can look at lines
3   6 through 7, it sort of where it lines up.
4             Have you seen this proposed class
5   definition before?
6        A.   Yes.
7        Q.   And could -- could you state for the
8   record what that is?
9        A.   Reading lines 6 to 7 of page 8, it states
10  "All individual Google account holders subject to a
11  Google United States Terms of Service whose personal
12  information was sold or shared by Google in its Real
13  Time Bidding auctions after June 28, 2016."
14       Q.   So focused on this definition, isn't it
15  correct that the proposed class here is limited to
16  Google account holders subject to a Google United
17  States terms of service?
18       A.   That -- that's my understanding.
19       Q.   So revenue from individuals who are not
20  Google account holders isn't at issue in this case?
21       A.   It was a -- it was a double negative
22  there.
23       Q.   Is -- is revenue from people who are not
24  Google account holders at issue in this case?
25       A.   I don't believe so.

1    Q.   And could -- could you explain why --
2    could you explain, saying that you don't believe so,
3    do you have any reason to doubt that?
4    A.   No.  Just that I'm not a lawyer, and I
5    think the attorneys are the best people to ask about
6    the definition of the class.
7    Q.   So on page 15 of your report, Paragraph
8    38, you state, "Having determined Google's gross RTB
9    revenues for U.S. account holders for most of the
10   Class Period."  [As read]
11        Correct?
12   A.   So I -- I got to page 15.  I was trying to
13   figure out where you're reading.  I just saw it now
14   on Paragraph 38.  Okay.  I'm with you.
15   Q.   So don't you state there, essentially,
16   that you're determining Google's gross RTB revenues
17   for U.S. account holders?
18   A.   Yes.
19   Q.   So you are trying to line up your analysis
20   with the proposed class definition; correct?
21   A.   Yes.
22   Q.   Which is limited to Google account
23   holders; correct?
24   A.   That's my understanding.
25   Q.   Did you do anything to investigate the

1   part of the class definition that focuses on subject
2   to a Google U.S. terms of service?
3       A.   What I recall is the -- the allegation, I
4   think it's my understanding that all U.S. account
5   holders must agree to the U.S. term -- terms of
6   service, and that those terms of service have been
7   substantially consistent throughout the class
8   period.
9       Q.   When you say "allegation," you're
10  referring to an allegation in the operative
11  Complaint in this case?
12      A.   Yes.
13      Q.   And your understanding that all U.S.
14  account holders must agree to the U.S. terms of
15  service is based solely on that allegation?
16      A.   I don't think it's based solely on that
17  allegation.  I -- the documents that I've seen,
18  including the -- the terms of service, I think
19  reenforce that recollection.  I have a recollection
20  of -- of testimony on this particular point.  But I
21  have seen other documents that perhaps it was
22  discovery responses that indicate or reenforce my
23  recollection.
24      Q.   Focused on the class definition, wouldn't
25  this exclude revenue that Google received or

1    generated prior to June 28th, 2016?
2         A.   Yes, I believe so.
3         Q.   So taking a step back in your process for
4    doing a defendant's profit -- profits, what do you
5    want to know about the defendant's business when
6    you're trying to undertake this approach?
7         A.   As a general matter?
8         Q.   Yeah, as a general matter.
9         A.   I want to know what lines of business the
10   defendant is engaged in.  I want to understand how
11   the entity generates revenues and profits and how
12   management accumulates that information and reviews
13   it, I think as a starting place.
14        Q.   Would you want to know whether the
15   defendant has other revenue that isn't attributable
16   to the alleged harmful act in the case?
17        A.   Yes.
18        Q.   And why is that?
19        A.   For the reasons described in my earlier
20   testimony, which is, you want to isolate the revenue
21   and related profits that are attributable to the
22   alleged harmful act.
23        Q.   Would you want to know whether the
24   defendant has other revenue streams for products
25   that can compete with each other?

Page 94

1  [as read]; correct?
2      A.   Yes.
3      Q.   You -- you excluded ▮▮▮▮▮▮ from
4  Figure 2; correct?
5      A.   I don't know what you mean ▮▮▮▮▮▮
6      Q.   Well, in paragraph 16 -- excuse me,
7  paragraph 36, you're referring to Google's RTB
8  revenue being ▮▮▮▮▮▮
9  ▮▮▮▮▮▮ [as read]; correct?
10     A.   Yes.
11     Q.   Figure 2 has information only for ▮
12  ▮▮▮▮▮▮ isn't that right?
13     A.   Yes.
14     Q.   So you excluded ▮▮▮▮▮▮
15  this figure?
16     A.   Yes.  Your question was on "non-user,"
17  which I didn't understand.
18     Q.   Okay.  But to clarify, did -- Figure 2
19  excludes ▮▮▮▮▮▮ correct?
20     A.   Yes.
21     Q.   Why did you exclude ▮▮▮▮▮▮
22     A.   Because I understand and interpret
23  Google's document to mean that those users are not
24  likely to be members of the class as defined in
25  Exhibit 3.

