# EXHIBIT 17
## to Declaration of
## W. Somvichian

## (REDACTED VERSON OF DOCUMENT SOUGHT TO BE FILED UNDER SEAL)

1                UNITED STATES DISTRICT COURT

                NORTHERN DISTRICT OF CALIFORNIA

2                      OAKLAND DIVISION

3

4    In re:  Google RTB Consumer )

             Privacy Litigation  )

5                                )

                                 )

6                                )4:21-CV-02155-YGR-VKD

                                 )

7                                )

                                 )

8                                )

9         DEPOSITION OF KIMBERLEY WOODRUFF, produced, sworn

10   and examined on May 4, 2023, between the hours of nine

11   o'clock in the forenoon and five o'clock in the

12   afternoon of that day, at the Courtyard by Marriott,

13   610 Bolivar Street, Jefferson City, Missouri 65101,

14   before Jeanne M. Pedrotty, a Certified Court Reporter

15   (MO) and Certified Shorthand Reporter (IL), in a

16   certain cause now pending in the United States

17   District Court, Northern District of California,

18   Oakland Division, in re:  Google RTB Privacy

19   Litigation; on behalf of the Defendant.

20

21

22

23

24

25       Job No. CS5895022

                                          Page 5

1    class.

2              MS. PAULSON:  Jenny Paulson from Simmons

3    Hanly Conroy on behalf of Ms. Woodruff and the

4    punitive class.

5              VIDEOGRAPHER:  Thank you.  Jeanne, please

6    swear in the witness.

7                    KIMBERLEY WOODRUFF,

8    of lawful age, produced, sworn and examined on behalf

9    of the DEFENDANT, deposes and says:

10        (Starting time of the deposition:  9:47)

11                    EXAMINATION

12   QUESTIONS BY MR. WONG:

13        Q.   Good morning, Ms. Woodruff.  How are you?

14        A.   Good morning.  I'm well.

15        Q.   So just wanted to go over a few rules here

16   today to hopefully smooth over the deposition and make

17   it as quick and painless as possible.  Do you

18   understand that you are under oath, which requires you

19   to tell the truth today under penalty of perjury?

20        A.   Yes.

21        Q.   And you understand that oath is the same as

22   though you were in court?

23        A.   Yes.

24        Q.   And the court reporter is transcribing

25   everything that you say, so if you could try to answer

1    which you were talking to Mr. Barnes you hadn't read

2    Google's definition; is that correct?

3          A.    Correct.

4          Q.    So when you were talking to him and you

5    felt that it was, quote/unquote, wrong for Google to

6    share personal information, what did you mean by

7    personal information?

8              MR. BARNES:   Objection to the extent it

9    calls for expert opinion, legal conclusion and that

10   your answer would reveal content of privileged

11   communications with counsel.

12             THE WITNESS:   I would consider personal

13   information -- at that time I considered it to be

14   anything that was personally linked to me.

15         Q.    (By Mr. Wong)  What do you mean by

16   personally linked to you?

17         A.    For example, my name, my e-mail address,

18   the address that identifies my computer.

19         Q.    Anything else that you can think of?

20         A.    As pertains to that conversation at that

21   time, that is what I had in my head.

22         Q.    And has that definition changed over time?

23   I'm sorry, strike that.  Has that definition changed

24   since that time?

25             MR. BARNES:   Objection; vague.  Calls for a

1    legal conclusion, expert opinion, and to the extent it

2    reveals content of privileged communications.

3              THE WITNESS:  Can you repeat your question,

4    please?

5         Q.   (By Mr. Wong)  Has that definition changed

6    since that time?

7         A.   It has expounded -- expanded.

8         Q.   And what has it expanded to include?

9         A.   Personal information is also anything that

10   identifies me.  Anything that can be attached to

11   something else that can identify me.

12        Q.   Can you give me an example?

13        A.   My address, my phone number, my search

14   history, what I look at, what apps I use.  That's all

15   personal to me.

16        Q.   When you say, "search history", what do you

17   mean?

18        A.   What I mean by search history is what I

19   look at on the internet.

20        Q.   How do you browse the internet?

21             MR. BARNES:  Objection; vague.

22             THE WITNESS:  Through Google, Chrome,

23   usually those are the main two.

