COOLEY LLP
MICHAEL G. RHODES (SBN 116127)
(rhodesmg@cooley.com)
WHITTY SOMVICHIAN (SBN 194463)
(wsomvichian@cooley.com)
AARTI REDDY (SBN 274889)
(areddy@cooley.com)
KYLE C. WONG (SBN 224021)
(kwong@cooley.com)
REECE TREVOR (SBN 316685)
(rtrevor@cooley.com)
ANUPAM DHILLON (SBN 324746)
(adhillon@cooley.com)
ELIZABETH SANCHEZ SANTIAGO (SBN 333789)
(lsanchezsantiago@cooley.com)
3 Embarcadero Center, 20th floor
San Francisco, CA 94111-4004
Telephone:   +1 415 693 2000
Facsimile:   +1 415 693 2222

COOLEY LLP
ROBBY L.R. SALDAÑA (DC No. 1034981)
(rsaldana@cooley.com)
(*Admitted pro hac vice*)
KHARY J. ANDERSON (DC No. 1671197)
(kjanderson@cooley.com)
(*Admitted pro hac vice*)
1299 Pennsylvania Avenue, NW, Suite 700
Washington, DC 20004-2400
Telephone:   +1 202 842 7800
Facsimile:   +1 202 842 7899

Attorneys for Defendant
GOOGLE LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| In re Google RTB Consumer Privacy Litigation,<br><br>This Document Relates to: *all actions* | Master File No. 4:21-cv-02155-YGR-VKD<br><br>**DECLARATION OF GLENN BERNTSON IN SUPPORT OF GOOGLE'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION AND APPOINTMENT OF CLASS REPRESENTATIVES AND CLASS COUNSEL** |

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEC. OF G. BERNTSON ISO GOOGLE'S
OPP. TO PLAINTIFFS' MOTION FOR CLASS CERT.
CASE NO. 4:21-CV-02155-YGR-VKD

I, Glenn Berntson, declare as follows:

1. I am the Engineering Director and a Lead of the Google Ad Manager team at Google LLC ("Google"). In that capacity, I have extensive familiarity with the real-time bidding process that Google implements in connection with certain advertising products ("RTB") and oversee a team that is responsible for many aspects of RTB. In this declaration, I explain (a) generally how the RTB process operates as implemented by Google, (b) the information transmitted in the process, (c) the multiple factors that affect whether, and in what form, certain information is included or omitted in the RTB process. I also briefly address some factual errors made in Dr. Zubair Shafiq's expert report submitted in this case. Except where otherwise indicated, I make this declaration based on my own personal knowledge and could competently testify thereto.

2. I am informed that Plaintiffs are asking the Court to certify a class consisting of all "individual Google account holders subject to a Google United States Terms of Service whose personal information was sold or shared by Google in its Real Time Bidding auctions after June 28, 2016." ECF No. 546 at 17.

**Online Advertising Overview**

3. Owners of websites or mobile applications (collectively "publishers") can sell space on their websites and applications for displaying ads ("ad inventory"[1]). Publishers can sell ad inventory through their own ad servers or work through various intermediaries, generally known as sell-side platforms ("SSPs"). Online advertising in general, and ads enabled by RTB in particular, are an essential way for publishers to earn a living, enabling them to provide content and services to their users, often for free.

4. Google Ad Manager is one of Google's SSPs that allows publishers to sell and manage their ad inventory. To use Ad Manager, a publisher must create an account and accept the relevant Ad Manager terms.[2] Google's other SSPs are AdSense and AdMob, which also enable

---

[1] A general description of ad inventory in the context of online advertising is described at this Help article: https://support.google.com/admanager/answer/10064557.
[2] An example of the Ad Manager Policy, previously produced in this litigation as GOOG-HEWT-00133767, is attached to this Declaration as Exhibit 1.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

2

DEC. OF G. BERNTSON ISO GOOGLE'S
OPP. TO PLAINTIFFS' MOTION FOR CLASS CERT.
CASE NO. 4:21-CV-02155-YGR-VKD

publishers to sell ad inventory but are optimized for different groups of publishers.[3]

5. Advertisers can buy ad inventory on publishers' websites and applications through various intermediaries, including ad networks, ad agencies, and demand side platforms ("DSPs").

