COOLEY LLP
MICHAEL G. RHODES (SBN 116127)
(rhodesmg@cooley.com)
WHITTY SOMVICHIAN (SBN 194463)
(wsomvichian@cooley.com)
AARTI REDDY (SBN 274889)
(areddy@cooley.com)
KYLE C. WONG (SBN 224021)
(kwong@cooley.com)
REECE TREVOR (SBN 316685)
(rtrevor@cooley.com)
ANUPAM DHILLON (SBN 324746)
(adhillon@cooley.com)
ELIZABETH SANCHEZ SANTIAGO (SBN 333789)
(lsanchezsantiago@cooley.com
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111-4004
Telephone: +1 415 693 2000
Facsimile: +1 415 693 2222

COOLEY LLP
ROBBY L.R. SALDAÑA (DC No. 1034981)
(rsaldana@cooley.com)
(*Admitted pro hac vice*)
KHARY J. ANDERSON (DC No. 1671197)
(kjanderson@cooley.com)
(*Admitted pro hac vice*)
1299 Pennsylvania Avenue, NW, Suite 700
Washington, DC 20004-2400
Telephone: +1 202 842 7800
Facsimile: +1 202 842 7899

Attorneys for Defendant
GOOGLE LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

In re Google RTB Consumer Privacy Litigation,

This Document Relates to: *all actions*

Master File No. 4:21-cv-02155-YGR-VKD

**DECLARATION OF SUNEETI VAKHARIA IN SUPPORT OF DEFENDANT GOOGLE LLC'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION AND APPOINTMENT OF CLASS REPRESENTATIVES AND CLASS COUNSEL**

I, Suneeti Vakharia, declare as follows:

**1.** I am a Director of Product Management on the Trust, Transparency & Consent team at Google LLC ("Google"), where I have been employed since 2011.[1] I have held my current title since May 2023. Previously, I served as a Group Product Manager on the Identity Ecosystems team; a Group Product Manager on the Privacy and Data Protection Team; a Product Manager on the Ads Identity team (now known as the Ads Privacy & Safety team); and a Principal, Global Product Policy on the Trust & Safety team. Except where otherwise stated, I make this declaration based on my personal knowledge, and if called as a witness, I could and would testify competently to its contents.

**2.** In the regular course of my duties leading user-facing consent & transparency product efforts at Google, I have participated in the management of Google's framework for obtaining users' consent to the collection and use of data associated with their use of Google or the accounts they hold at Google ("Google Accounts"). Similarly, I have reviewed and approved related disclosures, including disclosure to users about Google's practices related to the collection, use, and sharing of information. As a result of my role and responsibilities at Google, I am familiar with Google's processes for providing disclosures to and obtaining consent from Google Account holders relating to Google's various services.

**3.** I submit this declaration in support of Google's Opposition to Plaintiffs' Motion for Class Certification and Appointment of Class Counsel and Class Representatives. I understand that Plaintiffs in this lawsuit allege that Google wrongfully shares users' personal information with third-party participants in its real time bidding ("RTB") system. I further understand that Plaintiffs seek to represent a class comprised of "all individual Google account holders subject to a Google United States Terms of Service whose personal information was sold or shared by Google in its Real Time Bidding ('RTB') auctions after June 28, 2016."

**4.** In this declaration, I explain various disclosures that Google makes available to Google Account holders about the data collection and sharing processes that I understand to be at issue in this case. In Section I, I discuss relevant terms of Google's Terms of Service ("TOS"). In

[1] My legal name is Suneeti Shah, but I use my married surname, Vakharia, professionally at Google.

Section II, I discuss relevant terms of Google's Privacy Policy. In Section III, I discuss five webpages regarding Google's advertising and data use practices that Google has maintained during the period between June 28, 2016 and the present (the "Proposed Class Period"). In Section IV, I discuss disclosures accompanying a 2016 Google process for informing Google Account holders about the use of their account data for advertising purposes and obtaining their consent to that use. In Section V, I discuss disclosures accompanying Google's Google Ads Personalization ("GAP") setting, which is available to Google Account holders in their account settings.

## I. TERMS OF SERVICE

**5.** Throughout the Proposed Class Period, Google has maintained a publicly available TOS. A true and correct copy of the current TOS can be viewed online at https://policies.google.com/terms, and true and correct copies of archived versions of the Terms of Service in effect throughout the Proposed Class Period can be viewed by clicking the "Archived versions" hyperlink at the top of the same page.

