# EXHIBIT 7
# to Declaration of
# W. Somvichian

# (REDACTED VERSON OF DOCUMENT SOUGHT TO BE FILED UNDER SEAL)

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 1

1   UNITED STATES DISTRICT COURT
2   NORTHERN DISTRICT OF CALIFORNIA
3   SAN JOSE DIVISION
4   --oOo--
5
6   IN RE GOOGLE RTB CONSUMER         Case No.
7   PRIVACY LITIGATION                5:21-CV-02155-LHK-VKD
8   _____/
9
10
11
12
13       HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY
14
15
16
17       VIDEO-RECORDED DEPOSITION OF TERRY DIGGS
18                 REDDING, CALIFORNIA
19                 FRIDAY, APRIL 14, 2023
20
21
22
23   Reported by:
24   Anrae Wimberley, CSR No. 7778
25   Job No. 5823194

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 49

1   BY MR. TREVOR:
2       Q.   And when you say, "Google," what do you
3   mean?
4       MR. STRAITE:   Same objections.
5       THE WITNESS:   The icon.
6   BY MR. TREVOR:
7       Q.   And what does that icon look like?
8       A.   A "G."
9       Q.   And when you click on that icon, what does
10  the app that it opens look like?
11      A.   My face comes up and then it has a bar --
12  search bar.
13      Q.   So you use the Google app on your phone to
14  perform Google searches; is that right?
15      A.   Yes.
16      Q.   Do you use the Gmail -- strike that.
17           Before you stopped using your Gmail
18  account, did you use the Gmail app on your phone to
19  view your e-mail?
20      A.   Yes.
21      Q.   Do you have the YouTube app on your phone?
22      A.   Yes.
23      Q.   Do you ever use the YouTube app on your
24  phone?
25      A.   Me?  No.  My granddaughter?  Yes.

Page 70

1    something that you didn't understand when you asked
2    him to?
3        MR. STRAITE:  Objection; vague.
4        THE WITNESS:  Can you rephrase that?  What do
5    you mean?
6    BY MR. TREVOR:
7        Q.   Do you recall ever asking your son for
8    help doing something with an electronic device?
9        MR. STRAITE:  Objection; vague.
10       THE WITNESS:  Yes.
11   BY MR. TREVOR:
12       Q.   Can you tell me what that scenario is
13   you're thinking of?
14       A.   Well, he taught me how to make an e-mail.
15       Q.   When was that?
16       A.   Probably about 10 years ago, 15 years ago.
17       Q.   And when you say, "make an e-mail," what
18   do you mean?
19       A.   To make an e-mail account.
20       Q.   Did he help you set up an e-mail account
21   for yourself?
22       A.   Yes.
23       Q.   What e-mail account was that?
24       A.   Terrydiggs26.td@gmail.com.
25       Q.   And your son set up an e-mail account.

1           Was he in the room with you while you set
2    up that account?
3        A.   Yes.
4        Q.   Were you watching him?
5        A.   No, he told me what to do.
6        Q.   I see.
7             So you were using the computer --
8        A.   No, the phone.
9        Q.   So you were using the phone.  Your son was
10   there with you?
11       A.   Yes.
12       Q.   And he helped you navigate through that
13   process; is that right?
14       A.   Yes.
15       Q.   And as a result of working with your son
16   then, did you feel more comfortable setting up an
17   online account?
18            MR. STRAITE:  Objection; vague.
19            THE WITNESS:  I still don't know how to set
20   up -- make an e-mail.
21   BY MR. TREVOR:
22       Q.   Have you ever created an account with any
23   other website?
24            MR. STRAITE:  Objection; vague, calls for
25   expert testimony.

Page 87

1       A.   Yes.
2       Q.   Yes, you did say I agree?
3       A.   Yes.
4       Q.   You also said a moment ago that Google has
5   sold or shared your information.
6            What information are you referring to?
7       A.   My personal information.
8       Q.   And earlier this morning, I asked you what
9   you meant by "personal information."
10           Do you remember that?
11      A.   Yes.
12      Q.   Do you remember how you defined "personal
13  information" this morning?
14      A.   Anything that's about me.
15      Q.   And is that what you believe Google has
16  breached that agreement to you by sharing?
17      A.   Yes.
18      Q.   When you say, "anything about you," what
19  specific pieces of information are about you that
20  you think Google could share?
21           MR. STRAITE:  Objection; calls for expert
22  testimony.
23           THE WITNESS:  I'm not sure.  That's why I hired
24  these guys.
25  BY MR. TREVOR:

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 88

1    Q.   Do you believe that your name is personal
2    information?
3    A.   Yes.
4    Q.   Do you believe your age is personal
5    information?
6    A.   Yes.
7    Q.   Do you believe that where you live is
8    personal information?
9    A.   Yes.
10   Q.   Would that include your street address?
11   A.   Yes.
12   Q.   Would that include your ZIP code?
13   A.   Yes.
14   Q.   Would that include the city you live in?
15   A.   Yes.
16   Q.   Would that include the State of
17   California?
18   A.   Yes.
19   Q.   Would that include the United States?
20   A.   Yes.
21   Q.   Would the fact that you live on the planet
22   Earth consist of your personal information?
23   MR. STRAITE:  Counsel -- Counsel, your
24   laughter, I don't know if you intend this to be a
25   serious question.

