Elizabeth C. Pritzker (Cal. Bar No. 146267)
Jonathan K. Levine (Cal. Bar No. 220289)
Bethany Caracuzzo (Cal. Bar No. 190687)
Caroline Corbitt (Cal. Bar No. 305492)
**PRITZKER LEVINE LLP**
1900 Powell Street, Suite 450
Emeryville, CA 94608
Tel.: (415) 692-0772
Fax: (415) 366-6110
*ecp@pritzkerlevine.com*
*jkl@pritzkerlevine.com*
*bc@pritzkerlevine.com*
*ccc@pritzkerlevine.com*

*Interim Class Counsel*

*[Additional Counsel Appear on Signature Page]*

# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## OAKLAND DIVISION

| | |
|---|---|
| In re Google RTB Consumer Privacy Litigation, | Case No. 4:21-cv-02155-YGR-VKD |
| This document applies to: *all actions.* | **PLAINTIFFS' OPPOSITION TO GOOGLE LLC'S *DAUBERT* MOTION TO EXCLUDE PLAINTIFFS' EXPERT NEIL RICHARDS** |
| | Judge:      Hon. Yvonne Gonzalez Rogers<br>Date:        TBD<br>Time:        TBD<br>Courtroom:   1, 4th Floor |

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ................................................................................................1

II.  PLAINTIFFS' COUNTER-STATEMENT OF ISSUES TO BE DECIDED PER
CIVIL L.R. 7-4(A)(3) ........................................................................................1

III.  RELEVANT BACKGROUND ...........................................................................1

IV.  LEGAL STANDARD .........................................................................................6

V.  ARGUMENT ......................................................................................................7

    A.  Professor Richards Does Not Opine on Ultimate Legal Issues .................7

    B.  Professor Richards' Opinions Are Relevant and Will Assist the Trier Of
Fact .........................................................................................................10

    C.  Professor Richards Is Qualified to Opine as to Privacy and Consumer
Expectations ...........................................................................................12

    D.  Professor Richards' Opinions Are Reliable ...........................................16

        1.  Professor Richards' Opinions are Not Subjective or *Ipse Dixit* .................16

        2.  Professor Richards Did Not Need to Survey Consumers to Opine on
Consumer Expectations ....................................................................19

    E.  Professor Richards' Opinions Should Not be Excluded as Improper ...................23

        1.  Professor Richards' Reliance on Google Documents is Permissible. ...........23

        2.  Professor Richards Does Not Opine on Google's State of Mind. ................24

IV.  CONCLUSION ..................................................................................................25

1

**<u>TABLE OF AUTHORITIES</u>**

2

**Page(s)**

3

**Cases**

4
5

*Accessories Mktg., Inc. v. Tek Corp.*,
    No. C 11-4773 PSG, 2013 WL 1409887 (N.D. Cal. Apr. 2, 2013) ........................................ 15

6

*Allen v. American Cyanamid*,
    No. 14-cv-1423, 2021 WL 1086245 (W.D. Wa. Mar. 22, 2023) ............................................ 16

7
8

*Brown v. Burlington N. Santa Fe Ry. Co.*,
    765 F.3d 765 (7th Cir. 2014) ................................................................................................. 15

9
10

*ZF Meritor, LLC v. Eaton Corp.*,
    696 F.3d 254 (3d Cir. 2012) ................................................................................................. 15

11

*In re Arris Cable Modem Consumer Litig.*,
    327 F.R.D. 334 (N.D. Cal. 2018) .................................................................................... 17, 21

12
13

*Bailey v. Rite Aid Corp.*,
    338 F.R.D. 390 (N.D. Cal. 2021) .................................................................................... 20, 22

14
15

*Berman v. Freedom Fin. Network, LLC*,
    400 F.Supp.3d 964 (N.D. Cal. 2019) ..................................................................................... 20

16

*Borges v. City of Eureka*,
    No. 15-cv-00846-YGR, 2017 WL 363212 (N.D. Cal. Jan. 25, 2017) .................................... 24

17
18

*Brighton Collectible, LLC v. Believe Prod., Inc.*,
    No. 215CV00579CASASX, 2017 WL 440255 (C.D. Cal. Jan. 30, 2017) ............................. 21

19
20

*Brooks v. Thomson Reuters Corp.*,
    No. 21-cv-01418-EMC, 2023 WL 5667884 (N.D. Cal. Aug. 9, 2023)............................ *passim*

21

*Brown v. Google LLC*,
    No. 20-cv-3664-YGR, 2022 WL 17961497 (N.D. Cal. Dec. 12, 2022) ......................... *passim*

22
23

*Cabrera v. Cordis Corp.*,
    134 F.3d 1418 (9th Cir. 1998) ............................................................................................... 18

24

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
    MDL No. 1917, 2013 WL 5428139 (N.D. Cal. June 20, 2013)............................................... 6

25
26

*City of Pomona v. SQM North America Corp.*,
    750 F.3d 1036 (9th Cir. 2014)............................................................................................... 10

27
28

*Claar v. Burlington N. R. Co.*,
    29 F.3d 499 (9th Cir. 1994)................................................................................................... 19

*Colgan v. Leatherman Tool Grp., Inc.*,
  135 Cal.App.4th 663, 38 Cal.Rptr.3d 36 (2006) .................................................. 20

*Daubert v. Merrell Dow Pharms., Inc.*,
  509 U.S. 579 (1993) ............................................................................... *passim*

*Daubert v. Merrell Dow Pharms., Inc. (Daubert II)*,
  43 F.3d 1311 (9th Cir. 1995) ............................................................................ 10

*Domingo ex rel. Domingo v. T.K.*,
  289 F.3d 600 (9th Cir. 2002) ............................................................................ 16

*DZ Reserve v. Meta Platforms, Inc.*,
  No. 3:18-cv-04978-JD, 2022 WL 912890 (N.D. Cal. Mar. 9, 2022) .................... 24

*Edwards Lifesciences Corp. v. Meril Life Sciences Pvt. Ltd.*,
  No. 19-cv-06593-HSG, 2022 WL 254348 (N.D. Cal. Jan. 27, 2022) ................... 24

*Finjan, Inc. v. Sophos, Inc.*,
  No. 14-CV-01197-WHO, 2016 WL 4560071 (N.D. Cal. Aug. 22, 2016) ....... 15, 19

*Fitzhenry-Russell v. Keurig Dr. Pepper Inc.*,
  No. 1-cv-00564-NC, 2018 WL 10472794 (N.D. Cal. Sept. 25, 2018) ................... 8

*GPNE Corp. v. Apple, Inc.*,
  No. 12-CV-02885-JHK, 2014 WL 1494247 (N.D. Cal. Apr. 16, 2014) ............... 19

*Grodzitsky v. Am. Honda Motor Co.*,
  957 F.3d 979 (9th Cir. 2020) ............................................................................ 19

*Hadley v. Kellogg Sales Co.*,
  324 F.Supp.3d 1084 (N.D. Cal. 2018) ............................................................... 20

*Hartmann v. Uponor, Inc.*,
  No. 08-CV-1223-F, 2013 WL 12315163 (D. Nev. Nov. 25, 2013) ....................... 7

*Higuera v. United States*
  143 S. Ct. 2510, 216 L. Ed. 2d 463 (2023) ....................................................... 19

*Hynix Semiconductor Inc. v. Rambus Inc.*,
  No. 00-cv-20905-RMW, 2008 WL 73689 (N.D. Cal. Jan. 5, 2008) .................... 12

*Kim v. Benihana, Inc.*,
  No. 22-55529, 2023 WL 3674673 (9th Cir. May 26, 2023) ........................... 12, 15

*Krommenhock v. Post Foods, LLC*,
  334 F.R.D. 552 (N.D. Cal. 2020) ...................................................................... 23

*Kumho Tire Co., Ltd. v. Carmichael*,
  526 U.S. 137 (1999) ......................................................................................... 18

*LaCombe v. A-T-O, Inc.*,
679 F.2d 431 (5th Cir. 1982).................................................................................................. 15

*LD v. United Behavioral Health*,
No. 20-cv-02254-YGR, 2023 WL 2806323 (N.D. Cal. Mar. 31, 2023) ................................... 7

*Littler v. Ohio Ass'n of Pub. Sch. Employees*,
No. 2:18-cv-1745, 2020 WL 1861646 (S.D. Ohio Apr. 14, 2020) ....................................... 7, 8

*Loomis v. Cornish*,
836 F.3d 991 (9th Cir. 2016).................................................................................................... 4

*Lucido v. Nestle Purina Petcare Co.*,
217 F.Supp.3d 1098 (N.D. Cal. 2016) ................................................................................... 14

*McCrary v. Elations Co. LLC*,
No. 13-cv-0242J-JGB (SPx), 2014 WL 12589137 (C.D. Cal. Dec. 2, 2014) ....................... 14

*Messick v. Novartis Pharm. Corp.*,
747 F.3d 1193 (9th Cir. 2014).................................................................................................. 6

*Numatics, Inc. v. Balluff, Inc.*,
66 F.Supp.3d 934 (E.D. Mich. 2013) ..................................................................................... 23

*Olean Wholesale Grocery Cooperative, Inc. v. Bumble Bee Foods LLC*,
31 F.4th 651 (9th Cir. 2002) (en banc)..................................................................................... 7

*Open Text S.A. v. Box, Inc.*,
No. 13-CV-04910-JD, 2015 WL 349197 (N.D. Cal. Jan. 23, 2015) ..................................... 19

