# **<u>Exhibit 60</u>**

1              UNITED STATES DISTRICT COURT

2            NORTHERN DISTRICT OF CALIFORNIA

3                   OAKLAND DIVISION

4            Case No. 4:21-cv-02155-YGR-VKD

5

    * * * * * * * * * * * * * * * * * * * * * * * * * * *

6    IN RE:  GOOGLE RTB CONSUMER

7    PRIVACY LITIGATION,

8

9    THIS DOCUMENT APPLIES TO:

10   ALL ACTIONS

    * * * * * * * * * * * * * * * * * * * * * * * * * * *

11                   CONFIDENTIAL

12

13            VIDEOTAPED DEPOSITION OF:

14            CHRISTOPHER WILSON, PH.D.

15                   COOLEY LLP

16               500 Boylston Street

17              Boston, Massachusetts

18            August 31, 2023     9:01 a.m.

19

20   Reported by:

21   Darlene M. Coppola, RMR, CRR

22   JOB No. 6056467

23

24   PAGES 1 - 356

                                        Page 1

CONFIDENTIAL

```
1    APPEARANCES:

2

3    Representing the Plaintiffs:

4         PRITZKER LEVINE LLP

5         1900 Powell Street

6         Suite 450

7         Emeryville, CA 94608

8         BY:  ELIZABETH C. PRITZKER, ESQUIRE

9         T 415.692.0772

10        E ecp@pritzkerlevine.com

11   -and-

12        SIMMONS HANLY CONROY LLP

13        112 Madison Avenue

14        7th Floor

15        New York, NY 10016

16        BY:  AN V. TRUONG, ESQUIRE

17        212.257.8482

18        E atruong@simmonsfirm.com

19

20

21

22   (Continued on next page)

23

24
```

Page 2

CONFIDENTIAL

```
 1   APPEARANCES (Continued):

 2

 3   Representing the Defendant:

 4        COOLEY LLP

 5        3 Embarcadero Center

 6        20th Floor

 7        San Francisco, CA 94111

 8        BY:  WHITTY SOMVICHIAN, ESQUIRE

 9        T 415.693.2000

10        E wsomvichian@cooley.com

11

12

13   Also Present:

14   Shawn Budd, Videographer

15

16

17

18

19

20

21

22

23

24
```

Page 3

CONFIDENTIAL

```
 1                       INDEX
 2                    EXAMINATION
 3    Witness Name                            Page
 4    CHRISTOPHER WILSON, PH.D.
 5        Direct By Mr. Somvichian ......................... 6
 6
 7                     EXHIBITS
 8    Exhibit         Description                Page
 9
      Exhibit 1       Expert Report,              7
10                    Christopher Wilson,
11                    July 14, 2023
      Exhibit 2       Real-Time Bidding          31
12                    Protocol Buffer V.212
13    Exhibit 3       OpenRTB Protocol Buffer    36
14                    2.50
15    Exhibit 4       Spreadsheet                89
16    Exhibit 5       Spreadsheet                127
      Exhibit 6       "Should You Use the App    255
17                    for That?  Comparing
                      the Privacy
18                    Implications of App-
                      and Web-based Online
19                    Services"
20    Exhibit 7       "Diffusion of User         260
                      Tracking Data in the
21                    Online Advertising
22                    Ecosystem"
      Exhibit 8       Exhibit F, Class           313
23                    Certification Report of
24                    C. Wilson

                                         Page  4
```

Veritext Legal Solutions
Calendar-CA@veritext.com 866-299-5127

CONFIDENTIAL

```
 1                    P R O C E E D I N G

 2

 3              (Commencing at 9:01 a.m.)

 4

 5                    THE VIDEOGRAPHER:  We are on the

 6         record.  This is the videographer speaking,

 7         Shawn Budd, with Veritext Legal Solutions.

 8                 Today's date is August 31, 2023, and

 9         the time is 9:03 a.m.  We are here in Boston,

10         Massachusetts, to take the video deposition of

11         Dr. Christopher Wilson in the matter of Google

12         Consumer Privacy Litigation.

13                 Would counsel please introduce

14         themselves for the record.

15                    MS. PRITZKER:  Elizabeth

16         Pritzker, Pritzker Levine LLP for the

17         plaintiffs.

18                    MS. TRUONG:  An Truong, Simmons

19         Hanly Conroy for plaintiffs.

20                    MR. SOMVICHIAN:  Whitty

21         Somvichian, Cooley, representing Google

22         today.

23                    THE VIDEOGRAPHER:  Would the

24         court reporter please swear in the witness.
```

Page 5

CONFIDENTIAL

1

2                    CHRISTOPHER WILSON, PH.D.,

3          a witness called for examination by

4      counsel for the Defendant, having been

5      satisfactorily identified by the production of

6      his driver's license and being first duly

7      sworn by the Notary Public, was examined and

8      testified as follows:

9

10                    THE STENOGRAPHER:  Thank you.

11     You may proceed.

12

13                    DIRECT EXAMINATION

14     BY MR. SOMVICHIAN:

15          Q.   Good morning, Dr. Wilson.  My name's

16     Whitty Somvichian.  I'm one of the attorneys

17     representing Google in this case, and you were

18     retained by plaintiffs' counsel in connection

19     with the litigation pending against Google,

20     correct?

