COOLEY LLP
MICHAEL G. RHODES (SBN 116127)
(rhodesmg@cooley.com)
WHITTY SOMVICHIAN (SBN 194463)
(wsomvichian@cooley.com)
AARTI REDDY (SBN 274889)
(areddy@cooley.com)
KYLE C. WONG (SBN 224021)
(kwong@cooley.com)
REECE TREVOR (SBN 316685)
(rtrevor@cooley.com)
ANUPAM DHILLON (SBN 324746)
(adhillon@cooley.com)
ELIZABETH SANCHEZ SANTIAGO
(333789) (lsanchezsantiago@cooley.com)
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111-4004
Telephone:    +1 415 693 2000
Facsimile:    +1 415 693 2222

COOLEY LLP
ROBBY L.R. SALDAÑA (DC No. 1034981)
(rsaldana@cooley.com)
(*Admitted pro hac vice*)
KHARY J. ANDERSON (DC No. 1671197)
(kjanderson@cooley.com)
(*Admitted pro hac vice*)
1299 Pennsylvania Avenue, NW, Suite 700
Washington, DC 20004-2400
Telephone:    +1 202 842 7800
Facsimile:    +1 202 842 7899

Attorneys for Defendant
GOOGLE LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| In re Google RTB Consumer Privacy Litigation, | Master File No. 4:21-cv-02155-YGR-VKD |
| | **GOOGLE LLC'S OPPOSITION TO PLAINTIFFS' *DAUBERT* MOTION TO EXCLUDE GOOGLE'S DAMAGES EXPERT BRUCE DEAL** |
| This Document Relates to: *all actions* | |
| | **REDACTED VERSION OF DOCUMENT SOUGHT TO BE FILED UNDER SEAL** |

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

GOOGLE'S OPP. TO PLFS' *DAUBERT*
MOTION TO EXCLUDE B. DEAL
CASE NO. 4:21-cv-02155-YGR-VKD

# TABLE OF AUTHORITIES

**Pages**

I.      INTRODUCTION ...................................................................................................... 1

II.     STATEMENT OF FACTS ........................................................................................ 2

    A.      Mr. Deal is a Well-Experienced Economics Expert. ................................. 2

    B.      Mr. Deal's Opinions in Response to Plaintiffs' Damages Experts. ........... 3

    C.      Mr. Deal Relied on a Vast Set of Materials in Forming His Opinions. ............. 5

III.    LEGAL STANDARD ............................................................................................... 7

IV.     ARGUMENT ............................................................................................................ 7

    A.      Mr. Deal Properly Identifies Serious Flaws with Plaintiffs' Unjust
          Enrichment Damages Model........................................................................ 8

          1.      Mr. Deal's Opinion that Plaintiffs' Damages Model Is Not Based
               on Revenue Data Derived from Putative Class Members Is Entirely
               Proper. ................................................................................................. 8

          2.      Mr. Deal's Assumptions Regarding the Applicability of Google's
               U.S. Terms of Service Are Entirely Proper. ..................................... 11

          3.      Mr. Deal Properly Opines That Plaintiffs' Damages Model Does
               Not Exclude Users Who Voluntarily Shared Data.................................... 14

          4.      Mr. Deal's Opinions Regarding the Need to Assess Google's
               "Overall Profit" Are Reliable and Endorsed by Plaintiffs' Own
               Expert. ............................................................................................... 16

          5.      Mr. Deal's Opinions on the Unreliability of Plaintiffs' Damages
                Models Are Proper. .......................................................................... 18

    B.      Plaintiffs' Objections to Mr. Deal's Critique of Their Compensatory
          Damages Model Are Baseless..................................................................... 20

    C.      The Court Should Overrule Plaintiffs' Objections to Mr. Deal's Opinions
          Regarding Unharmed Class Members. ...................................................... 22

    D.      Plaintiffs' Objections to Mr. Deal's Opinions Regarding Allocation Are
          Meritless.................................................................................................... 24

V.      CONCLUSION ...................................................................................................... 25

# TABLE OF AUTHORITIES

**Pages**

**Cases**

*Aguilar v. Int'l Longshoremen's Union Local No. 10*,
966 F.2d 443 (9th Cir. 1992) .......................................................................................... 25

*In re Aluminum Warehousing Antitrust Litig.*,
336 F.R.D. 5 (S.D.N.Y. 2020) ........................................................................................ 14

*Apple iPod iTunes Antitrust Litig.*,
2014 WL 4809288 (N.D. Cal. Sept. 26, 2014) ............................................................... 18

*Brown v. Google, LLC*,
2022 WL 17961497 (N.D. Cal. Dec. 12, 2022) ............................................. 7, 11, 15, 24

*Comcast Corp. v. Behrend*,
569 U.S. 27 (2013) ...................................................................................................... 8, 16

*Czuchaj v. Conair Corp.*,
2016 WL 4414673 (S.D. Cal. Aug. 19, 2016) ................................................................ 14

*In re Dealer Mgmt. Sys. Antitrust Litig.*,
581 F. Supp. 3d 1029 (N.D. Ill. 2022) ........................................................................... 18

*In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Pracs. & Antitrust Litig.*,
2021 WL 2577490 (D. Kan. June 23, 2021) ................................................................... 18

*Facebook, Inc. v. Power Ventures, Inc.*,
252 F. Supp. 3d 765 (N.D. Cal. 2017) ........................................................................... 10

*Fitzhenry-Russell v. Keurig Dr. Pepper Inc.*,
2018 WL 10472794 (N.D. Cal. Sept. 25, 2018) ....................................................... 19, 20

*Haynes ex rel. Haynes v. National Railroad Passenger Corp.*,
319 F. App'x 541 (9th Cir. 2009) ................................................................................... 16

*Highfields Cap. I, LP v. SeaWorld Ent., Inc.*,
2022 WL 1037210 (S.D. Cal. Apr. 6, 2022) ............................................................. 13, 20

*Innovation Ventures, LLC v. Custom Nutrition Labs., LLC*,
520 F. Supp. 3d 872 (E.D. Mich. 2021) ......................................................................... 18

*United States ex rel. Jordan v. Northrop Grumman Corp.*,
2003 WL 27366224 (C.D. Cal. Jan. 6, 2003) ........................................................... 12, 25

*In re JUUL Labs, Inc., Mktg. Sales Pracs. & Prods. Liab. Litig.*,
609 F. Supp. 3d 942 (N.D. Cal. 2022) ........................................................................... 14

COOLEY LLP
ATTORNEYS AT LAW
CHICAGO

i

**GOOGLE'S OPP. TO PLFS' *DAUBERT***
**MOTION TO EXCLUDE B. DEAL**
**CASE NO. 4:21-CV-02155-YGR-VKD**

**TABLE OF AUTHORITIES**
(continued)

<strong>Pages</strong>

*Lugo v. Farmer's Pride Inc.*,
    2011 WL 2550376 (E.D. Pa. June 23, 2011) .................................................... 12, 25

*Martinelli v. Johnson & Johnson*,
    2019 WL 1429653 (E.D. Cal. Mar. 29, 2019) .......................................................... 9

*McBroom v. Ethicon, Inc.*,
    2021 WL 2709292 (D. Ariz. July 1, 2021) ...................................................... 15, 20

*McCrary v. Elations Co. LLC*,
    2014 WL 12589137 (C.D. Cal. Dec. 2, 2014) ........................................................ 19

*Medline Indus., Inc. v. C.R. Bard, Inc.*,
    2021 WL 10373206 (N.D. Ill. Sept. 28, 2021) ...................................................... 10

*Nationwide Transp. Fin. v. Cass Info. Sys., Inc.*,
    523 F.3d 1051 (9th Cir. 2008)............................................................................. 20

*Navelski v. Int'l Paper Co.*,
    244 F. Supp. 3d 1275 (N.D. Fla. 2017)................................................................... 9

*Newport Corp. v. Lighthouse Photonics Inc.*,
    2014 WL 1370749 (C.D. Cal. Apr. 8, 2014) .......................................................... 14

*Open Text S.A. v. Box, Inc.*,
    2015 WL 393858 (N.D. Cal. Jan. 29, 2015) .......................................................... 11

*Oracle Am., Inc. v. Google Inc.*,
    2011 WL 5914033 (N.D. Cal. Nov. 28, 2011)........................................................ 10

*Oracle Am., Inc. v. Hewlett Packard Enter. Co.*,
    2018 WL 6511146 (N.D. Cal. Dec. 11, 2018) ........................................................ 16

*Perez v. Rash Curtis & Assocs.*,
    2019 WL 1491694 (N.D. Cal. Apr. 4, 2019) ............................................ 15, 16, 22, 23

*Rai v. Santa Clara Valley Transp. Auth.*,
    308 F.R.D. 245 (N.D. Cal. 2015)............................................................................ 7

*In re Rail Freight Fuel Surcharge Antitrust Litig.*,
    292 F. Supp. 3d 14 (D.D.C. 2017) ........................................................................ 20

*San Francisco Baykeeper v. W. Bay Sanitary Dist.*,
    791 F. Supp. 2d 719 (N.D. Cal. 2011) .................................................................. 13

*Space Data Corp. v. Alphabet Inc.*,
    2019 WL 2603285 (N.D. Cal. June 25, 2019) .................................................. 23, 24

COOLEY LLP
ATTORNEYS AT LAW
CHICAGO

ii

**GOOGLE'S OPP. TO PLFS' *DAUBERT***
**MOTION TO EXCLUDE B. DEAL**
**CASE NO. 4:21-CV-02155-YGR-VKD**

1

**TABLE OF AUTHORITIES**
(continued)

2

**Pages**

3

*Teradata Corp. v. SAP SE*,
  570 F. Supp. 3d 810 (N.D. Cal. Nov. 8, 2021) ...................................................................... 24

4

5

*Therasense, Inc. v. Becton, Dickinson & Co.*,
  2008 WL 2323856 (N.D. Cal. May 22, 2008) ...................................................................... 9

6

*Townsend v. Monster Beverage Corp.*,
  303 F. Supp. 3d 1010 (C.D. Cal. 2018) ................................................................................ 19

7

8

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Pracs., & Prods.
  Liab. Litig.*,
  978 F. Supp. 2d 1053 (C.D. Cal. 2013) ................................................................................ 21

