Lesley E. Weaver (SBN 191305)
H. Melissa Mather (admitted *pro hac vice*)
Anne K. Davis (SBN 267909)
Joshua D. Samra (SBN 313050)
**BLEICHMAR FONTI & AULD LLP**
1330 Broadway, Suite 630
Oakland, CA 94612
Tel.: (415) 445-4003
Fax: (415) 445-4020
*lweaver@bfalaw.com*
*mmather@bfalaw.com*
*adavis@bfalaw.com*
*jsamra@bfalaw.com*

*Counsel for Plaintiffs and the Proposed Class*

*[Additional Counsel Appear on Signature Page]*

# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### OAKLAND DIVISION

| | |
|---|---|
| In re Google RTB Consumer Privacy Litigation, | Case No. 4:21-cv-02155-YGR-VKD |
| This document applies to: *all actions.* | **PLAINTIFFS' REPLY IN SUPPORT OF *DAUBERT* MOTION TO EXCLUDE GOOGLE LLC'S EXPERT BRUCE DEAL** |
| | Judge:     Hon. Yvonne Gonzalez Rogers |
| | Date:      TBD |
| | Time:      TBD |
| | Courtroom: 1, Fourth Floor |

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.    INTRODUCTION ...........................................................................................................1

II.   ARGUMENT ...............................................................................................................2

    A.    Unjust Enrichment Testimony (Deal Rpt., ¶¶ 9–14, 35, 37–67)..............................2

        1.    Google does not establish the admissibility of Mr. Deal's opinions on what revenue data Google has available. ....................................2

        2.    Mr. Deal's testimony regarding applicability of U.S. TOS. is inadmissible......................................................................................5

        3.    Mr. Deal's testimony regarding VPN usage is inadmissible. .....................6

        4.    Mr. Deal's testimony regarding voluntary sharing of data is inadmissible......................................................................................8

        5.    Mr. Deal's testimony regarding overall profits is inadmissible. ................9

        6.    Legal conclusions masked as unqualified expert opinions are inadmissible....................................................................................10

    B.    Compensatory Damages Testimony (Deal Rpt., ¶¶ 15, 17, 19–20, 91–93)............11

    C.    Unharmed Class Member Testimony (Deal Rpt., ¶¶ 21, 94–135) ..........................12

    D.    Allocation Testimony (Deal Rpt., ¶¶ 22, 136–137, 142) ........................................14

IV.   CONCLUSION .............................................................................................................15

1

# **TABLE OF AUTHORITIES**

2

**Page(s)**

C̲ASES̲

3

*In re Avandia Mktg., Sales Pracs. and Prod. Liab. Litig.*,
    484 F. Supp. 3d 249 (E.D. Pa. 2020) ................................................................. 6

4

*In re Bard IVC Filters Prods. Liab. Litig.*,
    2017 WL 11696720 (D. Ariz. Dec. 22, 2017)....................................................... 2

5

*Block v. General Motors, Inc.*,
    2023 WL 8651376 (E.D. Pa. Dec. 14, 2023) ....................................................... 2

6

7

*Brown v. Google*,
    2022 WL 17961497 (N.D. Cal. Dec. 12, 2022) ...........................................*passim*

8

*Daubert v. Merrell Dow Pharm., Inc.*,
    509 U.S. 579 (1993) ................................................................................... 1, 2, 3

9

10

*Fitzhenry-Russell v. Keurig Dr. Pepper Inc.*,
    2018 WL 10472794 (N.D. Cal. Sept. 25, 2018) ................................................. 11

11

*Highfields Capital I, LP v. SeaWorld Entertainment, Inc.*,
    2022 WL 1037210 (S.D. Cal. Apr. 6, 2022) ................................................ 6, 11

12

13

*M.H. v. County of Alameda*,
    2015 WL 54400 (N.D. Cal. Jan. 2, 2015) ......................................................... 11

14

*McCrary v. Elations Co. LLC*,
    2014 WL 12589137 (C.D. Cal. Dec. 2, 2014) ................................................... 10

15

16

*Perez v. Rash Curtis & Assoc.*,
    2019 WL 1491694 (N.D. Cal. Apr. 4, 2019) ..................................................... 13

17

*Rapp v. NaphCare Inc.*,
    2023 WL 5844724 (W.D. Wash. Sept. 11, 2023) ............................................... 2

18

19

*S.E.C. v. Tourre*,
    950 F. Supp. 2d 666 (S.D.N.Y. 2013) .............................................................. 10

20

*Sardis v. Overhead Door Corp.*,
    10 F.4th 268 (4th Cir. 2021)............................................................................... 7

21

22

*Sitts v. Dairy Farmers of Am., Inc.*,
    2020 WL 3467993 (D. Vt. June 24, 2020) ....................................................... 10

23

*Song fi, Inc. v. Google Inc.*,
    72 F. Supp. 3d 53 (D.D.C. 2014) ....................................................................... 5

24

25

*SourceOne Dental, Inc. v. Patterson Cos. Inc.*,
    2018 WL 2172667 (E.D.N.Y. May 10, 2018) ................................................... 10

26

*Space Data Corp. v. Alphabet, Inc.*,
    2019 WL 2603285 (N.D. Cal. Jun. 25, 2019) ....................................... 12, 13, 14

27

28

*Therasense, Inc. v. Becton, Dickinson & Co.*,
    2008 WL 2323856 (N.D. Cal. May 22, 2008) ............................................................ 1, 3, 5

*Townsend v. Monster Beverage Corp.*,
    303 F. Supp. 3d 1010 (C.D. Cal. 2018) ................................................................ 10

