# EXHIBIT J
# to the Declaration of
# G. Berntson


## (REDACTED VERSON OF DOCUMENT SOUGHT TO BE FILED UNDER SEAL)

# Exhibit 53

# FILED UNDER SEAL

1              IN THE UNITED STATES DISTRICT COURT

             NORTHERN DISTRICT OF CALIFORNIA

2                    OAKLAND DIVISION

3

4    IN RE GOOGLE RTB CONSUMER  ) CASE NO.

     PRIVACY LITIGATION         ) 4:21-CV-02155-YGR

5    _____)

6

7

8

9

10

11

12

13                CONFIDENTIAL TRANSCRIPT

14             VIDEO-RECORDED DEPOSITION OF

15             KONSTANTINOS PSOUNIS, Ph.D.

16                  OCTOBER 16, 2023

17

18

19

20

21

22

23    JOB NO. 6151420

24    REPORTED STENOGRAPHICALLY BY:

25    MARY K. MEDLEY, CSR NO. 9557

                                        Page 1

```
 1        VIDEO-RECORDED DEPOSITION OF KONSTANTINOS PSOUNIS,
 2    Ph.D., TAKEN ON BEHALF OF THE PLAINTIFF, AT
 3    9:02 A.M., MONDAY, OCTOBER 16, 2023, AT 1333 2ND
 4    STREET, SANTA MONICA, CALIFORNIA, BEFORE MARY K.
 5    MEDLEY, CSR NO. 9557.
 6
 7    APPEARANCES OF COUNSEL:
 8
 9    INTERIM CLASS COUNSEL:
10         PRITZKER LEVINE LLP
           BY:  JONATHAN K. LEVINE, ESQ.
11         BY:  BETHANY CARACUZZO, ESQ.
                (PRESENT VIA VIDEOCONFERENCE)
12         1900 POWELL STREET, SUITE 450
           EMERYVILLE, CALIFORNIA 94608
13         (415) 692-0772
           JKL@PRITZKERLEVINE.COM
14
           BLEICHMAR FONTI & AULD LLP
15         BY:  ANNE K. DAVIS, ESQ.
           555 12TH STREET, SUITE 1600
16         OAKLAND, CALIFORNIA 94607
           (415) 445-4003
17         ADAVIS@FBALAW.COM
18         SIMMONS HANLY CONROY LLP
           BY:  AN TRUONG, ESQ.
19              (PRESENT VIA VIDEOCONFERENCE)
           112 MADISON AVENUE, SEVENTH FLOOR
20         NEW YORK, NEW YORK 10016
           (212) 784-6400
21         ATRUONG@SIMMONSFIRM.COM
22
23
24
25
```

Page  2

```
 1        APPEARANCES OF COUNSEL (continued):

 2

 3        FOR GOOGLE AND THE WITNESS:

 4            COOLEY LLP
              BY:  WHITTY SOMVICHIAN, ESQ.

 5            BY:  REECE TREVOR, ESQ.
                  (PRESENT VIA VIDEOCONFERENCE)

 6            3 EMBARCADERO CENTER, FLOOR TWENTY
              SAN FRANCISCO, CALIFORNIA 94111

 7            (415) 693-2061
              WSOMVICHIAN@COOLEY.COM

 8            RTREVOR@COOLEY.COM

 9

10        ALSO PRESENT:  JONATHAN HERNANDEZ, VIDEOGRAPHER

11                       DANIELLE PIERRE
                         (PRESENT VIA VIDEOCONFERENCE)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

                                              Page  3
```

CONFIDENTIAL

```
 1                          INDEX
 2      DEPONENT             EXAMINATION              PAGE
 3      KONSTANTINOS PSOUNIS, Ph.D.
 4                          BY MR. LEVINE              6
 5
 6                          EXHIBITS
 7      NO.      PAGE          DESCRIPTION
 8
 9      EXHIBIT 1    7    EXPERT REPORT OF KONSTANTINOS
                         PSOUNIS, PHD.
10
        EXHIBIT 2   37    PLAINTIFFS' NOTICE OF MOTION AND
11                        MOTION FOR CLASS CERTIFICATION
                         AND APPOINTMENT OF CLASS
12                        REPRESENTATIVES AND CLASS
                         COUNSEL; AND MEMORANDUM OF POINTS
13                        AND AUTHORITIES IN SUPPORT
                         THEREOF
14
        EXHIBIT 3   48    EXPERT CLASS CERTIFICATION REPORT
15                        OF PROFESSOR ZUBAIR SHAFIQ
16      EXHIBIT 4   61    EXPERT CLASS CERTIFICATION REPORT
                         OF PROFESSOR CHRISTOPHER WILSON,
17                        JULY 14, 2023
18      EXHIBIT 5  103    LIST OF DATA FIELDS
19      EXHIBIT 6  105    FINAL-OUT.CSV
20      EXHIBIT 7  106    EXCEL DOCUMENT PRINTOUT, 3 PAGES
21      EXHIBIT 8  175    EXPERT REPORT OF AARON STRIEGEL,
                         PH.D
22
        EXHIBIT 9  235    ARTICLE TITLED "HARPO:  LEARNING
23                        TO SUBVERT ONLINE BEHAVIORAL
                         ADVERTISING"
24
25
                                              Page  4
```

```
 1              MONDAY, OCTOBER 16, 2023; 9:02 A.M.

 2                         *****

 3          THE VIDEOGRAPHER:  Good morning.  We're on the    09:02:37

 4     record.  The time is 9:02 a.m. Pacific Standard        09:02:39

 5     Time.  Today is October 16, 2023.                      09:02:43

 6              My name is Jonathan Hernandez, I'm a video     09:02:48

 7     technician with Veritext Legal Solutions located in    09:02:51

 8     Los Angeles, California.                               09:02:54

 9              We are recording these proceedings at          09:02:56

10     1333 2nd street, Santa Monica, California.             09:03:00

11              This is the video deposition of                09:03:04

12     Konstantinos Psounis, Ph.D. in the action entitled     09:03:05

13     In Re Google RTB Consumer Privacy Litigation.  This    09:03:12

14     deposition is being taken on behalf of the interim     09:03:19

15     class counsel.  The case number is                     09:03:23

16     4:21-CV-02155-YGR.                                     09:03:29

17              Now, would you all please identify             09:03:37

18     yourselves and who you represent starting with the     09:03:38

19     noticing attorney.                                     09:03:42

20          MR. LEVINE:  Jonathan Levine, Pritzker Levine,    09:03:43

21     on behalf of plaintiffs.                               09:03:43

22          MS. DAVIS:  Anne Davis, Bleichmar Fonti & Auld,   09:03:44

23     on behalf of plaintiffs.                               09:03:45

24          MR. SOMVICHIAN:  Whitty Somvichian with Cooley    09:03:49

25     representing Google and for the witness today.         09:03:50
```

