# MTN FOR LEAVE TO FILE SUPP SHAFIQ REPORT

# Redacted Version of Document Sought to be Sealed

**BLEICHMAR FONTI & AULD LLP**
Lesley Weaver (Cal. Bar No.191305)
Angelica M. Ornelas (Cal. Bar No. 285929)
Joshua D. Samra (Cal. Bar No. 313050)
555 12th Street, Suite 1600
Oakland, CA 94607
Tel.: (415) 445-4003
Fax: (415) 445-4020
lweaver@bfalaw.com
aornelas@bfalaw.com
jsamra@bfalaw.com

**SIMMONS HANLY CONROY LLC**
Jason 'Jay' Barnes (admitted *pro hac vice*)
An Truong (admitted *pro hac vice*)
Eric Johnson (admitted *pro hac vice*)
112 Madison Avenue, 7th Floor
New York, NY 10016
Tel.: (212) 784-6400
Fax: (212) 213-5949
jaybarnes@simmonsfirm.com
atruong@simmonsfirm.com
ejohnson@simmonsfirm.com

*Counsel for Plaintiffs*

**DiCELLO LEVITT GUTZLER LLC**
David A. Straite (admitted *pro hac vice*)
Corban Rhodes (admitted *pro hac vice*)
One Grand Central Place
69 East 42nd Street, Suite 2400
New York, NY 10165
Tel.: (646) 933-1000
dstraite@dicellolevitt.com
crhodes@dicellolevitt.com

Amy E. Keller (admitted *pro hac vice*)
Adam Prom (admitted *pro hac vice*)
Sharon Cruz (admitted *pro hac vice*)
Ten North Dearborn St., Sixth Floor
Chicago, IL 60602
Tel.: (312) 214-7900
akeller@dicellolevitt.com
aprom@dicellolevitt.com
scruz@dicellolevitt.com

## IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF CALIFORNIA – OAKLAND DIVISION

| | |
|---|---|
| PATRICK CALHOUN, et al., on behalf of themselves and all others similarly situated, | Case No. 4:20-cv-5146-YGR-SVK |
| Plaintiffs, | MOTION FOR LEAVE TO SUPPLEMENT PLAINTIFFS' APRIL 15, 2022 RESPONSE TO GOOGLE'S OBJECTIONS TO THE SPECIAL MASTER'S SEALED RECOMMENDATIONS AND ORDER DATED APRIL 4, 2022 (DKT NO. 604) BASED ON NEWLY PRODUCED EVIDENCE |
| v. | |
| GOOGLE LLC, | |
| Defendant. | Fed. R. Civ. P. 53(f)(2) |
| | Referral:          Hon. Susan van Keulen, USMJ |
| | Special Master:   Douglas A. Brush |
| | Hearing Set:      May 3, 2022, 2:00pm PT |

**UNREDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

# TABLE OF CONTENTS

I.   Introduction and Summary of Relief Requested....................................................................1

II.  Legal Standard ........................................................................................................................2

III. Argument:  The Court Should Admit the New Evidence .......................................................2

    A.   The New Evidence is Highly Relevant and Will Assist at the Hearing...................2

    B.   Good Cause Exists to Admit the New Evidence.......................................................4

        1.   January 2021: Google falsely told Plaintiffs in writing that "Google does not have any logs showing when a user is not synced." ......................................................................... 6

        2.   February and March 2021: Google Secured a Protective Order from this Court Through False Statements ....................... 7

        3.   Google Opposed Class Certification by Making False Statements Regarding the Sync Logs ........................................... 8

        4.   Google Gets Caught Red-Handed -- TWICE.......................................... 10

        5.   The New Evidence Supports Plaintiffs' Request for Full Preservation..... 12

IV.  CONCLUSION......................................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Goodwin v. John*,
   No. 2:19-CV-01642-APG-DJA, 2020 WL 6947690 (D. Nev. Sept. 21, 2020) ........................ 2

*Optional Cap., Inc. v. Kim*,
   No. CV 04-3866 ABS PLAX, 2008 WL 2986660 (C.D. Cal. Aug. 1, 2008),
   *aff'd*, 414 F. App'x 12 (9th Cir. 2011); ......................................................................................... 2

**Other Authorities**

Fed. R. Civ. P. 23(f) ........................................................................................................................... 2

Fed. R. Civ. P. 53(f)(1) ...................................................................................................................... 2

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**I.    INTRODUCTION AND SUMMARY OF RELIEF REQUESTED**

Plaintiffs respectfully seek leave to enter the attached May 2, 2022 Supplemental Report of Dr. Zubair Shafiq, associate professor of computer science at the University of California, Davis (the "Supplemental Shafiq Report"), into the record, and for the Court to consider the contents therein when evaluating Plaintiffs' objections and motion to modify the Special Master's April 4, 2022 Sealed Report and Recommendation ("R&R") regarding a preservation plan for the data logs.

