# JOINT LETTER BRIEF
# re RFPs 125-127, 130-133

## (REDACTED VERSON OF DOCUMENT SOUGHT TO BE FILED UNDER SEAL)

<u>Via ECF</u>

February 2, 2024

**Magistrate Judge Virginia K. DeMarchi**
San Jose Courthouse
Courtroom 2 – 5th Floor
280 South 1st Street
San Jose, CA 95113

Re:   *In re Google RTB Consumer Privacy Litig.*, **No. 4:21-cv-02155-YGR-VKD (N.D. Cal.)**
Joint Letter Brief re: Requests for Production 125, 126, 127, 130, 131, 132, 133

Dear Magistrate Judge DeMarchi:

Plaintiffs and Defendant Google LLC ("Google") (collectively, the "Parties") submit this joint letter brief regarding Plaintiffs' Requests for Production 125, 126, 127, 130, 131, 132, 133 (**Ex. A**) which seek information relating to Google's revenues, costs, and sharing of data. Google's Objections and Responses are attached hereto as **Ex. B**. The Parties met and conferred and have reached an impasse.

**I.   PLAINTIFFS' POSITION**

Following class certification briefing, Plaintiffs sought documents necessary to respond in merits reports to Google's criticisms regarding Plaintiffs' experts' analyses of Google's revenue, cost, and data sharing information and practices. Google's critiques are grounded in the incompleteness of revenue, cost, and data sharing documents produced *by Google*. Despite placing the subject matter of these RFPs squarely at issue, Google refuses to produce responsive documents. Because such information is necessary to address Google's rebuttal critiques, and Google's withholding will hamper preparation of merits reports, this Court should order Google to produce responsive documents.

**RFPs 125 & 126** seek documents **sufficient to show** on an annual basis (1) "total U.S. Google RTB revenues involving Google account holders subject to a U.S. Terms of Service" (RFP 125); and (2) "total U.S. Google RTB revenues involving Google account holders with I.P. addresses located in the U.S." (RFP 126). In his Expert Class Certification Report, Greg Regan relied on the revenue information Google produced, which Google described as reflecting revenue attributed to "[REDACTED]." (Regan Report (ECF 545-8) ¶¶36-38.) In rebuttal, Google's expert Bruce Deal contested the validity of the revenue data Google produced, claiming that somehow it may have included revenue from [REDACTED]. Deal claims that Plaintiffs should have excluded additional RTB revenue from the data Google produced that was attributable to 1) non-Google account holders, or 2) users otherwise not subject to Google's TOS. (Deal Report ¶37.) But Deal provided no methodology to exclude such revenues, nor independently analyze additional revenue data. After Deal submitted his report, Google's corporate representative testified that [REDACTED]

1

(30(b)(6) Deposition of Suneeti Vakharia, at 68:25-70:21.) Another corporate representative confirmed that the information Google produced identified ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉," which is stored in "▉▉▉▉▉▉" and "▉▉▉▉▉▉▉▉" logs and in "billing reports and invoices." (30(b)(6) Deposition of Glenn Berntson, at 230:9-20; 231:18-232:10; 233:14-234:10; 235:15-236:21; *see also* Berntson Dep. at 266:16-267:22 (a Google internal platform (▉▉▉▉▉") permits filtering for such information).)

Documents responsive to RFPs 125 & 126 are critical for Plaintiffs' merits reports. Google has placed the accuracy and completeness of the revenue data it provided at issue, and so production of the information sought by RFPs 125 and 126 is proportionate to the needs of this action.

Given Google's testimony that it can, and does, sort revenue ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ Google should be ordered to produce documents sufficient to show such revenues.

**RFP 130** seeks documents "**to support** Your contention that the cost information in GOOG-HEWT-00455901[1] constitutes marginal costs." Regan's Expert Report (relies on GOOG-HEWT-00455801 for calculating unjust enrichment because it reflects "the limited cost information Google has provided," acknowledging the "data provides insufficient information to determine, for example, whether Google's profitability in the U.S. differs from its worldwide business, and whether Google has included costs that are not marginal in nature and that should be excluded in calculating Defendant's Profits." (ECF 545-8,¶60.) In rebuttal, Deal identifies TAC as a marginal cost (Deal Ex. 1, n.2), but provides no further data or independent analysis to determine the GOOG-HEWT-00455801 cost information constitutes marginal costs TAC, as represented therein,[2] or includes costs that are not marginal in nature. Further, Deal critiques Regan's reliance on the only cost information produced by Google as understating Google's marginal costs. (*Id.* ¶34, n.39) The documents supporting Google's contention that TAC costs are marginal is necessary for Plaintiffs' experts to calculate Google's unjust enrichment in their merits reports.

