# JOINT LETTER BRIEF
# re ROG 22 & RFPs 128-129

## (REDACTED VERSON OF DOCUMENT SOUGHT TO BE FILED UNDER SEAL)

<u>Via ECF</u>

February 2, 2024

**Magistrate Judge Virginia K. DeMarchi**
San Jose Courthouse
Courtroom 2 – 5th Floor
280 South 1st Street
San Jose, CA 95113

Re:   *In re Google RTB Consumer Privacy Litig.*, No. 4:21-cv-02155-YGR-VKD (N.D. Cal.)
      Joint Letter Brief re: Interrogatory No. 22; RFP Nos. 128 and 129.

Dear Magistrate Judge DeMarchi:

Plaintiffs and Defendant Google LLC ("Google") (collectively, the "Parties") submit this joint letter brief regarding Interrogatory No. 22 (**Ex. A**), and Request For Production ("RFP") Nos. 128 and 129 (**Ex. B**), which seek documents and information relating to Google's ▮▮▮▮▮▮ ▮▮▮▮▮▮▮ Google's Objections and Responses to Interrogatory 22 are attached hereto as **Ex. C** and its Objections and Responses to RFPs 128 and 129 are attached hereto as **Ex. D**. The Parties met and conferred and have reached an impasse.

**I.   PLAINTIFFS' POSITION**

**Interogatory 22** asks Google to "[d]escribe in detail each of the ▮▮▮▮▮▮▮▮▮▮▮▮" referenced in specified documents previously produced by Google and sets out examples of categories of information that would satisfy the request. Ex. A.[1] **RFP 128** seeks "[d]ocuments of revenue impact studies or experiments . . . ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Ex. B. **RFP 129** seeks "[d]ocuments sufficient to show any assumptions and Data used, considered or relied upon in the revenue impact studies or experiments described in [RFP 128] . . . . *Id*.

Each of these requests seeks information to better comprehend Google's ▮▮▮▮▮▮ ▮▮▮▮▮▮▮ which measured the financial impact of ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Some of the documents produced to date are no more than emails commenting on experiments in passing, others are high-level summaries lacking details. This patchwork of documents is insufficient.

Plaintiffs need the requested information. As demonstrated by the centrality of these ▮▮

---

[1] Google's argument below regarding subparts is incorrect. Rule 33(a) expressly authorizes "discrete subparts," and Rule 33 "'is to be given a broad and liberal interpretation.'" *E & J Gallo Winery v. Encana Energy Servs., Inc.*, 2004 WL 7342777, at *2 (E.D. Cal. Aug. 6, 2004) (internal citations omitted); 8A CHARLES A. WRIGHT, ET AL., FED. PRAC. & PROC. § 2168.1 at 261 (2d ed.1994) ("an interrogatory containing subparts directed at eliciting details concerning the common theme should be considered a single question").

1

▉▉▉▉▉▉▉▉▉▉ in the expert reports submitted in support of and in opposition to Plaintiffs' Motion for Class Certification, the requested information is critical to Plaintiffs' damages analysis. As discussed further below, given the positions taken by Google's damages expert, Bruce Deal, Google's boilerplate objections regarding burden and proportionality cannot justify hiding the ball on this core issue.

In his Expert Class Certification Report (ECF 558-7), Prof. Robert Zeithammer conducted a meta-analysis of various sources, including Google's documents, and concluded "User Data commonly shared in RTB requests has a highly statistically significant effect on auction revenues in Google RTB, with at least 51.1% of the revenue directly attributable to the sharing of User Data in bid requests." *Id.* ¶12. Google's ▉▉▉▉▉▉▉▉▉▉, described in the report as "the gold standard in measuring the impact of User Data on revenue" (*id.* ¶20), are central to this analysis with more than a dozen pages of the report dedicated to analyzing them. *See id.* Section V ("Revenue Due To User Data: Evidence From Experiments At Google") and Section X.[2]

Mr. Deal's rebuttal report responds that these experiments "were not designed to—and do not—measure . . . the overall revenue effect on Google from blocking the at issue data from some products, but not all products," and that the experiments "are not representative of the at-issue data transmitted in Google RTB during the Class Period." ECF 584-7 at ¶54; *see also id.* ¶¶65-67.

