# JOINT LETTER BRIEF re RFP 141

**(REDACTED VERSON OF DOCUMENT SOUGHT TO BE FILED UNDER SEAL)**

<u>Via ECF</u>

February 2, 2024

**Magistrate Judge Virginia K. DeMarchi**
San Jose Courthouse
Courtroom 2 – 5th Floor
280 South 1st Street
San Jose, CA 95113

Re:   *In re Google RTB Consumer Privacy Litig.*, No. 4:21-cv-02155-YGR-VKD (N.D. Cal.)
      Joint Letter Brief re: Plaintiffs' Request for Production No. 141 (Set No. 9)

Dear Magistrate Judge DeMarchi:

Plaintiffs and Defendant Google LLC ("Google") (collectively, the "Parties") submit this joint letter brief regarding Plaintiffs' Request for Production No. 141 (Set No. 9) ("RFP 141") served on December 18, 2023 (**Ex. A**), and Google's January 17, 2024 Objections and Responses to RFP 141 ("Objections") (**Ex. B**). The Parties have met and conferred and have reached an impasse with respect to RFP 141.

I.   **PLAINTIFFS' POSITION**

RFP 141 seeks the production of the same set of RTB data fields Google has been ordered to produce for the named plaintiffs, but on a class-wide basis and for a far more limited time period. *See* Ex. A at pp. 2-3. Understanding that class-wide data potentially presents data manageability issues, Plaintiffs, after consulting with their experts, only requested six ten-minute intervals of class-wide data spread over three years (2021-2023). *Id*. Plaintiffs need the class-wide RTB data now, and will be severely prejudiced if it is not produced for several reasons.

**First**, if the class is certified, the data sought by RFP 141 is unquestionably relevant and necessary for both summary judgment and trial, since Plaintiffs will be representing not only the named plaintiffs, but the entire class as well. As the Court is aware, to date, Plaintiffs have been prevented from obtaining <u>any</u> class-wide RTB data and limited to just a representative sample of 12 weeks of partial RTB data for the named plaintiffs. This is plainly insufficient for summary judgment and trial if the Court certifies the class. Plaintiffs are entitled to present evidence on summary judgment and to the jury at trial on a class-wide basis regarding the full scope and impact of Google's RTB practices and conduct with respect to the class as a whole. In order to do so, Google must produce that evidence, which is required by RFP 141 and entirely within Google's control. None of the cases Google cites provides otherwise; they either deal with class-wide discovery sought at the pre-certification stage or, in the case of *Arrendondo v. S.W. & Pac. Specialty Fin., Inc.*, 2019 WL 6128657 (E.D. Cal. Nov. 19, 2019), actually support Plaintiffs. In *Arrendondo*, the court allowed class-wide discovery, even pre-certification, and only limited one discovery request to a class-wide sample. Plaintiffs here are only seeking a class-wide sample in the first instance.

**Second**, when the Court agreed to Google's request that it only be required to produce a sample of partial RTB bid data limited to the named plaintiffs, it ordered that "if Google wishes to rely on a sample of responsive data to satisfy its obligations, it must take steps to ensure that the sample is representative such that plaintiffs can rely on it in making the arguments they wish to make for class certification." Dec. 16, 2022 Discovery Order (ECF 382). In February 2023, Google repeatedly confirmed to this Court that it had complied with that Order. *See* Feb. 28, 2023 Letter Brief at pp. 4-6 (ECF 428-3). But in opposing class certification, Google told the District Court otherwise, contending that it was "mere conjecture" that the named plaintiff data was representative of the class as a whole (Google Opposition at p. 10 (ECF 583-3)) and that there was no "reliable basis" to conclude that the named plaintiff data was representative of the entire class. Striegel Expert Report at pp. 43-45 (ECF 584-1). Google cannot have it both ways. Having told this Court that it would and did produce RTB data that is representative of the class as whole, Google cannot then tell the District Court that what it produced, and what Plaintiffs relied on for class certification purposes, is not representative—and then turn around again, and refuse to produce class-wide data that will allow Plaintiffs to respond to this new contention by Google. To the extent that Google intends to argue on summary judgment and at trial that the named plaintiff data is not representative of the class as a whole, as it did on class certification in violation of this Court's December 2022 Order, then Google must be ordered to produce the class-wide data exemplars Plaintiffs requested, so that Plaintiffs can rebut this claim on the merits, as Plaintiffs fully expect the evidence will show once produced. The Court should reject Google's effort in its argument below to blame Plaintiffs for a problem solely of Google's own making. Plaintiffs contend that the experiences of the named plaintiffs are in fact representative of the class they seek to represent, which Google has now questioned. Having raised the issue, Google must be ordered to produce the discovery needed to resolve it.

