# Plaintiffs' Objection and Motion to Modify Special Master Report and Recommendation

# Redacted Version of Document Sought to be Sealed

**BLEICHMAR FONTI & AULD LLP**
Lesley Weaver (Cal. Bar No.191305)
Angelica M. Ornelas (Cal. Bar No. 285929)
Joshua D. Samra (Cal. Bar No. 313050)
555 12th Street, Suite 1600
Oakland, CA 94607
Tel.: (415) 445-4003
Fax: (415) 445-4020
lweaver@bfalaw.com
aornelas@bfalaw.com
jsamra@bfalaw.com

**SIMMONS HANLY CONROY LLC**
Jason 'Jay' Barnes (admitted *pro hac vice*)
An Truong (admitted *pro hac vice*)
Eric Johnson (admitted *pro hac vice*)
112 Madison Avenue, 7th Floor
New York, NY 10016
Tel.: (212) 784-6400
Fax: (212) 213-5949
*jaybarnes@simmonsfirm.com*
*atruong@simmonsfirm.com*
*ejohnson@simmonsfirm.com*

**DICELLO LEVITT GUTZLER LLC**
David A. Straite (admitted *pro hac vice*)
Corban Rhodes (admitted *pro hac vice*)
One Grand Central Place
60 East 42nd Street, Suite 2400
New York, NY 10165
Tel.: (646) 933-1000
Fax: (646) 494-9648
*dstraite@dicellolevitt.com*
*crhodes@dicellolevitt.com*

Amy Keller (admitted *pro hac vice*)
Adam Prom (admitted *pro hac vice*)
Sharon Cruz (admitted *pro hac vice*)
Ten North Dearborn St., 6th Floor
Chicago, IL 60602
Tel.: (312) 214-7900
*akeller@dicellolevitt.com*
*aprom@dicellolevitt.com*
*scruz@dicellolevitt.com*

*Counsel for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
## OAKLAND DIVISION

| | |
|---|---|
| PATRICK CALHOUN, et al., on behalf of themselves and all others similarly situated,<br>Plaintiffs,<br>v.<br>GOOGLE LLC,<br>Defendant. | Case No. 4:20-cv-05146-YGR-SVK<br><br>**PLAINTIFFS' OBJECTIONS AND MOTION TO MODIFY SPECIAL MASTER REPORT AND RECOMMENDATION REGARDING MODIFIED PRESERVATION PLAN (SEALED DKT. NO. 665)**<br><br>Fed. R. Civ. P. 53(f)(2)<br><br>Referral: Susan van Keulen, U.S.M.J.<br>Special Master: Douglas A. Brush<br><br>Zoom Hearing: June 30, 2022 at 9:30AM PT |

**UNREDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

# **TABLE OF CONTENTS**

I.   Preliminary Statement and Summary of Argument ............................................................. 1

II.  Statement of Issues to be Decided ...................................................................................... 2

III. Prior Objections Incorporated by Reference ....................................................................... 2

IV.  Memorandum of Points and Authorities ............................................................................. 4

    A. Legal Standard ............................................................................................................... 4

    B. Numbered Objections / Requests for Modifications ..................................................... 4

V.   Conclusion ......................................................................................................................... 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*United States v. High Plains Livestock*,
 2017 WL 3052269 (July 10, 2017, D.N.M.) .................................................................................. 4

**Statutes**

18 U.S.C. § 2510(8) ......................................................................................................................... 8

**Other Authorities**

Fed. R. Civ. P. 53(f)(1) .................................................................................................................... 4

Fed. R. Civ. P. 53(f)(2) .................................................................................................................... 4

Fed. R. Civ. P. 53(f)(3) .................................................................................................................... 4

