COOLEY LLP
MICHAEL G. RHODES (SBN 116127)
(rhodesmg@cooley.com)
WHITTY SOMVICHIAN (SBN 194463)
(wsomvichian@cooley.com)
AARTI REDDY (SBN 274889)
(areddy@cooley.com)
KYLE C. WONG (SBN 224021)
(kwong@cooley.com)
KELSEY R. SPECTOR (SBN 321488)
(kspector@cooley.com)
REECE TREVOR (SBN 316685)
(rtrevor@cooley.com)
ANUPAM DHILLON (SBN 324746)
(adhillon@cooley.com)
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111-4004
Telephone:   +1 415 693 2000
Facsimile:   +1 415 693 2222

COOLEY LLP
KHARY J. ANDERSON (DC No. 1671197)
(kjanderson@cooley.com)
(*Admitted pro hac vice*)
1299 Pennsylvania Avenue, NW, Suite 700
Washington, DC 20004-2400
Telephone:   +1 202 842 7800
Facsimile:   +1 202 842 7899

Attorneys for Defendant
GOOGLE LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| In re Google RTB Consumer Privacy Litigation,<br><br>This Document Relates to: *all actions* | Master File No. 4:21-cv-02155-YGR-VKD<br><br>**GOOGLE'S OPPOSITION TO PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR CONTEMPT AND SPOILATION SANCTIONS RE NAMED-PLAINTIFF DATA**<br><br>**HEARING: JUNE 18, 2024 \| 10:00 AM**<br><br>**(REDACTED) VERSION OF DOCUMENT SOUGHT TO BE FILED UNDER SEAL** |

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

GOOGLE'S OPP. TO PLFS'
SPOILATION SANCTIONS MTN
CASE NO. 4:21-CV-02155-YGR-VKD

# TABLE OF CONTENTS

Page

I. INTRODUCTION ................................................................................................................ 1

II. BACKGROUND .................................................................................................................. 2

    A. The Parties Originally Agreed that Google Would Produce Data Associated with Identifiers Provided by the Plaintiffs. ........................................................... 2

    B. Plaintiffs' Original Request for "Joining Keys" Appeared for the First Time in a Separate Sanctions Motion and Sought Different Information. ............ 3

    C. Plaintiffs' Demand for Joining Keys then Shifted, but the Court Never Ordered Google to Produce the "Joining Keys" Plaintiffs Now Demand. ............ 4

    D. Plaintiffs Belatedly Filed this Motion Seeking Sanctions Even Though Google Has Not Violated Any Court Order. .......................................................... 7

III. ARGUMENT ........................................................................................................................ 8

    A. Plaintiffs Sat On Their Hands Nearly a Year and Their Motion Should Be Rejected As Untimely. ........................................................................................... 8

    B. Google cannot be held in contempt because it did not violate a Court order. ...... 11

    C. Plaintiffs fail to establish that Rule 37 sanctions are warranted. ......................... 13

        1. Plaintiffs have not suffered prejudice as Rule 37(e)(1) requires............... 13

        2. Google did not act with intent to deprive Plaintiffs of evidence as Rule 37(e)(2) requires. ............................................................................... 15

IV. CONCLUSION ................................................................................................................... 16

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

-i-

GOOGLE'S OPP. TO PLFS'
SPOLIATION SANCTIONS MTN
CASE NO. 4:21-CV-02155-YGR-VKD

# TABLE OF AUTHORITIES

Page

**Cases**

*Akiona v. United States*,
　938 F.2d 158 (9th Cir. 1991) ............................................................................................... 15

*Anheuser-Busch, Inc. v. Nat. Beverage Distribs.*,
　69 F.3d 337 (9th Cir. 1995) ................................................................................................. 15

*Cottle-Banks v. Cox Commc'ns, Inc.*,
　2013 WL 2244333 (S.D. Cal. May 21, 2013) ..................................................................... 10

*Duke v. City Coll. of S.F.*,
　2021 WL 1164939 (N.D. Cal. Mar. 25, 2021) ...................................................................... 9

*Etienne v. Kaiser Found. Hosp.*,
　2012 U.S. Dist. LEXIS 91600 (N.D. Cal. July 2, 2012) ..................................................... 12

*F.T.C. v. Affordable Media*,
　179 F.3d 1228 (9th Cir. 1999) ............................................................................................. 11

*Finjan, LLC v. Qualys Inc.*,
　2020 WL 6581836 (N.D. Cal. Nov. 10, 2020) ...................................................................... 9

*Koninklijke Philips N.V. v. Elec-Tech Int'l Co.*,
　2015 WL 6449399 (N.D. Cal. Oct. 26, 2015) ..................................................................... 12

*Larios v. Lunardi*,
　442 F. Supp. 3d 1299 (E.D. Cal. 2020) .......................................................................... 9, 10

*McBride v. Moore*,
　2024 WL 1136429 (C.D. Cal. Feb. 23, 2024) ................................................................. 9, 10

*Mgi Digit. Tech. S.A. v. Duplo United States Corp.*,
　2023 WL 8895701 (C.D. Cal. Nov. 16, 2023) ............................................................... 13, 14

*Muhammad v. Jenkins*,
　2022 WL 4292341 (C.D. Cal. Aug. 26, 2022) ...................................................................... 9

*Ramirez v. City of Gilroy*,
　2018 WL 6241313 (N.D. Cal. Nov. 29, 2018) .................................................................. 1, 9

*Zamani v. Carnes*,
　491 F.3d 990 (9th Cir. 2007) ............................................................................................... 15

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

-ii-

GOOGLE'S OPP. TO PLFS'
SPOLIATION SANCTIONS MTN
CASE NO. 4:21-CV-02155-YGR-VKD

# TABLE OF AUTHORITIES
(continued)

Page

**Court Rules**

Fed. R. Civ. P. 37 ............................................................................................................... *passim*

Civil Local Rule 37-3 .......................................................................................................... *passim*

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

-iii-

GOOGLE'S OPP. TO PLFS'
SPOLIATION SANCTIONS MTN
CASE NO. 4:21-CV-02155-YGR-VKD

## I. INTRODUCTION

Plaintiffs' Motion for Contempt and Spoliation Sanctions Regarding Named-Plaintiff Data (the "Motion") is procedurally improper, factually and legally baseless, and should be denied for multiple reasons.

