# EXHIBIT 1
## to the Declaration of Whitty Somvichian

## (REDACTED VERSION OF DOCUMENT SOUGHT TO BE FILED UNDER SEAL)

Elizabeth C. Pritzker (Cal. Bar No. 146267)
Jonathan K. Levine (Cal. Bar No. 220289)
Bethany Caracuzzo (Cal. Bar No. 190687)
Caroline Corbitt (Cal. Bar No. 305492)
**PRITZKER LEVINE LLP**
1900 Powell Street, Suite 450
Emeryville, CA 94608
Tel.: (415) 692-0772
Fax: (415) 366-6110
*ecp@pritzkerlevine.com*
*jkl@pritzkerlevine.com*
*bc@pritzkerlevine.com*
*ccc@pritzkerlevine.com*

*Interim Class Counsel*

*[Additional Counsel on Signature Page]*

# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### OAKLAND DIVISION

| | |
|---|---|
| *In re Google RTB Consumer Privacy Litigation*, <br><br> This document applies to: *all actions.* | **Case No. 4:21-cv-02155-YGR-VKD** <br><br> **PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR CONTEMPT AND SPOLIATION SANCTIONS RE NAMED PLAINTIFF DATA** <br><br> Judge:     Hon. Virginia K. DeMarchi <br> Date:      June 18, 2024 <br> Time:      10:00 a.m. <br> Courtroom: 2, Fifth Floor |

**UNREDACTED VERSION SUBMITTED CONDITIONALLY UNDER SEAL**

## TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ...................................................................................................1

II.   ARGUMENT .........................................................................................................2

    A.    Plaintiffs' Motion Is Timely ......................................................................2

    B.    Contempt Sanctions Against Google Are Warranted Under Rule 37(b)(2)(A).......6

    C.    Evidentiary Sanctions Against Google Are Warranted Under Rule 37(e) .............8

        1.    Google's conduct is sanctionable under Rule 37(e)(1)...........................9

        2.    Google's conduct is also sanctionable under Rule 37(e)(2). ...................10

III.  CONCLUSION ....................................................................................................13

TABLE OF CONTENTS

## TABLE OF AUTHORITIES

**Page(s)**

<u>CASES</u>

*Akiona v. United States,*
938 F.2d 158 (9th Cir. 1991)........................................................................................ 11

*Clear-View Techs., Inc. v. Rasnick,*
2015 WL 2251005 (N.D. Cal. May 13, 2015) ....................................................... 7, 9

*Cottle-Banks v. Cox Commc'ns, Inc.,*
2013 WL 2244333 (S.D. Cal. May 21, 2013) ............................................................ 5

*In re Dual-Deck Video Cassette Recorder Antitrust Litig.,*
10 F.3d 693 (9th Cir. 1993)........................................................................................ 8

*Duke v. City Coll. of S.F.,*
2021 WL 1164939 (N.D. Cal. Mar. 25, 2021) .......................................................... 3

*F.T.C. v. Affordable Media,*
179 F.3d 1228 (9th Cir. 1999).................................................................................... 8

*Guifu Li v. A Perfect Day Franchise, Inc.,*
2011 WL 3895118 (N.D. Cal. Aug. 29, 2011)........................................................... 8

*Harmon v. City of Santa Clara,*
323 F.R.D. 617 (N.D. Cal. 2018)............................................................................... 8

*Johnson v. Mammoth Recreations, Inc.,*
975 F.2d 604 (9th Cir. 1992)...................................................................................... 3

*Larios v. Lunardi,*
442 F. Supp. 3d 1299 (E.D. Cal. 2020).................................................................. 3, 5

*McBride v. Moore,*
2024 WL 1136429 (C.D. Cal. Feb. 23, 2024)........................................................... 5

*In re Napster, Inc. Copyright Litig.,*
462 F. Supp. 2d 1060 (N.D. Cal. 2006) .................................................................... 7

*Nat'l Ass'n of Radiation Survivors v. Turnage,*
115 F.R.D. 543 (N.D. Cal. 1987)............................................................................. 13

*Phoceene Sous-Marine, S.A. v. U.S. Phosmarine, Inc.,*
682 F.2d 802 (9th Cir. 1982)................................................................................... 13

*Ramirez v. City of Gilroy,*
2018 WL 6241313 (N.D. Cal. Nov. 29, 2018)........................................................... 3

*Zeleny v. Newsom*,
    2020 WL 6585793 (N.D. Cal. Nov. 10, 2020)...........................................................................3

**RULES**

Fed. R. Civ. P. 37 ...............................................................................................*passim*

