**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
Diane M. Doolittle (CA Bar No. 142046)
dianedoolittle@quinnemanuel.com
Sara Jenkins (CA Bar No. 230097)
sarajenkins@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

Andrew H. Schapiro (admitted *pro hac vice*)
andrewschapiro@quinnemanuel.com
Teuta Fani (admitted *pro hac vice*)
teutafani@quinnemanuel.com
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606
Telephone: (312) 705-7400
Facsimile: (312) 705-7401

Stephen A. Broome (CA Bar No. 314605)
stephenbroome@quinnemanuel.com
Viola Trebicka (CA Bar No. 269526)
violatrebicka@quinnemanuel.com
Crystal Nix-Hines (Bar No. 326971)
crystalnixhines@quinnemanuel.com
Alyssa G. Olson (CA Bar No. 305705)
alyolson@quinnemanuel.com
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Josef Ansorge (admitted *pro hac vice*)
josefansorge@quinnemanuel.com
Xi ("Tracy") Gao (CA Bar No. 326266)
tracygao@quinnemanuel.com
Carl Spilly (admitted *pro hac vice*)
carlspilly@quinnemanuel.com
1300 I Street NW, Suite 900
Washington D.C., 20005
Telephone: (202) 538-8000
Facsimile: (202) 538-8100

Jomaire Crawford (admitted *pro hac vice*)
jomairecrawford@quinnemanuel.com
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100

Jonathan Tse (CA Bar No. 305468)
jonathantse@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, CA 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

*Counsel for Defendant Google LLC*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION

| | |
|---|---|
| PATRICK CALHOUN, et al., on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>GOOGLE LLC,<br><br>Defendant. | Case No. 4:20-cv-05146-YGR-SVK<br><br>**GOOGLE LLC'S RESPONSE TO PLAINTIFFS' OBJECTIONS TO SPECIAL MASTER'S REPORT AND RECOMMENDATION RE CALHOUN MODIFIED PRESERVATION PLAN**<br><br>Referral: Hon. Susan van Keulen, USMJ |

Pursuant to the Court's May 23, 2022 Order (the "Order") (Dkt. 667), Google hereby responds to Plaintiffs' objections ("Plaintiffs' Objections") to the "Special Master's Report and Recommendation re *Calhoun* Modified Preservation Plan" (Dkts. 665, 666) (the "Modified Preservation Plan").

The Court instructed the parties to focus their objections on "ONLY the 14 data sources for which the Modified Plan reflects substantive changes." Dkt. 667 (caps in original). Instead, Plaintiffs submitted a brief that improperly amplifies their meritless motion for sanctions, which is being briefed on a separate schedule. Because the baseless nature of these and other accusations are outside of the Order's scope, they will be addressed in Google's forthcoming opposition. One example, however, illustrates how Plaintiffs continue to perpetuate misstatements, even after being corrected and proven wrong, which is the reason that the same disputes continue to be raised and re-litigated endlessly: Plaintiffs claim that when ███████ " is set to zero or false, it shows that "a Chrome user is not signed in (and thus not consented for sync)." Dkt. 690-1 at 1:11-12. That's incorrect. The recent searches conducted pursuant to the Special Master process confirm that the field ███████ cannot be used to reliably detect logged-out traffic: ███████
███████
███████
███████
███████ Google explained this already, repeatedly, in submissions and letters to the Special Master and Plaintiffs, yet Plaintiffs continue to introduce unsupported, contradictory statements into the record. Gao Decl. ¶¶ 7-8.

From a process standpoint, Plaintiffs also claim that they hope to discover more not-synced signals "because the Special Master log-search process has not yet concluded." Dkt. 690-1 at 2:3. That is also wrong. Plaintiffs submitted their final search request on April 6, 2022 pursuant to the Special Master's request. Gao Decl. ¶ 4 (quoting Special Master Brush's April 1, 2022 email to Plaintiffs, cc'ing Google: "Final searches are to be submitted today. I am unsure what is missing for you to supply the final searches."). Plaintiffs provided their final searches, Google ran the requested searches, Google made rolling productions on April 22, April 28, April 29, 2022, and Google

concluded such efforts on May 20, 2022 when it produced the last batch of data that contained confidential third-party data and required reasonable publisher notice. *Id.* ¶ 5.

Google responds to Plaintiffs' numbered objections as follows:

***Plaintiffs' Objection Nos. 1, 2, 4, 5, 7–10: Objections Incorporated by Reference***

Plaintiffs incorporated by reference their Objection Nos. 1, 2, 4, 5, 7–10 asserted on April 15, 2022 (Dkt. 622). Dkt. 690-1 at 4. Google hereby incorporates its response to these objections submitted on April 25, 2022 (Dkt. 635), and thus no further response is necessary.

