# PLAINTIFFS' RESPONSE TO GOOGLE'S OBJECTIONS (DKT. NO. 695) TO SPECIAL MASTER'S MODIFIED PRESERVATION PLAN (DKT NOS. 665, 666)

## Redacted Version of Document Sought to be Sealed

**BLEICHMAR FONTI & AULD LLP**
Lesley Weaver (Cal. Bar No.191305)
Angelica M. Ornelas (Cal. Bar No. 285929)
Joshua D. Samra (Cal. Bar No. 313050)
555 12th Street, Suite 1600
Oakland, CA 94607
Tel.: (415) 445-4003
Fax: (415) 445-4020
lweaver@bfalaw.com
aornelas@bfalaw.com
jsamra@bfalaw.com

**SIMMONS HANLY CONROY LLC**
Jason 'Jay' Barnes (admitted *pro hac vice*)
An Truong (admitted *pro hac vice*)
Eric Johnson (admitted *pro hac vice*)
112 Madison Avenue, 7th Floor
New York, NY 10016
Tel.: (212) 784-6400
Fax: (212) 213-5949
jaybarnes@simmonsfirm.com
atruong@simmonsfirm.com
ejohnson@simmonsfirm.com

**DiCELLO LEVITT GUTZLER LLC**
David A. Straite (admitted *pro hac vice*)
Corban Rhodes (admitted *pro hac vice*)
One Grand Central Place
69 East 42nd Street, Suite 2400
New York, NY 10165
Tel.: (646) 933-1000
dstraite@dicellolevitt.com
crhodes@dicellolevitt.com

Amy E. Keller (admitted *pro hac vice*)
Adam Prom (admitted *pro hac vice*)
Sharon Cruz (admitted *pro hac vice*)
Ten North Dearborn St., Sixth Floor
Chicago, IL 60602
Tel.: (312) 214-7900
akeller@dicellolevitt.com
aprom@dicellolevitt.com
scruz@dicellolevitt.com

*Counsel for Plaintiffs*

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION**

| | |
|---|---|
| PATRICK CALHOUN, et al., on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>GOOGLE LLC,<br><br>Defendant. | Case No. 4:20-cv-5146-YGR-SVK<br><br>PLAINTIFFS' RESPONSE TO GOOGLE'S OBJECTIONS (DKT. NO. 695) TO SPECIAL MASTER'S MODIFIED PRESERVATION PLAN (DKT NOS. 665, 666)<br><br>Referral:         Hon. Susan van Keulen, USMJ<br>Special Master:  Douglas A. Brush<br>Hearing Set:     June 30, 2022, 9:30am PT |

**UNREDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

## I. PRELIMINARY STATEMENT

Google accepts the Special Master's recommendation to fully preserve relevant fields within certain data sources – except for two: GAIA [redacted] and Zwieback [redacted], the two most important in the case. In support of its objection, Google now argues (for the first time, after years of litigation) that these two data sources would be difficult to preserve on a field-by-field basis, requiring full preservation of GAIA [redacted] and Zwieback [redacted] in order to comply with the Modified Preservation Plan. Google then argues that full preservation would be unduly costly.

Both of Google's arguments should be rejected. Even if the Court accepted Google's "all or nothing" representations at face value, Google's representations regarding the *size* of these two data sources come from a declaration of an employee never previously identified (Patrick Quaid), and they are wildly inconsistent with representations made by Google counsel just last month to the Special Master. Fact discovery ended months ago, and Plaintiffs have no ability to test this surprise declaration and the reasons for the facial inconsistencies. Worse, Google counsel (not Mr. Quaid nor any other Google employee) offer comical illustrations regarding preservation *costs* that have no basis in fact or logic, and directly contradict Google's position at a Rule 30(b)(6) deposition last year.

