# DECLARATION OF LESLEY E. WEAVER IN SUPPORT OF PLAINTIFFS' BRIEF RE: TARGETED USE OF CALHOUN DISCOVERY IN IN RE GOOGLE RTB CONSUMER PRIVACY LITIGATION, PURSUANT TO DKT. 683

**Redacted Version of Document Sought to be Sealed**

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION**

| | |
|---|---|
| PATRICK CALHOUN, *et al.*, *on behalf of themselves and all others similarly situated*,<br><br>Plaintiffs,<br><br>v.<br><br>GOOGLE LLC,<br><br>Defendant. | Case No. 4:20-cv-05146-YGR-SVK<br><br>**DECLARATION OF LESLEY E. WEAVER IN SUPPORT OF PLAINTIFFS' BRIEF RE: TARGETED USE OF *CALHOUN* DISCOVERY IN *IN RE GOOGLE RTB CONSUMER PRIVACY LITIGATION*, PURSUANT TO DKT. 683**<br><br>Hon. Yvonne Gonzalez Rogers |

**UNREDACTED VERSION OF DOCUMENT FILED UNDER SEAL**

## DECLARATION OF LESLEY E. WEAVER

I, Lesley E. Weaver, declare under penalty of perjury:

1. I am an attorney licensed in the State of California and admitted to the United States District Court for the Northern District of California. I am also the Partner-in-Charge of the California office of Bleichmar Fonti & Auld LLP, and chair of its consumer and antitrust litigation practice. I am co-counsel for Plaintiffs in *Calhoun, et al. v. Google LLC*, No. 4:20-cv-05146-YGR-SVK, and in the related case *In re Google RTB Consumer Privacy Litigation*, No. 4:21-cv-02155-YGR-VKD.

2. I submit this declaration in support of Plaintiffs' Brief Re: Targeted Use of *Calhoun* Discovery in *In re Google RTB Consumer Privacy Litigation*, Pursuant to Dkt. 683. I have personal knowledge of the facts set forth herein and, if called as a witness, could and would testify competently to them.

3. A significant amount of discovery taken in *Calhoun* is directly relevant to core claims and defenses in this case. Running even a limited set of targeted search terms relevant to these categories of documents in the *Calhoun* documents, such as "auction," "verticals," "sell your data," "bid request," and other terms hit upon more than 250,000 documents, five times the number of documents Google has produced in this action to date. More than one million documents have been produced in discovery in *Calhoun*. Even so, Plaintiffs are not seeking permission to use all discovery in *Calhoun*, but rather are focused on four categories of information: data flow; personal information; consent; and damages.

4. As laid out in Plaintiffs' brief, discovery from *Calhoun* is relevant to key issues in *RTB*, including data flows that determine the what, where, and how information is sent through RTB, including determination of whether Google's collection, use, and storage of information renders Personal Information under the law; Google's defenses, including consent; and, Plaintiffs' damages. In addition, the limited use of *Calhoun* discovery in *RTB* will afford greater transparency, and thus efficiency, in the discovery process, including streamlining meet and confers and allowing Plaintiffs to correct misinformation.

|   |   |
|---|---|
| 1 | 5.   In support of this motion, Plaintiffs provide below a few sample documents for the |
| 2 | Court's review, but it is by no means an exhaustive list. Attached hereto are true and correct copies |
| 3 | of the following documents: |

    a. **Exhibit A** (GOOG-CABR-00892126 – GOOG-CABR-00892140) is a document produced in *Calhoun* entitled the "RTB Privacy – DRX Review." The below excerpt (at Bates ending -128) provides a clear depiction of the relevance of the data flow – and privacy risks – of RTB:



    b. **Exhibit B** (GOOG-CALH-00030221 – GOOG-CALH-00030310) is a document entitled "Life of a GPT Ad Request," which discusses the technical details of how data flow is relevant to the manner in which information is processed, configured and distributed through RTB. For example, starting at page 46 of the document (at Bates ending -266), Google begins to explain how it processes information for an ad request from start to finish.

    c. **Exhibit C** (GOOG-CABR-00893711 – GOOG-CABR-00893719) is a document entitled "Field Guide to Display Ads." Display Ads oversees Google RTB, and this "Field Guide" includes an explanation as to how ad auctions work.

    d. **Exhibit D** (GOOG-CABR-05885871 – GOOG-CABR-058885942) shows that

high-level Google employees universally reject the consent arguments that Google makes in *Calhoun* and *RTB*.

