# EXHIBIT J
# Redacted Version of Document Sought to be Sealed

```
 1                UNITED STATES DISTRICT COURT
 2               NORTHERN DISTRICT OF CALIFORNIA
 3                      SAN JOSE DIVISION
 4
 5   PATRICK CALHOUN, ET AL., ON
 6   BEHALF OF THEMSELVES AND ALL
 7   OTHERS SIMILARLY SITUATED,
 8          PLAINTIFFS,
 9       vs.                          NO. 5:20-CV-05146-LHK-SVK
10   GOOGLE LLC,
11          DEFENDANT.
12   _____/
13
14                       *CONFIDENTIAL*
15         VIDEOTAPED DEPOSITION OF SAM HEFT-LUTHY
16          *VIA REMOTE COUNSEL VIDEOCONFERENCE*
17              MONDAY, DECEMBER 20, 2021
18                        VOLUME I
19
20
21
22   STENOGRAPHICALLY REPORTED BY:
23   MEGAN F. ALVAREZ, RPR, CSR No. 12470
24   JOB NO. 4974193
25   PAGES 1 - 331
```

Page 1

CONFIDENTIAL

```
 1              UNITED STATES DISTRICT COURT
 2             NORTHERN DISTRICT OF CALIFORNIA
 3                    SAN JOSE DIVISION
 4
 5    PATRICK CALHOUN, ET AL., ON
 6    BEHALF OF THEMSELVES AND ALL
 7    OTHERS SIMILARLY SITUATED,
 8          PLAINTIFFS,
 9       vs.                        NO. 5:20-CV-05146-LHK-SVK
10    GOOGLE LLC,
11          DEFENDANT.
12    _____/
13
14
15
16         Videotaped Videoconference Deposition of
17    SAM HEFT-LUTHY, Volume I, taken on behalf of Plaintiffs,
18    VIA REMOTE COUNSEL.  Deponent testifying from
19    San Francisco, California, beginning at 9:06 a.m. and
20    ending at 6:35 p.m. on Monday, December 20, 2021, before
21    Megan F. Alvarez, RPR, Certified Shorthand Reporter
22    No. 12470.
23
24
25
                                                    Page 2
```

```
 1   APPEARANCES: (ALL PARTIES APPEARING VIA VIDEOCONFERENCE)
 2
 3   FOR PLAINTIFFS:
 4              BY:  JASON "JAY" BARNES, ESQ.
 5                   AN V. TRUONG, ESQ.
 6              SIMMONS HANLY CONROY
 7              ONE COURT STREET
 8              ALTON, ILLINOIS 62002
 9              618.693.3104
10              JAYBARNES@SIMMONSFIRM.COM
11   AND
12              BY:  LESLEY WEAVER, ESQ.
13              BLEICHMAR FONTI & AULD LLP
14              555 12TH STREET, SUITE 1600
15              OAKLAND, CALIFORNIA 94607
16              415.445.4003
17              LWEAVER@BFALAW.COM
18   AND
19              BY:  DAVID A. STRAITE, ESQ.
20              DICELLO LEVITT GUTZLER
21              ONE GRAND CENTRAL PLACE
22              60 EAST 42ND STREET, SUITE 2400
23              NEW YORK, NEW YORK 10165
24              646.933.1000
25              DSTRAITE@DICELLOLEVITT.COM
```

CONFIDENTIAL

```
 1   APPEARANCES:  (CONTINUED)
 2
 3   FOR DEFENDANTS:
 4            BY:  CARL SPILLY, ESQ.
 5                 JOMAIRE CRAWFORD, ESQ.
 6            QUINN EMANUEL URQUHART & SULLIVAN LLP
 7            51 MADISON AVENUE, 22ND FLOOR
 8            NEW YORK, NEW YORK 10010
 9            212.849.7000
10            JOMAIRECRAWFORD@QUINNEMANUEL.COM
11            CARLSPILLY@QUINNEMANUEL.COM
12
13   ALSO PRESENT:
14            TONI BAKER, GOOGLE IN-HOUSE COUNSEL
15
16   THE VIDEO OPERATOR:
17            DAVID WEST, VERITEXT
18
19
20
21
22
23
24
25
```

