# Plaintiffs Reply Brief Redacted Version of Document Sought to be Sealed

**BLEICHMAR FONTI & AULD LLP**
Lesley E. Weaver (SBN 191305)
Anne K. Davis (SBN 267909)
Joshua D. Samra (SBN 313050)
555 12th Street, Suite 1600
Oakland, CA 94607
Tel.: (415) 445-4003
Fax: (415) 445-4020
lweaver@bfalaw.com

**SIMMONS HANLY CONROY LLC**
Jason 'Jay' Barnes (admitted *pro hac vice*)
An Truong (admitted *pro hac vice*)
112 Madison Avenue, 7th Floor
New York, NY 10016
Tel.: (212) 784-6400
Fax: (212) 213-5949
jaybarnes@simmonsfirm.com

**DICELLO LEVITT GUTZLER LLC**
David A. Straite (admitted *pro hac vice*)
Corban Rhodes (admitted *pro hac vice*)
One Grand Central Place
60 East 42nd Street, Suite 2400
New York, NY 10165
Tel.: (646) 933-1000
dstraite@dicellolevitt.com

Amy Keller (admitted *pro hac vice*)
Ten North Dearborn St., Sixth Floor
Chicago, IL 60602
Tel.: (31) 214-7900
akeller@dicellolevitt.com

*Counsel for Plaintiffs*

# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## OAKLAND DIVISION

| | |
|---|---|
| PATRICK CALHOUN, *et al.*, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>GOOGLE LLC,<br><br>Defendant. | Case No. 4:20-cv-05146-YGR-SVK[1]<br><br>**PLAINTIFFS' REPLY BRIEF RE: TARGETED USE OF *CALHOUN* DISCOVERY IN *IN RE GOOGLE CONSUMER RTB PRIVACY LITIGATION*, PURSUANT TO DKT. 683**<br><br>Hon. Yvonne Gonzalez Rogers |

**UNREDACTED VERSION OF DOCUMENT FILED UNDER SEAL**

---

[1] In accordance with the Court's instructions, this brief is filed under seal on the *Calhoun* docket only, in its entirety, and served separately upon counsel for Google in both actions.

# INTRODUCTION

Google agrees that much of the evidence Plaintiffs identify in their opening brief is relevant to *RTB*, but says it is "nonsubstantive." Google also admits that at least 100,000 documents that hit on terms like "RTB" have been withheld while Google has only produced 51,052 documents in total in this case. Google's opposition rests largely on procedural grounds, arguing that because Judge DeMarchi has issued more than five substantive discovery orders in this case, Plaintiffs should not be able to share information and evidence already adduced in *Calhoun* with each other or the Court. (Google, of course, is playing it both ways, giving its counsel in this case access when it suits Google.) Google says such common-sense use is not proportional because allowing Plaintiffs to share what they know will undermine Judge DeMarchi's discovery rulings.

Google's arguments fail, for at least two reasons. **First**, Judge DeMarchi's discovery rulings have focused on burden and proportionality.[2] Here, there is no undue burden. Plaintiffs are not seeking *production* of this discovery, which is already in Plaintiffs' possession. Rather, Plaintiffs simply seek permission to *access* a defined sub-set of the discovery. *See* Pls.' Proposed Order, *RTB* Dkt. 206-4. Further, this Court has since issued its ruling on Google's Motion to Dismiss ("MTD Order," *RTB* Dkt. 233), upholding nearly all claims affecting hundreds of millions of users whose information is sold in a multi-billion-dollar auction process. When viewed in context of the scope and size of the case, the slow pace of discovery in this action, and upcoming case deadlines, there are compelling reasons to permit this practical, and proportional, solution.

