# EXHIBIT A

Elizabeth C. Pritzker (Cal. Bar No. 146267)
Jonathan K. Levine (Cal. Bar No. 220289)
Bethany Caracuzzo (Cal. Bar No. 190687)
Caroline Corbitt (Cal Bar No. 305492)
**PRITZKER LEVINE LLP**
1900 Powell Street, Suite 450
Emeryville, CA 94608
Tel.: (415) 692-0772
Fax: (415) 366-6110
*ecp@pritzkerlevine.com*
*jkl@pritzkerlevine.com*
*bc@pritzkerlevine.com*
*ccc@pritzkerlevine.com*

*Interim Class Counsel*

[Additional Counsel on Signature Page]

# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN JOSE DIVISION

| | |
|---|---|
| *IN RE GOOGLE RTB CONSUMER PRIVACY LITIGATION* | **CASE NO. 4:21-CV-02155-YGR-VKD** |
| ———————————— | **PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR CONTEMPT AND SPOLIATION SANCTIONS RE NAMED PLAINTIFF DATA** |
| *This document applies to all actions.* | |
| | Judge: Hon. Virginia K. DeMarchi |
| | Date:  May 28, 2024 |
| | Time:  10:00 a.m. |
| | Courtroom:  2, Fifth Floor |

**UNREDACTED VERSION SUBMITTED CONDITIONALLY UNDER SEAL**

### NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE THAT on May 28, 2024, at 10 a.m., in Courtroom 2, 5th Floor, of this Court, located at 280 South 1st Street, San Jose, California, before the Hon. Virginia K. DeMarchi, United States Magistrate Judge for the Northern District of California, plaintiffs will and do hereby move the Court, pursuant to Fed. R. Civ. P. 16(f), 37(b) and 37(e), and Civil L.R. 37-4, and for the reasons set forth below and in the Declaration of Jonathan K. Levine ("Levine Decl."), for an order imposing contempt and evidentiary sanctions against Google for its willful violations of this Court's April 14, 2023 Order re Plaintiffs' Motion for Contempt and Sanctions ("April 14 Order") (ECFs 487, 488) and May 16, 2023 Order re Account Identifiers and Further Production of Named Plaintiffs' Data ("May 16 Order") (ECFs 510, 524), and for its willful failure to maintain and produce Biscotti IDs and ████████████████, even after this Court held that Biscotti IDs and ██████████████ were relevant and should be produced.

As reflected in the April 14 and May 16 Orders, there are three key pieces of data associated with each RTB bid request sent out by Google: the Google account id ("GAIA ID"), the Biscotti ID (which is a form of the Google User ID generated for each bid request), and the ████████ ██████████, which allows Google to ████████████ Biscotti ID ██████████████ ████████████ *See* ECF 487 at 6-7, ECF 510 at 2-3. Google was ordered to produce these three pieces of data for all productions of named plaintiff data and was on notice at least as early as April 2023 that the Biscotti ID and ██████████████ should be maintained and produced. But Google did not do so. When plaintiffs requested named plaintiff data from 2023 *after* the Court's Orders, Google did not produce any Biscotti IDs or ██████████████. Google eventually admitted that the 2023 ██████████████████, and because of that, Google also could not produce the associated Biscotti IDs.

Plaintiffs seek sanctions against Google for its willful violation of the Court's orders and failure to maintain and produce Biscotti IDs and ██████████████, on the grounds set forth below and in the Levine Decl., and upon any further grounds the Court may determine or that plaintiffs may assert on reply or at hearing in this matter.

# <u>TABLE OF CONTENTS</u>

**MEMORANDUM OF POINTS AND AUTHORITIES** ................................................. 1

**I.    INTRODUCTION** ....................................................................................... 1

**II.   RELEVANT FACTS** .................................................................................. 3

**III.  ARGUMENT** ............................................................................................ 13

**IV.   CONCLUSION** ......................................................................................... 17

PLAINTIFFS' NOTICE OF MOT. AND MOT. FOR CONTEMPT AND SANCTIONS

# **TABLE OF AUTHORITIES**

## CASES

*Adriana Int'l Corp. v. Thoeren*, 913 F.2d 1406 (9th Cir. 1990)..................................................14

*Brown v. Google LLC*, 2022 WL 2789897 (N.D. Cal. July 15, 2022)........................................13

*Brown v. Google LLC*, Case No. 20-cv-03664-YGR (SVK), ECF 918 (N.D. Cal. April 4, 2023)............................................................................................................................................12

*Calhoun v. Google LLC*, 2022 WL 1987864 (N.D. Cal. June 6, 2022) .....................................13

*Cato v. Fresno City*, 234 F.3d 1276 (9th Cir. 2000) ..................................................................14

*Clear-View Tech., Inc., v. Rasnick*, 2015 WL 2251005 .............................................................17

*Dong Ah Tire & Rubber Co., Ltd. v Glasforms, Inc.*, 2009 WL 1949124 ..................................17

*F.T.C. v. Affordable Media*, 179 F.3d 1228 (9th Cir. 1999).......................................................14

*Fausto v. Credigy Servs. Corp.*, 251 F.R.D. 436 (N.D. Cal. 2008)...........................................13

*Guifu Li v. A Perfect Day Franchise, Inc*, 281 F.R.D. 373 (N.D. Cal. 2012) .............................14

*Guifu Li v. A Perfect Day Franchise, Inc.*, 2011 WL 3895118 (N.D. Cal. Aug. 29, 2011)..........16

*Harmon v. City of Santa Clara*, 323 F.R.D. 617 (N.D. Cal. 2018)............................................14

*In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d 693 (9th Cir. 1993) ............16

*In re Google Litig.*, 2011 WL 5190831 (N.D. Cal. Oct. 31, 2011) .............................................13

*In re Google Play Store Antitrust Litig.*, 664 F. Supp. 3d 981 (N.D. Cal. 2023).........................12

*Johnson v. Mammoth Recreations, Inc.,* 975 F.2d 604 (9th Cir. 1992) ......................................14

