# ANSORGE EXHIBIT 1

# Redacted Version of Document Sought to be Sealed

```
 1              UNITED STATES DISTRICT COURT

 2             NORTHERN DISTRICT OF CALIFORNIA

 3                  SAN JOSE DIVISION

 4

 5   PATRICK CALHOUN, ELAINE CRESPO, )

     HADIYAH JACKSON and CLAUDIA     )

 6   KINDLER, on behalf of all       )

     others similarly situated,      )

 7                                    )

             Plaintiffs,             )

 8                                    )

             vs.                     ) Case No.

 9                                   ) 5:20-cv-5146-LHK

     GOOGLE LLC,                     )

10                                    )

             Defendant.              )

11   _____ )

12

13

14

15        VIRTUAL VIDEOCONFERENCE VIDEO-RECORDED

16             DEPOSITION OF DAVID MONSEES

17

18             Friday, April 9, 2021

19      Testifying from San Francisco, California

20

21

22

23   Reported By:

24   Hanna Kim, CLR, CSR No. 13083

25   Job No. 4530995
```

Page 1

```
 1        UNITED STATES DISTRICT COURT
 2      NORTHERN DISTRICT OF CALIFORNIA
 3           SAN JOSE DIVISION
 4
 5  PATRICK CALHOUN, ELAINE CRESPO, )
    HADIYAH JACKSON and CLAUDIA    )
 6  KINDLER, on behalf of all      )
    others similarly situated,     )
 7                                 )
          Plaintiffs,              )
 8                                 )
          vs.                      ) Case No.
 9                                 ) 5:20-cv-5146-LHK
    GOOGLE LLC,                    )
10                                 )
          Defendant.              )
11  _____ )
12
13
14
15      Virtual videoconference video-recorded
16      deposition of DAVID MONSEES, taken on
17      behalf of the Plaintiffs, testifying from
18      San Francisco, California, on Friday,
19      April 9, 2021, before Hanna Kim, CLR, CSR
20      No. 13083.
21
22
23
24
25
                                        Page 2
```

```
 1  REMOTE VIDEOCONFERENCE APPEARANCES (CONTINUED)
 2
 3  For Plaintiffs:
 4      SIMMONS HANLY CONROY LLC
 5      BY:  JASON "JAY" BARNES, ESQ.
 6      BY:  AN TRUONG, ESQ.
 7      112 Madison Avenue, 7th Floor
 8      New York, New York 10016
 9      212.784.6400
10      jaybarnes@simmonsfirm.com
11      atruong@simmonsfirm.com
12
13  For Defendant Google LLC:
14      QUINN EMANUEL URQUHART & SULLIVAN
15      BY:  ANDREW H. SCHAPIRO, ESQ.
16      191 N. Wacker Drive, Suite 2700
17      Chicago, Illinois 60606
18      312.705.7400
19      andrewschapiro@quinnemanuel.com
20      -and-
21      BY:  JOSEF ANSORGE, PH.D.
22      1300 I Street NW, Suite 900
23      Washington, D.C. 20005
24      202.538.8000
25      josefansorge@quinnemanuel.com
                                        Page 4
```

```
 1  REMOTE VIDEOCONFERENCE APPEARANCES OF COUNSEL:
 2
 3  For Plaintiffs:
 4      BLEICHMAR FONTI & AULD LLP
 5      BY:  LESLEY WEAVER, ESQ.
 6      BY:  ANGELICA M. ORNELAS, ESQ.
 7      555 12th Street, Suite 1600
 8      Oakland, California 994607
 9      415.445.4003
10      lweaver@bfalaw.com
11      aornelas@bfalaw.com
12      -and-
13      KAPLAN FOX & KILSHEIMER LLP
14      BY:  DAVID A. STRAITE, ESQ.
15      850 Third Avenue
16      New York, New York 10022
17      212.687.1980
18      dstraite@kaplanfox.coma
19
20
21
22
23
24
25
                                        Page 3
```

```
 1  REMOTE VIDEOCONFERENCE APPEARANCES (CONTINUED)
 2
 3  Also Present:
 4      JOHN JANHUNEN, ESQ., Google LLC
 5      RON LAZO, Videographer
 6
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
                                        Page 5
```

2 (Pages 2 - 5)

Page 310

```
 1    Q.   In reviewing your personal data, what are
 2  categories of personal data that a Googler can see
 3  that a [verbatim] average user cannot?
 4        MR. SCHAPIRO:  And I'm going to object
 5  that this is beyond the scope.           04:09:50
 6        THE WITNESS:  I -- a -- a -- Googlers, as
 7  you can imagine, to develop systems need to be able
 8  to see the data the systems produce, and so that's
 9  why Googlers can look at their own data and an
10  engineer can see the output of the software that   04:10:04
11  they're developing.
12        Users do not see their raw log data.  We
13  go through systems to try to generate an equivalent
14  like the My Activity log described so that users
15  have a comprehensible, clear representation of data  04:10:20
16  that might be in a number of logs.
17  BY MS. WEAVER:
18    Q.   Can Googlers can see the derived and
19  inferred data?
20    A.   Yes, in the -- forms, whatever forms   04:10:32
21  that -- that that might exist in.  And,
22  again, I think depending on systems or
23  permissions, yes.
24    Q.   Can Googlers see how personalization is
25  happening to them?                       04:10:47
```
Page 310

```
 1        MR. SCHAPIRO:  Same objection on scope.
 2        THE WITNESS:  I -- I think we're kind of
 3  getting out of scope of logs and your personal
 4  data.  But a Google software engineer developing a
 5  personalization system I would expect could see the  04:11:01
 6  model that -- that might execute and the output of
 7  that model running across their data, though I just
 8  want to be clear that I -- I don't think that would
 9  look like something you could read easily in like a
10  log format.  It -- it would be a -- a model output.  04:11:18
11  BY MS. WEAVER:
12    Q.   Okay.  Looking below that, do you see
13  where it says "Re-identifying logs data"?
14    A.   I do.
15    Q.   And it says, "Much of Google's logs data   04:11:27
16  is pseudonymous under Google's Data Categorization
17  Guidelines."
18        And then it says, "You must not
19  re-identify any individuals from Anonymous or
20  Pseudonymous data, in accordance with the User   04:11:44
21  Data Anonymization Policy."
22        Do you see that?
23    A.   I do.
24    Q.   So the rule is that Googlers may not
25  reidentify logs data; is that right?     04:11:51
```
Page 311

```
 1    A.   Correct.  It violates policies that anyone
 2  accessing logs must agree to.
 3    Q.   And what's the reason for the rule --
 4  well, let me strike -- let me ask a different
 5  question.                                04:12:09
 6        It is possible to reidentify log's data
 7  identification?
 8    A.   It -- it depends on the log, I think.  As
 9  we discussed previously, the whole point of
10  pseudonymous is that it's not associated with an   04:12:18
11  individual.  But there could be a probabilistic
12  risk, which is why we create policies and systems
13  in place that make approaches that you could do
14  that, either incredibly different -- difficult
15  against policy or even technically, impossible   04:12:36
16  where we can.
17    Q.   Okay.  And do you see where it says "you
18  must not correlate authenticated and
19  non-authenticated information."
20        Do you see that?                   04:12:50
21    A.   Yes, I do.
22    Q.   So the rule is, you cannot correlate Gaia
23  and non-Gaia information; is that right?
24    A.   That -- that would be an example of that,
25  yes.                                     04:13:00
```
Page 312

```
 1    Q.   And so it says "Do not correlate
 2  authenticated gaia-signed-in user identity or data
 3  with non-authenticated user identifiers, such as
 4  Zwieback or or Biscotti cookies."
 5        Do you see that?                   04:13:13
 6    A.   Yes.
 7    Q.   And what's the reason for that rule?
 8    A.   Well, an anonymous or pseudonymous cookie
 9  ID would not be pseudonymous if someone was to
10  correlate it with a user identity, like a gaia ID.   04:13:24
11  So we have policies and systems to prevent that
12  from happening.
13    Q.   And do you see it says "For example, do
14  not lift link ████ IDs to PII without approval
15  from PWG"?                               04:13:38
16    A.   Yes, I do.
17    Q.   What is PII?
18    A.   In this context, I would assume,
19  personally identifiable information.
20    Q.   And can you give examples of that?   04:13:43
21    A.   A user's name or a phone number, or an
22  e-mail address is traditionally thought of as PII.
23    Q.   And we discussed ████ IDs earlier.
24  It's my recollection that you could not recall
25  precisely what it is; is that correct?   04:14:00
```
Page 313

1    A.    That's correct.
2    Q.    Is -- has your memory been refreshed at
3  all about ████ IDs?
4    A.    No.
5    Q.    Okay.  What is fingerprinting?        04:14:11
6    A.    Sorry.  To clarify, in -- in the context
7  of this document -- log-in document?
8    Q.    No.  Just in general.
9    A.    Fingerprinting is a method, I think,
10  developed in the 1800s to try to identify an        04:14:26
11  individual from the --
12    Q.    Please, are you kidding?  I did not mean
13  Sherlock Holmes.  Okay.
14    A.    What is the matter?
15    Q.    What is finger- -- fine.  Let's take a        04:14:37
16  break.
17        So what is fingerprinting as the term is
18  used within Google?
19    A.    With -- within Google, and -- and I think
20  outside, fingerprinting is typically referred to a        04:14:49
21  combination of different signals that may
22  determine or reidentify an individual.
23    Q.    So why is it Google's policy that you must
24  not fingerprint users for the purpose of
25  associating a user's activity over time or across        04:15:09

Page 314

1  contexts tracking?
2    A.    That would violate our policies and, I
3  think, statements to our users and regulators.
4    Q.    And what are the statements that would
5  violate?        04:15:24
6    A.    I would need to look in the Google privacy
7  policy.
8        MR. SCHAPIRO:  Objection.  Beyond the
9  scope.  Also, calls for a legal conclusion.
10        THE COURT REPORTER:  I'm sorry, I can't        04:15:40
11  hear you.
12        MR. SCHAPIRO:  Also -- I said, also, calls
13  for a legal conclusion.
14  BY MS. WEAVER:
15    Q.    Turning to the next page ending in Bates        04:15:45
16  number '765.  I'm looking halfway below the page,
17  do you see the sentence that begins with "Data
18  derived from logs"?
19    A.    Yes, I do.
20    Q.    Is it Google's policy that data derived        04:16:00
21  from logs should only be stored in the same
22  geography?
23    A.    That's what I read.
24    Q.    And -- and so copies of logs, data stored
25  in the U.S. must also -- derived data must also be        04:16:17

Page 315

1  stored in the U.S.?
2    A.    Specific to derived data from logs, I
3  would assume yes, from this policy.
4    Q.    And would that include inferred data as
5  well?        04:16:27
6    A.    Yes, I would assume so, unless it's been
7  anonymized as -- as this states.
8    Q.    Okay.  Okay.
9        MS. WEAVER:  We can move on.  Let's mark
10  as Exhibit 17, a document bearing Bates -- or        04:16:53
11  beginning with '27536 through '545.
12        Do you recognize Exhibit 17.
13    A.    Sorry, I'm -- I'm waiting for Exhibit
14  Share to refresh.
15        MR. SCHAPIRO:  Me too.        04:17:29
16        THE WITNESS:  Okay.  Yes, I do.
17        (Monsees Deposition Exhibit 17 was
18        marked.)
19  BY MS. WEAVER:
20    Q.    What is it?        04:17:32
21    A.    This is taken from a Google internal site
22  page from the Chrome user trust site, specific to
23  Chrome logs.
24    Q.    Thank you.
25        And turning to the page ending with Bates        04:17:43

Page 316

1  number '537.
2    A.    Okay.
3    Q.    It says -- do you see where it says
4  "Personalization Use"?
5    A.    Yes, I do.        04:18:02
6    Q.    And it says "The following points must be
7  considered when designing a use case for analysis
8  of browsing history to support personalization."
9        Do you see that?
10    A.    I do.        04:18:14
11    Q.    And four bullet points down, it says "Any
12  user profile built using Chrome History must
13  respect the user's browsing history clearing
14  within 24 hours (max) if the deletion takes place
15  on individual browsing history entries."        04:18:28
16        Do you see that?
17    A.    I do.
18    Q.    What is a user profile?
19    A.    Just to -- to clarify for scope, this is
20  to do with signed in Chrome sync on history users,        04:18:37
21  so this is a -- not do do with sync-off users.
22        Do you want me to answer the question.
23    Q.    Yes.  Do you recall that Ms. Crespo had
24  some not sync log history, even though she was not
25  synched for part of the time period?        04:19:02

Page 317

80 (Pages 314 - 317)

1    A.  Oh, I -- I am -- I am not sure what a -- a
2  per e-mail cost is.  I believe it's quite low to
3  send a -- an individual e-mail.
4    Q.  Okay.  Thank you.
5    MS. WEAVER:  No further questions --    05:19:48
6  questions for this witness at this time.  This
7  deposition will remain open.
8    MR. SCHAPIRO:  So we of course don't agree
9  to holding it open, but we want to -- we'll take a
10  few minutes and -- and come back and do some    05:20:04
11  redirect if -- if we think we want to do that.  So
12  why don't we come back in five minutes.
13    MS. WEAVER:  Sounds good.
14    MR. SCHAPIRO:  25 past.
15    THE VIDEOGRAPHER:  We're now going off the  05:20:20
16  record.  The time is 5:20 p.m., Pacific Daylight
17  Time.
18    (Short recess taken.)
19    THE VIDEOGRAPHER:  We are now back on the
20  record.  The time is 5:33 p.m., Pacific Daylight    05:33:20
21  Time.
22    MR. SCHAPIRO:  So we have no questions for
23  the witness.
24    Mr. Monsees, thank you very much for your
25  time.    05:33:31

Page 354

---

1    Lesley, et al., wonderful to see you as
2  always.
3    MS. WEAVER:  Yeah, and I want to thank the
4  witness very much.  I know this isn't fun and
5  especially not alone in your room.  Thank you.    05:33:43
6    And thanks very much to all of you
7  supporting the deposition, Ms. -- Ms. Kim and our
8  videographer.
9    MR. SCHAPIRO:  I second that.
10    MS. WEAVER:  Okay.  And --    05:33:54
11    THE VIDEOGRAPHER:  This -- this concludes
12  today's testimony given by David Monsees, 30(b)(6)
13  witness, Google LLC.
14    The number of media units used was one and
15  will be retained by Veritext.  The time is    05:34:06
16  5:34 p.m., Pacific Daylight Time.  We are now off
17  the record.
18    (Proceedings concluded, 5:34 p.m.)
19
20
21
22
23
24
25

Page 355

---

1    JURAT
2
3    I, DAVID MONSEES, do hereby certify under
4  penalty of perjury that I have read the foregoing
5  transcript of my deposition taken on the 9th day of
6  April, 2021; that I have made such corrections as
7  appear noted herein in ink, initialed by me; that
8  my testimony as contained herein, as corrected, is
9  true and correct.
10
11    Dated this _____ day of _____, 2021,
12  at _____.
13
14
15
16
17
18    _____
      DAVID MONSEES
19
20
21
22
23
24
25

Page 356

---

1    CERTIFICATE OF REPORTER
2    I, Hanna Kim, a Certified Shorthand
3  Reporter, do hereby certify:
4    That prior to being examined, the witness
5  in the foregoing proceedings was by me duly sworn
6  to testify to the truth, the whole truth, and
7  nothing but the truth;
8    That said proceedings were taken before me
9  at the time and place therein set forth and were
10  taken down by me in shorthand and thereafter
11  transcribed into typewriting under my direction and
12  supervision;
13    I further certify that I am neither
14  counsel for, nor related to, any party to said
15  proceedings, not in anywise interested in the
16  outcome thereof.
17    Further, that if the foregoing pertains to
18  the original t          f           in a
19  federal case,                    proceedings,
20  review of the                 s not
21  requested.
22    In witn                       nto
23  subscribed n
24  Dated: April
25                Hanna Kim, CLR, CSR No. 13083

Page 357

Veritext Legal Solutions
866 299-5127

| 1 | ERRATA SHEET FOR THE TRANSCRIPT OF: |
| 2 | Case Name: CALHOUN, ET AL. vs. GOOGLE LLC |
| 3 | Dep. Date: 04/09/2021 |
| 4 | Deponent: DAVID MONSEES |
| 5 | CORRECTIONS: |

| 6 | Pg. | Ln. | Now Reads | Should Read | Reason |
|---|---|---|---|---|---|
| 7 | 22 | 23 | Harding | Harting | Incorrect spelling |
| 8 | 25 | 7 | Schumman | Schuman | Incorrect spelling |
| 9 | 26 | 18 | Bob Kee | Bob Cui | Incorrect spelling |
| 10 | 54 | 16 | zwbk | Zwieback | Full word used |
| 11 | 89 | 10 | sends to | since to | Words used |
| 12 | 94 | 2 | pseudonymous for cookie ID | pseudonymous cookie ID | Clarity |
| 13 | 117 | 24 | know if their users | know if they're users | Incorrect spelling |
| 14 | 191 | 1 | Schulman | Schuman | Incorrect spelling |
| 15 | 192 | 6 | Schulman | Schuman | Incorrect spelling |
| 16 | 307 | 1 | Gilke | Golueke | Incorrect spelling |
| 17 | 327 | 11 | actually have the product | actually as the product | Words used |
| 18 | 353 | 14 | for now error on | for now err on | Words used |

| 19 | |
| 20 | Signature of Deponent |



21   SUBSCRIBED AND SWORN BEFORE ME

22   THIS 19th DAY OF __May__ , 2021.

23   _____

24   (Notary Public) MY COMMISSION EXPIRES:

25   October 2, 2022

This notarial act was an online notarization.    Page 358

GEORGE W POLETES
Notary Public
STATE OF TEXAS
Notary I.D. 13174447-9
My Comm. Exp. Oct. 2, 2022

Veritext Legal Solutions
866 299-5127

# ANSORGE EXHIBIT 2

# Unredacted Version of Document Sought to be Sealed

1                UNITED STATES DISTRICT COURT

2              NORTHERN DISTRICT OF CALIFORNIA

3                  SAN JOSE DIVISION

COPY

5   PATRICK CALHOUN, ELAINE CRESPO,  )  C-20-05146 LHK
    HADIYAH JACKSON, AND CLAUDIA     )
6   KINDLER, ON BEHALF OF            )  SAN JOSE, CALIFORNIA
    THEMSELVES AND ALL OTHERS        )
7   SIMILARLY SITUATED,              )  APRIL 29, 2021
                                     )
8                    PLAINTIFFS,     )  PAGES 1-70
                                     )
9              VS.                   )  **SEALED PROCEEDINGS**
                                     )
10  GOOGLE LLC,                      )
                                     )
11                   DEFENDANT.      )
    _____ )

12

13

14          TRANSCRIPT OF SEALED ZOOM PROCEEDINGS
         BEFORE THE HONORABLE SUSAN VAN KEULEN
15             UNITED STATES MAGISTRATE JUDGE

16

17   A P P E A R A N C E S:

18   FOR THE PLAINTIFFS:     SIMMONS HANLY CONROY LLC
                             BY:  JASON "JAY" BARNES
19                           112 MADISON AVENUE, 7TH FLOOR
                             NEW YORK, NEW YORK  10016
20

21       APPEARANCES CONTINUED ON NEXT PAGE

22

23   OFFICIAL COURT REPORTER:     LEE-ANNE SHORTRIDGE, CSR, CRR
                                  CERTIFICATE NUMBER 9595
24

25       PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
         TRANSCRIPT PRODUCED WITH COMPUTER

1

2      APPEARANCES (CONTINUED)

3

4      FOR THE PLAINTIFFS:      KAPLAN FOX & KILSHEIMER LLP
                                BY:  DAVID A. STRAITE
5                               850 THIRD AVENUE
                                NEW YORK, NEW YORK  10022
6

7                               BLEICHMAR FONTI & AULD LLP
                                BY:  LESLEY WEAVER
8                                    ANGELICA ORNELAS
                                555 12TH STREET, SUITE 1600
9                               OAKLAND, CALIFORNIA  94607

10

11     FOR THE DEFENDANT:       QUINN EMANUEL URQUHART & SULLIVAN
                                BY:  ANDREW H. SCHAPIRO
12                              191 N. WACKER DRIVE, SUITE 2700
                                CHICAGO, ILLINOIS  60606
13

14                              BY:  STEPHEN A. BROOME
                                     VIOLA TREBICKA
15                              865 S. FIGUEROA STREET, 10TH FLOOR
                                LOS ANGELES, CALIFORNIA  90017
16

17                              BY:  JOMARIE A. CRAWFORD
                                     JOSEF ANSORGE
18                              51 MADISON AVENUE
                                NEW YORK, NEW YORK  10010
19

20                              BY:  JONATHAN TSE
                                50 CALIFORNIA STREET, FLOOR 22
21                              SAN FRANCISCO, CALIFORNIA  94111

22

23

24

25

1          THE OTHER TWO IDENTIFIERS THAT THEY PICKED OUT, ZWIEBACK

2     AND BISCOTTI -- AND HERE I'D WANT TO ADD THAT ZWIEBACK IS A

3     DELICIOUS GERMAN CRACKER, VERY TASTY -- THOSE IDENTIFIERS ARE

4     NOT AUTHENTICATED.  THEY'RE TIED TO THE DEVICE.

5          SO IF THERE'S A USER WHO SHARES A DEVICE, THAT -- THEY

6     WOULD HAVE THE SAME COOKIE.  WE CAN THINK OF THEM AS ALMOST

7     LIKE IT'S A LICENSE PLATE OR TEMPORARY REGISTRATION ON A

8     BROWSER.  MULTIPLE PEOPLE CAN DRIVE THAT BROWSER, AND IF WE SIT

9     DOWN AND THEN PRODUCE ALL THE INFORMATION ASSOCIATED WITH IT,

10    WE ARE NOT PRODUCING THE INFORMATION TIED TO THE INDIVIDUAL

11    USER.  THAT INFORMATION IS FOUND WITHIN THEIR GOOGLE ACCOUNTS,

12    AND THE SHORTHAND FOR THAT IS GAIA.

13         SO TO THE EXTENT PLAINTIFFS ARE REQUESTING THAT GOOGLE

14    PRODUCE GAIA INFORMATION, THEY HAVE -- WE HAVE ALREADY DONE SO

15    IN THE FORM OF THE MY ACTIVITY PRODUCTION, YOUR HONOR.

16              THE COURT:  SO WHAT IS GOOGLE'S PROPOSAL?

17         I'M JUST LOOKING FOR MY OTHER FILE.

18         WHAT IS GOOGLE'S PROPOSED COMPROMISE ON THIS?

19              MR. ANSORGE:  WELL, YOUR HONOR, ONCE WE RECEIVE THE

20    ADDITIONAL GAIA IDENTIFIERS OF THE NAMED PLAINTIFFS, THE

21    ADDITIONAL NEW NAMED PLAINTIFFS WHO HAVE BEEN ADDED -- AND I

22    DON'T BELIEVE WE'VE RECEIVED THOSE YET -- WE WOULD GO OUT AND

23    WE WOULD PRESERVE THE INFORMATION THAT'S READILY AVAILABLE FOR

24    THOSE ACCOUNT IDENTIFIERS.

25         OUR PROPOSAL IS THAT WE DO NOT USE AND GET INTO

1    UNAUTHENTICATED IDENTIFIERS.

2         WE WOULD ALSO -- TO THE EXTENT THAT COUNSEL IS REQUESTING

3    THAT WE JUST SIT DOWN AND PRODUCE ALL INFORMATION THAT WOULD BE

4    TIED TO A PARTICULAR I.P. ADDRESS, WE WOULD ALSO THINK THAT'S

5    INAPPROPRIATE.

6         SO WHAT WE WOULD LIKE TO DO IS FOCUS THE REQUESTS FOR DATA

7    THAT ARE ASSOCIATED WITH PLAINTIFFS TO DATA THAT WE CAN

8    AUTHENTICATE AS BEING ASSOCIATED WITH THOSE PLAINTIFFS, AND

9    THAT'S THE GOOGLE ACCOUNT DATA, THE GAIA INFORMATION, YOUR

10   HONOR.

11        THE COURT:  WHAT'S THE UN -- UNAUTHENTICATED,

12   MR. STRAITE, UNAUTHENTICATED DATA?

13        MR. STRAITE:  WELL, YOUR HONOR, SO --

14        THE COURT:  AUTHENTICATED DEVICES ARE IN THE I.P.

15   ADDRESSES.  SO YOU HAVE THE DATA PROFILE THAT IS TIED TO THIS

16   USER, MOSTLY BY NAME; YOU HAVE THE DEVICES, WHICH MAY BE

17   IDENTIFIED IN A VARIETY OF WAYS.  WHAT'S THE UNAUTHENTICATED

18   DATA?

19        MR. STRAITE:  SO WE DON'T KNOW WITH PRECISION, BUT

20   MOST IMPORTANTLY, WE DO KNOW IT INCLUDES PROFILES.  SO THE

21   INFERENCES AND OTHER INFORMATION THAT GOOGLE HAS ON EACH OF THE

22   NAMED PLAINTIFFS IS THE MOST IMPORTANT THING.

23        SO IT'S ALSO WEB BROWSING HISTORY AND DEVICE IDENTIFIERS.

24   IF THERE IS A DEVICE THAT'S LINKED TO A NAMED PLAINTIFF, WHILE

25   GOOGLE MAY SAY, WELL, THIS MAY ALSO BE YOUR SPOUSE IF THERE'S

1    TWO PEOPLE SHARING THE SAME DEVICE --

2           THE COURT:  RIGHT.

3           MR. STRAITE:  -- IT'S STILL RELEVANT AND IT NEEDS TO

4    BE PRODUCED IN THIS CASE.

5        WE CAN TALK LATER ABOUT THE VALUE OF THE INFORMATION

6    THAT'S LINKED TO A DEVICE IF IT'S SHARED BY TWO PEOPLE.

7        BUT WE HAVE PLAINTIFFS IN OUR CASE WHO DON'T SHARE

8    DEVICES.  SO FOR THEM, THE DEVICE IDENTIFIER IS THE PLAINTIFF

9    IDENTIFIER.  AND EVEN IF IT WEREN'T, IT'S STILL RELEVANT TO THE

10   CASE AND IMPORTANT TO SEE.

11       SO WHILE WE APPRECIATE THE OFFER TO SHOW US THE

12   AUTHENTICATED DATA THAT'S IN THE PUBLICLY AVAILABLE ACCOUNT,

13   THE MOST IMPORTANT DATA IN THIS CASE IS THE DATA THAT CAN'T BE

14   VIEWED PUBLICLY.  THAT'S THE MOST IMPORTANT THING FOR US TO

15   SEE, IN PARTICULAR, THE PROFILES.

16       I ALSO KNOW THAT FROM A TECHNICAL PERSPECTIVE, THIS

17   CONVERSATION I THINK WOULD BE HELPFUL IF WE JUST LET

18   JAY BARNES, IF YOUR HONOR IS OKAY WITH THAT, JUST SPEAK.  I BET

19   YOU HE CAN DO IT IN TWO SENTENCES THAT'LL GIVE US SOME CLARITY

20   ABOUT SOME ADDITIONAL IDENTIFIER INFORMATION.

21          MR. BARNES:  YOUR HONOR, YOU ASKED, WHAT ARE THEY

22   TALKING ABOUT WHEN THEY'RE TALKING ABOUT UNAUTHENTICATED?  I

23   BELIEVE WHAT THEY'RE TALKING ABOUT IS DATA THAT IS TIED TO A

24   SPECIFIC DEVICE.

25          NOW, IN TURN, GOOGLE TIES SPECIFIC DEVICES TO SPECIFIC

1      USERS.  WHAT THEY -- THEIR NOMENCLATURE IS, THOUGH, THAT IF

2      IT'S NOT IN GAIA, THAT IT IS UNAUTHENTICATED, EVEN IF GOOGLE

3      KNOWS GOOGLE HAS THE ABILITY TO KNOW THAT ONLY ONE USER HAS

4      EVER USED THAT DEVICE.

5           AND SO WHEN THEY SAY, OH, WE DON'T WANT TO GIVE THEM

6      UNAUTHENTICATED DATA, WHAT THEY'RE SAYING IS, WE DON'T WANT TO

7      GIVE THEM THE DATA THAT WE CAN TIE TO THE DEVICES THAT HAVE

8      BEEN IDENTIFIED AS CONNECTING TO THEIR GAIA ACCOUNTS AND FOR

9      WHICH WE HAVE PROVIDED IDENTIFIERS AND STORED COMMUNICATIONS

10     ACT AUTHORIZATIONS CONSISTENT WITH YOUR HONOR'S ORDER FROM A

11     FEW WEEKS AGO.

12          THIS IS THE PLAINTIFFS' DATA, YOUR HONOR.  THEY SIGNED

13     AUTHORIZATIONS TO RELEASE IT.  GOOGLE NEEDS TO GIVE IT TO THEM.

14          THE COURT:  ALL RIGHT.  OKAY.  THANK YOU.  THAT'S

15      HELPFUL.

16          I THINK THAT THE REQUEST IS APPROPRIATE FOR GOOGLE TO TURN

17     OVER THE INFORMATION IT HAS ON THE NAMED PLAINTIFFS, THE

18     PROFILE DATA, AND IF THERE IS MORE ROBUST PROFILE DATA THAT IS

19     CREATED FOR GOOGLE EMPLOYEES AND THAT -- THAT WOULD SEEM TO BE

20     THE APPROPRIATE LEVEL OF PRODUCTION, ALONG WITH THE DEVICE

21     DATA, WHETHER OR NOT IT'S -- WHETHER OR NOT IT CAN AUTHENTICATE

22     IT'S ONLY USED BY THIS PLAINTIFF, BUT ANY DEVICE DATA

23     ASSOCIATED WITH THE PLAINTIFFS AND THE MORE ROBUST PROFILE

24     DATA.

25          MR. ANSORGE:  YOUR HONOR, COULD I SPEAK TO THAT VERY

1

2

3                        CERTIFICATE OF REPORTER

4

5

6

7        I, THE UNDERSIGNED OFFICIAL COURT REPORTER OF THE UNITED

8    STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA,

9    280 SOUTH FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY

10   CERTIFY:

11       THAT THE FOREGOING TRANSCRIPT, CERTIFICATE INCLUSIVE, IS

12   A CORRECT TRANSCRIPT FROM THE RECORD OF ZOOM PROCEEDINGS IN THE

13   ABOVE-ENTITLED MATTER.

14

15

16       _____
         LEE-ANNE SHORTRIDGE, CSR, CRR
17       CERTIFICATE NUMBER 9595

18       DATED:  MAY 3, 2021

19

20

21

22

23

24

25

# ANSORGE
# EXHIBIT 3

# Redacted Version
# of Document Sought
# to be Sealed

```
 1                    UNITED STATES DISTRICT COURT
             FOR THE NORTHERN DISTRICT OF CALIFORNIA
 2                        SAN JOSE DIVISION

 3

     PATRICK CALHOUN, ET AL., ON      CV-20-5146-LHK/SVK
 4   BEHALF OF THEMSELVES AND ALL      CV-20-3664-LHK/SVK
     OTHERS SIMILARLY SITUATED,        CV-21-2155-LHK/SVK
 5

              PLAINTIFFS,              SAN JOSE, CALIFORNIA
 6        VS.
                                       JUNE 2, 2021
 7   GOOGLE INC.,
                                       PAGES 1 - 79
 8           DEFENDANT.
     _____    SEALED
 9   AND RELATED CASES.

10   _____

11                 TRANSCRIPT OF ZOOM PROCEEDINGS
             BEFORE THE HONORABLE SUSAN VAN KEULEN
12                 UNITED STATES DISTRICT JUDGE

13

     A-P-P-E-A-R-A-N-C-E-S
14

15   FOR THE PLAINTIFFS:   BOIES, SCHILLER & FLEXNER LLP
                           BY:  JAMES W. LEE
16                              HSIAO C. MAO
                                BEKO RICHARDSON
17                         44 MONTGOMERY STREET, 41ST FLOOR
                           SAN FRANCISCO, CALIFORNIA 94104
18

19            (APPEARANCES CONTINUED ON THE NEXT PAGE.)

20

21   OFFICIAL COURT REPORTER:   IRENE L. RODRIGUEZ, CSR, RMR, CRR
                                CERTIFICATE NUMBER 8074
22

23       PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY,
     TRANSCRIPT PRODUCED WITH COMPUTER.
24

25
```

1    A P P E A R A N C E S: (CONT'D)

2

3    FOR THE PLAINTIFFS:          MORGAN AND MORGAN COMPLEX
                                  LITIGATION GROUP
4                                 BY:  RYAN MCGEE
                                  201 N. FRANKLIN STREET, 7TH FLOOR
5                                 TAMPA, FLORIDA 33602

6                                 BY:  MICHAEL F. RAM
                                  711 VAN NESS AVENUE, SUITE 500
7                                 SAN FRANCISCO, CALIFORNIA 94102

8                                 DICELLO LEVITT & GUTZLER LLC
                                  BY:  DAVID A. STRAITE
9                                 ONE GRAND CENTRAL PLACE
                                  60 EAST 42ND STREET, SUITE 2400
10                                NEW YORK, NEW YORK 10165

11                                BY:  ADAM M. PROM
                                       AMY E. KELLER
12                                TEN NORTH DEARBORN STREET
                                  6TH FLOOR
13                                CHICAGO, ILLINOIS 60602

14                                SIMMONS, HANLY & CONROY LLC
                                  BY:  JAY BARNES
15                                231 S. BEMISTON AVENUE
                                  SUITE 525
16                                ST. LOUIS, MISSOURI 63105

17                                BY:  AN V. TRUONG
                                  112 MADISON AVENUE, 7TH FLOOR
18                                NEW YORK, NEW YORK 10016

19                                BLEICHMAR, FONTI & AULD LLP
                                  BY:  LESLEY E. WEAVER
20                                     ANNE K. DAVIS
                                       ANGELICA M. ORNELAS
21                                555 12TH STREET, SUITE 1600
                                  OAKLAND, CALIFORNIA 94607

22

23              (APPEARANCES CONTINUED ON THE NEXT PAGE.)

24

25

SEALED PROCEEDINGS                                                          3

1        A P P E A R A N C E S: (CONT'D)

2

3        FOR THE DEFENDANT:          QUINN EMANUEL URQUHART AND
                                     SULLIVAN, LLP
4                                    BY:  ANDREW H. SCHAPIRO
                                     191 N. UPPER WACKER DRIVE
5                                    SUITE 2700
                                     CHICAGO, ILLINOIS 60606
6
                                     BY:  JOSEF T. ANSORGE
7                                         JOMAIRE A. CRAWFORD
                                     51 MADISON AVENUE
8                                    NEW YORK, NEW YORK 10010

9                                    BY:  VIOLA TREBICKA
                                          STEPHEN A. BROOME
10                                   865 SOUTH FIGUEROA STREET
                                     10TH FLOOR
11                                   LOS ANGELES, CALIFORNIA 90017

12                                   COOLEY LLP
                                     BY:  JEFFREY GUTKIN
13                                        DANIEL PIERRE
                                          KELSEY SPECTOR
14                                   101 CALIFORNIA STREET, 5TH FLOOR
                                     SAN FRANCISCO, CALIFORNIA 94111
15

16

17

18

19

20

21

22

23

24

25

02:30PM  1    LEGAL, AND WE HAVE DOCUMENTS IN DISCOVERY WHERE GOOGLE IS

02:30PM  2    CLEARLY SAYING THAT THEY HAVE ONE IDENTITY FOR USERS, QUOTE,

02:30PM  3    "ACROSS ALL OF THOSE DIFFERENT DEVICES."

02:30PM  4         AND GOOGLE MAINTAINS AN IDENTITY CONTAINER FOR EACH USER

02:30PM  5    THAT CONTAINS THEIR EMAIL ADDRESS, THEIR REAL NAME, THEIR PHONE

02:30PM  6    NUMBER, AND BASICALLY PERSONALLY IDENTIFIES THEM AS WELL AS THE

02:30PM  7    DEVICES ASSOCIATED WITH THEIR ACCOUNT.

02:30PM  8         AND GOOGLE STARTED THIS PROCESS IN 2016 TO, QUOTE, "UNITE

02:30PM  9    THESE IDENTITY SPACES," THOSE BEING BISCOTTI AND GAIA.

02:30PM  10        ANOTHER QUOTE FROM A DOCUMENT IS, "BEING ABLE TO COMBINE

02:30PM  11   SIGNED IN AND SIGNED OUT IMPRESSIONS IS IN GENERAL ALLOWED."

02:30PM  12        SO, YOU KNOW, ONE WAY IS TO GIVE US A CLEAN ROOM, BUT WE

02:31PM  13   THINK THIS IS JUST THE TIP OF THE ICEBERG OF THE DOCUMENTS THAT

02:31PM  14   WE HAVE THAT SHOW THAT GOOGLE HAS THE ABILITY TO DO THIS.  IT'S

02:31PM  15   JUST A MATTER OF THEM HAVING A POLICY THAT DOESN'T ALLOW A

02:31PM  16   TYPICAL GOOGLER TO DO IT.  AND THE REASON FOR THAT IS THAT THEY

02:31PM  17   HAD A TYPICAL GOOGLER AT ONE POINT IN TIME WHO DID IT, AND IT

02:31PM  18   WAS A BIG PROBLEM, SO THEY CUT OFF FULL ACCESS.

02:31PM  19        IT HAPPENS THROUGH A SPACE THAT GOOGLE CALLED ███████

02:31PM  20   ████████████████████████████████████████.  AND IN ADDITION

02:31PM  21   TO WHAT MR. MAO SAID, MR. MAO IDENTIFIED THREE COOKIES:

02:31PM  22   ZWIEBACK, GAIA, AND BISCOTTI, BUT THERE ARE AT LEAST OVER ██

02:31PM  23   DIFFERENT IDENTIFIERS THAT WE HAVE SEEN IN THE DOCUMENTS

02:31PM  24   PRODUCED TO US:  ██████████, ███████.

02:31PM  25             THE COURT:  OKAY.  OKAY.

02:31PM  1        MR. BARNES:  GOOGLE WON'T PRODUCE THESE DOCUMENTS TO

02:31PM  2   US, YOUR HONOR.  SO WE HAVE DOCUMENTS THAT SHOW THAT THEY CAN

02:31PM  3   DO THIS.  THEY NEVER SAID THAT THEY CAN'T.  THEY JUST SAY THAT

02:32PM  4   THEY HAVE A POLICY THAT DOESN'T ALLOW A TYPICAL GOOGLER TO DO

02:32PM  5   IT.

02:32PM  6        THE COURT:  ALL RIGHT.  SO FROM MY ORDER BACK ON

02:32PM  7   APRIL 30TH IT WAS FAIRLY COMPREHENSIVE ON THIS POINT TO PRODUCE

02:32PM  8   THE DATA, INCLUDING ANY DEVICE DATA ASSOCIATED WITH ANY

02:32PM  9   PLAINTIFF.  WHOOPS.  SORRY ABOUT THAT.

02:32PM 10        I APOLOGIZE.  THAT'S WHAT HAPPENED.  I HAVE TOO MANY

02:32PM 11   PAPERS ON MY DESK.

02:32PM 12        (PAUSE IN PROCEEDINGS.)

02:32PM 13        THE COURT:  SO THAT WAS THE DIRECTION, AND I

02:32PM 14   UNDERSTAND FROM THE DISPUTE THAT THERE'S CONCERN AROUND WHAT

02:33PM 15   HAS OR WHAT HAS BEEN LEFT OUT.

02:33PM 16        YOU STARTED TO SAY THAT THERE WERE TWO ISSUES HERE,

02:33PM 17   MR. BARNES, AND --

02:33PM 18        MR. BARNES:  RIGHT.  SO THE FIRST IS THAT

02:33PM 19   PLAINTIFFS' DEVICE DATA.  SO WE'VE PROVIDED VARIOUS COOKIE

02:33PM 20   IDENTIFIERS TO GOOGLE.  THEY NEVER TOLD US WHICH SPECIFIC

02:33PM 21   COOKIES TO PRODUCE.  WE PROVIDED ALL OF THE COOKIES WE COULD

02:33PM 22   FIGURE OUT.

02:33PM 23        I THINK WHAT GOOGLE'S POSITION IS THAT, OKAY, WE'LL TAKE

02:33PM 24   THOSE COOKIES, AND WE WILL IDENTIFY ANYTHING ASSOCIATED WITH

02:33PM 25   THE DEVICE, ASSOCIATED WITH THOSE COOKIES.

02:33PM  1        WHAT WE ARE SAYING IS THAT THERE ARE DOCUMENTS THAT SHOW,

02:33PM  2   AND GOOGLE HAS NEVER SAID THAT THEY CAN'T DO THIS, THEY'VE ONLY

02:33PM  3   SAID THAT THERE'S A --

02:33PM  4        THE COURT:  I UNDERSTAND.

02:33PM  5        MR. BARNES:  -- IS THAT WE CAN'T IDENTIFY EVERY

02:33PM  6   COOKIE EVER ASSOCIATED WITH THE PLAINTIFFS' DEVICE THAT GOOGLE

02:33PM  7   HAS ASSOCIATED WITH THE PLAINTIFFS' ACCOUNT AND THE PLAINTIFFS'

02:33PM  8   DEVICE.

02:33PM  9        THAT IS IN GOOGLE'S SOLE POSSESSION, AND THERE'S NO WAY

02:33PM 10   FOR US TO COME UP WITH THAT DATA.

02:33PM 11        BUT GOOGLE HAS THE ABILITY TO DO IT.  THAT WAS -- THAT'S

02:34PM 12   THE POINT OF UNITING THOSE SPACES.

02:34PM 13        THE COURT:  WHY DO YOU NEED ALL OF THE COOKIE DATA?

02:34PM 14        MR. BARNES:  WE NEED ALL OF THE DATA TO FIGURE OUT

02:34PM 15   ALL OF THE DATA THAT GOOGLE IS COLLECTING FROM OUR USERS WHEN

02:34PM 16   THEY'RE NOT IN A SYNCED STATE BECAUSE THERE MAY BE SOME

02:34PM 17   IDENTIFIERS THAT WE ARE UNABLE TO CATCH ON OUR END THAT GOOGLE

02:34PM 18   KNOWS ABOUT AND CAN SAY, OH, BECAUSE WE KNOW GAIA USER ONE USES

02:34PM 19   THIS DEVICE, THESE ARE THE COOKIES ASSOCIATED WITH THIS DEVICE,

02:34PM 20   THIS IS THE DATA WE HAVE ON THIS DEVICE, WHICH WE KNOW THIS

02:34PM 21   GAIA USER USES.

02:34PM 22        THERE'S NO WAY THAT WE'RE GOING TO EVER BE ABLE TO COME UP

02:34PM 23   WITH ALL OF THE IDENTIFIERS ASSOCIATED WITH THAT DEVICE.

02:34PM 24   GOOGLE HAS A BUNDLE OF THEM AND IDENTIFIERS THAT WE DON'T EVEN

02:34PM 25   KNOW ABOUT BECAUSE WE'RE JUST GETTING INTO DISCOVERY NOW.

02:43PM  1    OF THE DATA THAT THEY HAVE ABOUT OUR PLAINTIFFS.

02:43PM  2              THE COURT:  WELL, THAT WASN'T EXACTLY MY ORDER.

02:43PM  3              MR. BARNES:  FAIR ENOUGH, YOUR HONOR.

02:43PM  4              THE COURT:  OKAY.

02:43PM  5              MS. WEAVER:  YOUR HONOR, MAY I ANSWER YOUR QUESTION

02:43PM  6    NUMBER ONE, IF I MAY?  THIS IS LESLEY WEAVER, AND I'M ALSO ON

02:43PM  7    MR. BARNES'S TEAM.

02:43PM  8              THE COURT:  I THINK I'M GOOD.  THANK YOU,

02:43PM  9    MS. WEAVER.  I'M GOING TO TURN TO MR. SCHAPIRO OR MR. ANSORGE.

02:43PM  10             MR. ANSORGE:  YES, YOUR HONOR.  THANK YOU,

02:43PM  11   YOUR HONOR.

02:43PM  12             THE COURT:  MR. ANSORGE, YOUR CONNECTION HAS GOTTEN

02:44PM  13   QUITE BAD, AND I NOTICED IT LAST TIME THAT YOU WERE TRYING TO

02:44PM  14   SPEAK.  THERE'S A LOT OF PAUSES AND BREAKUPS.

02:44PM  15             MR. ANSORGE:  THAT MIGHT BE AN INTERNET PROBLEM HERE

02:44PM  16   BECAUSE I'M ON THE HARD LINE AS WELL.  APOLOGIES, YOUR HONOR.

02:44PM  17        IS IT BETTER?

02:44PM  18             MR. SCHAPIRO:  IT'S BETTER.

02:44PM  19             THE COURT:  HANG ON.

02:44PM  20        MS. RODRIGUEZ, IS THAT THE ISSUE THAT YOU HAD WANTED TO

02:44PM  21   ADDRESS?

02:44PM  22             MADAM COURT REPORTER:  YES, YOUR HONOR.  THANK YOU.

02:44PM  23   I WILL INTERRUPT AGAIN IF HE KEEPS TIMING OUT.

02:44PM  24             THE COURT:  YES, YOU WILL.

02:44PM  25        MR. ANSORGE, LET'S GO A LITTLE BIT SLOWLY.  DESPITE MY

SEALED PROCEEDINGS

02:44PM  1    PUSHING EVERYONE, LET'S GO A LITTLE BIT SLOWLY.

02:44PM  2              MR. ANSORGE:  THANK YOU, YOUR HONOR.

02:44PM  3        I WAS AGREEING WITH PLAINTIFFS' COUNSEL THAT GOOGLE HAS

02:44PM  4    POLICIES AGAINST JOINING THIS TYPE OF DATA, BUT IT'S REALLY NOT

02:44PM  5    JUST A POLICY.  THESE ARE POLICIES THAT ARE IMPLEMENTED IN

02:44PM  6    GOOGLE'S DATA ARCHITECTURE.  SO THERE ARE REASONS WHY THE

02:44PM  7    SYSTEMS ARE BUILT CERTAIN WAYS AND THEY'RE BUILT TO PREVENT THE

02:44PM  8    JOINING OF THIS LOGGED IN, LOGGED OUT, OR AUTHENTICATED AND

02:45PM  9    UNAUTHENTICATED DATA.

02:45PM  10        NOW, WHEN MR. BARNES WAS REFERRING TO ███████████

02:45PM  11    ██████, WE UNDERSTAND THAT COULD SOUND LIKE IT HAS SOME

02:45PM  12    NEGATIVE CONNOTATIONS IN THE WAY THAT HE WAS REPRESENTING IT,

02:45PM  13    AND I JUST WANT TO TAKE THIS OPPORTUNITY TO CLARIFY THAT.  THE

02:45PM  14    POINT OF THAT SPACE IS NOT TO UNIFY I.D.'S FOR USERS ACROSS ALL

02:45PM  15    OF THEIR DIFFERENT DEVICES.  THAT'S NOT WHAT IT IS IN PRACTICE,

02:45PM  16    AND THAT'S NOT WHAT IT IS DESIGNED TO BE AT ALL.

02:45PM  17    ████████████████████████████████████████████

02:45PM  18    █████████████████████████████████████████████████

02:45PM  19    ███████████████████████████████████████████████████

02:45PM  20    █████████████████████████████████████████████████

02:45PM  21    █████████████████████████████████████████████████

02:45PM  22    ████████████████████████████████████████████

02:45PM  23    █████████████████████████████████████

02:45PM  24        SO THERE'S A LOT OF WORK THAT GOES INTO IT MAKING SURE

02:45PM  25    THAT THIS IS NOT SOMETHING THAT IS JUST A POLICY PREFERENCE.

02:45PM 1    IT'S SOMETHING THAT IS HARD WIRED INTO GOOGLE'S SYSTEMS.

02:45PM 2        THE SECOND POINT I WANTED TO TOUCH ON, AND THIS IS ISSUE

02:46PM 3    TWO THAT MR. BARNES WAS HIGHLIGHTING.  TO BE FRANK, WE WERE

02:46PM 4    SURPRISED THAT SEARCH IS NOW AT ISSUE, AND THIS IS SOMETHING

02:46PM 5    THAT WE HAD RAISED AT SOME MOMENTS WITH PLAINTIFFS, BUT WE

02:46PM 6    DON'T UNDERSTAND HOW THERE'S GOING TO BE A PRIVACY CASE AGAINST

02:46PM 7    GOOGLE FOR INFORMATION THAT THE USER PUTS INTO A GOOGLE SEARCH

02:46PM 8    ENGINE.

02:46PM 9        SO WHAT WE'RE TRYING TO DO HERE IN ONE WAY OR ANOTHER IS

02:46PM 10   THINK OF WAYS IN WHICH WE CAN SPECIFY WHAT IS REALLY RELEVANT

02:46PM 11   AND WHAT IS THAT ISSUE, AND SEARCH ENTAILS A LOT OF DIFFERENT

02:46PM 12   DATASETS, A LOT OF DIFFERENT CUSTODIANS, IT BRINGS IN DIFFERENT

02:46PM 13   TYPES OF INFORMATION WHICH WE BELIEVE AREN'T REFLECTED IN THE

02:46PM 14   COMPLAINT.

02:46PM 15       SO WHAT WE WOULD LIKE TO DO IS FOCUS ON THE DATA AT ISSUE

02:46PM 16   WHICH IS BROWSING INFORMATION OR SITE ACTIVITY DATA WHEN A USER

02:46PM 17   VISITS THE WEBSITE THAT HAS ANALYTIC SERVICES OR GOOGLE AD

02:46PM 18   MANAGER SERVICES.

02:46PM 19            THE COURT:  JUST AT THE END THERE YOU TIMED OUT,

02:47PM 20   MR. ANSORGE.

02:47PM 21            MR. ANSORGE:  THIS CONNECTION IS TERRIBLE.  I'M

02:47PM 22   REALLY SORRY EVERYBODY.

02:47PM 23            MR. SCHAPIRO:  IT'S BEEN FINE.  YOU JUST DROPPED OFF

02:47PM 24   THE FINAL TEN SECONDS.

02:47PM 25            THE COURT:  JUST AT THE VERY END.  WHAT WAS THE LAST

1

2

3                        <u>CERTIFICATE OF REPORTER</u>

4

5

6

7          I, THE UNDERSIGNED OFFICIAL COURT REPORTER OF THE UNITED

8    STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA,

9    280 SOUTH FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY

10   CERTIFY:

11         THAT THE FOREGOING TRANSCRIPT, CERTIFICATE INCLUSIVE, IS

12   A CORRECT TRANSCRIPT FROM THE RECORD OF PROCEEDINGS IN THE

13   ABOVE-ENTITLED MATTER.

14

15

16         IRENE RODRIGUEZ, CSR, RMR, CRR
           CERTIFICATE NUMBER 8074

17

18         DATED:  JUNE 2, 2021

19

20

21

22

23

24

25

# ANSORGE
# EXHIBIT 4

# Unredacted Version
# of Document Sought
# to be Sealed

CONFIDENTIAL

```
 1              UNITED STATES DISTRICT COURT

 2            NORTHERN DISTRICT OF CALIFORNIA

 3                  SAN JOSE DIVISION

 4

 5   PATRICK CALHOUN, ELAINE CRESPO, )
     HADIYAH JACKSON and CLAUDIA      )
 6   KINDLER, on behalf of all        )
     others similarly situated,       )
 7                                    )
             Plaintiffs,              )
 8                                    )
             vs.                      ) Case No.
 9                                    ) 5:20-cv-5146-LHK
     GOOGLE LLC,                      )
10                                    )
             Defendant.               )
11   _____ )

12

13

14                  CONFIDENTIAL

15      VIRTUAL VIDEOCONFERENCE VIDEO-RECORDED

16      DEPOSITION OF DAVID MONSEES, VOLUME 2

17

18           Friday, June 11, 2021

19      Testifying from San Francisco, California

20

21

22

23   Reported By:

24   Hanna Kim, CLR, CSR No. 13083

25   Job No. 4624328
```

Page 359

CONFIDENTIAL

---

**Page 360**

1       UNITED STATES DISTRICT COURT
2     NORTHERN DISTRICT OF CALIFORNIA
3         SAN JOSE DIVISION
4
5 PATRICK CALHOUN, ELAINE CRESPO, )
  HADIYAH JACKSON and CLAUDIA   )
6 KINDLER, on behalf of all    )
  others similarly situated,    )
7                )
      Plaintiffs,   )
8                )
    vs.      ) Case No.
9         ) 5:20-cv-5146-LHK
  GOOGLE LLC,      )
10              )
     Defendant.    )
11 _____ )
12
13
14
15     Confidential, virtual videoconference
16     video-recorded deposition of DAVID
17     MONSEES, VOLUME 2, taken on behalf of the
18     Plaintiffs, testifying from San Francisco,
19     California, on Friday, June 11, 2021,
20     before Hanna Kim, CLR, CSR No. 13083.
21
22
23
24
25

---

**Page 361**

1   REMOTE VIDEOCONFERENCE APPEARANCES OF COUNSEL:
2
3  For Plaintiffs:
4     BLEICHMAR FONTI & AULD LLP
5     BY:  LESLEY WEAVER, ESQ.
6     BY:  ANGELICA M. ORNELAS, ESQ.
7     555 12th Street, Suite 1600
8     Oakland, California 994607
9     415.445.4003
10    lweaver@bfalaw.com
11    aornelas@bfalaw.com
12    -and-
13    KAPLAN FOX & KILSHEIMER LLP
14    BY:  DAVID A. STRAITE, ESQ.
15    850 Third Avenue
16    New York, New York 10022
17    212.687.1980
18    dstraite@kaplanfox.com
19
20
21
22
23
24
25

---

**Page 362**

1  REMOTE VIDEOCONFERENCE APPEARANCES (CONTINUED)
2
3  For Plaintiffs:
4     SIMMONS HANLY CONROY LLC
5     BY:  JASON "JAY" BARNES, ESQ.
6     112 Madison Avenue, 7th Floor
7     New York, New York 10016
8     212.784.6400
9     jaybarnes@simmonsfirm.com
10
11
12  For Defendant Google LLC:
13    QUINN EMANUEL URQUHART & SULLIVAN
14    BY:  ANDREW H. SCHAPIRO, ESQ.
15    191 N. Wacker Drive, Suite 2700
16    Chicago, Illinois 60606
17    312.705.7400
18    andrewschapiro@quinnemanuel.com
19    -and-
20    BY:  JOSEF ANSORGE, PH.D.
21    1300 I Street NW, Suite 900
22    Washington, D.C. 20005
23    202.538.8000
24    josefansorge@quinnemanuel.com
25

---

**Page 363**

1  REMOTE VIDEOCONFERENCE APPEARANCES (CONTINUED)
2
3  Also Present:
4     MATTHEW GUBIOTTI, Google LLC
5     RON LAZO, Videographer
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

---

2 (Pages 360 - 363)

CONFIDENTIAL

1  page specifically was developed.

2  Q.  Who's in charge of that?

3  A.  I do not know who the engineering owner of

4  this page is, but could be investigated. We could

5  find out.                                09:40:59

6  Q.  Can we agree this page is available for

7  all -- all Goo- -- all gaia users to review?

8  A.  Yes.

9  Q.  And, Mr. Monsees, if a user had -- do you

10 see at the bottom of the page where it says "Last    09:41:14

11 time synched on February 2nd, 2021" [as read]?

12 A.  I do.

13 Q.  And if a user had never synched, would

14 this be null?

15 A.  Yes.  There would be no information of    09:41:31

16 these data types and no sync history.

17 Q.  So it's fair to say Google keeps a record

18 of all gaia users who have never synched their

19 account?

20 (Interruption in audio/video.)    09:41:47

21 MR. SCHAPIRO:  Objection to the form of

22 the question.

23 THE WITNESS:  No, I would say that's

24 inaccurate.

25 BY MR. BARNES:                          09:41:52

Page 400

1  Q.  Google -- let's put it the other way.

2  Google keeps a record of every user whose has

3  synched their account at least one time; correct?

4  A.  To clarify, Google does keep a record of

5  users who have synched their -- at least one    09:42:05

6  Chrome device, at -- least one time, and has

7  not deleted that sync data.  I think that's

8  accurate.

9  Q.  Okay.  And Google also keeps a record of

10 all gaia users; correct?    09:42:17

11 A.  Yes.  To provide the service, yes.

12 Q.  And so in order to figure out who has not

13 synched, who's not on Google's sync list, you

14 would take all the list of all gaia users and

15 subtract all of if use users for whom something    09:42:35

16 would be populated in this location at

17 chrome.google.com/sync that is stored server side

18 at Google; correct?

19 A.  I think we would want to be accurate about

20 that, Mr. Barnes, and say that the result of that    09:42:52

21 would not give you non-sync users.  I think the

22 result of that would give you all gaia accounts

23 who do not currently have one or more sync entries

24 or sync data.

25 Q.  So when Google -- when a person chooses to    09:43:16

Page 401

1  sync, Google keeps a record of that.

2  A.  To provide the sync service, which allows

3  a user to take information from one Chrome

4  instance, put it on a Google server so that it may

5  be available or -- or synched, you might say, to    09:43:44

6  another Chrome instance, yes, the very nature of

7  providing that service requires Google to store

8  that information on --

9  Q.  Does --

10 A.  -- on a Google server.    09:43:53

11 Q.  Sorry.

12 Does Google maintain a record of requests

13 to unsync?

14 A.  I -- I'm sorry, I understand.

15 So when a user chooses to unsync, stop    09:44:07

16 syncing --

17 Q.  Correct.

18 A.  -- that is what you're asking?

19 So, yes, Google would need to receive a

20 request from said device to be able to know that    09:44:18

21 it should no longer sync and likely be excluded

22 from a list of shown syncing devices.

23 Q.  Where does Google keep a record of user

24 actions to unsync?

25 A.  There are temporary Chrome Sync logs that    09:44:36

Page 402

1  I believe we discussed in the last deposition.  I

2  would assume that any action of the sync service,

3  where a users's Chrome app is communicating with

4  the sync service would generate such a Chrome Sync

5  log, including disabling sync, so the server gets    09:44:58

6  that signal.

7  Q.  So, Mr. Monsees, just to clarify, when you

8  testify as to your understanding or assumption,

9  you -- you also -- it's also your understanding

10 that you're testifying here today on behalf of    09:45:10

11 Google; correct?

12 A.  Correct.

13 Q.  And your answers are binding on Google.

14 You understand that; correct?

15 A.  That's my understanding.    09:45:23

16 Q.  For purposes of today, Mr. David Monsees

17 is Google.  Can we agree to that?

18 A.  Yes.

19 Q.  Okay.  Who's on the sync team?

20 A.  I -- I don't know a complete list of    09:45:35

21 engineers.

22 Q.  Who's -- who's in charge --

23 MR. SCHAPIRO:  I'm going to -- I'm going

24 to object to that question belatedly as outside the

25 scope.                                09:45:49

Page 403

12 (Pages 400 - 403)

CONFIDENTIAL

1   BY MR. BARNES:
2       Q.   Who's in charge of the sync team?
3            MR. SCHAPIRO:  Same objection.  Outside
4   the scope.
5            THE WITNESS:  I -- I don't know who -- who   09:45:54
6   runs, who manages the sync team.
7            MR. BARNES:  Okay.  Ms. Ornelas, can you
8   publish -- republish Exhibit 17?
9            (Previously marked Deposition Exhibit 17
10           was referenced.)                09:46:11
11           MS. ORNELAS:  One moment.
12  BY MR. BARNES:
13      Q.   While she's doing that, Mr. Monsees, if
14  you wanted to figure out how to extract data from
15  a data set, would you need to have some idea about   09:46:32
16  the source code associated with the data set?
17      A.   Source code's a fairly broad term.  I -- I
18  think per our previous discussion, just like if
19  you're using Excel, to put in kind of more common
20  user terms, if you want to query something in       09:46:57
21  Excel, you would need to know the structure of the
22  data to query what column to look at, what the
23  format of the data is, before you could write your
24  Excel function, which I'm sure we've all
25  experienced.                            09:47:13

Page 404

1       Q.   Right.
2            You've got to know the structure of the
3   data.  And, listen, I'm terrible at Excel.  The
4   staff at Simmons Hanly Conroy hates it when I get
5   an Excel file.  And we've got a lot of Excel files   09:47:25
6   in this litigation, so I'm driving some people
7   crazy.
8            But in addition to knowing the structure
9   of the data, you'd have to have some examples of
10  how to write script; correct?              09:47:34
11      A.   I'm not -- I don't think an engineer would
12  need examples of how to write a script.  I think a
13  Google engineer, if they knew the format and
14  location of the data and the infrastructure the
15  data was stored on, would be capable of           09:47:49
16  constructing a script for a given purpose.
17      Q.   Right.
18           A Googler would be capable, but Google
19  hires new people all the time; correct?
20      A.   That is correct.                   09:48:02
21      Q.   And when a new Googler is figuring out how
22  to run scripts, they've got to look at examples of
23  how other Googlers have previously run scripts
24  across databases; right?
25      A.   Well, they would need to learn about       09:48:18

Page 405

1   the -- the -- the format or the system that they
2   plan to query on, but I don't think you
3   necessarily need to look at examples.
4            I -- I can write an Excel function without
5   having looked at someone else's Excel function       09:48:34
6   when I know what the language supports.
7       Q.   Right.
8            But therein lies the difference between
9   Excel and Googlers.  For example, I asked you
10  earlier if it's SQL, and you said, "Well, it's       09:48:45
11  kind of like SQL, but Google runs something very
12  similar."
13           Google systems are a little bit different;
14  right?
15      A.   Right.                           09:48:55
16      Q.   Right.
17           And so for a new Googler who's onboarding,
18  there's a process through which they have to learn
19  how to translate their SQL scripting experience
20  into Googler land?                       09:49:10
21      A.   Yes, you'd need to learn the system
22  that -- that you're going to -- to write that
23  query on.
24      Q.   It's not instinctual.  It's not like
25  Google hires these engineers out of MIT, and they   09:49:26

Page 406

1   show up the first day at Google able to write
2   these complicated scripts to search Google
3   systems; right?
4       A.   I -- I think it -- the systems may not be
5   as different -- similar [verbatim] to how you       09:49:39
6   could be an engineer who knows C++ really well.
7   You've worked on it for a decade of your life.
8   You've never written a line of Java before.
9   Java's different.  There's -- you would need to
10  learn and read about Java's semantic structures      09:49:53
11  and differences, but you could probably write
12  Java.
13           You have the -- you -- you have the
14  scaffolding of the skills.  You just need to learn
15  the system.  So --                       09:50:03
16      Q.   Right.
17           (Interruption in audio/video.)
18           THE COURT REPORTER:  Could you start over,
19  please.  There was some speaking over.
20           MR. BARNES:  Sorry.                09:50:13
21  BY MR. BARNES:
22      Q.   If you had a cookbook of sorts and a guide
23  on how to do it; right?
24      A.   Ex -- exactly.  The instruction manual
25  to -- to use the system that you're using would     09:50:24

Page 407

13 (Pages 404 - 407)

CONFIDENTIAL

1  witness, Google LLC.
2      The number of media units used was one and
3  will be retained by Veritext.  The time is
4  6:07 p.m.  We are now off the record.
5      (Proceedings concluded, 6:07 p.m., PST, on
6      June 11, 2021.)
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

Page 708

CERTIFICATE OF REPORTER

1
2      I, Hanna Kim, a Certified Shorthand
3  Reporter, do hereby certify:
4      That prior to being examined, the witness
5  in the foregoing proceedings was by me duly sworn
6  to testify to the truth, the whole truth, and
7  nothing but the truth;
8      That said proceedings were taken before me
9  at the time and place therein set forth and were
10  taken down by me in shorthand and thereafter
11  transcribed into typewriting under my direction and
12  supervision;
13      I further certify that I am neither
14  counsel for, nor related to, any party to said
15  proceedings, not in anywise interested in the
16  outcome thereof.
17      Further, that if the foregoing pertains to
18  the original . . . . . . . . . . . . . . . tion in a
19  federal . . . . . . . . . . . . . f the proceedings,
20  review . . . . . . . . . . . . . . was not
21  request . . . . . . . . . . .
22      In . . . . . . . . . . . . . . hereunto
23  subscri . . . . . . . . . . h day of June, 2021
24
25      Hanna Kim, CLR, CSR No. 13083

Page 710

JURAT

1
2
3      I, DAVID MONSEES, do hereby certify under
4  penalty of perjury that I have read the foregoing
5  transcript of my deposition taken on the 11th day
6  of June, 2021; that I have made such corrections as
7  appear noted herein in ink, initialed by me; that
8  my testimony as contained herein, as corrected, is
9  true and correct.
10
11      Dated this 23rd day of July, 2021,
12  at San Francisco, CA .
13
14
15
16      DocuSigned by:
17
18      _____
       3D171D3CBDB9422...
       DAVID MONSEES
19
20
21
22
23
24
25

Page 709

**Deposition Errata Sheet**
Case: Calhoun, et al. v. Google LLC
Deponent: David Monsees
Date of Deposition: June 11, 2021

| Pg. and Ln. | Now reads | Should read | Reason |
|---|---|---|---|
| 429:22 | a login system | a logging system | Words used |
| 430:1 | structure of a logged | structure of a log | Words used |
| 450:24 | browser in | browser instance | Words used |
| 488:24 | ENDDATA [verbatim] (488) | end. | Words used |
| 500:23 | the parses | the parsers | Words used |
| 547:7 | likely involved | likely evolved | Words used |
| 565:15 | identifiers that specifically hear the operation mode ENUM | identifiers that specifically adhere to the operation mode ENUM | Word used |
| 572:12-14 | There's Jon Kravchuk [phonetic] on the left and Amal Boucha [phonetic], I believe | There's Jon Krafcik on the left and Emil Ochotta, I believe | misspelled names |
| 590:20 | But tit's syncing | But it's syncing | Words used |
| 628:14 | Chris Lao | Chris Liao | Incorrect spelling |
| 582:9 | QBS [verbatim] reasons. | | |

DocuSigned by:

_____
3D171D3CBDB9422...
Signature of Deponent

7/23/2021
_____
Date

89 (Pages 708 - 710)

Veritext Legal Solutions
866 299-5127

# ANSORGE
# EXHIBIT 5

# Redacted Version
# of Document Sought
# to be Sealed

Page 1

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

- - -

| | | |
|---|---|---|
| CHASOM BROWN, WILLIAM | : | Case No. |
| BYATT, JEREMY DAVIS, | : | |
| CHRISTOPHER CASTILLO | : | 5:20-cv-03664- |
| and MONIQUE TRUJILLO, | : | LHK |
| individually and | : | |
| on behalf of all other | : | |
| similarly situated, | : | CONFIDENTIAL |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| GOOGLE, LLC, | : | |
| | : | |
| Defendant. | : | |

- - -

Wednesday, June 16, 2021

- - -

Videotaped 30(b)(6) deposition of

GLENN BERNTSON held pursuant to notice,

beginning at 10:27 AM, on the above date,

and recorded stenographically by

Constance S. Kent, a Certified Court

Reporter, Registered Professional

Reporter and Notary Public.

\* \* \*

MAGNA LEGAL SERVICES
(866) 624-6221
www.MagnaLS.com



Page 2

```
 1   A P P E A R A N C E S:
 2       BOIES SCHILLER FLEXNER LLP
         BY:  MARK C. MAO, ESQ
 3           BEKO REBLITZ-RICHARDSON, ESQ
         44 Montgomery Street, 41st Floor
 4       San Francisco, California 94104
         (415) 293-6800
 5       mmao@bsfllp.com
         brichardson@bsfllp.com
 6       Attorneys for Plaintiffs
 7
         BOIES SCHILLER FLEXNER LLP
 8       BY:  ROSSANA BAEZA, ESQ
              (pro hac vice)
 9       100 SE 2nd Street, 28th Floor
         Miami, Florida 33131
10       (305) 539-8400
         rbaeza@bsfllp.com
11       Attorney for Plaintiffs
12
         MORGAN & MORGAN
13       BY:  RYAN McGEE, ESQ
         201 N Franklin Street, 7th Floor
14       Tampa, Florida 33602
         (813) 223-5505
15       rmcgee@forthepeople.com
         Attorney for the Plaintiff
16
17       SUSMAN GODFREY L L P
         BY:  ALEXANDER FRAWLEY, ESQ
18       1900 Avenue of the Stars, Suite 1400
         Los Angeles, California 90067
19       (310) 789-3100
         afrawley@susmangodfrey.com
20       Attorneys for Plaintiffs
21
22
23
24
```

Page 3

```
 1   APPEARANCES, continued
 2   QUINN EMANUEL URQUHART & SULLIVAN,
     LLP
 3   BY:  STEPHEN BROOME, ESQUIRE
          JOSEF ANSORGE, ESQUIRE
 4   1300 I Street, NW, Suite 900
     Washington, D.C. 20005
 5   (202) 538.8000
     stephenbroome@quinnemanuel.com
 6   josefansorge@quinnemanuel.com
     Counsel for Defendants
 7
     ALSO PRESENT:
 8
     Matthew Gubiotti, Esquire
 9   In-house counsel for Google
10   Jay Bhatia
11   Chris Thompson, 233 Analytics, LLC
12   Adam Depew, Video Specialist
13   Noah Fox, Trial Technician
14
15
16
17
18
19
20
21
22
23
24
```

Page 4

```
 1              - - -
              I N D E X
 2              - - -
 3   Testimony of: GLENN BERNTSON
 4   By Mr  Mao              9
     By Mr  Broome         372
 5   By Mr  Mao           378
 6
 7         E X H I B I T S
              - - -
 8
     NO      DESCRIPTION      PAGE
 9
10   Exhibit 1  Plaintiff's Notice of    10
              30(b)(6) Deposition
11   Exhibit 2  Confidential-Google     15
              Display Server for
12              ▓▓▓▓▓▓
              Bates
13              GOOG-BRWN-000029458
14   Exhibit 3  Highly           107
              Confidential-Document
15              Entitled Fantastic
              Identifiers and Where to
16              Find Them, Bates
              GOOG-BRWN--00078278
17              through 78385
18   Exhibit 4  Confidential-Document   124
              entitled Stargate, Bates
19              GOOG-BRWN- 00027305
              through 27313
20
21   Exhibit 5  Confidential-Document,   193
              http://g▓▓▓▓▓▓▓▓
22              coverage-ratio,
              GOOG-BRWN-00026161
23              through 26168
24
```

Page 5

```
 1   NO      DESCRIPTION      PAGE
 2   Exhibit 6  Highly Confidential-   222
              Document entitled
 3              Biscotti Identifiers,
              Bates GOOG-BRWN-00078361
 4              through 78363
 5   Exhibit 7  Highly Confidential-   258
              Document entitled▓▓▓▓
 6              ▓▓▓▓▓▓, Bates
              GOOG-BRWN-00078370
 7              through 78371
 8   Exhibit 8  Confidential-Document   302
              entitled Logs Sources
 9              and Access Types, Bates
              GOOG-BRWN-00029445
10              through 29453
11   Exhibit 9  Confidential-Document   312
              entitled Chrome Logs,
12              Bates GOOG-BRWN-
              00029381 through 29385
13
14   Exhibit 10  Highly Confidential-   335
               Document entitled
15               ▓▓▓▓▓▓▓▓, Bates
               GOOG-BRWN-00078389
16               through 78390
17   Exhibit 11  Confidential-Document   350
               entitled Google
18               Analytics, Backend Core
               Processing Pipelines,
19               GOOG-BRWN-00078439
               through 78452
20
21   Exhibit 12  Documents reviewed by   356
               Mr  Berntson in
22               preparation for
               deposition (not
23               attached)
24   Exhibit 13  Berntson Fact Sheet   357
               (not attached)
```



2 (Pages 2 to 5)

Page 74

1  is now 11:52 AM and we are going
2  back on the record.
3  BY MR. MAO:
4  Q.  Hi, Mr. Berntson.  Going
5  down still on this Exhibit No. 2.
6  Looking at this 10th identifier here,
7  which is ███████████, is
8  that again a, I guess, testing instance
9  based off of the DoubleClick data which
10  is the previous parameter?
11  A.  ███████ is directly
12  analogous to Double as G███████ is to
13  Gaia.  So everything I described around
14  ██████ applies to ████████████
15  but relative to Double.
16  Q.  Got it.  Got it.
17  Can I -- I'm sorry.  I want
18  to make sure I'm using the proper
19  language.  Did you say that you can test
20  or experiment with ████████?
21  A.  Development and test.
22  Q.  Okay.  Can I do development
23  and test with both ████████ and
24  ████████?

Page 75

1  MR. BROOME:  Objection as
2  outside the scope.
3  Also, Connie, do you mind
4  muting?  We're getting that
5  feedback again.  Thank you.
6  THE WITNESS:  To your
7  question, Mark, both ████████
8  instances can be used for
9  development and testing.
10  BY MR. MAO:
11  Q.  Can I do development and
12  testing using both sets of parameters?
13  MR. BROOME:  Objection to
14  outside the scope.
15  THE WITNESS:  The answer is
16  not really.
17  BY MR. MAO:
18  Q.  Can you explain what you
19  mean by not --
20  A.  We maintain an explicit --
21  we maintain an explicit separation of
22  Gaia data and Biscotti data, so as you're
23  running a particular test, you really
24  only have access to one or the other, you

Page 76

1  don't have access to both.
2  Q.  Have you ever personally
3  been involved in any projects in which
4  one set of data may have been obfuscated
5  and used to basically pair or match with
6  the other type of data?
7  MR. BROOME:  Object to the
8  form.
9  THE WITNESS:  I don't
10  understand the question.  Can you
11  rephrase that?
12  BY MR. MAO:
13  Q.  Have you ever been part of
14  any testing and development involving
15  both Gaia and some form of Double data?
16  A.  Not at the same time, no.
17  Q.  Okay.  We'll come back to
18  that later.
19  Next attribute, dthree, the
20  11th one.  What exactly is that?
21  A.  I am unfamiliar with this
22  ████████ work space.  It does not relate to
23  Ad Manager.
24  Q.  Going back for a moment to

Page 77

1  Double then.  Could I query ████████
2  IDs using the Double parameter?
3  A.  No.
4  Q.  Can I query █████ (ph) IDs
5  using the Double parameter?  And that's
6  spelled ████████.
7  A.  I am familiar with the
8  token, but not something called ████████.
9  Q.  Sorry, ███████████████,
10  token.  Can I query the token IDs or
11  identifiers using the Double parameter
12  here?
13  A.  No.
14  Q.  Next one, zwbk, what is
15  that?
16  A.  This is the ██████ work
17  space keyed off the Zwieback ID.
18  Q.  And that's related to
19  search, right?
20  A.  It's related to products
21  other than Ad Manager.  Search is a good
22  example of a product that uses Zwieback.
23  Q.  Does Google Analytics use
24  Zwieback?



Page 78

1      A.   It's slightly complicated,
2  but the answer is they leverage Zwieback
3  but they're not keying data off the
4  Zwieback like searches.
5      Q.   Is Google Analytics
6  leveraging off of Gaia?
7      A.   Google Analytics --
8          MR. BROOME:  Object to form.
9          THE WITNESS:  -- has some
10     use cases that use Gaia, but
11     they're very limited.  Most of the
12     data keyed in Google Analytics is
13     not using Gaia.
14  BY MR. MAO:
15     Q.   Does Google Analytics
16  leverage key or use Double?
17         MR. BROOME:  Object to the
18     form.
19  BY MR. MAO:
20     Q.   Sorry.  Is it -- is it --
21  let me -- strike that.
22         Does Goggle Analytics
23  leverage, use or is keyed off of
24  Biscotti?

Page 79

1      A.   No.
2      Q.   Are Biscottis ever part of a
3  CID cookie in any form?
4      A.   I'm sorry, I didn't quite
5  hear you.
6      Q.   Are Biscottis ever part of a
7  CID cookie in any form?
8      A.   No.
9      Q.   Does Biscottis make it into
10  Google Analytics cookies that may be used
11  by publishers?
12     A.   Google Analytics uses
13  Biscotti to take the per publisher key
14  data that they elect and allow Ad Manager
15  publishers to use the user lists that are
16  created in Analytics within Ad Manager.
17  That is the sole use of Biscotti by
18  Google Ad Manager is to have a common ID
19  space so that the per publisher user
20  lists created in Google Analytics can be
21  used in Google Ad Manager.
22     Q.   Got it.
23         So -- so in response to my
24  prior question, which was originally does

Page 80

1  Google Analytics use, leverage or is
2  keyed off of Biscotti, you said no.  And
3  I'm not trying to quibble with you, I'm
4  just trying to understand the difference.
5  But in response to my last question you
6  said that it's some -- in this limited
7  use that you're explaining per Google Ad
8  Manager, there is use by Google Analytics
9  of Biscotti; is that correct?
10     A.   For the specific case of
11  being able to take user lists that are
12  managed and keyed off CID or User ID with
13  the publisher who is using Google Ad
14  Manager.
15     Q.   So if a publisher is using
16  Google Ad Manager, the Google Ad Manager
17  will use Biscotti from the CID cookies;
18  is that correct?
19         MR. BROOME:  Object to the
20     form.
21         THE WITNESS:  The way you're
22     describing it is not accurate.
23     I'd phrase it slightly
24     differently.

Page 81

1  BY MR. MAO:
2      Q.   Please do.
3      A.   Google Analytics uses CID as
4  the first-party cookie they use to
5  support publishers who want to understand
6  individual user behavior, and within
7  Google Analytics using CID and all of the
8  information about a user that is keyed
9  off CID, they can create user profiles.
10  The CID can be mapped to Biscotti.  So
11  when the CID or User ID keyed user lists
12  are shared with Ad Manager, they then
13  take the CID and map it to the Biscotti
14  so that Ad Manager knows the ID space for
15  that user.  That is the sole use of
16  Biscotti within Google Analytics.
17     Q.   Okay.  And -- and that
18  mapping is also stored in ███████ is that
19  correct?
20     A.   Yeah.
21     Q.   In that specific use
22  instance you're talking about, you have
23  previously mentioned that Google
24  Analytics does leverage off of Zwiebacks.



Page 82

1  Is that specific instance you were just
2  talking about, is there any leverage off
3  of Zwiebacks?
4      A.   Google Ad Manager doesn't
5  use Zwieback so unless it relates to the
6  use case of Google Analytics sharing user
7  lists with Ad Manager, Zwieback is not
8  used.
9      Q.   Before -- before that
10  process hits Google Ad Manager, does
11  Google Analytics leverage off of
12  Zwiebacks?
13      A.   Zwieback is used in the
14  manager analogous to Biscotti in that
15  Zwieback allows the first-party keyed
16  user data within Google Analytics that's
17  keyed off of User ID or CID to then be
18  shared with another product that has an
19  ID space that is keyed off of Biscotti or
20  Zwieback.
21          Google Analytics does not
22  store the user data associated with a
23  particular publisher's account keyed off
24  of Zwieback or Biscotti.  Those IDs are

Page 83

1  used just to translate the data that is
2  keyed off of CID or User ID.
3      Q.   And you would say the same
4  basically for any leverage off -- off of
5  Gaia, right, which is that Gaia is used
6  to basically to translate and key off
7  of -- sorry, by Google Ad Manager for the
8  purposes of basically furthering out that
9  user list, the target list?
10          MR. BROOME:  Object to the
11          form.
12          THE WITNESS:  I don't
13          understand the question.  Can you
14          rephrase it?
15  BY MR. MAO:
16      Q.   Okay.  So does Google Ad
17  Manager in that use case use Gaia the
18  same way, leverage it, whether you want
19  to call it --
20          MR. BROOME:  Object to the
21          form.
22  BY MR. MAO:
23      Q.   -- leverage or use?
24      A.   Google Ad Manager's

Page 84

1  integration with Google Analytics does
2  not leverage Gaia in any way.
3      Q.   When you say "Google Ad
4  Manager" here in this limited use case is
5  that including -- does that include the
6  ad serving and the ad targeting as well?
7      A.   I am speaking specifically
8  of the partnership between Google
9  Analytics and Google Ad Manager, which is
10  limited to Google Analytics.  For a
11  publisher who has an account in both,
12  they can set it up so that the user lists
13  that they create in Google Analytics can
14  be used for targeting in Ad Manager.  The
15  process of targeting within Ad Manager is
16  distinct from Google Analytics because
17  what happens is Google Analytics will,
18  when a publisher who's the same on both
19  sides basically says, I want to use this
20  data from Google Analytics in my Google
21  Ad Manager account.
22          So the only connection
23  between the two is the one-way sharing of
24  these user lists from Google Analytics to

Page 85

1  Google Ad Manager.
2      Q.   Sometimes IDs with those
3  user lists on the publisher side is
4  generated by Google; is that correct, the
5  numbers themselves?
6          MR. BROOME:  Object to the
7          form.
8          THE WITNESS:  The user lists
9          that are shared -- that can be
10          shared between -- from Google
11          Analytics to Google Ad Manager are
12          always keyed off of Biscotti, and
13          Biscotti is an ID that is
14          controlled by Google.
15  BY MR. MAO:
16      Q.   Got it.
17          So I see in some of the
18  documents a reference to PPIDs, which I
19  presume stands for publisher-provided
20  IDs.  Are -- are part of those IDs, in
21  terms of how Google stores them, keyed
22  off of Biscotti?
23      A.   I'm -- I'm trying to follow
24  the question.  Are we talking about



Page 390

1  about Constellation, did you actually
2  prepare for the topic of Constellations
3  before you came to testify here today?
4      A.   It was a topic that was
5  covered briefly in one of my discussions.
6      Q.   Is that topic for Chris Law?
7  Sorry, Chris -- Chris Liao or is that a
8  topic in which you are prepared to
9  discuss in terms of how that is actually
10 formed?
11     MR. BROOME:  Objection to
12     form.
13     THE WITNESS:  I believe -- I
14     believe I answered the question as
15     it relates to how Constellation
16     works, what IDs are used and the
17     use cases that it supports.  I
18     don't know what additional
19     information you're looking for as
20     it relates to Constellation.
21     MR. MAO:  I have no further
22     follow-up.  Again, I reserve my
23     rights.
24     MR. BROOME:  Okay.  All

Page 391

1  right.  Well, thank you,
2  everybody.  Thank you, Connie.
3  Our condolences.  And Adam, Mark,
4  thank you.  And see you all next
5  time.
6      THE VIDEOGRAPHER:  Let me
7  take us off the record.  Hold on.
8      The time is now 7:34 PM, and
9  we are going off the record.
10     (Witness excused.)
11     (Deposition concluded at
12  approximately 7:34 PM.)

Page 392

1
2          CERTIFICATE
3
4      I HEREBY CERTIFY that the
   witness was duly sworn by me and that the
5  within deposition is a true and accurate
   transcript of the stenographic notes of
6  the testimony given by the witness.
7
       It was requested before
8  completion of the deposition that the
   witness, GLENN BERNTSON, have the
9  opportunity to read and sign the
   deposition transcript.
10
11
12
   Ce
13 Certified Court Reporter
   Registered Professional Reporter
14 Certified LiveNote Reporter
   and Notary Public
15 Dated:  June 20, 2021
16
17
18
19
20     (The foregoing certification
21 of this transcript does not apply to any
22 reproduction of the same by any means,
23 unless under the direct control and/or
24 supervision of the certifying reporter.)

Page 393

INSTRUCTIONS TO WITNESS

3      Please read your deposition
4  over carefully and make any necessary
5  corrections.  You should state the reason
6  in the appropriate space on the errata
7  sheet for any corrections that are made.
8      After doing so, please sign
9  the errata sheet and date it.
10     You are signing same subject
11 to the changes you have noted on the
12 errata sheet, which will be attached to
13 your deposition.
14     It is imperative that you
15 return the original errata sheet to the
16 deposing attorney within thirty (30) days
17 of receipt of the deposition transcript
18 by you.  If you fail to do so, the
19 deposition transcript may be deemed to be
20 accurate and may be used in court.

Page 394

**ERRATA SHEET FOR THE TRANSCRIPT OF**

1   **Case:**   **Calhoun, et al. v. Google LLC**
2   **Deposition Date: June 11, 2021**
3   **Deponent:**   **David Monsees**
4
5

| | Pg. and Ln. | Now reads | Should read | Reason |
|---|---|---|---|---|
| 6 | 27:21; | | | |
| 7 | 174:12, 17; | | | |
| 8 | 175:1; | | | |
| 9 | 178:17; | | | |
| 10 | 181:5; | | | |
| 11 | 244:4, 15, 19, 21; | | | |
| 12 | 253:14; | | | |
| 13 | 309:22 | STKs | SDKs | transcription error |
| 14 | 28:11, 15; | | | |
| 15 | 37:5; | | | |
| 16 | 38:8; | | | |
| 17 | 88:6, 10, 15; | | | |
| 18 | 97:19; | | | |
| 19 | 102:5; | | | |
| 20 | 105:8; | | | |
| 21 | 117:22, 23; | | | |
| 22 | 118:1, 4; | | | |
| 23 | 120:5, 14, 18; | | | |
| 24 | 131:7, 8; | STK | SDK | transcription error |

Page 395

| cont | Pg. and Ln. | Now reads | Should read | Reason |
|---|---|---|---|---|
| 1 | 158:4; | | | |
| 2 | 172:19, 22; | | | |
| 3 | 174:20, 23; | | | |
| 4 | 175:6; | | | |
| 5 | 176:3, 8, 9, 12, 18, 20, | | | |
| 6 | 23; | | | |
| 7 | 226:5; | | | |
| 8 | 228:5; | | | |
| 9 | 245:1, 2, 4, 13; | | | |
| 10 | 254:21, 22; | | | |
| 11 | 255:3, 8, 13, 15; | | | |
| 12 | 256:19; | | | |
| 13 | 274:7, 8, 10, 13; | | | |
| 14 | 276:13; | | | |
| 15 | 277:19; | | | transcription |
| 16 | 310:10 | STK | SDK | error |
| 17 | 54:9, 11, 12, 14, 18, 19, | | | |
| 18 | 23, 24; | | | |
| 19 | 55:6, 10, 17; 56:3, 7, 9; | | | |
| 20 | 58:3, 9; | | | |
| 21 | 59:3, 5, 10; 61:4, 11, | | | |
| 22 | 12; | | | |
| 23 | 62:2, 8, 11, 13, 16, 17, | | | transcription |
| 24 | 22; | | | error |

Page 396

| cont | Pg. and Ln. | Now reads | Should read | Reason |
|---|---|---|---|---|
| 1 | 63:2, 3, 8, 10; | | | |
| 2 | 65:24; | | | |
| 3 | 66:2; | | | |
| 4 | 68:24; | | | |
| 5 | 69:2; | | | |
| 6 | 71:13, 15; | | | |
| 7 | 121:9, 10, 13; | | | |
| 8 | 126:5, 15; | | | |
| 9 | 243:4, 7; | | | |
| 10 | 294:3, 4; | | | |
| 11 | 298:20, 23; | | | |
| 12 | 299:2, 4, 5; | | | |
| 13 | 300:23; | | | |
| 14 | 331:1, 3 | | | transcription error |
| 15 | 88:6 | A, the | The | transcription error |
| 16 | 107:10 | 00078278 | 00078378 | transcription error |
| 17 | 109:12 | up-to-date | out-of-date | misspoke |
| 18 | 157:19 | If Biscotti | A Biscotti | transcription error |
| 19 | 166:11; | | | |
| 20 | 202:23; | conversation | | |
| 21 | 203:3; 15 | s | conversions | transcription error |
| 22 | 204:6 | conversation | conversion | transcription error |

Page 397

_____

Signature of Deponent

7/27/2021
_____
Date

# ANSORGE
# EXHIBIT 6

# Redacted Version
# of Document Sought
# to be Sealed

CONFIDENTIAL

Page 1

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

---oOo---


CHASOM BROWN; MARIA NGUYEN;
WILLIAM BYATT; JEREMY DAVIS;
and CHRISTOPHER CASTILLO,
individually and on behalf
of all other similarly
situated,

          Plaintiffs,

vs.                                    No. 5:20-cv-03664-LHK

GOOGLE LLC,

          Defendant.
_____/


CONFIDENTIAL

REMOTE VIDEOTAPED DEPOSITION OF SAMMIT ADHYA

WITNESS LOCATION:  SAN JOSE, CALIFORNIA

FRIDAY, NOVEMBER 19, 2021


Stenographically Reported by:

ANDREA M. IGNACIO, CSR, RPR, CRR, CCRR, CLR

California CSR No. 9830

Job No. 765904


MAGNA LEGAL SERVICES

866-624-6221

www.MagnaLS.com



CONFIDENTIAL

Page 2

1      IN THE UNITED STATES DISTRICT COURT
2      FOR THE NORTHERN DISTRICT OF CALIFORNIA
3              ---oOo---
4
5    CHASOM BROWN; MARIA NGUYEN;
     WILLIAM BYATT; JEREMY DAVIS;
6    and CHRISTOPHER CASTILLO,
     individually and on behalf
7    of all other similarly
     situated,
8
            Plaintiffs,
9    vs.          No. 5:20-cv-03664-LHK
10   GOOGLE LLC,
11          Defendant.
     _____/
12
13
14      REMOTE VIDEOTAPED DEPOSITION OF SAMMIT ADHYA
15   taken on behalf of the Plaintiffs, on Friday,
16   November 19, 2021, beginning at 9:08 a.m., and
17   ending at 5:38 p.m., Pursuant to Notice, and
18   remotely before me, ANDREA M. IGNACIO, CSR, RPR,
19   CRR, CLR ~ License No. 9830.
20
21
22
23
24
25

Page 3

REMOTE APPEARANCES:
1
2
3
4      COUNSEL FOR THE PLAINTIFFS:
5      BOIES SCHILLER & FLEXNER LLP
6      By:  BEKO REBLITZ-RICHARDSON, ESQ.
7         MARK MAO, ESQ.
8      44 Montgomery Street, 41st Floor
9      San Francisco, California 94104
10
11
12     MORGAN & MORGAN
13     By:  RYAN MCGEE, ESQ.
14        JENNI CABEZAS, Paralegal
15     201 N. Franklin Street, 7th Floor
16     Tampa, Florida 33602
17
18
19
20
21
22
23
24
25

Page 4

1    REMOTE APPEARANCES: (Cont.)
2
3
4      COUNSEL FOR THE DEFENDANT:
5      QUINN EMANUEL URQUHART & SULLIVAN
6      By:  SARA JENKINS, ESQ.
7         TRACY GAO, ESQ.
8         555 Twin Dolphin Drive, 5th Floor
9         Redwood Shores, California 94065
10
11
12   ALSO PRESENT:  Matthew Gubiotti, Google
13        Evan Tsilimidos, Videographer
14        Vanessa Wheeler, Exhibit Technician
15
16           ---oOo---
17
18
19
20
21
22
23
24
25

Page 5

1           INDEX OF EXAMINATION
2
3    WITNESS:  Sammit Adhya
4
5    EXAMINATION                    PAGE
6    By Mr. McGee                     9
7
8        INDEX OF DEPOSITION EXHIBITS
9    EXHIBIT                    PAGE
10   Exhibit 1    Sammit Adhya PM Transfer Candidate   32
11        Bates GOOG-BRWN-00540053 - '61
12   Exhibit 2    Document Bates GOOG-BRWN-00561420    42
13   Exhibit 3    12-22-18 E-mail Re: End of the    48
14        Year Update on the Unauth
15        Workstream, Bates
16        GOOG-CABR-03689232 - '233
17   Exhibit 4    5-3-19 E-mail Re: Incognito    62
18        Questio... I think the product
19        meta question is..., Bates
20        GOOG-BRWN-00611987
21   Exhibit 5    Incognito Strategy and Creative    67
22        Brief August 2019, Bates
23        GOOG-BRWN-00569625 - '632
24   //
25   //



CONFIDENTIAL

Page 166

1      "No consent for Incognito."           03:35:10
2      What were you and your team discussing as it    03:35:13
3  relates to whether or not to obtain consent for    03:35:15
4  Incognito during July of 2020?               03:35:20
5      MS. JENKINS:  Objection; lacks foundation;   03:35:27
6  vague.                                 03:35:28
7      THE WITNESS:  I don't recall specifically the   03:35:34
8  context of this.  This looks like this is a meeting   03:35:36
9  notes doc.  But as a part of my ▇▇▇ work where I   03:35:41
10  work on consent for signed out users, one of the   03:35:54
11  considerations of course is Incognito on our mobile   03:36:01
12  apps, and what it means for them from a consent    03:36:12
13  perspective.                           03:36:18
14      MR. MCGEE:  Q.  And I'm not sure what you    03:36:23
15  mean by that.  Can you expand on your explanation?   03:36:24
16      A   When a user is in Incognito, we essentially   03:36:34
17  treat them as a brand new signed out user on our   03:36:38
18  mobile apps.  And similar to what would happen in   03:36:47
19  Chrome Incognito for the first time if you visit   03:36:50
20  search.com or youtube.com or Maps, we see you as a new   03:36:53
21  signed out user.                       03:36:59
22      My work on ▇▇▇ is around consent for   03:37:02
23  signed out users.  And it was that intersection that   03:37:11
24  would have been a topic of several conversations.   03:37:18
25      MR. MCGEE:  Q.  Do you know what a zwieback   03:37:22

Page 167

1  cookie is?                             03:37:27
2      A   I know of the zwieback cookie, yes.       03:37:31
3      Q   How do you know of the zwieback cookie?   03:37:36
4      A   In -- in my work with the Search team, I know   03:37:40
5  that is the internal name of their -- of the cookie we   03:37:43
6  use on the google.com domain.                03:37:52
7      Q   Do you know if it's used anywhere else?   03:37:54
8      A   Do you -- what do you mean by "anywhere   03:38:00
9  else"?                                 03:38:02
10      Q   You said it's used on the google.com domain.   03:38:03
11  I'm just wondering if you know if it's used anywhere   03:38:06
12  else?                                  03:38:09
13      A   It's used in any of the kind of the -- what   03:38:12
14  we call country code top-level domains, CCTLD.  So   03:38:14
15  Google.de, Google.fr, these country-specific domains.   03:38:22
16  So anything that's kind of like Google asterisk star,   03:38:30
17  any of those domains.                    03:38:33
18      Q   Are zwieback or zwieback IDs different from   03:38:34
19  cookies?                               03:38:40
20      MS. JENKINS:  Objection; vague.          03:38:40
21      THE WITNESS:  zwieback is the name of the   03:38:44
22  cookie internal name of the cookies.         03:38:52
23      MR. MCGEE:  Okay.                    03:38:55
24      Q   But do you have any understanding of any   03:38:55
25  difference between the cookie and the ID associated   03:38:58

Page 168

1  with the names zwieback?                    03:39:00
2      A   I'm not exactly following.  The --       03:39:03
3      Q   So let me -- let me stop.             03:39:14
4      A zwieback ID, would that be used with       03:39:15
5  applications or would applications also use zwieback   03:39:21
6  cookies?                               03:39:26
7      MS. JENKINS:  Objection; lacks foundation;   03:39:26
8  calls for speculation.                    03:39:31
9      THE WITNESS:  The zwieback ID is stored   03:39:33
10  inside of the zwieback cookie that is used by websites   03:39:41
11  such as google.com.                    03:39:50
12      MR. MCGEE:  Q.  And do you know what is also   03:40:01
13  stored with the zwieback cookie?             03:40:05
14      MS. JENKINS:  Objection; vague.          03:40:10
15      THE WITNESS:  When you mean -- when you mean   03:40:16
16  "stored," do you -- what do you mean?         03:40:18
17      MR. MCGEE:  I'll just ask more directly.    03:40:20
18      Q   Is a user's IP address stored with the   03:40:23
19  zwieback cookie?                       03:40:26
20      MS. JENKINS:  Objection; calls for         03:40:30
21  speculation.                           03:40:32
22      THE WITNESS:  I don't know all of the       03:40:32
23  information that is stored against the zwieback ID.   03:40:40
24      MR. MCGEE:  Q.  Do you know if a user's IP   03:40:51
25  address is stored with a zwieback.           03:40:53

Page 169

1      A   I would have to talk to an engineer to   03:41:04
2  confirm if that's how it works.               03:41:05
3      Q   Have you ever had discussions with people at   03:41:10
4  Google about the technical complexities of the   03:41:11
5  zwieback cookie?                       03:41:19
6      MS. JENKINS:  Objection; vague.          03:41:21
7      THE WITNESS:  When you say "technical        03:41:23
8  complexities," are you referring to how it works?  Or   03:41:28
9  what element of the com-- -- of -- of --       03:41:32
10      MR. MCGEE:  Sure.                    03:41:35
11      THE WITNESS:  -- of the cookie?           03:41:36
12      MR. MCGEE:  Q.  So a technical complexity   03:41:37
13  would be whether a user's IP address, user agent   03:41:39
14  string, or other metadata would be stored with the   03:41:43
15  zwieback ID, or zwieback cookie.             03:41:45
16      MS. JENKINS:  Objection; vague.          03:41:50
17      THE WITNESS:  The data fields that you just   03:41:57
18  specified are -- based on my understanding, again, not   03:42:00
19  being an engineer -- are basic aspects of information   03:42:05
20  that's passed along when you are using any website or   03:42:13
21  visiting any website required to, like, deliver on --   03:42:18
22  on the response.  Like IP address have -- we have to   03:42:22
23  know where to send the page that a user has requested.   03:42:26
24      And so we have talked about what gets logged   03:42:35
25  generally as a part of any -- I've tried to   03:42:43



CONFIDENTIAL

Page 214

```
 1   your work, do they save any data locally or are they      05:24:30
 2   all cloud based for the data?                             05:24:35
 3       MS. JENKINS:  Objection; vague.                       05:24:40
 4       THE WITNESS:  The tools that I use are all            05:24:41
 5   the Google standard tools, and everything gets synced     05:24:45
 6   back to the cloud so that we can access them across       05:24:49
 7   our devices:  Docs, Gmail, Chat, et cetera.               05:24:52
 8       MR. MCGEE:  Okay.  If we can go off.  I think         05:24:57
 9   I'm toward the end, but I just want to confer.            05:25:03
10       Sara, if you're okay with going off, I'll            05:25:07
11   take ten minutes.                                         05:25:10
12       MR. BAYER:  Sure.  That's fine.                       05:25:11
13       THE VIDEOGRAPHER:  The time is 5:25, and              05:25:12
14   we're going off the record.                               05:25:16
15       (Recess taken.)                                       05:25:17
16       THE VIDEOGRAPHER:  The time is 5:37.                  05:37:54
17   We are back on the record                                 05:37:58
18       MR. MCGEE:  Okay.  Mr. Adhya, I appreciate           05:38:00
19   you sitting for your deposition here today.               05:38:03
20       We have some ongoing document disputes with          05:38:06
21   your counsel.  We won't be closing the deposition here    05:38:10
22   today, and we're reserving and retaining all rights.      05:38:14
23   But I'm not going to keep you here or keep the court      05:38:17
24   reporter here to hash out that out.  I think that's       05:38:20
25   something we can do with counsel outside of the           05:38:24
```

Page 215

```
 1   record.                                                   05:38:26
 2       So subject to that, I have no further                05:38:27
 3   questions.                                                05:38:29
 4       MS. JENKINS:  All right.                             05:38:34
 5       I would just state that it's our position that      05:38:35
 6   none of the document issues that you've raised            05:38:37
 7   substantiate -- create a reason to keep the deposition    05:38:40
 8   open.  But obviously we will discuss that outside of      05:38:43
 9   this.  So with that being said, I don't have any          05:38:46
10   redirect.  So I think we can conclude.                    05:38:48
11       THE VIDEOGRAPHER:  The time is 5:38.                 05:38:53
12   That concludes today's deposition.                        05:38:55
13       (Whereupon, the deposition ended at                  05:38:58
14   5:38 p.m.)                                                05:39:01
15           ---oOo---
16
17
18
19
20
21
22
23
24
25
```

Page 216

```
 1               J U R A T
 2
 3       I, SAMMIT ADHYA, do hereby certify under
 4   penalty of perjury, that I have read the foregoing
 5   transcript of my deposition in the matter of
 6   Chasom Brow, et al., vs., Google LLC, taken  on
 7   November 19, 2012; that I have made such corrections
 8   as appear noted herein in ink, initialed by me; that
 9   my testimony as contained herein, as corrected, is
10   true and correct.
11   DATED this ____ day of _____, 2020, at
12   _____.
13   _____
14       SIGNATURE OF WITNESS
15
16       NOTARIZATION  (If Required)
17   State of _____
18   County of _____
19   Subscribed and sworn to (or affirmed) before me on this
20   _____ day of _____, 20____, by
21   _____, proved to me on the basis
22   of satisfactory evidence to be the person who appeared
23   before me.
24   Signature: _____
25           (Seal)
```

Page 217

```
 1       CERTIFICATE OF STENOGRAPHER
 2
 3       I, ANDREA M. IGNACIO, hereby certify that the
 4   witness in the foregoing remote deposition was by me
 5   remotely sworn to tell the truth, the whole truth, and
 6   nothing but the truth in the within-entitled cause;
 7       That said deposition was taken in shorthand by
 8   me, a disinterested person, remotely at the time stated,
 9   and that the testimony of the said witness was
10   thereafter reduced to typewriting, by computer, under my
11   direction and supervision;
12       That before completion of the deposition,
13   review of the transcript [x] was [ ] was not requested.
14   If requested, any changes made by the deponent (and
15   provided to the reporter) during the period allowed are
16   appended hereto.
17       I further certify that I am not of counsel or
18   attorney for either or any of the parties to the said
19   deposition, nor in any way interested in the event of
20   this cause, and that I am not related to any of the
21   parties thereto.
22   Dated: _____
23   _____
24   ANDREA M. IGNACIO, RPR, CRR, CCRR, CLR, CSR No. 9830
25
```



DocuSign Envelope ID: B3336D66-3846-4D52-AF84-B9BCEDF42409

**Deposition Errata**
**Case: *Brown, et al. v. Google LLC***
**Deponent: Sammit Adhya**
**Date of Deposition: November 19, 2021**

I, Sammit Adhya, hereby certify that I have read the transcript of my testimony taken under oath in my deposition on the 19th day of November, 2021; that the transcript is a true, complete record of my testimony and that the answers on the record as given by me are true and correct, with the following exceptions:

| Pg. and Ln. | Now reads | Should read | Reason |
|---|---|---|---|
| 8:7 | Summit | Sammit | Transcription Error |
| 13:15 | masters | master | Transcription Error |
| 16:8 | L-E-N-T-H-E-R-N | L-E-A-T-H-E-R-N | Transcription Error |
| 17:1 | Ralia | Miraglia | Transcription Error |
| 26:23 | Ralia | Miraglia | Transcription Error |
| 32:19 | okay | Okay | Transcription Error |
| 33:4 | pricing | privacy | Transcription Error |
| 65:5 | to not | not to | Transcription Error |
| 77:11 | of | around | Transcription Error |
| 89:8 | would also | also would | Transcription Error |
| 115:15 | would | wouldn't | Transcription Error |
| 118:15 | not able | able | Transcription Error |
| 118:15 | as to does | as does | Transcription Error |
| 123:14 | the research | the user research | Transcription Error |
| 123:21 | time Incognito | time in Incognito | Transcription Error |
| 127:9 | We | we | Transcription Error |
| 138:24 | The challenge | challenge | Transcription Error |
| 144:21 | Incognito | incognito | Transcription Error |
| 144:25 | soon where | soon to see if | Transcription Error |
| 154:22 | 371 | 3271 | Transcription Error |
| 156:8 | product | products | Transcription Error |
| 157:11 | ? The | ? <br> <br> The | Transcription Error |
| 162:10 | LOL | LOL. | Transcription Error |
| 163:16 | ya, | ya | Transcription Error |
| 172:20 | Pseudinomas | Pseudonymous | Transcription Error |
| 174:16 | possible | impossible | Transcription Error |
| 175:14 | 598 | 958 | Transcription Error |
| 175:18 | 598 | 958 | Transcription Error |
| 193:15 | should | they | Transcription Error |
| 193:18 | it's | it was | Transcription Error |

DocuSigned by:
EBE04E265E7547A...

1/20/2022

_____
SAMMIT ADHYA

_____
DATE

# ANSORGE
# EXHIBIT 7

# Redacted Version
# of Document Sought
# to be Sealed

**BLEICHMAR FONTI & AULD LLP**
555 12ᵗʰ STREET, SUITE 1600
OAKLAND, CA 94607

**DiCELLO LEVITT GUTZLER LLC**
ONE GRAND CENTRAL PLACE
60 EAST 42ⁿᵈ STREET, SUITE 2400
NEW YORK, NY 10165

**SIMMONS HANLY CONROY LLC**
112 MADISON AVENUE, 7ᵀᴴ FL.
NEW YORK, NY 10016

September 30, 2021

**VIA ELECTRONIC MAIL**
Special Master Douglas Brush
douglas.brush@accelconsulting.llc

Re:   *Calhoun v. Google LLC*, No. 5:20-cv-05146-LHK-SVK (N.D. Cal.)
      ***Calhoun* Plaintiffs' Letter to Special Master Brush in Response to Google's
      Submission of September 29, 2021 Regarding Production of Plaintiff Data**

**THIS LETTER REFERENCES MATERIAL THAT HAS BEEN
DESIGNATED CONFIDENTIAL OR HIGHLY CONFIDENTIAL**

Dear Special Master Brush:

Plaintiffs respond to Google's email of September 29, 2021. Specifically, Plaintiffs attach correspondence exchanged with Google on Friday, September 24, 2021 and Tuesday, September 28, 2021 so that you have the full picture of the current status. Plaintiffs thank you for your efforts.

Google's letter to Plaintiffs revealed that it has preserved Plaintiff data in ▮ logs that it has not yet identified to Plaintiff. If the Special Master is inclined to grant Google's request for additional time or a meet-and-confer to comply with the Special Master's order from last week, then Plaintiffs respectfully request that Google be ordered to (1) immediately produce all Plaintiff data is has preserved but not yet produced; and (2) address the deficiencies identified in Plaintiffs' letter to Google dated September 28, 2021.

We look forward to further discussions of these issues and others, including Google's mapping of identifiers through the ▮▮▮▮▮▮▮▮▮, ▮▮▮▮▮▮▮, and the ▮▮▮▮ ▮▮▮▮. Regarding that subject, a document recently produced by Google indicates that "[t]he end result" of ▮▮▮▮▮ "is the ability to see all the events across the identifiers spaces and devices owned by a single user."  GOOG-CABR-00893538, at 893548.

Sincerely,

Jay Barnes
jaybarnes@simmonsfirm.com

Lesley Weaver
lweaver@bfalaw.com

David Straite
dstraite@dicellolevitt.com

cc, via email:

Google Counsel

andrewschapiro@quinnemanuel.com
stephenbroome@quinnemanuel.com
jomairecrawford@quinnemanuel.com
violatrebicka@quinnemanuel.com
josefansorge@quinnemanuel.com
qecalhoun@quinnemanuel.com

Accel Consulting
timothy.schmidt@accelconsulting.llc

Plaintiffs' Counsel

akeller@dicellolevitt.com
aprom@dicellolevitt.com
aornelas@bfalaw.com
atruong@simmonsfirm.com
ejohnson@simmonsfirm.com
scruz@dicellolevitt.com

# ANSORGE
# EXHIBIT 8

# Unredacted Version
# of Document Sought
# to be Sealed

1              IN THE UNITED STATES DISTRICT COURT

2            FOR THE NORTHERN DISTRICT OF CALIFORNIA

3                      SAN JOSE DIVISION

4
       BROWN, ET AL,                    )   CV-20-3664-LHK
5                                       )
                       PLAINTIFF,       )   SAN JOSE, CALIFORNIA
6                                       )
            VS.                         )   NOVEMBER 4, 2021
7                                       )
       GOOGLE LLC, ET AL,               )   PAGES 1-53
8                                       )
                       DEFENDANT.       )
9                                       )
       _____ )
10
                   TRANSCRIPT OF PROCEEDINGS
11        BEFORE THE HONORABLE SUSAN VAN KEULEN
               UNITED STATES MAGISTRATE JUDGE
12

13                 A P P E A R A N C E S

14

15     FOR THE PLAINTIFF:      **BY:  AMANDA K. BONN**
                               SUSMAN GODFREY LLP
16                             1900 AVENUE OF THE STARS
                               SUITE 1400
17                             LOS ANGELES, CA 90067

18

19     FOR THE DEFENDANT:      **BY:  ANDREW H. SCHAPIRO**
                               QUINN EMANUEL URQUHART AND
20                             SULLIVAN, LLP
                               191 N. UPPER WACKER DR., STE 2700
21                             CHICAGO, IL 60606

22          APPEARANCES CONTINUED ON THE NEXT PAGE

23     OFFICIAL COURT REPORTER:      SUMMER FISHER, CSR, CRR
                                     CERTIFICATE NUMBER 13185
24

25       PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
            TRANSCRIPT PRODUCED WITH COMPUTER

2

```
 1          APPEARANCES CONTINUED:

 2          FOR THE PLAINTIFF:      BY:  RYAN MCGEE
                                    MORGAN AND MORGAN
 3                                  COMPLEX LITIGATION GROUP
                                    201 N. FRANKLIN STREET, 7TH FLOOR
 4                                  TAMPA, FL 33602

 5
            FOR THE PLAINTIFF:      BY:  HSIAO C. MAO
 6                                       BEKO REBLITZ-RICHARDSON
                                    BOIES SCHILLER FLEXNER LLP
 7                                  44 MONTGOMERY STREET, 41ST FLOOR
                                    SAN FRANCISCO, CA 94104
 8
 9          FOR THE DEFENDANT:      BY:  JOSEF TEBOHO ANSORGE
                                    QUINN EMANUEL URQUHART & SULLIVAN
10                                  51 MADISON AVENUE, 22ND FLOOR
                                    NEW YORK, NY 10010
11
12          FOR THE PLAINTIFF:      BY:  STEPHEN ANDREW BROOME
                                         VIOLA TREBICKA
13                                  QUINN EMANUEL URQUHART & SULLIVAN
                                    865 S. FIGUEROA ST, 10TH FLOOR
14                                  LOS ANGELES, CA 90017

15

16

17

18

19

20

21

22

23

24

25
```

```
1          SAN JOSE, CALIFORNIA                    NOVEMBER 4, 2021

2                         P R O C E E D I N G S

3          (COURT CONVENED AT 10:17 A.M.)

4          (THE FOLLOWING PROCEEDINGS ARE UNDER SEAL.)

5          ///

6              THE CLERK:  CALLING CASE 20-CV-3664.  BROWN, ET AL.

7      VERSUS GOOGLE LLC, ET AL., AND 20-CV-5146, CALHOUN, ET AL.

8      VERSUS GOOGLE, LLC.

9              COUNSEL, PLEASE IDENTIFY YOURSELVES FOR THE RECORD,

10     BEGINNING WITH BROWN.

11             MS. BONN:  GOOD MORNING, YOUR HONOR.

12         AMANDA BONN WITH SUSMAN GODFREY ON BEHALF OF THE BROWN

13     PLAINTIFFS.

14             THE COURT:  GOOD MORNING.

15             MR. MAO:  GOOD MORNING, YOUR HONOR.

16         MARK MAO ON BEHALF OF PLAINTIFFS.

17             MR. REBLITZ-RICHARDSON:  GOOD MORNING, YOUR HONOR.

18         BEKO REBLITZ-RICHARDSON ON BEHALF OF THE PLAINTIFF.

19             THE COURT:  GOOD MORNING.

20             MR. MCGEE:  GOOD MORNING, YOUR HONOR.

21         RYAN MCGEE ON BEHALF OF THE PLAINTIFFS.

22             THE COURT:  GOOD MORNING.

23             MR. SHAPIRO:  GOOD MORNING, YOUR HONOR.

24         ANDREW SHAPIRO ON BEHALF OF GOOGLE.

25             MR. ANSORG:  GOOD MORNING, YOUR HONOR.
```

1          THE COURT:  ALL RIGHT.  WE ARE ON FOR A HEARING ON

2     THE PARTIES' OBJECTIONS TO THE REPORT AND RECOMMENDATION BY THE

3     SPECIAL MASTER, THE REPORT AND RECOMMENDATION FOLLOWING SEVERAL

4     MONTHS OF PROCEEDINGS BEFORE THE SPECIAL MASTER RELATED TO

5     SPECIFIC DISCOVERY ISSUES THAT WERE REFERRED TO HIM.

6          AND I OBVIOUSLY KEPT IN TOUCH WITH THE SPECIAL MASTER, AS

7     I DID WITH THE PARTIES AS WELL, AND KEPT AN EYE ON THE

8     PROGRESSION, AND I WAS PLEASED TO SEE THAT THERE WAS SOME

9     PROGRESS THROUGH THAT PROCESS AND AS WE MOVE TOWARDS

10     IDENTIFICATION AND PRODUCTION OF CERTAIN DOCUMENTS.

11          I SEE THE ORDER NOW BEFORE ME, THAT IS THE RECOMMENDED

12     ORDER FROM THE SPECIAL MASTER, AND A METHODOLOGY ON HOW TO NOW,

13     GIVEN ALL THE WORK THE PARTIES HAVE DONE, THE AREAS OF

14     CONTINUED DISAGREEMENT, HOW TO ADDRESS AND TACKLE THOSE AND

15     REALLY BRING THESE ISSUES TO A CLOSE.

16          AND I READ THROUGH THE ORDER WITH CARE, AND THEN I DID

17     HAVE AN OPPORTUNITY TO DISCUSS IT WITH SPECIAL MASTER BRUSH, I

18     WANTED TO BE SURE I UNDERSTOOD THE COMPONENTS, AND THEN I

19     TURNED TO THE PARTIES' OBJECTIONS AND CONCERNS AND I WENT

20     THROUGH THOSE WITH CARE AS WELL.

21          I ALSO WENT BACK AND LOOKED AT THE PREVIOUS SUBMISSIONS

22     FROM THE PARTIES BEFORE THE COURT.  ON THESE ISSUES, THESE AND

23     RELATED ISSUES, AS WELL AS MY ORDERS TO GIVE, AGAIN, SPECIAL

24     CONSIDERATION, TO BE SURE I HAD THE WHOLE CONTEXT, MY

25     RECOLLECTION WAS REFRESHED AS TO WHERE WE HAD BEEN, AND TO THE

1    ISSUES THAT REMAIN.

2         IN REVIEWING THE OBJECTIONS ON BOTH SIDES, I DON'T SEE

3    ARGUMENTS THAT I HAVE NOT SEEN BEFORE, EITHER DIRECTLY BEFORE

4    ME OR BEFORE THE SPECIAL MASTER, EITHER THAT HAVE COME UP

5    EITHER IN BRIEFING OR AT THE HEARING.  AND I THINK I HAVE A

6    PRETTY GOOD IDEA AS TO WHAT THE PARTIES' CONCERNS ARE, AND I

7    LOOK FORWARD TO THE DISCUSSION HERE TODAY.

8         A WORD ABOUT MY PREVIOUS ORDERS, WHICH BOTH SIDES, ALL

9    PARTIES REFER TO FROM TIME TO TIME IN THEIR OBJECTIONS, WHICH

10   IS THIS:  TO THE EXTENT MY ORDERS PREDATE REFERRAL TO THE

11   SPECIAL MASTER, I VIEW THOSE AS A STARTING POINT, AND THEN I

12   REFERRED THE MATTER TO THE SPECIAL MASTER, EXPECTING THE

13   APPLICATION OF HIS EXPERTISE AND HIS WORK AND TIME WITH YOU

14   ALL, TO REALLY HONE AND FINE TUNE MY ORDER AS HIS EXPERTISE

15   DETERMINES, TO FRANKLY, BETTER HONE IT AND BRING IT WITHIN ANY

16   PARAMETERS WITH REGARDS TO WHAT IS RELEVANT AND PROPORTIONAL.

17        I SEE THE PROCESS ON A CONTINUUM, IF YOU WILL.  AND THAT'S

18   HOW I LOOKED AT THE CONTEXT OF PROCEEDINGS, THE SPECIAL

19   MASTER'S RECOMMENDATION AND THE PARTIES' OBJECTIONS TO THOSE.

20        OKAY.  I THINK IT'S EVIDENT FROM THE SPECIAL MASTER'S

21   REPORT AND RECOMMENDATION, THAT THE PARTIES HAVE BEEN GIVEN

22   LOTS OF OPPORTUNITY TO NEGOTIATE DISCOVERY ISSUES, REACH

23   COMPROMISES, WHERE YOU CAN'T REACH A COMPROMISE, TO ASK TO BE

24   HEARD TO TRY TO DEVELOP OTHER WAYS AROUND WHATEVER THE IMPASSE

25   IS, AND THAT PROCESS CONTINUES TODAY.

1    AND THE RESULT OF TODAY'S PROCEEDINGS WILL BE A COURT

2    ORDER THAT WILL, YOU KNOW, I EITHER ADOPT THE SPECIAL MASTER

3    ORDER, ADOPT WITH MODIFICATIONS, BUT IT WILL LEAD TO A CLOSE OF

4    DISCOVERY ON THESE ISSUES.  WE ARE DRIVING THIS TO A

5    CONCLUSION.

6    YOU ALL HAVE YOUR CASE CALENDARS, YOU ALL HAVE OTHER

7    BRIEFING SCHEDULES, SO THAT'S THE OBJECTIVE AND THAT'S WHERE WE

8    ARE HEADED, AND WHAT WILL COME OUT OF THIS PROCEEDING WILL BE A

9    DISCOVERY ORDER FROM THE COURT.

10    AND ALL I KNOW FOR SURE IS THAT WE WILL HAVE -- IT WILL

11    HAVE A TIGHT TIMELINE.  I APPRECIATE THE TIMELINES IN THE

12    SPECIAL MASTER'S RECOMMENDATION, AND WHETHER THOSE PRECISE

13    TIMELINES STAY IN PLACE OR NOT, IT WILL CERTAINLY BE VERY

14    TIGHT, AGAIN, WITH AN EYE TO THE OVERALL CASE SCHEDULE IN BOTH

15    CASES.

16    ALL RIGHT THEN.  LET'S GO AHEAD AND GET UNDER WAY, AND WE

17    WILL START WITH BROWN, AND WE WILL START WITH THE PLAINTIFF'S

18    OBJECTIONS AND THEN WE WILL TURN TO GOOGLE.  AND I DO HAVE HARD

19    COPIES OF THE PRESENTATION SLIDES THAT WERE PROVIDED, WHICH

20    ACTUALLY I LIKE, SO I CAN ALWAYS SCRIBBLE ON THEM.  AND I JUST

21    ASK, BECAUSE WE ARE USING THE P.A. SYSTEM, WE HAVE THE SPECIAL

22    MASTER ON ZOOM, THAT COUNSEL SPEAK INTO THE MICROPHONES, SPEAK

23    SLOWLY AND CLEARLY.

24    IF YOU ARE MORE COMFORTABLE SITTING AT TABLE AND USING THE

25    MICROPHONE THERE, IN LIGHT OF OUR COVID PRECAUTIONS, YOU ARE

1

2

3

4               **CERTIFICATE OF REPORTER**

5

6

7

8               I, THE UNDERSIGNED OFFICIAL COURT

9      REPORTER OF THE UNITED STATES DISTRICT COURT FOR

10     THE NORTHERN DISTRICT OF CALIFORNIA, 280 SOUTH

11     FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY

12     CERTIFY:

13               THAT THE FOREGOING TRANSCRIPT,

14     CERTIFICATE INCLUSIVE, CONSTITUTES A TRUE, FULL AND

15     CORRECT TRANSCRIPT OF MY SHORTHAND NOTES TAKEN AS

16     SUCH OFFICIAL COURT REPORTER OF THE PROCEEDINGS

17     HEREINBEFORE ENTITLED AND REDUCED BY COMPUTER-AIDED

18     TRANSCRIPTION TO THE BEST OF MY ABILITY.

19

20

21

22

23

24     _____

25     SUMMER A. FISHER, CSR, CRR
       CERTIFICATE NUMBER 13185          DATED: 11/10/21

# ANSORGE
# EXHIBIT 9

# Unredacted Version
# of Document Sought
# to be Sealed

| | |
|---|---|
| **From:** | Timothy Schmidt <timothy.schmidt@accelconsulting.llc> |
| **Sent:** | Monday, November 22, 2021 7:50 PM |
| **To:** | Tracy Gao; QE Calhoun; Douglas Brush |
| **Subject:** | Re Calhoun v. Google LLC (N.D. Cal. Case No. 20-cv-05146) - Confidential |

**[EXTERNAL EMAIL from timothy.schmidt@accelconsulting.llc]**

Ms. Gao, et. al.,

Thank you for putting together the materials you provided last week. We have reviewed the contents of the various packages you provided. In order for us to effectively review the documents, we are associating items to the Order's Exhibit 1 based upon the section and where applicable, one or more numbered items within that section.

The Special Master's evaluation of the results provided us for content and compliance with the Order follows:

1. Section 1 (searched data sources listing, search dates, bates ranges) – The Special Master finds that the document provided, 2021-11-18 Calhoun Omnibus Sheet.xlsx (Tab 1) satisfies the Order's requirements.

2. Section 1 (declaration) – The Special Master finds that the documents found within the file, 11.18.2021.zip (contains files: 2021-11-18 Declaration [dckt 383_0].pdf, Calhoun - Exhibit A - REDACTED COPY.pdf, Calhoun - Exhibit A - UNREDACTED COPY.pdf, Calhoun - Exhibit B - REDACTED COPY.pdf, and Calhoun - Exhibit B - UNREDACTED COPY.pdf) satisfy the Order's requirements.

3. Section 2 – The Special Master finds that the document provided, 2021-11-18 Calhoun Omnibus Sheet.xlsx (Tab 2) satisfies the Order's requirements.

4. Section 3, Number 1 – The Special Master finds that the information found in Tabs 2 and 3.1.1 - 3.1.5, 3.2.1 – 3.2.2 of 2021-11-18 Calhoun Omnibus Sheet.xlsx, 2021-11-18 Brown & Calhoun - Special Master Submission in Response to Nov. 12 Order.pdf, and 2021-11-18 Documentation on Data Sources and Tools.pdf will satisfy the Order's requirements once Google confirms to the Special Master that ALL field names and descriptions have been provided for all data sources described in Section 3, Number 1 of Exhibit 1 of the Order. If ALL field names and their descriptions have not been provided for the relevant data sources, they will need to be provided to the Special Master and confirmed to the Special Master to have been provided in full by November 23, 2021.

5. Section 3, Numbers 2-5 – While the Special Master has been provided the names of the data sources and tools used to carry out searches on the data sources searched before November 12, 2021 that are outside of those identified in Section 3, Number 1, and the names of data sources containing sync-state signals (including Zwieback identifiers), "back-end logs", and Biscotti-keyed data, the Special Master has not been able to find that the remaining information ordered has been provided in full, specifically, schemas, field names, and field descriptions for the data sources identified in Section 3, Numbers 2-5 for the Calhoun case excepting those identified in Section 3, Number 1. This information, including Schema, list of all fields, description of each field must be provided to the Special Master by November 23, 2021.

6. Section 5 Main Paragraph, Numbers 1-3 – The Special Master finds that the documents provided by Google, 2021-11-16 Calhoun v. Google -Special Master Submission in Response to Nov. 12 Order 5.1-5.3.pdf, GOOG-CALH-00651647_HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY.xlsx, GOOG-CALH-00651648_HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY.xlsx, GOOG-CALH-00652282_HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY.csv satisfies the Order's requirements.

Plaintiffs have provided the following input with regards to their required tasks:

1. Section 6 – Plaintiffs have provided Biscotti identifiers and other related identifiers within the body of the correspondence and Exhibits entitled, 2021.11.17 - Calhoun v Google - Plaintiffs' Letter re Biscotti Information

wAttachments.pdf. The Special Master has approved the Biscotti and related identifiers found in the correspondence for use in searches and iterative searches of Biscotti ID containing data sources.

We are providing you with access to the relevant information referenced in the above email via the following ShareFile folder accessible only to Ms. Gao. You will receive a ShareFile notification shortly.

Number 6 above satisfies the dependency for providing the first round of search term hits for Section 5, Numbers 1-3. The first iterative round of search terms for Section 5 will be due from Plaintiffs on 11/24/2021.
Number 1 above (in the Plaintiffs' tasks) satisfies the dependency for providing Biscotti-Keyed data.  Google is responsible for performing searches and providing full records of each responsive and relevant search term hit on 11/29/2021.

Thank you,
Tim Schmidt

*Timothy Schmidt*
Consultant
**M** 202.577.5302
**E** timothy.schmidt@accelconsulting.llc

**Accel Consulting LLC**
BOULDER, CO 80301

This message is intended only for the designated recipient(s). It may contain confidential or proprietary information and may be subject to other contractual or confidentiality protections. If you are not a designated recipient, you may not review, copy or distribute this message. If you receive this message in error, please notify the sender by reply email and delete this message.

# ANSORGE
# EXHIBIT 10

# Redacted Version of
# Document Sought
# to be Sealed

**BLEICHMAR FONTI & AULD LLP**
555 12th STREET, SUITE 1600
OAKLAND, CA 94607

**DiCELLO LEVITT GUTZLER LLC**
ONE GRAND CENTRAL PLACE
60 EAST 42nd STREET, SUITE 2400
NEW YORK, NY 10165

**SIMMONS HANLY CONROY LLC**
112 MADISON AVENUE, 7TH FL.
NEW YORK, NY 10016

December 29, 2021

**VIA ELECTRONIC MAIL**
Special Master Douglas Brush
douglas.brush@accelconsulting.llc
Timothy Schmidt
timothy.schmidt@accelconsulting.llc

  Re: *Calhoun v. Google LLC*, No. 5:20-cv-05146-LHK-SVK (N.D. Cal.)
     Plaintiffs' Submission

Dear Special Master Brush and Mr. Schmidt:

 The *Calhoun* Plaintiffs submit this letter in compliance with the Special Master's request to identify ■ data sources of Plaintiffs' data for Google to search. In making this submission, *Calhoun* Plaintiffs repeat their objection to Google's production of just a subset of the data it unlawfully obtained from Plaintiffs. Plaintiffs will be materially prejudiced by Google's failure to identify and produce the full scope of the information that that it took from Plaintiffs without authorization and to produce samples sufficient to establish proof of it on a class-wide basis. Indeed, Google argues just that its opposition to class certification:

> Although Plaintiffs also allege that 'in many cases,' Google intercepted 'the contents of users' POST communications FAC ¶ 141(c), which theoretically could include search terms of messages. *Plaintiffs do not and cannot show Google received such information class-wide.*

Google's Opposition to Plaintiffs' Motion for Class Certification at 18 (emphasis added).

 Plaintiffs further object to further proceedings permitting Google to produce only a subset before there has been a stipulation or court determination that it would be unduly burdensome for Google to make a full production of the Plaintiffs' data that it unlawfully took and used.

 Plaintiffs also object to the arbitration limit of ■ logs. Plaintiffs have made their selections for this round based largely on the retention periods provided. However, there are additional logs with shorter retention periods that are of different types and likely contain highly relevant information that will not be present in the ■ logs identified. Plaintiffs have made their current log selections with the understanding that this will be an iterative process, with opportunities to make additional selection. This is merely one step of the process, not the completion.  In any event, Plaintiffs specifically request that they be permitted to request production of sample data sets for each of the logs in question, or, at the very least, each separate type of log in question.

Counsel for Google
December 29, 2021
Page 2

SIMMONS HANLY CONROY LLC
DiCELLO LEVITT GUTZLER LLC
BLEICHMAR FONTI & AULD LLP

**A.  Selected Data Sources**

Subject to and without waiving the objections set forth above, and in accordance with the Special Master's directives, Plaintiffs select the following ▓ logs for this round:



**B.  Search by Gaia, ZWBK, and Biscotti for Each Data Source**

Plaintiffs' request that Google search the ▓ identified logs by Gaia, Zwieback, Biscotti, and any identifier that can be extracted from 'cid' value, _ga, _gid, or other identifiers provided from Plaintiffs to Google – as relevant to each respective log. Plaintiffs note that the Special Master's request contemplated that Plaintiffs themselves would craft the syntax of the search terms for each log. However, Dr. Zubair Shafiq has informed us that Google has not provided sufficient information for this to occur. The most prominent example of why comes from Biscotti IDs. As Plaintiffs understand it, the Biscotti cookies that are visible to non-Googlers contain an encrypted form of a separate Biscotti ID. Therefore, the Biscotti cookie values of which we are aware will not correspond with a Biscotti ID that we could plug into any of Google's systems to conduct a search. Instead, we believe it would have to be decrypted first. Rather than craft the search terms based on incomplete information, Plaintiffs have submitted relevant cookie values for Google to conduct the searches.

**C.  Full Information About Selected Fields**

Plaintiffs request that Google provide more information about a subset of fields for the above ▓ selected logs. These fields are highlighted in the attached Excel documents containing lists of fields for each of the requested logs – and a global list is provided at the end of this letter.

Counsel for Google
December 29, 2021
Page 3

SIMMONS HANLY CONROY LLC
DiCELLO LEVITT GUTZLER LLC
BLEICHMAR FONTI & AULD LLP

**D.  Search and Produce with Full Privacy Permissions Enabled**

   Previous production from Google have included fields that were not populated because Google did not conduct the search with full privacy permissions enabled. For example, production of X-client data in GOOG-CALH-00492852 redacted values for RUL, IDE, and DSID cookies. Plaintiffs request that Google search the data sources with permissions fully enabled such that results will not include redacted information.

**E.  Footprints and Oz as One Data Source Each – and Answers re Sawmill**

   Plaintiffs identify ████████ and ██ as a single data source for each because it is our understanding that there are tools available for these sources that make it easy to search across multiple (perhaps dozens or hundreds) of underlying data sources in an efficient manner. For example, the GOOG-CALH-00039128 is a single Excel file that contains results for searches of multiple sub-data sources within ████████ As such, Plaintiffs believe it is reasonable to identify ████████ and ██ respectively, as single search locations. In addition, Plaintiffs have attached GOOG-CALH-00027783 that suggests ████████ Gaia searches are not burdensome.

   Plaintiffs suspect that Google might also be capable of searching multiple ████ logs in an efficient manner and suggest that the Special Master inquire whether this is true.

**F.  Production of X-Client Data Header Information**

   Google's identification of fields does not specifically list the X-client data header in any log. However, Google's submission to the Special Master on November 18, 2021 stated that it produced "X-Client Data Header data" for Plaintiff Michal Henry in GOOG-CALH-00492852. Plaintiffs request that Google identify the source of GOOG-CALH-00492852 and all other sources where the X-Client Data Header value may appear.

**G.  Production of Data Google Has Preserved But Not Produced**

   Plaintiffs request that Google produce all data that it has previously identified as being "preserved" for Plaintiffs but not produced. There is no burden of collection since this had already been done. To this end, Plaintiffs have attached an Excel spreadsheet labeled "G - List of Data Sources Googles States are Preserved But Not Produced."

**H.  Explaining re Lack of Sync Signal Requests**

   Plaintiffs note that this round of search requests does not include any logs that Google has identified as containing direct Sync signals. The reason for this is that we expect such logs will

Counsel for Google                                SIMMONS HANLY CONROY LLC
December 29, 2021                               DiCELLO LEVITT GUTZLER LLC
Page 4                                        BLEICHMAR FONTI & AULD LLP

contain null sets given the short retention periods. Plaintiffs request that the Special Master consider Sync signals (direct and indirect) as part of the Parties' dispute about data preservation and create a separate process for Google to provide Plaintiffs with more information about all such logs, their fields, and their retention periods. Plaintiffs will send separate correspondence regarding this dispute.

### I.  Production of ███████████████ Log Data

Plaintiffs also did not include any requests for what Google has labeled "████████████████" logs. Similar to the Sync signal logs, we refrained from doing so in the initial request because we believe it would result in null sets for many Plaintiffs and did not wish to prioritize their production ahead of logs for which there would not be null sets. Nevertheless, these logs are relevant and should be searched and produced. Plaintiffs separately request that Google produce all data contained in ███████████████████, ████████████████████████, ████████████████████, and ████████████████████████████.

### J.  Request for Additional Data Sources

As stated above, Plaintiffs' selections were dictated largely by retention period – reasoning that data sources with short retention periods will likely return null sets. The exceptions are the logs identified as Nos. 14 and 15 for analytics-collection information, which are contained in logs with just ████████ retention periods. Plaintiffs anticipate this will result in null sets for all but the test accounts submitted by Dr. Shafiq, with are accounts for Bran Stark, Ned Stark, and Robb Stark with the email addresses bran83stark@gmail.com, nedstark904@gmail.com, and robb3815@gmail.com, respectively.[1] In so doing, we were forced by the arbitrary limit to forego a request for information from logs with longer retention periods. Plaintiffs respectfully request permission to submit additional data sources for production. With the Special Master's permission, Plaintiffs can provide such information quickly.

Sincerely,

Jay Barnes
jaybarnes@simmonsfirm.com

---

[1] Visible identifiers for these accounts have been provided with this submission. In addition, the necessary Stored Communications Act consents have previously been emailed to Google.

Counsel for Google
December 29, 2021
Page 5

SIMMONS HANLY CONROY LLC
DiCELLO LEVITT GUTZLER LLC
BLEICHMAR FONTI & AULD LLP

Lesley Weaver
lweaver@bfalaw.com

David Straite
dstraite@dicellolevitt.com

cc, via email:

Plaintiffs' Counsel
akeller@dicellolevitt.com
aprom@dicellolevitt.com
aornelas@bfalaw.com
atruong@simmonsfirm.com
ejohnson@simmonsfirm.com
scruz@dicellolevitt.com

# ANSORGE
# EXHIBIT 11

# Sealed in its
# Entirety

# ANSORGE
# EXHIBIT 12

# Redacted Version
# of Document Sought
# to be Sealed

| | |
|---|---|
| **From:** | Timothy Schmidt <timothy.schmidt@accelconsulting.llc> |
| **Sent:** | Thursday, December 30, 2021 1:41 PM |
| **To:** | Jay Barnes; Josef Ansorge; Tracy Gao |
| **Cc:** | David Straite; Lesley Weaver; Amy Keller; Adam Prom; Angelica Ornelas; An Truong; Eric Johnson; Sharon Cruz; Douglas Brush; QE Calhoun |
| **Subject:** | Re: Calhoun Plaintiffs Submission |
| **Attachments:** | 2021.12.29 - Calhoun Plaintiffs Submission to Special Master Brush.pdf |

**[EXTERNAL EMAIL from timothy.schmidt@accelconsulting.llc]**

Mr. Barnes, et al.,

Thank you for providing an update to your earlier letter concerning the ▮ data sources and keywords Special Master Brush requested you provide us last week. Special Master Brush and I have reviewed, analyzed, and discussed your submission.

With respect to the content preceding Section A; this content is outside the scope of information requested in Exhibit 1, Section 4.

**Data source selection and Search terms and criteria**:

1. Special Master Brush accepts "*A. Selected Data Sources*" and the first paragraph of "*E. ▮▮▮▮ and* ▮ *as One Data Source Each – and Answers re* ▮▮▮▮ as your selection of data sources to be searched relevant to Exhibit 1, Section 4.
2. Special Master Brush accepts "*B. Search by Gaia, ZWBK, and Biscotti for Each Data Source,*" "*D. Search and Produce with Full Privacy Permissions Enabled,*" and a portion of "*J. Request for Additional Data Sources*" (J) as the criteria and search terms to be applied by Google in carrying out searches of the data sources identified in number 1 above. The portion of "J" which will be withheld from this request as it is outside the scope of Exhibit 1, Section 4 (at this time) is the final two sentences of the section beginning with "Plaintiffs respectfully..." and ending with "...information quickly."
3. Of note are cookie values that may be provided within the attachments you have provided for search criteria and terms; Special Master Brush has determined that Google is required to decrypt or decode all these that have been provided and to use an identifier or other identifying item that is found to be contained within those cookie values as search terms. Google will also produce the entire contents of all cookies that have been decrypted or decoded to you as part of this exercise.
4. All search terms are to be searched across ALL fields of ALL data sources identified for searching.

**Field descriptions** – per Section 3 of Exhibit 1, Special Master Brush, has determined that Google will produce data source field descriptions as described in Section "C. Full Information About Selected Fields" for all field names identified in yellow highlighting in Attachments C4, C5, C7-C17. C6 field descriptions have already been provided and are not ordered again unless Google has identified significant errors or omissions in its first issuance of this information in the "Omnibus" documents.

**Outside scope of Exhibit 1, Section 4** – Special Master Brush has determined that Sections F, G, H, and I are outside the scope of Exhibit 1, Section 4 at this time. Therefore, the tasks requested in these sections are not required to be performed by Google at this time.

Ms. Gao, Mr. Ansorge, et al.,

Plaintiffs have identified data sources and criteria and search terms for Google to search identified data sources. Please carry out your searches as indicated above and per the relevant portions of Mr. Barnes's letter of December 29, 2021 (attached). Search results will include all fields from responsive and relevant search term hits irrespective of the contents of each field in each responsive record. Also, as part of the production for this exercise, Google will provide the search terms, criteria, and tools used to carry out each data source search.

We are also providing the additional files and information sources referenced in Mr. Barnes's letter to allow your technical staff to successfully carry out the first iteration of searches over the subset of data sources that the Calhoun Plaintiffs have requested be searched. You will find these materials on our ShareFile in a folder entitled "20211230".

We realize that it has taken more than the three days originally envisioned to perform search activities. Therefore, we are extending the time frame from three to seven calendar days from tomorrow, with the due date being January 7, 2022, Close of Business Eastern Standard Time.

As these processes have been delayed and the discovery process is soon coming to a close, we implore you to enlist adequate numbers of staff across all of the required disciplines to complete searches and provisioning of field definitions in the time allotted.

Thank you,
Tim Schmidt

**Timothy Schmidt**
Consultant
**M** 202.577.5302
**E** timothy.schmidt@accelconsulting.llc

**Accel Consulting LLC**
BOULDER, CO 80301

This message is intended only for the designated recipient(s). It may contain confidential or proprietary information and may be subject to other contractual or confidentiality protections. If you are not a designated recipient, you may not review, copy or distribute this message. If you receive this message in error, please notify the sender by reply email and delete this message.

---

**From:** Jay Barnes <jaybarnes@simmonsfirm.com>
**Date:** Wednesday, December 29, 2021 at 5:06 PM
**To:** Timothy Schmidt <timothy.schmidt@accelconsulting.llc>, Douglas Brush <douglas.brush@accelconsulting.llc>, David Straite <dstraite@dicellolevitt.com>, Lesley Weaver <lweaver@bfalaw.com>, Amy Keller <akeller@dicellolevitt.com>, Adam Prom <aprom@dicellolevitt.com>, Angelica Ornelas <aornelas@bfalaw.com>, An Truong <atruong@simmonsfirm.com>, Eric Johnson <ejohnson@simmonsfirm.com>, Sharon Cruz <scruz@dicellolevitt.com>
**Subject:** Calhoun Plaintiffs Submission

Special Master Brush and Mr. Schmidt:

Please find attached a letter with the Calhoun Plaintiffs submission. I will follow with an invitation to a Box.com folder that contains various attachments referenced in the letter.

Please do not hesitate to contact me if there are any questions or issues with the submission.

Sincerely,
Jay Barnes



Jay Barnes
One Court Street, Alton, IL 62002
Ph: 618.259.2222
jaybarnes@simmonsfirm.com

This e-mail and any files transmitted with it are privileged and confidential, and they are intended solely for the use of the intended recipient(s). If you are not an intended recipient, you should notify the sender immediately, delete this e-mail and any files transmitted with it from your system, and destroy or return all copies.

# ANSORGE
# EXHIBIT 13

# Unredacted Version
# of Document Sought
# to be Sealed

| | |
|---|---|
| **From:** | Timothy Schmidt <timothy.schmidt@accelconsulting.llc> |
| **Sent:** | Saturday, February 26, 2022 5:19 PM |
| **To:** | QE Brown; rmcgee@forthepeople.com; GOOGLETEAM@lists.susmangodfrey.com; Jay Barnes; Lesley Weaver; David Straite; Amy Keller; Adam Prom; Angelica Ornelas; An Truong; Eric Johnson; Sharon Cruz |
| **Cc:** | Douglas Brush |
| **Subject:** | Brown ((20-3664) Calhoun (20-5146) v. Google - Informal Parties' Experts Meet and Confer Conference this Monday - Confidential |

**[EXTERNAL EMAIL from timothy.schmidt@accelconsulting.llc]**

All,

Special Master Brush and I met at length with Magistrate Judge van Keulen this today, Saturday, February 26, 2022.

Special Master Brush orders the Parties to hold an initial meeting with their respective experts to design a methodology for finishing Dremel tool searches. Additionally, the Dremel tool results will aid and create searches of historical data sets for sources identified by Brown and Calhoun Plaintiffs. Additional meetings will likely be necessary throughout the week to complete discovery.

The methodology will use the Flume (or other relevant) tool(s) to search four (4) five (5) day periods over a four (4) month period, which still retains data for the relevant data sources. Where data sources do not hold four (4) or more months of history, the five-day periods to be searched will be within whatever the remaining period those data sources may maintain.

The meeting will include up to two experts from each Plaintiff and for Google, enough experts that can develop relevant Flume scripts for ALL relevant data sources.

The meeting will begin at 10:00 am EST and be presided over by Special Master Brush.

The outcomes of this initial meeting will be as follows:
1. Completing productions for Dremel searches to meet the discovery deadline.
2. Additional meetings with experts without the input of attorneys throughout the week.
3. Flume search scripts adequate to search for Plaintiff identified criteria across each data source for which the Dremel tool was used or for which Google did not produce results that covered the entire historical period of data held in a data source.
4. Date range selections to be searched for each data source.
5. Timeline and estimated completion date for each data source's Flume search script's completion and production to Plaintiffs.

Each party will need to circulate your list of experts and match them to relevant data sources where applicable; this is due no later than 5:00 pm tomorrow, Sunday, February 27, 2022.

As Google is involved in both matters, if Google can circulate a Zoom invite, things would be easiest to manage from a logistical standpoint.

Thank you,
Tim Schmidt

**Timothy Schmidt**
Consultant
**M** 202.577.5302
**E** [timothy.schmidt@accelconsulting.llc](mailto:timothy.schmidt@accelconsulting.llc)

**Accel Consulting LLC**
BOULDER, CO 80301

This message is intended only for the designated recipient(s). It may contain confidential or proprietary information and may be subject to other contractual or confidentiality protections. If you are not a designated recipient, you may not review, copy or distribute this message. If you receive this message in error, please notify the sender by reply email and delete this message.

# ANSORGE
# EXHIBIT 14

# Redacted Version
# of Document Sought
# to be Sealed

CONFIDENTIAL

```
1              IN THE UNITED STATES DISTRICT COURT

2            FOR THE NORTHERN DISTRICT OF CALIFORNIA

3                     SAN JOSE DIVISION

4                       ---oOo---

5    PATRICK CALHOUN, et al.,      )
     on behalf of themselves and   )
6    all others similarly          )
     situated,                     )
7                                  )
             Plaintiffs,           )Case No.
8                                  )5:20-cv-5146-LHK-SVK
     vs.                           )
9                                  )
     GOOGLE LLC,                   )
10                                 )
             Defendant.            )
11   _____)

12

13              Zoom Special Master Hearing

14                    CONFIDENTIAL

15              Thursday, February 24, 2022

16

17

18

19

20

21

22

23   Katy E. Schmidt

24   RPR, RMR, CRR, CSR 13096

25   Veritext Job No.: 5107673
```

                                              Page 1

```
 1        IN THE UNITED STATES DISTRICT COURT
 2      FOR THE NORTHERN DISTRICT OF CALIFORNIA
 3            SAN JOSE DIVISION
 4            ---o0o---
 5  PATRICK CALHOUN, et al.,    )
    on behalf of themselves and  )
 6  all others similarly         )
    situated,                    )
 7                               )
           Plaintiffs,     )Case No.
 8                         )5:20-cv-5146-LHK-SVK
    vs.                    )
 9                         )
    GOOGLE LLC,            )
10                         )
           Defendant.      )
11  _____)
12
13
14
15
16
17
18
19
20
21
22
23        Special Master Hearing on Thursday, February
24  24, 2022, at 8:02 a.m., virtually before Kathryn E.
25  Schmidt, RPR, RMR, CRR, CSR 13096.
```
Page 2

```
 1  APPEARANCES:
 2  For The Plaintiffs:
 3        (Appeared via Zoom)
 4     DICELLO LEVITT GUTZLER
       BY: DAVID A. STRAITE, Esq
 5     BY: SHARON CRUZ, Esq
       One Grand Central Place
 6     60 East 42nd Street, Suite 2400
       New York, New York 10165
 7     646 933 1000
       dstraite@dicellolevitt.com
 8
       SIMMONS HANLY CONROY
 9     BY: JASON "JAY" BARNES, Esq
       BY: AN TRUONG, Esq
10     One Court Street
       Alton, Illinois 62002
11     618 693 3104
       jaybarnes@simmonsfirm.com
12
       BLEICHMAR FONTI & AULD LLP
13     BY: ANGELICA ORNELAS, Esq
       555 12th Street, Suite 1600
14     Oakland, California 994607
       415 445 4003
15     aornelas@bfalaw.com
16  For The Defendants:
17        (Appeared via Zoom)
18     Quinn Emanuel Urquhart & Sullivan LLP
       BY: JOSEF ANSORGE, Esq
19     BY: ANDREW SCHAPIRO, Esq
       BY: BRETT WATKINS, Esq
20     BY: TRACY GAO, Esq
       51 Madison Avenue, 22nd Floor
21     New York, New York 10010
       212 849 7000
22     josefansorge@quinnemanuel.com
23  Also present:
24     Douglas Brush, Special Master
       Timothy Schmidt, Special Master
25
            ---o0o---
```
Page 3

```
 1             DENVER, COLORADO
 2   THURSDAY, FEBRUARY 24, 2022; 8:02 A.M.
 3               ---o0o---
 4       SPECIAL MASTER BRUSH:  Let's go on the record.
 5       And, yeah, there were a series of e-mails last
 6   night over some issues about the updated discovery
 7   charts that have to go before the Court.
 8       And I do want to -- I do appreciate people
 9   coming to me to resolve issues like that.  But there are
10   certain things that are going to be on the balance of
11   that.
12       And right off the bat, I do want to discuss
13   that because there are issues that I have with that that
14   I can't really go to the judge on certain things such as
15   this, and kind of go outside of where my lanes are.
16       But I certainly want to hear on the record
17   what parties have to say about this.  So hopefully
18   there's something that you all can come to an agreement
19   on so it's not something that spurs out of control and
20   we have an issue that distracts what we're doing in
21   front of the judge with other issues that are not in
22   front of me.
23       MR. SCHAPIRO:  Yeah.  So --
24       MR. BARNES:  Hold on, Mr. Schapiro.  One
25   moment -- hold on just one moment.
```
Page 4

```
 1       Before Mr. Schapiro begins, the plaintiffs
 2   object to Mr. Schapiro raising this issue at all before
 3   the Special Master.  These are not issues before the
 4   Special Master.  So we're going to object to raising
 5   these issues at all.  And now we can have the discussion
 6   about it.
 7       But before you began, Mr. Schapiro, I wanted
 8   to make our objection.
 9       So go ahead.
10       MR. SCHAPIRO:  So -- so I want to just clarify
11   where we are and where this came from.  And I hope that
12   we will be able to work it out with Mr. Straite and the
13   others who are working on this.  It's fine.
14       And granted, it's unorthodox, although I have
15   a different case where -- probably because the
16   Special Master has a slightly different role there.  The
17   Special Master has sort of been acting as a go-between
18   because -- because we are not in that case, similar to
19   here, in a position where we can just e-mail the
20   Magistrate Judge out of the blue.
21       So we're certainly not trying to make any more
22   work for anyone, but we are sort of at a loss here.  And
23   I'm disadvantaged slightly because Viola isn't on, who's
24   been in the trenches on this.
25       But we have obligations on a very tight
```
Page 5

2 (Pages 2 - 5)

CONFIDENTIAL

1 burden.
2      And so my second bullet point on this general
3 topic is we want to tee this up.  And to the extent
4 Google has made all these arguments about undue burden
5 and massive burden, we need binding findings of fact
6 that production of data for six people is unduly
7 burdensome for a case that Google says would be
8 historic.
9      And you can't -- Google can't make the
10 argument about burden without also taking the
11 responsibility of what comes with that argument.
12      So Mr. Straite --
13      MR. ANSORGE:  I think I'm the only person with
14 the overwhelming sense of déjà vu because we've
15 addressed these issues a number of times.  And
16 preservation is not the same as production.  It's
17 something different from production.  And that's all
18 we're saying here.  We're not trying to --
19      MR. STRAITE:  Right.
20      MR. ANSORGE:  -- make other arguments.
21      MR. STRAITE:  May I ask --
22      MR. BARNES:  We're not arguing about that.
23      MR. STRAITE:  May I ask a very simple
24 question before we get into -- you know, those are very
25 important questions that Mr. Barnes raised.

Page 90

1      Can I ask a simple question just so we know?
2      Now we have a court reporter.  I may have
3 missed this.  Joey, did you say that early in this case
4 Google searched for, identified, segregated, and is
5 preserving plaintiff data that's not been produced in
6 this case?  Yes or no.
7      MR. ANSORGE:  We'll have to look at what the
8 court reporter's transcribed.  I'm pretty sure I did not
9 say that.  I have no recollection of saying that.
10      Does that sound like something I just said?
11      MR. STRAITE:  Is there plaintiff data in this
12 case that Google has identified and segregated and
13 preserved but not produced?
14      MR. ANSORGE:  That's one I'd have to go and
15 look at in particular.  I know there's been --
16 preservation steps have been taken.  I understand that
17 those searches and steps are different from the specific
18 targeted searches that we've been going through.
19      I take -- and, Mr. Straite, let me address it
20 this way:  You're going to have opportunities, as you've
21 had many, to ask witnesses questions at deposition.
22      We've -- well, I'm sorry if you're laughing
23 about it, Mr. Barnes, but we're almost up on two hours
24 and I feel like for some reason it's almost like a
25 medieval game where I have to stand in for all your

Page 91

1 grievances for Google, and we're happy to do that.  But
2 if you're converting this into a deposition, with
3 respect, I'd ask that we approach it differently.
4      You're seeking some specific testimony from
5 counsel here under a meet and confer.  I don't think
6 that's going to get us to the goal quicker --
7      MR. STRAITE:  Okay.
8      MR. ANSORGE:  -- or to the task quicker.
9      MR. STRAITE:  That's fair.  So the question I
10 have --
11      MR. ANSORGE:  Well, you have questions,
12 discovery on discovery questions.  I think there's ways
13 in which some of those can be posed in appropriate
14 format.
15      This doesn't strike me as that.  This is not
16 something where I would want to shoot from the hip and
17 say "I'll represent to you this is stored here.  This is
18 here.  This cookie is sent here."
19      No, Mr. Barnes.  They are complex issues that
20 would require us to sit down and actually look at them
21 because we want to be precise in our responses.
22      MR. STRAITE:  So, Special Master Brush, we
23 have a formal request, we would like a answer yes or no
24 to the question:  Is there data associated with the
25 plaintiffs, their identifiers and their devices, that

Page 92

1 has already been identified, collected, segregated, and
2 preserved but not produced?  And when can we have an
3 answer to that simple question?
4      SPECIAL MASTER BRUSH:  Put it in writing and
5 let's address it.
6      Now, I will say, I do -- there's a lot that
7 just went on in that, that there are some nuances and
8 Federal procedures in discovery; right?
9      So we have the issue of preservation,
10 searching, and production.
11      If there are things that were withheld, the
12 respondent has the right under certain circumstances not
13 to produce it; if it's duplicative, there's privilege
14 log issues, there's a variety of different constructs of
15 that.
16      Again, not -- it is a bit of a legal logic to
17 say, "Well, something has been preserved and therefore
18 it has to be produced."  There is a lot of little steps
19 that go into that.
20      MR. STRAITE:  Understood.
21      SPECIAL MASTER BRUSH:  So we have to go into
22 that with open eyes.  And what I'm asking for and what I
23 think is -- you know, to the extent there's a
24 privilege -- not privilege -- I'm sorry -- a production
25 log that details this that could be helpful, I would

Page 93

24 (Pages 90 - 93)

CONFIDENTIAL

1  imagine it exists and allows parties to kind of have a
2  better understanding of this. I thought we had provided
3  that or thought there had been some exchanges or views
4  on that before. If not, this would certainly be an
5  appropriate time as we close out discovery.
6       MR. BARNES: So, Mr. Brush, there was a
7  production from Google that had two columns. One was
8  preserved and one was produced. And there was -- there
9  were, I believe, about ■ different data sources that
10 were identified as having been preserved, but which have
11 not been produced.
12      So we already have that.
13      SPECIAL MASTER BRUSH: Okay.
14      MR. BARNES: We've sent that.
15      And what we're asking is -- Mr. Straite asked
16 the question, well, I think -- so that's question No. 1.
17      And then question No. 2 is we really think we
18 have to brief this. Mr. Ansorge made what is a legal
19 assertion that they were not required to show a burden
20 in this process -- production burdens in this process.
21      MR. ANSORGE: That's -- that's not what I
22 said.
23      SPECIAL MASTER BRUSH: It's not what I heard.
24      MR. BARNES: And what I would like to do is
25 brief this with Judge van Keulen because the

Page 94

1       Within the context of plaintiffs like to focus
2  on, "Oh, all plaintiffs data should be produced."
3       And Judge van Keulen was very clear at our
4  in-person hearing that the subsequent Special Master
5  targeted searches were superseding the earlier
6  discussions and points.
7       So there's many layers to it. But I want to
8  be clear that the record reflects that we believe
9  Magistrate Judge van Keulen has been asked and has
10 responded and addressed this particular issue a number
11 of times and --
12      MR. BARNES: Mr. Ansorge --
13      MR. ANSORGE: -- our preference -- let me
14 just -- as a last point, I would say our preference
15 would be to streamline and not burden her with
16 everything equally. I think --
17      MR. BARNES: Mr. Ansorge, you're confusing the
18 issues.
19      MR. ANSORGE: -- we have a few smaller issues
20 with the amount of time that's left.
21      MR. BARNES: Mr. Ansorge, you're confusing the
22 issues.
23      What we're asking for is Google has made the
24 argument that it would be unduly burdensome.
25      To the extent the Special Master and

Page 96

1  Federal Rules of Civil Procedure require that before a
2  party refuses to produce relevant information, it must
3  show a burden of production.
4       And we need a binding finding of fact to the
5  extent that we've been denied all of our plaintiff data.
6       The only -- the basis for it has to be that --
7  Google's arguments about undue burden, but we don't have
8  a written finding of fact to that effect. And so we'd
9  like to get this before Judge van Keulen. We think
10 these are purely legal issues.
11      SPECIAL MASTER BRUSH: I'll say if that's what
12 you heard, I wasn't exactly sure I heard the same thing,
13 Whether there was a burden of production issue there
14 versus relevancy and other preservation facts.
15      But I would agree if this is a path plaintiffs
16 want to go down, by all means bring it up with
17 Judge van Keulen because it sounds as if there's some
18 disagreement there. That's between parties on the legal
19 merits of discovery that are outside the scope of what
20 I'm looking at right now.
21      MR. ANSORGE: Yeah. And our understanding is
22 that this is something Judge van Keulen has looked at a
23 number of times.
24      MR. BARNES: If she's looked at it --
25      MR. ANSORGE: Let me just finish, Mr. Barnes.

Page 95

1  Judge van Keulen agree, then it is appropriate to have a
2  binding finding of fact that Google did not produce all
3  of the information it had for just six people because it
4  would have been unduly burdensome to do so in a case
5  involving a class of a very large class.
6       Our position is that the Federal Rules of
7  Civil Procedure require such a finding before Google is
8  able to shield relevant information from discovery. And
9  we're just asking Google to take ownership of the
10 arguments it has made through this process.
11      MR. ANSORGE: And let me ask you about that:
12 What argument are you referring to? You're saying I
13 just said that this would be unduly burdensome.
14      Did I just say that?
15      MR. BARNES: Google has made -- is -- are we
16 not before the Special Master because Google says it
17 would be unduly burdensome to produce all information in
18 its possession about the named plaintiffs?
19      MR. ANSORGE: So you're talking about all
20 information in possession about the named plaintiffs?
21      Absolutely. I think that is -- I am happy to
22 agree with you, Mr. Barnes, that that would be unduly
23 burdensome and not proportional and not appropriate.
24      We're coming close up on two hours so I'm
25 wondering --

Page 97

25 (Pages 94 - 97)

CONFIDENTIAL

```
1  night.
2        MS. GAO:  Yeah.  Sorry.  I was just saying for
3  Google, as soon as possible would be great.  Thank you.
4     (Whereupon, proceedings adjourned at 10:01 a.m.)
5              ---o0o---
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

Page 106

```
1  STATE OF CALIFORNIA    )
                          )
2  COUNTY OF YOLO         )
3              ---o0o---
4        I, Katy E. Schmidt, a Certified Shorthand
5  Reporter, do hereby certify:
6        That said proceedings were taken before me at
7  the time and place therein set forth and were taken down
8  by me in shorthand and thereafter transcribed into
9  typewriting under my direction and supervision;
10       I further certify that I am neither counsel
11 for, nor related to, any party to said proceedings, and
12 am not in any way interested in the outcome thereof.
13       In witness whereof, I have hereunto subscribed
14 my name.
15 Dated: February 25, 2022
16
17
18
19
20
21
22      Katy E. Schmidt
23      RPR, RMR, CRR, CSR 13096
24
25
```

Page 107

28 (Pages 106 - 107)

# ANSORGE
# EXHIBIT 15

# Redacted Version
# of Document Sought
# to be Sealed

```
 1                IN THE UNITED STATES DISTRICT COURT

 2              FOR THE NORTHERN DISTRICT OF CALIFORNIA

 3                         SAN JOSE DIVISION

 4
        CALHOUN, ET AL,                 )   CV-20-5146-YGR
 5                                       )
                      PLAINTIFF,         )   SAN JOSE, CALIFORNIA
 6                                       )
                  VS.                    )   FEBRUARY 28, 2022
 7                                       )
        GOOGLE LLC,                      )   PAGES 1-84
 8                                       )
                      DEFENDANT.         )   *SEALED TRANSCRIPT*
 9                                       )
        _____ )
10
                      TRANSCRIPT OF PROCEEDINGS
11              BEFORE THE HONORABLE SUSAN VAN KEULEN
                      UNITED STATES MAGISTRATE JUDGE
12
                      A P P E A R A N C E S
13

14          FOR THE PLAINTIFF:     BY:  DAVID A. STRAITE
                                   DICELLO LEVITT GUTZLER LLC
15                                 ONE GRAND CENTRAL PLACE
                                   60 EAST 42ND ST., SUITE 2400
16                                 NEW YORK, NY 10165

17

18          FOR THE DEFENDANT:     BY:  ANDREW H. SCHAPIRO
                                   QUINN EMANUEL URQUHART AND
19                                 SULLIVAN, LLP
                                   191 N. UPPER WACKER DRIVE
20                                 SUITE 2700
                                   CHICAGO, IL 60606
21

22               APPEARANCES CONTINUED ON THE NEXT PAGE

23      OFFICIAL COURT REPORTER:      SUMMER FISHER, CSR, CRR
                                      CERTIFICATE NUMBER 13185
24

25           PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
                 TRANSCRIPT PRODUCED WITH COMPUTER
```

2

```
1        APPEARANCES CONTINUED:

2        FOR THE PLAINTIFFS:      BY:  JAY BARNES
                                  SIMMONS HANLY CONROY
3                                 231 S. BEMISTON AVE., STE 525
                                  ST. LOUIS, MO 63105
4


5        FOR THE PLAINTIFF:       BY:  AN V. TRUONG
                                  SIMMONS HANLY CONROY
6                                 112 MADISON AVENUE, 7TH FLOOR
                                  NEW YORK, NY 10016
7


8

9        FOR THE PLAINTIFF:       BY:  LESLEY WEAVER
                                       JOSHUA DAVID SAMRA
10                                BLEICHMAR FONTI AULD LLP
                                  555 12TH STREET, SUITE 1600
11                                OAKLAND, CA 94607


12       FOR THE PLAINTIFF:       BY:  SHARON D CRUZ
                                  DICELLO LEVITT GUTZLER
13                                10 N DEARBORN ST, 6TH FLOOR
                                  CHICAGO, IL 60601
14

15       FOR THE DEFENDANT:       BY:  VIOLA TREBICKA
                                       STEPHEN ANDREW BROOME
16                                QUINN EMANUEL URQUHART & SULLIVAN
                                  865 S. FIGUEROA STREET
17                                10TH FLOOR
                                  LOS ANGELES, CA 90017
18

19       FOR THE DEFENDANT:       BY:  SARA E. JENKINS
                                  QUINN EMANUEL URQUHART &
20                                SULLIVAN, LLP
                                  555 TWIN DOLPHIN DR., 5TH FLOOR
21                                REDWOOD SHORES, CA 94065

22       FOR THE DEFENDANT:       BY:  JOSEF TEBOHO ANSORGE
                                       JOMAIRE CRAWFORD
23                                QUINN EMANUEL
                                  51 MADISON AVENUE, 22ND FLOOR
24                                NEW YORK, NY 10010

25
```

```
 1        APPEARANCES CONTINUED:

 2     FOR THE DEFENDANT:        BY:  CARL SPILLY
                                      TRACY GAO
 3                               QUINN EMANUEL URQUHART & SULLIVAN
                                 LLP
 4                               1300 I STREET NW, SUITE 900
                                 WASHINGTON, DC 20005
 5

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1    FIRST APPEARANCE IN FRONT OF YOU, THERE WAS KIND OF A FIRE

2    DRILL ABOUT THE QUESTION ABOUT WHETHER WE ARE OBLIGATED TO

3    SUSPEND NORMAL RETENTION POLICIES RELATING TO LOGS.  AND THE

4    COMPROMISE THAT CAME OUT OF THAT WAS THAT WE WOULD PRESERVE

5    CERTAIN DATA IN LOGS THAT WAS RELATED TO CERTAIN IDENTIFIERS

6    THAT WERE PROVIDED TO US OR IDENTIFIERS FROM THE PLAINTIFFS,

7    WITH AN UNDERSTANDING THAT, I THINK AS YOUR HONOR EMPHASIZED

8    RIGHT AT THE BEGINNING, MERE PRESERVATION DOES NOT MEAN

9    NECESSARILY PRODUCTION.

10    AND FROM THAT VERY WIDE FUNNEL, WE AFTERWARDS WENT TO THE

11    SMALLER FUNNEL, OR WE TRIED TO GET TO THE SMALLER FUNNEL

12    THROUGH THE VERY SIGNIFICANT AND I THINK HELPFUL EFFORTS OF THE

13    SPECIAL MASTER, SPECIAL MASTER BRUSH, SO THAT WHAT WE HAVE BEEN

14    DOING SINCE THAT TIME IS THEY WERE TOLD, AND IT'S PART OF THE

15    SPECIAL MASTER PROCESS, TO CHOOSE SPECIFIC SEARCHES FOR

16    SPECIFIC FIELDS TO BALANCE PROPORTIONALITY.

17    AND WE HAVE HAD ALL OF THESE MEETINGS.  SO THERE ARE --

18    THERE IS -- IT IS CERTAINLY TRUE THAT THERE'S A BROADER SET OF

19    PRESERVED DATA THAN THERE HAS BEEN PRODUCED DATA.  I AM NOT

20    SURE, WITH REGARD TO BROWN, AGAIN WE FOCUSED ON CALHOUN, WHAT

21    WE HAVE IN TERMS OF COOKIES THAT WERE PRESERVED.  AND MAYBE WE

22    CAN FOLLOW UP WITH THE SPECIAL MASTER TOMORROW, BECAUSE I

23    WOULDN'T WANT TO MISSTATE THAT THERE IS A UNIVERSE LIKE THIS IN

24    BROWN SUCH AS THERE IS IN CALHOUN.

25    MR. BRUSH:  MAY I JUST CLARIFY, MR. SCHAPIRO, WHAT WE

1    WERE DISCUSSING, AND IT IS A BIT OF A CONFUSING SET OF

2    TERMINOLOGY THROUGHOUT THE PROCESS WHERE I THINK THE WORD

3    "PRESERVATION" IS APPLIED IN TWO DIFFERENT AREAS.

4        WHAT I THINK WHAT WE ARE LOOKING FOR, THINGS THAT WERE

5    SEARCHED IN THAT SUBSET OF SEARCH DATA WAS PUT SOMEWHERE, LET'S

6    SAY PRESERVED IN THAT MANNER, NOT NECESSARILY ON A LITIGATION

7    HOLD OF PRESERVED RAW DATA, THE TOP PART OF THE FUNNEL, BUT

8    ACTUAL THINGS THAT WERE SEARCHED, AND IT MAY NOT HAVE BEEN

9    PRODUCED.

10       I THINK EVERYBODY WAS LOOKING FOR CLARITY ON WHETHER THERE

11   WAS INFORMATION THAT MIGHT BE RELEVANT IN THE RESPECTIVE MATTER

12   THAT MIGHT BE AVAILABLE NOW THAT COULD REDUCE THE NEED TO

13   RE-SEARCH DATA.  AND THAT WAS THE ONLY THING I THINK WE WANTED

14   CLARITY ON.

15           MR. SCHAPIRO:  YES.

16       SO I THINK AS TO BROWN, I WOULD NEED TO COME BACK ON THAT.

17   WITH CALHOUN, THERE IS DATA, I DON'T KNOW IF I WOULD REALLY

18   CALL IT SEARCHED, BUT THERE IS DATA THAT IS KEYED OFF OF

19   CERTAIN ID'S THAT WERE PROVIDED, AND THAT DATA WAS PRESERVED.

20   IT HASN'T BEEN -- AT LEAST THE DATA THAT'S BEEN OUTSIDE OF YOUR

21   PROCESS, MR. BRUSH, HASN'T BEEN REVIEWED OR AT LEAST REVIEWED

22   IN ANY CAREFUL WAY.

23       BUT AGAIN, I DON'T THINK, THE GOAL OF THE QUESTION IS,

24   WELL, COULD THIS SAVE US EFFORT, I THINK THE ULTIMATE RESULT OF

25   PRODUCING THIS SET OF SOMEWHAT ROUGH DATA WOULD BE ACTUALLY TO

1    TAKE US BACKWARDS, WE ARE SORT OF AT THE END OF THE PROCESS

2    HERE, AND THAT'S TAKING US BACK UP TO THE WIDE FUNNEL.

3        AND I THINK THE WHOLE REASON THAT WE'VE BEEN IN FRONT OF

4    YOU AND MR. SCHMIDT FOR WHAT I THINK HAVE BEEN A PRODUCTIVE

5    SERIES OF MEETINGS, IS TO CHOOSE SPECIFIC SEARCHES FOR SPECIFIC

6    FIELDS, AND FROM THOSE, THEN TO COME UP WITH ADDITIONAL

7    SEARCHES CHOOSING ADDITIONAL FIELDS.

8        THIS, IN OUR VIEW, AND I'M PREVIEWING THE CALHOUN ARGUMENT

9    HERE, YOUR HONOR, WOULD I THINK TAKE US BACKWARDS AT THIS POINT

10   IN THE WEEK THAT DISCOVERY IS CLOSING.

11            THE COURT:  OKAY.

12       WELL, REGARDLESS OF WHETHER IT'S FORWARD OR BACKWARDS,

13   BECAUSE I THINK THAT IS SOMEWHAT OF A SUBJECTIVE VIEW,

14   OBVIOUSLY, DEPENDING ON WHICH SIDE YOU ARE ON, MR. SCHAPIRO, I

15   WANT YOU TO FOLLOW UP WITH YOUR TEAM AND YOUR TECHNICAL EXPERTS

16   AS TO WHETHER THERE IS A SET OF DATA, I THINK AS SPECIAL MASTER

17   BRUSH REFERRED TO IT, POST-SEARCH DATA THAT RELATES TO THE

18   BROWN PLAINTIFFS THAT HAS BEEN IDENTIFIED BUT NOT PRODUCED.

19       I'M USING THE WORD "IDENTIFIED" INSTEAD OF "PRESERVED,"

20   BUT -- AND BE PREPARED TO INFORM ON THAT TO THE SPECIAL MASTER

21   IN THE SESSION TOMORROW.

22            MR. SCHAPIRO:  WILL DO, YOUR HONOR.

23            THE COURT:  OKAY.

24       MR. BRUSH, WILL THAT BE HELPFUL?  DID I GET THAT RIGHT?

25            MR. BRUSH:  YES, YOUR HONOR.

 1    NO LATER THAN MARCH 3RD, MARCH 3RD.

 2          SPECIAL MASTER BRUSH, IF YOU THINK THERE'S BEEN PRODUCTIVE

 3    PROGRESS AND A SMALL ADDITIONAL AMOUNT OF TIME IS NEEDED, THAT

 4    IS WITHIN YOUR POWER TO EXTEND.

 5              MR. BRUSH:  UNDERSTOOD, YOUR HONOR.

 6              THE COURT:  ALL RIGHT.

 7          AND THEN THE OTHER ISSUE IN 2.1 IS ALSO THE PRODUCTION OF

 8    THE CALHOUN PLAINTIFF INFORMATION, AND THAT WILL BE THE SUBJECT

 9    OF THE SIMILAR DISCUSSION AS IN BROWN, WHICH IS WHAT DATA WAS

10    COLLECTED AND WHERE IS IT NOW.

11          AND I APPRECIATE THE POSTURE OF THE CASES ARE DIFFERENT,

12    THE RESPONSES TO THAT WILL BE DIFFERENT, AND SPECIAL MASTER

13    BRUSH IS AWARE OF THAT, HE JUST WANTS TO BE SURE HE'S GOT THE

14    RIGHT PEOPLE WHO CAN WORK THROUGH THAT.

15              MR. BARNES:  JUDGE VAN KEULEN, MAY I ASK A CLARIFYING

16    QUESTION?

17              THE COURT:  YES, MR. BARNES.

18              MR. BARNES:  I THINK, MR. SCHAPIRO, WE KNOW OF ███

19    LOGS.

20              THE COURT:  MR. BARNES, WE ARE GOING TO START --

21              MR. BARNES:  I DON'T WANT TO ARGUE, I JUST WANT TO

22    KNOW IF IN BROWN IT WAS, HEY, IDENTIFY THAT WHICH YOU'VE DONE.

23          BASED ON MR. SHAPIRO'S COMMENTS TODAY, I THINK IT'S

24    BROADER THAN THAT, AND I JUST WANT TO MAKE -- GET CLARITY THAT

25    IT IS, IF GOOGLE HAS PRESERVED IT, WE ARE GOING TO FIND OUT

```
1         INDEED WHAT WAS PRESERVED.

2              THE COURT:  YOU ARE GOING TO HAVE THAT CONVERSATION

3    WITH THE SPECIAL MASTER.

4              MR. BARNES:  OKAY.  THANK YOU.

5              THE COURT:  OKAY.  WHICH IS, I THINK PRETTY MUCH WHAT

6    I HAD SAID, WHICH IS WHAT WAS PRESERVED AND WHAT'S THE STATUS

7    OF IT NOW.

8         SO ALL RIGHT.  AND THEN AS TO THE REMAINING ISSUES FOR

9    CALHOUN, I THINK WE HAVE ADDRESSED THOSE, AND I WILL SEE YOU IF

10   NECESSARY.

11             ANY QUESTIONS?  WE'VE COVERED A LOT OF GROUND, SOME OF IT

12   HAS ACTUALLY BEEN FORWARD PROGRESS, SOME OF IT MAYBE NOT SO

13   MUCH, BUT I APPRECIATE EVERYONE'S PATIENCE AND DILIGENCE.

14             ANYTHING ELSE IN BROWN FROM THE PLAINTIFFS?  I THINK YOU

15   ARE CLEAR WHAT'S GOING TO HAPPEN WITH THE SPECIAL MASTER.  YOU

16   WILL GET AN ORDER FROM ME ON THE OTHER ISSUES.

17             ANYTHING ELSE THAT MUST BE RAISED?  MR. MAO?

18             MR. MAO:  NO.  WE UNDERSTAND THAT WE NEED TO GIVE YOU

19   ANOTHER THREE NEXT PRIORITY, IS THERE A TURNAROUND ON THAT,

20   JUDGE, I PRESUME TOMORROW OR TONIGHT?

21             THE COURT:  YEAH, TOMORROW IS FINE.  I'M NOT GOING TO

22   GET TO IT RIGHT AWAY, I'VE GOT A FEW OTHER THINGS TO KEEP ME

23   BUSY.

24             AND AGAIN, I HAVEN'T LOOKED AT THE OTHER DISPUTES YET, SO

25   I CAN'T EVEN TELL YOU THAT I'M ONLY GOING TO GET TO THREE OR
```

```
1     I'M NOT GOING TO GET TO ANY OR WHATEVER.

2              MR. MAO:  I APOLOGIZE, JUDGE.

3         I SEE MY COLLEAGUE JAMES LEE AND MR. REBLITZ-RICHARDSON

4     JUST APPEARED AND THEY MIGHT WANT TO SAY SOMETHING, SO I WILL

5     CEDE THE FLOOR TO THEM.

6              THE COURT:  ANYTHING FINAL?  WE ARE GOING TO BRING

7     THIS TO A CLOSE.  NO?  MR. LEE?

8              MR. LEE:  I JUST WANTED TO SAY THANK YOU, JUDGE.

9              MR. MAO:  THANK YOU MR. BRUSH.

10             MR. SCHAPIRO:  MY COLLEAGUE, MS. JENKINS, HAS ONE

11    FINAL THING.

12             THE COURT:  EXCELLENT.  MS. JENKINS?

13             MS. JENKINS:  YES.  WE HAVE ONE SMALL HOUSEKEEPING

14    ISSUE.

15        WE HAVE A DEPOSITION ON WEDNESDAY OF MS. JUNE IN BROWN.

16    AND ON FRIDAY, THEY TOLD US THEY MIGHT BE CANCELLING THAT

17    DEPOSITION.  AND WE WOULD LIKE TO KNOW NOW, IF POSSIBLE, OR

18    WITHIN A VERY SHORT PERIOD OF TIME AFTER THIS HEARING, IF THEY

19    WILL BE CANCELLING THAT DEPOSITION.

20             THE COURT:  OKAY.  WELL, YOU COULD HAVE PICKED UP THE

21    PHONE AND ASKED COUNSEL THAT QUESTION.

22             MS. JENKINS:  WE DID, YOUR HONOR.

23             THE COURT:  OKAY.  I FIGURED THERE WAS A REASON THAT

24    WAS HERE.  SO LET'S GET THAT WRAPPED UP HERE.  IT'S 4:00 HERE

25    ON THE WEST COAST, LET'S GET THAT WRAPPED UP BY 6.
```

1

2

3

4                    **CERTIFICATE OF REPORTER**

5

6

7

8          I, THE UNDERSIGNED OFFICIAL COURT

9    REPORTER OF THE UNITED STATES DISTRICT COURT FOR

10   THE NORTHERN DISTRICT OF CALIFORNIA, 280 SOUTH

11   FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY

12   CERTIFY:

13          THAT THE FOREGOING TRANSCRIPT,

14   CERTIFICATE INCLUSIVE, CONSTITUTES A TRUE, FULL AND

15   CORRECT TRANSCRIPT OF MY SHORTHAND NOTES TAKEN AS

16   SUCH OFFICIAL COURT REPORTER OF THE PROCEEDINGS

17   HEREINBEFORE ENTITLED AND REDUCED BY COMPUTER-AIDED

18   TRANSCRIPTION TO THE BEST OF MY ABILITY.

19

20

21

22

23

24   _____

25   SUMMER A. FISHER, CSR, CRR
     CERTIFICATE NUMBER 13185          DATED: 3/2/22

# ANSORGE
# EXHIBIT 16

# Unredacted Version
# of Document Sought
# to be Sealed

**CHASOM BROWN, ET AL. vs GOOGLE, LLC, ET AL.**
**Hearing on 03/03/2022**

1

2                    UNITED STATES DISTRICT COURT

3                  NORTHERN DISTRICT OF CALIFORNIA

4                  CASE NO.: 4:20-03664-YGR-AVK

5

6  CHASOM BROWN, MARIA NGUYEN and

7  WILLIAM BYATT, individually and on

8  Behalf of all other similarly situated,

9                    Plaintiffs,

10  v.

11  GOOGLE, LLC and ALPHABET, INC.,

12                    Defendants.

13  _____/

14

15

16                    CIVIL CONTEMPT HEARING

17

18

19     HEARING BEFORE:        Special Master Brush

20        DATE TAKEN:         March 3rd, 2022

21           TAKEN:           Remotely via Zoom

22

23

24

25  TRANSCRIBED BY:  KIMBERLY H. NOLAN

**CHASOM BROWN, ET AL. vs GOOGLE, LLC, ET AL.**
**Hearing on 03/03/2022**                                    Pages 2..5

Page 2

```
 1              A P P E A R A N C E S
 2
 3   For the Plaintiffs:
 4   JASON "JAY" BARNES, ESQUIRE
 5   Simmons, Hanly & Conroy
 6   112 Madison Avenue, 7th Floor
 7   New York, New York 10016
 8   618.693.3104
 9
10   MARK C. MAO, ESQUIRE
11   Boies, Schiller & Flexner, LLP
12   44 Montgomery Street, 41st Floor
13   San Francisco, California 94104
14   415.293.6800
15
16   For Defendant Google, LLC:
17   STEPHEN A. BROOME, ESQUIRE
18   Quinn, Emanuel, Urquhart & Sullivan, LLP
19   865 South Figueroa Street, 10th Floor
20   Los Angeles, California 90017
21   213.443.3000
22
23
24
25
```

Page 3

```
 1              A P P E A R A N C E S
 2                   (continued)
 3
 4   For Defendant Google, LLC:
 5   JOSEF ANSORGE, ESQUIRE
 6   Quinn, Emanuel, Urquhart & Sullivan, LLP
 7   1300 L Street Northwest, Suite 900
 8   Washington, D.C. 20005
 9   202.538.8000
10
11   Also Present:
12   Tracy Gao, Law Clerk at Quinn, Emanuel, Urquhart & Sullivan
13
14
15
16
17
18
19
20
21
22
23
24
25
```

Page 4

```
 1              P R O C E E D I N G S
 2            FEBRUARY 3RD, 2022; VIA ZOOM
 3         SPECIAL MASTER BUSH:  Okay.  Sounds like we're
 4   being recorded now.  And I apologize.  Maybe we can -- Ms.
 5   Gao, can you just recount that just so we have it, what was
 6   provided, and we can get some confirmation just so it does
 7   get transcribed appropriately?
 8         MS. GAO:    Yes, Special Master Brush.  As I
 9   stated in my email last night, we've provided item number 1,
10   which is the requested decrypted IDs so far requested by the
11   Brown plaintiffs.
12         The Calhoun plaintiffs also provided us with three
13   additional ID co-key (ph) values yesterday afternoon, but we
14   didn't gather confirmation that they did come from Dr.
15   Shafik or the consenting plaintiffs yesterday, so we could
16   not provide the decrypted IDs to the Calhoun plaintiffs.
17         Now that I think Mr. Barnes just confirmed that
18   they did come from Dr. Shafik, we can start the decryption
19   process right now, maybe after the call.
20         And we also provided item number 3, which is a list
21   of all Calhoun and Brown data sources for which we've
22   preserved plaintiffs' data but have not yet produced all of
23   the preserved data.  That's everything.
24         SPECIAL MASTER BRUSH:  Great.  Thank you, Ms. Gao.
25         MR. MAO:  If you don't mind, Special Master Brush,
```

Page 5

```
 1   I just wanna clarify something real fast.  Ms. Gao, I took a
 2   look at the data you sent yesterday with regard to the Brown
 3   plaintiffs' preservation.
 4         All I have is a time frame of when data was
 5   preserved, I don't believe I actually have the actual data
 6   that was preserved itself.  Can you confirm that?
 7         MS. GAO:    Special Master Brush requested that
 8   we provide a list of all of the data sources from which we
 9   preserved plaintiffs' data but not -- but have not yet
10   produced all of the --
11         MR. MAO:    Oh.  Got it.
12         MS. GAO:    -- preserved data.  That was what we
13   provided.
14         MR. MAO:    Sorry, sorry.  So, I misstated -- I
15   misstated it.  It seems like you're telling us the sources
16   from which they're preserved.  Now that I'm looking at it, I
17   see the time frame was not provided and the actual data
18   itself was not provided.  Is that correct?
19         MS. GAO:    That's correct.  That was not
20   requested by Mr. Brush in his email yesterday.
21         MR. MAO:    Right.  But I do believe that Judge
22   Este Kay's (ph) prior orders way back last year, she had
23   required that all of Brown plaintiffs' authenticated and
24   unauthenticated data be produced.  Do you have a
25   disagreement on that?
```

**CHASOM BROWN, ET AL. vs GOOGLE, LLC, ET AL.**

**Hearing on 03/03/2022**                                    **Pages 82..85**

Page 82

1   February of 2021, there were searches performed by Google
2   engineers using IDs for named plaintiffs that produced some
3   subset of data that's in some form or structure that could
4   potentially inform better searches that we're doing now, so
5   can work in parallel with what we're trying to accomplish,
6   because there were some original searches performed and a
7   subset of that data held, and we're -- that was what was
8   referenced in the letters last night.
9        What we're saying is when can that subset of data,
10  that searched but not turned over data, be produced to
11  Plaintiffs as a part of the timeline?
12       MR. ANSORGE:  Understood, sir.  And there I just
13  wanted to clarify.  It's been preserved within litigation
14  hold based on IDs, of course, but it's not -- individual,
15  targeted searches haven't been done, and there were -- we'll
16  give you an update later today.
17       It's been very helpful to understand that we can
18  provide it on a rolling production basis, and there's going
19  to be parts that will be more complex because of the
20  publisher notification issue, but the fact that it doesn't
21  have to be structured in the exact same way, that we can
22  provide it in the form in which it exists, should help
23  simply things.
24       So, as soon as this call is over and before the
25  next deposition, I'm going to contact the engineers to get

Page 83

1   an update and a timeline.
2        SPECIAL MASTER BRUSH:   Great.  And the way --
3   yeah.  Definitely prioritize that by ease.  You know, if
4   there's information that you don't have to get publisher --
5   whatever's the most readily available data that has been
6   searched --
7        MR. ANSORGE:  Understood, sir.
8        SPECIAL MASTER BRUSH:   -- with ease, let's get
9   that, because I think there's gonna be structure to that
10  that's gonna be very helpful for us to have informed
11  searches.
12       MR. BARNES:   Okay.  Can I have one other
13  question?  Mr. Ansorge, I just wanna make sure this is
14  right.  You put in the chat
15  www.google.com/intl/en_us/doubleclick/platform/terms.html,
16  and that is a hyperlink to a contract that Google says
17  applies to the publishers -- all the publishers at issue
18  with the plaintiff data we're talking about, and that
19  document, which is called Google Platform Services Terms and
20  Conditions, applies to all the publishers such that you
21  cannot give us the information because Google says that
22  would breach this contract that applies to all these
23  publishers.  Is that correct?
24       MR. ANSORGE:   Some of it is correct, some of it is
25  incorrect.

Page 84

1        MR. BROOME:   Let's triple-check that because
2   we're getting caught in making representations on a recorded
3   Zoom.
4        SPECIAL MASTER BRUSH:   Yeah.  Agreed.  But this
5   is not the form for --
6        MR. BROOME:   Can we end this so that we can try
7   and get to our clients?
8        SPECIAL MASTER BRUSH:   Yes.
9        MR. BROOME:   Because Joey's in (inaudible) and
10  he's got a depo prep today, so -- you know, we're all just -
11  -
12       SPECIAL MASTER BRUSH:   Understood.
13       MR. BROOME:   -- running on fumes at this point.
14  Thank you, Special Master Brush.
15       SPECIAL MASTER BRUSH:   And I appreciate
16  everybody's time.  Yeah.  No.   Look, I mean this is -- I
17  really wanna thank you all and commend you all, again, it's
18  a very difficult -- we're -- I think we're all on fumes on
19  this matter at this point.
20       But I really, really do wanna commend and thank you
21  all for your time and effort on this.  It's been a pleasure
22  to work with you in this process, and I think you have all
23  conducted yourselves very professionally.
24       And like I said a couple calls ago, you know, they
25  only remember your last at-bat, so let's finish this out

Page 85

1   strong and look good in front of the judge.  So, I really
2   appreciate everybody's time.  And with that, we can adjourn.
3   [END OF HEARING]
4   [END OF TRANSCRIPT]
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

**CHASOM BROWN, ET AL. vs GOOGLE, LLC, ET AL.**
**Hearing on 03/03/2022**                                    Page 86

Page 86

```
 1                   CERTIFICATION PAGE

 2

 3       I, Kimberly H. Nolan, Transcriptionist,

 4   do hereby certify that this transcript

 5   is a true and accurate record of the

 6   electronically recorded proceedings,

 7   transcribed by me this 3rd day of

 8   March, 2022.

 9        Kimberly H. Nolan

10   _____

11

12   KIMBERLY H. NOLAN

13

14

15

16

17

18

19

20

21

22

23

24

25
```

# ANSORGE
# EXHIBIT 17

# Redacted Version
# of Document Sought
# to be Sealed

**quinn emanuel** trial lawyers | washington, dc

1300 I Street NW, Suite 900, Washington, District of Columbia 20005-3314 | TEL (202) 538-8000 FAX (202) 538-8100

WRITER'S DIRECT DIAL NO.
**(202) 538-8267**

WRITER'S EMAIL ADDRESS
**josefansorge@quinnemanuel.com**

March 3, 2022

**HIGHLY CONFIDENTIAL - SPECIAL MASTER AND ATTORNEY'S EYES ONLY**

**VIA E-MAIL**

Special Master Douglas Brush
(douglas.brush@accelconsulting.llc)
Accel Consulting, LLC

Timothy Schmidt
(timothy.schmidt@accelconsulting.llc)
Accel Consulting, LLC

Mark Mao
(mmao@BSFLLP.com)
Boies Schiller Flexner LLP

Jay Barnes
Simmons Hanly Conroy LLC
112 Madison Ave., 7th Floor
New York, NY 10016

Re:     *Brown v. Google LLC*, Case No. 5:20-cv-03664-LHK-SVK (N.D. Cal.); *Calhoun, et al.
v. Google LLC,* Case No. 5:20-cv-5146 (N.D. Cal.)

Dear Special Master Brush, Mr. Schmidt, Counsel:

Pursuant to Special Master Brush's request, Google hereby provides a status update on the following issues discussed at today's conference.

▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬
▬▬   ▬   ▬   ▬   ▬▬   ▬   ▬
▬▬▬▬▬▬▬▬▬▬▬▬▬▬

**quinn emanuel urquhart & sullivan, llp**

LOS ANGELES | NEW YORK | SAN FRANCISCO | SILICON VALLEY | CHICAGO | WASHINGTON, DC | HOUSTON | SEATTLE | BOSTON | SALT LAKE CITY
LONDON | TOKYO | MANNHEIM | HAMBURG | PARIS | MUNICH | SYDNEY | HONG KONG | BRUSSELS | ZURICH | SHANGHAI | PERTH | STUTTGART



### 3. Preserved Plaintiff data

As requested by the Special Master, Google will be producing the preserved but not yet produced ▮▮▮▮ log data for both Brown and Calhoun Plaintiffs as soon as practicable. Google is in the process of parsing out data in the logs that do not contain confidential third party publisher information and do not require publisher notification. Given the volume of data Google preserved, we are still trying to determine how long it will take to produce and the mechanism by which we can make such data available to Plaintiffs. Google will provide an update on this issue later today.

### 4. Live search demonstration

We are still consulting with our client on this while also attempting to respond to Plaintiffs' many other discovery requests outside of this Special Master process.  We will further update you by 2 pm PT / 5 pm ET.

Sincerely,

QUINN EMANUEL URQUHART & SULLIVAN, LLP

Josef Ansorge

Josef Ansorge

JA

# ANSORGE
# EXHIBIT 18

# Redacted Version
# of Document Sought
# to be Sealed

| | | |
|---|---|---|
| **BLEICHMAR FONTI & AULD LLP** | **DiCELLO LEVITT GUTZLER LLC** | **SIMMONS HANLY CONROY LLC** |
| 555 12th STREET, SUITE 1600 | ONE GRAND CENTRAL PLACE | 112 MADISON AVENUE, 7TH FL. |
| OAKLAND, CA  94607 | 60 EAST 42nd STREET, SUITE 2400 | NEW YORK, NY 10016 |
| | NEW YORK, NY 10165 | |

March 5, 2022

<u>**VIA ELECTRONIC MAIL**</u>
Special Master Douglas Brush
douglas.brush@accelconsulting.llc
Timothy Schmidt
timothy.schmidt@accelconsulting.llc

Re:     *Calhoun v. Google LLC*, No. 5:20-cv-05146-LHK-SVK (N.D. Cal.)
         *Plaintiffs Letter re: Preservation Proposals*

**THIS LETTER REFERENCES MATERIAL THAT HAS BEEN
DESIGNATED CONFIDENTIAL OR HIGHLY CONFIDENTIAL**

Dear Special Master Brush and Mr. Schmidt:

Thank you for facilitating the real time searches conducted today. Calhoun Plaintiffs write to propose a schedule for next steps and, by this letter, invite Google to prepare a joint update for the Special Master.

As our matter of first priority, Plaintiffs request a firm deadline by which Google will complete production of the Named Plaintiffs' data historically collected. The parties need to be able to provide a schedule to close out discovery and begin expert disclosures, currently due on March 24, 2022. Plaintiffs request that Google provide a firm deadline by which this production will be complete.

Google's Response:

Pursuant to the Special Master's instructions earlier this week, Google will be producing the preserved data from ███████ logs that do not contain confidential third party information no later than Thursday, March 10. Google has provided a substantial volume of data and field descriptions to Plaintiffs based on Plaintiffs' first round of iterative searches, and has committed to producing a historical dataset that Plaintiffs will be able to query themselves. Any additional queries Plaintiffs require Google to run should be submitted no later than Sunday, March 6.

Second, Plaintiffs are eager to engage in the second round of searches, but there are major impediments in the way. Plaintiffs request a production schedule for the following:

1.   <u>Log sources schema and data ordered to be produced:</u>

   A.    GAIA ███████

Special Master Douglas Brush
March 5, 2022
Page 2

SIMMONS HANLY CONROY LLC
DiCELLO LEVITT GUTZLER LLC
BLEICHMAR FONTI & AULD LLP

    o  Schema: Google has produced a list of only █ columns; █ columns that have yet to be produced

    o  Data: *Google has not produced any data yet*

B.    DBL █

    o  Schema: Google has produced a list of █ columns; need Google to confirm that this is not limited to Display Ads or Analytics

    o  Data: *Google has not produced any data yet*

C.    ZWBK █

    o  Schema: Google has produced a list of █ columns; need Google to confirm that this is not limited to Display Ads or Analytics

    o  Data: *Google has not produced any data yet*

D.    GAIA █

    o  Schema: Google has produced a list of █ columns; need Google to confirm that this is not limited to Display Ads or Analytics

    o  Data: *Google has not produced any data yet*

E.    DBL █

    o  Schema: Google has produced a list of █ columns; need Google to confirm that this is not limited to Display Ads or Analytics (as ordered by SM)

    o  Data: Google produced data this morning

F.    ZWBK █ (not produced yet)

    o  Schema: *Google has not produced any columns yet.*

    o  Data: *Google has not produced any data yet*

==Google's Response:==

Pursuant to the March 1 Sealed Order (Dkt. 516-1), "Google is ordered to search the following data sources: Zwieback █, Gaia █, Zwieback █, and Doubleclick █" Google has searched and produced DBL █ data.

As to Zwieback █, Gaia █, and Zwieback █, on March 2, Special Master Brush requested that Google provide "a list of all products contained within DBL █, ZWBK █, GAIA █, and ZWBK █." Google stated in its March 3 letter that: "Google can confirm that █ different Google product teams store data within █, and the products and services include:

Special Master Douglas Brush
March 5, 2022
Page 3

SIMMONS HANLY CONROY LLC
DiCELLO LEVITT GUTZLER LLC
BLEICHMAR FONTI & AULD LLP

- Google Travel
- Google Translate
- Google Dictionary
- Google Home
- Google One
- Google Play
- Google Assistant
- Google Docs
- Google Payments
- Google Fi
- Google Cultural Institute
- Blogger
- Google Books"

Meanwhile, Google engineers have been working for a week since the February 28 hearing to try to craft a method of extracting all of Plaintiffs' data from Zwieback █████, Gaia ██████, and Zwieback ██. Despite best efforts, they have not overcome the engineering difficulties to search or extract Plaintiffs' data from these sources. Google respectfully seeks guidance from the Special Master as to whether the search can be limited to certain columns. Using this method, Google will work with individual product teams to extract data from columns owned by that team.

2.    ██████

    o   SM Brush ordered production of ██ searched but not produced ██████ logs.
    o   *Google has not produced any data yet.*

<mark>Google's Response:</mark>

Google produced data from five of the ██ logs in response to Plaintiffs' first set of search requets. Pursuant to the Special Master's instructions earlier this week, Google will be producing the preserved data from ██████ logs that do not contain confidential third party information no later than Thursday, March 10.

3.    ██████

These searches are key to revenue identification.  Plaintiffs seek to inquire if these are underway.

<mark>Google's response:</mark>

Special Master Douglas Brush                      SIMMONS HANLY CONROY LLC
March 5, 2022                                      DiCELLO LEVITT GUTZLER LLC
Page 4                                            BLEICHMAR FONTI & AULD LLP

<span style="color:red">This request is outside the scope of Special Master's order and request.</span>

On the issue of preservation, given what the parties witnesses today, Google should preserve ███████████████████ going forward if it is not doing so. This log's default retention is ██████; we are losing crucial class member data each day this log is not preserved. Is Google currently preserving this log?

<mark>Google's Response:</mark>

<span style="color:red">Pursuant to the Protective Order re Data Log Retention (Dkt. 174), "Google need not suspend its standard retention periods applicable to data logs that reflect event-level data of Chrome users in the United States." The identified log is approximately ████ and stores ██████ worth of data. Preserving a log of this volume even for a year would be extremely burdensome. Further, Plaintiffs have not demonstrated how preserving all data from this log is preferable to a more tailored sampling approach.</span>

Sincerely,

Jay Barnes
jaybarnes@simmonsfirm.com

Lesley Weaver
lweaver@bfalaw.com

David Straite
dstraite@dicellolevitt.com

cc, via email:

Plaintiffs' Counsel

akeller@dicellolevitt.com
aprom@dicellolevitt.com
scruz@dicellolevitt.com
aornelas@bfalaw.com
atruong@simmonsfirm.com
ejohnson@simmonsfirm.com

# ANSORGE
# EXHIBIT 19

# Unredacted Version
# of Document Sought
# to be Sealed

1          UNITED STATES DISTRICT COURT

2         NORTHERN DISTRICT OF CALIFORNIA

3             SAN JOSE DIVISION

4

5   Case No. 5:20-cv-05146-LHK-SVK

6

7   PATRICK CALHOUN, et al., on behalf of          |

8   themselves and all others similarly situated,  |

9              Plaintiffs,                          |

10      v.                                          |

11  GOOGLE, LLC,                                    |

12              Defendant.                          |

13  _____|

14

15

16

17           Special Masters Hearing

18              March 5, 2022

19

20

21

22

23

24

25

                                      Page  1

1  many things happening at the same time, so I
2  don't want to answer on the fly, but I think we
3  might have a different understanding of what was
4  said in the Golueke declaration.
5        MR. STRAITE:  Thank you.  It -- it's
6  the second part.  So he did talk about -- he did
7  confirm, you know, the search and identification
8  of certain data sources, it was the second part
9  of her order, which is to confirm that the
10 historical preserved plaintiff data had been
11 produced.  It was and he numbered that Part Two
12 in his declaration, consistent with her Paragraph
13 Number One of the Calhoun portion of Exhibit 1,
14 per her order of November 14th.  So we'd
15 appreciate that.
16       MS. WEAVER:  If I may just chime in
17 here a little bit.  I think we're a little
18 stunned on the Calhoun side.  We have, you know,
19 March 24th expert disclosure deadlines, and we're
20 hearing, just to recap, that we will not get the
21 historically preserved data until March 31st,
22 which are really the results of our first round
23 searches.  And as we've said all along, we can't
24 do our second round until we get the first round.
25 And -- and I'm also want to tease out, so we have

Page 42

1  some clarity here, you're saying you'll produced
2  everything on March 10th, but then you're saying
3  you want to produce everything together and we
4  won't get that until the 31st.  I think we need
5  to get --
6        MR. ANSORGE:  Yeah and that's not --
7        MS. WEAVER:  Okay, so let's have some
8  clarification.  We need at least a partial
9  production and let me know, and I apologize,
10 Joey, why don't you tell me what you're saying.
11       MR. ANSORGE:  Yeah, yeah.  No, I think
12 there's a lot to clarify there, Leslie.  The
13 first is these are not the first round of
14 searches.  That data has been produced to you.
15 It's complete, publisher notice and consent was
16 required for that as well.  We went through that
17 process.  You should have all of that.  These
18 sources that are being discussed here, the broad
19 litigation holds that were done of different
20 logs, it's -- it's quite separate from the
21 previously requested searches of plaintiffs.
22       What we're saying in -- in the letter
23 is that for March 10th, out of the just broad
24 preservation logs, we'll be able to provide you
25 logs where there's no publisher consent and

Page 43

1  notice that's required.  For the logs where
2  publisher consent and notice is required, we're -
3  - we're going to need more time and we want to,
4  let me assure you, be done with this, yesterday.
5  We would like it to not take any more time, at
6  all.  We'll -- unfortunately, we're tied to
7  limitations of the system and how often people
8  work with us, and no one's ever done this
9  particular exercise before, so we're going to aim
10 for it being much earlier than March 31st, but I
11 don't want to commit to something we can't meet.
12       MR. STRAITE:  (indiscernible).
13       MR. SHAPIRO:  And for the record, sorry
14 -- can I just, as long as nobody thinks I'm being
15 way in a, if attorney client privilege or
16 anything like that, convey, because I think Joey
17 was trying to convey this earlier, by
18 paraphrasing, but what we were told by Ben
19 Carnacke, the -- one of the engineers who, you
20 guys all had a chance to spend time with, over
21 this last week with regard to this data, and he
22 wrote the preserved data is not in an optimized
23 format.  And since each log has a different
24 configuration I have to manually go through each
25 one to make sure I am processing it correctly.  I

Page 44

1  have to split the data by gyost for Calhoun and
2  Brown.  For example, I had to write 200 lines of
3  sequel code, yesterday, just to get some
4  information for you and that wasn't the full data
5  set, because some of the preserved data records
6  can't be read through Dremel.  Meaning, I will
7  have to write a Python or C Plus, Plus script to
8  get the exact data size, and to do any further
9  processing to produce the data.  So, it's just --
10 they're all out of steps here that -- because of
11 the way this data is subject, you know, was being
12 held, essentially, subject to a litigation hold.
13       MS. WEAVER:  May I just ask -- what was
14 the source that you were just reading from?  And
15 I'm only asking because we were told we were not
16 allowed to have experts on this call, and so it
17 just seems like --
18       MR. SHAPIRO:  Again with not waiving
19 anything and without agreeing that you are
20 entitled to ask me this, it was an email this
21 morning or yesterday, whenever it was, I don't
22 know, because I'm in a different time zone here,
23 where we were trying to get as much information
24 we can about the preserved data.  So we're not
25 texting with anybody or anything like that, is

Page 45

1 that what you're asking? This is -- I'm reading
2 --
3        MS. WEAVER: No, I'm --
4        MR. SHAPIRO: I'm reading --
5        MR. ANSORGE: No, no, no. He's reading
6 --
7        MR. BRUSH: This conversation, we're
8 going to allow some latitude on this because
9 we're getting down to the technical aspects of
10 it. But what I think Mr. Shapiro is trying say
11 is that there is, just from a frame of reference
12 from what one of the engineers said earlier and I
13 remember specifically, that conversation, and it
14 was helpful to understand the depth of this
15 preserved data. It's not like when you were
16 doing the Dremel searches and it's there on
17 keyboard. This is stuff that has to go through
18 with specific coding, that's going to be very --
19 that's much different. And we just -- it's just
20 a frame of that that there's -- and appreciate
21 that there's not going to be an immediacy of the
22 results, necessarily, for the historical data as
23 we saw with some of the test searches we did this
24 week. And I think it was just framing that
25 reference in to that point. It actually gets in

Page 46

1 a good point about what you -- where this is all
2 leading is how to search all of this historical
3 data, so if there is a compound effect here.
4 That if we're saying hey, we're designing a
5 search in C plus plus with these longer search
6 queries in historical data and that stuff's
7 applicable to other data sources that are being
8 held that are also in the compressed Sequel data
9 format, we should look at these and compound ones
10 too, to move along the process. Because however
11 we design these searches for -- for anything,
12 it's -- think about it for reuse, you know. Can
13 we -- can this be used in other data source areas
14 as well, to produce similar results or with
15 minimal modification so that we can meet some of
16 the.
17        I do want to note that I think what was
18 just said and too much literally going back and
19 forth, was what Google said is they're going to
20 do low end production of -- of the data that they
21 can, particularly starting with the sets of data
22 that don't need publisher consent. Was that what
23 I heard, Google?
24        MR. ANSORGE: Yes, that's right, Mr.
25 Brush.

Page 47

1        MR. BRUSH: Thank you. With that,
2 we're not saying hey we're not going to get
3 anything until the 31st and that's why -- and is
4 where I totally tried to cut you off at the pump
5 because noticing that March 24th deadline and
6 when I heard March 31, that raise, some concern
7 with me too. And with that hope that we can push
8 whatever we have to do faster to get that done
9 before the 24th deadline, and if we can't, we
10 need to be known. But the concern -- I
11 definitely hear the concern of that, hey a week
12 later we're going to get to you, that might be
13 (indiscernible).
14        MR. STRAITE: Thank you, Mr. Brush.
15 Thank you, Mr. Shapiro for that explanation.
16 Both of where it came from, I think it's fairly
17 consistent with what I recall being said and it -
18 - we don't need to relitigate the issues. But
19 that was clarifying. I think what Ms. -- the
20 larger point that Ms. Weaver was raising for us,
21 is and without also, relitigating this whether it
22 was a first round search result or not, is we're
23 in the process -- we want to do this search to
24 get our actual named plaintiff's data. It's
25 great to get Dr. Shapeak's data. That is very

Page 48

1 helpful. It produces the results that we can
2 use, helpful for other searches, stuff we think
3 we're going to show to the jury. But ultimately,
4 our plaintiffs are our plaintiffs, and we want
5 our plaintiff's data. And we've bee pretty clear
6 for a while that we thought the way to get the
7 second round searches was production of a first
8 round of our actual plaintiff's data.
9        We got no sets the first time around.
10 Dr. Shapeak has been clear with the  importance
11 of how to construct the second search results
12 from the -- the actual production of our
13 plaintiff's data. And so we really have a big
14 concern about timing. We understand Google
15 saying it can't come up with it to this time, but
16 their first red paragraph reverses the order.
17 Asks us to construct the second round searches
18 before we receive any of the -- this historical
19 plaintiff data. It says their proposal is that
20 we submit our second round searches on March 6th,
21 which is tomorrow, and that they will produce
22 this historical plaintiff data on March 10th. We
23 just can't -- we can't do that, Mr. Brush, we've
24 got to be able to --
25        MS. WEAVER: And let me -- if I may,

Page 49

13 (Pages 46 - 49)

1    MS. WEAVER:  Bye guys.
2    MR. SHAPIRO:  Thanks everybody.
3    MR. STRAITE:  Bye.
4    MS. GAO:  Thanks, bye.
5    MR. BARNES:  Thank you all.
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

Page 134

1        C E R T I F I C A T I O N
2
3    I, Sonya Ledanski Hyde, certify that the
4    foregoing transcript is a true and accurate
5    record of the proceedings.
6
7
8
9
10
11    Veritext Legal Solutions
12    330 Old Country Road
13    Suite 300
14    Mineola, NY 11501
15
16    Date: March 18, 2022
17
18
19
20
21
22
23
24
25

Page 135

35 (Pages 134 - 135)

# ANSORGE
# EXHIBIT 20

# Redacted Version
# of Document Sought
# to be Sealed

March 8, 2022

**VIA ELECTRONIC MAIL**
Special Master Douglas Brush
douglas.brush@accelconsulting.llc
Timothy Schmidt
timothy.schmidt@accelconsulting.llc

Re:    *Calhoun v. Google LLC*, No. 5:20-cv-05146-LHK-SVK (N.D. Cal.)
       Joint **Update on Special Master Process**

**THIS LETTER REFERENCES MATERIAL THAT HAS BEEN
DESIGNATED CONFIDENTIAL OR HIGHLY CONFIDENTIAL**

Dear Special Master Brush and Mr. Schmidt:

As requested, the Parties provide this joint update on the Special Master process, outlining their respective positions on the issues below.

**Previously Searched but Not Produced Data**:

- *Plaintiffs' Position:* Despite orders to do so, Google still has not produced Plaintiff data it previously searched but did not produce. On Saturday's call, Google took the position that it would not produce the data it has already identified until March 31. It also failed to directly answer whether it has identified all sources of data that were previously searched or preserved – despite the Court having ordered this data produced on April 30, 2021. Plaintiffs' request Court and Special Master intervention for the production of this information immediately.

- *Google's Position*: As discussed at Saturday's conference, Google will be producing the preserved data from ████████ logs that do not contain confidential third party information no later than Thursday, March 10. Google can also agree to produce the preserved non-████████ log data by Monday, March 14. Below is a list of all sources of data from which Google preserved data pursuant to a legal hold and stored in a non-optimized format that is not easily queryable:

| |
|---|
| ████████████████████ |
| ██████████████████ |
| ████████████████ |
| ████████████████████ |
| ████████████████████████ |
| ██████████████████ |
| ████████████████████ |

Special Master Douglas Brush
March 8, 2022
Page 2

SIMMONS HANLY CONROY LLC
DiCELLO LEVITT GUTZLER LLC
BLEICHMAR FONTI & AULD LLP



Special Master Douglas Brush
March 8, 2022
Page 3

SIMMONS HANLY CONROY LLC
DICELLO LEVITT GUTZLER LLC
BLEICHMAR FONTI & AULD LLP



Special Master Douglas Brush
March 8, 2022
Page 4

SIMMONS HANLY CONROY LLC
DiCELLO LEVITT GUTZLER LLC
BLEICHMAR FONTI & AULD LLP



Special Master Douglas Brush
March 8, 2022
Page 5

SIMMONS HANLY CONROY LLC
DiCELLO LEVITT GUTZLER LLC
BLEICHMAR FONTI & AULD LLP



Google has confirmed that the preserved data contains information confidential to at least
■■■ third party publishers. Producing the preserved data from logs that contain
confidential third party information would require Google to provide reasonable notice to
all ■■ publishers, which is unduly burdensome and will further delay the conclusion of
the Special Master process. Google thus proposes to produce one record for each log not
previously produced that contains confidential third party data, with the values redacted,
so that Plaintiffs will have the populated fields for each log.

Special Master Douglas Brush
March 8, 2022
Page 6

SIMMONS HANLY CONROY LLC
DiCELLO LEVITT GUTZLER LLC
BLEICHMAR FONTI & AULD LLP

**ZWBK, Gaia, DBL ▮▮▮▮ and ▮ Information:**

- *Plaintiffs' Position*: Despite orders to do so, Google has not produced the Plaintiff or test account data contained in ZWBK, GAIA, or DBL ▮▮▮ and ▮, nor the schema thereto. On Saturday's call, Google counsel objected to full production and the Special Master seemed to alter what Google is expected to produce solely based on the say-so of Google counsel. Plaintiffs still do not have a clear understanding of what or when Google will produce this data. In addition, Google has not produced ZWBK, GAIA, or DBL ▮▮▮ and ▮ fields or protos information necessary for Plaintiffs to understand these data sources. Instead, Google provided columns without sufficient details and a letter to Special Master Brush regarding GAIA ▮▮▮ that was not provided to Plaintiffs. The importance of this information is explained in the Plaintiffs' Exhibit 1, an explanation from Prof. Shafiq. Plaintiffs' request Court and Special Master intervention for the production of this information immediately.

- *Google's Position*: Pursuant to the March 1 Sealed Order (Dkt. 516-1), "Google is ordered to search the following data sources: Zwieback ▮▮▮▮, Gaia ▮▮▮▮, Zwieback ▮ and Doubleclick ▮ … at the direction of Special Master Brush[.]" Google has searched and produced DBL ▮ data. As to Zwieback ▮▮▮▮, Gaia ▮▮▮▮, and Zwieback ▮, as stated in Google's March 5 letter, despite Google engineers' best efforts, they have not overcome the engineering difficulties to search or extract Plaintiffs' data from these sources. Google thus proposes to limit the search to certain columns, as outlined below.

| Data Source | Produced Information |
|---|---|
| ZWBK ▮▮▮ | - On February 25, Google provided annotations and names for all ZWBK ▮▮▮ columns. *See* GOOG-CALH-01170421.<br><br>- Google identified ▮▮ ZWBK ▮▮▮ columns that may pertain to Display Ads remarketing and are most relevant to the claims and defenses in this case. *See* GOOG-CALH-01168068.<br><br>- Google proposes targeting searches to the ▮▮ previously identified ZWBK ▮▮▮ columns. |

Special Master Douglas Brush
March 8, 2022
Page 7

SIMMONS HANLY CONROY LLC
DiCELLO LEVITT GUTZLER LLC
BLEICHMAR FONTI & AULD LLP



| GAIA ▮ | - On March 7, Google submitted to the Special Master column name, data type, retention, and annotations for all ▮ GAIA ▮ columns. *See* Google's submission titled "2022-03-07 Calhoun v. Google - GAIA ▮ Columns - AEO." |
|---|---|
| | - Google previously provided annotations and names for ▮ GAIA ▮ columns that may pertain to Display Ads and/or Analytics. *See* Google's December 21, 2021 submission titled "2021-12-21 Calhoun v. Google - Google Submission to Special Master," Sheet 13. |
| | - Google proposes targeting searches to the ▮ previously identified GAIA ▮ columns. |
| ZWBK ▮ | - Google confirms that it has provided annotations and names for all nine ZWBK ▮. *See* GOOG-CALH-00913746. |
| | - Google will search and produce data associated with the identifiers provided by consenting Plaintiffs and Dr. Shafiq from ZWBK Oz. |

Plaintiffs also seemingly request that Google provide "fields" and "subfields" for the ZWBK ▮, GAIA ▮, and ZWBK ▮ columns. However, Google has no existing tool that provides a listing of "fields" and "subfields."

**Logs Containing Not Synced Signals**:

- *Plaintiffs' Position*: Plaintiffs do not believe Google has identified all logs that contain Not Synced signals or other signals from which Not Synced status can be inferred. For example, Plaintiffs learned of the ▮▮▮▮▮▮ and "maybe_chrome_incogito" field and values in ▮▮▮▮▮▮ only after the close of discovery. We also learned that the bit is stored in so-called ▮▮▮▮ logs, which also contain residential address and other precise geolocation information for users. Further, Google's categorical refusal to address Zwieback-keyed data outside of Display Ads makes its Not Synced signal disclosures incomplete. For example, GOOG-CALH-00292459 states that, until 2019, "signed-in WAA-off logs [we]re written to Zwieback archival logs" but, after that, were written to "temporary personal logs, and tombstoned within the wipeout period." What this means is that there are Zwieback logs that consist entirely of signed-out data. For those logs, the combination of the existence of communication in the log and Chrome

Special Master Douglas Brush
March 8, 2022
Page 8

SIMMONS HANLY CONROY LLC
DiCELLO LEVITT GUTZLER LLC
BLEICHMAR FONTI & AULD LLP

as the user-agent, means that the communication was sent from Chrome to Google while the user was signed-out, i.e. not synced. If Google would simply disclose such logs and their retention periods, it may resolve the preservation dispute. The Court ordered Google's disclosure of this information in November and Plaintiffs' request that the Special Master order Google to respond.

Plaintiffs' request Court and Special Master intervention for confirmation that Google has identified all logs that contain Not Synced signals or other signals from which Not Synced status can be inferred. To the extent information continues to be withheld, Plaintiffs' request Court and Special Master intervention for the production of this information immediately.

- *Google's Position*: Plaintiffs wrongly assert that they only learned about the ████████████ and the "maybe_chrome_incogito" fields in a live demonstration on Thursday. They have been on notice of the "maybe_chrome_incognito field" as early as *April 2021*, and the "brower_info_state" field as early as in November 2021. *See, e.g.,* GOOG-CALH-00034871 at-75, produced in April 2021 ("maybe_chrome_incognito field needs to be used with caution"); GOOG-CABR-05285407 ("This will initialize ████████████████"). Asking for additional information is unreasonable at this point. Unless the Special Master instructs Google to provide any additional information, Google will not entertain Plaintiffs' endless attempt to derail the conclusion of the Special Master process.

**Identification of Relevant Logs and Fields**:
- *Plaintiffs' Position*: Google has not yet identified all relevant logs to this case or their fields. Rather, Google limited its identification of fields to the "top 100" fields without Plaintiffs' knowledge. Plaintiffs learned this week that relevant fields were excluded from Google's productions as a result. Plaintiffs' request Court and Special Master intervention for the production of this information immediately.

- *Google's Position*: Plaintiffs' assertion that they "learned for the first time 2 days ago" that Google only disclosed the top 100 fields by size is incorrect. *See, e.g.,* Google's December 1 Letter ("Along with this letter, we are providing … field names for the largest 100 fields for all the additional ████ logs described in Section 3, Numbers 2-5 of the Order (██ logs in total) …" Pursuant to the Special Master's order and instructions, Google will not be providing *all* fields for *all* identified logs.

The technical burdens associated with providing *all* field names are neither proportional nor beneficial to efficiently resolving the disputes currently before the Special Master. As Google explained in its October 1 letter to the Special Master regarding technical burdens, Google stores its logs records in protocol buffers. Protocol buffers related to the selected

Special Master Douglas Brush

SIMMONS HANLY CONROY LLC
March 8, 2022

DiCELLO LEVITT GUTZLER LLC
Page 9

BLEICHMAR FONTI & AULD LLP

log sources are complex and include nested sub-messages that consist of other protocol buffers, that contain further nested sub-messages, and so forth. Each message file contains information about the name, type, identifying field number, and (in some cases) a comment about the field. To save space on disk, a protocol buffer record is encoded in a format in which the fields are identified by tag numbers.

Because the logs in question have fields and message files from multiple protocol buffer files, Google cannot produce a single ".proto" file, but rather would be required to compile a list of hundreds of files—a complex exercise that will require many software engineering hours. Similar to how C++ compilers can walk through #include statements to produce a binary with all the relevant code and libraries linked in—but there are no readily available tools to reconstruct all the relevant source code that went into that specific binary—proto files import other proto files, using subsections of those files. Moreover, proto files related to the selected data sources are source code: they are submitted as source code, reviewed as source code, and run as source code.

A protocol buffer contains all possible tags that could contain data. With very few exceptions—such as the limited number fields that have the rarely used "required" tag—there is no requirement for any given field to be filled in. Moreover, it is impossible to enforce the semantics of what a field is used for from product to product, or even record to record. Some protocol buffers, such as those used in ad query logs or frontend logs, are shared across multiple Google products and the vast majority of fields listed therein will contain no data in a given record. For example, many fields pertain only to ads shown on Google's search page and are irrelevant to ads on third-party websites.

Providing a list of fields in a proto that are actually filled/used for the data at issue, is also burdensome. Google has no existing tool that provides a listing of populated fields based on a given set of conditions. In theory, Google engineers could create a Flume pipeline to parse each individual record, filter-in matching product/criteria, enumerate the filled fields, and add those to a running set. However, this is a non-trivial program to write, test, submit, and validate. Running this program over more than a handful of recent days would also require significant computer resources, as the potentially relevant log sources are in the ████████████ range. This list of fields would also contain highly sensitive information related to Google's ads serving infrastructure and abuse detection, that is irrelevant to this matter and whose disclosure could cause Google substantial economic harm.

## Preservation:

- *Plaintiffs' Position*: Regarding the Preservation issue, Plaintiffs remain willing to negotiate in good faith, which means Google must be willing to discuss class-wide

Special Master Douglas Brush
March 8, 2022
Page 10

SIMMONS HANLY CONROY LLC
DiCELLO LEVITT GUTZLER LLC
BLEICHMAR FONTI & AULD LLP

preservation of more than simply the Signed In But Not Consented for Sync signal. Plaintiffs have made clear that Google must either stipulate that class-wide preservation is not necessary for Plaintiffs to prove any class claim or any individual class members' claim – or it must be willing to discuss preservation of signals necessary for identification of class members, the extent of Google's misconduct towards them, and their damages. This would include: (1) Identifiers; (2) not synced signals; (3) content and frequently of not synced signals sent from Chrome to Google for those users; (4) profile information; (5) revenue information; (6) location data; and (7) not incognito signals. As class counsel, *Calhoun* counsel cannot agree to a "preservation" proposal that would permit deletion of relevant class member data that is not preserved somewhere else. Despite this, Google has repeatedly stated it would not consider class-wide preservation. As a result, Plaintiffs believe it would be more efficient to simply brief the burdens of preservation and sanctions against Google directly to Judge van Keulen.

- *Google's Position*: Google has provided a reasonable compromise, and is willing to meet and confer with Plaintiffs in good faith to arrive at a preservation proposal that makes sense and is practically feasible.

**Status of Second Round Searches**:
- *Plaintiffs' Position:* Plaintiffs are not positioned to request Second Round searches until Google produces the Plaintiff data it searched for and segregated last February (and has withheld from Plaintiffs since then), and that it has been ordered to produce by the Court and the Special Master. Plaintiffs will promptly provide Second Round search parameters as soon as practicable after Google completes the tasks, which it has been ordered to do:

| Items | Date of Completion |
|---|---|
| Google to identify all Plaintiffs' data previously searched but not produced. | |
| Google to produce Plaintiffs' data previously identified as having been searched but not produced. | |
| Google to produce newly identified Plaintiffs' data previously searched but not produced. | |
| Google's production of ZWBK████. | |
| Google's production of GAIA████. | |
| Google's production of DBL████. | |
| Google's production of ZWBK██. | |
| Google's production of GAIA██. | |
| Google's production of DBL██. | |
| Google's production of schema, fields, and protos for ZWBK, GAIA, and DBL████. *See* Pls' Exhibit 1, Shafiq Explanation. | |

Special Master Douglas Brush                          SIMMONS HANLY CONROY LLC
March 8, 2022                                          DiCELLO LEVITT GUTZLER LLC
Page 11                                              BLEICHMAR FONTI & AULD LLP

| | |
|---|---|
| Google's production of schema, fields, and protos for ZWBK, GAIA, and DBL ▮. *See* Pls' Exhibit 1, Shafiq Explanation. | |
| Google to identify all Not Synced signals (express or inferred) from any data source. | |
| Plaintiffs to identify Second Round searches. | Five business days following completion of Google's responses. |

- *Google's Position*: As the Court recognized in the November 12 Order, "the requests and production from Google must and will come to an end." Dkt. 377 at 5. Google has produced more than ▮▮▮▮ pages in this case, including ▮▮▮▮ of pages of Plaintiffs' data produced during the Special Master process. Plaintiffs have more than enough information to craft the final round of searches and should not continue to derail the conclusion of the Special Master process.

Sincerely,

| | |
|---|---|
| */s Jay Barnes* | |
| Jay Barnes | |
| jaybarnes@simmonsfirm.com | |
| | |
| */s/ Lesley Weaver* | |
| Lesley Weaver | |
| lweaver@bfalaw.com | |
| | |
| | |
| */s/ David Straite* | *Counsel for Google* |
| David Straite | |
| dstraite@dicellolevitt.com | |
| | |
| *Counsel for Plaintiffs* | |

Special Master Douglas Brush                       SIMMONS HANLY CONROY LLC
March 8, 2022                                        DiCELLO LEVITT GUTZLER LLC
Page 12                                            BLEICHMAR FONTI & AULD LLP


cc, via email:

Plaintiffs' Counsel

akeller@dicellolevitt.com
aprom@dicellolevitt.com
scruz@dicellolevitt.com
aornelas@bfalaw.com
atruong@simmonsfirm.com
ejohnson@simmonsfirm.com

# ANSORGE
# EXHIBIT 21

# Redacted Version
# of Document Sought
# to be Sealed

1              UNITED STATES DISTRICT COURT

2            NORTHERN DISTRICT OF CALIFORNIA

3                 SAN JOSE DIVISION

4

5    Case No. 5:20-cv-05146-LHK-SVK

6

7    PATRICK CALHOUN, et al., on behalf of       |

8    themselves and all others similarly situated, |

9                 Plaintiffs,                      |

10        v.                                       |

11   GOOGLE, LLC,                                  |

12                 Defendant.                      |

13   _____|

14

15

16

17             Special Masters Hearing

18               March 8, 2022

19

20

21

22

23

24

25

                                          Page  1

**Page 10**

1    MR. ANSORGE:  This is a third bucket.
2  This is data that has been preserved.  So there
3  is at a point in the litigation an engineer will
4  preserve data for purposes of the litigation.
5  It's not preserved in the format in which it's
6  easily queryable.  And that's why the delays have
7  existed.  But we can provide that on the 9th and
8  10th.
9    And I think it's a very important
10  clarification, Special Master Brush, because
11  sometimes it's been framed as previously
12  searched, but not produced data.  And that would
13  make it seem like this was a search that was done
14  under the special master process perhaps or where
15  in proportionally different steps were followed.
16  And that's not what this is.  These are broad
17  data preservations that took place which now
18  after -- of course we've been ordered -- we're
19  working on making them all available.
20    MR. BRUSH:  Okay.  And that's an
21  important clarification, Joey.  Thank you so
22  much.  I just wanted to make sure that this five
23  pages or four pages of data source list wasn't
24  meant to say these are off-limits, but really the
25  opposite, to say that they are being produced,

**Page 11**

1  you were just giving a reason for the delay and -
2  - is that right?
3    MR. ANSORGE:  Yes.  So these were
4  always the sources that we were discussing when
5  we were referring to the preserved data that
6  would be searched that we have been ordered to
7  provide.  That's what we are describing the
8  burden that would be associated with both
9  querying it, providing it.  It's not going to be
10  structured in the same way in which the other
11  productions have been.  We are finding I think
12  some creative solutions to dealing I think the
13  publisher notice and consent problem.
14    With your permission, David, I would
15  transition to discussing that part.  Or was there
16  some other aspect of this you wanted to talk
17  about?
18    MR. STRAITE:  No, I think we are
19  definitely happy to move on to the next topic.  I
20  think we got the answer we need there.  Do you
21  have a sense of the volume yet?
22    MR. BRUSH:  That's two parts.  Volume
23  and timing are really just want we need to be --
24  and you obviously heard it's more technical.  You
25  can inform me on this stuff.  You know, what

**Page 12**

1  format is this?  Syslog, binary formats, or are
2  they, you know, zipped and encrypted?  The more
3  you can feed me about the technical stuff, the
4  better I can help articulate the need for
5  additional time.  If you don't know it, please
6  feel free to put that in the email.  Because I'm
7  on your side on that one.  I get the technical
8  limitations of these types of data formats,
9  particularly when they've been held early on in
10  the litigation.  So anything you provide as
11  insight to that, the more transparencies, the
12  better.
13    MR. ANSORGE:  So to make sure I get the
14  exact terminology right, Special Master, I might
15  want to send a follow-up letter.
16    MR. BRUSH:  That's fine.
17    MR. ANSORGE:  I know that we have some
18  sources and there's explanations from the
19  engineers, but I want to make sure that I don't
20  misspeak.  I think there is some aspect to --
21  yeah.  I'm not even going to try and recall to
22  make sure that --
23    MR. BRUSH:  No, no, that's fine.
24    MR. ANSORGE:  There's a lot of
25  technical terms that we can offer you.

**Page 13**

1    MR. BRUSH:  Yeah.  If you could, that
2  would be helpful.  Thank you.
3    MR. ANSORGE:  And some of the logs that
4  do not contain confidential third-party
5  information, we are on target for March 10th.  I
6  think we will be able to expedite it to March
7  9th.  And, you know, those are the ▉▉▉ logs
               we
8  were discussing here.
9    The timing for the ▉▉▉ log data
10  for March 14th, that has not passed.  That can
11  hold.  All the indications we should be able to
12  meet that.
13    The problem for us, and we sketched it
14  out in the letter, is that we now have the
15  additional information which we were referring to
16  on Saturday.  You may recall on Saturday one of
17  the problems that we had sketched out was that
18  for a portion of ▉▉▉ logs that contain
19  confidential third-party publisher information,
20  we would have to seek -- we would have to both
21  provide reasonable notice, and the number could
22  be -- if it would be significantly large, that
23  would have -- it would be quite a burden, some
24  exercise.  And found out that it's ▉ third-
25  party publishers based on the first search that

4 (Pages 10 - 13)

1 has been pulled out by the engineer. We are
2 concerned about that volume, that amount. The
3 last time we were providing notice to something
4 like ███ publishers, team members were tied up on
5 both the phone and in emails with publishers for
6 almost a week.
7      So our proposal, which I'm happy to
8 say, Mr. Brush, the engineer has now blessed the
9 Brown proposal we were discussing earlier, is to
10 proceed in sort of two different step process
11 where the first step we provide a list of all the
12 fields that are written inside this preserved
13 data as a source, and Plaintiffs would then have
14 a list of the different field names. And out of
15 that, there is a specific field name, just like
16 the last time where Plaintiffs asked for more
17 information about specific revenue fields. If
18 there is a different one or something similar, we
19 could then have a conversation with you and then
20 about identifying a subset of the most relevant
21 third-party publishers where, you know, the 80/20
22 rule often holds I think in these situations as
23 well. There might be ten publishers for which
24 the majority of information is tied to. We've
25 focused notice and the consent process on those

Page 14

1 ten specific publishers. And then once they've
2 had reasonable notice, we have produced that
3 information to Plaintiffs.
4      MR. STRAITE: Yeah. And thank you for
5 reminding -- you know, the 80,20 rule can be a
6 useful guide in a lot of economics and other --
7 other parts of life. You know, 80 percent of the
8 ground contains no, you know, useful minerals or
9 gems, but we don't look in the 80 percent that
10 don't. You know, we look in the 20 percent. So
11 sometimes looking in the smaller logs can be more
12 fruitful. It's important that we know which logs
13 we're looking at, which sources we're looking at.
14      We just got this letter. We see the
15 offer for -- regarding a way around the ███
16 publishers. We would like a chance to review
17 this today and talk to a few people. And we also
18 -- we hear you, Joey, about this additional
19 offer, that you would provide a list of all --
20 it's a list of all fields that are in the data
21 sources in the chart on pages 1 through 5 of your
22 letter today?
23      MR. ANSORGE: Of the ███ logs.
24 Because those are the ones that we currently have
25 in the preserved data source.

Page 15

1      MR. STRAITE: So which of these --
2      MR. ANSORGE: So there's -- you'll
3 notice there's ███ corpora. I don't
4 expect the ███ corpora to have publisher
5 data, but I don't know. We'd have to check. I
6 wouldn't want to do that based on just my say-so.
7      The trickier part is the ███ log.
8 So I think the ███ corpora that are
9 identified here, they serve my activity
10 infrastructure. So it should be -- I think
11 Plaintiffs could easily get this information to
12 use take-out, but we can also provide it to them
13 with an order to, and the target date for that
14 would be March 14th.
15      MR. STRAITE: And these data sources
16 that are listed on pages 1 through 5, this is
17 just ███ and ███ or are there any
18 other data sources?
19      MR. ANSORGE: Yeah, I'm not sure what
20 you're -- on 1 to 5...
21      MR. STRAITE: Pages 1 through 5, this
22 chart you have in the letter. You said these are
23 more than just ███ right?
24      MR. ANSORGE: Yes. So there's
25 ███ corpora. The capital -- all capital

Page 16

1 letters are the giveaway for the ███
2 corpora. The other parts are the ███ logs.
3 For instance, ███████████
4 ███████████████ Those are
5 ███ logs.
6      MR. STRAITE: So you say that these
7 data sources listed on Pages 1 through 5 of the
8 letter are the list of all sources of data from
9 which Google preserved data. So just to be
10 clear, this means that Google did not preserve
11 data pursuant to legal hold from any other data
12 source. Is that right? This is the complete
13 list?
14      MR. ANSORGE: The list where the
15 preservation was done for those specific sources.
16 We have of course been asked to search other
17 sources and have provided that information. If
18 there is a specific one you're thinking of, yes,
19 that would be helpful. Maybe we're speaking past
20 each other on some aspects. But this is the --
21 these are the preserved sources that we have been
22 discussing to date.
23      MR. STRAITE: Yeah. I'm not asking
24 about the ones we've been discussing to date. I
25 am asking if there's any others that we haven't

Page 17

5 (Pages 14 - 17)

1 been discussing to date. Are there any other --
2    MR. ANSORGE: I'm not aware of anything
3 that we are not discussing to date. I'm not
4 aware of anything --
5    MR. STRAITE: So my question is --
6    MR. ANSORGE: -- else that's in that
7 category of what's been preserved.
8    MR. STRAITE: Can we rely on this list
9 in pages 1 through 5 of today's letter as the
10 complete list of all sources of data from which
11 Google preserved data pursuant to a legal hold
12 and stored? Is this the complete list or --
13    MR. SCHAPIRO: I'm going to jump in and
14 say, you know, that I would be reluctant -- I
15 don't know what the answer is, but I don't want
16 to make a representation right now about what's
17 the complete list of everything that was subject
18 to a legal hold or whatever just because that
19 seems like that is a sensitive and potentially
20 fraught issue. So I don't think we want to make
21 a representation on this meet and confer about
22 what the answer to that is. I have no idea
23 actually as I sit here. But let's -- I'm going
24 to say let's not answer that.
25    MR. STRAITE: Well, we would like an

Page 18

1 answer eventually. I think it's something that
2 Judge van Keulen already ordered.
3    MR. BRUSH: Mr. Straite, yeah. I think
4 what we're getting at is that if we continue to
5 have attorneys sitting and opine on it but we
6 can't have it be in a position where they feel
7 like, you know, we are doing this stuff on the
8 record, and I have seen -- I don't want to say
9 abuse per se, but there has been some of this --
10 I just don't want anything where people are being
11 like, well, you said and, you know, reading
12 things back on the record when people are making
13 good-faith efforts to move this along. So if you
14 need something specific and somebody is not on
15 the phone that can answer the specifics, let's
16 take it offline and get an answer, but not push
17 people to guess on this call right now, because
18 we have a lot to get to.
19    MR. STRAITE: Agree a hundred percent.
20 No guessing. We definitely just would prefer to
21 shut this down sooner than later, meaning if we
22 can get an answer that is complete. We know you
23 can't do it today on this call, but we just need
24 to make sure that this is everything that's been
25 preserved.

Page 19

1    MR. BRUSH: Understood.
2    MR. STRAITE: And then, Joey, for the
3 offer to provide us a list of all fields, you are
4 referring to each of the data sources listed in
5 this letter?
6    MR. ANSORGE: No. I am referring to
7 the ████ logs, the ████ logs in particular.
8 So that's the problem with the querying with the
9 proto that we've been discussing. That's what
10 I've been talking about the March -- March 9th
11 production that we could move up to provide
12 everything from the ████ logs that have
13 confidential third-party publisher information in
14 them would require reasonable notice to more than
15 ██ different publishers. And that's why we are
16 proposing that as a work-around for those
17 specific logs. We would have this multi-step
18 process.
19    The first is we would provide to
20 Plaintiffs lists of all the field names that are
21 filled in for the specific logs. And this is the
22 subset. It's ████ and then publisher logs
23 that contain the publisher-confidential
24 information.
25    If there's specific questions about

Page 20

1 this individual field or if there is some other
2 reason why Plaintiffs will say, well, we need the
3 value that's associated with this field, we could
4 then work to come up with something that's less
5 burdensome than providing notice to ██ different
6 entities. And that's a proposal.
7    MR. STRAITE: And further to Special
8 Master Brush's point though, it's not helpful to
9 say, well, you said and you said. That's a
10 really good point. Could we get in writing what
11 your proposal is regarding the disclosure of the
12 fields? Because I know I'm going to screw it up.
13    MR. ANSORGE: And actually that's one
14 reason why I'm a bit rushed, is we're pulling
15 something like that together for the Brown case.
16 As that is being finished, we will provide it to
17 you. Absolutely.
18    MR. BRUSH: Yeah. I'm laughing because
19 it's déjà vu all over again. It was as I heard
20 that, we could put that in writing. I think we
21 can, can't we?
22    MR. STRAITE: Yeah. I think putting it
23 in writing might be --
24    MR. BRUSH: We literally just covered
25 this exact same issue. So this is why we're

Page 21

6 (Pages 18 - 21)

**Page 22**

1  doing this process.  I mean, if it's technical
2  and it helps the process to only do it once, this
3  is a good thing.  So yes, Mr. Ansorge, please, by
4  all means, it's literally the recipe we just put
5  out to bake the cake on the other one.  So let's
6  use it.
7      MR. STRAITE:  And if I want to give you
8  -- I will now give you the greatest incentive
9  ever to move at lightning speed through this
10  conversation.  If we don't go fast, Jay will
11  join.  He is close to joining.
12      MR. BRUSH:  Wow.  Wow.
13      MR. STRAITE:  I'm just giving you the
14  warning.
15      MR. SCHAPIRO:  That's wrong.  Let's go.
16      MR. ANSORGE:  Okay.  Yes, yes.  I have
17  missed, like, every parent-teacher conference
18  this week.  My wife is about to kill me.  So,
19  please, let's do it.  Yeah.
20      MR. STRAITE:  Okay.  So here we go.
21  Number two then.  So we appreciate, you know, the
22  effort.  Obviously, you know, we have to have
23  further conversations not here today, but on our
24  meet and confer this week in advance of March
25  11th what these days mean for other things in the

**Page 23**

1  case beyond the special master process.  But
2  that's for another time today or another day.
3  But we do appreciate more clarity on the dates
4  here.
5      Our second topic on the letter -- and
6  I'm scrolling because I don't have a printout.
7  Okay.  This is Zwieback, GAIA and DBL ██ and
8  of course Zwieback, GAIA and DBL ██ information.
9  So looking here at your position.  Google has
10  searched the DBL ██  Thank you for that.  For
11  Zwieback, ████ GAIA ████ and Zwieback ██
12  okay.  What I don't see here is -- we have DBL
13  ██ you have Zwieback ██ but no -- is there --
14  okay, GAIA, ████ I'm making sure nothing is
15  left out here.  Okay.
16      We're going to have to -- this is
17  obviously a complex proposal.  I mean, do you
18  want to summarize it?  Joey?  I don't know.  Is
19  there -- I mean, we can take this back to our
20  experts and consider this proposal.  But I don't
21  know that -- you know.
22      MR. ANSORGE:  Yeah.  I couldn't do much
23  more than read it out to you, David.
24      MR. STRAITE:  Okay.  Let's not do that.
25      MR. ANSORGE:  I don't know if that's a

**Page 24**

1  good use of our time.  All right.
2      MR. BRUSH:  Again, just referencing the
3  other points of some efficiencies and the
4  discovery efforts.  I think there might be some
5  things that we glean on the other matter with
6  Brown that could be applicable here as far as the
7  understanding of how these fields are created
8  dynamically and how it's imperative to use IDs to
9  search the data to generate results with the
10  anticipation that those results will then have
11  some field information that might even beg some
12  more questions about what's this and that.  But
13  that's a natural process the way this proto
14  contract is.
15      So it's something that it's really
16  important the Plaintiffs understand that to move
17  everything we are doing forward really is going
18  to have to be focused on providing IDs that can
19  be searched to yield results with the
20  understanding that we might have to refine some
21  of this for some additional searches,
22  particularly around stuff with the Flume searches
23  because of the way the field information is
24  generated on the fly.
25      So that's really the top-level

**Page 25**

1  understanding, is we have to be very ID-focused
2  as opposed to field-focused.  But just because of
3  the nature of the way the data is put together.
4      MR. STRAITE:  Sure.  And that's
5  something we can have conversations about, the
6  best way to search.  But our fear here is that
7  this is Google asking for relief from the duty to
8  search -- what sources to search, not how to
9  search.
10      MR. BRUSH:  Yeah.  I would say right
11  now given -- consult with the experts, take a
12  look, and let's return to this one quicker in
13  letter form.
14      MR. STRAITE:  Okay.
15      MR. BRUSH:  Or as quick as possible in
16  a form that we can address.
17      MR. STRAITE:  Yeah.  Real quick.  And
18  then back to Topic One.  I'm sorry about that.
19  What was the date of the preservation on the data
20  at issue in Topic One here.
21      MR. SCHAPIRO:  (indiscernible) about
22  that, either.  This all feels like some, you
23  know, some sort of spoliation setup or something.
24  I hope --
25      MR. BRUSH:  No, no, no, I don't think -

7 (Pages 22 - 25)

1  case. There's still the other case and those
2  parts. And we have all the other moving pieces.
3  And this is just something that needs to be put
4  to bed. And I will be happy to do that. But, I
5  mean, what I'm trying to say too is that the
6  further deadlines get, the greater the
7  consequences are going to be. And we're really
8  extending out a lot, much further than I should
9  be at this point. But I just see that there's
10  light at the end of the tunnel. I can see were
11  you all have the ability and capacity to work
12  with each other when you don't get each your
13  respective ways.
14       And so by all means, you can do this.
15  Andi expect just a little bit further progress
16  before we really have to deal with the remaining
17  issues that I can settle. But there needs to be
18  a little bit more effort on both parties' part to
19  close out some of the open issues.
20       MR. SCHAPIRO: Totally agree.
21       MR. STRAITE: Thank you, Special Master
22  Brush. The light at the end of the tunnel we all
23  know sometimes can be an oncoming train. We will
24  work 24/7 to get this done. We just need more
25  disclosure from Google. We as class counsel, it

Page 62

1  should be looked at as kind of working documents.
2  And if -- to that effect has not been presented
3  from my -- where I'm sitting, I apologize. But
4  yeah, look at these as working documents and keep
5  working through it. I don't want this to be a
6  static thing. And as I mentioned again with some
7  of the other parties, you know, when issues come
8  up, don't wait until we have a meet and confer to
9  bring them up. Work with each other. This is --
10  it will benefit you to the extent that you can
11  resolve as many of these issues with each other
12  before they become issues. I've seen that be a
13  problem as well.
14       MR. SCHAPIRO: Thank you, Your Honor --
15  Special Master.
16       MR. BRUSH: Well, wonderful. I'll give
17  everybody back their time. I have to run. I am
18  late for my call. But I look forward to further
19  seeing the updates.
20       MR. STRAITE: Thank you. We appreciate
21  your time.
22       MR. BRUSH: Thank you.
23       (Proceedings concluded)
24
25

Page 64

1  is literally impossible for us to agree to a
2  preservation plan that would allow the
3  destruction of data we're not aware of --
4       MR. BRUSH: It's been noted. It's been
5  put on the record multiple times today.
6       MR. BARNES: Mr. Brush, may I say
7  something non-controversial? I noticed a typo in
8  Footnote 1. Mr. Ansorge I think will probably
9  recognize this as a typo. In the third category,
10  that should be content infrequency of
11  transmissions sent from Chrome to Google for
12  those users. We've had this discussion about
13  what is content. And our -- I don't want to have
14  the legal argument about what is content, but I
15  think Mr. Ansorge knows what we mean is get
16  requests, post requests, URLs, buttons, clicks,
17  those sorts of things. I just don't want this to
18  become our position is paragraph three with the
19  typo there. And I think Mr. Ansorge understands
20  that that -- understands what we meant in the
21  third --
22       MR. BRUSH: Certainly. This is a
23  guide. And if we need to adjust some lines on
24  the map as we go through the process, that's
25  fine. But definitely make those edits. These

Page 63

1       C E R T I F I C A T I O N
2
3  I, Sonya Ledanski Hyde, certify that the
4  foregoing transcript is a true and accurate
5  record of the proceedings.
6
7
8
9  *Sonya M. Ledanski Hyde*
10
11  Veritext Legal Solutions
12  330 Old Country Road
13  Suite 300
14  Mineola, NY 11501
15
16  Date: June 7, 2022
17
18
19
20
21
22
23
24
25

Page 65

17 (Pages 62 - 65)

# ANSORGE
# EXHIBIT 22

# Redacted Version
# of Document Sought
# to be Sealed

**quinn emanuel** trial lawyers | washington, dc

1300 I Street NW, Suite 900, Washington, District of Columbia 20005-3314 | TEL (202) 538-8000 FAX (202) 538-8100

WRITER'S DIRECT DIAL NO.
**(202) 538-8267**

WRITER'S EMAIL ADDRESS
**josefansorge@quinnemanuel.com**

March 8, 2022

**HIGHLY CONFIDENTIAL - SPECIAL MASTER AND ATTORNEY'S EYES ONLY**

**VIA E-MAIL**

Special Master Douglas Brush
(douglas.brush@accelconsulting.llc)
Accel Consulting, LLC

Timothy Schmidt
(timothy.schmidt@accelconsulting.llc)
Accel Consulting, LLC

Jay Barnes
Simmons Hanly Conroy LLC
112 Madison Ave., 7th Floor
New York, NY 10016

Re:   *Calhoun, et al. v. Google LLC* – U.S. District Court, Northern District of California, San Jose Division: Case No. 5:20-cv-5146

Dear Special Master Brush, Mr. Schmidt, Counsel:

Google proposes the following process to provide information related to log sources that contain confidential publisher information:

1. Google provides to Plaintiffs and the Special Master lists of all fields that have data in the logs containing publisher confidential information.

2. If Plaintiffs believe in good faith that they need to review the values for specific fields, they will identify those fields to the Special Master and Google. If the Special Master determines that the relevance of the values of the specific fields is proportional to the burden associated with Google providing reasonable publisher notice, the parties shall cooperate to identify a subset of 10 publishers.

3. Under the Special Master's guidance, the parties will cooperate to select a subset of 10 publishers no later than March 18, 2022. This will allow Google to complete the notification process in a timely and less burdensome manner and complete production prior to March 31, 2022.

4. Google will provide reasonable notice to that subset of 10 publishers.

5. Once the subset of 10 publishers have had reasonable notice, Google will produce the associated log entries containing confidential information for the subset of publishers to the Special Master and Plaintiffs.

In response to the Special Master's request for additional information regarding the preserved ▮▮▮▮▮ data: We are informed by engineers that the data is "at rest encrypted" and stored as a capacitor file that is not optimized for quick reads. Data is not keyed by ID, and therefore engineers have to parse the data separately in order to sort it by ID and run searches on it.

Sincerely,

QUINN EMANUEL URQUHART & SULLIVAN, LLP

Josef Ansorge

Josef Ansorge

JA

# ANSORGE
# EXHIBIT 23

# Unredacted Version
# of Document Sought
# to be Sealed

1          UNITED STATES DISTRICT COURT

2         NORTHERN DISTRICT OF CALIFORNIA

3              SAN JOSE DIVISION

4

5   Case No. 5:20-cv-05146-LHK-SVK

6

7   PATRICK CALHOUN, et al., on behalf of         |

8   themselves and all others similarly situated, |

9              Plaintiffs,                         |

10      v.                                         |

11  GOOGLE, LLC,                                   |

12             Defendant.                          |

13  _____|

14

15

16

17          Special Masters Hearing

18             March 13, 2022

19

20

21

22

23

24

25

                                        Page 1

1 compromise. However, as much as we understand
2 that Google produced all of this data, it's still
3 illegible, and only helping us interpret 10 of
4 those fields will not actually help us interpret
5 what we received. We won't still be able to
6 understand the full production, and it's not as
7 though we're asking for everything in Google's
8 possession to be decoded. We're asking for
9 Google to identify their outputs that I know that
10 they're able to identify to themselves
11 internally. We're just asking for the exact same
12 clarity.
13      MR. BRUSH: I'm going to pause you
14 right there, Ms. Cruz. But you were offered a
15 compromise to a start. You know, it's got to
16 provide an insight, and if it provides, you know,
17 again, this is where this process, and we've done
18 this interim, and again this cannot be an ongoing
19 interim process, this is going to be, you know,
20 if you need, you know, a few more fields, more
21 than that, like come up with something, but I
22 mean, I think this is a very good solution,
23 because it's going to give us some insight.
24      because I see the problem here. What
25 I'm thinking is is there's a nuance here that

Page 50

1 understand we -- having piecemeal decoding of the
2 production that we just received doesn't make
3 sense given the timelines that we are all facing.
4      If we could simply just take the
5 interpretations -- the protos specifically that
6 Google has that they overlay over this data so
7 that they can understand it, we could understand
8 it equally easily. And we could make it much
9 more clearly that we could move forward in an
10 informed and narrowing specific way, just as
11 Counsel wants.
12      MR. SCHAPIRO: So, in the interest of
13 time, I think where we are is our offer of this
14 compromise of the 10 has been rejected, so it's
15 over to you. We have two different positions.
16 We still need some guidance on the preservation -
17 - sorry, the publisher point, I think. That's --
18 in our view, I, you know, we submitted, I guess
19 it's called our March 10th update, each side
20 submitted something so it would have come in
21 around 11:30 at night on Thursday. To us, this
22 lays out the status of everything, and in our
23 view the only outstanding item before this
24 process can be declared successfully completed is
25 what we do about the confidential third-party

Page 52

1 maybe the attorneys are missing, and that there's
2 a testable issue here, where it's an
3 interpretation of the produced data. That's it.
4 I mean, data's been produced, by all fairness if
5 they wanted to conflate this they could in front
6 of (indiscernible) produced. I'm trying to help
7 Plaintiffs here in need of some common ground. I
8 think this is a good one.
9      MS. CRUZ: If I may, Mr. Brush --
10 Special Master Brush. I --
11      MR. STRAITE: Ms. (indiscernible) might
12 have joined early. Sorry, Ms. (indiscernible)
13 we're not closed out yet on the Calhoun and
14 confer.
15      MS. CRUZ: If you please. Special
16 Master Brush, I'm sorry to interrupt, I'm only
17 speaking up now because prior to law school I was
18 a techie, this is kind of my thing before I was -
19 - before I started practicing, and I have to be
20 clear. Like I'm not trying to claim to be any
21 sort of technical expert, but from my viewing of
22 the data that Google has previously produced
23 versus the data that was produced most recently,
24 it would speed up this process significantly if
25 we could just get the protos so that we could

Page 51

1 publisher information, and I know Plaintiffs have
2 a very different view, but if we have one minute
3 left, maybe Joey can raise that so we get some
4 guidance about it.
5      MR. BRUSH: Hold on one second, whoa,
6 whoa, whoa. Look, I think we're going to have to
7 reconvene. I mean, this is just too much to go
8 through, and I have the chart here, but I want to
9 knock out things to go on records with -- go on
10 record with. because I can close out a good
11 portion of this, and I want to do that to frame
12 further discussions. So, if counsel are able to
13 reconvene tomorrow morning, earlier the better, I
14 would say let's go through this.
15      And I would like, in the meantime, to
16 re -- to have Plaintiffs talk to (indiscernible)
17 and come up with a better solution than
18 everything, because you're not getting
19 everything. So, come to the subset of what
20 you're going to need, and have them take a look
21 at the data a little bit more, and then come back
22 with a proposal of what you're going to need for
23 that specific production.
24      MR. STRAITE: I think tomorrow morning
25 works for us, certainly. In the meantime put --

Page 53

14 (Pages 50 - 53)

1  when we reconvene in the morning and we can make
2  ourselves available, Special Master Brush, at
3  your convenience.  If we could also get an answer
4  in writing from Mr. Schapiro, you know, be -- the
5  date of preservation of what was produced this
6  past week for the Plaintiff's historical data,
7  that would also be able to -- for -- so we can
8  put the null sets in context.  So, that would
9  give us another head start for tomorrow's
10  conversation, because we'll know why we're
11  getting null sets.  There are multiple
12  explanations.
13       MR. BRUSH:  Understood.  Understood.
14  You're already encroaching on (indiscernible)
15  time, let's be (indiscernible) with that.  I
16  specifically requested that we be mindful of that
17  today, so let's please do one thing.
18       MR. SCHAPIRO:  Yeah, so I can't commit
19  to, on a Sunday afternoon having some written
20  answer for you Monday morning.  We're happy to
21  meet on Monday morning, some of us I'm sure will
22  be available and we'll reconvene.  I think our --
23  I will reiterate that we believe the update that
24  we provided Thursday night/early Friday morning
25  and this chart where we each have our own views

Page 54

1  recording and then start a new recording just so
2  they're separate.
3       MR. BRUSH:  Yeah, stop and start and
4  I'll just -- maybe we'll -- I'll ask Mr.
5  (indiscernible) if you guys are okay with us
6  recording this while -- so we just get a
7  transcript down.  And we're just going to clean
8  up the format a little bit, we're going to have
9  everybody do their appearances on the top of a --
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

Page 56

1  lays out, we think the roadmap to declaring a
2  successful conclusion to this.
3       MR. BRUSH:  Yeah, Mr. Schapiro, noted,
4  agreed, and that's what I'm going to use.  And
5  I'm going to lead with that on -- tomorrow.
6  Again, earlier the better for me, if you all can
7  take this offline, figure out a time, let's do
8  that and let's allow Brown Plaintiffs their time.
9       MR. STRAITE:  And Special Master Brush,
10  tomorrow do you want us to try to bring our
11  expert to the call or is it counsel only?
12       MR. BRUSH:  No.
13       MR. STRAITE:  What's your preference?
14       MR. BRUSH:  Counsel.
15       MR. STRAITE:  Counsel only.  Okay.
16       MR. SCHAPIRO:  Thanks.  I guess I stay
17  here.
18       MS. CRUZ:  Thank you very much.
19       MR. STRAITE:  And thank you for your
20  time.
21       MS. WEAVER:  Thank you.
22       MR. ANSORGE:  I'm going to take a quick
23  bio break, I'll be right back.
24       MR. SCHAPIRO:  Yeah, can we have a one-
25  minute break, and I guess we should stop the

Page 55

1            C E R T I F I C A T I O N
2
3  I, Sonya Ledanski Hyde, certify that the
4  foregoing transcript is a true and accurate
5  record of the proceedings.
6
7
8
9  <%12151,Signature%>
10
11  Veritext Legal Solutions
12  330 Old Country Road
13  Suite 300
14  Mineola, NY 11501
15
16  Date: March 21, 2022
17
18
19
20
21
22
23
24
25

Page 57

15 (Pages 54 - 57)

# ANSORGE
# EXHIBIT 24

# Redacted Version
# of Document Sought
# to be Sealed

1                  UNITED STATES DISTRICT COURT

2                NORTHERN DISTRICT OF CALIFORNIA

3                      SAN JOSE DIVISION

4

5    Case No. 5:20-cv-05146-LHK-SVK

6

7    PATRICK CALHOUN, et al., on behalf of          |

8    themselves and all others similarly situated,  |

9                  Plaintiffs,                       |

10       v.                                          |

11   GOOGLE, LLC,                                     |

12                  Defendant.                        |

13   _____|

14

15

16

17                  Special Masters Hearing

18                    March 14, 2022

19

20

21

22

23

24

25

                                              Page  1

1 are, so it has to be very, very narrow in this
2 ask to make sure that the homework was done by
3 your experts, and that what they're coming to is
4 a thought-out technical request as opposed to a
5 fishing expedition on every field within the log
6 structure.
7     MR. STRAITE:  The good news is that
8 we're actually on the exact same page.
9     MR. BRUSH:  Good.
10     MR. STRAITE:  So the associate on this
11 team who actually programs computers and built
12 over 100 of her own computers as a kid, Sharon
13 Cruz, and she's working very closely with
14 Professor Zubair Shafiq at UC Davis.  They're
15 working tirelessly to come up with exactly that,
16 hopefully today.
17     MR. BRUSH:  All right.  Then I won't
18 ask Ms. Cruz if she had to change IDE jumpers on
19 hard drives because then I'll just date myself,
20 and I know she hasn't had to build those
21 computers, luckily.
22     MS. CRUZ:  Believe it or not, Mr. Brush
23 --
24     MR. STRAITE:  Sharon -- you're vexing
25 voir dired, Sharon.  This is your chance to

Page 26

1 shine.
2     MS. CRUZ:  Believe it or not, Mr.
3 Brush, I am familiar.
4     MR. BRUSH:  I'm sorry then.  I'm sorry.
5     MR. STRAITE:  They worked last night
6 until 2:59 in the morning East Coast time.
7 Obviously up bright and early for this call, and
8 she'll be working tirelessly with Dr. Shafiq
9 today, and we will get you a comprehensive list
10 of asks to help us decode the Plaintiff
11 production in a way that's the most efficient way
12 possible without going beyond what we need for
13 that production.
14     MR. BRUSH:  Perfect.  Okay.  So I got
15 one and two down.  Let me go with the -- I think
16 there was a (indiscernible) here.  Okay.
17     So does that answer Task 2 on the
18 chart, or is there still an open question on
19 that?
20     MR. STRAITE:  I think that's the next
21 step for Task 2, and then we'll be able to get
22 you more response regarding Task 2 to see --
23 again, we need to understand what was produced in
24 the last week to be able to know whether to ask -
25 - how to close out Task 2.

Page 27

1     It's sort of a critical path as people
2 who have MBA speak and those kind of words.
3 That's the critical path to closing out Task 2.
4 So that -- we target today in having our ask for
5 decoding so then we can determine whether and
6 what needs to be done to complete Task 2.
7     MR. BRUSH:  Excellent.  Number 3 on the
8 March 13th letter is the rest of Plaintiffs' data
9 withheld pending notice of third-party publishers
10 are produced and similarly decoded.
11     So that is basically -- I think we've
12 covered that.  There's some time -- well, was
13 there a -- maybe if I recall was there a certain
14 production that was coming out today in the near
15 term on stuff that was clear and then we're
16 waiting for other publisher consent?
17     MR. ANSORGE:  So what was produced on
18 the 9th were sources that did not require the
19 publisher consent.
20     Publisher consent sources that do
21 require publisher consent based on our analysis
22 would require us contacting hundreds of different
23 publishers, and it's for that reason that what we
24 are proposing to do and I think we're going
25 to do in the Brown matter is identify a subset of

Page 28

1 specific publishers, and could be based on, you
2 know, any sort of rubric that Plaintiff's ask
3 for.
4     We simply ask that we don't have to
5 provide notice to ████████ of different
6 publishers.  You can focus on these are the
7 publishers that would be most important, and we
8 then focus the notice process on those specific
9 publishers so that we can close it out quickly.
10     The last time we did this in January,
11 it took quite a long time to discuss with more
12 than ██ different publishers.  Each one had
13 individual questions because they would want to
14 figure out whether they should seek a protective
15 order or not.
16     So in light of the time, what we are
17 proposing is a subset of publishers.  Identifying
18 those, we then with full transparency to
19 Plaintiffs provide notice to them.  They have at
20 least a week for reasonable feedback, and then
21 the data is produced to Plaintiffs, and then we
22 are complete.
23     MR. STRAITE:  Joey, the ████████████
24 that you already had conversations with in the
25 east, are those included in the ████ or are those

Page 29

8 (Pages 26 - 29)

1 in addition to the ▮?
2       MR. ANSORGE:  Somewhat there will be
3 overlap for sure.  I haven't done a comparison,
4 but I'm confident that the large publishers, your
5 -- the New York Times, your Warners, et cetera,
6 they would be -- I would anticipate -- in both
7 sets.
8       However, we are required to go and
9 speak to them again.  This is the notice that we
10 are providing to them the last time, and they
11 were explicit about this as well.  This is not
12 one that was categorical for all other data not
13 forthcoming.  It was for the previously produced
14 data, so it will entail further conversations.
15       MR. STRAITE:  Okay.  We don't know what
16 those other conversations were, so we -- we're in
17 the dark.  We don't know whether an additional
18 conversation was required for each of the ▮.
19 Could we get --
20       MR. ANSORGE:  I'm telling you that
21 there --
22       MR. STRAITE:  You're telling us what?
23       MR. ANSORGE:  That there will be.  That
24 there was.  I mean, I wouldn't expect Plaintiffs
25 to participate in that conversation, so I'm

Page 30

1 explaining to you how the conversation took
2 place, and I'm telling you that it was quite
3 burdensome, so our hope and fervent belief is
4 that we can find a solution where Plaintiffs
5 focused on these are the most important specific
6 publishers, and we can target the notice on those
7 publishers, and then that's the data that would
8 be produced.
9       And this, of course, is in addition to
10 all the information that's already been provided,
11 the whole key spaces that have been passed over,
12 and the March 9th data that goes back to June
13 2020 that's been produced.
14       MR. STRAITE:  How did -- how did you
15 decide which ▮ publishers to contact earlier?
16 Was that the complete list -- well, you tell me.
17 How was that decided?
18       MR. ANSORGE:  So it's decided on the
19 basis of whether the publisher data is in the
20 specific log sources earlier.
21       So when Plaintiffs had requested
22 specific log sources, you may recall in January,
23 and maybe these were conversations we had more
24 with Mr. Barnes than with you, but there was data
25 that we could produce quickly, and then there was

Page 31

1 data that was delayed because we had to seek the
2 publisher notice.
3       And the way that they're identified is
4 there's network IDs within the publisher data,
5 the URLs also for informed observers will be
6 indicative of whether it's a -- whose publisher's
7 domain it belongs to.  You can see if you're
8 visiting the New York Times, a lot of people
9 would know who the publisher is who's involved
10 with that.
11       Then the publishers were contacted
12 based on whether their data was in the
13 forthcoming production.  That's where you have to
14 --
15       MR. SCHAPIRO:  And I can attest that
16 during that time when this was a smaller number,
17 Joey was personally was fielding inquiries.
18       So you send all these things off and,
19 as you might imagine, someone from the -- you
20 know, some of them just kind of ignored, and
21 after a certain number of -- a certain period of
22 time, I think we can say we've given reasonable
23 notice.  Others, quite often as you might
24 imagine, someone from the legal department sends
25 an e-mail saying, "Can we set up a call?  What is

Page 32

1 this?  Tell us more.  We want to understand about
2 what you're providing to who and how it's going
3 to be used."
4       And so Joey, even with a smaller
5 number, had his calendar full of calls with
6 people from the legal department of all these
7 websites or publishers.  So that's why I'm sure
8 we can come up with something that satisfies you,
9 but is practical.
10       MR. STRAITE:  Could we see those ▮
11 notices that were sent out already, unless it's
12 the same notice, if it's a form?  Could see that
13 -- if it's -- if they're different, could we see
14 the ▮?  If they're identical, could we see the
15 exemplar?
16       MR. BRUSH:  You want to see the list?
17 Do you want to see the list, or do you want to
18 see each one of the preservation letters that
19 goes to a third party?
20       MR. STRAITE:  Well, if they're
21 identical, obviously, you know, just the form and
22 then the list.  That would be more efficient.  We
23 want to be efficient.
24       One of the things that Joey offered was
25 -- well, one of the most important ones -- well,

Page 33

1 might be -- there's a nuance in this because we
2 had a lot of meet-and-confers on this.
3      My understanding is that the preserved
4 data -- this is a little bit of that trick of the
5 order of operations had used certain identifiers
6 to categorize it as -- you know, as a -- to be
7 preserved. So therefore, there was an identifier
8 that was used from some plaintiff info that put
9 it on preservation, which also was kind of a
10 search and preservation.
11      Am I misunderstanding that that was the
12 case because I thought there was some filtering
13 based on that at some point, even into the
14 preserved and then produced data that was using
15 unique identifiers at the early stages of the
16 litigation going back to February of 2020?
17      MR. ANSORGE: Yeah. Mr. --
18      MR. BRUSH: Or 2021.
19      MR. ANSORGE: Mr. Brush, you're correct
20 that the preservation was done by the specific
21 IDs. However, those IDs, they weren't searched
22 in the way in which we have conducted the
23 searches under the special master process as in
24 there wasn't, you know, this is a specific log
25 that Plaintiffs have picked, this is the ID they

Page 66

1 want us to search over, the run over it. This is
2 the window of the time period that's produced.
3 We look at whether it's responsive or relevant or
4 proportional or whatever different metric one
5 would want to use.
6      Those have not been applied for this
7 dataset. This dataset -- and it might be helpful
8 if we just start opening it up and looking at it
9 on the March 9th data that was produced. We're
10 talking about all the data that's key to specific
11 IDs across many different logs without looking at
12 the specifics of, okay, this is responsive,
13 relevant, and tied to the data. It was a broad
14 preservation hold, and our understanding was that
15 we were supposed to produce it all entirely.
16      We at some points had been recommending
17 that it could be searched as a repository for
18 historical searches. We could have targeted
19 searches, and then we could engage in the process
20 that, you know, we've been following that has
21 been so targeted so far in the special master
22 process.
23      But here I think it's -- I would treat
24 it as a separate category, as in a third and
25 separate one where this previously preserved

Page 67

1 information that's now being produced wholesale
2 that has a lot of different publishers in it
3 that, you know, we haven't gone through the same
4 proportionality of responsiveness analysis that
5 we've done through the other searches.
6      MR. STRAITE: I am mindful of the
7 clock. And, Special Master Brush, we -- and of
8 course, Andy and Joey, and Tracy, we're really
9 grateful for your time, really, this morning. We
10 do have -- some of us have some commitments
11 coming up in a few minutes.
12      We do have -- also have the special
13 master -- sorry, the magistrate hearing, Part 1,
14 tomorrow.
15      I think today we have a lot of tasks to
16 go back to our clients with, and I know Sharon
17 will be working very hard with Dr. Shafiq
18 regarding proposals we have or decoding the
19 Plaintiff data. It's another helpful thing. And
20 then we're going to get some input from the Court
21 tomorrow.
22      What would be helpful for you, Special
23 Master Brush, for us to do with the remainder of
24 today in advance of speaking with Magistrate van
25 Keulen tomorrow? What --

Page 68

1      MR. BRUSH: Yes.
2      MR. STRAITE: -- can we do today for
3 you and for us?
4      MR. BRUSH: I love that -- I love that
5 question because there was -- again, there was
6 some new -- again, why this is so important we
7 have these conversations.
8      There was enough nuance and detail as
9 we round off these edges that was so incredibly
10 important what we just heard, and I thank
11 Google's counsel for the transparency on that
12 because it was -- as we all talk around this and
13 talk it over, sometimes hearing it a couple times
14 is important. And what I'm hearing is, is what I
15 -- is we haven't lost ground on this. We have a
16 subset of data that was preserved that did not
17 need publisher consent that is now produced to
18 Plaintiff. That should provide enough
19 information to allow us to key more targeted
20 searches for Plaintiff data.
21      My suggestion is that we come up with a
22 set of search criteria that can then be run on
23 the preserved data that has not been produced
24 that needs third-party consent. If there's hits
25 within that dataset, we then put those on notice

Page 69

18 (Pages 66 - 69)

1 and produce those.
2        Now this also goes into that, you know,
3 historical search of other datasets. You know,
4 if we can then use that -- those search criteria
5 to go against the final searches or second-round
6 searches, or however we're really framing them,
7 but really it's the searches we need to push out
8 this week.
9        In conjunction, if those hit on
10 additional publishers that need to be, say, I
11 want to get those, and the ones that are not are
12 produced. But there's -- it seems there's a
13 function here that's important that we're all
14 trying to align to. It's if there's responsive
15 data in the publisher dataset then, we need
16 notification. And I tend to now see -- I see
17 Google's position to say, "Well, we're just going
18 to put a bunch of people on notice where there's
19 non-responsive data, where there are no keyword
20 hits, then there is a huge waste of time on
21 that," and I don't think it's going to be very
22 valuable.
23        So what we're trying to do is -- I
24 think what we're all trying to do is just move
25 out the pieces we don't need to focus on what we

Page 70

1 to put anybody through burdens of notifying
2 publishers when it won't result in any responsive
3 data being produced. So we agree there.
4        I think the devil will be in the
5 details on the word "responsive," but that's
6 something that you can make fun of us lawyers
7 again for getting caught in, but we'll have that
8 conversation with the magistrate going forward.
9        In the meantime, I know that Sharon
10 will work overtime with Professor Shafiq.
11        Tomorrow, Special Master Brush, will
12 you be at the hearing? It's Zoom. Will you be
13 there tomorrow? Special Master Brush, did we
14 lose you?
15        Mr. Schmidt, do you know if we've lost
16 Mr. Brush?
17        MR. SCHMIDT: I don't know if we've
18 lost him. I think he may have arrived at the
19 school.
20        As far as being on the hearing
21 tomorrow, we'll probably make that decision after
22 we speak with the judge in half an hour.
23        MR. BRUSH: I heard things. Sorry
24 about that. My car did not want to give up the
25 Bluetooth connection. I apologize.

Page 72

1 do, and I think that could be a solution, unless
2 I'm completely off base here.
3        But again, taking the data that you
4 have now -- you have a ton of data on the
5 Plaintiff side, Mr. Straite. Looking at that,
6 devising better search terms, and again, you have
7 some other paralleled tracks along with that
8 about the decoding, but then to come back and
9 say, "Okay. If we were to search, you know, data
10 at this point, we feel good. We have our search
11 terms set. We have a search term list. We're
12 going to apply it to any dataset that is
13 potentially responsive," and whether that be the
14 historical data or the live data or the
15 previously preserved data, you know, this way we
16 can just finalize the searches and be done.
17        MR. STRAITE: That's sensible.
18        MR. ANSORGE: That sounds good to us.
19        MR. STRAITE: We never have, nor would
20 we ever ask for a publisher to be notified for
21 datasets that aren't responsive.
22        So we distinguish between responsive
23 and relevant, but we can work with Google and
24 with Magistrate van Keulen regarding scope of
25 responsiveness, of course, because we do not want

Page 71

1        Yeah. We have -- we have a meeting
2 with Her Honor, a conference with her in about
3 half an hour, and you're basically giving her an
4 update in status.
5        But again, what she's really looking
6 for is how we're finishing this. The two big
7 things she says about it is when are the -- when
8 are the -- when are the "final" searches are
9 done? When are we saying search (indiscernible)
10 and, you know, production can be done? Where we
11 can at least understand that there's compute time
12 that's going to be there, that if we can estimate
13 it, she's going to be favorable towards that, and
14 when the preservation plan is done.
15        Those are the two things she looks at
16 now that I'm trying to inform her. And I think -
17 - again, everything that we've done through the
18 weekend and today has been extremely productive.
19 We're getting closer, so I definitely am working
20 on your side to make sure we -- she understands
21 the nuances and that people are not flat-footed
22 in any capacity, and that she doesn't make any
23 kind of wholesale decision.
24        So to the extent we can keep working on
25 that, I mean, that's the goals I'm working toward

Page 73

19 (Pages 70 - 73)

1 is, again, making sure we're done with the last
2 search criteria, it's run, and that you have a
3 preservation plan in place.
4      MR. SCHAPIRO:  And we appreciate that,
5 and we appreciate the time.  Obviously, you know,
6 our view remains that the roadmap to successful
7 completion is in our positions in our chart and
8 in the update that we sent and resent recently.
9      I hope all is well with your child, the
10 school nurse situation, whatever that might be.
11      MR. STRAITE:  For sure.  Okay.  Again,
12 we all appreciate this.  We're working at
13 lightning speed.  And regardless of whether we
14 see you tomorrow, you know we'll be in good hands
15 with Magistrate van Keulen tomorrow.
16      We also will get this -- these
17 transcripts done ASAP.  That's being worked
18 through our joint court reporting service,
19 Veritext.
20      MR. BRUSH:  Great.  Once again, I
21 appreciate everybody's time on this.  And again,
22 perspective is -- we are doing things that have
23 never been done before, and I think we've been
24 incredibly fortunate to meet the deadlines that
25 we have, and I will remind Her Honor on that,

Page 74

1 that this is complex, and everybody's working
2 hard, and I really do appreciate everybody's
3 time.
4      MR. SCHAPIRO:  Thank you, sir.
5      MR. STRAITE:  Thank you, everybody.
6      MS. GAO:  Ms. Cruz, we --
7      MR. BRUSH:  Thank you.  Have a good
8 day.
9      MR. STRAITE:  Thank you.
10      MS. GAO:  Ms. Cruz, can you please
11 actually send us the recording while you send
12 this to Veritext?
13      MS. CRUZ:  Most certainly, Ms. Gao.
14 I'll be producing that.
15      MS. GAO:  Great.  Thank you.
16      MR. STRAITE:  Thanks, everybody.
17      MR. SCHAPIRO:  Let's go off the record.
18
19
20
21
22
23
24
25

Page 75

1          C E R T I F I C A T I O N
2
3 I, Sonya Ledanski Hyde, certify that the
4 foregoing transcript is a true and accurate
5 record of the proceedings.
6 Date:  March 18, 2022
7
8
9
10      _Sonya V. Ledanski Hyde_
11      Sonya Ledanski Hyde
12
13
14
15
16
17
18
19
20
21
22
23
24
25

Page 76

20 (Pages 74 - 76)

# ANSORGE
# EXHIBIT 25

# Redacted Version
# of Document Sought
# to be Sealed

1              UNITED STATES DISTRICT COURT

2            NORTHERN DISTRICT OF CALIFORNIA

3                  SAN JOSE DIVISION

4

5    Case No. 5:20-cv-05146-LHK-SVK

6

7    PATRICK CALHOUN, et al., on behalf of          |

8    themselves and all others similarly situated,  |

9              Plaintiffs,                           |

10        v.                                         |

11   GOOGLE, LLC,                                    |

12              Defendant.                           |

13   _____|

14

15

16

17            Special Masters Hearing

18              March 15, 2022

19

20

21

22

23

24

25

                                          Page  1

Page 26

1 Can we agree to a single document on Friday?
2      MR. ANSORGE:  I would want to --
3      MR. SCHAPIRO:  I would say I think so,
4 but let us mull --
5      MR. STRAITE:  Of course.
6      MR. SCHAPIRO:  -- because you've just
7 sprung this on us.  We'll let you know, you know,
8 by the end of today or tomorrow morning, or
9 something like that.  It's not crazy.  I'll say
10 that.
11      MR. STRAITE:  I'll take that as a
12 compliment given recent things.  Yes.
13      That's all on our list.  That's one,
14 two, three, four.  That's what we wanted to
15 discuss with Counsel, just some overlap, and I'm
16 happy to continue discussing any more details.
17      Obviously we need Dr. Shafiq and
18 Sharon.  They're the two people who knew the
19 details better than anybody, and so we appreciate
20 you us -- letting us have tonight and tomorrow to
21 get these details to you, and we can at least
22 identify intelligently where the impasse is and
23 resolve what we can.
24      MR. ANSORGE:  And it sounds like maybe
25 we could give everybody a half an hour back.  I

Page 27

1 don't --
2      MR. STRAITE:  I can make my flight.
3      MR. ANSORGE:  -- know if that makes
4 sense.  But if that's helpful, I really
5 appreciate the efficiency, if that's all right
6 with the Special Master.  It sounds like we'll
7 have some written follow-up.
8      MR. STRAITE:  Okay.  Maybe in this
9 process, we'll be able to talk about how we can -
10 - what we do about the notice program, but I
11 don't know that that's anymore resolved, right?
12 I mean, we understand that there are ███████
13 publishers that you say will need to be
14 contacted.  We do -- we're still waiting to know
15 what the plan is and the timetable for that
16 notice process.
17      MS. WEAVER:  And if we may, I would
18 just --
19      MR. ANSORGE:  So that's a good thing to
20 --
21      MS. WEAVER:  Joey, if -- I just would
22 like to ask -- add to that.  Can we get a sense
23 of the volume of the withheld data?
24      MR. ANSORGE:  I don't have that at my
25 fingertips right now, but that's something we

Page 28

1 could definitely provide.
2      MR. STRAITE:  Thanks.
3      MR. ANSORGE:  We'd be happy to.
4      So with regard to the publisher notice,
5 it sounded to us during the last meeting as if
6 the special master had a proposal on how to
7 proceed where we were going to -- if there were
8 additional searches, we were going to run
9 searches over the specific data so there'd be
10 what ID is being run over what log source, and
11 responsive information could then be produced so
12 that it would, you know, sort of approximate the
13 process we had so far.
14      The one benefit of doing it in that way
15 is it should be a subset of publishers, so we're
16 trying to think of ways in which we won't have to
17 provide notice to ███████ of different
18 publishers.  And I don't want to put words in the
19 special master's mouth.  That was my
20 understanding of his proposal the last time.  It
21 might be helpful if we just hand the microphone
22 to him.
23      MR. STRAITE:  Yeah.  And I can
24 definitely jump in and say that our understanding
25 was exactly the opposite.

Page 29

1      We heard at the end of the last
2 conference confirmed -- which sounds like it was
3 unwelcome news, but it's unfortunately something
4 we have to deal with -- is that the searches on
5 the historical data sources had already been
6 done, and the data associated with the Plaintiffs
7 is also associated with ██ publishers.
8      So we understood the searches had
9 already been done and that Google had already
10 determined that notice to ██ publishers would be
11 required for searches already done on the
12 historically preserved data.  So I don't know how
13 we narrow given --
14      MR. ANSORGE:  Yeah.  You might need to
15 go to the transcript for that, Mr. Straite,
16 because I don't -- I didn't believe -- I don't
17 believe that's where Mr. Brush ended, but we'll -
18 - we should let him address it.
19      MR. BRUSH:  As far as -- repeat that.
20 There was two people talking so, yeah, piece by
21 piece.
22      MR. STRAITE:  Yeah.  So I think the
23 question we resolved with is that we had -- the
24 last conference, we thought we were talking about
25 ways to avoid notifying publishers unnecessarily

8 (Pages 26 - 29)

1 because they would not be relevant to the final
2 searches of the historically preserved data if
3 the searches were run --
4        MR. BRUSH: Mr. Straite, you understand
5 because there's that nuance there that they would
6 not be relevant because they were not responsive.
7 I want to make sure we're using --
8        MR. STRAITE: Right.
9        MR. BRUSH: -- very nuanced language
10 here because this is data that's been preserved
11 and has not been searched.
12        MR. STRAITE: Yeah.
13        MR. BRUSH: There was some idea -- and
14 again, I can't help but acquaint this to
15 something about not of the ordinary, even though
16 it is extremely unique datasets, and nobody has
17 ever seen them in the world, but the sense is
18 when I put on a litigation hold, I might say,
19 "Hey, look. Hold these four databases, these
20 three e-mail servers, these file servers."
21        MR. STRAITE: Yes.
22        MR. BRUSH: It doesn't mean they're
23 searched. Just because they're preserved doesn't
24 mean they get produced, so that interim step, and
25 they have to be searched and responsive. And

Page 30

1        And if there's something that's
2 responsive, you're going to get it. It just
3 needs to be searched with a set of IDs and
4 parameters that's consistent with the other
5 searches that are being done.
6        MR. STRAITE: Okay. So it's obviously
7 not our wish that data that doesn't relate to our
8 named plaintiff, sort of their identifiers or
9 their devices be produced. That's not what we're
10 asking for in the historical data. But it is our
11 understanding that what was pressed was
12 identified because it had already been -- so --
13        MR. BRUSH: Yeah.
14        MR. STRAITE: If there are entire logs
15 that were preserved that contain data related to
16 other people, other devices --
17        MR. BRUSH: Okay. Let me -- let's use
18 another discovery example because I'm going to
19 try to reframe that.
20        Say for example I identify a
21 (indiscernible) and I say early cases, they're
22 told to preserve all data that, you know, might
23 be within a timeframe that they were employed at
24 a particular place. I have two cellphones, an
25 iPad, a laptop, and a desktop, and a home

Page 32

1 therefore, that dataset is responsive based on
2 the IDs that you provide, and there is third-
3 party publisher information in a direct or
4 proportion of that responsive set (indiscernible)
5 included. You know, say that he were to
6 (indiscernible) "down on the floor" of the page,
7 there's publisher information that gets
8 (indiscernible). That's going to need some
9 publisher notification and consent to turn over,
10 but it has to be responsive first, and that's a
11 key point that I want to make sure we all agree
12 on.
13        MR. STRAITE: Thank you. And I -- we
14 agree, and we understood that the historically
15 preserved data related to the Plaintiffs is
16 already determined to be responsive.
17        MR. SCHAPIRO: I especially disagree.
18        MR. BRUSH: Yeah. Again, that's what
19 I'm saying. It was identified as a potential
20 source for preservation. Again, like we had
21 hadn't searched yet, so it had not been searched
22 really at a level that would meet the standard
23 threshold that I would allow for production until
24 it's using search criteria that's agreed upon and
25 responsive before it gets produced.

Page 31

1 computer where I'm remoted in. Throughout the
2 process, just because those were put on
3 litigations holds (indiscernible) doesn't mean
4 every single thing gets searched.
5        What it is, is the process of going
6 through and understanding better early on to say,
7 okay, well, we held them. We put them in a
8 petrified state in case we have to search them.
9        We're at that in case we have to search
10 them, but three's further work that's done.
11 There are interrogatories. There'd discovery
12 work. There are experts involved that say,
13 "Okay. Now we're going to frame and hone down
14 our searches on maybe just the work laptop
15 because it's most likely going to have the
16 response (indiscernible)." The other stuff was
17 held. We can always go back to it. we have it.
18 But just because it's held, it still, you know,
19 may or may not be in scope (indiscernible) and
20 scope are still going to have to be searched
21 using parameters and keywords. And that's where
22 we're at is this data was put on a bulk hold.
23 Still needs to be searched. Even though it was
24 identified as potential, it's just like the
25 custodial identification. Doug Brush used it,

Page 33

9 (Pages 30 - 33)

1    MR. ANSORGE:  Right.  But I think what
2 Mr. Schapiro was --
3    MS. WEAVER:  The search process created
4 a problem.  Sorry.  You were interrupting me
5 there, Joey, again.
6    MR. ANSORGE:  I didn't mean to
7 interrupt you, Ms. Weaver.  I'm sorry.  And I
8 hate it when people interrupt me, so I definitely
9 feel your pain, and I apologize for that.
10    I just wanted to clarify that I believe
11 Mr. Schapiro was not referring to the data that
12 had been produced in January but referring to the
13 data that was produced on the 9th of March.  And
14 I think the question was, which we're trying to
15 chase with the engineers now, is what is the
16 ratio of the data that's already been produced to
17 the data that would require publisher notice?
18 And it sounded like that might be a helpful
19 indicator both for the parties and for the
20 special master.
21    So what we'll work to do is -- a
22 homework item is get that information.  Then we
23 can send it to you, the special master, and to
24 you in an e-mail hopefully later today, if not
25 very early tomorrow morning.

Page 50

1    MR. BRUSH:  So I just want to make sure
2 I'm hearing that you're going to go on the record
3 in saying you're unwilling to run searches
4 against this data and get productions on it, that
5 it's either going to be all or nothing at this
6 stage for the remainder of the publisher data?
7    MR. STRAITE:  No, no.  Absolutely --
8 thank you for the opportunity to clarify that.  I
9 mean exactly the opposite, is that now that we're
10 hearing for the first time that we're being
11 tasked with coming up with a plan that would
12 leave some of the historically preserved data
13 unproduced, even though we also now --
14    MR. BRUSH:  We don't know that.
15    MR. STRAITE:  We get -- we're just
16 hearing this for the first time, so we need to
17 thnk about what is the best way that we can get a
18 plan back to Google.  We understood after the
19 last conference if it was -- if it was already
20 associated --
21    MR. BRUSH:  I'm being very pointed in
22 telling you how this is going to work, that the
23 data needs to be searched with the parameters and
24 using the methodologies developed along the
25 November 12th order, meaning you and your experts

Page 52

1    MR. STRAITE:  We appreciate it.
2 Obviously we have a lot still to talk about.
3 This seems to be -- you know, as happy as we were
4 regarding the decoding issue and regarding coming
5 up with a proposal for second-round searches and
6 then the process for the preservation plan,
7 identifying areas of impasse and areas of
8 agreement, it sounds to me like the production of
9 the historically preserved Plaintiff data is
10 probably the biggest sticking point and one where
11 we could really use the most guidance because we
12 know that the historically preserved dataset is
13 already key to the GAIA IDs for our Plaintiffs.
14    We're now looking for discussion about
15 how that dataset gets narrowed before production.
16 We're asking for the production of all of it
17 because it's already narrowed just to our
18 Plaintiffs, so it's difficult for us to engage in
19 a process where we're helping Google to withhold
20 data that is already associated with our
21 Plaintiff's GAIA keys.  So if that --
22    MR. BRUSH:  Okay.  I'm going to stop
23 there.
24    MR. STRAITE:  And we're hearing this
25 for the first time.

Page 51

1 are going to have to come up with search
2 parameters to get to that data.
3    You -- what -- I mean, if you -- I'll
4 tell you right now I'm going to be highly annoyed
5 if we search and you get everything because I
6 feel like we're just wasting time that could be
7 applied to actually functionally coming over this
8 problem.  You know, we need to come up with
9 solutions on this.
10    The judge and I have already conferred
11 on it.  I mean, this is the direction of where
12 we're going because it's built around a set of
13 parameters we've been doing in this case, so I'm
14 saying we're not going to take this data at
15 wholesale exception.  We're going to put it
16 through the factory to see what the results are.
17 Then we can make a determination of what's left.
18    But the path you're going down right
19 now is all or nothing, and I just -- I'm -- I
20 just can't see why you would take that as opposed
21 to coming up with something that is constructive
22 and allows the data to be searched and produced
23 so you get -- you very well can get all of it, or
24 you get a subset.  We don't even know the volume
25 of it yet.  They have to go back and get it now.

Page 53

14 (Pages 50 - 53)

1 We're trying to work with you on this, and it
2 feels like the help is not being appreciated or
3 accepted.
4       MR. STRAITE:  So I appreciate the
5 opportunity to correct the misunderstanding, and
6 I apologize for my part in creating it.
7       We are just hearing for the first time
8 today that the searches would have to go beyond
9 simply the GAIA IDs.  Okay.  Fine.  We'll work
10 with our expert to come up absolutely with a
11 proposal.
12       It's just because we thought that the
13 search methodology was prospectively for the live
14 logs.  We did not know that that would be for the
15 historically preserved logs.
16       So because we didn't understand that
17 before today, we're just saying that we don't
18 here on this call have a proposal to match
19 additional search parameters to the GAIA IDs, but
20 we'll work with our expert immediately.  We're
21 not saying all or nothing on this call.  And --
22       MR. BRUSH:  Okay.
23       MR. STRAITE:  -- we'll figure out what
24 happened.  We agree with you on everything, so
25 thank you for --

Page 54

1       MS. WEAVER:  May I ask just for
2 clarification for us, further clarification.
3 What data sources specifically is Google saying
4 are not relevant so that they -- I mean, it just
5 seems to me that the process of running
6 additional searches is burdensome and causes
7 further delay on a dataset collected using our
8 Plaintiff's GAIA IDs.
9       So if they're saying it's necessary
10 because what is contained in that dataset is
11 overbroad and not relevant, can they tell us
12 specifically what is overbroad and not relevant?
13 Like what are the log sources that are not
14 relevant in their view?
15       And if it's, for example, ZWBK because
16 that was done before the Court ruled ZWBK --
17 well, we say it was always, you know, all along
18 included, then we'd like to know that.
19       I think -- so in addition to the
20 volume, to be clear, the request is that to the
21 extent Google is saying there is data in the
22 historically preserved collection, which is not
23 relevant or responsive, and it's really
24 responsive that the judge said, we'd like a
25 description of that.

Page 55

1       MR. BRUSH:  Well, and I think that's
2 what I'm offering is if we use the search
3 criteria, we'll know the delta.
4       MR. STRAITE:  Yes.
5       MR. BRUSH:  We'll know what's left
6 over, and we'll have to be able to -- we'll be
7 able (indiscernible) right now.  This again is
8 just -- think of it as -- it's just -- it's a --
9 again I have an analogy.  And this -- I don't
10 know why I'm coming up with this, but it's a dark
11 jar.  You can't see in it, and I'm asking you can
12 you tell me how many pennies versus marbles are
13 there?
14       We haven't even looked in there.  We
15 don't know the difference.  And right now we're
16 just looking at this jar, and you're saying,
17 "Well, give me all the pennies."  Like do you
18 want all the -- like marbles might not be part of
19 it.  It feels heavy.
20       What we're saying is we need to apply
21 some type of process to this that is consistent
22 with the overall legal process, the technology
23 process, so we can say, "Look, we've all done our
24 jobs here by putting this data through a certain
25 set of steps that would get the production.  We

Page 56

1 can't say there's issues with the production."
2       I can't be put in the position where
3 I'm allowing data to pass through on this without
4 any kind of introspection on it.  Really, it has
5 to go through a set of standards and processes so
6 we know what's going to be left over.  Until we
7 dump the stuff out of the jar, we're not going to
8 get there.  And that's why I'm saying you're
9 going to get to that part.  And I understand the
10 fear is we might never get it again, but I think
11 if you do the process, you continue to get more
12 and more information.
13       I mean, I think I'm -- we found ways to
14 get you that, and we're so close to the end on
15 this one.  This is something that can very well -
16 - I think if you trust me on this and just follow
17 the process, you're going to get what you need
18 out of this because I see how this is going to
19 work out.
20       MR. STRAITE:  And thank you, and we do
21 trust it.  We're just scrambling with this new
22 fact today.  We are going to work with our expert
23 to come up with additional search proposals for
24 the historical logs that need publisher notice.
25 We're going to do that.  We just want to confirm

Page 57

15 (Pages 54 - 57)

1  that the searches we're doing will be agnostic to
2  data source, that the search terms -- so we're
3  not going to categorically exclude data sources.
4  That's our understanding. When we come up with
5  these search terms, yes, we're not going to
6  categorical search terms?
7         MR. BRUSH: Yes.
8         MR. ANSORGE: We're getting a little
9  echo there.
10        MR. STRAITE: It's a good dance. We
11 should get a nice mix. Joey, I don't know if
12 you've heard (indiscernible) Weaver, but this was
13 like a New York, you know, dance club remix. It
14 was actually really good.
15        Anyway, so my question again was when
16 we --
17        MR. SCHAPIRO: Anybody got water?
18        MR. STRAITE: -- get experts to come up
19 with -- to come up with -- I did that joke on the
20 fly. I -- so --
21        MR. BRUSH: I think we're going to
22 search it against the data, right, the data
23 that's preserved.
24        MR. STRAITE: And the data is the full
25 thing, so we're not just looking for -- we're not

Page 58

1  categorically excluding any datasets when we come
2  up with these searches, correct? Is that --
3         MR. SCHAPIRO: Joey, see if your sound
4  is working. Wait. Do you want to try unmuting
5  for a second? You're stuck on mute.
6         MR. STRAITE: He can do sign language.
7         MR. SCHAPIRO: He's calling in. There
8  we go. No. Say something, Joey, because --
9         MS. WEAVER: Joey, maybe you could
10 write notes and hold them up to the camera.
11        MR. STRAITE: And then I'll read them
12 into the record for you.
13        MR. SCHAPIRO: Stop the war. Don't
14 believe the propaganda.
15        MS. WEAVER: Exactly.
16        MR. STRAITE: Oh, God. That was --
17 that woman, you know, she's missing. Her lawyer
18 says that she's missing.
19        MR. BRUSH: I was going to say that.
20 Yeah, she's missing.
21        MR. STRAITE: It's horrible.
22        But so the question on the table, Joey,
23 is just to confirm that when we come up with the
24 data --
25        MR. ANSORGE: I'm sorry.

Page 59

1         MR. STRAITE: Joey, can you hear us
2  now?
3         MR. ANSORGE: Apologies. Yes. I'm
4  sorry. I'm very sorry. I think Dr. Shafiq
5  must've hacked me. It's a joke for levity.
6         MR. STRAITE: Yes, that's a little
7  levity.
8         MS. WEAVER: He's got better things to
9  do.
10        MR. ANSORGE: I was trying to address
11 the question of how we would proceed with the
12 searches, and our recommendation, expectation
13 would be that we would follow the November 12th
14 process in which specific IDs are run over
15 specific log sources.
16        Ms. Weaver just asked us, "Well, what
17 log source do you contend is actually not
18 relevant?" We would have to sit and conduct an
19 additional analysis. My understanding is there's
20 YouTube log sources in it. There's AdMob.
21 There's a whole bunch of different data, and it's
22 simply been broadly preserved.
23        So what we would hope to do is that I
24 think there are reasons why there are limits on
25 the searches were set. You can select certain

Page 60

1  sources. You can have certain IDs over them.
2         Here, the time range would not be one
3  week or anything close to it. It would be a very
4  broad time range, but we would still want to
5  maintain a specific ID over a specific source.
6         MS. WEAVER: I guess what we fail to
7  understand, Special Master Brush, is why data
8  taken from our eight named plaintiffs is not
9  relevant, period.
10        I mean, because our complaint is not
11 limited by any service. This is the same song
12 and dance we heard about ZWBK. It is literally -
13 - I'm using Chrome, and I'm -- and then I'm going
14 to other locations on the web. Maybe it's a
15 Google service. Maybe it's a non-Google website,
16 and they're taking data from me. That is what
17 our case is about, and this is tied to their GAIA
18 account number. And so I just don't understand -
19 - what I'm trying to say is --
20        MR. BRUSH: I get it.
21        MS. WEAVER: -- what is not relevant?
22 Yeah. Sorry.
23        MR. BRUSH: Let's not argue that here.
24 Let's not argue that here please. What I'm
25 suggesting is just follow the process.

Page 61

16 (Pages 58 - 61)

1 can take a look at.
2          MR. STRAITE:  Appreciate it.  Thank
3 you.
4          MS. GAO:  To answer Ms. Weaver's
5 question, it's in our March the 7th joint update
6 to the special master.
7          MR. STRAITE:  Thank you, Ms. Gao, and I
8 think what Ms. Weaver was asking, we did get some
9 list -- we appreciate it -- on March 7th
10 regarding Tranche 1, the ███████ log, and Tranche
11 2.  We were just asking for confirmation the
12 Tranche 3, the date for us.  We need Plaintiff or
13 publisher notice.  Is that the exact same set --
14 list or are there additional logs in the third
15 tranche that weren't produced or disclosed?  I
16 think that was her question, just to confirm that
17 it's the same list for the three tranches.
18          MS. GAO:  Mr. Straite, the list in our
19 March the 7th joint update is a complete list of
20 all the data sources we preserved.
21          MR. STRAITE:  Perfect.
22          MS. GAO:  So if you look at our March
23 9th and March the 10th productions, which you
24 refer to as Tranche 1, Tranche 2, those are a
25 subset.  So whatever we didn't produce were the

Page 66

1 withheld data.
2          MR. STRAITE:  That's perfect
3 confirmation.  Thank you, Ms. Gao.  We appreciate
4 that confirmation.  That's very --
5          MS. WEAVER:  Thank you.
6          MR. STRAITE:  I would -- I -- we have -
7 -
8          MR. ANSORGE:  I hope you still make
9 your flight, Mr. Straite.
10          MR. STRAITE:  -- a recording, so you're
11 going to get the remix of your voice.  It was
12 really brilliant.
13          MR. ANSORGE:  It's a problem I haven't
14 been able to fix and troubleshoot, and I
15 apologize for it.
16          MS. WEAVER:  It's a (indiscernible) for
17 us, Joey.
18          MR. SCHAPIRO:  Anybody on this call
19 have any familiarity with technology?  Maybe they
20 can help Joe.
21          MR. ANSORGE:  Never heard of it.
22          MR. STRAITE:  No.  We are all at Ms.
23 Cruz and Mr. Brush's mercy on the technology.
24          MS. WEAVER:  This is true.
25          MR. STRAITE:  Okay.  This is useful.

Page 67

1 Thank you.
2          MR. ANSORGE:  I hope you make your
3 flight, Mr. Straite.
4          MS. WEAVER:  Thank you all.
5          MR. ANSORGE:  Thank you.
6          MR. STRAITE:  Yeah.  if I miss this
7 one, the next one's a red eye, and I'm tall and
8 old.  I don't do well on red eyes anymore.
9          MR. ANSORGE:  That's the worst.
10          MR. STRAITE:  I know.
11          MR. BRUSH:  I know the feeling.
12          MS. WEAVER:  You're not that tall,
13 David.
14          MR. STRAITE:  Yeah, but I am old.  All
15 right.  Thanks, everybody.
16          MS. WEAVER:  Bye, guys.  Have a nice
17 evening.
18          MR. STRAITE:  Bye.
19          MR. BRUSH:  Thanks, everybody.
20
21
22
23
24
25

Page 68

1          C E R T I F I C A T I O N
2
3 I, Sonya Ledanski Hyde, certify that the
4 foregoing transcript is a true and accurate
5 record of the proceedings.
6
7
8
9 _____
10
11 Veritext Legal Solutions
12 330 Old Country Road
13 Suite 300
14 Mineola, NY 11501
15
16 Date:  March 22, 2022
17
18
19
20
21
22
23
24
25

Page 69

18 (Pages 66 - 69)

# ANSORGE
# EXHIBIT 26

# Redacted Version
# of Document Sought
# to be Sealed

**From:**        Josef Ansorge
**Sent:**        Tuesday, March 22, 2022 8:53 AM
**To:**          Jay Barnes; Tracy Gao; David Straite
**Cc:**          QE Calhoun; Lesley Weaver; Angelica Ornelas; An Truong; Sharon Cruz; Adam Prom; Josh Samra; Eric
                 Johnson; Amy Keller
**Subject:**     RE: Calhoun v. Google -- request to meet and confer


Counsel,

Here is sendfile information for a spreadsheet containing (i) lists of publishers associated with produced data and (ii) data that has not been produced because it requires publisher consent. (I will send the password under separate cover.)

Click here to download the file(s) listed below

22-MAR-2022 Publisher Notice Data (13253766_1).xlsx       62.59 KB

If the link above does not open, please copy and paste the following URL into your browser:
https://sendfile.quinnemanuel.com/pkg?token=58c2f633-cdce-4d3c-af8d-219c7b17c875

We recommend Plaintiffs select 20 publishers for Google to notice. On the second tab, we have highlighted in green the top 20 publishers by volume of records. These publishers' records account for more than ▇▇▇▇▇ of all records. Please let us know if Plaintiffs agree to that proposal or provide your counterproposal at your earliest convenience.

You will note that the list of publishers for the not produced data is less than ▇▇. That is because Google has already produced publisher data for publishers using AdSense and AdMob.

Finally, please let us know if you would like to meet and confer at 1PM Eastern today, or if the parties can resolve this task through email correspondence.

Best,

**Josef Ansorge**
*Of Counsel,*
Quinn Emanuel Urquhart & Sullivan, LLP

1300 I Street, NW, Suite 900
Washington, D.C. 20005
202-538-8267 Direct
202.538.8000 Main Office Number
202.538.8100 FAX
josefansorge@quinnemanuel.com
www.quinnemanuel.com

---

**From:** Jay Barnes <jaybarnes@simmonsfirm.com>
**Sent:** Monday, March 21, 2022 5:02 PM
**To:** Tracy Gao <tracygao@quinnemanuel.com>; David Straite <dstraite@dicellolevitt.com>; Josef Ansorge

<josefansorge@quinnemanuel.com>
**Cc:** QE Calhoun <qecalhoun@quinnemanuel.com>; Lesley Weaver <lweaver@bfalaw.com>; Angelica Ornelas <aornelas@bfalaw.com>; An Truong <atruong@simmonsfirm.com>; Sharon Cruz <scruz@dicellolevitt.com>; Adam Prom <aprom@dicellolevitt.com>; Josh Samra <jsamra@bfalaw.com>; Eric Johnson <ejohnson@simmonsfirm.com>; Amy Keller <akeller@dicellolevitt.com>
**Subject:** RE: Calhoun v. Google -- request to meet and confer

<div style="background:yellow">**[EXTERNAL EMAIL from jaybarnes@simmonsfirm.com]**</div>

---

Thanks Tracy. You have our consent to send. jb

---

**From:** Tracy Gao <tracygao@quinnemanuel.com>
**Sent:** Monday, March 21, 2022 3:59 PM
**To:** Jay Barnes <jaybarnes@simmonsfirm.com>; David Straite <dstraite@dicellolevitt.com>; Josef Ansorge <josefansorge@quinnemanuel.com>
**Cc:** QE Calhoun <qecalhoun@quinnemanuel.com>; Lesley Weaver <lweaver@bfalaw.com>; Angelica Ornelas <aornelas@bfalaw.com>; An Truong <atruong@simmonsfirm.com>; Sharon Cruz <scruz@dicellolevitt.com>; Adam Prom <aprom@dicellolevitt.com>; Josh Samra <jsamra@bfalaw.com>; Eric Johnson <ejohnson@simmonsfirm.com>; Amy Keller <akeller@dicellolevitt.com>
**Subject:** RE: Calhoun v. Google -- request to meet and confer

**EXTERNAL:** Think before you click!

Counsel,

As communicated earlier, we are working with the relevant engineers to provide lists of publishers and logs the data was taken from (sorted by publishers), which Plaintiffs requested last night. We expect to be able to provide the requested information later today and can meet and confer tonight or tomorrow afternoon from 1-1:30 PM Eastern.

We propose to send a joint update to the Special Master before COB Eastern today. Below is a draft joint update. Please let us know if we have your consent to send.
***

Dear Special Master Brush, Mr. Schmidt,

At your direction, the parties have exchanged emails with regard to the production of preserved data sources awaiting third party notification. Plaintiffs have requested a list of publishers and a list of logs the data was taken from sorted by publishers. Google is working on putting together the requested lists and expects to be able to provide the lists to Plaintiffs later today. The parties will be meeting and conferring either tonight or tomorrow and will submit a joint statement by COB tomorrow.

Respectfully,

---

**From:** Jay Barnes <jaybarnes@simmonsfirm.com>
**Sent:** Monday, March 21, 2022 4:07 PM
**To:** David Straite <dstraite@dicellolevitt.com>; Josef Ansorge <josefansorge@quinnemanuel.com>
**Cc:** QE Calhoun <qecalhoun@quinnemanuel.com>; Lesley Weaver <lweaver@bfalaw.com>; Angelica Ornelas <aornelas@bfalaw.com>; An Truong <atruong@simmonsfirm.com>; Sharon Cruz <scruz@dicellolevitt.com>; Adam Prom <aprom@dicellolevitt.com>; Josh Samra <jsamra@bfalaw.com>; Eric Johnson <ejohnson@simmonsfirm.com>;

Amy Keller <akeller@dicellolevitt.com>
**Subject:** RE: Calhoun v. Google -- request to meet and confer

**[EXTERNAL EMAIL from jaybarnes@simmonsfirm.com]**

Dear Counsel:

I am following up on the email David sent yesterday because he is unexpectedly unavailable today.

The Special Master expects a joint status update by close-of-business Eastern time today – which is less than an hour away.

If you responded to David but not the rest of the Calhoun team, please forward that response.

Sincerely,
Jay Barnes

**From:** David Straite <dstraite@dicellolevitt.com>
**Sent:** Sunday, March 20, 2022 6:39 PM
**To:** Josef Ansorge <josefansorge@quinnemanuel.com>
**Cc:** QE Calhoun <qecalhoun@quinnemanuel.com>; Lesley Weaver <lweaver@bfalaw.com>; Jay Barnes <jaybarnes@simmonsfirm.com>; Angelica Ornelas <aornelas@bfalaw.com>; An Truong <atruong@simmonsfirm.com>; Sharon Cruz <scruz@dicellolevitt.com>; Adam Prom <aprom@dicellolevitt.com>; Josh Samra <jsamra@bfalaw.com>; Eric Johnson <ejohnson@simmonsfirm.com>; Amy Keller <akeller@dicellolevitt.com>
**Subject:** Calhoun v. Google -- request to meet and confer

**EXTERNAL:** Think before you click!

Dear Joey,

As you saw, the Special Master directed us to "meet and confer to identify those third parties which will receive notification (and whose data will be produced) and those third parties which will not receive notifications (at this time) and whose data will not be produced at this time." We understand that both lists – those who will receive notification, and those who will not – will be jointly provided to the Special Master by close of business tomorrow.

Please let us know your availability to confer. In advance of the meet-and-confer, Plaintiffs request that you produce the list of the ▮▮ third parties with data in the Historically Preserved Plaintiff Data set. We also ask you to identify which logs the data was taken from (sorted by publisher, if not identical for each publisher). If Google has also performed any analysis of volume by publisher or other metric, we also ask that that data be provided as well.

Thanks,

David



David  .  traite, CI    U

**DICELLO LEVITT GUTZLER**

.  33.1000 e  t 505

This e-mail and any files transmitted with it are privileged and confidential, and they are intended solely for the use of the intended recipient(s). If you are not an intended recipient, you should notify the sender immediately, delete this e-mail and any files transmitted with it from your system, and destroy or return all copies.

This e-mail and any files transmitted with it are privileged and confidential, and they are intended solely for the use of the intended recipient(s). If you are not an intended recipient, you should notify the sender immediately, delete this e-mail and any files transmitted with it from your system, and destroy or return all copies.









Calhoun    roduced





Calhoun    roduced





Calhoun   roduced



Calhoun    roduced



Calhoun  ot  roduced



Calhoun ot roduced

11



Calhoun - ot   roduced



13

Calhoun    ot    roduced



Calhoun  ot  roduced



Calhoun ot roduced

15



Calhoun ot roduced



Calhoun ot roduced

17



Calhoun    ot    roduced

18

# ANSORGE
# EXHIBIT 27

# Unredacted Version
# of Document Sought
# to be Sealed

1              UNITED STATES DISTRICT COURT

2            NORTHERN DISTRICT OF CALIFORNIA

3                 SAN JOSE DIVISION

4

5   Case No. 5:20-cv-05146-LHK-SVK

6

7   PATRICK CALHOUN, et al., on behalf of        |

8   themselves and all others similarly situated,  |

9              Plaintiffs,                        |

10      v.                                        |

11  GOOGLE, LLC,                                  |

12              Defendant.                        |

13  _____|

14

15

16

17            Special Masters Hearing

18              March 23, 2022

19

20

21

22

23

24

25

                                        Page  1

PROCEEDINGS

1    MR. BRUSH: Great. And you know what?
2  I realize on the last one I jumped in without
3  appearances. So if we can just do appearances
4  real quick so we can help anybody who transcribes
5  this later, that would be great. Why don't we
6  start with Plaintiffs.
7    MR. BARNES: Sure. Jay Barnes, Simmons
8  Hanly Conroy, on behalf of the Plaintiffs. And I
9  think everyone needs to enter their appearance so
10 that the person transcribing can --
11   MR. BRUSH: Yeah, for the
12 transcription. Correct.
13   MR. STRAITE: David Strait, DiCello
14 Levitt Gutzler, for Plaintiffs.
15   MS. TRUONG: An Truong, Simmons Hanly
16 Conroy, for Plaintiffs.
17   MS. CRUZ: Sharon Cruz, DiCello Levitt
18 Gutzler, for Plaintiffs.
19   MS. WEAVER: Good morning. Leslie
20 Weaver, Bleichmar Fonti, for Plaintiffs.
21   MR. SCHAPIRO: I am Andrew Schapiro
22 from Quinn Emanuel for Google.
23   MS. TREBICKA: Viola Trebicka, Quinn
24 Emanuel, Google.

Page 2

1    MR. ANSORGE: Josef Ansorge with Quinn
2  Emanuel, also for Google.
3    MS. GAO: Tracy Gao, Quinn Emanuel, on
4  Google.
5    MR. BRUSH: Great. We have myself,
6  Douglas Brush, Special Master on this. I am
7  joined by Timothy Schmidt. This is the Calhoun
8  v. Google matter that is before me.
9    And I just wanted to thank everybody
10 for their continued time on this and getting all
11 of the information ahead of the meeting. And
12 really what we're looking at are two separate
13 things, but obviously interrelated, that are
14 before me are the preservation plans and the
15 finalizing the searches. And so really we are
16 beyond due on both of those.
17   And for the preservation plans, I am
18 little disappointed in everybody. I expected
19 something to be a little bit more fully baked.
20 I'm not going to really hear arguments on that
21 today. That is not the purpose of this call.
22 The call on this is really to focus on the
23 searches. But I will say Mr. Schmidt and I will
24 go through and digest the material that was
25 provided on the preservation plan and come back

Page 3

1  with thoughts and questions and a path forward.
2  But I really had expected parties to work a
3  little closer to come together with something
4  that was more fully baked. So I am a little
5  disappointed to see how we left that off.
6    Outside of that, we are looking at the
7  final searches. And, you know, we are at that
8  interesting stage where these is multiple things
9  happening on multiple tracks with the searches.
10 And I want to ensure that we can close out the
11 searches in accordance with the discovery
12 deadline that should have been really closed out
13 a few weeks ago, but really to kind of close out
14 whatever is remaining and not introduce new
15 issues. And I alluded to that in the email last
16 night.
17   So what I'd really like to understand
18 is what do we have to do to really kind of enter
19 in the final search criteria and hit search and
20 produce results.
21   With that, are Plaintiffs waiting for
22 any other productions right now that they need
23 that we are running or should be run or are in
24 the process of running that they need to craft
25 final search results, the final search results

Page 4

1  being the identifiers, search criteria, and the
2  data sources? Are there anything -- is there
3  anything Plaintiffs are waiting on at this point?
4    MR. STRAITE: In general, no. There's
5  one outlier, Special Master Brush, and that is
6  the data from logs with publisher information. I
7  don't -- we'll have to talk to Dr. Shafiq. I'm
8  not saying right now that 100 percent we will ask
9  for another search based on what comes back from
10 those logs for our named plaintiffs. But Dr.
11 Shafiq does think there are some things that
12 could come back from those logs which we would
13 want to then do a second round search.
14   And so that's the only outlier for us,
15 is getting production of that publisher
16 information. And I think we can probably reach
17 an interim solution for production of a subset.
18 I think we're going to -- we want all of that
19 information. We think those are the most
20 important logs that we -- some of the most
21 important logs that we've seen. But the
22 production of a subset could really help us see
23 if there's another search query we want to have
24 fun based on the production of that data.
25   MR. BRUSH: So with that data we're

Page 5

2 (Pages 2 - 5)

1  talking about the data that was preserved at the
2  outset of the case?
3      MR. STRAITE:  Correct.
4      MR. BRUSH:  Okay.  And this is data
5  that we've had lots of discussions on this case
6  as well as the other.  I mean, this was data that
7  was identified and put on a litigation hold.  And
8  we need to follow certain procedures to make sure
9  that third-party notification is done in the
10 event that it's needed.
11     That being said, what I'm trying to
12 understand is what -- and then forgive me if this
13 was provided in this matter and I just overlooked
14 it, but this is something we looked at in the
15 other matter as well, is the amount of data that
16 was being withheld.  Because it's my
17 understanding that this was a larger
18 preservation.  They produced a preponderance of
19 that data, only holding back information that was
20 related to a situation where third parties needed
21 notification.
22     So, Mr. Ansorge, do we know what that
23 percentage was as we did in the other matter, or
24 is this like another ten percent is held back, 90
25 percent produced?  Is that some similar metrics

1  that we just -- you and I just spoke about that
2  can be applied here so we have context to what's
3  missing?
4      MR. ANSORGE:  Yes, Mr. Brush.  It's
5  similar metrics.  I'm trying to pull up the
6  specific number.  I should be able to have it for
7  you within the hour.  So there's different ways
8  in which we could combine and (indiscernible) --
9      MR. BRUSH:  Sure.  I'm --
10     MR. ANSORGE:  But it's a similar
11 situation.  You are right.
12     MR. BRUSH:  Okay.  Yeah, that's at a
13 high level.  So --
14     MR. BARNES:  Mr. Brush, may I -- not
15 all data is created equal.  The percentages don't
16 give us a good idea of how important it is.
17 These publisher logs, from what was produced from
18 Dr. Shafiq's data, have five of the six most
19 important data elements in this case, including
20 historical profile information, historical
21 revenue information key to our Plaintiffs.  The
22 only burden of production is notification to
23 publishers.  So I really don't think the
24 percentage question is relevant here when we are
25 talking about the data source that has more of

1  the relevant data elements than any other source.
2  And, I might add, importantly, for the longest
3  period.  Because these are the logs that are kept
4  that are retained for the longest period.
5      MR. BRUSH:  Sure.  And when we talk
6  about it -- and forgive me, Mr. Barnes.  I'm
7  keying off of a prior conversation that I had
8  with Google's counsel.  We were looking at it
9  beyond just the percentage.  You know, we're
10 looking to really say, okay, so we know what's in
11 there, what other context, what proportion of
12 that data is there in gigabytes in size as well
13 as some of the field information.  So we are
14 looking for context within those so you do know
15 what is missing.  Because right now there's a
16 little bit of a black box, and we want to shed
17 some light into that so we know what's the best
18 path forward to go through that.
19     Because the challenge that we are
20 having right now is if we have to wait for that
21 data, it's going to delay searches in other
22 areas.  And so what we're trying to figure out is
23 can we get some insight to that where Plaintiffs
24 can quickly make a determination on how to
25 further construct the searches for the remaining

1  amount of data sets across other areas.
2      So we're just trying to say if we can
3  quickly within a day say look here, we know
4  what's in this black box, it might shed some
5  light and help you make a determination.  Because
6  there's going to be a point where we're going to
7  have to say yea or nay.  And, quite frankly, that
8  time has come and past.  But I'm really trying to
9  help you out here if you can work with us and
10 allow to get some further information around that
11 data.
12     MS. WEAVER:  And just a point of
13 clarification for the Plaintiffs.  What
14 conversation with Google counsel did they reveal
15 the percentages?
16     MR. BRUSH:  Sure.  We were talking
17 about a very similar high-level understanding of
18 how this data was preserved.  Because there was -
19 - in the Brown matter as well as Calhoun, there
20 was a litigation hold.  And this was a very broad
21 way to hold this data.
22     A large subset of that data in both
23 matters were produced in respect of Plaintiffs.
24 And the only thing that was held back was
25 anything that needed publisher consent.  And so

3 (Pages 6 - 9)

1  what we're trying to understand is how we can
2  best get through that data in both matters by
3  kind of reusing some of the similar processes so
4  we know what's there. Because there is -- you
5  have been provided a very large amount of data,
6  as Mr. Barnes alluded to. There is information
7  about the test data and some of that publisher
8  information. So it's enlightening, but how much
9  more enlightening is this last percentage going
10  to provide you to construct searches? And that's
11  what I'm getting at. You know, whether we have
12  to look at it in another context about what
13  needed to be produced, that's one thing. But
14  what I'm looking at is how this data is being
15  used to construct the final searches so we can be
16  done with this whole process.
17      MR. SCHAPIRO: And just to be clear,
18  Leslie, in case this was what you were wondering,
19  none of -- this was not ex parte. This was in
20  the call with -- in the conference with Brown
21  that we had an hour before yours.
22      MR. BRUSH: Thank you, Mr. Schapiro.
23  Yeah.
24      MS. WEAVER: It would be helpful to get
25  that transcript then too, I guess.

Page 10

1      MR. STRAITE: Special Master Brush, I
2  think we can be helpful in this regard then.
3  Because to get the data, sufficient data to
4  construct second-round searches, I think we can
5  come to an agreement with Google on production of
6  a subset.
7      While saying that, I want to make very
8  clear the entire production of those search
9  segregated and preserved logs are very important
10  to us. What we're going to do with them is show
11  the amount of revenue received that was keyed to
12  our plaintiffs as shown by these historical logs.
13  And there is no other data source from which that
14  calculation can be made. So that's why I said at
15  the outset a moment ago, this percentage
16  calculation thing bares no relevance to how
17  important these logs are and whether they should
18  be produced in total in the end.
19      For purposes of crafting searches
20  though, we are willing to accept the subset. We
21  are willing to accept the subset Google -- Mr.
22  Ansorge -- or maybe it was Ms. Gao. Regardless,
23  Google sent over a subset. There are publishers
24  in that data to whom Google has already sent
25  notice. That was my understanding of what Google

Page 11

1  sent us Tuesday. And so long as that subset of
2  publishers who have already received notice of
3  some kind includes every named plaintiff, we can
4  -- if Google could produce that subset, we would
5  be prepared to move forward with that caveat. We
6  want it to be for the named plaintiffs, and we
7  want google to -- and Shafiq test data, which we
8  already have. So actually that -- sorry. Sorry.
9  The named plaintiffs. And we would like Google
10  to identify obviously when they produce that,
11  which identifiers with which named plaintiffs.
12  Right?
13      MR. BRUSH: Well, yeah. And this is a
14  trick with this data set, is we haven't searched
15  (indiscernible) and really tried to come up with
16  a way to handle this constructively. Because it
17  should follow a process of search and production.
18  And I understand there is some disagreement on
19  your part about how that might look. But the
20  reality is it should go through some kind of
21  process that is repeatable, documented in
22  proportion. You know, really kind of follows all
23  the standards by which we would want to do
24  discovery. And I'm just trying to strike that
25  balance. Because also, again, to me, I

Page 12

1  understand where you're saying for the broader
2  scope of the merits of the case (indiscernible),
3  but that's not an issue I can deal with right
4  now. It's really finishing the searches or we're
5  going to have to do more searches. So let's not
6  -- and I think you're in agreement from what I
7  heard. Let's not slow down the process of the
8  searching. And we can come back to the other
9  larger issues as needed. But we really need
10  something in hand that has search identifiers,
11  you know, that follows the process by which we've
12  been using now for months to search the remaining
13  data and get you production to close out
14  discovery.
15      MR. BARNES: Mr. Ansorge has his hand
16  raised. I think he -- hopefully he can enlighten
17  us on what can be produced quickly of such
18  subsets.
19      MR. BRUSH: Joe?
20      MR. ANSORGE: Yeah, if it's the special
21  master's (indiscernible), Mr. Barnes, I wanted to
22  clarify what we sent you yesterday, what we also
23  sent Brown plaintiffs yesterday. It was a
24  proposal for what publishers should be noticed
25  for the preserved set. You had asked us to break

Page 13

4 (Pages 10 - 13)

1  date for that, Mr. Schapiro.
2      MR. SCHAPIRO:  Okay.
3      MR. BARNES:  Thank you.
4      MR. BRUSH:  Okay, great.  If you need a
5  little more time on that, just let me know that
6  you're going to need additional time.
7  Communicate.  Just don't leave me in the dark.
8      MR. BARNES:  Okay.  Thank you, Special
9  Master Brush.
10     MR. BRUSH:  All right.  Thanks,
11 everybody.
12     (Proceedings concluded)
13
14
15
16
17
18
19
20
21
22
23
24
25

Page 62

1      C E R T I F I C A T I O N
2
3  I, Sonya Ledanski Hyde, certify that the
4  foregoing transcript is a true and accurate
5  record of the proceedings.
6
7
8
9  *Sonya V. Ledanski Hyde*
10
11 Veritext Legal Solutions
12 330 Old Country Road
13 Suite 300
14 Mineola, NY 11501
15
16 Date: June 7, 2022
17
18
19
20
21
22
23
24
25

Page 63

17 (Pages 62 - 63)

# ANSORGE
# EXHIBIT 28

# Redacted Version
# of Document Sought
# to be Sealed

| **From:** | Josef Ansorge |
|---|---|
| **Sent:** | Wednesday, March 23, 2022 1:27 PM |
| **To:** | Douglas Brush; Timothy Schmidt; David Straite; Jay Barnes; Lesley Weaver; Sharon Cruz; An Truong; Angelica Ornelas |
| **Cc:** | QE Calhoun |
| **Subject:** | Calhoun v. Google: Additional Descriptive Statistics re: Preserved Data |

Special Master Brush, Mr. Schmidt, Counsel,

As requested during this morning's meet and confer we have worked with Google engineers to pull additional descriptive statistics comparing produced preserved data to preserved data that would require reasonable publisher notice before it can be produced.



We hope this additional information is helpful for the Special Master to determine whether, and for which publishers, Google should provide reasonable notice to produce previously preserved records. To minimize the burden, we respectfully request that the publisher notice be conducted simultaneously for both cases (*Brown* and *Calhoun*) and all further required notices be processed together at one time.

Special Master Brush: Please let us know how we should proceed.

We look forward to working with Plaintiffs and the Special Master to close out the Special Master process this week.

Best,

Josef Ansorge
Of Counsel,
Quinn Emanuel Urquhart & Sullivan, LLP

1300 I Street, NW, Suite 900
Washington, D.C. 20005
202-538-8267 Direct
202.538.8000 Main Office Number
202.538.8100 FAX
josefansorge@quinnemanuel.com
www.quinnemanuel.com

# ANSORGE
# EXHIBIT 29

# Unredacted Version
# of Document Sought
# to be Sealed

| From: | Timothy Schmidt <timothy.schmidt@accelconsulting.llc> |
|---|---|
| Sent: | Friday, March 18, 2022 6:07 AM |
| To: | Sharon Cruz; Tracy Gao; David Straite; QE Calhoun; Lesley Weaver; Jay Barnes; Angelica Ornelas; An Truong atruong@simmonsfirm.com; Adam Prom; Amy Keller; 'ejohnson@simmonsfirm.com'; jsamra@bfalaw.com; Erin Gee |
| Cc: | Douglas Brush |
| Subject: | Re: Calhoun v. Google, LLC; No. 4:20-cv-03664-YGR-SVK; Wed 3/15 Conference |

**[EXTERNAL EMAIL from timothy.schmidt@accelconsulting.llc]**

All,

Special Master Brush and I met with Judge van Keulen at length following the hearing yesterday.  She again reminded us that the final pieces of the discovery process need to be put in place as soon as possible.  That said, several major pieces of the pie remain: preservation plans, search terms and criteria for historical searches of what was previously searched with only Dremel, and productions of preserved data sources awaiting either approval of third parties or notification time outs of same.

Preservation plans are due today as is noted in this email thread.

Search terms and criteria for historical searches of what was previously searched using only the Dremel tool need to be put together by Plaintiffs using information thus far provided by Google.  The search terms need to be provided prior to business opening Monday EDT, March 21, 2022.

For productions of preserved data sources awaiting either approval of third parties or notification time outs of same, Plaintiffs' and Google will need to meet and confer to identify those third parties which will receive notifications (and whose data will be produced) and those third parties which will not receive notifications (at this time) and whose data will not be produced at this time. Special Master Brush expects this information to be provided to him in a joint statement by Monday close of business EDT, March 21, 2022.  Google will provide evidence of notifications being sent out to all agreed upon third parties no later than Tuesday close of business EDT, March 22, 2022.  Google will provide a good faith estimate of the production date for all data sources for which third party notification is required.

Special Master Brush wishes to have a close out meet and confer with the parties on Tuesday March 22, 2022, to confirm closure of the relevant open discovery items and to discuss the process in place for parties to complete the still remaining productions.

Thank you,
Tim Schmidt

**Timothy Schmidt**
Consultant
**M** 202.577.5302
**E** timothy.schmidt@accelconsulting.llc

**Accel Consulting LLC**
BOULDER, CO 80301

This message is intended only for the designated recipient(s). It may contain confidential or proprietary information and may be subject to other contractual or confidentiality protections. If you are not a designated recipient, you may not review, copy or distribute this message. If you receive this message in error, please notify the sender by reply email and delete this message.

**From:** Douglas Brush <douglas.brush@accelconsulting.llc>
**Date:** Monday, March 14, 2022 at 8:40 PM
**To:** Sharon Cruz <Scruz@dicellolevitt.com>, Tracy Gao <tracygao@quinnemanuel.com>, Timothy Schmidt <timothy.schmidt@accelconsulting.llc>, David Straite <dstraite@dicellolevitt.com>
**Cc:** QE Calhoun <qecalhoun@quinnemanuel.com>, Lesley Weaver <lweaver@bfalaw.com>, Jay Barnes <jaybarnes@simmonsfirm.com>, Angelica Ornelas <aornelas@bfalaw.com>, An Truong atruong@simmonsfirm.com <atruong@simmonsfirm.com>, Adam Prom <aprom@dicellolevitt.com>, Amy Keller <akeller@dicellolevitt.com>, 'ejohnson@simmonsfirm.com' <ejohnson@simmonsfirm.com>, jsamra@bfalaw.com <jsamra@bfalaw.com>, Erin Gee <egee@simmonsfirm.com>
**Subject:** Calhoun v. Google, LLC; No. 4:20-cv-03664-YGR-SVK; Wed 3/15 Conference

Counsel et al,

I just finished an update call with Magistrate Judge van Keulen. While the Judge is pleased with the progress on the remaining discovery disputes, she also reminded me that discovery was to be completed on March 4, 2022. Still, we are invested in ensuring that the process considers both the Plaintiffs' claims and Google's defenses and that the process leaves very few stones unturned for either side in this matter.

I suggested to Her Honor that she cancels the hearing tomorrow in favor of Parties working on and closing out the remaining open discovery issues for the Court to have a more meaningful and productive hearing on Thursday, March 17.

I want a Meet & Confer tomorrow with Calhoun Parties tomorrow (3/15) morning to finish creating preservation plans, conclude the remaining discovery disputes, and put in place the criteria for Flume and or other remaining searches.

Finally, the Court and I expect that final preservation plans are filed no later than Friday, March 18, 2022. Failure to do so will result in the Court making a unilateral decision and or sanctions.


Best,

Doug

---

o                 h
resident
**M**  17. 70. 1 0
**E** douglas.brush@accelconsulting.llc

**Accel Consulting LLC**
BOULDER, CO 80301

This message is intended only for the designated recipient(s). It may contain confidential or proprietary information and may be subject to other contractual or confidentiality protections. If you are not a designated recipient, you may not review, copy or distribute this message. If you receive this message in error, please notify the sender by reply email and delete  his message.

# ANSORGE
# EXHIBIT 30

# Unredacted Version
# of Document Sought
# to be Sealed

| | |
|---|---|
| **From:** | Douglas Brush <douglas.brush@accelconsulting.llc> |
| **Sent:** | Friday, April 1, 2022 12:31 PM |
| **To:** | Lesley Weaver; Tracy Gao; Jay Barnes; Timothy Schmidt; David Straite; Sharon Cruz; QE Calhoun; Angelica Ornelas; An Truong; ejohnson@simmonsfirm.com; Adam Prom; Stephen Broome; Andrew Schapiro |
| **Subject:** | Re: Calhoun v. Google - Brief Update re Search Requests and Google Production |

**[EXTERNAL EMAIL from douglas.brush@accelconsulting.llc]**

---

Ms. Weaver,

Please be more explicit in your request.

While I can forensically piece together a series of emails over the past week with the attached letter correspondence and Exhibits (B in particular), it would behoove Plaintiff's to be more technically specific and spend their time at this point to bifurcate the open search issues as opposed to me guessing.

Final searches are to be submitted today. I am unsure what is missing for you to supply the final searches.

Please advise.

_____

o                h
resident
**M**  17. 70. 1 0
**E** douglas.brush@accelconsulting.llc

**Accel Consulting LLC**
BOULDER, CO 80301

This message is intended only for the designated recipient(s). It may contain confidential or proprietary information and may be subject to other contractual or confidentiality protections. If you are not a designated recipient, you may not review, copy or distribute this message. If you receive this message in error, please notify the sender by reply email and delete this message.

---

**From:** Lesley Weaver <lweaver@bfalaw.com>
**Date:** Friday, April 1, 2022 at 12:41 PM
**To:** Douglas Brush <douglas.brush@accelconsulting.llc>, Tracy Gao <tracygao@quinnemanuel.com>, Jay Barnes <jaybarnes@simmonsfirm.com>, Timothy Schmidt <timothy.schmidt@accelconsulting.llc>, David Straite <dstraite@dicellolevitt.com>, Sharon Cruz <scruz@dicellolevitt.com>, QE Calhoun <qecalhoun@quinnemanuel.com>, Angelica Ornelas <aornelas@bfalaw.com>, An Truong <atruong@simmonsfirm.com>, ejohnson@simmonsfirm.com <ejohnson@simmonsfirm.com>, Adam Prom <aprom@dicellolevitt.com>, Stephen Broome <stephenbroome@quinnemanuel.com>, Andrew Schapiro <andrewschapiro@quinnemanuel.com>
**Subject:** RE: Calhoun v. Google - Brief Update re Search Requests and Google Production

Special Master Brush and Mr. Schmidt:

Yes, the open issues were identified to you in Exhibit B of correspondence earlier this week. These issues are not resolved and need to be addressed by the Special Master.

To the extent Google is offering to begin searches while the parties await the Special Master's ruling, it is constructive.

Regarding the searches Google has offered, Google's restrictions on time, logs searched, and identifiers are prejudicial and appear arbitrary. Plaintiffs do not agree that Google's offer to produce what it already agreed to produce renders compliance with Plaintiffs' requests from last week as burdensome or unreasonable.   Plaintiffs ask that the Special Master require Google to complete this production.

Plaintiffs are available to this weekend if the Special Master has any follow-up questions or wishes to convene a conference to discuss the remaining disputes.

Regards,

Lesley

---

**From:** Douglas Brush <douglas.brush@accelconsulting.llc>
**Sent:** Friday, April 1, 2022 11:14 AM
**To:** Tracy Gao <tracygao@quinnemanuel.com>; Jay Barnes <jaybarnes@simmonsfirm.com>; Timothy Schmidt <timothy.schmidt@accelconsulting.llc>; David Straite <dstraite@dicellolevitt.com>; Sharon Cruz <scruz@dicellolevitt.com>; QE Calhoun <qecalhoun@quinnemanuel.com>; Lesley Weaver <lweaver@bfalaw.com>; Angelica Ornelas <aornelas@bfalaw.com>; An Truong <atruong@simmonsfirm.com>; ejohnson@simmonsfirm.com; Adam Prom <aprom@dicellolevitt.com>; Stephen Broome <stephenbroome@quinnemanuel.com>; Andrew Schapiro <andrewschapiro@quinnemanuel.com>
**Subject:** Re: Calhoun v. Google - Brief Update re Search Requests and Google Production
**Importance:** High

Ms. Gao and Mr. Barnes,

Please enlighten me if there are any open issues past this last exchange that will prohibit the final searches from commencing.


Best,

Doug


_____

o            h
resident
**M**  17. 70. 1 0
**E** douglas.brush@accelconsulting.llc

**Accel Consulting LLC**
BOULDER, CO 80301

This message is intended only for the designated recipient(s). It may contain confidential or proprietary information and may be subject to other contractual or confidentiality protections. If you are not a designated recipient, you may not review, copy or distribute this message. If you receive this message in error, please notify the sender by reply email and delete this message.

**From:** Tracy Gao <[tracygao@quinnemanuel.com](mailto:tracygao@quinnemanuel.com)>
**Date:** Friday, April 1, 2022 at 11:04 AM
**To:** Jay Barnes <[jaybarnes@simmonsfirm.com](mailto:jaybarnes@simmonsfirm.com)>, Douglas Brush <[douglas.brush@accelconsulting.llc](mailto:douglas.brush@accelconsulting.llc)>, Timothy Schmidt <[timothy.schmidt@accelconsulting.llc](mailto:timothy.schmidt@accelconsulting.llc)>, David Straite <[dstraite@dicellolevitt.com](mailto:dstraite@dicellolevitt.com)>, Sharon Cruz <[scruz@dicellolevitt.com](mailto:scruz@dicellolevitt.com)>, QE Calhoun <[qecalhoun@quinnemanuel.com](mailto:qecalhoun@quinnemanuel.com)>, Lesley Weaver <[lweaver@bfalaw.com](mailto:lweaver@bfalaw.com)>, Angelica Ornelas <[aornelas@bfalaw.com](mailto:aornelas@bfalaw.com)>, An Truong <[atruong@simmonsfirm.com](mailto:atruong@simmonsfirm.com)>, Eric Johnson <[ejohnson@simmonsfirm.com](mailto:ejohnson@simmonsfirm.com)>, Adam Prom <[aprom@dicellolevitt.com](mailto:aprom@dicellolevitt.com)>, Stephen Broome <[stephenbroome@quinnemanuel.com](mailto:stephenbroome@quinnemanuel.com)>, Andrew Schapiro <[andrewschapiro@quinnemanuel.com](mailto:andrewschapiro@quinnemanuel.com)>
**Subject:** RE: Calhoun v. Google - Brief Update re Search Requests and Google Production

Dear Special Master Brush, Mr. Schmidt, Counsel:

Barring any additional guidance from the Special Master, Google will initiate the final round of searches according to Google's position in Exhibit B submitted on March 30, 2022, and will be providing results on a rolling basis.

Best,
Tracy

**From:** Jay Barnes <[jaybarnes@simmonsfirm.com](mailto:jaybarnes@simmonsfirm.com)>
**Sent:** Friday, April 1, 2022 12:28 PM
**To:** Douglas Brush <[douglas.brush@accelconsulting.llc](mailto:douglas.brush@accelconsulting.llc)>; Timothy Schmidt <[timothy.schmidt@accelconsulting.llc](mailto:timothy.schmidt@accelconsulting.llc)>; David Straite <[dstraite@dicellolevitt.com](mailto:dstraite@dicellolevitt.com)>; Sharon Cruz <[scruz@dicellolevitt.com](mailto:scruz@dicellolevitt.com)>; QE Calhoun <[qecalhoun@quinnemanuel.com](mailto:qecalhoun@quinnemanuel.com)>; Lesley Weaver <[lweaver@bfalaw.com](mailto:lweaver@bfalaw.com)>; Angelica Ornelas <[aornelas@bfalaw.com](mailto:aornelas@bfalaw.com)>; An Truong <[atruong@simmonsfirm.com](mailto:atruong@simmonsfirm.com)>; Eric Johnson <[ejohnson@simmonsfirm.com](mailto:ejohnson@simmonsfirm.com)>; Adam Prom <[aprom@dicellolevitt.com](mailto:aprom@dicellolevitt.com)>; Tracy Gao <[tracygao@quinnemanuel.com](mailto:tracygao@quinnemanuel.com)>; Stephen Broome <[stephenbroome@quinnemanuel.com](mailto:stephenbroome@quinnemanuel.com)>; Andrew Schapiro <[andrewschapiro@quinnemanuel.com](mailto:andrewschapiro@quinnemanuel.com)>
**Subject:** RE: Calhoun v. Google - Brief Update re Search Requests and Google Production

**[EXTERNAL EMAIL from [jaybarnes@simmonsfirm.com](mailto:jaybarnes@simmonsfirm.com)]**

Special Master Brush:

Thank you for the opportunity to clarify.

1.  We are not requesting any additional searches beyond that which we already requested last week. The email from this morning was in response to a confusing assertion from Google that we had not provided search terms. We are merely pointing out that we identified last week the data sources, identifiers, and time periods for which we requested final searches – and that we did so consistent with how we did previous search requests and are not adding any new search requests.

2.  Regarding the latest production, we were: (1) acknowledging it; (2) notifying you that we would be reviewing it as quickly as possible; and (3) notifying you that, to the extent you need to be updated about the contents of said production, we will let you know as soon as possible.

Sincerely,
Jay Barnes

**From:** Douglas Brush <douglas.brush@accelconsulting.llc>
**Sent:** Friday, April 1, 2022 11:12 AM
**To:** Jay Barnes <jaybarnes@simmonsfirm.com>; Timothy Schmidt <timothy.schmidt@accelconsulting.llc>; David Straite <dstraite@dicellolevitt.com>; Sharon Cruz <scruz@dicellolevitt.com>; QE Calhoun <qecalhoun@quinnemanuel.com>; Lesley Weaver <lweaver@bfalaw.com>; Angelica Ornelas <aornelas@bfalaw.com>; An Truong <atruong@simmonsfirm.com>; Eric Johnson <ejohnson@simmonsfirm.com>; Adam Prom <aprom@dicellolevitt.com>; Tracy Gao <tracygao@quinnemanuel.com>; Stephen Broome <stephenbroome@quinnemanuel.com>; Andrew Schapiro <andrewschapiro@quinnemanuel.com>
**Subject:** Re: Calhoun v. Google - Brief Update re Search Requests and Google Production

**EXTERNAL:** Think before you click!

Mr. Barnes,

I am trying to unpack exactly what you are asking.

Are you asking for another search with a specific time frame? Was there something in the recent production that you have an issue with?

Given the late hour of discovery, can you please be specific on what exactly you are asking to be done?


Best,

Doug


_____

o                    h
resident
**M**  17. 70.  1  0
**E** douglas.brush@accelconsulting.llc

**Accel Consulting LLC**
BOULDER, CO 80301

This message is intended only for the designated recipient(s). It may contain confidential or proprietary information and may be subject to other contractual or confidentiality protections. If you are not a designated recipient, you may not review, copy or distribute this message. If you receive this message in error, please notify the sender by reply email and delete this message.

**From:** Jay Barnes <jaybarnes@simmonsfirm.com>
**Date:** Friday, April 1, 2022 at 10:04 AM
**To:** Douglas Brush <douglas.brush@accelconsulting.llc>, Timothy Schmidt <timothy.schmidt@accelconsulting.llc>, David Straite <dstraite@dicellolevitt.com>, Sharon Cruz <scruz@dicellolevitt.com>, QE Calhoun <qecalhoun@quinnemanuel.com>, Lesley Weaver <lweaver@bfalaw.com>, Angelica Ornelas <aornelas@bfalaw.com>, An Truong <atruong@simmonsfirm.com>, Eric Johnson <ejohnson@simmonsfirm.com>, Adam Prom <aprom@dicellolevitt.com>, Tracy Gao <tracygao@quinnemanuel.com>, Stephen Broome <stephenbroome@quinnemanuel.com>, Andrew Schapiro <andrewschapiro@quinnemanuel.com>
**Subject:** Calhoun v. Google - Brief Update re Search Requests and Google Production

Special Master Brush and Mr. Schmidt,

As you are aware, Google made a production of Plaintiff data after COB last night. We appreciate the production. Plaintiffs' vendor is uploading the documents now. We will review as quickly as possible and provide an update Master to the extent it resolves any outstanding issues.

In addition, to the extent there is any confusion about "search terms," Plaintiffs' submission of last Friday identified (1) the log sources, (2) the identifiers, and (3) the time periods for which Plaintiffs requested searches of their own data. This submission was consistent with our understanding and past practice in this process. To our recollection, it is nearly the same method we requested the first round of searches. The only difference this time is that we specified, in writing, that we requested the log sources be *searched for the duration of their retention periods*. We specifically request that Google not impose an arbitrary time limit such that it would lead to null results as it did with the first round requests.

If Google seeks re-submission of the identifiers we have previously provided – and for which they have previously searched, we will do so. We apologize if more was necessary than that which has been done in the past – and, if that is the case, ask for the Special Master's guidance.

Sincerely,
Jay Barnes



Jay Barnes
One Court Street, Alton, IL 62002
Ph: 618.259.2222
jaybarnes@simmonsfirm.com

This e-mail and any files transmitted with it are privileged and confidential, and they are intended solely for the use of the intended recipient(s). If you are not an intended recipient, you should notify the sender immediately, delete this e-mail and any files transmitted with it from your system, and destroy or return all copies.
This e-mail and any files transmitted with it are privileged and confidential, and they are intended solely for the use of the intended recipient(s). If you are not an intended recipient, you should notify the sender immediately, delete this e-mail and any files transmitted with it from your system, and destroy or return all copies.

# ANSORGE
# EXHIBIT 31

# Redacted Version
# of Document Sought
# to be Sealed

**quinn emanuel** trial lawyers | washington, dc

1300 I Street NW, Suite 900, Washington, District of Columbia 20005-3314 | TEL (202) 538-8000 FAX (202) 538-8100

WRITER'S DIRECT DIAL NO.
**(202) 538-8267**

WRITER'S EMAIL ADDRESS
**josefansorge@quinnemanuel.com**

April 28, 2022

**HIGHLY CONFIDENTIAL - SPECIAL MASTER AND ATTORNEY'S EYES ONLY**

**VIA E-MAIL**

Special Master Douglas Brush
(douglas.brush@accelconsulting.llc)
Accel Consulting, LLC

Timothy Schmidt
(timothy.schmidt@accelconsulting.llc)
Accel Consulting, LLC

Jay Barnes
Simmons Hanly Conroy LLC
112 Madison Ave., 7th Floor
New York, NY 10016

Re:    *Calhoun, et al. v. Google LLC* – U.S. District Court, Northern District of California, San
       Jose Division: Case No. 5:20-cv-5146

Dear Special Master Brush, Mr. Schmidt, Counsel:

Google is hereby providing additional results of the requested searches for information associated with the search terms/ cookie values provided by consenting Plaintiffs and Plaintiffs' expert Dr. Shafiq on April 6, 2022.

*First*, Google has completed searches across all selected Sawmill Ads logs using identifiers provided by consenting Plaintiffs and Dr. Shafiq for the requested time periods, and is hereby providing the log records that do not contain confidential third-party information. *See* folder with file name "2022-04-28 Calhoun v. Google – ▉▉▉▉▉ Ads Log Data – AEO." Below is a list of the searched ▉▉▉▉▉ Ads logs:

- ▉▉▉▉▉▉▉▉

quinn emanuel urquhart & sullivan, llp

LOS ANGELES | NEW YORK | SAN FRANCISCO | SILICON VALLEY | CHICAGO | WASHINGTON, DC | HOUSTON | SEATTLE | BOSTON | SALT LAKE CITY
LONDON | TOKYO | MANNHEIM | HAMBURG | PARIS | MUNICH | SYDNEY | HONG KONG | BRUSSELS | ZURICH | SHANGHAI | PERTH | STUTTGART

- ▉▉▉▉▉▉▉▉
- ▉▉▉▉▉
- ▉▉▉▉▉▉▉▉▉▉
- ▉▉▉▉▉▉▉▉▉▉
- ▉▉▉▉▉▉▉▉▉▉▉▉
- ▉▉▉▉▉▉▉
- ▉▉▉▉▉▉▉▉▉
- ▉▉▉▉▉
- ▉▉▉▉▉▉▉▉▉
- ▉▉▉▉▉▉
- ▉▉▉▉▉▉▉▉▉▉

*Second*, Google will be providing data from selected ▉▉▉▉▉ corpora as soon as practicable.

*Third*, as communicated during various Special Master hearings, Google will produce log records that contain confidential third-party data once the implicated publishers have had reasonable notice. In order to minimize undue burden, Google will initiate the third-party notification process once Google has a list of implicated publishers for both *Calhoun* and *Brown* Plaintiffs' final round of searches under the Special Master process.

Sincerely,

QUINN EMANUEL URQUHART & SULLIVAN, LLP

*[signature]*

Josef Ansorge

JA

# ANSORGE
# EXHIBIT 32

# Redacted Version
# of Document Sought
# to be Sealed

**quinn emanuel** trial lawyers | washington, dc

1300 I Street NW, Suite 900, Washington, District of Columbia 20005-3314 | TEL (202) 538-8000 FAX (202) 538-8100

<div align="right">

WRITER'S DIRECT DIAL NO.
**(202) 538-8267**

WRITER'S EMAIL ADDRESS
**josefansorge@quinnemanuel.com**

</div>

April 29, 2022

## HIGHLY CONFIDENTIAL - SPECIAL MASTER AND ATTORNEY'S EYES ONLY

## VIA E-MAIL

Special Master Douglas Brush
(douglas.brush@accelconsulting.llc)
Accel Consulting, LLC

Timothy Schmidt
(timothy.schmidt@accelconsulting.llc)
Accel Consulting, LLC

Jay Barnes
Simmons Hanly Conroy LLC
112 Madison Ave., 7th Floor
New York, NY 10016

Re:     *Calhoun, et al. v. Google LLC* – U.S. District Court, Northern District of California, San
        Jose Division: Case No. 5:20-cv-5146

Dear Special Master Brush, Mr. Schmidt, Counsel:

Google is hereby providing additional results of the requested searches for information associated with the search terms/ cookie values provided by consenting Plaintiffs and Plaintiffs' expert Dr. Shafiq on April 6, 2022.

*First*, Google has completed searches across all selected ███████ corpora and is hereby providing search results. *See* folder with file name "2022-04-28 Calhoun v. Google – ███████ – AEO."

*Second*, as communicated during various Special Master hearings, Google will produce log records that contain confidential third-party data once the implicated publishers have had reasonable notice. In order to minimize undue burden, Google will initiate the third-party

quinn emanuel urquhart & sullivan, llp

LOS ANGELES | NEW YORK | SAN FRANCISCO | SILICON VALLEY | CHICAGO | WASHINGTON, DC | HOUSTON | SEATTLE | BOSTON | SALT LAKE CITY
LONDON | TOKYO | MANNHEIM | HAMBURG | PARIS | MUNICH | SYDNEY | HONG KONG | BRUSSELS | ZURICH | SHANGHAI | PERTH | STUTTGART

notification process once Google has a list of implicated publishers for both *Calhoun* and *Brown* Plaintiffs' final round of searches under the Special Master process.

Sincerely,

QUINN EMANUEL URQUHART & SULLIVAN, LLP

Josef Ansorge

JA

# ANSORGE
# EXHIBIT 33

# Redacted Version
# of Document Sought
# to be Sealed

1              UNITED STATES DISTRICT COURT

2             NORTHERN DISTRICT OF CALIFORNIA

3                  SAN JOSE DIVISION

4

5    Case No. 5:20-cv-05146-LHK-SVK

6

7    PATRICK CALHOUN, et al., on behalf of        |

8    themselves and all others similarly situated, |

9                  Plaintiffs,                     |

10       v.                                        |

11   GOOGLE LLC,                                    |

12                  Defendant.                      |

13   _____|

14

15              ***CONFIDENTIAL***

16

17           Special Masters Hearing

18              April 2, 2022

19

20

21

22

23

24

25

                                        Page  1

CONFIDENTIAL

1 probability that's concerning enough that there
2 could be problems with long (indiscernible).
3        That being said, you know, I feel that
4 this process is at least going to give you
5 something in a very short period of time within
6 the discovery timeframe.  And we need to review
7 those results and make further determinations.
8        But really, the goal of this is to
9 finish the process and give you some high-
10 fidelity data to be able to give you insight into
11 what your discovery needs are.  So I just wanted
12 to go on the record with that.
13        MR. STRAITE:  Okay.
14        MR. BRUSH:  Again, it's not meant to
15 curtail the discovery in any fashion.
16        MR. SHAPIRO:  And just for the record,
17 to the extent that we have had objections during
18 this process, thinking that the demands made upon
19 us go beyond what is legally required, we don't
20 intend to waive any of those as well.  Whatever
21 record we've made in the past, if we are
22 compromising, we're still protecting our
23 objections as well.  Thank you.
24        MR. STRAITE:  And Special Master Brush,
25 we appreciate -- what you had said just now, I

Page 6

1 think, dovetails exactly with what our position
2 is.  You said this is not intended to curtail our
3 rights n discovery.  Instead, you are asking us
4 to be reasonable regarding the search process.
5 We, as Plaintiffs, thought it was smarter to get
6 all of the historically preserved Plaintiffs'
7 data to inform future searches.  We understand
8 that's been rejected.  You said the perfect is
9 the enemy of the good.
10        We get that for the search process and
11 we're working towards a compromise to shut it
12 down for the search process, while at the same
13 time as Leslie did, we're protecting our rights
14 to get the full dataset in discovery, not for the
15 purpose of informing future searches months down
16 the road, because we know that's not happening.
17 But that would be a separate discovery issues,
18 the production of that data.
19        So today we're focused on shutting
20 down, finishing the search process, getting as
21 much data as we can to inform that.  We get that
22 we won't get all of the historically preserved
23 data today.  As much as we can get that's
24 reasonable to make final determinations of what
25 the searches will be, we'll be grateful for the

Page 7

1 process, preserving our rights for the rest of
2 the data in discovery.
3        MR. BRUSH:  Understood.  And that --
4        MR. SHAPIRO:  And your silence doesn't
5 necessary doesn't mean we necessarily agree with
6 Mr. Straite's characterization about everything,
7 but I think we're fine for today.
8        MR. BRUSH:  Thank you, Mr. Shapiro.
9 And I would say there is a lot to unpack from Mr.
10 Straite's last statement, and not in anything
11 that's negative.  But the key point being is the
12 litigation house historically preserved data is a
13 separate bucket that has some nuance and
14 circumstances around it.
15        What we're talking about is search and
16 production data in the Google environment for
17 Plaintiffs' information that is in that data
18 corpus.  And so when we're bifurcating these two
19 different types of data areas, there's nuance and
20 different ways that we need to search it.  And
21 that's what we're looking at now is how to go
22 back and look for more of the -- and again, we
23 started, I think, early using the words
24 historical data, and then unfortunately it does
25 apply in two different areas, but this is the

Page 8

1 historical data in the production systems, not
2 the litigation whole system.  So we want to be
3 able to search this production data with the
4 Plaintiffs' data in a reasonable way.
5        So, Mr. Straite, again, I want to hear
6 where your concerns are about the (indiscernible)
7 necessary target would be five-day search breakup
8 of searches over several months, so we kind of
9 have where your concerns are.
10        MR. STRAITE:  Perfect.  Thank you so
11 much.  And we appreciate this opportunity to talk
12 about the concerns.  When we heard the proposals
13 back in February for choosing some five-day
14 windows to look for Plaintiff data, we understood
15 that back in February to be the start of the
16 process, okay, we'll choose a few random windows;
17 maybe with luck, that would be sufficient, or
18 more likely it would narrow the scope of further
19 searches.  It would be step one, and maybe there
20 would only be step two.  We had no idea.  We
21 thought that was sensible at the time.
22        But now that it's April 1, our concern
23 is, read from Ms. Gao's email and I don't know
24 what was intended, this prior proposal of a few
25 five-day windows would no longer be step one, but

Page 9

3 (Pages 6 - 9)

CONFIDENTIAL

1 Google and try to do it through Google. But I
2 felt like we weren't going to be able to find a
3 different solution. But you should --
4     MR. STRAITE: Thank you. We appreciate
5 that --
6     MR. ANSORGE: -- (indiscernible).
7     MR. STRAITE: And that puts the two
8 weeks in context, and we do appreciate it. We
9 thank you for that compromise. And we know
10 that's a lot of publishers. So the two weeks
11 does make sense.
12     My question was, the two weeks, is that
13 just the process to notify ▮ publishers, or
14 does that also include the waiting period that
15 you think is sufficient? We would --
16     MR. ANSORGE: So I think --
17     MR. STRAITE: (indiscernible)
18     MR. ANSORGE: So I think we're
19 (indiscernible) here. Now I'm convinced we're
20 speaking about two different things, Mr. Straite.
21     MR. STRAITE: Yeah.
22     MR. ANSORGE: There's publisher notice
23 that's required for your nest round of searches.
24     MR. STRAITE: Yeah, I see.
25     MR. ANSORGE: We were referring to that

Page 46

1 for the two-week approach. Now, our hope would
2 be that all publisher notices would be wrapped up
3 in one exercise. But our understanding from the
4 Special Master is that the historically preserved
5 sources would have to be searched according to
6 the same process. So to the extent they are not
7 included in Plaintiffs' current search requests,
8 then they would not be included.
9     MR. STRAITE: Do you have a sense of
10 how many publishers need to be notified for the -
11 -
12     MR. ANSORGE: No.
13     MR. STRAITE: -- second process?
14     MR. ANSORGE: No, because -- well, we
15 have to run the IDs over the sources so that we
16 understand --
17     MR. STRAITE: Okay. We got it. Okay.
18     MR. BRUSH: And so once this -- so
19 think about this (indiscernible). Once it's a
20 responsive record -- so if a responsive record
21 has a third-party set of data that requires
22 consent, then the notification goes out. So it's
23 to only notifying those that are responsive to
24 the searches to reduce the burden.
25     MR. STRAITE: Okay.

Page 47

1     MR. BRUSH: So for that, we just need
2 the search criteria again -- and I apologize if
3 I've lost track of that too. Is that something
4 that -- back it this way -- Google, that's
5 something you still need from Plaintiffs, the
6 search parameters for the historically preserved,
7 like litigation (indiscernible) data?
8     MR. ANSORGE: Yes. That's something we
9 would still require.
10     MR. STRAITE: And we --
11     MR. BRUSH: Okay. So for Plaintiffs,
12 if you could put --
13     MR. ANSORGE: Or Ms. Gao should correct
14 me if I'm wrong. But I don't think it's in
15 Exhibit B right now. I guess I'm not wrong.
16 Yes. Sorry, we require that, yes.
17     MR. BRUSH: Okay. So if -- Plaintiffs'
18 you can put together just as you've done with
19 everything else the search requests that will be
20 against the historically preserved litigation
21 held data, we'll, you know (indiscernible) put it
22 over to Google and we can run those searches;
23 again, what's responsive. Because this is all
24 stuff that theoretically will have some consent -
25 - you know, what -- each one of the records that

Page 48

1 you can hit on will require that notification, a
2 consent will go out, and then hopefully we'll
3 have it sooner than two weeks (indiscernible) --
4 it can go up to two weeks.
5     MR. STRAITE: Okay. And again, with
6 the readmitted request, we thought the answer was
7 yes to our request, that when these notices go
8 out, if we could get copies, if it's an exemplar
9 that's identical, we would just need the exemplar
10 to see what the communications are to the
11 publishers.
12     [OVERLAPPING SPEAKERS]
13     MR. SHAPIRO: I think we said no on
14 that.
15     MR. ANSORGE: Yeah, that's what my
16 recollection too.
17     MR. BRUSH: I think my (indiscernible)
18 on that is no. Yeah, no, at this point that's
19 not part of the process that we need. I've never
20 seen that --
21     MR. STRAITE: Okay. It's not a -- it
22 wouldn't be, I think, something that would hold
23 up searches. It's certainly something that we
24 have an outstanding discovery request, and we can
25 discuss that with the Magistrate. For reasons

Page 49

13 (Pages 46 - 49)

1 not relevant to the search process, but
2 absolutely relevant to the litigation and to the
3 merits. There are reasons why that's important.
4        MR. BRUSH: Okay. Yeah. And I think
5 that's an appropriate venue for this, as opposed
6 to the Special Master process. I would direct
7 that to the Magistrate Judge.
8        MR. STRAITE: We will. Thank you.
9        MR. ANSORGE: Yeah. And we would
10 appreciate, Mr. Straite, if you -- it doesn't
11 have to be now, but at some point identify the
12 discovery requests for us, just so that we know
13 what you're referring to.
14        MR. STRAITE: It's right now my request
15 -- we've made the request in the past, but if you
16 need us to link it to a specific RFP, we can.
17        MR. ANSORGE: Oh, sorry. I
18 misunderstood you, then. I thought you were
19 saying that there had been some... Yeah.
20        MR. STRAITE: Yeah, the request is --
21        MR. ANSORGE: Apologies.
22 (indiscernible)
23        MR. STRAITE: Okay. Thanks. Okay.
24 This has been very useful. I think this is
25 probably the most productive I've been on and so

Page 50

1 maybe that's just a function of it being spring
2 and everybody in a good mood as the weather --
3        MS. WEAVER: I think it's because --
4        MAN: Yeah.
5        MS. WEAVER: -- because the
6 (indiscernible) firm came in the room.
7        MR. BRUSH: (indiscernible)
8        MR. ANSORGE: And I think it's because
9 we weren't joined by somebody else too. That's
10 my theory, but...
11        [OVERLAPPING SPEAKERS]
12        MR. STRAITE: Oh, don't talk about --
13        MS. WEAVER: Do we know --
14        MR. STRAITE: -- Viola like that.
15        MS. WEAVER: -- stepped into that, and
16 that is just rude.
17        MR. STRAITE: Viola will not appreciate
18 that. She's a nice person. I can't believe you
19 said that. I like --
20        MR. ANSORGE: Okay, thank you all.
21        MR. STRAITE: All right. Thanks,
22 everyone.
23        [OVERLAPPING SPEAKERS]
24        MR. BRUSH: Well, I really appreciate -
25 -

Page 51

1        MS. WEAVER: Have a good weekend.
2        MR. BRUSH: -- everybody on this. So
3 just to recap, we're -- I think everybody's good
4 on the (indiscernible) items. Does anybody want
5 to reply back Mr. Straite's email with stuff,
6 other side, just to recapture things, so we have
7 an agreement on where we are going forward would
8 be excellent, just so we have a paper trail of
9 it.
10        MR. STRAITE: Yeah, so I know we have a
11 lot on the Plaintiffs' side, this one call, where
12 a lot falls on us. Number one, we're conferring
13 with Dr. Shafiq. We're going to propose five-day
14 windows. We appreciate the flexibility to go a
15 little bit beyond four five-day windows. We'll
16 look to maybe target a month in batches, and then
17 maybe some periods in subsequent months. We'll
18 talk to them about the smartest way to do that,
19 based on our understanding of preservation
20 period, based on Plaintiff activity. We'll try
21 to get a smart proposal together.
22        We're also going to look at the chart
23 from last Friday, the previous Friday, and other
24 communications, to make sure that we are signed
25 off on the data sources that will be searched

Page 52

1 using the ZWBK IDs.
2        We're also going to make sure that we
3 have three days for the Stark Family test account
4 to Dr. Shafiq should be run prior to then the
5 date of being pulled, which looks like we're now
6 targeting Tuesday or Wednesday for that being
7 done, but we'll confirm with him that he's
8 available to get his machines running for the
9 next three days.
10        And then finally, it's the searches for
11 across the historically preserved data for which
12 notice is required. You're asking for additional
13 search parameters. That's over Plaintiffs'
14 objections. We believe the whole dataset should
15 be produced, but we understand that for the
16 search process for the Special Master, is an
17 interim step which we're agreeing to do,
18 preserving our right to get the entire dataset
19 through the Magistrate. And then we're also
20 deferring to the Magistrate regarding our request
21 for a copy of the notice going to the publishers.
22        And I think that's a lot to do this
23 weekend. So we're going to be working today and
24 tomorrow with that. Did I misstate...? What's
25 the old joke about, you know, a priest commits

Page 53

14 (Pages 50 - 53)

CONFIDENTIAL

1 three heresies every (indiscernible)? I probably
2 committed three errors there. So correct me if
3 I'm wrong.
4        MR. ANSORGE: You have dispensation.
5        MR. STRAITE: It's Lent. Thank you.
6        MR. ANSORGE: Yes.
7        MR. BRUSH: Okay. Well, with that,
8 hopefully we get the transcript soon too so we
9 can compare notes and make sure we're on the same
10 page. But again, thanks everybody for working on
11 this this weekend, especially today. I know
12 people have family and other commitments, so I
13 really do appreciate everybody coming together on
14 this and knocking this out. Looks like we're
15 really at the finish line. I really appreciate
16 everybody's time.
17        MR. STRAITE: Great. Thanks,
18 everybody.
19        MR. ANSORGE: (indiscernible)
20        MS. WEAVER: Thank you. Have a good
21 weekend.
22        MR. ANSORGE: (indiscernible) Mr.
23 Schmidt.
24        MR. SCHMIDT: Thank you. Bye.
25
                                      Page 54

1        C E R T I F I C A T I O N
2
3 I, Sonya Ledanski Hyde, certify that the
4 foregoing transcript is a true and accurate
5 record of the proceedings.
6 Date: April 6, 2022
7
8
9
10    *Sonya V. Ledanski Hyde*
11    Sonya Ledanski Hyde
12
13
14
15
16
17
18
19
20
21
22
23
24
25
                                      Page 55

15 (Pages 54 - 55)

# ANSORGE EXHIBIT 34

# Sealed in its Entirety

# ANSORGE
# EXHIBIT 35

# Redacted Version
# of Document Sought
# to be Sealed

| BLEICHMAR FONTI & AULD LLP | DiCELLO LEVITT GUTZLER LLC | SIMMONS HANLY CONROY LLC |
|---|---|---|
| 555 12ᵗʰ STREET, SUITE 1600 | ONE GRAND CENTRAL PLACE | 112 MADISON AVENUE, 7ᵀᴴ FL. |
| OAKLAND, CA 94607 | 60 EAST 42ⁿᵈ STREET, SUITE 2400 | NEW YORK, NY 10016 |
| | NEW YORK, NY 10165 | |

March 3, 2022

<u>**VIA ELECTRONIC MAIL**</u>
Special Master Douglas Brush
douglas.brush@accelconsulting.llc
Timothy Schmidt
timothy.schmidt@accelconsulting.llc

Re:     *Calhoun v. Google LLC*, No. 5:20-cv-05146-LHK-SVK (N.D. Cal.)
        *Plaintiffs Letter re: Preservation Proposals*

**THIS LETTER REFERENCES MATERIAL THAT HAS BEEN
DESIGNATED CONFIDENTIAL OR HIGHLY CONFIDENTIAL**

Dear Special Master Brush and Mr. Schmidt:

Google has proposed *sampling* some relevant data and being relieved of the obligation to preserve the remaining data. But sampling is not acceptable in any litigation without an accompanying stipulation: i.e., that the failure to preserve data outside the sample will not be a basis to argue against class member identification or quantification of damages. Without such an agreement, Plaintiffs cannot possibly agree to Google's sampling proposal. Furthermore, the sample must be carefully designed to ensure that a properly representative sample is defined.

Google has an obligation to implement a plan that will preserve the following data elements on a class-wide basis:

| **DATA ELEMENTS TO BE PRESERVED ON CLASS-WIDE BASIS** |
|---|
| 1. Identifiers – Gaia, Zwieback, and Biscotti (or others such as IP address and user-agent) |
| 2. Not synced browser status, including Signed In But Not Consented for Sync, Basic Browser, and Guest Modes; |
| 3. Frequency and content of communications sent in the not synced state, which can be captured via URLs, referer headers, and the content of forms and buttons clicked in the payload of GET or POST requests; |
| 4. User profile information that Google associated with the user or communication; |
| 5. Revenue information associated with the communication; |
| 6. Location<br>    a. Identifying whether the class member is in the U.S. and/or California; and<br>    b. Identifying whether the website publisher or its server is in California. |

Special Master Douglas Brush                          SIMMONS HANLY CONROY LLC
March 3, 2022                                         DiCELLO LEVITT GUTZLER LLC
Page 2                                                BLEICHMAR FONTI & AULD LLP

Plaintiffs do not now and have never asked that Google preserve *everything*. We only ask that Google preserve the above-identified narrow slice of relevant data but on a full class-wide basis. To that point, Google is correct that Plaintiffs have not presented a specific plan for how to implement this. The reason is that Plaintiffs are still waiting on Google to produce the Plaintiff data that was requested in August 2020 and ordered to be produced in April 2021 after motion to compel briefing. It is essential to see what Google already preserved for the Plaintiffs to determine the most sensible way to preserve data for the class.

Plaintiffs propose the following ways Google could meet its preservation obligations:

1. Google's preservation proposal is an admission that it is capable of identifying Not Synced user communications and that its refusal/failure to do so to date is a knowing choice. For the preservation proposal, Plaintiffs are willing to discuss creation of a method for Google to identify historical Not Synced communications for specific users and revenues associated with them in its existing storage systems via the methods described in the Rebuttal Report of Dr. Shafiq at ¶¶ 165-175 and 176-188. Plaintiffs request that Google work with Plaintiffs to design a system using Dr. Shafiq's methods (or similar methods) that can be deployed during claims administration.

2. Create a Do Not Sync (DNS or X-Not-Synced) signal that Google can store in its existing logs. *See* Shafiq Rebuttal Decl. ¶¶ 191-194. This signal could operate similar to the existing "Do Not Track" or DNT signal that a user can set within the Chrome browser. Google can readily define a new custom HTTP header, similar to its X-client-data header, or simply incorporate the DNS signal in its X-client-data header. Similar to how Google populates X-client-data header based on various experiments a Chrome browser instance is part of, DNS signal will be populated based on the local browser state of Chrome Sync. DNS could be a binary signal – i.e., when Sync is enabled, 0 (or False) would be sent to Google's servers. Otherwise, 1 (or True) would be sent to Google's servers.[1] DNS could be more granular signal where, for example, information such as whether Chrome browser is in Guest mode, Basic mode, Signed in but not consented for Sync, or Synced mode (and therein, whether Sync was used for different categories of data such as browsing history, bookmarks, open tabs, etc.) can be encoded.

3. Preserve sufficient existing logs with the data elements identified above. These would include:
   a. Identifiers (in their decrypted and non-hashed form);
   b. Sync server logs;

---

[1] Plaintiffs state the obvious: this is a preservation proposal. For eventual injunctive relief purposes, Google should stop sending not synced users' personal information to Google without authorization.

Special Master Douglas Brush                    SIMMONS HANLY CONROY LLC
March 3, 2022                                    DiCELLO LEVITT GUTZLER LLC
Page 3                                          BLEICHMAR FONTI & AULD LLP

    c.    ██████ logs;

    d.    Backend logs that contain revenue, profile, ads and communications content associated with transmissions to Google Ads, Doubleclick, Analytics, and any other Google product from which Google derives profits in whole or in part from tracking not synced users on non-Google websites by enriching user profiles; and

    e.    IP address information of users and publishers sufficient to identify location;

Plaintiffs agree with Google that user Wipeout instructions should be honored. However, those users who ask Google to delete the data that would identify them as class members should be notified of this pending action and given the opportunity to select that their data be placed into a preserved log for later use in a claims administration process. This notice must be subject to court supervision as required by Fed. R. Civ. P. 23(d).

In addition, Plaintiffs cannot agree to Google's attempt to sweep away its past obligations. Of course, any preservation plan would apply prospectively, but it would not relieve Google of its obligation to cure its past failures to preserve.

Finally, to the extent Google complains about Plaintiffs' lack of specifics, that is a problem of Google making. As Plaintiffs explained in October 2021:

> ***If true, it is because Google never complied with its disclosure obligations or promises.*** Plaintiffs' expert opined in February, 2021 that data dictionaries or schemas can identify what is contained in the logs and there is little burden in producing it. In March, the Court agreed, ordering the parties to meet and confer on "a narrow production of documents referenced in Dkt. 118-5 ¶ 7," i.e. data dictionaries, query languages, schemas, tables, attributes and fields. Dkt. 129. And Google told the Court this they were not "are not hiding in any, in any way" where data is maintained and that this was "a more efficient way to go about it." Mar. 5, 2021, Tr. 46:1-4. But Google has rejected all of Plaintiffs' alternatives and has not produced the information the Court viewed as foundational back in March.

Pursuant to the Court's instructions, Plaintiffs are willing to meet-and-confer with Google.

Sincerely,

Jay Barnes
jaybarnes@simmonsfirm.com

Special Master Douglas Brush                    SIMMONS HANLY CONROY LLC
March 3, 2022                                    DiCELLO LEVITT GUTZLER LLC
Page 4                                          BLEICHMAR FONTI & AULD LLP

                                        Lesley Weaver
                                        lweaver@bfalaw.com

                                        David Straite
                                        dstraite@dicellolevitt.com

cc, via email:

Plaintiffs' Counsel                              Defense Counsel

aprom@dicellolevitt.com                          aschapiro@quinnemanuel.com
scruz@dicellolevitt.com                          vtrebicka@quinnemanuel.com
aornelas@bfalaw.com                              jansorge@quinnemanuel.com
atruong@simmonsfirm.com                          sbroome@quinnemanuel.com
ejohnson@simmonsfirm.com                         qecalhoun@quinnemanuel.com

# ANSORGE
# EXHIBIT 36

# Unredacted Version
# of Document Sought
# to be Sealed

**BLEICHMAR FONTI & AULD LLP**
555 12ᵗʰ STREET, SUITE 1600
OAKLAND, CA 94607

**DiCELLO LEVITT GUTZLER LLC**
ONE GRAND CENTRAL PLACE
60 EAST 42ⁿᵈ STREET, SUITE 2400
NEW YORK, NY 10165

**SIMMONS HANLY CONROY LLC**
112 MADISON AVENUE, 7ᵀᴴ FL.
NEW YORK, NY 10016

July 27, 2021

**VIA ELECTRONIC MAIL**
Josef Ansorge
Quinn Emanuel Urquhart & Sullivan, LLP
josefansorge@quinnemanuel.com

      Re:     *Calhoun v. Google LLC*, No. 5:20-cv-05146-LHK-SVK (N.D. Cal.)
               Follow-Up to July 26, 2021 Meet-and-Confer

Dear Counsel:

This letter is to confirm our discussions from the meet-and-confer call regarding upcoming 30(b)(6) and other depositions of Google employees.

First, we agreed to work together on a mutually agreeable protocol for Tim Schumann's deposition, with a proposal from Plaintiffs that the deponent travel to Switzerland where his deposition can be taken remotely. Please let us know your position as soon as possible so that we can start coordinating on the logistics.

Second, regarding your client's security concerns with Googlers accessing exhibit-share files from their Google computers, Plaintiffs' propose that the deponents be supplied with a non-Google device for purposes of the deposition. Please let us know once you confirm this with your client.

Third, you confirmed that for the two scheduled Google depositions, August 4, 2021 and August 11, 2021, those would occur entirely remotely.

Fourth, we discussed identification of the deponent for the August 4, 2021 30(b)(6). While you were not prepared to identify the deponent at this time, you did confirm that s/he will be on the east coast and available to start early morning. With respect to identification, you agreed to provide the name of the 30(b)(6) deponent as soon as confirmed. We appreciate the courtesy.

Fifth, with respect to our July 22, 2021 letter request for production of documents, you agreed to respond in writing to each of the 18 categories of documents for which we requested confirmation of production in advance of the 30(b)(6) deposition.

Sixth, with request to our July 1, 2021 letter request for production of protos and data dictionaries, we provided you with GOOG-CALH-00054260 as an example of the type of document for which we believe we should have information for all locations in which Google receives or stores data from Chrome users in an un-synced state. You asked us to identify the specific place where we requested such information. As you are aware, on March 5, 2021, the Court ordered the parties "to meet and confer regarding a narrow production of documents

Josef Ansorge                                    SIMMONS HANLY CONROY
July 27, 2021                                    DiCELLO LEVITT GUTZLER LLC
Page 2                                           BLEICHMAR FONTI & AULD LLP

referenced in Dkt. 118-5 ¶ 7." That specific paragraph requests "basic information" about data dictionaries, database architecture documentation (such as query language[s], physical schema, and logical scheme, i.e. tables, structures, attributes, and fields) and technical documentation. Unfortunately, to date, Google has produced very little that fits these categories of information. As a result of this discussion, you agreed to review GOOG-CALH-00054260 and to look further into the issue.

Seventh, we discussed clean room access, which you declined.

Eighth, we discussed the portion of your Responses and Objections to Plaintiffs' 30(b)(6) notice that indicated Google would only produce a witness to testify about "relevant data Google receives from a Chrome browser when that browser is used to visit a website that has embedded Google Display Ads or Analytics services." Google R&Os to Plaintiffs' Notice of Rule 30(b)(6) Deposition, 4:19-21; 5:10-11; 6:13-15, 26-28; 7:10-12, 23-25.

As you are aware, Plaintiffs' Complaint is based on Google's collection of personal information from un-synced Chrome users from any source, not just Google Display Ads and Analytics. *See* FAC ¶ 3 ("Despite these express and binding promises, Google intentionally and unlawfully causes Chrome to record and send users' personal information to Google regardless of whether a user elects to Sync or even has a Google account."); Dkt. 118, at 18-20 ("Plaintiffs' Complaint is centered on Chrome's unauthorized transmission of and Google Analytics, Doubleclick, and Ads, *and other Google properties'* unauthorized receipt and retention of a user's Chrome browsing history and personal information including IP address, User-Agent, cookies, and the X-client data identifier.")

As we discussed on the call, those other Google properties include maps.googleapis.com, storage.googleapis.com, fonts.googleapis.com, translate.googleapis.com, cse.google.com, google.com, googletagmanager.com, pagead2.googlesyndication.com, the Chrome omnibar and any other property through which Google receives data from Chrome users in an un-synced state. Some of these properties are specifically included in the examples from the Complaint and FAC. *See* FAC ¶ 165 (cse); ¶ 177 (google.com). Others were the topic of expert declarations after the Court asked for Google's explanation of its source code present on the Court's website. *See Brown v. Google*, Green Decl. ¶¶ 7d (Google custom search engine); 12 (identifying cse.google.com, fonts.googleapis.com, and maps.googleapis.com). Finally, Google itself has asked questions about the Chrome omnibar in every Plaintiff deposition to date.

As a result of your objections, we noted that we would have to notice up a separate 30(b)(6) deposition for all Google collection products other than Google Display Ads and Analytics. You stated that you would consider our concerns. Going forward, we ask that you confirm in writing whether you believe this case is limited to Display Ads and Analytics. If so, please explain the specific basis for such a position, including whether Ads and Analytics are the

Josef Ansorge                                          SIMMONS HANLY CONROY
July 27, 2021                                          DiCELLO LEVITT GUTZLER LLC
Page 3                                                 BLEICHMAR FONTI & AULD LLP

only Google properties that collect user IP addresses, X-client data headers, cookies, and/or browsing information or other communications from un-synced Chrome users.

Ninth, although not discussed during the meet and confer, we are following up on Plaintiffs' request, in our July 13 letter, that Google produce Mr. Svitkine's communications on the Google Groups message board for Chromium developers no later than five days prior to his August 11 deposition (*i.e.* August 6). Such documents should be encompassed by Plaintiffs' current RFPs. Please inform us if Google intends to produce those documents by August 6.

Sincerely,

Jay Barnes
jaybarnes@simmonsfirm.com

cc:

Google Counsel

stephenbroome@quinnemanuel.com
andrewschapiro@quinnemanuel.com
jomairecrawford@quinnemanuel.com
thaothai@quinnemanuel.com
jonathantse@quinnemanuel.com
violatrebicka@quinnemanuel.com
qecalhoun@quinnemanuel.com

Plaintiffs' Counsel

David Straite, dstraite@dicellolevitt.com
Lesley Weaver, lweaver@bfalaw.com
Amy E. Keller, akeller@dicellolevitt.com
Angelica Ornelas, aornelas@bfalaw.com
An Truong, atruong@simmonsfirm.com

# ANSORGE
# EXHIBIT 37

# Redacted Version
# of Document Sought
# to be Sealed

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

PATRICK CALHOUN, et al., on behalf of
themselves all others similarly situated,

Plaintiffs,

v.

GOOGLE LLC,

Defendant.

Case No. 5:20-cv-05146-LHK-SVK

**PLAINTIFFS' NOTICE OF DEPOSITION OF DEFENDANT GOOGLE, LLC PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 30(b)(6)**

**TO ALL PARTIES AND THEIR RESPECTIVE ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** under Federal Rules of Civil Procedure 26 and 30(b)(6), Plaintiffs, by their counsel, will take the deposition of Defendant Google, LLC ("Google") at a date and time to be mutually agreed upon date. Please take notice that due to the disruptions to travel and accompanying shelter-in-place orders caused by the COVID-19 outbreak, the deposition of Google will occur via remote means on and will be coordinated by Veritext Legal Solutions, with a business address at 101 Montgomery St., Suite 450, San Francisco, CA 94104. Contact Veritext's calendar team at ahenderson@veritext.com to retrieve the necessary credentials to access the remote deposition, as well as information related to any technical assistance you may require to assist with carrying out the virtual deposition. Alternatively, if circumstances permit and the parties agree, the matter may be taken in whole or part in-person and virtually. Those who wish to appear in the physical presence of another do so at their own election; however, this noticing party is not requiring the in-person physical attendance of counsel, the witness or any other party to this action.

The deposition will be taken before a person authorized by law to administer oaths under Federal Rules of Civil Procedure 28(a) and shall continue from one day to the next, excluding Sundays and holidays, until the examination is completed.

Pursuant to Rule 30(b)(6) Defendant is hereby notified of its duty to designate one or more officers, directors, managing agents or other persons most knowledgeable or qualified to testify on its behalf concerning the following topics:

1.    A description and identification of *all* locations where Information taken from Chrome users who are not synced resides, including all logs as well as datapols such as ███ and any other unstructured repositories;

2.    Google's capability to search for Information taken from Chrome users who are not synced, including:

    a.    the ability to isolate Information taken only from Chrome users who are not synced in the US throughout the Class Period; and,

    b.    the ability to establish whether Chrome sends users' Chrome browsing history to Google even when users are not synced.

3.    Whether there is a distinct code, signal or flag that indicates whether users are not synced, and during what time period those codes, signals or flags were in use, including but not limited to:

    a.    Signals, flags or code which indicate that a user has not synced;

    b.    Signals, flags or code which indicate that a user never synced;

    c.    Signals, flags or code which indicate that a user turned off sync;

    d.    Identification of all data and information sent from Chrome to Google, exchanged between Chrome and Google, or stored by Chrome or Google, including:

        i.    Data flow from ████████████, including but not limited to the following "services" and domains or subdomains when a user is

           (a.) "Not Signed In,"

           (b.) "Signed In, Not Consented for Sync,"

           (c.) "Signed In, Consented for Sync;"

           (d.) any other browser state; or

           (e.) transitioning between any such browser state to a different browser state, as identified by Google at ████████████.

| "Service" Identified by Google at ███████ | Domain Identified by Google at ███████ | |
|---|---|---|
| ████████ | | ████████ |
| ████████ | | ████████ |
| ████████ | | ████████ |
| ████████ | | ████████ |

        ii.    Data flow from ████████████, including but not limited to the server URL ████████████,

---

[1] An exemplar copy of ████████████ was provided to Google as Exhibit B to Plaintiffs' Fourth Request for Production of Documents and is re-attached to this notice.

Case No. 5:20-cv-5146-LHK-SVK

PLTFS' NOTICE OF DEPOSITION OF GOOGLE LLC PURSUANT TO FED. R. CIV. P. 30(B)(6)

█████ or any other domain or subdomain from which Chrome and Google exchange data and information transmissions relating to browser state when a user is synced or not synced and whether and where such information is stored in Google logs, locally, or any other location. This includes the ██████

████████████████████████████████████████████████

iii.  Data flow from the ████████████ that Chrome transmits to Google when a Chrome user signs-in to any Google service such as Gmail or opens the Chrome browser after having previously not formally signed out of a Google service, including all fields or data parameters transmitted from Chrome to Google via the ████████.

iv.  Data flow from the data parameter in the ████████ that identifies synced or non-synced status or browser mode;

v.  Data and information that flows or is stored relating to sync and sync.proto.

vi.  Data parameter labeled "sync_feature_enabled", "is_sync_feature_enabled" or anything similar.

vii.  Data flow from ████████ and ████████ signals.

viii.  Data flow from ████████████

ix.  Data flow from ████████████, which Google deponent David Monsees testified "would be the structure, stored in a ████████ log generated by this ████████ script" where "traffic without sync feature being enabled" is "stored at Google." Monsees Dep. 433:11-17.

x.  Data flow from ████████, ████████, or ████████ as identified in Monsees Dep. Ex. 25, GOOG-CALH-00028183.

xi.  Data flow from ████████████, which Monsees testified is "the Chrome data in your account specific to Chrome Sync" that is stored server-side by Google "in different locations." Monsees Dep. 396:19-400:16.

4.  For each signal, flag or code identified in response to Topic 3 above, what logs or datapols contain such information, including but not limited to sync traffic logs, and how fields containing such information can be identified, isolated, searched, and whether such data can be extracted and joined with other logs.

5.  What steps Google could take and has taken to search for Information taken from the Named Plaintiffs when they are not synced, including but not limited to Information

---

² An exemplar copy of ████████████ was provided to Google as Exhibit A to Plaintiffs' Fourth Request for Production of Documents and is re-attached to this notice.

- 3 -

PLTFS' NOTICE OF DEPOSITION OF GOOGLE LLC PURSUANT TO FED. R. CIV. P. 30(B)(6)

sent from Chrome to Google at any location or stored in any datapol or log that contains Information and data for Chrome users who are not synced.

6.   How Google subsequently uses any signal received from the Chrome browser that a user is synced or not synced, including whether Google distinguishes between data taken from users who are synced or not synced once the data has been collected.

Each such designee produced to testify has an affirmative duty to have first reviewed all Documents, internal wiki materials, policies, reports, and other matters known or reasonably known or available to Google and to familiarize himself or herself with all potential witnesses known or reasonably available to provide informed, binding answers at the deposition, including but not limited the documents that Plaintiffs have specifically asked Google to produce relating to these topics.

Defendant Google shall inform Plaintiffs of such designations(s) at a reasonable time prior to the deposition(s), but no later than 72 hours before the deposition(s), by setting forth the identity of the person(s) designated to testify with respect to the matters specified below. The deposition will continue on the day noticed and for additional days, if necessary, excluding Sundays and holidays until completed.

Plaintiffs reserve the right to notice and conduct additional Rule 30(b)(6) depositions of Defendant on separate, non-duplicative topics.

**NOTICE IS FURTHER GIVEN** that Plaintiffs will conduct this deposition utilizing the secure web-based deposition option afforded by Veritext or telephonically to provide remote/virtual access for those parties wishing to participate in the deposition via the internet and/or telephone. Also take notice that Plaintiffs reserve the right to record the deposition either by stenographic means by a court reporter certified to record depositions, a digital reporter utilizing state-of-the-art digital recording equipment and by video. Both the court reporter and digital reporter are authorized to administer the oath and serve as the deposition officer in the State of California. Take note that the deposition officer may also be remote and out of the presence of the deponent via one of the options above for the purposes of providing the oath/affirmation to the deponent and capturing the proceeding. Plaintiffs further reserve the right to utilize the following: (1) Record the  deposition utilizing audio or video technology; (2) Instant visual display such that the reporter's writing of the proceeding will be available to all who are a party to this proceeding to request and receive it in real-

time; (3) Exhibit Capture (picture-in-picture) technology in which any exhibit reviewed by the deponent during the deposition can be captured visually; and (4) To conduct this deposition utilizing a paperless exhibit display process called Exhibit Share or a similar paperless virtual display platform. The parties are advised that in lieu of a paper set of exhibits they may be provided and displayed digitally to the deposition officer, deponent, parties and counsel. The exhibits will be compiled by the deposition officer for the purposes of exhibit stamping, and ultimate production of the final certified transcript.  Please contact the noticing attorney no fewer than five (5) calendar days prior to the deposition to provide all necessary credentials, call-in numbers, firm name, email address, services, testing and information, if necessary, for those who will attend and/or participate in the deposition in order that participation and connection can be arranged and details provided sufficiently in advance of the proceeding(s).

A list of all parties or attorneys for parties on whom this Notice of Deposition is being served is shown on the accompanying proof of service.

Dated: September 9, 2021

**BLEICHMAR FONTI & AULD LLP**

By:    /s/ Lesley E. Weaver
Lesley Weaver (Cal. Bar No. 191305)
Angelica M. Ornelas (Cal. Bar No. 285929)
Joshua D. Samra (Cal. Bar No. 313050)
555 12th Street, Suite 1600
Oakland, CA 94607
Tel.: (415) 445-4003
Fax: (415) 445-4020
*lweaver@bfalaw.com*
*aornelas@bfalaw.com*
*jsamra@bfalaw.com*

**SIMMONS HANLY CONROY LLC**

By:    /s/ Jay Barnes
Jason 'Jay' Barnes (admitted *pro hac vice*)
An Truong (admitted *pro hac vice*)
Eric Johnson (admitted *pro hac vice*)
112 Madison Avenue, 7th Floor
New York, NY 10016
Tel.: (212) 784-6400
Fax: (212) 213-5949

**DICELLO LEVITT GUTZLER LLC**

By:    /s/ David A. Straite
David A. Straite (admitted *pro hac vice*)
One Grand Central Place
60 E. 42nd Street, Suite 2400
New York, NY 10165
Tel.: (646) 993-1000
*dstraite@dicellolevitt.com*

Amy E. Keller (admitted *pro hac vice*)
Adam Prom (admitted *pro hac vice*)
Ten North Dearborn Street, 6th Fl.
Chicago, Illinois 60602
Tel.: (312) 214-7900
*akeller@dicellolevitt.com*

*aprom@dicellolevitt.com*

PLTFS' NOTICE OF DEPOSITION OF GOOGLE LLC PURSUANT TO FED. R. CIV. P. 30(B)(6)

1    *jaybarnes@simmonsfirm.com*
     *atruong@simmonsfirm.com*
2    *ejohnson@simmonsfirm.com*

3    *Counsel for Plaintiffs*

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLTFS' NOTICE OF DEPOSITION OF GOOGLE LLC PURSUANT TO FED. R. CIV. P. 30(B)(6)

1

## <u>CERTIFICATE OF SERVICE</u>

2

I, An V. Truong, hereby certify that on September 9, 2021 I caused a true and correct copy

3

of the foregoing document to be served via electronic mail to the following counsel of record.

4

5

<u>/s/ An V. Truong</u>
An V. Truong

6

7

**<u>QUINN EMANUEL URQUHART &
SULLIVAN, LLP</u>**

8

9

Andrew H. Schapiro, Esq. /
andrewschapiro@quinnemanuel.com
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606
Tel: (312) 705-7400
Fax: (312) 705-7401

Josef Ansorge, Esq. /
josefansorge@quinnemanuel.com
1300 I Street NW, Suite 900
Washington D.C., 20005
Tel: (202) 538-8000
Fax: (202) 538-8100

10

11

12

Stephen A. Broome, Esq. /
stephenbroome@quinnemanuel.com
Viola Trebicka, Esq. /
violatrebicka@quinnemanuel.com
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
Tel: (213) 443-3000
Fax: (213) 443-3100

Jonathan Tse, Esq. /
jonathantse@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, CA 94111
Tel: (415) 875-6600
Fax: (415) 875-6700

13

14

15

16

Thao Thai, Esq. /
thaothai@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
Tel: (650) 801-5000
Fax: (650) 801-5100

17

Jomaire Crawford, Esq. /
jomairecrawford@quinnemanuel.com
51 Madison Avenue, 22nd Floor
New York, NY 10010
Tel: (212) 849-7000
Fax: (212) 849-7100

18

19

20

21

22

23

*Counsel for Defendant*

24

25

26

27

28

Case No. 5:20-cv-05146-LHK-SVK

# ANSORGE
# EXHIBIT 38

# Unredacted Version
# of Document Sought
# to be Sealed

**BLEICHMAR FONTI & AULD LLP**
555 12th STREET, SUITE 1600
OAKLAND, CA  94607

**DiCELLO LEVITT GUTZLER LLC**
ONE GRAND CENTRAL PLACE
60 EAST 42nd STREET, SUITE 2400
NEW YORK, NY 10165

**SIMMONS HANLY CONROY LLC**
112 MADISON AVENUE, 7TH FL.
NEW YORK, NY 10016

September 22, 2021

**Lesley E. Weaver**
lweaver@bfalaw.com
(415) 445-4004

<u>**VIA ELECTRONIC MAIL**</u>

Josef Ansorge, Esq.
Quinn Emanuel Urquhart & Sullivan, LLP
1300 I Street, NW, Suite 900
Washington, DC  20005
josefansorge@quinnemanuel.com

     Re:    *Calhoun v. Google LLC*, No. 5:20-cv-05146-LHK-SVK (N.D. Cal.)
              Plaintiffs' Notice of 30(b)(6) Deposition

Dear Counsel:

     This letter follows up our meet and confer yesterday regarding Plaintiffs' 30(b)(6) deposition notice served on September 9, 2021 ("Notice"). As we discussed, Plaintiffs propounded the Notice to discover the ways Google tracks the sync status of Chrome users. Google has already conceded that it records whether Chrome traffic is collected from synced users (described to us in a recent meet-and-confer as a "sync flag"), and Google has also conceded that one could infer that traffic came from an un-synced browser if the flag were absent.  However, Plaintiffs understand that Google's tracking is more extensive, and Google may also track whether and when a Chrome user elects to sync (and later un-sync) her browser.  It is therefore important to schedule this deposition in advance of the class certification motion due on October 14.  Three previous deponents in 30(b)(6) depositions have professed to be ignorant on this issue, despite the question's centrality to the case and the Court's order that Google prepare its witness to testify on this very issue.

     In response to the Notice, Google proposed that Tim Schumann, a German resident, should be its designee. But Google asserts that Mr. Schumann can only be produced in Switzerland, according the procedures of Swiss law, due to the pandemic.  Plaintiffs disagree. The noticed deponent is Google, not Mr. Schumann. Google is headquartered in California and the litigation is pending in California. By no stretch of the imagination would Plaintiffs be required to take Google's 30(b)(6) deposition in Europe. *Louis Vuitton Malletier, S.A. v. Akanoc Solutions, Inc.*, No. C07-03952JW (HRL), 2008 WL 1766758, at *1 (N.D. Cal. Apr. 15, 2008) (requiring 30(b)(6) deposition be conducted in California because "there is a general presumption that the deposition of a corporate party should be taken at its place of business[.]") (citation omitted); *Fram v. Memory Enters*. LLC, No. CV177172MWFJPRX, 2018 WL 5903922, at *1 (C.D. Cal. Sept. 17, 2018) ("[T]he forum district is also generally an appropriate location for any

Josef Ansorge, Esq.
September 22, 2021
Page 2

SIMMONS HANLY CONROY LLC
DICELLO LEVITT GUTZLER LLC
BLEICHMAR FONTI & AULD LLP

party deposition"). Google has not articulated any reason that would require the 30(b)(6) deposition of Google take place anywhere other than California. *Id.* And as Google admits, many of these topics have been previously noticed.

In contrast, the lengthy and burdensome procedures already in process for the deposition of Mr. Schumann in his personal capacity are unlikely to result in a deposition prior to the class certification motion, depending upon the vagaries of the Swiss judicial system. Google's designation of Mr. Schumann therefore appears to be just another effort to frustrate Plaintiffs' request for responses to these basic questions, and it is not supported by the law. *See e.g. Metcalf v. Bay Ferries Ltd.*, No. CIV.A. 12-40075-TSH, 2014 WL 3670786, at *2 (D. Mass. July 21, 2014) (finding defendant's request to move "the Rule 30(b)(6) deposition to Canada because of the health and related travel restrictions of one of its Rule 30(b)(6) designees . . . unpersuasive[.]"); *Lake City Assocs., LLC v. Windsor Arms, LLC*, No. 3:13-cv-782-J-39JBT, 2014 WL 12609863, at *2 (M.D. Fla. June 19, 2014) (ordering defendant entities to designate another corporate representative when designated representative was recovering from surgery as Rule 30(b)(6) "does not contemplate an indefinite delay in depos[ing] a corporate representative because of the physical incapacity of one person"). Here, Mr. Schumann is not ill. He has been actively prepping Google's other 30(b)(6) depositions over Zoom. He can appear in a remote deposition on behalf of Google on California time, and he is already well prepared on these topics, if Google's previous 30(b)(6) deponents are to be believed. After all, he has been meeting with them over Zoom to prepare them, for hours at a time. There is no reason that he cannot appear on Google's behalf, over Zoom, in the next two weeks.

Plaintiffs have offered to coordinate the 30(b)(6) deposition with his deposition in his personal capacity, if that is what Google wishes. But Google's designation of Mr. Schumann as its corporate designee now – when it could have done so in April – should not impede Plaintiffs' presentation of evidence on the Court's schedule.

Finally, we discussed narrowing three topics in the Notice that Google contends are duplicative of other discovery. Plaintiffs are willing to discuss a narrowing of those challenged topics in the event answers to that discovery are otherwise provided, and once the issue of the designee is resolved. In any event, Plaintiffs seek a date within the next two weeks for which a corporate designee on these questions will appear. Given the current class certification motion deadline, if the issue cannot be resolved this week, Plaintiffs will add it to Friday's joint discovery dispute chart under Dispute No. 1.19.

Josef Ansorge, Esq.
September 22, 2021
Page 3

SIMMONS HANLY CONROY LLC
DiCELLO LEVITT GUTZLER LLC
BLEICHMAR FONTI & AULD LLP

Sincerely,

Lesley Weaver
lweaver@bfalaw.com

cc, via email:

<u>Google Counsel</u>

qecalhoun@quinnemanuel.com

<u>Plaintiffs' Counsel</u>

dstraite@dicellolevitt.com
akeller@dicellolevitt.com
aprom@dicellolevitt.com
aornelas@bfalaw.com
jaybarnes@simmonsfirm.com
atruong@simmonsfirm.com
ejohnson@simmonsfirm.com

# ANSORGE EXHIBIT 39

# Sealed in its Entirety