Elizabeth C. Pritzker (Cal. Bar No. 146267)
Jonathan K. Levine (Cal. Bar No. 220289)
Bethany Caracuzzo (Cal. Bar No. 190687)
Caroline Corbitt (Cal. Bar. No. 305492)
**PRITZKER LEVINE LLP**
1900 Powell Street, Suite 450
Emeryville, CA 94608
Tel.: (415) 692-0772
Fax: (415) 366-6110
*ecp@pritzkerlevine.com*
*jkl@pritzkerlevine.com*
*bc@pritzkerlevine.com*
*ccc@pritzkerlevine.com*

*Interim Class Counsel*

[Additional Counsel Appear on Signature Page]

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### OAKLAND DIVISION

| | |
|---|---|
| *IN RE GOOGLE RTB CONSUMER PRIVACY LITIGATION* | Case No. 4:21-cv-02155 YGR (VKD) |
| This document applies to all actions. | **PLAINTIFFS' NOTICE OF RENEWED MOTION AND RENEWED MOTION FOR CLASS CERTIFICATION AND APPOINTMENT OF CLASS REPRESENTATIVES AND CLASS COUNSEL; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| | Judge:     Hon. Yvonne Gonzalez Rogers<br>Date:      TBD<br>Time:      TBD<br>Courtroom: 1, 4th Floor |

**REDACTED VERSION**

## <u>Table of Contents</u>

NOTICE OF MOTION AND MOTION ........................................................................................V

STATEMENT OF ISSUES TO BE DECIDED ...........................................................................1

    I.    Should the Court certify the Class and Class claims under Rule 23 (a) and (b)(2) of the Federal Rules of Civil Procedure? .........................................1

    II.    Should the Court appoint plaintiffs as representatives of the Class? ........................1

    III.    Should the Court appoint Elizabeth Pritzker, Lesley Weaver, Jay Barnes, David Straite, Nanci Nishimura, and Francis Bottini Jr. as Class Counsel and Ms. Pritzker as Lead Class Counsel? ...........................................................1

MEMORANDUM OF POINTS AND AUTHORITIES ...............................................................1

I.    INTRODUCTION ...........................................................................................................1

II.    BACKGROUND ..............................................................................................................2

III.    LEGAL FRAMEWORK ..................................................................................................7

IV.    ARGUMENT ...................................................................................................................8

    A.    The Proposed Class is Objectively Defined and Appropriate in Scope .............8

    B.    The Plaintiff RTB Data is Representative of the RTB Data for the Class ........10

        1.    Plaintiffs Satisfy the Standards for Rule 23(b)(2) Certification...................10

        2.    Google's RTB Shares and Sells Class Members' Personal Information ...........................................................................................11

    C.    Rule 23(a) and (b)(2) Certification is Warranted .................................................15

        1.    Rule 23(a)'s Requirements are Satisfied ......................................................15

        2.    Rule 23(b)(2)'s Requirements are Satisfied ................................................16

        3.    Plaintiffs' Proposed Injunctive Relief Provides Class-Wide Relief.............18

        4.    The Claims to Be Certified Provide Effective Injunctive Remedies ..........19

V.    CONCLUSION...............................................................................................................24

1

## **TABLE OF AUTHORITIES**

2

### CASES

3    *B.K. by next friend Tinsley v. Snyder*, 922 F.3d 957 (9th Cir. 2019) ....................................... *passim*

4    *Brooks v. Thomson Reuters Corp.*, 2021 WL 3621837 (N.D. Cal. Aug. 16, 2021)....................... 22

5    *Brooks v. Thomson Reuters Corp.*, 2023 WL 9316647 (N.D. Cal. Aug. 10, 2023)...................... 24

6    *Broomfield v. Craft Brew All., Inc.*, 2018 WL 4952519 (N.D. Cal. Sept. 25, 2018) ..................... 20

7    *Brown v. Google, LLC*, 2022 WL 17961497 (N.D. Cal. Dec. 12, 2022) ........................................ 17

8    *Calhoun v. Google*, 113 F.4th 1141 (9th Cir. 2024) ................................................................... 21

9    *California Coal. for Women Prisoners v. United States*, 2024 WL 1290766 (N.D. Cal.
        Mar. 15, 2024) ......................................................................................................................... 11
10

11    *Cel–Tech Comms., Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal.4th 163 (1999)......................... 24

12    *Colgan v. Leatherman Tool Grp., Inc.*, 135 Cal. App. 4th 663 (2006) ........................................ 24

13    *Day v. GEICO Cas. Co.*, 2022 WL 16556802 (N.D. Cal. Oct. 31, 2022) ...................................... 9

14    *Doe v. Meta Platforms, Inc.,* 690 F. Supp. 3d 1064 (N.D. Cal. 2023)........................................ 23

15    *DZ Rsrv. v. Meta Platforms, Inc.*, 2022 WL 912890, (N.D. Cal. Mar. 29, 2022), *aff'd in
        part, vacated in part, remanded,* 96 F.4th 1223 (9th Cir. 2024)........................................... 18

16    *Flores-Mendez v. Zoosk, Inc.,* 2021 WL 308543 (N.D. Cal. Jan. 30, 2021)................................. 21

17    *Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272 (2009) ................................................................. 20

18    *Hill v. NCAA*, 7 Cal. 4th 1 (1994) ....................................................................................... 20, 22

19    *In re College Athlete NIL Litig.*, 2023 WL 7106483 (N.D. Cal. Sept. 22, 2023) ............................ 8

20    *In re Facebook, Inc. Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d 767 (N.D. Cal.
        2019)........................................................................................................................................ 22
21

22    *In Re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589 (9th Cir. 2020)................................ 19

23    *In re Google Inc. Gmail Litig.*, 2014 WL 1102660 (N.D. Cal. Mar. 18, 2014) ............................. 22

24    *In re Nickelodeon Cons. Priv. Litig.*, 827 F.3d 262 (3d Cir. 2016)............................................... 21

25    *In Re Yahoo Mail Litig.*, 308 F.R.D. 577 (N.D. Cal. 2015) .......................................................... 11

26    *Katzberg v. Regents of Univ. of Cal.*, 29 Cal. 4th 300 (2002)...................................................... 22

27    *Krommenhock v. Post Foods, LLC*, 334 F.R.D. 552 (N.D. Cal. 2020)............................................ 9

28    *Messner v. Northshore Univ. Health System*, 669 F.3d 802 (7th Cir. 2012) .................................. 8

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651(9th Cir.), *cert. denied sub nom. StarKist Co. v. Olean Wholesale Grocery Coop., Inc.*, 143 S. Ct. 424 (2022) ............................................................................................................................ 8

*Opperman v. Path, Inc.*, 2016 WL 3844326 (N.D. Cal. July 15, 2016) ........................................ 21

*Parsons v. Ryan*, 754 F. 3d 657 (9th Cir. 2014).................................................................................... 7

*Riley v. California*, 573 U.S. 373 (2014) ............................................................................................... 21

*Rodriguez v. Google, LLC*, 2024 WL 38302 (N.D. Cal. Jan. 3, 2024) .......................................... 17

*Shulman v. Grp. W. Prods., Inc.*, 18 Cal. 4th 200 (1998) ................................................................ 20

*Stasi v. Inmediata Health Grp.*, 501 F. Supp. 3d 898 (S.D. Cal. 2020) ........................................ 21

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) ......................................................................... 7

*Walters v. Reno*, 145 F.3d 1032 (9th Cir. 1998) ................................................................................ 17

STATUTES

Cal. Civ. Code § 1798.140(v) ................................................................................................................ 17

Cal. Const. Art. 1, § 1 ............................................................................................................................ 22

California Information Privacy Act, Cal. Penal Code § 631.2 .......................................................... 23

California Invasion of Privacy, Cal. Penal Code § 637.2(b) ............................................................. 23

California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 ........................................... 23

Fed. R. Civ. P. 23 (a)......................................................................................................... 1, 13, 14, 15, 16

Fed. R. Civ. P. 23(b)(2)...................................................................................................................*passim*

OTHER AUTHORITIES

Newberg on Class Actions, § 3.24 (5th ed.)....................................................................................... 19

## NOTICE OF MOTION AND MOTION

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that, on a date and time to be determined, in Courtroom 1, 4th Floor, of this Court, located at 1301 Clay Street, Oakland, California 94612, plaintiffs Christopher Valencia, John Kevranian, Terry Diggs, Kimberley Woodruff, Rethena Green, Salvatore Toronto, and Tara Williams will and hereby do move the Court for an Order (i) certifying this action as a class action, (ii) appointing plaintiffs as representatives of the Class, and (iii) appointing Elizabeth Pritzker of Pritzker Levine LLP, Lesley Weaver of Bleichmar Fonti & Auld LLP, Jay Barnes of Simmons Hanly Conroy LLP, David Straite of DiCello Levitt LLP, Nanci Nishimura of Cotchett Pitre & McCarthy, LLP, and Francis Bottini, Jr. of Bottini & Bottini, Inc. as Class Counsel, with Ms. Pritzker to serve as Lead Class Counsel.

