Elizabeth C. Pritzker (Cal. Bar No. 146267)
Jonathan K. Levine (Cal. Bar No. 220289)
Bethany Caracuzzo (Cal. Bar No. 190687)
Caroline Corbitt (Cal Bar No. 305492)
**PRITZKER LEVINE LLP**
1900 Powell Street, Suite 450
Emeryville, CA 94608
Tel.: (415) 692-0772
Fax: (415) 366-6110
*ecp@pritzkerlevine.com*
*jkl@pritzkerlevine.com*
*bc@pritzkerlevine.com*
*ccc@pritzkerlevine.com*

*Interim Class Counsel*

[Additional Counsel Appear on Signature Page]

**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

| | |
|---|---|
| *IN RE GOOGLE RTB CONSUMER PRIVACY LITIGATION*<br><br>This document applies to all actions. | **CASE NO. 4:21-CV-02155-YGR-VKD**<br><br>**FURTHER DECLARATION OF ELIZABETH C. PRITZKER IN SUPPORT OF PLAINTIFFS' RENEWED MOTION FOR CLASS CERTIFICATION**<br><br>Judge: Hon. Yvonne Gonzalez Rogers<br>Date: TBD<br>Time: TBD<br>Courtroom: 1, 4th Floor |

I, Elizabeth C. Pritzker, hereby declare as follows:

1. I am a partner of Pritzker Levine LLP, and an attorney licensed in the State of California and duly admitted to practice before this Court. On August 3, 2021, I was appointed to serve as Interim Class Counsel on behalf of plaintiffs. *See* ECF 77. This declaration is made in support of Plaintiffs' Renewed Motion for Class Certification. I have personal knowledge of the facts stated herein and, if called upon to do so, could and would testify competently thereto.

## PLAINTIFFS' RENEWED CLASS CERTIFICATION MOTION

2. On July 14, 2023, plaintiffs moved to certify a class and class claims under Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure, to appoint the seven plaintiffs as representatives of the class, and to appoint class and lead class counsel. *See* ECF 545-546.

3. After full briefing and a hearing on the motion, on April 4, 2024, the Court denied with prejudice plaintiffs' motion under Rule 23(b)(3) and denied without prejudice plaintiffs' motion under Rule 23(b)(2), finding that plaintiffs "meet many of the requirements of class certification under Rule 23(b)(2)." April Order at 2 (ECF 690). The Court also found that plaintiffs had met the requirements of Rule 23(a). *Id*. at 10-19.

4. The Court directed plaintiffs to address in "the next round of briefing," "two unresolved issues: (1) whether the class, as defined, is fail safe and, if so, whether striking "personal information" from the decision in an overbroad class; and (2) whether the RTB data produced thus far [for the plaintiffs] is representative of the class as a whole." April Order at 2.

5. Plaintiffs' Renewed Motion addresses the Court's issues identified in the April Order and sets forth the factual, legal, and evidentiary basis for certification of a class and class claims under Rule 23(a) and (b)(2).

6. In the April Order, the Court instructed the parties that "[w]here the Court has ruled on an argument, the parties shall not reassert it at the next round of briefing." April Order at 2. In accordance with the Court's instruction, in their Renewed Motion, plaintiffs only address numerosity, commonality, typicality, and adequacy to the limited extent necessary in light of the modified Class definition and the new Class data Google produced in July of 2024.

THE REVISED CLASS DEFINITION

7. In their 2023 class certification motion, plaintiffs sought certification of a class defined as: <u>All individual Google account holders subject to a Google United States Terms of Service whose personal information was sold or shared by Google in its Real Time Bidding ("RTB") auctions after June 28, 2016</u>. *See* April Order at 8.

8. The Court found that there were two potential issues with this proposed class definition. First, that it might be a "fail safe" class, and second, that striking "personal information" from the definition to fix the "fail safe" issue might result in an overbroad class. April Order at 2.

