1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

| | |
|---|---|
| *IN RE GOOGLE RTB CONSUMER PRIVACY LITIGATION* | **Case No. 4:21-CV-02155 YGR (VKD)** |
| | **[PROPOSED] ORDER GRANTING PLAINTIFFS' RENEWED MOTION FOR CLASS CERTIFICATION AND APPOINTMENT OF CLASS REPRESENTATIVES AND CLASS COUNSEL** |
| *This document applies to all actions.* | |

Plaintiffs Christopher Valencia, John Kevranian, Terry Diggs, Kimberley Woodruff, Rethena Green, Salvatore Toronto, and Tara Williams move the Court under Federal Rule of Civil Procedure 23 ("Rule 23") for an Order (1) certifying this action as a class action, (2) appointing plaintiffs as representatives of the class, and (3) appointing Elizabeth Pritzker of Pritzker Levine LLP, Lesley Weaver of Bleichmar Fonti & Auld LLP, Jay Barnes of Simmons Hanly Conroy LLC, David Straite of DiCello Levitt LLP, Nanci Nishimura of Cotchett Pitre & McCarthy, LLP, and Francis Bottini, Jr. of Bottini & Bottini, Inc. as class counsel, with Ms. Pritzker to serve as lead class counsel.

Plaintiffs seek to certify a nationwide class defined as: <u>All individual Google account holders subject to a Google United States Terms of Service who have an active Google account</u>. Plaintiffs move for certification of the following legal claims, all arising under California law: (1) breach of contract, (2) breach of confidence, (3) invasion of privacy, (4) intrusion upon seclusion, (5) publication of private facts, (6) for violations of the California Information Privacy Act ("CIPA"), Cal. Penal Code § 630 *et seq*, and (7) for violations of the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq*.

Upon consideration of all papers filed in support of and in opposition to plaintiffs' motion, the parties' oral arguments at the hearing on the motion, and good cause appearing, **IT IS HEREBY ORDERED** that plaintiffs' motion is **GRANTED** for the reasons set forth below.

## I.    BACKGROUND

On July 14, 2023, plaintiffs moved to certify a differently defined class under Rules 23(b)(2) and (b)(3).[1] Following extensive briefing by the parties and a hearing on the motion in February 2024, on April 4, 2024, the Court denied the motion with prejudice under Rule 23(b)(3) and without prejudice under Rule 23(b)(2), finding that while plaintiffs had met many of the requirements for class certification under Rules 23(a) and (b)(2), there were two unresolved issues plaintiffs needed to address in a renewed motion before class certification could be granted: (1) whether the class, as

---

[1] The class in the earlier motion was defined as follows: All individual Google account holders subject to a Google United States Terms of Service whose personal information was sold or shared by Google in its RTB auctions after June 28, 2016. *See* Dkt. No. 546 at vii, Plaintiffs' Motion for Class Certification.

1    defined, was fail safe and, if so, whether striking "personal information" from the definition would

2    result in an overbroad class; and (2) whether the RTB data produced up to that point was

3    representative of the class as a whole. Dkt. No. 690 at 2, April 4, 2024 Order ("April Order").

4        With respect to the Rule 23(a) elements, the Court found that: (i) plaintiffs had satisfied

5    numerosity under Rule 23(a)(1); (ii) there were at least two common questions under Rule 23(a)(2);

6    (iii) the named plaintiffs' claims were typical of the class as a whole under Rule 23(a)(3); and (iv)

7    the named plaintiffs and their counsel were adequate under Rule 23(a)(4). April Order at 10-19. The

8    Court instructed the parties that "[w]here the Court has ruled on an argument, the parties shall not

9    reassert it at the next round of briefing." *Id.* at 2.

