COOLEY LLP
WHITTY SOMVICHIAN (SBN 194463)
(wsomvichian@cooley.com)
AARTI REDDY (SBN 274889)
(areddy@cooley.com)
KYLE C. WONG (SBN 224021)
(kwong@cooley.com)
REECE TREVOR (SBN 316685)
(rtrevor@cooley.com)
ANUPAM DHILLON (SBN 324746)
(adhillon@cooley.com)
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111-4004
Telephone:    +1 415 693 2000
Facsimile:    +1 415 693 2222

Attorneys for Defendant
GOOGLE LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| In re Google RTB Consumer Privacy Litigation, | Master File No. 4:21-cv-02155-YGR-VKD |
|---|---|
| | **GOOGLE LLC'S OPPOSITION TO PLAINTIFFS' RENEWED MOTION FOR CLASS CERTIFICATION AND APPOINTMENT OF CLASS REPRESENTATIVES AND CLASS COUNSEL** |
| This Document Relates to: *all actions* | |
| | Date: March 28, 2025 Time: 9:00 am |
| | **REDACTED VERSION OF DOCUMENT SOUGHT TO BE FILED UNDER SEAL** |

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ........................................................................................................... 1

II.  FACTUAL & PROCEDURAL BACKGROUND ............................................................ 2

III. LEGAL STANDARD .................................................................................................... 4

IV.  ARGUMENT ................................................................................................................. 5

  A.  The RTB data produced to date confirms that the Plaintiff data is not representative of the class as a whole. ...................................................................... 5

    1.  A significant portion of the putative class data omits the pseudonymous identifiers that are the premise of Plaintiffs' claims. ......... 5

    2.  The majority of putative class data does not involve cookie matching, in contrast to the Plaintiffs data. ................................................ 10

    3.  Many putative class members enabled privacy settings that limit the information in their RTB data, making them unlike Plaintiffs who never utilized such settings. .............................................................................. 11

    4.  The putative class data shows there is no common question whether "contents" of communications were shared through RTB for purposes of Plaintiffs' CIPA claim. .......................................................... 13

    5.  Plaintiff's expert cannot replicate his purported analysis of the Plaintiffs' locations for any putative class members and his opinions are misleading as a whole. ............................................................ 14

  B.  The Court should disregard Prof. Shafiq's opinions as unsupported and misleading. ...................................................................................................... 17

  C.  Plaintiffs' class definition is not viable. ................................................................ 18

V.   CONCLUSION ............................................................................................................ 19

FIRM NAME
ATTORNEYS AT LAW
OFFICE ADDRESS

i

OPPOSITION TO RENEWED MOTION FOR
CLASS CERTIFICATION
CASE NO. 4:21-CV-02155-YGR-VKD

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

5

*In re Apple iPhone Antitrust Litig.*,
   2022 WL 1284104 (N.D. Cal. Mar. 29, 2022)..............................................................4

6

7

*Brown v. Google LLC*,
   685 F. Supp. 3d 909 (N.D. Cal. 2023) ..............................................................13, 14

8

*Ellis v. Costco Wholesale Corp.*,
   657 F.3d 970, 982–83 (9th Cir. 2011)..............................................................4

9

10

*In re Facebook, Inc. Internet Tracking Litig.*,
   956 F.3d 589 (9th Cir. 2020)..............................................................13

11

*Graham v. Noom*,
   533 F. Supp. 3d 823, 833 (N.D. Cal. 2021) ..............................................................13

12

13

*In re Graphics Processing Units Antitrust Litig.*,
   253 F.R.D. 478 (N.D. Cal. 2008)..............................................................9

14

15

*Griffith v. TikTok, Inc.*,
   2024 WL 4308813 (C.D. Cal. Sept. 9, 2024)..............................................................16

16

17

*Griffith v. TikTok, Inc.*,
   2024 WL 4874556 (C.D. Cal. Oct. 22, 2024) ..............................................................2, 18

18

*Griffith v. TikTok, Inc.*,
   2024 WL 5279224 (C.D. Cal. Dec. 24, 2024) ..............................................................15

19

20

*Hanon v. Dataproducts Corp.*,
   976 F.2d 497 (9th Cir. 1992)..............................................................12

21

*Heeger v. Facebook, Inc.*,
   2019 WL 7282477 (N.D. Cal. Dec. 27, 2019) ..............................................................17

22

23

*In re Lenovo Adware Litig.*,
   2016 WL 6277245 (N.D. Cal. Oct. 27, 2016)..............................................................14

24

25

*McKinnon v. Dollar Thrifty Auto. Grp., Inc.*,
   2015 WL 4537957 (N.D. Cal. July 27, 2015) ..............................................................9

26

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*,
   31 F.4th 651 (9th Cir. 2022) ..............................................................4, 17, 18

27

28

*RJ v. Cigna Health & Life Ins. Co.*,
   2024 WL 1107826 (N.D. Cal. Feb. 12, 2024) ..............................................................4

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

ii

**OPPOSITION TO RENEWED MOTION FOR**
**CLASS CERTIFICATION**
**CASE NO. 4:21-CV-02155-YGR-VKD**

*Robbins v. Phillips 66 Co.*,
    343 F.R.D. 126 (N.D. Cal. 2022) ............................................................................... 4

*In re Zynga Privacy Litig.*,
    750 F.3d 1098 (9th Cir. 2014) ................................................................................. 13

**Statutes**

Fed. R. Civ. P. 23 .................................................................................................. *passim*

Cooley LLP
Attorneys at Law
San Francisco

iii

Opposition to Renewed Motion for
Class Certification
Case No. 4:21-cv-02155-YGR-VKD

## I.    INTRODUCTION

In its April 2024 order denying class certification (the "Denial Order," ECF No. 690), the Court made clear that to certify an injunctive relief class, Plaintiffs must demonstrate that "the RTB data[1] produced thus far is representative of the class as a whole." Denial Order at 16. Despite ample opportunity to try to meet this burden—including Google's production of a massive dataset for putative class members in accordance with the sampling method Plaintiffs specifically requested—Plaintiffs still fall far short.

Plaintiffs' renewed motion for class certification (the "Motion," ECF No. 750-1) promises that "the Class data is essentially the same as the Plaintiff data," Mot. at 11, but this blithe generalization glosses over significant disparities that undercut Plaintiffs' claim and preclude class certification. As compared to the Plaintiff data, multiple categories of data that are the foundation of Plaintiffs' case are missing from much of the broader dataset for the putative class. Unlike the Plaintiff data, much of the broader dataset lacks the "pseudonymous identifiers" that Plaintiffs claim are a principal reason why RTB data allegedly constitutes "personal information." Unlike the Plaintiff data, the broader dataset shows that "cookie matching," another key premise of Plaintiffs' claims, never took place in most instances. And unlike Plaintiffs, many putative class members took advantage of various privacy-related settings that significantly reduced the extent of information contained in their RTB bid requests. Google disputes that any aspect of the data involving the Plaintiffs supports their individual claims, but regardless, these findings confirm that the data the Court previously considered for the Plaintiffs is ***not*** "representative of the class as a whole" under their own theories.

