# EXHIBIT 6
# to the Declaration of
# Whitty Somvichian

Page 1

```
 1            UNITED STATES DISTRICT COURT
 2           NORTHERN DISTRICT OF CALIFORNIA
 3                  SAN JOSE DIVISION
 4                      ---oOo---
 5    BENJAMIN HEWITT, et al., on
      behalf of themselves and all
 6    others similarly situated,
 7             Plaintiffs,
 8                  vs.          No. 4:21-cv-02155-LHK-VKD
 9    GOOGLE LLC,
10             Defendant.
      _____/
11
12
13
14     ***HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY***
15
16
17
18              VIDEOTAPED DEPOSITION OF
19                CHRISTOPHER VALENCIA
20    _____
21         WEDNESDAY, DECEMBER 14, 2022
22
23    REPORTED BY:  HOLLY THUMAN, CSR No. 6834, RMR, CRR
24    JOB NUMBER: 5620686
25
```

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 228

1   Q.   When did this happen?
2   A.   This was pretty early on when I first got
3   contacted by James, but not necessarily in the
4   beginning.
5   Q.   Okay.  What do you remember learning about
6   available privacy settings from this research that
7   you did?
8   A.   The only thing that I can tell you that I
9   do really remember seeing is -- the thing that
10  stood out the most to me was the buttons to turn on
11  and off.
12  Q.   Turn what on and off?
13  A.   Personalized ads on sites and apps that
14  partner with Google.
15  Q.   So you do remember seeing that option?
16  A.   I feel like I did see this, yes.
17  Q.   And do you remember understanding what
18  turning that on or off would do with respect to any
19  information that is used for ads?
20       MR. STRAITE:   Objection.   Vague.
21  Objection.   Calls for speculation.   Objection.
22  Calls for expert testimony.
23       THE WITNESS:   I did not fully understand
24  it.
25  //

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 229

1  BY MR. SOMVICHIAN:
2      Q.  And you never changed whatever the setting
3  was that you saw.  Right?
4      A.  I did not.
5      Q.  Did you ever look into how the
6  personalized ad setting might or might not affect
7  the type of information-sharing that you're
8  complaining about in this case as it relates to
9  RTB?
10          MR. STRAITE:  Objection.  Calls for expert
11  testimony.  Calls for speculation.
12          THE WITNESS:  Can I hear the question
13  again?
14  BY MR. SOMVICHIAN:
15      Q.  Did you ever look into how the
16  personalized ad setting might or might not affect
17  the type of information-sharing that you're
18  complaining about in this case as it relates to
19  RTB?
20          MR. STRAITE:  Same objections.
21          THE WITNESS:  I don't believe that I did.
22  BY MR. SOMVICHIAN:
23      Q.  Setting aside your lawyers, you never
24  asked anybody about that, for example?
25      A.  No.

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 304

1      CERTIFICATE OF REPORTER

2      I, HOLLY THUMAN, a Certified Shorthand Reporter,
3   hereby certify that the witness in the foregoing
4   deposition was by me duly sworn to tell the truth, the
5   whole truth, and nothing but the truth in the
6   within-entitled cause; that said deposition was taken
7   down in shorthand by me, a disinterested person, at the
8   time and place therein stated; and that the testimony
9   of said witness was thereafter reduced to typewriting,
10  by computer, under my direction and supervision;
11      That before completion of the deposition review of
12  the transcript [] was [X] was not requested/offered.
13  If requested, any changes made by the deponent (and
14  provided to the reporter) during the period allowed are
15  appended hereto.
16      I further certify that I am not of counsel or
17  attorney for either or any of the parties to the said
18  deposition, nor in any way interested in the event of
19  this cause, and that I am not related to any of the
20  parties thereto.
21
22  DATED: 12/29/2022
23
24  *Holly Thuman* (signature)
25      HOLLY THUMAN, CSR

304