# EXHIBIT 14

| BLEICHMAR FONTI & AULD LLP | DiCELLO LEVITT GUTZLER LLC | SIMMONS HANLY CONROY LLC |
|---|---|---|
| 555 12th STREET, SUITE 1600 | ONE GRAND CENTRAL PLACE | 112 MADISON AVENUE, 7TH FL. |
| OAKLAND, CA 94607 | 60 EAST 42nd STREET, SUITE 2400 | NEW YORK, NY 10016 |
| | NEW YORK, NY 10165 | |

November 30, 2021

**VIA ELECTRONIC MAIL**
Andrew Schapiro
andrewschapiro@quinnemanuel.com

      Re:    *Calhoun v. Google LLC*, No. 5:20-cv-05146-LHK-SVK (N.D. Cal.)
             **Plaintiffs' Letter Regarding Google's R&Os to Plaintiffs' First Set of Requests for Admission**

Dear Counsel:

     We write regarding deficiencies in Google's Responses and Objections to Plaintiffs' First Set of Requests for Admissions. Please amend your responses by December 14, 2021 or otherwise confirm your availability to meet and confer this week. Plaintiffs are available tomorrow at 11 am pacific or any time after 2 pacific; Thursday at noon pacific; or Friday at noon pacific. We can also find time this afternoon if notice is not too short.

     To facilitate our discussions, we identify the following deficiencies in Google's responses.

**GENERAL OBJECTIONS**

     **First Run Experience (FRE):** Google objects to this definition as vague and ambiguous in part because GOOG-CALH-0004422 does not reference FRE, but in fact it does at pincite GOOG-CALH-00044238. To the extent Google claims continued confusion, the parties should discuss at the forthcoming meet and confer.

     **Google Source Code**: Google objects that "Google Source Code" is overly broad and unduly burdensome because it seeks "any set of instruction" from "any of [Google's] properties or divisions" and irrelevant Google products, such as Search, Maps, Storage, Fonts, Recaptcha, the Google Custom Search Engine, or 'any other Google property." Google cites the Court's Oct. 1, 2021, order that "each and every transmission, whether or not authorized, neither can nor should be the subject of discovery in this case" before denying Plaintiffs' request to broaden the scope of the case to also include www.google.com."

     This objection misstates the FAC and the Court's October 1 order, while also ignoring the Court's more recent ruling on production of Plaintiff data. The FAC alleges that Chrome sends a user's Personal Information to Google properties regardless of whether the user is Synced or not. "Personal Information" is defined consistent with Google's contracts and California law to include IP addresses, User-Agent information, cookies, and more – and Plaintiffs' complaint is not limited to Chrome disclosures to Google Analytics and Ad Manager, as Google would prefer. Through the course of this litigation, much discovery has focused upon IP address, X-client data headers, and cookies that are Gaia, Biscotti, and Zwieback.

Counsel for Google
November 9, 2021
Page 2

BLEICHMAR FONTI & AULD LLP
DICELLO LEVITT GUTZLER LLC
SIMMONS HANLY CONROY LLC

Moreover, on Google's burden argument, Requests for Admission are designed to narrow the areas of dispute – thereby relieving parties of discovery burdens. *See, e.g. Conlon v. United States,* 474 F.3d 616, 622 (9th Cir.2007 (recognizing that requests for admissions "are sought, first, to facilitate proof with respect to issues that cannot be determined from the case, and second, to narrow the issues by eliminating those that can be").

**Personal Information:** In its objection to Plaintiffs' definition of Personal Information, Google attempts to re-write the CCPA. The "de-identified" exception does not apply unless the information at issue "cannot reasonably identify, relate to, describe, be capable of being associated with, or be linked, directly or indirectly, to a particular consumer." Here, Google links and is capable of linking the data at issue directly and indirectly to particular consumers (which includes households and devices). Google's unilateral decision to interpret "Personal Information" as "consistent with its Privacy Policy and other disclosures" is inappropriate and, in any event, incorrect as Google's privacy policies and disclosures all adopt California law.

