# EXHIBIT 2

### [REDACTED VERSION]

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

| | |
|---|---|
| *In re Google RTB Consumer Privacy Litigation,*<br><br>This document applies to: *all actions* | Case No. 4:21-cv-02155-YGR<br><br>**DECLARATION OF PROFESSOR ZUBAIR SHAFIQ IN SUPPORT OF PLAINTIFFS' MOTION FOR CERTIFICATION OF SETTLEMENT CLASS AND FINAL APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>*Redacted Version*<br><br>Judge: Hon. Yvonne Gonzalez Rogers<br>Date: TBD<br>Time: TBD<br>Courtroom: 1, 4th Floor |

I, Zubair Shafiq, hereby declare as follows:

1. I am a Professor of Computer Science at the University of California, Davis, where my research and education efforts broadly focus on online security and privacy, including personal data collection, sharing, and usage in the online advertising ecosystem. I have been retained by the counsel for plaintiffs as an expert in this matter and I submit this declaration in support of plaintiffs' Motion for Certification of Settlement Class and Final Approval of Class Action Settlement. I have personal knowledge of the facts stated herein and, if called upon to do so, could and would testify competently thereto.

BACKGROUND

2. I previously submitted two expert reports in support of plaintiffs' July 14, 2023 Motion for Class Certification, and one expert report in support of plaintiffs' November 8, 2024 Renewed Motion for Class Certification.[1] I also consulted with counsel for plaintiffs during the settlement discussions leading up to the proposed settlement with Google.

3. My expert qualifications generally are set forth in paragraphs 1-7 of the July 14, 2023 Shafiq Report, and my updated curriculum vitae is attached as Exhibit A to the November 8, 2024 Shafiq Supplemental Report. My hourly rate is $500. My fee is neither contingent on the results of this case nor contingent on the content of this declaration.

4. In light of my expertise and background, my extensive prior expert work in this matter, and my involvement with respect to some aspects of the proposed settlement, counsel for plaintiffs have asked me to comment on the technical aspects of the proposed settlement and the benefits that the settlement will provide to Google's U.S. account holders if the settlement is approved by the Court and the technical changes contemplated in the settlement are implemented by Google.

---

[1] Expert Class Certification Report of Professor Zubair Shafiq, July 14, 2023 ("Shafiq Report") (ECF 545-5); Expert Class Certification Rebuttal Report of Professor Zubair Shafiq, Nov. 29, 2023 ("Shafiq Rebuttal Report") (ECF 616-5); Supplemental Expert Class Certification Report of Professor Zubair Shafiq, Nov. 8, 2024 ("Shafiq Supplemental Report") (ECF 750-8).

## OVERVIEW OF GOOGLE'S RTB AUCTIONS

5. At a high level, this case focuses on Google's Real Time Bidding (or RTB) advertising auction process. Google RTB sells advertising inventory of publishers (websites or apps) through online auctions to hundreds of RTB participants (also referred to as bidders) around the world. RTB participants include advertisers, data brokers, ad exchanges running their own sub-auctions, and social media companies, like Meta. The RTB auction process for any ad opportunity is completely automated and consists entirely of computers exchanging data with one another within a matter of milliseconds; faster than the blink of an eye. The name "real time bidding" accurately reflects the speed in which the RTB auction process occurs since, to the user, the ad appears virtually instantaneous – as soon as a website or mobile app loads. *See* Shafiq Report at ¶¶ 17-25 (describing, generally, Google's RTB auction process).

6. The RTB auction process involves data sharing by Google with RTB participants regardless of whether these participants bid in the auction or win the auction. The four primary methods of data sharing in the RTB auctions include bid requests sent out by Google to RTB participants, bid responses sent back to Google from RTB participants, and cookie matching and user lists managed by Google and provided to RTB participants. *Id.* As set forth in the Shafiq Report, each RTB bid request includes hundreds of data fields containing information about the user and his or her device, information used by the RTB participants to determine whether and how much to bid to win the auction and get to show that user an ad. *See* Shafiq Report at ¶¶ 28-29.

7. In the litigation, plaintiffs contend that Google's RTB auction process raises significant privacy concerns for Google's U.S. account holders because of the nature and volume of information shared by Google with RTB participants and the lack of control Google's U.S. account holders have over their information shared in Google's RTB auctions. Plaintiffs allege that the information Google shares in the RTB auctions about its U.S. account holders constitutes personal information under Google's privacy policy and California law, and that Google should not be sharing and selling that personal information without disclosure to and the consent of its U.S. account holders.

