1

**QUINN EMANUEL URQUHART & SULLIVAN, LLP**

2

Diane M. Doolittle (CA Bar No. 142046)
dianedoolittle@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

Andrew H. Schapiro (admitted *pro hac vice*)
andrewschapiro@quinnemanuel.com
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606
Telephone: (312) 705-7400
Facsimile: (312) 705-7401

Stephen A. Broome (CA Bar No. 314605)
stephenbroome@quinnemanuel.com
Viola Trebicka (CA Bar No. 269526)
violatrebicka@quinnemanuel.com
Crystal Nix-Hines (CA Bar No. 326971)
crystalnixhines@quinnemanuel.com
Alyssa G. Olson (CA Bar No. 305705)
alyolson@quinnemanuel.com
Marie Hayrapetian (CA Bar No. 315797)
mariehayrapetian@quinnemanuel.com
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Josef Ansorge (admitted *pro hac vice*)
josefansorge@quinnemanuel.com
Xi ("Tracy") Gao (CA Bar No. 326266)
tracygao@quinnemanuel.com
Carl Spilly (admitted *pro hac vice*)
carlspilly@quinnemanuel.com
1300 I. Street, N.W., Suite 900
Washington, D.C. 20005
Telephone: 202-538-8000
Facsimile: 202-538-8100

Jomaire A. Crawford (admitted *pro hac vice*)
jomairecrawford@quinnemanuel.com
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100

Jonathan Tse (CA Bar No. 305468)
jonathantse@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, CA 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

*Attorneys for Defendant Google LLC*

3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION**

22
23

PATRICK CALHOUN, et al., on behalf of
themselves and all others similarly situated,

Plaintiffs,

vs.

GOOGLE LLC,

Defendant.

Case No. 4:20-cv-05416-YGR-SVK

**[GOOGLE LLC'S PROPOSED]
FINDINGS OF FACT AND
CONCLUSIONS OF LAW ON
PLAINTIFFS' MOTION FOR AN ORDER
OF SANCTIONS FOR GOOGLE'S
DISCOVERY MISCONDUCT**

The Hon. Susan van Keulen

24
25
26
27
28

## I.    INTRODUCTION

Plaintiffs Patrick Calhoun, et al. ("Plaintiffs") filed this motion seeking evidentiary and monetary sanctions against Defendant Google, LLC ("Google") for alleged discovery failures by Google.

At the Court's request (Dkt. 672, 676), Google proposes the following findings of fact and conclusions of law.

## II.    PLAINTIFFS' ALLEGATIONS AND REQUEST FOR SANCTIONS

1.    Plaintiffs allege that Google engaged in four categories of discovery misconduct.

2.    Based on these allegations, and pursuant to the Court's inherent authority and Federal Rules of Civil Procedure 16(f), 37(b), 37(c), and 37(e), Notice of Motion i, Plaintiffs move for five separate sanctions, Dkt. 669-2 ("Proposed Order").

3.    First, Plaintiffs allege that Google withheld discovery concerning signals that indicate whether and when users are synced, and that Google made false statements to the Court regarding the existence of such signals. Mot. 1–2.

4.    In connection with these allegations, Plaintiffs ask the Court to preclude Google "from arguing that the absence of signals from which browser state can be determined may not be used as evidence" and from arguing "that the proposed Class cannot be ascertained, damages appropriately apportioned, or that the proposed Class definition, which is defined as to include only users who are not synced, contains any 'uninjured' class members by reason of an inability to identify users who are not synced." Proposed Order ¶ 3.

5.    Second, Plaintiffs allege that Google refused to produce data associated with the Named Plaintiffs in violation of Court orders. Mot. 2–3.

6.    Third, Plaintiffs allege that Google spoliated Biscotti-keyed and Zwieback-keyed data associated with devices Plaintiffs may have used. Mot. 2.

7.    In connection with these two sets of allegations concerning Named Plaintiffs' data, Plaintiffs ask the Court to issue a jury instruction as follows:

> Plaintiffs commenced this action by filing a complaint on July 27, 2020, which alleged that the Chrome Web Browser unlawfully disclosed information of Chrome users who did not enable "Sync" to Google. Upon the filing of this complaint,

Defendant Google LLC ("Google") was under a duty to preserve evidence, including evidence related to the information that was alleged to be unlawfully disclosed. Google failed to comply with this duty. Specifically, Google failed to prevent the destruction and loss of relevant evidence that would show the full scope, scale and nature of information that was unlawfully disclosed from Chrome to Google related to Named Plaintiffs and Class Members.

I instruct you, members of the jury, as matter of law, that Google's failure to preserve evidence constitutes "spoliation of evidence" and was the direct result of Google's failure to perform its discovery obligations. You may presume the following:

*First*, that Google destroyed relevant evidence. Evidence is relevant if it would have clarified a fact at issue in the trial and otherwise would naturally have been introduced into evidence.

*Second*, that the evidence destroyed by Google was favorable to Plaintiffs and, had the evidence been preserved and produced, it would have shown that Chrome was in fact unlawfully disclosing personal information of Named Plaintiffs and Class Members to Google and that the nature and volume of information being unlawfully disclosed was objectively unreasonable and highly offensive.

Proposed Order ¶ 4.

8.    Finally, Plaintiffs allege that Google withheld from Plaintiffs and the Court the existence of a project called ███████, which they claim was ██████████ ████████████████████████████████████████████████████ ████████. Mot. 3–4.

9.    In connection with these allegations concerning ███████, Plaintiffs ask the Court to strike Google's affirmative defense of consent and to preclude Google from arguing "that it obtained consent for any of the practices challenged in this case." Proposed Order ¶ 5.

10.    Additionally, Plaintiffs ask the Court to find Google in civil contempt "for abuse of the discovery process," Dkt. 669-2 ("Proposed Order") ¶ 2, and to grant Plaintiffs monetary sanctions in the form of "[a]ll fees and costs related to the Special Master discovery process" and the opportunity to seek "reimbursement for all fees and costs related to" Google's MSJ, *id.* at 3.

## III.    EVIDENTIARY OBJECTIONS

11.    Google objects to the Joint Declaration of Jason Barnes, Lesley Weaver, and David Straite in support of Plaintiffs' motion. (Dkt. 669-3). Specifically, Google objects to paragraphs 2–14, 19–20, 25, 28–31, 34-35, 37–43, 45, 49–52, 54–55, 61–64, 67, 70, 74–76, 78–81, 83, 85, 89, 91, 95–96, 98, 100, 103–104, 106–109, 111, 113, 119–121, and 124. Opp. 1 n.1.

12.     Google argues that these paragraphs contain conclusions and argument in violation of Local Rule 7-5(b). *Id.*

13.     The Court agrees that the Joint Declaration advances counsel's conclusions and argument rather than "only facts," as the rule requires. *See, e.g.*, Dkt. 669-3 ¶ 11 ("Rather than correct the record and acknowledge the existence of Not Synced Signals, Google objected that the interrogatories sought 'information that exceeds the scope of Google's preservation obligations established by the Court in this action.'"); *id.* ¶ 11 n.1 ("Google's objection[s] . . . are baseless . . . ."); *id.* ¶ 14 ("Google also misrepresented the record regarding the Not Synced Signals in its responses and objections to Plaintiffs' Requests for Admission."); *id.* ¶ 19 ("Google failed to comply."); *id.* ¶ 34 ("[W]ith *eight minutes* left to the end of fact discovery, Google finally amended its discovery answers . . . ." (emphasis in original)); *id.* ¶ 41 ("Gaia and Zwieback identifiers are co-mingled, disposing of the myth that Zwieback logs are 'anonymous'"); *id.* ¶ 75 ("Google refused to comply with this order."); *id.* ¶ 81 ("[I]t would have been easy for Google to search, extract, and preserve pre-Complaint Biscotti-keyed data for all Plaintiffs. Google simply chose not to do so."); *id.* ¶ 124 ("Google's refusal is based entirely on the inconvenience to counsel of providing mere notice to a large number of publishers.").

14.     Google further objects to Plaintiffs' Notice of Motion on the basis that it "improperly contains argument beyond the 25-page limit set by the local rules," in violation of Local Rule 7-2. Opp. 14 n.14.

15.     Plaintiffs' Notice of Motion contains approximately two pages of argumentative summary beyond the 25 pages allowed under the local rules. Notice of Motion i–iii.

16.     Accordingly, the Court **SUSTAINS** Google's objections and **STRIKES** the following:

a.     Paragraphs 2–14, 19–20, 25, 28–31, 34-35, 37–43, 45, 49–52, 54–55, 61–64, 67, 70, 74–76, 78–81, 83, 85, 89, 91, 95–96, 98, 100, 103–104, 106–109, 111, 113, 119–121, and 124 of the Joint Declaration (Dkt. 669-3). *See Hinson v. Metro. Life Ins. Co.*, 2012 WL 13054268, at *1 (N.D. Cal. Aug.

