# Order on Plaintiffs' Motion for Sanctions for Discovery Misconduct

# Redacted Version of Document Sought to be Sealed

UNITED STATES
DISTRICT COURT
Northern District of
California

# FAX TRANSMISSION

| TO: | | FROM: | Justine           Fanthorpe |
|---|---|---|---|
| FAX NUMBER: | 92134433100 | NO. OF PAGES: (INCLUDING COVER): | 64 |
| PHONE: | | DATE: | 2022-09-08 |
| RE: | 4:20-cv-05146-YGR Calhoun et al | TIME: | 16:13:50 |

**SUBJECT:** **4:20-cv-05146-YGR Calhoun et al v. Google LLC**

**DETAILS:**

**Justine Fanthorpe**
CRD to Magistrate Judge Susan van Keulen
280 South First Street, Room 2112
San Jose, CA 95113
United States District Court
Northern District of California
https://cand.uscourts.gov
Justine_Fanthorpe@cand.uscourts.gov
Office: 408-535-5375

2022/09/08 16:13:51     2    /64
Case 4:20-cv-05146-YGR   Document 871-3   Filed 09/19/22   Page 3 of 65
Case 4:20-cv-05146-YGR   Document 862 *SEALED*   Filed 09/08/22   Page 1 of 13

1

2

3

4                       UNITED STATES DISTRICT COURT

5                       NORTHERN DISTRICT OF CALIFORNIA

6

7   PATRICK CALHOUN, et al.,                    Case No. 20-cv-05146-YGR   (SVK)

8              Plaintiffs,                       **FILED UNDER SEAL**

9        v.                                      **ORDER ON PLAINTIFFS' MOTION
                                                 FOR SANCTIONS FOR DISCOVERY
10  GOOGLE LLC,                                  MISCONDUCT**

11             Defendant.                        Re: Dkt. No. 670

12          By the present motion, Plaintiffs seek sanctions against Google for discovery misconduct.

13  Dkt. 670 (the "Motion"). Google filed an opposition to the Motion (Dkt. 748 ("Opp.")), and

14  Plaintiffs filed a reply (Dkt. 777 ("Reply")). At the Court's direction, the Parties also filed

15  competing proposed Findings of Fact and Conclusions of Law. Dkts. 795-3 ("Google Prop.

16  Findings"), 799-2 ("Pls. Prop. Findings"). The Court held an in-person hearing on August 11, 2022.

17          Having considered all of the papers and evidence before the Court, the Court **GRANTS IN**

18  **PART AND DENIES IN PART** Plaintiffs' Motion for the reasons that follow.

19

20  **I.     BACKGROUND OF PLAINTIFFS' MOTION FOR SANCTIONS**

21          The history of discovery proceedings in this case is summarized here to provide relevant

22  context for the present Motion. Discovery in this case has involved extensive proceedings before

23  this Court and the Special Master. Since this Court, as discovery referral judge, became actively

24  involved in discovery matters in early 2021, the Parties have brought over 80 discovery disputes to

25  the Court, and the Court has held 16 discovery hearings and issued over 40 orders on disputed

26  discovery issues.

27          Early in the discovery phase, it became clear that it would be important to identify the

28  pertinent data sources maintained by Google to facilitate production and to develop a plan for

2022/09/08 16:13:51    3  /64
Case 4:20-cv-05146-YGR    Document 871-3    Filed 09/19/22    Page 4 of 65
Case 4:20-cv-05146-YGR    Document 862 *SEALED*    Filed 09/08/22    Page 2 of 13

1    preservation of relevant information in this case. As should be self-evident, Google is a large

2    organization that maintains and manages enormous numbers of data sources. The Court appointed

3    a Special Master on July 13, 2021, to assist with this process. Dkt. 246. The Special Master's

4    Reports and Recommendations, issued on October 20, 2021, April 4, 2022, and May 23, 2022,

5    provide insight into the extensive proceedings before the Special Master over more than a year,

6    which included, during many periods, near-daily hearings and exchanges of information, including

7    on nights and weekends. Dkt. 351, 604, 665-666. The Court is informed that the Special Master

8    team logged in excess of 2700 hours in this endeavor.

9        These efforts were aimed at achieving the objectives set forth in Federal Rule of Civil

10   Procedure 26(b)(1) by enabling the Parties to obtain discovery regarding "any nonprivileged matter

11   that is relevant to any party's claim or defense and proportional to the needs of the case, considering

12   the importance of the issues at stake in the action, the amount in controversy, the parties' relative

13   access to relevant information, the parties' resources, the importance of the discovery in resolving

14   the issues, and whether the burden or expense of the proposed discovery outweighs its likely

15   benefit." In addition to facilitating the production of relevant evidence, because of the dynamic and

16   extensive nature of the Google data sources at issue, it has been important to develop and require

17   Google to implement a robust yet feasible plan to preserve information during this litigation.

18       It is against this backdrop that the Court turns to Plaintiffs' present Motion, which comes

19   after the close of fact discovery and seeks sanctions for a variety of alleged discovery misconduct

20   by Google. In considering Plaintiffs' motion, the Court recognizes that a number of Plaintiffs'

21   arguments benefit from hindsight: having obtained certain information late in discovery, Plaintiffs

22   look back and try to identify junctures where the information could have or arguably should have

23   been provided earlier in the litigation. Similarly, for each instance of missing or late-produced

24   information identified by Plaintiffs, Google searches the record for events it can cite to argue that

25   Plaintiffs should have been aware of the information earlier. At the same time as the Court guards

26   against the "20/20" nature of such hindsight, the Court is also wary of suggestions by Google that

27   the complexity of the discovery process in this case should shield it from consequences of discovery

28   conduct. As things now stand, as a result of the extensive efforts of the Parties, the Special Master,

United States District Court
Northern District of California

2

2022/09/08 16:13:51    4 /64
Case 4:20-cv-05146-YGR    Document 871-3    Filed 09/19/22    Page 5 of 65
Case 4:20-cv-05146-YGR    Document 862 *SEALED*    Filed 09/08/22    Page 3 of 13

and the Court, the objectives of Rule 26(b)(1) have been achieved and key data has been managed, produced, and preserved. In this Order the Court considers whether Google's discovery conduct improperly impeded or delayed achievement of this end result.

## II.    Evidentiary Issues

### A.    Evidence Considered on this Motion

As the Court informed the Parties at a July 28, 2022 Zoom hearing regarding preparations for the August 11, 2022 hearing on the Motion, it will consider exhibits submitted in connection with the Motion only if they were (1) referenced in the briefs or (2) specifically referenced at oral argument. The Court **STRIKES** all exhibits not referenced in one of these two ways.[1]

### B.    General Evidentiary Comments

Before turning to Google's specific evidentiary objections to declarations filed by Plaintiffs, the Court notes several recurring problems with certain evidence and argument offered by Plaintiffs.

First, Plaintiffs present argument as to the import of certain signals – in particular the role of certain signals in identifying class members – as fact. *See, e.g.,* Joint Declaration of Plaintiffs' Counsel Jason Barnes, Lesley Weaver, and David Straite filed in support of the Motion (Dkt. 669-3 - the "Joint Declaration" or "Joint Decl.") ¶ 30 ("[T]hus the ▇▇▇▇ signal could be used to identify Not Synced Chrome users, but only for a limited amount of time"); *id.* ¶ 41 (asserting that Zwieback ▇▇▇▇ columns include "several columns where Gaia and Zwieback identifiers are co-mingled, disposing of the myth that Zwieback logs are 'anonymous'"); *id.* ¶ 45 ("Plaintiffs now know that the Not Synced Signals Google concealed can be used to identify class members, and down to the specific dates on which Chrome sent their personal information to Google without authorization"). Google disputes such characterizations. *See, e.g.,* Opp. at 6-7 (arguing that ▇▇▇▇ signal does not identify all users who are signed into their Google account but have not consented to sync); *id.* at 9 n.9 (arguing that Plaintiffs are "categorically wrong" in claiming that Google links authenticated and unauthenticated data). These hotly disputed issues are the subject of expert testimony and will

---

[1] This approach is necessary given that the Parties submitted a total of 112 exhibits with the briefing on the Motion and 96 additional exhibits one week before the August 11 hearing.

United States District Court
Northern District of California

2022/09/08 16:13:51    5  /64
Case 4:20-cv-05146-YGR    Document 871-3    Filed 09/19/22    Page 6 of 65
Case 4:20-cv-05146-YGR    Document 862 *SEALED*    Filed 09/08/22    Page 4 of 13

1    ultimately be addressed by a trier of fact. The Court has not relied on or accepted such disputed

2    characterizations in ruling on Plaintiffs' Motion.

3        Second, a number of Plaintiffs' arguments ignore the Special Master process – that is, the

4    step-by-step approach to identification, production, and preservation of evidence into which much

5    of the discovery that is the subject of Plaintiffs' motion was funneled. In July 2021 the Court

6    appointed a Special Master with, among other credentials, the requisite technical expertise to

7    manage the identification, production and preservation issues unique to this case. Dkt. 246. On

8    July 13, 2021, the Court referred the disputes in Plaintiffs' motion to compel the production of data

9    associated with the Named Plaintiffs to the Special Master. Dkt. 247. Production of Named

10   Plaintiffs' GAIA-keyed and Biscotti-keyed data as well as Zwieback-keyed data was, from that

11   point forward, addressed by the protocols established by the Special Master. The Court ultimately

12   referred issues regarding Named Plaintiffs and putative class member data to the Special Master to

13   be addressed in an overall approach to identification, production and preservation. *Id.*; Dkt. 516-1.

14   The technically complex and time consuming nature of the proceedings before the Special Master

15   is memorialized in this Court's Order of November 12, 2021 regarding the process for identifying

16   and production of information from relevant data sources (Dkt. 377) and the Court's Order of

17   July 15, 2022 regarding a detailed preservation plan for the retention of relevant data for the

18   remainder of the litigation (Dkt. 766).

19       Third, Plaintiffs repeatedly mischaracterize the record. For example, in paragraph 39 of the

20   Joint Declaration, Plaintiffs' counsel state that "[o]n March 18, 2022, the Court rejected Google's

21   proposal and ordered Google to preserve ▮▮▮▮▮' and SyncDisabledEvent signals," citing Dkt. 579.

22   This statement mischaracterizes the process. The Court did not 'reject' any proposal but rather

23   formed a compromise preservation plan balancing extraordinary technical complexities and need to

24   preserve a sufficient amount of data. Similarly, in another paragraph of the Joint Declaration,

25   Plaintiffs' counsel asserts that in the Court's November 12, 2021 order, "the Court ruled that

26   Zwieback is a relevant identifier in this case" and "directed Google to produce Zwieback-keyed

27   data." Joint Decl. ¶ 89 (citing Dkt. 378 at 11). In actuality, the Court's November 12, 2021 order

28   simply included data sources containing Zwieback identifiers in the list of "potentially relevant data

United States District Court
Northern District of California

4

2022/09/08 16:13:51    6  /64
Case 4:20-cv-05146-YGR    Document 871-3    Filed 09/19/22    Page 7 of 65
Case 4:20-cv-05146-YGR    Document 862 *SEALED*    Filed 09/08/22    Page 5 of 13

1    source[s]" for which Google must provide additional information. Dkt. 377-1 at PDF p. 3. The

2    Court's order also stated:

> [T]he *Calhoun* plaintiffs focused on the production of data related to Zwieback. That
> data was not excluded in Exhibit A to the Report and its production, where appropriate,
> is specified in Exhibit 1 hereto. Google argued that Zwieback data will not provide the
> information Plaintiffs are seeking. If that argument has merit, it will be supported by the
> search result information required of Google in Exhibit 1.

Dkt. 377 at 4. As another example, in Plaintiffs' Proposed Findings, they attempt to enhance their

argument by reordering Google's comments in a January 29, 2021 letter to change the context,

stating that Google "unequivocally" asserted:

    a.  "Google does not have any logs showing when a user is not synced[]";

    b.  "Disabling sync is a client-side action that is not visible server-side (e.g. to

        Google)[]"; and

    c.  ██████████████████████████████████████████████

        ██████

Pls' Prop. Findings ¶ 15 (citing Joint Decl. Ex. 3 at 5). However, Google's statements in that letter

were actually as follows:

> In your letter, you also asked about "logs reflecting synced and unsynced browser
> states." Disabling sync is a client-side action that is not visible server-side (i.e., to
> Google). Therefore, Google does not have any logs showing when a user is not
> synced. We also refer you to Google's responses to Plaintiffs' Interrogatory
> Numbers 3 and 4: "Google does not maintain information showing the number of
> Chrome users in the United States who did not sync their Chrome browser with a
> Google Account. . . . Google maintains information in the ordinary course of business
> that can be used to show ██     ██
> ██████████████████████████████████████████████
> ████████████████████████ Google confirms this
> statistical information is not subject to any auto delete function. Google bases this
> statistical information on ██████ logs that are retained for ██████ with some
> signals stored for ██████. These logs show ██████ Google received from users
> who had sync enabled.

Joint Decl. Ex. 3 at 5. In a similar attempt to enhance their arguments that Google "refused to admit"

in response certain of Plaintiffs' Requests for Admissions, Plaintiffs omit the portion of the

responses where Google "admits" certain matters. *Compare* Pls. Prop. Findings ¶ 33 (stating that

Google "refused to admit" in response to RFAs 13 and 18) *with* Ex. 4 to Declaration of Elizabeth

United States District Court
Northern District of California

5

1  Olson (Dkt. 747-7 — the "Olson Decl.") at Response to RFAs 13 and 18 (stating that "Google

2  admits" certain facts). Another example of Plaintiffs' misstatement of the record is their argument

3  that "Mr. Schumann testified that compiling a list of not synced users via the ▮▮▮▮ signal would

4  'be quick' and involve '[m]aybe a day or two of work'." Joint Decl. ¶ 30. The cited testimony by

5  Mr. Schumann simply confirmed that these statements were made in an email written by another

6  Google employee. *See* Google Prop. Findings ¶¶ 80-81 and Ex. 39 to Declaration of Joseph Ansorge

7  (Dkt. 747-5 and 747-6 — the "Ansorge Decl.") at 95:24-96:7. This tendency to misstate or

8  exaggerate the record undermines a number of Plaintiffs' arguments.

9      **C.    Google's Specific Evidentiary Objections**

10          **1.    Objection to Joint Declaration of Jason Barnes, Lesley Weaver, and
                    David Straite**

11          Google objects to paragraphs 2-14, 19-20, 25, 28-31, 34-35, 37-43, 45, 49-52, 54-55, 61-64,

12  67, 70, 74-76, 78-81, 83, 85, 89, 91, 95-96, 98, 100, 103-104, 106-109, 111, 113, 119-121, and 124

13  of the Joint Declaration. Opp. at 1 n.1. Google argues that these paragraphs contain conclusions

14  and argument in violation of Local Rule 7-5(b), rather than "only facts" as the rule requires. *Id.;*

15  *see also* Google Prop. Findings ¶¶ 12-13.

16          Civil Local Rule 7-5(b) provides:

17
18          An affidavit or declaration may contain only facts, must conform as much as possible to the
            requirements of Fed. R. Civ. P. 56(e), and must avoid conclusions and argument. Any
19          statement made upon information or belief must specify the basis therefor. An affidavit or
            declaration not in compliance with this rule may be stricken in whole or in part.

20  "Argument in a declaration, by [a party's] counsel no less, violates Civil Local Rule 7-5(b)." *Primus*

21  *Group, Inc. v. Inst. for Environmental Health, Inc.*, 395 F. Supp. 3d 1243, 1254 (N.D. Cal. 2019).

22          The Court finds that portions of the challenged Joint Declaration contain conclusions and

23  arguments in violation of Civil Local Rule 7-5(b). The Court is puzzled as to why Plaintiffs'

24  experienced counsel thought it appropriate to include such matter in a declaration, which is supposed

25  to contain only factual matter based on the declarant's personal knowledge. The Court therefore

26  **SUSTAINS** Google's objections as to arguments and summaries contained in the objected-to

27  paragraphs and strikes that language. Specifically, the Court **STRIKES** the following language

28  from the Joint Declaration (Dkt. 669-3):

6

2022/09/08 16:13:51    8   /64
Case 4:20-cv-05146-YGR    Document 871-3    Filed 09/19/22    Page 9 of 65
Case 4:20-cv-05146-YGR    Document 862 *SEALED*    Filed 09/08/22    Page 7 of 13

- ¶ 7-10, 14, 20, 76, 103, 111:    characterizations of Google statements as misrepresentations, false, or not true
- ¶ 11 and footnote 1:  "Rather than correct the record and acknowledge the existence of Not Synced signals"; characterization of Google objection as "baseless"
- ¶ 12:  "noted the deficiency in Google's interrogatory responses"
- ¶ 13:  "At no point during this briefing, or the lead up to it, did Google correct the misrepresentations it had made to the Court regarding Not Synced Signals."
- ¶¶ 19, 75, 106, 111, 120:  arguments that Google did not comply with Court orders
- ¶ 25:  entire paragraph
- ¶ 28:  "Mr. Schumann made various admissions regarding the existence of Not Synced Signals"
- ¶ 29:  "contradicting almost a year of statements to the contrary in this litigation"
- ¶¶ 30, 40-41, 43, 45, 70:  Google's objections to these paragraphs are sustained to the extent they contain disputed characterizations of certain signals, identifiers, and data sources
- ¶¶ 34, 42, 55:  "finally"
- ¶ 38:  last sentence
- ¶ 39:  entire paragraph
- ¶ 61:  "Far from being internal discussions from random Google employees"
- ¶ 62:  "admissions"
- ¶ 64:  "Contrary to Google's assertion on its motion for summary judgment, these were not unimportant random Googlers but instead"; "with authority to bind Google"; "Moreover, not a single one of the Google executives agreed with Google's argument on its motion for summary judgment; and "admitted."
- ¶ 67:  First sentence
- ¶ 74:  "The Court rejected Google's argument."
- ¶ 78:  "approximately nine months after the Plaintiffs filed their complaint, and stopped using Chrome"

2022/09/08 16:13:51    9  /64
Case 4:20-cv-05146-YGR   Document 871-3   Filed 09/19/22   Page 10 of 65
Case 4:20-cv-05146-YGR   Document 862 *SEALED*   Filed 09/08/22   Page 8 of 13

United States District Court
Northern District of California

- ¶ 79: "Thus, if Google did not attempt to preserve before that date — all of Plaintiffs' Biscotti-keyed data would have effectively been destroyed."
- ¶ 81: entire paragraph
- ¶ 83: "that might not have been destroyed by Google's systems"; "that attempted to remedy its failure to preserve"
- ¶ 85: entire paragraph
- ¶ 89: entire paragraph[2]
- ¶ 91: last sentence
- ¶ 95: first sentence
- ¶ 98: entire paragraph
- ¶ 100: "it would not comply with the Court's April 30, 2021 Order" and "from sources of Google's choosing, without input from Plaintiffs and without transparency as to the data contained within data sources it was not producing"
- ¶ 103: entire paragraph
- ¶ 104: entire paragraph
- ¶ 113: entire paragraph
- ¶ 124: entire paragraph

### 2. Objection to Plaintiffs' Rebuttal Declarations

Google also objects to certain declarations filed with Plaintiffs' Reply. Google Prop. Findings ¶¶ 17-18. Specifically, Google objects to Paragraphs 6, 10, 14–15, 21, 26–27, 28–29, 31–36, 38–40, 42–45, 47, 50, 53, 58, and 64 of Plaintiffs' Joint Rebuttal Declaration (Dkt. 776-5); Paragraphs 5, 7, 24–26, and 29 of the Rebuttal Declaration of Richard M. Smith (Dkt. 776-7); and Paragraphs 11–12, and 35 of the Rebuttal Declaration of Zubair Shafiq (Dkt. 776-13). *Id.* For the same reasons discussed above, the Court finds that portions of the rebuttal declarations contain conclusions and arguments in violation of Civil Local Rule 7-5(b). The Court therefore **SUSTAINS** Google's objections as to arguments and summaries contained in the objected-to paragraphs and

---

[2] The November 12, 2021 order at Dkt. 377 is miscited in the Joint Declaration as Dkt. 378.

