**Pages 1 - 32**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Yvonne Gonzalez Rogers, Judge

```
PATRICK CALHOUN, ET AL.,        )
                                )
          Plaintiffs,           )
                                )
  VS.                           )      NO. CV 20-05146-YGR
                                )
GOOGLE LLC,                     )
                                )
          Defendant.            )
_____)
```

Oakland, California
Tuesday, September 20, 2022

**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES**:

For Plaintiffs:

BLEICHMAR FONTI & AULD LLP
555 12th Street, Suite 1600
Oakland, CA 94607
**BY:  LESLEY WEAVER, ESQUIRE**

DICELLO LEVITT GUTZLER LLC
One Grand Central Place
60 East 42nd St., Suite 2400
New York, NY 10165
**BY:  DAVID A. STRAITE, ESQUIRE**

SIMMONS HANLY CONROY
231 S. Bemiston Avenue, Suite 525
St. Louis, MO 63105
**BY:  JAY BARNES, ESQUIRE**

SIMMONS HANLY CONROY
112 Madison Avenue, 7th Floor
New York, NY 10016
**BY:  AN V. TRUONG, ESQUIRE**

Reported By:        Pamela Batalo-Hebel, CSR No. 3593, RMR, FCRR
                    Official Reporter

**APPEARANCES CONTINUED:**


For Defendant:
                        QUINN EMANUEL URQUHART SULLIVAN LLP
                        191 N. Upper Wacker Drive, Suite 2700
                        Chicago, IL 60606
              BY:  **ANDREW H. SCHAPIRO, ESQUIRE**

                        QUINN EMANUEL URQUHART SULLIVAN, LLP
                        865 South Figueroa Street, 10th Floor
                        Los Angeles, CA 90017
              BY:  **VIOLA TREBICKA, ESQUIRE**
                        **STEPHEN BROOME, ESQUIRE**
                        **ALYSSA G. OLSON, ESQUIRE**

| | |
|---|---|
| 1 | **<u>Tuesday - September 20, 2022</u>**        **<u>10:00 a.m.</u>** |
| 2 | **P R O C E E D I N G S** |
| 3 | **---oOo---** |
| 4 | **THE CLERK:** Now calling CV 20-5146-YGR, Calhoun, et |
| 5 | al. vs. Google LLC. |
| 6 | Counsel, starting with the plaintiffs, please state your |
| 7 | appearance for the record. |
| 8 | **MR. STRAITE:** Good morning, Your Honor. This is David |
| 9 | Straite from the firm of DiCello Levitt on behalf of |
| 10 | plaintiffs. |
| 11 | **THE COURT:** Good morning. |
| 12 | **MS. WEAVER:** Good morning, Your Honor. Lesley Weaver |
| 13 | of Bleichmar Fonti, and Angelica Ornelas of my firm, I think, |
| 14 | is trying to get in, but we don't need to delay proceedings. |
| 15 | **THE COURT:** Okay. |
| 16 | **MR. BARNES:** Good morning, Your Honor. Jay Barnes of |
| 17 | Simmons Hanly Conroy. My colleague, An Truong, is on the call. |
| 18 | **MS. TRUONG:** Good morning, Your Honor. |
| 19 | **THE COURT:** Good morning. |
| 20 | **MR. STRAITE:** That's it for plaintiffs, Your Honor. |
| 21 | **THE COURT:** Okay. For defense. |
| 22 | **MR. BROOME:** Good morning, Your Honor. Stephen Broome |
| 23 | from Quinn Emanuel for Google. I'm joined by my colleagues, |
| 24 | Ms. Trebicka, Ms. Olson, and Mr. Schapiro. |
| 25 | **THE COURT:** Good morning. |

1    **MR. BROOME:**  Good morning.

2    **MS. TREBICKA:**  Good morning, Your Honor.

3    **THE COURT:**  Who is primarily going to be talking with

4    me today about scheduling from the plaintiffs?

5    **MR. STRAITE:**  Your Honor, that will be me, David

6    Straite.  I will take the lead, but there may be some questions

7    or it will be useful to have Ms. Weaver or Mr. Barnes jump in.

8    **THE COURT:**  Okay.

9    **MR. BROOME:**  For Google, that will be me, Your Honor.

10   And similarly, Ms. Trebicka or Mr. Schapiro or Ms. Olson may

11   have some -- be able to answer certain questions.

12   **THE COURT:**  All right.  I would ask all the

13   non-primary people to just turn off your video at this point.

14   All you have to do is turn it back on if you need to say

15   something.

16   Okay.  So in terms of scheduling, the reality -- I haven't

17   done one of these, so I am interested in doing it.  I think it

18   will be helpful.  So I am willing to listen to your suggestions

19   in terms of what you need to get you the information that I've

20   asked for.

21   We'll start with the plaintiff.  What do you think you

22   need?  Who are your witnesses?  Go ahead.

23   **MR. STRAITE:**  Thank you, Your Honor.

24   We'll start with the identification of witnesses that we

25   gave you at Docket No. 864.  This was on September 8th.  And

1   it's helpful to go through which witnesses we think are

2   necessary and which we hope to be able to take off because that

3   will then streamline what we are going to do at the hearing.

