# GOOGLE LLC'S NOTICE OF MOTION AND MOTION FOR RELIEF REGARDING PRESERVATION

# Redacted Version of Document Sought to be Sealed

**QUINN EMANUEL URQUHART & SULLIVAN, LLP**

Diane M. Doolittle (CA Bar No. 142046)
dianedoolittle@quinnemanuel.com
Sara Jenkins (CA Bar No. 230097)
sarajenkins@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

Andrew H. Schapiro (admitted *pro hac vice*)
andrewschapiro@quinnemanuel.com
Teuta Fani (admitted *pro hac vice*)
teutafani@quinnemanuel.com
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606
Telephone: (312) 705-7400
Facsimile: (312) 705-7401

Stephen A. Broome (CA Bar No. 314605)
stephenbroome@quinnemanuel.com
Viola Trebicka (CA Bar No. 269526)
violatrebicka@quinnemanuel.com
Crystal Nix-Hines (CA Bar No. 326971)
crystalnixhines@quinnemanuel.com
Alyssa G. Olson (CA Bar No. 305705)
alyolson@quinnemanuel.com
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017

Josef Ansorge (admitted *pro hac vice*)
josefansorge@quinnemanuel.com
Xi ("Tracy") Gao (CA Bar No. 326266)
tracygao@quinnemanuel.com
Carl Spilly (admitted *pro hac vice*)
carlspilly@quinnemanuel.com
1300 I Street NW, Suite 900
Washington D.C., 20005
Telephone: (202) 538-8000
Facsimile: (202) 538-8100

Jomaire Crawford (admitted *pro hac vice*)
jomairecrawford@quinnemanuel.com
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100

Jonathan Tse (CA Bar No. 305468)
jonathantse@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, CA 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

*Attorneys for Defendants Google LLC*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION

| | |
|---|---|
| PATRICK CALHOUN, et al., on behalf of themselves and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>GOOGLE LLC,<br><br>Defendant. | Case No. 4:20-cv-05146-YGR-SVK<br><br>**GOOGLE LLC'S NOTICE OF MOTION AND MOTION FOR RELIEF REGARDING PRESERVATION**<br><br>Referral:      Hon. Susan van Keulen, USMJ<br>Hearing Date:  November 22, 2022<br>Time:          10:00 a.m.<br>Crtrm.:        6 – 4th Floor___ |

**NOTICE OF MOTION AND MOTION FOR RELIEF REGARDING PRESERVATION**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE, on November 22nd at 10:00 a.m., or as soon thereafter as this motion may be heard in the above-entitled court, before the Honorable Susan Van Keulen of the United States District Court, Northern District of California at Courtroom 6 – 4th Floor, 280 South 1st Street, San Jose, California, Defendant Google LLC ("Google") will and hereby does move the Court for relief from the Court's July 15 Order Adopting in Part and Modifying in Part Special Master's May 23, 2022 Report and Recommendation Re Preservation Plan (Dkt. 766) and August 5, 2022 Order on (1) Google's Administrative Motions for Extension/Clarification of Preservation Plan Orders; and (2) *Calhoun* Plaintiffs' Administrative Motion for Clarification of Preservation Plan Order (Dkt. 815) (collectively, the "Preservation Orders").

Google's Motion is based on this Notice of Motion and Motion; the accompanying Memorandum of Points and Authorities; the concurrently filed Declarations of Larry Greenfield ("Greenfield Decl."), Benjamin Kornacki ("Kornacki Decl."), Jifei Gao ("J. Gao Decl."), Julian Kranz ("Kranz Decl."), Patrick Quaid ("Quaid Decl."), Joshua Halstead ("Halstead Dec."), Danny Talavera ("Talavera Dec."), Daryl Seah ("Seah Decl."), Srilakshmi Pothana ("Pothana Decl."), and Tracy Gao ("Gao Decl."); all matters of which the Court may take judicial notice; other pleadings and papers on file in this action; and other written or oral arguments that Google may present to the Court.

**RELIEF REQUESTED**

Google respectfully seeks relief from (i) ongoing implementation of field-based GAIA ███ and ZWBK ███ preservation, and (ii) preservation of ████████ linking tables and ██ Analytics mapping tables.

1
2

# TABLE OF CONTENTS

Page

3   I.      INTRODUCTION ................................................................................................1

4   II.     PROCEDURAL AND FACTUAL BACKGROUND ..........................................3

5          A.     The Court's Preservation Orders ...............................................................3

6          B.     Preservation Of Mapping And Linking Tables .........................................4

7          C.     Google's Implementation Of The Court's Preservation Requirements .....5

8                 1.     Implementation Of ▮▮▮▮ Field-Based Preservation Requirements ...........7

9                 2.     Implementation Of Preservation Of Mapping And Linking Tables
                         Requirements ...............................................................................8

10  III.    ARGUMENT ......................................................................................................11

11         A.     Relief From Field-Based Preservation In ▮▮▮▮ Is Warranted Under Rule
12                26 ...............................................................................................................11

13                1.     The Burden And Expense Of The ▮▮▮▮ Field-Based Preservation
                         Clearly Outweighs Its Purported Benefit .....................................11

14                2.     Plaintiffs Have Failed To Establish The Importance Of The ▮▮▮▮
15                       Field-Based Data To Their Claims Or Damages .........................13

16                3.     The Parties' Respective Resources Do Not Justify The Onerous
                         Burdens ▮▮▮▮ Field-Based Preservation Requires ........................15

17
18                4.     At A Minimum The Court Should Require Plaintiffs To Pay All
                         Costs Associated With Preservation Of The ▮▮▮▮ Field-Based
                         Data ...............................................................................................16

19
20         B.     Limited Relief From The Court's Order Regarding Preservation Of "All
                  Mapping And Linking Tables" Is Warranted ..........................................17

21                1.     The Burden And Expense Of Preserving The ▮▮▮▮▮▮▮▮
22                       Tables And The ▮▮▮ Analytics Tables Outweighs Any Illusory
                         Benefit They May Have ...............................................................17

23                2.     Google's Preservation Of Mapping And Linking Tables Is
                         Consistent With The Court's Guidance And Orders....................19

24  IV.     CONCLUSION ..................................................................................................21
25

26
27
28

# **TABLE OF AUTHORITIES**

**Page**

## **Cases**

*Apple Inc. v. Samsung Elecs. Co.*,
  2011 WL 1938154 (N.D. Cal. May 18, 2011) ................................................. 21

*Apple Inc. v. Samsung Elecs. Co.*,
  2013 WL 4426512 (N.D. Cal. Aug. 14, 2013) ................................................ 11

*Boeynaems v. LA Fitness Int'l, LLC*,
  285 F.R.D. 331 (E.D. Pa. 2012) ....................................................................... 16

*Elgindy v. Aga Serv. Co.*,
  2021 WL 5083761 (N.D. Cal. Nov. 2, 2021) ................................................ 13

*Finjan, Inc. v. ESET, LLC*,
  2018 WL 5263243 (S.D. Cal. Oct. 23, 2018) ................................................. 14

*Glob. Tech., Inc. v. Ningbo Swell Indus., Co.*,
  2021 WL 5443272 (E.D. Mich. Apr. 27, 2021),
  *reconsideration denied*, 2021 WL 2283745 (E.D. Mich. June 4, 2021) ................. 17

*Hegarty v. Transamerica Life Ins. Co.*,
  2021 WL 4899482 (N.D. Cal. Oct. 21, 2021) ................................................ 20

