# PLAINTIFFS' OPPOSITION TO GOOGLE'S MOTION FOR RELIEF FROM THE COURT'S MODIFIED PRESERVATION PLAN

## Redacted Version of Document Sought to be Sealed

1

2  **BLEICHMAR FONTI & AULD LLP**          **DICELLO LEVITT LLC**
   Lesley Weaver (Cal. Bar No.191305)      David A. Straite (admitted *pro hac vice*)
3  Angelica M. Ornelas (Cal. Bar No. 285929)  Corban Rhodes (admitted *pro hac vice*)
   Joshua D. Samra (Cal. Bar No. 313050)   485 Lexington Ave., Tenth Floor
   555 12th Street, Suite 1600             New York, NY 10017
4  Oakland, CA 94607                       Tel.: (646) 933-1000
   Tel.: (415) 445-4003                    Fax: (646) 494-9648
5  Fax: (415) 445-4020                     *dstraite@dicellolevitt.com*
   *lweaver@bfalaw.com*                    *crhodes@dicellolevitt.com*
6  *aornelas@bfalaw.com*
7  *jsamra@bfalaw.com*                     Amy E. Keller (admitted *pro hac vice*)
                                           Adam Prom (admitted *pro hac vice*)
8  **SIMMONS HANLY CONROY LLC**            Sharon Cruz (admitted *pro hac vice*)
   Jason 'Jay' Barnes (admitted *pro hac vice*)  Ten North Dearborn St., Sixth Floor
9  An Truong (admitted *pro hac vice*)     Chicago, IL 60602
10 Eric Johnson (admitted *pro hac vice*)  Tel.: (312) 214-7900
   Jenny Paulson (admitted *pro hac vice*)  *akeller@dicellolevitt.com*
11 112 Madison Avenue, 7th Floor           *aprom@dicellolevitt.com*
   New York, NY 10016                      *scruz@dicellolevitt.com*
12 Tel.: (212) 784-6400
13 Fax: (212) 213-5949
   *jaybarnes@simmonsfirm.com*
14 *atruong@simmonsfirm.com*
   *ejohnson@simmonsfirm.com*
15 *jpaulson@simmonsfirm.com*

16 *Counsel for Plaintiffs*

17              **IN THE UNITED STATES DISTRICT COURT**
18            **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

19 PATRICK CALHOUN, et al., on behalf    Case No. 4:20-cv-5146-YGR-SVK
   of themselves and all others similarly
20 situated,                             **PLAINTIFFS' OPPOSITION TO GOOGLE'S
                                         MOTION FOR RELIEF (DKT. NO. 898)
21              Plaintiffs,              FROM THE COURT'S MODIFIED
                                         PRESERVATION PLAN DATED JULY 15,
22    v.                                 2022 (DKT NO. 766) AS MODIFIED AGAIN
                                         ON AUGUST 5, 2022 (DKT NO. 815)**
23 GOOGLE LLC,
24              Defendant.               Referral:  Hon. Susan van Keulen, USMJ
                                         Hearing:  January 10, 2023, 10:00am[1]
25

26        **UNREDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**
27

28 ―――――――――――――――――
   [1] Per Dkt. No. 906, the hearing set for January 10, 2023 is "if needed."

   PLAINTIFFS' OPPOSITION TO GOOGLE'S MOTION FOR RELIEF
   CASE NO.: 4:20-CV-05146-YGR-SVK

1

## TABLE OF CONTENTS

2

I.    INTRODUCTION ............................................................................................... 1

II.   LEGAL STANDARD ......................................................................................... 3

III.  FACTUAL AND PROCEDURAL BACKGROUND ........................................ 3

IV.   ARGUMENT ...................................................................................................... 4

    A.    Google's Failure to Comply with Civil Local Rule 7-9 Calls the Credibility of the Basis for the Motion into Question. ........................................................ 4

        1.    Google's Motion Is a Motion for Reconsideration ..................................... 4

        2.    Google Failed to Obtain Leave of Court ..................................................... 5

        3.    Google Failed to Demonstrate "Reasonable Diligence" .............................. 6

    B.    Granting Google's Motion Would be Unfairly Prejudicial to Plaintiffs ................. 8

    C.    Google's Request for Relief from Preservation of the ▓▓▓▓▓ Should Be Denied ............................................................................................................ 11

    D.    Google's Request for Relief from Preservation of Mapping and Linking Tables Should Be Denied ........................................................................................ 12

        1.    Google's Interpretation Regarding Preservation of Mapping and Linking Tables Is Not Consistent with the Court's Preservation Orders ................ 13

        2.    Google Should Not Be Relieved from Preserving the ▓▓▓▓▓ Tables and ▓▓▓▓▓ Tables .......................................................... 16

    E.    Google's Request for ▓▓▓▓▓ Cost-Shifting Should Be Rejected .............. 17

V.    CONCLUSION AND RELIEF REQUESTED ................................................. 20

1

**TABLE OF AUTHORITIES**

2

**Page(s)**

3

**Cases**

4

*Alkutkar v. Bumble Inc.*,
    No. 22-cv-00422-PJH, 2022 WL 16973253 (N.D. Cal. Nov. 16, 2022) ................................. 3

5

6

*Ankele v. Johnson*,
    No. C 04-04811 JW, 2005 WL 1459553 (N.D. Cal. Jun. 21, 2005).......................................... 6

7

*Far Out Prods., Inc. v. Oskar*,
    247 F.3d 986 (9th Cir. 2001)..................................................................................................7

8

9

*Finjan, Inc. v. Cisco Sys. Inc.*,
    No. 17-cv-00072-BLF (SVK), 2020 WL 13180006 (N.D. Cal. Jun. 18, 2020) ..................... 6

10

*Fisher v. Roe*,
    263 F.3d 906 (9th Cir. 2001), *overruled on other grounds by*

11

    *Payton v. Woodford*, 346 F.3d 1204 (9th Cir. 2003) ............................................................ 3

12

13

*Iglesia Ni Cristo v. Cayabyab*,
    No. 18-cv-00561-BLF, 2020 WL 3833281 (N.D. Cal. Jul. 8, 2020)...................................... 6

14

*John B. v. Goetz*,
    879 F. Supp. 2d 787 (M.D. Tenn. 2010) ............................................................................ 19

15

16

*Kona Enters., Inc. v. Estate of Bishop*,
    229 F.3d 877 (9th Cir. 2000)................................................................................................. 3

17

*Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*,
    571 F.3d 873 (9th Cir. 2009)................................................................................................. 6

18

19

*Micron Tech., Inc. v. Factory Mut. Ins. Co.*,
    No. 3:18-cv-07689-LB, 2022 WL 3083713 (N.D. Cal. Aug. 3, 2022)................................... 8

20

21

*Moriarty v. Am. Gen. Life Ins. Co.*,
    No. 17-CV-1709-BTM-WVG, 2018 WL 11453817 (S.D. Cal. Dec. 31, 2018)...................... 5

22

*Oliver v. City and Cnty. of San Francisco*,
    No. C 07-2460 JL, 2009 WL 10736489 (N.D. Cal., Mar. 23, 2009) ...................................... 5

23

24

*Oppenheimer Fund, Inc. v. Sanders*,
    437 U.S. 340 (1978) ............................................................................................................ 18

25

26

*Price v. Synapse Grp., Inc.*,
    No. 16-CV-1524-BAS (BLM), 2018 WL 9517276 (S.D. Cal. Sept. 12, 2018) .............. 17, 18

