# 2/14/23 Preservation Hearing Transcript

# Redacted Version of Document Sought to be Sealed

```
 1              IN THE UNITED STATES DISTRICT COURT

 2           FOR THE NORTHERN DISTRICT OF CALIFORNIA

 3                      SAN JOSE DIVISION

 4
        BROWN, ET AL,                    )   CV-20-3664-YGR
 5                                       )   CV-20-5146-YGR
                      PLAINTIFF,         )
 6                                       )   SAN JOSE, CALIFORNIA
              VS.                        )
 7                                       )   FEBRUARY 14, 2023
        GOOGLE LLC, ET AL,               )
 8                                       )   PAGES 1-62
                      DEFENDANT.         )
 9                                       )
        _____  )
10
                SEALED TRANSCRIPT OF PROCEEDINGS
11            BEFORE THE HONORABLE SUSAN VAN KEULEN
                 UNITED STATES MAGISTRATE JUDGE
12

13                   A P P E A R A N C E S

14

15       FOR THE PLAINTIFF:     BY:  RYAN MCGEE
         BROWN ET AL                 JOHN A. YANCHUNIS
16                            MORGAN AND MORGAN, P.A.
                              201 N. FRANKLIN STREET, 7TH FLOOR
17                            TAMPA, FL 33602

18

19       FOR THE PLAINTIFF:     BY:  MARK C. MAO
         BROWN, ET AL          BOIES SCHILLER FLEXNER LLP
20                            44 MONTGOMERY STREET, 41ST FLOOR
                              SAN FRANCISCO, CA 94104
21

22        APPEARANCES CONTINUED ON THE NEXT PAGE

23     OFFICIAL COURT REPORTER:      SUMMER FISHER, CSR, CRR
                                     CERTIFICATE NUMBER 13185
24

25        PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
             TRANSCRIPT PRODUCED WITH COMPUTER
```

```
 1          APPEARANCES CONTINUED:

 2          FOR THE PLAINTIFF:      BY:  DAVID A. STRAITE
            CALHOUN, ET AL         DICELLO LEVITT GUTZLER LLC
 3                                 ONE GRAND CENTRAL PLACE
                                   60 EAST 42ND ST., SUITE 2400
 4                                 NEW YORK, NY 10165

 5

 6          FOR THE PLAINTIFF:      BY:  JAY BARNES
            CALHOUN, ET AL         SIMMONS HANLY CONROY
 7                                 231 S. BEMISTON AVE., STE 525
                                   ST. LOUIS, MO 63105
 8

 9          FOR THE PLAINTIFF:      BY:  SHARON CRUZ
            CALHOUN, ET AL         DICELLO LEVITT GUTZLER
10                                 10 N DEARBORN ST, 6TH FLOOR
                                   CHICAGO, IL 60601
11

12          FOR THE PLAINTIFF:      BY:  ANNE KATHLEEN DAVIS
            CALHOUN, ET AL         BLEICHMAR, FONTI, & AULD, LLP
13                                 555 12TH STREET, SUITE 1600
                                   OAKLAND, CA 94607
14

15          FOR THE DEFENDANT:      BY:  VIOLA TREBICKA
            GOOGLE                      STEPHEN BROOME
16                                 QUINN EMANUEL URQUHART &
                                   SULLIVAN, LLP
17                                 865 SOUTH FIGUEROA STREET
                                   10TH FLOOR
18                                 LOS ANGELES, CA 90017

19

20          FOR THE DEFENDANT:      BY:  XI TRACY GAO
            GOOGLE                 QUINN EMANUEL URQUHART &
21                                 SULLIVAN, LLP
                                   1300 I STREET NW, SUITE 900
22                                 WASHINGTON, DC 20005

23          FOR THE DEFENDANT:      BY:  JOSEF TEBOHO ANSORGE
            GOOGLE                 QUINN EMANUEL URQUHART &
24                                 SULLIVAN, LLP
                                   51 MADISON AVENUE, 22ND FLOOR
25                                 NEW YORK, NY 10010
```

```
 1          APPEARANCES CONTINUED:

 2          FOR THE DEFENDANT:        BY:  ANDREW H. SCHAPIRO
            GOOGLE                    QUINN EMANUEL URQUHART AND
 3                                    SULLIVAN, LLP
                                      191 N. UPPER WACKER DRIVE
 4                                    SUITE 2700
                                      CHICAGO, IL 60606
 5

 6          ALSO PRESENT:            TONI BAKER
                                      IN-HOUSE COUNSEL AT GOOGLE
 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1        SAN JOSE, CALIFORNIA                    FEBRUARY 14, 2023

 2                      P R O C E E D I N G S

 3             (WHEREUPON, THE FOLLOWING RECORD IS SEALED.)

 4             THE COURT:  GOOD AFTERNOON, EVERYONE.  WELCOME TO OUR

 5    SPECIALLY SET HEARING.

 6        AND MS. FANTHORPE, THE WEBINAR IS LOCKED?

 7             THE CLERK:  IT IS.

 8             THE COURT:  OKAY.  PURSUANT TO A REQUEST OF THE

 9    PARTIES, WHICH THE COURT GRANTED, THESE PROCEEDINGS ARE SEALED.

10        OKAY.  WE ARE ON TODAY IN BOTH THE BROWN AND CALHOUN

11    MATTERS FOR -- TO FURTHER ADDRESS GOOGLE'S REQUEST THAT IT NOT

12    BE REQUIRED TO PRESERVE ████   ██████████  TABLES AND  ████

13    ████████  TABLES.

14        AND I KNOW THE ISSUES ARE -- THERE ARE OVERLAP AND THERE

15    ARE SOME DISTINCT ISSUES.  I THINK WE WILL PROCEED JOINTLY, AND

16    THEN IF WE NEED TO STEP BACK AND TAKE EITHER BROWN OR CALHOUN

17    AT A TIME, WE WILL DO THAT.

18        SO WITH THAT IN MIND, LET'S GO AHEAD AND GET APPEARANCES,

19    AND WE WILL GO AHEAD AND GET THEM ALL, AND THEN WE WILL GET

20    UNDER WAY.

21        MS. FANTHORPE.

22             THE CLERK:  CALLING CASE 20-CV-3664.  BROWN, ET AL.

23    VERSUS GOOGLE LLC, ET AL., AND CASE 20-CV-5146.  CALHOUN,

24    ET AL. VERSUS GOOGLE, LLC.

25             COUNSEL, PLEASE IDENTIFY YOURSELVES FOR THE RECORD
```

1    BEGINNING WITH PLAINTIFF BROWN, THEN CALHOUN, THEN GOOGLE.

2         IS THAT IN ORDER?

3              THE COURT:  THAT WILL DO IT.  THANK YOU.

4              MR. MCGEE:  GOOD AFTERNOON, YOUR HONOR.

5         RYAN MCGEE OF MORGAN AND MORGAN.  AND I'M JOINED BY MY

6    COLLEAGUES, JOHN YANCHUNIS, ALSO OF MORGAN AND MORGAN, AND

7    MARK MAO OF BOIES SCHILLER.  AND I THINK WE WOULD ALL JOIN IN

8    THANKING YOUR HONOR FOR ACCOMMODATING THE HEARING TO BE MOVED

9    TO 2:00 P.M. THIS AFTERNOON, SO THANK YOU.

10              THE COURT:  YOU'RE WELCOME.

11              MR. BARNES:  SORRY, YOU THINK I WOULD HAVE FIGURED

12   THIS MUTE BUTTON OUT BY NOW.

13        GOOD AFTERNOON, YOUR HONOR.  JAY BARNES FROM SIMMONS HANLY

14   CONROY, ON BEHALF OF THE CALHOUN PLAINTIFFS.

15        I'M JOINED BY MY COLLEAGUES, ANNE DAVIS OF BLEICHMAR,

16   FONTI AND AULD, AND DAVID STRAITE FROM DICELLO LEVITT, AND

17   SHARON CRUZ FROM DICELLO LEVITT.

18              THE COURT:  GOOD AFTERNOON, EVERYONE.

19        THAT BRINGS US TO GOOGLE.  MS. TREBICKA, I'M NOT HEARING

20   YOU.  YOU DON'T SHOW AS BEING MUTED, BUT I DON'T -- THERE YOU

21   ARE.

22              MR. SCHAPIRO:  CAN YOU HEAR ME?

23              THE COURT:  MR. SCHAPIRO, YOU ARE ECHOING.

24              MR. SCHAPIRO:  THERE WE GO.  CAN YOU HEAR ME?

25              THE COURT:  I CAN HEAR YOU.

1    MR. SCHAPIRO:  YEAH, THE PROBLEMS ARE BEING IN THE

2    SAME CONFERENCE ROOM.

3    ALL RIGHT.  WELL, I'M ANDREW SCHAPIRO FROM QUINN EMANUEL

4    FOR GOOGLE, JOINED BY MY COLLEAGUES, VIOLA TREBICKA, STEPHEN

5    BROOME, JOSEF ANSORGE, AND TRACY GAO, AND WE ALSO HAVE IN-HOUSE

6    COUNSEL FROM GOOGLE, TONI BAKER WITH US.

7    THE COURT:  ALL RIGHT.  THANK YOU.

8    ALL RIGHT.  I HAVE BEEN THROUGH THE PAPERS, AND IF I REFER

9    TO DOCKET NUMBERS, I'M REFERRING TO THEM IN THE BROWN CASE,

10   BECAUSE THOSE ARE THE NUMBERS I HAD AT HAND.

11   OBVIOUSLY, I WENT THROUGH THE PARTIES' -- THE JOINT

12   STATEMENT AT 848-3, WHICH FOLLOWED OUR PREVIOUS HEARING ON THIS

13   SUBJECT, AND MY ORDER THAT THE PARTIES MEET AND CONFER, AND

14   THAT ORDER IS SET FORTH AT DOCKET 830.

15   THE PARTIES DID MEET AND CONFER, AND I HAD AN OPPORTUNITY

16   TO REVIEW THE VIDEO AND THE TRANSCRIPT OF THOSE PROCEEDINGS,

17   WHICH WAS VERY HELPFUL, SO THANK YOU FOR PROVIDING THAT.

18   I ALSO SAW THAT THE PARTIES FOLLOWED UP WITH A SERIES OF

19   MEET AND CONFER LETTERS THAT WERE FILED WITH THE JOINT

20   STATEMENT, AND I HAVE REVIEWED THOSE AS WELL, AS WELL AS

21   PREVIOUS FILED DECLARATIONS BY GOOGLE IN SUPPORT OF ITS REQUEST

22   REGARDING THE ████████████ AND ████████ TABLES.

23   IN MY PREVIOUS ORDER, I DIRECTED GOOGLE TO DEMONSTRATE TO

24   THE PLAINTIFFS THAT THE DATA IN THE ███ ████████████ TABLES

25   AND THE ███ ████████ TABLES AT ISSUE, THAT THE DATA IS EITHER

1    DUPLICATED IN THE PRESERVED TABLES, CURRENTLY SET OF TABLES

2    THAT ARE BEING PRESERVED, OR CAN BE DERIVED FROM THOSE TABLES.

3    AND I TOOK PAINS TO CAUTION BOTH SIDES NOT TO TREAT THIS

4    OPPORTUNITY OR THIS MEET AND CONFER AS EITHER A THREAT OR AN

5    OPPORTUNITY TO OPEN PANDORA'S BOX.

6        I THOUGHT THAT THE, AS I SAY, THE MEET AND CONFER PROCESS

7    WAS INFORMATIVE.  I CERTAINLY UNDERSTAND THERE ARE ADDITIONAL

8    QUESTIONS, AS THE PLAINTIFFS POSE THEM IN THAT SESSION, AND

9    ALSO RAISED IN THE JOINT STATEMENT.  I UNDERSTAND GOOGLE'S

10   POSITION IS, WE'VE FULFILLED OUR OBLIGATION AND WE ARE READY

11   FOR A DECISION.

12       SO I WOULD LIKE TO HEAR A LITTLE MORE FROM EACH SIDE AS

13   TO -- FIRST FROM GOOGLE, AS TO HOW THE TASK HAS BEEN SATISFIED,

14   AND WE WILL GO FROM THERE.

15            MS. TREBICKA:  YOUR HONOR CAN YOU HEAR ME?

16            THE COURT:  I CAN HEAR YOU FINE NOW, THANK YOU.

17            MS. TREBICKA:  I APOLOGIZE, YOUR HONOR, BUT HOPEFULLY

18   THIS WILL WORK.

19            THE COURT:  OKAY.

20            MS. TREBICKA:  OKAY.  THANK YOU FOR THIS OPPORTUNITY.

21       WE UNDERSTOOD YOUR HONOR LOUD AND CLEAR, YOU WANTED US TO

22   DEMONSTRATE, IN SORT OF SIMPLE BLOCKS OR SIMPLE TERMS, HOW --

23   WHY IT IS THAT THE DATA THAT IS FOUND, THE MAPPING AND LINKING

24   DATA THAT IS FOUND IN THE MAPPING AND LINKING TABLES IN

25   ████████████ AND THE ████████ TABLES, IS EITHER IN

1    ████████ CASE, ABLE TO BE DERIVED FROM CERTAIN TABLES

2    THAT WE ARE PRESERVING, OR IN THE ██████ CASE, ACTUALLY

3    FOUND IN THE DATA THAT WE ARE PRESERVING.

4        WHAT WE DID IS WE PUT TOGETHER SOME VERY DETAILED LETTERS

5    THAT CONTAINED SCREEN SHOTS, NOT ONLY OF THE DATA, OF SAMPLES

6    OF DATA, TO DEMONSTRATE WHAT OUR ARGUMENT IS, BUT ALSO CERTAIN

7    SOURCE CODE TO SHOW WHERE SOME OF THE DATA IS COMING FROM, THE

8    RELEVANT DATA FOR THE MAPPING AND LINKING.

9        AND THAT'S WHAT WE HAVE PUT TOGETHER IN THE THREE LETTERS

10    THAT WE'VE SENT.  WE SENT THE LETTER BEFORE THE MEET AND

11    CONFER.  AT THE MEET AND CONFER, YOUR HONOR COULD SEE WE WALKED

12    THROUGH THOSE LETTERS TO BE ABLE TO MORE CLEARLY STATE WHAT

13    THIS DEMONSTRATION ENTAILS, AND ALSO ANSWER THE QUESTIONS THAT

14    WE WERE ABLE TO ANSWER AT THE TIME.

15        WE FOLLOWED UP WITH ADDITIONAL LETTERS ANSWERING

16    ADDITIONAL QUESTIONS THAT WERE FORMED AND PRESENTED TO US

17    DURING THAT LONG MEET AND CONFER, EVEN WHEN SOME OF THE

18    QUESTIONS REALLY, FROM OUR PERSPECTIVE, WENT BEYOND WHAT

19    YOUR HONOR HAD ASKED US TO DO, WHICH IS DEMONSTRATE -- AGAIN,

20    DEMONSTRATE THAT THESE PARTICULAR MAPPING AND LINKING TABLES

21    ARE NOT NECESSARY TO BE PRESERVED TO BE ABLE TO READ THE DATA

22    AT ISSUE.

23        SO WITH THAT, YES, YOUR HONOR, YOU ARE RIGHT, WE BELIEVE

24    THAT OUR JOB IS DONE.  WE HAVE DEMONSTRATED THAT IT WOULD BE

25    ENTIRELY DISPROPORTIONAL TO THE NEEDS OF EACH CASE TO PRESERVE

1    THESE MAPPING TABLES, ESPECIALLY GIVEN THE EXORBITANT COST THAT

2    IS ASSOCIATED WITH PRESERVING THEM.

3        I WILL REST THERE.  IF THERE ARE ANY MORE SPECIFIC

4    QUESTIONS ABOUT EACH OF THE TABLES, I KNOW THEY ARE SLIGHTLY

5    DIFFERENTLY SITUATED, AND ALSO THERE'S DIFFERENT ARGUMENTS WITH

6    RESPECT TO EACH CASE, BUT I WILL STOP THERE IN CASE YOUR HONOR

7    HAS ANY QUESTIONS.

8        THE COURT:  ALL RIGHT.  THANK YOU, MS. TREBICKA.

9        LET'S GO TO -- IT CERTAINLY APPEARS FROM THE JOINT

10   STATEMENT, TO BE THE HEART OF THE MATTER, WHICH IS THE ███████

11   IN THE ████████████ TABLES.  THE ██████████ ISSUE.

12       AND CERTAINLY, THE BROWN PLAINTIFFS, AS I'M UNDERSTANDING

13   IT, BELIEVES THAT THAT IDENTIFIES USERS, NOT DEVICES, BUT

14   USERS, AND GOOGLE'S COMMENT IN THE JOINT STATEMENT IS THAT THE

15   ██████████ IS ONE OF THE BISCOTTI ID'S, IS JUST ONE OF THE

16   BISCOTTI'S ID'S GROUPED TOGETHER IN THE █████████████ TABLES AS

17   POSSIBLY BELONGING TO THE SAME USER OR DEVICE, AND ANY LINKAGE

18   BETWEEN THE ███████████ AND OTHER BISCOTTI ID'S IS DERIVED FROM

19   OTHER MAPPING AND LINKING TABLES.

20       SO IT'S NOT QUITE CLEAR TO ME WHAT GOOGLE IS SAYING OR

21   WHAT DISTINCTION IT THINKS IT'S MAKING THERE.  DO THE ████████

22   ███ PROVIDE LINKAGES TO USER ID'S OR NOT, OR YOU DON'T KNOW?