1    Q.   What do you mean by "those users are not
2    likely to be members of the class"?
3    A.   This was my estimation to identify Google
4    account holders that are most likely to have agreed
5    to the Google United States terms of service.
6    Q.   Are you -- or did you equate the term
7    "U.S. user" with a Google account holder subject to
8    a Google United States term of service?
9    A.   That was my best implementation of the
10   definition that Google provided in its spreadsheet,
11   as well as the accompanying interrogatories.
12        And, again, this was to describe a
13   methodology to identify and isolate the relevant
14   revenue stream.
15        And if additional information is provided
16   that allows me to determine that a non-U.S. user, in
17   fact, based upon the identification of their IP
18   address should, in fact, be classified as a U.S.
19   user, that could be easily reclassified.
20   Q.   Does the term "U.S. user" refer to a
21   Google account holder?
22   A.   In Google's spreadsheet, a U.S. user was
23   defined as an individual that Google associates with
24   a location in the United States at the time the user
25   was shown the advertisement.

1    Q.   And to -- to -- to clarify, in terms of
2  your reference to "an individual that Google
3  associates with a location in the United States at
4  the time the user was shown the advertisement," that
5  was based on IP address; correct?
6    A.   Yes.
7    Q.   And to be clear, you're referring to
8  Google's Supplemental Objections and Responses to
9  Plaintiffs' Third Set of Interrogatories; correct?
10   A.   I am.
11   Q.   Do you know whether an individual located
12  outside the United States could have a U.S. IP
13  address?
14   A.   I believe that is possible.
15   Q.   Could you explain that?
16   A.   With the -- with the understanding that
17  I'm not the technical expert, but it's my
18  understanding that there are ways that a location
19  associated with an IP address can be masked, so to
20  speak.
21   Q.   What are the -- is -- is one of the ways
22  that a location could be masked -- excuse me, an IP
23  address could be masked, use of a virtual private
24  network?
25   A.   Yes, that's my understanding.

Page 97

1    Q.   Have you ever used a virtual private
2    network?
3    A.   Yes.
4    Q.   Do you know why someone would use a
5    virtual private network?
6    A.   I know why I have used a virtual private
7    network.
8    Q.   Well, why have you used a virtual private
9    network?
10   A.   For access to work due to security.
11   Q.   Do you know whether someone outside the
12   U.S. could use a -- a -- I'm going to use the
13   term "VPN," which -- virtual private network.
14        Do you understand that?
15   A.   I do.
16   Q.   Okay.  Do you know whether someone outside
17   the U.S. could use a VPN to make it appear as if
18   they have an IP address in the United States?
19        MS. WEAVER:  Objection.
20        THE WITNESS:  I don't know if that's --
21   BY MR. SALDAÑA:
22   Q.   Just if you know.
23   A.   -- certain that that's the reason that
24   they did it, but I think that that would be the --
25   the outcome.

Page 224

1                          JURAT
2
3          I, GREG REGAN, do hereby certify under
4     penalty of perjury that I have read the foregoing
5     transcript of my deposition taken remotely via
6     videoconference on Tuesday, September 5, 2023; that
7     I have made such corrections as appear noted herein
8     in ink, initialed by me; that my testimony as
9     contained herein, as corrected, is true and correct.
10
11          Dated this _____ day of _____, 2023,
12     at _____.
13
14
15
16
17
18                          _____
                            GREG REGAN
19
20
21
22
23
24
25     Job No. CS6056486

Page 225

1   CERTIFICATE OF REPORTER
2           I, Hanna Kim, a Certified Shorthand
3   Reporter, do hereby certify:
4           That prior to being examined, the witness
5   in the foregoing proceedings was by me duly sworn to
6   testify to the truth, the whole truth, and nothing
7   but the truth;
8           That said proceedings were taken before me
9   at the time and place therein set forth remotely via
10  videoconference and were taken down by me in
11  shorthand and thereafter transcribed into
12  typewriting under my direction and supervision;
13          I further certify that I am neither
14  counsel for, nor related to, any party to said
15  proceedings, not in anywise interested in the
16  outcome thereof.
17          Further, that if the foregoing pertains to
18  the original transcript of a deposition in a federal
19  case, before completion of the proceedings, review
20  of the transcript [x] was [ ] was not requested.
21          In witness whereof, I have hereunto
22  subscribed my name.

    Dated: 7th day of September 2023
23
24
            Hanna Kim
25          CLR, CSR No. 13083