24        Q.   (By Mr. Wong)  When you say, "Google", what

25   do you mean?

```
 1        Q.   (By Mr. Wong)  So I was saying can you
 2   think of any advertisements -- strike that.  Can you
 3   think of any advertisements that you have received
 4   that relate to these allegedly sensitive issues that
 5   resulted from information collected through your use
 6   of your Google account that you allege that Google
 7   sold to third parties?
 8             MR. BARNES:  Objection; calls for
 9   speculation; compound; calls for expert opinion.  You
10   may answer if you can.
11             THE WITNESS:  What I do know is that I have
12   received advertisements on ████████ and I don't know
13   how that would have happened.  I'm not a technical
14   person.
15        Q.   (By Mr. Wong)  Have you used -- have you
16   used Google services while you were logged in and
17   looked at websites or information related to
18   ████████
19        A.   No, not that I recall.
20        Q.   Can you think of any other advertisements
21   other than the ████████ -- ones related to
22   ████████ that you -- that deal with the topics that
23   we just looked at in this paragraph that you believe
24   relate to your use of Google's -- of Google services
25   that Google sold to third parties?
```

Page 60

```
 1          A.    Not the examples that are used here.

 2          Q.    How about -- what examples do you have

 3   outside of these examples that we just looked at?

 4          A.    Honestly, in my head, almost every kind of

 5   advertising I get because my search engine is Google.

 6          Q.    Can you give me an example of an ad that

 7   really sits on your mind that you believe --

 8          A.    If I look at ▆▆▆▆ I get ▆▆▆▆ ads.  If I

 9   look at ▆▆▆▆, I get ads pertaining to the kinds of

10   ▆▆▆▆ I look at, or ▆▆▆▆ or anything.

11          Q.    Do you not find those ads helpful?

12          A.    I have more than one answer for that.  I

13   don't know if I'm allowed.

14          Q.    You're allowed as many answers as you want.

15                MR. BARNES:  Ms. Woodruff, you are allowed

16   to answer the question.

17                THE WITNESS:  Do I find those

18   advertisements helpful?  No, I do not.

19          Q.    (By Mr. Wong)  Is that your only answer?

20          A.    I find those advertisements annoying and I

21   find them to be invasive.

22          Q.    Have you ever clicked on one of those

23   advertisements?

24          A.    If I did it was by accident.

25          Q.    And when we're talking about ads here, and
```

Page 63

1    so.

2              Q.    And can you recall which ads?

3              A.    I can't remember the name of the company,

4    but like, it was ███████ and it had to do with being

5    an ████████████████████████████ And so from

6    there was an advertisement for another site that I

7    believe was considered one that emphasized ████████

8              Q.    Do you believe that to be a sensitive

9    category; ██████████████████████████

10             A.    It is.

11             Q.    Now, these ads related to the content of

12   the website you were viewing, though, correct? ████

13   for ███████████████████ to ████████████████

14             MR. BARNES:  Objection; calls for

15   speculation; expert opinion.  You may answer.

16             THE WITNESS:  Okay.  Will you repeat your

17   question, please?

18             Q.    (By Mr. Wong)  So these ads related to the

19   content of the website you were reviewing, correct?

20             A.    Yes.

21             Q.    So you're not surprised when, say, you're

22   on a website about travel and you see travel related

23   ads, are you?

24             A.    Surprised?  No.

25             Q.    And do you have any reason to think that

Page 85

1      Q.    Same questions for your family.  So outside

2    of -- I think we already pretty extensively delved

3    into your nieces and nephews, outside of your nieces

4    and nephews, has anyone used your -- in your family,

5    used your laptop or phones in the past year?

6          A.    Yes.

7          Q.    And who are those individuals?

8          A.    Niece, nephew, brother, I think that's it.

9          Q.    So for your brother, do you know how he

10   used any of those devices?

11         A.    He used my laptop, I'm sure, to look for

12   something on the internet.  Niece and nephew, it

13   depends which device.

14         Q.    We already discussed your nieces and

15   nephews, correct?

16         A.    Uh-huh.

17         Q.    Does your brother ever use any of your

18   phones?

19         A.    He has.  I don't know if it's been this

20   year.

21         Q.    Do you know what he's used it for?

22         A.    To make a call.

23         Q.    Do you know if he's used it to browse the

24   internet or use any Google services?

25         A.    I don't know.

1    used by Google, cookies or anything else that can be

2    attached, used with my personal information in

3    real-time bidding to other companies without my

4    permission.

5          Q.    (By Mr. Wong)  Are you familiar with the

6    term "IP address"?

7          A.    Vaguely.

8          Q.    What is your understanding of what that

9    means?