6. RTB generally refers to a process by which publishers can make their ad inventory available for sale through a real-time exchange of information and an automated bidding process with potential buyers. Some publishers implement RTB themselves to solicit bids directly for their ad inventory; others work through various intermediaries to enable RTB. The Interactive Advertising Bureau ("IAB") has established an industry standard protocol for the form and content of information transmitted in RTB, known as the "OpenRTB" protocol, which has been in place since approximately 2012.[4]

7. Google offers two products known as Authorized Buyers ("AB") and Open Bidding ("OB") that enable buyers to purchase ad inventory through RTB. Before participants in Authorized Buyers and Open Bidding can bid on ad inventory, they must go through a Google vetting process and agree to Google's terms and incorporated policies, which restrict the use and storage of information they receive in the RTB process.[5] Google regularly audits AB and OB participants for compliance with these terms and can take various actions if violations are found, including terminating their access to RTB.

**The Data Flow In RTB**

8. **Ad Requests:** Publishers who sell ad inventory through Google SSPs like Ad Manager must install Google-provided software tools on their webpages and apps. Generally speaking, when a user accesses the publisher's website or app, this software enables the publisher to trigger the user's browser or device to send a request to Google for an ad (an "ad request"). The ad request sent to Google can include various information including: (1) Google's advertising

---

[3] Broadly speaking, Ad Manager is for large publishers who need more sophisticated functionality; AdSense is optimized for publishers who prefer more automation; and AdMob is focused on ad inventory on mobile apps.

[4] *See* https://www.iab.com/wp-content/uploads/2016/03/OpenRTB-API-Specification-Version-2-5-FINAL.pdf (last accessed September 26, 2023) ("Due to very widespread adoption by the industry, OpenRTB was adopted as an IAB standard in January 2012 with the release of version 2.1.").

[5] An example of the Authorized Buyers Terms, previously produced in this as GOOG-HEWT-00001088 is attached here to as Exhibit 2.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

3

DEC. OF G. BERNTSON ISO GOOGLE'S
OPP. TO PLAINTIFFS' MOTION FOR CLASS CERT.
CASE NO. 4:21-CV-02155-YGR-VKD

cookies previously set on its domains; (2) the URL of the website making the ad request; (3) the IP address assigned to the device on which the browser is running; and (4) the device's user agent information[6]. Some of the information in an ad request is information that is part of standard Internet communication protocols, independent of any advertising function, including IP address and user agent.

9. **Bid Requests**: After Google receives the publisher's ad request, it sends bid requests ("bid requests") to certain AB and OB participants (collectively "RTB participants") that the publisher has opted to make eligible to bid on the publisher's ad inventory. The fields of data that can potentially be included in a bid request are detailed in Google's public documentation[7] and generally include information about (1) the ad inventory being made available for bidding (e.g., where it appears on the page, what ads are eligible to be shown), (2) the publisher's web page or app (e.g., the URL of the web page or the id of a mobile application), (3) the user's browser or device (e.g., the IP address and user agent), (4) certain pseudonymous identifiers, if applicable (e.g., certain browser cookies or mobile device identifiers), and (5) general location information (which is generally derived from the IP address, as further explained below). The information in a bid request is either taken directly from the ad request that Google receives, is derived from that information, or is generated from the publisher's account information.

10. Bid requests to RTB participants <u>never</u> contain information taken from the Google Account of a person viewing the web page. Bid requests may or may not relate to a browser or device used by a Google account holder; where they do, the bid request will not contain the identifier for the person's Google account (known as a GAIA) nor any information taken from the person's Google account. Therefore, the information that may be included in a bid request is the same set of non-Google account derived information regardless of whether a user has a Google Account or not.