**6.** There have been four TOS versions during the Proposed Class Period. The TOS dated April 14, 2014, (the "2014 TOS") was operative until October 24, 2017. The TOS dated October 25, 2017, (the "2017 TOS") was operative until March 30, 2020. The TOS dated March 31, 2020, (the "2020 TOS") was operative until January 4, 2022. On January 5, 2022, the current TOS (the "2022 TOS") became operative.

**7.** Each of the four relevant TOS identified other documents that comprised the TOS. The 2014 TOS and 2017 TOS stated that: "Our Services are very diverse, so sometimes additional terms or product requirements (including age requirements) may apply. Additional terms will be available with the relevant Services, and those additional terms become part of your agreement with us if you use those Services." The 2020 TOS contained similar language providing that "[t]he permission we give you to use our services continues as long as you meet your responsibilities in: these terms [and] service-specific additional terms, which could, for example, include things like additional age requirements." Identical language appears in the current 2022 TOS.

**8.** Google also publishes a Privacy Policy, and has done so throughout the Proposed Class Period. The descriptions in each TOS of how the Privacy Policy interacts with the TOS have

changed during the Proposed Class Period.

**9.** The 2014 TOS and 2017 TOS stated: "Google's privacy policies explain how we treat your personal data and protect your privacy when you use our Services. By using our Services, you agree that Google can use such data in accordance with our privacy policies." Unlike "those additional terms" that may "become part of [the] agreement," these policies were not identified as being part of the TOS.

**10.** The 2020 TOS introduced language further clarifying that the Privacy Policy was "not part of these terms," and providing a link for users to review that policy:

> Besides these terms, we also publish a Privacy Policy. Although it's not part of these terms, we encourage you to read it to better understand how you can update, manage, export, and delete your information.

**11.** This language does not appear in the 2022 TOS. On the contrary, Google Account holders' currently-operative contract with Google provides that "[y]ou also agree that our Privacy Policy applies to your use of our services," with the underlined text serving as a hyperlink to the operative Privacy Policy.

## II. Privacy Policy

**12.** As noted above, Google continuously maintained a Privacy Policy during the Proposed Class Period. Between the start of the Proposed Class Period and today, there have been twenty versions of the Privacy Policy. A true and correct copy of the current Privacy Policy can be viewed online at https://policies.google.com/privacy, and true and correct copies of archived versions of the Privacy Policies in effect throughout the Proposed Class Period can be viewed by clicking the "Archived versions" link at the top of the same page.

**13.** The Privacy Policy has continuously been available to the public (and to Google Account holders) via this page; hyperlinks in the TOS, showing during the process to create a Google Account, on other Google webpages, in emails Google sent to Google Account holders, or on third-party webpages; or searching for the Privacy Policy on Google or other search engines. The Privacy Policy has been widely viewed; as one example, in the seven-day period between September 20, 2023 and September 27, 2023, there were approximately [redacted] views of the

Privacy Policy. However, Google has never required Google Account holders to view the Privacy Policy as a condition of creating a Google Account or for any other reason, although (as noted above) it has encouraged them to do so.

**14.** The Privacy Policy has discussed many of the types of information that I understand Plaintiffs contend Google improperly shared with third parties. For example, the Privacy Policy dated March 31, 2020, a true and correct copy of which is attached as **Exhibit 1** and which I understand Google produced in this litigation bearing the Bates number GOOG-HEWT-00000952,[2] provides that:

- Google collects data when users interact with its services and through cookies placed when users visit other websites. The Privacy Policy describes this information as including "***unique identifiers***, browser type and settings, device type and settings, operating system, mobile network information including carrier name and phone number, and application version number." Google also discloses that "may collect" information about "[t]erms you search for," "Chrome browsing history," and "[a]ctivity on third-party sites and apps that use our services."
- Google uses "your interests" to show personalized ads, including "on sites and apps ***that partner with Google to show ads***."
- "You can modify your interests, ***choose whether your personal information is used to make ads more relevant to you***, and turn on or off certain advertising services."
- "There are over 2 million non-Google websites and apps that partner with Google to show ads."
- "We may share non-personally identifiable information publicly and with our partners — like ***publishers***, ***advertisers***, developers, or rights holders. For example, we share information publicly to show trends about the general use of our services. We also allow specific partners to collect information from your browser or device for advertising and measurement purposes using their own cookies or similar technologies."

Ex. 1 (emphases added).