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 102

1  MR. STRAITE: Same objections.
2  THE WITNESS: Yes.
3  BY MR. TREVOR:
4  Q. Can you give me an example of that?
5  MR. STRAITE: Same objections.
6  THE WITNESS: Just -- I don't know -- meeting
7  somebody and the conversation comes up, Where do you
8  work at?
9  Yeah, I think that anybody's personal
10 information is personal.
11 BY MR. TREVOR:
12 Q. Do you object to Google showing you
13 advertisements based on your location?
14 MR. STRAITE: Objection; vague.
15 THE WITNESS: No.
16 BY MR. TREVOR:
17 Q. Do you object to Google showing you
18 advertisements based on things you like to do?
19 MR. STRAITE: Same objection.
20 THE WITNESS: No.
21 BY MR. TREVOR:
22 Q. Why not?
23 MR. STRAITE: Same objections.
24 THE WITNESS: It's helpful.
25 BY MR. TREVOR:

Veritext Legal Solutions
800-567-8658                                973-410-4098

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 133

1     MR. STRAITE: Same objection; vague.
2     THE WITNESS: I believe in the agreement they
3  state that they are going to collect personal
4  information, but they also state they're not going
5  to share it.
6  BY MR. TREVOR:
7     Q.  I understand.
8         Did you take any steps to see if you could
9  stop them from collecting that personal
10 information -- and by "them," I mean Google -- apart
11 from hiring your lawyers?
12    MR. STRAITE: Objection; asked and answered.
13        And you have to -- your responses, Terry,
14 have to be audible.
15    THE WITNESS: Okay. I hired the lawyers.
16 BY MR. TREVOR:
17    Q.  Are you familiar, Ms. Diggs, with "ad
18 blockers"?
19    A.  No.
20    Q.  Never heard of "ad blockers" before?
21    A.  No.
22    Q.  Have you done any research into ad
23 blockers?
24    A.  No.
25    Q.  And that's the case even after you filed

1    the complaint?
2         A.   Yes.
3         Q.   Are you familiar with "virtual private
4    networks"?
5         A.   No.
6         Q.   Have you done any research into virtual
7    private networks?
8         A.   No.
9         Q.   And that's including even after you filed
10   the complaint?
11        A.   Yes.
12        Q.   Have you ever heard the term "cookies" in
13   connection with the Internet and websites?
14        A.   I have heard the term.
15        Q.   Where have you heard that term?
16        MR. STRAITE:   Objection; vague.
17        THE WITNESS:   On sites.
18   BY MR. TREVOR:
19        Q.   When you say, "on sites," what do you
20   mean?
21        A.   Like if you're going to researching
22   things, sometimes it will say, "We use cookies."
23        Q.   Where will it say, "We use cookies"?
24        MR. STRAITE:   Objection; vague, compound.
25        THE WITNESS:   I'm not sure.  I just seen it.

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 137

1    Q.   If you were uncomfortable with cookies
2    being used, would you leave a website?
3         MR. STRAITE:  Objection; incomplete
4    hypothetical, vague.
5         THE WITNESS:  I have.
6    BY MR. TREVOR:
7         Q.   Can you tell me about an example?
8         A.   If it doesn't say not to use, you know, an
9    option, then I'll leave the website.
10        Q.   When you say, "an option," what do you
11   mean?
12        A.   Like we use cookies, is it okay, you can
13   opt in or opt out, I think.  And if there isn't an
14   opt in or opt out, then I usually leave it, because
15   my understanding is that cookies aren't good.
16        Q.   What's your understanding that cookies
17   aren't good based on?
18        A.   Just people saying they're not good.  I
19   don't know what -- anything about them.  I just know
20   that they're not good.
21        Q.   Any sense of what makes them not good?
22        A.   I don't know.
23        Q.   So you said when you see a website that
24   doesn't give the option to opt in or opt out of
25   cookies, you leave that website.