*Owens v. Auxilium Pharms., Inc.*,
56 F. App'x 782 (9th Cir. 2003).............................................................................................. 22

*Primiano v. Cook*,
598 F.3d 558 (9th Cir. 2010), *as amended* (Apr. 27, 2010) ................................................... 10

*Rai v. Santa Clara Valley Transp. Auth.*,
308 F.R.D. 245 (N.D. Cal. 2015) ............................................................................................. 6

*Siqueiros v. General Motors LLC*,
No. 16-CV-07244-EMC, 2022 WL 74182 (N.D. Cal. Jan. 7, 2022) ..................................... 15

*Stiner v. Brookdale Senior Living, Inc.*,
--F.Supp.3d --, No. 17-cv-03962-HSG, 2023 WL 2722294 (N.D. Cal. Mar. 30,
2023).......................................................................................................................................... 6

*In re Suboxone (Buprenorphine Hydrochloride & Naloxone) Antitrust Litig.*,
No. 13-MD-2445, 2020 WL 6887885 (E.D. Pa. Nov. 24, 2020)........................................... 20

*Torliatt v. Ocwen Loan Servicing, LLC*,
  570 F.Supp.3d 781 (N.D. Cal. 2021) ................................................................. 11

*U.S. v. Kantengwa*,
  781 F.3d 545 (1st Cir. 2015) ............................................................................. 16

*United States v. Graham*,
  824 F.3d 421 (4th Cir. 2016) .............................................................................. 2

*United States v. Holguin*,
  51 F.4th 841 (9th Cir. 2022), *cert. denied*, 143 S. Ct. 2509, 216 L. Ed. 2d 463
  (2023) ................................................................................................................. 19

*United States v. Vera*,
  770 F.3d 1232 (9th Cir. 2014) ........................................................................... 19

*In re Viagra (Sildenafil Citrate) & Cialis (Tadalafil) Prod. Liab. Litig.*,
  424 F.Supp.3d 781 (N.D. Cal. 2020) ................................................................. 21

*Weidman v. Ford Motor Company*,No. 18-cv-12719, 2022 WL 17730732
  (E.D.Mich. Dec. 15, 2022) .............................................................................. 8, 9

*Wendell v. GalaxoSmithKline LLC*,
  858 F.3d 1227 (9th Cir. 2017) ........................................................................... 20

*Wyatt B. v. Kate Brown*,
  No. 6:19-cv-00556-AA, 2022 WL 3445767 (D. Or. Aug. 17, 2022) ................... 8

*Zamani v. Carnes*,
  491 F.3d 990 (9th Cir. 2007) .............................................................................. 4

**Rules**

Federal Rule of Evidence:

  703 ...................................................................................................................... 15
  702 ............................................................................................................ 6, 12, 25

Federal Rules of Civil Procedure:

  23 ..................................................................................................................... 7, 8

**Other Authorities**

Brian Leiter, *10 Most-Cited Law & Technology Scholars in the US*, 2016–2020 ......................... 2

Keynote: Lina Khan, Chair of the Federal Trade Commission (IAPP Global
  Privacy Summit 2022) (Apr. 11, 2022) ............................................................... 3

*Remarks of Chair Lina M. Khan as Prepared for Delivery IAPP Global Privacy*
 *Summit 2022*, FTC (Apr. 11, 2022) ........................................................................ 3

Martha Howell & Walter Preventer, *An Introduction to Historical Methods* (2001) .................. 17

Maxine D. Goodman, *Slipping Through the Gate*,
 60 Baylor L. Rev. 824 (2008) ................................................................................. 16

## I.      INTRODUCTION

Google's Motion to Exclude the Expert Report of Neil Richards has no basis in law or fact and should be denied. Professor Richards is a trained legal historian and a leading scholar of information privacy with a worldwide reputation. His expert report concerns the historical and cultural foundations that underlie societal privacy norms; how Google's (false) disclosures are worded to conform to people's reasonable expectations that Google adheres to these privacy rights and norms; and how there is common evidence to support a finding that those disclosures, and Google's practices with regard to Google RTB, are in fact at odds with privacy rights and norms.

Google's argument that Professor Richards' opinions are mere legal conclusions is meritless. His opinions are well-supported by historical, scholarly, and case-specific evidence, and each of the opinions presented in his report concerns a relevant topic calibrated to assist the trier of fact on *factual issues* relating to both a reasonable person's expectations of privacy and the issue of consent. Professor Richards is well-qualified to offer these opinions as evidenced by his decades of academic and professional work in the area of privacy. Professor Richards' conclusions are reliable and grounded in his analysis of primary and secondary sources, which is a commonly accepted method in historical and legal scholarship as well as other social sciences and which have also been recognized and upheld as reliable by courts. Professor Richards' report applies well-established methods of historical analysis. Google's attempt to recast Professor Richards' conclusions as improper or methodologically unsound should be rejected, and the motion denied.

## II.     PLAINTIFFS' COUNTER-STATEMENT OF ISSUES TO BE DECIDED PER CIVIL L.R. 7-4(a)(3)

Whether Defendant's Motion to Exclude Plaintiffs' Expert Neil Richards should be denied on the ground that Professor Richards' expert report filed in support of Plaintiffs' Motion for Class Certification satisfies the requirements of section 702 of the Federal Rules of Evidence and *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993).

## III.    RELEVANT BACKGROUND

Professor Richards is the Koch Distinguished Professor in Law at Washington University in St. Louis School of Law, and the Director of the University's Cordell Institute, an endowed academic

center devoted to questions of privacy, information, and health policy. Richards Report at ¶ 11 (ECF No. 546-7, hereinafter "Rprt."). He is recognized internationally as a leading figure in the field of information privacy, with a focus on issues such as the historical importance of privacy and the continued importance of societal privacy norms, privacy rights, and privacy protections in the field of information privacy. Rprt. at ¶ 13. Professor Richards is a trained legal historian, with a Master's Degree in Legal History from the University of Virginia. He clerked for Judge Paul Niemeyer of the United States Court of Appeals for the Fourth Circuit and for Chief Justice William H. Rehnquist of the United States Supreme Court. Rprt. at App'x A, p. 61 (CV of Professor Richards). He is an affiliate scholar with the Stanford Center for Internet and Society, the Yale Information Society Project, and the Berkman-Klein Center at Harvard Law School. *Id.* at ¶ 11. He serves as a Fellow with the Center for Democracy and Technology, and a member of the American Law Institute. *Id.* Professor Richards has taught courses on U.S. and transatlantic privacy, security, and consumer data protection at numerous top-tier research institutions, including Georgetown University, the University of Amsterdam in the Netherlands, and the University of Bocconi in Italy. *Id.* Professor Richards has also given hundreds of presentations on questions of privacy and held countless dialogues on the matters. Rprt. at App'x A, pp. 71–88; Richards Transcript at 44:11-25 (hereinafter "Tr.").[1]

Professor Richards scholarship on privacy is widely-read, reviewed, and frequently cited by scholars in the legal academy and in other academic disciplines. Indeed, he is one of the five most-cited scholars in his field.[2] His article "The Dangers of Surveillance," which appeared in the Harvard Law Review in 2013, has been cited in over 200 law journals as well as by the Court of Appeals for the Fourth Circuit.[3] His 2021 book *Why Privacy Matters* deals with consumer and other privacy expectations, and in his 2015 book *Intellectual Privacy*, Professor Richards reviews empirical

---

[1] An excerpt of the deposition transcript of Neil Richards is attached as Exhibit 1 to the concurrently filed Declaration of Elizabeth Prizker.

[2] Brian Leiter, *10 Most-Cited Law & Technology Scholars in the US*, 2016–2020, Brian Leiter's Law School Reports, https://leiterlawschool.typepad.com/leiter/2021/09/10-most-cited-law-technology-scholars-in-the-us-2016-2020.html.

[3] *United States v. Graham*, 824 F.3d 421, 445 (4th Cir. 2016).

evidence about chilling effects on privacy. Tr. at 46:15-21. Both books were accepted for publication by Oxford University Press and peer reviewed. Rprt. at App'x A, p. 62. In addition, his book *Why Privacy Matters* was awarded the Palmer Prize for Civil Liberties, by which a committee of his peers declared it to be the best book of the year on the relationship between civil liberties and the rule of law. *Id.* Professor Richards has also published dozens of articles regarding the history, theory, meaning, and contemporary state of privacy. Rprt. at App'x A, pp. 63–66, 68–71. Professor Richards' scholarly work cited within his report was drafted consistent with the methods of scholars in his discipline, and were subjected to peer review, publication, and critique as is typical of works in his field.[4] In addition to his own published works, Professor Richards stays current in the field of consumer privacy expectations. Tr. at 45:23-25.

Professor Richards has testified before Congress on the topic of privacy law and has spoken before the Federal Trade Commission ("FTC"), regarding consumer data collection in 2012, and again in 2019 on the "notice and choice" regime governing consumer consent to data practices. *Id.* at 45:21-23; Rprt. at App'x A, pp. 77, 84. In 2022, Professor Richards served as the lead author of a set of public comments submitted by Cordell Institute for Policy in Medicine & Law at Washington University in St. Louis to the FTC on the prevalence of consumer surveillance and data security practices that can harm consumers, which study discussed, among other things, consumer expectations. Rprt. at App'x A, p. 68. In April 2022, Commissioner Lina Khan, the Chair of the Federal Trade Commission, quoted this work in a speech outlining the Commission's new priorities for privacy and data security actions.[5] Professor Richards also served as a testifying expert witness in the Irish High Court, called by the Irish government as one of its two experts on U.S. privacy law

---

[4] Rprt. at n.11, n.15, n.19, n.23, n.29, n.37, n.38, n.46, n.50, n.76, n.120, n.134, n.135, n.137, n.142, n.165, n.171.