21          A.   Correct.

22          Q.   You submitted an expert report in

23     connection with litigation?

24          A.   Correct.

Veritext Legal Solutions
Calendar-CA@veritext.com 866-299-5127

1    say, "It is my opinion that there is a uniform

2    set of information contained in all Google RTB

3    bid requests that is shared with and sold to

4    RTB participants."

5              Do you see that?

6        A.   I do.

7        Q.   Then the next sentence goes on to say,

8    "That is, based on Google's own documentation,

9    the Google RTB bid requests are intended to be

10   uniform in the types of information shared and

11   sold."

12             So I'm trying to understand what your

13   opinion exactly is.   Are you saying that the

14   data in RTB bid requests is intended to be

15   uniform across all bid requests but may

16   actually differ in individual bid requests, or

17   are you saying that the data contained in all

18   bid requests is literally uniform across all

19   bid requests sent to all RTB participants?

20        A.   So let's see.

21        Q.   Because the two sentences that I read

22   to you say -- seem to say to me both things,

23   which I -- I interpret as being inconsistent.

24        A.   (Witness reviews document.)

Page 27

1          Okay.   So as I say in Paragraph 13 and

2     Subpoints A and B, what I am looking at here

3     is Google's developer documentation, and these

4     sample bid requests produced by some RTB

5     participants.   And what I am saying is uniform

6     is the structure of these bid requests.

7          The fields that are in them are

8     largely uniform.   So I am not saying the

9     second thing you said, that every individual

10    value and every individual field is always the

11    same.

12    Q.   And have you actually observed in your

13    work, in the analysis of whatever data that

14    you looked at, that RTB bid requests actually

15    are not populated uniformly with all of the

16    same fields and data?

17          MS. PRITZKER:   Objection as to

18    form.

19    A.   So based on my background and

20    expertise as someone who researches Google RTB

21    and again, based on my review of these

22    developer documents and the sample bid

23    requests produced by these participants, based

24    on those things that I have seen, I would

                                        Page 28

CONFIDENTIAL

1          Q.    Go ahead.

2          A.    (Witness reviews document.)

3              So it's Section 8, I believe.  This is

4      actual web browsing data that I was looking

5      at.

6          Q.    Right.  What did you do to determine

7      whether the named plaintiffs' web activity is

8      representative of Google account holders

9      generally or your concept of "the average

10      Google account holder"?

11          A.    So how I would assess

12      representativeness with respect to that data

13      is what websites did they visit -- "they"

14      being the named plaintiffs -- in this web and

15      app activity data that was provided to me, and

16      then are those -- are those the popular

17      websites that are sort of representative of

18      the general behavior of people on the web?

19              So, for example, in the web app

20      activity data, the plaintiffs visit -- they

21      visit -- excuse me -- they visit websites like

22      Microsoft.com, LinkedIn, Netflix, Facebook,

23      Instagram, CNN, New York Times.  There's other

24      sources of data that track popularity of

Page 287

CONFIDENTIAL

1    websites.  If you looked at those, what you

2    would see is that these are all within the top

3    roughly 20 most popular sites in existence.

4          So to the extent that everyone is

5    visiting these popular websites, they are --

6    by definition, they're the most popular.  What

7    these named plaintiffs are experiencing when

8    they visited those sites is the same as what

9    everyone else is experiencing when they're

10    visiting those sites.

11    Q.   Did you do any analysis of any data to

12    evaluate whether the web activity that you saw

13    for the named plaintiffs is representative of

14    any other population of Google account

15    holders?

16    A.   So, one, I'm not sure what you mean by

17    "other population of account holders."  Is

18    that, like, another specific subgroup of

19    people?  Is that --

20    Q.   Any.

21    A.   I mean, I only have the account holder

22    data I was given, so, no.

23    Q.   So you don't have data associated with

24    the average Google account holder, right?

Page 288

CONFIDENTIAL

1          like the user ID and potentially the user

2          list.  But as you said, this is not meant to

3          control other forms of information being

4          distributed, like the user agent, the

5          location.  Those things are still distributed

6          whether you've opted in or out.

7              Q.   And couldn't those other pieces of

8      data that you understand will still be sent

9      have triggered the advertisement that you see

10     here in Paragraph 122, things like the IP

11     address, user agent, if it's being tracked by

12     advertisers?

13             A.   So I think what you're positing is

14     perhaps a scenario where an advertiser uses

15     fingerprinting to try and compute a unique

16     identifier.  That is possible.  I mean,

17     advertisers can compute fingerprints.