9

10

*Vaporstream, Inc. v. Snap, Inc.*,
  2020 WL 978731 (C.D. Cal. Feb. 28, 2020)..............7*VIA Techs., Inc. v. ASUS Comput. Int'l*,
  2017 WL 3051048 (N.D. Cal. July 19, 2017)...................................................................... 11, 25

11

12

13

*Villalpando v. Exel Direct Inc.*,
  161 F. Supp. 3d 873 (N.D. Cal. 2016) .................................................................................. 13

14

*Whitewater W. Indus., Ltd. v. Pac. Surf Designs, Inc.*,
  2019 WL 2211897 (S.D. Cal. May 22, 2019) ...................................................................... 25

15

**Court Rules**

16

17

Federal Rule of Civil Procedure 26(a) ........................................................................................ 7

18

Federal Rule of Evidence 702 ............................................................................................. 7, 15, 16

19

Federal Rule of Evidence 703 .................................................................................................... 10

20

21

22

23

24

25

26

27

28

Cooley LLP
Attorneys at Law
Chicago

iii

**Google's Opp. to Plfs' *Daubert*
Motion to Exclude B. Deal
Case No. 4:21-cv-02155-YGR-VKD**

## I.    INTRODUCTION

Plaintiffs' *Daubert* Motion ("Motion") to exclude the expert testimony of Defendant Google LLC's ("Google") damages expert Bruce Deal is nothing more than a transparent effort to distract the Court from the many flaws in their proposed damages models that preclude class certification.  As set forth in Google's Opposition to Plaintiffs' Motion for Class Certification ("Class Cert. Opposition") and as Mr. Deal explains in his report, Plaintiffs' unjust enrichment and compensatory damages models are riddled with rudimentary errors.  As to unjust enrichment, Plaintiffs' expert Greg Regan merely takes Google's overall revenue for RTB, without proposing any means to exclude revenue from ads shown to individuals who are not part of the proposed class, including ***non***-Google Account holders.  Further, Mr. Regan and Dr. Zeithammer each ignore the participation of internal Google bidders in Google RTB auctions and fail to consider that Google would generate additional revenue from such bidders in the "but for" world, even if the alleged personal information was never shared with third parties in RTB bid requests.  And, as to compensatory damages, Mr. Deal explains that, among other flaws, Dr. Zeithammer failed to apply any accepted valuation methodology in determining a "market price" for the information allegedly shared in RTB bid requests and he does not establish that data shared in the programs he uses as benchmarks are remotely comparable to that shared in RTB.

Having failed to proffer a viable classwide damages methodology, Plaintiffs now seek to manufacture a basis to exclude Mr. Deal's opinions.  Their Motion is legally and factually baseless and should be denied in its entirety.  To begin, the Motion—which cites sparse legal authority—is premised on a series of legally incorrect arguments.  ***First***, Plaintiffs repeatedly criticize Mr. Deal's reliance on an interview with a Google employee, but they cite no authority supporting their objection, ignore the well-settled rule that experts may and routinely do rely on hearsay, fail to acknowledge the numerous authorities endorsing expert reliance on materials of this kind, and omit the fact that they had the chance to examine this Google employee themselves under oath.  ***Second***, Plaintiffs repeatedly attack the correctness of Mr. Deal's sources and assumptions.  These criticisms are baseless, and in any event, a disagreement with an expert's sources and assumptions is not a basis for exclusion, as numerous courts have held.  ***Third***, while Plaintiffs criticize Mr. Deal's

opinions as "untested," that argument misperceives the role of a rebuttal expert, which is limited to rebutting opinions proffered by Plaintiffs' affirmative experts.  **Fourth**, Plaintiffs claim without any supporting case law that Mr. Deal is offering legal opinions by stating that Plaintiffs' damages model is "unreliable."  As other courts have recognized, that is not a legal conclusion; damages experts offer such opinions regularly and permissibly.

Plaintiffs' remaining arguments simply mischaracterize the evidence, including deposition testimony and Mr. Deal's opinions.  For instance, while Plaintiffs accuse Mr. Deal of improperly opining on the variance in bid requests, his testimony and report are clear that he relies on another technical expert's testimony for this assumption to inform his damages opinion—*just as Plaintiffs' damages expert does*.  Plaintiffs also claim that Mr. Deal's opinions are "incomplete" because he failed to consider testimony given *after* his report was filed and he was deposed.  Such arguments are frivolous and the Court should ignore them.

In the end, Plaintiffs have not raised a single valid objection to Mr. Deal's testimony and their Motion should be denied in its entirety.

## II.    STATEMENT OF FACTS

Plaintiffs' "background facts" are not facts at all, but a rambling stream of inflammatory assertions that are largely repetitive of their legal arguments seeking exclusion of Mr. Deal's opinions.  (Mot. at 4:1–11:23.)  The Court should therefore ignore this "background" as unhelpful.  Here, Google provides this brief statement of relevant facts to assist the Court in resolving the Motion, which addresses: (a) Mr. Deal's qualifications, (b) his rebuttal opinions to Plaintiffs' retained experts, Greg Regan and Dr. Robert Zeithammer, and (c) the materials and information on which Mr. Deal relied to form his opinions.

### A.    Mr. Deal is a Well-Experienced Economics Expert.

Mr. Deal is an economist with over 25 years of experience in economic consulting, finance, and data analytics.  (Deal Rep. ¶ 1; Reddy Decl. Ex. 1 ("Deal Tr.") at 14:23–15:4, 46:23–47:5.)  Mr. Deal completed his Ph.D. coursework at Harvard University, previously taught economics and analytic methods to graduate students, and has authored various publications in the field of economics.  He has testified as a damages expert hundreds of times, including nearly forty times in

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

2

GOOGLE'S OPP. TO PLFS' *DAUBERT*
MOTION TO EXCLUDE B. DEAL
CASE NO. 4:21-CV-02155-YGR-VKD

1    the prior four years.  (Deal Tr. at 12:17–18; Deal Rep. ¶¶ 2–3 & App. A. at 2–4.)[1]

2          **B.**      **Mr. Deal's Opinions in Response to Plaintiffs' Damages Experts.**

3          Google has engaged Mr. Deal as a rebuttal expert in this action.  (Deal Rep. ¶¶ 4–5.)

4    "[U]sing [his] experience, expertise, and analysis," Mr. Deal provides four overarching opinions to

5    respond to opinions rendered by Mr. Regan and Dr. Zeithammer.  (Deal Rep. ¶ 8.)

6          ***Unjust enrichment.***  Mr. Regan opines that "[t]he RTB Data may be readily used to quantify

7    RTB revenue related to personal information and related profits, which enables the relief sought by

8    Plaintiffs to be readily quantified on a class-wide basis."  (Regan Rep. ¶ 19.)  To calculate a

9    "defendant's profit" model, Mr. Regan used a revenue spreadsheet that Google produced in

10   discovery showing the overall ▮▮▮▮▮▮▮ RTB revenue, isolated the revenue for ▮▮▮▮▮▮▮

11   and then simply multiplied that revenue by 51.1 percent.  (Regan Rep. ¶¶ 39-45.)  Dr. Zeithammer

12   calculated the 51.1 percent figure based on a "meta-analysis" of 11 sources as a purported measure

13   of the value of the "revenue directly attributable to the sharing of User Data in bid requests."

14   (Zeithammer Rep. ¶ 12.)

15         In response, Mr. Deal identifies four core flaws with Plaintiffs' experts' methodology.

16   ***First***, this model "seeks disgorgement of revenue and profits that are not tied to Plaintiffs' proposed

17   class of Google account holders subject to a U.S. Terms of Service."  (Deal Rep. ¶ 10.)  In particular,

18   Mr. Deal observes that Google earns revenue in RTB from ***non***-Google Account Holders who are

19   not class members in this case, and that Mr. Regan's methodology is flawed because he proposes

20   no method to exclude such revenue from his model.  (*Id.*)  Similarly, Mr. Deal opines that Mr.

21   Regan also fails to consider that at least some users may inaccurately appear to be in the United

---

[1] Throughout their Motion and in their class certification reply papers ("Class Cert. Reply"), Plaintiffs repeatedly resort to mischaracterizing deposition testimony.  (*See* ECF No. 628 at 5; 627-2 ¶ 6.) For example, while Plaintiffs criticize Mr. Deal's knowledge of RTB, he did not testify that "Google's RTB auction works by publishers sharing user data with Google, rather than Google sharing user data with auction participants," as Plaintiffs falsely contend.  (Mot. at 4:11-13.) Rather, he explained that while certain data in a bid request originates from publishers, "Google is offering up the bid request to either the authorized buyer or opening bidding partners" in the RTB auction.  (Deal Tr. at 162:1-8.)  Plaintiffs also mischaracterize Mr. Deal's testimony as stating that "there is a 'master set' of data shared in Google RTB auctions." (Mot. at 7 n.4.)  Mr. Deal explained "I'm specifically ***not*** saying, 'Oh . . . there's one set of variables,'" and that "generally there's a set of potential variables that can be . . . 'included in Bid Requests.'  That – I don't read that to say every single bid request always has every one of these populated."  (Deal Tr. at 72:15–20; 73:13–22; 74:10-15 (emphasis added).)