*Woods v. City of Hayward*,
    2021 WL 4061657 (N.D. Cal. Sep. 7, 2021) ................................................................ 10

**RULES**

Fed. R. Evid. 702 ............................................................................................................ *passim*

# I.      INTRODUCTION

Plaintiffs move to strike the testimony of Bruce Deal for three reasons: (1) he asserts opinions that are plainly outside his expertise, which he admits; (2) the "facts" he relies on amount to speculation unsupported by record evidence, are not reliable or are directly contradicted by evidence, making the opinions resting on them unreliable; and (3) for key points he merely parrots undocumented, untested off-the-record assertions from a Google employee, Stan Belov, who (a) offered no corresponding declaration; (b) was not deposed on these topics, and (c) in deposition almost a year before Mr. Deal submitted his report, claimed to have "no expertise" on these topics. Mather Decl. Ex. 1 ("Belov Dep. Tr.") at 19:19–20:4; 29:20–24; 30:19–24.

Plaintiffs demonstrate in their opening brief (ECF No. 623-3) the numerous ways in which Mr. Deal's opposition class certification testimony fails the basic test of Fed. R. Evid. 702:  that it "both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993) ("*Daubert*").

Google's response relies heavily on two general propositions, both of which have been clarified by recent amendments to Rule 702, effective as of December 1, 2023. First, Google cites the general proposition that experts may rely on information obtained from others in forming their opinions. ECF No. 633-2 at pp. 1, 7, 10–13, 23, 25. Second, Google asserts that an expert's reliability often goes to weight, not admissibility. *Id.* at pp. 14–15, 23–24. In an effort to shoehorn Mr. Deal's opinions into that framework, Google recasts Mr. Deal's stated opinions as mere assumptions, and normalizes the use of his report as a way to put otherwise inadmissible, unreliable testimony before the Court. *Id.* at pp. 2, 11, 12, 15, 21, 22, 23.

Neither assertion meets Rule 702's basic requirements. A court, adhering to its gatekeeping function under *Daubert*, should find that expert opinion arising from "an untested and partisan foundation"—such as Mr. Deal adopting assertions made by Google's Mr. Belov in an unrecorded, untested, secret "off-the-record" interview—is not based on "sufficient facts and data within the meaning of Rule 702." *Therasense, Inc. v. Becton, Dickinson & Co.*, 2008 WL 2323856, at *2 (N.D. Cal. May 22, 2008) (criticizing party's maneuver to "pass off client-prepared litigation-driven 'tests' as fact by having the 'expert' bless them" and excluding the proffered expert opinion accordingly);

*see also Rapp v. NaphCare Inc.*, 2023 WL 5844724, at *8 (W.D. Wash. Sept. 11, 2023) (quoting *In re Bard IVC Filters Prods. Liab. Litig.*, 2017 WL 11696720, at *3 (D. Ariz. Dec. 22, 2017) ("experts will not be permitted…to gratuitously comment on factual evidence or present what are essentially lawyer arguments with regard to factual testimony.").

Merely arguing, as Google does in its opposition, that plaintiffs have not put forward sufficient arguments that Mr. Deal's opinions are unreliable is insufficient to save Mr. Deal's opinions. Google's fails to meet its burden to establish the admissibility of Mr. Deal's testimony under *Daubert* and Rule 702, and those portions of his report identified in Plaintiffs' proposed order should be excluded.

## II.      ARGUMENT

### A.      Unjust Enrichment Testimony (Deal Rpt., ¶¶ 9–14, 35, 37–67)

1.   Google does not establish the admissibility of Mr. Deal's opinions on what revenue data Google has available.

Mr. Deal asserts the following opinions as to the damages model provided by plaintiffs' expert, Greg Regan: (1) Mr. Regan "failed to propose any method to reliably estimate Google RTB revenue associated with Google Account Holders"; and (2) Mr. Regan "could not remedy these flaws with available data." *See* ECF No. 633-2 at p. 8.

In support of the first opinion, Google offers only criticism of Mr. Greg Regan's rebuttal report, rather than demonstrating that Mr. Deal's testimony is more likely than not admissible. *See Block v. General Motors, Inc.*, 2023 WL 8651376, at *5 & n.13 (E.D. Pa. Dec. 14, 2023) (noting that one of the purposes of Rule 702, as amended December 1, 2023, is to "clarify and emphasize that expert testimony may not be admitted unless the proponent demonstrates to the court that it is more likely than not that the proffered testimony meets the admissibility requirements set forth in the rule"). Google argues only that "Mr. Regan's Reply Report confirms that Mr. Deal's criticisms are entirely valid," because Mr. Regan, in rebuttal, does not "propose a method to estimate the RTB revenue attributable to Google Account Holders," and Mr. Deal is only holding himself out as a rebuttal expert. ECF No. 633-2 at pp. 8–9. But merely criticizing Mr. Regan's rebuttal report does not meet

1    Google's burden as to the admissibility of Mr. Deal's testimony. Google must instead show that Mr.

2    Deal's expert testimony is reliable under *Daubert* and Rule 702 – precisely what Google fails to do.

3          With respect to the second opinion, Google argues that both Mr. Deal's off-the-record

4    interview with Mr. Belov and the deposition testimony of Dr. Glenn Berntson "establish[] that the

5    cookie that identifies a Google Account holder (the 'GAIA cookie') does not exist for different types

6    of Google Account Holders and therefore Google does not have a means of identifying what portion

7    of ads displayed through Google RTB are shown to Google Account Holders." ECF No. 633-2 at p.

8    9. But in support of this assertion, Google cherry-picks only four lines of deposition testimony.