Page 5

CONFIDENTIAL

| | | |
|---|---|---|
| 1 | THE VIDEOGRAPHER:  If I can please have the | 09:03:58 |
| 2 | appearances of the members on Zoom. | 09:03:59 |
| 3 | MS. CARACUZZO:  Sure.  This is Bethany | 09:04:03 |
| 4 | Caracuzzo of Pritzker Levine on behalf of the | 09:04:05 |
| 5 | plaintiffs. | 09:04:10 |
| 6 | MS. TRUONG:  An Truong, Simmons Hanly Conroy, | 09:04:12 |
| 7 | on behalf of the plaintiffs. | 09:04:13 |
| 8 | MR. TREVOR:  Good morning.  This is Reece | 09:04:14 |
| 9 | Trevor from Cooley LLP for Google and the witness. | 09:04:15 |
| 10 | | |
| 11 | KONSTANTINOS PSOUNIS, Ph.D., | |
| 12 | having been first duly sworn by the reporter, | |
| 13 | was examined and testified as follows: | |
| 14 | | |
| 15 | EXAMINATION | |
| 16 | BY MR. LEVINE: | |
| 17 | Q.  Good morning, Dr. Psounis.  My name is | 09:04:38 |
| 18 | Jonathan Levine and I represent the plaintiffs in | 09:04:42 |
| 19 | this action. | 09:04:44 |
| 20 | You have been deposed before; correct? | 09:04:46 |
| 21 | A.  Yes. | 09:04:48 |
| 22 | Q.  You were deposed last week in another case | 09:04:50 |
| 23 | in which you are also serving as an expert for | 09:04:53 |
| 24 | Google; correct? | 09:04:56 |
| 25 | A.  Yes. | 09:04:57 |

Page 6

```
 1        systems, situations, et cetera.  It's a very          09:49:06

 2        complicated situation.                                09:49:09

 3            Q.  I've looked at your background.  You and I     09:49:12

 4        would get the same ads, but anyway.                   09:49:13

 5            A.  We will get the same ads?                      09:49:15

 6            Q.  We ski, we hike, you know --                   09:49:17

 7            A.  So there you go.                               09:49:20

 8            Q.  -- get these ads.                              09:49:21

 9            So let's turn to page 4 of your report,           09:49:23

10        which is your assignments.  I think it starts on      09:49:24

11        page 3, the list of assignments.                      09:49:32

12            So am I correct that you had two                  09:49:35

13        assignments in this matter and those are explained    09:49:37

14        in paragraphs 11 and 12 of your report?               09:49:41

15            A.  Yes, this is the two assignments.             09:50:14

16            Q.  Okay.  And those are your two assignments;    09:50:16

17        right?                                                09:50:18

18            A.  Yes.                                          09:50:18

19            Q.  And that was all you were asked to do.        09:50:19

20            A.  Yes.                                          09:50:21

21            Q.  And that's all you did.                       09:50:21

22            A.  Yes.                                          09:50:23

23            Q.  Okay.  You use the word in both of the --     09:50:24

24        in paragraphs 11 and 12, the standard you seem to be  09:50:33

25        applying is -- and you use this throughout your       09:50:36
```

Page 32

CONFIDENTIAL

| | | |
|---|---|---|
| 1 | report, there's a phrase "reliably identify an | 09:50:40 |
| 2 | individual or household." | 09:50:44 |
| 3 | Do you see that? | 09:50:45 |
| 4 | A.  Yes. | 09:50:48 |
| 5 | Q.  Where does that language come from? | 09:50:49 |
| 6 | A.  It's a word I use to distinguish between | 09:50:56 |
| 7 | reliable and unreliable. | 09:51:09 |
| 8 | Q.  Is -- Just so I'm clear, is that like a | 09:51:13 |
| 9 | shorthand you're using for what the standard is for | 09:51:15 |
| 10 | personal information under California law? | 09:51:18 |
| 11 | MR. SOMVICHIAN:  Objection.  Vague. | 09:51:22 |
| 12 | THE WITNESS:  No.  I think there is a lot of | 09:51:26 |
| 13 | debate about what CCPA means by reasonably XYZ.  And | 09:51:30 |
| 14 | I'm not an expert on that stuff. | 09:51:39 |
| 15 | MR. LEVINE: | 09:51:40 |
| 16 | Q.  Are you familiar with the definition of | 09:51:41 |
| 17 | what constitutes personal information under | 09:51:43 |
| 18 | California law? | 09:51:45 |
| 19 | A.  I know what the CCPA writes in there, but I | 09:51:51 |
| 20 | think this is also a debated term, so I cannot argue | 09:52:05 |
| 21 | that I know what it means, actually.  I think | 09:52:19 |
| 22 | different people probably understand different | 09:52:23 |
| 23 | things about what CCPA means when it says PII. | 09:52:26 |
| 24 | Q.  But in terms of rendering your opinions, | 09:52:31 |
| 25 | the standard you're using is -- throughout your | 09:52:33 |

Page 33

```
 1        okay, assume that it's accurate, when you say there    14:06:18

 2        is no common set of data fields in RTB bid requests,   14:06:23

 3        would you agree with me that the better way to say     14:06:27

 4        that, the more accurate way to say that would be       14:06:31

 5        other than the ██ data fields identified by            14:06:36

 6        Professor Shafiq from the named plaintiffs' data, at   14:06:41

 7        least in the named plaintiffs' data produced by        14:06:46

 8        Google, it would have to be some other field other     14:06:49

 9        than these?                                            14:06:54

10            MR. SOMVICHIAN:  Objection.  Vague and             14:06:56

11        ambiguous.                                             14:06:56

12            MR. LEVINE:                                        14:06:59

13            Q.  So for example, there are a hundred and 8      14:07:03

14        data fields that --                                    14:07:07

15            A.  No, I get the question.                        14:07:08

16            Q.  -- that Dr. Striegel, you can -- you can       14:07:10

17        point to any of those ██ others, but for the ██ on     14:07:13

18        this list, you would agree with me these are common,   14:07:16

19        at least in the named plaintiff data that Google       14:07:18

20        produced for the ██ million bid requests for the       14:07:21

21        named plaintiffs; correct?                             14:07:24

22            MR. SOMVICHIAN:  Object to form.                   14:07:25

23            THE WITNESS:  I will -- Again, I have not          14:07:30

24        conducted an independent analysis of any data one      14:07:33

25        way or another, right.                                 14:07:36
```