Earlier today, May 2, 2022, the Court issued an order directing the parties, in advance of tomorrow's discovery hearing, to be prepared to address how the data log preservation plan effects support for (or challenges to) class certification, liability and damages, and whether any specific alternatives ameliorate any identified issues. *See* Order re May 3, 2022 Discovery Hearing (*Calhoun* Dkt. No. 639). The Supplemental Shafiq Report will assist because it provides the Court with a summary of critical new evidence just produced by Google that bears directly on the Court's evaluation of a data log preservation plan.

Specifically, as directed by the Special Master, Google produced data related to Dr. Shafiq's test accounts that were configured to probe precisely how Google tracks class members when using Chrome while not synched, and in in which logs such data is stored. This new evidence conclusively proves that Google tracks not-synced Chrome use in real time, in granular detail, in multiple logs. And good cause exists to admit the new evidence because Google did not produce it until April 22, 2022, a full week after Plaintiffs' deadline to file objections to the R&R. ***The new evidence also proves that Google's prior representations to the Court and to Plaintiffs regarding its inability to track not-synched Chrome usage were false and misleading***.

Accompanying this motion is a joint declaration of David Straite, Lesley Weaver and Jay Barnes (the "Joint Declaration") briefly outlining the background of Google's prior false statements made regarding the sync signals, to help establish good cause for granting this motion. Attached as **Exhibit A** to the Joint Declaration is the Supplemental Shafiq Report explaining the April 22, 2022 production of test data from Google and why it is so important to the question of data log preservation.

1  **II.    LEGAL STANDARD**

2  When hearing objections to a Special Master order, report or recommendations, the Court

3  may receive evidence. Fed. R. Civ. P. 53(f)(1); *see also* Advisory Committee Notes to 2003

4  Amendments to Subdivision (f) ("The master should provide all portions of the record preserved

5  under Rule 53(b)(2)(C) that the master deems relevant to the report. The parties may designate

6  additional materials from the record, and may seek permission to supplement the record with

7  evidence."). Where new, material evidence has been discovered after an issue has been presented

8  to the Court for determination, "the appropriate procedure [is] to seek leave of court to file

9  supplemental briefing, a request far less extraordinary than reconsideration based upon evidence

10 known but not presented prior to the decision." *Optional Cap., Inc. v. Kim*, No. CV 04-3866 ABS

11 PLAX, 2008 WL 2986660, at *3 (C.D. Cal. Aug. 1, 2008), *aff'd*, 414 F. App'x 12 (9th Cir. 2011);

12 *see also Goodwin v. John*, No. 2:19-CV-01642-APG-DJA, 2020 WL 6947690, at *1 (D. Nev.

13 Sept. 21, 2020) (discussing the court's granting of "leave to file supplemental briefs so [the parties]

14 could address any new evidence obtained in discovery while the motion was pending.").

15 **III.    ARGUMENT: THE COURT SHOULD ADMIT THE NEW EVIDENCE**

16 **A.    The New Evidence is Highly Relevant and Will Assist at the Hearing**

17 As the prior briefing makes clear, Plaintiffs object to the Special Master's recommendation

18 that the Court relieve Google of its ordinary course obligation to preserve all relevant data logs.

19 The Special Master identified a limited number of relevant logs ███ from which Google should

20 preserve data, a recommendation that (with the addition of ███ additional logs) Plaintiffs can

21 accept. But the Special Master did not recommend preservation at all – instead recommending that

22 the Court permit Google to take a small sample from the ███ logs, which Plaintiffs opposed in their

23 objections on April 15, 2022, see Dkt. Nos. 622 (public redacted) and 621-3 (sealed), using

24 evidence available at that time.

25 Sampling as proposed by the Special Master is not workable for many reasons, most

26 importantly because the putative class only includes Chrome users who do ***not*** sync their browsers

27 with their Google accounts at the time of the collection; but the R&R, if accepted, ***would allow***

28 ***Google to discard the most useful evidence of class membership – both retroactively, and***

*prospectively* – two months after Google told this Court that it was willing to (and had already started to) preserve certain sync information unless the Court were to order otherwise.  Google said:

> "Barring any contrary instructions from this Court or Special Master Brush, Google intends to begin preservation of the following data to not waste any more time while the parties are at impasse . . .
>
> > 2.     Information showing whether user had sync enabled at the time of the log entry (including ████████████) . . .
>
> . . . In addition, Google also proposes to preserve all the Gaia IDs stored in ██████: ChromeSync for inferred U.S. residents (based on IP address associated with user activity), where ████████████████████████ in ██████: ChromeSync is set to ██████ . . .