**RFP 131** seeks documents **sufficient to show** "all U.S. RTB revenue marginal costs other than [TAC] as contended by Google's retained expert, Bruce Deal (Deal Report, p.14, n.39)".

---

[1] Google is aware that GOOG-HEWT-00445801 (the sole cost document Google produced which purports to show traffic acquisition costs ("TAC") on a worldwide basis) was inadvertently identified as -00445901.

[2] Marginal costs are a key economic unit to determining profitability, and are relevant to the extent Google intends to present offsets to profitability based on marginal costs. *See Brown v. Google LLC*, 2022 WL 17961497, at *9 (N.D. Cal. Dec. 12, 2022) ("'A party that is wronged and seeks unjust enrichment "may present evidence of the total or gross amount of the benefit, or a reasonable approximation thereof, and then [the defendant] may present evidence of costs, expenses, and other deductions to show the accrual or net benefit the defendant received.'" (internal citations omitted)).

Google claims there are no responsive documents because it does not contend that the cost information in GOOG-HEWT-00455801 constitutes marginal costs. This is nonresponsive. RFP 131 does not reference GOOG-HEWT-00455801; rather it seeks production of documents sufficient to show marginal costs *other than TAC*, which are the only costs produced by Google. This information is needed to respond to Deal's claims regarding Regan's unjust enrichment calculation, which Deal argues is an understatement of Google's marginal costs. (Deal n.39.) Although Deal asserts that Google's marginal costs would "likely" include costs other than TAC, Deal neither estimated marginal costs, nor performed any independent analysis to support his claim. (Regan Rebuttal Report (ECF 616-8) ¶49.) Rather, Deal limited his analysis to TAC. (Deal Report, Ex. 1, n.2.) Regan acknowledged that Google's TAC data production did not provide sufficient information to identify marginal costs, and that complete marginal cost information would improve the accuracy of his estimate, without changing the methodology. (ECF 545-8 ¶¶47, n.81, 49.)

Google should be ordered to produce documents responsive to RFPs 130 & 131, supporting Deal's contention that the TAC costs reflected in GOOG-HEWT-00455801 are marginal costs, and those sufficient to show the marginal costs Deal contends are necessary to generate Google RTB revenue, so that Plaintiffs' experts can incorporate accurate marginal cost information into merits reports. Having asserted that Google's TAC constitute marginal costs, and that Google's marginal costs include costs other than TAC, thereby placing other marginal costs at issue, any proportionality argument Google may assert fails. Similarly, Google's statement that it intends to rely only on documents it has already produced with regard to does not relieve it of its obligation to produce marginal cost information.

**RFP 127, 132 & 133** seek documents **sufficient to show** (1) the user information and Data . . . that Google's internal bidders in Google RTB auctions . . . share with third parties (RFP 127); (2) the extent to which [internal bidders] engage in retargeting (RFP 132); and (3) the portion of Google's revenue from [internal bidders] that is generated from the bidders facilitating re-targeting campaigns.[3] This information is needed to respond to claims made in the Rebuttal Report of Google's expert Deal.

In his Expert Class Certification Report (ECF 545-7), Prof. Robert Zeithammer "apportion[ed] the proportion of Google RTB revenues from class members due to Google's sharing of User Data with third parties through Google RTB" as "a key input into calculations of damages under the unjust enrichment model" *Id*. ¶8. Deal responded (ECF 584-8) that in a but-for world  Google's profits could actually increase, and that if ▓▓▓▓ do not transmit at-issue data to third parties, then that revenue is not at issue in this matter. *Id*. ¶¶12, 57, 67.

In his Reply report (ECF 616-5), Zeithammer responds that Deal's analysis is based on erroneous assumptions, including that ▓▓▓▓ do not share user data with advertisers. *Id*.