In his Reply Expert Report (ECF 617-5), in addition to addressing Mr. Deal's flawed assumptions, in Section 7 Prof. Zeithammer goes through the *partial information* he has regarding a number of ▉▉▉▉▉▉▉▉▉▉ that appear to address Deal's arguments and shows that the 51.1% apportionment is, in fact, conservative. *See id.* ¶78 ("I believe Google has conducted the relevant experiments, and I find evidence that some of them are already disclosed in the internal documents I relied upon."); ¶¶79-84. In Section 9, the Reply Report responds to Mr. Deal's contention that "the ▉▉▉▉▉▉▉▉▉▉ [Zeithammer] relied upon are unreliable because they do not measure overall RTB revenue." ¶¶92-95. Again, Prof. Zeithammer presents his reasonable inferences in light of the missing information about these experiments, noting: "it is possible that Deal has some additional information about these experiments – information that was not produced." ¶93; *see also* ¶95 ("Without additional information, I see no reason to believe why these experiments are not precisely the type-B/C experiments Deal is calling for."). Prof. Zeithammer also correctly noted: "It is my understanding that Plaintiff's Counsel requested the details of the above three (and other experiments), and the details were not provided." *Id.* ¶84, ¶95. Irrespective of whether in fact Mr. Deal has such information to support his conclusions in his class certification opposition report, to the extent Google continues to challenge the bases, data, analyses and methodologies that underlie the revenue ▉▉▉▉▉▉▉▉▉▉ that Google has conducted, at the merits phase of the case, plaintiffs' expert is entitled to the information plaintiffs need to respond to those challenges.

Plaintiffs' prior attempts to obtain the data underlying these ▉▉▉▉▉▉▉▉▉▉ failed. *See* ECF 326 at 6 ("Google need not produce the 'underlying data' for these reports, analyses, and studies, as none of the document requests on which plaintiffs rely call for production of this information, and the Court is not persuaded that production of "underlying data" is proportional to the needs of the case"); ECF 345 at 2 ("The magistrate judge correctly noted that none of plaintiffs'

---

[2] Plaintiffs can provide the Court with the excerpted materials referenced herein, if desired.

original discovery requests called for production of the 'underlying data.'"). But, having now put the 'underlying data' even more squarely at issue, any proportionality argument fails. Google must produce this plainly relevant data to enable plaintiffs to present their case at trial.

With the submission of the Parties' interim expert reports and the propounding of the three discovery requests at issue, Plaintiffs believe that the deficiencies previously noted by the Court have been addressed, and that the need for this information for Plaintiffs' experts to prepare their final merits reports is clear. Given the current lack of information about these experiments, the Parties' experts are not on equal footing and Prof. Zeithammer's response to Mr. Deal's assertions are based on educated estimations about the nature, bases, and results of these experiments – the very details Google has put at issue through its own expert, but continues to withhold from Plaintiffs in discovery. Additionally, according to Google deponents (who generally could not recall the details), work product for these experiments may be stored in a ▇▇▇▇▇▇▇▇. Given the importance of the issues at stake in this action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, and the importance of the discovery in resolving the issues, the Court should require Google to produce the requested documents and information.

Further, at a deposition Google stated it is withholding all information about several ▇▇▇▇▇▇▇▇, claiming privilege. Google should be required to explain the basis for withholding all information related to these ▇▇▇▇▇▇▇▇ so that Plaintiffs, and the Court, can determine whether such assertions exist or should be upheld here.

## II.  GOOGLE'S POSITION

Plaintiffs' demands for additional documentation and information regarding revenue experiments (RFPs 128-129 and Interrogatory 22) are overbroad, poorly defined, and a bald attempt to relitigate disputes that the Court resolved in September 2022. Their motion only underscores the broad, unfocused nature of their demands. It is unclear whether Plaintiffs seek more information about experiments Google has already produced or a plethora of additional, undefined experiments (or both). In any case, Plaintiffs' Motion should be denied.