**Third**, because fact discovery closed before the District Court has ruled on the pending class certification motion, Plaintiffs could not wait until the class was certified to serve the class-wide discovery called for in RFP 141. Nor can Plaintiffs wait until the District Court rules. Plaintiffs' experts need this information sufficiently before their merits expert reports are due on April 5, 2024 to be able to analyze the data and incorporate it into their reports. If the data is not analyzed and discussed in the experts' reports due on April 5, Plaintiffs will not be able to present it at summary judgment and at trial, which is extremely prejudicial to Plaintiffs. Google has no answer to this procedural problem, but because it is not a problem Plaintiffs caused, Plaintiffs should not be prejudiced by it.

**Fourth**, Google's objections to providing the data requested in RFP 141 are meritless and should be overruled. Google claims that it doesn't understand what data fields are being called for. *See* Ex. B at p. 7. This is absurd; Google knows full well what specific fields it produced and is at this very moment producing those data fields for four weeks in 2023 without any confusion or uncertainty.[1] Google claims that it should not have to respond to RFP 141 because no class has been certified. *Id*. But for the reasons set forth above, and through no fault of Plaintiffs, the class-wide data <u>must</u> be produced now for Plaintiffs and their experts to be able to use it for merits reports, summary judgment, and trial. Waiting for the class to be certified prejudices Plaintiffs

---

[1] Google agreed to produce the additional four weeks of named plaintiff data, but has neither made that production nor committed to a production date, even though fact discovery already closed.

because it means that when the data is finally produced, it will not be of any practical use to Plaintiffs or their experts. Google claims that the request is not reasonably limited in time. *Id*. This too is meritless. Google already has produced exemplar RTB data for the named plaintiffs for the years in question (2021-2023), so it is known to exist, and Plaintiffs only seek six ten-minute intervals of data for the same period—a limited and entirely manageable amount of data according to Plaintiffs' experts, and entirely proportional to the needs of the case as well, since Google has put the representative nature of the named plaintiff data it was ordered to produce squarely at issue.[2] Finally, Google contends that it cannot produce the information without consent of its account holders. *Id*.[3] But an exception to account holder consent exists. Google specifically informs account holders in its Privacy Policy[4] that their data may be produced to comply with legal obligations or in response to a legal proceeding, and account holders have thus provided lawful consent for Google to produce their data in response to an order by the Court. *See In re Akhmedova*, No. 20-MC-80156-VKD, 2020 WL 6891828, at *3–4 (N.D. Cal. Nov. 24, 2020). Moreover, Google cannot now square its refusal to provide this evidence to Plaintiffs when it has already disseminated it to hundreds of companies around the world billions of times, and none of the cases Google cites hold otherwise. Google has had no concerns about violating the law to run its profitable RTB business and make money; it cannot now pretend otherwise to avoid its legitimate discovery obligations and hide highly relevant evidence of its wrongful conduct.

Google should be ordered to produce the requested class-wide RTB data by March 16, 2024, to allow adequate time for Plaintiffs and their experts to analyze that data and incorporate it into their merits reports.

## II.   GOOGLE'S POSITION

As the Court is aware, Google has already produced extensive data regarding the Named Plaintiffs—consisting of ▮▮▮ of records and covering multiple requested time periods—and Plaintiffs relied on this data in their class certification motion. Several weeks after class

---

[2] Google makes no actual showing of burden or disproportionality, claiming only that the data would take time to collect and up to 180 terabytes of storage space. That amount of data can easily be handled by Plaintiffs' experts on hard drives and is not a legitimate basis to deny core discovery in a potentially billion-dollar case.