I.  **PRELIMINARY STATEMENT AND SUMMARY OF ARGUMENT**

The Special Master's Amended Report and Recommendations dated May 23, 2022 (the "Amended R&R," *Calhoun* Sealed Dkt. No. 665) recommending a modified data log preservation plan (the "Modified Plan") is a thoughtful compromise. Last year, Google perpetrated a grave injustice on the putative class and on the Court when it secured an order relieving it of the obligation to suspend ordinary data deletion policies – secured by falsely representing that the data logs do not record whether a Chrome user is not synced. See Dkt. No. 174. Google has since admitted to the Plaintiffs and to the Special Master the opposite – that numerous data logs record when a Chrome user is "signed in but not consented for sync" (the "▮▮▮▮" signal) or when a user turns off the sync feature (the "▮▮▮▮▮▮▮" signal). Plaintiffs also recently learned of a ***third*** signal called "▮▮▮▮▮▮" that, when set to zero or "false," is proof that a Chrome user is not signed in (and thus not consented for sync). There are also other signals from which the not-sync state can be inferred, including certain signed-out identifiers like *Biscotti* (the DoubleClick advertising ID) and *Zwieback* (the primary way Google tracks signed-out users across the web).

The Modified Plan partially remedies Google's injustice – prospectively, at least.[1] Under the Modified Plan, Google is required to preserve a small subset of fields from a small subset of data logs ▮▮▮▮▮▮▮▮▮ that contain the most relevant data for the putative class. The preserved data includes not-synced signals; certain user and device IDs; location information; and some web browsing information ▮▮▮▮▮▮▮▮▮▮ would then be subject to daily sampling of a small sample (fewer than 0.01%) of the activity of Chrome users. The remaining data logs (representing the vast majority of logs recording Chrome traffic and related ads and revenue information) would escape any preservation or sampling under the Modified Plan.

Plaintiffs still strongly prefer full preservation of all relevant logs. Without full preservation, the Court might need to engage in future determinations regarding evidentiary inferences permitted

---

[1] Plaintiffs and putative class members have no adequate preservation remedy for Google's ***past*** deletion of the data logs, which is the subject of the Motion for Sanctions for Discovery Misconduct dated May 24, 2022 (Dkt. No. 670). Today's Objections and Motion to Modify is thus limited to the ***prospective*** relief recommended in the Modified Plan.

from the samples, because there has not been any *a priori* inquiry into the scientific reliability of the sample structure. There is also the very real danger that Google is still concealing yet more not-synced signals, because the Special Master log-search process has not yet concluded. But if the Court adopts the Modified Plan over Plaintiffs' objections, Plaintiffs respectfully request certain (hopefully non-controversial) modifications to reduce ambiguities and reduce the chances of future disputes. Therefore, pursuant to Fed. R. Civ. P. 53(f) and this Court's instructions on May 23, 2022 (Dkt. No. 667), the *Calhoun* Plaintiffs respectfully submit these objections and move to modify the Amended R&R to clarify several points:

1. Clarify what is meant by "sync-state" signals;
2. Clarify what is meant by "any ID not mentioned;"
3. Require that Google identify the fields subject to preservation, produce all field names and descriptions to Plaintiffs, and give Plaintiffs an opportunity to participate in the selection of preserved fields;
4. Order Google not to change log preservation periods without prior Court approval;
5. Clarify the order to preserve "encryption keys;" and
6. Clarify that Google cannot use the destruction of profile, revenue, and certain content information to oppose any motion by the named Plaintiffs or claims made by absent class members.

Plaintiffs also preserve certain objections to the original April 4, 2022 R&R, set forth in Section III below, as instructed by the Court, see Dkt. No. 667, and therefore Plaintiffs retain the original objection numbering herein. Two of the prior objections are also re-asserted today in modified form, in light of the Special Master's modifications.

**II.    STATEMENT OF ISSUES TO BE DECIDED**

Whether the Court should adopt the Special Master's Amended Report and Recommendations and Modified Preservation Plan, with the modifications proposed by Plaintiffs herein.

**III.   PRIOR OBJECTIONS INCORPORATED BY REFERENCE**

On April 15, 2022, Plaintiffs filed twelve numbered objections to the original R&R and Preservation Plan. *See* Dkt. No. 622. As permitted by the Court in its order of May 23, 2022 (Dkt.

No. 667), the following numbered objections are incorporated herein by reference:

1. The First Objection (objection to sampling) is incorporated herein by reference.

2. The Second Objection (requesting preservation of full logs containing not-synced signals) is incorporated herein by reference.

3. The Third Objection (full preservation of logs already being retained indefinitely) is incorporated herein by reference. Plaintiffs also restate this objection below in modified form.