First, Plaintiffs have known for the better part of a year that Google, consistent with its longstanding data security practices, has not been preserving ▇▇▇▇▇▇▇▇▇▇ indefinitely. Yet Plaintiffs have inexplicably and unreasonably waited until now—months after the close of discovery and its associated deadline for all discovery motions—to accuse Google of spoliation and seek sanctions. This delay alone is dispositive under Civil Local Rule 37-3 and established case law. *Ramirez v. City of Gilroy*, 2018 WL 6241313, at *1 (N.D. Cal. Nov. 29, 2018) (DeMarchi, J.)

Second, even if the Motion were timely, Google has not violated any "clear and definite" Court order to preserve and produce ▇▇▇▇▇▇▇▇▇▇ and decrypted Biscotti IDs for the named Plaintiffs. ECF No. 487 at 3 (denying Plaintiffs' last sanctions motion and noting that "[t]o obtain a contempt order as a discovery sanction, the moving party must prove by clear and convincing evidence that a court order provided 'unequivocal notice' that certain discovery must be produced.") Plaintiffs contend that the Court's discovery orders of April 14, 2023 and May 16, 2023 (the "April 14 Order" and "May 16 Order," respectively) unambiguously required Google to do so. *See* ECF Nos. 487, 510. But the April 14 Order concerned a different issue entirely (whether Google had provided Plaintiffs enough information to link records across different data productions). And the May 16 Order stated only that Google "investigate whether the Biscotti ID (in encrypted or unencrypted form) may be produced, together with the Google Account ID (or GAIA ID) where available, for all sampled named plaintiffs data." ECF No. 510 at 3. Neither Order states on its face, or could even plausibly be interpreted to impose, the imagined discovery obligations that are the premise of Plaintiffs' sanctions demands. As the Court noted in rejecting Plaintiffs' last misguided attempt to seek sanctions, Google cannot be held in contempt when it has not violated any clear order. Indeed, if there are any bad faith litigation tactics that should be addressed here, it is Plaintiffs' continuing effort to distort prior rulings and to embroil Google in continual discovery sanctions motions that have no basis.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

GOOGLE'S OPP. TO PLFS'
SPOLIATION SANCTIONS MTN
CASE NO. 4:21-CV-02155-YGR-VKD

Third, Plaintiffs have not met the high bar for seeking evidentiary sanctions under Rule 37(e). They identify no prejudice they allegedly suffered from not having ███████; in fact, they barely make an argument for why ███████ are relevant at all. With no prejudice shown, there is nothing to cure with an evidentiary sanction. Nor have Plaintiffs shown that Google acted with the wrongful intent needed for an adverse inference sanction. Plaintiffs' rhetoric aside, Google has consistently made clear that it is not preserving ███████ and does not consider production of these keys to be within the proper scope of discovery here. If Plaintiffs wanted to challenge these positions, they should have done so promptly and certainly before the deadline for discovery motions passed. Under these circumstances, any supposed prejudice that Plaintiffs might claim (and their Motion asserts none) is of their own making and cannot support the draconian penalties they seek to impose.

## II. BACKGROUND

### A. The Parties Originally Agreed that Google Would Produce Data Associated with Identifiers Provided by the Plaintiffs.

In May 2021, Plaintiffs served a Request for Production ("RFP") that sought "[a]ll information that Google has collected, created, associated and derived, and continues to collect, create, associate and derive, regarding Plaintiffs," and included a laundry list of information they believed was covered by that RFP. Google objected to this RFP on various grounds, but ultimately agreed to "conduct a reasonable search and produce responsive, non-privileged, and available documents showing what information, if any, that Google's systems directly associated ***with the identifiers Plaintiffs have provided or will provide to Google***, and was shared with third parties utilizing RTB, to the extent Google can reasonably identify such data as belonging to Plaintiffs." Ex. A[1] (emphasis added).

Plaintiffs did not object to Google's proposed limitation regarding identifiers and did not insist that Google produce data based on internal encrypted Biscotti IDs or any other identifiers beyond those that Plaintiffs would provide to Google. Instead, Plaintiffs moved to compel

---

[1] All exhibit citations are to the concurrently-filed Declaration of Whitty Somvichian ("Somvichian Decl.")

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

2

GOOGLE'S OPP. TO PLFS'
SPOLIATION SANCTIONS MTN
CASE NO. 4:21-CV-02155-YGR-VKD

1  production of information associated with those identifiers reaching far beyond the information
2  shared with RTB participants. *See* ECF No. 268-3. The Court rejected that effort, explaining that
3  Plaintiffs were not "entitled to discovery of all information Google maintains about an account
4  holder." ECF No. 314 at 4-5.

5  Google then ***proceeded to do exactly what it told Plaintiffs it would do***: search the logs that
6  are the best proxy for information sent to RTB participants for data directly associated with the
7  GAIA and Biscotti IDs that Plaintiffs provided to Google. Nevertheless, Plaintiffs then moved to
8  compel again, this time insisting that Google produce data from additional "Sawmill" logs,
9  claiming they needed additional fields of data contained in these logs. *See* ECF 365 at 1-2. Again,
10 Plaintiffs did not seek production of decrypted Biscotti IDs from any of the requested log sources,
11 nor did they insist that Google preserve ▌▌▌▌▌▌▌▌▌▌ that might enable decryption of
12 encrypted Biscotti IDs. In opposing that motion, Google explained that information in the requested
13 logs either has nothing to do with RTB or is duplicative of data Google already produced. *Id.* at 7.
14 The Court again agreed with Google, rejected Plaintiffs' demands for the entirety of these
15 additional logs, and explained that it "ha[d] already considered and rejected an approach to
16 discovery that requires Google to produce all information it collects about the named plaintiffs,
17 regardless of whether that information is disclosed to a third party in an RTB auction." ECF No.
18 382 at 4. The Court required Google to produce certain additional fields based on these criteria,
19 which Google did. *Id.* at 4-5.