TABLE OF AUTHORITIES

## I.    INTRODUCTION

Defying two Court Orders, Google willfully failed to maintain and produce Biscotti IDs and ███████████████, even after this Court's 2023 Orders holding that Biscotti IDs and ████████████████ were relevant and should be produced. Google concealed its failure to maintain Biscotti IDs and ████████████████ for 2023 until after the February 2, 2024 deadline to file discovery related motions had passed, necessitating the filing of plaintiffs' motion for contempt and sanctions. In defense of its misconduct, Google erroneously argues that (1) the motion is untimely, (2) it did not violate any "clear and definite" Court order, and (3) plaintiffs have not made the showing of prejudice and intent to deprive necessary for evidentiary sanctions under Rule 37(e). But Google's procedural arguments are meritless and its factual assertions are grounded in a false and misleading narrative regarding ████████████████ discovery predicated on intentionally disingenuous assertions.

Plaintiffs' motion is procedurally and substantively proper. Procedurally, although filed after the February 2 cutoff for discovery-related motions, the motion is timely because it was brought promptly after plaintiffs learned that the issue was ripe for briefing. Google did not produce 2023 data until February 9, 2024, and did not confirm that no 2023 ████████████ ██ or Biscotti ID data exists for any of the requested time-periods (even one that fell within Google's "normal" retention period at the time it was requested) until February 28, 2024. Thus, good cause exists for the Court to consider the motion.

Substantively, plaintiffs' motion is well-supported by the record in this case, which shows that Google has long been on notice of the relevance of ████████████████ and Biscotti ID discovery, that its legal duty to preserve arose long before the 2023 discovery misconduct at issue, and that both notice and the duty to preserve—as well as the duty to produce—were confirmed by the Court's 2023 Orders. It is clear that Google failed to preserve, produce, and comply with the Court's orders. And Google's failings are not inconsequential. Rather, they are severely prejudicial to plaintiffs. Plaintiffs' motion sets forth the prejudice caused by Google's misconduct, including the import of the discovery at issue and how plaintiffs' intended to use the data at trial. Under these circumstances, evidentiary sanctions are warranted. Plaintiffs have narrowly tailored the relief

PLAINTIFFS' REPLY ISO MOT. FOR CONTEMPT AND SPOLIATION SANCTIONS

1  requested to address only the 2023 timeframe during which Google's failure to maintain and

2  produce ██████████████ and Biscotti ID is clearly a willful violation of the Court's orders.

3      For this violation, on the grounds set forth herein, in plaintiffs' opening brief and the Levine

4  Declaration, and upon any further grounds the Court may determine or that plaintiffs assert at

5  hearing, the Court should hold Google in contempt and evidentiary sanctions should be imposed

6  such that Google will be prevented from making any arguments based on the lack of Biscotti IDs

7  and joining key data in favor of summary judgment or at trial in this matter. At trial, the jury should

8  also be instructed that Google spoliated evidence and that the jury should infer from that spoliation

9  that the evidence would have been favorable to plaintiffs and harmful to Google.

10  **II.    ARGUMENT**

11      **A.    Plaintiffs' Motion Is Timely**

12      Google argues that plaintiffs' motion is untimely because it was not filed by the February

13  2, 2024 deadline for discovery motions. But Google well knows that this motion's timing is the

14  direct result of its own delayed responses regarding production timing, delayed production of

15  named plaintiff data, and delayed confirmation that no 2023 ██████████████ and Biscotti

16  IDs (together, "Biscotti Data") existed (despite the fact that plaintiffs had specifically selected time

17  periods that fell within Google's normal retention periods). *See* Mot. at 10–11. Indeed, Google did

18  not produce 2023 data that should have included Biscotti Data until February 9, 2024, and did not

19  admit that it had spoliated 2023 Biscotti Data until February 28, 2024.[1] *See id.* Thus, plaintiffs

20  could not have brought this motion before the February 2, 2024 discovery motion cut-off.

21  Consistent with Civil L.R. 7-8(c), plaintiffs brought this sanctions motion "as soon as practicable

22  after the filing party learns of the circumstances that it alleges make the motion appropriate . . .",

23  on April 19, 2024 (within two and a half months of the February 2 deadline, not "nearly four

24  months" late, as Google claims in its motion). Opp. at 8–9.

25      To assess the enforceability of a discovery motion after the discovery cut-off, this Court

26

27  _____

[1] In letter briefs filed on February 2, 2024, plaintiffs informed the Court that Google had not yet
produced named plaintiff data for the agreed-upon 2023 time-periods and reserved their rights.