***Plaintiffs' Objection No. 3: Altering Log Structure***

In this objection, Plaintiffs: (1) incorporated their request for "full preservation of logs already being retained indefinitely" (Dkt. 690-1 at 3:5); (2) requested that Google seek the Court's permission before shortening the existing retention period for any data source identified in the Modified Preservation Plan (*id.* at 4:15–17); and (3) requested that "the Court also order Google not to alter the structure of any relevant data logs … without express permission of the Court" (*id.* at 4:20–21). None of these requests is appropriate or proportional to the needs of this litigation.

*First*, there is no reason to restrict Google's ability to alter the retention period for data sources it already retains given the breadth of the Modified Preservation Plan, which encompasses: (i) sampled preservation of 40 data sources; (ii) full field-based preservation of 12 data sources; and (iii) one-time full snapshot of three data sources. All seven relevant logs listed in "AEO 2021-09-17 Calhoun v. Google -Google Submission" that are currently retained permanently have already been incorporated into the Modified Preservation Plan and are subject to sampled or both sampled and field-based preservation (i.e., ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮). Many of these logs store data that fall out of the class period. Not allowing Google to alter the retention period may result in Google having to preserve years of data that have no bearing on this matter. Indeed, as the Special Master has already acknowledged, the preservation period should extend back only to July 27, 2016, the first day of the class period. Dkt. 666-2 at 1-2. There is no reason to preserve records that fall outside of this period.

Moreover, requiring Google to seek permission from the Court before shortening retention periods for these logs would impose substantial and unnecessary burdens on Google and the Court.

*Second*, there is no basis for Plaintiffs' demand that Google be ordered not to alter "the structure of any relevant data logs." Dkt. 690-1 at 4:18. Plaintiffs recognize that Google "alters the structure of data logs in the ordinary course," but nonetheless request that Google cease such necessary and important business functions for a large number of logs for an indefinite period of time. *Id.* at 4:22. That would be untenable. The log sources included in the Modified Preservation Plan and "AEO 2021-09-17 Calhoun v. Google -Google Submission" represent a substantial subset of Google's complex data logging infrastructure. ▮▮▮▮▮ Numerous engineering teams across the globe use and manage these logs for different business purposes, which range from ▮▮▮▮▮. Although ▮▮▮▮▮ Google engineers may alter one or more of the ▮▮▮ of fields written to the identified logs for business and technical reasons that are driven by the needs of their respective teams. For instance, an engineer may add a field that logs the clicks of a new ad type, or alter the way Google logs fields about an ad's appearance (e.g., its size in pixels, whether it is a video ad, text ad, or graphic ad, etc.). However, under Plaintiffs' proposal, *every* time that Google wishes to introduce new features that necessitate writing information to a log, Google would have to seek the Court's permission.

In addition, Google engineers may occasionally delete an obsolete field, or move a field from a longer-retained log to a shorter-retained log, to save space within Google's data logs. Conserving space is a crucial business need, and Google will be severely prejudiced if it has to seek Court approval to make routine business decisions that need to be made in real time. Nor is a broad prohibition against changes to any field justified here, where the Special Master has already identified 15 fields that are relevant to this litigation for *full* preservation and also recommended sampled preservation of *all* fields in relevant logs.

An order precluding Google from "alter[ing] the structure of any relevant data logs" would significantly impair Google's ability to conduct its business, impair decision-making processes that have no effect whatsoever on this litigation, and drag the Court into micromanagement of Google's log structure. Plaintiffs' request should be denied.[1]

***Plaintiffs' Objection No. 11: The Preservation of Rotating Keys***

Plaintiffs claim they seek a "slight mofic[ation]" to the Modified Preservation Plan to include unidentified "rotating keys." Dkt. 690-1 at 4–5. That modification is neither "slight" nor warranted.

First, Google uses many types of "rotating keys" for various purposes, including keys that have nothing to do with this litigation or the steps that Google was ordered to follow in accordance with the Modified Preservation Plan. *See* Chan Decl. ¶ 4.