Google had many chances to make its "burdens" arguments to the Special Master for many months, and did so, repeatedly. Google's arguments were thoughtfully considered by the Special Master, and accepted in part, and rejected in part. Google should not now be permitted to start over, submit new declarations and make new arguments that directly contradict past statements when Plaintiffs have no ability to test them. Google's objections should be overruled.[1]

## II. RESPONSE TO GOOGLE'S OBJECTION 1

Google steadfastly resisted discovery of the [redacted] data sources for the entirety of fact discovery, even falsely contending until a few months ago that they were not relevant. But of course they are. For example, in binding 30(b)(6) testimony, corporate representative Dr. Curt Harting testified that [redacted]. Straite Supp. Decl., Ex A. (Harting Depo.

---

[1] Plaintiffs' response is supported by the accompanying Supplemental Declaration of David A. Straite dated June 15, 2022 and Exhibits A, B and C thereto.

1  Tr. 264:22-24). Through the Special Master process, Google's production recently confirmed that
2  GAIA ▇ columns often store Zwieback IDs together with GAIA account IDs, mailing
3  addresses, phone numbers, and geo-location, a supposedly forbidden (and likely unlawful) practice.
4  Plaintiffs only learned this after the conclusion of fact discovery and only after finally securing the
5  column annotations for GAIA ▇ on May 9, 2022. Supp. Straite Decl. ¶ 4. It is obvious why
6  Google is desperate to shield the ▇ data sources, and "undue burden" is not the reason.

       Google now represents (for the first time) that ▇ data sources cannot be "filtered" by
field values or field names, and thus preservation is effectively all-or-nothing. Google's declarant Mr. Quaid says that he is "not aware of a way to readily determine" whether ▇ columns contain relevant fields, Dkt. No. 695-1, ¶ 8, but this is not evidence of anything other than a mystery employee's inability to think of a way to do something. Plaintiffs were denied access to names and some annotated descriptions of the GAIA ▇ columns until May 9, and it would be unfairly prejudicial in the extreme to excuse Google from preservation obligations because a surprise untested declarant says he is not aware of how to filter database columns by fields.

       But even if it were true that preservation of GAIA ▇ and Zwieback ▇ would be all-or-nothing, the costs associated with preservation would be orders-of-magnitude less than Google suggests in its objections. First, Google's new representations regarding the *size* of the ▇ data sources are so unreliable that they cannot be the basis for any Court decision. Google contends that GAIA ▇ "stores about ▇ of data" with ▇ added each day. Dkt. No. 695-1 (Quaid Decl.), ¶ 6; Dkt. No. 695 (Google objections) at 4:18-19. But just last month, Google told the Special Master that GAIA ▇ only had ▇, see Supp. Straite Decl., Ex. B (Google letter dated May 11, 2022), *a 400% difference*:

| GAIA ▇ | What Google Told the Special Master on May 11, 2022 | What Google told the Court on June 8, 2022 |
|---|---|---|
| Total Volume: | ▇ | ▇ |
| Compressed Daily Average: | ▇ | ▇ |

Similarly, for Zwieback ▮, Google overstated the data volume by 300% compared to what it told the Special Master last month:

| ZWIEBACK ▮ | What Google Told the Special Master on May 11, 2022 | What Google told the Court on June 8, 2022 |
|---|---|---|
| Total: | ▮ | ▮ |
| Compressed Daily Average: | ▮ | ▮ |

Plaintiffs have no way to test why these numbers are so far off. Google cited to no documents produced in discovery to support either version of these numbers, and Google's new declarant has never been identified before as an ESI Custodian. It would be unfairly prejudicial to accept any of this new "evidence" at face value.

Finally, even if the Court were to accept some version of Google's representations regarding storage *volume* – whether it be Google's May 11 version of the truth, or Google's June 8 version of the truth – the Court absolutely cannot give any credence to Google's cost illustrations. To be clear: Google offers no <u>evidence</u> of the costs associated with full preservation of the ▮ ▮, just misleading illustrations from counsel that Mr. Quaid wisely declined to include in his under-oath declaration.