e. **Exhibit E** (GOOG-CALH-00030521 – GOOG-CALH-00030533) shows that in



f. **Exhibit F** (GOOG-CABR-00111820 – GOOG-CABR-00111827) shows that the lead engineer for the Chrome browser admitted that the key promise in *Google RTB* – that "Google does not sell your personal information to anyone" – is not true. The lead engineer explains that Google engages in numerous activities "that sounds like selling data to many people" and this is "hard to reconcile" with the core *Google RTB* promise. *Id.* at -822.

g. **Exhibit G** (GOOG-CALH-00043330 – GOOG-CALH-00043475) shows that a Google 30(b)(6) corporate designee admitted that "[i]f you're browsing the web, then even if you know where you are … you probably don't know all the third parties involved – and it's unreasonable to expect you to." *Id.* at -379. The corporate designee further noted, "it shouldn't matter. People should be able to browse the web without worrying that someone is collecting a dossier on them for doing so[.]" *Id.* at -381. This admission by a corporate designee – is directly relevant to the consent defenses in *RTB*.

h. **Exhibit H** (GOOG-CABR-05404180) is an example of one of the many studies conducted and/or reviewed by Google, which analyze user expectations and understanding of Google's data practices, including targeted advertising, as well as analyzing user expectations and understanding regarding Google's privacy disclosures, user interfaces, and consent flows. Other discovery reveals that prior

to any public statement, Google internally vets all aspects of Privacy Sandbox—projects, studies, and analysis—to ensure that Google continues to maintain an advantage in digital advertising. The public Privacy Sandbox initiative was intended to explore eliminating the use of third-party cookies because of public outcry against tracking of users to target users. Third-party cookies facilitate targeted advertising, including targeted advertising through RTB.

6. Plaintiffs further identify the following excerpts from depositions conducted in *Calhoun*. This is also just a sample. More than twenty depositions were taken in *Calhoun*, and Plaintiffs believe the majority of them contain at least some testimony relevant to *RTB*.

   a. **Exhibit I** is a true and correct copy of excerpts from the deposition of Google corporate designee Curt Harting, conducted, pursuant to Federal Rule of Civil Procedure 30(b)(6), on August 4, 2021.

   b. **Exhibit J** is a true and correct copy of excerpts from the deposition of Google employee, Sam Heft-Luthy, conducted, pursuant to Federal Rule of Civil Procedure 30(b)(1), on December 20, 2021.[1]

   c. **Exhibit K** is a true and correct copy of excerpts from the deposition of Google employee Deepak Ravichandran, conducted, pursuant to Federal Rule of Civil Procedure 30(b)(1), on January 7, 2022.

   d. **Exhibit L** is a true and correct copy of excerpts from the deposition of Google employee Hyewon Jun, conducted, pursuant to Federal Rule of Civil Procedure 30(b)(1), on March 1, 2022.

   e. **Exhibit M** is a true and correct copy of excerpts from the deposition of Google corporate designee Michael Kleber, conducted, pursuant to Federal Rule of Civil Procedure 30(b)(6), on April 13, 2022.

   f. **Exhibit N** is a true and correct copy of excerpts from the deposition of

---

[1] Plaintiffs only learned of the ▮▮▮▮▮ interviews when Mr. Heft-Luthy disclosed this information. After his deposition, it took months and a motion to compel to obtain the relevant discovery.

WEAVER DECL. ISO
BRIEF RE: TARGETED USE OF *CALHOUN* DISCO.   4         CASE NO. 4:20-CV-05146-YGR-SVK

1  Google corporate designee Glenn Berntson, conducted, pursuant to Federal
2  Rule of Civil Procedure 30(b)(6), on April 14, 2022.
3     g. **Exhibit O** is a true and correct copy of excerpts from the deposition of
4  Google employee Gregory Fair, conducted, pursuant to Federal Rule of Civil
5  Procedure 30(b)(1), on December 14, 2021.

6  7. *Calhoun* discovery obtained through the Special Master process – regarding logs that contain information related to *Calhoun* Named Plaintiffs – is also relevant to issues in *RTB* because it is a roadmap for how to efficiently identify and produce the Named Plaintiffs' data in *RTB*. With the benefit of the knowledge of how Google's logs are structured, Plaintiffs have a much clearer idea of what Plaintiffs will need and how Google's systems function.

11  8. The *Calhoun* Special Master process has spanned over a year and, despite the close of fact discovery three months ago, is ongoing. The time and expense of this process need not be imposed in this case if the parties can benefit from the outcomes of that process.