Page 4

CONFIDENTIAL

```
 1                        INDEX
 2   WITNESS                               EXAMINATION
 3   SAM HEFT-LUTHY
 4   VOLUME I
 5        BY MR. BARNES                         21
 6
 7                       --o0o--
```

Veritext Legal Solutions
866 299-5127

| | | |
|---|---|---|
| 1 | for strategic position work? | 10:00:21 |
| 2 |     A.   This was Rahul Roy-Chowdhury. | 10:00:25 |
| 3 |     Q.   And where is he on the organization chart? | 10:00:29 |
| 4 |     MR. SPILLY:  Object to form. | 10:00:39 |
| 5 |     THE WITNESS:  At the time he was, I | 10:00:43 |
| 6 | believe, a vice president at Google. And he's no | 10:00:43 |
| 7 | longer employed by Google. | 10:00:48 |
| 8 | BY MR. BARNES: | 10:00:49 |
| 9 |     Q.   Do you know where he is now? | 10:00:50 |
| 10 |     A.   I do not. | 10:00:54 |
| 11 |     Q.   Is there a company directory where you can | 10:00:55 |
| 12 | look up who works where? | 10:01:01 |
| 13 |     MR. SPILLY:  Object to the form. | 10:01:03 |
| 14 |     THE WITNESS:  When you say "works where," | 10:01:07 |
| 15 | in terms of role responsibility? What -- what -- | 10:01:09 |
| 16 | what do you mean by "where"? | 10:01:12 |
| 17 | BY MR. BARNES: | 10:01:14 |
| 18 |     Q.   Correct. You just stated, role | 10:01:14 |
| 19 | responsibility. | 10:01:17 |
| 20 |     ==A.==   ==There is an internal directory that Google== | ==10:01:20== |
| 21 | ==employees are able to use that provides, depending== | ==10:01:24== |
| 22 | ==on the individual employee, different levels of== | ==10:01:28== |
| 23 | ==information, including their responsibility, yes.== | ==10:01:31== |
| 24 |     ==Q.==   ==Would it include who they report to?== | ==10:01:36== |
| 25 |     ==MR. SPILLY:  Object to the form.== | ==10:01:41== |

| | | |
|---|---|---|
| 1 | THE WITNESS: I can't speak to in all | 10:01:47 |
| 2 | cases given that I don't know the full | 10:01:50 |
| 3 | implementation, but in many cases it does provide | 10:01:52 |
| 4 | notice of -- of who a given person's direct manager | 10:01:56 |
| 5 | is, yes. | 10:02:00 |
| 6 | BY MR. BARNES: | 10:02:00 |
| 7 | Q.   And then vice versa, there are certainly | 10:02:01 |
| 8 | situations where it shows who reports to the person | 10:02:04 |
| 9 | in question, correct? | 10:02:09 |
| 10 | A.   That's correct, yes. | 10:02:14 |
| 11 | Q.   Okay.  Do you have Exhibit 2, | 10:02:15 |
| 12 | Mr. Heft-Luthy? | 10:02:17 |
| 13 | A.   Exhibit 2 is the one we're showing here, | 10:02:27 |
| 14 | right? | 10:02:29 |
| 15 | Q.   Right.  Correct. | 10:02:29 |
| 16 | A.   Yes, I have it up. | 10:02:30 |
| 17 | Q.   Okay.  You see in the first sentence where | 10:02:32 |
| 18 | it says:  "This workstream aims to define an | 10:02:33 |
| 19 | overarching vision and strategy for PDPO to inform | 10:02:37 |
| 20 | the Google privacy experience"? | 10:02:41 |
| 21 | Why is Google coming up with an | 10:02:45 |
| 22 | overarching vision and strategy for this | 10:02:48 |
| 23 | ███████████ project? | 10:02:51 |
| 24 | A.   Why -- why is Google coming up with a | 10:02:52 |
| 25 | strategy in general or why specifically this | 10:03:01 |