**Second**, Judge DeMarchi has issued her rulings without the benefit of a full record. At least one of these is subject to further briefing. *RTB* Dkt. 236. If discovery regarding data collection and storage discovery is not allowed, it will fundamentally prejudice Plaintiffs' ability to present this case to a jury. That ruling, and others, were direct results of Google's decision to withhold discovery in this case. The Court and its Magistrate Judges deserve the benefit of a full record, as do Plaintiffs. If Plaintiffs are not permitted to use relevant discovery produced in *Calhoun* to refute Google's contrary

---

[2] *See RTB* Dkt. 184 at 4, 5-6 (excusing compliance with Plaintiffs' RFPs Nos. 3-4, and 7-9 due to burden and proportionality); *RTB* Dkt. 188 at 3, 4 (declining to require Google to run proposed search terms or add disputed ESI custodians on similar grounds).

positions, Plaintiffs are prejudiced, and this Court and its Magistrates are at risk of issuing contradictory rulings in two related cases on the same subject matters. Plaintiffs' proposal for targeted use and access is a fair, reasonable remedy.

## ARGUMENT

### I. THE EVIDENCE PLAINTIFFS SEEK TO SHARE WITH THE COURT AND CO-COUNSEL IS DIRECTLY PROBATIVE OF CORE CLAIMS AND DEFENSES IN THIS ACTION

#### A. The Targeted Evidence Falls Squarely Within the Contours of the Court's Order Denying Google's Motion to Dismiss.

The Court's succinct and clear order resolving Google's motion to dismiss crystallizes the core facts, beginning with "Google collects, observes, and analyzes data from everyone using any of its services and platforms. This data is then disseminated and sold through Google's Real-Time Bidding system ("RTB"), which functions as an auction (*Id.* ¶¶ 3, 6.)." MTD Order at 2. Those Google services include "Google.com, Chrome, Gmail, YouTube, Android, Google Maps, Google Play, Google Docs, Google Calendars, Google Drive, Google Chat, Google Flights, Google Fit, Google Meet, Google Pay, Google Pixel, Chromebooks, and YouTube TV." *Id.* at 6 (citing (CCAC ¶¶ 9-10)). The Order notes "Plaintiffs are Google account holders who frequently use various web browsers, including Google Chrome, Safari, and Edge to request, obtain, and watch audio-visual materials and whose personal information was allegedly shared and sold through Google's RTB process. (*Id.* ¶¶ 9, 37- 68.)." *Id.* at 3. These core facts relate directly to "front-end" collection of information by Google. The Order notes that "Google sold and shared plaintiffs' personal information through Google RTB. This data includes information about the websites plaintiffs visited, the content of those sites, photos, videos, and communications." *Id.* at 7. This is the "back-end" of the data flow. All of these topics are clearly relevant and squarely within the categories of discovery withheld from production in *RTB*.

#### B. Google Concedes the Relevance of Much of the Evidence Plaintiffs Seek to Use, and Has No Explanation for Failing to Produce it in *RTB*.

Google argues that the overlap between *Calhoun* and *RTB* evidence is "smoke and mirrors." The facts show otherwise. For example, Google says that "out of the over one million documents produced in *Calhoun*, Plaintiffs identify only two exhibits that include the words 'Real-Time Bidding' or 'RTB.'" Def. Br. at 7, *Calhoun* Dkt. 711-4. This is false, contradicted by Google's

1  admission in the very next sentence that even using its own narrowed search terms, **Google has**
2  **identified at least 100,0000 Calhoun documents relevant in this case that have not been produced**.[3]
3  *Id.* Google has produced only 51,052 documents in *RTB*. *See* Supplemental Declaration of Lesley E.
4  Weaver ("Suppl. Weaver Decl.") ¶ 4. That is, there are more RTB documents produced in *Calhoun*
5  than in *RTB*. How can Google honestly argue that these documents should be off-limits here? In fact,
6  while complaining generally that the evidence Plaintiffs seek to access and use is not relevant, Google
7  concedes the probative value of much of the discovery. There are at least five ways in which Google's
8  brief concedes relevance:

9      ***First***, Google admits that deposition testimony in *Calhoun* discussed RTB, but Google's
10 counsel determined it to be "passing" and "nonsubstantive." Def. Br. at 7. "Passing" and
11 "nonsubstantive" are not discovery standards. Plaintiffs question whether Google should be permitted
12 to withhold relevant evidence based on *RTB* counsel's assessment of its "weight." For example,
13 deposition testimony from three engineers challenge counsel's conclusions:

14 • Dr. Hyewon Jun—who Google counsel directly told Judge DeMarchi in a hearing lacks any meaningful knowledge about RTB—testified at length about how Google tracks users. *See* Suppl.
15   Weaver Decl. ¶ 5.d., Ex. S (Jun Dep. Tr.) at 103:15–116:8 [REDACTED]
16   [REDACTED]
17   ). *See also* Suppl. Weaver Decl. ¶ 5.e., Ex. T (Exhibit 3 to Jun Dep. Tr.) at -175 to -176.

18 • Dr. Deepak Ravichandran, deposed in *Calhoun*, "wrote an external white paper on Google ad managers RTB bidding on top 500 publishers." Suppl. Weaver Decl. ¶ 5.a., Ex. P (Ravichandran
19   Dep. Tr.) at 231:11–17. The paper was the subject of extensive testimony.

20 • Chetna Bindra testified in *Calhoun* that the "overall real-time bidding ecosystem…does operate in a way that it appears, you know, yes, a lot of the players within the ecosystem rely on user
21   identifiers. They do all the things that are mentioned there." *See* Suppl. Weaver Decl. ¶ 5.b., Ex.
   Q (Bindra Dep. Tr.) at 293:23–295:12 (testifying regarding Exhibit 41, [REDACTED]
22   [REDACTED]
23   ).[4] *See also* Suppl. Weaver
   Decl. ¶ 5.c., Ex. R (Ex. 41 to Bindra Dep. Tr.) at -040.

24

---

25 [3] Google's documents calculations are unclear. Searches using relevant terms hit on at least 321,956
26 documents withheld from *RTB* relating to data flow, personal information, consent and damages. Suppl. Weaver Decl. ¶ 3. And evidence discussed in the briefing are *examples*.

27 [4] Google suggests that Judge DeMarchi dispositively ruled that the damages information relating to
28 what Google pays users for their data is irrelevant (the "Screenwise" program). This is not true. Judge DeMarchi instead ordered the parties to confer. *RTB* Dkt. 189 at 4-5. This issue is pending.

Google's assertion that such testimony is "nonsubstantive" cannot be squared with the transcripts.

***Second***, the search terms Google used to identify *Calhoun* documents were overly narrow, but the *topics* are admissions by Google that the Ad Exchange ecosystem is relevant in *RTB*. Ad Exchange relates directly to how ads are created and placed; how Google analytics reports success rates to publishers and advertisers; what revenues are generated; how to improve targeting so that publishers, advertisers and Google can generate more revenue, etc. Inexplicably, 50,206 documents relating to these topics were produced in *Calhoun* but not in *RTB*. Suppl. Weaver Decl. ¶ 3.

***Third***, Google admits that the "RTB Privacy Risk – data flows" document is relevant, saying Google has already produced "documents that reflect similar information, and various other documents reflecting descriptions and diagrams of RTB data flow." Def. Br. at 8. Google does not explain how or why it has limited its production to this incomplete subset.

***Fourth***, the documents Google cites demonstrate the relevance of data flow. Def. Ex. 2 notes that "[w]hether user_vertical should be cleared or not depends on the allow_user_verticals field" which is determined "per bidder configuration." *Id.* at -909. This "user vertical" field is created by Google in the data flow, and how Google categorizes data into verticals from the front end is directly relevant. Googler engineer Stanislav Belov declares, with no citations, that "Google's RTB products do not share with third parties any form of user 'profile,' 'segment,' or 'vertical' information that Google links to its users." Belov Decl. ¶ 11. But Plaintiffs' expert Prof. Zubair Shafiq cites Google's documents to show that Mr. Belov is wrong on this key issue. *See* Supplemental Declaration of Prof. Zubair Shafiq ("Suppl. Shafiq Decl.") ¶¶ 8-16; 20-26. All evidence on this topic should be made available to Plaintiffs in *RTB*.