*Leon v. IDX Sys. Corp.,* 464 F.3d 951 (9th Cir. 2006) ..........................................................13, 14

*Nat'l Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639 (1976)..........................14

*Nat'l Ass'n of Radiation Survivors v. Turnage,* 115 F.R.D. 543 (N.D. Cal. 1987)......................17

*Phoceene Sous–Marine, S.A. v. U.S. Phosmarine, Inc.,* 682 F.2d 802 (9th Cir. 1982)................17

*Unigard Sec. Ins. Co. v. Lakewood Eng. Mfg. Corp.*, 982 F.2d 363 (9th Cir. 1992) ...................14

*United States v. Procter & Gamble Co.*, 356 U.S. 677 (1958) ...................................................13

*United States v. Sumitomo Marine & Fire Ins. Co.*, 617 F.2d 1365 (9th Cir. 1980) ...................14

*Woods v. Google*, 2014 WL 3909527 (N.D. Cal. Aug. 8, 2014)................................................13

## STATUTES

Cal. Civ. Code § 1798.140 ........................................................................................4

## OTHER AUTHORITIES

8B *Federal Practice and Procedure* § 2284 (3d ed. 2022) ......................................13

Fed. R. Civ. P. 16(f)(1) ..........................................................................................14

Fed. R. Civ. P. 37 ...................................................................................................14

Fed. R. Civ. P. 37(b) ..............................................................................................13

Fed. R. Civ. P. 37(e) ..............................................................................................13

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

This case is brought on behalf of millions of U.S. Google account holders whose personal information Google shared and sold to hundreds of real time bidding ("RTB") auction participants around the world in trillions of RTB auctions during the Class Period. One of the ways plaintiffs can prove that the information shared and sold by Google in the RTB auctions was "personal information" is by showing that Google links or is reasonably capable of linking that information with account holders' Google accounts. Google does this through three key pieces of event-level log data: the GAIA ID (account id), the Biscotti ID (the encrypted Google User ID associated with a bid request) and the ███████████████████████████████ ███████████. Levine Decl., ¶ 2.

Google has been aware of plaintiffs' theory of the case since it commenced in March 2021 (it is, after all, based on Google's own Privacy Policy and its express promises not to sell or share personal information with third parties). Yet Google has fought tooth and nail since then to withhold evidence plaintiffs need to show that Google does, as a matter of course, routinely link RTB bid request information with corresponding Google accounts - all while repeatedly assuring the Court and plaintiffs that Google had "taken reasonable and proportionate steps to preserve evidence relevant to this litigation" and that with respect to "event-level log data beyond Google's standard retention periods . . . such data and other documents and data relevant to this litigation have been preserved." ECF 296 (Joint CMCS) at 6.[1] *See also* Levine Decl., ¶¶ 6-7.

These representations were false, at least with respect to the Biscotti IDs and the ███████ ███████████████ Google did not preserve important event-level log data beyond Google's standard retention periods, although it had the capacity to do so, has done so for other cases, and should have done so in this action. Google willfully and knowingly destroyed highly relevant event-level log data, and then attempted to hide this destruction from plaintiffs and the Court by engaging in

---

[1] *See also* Joint Case Management Conference Statements filed at ECF 69 at 7; ECF 82 at 7; ECF 112 at 3; ECF 146 at 5-6.

PLAINTIFFS' NOTICE OF MOT. AND MOT. FOR CONTEMPT AND SANCTIONS

1  endless meet and confers with plaintiffs and lengthy and costly motion practice before this Court.

2  For a time, Google incorrectly claimed that there was no Court order requiring Google to produce

3  either the Biscotti IDs or the related ███████████████. But in 2023, the Court specifically

4  ordered Google to produce the Biscotti IDs and the ██████████████. It was only then, after

5  years of meet and confers and countless motions, that Google admitted that for its prior productions

6  of 2021 and 2022 named plaintiff data, Google had not in fact maintained the ████████████

7  ████ and therefore could not produce them for the prior productions. Nor could Google produce

8  the Biscotti IDs for those productions, since the only way to produce the Biscotti IDs was through

9  the ████████████. This conduct, by itself, warrants contempt and spoliation sanctions,

10  but it is not the subject of this motion, only the background.

11          This motion seeks to hold Google accountable for its conduct in 2023, ***after*** the Court

12  specifically ordered Google to produce Biscotti IDs and ██████████████. In the April 14

13  Order, the Court ordered Google to ensure that "all of its productions of named plaintiff data can

14  be easily correlated, and that it must include the fields necessary to accomplish that result." The

15  Court specifically identified the GAIA ID, the Google User ID (internally known at Google as the

16  Biscotti ID), and the related joining keys. ECF 487 at 7. That same day, the Court also ordered

17  Google to produce more named plaintiff data for six weeks of plaintiffs' choosing. ECF 484 (Order

18  re Time Sampling) at 2. Google was thus on notice, at least as early as April 14, 2023, that Biscotti

19  IDs and ███████████ should be maintained and that plaintiffs were entitled to additional weeks

20  of named plaintiff data from Google. In the subsequent May 16 Order, the Court went further, and

21  ordered Google to produce the Biscotti IDs for all named plaintiff productions - and if it could not,

22  Google was to work with plaintiffs to come up with a reasonable alternative to produce the same

23  or similar information. ECF 510 at 3.

24          In response to the April 14 and May 16 Orders, plaintiffs now understand that Google took

25  no steps to stop the routine destruction of the ███████████████.[2] When plaintiffs requested

26

27  ────────────────

28  [2] Google's retention period is only ██████ for the ████. *See* Levine Decl., Ex. A at 238:7-15.