Plaintiffs seek to certify a class consisting of all individual Google account holders subject to a Google U.S. Terms of Service ("ToS") who have an active Google account (the proposed "Class"). Plaintiffs seek certification of the following claims, all arising under California law: (i) breach of contract, (ii) breach of confidence, (iii) invasion of privacy, (iv) intrusion upon seclusion, (v) publication of private facts, (vi) for violations of the California Information Privacy Act ("CIPA"), Cal. Penal Code § 631.2; and (vi) for violations of the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq* (collectively, the "Class claims"). Consistent with this Court's April 4, 2024 Order (ECF 690) (the "Order") holding that "plaintiffs meet many of the requirements of class certification under" Fed. R. Civ. P. 23(b)(2) (*see* Order at 2), this Motion is made pursuant to that Rule on the grounds that plaintiffs seek with respect to all claims uniform injunctive or declaratory relief from policies or practices that are generally applicable to the Class as a whole.

Plaintiffs' Motion is based upon the Order (ECF 690); this Notice; the accompanying Memorandum of Points and Authorities; the Further Declarations of Elizabeth C. Pritzker ("Further Pritzker Decl.") and Bethany Caracuzzo ("Further Caracuzzo Decl."); and all exhibits thereto; any reply plaintiffs may file; the orders, pleadings, and files in this action; and such other matters as may be presented at or before the hearing.

## STATEMENT OF ISSUES TO BE DECIDED

I.      Should the Court certify the Class and Class claims under Rule 23 (a) and (b)(2) of the Federal Rules of Civil Procedure?

II.     Should the Court appoint plaintiffs as representatives of the Class?

III.    Should the Court appoint Elizabeth Pritzker, Lesley Weaver, Jay Barnes, David Straite, Nanci Nishimura, and Francis Bottini Jr. as Class Counsel and Ms. Pritzker as Lead Class Counsel?

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

The Court found that plaintiffs "meet many of the requirements of class certification under Rule 23(b)(2)" of the Federal Rules of Civil Procedure ("Rule 23(b)(2)"). Order at 2. The Court directed plaintiffs to address in "the next round of briefing," "two unresolved issues: (1) whether the class, as defined, is fail safe and, if so, whether striking 'personal information' from the definition would result in an overbroad class; and (2) whether the RTB data produced thus far [for the plaintiffs] is representative of the class as a whole." *Id*. This renewed Motion addresses these issues.[1]

In summary, with respect to the class definition questions, plaintiffs seek certification of a Rule 23(b)(2) class defined as: **All individual Google account holders subject to a Google U.S. ToS who have an active Google accoun**t (hereinafter "all active Google U.S. account holders"). This definition removes any concern that the class definition is "fail safe" because class membership does not depend upon whether a member has a valid claim. The Class here is subject to an objective inqu*i*ry that all Class members can readily discern for themselves. Invoking Google's definition, an "active" Google account is an account that has been used at any time in the past two years.[2] Google

---

[1] The Court instructed the parties that "[w]here the Court has ruled on an argument, the parties shall not reassert it at the next round of briefing." Order at 2. In this renewed Motion, Plaintiffs thus only address numerosity (*id*. at 10), commonality (*id*. at 10-18), typicality (*id*. at 18-19), and adequacy (*id*. at 20) to the limited extent necessary in light of the modified Class definition and the new Class data.

[2] A Google account "that is in use is considered active." *See* https://support.google.com/accounts/answer/12418290?hl=en&ref_topic=7189311&sjid=12474238374228731571-NC.    An    inactive Google account is "an account that has not been used within a 2-year period." *Id.*

1  can discern from its own records those accounts that are "active" versus those that are not.

2      Defining the Class in this way also does not present overbreadth concerns. As plaintiffs'

3  technical experts have already shown, and as further demonstrated by Prof. Zubair Shafiq's

4  Supplemental Class Cert. Expert Report ("Shafiq Supp.") [Ex. 3 to the Further Pritzker Decl.], Google

5  RTB is pervasive; it is uniformly implemented across the Class; and it impacts plaintiffs and Class

6  members in the same way. There are no unimpacted Class members. "Google's RTB protocol is

7  identical for every one of its billions of daily [RTB] bids;" Class member and "plaintiffs' RTB data

8  is uniformly personally identifying"; and "as Google confirmed at the [prior class certification]

9  hearing, there currently is no way for users to stop Google from selling information about their unique

10  IDs, location, and browsing history through the billions of RTB bids exchanged every single day with

11  hundreds of RTB participants from all around the world." Order at 12, 16, 25-26.

12      As to the Court's second concern about the representative nature of the RTB data produced

13  for the plaintiffs (the "Plaintiff data"), following the Court's Order, Google produced six ten-minute

14  intervals of class-wide RTB bid data spread over a three-year period (2021-2023) (the "Class data").

15  Further Pritzker Decl., ¶ 17. Prof. Shafiq analyzed this production, encompassing over 120 terabytes

16  of data and almost ██ billion RTB bid requests. His analysis directly answers the Court's inquiry,

17  affirming that the RTB data are uniformly personal information for the plaintiffs and the Class, and

18  that the Plaintiff data is in fact representative of the Class as a whole. *See* Shafiq Supp., ¶¶ 14-44.

19      Plaintiffs have met their burden. As previously illustrated and as the additional evidence

20  shows, there is an ample evidentiary record for the Court to grant certification under Rule 23(a) and

21  (b)(2). The injunctive relief sought – for transparency in Google's disclosures and a meaningful

22  choice to opt-out of RTB – will apply generally to the Class, precisely as Rule 23(b)(2) requires.

23  ## II.    BACKGROUND

24      Plaintiffs bring this renewed Motion on a well-developed evidentiary record, supplemented

25  by the Class data Google produced in July 2024 and Prof. Shafiq's Supplemental Expert Report.[3] As

26

27  [3] Evidence relied on in this Motion is attached to the Further Pritzker Decl. and Further Caracuzzo

28  Decl. Because the prior reports of plaintiffs' technical experts Profs. Shafiq and Wilson are cited extensively, they are submitted again as exhibits to the Further Pritzker Decl.: Prof. Shafiq's opening

reflected in the record, this action is brought on behalf of active Google U.S. account holders – hundreds of millions of them – to whom Google consistently, and unequivocally, makes the same core promise in its ToS and Privacy Policies:

### We don't sell users' personal information.[4]

Google restates this core promise – and the related promise that it does not sell or share personal information with anyone outside of Google – in its Google account holder agreements going back at least to June 28, 2016 and continuing to today:

**What is still the same?**

- Google does not sell your personal information to anyone.[5]

***

We will share personal information with companies, organizations or individuals outside of Google **when we have your consent to do so. We require opt-in consent for the sharing of any sensitive personal information**.[6]

***

**Never sell our users' personal information to anyone**... [i]t's important to clarify that **our users' personal information is simply not for sale**.[7]

***

We do not share personal information with companies, organizations and individuals outside of Google unless one of the following circumstances applies:  With your consent . . . With domain administrators . . . For external processing . . .  For legal reasons . . . .[8]

---

report ("Shafiq Rep.") and rebuttal report ("Shafiq Reb.") are Exs. 1 and 2, and his new supplemental report is Ex. 3 thereto. Prof. Wilson's opening report ("Wilson Rep.") and rebuttal report ("Wilson Reb.") are Exs. 4 and 5. The Further Caracuzzo Decl. largely duplicates counsel's prior declaration (ECF 546-36), but adds testimony and evidence concerning Google privacy policies and ToS dated after the filing of plaintiffs' prior class certification motion.

[4] Google's *Privacy Principles*, published on Google's website and incorporated into the Google Privacy Policy since September 10, 2015. Further Caracuzzo Decl., ¶¶ 3-12, Ex. 13 (see also Order at 11); Google's *How Our Business Works*, published on Google's website and incorporated into Google's ToS from at least February 2020 to the present.  *Id.*, ¶¶ 13-16, Exs. 16-19.

[5] Google's "Consent Bump" issued to U.S. account holders on June 28, 2016, and which Google testified continues to apply to all Google account holders thereafter. *Id.*, ¶¶ 21-23, Exs. 22, 23.

[6] Google's *Privacy Policy* (June 28, 2016). Further Caracuzzo Decl., ¶¶ 17-20, 24, 27-29,  Exs. 14, 20, 21, 24 (bold italics added). The Privacy Policy now states Google requires "explicit consent." *Id.*

[7] Google's *Safety Center – Our Privacy & Security Principles*, published on Google's website and incorporated into Google's Privacy Policy and ToS since September 10, 2018. *Id.* ,¶¶ 8-12, Ex. 15 (emphasis added). It now adds, "We never sell your personal information." *Id.*, ¶ 12.

[8] Google's *Privacy Policy* (at least June 28, 2016 to the present). *Id.*,¶¶ 19, 24, Exs.14, 20, 21, 24.