9. Plaintiffs now seek certification of a Rule 23(b)(2) class defined as: <u>All individual Google account holders subject to a Google United States Terms of Service who have an active Google account</u>.[1] This revised class definition removes any concern that the class definition is "fail safe" because class membership does not depend upon whether a member has a valid claim. The Class here is subject to an objective inquiry that all Class members can readily discern for themselves. An "active" Google account is an account that has been used at any time in the past two years.[2] Likewise, Google can objectively discern from its own records those accounts that are "active" versus those that are not. Google informs account holders if an account is "inactive" for nonuse, and "reserves the right to delete an inactive Google Account and its activity and data", with appropriate notice, if the account has been "inactive across Google for at least two years." *Id.*

10. Defining the class in this way also does not present overbreadth concerns. As plaintiffs' technical experts (Professors Zubair Shafiq and Christopher Wilson) have already shown, and as further demonstrated by Professor Shafiq's Supplemental Class Certification Expert Report ("Shafiq Supp."), submitted herewith, Google RTB is pervasive; it is uniformly implemented across the Class and it impacts plaintiffs and Class members in the same way. There are no unimpacted Class members. "Google's RTB protocol is identical for every one of its billions of daily [RTB] bids;"

---

[1] This will be referred to more simply as "all active Google U.S. account holders."

[2] A Google account "that is in use is considered active." *See* https://support.google.com/accounts/answer/12418290?hl=en&ref_topic=7189311&sjid=12474238374228731571-NC. An inactive Google account is "an account that has not been used within a 2-year period." *Id.*

Class member and "plaintiffs' RTB data is uniformly personally identifying"; and "as Google confirmed at the [class certification] hearing, there currently is no way for users to stop Google from selling information about their unique IDs, location, and browsing history through the billions of RTB bids exchanged every single day with hundreds of RTB participants from all around the world." April Order at 12.

## CLASS DISCOVERY

11. With respect to the second issue raised by the Court in the April Order, whether the RTB data produced for the plaintiffs is representative of the class as a whole, this too has now been resolved.

12. On December 18, 2023, plaintiffs served Google with Request for Production No. 141 ("RFP 141"), which sought the production of all Google RTB data fields similar to the data fields previously produced by Google for the plaintiffs, but for all Google account holders subject to a U.S. Terms of Service for six ten-minute time intervals on May, 10, 2021, November 16, 2021, March 23, 2022, September 15, 2022, February 10, 2023, and August 19, 2023.

13. On January 17, 2024, Google responded, asserting a host of objections to RFP 141 and refusing to produce any responsive documents or data. On February 2, 2024, plaintiffs moved to compel Google to respond to RFP 141, and that dispute was pending before Magistrate Judge DeMarchi when the Court issued the April Order.

14. On April 5, 2024, the day after the April Order was issued, Magistrate Judge DeMarchi set a hearing date on the RFP 141 dispute. *See* ECF 691.

15. In light of the April Order and Magistrate Judge DeMarchi's order setting a hearing date on the RFP 141 dispute, the parties met and conferred and Google ultimately agreed to withdraw its objections to RFP 141 and to produce the data requested, which was memorialized in a stipulation filed with the Court on April 22, 2024. *See* ECF 698.

16. On April 29, 2024, the parties advised the Court that Google would be producing data in response to RFP 141, but needed until July 15, 2024 to locate and produce that data due to its volume. *See* ECF 703. The parties proposed a new schedule for briefing a renewed class certification motion, which was adopted by the Court on May 1, 2024. *See* ECF 704.

17. On July 15, 2024, Google produced more than 120 terabytes of data responsive to RFP 141 for six ten-minute time intervals of class-wide RTB bid data spread over a three-year period (2021-2023) (the "Class data"). Google made further productions of Class data on August 7, 2024 and September 17, 2024.