10       Following the April Order, the parties met and conferred and Google ultimately produced six

11   ten-minute intervals of RTB bid data from 2021, 2022, and 2023 for all Google accounts subject to a

12   U.S. Terms of Service. (the "Class data"). *See* Dkt. No. 750-3, Further Declaration of Elizabeth

13   Pritzker ("Pritzker Decl."), ¶ 17. The Class data includes billions of bid requests sent out by Google

14   to RTB participants. *See* Dkt. Nos. 750-8 (sealed)/ 750-9 (redacted): Supplemental Expert Class

15   Certification Report of Prof. Zubair Shafiq ("Supp. Shafiq Rep."), ¶ 17. Prof. Shafiq, who submitted

16   two expert reports in connection with plaintiffs' prior class certification motion and who analyzed

17   the RTB bid data produced by Google for the named plaintiffs (the "Plaintiff data"), has conducted

18   the same analysis of the Class data as he did of the Plaintiff data. As set forth in his Supplemental

19   Expert Report, Prof. Shafiq opines that the Class data is essentially the same as the Plaintiff data in

20   all material respect and therefore, the Plaintiff data is representative of the Class as a whole. Supp.

21   Shafiq Rep., ¶¶ 14-34.

22       Together with the Class data, Prof. Shafiq's new analysis, and a revised class definition that

23   plaintiffs contend addresses the Court's concerns expressed in the April Order, plaintiffs filed a

24   renewed motion for class certification under Rules 23(a) and (b)(2), seeking certification of a

25   nationwide class of all current Google U.S. account holders with an active Google account for seven

26   claims, all of which arise under California law. The Court addresses plaintiffs' renewed motion

27   below.

28

[PROPOSED] ORDER GRANTING PLAINTIFFS' RENEWED MOTION FOR CLASS CERTIFICATION

## II.   LEGAL FRAMEWORK

A class action is "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013). "Before certifying a class, the trial court must conduct a rigorous analysis to determine whether the party seeking certification has met the prerequisites of Rule 23." *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 588 (9th Cir. 2012) (quotation marks omitted). The rigorous analysis that a court must conduct requires "judging the persuasiveness of the evidence presented" for and against certification and "resolv[ing] any factual disputes necessary to determine whether" the requirements of Rule 23 have been satisfied. *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 982-83 (9th Cir. 2011). A "district court must consider the merits if they overlap with the Rule 23(a) requirements." *Id.* (citations omitted).

The party moving for certification first must show that the four requirements of Rule 23(a) are met. Specifically, Rule 23(a) requires a showing that: (1) the class is so numerous that joinder of all members is impracticable; (2) common questions of law or fact as to the class exist; (3) the claims or defenses of the representative parties are typical of those of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a).

The moving party must then show that the class can be certified based on at least one of the grounds in Rule 23(b). *See* Fed. R. Civ. P. 23(b). Relevant here, Rule 23(b)(2) permits certification of a class when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."

## III.   CLASS CERTIFICATION

Plaintiffs seek to certify a class consisting of all individual Google account holders subject to a Google U. S. Terms of Service who have an active Google account. They move to do so under Rule 23(b)(2) for the following California law claims: (1) breach of contract, (2) breach of confidence, (3) invasion of privacy, (4) intrusion upon seclusion, (5) publication of private facts, (6) for violations of the CIPA, and (7) for violations of the UCL.

1

2      **A.      Rule 23(a)**

3          **1.      Class Definition**

4          The class definition in plaintiffs' prior class certification motion (*see* fn. 1) raised a question

5   as to whether that class, as it was defined in the motion, was a fail safe class. The Court thus directed

6   plaintiffs, in any renewed class certification motion, to address "whether the class, as defined, is fail

7   safe and, if so, whether striking 'personal information' from the [definition] would result in an

8   overbroad class." April Order at 2. Plaintiffs' renewed class certification motion instead proposes a

9   different class definition which, plaintiffs contend, strikes the right balance by being neither "fail

10  safe" (i.e., defined in such a way that qualification for membership does not depend on whether the

11  person has a valid claim), nor overinclusive (that is, potentially inclusive of more than a de minimis

12  number of uninjured class members). *See Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods*

13  *LLC,* 31 F.4th 651, 669 (9th Cir.).