Plaintiffs' arguments to the contrary rest almost exclusively on the purported findings of their expert Prof. Zubair Shafiq, who assures the Court that "the Plaintiff data and the Class data are essentially the same for the purposes of this case and, therefore, the Plaintiff data is in fact representative of the Class as a whole." Suppl. Rep. of Prof. Zubair Shafiq ("Shafiq Suppl. Rep.")

---

[1] "RTB" refers to Google's real-time bidding process, the functionality of which is explained in Google's Opposition to Plaintiffs' first Motion for Class Certification, ECF No. 546.  ECF No. 583-4 at 2-3. "RTB data" refers to the information contained in bid requests that are generated and sent to prospective advertisers when a user visits a website that participates in Google RTB. *See id.*

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

OPPOSITION TO RENEWED MOTION FOR
CLASS CERTIFICATION
CASE NO. 4:21-CV-02155-YGR-VKD

¶ 34, ECF No. 750-8. The analysis that purportedly supports this assertion, however, is incomplete, haphazard, and misleading. Among other glaring issues, Prof. Shafiq treated certain critical data fields as containing information when they plainly do not, and he simply ignores other fields because they undermine his claim about the allegedly hyper-granular location information in RTB data. While these issues are troubling, they are not surprising given that another federal court recently found that Prof. Shafiq engaged in "a deeply flawed analysis" that "contained numerous serious issues." *Griffith v. TikTok, Inc.*, 2024 WL 4874556, at *1, 2 (C.D. Cal. Oct. 22, 2024).

In sum, Plaintiffs fail to meet the burden imposed by the Court's Denial Order to show that their data is "representative of the class as a whole," the Motion fails to establish commonality under Rule 23(a), and the Court should now deny class certification with prejudice.

## II.    FACTUAL & PROCEDURAL BACKGROUND

The Motion marks the second time that Plaintiffs have sought class certification. When they last moved to certify a class, the seven Plaintiffs and prospective class representatives argued that information about them allegedly shared through RTB satisfied both Rule 23(a) and the requirements for injunctive and damages classes under Rules 23(b)(2) and 23(b)(3). *See* Plaintiffs' Mot. for Class Cert. and Appointment of Class Reps. and Class Counsel (the "2023 Motion"), ECF No. 546. The 2023 Motion, like this case as a whole, centered on the information included in the "bid requests" that Google sends to participants in its RTB advertising system. Plaintiffs claimed this RTB data established a common question of whether Google "sold account holders' personal or sensitive information to RTB participants." Denial Order at 2. Specifically, Plaintiffs argued that "[a]ll of the 4.9 million bid requests" Google had produced "include[d] at least 60 common data fields, including: the Google user id, the specific URL of the website or app being visited, the IP address, the publisher ID, highly specific location data of the user, highly specific information about the user's device, [and] the language being used." 2023 Mot. at 7. In so doing, they contended, Google sent information that "uniquely identifies the class member to RTB participants, including a Google User ID and other information that uniquely identifies the class member and their device." *Id.* at 14.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

OPPOSITION TO RENEWED MOTION FOR
CLASS CERTIFICATION
CASE NO. 4:21-CV-02155-YGR-VKD

Plaintiffs' arguments relied in large part on expert reports from Prof. Shafiq and Prof. Christopher Wilson. Prof. Wilson opined that "Google shares a 'common core set' of information in every RTB bid which can be linked to an individual account, such as: Google's unique identifier for a user, or a cookie, truncated IP address, a user's current latitude and longitude with accuracy, the make and model of their operating system, and the webpage the person is currently viewing." Denial Order at 13-14. Prof. Wilson also opined that RTB participants are able to identify the Plaintiffs through "cookie matching," a process by which a RTB participant matches a Google-provided cookie that is unique to a particular user (but does not disclose their identity) with the participant's own cookies. Class Cert. Rep. of Prof. Christopher Wilson ("Wilson Opening Rep.") ¶ 36, ECF No. 684-4.

Prof. Shafiq, reaching similar conclusions, asserted that RTB participants can first identify all bid requests associated with a given user based on their Google User ID, then use the data combined from these multiple bid requests to "stitch together detailed user profiles" and identify a Google account holder. Denial Order at 13 (citing Class Cert. Rep. of Prof. Zubair Shafiq ("Shafiq Opening Rep.") ¶ 79, ECF No. 684-3). Prof. Shafiq contended that when RTB participants analyze information provided in the combined bid requests, they can determine a user's identity. Shafiq Opening Rep. ¶ 88. Prof. Shafiq claimed that information combined from a "significant volume of bid requests" allows RTB participants to create "very rich profiles" with which he claims they could identify to identify where the Plaintiffs live and work, "what content they were viewing, and what device and operating system they used to view that content." Denial Order at 13; *see also* Shafiq Opening. Rep. ¶¶ 42, 79.

Based on this record, the Court concluded for class certification purposes that "***named plaintiffs'*** RTB data is uniformly personally identifying" and accepted Plaintiffs' argument that "this data, along with user lists and cookie matching, allows RTB participants to create detailed profiles for individual account holders." Denial Order at 16. Nevertheless, the Court found that "[w]hat remains untested is whether the RTB data produced" for the Plaintiffs "is representative of the class as a whole." *Id.* at 16-17. Without that proof, the Court concluded it could not find that the data produced for Plaintiffs was "representative of every other putative member of the class[,]"

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

3

OPPOSITION TO RENEWED MOTION FOR
CLASS CERTIFICATION
CASE NO. 4:21-CV-02155-YGR-VKD

1    so Plaintiffs failed to sufficiently establish commonality under Rule 23(a). *Id.* It thus denied

2    certification of an injunctive relief class, but gave Plaintiffs leave to try again. *Id.*

3            Based on the Court's statements in the Denial Order, Google opted to forego a pending

4    discovery dispute over the production of putative class data and voluntarily produced RTB data for

5    U.S. Google account holders in response to Plaintiffs' requests. ECF No. 698; Somvichian Decl.

6    Ex. 1, Supplemental Expert Report of Aaron Striegel ("Striegel Suppl. Rep.") (Jan. 31, 2025), ¶ 6.

7    Prof. Shafiq (but not Prof. Wilson) reviewed this data, and Plaintiffs contend based on his

8    supplemental expert report that "the Class data is essentially the same as the Plaintiff data" because