**Signal(s):** Google objects to this defined term because it "would include any type of information or symbol … that exists." But this objection fails to account for the fact that within each specific RFA where "Signal" is used, the term is modified by other information that limits its scope to a particular type of "Signal."

**Un-Synced User:** Plaintiffs clarify that the "Un-Synced User" includes all of the instances identified by Google – a user who has never synced on any Chrome instance, never synced on a specific Chrome instance, turned sync off on that Chrome instance, for whom sync is not functioning on that Chrome instance at that moment, or is operating Chrome without having enabled sync on their own.

## SPECIFIC RESPONSES & OBJECTIONS

**RFA No. 1:** In response to RFA No. 1, Google stated: "Google admits that when Plaintiffs were using the Chrome browser with or without sync enabled, but while signed into a Google website, to visit a website that uses certain Google services (such as Google Analytics and Google Ad Manager), and while Plaintiffs had selected settings in their Google Account to permit their site activity data to be stored in their Google Account, Google received information that it stored in Plaintiffs' accounts (where they were able to review it)."

This response fails to account for signed-out Chrome user and is improperly limited to "certain Google services." Moreover, it is unclear what Google means by "signed into a Google website" and "selected settings." RFA No. 1 poses a straightforward inquiry – does "Chrome sen[d] Personal Information about Plaintiffs to Google when they were using the Chrome browser and were not synced." Google must answer this RFA.

**RFA No. 2, 6, 7:** Google refuses to answer RFA Nos. 2, 6, and 7 because they purportedly "fail[] to specify, for example, whether the user is a Google Account holder, the browser mode and settings being used, the websites and services being used, and the specific categories of information at issue. Google therefore cannot truthfully admit or deny Request."

Counsel for Google
November 9, 2021
Page 3

BLEICHMAR FONTI & AULD LLP
DiCELLO LEVITT GUTZLER LLC
SIMMONS HANLY CONROY LLC

Google's objection is without merit. Plaintiffs have specified the browser mode, expressly limiting the Request to "when an Un-synced User visits a non-google website…." Plaintiffs have also specified the categories of information at issue, providing Google with the definition for Personal Information that is consistent with the allegations in the FAC and with California law.

With respect to "the websites and services being used," specificity is not required. Plaintiffs have adequately identified the scope as "a non-Google website." In addition, Plaintiffs defined Google Source Code to mean

> "any set of instructions derived in whole or in part from Google or any of its properties or divisions that is placed on a non-Google owned-and-operated property that commands a user's browser to make a connection with and transmit data or information to Google regardless of whether the user is interacting directly with Google or not via the domains or subdomains of Google.com, Doubleclick.net, Google-Analytics.com, GoogleTagManager.com, GoogleAPIs.com, or any other Google property and which includes but is not limited to Google products associated with Google.com, Google Analytics, Doubleclick, Display Ads, Search, Maps, Storage, Fonts, Recaptcha, the Google Custom Search Engine or any other Google property."

With respect to browser settings, specificity is neither required nor relevant. This RFA asks Google to admit that Google Source Code "*instructs* the Chrome Browser to send Personal Information." (Emphasis added). Whether any particular browser setting causes Chrome to ignore, disregard or modify the instruction is a separate question. In any event, to the extent Google claims that any particular browser "settings" would prevent Chrome from sending any form of Personal Information to any non-Google property, then Google must identify those discrete and narrow exceptions, rather than refusing to respond. *See, e.g.* Fed. R. Civ. P. 36(a)(4) ("A denial must fairly respond to the substance of the matter; and when good faith requires that a party qualify an answer or deny only a part of a matter, the answer must specify the part admitted and qualify or deny the rest").

**RFA NO. 3:** RFP No. 3 asks Google to "[a]dmit that when the Chrome browser is in its default state in an un-synced mode the Chrome browser will transmit Personal Information to Google anytime an Un-synced User visits a website on which Google Source Code appears." Google denied this RFA, without explanation. Plaintiffs seek to meet and confer on this denial.