8. In my capacity as a technical expert for plaintiffs in this matter, I analyzed more than ▮▮▮▮ of RTB auction data produced by Google,[2] reviewed dozens of confidential internal Google documents concerning the RTB auctions,[3] reviewed the declarations and/or deposition testimony of certain Google employees working on the RTB auctions, and reviewed the expert reports and deposition testimony of Google's two technical experts, Dr. Aaron Striegel, a computer science professor at Notre Dame University, and Dr. Konstantinos Psounis, an electrical and computer engineering professor at University of Southern California.

9. Based on this work, and as set forth in my three expert reports, I concluded that there is a common set of about 60 data fields uniformly shared by Google in all Google RTB auctions, and that these common data fields collectively contain enough information in each bid request and are sufficiently specific to allow RTB participants to identify, associate with, or reasonably link that data to a particular person or household. In other words, these data fields, taken together in an RTB bid request, are personally identifying of the person or the person's household. *See* Shafiq Report at ¶¶ 26-89; Shafiq Supplemental Report at ¶¶ 24-44.

10. In my expert reports, I identified a number of bid request data fields that were particularly problematic from a privacy perspective, including, among others, the Google User ID (a unique Google identifier), the IP address (the internet address of the device being used), certain device information (notably, the user agent field (which includes information about the device and software being used) and device ID (a unique Google identifier)), detected language, and certain location information describing where the user is at the time. *See* Shafiq Report at ¶ 42 (discussing specific RTB data fields present in all the named plaintiffs' RTB bid requests) and ¶ 46 (discussing information transmitted by Google in exemplars of the named plaintiffs' bid requests); Shafiq Supplemental Report at ¶ 27 (discussing specific RTB data fields present in the class RTB bid

---

[2] This auction data included almost ▮ million bid requests for the seven named plaintiffs and almost ▮ billion bid requests for the class as a whole. *See* Shafiq Report at ¶ 35 (discussing plaintiff data); Shafiq Supplemental Report at ¶ 17 (discussing class data).

[3] These documents are listed in Exhibit B to the Shafiq Report.

requests) and ¶¶ 43-44 (discussing information transmitted by Google in exemplars from the class bid requests).

11. Some of these data fields, like the Google User ID and device ID, are what are called "pseudonymous" identifiers. Pseudonymous identifiers are particularly problematic from a privacy perspective because they are unique to a person or device and can thus easily be tracked across the internet to identify that person or device.[4] Other data fields, like the user agent and IP address, are problematic because they contain so much specific information that even the combination of just these two fields, out of the hundreds transmitted in each bid request, almost always points to a unique user and device, a fact I confirmed in my analysis of the class data and that Google itself identified as being problematic in its own internal documents, some of which I cited in the Shafiq Report. *See* Shafiq Report at ¶¶ 50-51, 54, 61, 66-68.

12. I also identified Google's use of cookie matching and user lists in connection with the RTB auctions as being problematic from a privacy perspective. *See* Shafiq Report at ¶¶ 23-25. Cookie matching enables RTB participants to match their cookies with Google's, thus allowing the RTB participants to link together information on a particular user that they have gathered with information Google has gathered. *Id*. at ¶ 23. User lists are lists of identifiers provided to RTB participants by Google for users who have visited one or more specific webpages. *Id*. at ¶¶ 24-25.

13. Another privacy concern I identified during my expert work in this matter is the sheer inescapability and ubiquity of Google RTB for Google's U.S. account holders. Google RTB is inescapable because Google has acknowledged that there is currently no way for its U.S. account holders to avoid or even limit having their information shared by Google with RTB participants in the RTB auctions.[5] *See* Shafiq Supplemental Report at ¶ 47. And Google RTB is ubiquitous because,

---

[4] My expert reports also discussed the Google Account ID, or GAIA, but because GAIA information is not transmitted in RTB bid requests, it is not addressed in the proposed settlement

[5] This is a significant issue because plaintiffs' other technical expert, Prof. Christopher Wilson, has opined that existing Google privacy and user controls are insufficient to protect Google's U.S. account holders' personal information in the RTB auctions. *See* Expert Class Certification Report of Prof. Christopher Wilson, July 14, 2023 (ECF 545-6) at ¶¶ 101-123. Based on my own work and experience and review of Prof. Wilson's work, I agree with Prof. Wilson's analysis and conclusions with respect to Google's existing privacy and user controls as they apply to the Google RTB auctions.

1. as my analysis of the named plaintiff data and the class data showed, any active Google U.S. account holder using the internet is almost certainly going to have their data shared and sold in Google RTB auctions.[6]

14. My analysis of the named plaintiff data showed that in just an eight-week period, the seven named plaintiffs had their data shared and sold in Google RTB auctions ▮ million times, which works out to more than ▮ times a day for the seven named plaintiffs. *See* Shafiq Report at ¶¶ 36-37. My analysis of the class data showed that in just a one-hour period, Google U.S. account holders had their data shared and sold in Google RTB auctions ▮ billion times, which works out to almost 1.2 trillion times a day. *See* Shafiq Supplemental Report at ¶¶ 18-19.