1, 2012); *First Mercury Ins. Co. v. Great Divide Ins. Co.*, 241 F. Supp. 3d 1028, 1045 (N.D. Cal. 2017).

        b.    The section of Plaintiffs' Notice of Motion titled "SUMMARY OF DISCOVERY MISCONDUCT AT ISSUE."

17.    The Court further **STRIKES** the following portions of Plaintiffs' Rebuttal Declarations, which likewise contain conclusions and argument in violation of Local Rule 7-5(b):

        a.    Paragraphs 6, 10, 14–15, 21, 26–27, 28–29, 31–36, 38–40, 42–45, 47, 50, 53, 58, and 64 of Plaintiffs' Joint Rebuttal Declaration (Dkt. 776-5).

        b.    Paragraphs 5, 7, 24–26, and 29 of the Declaration of Richard M. Smith (Dkt. 776-7).

        c.    Paragraphs 11–12, and 35 of the Declaration of Zubair Shafiq (Dkt. 776-13).

18.    These declarations advance conclusions and argument rather than "only facts," as required by Local Rule 7-5(b). *See, e.g.*, Dkt. 776-5 ¶ 32 ("***Google altered the quote for the Opposition brief*** . . . . To ensure an accurate record without the adulteration caused by Google's bad-faith artistic edits . . . ." (emphasis in original)); *id.* ¶ 53 ("Counsel's statement was unequivocal, but this was a lie."); Dkt. 776-7 ¶ 26 ("Google's statement . . . is deeply misleading."); Dkt. 776-13 ¶ 12 ("In summary, Google's statement . . . is false.").

## IV.    FINDINGS OF FACT

### A.    Case Background

19.    Plaintiffs filed this lawsuit on July 27, 2020. Dkt. 1.

20.    On September 10, 2021, Plaintiffs filed their Second Amended Complaint ("SAC"), currently the operative complaint in this action. Dkt. 302-4.

21.    In the SAC, Plaintiffs allege that Google improperly collected IP addresses, user-agent information, URLs, cookies, and other allegedly "personal" information when they visited third-party websites that use Google's advertising, analytics, and similar services. Dkt. 302-4 ¶¶ 112–159.

22.     Based on these allegations, the SAC asserts sixteen causes of action, six of which are being actively litigated.[1] Plaintiffs' six active claims are (1) violations of the California Invasion of Privacy Act, Cal. Pen. Code § 631; (2) intrusion upon seclusion; (3) breach of contract, (4) breach of the implied covenant of good faith and fair dealing; (5) statutory larceny, Cal. Pen. Code §§ 484 & 489; and (6) violations of the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq*. *Id.* ¶¶ 317–329, 338–364, 392–414.

23.     Plaintiffs assert these claims on their own behalf, and on behalf of a class of "all persons residing in the United States who used Google's Chrome browser on or after July 27, 2016 without choosing to Sync with any Google account and whose personal information was collected by Google. *Id.* ¶ 257.

24.     On October 14, 2021, Plaintiffs moved to certify the following class:

> All Google Chrome users in the United States who did not enable "Sync" while browsing the web using Chrome ("Not Synced Chrome Users") or who disabled "Sync" while browsing using Chrome ("Unsynced Users"), at any time between July 27, 2016 to the present (the "Class Period"). Browsing using the Chrome browser in Incognito mode is excluded from the Class.

Dkt. 339-4.

25.     Google has opposed Plaintiffs' motion for class certification. Dkt. 429.

26.     On November 30, 2021, Google moved for summary judgment on Plaintiffs' six remaining claims. Dkt. 395.

27.     Google's motion for summary judgment ("MSJ") seeks a ruling that Plaintiffs consented to Google's receipt of the data at issue because the Account Holder Agreements and Google Privacy Policy disclosed the data collection at issue and each named Plaintiff affirmatively selected "I agree" to one or both of those disclosures. *Id.*

28.     Plaintiffs' motion for class certification and Google's motion for summary judgment are currently pending.

---

[1]   Pursuant to Court order, Dkt. 51, the parties agreed on ten causes of action to litigate through trial, Dkt. 54. The Court dismissed four of those ten causes of action on March 17, 2021. Dkt. 142.

**B.    "Not-Synced" Signals**

     **1.    The "SyncDisabledEvent" and** ███████ **Signals**

29.    In 2015, Google introduced a signal called SyncDisabledEvent, which is ███████ ████████████████████████████████████████████████ Dkt. 747-4 ("Schumann Decl.") ¶ 12 & n.2.

30.    The introduction of this function is publicly disclosed on the Chromium issue tracker. *See* https://bugs.chromium.org/p/chromium/issues/detail?id=419552 (indicating that the "bug" that "When sync is disabled on a device, we need to notify the server that the client is no longer active" had been "Fixed" as of March 9, 2015).

31.    SyncDisabledEvent does not communicate to Google each time a user has disabled sync, and may be transmitted even when a user has not disabled sync. Schumann Decl. ¶¶ 13–14. Accordingly, SyncDisabledEvent is not a reliable signal to identify when sync has been disabled by a Chrome user. *Id.*

32.    In 2018, Google began a program called ████████████████████ ██████████████████████████████████████████████████ *Id.* ¶ 16. ████████ ██████████████████████████████████████████████████ ████████████████████. *Id.*

33.    Since 2019, Google has logged a signal also referred to as ████████ and denoted in its traffic logs as "sync_feature_enabled = false," to indicate when a user has signed into his Google account and the Chrome browser and has not turned on sync. *Id.* ¶ 17.

34.    The ████████ signal does not indicate every time a signed-in user is browsing without syncing his device. *Id.* ¶ 18. For example, the ████████ signal would not be recorded for users who are signed into their Google accounts but not signed into the Chrome browser. *Id.*

35.    Both the SyncDisabledEvent and ████████ signals are publicly disclosed in chrome://sync-internals/ and can be observed through inspecting network traffic with chrome://net-export/. Source code for these signals is available at https://source.chromium.org/chromium.

36.    As described above, neither the ▮▮▮ nor SyncDisabledEvent signal reliably records all instances in which users browse on Chrome without enabling sync. Nor do those signals, when taken in combination, reliably record all instances in which users browse on Chrome without enabling sync. *Id.* ¶ 19.

37.    For example, ▮▮▮ and SyncDisabledEvent cannot reliably record (either alone or taken together) the following types of users who browse on Chrome without enabling sync:

    a.    Users without a Google Account;

    b.    Users who enabled sync at one time but have since deleted their Google Accounts;

    c.    Users who signed out of their Google Accounts without disabling sync first;

    d.    Users who sign into their Google Accounts but sign out of their Chrome browser;

    e.    Users who stopped sync when not signed into the content area;

    f.    Users who disable sync for any, multiple, or all of the categories for which a user can enable or disable the sync feature (*e.g.*, apps, bookmarks, extensions, history, settings, passwords);

    g.    Users who clear Chrome's local data in Android apps management (*e.g.*, to clear storage space); and

    h.    Users who have factory reset their devices.

    *Id.* ¶¶ 14, 19.

38.    There is no log or set of logs within Google that reflects the unsynced browser state of all Chrome users. Accordingly, Google cannot readily identify all users browsing without sync enabled, or determine the number of such users. *Id.* ¶ 20.

39.    Google informed Plaintiffs that there is no universal signal that could be used to identify all members of Plaintiffs' purported class. Ansorge Decl. ¶ 86.

40.    Google did not deny the existence of "not-synced" signals. *Id.*

41.    On March 3, 2022, Plaintiffs proposed that Google build and preserve a universal "Do Not Sync (DNS or X-Not-Synced) signal." Ansorge Decl. ¶ 88.

## 2. The March 5, 2021 Hearing

42. On March 5, 2021, the Court held a hearing on Google's Motion for Protective Order.  Dkt. 137 ("Mar. 5, 2021 Hr'g Tr.").

43. As discussed in greater detail in Section IV.C.1 below, Google's motion concerned Plaintiffs' request that Google categorically preserve event-level data for Chrome users.

44. Prior to the hearing, the Court provided guidelines to assist the parties' preparation, including instruction that "Google is to be prepared to provide a general overview of the data collected by each of the following four data logs: My Activity, Analytics, Display Ad[s], and Sync Traffic." Dkt. 125.

45. During the hearing, the Court did not ask Google about "not-synced" signals, and Google made no representations about the existence of such signals. Mar. 5, 2021 Hr'g Tr.

46. At the hearing, Counsel for Plaintiffs informed the Court that they had run tests of transmissions from Chrome to Google and identified "the specific signal that the Chrome browser sends to Google to turn sync on and off." *Id.* 30:17–19.

47. At the hearing, the Court acknowledged that the "information in the logs . . . perhaps theoretically could help" Plaintiffs "identify and quantify the class," but explained that it was "not yet clear that a wholesale preservation of these logs is necessary" when "looking at relevance and . . . very keenly at proportionality."  *Id.* 38:12–15.

48. After the hearing, the Court authorized a Rule 30(b)(6) deposition on the issue of preservation, which Plaintiffs took on April 9, 2021. Ansorge Decl. ¶¶ 7, 10.