2022/09/08 16:13:51    10  /64
Case 4:20-cv-05146-YGR   Document 871-3   Filed 09/19/22   Page 11 of 65
Case 4:20-cv-05146-YGR   Document 862 *SEALED*   Filed 09/08/22   Page 9 of 13

1  strikes that language.

2  Specifically, the Court **STRIKES** the following language from the Joint Rebuttal

3  Declaration (Dkt. 776-5):

4  ¶ 6:  entire paragraph

5  ¶ 10:  first sentence; "refused to fully admit"

6  ¶ 14:  entire paragraph

7  ¶ 15:  "In light of Google's contradictory statements"

8  ¶ 21:  "finally"; "Google changed course"

9  ¶ 26:  first two sentences

10  ¶ 27:  Google's objections to this paragraph are sustained to the extent it contains disputed

11  characterizations of fields and data parameters.

12  ¶ 28:  "This omission is notable"; "But the responses shed no further light on the Not Synced

13  signals"; "not even the full █ data sources identified pursuant to the November 12, 2021 Sealed

14  Order"

15  ¶ 29:  last sentence

16  ¶ 31:  "But this is untrue:

17  ¶ 32:  "but this is flatly untrue – *Google altered the quote for the Opposition brief*"; "Google

18  offered the opposite"; "then made the offer even clearer"; "To ensure an accurate record without the

18  adulteration caused by Google's bad-faith artistic edits"

19  ¶ 33:  "factually incorrect"; "contradictory and vague"; last sentence

20  ¶ 34:  first sentence; "finally"; last two sentences

21  ¶ 35:  "critical"; "pretext"; "finally"; "confirmed"; "highly relevant" "purports";

22  "purported"; "sensitive"

23  ¶ 36:  "This assertion is false"

24  ¶ 38:  "Google's claim that it 'searched' for data actually means Google searched for data it

25  knew to be already mostly deleted"

26  ¶ 39:  "This assertion is false"

27  ¶¶ 40, 42-44:  entire paragraphs, except for evidence attached to and authenticated by the

28

United States District Court
Northern District of California

United States District Court
Northern District of California

declaration

¶ 45: entire paragraph

¶ 47: "after months of litigation and only after a Special Master order to do so"; "finally"; "depriving Plaintiffs of the ability to review and assess the information provided"

¶ 50: entire paragraph

¶ 53: "Counsel's statement was unequivocal, but this was a lie."

¶ 58: entire paragraph

¶ 64: entire paragraph

The Court **STRIKES** the following language from the Rebuttal Declaration of Richard M. Smith (Dkt. 776-7):

¶¶ 5, 7: "Contrary to Google's Opposition"

The Court **STRIKES** the following language from the Rebuttal Declaration of Zubair Shafiq (Dkt. 776-13):

¶ 11: "Thus, Google acknowledges that"

¶ 35: "It simply chose not to do so."

Except as specified above, the Court **OVERRULES** Google's objections to the Joint Declaration and the declarations filed with Plaintiffs' Reply, and **OVERRULES** Google's objections to the extent Google objects to the evidence attached to and authenticated by those declarations. The Court has considered the factual matter contained in the Joint Declaration, the declarations filed with the Reply, and the evidence properly attached to those declarations in evaluating Plaintiffs' Motion. Moreover, by sustaining Google's objection to any paragraph on the grounds that it contains improper argument or characterizations of disputed matters, the Court does not necessarily indicate that it disagrees with Plaintiffs' arguments or characterizations, only that such material is not properly contained in a declaration, particularly a declaration of counsel.

2022/09/08 16:13:51   12  /64
Case 4:20-cv-05146-YGR   Document 871-3   Filed 09/19/22   Page 13 of 65
Case 4:20-cv-05146-YGR   Document 862 *SEALED*   Filed 09/08/22   Page 11 of 13

### 3.   Objection to Plaintiffs' Notice of Motion

Google objects to Plaintiffs' Notice of Motion on the basis that it improperly contains argument beyond the 25-page limit set by Local Rule 7-2. Opp. at 14 n.14. Specifically, Google argues that Plaintiffs' Notice of Motion contains approximately two pages of summary beyond the 25 pages allowed under the Local Rules, specifically Notice of Motion at i-iii. *Id.* The Court **OVERRULES** this objection. The Court has not considered the substantive arguments in the Notice of Motion, separate from the arguments contained in Plaintiffs' Memorandum of Points and Authorities.

### D.   Plaintiffs' Specific Evidentiary Objections

At the August 11, 2022 hearing, Plaintiffs moved to strike Google's argument that Not Synced status can be inferred from signals other than ▮▮▮▮ and Sync Disabled, addressing the list set forth on Plaintiffs' Demonstrative Slide 11 and Plaintiffs' Proposed Findings of Fact ¶ 91. Dkt. 840 (8/11/22 Hrg. Tr.) at 74:8-76:6; 198:15-22. Plaintiffs motion to strike is **OVERRULED**. That list of signals does not appear in Plaintiffs' Motion, and neither the demonstrative nor the Proposed Finding of Fact cite to the Motion or a supporting declaration. Accordingly, this argument was properly addressed by Google at the hearing.

### III.   FINDINGS OF FACT AND CONCLUSIONS OF LAW

The Court's Findings of Fact and Conclusion of Law on the Motion are attached to this Order as **Exhibit A**.

### IV.   ADMINISTRATIVE MOTIONS FOR LEAVE TO FILE UNDER SEAL

The Parties filed a number of administrative motions for leave to file to seal in connection with their submissions on the present Motion. *See* Dkt. 669, 747, 776, 780, 795, 799 (motions to seal); *see also* Dkt. 689, 808, 814 (declarations filed in support of motions to seal). To facilitate ruling on the motions to seal, the Court **ORDERS** that by **September 23, 2022,** Google must submit a single proposed order that encompasses all motions to seal submitted in connection with the Motion.

2022/09/08 16:13:51    13  /64
Case 4:20-cv-05146-YGR    Document 871-3    Filed 09/19/22    Page 14 of 65
Case 4:20-cv-05146-YGR    Document 862 *SEALED*    Filed 09/08/22    Page 12 of 13

## V.    CONCLUSION

For the reasons discussed in Exhibit A, the Court **ORDERS** that sanctions be imposed against Google as follows:

1.    With respect to the delayed production of Named Plaintiffs data, the Court finds the following monetary sanction to be warranted and to bear a reasonable relationship to Google's discovery misconduct:

a.    The Court orders Google to pays Plaintiffs a portion of their Special Master fees pursuant to Rule 16(f)(2). The Court is informed and believes the fees paid to the Special Master in this case and the related case of *Brown v. Google*, 20-cv-3664-YGR, exceed $1 million, and Google's discovery violations with respect to Named Plaintiffs' data (including the first round searches that returned null sets and proceedings to ensure Google's production of publisher notice data) spanned the period of January 2022 to May 2022. The issues before the Special Master were numerous and entwined such that a calculation of time spent on any one issue with mathematical precision is neither possible nor required. Considering these factors, the Court determines that an award to the Plaintiffs in this case of expenses in the amount of $100,000 is appropriate. Pursuant to Rule 16(f)(2), the Court finds that a monetary award that includes <u>all</u> of Plaintiffs expenses including attorney's fees on the Named Plaintiffs data issue would be unjust under the circumstances of this case in light of the evidentiary issues noted in this Order and the fact that Plaintiffs only partially prevailed on the present Motion.

2.    With respect to the delayed production of ▮▮▮▮▮▮ documents, the Court finds the following evidentiary sanction to be warranted and to bear a reasonable relationship to Google's discovery misconduct:

a.    Pursuant to Rule 16(f)(1) and Rule 37(b)(2)(A)(ii) referenced therein, the Court finds it appropriate to prohibit Google in any further proceeding in this case from objecting to the admissibility or use of the ▮▮▮▮▮▮ final paper (GOOG-CABR-05885987) and the ▮▮▮▮▮▮ interview notes (GOOG-CABR-

United States District Court
Northern District of California

1    05885871). This Order does not preclude Google from offering admissible

2    evidence in response to the ███████ final paper or ███████ interview

3    notes.

4    Except as noted herein, for the reasons set forth in Exhibit A, Plaintiffs' request for additional

5    sanctions is **DENIED.**

6        **SO ORDERED.**

7    Dated: September 8, 2022

8

9    *Susan van Keulen*

10                                         SUSAN VAN KEULEN
                                            United States Magistrate Judge

2022/09/08 16:13:51    15  /64
Case 4:20-cv-05146-YGR    Document 871-3    Filed 09/19/22    Page 16 of 65
Case 4:20-cv-05146-YGR   Document 862-1 *SEALED*   Filed 09/08/22   Page 1 of 50

**EXHIBIT A – FINDINGS OF FACT AND CONCLUSIONS OF LAW ON PLAINTIFFS'
MOTION FOR SANCTIONS FOR DISCOVERY MISCONDUCT**

*Calhoun, et al. v. Google LLC*
**United States District Court for the Northern District of California
Case No. 20-cv-5146-YGR**

## Table of Contents

FINDINGS OF FACT ................................................................................................................. 1

I.      Allegations in the Complaint ......................................................................................... 1

II.     Not Synced Signals ........................................................................................................ 3

        A.      Factual Background ............................................................................................. 3
                1.   Google's Motion for a Protective Order ..................................................... 4
                2.   Sync Signal Discovery ............................................................................... 7
                3.   The November 12, 2021 Order .................................................................. 16
        B.      Findings Regarding Alleged Discovery Misconduct ............................................. 17
        C.      Findings Regarding Prejudice ........................................................................... 17

III.    NAMED PLAINTIFFS' DATA ....................................................................................... 20

        A.      Factual Background ........................................................................................... 20
        B.      Findings Regarding Alleged Discovery Misconduct ............................................. 27
        C.      Findings Regarding Prejudice ........................................................................... 29

IV.     ▮▮▮▮▮▮▮▮" Documents ...................................................................................... 31

        A.      Factual Background ........................................................................................... 31
        B.      Findings Regarding Alleged Discovery Misconduct ............................................. 38
        C.      Findings Regarding Prejudice ........................................................................... 38

CONCLUSIONS OF LAW ......................................................................................................... 41

I.      Federal Rules of Civil Procedure 16(f) and 37(b) .......................................................... 41
        A.      Legal Standard ................................................................................................... 41
        B.      Discussion .......................................................................................................... 42

II.     Federal Rule of Civil Procedure 37(e) (Failure to Preserve Electronic Evidence) ............ 47

III.    The Court's Inherent Authority ...................................................................................... 48

i

2022/09/08 16:13:51    16  /64
Case 4:20-cv-05146-YGR    Document 871-3    Filed 09/19/22    Page 17 of 65
Case 4:20-cv-05146-YGR   Document 862-1 *SEALED*   Filed 09/08/22   Page 2 of 50

**FINDINGS OF FACT**

**I.    ALLEGATIONS IN THE COMPLAINT**

1.    On July 27, 2020, Plaintiffs filed their original Complaint in this matter, alleging privacy, property, statutory, and contract violations on behalf of "Chrome users who chose not to 'sync' their browsers with their Google accounts while browsing the web." Dkt. 1 ¶ 1.

2.    In the original Complaint, Plaintiffs alleged that Google expressly promises Chrome users that they "don't need to provide any personal information to use Chrome" and that "[t]he personal information that Chrome stores won't be sent to Google unless you choose to store that data in your Google Account by turning on [s]ync." *Id.* ¶ 2. Plaintiffs allege that "[d]espite these express and binding promises, Google intentionally and unlawfully causes Chrome to record and send users' personal information to Google *regardless of whether a user selects to Sync or even has a Google account.*" *Id.* ¶ 3 (emphasis in original). Plaintiffs' original Complaint included examples of the alleged unauthorized disclosures from Chrome to Google of Named Plaintiffs' information, the majority of which were sent from Chrome to Google.com. *See, e.g.*, Dkt. 3-3 (sealed version of original Complaint) ¶¶ 156-167, 170-172, 176-178, 182-192; *see also* FOF[1] ¶ 81, *infra*.

3.    On April 16, 2021, Plaintiffs filed their First Amended Complaint, which provides additional "specific examples of the personal data flow that Chrome sent from Plaintiffs' devices as they used Chrome while Not Synced, demonstrating that Chrome secretly sends personal information to Google even when a Chrome user does not sync." Dkt. 163 ("FAC") ¶ 5.

4.    Plaintiffs' original and First Amended Complaints allege that information was being disclosed to three Google entities: "Google Ads, Google Doubleclick, and Google Analytics." Dkt. 1 ¶ 145; FAC ¶ 148. Plaintiffs identified specific cookies that "Chrome sends to Google Ads" for Not Synced users, which include the "NID" or Zwieback cookie. *See, e.g.*, Dkt. 1 ¶ 149; FAC ¶ 156; *see also* Dkt. 799-2 ("Pls. Prop. Findings") ¶ 14.

5.    The original and First Amended Complaints attached exhibits with the Chrome Privacy Notice and the allegedly relevant promises contained therein. Dkt. 1 ¶¶ 37-38 and Exs. 17-

---

[1] "FOF" refers to the Court's Findings of Fact in this Exhibit A.

1

2022/09/08 16:13:51    17 /64
Case 4:20-cv-05146-YGR    Document 871-3    Filed 09/19/22    Page 18 of 65
Case 4:20-cv-05146-YGR    Document 862-1 *SEALED*    Filed 09/08/22    Page 3 of 50

1   33; FAC ¶ 44 and Exs. 17-33.

2       6.      On September 10, 2021, Plaintiffs filed their Second Amended Complaint ("SAC").

3   Dkt. 302-4. In the SAC, Plaintiffs allege that Google improperly collected IP addresses, user-agent

4   information, URLs, cookies, and other allegedly "personal" information when they visited third-party

5   websites that use Google's advertising, analytics, and similar services. *Id.* ¶¶ 112–159.

6       7.      On October 14, 2021, Plaintiffs moved to certify the following class:

7           All Google Chrome users in the United States who did not enable "Sync" while
            browsing the web using Chrome ("Not Synced Chrome Users") or who disabled
8           "Sync" while browsing using Chrome ("Unsynced Users"), at any time between July
            27, 2016 to the present (the "Class Period"). Browsing using the Chrome browser in
9           Incognito mode is excluded from the Class.

10  Dkt. 340.

11      8.      Google has opposed Plaintiffs' motion for class certification. Dkt. 429.

12      9.      On November 30, 2021, Google moved for summary judgment on Plaintiffs'

13  remaining claims. Dkt. 395. Google's motion for summary judgment argues that that Plaintiffs

14  consented to Google's receipt of the data at issue because the Account Holder Agreements and

15  Google Privacy Policy disclosed the data collection at issue and each named Plaintiff affirmatively

16  selected "I agree" to one or both of those disclosures. *Id.*

17      10.     Plaintiffs' motion for class certification and Google's motion for summary judgment

18  are currently pending.

19      11.     After several extensions of the fact discovery cut-off, fact discovery in this action

20  closed on March 4, 2022. *See* Dkt. 464.

21      12.     Plaintiffs' Motion for Sanctions ("Motion") argues that Google committed discovery

22  misconduct with respect to four categories of information: (1) Not Synced Signals; (2) failure to

23  produce Named Plaintiff data; (3) spoliation of Named Plaintiff data; and (4) failure to produce certain

24  ▌▌▌▌▌▌▌ documents. *See* Dkt. 670 at 1-4.

25

26

27

28

                                    2

## II.    NOT SYNCED SIGNALS

### A. Factual Background

13.    Plaintiffs' Motion alleges that Google made false and misleading statements regarding the existence of signals that identify when a Chrome user is not synced, which Plaintiffs argue are relevant to their proposed class of individuals who used the Chrome browser while not synced. Motion at 6-10.

14.    Google has explained Sync as follows: "Chrome's Sync mode is a browser personalization feature that allows the user to save and backup certain settings and information — *e.g.*, Chrome browsing history, bookmarks, tabs, passwords and autofill information (*e.g.*, name, phone number, address, email address), and other browser settings — that are stored locally in their Chrome browser on one device (*e.g.* a laptop) in her Google Account so that she can access the same settings and information when she signs in and enables Sync in her Chrome browser on an existing or new device (*e.g.*, a mobile device). The purpose of Sync is to allow a user to have the same personalized browsing experience, and access to the same settings and information, across all of her Synced devices." Dkt. 430-12 (Declaration of Abdelkarim Mardini filed with Google's Opposition to Motion for Class Certification) ¶ 17.