4        We identified witnesses that work or used to work at

5   Google that include Greg Fair, Dr. Adriana Porter-Felt,

6   Dr. Glenn Berntson and Steve -- I'm sorry.  I apologize.  That

7   was Google's list.

8        Our list is Greg Fair, Sam Heft-Luthy, AbdelKarim Mardini,

9   Jochen Eisenger, Michael Kleber, and Sabine Borsay.  Most of

10  them, however, are witnesses that we've deposed, and we're

11  asking to use their deposition transcripts, so we don't seek to

12  call them as witnesses.  We identified them only in case the

13  Court's preference was that they be available, but our

14  preference is only to include their deposition transcripts for

15  Mr. Heft-Luthy, Mr. Mardini, Mr. Eisenger, Mr. Kleber, and

16  Ms. Borsay.

17       The only Google employee that we would seek to call as a

18  witness --

19            **THE COURT:**  I'm going to have you hold on because I

20  pulled up an electronic version of your document, and it seems

21  to have problems.  I'm going to try to pull it up a different

22  way.  Hold on just a minute.

23            **MR. STRAITE:**  Of course.

24            **THE COURT:**  That docket number -- again, it was 864;

25  right?

1          **MR. STRAITE:**  Yes, Your Honor.

2          **THE COURT:**  Okay.  Maybe -- Mr. Garcia, can you print

3    it for me?

4          **THE CLERK:**  Will do.

5          **THE COURT:**  It looks like yours is working.

6          **MR. STRAITE:**  Your Honor, as that's printing, the

7    position we have regarding those witnesses is -- in Footnote 2

8    is where we identified that issue.  We are trying to get most

9    of those witnesses off the witness list if we can use their

10   depositions.

11         **THE COURT:**  So who is Sam Heft-Luthy or Luthy?

12         **MR. STRAITE:**  Right.  Mr. Heft-Luthy we understand is

13   a former employee.  He was involved in issues related to

14   privacy and consent.  We took his deposition, and it involved

15   how browsers send information to Google.

16         **THE COURT:**  All right.  Who is the next one, last name

17   Mardini, and the first name there is no space, so I don't know

18   if that's a typo or that's actually how the person's name

19   appears.

20         **MR. STRAITE:**  We understand Mr.-- Mr. Broome will

21   correct me if I'm wrong -- that that is actually how he spells

22   his name with the K in the middle of the name, capitalized but

23   no space.

24         **MR. BROOME:**  Yes, that's correct.

25         **MR. STRAITE:**  Mr. Mardini -- he actually goes

1  internally by Mardini.  That's is his nickname.  That's his

2  last name.  So we see his email address as "Mardini."

3      He is the head of trust for Chrome, and his deposition

4  also related to information sent by Chrome to Google and his

5  understanding of it.

6      And we did -- same thing for Mr. Eisenger, Mr. Kleber, and

7  Ms. Borsay.

8          **THE COURT:**  And you have deposed them all?

9          **MR. STRAITE:**  Our team has, yes.

10         **THE COURT:**  And are they engineers?  Is that what they

11  are?

12         **MR. STRAITE:**  Some are; some aren't.

13         **THE COURT:**  Which are engineers?

14         **MR. STRAITE:**  So it's our understanding Mr. Eisenger,

15  Mr. Kleber are engineers.  Mr. Fair is not, but he is the

16  author of declarations in support of summary judgment and class

17  certification.  Mr. Heft-Luthy we do not believe is an engineer

18  and neither is Mr. Mardini.

19         **THE COURT:**  Well, what are they then?

20         **MR. STRAITE:**  Executives at Google who -- and

21  Mr. Barnes, who just --

22         **MR. BARNES:**  I believe Mr. Mardini is an engineer,

23  Your Honor.

24         **MR. STRAITE:**  Okay.  But all have knowledge of how

25  information is transferred from the Chrome browser to Google.

1      **THE COURT:**  And they explain that in technical detail

2   in their depos?  Yes or no.

3      **MR. STRAITE:**  Not to our satisfaction, no, but we did

4   ask about it.

5      **THE COURT:**  Okay.  Well, then how is that going to

6   help me?

7      **MR. STRAITE:**  It will help understand how Google

8   engineers and how Google executives understand the data flow

9   coming specifically from Chrome.

10      **MR. BROOME:**  Your Honor, may I say something briefly?

11      **THE COURT:**  Yes.

12      **MR. BROOME:**  I think there is a fundamental

13   disagreement between the parties as to what the scope of the

14   issue on which the Court has invited testimony under Rule 56(e)

15   actually is.

16      Google has read Your Honor's order quite literally to mean

17   that the issue is discrete, and it is whether the collection of

18   the at-issue data is browser agnostic.  And in our

19   meet-and-confers with the plaintiffs -- and I think this is

20   evidenced by their witness list as well, which includes the

21   named plaintiffs and an expert who is a consumer expectations

22   slash privacy policy expert -- the plaintiffs, I think, are

23   focusing on a different issue, which is how other browsers work

24   and what their privacy policies say.  That's also reflected in

25   a lot of these Google depositions that they have indicated they

1    intend to submit by designation.

2        These people were not -- were not deposed on these issues.

3    We've been through the transcripts.  We can't see how they're

4    helpful.  That's -- you know, Sam Heft-Luthy has very little to

5    say about this issue, as do many of the others.