*In re Bard IVC Filters Prods. Liability Litig.*,
  317 F.R.D. 562 (D. Ariz. 2016) ...................................................................... 14

*Lawson v. Spirit AeroSystems, Inc.*,
  2020 WL 3288058 (D. Kan. June 18, 2020),
  *aff'd*, 2020 WL 6939752 (D. Kan. Nov. 24, 2020) ...................................... 15

*Lickerish, Inc. v. PicClick, Inc.*,
  2022 WL 2812174 (N.D. Cal. July 18, 2022) ............................................... 15

*Lord Abbett Mun. Income Fund, Inc. v. Asami*,
  2014 WL 5477639 (N.D. Cal. Oct. 29, 2014) ......................................... 11, 13

*Nevro Corp v. Bos. Sci. Corp.*,
  2018 WL 538612 (N.D. Cal. Jan. 24, 2018) ................................................. 13

*Noble Roman's, Inc. v. Hattenhauer Distrib. Co.*,
  314 F.R.D. 304 (S.D. Ind. 2016) .................................................................... 16

*Nyberg v. Zurich Am. Ins. Co.*,
  2016 WL 11671468 (D. Kan. June 21, 2016) ............................................... 15

*Quintana v. Claire's Boutiques, Inc.*,
  2014 WL 234219 (N.D. Cal. Jan. 21, 2014) ................................................. 14

*Rowe Ent., Inc. v. William Morris Agency, Inc.*,
  205 F.R.D. 421 (S.D.N.Y. 2002) .................................................................... 17

*U.S. ex rel. Carter v. Bridgepoint Educ., Inc.*,
   305 F.R.D. 225 (S.D. Cal. 2015) .......................................................................... 16

*White v. James*,
   2018 WL 6174728 (C.D. Cal. Jan. 23, 2018) ...................................................... 13

**Rules and Regulations**

Fed. R. Civ. P. 26(b)(1) ........................................................................ 2, 11, 13, 15

Fed. R. Civ.P. 26(b)(2)(C) ........................................................................................ 16

Fed. R. Civ. P. 37(e) ..................................................................................... 11, 16

**Additional Authorities**

███████████████████████████████████████████████████ .......................... 2

██████████████████████████████████████████████████████████ .......... 1

███████████████████████████████████████████████████████████

██████████████████████████████ ...................................................... 8

*The Sedona Principles, Third Edition*, 19 SEDONA CONF. J. 1, Cmt. 5.e., 108 (2018) .............. 16

Shira A. Scheindlin & Daniel J. Capa, *Electronic Discovery and Digital Evidence* 314
   (2009) .............................................................................................................. 16

### MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Google has worked tirelessly to comply with this Court's July 15 and August 5, 2022 Preservation Orders ("Preservation Orders") and has successfully identified and preserved an enormous quantity of data.  Indeed, as of October 2022, Google engineers have spent more than ▮▮▮▮▮ designing and implementing pipelines for daily sampled preservation of ▮ data sources, full snapshots of ▮▮ data sources, mapping and linking tables, and field-based preservation of ▮▮ ▮▮▮ logs and ▮▮▮ of ▮▮ columns.  Kornacki Decl. ¶ 4; Quaid Decl. ¶ 4; J. Gao Decl. ¶ 3; Halstead Decl. ¶ 3; Kranz Decl. ¶ 3. Taken together, Google anticipates that the implementation of all parts of the Court's Preservation Orders that it is not seeking relief from below will require it to store over ▮▮▮▮▮▮▮▮▮ of data for just the first year.  *See* Greenfield Decl. ¶ 10; *see infra* at n.4.  The aggregate cost of such preservation is more than ▮▮▮▮ in the first year alone. Greenfield Decl. ¶ 11.

However, relief from the enormous technical and financial burdens of full field-based preservation for GAIA ▮▮▮ and ZWBK ▮▮▮ is imperative. GAIA ▮▮▮ and ZWBK ▮▮▮ are key-value databases that store large quantities of data and Google is currently unable to filter by field names or field values (including user location) despite devoting significant resources to this challenge.  Quaid Decl. ¶¶ 7-8.  As a result, compliance with the Court's Preservation Orders requires storage of an astronomical amount of data—approximately ▮▮▮▮ of existing data and ▮▮▮▮ of new data written on a daily basis into the pipelines.  *Id.* ¶ 9.  Without court intervention, by the end of the first year, this data collection will balloon to approximately ▮▮ ▮▮▮ of data from the field-based ▮▮▮ preservation pipelines alone. *See infra* at n.7.  To put this volume in context, ▮▮▮▮ of data is equal to more than ▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ .[1]  The costs for storing this data would skyrocket at exponential

---

[1] ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

1    rates: approximately ▬▬▬ in the first year, ▬▬▬ in the first two years, and a staggering

2    ▬▬▬ if this preservation lasts three years. Greenfield Decl. ¶ 15.  It is this alarming burden

3    that has prompted Google to seek relief from ▬▬ field-based preservation.

4           The extreme shortages of storage space and component parts that the entire computing

5    industry is currently facing underscore the burden storage of this immense amount of data imposes:

6    ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

7    ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬. *Id.* ¶¶ 3-4.  ▬▬▬▬▬▬▬▬▬▬▬

8    ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬. *Id.* ¶ 4.

9    The storage demands resulting from the Court's Preservation Orders place further significant strain

10   on those resources.  *Id.*

11          Against this immense burden, Plaintiffs have never articulated any reason why they need

12   full field-based preservation of ▬▬▬, how they would use it, or why the daily sampling of these

13   keyspaces is insufficient.  Nor can they.  As demonstrated below, this preservation fails the tests of

14   relevance and proportionality under Federal Rule of Civil Procedure 26(b)(1).  Accordingly, Google

15   respectfully requests that the Court relieve it from ▬▬▬ field-based preservation.  At a minimum,

16   the Court should require Plaintiffs to incur the costs of this preservation in light of the

17   disproportionate burdens it imposes for no plausible benefit.

18          In addition to ▬▬▬ field-based preservation, Google also seeks relief from preserving ▬▬

19   mapping and linking tables (▬▬▬▬▬ and Analytics tables) whose preservation similarly

20   imposes a disproportionate burden on Google with minimum benefit.  In particular, the ▬▬

21   ▬▬▬▬ tables contain links that are derived from other tables that are being separately

22   preserved. Seah Decl. ¶ 5. And the ▬▬ Analytics tables are not needed to work with the preserved

23   data because any Analytics-related data preserved will be keyed to GAIA, and no Analytics tables

24

25

26

27   ────────────

28   ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

1    map a different identifier to GAIA. Pothana Decl. ¶ 5.[2]

2         Finally, heeding this Court's admonition to bring issues to the Court and not to engage in

3    "self-help," Google identifies in this motion the criteria it is applying to comply with the Court's

4    Orders to preserve "all mapping and linking tables."  These criteria are fully consistent with the

5    Court's statements at the August 4, 2022 hearing as well as its Preservation Orders.  As detailed

6    below, any other interpretation would be unreasonable and subject Google to a variety of

7    unwarranted and disproportionate preservation burdens.