27

*Sch. Dist. No. IJ v. AC & S, Inc.*,
    5 F.3d 1255 (9th Cir. 1993)................................................................................................... 6

28

*Taylor v. Costco Wholesale Corp.*,
    No. 3:18-cv-00586-MMD-CBC, 2020 WL 1430540 (D. Nev. Mar. 23, 2020)........................ 5

*Tierno v. Rite Aid Corp.*,
    No. C-05-02520 TEH, 2008 WL 3287035 (N.D. Cal. July 31, 2008).................................... 17

*U.S. ex rel. v. Renown Health*,
    No. 3:12-cv-00295-LRH-VPC, 2015 WL 5056726 (D. Nev. Aug. 25, 2015)........................ 18

*U.S. ex rel. v. TL Peterson, Inc.*,
    No. 4:17-cv-2277-KAW, 2018 WL 11436319 (N.D. Cal. Nov. 1, 2018) ............................... 4

*U.S. v. Rosas-Ramirez*,
    No. 18-CR-00053-LHK-1, 2019 WL 1518162 (N.D. Cal. Apr. 8, 2019)............................... 6

*ViaSat, Inc. v. Space Sys./Loral, Inc.*,
    No. 12-CV-0260-H (WVG), 2013 WL 3467413 (S.D. Cal. July 10, 2013) ............................ 5

*Woods v. Google LLC*,
    No. 5:11-cv-01263-EJD, 2019 WL 1936241 (N.D. Cal. May 1, 2019) ............................ 9, 11

*Zubulake v. UBS Warburg LLC*,
    217 F.R.D. 309 (S.D.N.Y. 2003) .............................................................. 17, 18, 19

**Statutes**

Fed. R. Civ. P. 26 .............................................................................................. 4, 5, 18

Fed. R. Civ. P. 37(c)(1) ............................................................................................ 9

Fed. R. Civ. P. 59(e).................................................................................................. 4

**Other Authorities**

Local Rule 7-9..........................................................................................*passim*

Local Rule 26(a)....................................................................................................... 8

Local Rule 37(c)........................................................................................................ 9

## I.      INTRODUCTION

On October 26, 2022, Google filed a motion (the "Motion" or "Mot.", Dkt. No. 898) asking the Court to reconsider the scope of the prior data log preservation orders dated July 15, 2022, Dkt. 766, and August 5, 2022, Dkt. 815 (together, the "Preservation Orders"). These Preservation Orders adopted in part and modified in part the earlier April 4, 2022 and May 23, 2022 preservation recommendations from the Special Master (Dkt. Nos. 604 and 665, respectively), and the Court already ruled that it "will not reconsider the scope of the Preservation Orders but is now focused solely on achieving implementation of those orders within fixed time frames with firm deadlines." Dkt. No. 815 at 3.

Google has not come close to meeting its burden to demonstrate that reconsideration is appropriate. Procedurally, Google failed to comply with Civil L.R. 7-9, which requires that Google 1) obtain leave of Court prior to filing the motion; 2) demonstrate "reasonable diligence" in bringing the motion; and 3) show the emergence of a new fact previously unavailable.[2] While Google introduces nine new fact witnesses, Google makes no showing as to why the untested facts these witnesses advance could not have been provided previously. Substantively, Google's Motion is also deficient. Although Google's motion rests almost entirely on burden, Google has not submitted evidence of the actual costs associated with preservation. Rather, Google only provides illustrations based on retail cloud storage costs that Google charges to individuals and small businesses.  Google fails to tell the Court what its actual costs are, a deficiency plaguing Google's prior submissions as well. Google also fails to provide any details that could inform the Court's evaluation of relevance—even the "linking" or "mapping" tables that Google wants license to delete are nowhere identified, let alone described in sufficient detail. The Motion should be denied.

Google's failure to offer Plaintiffs any opportunity to discuss, let alone test, its assertions, are alternative procedural and substantive grounds for denying the Motion.  Google neither tried to confer with Plaintiffs nor offered any opportunity to test the assertions of its declarants.  Thus, if

---

[2] Reconsideration can also be appropriate following a change in governing law and/or when the movant demonstrates manifest error by the deciding judge, Civil L.R. 7-9(b), but Google did not raise these bases in its Motion.

1   the Court were to consider Google's motion for reconsideration (in whole in or in part), it would

2   be deeply prejudicial to render any ruling based only on Google's say-so. Not only does Google

3   attempt to put into evidence new declarations from employees never previously identified, but the

4   credibility of the declarants' assertions is further undermined because Google **counsel** also just

5   revised Google's one-year ████████ preservation cost illustrations down from ████████ to

6   ████ during the pendency of this Motion. *See* Google LLC's November 29, 2022

7   Administrative Motion to Supplement Motion for Relief at 2 ("Supp. Mot.", Dkt. No. 929-3

8   (sealed); 930 (public redacted)). An even more dramatic reduction was made to the three-year

9   illustrations – counsel now say that the cost would be ████████, not the ████████ claimed

10  just last month. *Id*. Worse, Google's declarants elected not to update the sworn testimony of any of

11  the nine Google employee declarants in Google's prior submissions, which these contradict. Not a

12  single Google declarant explains how such huge cost estimate reductions could have happened just

13  in the past few weeks. The untested, and controverted, declarations by Google do not satisfy the

14  procedural or substantive standards for a motion for reconsideration.  In the event the Court is

15  inclined to consider them, Plaintiffs should be afforded the opportunity to take discovery of them.

16       The prejudice to Plaintiffs lies not only in Google's repeated re-litigation of these issues.

17  The relief Google seeks in this Motion is substantively dangerous.  First, Google asks the court to

18  relieve it of its obligation to preserve how it has mapped activity of users when they are signed and

19  signed out.  This is a critical piece of Plaintiffs' case:  that Google is surveilling Chrome users even

20  when they are signed out, an issue which this Court has noted is hotly contested, and a practice

21  Plaintiffs are sure a jury will find quite troubling.  If evidence relating to this issue is not preserved,

22  Plaintiffs will be deeply prejudiced at trial. Second, Google now claims that Plaintiffs should bear

23  costs of this preservation, with no opportunity to test Google's contradictory, non-specific and

24  suspect assertions made by nine new declarations never previously identified as having any

25  knowledge of anything related to this case.  Imposing this kind of financial burden on Plaintiffs -

26  particularly when Google had so many opportunities to offer these witnesses during discovery -

27  would penalize Plaintiffs for Google's vexatious discovery tactics. Thus, the relief Google now

28  seeks should be denied.

1

## II.    LEGAL STANDARD

2

A motion for reconsideration is governed by Civil Local Rule 7-9, which in turn requires

3

leave of Court, see Rule 7-9(a). Leave of Court may only be granted if the movant "specifically

4

show[s] reasonable diligence in bringing the motion" and one or more of the following:

5

> (1) That at the time of the motion for leave, a material difference in
> fact or law exists from that which was presented to the Court before entry

6

> of the interlocutory order for which reconsideration is sought. The party also
> must show that in the exercise of reasonable diligence the party applying

7

> for reconsideration did not know such fact or law at the time of the
> interlocutory order; or

8

9

> (2) The emergence of new material facts or a change of law
> occurring after the time of such order; or

10

11

> (3) A manifest failure by the Court to consider material facts or
> dispositive legal arguments which were presented to the Court before such

12

> interlocutory order.

13

Civil L.R. 7-9(b).