23       MS. TREBICKA:  YOUR HONOR, I WILL DEFER TO MY

24   COLLEAGUE, TRACY GAO, WHO WILL BE ARGUING THIS PIECE OF THE

25   HEARING, THE █████████████ PIECE.

 1            BUT JUST TO SET IT UP, YOUR HONOR, THANK YOU FOR THE

 2     QUESTION, AND JUST TO SET IT UP, THERE ARE TWO RESPONSES TO IT.

 3            THE FIRST IS THAT MS. GAO WILL GO THROUGH THIS IN REALLY A

 4     LITTLE MORE INFORMATION ON WHAT ████████████ IS AND HOW

 5     UNRELATED IT IS TO THE DATA AT ISSUE IN BROWN, WHICH WILL

 6     INFORM ALSO THE SECOND REASON, WHICH IS THAT THIS ████████ IS

 7     NOT WHAT THE BROWN PLAINTIFFS ARE EXPLAINING IT TO BE.

 8            AND I WILL DEFER TO MS. GAO TO WALK THROUGH BOTH OF THESE

 9     GROUNDS.

10            THE COURT:  ALL RIGHT.  MS. GAO.

11            MS. GAO:  YOUR HONOR, TO FIRST BRIEFLY ANSWER YOUR

12     QUESTION, WHAT IS ████████?  CONTRARY TO PLAINTIFF'S ASSERTION,

13     WHICH IS BASED ON MISTAKEN UNDERSTANDING OF ████████████ AND

14     ████████, IT IS NOT UNIQUE TO ████████████.

15            WHAT ████████████ DOES, IS LIKE, AFTER ████████████

16     LINKS DIFFERENT MULTIPLE BISCOTTI ID'S, IT WILL DEFINE ONE OF

17     THEM AS ████████.

18            SO IT'S REALLY JUST ONE OF BISCOTTI ID'S.  SO ANY LINKAGES

19     BETWEEN THIS ████████, WHICH AGAIN IS ONE OF BISCOTTI ID'S, ANY

20     LINKAGE BETWEEN THIS ████████ AND OTHER BISCOTTI ID'S, ARE

21     DERIVED FROM THE SAME SOURCE TABLES THAT GOOGLE IS ALREADY

22     PRESERVING.

23            AND ALSO GOING BACK TO THE BROADER QUESTION OF WHAT

24     ████████████ MEANS AND WHY THE ████████████ TABLES ARE NOT

25     NEEDED TO READ OR UNDERSTAND THE --

1     THE COURT:  BEFORE YOU GO THERE, MS. GAO, BEFORE YOU

2     GO THERE, I WANT TO BE SURE I UNDERSTAND WHAT YOU WERE JUST

3     TRYING TO EXPLAIN, WHICH IS THE ███████, IT JUST SELECTS A

4     BISCOTTI ID AND MAKES THAT THE ██████?

5     MS. GAO:  YES.

6     FOR EXAMPLE, ████████ GROUPS THREE BISCOTTI ID'S AS

7     POSSIBLY BELONGING TO THE SAME USER DEVICE.  ONE OF THEM --

8     THE COURT:  SO DOES IT DISTINGUISH WHETHER IT BELONGS

9     TO THE SAME USER OR DEVICE, OR IT'S JUST, THIS IS EITHER THE

10    SAME USER OR THE SAME DEVICE?

11    MS. GAO:  IN CERTAIN CASES, THE SOURCE ID'S ARE FROM

12    SIGNED-IN BROWSING ACTIVITY, BECAUSE THERE'S THE GAIA ID, WHO

13    WILL KNOW THIS IS THE SAME USER.  BUT IN OTHER CIRCUMSTANCES

14    WHERE THE UNDERLYING ID'S ARE FROM APP ACTIVITIES, GOOGLE WILL

15    KNOW THEY ARE FROM THE SAME MOBILE DEVICE.

16    THE COURT:  OKAY.  SO IN █████, IT'S GOT SIX ID'S,

17    AND IT SAYS OH, OKAY, THIS LOOKS LIKE IT'S THE SAME USER

18    DEVICE, AND THEN IT JUST -- IT PICKS ONE OF THOSE BISCOTTI ID'S

19    THAT IT HAS IDENTIFIED IN THIS GROUP AND MAKES IT THE ██████.

20    MS. GAO:  YES.  THAT IS CORRECT, YOUR HONOR.

21    THE COURT:  AND DOES IT DEFER TO A USER ID OR A

22    DEVICE ID, OR IS IT RANDOM, IT JUST PICKS ONE?

23    MS. GAO:  IT JUST PICKS ONE OF THE BISCOTTI ID'S.

24    THE COURT:  OKAY.

25    MS. GAO:  YOUR HONOR, IF I MAY GO BACK TO THE BROADER

1    QUESTION OF WHAT ██████████ IS.

2           THE COURT:  YEAH, PLEASE.

3           MS. GAO:  YEAH.

4      SO THE ██████████ -- YOUR HONOR ADVERTISED AT THE

5    JANUARY 10TH HEARING THAT THE MAPPING OR LINKING TABLE SHOULD

6    BE PRESERVED TO BE SURE THAT OTHER DATA AT ISSUE COULD BE READ.

7    BUT THE ██████████ TABLES DO NOT HELP THIS GOAL AT ALL.

8           IN THE BROWN CASE, NO IDENTIFIER WAS SAVED AS PART OF THE

9    DATA FLOW IN BROWN, IT'S CONTAINED IN THE ██████████ TABLES.

10   THAT IS BECAUSE THE BISCOTTI ID'S IN THE ██████████ TABLES

11   ARE NOT THE SAME BISCOTTI ID'S THAT WERE SAVED AS PART OF THE

12   BROWN DATA FLOW.

13          THE BROWN CASE INVOLVES SIGN-OUT PRIVATE WEB BROWSING

14   DATA, BUT BY CONTRAST, ██████████ CONTAINS LINKAGES OF

15   BISCOTTI ID'S THAT ARE DERIVED FROM MAPPINGS OR LINKINGS OF

16   IDENTIFIERS, WERE SAVED FROM TWO SEPARATE DATA FLOWS.  IT'S

17   EITHER APP ACTIVITIES, WHICH IS NOT AT ISSUE DATA, OR SIGN-IN

18   WEB BROWSING DATA, WHICH IS ALSO NOT THAT DATA.

19          THEREFORE, THE ██████████ TABLES ARE COMPLETELY

20   UNNECESSARY TO READ THE OTHER DATA AT ISSUE IN BROWN.  SO THE

21   PRESERVATION OF THE ██████████ TABLES IS AT LARGE COST,

22   INCLUDING ENGINEERING, MONETARY PRIVACY IS SIMPLY NOT

23   PROPORTIONAL TO THE NEEDS OF THE CASE.

24          AND THERE IS A SECOND REASON WHY THE ██████████ TABLES

25   NEED NOT BE PRESERVED, WHICH IS --

1           THE COURT:  BEFORE YOU GO THERE -- BEFORE YOU GO

2      THERE, MS. GAO, LET ME TAKE YOU BACK TO A COMMENT YOU MADE IN

3      THIS DISCUSSION, WITH REGARDS TO THE BISCOTTI ID'S IN THE

4      ███████████  TABLES NOT BEING THE SAME BISCOTTI ID'S IN THE

5      BROWN FLOW.  EXPLAIN THAT TO ME AGAIN.  OR JUST REPEAT IT, I

6      JUST WANT TO BE SURE I UNDERSTAND WHAT YOU ARE SAYING.

7           MS. GAO:  SURE, YOUR HONOR.

8      IT MAY BE EASIER, YOUR HONOR, IF I PRESENT MY SCREEN TO

9      SHOW THE JANUARY 26TH LETTER THAT WE SENT.

10          THE COURT:  I HAVE A COPY OF THE LETTER IN FRONT OF

11     ME.  JUST WALK ME THROUGH, VERBALLY, YOUR EXPLANATION AGAIN

12     BEFORE WE GO TO THE LETTER.  JUST SAY IT AGAIN, I WANT TO BE

13     SURE I'VE HEARD YOU CORRECTLY.

14          MS. GAO:  OKAY, YOUR HONOR.

15     THAT IS BECAUSE THE BISCOTTI ID'S LINKED IN THE

16     ███████████  TABLES, THEY COME FROM ████  UNDERLYING TABLES.

17     AND THESE TABLES RECEIVE DATA FROM TWO SEPARATE DATA FLOWS.

18     ONE, APP ACTIVITIES, WHERE AN APPLICATION, APP, IS

19     INVOLVED.  THAT IS NOT AT ISSUE IN BROWN.

20     OR SECOND, SIGN-IN WEB BROWSING DATA.  THAT IS ALSO NOT AT

21     ISSUE IN THE DATA IN BROWN, BECAUSE THE BROWN CLASS IS LIMITED

22     TO USERS WHEN THEY VISIT A WEBSITE USING THEIR BROWSER IN

23     PRIVATE BROWSING MODE, AND ALSO SIGNED OUT OF THEIR GOOGLE

24     ACCOUNT.

25          THEREFORE, ALL OF THE BISCOTTI ID'S IN THE  █████████

```
 1        TABLES HAVE NOTHING TO DO WITH THE DATA FLOW AT ISSUE IN BROWN.
 2             THE COURT:  OKAY.  I UNDERSTAND THAT.
 3        YOU SAID THAT'S ILLUSTRATED IN YOUR JANUARY 26TH LETTER.
 4             MS. GAO:  YES, YOUR HONOR.
 5        THAT'S ON PAGE 4 WHERE WE LISTED OUT ALL OF THE SOURCE
 6   TABLES.  AND AS YOUR HONOR CAN SEE, THE ████████ TABLES, THE
 7   MAP -- ALL OF THE ████████ TABLES, THE MAP IDENTIFIERS THAT
 8   WERE SAVED THROUGH APP ACTIVITIES, FOR EXAMPLE, YOUR HONOR,
 9   IDFA, AND AD ID'S ARE MOBILE DEVICE ID'S.
10        AND THE ████████ TABLES, THEY CONTAIN A LINKING
11   BETWEEN ████ OR ████████ TO BISCOTTI.  ████████ IS A
12   ████████████.  AND ████████ ARE ████████████
13   ██.  SO THIS LINKAGE HAPPENS ONLY WHEN A USER SIGNS IN TO
14   THEIR GOOGLE ACCOUNT.
15             THE COURT:  OKAY.
16             MS. GAO:  BECAUSE THE BISCOTTI ID'S -- SO WHAT
17   ████████ DOES, YOUR HONOR, IS FOR EXAMPLE, ON DAY ONE,
18   THERE IS AN AD ID MAPPED TO A MOBILE APP BISCOTTI IN THE FIRST
19   TABLE, AND ON THE SAME DAY, FOR EXAMPLE, IF THE SAME AD ID IS
20   LINKED TO A UNIFIED WEB VIEW BISCOTTI IN THE SECOND TABLE, THEN
21   THE ████████ SNAPSHOT GENERATED ON THAT DAY WILL CONTAIN A
22   LINKAGE BETWEEN THE MOBILE APP BISCOTTI AND THE UNIFIED WEB
23   VIEW BISCOTTI.
24        SO ALL OF BISCOTTI'S CONTAINED IN THE ████████ TABLES
25   ARE FROM THESE ████ TABLES WHICH RECEIVE DATA FROM EITHER APP
```

```
 1    ACTIVITIES OR SIGNED-IN ACTIVITIES, THAT HAS NOTHING TO DO WITH

 2    THE BROWN CASE.

 3              THE COURT:  OKAY.  ALL RIGHT.  THAT IS HELPFUL.

 4    THANK YOU.

 5              MS. GAO:  AND YOUR HONOR, FOR THE CALHOUN CASE, IT'S

 6    A LITTLE DIFFERENT BECAUSE -- BUT THE CONCLUSION IS THE SAME,

 7    THAT THE ███████████ TABLES ARE NOT NEEDED TO RID THE OTHER

 8    DATA ISSUE, BECAUSE APP ACTIVITIES ARE NOT AT ISSUE IN CALHOUN

 9    EITHER.

10        FOR SIGNED-IN BROWSING, WEB BROWSING ACTIVITIES, THE

11    BISCOTTI LINKAGE IS DERIVED FROM IDENTIFIERS SAVED THROUGH

12    SIGN-IN WEB BROWSING ACTIVITIES, ARE NOT NEEDED TO READ THE

13    UNDERLYING DATA EITHER, BECAUSE ALL OF THE DATA THAT GOOGLE IS

14    STORING, IT'S STORED WITH AN AD IDENTIFIER ALONG WITH THE DATA.

15        SO IF WE GET A BISCOTTI, OR IF WE GOT A GAIA, WE CAN

16    SEARCH FOR DATA ASSOCIATED WITH THE BISCOTTI OR THE GAIA.  WE

17    DON'T NEED TO REFER TO THE ███████████ TABLE TO READ OR

18    UNDERSTAND ANY OF THE PRESERVED DATA OR OTHER DATA AT ISSUE IN

19    THE CALHOUN CASE ALSO.  THEREFORE --

20              THE COURT:  SO SAY THAT AGAIN FOR ME WITH REGARDS TO

21    YOUR POSITION AS TO WHY THE ███████████ TABLES ARE AN

22    ADDITIVE IN CALHOUN, BECAUSE THE GAIA?  SAY THAT LAST PART

23    AGAIN.

24              MS. GAO:  BECAUSE YOUR HONOR, THE DATA THAT WE ARE

25    STORING IN THE CALHOUN CASE IS ALL KEYED BY AN IDENTIFIER THAT
```

1    IS STORED TOGETHER WITH THE DATA.

2        SO IF WE GET A BISCOTTI ID OR IF WE GET A GAIA ID, WE CAN

3    SEARCH THE DATA THAT IS ASSOCIATED WITH THE BISCOTTI OR THE

4    GAIA, AND WE DON'T NEED TO REFER TO THIS ▆▆▆▆▆ TABLE TO

5    UNDERSTAND THE UNDERLYING DATA, BECAUSE ▆▆▆▆▆ IS FOR A

6    VERY PARTICULAR USE CASE, WHICH IS TO ESTIMATE THE NUMBER OF

7    CONVERSIONS.  IT'S NOT USED TO IDENTIFY DATA ASSOCIATED WITH A

8    PARTICULAR USER OR TO IDENTIFY ANY USER FOR THAT PURPOSE.

9        THE COURT:  OKAY.

10        MS. GAO:  YOUR HONOR, THAT IS GENERALLY THE FIRST

11    REASON WHY THE ▆▆▆▆▆ TABLES NEED NOT BE PRESERVED.

12        AND THE SECOND REASON IS THAT GOOGLE IS ALREADY PRESERVING

13    ALL OF THE SOURCE TABLES THAT UNDERLIE ▆▆▆▆▆.  JUST BY

14    THE FACT THAT, AS I JUST EXPLAINED, THEY CONTAIN MAPPINGS OR

15    LINKINGS THAT HAVE NOTHING TO DO WITH THE DATA FLOW IN BROWN.

16        AND THEREFORE, EVEN IF THE COURT LATER DETERMINES THAT

17    PLAINTIFFS WILL NEED THE BISCOTTI LINKAGES THAT ARE NOT

18    RECEIVED AS PART OF THEIR DATA FLOW AT ISSUE, CUSTOM PIPELINES

19    COULD BE CREATED TO RECREATE THE BISCOTTI LINKAGES FROM THE

20    UNDERLYING DATA THAT WE ARE ALREADY PRESERVING IN THESE SOURCE

21    TABLES.

22        AND IN COMPLIANCE WITH YOUR HONOR'S INSTRUCTION AT THE

23    LAST HEARING, WE DID DEMONSTRATE FOR PLAINTIFFS TWO THINGS:

24        THE FIRST, WE DEMONSTRATED FOR THEM WHAT IDENTIFIER

25    LINKAGES THE ▆▆▆▆▆ TABLES CONTAINED BY PRODUCING SAMPLE

1    DATA FROM ██████████.

2         AND SECOND, WE DEMONSTRATED FOR THEM WHERE THE

3    ██████████ LINKAGES COME FROM BY PRODUCING THE SOURCE CODE.