10         A.    An IP address is sort of like your home

11   address except for it is your device's address.

12               MR. BARNES:  I'm sorry.  I missed my -- I

13   missed my objection.  Objection; calls for expert

14   opinion.  Let me postdate it.  I'm sorry. I was

15   daydreaming, but, yes -- and you can answer and thank

16   you for your answer.

17         Q.    (By Mr. Wong)  Do you understand that IP

18   addresses can correspond to approximate geographic

19   locations?

20               MR. BARNES:  Objection; calls for expert

21   opinion and speculation.  You may answer if you can.

22               THE WITNESS:  My understanding is that an

23   IP address is attached solely to a device.

24         Q.    (By Mr. Wong)  And if it weren't attached

25   solely to a device, would that change your

1            Q.   (By Mr. Wong)  Yes.  Outside of this

2    litigation, have you ever gone to the cookies setting

3    in your Android device?

4            A.   No.

5            Q.   Were you aware of this setting prior to the

6    lawsuit?

7            A.   No.

8            Q.   When you purchased your Android device, did

9    you do any research into privacy settings?

10           A.   No.

11           Q.   Do you see the setting called, "Block third

12   party cookies"?

13           A.   Yes.

14           Q.   Do you understand that -- that setting

15   prevents websites from setting certain cookies that

16   can be used for personalized advertising?

17                MR. BARNES:  Objection; calls for

18   speculation.

19                THE WITNESS:  I'm not sure what the

20   difference is for each setting.

21                (Whereupon, Exhibit 17 was marked for

22   identification.)

23           Q.   (By Mr. Wong)  Exhibit 17 is

24   Bates stamped PLFSRTBWoodruff0001715.  This purports

25   to be a screenshot from Plaintiff's Android device.

1    Ms. Woodruff, do you recognize this document?

2          A.    Yes.

3          Q.    Prior to this litigation, had you ever gone

4    to the privacy and security setting in your Android

5    phone?

6          A.    I don't believe so.

7          Q.    Do you see "do not track" off at the

8    bottom?

9          A.    Yes.

10         Q.    Do you know what "do not track" does?

11               MR. BARNES:    Objection; calls for

12   speculation.

13               THE WITNESS:    I do not.

14         Q.    (By Mr. Wong)    Since this lawsuit was

15   filed, did you do any research into the privacy

16   settings with respect to your Android device outside

17   of doing so for counsel?

18         A.    I did not.

19         Q.    Is there a reason why you have not looked

20   into your privacy settings?

21         A.    I didn't know I should.

22               (Whereupon, Exhibit 18 was marked for

23   identification.)

24         Q.    (By Mr. Wong)    Exhibit 18 is a document

25   Bates Stamped PLFSRTBWoodruff00001718; do you see this

Page 186

 1                    CERTIFICATE OF REPORTER
 2     STATE OF MISSOURI    )
                            ) ss.
 3     CITY OF ST. LOUIS    )
 4     I, Jeanne M. Pedrotty, a Certified Court Reporter (MO)
 5     and Certified Shorthand Reporter (IL), do hereby
 6     certify that the witness whose testimony appears in
 7     the foregoing deposition was duly sworn by me; that
 8     the testimony of said witness was taken by me to the
 9     best of my ability and thereafter reduced to
10     typewriting under my direction; that I am neither
11     counsel for, related to, nor employed by any of the
12     parties to the action in which this deposition was
13     taken, and further that I am not a relative or
14     employee of any attorney or counsel employed by the
15     parties thereto, nor financially or otherwise
16     interested in the outcome of the action.
17
18
19                    Jeanne M. Pedrotty
20
21
22
23
24
25

Page 189

1   In Re: Google RTB Consumer Privacy Litigation v.

2   Kimberley Woodruff (#5895022)

3                 ACKNOWLEDGEMENT OF DEPONENT

4       I, Kimberley Woodruff, do hereby declare that I

5   have read the foregoing transcript, I have made any

6   corrections, additions, or changes I deemed necessary as

7   noted above to be appended hereto, and that the same is

8   a true, correct and complete transcript of the testimony

9   given by me.

10

11  _____    _____

12  Kimberley Woodruff                        Date

13  *If notary is required

14                      SUBSCRIBED AND SWORN TO BEFORE ME THIS

15                      _____ DAY OF _____, 20___.

16

17

18                      _____

19                      NOTARY PUBLIC

20

21

22

23

24

25