11. While Google's RTB protocols are compatible with the OpenRTB standard, Google

---

[6] A user agent is information that identifies the user's browser and type of device.
[7] Google's protocol for Authorized BuyersAB is currently available at https://developers.google.com/authorized-buyers/rtb/realtime-bidding-guide; Google's implementation of the OpenRTB protocol is available at https://developers.google.com/authorized-buyers/rtb/openrtb-guide.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

4

DEC. OF G. BERNTSON ISO GOOGLE'S
OPP. TO PLAINTIFFS' MOTION FOR CLASS CERT.
CASE NO. 4:21-CV-02155-YGR-VKD

1  implements additional privacy-preserving steps that are not part of the standard OpenRTB protocol.
2  As a result, Google generally sends less information overall in its bid requests as compared to what
3  is contemplated in OpenRTB, as described further below.

4      12. 

10  .

11      13.    **Bid Responses:** Eligible RTB participants can then evaluate the bid request based
12  on their own criteria and respond with a "bid response" that contains their bid amount, proposed
13  ad, and other information. The winning bid is then selected in an auction process and the
14  corresponding ad is served to the user's device.

15      **Cookies & Cookie-Matching**

16      14.    In general, cookies are small data files stored on a web browser that can serve
17  different functions. For example, a publisher's website may store a cookie on a user's web browser
18  to help the publisher remember information about the user's visits to their websites, for purposes
19  of customizing a user's experience on their sites.

20      15.    Google uses a cookie known as a Biscotti to pseudonymously identify a web
21  browser on a given device, for advertising purposes. Biscotti cookies are not associated with a
22  Google account, and someone who uses a browser with an assigned Biscotti may or may not be a
23  Google account holder. Where the user of a browser with a Biscotti is a Google account holder,
24  Google maintains various internal systems, controls, and policies to prevent the Biscotti from being
25  linked to the individual's Google account.

26      16.    RTB participants may utilize their own cookies, in the same way Google uses a
27  Biscotti. "Cookie matching" allows RTB participants to match their cookies with Google's Biscotti
28  for the same browser. This process allows an RTB participant, for example, to limit the bid requests

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

5

DEC. OF G. BERNTSON ISO GOOGLE'S
OPP. TO PLAINTIFFS' MOTION FOR CLASS CERT.
CASE NO. 4:21-CV-02155-YGR-VKD

they receive to those involving users that they previously interacted with, as determined by the presence of their cookies.

17. Whether cooking matching successfully occurs during any given browsing session depends on many individualized factors. For example, when a user deletes cookies in their browser, (1) any Biscotti cookie associated with the browser is deleted, and (2) an RTB participant can no longer match its cookies with the deleted Biscotti. In addition, RTB participants may opt not to use cookie matching at all and users can also disable cookie matching by opting out of ads personalization (discussed further below).

### Specific Data Fields in RTB Bid Requests

18. I understand that Plaintiffs' motion for class certification addresses certain specific data fields that can be sent in bid requests, including the google_user_id, hosted_match_data, IP_address, user_agent, device identifiers, geolocation fields, detected_verticals, and user_list fields. I address some aspects of these data fields below.

**The google_user_id field**

19. The google_user_id is derived from the Biscotti cookie described above. When a browser associated with a Biscotti sends an ad request to Google, the corresponding bid requests will have an encrypted google_user_id that is unique for each RTB participant that receives a bid request. This limits the ability of bidders to share common ids between one another or with anyone else.

20. The google_user_id is not linked to a Google user's account, and Google maintains various internal systems, controls, and policies to prevent the google_user_id from being tied back to a Google user's account.

21. The google_user_id is often omitted from bid requests depending on numerous individualized factors, as discussed further below.

22. The sample of named-Plaintiffs' data that was produced in this case comes from a source known as the ▮▮▮▮▮▮ ("▮▮▮") log that approximates but does not exactly match the data sent in bid requests. The ▮▮ log contains a google_user_id_present field, which is a field that indicates whether a Biscotti value was included in the ad request sent to Google; it does not

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

6

DEC. OF G. BERNTSON ISO GOOGLE'S
OPP. TO PLAINTIFFS' MOTION FOR CLASS CERT.
CASE NO. 4:21-CV-02155-YGR-VKD

indicate whether the google_user_id was included in a bid request sent to RTB participants.