## III. OTHER NON-CONTRACTUAL GOOGLE DISCLOSURES

**15.** As the TOS notes, throughout the Proposed Class Period, Google has "ma[d]e various policies, help centers, and other resources available to [users] to answer common questions and to set expectations about using our services." Many of these resources—which, again, users

[2] I understand that Plaintiffs have appended a copy of this Privacy Policy version to their Motion for Class Certification as Exhibit 40.

were not required to view—also discussed the alleged use and sharing of data for advertising that I understand is at issue in this lawsuit.

***The "Advertising" Disclosure***

**16.** Since the start of the Proposed Class Period, Google has maintained an informational page titled "Advertising." This page, currently available at https://policies.google.com/technologies/ads?hl=en-US, appeared on Google's "Terms and Policies" site, but has not been not part of the TOS or otherwise required for Google Account holders to view as a condition of creating or maintaining a Google Account. Rather, users could review this page by a) navigating to policies.google.com, then clicking on "Technologies," then clicking on "Advertising"; b) following a hyperlink on other Google or non-Google web pages; or c) searching for the page on Google or other search engines. Users viewed this page over [REDACTED] times in the seven-day period between September 20, 2023 and September 27, 2023. A true and correct copy of the "Advertising" page as it appeared on or about June 11, 2021, which I understand Google produced in this litigation bearing the Bates number GOOG-HEWT-00000208, is attached hereto as **Exhibit 2.**

**17.** This version of the "Advertising" page, under a sub-header labeled "How Google uses cookies in advertising," contains the below statements explaining that Google and its partners may use cookies to personalize ads for users who have not elected to opt out of personalized advertising:

- "Many websites, such as news sites and blogs, partner with Google to show ads to their visitors. Working with our partners, we may use cookies for a number of purposes, such as . . . ***to show ads that are likely to be more relevant (such as ads based on websites you have visited)***."
- "When you visit a page or see an ad that uses one of [Google's] products, ***either on Google services or on other sites and apps***, various cookies may be sent to your browser."

Ex. 2 (emphases added).

**18.** The "Advertising" page also explains various ways that Google and third-party services may interact to show relevant advertisements to a user:

> Sometimes the ad you see is based on the context of a page. If you're looking at a page of gardening tips, you might see ads for gardening equipment. Sometimes you might also see an ad on the web that's based on your app activity or activity on Google services; an in-app ad that's based on your web activity; or an ad based on your activity on another device. Sometimes the ad you see on a page is served by Google but selected by another company. ***For example, you might have registered with a newspaper website. From information you've given the newspaper, it can make decisions about which ads to show you, and it can use Google's ad serving products to deliver those ads.*** You may also see ads on Google products and services, including Search, Gmail, and YouTube, based on information, such as your email address, that you provided to advertisers and the advertisers then shared with Google. Ex. 2 (emphasis added).

**19.** The "Advertising" page provides guidance to users who may not wish to receive personalized advertisements based on advertising cookies. It explains that users may "use Ads Settings to manage the Google ads you see and opt out of Ads Personalization," and that browsers or third-party websites may provide their own cookie opt-out and blocking options. The page notes, however, that "[e]ven if you turn off personalized ads, you may still see ads based on factors such as your general location derived from your IP address, your browser type, and your search terms."

**20.** Google also explains on this page that users may opt out of mobile device advertising, with instructions to block mobile advertising IDs, which I understand is a field that Plaintiffs contend third parties receive in RTB bid requests and can use to identify Google Account holders:

- **Reset your device's advertising ID**, which replaces the current ID with a new one. Apps can still show you personalized ads, but for a while they may not be as relevant or interesting to you.
- **Delete your device's advertising ID**, which deletes the advertising ID and doesn't assign a new one. Apps can still show you ads, but they may not be as relevant or interesting to you. You won't see ads based on this advertising ID, but you may still see ads based on other factors, like the information you've shared with apps.

Starting in October 2013, Google explained to Android users that they could also reset or delete their device's advertising ID:

> To opt out of personalized ads in apps on your mobile device, follow the instructions below.
>
> **Android**
>
> 1. Find Google Settings in one of these places (depending on your device):
>     a. A separate app called **Google Settings**
>     b. In your main **Settings** app, scroll down and tap **Google**
> 2. Tap **Ads**
> 3. Switch on **Opt out of interest-based ads**
>
> **iOS**
>
> Devices with iOS use Apple's Advertising Identifier. To learn more about your choices for use of this identifier, visit the **Settings** app on your device.