Page 199

1   you a personalized ad based on your religion?
2           MR. STRAITE:  Same objections.
3           THE WITNESS:  Yeah, I don't have any idea on
4   that either.
5   BY MR. TREVOR:
6       Q.   Do you believe that Google has ever shown
7   you a personalized ad based on your sexual
8   orientation?
9           MR. STRAITE:  Same objections.
10          THE WITNESS:  I don't know.
11  BY MR. TREVOR:
12      Q.   Do you believe that Google has ever shown
13  you a personalized ad based on information about
14  your health?
15          MR. STRAITE:  Same objections.
16          THE WITNESS:  I don't know if they have or not,
17  but I do know that ██████████ there was a lot
18  of ads, but I don't know if it was because of that.
19  BY MR. TREVOR:
20      Q.   When you started seeing those ads after
21  ████████████████████ what were those ads for?
22          MR. STRAITE:  Objection; calls for speculation.
23          THE WITNESS:  Just new things that they've come
24  out with ██████.
25  BY MR. TREVOR:

1   Q.  Do you mean new treatments or products?
2   A.  Um-hum.
3   Q.  Do you recall any specific examples?
4   A.  No.
5   Q.  Do you recall ever clicking on any
6   advertisements for those products?
7   A.  Probably.
8   Q.  Any specific examples you can recall of
9   that?
10  A.  Just -- no, just treatments.
11  Q.  Okay.  But you don't recall any ad for a
12  particular treatment that you might have clicked on?
13  A.  Hmm-mm.  No.
14  Q.  Excuse me.
15      You said it was possible that you clicked
16  on some ads ▮▮▮▮▮▮▮▮▮▮▮▮▮
17      Why do you believe that might be the case?
18  A.  Because when I was diagnosed, I was
19  scared.  Because at the time I was diagnosed, they
20  didn't have all these treatments that they have now.
21  And I thought I was going to end up not ever walking
22  in the future.
23      So yeah, I looked into a lot of things.
24  Q.  Do you feel that it was helpful to see
25  those ads for the new treatments that you saw in

1  advertisements?
2      A.   Yes.
3      Q.   In what way was it helpful?
4      A.   Just learning about my disease, you know.
5  It's a pretty rough one.
6      Q.   I understand.
7      MR. STRAITE:  Do you want a tissue?
8      THE WITNESS:  Yes.
9      MR. STRAITE:  Can we pause?
10     MR. TREVOR:  Of course.
11          Let's go off the record for one second,
12 please.
13     THE VIDEOGRAPHER:  Okay.  We're off the record
14 at 2:28 p.m.
15          (Discussion off the record.)
16     THE VIDEOGRAPHER:  Okay.  We are back on the
17 record at 2:32 p.m.
18 BY MR. TREVOR:
19     Q.   Ms. Diggs, would you please look at page 9
20 of 33 on Exhibit 9.
21     MR. STRAITE:  I just want to also put on the
22 record, you know, we did take a break with the
23 document on the table, but we didn't leave the room.
24 We were always in the presence of counsel for
25 Google.

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 217

1        MR. STRAITE:  Could we go back on?  I'm sorry.
2        THE VIDEOGRAPHER:  Okay.  We're back on the
3    record at 2:58 p.m.
4        MR. STRAITE:  We reserve the right to read and
5    correct for 30 days after we get the transcript.
6            That's all.
7        THE VIDEOGRAPHER:  Okay.  That concludes
8    today's videotaped deposition of Terry Diggs.  And
9    we're off the record at 2:58 p.m.
10        MR. STRAITE:  Thank you.
11            (Whereupon, the proceedings were concluded
12            at 2:58 p.m.)
13                    ---oOo---
14
15
16
17            _____
18                    TERRY DIGGS
19
20
21
22
23
     Job No. CS5823194
24
25

Veritext Legal Solutions
800-567-8658                                        973-410-4098

Page 218

1           I, the undersigned, a Certified Shorthand
2     Reporter of the State of California, do hereby
3     certify:
4           That the foregoing proceedings were taken
5     before me at the time and place herein set forth;
6     that any witnesses in the foregoing proceedings,
7     prior to testifying, were administered an oath; that
8     a record of the proceedings was made by me using
9     machine shorthand which was thereafter transcribed
10    under my direction; that the foregoing transcript is
11    a true record of the testimony given.
12          Further, that if the foregoing pertains to
13    the original transcript of a deposition in a Federal
14    Case, before completion of the proceedings, review
15    of the transcript (X) was ( ) was not requested.
16          I further certify that I am neither
17    financially interested in the action nor a relative
18    or employee of any attorney of any party to this
19    action.
20          IN WITNESS WHEREOF, I have this date
21    subscribed my name.
22    Dated: April 26, 2023

25                       ANRAE WIMBERLEY, CSR No. 7778