[5] Keynote: Lina Khan, Chair of the Federal Trade Commission (IAPP Global Privacy Summit 2022) (Apr. 11, 2022), https://iapp.org/news/video/keynote-lina-khan-chair-of-the-federal-trade-commission-iapp-global-privacy-summit-2022/; *see also Remarks of Chair Lina M. Khan as Prepared for Delivery IAPP Global Privacy Summit 2022*, FTC (Apr. 11, 2022), https://www.ftc.gov/news-events/news/speeches/remarks-chair-lina-m-khan-prepared-delivery-iapp-global-privacy-summit-2022 (citing other works by Professor Richards).

in the closely watched case of *Data Protection Commissioner v. Schrems* (2017) ("*Schrems II*"), a seminal privacy case. Rprt. at App'x A, p. 89.

In this case, Professor Richards was retained to evaluate the nature of privacy as a societal norm in the United States and the extent to which common evidence exists by which a jury could find that Google's alleged conduct in this case violated that norm. Rprt. § I; Tr. at 19:2-6. His opinions are intended to be helpful to the trier of fact in understanding societal privacy norms, how those norms are implicated in Google RTB, and the like. Professor Richards bases his opinions on his review of the Complaint, evidence produced by Google in discovery, as well as the knowledge and expertise gained in over 25 years of work in the field. Tr. at 35:12–36:3. Specifically, Professor Richards reached his opinions by (1) reviewing Google's disclosures, including its Terms of Service and Privacy Policies, documents regarding Google RTB, as well as other primary and secondary sources regarding privacy, and (2) applying his expertise to reach conclusions about these materials. Tr. at 58:15-23; *see e.g.*, Rprt ¶¶ 75–89, 126–129, 134–136. This approach is standard in the field of privacy and related social sciences fields and is within Professor Richards' expertise as a legal historian and scholar. Tr. at 56:19-22; 57:7-12; 87:13-19 ("[A]ll of this is . . . built upon dec[ades] of study . . . and learning and . . . conversations with people from a wide variety of walks of life about privacy.").

Google challenges five of the six opinions offered by Professor Richards in his report. Google does not challenge his first opinion, however, "[t]hat privacy . . . is a fundamental right and important societal norm with deep roots in the social, cultural, and legal history of the United States" (Rprt. at ¶ 2),[6] which serves as a baseline, foundational analysis for Professor Richards' further opinions, discussed in turn below:

- <u>Challenged Opinion 1 (Richards Opinion 2)</u>: Professor Richards concludes that the Google Terms of Service and Privacy Policies that govern Google's relationship with its individual

---

[6] Google ignores Professor Richards' first opinion in its *Daubert* Motion and has therefore waived any challenge to it. *Loomis v. Cornish*, 836 F.3d 991, 998 n.3 (9th Cir. 2016) (arguments not made in an opening brief are waived); *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) (holding that the district court "need not consider arguments raised for the first time in a reply brief"). Any such challenge would undoubtedly fail as this Court has found similar opinions on "background and context information about what privacy is" are proper. *Brown v. Google LLC*, No. 20-cv-3664-YGR, 2022 WL 17961497, at *10 (N.D. Cal. Dec. 12, 2022).

U.S. Google account holders reflect a societal understanding that privacy is a fundamental right and an important societal norm in the United States. Rprt. at ¶¶ 3, 75. This conclusion is based on Professor Richards' textual review of Google's disclosures, his review of sources discussing pertinent privacy concepts, and his experience assessing privacy standards. Tr. at 135:15-19.

- <u>Challenged Opinion 2 (Richards Opinion 3)</u>: Professor Richards concludes that Google's Real Time Bidding advertising auction practices ("Google RTB"), and the scope and quantity of information about and/or associated with individual U.S. Google account holders that Google shares with or sells to Google RTB auction participants (that is, entities outside Google) are at extreme odds with fundamental privacy rights and societal privacy norms in the United States. Rprt. at ¶¶ 4, 93. His analysis of the data-sharing practices concerning Google RTB is based upon the allegations of the Complaint, evidence produced in discovery, public articles, the expert report of Professor Zubair Shafiq, Ph.D. and his knowledge and assessment of privacy norms to the evidence in this action. Rprt. at ¶¶ 91–93.

- <u>Challenged Opinion 3 (Richards Opinion 4)</u>: Professor Richards concludes that protection of fundamental privacy rights and societal privacy norms requires, at a minimum, informative disclosures about what information is collected about or associated with U.S. Google account holders and offered for sale to Google RTB auction participants. Rprt. at ¶¶ 5, 119, 128–129. To reach this opinion, Professor Richards builds upon his prior opinions regarding privacy as a historical right and societal norm, with support from laws and legal articles regarding effective disclosures. Rprt. at ¶¶ 123–125.

- <u>Challenged Opinion 4 (Richards Opinion 5)</u>: Professor Richards concludes that there is common evidence that Google's Terms of Service, Privacy Policies, and disclosures throughout the Class Period give rise to a common (false) expectation that Google does not offer for sale or sell information about or associated with U.S. account holders to Google RTB participants. Rprt. at ¶¶ 6, 130. This conclusion is based upon his textual review of Google's disclosures contained in evidence produced by Google and public documents, as well as his work understanding privacy as a historical right and societal norm. *Id.*

• <u>Challenged Opinion 5 (Richards Opinion 6)</u>: Professor Richards concludes that there is common evidence that Google fails to disclose its Google RTB auction to U.S. Google account holders or offer any viable mechanism to consent to Google's sharing or selling of information about or associated with them to entities outside Google via Google RTB. Rprt. at ¶ 7. Professor Richards' opinion is grounded in his review of Google's promises that it does not and will never share account holders' personal information with third parties and his review of the evidence and public documents. *Id.* at ¶¶ 136, 137; Tr. at 170:8-22; 173:4-8; 184:6–185:7.

## IV.    LEGAL STANDARD

The admissibility of expert testimony is governed by Federal Rule of Evidence 702 and the standard set forth in *Daubert v. Merrell Dow Pharm. Inc.*, 509 U.S. 579 (1993). Rule 702 provides criteria for the district court's consideration, but the *Daubert* inquiry is "flexible," *Daubert*, 509 U.S. at 588, and "Rule 702 should be applied with a 'liberal thrust' favoring admission." *Messick v. Novartis Pharm. Corp.*, 747 F.3d 1193, 1196 (9th Cir. 2014); *In re Cathode Ray Tube (CRT) Antitrust Litig.*, MDL No. 1917, 2013 WL 5428139, at *2 (N.D. Cal. June 20, 2013) (noting district courts should "adhere to the 'liberal policy of admissibility' that favors admission of any evidence that may assist the trier of fact"). Consistent with this liberal view of admissibility, a "review of the caselaw after *Daubert* shows that the rejection of expert testimony is the exception rather than the rule." Fed. R. Evid. 702, Advisory Committee Notes (2000). Although it requires that expert testimony be both relevant and reliable, the relevancy bar is low (only that it logically advances a material aspect of the case) and reliability requires a basis in the knowledge and experience of the relevant discipline. *Messick*, 747 F.3d at 1196–97.

At the class certification stage—which is decided by the court—"the relevant inquiry is a tailored *Daubert* analysis which scrutinizes the reliability of the expert testimony in light of the criteria for class certification and the current state of the evidence." *Rai v. Santa Clara Valley Transp. Auth.*, 308 F.R.D. 245, 264 (N.D. Cal. 2015); *see also Stiner v. Brookdale Senior Living, Inc.*, -- F.Supp.3d. --, No. 17-cv-03962-HSG, 2023 WL 2722294, at *5 (N.D. Cal. Mar. 30, 2023) ("The Ninth Circuit has also stated that it 'licenses greater evidentiary freedom at the class certification stage' and that courts should not 'rely on formulaic evidentiary objections' to exclude proof that

tends to support class certification.'") (quoting *Sali v. Corona Reg'l Med. Ctr.*, 909 F.3d 996, 1006 (9th Cir. 2018) (cleaned up)); *Hartmann v. Uponor, Inc.*, No. 08-CV-1223-F, 2013 WL 12315163, at *3 (D. Nev. Nov. 25, 2013) (at the class certification stage, "[t]here is less need for the gatekeeper to keep the gate when the gatekeeper is keeping the gate only for himself or herself") (quoting *In re Zurn Pex Plumbing Prods. Liab. Litig.*, 633 F.3d 604, 613 (8th Cir. 2011) (cleaned up)).

## V.     ARGUMENT

### A.     Professor Richards Does Not Opine on Ultimate Legal Issues

Challenged Opinions 2, 4, and 5 (Richards Opinions 3, 5, and 6) do not "embrac[e] legal issues" as Google contends. *See* Mot. at 3, 10–13. Contrary to Google's assertions (*e.g.*, Mot. at 12), Professor Richards does not opine without a factual basis that there exists "common evidence" on various matters such that commonality and predominance are satisfied for purposes of class certification—rather, his Expert Report provides a detailed analysis of common evidence upon which he relies in forming opinions. Professor Richards' opinions are perfectly appropriate in this respect as they inform the court's class certification analysis rather than usurping it. As the Ninth Circuit explained in *Olean Wholesale Grocery Cooperative, Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651 (9th Cir. 2002) (en banc), at the class certification stage, "the court 'must make a rigorous assessment of the available evidence and the method or methods by which plaintiffs propose to use the [class-wide] evidence to prove' the common question in one stroke." *Id.* at 666 (alteration in original) (quoting *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 323–24 (3d Cir. 2008)).