18                  And unfortunately what that would mean

19     is that the guarantee that Google is making

20     here is false, right?  They're saying --

21     they're allowing you to say, I would not like

22     these ads, and yet they're still providing

23     sufficient information for those ads to be

24     targeted.

Page 329

CONFIDENTIAL

1           Q.    And with GAP turned off?

2           A.    That's correct.

3           Q.    I got it.

4                       MR. SOMVICHIAN:  Why don't we go

5      off the record.  I want to see what else I

6      have.

7                       MS. PRITZKER:  I think we're at

8      the seven-hour limit, Counsel.  So I'm not

9      sure --

10                      THE VIDEOGRAPHER:  The time is

11     5:15 p.m.  We're off the record.

12

13     (Recess taken from 5:15 p.m.

14            to 5:18 p.m.)

15

16                      THE VIDEOGRAPHER:  We're back on

17     the record.  The time is 5:18.

18     BY MR. SOMVICHIAN:

19         Q.   Dr. Wilson, we made it to the last

20     paragraph in your report.

21              Paragraph 124, you say in the last

22     sentence, "It is very unlikely that there are

23     any Google U.S. account holders who over the

24     entire seven-year class period did not have

                                    Page 347

1    their data shared and sold through Google RTB

2    at least once."

3              You're not prepared to offer any

4    quantification in terms of a percentage or

5    number when you say "very unlikely," are you?

6         A.   I don't present a number, and I was

7    not provided the data to compute such a

8    number.   It was not part of my assignment, so,

9    no.

10        Q.   And could the number depend on whether

11   an account holder tends to access the Internet

12   through a web or mobile device?

13        A.   I don't think that's a strong enough

14   distinction.   RTB is present on both.   You're

15   likely to get swept up in RTB whether you use

16   one or the other or both.

17        Q.   Could the percentage or the likelihood

18   depend on the browser type and whether you're

19   using, for example, a browser that blocks

20   third-party cookies?

21        A.   I mean, again, it's hard to say

22   because a person may use other browsers at

23   other times.   The browsers didn't always block

24   third-party cookies, so we're talking about a

Page 348

CONFIDENTIAL

CERTIFICATION

1

2          I, DARLENE M. COPPOLA, a Notary Public, do hereby

3     certify that CHRISTOPHER WILSON, PH.D., after having

4     satisfactorily identifying himself, came before me on

5     the 31st day of August, 2023, in Boston,

6     Massachusetts, and was by me duly sworn to testify to

7     the truth and nothing but the truth as to his

8     knowledge touching and concerning the matters in

9     controversy in this cause; that he was thereupon

10    examined upon his oath and said examination reduced to

11    writing by me; and that the statement is a true record

12    of the testimony given by the witness, to the best of

13    my knowledge and ability.

14          I further certify that I am not a relative or

15    employee of counsel/attorney for any of the parties,

16    nor a relative or employee of such parties, nor am I

17    financially interested in the outcome of the action.

18          WITNESS MY HAND THIS 4th day of September, 2023.

19

20

21    DARLENE M. COPPOLA              My commission expires:

22    NOTARY PUBLIC                   November 2, 2029

23    REGISTERED MERIT REPORTER

24    CERTIFIED REALTIME REPORTER

Page 352

```
1   ELIZABETH C. PRITZKER, ESQUIRE

2   ecp@pritzkerlevine.com

3                                       September 5, 2023

4   RE: GOOGLE PRIVACY LITIGATION

5   AUGUST 31, 2023, CHRISTOPHER WILSON, PH.D., JOB NO. 6056467

6   The above-referenced transcript has been

7   completed by Veritext Legal Solutions and

8   review of the transcript is being handled as follows:

9   __ Per CA State Code (CCP 2025.520 (a)-(e)) - Contact Veritext

10     to schedule a time to review the original transcript at

11     a Veritext office.

12  __ Per CA State Code (CCP 2025.520 (a)-(e)) - Locked .PDF

13     Transcript - The witness should review the transcript and

14     make any necessary corrections on the errata pages included

15     below, notating the page and line number of the corrections.

16     The witness should then sign and date the errata and penalty

17     of perjury pages and return the completed pages to all

18     appearing counsel within the period of time determined at

19     the deposition or provided by the Code of Civil Procedure.

20  __ Waiving the CA Code of Civil Procedure per Stipulation of

21     Counsel - Original transcript to be released for signature

22     as determined at the deposition.

23  __ Signature Waived - Reading & Signature was waived at the

24     time of the deposition.
```

Page 353

CONFIDENTIAL

1    xx Federal R&S Requested (FRCP 30(e)(1)(B)) – Locked .PDF

2       Transcript – The witness should review the transcript and

3       make any necessary corrections on the errata pages included

4       below, notating the page and line number of the corrections.

5       The witness should then sign and date the errata and penalty

6       of perjury pages and return the completed pages to all

7       appearing counsel within the period of time determined at

8       the deposition or provided by the Federal Rules.

9    __ Federal R&S Not Requested – Reading & Signature was not

10      requested before the completion of the deposition.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

Page 354