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

3

GOOGLE'S OPP. TO PLFS' *DAUBERT*
MOTION TO EXCLUDE B. DEAL
CASE NO. 4:21-CV-02155-YGR-VKD

States through their use of a VPN and thus (per his understanding) may not be subject to Google's United States Terms of Service ("TOS"), and Mr. Regan proposes no reliable method to exclude these individuals. (*Id.* ¶¶ 10, 44.) *Second*, Mr. Deal criticizes Mr. Regan's failure to either account for or propose a method to exclude revenue from Google Account Holders who may have "voluntarily opted" to have their information shared for personalized advertising. (*Id.* ¶ 11.) *Third*, Mr. Deal opines that Plaintiffs' experts' economic framework is fundamentally flawed because it fails to consider how removing the alleged sharing of personal information through RTB "would impact Google's *overall* revenue. (*Id.* ¶ 12.) In particular, he explains that neither of Plaintiffs' experts account for the fact that in the "but for" world, even if ████████ would have submitted lower bids for ad inventory that omitted the allegedly personal or sensitive information, other Google products that participate in the RTB auction would continue to bid for the same ad inventory and thus Google would earn revenue.[2] (*Id.*) *Fourth*, Mr. Deal opines that Dr. Zeithammer's 51.1 Percent metric "is unreliable for estimating the class-wide 'effect of User Data on Google RTB auction revenue'" because the studies on which it is based "do not account for many industry changes that limited the availability of the at-issue data during the Class Period.'" (*Id.* ¶ 13.)[3]

**Compensatory Damages.** Dr. Zeithammer calculates the annual "market price" damages of the value of the alleged personal information shared through RTB by taking the simple average of payments by four vendors that he asserts compensate participants for different types of activities or user data. (Zeithammer Rep. ¶¶ 15, 93–96, 100.) He learned about these programs from third-party news articles and his own online research and described the limited nature of these sources in his deposition. (*Id.* ¶¶ 90–92, nn. 72-81; *see, e.g.*, Reddy Decl. Ex. 4 ("Zeithammer Tr.") at 98:4-7, 143:18-144:2, 145:9-19, 183:12-25, 184:4-10.) Mr. Regan then simply divides Dr. Zeithammer's "market price" figure by twelve and proposes awarding market price damages in the amount of $3.17 for each month that a Google Account Holder has maintained an account. (Regan Rep. ¶ 64.) Mr. Deal offers several criticisms of Plaintiffs' experts' methodology. He explains that (1)

---

[2] Mr. Regan concedes that Google products participating in the RTB auction are not at issue in this case and Dr. Zeithammer concedes that Google would continue to earn revenue from internal bidders if Google did not share alleged "personal information" with third parties in bid requests. (Regan Tr. at 72:11–19; Zeithammer Tr. at 85:12–87:2.)

[3] Plaintiffs do not challenge this opinion in their Motion.

Dr. Zeithammer fails to adopt "widely accepted standards for calculating the market value of an asset," (Deal Rep. ¶ 16), (2) Dr. Zeithammer's methodology is flawed because he fails to establish that the "benchmark" programs have comparable data, and (3) neither of Plaintiffs' experts accounts for the variation of the data transmitted in a bid request. (*Id*. ¶¶ 15–19, 74–93.)

**Uninjured Users.** In response to Mr. Regan's "proposed methods for calculating class-wide unjust enrichment and compensatory damages," Mr. Deal "evaluates Mr. Regan's assumption that all Proposed Class Members suffered harm." (*Id*. ¶ 5.) In rebuttal, he opines that Mr. Regan's model fails to properly account for the "many possible combinations of reasons why Proposed Class Members may be unharmed from an economic standpoint." (*Id*. ¶ 21.)

**Allocation.** Mr. Regan has proposed a method to allocate damages based on a rudimentary "member month" method that awards damages for each month during the Class Period in which a Google Account Holder maintained a Google Account, irrespective of any individual variation, such as the number of RTB bid requests associated with any putative class member in a given month. (Regan Rep. ¶¶ 56–57, 62–65.) In response, Mr. Deal opines that Mr. Regan's model is unreliable because: (1) "[n]ot all Proposed Class Members suffered economic harm in every month while they were account holders," (2) "[t]he amount and type of data that Google included in Bid Requests varies substantially," (3) "the amount of monthly revenue, if any, Google earned from each Proposed Class Member also varies." (Deal Rep. ¶ 22.)

### C. Mr. Deal Relied On A Vast Set Of Materials in Forming His Opinions.

In addition to relying on Dr. Zeithammer and Mr. Regan's reports, Mr. Deal relied on an extensive set of materials to form his opinions (Deal Rep. ¶ 7):

- The reports of Google's data expert, Dr. Aaron Striegel, and Google's survey expert, Dr. Dominique Hanssens. (Deal Rep. App. B at 1; *see also* ECF No. 584-3 (Dr. Striegel expert report); ECF No. 584-4 (Dr. Hanssens expert report)).[4]

- The deposition testimony of eight individuals, including the deposition testimony of Google engineers Dr. Glenn Berntson and Stanislov Belov. (Deal Rep. App. B at

---

[4] While expressly conceding that "[i]t is acceptable for a damages expert to rely on another expert's analysis behind her expertise," Plaintiffs mischaracterize Mr. Deal's testimony by claiming that he did not rely on Google's expert reports in forming his opinions. (*Contrast* Mot. at 3:20–22), *with e.g.*, Deal Tr. at 54:4-55:2 (stating he relied on Dr. Striegel's report to conclude that data fields in bid requests are not commonly shared); *id.* at 40:18-41:1 (stating he "completely" read Drs. Striegel's and Hanssens's reports); *see also* Deal Rep. App. B at 1.)

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

5

GOOGLE'S OPP. TO PLFS' *DAUBERT*
MOTION TO EXCLUDE B. DEAL
CASE NO. 4:21-CV-02155-YGR-VKD

1.)

- Factual declarations submitted by Dr. Berntson and Suneeti Vakharia in support of Google's Class Cert. Opposition and factual information provided by Mr. Belov during an August 16, 2023 interview, as disclosed.  (*Id.* ¶ 27 n.25; (ECF No. 592-1 (Dr. Berntson declaration); ECF No. 592-5 (Vakharia declaration).)

- Google revenue data and internal Google documents.  (*Id.* App. B. at 1.)

- Hundreds of academic articles and publicly available articles and sources, including Google's public financial statements.  (*Id.* App. B at 1–7).

While Plaintiffs mischaracterize Mr. Deal's review of the record as "extremely limited and biased," (Mot. at 4:18), Mr. Deal relied on more deposition transcripts, academic articles, and public articles to form his opinions than Plaintiffs' damages experts **combined**—even including their rebuttal reports spanning over 150 pages.[5]  By further way of comparison, Dr. Zeithammer could not specifically recall ever reviewing Google's revenue data and did not even know who Mr. Regan was.  (Zeithammer Tr. at 26:8-27:21.)  Plaintiffs further object that Mr. Deal did not rely on certain evidence they cite in their experts' Reply reports, specifically, the testimony of a Google employee, George Levitte, or the deposition testimony of one of Google's Rule 30(b)(6) deponents, Suneeti Vakharia, who was deposed *after* Mr. Deal submitted his report.  (Mot. at 4:17–5:5.)  These objections are based on little more than Plaintiffs' mischaracterizations of Mr. Levitte and Ms. Vakharia's deposition testimony and, in any event, are not a basis to exclude Mr. Deal's testimony, as explained below.[6]

---

[5] (*Contrast* Deal Rep. App. B at 1–7 (8 deposition transcripts, 6 books, 18 academic articles, and 148 public articles), *with* Regan Rep. App. B at 1–3 (citing 3 deposition transcripts and no academic or public articles), Regan Reb. Rep. App. C at 1–2 (citing 3 depositions that occurred after Mr. Deal's report was filed and no academic or public articles)), *and with* Zeithammer Rep. App. 3 at 44–47 (citing no deposition testimony and 32 total public articles and academic articles), Zeithammer Reb. Rep. at 85–86 (citing no deposition transcriptions and 15 total public article and academic articles).)

[6] Contrary to Plaintiffs' claims, Ms. Vakharia testified **extensively** about "what Google shares with third parties in RTB." (Mot. at 4:20–5:6, 9:14–16; *see also* ECF No. 628-3 at 158:8-21, 178-183, 255-273; ECF No. 628 at 5 (objecting to Plaintiffs' selective quotations of Ms. Vakharia's testimony on these and similar points under Rule 106).)  Ms. Vakharia also never testified that ███████████████████████████████████████████ (ECF No. 623-6 at 125:8-16.)  Ms. Vakharia was Google's 30(b)(6) witness on the topic of Google's disclosures and has no knowledge specific to RTB and disclaimed knowledge of revenue issues noting she was "quite junior at the time." *See, e.g.*, Reddy Decl. Ex. 5 ("Vakharia Tr.") at 48:23-49:1; 124:19-24; 132:14-22.  As for Mr. Levitte, Plaintiffs object that Mr. Deal did not consider his testimony, but they do not even try to show that

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

6

GOOGLE'S OPP. TO PLFS' *DAUBERT*
MOTION TO EXCLUDE B. DEAL
CASE NO. 4:21-CV-02155-YGR-VKD

1   **III.   LEGAL STANDARD**

2          Pursuant to Federal Rule of Evidence 702, a witness may qualify to provide expert

3   testimony "by knowledge, skill, experience, training, or education." Fed. R. Evid. 702.  A qualified

4   expert may provide testimony if (a) "the expert's scientific, technical or other specialized

5   knowledge will help the trier of fact to understand the evidence or to determine a fact in issue"; (b)

6   "the testimony is based on sufficient facts or data"; (c) "the testimony is the product of reliable

7   principles and methods"; and (d) "the expert's opinion reflects a reliable application of the

8   principles and methods to the facts of the case." *Id.*  Rebuttal testimony "is intended solely to

9   contradict or rebut evidence on the same subject matter identified by another party," and a rebuttal

10  expert need not put forth affirmative theories.  Fed. R. Civ. P. 26(a)(2)(D)(ii).  Damages experts

11  routinely rely on assumptions, findings, and conclusions related to fields beyond their expertise

12  where technical information bears on their damages analysis. *See, e.g.*, *Vaporstream, Inc. v. Snap,*

13  *Inc.*, 2020 WL 978731, at *9 (C.D. Cal. Feb. 28, 2020) (permitting damages expert's reliance on

14  Snap's technical expert; explaining that "[e]xperts routinely rely upon other experts hired by the

15  party they represent for expertise outside of their field").

16         At class certification, the district court conducts a "'tailored *Daubert* analysis which

17  scrutinizes the reliability of the expert testimony in light of the criteria for class certification and

18  the current state of the evidence.'"  *Brown v. Google, LLC*, 2022 WL 17961497, at *1 (N.D. Cal.

19  Dec. 12, 2022) (quoting *Rai v. Santa Clara Valley Transp. Auth.*, 308 F.R.D. 245, 264 (N.D. Cal.

20  2015)).  The proponent of the testimony must prove its admissibility. *Id.* at *1.

21  **IV.   ARGUMENT**

22         Plaintiffs seek exclusion of Mr. Deal's rebuttal opinions regarding: (1) Plaintiffs' experts'

23  unjust enrichment damages model; (2) Plaintiffs' experts' compensatory damages model; (3) Mr.