9    Testifying, in response to a question about whether RTB traffic can be identified as "associated with

10   a Google user," not about Google's financial reporting, Dr. Berntson said that "██████████████

11   ████████████████████████████████████████████████████████████████████

12   ████████████████████████" Mather Decl. Ex. 2 ("Berntson 12/8/22 Dep. Tr.") at 165:3–25 (as

13   corrected). These four lines of testimony do not provide a sufficient basis for Mr. Deal or anyone else

14   to opine that "it is impossible to reliably determine whether particular ad revenue is attributable to an

15   ad shown to any of these groups of users [meaning Google account holders signed out, Google

16   account holders signed in, or users with no Google account]." Deal Rpt., ¶ 41. *See Brown v. Google*,

17   2022 WL 17961497, at *8–9 (N.D. Cal. Dec. 12, 2022) (excluding proffered expert testimony as "not

18   sufficiently reliable" because conclusions were based on speculation from sources that did not

19   establish the points relied on).

20          Pivoting to the secret interview with Mr. Belov, Google argues that plaintiffs "fail to cite a

21   single case showing that this reliance was improper,"[1] and that "[i]t is black letter law that an expert

22   may properly rely on hearsay in forming their opinions." ECF No. 633-2 at p. 10. But if citing such

23   platitudes were sufficient to establish admissibility, there would be no gatekeeping function to Rule

24

25   ───────────────────

     [1] Google's assertion that Plaintiffs cited "no case law" in support of their objections to Google's use
26   of a secret interview with a company insider is odd, in light of Plaintiffs' repeated reliance on
     *Therasense*, 2008 WL 2323856, at *2, for this point, and Google's half-hearted effort, in a footnote,
27   to distinguish this important case and the guidance it provides on the issue. *Compare* plaintiffs'
     opening brief, ECF No. 623-3, at pp. 3, 13–14, with Google's opposition brief, ECF No. 633-2, at p.
28   9 & n.7.

702 at all. The point here is not that Mr. Deal is relying on information from other **experts** (which he demonstrably is not when he points only to Mr. Belov), but that his use of a secret, unrecorded interview with Mr. Belov as a source of factual information has all the indicia of being biased, speculative, and unreliable. ECF No. 623-3 at pp. 10–11, 13, 15. In response to that issue, Google offers nothing affirmatively to this Court as a basis to find that Mr. Deal's reliance on his off-the-record interview with Mr. Belov is "sufficient", "reliable", or even passably reasonable as a source.

The only slight feint in that direction is Google's citation to a joint letter brief on the status of discovery (ECF 463 at 1) in which plaintiffs, seeking additional discovery from Mr. Belov, describe him as "central to Google's RTB design and operation." ECF No. 633-2 at pp. 10–11. And while that would be wanting enough as far as an affirmative showing of admissibility, Google then goes even further, asserting that plaintiffs' objections to admissibility should be overruled because "Plaintiffs have not identified any prejudice from Mr. Deal's reliance on the interview." *Id.* at p. 10. It should go without saying that lack of prejudice is not a valid legal basis to admit an otherwise unreliable opinion under Rule 702, and judicially imposing such a requirement would fly in the face of Rule 702's text and recent history. *See* Fed. R. Evid. 702 (requiring that the proponent of expert testimony "demonstrate[] to the court that [the testimony] is more likely than not" admissible).

Nor does Google make any effort to demonstrate the admissibility of Mr. Deal's direct assertion that Google does not " ███████████████████████████████████████████ ███████████████" Deal Rpt., ¶ 42. Instead, Google argues that Plaintiffs err by focusing on "Google's ability to track RTB revenue" instead of "the sufficiency of Mr. Regan's analysis." ECF No. 633-2 at p. 8. But there is no dispute that Mr. Deal is opining that in fact there is no "available data" that Mr. Regan could use to "remedy these flaws." *Id.* This is not an assumption that Mr. Deal makes in forming his opinion about Mr. Regan's damage calculations; it is the opinion. *See* Deal Rpt., ¶ 38 ("Mr. Regan cannot remedy these flaws with available data."); ¶ 41 ("[I]t does not appear possible to reliably estimate, absent some type of individualized inquiry, the proportion of Google RTB revenue generated from Google account holders to exclude the revenue from ads shown to non-Google account holders."); ¶ 42 ("I understand that Google does not separately track RTB revenue from ads shown to users with and without Google accounts."). And Mr. Deal was candid in his

4

deposition that the basis of this assertion was Mr. Belov (Mather Decl. Ex. 3 ("Deal Dep. Tr.") at 100:20–101:16), who, it is apparent from previous testimony, is a Google engineer not tasked with tracking or reporting Google's financial information. Belov Dep. Tr. at 19:19–20:4; 29:20–24; 30:19–24.[2] This kind of reliance on a biased company source who has not testified under oath regarding the relevant factual assertion is exactly the kind of abuse Judge Alsup identified in *Therasense*, 2008 WL 2323856, at \*2.

Because Google has not demonstrated that this opinion is "based on sufficient facts or data," or that it is "the product of reliable principles and methods"; or that it "reflects a reliable application of the principles and methods to the facts of the case," the testimony should be excluded. Fed. R. Evid. 702.

> 2.   Mr. Deal's testimony regarding applicability of U.S. TOS. is inadmissible.

Google admits that Mr. Deal opines on the applicability of the U.S. Terms of Service. *See* ECF No. 633-2 at p. 12 ("Mr. Deal further explains that Mr. Regan incorrectly assumes that all individuals identified as '███████' in a revenue spreadsheet produced by Google are subject to a U.S. TOS . . ."). Google further admits that Mr. Deal's opinion is rendered "based on assumptions from counsel concerning the applicability of the U.S. TOS." *Id.*

Nevertheless, Google argues that the applicability of the U.S. TOS is "not a 'legal opinion' or even a disputed fact," citing nothing more than Mr. Regan, who also assumes that the U.S. TOS applies to "███████" *Id.* Mr. Regan clearly cites Google's own discovery responses in his report. Regan Reb., ¶¶ 5 & n.2, 12, 13 & n.8.