Page 144

```
 1          So in some sense, let's say I look at the     14:07:39

 2     data from Dr. Striegel, right, and some of them he 14:07:42

 3     says they appear a hundred percent or              14:07:47

 4     99-point-something, and some of them appear 20     14:07:49

 5     percent, right, so I'm relying on this data.       14:07:52

 6          Similarly, the same holds for Dr. Shafiq's    14:07:55

 7     data.  I'm not going to imply that one is doing a  14:07:59

 8     correct analysis and the other is doing an incorrect 14:08:04

 9     analysis.  It's data.                              14:08:07

10          And this document, Exhibit 7, has a set of    14:08:08

11     fields that for the said plaintiffs' data, they    14:08:15

12     apparently agree on the numbers, so I'm -- I'm not 14:08:24

13     going to object on the numbers.                    14:08:25

14          So yes, that's the numbers for this █ data    14:08:26

15     fields based on the analysis of both of these      14:08:28

16     experts.                                           14:08:31

17          There are other data, there are other         14:08:31

18     people who knows what happens for others; correct? 14:08:33

19        MR. LEVINE:                                      14:08:38

20        Q.  Okay.  Let's look at page 10 of your        14:08:39

21     report.                                            14:08:41

22          So your next opinion is, you say "There is    14:09:01

23     no reliable way to identify" -- Well, let's be more 14:09:04

24     specific.                                          14:09:14

25          You say there's no reliable way for           14:09:15
```

Page 145

CONFIDENTIAL

```
 1    resetting their device IDs, the authority that        14:46:09

 2    creates the device IDs.                               14:46:14

 3            There is some small chances that they may     14:46:16

 4    not be unique, but it's probably quite small.  But    14:46:18

 5    yes.  But I'm going to add the following:  So I       14:46:23

 6    already said the device, correct, the device ID.  So  14:46:25

 7    now a device has a new device ID, true.  You          14:46:28

 8    still -- So if you don't have the device here in      14:46:33

 9    your hand, what you have is two device IDs.           14:46:37

10        MR. LEVINE:                                       14:46:42

11        Q.  I'm going to get to that.  You answered my    14:46:42

12    question.  Let me ask another question.               14:46:44

13        A.  Okay.                                         14:46:46

14        Q.  So a single device through device resets      14:46:46

15    could have several device IDs that are being          14:46:49

16    tracked, but all of those device IDs would still be   14:46:53

17    unique to that particular device; correct?           14:46:56

18        MR. SOMVICHIAN:  Objection.  Vague and            14:47:01

19    ambiguous.  Object to form.                           14:47:01

20        THE WITNESS:  So there is an assumption here      14:47:07

21    that the way that the device ID is created -- and     14:47:09

22    I'm mentioning this because you just can't reset the  14:47:14

23    device ID -- maintains the uniqueness property.       14:47:17

24            So subject to that assumption, yes, it will   14:47:26

25    be -- the device will have multiple unique device     14:47:28
```

Page 164

| | | |
|---|---|---|
| 1 | IDs. | 14:47:31 |
| 2 | MR. LEVINE: | 14:47:32 |
| 3 | Q.  Paragraph 40 of your report, which we | 14:47:32 |
| 4 | started with, you state that the device ID is not | 14:47:34 |
| 5 | part of the bid requests for six of the seven named | 14:47:39 |
| 6 | plaintiffs; correct? | 14:47:43 |
| 7 | A.  Correct. | 14:47:43 |
| 8 | Q.  And you understand that that's just | 14:47:44 |
| 9 | referring to the seven examples, one for each | 14:47:47 |
| 10 | plaintiff, that's set forth in paragraph 46 of the | 14:47:51 |
| 11 | Shafiq report, not to all ▉ million bid requests | 14:47:54 |
| 12 | that Professor Shafiq examined; correct? | 14:47:58 |
| 13 | A.  Correct. | 14:48:01 |
| 14 | Q.  Okay.  Do you know how many times a device | 14:48:01 |
| 15 | ID shows up in the named plaintiff -- the totality | 14:48:11 |
| 16 | of the named plaintiffs' bid request data? | 14:48:14 |
| 17 | A.  No, but I do have Exhibit 5 now to see if | 14:48:19 |
| 18 | it is one of the ▉ or not. | 14:48:22 |
| 19 | Q.  Would it surprise you to learn that there's | 14:48:27 |
| 20 | a device ID listed more than ▉ million times for | 14:48:29 |
| 21 | just the eight weeks for which Google produced named | 14:48:33 |
| 22 | plaintiff bid request data? | 14:48:37 |
| 23 | A.  No, but can you repeat how many is the | 14:48:40 |
| 24 | total number of data just so really get a number? | 14:48:41 |
| 25 | Q.  Out of the ▉ million bid requests, | 14:48:45 |

Page 165

| | | |
|---|---|---|
| 1 | question. | 14:54:06 |
| 2 | MR. LEVINE: | 14:54:08 |
| 3 | Q.  Yeah. | 14:54:10 |
| 4 | If a Google user ID is present, that user | 14:54:11 |
| 5 | ID would identify a unique device; correct? | 14:54:14 |
| 6 | A.  Given that the Google user ID's essentially | 14:54:19 |
| 7 | an encrypted version of the Biscotti ID, which is | 14:54:22 |
| 8 | associated with a web browser presumably running on | 14:54:26 |
| 9 | a device, that, I guess, is what you mean by | 14:54:28 |
| 10 | uniquely identify a device, to the extent that this | 14:54:31 |
| 11 | encrypted Biscotti ID is unique and there are no | 14:54:36 |
| 12 | other encrypted Biscotti IDs that they happen to | 14:54:40 |
| 13 | class. | 14:54:45 |
| 14 | Though, again, I'm going to repeat again | 14:54:46 |
| 15 | that, you know, it's not that you actually know what | 14:54:47 |
| 16 | device it is in the sense of here is a device, it's | 14:54:50 |
| 17 | that it corresponds to a -- | 14:54:53 |
| 18 | Q.  Unique device? | 14:54:55 |
| 19 | A.  -- unique device -- | 14:54:56 |
| 20 | Q.  Correct. | 14:54:58 |
| 21 | A.  -- if it is unique. | 14:54:58 |
| 22 | Q.  And, then, if in a subsequent bid request | 14:54:59 |
| 23 | a -- generates a different Google user ID that's | 14:55:03 |
| 24 | assigned to that same device, both IDs would be | 14:55:07 |
| 25 | unique to that same device; right? | 14:55:11 |