*See* Joint Discovery Dispute Chart dated March 11, 2022, at Dispute 2.1 (Google's Position). A week later, with respect to a different discovery dispute (Dispute RFP No. 92), the Court issued an order requiring the preservation of at least two not-synced signals in their entirety.  *See* Court's Sealed Discovery Order dated March 18, 2022, Dkt. No. 579-2, Ex. 2 at Dispute RFP No. 92 (adopting Google's proposal to preserve the "Signed in But Not Synced Signal" and the "Disable Sync Signal").

Google's April 22, 2022 production of new data (and Dr. Shafiq's May 2, 2022 summary thereof) followed the Special Master's order that Google conduct "second round" searches of all relevant logs for data associated with the Named Plaintiffs and associated with three test accounts set up by Plaintiffs' expert Dr. Shafiq. Supp. Shafiq Report ¶ 4. The test accounts were used to test how Google receives, processes and stores Chrome web browsing sessions in various configurations – including synced, not synced, and formerly synced. Google produced the first batch of results of these searches to Plaintiffs on April 22, 2022 and the results were analyzed during the week of April 25, 2022.  Supp. Shafiq Report ¶ 8.

The results are undeniable: as detailed in the Supplemental Shafiq Report and below, the data confirmed that Google not only recorded whether Dr. Shafiq's test accounts were synced, but also recorded (1) when a test account was *not* synced; (2) when a test account's setting was changed from sync to not sync; and (3) the precise timing of test accounts' sync status.  Supp. Shafiq Report

¶ 11. Google's April 22, 2022 production also revealed precise logs and fields where not-sync status is recorded, and how that signal would appear – for example, "sync_feature_enabled = false." Supp. Shafiq Report ¶ 12.

Google's new evidence and Dr. Shafiq's summary thereof is thus the strongest evidence yet supporting full preservation: it provides the first evidence directly confirming how the sync signals are recorded and showing the correlation between Chrome usage on the user's computing device and Google's internal log architecture, using real-time test data. It also confirms the existence of additional not-synced signals that Google did not mention in its Court submissions, and also shows which logs contain these signals. This new evidence will thus better inform what must be preserved for this litigation.

**B.    Good Cause Exists to Admit the New Evidence**

Good cause exists for the Court to accept the late, non-duplicative evidence given that Google did not produce it until a full week *after* the April 15, 2022 deadline for Plaintiffs to file objections to the R&R. Supp. Shafiq Report ¶ 6.  It was thus unavailable to Plaintiffs on April 15, 2022 – *and unavailable to the Special Master when he wrote his recommendations*.  It was then reviewed by Plaintiffs' counsel and by Dr. Shafiq during the week of April 25, 2022.  Supp. Shafiq Report ¶ 8.

Google's April 22, 2022 production also finally proves the ugly extent of Google's strategic misdirection on the sync log issue. Google falsely represented to the Court early in this case that sync traffic logs do not reveal whether a Chrome user is *not* synced, only whether she is synced. But Plaintiffs' own investigation and Google's last-minute admissions revealed that Google's representations were false; in fact many not-synced signals exist. In addition, at the direction of the Special Master, Google also recently produced log field descriptions and annotations that identified yet more signals collected from Chrome that may reveal sync status. Using this discovery, Plaintiffs then argued in their April 15, 2022 objections that full preservation of the data logs is required, particularly for the logs that may record sync status.

Google's prior representations were always suspect, even before Google started to correct some of them. The Chrome browser is spyware. Google's ability to collect the most intimate details

1   of our online lives and ability to make frighteningly accurate inferences about our beliefs, thoughts

2   and preferences is not seriously contested in this case. Indeed so perversive is the data collection

3   that Google's counsel claims preserving just a slice of that data for litigation would be unduly

4   burdensome (even for the largest tech company in history). Google is also able to process and

5   associate this data with the individuals, households and devices from whom the data was taken,

6   using Orwellian-named tools like ████████████ and █████████ and ████████

7          The data sent by Chrome to Google includes the content of users' communications; the

8   exact second those communications are made; how many pixels your monitor has; which version

9   of the browser you are using; the exact device you are using; your operating system; your exact

10  location using IP address, longitude and latitude; and your account settings; and information that

11  uniquely identifies you, your device, and your household. In the browser's "omnibar," when

12  Chrome's default settings are not changed, every keystroke, every URL and every search is

13  collected in real time as it is typed *even if you reconsider and never hit enter*. From this

14  information, Google derives detailed dossiers that it accesses and analyzes in ████████ every

15  time a user sends a communication on a page where Google has an ad opportunity. And yet Google

16  originally told the Court that the one thing it *doesn't* know is whether the browser is not synced.