---

[3] *See* What are Personalized Retargeting Ads? ("Personalized Retargeting ads work by utilizing data to target people who have previously visited a website."), available at: https://www.optimove.com/resources/learning-center/personalized-retargeting; *see also* https://support.google.com/google-ads/answer/3124536?hl=en.

¶27. As an example, Zeithammer points to the practice of "re-targeting" which requires transmission of persistent identifiers to third parties. *Id.* ¶¶50-57. Zeithammer also explains that revenue ███████████████████████████ is relevant to the apportionment of the percentage of revenue attributable to user data because ███████████████████████████ *Id.* ¶¶58-75.

The requested documents are needed to address these points in Plaintiffs' merits reports. Determining ███████████████████████████████████████████████████████████████ and (2) in response to Deal's but-for world argument, which ████████████ are most relevant for calculating apportionment. Having put the issue of ████████████████████████ squarely at issue, any proportionality argument fails. The Court should order Google to produce the requested documents.

## II.  GOOGLE'S POSITION

### A.  Revenue and Costs.

The instant motion seeks to re-litigate prior disputes. There is also no dispute to resolve, as Google has already confirmed that it either does not have responsive documents or has already produced documents it intends to rely on.

*RFPs 125-126 (U.S. RTB revenue by account holder and IP address):*

Plaintiffs have built their damages model on revenue data that does not exist and now seek to fault Google for their mistake. Over a year ago, ████████████████████████████████████ as it is maintained in the ordinary course of business. In their latest RFPs, Plaintiffs now demand "U.S. Google RTB revenues involving Google account holders subject to a U.S. Terms of Service," RFP 125, and "total U.S. Google RTB revenues involving Google account holders with I.P. addresses located in the U.S.," RFP 126. Plaintiffs claim to need this information given that they defined the class to encompass Google Account Holders subject to a U.S. TOS. ECF 546 at 8.

Following a diligent investigation, Google confirmed ████████████████████████████████████████████████████████████████████████████ *See* Ex. B at 7-8. Further, four months ago, Google *also* provided a verified Interrogatory response confirming it ████████████████████████ and Plaintiffs never challenged that response. *See* Google's Supp. Interrog. Resp. 20. Google has more than satisfied its discovery obligations. *Thomas v. Saafir*, 2007 WL 1063474, at *2 (N.D. Cal. Apr. 9, 2007) (that defendant conducted a "diligent search" is all that Rule 34 requires).

4

Plaintiffs challenge this representation by mischaracterizing deposition testimony.[4] First, Plaintiffs identify testimony from Google's 30(b)(6) witness on *consent* who has no responsibility for revenue. That testimony concerns "[h]ow Google know[s] which TOS to show a user when they create a Google account" and ***does not even mention revenue***. ECF 616-13, Vakharia Tr. at 69:1-3; *see also id.* at 69:11-16 (stating ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Likewise, Dr. Berntson's testimony contradicts, rather than supports, Plaintiffs' arguments: ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ECF 616-12, Berntson 30(b)(6) Tr. at 237:4-7. Dr. Berntson discusses ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id.* 236:3-8. The Court should deny Plaintiffs' motion.

***RFPs 130-131 (Google's costs):***

This is Plaintiffs' ***third*** meritless motion to compel information regarding Google's costs. ECF 189 at 5-6 ("As Google represents that it has no responsive documents, it need not produce any."); ECF 326 at 5 (similar). In its last ruling, the Court explained that "if Google does not have any documents showing [] costs . . . that have not yet been produced, then the Court agrees that there is no relief to order. If Google does have such documents, it must produce them." ECF 326 at 5. Google has repeatedly explained that it has produced all documents it intends to rely on to show its costs, including Traffic Acquisition Costs and ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ and offered to supplement its responses to state so.

Nevertheless, Plaintiffs illogically proceed with their motion, arguing they are entitled to documents "support[ing] [Google's] contention that the cost information in GOOG-HEWT-00455901 constitutes marginal costs." RFP 130.[5] It is unclear what relief Plaintiffs seek. To the extent Plaintiffs ask Google to identify documents supporting its contentions, such a request is improper, *Kearns v. Loandepot.com, LLC*, 2023 WL 9375111, at *11 (C.D. Cal. Dec. 4, 2023) (denying motion to compel "contention RFP[s]"); *Van Patten v. Vertical Fitness Grp.*, LLC, 2013 WL 1899724, at *2 (S.D. Cal. May 7, 2013) (same), and Plaintiffs have already exhausted their interrogatory limit.