### A.  *Plaintiffs' requests confuse issues and attempt to relitigate settled disputes.*

Plaintiffs seek:

- "Documents of revenue impact studies or experiments" where "▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇" (RFP 128);

- "Documents sufficient to show any assumptions and Data used, considered or relied upon" in such experiments (RFP 129); and

- That Google describe in detail eight categories of information for seventeen documents produced to date and any documents produced in response to RFPs 128 and 129 (Interrogatory 22).

Plaintiffs' justifications for this additional discovery are unpersuasive.

3

Consistent with this Court's order that Google produce "reports, analyses and studies showing the impact on Google's RTB revenues of disabling third-party cookies and other user identifiers," Google performed a diligent search for such materials. ECF 326 ("September Order") at 6. Contrary to Plaintiffs' unsupported claim, there is no ██████████████████████████ ██████████████████████████████████████████ performed a targeted collection for responsive materials, and produced a series of revenue experiments.³

RFP 128 is duplicative of the September Order. To the extent Plaintiffs ask Google to redo its prior production, they have not articulated a basis for that demand. Plaintiffs generically criticize Google's prior productions at "patchwork" and "partial" but do not point to any specific deficiency or missing experimentation. RFP 128 should be quashed for this reason alone. *See SiteLock LLC v. GoDaddy.com LLC*, 2020 WL 6135189, at *14 (D. Ariz. Oct. 19, 2020) (denying motion to compel where movant "ha[dn't] identified any specific deficiencies in the actual production").

Rather than directly challenge Google's compliance with the September Order, Plaintiffs freely admit they have propounded RFP 129 and Interrogatory 22 to re-litigate this Court's finding that production of the "underlying data" for such experiments was "not proportional to the needs of the case." ECF 326 at 6.⁴ Specifically, Plaintiffs claim that because Google's damages expert criticized Plaintiffs' reliance on a **single** ██████████████████, they are entitled to broad discovery regarding every experiment Google has ever produced. Plaintiffs misstate the nature of Mr. Deal's opinions, which were narrow in scope.

In his report, Mr. Deal explained that Dr. Zeithammer's reliance on a ████████████████ was flawed because it ████████████████████████████████████████████ ███████. Specifically, he asserted that in a "but-for" world where the at-issue data was not shared with ███ and ███, ████████████████████████████████████████████ ██████████████████████████"–*i.e.*, ████████████████████ that also participate in the RTB auction and that are not at issue in this case. ECF 584-8 ¶¶ 12, 66. Mr. Deal's overarching criticism is that Plaintiffs' experts apply the improper "but for" world framework and ignore that "even if third-party Bid Request recipients ██████████████████████████████████) would have submitted lower bids or chosen not to bid at all for ad inventory, ████████████████████ ████████████████████████████████ ECF 584-8 ¶ 12.

Plaintiffs now claim they need additional information to rebut Mr. Deal's criticism, but Google proposed a compromise that would enable Plaintiffs to obtain precisely that. Specifically, Google has agreed to search for and produce documents ██████████████████████████████████ ██████████████████████████████ Plaintiffs do not explain why they rejected this proposal and have failed to justify their broad request for additional ████████████████ and underlying data regarding experiments that Google has or will produce. Plaintiffs' Motion should be denied.

    **B.**    *Interrogatory 22 fails for additional reasons.*

---

³ Plaintiffs' damages expert, Robert Zeithammer, purports to have reviewed some of these documents, and a handful are also cited in Interrogatory 22. ECF 546-5 ¶ 32.
⁴ The District Court affirmed this Order. ECF 345 at 2.

Even putting these threshold deficiencies aside, Plaintiffs' motion still fails. Specifically, Interrogatory 22 is compound and in excess of Rule 33's limit on interrogatories, disproportionate to the needs of the case, and so vague it cannot be implemented as written.