[3] Google's consent objection is another example of Google saying one thing to this Court and the opposite to the District Court. In opposing class certification, Google argued that the information shared in RTB auctions is not personal information because it cannot be linked to a Google account or be reasonably capable of identifying an individual or household. *See, e.g.*, Google Opposition Brief at p. 4 (ECF 583-3); Psounis Expert Report at pp. 8-35 (ECF 584-3); Striegel Expert Report at pp. 52-57 (ECF 584-1). But here, Google claims that it cannot provide class-wide data without account holder consent because that data includes personal information. Google cannot have it both ways.

[4] *See,* Google's current and prior Privacy Policies, accessible at: https://policies.google.com/privacy?hl=en-US#infosharing.

certification was fully briefed and shortly before fact discovery closed, Plaintiffs propounded RFP No. 141, which seeks "[a]ll Google RTB data fields similar to the data fields produced by Google for the Named Plaintiffs, but for all Google account holders subject to a U.S. terms of service" for six different 10-minute intervals on various days in 2021, 2022, and 2023. The Court should reject Plaintiffs' latest data demand for multiple reasons.

*First*, Google cannot be required to produce the data requested involving non-party Google account holders because such production would—under Plaintiffs' own theory in this case—violate the Stored Communications Act, 18 U.S.C. § 2701 *et seq*. ("SCA"). Throughout this case, Plaintiffs have taken the position that the data in RTB bid requests constitutes the "contents" of "communications" of Google account holders. *See, e.g.*, Compl. ¶ 437 (alleging that "RTB bid requests" contain "contents" of "Plaintiffs' and Class Members' communications"); Plaintiffs' R&O to Google's Interrogatory No. 12 (responding to Google's contention interrogatory by stating that the data Google produced in discovery includes the "contents" of "communications" for purposes of their state wiretapping claim).[5] However, the SCA legally bars providers of an "electronic communications service," like Google, from providing the content of its users' communications to a third-party. Under the SCA, "a person or entity providing an electronic communication service to the public shall not knowingly divulge to any person or entity the contents of a communication while in electronic storage by that service . . . ." 18 U.S.C. § 2702(a)(1).[6] This prohibition includes disclosures in response to civil discovery requests. *See Theofel v. Farey-Jones*, 359 F.3d 1066, 1074 (9th Cir. 2004) (compelling production of email messages in discovery would run afoul of "the specific [privacy] interests that the [SCA] seeks to protect"); *In re Facebook, Inc.*, 923 F. Supp. 2d 1204, 1206 (N.D. Cal. 2012) (rejecting demand for production of records from Facebook account based on the SCA). Google thus cannot be required to produce in discovery the alleged contents of communications of its account holders. But that is precisely what Plaintiffs demand here. The production Plaintiffs are demanding would amount to violations of the SCA (and CIPA) under Plaintiffs' own theory that bid request data constitutes "contents" of "communications." The Court should reject Plaintiffs' demand on this basis alone.

*Second*, Plaintiffs provide no legitimate reason for their massively overbroad demand for data spanning millions of non-party Google account holders. As an initial matter, courts have recognized that "at the pre-class certification stage, discovery in a putative action is generally limited to certification issues" because putative "class members and parties are not treated identically." *Aldapa v. Fowler Packing Co. Inc.*, 2016 WL 3361807, at *7 (E.D. Cal. June 16, 2016) (quoting *Dysthe v. Basic Research, LLC*, 273 F.R.D. 625, 628 (C.D. Cal. 2011)); *see McPhail v. First Command Fin. Plan., Inc.*, 251 F.R.D. 514, 517 (S.D. Cal. 2008) ("Discovery from absent class members is ordinarily not permitted.").

---

[5] Google disputes that the data transmitted via RTB constitutes "content" for purposes of CIPA. *See, e.g.*, *Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1082–83 (C.D. Cal. 2021).