4. The Fourth Objection (request for production of protos) is incorporated herein by reference.

5. The Fifth Objection (selection of sample population) is incorporated herein by reference.

6. The Sixth Objection (inclusion of Biscotti and Zwieback IDs) was addressed by the Special Master in the Amended R&R and thus withdrawn.

7. The Seventh Objection (renewed request for production of data dictionaries and schema) is incorporated herein by reference, but now refers to Instruction Number 4.

8. Eighth Objection (preservation period) is incorporated herein by reference.

9. The Ninth Objection (continued full preservation of all Named Plaintiff data) is incorporated herein by reference.

10. The Tenth Objection (notice to putative class members regarding effect of wipe-out instructions) is incorporated herein by reference, although in the Modified Plan, the wipe-out instructions are now in Instruction No. 3.

11. The Eleventh Objection (request for preservation of encryption keys) was addressed by the Special Master; however, Plaintiffs request clarification of the definition of "encryption keys," in modified Eleventh Objection below.

12. The Twelfth Objection (preservation of mapping tables) is incorporated herein by reference. The *Calhoun* Plaintiffs also note that on May 31, 2022, the Court ordered in *Brown* that "Mapping and Linking tables are to be preserved in their entirety," *Brown* Dkt. No. 592-3, and request the identical order here.

IV.     **MEMORANDUM OF POINTS AND AUTHORITIES**

A.     **LEGAL STANDARD**

"A party may file objections to – or a motion to adopt or modify – the master's order, report or recommendations no later than 21 days after a copy is served, unless the court sets a different time." Fed. R. Civ. P. 53(f)(2). On May 23, 2022, the Court ordered objections to be filed on an expedited schedule. Dkt. No. 667. Findings of fact and legal conclusions are reviewed de novo. Fed. R. Civ. P. 53(f)(3). In addition, a party filing objections or moving to modify a special master order may submit evidence. Fed. R. Civ. P. 53(f)(1); *accord*, *United States v. High Plains Livestock*, 2017 WL 3052269, at *7 (July 10, 2017, D.N.M.) (allowing evidence).

B.     **NUMBERED OBJECTIONS / REQUESTS FOR MODIFICATIONS**

1.     ***First and Second Objections***: asserted on April 15, 2022 (see Dkt. No. 622) and incorporated herein by reference.

2.     ***Third Objection***: On April 15, 2022, Plaintiffs requested that certain data logs be preserved in their entirety, and this objection is incorporated herein by reference. But Plaintiffs now also request that the Court include the following provision: "Google may not shorten the existing data preservation period for any data source identified in the preservation plan without the **express** permission of the Court, until this case has concluded." Such provision was recently added to the *Brown* preservation plan. *See Brown* Dkt. No. 592-3. In addition, Plaintiffs respectfully request that the Court also order Google not to alter the structure of any relevant data logs, including moving data fields from longer-retained logs to shorter-retained logs, without express permission of the Court, until this case has concluded. Plaintiffs understand that Google alters the structure of data logs in the ordinary course, and an order not to alter log retention periods is pointless if relevant data fields are shifted from long-retention period logs to short-retention-period logs.

3.     ***The Fourth, Fifth, and Seventh through Tenth Objections*** are incorporated herein by reference.

4.     ***The Eleventh Objection*** (Plaintiffs' request to order preservation of encryption keys): this request was made in Plaintiffs' April 15, 2022 objections, and ==later adopted by the==

1  Special Master in the Modified Plan in Preservation Instruction No. 1 (and referenced in certain
2  rows in the chart of data sources with the notation "+decryption keys"). Plaintiffs respectfully
3  request that the Court slightly modify the language to mention "rotating keys" for clarity; thus, the
4  plan would require Google to preserve "all encryption keys necessary to decrypt all preserved data,
5  in their entirety, for the respective time periods ("rotating keys") and time periods." A similar (but
6  not exact) provision was recently added to the *Brown* preservation plan. *Brown* Dkt. No. 592-3.

7      5.    **The Twelfth Objection** (preservation of mapping tables): On April 15, 2022, the
8  *Calhoun* Plaintiffs objected to the original R&R, requesting that the Court add a provision requiring
9  the preservation of mapping tables. That objection is incorporated herein by reference, and the
10 *Calhoun* Plaintiffs also note that on May 31, 2022, the Court ordered in *Brown* that "Mapping and
11 Linking tables are to be preserved in their entirety," *Brown* Dkt. No. 592-3. The *Calhoun* Plaintiffs
12 request the identical order here.