20   **B.    Plaintiffs' Original Request for "Joining Keys" Appeared for the First Time in
21         a Separate Sanctions Motion and Sought Different Information.**

22  Following that order, Google produced a huge amount of data to supplement its prior
23 productions. To enable Plaintiffs to associate the data in this production with prior productions,
24 Google included "query IDs"—a numerical identifier included in the different logs from which
25 Google produced data, which can be used to join corresponding records in the different datasets.
26 Somvichian Decl. ¶ 10.

27  Without conferring with Google, Plaintiffs then filed their first motion for sanctions. *See*
28 ECF No. 431. That motion focused on Google's: 1) production of time-sampled data, instead of

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

3

GOOGLE'S OPP. TO PLFS'
SPOLIATION SANCTIONS MTN
CASE NO. 4:21-CV-02155-YGR-VKD

data across the class period, 2) omission of certain data fields that Plaintiffs claimed for the first time were subject to the Court's prior production orders, and 3) omission of "identifiers," which Plaintiffs claimed they needed to "relink the production with the data previously produced by Google." *Id.* at 5-6. For the first time, ***in passing in a footnote***, Plaintiffs also mentioned a "joining" or ▮▮▮▮▮ with little explanation. *Id.* at 5 n.3 (suggesting the "identifiers" they were seeking "would include the Google account ID and the Google Use[r] ID, derivations of them, and any joining keys that linked the two, such as the ▮▮▮▮▮"); *see also* ECF No. 456-3 at 9 (suggesting the same in reply).

At the hearing on the first sanctions motion, the Court asked whether Google could produce GAIA IDs, Google User IDs, and "joining" keys so Plaintiffs could match subsequent productions with earlier productions. Apr. 11, 2023 Hr'g Tr. at 56:1-15. In response, Google explained how query IDs work to join corresponding records across different datasets but made clear that producing "▮▮▮▮▮ raises separate issues." *Id.* at 56:16-57:17. The Court then issued an order denying Plaintiffs' request for sanctions, directing Google to "take care that all of its productions of named plaintiffs data can be easily correlated," and stating that "Google acknowledged that it could include the Google Account ID, Google User ID, and 'joining keys' without undue burden."[2] ECF No. 488 ("April 14 Order") at 7. The Court also reiterated its prior ruling that Google was not required to produce named-Plaintiff data from across the entire class period.[3] *Id.* at 6.

### C. Plaintiffs' Demand for Joining Keys then Shifted, but the Court Never Ordered Google to Produce the "Joining Keys" Plaintiffs Now Demand.

Following the April 14 Order, the parties conferred regarding which additional identifiers

---

[2] Google clarified at the next hearing before the Court that it had been "setting aside" this issue because it was not clear what Plaintiffs were referring to, and had not committed to the production of such unknown keys. May 16, 2023 Hr'g Tr. at 22:9-14.

[3] In another order issued the same day, the Court also addressed a lingering dispute over the number of additional time periods for which Google should produce data relating to the named Plaintiffs, beyond the six time periods for which Google had already produced data. The Court rejected Plaintiffs' demand for eleven additional time samples and permitted them to select only six additional time periods, ordering them to "promptly advise Google of their selection." *See* ECF No. 484 at 2.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

4

GOOGLE'S OPP. TO PLFS'
SPOLIATION SANCTIONS MTN
CASE NO. 4:21-CV-02155-YGR-VKD

|   |   |
|---|---|
| 1 | Google should include in its further production of named-Plaintiff data. During that discussion, |
| 2 | Google reiterated that query IDs could be used to join corresponding records across different logs |
| 3 | and made clear it was reproducing data with GAIAs, encrypted Biscottis, and decrypted Biscottis |
| 4 | (where available). Somvichian Decl. ¶ 21. |
| 5 | Despite Google's commitments, Plaintiffs moved the Court again, this time making the |
| 6 | nebulous claim that "[j]oining keys are an important link in the flow of data from the RTB auction |
| 7 | to the account information for each Google account holder." ECF No. 503 at 2-3. Google opposed |
| 8 | that motion, clarifying the distinction between a "joining key" in the sense of a data field used to |
| 9 | join corresponding records across different data sets and the "▮▮▮▮▮▮▮▮▮▮▮▮," the latter |
| 10 | of which Plaintiffs referenced without explanation. *Id.* at 5-6. |
| 11 | At the subsequent hearing, Plaintiffs attempted to explain what they meant by a "joining |
| 12 | key," and this time their interpretation shifted from a "joining key" in the sense of a data field that |
| 13 | they could use to join records across different datasets produced by Google (the specific concern |
| 14 | they raised in the first sanctions motion) to undefined "keys" that they now claimed allow **Google** |
| 15 | to ***internally*** "link up [different user] IDs," specifically GAIA and Biscotti IDs. May 16, 2023 Hr'g |
| 16 | Tr. at 10:13-19, 11:1-7. |
| 17 | With respect to Plaintiffs' newly defined notion of "joining keys," Google clarified that it |
| 18 | does not in fact link GAIA and Biscotti IDs. *Id.* at 27:25-28:10. Instead, due to internal policies to |
| 19 | promote user privacy, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ |
| 20 | ▮▮▮▮▮▮▮; instead, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ |
| 21 | ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *Id.* at 28:4-10; *see also* Han Decl. ¶ 9. The Court |
| 22 | then asked Google whether it has the ability to decrypt this version of the Biscotti ID. *Id.* at 28:11- |
| 23 | 13. In response, Google explained that 1) the ▮▮▮▮▮▮▮▮▮▮▮▮ can be used to decrypt this |
| 24 | encrypted Biscotti ID but 2) it maintains these decryption keys only for a short period of time and |
| 25 | they no longer existed for the time samples Plaintiffs had requested, including the most recent time |
| 26 | period then at issue, October 10-17, 2022, which post-dated the filing of the operative Complaint. |
| 27 | *Id.* at 34:18-35:8; *see also id.* at 38:4-10 (explaining that the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ |
| 28 | ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ and "don't even exist for any of the data records that they've asked for."). |