28  ECF 659-5 at 3, n.1.

should consider whether a party has shown "good cause." Civil L.R. 37-3. "Good cause" focuses on the "diligence of the party seeking the amendment" to the discovery schedule. *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992). Where, as here, a discovery-related motion cannot be filed by a discovery deadline due to the delay of the producing party, courts have considered such motions to be timely filed. *See, e.g.*, *Duke v. City Coll. of S.F.*, 2021 WL 1164939, at *1 (N.D. Cal. Mar. 25, 2021) (considering request for issue sanctions filed after the close of fact discovery due to late-produced document);[2] *Zeleny v. Newsom*, 2020 WL 6585793, at *2 (N.D. Cal. Nov. 10, 2020) (allowing a motion filed after the discovery cut-off due to the delay of the producing party).

Google mischaracterizes Civil L.R. 37-3 as mandating rejection of discovery motions filed after the discovery cut-off (Opp. at 8–9), but its own cited authority confirms the good cause standard applies for evaluating the timeliness of Civil L.R. 37-3 motions. *See Ramirez v. City of Gilroy*, 2018 WL 6241313, at *1 (N.D. Cal. Nov. 29, 2018) (DeMarchi, J.) (denying motion because moving party "ha[s] not otherwise demonstrated good cause for modifying the case schedule under Rule 16(b)(4) of the Federal Rules of Civil Procedure"). Similarly, rather than setting forth a bright-line rule that motions filed after a fact discovery deadline must be rejected as untimely, the *Larios v. Lunardi* court confirmed that it is "unreasonable delay [that] can render a spoliation motion untimely," and went on note that "[o]ther federal district courts in California have allowed parties to raise spoliation claims after the close of discovery" and "as soon as reasonably possible after [uncovering] the facts that underlie the motion." 442 F. Supp. 3d 1299, 1305–06 (E.D. Cal. 2020) (citations omitted). Nor, as discussed above, does *Duke* help Google, as it both acknowledges the good cause standard, and considers the moving party's request for sanctions, which as here, was filed after the fact discovery cut-off due to the producing party's late

---

[2] Google asserts it has located no authority in which a court in this district has "***ever***" permitted a spoliation motion after the Rule 37-3 deadline absent a prior order altering the case schedule. Opp. at 9, n.5 (emphasis in original). But this assertion is belied by its own citation to *Duke*, a case in which the court not only considered a post-deadline request for sanctions, but also invited further briefing on sanctions.

1   production. 2021 WL 1164939, at *1 (noting "[t]he Court finds that a sanction may be appropriate

2   but seeks further briefing on this issue").

3        Google also claims that plaintiffs' motion is untimely because plaintiffs purportedly failed

4   to pursue this discovery for "almost a year after first learn[ing that] Google was not preserving the

5   ████████████████████." Opp. at 8. This misrepresents the record. Plaintiffs persistently sought

6   production of the Biscotti Data, including identifying time-periods that fell within Google's ███

7   ███ look-back periods, and specifically informing Google that they expected Google to produce

8   joining keys when it produced the 2023 data. Levine Decl., ¶¶ 12, 15–16, 18, 20. Google's claims

9   to the contrary rely on cherry-picked statements that blatantly distort the record. For example,

10  Google selectively quotes the May 16, 2023 hearing transcript to give the impression that it

11  informed plaintiffs that it was not going to be preserving the ████████████████ on a

12  prospective basis, and that plaintiffs subsequently "sat on their hands." Opp. at 9–10. In truth, at

13  that hearing, Google informed plaintiffs and the Court for the first time that it had not preserved

14  ████████████████ for any of the time periods plaintiffs had asked for <u>up to that point</u>, the

15  latest in time being October 2022. *See* May 16, 2023 Hr'g Tr. at 34:18–35:1. Google did not state

16  that it would fail to preserve ████████████ going forward. Google also points to the

17  October 2023 testimony of 30(b)(6) witness Glenn Berntson as putting plaintiffs on notice of

18  Google's short retention period. Opp. at 10. But, again, this misleads. While Mr. Berntson provided

19  corporate testimony confirming Google's standard ██████ retention period for ███████████

20  ███, he also testified "I'm talking about normal operations. You want to preserve something, all

21  bets are off, with the limitation you still have the look-back window on the current data that's

22  available." ECF 696-6, Levine Decl., Ex. A at 238:16–23.

23       Heeding the information provided by Google and its counsel regarding its failure to

24  preserve ████████████████ *prior to May 16, 2023*, on November 17, 2023, plaintiffs

25  identified four time periods in 2023, three of which fell within Google's ██████ look-back period

26  from the April and May 2023 Orders, including one week (September 30–October 7) that was well

27  within the normal retention period <u>at the time of plaintiffs' request</u>. Based on Google's

28  representations regarding the normal retention period and the look-back period, and given the

1  Court's April 14 and May 16 Orders, plaintiffs had every reason to expect that Google would

2  produce ▮▮▮▮▮▮▮▮▮▮ and Biscotti ID data for most of the 2023 time periods. But Google

3  did not begin preserving joinability data pursuant to the April 14 and May 16 Orders. And rather

4  than promptly responding to plaintiffs' November 17 request and timely collecting data for

5  production, Google ran out the clock on its retention period, intentionally allowing the September

6  30–October 7 Biscotti Data to be destroyed.