Second, there are undue risks associated with preserving the one rotating key relevant to this litigation: the ▓▓▓▓▓▓▓▓▓▓▓▓. ¶¶ 5-6. ▓▓▓▓▓▓▓▓▓▓▓▓ *Id.* As designed, ▓▓▓▓▓▓▓▓▓▓▓▓ *Id.* ¶ 7. ▓▓▓▓▓▓▓▓▓▓▓▓ *Id.* ▓▓▓▓▓▓▓▓▓▓▓▓ (which Google's policies prohibit) and thus compromise the privacy protection that Google has implemented for users worldwide. *Id.* ¶ 9. Simply put, preserving keys stored in a ***rotating*** keystore would circumvent the purpose of storing them in a rotating keystore. *Id.* ¶ 8.

Copying the keys to a separate litigation hold platform for preservation is also not feasible. ▓▓▓▓▓▓▓▓▓▓▓▓

---

[1] If it would aid the Court, Google can provide a supporting declaration concerning the types of changes made to its logs, how such changes are handled in different data storage spaces, and the anticipated frequency of such changes.

1  ▮ *Id.* As a result, copying all the keys stored in ▮ would sweep in more than ▮ other keys
2  irrelevant to this case and expose Google and users worldwide to unnecessarily increased security
3  and privacy risks.
4       As reflected in Google's response to the Modified Preservation Plan, Google proposes to
5  perform the following three steps, which together are more than sufficient to ensure that the relevant
6  data is capable of decryption: ▮
7  ▮
8  ▮
9  ▮. *See* Dkt. 694-4 at 7. Even Plaintiffs' expert
10 said it was unnecessary to preserve rotating keys if the data was kept unencrypted. Dkt. 621-4
11 (Shafiq Dec.) ¶ 9 ("Since Google stores these UIDs in certain logs sometimes in an encrypted
12 format, it is important to preserve the decrypted version of these UIDs when applicable.
13 Alternatively, Google should preserve the encryption/decryption keys[.]"). Google proposes an
14 additional encryption step to store preserved user data securely. For these reasons, Plaintiffs' request
15 that Google also preserve "rotating keys" is unwarranted and should be denied.

16       ***Plaintiffs' Objection No. 12: Preservation of Mapping Tables***
17       Google agrees to preserve the ▮ mapping table, which is the only mapping table
18 discussed in the Special Master process to date. Google does not have a master list of additional
19 identifiers (i.e., ▮), which
20 Plaintiffs generically refer to as "mapping tables." Dkt. 690-1 at 5:9. *See generally* Dkt. 634-4 at
21 7:21-8:9 (explaining same and correcting Plaintiffs' assertion that generic "mapping tables" exist).

22       ***Plaintiffs' Objection No. 13 : Clarification of "Sync State" As a Defined Term***
23       The Modified Preservation Plan recommended "full ongoing preservation" of "[Chrome]
24 sync state" field(s) from ▮ces "where they are present." Dkt.
25 666-1. Consistent with that recommendation, Google intends to preserve the fields
26 "▮" and
27 "▮" from ▮ The remaining nine logs do not contain any
28

GOOGLE LLC'S RESPONSE TO PLAINTIFFS' OBJECTIONS TO SPECIAL MASTER'S REPORT AND
RECOMMENDATION RE CALHOUN MODIFIED PRESERVATION PLAN

"sync state" field (Dkt. 690-1 at 5:15); and as explained in Google's objections, field-based preservation is neither appropriate nor feasible for ▇ (*see generally* Dkt. 695 at 2–5).

Plaintiffs seek clarification that "sync state" encompasses "▇" and any fields that record a Biscotti or Zwieback ID. *Id.* Although Google agrees to preserve these additional fields, Plaintiffs' claim that these are "sync state" fields is wrong. Requesting that "sync state" be read to subsume these ID fields runs contrary to the Special Master's recommendations and common sense. If the Special Master intended for "sync state" to encompass "▇" or the Biscotti or Zwieback ID fields, there would have been no reason for him to separately itemize "Any ID Not mentioned below," "Biscotti -Encrypted UID," "Biscotti -UID," "▇," *and "sync state."*

***Plaintiffs' Objection No. 14: Clarification of "Any ID Not Mentioned Below"***

Pursuant to the Special Master's recommendation that Google preserve "[a]ny ID Not mentioned below," Dkt. 665, Google identifies the following IDs from the ▇ that are subject to field-based preservation, and is prepared to preserve these corresponding fields where present:



| Data Sources | "Any ID Not mentioned below" |
|---|---|
| ▇ | ▇ |
| ▇ | ▇ |
| ▇ | ▇ |
| ▇ | ▇ |
| ▇ | ▇ |
| ▇ | ▇ |
| ▇ | ▇ |
| ▇ | ▇ |
| ▇ | |
| ▇ | ▇ |
| ▇ | ▇ |
| ▇ | ▇ |

Plaintiffs also seek the preservation of unidentified data sources where GAIA IDs and Zwieback IDs are "comingled" [sic]. Dkt. 690-1 at 6. But such IDs are never commingled or joined.