Google never actually provides the Court with any storage cost representations. Instead, as Google correctly notes, it used retail cloud storage rates that Google charges to small customers. Last month, during the Special Master process, Plaintiffs complained that Google refused to provide any actual storage cost data, and thus used publicly available retail cloud storage rates as in illustration when arguing for full preservation of some of the data logs. Plaintiffs asked the Special Master to assume, *arguendo,* preservation costs based on retail cloud storage prices. Using those wildly inflated storage costs as a hypothetical to prove a point (costs which do not in any way accurately reflect Google's *internal* storage costs), Plaintiffs were able to prove conclusively that storage costs were immaterial for many logs. But Google now offers this same inflated metric to

1  argue that ▮ might cost ▮ to preserve, when in fact Google
2  knows perfectly well that storage costs would be orders-of-magnitude lower.
3      The true cost of preserving GAIA ▮ would in fact be ▮, based
4  on the only actual <u>evidence</u> in the record. Google represented last year that it would cost about ▮
5  ▮ to preserve the entirety of the much larger ▮ data sources for a year -- consisting of
6  ▮ up front plus another ▮ additional data each month, for a total of ▮
7  ▮ over one year. *See* Supp. Straite Decl., Ex. C. **These are Google's own figures**, presented
8  during a Court-authorized Rule 30(b)(6) deposition. And the math is clear: if ▮ of data
9  would cost ▮ to store for one year, ▮
10 ▮. Even if we accepted Google's "new"
11 storage volume estimate of ▮, GAIA ▮ would still cost ▮ to
12 preserve. And the even smaller Zwieback ▮ data source (at only ▮) could be
13 preserved for a ▮ using Google's own math in Exhibit C.
14     For sure, Plaintiffs' estimates above are just *estimates*, using the ▮ top-line figure
15 provided by Google in Exhibit C related to full annual preservation of the entirety of ▮
16 Plaintiffs specifically attempted to get Google to clarify how this ▮ figure was calculated,
17 even showing the ▮ figure to the very 30(b)(6) witness designated to testify about ▮.
18 Supp. Straite Decl., Ex. A (Harting Depo Tr. 15:6-15) ("Google's retention practices and protocols
19 relating to ▮" was an approved topic). But when asked for additional information about the
20 ▮ storage cost estimate for ▮ of ▮ data (▮ annually),
21 Google counsel objected to the question as "out of scope" and Dr. Harting testified that he did not
22 know in any event. *Id.* (Harting Depo. Tr. 140:5-141:18).
23     Plaintiffs therefore respectfully submit that Google's inflated storage *volume* figures in its
24 objections be rejected, and the original figures provided last month to the Special Master govern.
25 Plaintiffs also request that the Court estimate storage *costs* based on a proportional reduction of the
26 ▮ figure provided during 30(b)(6) testimony rather than give any credence to the wildly
27 inflated figures based on retail cloud storage pricing offered to small customers. Based on true
28 math, storage costs for GAIA ▮ are ▮ (and only ▮

1  for Zwieback ▓▓▓), which is proportional to the needs of this complex class action impacting
2  millions of Chrome users.
3       In the alternative, Google's late disclosures regarding Gaia ▓▓▓ and how it comingles
4  Gaia and Zwieback identifiers in the same data source eviscerates Google's defense that there is
5  any real distinction between signed-in versus signed-out data. If the Court declines to order
6  preservation of these ▓▓▓▓▓▓▓, Plaintiffs respectfully request an order striking
7  Google's purported defense that Zwieback-keyed data is not personally identifiable and prohibiting
8  Google from arguing that any class member's signed-out data was not comingled with their signed-
9  in data.