14  9. Plaintiffs are also able to identify other logs they seek with the benefit of knowledge from the discovery in *Calhoun*. For example, information collected from *Calhoun* Named Plaintiffs and stored in Google's ▓▓▓▓▓▓▓▓▓▓ log was produced in *Calhoun*. As explained in the accompanying declaration of Prof. Zubair Shafiq, this log (and others) ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓.

19  10. Google has not disclosed any of these logs in *RTB*. Google has yet to produce *any* Named Plaintiff information in *RTB*, claiming, in an April 4, 2022 letter, that "Google needs particular pseudonymous identifiers to search for data associated with devices and browsers allegedly used by the named Plaintiffs in the ▓▓▓▓▓▓ logs." Should Plaintiffs be permitted to reference the *Calhoun* information, then the Parties may shortcut delays and motions practice to get straight to the heart of the matter.

25  11. The limited use of *Calhoun* discovery in *RTB* will afford greater transparency, and thus efficiency, in the discovery process. For example, throughout *RTB* discovery, Plaintiffs have been constrained in their ability to challenge certain representations made by Google. Rather, the

WEAVER DECL. ISO
BRIEF RE: TARGETED USE OF *CALHOUN* DISCO.    5    CASE NO. 4:20-CV-05146-YGR-SVK

inability to use acquired information has impeded discovery.

    a. During an October 5, 2021 meet and confer regarding identification of ESI databases, Plaintiffs raised potential overlap of discovery from *Calhoun* regarding log preservation. Counsel for Google was quick to stymie this discussion based on the *Calhoun* protective order. Thus the parties were unable to confer about specific logs that are directly relevant in this case.

    b. During a January 7, 2022 meet and confer regarding search terms and custodians, Google maintained that Plaintiffs could not utilize *any* information from *Calhoun* in furtherance of these negotiations and questioned every source of evidence Plaintiffs proffered in support of their position. While Plaintiffs' proposed search terms and custodians stemmed from public sources and the limited *RTB* production, *Calhoun* discovery could have provided additional and more robust support for Plaintiffs' proposals.

    c. On January 12, 2022, Plaintiffs requested that Google share the search terms from *Calhoun*, which would have greatly advanced the parties' discussions. Google refused. And yet, during subsequent meet and confers it became apparent that Google was accessing *Calhoun* information to its advantage. For example, during a November 21, 2021 hearing, counsel for Google used search terms from *Calhoun* to argue against Plaintiffs' request for hit counts under the proposed ESI Protocol in *RTB*. Specifically, counsel for Google stated that examples from *Calhoun* would show why hit counts would be problematic in *RTB*, and referenced "the original set of search terms [from *Calhoun*] included words like priv*, and monitor*, and sync*[.]" *RTB* Nov. 2, 2021 Hrg. Tr. at 57:4-6. Plaintiffs could not challenge this assertion because the non-*Calhoun* attorneys were denied access to the underlying negotiations and context for the *Calhoun* search terms, even though this knowledge was in the possession of, and readily available to, the Plaintiff *Calhoun* attorneys on the team, who were

1    barred from disclosing it. Further, Google's anticipated argument that some of
2    these search terms were publicly available creates another obstacle, as Plaintiffs
3    are required to check every search term or document to see if it was filed
4    publicly in another case before using it in this one.

5    d. During a January 19, 2022 meet and confer on search terms, counsel for
6    Google, again, questioned the source of any Plaintiff proposed search term,
7    signaling its intent to take action should it perceive a violation of the *Calhoun*
8    protective order. For example, Plaintiffs were foreclosed from discussing the
9    relevance of so-called "Zwieback" identifiers, and the relationship between
10   ▓▓▓▓▓▓▓▓▓ (a term Google had agreed to) and ▓▓▓▓▓▓▓▓▓ (a term
11   Google was then challenging). Due to the prohibition on use of *Calhoun*
12   discovery, the parties were forced to engage in weeks of meet and confers, and
13   ultimately seek court intervention (*see RTB* Dkt. Nos. 157, 176, 188). Had
14   Plaintiffs been able to use *Calhoun* information, many of these disputes may
15   have been resolved at the outset.

16   12.   Similarly, Plaintiffs were unable to refute Google's claims of "irrelevance" with
17   known discovery in *Calhoun*.

18   a. During a March 8, 2022 discovery hearing in *RTB*, Plaintiffs attempted to
19   explain the significance of certain messages that Google sent to users seeking
20   to obtain consent for data collection (so called "WAA" and "SWA"). Google
21   counsel interrupted out of concern over the source of the information. *RTB* Mar.
22   8, 2022 Hr'g Tr. at 34:12-35:2.