Page 59

```
 1   BY MR. BARNES:                                          10:54:56
 2        Q.   Was the concept of ████████ presented         10:54:56
 3   to Mr. Pichai?                                          10:54:58
 4             MR. SPILLY:  Objection.  Vague.               10:55:04
 5             THE WITNESS:  I don't know the answer to      10:55:11
 6   that question.                                          10:55:13
 7   BY MR. BARNES:                                          10:55:14
 8        Q.   Who would know the answer to that             10:55:14
 9   question, Mr. Heft-Luthy?                               10:55:16
10             MR. SPILLY:  Objection.  Calls for            10:55:20
11   speculation.                                            10:55:20
12             THE WITNESS:  I wouldn't be able to           10:55:27
13   speculate with certainty on that.                       10:55:29
14   BY MR. BARNES:                                          10:55:31
15        Q.   Okay.  If we could go to page 26, which       10:55:31
16   the Bates number is -- ends in 282, please.             10:55:34
17        A.   Okay.  I have it.                             10:56:10
18        Q.   Do you see it says:  "Our research            10:56:12
19   inputs"?                                                10:56:13
20        A.   Yes.                                          10:56:19
21        Q.   Why did you interview people for              10:56:19
22   ████████?                                               10:56:24
23             MR. SPILLY:  Objection.  Foundation.          10:56:25
24             THE WITNESS:  Can -- can you be more          10:56:33
25   specific about what aspect of why you're looking to     10:56:35
```

```
 1   get into here?                                              10:56:38
 2   BY MR. BARNES:                                              10:56:39
 3       Q.   Did you conduct interviews for                     10:56:39
 4   ▉▉▉▉▉▉▉▉▉?                                                  10:56:42
 5       A.   Yes.                                               10:56:48
 6       Q.   Did you personally conduct those                   10:56:49
 7   interviews?                                                 10:56:51
 8       A.   Some of them, yes.                                 10:56:56
 9       Q.   Who else conducted the interviews?                 10:56:58
10       A.   I know that Kalle conducted at least some          10:57:07
11   of them. I can't speculate further.                         10:57:12
12       Q.   How many total were conducted?                     10:57:15
13       A.   I don't recall.                                    10:57:21
14       Q.   Approximately how many were conducted?             10:57:24
15       A.   I wouldn't be able to speculate with a             10:57:31
16   level of certainty that I'm comfortable putting on          10:57:33
17   the record here.                                            10:57:35
18            I can say confidently no more than 30 were         10:57:38
19   conducted.                                                  10:57:42
20       Q.   There are nine listed on the screen,               10:57:44
21   correct?                                                    10:57:46
22       A.   That's correct.                                    10:57:50
23       Q.   So somewhere between nine and 30                   10:57:51
24   interviews were conducted; is that correct?                 10:57:53
25       A.   That's correct.                                    10:58:03
```