***Fifth***, Google admits the relevance of the "███████████" log, stating in the June 1, 2022 hearing that it is the *only* log that Google needs to produce in this case. June 1, 2022 Hr'g Tr. at 24:23-25:2. However, Google has not yet produced it, and has only produced seven documents referring to it. Suppl. Weaver Decl. ¶ 4. Mr. Belov effectively concedes (as he must) that the "███████████" log contains information directly relevant to RTB. Belov Decl. ¶ 12. It does. Prof. Shafiq notes that for just one *Calhoun* plaintiff there are ██████ explicit mentions of RTB in one such log, and ██████ explicit mentions of RTB in ████████ logs. Suppl. Shafiq Decl. ¶¶ 21-24.

1  Google has not produced a single Named Plaintiff document or log in *RTB*. Suppl. Weaver Decl. ¶ 4.

2  ***Finally***, Google agrees storage and collection is relevant, but only when *Google* is seeking discovery related to them. On Google's motion, Judge DeMarchi ordered Plaintiffs to produce account, device settings, and browsing histories stored on Named Plaintiffs' personal devices, including. *RTB* Dkts. 185, 190. Unbeknownst to Judge DeMarchi, Google maintains storage systems with detailed records of this information, but it did not inform Judge DeMarchi, even when Plaintiffs inquired. Thus, Plaintiffs produced significant productions of evidence to Google containing information Google already possesses. This is an absurd outcome.

    **C.**    **Google's Arguments that Similar Discovery Is Not Probative of Key Issues in This Case Is Whimsical.**

        **1.**    **Data Flow, Front-End Logs, and Collection and Storage of User Information Should Not Be Produced Piecemeal.**

Among the swathes of evidence Google refuses to produce are logs of data that show precisely what Google collects about users and what it does with it. Prof. Shafiq counters Mr. Belov's conclusions with evidence, not opinion. Google's own documents describe how Google shared verticals in bid request and targets users based on personal information. Suppl. Shafiq Decl. ¶¶ 8-16; 20-26. These logs also show that Google connects data to account holders even when they are signed out, a major privacy breach. *Id.* ¶¶ 17-20. They are critically important.

        **2.**    **Evidence Relating to the Privacy Projects Bear Directly on Google's Consent Defenses, and Google's Argument Otherwise Is Specious.**

Google grossly misleads by suggesting that its consent defenses are so different in *RTB* that *Calhoun* consent discovery is irrelevant. There is no document that obtains consent specifically for the real time bidding auction; Google does not even attempt to point to one. As the Court noted, the operative consent documents are Google's terms of service and privacy policies, MTD Order at 7, which apply in both *Calhoun* and *RTB*. Documents relating to them are relevant in both cases.

Google challenges the probative value of the "███████" study to *RTB*. Google's corporate designee, Michael Kleber, testified that the impetus for Privacy Sandbox was a peer-reviewed article titled "Diffusion of User Identity in the Ads Ecosystem." Suppl. Weaver Decl. ¶ 5.f., Ex. U (Kleber Dep. Tr.) at 30:19–25. This paper, authored by Plaintiffs' expert Christo Wilson, is specifically referenced in the *RTB* CCAC ¶¶ 181. ***It focuses on disclosures made about users in the***

1  *RTB auction*. Thus, through the Kleber 30(b)(6) deposition, ▬▬▬▬▬▬▬▬▬▬

2  ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

3  ▬▬▬. That evidence is directly relevant in this action.