PLAINTIFFS' NOTICE OF MOT. AND MOT. FOR CONTEMPT AND SANCTIONS

additional named plaintiff data for four different one-week samples in 2023 (two of which post-dated the April 14 Order and one of which was well within Google's ███ retention period at the time of the Order), Google produced some named plaintiff data for the four weeks requested, but did ***not*** produce any Biscotti IDs or ████████████, falsely claiming at the time of its eventual production in February 2024 that it did not have to produce this data and did not understand what joining keys plaintiffs wanted or why they were relevant to plaintiffs' claims. This feigned ignorance was just to hide the fact that Google allowed the joining keys to be deleted, after the Court's order to produce them - a fact which Google's counsel eventually admitted. And because the ████████████ were destroyed, Google also claimed it could not produce the Biscotti IDs that plaintiffs requested. Google has not claimed that this was an inadvertent failure, nor has Google offered to mitigate or find some other way to get plaintiffs the data they are entitled to under the Court's Orders. Nor did Google bring this issue to the Court's attention and ask for forgiveness. This is notable given the number of times Google has been sanctioned in for discovery abuses in this District.

Google's willful violation of the Court's April 14 and May 16 Orders and willful and knowing spoliation of ████████████ in 2023, and resulting inability to produce Biscotti IDs for 2023, is highly prejudicial to plaintiffs and constitutes contempt of this Court, for which contempt and evidentiary sanctions should be imposed.

## II.    RELEVANT FACTS

There is no serious dispute that certain information about Google account holders was routinely sold and shared in RTB auctions trillions of times during the Class Period.[3] *See, generally*, ECF 545-5 (Shafiq Report); ECF 545-6 (Wilson Report). One key issue for trial is

---

[3] By way of example, Google's records confirm that for just an eight-week period for just the seven named plaintiffs, their personal information was shared with more than ██ RTB participants in ██ different countries████████ times. *See* ECF 545-5 (Shafiq Report) at ¶¶ 35, 39. Extrapolated out over the entire seven-year Class Period, Google shared the seven named plaintiffs' personal information with hundreds of RTB auction participants around the world about ████████ times.

proving that the Google account holder information sold and shared was "personal information" under Google's Privacy Policy and California law.

Under Google's Privacy Policy, personal information includes information that an account holder provides to Google that personally identifies that person, such as name, email address, or billing information, ***or other data that can be reasonably linked to such information by Google, such as information Google associates with that person's Google account.*** The Privacy Policy goes on to describe information Google "associate[s] with…Google Account[s]" to include, among other things, unique identifiers, browser type and settings, device type and settings, and operating systems. Google defines unique identifiers as including cookies, advertising IDs, and other unique device identifiers. ECF 546-36 (Caracuzzo Declaration) at ¶¶ 19, 29, 36 (emphasis added).

Under California law, personal information includes information that identifies, relates to, describes, is reasonably capable of being associated with, or could reasonably be linked, directly or indirectly, with a particular consumer or household, including unique personal identifiers, online identifiers, IP addresses, browsing history, search history, geolocation data, and any inferences drawn from any of this information that can be used to create a profile about a consumer reflecting the consumer's preferences, characteristics, predispositions, or behavior. *See* Cal. Civ. Code § 1798.140; *accord*, ECF 233 (order on motion to dismiss) (for purposes of Rule 12(b)(6), "the Court finds that the information at issue in this case falls within the broad definition of personal information, as defined under both California law and in Google's privacy policy")[4].

There are thus two different ways plaintiffs can prove at trial that what Google was sending out in the RTB bid requests was personal information. First, plaintiffs can prove that RTB bid request data was personal information under Google's Privacy Policy because Google was

---

[4] *See also*, ECF 690 at 25 (class certification order) ("There is evidence before the Court which already shows that Google shares enough information that RTB participants can discern what an account holder is reading online, even when it is on a religious or medical topic; exactly where they are reading it, including the coordinates of an account holder's home or work; and their background, which allows for a detailed, demographic profile of the account holder.").

reasonably capable of linking the bid request data with information Google associated with Google accounts. Second, plaintiffs can prove RTB bid request data was personal information under California law because the bid request data Google was sending out identifies, relates to, describes, is reasonably capable of being associated with, or could reasonably be linked, directly or indirectly, with a particular consumer or household. The first looks at what Google was doing internally with the bid request data it was sending out. The second looks at what the RTB participants were receiving from Google. Plaintiffs can prove either or both at trial to prevail on their claims.

Focusing on the first method, all Google U.S. account holders have their personal information sold and shared in RTB auctions regardless of whether they are signed-in or signed-out of their Google accounts while using the internet.[5] *See, generally*, ECF 545-5 (Shafiq Report); ECF 545-6 (Wilson Report); ECF 545-9 (Richards Report). For signed-in account holders, plaintiffs will show at trial that Google has multiple ways to ██████████████████ ████████████████████████████████ (*see, e.g.,* ECF 545-5 (Shafiq Report) at ¶ 98), thus demonstrating that the bid request information is personal information under Google's Privacy Policy. For signed-out account holders, Google ███████ Biscotti IDs, █████████████ ████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████.[6] *See* Levine Decl., Ex. A at 225:13-226:20; ECF 545-5 (Shafiq Report) at ¶¶ 96-98; ECF 616-5 (Shafiq Rebuttal Report) at ¶¶ 98-107; ECF 616-12 (Ex. 51 to Pritzker Declaration) at 215-216, 219, 225-226.

---

[5] Google does not disclose its RTB auction practices to its U.S. account holders and provides no mechanism for any account holders to opt out of having their personal information shared and sold in RTB auctions. *See* ECF 545-9 (Richards Report) at ¶ 91.

[6] The GAIA ID is a unique identifier for a Google account holder and his/her Google account. Internal Google documents confirm that Google ████████████████████████████████ ████████████████████ Biscotti ID (*i.e.,* ████████████████ ███████████, Google ████████████████████████████████████████████ ████████████████████████████████████████████████████████ ███████████████████. *See* ECF 545-5 (Shafiq Report) at ¶ 97.