---

\*\*\*

We don't show you personalized ads based on sensitive categories like race, religion, sexual orientation, or health.  We don't share information that personally identifies you with advertisers unless you ask us to.[9]

\*\*\*

Google does not sell your personal information.[10]

\*\*\*

We don't sell your personal information to anyone.[11]

\*\*\*

[W]e never sell your personal information to anyone.[12]

\*\*\*

Advertisers do not pay us for personal information.[13]

**Google does not keep this uniform promise**.  Instead, the record evidence shows that billions of times each day, Google sells and shares U.S. account holders' personal information to hundreds of third-party advertisers, independent ad exchanges, social media websites (such as Meta and X), and other participants around the world in Google's "real time bidding" auctions. Order at 12 (citing Shafiq Rep., ¶ 18). As the Court has already held:

> There is evidence before the Court which already shows that Google shares enough information that RTB participants can discern what an account holder is reading online, even when it is on a religious or medical topic; exactly where they are reading it, including the coordinates of an account holder's home or work; and their background, which allows for a detailed, demographic profile of the accountholder. Google cannot run away from the common question of whether it promises its account holders that it would not sell their personal information and, if so, it violates that promise billions of times a day.

Order at 25; *see also* Shafiq Supp., ¶¶ 14-44 (supplementing record with analysis of Class data).

Google RTB is a fully automated process, through which Google uses its own source code that it has embedded on websites or apps visited by a Google account holder (or "user") to instantaneously transmit back to Google an impression containing information about the user and her

---

[9] *Id.*

[10] Google's *Privacy Policy* (from March 21, 2020 to the present). *Id.*,¶ 17, Exs. 20, 21.

[11] Google's *"How Our Business Works"* page, incorporated into Google's ToS, from March 31, 2020, to the present. *Id.*,¶¶ 13-16, Exs. 16-19. *See also* Order at 21, fn. 15.

[12] *How Our Business Works,* Further Caracuzzo Decl.,  Ex. 16.

[13] *Id.*

1    computer – including unique identifiers associated with the user, the device's IP address, the URL of

2    the website or app name being viewed, and the make/model of the user's browser or mobile device –

3    to Google for subsequent sale and sharing through the Google RTB system. Shafiq Rep., ¶ 21.

4    Through no action of the user, Google RTB then packages that impression into a "bid request," which

5    is the standardized way that Google solicits bids from hundreds of potential buyers around the world

6    seeking the opportunity to place an ad ("RTB participants"). *See* Order at 12 (citing Shafiq Rep., ¶¶

7    18, 19; Wilson Rep., ¶ 24). Each bid request consistently includes: (1) information that Google

8    associates with a user's Google account; (2) information that is reasonably capable of identifying the

9    user to RTB participants, including a Google User ID and other information that uniquely identifies

10   the user or their device; and (3) content and contextual information that places the user and their

11   communication into specific ad targeting categories, oftentimes including categories that Google

12   publicly admits are "sensitive." *See, generally,* Order at 12-14 (citing Shafiq Rep., ¶¶ 28-29, 41, 42,

13   46, 78, 88; Wilson Rep., ¶¶ 31, 36, 37, 43, 45-48, 49, 68, 70, 72). This is true for plaintiffs (*see id.*)

14   and for the Class as a whole. Shafiq Supp., ¶¶ 24-27, 35-44.

15            As plaintiffs' experts have further shown – ***and as Google itself concedes*** – the sharing of this

16   information in Google RTB is a uniform process for all active Google U.S. account holders. Shafiq

17   Rep., ¶ 18; Wilson Rep., ¶ 34; *and see* 2/21/24 Hrg. Tr. (ECF 680) at 10-18 (Google conceding RTB

18   process is identical for every one of its billions of daily bid requests). RTB participants can then bid

19   for the opportunity to have a targeted ad delivered to the Class member based on personal information

20   shared in the bid request. Wilson Rep., ¶ 24. RTB participants also use the RTB data to:

21        •    "build 'profiles' of individuals by inferring their demographics, interests, hobbies,
             place of residence, etc." (*id.*, ¶ 31);

22

23        •    link to a user's Google account using Google's unique identifier for that user, or a
             cookie, truncated IP address, the user's current latitude and longitude with
24           accuracy; the model and make of their operating system; and the webpage the user
             is currently viewing (*id.,* ¶ 37);
25

26        •    synchronize RTB data with individual users through cookie matching (*id.*, ¶¶ 43,
             45-48); or
27

28

- match RTB data to individual Google account holders through "user lists".[14] (*id.,* ¶¶ 68, 70, 72).[15]

The information commonly shared and sold by Google through Google RTB is "reasonably capable of being linked to an individual or household." Wilson Rep., ¶ 36. This is not surprising. The "very purpose" of Google RTB's is "to encourage RTB participants to bid on impressions in Google RTB. And, because RTB participants seek to *target* ads to *individuals* based on context . . . the nature of the information being shared and sold needs to facilitate that *individual targeting*." Order at 14 (italics and ellipse in original) (citing Wilson Rep., ¶ 41).

U.S. Google account holders cannot avoid Google's RTB process, even if they attempt to activate Google's user "privacy" settings. Order at 14 (citing Wilson Rep., ¶¶ 101-103, 123). This basic reality is uncontroverted, as the Court recognized in the Order:

> As Google confirmed at the hearing***, there is currently no way for users to stop Google from selling information about their unique IDs, location, and browsing history*** through the billions of RTB bids exchanged every single day with hundreds of RTB participants from around the world.

*Id.* at 25-26 (emphasis supplied) (citing 2/21/24 Hrg. Tr. at 36:7-22). And the Class data Google has produced confirms that Google RTB is essentially unavoidable for any U.S. Google account holder using the internet, given Google RTB's use on millions of websites and apps, including many of the most popular websites visited in the United States. *See* Shafiq Supp., ¶¶ 45-51.

These background facts, all fully supported by the record, demonstrate why class certification under Rule 23(a) and (b)(2) is warranted. All individual U.S. Google account holders must agree to Google's standardized U.S. ToS when creating their accounts. That ToS, together with Google's standardized Privacy Policies and related disclosures, apply generally to all U.S. account holders to form a common contract and common commitment that Google does not and will not share or sell their personal information to anyone outside of Google. *See, supra,* fn. 3-13. The essential element

---

[14] Cookie matching enables an RTB participant to match their cookies with Google's to determine whether an RTB bid request is associated with a user the participant seeks to target, facilitating the creation and maintenance between the participant's cookie and the Google User ID, and allowing for the population of user lists. *See* https://developers.google.com/authorized-buyers/rtb/cookie-guide.

[15] The cited record evidence is set forth in the Order at 14.

1  of Rule 23(b)(2) certification is therefore satisfied. Additionally, Google RTB is a common practice

2  through which U.S. Google account holder information is shared and sold by Google to hundreds of

3  companies trillions of times each day. The information Google shares and sells through RTB, as the

4  evidence also shows, is "reasonably capable of being linked to an individual or household" across the

5  Class, and there is no way for Class members to opt out of the auctions.

6      Rule 23(b)(2)'s requirements are "unquestionably satisfied when," as here, Class members

7  "seek uniform injunctive relief from policies or practices that are generally applicable to the class as

8  a whole." *Parsons v. Ryan*, 754 F. 3d 657, 688 (9th Cir. 2014). As this Court has held, the "question

9  of whether [Google] promises its account holders that it would not sell their personal information"

10  will be "resolved on the basis of Google's standardized disclosures – and therefore plaintiffs' express

11  consent – alone." Order at 25. If granted, plaintiffs' proposed injunctive relief uniformly provides

12  Class members transparency in Google's disclosures as to the nature and extent of account holder

13  personal information shared and sold by Google in RTB auctions, and will give each member of the

14  Class an effective choice to opt out of these auctions. Such an injunction is appropriate as to the Class

15  as a whole, and "would be an important step toward choice, accountability, and transparency" for

16  Class members. *Id.* at 26. Plaintiffs' renewed motion for Rule 23(b)(2) certification should be granted.

17  **III.    LEGAL FRAMEWORK**

18      Rule 23(b)(2) provides that "[a] class action may be maintained if…the party opposing the

19  class has acted or refused to act on grounds that apply generally to the class, so that final injunctive

20  relief or corresponding declaratory relief is appropriate to the class as a whole." *B.K. by next friend*

21  *Tinsley v. Snyder*, 922 F.3d 957, 970-971 (9th Cir. 2019) ("*B.K.*"); *accord Rodriguez v. Google, LLC,*

22  2024 WL 38302 at *10 (N.D. Cal. Jan. 3, 2024). Certification under Rule 23(b)(2) is appropriate

23  "when a single injunction or declaratory judgment would provide relief to each member of the class."

24  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 360 (2011). "These requirements are 'unquestionably

25  satisfied when members of a putative class seek uniform injunctive relief from policies or practices

26  that are generally applicable to the class as a whole.'" *B.K.*, 922 F.3d at 971 (citing *Parsons v. Ryan*,

27  754 F.3d 657, 688 (9th Cir. 2014)).