18. In light of the further productions of Class data after July 15, 2024, and the sheer volume of data Google ultimately produced, the case schedule was extended again to allow plaintiffs' expert, Professor Zubair Shafiq, to download and analyze the data. *See* ECF 736-737.

19. Based on Professor Shafiq's analysis, the Class data produced by Google includes billions of RTB bid requests for Google U.S. account holders. Shafiq Supp., ¶ 17 (attached as **Ex. 3** hereto).

20. Professor Shafiq has conducted a detailed analysis of the Class data similar to the analysis he conducted of the plaintiff data that is set forth in his July 14, 2023 Expert Class Certification Report (ECF 545-5). Professor Shafiq's analysis of the Class data, which is discussed in detail in his Supplemental Report, directly answers the Court's inquiry, reaffirming that the RTB data at issue are uniformly personally identifying for the plaintiffs and for the Class as a whole and that the RTB data produced for the plaintiffs is in fact representative of the Class as a whole. Shafiq Supp., ¶¶ 14-44 (**Ex. 3** hereto).

### MATERIALS SUBMITTED WITH PLAINTIFFS' RENEWED MOTION

21. <u>Google's Representations, Terms Of Service And Privacy Policies</u>:  The core representations by Google to its U.S. account holders that Google does not share or sell their personal information are excerpted and complied in the accompanying Further Declaration of Bethany Caracuzzo in Support of Plaintiffs' Renewed Motion for Class Certification, filed concurrently herewith.

22. <u>Expert Reports</u>:  In addition to Professor Shafiq's new Supplemental Report, in their Renewed Motion, plaintiffs continue to rely extensively on the expert reports previously prepared by Professors Shafiq and Wilson in connection with the 2023 class certification motion. For the convenience of the Court, the four prior expert reports of Professors Shafiq and Wilson are attached

herewith as exhibits, along with Professor Shafiq's new Supplemental Report. True and correct copies of these expert reports are attached hereto as follows:

    a. **Exhibit 1** hereto is a true and correct copy of the July 14, 2023 Expert Class Certification Report of Professor Zubair Shafiq (previously filed as ECF 545-5, and re-submitted by Google with revised and/or additional redactions at ECF 558-5 (re-redacted), ECF 558-25 (re-sealed) [3]).

    b. **Exhibit 2** hereto is a true and correct copy of the November 29, 2023 Expert Class Certification Rebuttal Report of Professor Zubair Shafiq (previously filed as ECF 616-5, and re-submitted by Google at ECF 643-12 (re-redacted) and ECF 643-13 (re-sealed).

    c. **Exhibit 3** hereto is a true and correct copy of the November 8, 2024 Supplemental Expert Class Certification Report of Professor Zubair Shafiq. Professor Shafiq's updated curriculum vitae is attached as Exhibit A to his report. A list of materials he relied upon for his analysis and the preparation of his report is attached as Exhibit B, and Exhibit C is a chart comparing common data fields identified in all of the data productions analyzed by Professor Shafiq in connection with his three reports.

    d. **Exhibit 4** hereto is a true and correct copy of the July 14, 2023 Expert Class Certification Report of Professor Christopher Wilson (previously filed as ECF 545-6, and re-submitted by Google at ECF 558-6 (re-redacted) and ECF 558-26 (re-sealed)).

    e. **Exhibit 5** hereto is a true and correct copy of the November 29, 2023 Expert Class Certification Rebuttal Report of Professor Christopher Wilson (previously filed as ECF 616-65, and re-submitted by Google at ECF 643-10 (re-redacted) and ECF 643-11 (re-sealed)).

23. <u>Plaintiffs' Declarations</u>: The Court already has found that the plaintiffs are typical of

---

[3] Where Google submitted re-redacted/ re-sealed versions of plaintiffs' evidence, plaintiffs submit those re-submitted versions here, so that what is sealed now comports with the parties' Joint Omnibus Sealing Motion (ECF 684, 688-9) and Order thereon (ECF 706). Unredacted versions of **Exs. 1-5** are lodged separately under seal herewith.