14         Plaintiffs' new class definition satisfies the governing law of this District by providing

15  objective criteria – the activation and use of a Google account – that allows class members to easily

16  determine whether they are included in the class. *See, e.g., Krommenhock v. Post Foods, LLC*, 334

17  F.R.D. 552, 567 (N.D. Cal. 2020) ("'[P]laintiffs provide objective criteria that allow class members

18  to determine whether they are included in the proposed class,' and that is sufficient.") (internal

19  citation omitted)); *accord Day v. GEICO Cas. Co.*, 2022 WL 16556802, at *8 (N.D. Cal. Oct. 31,

20  2022) (class definition that relies on objective criteria satisfies ascertainability and is administrative

21  feasibility concerns). Class members know whether their Google accounts are active and can readily

22  confirm their account status on Google's website. Thus, there is no longer any concern that the class

23  definition is "fail safe" or defined in such a way that membership depends on whether the person has

24  a valid claim.

25         Plaintiffs' new class definition also does not result in an overbroad class because it does not

26  sweep uninjured class members within its scope. All class members must agree to the same,

27  standardized Terms of Service when they activate their Google accounts, and all class members are

28  subject to the same common set of standardized Privacy Policies and disclosures. April Order at 11.

1   Google has "conceded that whether it made a contractual promise not to sell its account holders'

2   personal information is capable of classwide resolution." *Id*.

3          Google's RTB practices are also pervasive and apply generally to the class as a whole. The

4   evidence before the Court confirms that Google engages in a uniform common course of conduct

5   impacting all class members in the same way: (1) "Google's RTB protocol is identical for every one

6   of its billions of daily [RTB] bids" (April Order at 12); (2) class member and "plaintiffs' RTB data is

7   uniformly personally identifying" (*id*. at 16); (3) "as Google confirmed at the prior class certification

8   hearing, there currently is no way for users to stop Google from selling information about their unique

9   IDs, location, and browsing history through the billions of RTB bids exchanged every single day with

10  hundreds of RTB participants from all around the world" (*id*. at 26); and (4) Google RTB is ubiquitous

11  across the internet, being used on 15.6 million websites and more than 1.6 million apps in the United

12  States, including some of the most popular websites and apps. Supp. Shafiq Rep., ¶¶ 47-50. In light

13  of these facts, Prof. Shafiq opines that any Google U.S. account holder with an active account who

14  used the internet over the past two years almost certainly was subject to and impacted by Google's

15  RTB auction practices. *Id*., ¶¶ 46-51.

16         The Court concludes that plaintiffs' revised class definition is not fail safe and does not result

17  in an overbroad class.

18              **2.      Numerosity**

19         The class proposed must be so numerous that joinder of all members individually would be

20  impracticable. Fed. R. Civ. P. 23(a)(1). The Court previously found that the numerosity requirement

21  under Rule 23(a)(1) had been satisfied because there were potentially 1.4 billion U.S. Google

22  accounts at issue. April Order at 10. The revised class definition, limited to active U.S. Google

23  accounts, still satisfies the numerosity requirement because there are tens if not hundreds of millions

24  of active Google accounts subject to a U.S. Terms of Service. Supp. Shafiq Rep., ¶ 20.

25              **3.      Commonality**

26         Commonality requires "questions of law or fact common to the class." Fed. R. Civ. P.

27  23(a)(2). To satisfy this requirement, the common question must be of "such nature that it is capable

28  of class-wide resolution – which means that the determination of its truth or falsity will resolve an

issue that is central to the validity of each of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). "[F]or purposes of Rule 23(a)(2)[,] even a single common question will do." *Id.* at 359 (quotations and brackets omitted). Commonality has been "construed permissively, and all questions of fact and law need not be common to satisfy the rule." *Ellis*, 657 F.3d 981 (cleaned up).