9    "***all*** of the trillions of Google's daily RTB bids ***uniformly*** contain information that is in fact

10   personally identifying for the Class as a whole." Mot. at 11, 16 (emphases added). As detailed

11   below, this blanket statement is highly misleading and obscures substantial variation in the data:

12   numerous fields that Plaintiffs say are critical to their claims are missing from the broader dataset,

13   and Plaintiffs cannot replicate a key location analysis on which the Court relied on in finding the

14   Plaintiff-level data to be "personally identifying."

15   **III.    LEGAL STANDARD**

16           To determine whether Plaintiffs have met their burden under Federal Rule of Civil

17   Procedure 23, the Court "must "judg[e] the persuasiveness of the evidence presented" for and

18   against certification and "resolve any factual disputes necessary" to answer that question.. *In re*

19   *Apple iPhone Antitrust Litig.*, 2022 WL 1284104, at *10 (N.D. Cal. Mar. 29, 2022) (citing *Ellis v.*

20   *Costco Wholesale Corp.*, 657 F.3d 970, 982–83 (9th Cir. 2011)).  Plaintiffs "must actually prove—

21   not simply plead—that their proposed class satisfies each requirement of Rule 23 by a

22   preponderance of the evidence." *RJ v. Cigna Health & Life Ins. Co.*, 2024 WL 1107826, at *4 (N.D.

23   Cal. Feb. 12, 2024) (citing *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31

24   F.4th 651, 664–65 (9th Cir. 2022)). Following the Denial Order, the principal question before the

25   Court is whether "common questions of law or fact as to the class exist," particularly as to the

26   representativeness of the Plaintiff data. Denial Order at 4 (citing Fed. R. Civ. P. 23(a)). On this

27   point, "[t]he issue is not merely whether there are common questions, but common answers."

28   *Robbins v. Phillips 66 Co.*, 343 F.R.D. 126, 131 (N.D. Cal. 2022) (finding answers as to class

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

4

OPPOSITION TO RENEWED MOTION FOR
CLASS CERTIFICATION
CASE NO. 4:21-CV-02155-YGR-VKD

claims would have required many individualized inquiries and thus denying certification of (b)(2) class for failure to establish commonality). Plaintiffs must also show that their claims or defenses "are typical of those of the class," and relatedly, that they "will fairly and adequately protect the interests of the class." Denial Order at 4 (quoting Fed. R. Civ. P. 23(a)).[2]

## IV.    ARGUMENT

### A.    The RTB data produced to date confirms that the Plaintiff data is not representative of the class as a whole.

Plaintiffs' Motion turns on the assertion that "because the Class data is **essentially the same as the Plaintiff data**, the Plaintiff data is, in fact, representative of the Class as a whole." Mot. at 11 (emphasis added). The facts show otherwise, and the stark discrepancies between the datasets as a whole are fatal to Plaintiffs' Motion.

#### 1.    A significant portion of the putative class data omits the pseudonymous identifiers that are the premise of Plaintiffs' claims.

First, Plaintiffs are not "representative of the class as a whole" because pseudonymous identifiers[3] are uniformly included in all of their data but are omitted for large swaths of the proposed class. Google disputes that the inclusion of pseudonymous identifiers is at all improper or supports Plaintiffs' claims, but these identifiers' alleged inclusion is nonetheless central to Plaintiffs' own claim that Google shares "personal information." *See, e.g.*, Am. Consol. Class Action Complaint ("Am. Compl.") ¶¶ 233 ("Google sells and shares Account Holders' device identifiers with RTB participants."), 513 ("[T]he identifiers Google discloses to the Google RTB participants are readily capable of being used by those companies to identify specific users even in

---

[2] The Supreme Court recently granted certiorari in *Laboratory Corporation of America Holdings v. Davis*, No. 24-304 (U.S. Jan. 24, 2025) (hereinafter "*LabCorp*"), which could affect the standards governing the circumstances when a class with uninjured members may be certified. While the Court's certiorari grant was limited to the question whether "a federal court may certify a class action pursuant to Federal Rule of Civil Procedure 23(b)(3) when some members of the proposed class lack any Article III injury," *id.*, the petitioner-defendant's petition argued that Article III standing provides a **constitutional** basis for denying class certification, not just a basis under the Rule 23(b)(3) predominance framework. See *LabCorp*, Pet'n for Writ of Cert. at 4 (U.S. Sept. 13, 2024) ("Article III bars certification where the class includes any members lacking a concrete injury."). If petitioners raise this argument again on the merits and if the Court accepts it, such a constitutional rule would presumably apply to Rule 23(b)(2) classes as well. Google reserves the right to submit further briefing or seek other relief based on the opinion in *LabCorp*.

[3] "Pseudonymous identifiers," which Plaintiffs also call "unique identifiers" at times, are "a string of characters that can be used to uniquely identify a browser, app or device," but that do not themselves identify a natural person in the offline world. 2023 Mot. at 6.

the absence of a pre-existing database possessed by the recipient of Google's disclosures."), ECF No. 92. In the 2023 Motion, Plaintiffs told the Court that all bid requests include "<u>unique identifiers</u> associated with the class member . . . such as the Google User ID [and] device IDs" and claimed "these and other unique identifiers and sensitive information that Google routinely places in RTB bid requests" are sold "to hundreds of participants outside of Google in the Google RTB auction." 2023 Mot. at 7, 13 (emphasis original). Plaintiffs emphasized the alleged inclusion of pseudonymous identifiers in all RTB bid requests because their experts contended these identifiers provide the means by which RTB participants can try to personally identify individuals users. *See* Shafiq Opening Rep. ¶ 88(d) (claiming that "a 'pseudonymous' identifier can be used by RTB participant to contact and locate the corresponding natural person in the physical world."); Wilson Opening Rep. ¶ 60 (claiming that RTB participants can "translate the unique identifiers for individuals provided by Google within bid requests to their own unique identifiers for the same individuals" via cookie matching). *See also* Denial Order at 13 (noting Prof. Shafiq's claim that "all the bid requests it sends to RTB participants" include "an encrypted version of the Google User ID"), 14 (noting Dr. Wilson's claim that "every RTB bid" includes certain information including "Google's unique identifier for a user"). The evidence now shows, however, that the pseudonymous identifiers that are the foundation of Plaintiffs' claims are in fact ***omitted*** from a substantial portion of RTB data for the putative class.