**RFA No. 8 & 9:** For RFA Nos. 8 & 9, Plaintiffs clarify that by "profiles" they are referring to information about Chrome users that are associated with, derived from, inferred from, compiled from the user's internet activity, for example, GOOG-CALH-072865 to GOOG-CALH-00072887, and also referred to in GOOG-CALH-0027536 (also discussed by Google's 30(b)(60 representative David Monsees), GOOG-CALH-00062177, GOOG-CALH-00069514, GOOG-CALH-00071646, GOOG-CALH-00085292, GOOG-CALH-00103871, GOOG-CALH-00160656.

Counsel for Google
November 9, 2021
Page 4

BLEICHMAR FONTI & AULD LLP
DiCELLO LEVITT GUTZLER LLC
SIMMONS HANLY CONROY LLC

**RFA No. 11, 13, 14, 21:** For these RFAs, Google responded: "Google admits that if a Chrome user is signed in to a Chrome browser, and signed in to a Google website, and did not have sync enabled on the Chrome browser, then Chrome *may send a bit*, *which depending on the circumstances, may indicate to Google* that sync is not enabled on that Chrome browser at that time. This bit is only sent if the user is also signed in to their Google Account at the browser level." (Emphasis added). Plaintiffs seek clarification regarding the emphasized language.

**RFA No. 12:** RFP No. 3 asks Google to "[a]dmit that Chrome sends a Signal to Google that indicates when a Chrome user is not signed-in and not synced." Google denied this RFA, without explanation. Plaintiffs seek to meet and confer on this denial.

**RFA No. 15:** See RFA No. 11. In addition, Plaintiffs seek clarification as to what part of this Request is being denied.

**RFA No. 16:** See RFA No. 11. In addition, Plaintiffs seek clarification as to what Google means when it says "user re-opens browser."

**RFA No. 19:** RFP No. 19 asks Google to "[a]dmit that when a user clicks to un-pause or re-start Sync, Chrome will send previously un-synced communications stored by the browser to the Chrome sync service." Google refused to answer this RFA on the ground that it is "vague, and states a general proposition with respect to a nuanced topic that turns on circumstances that are not specified in the Request." Plaintiffs seek clarification as to this objection.

In addition, Google objects to the phrase "un-synced communications stored by the browser" as vague. Plaintiffs clarify that by this phrase they are referring to communications the user had previously made while they were in a not-synced mode. For reference, Plaintiffs point Google to questions that AdbelKarim Mardini was unable to answer in the deposition of November 23, 2021.

**RFA No. 22:** See RFA No 11. In addition, Plaintiffs seek clarification as to what part of this Request is being denied.

**RFA No. 23:** Google's response to RFA No. 23 is not responsive to the actual request. Google must admit or deny whether it "maintains records of when Chrome users choose to sync or un-sync."

**RFA No. 25:** RFA No. 25 asks Google to "[a]dmit that Google maintains records of when Chrome users sign-in to a Google Account without also enabling sync." Google has denied this request, but Plaintiffs' review of Google internal document, for example, documents related to MagicEye indicate that Google does in fact maintain a record of when Chrome users sign-in to their Google Account and, separately, when they Sync. Plaintiffs seek to meet and confer on this inconsistent response.

**RFA Nos. 26, 38 & 41:** With respect to these Requests, Google objects that "'capable of' is wholly irrelevant to the parties' claims and defenses, which turn on actual practices, not

Counsel for Google
November 9, 2021
Page 5

BLEICHMAR FONTI & AULD LLP
DiCELLO LEVITT GUTZLER LLC
SIMMONS HANLY CONROY LLC

hypothetical 'capabilities.'" But Google's capabilities are relevant to this action. Ascertainability is an element of class certification. It is also relevant to liability relating to the definition of "personal information" under California law as that which identifies or is *reasonably capable* of identifying an individual.