15. As discussed in more detail below, the proposed settlement, if approved by the Court and implemented by Google, will address the privacy issues I identified in my expert reports and, in my opinion, provide substantial benefits to all U.S. Google account holders.

## THE PROPOSED SETTLEMENT

16. It is my understanding that under the terms of the proposed settlement, once the settlement is approved by the Court, Google will provide all U.S account holders with the ability to limit the information Google shares about them with RTB participants in its RTB auctions. Google will provide this ability through a new user control (the "RTB Control") that will be available to U.S. account holders at the account and device levels, and that will allow those account holders to choose whether to limit the information that Google shares about them with RTB participants in its RTB auctions. Google U.S. account holders will be able to implement the new RTB Control regardless of whether they are signed in or signed out of their Google account.[7]

---

[6] Google RTB is used on 15.6 million different websites and more than 1.6 million different apps in the United States. *See* Shafiq Supplemental Report at ¶ 48. This is borne out in the class data, which showed that in just a one-hour period, bid requests containing information for 357,380 unique website domains and 221,477 unique apps were shared for Google's U.S. account holders. *Id*.

[7] The settlement also requires Google to make new disclosures to its U.S. account holders about the Google RTB auction process and the new RTB Control.

17. If a Google U.S. account holder chooses to limit data sharing by Google through the RTB Control, no personalized ads will be shown, and the following categories of information will be modified or removed altogether from RTB bid requests:

   a. All pseudonymous identifiers will be removed from RTB bid requests, including the Google User ID and the device ID.

   b. The IP address will be removed from RTB bid requests.

   c. No user lists will be shared or used in connection with RTB bid requests.

   d. No cookie matching will occur in connection with RTB bid requests.

   e. Bid request fields that contain user agent data will be generalized to the coarsest or highest version level in the RTB bid request.[8]

18. Under the terms of the proposed settlement, Google will maintain the technical changes summarized in paragraphs 16-17 above for a period of at least three years following the implementation of the settlement.

19. For the reasons discussed below, it is my opinion that the technical changes summarized in paragraphs 16-17 above directly address the privacy issues I identified in my expert reports in this matter and provide substantial benefits to all of Google's U.S. account holders.

20. As noted above, Google's U.S. account holders currently have no way to avoid having their information shared and sold in the Google RTB auctions. The settlement will provide Google's U.S. account holders, for the very first time, with an actual and meaningful choice as to whether to allow Google to continue sharing and selling their personal information in Google RTB auctions. This choice, by itself, is a meaningful and significant benefit provided to all Google U.S. account holders by the settlement, whether they exercise that choice or not.

---

[8] Google appears to have already addressed, prior to the settlement, my concerns about the detected language and location fields. According to Google, the detected language field in RTB bid requests is based only on the language of the site or app being visited, not on account or other user/device information. Similarly, location data in RTB bid requests is coarsened to ensure that the data provided identifies a geographic area that includes a sufficiently large number of users or devices so as to make identification of a unique user or device unlikely.

21. The settlement also mandates that Google disclose information about the Google RTB auctions and the new RTB Control to its U.S. account holders. These new disclosures by Google about what it is doing with U.S. account holders' personal information and how those account holders can have input into the process to limit the sharing and sale of that information is also a significant benefit of the settlement.

22. The RTB Control will be available at both the account and device levels and will work for both signed-in and signed-out Google U.S. account holders. This is a significant settlement benefit for Google's U.S. account holders and important from a privacy perspective because it does not require those account holders to be or remain signed-in to a Google account in order to obtain the benefits of the settlement.

23. For those Google U.S. account holders who implement the RTB Control to limit the information that Google shares and sells in the RTB auctions, the settlement benefits are even greater. While these Google U.S. account holders will still have some information about them shared and sold by Google in the RTB auctions, the removal or generalization of the specific data fields listed in paragraph 17 above from the bid requests, and the stopping of the use of cookie matching and user lists, will make it much harder, if not impossible, for RTB participants to identify and/or track those Google U.S. account holders, and result in those Google U.S. account holders no longer receiving personalized ads. In essence, if the RTB Control is implemented, the information transmitted by Google in RTB auctions will no longer identify, be associated with, or be reasonably linkable to a particular person or household.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on this 28th day of August 2025 in Davis, California.

Dated: August 28, 2025

_____
Zubair Shafiq, Ph.D.