## 3. Discovery of Signals in Sync Traffic Logs

49. Between April 15, 2021 and May 31, 2021, Google produced over 100 documents discussing the ███████ signal. Dkt. 747-7 ("Olson Decl.") ¶ 2.

50. Google produced additional documents discussing the "SyncDisabledEvent" signal on July 30, 2021 and December 17, 2021. *Id.* ¶ 3.

51. On June 11, 2021, Plaintiffs questioned Google's corporate designee about "not-synced" signals. *See* Ansorge Decl. Ex. 4 (June 11, 2021 Rule 30(b)(6) Tr.) 402:18–403:6.

52.    On July 26, 2021, Plaintiffs proposed that Google employee Tim Schumann travel to Zurich, Switzerland, for his deposition. Ansorge Decl. ¶ 88 & Ex. 36.

53.    On August 27, 2021, Google offered to preserve "[i]nformation showing whether [a] user had sync enabled at the time of the log entry." Dkt. 293-4 at 2.

54.    Plaintiffs declined Google's preservation offer. Dkt. 294.

55.    On September 9, 2021, the Court issued an order appointing commissioners to take evidence under the Hague Convention in Zurich, Switzerland for the requested Schumann deposition. Ansorge Decl. ¶ 90; *see* Dkt. 301.

56.    On September 9, 2021, Plaintiffs served Google with a Rule 30(b)(6) notice covering topics related to sync signals, including the signals: "sync_feature_enabled," "is_sync_feature_enabled," "StartSync," and "StopSync." Ansorge Decl. ¶ 91.

57.    Google made Mr. Schumann available to testify—in his individual capacity and as Google's corporate witness on certain topics related to sync signals—on October 8, 2021 and October 11, 2021 in Zurich, Switzerland.

58.    Plaintiffs declined to take Mr. Schumann's deposition on either of those dates.

59.    Plaintiffs instead took Mr. Schumann's individual deposition on January 13, 2022. Ansorge Decl. ¶ 96.

60.    At Mr. Schumann's January 13, 2022 deposition, Mr. Schumann discussed both the ██████ signal and the SyncDisabledEvent signal (which Plaintiffs' counsel referred to as the "stop sync signal") at length. Schumann Decl. ¶ 12; *see also, e.g.*, Ansorge Decl. Ex. 39 (Schumann Tr.) 38:7–25; 214:4–217:25.

61.    Plaintiffs declined to take a Rule 30(b)(6) deposition of Mr. Schumann. Ansorge Decl. ¶ 96.

62.    On October 12, 2021, Google submitted its Responses and Objections to Plaintiffs' First Set of Requests for Admission, in which it confirmed the existence of the "not-synced" signals at issue. Olson Decl. Ex. 4 (Responses & Objections to First Set of RFAs) at Nos. 13, 18.

63.    On November 23, 2021, Google produced a list of the data sources containing sync-state signals. Ansorge Decl. Ex. 34.

64.    On January 31, 2022, Google submitted its Responses and Objections to Plaintiffs' Fifth Set of Interrogatories and again confirmed the existence of "is_sync_feature_enabled" (*i.e.*, the ▮▮▮ signal) in the Chrome sync traffic logs. Olson Decl. Ex. 5 (Responses & Objections to Fifth Set of Interrogatories) at No. 34.

65.    Between March 2 and March 3, 2022, Mr. Schumann verified Google's responses to Plaintiffs' Interrogatory Nos. 28 and 31–34. During that process, Mr. Schumann realized that the responses did not reference by name the SyncDisabledEvent signal, which he had previously discussed extensively in his January 13, 2022 deposition. Schumann Decl. ¶ 15.

66.    On March 4, 2022, Google supplemented its responses to Interrogatory Nos. 33 and 34 to add the following language:

> When a Chrome user stops sync, the Chrome client sends a "SyncDisabledEvent" signal to the Chrome Sync server. The signal is a best effort communication with no guarantee of success. The signal is recorded in Chrome Sync's ▮▮▮ store, ▮▮▮▮▮▮ where the record is retained until the user clears the sync data associated with that Google Account or deletes that Google Account. The signal is also recorded in ▮▮▮▮▮▮▮."

*Id.* ¶ 15 & n.2.

### 4.    Google Did Not Engage in Discovery Misconduct in Connection with "Not-Synced" Signals

67.    Plaintiffs allege that Google concealed "not-synced" signals from Plaintiffs and made misrepresentations about their existence to the Court. Mot. 1. Google did neither.

68.    First, Google did not conceal the signals at issue from Plaintiffs.

69.    As discussed above, Google produced hundreds of documents concerning the SyncDisabledEvent and ▮▮▮ signals beginning in April 2021, identified these signals in multiple written discovery responses, and testified about them at deposition.

70.    Publicly available source code describes the SyncDisabledEvent signal. Schumann Decl. ¶ 12.

71.    Plaintiffs demonstrated their awareness of the signals at issue during discovery. As discussed above, Plaintiffs questioned Google's corporate designee about "not-synced" signals and requested a Rule 30(b)(6) deposition on "not-synced" signals (expressly referencing the ▮▮▮

[GOOGLE LLC'S PROPOSED] FINDINGS OF FACT AND CONCLUSIONS OF LAW

and stop sync signals). And on October 14, 2021, Plaintiffs submitted expert reports referencing the signals at issue. *See* Dkt. 339-14 (Sealed Smith Report) ¶¶ 110–158; Dkt. 339-20 (Sealed Shafiq Report) ¶ 64.

72.    Second, Google's representations at the March 5, 2021 hearing were truthful.

73.    Plaintiffs allege that the Court "specifically inquired as to whether Google maintained not synced signals, including whether the signals were maintained in sync traffic logs," and that Google responded that "if a user has not enabled sync, then . . . the Sync traffic logs will not show data for that user who has not enabled sync." Mot. 7.

74.    These allegations are inaccurate. The Court never inquired about the existence of "not-synced" signals at the March 5, 2021 hearing. Google's statement that "the sync traffic logs will not show data for that user who has not enabled sync" was part of its counsel's introductory statement and not related to "not-synced" signals. Mar. 5, 2021 Hr'g Tr. 14:13–20.

75.    In that context, Google's statement was not misleading. Plaintiffs allege that Google has improperly collected certain user data (*e.g.*, Chrome browsing history) when users have not enabled sync, and Google's statement accurately represented that Google's sync traffic logs would not show that data for users who have not enabled sync.

76.    Plaintiffs also allege that Google falsely represented that Google's sync traffic logs do not record identifiers for logged out users. Mot. 1. Again, Google's statement was accurate. At the March 5, 2021 hearing, Google stated that "sync traffic logs do not include any of the identifiers, the cookies, that Google uses for advertising when users are logged out of their Google account, or any of the identifiers that Google Analytics uses," and repeated that "sync traffic logs do not have any of these identifiers in them. They do not record identifiers for logged out users." Mar. 5 Hr'g Tr. 12:2–15.

77.    Plaintiffs do not dispute that sync traffic logs do not contain advertising cookies for users who are not logged in.

78.    Google's statement that it is not readily able to identify the number of unsynced users browsing on Chrome is likewise accurate, and Google's corporate witness David Monsees

1    testified as such in Google's Rule 30(b)(6) deposition. Pls. Ex. 6 (April 9, 2021 30(b)(6) Tr.) at

2    116:16–20, 117:2–8.

3        79.    In their Reply, Plaintiffs assert that Mr. Schumann testified in his deposition that

4    "compiling a list of not synced users via the ███ signal would 'be quick'," contradicting his

5    declaration in support of Google's opposition. Reply 2. This mischaracterizes Mr. Schumann's

6    testimony.

7        80.    During the quoted portion of his deposition, Mr. Schumann confirmed that an email

8    written by another Google employee represented the process for obtaining ███ traffic data from

9    Google servers as "quick." Schumann Tr. 95:24–96:7.

10       81.    But Mr. Schumann never testified that collecting ███ user data is equivalent to

11   "compiling a list of not synced users," as Plaintiffs claim. *Id.*; *cf.* Reply 2. As noted above, the

12   subset of users indicated by ███ does not include many categories of users who are browsing

13   without enabling sync, including users who have not signed in to Chrome or do not have a Google

14   Account.

15       82.    Mr. Schumann's deposition testimony is consistent with his declaration.

16       83.    In light of the above, Plaintiffs have failed to establish that Google committed

17   discovery misconduct or acted in bad faith.

### 5.    Google's Conduct Did Not Prejudice Plaintiffs

19       84.    Plaintiffs allege that Google "'destroyed' the relevant not synced signals" and

20   thereby deprived Plaintiffs of "a ready-made database of information to identify class members."

21   Mot. 19. These allegations are not accurate in light of the evidence.

22       85.    As a preliminary matter, Plaintiffs' allegation that Google "destroyed" relevant data

23   is misleading. On April 30, 2021, this Court issued a protective order authorizing Google to retain

24   its standard retention periods for Chrome users' event-level data. Dkt. 174.