15.    As explained by the Court at the August 11, 2022 hearing on the Motion, it adopts the following terminology in connection with the Motion: "Synced" refers to the state when a user is synced by any mechanism (*i.e.*, whether by a default mechanism or by the user's election); and "Not Synced" refers to the alternative state when a user is not synced or no longer synced by any mechanism (*i.e.*, by default, by operation of a program, or by the user's election). "Not Synced" has a subcategory of "███████" (sometimes referred to by the Parties as "unsynced") which indicates a change of state in which a user that was synced becomes not synced as a result of some occurrence or election. Dkt. 840 (8/11/22 Hrg. Tr.) at 9:5-22.

16.    Plaintiffs claim that the following signals indicate a user's not synced status:

    a.    The "██████" signal, *i.e.*, Signed In But Not Consented for Sync; and

    b.    The "SyncDisabledEvent" signal.

*See* Motion at 7-9. In light of the Parties' focus on the ████ and SyncDisabledEvent signals (*see*

2022/09/08 16:13:51    19  /64
Case 4:20-cv-05146-YGR    Document 871-3    Filed 09/19/22    Page 20 of 65
Case 4:20-cv-05146-YGR    Document 862-1 *SEALED*    Filed 09/08/22    Page 5 of 50

1  *id.; see also* Dkt. 747-3 ("Opp.") at 4-5), the Court will consider those two signals as "Not Synced

2  Signals" in addressing Plaintiffs' argument that Google should be sanctioned for its failure to disclose

3  Not Synced Signals.

4      17.    Plaintiffs argue that Google's misrepresentations and discovery misconduct relating

5  to Not Synced Signals violated Google's obligations under Rule 16(f), Rule 37(b), Rule 37(e), and

6  its duties of candor to the tribunal that are subject to the Court's inherent authority to issue sanctions,

7  and that Google used its concealment of the Not Synced Signals to obtain a Protective Order from

8  the Court and to obtain an improper advantage on its arguments in opposition to Class Certification.

9  Pls. Prop. Findings ¶ 10.

10                    **1.    Google's Motion for a Protective Order**

11      18.    In January 2021, Google informed Plaintiffs that "event-level" logs were being

12  preserved "in the ordinary course of business." *Id.* ¶ 13; Joint Decl.[2] ¶¶ 3-4. Plaintiffs inquired if

13  these data logs included information "reflecting synced and unsynced browser states[.]" Joint Decl.

14  Ex. 2 (Plaintiffs' 1/21/21 Letter). Specifically, Plaintiffs asked Google to "provide a more precise

15  description of these data sources, including with specificity whether these sources include logs

16  reflecting synced and unsynced browser states; collection of PI; content of user communications; or

17  other information relevant to what Google is collecting about Plaintiffs and the putative class." *Id.*

18      19.    On January 29, 2021, Google responded as follows: "Disabling sync is a client-side

19  action that is not visible server-side (*i.e.*, to Google). Therefore, Google does not have any logs

20

21  _____

22      [2] This document refers to the declarations filed in connection with the Motion as follows:

23  "Joint Decl." refers to the Joint Declaration of Jason "Jay" Barnes, Lesley Weaver, and David
Straite in Support of Plaintiffs' Motion for Sanctions (Dkt. 669-3). Exhibits to the Joint Decl. are
24  at Dkt. 669-4 to 669-15.

25      "Ansorge Decl." refers to the Declaration of Josef Ansorge filed with Google's Opposition
(Dkt. 747-5). Exhibits to the Ansorge Decl. are at Dkt. 747-6.

26      "Olson Decl." refers to the Declaration of Alyssa Olson in filed with Google's Opposition
(Dkt. 747-7). Exhibits to the Olson Decl. are at Dkt. 747-8 to 747-12.

27      "Joint Rebuttal Decl." refers to the Joint Rebuttal Declaration of Jason "Jay" Barnes. Lesley
28  Weaver, and David Straite filed with Plaintiffs' Reply (Dkt. 776-5). Exhibits to the Joint Rebuttal
Decl. are at Dkt. 776-6 to 776-31.

4

2022/09/08 16:13:51    20 /64
Case 4:20-cv-05146-YGR    Document 871-3    Filed 09/19/22    Page 21 of 65
Case 4:20-cv-05146-YGR    Document 862-1 *SEALED*    Filed 09/08/22    Page 6 of 50

1 showing when a user is not synced." *See* Joint Decl. Ex. 3 (Google's 1/29/21 Letter). Google

2 identified ▓▓▓▓ Logs and represented that "[t]hese logs show ▓▓▓▓ Google received

3 from users who had sync enabled." *Id.*

4      20.    The Parties' disagreement on Google's obligations to retain event-level logs

5 culminated on February 17, 2021, with Google filing a Motion for a Protective Order. *See* Dkt. 109.

6 In the motion, Google stated that Plaintiffs' preservation demand implicated certain My Activity,

7 Analytics, and Display Ad logs. *Id.*

8      21.    On February 24, 2021, Plaintiffs opposed Google's Motion for a Protective Order. *See*

9 Dkt. 117-4. In their Opposition, Plaintiffs noted that Google had omitted from discussion the ▓▓▓

10 ▓▓▓ Logs and argued that "Google's omission is alarming, as it suggests that Google believes that

11 it may unilaterally destroy the ▓▓▓▓ logs without any Court oversight." *Id.* at 2.

12      22.    On March 3, 2021, the Court issued an order in advance of the March 5, 2022 hearing

13 on Google's motion for protective order, indicating that Google was to be prepared to provide a

14 general overview of data collected by each of ▓ logs, including ▓▓▓▓ Logs. Dkt. 125.

15      23.    During the March 5, 2021 hearing, Google made the following representations:

16          a.   "The ▓▓▓▓ logs are the logs that show ▓▓▓▓▓▓▓▓

17               ▓▓▓▓▓▓▓▓ (Dkt. 137 (3/5/21 Hrg. Tr.) at 11:17-18);

18          b.   The Chrome ▓▓▓▓ logs "do not ▓▓▓▓▓▓▓▓" (*id.*

19               at 12:9-10);

20          c.   "Google only sync[]s the ▓▓▓▓ that it receives through the ▓▓▓

21               logs if a user has enabled sync. If a user has not enabled sync, then []the ▓▓

22               ▓▓ logs will not show data for that user who has not enabled sync[]" (*id.* at

23               14:13-17); and

24          d.   ▓▓▓▓ logs "are not logs that we are able to pull out, or that we have focused

25               on preserving because they are not relevant here…. They record ▓▓▓▓

26               [][▓▓▓▓▓▓▓▓ … " (*id.* at 21:9-13). Counsel later clarified this

27               statement in the same hearing, telling the Court:

28                    Can I also clarify – I'm being told, Your Honor, that I misspoke on

2022/09/08 16:13:51    21 /64
Case 4:20-cv-05146-YGR    Document 871-3    Filed 09/19/22    Page 22 of 65
Case 4:20-cv-05146-YGR    Document 862-1 *SEALED*    Filed 09/08/22    Page 7 of 50

1    the record and said that the ████████ logs record ████
2    ████ and if I misspoke, I apologize. The
     ████████ logs record ████████████████
3    ████

4    *Id.* at 24:4-9. In response, the Court stated, "You may have misspoken, but that was certainly my

5    impression, that the ████████ log is ████████████, and I think that was also

6    addressed in the papers. But thank you for the clarification for today's record." *Id.* at 24:12-16.

7         24.    The Court asked Google: "[F]or a given period of time, and let's say September of

8    2020 [] is Google able to identify the number of unsynced users who are using Chrome, who are –

9    like the Plaintiffs allege they were?" *Id.* at 23:7-11. In response, Google answered, "that is not a

10   figure that's readily available to Google. We have figures or numbers related to users who have

11   synced and we've provided those in discovery to Plaintiffs. But to back into a number of users, just

12   a number of users who are not synced, that is not a number that's readily available." *Id.* at 23:22-

13   24:3.

14        25.    At the March 5, 2021 hearing, counsel for Plaintiffs then informed the Court that they

15   had run tests of transmissions from Chrome to Google and identified "the specific signal that the

16   Chrome browser sends to Google to turn sync on and off." *Id.* at 30:17–19.

17        26.    The Court acknowledged that the "information in the logs . . . perhaps theoretically

18   could help" Plaintiffs "identify and quantify the class," but explained that it was "not yet clear that a

19   wholesale preservation of these logs is necessary" when "looking at relevance and []. very keenly at

20   proportionality." *Id.* at 38:2–15.

21        27.    Following the March 5, 2021 hearing, the Court ordered a series of Rule 30(b)(6)

22   depositions related to the identification of relevant logs and retention of data in those logs. *See, e.g.*,

23   Dkts. 155, 192-1 (Issue 1.1). During the first deposition, on April 9, 2021, Google's corporate

24   designee David Monsees testified on behalf of Google that Google "cannot [identify users who are

25   not synced] because they are not synced" and "Google does not have a…Google Account ID in

26   Chrome for users who are not signed in using Chrome sync." Joint Decl. Ex. 6 (4/9/21 30(b)(6) Depo.

27   Tr.) at 116:6-117:8.

28        28.    Additional briefing addressing the identification of relevant logs and retention of data

6

2022/09/08 16:13:51    22 /64
Case 4:20-cv-05146-YGR    Document 871-3    Filed 09/19/22    Page 23 of 65
Case 4:20-cv-05146-YGR    Document 862-1 *SEALED*    Filed 09/08/22    Page 8 of 50

1 | in those logs followed. Dkt. 152, 164, 166.

2 |     29.    On April 30, 2021, based upon the balancing of relevance and proportionality as
3 | articulated by the Court at the March 5, 2021 hearing and the subsequent submissions of the Parties
4 | following limited discovery on the subject, the Court granted Google's Motion for a Protective Order.
5 | Dkt. 174. The Court's Protective Order stated that "Google need not suspend its standard retention
6 | periods applicable to data logs that reflect event-level data of Chrome users in the United States." *Id.*
7 | The Protective Order applied to           logs, among others.

8 |     30.    The Court's April 30, 2021 Protective Order was not based upon "misrepresentations"
9 | by Google, as Plaintiffs suggest. In the context of the March 5, 2021 hearing, which was to gain a
10 | general understanding of the logs at issue to enable focused, limited discovery relating to the logs
11 | (*see* Dkt. 125), the Court does not find that Google misrepresented facts. It is significant that, at the
12 | hearing, Plaintiffs were aware of and argued to the Court that an      signal is transmitted from
13 | Chrome to Google when a Chrome user disables sync and that this     signal was reflected in
14 | the       Logs. Dkt. 137 (3/5/21 Hrg. Tr.) at 30:14-23. That was precisely the fact that the
15 | Court was balancing against the volume of data involved and the feasibility of maintaining logs of all
16 | event-level data for the duration of the litigation. *Id.* at 38:8-18. Plaintiffs are correct, and the Court
17 | was well aware at the time, that as a result of the Protective Order some potentially relevant data was
18 | not retained. As the Court has articulated to the Parties on several occasions (*see, e.g.,* Dkt. 766 at 1-
19 | 2), this litigation may be unique for the vast and complex universe of data at issue. Because of its size
20 | and complexity, that universe of data was never going to be retained in its entirety.

21 |           **2.**    **Sync Signal Discovery**

22 |     31.    On June 11, 2021, Plaintiffs questioned Google's corporate designee, Mr. Monsees,
23 | about "not-synced" signals:

24 |         Q. []Does Google maintain a record of requests to unsync?

25 |         A. I -- I'm sorry, I understand. So when a user chooses to unsync,
26 |         stop syncing --

27 |         Q. Correct.

28 |         A. -- that is what you're asking? So, yes, Google would need to

2022/09/08 16:13:51    23 /64
Case 4:20-cv-05146-YGR    Document 871-3    Filed 09/19/22    Page 24 of 65
Case 4:20-cv-05146-YGR    Document 862-1 *SEALED*    Filed 09/08/22    Page 9 of 50

1    receive a request from said device to be able to know that it should
2    no longer sync and likely be excluded from a list of shown syncing
     devices.

3    Q. Where does Google keep a record of user actions to unsync?

4
5    A. There are temporary ███████████ logs that I believe we discussed
     in the last deposition. I would assume that any action of the sync
6    service, where a users's Chrome app is communicating with the sync
     service would generate such a ███████████ log, including disabling
7    sync, so the server gets that signal.

8    Ansorge Decl. Ex. 4 (6/11/21 30(b)(6) Depo. Tr.) 402:12–403:6.

9      32. In this deposition testimony, Google's corporate representative identified a ███████

10   signal and identified a log where the information is stored. This parallels and reinforces Plaintiffs'

11   representation to the Court at the March 5, 2021 hearing that there are ███████ signals that are stored

12   (*see* FOF ¶ 25 *supra*) and shows Plaintiffs' awareness of these facts.

13     33. On August 6, 2021, Plaintiffs propounded their Third Set of Interrogatories, which

14   included the following (collectively, the "Class Member Identification Interrogatories"):

15     a. "Identify all Google Accountholders, by email, phone number, or other Google

16      Account identifier, from whom Google received Personal Information (as alleged

17      in the Amended Complaint) from their Chrome browser application while it was

18      operating in an un-synced state." Interrogatory No. 13.

19     b. "Identify all Google Accountholders who have never synced any device in any of

20      their Google Accounts." Interrogatory No. 14.

21     c. "Identify all Google Accountholders who have at least one device Google has

22      associated with them that has never been synced." Interrogatory No. 15.

23     d. "Identify all Google Accountholders who have clicked to unsync any of their

24      devices or accounts." Interrogatory No. 18.

25   *See* Joint Decl. ¶ 10; Pls. Prop. Findings ¶ 25.

26     34. On September 7, 2021, Google served its Responses and Objections to the Class

27   Member Identification Interrogatories, in which Google objected on the basis that the interrogatories

28   sought "information that exceeds the scope of Google's preservation obligations established by the

2022/09/08 16:13:51    24 /64
Case 4:20-cv-05146-YGR    Document 871-3    Filed 09/19/22    Page 25 of 65
Case 4:20-cv-05146-YGR    Document 862-1 *SEALED*    Filed 09/08/22    Page 10 of 50

1  Court in this action." *See* Joint Decl. ¶ 11 (citing Google's Resp. & Objs. to Plaintiffs' Third Set of
2  Interrogatories at Interrogatory No. 13); Pls. Prop. Findings ¶ 26. The Court finds this objection was
3  not misplaced in light of its April 30, 2021 Protective Order.

4     35.    Additionally, Plaintiffs' interrogatories, which focused on identification of putative
5  class members based on various "Not Synced" scenarios, underscore a fundamental factual dispute
6  between the Parties over whether a "Not Synced" signal can identify putative class members.
7  *Compare* Motion at 19 (Plaintiffs' argument that "[h]ad Google preserved these not synced signals
8  in logs with other relevant information (as proposed by Plaintiffs), there would be a ready-made
9  databased of information to identify class members and quantify actual unjust enrichment damages
10  on a per user basis") *with* Opp. at 6 (Google's argument that 'Not-synced' signals cannot identify the
11  class because they are not related to a user's visiting a non-Google website that has installed Google
12  services, which is central to Plaintiffs' allegations"). This fundamental dispute is for the Parties'
13  experts and ultimate trier of fact; it is not the basis for discovery sanctions.

14     36.    On September 9, 2021, Plaintiffs served a Rule 30(b)(6) notice. Ansorge Decl. Ex.
15  37.    Among the noticed topics were topics related to sync signals, including the signals:
16  "sync_feature_enabled," "is_sync_feature_enabled," "            " and            " and the logs
17  where such information is stored. *Id.* (Topics 3(d)(vi)(vii), 4, and 5).

18     37.    Plaintiffs' identification of these deposition topics shows their awareness of
19  signals generally (although not by specific name) and of the fact that            signals are stored in
20  data logs. Appropriately, Plaintiffs sought deposition testimony to drill down on the specifics of these
21  signals and logs.

22     38.    For disputed reasons, Plaintiffs did not take a Rule 30(b)(6) deposition pursuant to the
23  September 9, 2021 notice. *See* FOF ¶ 52, *infra*.

24     39.    On September 10, 2021, Plaintiffs served their First Set of Requests for Admission
25  ("RFA") on Google. *See* Joint Rebuttal Decl. ¶ 7. Google served it responses and objections on
26  October 12, 2021. Olson Decl. Ex. 4 (Google's Resp. & Objs. to Plaintiffs First Set of RFAs).

27     40.    Plaintiffs cite Google's responses to RFA Nos. 11, 13, and 18 as instances where
28  Google "refused to admit that Not Synced Signals existed" or "failed to admit that Chrome sends a

9

2022/09/08 16:13:51 25 /64
Case 4:20-cv-05146-YGR Document 871-3 Filed 09/19/22 Page 26 of 65
Case 4:20-cv-05146-YGR Document 862-1 *SEALED* Filed 09/08/22 Page 11 of 50

1 | Signal to Google that indicates when a Chrome user is not synced."." Pls. Prop. Findings ¶¶ 33-35.

2 | Google's full substantive responses to these RFAs are as follows:

3 |     a. RFA No. 11 asked Google to "[a]dmit that Chrome sends a Signal to Google that

4 |         indicates when a Chrome user is not synced." Olson Decl. Ex. 4. After stating

5 |         objections, Google responded:

6 |             Google admits that if a Chrome user is signed in to a Chrome browser,

7 |             and signed in to a Google website, and did not have sync enabled on the
            Chrome browser, then Chrome may send a bit, which depending on the

8 |             circumstances, may indicate to Google that sync is not enabled on that
            Chrome browser at that time. This bit is only sent if the user is also signed

9 |             into their Google Account at the browser level. Google otherwise denies
            this request. Google otherwise denies this request.

10 |         *Id.*

11 |     b. RFA No. 13 asked Google to "[a]dmit that Chrome sends a Signal to Google that

12 |         a Chrome user is not synced but signed-in to a Google Account." *Id.* After stating

13 |         objections, Google responded:

14 |

15 |             Google admits that if a Chrome user is signed in to a Chrome browser,
            and signed into a Google website, and did not have sync enabled on the

16 |             Chrome browser, then Chrome may send a bit, which depending on the
            circumstances, may indicate to Google that sync is not enabled on that

17 |             Chrome browser at that time. This bit is only sent if the user is also signed
            in to their Google Account at the browser level. Google otherwise denies

18 |             this request.