6        So I think the starting point, from our perspective, is

7    that it would be very helpful to get the Court's guidance as to

8    what is the scope of the issue.  Is it what Your Honor said in

9    the order or is it something different?

10        **THE COURT:**  This is intended to be very technical.

11    I'm not interested in perspectives.  I want to understand the

12    technology.  That's the point.  If I need more afterwards, I'll

13    let you know.  But the first point is to understand how the

14    technology works, period.  So --

15        **MR. BROOME:**  That's very helpful, Your Honor.  Thank

16    you.

17        **MR. STRAITE:**  Right.

18        **THE COURT:**  Mr. Straite, are these individuals -- and,

19    frankly, the answer to my question when you say "Well, not to

20    your satisfaction" means that reading those depos are going to

21    give me -- are not going to be sufficient for me either.

22        So who is it who can explain the technology to me?

23        **MR. STRAITE:**  From the list of Google employees that

24    we would seek to introduce the deposition testimony,

25    Mr. Eisenger is an engineer.  Mr. Mardini is an engineer.  We

1    also have experts we haven't gotten to yet, but of those

2    employees -- and then of course Greg Fair puts in a declaration

3    regarding how the browser works.  So -- and then of course

4    Mr. Michael Kleber.  So those are the ones with the actual

5    engineering background that would be most relevant to the

6    hearing.

7         **THE COURT:**  Okay.  But in those deposition

8    transcripts, am I going to -- if I read those, am I going to

9    understand the technology?

10         **MR. STRAITE:**  Yes, Your Honor.  It would be

11    Mr. Eisenger, Mr. Mardini, Mr. Kleber.

12         **THE COURT:**  Okay.  Who does Google want to call to

13    explain the technology?

14         **MR. BROOME:**  Your Honor, we -- the two primary

15    services that are at issue in the case, from our perspective,

16    have been the Google Ads and Google -- Google Ad Manager and

17    Google Analytics.  There are, of course, other services, but

18    those are the two that the parties have really focused on.

19         Glenn Berntson is -- is the lead engineer for the Google

20    Ad side and Steve Ganem is one of the lead engineers on the

21    Analytics side, and so we think they are the best people to

22    testify about the collection of the data, which is the issue

23    that we think Your Honor asked about.

24         We have also identified Adriana Porter-Felt.  She is an

25    engineer on the Chrome side.  We really called her as more of a

1    rebuttal witness because we think the plaintiffs are focused on

2    how browsers work as opposed to how the technology and the

3    services at issue work.

4        And then we've -- we've identified Greg Fair, who is --

5    is -- was in the privacy office at Google.  We've identified

6    him only because we know the plaintiffs want to ask him

7    questions and also because he was the individual who submitted

8    the declaration from which Your Honor quoted in the order.

9        We also have one expert.  Again, more of a rebuttal in the

10   event that plaintiffs want to bring experts to talk about how

11   other browsers work.

12            **THE COURT:**  Have Mr. Berntson and Ganem been deposed?

13        **MR. BROOME:**  Yes.  Actually, one of my teammates just

14   corrected me.  Mr. Ganem is not an engineer.  He is a product

15   manager, but he can explain the technology and has explained

16   the technology in his declarations that he's submitted to the

17   Court so far.  And, yes, both Mr. Berntson and Mr. Ganem have

18   been deposed.

19            **THE COURT:**  All right.  And how much time do you think

20   you need -- we'll start with Google -- to present evidence on

21   how the technology works?

22        **MR. BROOME:**  I guess that turns on what technology

23   we're talking about, Your Honor.  If the -- if, again, we are

24   reading your order literally to focus on the data collection,

25   how these services collect data and whether that data

1    collection is browser agnostic, we think that could be done in

2    a very short period of time.  We probably need maybe 30 minutes

3    for direct on Mr. Berntson and 30 minutes -- 30 to 40 minutes,

4    I would, say for each of Dr. Berntson and Mr. Ganem.

5        If the technology that we're talking about is browsers and

6    how other browsers work, then I think we would need additional

7    time.

8            THE COURT:  Well, your argument is that these -- this

9    all -- the -- the data collection is browser agnostic.  That's

10   your argument.

11           MR. BROOME:  That's correct.

12           THE COURT:  So I don't know how you can separate the

13   two if that's the argument.  I mean, don't I have to know how

14   browsers work technically in order to evaluate your argument

15   that this is browser agnostic?