8    **II.     PROCEDURAL AND FACTUAL BACKGROUND**

9         **A.    <u>The Court's Preservation Orders</u>**

10         The Court referred the dispute between the parties over the scope of Google's preservation

11    requirements to the Special Master on October 1, 2021.  Dkt. 329 at 1.  The Special Master

12    recommended a preservation plan under which Google would perform sampling of event-level data

13    from more than ▇ data sources.  Dkt. 604.  The Special Master subsequently submitted a modified

14    plan, recommending:  (i) sampled preservation of ▇ data sources including GAIA ▇ and

15    ZWBK ▇; (ii) full field-based preservation of ▇ data sources including GAIA ▇ and

16    ZWBK ▇; and (iii) a one-time full snapshot of ZWBK ▇ and ▇ other data sources. Dkt.

17    666.  During the preservation discussions, Google offered to perform field-based preservation and

18    sampling in its ▇ logs because engineers had confirmed these types of preservation were

19    possible in ▇.  Google had not had an opportunity to determine whether field-based

20    preservation or sampling was possible in ▇ Dkt. 694-4 at 2-3.

21         On July 15, 2022, the Court issued its Order Adopting in Part and Modifying in Part the

22    Special Master's May 23, 2022 "Report and Recommendation re Preservation Plan." Dkt. 766.  The

23    Court ordered Google to perform a full ongoing preservation of specific fields from the ▇

24    columns Plaintiffs unilaterally selected (*id.* at 10), as well as a daily sampled preservation of ▇ data

25    sources (including GAIA ▇ and ZWBK ▇), a one-time full snapshot of ▇ data

26    

27        ―――――――――――――
    [2]  Google is contemporaneously filing a Motion for Relief Regarding Preservation in *Brown*, which
    includes a similar request for relief from preservation of the ▇ mapping/linking tables discussed

28    herein.

1   sources, and full on-ongoing field-based preservation of ███████ logs.  *Id.*

2       Following this Order, Google (i) requested clarification as to whether it could remove GAIA

3   ID/Zwieback ID from the list of fields triggering preservation of columns in GAIA ██████ and

4   ZWBK ██████ and (ii) requested extensions to the deadline to implement preservation pipelines,

5   including for GAIA ████████ and ZWBK ████████.  Dkts. 786-3, 793-3.  Following a hearing on

6   August 4, 2022, the Court issued an order on August 5, 2022, granting Google's request for

7   clarification regarding GAIA ID/Zwieback ID, and extending the deadline to implement the ████████

8   preservation pipelines to October 28, 2022.  Dkt. 815 at 10, 12.

9       **B.**    **Preservation Of Mapping And Linking Tables**

10      The Special Master's preservation plans did not include a requirement for Google to preserve

11  mapping or linking tables.  Dkt. 604; Dkt. 666.  However, after the Plaintiffs objected, the Court

12  ruled on July 15, 2022 that "[m]apping tables are to be preserved in their entirety."  Dkt. 766 at 8.

13  On July 27, Google confirmed that it was preserving the ████████ mapping table, the only table

14  the parties had ever identified as potentially relevant.  Dkts. 786-3.  At the August 4, 2022 hearing,

15  the Court stated that the Order was not limited to the ████████ mapping table, but instead

16  requires preservation of "all mapping tables."  Google explained that the lack of a clear definition

17  of "mapping table" potentially impeded Google's compliance with the Court's Orders.  *See* Gao

18  Decl. Ex. 1 (8/4/22 Hr'g Tr.) at 101:1-102:16.  The Court responded that "the language that the

19  Court found determinative was that for the – the mapping tables are preserved in the ordinary course,

20  and I took that as not a – not a big ask and – a mapping table is – is what it is.  I mean it is mapping

21  the IDs … It is the mapping tables that … relate to the logs and fields that – that the parties have

22  worked with so intimately over these last 18 months.  I don't think it can be any more clear."  *Id*. at

23  104:5-15.  The Court also explained that "if you would need a mapping table to work with any of

24  the data that is being exchanged in this case, that table has to be preserved."  *Id*. at 106:16-18.

25  Plaintiffs expressed a concern regarding the Court's description of the requirement as relating to

26  "the data in this case," and the Court responded: "I think my order again is perfectly clear … If it

27  doesn't relate to the data in this case, it is never going to come up.  If it relates to the data in this

28  case, it does."  *Id*. at 107:3-8.  Plaintiffs again expressed concern, and the Court responded "That's

1  fine.  That's fine.  It's all mapping tables." *Id*. at 107:13-14.  The Court's August 5, 2022 Order

2  stated that "Preservation Orders require Google to preserve ***all*** mapping and linking tables."  Dkt.

3  815 at 13 (emphasis in original).

4  **C.**     **Google's Implementation Of The Court's Preservation Requirements**

5          As indicated above, Google has expended significant human and financial capital to

6  implement the Court's Preservation Orders, including by:  (i) designing and implementing daily data

7  sampling preservation pipelines for ███████ Ads logs, ██████████ logs, and ███████

8  corpora; (ii) designing and implementing full ongoing field-based preservation pipelines for ███

9  ███ Ads logs and ██████████ logs; (iii) designing and implementing decryption/re-

10  encryption pipelines for all █████ Ads logs subject to the Preservation Orders; (iv) preserving a

11  one-time full snapshot of ZWBK █████; and (v) taking snapshots of ██████████ tables with

12  daily granularity.  Dkt. 815 at 8-13.  Kornacki Decl. ¶¶  4-7; Quaid Decl. ¶ 10; J. Gao Decl. ¶ 3;

13  Kranz Decl. ¶ 3; Talavera Decl. ¶ 2.   Google also expects to meet the Court's October 28, 2022

14  deadline for developing and implementing sample-based preservation pipelines for five large-scale

15  █████ and ███ keyspaces, as well as field-based preservation for GAIA █████ and ZWBK

16  █████.[3]  Quaid Decl. ¶¶ 6-8; Halstead Decl. ¶ 3.  To date, Google subject matter experts have spent

17  more than ██████████ designing, scoping, configuring, implementing, testing, optimizing,

18  debugging, and verifying new pipelines necessary to implement the Preservation Orders. Kornacki

19  Decl. ¶ 4; Quaid Decl. ¶ 4; J. Gao Decl. ¶ 3; Halstead Decl. ¶ 3; Kranz Decl. ¶ 3.  The tables below

20  outline the required storage and conservative cost estimates of the items Google will preserve to

21  comply with the Court's Preservation Orders (excluding the relief sought):

22

23

24

25

26

---

27  [3]   Mindful that the Court said no further extension would be given, Dkt. 815 at 15, Google is
prepared to start preserving GAIA █████ and ZWBK █████ as of the Court-ordered deadline

28  unless the preservation obligations are changed as a result of the Court's ruling on this motion.

**Table 1:**

| Estimated amount of data Google will preserve at one year ( ██ ) | Estimated amount of data Google will preserve at two years ( ██ ) | Estimated amount of data Google will preserve at three years ( ██ ) |
|---|---|---|
| ████ [4] | ████ [5] | ████ [6] |

*See* Greenfield Decl. ¶ 10; Pothana Decl. ¶ 4.