14

Whether or not subject to Civil Local Rule 7-9's leave requirement, reconsideration is an

15

"extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial

16

resources." *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000); *see also*

17

*Alkutkar v. Bumble Inc*., No. 22-cv-00422-PJH, 2022 WL 16973253, at *1 (N.D. Cal. Nov. 16,

18

2022) (reconsideration should be "granted only in 'highly unusual circumstances'") (quoting

19

*Kona*). Absent a change in controlling law, a District Court may only reconsider a prior order if it

20

was "clearly erroneous.". "To be clearly erroneous, a decision must strike us as more than just

21

maybe or probably wrong; it must, as one member of this court recently stated during oral argument,

22

strike us as wrong with the force of a five-week old, unrefrigerated dead fish." *Fisher v. Roe*, 263

23

F.3d 906, 912 (9th Cir. 2001), *overruled on other grounds by Payton v. Woodford*, 346 F.3d 1204

24

(9th Cir. 2003).

25

## III.    FACTUAL AND PROCEDURAL BACKGROUND

26

On April 4, 2022, the Special Master, after months of discovery and briefing, submitted to

27

the Court a Report and Recommendation for a data log preservation plan. Dkt. No. 604. The Court

28

then set a schedule for formal, written objections, due by April 25, 2022, *see* Dkt. No. 606, and

held a sealed hearing on the objections on May 4, 2022. Dkt. No. 648. The Court then ordered the Parties back to the Special Master to address certain of the objections and set an additional hearing on June 30, 2022. Dkt. No. 667. The Court requested additional process with the Special Master, Dkt. No. 749, and finally approved a modified preservation plan on July 15, 2022. Dkt. No. 766 (sealed); Dkt. No. 778-3 (public redacted). The Court specifically found that the Special Master "appropriately took into account the burden of preserving the relevant data sources." Dkt. 778-3 at 5. The Court also found that the preservation plan does impose burdens, but not "undue burdens." *Id*. at 6. The Court also held a hearing on August 4, 2022, giving Google yet another opportunity to address burdens, including testimony from Google employees live at the hearing. On August 5, 2022, the Court issued an order on (1) Google's Administrative Motions for Extension/Clarification of Preservation Plan Orders; and (2) *Calhoun* Plaintiffs' Administrative Motion for Clarification of Preservation Plan Order. Dkt. No. 815.

## IV.    ARGUMENT

### A.    Google's Failure to Comply with Civil Local Rule 7-9 Calls the Credibility of the Basis for the Motion into Question.

#### 1.    *Google's Motion Is a Motion for Reconsideration*

Despite the fulsome evidentiary record before the Court from multiple rounds of briefing and oral argument, and months after the Court issued its final orders, Google now moves this Court for relief from the July 15 and August 5 Orders by submitting an entirely new, and contradictory, factual record.[3]

Google claims to proceed under Fed. R. Civ. P. 26—arguing that preservation of certain ███████ would not be proportionate to the needs of the case. Mot. at 11–17.[4] This is the exact argument, based on the exact Federal Rule, repeatedly raised by Google in the past. *See, e.g.*,

---

[3] In the November 3, 2022 Order setting the initial briefing schedule for this motion, the Court permitted Plaintiffs to raise this argument in today's opposition brief. *See* Dkt. No. 906, at 1.

[4] Google's failure to correctly identify the governing rules that applies to its motion for reconsideration does not change that this is the standard that applies. *See, e.g., U.S. ex rel. v. TL Peterson, Inc.*, No. 4:17-cv-2277-KAW, 2018 WL 11436319, at *2 (N.D. Cal. Nov. 1, 2018) (Court applied Civil Local Rule 7-9, disregarding movant's assertion that it was proceeding under Fed. R. Civ. P. 59(e)).

1    Google's Objections to Special Master Report and Recommendations, Dkt. No. 695 (Objection No.

2    1). The Court then repeatedly referenced the proportionality provisions of Rule 26 in its July 15,

3    2022 Preservation Order. *See, e.g.*, Dkt. No. 766 at 2, 5, 6; *see also id.* at 7 (overruling Google's

4    objection as to proportionality). Google's motion is therefore plainly a motion for reconsideration.

5        The recent decision in *Moriarty v. Am. Gen. Life Ins. Co.*, No. 17-CV-1709-BTM-WVG,

6    2018 WL 11453817 (S.D. Cal. Dec. 31, 2018) is instructive. Plaintiffs moved to compel testimony

7    relating to specific deposition topics. The Court allowed briefing, held a hearing for more than an

8    hour and allowed objections, ultimately ruling that the requested topics "were relevant and

9    proportional to the needs of the case[,] and that Defendant had failed to demonstrate the deposition

10   on these topics was unduly burdensome." *Id.* *1, 7. Defendant thereafter filed a motion for a

11   protective order under Rule 26 and argued that the deposition topics were "duplicative, cumulative,

12   and burdensome." *Id.* at *7. The Court found that "that the ***present Motion is a***

13   ***thinly veiled motion for reconsideration***" because the Court already addressed Defendant's

14   arguments on these topics. *Id.* at *1, 7 (emphasis added). Further, "the Court already addressed and

15   rejected the ***exact*** arguments Defendant now offers and Defendant has not provided sufficient

16   reason for the Court to reconsider its previous order," including failing to offer an intervening

17   change of controlling law, new evidence, clear error, or manifest injustice." *Id.* at *7 (emphasis

18   added); *see also Taylor v. Costco Wholesale Corp.*, No. 3:18-cv-00586-MMD-CBC, 2020 WL

19   1430540 (D. Nev. Mar. 23, 2020) (construing motion for relief as a motion for reconsideration);

20   *ViaSat, Inc. v. Space Sys./Loral, Inc.*, No. 12-CV-0260-H (WVG), 2013 WL 3467413 (S.D. Cal.

21   July 10, 2013) ("Defendants' argument is a barely veiled motion for reconsideration.").

## 2.    *Google Failed to Obtain Leave of Court*

23       The Northern District Local Rules prohibit any party from noticing "a motion for

24   reconsideration without first obtaining leave of court to file the motion." Civil L.R. 7-9. "The Local

25   Rules do not permit any deviation from this requirement." *Oliver v. City and Cnty. of San*

26   *Francisco*, No. C 07-2460 JL, 2009 WL 10736489, at *1 (N.D. Cal., Mar. 23, 2009). If a movant

27   fails to obtain leave of Court prior to filing, denial of the motion is mandatory. *Id*. at *2 (citing *Liao*

28   *v. Quidachay*, No. C 05-1888 CW, 2007 WL 196672, at *2 (N.D. Cal. Jan. 24, 2007)) ("a motion

for reconsideration which fails to satisfy the requirements of Local Rule 7-9 must be denied");

*Ankele v. Johnson*, No. C 04-04811 JW, 2005 WL 1459553, at \*2 (N.D. Cal. Jun. 21, 2005) (failure

to obtain leave of court before filing a motion to reconsider "alone warrants dismissal" of the

motion); *accord, U.S. v. Rosas-Ramirez*, No. 18-CR-00053-LHK-1, 2019 WL 1518162, at \*1–2

(N.D. Cal. Apr. 8, 2019) (applying Civil Rules). The reason for this Rule is to spare the Court from

repeated attacks on matters already adjudicated, which waste the Court's valuable resources. Here,

Google engages in precisely the same tactics that give rise to the Rule.