4         AND BECAUSE GOOGLE CONFIRMED THAT WE ARE PRESERVING ALL OF

5    THE SOURCE CODE, CUSTOM PIPELINES COULD BE CREATED TO RECREATE

6    THE BISCOTTI LINKAGES.  WE DON'T NEED TO PRESERVE THE

7    ██████████ TABLES NOW.

8              THE COURT:  OKAY.  THANK YOU.

9         THAT'S VERY HELPFUL, AND I THINK THAT THAT LENDS ITSELF TO

10   AN ORGANIZATION AS TO HOW TO PROCEED, WHICH IS PERHAPS TO

11   ADDRESS THE ██████████ TABLES.

12        AND LET ME HEAR FROM BROWN IN THE FIRST INSTANCE.  BUT

13   GIVE ME JUST A MINUTE, MR. MCGEE, TO FINISH MY NOTE HERE.

14        (PAUSE IN PROCEEDINGS.)

15             THE COURT:  OKAY.  MR. MCGEE, BROWN, ██████████

16   TABLES.

17             MR. MCGEE:  SURE, YOUR HONOR.  THANK YOU.

18        THE FIRST THING THAT I WOULD LIKE TO START WITH IS BY

19   NOTING THAT DURING THE SPECIAL MASTER PROCESS WHEN THE

20   PLAINTIFFS WERE ASKED TO PROVIDE CERTAIN IDENTIFIERS, GOOGLE

21   TURNED TO THESE ██████████ TABLES TO PRODUCE THE DATA THAT

22   PLAINTIFFS REQUESTED.  GOOGLE DID NOT TURN TO THE PRESERVED

23   SOURCES THAT THEY NOW REFER TO IN THIS MOTION AND IN THIS

24   LETTER BRIEF PRACTICE, TO DERIVE OR DUPLICATE THE DATA.  GOOGLE

25   HAD TO GO TO THE ██████████ TABLES.

 1          WE AGAIN, WE NOTE IN THE LETTER, WE HAVE NOTED IN THE

 2     BRIEFING, WE DON'T KNOW WHICH TABLES THEY WENT TO.  GOOGLE

 3     WOULD NOT EXPLAIN WHICH TABLES THEY WENT TO, BUT THEY WENT TO

 4     THOSE TABLES WITH ONE IDENTIFIER, SAY BISCOTTI, TO PULL DATA

 5     RELATED TO UID'S, CID'S, ZWIEBACKS, AND OTHER IDENTIFIERS.  AND

 6     WHENEVER WE WOULD SUBMIT IDENTIFIERS, THESE ARE THE SOURCES OF

 7     TRUTH THAT GOOGLE WOULD GO TO IN ORDER TO PULL, THEY WOULDN'T

 8     RUN SOURCE CODE, WE HAVE NOT SEEN, THAT OUR EXPERTS ASKED FOR

 9     AND OUR CONSULTANTS ASKED FOR, THEY WOULD NOT ENGAGE IN THE

10     PROCESS THAT THEY HAVE DESCRIBED TO YOU NOW, THEY ESSENTIALLY

11     TOOK THE SHORTCUT OF GOING TO THESE ███████ TABLES.

12          THE COURT:  WELL, ISN'T THAT THEIR POINT, THAT THE

13     ███████ TABLES MAY BE A SHORTCUT, BUT THEY ARE VERY

14     LARGE, THEY ARE VERY EXPENSIVE TO RETAIN, AND IN FACT ALL OF

15     THE UNDERLYING DATA IS PRESERVED IN THESE OTHER PLACES?  I'M

16     JUST -- THAT'S HOW I UNDERSTAND GOOGLE'S ARGUMENT.

17          MR. MCGEE:  I THINK THAT --

18          THE COURT:  GO AHEAD, MR. MCGEE.

19          MR. MCGEE:  I THINK THAT'S WHAT THEY ARE TRYING TO

20     CONVEY.

21          I THINK THAT OUR POINT IS THAT OUR CONSULTANTS AND OUR

22     EXPERTS HAVE NOT BEEN SO CONVINCED THAT ALL OF THE INFORMATION

23     THAT SITS IN THESE TABLES IS THE SAME INFORMATION THAT'S IN

24     THESE -- EXCUSE ME, THAT SITS IN THE █, I BELIEVE, UNDERLYING

25     SOURCES, IS ALL OF THE SAME INFORMATION IN THESE █

```
 1                  ███████████, OR ██ █████████████, ███ ████████ TABLES.

 2            AND AGAIN, I TAKE YOUR POINT, I WILL STICK WITH JUST

 3       ██████████. WITH THE DATA AT ISSUE, YOUR HONOR, I KNOW THAT

 4       YOU HAVE OVERSEEN MANY DISPUTES IN THIS CASE, AND WE HAVE

 5       APPRECIATED THAT ATTENTION, BUT THIS SIGNED-IN/SIGNED OUT, I

 6       WILL GIVE AN EXAMPLE, AND I PROVIDED THIS EXAMPLE AT PREVIOUS

 7       HEARINGS, WHERE IF A USER VISITS THREE NON-GOOGLE PROPERTIES,

 8       LET'S SAY THE NEW YORK TIMES, THEN THE WASHINGTON POST, THEN

 9       CAR AND DRIVER, AND IS LOGGED OUT, AND IN ANY OF THOSE

10       INSTANCES, AND THEN IN THE FOURTH TAB, LOGS INTO GOOGLE.COM,

11       GMAIL, OR ANY OTHER GOOGLE PROPERTY, THIS IS A UNIFICATION OF

12       THAT DATA.  BUT THOSE FIRST THREE INSTANCES, THOSE FIRST THREE

13       ACTIVITIES THAT THAT USER TOOK, WOULD BE IN OUR CLASS

14       DEFINITION.

15            THAT INFORMATION WOULD THEN BE ASSOCIATED WITH A GAIA, AND

16       FALL WITHIN THIS -- PART OF THAT DATA THAT MS. GAO WAS

17       EXPLAINING TO YOU.

18            AND THEN ALSO, IF A USER LOGS INTO ANY OF THOSE

19       THIRD-PARTY WEBSITES, AND THERE IS A PPID, A PUBLISHER-ISSUED

20       THAT IS ASSOCIATED -- THAT IS THEN ASSOCIATED WITH A BISCOTTI,

21       THAT INFORMATION WOULD FALL IN THESE TABLES AND TECHNICALLY BE

22       IN THIS SIGNED-IN STATE THAT GOOGLE CONTINUALLY TRIES TO CARVE

23       OUT OF OUR CLASS DEFINITION.

24            I THINK MR. MAO MAY HAVE A SLIGHTLY MORE TECHNICAL

25       EXPLANATION FOR THAT, YOUR HONOR, BUT AT A VERY HIGH LEVEL,
```

1    THAT'S KIND OF WHAT I WANTED TO ADDRESS WITH THE LOGGED-IN AND

2    THEN THE NATURE OF THE TABLE, BUT I DON'T KNOW IF MR. MAO WANTS

3    TO ELABORATE ON THAT.

4         THE COURT:  WELL, TELL ME BEFORE WE DIVE DOWN ANY

5    DEEPER, AS I UNDERSTAND GOOGLE'S POSITION, IS THAT OBVIOUSLY IN

6    BROWN, YOU'VE GOT THE SIGNED-IN ACTIVITY AND THE UNDERLYING

7    TABLES, THE UNDERLYING DATA SOURCES CAPTURE THAT.

8         AND ARE YOU SAYING, WELL, MAYBE YES, MAYBE NO, IT DEPENDS

9    IF IT'S -- IF THEY HAVE BEEN TO THESE OTHER -- IF THERE'S OTHER

10   ACTIVITY WHERE THEY ARE NOT SIGNED IN FIRST?

11        MR. MCGEE:  WELL, I THINK, JUDGE, THE MAYBE YES,

12   MAYBE NO, WERE THE QUESTIONS THAT OUR CONSULTANTS POSED, I

13   THINK STILL REMAIN UNANSWERED.

14        AND YOUR HONOR WAS ABLE TO REVIEW THE MEET AND CONFER

15   VIDEO, GOOGLE HAS WRITTEN AND RESPONDED TO SOME OF THOSE

16   QUESTIONS, AS THE CALHOUN PLAINTIFFS POINT OUT IN THEIR PORTION

17   OF THE LETTER BRIEF, BUT WE STILL DON'T KNOW WHICH IDENTIFIERS

18   EXIST IN ALL OF THESE SOURCES, CHARACTERISTICS THAT ARE USED,

19   POTENTIAL INCOGNITO DETECTION.

20   WE DON'T KNOW THE ALGORITHM FOR HOW THOSE ███████ ARE

21   DERIVED.  WHICH BISCOTTI?  IS IT CHOSEN AT RANDOM?  HOW IS IT

22   CHOSEN?

23        BUT I DID SEE MR. MAO RAISE HIS HAND, SO I DID WANT TO

24   RESPOND TO YOUR HONOR, BUT I DID WANT TO SHARE THE FLOOR WITH

25   MR. MAO.

```
 1              THE COURT:  THANK YOU, MR. MCGEE.

 2         MR. MAO.

 3              MR. MAO:  SORRY, JUDGE.  I WILL GIVE YOU AN ANSWER,

 4    SPECIFIC ANSWER, PERHAPS A HYPOTHETICAL, THAT MAY NEED BE TO

 5    RESOLVED BETWEEN THE PARTIES, BUT HAS BEEN A SOURCE OF A VERY

 6    LONG DEBATE, THAT I DON'T THINK EVER ENDED IN ANY RESOLUTION,

 7    THAT IS CAUSING SOME OF THE QUESTIONS, AND PERHAPS PARANOIA ON

 8    BOTH SIDES; WHICH IS, YOU SEE IN THE EXPLANATION IN THE LETTER,

 9    WHICH IS THAT APP ID'S, RIGHT, ARE ASSOCIATED WITH SIGNED-IN

10    DATA.

11         BUT THAT SIGNED-IN DATA, FROM OUR REVIEW OF THE DOCUMENTS,

12    THAT SIGNED-IN DOES NOT REQUIRE THAT YOU ACTUALLY SIGN IN ON

13    THE GOOGLE BROWSER, OKAY.

14         FOR EXAMPLE, IF YOU ARE AN ANDROID USER AND YOU ARE SIGNED

15    IN ON THE DEVICE, OKAY, YOUR APP ID'S, WHICH MAY BE THE SAME

16    ID'S THAT -- SO FOR EXAMPLE, FOR YOUR UBER APP, OKAY, YOUR UBER

17    APP SIGN-IN ID FOR UBER, OKAY, MAY BE THE SAME ID THAT YOU HAVE

18    FOR SIGNED-IN ON UBER.COM ON THE WEB, RIGHT.

19         SO THERE IS A LINKAGE WHEN YOU ARE SIGNED IN ON YOUR

20    DEVICE, OKAY, THROUGH YOUR APP, IN WHICH -- SO FOR EXAMPLE, LET

21    ME PERHAPS TAKE A MORE --

22              THE COURT:  DON'T LEAVE ME WAITING FOR MY UBER,

23    FINISH THAT EXAMPLE.

24              MR. MAO:  YEAH, YEAH, WELL, I WAS GOING TO SWITCH

25    UBER TO MAYBE BANK OF AMERICA.  I'M TRYING TO THINK OF A MORE
```

1    COMMON USAGE.

2         SO IF I'M SIGNED IN TO MY BANK OF AMERICA ID, AND YOU

3    KNOW, THOSE OF US WITH KIDS AND HOUSEHOLDS, WE PROBABLY CHECK

4    OUR FINANCES QUITE A BIT, RIGHT, LIKE ON A WEEKLY OR EVERY

5    OTHER DAY, PERHAPS.  WHEN YOU ARE SIGNED IN, FOR EXAMPLE, ON

6    YOUR ANDROID DEVICE OR ON IOS, WHEN YOU ARE SIGNED IN TO YOUR

7    GMAIL, YOUR APPS ARE ASSOCIATED WITH EACH OTHER.

8         SO YOUR UBER, WITH YOUR BANK OF AMERICA, THESE ARE ALL A

9    CLUSTER WITHIN ███████████, THAT'S AT LEAST THE WAY

10   PLAINTIFFS EXPLAINED TO US IN THE LETTER, OKAY.

11        OUR POINT IS, IF YOU RECALL, JUDGE, WAY BACK, I THINK IN

12   JULY OF 2021, WE WERE ARGUING ABOUT SIGNED-IN VERSUS SIGNED

13   OUT, AND THERE WAS A QUESTION ON WHAT HAPPENS WHEN SOMEBODY

14   SIGNS IN, NOT ON GOOGLE, BUT ON A THIRD-PARTY WEB PROPERTY IN

15   INCOGNITO OR IN PRIVATE BROWSING, RIGHT.

16        OUR REVIEW OF THE TECHNICAL DOCUMENTS, OKAY, OUR INFERENCE

17   IS THOSE ID'S, BECAUSE OF THE APP PLUS WEB INTEGRATION OF

18   GOOGLE ANALYTICS AND OTHER WAYS IN WHICH GOOGLE USED

19   THIRD-PARTY ID'S, THERE'S A LINKAGE THERE.

20        SO NO MATTER IF YOU ARE SIGNED IN, IN WHAT STATE,

21   INCOGNITO, ON THE APP, ON THE WEB, OKAY, THAT COMMON LINKAGE IS

22   THERE, IN ORDER FOR THAT USER TO BE IDENTIFIED.

23        SO I MEAN, LOOK, YOUR HONOR, IF THEIR REPRESENTATION IS

24   THAT SOMEHOW THIS IS PRESERVED ELSEWHERE, THERE IS STILL A

25   QUESTION AS TO WHETHER OR NOT, OKAY, THOSE ID'S ARE WHAT WE

1    WOULD USE IN ORDER TO IDENTIFY THE USERS IN THE SIGNED OUT

2    LOGS, IN INCOGNITO, IN THE PRIVATE BROWSING LOGS.

3         AND THAT, IF YOU LOOK AT THE HISTORY OF THAT DEBATE,

4    YOUR HONOR, THAT HAS NEVER BEEN FULLY RESOLVED.  IT IS ONE OF

5    THE -- YOU KNOW, WE HAVE NEVER RELENTED ON THAT ISSUE, WE HAVE

6    ALWAYS BEEN INSISTENT THAT WHEN A USER SIGNS IN TO A

7    THIRD-PARTY WEBSITE, OKAY, IN INCOGNITO OR IN PRIVATE BROWSING,

8    OKAY, THAT TRAFFIC IS ABSOLUTELY RELEVANT IN THIS CASE BECAUSE

9    THEY ARE NOT SIGNING INTO GOOGLE.COM, ALL RIGHT, AND WE BELIEVE

10   THAT IS PART OF THE ▮▮▮▮▮▮ DYNAMIC THAT'S AT ISSUE

11   HERE.

12        I HOPE THAT IS, YOU KNOW, ILLUSTRATIVE.  AND THE NICE

13   THING THERE IS, YOUR HONOR, THERE IS NO DISPUTE BY GOOGLE,

14   OKAY, THAT THAT INSTANCE, THAT BELONGS TO A SPECIFIC PERSON.

15        AND THAT ▮▮▮▮▮▮, AS FAR AS I CAN TELL, FROM WHAT

16   HAS BEEN BRIEFED AND WHAT HAS BEEN STATED TO YOU, THERE IS NO

17   SUBSTITUTE FOR THAT ▮▮▮▮▮▮.  THAT USER HAS BEEN

18   IDENTIFIED AN ASSIGNED ▮▮▮▮▮▮.

19        I AM NOT AWARE OF ANY OTHER SOURCE, DESPITE THE LINKAGE,

20   OKAY, THAT THE ▮▮▮▮▮▮, ITSELF, WILL BE FOREVER GOT.

21   AND BY THE WAY, FROM THE DISCLOSURES IN THE LETTERS HERE,

22   YOUR HONOR, IT'S ALSO NOT CLEAR THEY HAVE ACTUALLY BEEN

23   PRESERVING THIS.

24             THE COURT:  DIFFERENT ISSUE, MR. MAO.

25             MR. MAO:  YEAH, I UNDERSTAND, I UNDERSTAND.

24

```
1              THE COURT:  WELL, BUT I WANT TO BE SURE I UNDERSTAND

2       YOUR POINT.

3              SO SAY IT AGAIN, THAT IF YOU ARE SIGNED IN, NOT TO YOUR

4       GOOGLE ACCOUNT, BUT SIGNED IN, WALK ME THROUGH IT.

5              MR. MAO:  RIGHT, RIGHT.

6              SO LET'S SAY YOU USE ANDROID, ANDROID IS JUST THE EASIEST

7       EXAMPLE.  IF YOU HAVE AN ANDROID DEVICE AND YOU ARE SIGNED IN

8       TO YOUR -- YOU ARE SIGNED IN TO YOUR BANK OF AMERICA APP, YOUR

9       UBER APP.

10             THE COURT:  I WANT TO GET YOU TO WHAT YOU THINK THE

11      LINKAGE THAT YOU ARE SAYING ONLY EXISTS IN A ██████████

12      TABLE.

13             MR. MAO:  RIGHT.  IT IS THE ████████████, OKAY,

14      THAT LINKS ALL OF THESE ID'S AS BELONGING TO THE SAME PERSON.

15             THE COURT:  I UNDERSTAND.  BUT WHAT IS THAT PERSON

16      DOING THAT YOU THINK THE DATA IS ONLY IN ██████████ AND NOT

17      IN ANY OF THE OTHER SOURCE TABLES?

18             MR. MAO:  HOWEVER THAT ████████████ IS USED,

19      RIGHT, ONCE THAT ██████████ IS GONE, I CAN'T TRACE BACK

20      TO THE USING THE ██████████.

21             THE COURT:  OKAY.

22             NOW WALK ME THROUGH FROM THE OTHER DIRECTION, WHAT IS THE

23      USER DOING THAT LEADS TO THAT?  WALK ME THROUGH IT ONE MORE

24      TIME.  YOU SAID IT ABOUT THREE TIMES, WALK ME THROUGH IT ONE

25      MORE TIME.
```