**The hosted_match_data field**

23. The hosted_match_data field relates to the cookie matching process described above. Where there is a cookie match, information about the match is included in the hosted_match_data field in a bid request.

24. The hosted_match_data field is often omitted from RTB bid requests depending on individualized factors, including the factors described above in which cookie matching does not occur as well as the factors in which google_user_id is omitted, as discussed below.

**IP addresses and the ip_address field**

25. An IP address is a number assigned by an internet service provider to a device that connects to the Internet. Multiple devices may share the same IP address (e.g., all the devices in a home that are using a shared internet connection). IP addresses are included in all HTTP requests to access content or services on a webpage, meaning publishers receive the IP address of a user's device in the normal course of receiving and responding to requests for website content, independently of any advertising-related purpose.

26. IP addresses are included in ad requests that Google receives, as noted above. Google then truncates the IP address value before including it in the corresponding bid requests sent to RTB participants. Specifically, bid requests only include the first three bytes for an IPv4 address or the first six bytes for an Ipv6 address. As a result, RTB participants do not receive the full IP address associated with a given device in the bid requests they receive from Google.[8] This is a privacy-enhancing feature Google has implemented that goes beyond the industry standard process contemplated in OpenRTB.

27. In addition, Google also omits the IP address entirely from bid requests in some circumstances, as described below.

**User Agent**

28. User agent is an information string Google receives in ad requests which typically

---

[8] The full IP address can be sent in a bid request in the limited circumstance where a publisher requests that it be sent to a specific RTB participant for purposes of showing ads on connected TV devices.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

7

DEC. OF G. BERNTSON ISO GOOGLE'S
OPP. TO PLAINTIFFS' MOTION FOR CLASS CERT.
CASE NO. 4:21-CV-02155-YGR-VKD

identifies a device's browser and operating system types and versions. Similar to an IP address, publishers receive user agent information directly from browsers that request content from their websites, as part of standard Internet communication protocols. User agent is included in ad requests Google receives and is then included in the corresponding bid requests sent to RTB participants, although Google sometimes reduces how much information is included in the user agent field in a bid request as an additional privacy measure, as discussed further below.

**Device Advertising ID**

29. A device advertising ID is a unique, per-device, user-resettable identifier, provided by mobile device operating systems, that allows publishers to track user activity for advertising purposes. On an iOS device, this identifier is the Identifier for Advertising ("IDFA"), and on an Android device, this is the Advertising ID ("AdId"). Where Google receives device advertising IDs in an ad request, it may include them in the corresponding bid requests sent to RTB participants, but there are various circumstances in which device advertising IDs are omitted, as discussed below. Further, users may reset the device advertising ID for their device at any time; when they do so, any subsequent bid requests involving that same device will have a different device advertising ID (if the ID is included at all in the bid request). In addition, both iOS and Android provide users with options to not share device advertising IDs.

**General location fields**

30. Bid requests may contain general location data, which is derived from the client IP address in the corresponding ad request. Location data in bid requests is not derived from other information like GPS coordinates detected by a mobile device or any information in a Google user's account.

31. In a bid request, the location information Google provides is shown in the combination of the "lat/lon" and "accuracy" fields. The lat/lon field does not indicate precise geolocation coordinates but rather a reference position, such as a midpoint, for the IP-derived location. The related accuracy field in bid requests is the radius of a circle with the approximate

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

8

DEC. OF G. BERNTSON ISO GOOGLE'S
OPP. TO PLAINTIFFS' MOTION FOR CLASS CERT.
CASE NO. 4:21-CV-02155-YGR-VKD

area of the IP-derived location (measured in meters).[9]

32. To enhance privacy, the location information in bid requests is "coarsened" based on Google standards regarding the minimum size of the area and number of users observed in that area. This provides additional privacy-enhancing protections that go beyond the industry standard protocols for location data in OpenRTB.