***The "How Our Business Works" Disclosure***

**21.** Since February 2020, Google has maintained an informational page titled "How our business works." This page is currently available at https://about.google/how-our-business-works/, and a true and correct copy of the page as it appeared on or about June 26, 2021, which I understand Google produced in this lawsuit bearing the Bates number GOOG-HEWT-00000765, is attached hereto as **Exhibit 3**.[3]

**22.** I understand that Plaintiffs assert that this document constitutes part of Google's TOS. However, this page was not linked to or referenced in any TOS version prior to the 2020 TOS. The 2020 TOS and 2022 TOS both contain a link to this document, but neither TOS version states that the "How our business works" page is part of the terms themselves.

[3] I understand that Plaintiffs have appended a copy of the "How our business works" page to their Motion for Class Certification as Exhibit 38.

**23.** In addition to clicking on the links in the 2020 TOS or 2022 TOS, users could access this page by searching for it on Google or another search engine, or by visiting about.google and clicking a link in the site's footer:

Company resources
Contact us
Help center
Locations
Careers
Blog
Press resources
Investor relations
Brand Resource Center
Featured products
Google Ads
Android
Chrome
Google Cloud
Google for Education
Gmail
Google Maps
Google Photos
Google Play
Google Shopping
Google Search
Google for Small Business
Google Store
Google Workspace
YouTube
View all products
Responsibility
Accessibility
Crisis response
Digital wellbeing
Diversity & inclusion
Google.org
Google Health
Google Public Sector
Grow with Google
Human rights
Learning
Public Policy
Safety Center
Supplier responsibility
Sustainability
More about us
Transparency report
Community guidelines
How our business works
Extended workforce
Transparency Center

**24.** The "How our business works" page, which has been viewed approximately [redacted] times per month each month since January 2022, explains that "[w]e use your personal information to make our products more helpful to you" and that this is "how we can . . . show you more useful ads based on your interests." It also explains that "[y]ou can use Ad Settings to control the information about you that's used to show ads" and that "if you don't want to see personalized ads at all, you can turn them off at any time," with the underlined text serving as links to a Google Account holder's Ads Center, where they can opt out of personalized ads by disabling the GAP setting.

***The "How Google Uses Location Information" Disclosure***

**25.** Since the start of the Proposed Class Period, Google has maintained an informational page titled "How Google uses location information." This page, is currently available at https://policies.google.com/technologies/location-data?hl=en-US, appeared on Google's "Terms and Policies" site, and is not part of the TOS or otherwise required for Google Account holders to view as a condition of creating or maintaining a Google Account. Rather, users could review this page by a) navigating to policies.google.com, then clicking on "Technologies,"

then clicking on "How Google uses location information"; b) following a hyperlink on other Google or non-Google web pages; or c) searching for the page on Google or other search engines. Users viewed this page over [REDACTED] times in the seven-day period between September 20, 2023 and September 27, 2023. A true and correct copy of the page as it appeared on or about January 7, 2022, which I understand Google produced in this lawsuit bearing the Bates number GOOG-HEWT-00058395, is attached hereto as **Exhibit 4**.

**26.** The "How Google uses location information" page contains detailed disclosures regarding how a Google Account holder's location may factor into personalized advertising, including based on "IP address" and "past browsing or app activity":

**To help show you more relevant ads**

The ads you see can be based on your location information. In general, ads on Google use the same types of location information as the products where they appear. For example, depending on your settings, ads on Search might be based on location from your device, your IP address, previous activity, or your home and work addresses from your Google Account.

Using location information helps make the ads that you see more relevant to the area you're in, or to areas that are relevant to you. For example, if your device's location setting is turned on and you search on Google for restaurants near you, your current device location may be used to show you ads for restaurants near you. Your location may also be used to show you distances to nearby businesses as part of ads on Google.

Google may also use your past browsing or app activity (such as your searches, website visits, or videos you watched on YouTube) and general areas saved as part of the Web & App Activity setting to show you more useful ads. For example, if you search for where to buy milk nearby on Google, you may see ads for grocery stores in the general area where you frequently browse Google Search while waiting for your bus or train.

Advertisers can only target ads to general areas, such as countries, cities, or regions around their business.

For additional information on our Display Network, visit the Help Center.

**27.** Like the "Advertising" page, the "How Google uses location information" page advises users that if a user enables GAP, "Google will use the data saved with your Web & App Activity related to the general areas where you've used Google sites and apps to personalize your ads," and that if GAP is disabled, "may still see ads based on your current location and places you've set as your home and work in your Google Account."