Whether an expert opinion is "opining on the legal question of class certification" or "is instead weighing in on the factual questions that undergird the class-certification decision" is "a fine line." *Littler v. Ohio Ass'n of Pub. Sch. Employees*, No. 2:18-cv-1745, 2020 WL 1861646, at *5 (S.D. Ohio Apr. 14, 2020). Here, Professor Richards' opinions "weigh[] in on the factual questions that undergird the class-certification decision." *Id.*

Google's cited authority is distinguishable—Professor Richards' opinions are a far cry from the expert opinions excluded in those cases, all of which were direct statements, couched in legal terms, transparently opining about the appropriateness of certifying a class and/or the requirements of Rule 23. *See LD v. United Behavioral Health*, No. 20-cv-02254-YGR, 2023 WL 2806323, at *3

(N.D. Cal. Mar. 31, 2023) (Gonzalez Rogers, J.) (expert opined "that an ERISA 23(b)(1)(B) and/or 23(b)(2) class should be certified as well as a RICO 23(b)(2) and 23(b)(3) class based on the facts" and that "class certification is appropriate in this case because it is consistent with Federal Rule of Civil Procedure 23 and governing precedent"); *Wyatt B. v. Kate Brown*, No. 6:19-cv-00556-AA, 2022 WL 3445767, at *9 (D. Or. Aug. 17, 2022) (noting that the opening paragraph of the expert's Report, which stated "CWLA has been asked to review the case records of the 10 named plaintiffs and render an opinion about whether they are typical of children in foster care (typicality) and whether these 10 cases demonstrate that the systemwide deficiencies exist in Oregon's foster care system (commonality)," "strongly suggests that the [expert's] Report is intended to offer an opinion based on ultimately legal questions"); *Littler*, 2020 WL 1861646, at *4–5 (excluding certain of expert's opinions, that "the class is 'clearly defined' [], identifying 'common' legal questions among the putative class members, and characterizing the choices of the putative class members as 'typical,'" because the expert's report "makes clear that he inappropriately uses these words in their legal sense to draw legal conclusions" and the expert "acknowledges that this is precisely what he was hired to do—'to analyze whether this case meets the requirements for class action qualification'"); *Weidman v. Ford Motor Company*, No. 18-cv-12719, 2022 WL 17730732, at *4 (E.D. Mich. Dec. 15, 2022) (excluding expert's opinion "as to whether use of Rule 23's class mechanism is appropriate in this case," which was "couched in the language of Fed. R. Civ. P. 23(a)(2)").[7]

Here, while Professor Richards may offer certain "expert opinions that may support a legal conclusion, which are generally permissible," he does not offer "opinions that are themselves legal conclusions," as the experts did in Google's cited cases. *Weidman*, 2022 WL 17730732, at *5. Indeed, in *Weidman*, the court refrained from excluding the vast majority of the expert's opinions, noting that "Ford conflates expert opinions that may support a legal conclusion, which are generally permissible . . . , with opinions that are themselves legal conclusions[.]" *Id.* Here, while Plaintiffs maintain that

---

[7] Nor does Google's reliance on *Fitzhenry-Russell v. Keurig Dr. Pepper Inc.*, No. 1-cv-00564-NC, 2018 WL 10472794, at *3 (N.D. Cal. Sept. 25, 2018), add support to its position. There, although the court excluded eight paragraphs of the expert's supplemental declaration as improper legal conclusions, it did not discuss the substance of the expert's opinions, and the declaration in question remains under seal. *Id.* at *3; *see also id.*, ECF No. 222-2 (filed under seal).

none of Professor Richards' opinions should be excluded as improper legal conclusions—as he does not baldly opine as to whether any issue is or is not a "class wide question" (*id.* at *4)—Google is guilty of the same conflation noted in *Weidman* insofar as Google seeks to exclude the entirety of the Challenged Opinions 2, 4, and 5 (Richards Opinions 3, 4, and 6), without parsing out the specifics.

Google's argument that Professor Richards "offers improper opinions regarding Google's alleged 'promises' to account holders and that Google 'violated' those 'promises'" is again based on gross mischaracterizations of Professor Richards' opinions, in particular by selectively quoting portions of his Report out of context. *See* Mot. § IV.A.2 at pp. 13–14. For example, Google asserts that it is improper for *Professor Richards* to offer his own definition of "personal information" because that is "a defined contractual term at the heart of this case." Mot. at 13:5-14. But the portion of Professor Richards' Report that Google purports to challenge (Rprt. at ¶¶ 86–87) actually quotes *Google's own definition of "personal information" from its privacy policies*. Likewise, that entire section of the Report (¶¶ 75–89) quotes from Google's Terms of Service and Privacy Policies as background and foundation for Professor Richards' stated opinion that Google's representations reflect and conform to societal privacy norms. *See, e.g.*, Rprt. Heading V at p. 33. That Professor Richards' Report includes quotations from Google's own representations to account holders does not mean that he is "'opin[ing] on the meaning and import of disputes terms' in [a] breach of contract case[]," as Google claims (Mot. at 13:11-14). Similarly, inasmuch as Professor Richards references Google's Privacy Policies and Terms of Service, he is simply opining that there is common evidence "from which a jury or trier of fact may" conclude that the Privacy Policies and Terms of Service reflect a societal understanding of privacy rights and social norms, and that Google's actions were contrary to those privacy rights and social norms. *See* Mot. 13:14–14:3. In other words, Professor Richards is not opining directly on legal conclusions; rather, his opinions are intended to be helpful to the trier of fact, for example, to understand the historical societal norms of privacy, why they are important, and how those issues are implicated in the digital privacy sphere generally and RTB specifically.

**B.      Professor Richards' Opinions Are Relevant and Will Assist the Trier Of Fact**

Each of Professor Richards' opinions are well tailored to the "pertinent inquiry" of whether Google RTB violated consumers' privacy and consent because they analyze Google's disclosures and Google RTB in the context of the historical concept of privacy. *City of Pomona v. SQM North America Corp.*, 750 F.3d 1036, 1044 (9th Cir. 2014) ("Expert opinion testimony is relevant if the knowledge underlying it has a valid connection to the pertinent inquiry.") (citation omitted); *Daubert v. Merrell Dow Pharms., Inc. (Daubert II)*, 43 F.3d 1311, 1321 n.17 (9th Cir. 1995) (holding expert testimony must "fit" the question the jury must answer); *Primiano v. Cook*, 598 F.3d 558, 567 (9th Cir. 2010), *as amended* (Apr. 27, 2010) ("What is relevant depends on what must be proved.").

In arguing that Challenged Opinions 4 and 5 (Richards Opinions 5 and 6) are not relevant because they do not account for "those who may have had notice of, or provided consent to, the conduct" (in addition to transparently using this motion to reiterate its arguments in opposition to Plaintiffs' Motion), Google again mischaracterizes Professor Richards' report and testimony. Mot. at 22 (citing *Brown v. Google LLC*, No. 20-cv-3664-YGR, 2022 WL 17961497, at *19 (N.D. Cal. Dec. 12, 2022)); Mot. at 19 (citing Report of Dominique Hanssens, ECF No. 584-5). Challenged Opinion 4 (Richards Opinion 5) is that Google's disclosures "give rise to a common (false) expectation that Google does not offer for sale or sell information about or associated with U.S. account holders to Google RTB participants" of which Google is aware. Rprt. at ¶¶ 6, 131; Tr. at 178:6-13. Challenged Opinion 5 (Richards Opinion 6) is that there is common evidence from which a jury could conclude that U.S. account holders lack any mechanism to consent to the sharing or selling of their personal information via Google RTB. Rprt. at ¶¶ 7, 137; Tr. at 178:19-25. Professor Richards' opinions are based his review of evidence produced by Google, the allegations in the complaint, and other works describing Google RTB, his textual review of documents showing Google's "repeated statement[] . . . that it will not sell or share personal information," as well as on his decades of work on the history of privacy and the nature of privacy as a societal norm. Tr. 173:24–174:5; Rprt. at ¶¶ 131, 137. As Professor Richards testified, "Google has provided no opportunity for

1    consumers to consent to [Google] RTB, it hasn't disclosed it. In fact, it has promised the opposite,

2    and it has provided no mechanism for consumers to consent to it." Tr. at 179:17-21.[8]

3         Professor Richards testified that, given Google's uniform representations, the hypotheticals

4    proffered by Google's counsel during his deposition regarding whether a person "knew of the alleged

5    conduct" were not relevant to his ability to opine on the question of whether there is common evidence

6    from which a jury could conclude that Google RTB violates their reasonable expectation of privacy

7    and consent. Tr. at 177:4-8; 184:19–185:7 ("[B]ecause Google does not disclose the details of RTB

8    to its account holders, there is common proof that Goo[gle] account holders lack any mechanism to

9    consent" and there exists "common objective facts from which a jury or trier of fact may conclude

10   that Google's promises to put its users in control with respect to RTB are false"). Even if these

11   hypotheticals were relevant to the ultimate issue, Google's argument merely goes to weight of

12   Richards' opinions, not their admissibility. *Torliatt v. Ocwen Loan Servicing, LLC*, 570 F.Supp.3d

13   781, 792 (N.D. Cal. 2021) ("While the defendants' evidence might undermine [plaintiff's expert's]

14   conclusions, 'the test under *Daubert* is not the correctness of the expert's conclusions but the

15   soundness of his methodology.'") (quoting *Primiano*, 598 F.3d at 564). Thus, Challenged Opinions

16   4 and 5 "fit" questions the jury must answer, and they will assist the trier of fact, namely, because

17   they are grounded in the application of Professor Richards' extensive knowledge and experience in

18   the field of information privacy, specifically his research regarding historical and reasonable

19   expectations of privacy and consent, as applied to the facts and evidence in this action.