24  Regan's failure to propose a damages model that could account for uninjured users; and (4) Mr.

25  Regan's allocation methodology.  Stripped of its inflammatory rhetoric, Plaintiffs' Motion rests

26

27  anything in Mr. Levitte's testimony pertains to Mr. Deal's opinions, much less is inconsistent with
    them.  (Mot. at 4:21–25.)  The two-page snippet of his testimony that Plaintiffs cite, (Mot. at 5),
28  simply discusses a series of revenue dashboards with no apparent relevance to Mr. Deal's report.
    (*See* ECF No. 623-5.)

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

7

**GOOGLE'S OPP. TO PLFS' *DAUBERT***
**MOTION TO EXCLUDE B. DEAL**
**CASE NO. 4:21-CV-02155-YGR-VKD**

only on cursory arguments that are legally and factually baseless.  Plaintiffs have failed to establish that exclusion is warranted as to any of these opinions.

## A.   Mr. Deal Properly Identifies Serious Flaws with Plaintiffs' Unjust Enrichment Damages Model.

### 1.   Mr. Deal's Opinion that Plaintiffs' Damages Model Is Not Based on Revenue Data Derived from Putative Class Members is Entirely Proper.

Mr. Deal properly opines that Plaintiffs' unjust enrichment model is unreliable because it is based on Google RTB revenue derived from ***both*** Google Account Holders (members of the putative class) and non-Google Account Holders (who are not members of the putative class). (Deal Rep. ¶¶ 36–42.)  Mr. Regan wholly failed to consider this issue in his damages model and even admitted in deposition that he incorrectly assumed that the revenue data Google produced in discovery was limited to Google Account Holders.  (Regan Tr. at 100:15–20 ("Q: Did you assume that the phrase ███████ refers only to a Google account holder in Step 1 of your analysis?  A. Based upon the information presently available to me, that—that's the assumption I made.").)  Mr. Deal further opines that Mr. Regan: (1) failed to propose any method to reliably estimate Google RTB revenue associated with Google Account Holders, and (2) could not remedy these flaws with available data.  (Deal Rep. ¶ 38.)  That Plaintiffs' damages model is based on revenue Google earns from non-putative class members is a critical defect that precludes class certification because their model ***fails*** to "measure only those damages attributable to [their] theory" of liability.  *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013); Class Cert. Opp. at 20.

There is nothing improper about these opinions, which Plaintiffs mischaracterize as being focused on "Google's ability to track RTB revenue" rather than about the sufficiency of Mr. Regan's analysis. (Mot. at 13.)  Indeed, Mr. Regan's Reply Report confirms that Mr. Deal's criticisms are entirely valid.  Rather than propose a method to estimate the RTB revenue attributable to Google Account Holders, Mr. Regan merely attempts to shift Plaintiffs' burden back to Mr. Deal, ***a rebuttal expert***, with the bizarre assertion that Mr. Deal is "best positioned to provide data or insights to identify that portion of RTB revenue." (Regan Reb. Rep. ¶ 19.)  Not only is this statement mere attorney argument disguised as expert testimony, it also misperceives Mr. Deal's role: ***"There is no requirement that a rebuttal expert offer a competing damages analysis, for example; his***

Cooley LLP
Attorneys at Law
San Francisco

8

Google's Opp. to Plfs' *Daubert*
Motion to Exclude B. Deal
Case No. 4:21-cv-02155-YGR-VKD

1    ***opinions properly may be limited to criticizing the analysis and conclusions presented by another***

2    ***party."*** *Navelski v. Int'l Paper Co.*, 244 F. Supp. 3d 1275, 1302 (N.D. Fla. 2017) (emphasis added)

3    (collecting authorities); *see also Martinelli v. Johnson & Johnson*, 2019 WL 1429653, at *4 (E.D.

4    Cal. Mar. 29, 2019) (denying motion to exclude rebuttal testimony and noting that "[t]he function

5    of rebuttal testimony is to explain, repel, counteract or disprove evidence of the adverse party."

6    (citation omitted)).  Mr. Regan's speculation that Google may have the data he would need to

7    propose a reliable model does not rehabilitate the defective damages model on which Plaintiffs

8    have based their class certification motion.

9         Unable to remedy this issue through expert testimony, Plaintiffs instead ask the Court to

10   strike Mr. Deal's opinions as "spoon-fe[d]" "lawyer orchestrated facts."[7]  (Mot. at 13.)  This is

11   nonsense.  In support of their argument, Plaintiffs criticize Mr. Deal's reliance on a "secret"

12   interview with Stan Belov and deposition testimony from Glenn Berntson (both Google engineers).

13   *Id.* Each source establishes that the cookie that identifies a Google Account holder (the "GAIA

14   cookie") does not exist for different types of Google Account Holders and therefore Google does

15   not have a means of identifying what portion of ads displayed through Google RTB are shown to

16   Google Account Holders.  (*Id*; Deal Rep. at ¶ 41.)  None of Plaintiffs' objections has merit.

17        ***First***, as an initial matter, it is hardly novel or a "secret" that the GAIA cookie is missing

18   for some Account Holders.  This phenomenon is even described in publicly available documents

19   cited in Mr. Deal's report.  (Deal Rep. ¶ 41 n.47.)

20        ***Second***, while Plaintiffs extensively criticize Mr. Deal's reliance on his interview with Mr.

21

22

23   [7] This case is simply nothing like *Therasense, Inc. v. Becton, Dickinson & Co*., 2008 WL 2323856
     (N.D. Cal. May 22, 2008), where "[t]he entire foundational project was a secret clearly intended to

24   thwart discovery into the foundation" and "was sprung on all opponents only after the close of fact
     discovery."  *Id*. at *3.  There, the expert rendered an opinion "based in part on three experiments

25   that were conducted by Abbott employees"—experiments in which the expert "did not participate
     in, observe, or supervise."  *Id*.  Abbott did not "permit defendants to question one Abbott-employee

26   witness who did conduct and participate in the experiments, concealing all of the tests from
     discovery during all phases of discovery under a claim of privilege."  *Id*.  Here, Mr. Deal

27   *participated* in the interview with Mr. Belov, *disclosed* the interview in his report and the
     information on which relied, and plaintiffs deposed Mr. Deal regarding that interview—all well

28   before the close of fact discovery.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

9

GOOGLE'S OPP. TO PLFS' *DAUBERT*
MOTION TO EXCLUDE B. DEAL
CASE NO. 4:21-CV-02155-YGR-VKD

Belov, they fail to cite a single case showing that this reliance was improper.[8]  With good reason: It is black letter law that an expert may properly rely on hearsay in forming their opinions, and there is also ample case law establishing that an expert's reliance on information learned from employee interviews in rendering an opinion is proper.  *See Oracle Am., Inc. v. Google Inc.*, 2011 WL 5914033, at *1-2 (N.D. Cal. Nov. 28, 2011) (permitting damages experts' reliance on "interviews with Google's employees . . . for the technical points"); *Facebook, Inc. v. Power Ventures, Inc.*, 252 F. Supp. 3d 765, 780 (N.D. Cal. 2017) ("It is unquestionable that an expert forming an opinion about the salary and the hours worked by an employee would rely on statements by the employee in an interview."); *Medline Indus., Inc. v. C.R. Bard, Inc.*, 2021 WL 10373206, at *7 (N.D. Ill. Sept. 28, 2021) (explaining damages expert's reliance on interviews with company employees was proper under *Daubert* and Federal Rule of Evidence 703).

Further, even if these objections were otherwise valid, the Court should overrule them because Plaintiffs have not identified any prejudice from Mr. Deal's reliance on the interview. Plaintiffs have vastly overstated the importance of Mr. Deal's interview with Mr. Belov.  Mr. Deal cites his conversation with Mr. Belov just ***eight times***, almost all of these references include other citations to produced documents, and the interview is one of hundreds of citations in his entire 71-page report.  (Deal Rep. ¶¶ 27 n.25, 40 n.44, 41 n.47, 42 n.49, 47 nn. 57–58, 65 n.81, 66 n.82.)  And while they complain the interview was "secret," it was no such thing:  Mr. Deal ***disclosed*** it in his report and Plaintiffs examined Mr. Deal about it during his deposition.  (*See, e.g.*, Deal Tr. at 90:9-23, 92:8–104:3, 138:6–16, 140:7–141:3, 312:11–313:7.)  Plaintiffs also previously deposed Mr. Belov himself, who is a custodian in this action, and have now ***twice*** deposed Mr. Belov's predecessor, Dr. Glenn Berntson, including once after Google filed Mr. Deal's report and Plaintiffs had already deposed Mr. Deal.  (Declaration of Aarti G. Reddy ("Reddy Decl.") ¶¶ 3-4.)  While Plaintiffs elsewhere purport to criticize Mr. Belov's expertise on "auction pricing," (Mot. at 11:20), they have no basis to do so, given their own statement that he is "central to Google's RTB design

---

[8] Plaintiffs' objection to Mr. Deal's interview with Mr. Belov is also procedurally improper. Pursuant to Local Civil Rule 7-3(c), they were required to raise any objections to Google opposition evidence in the body of their reply.

Cooley LLP
Attorneys at Law
San Francisco                                                        10

Google's Opp. to Plfs' *Daubert*
Motion to Exclude B. Deal
Case No. 4:21-cv-02155-YGR-VKD

and operation." (ECF No. 463 at 1.)[9]  For all of these reasons, the Court should overrule Plaintiffs' objections to Mr. Deal's use of information from his interview with Mr. Belov.

*Third*, while Plaintiffs call Mr. Belov's interview "key" to Mr. Deal's assumptions regarding the absence of the GAIA cookie for certain Account Holders, Plaintiffs ***also examined Dr. Berntson about this issue in deposition and Mr. Deal relies on that testimony too***.  (Deal Rep. ¶ 41 n.46 (citing Reddy Decl. Ex. 2 at 165:3–24 ███████████████████████████████

████████████████████████████████████████████████████████████████████████████████

███████  To the extent Plaintiffs also criticize Mr. Deal's reliance on Mr. Berntson's deposition testimony, it is well established that a damages expert like Mr. Deal may properly rely on factual information provided by a technical employee who can testify as to those foundational facts.  *VIA Techs., Inc. v. ASUS Comput. Int'l*, 2017 WL 3051048, at *7 (N.D. Cal. July 19, 2017) (damages expert "entitled to rely on" "technical information and assumptions . . . received from Plaintiffs' engineers"); *Open Text S.A. v. Box, Inc.*, 2015 WL 393858, at *4, 7 (N.D. Cal. Jan. 29, 2015) (damages expert permitted to rely on deposition testimony from Box employee who "managed engineers . . . and worked on Box's products himself"); *Brown*, 2022 WL 17961497, at *2-8 (denying motion to exclude plaintiffs' damages expert who relied on deposition testimony, including by "Google personnel").  Indeed, Mr. Regan relies on similar evidence in his Reply report, interpreting Google documents and deposition testimony.  (Regan Reb. Rep. ¶ 21 (citing Dr. Berntson's testimony to state that Google keeps records of auction data in dashboards and logs).)