But whether Google's U.S. TOS would apply to, say, a Google account holder residing in California, who travels overseas, cannot be anything but a legal question. *See, e.g.*, *Song fi, Inc. v. Google Inc.*, 72 F. Supp. 3d 53, 59–64 (D.D.C. 2014) (assessing, as a matter of law, whether the

---

[2] In his deposition, taken about a year before his interview with Mr. Deal, Mr. Belov stated that he is "not exactly an expert on Google's logging" (Belov Dep. Tr. at 19:19–20:4), that he did not know if "there [was] a way to search for all information or data associated with any particular Google account holder" (*Id.* at 29:20–24), and that he is "[n]ot an expert on logs or tables or data storage at Google" (*Id.* at 30:19–24).

1   forum selection clause in YouTube's terms of service was applicable to plaintiff); *In re Avandia*

2   *Mktg., Sales Pracs. and Prod. Liab. Litig.*, 484 F. Supp. 3d 249, 266–67 (E.D. Pa. 2020) (evaluating

3   whether GDPR or U.S. law would govern the disclosure of certain information).

4           Nor is the citation to Mr. Regan's report sufficient to establish that Mr. Deal's opinions on

5   the applicability of the U.S. TOS are admissible. *See* Fed. R. Evid. 702 (requiring that a party offering

6   an expert "demonstrate[] to the court that it is more likely than not" that the evidence is admissible).

7           Google's citations to cases saying that generally experts can rely on information obtained

8   from counsel are beside the point. ECF No. 633-2 at p. 12. What experts cannot do, and what Mr.

9   Deal does here, as he has been found to do in previous reports, is cross the line from using an

10  assumption provided by counsel to himself espousing a legal conclusion. *See Highfields Capital I,*

11  *LP v. SeaWorld Entertainment, Inc*., 2022 WL 1037210, at *11 (S.D. Cal. Apr. 6, 2022) (excluding

12  certain testimony from Mr. Deal as a "legal conclusion," even while noting that "Mr. Deal should be

13  permitted to testify as to his economic, analysis-driven conclusions"). If Mr. Deal opining that the

14  U.S. TOS do not apply to a user who is overseas but using a U.S. VPN is not a legal conclusion, it is

15  hard to understand what would cross the line. *See, e.g.*, ECF No. 633-2 at p. 13 (agreeing that the

16  "enforceability of the TOS" is an "ultimate legal issue").

17                          3.    Mr. Deal's testimony regarding VPN usage is inadmissible.

18          Google further admits that Mr. Deal's "opinion is . . . that VPN usage likely presents a

19  problem." ECF No. 633-2 at 14. And indeed, Mr. Deal goes further in his report, opining that the

20  problem is "likely to be substantial." (Deal Rpt., ¶ 46.) But that is a matter for technical experts, and

21  his own deposition testimony shows why. Deal Dep. Tr. at 116:4–7 ("I am certainly not a technical

22  expert in VPN usage."). It is clear that Plaintiffs do not "mischaracterize" Mr. Deal's reliance on

23  third-party sources as "freestanding 'opinions.'" ECF No. 633-2 at p. 13. The prevalence of VPN

24  usage is not an assumption on which Mr. Deal is basing an opinion; it is the opinion. As Mr. Deal

25  states plainly in his report: "The proportion of non-U.S. users who inaccurately appear via IP address

26  to be in the U.S. (and therefore may [not] be subject to a U.S. TOS) is large." Deal Rpt, ¶ 46.

27          Most importantly, Google does nothing in its response to affirmatively establish that this

28  opinion is "based on sufficient facts or data," or that it is "the product of reliable principles and

1  methods"; or that it "reflects a reliable application of the principles and methods to the facts of the

2  case." Fed. R. Evid. 702. The only statement offered about the basis for this opinion at all is that Mr.

3  Deal's report "cites literature from various sources, including an online security firm and a technology

4  consulting company, about the use and prevalence of VPN systems." ECF No. 633-2 at p. 13. Google

5  makes no effort to affirmatively assert the reliability of these sources, or refute Mr. Deal's own

6  admissions at his deposition that he is "not a technical expert [in] VPN usage." Deal Dep. Tr. at

7  116:4–7.

8         This failure is particularly telling in light of Google's discounting of its own sworn testimony,

9  given under oath after Mr. Deal submitted his report, that Google does understand, when an account

10  is created, whether a user is subject to a U.S. terms of service, based in part on the location of the

11  user's IP address. *See* Vakharia Dep. Tr. at 66:24–67:4. Remarkably, Google argues in its response

12  here that the Court need not "credit [Google's own sworn] testimony" and instead should permit Mr.

13  Deal to testify to the contrary because "Plaintiffs' reliance on [Google's own sworn testimony] . . .

14  go[es] to weight, rather than admissibility." ECF No. 633-2 at p. 14. Such an argument represents, at

15  the very least, an alarmingly paltry view of this Court's gatekeeping role under Rule 702, and not in

16  line with recent amendments that emphasize the importance of the district court's role in ensuring

17  that only testimony proven by the proponent to be more likely than not reliable should be admitted.