Page 169

CONFIDENTIAL

```
 1    are.                                          15:38:09

 2         Q.  But all the fields that Dr. Shafiq analyzed  15:38:10

 3    are there in all of the bid requests.  So I don't  15:38:12

 4    know what you're talking about.              15:38:15

 5         MR. SOMVICHIAN:  Objection.             15:38:20

 6         MR. LEVINE:                             15:38:21

 7         Q.  So what -- I mean, you're saying they're  15:38:21

 8    not reliable because they're not included, but every  15:38:24

 9    field that Professor Shafiq looked at is included in  15:38:27

10    all 4.9 million bid requests for the named   15:38:31

11    plaintiffs, so how is that not reliable?     15:38:35

12         MR. SOMVICHIAN:  Objection.  Misstates the  15:38:37

13    report.                                      15:38:38

14         THE WITNESS:  I did not say that they are not  15:38:38

15    included, I said that they are not reliable in  15:38:40

16    identifying users.  I never said that they are not  15:38:43

17    included.                                    15:38:47

18         MR. LEVINE:                             15:38:47

19         Q.  Well, what you said is each field by itself  15:38:47

20    in isolation doesn't reliably identify.      15:38:50

21         What you've never said is all the fields  15:38:53

22    that are present in all of the requests in   15:38:55

23    combination can't reliably identify, and you never  15:38:58

24    address that anywhere in your report, Dr. Psounis;  15:39:02

25    isn't that right?                            15:39:05
```

Veritext Legal Solutions
Calendar-CA@veritext.com 866-299-5127

```
 1              MR. SOMVICHIAN:  Objection.  Argumentative.    15:39:08

 2              THE WITNESS:  No, I don't think -- No, it's not  15:39:12

 3    right.                                                   15:39:14

 4              I do analyze the only combination that --       15:39:14

 5    Actually, the two experts that I am rebutting,           15:39:18

 6    essentially, I'm rebutting their reports bring up IP     15:39:24

 7    plus UA.  And I also do comment on the only argument     15:39:27

 8    that I have seen that these two experts have when it     15:39:31

 9    comes to the totality of all the fields.                 15:39:34

10              And I, again, say that the argument that        15:39:37

11    they have is incorrect.  So that's basically why I'm     15:39:39

12    saying that they cannot be used as reliable             15:39:45

13    identifiers.                                             15:39:50

14              MR. LEVINE:                                     15:39:50

15         Q.  In paragraph 66, you say there are about        15:39:51

16    250 million Google account holders in the               15:39:53

17    United States.                                           15:39:56

18              Do you see that?                                15:39:56

19         A.  I do see that.                                   15:39:57

20         Q.  Where did you get that number?                   15:39:58

21         A.  Where did I get that number.  I don't           15:40:05

22    remember.                                                15:40:07

23         Q.  Did somebody give that number to you?           15:40:07

24         A.  I don't remember if it was -- this was          15:40:21

25    probably in -- in either Dr. Wilson's or                15:40:23
```

Veritext Legal Solutions
Calendar-CA@veritext.com 866-299-5127

| | | |
|---|---|---|
| 1 | saying in this part of my report is that identity | 15:45:04 |
| 2 | graphs do not permit -- do not permit reliable | 15:45:08 |
| 3 | identification and I'm basing this on the fact -- | 15:45:15 |
| 4 | undisputed fact that they use probabilistic | 15:45:17 |
| 5 | matching, as Dr. Shafiq also mentions, which | 15:45:20 |
| 6 | basically means in practice, in layman's terms, that | 15:45:22 |
| 7 | they are not a hundred percent accurate.  Sometimes | 15:45:25 |
| 8 | they work, sometimes they don't work. | 15:45:27 |
| 9 | They may -- they may be more than | 15:45:29 |
| 10 | 50 percent accurate, I don't know.  They're not | 15:45:31 |
| 11 | completely random, otherwise they wouldn't use them, | 15:45:33 |
| 12 | but it could be very close to random. | 15:45:35 |
| 13 | Q.  Well, you don't -- you don't -- Actually, | 15:45:38 |
| 14 | in your -- in this part of your report, you don't | 15:45:40 |
| 15 | cite a single thing, do you, Dr. Psounis?  You don't | 15:45:42 |
| 16 | cite any documents, you don't cite any articles, you | 15:45:48 |
| 17 | don't cite any studies, there's nothing cited for | 15:45:51 |
| 18 | this portion of your report; correct?  It's just | 15:45:53 |
| 19 | your say-so; right? | 15:45:56 |
| 20 | A.  Me saying so is not some random person | 15:46:00 |
| 21 | saying so.  I have been working with probability and | 15:46:03 |
| 22 | probabilistic models all my adult life, since the | 15:46:07 |
| 23 | beginning of my thesis.  This is, actually, one of | 15:46:10 |
| 24 | my big expert domains. | 15:46:13 |
| 25 | And I am citing Dr. Shafiq's report where, | 15:46:16 |