17         Discovery slowly revealed that Google's representations were false. Although the Special

18  Master "should provide all portions of the record preserved under Rule 53(b)(2)(C) that the master

19  deems relevant to the report," Advisory Committee Notes to 2003 Amendments to Subsection (f),

20  Plaintiffs are in the dark as to what factual record the Court will consider when evaluating Plaintiffs'

21  objections. It is thus appropriate to briefly outline Google' false statements in the record regarding

22  its ability to discern sync status of Chrome users based on data. These facts are included here to

23  establish good cause for today's motion, in light of the April 22, 2022 production from Google

24  conclusively establishing the falsity of each of these representations:

25

26

27

28

1.    **January 2021: Google falsely told Plaintiffs <u>in writing</u> that "Google does not have any logs showing when a user is not synced."**

On January 20, 2021, six months after the complaint was filed,[1] Google first informed Plaintiffs that it had not been preserving data logs beyond the normal retention periods, see Joint Decl. ¶ 5, in violation of explicit, negotiated and Court-ordered obligations to do so under the ESI Protocol. Plaintiffs immediately asked if any of these data sources included sync signals, and on January 29, 2021, Google explicitly represented in writing that "Google does not have any logs showing when a user is not synced." Joint Decl. ¶ 7 and Ex. B thereto (letter from Google Counsel dated Jan. 29, 2021, at 5). Google also stated that sync traffic logs only "show sync traffic Google received from users who had sync enabled." *Id.*

Late discovery has proven Google's representations to Plaintiffs in January 2021 to be undeniably false and misleading. Google actually has several logs "showing when a user is not synced," including specifically the following:

- First, Google maintains ███ sync server logs that record when a Chrome user is not synced: ████████████ and ███████████.

- Second, the ██████ data source has columns with ██ columns that record not-synced status: ███████████ and ████████████████████.

- Third, the Zwieback ████ data source has columns that record not-synced status: ████████████, ████████████████, ████████████.

- Fourth, certain Biscotti-keyed and Zwieback logs record multiple signals from which Google can conclusively derive that a Chrome user is signed-out, *and thus, by definition, not synced*.

---

[1]  As Plaintiffs only learned later in the case, Google's decision to wait until precisely six months was spectacularly convenient: many of the critical data logs in this case have █████ retention periods, meaning, vast quantities of the Named Plaintiff data tied to "unauthenticated" identifiers were deleted before the Court had an opportunity to weigh in.

1

2.       **February and March 2021: Google Secured a Protective Order from**
2

         **this Court Through False Statements**

3          Plaintiffs rejected Google's January 2021 request to be relieved of its obligations to comply

4    with the ESI Protocol. In response, on February 5, 2021, Google filed a formal motion for protective

5    order. Dkt. No. 102.  Google provided declarations detailing the ostensible burdens associated with

6    preserving Analytics Logs, Display Ads Logs and Activity Logs, but omitted ***sync server logs*** from

7    discussion, and never mentioned whether any fields in any other logs record sync status. In

8    response, among other things, Plaintiffs noted the conspicuous absence of sync logs in the motion,

9    stating that this "omission is alarming[.]" Dkt. 118 at 2.  On March 1, 2021, Google filed its Reply,

10   clarifying that its motion had "excluded from its estimates … Chrome sync logs, ***which show sync***

11   ***traffic only for users that have sync enabled***." Dkt. 120 at 4 (emphasis added).

12         On March 5, 2021, at the hearing on Google's motion, Google counsel repeated the false

13   claim that "the sync traffic logs will not show data for that user who has not enabled sync." Hrg.

14   Tr. 14:13-20. In response to the Court's question whether Google could "identify the number of

15   unsynced users who were using chrome … for an identified period of time," Google told the Court,

16   "that is not a figure that's readily available to Google." *Id*. at 23:22-24:9.

17         These statements were false because the ==sync traffic logs do in fact show data for not-synced==

18   ==users==, specifically:

19              •    ==First, the sync server logs contain a signal that identifies that a user is==

20                   =="Signed In But Not Consented for Sync" (also called== ███████ ==by Google)==

21                   ==and specific times when the user is not synced.== Google first admitted to this

22                   ███████ ==signal== at a deposition a few months ago (see Section 4 below) and

23                   quietly disclosed it to the Court on March 11, 2022 in the joint discovery

24                   dispute chart (discussed above), without clarifying that prior representations

25                   were no longer accurate. The Court then ordered the preservation of this very

26                   signal on March 18, 2022 when resolving Dispute RFP No. 92, likely

27                   without knowing that the existence of ==the== ███ ==signal== flatly contradicted

28                   Google's earlier representations to the Court.

1    • Second, the sync server logs contain a ▮▮▮▮ signal that identifies

2    that a user who was previously synced has taken an action to Disable Sync,

3    a decision that results in the user moving to a Signed Out or "Basic browser"

4    state.  As with the ▮▮▮ signal, the Court on March 18, 2022 accepted

5    Google's offer to preserve the ▮▮▮▮ signal (also in its resolution of

6    Dispute RFP No. 92), but again likely without knowing that Google's quiet

7    admission of the existence of this signal contradicted its earlier

8    representations to the Court the year before.