Plaintiffs' demand for "[d]ocuments sufficient to show all U.S. RTB revenue marginal costs . . . as contended by Google's [] expert, Bruce Deal," is similarly unavailing. RFP 131. Mr. Deal does not render any opinions regarding marginal costs, stating so in his report: "I have not been asked to estimate these marginal costs at this stage." ECF 584-8 at 14, n.39. If Plaintiffs wish to understand the basis for Mr. Deal's observation that "Google's marginal costs . . . would likely have included more than just TAC," *id.*, Google has already produced documents it intends to rely on.

---

[4] The Court should not consider this testimony at all, as Plaintiffs repeatedly refused to provide it to Google as part of the meet-and-confer process.

[5] Following the final meet-and-confer, Plaintiffs advised Google that this RFP inadvertently referred to GOOG-HEWT-00455801.

### B. Discovery Regarding Internal Google Products.

Plaintiffs' damages experts opine that the value of the alleged personal or sensitive information shared in bid requests is equivalent to 51.1% of Google's RTB revenue and multiply that percentage by RTB revenue to calculate unjust enrichment. ECF 546-6 ¶ 41. Google's damages expert Bruce Deal criticizes Plaintiffs' experts for failing to consider a key aspect of how the RTB auction would have functioned in a "but for" world if the data at issue was not shared in bid requests. Plaintiffs' experts ignore that "even if third-party Bid Request recipients ▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ would have submitted lower bids or chosen not to bid at all for ad inventory, other [internal] Google products . . . ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ECF 584-8 ¶ 12. This additional incremental revenue is not accounted for in Plaintiffs' damages model and renders it defective. *Id.* In forming this opinion, Mr. Deal relied on produced documents that demonstrate that ▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇." ECF 584-8 ¶ 57.

Plaintiffs claim that Mr. Deal's opinion opens the floodgates to broad discovery regarding internal Google products that are not at issue in this litigation. They are wrong.

***RFP 127 (data that internal bidders share with third parties).*** Plaintiffs seek documents showing "the user information and Data" that Google's internal bidders share with third parties. ▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ As Google has explained during meet-and-confer, advertisers who use ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. They are thus outside the scope of this case, which is focused on "information about the Target in the Bid Request provided to auction participants." CAC ¶ 6.

As a compromise, Google offered to provide a verified response confirming that ▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇ This proposal is directly responsive to their expert's statement that "I [] do not know for sure whether or not third-party advertisers who use ▇▇▇▇▇▇▇▇▇▇▇▇ receive user data at issue as part of Google's bid request to ▇▇▇▇▇▇▇▇▇." ECF 616-7 ¶ 51. Plaintiffs refused this compromise.

***RFPs 132-133 (▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ customers' retargeting efforts and revenue derived from such retargeting):*** Plaintiffs have failed to demonstrate that broad discovery concerning the "re-targeting" practices by thousands of end-users of ▇▇▇▇▇▇▇▇▇▇▇▇▇ services and the revenue from such practices is remotely relevant in this case. To begin, neither of these Requests are tethered to RTB. ECF 326 at 6 (denying motion to compel revenue information of "non-RTB products or services"). Further, while Plaintiffs argue that their damages expert Dr. Zeithammer needs this information to establish that ▇▇▇▇▇▇▇▇▇▇▇▇▇ share user data with third parties, as Google has stated, it will provide a verified response to Plaintiffs explaining that advertisers and ad agencies that use ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

6

███████████████████████████████████████████████████████████████████.[6] Plaintiffs do not explain why this proposal is insufficient.

Even setting aside these deficiencies, these Requests are impossibly vague. Not only does the meaning of these RFPs turn on the undefined term "re-targeting," which is not a term that the parties have used in prior discovery, the specific revenue information sought by RFP 133 (*i.e.*, from "bidders facilitating re-targeting campaigns") is unintelligible.

### III.   NECESSITY OF A HEARING

#### A.   Plaintiffs' Position

Plaintiffs request a hearing at the Court's earliest opportunity.