***First***, Interrogatory 22 exceeds Rule 33's numerical limit on interrogatories. Fed. R. Civ. P. 33(a)(1). As Google explains in its concurrent briefing on Interrogatory 23, and as Google has previously advised Plaintiffs, they surpassed this limit long ago. Interrogatory 22 is itself compound, as it asks Google to "describe in detail" ***eight*** categories of information for experiments identified in ***seventeen*** documents and seeks the same information for an indefinite number of additional experiments Google may produce in response to RFPs 128-129. In other words, Interrogatory 22 contains ***at least seventeen*** discrete subparts and may contain dozens more. *Am. Bankers Ins. Co. v. Nat'l Fire Ins. Co.*, 2020 WL 8996760, at *2 (N.D. Cal. July 9, 2020) (interrogatory that sought information regarding different insurance policies was compound). For this reason alone, Google should not be required to respond to it. Fed. R. Civ. P. 33 advisory committee's note to 1993 amendment ("Parties cannot evade this presumptive limitation through [subparts] about discrete separate subjects."); *Sonista, Inc. v. Hsieh*, 2005 WL 8177499, at *5 (N.D. Cal. Nov. 7, 2005) (plaintiff exceeded Rule 33's limit by serving ten interrogatories with 27 subparts).

***Second***, compelling Google's response would pose an immense burden that is disproportionate to the needs of the case. This burden could have been avoided, if Plaintiffs had diligently pursued this discovery. Google began producing the documents cited in Interrogatory 22 ***two and a half years ago*** and completed that production over ***a year ago,*** in November 2022.[5] Plaintiffs took their first deposition of a Google witness in December 2022, ***after*** all of these documents were produced, and could have and should have asked the hundreds of questions contained in Interrogatory 22 of live witnesses in those depositions. Indeed, by Plaintiffs' own estimation, George Levitte is a key witness on "revenue," 8/22/23 Tr. at 41:15-16; ECF 623-3 at 4, and he was deposed almost six months after all documents listed in Interrogatory 22 were produced. The same is true of Stan Belov, who Plaintiffs characterize as "central to Google's RTB design and operation." ECF 463 at 1. Nevertheless, none of these documents were used in either deposition, and only ***three of these documents were listed as exhibits in any other Googler deposition***. Google should not be required to undertake a herculean effort to compensate for Plaintiffs' inaction.

***Third***, Interrogatory 22 is so vague that it is impossible to implement. Many of the documents listed in Interrogatory 22 reference numerous different experiments, some of which are not even ██████████████████████ For example, the first cited document is 95 pages long and contains ██████████ GOOG-HEWT-00018008 at -18064. It is not clear what Plaintiffs expect Google to describe from this document, and Plaintiffs have refused to narrow or clarify. Further, Plaintiffs' demand that Google describe experiment parameters for documents it produces in response to RFP 129 is circular and makes no sense, as that RFP does not seek experiments at all, but documents describing experiments. *Infra* C. It is not Google's burden to make sense of Plaintiffs' ill-defined discovery, and their Motion should be denied for this reason as well. *Stussy, Inc. v. Shein*, 2022

---

[5] Google produced these documents in September 2021, February 2022, March 2022, and November 2022.

WL 17366381, at *2 (C.D. Cal. Sept. 26, 2022) (defendant need not answer interrogatory that is "outrageously overbroad and nearly incomprehensible").

### C. The RFPs also fail for additional reasons.

Like Interrogatory 22, Plaintiffs' RFPs 128 and 129 are impossibly vague. In RFP 128, Plaintiffs seek documents "similar to" other documents that Google previously produced "in which Bid Request Data was held back." However, the referenced documents include not only revenue ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇, but internal custodial documents that contain passing references to internal experimentation, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. See GOOG-HEWT-278054. The scope of this RFP is entirely unclear and makes it virtually impossible for Google to comply with it. RFP 129, which requests documents regarding "any assumptions and Data used, considered, or relied upon" in the experiments referenced in RFP 128, is thus also unintelligible. Google should not be required to respond to either. *Vizio, Inc. v. LeEco V. Ltd.*, 2018 WL 10742584, at *6 (C.D. Cal. Nov. 2, 2018) (denying motion to compel as to RFPs that were "vague, ambiguous and unintelligible").