[6] Further, under 18 U.S.C. § 2702(c), even if information "pertaining to a subscriber … or customer" does not include "the contents of communications," disclosure is permitted only under specific circumstances and generally requires "the lawful consent of the customer or subscriber."

Here, Plaintiffs contend that (1) Google argued in opposing class certification that Plaintiffs did not adequately show that the Named Plaintiffs' data is representative of the proposed class as a whole, and (2) they therefore need data of non-party Google account holders to try to make a better showing that the Named Plaintiffs' experiences are representative. Plaintiffs' belated effort to remedy this issue, however, does not justify obtaining the data sought in RFP No. 141. Plaintiffs chose to proceed with class certification based on the Named Plaintiffs' data and various third-party data sources,[7] and waited three months after Google filed its opposition (and raised the argument Plaintiffs allege they must now address) to propound RFP No. 141. Plaintiffs have had years of discovery and multiple discovery deadline extensions to develop evidence to try to show that the Named Plaintiffs' experiences are representative of the proposed class, and they should not be given additional data at this late stage of the case when class certification has already been fully briefed and set for hearing later this month.

Plaintiffs argue they are entitled to this additional data because Google purportedly promised to "produce RTB data that is representative of the class as whole." But this badly distorts the record—Google never represented that its Named Plaintiff data production would be representative of "the class as a whole," nor did the Court ever require any such production. Rather, the Court simply required that the time samples of Named Plaintiff data be "representative" for *the named Plaintiffs'* experiences over the proposed class period. Specifically, when the Court noted that Google "must take steps to ensure that the sample [of Named Plaintiff data] is representative," (the language Plaintiffs quote above), it was in the context of the Court's finding that "production of named plaintiff data for the entire class period would impose an undue burden, and some kind of sampling is appropriate," making clear the data samples need only be representative for the Named Plaintiffs themselves. *See* ECF No. 383 at 5. And when the Court later resolved the dispute over "what sampling would be representative for the class period," it did so by permitting Plaintiffs to select "six additional week-long periods for Google to sample" for Named Plaintiff data, without any requirement that such data be representative of the class as a whole. ECF No. 484 at 2. Plaintiffs' claim that Google was required to produce data representative of the proposed class is simply false.

Plaintiffs further argue that even though data involving non-party Google account holders would be relevant only if a class is ultimately certified, they need this data now because "fact discovery closed before the District Court has ruled on the pending class certification motion." But that does not change the prevailing law that discovery of putative absent class members is generally unavailable without a certified class. *See, e.g.*, *Laguna v. Coverall N. Am. Inc.*, 2011 WL 3176469, at *8 (S.D. Cal. July 26, 2011) (rejecting demand for information relating to putative class members "[b]ecause no class has been certified"). Nor does it change the fact that Plaintiffs are insisting on a production that would violate the SCA under their own theory of the case. In any

---

[7] Plaintiffs suggest that data from Google is the only way they can try to show that the named Plaintiffs are representative of the proposed class. But Plaintiffs had ample opportunities to develop evidence from other sources. Plaintiffs served over 50 subpoenas to third parties seeking bid request data. Ultimately, Plaintiffs opted to use only a handful of those sources, presumably because the third-party data did not show what Plaintiffs had hoped. *See* ECF No. 546-4, App. B. That is not Google's fault, and the Court should reject Plaintiffs' claim that they will be prejudiced without additional data from Google.

case, Plaintiffs' claims of prejudice are overblown given the ample opportunities they have had to develop evidence from third-party sources. *See* note 7.  Moreover, Plaintiffs withdrew their prior request to extend the fact discovery period, ECF 638, which would have pushed fact discovery beyond the current class certification hearing date, as part of the parties' recent stipulation to extend the merits experts and summary judgment deadlines, ECF 656.  Any difficulty the current schedule might pose for Plaintiffs is therefore a result of their own choices.