13     6.    **The Thirteenth Objection** (clarification of definition of "sync-state signals"): This
14 objection is new, related only to changes in the Modified Plan. The Special Master ordered "full
15 ongoing preservation" of fields that contain "sync state." Plaintiffs seek clarification that "sync
16 state" encompasses all signals from which Google can directly or indirectly identify a user as being
17 synced or not synced. This includes not only the signals expressly listed in the Amended R&R
18 (▮ and Biscotti), but also the two additional not-synced signals that Google has
19 admitted to (▮ and ▮). Preservation should also include all Zwieback-keyed
20 entries. Just like "▮," a signal specifically mentioned in the Modified Plan, Zwieback
21 also identifies users who are "signed out" and thus by definition not synced.

22     Inclusion of Zwieback-keyed data in the preservation plan should not be controversial. The
23 Special Master explicitly ordered full preservation of all fields (in ▮ specific logs) that record
24 "sync state" including Biscotti and ▮, as well as "any ID not mentioned below." This
25 should include signals from which sync state may be *inferred*, which would be consistent with this
26 Court's prior order on November 12, 2021 that Google identify "where sync-state is expressly
27 stated *or can be inferred*." Dkt. No. 378 (emphasis added). Zwieback is the most important signal
28

from which Google may infer not-synced status, and should be explicitly added to the Modified Plan, along with ███████████████████████, and Biscotti.

7. **The Fourteenth Objection** (Clarification of additional IDs "not mentioned"): As noted above, in the Modified Plan, the Special Master ordered "full ongoing preservation" of Biscotti IDs, IP address, User Agent, and "any ID not mentioned below." Plaintiffs request clarification that the Modified Plan necessarily requires preservation of all user and device IDs, and sources where the following are comingled: (1) Gaia and Zwieback (as comingled in Gaia and Zwieback ███); and (2) Gaia and Biscotti (as comingled in various backend logs). Plaintiffs also believe the Special Master's order incorporates street addresses, phone numbers, and precise geolocation – as recorded in Gaia and Zwieback ███. (R&R Index Nos. 31, 34, 36). Accordingly, Plaintiffs request that the Order be clarified to include these additional identifiers and identifier-comingling sources by name.

From the beginning of discovery, Google has claimed that it does not comingle Gaia with Biscotti or Zwieback in any sources and that it would violate internal procedures to comingle the two. Over the course of the past year, Google produced Plaintiff data and other discovery sufficient to incontrovertibly prove that Google comingles Gaia with Biscotti and Gaia with Zwieback in the ordinary course of its business. For example, on February 23, 2022, Google produced Zwieback ███ columns data that revealed:

- Shopping-address-zwieback – preferred_delivery_address[2]
- Gaia-recovery-phone-data[3]
- ███ with precise geo-location[4]
- ███ that comingle Zwieback and Gaia[5]

---

[2] Address is contained in Row 122 of GOOG-CALH-01170421, attached as Ex. A to the Declaration of David Straite dated June 8, 2022.

[3] Phone number is contained in Row 34.

[4] Precise geo-location is contained in Rows 65-67 and 73.

[5] Gaia is comingled with Zwieback in Rows 21-30, 33-34, 93, 134-138, 140-146, and 330.

      • ███ that contain sync signals[6]

Further revelations of how Google comingles Gaia and Zwieback occurred on May 9, 2022, the date on which Plaintiffs received Gaia ███ columns data that revealed:

      • ███ comingling Gaia with Zwieback[7]

      • ███ with sync signals[8]

8. **The Fifteenth Objection** (Google should identify relevant fields): the Modified Plan mostly adopts Google's preference for sampling, and only adopts Plaintiffs' preference for full preservation with respect to ███ data logs – and only with respect to a subset of "fields" that contain data listed in the Modified Plan. But while the *data* is mostly identified, the *fields* are not. Plaintiffs therefore respectfully request several modifications to this aspect of the order to ensure a level playing field:

    a. *Identification of Fields*: Google should identify all fields that it believes are implicated by the preservation order. As currently worded, Google has no obligation to reveal what fields it contends are implicated.

    b. *Production of all field names, descriptions, data dictionaries and schema for the logs*: Full transparency must be the rule if Google is to be trusted with selecting which fields meet the preservation criteria. Furthermore, there should be no undue burdens associated with producing field names, descriptions, data dictionaries and schema for these data sources, because the Special Master

---

[6] Sync signals exist in Rows 406-407 and 434.