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

5

GOOGLE'S OPP. TO PLFS'
SPOLIATION SANCTIONS MTN
CASE NO. 4:21-CV-02155-YGR-VKD

1  It was thus apparent at the May 16, 2023 hearing that Google had not suspended its standard
2  retention practices for ▮▮▮▮▮▮. *Id.* at 41:18-25 (recognizing that Google "no longer
3  ha[s] the ▮▮▮▮▮ or the decryption key").

4  In its subsequent order, the Court accepted that "Google no longer has the decryption keys
5  for the internally-encrypted Biscotti IDs that correspond to the sampled named plaintiffs data,"
6  referring to the ▮▮▮▮▮▮ discussed at the hearing. ECF No. 510 ("May 16 Order")
7  at 2-3. Even though fact discovery was at the time ongoing and Plaintiffs were still able to select
8  more time periods for additional data productions, nothing in the May 16 Order stated that Google
9  was required to preserve ▮▮▮▮▮▮ or "decryption" keys in the event Plaintiffs might
10 later demand their production-including in connection with any more recent time sample periods.
11 In fact, the May 16 Order nowhere states that these keys would be within the proper scope of
12 discovery. *Id.* Rather, the Court only ordered "Google to investigate whether the Biscotti ID (in
13 encrypted or unencrypted form) may be produced, together with the Google Account ID (or GAIA
14 ID) where available, for all sampled named plaintiffs data." *Id.* at 3.

15 Following that Order, the parties conferred and informed the Court that Google would
16 produce *encrypted* Biscotti IDs, where available, together with GAIA IDs for the named Plaintiffs.
17 ECF No. 528-2 ("Google has represented that it performed a reasonable investigation and
18 confirmed that it can produce the encrypted Biscotti ID, where available, together with the Google
19 Account ID, where available, for the prior and forthcoming productions of sampled named-Plaintiff
20 data."). Google did not represent that it would produce *decrypted* Biscotti IDs. Nor did Plaintiffs
21 demand that Google preserve ▮▮▮▮▮▮ so they could attempt to decrypt encrypted
22 Biscotti IDs themselves, including for any of the additional time sample periods that the Court had
23 previously authorized them to request. Somvichian Decl. ¶ 20. To the contrary, Plaintiffs had earlier
24 conceded that if Google produced data "that had the GAIA ID and the Biscotti internally encrypted"
25 ID, that information would be "the kind of information [they] need to make the argument that [they]
26 want" without ever mentioning any need for ▮▮▮▮▮▮. May 16, 2023 Hr'g Tr. At
27 44:11-19. Google fully complied with this request, as framed by Plaintiffs, in its subsequent data
28 productions. Somvichian Decl. ¶ 21.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

6

GOOGLE'S OPP. TO PLFS'
SPOLIATION SANCTIONS MTN
CASE NO. 4:21-CV-02155-YGR-VKD

**D. Plaintiffs Belatedly Filed this Motion Seeking Sanctions Even Though Google Has Not Violated Any Court Order.**

On November 17, 2023, over seven months after the Court granted their request to do so and just before the holiday period, Plaintiffs demanded that Google produce named-Plaintiff data for four additional one-week time periods as well as any "joining" keys available for those time periods.[4] In early January, following the holidays and weeks before the January 26, 2024 deadline to file discovery motions, Google responded that it would produce data for the requested time periods but that it would not produce any "joining" or "decryption" keys. Google subsequently made two rounds of named Plaintiffs data productions for Plaintiffs' additional time periods that included more than a million additional bid request records for the four new requested one-week time periods. As Google had previewed, its productions did not include any ▇▇▇▇▇▇ ▇▇▇▇.

Following these productions, and as the fact discovery cutoff approached, Plaintiffs raised multiple discovery issues with Google. The parties met and conferred at length regarding these issues, and even asked the Court to extend the deadline to file discovery-related motions under Civil Local Rule 37-3 by an additional week. ECF No. 654. In these meet and confer discussions, Google again made clear to Plaintiffs that it had not changed the normal retention period for ▇▇▇▇ ▇▇▇▇▇▇▇. Somvichian Decl. ¶ 26 & n.1. Ultimately, on the last day for filing discovery motions, the parties filed five separate letter briefs regarding Plaintiffs' various efforts to compel further discovery from Google. *See* ECF Nos. 660, 661, 662, 663, 664. Yet throughout this process, Plaintiffs ***never*** demanded that Google initiate preservation of any ▇▇▇▇▇▇▇▇▇▇, much less file a motion on this issue.

Now, for the first time in a sanctions motion, Plaintiffs argue that Google should have been preserving "▇▇▇▇▇▇▇▇▇▇" following the April 14 and May 16 Orders and that the Court should sanction Google for failing to do so. ECF 696-4 at 2-3. But the April 14 Order concerned a different issue-whether Google had provided Plaintiffs enough information to link data between

---

[4] These time periods were January 7-14, 2023, March 18-25, 2023, June 2-9, 2023, and September 30-October 7, 2023.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

7

GOOGLE'S OPP. TO PLFS'
SPOLIATION SANCTIONS MTN
CASE NO. 4:21-CV-02155-YGR-VKD



productions. And the May 16 Order also contains no requirement to preserve ▓▓▓▓▓▓▓▓ ▓▓ or to produce decrypted Biscotti IDs. ECF No. 510. In fact, Google explicitly informed Plaintiffs and the Court that it would produce *encrypted* biscotti IDs for past *and* future productions of named-Plaintiff data. ECF No. 528-2. In no event did Google believe it was under any obligation from the April 14 or May 16 Orders to preserve ▓▓▓▓▓▓▓▓▓▓▓▓ or to produce decrypted Biscotti IDs too.