7          Google has an obligation to preserve relevant evidence, independent of whether plaintiffs

8  remind it to do so, and whether or not there is an express order of the Court. In its opposition,

9  Google turns this obligation on its head, asserting that because it disclosed its "normal" retention

10 policy in May 2023, and then in January 2024 said it had not suspended that retention policy,

11 plaintiffs' motion is untimely. Again, Google's argument fails. Google cites *McBride v. Moore* in

12 support of this argument, claiming that the *McBride* court denied a spoliation motion because the

13 moving party "unreasonably" waited over a month to move. Opp. at 10. But Google misrepresents

14 *McBride*. There, the court declined to award spoliation sanctions because the moving party failed

15 to show that the evidence was deleted after a preservation obligation arose. 2024 WL 1136429, at

16 *2 (C.D. Cal. Feb. 23, 2024). Here Google's preservation obligation could not have been more

17 clear well in advance of the May 16, 2023 hearing. The "unreasonable" one-month delay Google

18 relies on arose in connection with delayed production of metadata, where the moving party

19 received an inadequate production prior to the close of fact discovery but failed to move (unlike

20 here, where Google did not produce until after the deadline for discovery-related motions, and then

21 later revealed it had destroyed the ▮▮▮▮▮▮▮▮▮▮). *Id.* at *3. Google's other authorities

22 are similarly unavailing. In both *Larios*, 442 F. Supp. 3d at 1306, and *Cottle-Banks v. Cox

23 Commc'ns, Inc.*, 2013 WL 2244333, at *16 (S.D. Cal. May 21, 2013), the moving party knew for

24 nine months that evidence had been destroyed but waited to move. Here, consistent with the

25 Court's guidance, plaintiffs do not seek sanctions for Google's May 16, 2023 disclosure that it had

26 not preserved Biscotti Data for the time periods produced prior to that date (all of which pre-dated

27 October 2022). Rather plaintiffs seek sanctions only for Google's conduct *after* the April and May

28

Case No. 4:21-cv-02155-YGR-VKD

PLAINTIFFS' REPLY ISO MOT. FOR CONTEMPT AND SPOLIATION SANCTIONS

1    2023 Orders, when Google was undeniably on notice to preserve and had a clear obligation to

2    produce, and for which time-periods Google did not produce data until February 9, 2024.

3            Accordingly, plaintiffs' motion is timely.

4    **B.      Contempt Sanctions Against Google Are Warranted Under Rule 37(b)(2)(A)**

5            Rather than defeating plaintiffs' motion for contempt sanctions, Google's opposition

6    makes clear that contempt sanctions against Google are warranted, because Google has willfully

7    violated specific orders, namely the April 14 Order compelling production of GAIA IDs, Google

8    User IDs (Biscotti IDs), and joining key data (which necessarily includes the ███████████

9    ███) for all past and future productions of named plaintiff data (ECF 487 at 7), and the related

10   May 16 Order, which required Google to investigate whether Biscotti IDs could be produced

11   together with GAIA IDs for all named plaintiff data, and if not, to work with plaintiffs to determine

12   whether "any reasonable alternatives exist for the production of the same or similar information"

13   (ECF 510 at 2–3).

14           Google makes much of the fact that the May 16 Order accepted Google's representation

15   that it "does not have any 'joining keys' to produce" for named plaintiff data productions made

16   prior to May 2023 (ECF 510 at 3), claiming that because the May 16 Order did not expressly

17   instruct Google to suspend destruction of ████████████ or to produce unencrypted

18   Biscotti IDs in future productions, it had no clear obligation to do so. Opp. at 11. This is nonsense.

19   As Google acknowledges, both the April 14 and May 16 Orders remain in effect. In accepting

20   Google's representation that it did not have joining keys to produce, the May 16 Order clarified

21   the April 14 Order's requirement that Google include GAIA IDs, Google User IDs (Biscotti IDs)

22   and joining key data for all past and future productions, and relieved Google of its obligation to

23   produce joining key data (and thus, unencrypted Biscotti IDs) for past productions, not for future

24   productions. ECF 510 at 3; *accord* May 16, 2023 Hr'g Tr. 67:18–68:18 (regarding joining keys,

25   "[i]f they exist, you can produce them … If the Google user ID doesn't exist, you can't produce it.