1  See, e.g., Dkt. 482-22 ¶ 10 ("Google engages in the following practices to ensure that
2  unauthenticated data are not used to uniquely identify individual users including … ensuring that
3  'unauthenticated identifiers such as … Zwieback must never be stored with personally-identifying
4  information (PII) such as GAIA IDs [Google Account IDs].'"). The troves of data that Google
5  produced through the Special Master process also proves that GAIA IDs and Zwieback IDs are
6  never commingled. In addition to disclosing all ███████ columns on February 25, 2022
7  and all ███████ columns on March 7, 2022,² Google also produced gigabytes of data
8  associated with identifiers provided by the Named Plaintiffs and Dr. Shafiq from ███████
9  ███████ keyspaces on March 10, March 31, and April 22, 2022. Gao Decl. ¶ 3. Yet, Plaintiffs
10 have not and cannot cite *any* produced data to support their claim that Google joins GAIA IDs with
11 Zwieback IDs. Plaintiffs' *only* support for their claim that GAIA IDs and Zwieback IDs are
12 commingled is that ███████
13 ███████. But the names of these
14 columns is not evidence that the actual data in these columns commingle GAIA IDs and Zwieback
15 ID. ███████
16 ███████
17 ███████
18 ███████
19 ███████

20      Remarkably, Plaintiffs go on to claim that they also "believe the Special Master's order
21 incorporates street addresses, phone numbers, and precise geolocation." Dkt. 690-1 at 6:9-10. Yet
22 again, Plaintiffs attempt to improperly expand the scope of Google's obligations under the Modified

---

² Plaintiffs state that they received ███████ columns information on May 9, 2022. *See* Dkt. 690-1 at 7:2-3. But as Plaintiffs know, Google provided the list of all ███████ columns with annotations to the Special Master for review on March 7, 2022 pursuant to the Special Master's instruction, and noted that Google would "defer to the Special Master if this comprehensive list … should be produced to Calhoun counsel." Gao Decl. ¶ 2. The Special Master did not direct Google to send the production to Plaintiffs until May 9, 2022. *Id.* ¶ 6.

³ Google would provide a supporting declaration on this issue if it would aid the Court.

Preservation Plan, citing nothing more than barebones ▉ column names. Google responds to each identified column in brief:

- ▉
  ▉
  ▉
  ▉

- ▉
  ▉
  ▉.[4] This column has nothing to do with any of the products at issue.

- ▉ columns that allegedly contain "precise geo-location" (including ▉ ▉ ▉ all store data for the ▉ team, which focus on geolocation information connected with various Google products, most of which have no bearing on this case. Further, the Special Master made clear in the Modified Preservation Plan that Google should preserve "any ID." Geolocation is not an ID.

Plaintiffs also contend that ▉ contain a "sync signal" because the word "sync" appears in the name of those columns. Dkt. 690-1 at 7:1-5. Plaintiffs are mistaken. That the word "sync" appears in the column name does not indicate that the column contains a "sync signal." For instance, ▉ ▉ ▉, which is outside the scope of this case. ▉ ▉ (see Dkt. 669-11 at 19),

---

[4] *See generally* "Set up a recovery phone number or email address," available at https://support.google.com/accounts/answer/183723?hl=en (last accessed June 15, 2022).

which is already subject to both sampled preservation of all fields as well as field-based full preservation under the Modified Preservation Plan. Further, all synced data is subject to individual user controls, *see* Dkt. 108-4 at 4:27–5:4, which is significant because the Special Master has already made clear that users' "[w]ipeout instructions are to be honored." Dkt. 666-2 at 2. Requiring Google to preserve all of these columns would effectively prevent Google from complying with millions of account holders' personal data retention and deletion preferences and run afoul of the Special Master's recommendation.