10  **III.   RESPONSE TO GOOGLE'S OBJECTION 2:**

11       Google's second objection is a variant of its first: Google does not want to preserve a one-
12  time snapshot of Zwieback ▓▓▓, ostensibly on relevance grounds. This objection should also
13  be rejected. As noted above, Zwieback ▓▓▓ (unlike it larger cousin GAIA ▓▓▓) is a very
14  small data source, consisting of only ▓▓▓▓▓, with a compressed daily average of new data
15  of ▓▓▓▓▓▓▓▓. See Supp. Straite Decl. Ex. B. Google assumes, using fanciful
16  figures, that full preservation would cost ▓▓▓▓▓▓, but of course this is a figure based on
17  Google's fake math using retail prices it charges for cloud storage. Using instead Google's more
18  genuine ▓▓▓▓ estimate to preserve ▓▓▓▓▓ of data in ▓▓▓▓, id. Ex. C, it would
19  ▓▓▓▓▓▓▓▓▓▓▓▓▓ to store a one-time snapshot of Zwieback ▓▓▓. Google
20  likely will spend more money in attorney time opposing this request than just preserving the data.
21       Just like with GAIA ▓▓▓, Plaintiffs recently received test account data from Zwieback
22  ▓▓▓ that confirmed its importance. Zwieback ▓▓▓ contains columns where Gaia, Zwieback,
23  street addresses, phone numbers, precise geo-location, and sync signals are co-mingled. Plaintiffs
24  provided summaries of this data to the Special Master, which informed his decision to include full
25  preservation of a one-time snapshot of the data source in addition to ongoing preservation of certain
26  fields – *Zwieback* ▓▓▓ *is that important to the case.* And at only ▓▓▓▓▓▓▓ in size,
27  there is no undue burden associated with full preservation.
28

### IV. RESPONSE TO GOOGLE'S REQUEST FOR CLARIFICATION:

Plaintiffs may agree to Google's proposed modification regarding preservation of sensitive rotating encryption keys on condition that Google's representations are accurate – assuming that Google will *fully explain*, in writing in advance of the June 30 hearing, its proposal for doing so in a privacy-preserving manner.

Dated: June 15, 2022

| | |
|---|---|
| **BLEICHMAR FONTI & AULD LLP**<br><br>By:   */s/ Lesley E. Weaver*<br>Lesley E. Weaver (Cal. Bar No. 191305)<br>Angelica M. Ornelas (Cal. Bar No. 285929)<br>Joshua D. Samra (Cal. Bar No. 313050)<br>555 12th Street, Suite 1600<br>Oakland, CA 94607<br>Tel.: (415) 445-4003<br>Fax: (415) 445-4020<br>*lweaver@bfalaw.com*<br>*aornelas@bfalaw.com*<br>*jsamra@bfalaw.com*<br><br>**SIMMONS HANLY CONROY LLC**<br><br>By:   */s/ Jay Barnes*<br>Jason 'Jay' Barnes (admitted *pro hac vice*)<br>An Truong (admitted *pro hac vice*)<br>112 Madison Avenue, 7th Floor<br>New York, NY 10016<br>Tel.: (212) 784-6400<br>Fax: (212) 213-5949<br>*jaybarnes@simmonsfirm.com*<br>*atruong@simmonsfirm.com*<br><br>*Counsel for Plaintiffs* | **DICELLO LEVITT GUTZLER LLC**<br><br>By:   */s/ David A. Straite*<br>David A. Straite (admitted *pro hac vice*)<br>Corban Rhodes (admitted *pro hac vice*)<br>One Grand Central Place<br>60 E. 42nd St., Suite 2400<br>New York, NY 10165 Telephone:<br>(646) 933-1000<br>*dstraite@dicellolevitt.com*<br>*crhodes@dicellolevitt.com*<br><br>Amy E. Keller (admitted *pro hac vice*)<br>Adam Prom (admitted *pro hac vice*)<br>Sharon Cruz (admitted *pro hac vice*)<br>Ten North Dearborn Street, 6th Fl.<br>Chicago, Illinois 60602<br>Tel.: (312) 214-7900<br>*akeller@dicellolevitt.com*<br>*aprom@dicellolevitt.com*<br>*scruz@dicellolevitt.com* |

**ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1(i)(3)**

I, David Straite, attest that concurrence in the filing of this document has been obtained from the other signatories. I declare under penalty of perjury that the foregoing is true and correct. Executed this 15th Day of June, 2022, at Marbletown, New York.

*/s/ David Straite*
David Straite

**CERTIFICATE OF SERVICE**

I hereby certify that on June 15, 2022, I caused to be electronically filed the foregoing document using the CM/ECF system, which will send notification of such filing to all counsel of record registered in the CM/ECF system. I also caused unredacted versions of all sealed documents to be sent to counsel for defendant Google.

*/s/ David Straite*
David Straite