23   b. At the same hearing, Plaintiffs attempted to offer a factual basis to support the
24   addition of Hyewon Jun as an ESI custodian, Google counsel cut in to say, "Ms.
25   Weaver, I hope you're not – I mean you're under a protective order in another
26   matter, and I feel like you're about to start talking about – and using material
27   from another matter." *Id.* at 34:11-25. The Court ended the discussion and did

28

|   |   |
|---|---|
| 1 | not allow the addition of Ms. Jun as a custodian. In fact, contrary to Google's |
| 2 | claim that Ms. Jun did not possess information relevant to this case, during Ms. |
| 3 | Jun's deposition, she described the RTB process, including how Google |
| 4 | determines when user identifiers are shared on RTB, and in what manner, *see* |
| 5 | Ex. L (Jun Dep. Tr. at 115:25-118:16, 118:23-119:6), and further discussed how |
| 6 | various publisher-side identifiers, PPIDs, can change the manner in which an |
| 7 | ad request is ultimately configured and served to a user. *Id.* at 14:10-17:6. These |
| 8 | are just examples of the kind of helpful testimony Ms. Jun provided. Allowing |
| 9 | use of the transcript and documents relating to her will help cure the prejudice |
| 10 | that Google's position imposed on Plaintiffs. |

13. Google's continued objection to the use of *Calhoun* information has also prevented Plaintiffs from developing the record for class certification, summary judgment, and trial in *RTB*. For example, during a May 20, 2022 meet and confer on damages discovery, Google argued that many of Plaintiffs' proposed sources for damages discovery, for example, Screenwise, was not relevant. Plaintiffs were unable to point to discovery in *Calhoun* which undermined many of Google's challenges.

14. Likewise, the inability to rely on relevant information obtained in *Calhoun* means that Google can perpetuate misleading representations and positions that serve to obscure and delay production of responsive and relevant information. For example:

   a. *RTB* Plaintiffs have requested the production of company organizational charts (*see RTB* Plaintiffs' RFP No. 19), and during meet and confers Google has asserted that it does not maintain this information. This same assertion was made – and found to be false – in *Calhoun*. In *Calhoun*, Plaintiffs were forced to take Google's representation at face value but, after over a year of discovery, learned that Google in fact maintained "team directories" that contained pictures, email addresses and supervision chain of each employee. Ex. J (Heft-Luthy Dep. Tr. at 58:20-59:10); Ex. O (Fair Dep. I Tr. at 137:3-138:11). This same information

would be instrumental in challenging Google's representations in *RTB*, but to date Plaintiffs have been unable to do so.

  b. At the outset of this case, Plaintiffs argued that the relevant discovery period should begin from January 2014, while Google argued that it should commence on March 26, 2016. Google represented that discovery prior to 2016 was not proportional. But the RTB auction was in operation prior to 2016 and Calhoun discovery reveals that Google began developing RTB as far back as 2014 and was, at that point, considering the "privacy risks" in running RTB. *See* Ex. A, GOOG-CABR-00892126. Those risks included "data leakage" in the auction.

15. The silo-ing of *Calhoun* discovery is increasing the burden, expense, and complexity of the RTB litigation in other ways, such as disproportionate discovery demands on the plaintiffs. For example, Google requested that the *RTB* Plaintiffs produce their browsing histories, device and account settings, and advertisements they had seen. *See*, *e.g.*, *RTB* Dkt. Nos. 142, 172. Plaintiffs' objected on relevance and burden grounds, also stating, on information and belief, that Google itself already possessed the information it sought from Plaintiffs. *See, e.g., id.* Google prevailed on the issue. *See RTB* Dkt. Nos. 185, 190. As a result, Plaintiffs have engaged in a device preservation and production protocol that is expensive, time consuming, and greatly intrudes upon each Named Plaintiffs' privacy.

\*\*\*

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed this 8th day of June, 2022, at Oakland, California.

/s/ *Lesley E. Weaver*
Lesley E. Weaver

**CERTIFICATE OF SERVICE**

I, Lesley E. Weaver, hereby certify that on June 8, 2022, I electronically filed the foregoing document with the Clerk of the United States District Court for the Northern District of California using the CM/ECF system, which will send electronic notification to all counsel of record. I also caused a copy of the under seal filings to be provided to counsel for Defendant via electronic mail.

Dated: June 8, 2022                                 */s/ Lesley E. Weaver*
                                                    Lesley E. Weaver