Page 89

| | | |
|---|---|---|
| 1 | Q. How many of those do you estimate that you | 10:58:04 |
| 2 | conducted? | 10:58:07 |
| 3 | A. I don't recall. | 10:58:15 |
| 4 | MR. SPILLY: Objection. Speculation. | 10:58:16 |
| 5 | BY MR. BARNES: | 10:58:16 |
| 6 | Q. Were these interviews recorded? | 10:58:17 |
| 7 | A. I don't recall. | 10:58:22 |
| 8 | Q. You were in the interview, correct? | 10:58:28 |
| 9 | MR. SPILLY: Objection. Foundation. | 10:58:31 |
| 10 | THE WITNESS: Which interview were you | 10:58:36 |
| 11 | referring to? | 10:58:37 |
| 12 | BY MR. BARNES: | 10:58:38 |
| 13 | Q. You were in some of these interviews, | 10:58:38 |
| 14 | correct? | 10:58:40 |
| 15 | A. Yes. | 10:58:47 |
| 16 | Q. Did you take notes on the interviews that | 10:58:47 |
| 17 | you conducted? | 10:58:49 |
| 18 | A. I don't recall specifically who took notes | 10:58:58 |
| 19 | on interviews that we conducted. | 10:59:01 |
| 20 | Q. Were there other people in the room when | 10:59:03 |
| 21 | you conducted these interviews? | 10:59:05 |
| 22 | MR. SPILLY: Object to the form. | 10:59:10 |
| 23 | THE WITNESS: With the caveat that these | 10:59:16 |
| 24 | were all remote interviews, there were, if I recall, | 10:59:18 |
| 25 | people -- multiple people from our team on each of | 10:59:20 |

```
 1    these interviews, yes.                                    10:59:26
 2    BY MR. BARNES:                                            10:59:27
 3         Q.   Did someone take notes during the               10:59:27
 4    interviews for your team?                                 10:59:29
 5         A.   Yes.                                            10:59:41
 6         Q.   Were those notes shared amongst your team?      10:59:41
 7         A.   Yes.                                            10:59:45
 8         Q.   What was the platform you used to do the        10:59:46
 9    interviews?                                               10:59:49
10              MR. SPILLY:  Objection.  Vague.                 11:00:01
11              THE WITNESS:  To -- to conduct them             11:00:02
12    specifically?  What do you mean by "to do"?               11:00:03
13    BY MR. BARNES:                                            11:00:05
14         Q.   To conduct them.                                11:00:05
15              MR. SPILLY:  Objection.  Still vague.           11:00:10
16    BY MR. BARNES:                                            11:00:17
17         Q.   Did you use Google Meet?  Mr. Heft-Luthy,       11:00:17
18    did you use Google Meet?                                  11:00:19
19         A.   Yes.                                            11:00:24
20         Q.   Did you -- were some of the interviews          11:00:26
21    recorded?                                                 11:00:29
22         A.   I don't recall.                                 11:00:36
23         Q.   Were there transcripts of the interviews?       11:00:38
24              MR. SPILLY:  Object to the form.                11:00:50
25              THE WITNESS:  Do you mean in distinction        11:00:57
```

```
 1   from the notes of the interviews?                      11:00:59
 2   BY MR. BARNES:                                         11:01:01
 3       Q.   Correct, in distinction from the notes.       11:01:01
 4       A.   I don't recall any transcript separate        11:01:16
 5   from notes taken.                                      11:01:17
 6       Q.   Was Mr. Pichai interviewed?                   11:01:19
 7            MR. SPILLY:  Objection to the form.           11:01:31
 8            THE WITNESS:  Was Mr. Pichai interviewed      11:01:35
 9   as part of this project you're asking?                 11:01:38
10   BY MR. BARNES:                                         11:01:40
11       Q.   Correct.                                      11:01:40
12       A.   Not to my recollection.                       11:01:46
13       Q.   Mr. Heft-Luthy, why did it take so long to    11:01:48
14   answer that question?                                  11:01:50
15            MR. SPILLY:  Objection.                       11:01:53
16            THE WITNESS:  I would like to make sure       11:02:00
17   that my answers to questions are accurate given that   11:02:02
18   I've been sworn in under penalty of perjury.           11:02:06
19   BY MR. BARNES:                                         11:02:09
20       Q.   That's fair.                                  11:02:10
21            Is there -- at the -- at any point in the    11:02:11
22   project was a list compiled of everyone who was        11:02:15
23   interviewed?                                           11:02:19
24       A.   Yes.                                          11:02:27
25       Q.   Who has that list?                            11:02:31
```

```
1        A.   I can't say with certainty who would have       11:02:39
2    access to it.                                            11:02:42
3        Q.   Okay.  Who is -- I'm looking at the             11:02:43
4    stakeholder interview -- interviews -- Micah Laaker?     11:02:48
5    It says "Office of the CEO."                             11:02:57
6             Who is Micah Laaker?                            11:02:59
7        A.   Micah Laaker is a design director.  At          11:03:07
8    least he was a design director at the time of            11:03:09
9    this -- at the time of this project.                     11:03:12
10       Q.   Does he report to Mr. Pichai?                   11:03:16
11       A.   I can't speculate on that.                      11:03:24
12       Q.   What is Prinascrapa,                            11:03:33
13   P-R-I-N-A-S-C-R-A-P-A?                                   11:03:39
14       A.   I don't recall.                                 11:03:39
15       Q.   What's ▮▮▮▮▮▮?                                  11:04:01
16       A.   ▮▮▮▮▮▮▮. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮                     11:04:12
17   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮                 11:04:15
18   ▮▮▮▮                                                     11:04:17
19       Q.   How many of them are there?                     11:04:21
20            MR. SPILLY:  Object to the form.                11:04:23
21            THE WITNESS:  I wouldn't be able to             11:04:26
22   speculate on the number.                                 11:04:27
23   BY MR. BARNES:                                           11:04:27
24       Q.   Is it more than a hundred?                      11:04:28
25       A.   Like I said, I can't say with certainty.        11:04:36
```