      **3.     Granting Access and Use of Evidence Will Streamline Disputes.**

Discovery of the revenues that Google makes through advertising in the RTB is relevant in both *Calhoun* and *RTB*. ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ Plaintiffs can establish and apportion Google's unjust enrichment using them. But Google has withheld that evidence and, through repeated threats and warnings, prevented Plaintiffs from informing the Court of the truth as it considered discovery briefing.[5]

## II.    GOOGLE'S PROCEDURAL ARGUMENTS FAIL

    **A.    Judge DeMarchi Has Not Decided This Issue Already.**

As discussed in the hearing, Judge DeMarchi has not adjudicated this issue. Plaintiffs seek relief from the Protective Order in *Calhoun* to share information and evidence, subject to the parties' negotiations, from that related matter in this case. It is more efficient for this Court, which is overseeing both related actions, to grant that permission, rather than Judge DeMarchi, who is not assigned to *Calhoun*. The less efficient alternative was for Plaintiffs to seek relief from both Magistrate Judges DeMarchi and van Keulen, who would consult with this Court in any event.

    **B.    This Court Has the Authority to Manage Its Docket.**

Google claims simultaneously that Plaintiffs have already briefed this issue, and that this motion is untimely. Neither argument is serious. For over a year, Plaintiffs have attempted to resolve disputes with Google without troubling the Court. But now, with a substantial discovery completion deadline currently set for July 11, 2022, intransigence from Google to providing even basic discovery, and clear knowledge of what Google is withholding, it is well within the Court's discretion to grant the relief sought.

---

[5] Google suggests that Judge DeMarchi dispositively ruled that the damages information relating to what Google pays users for their data is irrelevant (the "Screenwise" program). This is not true. Judge DeMarchi instead ordered the parties to confer. *RTB* Dkt. 189 at 4-5. This issue is pending.

| | | |
|---|---|---|
| 1 | DATED: June 18, 2022 | Respectfully submitted, |
| 2 | | **BLEICHMAR FONTI & AULD LLP** |
| 3 | | */s/ Lesley E. Weaver* |
| 4 | | Lesley E. Weaver (SBN 191305)<br>Anne K. Davis (SBN 267909) |
| 5 | | Joshua D. Samra (SBN 313050)<br>555 12th Street, Suite 1600 |
| 6 | | Oakland, CA 94607<br>Tel.: (415) 445-4003 |
| 7 | | Fax: (415) 445-4020<br>*lweaver@bfalaw.com* |
| 8 | | *adavis@bfalaw.com*<br>*jsamra@bfalaw.com* |
| 9 | | |
| 10 | | **SIMONS HANLY CONROY LLC** |
| 11 | | */s/ Jay Barnes* |
| 12 | | Jason 'Jay' Barnes (admitted *pro hac vice*)<br>An Truong (admitted *pro hac vice*) |
| 13 | | 112 Madison Avenue, 7th Floor<br>New York, NY 10016 |
| 14 | | Tel.: (212) 784-6400<br>Fax: (212) 213-5949 |
| 15 | | *jaybarnes@simmonsfirm.com* |
| 16 | | *atruong@simmonsfirm.com* |
| 17 | | **DICELLO LEVITT GUTZLER LLC** |
| 18 | | */s/ David A. Straite* |
| 19 | | David A. Straite (admitted *pro hac vice*)<br>One Grand Central Place |
| 20 | | 60 E. 42nd Street, Suite 2400<br>Tel.: (212) 784-6400 |
| 21 | | Fax: (212) 213-5949<br>New York, NY 10165 |
| 22 | | Tel: (646) 993-1000<br>*dstraite@dicellolevitt.com* |
| 23 | | |
| 24 | | Amy Keller (admitted *pro hac vice*)<br>Ten North Dearborn St., Sixth Floor |
| 25 | | Chicago, IL 60602<br>Tel.: (31) 214-7900 |
| 26 | | *akeller@dicellolevitt.com* |
| 27 | | *Counsel for Plaintiffs in RTB and Calhoun* |
| 28 | | |