1    Thus, for plaintiffs to be able to prove at trial that RTB bid request data sold and shared by

2    Google for signed-out account holders also constitutes personal information under Google's

3    Privacy Policy, the ████████████ (and related Biscotti IDs) are the best way to present

4    the jury with the actual data demonstrating that Google is reasonably capable of linking that bid

5    request data with information associated with particular Google accounts. The Court's May 16

6    Order reflects the connection between these pieces of data and plaintiffs' need for all three pieces

7    as an evidentiary matter for trial.

8    Plaintiffs served a document request ("RFP 42") on Google in May 2021, shortly after the

9    litigation commenced, seeking production of information about the named plaintiffs. Levine Decl.,

10   ¶ 3. RFP 42 called for production of, among other things, bid request data associated with the

11   named plaintiffs, their Google account data, and any identifiers and data associated with the named

12   plaintiffs, their devices and their accounts (which would include the ████████████ and

13   any other joining keys associated with the named plaintiffs). *Id*. RFP 42 put Google on notice that

14   it was required to maintain Biscotti IDs and ████████████ for the named plaintiffs as of

15   May 2021, at the latest. Since Google has a ████ retention period for the ████ had Google

16   stopped the deletion of the data at that time, Biscotti IDs and ████████████ would have

17   existed for the entire three-year period post-dating the filing of the litigation. But Google did not

18   do that.[7] Levine Decl., Ex. A at 226:21-227:4.

19   Instead, Google categorically refused to produce ████████████ and Biscotti IDs,

20   even after they were specifically requested by plaintiffs, and even when that production would

21   have been limited to the then eight weeks of sampled named plaintiff data that Google was

22   producing. Levine Decl., ¶ 7. When plaintiffs moved to compel the production of Biscotti IDs and

23   ████████████ in July 2022, Google told the Court that this data was irrelevant, too burdensome

24

25   [7] This is contrary to repeated representations to plaintiffs and the Court that Google was not only
     maintaining relevant discovery (as it was required to do), but specifically as to event-level log data,
26   that Google was preserving such data beyond Google's standard retention periods. *See* the parties'
     Joint Case Management Conference Statements, ECF 69 at 7; ECF 82 at 7; ECF 112 at 3; ECF
27   146 at 5-6; ECF 295 at 6.

28

1   to produce, and that there were more efficient ways to conduct this discovery. *See* ECF 269 (joint

2   letter brief) at 5. None of these contentions by Google were true, but they were sufficient to

3   persuade the Court at that time to deny plaintiffs' motion as to the ████████ *See* ECF 314

4   (Aug. 26, 2022 Order) at 4-5. At no time during the meet and confers between counsel or in the

5   briefing before the Court did Google inform plaintiffs or the Court that it had not suspended its

6   ██████ retention period ████████████████████████ and was routinely destroying that data

7   after ███████. Levine Decl., ¶ 9.

8       On February 28, 2023, plaintiffs moved for sanctions against Google for its failure to

9   produce "verticals" data pertaining to the named plaintiffs in violation of two prior Court orders.

10  ECF 431. As part of that motion, plaintiffs argued that Google had intentionally stripped joining

11  key data from its productions of named plaintiff data, and specifically identified the ████████

12  ████████████ as an example of what was missing. *See* ECF 431 (sanctions motion) at 5; ECF

13  457 (reply brief) at 8-9. In its opposition to the motion, Google argued that it had not manipulated

14  the named plaintiff data it produced, but again did not disclose to plaintiffs or the Court that the

15  ████████████████ for the eight weeks for which named plaintiff data was produced ████████

16  ████████[8] *See* ECF 447-2 (Google's opposition) at 12.

17      On April 14, 2023, the Court denied plaintiffs' sanctions motion, but ordered Google to

18  produce additional data fields, including the GAIA ID, Google User ID (known internally at

19  Google as the Biscotti ID), and joining key data (which would include the ████████████████

20  ████, for all prior and future productions of named plaintiff data. ECF 487 at 7. The Court also

21  ordered Google to make sure that "all of its productions of named plaintiff data can be easily

22  correlated, and it must include the fields necessary to accomplish that result." *Id*. That same day,

23  the Court also issued another order allowing plaintiffs to select six additional weeks for which

24  Google would be required to produce named plaintiff data. ECF 484 at 2. Thus, as of April 14,

25  2023, Google knew that (i) it was required to produce GAIA IDs, Biscotti IDs and joining keys

26

27  ―――――――――――――
    [8] Google's counsel also failed to disclose this during the sanctions hearing. *See* ECF 489 (April
    11, 2023 hearing transcript).

28

PLAINTIFFS' NOTICE OF MOT. AND MOT. FOR CONTEMPT AND SANCTIONS

1   (including ██████████████) for all prior and future productions of named plaintiff data in

2   a manner that allowed them to be easily correlated, and (ii) plaintiffs were entitled to six more

3   weeks of named plaintiff data.

4          As of the date of the two April 14, 2023 Orders, Google should have had ███████████

5   ████ going back at least ██████, or to about January 14, 2023, based on Google's representations

6   regarding retention. Google again took no steps to stop the deletion of this data after the █████

7   retention period had elapsed.

8          In meet and confers following the Court's April 14, 2023 Orders, Google again refused to

9   produce Biscotti IDs and joining keys (including ███████████████), for either past or future

10  productions of named plaintiff data. *See* ECF 502-3 (joint letter brief). On May 8, 2023, plaintiffs

11  again moved to compel Google to produce the Biscotti IDs and joining key data, including

12  specifically the ███████████████. *Id*. at 3. Even though plaintiffs specifically identified the

13  ████████████████ by name and cited internal Google documents discussing those keys, in its

14  opposition, Google claimed again not to know what joining keys plaintiffs were seeking. *Id*. at 5.

15  Again, at no time during the meet and confer discussions or in the briefing to the Court did Google

16  disclose to plaintiffs or the Court that it was not maintaining, and in fact ***already*** had destroyed,

17  the ████████████████ plaintiffs were, and had been, seeking for prior productions of named

18  plaintiff data from 2021 and 2022. Nor did Google disclose that as a result of its failure to maintain

19  the ████████████████, Google was also unable to produce the related Biscotti IDs.