28      "When a class seeks an indivisible injunction benefitting all its members at once, there is no

reason to undertake a case-specific inquiry into whether class issues predominate or whether class action is a superior method of adjudicating the dispute." *Dukes*, 564 U.S. at 362-63. The Rule 23(b)(2) inquiry "does not require an examination of the viability or bases of the class members' claims for relief, does not require that issues common to the class satisfy a Rule 23(b)(3)-like predominance test, and does not require a finding that all members have suffered identical injuries." *Parsons*, 754 F.3d at 688. "Rather, as the text of the rule makes clear, this inquiry asks only whether 'the party opposing the class has acted or refused to act on grounds that apply generally to the class.'" *Id.* (quoting Rule 23(b)(2)). [16] To obtain certification under Rule 23(b)(2), plaintiffs must describe "the general contours of an injunction that would provide relief to the whole class, that is more specific than a bare injunction to follow the law, and that can be given greater substance and specificity at an appropriate stage in the litigation through fact-finding, negotiations, and expert testimony." *B.K.*, 922 F.3d at 972 (quoting *Parsons,* 754 F.3d at 689 n.35).

Plaintiffs' renewed class certification motion fully satisfies Rule 23(b)(2)'s legal framework.

## IV.     ARGUMENT

Plaintiffs first address the two unresolved issues identified in the Court's Order.

### A.     The Proposed Class is Objectively Defined and Appropriate in Scope

Plaintiffs first respond to the Court's concern that the class to be certified will strike the right balance by being neither "fail safe" (*i.e.,* defined in such a way that qualification for membership does not depend on whether the person has a valid claim), nor overinclusive (that is, potentially inclusive of more than a *de minimis* number of uninjured class members). [17] *See* Order at 8-9.

Plaintiffs' revised class definition accomplishes that balance. Plaintiffs now seek to certify a Class consisting of all individual Google account holders subject to a Google U.S. ToS who have an active Google account. [18] The revised class definition provides objective criteria – the activation and

---

[16] *Accord In re College Athlete NIL Litig*., 2023 WL 7106483 at *6 (N.D. Cal. Sept. 22, 2023).

[17] *See Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC,* 31 F.4th 651, 669 (9th Cir.)*, cert. denied sub nom. StarKist Co. v. Olean Wholesale Grocery Coop., Inc.,* 143 S. Ct. 424 (2022) (citing *Messner v. Northshore Univ. Health System*, 669 F.3d 802, 825 (7th Cir. 2012)).

[18] The prior definition included all individual account holders subject to a Google U.S. ToS whose personal information was sold or shared by Google in RTB after June 28, 2016. *See* Order at 8.

use of a Google account – that allows Class members to easily determine whether they are included in the Class. *See Krommenhock v. Post Foods, LLC*, 334 F.R.D. 552, 567 (N.D. Cal. 2020) ("'[P]laintiffs provide objective criteria that allow class members to determine whether they are included in the proposed class,' and that is sufficient.") (internal citation omitted)); *Day v. GEICO Cas. Co.*, 2022 WL 16556802, at *8 (N.D. Cal. Oct. 31, 2022) (class definition that relies on objective criteria satisfies ascertainability and administrative feasibility concerns). Class members know whether their Google accounts are active but, if there is any doubt, Google's website tells account holders how they can confirm their status  *See, supra*, fn. 2. Google, likewise, can discern which accounts are active, *i.e.*, those that were created and have been active within the last two years. *See, supra,* pp.1-2; Shafiq Rep., ¶¶ 90-91; Wilson Rep., ¶¶ 15, 80-100, 124. Thus, there is no concern that the proposed class definition is "fail safe" or defined in such a way that membership depends on whether the person has a valid claim.

This class definition also does not sweep uninjured Class members within its scope: all Class members must agree to the same, standardized ToS when they activate their Google accounts, and all Class members are subject to the same common set of standardized Privacy Policies and disclosures. *See* Further Caracuzzo Decl., ¶¶ 31-38. Google's RTB practices similarly apply generally to the Class as a whole; Google RTB is pervasive and impacts plaintiffs and Class members in the same way. This means that Google engages in a uniform common course of conduct and there are no unimpacted Class members. The evidence shows this: (1) "Google's RTB protocol is identical for every one of its billions of daily [RTB] bids"; (2) Class member and "plaintiffs' RTB data is uniformly personally identifying" and may be associated with an individual Class member or household; and (3) "as Google confirmed at the hearing, there currently is no way for users to stop Google from selling information about their unique IDs, location, and browsing history through the billions of RTB bids exchanged every single day with hundreds of RTB participants from all around the world." Order at 12 (citing Shafiq Rep., ¶ 18; Wilson Rep, ¶ 34; 2/21/24 Hrg. Tr. at 11-18); Order at 16 (citing, prior to quoted text, Shafiq Rep., ¶¶ 42e, 46-a-g, and Shafiq Reb., ¶ 37); and Order at 25-26 (citing 2/21/24 Hrg. Tr. at 36:7-22); *see also* Shafiq Rep., ¶¶ 90-95; Shafiq Supp., ¶¶ 16-44; Wilson Rep., ¶¶ 101-123.

**B.    The Plaintiff RTB Data is Representative of the RTB Data for the Class**

1.    <u>Plaintiffs Satisfy the Standards for Rule 23(b)(2) Certification</u>

In the Order, the Court found that "[p]laintiffs have demonstrated sufficiently for class certification that [the previously-produced plaintiff RTB data], along with user lists and cookie matching, allows RTB participants to create detailed profiles of individual account holders" and that "[f]or that reason, … [the] named plaintiffs' RTB data is uniformly personally identifying."  Order at 16.[19]  The Court's ruling was based on the state of discovery then in effect: Google had "produced just eight weeks-worth of data about the named plaintiffs," totaling "almost five million records of RTB bid request data shared with hundreds of RTB participants around the world," amounting to "**10 thousand RTB bid requests per-user-per-day**." *Id.* at 15-16 (citing Shafiq Reb., ¶ 37 (emphasis in original)). There was, however, no class-wide RTB data production from Google with which to compare these plaintiff-specific findings. This is because Google refused to produce such data on a class-wide basis. *See* Decl. of Elizabeth C. Pritzker (ECF 546-2), ¶ 6.  Acknowledging that "Google cannot refuse to produce RTB data about other putative class members and then argue that, without this data, plaintiffs cannot meet their commonality burden," the Court found the state of the record at that time to be "insufficiently developed" and directed plaintiffs "to affirmatively demonstrate through expert testimony or otherwise that the RTB data thus far is representative of all putative class members" in this renewed motion. Order at 17.

Google has since produced Class data consisting of ten-minute slices of RTB data involving U.S. Google account holders, drawn from six periods of time between 2021-2023. *See* Further Pritzker Decl., ¶¶ 12, 15, 17; Shafiq Supp., ¶¶ 14-15. With this data, as explained below, plaintiffs satisfy the Court's concerns. Before turning to that analysis, however, it should be noted that plaintiffs' evidentiary showing need not "satisfy a Rule 23(b)(3)-like predominance test" to achieve

---

[19] "As an example, with the limited discovery produced thus far, Professor Shafiq was able to pinpoint the exact coordinates of each named plaintiffs' home and work locations based on the RTB bid within, at most, a three-kilometer error rate. In addition to those locations, RTB participants could tell that the named plaintiffs were looking up religious verses, medical symptoms, gambling applications, and what a Supreme Court justice thought about a recent abortion decision." Order at 15 (citing Shafiq Rep., ¶¶ 42e, 46a-g).

certification under Rule 23(b)(2). *California Coal. for Women Prisoners v. United States*, 2024 WL 1290766, at *10 (N.D. Cal. Mar. 15, 2024) (*citing Parsons*, 754 F. 3d at 688); *see also In Re Yahoo Mail Litig.*, 308 F.R.D. 577, 598-99 (N.D. Cal. 2015) ("a plaintiff does not need to show predominance of common issues or superiority of class adjudication to certify a Rule 23(b)(2) class."). Rather, as this Court previously held, "[r]ule 23(b)(2) permits certification of a class when 'the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.'" Order at 24 (citing *B.K.*, 944 F.3d at 972).

Plaintiffs have substantial evidence to support certification of an injunctive and declaratory relief class under this standard. "Google's RTB is universal[,] . . . its disclosures are generalized" (Order at 24), and there is common, class-wide evidence that Google is selling personal, sensitive, information about its account holders to hundreds of RTB participants worldwide – literally trillions of times each day. This is in direct violation of Google's universal promise to its U.S. account holders that Google "never" has, "does not" and will not sell their personal information. Google's violations are continuing, and these violations adversely affect Class members to this very day. *See* Shafiq Supp., ¶¶ 45-51. Absent the injunctive relief plaintiffs request, Google will continue to share and sell its account holders' personal information to companies around the world through RTB, and account holders will have no mechanism to opt out of Google's RTB practices. Rule 23(b)(2) certification is appropriate and warranted to afford Class members appropriate injunctive relief.