1  the proposed Class under Rule 23(a)(3) and have demonstrated their adequacy under Rule 23(a)(4).
2  *See* April Order at 19. The modest change in the Class definition, to limit the class only to active
3  Google U.S. account holders, does not change the Court's findings with respect to the plaintiffs
4  because, as set forth in the declarations identified below, each plaintiff continues to be an active
5  Google account holder, each plaintiff continues to use the internet, and each plaintiff expects to
6  continue to be a Google account holder in the future. For injunctive relief purposes, this is sufficient
7  to demonstrate typicality. Declarations from each of the plaintiffs are attached hereto as follows:

    a. **Exhibit 6** hereto is a true and correct copy of the October 30, 2024 Declaration of Plaintiff Terry Diggs. In her declaration, Ms. Diggs attests that she continues to be an active Google account holder, continues to use the internet, and expects to continue to be a Google account holder in the future.

    b. **Exhibit 7** hereto is a true and correct copy of the October 24, 2024 Declaration of Plaintiff Rethena Green. In her declaration, Ms. Green attests that she continues to be an active Google account holder, continues to use the internet, and expects to continue to be a Google account holder in the future.

    c. **Exhibit 8** hereto is a true and correct copy of the October 24, 2024 Declaration of Plaintiff John Kevranian. In his declaration, Mr. Kevranian attests that he continues to be an active Google account holder, continues to use the internet, and expects to continue to be a Google account holder in the future.

    d. **Exhibit 9** hereto is a true and correct copy of the October 28, 2024 Declaration of Plaintiff Salvatore Toronto. In his declaration, Mr. Toronto attests that he continues to be an active Google account holder, continues to use the internet, and expects to continue to be a Google account holder in the future.

    e. **Exhibit 10** hereto is a true and correct copy of the October 24, 2024 Declaration of Plaintiff Christopher Valencia. In his declaration, Mr. Valencia attests that he continues to be an active Google account holder, continues to use the internet, and expects to continue to be a Google account holder in the future.

1    f.  **Exhibit 11** hereto is a true and correct copy of the October 24, 2024 Declaration of
2        Plaintiff Kimberley Woodruff. In her declaration, Ms. Woodruff attests that she
3        continues to be an active Google account holder, continues to use the internet, and
4        expects to continue to be a Google account holder in the future.
5    g.  **Exhibit 12** hereto is a true and correct copy of the October 28, 2024 Declaration of
6        Plaintiff Tara Williams. In her declaration, Ms. Williams attests that she continues to
7        be an active Google account holder, continues to use the internet, and expects to
8        continue to be a Google account holder in the future.

9  24. Each plaintiff has consistently and zealously represented the interests of the Class by
10 reviewing pleadings, responding to written discovery, producing documents and ESI, working with
11 counsel, and keeping themselves apprised of the litigation and its progress.  Additionally, all of them
12 testified at deposition. Excerpts of the plaintiffs' deposition testimony are already in the record, and
13 demonstrate that each plaintiff is typical and adequate. *See* Pritzker Decl. (ECF 546-2), Exs. 6-11.
14 All should be appointed as Class Representatives in this Action.

15 25. Plaintiffs also ask that the Court appoint Elizabeth Pritzker, Lesley Weaver, Jay
16 Barnes, David Straite, Nanci Nishimura, and Francis Bottini Jr. as Class Counsel, with Ms. Pritzker
17 to serve as Lead Class Counsel.  The Court previously found: "[P]laintiffs' counsel has experience in
18 complex and class action litigation, including privacy class actions. Google does not dispute this."
19 April Order at 19. Law firm resumes detailing the experience of plaintiffs' proposed Class Counsel
20 were filed with the prior class certification motion, and can be found at ECF 546-28 through 546-33.