In their prior class certification motion, plaintiffs proposed three common questions: whether: (1) Google promised not to share or sell class members' personal or sensitive information with or to third parties; (2) Google offered for sale and/or sold class members' personal or sensitive information in Google RTB auctions; and (3) Google's conduct contravenes societal norms and is highly offensive to a reasonable person. April Order at 10. The Court concluded then that two of these questions (the first and the third) were common questions because they were capable of being resolved based on common proof. *Id.* at 11, 18. As to the second question, whether Google offered for sale and/or sold class members' personal or sensitive information in Google RTB auctions, the Court found that there was common proof with respect to the named plaintiffs because the "named plaintiffs' RTB data is uniformly personally identifying," but that plaintiffs had not yet demonstrated that this common proof for the named plaintiffs was representative of the class as a whole. *Id.* at 11-18. The Court thus directed plaintiffs, in any renewed class certification motion, to address the issue of "whether the RTB data produced thus far is representative of the class as a whole." *Id.* at 2.

In their renewed class certification motion, plaintiffs have now shown that such common evidence exists and that the RTB data produced for the named plaintiffs is representative of the class as a whole. Having analyzed over 120 terabytes of Class data and billions of class RTB bid requests, Prof. Shafiq opines that all the billions of Google's RTB bids uniformly contain information that is sufficiently specific to allow those participants to identify, associate with, or reasonably link that data to a particular user or household for the class as a whole. Supp. Shafiq Rep., ¶¶ 35-44. Prof. Shafiq's analysis confirms there is common class-wide evidence that the information Google commonly shares and sells in RTB auctions is sufficiently personally identifying for all Google account holders and that Google and its hundreds of RTB participants around the world can readily associate that information with an individual U.S. account holder or her household**.** *See id.*, ¶¶ 14-44. This is true

irrespective of whether account holders are signed in or out of their Google accounts when they are searching the internet or using an app. *Id*., ¶¶ 28-44. Because the Class data is essentially the same as the Plaintiff data in all material respects, Prof. Shafiq also opines that the Plaintiff data is representative of the class as whole. *Id*., ¶ 34. The Court thus concludes that with respect to plaintiffs' second proposed common question, this too is now capable of being resolved based on common proof.

### 4. Typicality

"The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class." *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2020) (citation omitted). "The typicality requirement looks to whether the claims of the class representatives [are] typical of those of the class, and [is] satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. 2010) (citation omitted) (alterations in original), *abrogated on other grounds by Rodriquez Diaz v. Garland*, 53 F.4th 1189 (9th Cir. 2022). The requirement is "permissive" and the representative's claims need only be "reasonably co-extensive with those of absent class members." *Id*. (quotation marks and citation omitted).

The Court previously found that the typicality requirement was not disputed by Google and had been met. April Order at 19. Plaintiffs' revised class definition does not alter that conclusion. The class is now limited to active Google U.S. account holders, and all the plaintiffs have submitted declarations attesting to the fact that they are active Google U.S. account holders and continue to use the internet and be subject to Google's RTB auction practices. *See* Further Pritzker Decl., Exs. 6-12. This evidence is sufficient to demonstrate typicality under the new class definition.

### 5. Adequacy

For adequacy, Rule 23 requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This requires inquiry into whether named plaintiffs and their counsel have any conflicts of interest with other class members, and whether plaintiffs and their counsel will prosecute the action vigorously on behalf of the class. *Staton v.*

1    *Boeing Co.*, 327 F. 3d 938, 957 (9th Cir. 2003). The Court previously found that the adequacy

2    requirement was met and not disputed by Google (*see* April Order at19) and nothing that has

3    happened since the April Order was issued undermines that finding.