Second, while all of the Plaintiff data included a Google User ID, it was omitted for ***over*** ▮ ▮ of bid requests for putative class members. Striegel Suppl. Rep. ¶ 16. Given that fact, Plaintiffs' claim that "the Class data is essentially the same as the Plaintiff data" (Mot. at 11) is a gross overstatement that glosses over a critical divergence between the Plaintiff data and the broader data set. Worse, Prof. Shafiq's supplemental expert report appears designed to mislead the Court into concluding that the Google User ID was included in all bid requests for putative class members, when that is simply untrue. In describing the Plaintiff data analyzed in his first expert report, Prof. Shafiq summarizes: "I described many of the data fields that were commonly included in the Plaintiff data . . . These include: the unique Google User ID, which identifies the specific user and device." Shafiq Suppl. Rep. ¶ 27. That statement is accurate as far as it goes; 100% of the

1    Plaintiff data did include the Google User ID. But Prof. Shafiq goes on to claim in his supplemental

2    report that "[e]xcept for the four data fields identified in paragraph 25 above[4], ***all these same data***

3    ***fields are present in the Class data, just like they are present in the Plaintiff data***." *Id.* If this

4    assertion is intended, as it seems, to convey that the Google User ID is uniformly "present in the

5    Class data," that is categorically false. Striegel Suppl. Rep. ¶ 67. On examination, Prof. Shafiq's

6    assertion is based not on the inclusion of the Google User ID itself—but on a ***flag*** in the data that

7    indicates ***whether or not*** the Google User ID is included in a bid request. While this flag[5] is included

8    in all records in the broader dataset, the flag actually confirms that the Google User ID itself was

9    omitted in over ▉▉▉ of records.[6] In other words, all Prof. Shafiq shows is that the data consistently

10   indicates ***whether or not*** the Google User ID was included in a bid request, which is obviously not

11   the same as the Google User ID actually always being "present in the Class data," as Prof. Shafiq

12   misleadingly suggests.

13        Third, mobile device IDs are included even less frequently in the broader data set, in only

14   about ▉▉▉% of records. Confusingly, Prof. Shafiq includes a field regarding mobile device

15   identifiers in his list of 58 fields that are supposedly "commonly included" in all RTB Data. Shafiq

16   Suppl. Rep. Ex. C. But again, this assertion is based on a ***flag*** that does not actually contain a mobile

17   identifier, but simply a numerical value (0 or 1) that indicates ***whether*** a mobile device identifier

18   was included in the bid request. A proper analysis of this field shows that mobile device identifiers

19   were omitted from more than ▉▉% of records in the broader data set involving a mobile device.

20   Striegel Suppl. Rep. ¶ 24. Further, over ▉▉% of records in the broader data set have ***neither*** a Google

21   User ID nor a mobile device identifier, in stark contrast to the Plaintiff data, which included one or

22   more pseudonymous identifiers in 100% of records. *Id.* ¶ 38.

23

24

---

25   [4] Prof. Shafiq contends that just four fields that were present in the Plaintiff data are not uniformly present in the putative class member data: "city," "region," "model," and "brand."

26   [5] The flag is contained in a field named "google_user_id_present," which either contains a 1 (to indicate the ID was sent in the bid request) or a 0 (to indicate it was not). Striegel Suppl. Rep. ¶ 16.

27   [6] In deposition, Dr. Shafiq acknowledged that the field he relied on is a flag that indicates whether or not the Google User ID is included, not the identifier itself. Somvichian Decl. Ex. 3 ("Z. Shafiq

28   Depo. Tr.") at 88:8-11.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

7

OPPOSITION TO RENEWED MOTION FOR
CLASS CERTIFICATION
CASE NO. 4:21-CV-02155-YGR-VKD

These facts preclude any finding that the Plaintiff data is "representative of the class as a whole." Plaintiffs cannot credibly claim that the RTB data for the putative class is "uniformly personally identifying" in the same way they claim is true for the named Plaintiffs, when the data for a substantial portion of the putative class includes none of the pseudonymous identifiers that are a foundation of Plaintiffs' claims. Plaintiffs Motion theorizes, incorrectly, that these pseudonymous identifiers allow bid participants to reliably determine that a given bid request corresponds with a given user or device, but with these identifiers missing for a substantial portion of the broader dataset, Plaintiffs' theory falls under its own weight.  Somvichian Decl. Ex. 2, Supplemental Expert Report of Konstantinos Psounis ("Psounis Suppl. Rep.") (Jan. 31, 2025), ¶ 6. Indeed, data for the putative class demonstrates that without a pseudonymous identifier, the remaining information in a given RTB bid request is often identical to information shared in ▮▮▮▮  or  ▮▮▮▮  of other bid requests, making identification of a unique device or user effectively impossible. Prof. Shafiq's own examples make this point. *See* Shafiq Suppl. Rep. ¶¶ 43–44. For instance, in the exemplar record in Paragraph 43(a) of his Supplemental Report, Prof. Shafiq points to a particular user agent as part of the "extensive information" that he claims enables RTB participants to personally identify individuals. But that same user agent is shared across over ▮▮▮ ▮▮▮ other records in the data. Striegel Suppl. Rep. ¶ 59. As another example, the truncated IP address associated with the bid request in Paragraph 43(c) of Prof. Shafiq's Supplemental Report is identical to the truncated IP address that appears in over ▮▮▮▮ other bid request records. *Id.* ¶ 55. Plaintiffs fail to explain how this type of information could be used to identify a unique device (let alone to personally identify an individual) when it is shared commonly across so many records and devices in the data.

While Google assumes Plaintiffs will try to dispute these findings, the critical fact for class certification purposes is that whatever arguments or evidence Plaintiffs' counsel and their experts might muster on this point, they will ***not apply*** to the Plaintiffs themselves. That is, the Plaintiffs presumably will argue (as they have) that RTB participants can use the pseudonymous identifiers uniformly present in ***their*** data to determine which bid requests correspond to each Plaintiff. And as Prof. Shafiq argued and the Court accepted in the Denial Order, the Plaintiffs can then argue that

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

these "stitch[ed] together" bid requests can be used to personally identify and create profiles about them. Denial Order at 13. Google disputes all such arguments regarding the inclusion of pseudonymous identifiers, but for the substantial portion of data for the putative class that contains no pseudonymous identifiers, these arguments would not apply at all. Those putative class members would therefore have to find some **other** way to argue that RTB participants can link multiple bid requests to gather information to try to identify putative class members. *See supra* at 4. In short, Plaintiffs' theory of the case will fundamentally differ from that of many putative class members, and "proof of their own claims would not necessarily prove the other class members' claims." *McKinnon v. Dollar Thrifty Auto. Grp., Inc.*, 2015 WL 4537957, at *10 (N.D. Cal. July 27, 2015). This mandates denial of the Motion because a class cannot be certified where "[t]he representative plaintiffs simply do not have the appropriate incentive to establish . . . violations with respect to all of the absent class members." *In re Graphics Processing Units Antitrust Litig.*, 253 F.R.D. 478, 490 (N.D. Cal. 2008) (finding that individual plaintiffs were not typical of the proposed class as a whole, since while all class members were allegedly injured by defendants' anticompetitive conduct, the scope and theory of their injuries were too different).[7]