Further, Google's capabilities are not "hypotheticals." As highlighted in Plaintiffs' September 9, 2021 Letter, for example, Google built its UMA and UKM logs to be linkable to GAIA identifiers, thus Google's "capability" to join that data is beyond mere hypothetical.

To the extent Google seeks to stand on this objection, Google is then precluded from disputing ascertainability or liability issues related to personally identifying information.

**RFA Nos. 30, 32, 33 :** Google refuses to respond to these Requests on the ground that they are outside the scope of this case, citing Dkt. No. 329. Google's reading of the order is incorrect. The Court only ruled that not *everything* sent to google.com should be the subject of discovery: "each and every transmission, whether or not authorized, neither can nor should be the subject of discovery in this case.'" Dkt. No. 329. Google's willful misreading of the Court's order was explicitly rejected by the Court on November 4, 2021, when the Court noted that device identifiers include Zwieback identifiers (Google attempted to exclude them on the basis that they are designed only for google.com). *See* Nov. 4, 2021 Hrg.. Tr. 16:3-4 ("THE COURT: ...THE WAY I READ THE SPECIAL MASTER'S ORDER, ZWIEBACK WOULD BE INCLUDED"); Nov. 12, 2021 Order (specifically including Zwieback identifiers as a relevant data source)

**RFA No. 31:** Google objects that "Google API logs" is vague and ambiguous. Plaintiffs clarify that this phrase refers to logs relating to data transmissions from Chrome to the domain googleapis.com or any subordinate or related to it.

**RFA No. 36:** Google objects that the phrase "Chrome transmissions data" is unclear and undefined. Plaintiffs clarify that this phrase means data or information that Chrome transmits to Google properties, including, for example, the data parameters received by the BOW server.

**RFA No. 37:** In response to this Request, Google "admits that it has records of Chrome instances on which sync was enabled during the First Run Experience. Google otherwise denies the Request." But this answer is not responsive to the RFA, which specifically asks Google to "[a]dmit that Google records the instances of Google Account Holders who synced during their First Run Experience with a Chrome Instance." Google should answer the Request as written.

**RFA No. 39:** This Request asks Google to "[a]dmit that Google is capable of identifying Google Account Holders who synced a Chrome Instance during their First Run Experience and never paused or stopped syncing." Google objected as to "capabilities" and responded that it "admits that for some versions of Chrome it is able to identify instances of Chrome on which sync was enabled during the First Run Experience and which continue to be used with sync enabled. After conducting a reasonable inquiry, the information Google knows and can readily obtain is insufficient to enable it to admit or deny that it is capable of identifying Google Account Holders who synced a Chrome Instance during their First Run Experience and never paused or stopped syncing." Plaintiffs request to meet and confer about this response.

Counsel for Google  
November 9, 2021  
Page 6

**BLEICHMAR FONTI & AULD LLP**  
**DiCELLO LEVITT GUTZLER LLC**  
**SIMMONS HANLY CONROY LLC**

**RFA No. 43:** In response to this Request, Google "admits that it followed Magistrate Judge van Keulen's order that 'Google need not suspend its standard retention periods applicable to data logs that reflect event-level data of Chrome users in the United States.' Dkt. 174. Google otherwise denies the request." Plaintiffs seek clarification as to what Google is admitting and what Google is otherwise denying.

Sincerely,

Jay Barnes  
jaybarnes@simmonsfirm.com

Lesley Weaver  
lweaver@bfalaw.com

David Straite  
dstraite@dicellolevitt.com

cc, via email:

<u>Google Counsel</u>

qecalhoun@quinnemanuel.com

<u>Plaintiffs' Counsel</u>

akeller@dicellolevitt.com  
aprom@dicellolevitt.com  
aornelas@bfalaw.com  
atruong@simmonsfirm.com  
ejohnson@simmonsfirm.com  
scruz@dicellolevitt.com