25       86.    That order issued after extensive briefing and oral argument, and after Plaintiffs

26   took a Court-authorized Rule 30(b)(6) deposition on the issue of preservation. *See* Dkt. 129.

27

28

87.    In any case, sync traffic log data that was not preserved in accordance with the April 30, 2021 protective order would not have provided Plaintiffs with "a ready-made database" to identify class members, or any reliable way to do so.

88.    Chrome logs do not contain an indication of every instance in which a Chrome user browses without sync enabled. Schumann Decl. ¶¶ 14, 18–20.

89.    Plaintiffs have previously acknowledged that Google's existing log data does not show every instance in which a Chrome user browses without sync enabled. On March 3, 2021, Plaintiffs requested that Google create and preserve a new signal to track such browsing activity. Ansorge Decl. Ex. 35 at 2.

90.    Any prejudice is also ameliorated by the preservation plan the Court has ordered, which provides for preservation of the signals at issue going forward, and by the fact that SyncDisabledEvent in ███ is preserved as long as the user has a Google Account and does not choose to clear sync data. Dkt. 713-4; *see also* Schumann Decl. ¶ 15 n.2.

91.    Plaintiffs are not prejudiced by any alleged delay in preservation because, among other things, they informed the Court about testing "un-synced" signals in March 2021, had notice of "not-synced" signals since at least April 2021, rejected a prior preservation proposal offering to preserve information showing whether a user had enabled sync at the time of log entry, and failed to take discovery on the signals they now claim are relevant, including a noticed Rule 30(b)(6) deposition.

**C.    Named Plaintiff Data**

**1.    Google's Initial Preservation of Named Plaintiffs' Data**

92.    In September 2020, Google preserved data related to the Google Accounts Plaintiffs indicated were associated with the Named Plaintiffs in the Complaint. Ansorge Decl. ¶ 3.

93.    That data included Google Account subscriber information (*e.g.*, Google Account name, Google Account ID, date of account creation, email address, alternative email address, IP addresses and User Agents related to the Account holder's sign-ins) and My Activity information

(*e.g.*, browsing history and data related to activity on websites employing Google Ad Manager or Google Analytics). *Id.*

94.    During the parties' negotiations to develop an ESI protocol between October 2020 and January 2021, Plaintiffs requested that Google categorically preserve log data from "system, server, and network logs." Dkt. 109-4 ¶¶ 3–6.

95.    Google objected to Plaintiffs' request on burden grounds. *Id.*

96.    On January 21, 2021, Plaintiffs sent Google a letter concerning Google's objection, referring to Google's position as a "spoliation issue." *Id.* ¶ 7; Dkt. 109-5 at 1.

97.    On February 17, 2021, in response to Plaintiffs' request for preservation and claims of spoliation, Google filed an emergency motion for a protective order. Dkt. 108-4.

98.    Google engineered pipelines to preserve event-level data associated with the Named Plaintiffs' GAIA IDs from ███████ logs and preserved data from ███████ corpora in February 2021 (the "Litigation Hold Data"). Ansorge Decl. ¶ 6. That engineering work was completed in March 2021. *Id.*

99.    Google's preservation of this data does not constitute an admission of its relevance.

100.    Google preserved the ███████ Litigation Hold Data in a raw format to ensure prompt preservation. *Id.* That format is not optimized for searching and analyzing the preserved data. *Id.*

101.    The Court held a hearing on Google's Motion for a Protective Order on March 5, 2021.

102.    On April 30, 2021, the Court entered the protective order Google requested, providing in relevant part that "Google need not suspend its standard retention periods applicable to data logs that reflect event-level data of Chrome users in the United States." Dkt. 174.

### 2.    The April 30, 2021 Order and the Parties' Dispute Concerning Unauthenticated User Data

103.    On April 30, 2021, the Court also ordered Google to produce data associated with Named Plaintiffs, including "device data associated with any Plaintiff," and "recogniz[ed] that

1    additional disputes regarding the available data may arise." Dkt. 173-1 at 1–2 (Dispute Nos. 1.3,

2    2.2).

3        104.    Google complied with the April 30, 2021 production order by searching the

4    authenticated and unauthenticated identifiers Named Plaintiffs provided and producing the

5    associated data. Dkt. 747-5 (Ansorge Decl.) ¶ 16. Specifically, Google produced the following

6    data:

      a.    On May 12, 2021, Google produced ███████ data associated with
Plaintiffs' Google accounts. *Id.* Google produced additional ████████ data
associated with Plaintiffs' Google accounts on June 22, 2021. *Id.* ¶ 24.

      b.    On May 12, 2021, Google produced unauthenticated Analytics data
associated with the CID values Plaintiffs provided. *Id.* ¶ 16.

      c.    On May 12, 2021, Google produced unauthenticated ████████ log data
associated with Biscotti IDs extracted from the IDE cookie values Plaintiffs
provided. *Id.*

      d.    On May 14, 2021, Google produced X-Client Data Header information
associated with ad events associated with Plaintiffs' Google Accounts in
Ads logs. *Id.*

      e.    On June 4, 2021, Google produced Plaintiffs' Web and App Activity and
Supplemental Web and App Activity settings. *Id.* ¶ 19.

      f.    On June 16, 2021, Google produced additional Google Account subscriber
information and My Activity information associated with Plaintiffs' Google
Accounts. *Id.* ¶ 22.

      g.    On June 28, 2021, Google produced additional Google Account subscriber
information associated with Plaintiff Guzman's Google Account
information, which had been provided later than the other Named Plaintiffs'
information. *Id.* ¶ 26.

h.  On June 29 and July 15, 2021, Google produced inferred interests and ads personalization data associated with Plaintiffs' Google Accounts (*i.e.*, authenticated identifiers). *Id.* ¶¶ 27, 31.

i.  On July 1 and August 9, 2021, Google produced ███████ data associated with Plaintiffs' Google Accounts. *Id.* ¶¶ 28, 33.

j.  On August 24, 2021, Google produced additional Google Account subscriber information, My Activity information, ███████ data, inferred interests and ads personalization data, and X-Client Data Header information for a newly added Plaintiff. *Id.* ¶ 34.

k.  On August 6, 2021, Google produced additional My Activity information, ███████ data, and inferred interests and ads personalization data for a newly added Plaintiff. *Id.* ¶ 36.

l.  On October 15, 2021, Google produced additional Google Account subscriber information, My Activity information, ███████ data, and inferred interests and ads personalization data for a newly added plaintiff. *Id.* ¶ 37.

m.  On October 20, 2021, Google produced Plaintiffs' Google Account activity controls record. *Id.* ¶ 38.

n.  On October 22, 2021, Google produced Plaintiffs' Google Account privacy checkup record. *Id.* ¶ 39.

o.  On September 29 and November 4, 2021, Google produced records of Plaintiffs' consent to various Google disclosures. *Id.* ¶¶ 35, 40.

105.  The April 30, 2021 order did not require Google to preserve data associated with the Named Plaintiffs' unauthenticated identifiers. Google engineers nonetheless developed pipelines in ███████ to preserve unauthenticated data associated with Biscotti IDs extracted from the cookie values Plaintiffs provided. *Id.* ¶ 32. This preserved data became part of the Litigation Hold Data. *Id.*

106. In addition to the data Google produced, Plaintiffs requested that Google infer a second order of unauthenticated identifiers beyond those they had provided to Google. Dkt. 206 at 4. In other words, Plaintiffs requested that Google use data associated with Plaintiffs' Google Accounts to attempt to infer that separate, unauthenticated data may also be associated with Plaintiffs' browsing.

107. To comply with Plaintiffs' request, "Google would have to reverse engineer unauthenticated identifiers from Google Account-keyed information." Dkt. 232-4. Such identifiers would be associated with data from any device Plaintiffs had ever used to log into their Google Accounts, including public devices or other devices not belonging to Plaintiffs.

108. Under Google's internal policies, authenticated and unauthenticated data are fully segregated from one another. Dkt. 206 at 4; Dkt. 428-22 ¶¶ 8–10.

109. In other words, Google's policies and systems prevent Google from correlating anonymous or pseudonymous data (*i.e.*, unauthenticated data) with data that is linked to a Google Account. Ansorge Decl. Ex. 1 at 313:8–12. As a result, Google does not know which user of a device is browsing the internet unless that user signs in.

110. On June 23, 2021, Plaintiffs submitted a Motion to Compel Production of Plaintiffs' Information, seeking an order that Google must infer the second order of unauthenticated identifiers described above. Dkt. 226.

111. Google opposed Plaintiffs' motion to compel on July 1, 2021. Dkt. 232-4.

### 3. Preservation and Production of Named Plaintiff Data Through the Special Master Process

112. On July 13, 2021, the Court appointed a Special Master to assist the Court "in resolving disputes of a technical nature in this litigation," including disputes concerning the information Google has regarding Plaintiffs and what information Google has regarding the identification of putative class members. Dkt. 246.