19 |         *Id.*

20 |     c. RFA No. 18 asked Google to "[a]dmit that Chrome sends a Signal to the Google

21 |         sync service when a Chrome user clicks to turn off sync." *Id.* Google responded:

22 |             Google admits that an instance of the Chrome browser will attempt to
            send a request to the Google sync service when a Chrome user clicks to

23 |             turn off sync.

24 |         *Id.*

25 |     41.     Plaintiffs' Proposed Findings do not quote Google's responses to these RFAs in full.

26 | *See* Pls. Prop. Findings ¶¶ 33-35. Plaintiffs argue that Google "refused to admit" in its responses to

27 | RFA Nos. 11, 13 and 18, but Plaintiffs omit the portion of the responses stating that Google "admits"

28 | certain facts. *Id.* Moreover, although Plaintiffs argue that Google's responses to RFA Nos. 11 and

2022/09/08 16:13:51    26  /64
Case 4:20-cv-05146-YGR    Document 871-3    Filed 09/19/22    Page 27 of 65
Case 4:20-cv-05146-YGR   Document 862-1 *SEALED*   Filed 09/08/22   Page 12 of 50

1  13 that Chrome "may" send a bit under certain circumstances are "misleading," the penultimate
2  sentences in Google's responses to RFA Nos. 11 and 13 explain the "may" language.  Plaintiffs have
3  not made a showing of discovery misconduct with regards to Google's responses to RFA Nos. 11 and
4  13.

5      42.    Although Plaintiffs incorrectly argue that Google "refused to admit" in response to
6  RFA No. 18, the Court finds that Google's response is vague and ambiguous as written.  However,
7  the Court finds that Google's response to RFA No. 18, which as drafted is nonsensical, does not rise
8  to the level of discovery misconduct.

9      43.    Plaintiffs also cite in support of their request for sanctions Google's response to
10  RFA No. 12, which asked Google to "[a]dmit that Chrome sends a Signal to Google that indicates
11  when a Chrome user is not signed-in and not synced."  Pls. Prop. Findings ¶¶ 37-38; Olson Decl. Ex.
12  4.  Google denied this request.  Olson Decl. Ex. 4.  Plaintiffs argue that Google's response to RFA
13  No. 12 "is directly contradicted by statements made in Google's Opposition to sanctions [in which]
14  Google admitted [] that 'Google Account holders who are signed out of their Google Account' are
15  'therefore not synced' and non-Google Account holders cannot sync because they do not have a
16  Google account to which they can sign-in."  Pls. Prop. Findings ¶ 38 (citing Opp. at 2).  Plaintiffs
17  argue "[t]his means that any signal or combination of signals indicating that a Chrome user is signed-
18  out is a Not Synced Signal."  *Id.*

19      44.    With respect to Google's response to RFA No. 12 and Plaintiffs' Proposed Finding
20  ¶ 38, Plaintiffs are arguing an inference that if Google's statements in the Opposition are correct, then
21  it can be inferred from those statements that RFA No. 12 is a true fact that Google should have
22  admitted.  Plaintiffs are entitled to argue an inference, and if Plaintiffs are proven correct at trial, Rule
23  37(c)(2) provides the remedy for proving a fact that a party denied.  The Court does not find that
24  Google's response to RFA No. 12 and its statements in Opposition to this Motion rise to the level of
25  discovery misconduct.

26      45.    On December 6, 2021, Plaintiffs moved to compel "compliance with interrogatories
27  seeking the identification of Chrome users who are not Synced."  Dkt. 400 (Joint Discovery Letter
28  Brief) at 2.  Plaintiffs noted that "Google objects that the requests are unduly burdensome because

11

2022/09/08 16:13:51   27 /64
Case 4:20-cv-05146-YGR   Document 871-3   Filed 09/19/22   Page 28 of 65
Case 4:20-cv-05146-YGR   Document 862-1 *SEALED*   Filed 09/08/22   Page 13 of 50

1  Google does not maintain this information in the regular course of business." *Id.*

2      46.     On December 7, 2021, the Court denied Plaintiffs' request without prejudice, stating

3  that the process then underway before the Special Master would "address this issue in due course."

4  Dkt. 404; *see also* FOF ¶¶ 94-95, *infra.*

5      47.     On January 13, 2022, Plaintiffs deposed Tim Schumann in his individual capacity.

6  Ansorge Decl. Ex. 39 (Schumann Depo.). In the deposition, Mr. Schumann discussed both the ▮▮▮

7  signal (identified by name) and the SyncDisabledEvent signal (not identified by name) at length. *See,*

8  *e.g., id.* at 38:7–25; 214:4–217:25; *see also* Dkt. 747-4 (Schumann Decl.) ¶ 12.

9      48.     During his deposition, Mr. Schumann testified that Chrome sends a Not Synced Signal

10  to the ▮▮▮▮▮      Logs for users who are "Signed In But Not Consented for Sync." Ansorge Decl.

11  Ex. 39 (Schumann Depo.) at 38:7-25; 58:1-8; 125:10-16. Internally, Google referred to this signal as

12  "▮▮." *See id.*

13      49.     According to Google, in 2018 it began the "▮▮▮      program, which allows users

14  signed into their Google account on the desktop Chrome browser access to some of the data they

15  would be able to access through the sync feature even without enabling sync. Dkt. 747-4 (Schumann

16  Decl.) ¶ 16. According to Google, this data includes, *e.g.,* payment information from Google Pay,

17  but excludes browsing history, which is not sent to Chrome servers under the ▮▮▮ program. *Id.*

18      50.     According to Google, since 2019, Google has logged a signal also referred to as

19  ▮▮▮▮      and denoted in its ▮▮▮▮▮▮▮▮      to indicate when a user

20  has signed into his Google account and the Chrome browser and has not turned on sync. *Id.* ¶ 17.

21      51.     At the hearing on the Motion, Google stated that all ▮▮ signals are preserved. Dkt.

22  840 (8/11/22 Hrg. Tr.) at 72:5-7; *see also* Ansorge Decl. Ex. 39 (Schumann Depo.) at 79:10-25,

23  125:10-16 (testifying that Google stores the ▮▮ signal in ▮▮▮ with other Google Account-

24  keyed information).

25      52.     As noted above, Google had made Mr. Schumann available to testify—in his

26  individual capacity and as Google's corporate witness on certain topics related to sync signals—on

27  October 8, 2021 and October 11, 2021 in Zurich, Switzerland. *See* Ansorge Decl. ¶ 94. Plaintiffs

28  declined to take Mr. Schumann's deposition on either of those dates, which they explain was because

2022/09/08 16:13:51     28 /64
Case 4:20-cv-05146-YGR     Document 871-3     Filed 09/19/22     Page 29 of 65
Case 4:20-cv-05146-YGR   Document 862-1 *SEALED*   Filed 09/08/22   Page 14 of 50

1 | they were awaiting further document productions. *See* Dkt. 777 (Reply) at 4.

2 |     53.     Thus, Plaintiffs noticed a key deposition in October 2021. That deposition (in an

3 | individual rather than 30(b)(6) capacity) went forward in January 2022, but the disclosures regarding

4 | ███ made during that deposition were still timely. In terms of identification and production of

5 | ███ signals, that process was before the Special Master, and ███ was disclosed in November

6 | 2021 pursuant to Court Order. *See* Ansorge Decl. Ex. 34 (Google's 11/23/21 submission to Special

7 | Master) at 13, 51.

8 |     54.     With regards to the SyncDisabledEvent signal, in deposition, Mr. Schumann testified:

9 |     Q. So when a Chrome user clicks to turn off
10 | Sync, Google admits there's a signal, at least
there's an attempt to emit a signal to the sync
11 | server; correct?

12 | …

13 | THE WITNESS: Yes, and to answer your
questions, in that event, Chrome will attempt
14 | to send a request to the Sync server.

15 | …

16 | Q: [] I want to re-ask the
17 | original question, which is, there are lots of
circumstances every single day in which a person
18 | clicks the ███ button that causes the Chrome
browser to emit the ███ signal to the sync
19 | service; correct?

20 | A. This is correct.

21 |

22 | Ansorge Decl. Ex. 39 (Schumann Depo.) at 213:18-214:2; 216:10-216:16.

23 |     55.     In his declaration in support of Opposition, Mr. Schumann stated:

24 | I discussed the SyncDisabled Event signal at length during my deposition on
January 13, 2022, where counsel called it a ███ signal." Tr. 214:12-217:217:6.
25 | Counsel did not ask whether this signal was known by other names.

26 |
27 | Dkt. 747-4 (Schumann Decl.) ¶ 12.

    56.     On March 4, 2022 (the last day of fact discovery), the Special Master arranged a live
28 |

2022/09/08 16:13:51 29 /64
Case 4:20-cv-05146-YGR Document 871-3 Filed 09/19/22 Page 30 of 65
Case 4:20-cv-05146-YGR Document 862-1 *SEALED* Filed 09/08/22 Page 15 of 50

1 demonstration of Google's internal logs, via video conference, for the Parties and their counsel and

2 experts. During the demonstration, the participants observed the SyncDisabledEvent Signal pass

3 from Chrome to Google. Joint Decl. ¶¶ 32-33; Pls. Prop. Findings ¶ 80.

4     57. Later that same day, at 11:52 p.m. Pacific, Google amended its discovery answers to

5 include the following information about the SyncDisabledEvent Signal:

6     When a Chrome user stops sync, the Chrome client sends a "SyncDisabledEvent" signal
    to the Chrome Sync server. ... The signal is recorded in Chrome Sync's ▮▮▮▮▮

7     data store, ▮▮▮▮▮▮▮▮▮ where the record is retained until the user clears the sync
    data associated with that Google Account or deletes that Google Account. The signal is

8     also recorded in the ▮▮▮▮▮

9

10 Joint Decl. Ex. 8 (Supplemental Response to Interrogatory No. 34). Plaintiffs emphasize that

11 Google's amended interrogatory response was served "with eight minutes left to the end of fact

12 discovery." *See* Pls. Prop. Findings ¶ 81. Google claims that the SyncDisabledEvent signal had been

13 inadvertently omitted from its original response and argues its correction was timely. Opp. at 4.

14     58. Google's conduct with respect to the SyncDisabledEvent signal, specifically

15 Mr. Schumann not identifying the signal by name in deposition regardless of being asked, and the

16 omission of the identification of the signal by name in its interrogatory responses until literally the

17 final minutes of discovery, verified by Mr. Schumann, demonstrates a lack of candor. However,

18 Plaintiffs were not prejudiced by this lack of candor because, as discussed above, Plaintiffs had known

19 about the existence of the signal (if not its name) for many months and had a plan for additional,

20 timely discovery regarding a "▮▮▮▮▮" signal by deposition.

21     59. Plaintiffs further argue that Google failed to identify that the SyncDisabledEvent

22 signal is recorded in the ▮▮▮▮▮▮▮▮▮ when Google submitted field names to the

23 Special Master on November 23, 2021 as required by the Court's November 12, 2022 Order. Motion

24 at 9; Joint Decl. ¶ 20; *see also* Ansorge Decl. Ex. 34 at PDF p. 215. At the August 11, 2022 hearing

25 on the present Motion, Google argued that the SyncDisabledEvent signal is identified at Row 8 in the

26 list of field names provided to the Special Master in November 2021, which reads "Request," when

27 formatted as "request equal post backslash Chrome sync backslash event that indicates the

28 SyncDisabledEvent signal." Dkt. 840 (8/11/22 Hrg. Tr.) at 59:5-18. The Parties dispute what Row

14

2022/09/08 16:13:51    30 /64
Case 4:20-cv-05146-YGR    Document 871-3    Filed 09/19/22    Page 31 of 65
Case 4:20-cv-05146-YGR    Document 862-1 *SEALED*    Filed 09/08/22    Page 16 of 50

8 actually reveals and resolution of that question is for the experts, not discovery misconduct.

60.     In addition to the ▮▮▮ and SyncDisabledEvent signals, Plaintiffs claim that other signals exist that indicate a user's Not Synced status and should have been identified during the course of discovery, including: ▮▮▮▮▮▮ Signal; Zwieback ▮▮▮ Field Names; Sync_Feature_Enabled; and other signals. *See* Pls' Proposed FOF ¶¶ 79, 83-92; Dkt. 840 (8/11/22 Hrg. Tr.) at 28:25-29:15 (referring to Plaintiffs' Demonstrative Slide 11). For at least some of these signals, Plaintiffs claim that they should be considered Not Synced Signals because it can be inferred from the signals that a user is not synced. *See, e.g.,* Pls. Prop. Finding ¶ 90 ("Google concedes that a person who is 'signed out of their Google Account' or not signed-in is 'therefore not synced'" and "[t]hus, it is undisputed that signals which identify a user as not being signed in are also Not Synced Signals").

61.     Google disputes these characterizations. For example, Google contends that neither the ▮▮▮ nor SyncDisabledEvent signal reliably records all instances in which users browse on Chrome without enabling sync and that those signals, when taken in combination, do not reliably record all instances in which users browse on Chrome without enabling sync. Dkt. 747-4 (Schumann Decl.) ¶¶ 13-14, 18-19. Similarly, Google maintains that there is no log or set of logs within Google that reflects the unsynced browser state of all Chrome users and that Google therefore cannot readily identify all users browsing without sync enabled, or determine the number of such users. *Id.* ¶ 20. Finally, at the hearing on this Motion, Google continued to challenge Plaintiffs' argument to infer Not Synced Signals, addressing the list set forth on Plaintiffs' Demonstrative Slide 11 and Plaintiffs' Proposed Finding of Fact ¶ 91. Dkt. 840 (8/11/22 Hrg. Tr.) at 74:8-76:6.

62.     To be sure, the Parties dispute the meaning of these signals, including what inferences can be properly drawn from them. The essence of Plaintiffs' argument, that they did not have an opportunity to exhaust discovery on all potentially relevant signals, ignores both the complexity of identifying relevant data sources and fields (*i.e.*, signals) tracked in those sources and the significant amount of discovery Plaintiffs did conduct. That there may be additional signals which arguably indicate a specific user's Not Synced status is not, in the context of this case, necessarily indicative of discovery misconduct, and the Court does not find that Plaintiffs' arguments support discovery

2022/09/08 16:13:51    31 /64
Case 4:20-cv-05146-YGR    Document 871-3    Filed 09/19/22    Page 32 of 65
Case 4:20-cv-05146-YGR   Document 862-1 *SEALED*   Filed 09/08/22   Page 17 of 50

1  misconduct by Google in this instance.

2  **3.    The November 12, 2021 Order**

3  63.    On November 12, 2021, the Court ordered Google to provide Plaintiffs with
4  information about "sync-state signals" and their storage. *See* Dkt. 377-1. Specifically, Google was
5  ordered to provide "full schemas, a list of ALL fields with their descriptions, a list of tools used to
6  search the respective data sources, and instruction sets and manuals for all tools identified" for "[a]ny
7  potentially relevant data source….where information about sync-state signals are stored[.]" *Id.* ¶ 3.

8  64.    On November 23, 2021, Google provided a list of ██ "Data Sources with Sync-State
9  Signals":



Ansorge Decl. Ex. 34 at PDF p. 214 (Tab 3.3.2).

65.    Google provided field names and descriptions for one of the ██ data sources: the ████
" data source (highlighted in blue above). *See id.* at PDF pp. 215-219. For this
data source, Google produced a list of ██ fields, including the ████ field:
████████████████. *Id.* at PDF p. 219, Row
309. Google described the field as: "[w]hether the client has full sync (or, sync the feature) enabled
or transport-only (aka ████. Logged only when the value is present in the request." *See id.*

66.    Plaintiffs argue that the description of this field (which Plaintiffs acknowledge is the
████ signal) implies that the field only logs the value when the sync feature is enabled and is
therefore misleading. Pls. Prop. Findings ¶ 51. Regardless of Plaintiffs' interpretation of the field

2022/09/08 16:13:51    32  /64
Case 4:20-cv-05146-YGR    Document 871-3    Filed 09/19/22    Page 33 of 65
Case 4:20-cv-05146-YGR    Document 862-1 *SEALED*    Filed 09/08/22    Page 18 of 50

1    description in November, by January, Plaintiffs deposed Mr. Schumann extensively on the ▮▮▮
2    signal and any confusion as to this field description was or could have been addressed at that time.
3    *See* FOF ¶¶ 47-48, *supra; see also* Dkt. 747-4 (Schumann Decl. ¶¶ 16-18. Thus, Google's description
4    of this field did not constitute discovery misconduct.

5        67.    Plaintiffs also complain that Google failed to comply with the November 12, 2021
6    Order because it did not adequately identify "full schemas, a list of ALL fields with their descriptions,
7    a list of tools used to search the respective data sources, and instruction sets and manuals for all tools
8    identified" for all ▮ data sources listed on Tab 3.3.2. Pls. Prop. Findings ¶ 49. However, fields and
9    descriptions were provided in subsequent productions in the Special Master process, either as part of
10    the November 18 or December 6, 2021 productions. Shortcomings in, and where necessary
11    adjustments to, proceedings before the Special Master were substantially addressed in that forum, as
12    evidenced not only by the time and resources expended by all involved, but also by the ultimate
13    productions of relevant data under the Special Master's direction.

14        68.    Accordingly, the Court finds that Google did not engage in sanctionable misconduct
15    with respect to the November 12, 2021 order in light of the ongoing Special Master process at this
16    time.

17        **B. Findings Regarding Alleged Discovery Misconduct**

18        69.    For the reasons discussed at FOF ¶ 58, *supra*, the Court finds that Mr. Schumann and
19    Google, collectively, displayed a lack of candor in Mr. Schumann's deposition testimony and
20    Google's Supplemental Response to Interrogatory No. 34. However, for the reasons discussed in the
21    following section, the Court finds that Plaintiffs did not suffer prejudice as a result.

22        **C. Findings Regarding Prejudice**

23        70.    Plaintiffs argue that by misstating and omitting information about Not Synced Signals,
24    Google has impaired Plaintiffs' ability to identify class members and quantify damages. Pls. Prop.
25    Findings ¶¶ 66-73.