16           MR. BROOME:  No, I don't think so, Your Honor.  I

17   think -- when we talk about how other browsers work, I believe

18   what the plaintiffs are saying is that there are privacy

19   settings, for example, cookie features, cookie blockers, that

20   in recent years some browsers have enabled cooker blockers by

21   default, and in Chrome they're not enabled by default, and

22   that's not an undisputed fact.  I mean, that's correct.  But

23   the services, whether the services collect cookies is browser

24   agnostic.  If cookies are available, the services will collect

25   them.  If cookies are unavailable, then the services will not

```
1    collect them.

2              THE COURT:  Do you agree, Mr. Straite?

3              MR. STRAITE:  No, we don't, Your Honor.  Thank you for

4    asking.

5         The browsers in the market today all function differently,

6    regardless of settings.  Certainly out of the box in their

7    default settings, they function very differently, but even when

8    the settings on the various browsers are adjusted, they

9    function differently.

10        For our perspective, we would probably want to start with

11   the experts.  We believe that there -- since we don't have

12   engineers on our side other than experts, we would propose

13   Dr. Shafiq.  Dr. Zubair Shafiq is a professor at U.C. Davis.

14   And also Dr. Richard Smith.  Both have been in this case from

15   the beginning and they each would take probably half an hour.

16        Our questioning of Mr. Mardini, Mr. Kleber, Mr. Eisenger

17   will probably be quicker.  We would like the opportunity to ask

18   questions, of course, of Mr. Ganem and Mr. Berntson and

19   Dr. Porter-Felt.  And then we both have Greg Fair on our list.

20   I'm not sure how that gets --

21             THE COURT:  Okay.  It sounds like what we are talking

22   about is if I reserve one day, I should be able to get through

23   everybody that you need me to get through; right?

24             MR. STRAITE:  We agree.

25             THE COURT:  Mr. Broome?
```

1          **MR. BROOME:**  Yes, I agree.  One day would be fine.

2          **THE COURT:**  All right.  Let me look at my schedule.

3    Now, the week that I asked you for it looked like was not

4    available.  You were trying to make some -- can I get an update

5    or is there an update?

6          **MR. STRAITE:**  Yes, Your Honor.  The first request you

7    had of us was to find a date that worked during the week of

8    October 24th.  We said we weren't able to find a date, but now

9    we do.  So the actual day, October 24, I think we identified in

10   our supplemental filing is available for all counsel and all

11   witnesses.  That's October 24th, unless anything has changed.

12   We identified October 24th.

13       We also proposed a second date that appears to work for

14   everybody, both sides, including all witnesses, and that's

15   November 14th.  We know that is outside of your second request,

16   which was the week of the 31st, but we were at least able to

17   find two dates that work for everybody if the Court has

18   availability.

19         **THE COURT:**  October 24th works better for me.  We will

20   set it for October 24th at -- we will start at 8:30 a.m.

21       Now, the way I do this in my patent cases is I start with

22   the party who is going to give me the big picture.  So I need

23   to understand the forest before I can understand the trees.

24   It's not good or bad; it's just the way my brain works.  So --

25   and it is not a -- it's not a reflection on anything.  We

1    just -- all of our brains work in different ways.  And that's

2    how I need to understand.

3        So I want to understand all the big-picture issues first

4    before we get into the nitty-gritty.  Okay?  Questions?

5    Because I'm going to let you come up with the -- I mean, I'm

6    hoping that you can come up with the appropriate presentation

7    of witnesses.  If you can't do that, then we'll have a

8    discussion right now and I'll tell you, but my hope would be

9    that you would be able to do this.

10        **MR. BROOME:**  So, Your Honor, I think from our

11    perspective, I think Google would probably be the forest.  It

12    would probably make sense to have our witnesses explain the

13    technologies that do the collecting before we get into how that

14    collection may be affected by privacy settings, but I'm not

15    sure if Mr. Straite disagrees.

16        **MR. STRAITE:**  If we're going to start with the forest,

17    then that seems sensible, Your Honor.  We can work with Google

18    to figure out the order.  From our perspective, we would go

19    first with -- probably Dr. Shafiq, who is most capable of

20    describing the forest before going into the details.

21        **THE COURT:**  Okay.  In terms of Google, obviously --

22    and if it's not clear in the order, right, I also need to know

23    what information is collected when you're using, for instance,

24    the Chrome browser and how that varies, if at all, if you're

25    using some other browser, say, like Safari; right?  So let's

1   make sure that that gets put in there as well.

2            **MR. STRAITE:**  Yes, Your Honor.

3            **THE COURT:**  And it is fine with me if what you end up

4   doing is jumping between primary witnesses.  Right?  Perhaps

5   you're starting with an expert and then you're moving to the

6   Google people and then you're going back to someone else.  This

7   is not -- this is not intended to be argument by plaintiffs,

8   argument by consumer experts.  I want to understand the

9   technology.  Everybody understand?

10           **MR. STRAITE:**  Yes, Your Honor.

11           **MR. BROOME:**  Understood, Your Honor.

12           **THE COURT:**  Okay.  So that's here in the federal

13  courthouse in Oakland, Courtroom 1, live.

14      Does anybody have any questions, or do we have a plan?

15           **MR. BROOME:**  I think we have a series of additional

16  questions, Your Honor.  I can go through them one by one.

17      The first would be deposition designations and a time for

18  exchange.  Your Honor's pretrial order calls for 28 days.  I

19  recognize this is not exactly a trial, but --

20           **THE COURT:**  It's not -- it's not a trial.

21           **MR. BROOME:**  It's not a trial.

22           **THE COURT:**  Let me be clear.  It is not a trial.  And

23  I think the question is, you know, you can -- if nobody is

24  going to be able to sit there and explain all of this detail to

25  me or hasn't done it in a deposition, I don't know why I would

1    read it in advance.  So it seems to me that -- well, is there

2    anything I have to read in advance in order to prepare?

3          **MR. BROOME:**  Not from our perspective, Your Honor.  I

4    understand the plaintiffs intend to submit deposition

5    designations, and the only reason I raise it is so that we

6    could get those sufficiently in advance so that we can

7    counter-designate, to the extent necessary.