**Table 2**

---

[4] The ██ ( ████ to be precise) equals the sum of: (1) ████ of data stored currently in ██ Ads sampling pipelines; (2) ████ of estimated additional data written daily into ██ Ads sampling pipelines * 365 days; (3) ████ of data stored currently in ██ Ads field-based preservation pipelines; (4) ████ of estimated additional data written daily into ██ Ads field-based preservation pipelines * 365 days; (5) ████ of data stored currently in ██ sampling pipelines; (6) ████ of estimated additional data written daily into ██ sampling pipelines * 365 days; (7) ████ of data stored currently in ChromeSync sampling pipelines; (8) ████ of estimated additional data written daily into ChromeSync sampling pipelines * 365 days; (9) ████ of data stored currently in ChromeSync field-based preservation pipelines; (10) ████ of estimated additional data written daily into ██ ChromeSync field-based preservation pipelines * 365 days; (11) ████ of estimated additional data written daily into GAIA and ZWBK ██ sampling preservation pipelines * 365 days; (12) ████ of estimated additional data written daily into DBL and GAIA ██ sampling preservation pipelines * 365 days; (13) ████ of data stored in the ZWBK ██ snapshot; (14) ████ of data stored in the first quarterly snapshot of the ██ tables subject to preservation; (15) ████ of data stored in the ██ tables snapshot; (16) ████ of estimated data stored in each following ██ tables snapshot yet-to-be taken * 4 quarters; (17) ████ of data stored currently in the mapping/linking tables in ██ that are subject to preservation; (18) ████ of estimated additional data written daily into the mapping/linking tables in ██ * 365 days; (19) ████ of data stored currently in the mapping/linking tables in ██ that are subject to preservation; (20) ██ of data written daily into the mapping/linking tables in ██ * 365 days; (21) ████ of estimated data required to store the mapping/linking tables maintained by the Analytics team that are subject to preservation.

[5] ████ ( ████ to be precise) is derived on the basis of the numbers in footnote 4 with the following equation:

████████████████████

[6] The ████ ( ████ to be precise) is derived on the basis of the numbers in footnote 4 with the following equation:

████████████████████

| Approximate total cost after one year | Approximate total cost after two years | Approximate total cost after three years |
|---|---|---|
| ███ | ███ | ███ |

Greenfield Decl. ¶¶ 6, 11.

### 1. Implementation Of ███ Field-Based Preservation Requirements

███ is an infrastructure that serves *all* of Google and stores an enormous amount of data. Quaid Decl. ¶ 3. Each ███ column is an independent data source with its own distinct engineering team and data storage protocols. *Id.* Dozens of different Google teams store data within the ███ columns; the individual teams manage and control each column's corresponding proto, data retention period, and field naming convention. *Id.* The team that supports ███ does not maintain a list of specific fields in each GAIA ███ and ZWBK ███ column as part of its customary business operations. Dkt. 694-6 (Quaid Decl.) ¶ 8. Therefore, to even assess the scope of the preservation task, Google had to obtain input from the myriad engineering teams that oversee these columns.

Google has already taken a full snapshot of ZWBK ███ and is on schedule to implement the sampling pipelines for GAIA ███ and ZWBK ███ by the Court's deadline. Quaid Decl. ¶¶ 6, 10. This will mean Google is preserving all data in ZWBK ███ as of the date of the snapshot; it also means that going forward it will preserve all data in GAIA ███ and ZWBK ███ for 10,000 randomly selected user IDs per day. But the Court's Preservation Orders also require full preservation of certain fields where they appear in hundreds of GAIA and ZWBK ███ columns. This additional requirement is the subject of Google's motion because it entails an overwhelming burden and Plaintiffs have failed to identify any need for the data.

Google had never before attempted this type of preservation. *Id.* ¶ 8. To meet the Court's requirement, Google engineers have been working to design and build entirely new pipelines to (1) extract data from every column that potentially contains one or more of the specified fields, (2) filter the data to the required fields and by geography (to limit to U.S. users), and (3) write the filtered data to a new storage location for preservation. *Id.* To date, Google's engineers have accomplished (1) and (3) above, but have not been able to filter by field or geography. *Id.* As a

1  result, as the tables below demonstrates, GAIA and ZWBK ███ field-based preservation will

2  require storage of enormous amounts of data on top of the other preservation Google is doing, and

3  the costs of this preservation are staggering:

4  **Table 3**

| Preservation task | Estimated data after one year (███) | Estimated data after two years (███) | Estimated data after three years (███) |
|---|---|---|---|
| ███ Field-Based Preservation | ███[7] | ███[8] | ███[9] |

8  Quaid Decl. ¶ 9; Greenfield Decl. ¶ 14.

9  **Table 4**

| Preservation task | Approximate total cost after one year | Approximate total cost after two years | Approximate total cost after three years |
|---|---|---|---|
| ███ Field-Based Preservation | ███ | ███ | ███ |

13  Greenfield Decl. ¶ 15.

14        Even if Google could filter data by fields and geography, the burdens of preservation would

15  continue to be significant – ███████████████. Quaid Decl. ¶ 9. To put this

16  enormous volume in context by using more familiar comparisons, for a ***single day*** of preservation,

17  it amounts to ███████████████████████████

18  ███████████[10]

19              **2.      Implementation Of Preservation Of Mapping And Linking Tables**
                         **Requirements**

21  ███████████

22  [7] ███████████. *See* Quaid Decl. ¶ 9 ("Based on test runs that we have completed
    to date of the column-of-interest preservation pipelines in GAIA ███ and ZWBK ███ they
23  will require approximately ███ to store existing data and ███ to store new data
    written daily into the pipelines.").

24  [8] ███████████

25  [9] ███████████.

26  [10] ███████████████████████
27  ███████████████████████████
    ███████████

GOOGLE LLC'S NOTICE OF MOTION AND MOTION FOR RELIEF REGARDING PRESERVATION

1    Consistent with the Court's July 15 and August 5 Orders and statements at the August 4

2    hearing, Google conducted an extensive investigation to identify and preserve "all mapping and

3    linking tables."  Google investigated tables maintained by the teams that work with the Ads and

4    Analytics data stored in the ███████ Ads logs, ████████████ logs, ███████ corpora, █████

5    ████████ tables, and ██████████ and ██ keyspaces subject to the Preservation Orders.  Seah Decl.

6    ¶¶ 2-4; Pothana Decl. ¶¶ 2-3.  Based on these investigations, Google has identified and will preserve

7    ██ tables that contain a mapping or linking of user or device identifiers that are subject to

8    preservation in one of the sources identified in the Preservation Orders.  *Id*.  In the ordinary course,

9    these tables are stored from ████████████.  Seah Decl. ¶ 4.  This is in addition to the ██ data

10   sources Google is already preserving.

11       In addition, Google examined the documents and testimony on which the Plaintiffs here and

12   in the related *Brown* matter relied to justify their request for preservation of this information.  For

13   instance, at the August 4 hearing, when Google raised concerns about the meaning of the language

14   "all mapping and linking tables," Plaintiffs referred to mappings between identifiers that they

15   contend exist at Google, based on documents Google produced.  *See* Gao Decl. Ex. 1 (8/4/22 Hr'g

16   Tr.) at 103:14-25.  Google is preserving all of those tables to the extent they exist.[11]  Additionally,

17   Google analyzed the evidentiary record in this case to identify instances in which mapping or linking

18   tables were addressed in depositions or produced documents.  As an example, Google has identified

19   and is preserving tables that link Customer Relationship Management ("CRM") IDs to Biscotti IDs,

20   as discussed in the deposition of Google's Rule 30(b)(6) representative Glenn Berntson in the related

21   *Brown* case.  *Id.* Ex. 2 (3/18/22 Dep. Tr.) 133:18–135:10.