### 3.    *Google Failed to Demonstrate "Reasonable Diligence"*

When seeking reconsideration of a prior interlocutory order based on new evidence, Civil

Local Rule 7-9 provides:

> The moving party must specifically show reasonable diligence in bringing the
> motion and one of the following: . . . (1) That at the time of the motion for leave,
> a material difference in fact or law exists from that which was presented to the
> Court before entry of the interlocutory order for which reconsideration is
> sought. The party also must show that in the exercise of reasonable diligence
> the party applying for reconsideration did not know such fact or law at the time
> of the interlocutory order.

Civil L.R. 7-9(b)(1).

"A motion for reconsideration may not be used to raise arguments or present evidence for

the first time when they could reasonably have been raised earlier in the litigation." *Marlyn

Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 880 (9th Cir. 2009) (internal

citation omitted); *accord, Finjan, Inc. v. Cisco Sys. Inc.*, No. 17-cv-00072-BLF (SVK), 2020 WL

13180006, at \*1 (N.D. Cal. Jun. 18, 2020). New facts presented in a motion for reconsideration "do

not provide a basis for reconsideration" if they "could have been presented to the Court prior to"

the interlocutory order. *Iglesia Ni Cristo v. Cayabyab*, No. 18-cv-00561-BLF, 2020 WL 3833281,

at \*2 (N.D. Cal. Jul. 8, 2020); *see also Sch. Dist. No. IJ v. AC & S, Inc.*, 5 F.3d 1255, 1263 (9th Cir.

1993) ("The overwhelming weight of authority is that failure to file documents in an original

motion or opposition does not turn the late filed documents into 'newly discovered evidence.'").

Furthermore, the movant has the burden to explain why it was unable to "discover[] the evidence

1    sooner through the exercise of reasonable diligence." *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986,

2    998 (9th Cir. 2001).

3       Here, the Preservation Orders did not come out of the blue. They were crafted with months

4    of input from both sides under the supervision of the Special Master. *See* Dkt. No. 815 at 2 ("The

5    process of developing a preservation plan . . . began in earnest in early January 2022"). After the

6    Special Master recommended the first preservation plan on April 4, 2022, each side submitted

7    objections, and the Court held a hearing on May 3, 2022. The Special Master then modified his

8    recommendation on May 23, 2022, with input from both sides. As the Court found on July 15,

9    2022, through this process Google established "the extraordinary burden to Google associated with

10    preserving, in their entirety, the wide range of data sources that have been identified in these cases."

11    Dkt. No. 766 at 5. Nevertheless, the Court found that the current plan "strikes an appropriate and

12    necessary balance between the need to preserve relevant data in an immense universe of data,

13    without imposing undue burden with careful consideration for the practical challenges to both

14    Parties to manage vast data sets." *Id*. at 6. Google specifically made arguments regarding undue

15    burdens associated with the exact data sources at issue in today's Motion, and the Court accepted

16    some and rejected some. *Id*. at 8; *see also id*. at 9–10 (specifically addressing burdens associated

17    with preservation of ▮▮▮▮ data). Google had the opportunity to present the "new facts" prior to

18    the issuance of the July 15, 2022 Order, and failed to do so.

19       On July 27, 2022, Google filed an administrative motion to extend the preservation

20    compliance deadline, originally set for July 30, 2022. The basis for the motion was the

21    "extraordinary engineering efforts" required to comply. Order of August 5, 2022, Dkt. No. 815 at

22    2. The Court ordered Google to provide additional factual support for the motion, which Google

23    did on July 29, 2022. The Court then set a Zoom hearing for August 4, 2022, and even permitted

24    Google to bring "several Google representatives with personal knowledge of the data preservation

25    issues to the hearing." Dkt. No. 815 at 2–3.

26       Following the hearing, the Court issued a ruling on Google's motion for extension of time

27    to comply with the July 15, 2022 preservation order. The Court extended the deadline to October

28    28, 2022, expressly ruling that "***the Court will not reconsider the scope of the Preservation Orders***

1   ***but is now focused solely on achieving implementation of those orders within fixed time frames***

2   ***with firm deadlines***." Dkt. No. 815 at 3 (emphasis added). The Court further expressly held that

3   the order granting the extension was based on Google's express representation that the extended

4   deadline would be met, on pain of sanctions:

5   
6   the Court finds the extensions are acceptable in light of Google's repeated
    representations on the record that the vast majority of data that would have been
    preserved if Google had complied with the original July 30, 2022 implementation

7   deadline will be preserved if implementation is completed by the new deadlines. A
    further significant factor in the Court granting certain extensions is Google's

8   representation that the proposed deadlines, while challenging, will be met. ***The
    Court will not entertain further requests for extensions. Missed deadlines will be***

9   ***met with sanctions pursuant to this Court's authority.***

10  *Id.* (emphasis added).

11         Google provides no reason why the evidence in support of the Motion could not have been

12  provided two years ago when it first sought its data log protective order; or during fact discovery;

13  or during the Special Master-directed process specifically focused on the preservation dispute; or

14  at the August 4, 2022 hearing when the Court permitted Google to present live witnesses on this

15  very topic.

16         This Court's recent ruling in *Micron Tech., Inc. v. Factory Mut. Ins. Co.*,

17  No. 3:18-cv-07689-LB, 2022 WL 3083713, at *4 (N.D. Cal. Aug. 3, 2022) applies. There, the

18  defendant presented arguments regarding the burdens associated with a discovery order, which the

19  Court rejected. In the motion for reconsideration, the defendant included updated facts detailing the

20  resources and attorney hours needed to comply. *Id*. The Court denied the motion, noting that the

21  updated facts "are not new or different facts relative to what the court previously considered. And—

22  as the court noted in its order—burdens that resulted from [defendant's] own record-keeping

23  practices cannot be used to shield it from discovery." *Id*.

24      **B.**    **Granting Google's Motion Would be Unfairly Prejudicial to Plaintiffs**

25         Google's belated evidence is improper and prejudicial. "If a party fails to provide

26  information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use

27  that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the

28

PLAINTIFFS' OPPOSITION TO GOOGLE'S MOTION FOR RELIEF
CASE NO.: 4:20-cv-05146-YGR-SVK

failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1) (failure to disclose or supplement).

Early in this case Plaintiffs served RFPs asking Google to produce documents sufficient to identify all witnesses likely to have information relevant to this action. In response, on January 20, 2021, Google provided a chart identifying 501 Google employees by name, their organizational division, name of manager, and title, which Google's transmittal letter expressly noted was intended to "aid the parties in negotiating a set of ESI custodians." *See* Joint Decl., ¶¶ 3-4; Ex. A thereto (GOOG-CALH-00024734); and Ex. B thereto (transmittal letter). This chart was the starting point for the parties' negotiations over who would be formal ESI custodians, and eventually who would be deposed. But Google's new evidence comes from nine Google employees, none of whom were ESI custodians, none were deposed, and seven were not even identified by Google as relevant employees in the original list of 501 employees. Joint Decl. ¶ 5. Google also failed to update the chart at any time, and most of the declarants are not the same ones that Google used originally during the Special Master process. Plaintiffs are thus seeing some of these names for the very first time. Rule 37(c), therefore, bars Google's from presenting these new declarants to support a motion for reconsideration. *Woods v. Google LLC*, No. 5:11-cv-01263-EJD, 2019 WL 1936241, at *2–3 (N.D. Cal. May 1, 2019) (new evidence in support of motion for reconsideration deemed "inadmissible" where late production violated Rule 37(c)). And because these new declarants are not ESI custodians, there are almost no documents authored by them in the documents produced by Google; Plaintiffs are in the dark about their roles and bases of knowledge. Specifically:

| Declarant | Previously Identified as a Relevant Employee? | ESI custodian? | Emails in Production Authored by Declarant |
|---|---|---|---|
| Lawrence Greenfield | No | No | 0 |
| Joshua Halstead | No | No | 0 |
| Jifei Gao | No | No | 1 |
| Benjamin Kornacki | No | No | 7 |
| Julian Kranz | Yes | No | 448 |
| Srilakshmi Pothana | No | No | 0 |
| Patrick Quaid | No | No | 5 |
| Daryl Seah | Yes | No | 357 |
| Danny Talavera | No | No | 13 |

1    *See* Joint Decl. ¶ 6.