1           MR. MAO:  YES.

2       SO WHAT GOOGLE IS NOT DISPUTING IS THAT IF THERE IS A

3    SIGNED-IN ACTIVITY ON THE APP SIDE, OKAY, THEN ALL THE OTHER

4    SIGNED-IN APPS ARE ASSOCIATED WITH EACH OTHER AS BELONGING TO

5    THE SAME SIGNED-IN ACCOUNT.

6       AND THEN MY POINT IS, WHENEVER THAT SIGN-IN ID ALSO

7    APPEARS IN A SIGNED OUT, I.E. GOOGLE SIGNED OUT, RIGHT, LIKE

8    NOT SIGNING INTO GOOGLE, LOG, IT'S THE SAME PERSON, YOUR HONOR.

9        SO WHILE I APPRECIATE THAT THERE'S THIS FOCUS ON BISCOTTI

10   OR THE GAIA, THE POINT IS ACTUALLY THE LINKAGE OF THE ID'S

11   ASSOCIATED AROUND THE SAME PERSON AND THE SAME DEVICE AND NOT

12   ON THE ID ITSELF.  AND ONCE THAT LINKAGE IS DESTROYED, OKAY,

13   GOOGLE HAS NOT INDICATED THAT WE CAN ACTUALLY RE-ASSOCIATE

14   WHATEVER THE ███████████████ THAT THAT WAS ASSIGNED TO AND HOW

15   THAT WAS USED.

16           THE COURT:  OKAY.

17           MR. MAO:  WE HAVE NEVER BEEN GIVEN ANY LOGS OR

18   SOURCES AS TO HOW THE ███████████, ITSELF, IS ACTUALLY

19   USED.

20       AND YOU CAN APPRECIATE, YOUR HONOR, THAT THAT CERTAINLY --

21   THAT IS CERTAINLY RELEVANT TO THE INJUNCTIVE RELIEF.

22           THE COURT:  RELEVANT TO WHAT?

23           MR. MAO:  THE INJUNCTIVE RELIEF.

24           THE COURT:  OH.  ALL RIGHT.

25           MR. MAO:  BECAUSE THAT ███████████████ IS UNIQUE TO

```
 1     THE CLUSTER, RIGHT, WHICH IS UNIQUE TO THAT TABLE.  AND SINCE

 2     THERE'S NO SUBSTITUTE FOR THAT TABLE -- FOR EXAMPLE, THE JUDGE,

 3     LET'S ASSUME, AND I'M NOT TRYING TO HAVE ARGUMENT, I'M JUST

 4     PLAYING THROUGH THE HYPOTHETICAL, IF THE JUDGE AND JURY FIND

 5     FOR THE PLAINTIFFS, RIGHT, AND BELIEVE THAT ALL SOURCES THAT

 6     HAD USED ████████████, INCLUDING IN SIGNED-IN, IN INCOGNITO

 7     ACTIVITY, RIGHT, PROCESSES OR PRODUCTS THAT HAVE BEEN DEVELOPED

 8     THAT NEED TO BE DELETED, RIGHT, THERE NEEDS TO BE SOME, RIGHT,

 9     LIKE WE NEED TO HAVE A TRAIL, RIGHT, TO ████████████, AND

10     IF GOOGLE IS DESTROYING THAT ASSOCIATION FROM THE UNIQUE

11     SOURCE, HOW ARE THE PARTIES GOING TO DISCUSS THAT?

12                THE COURT:  OKAY.  I GOT IT, MR. MAO.  THANK YOU.

13                MR. MAO:  I APPRECIATE IT, YOUR HONOR.

14                THE COURT:  MS. TREBICKA, RESPONSE, OR MS. GAO, I'M

15     SORRY, TO MR. MAO'S POINT, WHICH WAS ALSO RAISED IN THE MEET

16     AND CONFER DISCUSSION, THAT THERE IS A LINKAGE IN ███████████

17     THAT DOESN'T EXIST ANYWHERE ELSE?

18         AND I ANTICIPATE YOUR RESPONSE IS THAT'S NOT A LINKAGE

19     THAT THEY NEED, BUT I THINK THAT TAKES US TO THE BROADER ISSUE

20     ABOUT WHAT IS AND ISN'T, WHAT DOES AND DOESN'T FALL IN THE

21     CLASS; IS THAT RIGHT?

22                MS. TREBICKA:  YES, YOUR HONOR.  I WILL DEFER TO

23     MS. GAO ON THIS, BUT THERE ARE TWO RESPONSES.  MS. GAO WILL GO

24     THROUGH THEM.

25                MS. GAO:  YOUR HONOR, WHAT MR. MAO JUST DESCRIBED IN
```

1    THIS ███████████, THERE IS NO UNIQUE ███████████.

2    WHAT MR. MAO DESCRIBED AS A ███████████, IS THE ███████,

3    WHICH IS DESCRIBED AND EXPLAINED TO YOUR HONOR.

4         THE ██████ IS NOT UNIQUE TO ██████████, IT IS THE

5    SAME AS ALL THE OTHER BISCOTTI ID'S, WHICH WE CALL MEMBER ID'S

6    IN THE ███████████ TABLES.  THEY ARE DERIVED FROM THE SOURCE

7    TABLES THAT GOOGLE IS SEPARATELY PRESERVING.  THERE'S NOTHING

8    UNIQUE HERE IN ██████████ THAT'S NOT EXISTING SOMEWHERE ELSE

9    THAT GOOGLE IS ALREADY PRESERVING.

10        YOUR HONOR, MAY I ALSO RESPOND TO MR. MCGEE AND MR. MAO'S

11   OTHER POINTS?

12            THE COURT:  LET ME JUST -- I TAKE IT, I WANT TO JUST

13   STAY ON THIS ISSUE FOR A MOMENT.

14        SO MR. MAO, YOU WERE QUITE CERTAIN THERE'S A UNIQUE

15   ███████████, AND AS MS. GAO, AND AS WAS SET FORTH IN THE

16   MEET AND CONFER, THE DISCUSSIONS AROUND THAT, THAT BEING THE

17   ████████ THAT ██████████ PICKS, THAT'S WHAT YOU ARE

18   REFERRING TO?

19        WE ARE TALKING -- I UNDERSTAND WE PUT DIFFERENT WEIGHTS,

20   EACH SIDE PUTS DIFFERENT WEIGHTS ON IT, BUT I WANT TO BE SURE

21   WE ARE TALKING ABOUT THE SAME THING.

22            MR. MAO:  SO I'M NOT SURE WE ARE TALKING ABOUT THE

23   SAME THING.  AND THIS IS PART OF THE LETTER WHERE WE ARE

24   SAYING, IT WOULD HAVE BEEN NICE TO HAVE DISCUSSIONS WITH

25   ENGINEERS ON THIS.  IF YOU MIGHT PARDON MY HEALTHY SKEPTICISM,

```
 1      IF I MAY SAY, YOUR HONOR, BECAUSE THAT YOU WOULD RENAME A ███

 2      █ ALSO ON A ███████████ TABLE AND TO HAVE SEPARATE

 3      DUPLICATIONS OF THE SAME DATA ACROSS MULTIPLE TABLES AND THEN

 4      TO CALL SOME ██████████ WITH SOME ████████████████, IT'S --

 5      WITHOUT HAVING ALLOWED US TO HAVE THE OPPORTUNITY TO KICK THE

 6      TIRES, YOUR HONOR, I HOPE YOU CAN APPRECIATE MY HEALTHY

 7      SKEPTICISM ON THIS ONE.

 8              THE COURT:  SO IS IT YOUR POSITION YOU HAVE SEEN

 9      REFERENCE TO A ████████████ AND YOU ARE NOT SURE IF THAT IS

10      THE ████████ THAT --

11              MR. MAO:  YEAH, WE ARE NOT SURE.

12      YOUR HONOR, THAT WAS ONE OF OUR MAJOR QUESTIONS, BECAUSE I

13      CAN ASSURE YOU THAT BOTH CASES, THE PARTIES HAVE BEEN FIGHTING

14      OVER ████████████ FOR QUITE SOME TIME, AS TO WHAT EXACTLY THAT

15      IS, WHAT THAT IS ACTUALLY USED FOR AND WHAT PROCESSES ACTUALLY

16      USE THAT.  AND THAT HAS BEEN A BIG QUESTION MARK.

17              SO WE ARE NOT -- I'M NOT TRYING TO BELABOR THE POINT, BUT

18      YOU KNOW, TAKING THAT REPRESENTATION ON ITS FACE WHEN IT'S

19      UNTESTED, SEEMS TO BE CONTRARY TO WHAT SHOULD HAVE BEEN DONE IN

20      DISCOVERY.  AND I GUESS WE ARE JUST DISCUSSING WHAT WE ARE

21      TRYING TO DO NOW IN LIGHT OF THAT.

22              THE COURT:  OKAY.  ALL RIGHT.  THANK YOU.

23      MS. GAO, BRIEFLY, YOU WANTED TO ADDRESS SOME OTHER POINTS?

24              MS. GAO:  YES, YOUR HONOR.

25      MR. MCGEE, I BELIEVE, RAISED FOUR POINTS.  I WOULD LIKE TO
```

```
 1        ADDRESS THEM BRIEFLY ONE-BY-ONE.

 2             THE FIRST POINT MR. MCGEE RAISED IS GOOGLE, DURING THE

 3        SPECIAL MASTER PROCESS, GOOGLE TURNED TO ███████████ TABLES

 4        TO PRODUCE DATA THAT PLAINTIFFS REQUESTED.

 5             YOUR HONOR, I WAS INTIMATELY INVOLVED IN THE SPECIAL

 6        MASTER DATA SEARCH AND PRODUCTION PROCESS.  I CAN ASSURE THE

 7        COURT THAT GOOGLE DID NOT TURN TO THE ██████████ TABLES TO

 8        SEARCH OR PRODUCE ANY OF THE DATA PLAINTIFFS REQUESTED.

 9             THE SPECIAL MASTER WORKED LIKE THIS, PLAINTIFFS SELECTED

10        DATA SOURCES FOR GOOGLE TO SEARCH --

11             THE COURT:  I'M VERY FAMILIAR WITH EXACTLY HOW THE

12        SPECIAL MASTER PROCESS WORKED.

13             MS. GAO:  YES.

14             WHAT GOOGLE DID IS GOOGLE SEARCHED THE IDENTIFIERS

15        PROVIDED BY PLAINTIFFS AND THEIR EXPERTS AGAINST THE DATA

16        SOURCES, THE LOGS, PLAINTIFFS REQUESTED US TO SEARCH.  WE DID

17        NOT GO TO THE ██████████ TABLES, THAT IS MISTAKEN.

18             AND THE SECOND POINT MR. MCGEE RAISED IS THIS DISTINCTION

19        BETWEEN SIGN-IN AND SIGN OUT.  BUT THE BROWN CLASS DEFINITION

20        SAYS THAT PLAINTIFFS ARE IN PRIVATE BROWSING MODE AND NEVER

21        SIGNED IN TO THEIR GOOGLE ACCOUNT.

22             AND MR. MCGEE'S THIRD POINT IS THAT WE --

23             THE COURT:  RIGHT.

24             BUT ON THAT SECOND POINT, THE DISPUTE IS, BUT YOU ARE

25        SIGNED IN TO A THIRD-PARTY ACCOUNT, DOES THAT GET YOU THERE?
```

```
 1            AND THAT'S --

 2                 MS. GAO:  NO, IT HAS TO BE A GOOGLE ACCOUNT.

 3                 THE COURT:  I UNDERSTAND THAT'S GOOGLE'S POSITION.  I

 4       DO UNDERSTAND THAT.

 5                 MS. GAO:  YEAH.

 6            AND THE THIRD POINT MR. MCGEE RAISED IS THAT WE DIDN'T

 7       ANSWER SOME QUESTIONS, LIKE WHAT IDENTIFIERS EXIST IN ALL OF

 8       THESE TABLES, AND WHAT DO THE TABLES CONTAIN IN INCOGNITO

 9       DETECTION MODE.

10            WE ANSWERED ALL THESE QUESTIONS IN OUR FOLLOW-UP LETTER

11       SENT TO PLAINTIFFS ON JANUARY 30TH.

12            SO THE SHORT ANSWER IS THE ███████████ TABLE, THEY

13       CONTAIN BISCOTTI LINKAGES, NO OTHER IDENTIFIERS.  AND THEY DO

14       NOT CONTAIN INCOGNITO DETECTION.

15            AND ALSO THE FOURTH POINT THAT MR. MCGEE RAISED ABOUT THE

16       AMBIGUITY IN THIS SOURCE CODE, THAT IS NOT TRUE ALSO, BECAUSE

17       WE CLARIFIED IN OUR FOLLOW-UP LETTER ON THE JANUARY 30TH, THAT

18       THE DATA SOURCES THAT HAS BEEN DEPRECATED AS SHOWING THE SOURCE

19       CODE, THEY WERE NEVER LAUNCHED IN THE ███████████ PIPELINES

20       OR THEIR USE IN ███████████, THEY WERE DEPRECATED AT LEAST

21       TWO YEARS AGO.

22                 THE COURT:  I SAW THE DEPRECATION DISCUSSIONS.

23                 MS. GAO:  YES.

24            AND ALSO, MR. MAO RAISED TWO POINTS.  THE FIRST POINT IS

25       ABOUT THE ███████████, WHICH DID NOT EXIST, IT IS THE
```

1    ████████, WHICH WE HAVE ADDRESSED BEFORE.