**Child-Directed Treatment**

33. In addition, if Google receives an ad request for child-directed content, it does not send any bid requests to RTB participants.

**Verticals and User Lists Are No Longer Included**

34. RTB bid requests previously included a detected_vertical field, which contained the subject matter category (the "vertical") of the website where the ad inventory was located. This ▓▓▓▓▓▓▓▓ field has not been populated in bid requests since approximately February 2020 and there are no other data fields in bid requests that contain information on the vertical(s) of the websites where the ad inventory is located.

35. Bid requests also previously contained a user_list field. As background, RTB participants can create user lists (for example, a list of cookie IDs for browsers that have visited a given web site) and provide them to Google. When a bid request to an RTB participant involved a user on one or more of the RTB participant's user lists, the applicable list was noted in the user_list field. This field has not been populated in bid requests since 2020. We currently allow RTB participants to use uploaded user lists as a filter, to receive bid requests only for a subset of their users they are interested in.

36. Bid requests also previously contained an app_category_ids field. This field contained information on the subject matter category of the app where the ad inventory was located. The categories are publicly available information[10], and are selected by app developers to

---

[9] A bid request may also have information indicating the applicable country, region, metro, city and zip code.

[10] The categories for apps available in the Google Play Store are located here: https://support.google.com/googleplay/android-developer/answer/9859673?hl=en#zippy=%2Capps%2Cgames. The categories for apps available in the Apple App Store are located here: https://developer.apple.com/app-store/categories.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

9

DEC. OF G. BERNTSON ISO GOOGLE'S
OPP. TO PLAINTIFFS' MOTION FOR CLASS CERT.
CASE NO. 4:21-CV-02155-YGR-VKD

categorize their apps in the Google Play store and in the Apple App Stores. This field has not been populated in bid requests since February 2020.

### Many Different Factors Affect What Data Is Included in RTB Bid Requests

37. The foregoing data flow only applies to websites and apps that sell ad inventory through Google's SSPs. If a user visits a non-Google website or application that does not sell ad inventory through Google advertising products, Google advertising products will not receive any data relating to that visit, and no bid requests will be sent to RTB participants. Also, when javascript is disabled on a site, no ad requests are sent to Google and no corresponding bid requests are sent to RTB participants. Individuals can disable javascript through browser settings; for example, the Google Chrome browser has settings that allow users to disable javascript.

38. If Google receives an ad request from a website or app, the data shared in the corresponding bid requests will vary depending on many factors, including (1) features and settings enabled by the publisher, (2) settings enabled by a user in their Google Account, browsers, and devices, and (3) use of third-party software and tools.

39. Broadly speaking, these settings and controls will determine (1) whether ads shown through RTB are based only on "contextual" information like the content of the website where the ad is shown, without using pseudonymous identifiers, or (2) whether cookies or other pseudonymous identifiers can be included (where they are available) which enables RTB participants to select ads based on information they may have on prior activity associated with the identifier. Google generally refers to this latter category as a type of "personalized ads." To be clear, ads shown through RTB are *never* based on information read from a user's Google account and RTB bid requests *never* include such information.

### Publisher Actions and Publisher-Enabled Settings

40. Google Ad Manager publishers can use privacy controls in Google Ad Manager that affect the data included in bid requests.

41. For example, a publisher can enable restricted data processing ("RDP") mode for some or all the traffic on its sites. In RDP mode currently, (1) bid requests will not include google_user_id, device advertising IDs, hosted_match_data, session_id, or IP address, (2) user

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

10

DEC. OF G. BERNTSON ISO GOOGLE'S
OPP. TO PLAINTIFFS' MOTION FOR CLASS CERT.
CASE NO. 4:21-CV-02155-YGR-VKD

agent data is <u>generalized</u>, which means the browser sub-version values in the user agent string are replaced with zeros (for example, iOS 14.5 will be truncated to iOS 14.0), and (3) cookie matching is <u>disabled</u>. Where RDP applies, ads are based only on contextual information. Between approximately January 2020 and October 2021, RDP operated differently and resulted in bid requests being blocked entirely.