***The "How Personalized Ads Work" Disclosure***

**28.** [Since October 18, 2022, Google has maintained an informational page titled "How personalized ads work." This page, currently available at https://support.google.com/My-Ad-

Center-Help/answer/12155656?hl=en, appears on Google's "My Ad Center Help" site and has received approximately [REDACTED] page views since Google first published it. It is not part of the TOS or otherwise required for Google Account holders to view as a condition of creating or maintaining a Google Account. Rather, users could review this page by a) by navigating to support.google.com, then searching for information about advertising or manually navigating to topic headers about advertising; b) following a hyperlink on other Google or non-Google web pages, including within the Google Ads Center; or c) searching for the page on Google or other search engines. A true and correct copy of the page as it appeared on or about November 14, 2022, which I understand Google produced in this lawsuit bearing the Bates number GOOG-HEWT-00456112, is attached hereto as **Exhibit 5**.

**29.** The "How personalized ads work" page contains multiple disclosures related to "ads on partner sites and apps," which it states "specifically use Google technology to show ads" that "are either personalized or non-personalized." It goes on to explain various factors, including "Google Account activity" and "[i]nfo you've given that websites or app," that can affect personalized ads shown on third-party platforms using Google services such as RTB:

> Personalized ads on partner sites might be based on your:
>
> - Info that you've given that website or app like your email address, age, or gender.
> - Interactions with content on that website or app.
> - Interactions with ads on that website or app.
> - Google Account activity depending on your Google settings.
> - Account settings for that website or app.

**30.** Further down the page, Google explains that "the ads you see on partner sites and apps may seem more relevant because ***your info and activity*** may be used to help show you ads for products and brands that interest you." Ex. 5 (emphasis added).

**31.** This page, like the pages discussed above, also contains instructions with applicable Ad Center links at which Google Account holders can choose to turn off personalized advertising, with the explanation that if a user does so, "info or activity saved to your Google account won't be used to show you ads."

***The "How Google Uses Information from Sites or Apps that Use Our Services"***

***Disclosure***[

**32.** Since the start of the Proposed Class Period, Google has maintained an informational page titled "How Google uses information from sites or apps that use our services." This page, currently available at https://policies.google.com/technologies/partner-sites?hl=en-US, appeared on Google's "Terms and Policies" site, but was not part of the TOS or otherwise required for Google Account holders to view as a condition of creating or maintaining a Google Account. Rather, users could review this page by a) navigating to policies.google.com, then clicking on "Technologies," then clicking on "How Google uses information from sites or apps that use our services"; b) following a hyperlink on other Google or non-Google web pages; or c) searching for the page on Google or other search engines. Users viewed this page approximately [REDACTED] times in the seven-day period between September 20, 2023 and September 27, 2023. A true and correct copy of the page as it appeared on or about November 14, 2022, which I understand Google produced in this lawsuit bearing the Bates number GOOG-HEWT-00456119, is attached hereto as **Exhibit 6**.

**33.** This page contains multiple disclosures explaining that Google receives information, including using cookies, from third-party sites and apps, and that it then may use that information to personalize advertising by creating "ad profile[s]" for users. For instance: "Google uses the ***information shared by sites and apps*** to deliver our services, maintain and improve them, develop new services, measure the effectiveness of advertising, protect against fraud and abuse, and ***personalize content and ads you see on Google and on our partners' sites and apps***." Ex. 6 (emphasis added).

**34.** The disclosures also inform users that if they turn off ad personalization, "[a]ds may still be based on the topic of the website or app you're looking at, your current search terms, or on your general location, ***but not on your interests, search history, or browsing history***," categories that Google indicates it may use to show ads on partner sites if users do not disable GAP. Ex. 6 (emphasis added). I understand that Plaintiffs allege these categories of information are among those improperly shared with third parties.

## IV. GOOGLE'S 2016 CONSENT BUMP

**35.** In June 2016, Google launched a new consent process for existing Google Account holders and new users seeking to create Google Accounts. This consent process, which I will refer to as the "Consent Bump" described Google's receipt of information from websites and apps that use Google Services, and explained that, if the user consented, Google would associate the information with the user's Google Account and use it for advertising (unless ads personalization was turned off). A true and correct copy of a Google presentation outlining the Consent Bump's content and options is attached hereto as **Exhibit 7**, and I understand that Google produced this document in this lawsuit bearing the Bates number GOOG-HEWT-00456459.