20        Google also argues Challenged Opinion 2 (Richards Opinion 3) is not relevant because

21   Professor Richards relied on the report of Dr. Shafiq in formulating this opinion. Mot. at 22. However,

22   Google has not challenged the admissibility of Professor Shafiq's report. Rather, Google questions

23   the weight Professor Richards has given to Dr. Shafiq's findings. It is improper to ask the court to

24   strike this opinion on the basis that it relies in part on Dr. Shafiq's report, which remains in evidence.

25

26   [8] At least one Google witness confirmed at deposition there is no toggle or similar mechanism for
     Google account holders to opt out of Google RTB. *See* Pritzker Decl. Ex. 2, Wolfstein Transcript,
27   46:10-20 ("Q. …[I]s there any control where -- that Google offers to a user that says, you know, I
     hereby opt out of RTB, I don't want my data shared or sold with third parties? MR. SOMVICHIAN:
28   Object to form. THE WITNESS: I don't believe so.").

*See Kim v. Benihana, Inc.*, No. 22-55529, 2023 WL 3674673, at *1 (9th Cir. May 26, 2023) ("Dr. Forister's reliance on a report by another expert that the district court found to be both reliable and admissible does not affect the Forister report's admissibility."); *Hynix Semiconductor Inc. v. Rambus Inc.*, No. 00-cv-20905-RMW, 2008 WL 73689, at *11 (N.D. Cal. Jan. 5, 2008) (finding that arguments that the assumptions by the expert may turn out to be false "goes to the weight of [the expert's] testimony, not its validity"). Regardless, Professor Richards bases his opinion on more than just Dr. Shafiq's findings. Professor Richards relies on his evaluation of the allegations in the Complaint,[9] public articles regarding Google RTB,[10] and evidence produced in discovery.[11]

Accordingly, Professor Richards' opinions clear the low bar of relevancy.

**C.    Professor Richards Is Qualified to Opine as to Privacy and Consumer Expectations**

Under Rule 702, "[a]n expert witness may be qualified by 'knowledge, skill, experience, training, or education' as to the subject matter of the opinion." *Brown*, 2022 WL 17961497 at *1 (quoting Fed. R. Evid. 702). Professor Richards is well qualified under this standard, as shown by his position, education, training, and body of scholarly work grappling with questions related to consumer privacy, developed over the last 25 years.

Despite this record of expertise, Google moves to strike Challenged Opinions 2, 4, and 5 (Richards Opinions 3, 5, and 6) on the basis that Professor Richards is not qualified to opine on "consumer behavior expectations." Mot. at 15. Google's argument boils down to the fact that Professor Richards does not have "formal training" on consumer behavior, which, according to Google, would only come from a degree in "marketing" and/or experience *running* "focus groups or large surveys." *Id.* This argument lacks merit. As this Court found in *Brown*, an expert is "not required to conduct a consumer survey" to proffer an opinion on consumer expectations, particularly where, as here, the expert's opinion is otherwise reliable and his opinions are on topics "rooted in [his] relevant experience." *Brown*, 2022 WL 17961497 at *8, *11.

---

[9] *E.g.*, Rprt. at n.121, nn.123–129, n.136, n.159.

[10] *E.g.*, Rprt. at n.131, nn.133–137, n.142, n.143, nn.146–158, n.165.

[11] *E.g.*, Rprt. at n.140, n.160.

Challenged Opinion 4 (Richards Opinion 5)—that there is common evidence that Google's disclosures "give rise to a common (false) expectation that Google does not offer for sale or sell information about or associated with U.S. account holders to Google RTB participants"—is based on Professor Richards' review of the text of Google's disclosures, which he is well-qualified to assess. Rprt. at ¶ 6. Professor Richards' qualifications to opine on this topic are clear: "I have written about [] consumer privacy issues, studied, researched, discussed, presented, and published on these questions for the past 20 years. I have been asked to testify about questions of privacy before Congress, before the Federal Trade Commission. I have read extensively studies and monographs and articles about consumer privacy expectations." Tr. 45:17-25; *see also* Rprt. at ¶¶ 65–68 (relying on several studies relating to consumer expectations in forming his opinions). This experience more than qualifies him to opine on whether Google's disclosures give rise to a common expectation. *See Brooks v. Thomson Reuters Corp.*, No. 21-cv-01418-EMC, 2023 WL 5667884, at *5–*6 (N.D. Cal. Aug. 9, 2023) (noting that privacy scholar's "expertise also rests on solid credentials and qualifications" because "he has researched, taught, presented, and been awarded on his work on privacy and digital audience targeting").

Google's challenge of Professor Richards' qualifications is even weaker with respect to Challenged Opinion 5 (Richards Opinion 6)—that there is common evidence from which a jury could conclude that Google failed to disclose its Google RTB auction to U.S. Google account holders or offer any mechanism to consent. Rprt. at ¶¶ 135–137. This opinion is directly within the scope of Professor Richards' experience as an expert on privacy. For example, he served as the lead author of comments submitted by the Cordell Institute for Policy in Medicine & Law at Washington University in St. Louis to the FTC discussing, among other things, consumers' expectations regarding privacy. Rprt. at Appd'x A, p. 68. Professor Richards has authored numerous works, including his peer reviewed book *Why Privacy Matters*, addressing issues including the shaping of consumer privacy expectations, as well as numerous peer reviewed articles. Rprt. at App'x A, pp. 63-66, 68-71. Not only is he qualified to opine on consumer expectations, but he supports his conclusions with evidence produced by Google in this action. Rprt. at ¶ 136(b) (discussing a survey by Google showing "account holders are confused by what information is tracked, by whom, and what they are in control of").

1    Google's authority is unavailing. Unlike the expert in *Lucido v. Nestle Purina Petcare Co.*,

2    Professor Richards has years of "specialized experience" in consumer privacy that he called upon in

3    forming his opinion. 217 F.Supp.3d 1098, 1103 (N.D. Cal. 2016). Such experience distinguishes him

4    substantially from a veterinarian opining on what a reasonable consumer would consider to be

5    "material" when purchasing dog food products. *Id.* In addition, Google's reliance on *McCrary v.*

6    *Elations Co. LLC*, is misplaced. There, the Court made clear that it is not a requirement that "an

7    expert [has] any particular educational background." No. 13-cv-0242J-JGB (SPx), 2014 WL

8    12589137, at *11 (C.D. Cal. Dec. 2, 2014). Such a finding undermines Google's argument that

9    Professor Richards' purported lack of formal training in marketing prohibits him from opining on

10   consumer expectations.

11   Regarding Challenged Opinion 2 (Richards Opinion 3), Google's attack is ill-fitted, as the

12   opinion does not concern "consumer behavior expectations." Mot. at 15. Rather, Professor Richards

13   applies his expertise in assessing Google's disclosures and RTB practices as compared to

14   "fundamental privacy rights" and "societal privacy norms." Rprt. at ¶¶ 3–4. Google's argument

15   regarding Professor Richards' lack of marketing experience thus misses the mark. Mot. at 15.[12] Nor

16   can Google lodge a serious challenge to Professor Richards' qualifications on this topic—particularly

17   given that Google does not challenge his first opinion: "[t]hat privacy . . . is a fundamental right and

18   important societal norm with deep roots in the social, cultural, and legal history of the United States."

19   Rprt. at ¶ 2. Professor Richards is the author of two books, dozens of peer-reviewed scholarly articles,

20   dozens of popular articles, and numerous policy papers about privacy, how it should be understood,

21   what its historical underpinnings are, what its current state is, why it matters, and how it should be

22   secured in a digital environment. Rprt. at ¶ 13; *id.* at App'x A, pp. 63–66, 68–71. Professor Richards'

23   opinions regarding "fundamental privacy rights" and "societal privacy norms" are based on his

24   review of laws, jurisprudence, and "research showing that consumers in the past and to this day have

25   considered privacy to be a fundamental right," and analysis of disclosures by "technology companies

26

27   _____

[12] To the extent Google's argument that Professor Richards conflates consumer expectations with

28   social norms, that argument misstates Professor Richards' conclusions and testimony on the topic. *See supra* Part III.

(including Google) that consumers highly value privacy as a fundamental right and regard privacy as an important societal norm." Rprt. at ¶ 61.