**2.    Mr. Deal's Assumptions Regarding the Applicability of Google's U.S. Terms of Service Are Entirely Proper.**

Mr. Deal properly opines that Mr. Regan fails to limit his damages model to revenue generated by Google Account Holders who agreed to a U.S. Google TOS—a limitation set forth in Plaintiffs' own class definition.  (ECF No. 546 at 8; Deal Rep. ¶¶ 43-47.)  Mr. Deal explains that a non-U.S. user could inaccurately appear to be in the United States if she is using a VPN.  (Deal

---

[9] Plaintiffs argue, in the guise of "Background Facts," that Mr. Belov's statements are contradicted by their expert and Google witnesses.  (Mot. at 11 nn.6-7).  This is false; regardless, disagreement with evidence on which Mr. Deal relies is not a basis for exclusion.  *Infra* Part IV.A. 2.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

11

GOOGLE'S OPP. TO PLFS' *DAUBERT*
MOTION TO EXCLUDE B. DEAL
CASE NO. 4:21-CV-02155-YGR-VKD

Rep. ¶ 45; Deal Tr. at 236:3–25.)  Mr. Deal further explains that Mr. Regan incorrectly assumes that all individuals identified as ███████ in a revenue spreadsheet produced by Google are subject to a U.S. TOS, and that he poses no methodology for excluding revenue from users who may inaccurately appear to be inside the United States.  (Deal Rep. ¶¶ 43, 45).  Plaintiffs seek to exclude that opinion by advancing a series of baseless criticisms: (1) Mr. Deal's opinion amounts to an improper legal conclusion regarding the applicability of the U.S. TOS, (2) Mr. Deal "improperly" relied on technical facts provided by Mr. Belov, (3) Mr. Belov's facts are wrong, and (4) Mr. Deal lacks expertise to opine on such matters.  (Mot. at 14:11–17:9.)  None of these criticisms withstands scrutiny.

*First*, contrary to Plaintiffs' assertions, Mr. Deal offers no legal conclusions.  (Mot. at 14:23–25.)  Mr. Deal renders an opinion based on assumptions from counsel concerning the applicability of Google's U.S. TOS.  (Deal Rep. ¶ 45; Deal Tr. at 236:11-18.)  Specifically, Mr. Deal assumes the U.S. TOS only applies to Google Account Holders in the United States.  (Deal Rep. ¶¶ 43, 45).  This is not a "legal opinion" or even a disputed fact.  Mr. Regan himself ***also*** assumes that ███████ are subject to a U.S. TOS.  (Regan Rep. ¶ 36, n. 61; Regan Dep. Tr. at 81:25–82:08, 104:13–25.)  Further, while Plaintiffs elsewhere criticize Mr. Deal's reliance on "assumptions" from counsel "because they are not fact witnesses," (Mot. at 6:15), they cite no authority to support this objection and their own experts repeatedly claim to have relied on assumptions from counsel.  (*E.g.*, Regan Reb. Rep. ¶ 13 (describing "understandings" of Google's discovery conduct).)  In fact, courts regularly permit experts to rely on facts or assumptions provided by counsel.  *See*, *e.g.*, *United States ex rel. Jordan v. Northrop Grumman Corp.*, 2003 WL 27366224, at *6 (C.D. Cal. Jan. 6, 2003) (permitting expert to use "assumptions provided by the Government's counsel" in her damages calculations); *Lugo v. Farmer's Pride Inc.*, 2011 WL 2550376, at *3 (E.D. Pa. June 23, 2011) ("Plaintiffs' challenge to [expert's] testimony on the ground that he relied on assumptions provided by Defendant and Defendant's counsel lacks merit.").

Further, Plaintiffs' cited authorities contradict, rather than support, their position that Mr. Deal's assumption regarding the applicability of Google's TOS is a legal conclusion.  For example,

Cooley LLP
Attorneys at Law
San Francisco

12

Google's Opp. to Plfs' *Daubert*
Motion to Exclude B. Deal
Case No. 4:21-cv-02155-YGR-VKD

in *Highfields*, the Court permitted Mr. Deal to render an opinion "based on the assumption of a legal duty" but not to directly opine on the ultimate issue—*i.e.*, whether Plaintiffs had such a duty. *Highfields Cap. I, LP v. SeaWorld Ent., Inc.*, 2022 WL 1037210, at *12 (S.D. Cal. Apr. 6, 2022);[10] *see also Villalpando v. Exel Direct Inc.*, 161 F. Supp. 3d 873, 895 (N.D. Cal. 2016) (permitting an expert to rely on a legal assumption). Here, Plaintiffs do not and could not claim that Mr. Deal opines on "ultimate legal issues," such as the enforceability of the TOS or the meaning of legal provisions. Rather, he only explains that, from a damages perspective, Mr. Regan's model fails to exclude revenue from individuals who are not members of the putative class—provided that the U.S. TOS only applies to Google Account Holders in the United States, as Mr. Deal and Mr. Regan both assume. (Deal Rep. ¶¶ 43, 45; Reddy Decl. Ex. 3 ("Regan Tr.") at 81:25–82:08, 104:13–25.)

**Second**, Plaintiffs attack Mr. Deal's reliance on information during an interview with Mr. Belov. As explained above, a damages expert like Mr. Deal may properly rely on factual information provided by a technical employee who can testify as to those foundational facts, and there is nothing improper about Mr. Deal's reliance on the interview. *See supra* Part IV.A.1.

**Third**, Mr. Deal's statements regarding the prevalence of VPN use—and Mr. Regan's failure to account for this phenomenon—are entirely proper. (*See* Deal Rep. ¶¶ 43-46.) "[E]xperts may express opinions based on information made known to them through means other than the expert's own percipient observation, including reports, studies, and literature," and that is exactly what Mr. Deal does. *San Francisco Baykeeper v. W. Bay Sanitary Dist.*, 791 F. Supp. 2d 719, 738 (N.D. Cal. 2011). His report cites literature from various sources, including an online security firm and a technology consulting company, about the use and prevalence of VPN systems. (*See* Deal Rep. ¶¶ 44–46 nn.54-56.) Plaintiffs mischaracterize these citations as freestanding "opinions" about VPNs that Mr. Deal is not qualified to render, but they are archetypical third-party sources on which an expert may rely. Indeed, Plaintiffs' own damages experts rely on similar sources.

---

[10] Plaintiffs' assertion that Mr. Deal's opinions were "struck" in *Highfields* for "veering into legal conclusions, (Mot. at 1:15–16), is vastly overstated. In that case, the Court denied almost the entirety of Plaintiffs' *Daubert* motion and merely: (1) granted the motion "to the extent Mr. Deal intends to offer evidence or testimony that Plaintiffs had a legal duty to mitigate," without concluding that he did so, and (2) excluded one statement in Mr. Deal's rebuttal report regarding whether Plaintiffs are treated as "one single entity"—an assertion that has no application here. *Highfields Cap. I, LP*, 2022 WL 1037210, at *12, *13.

Cooley LLP
Attorneys at Law
San Francisco

13

GOOGLE'S OPP. TO PLFS' *DAUBERT*
MOTION TO EXCLUDE B. DEAL
CASE NO. 4:21-CV-02155-YGR-VKD

(*See, e.g.*, Zeithammer Rep. ¶ 58 (drawing on information from "company that develops and implements online advertising software and strategies" for revenue opinions); Zeithammer Reb. Rep. n.7 (citing a digital marketing firm's findings about "remarketing" budgets).)  Likewise, Plaintiffs' assertion that Mr. Deal "has no expertise in estimating how many 'non-U.S. users inaccurately appear via IP address to be in the U.S.'" misses the point.  (Mot at 16:5–6.)  As a rebuttal expert, Mr. Deal need not perform such an analysis himself, and his opinion is simply that VPN usage likely presents a problem for which Mr. Regan offers no analysis, much less a solution. *Czuchaj v. Conair Corp.*, 2016 WL 4414673, at *5 (S.D. Cal. Aug. 19, 2016) (rebuttal expert "need not offer an ultimate opinion" about causation or "conduct his own testing"); *In re Aluminum Warehousing Antitrust Litig.*, 336 F.R.D. 5, 34 (S.D.N.Y. 2020) (rebuttal expert's "lack of an alternative model does not prevent him . . . from 'tear[ing] down'" other expert's damages model).[11]

**Fourth**, citing deposition testimony from a Google witness who unquestionably is "not a technical expert," (Vakharia Tr. at 27:22), Plaintiffs challenge Mr. Deal's assumptions as "simply wrong."  (Mot. at 15:25-16:4.)  Even if the Court were to credit this testimony, Plaintiffs' reliance on it is not a proper basis on which to seek exclusion of his opinion, and any such criticisms go to weight, rather than admissibility.  *See In re JUUL Labs, Inc., Mktg. Sales Pracs. & Prods. Liab. Litig.*, 609 F. Supp. 3d 942, 1022-23 (N.D. Cal. 2022) (denying *Daubert* motion because attacks on experts' opinions factual bases "goes to the weight to be given to [the expert's] opinions but is not a ground to exclude"); *Newport Corp. v. Lighthouse Photonics Inc.*, 2014 WL 1370749, at *1-2 (C.D. Cal. Apr. 8, 2014) (expert's reliance on document which was later revealed to be "inaccurate" did not warrant precluding expert's testimony "because such an error goes, at most, to weight and not admissibility").

### 3. Mr. Deal Properly Opines That Plaintiffs' Damages Model Does Not Exclude Users Who Voluntarily Shared Data.

Plaintiffs also seek to exclude Mr. Deal's opinion that Mr. Regan improperly fails to propose any method to exclude users who "opt-in" to allow sharing of their data.  (Mot. at 16:18–

---

[11] Although he is admittedly not a "technology expert," (Zeithammer Tr. at 124:4), he puts his own spin on Google documents and concludes that certain types of User Data can be combined to uniquely identify such users.  (Zeithammer Rep. ¶ 19.)