18  *See* Fed. R. Evid. 702, Advisory Committee Notes (2023 Amendments) ("[M]any courts have held

19  that the critical questions of the sufficiency of an expert's basis, and the application of the expert's

20  methodology, are questions of weight and not admissibility. These rulings are an incorrect application

21  of Rules 702 and 104(a)."); *see also Sardis v. Overhead Door Corp.*, 10 F.4th 268, 283–84 (4th Cir.

22  2021) (reversing trial verdict based on district court's abuse of discretion in admitting into evidence

23  irrelevant and unreliable opinions, noting that the "importance of the gatekeeping function [of the

24  district courts] cannot be overstated").

25         As this Court demonstrated clearly in *Brown*, even experts qualified in one field can have

26  opinions stricken for venturing outside their area of expertise. *Brown*, 2022 WL 17961497, at *11

27  ("While Schneier is a security technologist, and can opine generally about relevant privacy issues, he

28

1   does not have specialized expertise in opining about the purported understandings and expectations

2   of consumers specifically."). Exclusion of Mr. Deal's testimony on this ground is warranted here.

3                4.   Mr. Deal's testimony regarding voluntary sharing of data is inadmissible.

4          Google does not dispute that Mr. Deal is not an expert on privacy or consent. ECF No. 633-2

5   at pp. 15–16. Instead, Google asserts that adding the phrase "from an economic perspective" to an

6   assertion that is otherwise about principles of privacy and consent must insulate this opinion from

7   exclusion. *Id.* at p. 15. In response to Plaintiffs' correctly pointing out that Mr. Deal cites nothing as

8   support for this opinion, Google asserts only the general principle that Mr. Deal is "allowed to rely

9   on his knowledge, skill, experience, training or education . . . to form his opinion." *Id.* Notably,

10  Google offers no affirmative reason as to why this opinion is economic in nature at all, as opposed to

11  simply an argument about Google not being liable when users consent. *Id.*

12         Indeed, this confusion of economic analysis and liability is exactly the error that this Court

13  found Google to be making in *Brown*, when Google argued that Plaintiffs' expert should be excluded

14  because he failed to account for "uninjured class members." *Brown*, 2022 WL 17961497, at *5. That

15  argument was rejected in *Brown* because it was a liability defense for Google, not an economic issue

16  that Plaintiffs' expert was required to consider. *Id.* (". . . Google's arguments reflect a merits dispute

17  about the scope of its liability, and is not appropriate for resolution at the class certification stage of

18  this proceeding.") (internal quotation marks omitted) (cleaned up). The same is true here.

19         With respect to Google's assertion that plaintiffs have misconstrued Mr. Deal's opinion,

20  confusing assumptions with opinions (ECF No. 633-2 at p. 15), the text of Mr. Deal's report is

21  dispositive. At Deal Report ¶ 48, for example, Mr. Deal opines: "Proposed Class Members can 'opt-

22  in' to allow sharing of their data in numerous ways, and information suggests that a substantial portion

23  of the Proposed Class likely did." And: "Even Proposed Class Members who know of, but choose to

24  forego, options to prevent the sharing of data with advertisers can be considered to have voluntarily

25  opted into the sharing of their data." Deal Rpt., ¶ 48; *see also* Section II.B (unharmed class members).

26  These are not assumptions about issues of privacy and consent; they are direct opinions on those

27  issues. This is a classic example of a damages expert who has strayed out of his lane into a privacy

28

analysis regarding what constitutes a valid "opt-in" to the sharing of data. *See, e.g.*, *Brown*, 2022 WL

17961497, at *11 (excluding testimony that goes beyond an expert's area of expertise).

Having made no effort to affirmatively demonstrate that these opinions are more likely than

not admissible, Google resorts to a "they're doing it too" defense, citing Professor Zeithammer's

analysis of users who opt in or opt out under the California Consumer Privacy Act ("CCPA"). ECF

No. 633-2 at p. 16. Putting aside the obvious differences between an explicit consent regime, as set

up under the CCPA, and Mr. Deal's opinions regarding what constitutes an "opt in" to data sharing,

this type of argument is no showing at all under the relevant legal standard, which is to demonstrate

to the court that Google's proffered testimony, from Mr. Deal, is more likely than not admissible.

Accordingly, these opinions should be excluded.

### 5.   Mr. Deal's testimony regarding overall profits is inadmissible.

Google protests that plaintiffs' assertions about Mr. Deal "parroting" statements from Mr.

Belov as his own opinion is "plain wrong." ECF No. 633-2 at p. 17.

But here are the key assertions taken directly from this section of Mr. Deal's report:

"***According to Mr. Stan Belov***, a Google staff software engineer who is technical lead
for Google RTB, ███████████████████████████████████████████
███████████████████████████████████████████████████████████.
***Mr. Belov explained this is because*** the ████████████████████████
███████████████████████████████ Thus, like the other
studies discussed above, this ████████████████████████████████████
███████████████████████████████████████████████████████████
██████████████████████████████" Deal Rpt., ¶ 66 (footnote 82 citing only
to "Interview with Stanislav Belov, August 16, 2023.") (emphasis added).

Mr. Belov's off-the-record assertion about how Google's revenue would be affected if Google

stopped sharing user data in its RTB auctions is not an assumption that Mr. Deal is taking into account

in offering an opinion; *it is the opinion*. Deal Rpt., ¶ 65 ████████████████████████

██████████████████████████████████████████████████████████████████

██████████). Google may argue that Mr. Deal is "not simply regurgitating Mr. Belov's 'opinions,'" but

the text does not back up this claim. ECF No. 633-2 at p. 17.