Page 203

CONFIDENTIAL

| | | |
|---|---|---|
| 1 | you know, he is talking about this and where he | 15:46:21 |
| 2 | acknowledges himself that these graphs don't use | 15:46:26 |
| 3 | just deterministic, but mostly -- if you wish, | 15:46:31 |
| 4 | mostly probabilistic matching. | 15:46:33 |
| 5 | And I'm stating something which is a | 15:46:35 |
| 6 | factual matter and any expert in the world will | 15:46:38 |
| 7 | agree with what I'm saying here that has any | 15:46:40 |
| 8 | knowledge of probability. | 15:46:43 |
| 9 | You start from a position and then you | 15:46:43 |
| 10 | apply probabilistic matching so there is no way you | 15:46:47 |
| 11 | can improve your position.  The starting position is | 15:46:53 |
| 12 | what it is, then you apply a method that is | 15:46:56 |
| 13 | inherently unreliable. | 15:47:01 |
| 14 | I don't know the exact probabilities, how | 15:47:03 |
| 15 | close these identity graphs are to random guesses, | 15:47:06 |
| 16 | because we don't even know the details, and | 15:47:10 |
| 17 | Dr. Shafiq doesn't know the details either of these | 15:47:13 |
| 18 | identity graphs.  They are proprietary.  But we do | 15:47:16 |
| 19 | know that they do probabilistic matching. | 15:47:19 |
| 20 | Q.  The question I asked you was whether you | 15:47:21 |
| 21 | cited anything in support of paragraph 71 and 72 of | 15:47:23 |
| 22 | your report and the answer is no; correct? | 15:47:27 |
| 23 | A.  I cite the Dr. Shafiq's report. | 15:47:29 |
| 24 | Q.  You don't cite anything in support of your | 15:47:34 |
| 25 | opinions, you say it's every -- every expert knows | 15:47:37 |

Page 204

```
 1      that this is clear, it's been established, but you    15:47:41

 2      don't cite anything.                                  15:47:43

 3          A.  I didn't say every expert knows.  I said if  15:47:44

 4      somebody has experience like I do with probabilistic  15:47:47

 5      models matching, any kind of probabilistic models in  15:47:51

 6      the context of this type of systems, distributed      15:47:56

 7      systems.                                              15:47:59

 8          Q.  Is it this hard -- Can you just answer the    15:48:00

 9      question, do you or don't you cite anything in        15:48:01

10      support of your opinions in paragraph 71 or 72, yes   15:48:05

11      or no?                                                15:48:09

12          MR. SOMVICHIAN:  Objection.  Asked and            15:48:10

13      answered, argumentative.                              15:48:10

14          THE WITNESS:  I have already answered this.       15:48:13

15          MR. LEVINE:                                       15:48:15

16          Q.  What do you cite?                             15:48:15

17          A.  I have already answered this.  I can give     15:48:21

18      you more information.                                 15:48:23

19              If you want, you can look at my CV and look   15:48:24

20      at my expertise.                                      15:48:26

21          Q.  I'm asking you if you cite anything in        15:48:27

22      these two paragraphs as support for the words you     15:48:30

23      wrote on the page.                                    15:48:33

24              I understand that your opinion is set forth   15:48:34

25      in paragraph 71 and 72.  I'm asking you if you have   15:48:36
```

Page 205

CONFIDENTIAL

| | | |
|---|---|---|
| 1 | any evidentiary support for that that you cite in | 15:48:40 |
| 2 | your report. | 15:48:43 |
| 3 | The answer's no; correct? | 15:48:44 |
| 4 | A.  I'm only citing as a citation in these | 15:48:45 |
| 5 | paragraphs Dr. Shafiq's report.  And I'm using my | 15:48:51 |
| 6 | expert knowledge and decades long experience with | 15:48:55 |
| 7 | probabilistic models and matching to make the | 15:49:00 |
| 8 | statement I am making. | 15:49:04 |
| 9 | Q.  Yes or no, do you or don't you cite | 15:49:06 |
| 10 | anything other than paragraph 88 b. of Professor | 15:49:07 |
| 11 | Shafiq's report in these two paragraphs of your | 15:49:09 |
| 12 | report, yes or no? | 15:49:12 |
| 13 | MR. SOMVICHIAN:  Objection.  Asked and answered | 15:49:15 |
| 14 | multiple times. | 15:49:16 |
| 15 | MR. LEVINE:  Apparently not. | 15:49:17 |
| 16 | Q.  Can you answer the question, Dr. Psounis? | 15:49:21 |
| 17 | A.  I already answered the question. | 15:49:24 |
| 18 | Q.  No, you didn't. | 15:49:25 |
| 19 | Yes or no, do you cite anything other than | 15:49:26 |
| 20 | paragraph 88 b. of Professor Shafiq's report in | 15:49:28 |
| 21 | support of the opinions you're rendering in | 15:49:31 |
| 22 | paragraphs 71 and 72 of your report? | 15:49:33 |
| 23 | MR. SOMVICHIAN:  Asked and answered multiple | 15:49:36 |
| 24 | times.  The document speaks for itself.  And let's | 15:49:37 |
| 25 | move on. | 15:49:39 |

Page 206

CONFIDENTIAL

```
 1              MR. LEVINE:                              15:49:42

 2         Q.  Are you going to answer the question?     15:49:43

 3         A.  I answered already, I said that the one   15:49:44

 4    thing I cite in this section of my report is       15:49:49

 5    Dr. Shafiq's report.                               15:49:53

 6              And I also said that the basis for my    15:49:55

 7    opinion, given that the one thing I cited in this  15:50:01

 8    section of my report is Dr. Shafiq's report, is my 15:50:07

 9    decades long experience with probabilistic models. 15:50:11

10         Q.  Let's look at paragraph 88 of -- Since you 15:50:15

11    cite that, let's look at paragraph 88 --           15:50:17

12         A.  88.                                       15:50:20

13         Q.  -- b.                                     15:50:20

14         A.  My -- my paragraph 88?                    15:50:22

15         Q.  No, Professor Shafiq's paragraph 88 b.,   15:50:24

16    which you cite, which is the only thing that you   15:50:29

17    cite in this portion of your report.               15:50:31

18              All right.  So paragraph 88 b., right,   15:50:46

19    that's where we are?                               15:50:48

20         A.  I am there.                               15:50:56

21         Q.  Okay.  This is where Dr. Shafiq talks about 15:50:57

22    identity graphs; correct?  Four pages long, this   15:51:00

23    discussion; correct?                               15:51:06

24         A.  Correct.                                  15:51:06

25         Q.  Okay.  So in the paragraph b. on page 35, 15:51:07
```