9    Google also failed to inform that Court that multiple fields within the very Display Ads and

10   Analytics logs identified in its motion contained not-synced signals, including:

11   • In the ▮▮▮▮ data source, there are at least ▮ fields that we now

12   know record not-synced status: (1) ▮▮▮▮▮ in

13   ▮▮▮▮; and (2) ▮▮▮▮▮.

14   • In the Zwieback▮▮ data source, there are at least ▮ fields that record

15   data from which we can infer that a Chrome user is not synced: (1)

16   ▮▮▮▮; (2) ▮▮▮▮; and (3)

17   ▮▮▮▮. See Joint Decl. ¶ 8 and Ex. C thereto

18   (GOOG-CALH-01170421).

19   • There are also multiple Biscotti-keyed and Zwieback-keyed logs with fields

20   that key data to the Biscotti and Zwieback identifiers, both of which are

21   *signed-out* identifiers.  Because signed-out Chrome users are not synced (by

22   definition), any Biscotti-keyed and Zwieback-keyed data is not synced data,

23   a fact Google failed to disclose to the Court in its motion for protective order

24   and during oral argument.

25   3.    **Google Opposed Class Certification by Making False Statements**

26   **Regarding the Sync Logs**

27   When Plaintiffs moved for class certification on October 14, 2021, they still naïvely thought

28   Google had been truthful on January 21, 2021 when it told Plaintiffs: "*Google does not have any*

1  ==logs showing when a user is not synced."== So when Plaintiffs' expert Richard Smith independently

2  tested the Chrome browser and observed no fewer than ▮▮▮ signals[2] that suggested Google could

3  track not-synced status, he naturally suggested that Google could easily *start* to record the signals

4  somewhere and use that record to identify class members prospectively. Specifically, he identified

5  "a specific signal that Chrome sends to the Google Sync Service to indicate to Google that the user

6  is not Synced and which is accompanied by the specific Google account to which the user has

7  signed-in – for example, an email address." Dkt. 339-22 at 36, ¶ 113. Smith further stated that, "*it*

8  *would be straightforward for Google to keep a record of these incoming signals* attached to

9  specific account holders if Google has not done so already." *Id*. ¶ 114 (emphasis added).

10      One of the signals identified by Smith is the ▮▮▮▮▮▮▮▮ signal and Smith

11  testified that it indicates "[w]hether the client has full sync (or, sync the feature) enabled or not."

12  *Id*. ¶¶ 139-40. Smith observed that the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮

13  ▮▮▮▮▮▮▮▮ *Id*. ¶ 144. Smith then observed that ▮▮▮▮▮▮▮

14  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

15  ▮▮▮▮ *Id*. ¶ 149.  He then concluded that "it would be straightforward" for Google to *start*

16  preserving these signals, unaware ==that Google was already preserving them (and more).== Smith was

17  supported by Dr. Shafiq who opined that it would be technically straightforward for Google to start

18  preserving the signals observed by Smith – and identified ▮▮▮▮▮ as a location for some storage.

19      On December 22, 2022, Google opposed the motion for class certification, but never

20  disclosed that ==the signals independently discovered by Plaintiffs were in fact already being recorded==

21  ==in the logs.== Google also failed to disclose that ==Google was actively concealing yet more sync==

22  ==signals.==  For example, Google offered the Declaration of Tim Schumann, Dkt. 430-16, to rebut Dr.

23  Shafiq's opinion regarding the ease of preserving the sync signals.  Schumann claimed that "==Dr.==

24  ==Shafiq's proposed approaches will fail to identify Chrome users who did not enable sync or who==

25  ==disabled sync.==" *Id*. ¶ 2. Schumann stated that Shafiq's approach would fail because it "==assumes that==

26  ▮▮▮▮▮▮▮ [in the ▮▮▮▮ database] will only be present … if the user has enabled Sync=="

27  [2]  "==sync_feature_enabled==", ▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮ ▮▮▮▮ ==and==

28  ▮▮▮▮▮▮▮

1    and "[t]hat is a flawed assumption [because] the ███████ value … will also be present

2    for a user who signed into the Chrome browser on their desktop and signed into a Google site (like

3    Gmail) but did not have sync enabled." *Id.* ¶ 5. Schumann makes the same statement for Google's

4    Takeout product. *Id.* ¶ 6. Schumann further explains that "the 'Chrome Sync' record can exist for

5    a user" who is signed in "but never enabled sync" but that "the 'access log activity' records are

6    only retained for less than ████." *Id.* ¶ 6. The Schumann Declaration thus takes aim at Plaintiffs'

7    suggestions based on public information, but failed to disclose the existence of other signals that

8    exist when a user disables sync – and thus transitioned to a basic browser or signed out mode.