#### B.   Google's Position

Google does not believe a hearing is necessary for the Court to resolve this dispute, but to the extent the Court would find a hearing useful, Google respectfully requests that it be scheduled after the February 21, 2024 hearing on Plaintiffs' class certification motion to allow counsel to focus their preparation on that hearing.

### IV.   DISCOVERY CUT-OFFS

The fact discovery cut-off ran on January 19, 2024, and fact discovery motions are due by February 2, 2024. Opening merits reports are due April 5, 2024, and rebuttal reports are due by May 14, 2024. The close of expert discovery is June 7, 2024. See ECF 656. Plaintiffs filed their motion for class certification on July 14, 2023. ECF 546 [public version], and opposition and reply briefing was concluded on September 29, 2023 (ECFs 583-602 [public versions]), and November 29, 2023 (ECF 617 [public version]), respectively. The District Court scheduled a class certification hearing for February 21, 2024 at 9:30 am. ECF 655.

### V.   COMPLIANCE WITH MEET AND CONFER REQUIREMENT

The Parties met and conferred several times, and a final meet and confer took place on January 24, 2024, via Zoom. On Plaintiffs' side, Elizabeth Pritzker, Jonathan Levine, and Bethany Caracuzzo of Pritzker Levine LLP, Anne Davis of Bleichmar Fonti & Auld LLP, Brian Danitz of Cotchett, Pitre & McCarthy LLP, and David Straite of DiCello Levitt LLC attended. On Google's side, Whitty Somvichian, Aarti Reddy, and Reece Trevor of Cooley LLP attended.

---

[6] Google has moved to strike these opinions, which are speculative—even Dr. Zeithammer disclaimed expertise in opining on such matters. ECF 628 at 3; ECF 616-7 at ¶ 53 ("I am not a technical expert, so it is possible my understanding of re-targeting is incomplete….").

7

Dated: February 2, 2024            **PRITZKER LEVINE LLP**

By: */s/ Elizabeth C. Pritzker*
Elizabeth C. Pritzker (SBN 146267)
Jonathan K. Levine (SBN 220289)
Bethany Caracuzzo (SBN 190687)
Caroline Corbitt (SBN 305492)
1900 Powell Street, Suite 450
Emeryville, CA 94608
Tel.: (415) 692-0772
Fax: (415) 366-6110
ecp@pritzkerlevine.com
jkl@pritzkerlevine.com
bc@pritzkerlevine.com
ccc@pritzkerlevine.com

*Interim Class Counsel*

Dated: February 2, 2024            **BLEICHMAR FONTI & AULD LLP**

By: */s/ Anne K. Davis*
Lesley E. Weaver (SBN 191305)
Anne K. Davis (SBN 267909)
Joshua D. Samra (SBN 313050)
1330 Broadway, Suite 630
Oakland, CA 94612
Tel.: (415) 445-4003
Fax: (415) 445-4020
lweaver@bfalaw.com
adavis@bfalaw.com
jsamra@bfalaw.com

Dated: February 2, 2024            **COTCHETT, PITRE & McCARTHY LLP**

By: */s/ Brian Danitz*
Nanci E. Nishimura (SBN 152621)
Brian Danitz (SBN 247403)
Karin B. Swope (admitted *pro hac vice*)
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Tel.: (650) 697-6000
Fax: (650) 697-0577
nnishimura@cpmlegal.com
bdanitz@cpmlegal.com
kswope@cpmlegal.com

*Counsel for Plaintiffs and the Proposed Class*

Dated: February 2, 2024     **COOLEY LLP**

By: */s/ Whitty Somvichian*
Michael G. Rhodes
Whitty Somvichian
Aarti Reddy
Reece Trevor
Anupam S. Dhillon
3 Embarcadero Center, 20th floor
San Francisco, CA 94111-4004
Tel.: 415-693-2000
Fax: 415-693-2222
rhodesmg@cooley.com
wsomvichian@cooley.com
areddy@cooley.com
rtrevor@cooley.com
adhillon@cooley.com

Robby L.R. Saldaña
Khary J. Anderson
1299 Pennsylvania Avenue NW, Suite 700
Washington, DC 20004-2400
Tel.: 202-776-2109
Fax: 202-842-7899
rsaldana@cooley.com
kjanderson@cooley.com

***Attorneys for Defendant GOOGLE LLC***

297694795