The Court should deny Plaintiffs' Motion for each of these reasons.

### III. NECESSITY OF A HEARING

#### A. Plaintiffs' Position

Plaintiffs request a hearing at the Court's earliest opportunity to ensure that there is adequate time for Plaintiffs' experts to incorporate this information into their final reports.

#### B. Google's Position

Google does not believe a hearing is necessary for the Court to resolve this dispute, but to the extent the Court would find a hearing useful, Google respectfully requests that it be scheduled after the February 21, 2024 hearing on Plaintiffs' class certification motion to allow counsel to focus their preparation on that hearing.

### IV. DISCOVERY CUT-OFFS

The fact discovery cut-off ran on January 19, 2024, and fact discovery motions are due by February 2, 2024. Opening merits reports are due April 5, 2024, and rebuttal reports are due by May 14, 2024. The close of expert discovery is June 7, 2024. *See* ECF 656. Plaintiffs filed their motion for class certification on July 14, 2023. ECF 546 [public version], and opposition and reply briefing was concluded on September 29, 2023 (ECFs 583-602 [public versions]), and November 29, 2023 (ECF 617 [public version]), respectively. The District Court scheduled a class certification hearing for February 21, 2024 at 9:30 am. ECF 655.

### V. COMPLIANCE WITH MEET AND CONFER REQUIREMENT

The Parties met and conferred several times, and a final meet and confer took place on January 24, 2024 via Zoom. On plaintiffs' side, Elizabeth Pritzker, Jonathan Levine of Pritzker Levine LLP

and Brian Danitz of Cotchett, Pitre & McCarthy LLP attended. On Google's side, Whitty Somvichian, Aarti Reddy and Reece Trevor of Cooley LLP attended.

Dated: February 2, 2024  **PRITZKER LEVINE LLP**

By: */s/ Elizabeth C. Pritzker*
Elizabeth C. Pritzker (SBN 146267)
Jonathan K. Levine (SBN 220289)
Bethany Caracuzzo (SBN 190687)
Caroline Corbitt (SBN 305492)
1900 Powell Street, Suite 450
Emeryville, CA 94608
Tel.: (415) 692-0772
Fax: (415) 366-6110
ecp@pritzkerlevine.com
jkl@pritzkerlevine.com
bc@pritzkerlevine.com
ccc@pritzkerlevine.com

*Interim Class Counsel*

Dated: February 2, 2024  **COTCHETT, PITRE & McCARTHY LLP**

By: */s/ Brian Danitz*

Nanci E. Nishimura (SBN 152621)
Brian Danitz (SBN 247403)
Karin B. Swope (admitted pro hac vice)
Andrew F. Kirtley (SBN 328023)
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Tel.: (650) 697-6000
Fax: (650) 697-0577
nnishimura@cpmlegal.com
bdanitz@cpmlegal.com
kswope@cpmlegal.com
akirtley@cpmlegal.com

*Counsel for Plaintiffs and the Proposed Class*

Dated: February 2, 2024  **COOLEY LLP**

By: */s/ Whitty Somvichian*

7

Michael G. Rhodes
Whitty Somvichian
Aarti Reddy
Reece Trevor
Anupam S. Dhillon
3 Embarcadero Center, 20th floor
San Francisco, CA 94111-4004
Tel.: 415-693-2000
Fax: 415-693-2222
rhodesmg@cooley.com
wsomvichian@cooley.com
areddy@cooley.com
rtrevor@cooley.com
adhillon@cooley.com

Robby L.R. Saldaña
Khary J. Anderson
1299 Pennsylvania Avenue NW, Suite 700
Washington, DC 20004-2400
Tel.: 202-776-2109
Fax: 202-842-7899
rsaldana@cooley.com
kjanderson@cooley.com

***Attorneys for Defendant GOOGLE LLC***

297695248 v1