***Third***, the data sought by RFP No. 141 is excessive and disproportional to the needs of the case. Plaintiffs contend that the putative class in this case spans "tens of millions of potential class members." Class Cert. Mot. at 9. Pulling data across these many millions of Google account holders, even limited to 10-minute samples, would impose significant burden on Google that is disproportional to the needs of this case. Based on a preliminary assessment, this data would likely require nearly 180 terabytes of storage, and significant engineering time and resources to try to collect. Under the circumstances, requiring Google to comply with RFP No. 141 "outweighs its likely benefit," particularly when Google has already produced ▮▮▮▮ of records spanning multiple time periods for the Named Plaintiffs. *See* Fed. R. Civ. P. 26(b)(1); *Arredondo v. S.W. & Pac. Specialty Fin., Inc.*, 2019 WL 6128657, at *5 (E.D. Cal. Nov. 19, 2019) (denying motion to compel class-wide discovery for every putative class member because it would not be disproportional).

The Court should reject Plaintiffs' demand in RFP No. 141.

### III. NECESSITY OF A HEARING

#### A. Plaintiffs' Position

Plaintiffs request a hearing at the Court's earliest opportunity, as the resolution of this dispute affects merits experts reports, the upcoming summary judgment briefing and trial.

#### B. Google's Position

Google does not believe a hearing is necessary for the Court to resolve this dispute.

### IV. DISCOVERY CUT-OFFS

The fact discovery cut-off ran on January 19, 2024, and fact discovery motions are due by February 2, 2024. Opening merits reports are due April 5, 2024, and rebuttal reports are due by May 14, 2024. The close of expert discovery is June 7, 2024. *See* ECF 656. Plaintiffs filed their motion for class certification on July 14, 2023. ECF 546 [public version], and opposition and reply briefing was concluded on September 29, 2023 (ECFs 583-602 [public versions]), and November 29, 2023 (ECF 617 [public version]), respectively.  The District Court scheduled a class certification hearing for February 21, 2024 at 9:30 am. ECF 655.

### V. COMPLIANCE WITH MEET-AND-CONFER REQUIREMENT

The Parties met and conferred several times, and a final meet-and-confer took place on January 24, 2024, via Zoom. On plaintiffs' side, Elizabeth Pritzker and Jonathan Levine of Pritzker Levine LLP attended. On Google's side, Whitty Somvichian and Aarti Reddy of Cooley LLP attended.

Dated: February 2, 2024

**PRITZKER LEVINE LLP**

By: */s/ Elizabeth C. Pritzker*
Elizabeth C. Pritzker (SBN 146267)
Jonathan K. Levine (SBN 220289)
Bethany Caracuzzo (SBN 190687)
Caroline Corbitt (SBN 305492)
1900 Powell Street, Suite 450
Emeryville, CA 94608
Tel.: (415) 692-0772
Fax: (415) 366-6110
ecp@pritzkerlevine.com
jkl@pritzkerlevine.com
bc@pritzkerlevine.com
ccc@pritzkerlevine.com

*Interim Class Counsel*

**Counsel for Plaintiffs and the Proposed Class**

Dated: February 2, 2024

**COOLEY LLP**

By: */s/ Whitty Somvichian*
Michael G. Rhodes
Whitty Somvichian
Aarti Reddy
Reece Trevor
Anupam S. Dhillon
3 Embarcadero Center, 20th floor
San Francisco, CA 94111-4004
Tel.: 415-693-2000
Fax: 415-693-2222
rhodesmg@cooley.com
wsomvichian@cooley.com
areddy@cooley.com
rtrevor@cooley.com
adhillon@cooley.com

Robby L.R. Saldaña
Khary J. Anderson

1299 Pennsylvania Avenue NW, Suite 700
Washington, DC 20004-2400
Tel.: 202-776-2109
Fax: 202-842-7899
rsaldana@cooley.com
kjanderson@cooley.com

**Attorneys for Defendant GOOGLE LLC**

### ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1(h)(3)

I, Whitty Somvichian, attest that concurrence in the filing of this document has been obtained from the other signatories. I declare under penalty of perjury that the foregoing is true and correct. Executed this 2nd day of February 2024, at San Francisco, California.

*/s/ Whitty Somvichian*
Whitty Somvichian