[7] Zwieback is present in the following Rows identified in Google's GAIA ███ production: 58, 69, 125, 186, 217, 226, 245, 246, 316, 456, 467, 477, 546, 614, 654, 689, 716, 765, 811, 846, 894, 932, 955, 1031, 1058, 1154, 1227, 1245, 1341, 1362, 1437, 1477, 1588, 1632, 1663, 1697, 1739, 1773, 1778, 1783, 1881, 1924, 1953, 1965, 2003, 2048, 2052, 2120, 2206, 2234, 2245, 2295, 2313, 2378, 2416, 2498, 2789, and 2803. *See* Straite Decl., ¶ 5.

[8] Sync signals are present in Rows 32, 128, 286, 428, 465, 555, 745, 784, 940, 963, 997, 1085, 1264, 1347, 1379, 1383, 1599, 1683, 1692, 1721, 1807, 1809, 1901, 1973, 1982, 2232, 2289, 2636, 2688, and 2767. *Id.*

already ordered that they be preserved. See Instruction No. 4.[9]

    c. *Clarification re:* ▇▇▇: The ▇▇▇ data sources (Gaia ▇▇▇ and Zwieback ▇▇▇, Index Nos. 28 and 36, respectively) have "columns" identified during discovery. See Straite Decl., ¶ 5 and Ex. A. But Google never identified "fields." The Court should clarify that for these two data sources, all columns, not "fields," should be preserved if they meet the criteria in the Modified Plan.

9. **The Sixteenth Objection** (Google may not use the absence of deleted data in any argument): The Special Master largely adopted Google's preference for sampling, only ordering limited preservation of a subset of fields in a limited number of data logs. If Google is permitted to argue that the absence of such information is a bar to class certification, class member identification and qualification, or the merits of any absent class member's claim, Plaintiffs and putative class members would be grossly and unfairly prejudiced. If Google is given authority from the Court to destroy relevant data, therefore, such order must be accompanied by an evidentiary order precluding Google from raising the absence of such data in any argument related to any issue in the case.

For example, Plaintiffs' review of Google's May 20 production of Plaintiff data revealed that *every* entry for *every* named Plaintiff and *every* Shafiq test account in the ▇▇▇ ▇▇▇ log that contains a URL, also contains multiple additional data fields with ▇▇▇. Under the Electronic Communications Privacy Act ("ECPA," 18 U.S.C. § 2510(8)), "'contents,' when used with respect to any … electronic communication, includes any information concerning the substance, purport, or meaning of that communication." Here, "content" contained within URLs for every Plaintiff in the ▇▇▇ ▇▇▇. These fields are not designated for preservation in the Modified Plan, and Google should not be able to use the absence of data to argue against "content."

---

[9] The Special Master recommends full preservation of unnamed "fields" in the logs identified in Index Nos. 2, 15, 28, 36, 49, 53, 56-58, and 60-62.

As defined by Google, a ███████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████ *See* Straite Decl., Ex. B (GOOG-CABR-00893711) and Ex. C (GOOG-CABR-00096597). All of these are "content" under the ECPA (and show that the underlying "content-URLs" contained within the ██████████████████ log are also content) because they "concern[] the substance, purport, and meaning of" the underlying electronic communication. For example, an entry for one of the Plaintiffs who exchanged a communication with a medical facility that was present in the ██████████████████ log included a "content-URL" that included the words ██████████████████████████████████

████ Straite Decl., ¶ 6.

In addition to "content," every entry in the ████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████."[10]

This "profile" information is highly relevant to Plaintiffs' privacy claims and Google's consent argument. The California Supreme Court has explained that the California constitutional invasion of privacy tort was created precisely to guard against companies gathering massive amounts of personal data about people for the purpose of building individual dossiers. *See, e.g. Hill*

---

[10] Plaintiffs cannot tell the Court what the "███████" and ██████████ provided in any of the Plaintiff productions mean because Google has refused to translate them. Plaintiffs have requested that the Special Master order translation.