### III. ARGUMENT

Plaintiffs' Motion seeks two remedies: that Google be held in contempt for violating two court orders, and that the Court impose evidentiary sanctions pursuant to both Rule 37 and its inherent authority. These demands should be rejected because (1) Plaintiffs' long-delayed Motion is untimely and the Court need not address the merits of Plaintiffs' arguments at all, (2) the Motion seeks to manufacture a violation of a prior order where none exists, and (3) Plaintiffs do not satisfy Rule 37's requirements for the evidentiary sanctions they seek.

#### A. Plaintiffs Sat On Their Hands Nearly a Year and Their Motion Should Be Rejected As Untimely.

By waiting until months after the deadline to bring discovery motions and almost a year after they first learned Google was not preserving the ▓▓▓▓▓▓▓▓▓▓▓▓, Plaintiffs have doomed their Motion from the start.

First, Civil Local Rule 37-3 unambiguously provides that "[w]here the Court has set separate deadlines for fact and expert discovery, no motions related to fact discovery may be filed more than 7 days after the fact discovery cut-off." *Id.* The commentary to the Local Rules makes it clear that "'[d]iscovery-related motions' encompasses all motions relating to discovery, including . . . motions regarding **the duty to preserve documents**, including **spoliation motions** . . . and **motions for discovery sanctions**." N.D. Cal. Civ. L.R. 37-3 cmt. (emphases added). Fact discovery closed on January 19, 2024, and Plaintiffs were well aware that this date triggered the seven-day limit for discovery motions. In fact, Plaintiffs stipulated with Google to extend the discovery motion deadline by an additional week until February 2, 2024, specifically noting the Civil Local Rule 37-3 deadline. ECF No. 656 at 1-3. Yet Plaintiffs waited nearly four months after that extended

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

8

GOOGLE'S OPP. TO PLFS'
SPOLIATION SANCTIONS MTN
CASE NO. 4:21-CV-02155-YGR-VKD

deadline to file this Motion. This violation of Rule 37-3 is dispositive and mandates denial of Plaintiffs' Motion. *Ramirez*, 2018 WL 6241313, at *1 (DeMarchi, J.) (denying relief where movants "did not file a motion to compel the records or the deposition by the deadline for filing discovery motions"); *Duke v. City Coll. of S.F.*, 2021 WL 1164939 at *2 (N.D. Cal. Mar. 25, 2021) (denying relief where discovery motion was filed 19 days after Rule 37-3 deadline); *Finjan, LLC v. Qualys Inc.*, 2020 WL 6581836, at *3 (N.D. Cal. Nov. 10, 2020) (similar, where movant "missed that deadline by several weeks); *see also Larios v. Lunardi*, 442 F. Supp. 3d 1299, 1305 (E.D. Cal. 2020) (denying spoliation motion filed after discovery cutoff and collecting cases across federal courts doing the same, even absent requirements in Local Rule 37-3).

Second, Local Rule 37-3's requirements must be strictly enforced here because the record confirms Plaintiffs were well aware of the grounds for their Motion over a year before they filed. In the limited circumstances where courts permit a party to file a spoliation motion after the discovery cutoff, "[t]hey nonetheless insist parties raise these types of claims as soon as reasonably possible after uncovering the facts that underlie the motion." *Larios*, 442 F. Supp. 3d at 1306 (cleaned up) (denying motion as untimely); *see also McBride v. Moore*, 2024 WL 1136429, at *2 (C.D. Cal. Feb. 23, 2024) (same); *Muhammad v. Jenkins*, 2022 WL 4292341, at *7 (C.D. Cal. Aug. 26, 2022) (same).[5]

Here, Plaintiffs were undisputedly aware that Google was not preserving the ████ ████ nearly a year before they filed the Motion. On May 23, 2023, Google's counsel stated in open court that "[t]he decryption keys . . . are not maintained for longer than a certain period of time that doesn't overlap with the time periods" for Google's production of named-Plaintiff data, some of which postdated the filing of this action. May 16, 2023 Hr'g Tr. at 34:22 – 35:1; *see also id.* at 38:1-9 (Google confirming that ████████████████████ ████████████, they don't even exist for any of the data records that they've asked for."). Google's counsel reiterated this moments later: "[N]ow they're asking for hypothetical or speculative potential for linking, which is the only thing that these decryption keys could go to,

---

[5] Google has located no authority in which a Court in this District has ***ever*** permitted a spoliation motion to be filed after the Rule 37-3 deadline absent a prior order altering the case schedule.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

9

GOOGLE'S OPP. TO PLFS'
SPOLIATION SANCTIONS MTN
CASE NO. 4:21-CV-02155-YGR-VKD

1 but, in any case, your Honor, again, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
2 ***they don't even exist*** for any of the data records that they've asked for." *Id.* at 38:4-9 (emphasis
3 added). Plaintiffs' counsel immediately responded by threatening a spoliation motion by saying,
4 "if they spoliated [the decryption keys], that's a separate issue, and we'll get to that when we finally
5 get to spoliation." *Id.* at 39:1-2. Yet Plaintiffs sat on their hands for nearly a year.