26   So you haven't violated my order"). In keeping with this discussion and the May 16 Order,

27   plaintiffs agreed with Google that it would produce the encrypted Biscotti IDs for prior and

28   forthcoming productions and Google represented that it would complete production of this data by

June 2, 2023. ECF 528-2. Accordingly, plaintiffs do not seek sanctions for Google's failure to preserve Biscotti Data for pre-2023 data. Rather, it is Google's willful failure to maintain and produce Biscotti IDs and ███████████████ for 2023 that warrants contempt sanctions.

As is clear in the May 16 Order, while the Court was aware of and accepted that Google did not have joining key data to produce for pre-2023 data, it still ordered Google to investigate the production of Biscotti IDs alongside GAIA IDs. Nor did the court rescind the April 14 Order's requirement that Google include GAIA IDs, Google User IDs (Biscotti IDs), and joining key data in future productions. Contrary to Google's claim that only an express order of the Court could trigger an obligation for Google to "adjust its preservation practices" with regard to ███████ ██████████ (Opp. at 12), Google's duty to preserve information began when plaintiffs filed their action—if not before. *See In re Napster, Inc. Copyright Litig.*, 462 F. Supp. 2d 1060, 1067–68 (N.D. Cal. 2006) (duty to preserve runs from date party should have known evidence might be relevant to future litigation). And whether or not plaintiffs expressly requested that Google preserve joining key data, or whether or not the Court ordered Google to alter its retention practices, the absence of such a request or order "does not vitiate the independent obligation of an adverse party to preserve such information." *Clear-View Techs., Inc. v. Rasnick*, 2015 WL 2251005, at *1 (N.D. Cal. May 13, 2015). At latest, that obligation arose with the April 14 and May 16 Orders—yet Google did nothing to preserve the Biscotti Data after those orders.

Google states in its opposition that it has "always been clear that its objection to producing the ████████████████ is based not on the lack of these records;" rather, it contests the relevance and discoverability of the keys and Biscotti IDs decrypted by the keys. Opp. at 16. In support, Google cites to its January 2024 letter to plaintiffs, which it sent only after Google had run the clock on its normal retention period, thus ensuring there would be no records to produce. *Id*. Rather than insulating Google from contempt sanctions, Google's bold statement that it intentionally destroyed data based solely on its own view of relevance and discoverability—<u>and in defiance of the Court's instructions</u>—confirms that Google's failure to maintain and produce Biscotti IDs and ███████████████ for 2023 was willful. The proper way for Google to oppose an order to produce data would have been to move for reconsideration or clarification of

1  the order, as it has done before in this case (*see, e.g.*, ECF 408), or move for a protective order, as

2  it has done in other cases (*see, e.g., Calhoun, et al. v. Google, LLC*, No. 20-cv-05146-YGR-SVK

3  (N.D. Cal.), ECF 109 (moving for protective order to relieve it from preservation obligations and

4  retention periods)). Google did neither, opting instead to engage in "self-help" destruction of

5  evidence. *See Calhoun*, No. 20-cv-05146-YGR-SVK (N.D. Cal.), ECFs 558, 685 (sanctioning

6  Google for engaging in "self-help" conduct of withholding discovery in contravention of court

7  order and based on its own determination of relevance). As set forth herein, and in plaintiffs'

8  opening brief and the Levine Declaration, contempt sanctions are warranted because Google

9  willfully violated (and concealed that violation (Mot. at 15–16)) the Court's specific and definite

10 orders with regard to the maintenance and production of ████████████████ and Biscotti IDs.

11 *See Harmon v. City of Santa Clara*, 323 F.R.D. 617, 626 (N.D. Cal. 2018) (citing *F.T.C. v.*

12 *Affordable Media*, 179 F.3d 1228, 1239 (9th Cir. 1999)); *see also In re Dual-Deck Video Cassette*

13 *Recorder Antitrust Litig.*, 10 F.3d 693, 695 (9th Cir. 1993) (noting "contempt need not be willful,

14 and there is no good faith exception to the requirement of obedience to a court order") (internal

15 quotation omitted).

16 ### C.    Evidentiary Sanctions Against Google Are Warranted Under Rule 37(e)

17 Plaintiffs moved for evidentiary sanctions against Google under Rule 37(e) because the

18 record shows both that plaintiffs are prejudiced by Google's spoliation of the 2023 Biscotti Data,

19 and that Google acted with intent to deprive plaintiffs of relevant evidence. Mot. at 16. Where, as

20 here, relevant evidence necessary to prove a moving party's case has been spoliated, monetary

21 sanctions are inadequate, and evidentiary sanctions are appropriate. *See Guifu Li v. A Perfect Day*

22 *Franchise, Inc.*, 2011 WL 3895118, at *3 (N.D. Cal. Aug. 29, 2011) (imposing evidentiary

23 sanctions to remedy prejudice of "information withheld from Plaintiffs [that] could very well bear

24 on whether or not Plaintiffs are able to establish commonality of issues across the putative class").