***Plaintiffs' Objection No. 15: Relevant Fields***

Plaintiffs ask that Google "identify all fields that it believes are implicated by the preservation order." Dkt. 690-1 at 7:12-13. Pursuant to the Special Master's recommendation, Google is prepared to preserve the following fields from the ten ▮▮▮▮ logs that are subject to field-based preservation:

| Log | Field |
|---|---|
| ▮▮▮ | ▮▮▮ |







| Log | Field |
|---|---|
|  | • ████ |

Plaintiffs' further request for "full transparency" in the form of "field names, descriptions, data dictionaries and schema for these data sources," *id.* at 7–8, is beyond the scope of the Modified Preservation Plan and should be rejected. This request has already been extensively litigated and resolved by the Special Master. Through the Special Master alone, Google has produced more than 20 gigabytes of data. The parties have extensively discussed field names, descriptions, and data dictionaries and schema during that process, and these have been the subject of orders and a negotiated process for production. Google engineers even wrote hundreds of field descriptions for Plaintiffs. As the Court has recognized, "[t]he requests for production from Google must and will come to an end." Dkt. 377 at 6. There is no basis to require Google to further search for or create additional information that falls outside the scope of what the Special Master has previously ordered.

Plaintiffs also seek "clarification" that Google must preserve all ████ columns that contain the field information specified in the Modified Preservation Plan. Dkt. 690-1 at 8:2. But as Google already explained in its objections, Google cannot readily determine whether any ████ columns contain any of the requested field values; preserving any significant portion of ████ ████ would be infeasible given the size of data it stores. *See* Dkt. 695 at 4.[5] Moreover, there is little incremental value in Google preserving any column in its entirety because—unlike ████ log sources—████ columns are likely to contain at most only one or two of the 15

---

[5] As stated in Google's Objections to the Special Master's Report and Recommendation re *Calhoun* Modified Preservation Plan (Dkt. 694-4 at 4), ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

1  requested fields in addition to the ID. *Id.* Notably, Plaintiffs have not cited *any* produced data to
2  support their request for preservation of ▓▓▓ columns despite having received multiple
3  productions from the *entire* ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
4  ▓▓▓▓▓▓ of data associated with identifiers provided by the Named Plaintiffs and Dr. Shafiq.
5  As a result, preserving any ▓▓▓ column in its entirety would fail the proportionality analysis that
6  Rule 26(b)(1) requires.
7      ***Plaintiffs' Objection No. 16: Arguments Concerning the Availability of Certain Data***
8      To resolve this dispute, Google agrees that it will not seek to oppose class certification or
9  Plaintiffs' claims on the basis that data that once existed is no longer available because it fell outside
10 of the preservation order.

| | |
|---|---|
| DATED: June 15, 2022 | QUINN EMANUEL URQUHART & SULLIVAN, LLP |
| | By  */s/ Andrew H. Schapiro*<br>Andrew H. Schapiro |

    Andrew H. Schapiro (admitted *pro hac vice*)
    andrewschapiro@quinnemanuel.com
    Teuta Fani (admitted *pro hac vice*)
    teutafani@quinnemanuel.com
    191 N. Wacker Drive, Suite 2700
    Chicago, IL 60606
    Telephone: (312) 705-7400
    Facsimile: (312) 705-7401

    Diane M. Doolittle (CA Bar No. 142046)
    dianedoolittle@quinnemanuel.com
    Sara Jenkins (CA Bar No. 230097)
    sarajenkins@quinnemanuel.com
    555 Twin Dolphin Drive, 5th Floor
    Redwood Shores, CA 94065
    Telephone: (650) 801-5000
    Facsimile: (650) 801-5100

    Stephen A. Broome (CA Bar No. 314605)
    stephenbroome@quinnemanuel.com
    Viola Trebicka (CA Bar No. 269526)
    violatrebicka@quinnemanuel.com
    Crystal Nix-Hines (Bar No. 326971)
    crystalnixhines@quinnemanuel.com
    Alyssa G. Olson (CA Bar No. 305705)
    alyolson@quinnemanuel.com
    865 S. Figueroa Street, 10th Floor
    Los Angeles, CA 90017
    Telephone: (213) 443-3000
    Facsimile: (213) 443-3100

    Jomaire A. Crawford (admitted *pro hac vice*)
    jomairecrawford@quinnemanuel.com
    51 Madison Avenue, 22nd Floor
    New York, NY 10010
    Telephone: (212) 849-7000
    Facsimile: (212) 849-7100

Josef Ansorge (admitted *pro hac vice*)
josefansorge@quinnemanuel.com
Xi ("Tracy") Gao (CA Bar No. 326266)
tracygao@quinnemanuel.com
Carl Spilly (admitted *pro hac vice*)
carlspilly@quinnemanuel.com
1300 I Street NW, Suite 900
Washington D.C., 20005
Telephone: (202) 538-8000
Facsimile: (202) 538-8100

Jonathan Tse (CA Bar No. 305468)
jonathantse@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, CA 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

*Attorneys for Defendant Google LLC*