Page 93

DocuSign Envelope ID: 319E70A9-90E0-421F-9301-318709565E9C
Case 4:20-cv-05146-YGR    Document 730-14    Filed 06/22/22    Page 15 of 17

CONFIDENTIAL

```
1      MR. BARNES:  Thank you, Mr. Spilly.  Your     18:34:59
2  objection to keeping the deposition open is noted.  18:35:01
3      MR. SPILLY:  Thank you.                        18:35:07
4      MR. BARNES:  Let's go off the record.          18:35:11
5      THE VIDEO OPERATOR:  Okay.  This will end      18:35:14
6  today's deposition of Sam Heft-Luthy.  The total   18:35:15
7  number of media units used in the deposition today 18:35:19
8  was 12 and will be retained by Veritext Legal      18:35:22
9  Solutions.  We are off the record at 6:35 p.m.     18:35:24
10 Pacific Time.  Thank you.                          18:35:27
11         (TIME NOTED: 6:35 p.m.)
12              * * * * *
```

Page 326

```
1           CERTIFICATE OF REPORTER
2       I, the undersigned, a Certified Shorthand
3  Reporter of the State of California, do hereby
4  certify:
5       That the foregoing proceedings were taken
6  before me at the time and place herein set forth;
7  that any witnesses in the foregoing proceedings,
8  prior to testifying, were administered an oath; that
9  a verbatim record of the proceedings was made by me
10 using machine shorthand, which was thereafter
11 transcribed under my direction; and that the
12 foregoing is an accurate transcription thereof.
13       Further, that if the foregoing pertains to
14 the original transcript of a deposition in a federal
15 case, before completion of the proceedings, review
16 of the transcript [ ] was [X] was not requested.
17       I further certify that I am neither
18 financially interested in the action, nor a relative
19 or employee of any attorney of any party to this
20 action.
21       IN WITNESS WHEREOF, I have this date
22 subscribed my name.
23 DATED: Dec_____ __, ____

                    [signature]

25          MEGAN F. ALVAREZ
            CSR No. 12470, RPR
```

Page 328

```
 6      I, SAM HEFT-LUTHY, do hereby declare
 7  under penalty of perjury that I have read the
 8  foregoing transcript; that I have made any
 9  corrections as appear noted, in ink, initialed by
10  me, or attached hereto; that my testimony as
11  contained herein, as corrected, is true and correct.

              DocuSigned by:
              [signature: Sam Heft-Luthy]
              -3C2A6612A5EF4C7...
              SAM HEFT-LUTHY
              1/26/2022
              _____
              DATE
              VOLUME I
```