20         On May 16, 2023, the Court held a hearing on the motion to compel. During the hearing,

21  and for the very first time, Google's counsel admitted that the ████████████████████████

22  ██████ (this due to the passage of time and the fact that Google had never altered its ████████

23  retention period for that data). ECF 512 (hearing transcript) at 34-35, 67. Later that day, the Court

24  issued an order on the motion, memorializing that Google no longer had any joining keys to

25  produce for the named plaintiff data from 2021 and 2022. ECF 510 (May 16, 2023 Order) at 2-3.

26  But the Court's May 16 Order did not excuse Google from maintaining joining key data on a going

27  forward basis, which was governed by the Court's earlier April 14, 2023 Order (ECF 487). And

28

PLAINTIFFS' NOTICE OF MOT. AND MOT. FOR CONTEMPT AND SANCTIONS

1  the May 16 Order emphasized the importance of the ████████████████████████

2  ████████████████████████████ and instructed Google to investigate whether Biscotti

3  IDs could be produced together with GAIA IDs for all named plaintiff data, and if not, to work

4  with plaintiffs to determine whether "any reasonable alternatives exist for the production of the

5  same or similar information." ECF 510 at 2-3. Google did not produce Biscotti IDs linked with

6  GAIA IDs (because the joining keys were not maintained for any of the dates requested by

7  plaintiffs) and never worked with plaintiffs to determine whether other alternatives existed to get

8  plaintiffs the information they need for trial, as instructed by the Court.[9]

9        On May 24, 2023, the parties submitted a status report to the Court regarding production

10  of named plaintiff data. *See* ECF 528-2. Google stated that it would produce encrypted Biscotti

11  ID, where available. It also told the Court that it was "currently in the process of mapping the fields

12  available in the ████████████████████████ log that correspond to data fields including

13  in an RTB bid request" and intended "to produce this ██████ data to the extent reasonably

14  available" for the six time periods in which it "previously produced ██████████ log data" by

15  June 2, 2023. This was not true, as Google's additional productions from the ██████ log did not

16  include numerous fields that correspond to data fields publicly known to be included in RTB bid

17  requests, including URLs, device properties, and app IDs.

18        On October 30, 2023, Google confirmed in corporate deposition testimony that, ████████

19  █████████████████████████████████████████████████████████████████████

20  ████████████████ which "represent[s] a logical super set of the information that would be shared

21  in an RTB bid request," i.e. "all of the items and there may be additional information." Levine

22  Decl., Ex. A at 89:19-90:3.[10] For ████████████████████████████████████████████

23

---

24  [9] For example, an obvious alternative would be for Google to produce more recent weeks of named

25  plaintiff data within the ██████ retention period, but this is not something Google ever proposed
to plaintiffs.

26  [10] Google's belated admission that the ██████████████████████████████████████

27  █████████████████████████████ is a separate act of misconduct that is not the subject of this
motion, but easily warrants imposition of sanctions. Had Google simply produced the RTB-

28

PLAINTIFFS' NOTICE OF MOT. AND MOT. FOR CONTEMPT AND SANCTIONS

1   information is stored in a ███████████████████████████████████████████

2   ███████████████████████████████████████████████████████████████████████

3   ██████████████████████████████████████████." *Id*. at 12:22-13:16. ████████

4   ████████████████████████████████████████████ ███████████████████████████

5   ███████████████████████████████████████████████████████████████████████

6   ████████████████████████████ *Id*. at 225:13-226:8.

7          Also during the deposition, Google's representative was asked whether with "██████

8   ███████████████████████████████████████████████████████████████████████

9   ███████████████████████████████████████████████████████████████████████

10  ███████████████████████████ Levine Decl., Ex. A at 15:3-11. ███████████████████

11  ███████████████████████████████████████████████████████████████████████

12  ████ Google answered that it did not "because it wasn't required." *Id*. at 15:12-19. Google later

13  admitted that it could distinguish between Google Account holders and non-Google Account

14  holders in ███████████, but only "if the data has not been purged and if the decryption key has not

15  been purged." *Id*. at 237:16-22. Google then admitted that, unless otherwise preserved, the

16  "functional look-back window ████████████████████████████████ to figure out who

17  that GAIA user is only ████████." *Id*. at 238:7-15. But, if "you want to preserve something, all bets

18  are off, with the limitation you still have the look-back window on the current data that's

19  available." *Id*. at 238:16-23.

20

21  _____

22  relevant ███████████ information at the outset of this case, it would have saved the Court from
    several motions and made the named plaintiff data much easier to understand. For example, rather

23  than ████████████████████████████████████████████████████████████████████

24  ███████████████████████████████████████████████████████████████████████
    ███████████████████████████████████████████████████████████████████████

25  ████████████████████████████.

26  [11] Google also admitted that when it is "processing" a "signed-out [RTB bid] request, the ████

27  ████████████████████ in the Biscotti logs in an encrypted form." Levine Decl., Ex. A
    at 223:24-224:3. However, because Google did not preserve or produce █████████████████

28  or any ███████████, plaintiffs do not have any such data to show to a jury.