## 2. Google's RTB Shares and Sells Class Members' Personal Information

Based on Prof. Shafiq's analysis of the Plaintiff data set forth in his two prior expert reports, the Court has already found that the "plaintiffs' RTB data is uniformly personally identifying" and that this personal information about the plaintiffs is routinely shared and sold by Google in RTB auctions. Order at 15-16. Prof. Shafiq's analysis of the Class data set forth in his new supplemental report similarly provides a basis for the Court now to find that (i) the Class data also is uniformly personal identifying; (ii) this personal information about the Class also is routinely shared and sold by Google in RTB auctions; and (iii) because the Class data is essentially the same as the Plaintiff data, the Plaintiff data is, in fact, representative of the Class as a whole.

For the plaintiffs only, Google produced limited RTB auction data for eight one-week periods that included almost five million individual RTB bid requests. *See* Shafiq Rep., ¶ 35. Prof. Shafiq first analyzed this data to determine whether there was a common set of data fields present in all of the Plaintiff data, and ultimately found that there were at least 62 data fields commonly included in all of the Plaintiff data. *See id.*, ¶ 41..[20] Prof. Shafiq then analyzed these 62 common data fields to determine what information the fields conveyed to RTB participants and whether this information collectively was personally identifying.[21] *See id.*, ¶¶ 42-88. Having analyzed the information in the fields, along with numerous internal Google documents discussing the fields and other peer-reviewed research, Prof. Shafiq concluded that the information Google conveys to RTB bid participants in RTB auctions is sufficiently specific to allow those participants to identify, associate with, or reasonably link that data to a particular user or household, a conclusion accepted by the Court in the Order. *See* Shafiq Rep., ¶¶ 43-89; Order at 16 ("the Court finds that named plaintiffs' RTB data is uniformly personally identifying.").

Prof. Shafiq also analyzed other aspects of the Plaintiff data, including the number and identities of RTB participants that were receiving the bid data from Google, the countries that the bid data was being sent to, the number of times sensitive URLs were involved, and how many times, on average, each plaintiff's personal information was being sold or shared by Google in RTB auctions. For the eight weeks of data Google produced for the plaintiffs, Prof. Shafiq found that there were at least ███ different companies receiving the bid data located in at least ███ countries, that the companies included some of the largest technology companies in the world (many with first-party relationships with the plaintiffs), that sensitive categories of information were conveyed in more than ███ of the bid requests, and that the plaintiffs were each subject to, on average, more than ███ bid requests

---

[20] Prof. Shafiq discussed many of the 62 common data fields in his report, and a complete list of all 62 data fields was attached as Exhibit B to his rebuttal report. Shafiq Rep., ¶ 42; Shafiq Reb., ¶ 22 and Ex. B. Prof. Shafiq considered a field to be commonly included if it was present 98% of the time or higher. Shafiq Rep., fn. 17.

[21] The information in the 62 common data fields included, among other things, a unique Google User ID, the specific URL of the website or app being visited or used, IP address, ███████ extensive location data, extensive device information, and the language of the site or app being visited or used. *See* Shafiq Rep., ¶ 42.

1    a day. Shafiq Rep., ¶¶ 36-40; Shafiq Reb. ¶ 37.

2         For the Class as a whole, Google produced limited RTB auction data for six ten-minute

3    periods that include almost ▮ billion individual RTB bid requests.[22] *See* Shafiq Supp., ¶ 18. While

4    Google only produced RTB bid data for the plaintiffs while they were signed into their Google

5    accounts, for the Class as whole, Google produced RTB bid data for both signed-in and signed-out

6    U.S. Google account holders. As Prof Shafiq attests, this ultimately is a distinction without a

7    difference, since the Class data still contains the same data fields that were previously produced for

8    the plaintiffs, and the data is still uniformly personally identifying as to both plaintiffs and Class

9    members based on the totality of the information commonly disclosed in the bid requests. *See id.,* ¶¶

10   28-34. Prof. Shafiq conducted the same analysis of the Class data that he previously did for the

11   Plaintiff data. This allowed for a direct comparison between them to test whether the Plaintiff data is

12   representative for the Class.

13        Prof. Shafiq first analyzed the Class data to determine whether the same 62 data fields

14   common in the Plaintiff data were also common in the Class data. He concludes that with four

15   exceptions (none of which impact his ultimate opinion that the data is uniformly personally

16   identifying), the same data fields that are commonly included in the Plaintiff data are also commonly

17   included in the Class data. *See id.*, ¶¶ 24-26.[23] That is, 58 of the 62 fields are commonly included in

18   both the Class data and the Plaintiff data. *Id*. He then analyzed these common data fields to determine

19   what information the fields conveyed to RTB participants and whether this information collectively

20   was sufficiently specific to allow those participants to identify, associate with, or reasonably link that

21   data to a particular user or household.[24] *See id.*, ¶¶ 27, 35-44. Conducting the same analysis that he

22   did for the Plaintiff data (and relying on the same internal Google documents and peer-reviewed

---

[22] When Google produced the Class data in July 2024, it produced the same data fields that it had produced for the plaintiffs. *See* Further Pritzker Decl., ¶ 12, 15, 17.

[23] The four exceptions are for two of the nine location fields (▮▮▮▮▮▮▮▮), which are present ▮▮▮ ▮▮▮▮ of the time, respectively, and for two of the twelve device fields (model and brand), which are present ▮▮▮▮▮▮▮▮ of the time, respectively. *Id.*, ¶ 25.

[24] The information in the common data fields again included, *inter alia*, a unique Google User ID, the specific URL of the website or app visited or used, IP address, ▮▮▮▮▮▮, extensive location data, extensive device information, and the language of the site or app. *See* Shafiq Supp, ¶ 27.

1   research), Prof. Shafiq again concludes that the information Google conveyed to RTB bid participants

2   in the Class data is uniformly sufficiently specific to allow those participants to identify, associate

3   with, or reasonably link that data to a particular user or household. *Id.*.

4        Just as he did with the Plaintiff data, Prof. Shafiq analyzed other aspects of the Class data,

5   including the number and identities of RTB participants receiving bid data from Google, the countries

6   that the bid data was being sent to, the number of times sensitive URLs were involved, and how many

7   times, on average, each Class member's personal information was sold or shared by Google. For the

8   six ten-minute periods of Class data Google produced, Prof. Shafiq finds that there were at least ███

9   different companies receiving the bid data located in at least ███ countries, and that the companies

10  included some of the largest technology companies in the world.  Shafiq Supp., ¶¶ 18, 21-22. These

11  statistics are remarkably consistent with the statistics for the Plaintiff data. Shafiq Rep., ¶¶ 36-40.

12  With respect to sensitive categories of information, in just the one hour of time sampled, categories

13  of sensitive information were conveyed in more than one billion of the Class bid requests. Shafiq

14  Supp., ¶ 23. Finally, while the manner in which Google produced the Class data makes it impossible

15  to determine the number of individual Google account holders in that data, Prof. Shafiq was able to

16  determine that there were at least ███ million signed-in Google account holders represented in the

17  Class data and that, on average, they were each subject to at least ███ bid requests a day; lower than

18  the average for the plaintiffs, but still quite substantial. Shafiq Reb. ¶ 37; Shafiq Supp., ¶ 20.

19       Prof. Shafiq also looked to determine whether there were any material differences in the Class

20  data as between signed-in and signed-out Google U.S. account holders. Prof. Shafiq concludes that

21  there are no material differences between signed-in and signed-out accounts, because all of the same

22  data fields are populated in both sets of Class data at the same percentages. Shafiq Supp., ¶¶ 28-34.

23  This is reflected in the spreadsheet attached as Exhibit C to Prof. Shafiq's Supplemental Report,

24  which lists the common data fields present in the Plaintiff data and the Class data, both for signed-in

25  and signed-out account holders. Additionally, Prof. Shafiq concludes that from Google's perspective,

26  as opposed to the RTB participants receiving the bid requests, there is no difference between the

27  signed-in and signed-out Class data, because Google has the ability to link, and in fact did link,

28  signed-out data with account holders when it produced the Class data here. *Id.*, ¶¶ 32-33.

1    In light of all of the similarities between the Plaintiff data and the Class data summarized

2    above and detailed in Prof. Shafiq's Supplemental Report, Prof. Shafiq opines that the Plaintiff data

3    is in fact representative of the Class as whole, and that the Class data, like the Plaintiff data, is

4    uniformly sufficiently specific to allow RTB bid participants to identify, associate with, or reasonably

5    link that data to a particular user or household. Shafiq Supp., ¶ 34.

6    **C.    Rule 23(a) and (b)(2) Certification is Warranted**

7    Plaintiffs have met their burden for certification of an injunctive and declaratory relief class.

8    The requirements of Rule 23(a) (b)(2) are amply satisfied, and the form of injunctive relief plaintiffs

9    propose – all of which focus on choice, accountability, and transparency – will provide meaningful

10   and appropriate relief to the Class as a whole.