PLAINTIFFS' PROPOSED RELIEF

22 26. Plaintiffs have previously described the general contours of the injunctive relief they
23 seek for the Class. *See* April Order at 24.  In general, plaintiffs seek an order that Google:
24   a.  Cease its false representations that it "will not," does not" and will "never" share with
25       or sell to companies the personal information of its U.S. account holders;
26   b.  Truthfully disclose precisely what information it in fact shares and sells with RTB
27       participants and for what purposes;
28

     c.   Tell U.S. account holders how long Google retains their Google RTB data and how they can request transparency into the personal information that Google shared or sold;

     d.   Make available to any Class member who requests it a list of what personal information was shared or sold to third parties in Google RTB, and to whom;

     e.   Provide U.S. account holders with a mechanism they can use to decide whether they do or do not consent to Google's sharing and sale of their personal information to companies in Google RTB; and

     f.   Offer an effective means for account holders to opt out of Google RTB altogether.

27. Each of these requested forms of injunctive relief, the Court has already held, "would be an important step toward choice, accountability and transparency." April Order at 26.

28. Plaintiffs' complaint seeks specified declaratory relief, including in the form of an order finding the following, along with all other forms of declaratory relief the Court finds appropriate:

     a.   Google breached the contractual rights of its users;

     b.   Google's actions violation California's Unfair Competition Law;

     c.   Google's actions violated Art. I, § 1of the California Constitution, Right to Privacy;

     d.   Google's actions constitute an intrusion upon seclusion;

     e.   Google's actions constitute publication of private information; and

     f.   Google's actions violated California's Invasion of Privacy Act; and

     g.   Plaintiffs have suffered privacy and economic harm.

*See* ECF 92, Prayer, ¶ E, at 130. The complaint similarly asserts that Google's U.S. ToS "expressly adopt[s] California substantive law, including California's definition of personal information. *Id.*, ¶ 347; *see also* Further Caracuzzo Dec. ¶¶ 31-37, and evidence cited therein.

29. A judicial declaration in the form plaintiffs request, and that includes a declaratory order that Google's representations in its Privacy Policies, ToS and related disclosures amount to a common contract, that Class members have a right under that contract not to have their personal information shared and sold to third parties, and that Google's RTB practices are unfair, unlawful and deceptive, is entirely complementary with the injunctive relief plaintiffs seek and, would, if

granted, provide significant Class-wide relief.

PLAINTIFFS' PROPOSED TRIAL PLAN

30. This case is suitable for a trial to determine liability, proof of plaintiffs' individual damages, and injunctive and associated declaratory relief for the Class as a whole.

31. California law applies to each of plaintiffs' individual legal claims as well as to each claim for which class certification for injunctive and declaratory relief under Rule 23(b)(2) is being requested. The Class claims to be tried on a class-wide injunctive relief basis are for: (1) breach of contract; (2) breach of confidence: (3) invasion of privacy: (4) intrusion upon seclusion: (5) publication of private facts: (6) violations of the California Information Privacy Act (CIPA), Cal. Pen. Code § 631; and (7) for violations of the California Unfair Competition Law (UCL), Cal. Bus. & Prof. Code § 17200.[4]

32. Plaintiffs have requested a jury trial on all claims that are triable to a jury (*see* ECF 92 at 130), which covers all legal claims asserted in the operative complaint except for plaintiffs' claim for violations of the UCL, which may be triable to the Court alone.

33. California law applies to each claim that will be tried, because Google uniformly adopts California law in its contracts (Google's ToS, Privacy Policies and related documents) with its U.S. account holders and proposed Class members. *See* Further Caracuzzo Decl., ¶¶ 31-37 and exhibits thereto. This allows for a manageable liability trial on all claims triable to the jury, as jurors will be instructed on a single state's law – California – and that same law will be applied to all claims of the plaintiffs as well as to those of all proposed Class members.