4        **B.    Rule 23(b)(2)**

5        Rule 23(b)(2) permits certification of a class when "the party opposing the class has acted or

6    refused to act on grounds that apply generally to the class, so that final injunctive relief or

7    corresponding declaratory relief is appropriate respecting the class as a whole." To obtain certification

8    under Rule 23(b)(2), plaintiffs must describe "the general contours of an injunction that would

9    provide relief to the whole class, that is more specific than a bare injunction to follow the law, and

10   that can be given greater substance and specificity at an appropriate stage in the litigation through

11   fact-finding, negotiations, and expert testimony." *B.K. v. Snyder*, 922 F.3d 957, 972 (9th Cir. 2019)

12   (quoting *Parsons v. Ryan*, 754 F.3d 657, 689 n. 35 (9th Cir. 2014)). "When a class seeks an indivisible

13   injunction benefitting all its members at once, there is no reason to undertake a case-specific inquiry

14   into whether class issues predominate or whether class action is a superior method of adjudicating

15   the dispute." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 362-3 (2011). "[A]lthough common

16   issues must predominate for class certification under Rule 23(b)(3), no such requirement exists under

17   23(b)(2)[;] it is sufficient that "class members complain of a pattern or practice that is generally

18   applicable to the class as a whole." *Walters v. Reno*, 145 F.3d 1032, 1047 (9th Cir. 1998). The Rule

19   23(b)(2) inquiry "does not require an examination of the viability or bases of the class members'

20   claims for relief, does not require that issues common to the class satisfy a Rule 23(b)(3)-like

21   predominance test, and does not require a finding that all members have suffered identical injuries."

22   *Parsons*, 754 F.3d at 688.

23        Plaintiffs seek both injunctive and declaratory relief, as generally described in the Further

24   Pritzker Declaration. *See* Dkt. No. 750-3 at ¶¶ 26-29. The Court has already found that certification

25   of "an injunctive class under Rule 23(b)(2) is appropriate" because "Google's RTB is universal and

26   its disclosures are generalized" and "plaintiffs describe the general contours of the relief sought."

27   April Order at 24. The Court has also already found that "an injunctive relief class under Rule 23(b)(2)

28   would be appropriate for purposes of plaintiffs' claims under the UCL and CIPA." *Id.* at 26.

1    The Court addresses below plaintiffs' remaining claims for breach of contract, breach of
2    confidence, invasion of privacy, intrusion upon seclusion, and publication of private facts as well as
3    plaintiffs' requested declaratory relief, all of which arise under California law.

4                    **1.        Breach of Contract**

5    At the first class certification hearing, "Google conceded that whether it made a contractual
6    promise not to sell its account holders' personal information is capable of classwide resolution."
7    April Order at 11. Claims that arise from common form contracts, as here, "are particularly
8    appropriate for class treatment." <u>Newberg on Class Actions</u>, § 3.24 (5th ed.).  Injunctive relief in the
9    form plaintiffs request is an appropriate prospective way to afford class-wide relief on this common
10   contractual claim. Pecuniary compensation does not afford adequate relief for Google's continuing
11   RTB practices and its alleged ongoing breaches of its contractual promises to its U.S. account holders.
12   An order that would require Google to (i) amend and clarify its standardized contractual disclosures,
13   (ii) stop misrepresenting how it uses account holder personal information in RTB, (iii) stop sharing
14   or selling account holders' personal information in violation of its contractual promise, and (iv)
15   provide account holders a meaningful opportunity to opt out of RTB, would provide effective class-
16   wide relief to remedy these continuing breaches and ongoing class-wide impacts. *See, e.g., See*
17   *Broomfield v. Craft Brew All., Inc.*, 2018 WL 4952519, at *8 (N.D. Cal. Sept. 25, 2018) (certifying
18   Rule 23(b)(2) class where proposed injunctive relief would enjoin defendant's "uniform policy and
19   practice of misrepresenting on its packaging the brewing location of the Kona Beers")*; Brown v.*
20   *Google, LLC*, 2022 WL 17961497, at *1, 20 (N.D. Cal. Dec. 12, 2022) (granting Rule 23(b)(2)
21   certification of injunctive relief class for plaintiffs' breach of contract and related claims).