Moreover, even where pseudonymous identifiers are included in bid requests, RTB bid participants cannot reliably identify particular individual users or households, as detailed in the Supplemental Psounis Report. Psounis Suppl. Rep. ¶¶ 21-26. Even where bid requests include pseudonymous identifiers, whether the information in those bid requests could ever be used to reliably identify any individual under Plaintiffs' theories is uncertain and variable. It depends, for example, on whether a device is in a city or other densely populated area, whether multiple people share a single device or account (as many Plaintiffs do), whether the device is using a virtual private

---

[7] Google recognizes that in the Denial Order, the Court determined that the Plaintiffs had established typicality because (a) they were "like all putative class members, subject to Google's Terms of Service, its Privacy Policy, and other standardized disclosures" and (b) "Google's RTB uniformly collects their information and shares or sells it to potential advertisers." Denial Order at 19. Based on the new information before the Court, Google respectfully subjects that this finding is no longer tenable. Plaintiffs will need to prove far more than that they entered into the same contract as other class members to win their case, and it is precisely because Google does **not** uniformly share identical information in RTB data that Plaintiffs cannot be typical representatives of the class.

network ("VPN") or other configuration that might affect its apparent IP address or location, and a host of other individualized factors. *See id.* § 4.B . At bottom, Plaintiffs cannot demonstrate that data for the putative class is "uniformly personally identifying" because pseudonymous identifiers are omitted in over ██████ of the RTB data. Even where pseudonymous identifiers are included, Plaintiffs' experts fail to show how those fields, even in combination with others, can be used to identify a particular user or device.

### 2. The majority of putative class data does not involve cookie matching, in contrast to the Plaintiffs data.

Throughout this case, including the prior class certification briefing, Plaintiffs and their experts have emphasized cookie matching as a foundation of their claim that Google shares personal information through RTB. *See* Am. Compl. ¶ 250 ("Google does this through the sale and sharing of many data points, and also through 'cookie matching,' whereby participants can 'match their cookies with Google's' through a cookie-matching service that 'facilitates the creation and maintenance of the association between a bidder's cookie and the Google User ID.'"); Wilson Opening Rep. ¶¶ 43–49 (asserting that Google "facilitates the sharing and selling of individuals' information with RTB participants through cookie matching"), ¶ 61 ("Google distributes the unique identifiers that it has matched with RTB participants in the hosted_match_data field of bid requests.").[8] And concededly, the Plaintiff data shows that cookie matching occurred regularly for all Plaintiffs, with hosted match data (the output generated when there is a successful cookie match) included in roughly ██% of their bid requests. Expert Report of Konstantinos Psounis ("Psounis Opening Rep.") ¶ 22, ECF No. 684-24.

But that is not the case for the putative class. Critically, as Google's expert Dr. Striegel finds, cookie matching did ***not*** occur in ***over*** ██% of records in the putative class data. Striegel Suppl. Rep. ¶ 17. In other words, when compared to the Plaintiff data, cookie matching is only ██ as prevalent in the putative class data, and many individuals likely did not experience any cookie matching because they blocked cookies in their web browser or through other means. *Id.* ¶ 39. The

---

[8] Cookie matching enables RTB participants to associate a first-party cookie with a Google User ID. Google's hosted match tag sends the participant-specified identifier to Google for matching. *See* ECF No. 684-23 ¶¶ 49-55.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

10

**OPPOSITION TO RENEWED MOTION FOR
CLASS CERTIFICATION
CASE NO. 4:21-CV-02155-YGR-VKD**

concerns Plaintiffs and their experts have expressed about cookie matching (whose merits Google disputes) are therefore not applicable to these putative class members. Where no cookie matching occurs, RTB participants will not receive the "significant volumes of account holder information" that Plaintiffs claim are shared only through "RTB cookie matching." Wilson Opening Rep. ¶ 49. And without cookie matching, RTB participants will have no feasible way to link a bid request to whatever information they may have obtained about a user from other sources, as Dr. Psounis explains, significantly diminishing or eliminating the concerns about personal identification that is the thrust of Plaintiffs' claims. Psounis Suppl. Rep. ¶¶ 95-96.

Again, Plaintiffs may dispute these findings, but the critical point for this Motion is that any disputes over whether RTB data without cookie matching can constitute "personal information" will have little to no bearing on the Plaintiffs' own claims because all of them *did* experience cookie-matching. Plaintiffs gloss over this critical divergence, which underscores why Plaintiffs are not "representative of the class as a whole" and why the putative class data is not "uniformly personally identifying."

### 3. Many putative class members enabled privacy settings that limit the information in their RTB data, making them unlike Plaintiffs who never utilized such settings.

Plaintiffs also overlook the fact that many users take routine steps that cause certain information to be omitted from bid requests—unlike Plaintiffs, who never availed themselves of these options and whose RTB data therefore is correspondingly different. As explained in the declaration of Glenn Berntson, users can out of Google Personalized Ads ("GAP") in various ways, and when they do so, "certain data in RTB bid requests is omitted or generalized, including all identifiers and hosted match data, and cookie matching is also disabled." Decl. of G. Berntson ¶ 49, ECF No. 592-1. Notably, for the time period covered by the dataset Dr. Shafiq analyzed, none of the Plaintiffs opted out of GAP—even after filing this litigation and presumably learning of the option to do so. Striegel Suppl. Rep. ¶ 42. Nor did they bother to take advantage of settings in their web browsers and devices to block cookies and prevent tracking, or use other privacy-related features available outside of Google's own settings. *See* T. Diggs Depo. Tr. at 133:17 – 134:11, ECF No. 688-5; K. Woodruff Depo. Tr. at 156:6 – 157:21, ECF No. 688-7; Somvichian Decl. Exs.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

OPPOSITION TO RENEWED MOTION FOR
CLASS CERTIFICATION
CASE NO. 4:21-CV-02155-YGR-VKD

4 (R. Green Depo. Tr.) at 147:6 – 154:8, 5 (S. Toronto Depo. Tr.) at 191:25 - 192:4, 6 (C. Valencia Depo. Tr.) at 228:17 – 229:4, 7 (T. Williams Depo. Tr.) at 142:11 - 143:1.