113. The Court referred the parties' dispute concerning unauthenticated data to the Special Master. Dkts. 246–247. At a hearing on November 4, 2021, the Court explained that "[t]o the extent my Orders predate referral to the Special Master, I view those as a starting point," and

1  that the Special Master will "hone and fine tune [the Court's] Order as his expertise determines, to

2  . . . bring it within any parameters with regards to what is relevant and proportional." Ansorge

3  Decl. Ex. 8 at 6:10–16.

4          114.    The Special Master did not order Google to reverse-engineer identifiers as

5  Plaintiffs requested. Instead, the Special Master ordered Plaintiffs to provide Google with

6  additional device identifiers for Google to search. *See* Ansorge Decl. ¶¶ 55, 80.

7          115.    On September 16, 2021, the Court issued an order setting forth a funneled three-

8  step process for the Special Master discovery process whereby (1) Google identifies potentially

9  relevant data sources, (2) Google provides additional information for a subset of those sources,

10 and (3) Google will search and produce data from a further subset of those sources. Dkt. 309.

11         116.    On September 17, 2021, Google identified ▆ potentially relevant data sources

12 and disclosed that Litigation Hold Data was preserved from ▆ of those sources. Ansorge Decl. ¶¶

13 43, 45 & Ex. 11.

14         117.    On September 30, 2021, Plaintiffs asked the Special Master to order Google to

15 produce the Litigation Hold Data in its entirety. *Id.* ¶ 46. Plaintiffs reiterated that request on

16 October 5 and 12, 2021. *Id.* ¶ 46. The Special Master denied Plaintiffs' requests. *Id.*

17         **4.    The Court's November 12, 2021 Order**

18         118.    On November 12, 2021, the Court issued an Order that, in relevant part, directed

19 Google to provide "a full list of all data sources which have been searched during the overall

20 discovery process." Dkt. 377 at 10.

21         119.    The Court further directed Google to provide a declaration that "[a]ll responsive

22 data related to the Named Plaintiffs have been produced from all searched data sources in the

23 respective prior searches." *Id.*

24         120.    The "responsive data" referred to the data Google searched for purposes of

25 production, not to the full universe of Litigation Hold Data.

26         121.    On November 18, 2021, Google provided the list of data sources and declaration

27 required by the November 12, 2021 Order. Dkt. 838.

28

122.    On November 22, 2021, the Special Master confirmed that the documents Google provided "satisfy the . . . requirements" of the November 12, 2022 Order. *Id.* Ex. 9.

123.    On December 29, 2021, Plaintiffs again requested that "Google produce all data that it has previously identified as being 'preserved' for Plaintiffs but not produced." *Id.* ¶ 55.

124.    The Special Master again declined to order the requested production, determining that it was "outside the scope" of the November 12, 2021 Order. *Id.* ¶ 56.

125.    Plaintiffs repeatedly renewed their request that Google produce all Litigation Hold Data between December 2021 and February 2022. The Special Master denied that request each time. *Id.* ¶ 59.

126.    A subset of the Litigation Hold Data contained confidential information that required Google to provide notice to publishers prior to production. Ansorge Decl. ¶ 76.

127.    On March 3, 2022, the Special Master ordered Google to prioritize production of the Litigation Hold Data that would not require publisher notice. Ansorge Decl. Ex. 16 at 83:2–6.

128.    Google produced all such data by March 10, 2022. *Id.* ¶ 71.

129.    That data constituted approximately ███████ of the Litigation Hold Data. *See id.* ¶ 78 & Ex. 28.

130.    On March 8, 2022, Google proposed to produce a subset of the Litigation Hold Data requiring publisher notice. *Id.* ¶ 70. Plaintiffs rejected that proposal. *Id.* ¶ 72.

131.    On March 13, 2022, the Special Master asked Plaintiffs to confer with their expert concerning the remaining Litigation Hold Data and "come up with a better solution than everything, because you're not getting everything." *Id.* Ex. 23 at 53:6–19.

132.    On March 15, 2022, the Special Master reiterated that "[j]ust because they're preserved doesn't mean they get produced," and observed that the remaining Litigation Hold Data "had not been searched really at a level that would meet the standard threshold that I would allow for production until it's using search criteria that's agreed upon and responsive before it gets produced," adding that "The judge and I have already conferred on it. I mean, this is the direction of where we're going because it's built around a set of parameters we've been doing in this case." Ansorge Decl. Ex. 25 at 30:23–24, 31:21–25, 53:10–13.

133.   On May 27, 2022, Plaintiffs asked the Court to order Google to produce the remaining Litigation Hold Data. Dkt. 678.

134.   The Court ordered Google to produce that data by June 30, 2022. Dkts. 700, 722, 746.

135.   Google produced all Litigation Hold Data that had not yet been produced on June 30, 2022. Ansorge Decl. ¶ 85.

### 5.   Google Did Not Engage in Discovery Misconduct in Connection with Named Plaintiffs' Data

136.   Plaintiffs allege that Google violated the Court's April 30, 2021 and November 12, 2021 orders and improperly failed to preserve Plaintiffs' data. Mot. 2–3. Neither allegation is supported.

137.   First, Google did not violate either of the Court orders at issue.

138.   Google complied with the April 30, 2021 Order by searching and producing voluminous data associated with Named Plaintiffs.

139.   Google's objection to Plaintiffs' request that it attempt to use Plaintiffs' authenticated data to identify unauthenticated identifiers that may also be associated with Plaintiffs did not constitute a violation of the Order.

140.   The Court referred the parties' dispute on that issue to the Special Master, who did not order Google to use the authenticated identifiers to reverse-engineer unauthenticated identifiers, and instead ordered Plaintiffs to provide additional unauthenticated identifiers for Google to search. *See* Ansorge Decl. ¶¶ 55, 80.

141.   Google likewise complied with the November 12, 2021 Order.

142.   The Special Master reviewed the documents furnished in response to that order and confirmed that they comported with its obligations. Ansorge Decl. Ex. 9.

143.   The fact that Google did not produce all Litigation Hold Data in response to that order did not bring Google out of compliance.

144.   Prior to that point, the Special Master had consistently denied Plaintiffs' requests for all Named Plaintiff data Google has "preserved but not yet produced." *See, e.g.*, Ansorge Decl.

¶¶ 46–47. The Special Master had also expressly determined that this request was "outside the scope" of the November 12, 2021 Order. *Id.* Ex. 12.

145.  Second, Google did not violate any obligation to preserve Named Plaintiffs' data. Google developed pipelines to preserve data associated with Biscotti IDs provided by Plaintiffs directly after the Court ordered Google to produce "Device data associated with any Plaintiff" on April 30, 2021. Ansorge Decl. ¶ 32.

146.  Plaintiffs allege that Google should have preserved Zwieback-keyed data at the same time, but the fact that Google did not do so does not constitute misconduct.

147.  Zwieback-keyed data also does not identify individual users as Plaintiffs claim. Dkt. 713-4 at 7–8; Dkt. 739-3; *cf.* Reply 9.

148.  In any case, Google has since preserved and produced both Biscotti- and Zwieback-keyed data. Ansorge Decl. ¶ 57.

149.  In light of the above, Plaintiffs have failed to establish that Google committed discovery misconduct or acted in bad faith.

**6.  Google's Conduct Did Not Prejudice Plaintiffs**

150.  Plaintiffs have not demonstrated that they were prejudiced by the fact that Google has not preserved certain Biscotti- and Zwieback-keyed data for the entirety of the litigation.

151.  Google has produced gigabytes of the exact same type of Biscotti- and Zwieback-keyed data that Plaintiffs allege Google failed to preserve. Ansorge Decl. ¶ 57. Plaintiffs have failed to demonstrate that the non-preserved data could have been used to show a material fact that the preserved and produced data is unable to show.

152.  Plaintiffs argue that the "nature and volume" of data that Google collected is relevant to their claims, Mot. 20–21, but have not shown that the voluminous Biscotti- and Zwieback-keyed data Google produced is not sufficient to make their "nature and volume" argument.

153.  The Special Master permitted searches of authenticated and unauthenticated identifiers associated with Dr. Shafiq's test accounts. Dkt. 640-3 at 5.

154.    Plaintiffs further allege that Google's conduct has impeded their "ability to engage in follow-up discovery" because Google forced them to "engage in repeated guesswork about 'sampling' data sources without the benefit of the roadmap that the Named Plaintiffs' data could have provided," Mot. 10, and "Plaintiffs were forced to choose . . . logs at random for Google to search, *id*. 13. These allegations are unsupported by the record.

155.    Google provided to Plaintiffs a list of all potentially relevant data sources and identified those that were part of the Litigation Hold Data, along with, *inter alia*, descriptions of each source's purpose and function in September 2021. Ansorge Decl. ¶¶ 43, 45.