26        71.    On October 14, 2021, Plaintiffs filed their Motion for Class Certification (Dkt. 339),
27    which included the expert reports of Richard M. Smith (Dkt. 339-14 — the "Smith Report") and
28    Zubair Shafiq (Dkt. 339-20 — the "Shafiq Report"). The Smith Report opined that there is "a specific

2022/09/08 16:13:51    33 /64
Case 4:20-cv-05146-YGR   Document 871-3   Filed 09/19/22   Page 34 of 65
Case 4:20-cv-05146-YGR   Document 862-1 *SEALED*   Filed 09/08/22   Page 19 of 50

1 signal that Chrome sends to the Google Sync Service to indicate to Google that the user is not Synced
2 and which is accompanied by the specific Google account to which the user has signed-in – for
3 example, an email address" and that "it would be straightforward for Google to keep a record of these
4 Incoming signals attached to specific account holders if Google has not done so already." Smith
5 Report ¶¶ 113-114. The Shafiq Report identified "several accurate methods … using Google's own
6 systems and databases that already exist" through which "Google can identify Chrome users who did
7 not enabled sync or who disabled sync." Shafiq Report ¶¶ 61-63.

8       72.     On December 22, 2021, Google filed its opposition to Plaintiffs' Motion for Class
9 Certification. *See* Dkt. 429. In opposing class certification, Google argued that "a class action is not
10 superior here because much of the class cannot be identified." *Id.* at 23. Google also argued that
11 because it could not identify Not Synced users, self-reporting was the only mechanism for class
12 identification, and this was "not reliable." *Id.* at 23-24. Together with its opposition to the motion for
13 class certification, Google submitted the Declaration of Tim Schumann, wherein Mr. Schumann
14 asserted that "[Prof.] Shafiq's proposed approaches [and reliance on Not Synced Signals] will fail to
15 accurately identify Chrome users who did not enable sync or who disabled sync." Dkt. 428-26 ¶¶ 2-
16 6.

17      73.     Plaintiffs contend that these arguments by Google are undermined by the existence of
18 a Not Synced signal, which (according to Plaintiffs) allows class members to be identified. Pls. Prop.
19 Findings ¶ 72. Indeed, at the hearing on class certification before U.S. District Judge Yvonne
20 Gonzalez-Rogers on August 26, 2022, with regards to identification of class members, Plaintiffs
21 argued that "we can identify them in Google's records . . . We have that ability here in spades." Dkt.
22 853 (8/26/22 Hrg. Trans.) at 30:19-32:1.

23      74.     The issues before this Court concerned the metes and bounds of discovery. How the
24 results of that discovery, here specifically certain sync-related signals, do or do not support
25 identification of class members is for the ultimate trier of fact. That Google continues to challenge
26 the reliability of certain signals in identifying class members is litigation, not prejudice.

27      75.     Plaintiffs also argue that Google's discovery conduct with regard to the Not Synced
28 Signals has prejudiced them by "hamper[ing] the ability of Plaintiffs and absent class members to

2022/09/08 16:13:51    34 /64
Case 4:20-cv-05146-YGR   Document 871-3   Filed 09/19/22   Page 35 of 65
Case 4:20-cv-05146-YGR   Document 862-1 *SEALED*   Filed 09/08/22   Page 20 of 50

1 identify the specific moments when they were using Chrome while not synced and to identify specific
2 communications that Chrome sent to Google while they were not synced." Motion at 19. Plaintiffs
3 further assert that "[h]ad Google preserved these not synced signals in logs with other relevant
4 information (as proposed by Plaintiffs), there would be a ready-made database of information to
5 identify class members and quantify actual unjust enrichment damages on a per user basis." *Id.*
6 Plaintiffs' prejudice argument is premised in large part on the fact that Google "'destroyed' the
7 relevant not synced signals" after it obtained a protective order based on incomplete or false
8 information. *Id.*

9       76.    As discussed above, the Court stands by the April 2021 Protective Order. *See* FOF
10 ¶ 30, *supra*. Even with the benefit of information developed in subsequent discovery, given the
11 enormous quantity of data collected by Google on a daily basis, the Court would not have required
12 Google to preserve every instance of a Not Synced Signal recorded in Google's logs. As such, under
13 no circumstance would there have existed a "ready-made database" identifying every class member
14 and every Not Synced Signal collected.

15       77.    Moreover, the issue of preserving data relevant to the Not Synced Signals on a going-
16 forward basis has been addressed by the Preservation Order that resulted from extensive proceedings
17 involving the Parties, the Special Master, and the Court. *See* Dkt. 766, 815. If the Court certifies the
18 class, the extensive data that has been preserved will be available to address issues including class
19 member identification and damages, just as it would have been if the facts regarding the Not Synced
20 Signals had been fully developed earlier in the litigation. To the extent Plaintiffs claim that Google's
21 discovery conduct with regard to the Not Synced Signals impaired their ability to move for class
22 certification or prepare expert reports, the Court notes that Plaintiffs do not appear to have requested
23 extensions of the deadlines for those items or sought to supplement their filings on the basis of later-
24 discovered information about the Not Synced Signals, nor at this juncture do Plaintiffs seek additional
25 discovery on Not Synced Signals.

26       78.    For all the foregoing reasons, even in areas where Google lacked candor, Plaintiffs
27 have not been prejudiced by Google's discovery conduct with respect to Not Synced Signals.

28

2022/09/08 16:13:51 35 /64
Case 4:20-cv-05146-YGR Document 871-3 Filed 09/19/22 Page 36 of 65
Case 4:20-cv-05146-YGR Document 862-1 *SEALED* Filed 09/08/22 Page 21 of 50

## III. NAMED PLAINTIFFS' DATA

### A. Factual Background

79.     Plaintiffs have raised concerns regarding the preservation and production of Named Plaintiffs' data from the first submission to this Court addressing Google's request for a protective order in February 2021 (Dkt. 102) through the present Motion.

80.     In light of the volume and complexity of the data sources involved, the Court and Parties have engaged in a process spanning over 16 months working through a number of specific issues relating to the identification, production and preservation of relevant data reflected in more than 40 discovery orders. Among these issues were two related to the present motion: the production of Named Plaintiffs' data and the production of data sufficient to identify class members. *See, e.g.*, Dkt. 559-3 (discovery disputes 1.3 and 1.15). Though different in scope, the two issues shared technical challenges in navigating Google's vast data sources.

81.     Plaintiffs filed the original Complaint on July 27, 2020. Dkt. 1. The original Complaint set forth examples of alleged unauthorized disclosures from Chrome to Google of Named Plaintiffs' information, the majority of which were sent from Chrome to Google.com. *See, e.g.*, Dkt. 3-3 (sealed version of original Complaint) ¶¶ 156-167, 170-172, 176-178, 182-192. The sample transmissions included specific cookie identifiers that Plaintiffs maintain Google associated with individual Named Plaintiffs. For example, paragraph 158 of the original Complaint included specific values for NID and ANID cookies Chrome sent to Google.com when a specific Named Plaintiff was exchanging communications at a ███████████ and non-Google website. *See also id.* ¶¶ 161, 170, 172, 177, 183, 188, 190. Similarly, other paragraphs of Plaintiffs' original and First Amended Complaints included identifiers that Chrome allegedly sent to Doubleclick and Google Analytics for Not Synced users on non-Google websites. *See, e.g., id.* ¶¶ 163, 171-72, 178, 191-92; FAC ¶¶ 164, 170, 178-79, 185.

82.     On August 31, 2020, Plaintiffs served Request for Production ("RFP") No. 5, which called for Google to provide all "data and information related to or associated with the Plaintiffs," their identifiers, "and all data collected from their Chrome browsers of any kind," including but not limited to browsing history information and cookies (hereafter "Named Plaintiff Information"). *See*

2022/09/08 16:13:51    36 /64
Case 4:20-cv-05146-YGR    Document 871-3    Filed 09/19/22    Page 37 of 65
Case 4:20-cv-05146-YGR    Document 862-1 *SEALED*    Filed 09/08/22    Page 22 of 50

1    Dkt. 166 at 3 (Issue 1.3); *see also* Joint Decl. ¶ 69. In response, Google stated it would produce

2    "relevant information associated with Plaintiffs' Google Account names and email addresses

3    identified in the complaint, so long as Plaintiffs can identify specific relevant information associated

4    with their Accounts and email addresses. Google will also conduct a reasonable search for Cookie

5    values linked to Plaintiffs' Google Accounts and is willing to meet and confer to determine what

6    related information Plaintiffs are seeking." Dkt. 166 at 3.

7        83.    In September 2020, Google preserved data related to the Google Accounts Plaintiffs

8    indicated were associated with the Named Plaintiffs in the Complaint. Ansorge Decl. ¶ 3. That data

9    included Google Account subscriber information (*e.g.*, Google Account name, Google Account ID,

10    date of account creation, email address, alternative email address, IP addresses and User Agents

11    related to the Account holder's sign-ins) and My Activity information (*e.g.*, browsing history and

12    data related to activity on websites employing Google Ad Manager or Google Analytics). *Id.*

13        84.    The type of data Google preserved involved Named Plaintiffs' authenticated data. In

14    lay person terms, authenticated data is data that can be linked to a specific user, that is, to a person.

15    Examples of authenticated data are set forth in the preceding paragraph. Unauthenticated data is data

16    that is linked to other identifiers, such as a device (*e.g.*, a desktop or a mobile device), but not to a

17    specific user. The issue of whether these identifiers can be linked to a specific user, and hence qualify

18    as authenticated data, is, and has been throughout this case, hotly disputed by the Parties.

19        85.    When it preserved the data identified in FOF ¶ 83, *supra*, in September 2020, Google

20    did not preserve data related to unauthenticated identifiers. Dkt. 840 (8/11/22 Hrg. Tr.) at 124. From

21    the time it responded to Plaintiffs' RFP No. 5, Google objected to preserving data related to

22    unauthenticated identifiers. *See* Dkt. 164 (Issue 1.3).

23        86.    On December 31, 2020, in meeting and conferring regarding Google's response to

24    RFP No. 5, Plaintiffs provided Google with identifiers for the Named Plaintiffs, including their

25    Zwieback, Biscotti and GAIA identifiers. Joint Decl. ¶ 71; Pls. Prop. Finding ¶ 105.

26        87.    In February 2021, Google engineered pipelines to preserve event-level data associated

27    with the Named Plaintiffs' GAIA IDs from      logs and preserved data from      corpora.

28    Ansorge Decl. ¶ 6; Dkt. 840 (8/11/22 Hrg. Tr.) at 119. That engineering work was completed in

2022/09/08 16:13:51    37  /64
Case 4:20-cv-05146-YGR    Document 871-3    Filed 09/19/22    Page 38 of 65
Case 4:20-cv-05146-YGR    Document 862-1 *SEALED*    Filed 09/08/22    Page 23 of 50

1  March 2021. *Id.* In July and August, 2021, Google engineers developed pipelines in ▮▮▮▮ to

2  preserve unauthenticated data associated with Biscotti IDs extracted from the cookie values Plaintiffs

3  provided. Ansorge Decl. ¶ 32. Google collected the data it preserved as a result of the pipelines

4  developed in 2021 in a body of what it refers to as the "Litigation Hold Data." *Id.* ¶¶ 6, 32.

5      88.    Meanwhile, between October 2020 and January 2021, the Parties negotiated to

6  develop an ESI protocol. *See id.* ¶ 5. Plaintiffs requested that Google preserve log data from "system,

7  server, and network logs." *Id.*; *see also* Dkt. 109-4 ¶¶ 3–6. Google objected on burden grounds. Dkt.

8  109-4 ¶¶ 3–6. On January 21, 2021, Plaintiffs sent Google a letter referring to Google's position as

9  a "spoliation issue." *Id.* ¶ 7; Dkt. 109-5 at 1; Ansorge Decl. ¶ 5.

10     89.    On February 17, 2021, in response to Plaintiffs' request for preservation and claims of

11 spoliation, Google filed an emergency motion for a protective order. Dkt. 109. The hearing,

12 subsequent proceedings and issuance of the protective order are addressed in FOF ¶¶ 18-30, *supra*,

13 and incorporated herein by reference.

14     90.    The Court held a hearing on Google's motion for protective order and other discovery

15 disputes between the Parties, including their dispute over RFP No. 5, on April 29, 2021. *See* Dkt.

16 164, 166, 200-4.

17     91.    On April 30, 2021, in addition to issuing the protective order discussed in FOF ¶ 29,

18 *supra*, the Court issued an order on the Parties' other discovery disputes, which stated that "Google

19 must produce the information it has associated with the named Plaintiffs, including, as detailed at the

20 hearing, profile data, data from non-synced sources, and any device data associated with any

21 Plaintiff." Dkt. 173-1 (the "April 30, 2021 Order") at 1 (Issue 1.3). The April 30, 2021 Order also

22 "recogniz[ed] that additional disputes regarding the available data may arise." *Id.* at 2 (Issue 2.2).

23     92.    Pursuant to the April 30, 2021 Order, over many months Google produced data

24 associated with authenticated and unauthenticated identifiers provided by Named Plaintiffs. *See*

25 Ansorge Decl. ¶¶ 16-40. Plaintiffs claim that no Zwieback data and very little GAIA-keyed and

26 Biscotti-keyed data was produced (*see* Dkt. 840 (8/11/22 Hrg. Tr.) at 81-84), whereas Google claims

27 it produced a significant volume of such data (*see* Ansorge Decl. ¶¶ 16-40; Dkt. 795-3 ("Google Prop.

28 Findings") ¶ 104; Dkt. 840 (8/11/22 Hrg. Tr.) at 127).

2022/09/08 16:13:51    38 /64
Case 4:20-cv-05146-YGR    Document 871-3    Filed 09/19/22    Page 39 of 65
Case 4:20-cv-05146-YGR    Document 862-1 *SEALED*    Filed 09/08/22    Page 24 of 50

1    93.    On June 23, 2021, Plaintiffs filed a motion to compel pursuant to the April 30, 2021

2  Order, which Google opposed. Dkt. 226, 233. The Parties disputed, *inter alia*, Google's obligation

3  and ability to produce unauthenticated data and whether certain data is in fact unauthenticated. With

4  regards to Zwieback-keyed data, Plaintiffs argued that Google had an obligation to preserve such data

5  since the filing of the Complaint. Plaintiffs also argued, as with GAIA and Biscotti, that Google was

6  further ordered to produce device-related data by the Court.

7    94.    In July 2021 the Court appointed a Special Master with, among other credentials, the

8  requisite technical expertise to manage the identification, production and preservation issues unique

9  to this case. Dkt. 246. The Court referred the disputes in Plaintiffs' motion to compel to the Special

10  Master on July 13, 2021 (Dkt. 247), and production of Named Plaintiffs' GAIA-keyed and Biscotti-

11  keyed data as well as Zwieback-keyed data was, from that point forward, addressed by the protocols

12  established by the Special Master. The Court ultimately referred both issues regarding Named

13  Plaintiffs and putative class member data to the Special Master to be addressed in an overall approach

14  to identification, production and preservation. Dkt. 247, 516-1.

15    95.    The Special Master engaged in a process parallel to and coordinated with proceedings

16  before this Court. That process culminated in two significant Reports and Recommendations, which

17  this Court eventually adopted with modifications in accordance with Rule 53. The Court's

18  November 12, 2021 Order set forth a detailed mechanism for the identification of relevant data

19  sources and production of data from those sources. Dkt. 377. The Court's July 15, 2022 Order set

20  forth a detailed preservation plan for the retention of relevant data for the remainder of the litigation.

21  Dkt. 766.

22    96.    The first step in the process set forth in the Court's November 12, 2021 Order was for

23  Google to provide the Special Master with "a full list of all data sources which have been searched

24  during the overall discovery process." Dkt. 377-1 at PDF p. 3 ¶ 1. Subsequent steps in the process

25  required Google to provide additional information about these and other data sources, from which

26  Plaintiffs then selected data sources to be searched using search terms proposed by Plaintiffs. *Id.* at

27  PDF pp. 3-5.

28    97.    Google did not include the data sources from which the Litigation Hold Data had been

2022/09/08 16:13:51    39 /64
Case 4:20-cv-05146-YGR    Document 871-3    Filed 09/19/22    Page 40 of 65
Case 4:20-cv-05146-YGR    Document 862-1 *SEALED*    Filed 09/08/22    Page 25 of 50

1   collected in the list of data sources it provided at step 1 of the Special Master process set forth in the

2   November 12, 2021 Order because Google took the position that it had not "searched" those data

3   sources. *See* Dkt. 840 (8/11/22 Hrg. Tr.) at 119-120. Google had explained to Plaintiffs and the

4   Special Master in September 2021 that it there was a set of Plaintiff data that Google had preserved

5   but not produced. *Id.* at 121-122; Joint Decl. ¶ 107; Ansorge ¶ 45 and Ex. 7.

6       98.     On several occasions between September 30, 2021 and February 23, 2022, Plaintiffs

7   asked the Special Master to order Google to produce the Litigation Hold Data, *i.e.*, data that Google

8   had identified as being preserved for Plaintiffs but not produced. Ansorge Decl. ¶¶ 46, 47, 55, 59.

9   The Special Master declined to order the requested production. *Id.; see also* Ex. 12 to Ansorge Decl.

10      99.     In early January 2022, as part of the process put in place by the Court's November 12,

11  2021 Order, Plaintiffs selected a subset of identified logs to facilitate first-round searches for Named

12  Plaintiffs' information. An objective of the November 12, 2022 Order, well-known to the Parties,

13  was to use first-round searches to inform subsequent searches of Google's vast data sources.

14  Unbeknownst to Plaintiffs or the Special Master, in implementing the first-round searches Google

15  limited the search to a seven-day period immediately prior to its search – a point in time in which

16  Named Plaintiffs were no longer using Chrome. As a consequence of Google's unilateral seven-day

17  restriction, the first-round searches resulted in almost entirely null results, the rare exceptions being

18  search results related to a test account created by Plaintiffs' expert, Prof. Shafiq. Pls. Prop. Findings

19  ¶ 136.

20      100.    In a joint chart of discovery issues filed with the Court on February 25, 2022, the

21  Parties discussed the issue of the production of the Litigation Hold Data. Dkt. 510 at 3-6 (Dispute

22  1.3). At a February 28, 2022 discovery hearing, the Court ordered Plaintiffs to raise that issue with

23  the Special Master, who had been addressing it in the preceding months. Dkt. 525 (2/28/22 Hrg. Tr.)

24  at 80:2-3.

25      101.    During a proceeding before the Special Master on or about March 1, 2022, Plaintiffs

26  claim that they learned for the first time that the "preserved data" had already been searched and

27  segregated. Joint Decl. ¶ 119. Subsequently, the Special Master ordered Google to produce all

28  Plaintiff information it had previously searched and had in its possession. *Id.; see also* Ansorge Decl.

24

1    ¶¶ 63-66.