8          **THE COURT:**  Okay.

9       Mr. Straite, what is it in those designations, having not

10   heard any testimony first -- how is that going to educate me in

11   advance?

12         **MR. STRAITE:**  Okay.  So each witness will have had a

13   different take, but these witnesses will describe the data flow

14   from Chrome specifically to Google.  We have other --

15         **THE COURT:**  I'm not going to get that with the

16   witnesses who have been identified?

17         **MR. STRAITE:**  They are the witnesses we are

18   identifying.  So we are limiting for the 30(b)(1) deposition

19   transcripts the names we've already mentioned.  So it would

20   actually reduce the scope of -- I apologize.  Your Honor was

21   speaking.

22         **THE COURT:**  I'm not going to read them twice; right?

23   Sometimes I read things in advance because it expedites the

24   proceedings, but I'm viewing this in many ways as almost like a

25   tutorial like I do with all my patent cases.  I want to

1    understand much more of the nitty-gritty than I'm getting.

2         So it is not at all clear to me that reading some version

3    in some way in a deposition transcript where there hasn't been

4    kind of a clear presentation of what's going on -- how that's

5    going to help me.  So it almost feels like you want me to read

6    it in advance, then I come to the hearing, and then I'll have

7    to go back and read it again.  That's not efficient.

8         **MR. STRAITE:**  Right.  And we wouldn't be designating

9    the entire deposition transcripts but certain portions.  So,

10   for example, Mr. Barnes took the deposition of Mr. Kleber, and

11   he did testify about the functioning of the browsers exactly as

12   Your Honor is trying to get insight into.

13        So, Jay -- I'm sorry -- Mr. Barnes, you have an example

14   from Mr. Kleber's deposition.

15        **MR. BARNES:**  Your Honor, I don't have the direct quote

16   in front of me.  I'm searching for it as quickly as I can, but

17   essentially Mr. Kleber testified that with respect to cookies,

18   all browsers work differently.

19        **THE COURT:**  Okay.  That's argument; right?  Or it's

20   cross-examination; right?  I am sure that your perspective on

21   this and Google's perspective on this is not the same.  Cherry

22   picking a statement out of a deposition doesn't help me.  I'm

23   trying to understand more globally what is going on.  And

24   that's my concern.  When you take a deposition, you can take it

25   for a lot of various purposes, but what I don't get is the

1    opposing side who's defending the deposition, their perspective

2    on what has just been testified to.

3         So if he says on the stand they're all different and

4    you've got a quote from him that says they're all the same, I

5    expect to hear that on your cross.  I don't expect that someone

6    is going to sit there and say, "Oh, Judge, by the way, look at

7    the deposition transcript;" right?

8              **MR. STRAITE:**  Okay.

9              **MR. BARNES:**  Your Honor --

10             **THE COURT:**  Am I missing something?

11             **MR. STRAITE:**  We hear you, Your Honor.  And we can get

12   the testimony we need through live testimony at the hearing on

13   the 24th.  That is not a problem.

14             **THE COURT:**  And I can read something after, too.  I

15   just -- I don't know that you've got anything in transcripts

16   that -- where I don't have a big enough context where it's

17   going to help me.

18             **MR. STRAITE:**  Your Honor, we're happy to do that.  We

19   can get the testimony we need through live testimony, and we

20   appreciate Google making the European witnesses available --

21   that's something that is on the list -- I think via Zoom, if

22   that is something amenable to the Court.

23             **THE COURT:**  Okay.  What was the last thing you said?

24             **MR. STRAITE:**  We understand that Google is willing to

25   make the three European witnesses available to testify at the

1  hearing via Zoom, if the Court were amenable to that rather

2  than making them travel across the ocean.

3  **MR. BROOME:**  Your Honor, we don't think the foreign

4  witnesses are necessary to this at all.  I mean, they really

5  have limited -- none of them actually work with the services at

6  issue here.  And the two witnesses that we were going to put up

7  live in your courtroom, Dr. Berntson and Mr. Ganem, can provide

8  you full context on the technology and the collection here.

9  I think, from our perspective, having gone back and looked

10  at the transcripts that plaintiffs have identified, foreign

11  witnesses, they are -- it really is a matter of soundbites.

12  It's not at all about nitty-gritty technology.

13  **THE COURT:**  Who are the European witnesses?

14  **MR. BARNES:**  Your Honor, Mr. Mardini and Mr. Eisenger

15  are the lead -- from our understanding, the lead engineers in

16  charge of Chrome Trust and Safety who look at the type of data

17  that flows in and out of the Chrome browser.

18  **MR. STRAITE:**  Your Honor, to answer your question,

19  there is a third European witness.  That is Ms. Sabine Borsay.

20  **MR. BARNES:**  And I believe Ms. Borsay is also on the

21  Trust and Safety Team.  I did not take her deposition.  I'm not

22  as familiar with Ms. Borsay.  She is also an engineer, I

23  believe.

24  **MR. BROOME:**  I don't believe she is an engineer.  I

25  can double check that.

1          **THE COURT:**  Okay.

2          **MR. BROOME:**  And -- I'm sorry.

3          **THE COURT:**  So --

4          **MR. BARNES:**  Ms. Weaver texted me, Your Honor.  She is

5     not an engineer.  She is the Chrome product manager.