22       Among the tables Google has identified, two categories are particularly burdensome to

23   preserve.  The first category consists of ██ "linking tables" that relate to the project known

24

25

26   ───────────────────────
     [11]  During the August 4 hearing, Plaintiffs referred to a "Biscotti to GAIA" mapping (*id.* at 103:18),

27   but no such mapping exists.  The documents from which Plaintiffs quoted describe only a proposed
     system that Google never implemented.  Seah Decl. ¶ 7.  Google cannot preserve a table that does

28   not exist.

internally at Google as "███████,"[12] and contain links that are derived from other tables that are being separately preserved. Seah Decl. ¶ 5. The second category includes ██ tables that contain mappings of identifiers relating to the Google Analytics product. Pothana Decl. ¶ 5. These tables are not needed to work with the preserved data because (i) the Analytics-related data subject to preservation (in ██████ and ██████) is keyed to GAIA, an account identifier that is authenticated; and (ii) these ██ Analytics tables do not map GAIA identifiers. *Id.* As the tables below show, preserving these ██ tables will require enormous amounts of data storage at a staggering cost, which is in addition to the other preservation costs Google is already incurring:

**Table 5**

| Preservation task | Estimated data after one year (██) | Estimated data after two years (██) | Estimated data after three years (██) |
|---|---|---|---|
| Preservation of the ██████ and Analytics tables | ██[13] | ██[14] | ██[15] |

Seah Decl. ¶ 5; Pothana Decl. ¶ 7.

**Table 6**

| Preservation task | Approximate total cost after one year | Approximate total cost after two years | Approximate total cost after three years **Preservation of the ██████ and Analytics Tables** |
|---|---|---|---|
| Preservation of the ██████ and Analytics tables | ██████ | ██████ | ██████ |

Greenfield Decl. ¶¶ 17, 19.

---

[12] ████████████████████████████████████████████." Gao Decl. Ex. 3 (GOOG-CABR-03652751) at -752.

[13] ██████████. *See* Seah Decl. ¶ 5 (estimating preservation of the ██████ tables would require storage of over ██████ per year); Pothana Decl. ¶ 7 (estimating snapshots of the ██ Analytics tables would require storage of more than ██████ per year).

[14] ████████████.

[15] ████████████.

1    III.    **ARGUMENT**

2        A.    <u>**Relief From Field-Based Preservation In** ▆▆▆ **Is Warranted Under Rule 26**</u>

3        In evaluating preservation disputes, this Court has rightly applied the proportionality

4    principle embodied in Federal Rule of Civil Procedure 26 to determine whether the preservation

5    sought is relevant and proportional to the litigation.[16] *Lord Abbett Mun. Income Fund, Inc. v. Asami*,

6    2014 WL 5477639, at *3 (N.D. Cal. Oct. 29, 2014) ("This district recognizes that the proportionality

7    principle applies to the duty to preserve potential sources of evidence."); Fed. R. Civ. P. 37(e) Adv.

8    Comm. Notes (2015) ("perfection in preserving all relevant electronically stored information is often

9    impossible").  In so doing, the Court has sought to "strike an appropriate and necessary balance

10    between the need to preserve relevant data in an immense universe of data, without imposing undue

11    burden and with careful consideration for the practical challenges to both Parties to manage vast

12    data sets." Dkt. 766 at 6.  The Court's requirement to "limit discovery if the burden or expense of

13    the proposed discovery outweighs its likely benefit" is "the essence of proportionality." *Apple Inc.*

14    *v. Samsung Elecs. Co.*, 2013 WL 4426512, at *3 (N.D. Cal. Aug. 14, 2013) (quotations omitted).

15    As demonstrated below, the proportionality principle requires that Google's requests for relief be

16    granted.

17        1.    <u>**The Burden And Expense Of The** ▆▆▆ **Field-Based Preservation**
        **Clearly Outweighs Its Purported Benefit**</u>

18

19        Google is committed to saving as much as ▆▆▆ of data (for just the first year) from

20    ▆ data sources and ▆ mapping/linking tables—including ongoing sampling of the ▆▆ data.

    However, the added burdens of preserving GAIA ▆▆▆ and ZWBK ▆▆▆ columns that contain

21

22

23    ---
    [16]  Federal Rule of Civil Procedure 26 cites to six non-dispositive factors:"[i] the importance of the

24    issues at stake in the action, [ii] the amount in controversy, [iii] the parties' relative access to relevant
    information, [iv] the parties' resources, [v] the importance of the discovery in resolving the issues,
    and [vi] whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed.

25    R. Civ. P. 26(b)(1).  Google does not address the first and second factors at length; the parties clearly
    vigorously dispute the importance of the issues at stake and the amount in controversy.  With respect

26    to the third factor, potential members of the class have access to much of the relevant information
    subject to ▆▆▆ field-based preservation, like their own IP address.  Indeed, members of the

27    putative class have access to URLs they visit through tools provided by Google to its users.  *See*
    myactivity.google.com.

28

1   the fields-of-interest are disproportionate to the needs of the litigation.  These burdens include drains

2   on engineering talent and other personnel, consumption of enormous amounts of data storage

3   facilities amid supply chain shortages for component parts, and stunning costs that will increase

4   exponentially over the duration of the likely implementation period.

5          **Burdens on Human Capital**: Designing and implementing the field-based ████

6   preservation has significantly disrupted the regular job duties of Google's engineers, which are

7   essential to Google's ability to maintain existing systems and develop new business critical products

8   in a timely manner.  Quaid Decl. ¶ 4.  Six engineers on the ████ team (20 percent of the entire

9   ████ team) have spent more than ████ designing, scoping, configuring, implementing,

10  testing, optimizing, debugging, and verifying the field-based preservation pipelines and will

11  continue working diligently to optimize the pipelines.  *Id.*  The preservation-related work these

12  engineers are performing (on top of their regular job duties) requires specialized knowledge of

13  Google's systems that cannot be easily transferred to other personnel.  *Id.* ¶ 5.  The continued strain

14  on these engineers cannot be overstated.

15         **Burdens on Data Storage Capabilities**:  Since Google has been unable to filter GAIA

16  ████ and ZWBK ████ by field names or field-values, *Id.* ¶¶ 7, 8, Google has no choice but to

17  preserve ████ field-based data wholesale, requiring storage of an overwhelming ████ of

18  data in just the first year alone.  *Id.* ¶ 9.  But no company, not even Google, has unlimited storage,

19  processing, and bandwidth resources.  Additionally, many companies in the technology space,

20  including Google, are encountering shortfalls of storage and processing hardware originating at least

21  in part from the manufacturing supply chain shortages arising from the Covid-19 pandemic.

22  Greenfield Decl. ¶¶ 3-4. Since December 2021, ████████████████████████

23  ████████████████████████████████████████████

24  ████████ *Id.* ¶ 4. ████████████████████████

25  ████████████████████. *Id.*  In light of these issues, and the vast quantities of data Google

26  is already storing, *see supra* at 6, it is neither feasible nor proportional for Google to have to house

27  the ████ field-based data as well.

28         **Burdens on Financial Resources**: The financial expense of ████ field-based preservation

1    also contravenes the proportionality principle, spiraling to ███████ in just three years.  *See supra*

2    at 8; Greenberg Decl. ¶ 15.  Even if Google engineers could preserve data by field and geography,

3    the burden would still be unreasonable – ***more than*** ██████████ ***per day***.  Quaid Dec. ¶ 9. *See*

4    *Lord Abbett*, 2014 WL 5477639, at *3.

5               **2.    Plaintiffs Have Failed To Establish The Importance Of The ████**
                        **Field-Based Data To Their Claims Or Damages**

6

7           Despite extensive hearings and briefings with the Special Master and this Court, as well as

8    the document production Google has made, Plaintiffs have *never* indicated (i) what they plan to do

9    with the data subject to ████ field-based preservation; (ii) why they need these massive amounts

10   of information; or (iii) whether this particular information will ever be used if a class is certified.