2         As this data shows, Plaintiffs have no insight into most of these declarants, including: who

3    communicates with whom, and about which topics, and on what dates—all of which are useful

4    when evaluating the declarations. For example, because declarant Daryl Seah communicates often

5    with ESI Custodians, we know from the data metrics that Mr. Seah most often communicates with

6    Chris Liao, Bert Leung, Uwe Bubeck and Michael Kleber, all of whom are known to Plaintiffs

7    (Joint Decl. ¶ 7), and we also know what key words are most likely to appear in his emails (for Mr.

8    Seah, these include "experiments" and "device" and "gaia"), and we even know when the key words

9    are different in emails sent off-hours (for Mr. Seah, these include specifically the word "consent").

10   *Id.* But for seven of the declarants, Plaintiffs are denied any corresponding data and would need at

11   least limited document discovery.

12        Plaintiffs are also concerned that the declarations raise more questions than they answer—

13   and there is no better proof than Google's last-minute admission that their ████████ illustrations

14   were off by ████████ of dollars. Specifically, Google told this Court in the Motion that preservation

15   of the ████████ would cost ████████ for one year, and ████████ for three years. Motion

16   at 8. These illustrations were based on the declaration of Mr. Greenfield, which in turn relied on

17   the declaration of Mr. Quaid. *Id.* A few weeks later, Google counsel filed a supplement saying that

18   Google is able to filter ████████ so that only the relevant fields will be preserved, which then

19   lowered the one-year preservation "costs" from ████████ to ████████; the three-year estimates

20   fell even more dramatically, from ████████ to ████████. *Cf.* Mot. at 8 with Supp. Motion at

21   2. Google does not fully explain how or why this happened, and also elected not to file updated

22   declarations for Mr. Quaid and Mr. Greenfield.

23        The contents of these declarations further call their credibility into question. For example,

24   Mr. Quaid says that his data volume estimates are based on "tests," *see* Quaid Decl. ¶ 9, but no

25   details are provided about these "tests," who conducted them or when. There are also unexplained

26   inconsistencies in the declarations. For example, Mr. Quaid reports that the "compressed" size of

27   the ZWBK ████████ snapshot is ████████, *see* Quaid Decl. ¶ 10, but he does not use a

28   comparable "compressed" figure for the related preservation pipelines—figures which declarant

Lawrence Greenfield uses in his sole basis for the cost estimates that appear in the Motion. *See* Greenfield Decl. ¶¶ 14–15. Plaintiffs have a right to know why Google is using compressed data figures for the snapshot but not for the pipeline. If the Court were to consider the substance of Google's late-raised arguments regarding proportionality and relevance, Plaintiffs must have an opportunity to conduct discovery and to depose some or all of the declarants. "To allow consideration of the [new declarations] now would require (a) reopening discovery . . . (b) permitting additional rounds of motion practice, and (c) having the court revisit issues that have already been fully briefed and decided after years of litigation. The prejudice to [opponent] if the court were to allow these further proceedings is manifest." *Woods*, 2019 WL 1936241, at *3.

C.    **Google's Request for Relief from Preservation of the ▮▮▮▮▮ Should Be Denied**

Leaving aside the procedural deficiencies noted above and leaving aside that the Court already held that it will not reconsider the scope of the Preservation Orders, Google's request to stop preserving the ▮▮▮▮▮ should be rejected on its face. Google "estimates" that preservation of the ▮▮▮▮▮ would cost approximately ▮▮▮▮▮ after the first year and increase to ▮▮▮▮▮ by the end of three years. *See* Supp. Mot. at 2 (revising the estimates in Mot. at 8). But Google presents no *evidence* to support these estimates—instead, Google provides *illustrations*. The only basis for the cost estimates comes from the declaration of Lawrence Greenfield (an employee never before revealed to Plaintiffs) who shrugs off the failure by saying, "[e]stimating the cost of storing a given amount of data for a given length of time by attempting to calculate all of those associated costs would be a highly complex exercise." Greenfield Decl. ¶ 5. He therefore instead uses the rates that Google charges to its Google Cloud Storage retail customers including businesses and individuals. *Id*. ¶ 6. This sleight of hand is not revealed in the Motion itself, which simply asserts that the "cost" would be ▮▮▮▮▮ (Mot. at 1), or ▮▮▮▮▮ (Mot. at 8), and a bare cite to the Greenfield Declaration. This is remarkable because Google provides detailed footnotes explaining the math for the *data volume* estimates (*see, e.g.,* Mot. at 6, n. 4, 5 and 6), but the *cost* estimate is not similarly explained. Google counsel then admit that the one-year estimate should actually be reduced to ▮▮▮▮▮ (and the three-year estimate should be reduced to ▮▮▮▮▮), Supp. Mot. at

2, but without fully explaining why, and without filing any corrected declarations. *See* Supp. Mot. at 1 n.1 (offering to submit an updated factual declaration at the Court's request – denying Plaintiffs the ability to consider them in this brief).

Google's argument regarding the relevance or necessity of the ▮▮▮▮ should also be rejected—because it already has been rejected, both by the Special Master and the Court, many times before. Between May 4 and 17, 2022, "the Special Master held a series of conferences and received additional submissions from the Calhoun Parties, culminating in" the Special Master's revised recommended preservation plan. Dkt. No. 766 at 3. The Court stated that a "key feature" of the modifications was the addition of "full preservation" of ▮ data sources (▮ would remain as sampled, and ▮ were removed entirely). *Id*. As the Court noted, the "[p]arties had an opportunity to object to the modifications . . . and to respond to their opponents' objections." *Id*. The Court then further modified the order with respect to the ▮ data sources (including ▮▮▮) in light of evidence and argument submitted by both sides. The Court then issued *de novo* findings and specifically found these data sources to be "relevant." *Id*. at 5; *see also id*. at 6 ("the Court finds that the preservation plan . . . strikes an appropriate and necessary balance between the need to preserve relevant data in an immense universe of data, without imposing undue burden and with careful consideration for the practical challenges to both Parties to manage vast sets of data.") The Special Master, the Parties, their experts and declarants have all trod this path many times before. The Court ruled. Google's recycled arguments regarding relevance and burdens should again be rejected.

### D. Google's Request for Relief from Preservation of Mapping and Linking Tables Should Be Denied

This is Google's third attempt at reconsideration of an order requiring preservation of mapping and linking tables , and, as with all prior attempts, it should be rejected.[5]

---

[5] Google first sought relief from this portion of the Preservation Orders in the Objections briefing to the Special Master's Report and Recommendation re Calhoun Modified Preservation Plan. *See* Dkt. 713-3 (Sealed); 714 (Public Version), Google's Resp. to Pls' Objections to Special Master's Report and Recommendation re Calhoun Modified Preservation Plan at 5 (arguing that it should only be required to preserve one mapping table, the ▮▮▮). The request was denied. *See* Dkt. 766. Thereafter, Google again sought relief from preservation of mapping and linking tables, seeking leave to only preserve the ▮▮▮▮. *See* Dkt. 786-3 (Sealed), Google's Admin. Mot. Updating the Court on its Preservation Efforts and Seeking Relief at 2). This request was again denied. Dkt. 815.