2        AND SECOND POINT IS ABOUT APP ID'S ARE ASSOCIATED SOMEHOW

3    WITH SIGN-IN DATA.  THAT IS COMPLETELY WRONG.  THAT IS NOT WHAT

4    ████████████ DOES.  AND ALSO, APP ACTIVITIES ARE OUTSIDE THE

5    CLASS DEFINITION, IT HAS NOTHING TO DO WITH THE BROWN DATA

6    FLOW.

7            THE COURT:  THANK YOU.  I GOT IT.  I GOT IT.

8        THANK YOU, MS. GAO.

9        DOES CALHOUN WANT TO BE HEARD ON THE ████████████ TABLE

10   ISSUE?  MR. BARNES, YOU HAVE BEEN VERY PATIENT.

11           MR. BARNES:  YES.  YES, WE DO.  THANK YOU,

12   YOUR HONOR.

13       CAN I JUST BACK UP AND TALK ABOUT A PROCESS ISSUE, BECAUSE

14   I FEEL LIKE WE ARE ARGUING A LOT ABOUT THE MERITS OF WHAT'S IN

15   OR NOT IN ████████████, AND WE STILL HAVE A LOT OF UNANSWERED

16   QUESTIONS.

17       YOUR HONOR STARTED THE HEARING BY NOTING THAT YOU HAD THE

18   BENEFIT OF SOME CORRESPONDENCE BACK AND FORTH.  YOU WILL NOTE

19   THE CALHOUN PLAINTIFF'S PORTION OF THE BRIEFINGS BASICALLY

20   DIDN'T GET IN A BACK AND FORTH ABOUT WHAT HAPPENED OR HAD NOT

21   HAPPENED, IT JUST PROPOSED A WAY FORWARD TO RESOLVE DISPUTES.

22       WE SAID WE WERE GOING TO SEND A LETTER TO GOOGLE ON

23   FEBRUARY 6TH ASKING QUESTIONS.  WE DID.  TO MY KNOWLEDGE, WE

24   HAVE RECEIVED NO RESPONSE TO ANY OF THOSE QUESTIONS.  THEY ARE

25   FAIRLY SIMPLE QUESTIONS.  EIGHT OF THEM, I WOULD CATEGORIZE AS

1    ASKING FOR CONFIRMATIONS.  ANOTHER SET OF THEM ASKS FOR LINK TO

2    PRESERVATION PERIODS IN ███████, SO WE CAN COMPARE THEM

3    WITH RESERVATIONS AND OTHER LOGS.  ANOTHER ASKS ABOUT OTHER

4    MAPPINGS THAT I WANT TO RETURN TO.

5         ANOTHER QUESTION ASKS VERY SIMPLY, IS THIS DATA BEING

6    PRESERVED FOR ANY OTHER LITIGATION?  BECAUSE IF IT IS BEING

7    PRESERVED FOR ANOTHER LITIGATION, THEN THERE'S NO SINCE OF EVEN

8    HAVING THIS CONVERSATION.

9         THEN WE ASKED, IS THERE ANY UNIQUE DATA BEING DESTROYED

10   WITH THIS REQUEST THAT WOULD BE RELEVANT?  AND WE ASKED TO MAKE

11   SURE THAT THEY ARE PRESERVING THE ENCRYPTION KEYS FOR THE

12   UNDERLYING LINKAGES TO MAKE CERTAIN IF WE CAME BACK LATER AND

13   TRIED TO DO THIS REMAKING OF THE AUTOMOBILE, THAT WE WOULD HAVE

14   THE KEYS AVAILABLE TO DO SO.

15        WE DON'T WANT ANY DUPLICATION.  I HOPE THAT CAME THROUGH

16   TO YOUR HONOR IN REVIEWING THE MEET AND CONFER.  BUT IN ORDER

17   TO NOT HAVE DUPLICATION AND AGREE TO NOT HAVE DUPLICATION, WE

18   HAVE TO HAVE A LITTLE BIT MORE TRANSPARENCY.

19        YOUR HONOR'S ORDER CONTEMPLATED THAT TECHNICAL PEOPLE

20   WOULD BE ON CALL.  THERE WERE TECHNICAL PEOPLE ON OUR SIDE BUT

21   NOT ON THEIR SIDE.  AND WHAT WE ARE REALLY TRYING TO GET AT IS

22   JUST ASSURE US THAT IMPORTANT THINGS AREN'T BEING DESTROYED.

23        AND LET ME GIVE YOU SOME EXAMPLES ON THE OTHER LINKAGES

24   INFORMATION WE ARE SEEKING.  ARE THERE ZWIEBACK LINKAGES IN THE

25   DOCUMENT?  ARE THERE OTHER IDENTIFIERS THAT ARE LINKED IN THESE

1      ████████████ TABLES THAT OTHERWISE ARE NOT LINKED SOMEWHERE?

2          AND I WILL GIVE YOU -- MR. MAO USED AN EXAMPLE.  I WILL

3      GIVE YOU AN EXAMPLE AS WELL.  SO WE JUST HEARD MS. GAO EXPLAIN

4      HOW ████████████ TIES TOGETHER, MAKES THIS BISCOTTI TO

5      BISCOTTI CONNECTION THROUGH THE CONNECTION OF A GAIA ID TO A

6      BISCOTTI ID FOR GOOGLE ACCOUNT HOLDERS.

7          AND THE WAY THAT HAPPENS, I THINK I HEARD IT DESCRIBED

8      CORRECTLY, IS THAT WHEN A USER IS SIGNED IN AND THEY GO TO A

9      NON-GOOGLE WEBSITE, THE BROWSER WILL SEND THE GAIA ID AND THE

10     BISCOTTI ID AT THE SAME TIME, RIGHT.

11         OKAY.  LET ME GIVE YOU AN EXAMPLE.  IF YOU GO TO A

12     HOSPITAL WEBSITE, THERE ARE LOTS OF HOSPITALS OUT THERE THAT

13     HAVE GOOGLE AD SOURCE CODE WHICH CAUSES A TRANSMISSION OF THE

14     GAIA ID AND THE ZWIEBACK ID TO BE SENT TO GOOGLE.COM, EVEN YOU

15     ARE NOT PRESENT ON GOOGLE.COM.

16         A LOT OF THOSE HOSPITAL WEBSITES DO NOT HAVE BISCOTTI ID

17     TRANSMISSIONS.  SO IT WOULD BE IMPORTANT TO KNOW IF

18     ████████████ ALSO HAS A BISCOTTI TO ZWIEBACK LINKAGE THROUGH

19     THE SAME SORT OF INTER-CONNECTOR OF THE GAIA ID, BECAUSE THE

20     SAME LOGIC THAT APPLIES TO HOW ████████████ CAN CONNECT

21     BISCOTTI TO BISCOTTI, COULD ALSO BE USED TO TIE ZWIEBACK TO

22     ZWIEBACK OR ZWIEBACK TO BISCOTTI.

23         BECAUSE THERE ARE OTHER WEBSITES THAT MAKE DISCLOSURES

24     WHERE THE BROWSER SENDS THE GAIA ID, THE BISCOTTI ID, AND THE

25     ZWIEBACK ID ALL AT THE SAME TIME.

1    AND SO WHAT WE ARE TRYING TO MAKE CERTAIN IS THAT THERE'S

2    NOT HIGHLY RELEVANT DATA THAT'S BEING DESTROYED.  THE WAY TO DO

3    THAT ISN'T SOME GRAND REOPENING DISCOVERY, IT'S TO SIMPLY HAVE

4    THE QUESTIONS WE ASKED IN OUR FEBRUARY 6TH LETTER TO BE

5    ANSWERED.

6    NOW, WE DIDN'T PROVIDE IT TO THE COURT BECAUSE IT WAS

7    AFTER BRIEFING WAS DONE.  WE NOTIFIED YOUR HONOR THAT WE WERE

8    GOING TO SEND IT.  AND SO WE WOULD LIKE TO BE ABLE TO SIT DOWN

9    WITH TECHNICAL PEOPLE ON THEIR SIDE AND GET ANSWERS TO THESE

10    VERY SIMPLE QUESTIONS BEFORE YOUR HONOR MAKES A DECISION ON

11    WHAT SHOULD BE DESTROYED OR NOT, BECAUSE WE DON'T HAVE CLEAR

12    ANSWERS.

13    AND I WOULD BE REMISS TO MR. -- HE'S NOT ON THE CALL

14    ANYMORE -- TO MR. MCGEE'S POINT.  I HEARD AN EXPLANATION TODAY

15    OF ███████████, ABOUT HOW IT CAN BE USED TO MAP THIS STUFF

16    TOGETHER.  AND I WOULD ASK YOUR HONOR TO GO BACK AND REVIEW THE

17    BRIEFING FROM JUNE OF 2021, AT DOCKET 226 AND DOCKET 232, ABOUT

18    WHAT PLAINTIFFS SAID COULD BE DONE WITH ████████████ AND WHAT

19    GOOGLE SAID COULD NOT BE DONE WITH ████████████.  BECAUSE

20    IT'S VERY CONCERNING, AND IT GOES TO OUR HEALTHY SKEPTICISM OF

21    WHAT WE ARE BEING TOLD IS OR IS NOT IN ████████████.

22    WE WANT VERIFICATION, WE ARE ASKING FOR SPECIFICS.  AND

23    NOT THE WHOLE WORLD, BUT THIS LIMITED SET OF QUESTIONS.

24    THE COURT:  ALL RIGHT.

25    OBVIOUSLY I SET THIS HEARING, YOU ALL CONTINUED YOUR

1    DISCUSSIONS, I DID SEE CALHOUN'S COMMENT IN THE MEET AND CONFER

2    PROCESS THAT IT WOULD HAVE MORE QUESTIONS, IT MIGHT HAVE BEEN

3    IN THE JOINT STATEMENT AS WELL.

4        LET ME JUST HEAR WHERE GOOGLE IS IN TERMS OF -- IN TERMS

5    OF THE CALHOUN LETTER OF FEBRUARY 6TH, IF ANYWHERE.

6        MS. TREBICKA OR MS. GAO?

7            MS. TREBICKA:  SORRY, YOUR HONOR, IT TOOK ME A WHILE

8    TO UNMUTE.

9        MANY OF THE QUESTIONS IN THE FEBRUARY 6TH LETTER, WE ARE

10    PREPARING RESPONSES TO.  MANY OF THEM, THOUGH, ALSO ARE REALLY

11    OUTSIDE OF THE SCOPE OF WHAT WE UNDERSTOOD THE PARTIES WERE

12    DISCUSSING AND MEETING AND CONFERRING OVER, WHICH IS LIMITED TO

13    THE MAPPING AND THE LINKING AND NOT WHAT OTHER INFORMATION MAY

14    BE FOUND IN THESE TABLES.

15        THIS IS -- THESE TABLES ARE NOT TO BE TREATED AS DATA

16    SOURCES TO BE MINED FOR ADDITIONAL PURPOSES.  OUR UNDERSTANDING

17    WAS THAT YOUR HONOR WAS VERY CLEAR WHAT OUR DUTY WAS, WAS TO

18    MEET AND CONFER OVER THE MAPPING AND LINKING AND HOW IT MAY BE

19    DERIVED FROM THESE OTHER SOURCES THAT GOOGLE IS PRESERVING.

20        BUT YES, THERE ARE CERTAIN QUESTIONS HERE THAT, WE

21    APOLOGIZE YOUR HONOR, WE WEREN'T ABLE TO DO IT BEFORE THIS

22    HEARING, BUT THERE ARE CERTAIN OF THESE QUESTIONS THAT WE WILL

23    BE ABLE TO RESPOND TO.

24            THE COURT:  OKAY.

25        AND WHEN DOES GOOGLE ANTICIPATE RESPONDING TO THE CALHOUN

```
1     FEBRUARY 6TH LETTER?

2             MS. TREBICKA:  YOUR HONOR, I WOULD ALSO LIKE TO POINT

3     OUT THAT THE ANSWER TO THESE QUESTIONS WILL NOT CHANGE, WE

4     BELIEVE, THE BASIC DETERMINATION OF WHETHER OR NOT THE

5     UNDERLYING TABLES THAT WE HAVE EXPLAINED IN DETAIL AND THE

6     SOURCE CODE AND DERIVATION OF WHICH WE PROVIDED ARE SUFFICIENT,

7     THAT THE PRESERVATION IS SUFFICIENT.

8             THE COURT:  I UNDERSTAND.  I UNDERSTAND.  YOU ARE NOT

9     CONCEDING ANYTHING, BUT WE ARE IN A PROCESS, I GET THAT.

10            MS. TREBICKA:  YES, YOUR HONOR.  I BELIEVE WE CAN DO

11    IT THIS WEEK.

12            MR. BARNES:  YOUR HONOR, I HEARD MS. TREBICKA THAT

13    SHE THOUGHT SOME OF OUR QUESTIONS WERE OUTSIDE THE SCOPE.

14    OBVIOUSLY, I DISAGREE.  THE COURT DOESN'T HAVE THE BENEFIT OF

15    OUR LETTER IN FRONT OF YOU OR THE PARTIES' BRIEFING ABOUT

16    WHETHER A QUESTION FITS WITHIN THE SCOPE.

17            THE COURT:  I AM AWARE OF THAT, MR. BARNES.

18            MR. BARNES:  WHAT DOES YOUR HONOR PROPOSE IF WE REACH

19    AN IMPASSE ON THAT?  WE WOULD PREFER THAT GOOGLE SIMPLY ANSWER

20    THESE QUESTIONS, THEY ARE NOT COMPLICATED QUESTIONS.

21            THE COURT:  I UNDERSTAND, MR. BARNES.

22         I'M NOT GOING TO -- YOU KNOW, I HAVEN'T SEEN THE LETTER.

23    AND I AM ALWAYS CONCERNED, AND I THINK THERE IS ALWAYS THE

24    TEMPTATION IN THIS CASE WHERE WE HAVE, AS I HAVE SAID IN MY

25    ORDERS, AN INFINITE OR AS NEAR AS ANY OF US CAN CONCEIVE OF AS
```

1    AN INFINITE AMOUNT OF DATA THAT IS AVAILABLE.

2        THERE IS ALWAYS -- THERE IS ALWAYS MORE DATA, AND OF

3    COURSE WE ARE WAY PAST THAT, WE ARE PAST IDENTIFYING AND

4    HARVESTING.

5        I AM GETTING FEEDBACK FROM SOMEBODY, SO IF YOU ALL PUT

6    YOURSELVES ON MUTE.

7        AND WE ARE WAY PAST THAT.  WE OBVIOUSLY HAVE A VERY

8    COMPLEX AND INTRICATE PRESERVATION PLAN IN PLACE.  AND THE

9    PRESERVATION OF THE MAPPING AND LINKING TABLES CAME UP AS WE

10   WERE PUTTING THE VERY FINISHING TOUCHES ON THE PRESERVATION

11   PLAN.  AND THAT'S WHY I REGARD THIS AS STILL AN OPEN ISSUE, WE

12   DIDN'T HAVE A FULL BRIEFING AND VETTING, BUT WE ARE NOW WELL

13   INTO THAT PROCESS AND WE WILL SOON BE DONE WITH IT.

14       SO I UNDERSTAND, AND I WILL SEE AFTER I'VE HEARD ALL THE

15   ARGUMENT, AS TO WHAT, IF ANYTHING, I WANT TO SEE WITH REGARDS

16   TO THIS LATEST ROUND OF LETTERS.

17           MR. BARNES:  WHAT I WAS GOING TO OFFER IS WE COULD

18   SUBMIT OUR LETTERS TO THE COURT.  I AM HEARING YOU DON'T WANT

19   OUR LETTER RIGHT NOW, MAYBE WE WILL COME BACK IF THERE'S

20   FURTHER DISPUTE.

21           THE COURT:  YES.  YES, I UNDERSTAND.  THERE'S THE

22   LETTER, YOU HAVE ADDITIONAL QUESTIONS, AND I'M SURE THE PARTIES

23   HAVE POSITIONS ON THAT.

24       OKAY.  I THINK THEN WE CAN GO TO THE ███████ TABLES.

25   AND AGAIN, I WOULD LIKE TO START WITH GOOGLE AND BE SURE I

1    UNDERSTAND GOOGLE'S POSITION AND THEN I WILL HEAR FROM CALHOUN.

2        LET ME JUST FIND MY SPOT IN MY NOTES.

3        OKAY.  MS. TREBICKA?

4            MS. TREBICKA:  YES, YOUR HONOR.  THANK YOU.

5        YES.  WHAT WE DEMONSTRATED IN THE LETTER AND ALSO IN THE

6    MEET AND CONFER THAT FOLLOWED, IS THAT ANY MAPPING IN THE

7    ███████  TABLE THAT HELPED TO READ THE PRESERVED DATA, WILL

8    ALWAYS BE DUPLICATED IN THE SAMPLED PRESERVATION FROM THE

9    ███████  LOGS THAT WE ARE PRESERVING IN BROWN.

10        WE ARE NOT PRESERVING ANY ███████ LOGS IN CALHOUN, SO

11    THAT CASE IS SLIGHTLY DIFFERENTLY SITUATED, AND THAT'S BECAUSE

12    THE CALHOUN PLAINTIFFS DID NOT ASK FOR ANY OF THE ███████

13    LOGS TO BE PRESERVED.

14        I WILL SET THAT ASIDE FOR A MOMENT AND FOCUS ON BROWN.

15            THE COURT:  YES, YOU ARE GOING TO HAVE TO SAY THAT

16    AGAIN WHEN WE GET TO CALHOUN.

17            MS. TREBICKA:  YES, I KNOW, YOUR HONOR.

18            THE COURT:  SO START, JUST TAKE ME BACK TO THE TOP

19    AGAIN, THAT ANY MAPPING INFORMATION IN THE ███████ LOGS,

20    FINISH THAT SENTENCE.

21            MS. TREBICKA:  SURE.  SO ANY MAPPINGS IN THE

22    ███████  TABLES.