42. A publisher may opt to enable RDP mode for all their users who are in U.S. states with certain privacy laws, including California, and can implement this mode either for all traffic from those states or an a per-request basis for individual users who request RDP treatment on the website or app. A publisher can also enable RDP more broadly for all traffic on their sites, regardless of the user's location.

43. Where a publisher opts to implement RDP on a per-request basis, they can use certain tools in Ad Manager to present users with information about the publisher's advertising practices and allow users to consent or opt out. Where a user opts out in this process, that preference is conveyed to Google and bid requests for that user will be treated in the same manner as RDP mode above.

44. A publisher can also opt out of personalized ads altogether on their sites, in which case all bid requests for the publisher's sites will be treated in the same manner as RDP mode described above.

**Individual User Settings, Actions, and Tools**

45. Individual user actions also affect whether various information is included in bid requests, including through their use of (a) account settings in their Google Account; (b) controls and settings in their browsers and devices; (c) publisher-provided settings for personalized ads; and (d) third-party software and tools.

46. Because users have many options for controlling how their data is used in advertising, Google will sometimes receive different privacy treatment signals for the same user. Google's policy is to apply the most restrictive privacy treatment signal it receives. If Google advertising products receive a single signal from a user that they have opted out of personalized ads, regardless of what other signals indicate (even if they indicate the user is OK with personalized

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

11

DEC. OF G. BERNTSON ISO GOOGLE'S
OPP. TO PLAINTIFFS' MOTION FOR CLASS CERT.
CASE NO. 4:21-CV-02155-YGR-VKD

ads), we disable personalized ads.

47. **Publisher provided opt-outs**: As noted above, a publisher may enable RDP mode by presenting users with an option to select RDP treatment. Where a user does so, any bid requests generated from their activity on the publisher's web site will be treated as described above for RDP mode.

48. **GAP setting for signed-in users**: Google Ad Personalization ("GAP") is a Google account setting, available to signed in Google users, that controls what types of ads a user is shown. Account holders can turn GAP off in various ways, including by visiting the Google Ad Settings page at adssettings.google.com and turning off "Ad personalization."

49. When Google determines that a signed in user is opted out of GAP, they are shown only non-personalized ads based on "contextual" information, as referenced above, and certain data in RTB bid requests is omitted or generalized, including all pseudonymous identifiers and hosted match data, and cookie matching is also disabled.

50. To be clear, whether a user is opted out of GAP or not, bid requests never contain personal information read from a user's Google account. This is true even when GAP is enabled. In this circumstance, RTB bid requests are associated only with pseudonymous identifiers, where available, and information associated with those identifiers are kept separate from Google signed in user data.

51. **Signed-out user settings**: A Google account holder who is signed-out from their account can still access the opt-out setting by clicking on the AdChoices icon in an ad that is displayed in their browser. If the ad was served by Google, clicking on that icon will take the user to https://adssettings.google.com/whythisad, which has a link to the https://adssettings.google.com page. Signed-out users can also navigate directly to adsettings.google.com.

52. Signed-out users can also opt out of advertising cookies by visiting the Network Advertising Initiative's ("NAI's") Opt-Out page. That page allows a user to select "Manage My Browser's Opt-Outs" to detect which NAI members, including Google, may engage in personalized advertising on the browser. If a user opts out of personalized advertising by Google on the NAI webpage, the user's browser will rewrite the Biscotti cookie to an "opt-out" value, preventing

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

12

DEC. OF G. BERNTSON ISO GOOGLE'S
OPP. TO PLAINTIFFS' MOTION FOR CLASS CERT.
CASE NO. 4:21-CV-02155-YGR-VKD

Google from using the cookie value for personalized ads. Because the Biscotti cookie is set to an "opt-out" value, Google shows only non-personalized ads on that webpage and certain data in RTB bid requests is omitted or generalized, including all identifiers and hosted match data, and cookie matching is also disabled.