**36.** Beginning in July 2016, existing Google Account holders were taken directly to the Consent Bump upon signing into their Google Account on their desktop. The Consent Bump gave Google Account holders the option to either agree to or opt out of allowing Google to "use data in your account to improve the relevance of ads on websites and apps that partner with Google." By choosing to enable this setting, the Consent Bump informed Google Account holders, Google would "use this information to make ads across the web more relevant for you," including "browsing data from Chrome and activity from sites and apps that partner with Google, including those that show ads from Google." Account holders were given the choice to select "I AGREE" or

to view "MORE OPTIONS."




**37.** If a user clicked "MORE OPTIONS," they were taken to a screen with options to change nothing, review their privacy settings in detail, or opt in to the new data use options. As relevant here, the top of this screen contained a link labeled "Learn more about these features."




**38.** If a user then clicked "Learn more about these features," they would then be presented with a series of expandable questions and answers. Additionally, a subset of users who had previously chosen to sync their Chrome browsing history in their Google accounts were presented with a link to this question-and-answer page on the first screen of the Consent Bump.



**39.** The expandable question-and-answer page contained several disclosures that pertain to Plaintiffs' allegations here. For instance, Google explained that some data it connected comes from third-party sites and apps:

> Some of the data that Google collects comes from our own products and some of it comes from your visits to sites and apps that partner with Google. These new features allow you to make more of this information visible in your *Google Account*, so your info is easier to review and control. The new features also expand our ability to make Google services better, including making the ads you see in Google products and across the web more relevant to you.

These websites, the Consent Bump screen explained, could transmit to Google information about web browsing, cookies, IP addresses, and device identifiers, which could then be used for advertising:

> Many websites and apps use Google technologies to improve their content and services. For example, a website might use our advertising services (like AdSense) or analytics tools (like partners who use Google Analytics to improve the ads they show).
>
> As you use these sites, your web browser may send certain information to Google that may include the web address of the page that you're visiting, your IP address, or cookies previously set by the site or Google. In the case of mobile apps, this could also include the name of the app and an identifier that helps us to determine which ads we've served to other apps on your device.
>
> The features described today don't change the types of data collected from these websites and apps — they simply change how that data is stored and used.

Another Consent Bump question-and-answer explained that users could enable or disable GAP to "let[] Google use data from your account, such as the searches you've done and your location, to make the ads we show you more relevant and useful . . . on sites and apps that partner with Google and across your signed-in devices."

> - Your **Ads Personalization** setting lets Google use data from your account, such as the searches you've done and your location, to make the ads we show you more relevant and useful. If you turn on these new features, Google can use that same data to improve the relevance of ads on sites and apps that partner with Google and across your signed-in devices.

A user would only have seen these disclosures, however, if they chose to navigate to the "Learn more about these features" screen, then expanded each of the relevant questions to reveal the associated answer.

## V. Google Ad Personalization & Ad Center Disclosures

**40.** As I have noted, and as Google described in many of the foregoing disclosures,

Google Account holders during the Proposed Class Period had the option to disable GAP in their Ad Center account settings. A link to the Ad Center appeared in many of the foregoing documents, as well as in the Privacy Policy (starting with the May 25, 2018 version of the Privacy Policy). A true and correct example of the Ad Center settings is attached hereto as Exhibit 8, and I understand that Google produced this document in this lawsuit bearing the Bates number GOOG-HEWT-00456243.

**41.** Users who visited the Ad Center during the Proposed Class Period were informed that, if they disabled GAP, "[y]our info won't be used to personalize ads, including: Your new and existing activity on Google sites and apps [and] [i]nfo from your Google Account, such as your age." The Ad Center also stated that by disabling GAP, "[y]our ads won't be personalized on Google sites and apps, nor on sites and apps that partner with Google." By extension, these disclosures informed users that by leaving GAP enabled, such data ***would*** be used to personalize ads, including on third-party sites.

**42.** From the Ad Center, users could also click on a link that would take them to the "How personalized ads work" disclosure page, referenced above in Paragraph 28 and attached as Exhibit 5.

I declare under penalty of perjury that the foregoing is true and correct. Executed on September 29, 2023 in San Francisco, California.

*/s/ Suneeti Vakharia*
Suneeti Vakharia

**ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1(i)(3)**

I, Whitty Somvichian, attest that concurrence in the filing of this document has been obtained from the other signatory. Executed on September 29, 2023, in San Francisco, California.

*/s/ Whitty Somvichian*
Whitty Somvichian

290933511