Google also challenges Professor Richards' second opinion on the basis that Professor Richards "is not qualified to opine on how RTB works" and his reliance on Dr. Shafiq's findings are improper. Mot. at 20. However, Professor Richards does base his opinion in technical expertise on the subject of how RTB works. Tr. at 144:6-10. Rather, as is proper, he relies on the conclusions of Dr. Shafiq, whose technical expertise on this subject has not been challenged by Google. *Accessories Mktg., Inc. v. Tek Corp.*, No. C 11-4773 PSG, 2013 WL 1409887, at *1 (N.D. Cal. Apr. 2, 2013) ("experts may rely on the opinion of other experts to formulate their opinions"); *Siqueiros v. General Motors LLC*, No. 16-CV-07244-EMC, 2022 WL 74182, at *10 (N.D. Cal. Jan. 7, 2022) (finding damages expert "is entitled to rely on [the] technical opinion provided by a technical expert"). Further, contrary to Google's arguments, Professor Richards relies not only on the findings of Dr. Shafiq, but also on his own review of the allegations in the Complaint, public articles regarding Google RTB, and evidence produced in discovery. Rprt. at ¶¶ 91–93. Professor Richards does not need to do more before relying on Dr. Shafiq's findings. *See Finjan, Inc. v. Sophos, Inc.*, No. 14-CV-01197-WHO, 2016 WL 4560071, at *12 (N.D. Cal. Aug. 22, 2016) ("It is 'reasonable to expect that experts will rely on the opinion of experts in other fields as background material for arriving at an opinion.'") (citation omitted).[13]

Given his experience, skills, and training, Professor Richards is well qualified to render his opinions regarding privacy and consumer expectations.

---

[13] Google's out-of-circuit authority is unavailing, particularly given that Google has not challenged the admissibility of Dr. Shafiq's opinion. *Contrast Kim v. Benihana, Inc.*, No. 22-55529, 2023 WL 3674673, at *1 (9th Cir. May 26, 2023) ("Forister's reliance on a report by another expert that the district court found to be both reliable and admissible does not affect the Forister report's admissibility."), *with LaCombe v. A-T-O, Inc.*, 679 F.2d 431, 435 n.5 (5th Cir. 1982) (discussing an expert's reliance on hearsay), *and Brown v. Burlington N. Santa Fe Ry. Co.*, 765 F.3d 765, 771–72 (7th Cir. 2014) (merely reciting the standard under Fed. R. Evid. R. 703), *and ZF Meritor, LLC v. Eaton Corp.*, 696 F.3d 254, 293 (3d Cir. 2012) (excluding damages calculation where expert relied on figures from an unverified report).

**D.      Professor Richards' Opinions Are Reliable**

Google moves to strike all of the challenged opinions as unreliable, arguing (1) that they contain subjective and *ipse dixit* conclusions regarding "expectations and understandings of consumers," and (2) because Professor Richards did not survey consumers. Mot. at 16, 18. However, Professor Richards' opinions are "based on objective, verifiable evidence and scientific methodology of the kind traditionally used by experts in the field." *Domingo ex rel. Domingo v. T.K.*, 289 F.3d 600, 607 (9th Cir. 2002). Thus, Google meritless challenges must be denied.

1.      Professor Richards' Opinions are Not Subjective or *Ipse Dixit*

Professor Richards' opinions are reliable because they are rooted in his review of textual analysis of primary documents, which is a common method in historical and legal scholarship and in other social sciences. This method is commonly accepted by courts as reliable.

For example, in *Brooks v. Thomson Reuters Corp.*, No. 21-cv-01418-EMC, 2023 WL 5667884 (N.D. Cal. Aug. 9, 2023), the defendant moved to exclude the opinions of Professor Turow that "all Californians have suffered uniform harm to their ethical and social rights" from the defendant's conduct on the basis that it was "*ipse dixit* philosophizing and 'not supported by scientifically valid principles.'" *Id.* at \*5 (citation omitted). In rejecting this argument, the court noted that Professor Turow relied on "historical research," "seminar legislative proposals," and the work of modern privacy scholars. *Id.* The court found Professor Turow's opinions reliable, concluding that reliance on "legal scholarship is a method traditionally used in the field of academic research." *Id.*

Consistent with this opinion, other courts have routinely held that opinions of experts formulated based on their textual review and assessment of primary and secondary sources, are reliable under the "historical methodology." *See U.S. v. Kantengwa,* 781 F.3d 545, 562 (1st Cir. 2015) (collecting cases); *Allen v. American Cyanamid*, No. 14-cv-1423, 2021 WL 1086245, at \*17 (W.D. Wa. Mar. 22, 2023) (holding that the expert's citation to an "array of primary source documents and historical studies" in support of her opinion was "consistent with reliable historical methods"). In addition, this method is commonly recognized by historians as the operative standard for historical scholarship. *See* Maxine D. Goodman, *Slipping Through the Gate*, 60 Baylor L. Rev. 824, 857 (2008) (commenting that a historian's task is to choose reliable sources, to read them reliably, and to put

1    them together in ways that provide reliable narratives about the past) (citation and quotations

2    omitted); Martha Howell & Walter Preventer, *An Introduction to Historical Methods* (2001)

3    (providing an overview of the historical method).

4            Here, Professor Richards' report and deposition testimony show that his opinions are rooted

5    in his own peer-reviewed and published research, his review of the public documents and evidence

6    produced in this case concerning Google's disclosures and Google RTB, and his extensive experience

7    with these issues. Tr. at 35:12–36:3 (explaining that Professor Richards relied on his 25 years of

8    experience in the field of privacy as well as his review of published sources and documents produced

9    in this action); *id.* at 99:1-9 (explaining that his opinions are based on years spent "thinking about

10   these questions every day, to studying them, to subjecting them to analysis, . . . to listening to

11   countervailing arguments and opposing perspectives and [] diverse perspectives, that this is an

12   exercise in -- in judgment and expertise, and it is -- it is qualitative rather than quantitative"); *id.* at

13   95:22-25 ("There are a number of ways to determine what a societal norm is, but -- but I think the --

14   the most effective way is by experience, by -- by testified that the reading, by thinking, by living in

15   society."); *id.* at 98:11-12 ("It requires an exercise of judgment grounded in expertise."). Professor

16   Richards further relies on dozens of independent articles, legal jurisprudence, and "empirical work

17   and consumer surveys" of others to support his conclusions. *E.g.*, Rprt. at ¶¶ 64–67. Professor

18   Richards' analysis of primary and secondary documents—including historical research, legal

19   jurisprudence, other scholarship, and evidence produced in this case—is a reliable method accepted

20   under historical and legal scholarship. *See Brooks*, 2023 WL 5667884, at *5.

21          Google focuses on just one paragraph of the Richards Report to argue that Professor Richards

22   "does not cite any authority" in support of his position that the reasonable expectation of privacy

23   standard "can be used to determine *consumer* expectations and behavior." Mot. at 17. However,

24   Professor Richards supports his conclusions in this paragraph and throughout his report with citations

25   to research and published and peer-reviewed findings of others in the field of privacy, legal

26

27

28

jurisprudence, his own scholarly work,[14] and his analysis of certain documents, including Google's disclosures. In addition to the sources cited in his Expert Report, Professor Richards testified that this conclusion was based on his 25 years of experience thinking about the concept as a professional scholar (Tr. at 113:16-25), his discussions with first year law students who come to law school already having heard of the phrase (*id.* at 116:11-16), and his observations from "talking about privacy in these terms regularly" with people in everyday society (*id.* at 117:2-3). This is exactly the qualitative process upheld as reliable in *Brooks*.

Google next argues that Professor Richards opinions regarding societal norms are *ipse dixit* for essentially the same reason. Mot. at 17–18. Google again focuses on the same single paragraph setting forth that the test for determining whether privacy rights have been invaded "in *both* law and consumer expectations" is a reasonable person test. Rprt. at ¶ 29 (emphasis added). This statement does not, as Google argues, conflate the two tests but rather concludes that under both, the relevant inquiry is what a reasonable person would understand. In support of this, Professor Richards further sets forth that the reasonable person test is a "historical concept rooted in deep societal norms." *Id.* This conclusion is supported by the many articles, books, studies, and legal authority cited throughout his report. Professor Richards' opinions are consistent with this Court's and other decisions denying challenges to expert opinions that provide "background and context information about what privacy is." *Brown*, 2022 WL 17961497, at *10 (denying *Daubert* challenge to a privacy expert); *see also Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 148 (1999) ("Experts of all kinds tie observations to conclusions through the use of what Judge Learned Hand called 'general truths derived from . . . specialized experience.'") (citation omitted).

Google's authority is unavailing and does not render Professors Richards' opinions subjective and conclusory. In *Cabrera v. Cordis Corp.*, 134 F.3d 1418, 1422–23 (9th Cir. 1998), the expert could not identify any peer-reviewed research or scientific method embraced by at least some others

---

[14] Google cites to an excerpt of Professor Richards book *Intellectual Privacy*, concerning Google Search and privacy to conclude that this somehow makes his opinions "unreliab[le]." Mot. at n.8. But the article does not concern or make conclusions about RTB. In any event, that Professor Richards previously examined privacy as a historical right and social norm in his book, which was subjected to peer-review by Oxford Press, substantiates the reliability of his opinions here.

in his field that would justify his conclusion, nor could he explain that he followed a scientific method "embraced by other experts in the field." By contrast, Professor Richards has explained in detail that his opinions are made through a "qualitative" approach by applying his years of experience to the evidence produced, disclosures made by Google, and that this approach is a basic method in social sciences. Tr. at 56:19-22. In *GPNE Corp. v. Apple, Inc.*, No. 12-CV-02885-JHK, 2014 WL 1494247, at *6 (N.D. Cal. Apr. 16, 2014), the court found the expert's opinion regarding the royalty rate was "a black box" where the expert did not provide any explanation of the methodology used or explain his conclusions. That situation is a far cry from the extensive experience and research Professor Richards explained were applied to the facts here. *See, e.g.*, *Finjan*, 2016 WL 4560071, at *4 (upholding testimony where expert presented and explained his process and defendant can cross-examine him on any deficiencies in his calculation). In *Claar v. Burlington N. R. Co.*, 29 F.3d 499, 502 (9th Cir. 1994)—unlike here—the experts formed their opinions before reading the relevant literature and admitted that they were not sufficiently familiar with the field to diagnose the causes of plaintiffs' injuries without first reviewing that literature. Google's remaining authority is similarly inapplicable.[15]