17:9; Deal Rep. ¶¶ 48-49.)  According to Plaintiffs, "what Mr. Deal is doing here is making a legal argument regarding consent."  (Mot. at 17:4–5.)  This specious argument is flawed for multiple reasons.

*First,* Plaintiffs ignore that Mr. Deal expressly states he is not offering a legal opinion, but merely posits that, "[f]rom ***an economic perspective***, if Proposed Class Members voluntarily shared their information, then they would not have suffered harm and should be excluded from Mr. Regan's model."  (Deal Rep. ¶ 48 (emphasis added).)  Plaintiffs' assertion that Mr. Deal "cites" no principle for his opinion, (Mot. at 16:23–24), ignores that Mr. Deal is allowed to rely on his "knowledge, skill, experience, training, or education" as an economist to form his opinion, just as Plaintiffs' experts do.[12]  Fed. R. Evid. 702; *see McBroom v. Ethicon, Inc.*, 2021 WL 2709292, at *3, 5-10, 15-17, 20 (D. Ariz. July 1, 2021) (denying motions to exclude multiple medical experts because their opinions were properly based on clinical experience).

*Second*, Plaintiffs misconstrue Mr. Deal's opinion.  He ***assumes*** there are individuals who voluntarily share information and ***opines*** that those individuals may not have suffered an injury from an economic perspective.  (Deal Rep. ¶ 48.)  He further posits that Mr. Regan's damages model is flawed because "[he] does not propose a method to identify and exclude Proposed Class Members who allowed data sharing" or their corresponding revenue.  (*Id.* ¶ 49.)  Google's expert in the *Brown* action made the same assumption and rendered a similar opinion.  *Brown*, 2022 WL 17961497, at *5.  Plaintiffs' damages expert in *Brown* assumed the contrary—*i.e.*, that portions of the class were *not* uninjured.  This Court denied Google's *Daubert* motion of Plaintiffs' expert, stating that "Google's disagreement with Lasinski's assumption is no reason to exclude his opinion" and that "any arguments that [an expert] based his opinions on an improper assumption goes to the weight, rather not the admissibility of the testimony."  *Id.* (citing *Perez v. Rash Curtis &Assocs.*, 2019 WL 1491694, at *3 (N.D. Cal. Apr. 4, 2019)).  As in *Brown*, Plaintiffs' objections here go to weight, rather than admissibility.  *Id.*

*Lastly*, Plaintiffs' own expert, who is admittedly "not a privacy expert," (Zeithammer Tr. at

---

[12] For example, Mr. Regan himself similarly relied on his "experience," without explanation, to identify a defendant's profit method as "an appropriate method" for damages.  (Regan Rep. ¶ 8.)

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

15

GOOGLE'S OPP. TO PLFS' *DAUBERT*
MOTION TO EXCLUDE B. DEAL
CASE NO. 4:21-CV-02155-YGR-VKD

104:17), makes a similar assumption—*i.e.*, that whether a user opts-out of a CCPA disclosure is a proxy for harm. Specifically, Dr. Zeithammer opines that he can quantify injury based on whether a user has opted in under the CCPA, stating that "[c]omparing revenues from users who opt out to those who do not is a measure of the effect of User Data on display advertising revenues." (Zeithammer Rep. ¶ 43.) Plaintiffs cannot simultaneously proffer an expert who relies on assumptions about consent, but then argue that Mr. Deal may not rely on contrary assumptions.[13] *See, e.g.*, *Oracle Am., Inc. v. Hewlett Packard Enter. Co.*, 2018 WL 6511146, at *4 (N.D. Cal. Dec. 11, 2018) (finding that the expert "is permitted to assume that customers would have made [certain] decisions*, just as Oracle's damages expert assumes the reverse*" (emphasis added)).

### 4. Mr. Deal's Opinions Regarding the Need to Assess Google's "Overall Profit" Are Reliable and Endorsed by Plaintiffs' Own Expert.

Mr. Deal opines that Plaintiffs' experts' unjust enrichment model is fundamentally flawed because each expert fails to analyze "how removing at-issue data . . . would impact Google's *overall* revenue." (Deal Rep. ¶ 12.) Specifically, each of Plaintiffs' damages experts did not account for revenue that Google would have recouped from other internal Google participants in RTB if the at-issue data had not been shared with third parties ▇▇▇▇▇▇▇▇ in the RTB ad auction. (*Id.*; *see also id.* ¶¶ 52-67; Regan Rep. ¶¶ 35–53 (no consideration of Google bidders in RTB auctions); Zeithammer Tr. at 85:12–87:2 (admitting same).) This defect is fatal to Plaintiffs' class certification motion because they have not shown that their 51.1% figure underlying the unjust enrichment damages model is tied to the alleged harm and actually measures the incremental revenue Google would have earned from sharing alleged "personal information" in RTB bid requests with third parties. Class Cert. Opp'n at 21; *Comcast*, 569 U.S. at 33. Remarkably, ***Plaintiffs' own expert agrees with Mr. Deal's opinion that their unjust enrichment model must analyze Google's overall revenue***. Specifically, Dr. Zeithammer states in his reply report that

---

[13] Plaintiffs' repeated citations to *Haynes ex rel. Haynes v. National Railroad Passenger Corp.*, 319 F. App'x 541 (9th Cir. 2009) get them nowhere. *Haynes* simply discusses the uncontroversial requirement that an expert must be qualified and reliable. *Id.* at 542-43 (quoting Fed. R. Evid. 702); *see id.* at 542 (affirming district court's exclusion of expert declaration on issues of "medical causation [and] foreseeability" of long-distance travel leading to certain medical condition where purported expert had "no expertise in medicine, public health, epidemiology," etc.). Of course, Google does not disagree.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

16

GOOGLE'S OPP. TO PLFS' *DAUBERT*
MOTION TO EXCLUDE B. DEAL
CASE NO. 4:21-CV-02155-YGR-VKD

1    "*Overall auction revenue* that accounts for all these strategic interactions is thus the only

2    economically meaningful revenue to consider for the purposes of my apportionment assignment."

3    (Zeithammer Reb. Rep. ¶ 44 (emphasis added); *see also id* ¶ 15 ("Because of the strategic interplay

4    among bidders in an auction, it is too simplistic and fundamentally incorrect to analyze revenue

5    arising from one type of bidder (e.g., ████████████)…."); *id.* ¶ 73 ("it only makes scientific sense

6    to consider the overall auction revenue, not revenue coming from particular sources").)

7        Plaintiffs now seek to manufacture a basis to exclude Mr. Deal's opinion, arguing that: (1)

8    he was apparently "unable to identify" a specific supporting citation during his deposition, and (2)

9    it is based in part on facts learned from his interview with Mr. Belov. (Mot. at 17:10-18:23.) These

10   objections are frivolous and the Court should reject them.

11       To begin, while Plaintiffs fault Mr. Deal because he purportedly could not recall a specific

12   citation to the Reference Manual on Scientific Evidence from memory during a deposition, that is

13   not a valid basis to exclude his opinion. *See In re EpiPen (Epinephrine Injection, USP) Mktg.,*

14   *Sales Pracs. & Antitrust Litig.*, 2021 WL 2577490, at *42 (D. Kan. June 23, 2021) (explaining

15   expert's "inability to remember [relevant facts] off the top of his head in" deposition is no reason

16   to exclude his opinion). In any case, Plaintiffs mischaracterize Mr. Deal's testimony. Their Motion

17   quotes testimony from early in the deposition, but omits later testimony when counsel presented

18   Mr. Deal with the Reference Manual, at which time he identified the relevant language and

19   explained how it supports his position.[14]

20       Further, Plaintiffs' argument that Mr. Deal "parrots" statements from Mr. Belov in

21   rendering his opinion is plain wrong. As explained above, Mr. Deal's reliance on an interview with

22   Mr. Belov was entirely proper. *See supra* Part IV.A.1. Mr. Deal is also not simply regurgitating

23   Mr. Belov's "opinions." He relies on Mr. Belov's understanding of bidding dynamics in RTB for

24   a discrete purpose—to form his own opinion regarding the ███████████████ that Dr.

25   Zeithammer uses in his meta-analysis. (Deal Rep. ¶¶ 65–67.) Specifically, based on Mr. Belov's

26

_____

[14] (Deal Tr. at 350:18-354:9 ("Because the but-for scenario differs from what actually happened
27   only with respect to the harmful act, damages measured in this way isolate the loss of value caused
by the harmful act and exclude any change in the plaintiff's value arising from other sources . . . I
28   think that's very consistent with my sentence here [a]nd that's . . . the proposition I'm citing it
for").)

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

17

GOOGLE'S OPP. TO PLFS' *DAUBERT*
MOTION TO EXCLUDE B. DEAL
CASE NO. 4:21-CV-02155-YGR-VKD

statements, Mr. Deal explains that these experiments do not accurately capture the overall revenue impact of removing alleged "personal information" from bid requests to ███████████. *Id.* Throughout this section of his report, Mr. Deal elaborates extensively on various sources of evidence supporting his overarching opinion that Plaintiffs' failure to analyze Google's overall revenue renders their damages model unreliable, including internal Google documents, █████ revenue data, publicly available documents and Plaintiffs' own expert's materials.  (*See id.* ¶¶ 55-66.)  For example, Mr. Deal analyzes ████████████ revenue data, which demonstrates that Google generates higher profits from Google demand side services versus ██████████—a proposition their own experts do not meaningfully contest.  (*Id.* ¶ 59.)  On this basis, he concludes that "it is clearly incorrect to determine unjust enrichment only by looking at the drop in revenue from ██████████...."  (Deal Rep. ¶ 67.)  These opinions are entirely proper and do not "parrot" other sources.

Finally, to the extent Plaintiffs contend that the "but for" world framework that Mr. Deal applies is incorrect, that is also not a valid basis for excluding his testimony.  *Apple iPod iTunes Antitrust Litig.*, 2014 WL 4809288, at *3 (N.D. Cal. Sept. 26, 2014) (Gonzalez Rogers, J.) (denying *Daubert* motions, including one challenge arguing that an expert "used the wrong 'but for' world to calculate damages" based on decision not to use certain variable); *In re Dealer Mgmt. Sys. Antitrust Litig.*, 581 F. Supp. 3d 1029, 1070 (N.D. Ill. 2022) (rejecting *Daubert* challenge as to damages expert: "it is up to the factfinder to decide which expert's 'but for' world is the more convincing one in consideration of the facts in the record"); *Innovation Ventures, LLC v. Custom Nutrition Labs., LLC*, 520 F. Supp. 3d 872, 884 (E.D. Mich. 2021) (rejecting defendant's *Daubert* challenge to plaintiff's expert who did not provide assumptions for his "but for" damages analysis).