Nor can Google cleanse this direct parroting by pivoting to the idea that it is "entirely proper"

for experts to rely on company sources. *Id.* More on point is the proposition that experts cannot simply

parrot the testimony of others and adopt it as their own. *See S.E.C. v. Tourre*, 950 F. Supp. 2d 666, 675 (S.D.N.Y. 2013) ("Acting simply as a narrator of the facts does not convey opinions based on an expert's knowledge and expertise; nor is such a narration traceable to a reliable methodology"); *see also Sitts v. Dairy Farmers of Am., Inc.*, 2020 WL 3467993, at *8 (D. Vt. June 24, 2020) (quoting *SourceOne Dental, Inc. v. Patterson Cos. Inc.*, 2018 WL 2172667, at *7 (E.D.N.Y. May 10, 2018) (this kind of narrative and commentary on the evidence is not admissible because it is not "helpful to the finder of fact.")); ECF No. 623-3 at pp. 18-21 (discussing *Woods v. City of Hayward*, 2021 WL 4061657 (N.D. Cal. Sep. 7, 2021), among other cases).

> 6.   Legal conclusions masked as unqualified expert opinions are inadmissible.

Google disputes that Mr. Deal offers legal conclusions, essentially arguing that declaring a particular proposed damage model to be "unreliable" is the function of a rebuttal expert, and therefore must be allowed. ECF No. 633-2 at pp. 18-20. But the cases Google cites in support do not specifically address whether opining as to the ultimate question of reliability is proper. *See McCrary v. Elations Co. LLC*, 2014 WL 12589137 (C.D. Cal. Dec. 2, 2014) (excluding some portions of rebuttal damages expert, but permitting others); *Townsend v. Monster Beverage Corp.*, 303 F. Supp. 3d 1010, 1035 (C.D. Cal. 2018) (rejecting objection to cumulative nature of expert opinions, not addressing whether an expert specifically opining as to the ultimate issue of reliability was proper).

In contrast, the quotations Google puts forth from Mr. Regan's report actually do show how a careful expert can provide helpful testimony on an important issue the Court must resolve without venturing into offering a legal opinion. *See* ECF No. 633-2 at p. 19 (quoting the Regan report as stating: "[t]he RTB data . . . enables the relief sought by Plaintiffs to be "readily quantified on a class-wide basis").

Mr. Deal, however, just as he seems to have done in *Highfields*, has been less than careful in respecting this important line. Instead, Mr. Deal has simply taken issues the Court must decide (reliability and individualized inquiry) and opined on these ultimate issues repeatedly. Google's efforts to distinguish *Fitzhenry-Russell* in a footnote and salvage some of Mr. Deal's opinions by arguing that "wholesale exclusion" is not warranted are not persuasive. ECF No. 633-2 at p. 19 &

n.15. Whatever the "focus" of Mr. Deal's opinion, what he actually says is directive to the Court about findings on reliability and individualized inquiry, and those opinions should be excluded. ECF No. 623-3 at pp. 19–20 (discussing *Fitzhenry-Russell v. Keurig Dr. Pepper Inc.*, 2018 WL 10472794 (N.D. Cal. Sept. 25, 2018) and *Highfields*, 2022 WL 1037210, at \*12–13); *see also M.H. v. County of Alameda*, 2015 WL 54400, at \*2 (N.D. Cal. Jan. 2, 2015) (partially excluding expert opinions for "using the legally significant terms 'deliberate indifference' and 'objective reasonableness'").

## B.   Compensatory Damages Testimony (Deal Rpt., ¶¶ 15, 17, 19–20, 91–93)

Google does not dispute that Mr. Deal is not an expert in the RTB auction or in what data fields are shared in the RTB auction. Instead, Google misdescribes his report. Google says the report only asserts that assuming data fields are not commonly shared, the "market value model" of Plaintiffs' experts "does not suffice to estimate damages." ECF No. 633-2 at p. 21. Google's characterization of Mr. Deal's report cannot survive an examination of the report's text, in which Mr. Deal purports to offer opinions about the technical intricacies the RTB auction, of which he plainly has no expertise:

- Deal Rpt., ¶ 91: "Another problem that Plaintiffs' Experts have not addressed involves estimating the quantity and mix of information actually shared through RTB, and doing so would require individualized inquiry."

- *Id.*, ¶ 92: "Individualized and time-consuming inquiry would be necessary to determine and value the actual data that was shared given the many factors that affect whether and which data was included in Bid Requests during the Class Period."

- *Id.*, ¶ 92 & n.136, citing to Mr. Regan's report for the assertion that "the data required to do a complete accounting of data fields that were shared in Bid Requests during the Class Period does not exist."

- *Id.*, ¶ 92: "Various factors would cause data variation, including: [b]rowsers that automatically blocked third-party cookies (e.g., Safari or Firefox, at different points in time); [t]hird-party software that blocked third-party cookies or other at-issue data from being shared; [s]oftware or hardware settings by device and browser that blocked third-party cookies or other at-issue data from being shared; Google internal policies and data logic that prevented third-party cookies or other at-issue data from being shared . . . ."

Mr. Deal is opining, directly, on the variability in bid requests. And because Mr. Deal has no expertise in that particular area, a point which Google does not contest, his opinions on these points

should be excluded. *See Brown*, 2022 WL 17961497, at *11; *Space Data Corp. v. Alphabet, Inc.*, 2019 WL 2603285, at *4 (N.D. Cal. Jun. 25, 2019) (partially excluding testimony from damages expert for opining on substantive areas outside of damages).

### C.   Unharmed Class Member Testimony (Deal Rpt., ¶¶ 21, 94–135)

Google does not contest that Mr. Deal is not an expert in privacy or consent. ECF No. 633-2 at p. 23. Instead, Google asserts that Mr. Deal has only assumed certain facts related to privacy and consent in forming his opinions. But the language in Mr. Deal's report does not support this distinction.