Page 207

| | | |
|---|---|---|
| 1 | households; right? | 15:58:17 |
| 2 | A.  Let me refresh my memory. | 15:58:19 |
| 3 | Yes, I -- yes, I read the paragraph. | 15:58:59 |
| 4 | Q.  Okay.  And, in fact, the study is called | 15:59:03 |
| 5 | "'She'll just grab any device that's closer':  A | 15:59:04 |
| 6 | Study of Everyday Device and Account Sharing in | 15:59:07 |
| 7 | Households"; correct? | 15:59:10 |
| 8 | A.  Yes, this is what this study is called. | 15:59:16 |
| 9 | Q.  All right.  Now, in this section of your | 15:59:18 |
| 10 | report, you talk only about individual users, not | 15:59:20 |
| 11 | households. | 15:59:24 |
| 12 | Why is that? | 15:59:25 |
| 13 | A.  What do you mean in this section of my | 15:59:27 |
| 14 | report?  Which section? | 15:59:29 |
| 15 | Q.  You say "Shared devices prevent the | 15:59:31 |
| 16 | reliable identification of users from devices." | 15:59:33 |
| 17 | Do you see that heading? | 15:59:36 |
| 18 | A.  I do see that. | 15:59:37 |
| 19 | Q.  Okay.  Do shared devices prevent the | 15:59:39 |
| 20 | reliable identification of households from devices? | 15:59:41 |
| 21 | A.  I'm sorry, what was the question, again? | 15:59:47 |
| 22 | Q.  Do shared devices within a household | 15:59:49 |
| 23 | prevent the reliable identification of the household | 15:59:52 |
| 24 | from those devices if they're shared within the | 15:59:55 |
| 25 | household? | 15:59:57 |

Page 213

| | | |
|---|---|---|
| 1 | MR. SOMVICHIAN: Objection. Vague and | 15:59:58 |
| 2 | ambiguous, and incomplete hypothetical. | 15:59:58 |
| 3 | THE WITNESS: Can you rephrase it again, | 16:00:02 |
| 4 | please. Certain devices prevent the reliable | 16:00:03 |
| 5 | identification of? | 16:00:09 |
| 6 | MR. LEVINE: | 16:00:10 |
| 7 | Q. The household. | 16:00:10 |
| 8 | You do understand under California law -- | 16:00:14 |
| 9 | A. I do understand. | 16:00:16 |
| 10 | Q. -- it's the individual or household. | 16:00:17 |
| 11 | A. I know. | 16:00:19 |
| 12 | Q. You've written household out of this | 16:00:20 |
| 13 | section of your report. | 16:00:21 |
| 14 | Where do you mention household? | 16:00:22 |
| 15 | A. I don't understand what you are asking. | 16:00:27 |
| 16 | If -- I don't understand what you're asking. | 16:00:28 |
| 17 | If the issue that you have is that the | 16:00:33 |
| 18 | citation from T. Matthews, et al., refers to | 16:00:35 |
| 19 | households, is this -- then the other citations | 16:00:44 |
| 20 | don't. | 16:00:47 |
| 21 | And there is device sharing outside of a | 16:00:47 |
| 22 | single household. As a matter of fact, you know, | 16:00:51 |
| 23 | many time most of device sharing happens with | 16:00:53 |
| 24 | significant others that they are not necessarily | 16:00:58 |
| 25 | living together. It does happen, also, for those | 16:01:00 |

Page 214

| | | |
|---|---|---|
| 1 | that they live together.  But there are also others | 16:01:05 |
| 2 | that they don't live together.  So I'm not sure what | 16:01:08 |
| 3 | you're asking. | 16:01:11 |
| 4 | Q.  If the standard under California law is | 16:01:12 |
| 5 | identification or linking or whatever the -- of an | 16:01:14 |
| 6 | individual or a household -- | 16:01:17 |
| 7 | A.  Correct. | 16:01:19 |
| 8 | Q.  -- you're focusing on individuals here and | 16:01:19 |
| 9 | you're not looking at the households, why aren't you | 16:01:22 |
| 10 | looking at the households as to whether you can | 16:01:24 |
| 11 | identify the household from a shared device within | 16:01:27 |
| 12 | the household? | 16:01:30 |
| 13 | MR. SOMVICHIAN:  Same objections, vague, | 16:01:33 |
| 14 | ambiguous, incomplete. | 16:01:35 |
| 15 | THE WITNESS:  Okay.  So the essence here is the | 16:02:04 |
| 16 | following:  That certain devices prevent the | 16:02:09 |
| 17 | reliable identification of users from devices, not | 16:02:15 |
| 18 | regardless of whether these users share or do not | 16:02:18 |
| 19 | share the same household.  That's the main point I'm | 16:02:22 |
| 20 | making given your -- your -- your objection. | 16:02:25 |
| 21 | For example, in paragraph 77, I say that | 16:02:29 |
| 22 | "multiple named Plaintiffs indicated that friends or | 16:02:31 |
| 23 | family members have used their devices." | 16:02:34 |
| 24 | So I'm not only talking -- If you were to | 16:02:37 |
| 25 | assume that family members are likely to share a | 16:02:40 |

Page 215

| | | |
|---|---|---|
| 1 | household, this is definitely not the case for | 16:02:43 |
| 2 | friends. | 16:02:46 |
| 3 | So the point I'm making is, there is | 16:02:46 |
| 4 | nothing -- to your question, the issue of cell | 16:02:48 |
| 5 | devices occurs not solely between members of the | 16:02:56 |
| 6 | same household, but also between users that do not | 16:03:00 |
| 7 | share the same household. | 16:03:08 |
| 8 | MR. LEVINE: | 16:03:09 |
| 9 | Q.  What -- Well, let's see, the 2016 study is | 16:03:10 |
| 10 | entitled "[as read] A Study of Device and Account | 16:03:12 |
| 11 | Sharing in Households"; correct? | 16:03:15 |
| 12 | A.  Yes. | 16:03:17 |
| 13 | Q.  Okay.  The 2015 study is looking -- What | 16:03:18 |
| 14 | you quoted from talks about households; correct? | 16:03:27 |
| 15 | A.  Which is the 2015 study. | 16:03:31 |
| 16 | Q.  The bottom -- Paragraph 26, the portion you | 16:03:32 |
| 17 | quote from -- | 16:03:35 |
| 18 | A.  I'm sorry, 26 or 76? | 16:03:36 |
| 19 | Q.  76. | 16:03:38 |
| 20 | A.  Okay. | 16:03:38 |
| 21 | Q.  Sorry, the portion you quote from is | 16:03:39 |
| 22 | referring to -- to many people in a household; | 16:03:42 |
| 23 | correct? | 16:03:45 |
| 24 | A.  True. | 16:03:50 |
| 25 | Q.  Okay.  And, then, let's -- Then you look at | 16:03:51 |