9               **4.    Google Gets Caught Red-Handed -- TWICE**

10          There were two times over the past few months where Google partially – and apparently

11   accidentally – disclosed the truth regarding its ability to record not-synced status.

12          First, on January 13, 2022, Google senior engineer Tim Schumann testified at his deposition

13   in Switzerland that Chrome regularly sends a signal to the Sync Server for users who are "Signed

14   In But Not Consented for Sync." Joint Decl. ¶ 9 and Ex. D thereto (Schumann Dep. Tr.) at 38:7-

15   25. These signals include the ████ signal discussed above, as well as "sync feature not enabled."

16   *Id.* at 58:1-8; 125:10-16. Google admitted through Schumann's testimony that these direct Not

17   Synced signals are tied to Google Account information and stored for approximately ████ in

18   Sync server logs (or "sync traffic logs" or "gwslogs") before they are "destroyed." *Id.* 131:18-

19   132:9. Google has also created ███ pipelines to send the Not Synced signals to other Google

20   Account-keyed services. The first pipeline goes to a storage system called ██████ where Not

21   Synced signals are stored for ████ before they are "auto deleted." *Id.* 189:6-10; Exs. 10-15. The

22   second pipeline is called the ██████████, which sends Not Synced signals to a

23   database that stores aggregate information. However, before the data is aggregated, it is sent to an

24   "intermediate table" called █████████ that stores Not Synced status alongside

25   Google Account and device identifiers for an ████████ period of time. *Id.* 129:18-130:20; Ex.

26   7. Schumann further admitted that compiling a list of Not Synced users would "be quick" and

27   involve "[m]aybe a day or two of work" related to the approval process to compile such a list. *Id.*

28   94:25-97:14; Depo Ex. 4. That is a shocking admission which Google has yet to reveal to the Court:

| What Google Told the Court on March 5, 2021 | What Google's Senior Engineer Admitted at Deposition on January 13, 2022 |
|---|---|
| **Court**: Can Google "identify the number of unsynced users who were using chrome … for an identified period of time?"<br><br>**Google**: "that is not a figure that's readily available to Google."<br><br>Hr'g Tr. 23:22-24:9 | **Mr. Schumann**: compiling a list of Not Synced users would "be quick" and involve "[m]aybe a day or two of work" related to the approval process to compile such a list.<br><br>Depo Tr. 94:25-97:14 |

Second, Plaintiffs learned of yet another not-synced signal on the very last day of fact discovery (March 4, 2022), almost certainly by accident. Plaintiffs served written discovery requesting that Google fully disclose all logs that record not-synced traffic. In ROG 34, Plaintiffs requested that Google "Identify all Signals sent from Chrome to Google reflecting when a user is not synced." In its initial responses, Google admitted to the existence of a not-synced signal, contrary to Google's prior representations to Plaintiff and to the Court a year earlier:

> The signal sent from the Chrome client to the Chrome sync server identifying when a user is signed into a Chrome browser, and signed into a Google website, and did not have the sync feature enabled on the Chrome browser is called ██████████████████

*See* Joint Decl. ¶ 10 and Ex. E thereto (Google Suppl. Response to ROG 34). This signal was also independently observed by Plaintiffs' expert Richard Smith during his testing as discussed above. So its existence **in the data flow** was not a surprise. But Google failed to reveal whether (or in what log) this signal was *preserved*, and never explained why the signal had been concealed prior to the disclosure. And Google used the singular "signal" in the response (not "signals," plural), falsely representing that there is only one. Even Google's corrective disclosure was false and misleading.

Then on March 4, 2022, the very last day of fact discovery, Plaintiffs' counsel and their expert Dr. Shafiq attended a live demonstration (via Zoom) of the Google log search process, arranged by the Special Master. It was a joint demo, so counsel for Plaintiffs in the related *Brown* action (and their experts) also attended. During the demo, Dr. Shafiq happened to observe an additional Not Synced signal that passed from Chrome to Google (██████████████) and he

mentioned it audibly.  Supp. Shafiq Report ¶ 16.  Later that evening, at 11:52pm, **literally with**
**_eight minutes_ left before the deadline to complete fact discovery**, Google served a surprise
amended response to ROG 34 disclosing this new not-synced signal revealed earlier in the day:

> When a Chrome user stops sync, the Chrome client sends a ▮▮▮▮▮▮▮▮▮▮
> signal to the Chrome Sync server. … The signal is recorded in Chrome Sync's
> ▮▮▮▮▮▮▮▮▮▮ data store, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ where the record is retained until the
> user clears the sync data associated with that Google Account or deletes the Google
> Account. The signal is also recorded in the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮

*See* Joint Decl. ¶ 10 and Ex. E thereto (Google Suppl. Response to ROG 34).