*v. Nat'l Collegiate Athletic Assn.*, 865 OP.2d 633 (Cal. 1994). Aware of its relevance, Google initially falsely denied that it kept any user profiles in the related *Brown* action. *See Brown* Feb. 25, 2022 Hrg. Tr. at 27:17-20. But of course this is not true. Google not only keeps user profiles, but it keeps a detailed record of every profile category into which it has placed a user. These categories may range from mundane to highly sensitive when considered individually. However, when considered as a whole and as used across so many different websites that Google's tracking and profile-making is unavoidable, it becomes highly offensive for all.

Finally, every entry for every Plaintiff and every Shafiq test account in ██████████ ██████████████████████████████████████████████████████████████ ████████████████████████████████████████████. This data, which is keyed to individual user identifiers, can be used to nearly perfectly apportion unjust enrichment revenues relating to Display Ads (or doubleclick.net) precisely across different class members. However, if Google does not preserve it on a class-wide basis, the data will not be available for near-perfect Display Ads unjust enrichment apportionment calculations.

V.  **CONCLUSION**

Plaintiffs respectfully request that the Court order full preservation of the relevant data logs. In the alternative, to the extent the Court adopts the Special Master's Modified Plan, the Plaintiffs respectfully request that the plan be modified in accordance with the objections above.

[Signatures on Following Page]

| | |
|---|---|
| DATED: June 8, 2022 | Respectfully submitted, |
| **BLEICHMAR FONTI & AULD LLP** | **DICELLO LEVITT GUTZLER LLC** |
| By:  */s/ Lesley E. Weaver* | By:  */s/ David A. Straite* |
| Lesley Weaver (Cal. Bar No. 191305) | David A. Straite (admitted *pro hac vice*) |
| Angelica M. Ornelas (Cal. Bar No. 285929) | Corban Rhodes (admitted *pro hac vice*) |
| Joshua D. Samra (Cal. Bar No. 313050) | One Grand Central Place |
| 555 12th Street, Suite 1600 | 60 E. 42nd Street, Suite 2400 |
| Oakland, CA 94607 | New York, NY 10165 |
| Tel.: (415) 445-4003 | Tel.: (646) 993-1000 |
| Fax: (415) 445-4020 | *dstraite@dicellolevitt.com* |
| *lweaver@bfalaw.com* | *crhodes@dicellolevitt.com* |
| *aornelas@bfalaw.com* | |
| *jsamra@bfalaw.com* | Amy Keller (admitted *pro hac vice*) |
| | Adam Prom (admitted *pro hac vice*) |
| **SIMMONS HANLY CONROY LLC** | Sharon Cruz (admitted *pro hac vice*) |
| | Ten North Dearborn St., 6th Floor |
| By:  */s/ Jay Barnes* | Chicago, IL 60602 |
| Jason 'Jay' Barnes (admitted *pro hac vice*) | Tel.: (312) 214-7900 |
| An Truong (admitted *pro hac vice*) | *akeller@dicellolevitt.com* |
| Eric Johnson (admitted *pro hac vice*) | *aprom@dicellolevitt.com* |
| 112 Madison Avenue, 7th Floor | *scruz@dicellolevitt.com* |
| New York, NY 10016 | |
| Tel.: (212) 784-6400 | |
| Fax: (212) 213-5949 | |
| *jaybarnes@simmonsfirm.com* | |
| *atruong@simmonsfirm.com* | |
| *ejohnson@simmonsfirm.com* | |

*Counsel for Plaintiffs*

## ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1(h)(3)

I, David A. Straite, attest that concurrence in the filing of this document has been obtained from the other signatories. I declare under penalty of perjury that the foregoing is true and correct. Executed this 8th Day of June, 2022, at Marbletown, New York.

By    */s/ David A. Straite*
      David A. Straite

## CERTIFICATE OF SERVICE

I, David A. Straite, hereby certify that on June 8, 2022 I caused to be electronically filed the foregoing document with the Clerk of the United States District Court for the Northern District of California using the CM/ECF system, which will send electronic notification to all counsel of record. I also caused sealed versions of the foregoing document to be emailed to Google counsel of record.

By   */s/ David A. Straite*
         David A. Straite