6    Plaintiffs received further confirmation that the ▓▓▓▓▓▓▓▓▓▓▓▓▓▓ were only stored
7 for ▓▓▓ when they deposed Glenn Berntson in October 2023. As Plaintiffs own Motion notes,
8 Dr. Berntson informed them that the "functional look-back window of trying to go from the Biscotti
9 AdQuery log to figure out who that GAIA user is only ▓▓▓▓," after which time decryption keys
10 are "purged." Mot. at 10 (quoting Levine Decl. Ex. A at 237:16-22, 238:7-15). Plaintiffs have
11 therefore known about this issue since at least May 2023, and certainly since October 2023. Indeed,
12 Plaintiffs concede this fact in the Motion. *See* Mot. at 8 (recognizing that at the May 16, 2023
13 Hearing Google "admitted that the ▓▓▓▓▓▓▓▓▓▓▓▓▓ no longer existed (this due to the
14 passage of time and the fact that Google had never altered its ▓▓▓▓ retention period for that
15 data.").

16    In the parties' meet and confer discussions in January 2024, before the February 2, 2024
17 deadline for discovery motions (including any spoliation motions), Google reiterated that it had not
18 changed the normal retention of ▓▓▓▓▓▓▓▓▓▓▓▓▓. Somvichian Decl. ¶ 26 & n.1.  In any
19 event, Plaintiffs were undoubtedly on notice of Google's preservation practices several months
20 before that date.[6] Their delay of almost a year is inexplicable and impermissible. *See, e.g.*, *McBride*
21 *v. Moore*, 2024 WL 1136429, at *2 (C.D. Cal. Feb. 23, 2024) ("unreasonably wait[ing] over a
22 month before moving for sanctions" supported denying a spoliation motion as untimely); *see also*
23 *Larios*, 442 F. Supp. 3d at 1306 (denying motion as untimely when plaintiff "waited over nine
24 months to raise a claim of spoliation" after learning through deposition testimony that defendant
25 no longer possessed certain ESI); *Cottle-Banks v. Cox Commc'ns, Inc.*, 2013 WL 2244333, at *16

---

[6] Even assuming *arguendo* that Plaintiffs had no notice of this issue before February 28, 2024, as the falsely claim, Mot. at 11, they should have filed the Motion far sooner than they did or sought relief from the already-extended Rule 37-3 deadline then.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

10

GOOGLE'S OPP. TO PLFS'
SPOLIATION SANCTIONS MTN
CASE NO. 4:21-CV-02155-YGR-VKD

(S.D. Cal. May 21, 2013) (same).

**B.  Google cannot be held in contempt because it did not violate a Court order.**

Plaintiffs premise their request to hold Google in contempt on the claim that "Google has violated specific and definite orders." Mot. at 15. But just as they did when they last moved this Court for discovery sanctions, "[P]laintiffs misunderstand the Court's prior order[s]" by divorcing them from their necessary context and seizing on ambiguities to create a discovery violation where none exists. ECF No. 487 at 6. This falls far short of their burden to establish by clear and convincing evidence that Google has violated a clear and definite court order. *F.T.C. v. Affordable Media*, 179 F.3d 1228, 1239 (9th Cir. 1999) (discussing clear and convincing evidence standard).

First, nothing in the April 14 Order supports Plaintiffs' effort to impose sanctions. In directing Google to "include the Google Account ID, Google User ID, and 'joining keys,'" the April 14 Order's purpose was to ensure that "that all of its productions of named [P]laintiffs['] data can be easily correlated" in future productions. ECF No. 487 at 7; *see also* ECF No. 510 at 1 (describing prior order as "requiring Google to produce data fields the Court understood were necessary to ensure that Google's productions of named plaintiffs data can be easily correlated"). This was in direct response to Plaintiffs' complaint that it was "difficult for [P]laintiffs to match up Google's most recent production with its earlier productions of named [P]laintiffs['] data" from other time periods and data sources.[7] *Id.* at 6. Nothing on the face of the April 14 Order or in the hearing leading to the Order suggests the Court was addressing distinct issues regarding the production of decrypted Biscotti IDs, preservation of ▓▓▓▓▓▓▓▓ to enable such decryption, or issues regarding decryption generally. When Plaintiffs questioned Google's compliance with the April 14 Order a year ago, the Court confirmed at the May 16, 2023 hearing that even *encrypted* Biscotti IDs were "not within the scope" of the Court's prior orders, that the Court had "never ordered" them to be produced, and that there was "not a document request for it." May 16, 2023 Hr'g Tr. at 41:3-6. Plaintiffs' latest effort to distort the April 14 Order as imposing

---

[7] Plaintiffs nowhere claim that Google has failed to produce named-Plaintiff data in manner that makes it easy to identify data associated with a particular Plaintiff. Indeed, they do not even argue that the ▓▓▓▓▓▓▓▓ *can* be used for that purpose, focusing instead on how they believe ***Google itself*** can use the ▓▓▓▓▓▓▓▓. *See* Mot. at 5.

Cooley LLP
Attorneys at Law
San Francisco

11

Google's Opp. to Plfs'
Spoliation Sanctions Mtn
Case No. 4:21-cv-02155-YGR-VKD

1  even more imagined obligations regarding production of *decrypted* Biscotti IDs and preservation
2  of ▮▮▮▮▮▮▮▮ is even further afield. If anything, Plaintiffs' effort to impose sanctions
3  based on an order that does not remotely address the alleged violations at issue underscores the
4  overreach of their Motion.