25 With this showing, evidentiary sanctions under Fed. R. Civ. P. 37(e) should be imposed in the

26 form of an order preventing Google from making any arguments about plaintiffs' inability to link

27 RTB bid request data with Google account information for signed-out Google account holders in

28 any summary judgment motion or at trial in this matter. At trial, the jury also should be instructed

1    that Google destroyed relevant joining key data and failed to produce Biscotti IDs in violation of

2    Court orders and failed to disclose this in a timely manner, and that the jury may infer from

3    Google's conduct that the evidence that Google failed to maintain and produce was not helpful to

4    Google and would have been favorable to plaintiffs.

5              **1.      Google's conduct is sanctionable under Rule 37(e)(1).**

6              In their opening brief, plaintiffs explain in detail why the ████████████████ and

7    Biscotti IDs are relevant, and their production necessary for plaintiffs to prove their case. Mot. at

8    5. Biscotti Data are the best way for plaintiffs to show that bid request information is personal

9    information under Google's privacy policy for both signed-in and signed-out account holders. *Id.*

10   at 4–5. This showing is sufficient to demonstrate that plaintiffs are prejudiced by Google's

11   spoliation of 2023 Biscotti Data. *See Clear-View Techs.*, 2015 WL 2251005, at *7–8 (evidentiary

12   and monetary sanctions warranted given defendants' protracted and needless delays that frustrated

13   discovery process). But plaintiffs do more than simply demonstrate prejudice. They set forth the

14   extensive history of their efforts to obtain production of this (and related ████████████████

15   ████) data over several years, all while Google resisted production and kept to itself its knowledge

16   that it was not retaining the Biscotti Data. Mot. at 6–12.

17             In opposition, Google simply ignores this factual record, and claims that plaintiffs should

18   have pursued discovery regarding Google's joining keys generally. But when plaintiffs did attempt

19   to obtain such discovery, Google resisted. Google should not be permitted to leverage its refusal

20   to cooperate in discovery, then fault plaintiffs for failing to obtain the discovery it resisted. Google

21   also claims that plaintiffs are not prejudiced because plaintiffs have put forth discovery and

22   testimony from Google in support of their argument that Google has multiple ways to ███████████

23   ████████████████████████████. Opp. at 14–15, citing Mot. at 5, 9–10. This doesn't

24   establish that plaintiffs are not prejudiced by Google's failure to maintain and produce Biscotti

25   Data. To the contrary, it shows how critical the data demonstrating that Google does ████████

26   ████████████████████████████ is, supporting that plaintiffs are prejudiced

27   by Google's spoliation. Sanctions under Rule 37(e)(1) are therefore warranted.

28

### 2.    Google's conduct is also sanctionable under Rule 37(e)(2).

Google's conduct is also sanctionable under Rule 37(e)(2). The record reflects that Google repeatedly and deliberately chose not to preserve relevant evidence, evidencing Google's intent to deprive plaintiffs of that evidence. In opposition, Google claims that because in May 2023 it disclosed that it had not preserved data <u>to that point</u>, it was clear to plaintiffs and the Court that it would not be preserving data going forward. Not so, as set forth in Section B, *supra* at 6–8. In any event, plaintiffs do not seek sanctions for Google's failure to implement preservation prior to the April 14 and May 16 Orders, but for its failure to preserve 2023 data.

Google's preservation obligation with regard to the 2023 data was clearly established when the issue of production of ███████████████ and Biscotti IDs was brought to this Court for resolution, and the Court ordered Google to produce them, as well as six additional weeks of data of plaintiffs' choosing. ECFs 484 at 2; 510 at 3. If, after the Court's April 14 and May 16 Orders, Google considered the production of ██████████████ and Biscotti IDs to be outside the proper scope of discovery (Opp. at 2, 16), it could have moved for a protective order, or sought clarification. Instead, it unilaterally determined the evidence to be "irrelevant" (despite Court orders to the contrary), and ensured that there would be no data to produce.

Google also argues that because its policy of "routine purging" predated this action and serves purposes unrelated to litigation, it is entitled to a finding that by continuing to routinely purge rather than preserve, it did not act to conceal information from plaintiffs in this litigation. Opp. at 15. This argument is unsupported by fact and contrary to the law. Factually, Google relies solely on the declaration of a Director of Product Management on the Privacy and Regulations Infrastructure team within Ads at Google LLC, Miju Han, who describes Google's "routine purging" and the business reasons for that purging. But this declaration does not and cannot explain how the existence of routine purging practices relieves Google of its duty to preserve and produce Biscotti Data in this action. *Id.* Indeed, it is precisely this sort of practice that parties are required to suspend to comply with discovery obligations. If, as Google implies, its interest in maintaining the "routine purging practice" was so strong as to mitigate against the implementation of a litigation hold, Google should have disclosed this to plaintiffs in advance and then timely moved

PLAINTIFFS' REPLY ISO MOT. FOR CONTEMPT AND SPOLIATION SANCTIONS

1   for a protective order if the parties could not resolve the issue through the meet and confer process.