Page 327

```
1  JASON "JAY" BARNES, ESQ.
2  jaybarnes@simmonsfirm.com
3                              December 30, 2021
4  RE: CALHOUN VS. GOOGLE LLC
5  DECEMBER 20, 2021, SAM HEFT-LUTHY, JOB NO. 4974193
6  The above-referenced transcript has been
7  completed by Veritext Legal Solutions and
8  review of the transcript is being handled as follows:
9  __ Per CA State Code (CCP 2025.520 (a)-(e)) – Contact Veritext
10    to schedule a time to review the original transcript at
11    a Veritext office.
12 __ Per CA State Code (CCP 2025.520 (a)-(e)) – Locked .PDF
13    Transcript - The witness should review the transcript and
14    make any necessary corrections on the errata pages included
15    below, noting the page and line number of the corrections.
16    The witness should then sign and date the errata and penalty
17    of perjury pages and return the completed pages to all
18    appearing counsel within the period of time determined at
19    the deposition or provided by the Code of Civil Procedure.
20 __ Waiving the CA Code of Civil Procedure per Stipulation of
21    Counsel - Original transcript to be released for signature
22    as determined at the deposition.
23 __ Signature Waived – Reading & Signature was waived at the
24    time of the deposition.
```

Page 329

83 (Pages 326 - 329)

CONFIDENTIAL

## Deposition Errata Sheet
### Case: Calhoun, et al. v. Google LLC
### Deponent: Sam Heft-Luthy
### Date of Deposition: December 20, 2021

| Pg. and Ln. | Now Reads | Should Read | Reason |
| --- | --- | --- | --- |
| Pg: 28 Ln: 19 | a often product | a product | Transcription error |
| Pg: 30 Ln: 5 | Nina Ilyeva | Nina Ilieva | Transcription error |
| Pg: 53 Ln: 15 | as a manager of | as product manager of | Words used |
| Pg: 66 Ln: 9 | don't | do | Transcription error |
| Pg: 68 Ln: 8 | did | doesn't | Transcription error |
| Pg: 73 Ln: 4 | it's product | it's a product | Transcription error |
| Pg: 76 Ln: 6 | question | objection | Transcription error |
| Pg: 82 Ln: 25 | Bushman | Buschmann | Transcription error |
| Pg: 82 Ln: 2, 3, 4, 8, 12 | Bushman | Buschmann | Transcription error |
| Pg: 103 Ln: 3 | a | an | Transcription error |
| Pg: 104 Ln: 15 | system | systems | Transcription error |
| Pg: 104 Ln: 20 | a | an | Transcription error |
| Pg: 164 Ln: 20 | that was | that I was | Transcription error |
| Pg: 183 Ln: 4 | It's | It | Transcription error |
| Pg: 187 Ln: 16 | MR. SPILLY: | MR. BARNES: | Transcription error |
| Pg: 201 Ln: 15 | reference | referenced | Transcription error |
| Pg: 208 Ln: 17 | be a | be | Transcription error |
| Pg: 218 Ln: 17 | memory | memory of | Transcription error |

CONFIDENTIAL

| | | | |
|---|---|---|---|
| Pg: 260 Ln: 5 | distinction | distinct | Transcription error |
| Pg: 265 Ln: 4 | are on | on | Transcription error |
| Pg: 266 Ln: 11 | graph | draft | Transcription error |
| Pg: 289 Ln: 5 | How | MR. BARNES: How | Transcription error |
| Pg: 290 Ln: 13 | allegations | obligations | Transcription error |
| Pg: 302 Ln: 21 | Sorro | Sauro | Transcription error |
| Pg: 303 Ln: 1 | Sorro | Sauro | Transcription error |
| Pg: 303 Ln: 8 | CDPR | GDPR | Transcription error |
| Pg: 309 Ln: 13 | Common parlance for Google. | In common parlance for Google, | Transcription error |
| Pg: 318 Ln: 20 | "art ownership," | art "ownership," | Transcription error |
| Pg. 319 Ln: 1-2 | "art ownership," | art "ownership," | Transcription error |