On November 17, 2023, plaintiffs requested that Google produce four additional weeks of named plaintiff data from 2023 pursuant to the Court's other April 14, 2023 Order (ECF 484), including three weeks that should have fallen within the rolling ███ look-back window. The four weeks requested were January 7-14, March 18-25, June 2-9, and September 30-October 7, 2023. Levine Decl., ¶ 12. Had Google stopped destroying ████████████ when the April 14, 2023 Orders were issued, as it should have, Google would have had this data (and the related Biscotti IDs) for the March 18-25, June 2-9, and Sept. 30-October 7 dates. *Id.*, ¶ 13. And for the last set of dates (Sept. 30-Oct. 7), Google should have had ████████████ and Biscotti IDs for this week no matter what, since at the time it was requested in November 2023, this was well within the ████ retention period for that data. *Id.*

Google did not respond to plaintiffs' November 17 request in November or December 2023. Levine Decl., ¶ 14. On January 4, 2024, plaintiffs again asked for a response from Google and Google again failed to respond. *Id.*, ¶ 15. On January 10, 2024, plaintiffs told Google that if it did not respond by the next day, plaintiffs would seek relief from the Court. *Id.*, ¶ 16. On January 11, 2024, almost two months after plaintiffs' request and just as the ████ look-back window had run on the ████████████, Google finally responded. *Id.*, ¶ 17. In its response, Google agreed to produce named plaintiff data for the four weeks in 2023 that plaintiffs had requested. With respect to the Biscotti IDs and joining keys (including ████████████ Google once again refused to produce this data, falsely claiming that Google did not know what joining keys plaintiffs were requesting or why this information was necessary to prosecute plaintiffs' claims. *Id.*

On January 12, 2024, plaintiffs asked Google to confirm whether the joining ████████ ████ but Google was refusing to produce them (as Google's letter indicated) or whether the ████ ████████████ Levine Decl., ¶ 18. Google did not respond to this either. *Id.*, ¶ 19. It took Google another six weeks, until February 28, 2024, to finally admit that Google was not producing Biscotti IDs and ████████████ (or any other joining keys) for the 2023 dates because by the time Google produced the 2023 named plaintiff data on February 9, 2024, the ████████████.

PLAINTIFFS' NOTICE OF MOT. AND MOT. FOR CONTEMPT AND SANCTIONS

1    *Id.* Google purposefully ran out the ███████ clock so that the four time slices (the last one ending

2    on October 7, 2023) could no longer contain Biscotti IDs and ███████████████████ .

3         Google did not stop deleting ███████████████████ after the Court's April 14, 2023 Order

4    or even after plaintiffs requested that data for four weeks in 2023. Google appears to have

5    intentionally dragged out the meet and confer process on ███████████ for more than ███████ to

6    ensure that when the named plaintiff data was finally produced in February 2024 (months late) and

7    Google finally responded to plaintiffs about the Biscotti IDs and joining keys, the response would

8    necessarily be that ███████████████████████████████████████ and therefore

9    the Biscotti IDs also could not be produced. But this is so only because Google intentionally failed

10   to stop spoliating data the Court already had ordered to be produced and that plaintiffs already had

11   specifically requested, particularly with respect to the Sept. 30-Oct. 7, 2023 week of data, which

12   was well within the ███████ retention period at the time plaintiffs requested the data.

13        Google's conduct is a violation of the Court's April 14 and May 16, 2023 Orders, of

14   Google's discovery obligations under the Federal Rules, and of Google's and its counsel's ethical

15   obligations and responsibilities as representatives of a party and as officers of this Court. Google

16   and its counsel's conduct should not be viewed in a vacuum. Google is an extremely sophisticated

17   and well-versed corporate litigant represented by one of the largest and most sophisticated law

18   firms in the country. They know how to maintain and produce relevant discovery. That Google

19   has not done so here, willfully and contemptuously, and then hid that fact from plaintiffs and the

20   Court for as long as possible, speaks volumes about not only Google, but also the importance of

21   the data Google has now willfully and knowingly spoliated. It is also entirely consistent with

22   Google's pattern and practice in this District of engaging in sanctionable and contemptuous

23   discovery misconduct. Google has been sanctioned for discovery abuse in this District at least six

24   times in no fewer than five other cases, and this pattern and practice should also be taken into

25   consideration by the Court here.[12]

26   

27   [12] *See In re Google Play Store Antitrust Litig.*, 664 F. Supp. 3d 981, 992-94 (N.D. Cal. 2023);

28   *Brown v. Google LLC*, Case No. 20-cv-03664-YGR (SVK), ECF 918 (N.D. Cal. April 4, 2023);

### III.    ARGUMENT

"Modern instruments of discovery" are designed to make litigation "a fair contest with the basic issues and facts disclosed to the fullest possible extent." *Fausto v. Credigy Servs. Corp.*, 251 F.R.D. 436, 439 (N.D. Cal. 2008) (quoting *United States v. Procter & Gamble Co.*, 356 U.S. 677, 682 (1958)). When parties do not live up to their discovery obligations, the district court "may, within reason, use as many and as varied sanctions as are necessary to hold the scales of justice even." 8B *Federal Practice and Procedure* § 2284 (3d ed. 2022 update). Federal courts have the power to sanction litigants for discovery misconduct under both the Federal Rules of Civil Procedure and the court's inherent power to prevent abusive litigation practices. *See Leon v. IDX Sys. Corp.,* 464 F.3d 951, 958 (9th Cir. 2006).

When a party violates a discovery order, Rule 37(b)(2)(A) authorizes a variety of sanctions. For the most serious cases of disobedience, courts may dismiss claims or an action, render a default judgment, or hold the party in contempt of court for failing to obey a court order. Fed. R. Civ. P. 37(b)(2)(A)(v)–(vii). In other cases, they may strike pleadings, direct that certain matters or facts be deemed "established for purposes of the action," preclude a disobedient party from making certain arguments or introducing certain evidence. Fed. R. Civ. P. 37(b)(2)(A)(i)–(ii).

Evidentiary sanctions are available under Rule 37(e) when electronically stored information that should have been preserved is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, and the court finds that the party acted with the intent to deprive another party of the information's use in the litigation. Fed. R. Civ. P. 37(e). Sanctions may include a presumption that the lost information was unfavorable to the party, or an instruction to the jury that it may or must preserve the information was unfavorable to the party. *Id.*

---

*Brown v. Google LLC*, 2022 WL 2789897, at *1-2 (N.D. Cal. July 15, 2022); *Calhoun v. Google LLC*, 2022 WL 1987864, at *1–2 (N.D. Cal. June 6, 2022); *Woods v. Google*, 2014 WL 3909527, at *3 (N.D. Cal. Aug. 8, 2014); *In re Google Litig.*, 2011 WL 5190831, at *4-6 (N.D. Cal. Oct. 31, 2011).