11       1.    Rule 23(a)'s Requirements are Satisfied

12   The Court previously held that plaintiffs satisfied Rule 23(a)'s requirements of numerosity,

13   typicality and adequacy, and the modest change in the class definition from the prior motion does not

14   disturb any of the Court's prior holdings with respect to these three elements of Rule 23(a). The case

15   still involves at least tens, if not hundreds of millions of active U.S. account holders, satisfying

16   numerosity under Rule 23(a)(1). *See* Order at 10 ("Plaintiffs contend…there are potentially 1.4 billion

17   U.S. accounts holders at issue. Google does not dispute this estimate"); Shafiq Supp. ¶ 20. If one

18   extrapolates out the Class data (50 billion bid requests an hour), Google is sharing its U.S. account

19   holders' personal information ▮ million times a minute and ▮ trillion times a day. The "proposed

20   class representatives are, like all putative class members, subject to Google's ToS, its Privacy Policy,

21   and other standardized disclosures" and remain in "active" account status, so typicality is still met

22   under Rule 23(a)(3). Order at 19; Further Caracuzzo Decl., ¶¶ 31-38; Further Pritzker Decl., Exs. 6-

23   12. Adequacy also is satisfied under Rule 23(a)(4). "Named plaintiffs and their counsel have already

24   spent years vigorously litigating discovery. Moreover, plaintiffs' counsel has experience in complex

25   and class action litigation, including privacy class actions." Order at 19; Further Pritzker Decl., ¶ 25.

26   The Court similarly held that, "at least for commonality purposes, Google's standardized

27   disclosures are common proof capable of resolving the question" of whether Google promised its

28   U.S. account holders that it would not share or sell their personal information." Order at 14. That

ruling addressed Rule 23(a)(2)'s commonality requirement, in part. On this renewed Motion, plaintiffs were ordered to address whether there also is evidence common to the Class that the account holder information Google shares and sells in RTB auctions is personally identifying. *See id.* at 2, 15-18. Plaintiffs have shown here that such common evidence exists. As detailed above, Google's RTB protocol, by design and in everyday practice, is identical for every one of its trillions of daily RTB bids, and it impacts all U.S. account holders in common ways. *See* Order at 12; Shafiq Supp., ¶¶ 45-51. Having now analyzed over 120 terabytes of Class data and almost █ billion Class RTB bid requests, Prof. Shafiq attests that all of the trillions of Google's daily RTB bids uniformly contain information that is in fact personally identifying for the Class as a whole. *Id.*, ¶¶ 14-34. Prof. Shafiq confirms there is common class-wide evidence that the information Google commonly shares and sells in RTB auctions is personally identifying for all Google U.S. account holders and that Google and its hundreds of RTB participants around the world can readily identify, associate with, or reasonably link that data to a particular user or household. *Id.*, ¶¶ 35-44. This is how RTB works. This is true irrespective of whether account holders are signed-in or signed-out of their Google accounts when they are searching the internet or using an app. *Id.*, ¶¶ 28-33. The requirement of commonality under Rule 23(a)(2) is thus satisfied.

## 2.    Rule 23(b)(2)'s Requirements are Satisfied

Plaintiffs also have shown that the proposed Class satisfies the requirements of Rule 23(b)(2). Rule 23(b)(2) allows for class treatment and certification of an injunctive relief class where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Rule 23(b)(2); *see also B.K.*, 922 F.3d at 970-971.

Here, as the Court previously held, "Google's disclosures are generalized." Order at 24. These standardized disclosures – Google's ToS, Privacy Policies, and related disclosures – apply generally across the Class to all active U.S. Google account holders to form a common contract and common commitment. *See* fn. 3-13, *supra*. Together, they provide common proof as to the question of whether Google promised its U.S. account holders that it would not share or sell their personal information, as this Court has already held. *See* Order at 11.

Additionally, as this Court has already observed, and as plaintiffs' experts have shown, "Google's RTB is universal." Order at 24. Its "RTB protocol is identical for every one of its billions of daily bids." *Id* at 12 (citing Wilson Rep., ¶34; Shafiq Rep., ¶ 18; 2/21/24 Hrg. Tr. at 10-18 (Google so conceding)). This is by design. RTB is an entirely mechanical, computerized process that operates a billion times a minute, transmitting information about a user's web browsing activity back to Google, that Google then packages into bid requests that it sends to hundreds of RTB participants from around the world, who then send bid responses back to Google as part of an auction process by which the winning RTB participant earns the opportunity to display an advertisement to the user. *See* Wilson Rep., ¶ 24. Although the entire process occurs "faster than the blink of an eye" (Shafiq Rep., ¶ 19), all Class members are subject to Google RTB in the very same way. *See* Shafiq Supp., ¶¶ 34, 45-51. There is no way for users to stop Google from sharing or selling their information through the billions of RTB bids exchanged every day in the RTB auction – Google conceded this fact when the Court considered Plaintiffs' first class certification motion. *See* 2/21/24 Hrg. Tr. at 36:7-22. Moreover, as Prof. Shafiq attests, plaintiffs now have common proof that the Class member data Google uniformly sells and shares in the RTB auction process may constitute "personal information" under California law.[25] Shafiq Supp., ¶¶ 35-44.

Plaintiffs have satisfied Rule 23(b)(2)'s requirements. Plaintiffs challenge "a pattern or practice that is generally applicable to the class as a whole." *Walters v. Reno*, 145 F.3d 1032, 1047 (9th Cir. 1998). And, Google RTB is ongoing – presenting continuing and present adverse effects across the Class. These are precisely the circumstances under which Rule 23(b)(2) certification and class-wide injunctive relief are appropriate. *See, e.g., Brown v. Google, LLC*, 2022 WL 17961497, at *14, *20 (N.D. Cal. Dec. 12, 2022) (certifying (b)(2) class where "plaintiffs' theory of the case was Google collects users' private browsing data after promising not to do so."); *Rodriguez v. Google,*

---

[25] The Court has previously held: "Under California law, personal information is 'information that identifies, relates to, describes, is reasonably capable of being associated with, or could reasonably be linked, directly or indirectly, with a particular consumer or household' including '[i]nternet or other electronic network activity information,' such as 'browsing history, search history, and information regarding a consumer's interaction with an internet website, application, or advertisement.'" Order at 15 (citing Cal. Civ. Code § 1798.140(v)).

*LLC,* 2024 WL 38302, at *10 (N.D. Cal. Jan. 3, 2024) (certifying (b)(2) class seeking deletion of all "SWAA-off data" collected by Google despite promise it would not collect such data from Class members who switched off their WAA and sWAA buttons); *DZ Rsrv. v. Meta Platforms, Inc.*, 2022 WL 912890, at *10 (N.D. Cal. Mar. 29, 2022), *aff'd in part, vacated in part, remanded,* 96 F.4th 1223 (9th Cir. 2024) (certifying (b)(2) class requiring Meta to correct or cease certain alleged misleading advertising practices).

### 3. <u>Plaintiffs' Proposed Injunctive Relief Provides Class-Wide Relief</u>

Plaintiffs also satisfy Rule 23(b)(2)'s requirement that they "'describe[] the general contours' of the class-wide injunctive relief that they seek, 'that is more specific than a bare injunction to follow the law, and that can be given greater substance or specificity at an appropriate stage in the litigation through fact-finding, negotiations, and expert testimony.'" Order at 24 (citing *B.K.*, 922 F.3d at 972 (quoting *Parsons*, 754 F.3d at 689-90, n.35)); *see also Rodriguez*, 2024 WL 38302 at *10 (granting Rule 23(b)(2) certification, also citing *Parsons*, and holding that "Plaintiffs have convincingly identified 'the general contours' of the class-wide injunctive relief they seek").

Consistent with this authority, plaintiffs describe the general contours of the injunctive relief they seek for the Class. Plaintiffs seek an order that Google:

- Cease its false representations that it "will not," does not" and will "never" share with or sell to companies the personal information of its U.S. account holders;

- Truthfully disclose precisely what information it in fact shares and sells with RTB participants and for what purposes;

- Tell U.S. account holders how long Google retains their Google RTB data and how they can request transparency into the personal information that Google shared or sold;

- Provide U.S. account holders with a mechanism they can use to decide whether they do or do not consent to Google's sharing and sale of their personal information to companies in Google RTB;

- Make available to any Class member who requests it a list of what personal information was shared or sold to third parties in Google RTB, and to whom; and

- Offer an effective means for account holders to opt out of Google RTB altogether.

*See* Further Pritzker Decl. ¶¶ 26-27. This injunctive relief, the Court has held, "would be an important

---

step toward choice, accountability and transparency." Order at 26. Plaintiffs' requested declaratory relief – including a judicial declaration that Google's representations in its Privacy Policies, ToS and related disclosures amount to a common contract, that Class members have a right under that contract not to have their personal information shared and sold to third parties, and that Google's RTB practices are unfair, unlawful and deceptive – is entirely complementary to such injunctive relief, and would similarly provide significant Class-wide relief. *See* Further Pritzker Decl. ¶¶ 28-29.