34. Jurors also will be shown a uniform set of representations, all of which are applicable to plaintiffs and all proposed Class members, in the form of Google's ToS, its Privacy Policies, and its related representations in its Google account holder agreements, in which Google promises that it does not share or sell class members' personal or sensitive information with anyone outside of

---

[4] *See* ECF 92, Complaint, Count I-Breach of Contact, ¶¶ 339-350; Count IV-Invasion of Privacy, ¶¶ 383-397; Count V-Intrusion Upon Seclusion, ¶¶ 399-408; Count IV-Publication of Private Information, ¶¶ 410-425; Count VIII-Breach of Confidence, ¶¶ 417-426; Count VIII-CIPA, ¶¶ 428-438; Count III-UCL ¶¶ 372-382, Prayer, ¶¶ E, F.

1  Google. This means that there are a core set of common representations and contractual promises for jurors to consider with respect to all claims, all plaintiffs, and all proposed Class members.

35.  Similarly, at trial, plaintiffs will present expert testimony and evidence that Google's RTB auctions are a fully automated process that operates in materially the same way at all times, and that involves Google sharing in bid requests with third parties the same common core set of information about plaintiffs and Class members and their computers. *See, e.g.,* Shafiq Rep. at ¶¶ 28-35-43, 46; Shafiq Supp. ¶¶ 14-34. Given the entirely automated nature of Google's RTB auctions, the testimony and evidence to be presented to jurors and the Court will be common to all plaintiffs and all Class members.

36.  The core question of law and fact that jurors will need to determine – whether the plaintiff and Class member user data Google shares and sells in the automated Google RTB auctions is "personal information" under Google's contracts and California law – is common across the Class. This question necessarily will be decided based on the same evidence and testimony, and with respect to the same law, for all proposed Class members as it will for the individual plaintiffs.

37.  Plaintiffs and plaintiffs' experts will provide representative trial testimony about their experiences and the common impact of Google's sharing and selling their user data in Google's RTB auctions. Given Google RTB's fully-automated nature, such testimony will be representative of the experiences and impact of Google RTB on Class members generally. Plaintiffs also will provide individual and expert testimony to prove up their individual damages.

38.  Based on the above, as well as plaintiffs' counsel's trial experience, plaintiffs estimate a class liability trial, and trial of plaintiffs' individual damages claims, may be completed in a single proceeding comprised of ten (10) trial days (exclusive of jury selection), to be divided evenly between plaintiffs and Google.

39.  To streamline the trial, plaintiffs will seek to reach agreement with Google on certain stipulated facts in advance of trial. In accordance with this Court's Standing Order Re: Pretrial Instructions in Civil Cases, plaintiffs also will seek to reach agreement with Google on issues affecting the conduct of trial, including such matters as the authenticity of documents produced by either party to the litigation, joint proposed jury instructions, a joint proposed verdict form, and a joint

preliminary statement of the case.

40. Plaintiffs and Class members' UCL claim *(see* ECF 92, Complaint, Count III-UCL ¶¶ 372-382) and their requested declaratory and injunctive relief remedies as to all asserted claims *(see id.*, Prayer ¶¶ E and F, at 130) can be tried to the Court, either in conjunction with or at the conclusion of any jury trial, in accordance with the Court's preference on this issue.

41. Consistent with this Court's Standing Order Re: Pretrial Instructions in Civil Cases, at least fourteen (14) days prior to the Pretrial Conference, plaintiffs will lodge proposed Findings of Fact and Conclusions of Law on material issues related to plaintiffs' requested injunctive and declaratory relief. At that time, or at such other time as the Court may direct, plaintiffs also will propose for the Court's appointment, an independent third-party responsible for verifying that any injunctive relief awarded by the Court has been implemented by Google in a timely and reasonable manner.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on this 8th day of November 2024 in Emeryville, California.

*/s/ Elizabeth C. Pritzker*
Elizabeth C. Pritzker