22   The breach of contract claim also does not raise any individualized issues with respect to
23   consent. As the Court noted in the April Order, the question of "whether Google promised not to
24   share account holders' personal information . . . will be resolved on the basis of Google's standardized
25   disclosures – and therefore plaintiffs' express consent – alone. *See In re Gmail*, 2014 WL 1102660
26   at *19 (positing that for privacy claims sounding in breach of contract, only contractual disclosures,
27   not extrinsic evidence, are relevant)." April Order at 25. The Court thus finds that Rule 23(b)(2)
28   certification would also be appropriate for plaintiffs' breach of contract claim.

1

### 2.    Privacy Claims

2    Plaintiffs also seek Rule 23(b)(2) certification of their four tort privacy claims, all of which

3 arise under California law. At their core, each involves common core questions. These include

4 whether class members possess a legally protected privacy interest, whether they maintain a

5 reasonable expectation of privacy, and whether the intrusion is highly offensive to a reasonable

6 person. *See, e.g., Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 287 (2009) (describing elements of

7 claim for invasion of privacy under the California Constitution); *In re Facebook, Inc. Internet*

8 *Tracking Litig.*, 956 F. 3d 589, 605 (9th Cir. 2020) (describing elements of intrusion upon seclusion

9 claim); *Shulman v. Grp. W. Prods., Inc.*, 18 Cal. 4th 200, 214 (1998) (describing elements of

10 publication of private information claim). Plaintiffs' breach of confidence claim requires proof that

11 class members' private information is "widely published and not confined to a few persons or limited

12 circumstances." *Hill v. NCAA*, 7 Cal. 4th 1, 37 (1994).

13    Each privacy claim is subject to common proof. Plaintiffs have shown that there is common

14 proof that Google collects and shares with RTB participants class members' legally protected

15 "personal information," as that term is defined in California law. This includes the contents of class

16 members' internet communications, such as the URLs they are visiting, information about their

17 activities and interests, and information that can identify or be associated with the class member or

18 her household. Supp. Shafiq Rep. ¶¶ 27, 35-44. Such information is obviously "confidential." Dkt.

19 No. 233, MTD Order, at 15:2-6. Whether class members have a reasonable expectation of privacy in

20 their personal information, and whether Google's common practice of sharing and selling that

21 information billions of time each day to hundreds of RTB participants from around the world is highly

22 offensive to a reasonable person, are objective inquiries that also can be answered through common

23 proof.  *See* April Order at 7-8 ("It is black letter law that whether someone has a reasonable

24 expectation of privacy is an objective, and therefore common, inquiry."); *Opperman v. Path, Inc.*,

25 2016 WL 3844326, at *11 (N.D. Cal. July 15, 2016) (certifying class for intrusion upon seclusion

26 claim where common proof of class members' "reasonably expectations" of privacy shown through

27 broadly based and widely accepted community norms).

28

Here, in light of Google's uniform promises that it would not share and sell class members' personal information, class members uniformly had a reasonable expectation that Google would keep their information private in accordance with its promises. *See, e.g.*, *Facebook Tracking*, 956 F.3d at 602 ("Facebook set an expectation that logged-out user data would not be collected, but then collected it anyway."); *In re Nickelodeon Cons. Priv. Litig.*, 827 F.3d 262, 294 (3d Cir. 2016) (holding that a reasonable expectation of privacy existed when Nickelodeon promised users that it would not collect information from website users, but then did). Proof of these issues is common to the Class (*see* April Order at 7-8), and is based on common evidence in the form of Google's standardized contractual disclosures.

Insofar as the reasonable expectation of privacy inquiry at this juncture rises or falls on consent, Google's express promises, and its breaches of those promises, are uniform for all class members and go directly to the issues of consent and reasonable expectations of privacy for injunctive relief purposes – as this Court has already held. *See* April Order at 25. Prof. Shafiq's analysis of the Class data also provides common proof that class members' personal information is both "widely published and not confined to a few persons or limited circumstances" (*Hill*, 7 Cal. 4th at 27),[2] and of such an immense scope and scale as to be highly offensive to a reasonable person. Supp. Shafiq Rep. ¶¶ 14-23. Prof. Shafiq's analysis also reveals the scope and breadth of Google RTB and how unlikely it would be for any class member using the internet to ever be able to avoid having his or her personal information shared or sold by Google in an RTB auction. *Id.*, ¶¶ 45-51.