The RTB data for the putative class confirms that many users *did* take these straightforward steps, and that data for the putative class differs substantially from data for Plaintiffs as a result. For instance, a full ▮% of records in the putative class data set involved users who opted out of GAP. Striegel Suppl. Rep. ¶ 42. Again, none of the Plaintiffs did so. *Id.* Moreover, ▮% of records in the putative class data involve users who selected options on their mobile devices to "limit ad tracking," which causes mobile device identifiers and other information to be omitted from RTB data. *Id.* ¶ 41. None of the Plaintiffs took this step on their devices. *Id.* For users of Apple iPhones and other iOS devices in particular, over ▮% of records in the data involved the iOS-specific setting to limit app tracking.[9]  *Id.* ¶ 40.   In sum, the data shows that large groups of individuals in the putative class took various steps to limit the information shared via RTB, in stark contrast to Plaintiffs, who never bothered to avail themselves of these options.

One consequence of this discrepancy is that the Plaintiff data differs markedly from that of the putative class, as discussed above, which alone renders Plaintiffs' data not "representative of the class as a whole." Denial Order at 16. But Plaintiffs' outlier behavior also creates an additional roadblock to certification: they are subject to consent-related defenses that will not apply to large groups of putative class members. In the Denial Order, this Court found that "[i]mplied consent is an intensely factual question that requires consideration of the circumstances surrounding the alleged privacy violations." *Id.* at 20 (cleaned up). For Plaintiffs, this will include determining whether their failure to utilize any privacy controls—even after filing this lawsuit—constitutes implied consent under their particular circumstances. The specific evidence and arguments to resolve this issue for Plaintiffs will be "intensely factual," *id.*, and also entirely inapplicable to the many putative class members who *did* avail themselves of the many privacy controls that can limit RTB data. A class cannot be certified in these circumstances, where "it is predictable that a major focus of the litigation will be on a defense unique to" each Plaintiff that does not apply broadly to the proposed class as a whole. *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 509 (9th Cir. 1992).

---

[9] Notably, none of the Plaintiffs used iOS mobile devices.  Striegel Suppl. Rep. ¶ 40.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

2

**4.    The putative class data shows there is no common question whether "contents" of communications were shared through RTB for purposes of Plaintiffs' CIPA claim.**

3    A large portion of the putative class did not have the "contents" of their communications

4    transmitted via RTB, and thus will not have a viable claim under CIPA. As the Ninth Circuit has

5    held, contents of communications do not include customer record information, including "the name,

6    address, and subscriber number or identity of a subscriber or customer," nor does it include

7    "location data." *In re Zynga Privacy Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014) (quotations

8    omitted); *Graham v. Noom*, 533 F. Supp. 3d 823, 833 (N.D. Cal. 2021) ("contents" of

9    communications under the federal Wiretap Act and CIPA are the same).  Moreover, basic URLs or

10    app names do not reveal the contents of communications for purposes of CIPA.  *Brown v. Google*

11    *LLC*, 685 F. Supp. 3d 909, 935 (N.D. Cal. 2023).  As the Ninth Circuit has explained, "full-string

12    detailed URL[s]" that include "the exact subpage" can potentially reflect contents of

13    communications because such "URLs, by virtue of including the particular document within a

14    website that a person views, reveal much more information . . . divulg[ing] a user's personal

15    interests, queries, and habits." *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 605

16    (9th Cir. 2020) (quotations omitted). However, where a URL "includes only basic identification

17    and address information, not a search term or similar communication made by the user," it is not

18    considered the contents of a communication.  *In re Zynga*, 750 F.3d at 1109.  Accordingly, bid

19    requests that do not include a "full-string detailed URL" and show just a top-level domain for a

20    website or an app name would not contain contents of communications for CIPA purposes.[10]

21    Prof. Shafiq's supplemental report misleadingly implies that such "contents of

22    communications" were consistently shared in the broader dataset, but this is false. Specifically, he

23    notes that the detailed URLs in just twelve cherry-picked examples of bid requests reflect user

24    navigation to specific web pages involving various health issues. Shafiq Suppl. Rep. ¶¶ 43-44. But

25    looking beyond those twelve exemplars, a substantial portion of the ▬▬▬▬▬ of bid requests

26    Google produced do ***not*** include full, detailed URLs. As explained in the Striegel Supplemental

27    Report, over ▬% of all bid requests contain nothing more than URLs for particular apps on the

28    _____

[10] For example: https://policies.google.com/technologies/partner-sites?hl=en, but not google.com.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

13

OPPOSITION TO RENEWED MOTION FOR
CLASS CERTIFICATION
CASE NO. 4:21-CV-02155-YGR-VKD

Google Play or Apple iTunes storefronts. Striegel Suppl. Rep. ¶ 80. These URLs occasionally provide the name of a particular app (and sometimes only include an app ID number), but do not reveal any additional information about a user's interaction with the app. *Id.* Moreover, of the remaining bid requests that do not include URLs to specific app pages, ████% only include the base URL for the website visited, such as "https://mail.yahoo.com." *Id.* ¶ 82. This is akin to information found on the "outside of an envelope" and does not reveal the "contents" of users' communications, such as their "interests, queries, and habits." *See Brown*, 685 F. Supp. 3d at 936. Thus, there is a significant portion of the putative class whose URLs did not reveal "contents" of their communications.

Given the variation in the amount of information disclosed through URLs across the putative class member data, Plaintiffs have failed to carry their burden in demonstrating that their CIPA claim is suitable for determination on a classwide basis. *See In re Lenovo Adware Litig.*, 2016 WL 6277245, at *19 (N.D. Cal. Oct. 27, 2016) (denying certification where "[p]laintiffs' class-wide evidence . . . does not identify any particular 'violations' or instances of unauthorized interception" that applied across the entire class).

### 5.    Plaintiff's expert cannot replicate his purported analysis of the Plaintiffs' locations for any putative class members and his opinions are misleading as a whole.