156.    Although Plaintiffs claim to be prejudiced because "they viewed" full production of the Litigation Hold Data earlier in the litigation "as the key to create a roadmap for discovery for the rest of the case," Mot. 20, the Special Master disagreed. Ansorge Decl. Ex. 33 ("MR. STRAITE: . . . We, as Plaintiffs, thought it was smarter to get all of the historically preserved Plaintiffs' data to inform future searches. We understand that's been rejected.").

157.    Moreover, Plaintiffs have had approximately ▮▮▮▮▮ of the Litigation Hold Data since March 2022, more than a month before filing the instant Motion. Ansorge Decl. ¶ 78 & Ex. 28. Nonetheless, they have offered no explanation of how this allegedly withheld data would have been useful to them.

**D.** ▮▮▮▮▮▮

　　1.    The ▮▮▮▮▮ Project

158.    In mid-2020, Google's Privacy & Data Protection Office ("PDPO") initiated a project called ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Olson Decl. Ex. 20.

159.    The purpose of ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Olson Decl. Ex. 15.

160.    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Olson Decl. Ex. 8.

2.      **Discovery on** ███████████

161.    Google produced over 260 documents expressly referencing ███████████ prior to filing its MSJ on November 30, 2021. Olson Decl. ¶ 16.

162.    Among the hundreds of documents Google produced were a "███████████ Stakeholder Interview Summary," "Notes from interview with Rahul," and a spreadsheet with a "Detailed Plan" for ███████████ that listed the "Stakeholder Interviews." *Id.* ¶¶ 6–15. These documents included detailed notes from one interview, summaries of nearly a dozen interviews, and a list of almost all of the interviewees.

163.    On December 20, 2021, Plaintiffs deposed Google's witness Sam Heft-Luthy, and asked him questions about ███████████ and the stakeholder interviews. *Id.* ¶ 17 & Ex. 16. These questions confirmed that Plaintiffs were aware of both ███████████ and the stakeholder interviews before December 20, 2021.

164.    Plaintiffs did not request the interview notes at Mr. Heft-Luthy's deposition. *Id.* ¶ 18 & Ex. 16.

165.    On December 30, 2021, Plaintiffs requested ███████████ and ███████████ be added as search terms. *Id.* ¶ 19 & Ex. 17. The following day, Google agreed to run both search terms. *Id.* ¶ 20 & Ex. 18.

166.    Plaintiffs did not request an extension to file their opposition to Google's motion for summary judgment, which was due on January 10, 2022, to allow time for Google to review and produce additional ███████████ documents. *Id.* ¶ 21.

167.    On January 6, 2022, Plaintiffs deposed Greg Fair, Google's declarant concerning the factual bases of its MSJ, but did not ask him any questions about ███████████. *Id.* ¶ 22.

168.    On January 10, 2022, Plaintiffs filed an opposition to Google's MSJ ("MSJ Opposition"). Dkt. 461-4.

169.    By the time Plaintiffs filed the MSJ Opposition, Google had produced an additional 82 documents referencing ███████████ Olson Decl. ¶ 23.

170.    Plaintiffs' opposition discussed ███████████ and cited to multiple documents concerning ███████████ all of which Google had produced. Dkt. 461-4 at 12–17.

171.    Between January 11, 2022 and the close of fact discovery on March 4, 2022, Google produced another 530 documents regarding █████████ 508 of which were produced by the end of January. Olson Decl. ¶ 25 & Exs. 19–36.

172.    Plaintiffs did not seek to supplement their MSJ Opposition briefing with any of the additional documents produced. *Id.* ¶ 46.

### 3.    Google's April 2022 Production

173.    One week after filing their MSJ Opposition, Plaintiffs sent a letter to Google requesting "all transcripts, notes, and emails regarding interviews taken for ████████ and all documents, research and 'inputs' that pertain to ██████████." *Id.* ¶ 47 & Ex. 37.

174.    In response to this request, Google produced 24 additional documents on April 5, 2022 and April 6, 2022. *Id.* ¶ 48.

175.    Plaintiffs claim that Google intentionally delayed producing these documents until after the close of fact discovery "knowing that the information undermined its position on consent," Reply 11, but there is no support for that assertion.

176.    These documents were produced in advance of Plaintiffs' taking Google's Rule 30(b)(6) deposition on ██████████. Olson Decl. ¶ 49 & Ex. 38.

177.    Plaintiffs' Brief identifies three of the 24 documents produced in April 2022 as documents that contained information Plaintiffs claim was not known to them before.

178.    The first document, a paper titled "██████████ Perspective," was not attached as an Exhibit to Plaintiffs' Motion, but was quoted in the Joint Declaration. Dkt. 669-3 ¶ 62; Olson Decl. Ex. 39. Plaintiffs claim this document was crucial because it is a "final version of the draft document" they attached to their MSJ opposition. Reply 12.

179.    Google initially withheld this document as privileged and included it on a privilege log. Olson Decl. ¶ 52.

180.    Plaintiffs' opposition to Google's motion for summary judgment quotes from and attaches a prior version of this document. Dkt. 461-4 at 13, 16; Dkt. 461-76. Plaintiffs have not identified anything material from the April 2022 document that was not included in documents produced prior to filing their MSJ Opposition, and that Plaintiffs attached to it.

181.    Google also initially withheld the second document, a document titled "████████ Conversations" and attached as Plaintiffs' Exhibit 11, as privileged and included it on a privilege log. Olson Decl. ¶ 58. Plaintiffs claim this second document "revealed that high level Google executives were interviewed and the overwhelming consensus was that Google's disclosures were confusing and failed to adequately advise users of the full nature and scope of Google's collection practices." Mot. 16.

182.    During the discovery period, including in advance of Google's MSJ, Google produced dozens of documents referencing these interviews, including (1) detailed notes from one of the interviews, (2) summaries of some of the interviews, and (3) the names of 21 of 25 interviewees. Olson Decl. ¶¶ 7–14, 16, 28–44, 60–62.

183.    Plaintiffs did not seek to depose any of the people Google had disclosed were interviewed, including Rahul Roy-Chowdhury, the person for whom they had detailed interview notes. *Id.* ¶¶ 61, 63.

184.    The third document, Plaintiffs' Exhibit 12, is a summary of research conducted by Google on users' consent experiences. Near duplicates of the third document had been produced on September 24, 2021 and November 16, 2021. *Id.* ¶ 66 & Exs. 40–43.

185.    Plaintiffs did not ask Mr. Fair or Mr. Heft-Luthy about those documents, and did not attach those documents to their MSJ Opposition.

186.    Plaintiffs have not identified anything material from the third April 2022 document (Exhibit 12) that was not included in documents produced prior to filing their MSJ Opposition. Each part of Exhibit 12 that Plaintiffs quote in the instant motion was included in the earlier-produced versions of the document. *Id.* ¶ 72.

187.    Plaintiffs appear to have abandoned their position that Exhibit 12 was non-duplicative by failing to respond to Google's claims in the Reply.

**4.      Google Did Not Engage in Discovery Misconduct in Connection with**

████████████

188.    Plaintiffs allege that Google failed to disclose ████████ until Mr. Heft-Luthy "unwittingly revealed" it on December 20, 2021. Mot. 15. The record does not support these allegations.

189.    Google produced hundreds of documents expressly referencing ██████████ before filing its MSJ, and Plaintiffs used multiple of these documents in Mr. Heft-Luthy's subsequent deposition, at which they asked numerous questions about ████████, Olson Decl. Ex. 16 (Heft-Luthy Tr.) 6:6–7:20; 10:22–25; 52:10–134:13; 213:12–217:5, as well as in opposing Google's MSJ, Dkt. 461-4.

190.    These produced documents included detailed notes from one of the ██████████ interviews, and summaries of numerous others. Olson Decl. Exs. 8–9.

191.    Accordingly, Plaintiffs have not carried their burden to demonstrate that Google intentionally concealed ████████.

192.    Plaintiffs did not request further discovery on ██████████ until months after Google produced documents concerning the project, and Google agreed to run ██████████-specific search terms within one day of Plaintiffs' requesting them. *Id.* ¶¶ 19–20.

193.    Google reviewed and produced 24 additional ████████ documents after discovering they had been inadvertently withheld as privileged or not responsive. *Id.* ¶¶ 48, 52, 58–59, 66–67.

194.    In light of the above, Plaintiffs have failed to establish that Google committed discovery misconduct or acted in bad faith.

**5.      Google's Conduct Did Not Prejudice Plaintiffs**

195.    Plaintiffs allege that Google's April production of certain ████████ documents unfairly limited Plaintiffs' ability to oppose its motion for summary judgment and "foreclosed the opportunity to cross-examine witnesses," Mot. 21–22, but these allegations are belied by the documents and Plaintiffs' own conduct.

196. First, as noted above, the three allegedly withheld documents Plaintiffs reference in their motion contain information substantially similar—and in many cases identical—to earlier-produced documents.

197. Although Plaintiffs claim that "identification of individuals and references to the interviews . . . does not negate the prejudice from withholding the interview notes themselves," Reply 12 (emphasis removed), Plaintiffs fail to address that the "interview notes themselves" were produced for at least one interviewee and quotations from the "interview notes themselves" were produced for many others.