2      102.    Following the order of the Special Master, Google claimed that a subset of the

3    Litigation Hold Data required Google to provide notice to publishers prior to production. Ansorge

4    Decl. ¶ 76. On or about March 8, 2022, the Special Master ordered Google to prioritize production

5    of the Litigation Hold Data that would not require publisher notice. Ansorge Decl. Ex. 16 at 83:2–6;

6    Joint Decl. ¶ 121. Google completed production of all such data on or about March 9, 2022. Ansorge

7    Decl. ¶ 71; Joint Decl. ¶ 122. According to Google, the March production constituted a significant

8    portion of the Litigation Hold Data. *See* Ansorge Decl. ¶ 78 & Ex. 28.

9      103.    Plaintiffs claim that after March 9, 2022, they learned for the first time that there were

10   approximately ▆ publishers from which Google claimed it must provide notice before turning over

11   the remaining Litigation Hold Data concerning Plaintiffs. Joint Decl. ¶ 123. Plaintiffs also learned

12   that the required notice was simply a form or email Google had to send to the publisher; permission

13   from the publisher was not required. *See id.*

14     104.    The Parties continued to argue before the Special Master about completion of

15   production of the Litigation Hold Data, among numerous other issues, for the next six weeks.

16     105.    On May 14, 2022, the Special Master sent an email to the parties, stating:

17       it has come to my attention that Google is currently withholding the production of search
18       results for data sets containing third-party publisher confidential data requiring third-
         party notification. It has been my understanding that the notification process had begun
19       some time ago and should have been completed and productions made.

20       I now also understand that Google unilaterally decided to make third-party notifications
         in the *Calhoun* matter, combined with those made in the *Brown* matter. This is
21       unacceptable.

22       …

23       Should the aforementioned productions not be made by May 20, 2022, sanctions will be
         imposed in the amount of $5,000 per calendar day for every day past May 20, 2022, until
24       Google has provided to Plaintiffs, in full, the production of the results of all completed
         searches requiring third-party publisher notification.
25
     Joint Decl. Ex. 1 (emphasis supplied by the Court).
26
       106.    On May 20, 2022, Google produced only a subset of the "publisher notice" data. *See*
27
     Joint Decl. ¶ 126.
28

                                                    25

2022/09/08 16:13:51   41  /64
Case 4:20-cv-05146-YGR   Document 871-3   Filed 09/19/22   Page 42 of 65
Case 4:20-cv-05146-YGR   Document 862-1 *SEALED*   Filed 09/08/22   Page 27 of 50

1    107.   On May 25, 2022, the Special Master directed that Google's failure to produce

2 remaining searched and preserved Named Plaintiffs data be brought to the Court. *See* Dkt. 677-2 at

3 1.

4    108.   On May 27, 2022, Plaintiffs asked the Court to allow them to brief the issue and order

5 Google to produce the remaining Litigation Hold Data. Dkt. 678 at 1.

6    109.   On June 3, 2022, the Court directed the Special Master to file a status report and

7 recommendation on this issue. Dkt. 684. On June 13, 2022, the Court issued an order stating that

8 "[u]pon further review of the long-standing record before it regarding the production of Named

9 Plaintiffs' data, having made an inquiry of the Special Master, and in the interest of judicial economy"

10 it would rule on the issue directly without the need for further briefing. Dkt. 700. The Court ordered

11 as follows:

12         • For any Named Plaintiff data for which Google has not yet provided notice to third

13           party publishers, Google is to provide that notice no later than June 15, 2021;

14         • All Named Plaintiff data currently being withheld by Google, regardless of third-

15           party notification status, must be produced no later than June 30, 2022.

16 Dkt. 700.

17    110.   The following day, on June 14, 2022, Google filed an administrative motion for

18 clarification of the Court's June 3, 2022 discovery order. Dkt. 704-4. Google sought clarification of

19 two issues: (1) "clarification that 'any Named Plaintiff data for which Google has not yet provided

20 notice to third party publishers' … refers to: litigation hold ▮▮▮▮ log data that was processed in

21 early March, 2022, but not produced given the publisher notice issue"; and (2) "clarification that '[a]ll

22 Named Plaintiff data currently being withheld by Google' … refers to: the litigation hold ▮▮▮▮▮

23 data Google processed in early March 2022." *Id.* at 4.

24    111.   On June 17, 2022, after Plaintiffs filed a response to Google's motion for clarification

25 (Dkt. 717), Google filed a "supplement" to its motion for clarification in which it stated:

26         As to the first request for clarification, Google is pleased to report that

         Google has successfully processed all litigation hold ▮▮▮▮ logs data from early

27         March through the date of the Discovery Order. Google will be able to notify all

         relevant third-party publishers today or tomorrow and produce all litigation hold

28         ▮▮▮▮ logs data through the date of the Discovery Order on June 30, 2022.

1

2      As to the second request for clarification, Google respectfully seeks
       confirmation that by producing all litigation hold ▮▮▮▮ logs data through the
3      date of the Discovery Order on June 30, 2022, Google will be in compliance with
       the June 13, 2022 Discovery Order.

4

Dkt. 718-4. On June 17, 2022, Google also requested leave to file a reply to Plaintiffs' opposition

5

to its motion for clarification. Dkt. 720.

6

       112.    On June 17, 2022, the Court issued an interim order on Google's motion for

7

clarification, stating that while the Court considered the motion for clarification, "Google is to

8

proceed with completion of its production of 'all of the Named Plaintiffs' data that Google has

9

preserved' pursuant to the 'Litigation Hold' as represented by Google in Dkt. 720. Google is not to

10

delay its production pending further determination of the entire scope of that production by the

11

Court." Dkt. 722.

12

       113.    On June 30, 2022, Google produced all Litigation Hold Data that had not yet been

13

produced. Ansorge Decl. ¶ 85.

14

       114.    On July 1, 2022, the Court issued its final order on the Litigation Hold Data, also

15

referred to by the Court and Parties as RFP No. 5, which stated as follows:

16

17      For a substantial period of this litigation, pursuant to Court orders, Google
        has collected and preserved data relating to the Named Plaintiffs using certain
18      identifiers. Some of that data was produced as it was collected. A balance of the
        data was held pending notification to third party publishers. The Court previously
19      ordered Google to complete that notification process and to produce the balance of
        the Named Plaintiffs data that it had collected and preserved over the course of the
20      litigation no later than June 30, 2022. Dkt. Nos. 700, 722. At the June 30 hearing,
        Google represented to the Court and to Plaintiffs that that production would be
21      completed on that date, which has now passed. Accordingly, provided Google
        complied with its representation to the Court, the issue of the balance of the
22      production of the data that had been collected is now closed. The Parties may well
        dispute whether Google collected all of the data required by orders of this Court,
23      however that issue is beyond the scope of the present dispute and this Order.

24

25   Dkt. 746.

26        B.    **Findings Regarding Alleged Discovery Misconduct**

27        115.    The Court finds that Google engaged in discovery misconduct with respect to the first-

28   round searches conducted in January 2022. *See* FOF ¶ 99, *supra*. At the time of these first-round

27

2022/09/08 16:13:51    43 /64
Case 4:20-cv-05146-YGR    Document 871-3    Filed 09/19/22    Page 44 of 65
Case 4:20-cv-05146-YGR    Document 862-1 *SEALED*    Filed 09/08/22    Page 29 of 50

1    searches, Google had set up the "pipelines" (which as discussed above were created in February 2021)
2    from which Google had already searched, segregated, and preserved Named Plaintiffs' GAIA-Keyed
3    Information. Thus, without disclosing that Google already constructed and used processes to search
4    for and collect Named Plaintiffs' data for this case, and without producing that data, Plaintiffs were
5    forced to engage in a prolonged process overseen by the Special Master to guess how best to search
6    for the Named Plaintiffs' data. The process that Google ultimately agreed to engage in yielded null
7    sets for many of those searches. Had Google produced the Named Plaintiff Information it had
8    collected and/or revealed the processes used to do so, this round of searches could have been
9    conducted more efficiently. As addressed more fully below, the Court does not agree, as Plaintiffs
10   suggest, that a more timely and complete production of this slice of data would have obviated or even
11   limited the need for the Special Master. The production and preservation issues in this case are far
12   too vast and complex to warrant that conclusion. The Court finds that this misconduct is appropriately
13   addressed with a monetary sanction as set forth in the Conclusions of Law below.

14       116.    The Court finds that Google engaged in discovery misconduct with respect to
15   production of the Litigation Hold Data. *See* FOF ¶¶ 101-114, *supra*. Google is correct that it
16   disclosed in September 2021 that it had data associated with Plaintiffs that it was preserving but had
17   not produced and that the Special Master on several occasions denied Plaintiffs' requests for
18   production of the Litigation Hold Data. However, ultimately on or about March 1, 2022, the Special
19   Master ordered production of the Litigation Hold Data. Although Google promptly produced the
20   "non-publisher" Litigation Hold Data after being ordered to do so, it inexplicitly delayed for almost
21   three months in producing the Litigation Hold Data for which pro forma publisher notice was
22   required. The Court finds that Google has failed to show justification for this long delay or the
23   extensive proceedings on this issue before the Court and Special Master from March to June 2022.
24   The Court finds that this misconduct is appropriately addressed with a monetary sanction as set forth
25   in the Conclusions of Law below.

26       117.    Except as noted in the preceding FOF ¶¶ 115-116 with regard to the first round
27   searches that returned null sets and Google's late production of certain of the Litigation Hold Data,
28   the Court finds that Google did not engage in discovery misconduct concerning Named Plaintiffs'

2022/09/08 16:13:51 44 /64
Case 4:20-cv-05146-YGR Document 871-3 Filed 09/19/22 Page 45 of 65
Case 4:20-cv-05146-YGR Document 862-1 *SEALED* Filed 09/08/22 Page 30 of 50

1 | data, as evidenced by the significant volume of Named Plaintiffs' data produced and the demands of
2 | proportionality of this case. As the Court explains in the cover order of this date, management of the
3 | potentially relevant data in this case presents unique challenges in light of its sheer volume and
4 | technical complexity. In many respects, Plaintiffs' arguments regarding alleged deficiencies in
5 | Google's production of Named Plaintiffs' data ignore the realities of the technical complexities in
6 | producing relevant data. As one example where Plaintiffs oversimplify the issues, Plaintiffs suggest
7 | that if only Google had produced the Litigation Hold Data at the outset, appointment of a Special
8 | Master would not have been necessary. *See* Reply at 9-10; Dkt. 840 (8/11/22 Hrg. Tr.) at 103-104.
9 | Yet the preservation and production issues in this case are considerably more complex, as Plaintiffs
10 | had to concede at the hearing. Dkt. 840 (8/11/22 Hrg. Tr.) at 103-104 (statement by Plaintiffs' counsel
11 | that to have enough information about fields so that Special Master process would not have been
12 | necessary, Plaintiffs needed Named Plaintiffs' data "[i]n conjunction with a couple other things"
13 | including GAIA       and "the fields in the       logs, the identification of the sync state
14 | signals"). These "couple other things" were the subject of extensive proceedings before the Special
15 | Master. Although time and effort were required to produce relevant data and some relevant data has
16 | not been retained, a vast quantity of relevant data has been produced and preserved as the result of a
17 | careful and at times arduous process implemented by the Court.

18 | 118. The Court finds that Plaintiffs' complaint of spoliation of data, arising out of Google
19 | not suspending its data log retention policies as of the filing of the Complaint, without merit for the
20 | same reasons. Based upon the facts of this case, Google instituted a reasonable, good faith attempt
21 | to preserve relevant data. The scope of relevant data has been disputed throughout the case, and the
22 | complexities of the dispute are reflected in the Court's evolving orders on this subject as well. *See,*
23 | *e.g.,* Dkt. 173-1 (Issue 1.3); Dkt. 329 (Issue 1.15).

24 | **C.    Findings Regarding Prejudice**

25 | 119. Plaintiffs have suffered some prejudice as a result of Google's discovery misconduct
26 | with regard to the first round searches that returned null sets and Google's late production of certain
27 | of the Litigation Hold Data. As discussed in the Conclusions of Law below, this prejudice is
28 | adequately addressed by requiring Google to pay Plaintiffs a portion of the Special Master fees for

1    the period during which the Special Master held proceedings on those issues.

2        120.    Plaintiffs have not demonstrated that Google's other discovery conduct with respect
3    to Named Plaintiffs data has caused them prejudice. Plaintiffs argue the "nature and volume" of
4    information collected is important in analyzing claims for invasion of privacy and intrusion upon
5    seclusion claims and that "[w]ithout this data, Plaintiffs are prejudiced by not being able to present a
6    complete picture of Chrome's unauthorized activity with respect to Named Plaintiffs." Motion at 20.
7    However, as explained above in connection with Plaintiffs' argument about Not Synced Signals (*see*
8    FOF ¶ 30, *supra*), given the enormous quantity of data collected by Google on a daily basis, the Court
9    would not have required Google to preserve every bit of data regarding Named Plaintiffs or the class
10   as a whole. As such, under no circumstance would there have existed a "complete picture" of every
11   instance where data was collected regarding Named Plaintiffs.

12       121.    Moreover, as with the Not Sync Signal data, the issue of preserving Named Plaintiffs
13   data on a going-forward basis has been addressed generally by the overall approach in the
14   Preservation Order that resulted from extensive proceedings involving the Parties, the Special Master,
15   and the Court. *See* Dkt. 766, 815. If the Court certifies the class, the extensive data that has been
16   preserved will be available as needed to address issues such as the nature and volume of information
17   collected. Plaintiffs have not shown that the lack of complete data about which they complain is a
18   result of discovery misconduct by Google, as opposed to the nature of the data sources at issue here.

19

20

21

22

23

24

25

26

27

28

2022/09/08 16:13:51    46 /64
Case 4:20-cv-05146-YGR    Document 871-3    Filed 09/19/22    Page 47 of 65
Case 4:20-cv-05146-YGR    Document 862-1 *SEALED*    Filed 09/08/22    Page 32 of 50

1    **IV.    "████████████ DOCUMENTS**

2    A.    **Factual Background**

3    122.    Plaintiffs argue that Google withheld from production key documents relating directly

4    to the issue of consent until after the close of discovery and after briefing on Google's motion for

5    summary judgment ("MSJ") on the issue of consent was closed.

6    123.    Plaintiffs state that they served multiple Requests for Production of Documents

7    ("RFP") related to studies, evaluations, documentation and analysis of user expectations of privacy

8    and understanding of user consent interfaces. This includes the RFPs set forth below:

9    a.    "Studies or evaluations of privacy expectations of Chrome users, whether authored

10    by You or by third parties" (RFP No. 12);

11    b.    "Documents related to Chrome and data privacy" (RFP No. 13);

12    c.    "All documents relating to any process through which Google claims to have

13    obtained express or implied consent from Users to send personal information to

14    Google (including cookies, X-client data headers, IP addresses, User- Agent

15    information, and other identifiers) associated with Chrome browsing history"

16    (RFP No. 50);

17    d.    "All Documents relating to the process, user interfaces or flow through which

18    Google claims to obtain user consent for Web & App Activity ("WAA"),

19    supplemental Web & App Activity ("sWAA"), ████████ … or any other program

20    or process through which Google claimed it has obtained User consent to collect

21    User Information on non-Google properties" (RFP No. 51);

22    e.    "All Documents relating to ████ … or ████ consent flow" (RFP No. 53);

23    f.    "All Documents relating to 'account creation flow' from 2012 to present, …

24    including studies … or other mentions of consumer sentiment surrounding the

25    process or considered alternatives" (RFP No. 55); and,

26    g.    "All studies, surveys, focus groups, and reports, research, commissions projects,

27    task forces, tasks assignments or discussion relating to Users' perception of

28    Google's privacy policies and practices, including whether or not Google respects

31

1    Users' privacy" (RFP No. 76).

2    *See* Joint Decl. ¶ 46.

3    124.    On November 30, 2021, Google filed a Motion for Summary Judgment on its First

4    Affirmative Defense of Consent. *See* Dkt. 395 ("MSJ"). In the MSJ, Google argued that there was

5    no dispute of material fact that would preclude a finding that Plaintiffs had consented to Google's

6    conduct at issue. *Id.* at 2. According to Plaintiffs, Google's consent argument was predominantly

7    based on a Google Account Holder Agreement with Google; "agreement" to the Google Privacy

8    Policy; and a "consent bump" process related to WAA. Pls. Prop. Findings ¶ 47.

9    125.    On December 20, 2021, Plaintiffs took the deposition of Google employee Sam

10    Heft-Luthy, a member of Google's Privacy and Data Protection Office (PDPO). *See* Joint Decl. Ex.

11    10 (Heft-Luthy Depo. Tr.).

12    126.    In deposition Mr. Heft-Luthy testified about a Google project called "███████████

13    an internal Google project related to "privacy, transparency and control surfaces." *Id.* at 53:4-21.

14    127.    In mid-2020, Google's Privacy & Data Protection Office ("PDPO") initiated the

15    ████████" project to help develop ████████████████████████████████████████████

16    ████████████████████████████████████████████████████████████████████████████

17    ████████████████████████████ Olson Decl. Ex. 20.

18    128.    ████████████████ involved "research meta-analysis" and "a series of stakeholder

19    interviews . . . with people working on privacy across Google." Olson Decl. Ex. 8.

20    129.    As part of the ████████████ project, Mr. Heft-Luthy participated in interviews with

21    dozens of Google stakeholders to determine their beliefs about Google's consent process.

22    130.    Prior to filing its MSJ on November 30, 2021 and prior to the Heft-Luthy deposition

23    in December, Google produced approximately ███ documents referencing ████████████ *See* Olson

24    Decl. ¶ 16.

25    131.    Among the documents Google produced were a "████████████ Stakeholder Interview

26    Summary," "Notes from interview with Rahul," and a spreadsheet with a "Detailed Plan" for

27    ████████████ that listed the "Stakeholder Interviews." *Id.* ¶¶ 6–15. These documents included

28    detailed notes from one interview, summaries of nearly a dozen interviews, and a list of many of the

32

2022/09/08 16:13:51    48  /64
Case 4:20-cv-05146-YGR    Document 871-3    Filed 09/19/22    Page 49 of 65
Case 4:20-cv-05146-YGR   Document 862-1 *SEALED*   Filed 09/08/22   Page 34 of 50

1    interviewees. *Id.*

2    132.    At the time of Mr. Heft-Luthy's deposition, Google had not produced all responsive

3    documents related to the ███████ project.  Documents not produced before the deposition

4    included interview notes with certain Google stakeholders and the final product of the ███████

5    project produced by the Google Privacy and Data Protection Office, which were not produced until

6    April 2022. *See* Jt. Decl. ¶¶ 61-64.

7    133.    Plaintiffs state that following Mr. Heft-Luthy's deposition, they requested that Google

8    produce all documents associated with ███████ including transcripts or other notes from

9    interviews of Google stakeholders associated with the project. *Id.* ¶ 51.