6          **THE COURT:**  All right.  I will allow them to testify

7     through Zoom.

8          **MR. STRAITE:**  Thank you, Your Honor.

9          **THE COURT:**  All right.  Next question -- back on the

10    depo designations, to the extent you think I need to read them,

11    I'll read them after.  I'm not going to read them before.

12         **MR. STRAITE:**  Thank you, Your Honor.

13         **MR. BROOME:**  The next item I think is basically

14    covered, Your Honor.  The plaintiffs wanted to -- and maybe

15    Mr. Straite can correct me if I'm wrong here -- but submit

16    additional 30(b)(6) designations, so beyond those identified on

17    their witness list.  But if that's being done by designation

18    only and Your Honor's willing to read them after the fact, then

19    I don't think we have any issue with that.

20         **THE COURT:**  Okay.  What else?

21         **MR. BROOME:**  Exchanging exhibits.  This really comes

22    back, again, to the scheduling, Your Honor.  We need a process

23    for exchanging exhibits.  We, Google, don't have many, if any,

24    exhibits that we intend to use.  Maybe some publicly available

25    documentation.  But to the extent the plaintiffs intend to

1    submit documents, we would like an orderly process so that we

2    can get those well in advance and submit any objections, to the

3    extent we have any.

4         **THE COURT:**  Well, I'm not going to look at objections

5    before.  So I can rule on objections the day of.  I don't have

6    a jury here so there is no prejudice.  And I have to look at it

7    in any event.

8         **MR. BROOME:**  In that case, Your Honor, I think we're

9    really just looking for a date certain to get the list of

10   exhibits, and we would propose as early as possible, three

11   weeks in advance.

12        **MR. STRAITE:**  Your Honor, we have no objection to

13   pre-identifying exhibits.  Three weeks seems a bit extensive.

14   It would probably be more efficient, give more time to narrow

15   the scope -- we propose one week, but we're happy to work it

16   out with Mr. Broome.  We agree in concept it's not a problem of

17   pre-identifying exhibits.

18        **THE COURT:**  How many -- what kind of exhibits do you

19   anticipate?

20        **MR. STRAITE:**  Primarily, Your Honor, it would be

21   documents that we have -- we have received in discovery, many

22   of them recently, that relate specifically to the technology,

23   how browsers work, what information is sent from Chrome to

24   Google, including comparisons to other browsers.  That's in the

25   documents produced by Google.  We would be very selective.

1    **THE COURT:**  All right.  Well, the hearing is on the

2    24th, so I think two weeks is more than sufficient.

3    October 3rd to the other side --

4    **MR. STRAITE:**  Your Honor, did you say the hearing is

5    the 24th?  Two weeks would be the 10th.

6    **MR. BROOME:**  Although we would prefer October 3rd.

7    **THE COURT:**  October 5th.

8    **MR. BROOME:**  Okay.

9    **MR. STRAITE:**  Just to clarify, that's the deadline for

10    mutual exchange, Your Honor?

11    **THE COURT:**  Yes.

12    **MR. STRAITE:**  Thank you.

13    **THE COURT:**  All right.  So October 5th to exchange.

14    October 12th for any supplemental in light of what you've seen,

15    the other side, in case that that occurs, and then I want hard

16    copies in binders delivered to the Court by October 19th, and

17    binders no bigger than three inches.

18    **MR. STRAITE:**  Do you prefer single-sided or

19    double-sided?

20    **THE COURT:**  So I want them -- I want them tabbed,

21    right, on the side.  Tabbed.  You know, you can figure that

22    out, right, in terms of numerical designation.  I don't know

23    exactly where I'm going with this, but to the extent that

24    they're actually admitted, you need to have with you to give to

25    the clerk of the court the -- you should have each of them,

1   just like I do in trial, separately in manila folders.  If I

2   admit it, then you give the folder to the clerk of the court,

3   and that becomes the court copy.

4       I write all over my stuff so my copy would not be enough.

5   And I need one for my clerk as well.  So two copies of the

6   exhibits.  You deliver two copies, but you have an official

7   version with you on the day of the hearing.

8           **MR. STRAITE:**  Yes, Your Honor.

9           **MR. BROOME:**  Understood.

10          **THE COURT:**  Again, I don't know exactly how you're

11  going to present.  To the extent you use -- have any of you

12  done patent work or not?

13          **MR. BROOME:**  Not me, Your Honor.

14          **MR. STRAITE:**  No, Your Honor.  If there is anyone else

15  on the team, they can speak up now, but I don't believe so.

16          **THE COURT:**  So sometimes what I get from lawyers in

17  patent cases, they have presentations that are organic,

18  dynamic, and when I get those, I get a copy of a CD that has it

19  on it because otherwise, it's hard to recreate it.  Okay?  So,

20  again, I don't know what you're doing.  If you think you're

21  doing something like that, then make sure to try to document it

22  in some way.  Okay?

23          **MR. STRAITE:**  Yes, Your Honor.

24          **THE COURT:**  Okay.  Other questions, Mr. Broome?

25          **MR. BROOME:**  Thank you, Your Honor.