11   Under the proportionality principle of Rule 26(b)(1), Plaintiffs have the burden of establishing that

12   the "importance of the discovery in resolving … issues [in the litigation]" weighs in favor of

13   requiring preservation of this data.  *White v. James*, 2018 WL 6174728, at *1 (C.D. Cal. Jan. 23,

14   2018) ("A party claiming that a request is important to resolve the issues should be able to explain

15   the ways in which the underlying information bears on the issues as that party understands them."

16   (quoting Fed. R. Civ. P. advisory committee's notes (2015)).  "[T]he parties and the court have a

17   collective responsibility to consider the proportionality of all discovery and consider it in resolving

18   discovery disputes."  *Nevro Corp v. Bos. Sci. Corp.*, 2018 WL 538612, at *1 (N.D. Cal. Jan. 24,

19   2018) (citation omitted).

20          Plaintiffs' inchoate demands and conclusory mantra that "we don't know what we don't

21   know,"[17] neither demonstrate the relevance of the data nor justify the toll ████ field-based

22   preservation imposes on Google.  *See Elgindy v. Aga Serv. Co.*, 2021 WL 5083761, at *4 (N.D. Cal.

23   Nov. 2, 2021) ("general ruminations about what might be revealed" are insufficient for "Plaintiffs

24   … to carry their burden to establish relevancy and proportionality;" requesting party must

25   ───────────────
     [17]   Plaintiffs have previously claimed that Google did not produce all data within ████ for the
26   Plaintiffs and their expert during the Special Master process, based on Plaintiffs' assessment of the
     number of columns in ██████.  *See*, e.g., Gao Decl. Ex. 4 (8/11/22 Hrg. Tr.) 85:10-12.  However,
27   not all columns in GAIA or ZWBK ████ are populated with user data.  Quaid Decl. ¶ 3.  Further,
     columns relating to one of the dozens of Google products that Plaintiffs never claimed to have used
28   would not be populated with data for Plaintiffs.

1  specifically explain "why [its] request is relevant to 'any party's claim or defense' and why it is
2  proportional to the needs of the case").

3      Plaintiffs' failure to articulate any plausible tangible benefit from ████ field-based
4  preservation is not surprising; large swaths of the data are indisputably irrelevant to this litigation.
5  A large number of columns in ████ pertain to products that Plaintiffs have never alleged to be
6  part of the data flow for this case.  Since Google does not dispute that such data is sent from users'
7  browsers, retaining such information will not "resolve" any disputed issues.  Nor have Plaintiffs
8  shown that the ████ field-based preservation will fulfill any unmet need for their case.  Google is
9  already preserving all data in GAIA ████ and ZWBK ████ for 10,000 randomly selected user
10 IDs per day.  And the fields that the Court ordered preserved (such as URLs visited, IP addresses,
11 and country) are already being preserved for every instance where a Google Ad is shown—
12 regardless of their relationship to the class or whether the recorded activity falls within the class
13 definition.[18]

14      Even *if* there is some minuscule amount of relevant data in the field-based GAIA and ZWBK
15 ████ preservation, Google should not be compelled to preserve ████ of data irrespective of
16 the feasibility and burden of doing so.  *See, e.g., Finjan, Inc. v. ESET, LLC*, 2018 WL 5263243, at
17 *1 (S.D. Cal. Oct. 23, 2018) ("[T]he 2015 Amendments to Rule 26 made clear that '[r]elevancy
18 alone is no longer sufficient—discovery must also be proportional to the needs of the case.'"
19 (quoting *In re Bard IVC Filters Prods. Liability Litig.*, 317 F.R.D. 562, 564 (D. Ariz. 2016));
20 *Quintana v. Claire's Boutiques, Inc.*, 2014 WL 234219, at *2 (N.D. Cal. Jan. 21, 2014) ("In the
21 specific context of class action discovery, sampling advances the goal of proportionality advanced
22 under Fed. R. Civ. P. 26(b)(3)(c)(iii).").  Indeed, as this Court has recognized, the principle of
23 proportionality contemplates that there are situations where preservation of every item of potentially
24 relevant information will simply not be possible.  Dkt. 862 (9/8/2022 Order) at 2, 19 ("[B]ecause of
25 the dynamic and extensive nature of the Google data sources at issue, it has been important to

26

27 ---
[18] Indeed, Google does not seek relief from field-based preservation in its ████ logs, where
Google used more than ████ in computing resources to backfill literally ████ of values for
28 these fields going back to 2016.  Kornacki Decl. ¶ 7; Greenfield Decl. ¶ 13.

-14-                                    Case No. 4:20-cv-05146-YGR-SVK

develop and require Google to implement a robust yet **_feasible_** plan to preserve information during this litigation."); *see id.* ("[T]he Court stands by the April 2021 Protective Order … given the enormous quantity of data collected by Google on a daily basis, the Court **_would not have required Google to preserve every instance of a Not Synced Signal recorded in Google's logs_**.") (emphasis added).   The concerns that animated discovery restraint are equally applicable here, compelling relief from Google's current obligation to "preserve every instance of" a specific field (including "sync state" signals) in hundreds of GAIA ███ and ZWBK ███ columns. Dkt. 766-2 at 11, 14.

### 3. The Parties' Respective Resources Do Not Justify The Onerous Burdens ███ Field-Based Preservation Requires

Plaintiffs have repeatedly assumed that because Google is a large company, no task or burden can ever be too much for it.  That assumption squarely contravenes Rule 26.  *See Lickerish, Inc. v. PicClick, Inc.*, 2022 WL 2812174, at *4 (N.D. Cal. July 18, 2022) (rejecting conclusory argument that discovery sought would not be a "heavy burden" because defendant is a "multibillion dollar Internet-based business [that] can determine when there are communications with its own servers."); *Nyberg v. Zurich Am. Ins. Co.*, 2016 WL 11671468, at *4 (D. Kan. June 21, 2016) ("consideration of the parties' resources 'does not … justify unlimited discovery requests addressed to a wealthy party.'"   (citing Fed. R. Civ. P. 26(b)(1) advisory committee's note to the 2015 amendment)); *Lawson v. Spirit AeroSystems, Inc.*, 2020 WL 3288058, at *14 (D. Kan. June 18, 2020), *aff'd*, 2020 WL 6939752 (D. Kan. Nov. 24, 2020) ("The court will not require Spirit to shoulder needless litigation expenses simply because it is a big company.").   In light of the burdensome preservation obligations Google is already undertaking, Google should not be required to absorb additional disproportionate and burdensome storage, processing, and bandwidth resources to accommodate the vast amounts of data ███ field-based preservation requires, particularly in light of the ████████ discussed above. *See supra* at 12.