1

2

> **1.** *Google's Interpretation Regarding Preservation of Mapping and Linking Tables Is Not Consistent with the Court's Preservation Orders*

3

4

5

6

7

8

9

10

11

On July 15, 2022, the Court ordered that "[m]apping tables are to be preserved in their entirety." Dkt. 766 at 8. Thereafter, Google moved to, in effect, clarify and limit this order, reporting to the Court that it was only preserving one mapping table, the ███████████████. *See* Dkt. 786-3 (Sealed) at 2. On August 5, 2022, the Court denied Google's request, stating: "Google's submission indicates that it is preserving only a single mapping table, despite this Court having previously ruled on objections specifically directed to mapping tables. [*See* Dkt. 766]. The Court's Preservation Orders require Google to preserve **all** mapping and linking tables. Google's request to limit or clarify this aspect of the Preservation Order is denied." Dkt. 815 (Sealed) at 13 (emphasis in original).

12

13

14

15

16

17

Critically, prior to denying Google's request, the Court held a hearing on August 4, 2022, during which Google was given ample opportunity to plead its case. *See* Aug. 4, 2022 Hr'g Tr. at 48:5–52:2, 90:5–91:12, 100:14–107:15. At the conclusion of that hearing, the Court clarified that its order applied to all mapping tables that "map[] the IDs" and that "relate to the logs and fields that [][] the parties have worked with so intimately over these last 18 months." Aug. 4, 2022 Hr'g Tr. at 104:2–22. The Court further engaged in the following colloquy with Plaintiffs' counsel:

18

19

20

| The Court: | I think – the order is clear. It's not limited to just one table. The mapping tables – if you would need a mapping table to work with any of the data that is being exchanged in this case, that table has to be preserved. … |

21

22

23

| Mr. Barnes: | I'm concerned that once you reiterate that you are not allowing Google to decide what is relevant with that last comment because I know you didn't intend to, but I know the way these things go. They parse every comment you make and say, "Oh, she said 'all,' but then at the end she said the data in this case. I'm sorry to jump in, Your Honor, but. |

24

| The Court: | Mr. Barnes, I think my order again is perfectly clear. |

25

| Mr. Barnes: | Thank you. I do too. |

26

27

| The Court: | If it doesn't relate to the data in this case, it is never going to come up. If it relates to the data in this case, it does. |

28

1

2

| Mr. Barnes: | Well, Your Honor, on that point, Mr. Ansorge just gave you an example of things they are claiming does not relate to the data in this case that absolutely does relate to the data in this case. The issue. |

3

| The Court: | All right, Mr. Barnes. That's fine. That's fine. It's all mapping tables. Okay? |

4

| Mr. Barnes: | Thank you. |

| The Court: | I can't make it any more clear. The order is written. |

5

6

Aug. 4, 2022 Hr'g Tr. at 106:13–107:17.

7       Notwithstanding this clarification, Google now asserts that it "does not understand the

8   phrase 'all mapping and linking tables' to refer to *any* table that provides a map or link between

9   any type of value, including *non-identifier* values, and any other value stored in Google's systems."

10   Mot. at 20:5–7 (emphasis in original). Rather, Google contends that the Court's order calls for

11   preservation of only mapping and linking tables that relate to the subset of logs that the Court has

12   ordered be preserved. But Google's interpretation directly contradicts the Court's ruling. By

13   limiting preservation to only the subset of preserved logs Google is excluding mapping and linking

14   tables that "map[] the IDs" and "relate to the logs *and fields*[.]" Aug. 4, 2022 Hr'g Tr. 104:9–14

15   (emphasis added).

16       Google has, in effect, unilaterally amended the Court's preservation order. It has decided

17   that "all" means "some," ignored the Court's limiters that preserved tables be mapped to IDs and

18   relate to not just logs but also fields, and has done so without specifying what is being excluded

19   from preservation, *e.g.,* which mapping tables Google has failed to preserve.[6] Google rationalizes

20   its decision by arguing that the only key to relevance is that preserved mapping tables must be

21   tethered to the preserved logs; otherwise, in Google's view, the preservation order would be too

22   attenuated and thus neither relevant nor proportional. *See* Mot. at 19–20. But this scope argument

23   has already been briefed, argued, and decided (repeatedly) by the Court. *See, e.g.*, Dkt. 766 (Sealed)

24   at 9 (holding that "mapping tables are to be preserved in their entirety"); Dkt. 815 (Sealed) at 13

25   (rejecting Google's request to limit or clarify its duty to preserve mapping tables to only the ▮▮▮▮

26   ▮▮▮▮▮  and reiterating that duty to preseve extended to "**all** mapping and linking tables")

27

─────────────────────

28   [6] Google's motion does not specify the mappings it will preserve, nor has Google informed
    Plaintiffs of them either.

1   (emphasis in original); Aug. 4, 2022 Hr'g Tr. at 51:21–24 (noting that "the time to argue about the

2   scope of mapping tables is at the objection phase. I read the parties' papers. I heard the argument.

3   I sustained [Plaintiffs'] objection. The order stands."); Aug. 4, 2022 Hr'g Tr. at 105:18–106:2

4   (noting that the "ship has sailed" on Google's request for further limitations on preservation of

5   mapping tables).[7] And, during the August 4, 2022 hearing, the Court aptly addressed relevance and

6   proportionality by expressly stating that the mapping and linking tables at issue must relate to logs

7   *and fields*, and they must *map the identifiers* to each other, regardless of the specific log or data

8   source where it is stored. *See* Aug. 4, 2022 Hr'g Tr. at 100:14-107:14. Google's current attempt is

9   nothing more than another iteration of the same scope arguments and it should be rejected.

10          Moreover, Google's self-serving interpretation of the Court's order is highly prejudicial to

11   Plaintiffs. For example, Google's interpretation of the Court's order would exclude mapping tables

12   from key data sets that have been at issue throughout this case. By way of example, Google's ability

13   to tie signed in data to signed out data is a critical element of Plaintiffs' arguments that Google is

14   surveillance class members across the web. But Google is proposing to exclude:

- mapping tables from the ███████████ (a Google service that
  ███████████);

- mapping tables from Google Ads logs relating to data that Chrome sends
  to Google.com when a user is exchanging communications on a non-
  Google website (a data set that is specifically alleged in Plaintiff's
  complaint, *see, e.g.,* Dkt. 3-3 ¶¶ 155–167, 170–172, 176–178, 182–192);
  and

- mapping tables between identifiers and those that Google has categorized
  to be "non-identifiers," which are often contained as *fields* within relevant
  logs), *e.g.,* Biscotti to Gaia, IDFA to Biscotti, IDF to Gaia.

---

[7] Google also argues that Plaintiffs have not identified specific mapping tables. Mot. at 4. But the Court has already rejected this argument:

> That's part of the frustration is you're asking Plaintiffs to – 'Well, you tell us what
> – you tell us what in our trove of data is relevant' and that's not an appropriate
> approach, Mr. Ansorge. We have had this conversation. How are they to know?
> They don't have insight into – to be able to identify the relevant mapping tables
> particularly where they asked and there was not an answer given. … The time to
> argue about the scope of mapping tables is at the objection papers. I read the parties'
> papers. I heard the argument. I sustained the objection. The order stands.

Aug. 4, 2022 Hr'g Tr. at 51:6–24.