23            THE COURT:  TABLES.  THANK YOU.

24            MS. TREBICKA:  THE SUBJECT OF OUR MOTION, THAT HELP

25    TO READ THE PRESERVED DATA, WILL ALREADY BE DUPLICATED IN THE

```
1    SAMPLED PRESERVATION FROM THE ████████ LOGS.

2         AND AS EVIDENCE, WE HAVE PROVIDED THE SREE POTHANA

3    DECLARATION, WHICH IN PARAGRAPH 6 OF THAT DECLARATION, EXPLAINS

4    THAT THE ██████████████ TABLES ARE SOURCED FROM THE

5    ████████ LOGS, AND THEREFORE PRESERVING THE LOGS WHICH ARE

6    INCLUDED IN THE SAMPLING PLAN, ALREADY PRESERVES THE NECESSARY

7    MAPPING TO READ THE DATA THAT'S BEING PRESERVED.

8         SEPARATELY --

9              THE COURT:  I DID SEE THAT IN THE POTHANA DEC.

10             MS. TREBICKA:  PARAGRAPH 6.

11             THE COURT:  UH-HUH.

12             MS. TREBICKA:  AND SEPARATELY, WE ALSO DEMONSTRATED

13   IN THE LETTER AND WALKED THROUGH IN THE MEET AND CONFER, THE

14   SAME CONCLUSION, BY COMPARING BOTH SIDES OF THE EQUATION, AS

15   YOUR HONOR PUT IT, THE ████████ TABLES AND THE ████████ LOGS.

16        SO FIRST, WE PRODUCED ENTRIES FROM THE ████████ TABLES

17   THAT SHOW THAT THESE --

18             THE COURT:  ARE WE ON THE JANUARY 26TH LETTER OR

19   31 -- OR 28TH?

20             MS. TREBICKA:  YES, YOUR HONOR.  JANUARY 26TH WOULD

21   BE THE MOST INFORMATIVE, BECAUSE IT CONTAINS THE --

22             THE COURT:  IS IT REALLY THE 28TH?  DID I MISSPEAK?

23   THE LETTER I HAVE SAYS THE 28TH.

24             MS. TREBICKA:  IT SHOULD BE THE 26TH, YOUR HONOR.

25   IT'S PAGE 4.
```

```
 1                MR. MCGEE:  I THINK, IF HELPFUL, THAT'S EXHIBIT 2 TO

 2      THE TREBICKA DECLARATION, JUDGE.

 3                THE COURT:  OKAY.

 4                MR. MCGEE:  THAT IS THE JANUARY 26TH.

 5                THE COURT:  OKAY.  I THOUGHT I HAD IT.  I DON'T HAVE

 6      IT RIGHT IN FRONT OF ME, BUT --

 7                MS. TREBICKA:  WE WOULD BE HAPPY TO SCREEN SHARE.  I

 8      THINK MS. GAO IS SET UP FOR SCREEN SHARE, IF THAT WOULD BE

 9      HELPFUL.

10                THE COURT:  WELL, WHY DON'T YOU TELL ME FIRST WHAT

11      YOU THINK IT'S GOING TO SHOW ME BEFORE WE GO THERE.

12                MS. TREBICKA:  SURE.

13           PAGE 4, BOTTOM HALF OF PAGE 4 OF THE JANUARY 26TH LETTER

14      SHOWS SAMPLES, ENTRIES FROM THE          TABLES THAT SHOWS

15      THAT THESE TABLES CONTAINED THE FOLLOWING MAPPINGS, UID OR

16      BISCOTTI OR UID OR CID TO DEVICE ID.  AND WE HAVE A COLOR-CODED

17      VERSION OF THESE SAMPLE ENTRIES.

18                THE COURT:  I HAVE THAT RIGHT HERE.

19                MS. TREBICKA:  IN THE LETTER.

20                THE COURT:  UH-HUH.  YES.  I KNEW I HAD BEEN THROUGH

21      THIS IN SOME DETAIL, I JUST HAD -- I OVERLOOKED IT.

22           GO AHEAD.  I'M WITH YOU.

23                MS. TREBICKA:  SO BOTTOM OF PAGE 4, YOUR HONOR, THE

24      FIRST SAMPLE IS -- AND YOUR HONOR MAY DISREGARD THE RED BOX

25      AROUND IT, THAT JUST MEANS THAT IT'S REDACTED OR THAT IT'S
```

```
1     CONFIDENTIAL.  SO IT'S NOT LIKE THIS IS ONE ENTRY AND THEN A

2     SEPARATE ENTRY ON THE FOLLOWING PAGE.

3            THE COURT:  UNDERSTOOD, YEAH.

4            MS. TREBICKA:  SO THE ENTRY STARTS WITH THE

5     HIGHLIGHTED QUOTES, AND ONE, AND THEN ENDS WITH THE BRACKET ON

6     THE FOLLOWING PAGE.

7            THE COURT:  RIGHT.

8            MS. TREBICKA:  AFTER THE GREEN HIGHLIGHT.

9         SO WHAT THIS SHOWS IS THAT, AND WHAT WE EXPLAIN IN THE

10    LETTER AND WE EXPLAINED AT THE MEET AND CONFER, IS THAT THE

11    YELLOW HIGHLIGHTED IS A STRING THAT REPRESENTS A COMBINATION OF

12    ID'S CORRESPONDING TO THE PROPERTY, THE GA4 CLIENT, AND CID,

13    THAT'S THE CUSTOMER ID.  AND THE CID IS A RANDOMLY GENERATED

14    FIRST-PARTY COOKIE BY GOOGLE ANALYTICS.  IT'S RANDOMLY

15    GENERATED, IT'S A FIRST-PARTY COOKIE.

16        THE GREEN, FOLLOWING A FEW LINES DOWN ON THE NEXT PAGE, IS

17    THE USER ID FIELD, AND THAT CONTAINS THE BISCOTTI.

18            THE COURT:  RIGHT.

19            MS. TREBICKA:  SO THAT'S ONE SAMPLE.

20        THE NEXT SAMPLE, WE WANTED TO PROVIDE A FEW FOR

21    ILLUSTRATION PURPOSES, THE NEXT SAMPLE STARTS WITH THE ORANGE.

22    AND THE ORANGE HIGHLIGHTED IS AN ENCODED STRING THAT REPRESENTS

23    AGAIN, A COMBINATION OF ID'S CORRESPONDING TO EACH GA4 CLIENT

24    AND THE UID.  THE UID IS AN ID THAT'S ASSIGNED BY THE ANALYTICS

25    CUSTOMER.  GOOGLE DOESN'T ASSIGN, IT'S ASSIGNED BY THE
```

```
 1     CUSTOMER, AND IT'S UNIQUE TO THE PROPERTY.  IT'S NOT SO THE

 2     NEW YORK TIMES WILL HAVE ITS OWN UID FOR A PARTICULAR USER AND

 3     THE WASHINGTON POST, SHOULD THEY BOTH USE GOOGLE ANALYTICS,

 4     WOULD HAVE A DIFFERENT COMPLETELY SEPARATE UID.  THAT IS

 5     HIGHLIGHTED HERE IN ORANGE.

 6          WHAT'S HIGHLIGHTED IN GREEN, DOWN BELOW, IS THE USER ID,

 7     WHICH AGAIN IS THE -- CONTAINS THE BISCOTTI COOKIE.

 8              THE COURT:  UH-HUH.

 9              MS. TREBICKA:  SO THIS -- SO WHAT WE'VE DONE HERE IS

10     DEMONSTRATE WHAT IS ON ONE SIDE OF THE EQUATION, OF THE

11     █████████   TABLES THAT ARE THE SUBJECT OF OUR MOTION.

12          FOR ONE OF THE TABLES, THERE ARE ████  ███████ TABLES AT

13     ISSUE.  WE HAVE DONE THE SAME ON THE NEXT PAGE OF THAT LETTER,

14     PAGE 6, FOR THE NEXT GOOGLE ██████████████ TABLE, THE

15     ██████████████ TABLE.

16              THE COURT:  RIGHT.

17              MS. TREBICKA:  AND I WILL NOT WALK THROUGH IT, BUT

18     IT'S THE SAME ID.  THE ONE -- THE ORANGE HIGHLIGHT IS

19     ESSENTIALLY THE CID, BUT ALSO INCLUDING A CORRESPONDING --

20              THE COURT:  THE ENCODED -- YEAH.

21              MS. TREBICKA:  CORRECT.

22          AND THEN THE BLUE, UNDER USER ID, IS THE BISCOTTI.

23              THE COURT:  UH-HUH.

24              MS. TREBICKA:  SO THE OTHER SIDE OF THE EQUATION HAS

25     THE PRESERVED DATA, THE DATA FROM WHICH WE ARE SAMPLING AND
```

1      PRESERVING.

2          TO SHOW THAT SIDE OF THE EQUATION, WE HAVE OFFERED TWO

3      THINGS, TWO PIECES OF EVIDENCE.  THE FIRST IS THE NAMED

4      PLAINTIFF'S DATA THAT WE HAVE ALREADY PRODUCED IN THIS ACTION.

5      THEY ARE PRODUCED IN THE EXCEL FORMAT.  I HAVE THEM HERE AS

6      EXCEL, BUT WE'VE ALSO INCLUDED THEM IN MY DECLARATION IN THE

7      PRIOR BRIEFING.

8          AND WHAT THEY SHOW IS THAT THESE, THE VERY SAME ██████

9      LOGS FROM WHICH WE ARE PRESERVING, ALSO CONTAIN THE SAME

10     MAPPING OF UID, BISCOTTI AND CID.

11         IN ADDITION TO THAT, WHAT WE OFFERED IS TO HAVE THE BROWN

12     PLAINTIFFS PROVIDE US WITH DATA OR WITH CID'S FROM THEIR

13     EXPERTS AND CONSENT FOR THE DATA TO BE SHARED, AND THEN WE

14     WOULD BE SEARCHING THOSE CID'S IN THE ██████ LOGS AND

15     PRODUCING THOSE ENTRIES FOR AN AGREED UPON PERIOD OF TIME.

16         THIS IS A METHOD YOUR HONOR MAY RECALL WE HAD USED IN THE

17     PAST TO SEARCH AND PRODUCE THIS TYPE OF DATA, AND WE THINK

18     WOULD WORK VERY WELL HERE TO DEMONSTRATE THAT ONE SIDE OF THE

19     EQUATION CONTAINS THE SAME MAPPING AS THE OTHER SIDE OF THE

20     EQUATION, BUT REGRETTABLY, PLAINTIFFS HAVE NOT RESPONDED TO

21     THAT OFFER.

22             THE COURT:  AND THAT IS, I THINK YOU ARTICULATED THAT

23      IN THE JOINT STATEMENT, IF I'M REMEMBERING CORRECTLY; IS THAT

24      RIGHT?

25             MS. TREBICKA:  YOUR HONOR, I BELIEVE WE DID INCLUDE

```
1          THAT OFFER THERE, YES.

2               THE COURT:  YES, UNDER THE PROPOSED -- OH, NO, NO,

3          NO, NO, WHERE WAS THAT?

4               MS. TREBICKA:  I'M PRETTY SURE -- LET ME FIND IT,

5          YOUR HONOR.

6               THE COURT:  OKAY.

7          ALL RIGHT.  LET ME HEAR FROM BROWN IN RESPONSE TO GOOGLE'S

8          POSITION ON THE ███████ TABLES.

9               MR. MCGEE:  SURE, JUDGE.

10         OUR RESPONSE KIND OF MIRRORS RELATION, ABSENT, OBVIOUSLY,

11         THE ██████ ISSUE, BUT ALL OF THE QUESTIONS THAT REMAIN.

12         TO ADDRESS THE OFFER FROM GOOGLE, THE OFFER ONLY OFFERED

13         TO DRAW FROM AND PRODUCE FROM DATA SOURCES THAT WERE AT ISSUE

14         IN THE SPECIAL MASTER PROCESS.

15         I AM TRYING MY BEST TO PULL UP THE E-MAIL RIGHT NOW,

16         JUDGE, BUT MY COMPUTER AND MY LAPTOP IS AT ITS WIT'S END WITH

17         EVERYTHING GOING ON.  BUT I KNOW THAT WE E-MAILED GOOGLE AND WE

18         DISCUSSED IT WITH OUR CONSULTANTS, TO CLARIFY, AND THEIR OFFER

19         WAS NOT TO PRODUCE FROM THE ███████ TABLE.

20              THE COURT:  HOLD ON ONE SECOND, MR. MCGEE.

21         MS. TREBICKA, WOULD YOU MUTE?

22              MS. TREBICKA:  YES, YOUR HONOR.  I APOLOGIZE.

23              THE COURT:  FOR SOME REASON THAT CREATES AN

24         INTERFERENCE.

25         OKAY.  GO AHEAD, MR. MCGEE.  REPEAT THAT LAST PART.
```

```
1              MR. MCGEE:  SURE.

2         SO THE OFFER FROM GOOGLE, AS I AM RECALLING THIS, WAS THAT

3    THEY WOULD ESSENTIALLY RECREATE THE SPECIAL MASTER PROCESS, BUT

4    THEY WOULD PRODUCE NOTHING FROM THOSE ███ ██████████████

5    TABLES WITH THAT SAME INFORMATION THAT WE WOULD HAVE DRAWN FROM

6    OUR CONSULTANTS, CONSENTED TO DRAWING IT FROM GOOGLE SOURCES,

7    SO THERE'S NO ISSUES WITH THE LEGAL ISSUES THAT THEY HAVE

8    IDENTIFIED IN THAT PROCESS, BUT THAT ESSENTIALLY WE WOULD GET

9    THE DATA FROM THOSE ███ UNDERLYING SOURCES, BUT WE WOULD NOT

10   SEE HOW THAT DATA IS EVENTUALLY REPRESENTED IN THE ███████

11   TABLES.

12        SO THAT THIRD PIECE OF, WE'VE GOT SIDE A, WE'VE GOT SIDE

13   B, AND THOSE ARE A PLUS B EQUALS C, IN THE ████████ TABLE, BUT

14   THEY WOULD NOT PRODUCE C, SO THAT WE COULD SEE, HERE'S HOW IT'S

15   REPRESENTED IN THE ████████ TABLE OF DRAWING FROM SOURCE A AND

16   SOURCE B, THAT THEY WOULD ONLY PRODUCE FROM SOURCES A AND B AND

17   UNDERLIE AND FEED THE ████████ TABLE, BUT THEY WOULD NOT

18   PRODUCE WHAT WAS FULLY REPRESENTED IN THE ███████ TABLE BASED

19   ON THOSE IDENTIFIERS.

20        SO WE THOUGHT IT WAS JUST A DUPLICATIVE PROCESS AND THAT

21   WE WOULDN'T GAIN ANY ADDITIONAL INFORMATION OR INSIGHT INTO

22   WHAT IS ACTUALLY STORED IN THE ████████ TABLE ITSELF.

23             THE COURT:  LET ME JUST INTERRUPT THERE, MR. MCGEE.

24        I SEE THE OFFER FROM GOOGLE IS ARTICULATED IN THE

25   JANUARY 28TH LETTER, AT LEAST THAT'S WHERE I SEE IT.
```

1          MR. MCGEE:  YES, YOUR HONOR.

2          THE COURT:  848-6.  SO LET ME JUST GET CAUGHT UP TO

3    YOUR -- THE STATEMENT YOU JUST MADE.

4          MR. MCGEE:  SO I BELIEVE THAT STATEMENT, THE

5    DISCUSSION, I DON'T KNOW IF IT'S REPRESENTED IN THE EXCHANGE

6    BETWEEN -- IT'S NOT -- BETWEEN MYSELF AND MS. GAO.

7          BUT I KNOW THAT WE DID HAVE AN E-MAIL ON THAT, YOUR HONOR.

8    I CAN FIND THAT E-MAIL.  BECAUSE WE DID HAVE A DISCUSSION WITH

9    OUR CONSULTANTS, AND THE CONSENSUS WITH THE CONSULTANTS WAS IF

10   THEY ARE NOT GOING TO PRODUCE WHAT'S IN THE ███████ TABLES

11   THEMSELVES, THEN PRODUCING THE DATA THAT UNDERLIES THEM DOES

12   NOT FULLY ILLUMINATE THE ISSUE FOR US.  AND WE, AGAIN, STILL

13   WOULD NOT KNOW WHAT WOULD BE REPRESENT INDEED THAT TABLE

14   DIFFERENTLY FROM THE SOURCES THAT FEED IT.

15         SO AGAIN THE A PLUS B EQUALS C, WE KNOW WHAT A AND B ARE,

16   BUT WE WOULDN'T KNOW WHAT C WAS.  AND C IS WHAT'S ACTUALLY IN

17   THE ███████ TABLE, THAT WAS NOT PART OF GOOGLE'S OFFER WITH

18   THAT PROCESS THAT WAS DESCRIBED.

19         THE COURT:  ALL RIGHT.  ALL RIGHT.

20         SO IT SOUNDS LIKE, FROM THE BROWN PLAINTIFFS' PERSPECTIVE,

21   THE ISSUE IS WITH REGARDS TO ADEQUATE DEMONSTRATION OF WHAT'S

22   IN THE ███████ TABLES -- WHAT IS ALREADY DUPLICATED IN THE

23   ███████ LOGS, WHICH ARE BEING PRESERVED.  AND THIS PROFFER

24   FROM GOOGLE, YOU DON'T FEEL IS ADEQUATE, BECAUSE IT DOESN'T --

25   BECAUSE IT DOESN'T SHOW ACTUALLY WHAT'S IN THE TABLES.

```
 1              MR. MCGEE:  THE TABLES.  YES, YOUR HONOR.  CORRECT.

 2              THE COURT:  ALL RIGHT.

 3              MS. TREBICKA:  I WOULD LIKE TO RESPOND, YOUR HONOR,

 4       BECAUSE I THINK WHAT'S BEING MISSED HERE IS THAT WE HAVE

 5       PROVIDED INFORMATION ON WHAT IS IN THE ███████ TABLES BY

 6       PROVIDING THE MAPPING AND LINKING THAT IS CONTAINED IN THE

 7       ███████ TABLES.

 8          AND THAT'S WHAT IS AT ISSUE HERE, THE MAPPING AND LINKING.

 9       SO WE HAVE PROVIDED THAT.  THE IMPORTANT POINT HERE IS WHAT

10       DEVICES AND ID'S ARE MAPPED OR LINKED TO EACH OTHER.  THAT IS

11       VERY PLAIN IN WHAT WE HAVE PRODUCED FROM THE ███████ TABLES.

12          WHAT WE ARE NOW OFFERING IS PROVIDING ADDITIONAL

13       INFORMATION ON THE DEVICES OR ID'S THAT ARE FOUND IN THE

14       ███████ LOGS.

15          I THINK WHAT I'M HEARING, MR. MCGEE, IS THAT THEY WOULD

16       LIKE THE VERY SAME CID TO BE FOUND -- TO BE SOURCED FROM OR

17       TAKEN FROM THE ███████ LOGS, AND THEN THE VERY SAME CID FROM

18       THE ███████ TABLES.

19          THE WAY THAT THESE TABLES ARE KEPT, I'M NOT EVEN SURE THAT

20       SOMETHING THAT IS DOABLE, THAT IS ONE OF THE REASONS THAT THESE

21       TABLES ARE SO LARGE.  AND WE HAVE COME TO YOUR HONOR FOR

22       RELIEF, GIVEN THAT ALL THE MAPPING AND LINKING, THE RELEVANT

23       POINT HERE IS SOURCE FROM THE ███████ LOGS.  AND GIVEN THAT

24       WE HAVE PROVIDED PROOF AND DEMONSTRATION THAT THE ID'S THAT ARE

25       MAPPED AND LINKED ARE THE VERY SAME ON THE ONE SIDE OF THE
```