53. When a user has opted out of ads personalization through these various options, users will only receive non-personalized ads and the information in any RTB bid requests will be limited in the same manner as described above for signed-in users who opted out of GAP.

54. **Web browser settings**: Individuals also have access to settings in their web browsers that affect the data included in bid requests. For instance, all common web browsers include settings for users to (1) block some or all cookies, (2) delete existing cookies, or (3) use private browsing modes (e.g., "Incognito" in Chrome, "Private Browsing" in Safari).

55. Blocking cookies: When a user blocks some or all cookies, the browser prevents websites and Google from setting or receiving any cookies. If all cookies are blocked, the browser will not send any cookies to Google. When a user blocks some cookies, such as third-party cookies, the browser does not set or transmit to Google any third-party cookies, including advertising cookies (this includes Biscotti and the derived google_user_id). The Safari, Firefox, and Edge browsers all disable third-party cookies by default. When a user blocks cookies through these settings, the google_user_id will not be included in RTB bid requests, and cookie matching is not functional.

56. Clearing cookies: When a user enables this feature, cookies do not persist across browsing sessions and Google will not receive any cookies set in a prior session. Deleting cookies results in all data linked to cookies being discarded (as the data is no longer linked to a cookie and gets deleted). Also, the google_user_ids derived from a deleted Biscotti cookie are never sent again on a bid request, and thus any subsequent browsing activity can no longer be associated with those deleted identifiers.

57. Private browsing modes: Google Chrome's private browsing mode is called Incognito mode. If Chrome is used in Incognito mode, Chrome creates new cookies for the duration of that Incognito session, and those cookies are deleted when that Incognito session ends. Because

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

13

DEC. OF G. BERNTSON ISO GOOGLE'S
OPP. TO PLAINTIFFS' MOTION FOR CLASS CERT.
CASE NO. 4:21-CV-02155-YGR-VKD

Chrome creates a new set of cookies for that Incognito session, the Biscotti ID and any google_user_ids derived from that Biscotti ID, are unique to that specific Incognito session. They have no relation to, and are not joined with, any cookies or Biscotti ID set during other browsing sessions, including those set during a different Incognito session. Other web browsers, including Safari, Firefox, and Edge, offer private browsing modes that behave similarly to Chrome.

58. If a user returns to the same web pages they visited in a prior but separate private browsing session, new cookies containing a new Biscotti ID will be set. Because the google_user_id is derived from the Biscotti cookie, a user will have a different google_user_id for regular browsing and private browsing sessions. That google_user_id is unique to that specific private browsing session. And if that user returns to any of the same web pages that they visited in a prior but separate private browsing session, they will have a new google_user_id which is unique to that specific private browsing session.

59. <u>Installing browser extensions</u>: A user can also install ad-blocking extensions on their web browser that can be configured to block the browser from sending ad requests. Popular examples of those extensions are AdBlock and Adblock Plus.[11] When a user unchecks the "Allow Acceptable Ads" option in the extension's settings, these ad-blocking extensions may, depending on their configuration, prevent the browser from sending ad requests to Google, which in turn prevents bid requests from being sent to RTB participants.[12]

60. The Interest-Based Ads Opt-out is another example of a browser extension users can install that affects bid requests.[13] This browser extension for Google Chrome is available for download at the Chrome Web Store, which indicates that it has "500,000+ users." When installed, this browser extension rewrites the Biscotti cookie to an "opt-out" value, preventing Google from

---

[11] AdBlock can be downloaded from the Chrome Web Store, available at https://chrome.google.com/webstore/detail/adblock-%E2%80%94-best-ad-blocker/gighmmpiobklfepjocnamgkkbiglidom. AdBlock Plus can be downloaded from the Chrome Web Store, available at https://chrome.google.com/webstore/detail/adblock-plus-free-ad-bloc/cfhdojbkjhnklbpkdaibdccddilifddb.

[12] More information concerning AdBlock Plus's "Acceptable Ads" allow list is available at https://adblockplus.org/en/acceptable-ads#optout.