       2.     <u>Professor Richards Did Not Need to Survey Consumers to Opine on Consumer Expectations</u>

Courts, including this one, have rejected Google's contention that a consumer study is required and that experts should be stricken for not conducting one. Mot. at 18–19. In *Brown*, this Court held that Google's argument that the plaintiffs' expert's opinions are "unreliable because he

---

[15] *United States v. Holguin*, 51 F.4th 841, 855 (9th Cir. 2022), *cert. denied*, 143 S. Ct. 2509, 216 L. Ed. 2d 463 (2023), and *cert. denied sub nom. Higuera v. United States*, 143 S. Ct. 2510, 216 L. Ed. 2d 463 (2023) (finding merely that the district court abused its discretion in not making "explicit reliability findings"); *United States v. Vera*, 770 F.3d 1232, 1248 (9th Cir. 2014) (holding the opinion regarding the purchase of narcotics was inadmissible where it "could not have been 'rationally based on the witness's perception'") (citing FRE 701(a)); *Grodzitsky v. Am. Honda Motor Co.*, 957 F.3d 979, 985 (9th Cir. 2020) (affirming dismissal of expert's opinion on car defects where the expert failed to "utilize a workable standard supporting his design defect theory," the expert failed to provide any "supporting studies or testing" to support his opinions, and his methodology was found to be deficient); *Open Text S.A. v. Box, Inc.*, No. 13-CV-04910-JD, 2015 WL 349197, at *6 (N.D. Cal. Jan. 23, 2015) (the link between inputs and proposed expert's final royalty "is written in invisible ink" because she did not spell out the steps from the data to the royalty rate opinion).

failed to conduct any consumer surveys *does not persuade*." 2022 WL 17961497 at *11 n.8 (citations omitted). This Court concluded "[a]n expert who offers testimony on the question on what a reasonable consumer is likely to do and/or think is not required to conduct a consumer survey if his or her testimony is otherwise reliable." *Id.* This Court further noted that though a survey may have helped, the "failure to conduct a survey is not dispositive." *Id.*

Consistent with that holding, this Court held in *Bailey v. Rite Aid Corp.*, 338 F.R.D. 390, 401 (N.D. Cal. 2021) (Gonzalez Rogers, J.), that "an expert who offers testimony on the question of whether a reasonable consumer is likely to be deceived by an allegedly misleading statement, or whether a reasonable consumer would find such a statement to be material, is not required to conduct a consumer survey if his or her testimony is otherwise reliable," and that the absence of a consumer study "does not negatively impact the reliability or persuasiveness of his opinions." *Id.* Similarly, in *Berman v. Freedom Fin. Network, LLC*, 400 F.Supp.3d 964, 971–72 (N.D. Cal. 2019) (Gonzalez Rogers, J.), this Court denied a motion to strike opinions regarding whether a website design would be likely to mislead or confuse a typical user offered by a web developer because of his experience with website design, and training on user-experience design related to whether users understand how their personal information will be used and disclosed when interacting with a web page. *Id.*

Consistent with the *Brown*, *Berman*, and *Bailey* decisions, other courts routinely find that the absence of a survey does not render an expert's opinion inadmissible. *See, e.g.*, *Hadley v. Kellogg Sales Co.*, 324 F.Supp.3d 1084, 1115 (N.D. Cal. 2018) (holding that an expert need not conduct a consumer survey to reliably opine on likelihood of deception and materiality); *Colgan v. Leatherman Tool Grp., Inc.*, 135 Cal.App.4th 663, 681–82, 38 Cal.Rptr.3d 36 (2006) (noting that California courts have "reject[ed] [the] view that a plaintiff must produce a consumer survey or similar extrinsic evidence to prevail on a claim that the public is likely to be misled by a representation" under the FAL, CLRA, or UCL) (citation and internal quotation marks omitted).[16]

---

[16] *See also Wendell v. GalaxoSmithKline LLC*, 858 F.3d 1227, 1236 (9th Cir. 2017) ("The district court also wrongfully required that the experts' opinions rely on animal or epidemiological studies. Neither are necessary for an expert's testimony to be found reliable and admissible"; accepting experts' reliance on other published studies, articles, and their own wealth of experience); *In re Suboxone (Buprenorphine Hydrochloride & Naloxone) Antitrust Litig.*, No. 13-MD-2445, 2020 WL

As discussed above, Professor Richards brought all his expertise to bear in executing the assignment in this case, including his decades of experience as a professional scholar, speaking to people and students about privacy, his review of studies on consumers privacy expectations, and his review of disclosures regarding privacy from other technology companies. Tr. at 35:12-23; Rprt. at ¶¶ 71–73. Professor Richards testified that the facts of this case are amenable to textual analysis and that the plain meaning of the text at issue would not be in doubt to a reasonable person who spent the time necessary to fully read and understand the policies. Tr. at 131:21–132:2 ("[I]n this case, it is clear that Google's privacy policies make clear that it says repeatedly, more than once, in more than one document, more than one period in time, that it will -- will not, does not, and never shares the personal information of its account holders with third parties."); *id.* at 137:9-12 ("[W]here Google makes these promises repeatedly in a variety of forms and then breaks these promises, that would be a violation of the societal norm."); *id.* at 172:17–173:1 ("My opinion is that Google's privacy policies, Google's statements, are consistent with a deeply rooted societal norm of the fundamental right of privacy. And it is also my opinion that . . . reasonable consumers are entitled to rely upon that fundamental right, particularly . . . where those norms are confirmed by Google's public statements."). The absence of a specific survey does not render his opinions inadmissible.

Google also attacks Professor Richards because he did not interview putative class members or named plaintiffs to determine their privacy preferences. Mot. at 19. In *Brooks*, the court rejected a similar argument and upheld Professor Turow's opinion that the defendant's conduct could "harm consumers without their knowledge," which was grounded in his textual review of primary and secondary sources, including the defendant's privacy policy. *Brooks*, 2023 WL 5667884 at *6. Here,

_____

6887885, at *29 (E.D. Pa. Nov. 24, 2020) ("Repeatedly, courts have permitted experts to rely solely on their experience to opine on how a reasonable individual within the same industry would react.") (collecting cases); *In re Viagra (Sildenafil Citrate) & Cialis (Tadalafil) Prod. Liab. Litig.*, 424 F.Supp.3d 781, 792 (N.D. Cal. 2020) (Doctors' methodology was to apply their education, training, and experience to a comprehensive review of the available medical literature on the topic—"[s]uch an approach is appropriate"); *In re Arris Cable Modem Consumer Litig.*, 327 F.R.D. 334, 363 (N.D. Cal. 2018) ("nothing requires that an expert conduct independent testing in every case"); *Brighton Collectible, LLC v. Believe Prod., Inc.*, No. 215CV00579CASASX, 2017 WL 440255, at *9 (C.D. Cal. Jan. 30, 2017) ("To the extent that defendant objects to [the expert's] failure to conduct a consumer study consistent with practice in the field of marketing, said decision does not undermine the reliability of [the expert's] opinion.").

Professor Richards' opinion is that Google's promises to not sell or share personal information of account holders are uniform and therefore apply to all class members, including the named plaintiffs. Tr. at 137:17-25 ("I would say that it is my opinion that if you were to ask people if a company has said, we are not going to -- we will not, do not, and never share or sell your data with third parties, and then that company does that millions and billions of times per day, as the evidence I have seen in this -- from -- from in this case suggests, that everyone would find that to be a violation of the -- of the societal norm."); *id.* at 173:4-8 ("Google promised to all of its account holders that it would not, will not, and will never share personal information with third parties, and that promise applies to every Google account holder, as I understand it."). For that reason, Professor Richards rightly concluded that he did not need to consider hypotheticals about users who did not read the policies or to consider the testimony of what Named Plaintiffs actually viewed. *Id.* at 131:11-14 ("[I]n this case, the expectations that are -- the terms of service and privacy policies apply to 100 percent of the class, and so therefore, it would be common."). As in *Brooks*, Professor Richards' opinions are admissible.

Google's cited authority is inapposite to this case. *Morrison Ent. Grp. Inc. v. Nintendo of Am., Inc.*, did not hold that a "confusion survey" was necessary. 56 F. App'x 782, 785 (9th Cir. 2003). Also, in *Owens v. Auxilium Pharms., Inc.*, the court simply found that an expert's opinion about a "hypothetical high-risk patient" using the defendant's product as directed, did not fit the allegations of a product liability case where the plaintiff was known to have not "use[d] it as directed." 895 F.3d 971, 972–73 (7th Cir. 2018). That authority is inapplicable to the relevant inquiry regarding whether Google RTB violated consumers' privacy and consent.