### 5. Mr. Deal's Opinions on the Unreliability of Plaintiffs' Damages Models Are Proper.

Plaintiffs cherry-pick statements from Mr. Deal's expert reports in which he concludes that Plaintiffs' experts' unjust enrichment damages model is unreliable and seeks to exclude them as improper legal conclusions.  (Mot. at 18:25–20:09 (citing Deal Rep. ¶¶ 9, 38, 41, 52).)  Courts have consistently held, however, that a rebuttal expert may properly criticize the damages model

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

18

GOOGLE'S OPP. TO PLFS' *DAUBERT*
MOTION TO EXCLUDE B. DEAL
CASE NO. 4:21-CV-02155-YGR-VKD

1   advanced by a plaintiff seeking class certification, including for lack of reliability. *See McCrary v.*

2   *Elations Co. LLC*, 2014 WL 12589137, at *11 (C.D. Cal. Dec. 2, 2014) ("[B]ecause the class

3   certification process requires Plaintiff to 'establish[ ] that damages are capable of measurement on

4   a classwide basis,' . . . Mangum's criticisms of Sharp's damages models, and even his view that it

5   is impossible to calculate damages in this case, is relevant."); *Townsend v. Monster Beverage Corp.*,

6   303 F. Supp. 3d 1010, 1035 (C.D. Cal. 2018) (permitting rebuttal expert to critique "overall

7   reliability of [other side's] economic damages model").

8       Taken to its logical conclusion, Plaintiffs' argument would mean that any time an expert

9   opined on the same issue a Court considered, that opinion would be improper.  That is not the law;

10  if it were, Plaintiffs' own expert opinions should also be excluded.  For example, in his report, Mr.

11  Regan opined that "[t]he RTB Data . . . enables the relief sought by Plaintiffs to be readily quantified

12  on a class-wide basis."  (Regan Rep. ¶ 19 (referring to section III of the Regan report, *i.e.,*

13  "calculation of defendant's profits").)  It is entirely proper for Mr. Deal to rebut that opinion by

14  opining that "Plaintiffs' Experts have neither proposed a reliable class-wide methodology for

15  calculating unjust enrichment damages nor shown that unjust enrichment damages can be

16  calculated on a class-wide basis."  (Deal Rep. ¶ 9.)

17      Plaintiffs' Motion otherwise selectively quotes Mr. Deal's opinions and omits key context

18  which shows that his opinions are not mere legal conclusions, but are well-reasoned factual

19  opinions based on his careful analysis of Plaintiffs' experts' damages model.  Each of Mr. Deal's

20  opinions that Plaintiffs seek to exclude is as follows (with the language Plaintiffs omit from their

21  Motion italicized and underlined):

22  •   "*Because Mr. Regan does not propose any method to exclude revenue from these*
23      *non-Proposed Class Members, his* methodology cannot reliably estimate Google's
        alleged unjust enrichment on a class-wide basis."  (*Id*. ¶ 38.)

24  •   "*Because Google generates RTB revenue from* ███████████ *users with and*
25      *without Google accounts*, it is impossible to reliably determine whether particular
        ad revenue is attributable to an ad shown to *any of these groups of* users."  (*Id*. ¶
26      41.)[15]

27

28  ───────────────────
[15] Although Mr. Deal's statement refers to "individualized inquiry," (Deal Rep. ¶ 41), that reference
cannot warrant wholesale exclusion of the opinion.  The "focus[]" of Mr. Deal's opinion is *not* "on

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO
                                    19
GOOGLE'S OPP. TO PLFS' *DAUBERT*
MOTION TO EXCLUDE B. DEAL
CASE NO. 4:21-CV-02155-YGR-VKD

- "*Mr. Regan's attempt to estimate 'unjust revenue' attributable to the sharing of 'personal information' contains additional flaws and is unreliable. Specifically,* Mr. Regan's model does not reliably measure Google's unjust revenue" because "*Prof. Zeithammer's 51.1 Percent does not reliably measure the effect on Google's revenue of removing the at-issue data from Bid Requests*" and "*Mr. Regan has also failed to propose a methodology that appropriately applies the 51.1 Percent to measure the overall effect on Google's RTB revenue.*" (*Id.* ¶ 52 (emphasis omitted).)

Consistent with the proper role of a rebuttal expert, Mr. Deal relies on his expertise in economics and data analytics to offer such opinions. *McBroom*, 2021 WL 2709292, at *3, 5-10, 15-17, 20.

Notably, none of Plaintiffs' cited cases supports their novel objection that statements about "reliability" are legal conclusions. *See Nationwide Transp. Fin. v. Cass Info. Sys., Inc.*, 523 F.3d 1051, 1058-59 (9th Cir. 2008) (non-class certification decision upholding exclusion of legal conclusions, including "sections that discuss the parties' legal rights, duties, and obligations under the law" and "sections that discuss the appropriate formula to calculate damages under the law");[16] *Fitzhenry-Russell*, 2018 WL 10472794, at *3 (explaining that "Dr. Ugone's report contradicts the findings of Plaintiffs' experts using alternative methodology and different sets of evidence, which is squarely in the realm of rebuttal evidence" but excluding opinions about "individualized inquiry" as legal conclusions); *In re Rail Freight Fuel Surcharge Antitrust Litig.*, 292 F. Supp. 3d 14, 43 (D.D.C. 2017) (merely recognizing that courts must consider whether "there is a reliable means of proving damages on a classwide basis" (citation omitted)). Plaintiffs' reliance on stray remarks in *Highfields Capital* is misplaced, as explained above. (Mot. at 20:2–4; *supra* Part IV.A.2.) The reliability of Plaintiffs' damages model is not an ultimate legal issue, and his opinions here are proper "economic, analysis-driven conclusions." *Highfields Cap.*, 2022 WL 1037210, at *11–12.

**B.   Plaintiffs' Objections to Mr. Deal's Critique of Their Compensatory Damages Model Are Baseless.**

---

whether individualized inquiry is required to determine damages," *Fitzhenry-Russell*, 2018 WL 10472794, at *3 (N.D. Cal. Sept. 25, 2018), but rather whether Mr. Regan's model is reliable.

[16] Notably, Plaintiffs' authorities call into question the propriety of their own expert testimony. Like the opinions for which the Ninth Circuit affirmed exclusion in *Nationwide*, Mr. Regan offers numerous legal conclusions regarding the applicability of certain legal principles. (*E.g.*, Regan Rep. ¶ 8 ("Based on my experience and understanding, Google's unjust enrichment is an appropriate methodology in these circumstances" (citing Restatement of the Law, Restitution and Unjust Enrichment 3d)); Regan Reb. Rep. ¶ 35 (opining on the Ninth Circuit's model jury instructions).)

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

20

GOOGLE'S OPP. TO PLFS' *DAUBERT*
MOTION TO EXCLUDE B. DEAL
CASE NO. 4:21-CV-02155-YGR-VKD

The Court should also overrule Plaintiffs' objections to Mr. Deal's compensatory damages opinions. In his report, Mr. Deal explains that Dr. Zeithammer's market price analysis is unreliable for three independent reasons:[17]

    (1)    Dr. Zeithammer acknowledges that he did not follow accepted valuation standards in performing his analysis. (Zeithammer Tr. at 106:17-25; Deal Rep. ¶¶ 78-80);

    (2)    Dr. Zeithammer's market price estimate is unreliable because the programs he uses as a benchmark for RTB do not involve comparable data or transactions and the information about those programs is sparse and unreliable. (Deal Rep. ¶¶ 81-88);

    (3)    His model uses the same "market value" irrespective of the quantity and type of data shared. (Deal Rep. ¶¶ 91-93.)

Plaintiffs' Motion only attacks Mr. Deal's third opinion. Specifically, Plaintiffs contend that he lacks expertise to opine on "how much the data fields shared in Google RTB vary across auctions…." (Mot. at 20:17–20.) Once again, Plaintiffs mischaracterize Mr. Deal's opinions. Mr. Deal does not opine on the variance in bid requests, but describes his understanding of this topic based on his review of other evidence, including the expert report of Google's technical expert Dr. Striegel and the deposition testimony and declaration of Dr. Glenn Berntson. (Deal Rep. ¶¶ 32, 91-92; *id.* ¶ 33 (explaining Mr. Deal's "understanding" regarding variance in bid requests and referring to Dr. Berntson's declaration and Dr. Striegel's report); Deal Tr. at 41:14-43:7.) He relies on this assumption to opine that Plaintiffs' Experts' market value model does not "suffice to estimate damages because it does not account for the fact that Google Account holders did not always have all possible components of the at-issue data shared…." (Deal Rep. ¶ 92.) Mr. Deal's reliance on expert testimony for assumptions that form the basis of his opinions is entirely permissible—particularly since Plaintiffs do not challenge the reliability of Dr. Striegel's opinion on this subject. *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Pracs., & Prods. Liab. Litig.*, 978 F. Supp. 2d 1053, 1066 (C.D. Cal. 2013) (explaining that particularly in technical

---

[17] Even if the Court were to credit Plaintiffs objections, they are not a basis to exclude Mr. Deal's entire compensatory damages opinion because Plaintiffs have not challenged any of the other flaws that Mr. Deal identifies in his report. (Deal Rep. ¶¶ 78-93.)

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

21

GOOGLE'S OPP. TO PLFS' *DAUBERT*
MOTION TO EXCLUDE B. DEAL
CASE NO. 4:21-CV-02155-YGR-VKD

1   fields, it is common for one expert's opinion to be "bas[ed] in part 'on what a different expert

2   believes on the basis of expert knowledge not possessed by the first expert'" (citation omitted)).