- Deal Rpt., ¶ 96: "Based on my review and analysis, I find Mr. Regan's assumptions of harm to all Proposed Class Members to be unsupported. There are many possible combinations of understanding, knowledge, choices, and preferences among Proposed Class Members that would cause a substantial portion of them to be unharmed."

- *Id.*, ¶ 98: "Mr. Regan could not remedy this flaw in his damages model because substantial and time-consuming individualized inquiry would be necessary to identify unharmed Proposed Class Members. For instance, what each Proposed Class member knew or how they understood the Privacy Policy is influenced by many things, including: individual experiences; knowledge gained through education, vocational training, and work experience; information learned from, among other things, talking to others, and/or read or heard from public sources; tendencies to research different topics; and sensitivity to privacy."

- *Id.*, ¶ 100: "A core question in the determination of the fact of harm is whether a Google account holder understood that their at-issue data would be shared with third parties in Google RTB."

- *Id.*, ¶ 103: "Consistent with this finding [referring to the survey conducted for Google by Prof. Hanssens], numerous public sources were available to inform Proposed Class Members about the sharing of the at-issue data. Thus, individualized inquiries would be necessary to ascertain what different Proposed Class Members read, encountered, or knew about Google's sharing of information in Bid Requests, and what actions they took and why upon gaining that knowledge."

- *Id.*, ¶ 110: Google also publicly disclosed the types of information it included in Bid Requests. "I understand that Google made additional disclosures about the information included in Bid Requests and that those disclosures are described in the Declaration of Suneeti Vakharia."

In response to Plaintiffs' arguments that in fact Suneeti Vakharia, testifying on behalf of Google, swore under oath that Google did not disclose data that was shared in RTB, Google pivots again to "weight vs. admissibility," offering no affirmative defense of the truth or reliability of Mr. Deal's assertions. ECF No. 633-2 at p. 23. This is simply insufficient under Rule 702 to warrant admission of this testimony. Fed. R. Evid. 702 (burden is on proffering party); *see also Brown*, 2022 WL 17961497, at *12.[3]

Google also cites *Space Data* in support of the proposition that Mr. Deal, "as a damages expert . . . is entitled to rely on facts and assumptions that relate to his overall economic criticisms of Mr. Regan's methodology." ECF No. 633-2 at p. 23. But the discussion in *Space Data* supports the careful judicial policing of the line between permissible assumptions and affirmatively stated opinions that veer outside an expert's area of expertise:

> . . . Space Data argues that Dr. Ingberman [Google's damages expert] has no foundation to opine on trade secret or confidential information misuse because he is an economist, not a technical expert. . . . Dr. Ingberman may testify on trade secret misuse as it pertains to the value of Space Data's trade secrets, ***but only at a high level***. In other words, Dr. Ingberman may offer his opinions on the ***value*** of the trade secrets in question and may ***build in and discuss the assumptions*** on which he relies. Likewise, Dr. Ingberman may ***rebut [Plaintiffs' expert's] methodology at a high level***—such as opining on what [Plaintiffs' expert] failed to properly account for in forming her opinions or solidifying her assumptions. ***However, Dr. Ingberman may not testify that a given trade secret has no value because it is not a trade secret—such testimony falls outside the purview of damages.*** For example, Dr. Ingberman ***may not offer testimony that in his opinion the publicly available information enabled Google to achieve the same result***, independent of Space Data's trade secrets."

---

[3] *Perez v. Rash Curtis & Assoc.*, 2019 WL 1491694 (N.D. Cal. Apr. 4, 2019), is not to the contrary. There, plaintiffs' expert had opined that certain telephone numbers in defendant's database had been "skip-traced," and the defendant challenged that opinion, contending that "not every number in [certain fields] was obtained through skip-tracing." *Id.* at *3. On defendant's pre-trial *Daubert* motion, attempting to keep this testimony from the jury, the Court found that it "need not resolve the accuracy of defendant's contention because any arguments that [plaintiffs' expert] based his opinions on an improper assumption go to the weight, not the admissibility of his testimony." *Id.* (citing two 9th Circuit cases, one from 2014 and one from 2015). The fact that this Court declined under those circumstances to resolve a factual dispute regarding how certain telephone numbers were obtained does not transform every dispute about an expert's assumptions into an issue of weight, not admissibility. If that were true, this Court would never have issued the careful opinion that it did in *Brown*, assessing each side's experts on various grounds, including the reliability of the sources for particular opinions. *See Brown*, 2022 WL 17961497, at *2–14.

*Space Data*, 2019 WL 2603285, at *4 (emphasis added). Objections to Mr. Deal veering into similar territory are entirely proper, and once they are raised, the burden falls to the proffering party to demonstrate that the testimony is "more likely than not" admissible. Google makes no effort to do that here, and the testimony should be excluded.

### D. Allocation Testimony (Deal Rpt., ¶¶ 22, 136–137, 142)

Google agrees that in the last section of his report, Mr. Deal opines that "[n]ot all Proposed Class Members suffered economic harm in every month while they were account holders." ECF No. 633-2 at p. 24. This is essentially a restatement of Mr. Deal's earlier opinions on users' allegedly voluntary sharing of data and the variance in bid requests. Deal Rpt., ¶ 136 ("Mr. Regan's approach is flawed and unreliable, as it does not allocate damages in proportion to the harm suffered by individual Proposed Class Members and would allocate damages to Proposed Class Members in months when they did not suffer harm, even under Plaintiffs' theory."); ¶ 137 ("In Section VI above, I discuss that a substantial proportion of Proposed Class Members may be unharmed for all or part of the Class Period, and that these unharmed members cannot be identified without individualized inquiry."); ¶ 142 (critiquing Mr. Regan's market price allocation model "because different amounts of information were shared in Bid Requests for different Proposed Class Members").