Page 216

CONFIDENTIAL

| | | |
|---|---|---|
| 1 | the named plaintiffs and you put in the word | 16:03:52 |
| 2 | "friends," but if, in fact, you look at the | 16:03:55 |
| 3 | testimony for these three people, the only testimony | 16:03:57 |
| 4 | they have that you're citing is they shared it with | 16:04:00 |
| 5 | their family; correct? | 16:04:04 |
| 6 | A.  I don't know.  Her granddaughter, probably | 16:04:07 |
| 7 | they don't share the same household, at least not in | 16:04:09 |
| 8 | U.S.  So -- | 16:04:12 |
| 9 | Q.  And every example you give in the | 16:04:19 |
| 10 | section -- | 16:04:21 |
| 11 | MR. SOMVICHIAN:  Hold on. | 16:04:22 |
| 12 | THE WITNESS:  I'm sorry. | 16:04:22 |
| 13 | MR. SOMVICHIAN:  Go ahead. | 16:04:23 |
| 14 | THE WITNESS:  Should I continue? | 16:04:25 |
| 15 | Because we are going one by one through all | 16:04:26 |
| 16 | the citations that I have.  Let's just do a thorough | 16:04:28 |
| 17 | search; right? | 16:04:31 |
| 18 | So there is another one that I cite.  It's | 16:04:32 |
| 19 | called "Among our key findings," let me see, | 16:04:35 |
| 20 | "Privacy threats in intimate relationships," | 16:04:38 |
| 21 | "devices are not personal," are not used by one | 16:04:41 |
| 22 | person only, "abundant research demonstrates this is | 16:04:56 |
| 23 | often not the case." | 16:05:28 |
| 24 | There is another study that's called | 16:05:36 |
| 25 | "Prevalence of Cell Phone Sharing."  Another one is | 16:05:38 |

Page 217

| | | |
|---|---|---|
| 1 | household. | 16:35:02 |
| 2 | Now, if these two people in the household, | 16:35:03 |
| 3 | the husband and the wife, share these cars, they can | 16:35:04 |
| 4 | use any of the two cars.  If you observe which car | 16:35:08 |
| 5 | leaves the house, you have no idea about whether | 16:35:12 |
| 6 | it's the husband or the wife. | 16:35:15 |
| 7 | If you consider an IP address like a VPN | 16:35:23 |
| 8 | server, IP address, you can see the value of the IP | 16:35:27 |
| 9 | address of the VPN server, you don't know which of | 16:35:30 |
| 10 | all the possible employees corresponds to whatever | 16:35:34 |
| 11 | RTB bid request you are looking at with this IP | 16:35:40 |
| 12 | address even if it's not truncate -- truncated. | 16:35:42 |
| 13 | Q.  You don't do any calculations, either by | 16:35:45 |
| 14 | individual data field or for all the fields in the | 16:35:48 |
| 15 | bid requests, to calculate how many entry bits -- | 16:35:51 |
| 16 | entropy bits are in each field or the bid request as | 16:35:54 |
| 17 | a whole; correct? | 16:35:57 |
| 18 | A.  Correct, I did not do any calculations. | 16:36:02 |
| 19 | Q.  And you don't -- you don't respond to the | 16:36:04 |
| 20 | internal Google documents in which Google itself is | 16:36:12 |
| 21 | using 32 bits of entropy as an identifiability | 16:36:16 |
| 22 | threshold; correct? | 16:36:22 |
| 23 | A.  They are also wrong. | 16:36:26 |
| 24 | Q.  Okay.  So when Google -- | 16:36:26 |
| 25 | A.  And let me clarify, they are also -- | 16:36:28 |

Page 229

CONFIDENTIAL

```
 1          A.  There is no specific identifier specified    16:39:45

 2     in there, so that's fine.  It's a fine statement in   16:39:47

 3     the absence of a specific identifier.                 16:39:49

 4          Q.  Are you aware that Google specifically       16:39:52

 5     recommends using entropy to assess RTB privacy        16:39:54

 6     protections?                                          16:39:57

 7          MR. SOMVICHIAN:  Objection.  Vague.              16:39:59

 8          THE WITNESS:  I am not aware of whether they're  16:40:02

 9     using it or not.  If they are, this is a very harsh,  16:40:05

10     inaccurate, first order analysis, let me put it this  16:40:10

11     way.                                                  16:40:16

12          MR. LEVINE:                                      16:40:16

13          Q.  And you --                                   16:40:18

14          A.  Because you --                               16:40:18

15          Q.  You haven't done any calculations, again,    16:40:19

16     on any of the fields, so you have no idea sitting     16:40:22

17     here today whether any field by itself exceeds        16:40:25

18     32 bits or whether the combination of all the         16:40:29

19     fields, which is the ██ fields, that Professor        16:40:33

20     Shafiq focuses on collectively exceed 32 entropy      16:40:36

21     bits in each and every one of the ██ billion --       16:40:41

22     million named plaintiffs' bid data that he looked     16:40:46

23     at; correct?                                          16:40:52

24          MR. SOMVICHIAN:  Asked and answered.             16:40:53

25          THE WITNESS:  I think I've said already I        16:40:54
```

Page 233

1          The plaintiffs don't either.  We'll          17:19:45

2     consider the deposition concluded.               17:19:47

3          We'd like to mark the transcript            17:19:49

4     confidential pursuant to the protective order and  17:19:51

5     pursuant to -- or subject to further identification  17:19:54

6     of confidentiality designations by Google, but    17:19:57

7     otherwise I think we're done.                      17:20:00

8        MR. LEVINE:  We're done.  Thank you very much.  17:20:03

9        THE VIDEOGRAPHER:  This marks the conclusion of  17:20:05

10    today's deposition.  We're going off the record.   17:20:06

11    The time is 5:20 p.m.                              17:20:08

12          (The proceedings concluded at 5:20 p.m.)

13                    *****

14

15

16

17

18

19

20

21

22

23

24

25

Veritext Legal Solutions
Calendar-CA@veritext.com 866-299-5127

1      STATE OF CALIFORNIA   )

                          ) ss.

2      COUNTY OF LOS ANGELES )

3

4        I, MARY K. MEDLEY, CSR NO. 9557, in and for the

5      State of California, do hereby certify:

6        That prior to being examined, the witness named

7      in the foregoing deposition was by me duly sworn to

8      testify the truth, the whole truth, and nothing but

9      the truth;

10        That said deposition was taken down by me in

11      shorthand at the time and place therein named and

12      thereafter reduced to typewriting under my

13      direction, and the same is a true, correct, and

14      complete transcript of said proceedings;

15        That if the foregoing pertains to the original

16      transcript of a deposition in a Federal Case, before

17      completion of the proceedings, review of the

18      transcript { X } was {  }  was not required.