Google's last-minute disclosure of the ▮▮▮▮▮▮▮▮▮▮▮▮ signal is deeply suspicious in
light of its obviously accidental disclosure earlier in the day at the live demo.  But it's actually far
worse: months earlier, as ordered by the Special Master, Google provided a list of all fields within
the ▮▮▮▮▮▮▮▮▮▮ weblog, but, to the best of Plaintiffs' review, there is no record of a field
called ▮▮▮▮▮▮▮▮▮▮▮▮  Google has provided no explanation for the absence of this field in
the original disclosure nor its sudden inclusion in the amended response to ROG 34 a few hours
after the live demo.

One week later, in the March 11, 2022, joint discovery chart submitted to this Court, Google
offered to preserve this newly revealed not-synced signal in its entirety, a step welcomed by
Plaintiffs.  But Google never told the Court that Google had concealed this signal's existence for
the entirety of fact discovery.  It is a fair question to ask: would Google have ever revealed this
signal with eight minutes to spare if Google's live demo had not accidentally revealed it earlier that
day? Are there other sync signals still concealed because Plaintiffs did not have the good fortune to
stumble across them?

     **5.**    **The New Evidence Supports Plaintiffs' Request for Full Preservation**

The April 22, 2022 production of test account data establishes conclusively what was
starting to be revealed above. Contrary to Google's representations to Plaintiffs and the Court for
a year, (i) Google logs when a user is not synced, (ii) these logs are accurate and (iii) these logs are
fine-grained because log entries are saved very frequently at the ▮▮▮▮▮▮▮▮▮▮ precision.

1   Plaintiffs have already detailed to the Court the myriad ways in which the data was largely

2   obscured because of Google's repeated refusal to produce schema, protos and field descriptions.[3]

3   Because of this, and because Google has repeatedly provided false and misleading information

4   about the signals it collects from synced and not synced users, as of the time of filing their

5   objections to the Special Master R&R, Plaintiffs were forced to make reasoned inferences about

6   many aspects of the logs and how the data therein could be used.  Often with only the barest of field

7   names provided, neither Plaintiffs, the Special Master nor the Court have ever been able to see

8   precisely what activity is actually recorded by Google and how.  For example, we have never before

9   been able to see how frequently this information is logged, but now we can see that it is logged

10  *very* frequently—as much as ███████████ – providing a rich data set that can support class

11  member identification and damages calculations with precision.  For example:

- We knew before April 22 that the ████████████ weblog contains a field called
  "sync_feature_enabled."  But with the test account data produced on April 22, we
  can now confirm with real-world data, not just charts and testimony, that Google
  tracks synced *and not-synced* Chrome users in this field.  A synced user will be
  recorded as sync_feature_enabled: *true*, while a not-synced user will be recorded as
  sync_feature_enabled: *false*. *See* Supplemental Shafiq Report, ¶ 12.

- We knew from earlier-produced field descriptions that the ████████████
  ████████ weblog contains the ████████████ signal, which is triggered when
  a Chrome user disables sync.  Since disabling sync moves a Chrome user to the

---

[3] *See, e.g.,* Pls' April 15, 2022 Objections to R&R at Fourth Objection: "Plaintiffs request that Google be ordered to produce the protos for all relevant logs … and with the benefit of that discovery will be able to update the Court before the May 3rd hearing if the discovery suggests additional logs to be added.  But without the actual *protos*, Plaintiffs' ability to complete the analysis is substantially hampered.  Google, on the other hand, does have the protos.  It is deeply prejudicial for Plaintiffs not to have the same information that Google has when evaluating the Special Master's list of █ logs, and thus Plaintiffs request that Google produce them and Plaintiffs be given sufficient time to review and evaluate."  *See also* Plaintiffs Seventh Objection: "The Special Master ordered preservation of all data dictionaries and schemas, including any changes thereto, for each preserved data source. But *production* was not ordered, just *preservation*. Plaintiffs request both preservation and production." *Accord*, Joint Discovery Dispute Chart filed March 11, 2022 at Dispute 2.1 (Plaintiffs' Position): "Unfortunately, Plaintiffs are unable to tell the Court exactly what these fields contain because Google refuses to produce full schemas or protos for ███ such that Plaintiffs would be able to answer that question."