      Second, Google also did not violate the May 16 Order. Despite Plaintiffs' efforts to distort
the Order, nothing on its face "ordered [▮▮▮▮▮▮▮▮] data to be produced." Mot. at
15. Rather, the Court directed only that Google "investigate whether the Biscotti ID (in encrypted
or unencrypted form) may be produced, together with the Google Account ID (or GAIA ID) where
available," then either make a production or discuss alternatives with Plaintiffs. ECF No. 510 at 3.
As Plaintiffs recognize, the Court specifically noted that Google had no ▮▮▮▮▮▮▮▮
to produce, yet it did not order Google to adjust its preservation practices or produce ▮▮
▮▮▮▮▮▮ for additional time sample periods. *Id.* Any interpretation that this somehow
required preservation of ▮▮▮▮▮▮▮▮ or production of decrypted Biscotti IDs not only
ignores the plain terms of the Order, but the context of the hearing leading to the May 16 Order,
where Google clearly explained that no ▮▮▮▮▮▮▮▮ were available. *See supra* 5-6. In
fact, the parties themselves agreed in response to the order that Google would produce the
*encrypted* Biscotti IDs for named-Plaintiff data, suggesting that even Plaintiffs did not read the
order as imposing these sweeping preservation or production obligations for the ▮▮▮▮▮▮
▮▮. *See supra* 6-7.

      Under these circumstances, the May 16 Order's silence on this issue cannot plausibly be
read as imposing the unstated obligation that is the premise of Plaintiffs' attempt to hold Google in
contempt. And even if it were *possible* to read the order as Plaintiffs now do, a finding of contempt
requires far more: "a ***specific*** and ***definite*** court order." *Koninklijke Philips N.V. v. Elec-Tech Int'l
Co.*, 2015 WL 6449399, at *2 (N.D. Cal. Oct. 26, 2015). The Court's general instructions to explore
production of both the Biscotti ID and Google Account ID fields is far from "unequivocal notice"
that Google was to separately preserve and produce the ▮▮▮▮▮▮▮▮ too. *Etienne v.
Kaiser Found. Hosp.*, 2012 U.S. Dist. LEXIS 91600, at *3 (N.D. Cal. July 2, 2012).

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

12

GOOGLE'S OPP. TO PLFS'
SPOLIATION SANCTIONS MTN
CASE NO. 4:21-CV-02155-YGR-VKD

### C. Plaintiffs fail to establish that Rule 37 sanctions are warranted.

While Plaintiffs make much of the Court's broad power to award sanctions, the text of Rule 37 holds them to a higher standard.[8] Rule 37(e) permits two types of sanctions, with different requirements for each. Rule 37(e)(1) allows general evidentiary sanctions for alleged spoliation only "upon finding prejudice to another party from loss of the information," and even then, the sanctions may be "no greater than necessary to cure the prejudice." Fed. R. Civ. P. 37(e)(1). For Plaintiffs to obtain the more extreme sanction of an adverse inference under Rule 37(e)(2), Plaintiffs must show that Google "acted with the intent to deprive [them] of the information's use in the litigation." *Id.* 37(e)(2).

In the Motion, Plaintiffs do not clearly state whether they are pursuing sanctions under Rule 37(e)(1) or Rule 37(e)(2), but the relief they seek appears to invoke both subsections. Their request that "Google should be prevented from making any arguments based on the lack of Biscotti IDs and joining key data" triggers Rule 37(e)(1), and so requires a showing of prejudice. Mot. at 17. And their request for an adverse inference jury instruction, *id.*, "would be appropriate only upon finding 'intent to deprive another party of the information's use in the litigation'" under Rule 37(e)(2). *Mgi Digit. Tech. S.A. v. Duplo United States Corp.*, 2023 WL 8895701, at *9 (C.D. Cal. Nov. 16, 2023) (quoting Fed. R. Civ. P. 37(e)(2)). Plaintiffs fail to satisfy either subsection, so no sanctions are warranted.

#### 1. Plaintiffs have not suffered prejudice as Rule 37(e)(1) requires.

Plaintiffs' proposed Rule 37(e)(1) sanction would be excessive even if Google had been required to preserve and produce ████████████. Aside from a vague assertion that ████████████ are the "best way" to demonstrate that Google is reasonably capable of associating a Biscotti ID with a Google user, Mot. at 6, Plaintiffs nowhere demonstrate the prejudice they have supposedly suffered by not having access to these keys. Plaintiffs' Motion simply

---

[8] Plaintiffs also seek "sanctions under the [Court's] inherent power," relying on a string of pre-2015 cases for the proposition that such sanctions are available. But the adoption of Rule 37(e) in the 2015 amendments to the Federal Rules of Civil Procedure "forecloses reliance on inherent authority or state law to determine when certain measures should be used" to sanction spoliation. Fed. R. Civ. P. 37(e) 2015 advisory committee's note. In any event, Plaintiffs' caselaw holds that inherent authority sanctions were "analyzed using the same test as those under Rule 37." Mot. at 14.
COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

13

GOOGLE'S OPP. TO PLFS'
SPOLIATION SANCTIONS MTN
CASE NO. 4:21-CV-02155-YGR-VKD

1 | assumes that ▓▓▓▓▓▓▓▓▓▓ are relevant and necessary to Plaintiffs' case, but wholly
2 | fails to explain why. Indeed, Plaintiffs have had every opportunity to take discovery about what the
3 | keys are and what they or are not capable of doing. Under these circumstances, it is entirely unclear
4 | how production of the keys themselves would be relevant, let alone essential, for summary
5 | judgment or trial. For example, Plaintiffs do not explain what they or their experts would do with
6 | an unencrypted Biscotti ID or with the ▓▓▓▓▓▓▓▓▓▓ themselves, or why other
7 | information that Google has produced is not sufficient to make equivalent arguments. *See Mgi*
8 | *Digit. Tech.*, 2023 WL 8895701, at *8 (movant was not prejudiced by spoliation of "underlying
9 | data" where sufficient other evidence permitted it to argue what those documents showed). In fact,
10 | save for a conclusory statement that "monetary sanctions are plainly inadequate because relevant
11 | evidence necessary for plaintiffs' case has been spoliated," Plaintiffs do not assert prejudice at all
12 | in their Motion. Mot. at 16.