2   Google did neither.

3       On the law, Google's reliance on *Akiona v. United States*, 938 F.2d 158, 161 (9th Cir. 1991)

4   is not only unavailing, but again, misrepresents the authority. *Akiona* involves an action arising

5   under Hawaiian tort law against the United States, stemming from a 1985 incident in which persons

6   were injured when a civilian threw a hand grenade in a parking lot in Honolulu. Investigation

7   showed (and the United States stipulated) that the grenade was manufactured for the United States

8   government and was part of lots shipped to locations around the world, including Japan, Germany,

9   and Hawaii, between 1967 and 1969. *Id.* at 159. The *Akiona* plaintiffs argued that the government

10  had a duty to keep grenades out of unauthorized hands and protect the public from unauthorized

11  uses, and put forth the government's destruction of records regarding the grenade used in the attack

12  as grounds for an adverse evidentiary inference. *Id.* at 159–60. As relevant here, the government

13  had a policy of destroying records pertaining to grenades two years after the grenades were

14  disposed of, and any such records had long been destroyed by the time of the 1985 incident.

15      The Ninth Circuit held that the district court erred in relying on the destruction of such

16  records for an adverse evidentiary inference, because (a) the record destruction was implemented

17  as part of a routine practice unrelated to the litigation, and (b) the destruction pre-dated the incident

18  by decades. *Id.* at 161. Nowhere does the *Akiona* court hold—let alone imply—that the mere

19  presence of a routine policy unrelated to litigation entitles a party to an inference that it did not act

20  with intent to conceal. The facts here are also clearly distinguishable. Unlike the United States,

21  Google did not destroy Biscotti Data years before litigation commenced, pursuant to a routine

22  practice. Rather, contrary to its duty to preserve (which arose when litigation commenced), the

23  assurances Google provided plaintiffs and the Court that it had implemented preservation measures

24  for relevant data, and the directives of the April 14 and May 16 Orders, Google continuously

25  destroyed relevant evidence <u>during the course of the litigation</u>. Under these facts, Google is not

26  entitled to a presumption that it did not act with the intent to deprive plaintiffs of the 2023 Biscotti

27  Data when it permitted its destruction.

28

1    If any doubts remain that it was Google's clear intent to deprive plaintiffs of relevant

2    evidence through its spoliation of ██████████████ and Biscotti IDs in the wake of the April

3    14 and May 16 Orders, plaintiffs' November 17, 2023 request—and Google's response to it—

4    eliminates them. Plaintiffs specifically requested production of three weeks of data that should

5    have fallen within the rolling ██████ look-back window, had Google implemented preservation in

6    April or May 2023 (March 18–25, June 2–9, and September 30–October 7). As for the September

7    30–October 7 time-period, Google should have had that data to produce *regardless* of its failure

8    to alter its standard retention policy, as the requested data fell well within the ██████ retention

9    period. Google doesn't dispute this (as it cannot), but rather than owning up to its failure to

10    promptly collect data for production, tries to shift blame to plaintiffs by claiming that plaintiffs

11    made their request too close to the "winter holidays." Opp. at 16. This argument is indefensible.

12    Google, probably the world's largest and most sophisticated data collection company, and a

13    frequent party to litigation, knows how to preserve evidence and collect data when it wants to. Nor

14    does Google offer any support for its facially absurd argument that it was unable to collect data

15    over a nearly two-month period because of the "winter holidays."[3] Google did not respond to

16    plaintiffs' November 17 request for 55 days—on January 11, 2024—and then only to delay and

17    obfuscate, feigning confusion over plaintiffs' request while also stating that it would not produce

18    ████████████████. This response came, of course, only *after* the normal retention period ran

19    on January 5. Google did not disclose on January 11th that it *could not* produce the Biscotti Data

20    because it had permitted its destruction; rather, it waited until after the close of fact discovery to

21    confirm that fact. Google's concealment and delay also supports a finding that Google willfully

22    deprived plaintiffs of the 2023 Biscotti Data.