Sanctions are also available under Rule 16(f)(l), which provides that a "court may issue any just orders ... if a party or its counsel . . . fails to obey a scheduling or other pretrial order." Fed. R. Civ. P. 16(f)(l)(C). Rule 16 is "broadly remedial and its purpose is to encourage forceful judicial management." *Cato v. Fresno City*, 234 F.3d 1276, 1276 (9th Cir. 2000) (citation omitted). A court may order sanctions under Rule 16 for violation of an order where "[d]isregard of the order would undermine the court's ability to control its docket, disrupt the agreed-upon course of the litigation, and reward the indolent and the cavalier." *Johnson v. Mammoth Recreations, Inc.,* 975 F.2d 604, 610 (9th Cir. 1992).

Additionally, "discovery misconduct may be punished under the court's 'inherent powers' to manage its affairs." *Guifu Li v. A Perfect Day Franchise, Inc*, 281 F.R.D. 373, 396 (N.D. Cal. 2012) (quoting *Unigard Sec. Ins. Co. v. Lakewood Eng. Mfg. Corp*., 982 F.2d 363, 368 (9th Cir. 1992)). That inherent power embraces all the sanctions available under Rule 37. As the case law notes, sanctions under the inherent power are analyzed using the same test as those under Rule 37. *Leon v. IDX Sys. Corp*., 464 F.3d 951, 958 (9th Cir. 2006); *see also Adriana Int'l Corp. v. Thoeren*, 913 F.2d 1406, 1412 n.4 (9th Cir. 1990) (making use of cases involving Rule 37 and the inherent power "interchangeably").

The Court may also take general deterrence into account in imposing sanctions. That is because one of the objectives of discovery sanctions is "generally deterring flagrant disobedience and callous disregard of court discovery orders." *United States v. Sumitomo Marine & Fire Ins. Co.*, 617 F.2d 1365, 1370 (9th Cir. 1980) (citing *Nat'l Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639, 643 (1976) (per curiam)).

To hold a party in contempt, a court must find by clear and convincing evidence that the party violated a specific and definite order and that it had sufficient notice of its terms and the fact that it would be sanctioned if it did not comply. *See Harmon v. City of Santa Clara*, 323 F.R.D. 617, 626 (N.D. Cal. 2018) (citing *F.T.C. v. Affordable Media*, 179 F.3d 1228, 1239 (9th Cir. 1999)). Plaintiffs move the Court for an order of contempt against Google in light of its knowing and willful failure to maintain and produce Biscotti IDs and ████████████████ for 2023 after

1    this Court ordered that data to be produced in April and May 2023 and after plaintiffs requested

2    that it be produced in November 2023.

3         Granting contempt sanctions against Google is warranted here because Google has violated

4    specific and definite orders. In its April 14 Order, the Court directed Google to produce GAIA

5    IDs, Google User IDs (Biscotti IDs) and joining key data (which necessarily includes the ███

6    ████████████ for all past and future productions of named plaintiff data. *See* ECF 487 at 7

7    ("Google must take care that all of its productions of named plaintiff data can be easily correlated,

8    and it must include the fields necessary to accomplish this result. During the hearing, Google

9    acknowledged that it could include the Google Account ID, Google User ID, and "joining keys"

10   without undue burden, and the Court expects that it will do so, including remedying its prior

11   productions that omit this information"). In its May 16 Order, the Court again emphasized the

12   importance of the joining keys in ████████████████████████████████████████

13   ████ and instructed Google to investigate whether Biscotti IDs could be produced together

14   with GAIA IDs for all named plaintiff data, and if not, to work with plaintiffs to determine whether

15   "any reasonable alternatives exist for the production of the same or similar information." ECF 510

16   at 2-3. Google did not produce Biscotti IDs ████████████████ (because the joining keys were

17   not maintained for any of the dates requested by plaintiffs) and never worked with plaintiffs to

18   determine whether other alternatives existed to get plaintiffs the information they need for trial, as

19   instructed by the Court.

20        Google did not comply with the April 14 and May 16 Orders with respect to either the

21   Biscotti IDs or the joining keys. It produced no such data for its 2021 and 2022 productions of

22   named plaintiff data and failed to retain and thus destroyed joining keys during 2023 to ensure that

23   it would not have to produce Biscotti IDs and joining keys for its 2023 production of named

24   plaintiff data either. Google's contempt is made even worse by the fact that Google and its counsel

25   tried to hide these facts from plaintiffs and Court, resulting in costly, time-consuming, and

26   completely unnecessary motion practice directed to the Biscotti IDs and joining keys. Rather than

27   come clean, Google and its counsel forced plaintiffs into months of pointless meet and confer

28

PLAINTIFFS' NOTICE OF MOT. AND MOT. FOR CONTEMPT AND SANCTIONS

negotiations over discovery that Google and its counsel knew no longer existed. Google then burdened the Court with multiple rounds of briefing and multiple hearings about discovery that either no longer existed or that Google had no intention of retaining in the future. Google and its counsel took a cavalier attitude to their ethical disclosure obligations to opposing counsel, which the Court should also take into consideration in determining whether to hold Google in contempt.

Google's conduct is plainly willful and knowing and should be sanctioned. Google should have stopped destroying joining keys back in May 2021, after plaintiffs served RFP 42, but did not do so, even when it was representing to the Court that it was. It had a second, even clearer opportunity to stop doing so after the Court's April 14 Order that specifically directed Google to produce such data. Google again did nothing. This was a willful and knowing decision by Google not to comply at that point in time. But, even if Google's actions were *not* willful, contempt sanctions would still be appropriate here in light of Google' violation of the Court's orders. *See In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d 693, 695 (9th Cir. 1993) ("Civil contempt in . . . consists of a party's disobedience to a specific and definite court order by failure to take all reasonable steps within the party's power to comply. The contempt need not be willful, and there is no good faith exception to the requirement of obedience to a court order") (internal quotation omitted).