### 4.   The Claims to Be Certified Provide Effective Injunctive Remedies

Rule 23(b)(2) "does not require an examination of the viability or bases of the class members' claims for relief," and "does not require a finding that all members have suffered identical injuries." *Parsons*, 754 F.3d at 688.  Injunctive relief is appropriate under Rule 23(b)(2) when its issuance is "respecting the class as a whole." Fed. R. Civ. P. 23(b)(2); *see also B.K.*, 922 F.3d at 970-971. Here, plaintiffs' requested injunctive relief is logically tied to the claims to be certified, is appropriate to address the continuing violations and class-wide harms plaintiffs allege, and provides important, prospective relief for Class member in ways that satisfy Rule 23(b)(2)'s requirements.

**The Breach of Contract Claim**. Google does not challenge that there is common proof in its ToS, Privacy Policies and related disclosures of its contractual promise that it will not sell or share Class members' personal information outside of Google. This is the precise type and form of evidence that courts look to in assessing whether there is common contract to which Google and all Class members are bound. *See In Re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 610 (9th Cir. 2020) ("*Facebook Tracking*"). Indeed, at the prior class certification hearing, "Google conceded that whether it made a contractual promise not to sell its account holders' personal information is capable of classwide resolution."  Order at 11 (citing 2/21/24 Hrg. Tr. at 0:13-24).

Claims that arise from common form contracts, as here, "are particularly appropriate for class treatment." Newberg on Class Actions, § 3.24 (5th ed.).  Injunctive relief in the form plaintiffs request is an appropriate prospective way to afford class-wide relief on this common contractual claim. That claim, like plaintiffs' other claims, is governed entirely by California law. *See* ECF 92, CCAC, Count I, ¶¶ 339-350, Prayer, ¶¶ E, F; Further Caracuzzo Decl. ¶¶ 32-37. Pecuniary compensation would not afford adequate relief for Google's continuing RTB practices and its ongoing breaches of its

contractual promises to its U.S. account holders. Conversely, an order that would require Google to (1) amend and clarify its standardized contractual disclosures; (2) stop Google from misrepresenting that it never shares or sells account holder personal information in RTB despite its promise to the contrary; (3) stop Google's sharing or selling account holders' personal information in violation of this core contractual promise, and (4) require Google to provide Class members a meaningful opportunity to opt out of RTB would provide effective class-wide relief to remedy these continuing breaches and ongoing class-wide impacts. *See Broomfield v. Craft Brew All., Inc.*, 2018 WL 4952519, at *8 (N.D. Cal. Sept. 25, 2018) (certifying Rule 23(b)(2) class where proposed injunctive relief would enjoin defendant's "uniform policy and practice of misrepresenting on its packaging the brewing location of the Kona Beers")*; Brown*, 2022 WL 17961497 at *1, 20 (granting Rule 23(b)(2) certification of breach of contract and related claims).

**The Privacy Tort Claims.** Plaintiffs also seek Rule 23(b)(2) certification of four privacy tort claims under California law. *See* ECF 92 (Count IV-Invasion of Privacy, ¶¶ 383-397; Count V-Intrusion Upon Seclusion, ¶¶ 399-408; Count IV-Publication of Private Information, ¶¶ 410-425; Count VIII-Breach of Confidence, ¶¶ 417-426, Prayer, ¶¶ E, F). Each claim involves common questions, including whether Class members possess a legally protected privacy interest, whether they maintain a reasonable expectation of privacy, and whether the intrusion is highly offensive to a reasonable person. *See Hernandez v. Hillsides, Inc*., 47 Cal. 4th 272, 287 (2009) (claim for invasion of privacy under the California Constitution); *Facebook Tracking*, 956 F. 3d at 605 (intrusion upon seclusion); *Shulman v. Grp. W. Prods., Inc.*, 18 Cal. 4th 200, 214 (1998) (publication of private information). Plaintiffs' breach of confidence claim requires proof that Class members' private information is "widely published and not confined to a few persons or limited circumstances." *Hill v. NCAA*, 7 Cal. 4th 1, 37 (1994).

Each claim also is subject to common proof. As shown above (at § C.1), there is common proof that Google collects and shares with RTB participants Class members' legally protected "personal information," as that term is defined in California law. This includes the contents of Class members' internet communications, such as the URLs they are visiting, information about their activities and interests, and information that can identify or be associated with the Class member or

her household. Shafiq Supp. ¶¶ 35-44. Such information is obviously "confidential." MTD Order (ECF 233) at 15:2-6.[26] Whether Class members have a reasonable expectation of privacy in their personal information, and whether Google's common practice of sharing and selling that information billions of time each day to hundreds of RTB participants from around the world is highly offensive to a reasonable person, are objective inquiries that also can be answered through common proof. *See* Order at 7-8 ("It is black letter law that whether someone has a reasonable expectation of privacy is an objective, and therefore common, inquiry.") (citing *Shulman*, 18 Cal.4th at 214)); *Opperman v. Path, Inc.*, 2016 WL 3844326, at *11 (N.D. Cal. July 15, 2016) (certifying class for intrusion upon seclusion claim where common proof of class members' "reasonably expectations" of privacy shown through broadly based and widely accepted community norms).

Here, in light of Google's uniform promises that it would not share and sell Class members' personal information, Class members uniformly had a reasonable expectation that Google would keep their information private in accordance with its promises. *See, e.g., Calhoun v. Google*, 113 F.4th 1141, 1150 (9th Cir. 2024) (Google's Chrome Privacy Notice includes an "affirmative statement[ ] that it would not receive [user] information"…"unless you choose to ... turn[ ] on sync," setting an expectation that data would not be collected and stored if sync is not turned on); *Facebook Tracking*, 956 F.3d at 602 ("Facebook set an expectation that logged-out user data would not be collected, but then collected it anyway"); *In re Nickelodeon Cons. Priv. Litig.*, 827 F.3d 262, 294 (3d Cir. 2016) (a reasonable expectation of privacy existed when Nickelodeon promised users that it would not collect information from users, but then did). Proof of these issues is common to the Class (*see* Order at 7-8), using common evidence – Google's standardized ToS, Privacy Policies and related disclosures.

Additionally, insofar as the reasonable expectation of privacy inquiry at this juncture rises or falls on consent, Google's express promises, and its breaches of those promises, are uniform for all Class members and go directly to the issues of consent and reasonable expectations of privacy for

---

[26] *Cf. Riley v. California*, 573 U.S. 373, 395-96 (2014) ("Internet search and browsing history" and "location information"); *Flores-Mendez v. Zoosk, Inc.,* 2021 WL 308543, at *4 (N.D. Cal. Jan. 30, 2021) ("sexual preference[]"); *Stasi v. Inmediata Health Grp*., 501 F. Supp. 3d 898, 915 (S.D. Cal. 2020) (medical information).

injunctive relief purposes **– as this Court has already held**. *See* Order at 25 ("[W]hether Google promised not to share account holders' personal information is a … question … [t]hat will be resolved on the basis of Google's standardized disclosures – and therefore plaintiffs' express consent – alone.") (citing *In re Google Inc. Gmail Litig.*, 2014 WL 1102660, at *19 (N.D. Cal. Mar. 18, 2014)); *accord Calhoun*, 113 F.4th at 1150. Prof. Shafiq's analysis of the Class data also provides common proof that Class members' personal information is both "widely published and not confined to a few persons or limited circumstances" (*Hill*, 7 Cal. 4th at 27),[27] and of such an immense scope and scale as to be highly offensive to a reasonable person. Prof. Shafiq's analysis reveals that for just six, ten-minute periods, Google disclosed its U.S. account holders' personal information to at least ▇ different companies located in ▇ countries almost ▇ billion times, equating to roughly ▇ million disclosures each minute of each day. Shafiq Supp. ¶¶ 18-22. His analysis also reveals the scope and breadth of Google RTB and how unlikely it would be for any Class member using the internet to avoid having their personal information shared or sold by Google in RTB. *See id.*, ¶ 45-51.

Injunctive and corresponding declaratory relief are entirely appropriate remedies to address a common, ongoing practice that violates Class members' personal privacy where, as here, there is no adequate remedy at law for damages. *See, e.g., Katzberg v. Regents of Univ. of Cal.*, 29 Cal. 4th 300, 307 (2002) (Cal. Const. Art. 1, § 1 is self-executing and, like many other constitutional provisions, it "supports an action…for declaratory relief or for an injunction."); *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 802 (N.D. Cal. 2022) (injunctive relief appropriate to remedy invasion of privacy triggered by Meta's ongoing disclosure of plaintiffs' medical information – "precisely the kind of intangible injury that cannot be remedied by damages"); *Brooks v. Thomson Reuters Corp.*, 2021 WL 3621837, at *11 (N.D. Cal. Aug. 16, 2021) (injunctive relief available where there is an invasion of privacy that "can never be fully remedied through damages" and loss of privacy is "irreparable").