Injunctive and corresponding declaratory relief are appropriate remedies to address a common, ongoing practice that invades class members' personal privacy where, as here, there is no adequate remedy at law for damages. *See, e.g., Katzberg v. Regents of Univ. of Cal.*, 29 Cal. 4th 300, 307 (2002) (Cal. Const. Art. 1, § 1 is self-executing and, like many other constitutional provisions, it "supports an action…for declaratory relief or for an injunction."); *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 802 (N.D. Cal. 2022) (injunctive relief is an appropriate way to remedy invasion

---

[2] *See also Facebook Consumer Priv.*, 402 F. Supp. 3d at 796 ("[D]issemination of your private information to tens of thousands of individuals and companies is generally going to be equivalent to making that information 'public.'").

of privacy triggered by Meta's allegedly ongoing disclosure of plaintiffs' medical information – which "is precisely the kind of intangible injury that cannot be remedied by damages"); *Brooks v. Thomson Reuters Corp.*, 2021 WL 3621837, at *11 (N.D. Cal. Aug. 16, 2021) (injunctive relief may be available where there is an invasion of privacy that can never be fully remedied through damages" and loss of privacy is "irreparable").

An order that would require Google to (i) amend and clarify its standardized contractual disclosures, (ii) stop misrepresenting how it uses account holder personal information in RTB, (iii) stop sharing or selling account holders' personal information in violation of its contractual promise, and (iv) provide account holders a meaningful opportunity to opt out of RTB would provide effective class-wide relief to remedy these ongoing intrusions of Class members' privacy, and the continuing dissemination by Google of their personal information to hundreds of companies billions of times every day. *See, e.g., Rodriguez v. Google, LLC*, 2024 WL 38302 at *10 (N.D. Cal. Jan. 3 2024) (granting Rule 23(b)(2) certification for injunctive relief of invasion of privacy, intrusion upon seclusion, and related claims); *Brown*, 2022 WL 17961497, at *14, *20 (same).The Court thus finds that Rule 23(b)(2) certification is appropriate for plaintiffs' four privacy claims.

### 3. Declaratory Relief

The Court further finds that Plaintiffs' requested declaratory relief – including a judicial declaration that Google's representations in its Privacy Policies, ToS and related disclosures amount to a common contract, that Class members have a right under that contract not to have their personal information shared and sold to third parties, and that Google's RTB practices are unfair, unlawful and deceptive – is complementary to Plaintiffs' requested injunctive relief and would similarly provide significant Class-wide relief. *See* Further Pritzker Decl. ¶¶ 28-29.

## IV. CONCLUSION

For the foregoing reasons, plaintiffs' motion for class certification under Rules 23(a) and (b)(2) is **GRANTED**. The Court:

- Certifies a nationwide class defined as: All individual Google account holders subject to a Google United States Terms of Service who have an active Google account;

- Certifies the following class California law claims: (1) breach of contract, (2) breach

of confidence, (3) invasion of privacy, (4) intrusion upon seclusion, (5) publication of private facts, (6) for violations of the CIPA, and (7) for violations of the UCL;

- Appoints plaintiffs Christopher Valencia, John Kevranian, Terry Diggs, Kimberley Woodruff, Rethena Green, Salvatore Toronto, and Tara Williams as class representatives; and

- Appoints Elizabeth Pritzker, Lesley Weaver, Jay Barnes, David Straite, Nanci Nishimura, and Francis Bottini, Jr. as class counsel, with Ms. Pritzker to serve as lead class counsel.

**IT IS SO ORDERED.**

Dated: _____, 2025

_____
Hon. Yvonne Gonzalez Rogers
United States District Court Judge