In its Denial Order, the Court placed weight on Prof. Shafiq's assertion that he was "able to pinpoint ***the exact coordinates*** of each Plaintiff's home and work locations based on the RTB bids within, at most, a three-kilometer error rate." Denial Order at 16 (citing Shafiq Opening Rep. ¶ 42(e)) (emphases added); *see also* 2023 Mot. at 7 (arguing that Google shared the "precise geolocation" and "highly specific location data" for the Plaintiffs); Am. Compl. ¶¶ 204, 243 (asserting that Plaintiffs were able to derive street-level addresses for 14 unidentified individuals from RTB bid request data). But Prof. Shafiq makes no similar claim that he—or any RTB participant—could similarly determine the home or work addresses of any putative class member based on information contained in the broader dataset. In fact, Prof. Shafiq confirmed in deposition that he is unable to do so. Z. Shafiq Depo. Tr. at 211:5-10. This alone provides further confirmation that the Plaintiff data is not "representative of the class as a whole." Denial Order at 16.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

14

OPPOSITION TO RENEWED MOTION FOR
CLASS CERTIFICATION
CASE NO. 4:21-CV-02155-YGR-VKD

A closer examination of the reasons for this disconnect, however, is important to understand the misleading nature of Prof Shafiq's opinions on location data overall. Prof. Shafiq was able to reach the findings he made about the Plaintiffs only because he was **told their actual home and work addresses** as a starting point. From there, he was able to search Plaintiff RTB data and cherry-pick a handful of records with roughly corresponding latitude and longitude coordinates—out of many thousands that did not—to claim that he was "able to pinpoint the exact coordinates of each Plaintiff's home and work locations" Denial Order at 15 (citing Shafiq Opening Rep. ¶ 42(e)); *see also* Z. Shafiq Depo Tr. at 211:5-14 ("You need a ground truth.").  This highly misleading analysis closely tracks what Prof. Shafiq was criticized for doing in *Griffith*. *See Griffith v. TikTok, Inc*., 2024 WL 5279224, at *12 (C.D. Cal. Dec. 24, 2024) ("[N]or is it even clear that Defendants obtained any personally identifiable information that Defendants would be able to associate with Plaintiffs **without being able to work backwards** from information on Plaintiffs' computers, as Dr. Shafiq did." (emphasis added)). Similarly here, Prof. Shafiq could not have "pinpointed" Plaintiffs' home and work locations from their RTB data without being able to work **backwards** from **known** locations. And because he could not work backwards in this way for any putative class members, his Supplemental Report does not purport to offer similar opinions about the putative class data as he claimed for Plaintiffs. Prof. Shafiq acknowledged as much in his deposition. Z. Shafiq Depo. Tr. at 211:9-10 ("… I don't know what the ground truth is [for putative class members]. But for named Plaintiffs, we know what ground truth is.").

There are multiple reasons why someone's precise location, including their home and work addresses, cannot be gleaned from the general location information in RTB data. First, as Prof. Shafiq concedes, the latitude and longitude coordinates in RTB bid requests, taken alone, correspond to an area of approximately 1.23 square kilometers. Psounis Suppl. Rep. ¶ 101. As a result, even without considering any of the other privacy-enhancing features of how location information is conveyed in RTB data, the most any RTB participant could ever determine about an individual's location is that they are in some unknown place within this 1.23 square kilometer area. And for all but the most rural of locations, population concentrations in the United States are so

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

15

OPPOSITION TO RENEWED MOTION FOR
CLASS CERTIFICATION
CASE NO. 4:21-CV-02155-YGR-VKD

dense that this information cannot be sufficient to ever identify an individual. *See* Psounis Suppl. Rep. ¶¶ 107, 129; Psounis Opening Rep. § IV.B.c.

Second, Prof. Shafiq continually and deliberately ignores that the latitude and longitude coordinates in RTB bid requests do not convey the actual coordinates of a user but are instead a reference point for determining a ***larger*** area. As Google informs RTB participants—and as Plaintiffs and Prof. Shafiq do not dispute—the latitude/longitude coordinates are "the center point of a circle" with a radius that fluctuates but is often multiple kilometers.[11] (Decl. of G. Bernston ¶ 31; *see also* Striegel Suppl. Rep. ¶ 32, Psounis Suppl. Rep. ¶ 100). In other words, the location conveyed in a bid request is a circular area extending ***beyond*** the 1.23 square kilometer area that corresponds to the latitude/longitude coordinates, and the device associated with the bid request ***can be anywhere in that larger circle.*** This area is often the size of entire metropolitan areas, as shown in the RTB data produced in this case***. See*** Psounis Suppl. Rep. ¶¶ 65, 114, 119, 129. Prof. Shafiq, however, simply ignores that the location information in RTB data is determined from the ***combination*** of the latitude/longitude coordinates (the center point of the circle) ***and*** the additional area reflected in the accuracy field (the radius of the circle). As he acknowledged, "I'm taking the coordinates at their face value even though a field may say, like, this is inaccurate." Z. Shafiq Depo. Tr. at 217:16-18. This head-in-the-sand approach mirrors the flaws that led the *Griffith* court to express concern that "Dr. Shafiq's approach relies on several assumptions that Plaintiffs have not shown to be true." *Griffith v. TikTok, Inc.*, 2024 WL 4308813, at *8 (C.D. Cal. Sept. 9, 2024). Similarly here, nothing substantiates Prof. Shafiq's assumptions about location data, which run counter to the undisputed evidence of how RTB actually functions.

These features of how location information is conveyed in RTB effectively prevent the sort of identification that Plaintiffs claim, and Prof. Shafiq's own examples confirm this. Consider, for instance, the bid request Prof. Shafiq cites as showing an individual supposedly located "near the Pioneer Square in Portland, OR" based on the latitude and longitude coordinates ███████. Shafiq Suppl. Rep. ¶ 43(c). As Prof. Shafiq admits, he ignored the "accuracy" value in this bid

---

[11] The number of meters of the radius is contained in a field called "accuracy." The higher the number, the larger the radius, and the larger the circle that corresponds to the location of the device.

request (the radius of the circle around the latitude/longitude coordinates), which is nearly ███

***kilometers***. Z. Shafiq 2024 Depo Tr. at 185:22-25; Striegel Suppl. Rep. ¶ 54; Psounis Suppl. Rep.

¶ 65. Once one accounts for this accuracy value, the location conveyed by this bid request is larger

than the entire city of Portland and this individual could just as easily have been located "near" any

number of other landmarks in the city, or even on the other side of the Oregon border in Washington

State. Psounis Suppl. Rep. ¶ 65. Moreover, this combination of coordinates appears ***over*** ███

***times*** just in the data samples Prof. Shafiq reviewed. *Id.*

Plaintiffs and Prof. Shafiq offer no method by which a RTB participant could determine—

out of all the people in Portland and all the millions of users whose RTB data included the same

coordinates—the identity of the individual associated with this bid request. When pressed, Prof.

Shafiq conceded as much, acknowledging that "[t]his is not something that I investigate in my

report." Z. Shafiq Depo. Tr. at 218:12-13. The same is true of all the other examples Prof. Shafiq

cites, and of the data for the putative class as a whole. Psounis Suppl. Rep. ¶¶ 121-129. Prof.