198. Second, Plaintiffs' MSJ opposition contained a full-page discussion of ███████████, cited to multiple ███████████ documents, and argued at length that "Google Internally Admits Its 'Consent' Process Is Broken," Dkt. 462 (Sealed MSJ Opp.) at 12–17, precisely the argument it claims "th[e] late-produced documents demonstrate." Mot. 21–22.

199. To the extent Plaintiffs believe that additional information contained in documents produced in April 2022 has any bearing on their MSJ opposition, they will have the opportunity to raise these documents at the upcoming hearing on Google's motion for summary judgment.

200. Third, Plaintiffs' decision not to depose any of the 21 Google employees interviewed as part of ███████████ (out of 25 total) that Google had disclosed by the time it filed its MSJ, Olson Decl. ¶¶ 62–63, including the employee for whom they had detailed interview notes, undermines their claim that Google prevented them from cross-examining ███████████ interviewees or obtaining "further discovery on these issues." Reply 14.

## V.    CONCLUSIONS OF LAW

201. "When a district court decides to impose sanctions or discipline, it must clearly delineate under which authority it acts to ensure that the attendant requirements are met." *Williams v. Williams*, 2013 WL 3157910, at *4 (N.D. Cal. June 20, 2013) (citing *Weissman v. Quail Lodge, Inc.*, 179 F.3d 1194, 1200 (9th Cir. 1999)).

202. Federal courts may sanction litigants for discovery misconduct under either the Federal Rules of Civil Procedure or the Court's inherent authority. See *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 958 (9th Cir. 2006).

1    203.    Sanctions under the Federal Rules are subject to different standards as discussed

2    below.

3    204.    Sanctions are not available under the Court's inherent authority absent an express

4    finding of bad faith. *United States v. Brown*, 62 F. App'x 165, 166 (9th Cir. 2003) ("[The Ninth

5    Circuit] ha[s] consistently held that bad faith is required whenever courts invoke inherent powers

6    to sanction, regardless of the form of the sanction . . . .").

7    **A.    Plaintiffs Are Not Entitled to Preclusion of Arguments Concerning "Not-**

8    **Synced" Signals**

9    205.    Plaintiffs ask the Court to prevent Google from relying on the "absence of signals

10    from which browser state can be determined" to argue that (1) the proposed Class cannot be

11    ascertained; (2) damages cannot be apportioned on a classwide basis, and (3) the proposed Class

12    definition—defined to include only users who are not synced—contains any "uninjured" class

13    members. Proposed Order ¶ 3.

14    206.    "[O]n the menu of sanctions that a court may select from in applying Rule 37,

15    preclusion of evidence is among the most severe." *True Health Chiropractic Inc. v. McKesson*

16    *Corp.*, 2015 WL 5341592, at *6 (N.D. Cal. Sept. 12, 2015) (quoting *Network Appliance, Inc. v.*

17    *Bluearc Corp.*, 2005 WL 1513099, at *3 (N.D. Cal. June 27, 2005)). Issue preclusion sanctions are

18    likewise reserved for discovery abuse "so extreme and prejudicial that no lesser remedy will cure

19    the harm." *Synapsis, LLC v. Evergreen Data Sys., Inc.*, 2006 WL 2884413, at *1 (N.D. Cal. Oct.

20    10, 2006). As a result, preclusion sanctions are "rarely impose[d]." *Natural-Immunogenics Corp.*

21    *v. Newport Trial Grp.*, 2016 WL 11520757, at *6 (C.D. Cal. June 16, 2016).

22    207.    Plaintiffs are not entitled to preclusion sanctions either under the Court's inherent

23    authority or under the Federal Rules.

24    208.    As discussed above, Plaintiffs have failed to establish that Google acted in bad

25    faith. Accordingly, the Court may not sanction Google under its inherent authority.

26    209.    Nor is Google subject to sanction under the Federal Rules.

27

28

210.     As an initial matter, Google may not be sanctioned under Rules 16(f) or 37(b) because, as discussed above, it has not violated a Court order. Fed. R. Civ. P. 16(f)(1)(C), 37(b); *see also Unigard Sec. Ins. Co. v. Lakewood Eng. & Mfg. Corp.*, 982 F.2d 363, 368 (9th Cir. 1992).

211.     In any case, Plaintiffs are not entitled to preclusion sanctions because they have suffered none of the extreme prejudice required to justify such sanctions.

212.     As discussed in detail above, the signals at issue cannot reliably be used to identify putative class members, and Google has provided substantial discovery on both of the signals Plaintiffs allege it concealed.[2]

**B.     Plaintiffs Are Not Entitled to an Adverse Jury Instruction**

213.     Plaintiffs further request a jury instruction that Google "failed to comply with [its] duty" to preserve evidence, that it destroyed evidence "favorable to Plaintiffs," and that the non-preserved evidence would have shown (1) "that Chrome was in fact unlawfully disclosing personal information of Named Plaintiffs and Class Members to Google" and (2) "that the nature and volume of information being unlawfully disclosed was objectively unreasonable and highly offensive." Proposed Order ¶ 4.

214.     Adverse jury instructions are an extreme and prejudicial remedy that "should [not] be imposed casually," *Apple Inc. v. Samsung Elecs. Co.*, 888 F. Supp. 2d 976, 994 (N.D. Cal. 2012), and are not appropriate here.

215.     As an initial matter, Plaintiffs' requested jury instruction is not warranted because it is not correct. Google did not fail to comply with any duty to preserve evidence.

216.     To the contrary, Google preserved substantial data associated with Named Plaintiffs. Pursuant to Court order, Google was not required to suspend its standard retention

---

[2]   On reply, Plaintiffs argue that if Google does not intend to argue that there are no "not-synced" signals, "the preclusion of arguments related to Not Synced signals will have no practical consequence on Google" and their "requested relief appears to be uncontested." Reply 13. But Plaintiffs have provided no basis to confine Google's defenses at all. And even if Plaintiffs were correct that such an instruction would have limited impact, Plaintiffs' proposed instruction would still preclude Google from arguing that Plaintiffs are unable "to identify users who are not synced," which Google contends to be the case regardless of the existence of the signals at issue. *See* Schumann Decl. ¶¶ 19–20.

1  periods for event-level log data, and Plaintiffs have provided no evidence that Google failed to

2  abide by any preservation plan ordered by the Court or Special Master.

3      217.    Nor have Plaintiffs offered any evidence in the produced data, which is of the same

4  type as the allegedly spoliated data, to support the requested instruction that the non-preserved

5  data "was favorable to Plaintiffs and . . . would have shown that Chrome was in fact unlawfully

6  disclosing personal information of Named Plaintiffs and Class Members to Google and that the

7  nature and volume of information being unlawfully disclosed was objectively unreasonable and

8  highly offensive." *See Meta Platforms, Inc. v. BrandTotal Ltd.*, 2022 WL 1990225, at *7 (N.D.

9  Cal. June 6, 2022) (denying adverse inference instruction where, *inter alia*, the moving party

10  "identifie[d] no evidence besides the absence of deleted log data to support th[e] allegations").

11      218.    Regardless, Plaintiffs are not entitled to an adverse jury instruction under the

12  applicable law.

13      219.    Where, as here, one party alleges that another has spoliated electronically stored

14  information, sanctions are available exclusively pursuant to Federal Rule of Civil Procedure 37(e).

15  *Newberry v. Cty. of San Bernardino*, 750 F. App'x 534, 537 (9th Cir. 2018); *Best Label Co. v.*

16  *Custom Label & Decal, LLC*, 2022 WL 1525301, at *2 n.1 (N.D. Cal. May 13, 2022) ("Rule

17  37(e), as amended in 2015, displaces the Court's inherent authority to award sanctions with respect

18  to ESI."); *Waymo LLC v. Uber Techs., Inc.*, 2018 WL 646701, at *14 (N.D. Cal. Jan. 30, 2018)

19  ("Because the evidence in question consists of electronically-stored information, FRCP 37(e), not

20  inherent authority, supplies the controlling legal standard.").

21      220.    Under Rule 37(e), "[i]f a court finds that the loss of [electronically stored]

22  information has prejudiced the moving party, it may order 'measures no greater than necessary to

23  cure the prejudice.'" *Best Label*, 2022 WL 1525301, at *2 (quoting Fed. R. Civ. P. 37(e)(1)).

24      221.    Sanctions under Rule 37(e) may include an adverse jury instruction only if the

25  nonmoving party "acted with the intent to deprive another party of the information's use in the

26  litigation." *Id.* (quoting Fed. R. Civ. P. 37(e)(2)).

27

28

222.    Only such intent can support an adverse jury instruction, and "even gross negligence . . . in failing to retain relevant evidence is not sufficient to support an adverse inference under Rule 37(e)(2)." *Meta Platforms*, 2022 WL 1990225, at *6.