10    134.    On January 10, 2022, Plaintiffs filed their Opposition to Google's MSJ on Consent.

11    Dkt. 462. By this time Google had produced an additional ██ documents referencing ███████

12    Olson Decl. ¶ 23.  However, Google's production of responsive documents was not yet complete.

13    *See* FOF ¶ 132, *supra.*

14    135.    On January 18, 2022, Plaintiffs sent a letter to Google requesting ███████

15    documents referenced by Mr. Heft-Luthy at his deposition, including interview notes and

16    presentations. *See* Ex. 37 to Olson Decl. (Plaintiffs' 1/18/22 Letter).

17    136.    On January 28, 2022, Google filed its Reply in support of its MSJ on consent. *See*

18    Dkt. 475. In the Reply, Google argued that Plaintiffs were "misquoting and misconstruing internal

19    Google emails and draft documents" and that "[i]nternal discussions by a handful of more than

20    150,000 people employed by Google" cannot defeat Google's consent argument. *Id.* at 1-2, 12.

21    Google further argued that one of the documents in question merely "reflected the author's

22    scratchpad' notes" and have nothing to do with Google's consent argument. *Id.* at 14, n.20.

23    137.    On February 4, 2022, during a meet and confer, Google said that it would produce

24    responsive documents to Plaintiffs' ███████ request. Joint Decl. ¶ 55. Google did not produce

25    this information by the close of fact discovery, which was March 4, 2022. *Id.* ¶¶ 55-61.

26    138.    Between January 11, 2022 and the close of fact discovery on March 4, 2022, Google

27    produced another ██ documents regarding ███████. Olson Decl. ¶ 25 and Exs. 19-36.

28    However, the production was still not complete.

2022/09/08 16:13:51    49 /64
Case 4:20-cv-05146-YGR    Document 871-3    Filed 09/19/22    Page 50 of 65
Case 4:20-cv-05146-YGR    Document 862-1 *SEALED*    Filed 09/08/22    Page 35 of 50

1       139.    Plaintiffs renewed their request on March 21, 2022, March 23, 2022, March 25, 2022,

2    March 31, 2022, and April 4, 2022. *See* Joint Decl. ¶¶ 56-60.

3       140.    Finally, on April 6, 2022, more than two months after Plaintiffs' January 18, 2022

4    letter requesting specific documents referred to by Mr. Heft-Luthy during his deposition, Google

5    completed its ███████ production. Among the documents produced on April 6, 2022, were

6    documents describing ███████ as a "cross-function" project of Google's Privacy & Data

7    Protection Office (PDPO) ███████████████████████████████████████████████

8    ███████████████████████" that was began by a company vice-president and produced a

9    "final" presentation that had four credited authors, 11 credited contributors, and 11 credited reviewers

10   –including senior executives.  Joint Decl. ¶ 61.  At the hearing on the sanctions Motion, Plaintiffs

11   primarily focused on two of the ███████ documents included in this production:  (1) the "final"

12   paper from the PDPO (Google's primary office for user privacy experience issues) entitled ███████

13   ███████ Perspective: Toward a ███████ Google experience," which bore bates number

14   beginning GOOG-CABR-05885987 (Ex. 39 to Olson Decl. — the ███████ final paper"); and

15   (2) a document summarizing interviews with Google stakeholders, including high-ranking

16   executives, which bore bates number beginning GOOG-CABR-05885871 (Joint Decl. Ex. 11 — the

17   "███████ interview notes").

18       141.    The ███████ final paper included the following statements:

19          a.    ███████ would "require[] an approach that makes respecting user privacy

20              the default – or native – state of our relationship with users."

21          b.    "In this new ███████ approach, Google will ask for personal data only for

22              specific, limited purposes that provide clear benefits to users."

23          c.    "At Google, we believe privacy is a universal right[.]"

24          d.    "Our research analysis and stakeholder interviews have shown that Google's

25              consent approach, enabling the broad collection and use of personal data, is a root

26              cause for our systemic privacy challenges."

27          e.    "Our approach [to consent] has become out-of-step with user expectations and

28              regulations. It makes it difficult for people to understand how we use their data in

34

2022/09/08 16:13:51    50 /64
Case 4:20-cv-05146-YGR    Document 871-3    Filed 09/19/22    Page 51 of 65
Case 4:20-cv-05146-YGR    Document 862-1 *SEALED*    Filed 09/08/22    Page 36 of 50

1    all circumstances, to make the right choices for them, and for us to take clear

2    positions and distinguish ourselves among competitors."

3    f.    "People often face significantly complex consents when they are creating a Google

4    Account, or trying to accomplish a particular task, and don't have the time or

5    capacity to absorb all the details, let alone understand the precise impact their

6    choices might have on the particular services they use."

7    Joint Decl. ¶ 62; *see also* Ex. 39 to Olson Decl.

8    142.    The ▓▓▓▓▓ interview notes summarized interviews with Google stakeholders,

9    including high-ranking executives. *See* Joint Decl. Ex. 11; Joint Decl. ¶ 64. Among other statements,

10    these Google personnel stated the following in their interviews:

11    a.    "If people were the deciders, they wouldn't take the deal, but they are not the

12    deciders."

13    b.    "[O]ur ads system as design[ed] doesn't really give the user choice."

14    c.    "Sundar proudly likes 2 AC [account consent] settings. Users don't."

15    d.    "We have gaps in how our system works and what we promise to people."

16    e.    "At Google, we still seem to believe in that fantasy that users agreed to this."

17    f.    "Consent is no longer consent if you think of ads as a product."

18    g.    "One example are all the controls that we have that have horrible names that don't

19    mean anything to anyone, not even within the company."

20    h.    "Most of the systems we built up in an assumption that people don't want to tell

21    us things."

22    i.    "There is no coherent strategy" on "privacy at Google."

23    j.    "Our data infrastructure is not designed for privacy."

24    k.    "[T]he fact that we can't explain what we have on you to users is probably our

25    biggest challenge" on privacy. "I don't have the faintest idea what Google has on

26    me."

27    l.    "When I look at UDC, what is sWAA v. WAA vs. YT? They don't make sense

28    because of the naming and there are hidden functions that people don't know. Like

35

2022/09/08 16:13:51    51  /64
Case 4:20-cv-05146-YGR    Document 871-3    Filed 09/19/22    Page 52 of 65
Case 4:20-cv-05146-YGR    Document 862-1 *SEALED*    Filed 09/08/22    Page 37 of 50

1    Chrome sync and others that I don't even understand and can't describe."

2    m. "Everyone is concerned about their data being collected. They don't know about

3    it and they don't know how to control it. Big companies are collecting all these

4    things. I don't know about it, I can't do anything about it. They are doing it for

5    their own benefit or it is a concern because it could be leaked and I can't control

6    it. The challenge we face is how do we exist in this world where everyone is

7    concerned and get to the point where we can function well without irrep[arable]

8    harm to our brand and the company."

9    n. "I don't like the idea of [G]oogle having data about users that they can't say no

10    to."

11    o. "Complexity of the technology … is beyond the grasp of nearly everyone …We

12    are transferring the onus of all that complexity from companies to users. We are

13    asking users to navigate it. We have ideas how we can make UI and interfaces

14    better. This makes things less transparent and is in conflict with our business

15    model, our ads model, and our economic motives are unclear. There is no clear

16    solution to this."

17    p. "User have a right to know. The reasons we provide are so high level and abstract

18    that they don't make sense to people."

19    q. "We should find ways to do measurement in a way that we don't need consent I

20    don't think people will consent to measurement because they feel that they are

21    giving something up without anything in return. The value they are getting is so

22    intellectually distant that it is really hard for them to understand. A lot of the value

23    is for the advertiser not for the user."

24    r. "Privacy is not the priority for most people in ads."

25    s. "There are core stakeholders at the company who think that [privacy] is impossible

26    or too hard to do and therefore not worth it."

27    t. "We know privacy is a core user need."

28    u. "Users don't know what is happening under the hood."

36

1         v.  "Won't it creep people out to know how much we are paying attention?"

2         w.  "Signup flows are not a good moment to explain or present these kinds of things

3            to users."

4         x.  "PDPO is someone you want to hide things from because if they know they will

5            make things worse."

6         y.  "Do you think it is possible for users to reckon with and make a choice about data

7            collection for the aggregate? No, because we don't frame consent this way."

8         z.  "I see a lot of evidence of us doing what [L]arry and [S]ergey wanted us to do

9            which is pushing the boundaries and then dealing with the consequence. I don't

10           know if you can change the company because this is the dynamic."

11       aa. "We need to get to a degree of simplicity and honest[y] with the public and our

12           users."

13       bb. "It is sad that PDPO is seen as an impediment rather than a warmly embraced

14           partner to Google's ethos. If we don't do this and get it right, then we are going to

15           be run over. People are doing short-term thinking and not long term fixes."

16       cc. "We don't understand our users. Every time we run these studies, we learn that

17           users don't get us and we don't know what to do."

18       dd. "[P]rivacy needs massive investment. It requires us to re-engineer … complete

19           products for the sake of privacy not anything else."

20       ee. "There are few presidents at Google, which is a sign that we want people to be

21           autonomous. But in privacy it is kind of hard to let people do what they want to

22           do. The harm is that people think they can do whatever they want, but this doesn't

23           work well for a regulated problem, it works well for product development. We are

24           pretty grumpy about it and in denial about it (regulation). If you want to work in a

25           bank, you have to get a license to work in a bank, and if you screw up, you lose

26           your license. But we really resist the idea that anyone can tell us what to do."

27       ff. "They (users) don't understand what is going on, and nobody is talking to them

28           about it. They are being talked at. How do you trust someone who talks at you but

1                don't show you what is in their heart? They need to be equal stakeholders. They

2                don't understand what it is going on."

3            gg. "We are not taking our responsibility as a steward of user data seriously."

4            hh. There is "[n]o coherent and simple access to privacy controls across all apps, in

5                Chrome and Android."

6  Joint Decl. Ex. 11.

7      143.    Pursuant to Court order (Dkt. 579-1, Discovery Issue 1.21, Deposition Topic 5), and

8  over Google's objection, on April 12, 2022, Plaintiffs took a 30(b)(6) deposition relating to

9  ▮▮▮▮▮▮▮▮.  During the deposition, Google testified that the ▮▮▮▮▮▮▮ final paper was "a

10 position paper" of PDPO, a team that "was created to solely focus on" privacy and data protection

11 matters at Google, and which is one of the primary teams with a focus on privacy and data protection

12 at Google.  Joint Decl. ¶ 65; Olson Decl. Ex. 38 (Google 30(b)(6) Dep., Abdulhay) at 19:1-21; 20:6-

13 13.

14      144.    Google confirmed that GOOG-CABR-05885871 contains "notes from conversations"

15 that were "taken by people relating to the ▮▮▮▮▮▮▮ project" and the process where "PDPO

16 team members interview[ed] stakeholders at Google."  Joint Decl. ¶ 65; Olson Decl. Ex. 38 (Google

17 30(b)(6) Dep., Abdulhay) at 48:9-50:9, 49:14.

18    **B. Findings Regarding Alleged Discovery Misconduct**

19      145.    Documents concerning ▮▮▮▮▮▮▮ that were requested by Plaintiffs are relevant

20 and should have been timely produced.  In particular, the ▮▮▮▮▮▮▮ final paper and interview

21 notes should have been produced immediately following Mr. Heft-Luthy's deposition.

22    **C. Findings Regarding Prejudice**

23      146.    The Court finds that Plaintiffs suffered some prejudice as a result of Google's belated

24 disclosure of the ▮▮▮▮▮▮▮ final paper and the interview notes associated with the project.

25 Because Google did not produce the ▮▮▮▮▮▮▮ final paper or interview notes until after the close

26 of fact discovery, Plaintiffs were prevented from seeking deposition testimony from any of the

27 interviewees. .

28      147.    As discussed above, Google did produce other ▮▮▮▮▮▮▮ documents prior to

2022/09/08 16:13:51   54  /64
Case 4:20-cv-05146-YGR   Document 871-3   Filed 09/19/22   Page 55 of 65
Case 4:20-cv-05146-YGR   Document 862-1 *SEALED*   Filed 09/08/22   Page 40 of 50

1  Mr. Heft-Luthy's deposition and prior to the deadline for Plaintiffs' MSJ Opposition. Plaintiffs used
2  some of these documents in Mr. Heft-Luthy's deposition and in their MSJ Opposition. *See* Olson
3  Decl. ¶¶ 17, 53-55. Plaintiffs did not request an extension of the deadline for their MSJ Opposition
4  to await Google's production of the requested ▓▓▓▓▓ documents, nor did they seek to
5  supplement their MSJ Opposition with the later-produced documents.

6      148.  The Court finds that these facts do mitigate, but only somewhat, Google's failure to
7  produce the ▓▓▓▓▓ final paper and actual interview notes. Identification of the fact that a
8  person was interviewed is different than production of the actual notes from the interviews. With
9  only limited depositions to take, Plaintiffs could not have guessed at what occurred in the interviews
10  for those ▓ people. Thus, the Court finds that identification of interviewees does not cure the
11  prejudice caused from concealing the content of the actual interviews.

12      149.  The Court does not accept Google's argument that its failure to produce GOOG-
13  CABR-05885987 (the ▓▓▓▓ final paper) and GOOG-CABR-05885871 (the interview notes)
14  should be excused because they "were inadvertently withheld as privileged." Google Opp. at 18,
15  n.18. Nor does Google's stated need to re-review the documents for privilege before it produced
16  them justify Google's significant delay in responding to Plaintiffs' repeated requests, over several
17  months, for their production. Moreover, although at the August 11, 2022 hearing Google faulted
18  Plaintiffs for an "endless priority list" (8/11/22 Hrg. Tr. at 159), that does not excuse Google's failure
19  to timely fulfill its discovery obligations.

20      150.  The Court rejects Google's argument that production of similar documents completely
21  cured any prejudice. Google itself argued in its MSJ Reply noted Plaintiffs' use of draft documents
22  (*see* Dkt. 475 at 12-14) at the same time that it was withholding production of the final version of the
23  same document.

24      151.  The ▓▓▓▓ documents fall squarely within Plaintiffs' discovery requests, and
25  Google knew this to be the case, having produced a subset of such documents. Although Google
26  emphasizes that it produced hundreds of documents regarding ▓▓▓▓ before Plaintiffs' MSJ
27  Opposition was due (Opp. at 14-16), Google's decision to produce certain ▓▓▓▓ documents
28  casts a shadow on its decision to withhold two significant ▓▓▓▓ documents — the interview

2022/09/08 16:13:51    55  /64
Case 4:20-cv-05146-YGR    Document 871-3    Filed 09/19/22    Page 56 of 65
Case 4:20-cv-05146-YGR    Document 862-1 *SEALED*    Filed 09/08/22    Page 41 of 50

1  notes and final paper — until more than two months after Plaintiffs filed their MSJ Opposition and a

2  month after discovery closed.

3      152.    The Court finds that Google was not sufficiently diligent in responding to Plaintiffs'

4  request for production of ▮▮▮▮▮▮▮ documents identified in Mr. Heft-Luthy's deposition. Indeed

5  taking more than two months, and even running through the discovery cut-off, is the definition of

6  "not sufficiently diligent."

7      153.    The Court concludes that the prejudice from Google's delayed production of the

8  ▮▮▮▮▮▮▮ documents, as mitigated, is properly addressed with an evidentiary sanction in future

9  proceedings as discussed in the Conclusions of Law.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2022/09/08 16:13:51 56 /64
Case 4:20-cv-05146-YGR   Document 871-3   Filed 09/19/22   Page 57 of 65
Case 4:20-cv-05146-YGR   Document 862-1 *SEALED*   Filed 09/08/22   Page 42 of 50

1

## CONCLUSIONS OF LAW

2      1.      "When a district court decides to impose sanctions or discipline, it must clearly

3 delineate under which authority it acts to ensure that the attendant requirements are met." *Williams v.*

4 *Williams*, 2013 WL 3157910, at *4 (N.D. Cal. June 20, 2013) (citing *Weissman v. Quail Lodge, Inc.*,

5 179 F.3d 1194, 1200 (9th Cir. 1999)).

6      2.      Federal courts have the power to sanction litigants for discovery misconduct under

7 both the Federal Rules of Civil Procedure and the court's inherent power to prevent abusive litigation

8 practices. *See Leon v. IDX Sys. Corp.*, 464 F.3d 951, 958 (9th Cir. 2006).

9      3.      In their motion, Plaintiffs seek sanctions under Federal Rule of Civil Procedure 16(f),

10 Rule 37(b), Rule 37(e), and the Court's inherent power. Motion at 4, 5.

11 **I.      Federal Rules of Civil Procedure 16(f) and 37(b)**

12      **A.      Legal Standard**

13      4.      Plaintiffs invoke Rule 16(f) as one basis for sanctions.  Motion at 4; Pls. Prop. Findings

14 ¶¶ 302-324.  Plaintiffs' Motion also seeks sanctions under Rule 37(b).  Motion at 4; Pls. Prop.

15 Findings ¶¶ 325-338.  As sanctions under Rule 37(b), Plaintiffs seek the same sanctions as they seek

16 for the violation of Rule 16(f) discussed above.  *Compare* Pls. Prop. Findings ¶ 309 *and* ¶ 337.  In

17 addition, as discussed below, most of the sanctions available under Rule 37(b)(2)(A) are also

18 available under Rule 16(f)(1).  Accordingly, the Court addresses both rules together.