1      The next topic is experts.  I don't believe there has been

2   expert testimony.  There hasn't been a lot of expert testimony

3   from the plaintiffs on this issue.  I think there has been one

4   report that was submitted with the class certification motion

5   reply brief to which we've objected.  So we believe that the

6   expert testimony we'll see at the hearing will be new, and we

7   would like or we would request an expert report in advance or

8   at least something that gives us some indication as to what the

9   expert plans to testify.

10      **THE COURT:**  Well, which experts are going to testify?

11   I didn't circle any on my list.  I haven't circled any expert's

12   name.

13      **MR. BROOME:**  Dr. Shafiq -- go ahead David --

14   Mr. Straite.

15      **MR. STRAITE:**  Sure.  Thanks.

16      Dr. Zubair Shafiq and Richard Smith are the two experts

17   that we propose to question at the beginning, and we also --

18      **THE COURT:**  The first one -- oh, Zubair, Z-U-B-A-I-R,

19   Shafiq, S-H-A-F-I-Q?

20      **MR. STRAITE:**  Yes, Your Honor.  He is at U.C. Davis.

21      **THE COURT:**  Okay.  Do they have anything that they can

22   provide in writing?  Has one of them been deposed, you said --

23      **MR. BROOME:**  I'm sorry, Your Honor.  They've both been

24   deposed, just not on these particular issues.  And the reason

25   we think it's important that we get something in writing in

1    advance is because we strongly suspect that there will be some

2    testing conducted, and we want to be able to look at the tests

3    so that we can effectively cross-examine the witnesses at the

4    hearing.

5        **THE COURT:**  Again, we can set the second date.  If you

6    don't -- I know that this is unusual so if I have to have a

7    second hearing, I'll have a second hearing, but I think

8    certainly what can be identified in advance are the opinions

9    that they will have and -- let's say -- well, tell me,

10    Mr. Straite, what do you have so far, if anything?

11        **MR. STRAITE:**  Right.  So Dr. Shafiq does have --

12    Mr. Broome is correct.  He does have a report in the context of

13    class certification.  He could expound on that regarding

14    testing of the browsers and demonstrating exactly what

15    Your Honor wants, which is how do the browsers function

16    differently with different settings, within different websites,

17    what gets sent to Google.  So he could illustrate that pretty

18    effectively.

19        Richard Smith in similar fashion but from a different

20    perspective.  Those are the only two that we would seek to

21    call.

22        **THE COURT:**  What do you have from Smith?

23        **MR. STRAITE:**  Mr. Smith also has an expert report in

24    support of class certification.  Mr. Smith observed data flow

25    from Chrome browser to Google.  He did not look at the data

1    logs at Google that.  That was more Dr. Shafiq.  So his

2    research was more from the perspective observing the Chrome

3    browser on a consumer's computer and seeing how the data flows

4    to Google.

5            **MR. BROOME:**  Your Honor, I believe Dr. Shafiq did that

6    as well.  Maybe more efficient to have just one of these

7    experts as opposed to two if they are covering the same issues.

8            **THE COURT:**  Well, I don't know what they're going to

9    cover so I can't really -- I certainly don't have time to waste

10   so I'm not interested in having things repeated.

11           **MR. STRAITE:**  There will be no duplication between

12   them, Your Honor.  We hear you.

13           **THE COURT:**  Okay.  Well, what can you get to the

14   defendants in advance?

15           **MR. STRAITE:**  We could give an outline of what each of

16   the experts would seek to testify to so there won't be a

17   surprise.  We assume that Google will do the same if there's

18   any expert on their side, that we would receive a similar

19   outline of what they seek to testify to.  Mr. Broome?

20           **MR. BROOME:**  Yes.  Your Honor.  Well, I think, again,

21   as I said earlier -- I think we have our expert identified more

22   as a rebuttal expert so we are really looking to see what the

23   plaintiffs intend to say before we determine whether we

24   actually put on our expert in response.

25           **THE COURT:**  All right.  And it sounds like that would

1    be something good for me to have, too.

2        When can you file something, Mr. Straite?

3        **MR. STRAITE:**  Do you want us to follow the same

4    schedule you have for the exchange of exhibits?

5        **THE COURT:**  Sure.  So you will file on October 5th

6    what is effectively an outline of their testimony and their

7    opinions, right, specific opinions, and then a response from

8    the defense on the 12th.  Does that work?

9        **MR. BROOME:**  That works, Your Honor.  I would just,

10   for sake of clarity, ask that to the extent the opinions are

11   based on tests conducted, that we actually get the tests and

12   the data so that we can examine it along with the outline.

13       **MR. BARNES:**  Your Honor, may I ask a question?

14       **THE COURT:**  You may.

15       **MR. BARNES:**  As I understand it, Google plans to put

16   Mr. Berntson on first.  He is an engineer.  He -- Mr. Berntson

17   is -- Dr. Berntson.  He is also an expert, and to the extent

18   that we're disclosing testimony that we expect to give about

19   data flow, we ask that Google also provide the same information

20   to us in response from its engineers that it intends to call to

21   discuss this issue.  We think that would be fair, that both

22   sides disclose this information.

23       **THE COURT:**  I agree.  It will be a mutual exchange.

24   Okay.

25       More questions, Mr. Broome?

1              **MR. BROOME:**  I believe that is it from me, Your Honor.