The burdens of the ███ field-based preservation clearly outweigh the yet-to-be-identified benefit of the preserved data, particularly after taking into account the vast quantities of other data Google is preserving, and will continue to preserve, through this litigation. As the proportionality

principle of Rule 26 recognizes, the court "must limit the frequency or extent of discovery … if it determines that the burden or expense of the proposed discovery outweighs its likely benefit." Fed.R.Civ.P. 26(b)(2)(C)(iii); *see also Noble Roman's, Inc. v. Hattenhauer Distrib. Co.*, 314 F.R.D. 304, 306 (S.D. Ind. 2016) ("[L]itigants' legitimate interests in the control of expansive discovery and corralling the spiraling costs of litigation … led to a series of changes to the federal discovery rules over the last thirty plus years that emphasize the power—and duty—of the district courts actively to manage discovery and to limit discovery that exceeds its proportional and proper bounds."). "Preservation efforts need not be heroic or unduly burdensome." *The Sedona Principles, Third Edition*, 19 SEDONA CONF. J. 1, Cmt. 5.e., 108 (2018); *cf.* Fed. R. Civ. P. 37(e) Adv. Comm. Notes (2015) ("perfection in preserving all relevant electronically stored information is often impossible"). "Evaluating the need to produce ESI requires that a balance be struck between the burdens and need for ESI, taking into account the technological feasibility and realistic costs involved." *The Sedona Principles* at Cmt. 2.d.

These principles firmly establish that Google's ███ field-based preservation is disproportionate to the needs of this case, warranting relief from this obligation.

### 4.    At A Minimum The Court Should Require Plaintiffs To Pay All Costs Associated With Preservation Of The ███ Field-Based Data

To the extent the Court requires the preservation, Plaintiffs should be required to assume the preservation costs given the unjustified nature of the burden and their failure to provide any plausible basis for the data's ongoing preservation. Case law supports this conclusion.  *See U.S. ex rel. Carter v. Bridgepoint Educ., Inc.*, 305 F.R.D. 225, 240 (S.D. Cal. 2015) ("[T]he cost of even accessible ESI's production may be shifted to a party that has not shown its peculiar relevance to the claims and defenses at hand" if the proportionality factors make it appropriate) (citations omitted) (citing, *inter alia*, Shira A. Scheindlin & Daniel J. Capa, *Electronic Discovery and Digital Evidence* 314 (2009) ("Cost-shifting is available even for accessible data based on the proportionality factors set forth in Rule 26(b)(2)(C)"); *see also Boeynaems v. LA Fitness Int'l, LLC*, 285 F.R.D. 331, 341 (E.D. Pa. 2012) ("Where the burden of discovery expense is almost entirely on the defendant, principally because the plaintiffs seek class certification, then the plaintiffs should share the costs."); *id.* at 335.

("If Plaintiffs' counsel has confidence in the merits of its case, they should not object to making an investment in the cost of securing documents from Defendant and sharing costs with Defendant."); *Rowe Ent., Inc. v. William Morris Agency, Inc.*, 205 F.R.D. 421, 431 (S.D.N.Y. 2002) (requiring cost-shifting where the costs of the proposed discovery for defendants, even by plaintiffs' estimates, ranged from $10,000 to $87,000).

**B.    Limited Relief From The Court's Order Regarding Preservation Of "All Mapping And Linking Tables" Is Warranted**

**1.    The Burden And Expense Of Preserving The ████████ Tables And The ██ Analytics Tables Outweighs Any Illusory Benefit They May Have**

Preservation of the ███████ and Analytics tables discussed above similarly fails to satisfy the proportionality requirements of Rule 26.

████████ **Tables**:  There is no valid reason for Google to have to undergo the burdens and expense of preserving the ███████ tables because the links contained in those tables are derived from *other* tables that Google is separately preserving.  Seah Decl. ¶ 5.  For example, if one of the underlying (and separately preserved) tables includes a link from identifier A to B, and another of the underlying (and separately preserved) tables includes a link from identifier A to C, then the ██████ tables could include a link from identifier B to C.  *Id.*  Preserving the ██████ tables would consume ████████ of storage on a daily basis at a cost of █████ if preservation continues for three years.  Seah Decl. ¶ 5; Greenfield Decl. ¶¶ 16-17.  In making proportionality determinations, courts have routinely ruled that duplicative discovery obligations are unduly burdensome and relieved litigants from these requirements.  *See, e.g.*, *Glob. Tech., Inc. v. Ningbo Swell Indus.*, Co., 2021 WL 5443272, at *4 (E.D. Mich. Apr. 27, 2021), *reconsideration denied*, 2021 WL 2283745 (E.D. Mich. June 4, 2021) ("Plaintiff's discovery requests, while relevant, are disproportional to the needs of the case because the majority of these requests seek duplicative information that Plaintiff already has in its possession.").  The same result is compelled here.

████ **Analytics Tables**:  The burdens of preserving ██ tables containing mappings of identifiers relating to the Google Analytics product are also unwarranted and disproportionate.  As

1    shown above, these Analytics tables presently contain over ████████████ of

2    data, requiring storage of more than ████████ over the course of a single year.  Pothana Decl.

3    ¶¶ 5, 7; *see supra* at 10.  In addition to Google's other preservation costs in this case, the expense

4    of storing this additional data would total approximately ████████ over three years.  Greenfield

5    Decl. ¶ 19.  The preservation of these ██ tables alone would also impose a large human capital

6    burden: given the complexity, it would require ████████ of engineering hours.  Pothana Decl. ¶ 7.

7    Preservation of the ███ Google Analytics tables is also not warranted because they are not needed

8    to work with the preserved data.  *See* Gao Decl. Ex. 1 (8/4/22 Hr'g Tr.) at 106:16-18 ("[I]f you

9    would need a mapping table to work with any of the data that is being exchanged in this case, that

10   table has to be preserved.").  The only data sources in the preservation order that relate to Google

11   Analytics are in GAIA ████ or ████████.  Those sources are keyed to GAIA, an authenticated

12   identifier.  These ██ mapping tables do not include any mappings to GAIA. Pothana Decl. ¶ 5.  As

13   a result, Plaintiffs do not need these tables to work with the Analytics data subject to preservation,

14   and there would be little or no benefit to preserving this information.  Even if Plaintiffs could identify

15   some limited benefit, it would be outweighed by the significant burdens of doing so.

16        At the August 4 hearing, when discussing mapping tables, the Court found "determinative"

17   that mapping tables are stored "in the ordinary course."  Gao Decl. Ex. 1 (8/4/22 Hr'g. Tr.) at 104:5-

18   8.  However, most mapping tables at Google are very short lived.  Seah Decl. ¶¶ 4, 5; Pothana Decl.

19   ¶¶ 4, 7.  Accordingly, Google does not believe it is accurate to say that preserving all mapping tables

20   is "not a big ask."  Gao Decl. Ex. 1 (8/4/22 Hr'g. Tr.) at 104:5-9  To the contrary, since these tables

21   are not automatically retained for an extended period of time as part of Google's routine business

22   operations, preserving them now is extremely burdensome, requiring that Google store an enormous

23   amount of data per year that Google would not otherwise store.  Preserving █ mapping and linking

24   tables (excluding the ████████ and Analytics tables) increases the number of sources from

25   which Google must preserve data by more than ██████.

26        Plaintiffs unfairly seek to saddle Google with unnecessary and costly preservation with no

27   demonstrated benefit, while ignoring the enormous quantities of data Google is actively preserving

28   with significant financial, human and storage consequences to the company.  For the reasons set

forth above, *see supra* at 15, cases applying Rule 26 do not permit a defendant's resources to justify discovery that is otherwise unwarranted. That is clearly the case here.[19]

In short, in light of the disproportionate burdens and limited utility of preserving the ▮ and Analytics tables, Rule 26 does not justify their preservation. To the extent Plaintiffs insist that Google preserve these ▮ tables, they should be required to assume the costs of this preservation. *See supra* at 16-17.