As to the last bullet point, this dispute has been previously framed as a distinction between authenticated verses unauthenticated identifiers. This Court previously noted that the "issue of whether these [authenticated and unauthenticated] identifiers can be linked to a specific user, and hence qualify as authenticated data, is, and has been throughout this case, hotly disputed by the parties." Dkt. 862-1 (Sealed), Order on Plaintiffs' Motion for Sacntions for Discovery Misconduct, Findings of Fact at 22, ¶ 84. Thus, Google's attempt to exclude "non-identifiers" from the scope of mapping tables appears to be another run as this authenticated versus unauthenticated dispute[8]— one which Google should not be permitted to relitigate under the guise of new evidence and reconsideration.

Compounding the prejudice is the fact that Google provides no transparency into what it is preserving as opposed to what it has deemed irrelevant. As highlighted in past discovery disputes, and discussed further below, Google continues to engage in a practice of providing piecemeal information that only advances its own positions wihtout affording any real insight into what Google is doing. These tactics have caused unnecessary delays, time-consuming briefing, and prolonged discovery. Absent transparency, it is impossible to evaluate and credit any claims made in Google's current motion.

Google's attempt to narrow the scope of the Court's preservation order as to mapping and linking tables should be rejected.

**2.    *Google Should Not Be Relieved from Preserving the* ███████ *Tables and* ███████ *Tables***

Google's motion seeks relief from preservation of ███████ Tables and ███ ███ Tables on the basis that these tables are irrelevant and preservation overly burdensome. *See* Mot. at § B.1. As discussed above, issues of relevance, portionality and burdens have already been addessed and resolved during prior hearings.

---

[8] Discovery from Google reveals that authenticated and unauthenticated identifiers are mapped to one another. Most recently, on October 28, 2022, Google produced fields from Gaia ██████, Zwieback ██████, and Biscotti ██████ which demonstrate that these three identifers – Gaia (what Google terms an authenticated identifier), Zwieback, and Biscotti (what Google terms unauthenticated identifers)—are *directly* linked in various ██████ columns.

1    Moreover, Google's motion creates more confusion than answers. With respect to its

2    request for relief from preservation of ▮▮▮▮▮ tables, Google argues that preservation is

3    not warranted because "the links contained in those tables are derived from *other* tables that Google

4    is separately preserving." Mot. at 17 *citing* Seah Decl. ¶ 5. But the Seah declaration provides no

5    specificity as to what identifiers are linked in the ▮▮▮▮▮ tables or which underlying

6    tables (which Google claims it is separately preserving) are sources of these ▮▮▮▮▮

7    tables. Without this information, Plaintiffs are unable to substantiate Google's claim that the

8    information is derivative or otherwise unnecessary.

9    With respect to Google's request for relief from preservation of ▮▮▮▮▮ tables,

10   Plaintiffs dispute Google's claim that these tables would not be relevant. Google's relevancy

11   argument is based on the claim that the ▮▮▮▮▮ tables do not map Gaia IDs. *See* Mot. at 18

12   *citing* Pothana Decl. ¶ 5. But the Pothana declaration acknowledges that the ▮▮▮▮▮ tables

13   contain identifiers that are mapped to Biscotti ID and device ID (*e.g.,* iOS IDFA and Android

14   ADID). *See* Pothana Decl. ¶ 5. These mapping tables are relevant for two reasons: (1) Biscotti and

15   Device IDs are crucial to the identification of the Not Signed-In subset of Plaintiffs' proposed Class

16   (*see* Dkt. 339-20 (Sealed), Shafiq Report ISO Class Cert., § VI); and (2) Biscotti IDs can further

17   be linked to GAIA IDs. (*e.g.,* through ▮▮▮▮▮ logs[9] that simultaneously contain GAIA and

18   encrypted Biscotti IDs) for the identification of the Signed-in-But-Not-Consented-For-Sync subset

19   of Plaintiffs' proposed class (*see id.*).

20   **E.    Google's Request for ▮▮▮▮▮ Cost-Shifting Should Be Rejected**

21   In the Ninth Circuit, courts follow the seven-factor test imported from *Zubulake v. UBS*

22   *Warburg LLC*, 217 F.R.D. 309 (S.D.N.Y. 2003) when considering a request for cost-shifting. *See*

23   *Price v. Synapse Grp., Inc.*, No. 16-CV-1524-BAS (BLM), 2018 WL 9517276, at *10 (S.D. Cal.

24   Sept. 12, 2018) ("When considering cost shifting, courts in this circuit rely on the

25   seminal *Zubulake* factors."); *see also Tierno v. Rite Aid Corp.*, No. C-05-02520 TEH, 2008 WL

26

27

---

28   [9] ▮▮▮▮▮ logs are being preserved and decryption keys for encrypted Biscotti IDs in there are also
     being preserved.

3287035, at *4 (N.D. Cal. July 31, 2008) (characterizing the *Zubulake* factors as a "gold standard" in ESI discovery disputes).

Google does not address nor even mention the *Zubulake* factors in its Motion. But under a *Zubulake* analysis, the starting place is "the presumption is that the responding party must bear the expense of complying with discovery requests." *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 358 (1978); *see also Price*, 2018 WL 9517276, at *10 ("[t]he responding party generally bears the expense of complying with discovery requests."). In *Zubulake*, "Judge Scheindlin remarked that '[a]ny principled approach to electronic evidence must respect this presumption.'" *U.S. ex rel. v. Renown Health*, No. 3:12-cv-00295-LRH-VPC, 2015 WL 5056726, at *9 (D. Nev. Aug. 25, 2015) (quoting *Zubulake,* 217 F.R.D. at 317–18). Further, to overcome the presumption, *Zubulake* says that the movant must demonstrate that the ESI is not reasonable accessible, which Google has not done: "cost-shifting is appropriate *only* when the ESI is not reasonably accessible" due to undue burden or undue cost. *U.S. ex rel.*, 2015 WL 5056726, at *9–10 (collecting cases) (emphasis in original). Court then consider the seven factors set forth in *Zubulake*:

1.    Extent to which the request is specifically tailored to discover relevant information;

2.    Availability of such information from other sources;

3.    Total cost of production, compared to the amount in controversy;

4.    Total cost of production, compared to the resources available to each party;

5.    Relative ability of each party to control costs and its incentive to do so;

6.    Importance of the issues at stake in the litigation; and

7.    Relative benefits to the parties of obtaining the information.

*Price*, 2018 WL 9517276, at *10–11. Without mentioning the seven-factor test by name, Google's argument seems to be based only on a raw cost estimate, Mot. at 15–16, ignoring how these costs should be analyzed under *Zubulake*.[10]

---

[10] In its Rule 26 proportionality discussion, Mot. at 11, n.16, Google mentions the "parties' relative access to relevant information," which finds an analogue in the second *Zubalake* factor. Google states, without any evidence, that putative class members have "access" to "much" of the relevant ▓▓▓▓▓▓ information. It is unclear what information Google is talking about (other than IP addresses), or whether Google is suggesting that preservation burdens be shifted to millions of putative class members, or how that could even be accomplished. Google also says that putative

1      Applying all factors (or indeed, any of them), Google cannot make a case for cost-shifting.

2  Take, for example, factor 4, which requires that we compare the alleged costs to the resources

3  available to each party. In *John B. v. Goetz*, 879 F. Supp. 2d 787 (M.D. Tenn. 2010), the Court

4  rejected a cost-shifting request because "Defendant's resources are extensive and Plaintiffs'