1    EQUATION AS THE OTHER SIDE, I DON'T THINK IT'S NECESSARY TO

2    FIND THE VERY SAME EVENT, WHICH I DON'T EVEN KNOW IF IT'S

3    POSSIBLE, AND DEMONSTRATE THAT IT'S FOUND IN BOTH.  THAT IS NOT

4    NECESSARY, GIVEN WHAT WE HAVE SHOWN.

5         AND I WOULD ALSO LIKE TO RESPOND TO SOMETHING MR. MCGEE

6    SAID IN THE BEGINNING, WHICH IS THE FACT THAT THESE MAPPING OR

7    LINKING TABLES ARE NOW -- THEY DON'T KNOW WHAT'S IN THEM, WHAT

8    ADDITIONAL INFORMATION IS IN THEM.

9         BECAUSE THE REASON THAT WE ARE PRESERVING MAPPING AND

10   LINKING TABLES, IS BECAUSE YOUR HONOR FOUND PERSUASIVE DURING

11   THE SPECIAL MASTER PROCESS, PLAINTIFF'S ARGUMENT THAT SURE, WE

12   ARE PRESERVING CERTAIN DATA, BUT WE NEED TO BE ABLE TO HAVE THE

13   KEYS TO UNDERSTAND IT.  WE NEED TO HAVE THESE MAPPING AND

14   LINKING TABLES THAT WILL HELP US READ THE DATA ONCE WE HAVE

15   CERTAIN ID'S FROM NAMED PLAINTIFFS OR OTHERWISE.  THAT IS WHY

16   WE ARE HERE.

17        AND WHAT WE ARE DEMONSTRATING IS THAT THESE MAPPING AND

18   LINKING TABLES ARE NOT EVEN NECESSARY TO THE TASK FOR WHICH

19   THEY WERE INITIALLY IDENTIFIED.

20        SO I THINK THAT'S SOMETHING IMPORTANT THAT WE CAN'T

21   FORGET.  WITH THESE ██ TABLES, THOUGH, WE DON'T EVEN NEED TO

22   GET THERE BECAUSE WE HAVE DEMONSTRATED THAT THEY ARE ALREADY

23   BEING PRESERVED, THE MAPPING AND LINKING.

24            THE COURT:  I UNDERSTAND.  I UNDERSTAND THEY ARE

25    ALREADY PRESERVED.

1          OKAY.  ALL RIGHT.  WHAT ABOUT THE ███████ TABLES AS IT

2    RELATES TO CALHOUN?  IS IT A DIFFERENT ISSUE THERE,

3    MS. TREBICKA?

4              MS. TREBICKA:  YES, YOUR HONOR.

5          YES, IT IS SLIGHTLY DIFFERENT, BECAUSE AGAIN, STARTING

6    FROM THE REASON OF EXISTENCE FOR THIS INQUIRY IN THE FIRST

7    PLACE, WHICH IS IDENTIFYING AND PRESERVING MAPPING TABLES THAT

8    WILL HELP US READ THE DATA THAT WE ARE PRESERVING, THESE ███

9    ███████████████ TABLES DO NOT HELP US READ OR IDENTIFY OR

10   UNDERSTAND ANY OF THE DATA THAT'S BEING PRESERVED IN CALHOUN,

11   BECAUSE THE PLAINTIFFS IN CALHOUN DID NOT SELECT ANY OF THE

12   ██████ LOGS FOR PRESERVATION.

13         THERE ARE NO ███████ LOGS BEING CURRENTLY PRESERVED IN

14   THE CALHOUN PRESERVATION PLAN.  AND THERE'S NO OBJECTION OR

15   DOUBT AS TO THAT, THAT'S UNDISPUTED.  THE PRESERVED DATA

16   SOURCES THAT RELATE TO GOOGLE ANALYTICS ARE GOOGLE ACCOUNT KEY

17   DATA, GAIA KEY DATA IN THE ██████████ SOURCES.  AND THE ███

18   MAPPING TABLES THAT ARE AT ISSUE FOR THIS HEARING, DO NOT HAVE

19   GAIA KEYED INFORMATION, THEY ARE RELATED TO UNAUTHENTICATED

20   INFORMATION.  THEREFORE, THE MAPPING TABLES IN CALHOUN ARE NOT

21   NECESSARY, THEY ARE ENTIRELY IRRELEVANT TO THE PRESERVED DATA.

22             THE COURT:  OKAY.

23         MR. BARNES?

24             MR. BARNES:  WELL, FIRST LET ME GO BACK TO THE SORT

25    OF TRUST THE PROCESS ARGUMENT, IN THAT WE'VE GOT CERTAIN

1    QUESTIONS PENDING TO GOOGLE THAT WE WOULD LIKE ANSWERS TO.

2       MS. TREBICKA STATED JUST BEFORE SHE GOT TO THE CALHOUN

3    ISSUE, THAT THE COURT ENTERED THE MAPPINGS ORDER TO ENSURE THAT

4    THE PLAINTIFFS HAD THE KEYS TO UNDERSTAND THE DATA AT ISSUE.

5       THE IDENTIFIERS WE ARE TALKING ABOUT HERE GO TO LOGS.  I

6    BELIEVE I HEARD MS. TREBICKA TALKING ABOUT BISCOTTI BEING USED

7    ACROSS DIFFERENT LOGS.

8       I THINK WE'VE GOT SOME EVIDENCE OF -- SOME, WE DO HAVE

9    SOME EVIDENCE OF CID VALUES CAN BE ASSOCIATED WITH GAIA, VALUES

10   ELSEWHERE.  OF COURSE, IF IN ANSWERING OUR QUESTIONS, WE THINK

11   THERE IS NON-DUPLICATION, WE WILL BE FINE WITH NOT PRESERVING

12   NON-DUPLICATION.  BUT WE WANT -- WE HAVE SOME ADDITIONAL

13   QUESTIONS TO MAKE CERTAIN ARE ANSWERED BEFORE WE CAN JUST AGREE

14   TO THE DELETION OF THE, POTENTIALLY, RELEVANT DATA THAT'S BEEN

15   ORDERED TO BE PRESERVED.

16       THE COURT:  IS THAT -- ARE THESE QUESTIONS ALSO IN

17    YOUR LETTER THAT WE TALKED ABOUT EARLIER?

18       MR. BARNES:  YEAH.  WE HAVE A COUPLE QUESTIONS

19    RELATING TO ANALYTICS, CORRECT.

20       THE COURT:  OKAY.

21       OBVIOUSLY I WILL -- WELL, I STRONGLY SUSPECT I WILL SEE

22    THE LETTER IN DUE COURSE.  HOW MANY QUESTIONS ARE IN YOUR

23    LETTER, MR. BARNES?

24       MR. BARNES:  THERE ARE --

25       MS. TREBICKA:  19 QUESTIONS, YOUR HONOR.

```
1              THE COURT:  MS. TREBICKA, I HAD IT RIGHT HERE.

2              MR. BARNES:  19.  SHE BEAT ME TO MY OWN LETTER.  19.

3    I THINK THE FIRST 8 WOULD BE WHAT I CALL CONFIRMATION

4    QUESTIONS, AND THEN THE OTHER 11, I THINK, ARE FAIRLY SIMPLE.

5              THE COURT:  I AM SURE YOU DO, MR. BARNES.

6              MR. BARNES:  HOW LONG WAS THE ███████████ MAPPINGS

7    PRESERVED?

8              THE COURT:  ALL RIGHT.  WE ARE NOT GOING TO ARGUE

9    ABOUT IT NOW.

10             OKAY.  SO IT SOUNDS LIKE CALHOUN'S POSITION IS AS IT WAS

11   WITH REGARDS TO THE ████████ TABLES, WHICH IS IT NEEDS

12   MORE INFORMATION, AND IT HAS ARTICULATED WHAT IT BELIEVES IT

13   NEEDS IN THIS LETTER, AND YOU AWAIT GOOGLE'S RESPONSE; IS THAT

14   FAIR?

15             MR. BARNES:  THAT IS FAIR.

16             WE REMAIN OPEN TO ANY CONVERSATION GOOGLE WANTS TO HAVE IN

17   ENSURING NO DUPLICATION AND LOWERING ITS BURDEN, NOT JUST ON

18   THIS, BUT ON ANY OTHER.  BUT ALL GOOGLE HAS TO DO IS BE

19   TRANSPARENT ABOUT WHAT IS BEING PRESERVED AND NOT BEING

20   PRESERVED.

21             THE COURT:  OKAY.  ALL RIGHT.

22             AND MS. TREBICKA, I UNDERSTAND AND I ANTICIPATE GOOGLE'S

23   RESPONSE IS THAT IT'S RESPONDING TO SOME OF THOSE QUESTIONS,

24   AND SOME IT WILL FIND TO BE OUT OF THE SCOPE OF THIS COURT'S

25   PREVIOUS ORDER; IS THAT FAIR?
```