[13] The IBA Opt-out can be downloaded from the Chrome Web Store, available at https://chrome.google.com/webstore/detail/iba-opt-out-by-google/gbiekjoijknlhijdjbaadobpkdhmoebb.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

14

DEC. OF G. BERNTSON ISO GOOGLE'S
OPP. TO PLAINTIFFS' MOTION FOR CLASS CERT.
CASE NO. 4:21-CV-02155-YGR-VKD

using the cookie value for personalized ads. Because the Biscotti cookie is set to an "opt-out" value, Google shows only non-personalized ads in that application and the google_user_id will not be included in RTB bid requests, and cookie matching is not functional.

61. <u>Device-level settings</u>: There are also various settings available to users on their mobile devices that impact the data sent in RTB bid requests. For example, if an iOS device user does not consent to App Tracking Transparency on their device when prompted by an application she visits, then ad requests from that app do not contain the IDFA The App Tracking Transparency consent limits publishers to creating ad requests from only user information collected from their own applications and sites, and prevents cross-app tracking. iOS users can also turn off the setting for "Allow Apps to Request to Track," which completely disables the App Tracking Transparency popup across all apps on the user's device. When this setting is disabled, the user's device automatically rejects App Tracking Transparency in every app which requests it. As a result, no ad requests from any app contains the device's IDFA.

62. In addition an Android device user may reset the AdID for their device whenever they wish. When a user does so, this results in all data linked to that AdID being discarded. Any subsequent application activity can no longer be associated with that deleted identifier.

63. Android users also have the option to entirely delete the AdID on their device. If an Android user deletes the AdID from their device, then it is no longer provided to app developers and is instead returned as a string of zeros in an ad request. As a result, it is not included in any bid requests relating to that user's device.

64. <u>Using a VPN or proxy server</u>: If a user or their network administrator employs a proxy server or VPN (Virtual Private Network) that masks the sending device's IP address, then an ad request in that circumstance and the corresponding bid request would contain the IP address assigned by the VPN or proxy server, not the private IP address of the device itself (which in the case of the bid request, will be a truncated version of that IP address as noted above). Note, Apple is providing turn-key IP proxy servers on some of their products, which has the same effect).

65. Because location in bid requests is derived from IP address, the location information of a user using a VPN or proxy server will be derived from the IP address assigned by the VPN or

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

15

DEC. OF G. BERNTSON ISO GOOGLE'S
OPP. TO PLAINTIFFS' MOTION FOR CLASS CERT.
CASE NO. 4:21-CV-02155-YGR-VKD

proxy server, which may be different from the user's actual location.

### Dr. Shafiq's Assertions are Inaccurate

66. I understand that Plaintiffs' expert Dr. Shafiq contends that "Google maintains common processes and systems by which it can associate or link user data shared in Google RTB auctions with Google account holders, who are identified through their unique Google Account ID, or GAIA ID." Shafiq Report ¶ 96. Dr. Shafiq further states that there are "several ways in which Google can <u>and does</u> link the Biscotti ID to the GAIA ID or vice-versa" for this purpose. *Id*. ¶ 97 (emphasis added).

67. As part of standard business practices, Google does <u>not</u> "link the Biscotti ID to the GAIA ID or vice-versa," including through the processes that Dr. Shafiq refers to in Section XIII of his report. Google does not link or join data keyed to GAIA IDs with data keyed to Biscotti IDs and maintains strict server-side segregation between these two types of data. Google ensures data associated with Biscotti identifiers is not linked to or used in combination with personally identifiable information. In the context of RTB, where a bid request involves a browser or device used by a Google account holder, Google maintains multiple internal systems, controls, and policies to prevent the data in bid requests from being linked to those individuals' Google accounts.

I declare under penalty of perjury of the laws of the United States that the foregoing is true and correct. Executed in New York, New York on September 29, 2023.

*/s/ Glenn Berntson*
Glenn Berntson

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

16

DEC. OF G. BERNTSON ISO GOOGLE'S
OPP. TO PLAINTIFFS' MOTION FOR CLASS CERT.
CASE NO. 4:21-CV-02155-YGR-VKD