Further, Google's reliance on conclusions from Dominique Hanssens, a research professor in marketing, is unavailing. Hanssens critiques Professor Richards for not following "the academic discipline of marketing." Hanssens Rprt. at ¶ 68 n.83, ECF No. 584-5 (citation excluded). But as discussed above, Professor Richards' opinions are rooted in his review of textual analysis of primary documents, which is a common method in historical and legal scholarship and in other social sciences. *See supra* Section 5.D.1. Hanssens further argues that Professor Richards should have conducted an "empirical analysis of the expectations of privacy from actual consumers." *Id.* at ¶ 69. Again, this conclusion is outweighed by numerous orders, including *Brooks*, *Brown*, and *Bailey*, finding that an

empirical study is not necessary to opine on consumer expectations. The court specifically denied this exact criticism by Hanssens against a different consumer expert in *Krommenhock v. Post Foods, LLC*, 334 F.R.D. 552 (N.D. Cal. 2020). There, Hanssens submitted a report on behalf of the defendant challenging plaintiffs' consumer expert for (among other things) failing to conduct an "empirical analysis [a]s necessary to determine the impact, if any, of the proposed disclosure on the purchase decisions of the putative class members." Hanssens Rprt. at 132–133, No. 3:16-cv-04958 (N.D. Cal. 2020), ECF No. 170-2. Over this objection, the court found plaintiffs' consumer expert was qualified to opine on whether consumers would consider defendant's representations material given his years of experience and his review of evidence produced by the defendant. *Krommenhock*, 334 F.R.D. at 565–66. The court further noted that the challenges made by Hanssens and defendant's other expert were "to be resolved by the jury." *Id.* The court should find similarly here.

Because Professor Richards' conclusions are well-reasoned and reliable, his opinions regarding consumer expectations cannot be struck based on the failure to perform a survey.

### E.     Professor Richards' Opinions Should Not be Excluded as Improper

Google criticizes Professor Richards as improperly relying on Google's documents and opining on Google's intent. *See* Mot. at 22–24. These arguments are meritless.

#### 1.     Professor Richards' Reliance on Google Documents is Permissible.

Professor Richards' descriptions of evidence should not be excluded, as Google contends. *See* Mot. § IV.D.1 at p. 22–23 (seeking to exclude Rprt. at ¶¶ 74, 126, 136). Professor Richards properly applied his expertise, using historical methodology—as discussed at length above—in reviewing the documents at issue, and concludes that a jury or trier of fact could reach certain conclusions based on the same. Google's cited authority, which is either inapposite or distinguishable, does not support excluding Professor Richards' opinions here—unlike in those cases, Professor Richards sets forth his own reasoned and experienced commentary on the evidence and does not offer unfounded and gratuitous personal interpretations of statements in the documents.

For instance, in *Numatics, Inc. v. Balluff, Inc.*, 66 F.Supp.3d 934. 941–42 (E.D. Mich. 2013), the court acknowledged that experts "are permitted to comment on the evidence that others supply . . . because they have technical expertise in a given field that 'will help the trier of fact to understand

the evidence,'" but excluded the expert's opinions because "counsel wrote [the expert's] report; then [the expert] reviewed the draft of the 64-page report for only a couple of hours before signing it." Here, however, Professor Richards offers his "own commentary on the evidence" and has not "surrendered his role to [] counsel." *Id.* at 941–44. Nor does *DZ Reserve v. Meta Platforms, Inc.*, No. 3:18-cv-04978-JD, 2022 WL 912890 (N.D. Cal. Mar. 9, 2022), add support Google's position— although the court excluded the expert's opinions, it's cursory analysis does not describe them in any depth and the report itself remains under seal.[17] In any event, it is apparent from Meta Platforms' briefing in *DZ Reserve* that the expert took great liberties in setting forth his personal interpretations of statements contained in documents, including "untutored speculation" and a "huge logical leap" about the meaning of statements in emails without appropriate foundational knowledge. *See id.*, No. 3:18-cv-4978-JD, ECF No. 286 at 7–10. Likewise, Professor Richards' Report does not "gratuitously interpret[]" the evidence at issue, as the expert did in *Edwards Lifesciences Corp. v. Meril Life Sciences Pvt. Ltd.*, No. 19-cv-06593-HSG, 2022 WL 254348, at *10 (N.D. Cal. Jan. 27, 2022).

Here, Google's "recourse is not exclusion of the testimony, but, rather, refutation of it by cross-examination and by the testimony of its own expert witnesses." *Borges v. City of Eureka*, No. 15-cv-00846-YGR, 2017 WL 363212, at *3 (N.D. Cal. Jan. 25, 2017) (Gonzalez Rogers, J.) (quoting *Humetrix v. Gemplus*, 268 F.3d 910, 919 (9th Cir. 2001)). Google had this opportunity during Professor Richards' deposition and will have another opportunity at trial. For example, in *Borges*, this court declined to exclude the expert's opinions about what he observed in a video recording, explaining that "[i]f defendants believe [the expert] has 'misdescribed' what is depicted on the video, they will have the opportunity to cross-examine him regarding the factual basis for his opinions, and to offer their own expert witness to interpret the events on the video." *Id.*

### 2. Professor Richards Does Not Opine on Google's State of Mind.

Google's contention that Professor Richards is offering "ultimate opinion[s]" on Google's state of mind based on his review of Google documents is likewise misplaced. *See* Mot. § IV.D.2 at

---

[17] *See id.*, Case No. 3:18-cv-4978-JD, ECF No. 282-74 (sealed McFarlane report); ECF No. 286 at 1:5 (Meta briefing, citing McFarlane Report as ECF No. 282-74).

pp. 23–24 (challenging Rprt. at ¶¶ 74, 126, 131, 136). Indeed, in making its argument, Google resorts to selectively quoting Professor Richards' Report and mischaracterizing his opinions. In each instance, Professor Richards does not himself opine about Google's state of mind, but rather discusses evidence "from which *a jury or trier of fact may conclude*" that Google had a certain understanding, intent, or awareness. *See* Rprt. ¶¶ 74, 126, 131, 136 (emphasis added). Put simply, Professor Richards is not "substituting [his] judgment for the jury's" as Google claims (Mot. at 23); to the contrary, he is expressly deferring to the jury's judgment on these issues. Thus, in this respect, Professor Richards' opinions at issue are not comparable to those excluded in *Brown*, 2022 WL 17961497, at *12.

## IV.   CONCLUSION

Professor Richards' opinions are relevant, reliable, and will assist the trier of fact. They should be admitted under Rule 702. Accordingly, Plaintiffs respectfully requests the Court deny Google's *Daubert* Motion to Exclude the Richards Report.


DATED: October 27, 2023                         Respectfully submitted,


                                                **PRITZKER LEVINE LLP**

                                                By: */s/ Elizabeth C. Pritzker*
                                                Elizabeth C. Pritzker (Cal. Bar No.146267)
                                                Jonathan K. Levine (Cal. Bar No. 220289)
                                                Bethany Caracuzzo (Cal. Bar No. 190687)
                                                Caroline Corbitt (Cal. Bar No. 305492)
                                                1900 Powell Street, Ste. 450
                                                Oakland, CA 94602
                                                Tel.: (415) 692-0772
                                                Fax: (415) 366-6110
                                                *ecp@pritzkerlevine.com*
                                                *jkl@pritzkerlevine.com*
                                                *bc@pritzkerlevine.com*

                                                *Interim Class Counsel*

                                                **BLEICHMAR FONTI & AULD LLP**
                                                Lesley E. Weaver (SBN 191305)
                                                Anne K. Davis (SBN 267909)
                                                Joshua D. Samra (SBN 313050)
                                                1330 Broadway, Suite 630
                                                Oakland, CA 94612

Tel.: (415) 445-4003
Fax: (415) 445-4020
*lweaver@bfalaw.com*
*adavis@bfalaw.com*
*jsamra@bfalaw.com*

**SIMONS HANLY CONROY LLC**
Jason 'Jay' Barnes (admitted *pro hac vice*)
An Truong (admitted *pro hac vice*)
Jenny Paulson (admitted *pro hac vice*)
112 Madison Avenue, 7th Floor
New York, NY 10016
Tel.: (212) 784-6400
Fax: (212) 213-5949
*jaybarnes@simmonsfirm.com*
*atruong@simmonsfirm.com*
*jpaulson@simmonsfirm.com*

**DICELLO LEVITT LLC**
David A. Straite (admitted *pro hac vice*)
485 Lexington Avenue, Suite 1001
New York, NY 10017
Tel.: (212) 784-6400
Fax: (212) 213-5949
Tel: (646) 993-1000
*dstraite@dicellolevitt.com*

James Ulwick (admitted *pro hac vice*)
Ten North Dearborn Street, Sixth Floor
Chicago, IL 60602
Tel.: (312) 214-7900
*julwick@dicellolevitt.com*

**COTCHETT PITRE & MCCARTHY, LLP**
Nancy E. Nishimura (Cal. Bar No. 152621)
Brian Danitz (Cal Bar. No. 247403)
Karin B. Swope (admitted *pro hac vice*)
840 Malcolm Road
Burlingame, CA 94010
Tel.: (650) 697-6000
*nnishimura@cpmlegal.com*
*bdanitz@cpmlegal.com*
*kswope@cpmlegal.com*

**BOTTINI & BOTTINI INC.**
Frances A. Bottini, Jr. (Cal. Bar No. 175783)
7817 Ivanhoe Ave., Ste. 102
LA Jolla, CA 92037

26

Tel.: (848) 914-2001
*fbottini@bottinilaw.com*

*Counsel for Plaintiffs and the Proposed Class*

## ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1(i)(3)

I, Brian Danitz, attest that concurrence in the filing of this document has been obtained from the other signatories. I declare under penalty of perjury that the foregoing is true and correct.

Executed this 27th day of October, 2023, at Burlingame, California.

*/s/ Brian Danitz*
BRIAN DANITZ