3       Notably, **_this is exactly what one of Plaintiffs' damages experts does._**  Relying on

4   Plaintiffs' expert reports, Dr. Zeithammer assumes that data fields in bid requests are commonly

5   shared.  (Zeithammer Rep. ¶ 11 ("Given the fact that User Data is commonly shared in bid requests,

6   I analyze the impact of this User Data sharing on Google RTB revenues"); Zeithammer  Tr. at

7   37:7-9 ("It is my understanding based on other expert reports in this case that something like 60

8   fields is commonly shared in the bid requests"); _id._ at 39:15-40:3 (same).)   Plaintiffs cannot

9   simultaneously contend that Dr. Zeithammer may assume that data shared in bid requests is

10  common and seek to preclude Mr. Deal's rebuttal opinion because he relies on a contrary

11  assumption. And, to the extent Plaintiffs disagree with Mr. Deal's assumptions, "opinions on an

12  improper assumption go to the weight, **_not_** the admissibility of his testimony."  _Perez_, 2019 WL

13  1491694, at *3 (Gonzalez Rogers, J.) (emphasis added).

14      **C.      The Court Should Overrule Plaintiffs' Objections to Mr. Deal's Opinions
15               Regarding Unharmed Class Members.**

16      Plaintiffs next attack Mr. Deal's opinion as to unharmed class members.   Plaintiffs

17  selectively quote statements from Mr. Deal's report, but misconstrue the substance of his opinion,

18  which is to criticize Mr. Regan's failure to either consider or propose any method to exclude

19  potentially unharmed Google Account holders from his damages model.  Specifically, Mr. Deal

20  opines as follows:

21      •   "Mr. Regan assumes that all Proposed Class members have been harmed by
           the disputed conduct" and "[t]he existence of multiple paths that would lead
22         to unharmed Proposed Class Members and Mr. Regan's failure to propose a
           common methodology for calculating damages for _only_ harmed Proposed
23         Class Members render his proposed methodologies flawed and unreliable."
24         (Deal Rep. ¶¶ 95, 98 (emphasis in original).)

25      •    "In economic terms, lack of action to protect data privacy or investigate how
           to do so upon learning of data sharing in Bid Requests may reveal that
26         Proposed Class Members either (1) do not care about the data that is being
           shared, or (2) even if they do care, the benefits they obtain from the sharing
27         exceed the costs of sharing."  (_Id._ ¶ 101.)

28

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

22

**GOOGLE'S OPP. TO PLFS' _DAUBERT_
MOTION TO EXCLUDE B. DEAL
CASE NO. 4:21-CV-02155-YGR-VKD**

- "From an economic perspective, when calculating how much to award Proposed Class Members for the value of the at-issue data shared in Bid Requests, damages should be offset by any benefits they receive from the sharing of at-issue data." (*Id.* ¶ 117.)

Plaintiffs instead focus on additional facts and assumptions in Mr. Deal's report in which he elaborates on this opinion and discusses the various ways in which class members may have been unharmed. (Mot at 21:6-22:6.) Plaintiffs object that Mr. Deal: (1) improperly assumes that Google publicly disclosed the information disclosed in bid requests; and (2) lacks the requisite expertise in privacy and consumer preferences. (*Id*.) Neither of these arguments has merit.

**First**, Plaintiffs attack Mr. Deal's assumption that Google disclosed information in bid requests as "completely wrong." (Mot. at 22:17–21 (citing Deal Rep. ¶ 110).) But this statement is not an opinion; it is an assumption on which Mr. Deal is entitled to rely to inform his opinions regarding uninjured users. (Deal Rep. ¶ 110 (stating his "understand[ing]" that Google made additional disclosures about the information included in Bid Requests") Plaintiffs' disagreement with this assumption goes to weight rather than admissibility. *Perez*, 2019 WL 1491694, at *3.

**Second**, Plaintiffs are wrong that Mr. Deal is not qualified to render this rebuttal. Plaintiffs argue that Mr. Deal is not an expert on privacy and consent, but that argument misperceives his opinion: Mr. Deal does not opine on either of these subjects, but criticizes Mr. Regan's failure to either consider that some users may be uninjured or propose a method to exclude such users from his damages model. While Plaintiffs criticize Mr. Deal's observations that users may be uninjured for various reasons, as a damages expert, Mr. Deal is entitled to rely on facts and assumptions that relate to his overall economic criticisms of Mr. Regan's methodology. In *Space Data*, for example, the plaintiff argued that Google's expert lacked foundation to offer opinions on "what is and is not an improper trade secret or confidential information misuse." *Space Data Corp. v. Alphabet Inc*., 2019 WL 2603285, at *4 (N.D. Cal. June 25, 2019). Google explained that the plaintiff "misconstrue[d] the substance of [the] opinions" which were focused on the value of the asserted trade secrets, rather than their misuse. *Id*. at *4. The Court permitted these opinions, explaining that the expert could opine on "trade secret misuse . . .at a high level" as those opinions related to trade secret value, and he could "build in and discuss the assumptions on which he relies." *Id*.

The same reasoning applies here.  As in *Space Data*, Plaintiffs misconstrue the substance of Mr. Deal's opinion which relate to a core economic issue in the case: Mr. Regan's failure to propose a method to exclude users who may be unharmed from his damages model.  Mr. Deal discloses the facts and assumptions on which he relies and should be permitted to testify about the different ways in which putative class members may be unharmed, since these opinions draw on economic principles and relate directly to Plaintiffs' damages models.  Indeed, another damages expert recently opined on similar matters in the *Brown* action and this Court considered such testimony.[18]  The Court should therefore decline to exclude Mr. Deal's testimony on this subject and any criticisms that Plaintiffs have on this matter go to weight rather than admissibility.

### D.  Plaintiffs' Objections to Mr. Deal's Opinions Regarding Allocation Are Meritless.

Plaintiffs object to Mr. Deal's opinion that "Mr. Regan's "member-month" allocation methodology "would cause some Proposed Class Members to be substantially overcompensated and some to be undercompensated," because "[n]ot all Proposed Class Members suffered economic harm in every month while they were account holders."  (Deal Rep. ¶ 22; Deal Rep. ¶¶ 139-143.)  Plaintiffs lack a sound legal basis to object, and instead lodge baseless attacks on assumptions and opinions with which they simply disagree.  (Mot. at 22:7–23:5.)

*First*, contrary to Plaintiffs' claim, Mr. Deal does not need to be "an expert in the Google RTB auction" to observe that Plaintiffs' expert's allocation model fails to account for variance in the data fields shared in bid requests.  (Mot. at 22:14–15.)  As explained above, Mr. Deal relies on other expert testimony regarding variance in bid requests, just as Plaintiffs' experts do.  (*See supra* Part IV.B; Deal Rep. ¶ 140 ("Dr. Striegel's report details the myriad factors that affect how the data sent to third parties in Bid Requests varies for each Proposed Class Member").)  Nor is Mr. Deal required to perform his own testing or analysis to confirm that assumption, as Plaintiffs improperly contend.  (Mot. at 22:20–21; *see also supra* Part IV.A.1); *Teradata Corp. v. SAP SE*, 570 F. Supp. 3d 810, 833 (N.D. Cal. Nov. 8, 2021) (explaining rebuttal expert need not perform independent

---

[18] *See, e.g.*, *Brown v. Google, LLC*, No. 4:20-cv-03664-YGR, ECF No. 666-23, Expert Report of Bruce A. Strombom (Redacted), ¶¶ 2, 29-54, 104-119, 177-194 (N.D. Cal. Aug. 5, 2022); *Calhoun v. Google LLC*, No. 4:20-cv-05146-YGR, ECF No. 430-1, Expert Report of Bruce A. Strombom (Redacted), ¶¶ 13-14, 55-88, 91, 100-101, 137 (N.D. Cal Dec. 22, 2021).

investigation into issues addressed by another expert and may rely on other expert's report).

**Second**, to the extent Plaintiffs object to Mr. Deal's interpretation of the winning bid request data cited in Figures 4 and 5 of Mr. Deal's report, that information ties directly to damages issues, is based on discovery responses that Plaintiffs' own damages expert relied on and is well within the scope of his expertise.   (Deal Rep. ¶¶ 140-143; Regan Rep. App. B (citing Fourth Set of Interrogatories).)   It is well-settled that a damages expert is allowed to opine on the economic aspects of technical information and may rely on such information to render their opinion.   *See Whitewater W. Indus., Ltd. v. Pac. Surf Designs, Inc.*, 2019 WL 2211897, at *9 (S.D. Cal. May 22, 2019) (permitting damages expert to "opine[ ] as to the economic aspects of th[e] proposed design around" a patent, despite his lacking technical expertise); *VIA Tech.*, 2017 WL 3051048, at *7.

**Third**, Plaintiffs also challenge Mr. Deal's "***understand[ing]*** that the data required to do a complete accounting of data fields that were shared in Bid Requests during the Class Period does not exist." (Mot. at 22:16–19; Deal Rep. ¶ 92 n.136 (emphasis added).)   Plaintiffs once again object that this assumption was based on discussions with counsel. They cite no authority supporting their objection to Mr. Deal's reliance on an assumption from counsel, and ample case law demonstrates that such reliance is proper.  Mot. at 22; *see also Jordan*, 2003 WL 27366224, at *6; *Lugo v. Farmer's Pride Inc.*, 2011 WL 2550376, at *3.

**Lastly**, Mr. Deal's opinion criticizing the "reliability" of Mr. Regan's allocation method is proper and is not a legal conclusion, as discussed above.  *See supra* Part IV.A.5.  Plaintiffs' lone authority is not to the contrary; it did not concern class certification, damages, or expert testimony criticizing another expert's opinion. *Aguilar v. Int'l Longshoremen's Union Local No. 10*, 966 F.2d 443, 447 (9th Cir. 1992).  Instead, that case merely affirmed the exclusion of expert testimony on "matters of law," (there, whether a party reasonably and foreseeably relied on certain representations in connection with a promissory estoppel claim).  The case has no conceivable application or relevance here.

## V.   CONCLUSION

For the foregoing reasons, Google respectfully requests that Plaintiffs' Motion to exclude Bruce Deal's testimony be denied in its entirety.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

25

GOOGLE'S OPP. TO PLFS' *DAUBERT*
MOTION TO EXCLUDE B. DEAL
CASE NO. 4:21-CV-02155-YGR-VKD

1    Dated: December 13, 2023                    COOLEY LLP

2

3                                                By: /s/ Aarti Reddy

4                                                    Aarti Reddy

5                                                Attorney for Defendant
                                                 GOOGLE LLC
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

26

GOOGLE'S OPP. TO PLFS' *DAUBERT*
MOTION TO EXCLUDE B. DEAL
CASE NO. 4:21-CV-02155-YGR-VKD