As discussed above, Mr. Deal's proposed testimony regarding the variability in bid requests goes beyond simply relying on information provided by other experts in the case, and represents Mr. Deal's own affirmative assertions of opinions about variability. *See* Section II.B. Similarly, Mr. Deal's testimony regarding unharmed class members does not simply rely on information to support an assumption, but instead represents Mr. Deal's affirmative opinions on whether and when class members voluntarily shared data. Section II.A.c. This testimony goes beyond Mr. Deal's admitted expertise and should be excluded. *See Brown*, 2022 WL 17961497, at *11.

Google also makes no affirmative effort to establish the admissibility of Mr. Deal's opinions regarding individualized inquiry. Deal Rpt., ¶ 137 (". . . unharmed [class] members cannot be identified without individualized inquiry"); *see also id.*, ¶ 138 ("Individualized inquiry would be necessary to determine whether Google shared data for or profited from data about each Proposed

1   Class Member in each month."). As discussed in Section II.A.b above, this testimony should also be

2   excluded.

3   **IV.     CONCLUSION**

4          Plaintiffs respectfully request that the Court grant their motion to exclude the testimony of

5   Bruce Deal, as stated in the Proposed Order.

6

7   DATED: December 20, 2023                              Respectfully submitted,

8

9                                                         **PRITZKER LEVINE LLP**

10                                                        By: */s/ Elizabeth C. Pritzker*
                                                          Elizabeth C. Pritzker (Cal. Bar No.146267)
11                                                        Jonathan K. Levine (Cal. Bar No. 220289)
                                                          Bethany Caracuzzo (Cal. Bar No. 190687)
12                                                        Caroline Corbitt (Cal. Bar No. 305492)
                                                          1900 Powell Street, Ste. 450
13                                                        Oakland, CA 94602
                                                          Tel.: (415) 692-0772
14                                                        Fax: (415) 366-6110
                                                          *ecp@pritzkerlevine.com*
15                                                        *jkl@pritzkerlevine.com*
                                                          *bc@pritzkerlevine.com*
16

17                                                        *Interim Class Counsel*

18                                                        **BLEICHMAR FONTI & AULD LLP**

19                                                        By: */s/ H. Melissa Mather*
                                                          Lesley E. Weaver (SBN 191305)
20                                                        H. Melissa Mather (admitted *pro hac vice*)
                                                          Anne K. Davis (SBN 267909)
21                                                        Joshua D. Samra (SBN 313050)
                                                          1330 Broadway, Suite 630
22                                                        Oakland, CA 94612
                                                          Tel.: (415) 445-4003
23                                                        Fax: (415) 445-4020
                                                          *lweaver@bfalaw.com*
24                                                        *mmather@bfalaw.com*
                                                          *adavis@bfalaw.com*
25                                                        *jsamra@bfalaw.com*
26

27                                                        **SIMMONS HANLY CONROY LLC**
                                                          Jason 'Jay' Barnes (admitted *pro hac vice*)
28

An Truong (admitted *pro hac vice*)
Jenny Paulson (admitted *pro hac vice*)
112 Madison Avenue, 7th Floor
New York, NY 10016
Tel.: (212) 784-6400
Fax: (212) 213-5949
*jaybarnes@simmonsfirm.com*
*atruong@simmonsfirm.com*
*jpaulson@simmonsfirm.com*

**DICELLO LEVITT LLC**
David A. Straite (admitted *pro hac vice*)
485 Lexington Avenue, Suite 1001
New York, NY 10017
Tel.: (212) 784-6400
Fax: (212) 213-5949
*dstraite@dicellolevitt.com*

James Ulwick (admitted *pro hac vice*)
Ten North Dearborn Street, Sixth Floor
Chicago, IL 60602
Tel.: (312) 214-7900
*julwick@dicellolevitt.com*

**COTCHETT PITRE & MCCARTHY, LLP**
Nanci E. Nishimura (Cal. Bar No. 152621)
Brian Danitz (Cal. Bar No. 247403)
Karin B. Swope (admitted *pro hac vice*)
840 Malcolm Road
Burlingame, CA 94010
Tel.: (650) 697-6000
*nnishimura@cpmlegal.com*
*bdanitz@cpmlegal.com*
*kswope@cpmlegal.com*

**BOTTINI & BOTTINI INC.**
Frances A. Bottini, Jr. (Cal. Bar No. 175783)
Anne Beste (Cal. Bar No. 326881)
7817 Ivanhoe Ave., Ste. 102
LA Jolla, CA 92037
Tel.: (848) 914-2001
*fbottini@bottinilaw.com*
*abeste@bottinilaw.com*

*Counsel for Plaintiffs and the Proposed Class*

16

Case No. 4:21-cv-02155-YGR-VKD
PLAINTIFFS' REPLY IN SUPPORT OF *DAUBERT* MOTION
TO EXCLUDE GOOGLE LLC'S EXPERT BRUCE DEAL

1

## <u>ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1(i)(3)</u>

2

I, H. Melissa Mather, attest that concurrence in the filing of this document has been obtained

3  from the other signatories. I declare under penalty of perjury that the foregoing is true and correct.

4  Executed this 20th day of December, 2023, at New York, New York.

5

6  */s/ H. Melissa Mather*
  H. Melissa Mather

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

17   Case No. 4:21-cv-02155-YGR-VKD
Plaintiffs' Reply in Support of *Daubert* Motion
to Exclude Google LLC's Expert Bruce Deal