19        I further certify that I am not interested in

20      the event of the action.

21      Witness my hand this 18th day of October, 2023.

22

23

                      CSR No. 9557

24                      Certified Shorthand Reporter

25                      State of California

                                   Page 247

No. 6151420

Re:     Deposition of **Konstantinos Psounis, Ph. D.**
        Date: October 16, 2023
        Case: *In re Google RTB Consumer Privacy Litigation*
        Return to: Veritext Legal Solutions

| PAGE(S) | LINE(S) | CORRECTION | REASON |
|---|---|---|---|
| 10 | 8 | Change "first" to "last" | Transcription error |
| 12 | 25 | Change "recall" to "repeat" | Transcription error |
| 36 | 2 | Change "will" to "wish" | Transcription error |
| 38 | 22 | Change "since" to "such" | Transcription error |
| 65 | 4 | Change "citing" to "cite" | Transcription error |
| 67 | 5 | Change "such" to "enough" | Transcription error |
| 69 | 2 | Change "Let" to "Let's" | Transcription error |
| 69 | 23 | Change "evidence" to "average" | Transcription error |
| 72 | 12 | Change "fingerprint" to "fingerprinting" | Transcription error |
| 75 | 19 | Change "Go" to "Let me go" | Transcription error |
| 80 | 2 | Change "those" to "as" | Transcription error |
| 80 | 5 | Replace "the HPT" with "DHCP" | Transcription error |
| 80 | 8 | Add "only" before "I have" | Transcription error |
| 85 | 1 | Change "not well defined anyway. That's" to "not well defined anyway - - not" | Transcription error |
| 86 | 11 | Change "and so" to "to show" | Transcription error |
| 90 | 6 | Change "one and one" to "one-to-one" | Transcription error |
| 91 | 14 | Change "blind" to "run" | Transcription error |
| 101 | 25 | Add "in" before "particular" | Transcription error |

No. 6151420

Re:    Deposition of **Konstantinos Psounis, Ph. D.**
       Date: October 16, 2023
       Case: *In re Google RTB Consumer Privacy Litigation*
       Return to: Veritext Legal Solutions

| PAGE(S) | LINE(S) | CORRECTION | REASON |
|---------|---------|------------|--------|
| 115 | 22 | Change "Referral" to "Referrer" | Transcription error |
| 116 | 2 | Change "reverting" to "referring" | Transcription error |
| 129 | 5 | Change "but it's server" to "that it's further" | Transcription error |
| 129 | 8 | Change "serve" to "sent" | Transcription error |
| 130 | 19 | Change "opine" to "opined" | Transcription error |
| 130 | 25 | Change "each" to "which" | Transcription error |
| 131 | 7 | Change "an" to "a" | Transcription error |
| 131 | 8 | Change "irrelevant" to "relevant" | Transcription error |
| 133 | 11 | Change "I" to "I'm" | Transcription error |
| 134 | 10 | Change "basically" to "is basically" | Transcription error |
| 134 | 21 | Change "criticize" to "criticizing" | Transcription error |
| 145 | 14 | Change "this" to "these" | Transcription error |
| 149 | 8 | Add "a" before "specific" | Transcription error |
| 153 | 7 | Change "address" to "ads" | Transcription error |
| 158 | 13 | Change "user location" to "isolation" | Transcription error |
| 158 | 16 | Change "can't" to "can" | Transcription error |
| 161 | 16 | Change "and" to "as" | Transcription error |
| 161 | 17 | Change "explain" to "explained" | Transcription error |
| 165 | 24 | Change "so" to "to" | Transcription error |

No. 6151420

Re:     Deposition of **Konstantinos Psounis, Ph. D.**
        Date: October 16, 2023
        Case: *In re Google RTB Consumer Privacy Litigation*
        Return to: Veritext Legal Solutions

| PAGE(S) | LINE(S) | CORRECTION | REASON |
|---------|---------|------------|--------|
| 183 | 9 | Change "any" to "my" | Transcription error |
| 184 | 1 | Change "form on" to "formed an" | Transcription error |
| 188 | 11 | Change "propose" to "proposal" | Transcription error |
| 193 | 6 | Add comma after "important" | Typographical error |
| 195 | 18 | Add "a" before "reliable" | Transcription error |
| 196 | 6 | Change "link ups" to "linkage" | Transcription error |
| 214 | 23 | Change "time" to "times" | Transcription error |
| 215 | 17 | Change "not" to "now" | Transcription error |
| 216 | 4 | Change "cell" to "shared" | Transcription error |
| 218 | 18 | Change "cell" to "shared" | Transcription error |
| 225 | 9 | Change "the" to "a" | Transcription error |
| 228 | 16 | Add "the" before "number" | Transcription error |
| 228 | 24 | Change "To do the part" to "two to the power" | Transcription error |
| 228 | 25 | Change "being of" to "bigger than" | Transcription error |
| 230 | 22 | Change "in" to "if" | Transcription error |
| 232 | 10 | Change "two" to "to" | Typographical error |
| 232 | 17 | Add "company" after "data" | Transcription error |
| 238 | 15 | Change "this" to "there" | Transcription error |
| 242 | 8 | Change "(unintelligible)" to "GDPR" | Transcription error |

**No. 6151420**
Re:     Deposition of **Konstantinos Psounis, Ph. D.**
        Date: October 16, 2023
        Case: *In re Google RTB Consumer Privacy Litigation*
        Return to: Veritext Legal Solutions

| PAGE(S) | LINE(S) | CORRECTION | REASON |
|---------|---------|------------|--------|
| 243 | 13 | Change "(unintelligible)" to "FLoC" | Transcription error |

294238986

**No. 6151420**

Re:     Deposition of **Konstantinos Psounis, Ph. D.**

Date: October 16, 2023

Case: *In re Google RTB Consumer Privacy Litigation*

Return to: Veritext Legal Solutions

---

ACKNOWLEDGMENT OF DEPONENT

I, Konstantinos Psounis, Ph. D., do hereby acknowledge that I have read and examined the foregoing testimony, and the same is a true, correct and complete transcription of the testimony given by me and any corrections appear on the attached Errata sheet signed by me.

Date: November 16, 2023 _____     Signature: Konstantinos Psounis _____

---