Basic, Not Synced Chrome mode, we can use it identify a subset of the not signed in members of our class. Unfortunately, Google's retention period for this log is extremely short ████. Dr. Shafiq's tests in March turned off sync in early March, and thus the related signal was not picked up by Google when it ran searches in the first week of April. Thus, the April 22 production does not include any occurrence of ████ signals in in ████████ logs related to the test accounts, underscoring the need for full preservation, not just sampling. *See* Supplemental Shafiq Report, ¶ 13.

- In ████ (one of the two most important data sources in this case), there is a field called ████████ which we knew. But in the April 22 production from Google, we now see that this field records when a Chrome user *disables* sync, not just enables it. For example, in the April 22 production, we see ██ entries in this field for one test account and █ of those entries include the attribute ████████. The timestamp for these █ events is March 5, 2022, which perfectly matches the time when Dr. Shafiq disabled sync for this account between 9:48am -10:00am on March 5, 2022. ████████ thus perfectly records when a class member disables sync and returns to the Basic Browser mode, and ████████ data should be preserved in its entirety. *See* Supplemental Shafiq Report, ¶ 14.

The Supplemental Shafiq Report contains no argument, just a summary of the new facts learned this week following review of Google's April 22, 2022 test account data. Plaintiffs are also not changing their objections in any way: Plaintiffs still ask the Court to reject the Special Master's recommended sampling and that the Court order full preservation, particularly of all logs that contain signals from which Google could infer sync status. Plaintiffs today only ask that the Court accept the new evidence into the record as support for the previously made arguments and to counter previous false statements Google made that have now been disproven. The April 22, 2022 test account data by all rights should have been produced well before April 15, 2022, and it would

1  be unfairly prejudicial to Plaintiffs if the Court did not accept this important new evidence into the

2  record.

3  **IV.     CONCLUSION**

4          Plaintiffs respectfully request that the Court grant Plaintiffs leave to supplement the record

5  with respect to their objections to the Special Master R&R and accept the Supplemental Shafiq

6  Report into evidence.  To comply with the Court's Order re: May 3, 2022 Discovery Hearing (Dkt.

7  No. 639, Plaintiffs will need to refer to the new evidence, and good cause exists to receive it into

8  the record.

9      Dated: May 2, 2022

10
11     **BLEICHMAR FONTI & AULD LLP**              **DICELLO LEVITT GUTZLER LLC**

12     By:   */s/ Lesley E. Weaver*                By:    */s/ David A. Straite*
       Lesley E. Weaver (Cal. Bar No. 191305)      David A. Straite (admitted *pro hac vice*)
13     Angelica M. Ornelas (Cal. Bar No. 285929)   Corban Rhodes (admitted *pro hac vice*)
       Joshua D. Samra (Cal. Bar No. 313050)       One Grand Central Place
14     555 12th Street, Suite 1600                 60 E. 42nd St., Suite 2400
       Oakland, CA 94607                           New York, NY 10165 Telephone:
15     Tel.: (415) 445-4003                        (646) 933-1000
       Fax: (415) 445-4020                         *dstraite@dicellolevitt.com*
16     *lweaver@bfalaw.com*                        *crhodes@dicellolevitt.com*
       *aornelas@bfalaw.com*
17     *jsamra@bfalaw.com*                         Amy E. Keller (admitted *pro hac vice*)
18                                                 Adam Prom (admitted *pro hac vice*)
       **SIMMONS HANLY CONROY LLC**                Sharon Cruz (admitted *pro hac vice*)
19                                                 Ten North Dearborn Street, 6th Fl.
       By:    */s/ Jay Barnes*                     Chicago, Illinois 60602
20     Jason 'Jay' Barnes (admitted *pro hac vice*) Tel.: (312) 214-7900
21     An Truong (admitted *pro hac vice*)          *akeller@dicellolevitt.com*
       112 Madison Avenue, 7th Floor               *aprom@dicellolevitt.com*
22     New York, NY 10016                          *scruz@dicellolevitt.com*
       Tel.: (212) 784-6400
23     Fax: (212) 213-5949                         *Counsel for Plaintiffs*
       *jaybarnes@simmonsfirm.com*
24     *atruong@simmonsfirm.com*

25
26
27
28

1

## **ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1(i)(3)**

2

I, David Straite, attest that concurrence in the filing of this document has been obtained

3

from the other signatories. I declare under penalty of perjury that the foregoing is true and correct.

4

Executed this 2nd Day of May, 2022, at New York, New York.

5

6

7
*/s/ David Straite*
_____

David Straite

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## **CERTIFICATE OF SERVICE**

2        I hereby certify that on May 2, 2022, I caused to be electronically filed the foregoing

3    document using the CM/ECF system, which will send notification of such filing to all counsel of

4    record registered in the CM/ECF system.

5

6                                                    */s/ David Straite*

7                                                    David Straite

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28