13 |       On the contrary, their Motion is replete with evidence that Plaintiffs already have from
14 | depositions and otherwise that they contend establishes that Google "has multiple ways to ▓▓▓
15 | ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓." Mot. at 5; *see*
16 | *also* Mot. at 9-10 (citing deposition testimony from Google employee Glenn Berntson). Likewise,
17 | at class certification, Plaintiffs presented expert testimony opining that "[t]here are common
18 | processes and systems by which Google can associate or link user data shared in Google RTB
19 | auctions with Google account holders." ECF No. 546-3 ¶ 15. Plaintiffs' expert Zubair Shafiq
20 | specifically claimed that Google could use the ▓▓▓▓▓▓▓▓▓▓ for this purpose, relying on
21 | produced documents to so argue. *Id.* ¶ 97(d). Yet even as he faulted Google for not producing
22 | various other data (all of which this Court ruled was not subject to production), Dr. Shafiq did not
23 | once assert that he needed the ▓▓▓▓▓▓▓▓▓▓ itself for his analysis. *See, e.g., id.* at 12 n.9
24 | ("Google has produced only some of the RTB bid request data fields and has refused to provide
25 | plaintiffs with a complete list of all RTB bid request data fields that are shared in RTB auctions."),
26 | 40 n.68 ("It is my understanding that ▓▓▓▓▓▓ logs (▓▓▓▓▓▓▓▓▓▓▓▓ and
27 | ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓) exist, but Google has not produced named plaintiff data from
28 | them"). Plaintiffs are free to present this and similar evidence at summary judgment or to a jury,

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

14

GOOGLE'S OPP. TO PLFS'
SPOLIATION SANCTIONS MTN
CASE NO. 4:21-CV-02155-YGR-VKD

and will hardly be forced "to rely on incomplete and spotty evidence" in a way that could support the sort of prejudice that can only be cured with sanctions under Rule 37(e)(1). *Anheuser-Busch, Inc. v. Nat. Beverage Distribs.*, 69 F.3d 337, 354 (9th Cir. 1995).

Without establishing any prejudice, Plaintiffs have not shown anything that needs to or may be cured by a Rule 37(e)(1) sanction.[9]

### 2. Google did not act with intent to deprive Plaintiffs of evidence as Rule 37(e)(2) requires.

Plaintiffs accuse Google of deliberately concealing its retention policies for the ▇▇▇ ▇▇▇▇▇▇ and manipulating discovery to deny them access to those keys, but rely on speculation and innuendo while offering no actual evidence to support such a finding. For one, Google was consistently transparent that it was not preserving the ▇▇▇▇▇▇▇▇▇▇. Its counsel stated in open court that it was not doing so. *See supra* 5 (noting Google's representation that it had not preserved the ▇▇▇▇▇▇▇▇ for any time period since the complaint was filed). Plaintiffs' counsel understood that it was not doing so. *See supra* 5-6. The Court understood that it was not doing so. *See* May 16, 2023 Hr'g Tr. at 41:23-25 ("[M]aybe you no longer have the ▇▇▇▇▇▇ or the decryption key, but you have the value in a field, right?").

Moreover, Google's routine purging of old ▇▇▇▇▇▇▇▇▇ long predates this action and serves purposes unrelated to litigation. Han Decl. ¶¶ 6-14. Precisely because the ▇▇▇ ▇▇▇▇▇▇ is a sensitive piece of information, Google replaces it approximately every ▇▇▇ for security reasons and to ensure that bad actors cannot use it to decrypt Biscotti IDs. *See* Han Decl. ¶ 10. That the ▇▇▇▇▇▇▇▇ preservation policy has a separate, independent basis supports a finding that Google did not act to conceal information from Plaintiffs, but for unrelated business reasons. *See, e.g.*, *Akiona v. United States*, 938 F.2d 158, 161 (9th Cir. 1991) (district court erred by shifting burden of proof to defendant as an evidentiary sanction, since evidence at issue was destroyed pursuant to a standing policy and not "in response to this litigation"). And Plaintiffs'

---

[9] Plaintiffs should not be permitted to raise such arguments for the first time on reply, denying Google the opportunity to respond to them. *See Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) (noting that a "district court need not consider arguments raised for the first time in a reply brief.")

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

15

GOOGLE'S OPP. TO PLFS'
SPOLIATION SANCTIONS MTN
CASE NO. 4:21-CV-02155-YGR-VKD

1  claim that Google's failure to respond to their inquiries as quickly as Plaintiffs would have liked
2  must have been an attempt to run out the clock on existing ▓▓▓▓▓▓▓▓ is spurious.
3  Plaintiffs made this request shortly before the winter holidays in 2023, at a time when Google's
4  availability to respond was limited. Somvichian Decl. ¶ 23. Finally, Google has always been clear
5  that its objection to producing the ▓▓▓▓▓▓▓▓ is based not on the lack of those records,
6  but that it contests the relevance and discoverability of the keys more fundamentally. *See, e.g.*, Ex
7  B ("To the extent Plaintiffs are referring to ▓▓▓ that can be used to decrypt certain encrypted
8  pseudonymous identifiers in logs, Google will not produce any such ▓▓. Plaintiffs have not
9  explained why they need this information to prosecute their claims, particularly in light of the
10 voluminous data Google has already produced and the additional data it is committing to produce
11 relating to the named Plaintiffs."). All of this is evidence of a good-faith discovery dispute and
12 adherence to longstanding document security protocols—not the bad faith required for sanctions
13 under Rule 37(e)(2).

**IV.    CONCLUSION**

For these reasons, Google respectfully requests that the Court deny Plaintiffs' Motion in its entirety.

Dated: May 17, 2024                                COOLEY LLP

                                                   By:  */s/ Whitty Somvichian*
                                                        Whitty Somvichian

                                                   Attorney for Defendant
                                                   GOOGLE LLC

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

16

GOOGLE'S OPP. TO PLFS'
SPOLIATION SANCTIONS MTN
CASE NO. 4:21-CV-02155-YGR-VKD