23    When plaintiffs asked Google for clarification—whether joining keys for 2023 existed but

24    Google was refusing to produce them (as Google's January 11 letter suggested) or whether the

---

[3] During this amorphous "winter holiday" when Google and its counsel were supposedly unable to issue a simple document retention instruction for a well-defined set of data, Google and its counsel were busy briefing *Daubert* motions in this case and working through a number of discovery issues as the discovery cut-off approached.

joining keys no longer existed for any of the 2023 time-periods—Google again delayed for <u>six weeks</u> before finally admitting that the keys had been destroyed. Mot. at 11, citing Levine Decl., ¶¶ 18–19. These facts establish Google's intent under Rule 37(e)(2) and support the imposition of evidentiary sanctions under Rule 37(e)(2). *See, e.g.*, *Phoceene Sous-Marine, S.A. v. U.S. Phosmarine, Inc.*, 682 F.2d 802, 806 (9th Cir. 1982); *Nat'l Ass'n of Radiation Survivors v. Turnage*, 115 F.R.D. 543, 557 (N.D. Cal. 1987) ("Where one party wrongfully denies another the evidence necessary to establish a fact in dispute, the court must draw the strongest allowable inferences in favor of the aggrieved party.").

## III.    CONCLUSION

For the reasons set forth herein, the Court should hold Google in contempt under Rule 37(b)(2)(A) for its knowing and willful violation of the Court's April 14 and May 16 Orders and impose evidentiary sanctions under Rule 37(e) for Google's knowing and willful failure to maintain and produce Biscotti IDs and █████████ in 2023 after they were ordered to be produced by the Court and requested by plaintiffs. Google should be prevented from making any arguments based on the lack of Biscotti IDs and joining key data in favor of summary judgment or at trial in this matter. At trial, the jury should also be instructed that Google destroyed relevant joining key data and failed to produce Biscotti IDs in violation of Court orders and failed to disclose this in a timely manner, and that the jury may infer from Google's conduct that the evidence that Google failed to maintain and produce was not helpful to Google and would have been favorable to plaintiffs.

DATED:  May 31, 2024                    Respectfully submitted,

                                        **PRITZKER LEVINE LLP**

                                        By: */s/ Jonathan K. Levine*
                                        Elizabeth C. Pritzker (Cal. Bar No. 146267)
                                        Jonathan K. Levine (Cal. Bar No. 220289)
                                        Bethany Caracuzzo (Cal. Bar No. 190687)
                                        Caroline Corbitt (Cal. Bar No. 305492)
                                        1900 Powell Street, Ste. 450
                                        Oakland, CA 94602

Tel.: (415) 692-0772
Fax: (415) 366-6110
*ecp@pritzkerlevine.com*
*jkl@pritzkerlevine.com*
*bc@pritzkerlevine.com*
*ccc@pritzkerlevine.com*

*Interim Class Counsel*

**BLEICHMAR FONTI & AULD LLP**

By: */s/ Anne K. Davis*
Lesley E. Weaver (Cal. Bar No. 191305)
Anne K. Davis (Cal. Bar No. 267909)
Joshua D. Samra (Cal. Bar No. 313050)
1330 Broadway, Suite 630
Oakland, CA 94612
Tel.: (415) 445-4003
Fax: (415) 445-4020
*lweaver@bfalaw.com*
*adavis@bfalaw.com*
*jsamra@bfalaw.com*

**SIMONS HANLY CONROY LLC**
Jason 'Jay' Barnes (admitted *pro hac vice*)
An Truong (admitted *pro hac vice*)
112 Madison Avenue, 7th Floor
New York, NY 10016
Tel.: (212) 784-6400
Fax: (212) 213-5949
*jaybarnes@simmonsfirm.com*
*atruong@simmonsfirm.com*

**DICELLO LEVITT LLC**
David A. Straite (admitted *pro hac vice*)
485 Lexington Avenue, Suite 1001
Tel.: (212) 784-6400
Fax: (212) 213-5949
New York, NY 10017
*dstraite@dicellolevitt.com*

**COTCHETT PITRE & MCCARTHY, LLP**
Nancy E. Nishimura (Cal. Bar No. 152621)
Brian Danitz (Cal. Bar No. 247403)
Karin B. Swope (admitted *pro hac vice*)
840 Malcolm Road
Burlingame, CA 94010
Tel.: (650) 697-6000

*nnishimura@cpmlegal.com*
*bdanitz@cpmlegal.com*
*kswope@cpmlegal.com*

**BOTTINI & BOTTINI INC.**
Frances A. Bottini, Jr. (Cal. Bar No. 175783)
7817 Ivanhoe Ave., Ste. 102
La Jolla, CA 92037
Tel.: (848) 914-2001
*fbottini@bottinilaw.com*

*Plaintiffs' Executive Committee*

## ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1(i)(3)

I, Anne K. Davis, attest that concurrence in the filing of this document has been obtained from the other signatories. I declare under penalty of perjury that the foregoing is true and correct.

Executed this 31st day of May, 2024, at Pacifica, California.

*/s/ Anne K. Davis*
Anne K. Davis