In addition to holding Google in contempt, evidentiary sanctions under Fed. R. Civ. P. 37(e) also should be imposed on Google in the form of an order preventing Google from making any arguments about plaintiffs' inability to link RTB bid request data with Google account information for signed-out Google account holders in any summary judgment motion or at trial in this matter. Courts impose evidentiary sanctions when monetary sanctions remain inadequate. *See Guifu Li v. A Perfect Day Franchise, Inc.*, 2011 WL 3895118, at *3 (N.D. Cal. Aug. 29, 2011) (imposing evidentiary sanctions to remedy prejudice of "information withheld from Plaintiffs [that] could very well bear on whether or not Plaintiffs are able to establish commonality of issues across the putative class"). Here, monetary sanctions are plainly inadequate because relevant evidence necessary for plaintiffs' case has been spoliated. *See also Clear-View Tech., Inc., v.*

PLAINTIFFS' NOTICE OF MOT. AND MOT. FOR CONTEMPT AND SANCTIONS

*Rasnick*, 2015 WL 2251005 at *7-8 (evidentiary and monetary sanctions warranted given defendants' protracted and needless delays that frustrated discovery process); *Dong Ah Tire & Rubber Co., Ltd. v Glasforms, Inc.*, 2009 WL 1949124, *10 *adopted in part and modified in part* 2009 WL 2485556, *4 (N.D. Cal. Jul. 2, 2009) (evidentiary sanctions for failure to preserve evidence).

Finally, Google's spoliation of evidence raises a presumption that the destroyed evidence goes to the merits of the case, and further, that such evidence was adverse to the party that destroyed it. *See, e.g. Phoceene Sous–Marine, S.A. v. U.S. Phosmarine, Inc.,* 682 F.2d 802, 806 (9th Cir. 1982); *Nat'l Ass'n of Radiation Survivors v. Turnage,* 115 F.R.D. 543, 557 (N.D. Cal. 1987) ("Where one party wrongfully denies another the evidence necessary to establish a fact in dispute, the court must draw the strongest allowable inferences in favor of the aggrieved party"). As a further sanction, the jury should be instructed that Google destroyed relevant joining key data and failed to produce Biscotti IDs in violation of Court orders and failed to disclose this in a timely manner, and that the jury may infer from Google's conduct that the evidence that Google failed to maintain and produce was not helpful to Google and would have been favorable to plaintiffs.

## IV.    CONCLUSION

For the foregoing reasons, the Court should hold Google in contempt for knowing and willful violation of the Court's April 14 and May 16 Orders and impose evidentiary sanctions against Google for knowing and willful failure to maintain and produce Biscotti IDs and ████ ██████████ in 2023 after they were ordered to be produced by the Court and requested by plaintiffs. Google should be prevented from making any arguments based on the lack of Biscotti IDs and joining key data in favor of summary judgment or at trial in this matter. At trial, the also jury should be instructed that Google spoliated evidence and that the jury should infer from that spoliation that the evidence would have been favorable to plaintiffs and harmful to Google.

DATED:  April 19, 2024                          Respectfully submitted,

                                                **PRITZKER LEVINE LLP**

                                                By: */s/ Jonathan K. Levine*

1
2
3
4
5
6
7
Elizabeth C. Pritzker (Cal. Bar No.146267)
Jonathan K. Levine (Cal. Bar No. 220289)
Bethany Caracuzzo (Cal. Bar No. 190687)
Caroline Corbitt (Cal Bar No. 305492)
1900 Powell Street, Ste. 450
Oakland, CA 94602
Tel.: (415) 692-0772
Fax: (415) 366-6110
*ecp@pritzkerlevine.com*
*jkl@pritzkerlevine.com*
*bc@pritzkerlevine.com*
*ccc@pritzkerlevine.com*

8
9
*Interim Class Counsel*

10
11
12
13
14
15
**BLEICHMAR FONTI & AULD LLP**
Lesley Weaver (Cal. Bar No.191305)
Anne K. Davis (Cal. Bar No. 267909)
Joshua D. Samra (Cal. Bar No. 313050)
1330 Broadway, Suite 630
Oakland, CA 94612
Tel.: (415) 445-4003
Fax: (415) 445-4020
*lweaver@bfalaw.com*
*adavis@bfalaw.com*
*jsamra@bfalaw.com*

16
17
18
19
20
21
**SIMONS HANLY CONROY LLC**
Jason 'Jay' Barnes (admitted *pro hac vice*)
An Truong (admitted *pro hac vice*)
112 Madison Avenue, 7th Floor
New York, NY 10016
Tel.: (212) 784-6400
Fax: (212) 213-5949
*jaybarnes@simmonsfirm.com*
*atruong@simmonsfirm.com*

22
23
24
25
26
27
**DICELLO LEVITT LLP**
David A. Straite (admitted *pro hac vice*)
James Ulwick (admitted *pro hac vice*)
485 Lexington Avenue, Suite 1001
Tel.: (212) 784-6400
Fax: (212) 213-5949
New York, NY 10017
Tel: (646) 993-1000
*dstraite@dicellolevitt.com*
*julwick@dicellolevitt.com*

28

Case No. 4:21-CV-02155-YGR-VKD
PLAINTIFFS' NOTICE OF MOT. AND MOT. FOR CONTEMPT AND SANCTIONS

**COTCHETT PITRE & MCCARTHY, LLP**
Nancy E. Nishimura (Cal. Bar No. 152621)
Brian Danitz (Cal Bar. No. 247403)
Karin B. Swope (admitted *pro hac vice*)
840 Malcolm Road
Burlingame, CA 94010
Tel.: (650) 697-6000
nnishimura@cpmlegal.com
bdanitz@cpmlegal.com
kswope@cpmlegal.com

**BOTTINI & BOTTINI INC.**
Francis A. Bottini, Jr. (Cal. Bar No. 175783)
7817 Ivanhoe Ave., Ste. 102
LA Jolla, CA 92037
Tel.: (848) 914-2001
fbottini@bottinilaw.com

*Plaintiffs' Executive Committee*