An order requiring Google to (1) amend and clarify its standardized contractual disclosures, (2) stop it from misrepresenting what types of user information it shares and sells to outside

---

[27] *See also In re Facebook, Inc. Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d 767, 796 (N.D. Cal. 2019) ("[D]issemination of your private information to tens of thousands of individuals and companies is generally going to be equivalent to making that information 'public.'").

companies in the RTB auctions, and (3) requiring Google to provide Class members a mechanism to opt out of RTB, would provide effective class-wide relief to remedy these ongoing intrusions of Class members' privacy, and the continuing dissemination by Google of their personal information to hundreds of companies billions of times every day. *See, e.g., Rodriguez*, 2024 WL 38302 at *10 (granting Rule 23(b)(2) certification for injunctive relief of invasion of privacy, intrusion upon seclusion, and related claims); *Brown*, 2022 WL 17961497 at *14, *20 (same).

**The CIPA Claim.** The Court has already held that "an injunctive relief class would be appropriate for purposes of plaintiffs' claims under…[the California Invasion of Privacy Act,] CIPA. Order at 26. And, with good reason. Plaintiffs' CIPA claim is supported by common proof that Google allows RTB participants to "read" or "attempt to read" or "learn the contents or meaning of "class member communications as part of the Google RTB process. Shafiq Rep. ¶ 42; Shafiq Reb. ¶¶ 44-47. And, the undisputed proof that Google's actions occurred while the communications were "in transit" is common to all class members. *See* Order at 18.

The CIPA statute, Penal Code § 637.2(b), specifically provides that "any person…may bring an action to enjoin and restrain any violation of this chapter…." *Id.* An order for injunctive relief is an appropriate class-wide remedy, here. Google's conduct has not stopped. Absent an injunction in the form requested, Google will continue to violate Class member's rights under CIPA in the very manner it does so today. These are precisely the circumstances under which this courts grant Rule 23(b)(2) certification for injunctive relief under CIPA. *See Brown*, 2022 WL 17961497 at *1, 20 (granting Rule 23(b)(2) certification for injunctive relief under CIPA); *In re Yahoo Mail Litig.*, 308 F.R.D. at 599 (certifying Rule 23(b)(2) class, under CIPA, for a requested injunction to stop Yahoo from scanning class members' emails and using contents without consent); *see also Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064, 1079 (N.D. Cal. 2023) (noting, without ruling, that Meta's ToS, specifying that California laws applies to disputes between Meta and its users, supports allowing out-of-state plaintiffs to seek all available relief under CIPA).

**The UCL Claim.** Plaintiffs' complaint also asserts a claim for relief under the California Unfair Competition Law (UCL). *See* ECF 92, ¶¶ 372-382. This claim has been held in abeyance, consistent with Judge Koh's directive, at the outset of the litigation, to specify only eight of plaintiffs'

claims to be litigated through trial. *See* ECF 83 at 1; ECF 91 at 2. The Order specifically found "plaintiffs' motion for an injunctive relief class under Rule 23(b)(2) would be appropriate for purposes of plaintiffs' claims under the UCL." Order at 26. The Court was well within its discretion to bring this claim out of abeyance, and the Court can, and should, afford Class members appropriate injunctive relief under the UCL now. The UCL covers a wide range of conduct. It "borrows" violations from other laws making them independently actionable as unfair competitive practices, embracing "anything that can properly be called a business practice and that at the same time is forbidden by law" (*Cel–Tech Comms., Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal.4th 163, 180 (1999)), and it lists injunctive relief as one of the UCL's core equitable remedies. *See* Cal. Bus. & Prof. § 17203; *Colgan v. Leatherman Tool Grp., Inc.*, 135 Cal. App. 4th 663, 702 (2006), as modified on denial of reh'g ("A trial court has broad authority to enjoin conduct that violates section 17200.")

Here, an order providing for plaintiffs' requested injunctive relief (*see* § C.3 above) would go a long way toward remedying Google's misleading and unfair RTB practices, providing effective relief to the Class as a whole. *See Brooks v. Thomson Reuters Corp.*, 2023 WL 9316647, at *16 (N.D. Cal. Aug. 10, 2023) (certifying Rule 23(b)(2) class under the UCL, finding: "In whatever form injunctive relief takes – whether creating a public campaign to inform Californians that CLEAR exists, enhancing its…Privacy Policy for individuals to easily request opt-out and remove their information from CLEAR, reaching out to individuals for consent, or shutting down the CLEAR platform altogether – 'a proposed injunction addressing those policies and practices would…prescribe a standard of conduct applicable to all class members.'"); *Brown*, 2022 WL 17961497 at *1, *20 (certifying Rule 23(b)(2) class for UCL and related claims, finding that injunctive relief that would "…preclude Google from collecting further private browsing information; …require Google to delete the private browsing information that it previously collected…; [and]… require Google to remove any services that were developed or improved with the private browsing information…" would provide "important changes to reflect transparency in the system.").

## V.    CONCLUSION

For all the foregoing reasons, the Court should certify the Class and Class claims under Rule 23(a) and (b)(2), appoint plaintiffs as representatives of the Class, and appoint Class Counsel.

1

2      DATED:  November 8, 2024                    Respectfully submitted,

3                                                  **PRITZKER LEVINE LLP**

4                                                  By: */s/ Elizabeth C. Pritzker*

5                                                  Elizabeth C. Pritzker (Cal. Bar No.146267)
                                                   Jonathan K. Levine (Cal. Bar No. 220289)
6                                                  Bethany Caracuzzo (Cal. Bar No. 190687)
                                                   Caroline Corbitt (Cal Bar No. 305492)
7                                                  1900 Powell Street, Ste. 450
8                                                  Emeryville, CA 94602
                                                   Tel.: (415) 692-0772
9                                                  *ecp@pritzkerlevine.com*
                                                   *jkl@pritzkerlevine.com*
10                                                 *bc@pritzkerlevine.com*
                                                   *ccc@pritzkerlevine.com*
11

12                                                 *Interim Class Counsel*

13                                                 **BLEICHMAR FONTI & AULD LLP**
                                                   Lesley Weaver (Cal. Bar No.191305)
14                                                 Anne K. Davis (Cal. Bar No. 267909)
                                                   Joshua D. Samra (Cal. Bar No. 313050)
15                                                 1330 Broadway, Suite 630
16                                                 Oakland, CA 94612
                                                   Tel.: (415) 445-4003
17                                                 *lweaver@bfalaw.com*
                                                   *adavis@bfalaw.com*
18                                                 *jsamra@bfalaw.com*

19
                                                   **SIMMONS HANLY CONROY LLP**
20                                                 Jason 'Jay' Barnes (admitted *pro hac vice*)
                                                   An Truong (admitted *pro hac vice*)
21                                                 112 Madison Avenue, 7th Floor
                                                   New York, NY 10016
22                                                 Tel.: (212) 784-6400
23                                                 *jaybarnes@simmonsfirm.com*
                                                   *atruong@simmonsfirm.com*

24
                                                   **DICELLO LEVITT LLP**
25                                                 David A. Straite (admitted *pro hac vice*)
                                                   485 Lexington Avenue, Suite 1001
26                                                 New York, NY 10017
                                                   Tel.: (212) 784-6400
27                                                 Tel: (646) 993-1000
28                                                 *dstraite@dicellolevitt.com*

---

1

2      James Ulwick (admitted pro hac vice)
       Ten North Dearborn Street, Sixth Floor
3      Chicago, IL 60602
       Tel.: (312) 214-7900
4      julwick@dicellolevitt.com

5
       **COTCHETT PITRE &**
6      **MCCARTHY, LLP**
       Nanci E. Nishimura (Cal. Bar No. 152621)
7      Brian Danitz (Cal Bar. No. 247403)
       Karin B. Swope (admitted *pro hac vice*)
8      840 Malcolm Road
       Burlingame, CA 94010
9      Tel.: (650) 697-6000
       nnishimura@cpmlegal.com
10     bdanitz@cpmlegal.com
       kswope@cpmlegal.com
11

12     **BOTTINI & BOTTINI, INC.**
13     Francis A. Bottini, Jr. (Cal. Bar No. 175783)
       Aaron P. Arnzen (Cal. Bar. No. 218272)
14     7817 Ivanhoe Ave., Ste. 102
       La Jolla, CA 92037
15     Tel.: (858) 914-2001
       fbottini@bottinilaw.com
16     aarnzen@bottinilaw.com

17

18     *Counsel for Plaintiffs and the Proposed Class*

19

20

21

22

23

24

25

26

27

28

1

## CERTIFICATE OF SERVICE

2

      I hereby certify that on November 8, 2024, I caused to be electronically filed the foregoing

3

document with the Clerk of the Court using the ECF system which sent notification of such filing

4

to all counsel of record.

5

6

                                        */s/ Bethany Caracuzzo*
                                        Bethany Caracuzzo

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28