Shafiq's own examples thus disprove his claim that the location information in RTB data enables

identification of individuals because "a generalized location, such as one that locates a user no more

precisely than within several city blocks, may not implicate much in the way of privacy concerns."

*Heeger v. Facebook, Inc.*, 2019 WL 7282477, at *3 (N.D. Cal. Dec. 27, 2019).

In sum, Prof. Shafiq's opinions regarding location data are unreliable and should be rejected

in their entirety. But even taking them at face value, Prof. Shafiq's expert reports actually confirm

that the Plaintiff data is not representative of the class as a whole because Prof. Shafiq, by his own

admission, could not determine the home or work locations of any putative class members as he

(purportedly) did for Plaintiffs.

**B.    The Court should disregard Prof. Shafiq's opinions as unsupported and misleading.**

As the Ninth Circuit explains, even without a formal *Daubert* challenge, "[c]ourts have

frequently found that expert evidence, while otherwise admissible under *Daubert*, was inadequate

to satisfy the prerequisites of Rule 23." *Olean*, 31 F.4th at 666 n.9. Here, the flaws in Prof. Shafiq's

opinions described above provide ample grounds to reject his report in its entirety. But the problems

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

17

OPPOSITION TO RENEWED MOTION FOR
CLASS CERTIFICATION
CASE NO. 4:21-CV-02155-YGR-VKD

do not end there. Prof. Shafiq also counted substantively empty fields as if they were populated with information. This is no mere technical disagreement between Prof. Shafiq and Google's experts: Prof. Shafiq counted each field as being populated if it had ***anything*** in it, even a placeholder or "dummy" value that conveys no substantive information. Striegel Suppl. Rep. ¶ 56. For instance, even if a field contains just a set of brackets, Prof. Shafiq counts it towards his conclusion that values are present in the field for at least 98% of bid requests. *Id*. This tracks the same haphazard methodology that led Prof. Shafiq to conflate (1) the flags indicating ***whether*** the Google User ID and mobile device ID are present with (2) the pseudonymous IDs themselves. Prof. Shafiq used exactly the same "deeply flawed analysis" in *Griffith*, and the court there gave his opinions no weight as a result. *Griffith*, 2024 WL 4874556, at *2 (denying class certification and faulting Prof. Shafiq for including in his calculations "the word 'null,' the word 'undefined,' and an empty field"). Prof. Shafiq likewise tries to pass off location information with kilometers-wide areas of uncertainty as if they were granular, building-level coordinates, as discussed above. Like the court in *Griffith*, this Court should not credit Prof. Shafiq's misleading report—and without that report, Plaintiffs have no evidence to show that the Plaintiff data is representative of the class as a whole.

### C.    Plaintiffs' class definition is not viable.

In general, if a class is "defined so broadly as to include a great number of members who for some reason could not have been harmed by the defendant's allegedly unlawful conduct, the class is defined too broadly to permit certification." *Olean*, 31 F.4th at 669 n.14 (en banc) (citation and quotation omitted). Consistent with that rule, Plaintiffs' Motion acknowledges that a class definition should not be "overinclusive (that is, potentially inclusive of more than a de minimis number of uninjured class members." Mot. at 8. In attempting to cure the impermissible "failsafe" class proposed in the 2023 Motion, however, *see* Denial Order at 8-9, Plaintiffs have introduced a new class definition that violates this rule against overinclusive classes.

Specifically, Plaintiffs now propose to define the class as "all individual Google account holders subject to a Google U.S. Terms of Service ('ToS') who have an active Google account," as defined on a specified Google web page (the "Activity Definition Page"). *See* Mot. at 1, n.2.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

18

**OPPOSITION TO RENEWED MOTION FOR
CLASS CERTIFICATION
CASE NO. 4:21-CV-02155-YGR-VKD**

1   Plaintiffs claim "there are no unimpacted Class members" under this definition because "Google

2   RTB is pervasive and impacts plaintiffs and Class members in the same way." *Id.* at 9. But none of

3   the evidence Plaintiffs cite for this proposition actually shows that Google RTB in fact affects all

4   Google users with an active account.  To the contrary, the definition of "active" includes many

5   kinds of online activity that would never trigger an RTB bid request, such as "[r]eading or sending

6   an email" using Gmail or "[u]sing Google drive." *See* Activity Definition Page. As Plaintiffs

7   acknowledge, Google RTB "only implicates activity on non-Google services." Wilson Opening

8   Rep. ¶ 96. Accordingly, someone who uses their Google account only for email or file storage

9   would be an "active Google account" holder included in the proposed class, but may never have

10  encountered Google RTB.

11          Plaintiffs try to assume this nuance away, arguing that "Google RTB is pervasive,"

12  "inescapable," and "ubiquitous" because many popular websites display ads through Google RTB.

13  Mot. at 9; Shafiq Suppl. Rep. ¶ 49. Prof. Shafiq makes this assumption explicit, stating in

14  conclusory terms that "all Google U.S. account holders with an active Google account" must have

15  "necessarily [used] the internet" in a manner that would trigger RTB. Shafiq Suppl. Rep. ¶ 46. But

16  he and Plaintiffs have done nothing to substantiate this assumption that all persons with active

17  Google accounts would have engaged in internet usage that triggered RTB activity. Nor have

18  Plaintiffs tried to quantify how many users within the class definition might have limited their

19  online activity in a way that would have avoided RTB activity. Plaintiffs therefore fail to meet their

20  burden to show that the new class definition is (in their own terms) not "inclusive of more than a

21  de minimis number of uninjured class members." Mot. at 9. This failure of proof is particularly

22  notable in that this Court specifically ruled, when rejecting Plaintiffs' class definition before, that

23  they had failed to "satisfactorily demonstrate[]" that "Google shares ***all*** account holders' personal

24  information through its RTB bids." Denial Order at 9 (emphasis added). Plaintiffs still fail to meet

25  this requirement, which provides further grounds to deny Plaintiffs' Motion.

26  **V.    CONCLUSION**

27          For the foregoing reasons, the Court should deny the Motion with prejudice.

28

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

OPPOSITION TO RENEWED MOTION FOR
CLASS CERTIFICATION
CASE NO. 4:21-CV-02155-YGR-VKD

1

2    Dated: January 31, 2025

3

4

5

6

7

8

9    312505476

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

COOLEY LLP


By: _/s/ Whitty Somvichian_
       Whitty Somvichian

Attorney for Defendant
GOOGLE LLC

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

20

OPPOSITION TO RENEWED MOTION FOR
CLASS CERTIFICATION
CASE NO. 4:21-CV-02155-YGR-VKD