223.    As discussed above, Plaintiffs have failed to establish that Google committed misconduct or acted in bad faith. For the same reasons, they have failed to establish that Google acted with the intent to deprive them of relevant evidence, and no adverse instruction is authorized.

224.    Moreover, since Plaintiffs have demonstrated no prejudice, no other sanction is warranted under Rule 37(e).

225.    This decision is consistent with *Meta Platforms*, in which a court in this district denied an adverse instruction against a defendant for permitting the automatic deletion of user data logs. 2022 WL 1990225, at *6 (N.D. Cal. June 6, 2022). There, even though the defendant's conduct gave "at least some support to th[e] theory" that it had intentionally deprived the plaintiff of the log data at issue, the plaintiff had "not shown that to be the most likely explanation for the ongoing automatic deletion of those logs." *Id.*

226.    This case is even more clear-cut than *Meta Platforms*, because the Court expressly authorized Google to maintain its standard retention policies for event-level data, and Google made substantial efforts to preserve both authenticated and unauthenticated data associated with Plaintiffs in accordance with orders of the Court and Special Master.

**C.    Plaintiffs Are Not Entitled to Preclusion of Google's Consent Defense**

227.    Plaintiffs also seek to strike Google's affirmative defense of consent, citing three documents that Google produced after Plaintiffs filed their opposition to Google's motion for summary judgment.

228.    Once again, preclusive sanctions are available only for "discovery abuse that is so extreme and prejudicial that no lesser remedy will cure the harm." *Natural-Immunogenics Corp.*, 2016 WL 11520757, at *6.

229. Moreover, where, as here, a discovery sanction would dismiss a claim or defense, "mere negligent conduct is insufficient to impose the severe penalty of exclusionary sanctions, and a showing of bad faith is required." *Network Appliance, Inc.*, 2005 WL 1513099, at *3.

230. Here, Google disclosed ███████████, including the identities of Google interviewees and summaries of multiple interviews, through hundreds of documents produced before filing its MSJ. Based on these substantial productions, Plaintiffs were able not only to ask Google's witnesses detailed questions about ███████████, but also to include substantial argument in their MSJ opposition about the ███████████ project and Google employees' alleged admissions regarding user consent.

231. Plaintiffs have not demonstrated that the few documents Google inadvertently did not produce until April 2022 contained materially new information they would have used to oppose Google's MSJ; and in any case, Plaintiffs still have the opportunity to raise those documents at the MSJ hearing.

232. On this record, Plaintiffs have neither demonstrated the prejudice necessary to support preclusive sanctions, nor the bad faith necessary to exclude Google's affirmative defense. *See, e.g.*, *True Health Chiropractic*, 2015 WL 5341592, at *6–7 (denying sanctions for "delay[ing] the production of discoverable information" because "Plaintiffs have not sufficiently explained how this delay affected their ability to obtain additional discovery or make arguments in its motions").

### D.  Plaintiffs Are Not Entitled to Monetary Sanctions

233. Plaintiffs request monetary sanctions in the form of reimbursement for the full costs of the Special Master process and for opposing Google's motion for summary judgment.

234. Rule 37(b) limits reimbursement sanctions to expenses that are both "reasonable" and "caused by the failure." Fed. R. Civ. P. 37(b)(2)(C). Accordingly, expenses incurred prior to sanctionable conduct are not compensable. *Liew v. Breen*, 640 F.2d 1046, 1051 (9th Cir. 1981). Nor are expenses that would have been incurred regardless of the alleged misconduct. *Toth v. Trans World Airlines*, 862 F.2d 1381, 1386 (9th Cir. 1988).

235.    Instead, courts generally construe Rule 37(b)(2)(C) as authorizing reimbursement solely for the expenses incurred in preparing the sanctions motion itself. *See First Fin. Sec., Inc. v. Freedom Equity Grp., LLC*, 2016 WL 5870218, at *7 (N.D. Cal. Oct. 7, 2016); *Alaska Pulp Corp. v. United States*, 41 Fed. Cl. 611, 616–17 (C.F.C. 1998).

236.    The same standard applies to sanctions under the Court's inherent authority. *Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178, 1184 (2017).

### 1.    Special Master Fees

237.    Plaintiffs' request to be reimbursed for all fees and costs related to the Special Master discovery process is neither "reasonable" nor "caused by the failure" they allege.

238.    First, because Google is not subject to sanction, no award is warranted here.

239.    Second, in the related *Brown* case, the Court declined to award fees paid to the Special Master because "Plaintiffs have not demonstrated that Google's compliance with the Court's prior orders would have significantly streamlined the Special Master process" and because the Special Master process was "vast and covered many multiples of logs and fields implicated in this dispute." *Brown v. Google LLC*, Dkt. 588 (Sealed *Brown* Order) ¶ 51.

240.    The same is true of the complex, multifaceted Special Master process in this case, and it would not be appropriate to award Plaintiffs all fees and costs related to the Special Master process even if their allegations had been founded.

241.    For the first time on reply, Plaintiffs argue that the Special Master process should not have been necessary because Google ultimately produced all Litigation Hold Data. Reply 9. The Court will not consider this belated argument, which should have been made in Plaintiffs' opening papers. *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007).

242.    In any case, Plaintiffs' claim is unsupported, and amounts to an argument that the Special Master's guidance in resolving a hotly contested issue was unnecessary simply because that issue was ultimately resolved by an order of the Court. Moreover, the Special Master process encompassed substantially more issues than simply the production of the Litigation Hold Data.

### 2.    Summary Judgment Motion

243.    Likewise, Plaintiffs are not entitled to recover their fees and costs associated with opposing Google's summary judgment motion. Even if the documents at issue had been produced earlier, Plaintiffs have not demonstrated that Google would not have moved for summary judgment, or that Plaintiffs would not have opposed such motion. Accordingly, Plaintiffs' expenses associated with opposing Google's motion for summary judgment are not "caused by" the nonproduction of certain documents until April 2022.

### E.    There Is No Basis To Find Google in Civil Contempt

244.    Finally, Plaintiffs request that the Court find Google "in civil contempt for abuse of the discovery process." Proposed Order ¶ 2.

245.    It is "well settled" that a party may be found in civil contempt only if (1) the moving party provides "clear and convincing evidence" that the non-moving party "violated a specific and definite order of the court," *FTC v. Affordable Media, LLC*, 179 F.3d 1228, 1239 (9th Cir. 1999), (2) the alleged violation does not "appear[] to be based on a good faith and reasonable interpretation of the [court's order]," and (3) there has been no "substantial compliance," *In re Dual-Deck Video Cassette Recorder Antitrust Litig*, 10 F.3d 693, 695 (9th Cir. 1993) (internal quotation marks omitted).

246.    A contempt finding is often inappropriate even "where there are a few minor violations despite the fact that 'every reasonable effort has been made to comply.'" *Calvillo Manriquez v. Devos*, 411 F. Supp. 3d 535, 539 (N.D. Cal. 2019).

247.    Google has not "violated a specific and definite order of the court," and in any case appears to have made a good faith effort to follow all applicable orders of the Court and Special Master. Accordingly, no contempt finding is warranted.

## VI.    CONCLUSION

248.    For the foregoing reasons, the Court finds that Google has not committed discovery misconduct and no sanctions are warranted.

249.    Accordingly, Plaintiffs' motion requesting sanctions is DENIED.

DATED:  July 29, 2022

QUINN EMANUEL URQUHART &
SULLIVAN, LLP

By   */s/ Andrew H. Schapiro*
Andrew H. Schapiro (admitted *pro hac vice*)
andrewschapiro@quinnemanuel.com
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606
Telephone: (312) 705-7400
Facsimile: (312) 705-7401

Stephen A. Broome (CA Bar No. 314605)
stephenbroome@quinnemanuel.com
Viola Trebicka (CA Bar No. 269526)
violatrebicka@quinnemanuel.com
Crystal Nix-Hines (Bar No. 326971)
crystalnixhines@quinnemanuel.com
Alyssa G. Olson (CA Bar No. 305705)
alyolson@quinnemanuel.com
Marie Hayrapetian (CA Bar No. 315797)
mariehayrapetian@quinnemanuel.com
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Diane M. Doolittle (CA Bar No. 142046)
dianedoolittle@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

Josef Ansorge (admitted *pro hac vice*)
josefansorge@quinnemanuel.com
Xi ("Tracy") Gao (CA Bar No. 326266)
tracygao@quinnemanuel.com
Carl Spilly (admitted *pro hac vice*)
carlspilly@quinnemanuel.com
1300 I. Street, N.W., Suite 900
Washington, D.C. 20005
Telephone: 202-538-8000
Facsimile: 202-538-8100

Jomaire A. Crawford (admitted *pro hac vice*)
jomairecrawford@quinnemanuel.com
51 Madison Avenue, 22nd Floor
New York, NY 10010

1

2

Telephone: (212) 849-7000
Facsimile: (212) 849-7100

3

Jonathan Tse (CA Bar No. 305468)
jonathantse@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, CA 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

4

5

6

7

*Attorneys for Defendant Google LLC*

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28