19      5.      Rule 16(f) provides that a "court may issue any just orders ... if a party or its attorney

20 ... fails to obey a scheduling or other pretrial order." Fed. R. Civ. P. 16(f)(1)(C). Rule 16 is "broadly

21 remedial and its purpose is to encourage forceful judicial management." *Sherman v. United States*,

22 801 F.2d 1133, 1135 (9th Cir. 1986).  A court may order sanctions under Rule 16 for violation of an

23 order where "[d]isregard of the order would undermine the court's ability to control its docket, disrupt

24 the agreed-upon course of the litigation, and reward the indolent and the cavalier." *Johnson v.*

25 *Mammoth Recreations, Inc.*, 975 F.2d 604, 610 (9th Cir. 1992).

26      6.      Rule 16(f)(1) authorizes the Court to impose the sanctions permitted by Rule

27 37(b)(2)(A)(ii) – (vii). *See In re Bang Energy Drink Mktg. Litig.*, 2020 WL 4458916, at *2 (N.D. Cal.

28 Feb. 6, 2020). The sanctions set forth in Rule 37(b)(2)(ii) – (vii) are:

2022/09/08 16:13:51    57  /64
Case 4:20-cv-05146-YGR    Document 871-3    Filed 09/19/22    Page 58 of 65
Case 4:20-cv-05146-YGR    Document 862-1 *SEALED*    Filed 09/08/22    Page 43 of 50

1        ii.    prohibiting the disobedient party from supporting or opposing
2               designated claims or defenses, or from introducing designated matters
3               in evidence;

4        iii.   striking pleadings in whole or in part;

5        iv.    staying further proceedings until the order is obeyed;

6        v.     dismissing the action or proceeding in whole or in part;

7        vi.    rendering a default judgment against the disobedient party; or

8        vii.   treating as contempt of court the failure to obey any order except an
9               order to submit to a physical or mental examination.

10    7.    Rule 16(f)(2) provides that instead of or in addition to any other sanction, "the court
11 must order the party, its attorney, or both to pay the reasonable expenses — including attorney's
12 fees — incurred because of any noncompliance with this rule, unless the noncompliance was
13 substantially justified or other circumstances make an award of expenses unjust."

14    8.    Under Federal Rule of Civil Procedure 37(b)(2)(A), where a party "fails to obey an
15 order to provide or permit discovery," the court "may issue further just orders." As discussed in
16 Conclusion of Law ¶ 6, *supra*, most of the sanctions available under Rule 37(b)(2)(A)(ii)-(vii) are
17 also available under Rule 16(f). An additional sanction available under Rule 37(b) is an order
18 "directing that the matters embraced in the order or other designated facts be taken as established for
19 purposes of the action, as the prevailing party claims." Rule 37(b)(2)(A)(i); *see U.S. v. Sumitomo
20 Marine & Fire Ins. Co., Ltd.*, 617 F.2d 1365, 1369 (9th Cir. 1980). "The choice among the various
21 sanctions rests within the discretion of the district court." *Sumitomo*, 617 F.3d at 1369. Sanctions
22 may be warranted under Federal Rule of Civil Procedure 37(b)(2) for failure to obey a discovery
23 order as long as the established issue bears a reasonable relationship to the subject of discovery that
24 was frustrated by sanctionable conduct. *Navellier v. Sletten*, 262 F.3d 923, 947 (9th Cir. 2001)
25 (citation omitted).

26                        **B.    Discussion**

27    9.    Plaintiffs argue that Google violated Rule 16(f) in the following ways:

28               a.    Google disclosed several Not Synced Signals after the close of

42

2022/09/08 16:13:51    58 /64
Case 4:20-cv-05146-YGR    Document 871-3    Filed 09/19/22    Page 59 of 65
Case 4:20-cv-05146-YGR   Document 862-1 *SEALED*   Filed 09/08/22   Page 44 of 50

1                      discovery.

2               b.    Google **did not produce** Gaia-Keyed Plaintiff data in its possession

3                   until after the close of fact discovery.

4               c.    Google did not complete production of ▮▮▮▮▮▮ documents

5                   until April 6, 2022, nearly one month after the fact discovery cut-

6                   off.

7 Pls. Prop. Findings ¶ 306.

8     10.    As a basis for sanctions under Rule 37(b)(2)(A), Plaintiffs argue that Google violated

9 two court orders (1) the Court's April 30, 2021 Order on Dispute 1.3, Dkt. 173-1 requiring production

10 of Plaintiff data and information, and (2) the Court's November 12, 2021 Order, which again required

11 Google to produce all data associated with the Named Plaintiffs and further required Google to

12 provide an under-oath declaration that the data had been produced. Motion at 10-14.

13     11.    Plaintiffs ask for the following sanctions for Google's alleged violations of Rule 16(f)

14 and 32(b):

15               a.   A finding of civil contempt for abuse of the discovery process.

16               b.   An order precluding Google from arguing that the absence of signals

17                  from which browser state can be determined may not be used as

18                  evidence or argument that the proposed Class cannot be ascertained,

19                  damages appropriately apportioned, or that the proposed Class

20                  definition, which is defined as to include only users who are not synced,

21                  contains any "uninjured" class members by reason of an inability to

22                  identify users who are not synced.

23               c.   A jury instruction in the form of the following:

24                  "Plaintiffs commenced this action by filing a complaint on

25                  July 27, 2020, which alleged that the Chrome Web Browser
                      unlawfully disclosed information of Chrome users who did

26                  not enable "Sync" to Google. Upon the filing of this
                      complaint, Defendant Google LLC ("Google") was under a

27                  duty to preserve evidence, including evidence related to the
                      information that was alleged to be unlawfully disclosed.

28                  Google failed to comply with this duty. Specifically, Google

2022/09/08 16:13:51     59 /64
Case 4:20-cv-05146-YGR    Document 871-3    Filed 09/19/22    Page 60 of 65
Case 4:20-cv-05146-YGR   Document 862-1 *SEALED*    Filed 09/08/22   Page 45 of 50

1    failed to prevent the destruction and loss of relevant
evidence that would show the full scope, scale and nature of
2    information that was unlawfully disclosed from Chrome to
Google related to Named Plaintiffs and Class Members."
3

4    "I instruct you, members of the jury, as matter of law, that
Google's failure to preserve evidence constitutes "spoliation
5    of evidence" and was the direct result of Google's failure to
perform its discovery obligations. You may presume the
6    following:

7
First, that Google destroyed relevant evidence. Evidence is
8    relevant if it would have clarified a fact at issue in the trial
and otherwise would naturally have been introduced into
9    evidence.

10    Second, that the evidence destroyed by Google was
favorable to Plaintiffs and, had the evidence been preserved
11    and produced, it would have shown that Chrome was in fact
unlawfully disclosing personal information of Named
12    Plaintiffs and Class Members to Google and that the nature
and volume of information being unlawfully disclosed was
13    objectively unreasonable and highly offensive."
14

15    d. An order striking Google's affirmative defense of consent (First

16    Affirmative Defense) and precluding Google from arguing that it

17    obtained consent for any of the practices challenged in this case,

18    including but not limited to taking data from users who are not synced,

19    creating profiles of them, and how Google benefits from that data.

20    e. All fees and costs related to the Special Master discovery process, to

21    be paid to Plaintiffs' counsel within fourteen (14) days of the date of

22    this Order;

23    f. Leave to apply for reimbursement of all fees and costs related to

24    Google's Motion for Summary Judgment on Google's First

25    Affirmative Defense of Consent (Dkt. 395).

26    g. Leave to apply for reimbursement all fees and costs related to the

27    instant motion for sanctions, related briefing, hearing preparation and

28    travel and lodging for this hearing.

44

2022/09/08 16:13:51    60  /64
Case 4:20-cv-05146-YGR   Document 871-3   Filed 09/19/22   Page 61 of 65
Case 4:20-cv-05146-YGR   Document 862-1 *SEALED*   Filed 09/08/22   Page 46 of 50

1 | Pls. Prop. Findings ¶¶ 309, 337.

2 |      12.     For the reasons discussed above (*see* FOF ¶¶ 58, 69-78, *supra*), the Court finds that
3 | Google did not violate Rule 16(f)(1)(c) with respect to Not Synced Signals. However, as discussed
4 | above (*see* FOF ¶¶ 115-121, 145-153), Google did violate Rule 16(f)(1)(C) with respect to its
5 | delayed production of certain Named Plaintiffs' data and ▆▆▆▆▆▆▆ documents. Because the
6 | sanctions imposed by the Court in the following two paragraphs are available and appropriate under
7 | Rule 16(f)(1)(C), the Court need not reach the issue of whether the same sanctions are also warranted
8 | under Rule 37(b)(2)(A).

9 |      13.     With respect to the delayed production of Named Plaintiffs data (*see* FOF ¶¶ 115-
10 | 121, *supra*), the Court finds the following monetary sanction to be warranted and to bear a reasonable
11 | relationship to Google's discovery misconduct:

12 |                a. The Court orders Google to pays Plaintiffs a portion of their Special Master fees
13 |                   pursuant to Rule 16(f)(2). The Court is informed and believes the fees paid to the
14 |                   Special Master in this case and the related case of *Brown v. Google*, 20-cv-3664-
15 |                   YGR, exceed $1 million, and Google's discovery violations with respect to
16 |                   Named Plaintiffs' data (including the first round searches that returned null sets
17 |                   and proceedings to ensure Google's production of publisher notice data) spanned
18 |                   the period of January 2022 to May 2022. The issues before the Special Master
19 |                   were numerous and entwined such that a calculation of time spent on any one
20 |                   issue with mathematical precision is neither possible nor required. Considering
21 |                   these factors, the Court determines that an award to the Plaintiffs in this case of
22 |                   expenses in the amount of $100,000 is appropriate. Pursuant to Rule 16(f)(2), the
23 |                   Court finds that a monetary award that includes <u>all</u> of Plaintiffs expenses including
24 |                   attorney's fees on the Named Plaintiffs data issue would be unjust under the
25 |                   circumstances of this case in light of the evidentiary issues noted in the cover order
26 |                   of this date and the fact that Plaintiffs only partially prevailed on the present
27 |                   Motion.

28 |      14.     With respect to the delayed production of ▆▆▆▆▆▆ documents (*see* FOF ¶¶ 145-

2022/09/08 16:13:51    61 /64
Case 4:20-cv-05146-YGR    Document 871-3    Filed 09/19/22    Page 62 of 65
Case 4:20-cv-05146-YGR    Document 862-1 *SEALED*    Filed 09/08/22    Page 47 of 50

1  153), the Court finds the following evidentiary sanction to be warranted and to bear a reasonable

2  relationship to Google's discovery misconduct:

3        a.  Pursuant to Rule 16(f)(1) and Rule 37(b)(2)(A)(ii) referenced therein, the Court

4            finds it appropriate to prohibit Google in any further proceeding in this case from

5            objecting to the admissibility or use of the ▆▆▆▆▆ final paper (GOOG-

6            CABR-05885987) and the ▆▆▆▆▆ interview notes (GOOG-CABR-

7            05885871).  This Order does not preclude Google from offering admissible

8            evidence in response to the ▆▆▆▆▆ final paper or ▆▆▆▆▆ interview

9            notes.

10      15.    The Court finds that the remaining sanctions Plaintiffs seek under Rules 16(f) and

11  37(b) are not warranted.

12      16.    First, Plaintiffs request an evidentiary sanction precluding Google from making

13  certain arguments concerning the absence of signals from which browser state can be determined.

14  *See* Pls. Prop. Findings ¶¶ 309(b), 337(b). However, no sanctions are warranted with respect to Not

15  Synced Signals because the Court has found no discovery violation on that issue. *See* FOF ¶¶ 58, 69-

16  78, *supra*.

17      17.    Second, as for the other sanctions Plaintiffs seek with respect to Named Plaintiffs'

18  data and ▆▆▆▆▆, the Court concludes that such sanctions are not warranted for the following

19  reasons:

20        a.  A finding of civil contempt is not warranted.  Although Google did not produce

21            certain documents until after the close of discovery, some of the delay in

22            completing production of Named Plaintiffs' data was due to litigation of those

23            issues before the Court and/or Special Master.  Google has no similar excuse for

24            its late production of ▆▆▆▆▆ documents, but those were but a microscopic

25            fraction of the total number of documents produced by Google and in this respect

26            Google substantially complied with the fact discovery cutoff.  *See In re Dual–*

27            *Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d 693, 695 (9th Cir. 1993)

28            (substantial compliance with court order is defense to civil contempt).

2022/09/08 16:13:51    62 /64
Case 4:20-cv-05146-YGR    Document 871-3    Filed 09/19/22    Page 63 of 65
Case 4:20-cv-05146-YGR    Document 862-1 *SEALED*    Filed 09/08/22    Page 48 of 50

b.  Evidentiary sanctions other than the sanction discussed above with respect to the ▮▮▮▮▮▮ final paper and interview notes are not warranted. Plaintiffs seek an order striking Google's affirmative defense of consent (First Affirmative Defense) and precluding Google from arguing that it obtained consent for any of the practices challenged in this case, including but not limited to taking data from users who are not synced, creating profiles of them, and how Google benefits from that data. However, although the late-produced ▮▮▮▮▮▮ final paper and interview notes were relevant to arguments Plaintiffs made in opposition to Google's MSJ, which was based on consent, the ▮▮▮▮▮▮ project was not the focus of Plaintiffs' Opposition, and Plaintiffs have not shown that, as a matter of law, comments of Google employees in the ▮▮▮▮▮▮ interview notes or final paper preclude Google from asserting a consent defense. The Court also notes that Google's MSJ on consent will be decided by the District Judge. As such, Plaintiffs have not shown that this sanction bears "a reasonable relationship to the subject of discovery that was frustrated by sanctionable conduct." *See Navellier*, 262 F.3d at 947.

c.  The Court finds in its discretion that an award of additional expenses, including attorney's fees, beyond the portion of Special Master's fees awarded above would be unjust in light of the circumstances, including the limited prejudice to Plaintiffs and the concerns set forth in in the cover order of this date, including Plaintiffs' disregard of the complexities of discovery in this case and their mischaracterizations of the record.

## II.  FEDERAL RULE OF CIVIL PROCEDURE 37(E) (FAILURE TO PRESERVE ELECTRONIC EVIDENCE)

18.  Plaintiffs' Motion also seeks sanctions under Rule 37(e). Motion at 4; Pls. Prop. Findings ¶¶ 339-355.

19.  Federal Rule of Civil Procedure 37(e) provides: "If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party

47

1    failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional

2    discovery, the court . . . upon finding that the party acted with the intent to deprive another party of

3    the information's use in the litigation may" "instruct the jury that it may or must presume the

4    information was unfavorable to the party." "Intent must be established before a court can impose

5    sanctions, such as adverse jury instructions, default, and dismissal under Rule 37(e)(2)." *DR*

6    *Distributors*, 513 F. Supp. 3d at 980-981 (citing Fed. R. Civ. P. 37(e), advisory committee's notes

7    (2015)). "[I]f a party destroys evidence with the intent to keep the ESI from the opposing party,

8    prejudice is reasonably inferred." *HP Tuners, LLC v. Sykes-Bonnett*, 2019 WL 5069088, at *4 (W.D.

9    Wash. Sept. 16, 2019), *report and recommendation adopted as modified*, 2019 WL 5064762 (W.D.

10   Wash. Oct. 9, 2019).

11       20.     Plaintiffs request for Rule 37(e) sanctions is based on Google's alleged failure to

12   preserve:

13              a.   Class wide Not Synced Signals.

14              b.   Zwieback data.

15              c.   Biscotti data.

16   Pls. Prop. Findings ¶ 340.

17       21.     Plaintiffs seek the following sanctions under Rule 37(e):  (1) a preclusion order

18   precluding Google from making certain arguments regarding the absence of signals from which

19   browser state can be determined; and (2) a jury instruction regarding Google's failure to preserve

20   evidence. Pls. Prop. Findings ¶ 341.

21       22.     Having concluded that Google did not violate a duty to preserve ESI (*see* FOF ¶ 118,

22   *supra*), the Court concludes that an award of sanctions under Rule 37(e) is not warranted.

23   **III.     THE COURT'S INHERENT AUTHORITY**

24       23.     Plaintiffs do not seek any sanction pursuant to the Court's inherent authority separate

25   and apart from those the Court has already addressed but argue that the Court's inherent authority

26   provides an alternative and independently sufficient basis to impose the sanctions requested.  Pls.

27   Prop. Findings ¶¶ 358.

28       24.     Courts are vested with inherent powers that are "governed not by rule or statute but by

2022/09/08 16:13:51    64  /64
Case 4:20-cv-05146-YGR    Document 871-3    Filed 09/19/22    Page 65 of 65
Case 4:20-cv-05146-YGR    Document 862-1 *SEALED*    Filed 09/08/22    Page 50 of 50

1    the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and
2    expeditious disposition of cases." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991) (quoting *Link v.*
3    *Wabash R.R. Co.*, 370 U.S. 626, 630-31 (1962)). The Ninth Circuit has held that sanctions are
4    available under the court's inherent power if "preceded by a finding of bad faith, or conduct
5    tantamount to bad faith." *Fink v. Gomez*, 239 F.3d 989, 994 (9th Cir. 2001); *see Gomez v. Vernon*,
6    255 F.3d 1118, 1134 (9th Cir. 2001).

7        25.    The bad-faith requirement sets a "high threshold," *Primus Auto. Fin. Servs., Inc. v.*
8    *Batarse*, 115 F.3d 644, 649 (9th Cir. 1997), which may be met by willful misconduct, or recklessness
9    combined with "frivolousness, harassment, or an improper purpose." *Fink*, 239 F.3d at 993-94. It is
10   the moving party's burden to demonstrate that the party against whom it seeks sanctions acted with
11   the requisite bad faith or improper purpose. *See Burnett v. Conseco, Inc.*, 87 F. Supp. 3d 1238, 1248-
12   49 (N.D. Cal. 2015).

13       26.    As discussed above, Google unjustifiably delayed the production of certain Named
14   Plaintiffs data and ▬▬▬▬▬ documents and displayed a lack of candor on certain issues.
15   However, Plaintiffs have not met their burden of proving that Google acted with bad faith or improper
16   purpose, as is necessary before the Court may impose sanctions under its inherent power. Moreover,
17   the Court finds that imposition of sanctions under its inherent power is not warranted because the
18   sanctions awarded under Rule 16(f) adequately address the limited prejudice suffered by Plaintiffs as
19   a result of Google's discovery misconduct.

20

21

22

23

24

25

26

27

28

49