2    I think my colleague, Ms. Trebicka, may have something to say

3    regarding one of the European witnesses.

4              **THE COURT:**  Okay.

5              **MS. TREBICKA:**  Good morning, Your Honor.

6         I wanted to circle back on the European witnesses because

7    Ms. Sabine Borsay is not an engineer and has -- is a German

8    national living in Germany and has significant issues with time

9    constraints because she's a mother of a newborn and has a child

10   at home, so testifying would be quite a burden for her.  We --

11   especially given that she's not an engineer.

12        We would ask that she be excused from testifying, and we

13   don't think that there is anything in her testimony that would

14   elucidate the issues anyway.

15             **MR. BROOME:**  I will add to that, Your Honor.  I think

16   testifying remotely -- we did these depositions with the German

17   witnesses by bringing them to Switzerland because of issues

18   with German law that limits the ability to conduct examinations

19   of German nationals, and I'm forgetting the issue exactly, but

20   maybe somebody else on the call remembers, but I believe we

21   would not be able to have Ms. Borsay simply testify remotely

22   from Germany.

23        Is that correct?

24             **MS. TREBICKA:**  Yes, that is correct, Your Honor.

25   German law forbids such American-style depositions, and we've

1  had to enter -- or to conduct a very extensive process to get

2  Ms. Borsay to testify in this matter, and she has sat for a

3  deposition.

4          **MS. WEAVER:**  If I may, having been the one who

5  negotiated this -- and I don't think the people on Google's

6  team is here -- you can have witnesses testify under German law

7  at the Embassy.  At the time that we reached the accommodation

8  to allow them to be deposed in Switzerland, that was

9  COVID-related because the Embassies were closed.  So these

10  witnesses can all go to a German Embassy.

11      The other thing we will note is that in this case, for

12  example, with Mr. Mardini, Google has made these witnesses

13  available when it wants them to testify on their behalf, so I

14  do think an accommodation can be reached here, and we're happy

15  to negotiate that with Google.

16          **THE COURT:**  Well, I don't know that the other men have

17  newborns, Ms. Weaver, so I'm not --

18          **MS. WEAVER:**  That is true.

19          **THE COURT:**  And she's not an engineer.  So it seems to

20  me that this may be one person whose deposition, if you've

21  already taken it, might be the more appropriate thing to do.

22  It's a videotaped deposition?  I don't know if that matters or

23  not.  But I read much faster than your videos operate.  And,

24  again, I can always have another session.

25          So my inclination is to hold on Borsay, given her personal

1    and unique circumstance.  See if -- we'll figure out whether

2    the deposition transcripts are enough, and if not, then we'll

3    figure out when I'm on the East Coast, and we'll do it remotely

4    when I'm on the East Coast so it's less work for someone -- it

5    will be more work for you.  You can all wake up at 5:00.  I can

6    wake up at 8:00.  So it will be 4:00 for her.  We will figure

7    it out.

8            MS. WEAVER:  Understood, Your Honor.

9            MS. TREBICKA:  Thank you, Your Honor.

10           THE COURT:  Okay.  What else do we have?

11           MR. BROOME:  I think that's it from Google,

12    Your Honor.  Thanks for taking the time to go through the list.

13           THE COURT:  Okay.

14       Mr. Straite, anything from you?

15           MR. STRAITE:  I think that's it for plaintiffs,

16    Your Honor.  I think I speak also for Mr. Broome when we say we

17    appreciate you taking the time to have this prep call.  It did

18    clarify a lot.

19           THE COURT:  Okay.  What I'd like you to do is there

20    are a lot of specifics -- is I'd like you all to do a form of

21    order regarding the evidentiary hearing.  Make sure that you

22    agree.  If you don't agree, then you can highlight that in a

23    proposed form of order, and then I can resolve it based on my

24    own memory.

25           MR. STRAITE:  Yes, Your Honor.  When would you like

1    that form of order?

2         THE COURT:  Sooner rather than later, like tomorrow or

3    the next day while it's fresh.  Tomorrow.  Let's just say

4    tomorrow.

5         MR. STRAITE:  We can do that.

6         THE COURT:  And I am going to be on the East Coast the

7    week of November 17th so if I had to, I could do something on,

8    let's say, the 18th of November 8:00 a.m. East Coast time.

9         MR. BROOME:  That's helpful.

10         THE COURT:  If I had to.

11         MR. STRAITE:  We'll reserve the 18th just in case,

12    Your Honor, but I'm assuming there is a good chance we won't

13    need it, but if we do, we will have it reserved.

14         THE COURT:  Okay.  All right.  Looking forward to it.

15    Should be interesting.

16         MR. BROOME:  Thank you very much, Your Honor.

17         THE COURT:  We're adjourned.

18              (Proceedings adjourned at 10:49 a.m.)

19

20

21

22

23

24

25

1

2

3                        <u>CERTIFICATE OF REPORTER</u>

4            I certify that the foregoing is a correct transcript

5    from the record of proceedings in the above-entitled matter.

6

7    DATE:    Wednesday, September 21, 2022

8

9    *Pamela Batalo Hebel*

10   _____
     Pamela Batalo Hebel, CSR No. 3593, RMR, FCRR
11   U.S. Court Reporter

12

13

14

15

16

17

18

19

20

21

22

23

24

25