## 2.    Google's Preservation Of Mapping And Linking Tables Is Consistent With The Court's Guidance And Orders

As set forth above, Google has conducted an extensive investigation to identify mapping and linking tables in response to the Court's July 15 and August 5, 2022 Preservation Orders to preserve "all mapping and linking tables." Dkt. 815 at 13; Dkt. 766 at 8. *See supra* at 9 (citing Seah Decl. ¶¶ 2-4; Pothana Decl. ¶¶ 2-3). In addition, Google has analyzed the evidentiary record and Plaintiffs' arguments in support of their request that Google preserve this information.[20] Based on these investigations, Google has identified and will preserve ▮ tables that contain a mapping or linking of user or device identifiers that are subject to preservation in one of the sources identified in the Preservation Orders. Seah Decl. ¶ 4; Pothana Decl. ¶ 3; Quaid Decl. ¶ 11; Halstead Decl. ¶6.

In preserving "mapping and linking tables," Google has relied on the Court's statements at the August 4 hearing providing a framework to comply with its preservation obligations the Court imposed. In defining a mapping table in response to a query from Google's counsel, the Court stated: "[A] mapping table is – is what it is. I mean it is mapping the IDs." Gao Decl. Ex. 1 (8/4/22 Hr'g Tr.) at 104:8-9. In addition, the Court stated that the mapping and linking tables that should be preserved are those that pertain to the data at issue in this case. *See id.* at 104:11-15 ("the mapping tables that … relate to the logs and fields that – that the parties have worked so intimately over these last 18 months. I don't think it can be any more clear."); *id.* at 107:3-8 ("I think my order again is

---

[19]  Google's responses to the remaining factors are set forth in footnote 16.

[20]  For instance, Plaintiffs argued in their objection to the Special Master's recommended preservation plans that Google should be required to preserve "'linking tables' that allow for the mapping of publisher IDs, Biscotti IDs, GAIA IDs and other identifiers." Dkt. 621-3 at 8.

1    perfectly clear … If it doesn't relate to the data in this case, it is never going to come up.  If it relates

2    to the data in this case, it does."); *id.* at 106:16-18 ("if you would need a mapping table to work with

3    any of the data that is being exchanged in this case, that table has to be preserved.").  Accordingly,

4    in light of these statements requiring a nexus between the mapping and linking tables and the data

5    at issue, Google does not understand the phrase "all mapping and linking tables" to refer to ***any***

6    table that provides a map or link between any type of value, including ***non-identifier*** values, and

7    any other value stored in Google's systems.

8        Requiring preservation of all tables that provide a mapping or linking of identifiers (or other

9    non-identifier values) that fall outside the scope of the Court's preservation orders would be neither

10   proportional nor reasonable.  Indeed, such a broad and amorphous interpretation would require

11   Google to conduct a potentially limitless investigation of mapping and linking tables that would

12   inevitably sweep in numerous tables (to the extent they exist) that have no nexus whatsoever to the

13   data at issue in this case.  Google is a large company with over 160,000 employees working on

14   thousands of teams to support hundreds of different products and services, such as Google Meet,

15   Drive, Calendar, Nest, and Gmail, to name just a few.  The vast majority of those products and

16   services have no conceivable relevance to Plaintiffs' claims in this case.  Thus, even if,

17   hypothetically, the teams supporting one of these products used a "mapping table" or a "linking

18   table," preserving such a table would serve no purpose.  And investigating whether every one of

19   those teams maintains a "mapping table" or a "linking table" would require an astronomical amount

20   of time and human capital, particularly since Google does not have a company-wide definition of

21   the term "mapping table" or "linking table" that it could use to perform such an investigation.  Seah

22   Decl. ¶ 3.  It is impossible to overestimate the burden and disruption such a wide-ranging

23   investigation would cause, and it would clearly contravene the proportionality principles the Court

24   must apply.

25        As the case law recognizes, proportionality requires a balancing of the benefit against the

26   burden.  *See, e.g.*, *Hegarty v. Transamerica Life Ins. Co.*, 2021 WL 4899482, at *2 (N.D. Cal. Oct.

27   21, 2021) ("[C]ourts are required to limit discovery if its burden or expense outweighs its likely

28   benefit.").  The benefit of preserving mapping tables or linking tables relating to any of the hundreds

1    of products that are clearly outside of the scope of this case is negligible, while the burden of such

2    an investigation to Google would be extreme. *Apple Inc. v. Samsung Elecs. Co*., 2011 WL 1938154,

3    at *3 (N.D. Cal. May 18, 2011) (finding requests for production unduly burdensome in part because

4    "it would require [defendant] to undertake a wide-ranging investigation to determine whether any

5    such documents exist").

6    **IV.    CONCLUSION**

7        For the reasons stated, Google's motion should be granted.

8

9

10   DATED:  October 26, 2022            QUINN EMANUEL URQUHART &
                                         SULLIVAN, LLP
11

12                                       By_____
                                             */s/ Andrew H. Schapiro*
13                                           Andrew H. Schapiro (admitted *pro hac vice*)
                                             andrewschapiro@quinnemanuel.com
14                                           Teuta Fani (admitted *pro hac vice*)
                                             teutafani@quinnemanuel.com
15                                           191 N. Wacker Drive, Suite 2700
                                             Chicago, IL 60606
16                                           Telephone: (312) 705-7400
                                             Facsimile: (312) 705-7401
17
                                             Stephen A. Broome (CA Bar No. 314605)
18                                           stephenbroome@quinnemanuel.com
                                             Viola Trebicka (CA Bar No. 269526)
19                                           violatrebicka@quinnemanuel.com
                                             Crystal Nix-Hines (CA Bar No. 326971)
20                                           crystalnixhines@quinnemanuel.com
                                             Alyssa G. Olson (CA Bar No. 305705)
21                                           alyolson@quinnemanuel.com
                                             865 S. Figueroa Street, 10th Floor
22                                           Los Angeles, CA 90017
                                             Telephone: (213) 443-3000
23                                           Facsimile: (213) 443-3100
24
                                             Diane M. Doolittle (CA Bar No. 142046)
25                                           dianedoolittle@quinnemanuel.com
                                             Sara Jenkins (CA Bar No. 230097)
26                                           sarajenkins@quinnemanuel.com
                                             555 Twin Dolphin Drive, 5th Floor
27                                           Redwood Shores, CA 94065

28

1  Telephone: (650) 801-5000
Facsimile: (650) 801-5100

2  Josef Ansorge (admitted *pro hac vice*)

3  josefansorge@quinnemanuel.com
Xi ("Tracy") Gao (CA Bar No. 326266)

4  tracygao@quinnemanuel.com
Carl Spilly (admitted *pro hac vice*)

5  carlspilly@quinnemanuel.com
1300 I. Street, N.W., Suite 900

6  Washington, D.C. 20005
Telephone: 202-538-8000

7  Facsimile: 202-538-8100

8

9  Jomaire A. Crawford (admitted *pro hac vice*)
jomairecrawford@quinnemanuel.com

10  51 Madison Avenue, 22nd Floor
New York, NY 10010

11  Telephone: (212) 849-7000
Facsimile: (212) 849-7100

12

13  Jonathan Tse (CA Bar No. 305468)
jonathantse@quinnemanuel.com

14  50 California Street, 22nd Floor
San Francisco, CA 94111

15  Telephone: (415) 875-6600
Facsimile: (415) 875-6700

16

17  *Attorneys for Defendant Google LLC*

18
19
20
21
22
23
24
25
26
27
28