5  resources are miniscule." *Id.* at 899 n. 42. Similarly, factor 3 instructs us to compare alleged costs

6  to the amount in controversy, which Google also did not do. But in *Goetz*, cost-shifting was further

7  rejected because "the amount in controversy is literally *billions* of federal funds that the Defendants

8  agreed to administer," the funds "dwarf the State's estimated $10 million cost of their ESI

9  production." *Id.*

10      Even if Google's raw cost estimates alone were sufficient under *Zubulake*, Google has not

11  provided the Court with any <u>evidence</u> of actual preservation costs (as noted above), instead using

12  an illustration of costs based on retail cloud storage prices that Google charges to individuals and

13  small businesses. Dkt. No. 897-4 (Greenfield Decl.). And even if such illustrations were acceptable

14  in concept, the details keep changing. Google originally told this Court that the ▊▊▊▊▊

15  preservation costs after one year would be ▊▊▊▊▊ (Mot. at 8), but during briefing, Google

16  revised that estimate down to ▊▊▊▊▊. *See* Supp. Mot. at 2. Similarly, Google's original three-

17  year cost estimate for ▊▊▊▊▊ preservation was revised down from ▊▊▊▊▊ to ▊▊▊▊▊

18  (*cf*. Motion at 8 to Supp. Mot. at 2), far below the costs at issue in *Goetz*. Google did not even

19  provide a supplemental declaration to explain how such radical changes could have happened (or

20  why the one-year estimates and the three-year estimates changed disproportionately) simply saying

21  that "Google is prepared to submit a supplemental factual declaration" if requested by the Court.

22  Supp. *See* Supp. Mot. at 1, n.1. Google's request for cost-shifting should therefore be denied.

23

24

25

---

26  class members "have access" to the URLs of web pages they visit through the
   myactivity.google.com feature. Plaintiffs vigorously dispute this contention -- "My Activity" will

27  only show a subset of URLs, and only if certain account settings are activated, and the log will lack
   vital information that the Special Master process revealed. Google does not explain how "My

28  Activity" could possibly be a substitute for preservation of ▊▊▊▊▊ with URLs.

1    **V.    CONCLUSION AND RELIEF REQUESTED**

2         Plaintiffs respectfully request that the Court deny the Motion. In the alternative, if the Court

3    were to consider the substance of Google's new facts asserted in support of its Motion and accept

4    them for their truth, Plaintiffs respectfully request a fair opportunity to explore whether Google's

5    cost-shifting estimates are credible or reliable, especially in light of Google's demand that Plaintiffs

6    bear those costs.

7    Respectfully Submitted this 9th day of December, 2022.

8

9    **BLEICHMAR FONTI & AULD LLP**                    **DICELLO LEVITT LLC**

10   By: */s/ Lesley E. Weaver*                        By:    */s/ David A. Straite*

11   Lesley E. Weaver (Cal. Bar No. 191305)            David A. Straite (admitted *pro hac vice*)
     Angelica M. Ornelas (Cal. Bar No. 285929)         Corban Rhodes (admitted *pro hac vice*)

12   Joshua D. Samra (Cal. Bar No. 313050)             485 Lexington Ave., Tenth Floor
     555 12th Street, Suite 1600                       New York, NY 10017

13   Oakland, CA 94607                                 Tel.: (646) 933-1000
     Tel.: (415) 445-4003                              Fax: (646) 494-9648

14   Fax: (415) 445-4020                               *dstraite@dicellolevitt.com*
     *lweaver@bfalaw.com*                              *crhodes@dicellolevitt.com*

15   *aornelas@bfalaw.com*

16   *jsamra@bfalaw.com*                               Amy E. Keller (admitted *pro hac vice*)
                                                       Adam Prom (admitted *pro hac vice*)

17   **SIMMONS HANLY CONROY LLC**                      Sharon Cruz (admitted *pro hac vice*)
                                                       Ten North Dearborn Street, 6th Fl.

18   By:    */s/ Jay Barnes*                           Chicago, Illinois 60602

19   Jason 'Jay' Barnes (admitted *pro hac vice*)      Tel.: (312) 214-7900
     An Truong (admitted *pro hac vice*)               *akeller@dicellolevitt.com*

20   Eric Johnson (admitted *pro hac vice*)            *aprom@dicellolevitt.com*
     Jenny Paulson (admitted *pro hac vice*)           *scruz@dicellolevitt.com*

21   112 Madison Avenue, 7th Floor
     New York, NY 10016

22   Tel.: (212) 784-6400

23   Fax: (212) 213-5949
     *jaybarnes@simmonsfirm.com*

24   *atruong@simmonsfirm.com*
     *ejohnson@simmonsfirm.com*

25   *jpaulson@simmonsfirm.com*

26   *Counsel for Plaintiffs*

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## **ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1(i)(3)**

I, David Straite, attest that concurrence in the filing of this document has been obtained from the other signatories. I declare under penalty of perjury that the foregoing is true and correct.

Executed this 9th Day of December, 2022, at San Francisco, California.

*/s/ David Straite*
David Straite

## **CERTIFICATE OF SERVICE**

I hereby certify that on December 9, 2022, I caused to be electronically filed the foregoing document using the CM/ECF system, which will send notification of such filing to all counsel of record registered in the CM/ECF system. Also, I caused to be served unredacted versions of all electronically filed documents on Google counsel via a file share link sent to the following recipients:

Alyssa G Olson
Quinn Emanuel Urquhart Sullivan LLP
alyolson@quinnemanuel.com

Andrew H. Schapiro
Quinn Emanuel Urquhart and Sullivan, LLP
andrewschapiro@quinnemanuel.com

Brett Watkins
Quinn Emanuel Urquhart and Sullivan LLP
brettwatkins@quinnemanuel.com

Carl Spilly
Quinn Emanuel Urquhart and Sullivan LLP
carlspilly@quinnemanuel.com

Crystal Nix-Hines
Quinn Emamnual Urquhart & Sullivan LLP
crystalnixhines@quinnemanuel.com

Diane M. Doolittle
Quinn Emanuel Urquhart & Sullivan, LLP
dianedoolittle@quinnemanuel.com

Donald Seth Fortenbery
Quinn Emanuel Urquhart & Sullivan, LLP
sethfortenbery@quinnemanuel.com

Jomaire Alicia Crawford
Quinn Emanuel Urquhart and Sullivan, LLP
jomairecrawford@quinnemanuel.com

Jonathan Sze Ming Tse
Quinn Emanuel Urquhart and Sullivan LLP
jonathantse@quinnemanuel.com

Josef Teboho Ansorge
Quinn Emanuel Urquhart Sullivan LLP
josefansorge@quinnemanuel.com

Joseph H Margolies
Quinn Emanuel Urquhart & Sullivan, LLP
josephmargolies@quinnemanuel.com

Marie M Hayrapetian
Quinn Emanuel
mariehayrapetian@quinnemanuel.com

Sara E. Jenkins
Quinn Emanuel Urquhart & Sullivan, LLP
sarajenkins@quinnemanuel.com

Stephen Andrew Broome
Quinn Emanuel Urquhart & Sullivan LLP
stephenbroome@quinnemanuel.com

Teuta Fani
Quinn Emanuel Urquhart Sullivan, LLP
teutafani@quinnemanuel.com

Viola Trebicka
Quinn Emanuel Urquhart & Sullivan, LLP
violatrebicka@quinnemanuel.com

Xi Gao
Quinn Emanuel Urquhart Sullivan, LLP
tracygao@quinnemanuel.com

*/s/ David Straite*
David Straite