 1          MS. TREBICKA:  YOUR HONOR, YES.

 2          AND ONE OF THE QUESTIONS, JUST AS AN EXAMPLE, IS WHAT

 3      SPECIFICALLY IS UNIQUELY CONTAINED IN ███████████ MAPPING

 4      TABLES BUT NOT IN THE OTHER PRESERVED DATA SOURCES THAT WOULD

 5      NOT BE PRESERVED IF THE TABLES ARE NOT PRESERVED?

 6          WE BELIEVE THAT IS OUTSIDE OF THE SCOPE

 7          THE COURT:  I UNDERSTAND.

 8          I'M NOT -- AGAIN, I'M -- I WAS JUST TRYING TO CLARIFY

 9      WHERE EVERYBODY IS, OBVIOUSLY I HAVEN'T SEEN THE INQUIRY.

10          ALL RIGHT.  THIS HAS BEEN VERY HELPFUL, AND IT DOES, I

11      THINK, MIRROR VERY MUCH THE PARTIES' BACK AND FORTH, WHICH I

12      HAVE BEEN THROUGH WITH SOME CARE IN THE LETTERS, AND

13      IMPORTANTLY IN THE MEET AND CONFER.

14          IT SEEMS THAT AS TO -- WELL, I DON'T KNOW THE ANSWER TO

15      THIS QUESTION, SO I WILL ASK IT, BUT I WOULD EXPECT THAT

16      CALHOUN'S FURTHER INQUIRY IS OF INTEREST OR MAY HAVE SOME

17      OVERLAP WITH BROWN'S CONCERNS AS WELL, OR ARE THEY MORE UNIQUE?

18          MR. MCGEE OR MR. BARNES?

19          MR. BARNES:  I DON'T KNOW THAT MR. MCGEE HAS SEEN OUR

20      LETTER, SO IT'S HARD FOR HIM TO SAY, AND IT'S HARD FOR ME TO

21      SPEAK FOR HIM.  BUT IT DOES RAISE ANOTHER ISSUE.

22          WE ASKED GOOGLE FOR SOME CROSS-SHARING OF INFORMATION

23      RELATING TO THIS DISPUTE AND THE NAMED PLAINTIFF DATA PROCESS.

24      YOU RECALL YOUR HONOR SAID AT THE LAST HEARING, EVERYTHING

25      SHOULD BE ON THE TABLE BETWEEN THE TWO CASES SO THAT EVERYONE

1      IS WORKING ON THE SAME PAGE.

2          GOOGLE DID NOT PROVIDE THE INFORMATION WE REQUESTED

3      RELATING TO THE BROWN SIDE OF THE DISPUTE.  AND AGAIN, I DON'T

4      KNOW WHAT WAS GOING ON ON THE BROWN SIDE, MR. STRAITE SENT THAT

5      E-MAIL, MR. STRAITE DEALT WITH THAT ISSUE.  BUT WE'VE KIND OF

6      STILL BEEN SILOED A LITTLE BIT IN HAVING THESE DISCUSSIONS WITH

7      GOOGLE AND IT'S A LITTLE BIT FRUSTRATING.

8          THE COURT:  WELL, THE PARTIES ALL MET AND CONFERRED

9      TOGETHER IN RESPONSE TO MY ORDER.

10         MR. MCGEE?

11         MR. MCGEE:  WE HAD THE JOINT MEET AND CONFER,

12     YOUR HONOR, WE BROUGHT OUR CONSULTANTS, CALHOUN BROUGHT THEIR

13     CONSULTANTS.

14         THE COURT:  I'VE HEARD THIS PART OF THE STORY,

15     MR. MCGEE.

16         MR. MCGEE:  MY APOLOGIES, JUDGE.

17         BUT AFTER THE 28TH, EVERYTHING WENT BACK TO THESE SILOS,

18     AS MR. BARNES DESCRIBES IT.  AND I SEE MR. STRAITE HAS COME ON.

19     HE CAN ANSWER ANY QUESTIONS YOU HAVE.

20         THE COURT:  THAT'S ALL RIGHT.  THAT'S ALL RIGHT.

21         MS. TREBICKA?

22         MS. TREBICKA:  YOUR HONOR, WE HAVE PROVIDED ALL THE

23     BRIEFING THAT IS RELATED TO THIS ISSUE, EVEN THOUGH IT WAS

24     MOSTLY DUPLICATIVE.  ALL THE DECLARATIONS WERE FILED IN BOTH

25     CASES.  I THINK WHERE THE DISPUTE IS, IS WHETHER GOOGLE NEEDS

1    TO SHARE THE ENTIRETY OF THE SPECIAL MASTER PROCESS, EVIDENCE,

2    AND EXCHANGES, AND ET CETERA, THAT HAD OCCURRED IN BROWN, IF

3    NOT DUPLICATIVE IN CALHOUN, WITH CALHOUN AT THIS POINT.

4         AND WE THOUGHT THAT THAT WAS NOT PART OF WHAT WAS -- AND

5    SCOPE, AGAIN FOR THIS HEARING, AND NOT WHAT YOUR HONOR HAD

6    INTENDED WHEN YOU ASKED US TO SHARE AT THE BRIEFING WITH

7    RESPECT TO THIS ISSUE.

8         THE COURT:  OKAY.  I'M NOT SURE HOW THE REACH BACK TO

9    THE ENTIRE SPECIAL MASTER PROCESS FACTORS IN.  I APPRECIATE

10   HISTORY ALWAYS INFORMS THE PRESENT, BUT I AM LOOKING AT THIS

11   FROM WHERE WE ARE AND GOING FORWARD.

12       IT WOULD SEEM -- I THINK IT WOULD BE HOPEFUL, I UNDERSTAND

13   THE ISSUES, I UNDERSTAND THE PARTIES' POSITIONS, I AM FORMING

14   SOME VIEWS ON THOSE.  I THINK IT WOULD BE HELPFUL, MY THOUGHT

15   IS WITH REGARDS TO THE CALHOUN LETTER, THAT GOOGLE RESPOND TO

16   THAT, AND THAT EACH SIDE THEN, AND LET ME JUST TALK IN THE

17   CALHOUN CONTEXT FOR A MOMENT, THEN WE'LL SET A DATE AND EACH

18   SIDE CAN SEND ME THE LETTER AND THE RESPONSE AND THEIR

19   RESPECTIVE POSITIONS IN JUST A FEW PAGES, SO I CAN JUST GET A

20   SENSE OF WHERE THAT FALLS IN MY CURRENT EVALUATION OF THE

21   ISSUES BEFORE ME.

22       MR. BARNES:  THAT MAKES -- OH.

23       THE COURT:  AND WHERE I'M HEADED IS, IS THERE A

24   REASON NOT TO SHARE THAT PROCESS OR TO BRING BROWN INTO THAT

25   PROCESS?  THAT IS, THAT THEY CAN SEE THE LETTER, THEY CAN SEE

```
 1         GOOGLE'S RESPONSE, AND IF THERE ARE ISSUES THERE THAT RELATE TO

 2         THEM, THEY CAN ALSO HAVE A SHORT OPPORTUNITY TO ADDRESS THOSE.

 3              SO LET ME HEAR FIRST FROM MR. BARNES, IT'S HIS LETTER, AND

 4         THEN I WILL HEAR FROM YOU, MS. TREBICKA.

 5                   MR. BARNES:  THAT MAKES SENSE TO US.  WE SEE NO

 6         REASON NOT TO SHARE IT WITH BROWN.

 7              I DO WANT TO MAKE A RECORD, I BELIEVE MR. STRAITE WOULD

 8         TELL YOU, I UNDERSTAND YOU DON'T WANT TO HEAR THE WHOLE RECORD,

 9         WE DID NOT REQUEST EVERYTHING EVER PRODUCED IN THE SPECIAL

10         MASTER PROCESS.

11                   THE COURT:  OKAY.  I AM NOT GOING THERE AN WAY,

12         MR. BARNES, SO --

13                   MR. BARNES:  I UNDERSTAND.  I JUST WANTED TO MAKE

14         CLEAR FOR THE RECORD THAT WE DISAGREE WITH THAT

15         CHARACTERIZATION OF OUR REQUEST.  WE THINK WHAT YOUR HONOR HAS

16         OUTLINED IS A SMART PLAN TO GO FORWARD.

17                   THE COURT:  MS. TREBICKA?  I HAVEN'T SEEN THE LETTER,

18         SO LET ME KNOW IF YOU HAVE SOME CONCERNS WITH THAT APPROACH.

19                   MS. TREBICKA:  NO, YOUR HONOR.  WE HAVE NO OBJECTION

20         TO SHARING OUR RESPONSE TO THE CALHOUN LETTER WITH THE BROWN

21         PLAINTIFFS.  AND WE HAVE, THROUGHOUT THIS PROCESS, STARTING

22         FROM THE JANUARY 10TH HEARING, WE HAVE BEEN SHARING EQUALLY

23         WITH THE PARTIES.

24                   THE COURT:  THAT CERTAINLY IS MY TAKEAWAY FROM ALL OF

25         THE PAPERS THUS FAR.
```

1          SO LET'S DO THAT.  MR. BARNES, SEND A COPY OF YOUR LETTER

2     TO MR. MCGEE, IF YOU HAVEN'T ALREADY, AND MS. TREBICKA,

3     GOOGLE'S RESPONSE BY THE END OF THE WEEK.

4          MS. TREBICKA:  YES, YOUR HONOR.

5          THE COURT:  THAT'S WHAT YOU HAD REPRESENTED EARLIER,

6     SO LET'S GET GOOGLE'S RESPONSE, IT COULD BE DIRECTED TO BOTH

7     PARTIES, ON THE 17TH.

8          AND THEN I WOULD LIKE TO HEAR FROM BOTH SIDES BY THE -- I

9     CAN HEAR FROM EACH PARTY WITH REGARDS TO WHAT HAS AND HASN'T --

10    WELL, YOUR RESPECTIVE POSITIONS WITH REGARDS TO THE QUESTIONS

11    ASKED AND ANSWERED.  I WANT YOU TO DO THAT IN NOT MORE THAN

12    FIVE PAGES.  I WILL TAKE THAT ON THE 24TH.

13         THE BRIEFING ON THE NEXT BROWN MOTION IN FRONT OF ME IS

14    CLOSED.  SHE SAID HOPEFULLY.  AND I AM NOT SURE, IN BROWN, WHAT

15    YOUR REMAINING SCHEDULE IS IN FRONT OF JUDGE GONZALEZ ROGERS.

16    SO LET ME KNOW IF THIS IS ON TOP OF SOME OTHER BRIEFING

17    OBLIGATION, IS WHERE I'M HEADED.

18         MR. BARNES:  YOUR HONOR, MAY I CLARIFY?

19    DO YOU MEAN FIVE PAGES FROM EACH PARTY OR FIVE --

20         THE COURT:  YES, YES, YES, BECAUSE YOU HAVE DISTINCT

21    ISSUES.

22         MR. BARNES:  OKAY.

23         MR. MCGEE:  YES, JUDGE.

24    WE DID HAVE THE CASE MANAGEMENT CONFERENCE THIS MORNING

25    AND WE DID LAY OUT SUMMARY JUDGEMENT BRIEFING.

```
 1          WE CURRENTLY -- I BELIEVE THE BROWN PLAINTIFFS COMMITTED

 2     TO A MARCH 1ST FILING DATE.  I WOULD JUST ASK -- I THINK RIGHT

 3     NOW, THE 24TH IS FINE.  I KNOW THAT GOOGLE IS NOT CURRENTLY

 4     PRESERVING ANYTHING, SO THIS IS NORMAL BUSINESS.

 5          THE COURT:  THAT IS NOT TRUE THAT THEY ARE NOT

 6     PRESERVING ANYTHING, BUT I UNDERSTAND THESE TABLES ARE ON THE

 7     ISSUE, I GOT IT.  I GOT IT.

 8          MR. MCGEE:  YES.

 9          THE COURT:  I KNOW, EVERYONE WOULD LIKE THIS

10     RESOLVED, OBVIOUSLY PLAINTIFFS WOULD LIKE TO GET THIS RESOLVED,

11     SO IF YOU NEED IT, IT'S THERE.  GOOGLE WOULD LIKE TO BE

12     RELIEVED OF THE BURDEN.

13          I INDICATED PREVIOUSLY, YOU KNOW, THERE MAY BE A POSITION

14     HERE THAT INVOLVES COST SHARING, AND THAT IS ALL STILL VERY

15     MUCH IN THE MIX.

16          MR. MCGEE:  YES, JUDGE.

17          I THINK WHAT I WAS JUST TRYING TO GET AT WAS I BELIEVE THE

18     24TH WILL BE FINE, THERE ARE OTHER MEMBERS OF MY TEAM, THERE

19     ARE CONSULTANTS THAT WE ARE WORKING WITH, I WOULD JUST ASK THAT

20     IF WE DO IDENTIFY ANY ISSUE, YOUR HONOR, WITH THE 24TH, THAT I

21     JUST BE GRANTED A TINY BIT OF LEEWAY IN COMMITTING TO IT RIGHT

22     NOW, BUT I DO BELIEVE THAT WE CAN PROVIDE THE COURT WITH THE

23     UPDATE ON THE 24TH.

24          THE COURT:  OKAY.  I AM GOING TO SET THAT DATE.  AND

25      YOU HAVE ALL BEEN THROUGH, YOU'VE ALL HAD BRIEFING ARMAGEDDON
```

1    IN THIS CASE, IN FRONT OF EITHER ME, OR JUDGE GONZALEZ ROGERS,

2    AND I WOULD EXPECT THAT YOU WOULD MEET AND CONFER AND AGREE TO

3    SOME MODEST ADJUSTMENT, IF NEEDED.

4        AND IT'S OKAY WITH ME, BUT I KNOW THERE ARE STRONG

5    INTERESTS ON BOTH SIDES TO KEEP THIS MOVING, BUT I ALSO WANT AN

6    OPPORTUNITY, I WANT TO GIVE GOOGLE ITS OPPORTUNITY TO RESPOND,

7    AND I WANT TO HEAR, BUT I DON'T NEED RE-VISITING OF ALL THE

8    ISSUES.  I'VE GOT THEM.  I'VE GOT THEM.  I'M ON IT.  SO NOT

9    MORE THAN FIVE PAGES WITH REGARDS TO THE RESPONSE, THE

10   QUESTIONS AND THE RESPONSE.

11       WITH REGARDS TO GOOGLE'S OFFER IN THE JANUARY -- THE

12   FOLLOW-UP LETTER, WHAT DID I SAY THAT WAS, JANUARY 28TH LETTER

13   WITH REGARDS TO THE ADDITIONAL DATA, IS IT THE BROWN POSITION

14   WE JUST DON'T -- YOU JUST DON'T NEED THAT, THAT'S NOT ADDITIVE,

15   AS PROPOSED?

16              MR. MCGEE:  AS PROPOSED, YES, JUDGE.

17       IF GOOGLE WERE GOING TO PRODUCE THE ENTRY FROM THE ACTUAL

18   TABLE ITSELF, TO SHOW WHAT THE ADDITION LOOKS LIKE, I CAN

19   CERTAINLY SPEAK WITH OUR CONSULTANTS, BUT MY REVIEW OF THE

20   E-MAILS WAS THAT WOULD HAVE BEEN HELPFUL.  BUT THE --

21              THE COURT:  I UNDERSTAND.

22              MR. MCGEE:  YES, JUDGE.

23              THE COURT:  THANK YOU, MR. MCGEE.

24       AND MS. TREBICKA, I UNDERSTOOD YOUR RESPONSE TO THAT TO BE

25   THAT YOU ARE SHOWING WHAT'S THERE, AND TO FIND THE ACTUAL ID IN

1    THE TABLE WOULD BE BURDENSOME, DID I GET THAT CORRECT?

2              MS. TREBICKA:  YOUR HONOR, YOU HEARD IT VERY

3    CORRECTLY.  WE CAN CERTAINLY TRY, IF THAT WILL LAY THE ISSUE TO

4    REST.

5              THE COURT:  WELL, I THINK IT'S -- CAN THAT BE

6    INCLUDED IN THE PROPOSAL, AND THEN DOES THAT -- WITH THAT

7    INFORMATION, WITH THAT SAMPLING OR THAT DEMONSTRATION, I THINK

8    IS YOUR QUESTION, IF YOU PROVIDE THAT, THEN DOES THAT SATISFY

9    THE BROWN PLAINTIFFS?

10         MR. MCGEE, WE ARE TALKING ABOUT THE MISSING C PART OF

11   THE -- AND I KNOW YOU HAD THIS DISCUSSION IN THE MEET AND

12   CONFER, THAT YOU DECIDED WAS A COMMUNICATIVE PROPERTY OR

13   TRANSFER, OR WHATEVER IT WAS.

14             MR. MCGEE:  SOMETHING LIKE THAT.

15             THE COURT:  WE ALL NEED TO GO BACK TO ALGEBRA, IT'S

16   GOOD FOR US.

17             MR. MCGEE:  YEAH.

18             THE COURT:  BUT THAT'S THE -- THAT'S GOOGLE'S INQUIRY

19   AS WELL.  IF WE MAKE THAT EFFORT, IF WE CAN FIND THAT ID, WILL

20   THAT DEMONSTRATION BE SUFFICIENT?

21             MR. MCGEE:  I THINK IT MOVES IN THAT DIRECTION,

22   YOUR HONOR.

23         I WOULD JUST HAVE TO SPEAK WITH THE CONSULTANTS ON THIS,

24   THIS IS GETTING ABOVE MY ECONOMICS DEGREE AND MY UNDERGRADUATE

25   STUDIES.

1          THE COURT:  OKAY.  WELL WHY DON'T YOU ASK THAT

2     QUESTION AND LET GOOGLE KNOW BY THE END OF THE WEEK.

3          MR. MCGEE:  SENDING THE E-MAIL NOW, JUDGE.

4          THE COURT:  YEAH.

5          AND IF IT DOES, GREAT.  THEN MS. TREBICKA, GOOGLE CAN MAKE

6     THAT EFFORT AND PROVIDE IT AND THEN THIS ISSUE IS TUCKED IN AND

7     PUT AWAY.

8          AND IF IT DOESN'T, THEN, YOU KNOW, IF THAT WON'T PUT IT TO

9     REST, THEN YOU DON'T HAVE TO MAKE THE EFFORT AND I WILL FIGURE

10     OUT NEXT STEPS AS I CONTINUE TO WORK THROUGH THIS.  ALL RIGHT?

11          OKAY.  I DO NOT WANT TO, AND WE WILL NOT BE PERPETUALLY

12     KICKING THE CAN DOWN THE ROAD, THIS PROCESS WILL COME TO AN

13     END.  SO AGAIN, THAT'S WHY I WANT TO GET THIS WRAPPED UP HERE

14     IN THE COMING WEEKS.  AND I WILL MAKE A DECISION.

15          MR. BARNES, YOUR HAND?

16          MR. BARNES:  MAY I RAISE AN ISSUE ON WHICH I THINK

17     EVERYONE WILL AGREE?  AT THE LAST HEARING, I THINK YOU ORDERED

18     FROM THE BENCH THAT THE TRANSCRIPTS BE RELEASED TO THE PARTIES

19     PENDING REDACTION BRIEFING, WHICH SPARED US FROM HAVING TO FILE

20     A MOTION WITH THE COURT REQUESTING RELEASE OF THE TRANSCRIPTS.

21          IF YOU COULD DO SO AGAIN TODAY, I THINK THAT WOULD BE VERY

22     HELPFUL TO ALL OF US.

23          THE COURT:  I WILL.  YOU DO HAVE TO ORDER THE

24     TRANSCRIPTS.  THESE WILL HAVE TO BE TRANSCRIBED FROM OUR

25     RECORDING, BUT SO ORDERED, THAT THE TRANSCRIPTS WILL BE

```
1      RELEASED TO THE PARTIES UPON REQUEST.

2                MR. BARNES:  THANK YOU, YOUR HONOR.

3                THE COURT:  ALL RIGHT.

4                MR. MCGEE:  THANK YOU.

5                THE COURT:  OKAY.

6          ANYTHING FURTHER FOR THE COURT TODAY?  FROM GOOGLE,

7      MS. TREBICKA OR MS. GAO?  I DID NOT MEAN TO OVERLOOK YOU.  I

8      MAY HAVE LOST HER.

9                MS. TREBICKA:  NOTHING FROM GOOGLE, YOUR HONOR.

10               THE COURT:  ALL RIGHT.  THANK YOU.  THANK YOU FOR

11     YOUR PREPARATION AND GUIDANCE.  VERY HELPFUL.

12         AND FROM CALHOUN, MR. MCGEE?

13               MR. MCGEE:  NOTHING FURTHER, JUDGE.

14               THE COURT:  MR. BARNES?

15               MR. BARNES:  NOTHING FROM US, YOUR HONOR.  THANK YOU.

16               THE COURT:  OKAY.

17         ALL RIGHT.  THANK YOU VERY MUCH.  AND WE WILL -- I WILL

18     LOOK AT THAT ADDITIONAL INFORMATION.  IF I HAVE SUBSTANTIVE

19     QUESTIONS, I WILL CALL YOU BACK IN, OTHERWISE I WILL -- WE WILL

20     GET THIS TAKEN CARE OF.

21         ALL RIGHT.  THANK YOU.  WE ARE ADJOURNED.

22               MS. TREBICKA:  THANK YOU, YOUR HONOR.

23               MR. MCGEE:  THANK YOU, YOUR HONOR.

24         (THE PROCEEDINGS WERE CONCLUDED AT 11:00 A.M.)

25
```

1

2

3

4                          **CERTIFICATE OF REPORTER**

5

6

7

8              I, THE UNDERSIGNED OFFICIAL COURT

9     REPORTER OF THE UNITED STATES DISTRICT COURT FOR

10    THE NORTHERN DISTRICT OF CALIFORNIA, 280 SOUTH

11    FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY

12    CERTIFY:

13              THAT THE FOREGOING TRANSCRIPT,

14    CERTIFICATE INCLUSIVE, CONSTITUTES A TRUE, FULL AND

15    CORRECT TRANSCRIPT OF MY SHORTHAND NOTES TAKEN AS

16    SUCH OFFICIAL COURT REPORTER OF THE PROCEEDINGS

17    HEREINBEFORE ENTITLED AND REDUCED BY COMPUTER-AIDED

18    TRANSCRIPTION TO THE BEST OF MY ABILITY.

19

20

21

22

23

24    _____

25    SUMMER A. FISHER, CSR, CRR
      CERTIFICATE NUMBER 13185            DATED:  2/16/23